WILLIAM A. ISAACSON (Admitted *Pro Hac Vice*)
(wisaacson@bsfllp.com)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave, NW, Washington, DC 20015
Telephone: (202) 237-2727; Fax: (202) 237-6131

JOHN F. COVE, JR. #212213
(jcove@bsfllp.com)
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900, Oakland, CA 94612
Telephone: (510) 874-1000; Fax: (510) 874-1460

RICHARD J. POCKER #114441
(*Admission to N.D. Cal. pending*)
(rpocker@bsfllp.com)
BOIES, SCHILLER & FLEXNER LLP
300 South Fourth Street, Suite 800, Las Vegas, NV 89101
Telephone: (702) 382 7300; Fax: (702) 382 2755

DONALD J. CAMPBELL (*Pro Hac Vice* to be filed)
(DJC@campbellandwilliams.com)
J. COLBY WILLIAMS (*Pro Hac Vice* to be filed)
(JCW@campbellandwilliams.com)
CAMPBELL & WILLIAMS
700 South 7th Street, Las Vegas, Nevada 89101
Telephone: (702) 382-5222; Fax: (702) 382-0540

*Attorneys for Defendant* Zuffa, LLC, d/b/a Ultimate Fighting
Championship and UFC

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

| | |
|---|---|
| Cung Le, Nathan Quarry, Jon Fitch, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>Defendant. | Case No.  5:14-cv-05484 EJD<br><br>**DEFENDANT ZUFFA, LLC'S CONSOLIDATED NOTICE OF MOTION AND MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)**<br><br>Date:      May 7, 2015<br>Time:     9:00 a.m.<br>Place:    Courtroom 4<br>Judge:    Hon. Edward J. Davila |


| | |
|---|---|
| Luis Javier Vazquez and Dennis Lloyd Hallman, on behalf of themselves and all others similarly situated, | Case No.  5:14-cv-05591 EJD |
| Plaintiffs, | |
| v. | |
| Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC, | |
| Defendant. | |
| Brandon Vera and Pablo Garza, on behalf of themselves and all others similarly situated, | Case No.  5:14-cv-05621 EJD |
| Plaintiffs, | |
| v. | |
| Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC, | |
| Defendant. | |

1  TO THE COURT, ALL PARTIES AND COUNSEL OF RECORD:

2          PLEASE TAKE NOTICE THAT on May 7, 2015 at 9:00 a.m., or as soon thereafter as

3  this matter may be heard, Defendant Zuffa, LLC will and hereby does move this Court for an

4  order pursuant to 28 U.S.C. § 1404(a) transferring these actions to the United States District

5  Court for the District of Nevada.  The hearing will be conducted before the Hon. Edward J.

6  Davila, United States District Court Judge for the Northern District of California, in Courtroom 4

7  of the San Jose Courthouse, 280 South 1st Street, San Jose, CA 95113.

8          This motion is based on this Notice of Motion and Motion, the supporting Memorandum

9  of Points and Authorities and accompanying declaration, the complete files and records of these

10  actions, and all other matters and arguments as may come before this Court, including those

11  raised in connection with reply briefing and oral argument relating to this motion.

12  Dated: January 30, 2015                    Respectfully Submitted,

13                                             BOIES, SCHILLER & FLEXNER LLP

14

15                                             By: */s/ William A. Isaacson*
16                                             William A. Isaacson
17                                             *Attorneys for Defendant* Zuffa, LLC, d/b/a
                                               Ultimate Fighting Championship and UFC

18

19

20

21

22

23

24

25

26

27

28

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

# **TABLE OF CONTENTS**

I.  STATEMENT OF ISSUE TO BE DECIDED ................................................................. 1

II.  INTRODUCTION .......................................................................................................... 1

III.  FACTS ........................................................................................................................... 3

    A.  The Complaints ................................................................................................... 3

    B.  The Parties .......................................................................................................... 3

    C.  Allegedly Anticompetitive Agreements Between Plaintiffs and Zuffa.................. 4

    D.  Alleged Exclusionary Conduct as to Third Parties in Nevada ............................ 6

    E.  Competitors Based in Nevada ............................................................................. 6

    F.  Other Non-Parties .............................................................................................. 7

IV.  ARGUMENT .................................................................................................................. 7

    A.  The District of Nevada Is An Appropriate Forum Because Plaintiffs'
        Actions Could Have Been Brought There.............................................................7

    B.  Forum Selection Clauses That Plaintiffs Agreed To Require Transfer Of
        These Cases To The District of Nevada. ............................................................. 8

        1.  Forum selection clauses must be enforced. ............................................... 8

        2.  Plaintiffs' claims fall within the scope of the forum selection clauses
            to which they agreed........................................................................................ 9

    C.  The Convenience and Fairness Factors in 28 U.S.C. § 1404(a) and Those
        Articulated by the Ninth Circuit Support Transfer to the District of
        Nevada. ............................................................................................................. 15

        1.  The District of Nevada is a more convenient venue for the parties. ............. 16

        2.  The District of Nevada is a more convenient venue for witnesses............... 17

        3.  Nevada has a greater local interest because the relevant agreements
            were made in Nevada. ................................................................................. 20

        4.  Nevada courts are more familiar with the law governing the
            interpretation of the challenged contracts..................................................... 20

        5.  Because these are putative class actions with almost no connection
            to this District brought by non-resident Plaintiffs, their choice of
            forum is entitled to little weight. ................................................................. 21

        6.  The parties' respective contacts with these districts weigh heavily in
            favor of transfer to the District of Nevada................................................... 22

        7.  There are few meaningful contacts between Plaintiffs' cause of
            action and the Northern District of California................................................ 22

        8.  The difference in the cost of litigation favors transfer to the District
            of Nevada.................................................................................................... 22

        9.  The avoidance of counterclaims favors transfer to the District of
            Nevada. ....................................................................................................... 23

V.  CONCLUSION.............................................................................................................. 24

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

i

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

# **TABLE OF AUTHORITIES**

## **CASES**

*Arreola v. Finish Line*,
    No. 14-CV-03339-LHK, 2014 WL 6982571 (N.D. Cal. Dec. 9, 2014) .................................... 16

*Atlantic Marine Const. Co., Inc. v. United States Dist. Ct. for the W. Dist. of Tex.*,
    134 S. Ct. 568 (2013) ....................................................................................................... 1, 9, 21

*Bense v. Interstate Battery Sys. Of Am.*,
    683 F.2d 718 (2d Cir. 1982) .......................................................................................................... 10

*Cont'l Grain Co. v. The FBL–585*,
    364 U.S. 19 (1960) ........................................................................................................................ 15

*Coors Brewing Co. v. Molson Breweries*,
    51 F.3d 1511 (10th Cir. 1995) ....................................................................................................... 11

*Doe 1 v. AOL LLC*,
    552 F.3d 1077 (9th Cir. 2009) ......................................................................................................... 9

*Guimei v. Gen. Elec. Co.*,
    172 Cal. App. 4th 689 (2009) ........................................................................................................ 20

*Hawkes v. Hewlett-Packard Co.*,
    No. CV-10-05957-EJD, 2012 WL 506569  (N.D. Cal. Feb 15, 2012) ........................ 16, 17, 20

*Hoffman v. Blaski*,
    363 U.S. 335 (1960) ........................................................................................................................ 8

*J.P. Morgan Chase Bank, N.A. v. McDonald*,
    760 F.3d 646 (7th Cir. 2014) ........................................................................................................ 23

*Jones v. GNC Franchising, Inc.*,
    211 F.3d 495 (9th Cir. 2000) ......................................................................................................... 16

*Joseph v. Amazon.Com, Inc.*,
    No. C12–06256 HRL, 2013 WL 4806462 (N.D. Cal. Sept. 9, 2013) ....................................... 11

*King v. SAM Holdings, LLC*,
    No. 5:CV-10-04706-EJD, 2011 WL 4948603 (N.D. Cal. Oct. 11, 2011) .................... 20, 21, 23

*Lambert v. Kysar*,
    983 F. 2d 1110 (8th Cir. 1993) ...................................................................................................... 14

*Leroy-Garcia v. Brave Arts Licensing*,
    No. C 13-01181 LB, 2013 WL 4013869 (N.D. Cal. Aug. 5, 2013) ........................................... 15

ii

*Lipnick v. United Air Lines, Inc.*,
No. C 11-2028 CW, 2011 WL 4026647 (N.D. Cal. Sept. 9, 2011) ........................................... 17

*Lou v. Belzberg*,
834 F.2d 730 (9th Cir. 1987) ........................................................................................................ 22

*M/S Bremen v. Zapata Off-Shore Co.*,
407 U.S. 1 (1972) ............................................................................................................................ 9

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
858 F.2d 509 (9th Cir. 1988) ................................................................................................. 10, 11

*McNair v. Monsanto Co.*,
279 F. Supp. 2d 1290 (M.D. Ga. 2003) ...................................................................................... 15

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*,
723 F.2d 155 (1st Cir. 1983)
*rev'd on other grounds*, 473 U.S. 614 (1985) ........................................................................... 11

