# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| Cung Le, Nathan Quarry, and Jon Fitch, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>Defendant. | Case No. 5:14-cv-05484-EJD; Case No. 5:14-cv-05591-EJD; Case No. 5:14-cv-05621-EJD<br><br>DECLARATION OF ERIC L. CRAMER IN SUPPORT OF MOTION TO APPOINT INTERIM CO-LEAD CLASS COUNSEL |
| Luis Javier Vazquez and Dennis Lloyd Hallman, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>Defendant. | |
| Brandon Vera and Pablo Garza, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>Defendant. | |

I, Eric L. Cramer, declare:

1.    I am a Managing Shareholder of the law firm Berger & Montague, P.C.

2.    My firm is counsel for plaintiffs in these three related actions.

3.    In this declaration, I will discuss my firm's credentials, *see* ¶¶ 5-9, and my own credentials. *See* ¶¶ 10-13. I will then explain the reasons why my firm supports the leadership

1

Declaration of Eric L. Cramer in Support of Motion to Appoint Interim Co-Lead Class Counsel
Case No. 5:14-cv-05484-EJD; Case No. 5:14-cv-05591-EJD; Case No. 5:14-cv-05621-EJD

group that includes:  myself and Michael Dell'Angelo of my firm, Joseph R. Saveri of the Joseph
Saveri Law Firm, Inc.; and Benjamin D. Brown and Richard Koffman of Cohen Milstein Sellers
& Toll PLLC ("Co-Lead Class Counsel").  *See* ¶¶ 14-17.

4.     In summary, and by way of introduction, I and my firm believe that the proposed
Co-Lead Class Counsel should be appointed as interim Class Counsel under Fed. R. Civ. P.
23(g) in this case because, among other things, this group (a) is comprised of some of the top
antitrust law firms and lawyers in the country, (b) collectively investigated and filed the first set
of cases against Defendant Zuffa, LLC, and (c) has shown itself capable of working together
efficiently and effectively in investigating the allegations in the Complaints in these actions and
having completed a great deal of preliminary work in this matter.

## Credentials of Berger & Montague, P.C.[1]

5.     Described by *Chambers & Partners* as a "[b]outique firm with deep expertise in
complex antitrust litigation," Berger & Montague pioneered the antitrust class action and has
been engaged in the practice of complex and class action litigation for 44 years.  The firm was
founded by the late David Berger, who is widely considered to be one of the founding fathers of
class actions.  Berger started the firm along with the late Herbert Newberg, author of the seminal
"NEWBERG ON CLASS ACTIONS," and H. Laddie Montague, Jr., who has been referred to as a
"dean of the Bar" by *Chambers & Partners*.  Since its founding, Berger & Montague has won
verdicts and settlements recovering over $30 billion for clients and class members.  Courts
across the country have appointed Berger & Montague as lead or co-lead class counsel in
hundreds of class actions—many in the antitrust field—and have recognized both the
qualifications of Berger & Montague in appointing the firm as lead counsel and the quality of the
work performed by the firm in that capacity.

6.     The U.S. edition of *The Legal 500*, a guide to worldwide legal services providers,
has recommended Berger & Montague as a "Top Tier Firm" for representing plaintiffs in

---

[1] Attached as Exhibit A is Berger & Montague's firm profile.

antitrust class action litigation and describes the firm as "excellent," "easy to deal with," and "noted for the depth of its team."  Berger & Montague has also appeared on *The National Law Journal*'s "Hot List" of the Top Plaintiffs' Law Firms in the United States in ten of the last twelve years.  *Chambers & Partners* has similarly recognized Berger & Montague as a leading antitrust law firm for eight consecutive years.  The firm was also recently selected for inclusion on *The National Law Journal* and Law.com's inaugural list of "Elite Trial Lawyers," recognizing law firms that "have done exemplary and cutting-edge work on behalf of their clients and are established leaders in the area of plaintiff law."

      7.     Over the past 44 years, Berger & Montague has served as lead or co-lead counsel in myriad antitrust cases representing plaintiff classes alleging price fixing, vertical trade restraints, monopolization and other anticompetitive conduct in diverse markets.  Berger & Montague is currently serving in a leadership role in the following antitrust cases, among others:

      a.   *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, No. 05-md-5075 (E.D.N.Y.)

      b.   *In re Commodity Exchange, Inc., Gold Futures and Options Trading Litigation*, No. 14-md-2548 (S.D.N.Y.)

      c.   *In re Niaspan Antitrust Litigation*, No. 13-md-2460 (E.D. Pa.)

      d.   *In re Loestrin 24 Fe Antitrust Litigation*, No. 13-md-2472 (D.R.I.)

      e.   *In re Domestic Drywall Antitrust Litigation*, 13-md-2437 (E.D. Pa.)

