Joseph R. Saveri (State Bar No. 130064)
JOSEPH SAVERI LAW FIRM, INC.
505 Montgomery Street, Suite 625
San Francisco, California 94111
Telephone:  (415) 500-6800
Facsimile:    (415) 395-9940
jsaveri@saverilawfirm.com

Richard A. Koffman (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., N.W., Suite 500, East Tower
Washington, DC 20005
Telephone:  (202) 408-4600
Facsimile:    (202) 408 4699
rkoffman@cohenmilstein.com

Eric L. Cramer (*pro hac vice*)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone:  (215) 875-3000
Facsimile:    (215) 875-4604
ecramer@bm.net

*Attorneys for Individual and Representative Plaintiffs*
*Cung Le, Nathan Quarry, Jon Fitch, Luis Javier Vazquez, Dennis*
*Lloyd Hallman, Brandon Vera, Pablo Garza, Gabe Ruediger, Mac*
*Danzig, Kyle Kingsbury and Darren Uyenoyama*

[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| **Cung Le, Nathan Quarry, and Jon Fitch, on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,**<br><br>**Defendant.** | Case Nos. 5:14-cv-05484-EJD, 5:14-cv-05591-EJD, 5:14-cv-05621-EJD; 5:15-cv-00521-EJD; 5:15-cv-01324-EJD<br><br><br>**PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO TRANSFER VENUE**<br><br><br>Judge: Hon. Edward J. Davila |

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TRANSFER

| | |
|---|---|
| **Luis Javier Vazquez and Dennis Lloyd Hallman, on behalf of themselves and all others similarly situated,** | |
| **Plaintiffs,** | |
| **v.** | |
| **Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,** | |
| **Defendant.** | |
| **Brandon Vera and Pablo Garza, on behalf of themselves and all others similarly situated,** | |
| **Plaintiffs,** | |
| **v.** | |
| **Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,** | |
| **Defendant.** | |
| **Gabe Ruediger and Mac Danzig, on behalf of themselves and all others similarly situated,** | |
| **Plaintiffs,** | |
| **v.** | |
| **Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,** | |
| **Defendant.** | |
| **Kyle Kingsbury and Darren Uyenoyama, on behalf of themselves and all others similarly situated,** | |
| **Plaintiffs,** | |
| **v.** | |
| **Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,** | |
| **Defendant.** | |

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

## TABLE OF CONTENTS

**Page(s)**

I.   INTRODUCTION ...................................................................................................... 1

II.  THE OLD AND NEW FORUM SELECTION CLAUSES. ........................................ 4

III. NO FORUM SELECTION CLAUSE PROVIDES A BASIS FOR TRANSFER TO
     LAS VEGAS. ........................................................................................................... 6

    A.   The New Forum Selection Clause Is Inapplicable Because This is Not an Action
     "To Interpret or Enforce" a Contract. ..................................................................... 6

    B.   The New Forum Selection Clause Does Not Apply to *Antitrust* Actions. ........................... 6

    C.   The UFC's Authorities Are All Inapposite. ............................................................. 10

    D.   The Adjudication of Plaintiffs' Antitrust Claim Will Not Require Interpretation
     or Enforcement of the Agreements. ...................................................................... 12

    E.   The Old Forum Selection Clauses Are Inapplicable Here. ....................................... 15

IV.  THE UFC FAILS TO SHOW THIS DISTRICT IS AN INCONVENIENT FORUM. ............. 16

    A.   The UFC Must Meet a High Standard to Overcome Plaintiffs' Choice of Venue. ........... 16

    B.   The Convenience and Fairness Factors Do Not Warrant Transfer of This Action. .......... 18

        1.   Plaintiffs' Choice of Venue Is Convenient and Tied to the Controversy. .............. 18

        2.   The UFC Fails to Demonstrate This District Is Sufficiently Inconvenient
     to Warrant Transfer. .......................................................................................... 20

        3.   Ease of Access to the UFC's Evidence Does Not Outweigh Other
     Factors. ............................................................................................................ 21

        4.   The Convenience of Non-Party Witnesses Does Not Warrant Transfer. .............. 21

        5.   This Court Is Experienced in Antitrust Law. ....................................................... 23

        6.   There Is a Strong Local Interest In the Underlying Litigation. .............................. 24

        7.   The Relative State of Court Dockets Would Lead to a Delay. ............................... 24

V.   CONCLUSION ...................................................................................................... 25

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

i

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO TRANSFER

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Ariz. v. Maricopa County Medical Soc.*, 457 U.S. 332 (1982) ................................................... 8

*Armco Steel Co. v. CSX Corp.*, 790 F. Supp. 311 (D.D.C. 1991) .............................................. 13

*Atlantic Marine Constr. Co., Inc. v. Dist. Ct.*, 134 S. Ct. 568 (2013) ...................................... 12

*Berrett v. Life Ins. Co. of the Southwest*, 623 F. Supp. 946 (D. Utah 1985) ............................. 7

*Boston Telecomms Grp., Inc. v. Wood*, 588 F.3d 1201 (9th Cir. 2009) ................................... 17

*Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270 (9th Cir. 1979) ...................... 16

*Cont'l Grain Co. v. Barge F.B.L.-585*, 364 U.S. 19 (1964) ..................................................... 17

*Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511 (10th Cir. 1995) ......................... 11, 12

*Daniels v. Dataworkforce LP*, 2014 U.S. Dist. LEXIS 164363 (D. Colo. Nov. 24, 2014) ........ 7, 9

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985) ...................................................... 13

*Decker Coal v. Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir. 1986) ............................... 17

*Diversified Striping Sys. v. Kraus*,
    2014 UT App. 287 P6 2014 Utah App. LEXIS 292 P.3d 932
    Utah Adv. Rep. 6 (Utah Ct. App. 2014) ............................................................................. 7

*Dobson Bros. Constr. Co. v. Arr-Maz Prods., L.P.*,
    2013 U.S. Dist. LEXIS 182722 (M.D. Fla. Dec. 9, 2013) ................................................... 7

*E. & J. Gallo Winery v. Encana Energy Services, Inc.*,
    388 F. Supp. 2d 1148 (E.D. Cal. 2005) ............................................................................ 13

*Forest Ambulatory Surgical Assocs., L.P. v. United Healthcare Ins. Co.*,
    (N.D. Cal. July 13, 2011) ............................................................................................ 20, 25

*Frigate Ltd. v. Damia*,
    2007 U.S. Dist. LEXIS 5902 (N.D. Cal. Jan. 12, 2007) ..................................................... 16

*Fuller v. Goldstar Estate Buyers Corp.*,
    2011 U.S. Dist. LEXIS 21021 (N.D. Ill. Mar. 1, 2011) ..................................................... 8, 9

*Goodwin v. Citywide Home Loans, Inc.*, 2014 WL 5327191 (C.D. Cal. Oct. 17, 2014) ............ 18

*Hawkes v. Hewlett-Packard Co.*, 2012 WL 506569 (N.D. Cal. Feb. 15, 2012) ............. 18, 21, 23

*Hendrickson v. Octagon Inc.*, 2014 U.S. Dist. LEXIS 83035 (N.D. Cal. June 17, 2014) ........... 6

*Hoffman v. Minuteman Press Int'l, Inc.*, 747 F. Supp. 552 (W.D. Mo. 1990) ........................... 7

ii

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO TRANSFER

**TABLE OF AUTHORITIES (cont.)**                              Page(s)

*In re TFT-LCD Antitrust Litig.*, 2011 U.S. Dist. LEXIS 105152 (N.D. Cal. Sept. 15, 2011) ................. 2, 7

*Incorp Servs. v. Incsmart*, 2012 U.S. Dist. LEXIS 120751 (N.D. Cal. Aug. 24, 2012) .............................. 17

*Jones v. GNC Franchising, Inc.*, 211 F. 3d 495 (9th Cir. 2000) .................................................................. 17

*Joseph v. Amazon.com, Inc.*, 2013 U.S. Dist. LEXIS 128426 (N.D. Cal. Sept. 9, 2013) ............................ 11

*King v. SAM Holdings, LLC*, 2011 U.S. Dist. LEXIS 120345 (N.D. Cal. Oct. 11, 2011) .......................... 24

*Ky. Speedway, L.L.C. v. Nat'l Ass'n of Stock Car Auto Racing, Inc. ("NASCAR")*,
406 F. Supp. 2d 751 (E.D. Ky. 2005) ......................................................................................................... 8

*Leroy-Garcia v. Brave Arts Licensing*,
2013 U.S. Dist. LEXIS 109872 (N.D. Cal. Aug. 5, 2013) ....................................................................... 17

*Lou v. Belzberg*, 834 F.2d 730 (9th Cir. 1987) .......................................................................................... 18

*Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509 (9th Cir. 1988) ............................................ 12

*Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373 (1985) ...................................... 16

*Marshall v. Monster Beverage Corp.*, 2014 WL 3870290 (N.D. Cal. Aug. 6, 2014) ............................... 24

*Martensen v. Koch*, 942 F. Supp. 2d 983 (N.D. Cal. 2013) ....................................................................... 16

*McNair v. Monsanto Co.*, 279 F. Supp. 2d 1290 (M.D. Ga. 2003) ........................................................... 16

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) ................................... 11

*Perry v. AT&T Mobility LLC*, 2011 U.S. Dist. LEXIS 102334 (N.D. Cal. Sept. 12, 2011) ....................... 6

*Perry v. Nat'l City Mortg., Inc,* 2006 U.S. Dist. LEXIS 62419 (S.D. Ill. Aug. 15, 2006) ......................... 9

*PPG Indus. v. Pilkington PLC*, 825 F. Supp. 1465 (D. Ariz. 1993) .......................................................... 11