*Molnar v. 1-800-Flowers.com, Inc.*,
No. CV 08-0542 CAS (JCx), 2008 WL 4772125 (C.D. Cal. 2008) .......................................... 23

*Moretti v. Hertz Corp.*,
No. C 13-02972 JSW, 2014 WL 1410432 (N.D. Cal. Apr. 11, 2014) ....................................... 20

*Norwood v. Kirkpatrick*,
349 U.S. 29 (1955) ......................................................................................................................... 15

*Park v. Dole Fresh Vegetables, Inc.*,
964 F. Supp. 2d 1088 (N.D. Cal. 2013) ................................................................. 8, 21, 22, 23

*PPG Indus., Inc. v. Pilkington plc*,
825 F. Supp. 1465 (D. Ariz. 1993) .............................................................................................. 11

*S.E.C. v. Ross*,
504 F.3d 1130 (9th Cir. 2007) ....................................................................................................... 8

*Saunders v. USAA Life Ins. Co.*,
___ F. Supp. 3d ___, 2014 WL 5339205  (N.D. Cal. Oct. 17, 2014) .................................... 7, 16

*Scherk v. Alberto-Culver Co.*,
417 U.S. 506 (1974) ....................................................................................................................... 11

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999) ......................................................................................................... 11

*Sloan v. Pfizer, Inc.*,
No. C 08-1849 SBA, 2008 WL 4167083  (N.D. Cal. Sept. 8, 2008) ........................................... 8

iii

Zuffa's Not. Mot. & Mot to Transfer Venue
Case Nos. 5:14-cv-05484 EJD
5:14-cv-05591 EJD; 5:14-cv-05621 EJD

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Terra Int'l, Inc. v. Mississippi Chem. Corp.*,
   922 F. Supp. 1334 (N.D. Iowa 1996)
   *aff'd*, 119 F.3d 688 (8th Cir. 1997) ....................................................................... 14

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*,
   80 S. Ct. 1347 (1960) .............................................................................................. 11

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964) .................................................................................................. 7

*Zut v. Harrah's Entm't, Inc.*,
   No. 3:13-cv-02372, 2013 WL 5442282 (N.D. Cal. Sept. 30, 2013) ................... 16, 21

## STATUTES

United States Code
   Title 15, Section 2 ...................................................................................................... 8
   Title 26, Section 2 ................................................................................................. 1, 3
   Title 28, Section 1391(b)(1)-(2) ................................................................................. 8
   Title 28, Section 1391(c)(2) ........................................................................................ 8
   Title 28, Section 1404(a) ................................................................................... passim

Zuffa's Not. Mot. & Mot to Transfer Venue            Case Nos. 5:14-cv-05484 EJD
                                                     5:14-cv-05591 EJD; 5:14-cv-05621 EJD

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

## I.      STATEMENT OF ISSUE TO BE DECIDED

Whether the three related actions — *Cung Le, et al. v. Zuffa*, *LLC*, 5:14-cv-05484 (N.D. Cal.), *Vasquez, et al. v. Zuffa, LLC*, 5:14-cv-0559 (N.D. Cal.), *Vera, et al. v. Zuffa, LLC*, 5:14-cv-05621 (N.D. Cal.) — should be transferred to the District of Nevada, Las Vegas Division pursuant to 28 U.S.C. § 1404(a).

## II.     INTRODUCTION

Defendant Zuffa, LLC ("Zuffa"), a Nevada limited liability company based in Las Vegas, Nevada, which does business under the registered trademarks Ultimate Fighting Championship® and UFC® ("UFC"), moves under 28 U.S.C. § 1404(a) to transfer to the District of Nevada, Las Vegas Division, three virtually identical putative class actions brought by seven former UFC fighters, alleging monopolization in violation of Section 2 of the Sherman Act.

First, four of the seven Plaintiffs agreed to forum selection clauses in their contracts that consent to "exclusive personal jurisdiction and venue" of any action "to interpret or enforce any provision of this Agreement" in the state courts of or the District of Nevada.  *Atlantic Marine Const. Co., Inc. v. United States Dist. Ct. for the W. Dist. of Tex.*, 134 S. Ct. 568, 579 (2013) (forum selection clause has "controlling weight" in an analysis of a transfer motion).  Each of the other three Plaintiffs agreed to forum selection clauses that call for the resolution of "any disputes arising from or relating to" their agreements in state court in Nevada.

Second, the convenience of the parties unequivocally favors transfer to the District of Nevada.  Each of Plaintiffs' three identical actions, which were filed within nine days of each other by the same counsel, exclusively concerns the contracts and business relationships of Zuffa, a Nevada company with its principal place of business in Las Vegas, Nevada.  Zuffa's employees in the United States with knowledge of the conduct at issue and likely to be called to testify live and work within the District of Nevada and the relevant documentary evidence in Zuffa's possession in the United States is kept in Las Vegas.  The Complaints challenge the UFC's agreements with the named Plaintiffs and other putative class members — agreements that are all expressly deemed made in Nevada and contain both Nevada choice-of-law provisions and forum-selection clauses designating the courts in Nevada as the exclusive venue for dispute resolution.

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

B O I E S   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

1   That every one of the more than two dozen agreements between Plaintiffs and the UFC at issue in

2   these actions contains such a forum selection clause demonstrates that Plaintiffs consider Nevada

3   a convenient venue.

4        The convenience of witnesses and the interest of justice also strongly support transfer to

5   the District of Nevada.  The District of Nevada presents a more convenient forum not only for the

6   party-witnesses, but also for the many non-party Las Vegas-based witnesses with relevant

7   knowledge, including executives from event venues and UFC competitors such as the mixed

8   martial arts ("MMA") promoter World Series of Fighting, boxing promoters Top Rank, Inc. and

9   Wynn Las Vegas, and Muay Thai promoter Lion Fight Promotions, among others.  As the

10  Complaints acknowledge, Las Vegas is home to many important event venues for both Zuffa and

11  its competitors, and Plaintiffs have placed the contracts with those venues squarely at issue in

12  these actions.  Given the unique nexus between the parties and the substance of this controversy

13  with the Las Vegas area, there is a strong local interest in resolving these actions in the District of

14  Nevada.

15       By contrast, there are few meaningful connections between these actions and the Northern

16  District of California.  Any deference due to Plaintiffs' choice of this forum is immaterial here

17  because (1) they have consented to venue in Nevada; (2) these are putative class actions; (3) little

18  conduct relevant to these cases occurred within the district; and (4) two out of these three actions

19  have no named Plaintiff residing in the district.  Moreover, for the only action in which there is a

20  named Plaintiff resident in this district, there is likewise a named Plaintiff resident in the District

21  of Nevada.  Plaintiffs themselves identify only one third-party with potentially relevant

22  information – video game publisher Electronic Arts, Inc. – based in this District.  Other than the

23  convenience of Plaintiffs' counsel, there are no advantages to maintaining this action in the

24  Northern District of California.

25       Accordingly, the Court should grant Zuffa's motion and order these actions transferred to

26  the District of Nevada.

27

28

Zuffa's Not. Mot. & Mot to Transfer Venue                    Case Nos. 5:14-cv-05484 EJD
                                                             5:14-cv-05591 EJD; 5:14-cv-05621 EJD

III.    **FACTS**

A.    **The Complaints**

Plaintiffs have filed three virtually identical complaints in the Northern District of California, San Jose Division, alleging that Zuffa engaged in monopolization in violation of Section 2 of the Sherman Act.  Le Compl. ¶ 1.[1]  The gravamen of these complaints is that Zuffa's contracts with fighters and third parties, such as venues, sponsors and TV networks, excluded competition and enabled Zuffa to obtain and protect an alleged monopoly in the promotion of live Elite Professional MMA bouts, and a monopsony in the purchases of Elite Professional MMA Fighters' services.  As a result, the Complaints allege that Zuffa paid lower compensation to Plaintiffs for their services and intellectual property rights than it would have in the absence of the allegedly anticompetitive contract terms and other conduct, and that Zuffa's contracts with Plaintiffs illegally "expropriated" and "exploited" their intellectual property rights.  Le Compl. ¶¶ 5-6.

B.    **The Parties**

As alleged in the Complaints, the Plaintiffs are Jon Fitch, a resident of Las Vegas, Nevada; Nathan Quarry, a resident of Lake Oswego, Oregon; and Cung Le, a resident of San Jose, California (Le Compl. ¶¶ 36-38); Brandon Vera, a resident of Chula Vista, California and Pablo Garza, a resident of Oslo, Norway (Vera Compl. ¶¶ 31-32); and Luis Javier Vasquez, a resident of Ontario, California and Dennis Lloyd Hallman, a resident of Olympia, Washington (Vasquez Compl. ¶¶ 36-37).  All three sets of Plaintiffs seek to represent the same two classes of "Elite Professional MMA Fighters."  The first alleged class comprises all fighters who participated in a bout promoted by the UFC that took place or was televised in the United States any time since December 16, 2010, except for foreign nationals who did not fight in the United States.  Le Compl. ¶ 39.  The second alleged class comprises all fighters whose "[i]dentity was expropriated or exploited by the UFC" in this time period.  Le Compl. ¶ 47.  The Complaints do

---

[1] Because all three complaints are essentially identical but for allegations related to the identities of the named Plaintiffs, this motion cites only the *Le* Complaint where identical allegations are contained in the other two complaints.