      f.   *In re Nexium Antitrust Litigation*, No. 12-md-2409 (D. Mass.)

      g.   *In re Lipitor Antitrust Litigation*, No. 12-cv-2389 (D.N.J.)

      h.   *Castro, et al. v. Sanofi Pasteur Inc.*, No. 11-cv-7178 (D.N.J.)

      i.   *In re Effexor XR Antirust Litigation*, No. 11-cv-5479 (D.N.J.)

      j.   *In re Androgel Antitrust Litigation (II)*, No. 09-md-2084 (N.D. Ga.)

      k.   *In re Chocolate Confectionary Antitrust Litigation*, No. 08-md-1935 (M.D. Pa.)

      l.   *In re Wellbutrin XL Antitrust Litigation*, No. 08-cv-2431 (E.D. Pa.)

      m.   *In re K-Dur Antitrust Litigation*, No. 01-cv-1652 (D.N.J.)

1       n.  *In re Currency Conversion Fee Antitrust Litigation*, MDL No. 1409 (S.D.N.Y.)

2       o.  *In re: Pre-Filled Propane Tank Antitrust Litigation*, MDL No. 2567 (W.D. Mo.)

8.     In just the past two years, the firm has continued to obtain precedent setting victories for its clients, including the largest-ever monetary settlement of a private antitrust class action: $7.25 billion in cash in *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation* (nearly $5.7 billion after reduction for opt outs).  As further described below, earlier this year, the firm, led by the undersigned, achieved yet another ground-breaking settlement in the payment network arena, with a $130 million settlement relating to the over-the-road fleet payment card market in *Marchbanks Truck Service Inc., et al. v. Comdata Network, Inc., et al.*, No. 07-1078 (E.D. Pa.) ("*Comdata*").  Over the past decade, Berger & Montague has also been in the vanguard of challenging pay-for-delay and other means by which pharmaceutical companies have sought to delay generic competition.  The firm has well over $1 billion in settlements in these pharmaceutical cases, including in *In re K-Dur Antitrust Litigation*, 686 F.3d 197 (3d Cir. 2012), which helped set the stage for the Supreme Court's decision in *Federal Trade Commission v. Actavis*, 133 S. Ct. 2223 (June 17, 2013).

9.     These recent successes build upon the firm's storied history of serving as lead, co-lead or co-trial counsel on many of the most significant civil antitrust cases over the last 40 years, including *In re: Currency Conversion Fee Antitrust Litigation* (recovery of $336 million), *In re Corrugated Container Antitrust Litigation* (recovery in excess of $366 million), the *Infant Formula* case (recovery of $125 million), the *Brand Name Prescription Drug* price fixing case (recovery of more than $700 million), the *Graphite Electrodes Antitrust Litigation* (recovery of more than $134 million), and the *High-Fructose Corn Syrup Antitrust Litigation* (recovery of $531 million).

### <u>My Credentials</u>

10.    I have a national practice in the field of complex litigation, primarily in the area of antitrust class actions, and I have repeatedly been selected by *Chambers & Partners* as one of Pennsylvania's top tier antitrust lawyers, and was selected as a top tier antitrust lawyer nationally

this year; highlighted annually since 2011 by *The Legal 500* as one of the country's top lawyers in the field of complex antitrust litigation; repeatedly been deemed one of the "Best Lawyers in America;" and been designated a "Super Lawyer" by *Philadelphia Magazine* for many years in a row.  In 2014, I was selected by *Philadelphia Magazine* as one of the top 100 lawyers in Philadelphia and, also in 2014, received an "Honorable Mention" for Outstanding Antitrust Litigation Achievement in Private Law from the American Antitrust Institute for my work in the *Comdata* matter (discussed above and further below).  *Chambers & Partners* has observed that I am "really a tremendous advocate in the courtroom, with a very good mind and presence."

11.    I have prosecuted multiple complex antitrust matters and am responsible for winning numerous significant settlements for my clients and class members totaling well over $2 billion.  I am currently lead counsel in several antitrust and other litigation matters in a variety of industries and numerous courts across the country.  Recently, following seven years of litigation, my team and I achieved a ground-breaking settlement in an antitrust case relating to the over-the-road fleet payment card market in *Comdata*.  The *Comdata* settlement, which received final approval in July 2014, provides for $130 million plus valuable prospective relief that rolled back much of the conduct plaintiffs had challenged as anticompetitive for a class including thousands of truck stops and retail fueling facilities across the country.  I was also co-lead counsel and on the trial team of an antitrust class action on behalf hundreds of drug resellers against Abbott Laboratories relating to alleged exclusionary conduct with regard to certain HIV drugs.  This case, *Meijer v. Abbott Labs.*, No. 07-5985 (N.D. Cal.), settled in 2011 for $52 million after four days of a jury trial before Judge Wilken.