*Pratt v. Rowland*, 769 F. Supp. 1128 (N.D. Cal. 1991) ............................................................................ 25

*Ravelo Monegro v. Rosa*, 211 F.3d 509 (9th Cir. 2000) ........................................................................... 17

*Roberts v. C.R. England, Inc.*, 827 F. Supp. 2d 1078 (N.D. Cal. 2011) ................................................... 17

*Ruifrok v. White Glove Restaurant Servs., LLC*,
2010 U.S. Dist. LEXIS 110369 (D. Md. Oct. 18, 2010) ............................................................................ 8

*S-Fer Int'l, Inc. v. Paladion Partners, Ltd.*, 906 F. Supp. 211 (S.D.N.Y. 1995) ....................................... 7

*Sierra Club v. U.S. Dept. of Agriculture*, 2008 WL 5273726 (N.D. Cal. Dec. 19, 2008) ....................... 21

*Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir. 1999) ...................................................................... 10

*Skyriver Techn. Solutions, LLC v. OCLC Online Computer Library Ctr., Inc.*,
2010 WL 4366127 (N.D. Cal. Oct. 28, 2010) .......................................................................................... 21

*STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551 (N.D. Cal. 1988) ............................................................. 16

5:14-cv-05484-EJD; 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

iii

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO TRANSFER

**TABLE OF AUTHORITIES (cont.)**                                    Page(s)

*Terra Int'l, Inc. v. Miss. Chem. Corp.*, 922 F. Supp. 1334 (N.D. Iowa 1996)..........................................11, 12

*Turf Paradise, Inc. v. Arizona Downs*, 670 F.2d 813 (9th Cir. 1982) ........................................................ 16

*United States ex rel. B & D Mech. Contractors, Inc. v. St. Paul Mercury Ins. Co.*,
   70 F.3d 1115 (10th Cir. 1995) ........................................................................................................... 16

*United States v. American Express*, 2015 U.S. Dist. LEXIS 20114, (E.D.N.Y. Feb. 19, 2015) .................... 9

*Volunteers for Catholic Orgs. v. Superior Council of the United States, Soc'y of St. Vincent De
   Paul, Inc.*, 2013 WL 4533782 (N.D. Cal. Aug. 26, 2013) ................................................................... 22

## Statutes

15 U.S.C. § 4 (1994)........................................................................................................................... 16

28 U.S.C. § 1391 ................................................................................................................................ 18

28 U.S.C. § 1404................................................................................................................................ 18

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

iv

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO TRANSFER

## I.    Introduction

Plaintiffs[1] and the two classes they seek to represent are or were elite professional mixed martial arts fighters for the UFC, the market-dominant mixed martial arts promoter.[2] Le Compl. ¶¶ 2-4. Many such Elite MMA Fighters reside in this judicial district, including San Jose resident Cung Le, who filed the first complaint in this matter, as well as Plaintiffs Kyle Kingsbury and Darren Uyenoyama. Defendant Zuffa, LLC's ("Zuffa" or "the UFC") Motion to Transfer Venue ("Motion") asks this Court to transfer this antitrust class action to the UFC's hometown of Las Vegas, Nevada. It does so largely on the basis of forum selection clauses in its contracts with some class members. Those forum selection clauses are inapplicable. By their terms, they are limited to actions seeking to "interpret or enforce" the agreements executed by some of the Plaintiffs or class members after 2012.[3] But this

---

[1] Plaintiffs are Cung Le, Nathan Quarry, and Jon Fitch (*Le et al. v. Zuffa*, No. 5:14-cv-05484-EJD (N.D. Cal. *filed* Dec. 16, 2014)); Luis Javier Vazquez and Dennis Lloyd Hallman (*Vazquez et al. v. Zuffa*, No. 5:14-cv-05591-EJD (N.D. Cal. *filed* Dec. 22, 2014)); Brandon Vera and Pablo Garza (*Vera et al. v. Zuffa*, No. 5:14-cv-05621-EJD (N.D. Cal. *filed* Dec. 24, 2014)); Gabe Ruediger and Mac Danzig (*Ruediger et al. v. Zuffa*, No. 5:15-cv-00521 (N.D. Cal. *filed* Feb. 4, 2015)); and Kyle Kingsbury and Darren Uyenoyama (*Kingsbury et al. v. Zuffa*, No. 5:15-cv-01324-EJD (N.D. Cal. *filed* March 20, 2015)) (collectively, "Plaintiffs"). They bring their claims on behalf of themselves and members of the "Bout Class" ("All persons who competed in one or more live professional UFC-promoted MMA bouts taking place or broadcast in the United States during the Class Period.") and the "Identity Class" ("Each and every UFC Fighter whose Identity was expropriated or exploited by the UFC, including in UFC Licensed Merchandise and/or UFC Promotional Materials, during the Class Period in the United States."). *Le* Compl. ¶¶ 39, 47.

[2] The Complaints define "Elite MMA Fighter" as "any Professional MMA Fighter who has demonstrated success through competition in local and/or regional MMA promotions, or who has developed significant public notoriety amongst MMA Industry media and the consuming audience through demonstrated success in athletic competition." *Le* Compl. ¶ 30(d). Due to the substantial similarity in the complaints filed in the related cases (*Vazquez et al. v. Zuffa* (5:14-cv-05591-EJD); *Vera et al. v. Zuffa* (5:14-cv-05621-JED); *Ruediger et al v. Zuffa* (5:15-cv-00521-EJD)), and *Kingsbury et al. v. Zuffa, LLC* (5:15-cv-01324-EJD), Plaintiffs cite to the lead case complaint where identical allegations are contained in the other complaints.

[3] The UFC Agreements signed before 2013 provide for exclusive jurisdiction in Nevada state courts, which the UFC acknowledges are inapplicable as they would require venue in state court, which cannot exercise jurisdiction over these federal antitrust claims. Mot. at 14. The UFC bases its Motion on three agreements signed by four of the Plaintiffs after 2012 (1) "Merchandise Rights Agreements," (2) "Promotional and Ancillary Rights," and (3) "Bout Agreements" (collectively, "Agreements"). *See* Mot., Hendrick Decl., Exs. A-Z (excerpts from Plaintiffs' Agreements with Zuffa). These three agreements fail on their face because they are specifically drafted to include a narrow subset of contractual disputes, thereby excluding the antitrust claims Plaintiffs assert.

antitrust case is not an action to "interpret or enforce" any of the Agreements. Thus, as numerous courts have held when analyzing similar contractual provisions, they do not apply to an antitrust action such as this one. *See, e.g.*, *In re TFT-LCD Antitrust Litig.*, 2011 U.S. Dist. LEXIS 105152, at *24-25 (N.D. Cal. Sept. 15, 2011) (finding forum selection clauses covering "[a]ny Litigation regarding the **interpretation**, **breach** or **enforcement**" of an agreement are limited to contract claims and inapplicable to antitrust claims) (emphasis added). This action will not require the Court's "interpretation" or "enforcement" of the Agreements. The venue provisions are thus inapplicable. Because the UFC's other *forum non conveniens* arguments are also without merit, Plaintiffs' choice of venue in San Jose is entitled to deference and this Motion should be denied.

Plaintiffs allege that the UFC engaged in an anticompetitive scheme to monopolize the "Relevant Output Market" for promoting live elite professional mixed martial arts events ("Elite MMA Events") and monopsonize the "Relevant Input Market" for elite professional mixed martial arts fighters ("Elite MMA Fighter") services in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. *Le* Compl. ¶¶ 4-5, 107-50. In their Complaints, Plaintiffs allege relevant markets dominated by the UFC as well as anticompetitive conduct that caused Plaintiffs antitrust injury. Specifically, Plaintiffs allege that the UFC, through a series of acquisitions, the use of exclusive contracts (the "Agreements"), and other exclusionary conduct, unlawfully maintained monopoly and monopsony power over Elite MMA Fighter services and Elite MMA Events, and as a result of that conduct, was able to exclude competitor promoters and artificially suppress Elite MMA Fighters' compensation.

Plaintiffs' suit does **not** ask this Court "to interpret" any of the Agreements at issue, to resolve any dispute concerning the meaning or performance of any of those Agreements' terms, or to enforce any contractual rights arising from those Agreements. The Agreements are relevant in this antitrust case only because the UFC *used* them as part of its anticompetitive scheme, as it, among other things, prohibited UFC Fighters from appearing in bouts promoted by would be rivals ("Exclusivity Clause"); prevented UFC Fighters from financially benefiting from licensing or other agreements pertaining to their likeness and identity rights in perpetuity ("Ancillary Rights Clause"); and permitted the UFC to unilaterally extend their terms indefinitely ("Champion's Clause," "Right to Match," "Retirement Clause" and the contracts' tolling provisions). *Id.* ¶ 113. Collectively, these provisions imposed

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

2

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO TRANSFER

significant barriers to entry to the Elite MMA Events market as they deprived competitors of critical inputs. *Id.* ¶ 75. Far from disputing that the Agreements provide that Fighters fight for the UFC exclusively, the UFC's Motion to Dismiss in fact concedes the Agreements are exclusive, and explicitly *defends* them as pro-competitive.[4]

What matters here is that this is an antitrust action where the only question raised by these Agreements is their *effect* in the marketplace—in conjunction with the rest of the UFC's anticompetitive scheme. More specifically, the issue is whether the UFC's exclusive Agreements with Elite MMA Fighters, in conjunction with the other anticompetitive conduct alleged, had and continue to have an adverse effect on **competition in the marketplace**. This is not a suit to interpret or enforce these Agreements. This case will not concern, for example, any breach of the Agreements or what damages may be owed from an alleged breach of the Agreements' terms. Instead, damages will be assessed based on alleged harm to *competition* in the relevant antitrust markets caused by the effects of the Agreements, taken together and in conjunction with the challenged conduct as a whole, on those markets. Indeed, the Complaints in this case explicitly state that "[n]one of the Plaintiffs in this matter is suing . . . to enforce any rights or provisions of his or her particular UFC contract." *Le* Compl. ¶ 115.