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

1    not allege the number of members in the proposed classes but allege that the UFC now has

2    "approximately 500 Elite Professional MMA Fighters under contract."  Le Compl. ¶ 155.

3         Defendant Zuffa is a Nevada limited liability company that was established in Las Vegas

4    in December 2000 and has always maintained its headquarters in Las Vegas.  Le Compl. ¶ 31;

5    Declaration of Kirk D. Hendrick in Support of Defendant Zuffa, LLC's Motion to Transfer Venue

6    Under 28 U.S.C. § 1404(a) ("Hendrick Decl.") ¶ 2.  Zuffa promotes live sporting events featuring

7    MMA bouts between professional fighters under the auspices of the UFC.  Le Compl. ¶ 33.  In

8    the course of its business, Zuffa enters into agreements with fighters; event venues; media outlets;

9    sponsors, such as beverage and apparel companies; and licensees of its intellectual property for

10   merchandising and other purposes.  Le Compl. ¶ 33.  The Complaints allege that these

11   agreements exclude competition in various ways, including by limiting fighters from freely

12   offering their services to competitors and contractually restricting fighters' use of their (and

13   Zuffa's) intellectual property rights.  These agreements were all negotiated and executed on

14   behalf of Zuffa by its officers and employees, including Chairman and CEO Lorenzo Fertitta,

15   President Dana White, Senior Executive Vice President and Chief Operating Officer Ike

16   Lawrence Epstein, Executive Vice President and Chief Legal Officer Kirk Hendrick, Senior Vice

17   President of Event Development and Operations Peter Dropick, and Senior Vice President of

18   Global Marketing Partnerships Mike Mossholder — all of whom live and work in the District of

19   Nevada.  Hendrick Decl. ¶ 6.  Almost all of Zuffa's books and records are kept in its Las Vegas

20   offices.  Hendrick Decl. ¶¶ 4-5.  Zuffa does not maintain any offices or records in the Northern

21   District of California, nor are there any Zuffa employees that reside in this District.  Hendrick

22   Decl. ¶¶ 8-9.

23   **C.    Allegedly Anticompetitive Agreements Between Plaintiffs and Zuffa**

24        The Complaints identify three types of agreements between Zuffa and Plaintiffs that are

25   part of the alleged scheme: (1) "Bout Agreement[s]," (Le Compl. ¶ 30(a)); (2) "Exclusive

26   Promotional and Ancillary Rights Agreement[s]," (Le Compl. ¶ 30(e)); and (3) "Merchandise

27   Rights Agreement[s]," (Le Compl. ¶ 30(h)).  Each of the named Plaintiffs has entered into at least

28

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

one of each of these agreements with Zuffa.[2]  Hendrick Decl. ¶¶ 10-16.  Every single one of these agreements is expressly deemed to have been made in Las Vegas, Nevada and contains a Nevada choice of law provision.  Hendrick Decl. ¶¶ 18-20 (citing contracts).  Each of these agreements was signed by Zuffa executives Dana White, Ike Lawrence Epstein, or Kirk Hendrick.  Hendrick Decl. ¶¶ 10-16.  Every one of these agreements contains a forum selection clause referring disputes to courts in the state of Nevada.  Hendrick Decl. ¶¶ 18-20.

Plaintiffs Fitch, Garza, Le, and Vera have each agreed to at least one Bout Agreement, Merchandise Rights Agreement, or Promotional and Ancillary Rights Agreement containing the following forum selection clause, either expressly or incorporated by reference:

> ZUFFA and Fighter hereby (a) expressly consent to the exclusive personal jurisdiction and venue of the state and federal courts located in Clark County, Nevada for any action brought by either party to interpret or enforce any provision of this Agreement; and (b) agree not to assert (by way of motion, as a defense or otherwise) that such legal proceeding has been brought in an inconvenient forum.

Hendrick Decl. ¶ 10(b), Ex. B (Excerpt of Apr. 18, 2013 Merchandise Rights Agreement between Zuffa and Le), at § 7.6; ¶ 10(c), Ex. C (Excerpt of Aug. 15, 2014 Bout Agreement between Zuffa and Le), at § 13; ¶ 11(a), Ex. D (Excerpt of Dec. 31, 2012 Promotional and Ancillary Rights Agreement between Zuffa and Fitch), at Art. 25.2; ¶ 11(c), Ex. F (Excerpt of Dec. 21, 2012 Bout Agreement between Zuffa and Fitch), at § 13; ¶ 12(b), Ex. H (Excerpt of Feb. 18, 2013 Promotional and Ancillary Rights Agreement between Zuffa and Garza), at Art. 25.2; ¶ 12(e), Ex. K (Excerpt of Mar. 18, 2013 Bout Agreement between Zuffa and Garza), at § 13; ¶ 13(d), Ex. O (Excerpt of Aug. 22, 2013 Bout Agreement between Zuffa and Vera), at § 13.[3]

---

[2] Brandon Vera sometimes contracted for his services through his corporation, Truth Enterprises, Inc.  Vera signed the Truth Enterprises, Inc. agreements with Zuffa both as a fighter and in his capacity as Owner/CEO of Truth Enterprises, Inc.  Hendrick Decl. ¶ 13 (a)-(d), Exs. L-O (excerpts of agreements between Vera and Zuffa including signature pages).

[3] The exhibits to the Hendrick Declaration contain contract excerpts because other portions of these agreements contain sensitive personal information and/or competitively sensitive business information that is not pertinent to the immediate motion to transfer.  Zuffa will reach out to the Plaintiffs to discuss an appropriate protective order for submission to the Court in order to preserve the confidentiality of this sensitive information in the event Plaintiffs wish to submit other, confidential portions of the agreements to the Court in connection with this motion.

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

Other contracts between Plaintiffs and Zuffa contain the following forum selection clause, either expressly or incorporated by reference:

> ZUFFA and Fighter agree that the exclusive jurisdiction and venue for the resolution of any dispute arising from or relating to this Agreement shall lie in the Eighth Judicial District Court for the State of Nevada, sitting in Las Vegas, Nevada.

Hendrick Decl. ¶ 20; *e.g.*, ¶ 10(a), Ex. A (Excerpt of Sept. 15, 2011 "Promotional and Ancillary Rights Agreement" between Zuffa and Le), at Art. 26.2.

### D.  Alleged Exclusionary Conduct as to Third Parties in Nevada

Plaintiffs allege that another facet of the alleged scheme to monopolize is that "the UFC has entered into . . . exclusionary provisions with top event venues along the Las Vegas Strip and elsewhere." Le Compl. ¶ 122.  Over the last four years, Zuffa has staged more than 30 major MMA events in Las Vegas, compared to 5 in the Northern District of California, all at the SAP Center in San Jose.[4]  Plaintiffs also allege that Zuffa's acquisition of certain other businesses — all but one well before the statute of limitations period — contributed to the alleged monopolization/monopsonization scheme.  Although one of these firms — Strikeforce — was based in San Jose, the contracts, books, and records that Zuffa acquired or created regarding Strikeforce are in Las Vegas, as are the Zuffa employees with relevant knowledge of the acquisitions.  Hendrick Decl. ¶¶ 4-6.

### E.  Competitors Based in Nevada

Numerous other sports and entertainment promoters with which Zuffa competes are located in Las Vegas, including MMA promoter World Series of Fighting, boxing promoters Top Rank, Inc. and Wynn Las Vegas, and Muay Thai promoter Lion Fight Promotions.[5]  Other rival

---

[4] *See* UFC "Past Events", http://www.ufc.com/event/Past_Events (last accessed Jan. 26, 2015) (UFC on Fox 12: Lawler vs. Brown, July 26, 2014); (UFC on Fox 7: Henderson vs. Melendez, Apr. 20, 2013); (UFC on Fuel TV 4 Munoz vs. Weidman, July 11, 2012); (UFC 139: Shogun vs. Henderson, Nov. 11, 2014); Strikeforce "Past Events", http://www.strikeforce.com/event/past-events (last accessed Jan. 26, 2015) (Barnett vs. Cormier, May 19, 2012).

[5] Nevada State Athletic Commission, "Year 2014 All Professional Promoters," Aug. 5, 2014, http://boxing.nv.gov/uploadedFiles/boxingnvgov/content/telephone/rptPryearPROnet2014-08-05.pdf (last accessed Jan. 26, 2015) (showing addresses for Top Rank, Inc., and Wynn Las Vegas

1   MMA promoters mentioned in Plaintiffs' Complaints are located around the United States, but

2   none are alleged to be based in the Northern District of California.  Le Compl. ¶¶ 141-144.