12.    I am also a frequent speaker at antitrust and litigation related conferences.  For example, I was the only plaintiffs' lawyer selected to serve on the American Bar Association's Antitrust Section Transition Report Task Force delivered to the incoming Obama Administration in 2012.  I also serve as a Senior Fellow and Vice President of the Board of Directors of the American Antitrust Institute; was a past President of COSAL (Committee to Support the Antitrust Laws), a leading industry group; am a member of the Advisory Board of the Institute of

1   Consumer Antitrust Studies of the Loyola University Chicago School of Law; and serve as a

2   member of the Board of Directors and Executive Committee of Public Justice, a leading trial

3   lawyer organization and public interest law firm.

4          13.     In addition, I have written widely in the fields of class certification and antitrust

5   law.  On January 21, 2015, in *In re Nexium Antitrust Litigation,* 1:12-md-02409 (D. Mass), the

6   United States Court of Appeals for the First Circuit held that classes can be certified with

7   uninjured class members, quoting (at pp. 30 & 36) from two separate articles I co-authored.

8   These articles are Davis, Cramer, et al., *The Puzzle of Class Actions with Uninjured Members*, 82

9   G.W.L. Rev. 858, 859 (May 2014) and Davis & Cramer, *Antitrust, Class Certification, and the*

10  *Politics of Procedure*, 17 Geo. Mason L. Rev. 969, 984-85 (2010).  The latter piece was also

11  cited by the Third Circuit in *Behrend v. Comcast Corp.*, 655 F.3d 182, 200, n.10 (3d Cir. 2011),

12  *rev'd*, 133 S. Ct. 1426 (2013).  I have also co–written a number of other pieces, including: *Of*

13  *Vulnerable Monopolists?: Questionable Innovation in the Standard for Class Certification in*

14  *Antitrust Cases*, 41 RUTGERS L.J. 355 (2009-2010) (http://ssrn.com/abstract=1542143); *A*

15  *Questionable New Standard for Class Certification in Antitrust Cases*, published in the ABA's

16  Antitrust Magazine, Vol. 26, No. 1 (Fall 2011); a Chapter of American Antitrust Institute's

17  Private International Enforcement Handbook (2010), entitled "*Who May Pursue a Private*

18  *Claim?*"; and, a chapter of the American Bar Association's Pharmaceutical Industry Handbook

19  (July 2009), entitled "*Assessing Market Power in the Prescription Pharmaceutical Industry*."

20  Most recently, I have been tasked with updating a chapter in the ABA's widely read and cited

21  book, Proving Antitrust Damages.

22          **Proposed Co-Lead Class Counsel Should Be Appointed Pursuant to Rule 23(g)**

23          14.     In mid-2014, my firm began working with proposed Co-Lead Counsel Cohen

24  Milstein and additional plaintiffs' counsel, Warner Angle Hallam Jackson & Formanek, PLC to

25  develop the factual and legal bases for these actions in which our clients allege that Defendant

26  Zuffa, LLC engaged, and continues to engage in certain anticompetitive behaviors in violation of

27  the antitrust laws.  Subsequently, we reached out to the Joseph Saveri Law Firm to assist in the

28

Declaration of Eric L. Cramer in Support of Motion to Appoint Interim Co-Lead Class Counsel
Case No. 5:14-cv-05484-EJD; Case No. 5:14-cv-05591-EJD; Case No. 5:14-cv-05621-EJD

1   continued investigation, filing and prosecution of these actions.

2        15.      Proposed Co-Lead Class Counsel have worked together efficiently to advance this

3   litigation and represent the interests of plaintiffs and the proposed Classes.  Together, Co-Lead

4   Class Counsel: (1) performed substantial factual research as detailed more fully in the

5   Complaints filed in these actions; (2) moved to consolidate these three actions and subsequently

6   filed related actions arising out of similar facts and circumstances to ensure efficiency and

7   economy; (3) monitored various sources of discovery including, without limitation, social media

8   and other publicly available websites and sources, and have taken action to ensure the

9   preservation of such discoverable materials when warranted; (4) have participated in the ongoing

10  negotiation of a protective order; (5) negotiated a preliminary schedule for Defendant's response

11  to the Complaint and any related briefing; and (6) successfully responded to Defendant's

12  unwarranted attempt to abbreviate the briefing schedule on its motion to transfer.