Second, the UFC's Motion misreads the UFC's own narrow venue provisions. The forum selection clauses do not state that actions "related to" or "arising out of" the contracts are subject to mandatory venue. Only actions "to interpret or enforce" the contracts are subject to venue in Las Vegas. Since this is not such an action, it need not be litigated in Las Vegas. The UFC's arguments torture the text of the Agreements and ignore the weight of authority that defeats its Motion. Because binding law interpreting identically-written clauses disposes of the UFC's position, the UFC is forced to cite inapposite cases construing different, more expansive venue provisions. It also erroneously invokes the equally inapposite strong public policy in favor of arbitration—which is inapplicable because the UFC

---

[4] *See* Zuffa Mot. to Dismiss Br. at 9, *Le et al. v. Zuffa*, No. 5:14-cv-05484-EJD (N.D. Cal. Dec. 16, 2014), ECF No. 64 ("Plaintiffs have not and cannot plead specific facts plausibly showing that the **exclusivity provisions** in Zuffa's contracts are anticompetitive.") (emphasis added); *id.* at 10 ("'[E]ven where they allege that fighters, sponsors and other third parties agreed to exclusive contracts, Plaintiffs have not alleged that competitors were foreclosed from competing for those contracts in the first place."); *id.* ("Exclusive dealing arrangements are common, procompetitive, and an integral feature of the sports and entertainment businesses.").

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

3

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO TRANSFER

does not even claim to have or seek to enforce any arbitration clauses. The Court should reject the UFC's attempt to rewrite its own narrowly drafted venue clauses. Such clauses are properly construed according to their narrow terms. Ambiguity or doubts should be resolved against the drafter—the UFC.

Finally, on matters of convenience and fairness, the UFC does not come close to meeting its Section 1404(a) burden.  The Court should defer to Plaintiffs' choice of forum and the strong interests supporting venue in this District. *First*, numerous class members reside in this District. Plaintiff Cung Le lives in San Jose. Le and Plaintiff Dennis Lloyd Hallman also fought Elite MMA bouts in San Jose and were fighters for the UFC's former rival, San Jose-based Strikeforce, before the UFC acquired Strikeforce in 2011 as part of the alleged anticompetitive scheme. *Id*. ¶¶ 28, 128, 131-34. Plaintiffs Kyle Kingsbury and Darren Uyenoyama also reside in this District and both have fought twice in the UFC's bouts in San Jose.[5] *Second*, many important third-party witnesses are located in this District, including former Strikeforce personnel and investors who decided to sell the company to the UFC, as well as personnel of Electronic Arts, Inc. (a manufacturer of MMA video games incorporating class members' likenesses), Fox Sports 1, various manufacturers of MMA Industry merchandise, numerous class members and their representatives, and world class trainers and training facilities. *Third*, this District has a strong interest in adjudicating this dispute because Elite MMA fighting has a robust fan base in this District, many UFC events have been held in San Jose and Oakland, and many Elite MMA athletes (including class members) live, train and fight here. *Fourth*, it is hardly inconvenient for the UFC to travel to this District. The UFC has itself brought litigation in this District, and UFC executives and personnel, including UFC President Dana White, travel regularly to this District for live bouts, promotional events, and to take advantage of business opportunities.

For all of these reasons, this Court should deny the UFC's Motion to Transfer.

## II.     The Old and New Forum Selection Clauses.

Plaintiffs are or were Elite MMA Fighters fighting with the UFC, the market-dominant MMA promoter. Many such Elite MMA Fighters reside in this judicial district. Cung Le lives in San Jose; Kyle

---

[5] *See* Kingsbury Decl., at ¶ 3 (listing Kingsbury's bouts on November 19, 2011 and July 26, 2014 at the SAP Center (formerly "HP Pavilion") at the "UFC 139" and "UFC on Fox: Lawler v. Brown" events, respectively).

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

4

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO TRANSFER

Kingsbury lives in Sunnyvale; Darren Uyenoyama lives in South San Francisco. *Le* Compl. ¶ 36; *Kingsbury* Compl. ¶¶ 36-37. Plaintiffs allege that the UFC illegally acquired, enhanced and maintained monopoly power in the market for promoting Elite MMA Events and monopsony power in the market for Elite MMA Fighter services, and used that power to crush its competition in the market for Elite MMA Events and extract exclusionary and restrictive concessions from all of its Elite MMA Fighters, artificially suppressing Fighters' compensation. *See, Le* Compl. ¶¶ 1, 4, 5-12, 17, 19-21, 68-75, 90-94, 107-161, 166-167.

The UFC principally bases its Motion on forum selection clauses contained in post-2012 Agreements—its standard form contracts—between some class members and the UFC. Prior to 2013, the UFC revised venue provisions in the Agreements.  Previously, the UFC's standard venue provision provided for the mandatory and exclusive "resolution of any dispute arising from or relating to this Agreement" in the Eighth Judicial District Court for the State of Nevada ("Old Forum Selection Clause"). The Old Forum Selection Clause reads in full: "ZUFFA and Fighter agree that the exclusive jurisdiction and venue for the resolution of any dispute **arising from or relating to** this Agreement shall lie in the Eighth Judicial Court of the State of Nevada, sitting in Las Vegas, Nevada." Hendricks Decl., Ex. T (emphasis added). As discussed below, the UFC has conceded that the Old Forum Selection Clause is inapplicable here because "[t]he Nevada state courts lack subject matter jurisdiction over a Sherman Act claim." Mot. at 14. The UFC thus acknowledges that **the venue provisions in its contracts with Plaintiffs Nate Quarry, Dennis Lloyd Hallman and Javier Vazquez do not apply here**. *See id*.

Sometime prior to 2013, the UFC amended its Agreements, including changing its forum selection clause in one material respect relevant for our purposes: it **narrowed** the scope of disputes to which it applied.[6] The New Forum Selection Clause states: "ZUFFA and Fighter hereby . . . expressly consent to the exclusive personal jurisdiction and venue of the state and federal courts located in Clark County, Nevada for any action brought by either party **to interpret or enforce** any provision of this Agreement. . . ." Hendricks Decl. Ex. B (emphasis added). Thus, the broad language describing the

---

[6] Of all the Plaintiffs, only Fitch, Garza, Le, Vera, Kingsbury and Uyenoyama have executed versions of these post-2012 Agreements.

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

5

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO TRANSFER

types of disputes subject to the Old Forum Selection Clause—all disputes "**arising from or relating to**" those agreements—was narrowed to apply only to actions "**to interpret or enforce** any provision of th[e] [a]greement." With this change, the UFC deliberately circumscribed the scope of covered disputes under the venue provision to only contract claims. The UFC ignores this change in its Motion.

**III.   No Forum Selection Clause Provides a Basis for Transfer to Las Vegas.**

      **A.   The New Forum Selection Clause Is Inapplicable Because This is Not an Action "To Interpret or Enforce" a Contract.**

This is an antitrust case. It is not a contractual dispute, or otherwise an action "**to interpret or enforce**" any contract, to use the language of the New Forum Selection Clause. Plaintiffs' antitrust claims do not require the interpretation or enforcement of the Agreements. Plaintiffs allege that the effect of these contracts, in combination with other actions taken by the UFC, violate Section 2 of the Sherman Act. Plaintiffs make no allegations requiring the Court or jury to interpret or enforce these contracts: Plaintiffs do not allege breach, non-performance, or any other claim based on the law of contracts. Neither does Defendant appear to raise any affirmative defense based on the law of contracts. What matters is the effect that these contracts had collectively, and in conjunction with other acts, on competition.

      **B.   The New Forum Selection Clause Does Not Apply to *Antitrust* Actions.**

By its terms, the New Forum Selection Clause does not apply to this antitrust action. "The scope of the claims governed by a forum selection clause depends [on] the language used in the clause." *Perry v. AT&T Mobility LLC*, 2011 U.S. Dist. LEXIS 102334, at *10 (N.D. Cal. Sept. 12, 2011). "As with all contracts, any ambiguity [in a forum selection clause] is to be construed against the drafter." *Hendrickson v. Octagon Inc.*, 2014 U.S. Dist. LEXIS 83035, at * 6 (N.D. Cal. June 17, 2014). The clauses at issue here do not apply to this action, but if there were any doubt on that issue, it should be resolved in Plaintiffs' favor.

Many courts, including this one, have construed similar forum selection clauses. Case law compels the conclusion that Defendant's New Forum Selection Clause is insufficient to require a change of venue because the New Forum Selection Clause does not apply to antitrust or to similar claims sounding in tort. In past cases, courts have analyzed language virtually identical to the terms of

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

6

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO TRANSFER

the New Forum Selection Clause, including venue provisions calling for litigation involving the "interpretation" and "enforcement" of an agreement containing the clause. Courts read that language as applying only to contract claims, not to antitrust or similar claims that merely relate to the contracts. *See, e.g.*, *In re TFT-LCD Antitrust Litig.*, 2011 U.S. Dist. LEXIS 105152, at *24-25 (finding forum selection clauses covering "[a]ny Litigation regarding the **interpretation**, **breach** or **enforcement**" of an agreement to be limited to contract claims and inapplicable to antitrust claims) (emphasis added). Courts interpreting identical clauses have reached the same conclusion. *See Dobson Bros. Constr. Co. v. Arr-Maz Prods., L.P.*, 2013 U.S. Dist. LEXIS 182722, at *25 n. 12 (M.D. Fla. Dec. 9, 2013) (deceptive trade practices claim, although based on contractual relationship, is not covered by mandatory forum selection clause covering "any action to interpret or enforce this agreement"); *Diversified Striping Sys. v. Kraus*, 2014 UT App. 287, P6, 2014 Utah App. LEXIS 292, 2, 341 P.3d 932, 775 Utah Adv. Rep. 6 (Utah Ct. App. 2014) ("The tort claims brought by Diversified do not seek to interpret or enforce the provisions of the parties' agreement. Thus, the forum selection clause does not apply to Diversified's tort claims.").