3       **F.      Other Non-Parties**

4           In addition to the allegedly anticompetitive agreements with fighters and venues, the

5   Complaints contain a number of other vague and conclusory allegations that Zuffa has foreclosed

6   competition via its contracts with sponsors (such as apparel and beverage companies), TV

7   networks and other media outlets, and licensees (such as video game and merchandise firms).  Le

8   Compl. ¶¶ 73, 113(h).  Of all the third parties with potential knowledge of Plaintiffs' broad-

9   ranging allegations, Plaintiffs have named just one (in addition to the SAP Center) that is based in

10  the Northern District of California — Electronic Arts, Inc., a video game publisher headquartered

11  in Redwood City, California.  Le Compl. ¶ 28.  Plaintiffs have not alleged that any other event

12  venues, media outlet, sponsor, or licensee with information allegedly relevant to these actions are

13  based in the Northern District of California.  By comparison, in paragraph 7 alone, the

14  Complaints name more than 10 non-parties located outside this District who may have relevant

15  information.  Le Compl. ¶ 7.

16  **IV.    ARGUMENT**

17      **A.      The District of Nevada Is An Appropriate Forum Because Plaintiffs' Actions
                  Could Have Been Brought There.**

18          This Court may transfer this purported class action to "any other district or division where

19  it might have been brought" based on considerations of "the convenience of parties and

20  witnesses" and "the interest of justice."  28 U.S.C. § 1404(a).  "The purpose of § 1404(a) is to

21  'prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public

22  against unnecessary inconvenience and expense.'"  *Saunders v. USAA Life Ins. Co.*, ___ F. Supp.

23  3d ___, 2014 WL 5339205, at *1 (N.D. Cal. Oct. 17, 2014) (quoting *Van Dusen v. Barrack*, 376

24  U.S. 612, 616 (1964)).  "When determining whether a transfer is proper . . . A court must first

25  consider the threshold question of whether the case could have been brought in the forum to

26

27  LLC, in Las Vegas among Professional Boxing Promoters and addresses for Lion Fight
    Promotions, LLC, and World Series of Fighting in Las Vegas among Professional Martial Arts
28  Promoters).

Zuffa's Not. Mot. & Mot to Transfer Venue                    Case Nos. 5:14-cv-05484 EJD
                                                             5:14-cv-05591 EJD; 5:14-cv-05621 EJD

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

1   which the moving party seeks to transfer the case." *Park v. Dole Fresh Vegetables, Inc.*, 964 F.

2   Supp. 2d 1088, 1093 (N.D. Cal. 2013) (citing *Hoffman v. Blaski*, 363 U.S. 335, 344, (1960)).  An

3   action "'could have been brought' in a proposed transferee district if that district would have had

4   subject matter jurisdiction, the defendants would have been subject to personal jurisdiction, and

5   venue would have been proper." *Sloan v. Pfizer, Inc.*, No. C 08-1849 SBA, 2008 WL 4167083, at

6   *3 (N.D. Cal. Sept. 8, 2008) (quoting *Hoffman*, 363 U.S. at 343-44).

7        Each of Plaintiffs' actions satisfies these conditions.  First, Plaintiffs' claims arise under

8   federal law, which gives the District of Nevada subject matter jurisdiction over these actions.  Le

9   Compl. ¶ 1 (alleging claim under 15 U.S.C. § 2).  Second, Zuffa, as a Nevada limited liability

10  company with its principal place of business in Las Vegas, Nevada, is subject to general personal

11  jurisdiction in the District of Nevada and resides there for venue purposes.  Le Compl. ¶ 31; 28

12  U.S.C. § 1391(b)(1)-(2), (c)(2).  Third, as discussed in greater detail below, each of the Plaintiffs

13  agreed to a contract that subjected him to a Nevada forum.  *S.E.C. v. Ross*, 504 F.3d 1130, 1149

14  (9th Cir. 2007) ("In general, [the Ninth Circuit has] held that a party has consented to personal

15  jurisdiction when the party took some kind of affirmative act [such as] accepting a forum

16  selection clause . . . that fairly invited the court to resolve the dispute between the parties.").

17

18  **B.    Forum Selection Clauses That Plaintiffs Agreed To Require Transfer Of These Cases To The District of Nevada.**

19       Plaintiffs Le, Fitch, Garza, and Vera each agreed to contracts that include a mandatory

20  forum selection clause designating the state and federal courts located in Clark County, Nevada as

21  the exclusive venue to interpret or enforce the agreement.  Plaintiffs' actions, which seek to

22  interpret the parties' rights and performance requirements under no fewer than ten provisions of

23  these contracts and to enjoin enforcement of these provisions, fall within the scope of actions

24  covered by this forum selection clause.  Le Compl. ¶¶ 113-14, 172.  Even in the absence of other

25  factors warranting transfer, these clauses mandate transfer of these actions to the District of

26  Nevada.

27       **1.    Forum selection clauses must be enforced.**

28       When parties to a contract "have agreed to a valid forum-selection clause, a district court

8

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

should ordinarily transfer the case to the forum specified in that clause [and only] under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Atlantic Marine Const. Co.,*134 S. Ct. at 581; *see id.* at 579 ("a proper application of § 1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases") (citation and internal quotation marks omitted).

Where a contract contains a valid forum selection clause, the party opposing the transfer "must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed." *Id.* at 582. "A forum selection clause is presumptively valid; the party seeking to avoid a forum selection clause bears a 'heavy burden' to establish a ground" for refusing to enforce the clause. *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17 (1972)).

Furthermore, "a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests . . . [and] must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Atlantic Marine Const. Co.*, 134 S. Ct. at 582. "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* Therefore, this Court "should transfer the case unless [Plaintiffs can demonstrate] extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Id.* at 575.

### 2.   Plaintiffs' claims fall within the scope of the forum selection clauses to which they agreed.

Plaintiffs allege that the UFC uses exclusivity terms in its contracts with UFC fighters as part of its alleged scheme to monopolize. Le Compl. § VII.A.1.a;  ¶ 110 ("The UFC's illegal monopsony position is sustained, in part, through the use of exclusive dealing agreements with UFC Fighters"). Plaintiffs' Complaints identify several types of agreements between Zuffa and Plaintiffs that are part of the alleged scheme, including: (1) "Bout Agreement[s]"; (2) "Exclusive Promotional and Ancillary Rights Agreement[s]"; and (3) "Merchandise Rights Agreement[s]." Le Compl. ¶ 30. Plaintiffs Fitch, Garza, Le, and Vera have each entered at least one of these

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

types of agreements containing the following forum selection clause:

> ZUFFA and Fighter hereby (a) expressly consent to the exclusive personal jurisdiction and venue of the state and federal courts located in Clark County, Nevada for any action brought by either party to interpret or enforce any provision of this Agreement; and (b) agree not to assert (by way of motion, as a defense or otherwise) that such legal proceeding has been brought in an inconvenient forum.[6]

Other putative class members have also agreed to similar or identical clauses in their Bout Agreements, Merchandise Rights Agreements, and/or Promotional and Ancillary Rights Agreements.  Hendrick Decl. ¶ 21.

It is well-established that a forum selection clause that refers only to disputes over interpretation or performance of a contract applies to non-contract claims, including antitrust claims.  *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513-14 (9th Cir. 1988) (considering whether the forum selection clause applied to business tort claims where contract specified Florence, Italy as forum for resolving disputes regarding "interpretation" or "fulfillment" of the agreement); *Bense v. Interstate Battery Sys. Of Am.*, 683 F.2d 718, 720-22 (2d Cir. 1982) (enforcing forum selection clause for actions "arising directly or indirectly from this agreement" to an action where plaintiff alleged only antitrust claims).  Whether a forum selection clause applies to non-contractual claims "depends on whether resolution of the claims relates to interpretation of the contract."  *Manetti-Farrow*, 858 F.2d at 514.  Similarly, where antitrust claims "turn[] upon specific contractual provisions" and implicate "considerations that the contract specifically addresse[s]," courts have found that contractual forum selection provisions in such agreements, such as an agreement to arbitrate, should be enforced with regard to those antitrust claims.  *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1515-16 (10th Cir.

---

[6] Hendrick Decl. ¶ 10(b), Ex. B (excerpt of Apr. 18, 2013 Merchandise Rights Agreement between Zuffa and Le), at § 7.6; ¶ 11(c), Ex. C (excerpt of Aug. 15, 2014 Bout Agreement between Zuffa and Le), at § 13; Ex. D (excerpt of Dec. 31, 2012 Promotional and Ancillary Rights Agreement between Zuffa and Fitch), at Art. 25.2; ¶12(c), Ex. F (excerpt of Dec. 21, 2012 Bout Agreement between Zuffa and Fitch), at § 13; ¶ 13(b), Ex. H (excerpt of Feb. 18, 2013 Promotional and Ancillary Rights Agreement between Zuffa and Garza), at Art. 25.2; ¶ 13(e), Ex. K (excerpt of Mar. 18, 2013 Bout Agreement between Zuffa and Garza), at § 13; ¶ 14(d), Ex. O (excerpt of Aug. 22, 2013 Bout Agreement between Zuffa and Vera), at § 13.