13       16.      My firm and I believe that the proposed Co-Lead Class Counsel should be

14  appointed pursuant to Fed. R. Civ. P. 23(g) based on all of the factors set out above, including

15  the efforts our firms made to investigate the underlying conduct, our history and experience in

16  analogous cases, as well as the successful track record Co-Lead Counsel have had working with

17  each other.  Each of these firms has decades of experience in managing the successful

18  prosecution of major antitrust class actions.  I have worked with each of the firms that form the

19  Co-Lead Class Counsel group on numerous major antitrust class actions.  During those cases, I

20  witnessed firsthand their ability to fulfill all responsibilities demanded of co-lead counsel in

21  these cases, including organizing the efforts of multiple firms and lawyers, delegating

22  responsibilities, making strategic decisions, appearing at hearings at trial, and working with

23  defense counsel when necessary and appropriate.  To take just a few examples:

24   •  I was on the executive committee in *In re Titanium Dioxide Antitrust Litigation*, No.
        1:10-cv-00318-RDB (D. Md.), in which Joseph Saveri of the Joseph Saveri Law Firm,
25      Inc. served as one of three court appointed co-lead counsel.  Led by Mr. Saveri, we
        succeeded in securing $163.5 million in settlements for a class of thousands of direct
26      purchasers against an alleged cartel in the titanium dioxide industry in 2013.  I was
        impressed with Mr. Saveri's leadership as well as his ability to work efficiently with the
27

28
                                                7
             Declaration of Eric L. Cramer in Support of Motion to Appoint Interim Co-Lead Class Counsel
             Case No. 5:14-cv-05484-EJD; Case No. 5:14-cv-05591-EJD; Case No. 5:14-cv-05621-EJD

many firms in the case to achieve a great outcome for the class.  I have also worked closely with Mr. Saveri in, among other cases, *In re High-Tech Employee Antitrust Litigation*, No. 11-cv-2509 (N.D. Cal.), in which he currently serves as co-lead.  His work in that matter has been exemplary in all respects.

- I have many times observed firsthand the quality of work and leadership exemplified by Benjamin D. Brown, Richard Koffman and their team at Cohen Milstein Sellers & Toll PLLC.  For example, I worked with Mr. Koffman in *In re Plasma-Derivative Protein Therapies Antitrust Litigation*, No. 1:09-cv-07666 (N.D. Ill.), a case where Cohen Milstein served as one of three co-lead counsel and achieved $128 million in settlements. My firm and I currently serve as one of three co-lead counsel in *In re Domestic Drywall Antitrust Litigation*, 13-md-2437 (E.D. Pa.), along with Cohen Milstein as well.  In my experience, Mr. Brown and Mr. Koffman are skilled lawyers with excellent judgment and temperament.  In summary, Cohen Milstein is an excellent firm with a great reputation and Mr. Brown's and Mr. Koffman's work also have been exemplary in all respects.

17.     In my experience, three firm co-lead counsel structures, if properly managed and in the right cases, can be efficient, cost effective, and produce excellent results.  When the firms involved prove to be efficient and adept (as the three firms at issue have already proven to be), having multiple firms as co-lead can provide many benefits in complex antitrust litigation, such as pooling financial and personnel resources, delegating tasks when plaintiffs are fighting battles on multiple fronts, and providing a broad depth of experience from which to draw in making strategic decisions.  My firm currently successfully serves as co-lead counsel in a variety of cases where three or more firms serve as co-lead: *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, No. 05-md-5075 (E.D.N.Y.) (3 firm co-lead); *In re Loestrin 24 Antitrust Litig.*, No. 13-md-2474 (D.R.I.) (4 firm co-lead); *In re Niaspan Antitrust Litig.*, No. 13-md-2460, (E.D. Pa.) (3 firm co-lead); *In re Nexium Antitrust Litig.*, No. 12-md-2409 (D. Mass.) (3 firm co-lead); *In re Domestic Drywall Antitrust Litig.*, 13-md-2437 (E.D. Pa.) (3 firm co-lead); *In re Effexor XR Antitrust Litig.*, No. 11-cv-5479 (D.N.J.) (6 firm executive committee); *In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409 (S.D.N.Y.) (4 firm co-lead).

The proposed Co-Lead Class Counsel have devoted substantial resources to investigating this action, filed the first three cases, have taken steps to protect the proposed Class from evidence spoliation, and effectively prosecuted this action to date.  Co-Lead Counsel has performed this work collaboratively and efficiently, demonstrating their ability to jointly lead the

1  case.  It is my opinion that these factors strongly favor Co-Lead Class Counsel to be appointed as

2  co-lead class counsel in this case pursuant to Fed. R. Civ. P. 23(g).

Declaration of Eric L. Cramer in Support of Motion to Appoint Interim Co-Lead Class Counsel
Case No. 5:14-cv-05484-EJD; Case No. 5:14-cv-05591-EJD; Case No. 5:14-cv-05621-EJD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and that this declaration was executed in Philadelphia, Pennsylvania on February 13, 2015.

By:     /s/
        Eric L. Cramer

Declaration of Eric L. Cramer in Support of Motion to Appoint Interim Co-Lead Class Counsel
Case No. 5:14-cv-05484-EJD; Case No. 5:14-cv-05591-EJD; Case No. 5:14-cv-05621-EJD