More generally, other courts hold that forum selection clauses limited to the "interpretation" or "enforcement" of an agreement, or using similar language, are inapplicable to non-contract claims. *See, e.g.*, *S-Fer Int'l, Inc. v. Paladion Partners, Ltd.*, 906 F. Supp. 211, 213-14 (S.D.N.Y. 1995) (forum selection clause stating that any "action for enforcement of any obligation contained herein" too narrow to apply to tort claims because they did not involve enforcement of contract obligations); *Hoffman v. Minuteman Press Int'l, Inc.*, 747 F. Supp. 552, 559 (W.D. Mo. 1990) (forum selection clause inapplicable to torts that did not relate to interpretation of the contract); *Berrett v. Life Ins. Co. of the Southwest*, 623 F. Supp. 946, 948-49 (D. Utah 1985) (forum selection clause inapplicable to tort claims because that was not "the intention of the parties [as] reflected in the wording of particular clauses and the facts of [the] case").

If the parties had wished to include antitrust or other statutory claims within the scope of the forum selection clause, they could have. Had they so intended, they would have used "broader language so as to encompass all claims arising out of 'the employment relationship between' [p]laintiff and [d]efendant." *Daniels v. Dataworkforce LP*, No. 14-cv-822-KMT, 2014 U.S. Dist. LEXIS 164363, at *6 (D. Colo. Nov. 24, 2014); *Fuller v. Goldstar Estate Buyers Corp.*, 2011 U.S. Dist. LEXIS 21021, at *9

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

7

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO TRANSFER

(N.D. Ill. Mar. 1, 2011); *Ruifrok v. White Glove Restaurant Servs., LLC*, 2010 U.S. Dist. LEXIS 110369, at *17 (D. Md. Oct. 18, 2010) (forum selection clause applying to any action arising from "the parties' performance" of an employment agreement encompassed FLSA claims). They did not. As discussed above, rather than broadening the venue provision language in the new contracts used by the UFC, the UFC took affirmative steps to *narrow* that language from "arising from or relating to" to the much more restrictive "interpret or enforce" language. The UFC now seeks to undo its narrowing of its venue provision by asking this Court to ignore the change. The law requires that the language be interpreted as written, not as the UFC now wishes it were written or to suit its interests here.

The district court's ruling in *Ky. Speedway, L.L.C. v. Nat'l Ass'n of Stock Car Auto Racing, Inc.* ("*NASCAR*"), 406 F. Supp. 2d 751 (E.D. Ky. 2005), is instructive. In *NASCAR*, as here, the defendant sought to transfer an antitrust action alleging Sherman Act violations to Florida, where defendant was based. Defendant NASCAR cited the venue provision in its agreements with the plaintiff requiring that any action "regarding the event or this Agreement" be transferred to Florida courts. *Id.* at 753. That provision was even broader than the provision at issue here. Nonetheless, the court denied NASCAR's motion to transfer, rejecting its arguments that a forum selection clause "controls all the allegations of illegal activity, even those claims that do not specifically involve these races." *Id.* at 753. The same rule obtains here. Although Plaintiffs' antitrust claim relates in part to the *subject matter* and exclusionary effect of the Agreements, the Court will not be asked to interpret the meaning of specific provisions to adjudicate Plaintiffs' antitrust claim—only the effects that these provisions had on competition. Further, those effects are fact questions for the jury under antitrust law—not questions of law a court would determine in a contracts case—and thus will not be adjudicated by the Court in any case. *See*, *e.g.*, *Ariz. v. Maricopa County Medical Soc.*, 457 U.S. 332, 343 (1982) ("the rule of reason requires the factfinder to decide whether under all the circumstances of the case the restrictive practice imposes an unreasonable restraint on competition.").

Analogous cases outside the antitrust area reach similar conclusions. For example, Fair Labor Standards Act ("FLSA") actions for illegal wage suppression also relate to employment agreements. Federal courts consistently hold that employment agreements that include general forum selection clauses do *not* apply to FLSA claims for failure to pay wages. *See*, *e.g.*, *Daniels*, 2014 U.S. Dist. LEXIS

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

8

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO TRANSFER

164363, at *4-6 (collecting cases). While courts view the employment agreements as "germane to" FLSA claims, the claims do not come within the scope of forum selection clauses because the plaintiffs do not seek to "enforce any terms" of those agreements. *Fuller*, 2011 U.S. Dist. LEXIS 21021, at *2-3; *see also Perry v. Nat'l City Mortg., Inc.*, 2006 U.S. Dist. LEXIS 62419, at *4-5 (S.D. Ill. Aug. 15, 2006) (forum selection clause referring to "this Agreement" did not apply to plaintiff's FLSA claims); Likewise, here, while the Agreements may relate in some way to Plaintiffs' Sherman Act claim, Plaintiffs seek to vindicate a federal right outside the scope of "enforc[ing] any terms" of their employment agreements.

The adjudication of this antitrust dispute is also analogous to the adjudication of antitrust claims where there are contractual relationships between the parties. For example, merchants have sued credit card companies alleging that agreements between them restrained trade by blocking competition in the network services market. *See*, *e.g.*, *United States v. American Express*, 2015 U.S. Dist. LEXIS 20114, at *13-14 (E.D.N.Y. Feb. 19, 2015) (finding that American Express's Non-Discrimination Provisions ("NDPs") with merchants preventing them from steering customers to alternative credit card brands caused anticompetitive effects on competition); *United States v. Visa U.S.A.*, 163 F. Supp. 2d 322, 330 (S.D.N.Y. 2001), *aff'd*, 344 F.3d 229 (2d Cir. 2003) (finding that Visa and Mastercard's exclusivity rules "locked up most of the credit and charge card market, leaving only a few major issuers uncommitted and currently free to partner with American Express or Discover," thus weakening competition and harming consumers). While the contracts between the parties were clearly relevant, the cases did not turn on the legal interpretation of any provision of the credit card companies' agreements with merchants. Instead, the cases focused on the *effect* that those provisions collectively had in the marketplace. For example, in *American Express*, the terms of the relevant NDPs in American Express's agreements with merchants were described, but the antitrust dispute was not and could not have been resolved by interpreting their terms. Rather, the Court analyzed abundant evidence of how the NDPs, *in practice*, affected the relevant antitrust market by "operat[ing] to block Amex-accepting merchants from encouraging their customers to use any . . . card other than an American Express card, even where that card is less expensive for the merchant to accept." *American Express*, 2015 U.S. Dist. LEXIS 20114, at *53. The evidence of the NDPs' adverse effects on competition included, for example: Amex's

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

9

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO TRANSFER

enforcement of its NDPs; merchants' testimony on how the NDPs restrained competition; the NDPs' effect on blocking low-cost business models like those attempted by competitors; the NDPs' effect on creating higher prices; and evidence of how the NDPs stifled innovation. *Id.* at *182-211. Not once was the court tasked with nor did it interpret any of the NDPs' terms. Likewise here, the evidence necessary to resolve the antitrust dispute will consist of how the UFC's exclusive agreements with Fighters had adverse effects on competition *in practice*: how the UFC enforced its exclusivity; the Agreements' effect on blocking the entry and survival of competing promotions; testimony from fighters, would-be competitors, sponsors, and others that the Agreements restrained competition in the relevant markets; the Agreements' effect on suppressing compensation; and so on. In evaluating this evidence and the core antitrust dispute at issue, no judicial determination of how the contracts should be interpreted, independently and outside of how the marketplace reflected their effects, will be relevant.

### C.     The UFC's Authorities Are All Inapposite.

The authorities on which the UFC relies, *see* Mot. at 11, are inapposite. They involve broader language than is found in the New Forum Selection Clauses, and are thus distinguishable. Or they concern interpretation of arbitration clauses, which invoke inapplicable policies requiring courts to resolve all doubts under the Federal Arbitration Act and federal labor laws in favor of arbitration.

The UFC relies heavily on *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999). That reliance is misplaced. *Simula* concerned a venue provision requiring all claims "**arising in connection with this Agreement**" to be arbitrated. The language of the contract matters: *Simula* is inapposite because the venue provision was much broader than the "to interpret or enforce" language in the New Forum Selection Clause. Indeed, the language at issue in *Simula* was closer to the language of the Old Forum Selection Clause, which the UFC *affirmatively narrowed* in drafting the New Forum Selection Clause. The UFC cannot narrow the language and then rely on the former provision. The *Simula* court was clear that its decision turned on the venue provision's broad language: "'the plain meaning of the phrase 'arising in connection with' suggests a broader scope than a phrase such as 'arising under,' which seem[s] to limit the clause to disputes concerning the contract itself.' . . . We . . . conclude that the language 'arising in connection with' reaches every dispute between the parties having a significant

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

10

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO TRANSFER

relationship to the contract and *all* disputes having their origin or genesis in the contract." *Id.* at 721 (emphasis added and citation omitted). As noted, the Agreements do not contain such broad language.