1  1995) (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 723 F.2d 155, 159-61

2  (1st Cir. 1983), *rev'd on other grounds*, 473 U.S. 614 (1985)); *see Manetti-Farrow*, 858 F.2d at

3  514, n.4 ("an agreement to arbitrate is actually a specialized forum selection clause") (citing

4  *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974)).  A forum selection clause that refers to

5  disputes over "interpretation" of the contract is "expansive" in nature and creates a clause that is

6  "quite broad" in its scope.  *See PPG Indus., Inc. v. Pilkington plc*, 825 F. Supp. 1465, 1478 (D.

7  Ariz. 1993) (citing *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 80 S. Ct. 1347, 1354

8  (1960)).

9         Where a Plaintiffs' antitrust claims are based on allegations that agreements have

10  anticompetitive effects, such claims "will necessitate interpreting the  . . . Agreement to determine

11  its meaning and whether the contracts between [the parties] actually do suppress competition in

12  the manner alleged."  *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 722 (9th Cir. 1999).  In *Simula*

13  and *PPG Industries*, the courts each held that a plaintiff's Sherman Act Section 2 monopolization

14  claim fell within the scope of a forum selection clause because the complaint relied on allegations

15  that the defendant used its contract with the plaintiffs "as an anticompetitive tool to restrain

16  trade."  *Simula*, 175 F.3d at 721-722 (citing *PPG Indus.*, 825 F. Supp. at 1478).  "In regard to

17  [plaintiff's] antitrust claims, [defendant] cannot be held liable for simply being a successful

18  competitor."  *PPG Indus.*, 825 F. Supp. at 1478.  Thus to evaluate Plaintiffs' antitrust claim, the

19  Court "will necessarily have to interpret or ascertain the meaning of the Agreement to determine

20  if defendant has misused the Agreement's restraints in the manner alleged."  *Simula*, 175 F.3d at

21  722 (quoting *PPG Indus.*, 825 F. Supp. at 1478).  In sum, where "the crux of [plaintiff's] antitrust

22  claim is that [defendant] foists upon [persons similarly situated to plaintiff] what plaintiff says are

23  burdensome and economically disadvantageous terms . . . [t]he antitrust claim therefore will

24  involve interpretation of the  . . . agreement and the performance requirements mandated by its

25  terms."  *Joseph v. Amazon.Com, Inc.*, No. C12–06256 HRL, 2013 WL 4806462, at *4 (N.D. Cal.

26  Sept. 9, 2013).

27         The situation here is no different.  While the Complaints (with a few brief exceptions)

28  avoid quoting the actual language of the agreements and do not specify exactly how the

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

Zuffa's Not. Mot. & Mot to Transfer Venue                    Case Nos. 5:14-cv-05484 EJD
                                                                     5:14-cv-05591 EJD; 5:14-cv-05621 EJD

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

1   agreements unreasonably restrain competition, Plaintiffs' antitrust claims are largely based on

2   conclusory assertions as to their interpretation of the parties' rights and performance requirements

3   under these agreements.  For example, Plaintiffs allege without specifics that the contracts bar

4   Plaintiffs "from working with would-be rival MMA Promotion companies all but indefinitely."

5   Le Compl. ¶ 9.  Similarly, they allege that the contract provision they call the "Ancillary Rights

6   Clause" is interpreted to have the effect that "the UFC can restrict a UFC Fighter's ability to

7   promote himself or herself for profit even after the UFC Fighter's career with the UFC has

8   ended."  Le Compl. ¶ 113(d).

9          Should this case go to trial, Zuffa intends to contest vigorously these allegations as to the

10   interpretation of these contracts.  For example, although Plaintiff Fitch and Zuffa agreed to a

11   "Promotional and Ancillary Rights Agreement" as recently as December 31, 2012, allegedly

12   restricting his ability to work with Zuffa competitors "all but indefinitely,"[7] Fitch has since

13   fought in at least four events with the World Series of Fighting, a competitor of the UFC,

14   including at least one bout that aired on the NBC Sports Network[8] and another bout against

15   fellow named-Plaintiff Dennis Hallman that appeared on NBC's broadcast network.[9]  As this

16   example shows, the validity of Plaintiffs' vague and conclusory assertions as to the interpretation

17   and performance requirements of their contracts with Zuffa is central to their claim of both

18   anticompetitive conduct and effect.  The same is true of the at least nine other contractual

19   _____

20   [7] Hendrick Decl., ¶ 11(a), Ex. D (Dec. 31, 2012 Promotional and Ancillary Rights Agreement between Jon Fitch and Zuffa).

21   [8] "TV and radio listings: December 13," Wash. Post, http://www.washingtonpost.com/sports/tv-and-radio-listings-december-13/2014/12/13/ac5062ee-828a-11e4-81fd-8c4814dfa9d7_story.html

22   (last accessed Jan. 26, 2015); see "Jon Fitch," http://www.sherdog.com/fighter/Jon-Fitch-4865 (last accessed Jan. 26, 2015) (listing under "Fight History," (1) June 14, 2013 bout against Josh

23   Burkman; (2) Oct. 26, 2013 bout against Marcelo Alfaya; (3) Jul. 5, 2014 bout against Dennis Hallman; and (4) Dec. 13, 2014 bout against Rousimar Palhares); see also "Biography,"

24   http://jonfitch.net/Bio.html (last accessed Jan. 26, 2015) (listing Oct. 26, 2013 and June 4, 2013 events with WSOF).

25   [9] The MMA Corner Staff, "WSOF 11: Jon Fitch vs. Dennis Hallman Full Fight Video

26   Highlights," July 5, 2014, http://themmacorner.com/2014/07/05/wsof-11-jon-fitch-vs-dennis-hallman-full-fight-video-highlights/ (last accessed Jan. 26, 2015) (noting that the "co-main event

27   of the evening showcased former UFC title challenger Jon Fitch against crafty submission ace Dennis Hallman" and "the four-fight main card aired live on NBC beginning at 4 p.m. ET").

28

1   provisions that Plaintiffs' Complaints allege are anticompetitive.  Le Compl. ¶ 113 (alleging

2   anticompetitive nature of (a) the "Exclusivity Clause"; (b) the "Champion's Clause"; (c) the

3   "'Right to First Offer' and 'Right to Match' Clauses"; (e) the "Promotion Clause"; (f) the

4   "Retirement Clause"; (g) unspecified "Tolling provisions"; and (h) the "Sponsorship and

5   Endorsement Clause"); ¶ 114 (alleging interpretation of what the Plaintiffs call the "unilateral

6   demotion-in-pay" provision).  In short, conclusory allegations as to the interpretation and effect of

7   their contracts with Zuffa form the gravamen of their antitrust claims, and pervade the

8   Complaints.[10]

9

10   [10] *E.g.,* Le Compl. ¶ 1 (alleging that UFC's anticompetitive scheme is based on unspecified "extreme restrictions on UFC Fighters' ability to fight for would-be rivals during and after their

11   tenure with the UFC" and agreements that "expropriate[]" fighters' "names and likenesses in perpetuity"); ¶3 (alleging "Identity Class Plaintiffs" are fighters "whose identities were exploited

12   or expropriated for use by the UFC" through contract provisions described in ¶ 113); ¶ 9 (alleging that the UFC's anticompetitive scheme relies on "forcing all UFC Fighters . . . to enter into

13   contracts that bar them from working with would-be rival MMA Promotion companies all but indefinitely"); ¶ 17 (alleging that "the UFC shuts out rival promotion opportunities for promoters

14   and fighters by . . . prohibiting its athletes from competing against any non-UFC MMA Fighters"); ¶ 73 ("Through, *e.g.,* exclusive contracts with MMA Fighters, the UFC has deprived

15   potential or actual competitors of Elite Professional MMA Fighter services"); ¶ 92 (alleging that UFC has the ability to "(iii) require UFC Fighters to enter into restrictive contracts, (iv) impair or

16   preclude UFC Fighters from engaging in their profession or working with would-be rival promoters; (v) expropriate the rights to UFC Fighters' Identities in perpetuity for little or no

17   compensation . . . and (vi) expropriate the Identities and deprive UFC Fighters of competitive levels of payment for the exploitation of their Identities in UFC Licensed Merchandise and/or

18   Promotional Materials licensed or sold by the UFC or its licensees"); §VII.A.2 ("The UFC Uses Exclusive Contracts with UFC Fighters as Part of its Anticompetitive Scheme"); ¶ 110 ("The

19   UFC's illegal monopsony position is sustained, in part, through the use of exclusive dealing agreements with UFC Fighters that lock in Elite Professional MMA Fighter services perpetually

20   and exclusively for the UFC"); ¶ 112 (alleging that the UFC's agreements with Fighters "require . . . exclusivity and assignments of the rights to Fighters' Identities"); ¶ 115 ("Plaintiffs allege here

21   that all of the UFC's contracts with Fighters — and the exclusionary provisions therein — taken together form part of the UFC's anticompetitive scheme"); ¶ 117 (alleging that the UFC "required