The UFC's other cited authorities concern equally distinguishable broad language, arbitration provisions, or both. In *PPG Indus. v. Pilkington PLC*, 825 F. Supp. 1465 (D. Ariz. 1993), the governing provision required arbitration of "any dispute **involving** . . . the application" of the contract in question. *Id.* at 1472 (emphasis added); *see also id.* at 1478 ("The court finds that the word 'involving' is the functional equivalent of the words 'relating to'"). In addition to focusing on the breadth of the provision, the court recognized the Supreme Court's instruction in the arbitration context—that "parties' intentions are to be 'generously construed in favor of arbitrability' and 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration'"—which was decisive in its decision to transfer. *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). Likewise, the arbitration provision in *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511 (10th Cir. 1995), broadly stated that arbitration was required for "any dispute arising in connection with the implementation, interpretation, or enforcement" of the agreement. *Id.* at 1513. The Tenth Circuit applied the *Moses H. Cone* presumption in favor of arbitration, which does not apply here. *Id.* at 1514. Finally, the forum selection clause in *Joseph v. Amazon.com, Inc.*, 2013 U.S. Dist. LEXIS 128426, at *8 (N.D. Cal. Sept. 9, 2013), required "[a]ny dispute **relating in any way**" to the operative agreement be litigated in the designated forum. The venue provision in *Joseph* was far broader than the contractual language at issue here. Indeed, each of these cases shows what language the parties could have used had they intended to agree that the claims here would be subject to a choice of forum. They did not.

Without an applicable venue provision, the UFC falls back on a "guiding principle" for determining the scope of a forum selection clause: "that courts will not tolerate 'artful pleading' of non-contract claims to avoid a forum selection clause." Mot. at 14 (citing *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 922 F. Supp. 1334, 1380 (N.D. Iowa 1996)). But, even if the language of the venue clause covered "any dispute" as in the case cited for the proposition,[7] the question remains whether a plaintiff "could have

---

[7] "The clause at issue here applies to '**any disputes**' between the parties to the contract, which is broad enough to encompass the tort claims Terra has brought here, at least if they bear the necessary relationship to the parties' contractual relationship." *Id.* at 1377 (emphasis added).

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

11

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO TRANSFER

asserted a 'parallel' breach of contract claim" as his or her cause of action to obtain full relief. *Terra Int'l*, 922 F. Supp. at 1382. Here, Plaintiffs clearly could *not*. First, Plaintiffs do not allege that Defendant breached a contract. Second, a breach of contract claim would not provide a basis for challenging the anticompetitive conduct alleged in the complaint nor could it provide Plaintiffs the remedies they seek. The elements of the claim, the measure of damages, and the proof are all different. Moreover, as discussed above, how the contracts should be interpreted as a matter of law **today** is *irrelevant* because what matters is the practical effect they had in the marketplace in the **past**—collectively and in conjunction with the rest of the alleged anticompetitive scheme. How a court might interpret what the provisions mean as a matter of law **now** is not germane to what effect they have had on competition.

Lastly, the UFC cites *Atlantic Marine Constr. Co., Inc. v. Dist. Ct.*, 134 S. Ct. 568 (2013), for the proposition that mandatory venue clauses have "controlling weight." This case is likewise irrelevant. The Supreme Court in *Atlantic Marine* assumed, for purposes of its analysis, that the claims fell within the venue provision. *Id.* at 581, n.5.. Even assuming *arguendo* the claims here fell within the venue clause, as demonstrated below, the public interest in litigating this matter in this District would still warrant denial of the UFC's Motion.

**D.**   **The Adjudication of Plaintiffs' Antitrust Claim Will Not Require Interpretation or Enforcement of the Agreements.**

Consistent with Ninth Circuit precedent, a contract forum selection clause applies to antitrust claims only if the Court will have to resolve "the central conflict over the interpretation." *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 (9th Cir. 1988);[8] *Coors Brewing*, 51 F.3d at 1516-18

---

[8] Though *Manetti-Farrow* sets forth the governing Ninth Circuit standard here, it is factually distinguishable. There, the Ninth Circuit enforced the forum selection clause because plaintiff asserted tort claims relating directly to the contract and the dispute between the parties was over contractual standards, including claims that the defendant "neglected delivery orders" and "wrongfully abrogated the contract." *Id.* at 514. "[B]ecause the tort causes of action alleged by Manetti-Farrow relate to 'the central conflict over the interpretation' of the contract, they are within the scope of the forum selection clause." *Id.* Here there is no such dispute: both parties **agree** on the interpretation of the contract; there is no "central conflict over the interpretation." And in any event, the antitrust claims raised in this case do not require interpretation of the contracts in order to be adjudicated. The Court will not be asked to resolve any dispute concerning the terms of the Agreements.

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

12

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO TRANSFER

(plaintiff's "claims regarding market concentration are not related to the licensing agreement" and do not come within the scope of the arbitration provision); *E. & J. Gallo Winery v. Encana Energy Services, Inc.*, 388 F. Supp. 2d 1148, 1162 (E.D. Cal. 2005) (where a lawsuit concerns "essentially an antitrust suit" with "passing mention" to agreements containing forum selection clauses, the forum selection clause does not apply); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985); *Armco Steel Co. v. CSX Corp.*, 790 F. Supp. 311, 317 n.4 (D.D.C. 1991) ("Any alleged 'intertwining' of [the] contract claim with the other claims of [the] complaint does not require the Court to submit the entire complaint to arbitration. The 'intertwining' approach . . . was rejected by the Supreme Court in *Dean Witter . . .*").

The UFC asserts that it will "contest vigorously" the Complaints' allegations that relate to "interpretation of the contracts," and that interpretation is necessary because Plaintiffs do not "specify exactly how the agreements unreasonably restrain competition." Mot. at 11-12. The UFC is wrong. As the Complaints set forth, the UFC's anticompetitive scheme involves the **use of contracts** to unreasonably restrain competition, aggregately, by preventing competition in the marketplace, giving the UFC the ability to diminish wages. Specifically, the Complaints allege that "all of the UFC's contracts with Fighters—and the exclusionary provisions therein—**taken together** form part of the UFC's anticompetitive scheme to impair actual or potential rivals and enhance its monopoly power in the Relevant Output Market and monopsony power in the Relevant Input Market." *Le* Compl. ¶ 115 (emphasis added); *see also id.* ¶¶ 91-92, 102, 107, 115, 151, 153, 159-61 (detailing how the UFC's overarching anticompetitive scheme, including but not limited to the collective effect of the Agreements, reduces market competition and artificially suppresses compensation below competitive levels). This practical *effect* is what matters, not how the Agreements should be interpreted or enforced in a breach of contract case.

Indeed, the Agreements' exclusionary effects are but a single aspect of a broader scheme. Plaintiffs allege that the UFC engaged in a wide-ranging pattern of exclusionary conduct aimed at acquiring, enhancing, and maintaining its monopoly and monopsony power. Only part of that scheme concerns the Agreements. Specifically, Plaintiffs' antitrust claim alleges that, in addition to using the Agreements as a means to deprive rival promotions of key inputs, the UFC:

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

13

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO TRANSFER

- Directly acquired actual or potential rivals, from World Extreme Cagefighting to Strikeforce, to prevent competition in the relevant antitrust markets (*id.* at ¶¶ 128-134);

- Relegated any remaining MMA promoters to "minor league" status (*id.* at ¶¶ 135-150);

- Threatened, intimidated and retaliated against MMA fighters who—on behalf of would-be rivals—spoke out against the UFC, a practice the UFC still deploys (*id.* at ¶¶ 116-119);

- Forced and continues to force major physical venues for MMA bouts to supply their services to the UFC exclusively (*id.* at ¶¶ 120-122, 127); and

- Required and continues to require MMA sponsors to work exclusively with the UFC and its fighters, refusing to contract with sponsors who agree to work with actual or potential rivals or fighters under contract with other MMA promoters, and prohibiting these sponsors from appearing on UFC fighters during UFC events (*id.* at ¶¶ 10, 123-127).

Plaintiffs allege that it is the *combination and accumulation* of these acts, not any one of them independently, that caused and continues to cause harm to Plaintiffs and the proposed classes. *Id.* at ¶¶ 115, 151-161. Where Plaintiffs allege antitrust violations not limited to the Agreement—such as claims of market concentration resulting in market control with anticompetitive effects—those claims are not subject to the Agreements' forum selection clause.

The UFC does not dispute that its Agreements are and were exclusive. In fact, the UFC argues in its motion to dismiss that such "[e]xclusive dealing arrangements [with fighters] are . . . an integral feature" of its business. Mot. to Dismiss Br. at 9-10; *see also supra* at Section I & n.3. Thus, the dispositive issue in this case—as the UFC's motion to dismiss shows—is whether or not the undisputed exclusive nature of the Agreements, in conjunction with the broader alleged anticompetitive conduct, harmed competition. The relevant evidence will not be admitted to show how any of the contractual provisions should be interpreted as a matter of law today, but will instead concern how the UFC's actions in the aggregate—including its use of the Agreements—have affected the marketplace and suppressed Fighters' compensation.

The UFC struggles to identify **any** contractual provision that is even in dispute—much less one that will require the Court to provide a legal interpretation—beyond the one it manufactures concerning the forum selection clause in the instant Motion. The only one the UFC can identify as a purportedly

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

14

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO TRANSFER

disputed contract term—a restriction of a fighter's ability to work with the UFC's competitors "all but indefinitely"—is not to be found in any of the Agreements, where the forum selection clauses are. *See* Mot. at 12 & n.7; Hendrick Decl., Ex. D . But this supposed "dispute" *proves Plaintiffs' point*. The UFC creates a dispute not by reference to any term of the Agreements, or to citing to contract law, but by asserting that some Plaintiffs, *in fact*, fought bouts with other promoters.[9] Although Plaintiffs will address the UFC's claims about market realities at another time, it should be noted that the UFC argues in its motion to dismiss that "[c]ourts have consistently upheld exclusive grants of such name and likeness rights … including where the grant is in perpetuity," and that "licenses that extend past the term of the contract" have practical benefits. Mot. to Dismiss at 20. Thus the dispute centers on the effect of the Agreements, and not their terms.