22   its athletes, for no compensation, to assign exclusively and in perpetuity their likeness rights for video game use"); ¶ 119 ("Through the 'Ancillary Rights Clause' of its Promotional Agreements

23   with Fighters, the UFC retains rights to the names and likenesses of every UFC Fighter in perpetuity"); ¶ 124 ("The Sponsorship and Endorsement Clause in UFC contracts with UFC

24   Fighters prohibits UFC Fighters from contracting with sponsors unless they first obtain approval from the UFC"); ¶ 130 (alleging that "The combination of the UFC's Exclusive Promotional

25   Agreements, its persistent refusal to co-promote, and its blocking of the ability of Elite Professional MMA Fighters to self-promote, even after the terms of their contracts had expired"

26

27

28

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

A "guiding principle for determination of the scope of a forum selection clause . . . is that courts will not tolerate 'artful pleading' of non-contract claims to avoid a forum selection clause." *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 922 F. Supp. 1334, 1380 (N.D. Iowa 1996), *aff'd*, 119 F.3d 688 (8th Cir. 1997) (citing *Lambert v. Kysar*, 983 F. 2d 1110, 1121 (8th Cir. 1993)). Plaintiffs recognize that the Complaints should have been brought in Nevada based on the forum selection clauses, but engage in artful pleading in an attempt to evade the inextricable link between their contracts and their antitrust claims; specifically, they assert that no Plaintiff is attempting *individually* to enforce or challenge his contract, but "[r]ather, . . . that all of the UFC's contracts with Fighters — and the exclusionary provisions therein — taken together form part of the UFC's anticompetitive scheme." Le Compl. ¶ 115. But this is a non-sequitur — that the contracts must be evaluated in the context of other contracts and other alleged conduct does not mean that these contracts would not need to be interpreted, and therefore cannot obviate the forum selection clauses. This allegation only highlights that their claims rely on their conclusory assertions regarding the interpretation of the performance requirements of the allegedly exclusionary contracts.

Other allegedly anticompetitive agreements between Zuffa and some Plaintiffs – including agreements with Plaintiffs Quarry, Hallman, and Vasquez – contain a different forum selection clause. These contracts provide for the mandatory and exclusive "resolution of any dispute arising from or relating to this Agreement" in the Eighth Judicial District Court for the State of Nevada, sitting in Las Vegas. Hendrick Decl. ¶ 20; *e.g.*, Hendrick Decl. ¶ 10(a), Ex. A (excerpt of Sept. 15, 2011 "Promotional and Ancillary Rights Agreement" between Zuffa and Le), at Art. 26.2. The Nevada state courts lack subject matter jurisdiction over a Sherman Act claim. Nevertheless, the Plaintiffs' agreement to this forum selection clause shows at a minimum that

prevented HDNet Fights from promoting events); ¶ 139 (alleging that "because UFC Fighters are bound by non-compete agreements, and because the UFC will not co-promote, would-be rival MMA promotion companies cannot stage bouts between their own non-UFC fighters and UFC Fighters"); ¶ 167 (alleging that UFC "exclusionary scheme" includes "leveraging its monopsony and monopoly power in the Relevant Markets through the use of Exclusive Agreements with Elite Professional MMA Fighters").

Zuffa's Not. Mot. & Mot to Transfer Venue                    Case Nos. 5:14-cv-05484 EJD
                                                              5:14-cv-05591 EJD; 5:14-cv-05621 EJD

resolving a dispute related to their contracts in Nevada is convenient.

In a class action, "where the record shows that some of the Plaintiffs are not bound by the forum selection clause, . . . those Plaintiffs are bound by their choice to bring suit in concert with others that are." *McNair v. Monsanto Co.*, 279 F. Supp. 2d 1290, 1309-10 (M.D. Ga. 2003). By electing to join a class action as a named plaintiff with Plaintiffs Le and Fitch, who are both bound by a specific forum selection clause requiring transfer to the District of Nevada, Plaintiff Quarry is also bound by that forum selection clause. Similarly, although Plaintiffs Hallman and Vasquez filed a separate Complaint, the pertinent allegations of their Complaint are identical to the others, they are represented by the same counsel and seek to represent the exact same classes, and their case is administratively related and highly likely to be consolidated with the other two. Thus, the *Vasquez* action should also be transferred in the interest of judicial economy and avoiding inconsistent decisions because "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Cont'l Grain Co. v. The FBL–585*, 364 U.S. 19, 26 (1960).

## C.   The Convenience and Fairness Factors in 28 U.S.C. § 1404(a) and Those Articulated by the Ninth Circuit Support Transfer to the District of Nevada.

Even if the forum-selection clauses discussed above did not require transfer, the facts overwhelmingly demonstrate that the District of Nevada offers a more convenient forum for both witnesses and parties and that transfer would be consistent with the interests of justice. In determining whether the transferee district would provide a more convenient forum for these actions, courts must consider "the convenience of parties and witnesses." 28 U.S.C. § 1404(a). Section 1404(a) requires "a lesser showing of inconvenience" than is needed to obtain dismissal for forum non conveniens. *Leroy-Garcia v. Brave Arts Licensing*, No. C 13-01181 LB, 2013 WL 4013869, at *4 (N.D. Cal. Aug. 5, 2013) (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)).

"In addition to the convenience considerations enumerated by § 1404(a), the Ninth Circuit has identified other fairness factors that should be weighed by the

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

15

court when considering a transfer:

'(1) the location where the relevant agreements were negotiated and executed,

(2) the state that is most familiar with the governing law,

(3) the plaintiff's choice of forum,

(4) the respective parties' contacts with the forum,

(5) the contacts relating to the plaintiff's cause of action in the chosen forum,

(6) the differences in the costs of litigation in the two forums,

(7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and

(8) the ease of access to sources of proof.'"

*Saunders*, 2014 WL 5339205, at *1 (quoting *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000)); *accord Arreola v. Finish Line*, No. 14-CV-03339-LHK, 2014 WL 6982571, at *8 (N.D. Cal. Dec. 9, 2014) (citing *Jones*, 211 F.3d at 498-99).[11]

All but one of these eight factors supports transfer to the District of Nevada, and the sole exception — the Plaintiffs' choice of forum — is entitled to no weight here because these are putative class actions and for other reasons explained below.

**1.      The District of Nevada is a more convenient venue for the parties.**

"The convenience of the parties is an important factor in determining whether to allow a transfer of venue." *Hawkes v. Hewlett-Packard Co.*, No. CV-10-05957-EJD, 2012 WL 506569, at *4 (N.D. Cal. Feb 15, 2012).  In this case, the convenience of parties clearly favors transfer to the District of Nevada.  Zuffa is a Nevada limited liability company with its principal place of business in Las Vegas.  Le Compl. ¶ 31.  Zuffa's contracts with fighters, events venues, media outlets, sponsors, and licensees of its intellectual property are negotiated and conducted by

---

[11] The Ninth Circuit's factors generally cover both the convenience issues raised by 28 U.S.C. 1404(a) and the "interest of justice," which looks "primarily at considerations of judicial economy, including, which court will be most familiar with governing law, the administrative difficulties flowing from court congestion[, and] the local interest in having localized controversies decided at home."  *Zut v. Harrah's Entm't, Inc.*, No. 3:13-cv-02372, 2013 WL 5442282, at *3 (N.D. Cal. Sept. 30, 2013) (internal citations and quotation marks omitted).

Zuffa's Not. Mot. & Mot to Transfer Venue                    Case Nos. 5:14-cv-05484 EJD
                                                            5:14-cv-05591 EJD; 5:14-cv-05621 EJD

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

Zuffa's senior executives, including Chairman and CEO Lorenzo Fertitta, President Dana White, Senior Executive Vice President and Chief Operating Officer Ike Lawrence Epstein, Executive Vice President and Chief Legal Officer Kirk Hendrick, Senior Vice President of Event Development and Operations Peter Dropick, and Senior Vice President of Global Marketing Partnerships Mike Mossholder.  Hendrick Decl. ¶ 6.  All of Zuffa's senior executives are based in Las Vegas, Nevada.  Hendrick Decl. ¶ 6.  With the exception of business handled by employees based abroad, none of Zuffa's executive functions are performed by officers or employees based outside of Las Vegas, Nevada.  Hendrick Decl. ¶¶ 6, 9.  Zuffa has no offices and no employees at all in the Northern District of California.  Hendrick Decl. ¶¶ 8-9.  If this case were to go to trial, many of these Las Vegas-based senior executives would likely be called as witnesses.  Hendrick Decl. ¶ 6-7.  In addition, at least one executive would want to participate in the trial as a corporate representative and one or more in-house counsel intend to attend important pre-trial hearings as well.  Hendrick Decl. ¶ 7.  If this action is maintained in the Northern District of California, Zuffa would suffer disruption of its business as its officers and employees lose working time traveling from Las Vegas to San Jose and would incur significant costs in providing transportation and accommodations for employee witnesses.  Hendrick Decl. ¶ 9.