The factual dispute here relates to whether the Agreements, taken together, *in fact* blocked or impaired the ability of Fighters to fight for rival promoters indefinitely or, at least, for long periods of time. Whether the jury is convinced that the Agreements do so as a matter of contract law—or as a contract claim—is not a question that it will be asked to resolve. The UFC admits as much in its defense. Instead of citing to contract law, it disputes the facts. The relevant point here is that what matters in this case is not contract law or interpretation, but rather the facts about the actual effects of the contracts and the UFC's other exclusionary conduct on competition in relevant markets. The issue here is whether facts can be proven as part of an antitrust claim, *e.g.*, whether the Agreements foreclose relevant antitrust markets and limit the UFC's rivals' ability to gain the necessary inputs to survive and compete with the UFC. Any hypothetical "correct" interpretation of the Agreements would be immaterial.  The actual dispute before the Court is whether the Agreements, however market actors interpreted them, suppressed competition in violation of Section 2 of the Sherman Act.

### E.     The Old Forum Selection Clauses Are Inapplicable Here.

The UFC concedes that the Old Forum Selection Clauses in the Quarry, Hallman and Vazquez Agreements provide for mandatory and exclusive resolution of disputes in Nevada's state courts, which "lack subject matter jurisdiction over a Sherman Act claim." Mot. at 14; *see* 15 U.S.C. § 4 (1994)

---

[9] In fact, each of these bouts listed by the UFC occurred only after the Plaintiffs were "cut," i.e. released by the UFC.

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD
15
PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO TRANSFER

(granting federal courts exclusive jurisdiction over Sherman Act claims); *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 379-80 (1985) ("federal antitrust claims are within the exclusive jurisdiction of the federal courts"); *Turf Paradise, Inc. v. Arizona Downs*, 670 F.2d 813, 821 (9th Cir. 1982) ("There is no concurrent state and federal jurisdiction over [] federal antitrust claims. The federal courts have exclusive jurisdiction over federal antitrust claims."). Accordingly, those forum selection clauses are void and unenforceable. *United States ex rel. B & D Mech. Contractors, Inc. v. St. Paul Mercury Ins. Co.*, 70 F.3d 1115, 1118 (10th Cir. 1995) (a mandatory state-only forum selection clause "which attempts to divest the federal courts of their exclusive jurisdiction to hear [a] case is void and unenforceable.").

Because any reliance on the Old Forum Selection Clauses fails, the burden is on the UFC to show that the Court should transfer the cases brought by Plaintiffs Quarry, Hallman, and Vazquez and thereby fail to give the deference due to Plaintiffs' choice of forum.[10] *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979); *Martensen v. Koch*, 942 F. Supp. 2d 983, 999 (N.D. Cal. 2013); *STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551 (N.D. Cal. 1988) ("In seeking to transfer a case to a different district, a defendant bears a heavy burden of proof to justify the necessity of transfer.").

## IV.     The UFC Fails to Show This District Is an Inconvenient Forum

### A.     The UFC Must Meet a High Standard to Overcome Plaintiffs' Choice of Venue.

The purpose of Section 1404(a) venue transfer is to "prevent the waste of time, energy, and money and to 'protect litigants, witnesses and the public against unnecessary inconvenience and

---

[10] In their brief, the UFC incorrectly cites *McNair v. Monsanto Co.*, 279 F. Supp. 2d 1290, 1309-10 (M.D. Ga. 2003), for the proposition that, because Plaintiffs who agreed to the Old Forum Selection Clause brought suit with Plaintiffs who agreed to the New Forum Selection Clause, they are also bound by the New Forum Selection Clause. Mot. at 15. This is incorrect. First, *McNair* did not concern a **class action**, but a **mass action** in which seventeen out of eighteen plaintiffs were found to have signed an enforceable forum selection clause. Second, this Court has consistently refused to "splinter" a class of plaintiffs where some class members are bound by a forum selection clause and others are not since enforcing a forum selection clause under those circumstances "would contravene the federal policy in favor of 'efficient resolution of controversies.' " *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2014 U.S. Dist. LEXIS 55234, at *76 (N.D. Cal. Apr. 14, 2014) (denying § 1404(a) motion to transfer); *see also Frigate Ltd. v. Damia*, 2007 U.S. Dist. LEXIS 5902, at *9-10 (N.D. Cal. Jan. 12, 2007) (denying motion to dismiss based on a forum selection clause where forum selection clause applied to some but not all claims).

5:14-cv-05484-EJD; 5:14-cv-05591-EJD
5:14-cv-05621-EJD; 5:15-cv-00521-EJD
5:15-cv-01324-EJD

16

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO TRANSFER

expense.'" *Arunachalam v. Pazuniak*, 2015 U.S. Dist. LEXIS 33792, at *6 (N.D. Cal. Mar. 17, 2015) (quoting *Cont'l Grain Co. v. Barge F.B.L.-585*, 364 U.S. 19, 26-27 (1964)). The moving party bears the burden of showing that the proposed forum is more appropriate than the forum where the plaintiff initiated the litigation. *Jones v. GNC Franchising, Inc.*, 211 F. 3d 495, 498 (9th Cir. 2000). The burden of demonstrating that convenience factors merit transfer is high and on the UFC. *Roberts v. C.R. England, Inc.*, 827 F. Supp. 2d 1078, 1087 (N.D. Cal. 2011) ("The movant bears the burden of justifying the transfer by a strong showing of inconvenience.") (citing *Decker Coal v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)). A motion to transfer under Section 1404(a) is "an exceptional tool to be applied sparingly." *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000).

As this Court recently held in denying another defendant's motion to transfer proceedings to Nevada, "The plaintiff's choice of forum should not be easily overturned. Courts must treat transfers for convenience as an exceptional tool to be employed sparingly. A plaintiff's choice of forum is rarely disturbed, unless the balance is strongly in favor of the defendant." *Incorp Servs. v. Incsmart*, 2012 U.S. Dist. LEXIS 120751 at *42 (N.D. Cal. Aug. 24, 2012) (Davila, J.) (citations omitted). The fact that a defendant's offices, witnesses and documents may be located Nevada has been found insufficient by this Court to grant a motion to transfer where (as here) non-party companies and likely witnesses were in this District. *Id.* at *44-45 (denying motion to transfer to Nevada). Indeed, venue case law recognizes that a defendant bears a heavy burden even where plaintiffs do not choose a convenient forum for that defendant. *See Boston Telecomms Grp., Inc. v. Wood*, 588 F.3d 1201, 1212 (9th Cir. 2009) (discussing *forum non conveniens* dismissal).[11]

Against this strong preference in favor of Plaintiffs' choice of forum and **against** transfer, courts weigh several factors, including: "(1) the plaintiff's choice of forum; (2) convenience of the parties; (3) convenience of the witnesses; (4) relative ease of access of the evidence; (5) familiarity of each forum with the applicable law; (6) feasibility of consolidation with other claims; (7) any local interest in the

---

[11] Although the UFC argues that "Section 1404(a) requires a 'lesser showing of inconvenience' than is needed to obtain dismissal for *forum non conveniens*," Mot. at 15 (quoting *Leroy-Garcia v. Brave Arts Licensing*, 2013 U.S. Dist. LEXIS 109872 (N.D. Cal. Aug. 5, 2013)), the UFC fails to articulate the degree of inconvenience that must be demonstrated and fails to distinguish the long line of cases construing the high burden the UFC bears here. *See, e.g., Decker Coal*, 805 F.2d at 843.

5:14-cv-05484-EJD; 5:14-cv-05591-EJD
5:14-cv-05621-EJD; 5:15-cv-00521-EJD
5:15-cv-01324-EJD

17

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO TRANSFER

controversy; and (8) the relative court congestion and time to trial in each forum." *Hawkes v. Hewlett-Packard Co.*, 2012 WL 506569, at *2 (N.D. Cal. Feb. 15, 2012) (Davila, J.).[12] The UFC does not overcome the strong presumption in favor of Plaintiffs' choice of forum.

**B.    The Convenience and Fairness Factors Do Not Warrant Transfer of This Action.**

**1.    Plaintiffs' Choice of Venue Is Convenient and Tied to the Controversy.**

A substantial portion of the conduct giving rise to this action occurred, affected or involved individuals and entities in this District, making this District a convenient and appropriate venue.[13] The UFC leaps from the fact that *some* Plaintiffs do not reside in this District to the conclusion that "there is no significant connection" with this District, then asks the Court to refuse to give Plaintiffs' choice of venue the required deference. *See* Mot. at 21-22. The cases the UFC cites are "distinguishable because the operative facts occurred–at least in part–in this forum, and the forum therefore has an interest in both the parties and the subject matter." *Goodwin v. Citywide Home Loans, Inc.*, 2014 WL 5327191, at *2 (C.D. Cal. Oct. 17, 2014) (distinguishing *Lou v. Belzberg*, 834 F.2d 730 (9th Cir. 1987)).

The UFC's argument that this District lacks a nexus to these claims is based on a flawed premise because multiple Plaintiffs reside in or have significant ties to this District. Of the eleven Plaintiffs, three—including the first to file—have significant ties to this District that relate directly to their claims. Three others have significant ties to the State of California.[14] Three Plaintiffs—Cung Le, Kyle Kingsbury and Darren Uyenoyama—reside in this District. See Le Decl. at ¶ 2; Kingsbury Decl. at ¶ 2; and. Plaintiffs Cung Le and Jon Fitch, as well as numerous Class members, also train in San Jose and the

---

[12] The UFC also adverts to the "avoidance of counterclaims favors transfer to the District of Nevada," intimating that the UFC will sue for breach of contract if the case is not transferred. This is nonsense. This would mean that any forum selection clause—*whether the Court finds that it applies or not*—would require that the movant win anyway because the movant would always have a potential "breach of contract" claim if the case were not transferred.