By contrast, Plaintiffs would suffer no inconvenience if this action is transferred to the District of Nevada.  There are as many named Plaintiffs in these three actions residing in the District of Nevada as there are residing in the Northern District of California.  Plaintiff Jon Fitch is a resident of Las Vegas.  Le Compl. ¶ 38.  Only one named Plaintiff, Cung Le, is alleged to reside in the Northern District of California.  Le Compl. ¶ 36.  The other named Plaintiffs are geographically diverse, residing in Washington; Oregon; Southern California; and Oslo, Norway. Le Compl. ¶ 37; Vasquez Compl. ¶¶ 36-37; Vera Compl. ¶¶ 31-32.

### 2.      The District of Nevada is a more convenient venue for witnesses.

The convenience of witnesses, which courts in this District have called "the most important factor in deciding whether to transfer an action," strongly favors transfer to the District of Nevada.  *Lipnick v. United Air Lines*, *Inc*., No. C 11-2028 CW, 2011 WL 4026647, at *2 (N.D. Cal. Sept. 9, 2011) (quotation marks and citation omitted); *accord Hawkes*, 2012 WL 506569, at

17

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

*5.  As discussed in the previous section, the District of Nevada is the most convenient location for the party witnesses.  Furthermore, Plaintiffs' Complaints put at issue the testimony of and discovery from many non-party witnesses residing in the District of Nevada, including UFC's competitors and "top event venues" in Las Vegas, but few, if any, residing in the Northern District of California.

For example, the Complaints allege that "the UFC has entered into . . . exclusionary provisions with top event venues along the Las Vegas Strip and elsewhere."  Le Compl. ¶ 122. Evaluating the claim that Zuffa foreclosed competition at Las Vegas venues may require testimony and evidence both from Las Vegas venues that hosted a UFC event and from Las Vegas venues that hosted competing events or were capable of doing so.  These include the MGM Grand, Mandalay Bay, The Palms, The Hard Rock Hotel & Casino, Planet Hollywood, Sam Boyd Stadium, The Orleans, and the Thomas & Mack Center — all of which have recently hosted or are scheduled to host MMA events and/or competitive events such as boxing matches in 2015.[12] By contrast, Plaintiffs' Complaints name only a single venue that has held UFC events in the Northern District of California in the recent past — the SAP Center in San Jose, California.[13]  Le Compl. ¶ 7.  Other than the SAP Center, Electronic Arts, Inc., and a handful of putative class members, Plaintiffs' Complaints identify no other non-parties with relevant information that may be located in this District.  Le Compl. ¶ 28.

---

[12] ESPN, "MMA Schedule – 2014," http://espn.go.com/mma/schedule/_/year/2014 (last accessed Jan. 8, 2015) (listing events at The Palms, Mandalay Bay, Sam Boyd Stadium, MGM Grand, Hard Rock Hotel & Casino, including Bellator's BFC 2014 Monster Energy Cup at Sam Boyd Stadium); http://www.orleanscasino.com/entertain/event-calendar (last accessed Jan. 26, 2015) (listing events at The Orleans, including the World Wrestling Championships in September 2015); Case Keefer, "The biggest fights at the Thomas & Mack Center and how they got there: From Bowe vs. Holyfield [boxing] to Liddell vs. Couture [MMA], this venue has rich history in combat sports," Las Vegas Sun, Nov. 21, 2013, http://www.lasvegassun.com/news/2013/nov/21/reflecting-biggest-fights-thomas-mack-center-and-h/ (last accessed Jan. 26, 2015).

[13] The Complaints reference "the SAP Center and the HP Arena in San Jose, California." Both names, however, refer to the same venue, which was renamed when the arena entered a new sponsorship agreement.  *See* John Woolfolk, "San Jose's HP Pavilion to become SAP Center," San Jose Mercury News, June 6, 2013, http://www.mercurynews.com/ci_23395356/hp-pavilion-become-sap-center (last accessed January 26, 2015).

Zuffa's Not. Mot. & Mot to Transfer Venue                    Case Nos. 5:14-cv-05484 EJD
5:14-cv-05591 EJD; 5:14-cv-05621 EJD

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

1    The geographic distribution of UFC's competitors, who may also be witnesses, also

2    weighs in favor of transfer to Las Vegas.  The Complaints allege that "no later than March 2011,

3    those few fringe MMA Promoters that the UFC had not yet acquired or put out of business . . .

4    effectively functioned and continue to function as 'minor leagues' for the UFC."  Le Compl.

5    ¶ 135.  To address this allegation, the parties are likely to call one or more witnesses from the

6    World Series of Fighting, a Las Vegas-based promoter of MMA events that competes with the

7    UFC and televises its bouts on the NBC network.  Note 5 *supra*.  Similarly, to address Plaintiffs'

8    allegation that promotion of "live Elite Professional MMA events is not reasonably

9    interchangeable with promoting any other sport or entertainment, including boxing" (Le Compl.

10    ¶ 62), the parties may call witnesses with experience promoting other sports or entertainment that

11    regularly compete with MMA events, including executives from boxing promotion companies

12    based in Las Vegas such as Top Rank, Inc. and Wynn Las Vegas, and other martial arts event

13    promoters such as Lion Fight Promotions, who are based in Las Vegas.  Note 5 *supra*.

14    Plaintiffs allege that the location of former MMA promoter Strikeforce in San Jose weighs

15    in favor of venue in the Northern District of California.  But after the acquisition, the contracts,

16    books, and records that Zuffa acquired were transferred to Las Vegas.  Hendrick Decl. ¶ 5.

17    Strikeforce's former CEO, Scott Coker, is now the President of Bellator, an MMA promoter that

18    competes with Zuffa, located in Newport Beach, California.[14]  Neither factor supports venue in

19    the Northern District of California; the former clearly supports transfer to Nevada.

20    To the extent that party or non-party witnesses need to travel to Nevada, Las Vegas is

21    served by a major international airport with direct or at least convenient connections to all major

22    U.S. cities, and easy access to international connections,[15] and is closer and more convenient than

23

24    [14] Tristen Critchfield, "Former Strikeforce CEO Scott Coker Named Bellator MMA President,"
Sherdog.com, Jun. 18, 2014, http://www.sherdog.com/news/news/Former-Strikeforce-CEO-

25    Scott-Coker-Named-Bellator-MMA-President-69373 (last accessed Jan. 26, 2015); *see also* n.7
*supra* (Nevada State Athletic Commission records show Bellator Sport Worldwide as located in

26    Newport Beach, CA).

27    [15] Port Authority of New York and New Jersey, "2013 Airport Traffic Report," at 31-32,
http://www.panynj.gov/airports/pdf-traffic/ATR2013.pdf (last accessed Jan. 12, 2015) (showing

28

19

1    San Jose for the large majority of likely witnesses.  This is true even for witnesses in Southern

2    California.[16]

3              **3.    Nevada has a greater local interest because the relevant agreements**
                       **were made in Nevada.**
4

5    Every single agreement — more than two dozen in all — between Zuffa and the named

6    Plaintiffs was expressly deemed made in Las Vegas and was executed by Las Vegas-based Zuffa

7    executives.  Hendrick Decl. ¶ 18; *see* ¶¶ 10-16.  Moreover, Zuffa's agreements with the Las

8    Vegas event venues noted in Plaintiffs' Complaints were also negotiated and executed by Las

9    Vegas-based parties.  Le Compl. ¶ 122; Hendrick Decl. ¶ 6.  Because Plaintiffs' actions "arise[]

10   out of negotiations and agreements that were effectuated" in Las Vegas and "few of the contacts

11   relating to this action are based in California," the "interest in having localized controversies

12   decided at home weighs more heavily in favor of" Las Vegas.  *King v. SAM Holdings, LLC*, No.

13   5:CV-10-04706-EJD, 2011 WL 4948603, at *4 (N.D. Cal. Oct. 11, 2011).  "When 'defendants

14   are not California corporations, California has little interest in keeping the litigation in this state

15   to deter future wrongful conduct.'"  *Moretti v. Hertz Corp.*, No. C 13-02972 JSW, 2014 WL

16   1410432, at *5 (N.D. Cal. Apr. 11, 2014) (citing *Guimei v. Gen. Elec. Co.*, 172 Cal. App. 4th 689,

17   703 (2009)).

18            **4.    Nevada courts are more familiar with the law governing the**
                      **interpretation of the challenged contracts.**
19

20   Plaintiffs' Sherman Act claims are federal claims and all federal district courts are

21   considered "equally capable of applying federal law."  *Hawkes*, 2012 WL 506569, at *5.  As

22   explained above, however, Plaintiffs' federal claims are premised largely on their characterization

23   of allegedly exclusionary provisions in agreements between Zuffa and Plaintiffs that the parties

24   agreed must be interpreted according to Nevada law.  Hendrick Decl. ¶ 18; *e.g.*, Hendrick Decl.

25   _____

     McCarran International Airport to be the 9th most utilized airport by U.S. passengers and 24th in
26   terms of worldwide passenger traffic).