[13] In bringing its motion pursuant to 28 U.S.C. § 1404, the UFC implicitly concedes that venue is proper in this district pursuant to 28 U.S.C. § 1391.

[14] In addition to Plaintiffs Le, Fitch and Hallman, several other Plaintiffs have ties to the State of California. Plaintiffs Vera, Vazquez and Garza each fought for World Extreme Cage Fighting ("WEC"), a former rival promotion based in the Central District of California (acquired by Defendant in 2006 and merged into the UFC in 2010) before their UFC careers.

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

18

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO TRANSFER

surrounding area.[15] *See Le* Compl. ¶ 36; Le Decl. at ¶ 2; Fitch Decl. at ¶ 2. Plaintiffs Le and Hallman both fought for Strikeforce, a former rival MMA promotion based in San Jose that was purchased by the UFC as part of the alleged anticompetitive scheme. Le Decl. at ¶¶ 5-6; Hallman Decl. at ¶ 5. Five Plaintiffs have fought for the UFC in this District, and thus were subject to bout agreements to be performed in this District. See Le Decl. at ¶ 4; Fitch Decl. at ¶ 3; Hallman Decl. at ¶ 3; Kingsbury Decl. at ¶ 3;; Request for Judicial Notice ("RJN"), Exs. 1-6. Indeed, Le fought in "UFC 139" at the HP Pavilion in San Jose and Plaintiffs Fitch and Hallman fought in "UFC 117" at the Oracle Arena in Oakland. Le Decl. at ¶ 4; Fitch Decl. at ¶ 3; and Hallman Decl. at ¶ 3. In fact, Le fought nine of his twelve professional MMA bouts in San Jose. Le Decl. at ¶ 4.

As alleged, several significant events concerning Plaintiffs and the proposed classes occurred in this District. Plaintiffs Le and Uyenoyama appeared in *EA Sports UFC*, the fourth installment of the UFC video game franchise, which was developed by Electronic Arts in this District. *Le* Compl. ¶ 36, *Kingsbury* Compl. ¶ 37. When the UFC negotiated a deal with THQ, Inc. in 2008 for the development of a UFC video game, the UFC required its athletes, for no compensation, to assign exclusively and in perpetuity their likeness rights for use in the game. *Le* Compl. ¶ 117. Plaintiff Fitch and other fighters who trained at AKA in San Jose sought to negotiate this request and were terminated in an exercise of the UFC's anticompetitive scheme. *Id*. In addition, one of the key components of the UFC's anticompetitive scheme was the acquisition of Strikeforce, a rival San Jose-based promotion. The UFC acquired Strikeforce and shut down the company, eliminating its principal competition and acquiring the contracts for all of Strikeforce's fighters. *Le* Compl. ¶¶ 131-34. Because of these connections to this District, Plaintiffs' choice of venue in should be afforded deference and the first factor weighs strongly in favor of denying the UFC's Motion.

---

[15] Thus, although the UFC makes much ado of Plaintiff Fitch's residence in Las Vegas, Fitch also possesses strong ties to this District both with respect to his relationship with the UFC and with respect to his MMA career and training. Indeed, Fitch's ongoing ties to this District continue to make this District convenient for him, and his litigating here attests to that convenience.

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

19

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO TRANSFER

### 2. The UFC Fails to Demonstrate This District Is Sufficiently Inconvenient to Warrant Transfer.

Although the UFC argues that Las Vegas is more convenient for itself, it fails to meet its burden of showing that this District is inconvenient or that Las Vegas is significantly more convenient for all parties. As a preliminary matter, this Court previously found that the proximity of the San Jose and Los Angeles courthouses makes geographic inconvenience a minor factor outweighed by other concerns. *See Forest Ambulatory Surgical Assocs., L.P. v. United Healthcare Ins. Co.*, 2011 U.S. Dist. LEXIS 75433, at *7 (N.D. Cal. July 13, 2011) (Davila, J.). The proximity of the Las Vegas and San Jose courthouses is similar, making geographic convenience neutral as to either forum.

Furthermore, the UFC can demonstrate little inconvenience it would experience from litigating in this District. The UFC has frequently selected this District and other courts in California for its litigation activities. For example, *Zuffa LLC v. Dodson*, No. 13-cv-04004 (N.D. Cal. filed Aug. 28, 2013), one of dozens of cases nationwide in which the UFC sued restaurant and bar owners that televised UFC PPV fights purportedly without proper licenses or authorization, was filed and litigated in this District against the owners of Pappys Grill and Sports Bar. In another action in this District, the UFC was involved in litigation with BAM! Entertainment, Inc. concerning a trademark dispute. *See BAM! Entertainment, Inc. v. Zuffa, LLC*, No. 01-cv-21207 (N.D. Cal. filed Dec. 21, 2001). Rather than move to transfer for lack of convenience, the UFC asserted counterclaims under federal and California law, demonstrating its willingness to litigate in this District when doing so served its purposes. *See id.* at ECF No. 8.[16] In fact, the UFC has a history of litigating in this District without complaint as to its convenience. This adds further weight to the conclusion that transfer is unwarranted.

---

[16] Moreover, the UFC's employees frequently travel to this District. For example, on January 12, 2015, UFC President Dana White visited Twitter Headquarters purportedly to participate in a question & answer session with his Twitter followers. *See* https://twitter.com/danawhite/status/554704180435099650 (last visited Feb. 24, 2015); *see also* https://instagram.com/p/xxbCoevA8V/ (showing Mr. White at Instagram headquarters in this District) (last visited Feb. 24, 2015). Although such an engagement could have been handled remotely, Mr. White demonstrated no inconvenience in travelling to Twitter headquarters in this District.

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD
20
PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO TRANSFER

### 3.   Ease of Access to the UFC's Evidence Does Not Outweigh Other Factors.

In support of its Motion, the UFC relies heavily on the location of its documents and witnesses. That is insufficient. The UFC has not made (and cannot make) any showing that there is a significant difference in producing documents to Plaintiffs based on the venue in which the litigation proceeds. Regardless of the location of court proceedings, the UFC's document production will be unaffected. Modern technology, which is available to all Parties, enables the electronic transfer of documents via e-mail, FTP, and cloud computing quickly and efficiently. *See Hawkes*, 2012 WL 506569, at *5 ("'[W]ith technological advances in document storage and retrieval, transporting documents does not generally create a burden.'") (quoting *Sierra Club v. U.S. Dept. of Agriculture*, 2008 WL 5273726, at *4 (N.D. Cal. Dec. 19, 2008)). Furthermore, the Court's ECF and PACER system alleviates any difficulty the parties may confront filing documents in any particular venue. Indeed, the UFC has retained counsel who have offices in Oakland, and who recently opened another office in Palo Alto.

The location of UFC employees does not warrant transfer either. Depositions of relevant employees may be taken close to their place of residence or business. Therefore, the only relevance venue has for witnesses concerns their availability for trial. It is for this reason that "the convenience of a litigant's employee witnesses are entitled to little weight because litigants are able to compel their employees to testify at trial regardless of forum." *Skyriver Techn. Solutions, LLC v. OCLC Online Computer Library Ctr., Inc.*, 2010 WL 4366127, at *3 (N.D. Cal. Oct. 28, 2010). The UFC has not cited any reason that its employees could not—or would not—testify at trial in this District. Thus, this factor is neutral and does not weigh in favor of transfer.[17]

### 4.   The Convenience of Non-Party Witnesses Does Not Warrant Transfer.

The convenience of non-party witnesses does not favor transfer. In particular, this District is home to numerous non-party witnesses with information relating to the UFC's exclusionary scheme and who may be unavailable to testify at trial if the litigation were transferred to Las Vegas. *See Incorp Servs. v. Incsmart*, 2012 U.S. Dist. LEXIS 120751 at *45 ("Because several non-party witnesses do exist

---

[17] Litigating in this District would be convenient for some Plaintiffs for the reasons indicated in their declarations. *See, generally*, Declaration of Cung Le; Declaration of Kyle Kingsbury; Declaration of Jon Fitch.

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

21

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO TRANSFER

in California - and since the convenience of non-party witnesses is an important consideration - Defendant's position is further weakened by the facts going to this factor"); *Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1147 (C.D. Cal. 2009) ("the convenience of non-party witnesses is a more important factor than the convenience of party witnesses.") For example, former employees and fighters who could provide testimony concerning the UFC's conduct toward and eventual acquisition of the San Jose-based Strikeforce are in this District.[18] Strikeforce had enlisted established fighters (including Plaintiffs Le and Hallman), negotiated an agreement with EA Sports to develop an MMA video game that would compete with the UFC's THQ-produced games, and announced its desire to co-promote high-level MMA events in this District. *See id*. Additionally, in recognition of Strikeforce's threat to the UFC's market power, the UFC regularly "counterprogrammed" against Strikeforce events in this District as part of its overall exclusionary scheme. *Id*. ¶ 132. Ultimately, the UFC acquired Strikeforce, thereby controlling virtually all Elite MMA Fighters in every MMA weight class. *Id*. ¶ 133. Plaintiffs believe numerous witnesses, including, without limitation, former Strikeforce employees, venues and sponsors, are and will remain located in this District. Numerous other third parties are located in this District, including, without limitation: (1) two venues (SAP Center in San Jose and Oracle Arena in Oakland) used by the UFC for Elite MMA Events; (2) EA Sports, the video game producer that made UFC video games featuring Plaintiff Le; (3) Yahoo!, which distributed live PPV events for the UFC beginning in 2008; (4) numerous class members and their representatives; (5) world class trainers and training facilities; and (6) numerous merchandisers involved in the MMA Industry.