     [16] Using Los Angeles as a common starting point, the driving distance to Las Vegas is 271 miles,
27   compared to 339 miles to San Jose, based on driving direction inquiries performed on Google
     Maps.  Maps.google.com.
28

Zuffa's Not. Mot. & Mot to Transfer Venue          Case Nos. 5:14-cv-05484 EJD
                                                   5:14-cv-05591 EJD; 5:14-cv-05621 EJD

¶ 12(a), Ex. D (excerpt of Dec. 31, 2012 Promotional and Ancillary Rights Agreement between Fitch and Zuffa), at Art. 25.1 (providing that contract "shall be interpreted, and the rights and liabilities of the parties hereto determined, in accordance with the State of Nevada").  Courts in Nevada are more familiar with Nevada law governing the interpretation of these contracts.

### 5. Because these are putative class actions with almost no connection to this District brought by non-resident Plaintiffs, their choice of forum is entitled to little weight.

In cases like this one, where the parties have agreed to forum selection clauses, the Supreme Court has held that "the plaintiff's choice of forum merits no weight."  *Atl. Marine Const.*, 134 S. Ct. at 581.  Furthermore, "the degree of deference [due a plaintiff's choice of venue] is substantially diminished in several circumstances, including where: (1) the plaintiff's venue choice is not its residence, (2) the conduct giving rise to the claims occurred in a different forum, (3) the plaintiff sues on behalf of a putative class, or (4) plaintiff's choice of forum was plaintiff's second choice."  *Park*, 964 F. Supp. 2d at 1094 (internal citations and quotations marks omitted).  Here, the first three circumstances support transfer to the District of Nevada:

> (1) In both the *Vasquez* and *Vera* actions, no named Plaintiff resides in the Northern District of California and in the *Le* Action, only one of the three named Plaintiffs resides in the Northern District while another resides in the District of Nevada.

> (2)  The conduct giving rise to the claims at issue — Zuffa's allegedly restrictive contracts with fighters, venues and others — occurred in the District of Nevada.

> (3)  Each action is a putative class action.

Because there is no significant connection between this District and the Plaintiffs or their causes of action, Plaintiffs' choice of forum is not entitled to deference.  *King*, 2011 WL 4948603, at *2 ("Though a plaintiff's choice of forum is generally entitled to deference, that principle does not hold nearly as strongly 'where the plaintiff does not reside in the venue or where the forum lacks significant connection to the activities alleged in the complaint.'") (quoting *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001)); *see also Zut*, 2013 WL 5442282, at *2 ("'If the operative facts have not occurred within the forum and the forum has no

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

21

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

interest in the parties or subject matter, plaintiff's choice of forum is entitled to only minimal

consideration.'") (brackets omitted) (quoting *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987)).

**6.      The parties' respective contacts with these districts weigh heavily in favor of transfer to the District of Nevada.**

As explained, the parties' contacts with the District of Nevada are many orders of

magnitude greater than the parties' contacts with this District.  Zuffa and all of its business

operations are based in Nevada and are frequently conducted with partners in Nevada, including

event venues, fighters, and others.  Le Compl. ¶¶ 31, 122; Hendrick Decl. ¶¶ 2-6.  On the other

hand, Plaintiffs' contacts to the Northern District of California are no greater than their contacts

with the District of Nevada, based on the residency of the named Plaintiffs.  Le Compl. ¶¶ 36-38;

Vera Compl. ¶¶ 31-32; Vasquez Compl. ¶¶ 36-37.

**7.      There are few meaningful contacts between Plaintiffs' cause of action and the Northern District of California.**

Other than one venue hosting MMA events approximately once a year, the residency of

one named Plaintiff in only one of three actions, and a handful of putative class members (Le

Compl. ¶ 28), the only contacts between Plaintiffs' cause of action and this District are Plaintiffs'

allegations that (1) Redwood City-based Electronic Arts, Inc. publishes a video game in which

only one out of seven named Plaintiffs (Le) is alleged to have appeared, and (2) Zuffa acquired

Strikeforce, a San Jose-based MMA promoter.  Le Compl. ¶¶ 28, 36.  For the reasons discussed

above, these are not meaningful enough to offset the clear connection to, or convenience of, Las

Vegas as the proper forum for this action.

**8.      The difference in the cost of litigation favors transfer to the District of Nevada.**

"Generally, litigation costs are reduced when venue is located near the most witnesses

expected to testify."  *Park*, 964 F. Supp. 2d at 1095.  As discussed above, there are significantly

more witnesses, both party and non-party, in the District of Nevada than in Northern District of

California.  Moreover, because more likely non-party witnesses reside in the District of Nevada,

the availability of compulsory process to compel attendance of non-party witnesses favors

Zuffa's Not. Mot. & Mot to Transfer Venue                    Case Nos. 5:14-cv-05484 EJD
                                                             5:14-cv-05591 EJD; 5:14-cv-05621 EJD

1   transfer.  *See King*, 2011 WL 4948603, at *4 (finding that residency of key non-party witness in

2   transferee forum weighed in favor of transfer because that witness could not be compelled to

3   appear in the original forum).  Furthermore, transfer to the District of Nevada would improve the

4   parties' access to sources of proof.  "Although developments in electronic conveyance have

5   reduced the cost of document transfer somewhat, costs of litigation can still be substantially

6   lessened if the venue is in the district in which most of the documentary evidence is stored."

7   *Park*, 964 F. Supp. 2d at 1095.  Most of the documentary evidence relevant to this case is stored

8   at Zuffa's offices in Las Vegas (Hendrick Decl. ¶¶ 4-5), while the amount likely to be found in

9   the Northern District is minimal at best.  Accordingly, this factor supports transfer to the District

10   of Nevada.  *See King*, 2011 WL 4948603, at *4 (finding ease of access to sources of proof

11   favored transfer where documents were located in transferee district).

12           **9.      The avoidance of counterclaims favors transfer to the District of
13                     Nevada.**

14           Finally, transfer is warranted because in the absence of transfer, Zuffa may bring

15   counterclaims for breach of the forum selection clause against Plaintiffs Le, Fitch, Garza, and

16   Vera, and seek damages for travel and other costs incurred by Zuffa and its executives as a result

17   of being forced to defend itself in California rather than in Las Vegas.  *J.P. Morgan Chase Bank,*

18   *N.A. v. McDonald*, 760 F.3d 646, 651 (7th Cir. 2014) (holding that "breach of a forum-selection

19   clause is no different from breach of other contractual provisions" and may give rise to damages

20   resulting from costs incurred in having to resolve dispute in a forum other than the one agreed

21   upon); *Molnar v. 1-800-Flowers.com, Inc.*, No. CV 08-0542 CAS (JCx), 2008 WL 4772125, at

22   *5 (C.D. Cal. 2008) (finding adequately pled counterclaim for damages for breach of a forum

23   selection clause after plaintiff brought suit in California when contract designated New York

24   forum).  For this reason, convenience factors also favor transfer to avoid additional litigation over

25   the counterclaims.

26

27

28

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

Zuffa's Not. Mot. & Mot to Transfer Venue                Case Nos. 5:14-cv-05484 EJD
                                                         5:14-cv-05591 EJD; 5:14-cv-05621 EJD

1    **V.      CONCLUSION**

2           For the foregoing reasons, this Court should order Plaintiffs' actions transferred to the

3    United States District Court for the District of Nevada, Las Vegas Division.

4    Dated: January 30, 2015            Respectfully Submitted,

5                                       BOIES, SCHILLER & FLEXNER LLP

6

7                                       By: */s/ William A. Isaacson*
                                               William A. Isaacson

8                                       William A. Isaacson (Admitted *Pro Hac Vice*)
                                        BOIES, SCHILLER & FLEXNER LLP
9                                       5301 Wisconsin Ave, NW
                                        Washington, DC 20015
10                                      Tel: (202) 237-2727
11                                      Fax: (202) 237-6131
                                        Email: wisaacson@bsfllp.com
12
                                        John F. Cove, Jr. (#212213)
13                                      BOIES, SCHILLER & FLEXNER LLP
                                        1999 Harrison Street, Suite 900
14                                      Oakland, CA 94612
15                                      Tel: (510) 874-1000
                                        Fax: (510) 874-1460
16                                      Email: jcove@bsfllp.com

17                                      Richard J. Pocker (#114441)
                                        BOIES, SCHILLER & FLEXNER LLP
18                                      300 South Fourth Street, Suite 800
19                                      Las Vegas, NV 89101
                                        Tel: (702) 382 7300
20                                      Fax: (702) 382 2755
                                        Email: rpocker@bsfllp.com
21
                                        Donald J. Campbell (*Pro Hac Vice* pending)
22                                      J. Colby Williams (*Pro Hac Vice* pending)
                                        CAMPBELL & WILLIAMS
23                                      700 South 7th Street
24                                      Las Vegas, Nevada 89101
                                        Tel: (702) 382-5222
25                                      Fax: (702) 382-0540
                                        Email: DJC@campbellandwilliams.com
26                                            JCW@campbellandwilliams.com

27                                      *Attorneys for Defendant* Zuffa, LLC, d/b/a
                                        Ultimate Fighting Championship and UFC
28

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A