At most, the UFC can show that the convenience of non-party witnesses is neutral as both proposed fora are home to multiple non-parties likely to be called upon to provide witnesses or documents, and neither forum is home to a majority of such non-parties. This litigation is being brought on behalf of two nationwide classes and concerns the UFC's actions in illegally obtaining monopoly and monopsony power by suppressing competition and MMA Fighters' compensation nationwide. Since

---

[18] The UFC argues that, because Strikeforce's books and records were transported to Las Vegas after the UFC acquisition, Strikeforce's former presence in San Jose is irrelevant. The UFC only addresses the identity of one potential witness, Scott Coker, who resides in Newport Beach, California. The UFC does not address the identity of other potential non-party witnesses with knowledge of the Strikeforce business and acquisition.

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

22

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO TRANSFER

January 2010, the UFC has held events in at least 27 states and the District of Columbia. Non-party witnesses are, thus, not centrally located in any one district. Therefore, this factor either weighs against transfer or is neutral. *See, e.g.*, *Volunteers for Catholic Orgs. v. Superior Council of the United States, Soc'y of St. Vincent De Paul, Inc.*, 2013 WL 4533782, at *2 (N.D. Cal. Aug. 26, 2013) (denying transfer and ruling "[a]t least as many key witnesses are located in California as Missouri, and in any event, many of the events occurred online or nationally").

### 5.    This Court Is Experienced in Antitrust Law.

This Court has extensive experience with adjudicating complex class actions involving federal antitrust claims. While federal courts are generally capable of presiding over disputes that involve federal statutes, including the Sherman Act, *see, e.g.*, *Hawkes*, 2010 WL 506569, at *5, a significant disparity in the volume of cases brought pursuant to a given statute can make one venue preferable over another. Here, this District has handled a substantial number of complex antitrust cases, giving the Court more experience than the transferee district. Indeed, the federal judicial caseload statistics reveal a paucity of antitrust cases in the District of Nevada, which would indicate that that district lacks substantial experience in managing complex cases in this area of law:

| District | Civil Antitrust Cases Filed (Using September Reports) | | | | |
|---|---|---|---|---|---|
| | 2010 | 2011 | 2012 | 2013 | 2014 |
| N.D. Cal. | 84 | 68 | 68 | 160 | 96 |
| D. Nev. | 5 | 3 | 3 | 4 | 4 |

*See* RJN, Exs. 10-14. Collectively, between 2010 and 2014, this District has had more than 25 times the number of antitrust actions as the District of Nevada. Thus, this District can be expected to rely on its substantial experience to more efficiently manage this complex antitrust action.

The UFC's make-weight argument that Nevada courts are more familiar with the law governing the interpretations of certain contracts is insufficient to shift the balance of factors in favor of transfer. As discussed above, adjudicating Plaintiffs' antitrust claims will not require interpretation of the Parties' Agreements under Nevada law. Therefore, in light of this Court's substantial experience in the relevant law, this factor weighs against transfer.

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

23

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO TRANSFER

Similarly, the UFC's claim that the location where the Agreements were made gives Nevada a special interest in this litigation is without merit. The rights at issue in this case are *federal* rights granted by the Sherman Act, not contract rights under Nevada law. The conduct alleged here concerns the UFC's overarching scheme to reduce competition in the Relevant Input and Output markets. *Le* Compl. ¶¶ 63-89. Thus, Nevada has no special interest in applying its law to this dispute since, as a federal antitrust dispute, it is not governed by Nevada law, does not involve the vindication of rights granted under Nevada law, and does not concern a contract dispute "having localized controversies" such as those arising in the cases upon which the UFC relies. *See*, *e.g.*, Mot. at 20 (citing *King v. SAM Holdings, LLC*, 2011 U.S. Dist. LEXIS 120345, at *14-15 (N.D. Cal. Oct. 11, 2011)).

### 6.   There Is a Strong Local Interest In the Underlying Litigation.

This District has a strong and legitimate local interest in providing a forum for this litigation. In addition to providing local residents Plaintiffs Le, Kingsbury and Uyenoyama (as well as Plaintiff Fitch who trains in this District) with a local forum for their grievance, this Court likewise has an interest in protecting other class members who live or train in this District from the anticompetitive abuses complained of in these Actions. The Court also has a similar interest in providing a forum for the allegations that Defendant enforced its monopoly and monopsony power to harm local citizens and businesses. Beginning in 2006, the UFC went on a spree of acquisitions of rival promotions to acquire its illegal monopoly and monopsony power, commencing with the southern California promotion WEC and culminating with its acquisition of the San Jose-based Strikeforce. *See Le* Compl. ¶ 128. Strikeforce had strong local ties, was an MMA pioneer, held record-setting events in this District, and demonstrates the popularity of MMA in this District. *See* RJN at 2-3 & Ex. 7. Strikeforce's demise had a substantial impact on this District beyond the fighters who earned their living here. Thus, this factor weighs strongly in favor of denying the UFC's motion.

### 7.   The Relative State of Court Dockets Would Lead to a Delay.

The relative turnover rates in the dockets of the respective Districts favors this District because the Parties would suffer undue delay in the District of Nevada. "The key inquiry in docket congestion is 'whether a trial may be speedier in another court because of its less crowded docket.'" *Marshall v. Monster Beverage Corp.*, 2014 WL 3870290, at *3 (N.D. Cal. Aug. 6, 2014) (citation omitted). The

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

24

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO TRANSFER

median time interval from filing to trial in the District of Nevada as of March 31, 2014,was 41.5 months. *See* RJN, Ex. 14. The median time interval from filing to trial in this District as of March 31, 2014, was 29.2 months, more than 25% faster than Nevada. *See id.* This difference could be compounded by the proposed transferee district's relative lack of experience in managing large, nationwide antitrust class actions. Thus, transfer to the District of Nevada could impose a substantial delay in this litigation. "A change of venue [motion] may be denied where transfer would lead to delay." *Forest Ambulatory Surgical Assocs.*, 2011 WL 2748724, at *1 (citing *Pratt v. Rowland*, 769 F. Supp. 1128, 1133 (N.D. Cal. 1991)). In light of the potential for significant delays in the event of a transfer, this factor weighs against granting the UFC's motion.

## V.    Conclusion

None of the mandatory forum selection clauses applies to this action. Moreover, the UFC has failed to show that litigation in this District is inconvenient. Thus, the presumption in support of Plaintiffs' choice of venue should govern. For these reasons, the transfer motion should be denied.


Dated: April 10, 2015                JOSEPH SAVERI LAW FIRM, INC.

                                     By:    */s/ Joseph R. Saveri*
                                            Joseph R. Saveri

                                     Joseph R. Saveri (State Bar No. 130064)
                                     Joshua P. Davis (State Bar No. 193254)
                                     Andrew M. Purdy (State Bar No. 261912)
                                     Matthew S. Weiler (State Bar No. 236052)
                                     Kevin E. Rayhill (State Bar No. 267496)
                                     JOSEPH SAVERI LAW FIRM, INC.
                                     505 Montgomery Street, Suite 625
                                     San Francisco, California 94111
                                     Telephone:  (415) 500-6800
                                     Facsimile:  (415) 395-9940
                                     jsaveri@saverilawfirm.com
                                     jdavis@saverilawfirm.com
                                     apurdy@saverilawfirm.com
                                     mweiler@saverilawfirm.com
                                     krayhill@saverilawfirm.com

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD
25
PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO TRANSFER

Robert C. Maysey (State Bar No. 205769)
Jerome K. Elwell (*pro hac vice*)
WARNER ANGLE HALLAM JACKSON &
FORMANEK PLC
2555 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Telephone: (602) 264-7101
Facsimile: (602) 234-0419
rmaysey@warnerangle.com
jelwell@warnerangle.com


Benjamin D. Brown (State Bar No. 202545)
Richard A. Koffman (*pro hac vice*)
Hiba Hafiz (*pro hac vice* pending)
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., N.W., Suite 500, East Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile:  (202) 408 4699
bbrown@cohenmilstein.com
rkoffman@cohenmilstein.com
hhafiz@cohenmilstein.com


Eric L. Cramer (*pro hac vice*)
Michael Dell'Angelo (*pro hac vice*)
Patrick Madden (*pro hac vice*)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
ecramer@bm.net
mdellangelo@bm.net
pmadden@bm.net


Eugene A. Spector (pro hac vice pending)
Jeffrey J. Corrigan (pro hac vice pending)
Jay S. Cohen (pro hac vice pending)
William G. Caldes (pro hac vice pending)
SPECTOR ROSEMAN KODROFF & WILLIS, P.C.
1818 Market Street – Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611
espector@srkw-law.com
jcorrigan@srkw-law.com
jcohen@srkw-law.com
wcaldes@srkw-law.com

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO TRANSFER

Frederick S. Schwartz (State Bar No. 145351)
LAW OFFICE OF FREDERICK S. SCHWARTZ
15303 Ventura Boulevard, #1040
Sherman Oaks, CA 91403
Telephone: (818) 986-2407
Facsimile: (818) 995-4124
fred@fredschwartzlaw.com

*Attorneys for Individual and Representative Plaintiffs*
*Cung Le, Nathan Quarry, Jon Fitch, Luis Javier*
*Vazquez, Dennis Lloyd Hallman, Brandon Vera, Pablo*
*Garza, Gabe Ruediger, Mac Danzig, Kyle Kingsbury and*
*Darren Uyenoyama*

Pursuant to Local Rule 5.1(i)(3), I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: April 10, 2015                    By: ___*/s/ Joseph R. Saveri*_____
                                              Joseph R. Saveri

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

27

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO TRANSFER