Joseph R. Saveri (State Bar No. 130064)
JOSEPH SAVERI LAW FIRM, INC.
505 Montgomery Street, Suite 625
San Francisco, California 94111
Telephone:  (415) 500-6800
Facsimile:   (415) 395-9940
jsaveri@saverilawfirm.com

Richard A. Koffman (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., N.W., Suite 500, East Tower
Washington, DC 20005
Telephone:  (202) 408-4600
Facsimile:   (202) 408 4699
rkoffman@cohenmilstein.com

Eric L. Cramer (*pro hac vice*)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone:  (215) 875-3000
Facsimile:   (215) 875-4604
ecramer@bm.net

*Attorneys for Individual and Representative Plaintiffs
Cung Le, Nathan Quarry, Jon Fitch, Luis Javier Vazquez,
Dennis Lloyd Hallman, Brandon Vera, Pablo Garza, Gabe
Ruediger, Mac Danzig, Kyle Kingsbury, and Darren
Uyenoyama*

[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| Cung Le, Nathan Quarry, and Jon Fitch, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>Defendant. | Case Nos. 5:14-cv-05484-EJD, 5:14-cv-05591-EJD, 5:14-cv-05621-EJD; 5:15-cv-00521-EJD; 5:15-cv-01324-EJD<br><br>**PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO DISMISS**<br><br>Date: July 23, 2015<br>Time: 9:00 a.m.<br>Place: Courtroom 4<br>Judge: Hon. Edward J. Davila |

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO DISMISS

Luis Javier Vazquez and Dennis Lloyd Hallman, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,

Defendant.

Brandon Vera and Pablo Garza, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,

Defendant.

Gabe Ruediger and Mac Danzig, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,

Defendant.

Kyle Kingsbury and Darren Uyenoyama, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,

Defendant.

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO DISMISS

# TABLE OF CONTENTS

**Page(s)**

I.  INTRODUCTION ...................................................................................................1

II.  ALLEGATIONS ...................................................................................................2

    A.  Elite MMA Fighters Are a Key Input for MMA Promotions. .....................2

    B.  The UFC Engaged in Anticompetitive Conduct to Exclude Competitors and Monopsonize the Market for Elite MMA Fighters. ............................2

    C.  The UFC Dominates the Relevant Markets. ...............................................3

    D.  The UFC's Scheme Caused Antitrust Injury to Plaintiffs. ..........................4

III.  LEGAL STANDARD ...........................................................................................4

IV.  ARGUMENT ........................................................................................................4

    A.  Plaintiffs Sufficiently Plead that the UFC Has Monopoly and Monopsony Power. ..........4

        1.  Plaintiffs Sufficiently Allege Circumstantial Evidence of Monopoly Power. ...........5

            a.  Plaintiffs Have Properly Defined a Market for Elite MMA Events. ............5

            b.  Plaintiffs Allege a Dominant Market Share. ..............................8

            c.  Plaintiffs Allege High Barriers to Entry. .................................8

        2.  Plaintiffs Plausibly Allege Circumstantial Evidence of Monopsony Power. ............9

            a.  Plaintiffs Plausibly Allege a Market for Elite MMA Fighter Services. ..........9

            b.  Plaintiffs Allege a Dominant Market Share. ............................10

        3.  Plaintiffs Allege Direct Evidence of Monopoly and Monopsony Power. ...............11

    B.  Plaintiffs Plausibly Allege Exclusionary Conduct in Violation of Section 2. .....................12

        1.  The UFC's Exclusionary Conduct Substantially Foreclosed Competition. .........13

            a.  The UFC Unlawfully Acquired and Maintains Monopoly and Monopsony Power Through Exclusionary Contracts. ...........14

                i.  The UFC Uses Its Exclusive Agreements with Fighters as a Chokehold on Inputs to the Market for MMA Events. ..............15

                ii.  The UFC's Expropriation of Plaintiffs' Identity Rights is Exclusionary and Compounds the Foreclosure. ..............18

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

i

**PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO DISMISS**

**TABLE OF CONTENTS (cont.)**

iii.   The UFC Enhanced Foreclosure Through Exclusive Dealing Agreements with Venues, Sponsors and Distributors. ...............................................................20

b.   The UFC Unlawfully Acquired and Maintained Monopoly Power Through Acquisitions................................................... 21

2.   The UFC's Monopolistic Boasts Are Not Indicative of Competition. .................22

C.   Plaintiffs Sufficiently Allege Anticompetitive Effects. ......................................22

D.   Plaintiffs Sufficiently Allege Antitrust Injury. ....................................................24

V.   CONCLUSION ............................................................................................................25

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

ii

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Abbyy USA Software House, Inc. v. Nuance Commc'ns Inc.*,
2008 WL 4830740 (N.D. Cal. Nov. 6, 2008) ................................................ 14

*ACT, Inc. v. Sylvan Learning Sys.*, 104 F. Supp. 2d 1096 (N.D. Iowa 1999) ........................................... 15

*Adaptive Power Solutions, LLC v. Hughes Missile Sys. Co.*, 141 F.3d 947 (9th Cir. 1998) ........................ 20

*Allen v. Dairy Farmers of Am., Inc.*, 2014 U.S. Dist. LEXIS 81193 (D. Vt., June 11, 2014) .................... 11

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991 (9th Cir. 2010) .................. 16

*Am. Football League v. Nat'l Football League*, 323 F.2d 124 (4th Cir. 1963) ...................................... 20

*Applied Med. Res. Corp. v. Ethicon Inc.*,
2006 U.S. Dist. LEXIS 12845 (C.D. Cal. Feb. 2, 2006) ....................................... 15

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985) ............................................ 4

*Ass'n for Intercollegiate Athletics for Women v. Nat'l Collegiate Athletic Ass'n*,
558 F. Supp. 487 (D.D.C. 1983) ............................................................ 6

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ........................................................... 4

*Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297 (3d Cir. 2007) ..................................................... 5

*Brown Shoe v. United States*, 370 U.S. 294 (1962) ................................................................. 9

*CareFusion Corp. v. Medtronic Spine LLC*,
2010 U.S. Dist. LEXIS 122004 (N.D. Cal. Nov. 1, 2010) ...................................... 24

*Cascades Computer Innovation LLC*,
2013 U.S. Dist. LEXIS 170517 (N.D. Cal. Dec. 3, 2013) ..................................... 7

*Castro v. Sanofi Pasteur Inc.*, 2012 U.S. Dist. LEXIS 190438 (D.N.J. Aug. 6, 2012) ..................... 14, 16

*Church & Dwight Co., Inc. v. Mayer Labs., Inc.*,
2011 U.S. Dist. LEXIS 35969 (N.D. Cal. Apr. 1, 2011) ...................................... 20

*City of Anaheim v. S. Cal. Edison Co.*, 955 F.2d 1373 (9th Cir. 1992) ............................................. 20

*Clarett v. NFL*, 306 F. Supp. 2d 379 (S.D.N.Y. 2004) .............................................................. 6

*Colonial Med. Grp., Inc. v. Catholic Healthcare W.*,
2010 WL 2108123 (N.D. Cal. May 25, 2010) .................................................. 14

*Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690 (1962) ................................... 12, 15

*Conwood Co. v. United States Tobacco Co.*, 290 F.3d 768 (6th Cir. 2002) ......................................... 22

*Costco Wholesale Corp. v. Maleng*, 522 F.3d 874 (9th Cir. 2008) ......................................... 12, 15, 23

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

iii

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO DISMISS

**TABLE OF AUTHORITIES (cont.)**

*Dang v. San Francisco Forty Niners*, 964 F. Supp. 2d 1097 (N.D. Cal. 2013) ...................................... 4, 7, 9

*Doe v. Ariz. Hospital and Healthcare Assoc.*, 2009 WL 1423378 (D. Ariz. Mar. 19, 2009) ....................... 24

*Donald B. Rice Tire Co. v. Michelin Tire Corp.*, 483 F. Supp. 750 (D. Md. Jan. 30, 1980) ......................... 7

*Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451 (1992) ..................................... 5

*Erickson v. Pardus*, 127 S. Ct. 2197 (2007) ..................................................... 4

*Fleer Corp. v. Topps Chewing Gum, Inc.*, 658 F.2d 139 (3d Cir. 1981) ......................................... 18

*Free Freehand Corp. v. Adobe Sys.*, 852 F. Supp. 2d 1171 (N.D. Cal. 2012) ............................... 21

*FTC v. Actavis*, 133 S. Ct. 2223 (2013) ..................................................... 19

*FTC v. Indiana Federation of Dentists*, 476 U.S. 447 (1986) ..................................... 5

*FTC v. Lab. Corp. of Am.*, 2011 U.S. Dist. LEXIS 20354 (C.D. Cal. Feb. 22, 2011) ............................ 23

*FTC v. Staples*, 970 F. Supp. 1066 (D.D.C. 1997) ..................................................... 6

*FTC v. Whole Foods Mkt., Inc.*, 548 F.3d 1028 (D.C. Cir. 2008) ..................................... 6

*GSI Tech., Inc. v. Cypress Semiconductor Corp.*,
    2012 U.S. Dist. LEXIS 93888 (N.D. Cal. July 6, 2012) ..................................... 11

*GSI Tech., Inc. v. Cypress Semiconductor Corp.*,
    2015 U.S. Dist. LEXIS 9378 (N.D. Cal. Jan. 27, 2015) ..................................... 8

*Haelan Labs, Inc. v. Topps Chewing Gum, Inc.*, 202 F.2d 866 (2d Cir .1953) ..................................... 19

*Hazel Bishop, Inc. v. Perfemme, Inc.*, 314 F.2d 399 (2d Cir. 1963) ..................................... 19

*High Tech. Careers v. San Jose Mercury News*, 996 F.2d 987 (9th Cir. 1993) ..................................... 10

*Image Tech. Servs. v. Eastman Kodak Co.*, 125 F.3d 1195 (9th Cir. Cal. 1997) ..................................... 8

*In re Adderall XR Antitrust Litig.*, 754 F.3d 128 (2d Cir. 2014) ..................................... 24

*In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 363 F. Supp. 2d 514 (E.D.N.Y. 2005) ........................... 7

*In re Ductile Iron Pipe Fittings Direct Purchaser Antitrust Litig.*,
    2013 U.S. Dist. LEXIS 29865 (D.N.J. Mar. 5, 2013) ..................................... 13

*In re EBay Seller Antitrust Litig.*, 545 F. Supp. 2d 1027 (N.D. Cal. 2008) ..................................... 23

*In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008) ..................................... 4

*In re High-Tech Employee Antitrust Litig.*, 856 F. Supp. 2d 1103 (N.D. Cal. 2012) ..................................... 24

*In re Hypodermic Prods. Antitrust Litig.*,
    2007 U.S. Dist. LEXIS 47439 (D.N.J. June 29, 2007) ..................................... 13

*In re NCAA I-A Walk-on Football Players Litig.*, 398 F. Supp. 2d 1144 (W.D. Wash. 2005) .................. 6

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

iv

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO DISMISS

**TABLE OF AUTHORITIES (cont.)**

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
990 F. Supp. 2d 996 (N.D. Cal. 2013) ...................................................19, 23, 24

*In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367 (D. Mass. 2013) ................................11

*In re Super Premium Ice Cream Dist. Antitrust Litig.*, 691 F. Supp. 1262 (N.D. Cal. 1988) ....................7

*In re Webkinz Antitrust Litig.*, 2010 U.S. Dist. LEXIS 111810 (N.D. Cal. Oct. 20, 2010) ......................10

*Ind. Entm't Grp. v. Nat'l Basketball Ass'n*, 853 F. Supp. 333 (C.D. Cal. 1994) ......................................23

*Integraph Corp. v. Intel Corp.*, 195, F.3d 1346 (Fed. Cir. 1999) ................................................12

*International Boxing Club of New York, Inc. v. United States*, 358 U.S. 242 (1959) ...........................6

*ITT v. Gen. Tel. & Elecs. Corp.*, 518 F.2d 913 (9th Cir. 1975) ................................................22

*JBL Enters., Inc. v. Jhirmack Enters., Inc.*, 698 F.2d 1011 (9th Cir. 1983) ................................23

*Kan. Penn. Gaming v. Collins*, 656 F.3d 1210 (10th Cir. 2011) ................................................14

*Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997) ................................................22

*Knevelbaard Dairies v. Kraft Foods*, 232 F.3d 979 (9th Cir. 2000) ................................................4

*Lorain Journal Co. v. United States*, 342 U.S. 143 (1951) ................................................20

*Marchbanks Truck Serv. v. Comdata Network, Inc.*,
2011 U.S. Dist. LEXIS 158011 (E.D. Pa. Mar. 24, 2011) ......................................11, 15, 21

*Masimo Corp. v. Tyco Health Care Grp., L.P.*, 2004 WL 5907538 (C.D. Cal. June 10, 2004) .................12

*Maxon Hyundai Mazda v. Carfax, Inc.*,
2014 U.S. Dist. LEXIS 139480 (S.D.N.Y. Sept. 29, 2014) ................................................15

*Meijer, Inc. v. Abbott Labs.*, 544 F. Supp. 2d 995 (N.D. Cal. 2008) ................................................11

*Menasha Corp. v. News Am. Marketing In-Store, Inc.*, 354 F.3d 661 (7th Cir. 2004) ...............................17

*MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124 (9th Cir. 2004) ................................................4

*MiniFrame Ltd. v. Microsoft Corp.*,
2013 U.S. Dist. LEXIS 49813 (S.D.N.Y. Mar. 28, 2013) ................................................19

*NCAA v. Bd. of Regents of Univ. of Oklahoma*, 468 U.S. 85 (1984) ................................................6

*Nelson v. Monroe Reg'l Med. Ctr.*, 925 F.2d 1555 (7th Cir. 1991) ................................................21

*Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038 (9th Cir. 2008) ................................5, 11

*Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns., Inc.*,
311 F. Supp. 2d 1048 (D. Colo. 2004) ................................................6

*O'Bannon v. NCAA*, 7 F. Supp. 3d 955 (N.D. Cal. 2014) ................................................6

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

v

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO DISMISS

**TABLE OF AUTHORITIES (cont.)**

*Oahu Gas Serv., Inc. v. Pacific Res., Inc.*, 838 F.2d 360 (9th Cir. 1988) .................................................. 9, 18

*Omega Envtl. v. Gilbarco*, 127 F.3d 1157 (9th Cir. 1997) ...................................................................... 13, 16

*Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234 (9th Cir. 1987) ........................................................ 22

*Paddock Publishers v. Chicago Tribune Co.*, 103 F.3d 42 (7th Cir. 1996) ................................................... 16

*PNY Techs., Inc. v. SanDisk Corp.*,
2012 U.S. Dist. LEXIS 55965 (N.D. Cal. Apr. 20, 2012) ....................................................................... 8

*PNY Techs., Inc. v. SanDisk Corp.*,
2014 U.S. Dist. LEXIS 90649 (N.D. Cal. July 2, 2014) ........................................................................ 16

*Pro Search Plus, LLC v. VFM Leonardo, Inc.*,
2013 U.S. Dist. LEXIS 169856 (C.D. Cal. Dec. 2, 2013) ...................................................................... 13

*Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d 1421 (9th Cir. 1995) ................................................... passim

*Retrophin, Inc. v. Questcor Pharms., Inc.*, 41 F. Supp. 3d 906 (C.D. Cal. 2014) ....................................... 23

*Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*,
2013 U.S. Dist. LEXIS 151128 (N.D. Cal. Oct. 18, 2013) .................................................................... 14

*Rock v. NCAA*, 2013 U.S. Dist. LEXIS 116133 (S.D. Ind. Aug. 16, 2013) ................................................ 6

*Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380 (7th Cir. 1984) ................................................. 23

*Rooney v. Columbia Pictures Indus., Inc.*, 538 F. Supp. 211 (S.D.N.Y. 1982) .......................................... 19

*Safeway Inc. v. Abbott Labs.*, 761 F. Supp. 2d 874 (N.D. Cal. 2011) .............................................. 9, 11, 24

*Sanderson v. Culligan Int'l Co.*, 415 F.3d 620 (7th Cir. 2005) ............................................................. 21

*Schacher v. Am. Academy of Ophthalmology, Inc.*, 870 F.2d 397 (7th Cir. 1989) ..................................... 21

*Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001 (9th Cir. 2008) ............................................................... 4

*SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780 (9th Cir. 1996) ........................... 23

*Solo v. SD-3C LLC*, 751 F.3d 1081 (9th Cir. 2014) ............................................................................. 22

*Standard Oil Co. v. United States*, 221 U.S. 1 (1911) .......................................................................... 21

Syufy Enters. v. American Multi Cinema Inc., 793 F.2d 990 (9th Cir.1986) ........................................... 10

*Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320 (1961) ................................................................ 13

*Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059 (9th Cir. 2001) ..................................................................... 7

*Tele Atlas N.V. v. NAVTEQ Corp.*, 397 F. Supp. 2d 1184 (N.D. Cal. 2005) ........................................... 15

*Todd v. Exxon Corp.*, 275 F.3d 191 (2d Cir. 2001) ........................................................................ 10, 11

*Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90 (2d Cir. 1998) ....................................................... 11

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

vi

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO DISMISS

**TABLE OF AUTHORITIES (cont.)**

*Twin City Sportserv., Inc. v. Charles O. Finely & Co.*, 676 F.2d 1291 (9th Cir. 1982) ................................ 13

*United States v. Am. Express Co.*, 2015 U.S. Dist. LEXIS 20114 (E.D.N.Y. Feb. 19, 2015)...................... 14

*United States v. Delta Dental*, 943 F. Supp. 172 (D.R.I. 1996) ........................................................ 13

*United States v. Dentsply Int'l, Inc.*, 399 F.3d 181 (3d Cir. 2005) ............................................ 13

*United States v. Grinnell Corp.*, 384 U.S. 563 (1966) ...........................................................12, 21

*United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001) ...............................4, 19, 20, 22

*United States v. Syufy Enterprises*, 903 F.2d 659 (9th Cir. 1990) ............................................ 23

*Verizon Comm'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004) ........................... 21

*Volvo North America Corp. v. Men's International Professional Tennis Council*,
    857 F.2d 55 (2d Cir. 1988) ................................................................................... 23

*W. Penn Allegheny Health Sys. v. UPMC*, 627 F.3d 85 (3d Cir. 2010) .......................................11

*Washington v. NFL*, 880 F. Supp. 2d 1004 (D. Minn. 2012) .......................................... 19, 24

*ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254 (3d Cir. 2012) ................................................ 15

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

vii

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO DISMISS

## I.     INTRODUCTION

Elite professional mixed martial arts fighters ("Elite MMA Fighters") brought this antitrust class action against Zuffa LLC, d/b/a Ultimate Fighting Championship and UFC (the "UFC" or "Defendant"). Plaintiffs[1] seek to represent two proposed classes: the Bout Class (Elite MMA Fighters who have "competed in one or more live professional UFC-promoted MMA bouts") and the "Identity Class" (Elite MMA Fighters who had their "Identit[ies] . . . expropriated or exploited by the UFC"). Compl. ¶¶ 39, 47.

Plaintiffs allege as follows:[2] the UFC used anticompetitive conduct to establish and maintain its dominance in the market for promoting live elite professional MMA events ("Elite MMA Events"). That conduct included, among other things, (a) entering exclusive contracts with Elite MMA Fighters that effectively blocked the vast majority from fighting for rivals, (b) acquiring rival promotion companies, and (c) entering exclusive agreements with key sponsors and venues—together, the "scheme." By depriving rivals of necessary inputs (Elite MMA Fighters, key venues, etc.) and acquiring them, the UFC foreclosed all competition from rival elite MMA promoters. As a result, it became the dominant—really, the only—promoter of Elite MMA Events. It has *monopoly* power. That monopoly power in turn gave the UFC *monopsony* power over Elite MMA Fighters because it was the only purchaser of their services. That monopsony power enabled it to impose exclusive contracts on Elite MMA Fighters and to require them to give up their identity rights in perpetuity. The UFC thereby deprived rival promoters of inputs necessary to mount a successful MMA promotion company. Elite Fighters could not fight for rivals without violating the exclusive dealing contracts and, in any case, rivals were impaired in using these Fighters' identity rights to promote bouts. Thus, the UFC's

---

[1] As used herein, "Plaintiffs" in these related actions are Elite MMA Fighters Cung Le, Nathan Quarry, Jon Fitch, Luis Javier Vazquez, Dennis Lloyd Hallman, Brandon Vera, Pablo Garza, Gabe Ruediger, Mac Danzig, Kyle Kingsbury, and Darren Uyenoyama. Due to the substantial similarity of the allegations in the complaints filed in these related cases, references to "Compl." refer to the case complaint in *Le et al. v. Zuffa*, No. 5:14-cv-05484-EJD (ECF 1), and "Complaints" refers to the complaints collectively. References to the Motion are referred to as "Def. Br."

[2] Due to the substantial similarity in the complaints filed in the related cases (*Vazquez et al. v. Zuffa* (5:14-cv-05591-EJD); *Vera et al. v. Zuffa* (5:14-cv-05621-JED); *Ruediger et al v. Zuffa* (5:15-cv-00521-EJD)), and *Kingsbury et al. v. Zuffa, LLC* (5:15-cv-01324-PSG), Plaintiffs cite to the lead case complaint where identical allegations are contained in the other complaints.

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD
1
PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO DISMISS

monopoly and monopsony power were mutually reinforcing. The scheme enabled the UFC to injure MMA Fighters by artificially suppressing their compensation for bouts and their identity rights.

As explained below, the scheme violates Section 2 of the Sherman Act, 15 U.S.C. § 2 ("Section 2"). Plaintiffs allege (1) the UFC has monopoly and monopsony power; (2) the UFC acquired and maintained its monopoly and monopsony power through conduct that foreclosed competition, (3) that conduct had anticompetitive effects; and (4) that conduct caused antitrust injury to Plaintiffs by decreasing their compensation below competitive levels. The UFC's Motion to Dismiss ("Motion") challenges the sufficiency of Plaintiffs' allegations, using scattershot arguments that rely on inapposite cases taken out of context. It also at times makes its own allegations. None of its arguments supports dismissal. At most, they suggest possible defenses—including procompetitive justifications—the UFC may pursue at summary judgment or trial.

## II.   ALLEGATIONS

### A.   Elite MMA Fighters Are a Key Input for MMA Promotions.

Elite MMA Fighters are skilled athletes, who train for years in multiple fighting disciplines before competing professionally. Compl. ¶¶ 77, 97. They have gained popularity and standing with the MMA fan base and are able to attract broad live and pay-per-view ("PPV") audiences. *Id.* ¶ 58. Elite MMA Fighters are vital inputs in the market for Elite MMA Events. The strength of any given fight "card" determines ticket purchases and viewership for broadcasts and PPV. *Id.* ¶¶ 58, 99. Elite MMA Fighters are crucial for MMA promoters to attract a fan base, sponsors, television distribution outlets and high-quality venues. *Id.* ¶ 108. To be competitive, promoters must host sufficiently successful events to allow Elite MMA Fighters to build their public notoriety, reputation, fan base and earning potential. *Id.*

### B.   The UFC Engaged in Anticompetitive Conduct to Exclude Competitors and Monopsonize the Market for Elite MMA Fighters.

Beginning in December 2006, the UFC launched a campaign to acquire competitors, establish exclusive dealing arrangements with Elite MMA Fighters, top venues, and sponsors, and secure identity and other licensing rights within the MMA industry. *Id.* ¶¶ 105-06, 128-29. Crucial to the UFC's exclusionary scheme were exclusive contracts with restrictive provisions that, among other things,

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

2

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO DISMISS

prohibited Fighters from appearing in competing promoters' bouts ("Exclusivity Clauses"); usurped control over licensing or endorsement agreements pertaining to Fighters' likeness and identity rights ("Ancillary Rights Clauses"); and permitted the UFC to unilaterally extend these terms indefinitely ("Champion's," "Right to Match," "Retirement" Clauses and the contracts' tolling provisions). *Id.* ¶ 113. These contracts locked up critical inputs to the Elite MMA Events market in perpetuity, allowing the UFC to keep Fighters under contract indefinitely and to forcing Fighters to relinquish certain identity rights forever. *Id.* The UFC also leveraged its exclusive control over Elite MMA Events and Fighters to establish exclusive deals with: (1) top-tier venues for holding Elite MMA Events; (2) PPV and television distribution channels; and (3) sponsors and endorsements. *Id.* ¶¶ 9-10, 58, 75, 108, 122.

While the UFC was locking up Fighters, venues, sponsors and distribution channels, it also bought its weakened rivals. Compl. ¶¶ 129-131. The culmination was its acquisition of Strikeforce, its last-standing competitor. *Id.* ¶ 128. Through the Strikeforce and earlier acquisitions, and other aspects of the scheme, the UFC secured monopsony power in the market for Elite MMA Fighters in every weight class and monopoly power in the market for Elite MMA Events. *Id.* ¶¶ 134-138. Combined, these efforts eliminated other MMA promoters or relegated them to "minor league" status, while raising barriers to entry for new would-be rivals. *Id.* ¶¶ 135-50.

### C.  The UFC Dominates the Relevant Markets.

This anticompetitive conduct enabled the UFC to dominate the market for promoting Elite MMA Events. The UFC receives approximately **90%** of *all* revenue generated by those Events. *Id.* ¶¶ 7, 72, 74, 134, 152. It controls prices and excludes competition in the market for Elite MMA Events, preventing any would-be rivals from staging a profitable PPV event featuring Elite MMA Fighters. *Id.* ¶¶ 100, 135-50, 157. The UFC also dominates the market for Elite MMA Fighter services, controlling the services of **virtually all** Elite MMA Fighters indefinitely. *Id.* ¶¶ 7, 72, 74, 134.

The UFC's power in each market reinforces its power in the other. By excluding competition in the market for promoting Elite MMA Events, the UFC has restricted the options of Elite MMA Fighters. The UFC prevents their access to alternative revenue sources by requiring them to deal exclusively with the UFC and locking up sponsors. *Id.* ¶¶ 10, 113(h), 114, 116, 123-26. Further, the UFC's control over Elite MMA Fighter services allows it to exclude competition from other promoters.

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

3

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO DISMISS

Potential promoters of Elite MMA Events "do not have access to the Elite MMA Fighters necessary to sustain and grow a profitable rival promotion company." *Id* ¶ 109.

### D.    The UFC's Scheme Caused Antitrust Injury to Plaintiffs.

The UFC's enhanced monopsony power gained through the scheme has suppressed, and continues to suppress compensation to members of: (i) the Bout class, and (ii) the Identity Class. *Id.* at ¶¶ 151, 153, 160.

## III.    LEGAL STANDARD

A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007); *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007). In the Ninth Circuit, Rule 12(b)(6) motions are disfavored and are proper only in exceptional cases; a complaint satisfies *Twombly* if the allegations, taken as a whole, are facially plausible. *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008). On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1003 (9th Cir. 2008); *Dang v. San Francisco Forty Niners*, 964 F. Supp. 2d 1097, 1103 (N.D. Cal. 2013). A defendant may not ignore or recast plaintiffs' allegations. *Knevelbaard Dairies v. Kraft Foods*, 232 F.3d 979, 989-90 (9th Cir. 2000).

A Section 2 monopolization or monopsonization claim requires that the defendant (1) possessed monopoly or monopsony power, (2) willfully acquired or maintained that power through exclusionary conduct and (3) caused antitrust injury. *MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1130 (9th Cir. 2004); *see also Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 596-97 (1985).

## IV.    ARGUMENT

### A.    Plaintiffs Sufficiently Plead that the UFC Has Monopoly and Monopsony Power.

Plaintiffs satisfy the first element of a Section 2 violation—monopoly or monopsony power—through each of two independently sufficient means (1) circumstantial evidence about the structure of the market and (2) direct evidence of injury to competition. *Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995). Circumstantial evidence shows that a defendant is *capable* of harming competition. *United States v. Microsoft Corp.*, 253 F.3d 34, 51 (D.C. Cir. 2001). Direct evidence shows that a defendant has *in fact* harmed competition—which means the defendant was *capable* of doing so.

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

4

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO DISMISS

*Id.*; *see also Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 481 (1992); *FTC v. Indiana Federation of Dentists*, 476 U.S. 447, 460-61 (1986); *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 307 & n.3 (3d Cir. 2007). Each suffices. *Rebel Oil*, 51 F.3d at 1434.[3]

### 1. Plaintiffs Sufficiently Allege Circumstantial Evidence of Monopoly Power.

Plaintiffs plead circumstantial evidence of market power by alleging (1) a market for Elite MMA Events; (2) the UFC's dominant market share; and (3) barriers to entry. *Rebel Oil*, 51 F.3d at 1434.

### a. Plaintiffs Have Properly Defined a Market for Elite MMA Events.

Plaintiffs plausibly define a market for Elite MMA Events, which attract a distinct following. Compl. ¶¶ 55-62. The UFC argues the distinction between "Elite" and non-Elite fighters is "subjective and vague." Def. Br. 8, 17-18.[4] Not true. The distinction is well understood in the industry. The Complaints allege sponsors, media outlets and fans distinguish between Elite MMA Events and non-Elite MMA Events, as the latter do not generate comparable public interest or revenue. *See* Compl. ¶ 139 ("Without big-ticket MMA Cards with Elite MMA Fighters, would-be rival promotions are unable to secure sufficient public interest or sponsors and venues large enough or prestigious enough to" make a profit); *id.* ¶¶ 100, 135. The scheme deprives would-be rival promoters from fielding Elite MMA Fighters and relegates them to serving as "minor leagues." *Id.* at ¶ 7. The UFC's own President Dana White concedes: "As bad as people don't want to believe it, they don't want to hear it, meaning the other owners of the other mixed martial arts organizations—that's all they all are, they're all the Triple-A [*i.e.*, minor leagues] to Zuffa. . . . All the people that don't embrace it, embrace losing sh*t loads of money." *Id.* ¶ 145; *see also id.* at ¶ 8. Non-Elite MMA fighters are thus inadequate substitutes for Elite fighters.[5]

---

[3] No heightened pleading standard applies in alleging monopoly or monopsony power. *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1044 (9th Cir. 2008).

[4] The UFC implies its arguments apply to the markets for both Elite MMA Events and Elite Fighter Services. Def. Br. 17-19. Its arguments are wrong for the same reasons in regard to both markets.

[5] The UFC also argues that there are "reasonable substitutes" for Elite MMA Fighters because of the supposed existence of fighters "associate[ed] with UFC." Def. Br. 19. But the Complaints allege, "All UFC Fighters are Elite MMA Fighters." Compl. ¶ 30(d).

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

5

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO DISMISS

The UFC's argument also relies on facts not found in the Complaints. Nowhere do Plaintiffs allege the term Elite is not used in the industry.[6] Def. Br. 17. And past antitrust cases recognize the distinction between "elite" and "non-elite" athletes. In *International Boxing Club of New York, Inc. v. United States*, 358 U.S., 242, 250-52 (1959), the Supreme Court affirmed a market limited to "championship" boxing contests rather than *all* professional boxing contests. *Id.* at 252. Courts interpreting *International Boxing* have consistently upheld a "relevant market definition based on a quality distinction of one league over another" "particularly where that distinction results in increased revenue and opportunities for the participants." *See Rock v. NCAA*, 2013 U.S. Dist. LEXIS 116133, at *38 (S.D. Ind. Aug. 16, 2013) (distinguishing Division I football from Division II and Division III) (and discussing *NCAA v. Bd. of Regents of Univ. of Oklahoma*, 468 U.S. 85, 118 (1984));[7] *O'Bannon v. NCAA*, 7 F. Supp. 3d 955, 966-68 (N.D. Cal. 2014) (top division college football and basketball are separate markets from lower divisions); *Clarett v. NFL*, 306 F. Supp. 2d 379, 383-84, 403 (S.D.N.Y. 2004) (NFL is separate market from other professional football leagues, such as Arena Football), *rev'd on other grounds*, 369 F.3d 124 (2d Cir. 2004).

Courts also routinely adopt market definitions that require judgment at their outer limits. "That the outer edge of a market's boundaries [is] disputed does not mean the market is legally flawed. . . ." *Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns., Inc.*, 311 F. Supp. 2d 1048, 1090 (D. Colo. 2004) ("rock" music may be distinct market); *see also FTC v. Whole Foods Mkt., Inc.*, 548 F.3d 1028, 1036-39 (D.C. Cir. 2008) (recognizing market for "premium, natural, and organic supermarkets"); *FTC v. Staples*, 970 F. Supp. 1066, 1074-75, 1082-83 (D.D.C. 1997) (recognizing distinct submarket of office superstores). Finally, the Complaints distinguish MMA Fighters with a high level of achievement from

---

[6] Further, although this Court need not go beyond the Complaints, the MMA industry itself distinguishes Elite from non-Elite Fighters: the UFC has identified its fighters as "elite[-]level;" investment analysts like Moody's describes UFC's market dominance based on its "elite" fighters; and fighters, fan blogs and websites use the same terms. *See* Request for Judicial Notice ("RJN"), Exs. 1-15; Compl. ¶¶ 7, 135-50.

[7] *See also In re NCAA I-A Walk-on Football Players Litig.*, 398 F. Supp. 2d 1144, 1150 (W.D. Wash. 2005) (denying NCAA's motion to dismiss where top recruits are "necessary 'inputs' to the production of Division I-A football"); *Ass'n for Intercollegiate Athletics for Women v. Nat'l Collegiate Athletic Ass'n*, 558 F. Supp. 487, 497 (D.D.C. 1983), *aff'd,* 735 F.2d 577 (D.C. Cir. 1984) (concluding that the "NAIA is not a realistic option" to Division I men's intercollegiate athletics).

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD
6
PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO DISMISS

others, and between MMA and other spectator combat. Compl. ¶¶ 77, 79.[8] These distinctions are consistent with *International Boxing* and related cases. *See e.g. Dang*, 964 F. Supp. 2d at 1107 (defining NFL-logo-bearing apparel as a distinct market).

The UFC also contends Plaintiffs allege an improper "single brand market." Def. Br. 18-19.[9] Untrue. "Elite MMA Fighters" includes *all* fighters who succeed in local or regional MMA promotions or who gain public notoriety through other athletic competitions. Compl. ¶ 30(d).[10] Virtually all Elite MMA Fighters are in the UFC only because it has excluded rivals *through its anticompetitive conduct*. Compl. ¶134; *see In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 363 F. Supp. 2d 514, 523 (E.D.N.Y. 2005) (accepting market consisting of a single drug, ciprofloxacin, made for a time only by Bayer).[11] Similarly, the UFC complains a Fighter who fights only a single bout in the UFC is considered Elite.

---

[8] *In re Super Premium Ice Cream Dist. Antitrust Litig.*, 691 F. Supp. 1262 (N.D. Cal. 1988), Def. Br. 18, is unavailing. At issue there was whether "super premium" ice cream is a separate market. But the court ruled at summary judgment based on the evidence. *Id.* at 1263. Moreover, the court did not hold generally that differences in quality cannot distinguish different markets, but only that the evidence before it did not show consumers considered premium ice cream to be different. *Id.* at 1268. As in *Super Premium*, Plaintiffs here should get to prove that Elite Fighters are distinct.

[9] Markets for a single good or service can be appropriate for a Section 2 claim. *See Cascades Computer Innovation LLC v. RPX Corp.*, 2013 U.S. Dist. LEXIS 170517 at *51-52 (N.D. Cal. Dec. 3, 2013).

[10] *Donald B. Rice Tire Co. v. Michelin Tire Corp.*, 483 F. Supp. 750 (D. Md. Jan. 30, 1980), Def. Br. 19, is distinguishable on this ground. Unlike the plaintiff in *Michelin*, Plaintiffs do not limit their product market to one brand, and the markets are determined by cross-elasticity of demand and reasonable interchangeability, as discussed in this Section and *infra*, at Sec. IV.A.2.a.

[11] *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001), Def. Br. 17, has no applicability here. There, the plaintiff college athlete restricted the relevant market to the "UCLA women's soccer program." Here, Plaintiffs define the market based on an elite level of a nationwide sport.

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-05521-EJD
5:15-cv-01324-EJD
7
PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO DISMISS

Def. Br. 18. But the UFC itself asserts its Fighters are elite, having proven themselves in other "minor" leagues or otherwise. *See* RJN, Exs. 1-15; Compl. ¶¶ 7, 30(d), 135-50.[12]

### b.    Plaintiffs Allege a Dominant Market Share.

As this Court holds, "A high market share raises an inference of market power." *GSI Tech., Inc. v. Cypress Semiconductor Corp.*, 2015 U.S. Dist. LEXIS 9378, at *16 (N.D. Cal. Jan. 27, 2015) ( J. Davila). Sixty-five percent of a market generally suffices. *Image Tech. Servs. v. Eastman Kodak Co.*, 125 F.3d 1195, 1206 (9th Cir. Cal. 1997).[13] Plaintiffs allege the UFC promotes "virtually all" Elite MMA Events, and controls 90% of the revenues of those events. Compl. ¶¶ 7, 134.

### c.    Plaintiffs Allege High Barriers to Entry.

The UFC implies there are no significant barriers to entry, arguing that its industry is "rough and tumble." Def. Br. 24. Wrong. Indeed, the challenged conduct itself is a substantial barrier to entry for rival promoters. By locking up Elite MMA Fighters with exclusive and perpetually renewing deals, Compl. ¶¶ 75, 111, 113, 134, key venues and sponsors, *id.* ¶¶ 75, 127, a vast library of fight clips necessary to promote bouts, *id.* ¶ 75,and the identity rights of Elite MMA Fighters in perpetuity, *id.* ¶¶ 92, 113(d), 117, 119, the UFC has choked off necessary inputs to potential rivals. *Id.* ¶¶ 9, 11, 75, 107-15, 128, 166. *See, infra*, at IV.B.1.a.i. As a result, other promoters cannot challenge UFC's entrenched brand, which has shaped a consumer view that the UFC is "synonymous" with MMA. *See* Compl. ¶ 75. Forming a new entity to compete with the UFC, absent these key inputs, is made even more difficult by

---

[12] *Apple Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1197 (N.D. Cal. 2008), Def. Br. 19, is inapposite for two reasons. First, in *Psystar,* the plaintiff's market definition included only one of Apple's operating systems and, unlike here, ignored obvious substitutes such as "other operating systems [including] Microsoft's Windows." *Id.* at 1196. Here, the UFC has no competitors. Compl. ¶¶ 7, 8, 139, 145. Second, in *Psystar*, unlike here, the plaintiff alleged that Apple's operating system was similar enough to other operating systems that it was reasonably interchangeable with those systems. *Id.* at 1199 (Apple's operation system "performs the same functions as other operating systems"). Plaintiffs here allege that Elite MMA Events are unparalleled. Compl. ¶¶ 7, 8, 139. For the same reasons, the UFC's argument, Def. Br. 17-18, finds no support in *United States v. Oracle Corp.*, 331 F. Supp. 2d 1098 (N.D. Cal. 2004). That case was resolved after a bench trial at which it was determined SAP and PeopleSoft were competitors in the same market. *Id.* at 1101. Also, the court did not hold that a market cannot be defined based on qualitative differences, but only that, at trial, evidence must support these differences. *Id.*

[13] *PNY Techs., Inc. v. SanDisk Corp.*, 2012 U.S. Dist. LEXIS 55965, *28 (N.D. Cal. Apr. 20, 2012), cited by the UFC (Def. Br. 11-12), is inapplicable because there, by contrast, "PNY's Complaint . . . at best articulates only a 40% share in the retail market for products."

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

8

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO DISMISS

additional barriers, including: the need to be sanctioned by state authorities and other government regulation; a substantial upfront investment of capital to successfully promote Elite MMA Events; the ability to secure appropriate venues, sponsorships, endorsements, and PPV or television distribution rights; overcoming the UFC's international brand recognition; the ability to promote profitable enough bouts resulting in competitive compensation to Fighters; and overcoming the UFC's control of Fighters' identity rights and bout footage in video libraries. *Id*. ¶¶ 61, 75, 77, 101.

The UFC cites the existence of minor league promoters who can sign non-Elite MMA Fighters. Def. Br. 6-7, 14, 24. But such "minor league" events do not draw large audiences, sponsors, or revenues and are *not* substitutes for Elite MMA Events. *See* Compl. ¶¶ 7, 139, 145. Moreover, as the Ninth Circuit has explained, "The fact that entry has occurred does not necessarily preclude the existence of 'significant' entry barriers." *Rebel Oil*, 51 F.3d at 1440. This is especially true if, as here, "output or capacity of the new entrant is insufficient to take significant business away" from the alleged monopolist, and any potential competitor is "unlikely to present a challenge [to the monopolist's] market power." *Id*. No would-be "competitors" have retained Elite MMA Fighters and competed with the UFC. *Oahu Gas Serv., Inc. v. Pacific Res., Inc.*, 838 F.2d 360, 367 (9th Cir. 1988) ("evidence that the [rival] firm remained very small could reasonably preclude a decision that [the rival's] entry reflected a breakdown of barriers to entry."); *Safeway Inc. v. Abbott Labs.*, 761 F. Supp. 2d 874, 889 (N.D. Cal. 2011) (denying summary judgment although competitors' share of the market was expanding).

### 2.   Plaintiffs Plausibly Allege Circumstantial Evidence of Monopsony Power.

Plaintiffs establish circumstantial evidence of the UFC's monopsony power over Elite MMA Fighters' services by plausibly alleging (1) a relevant market; (2) a dominant market share in that market; and (3) barriers to entry into that market. *Rebel Oil*, 51 F.3d at 1434.

### a.   Plaintiffs Plausibly Allege a Market for Elite MMA Fighter Services.

Plaintiffs plausibly allege a market for Elite MMA Fighter services. To define a market, a court assesses cross elasticity of demand or the reasonable interchangeability of services. *Brown Shoe v. United States*, 370 U.S. 294, 325 (1962); *see also Dang*, 964 F. Supp. 2d at 1107. Defining a relevant market is generally a fact question for a jury. *Syufy Enterprises v. American Multicinema, Inc.*, 793 F.2d 990, 994

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

9

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO DISMISS

(9th Cir. 1986); *In re Webkinz Antitrust Litig.*, 2010 U.S. Dist. LEXIS 111810, at *12 (N.D. Cal. Oct. 20, 2010); *Todd v. Exxon Corp.*, 275 F.3d 191, 199-200 (2d Cir. 2001).[14]

As discussed above, an Elite MMA Fighter is plausibly defined as "any Professional MMA Fighter who has demonstrated success through competition in local and/or regional MMA promotions, or who has developed significant public notoriety among MMA Industry media and the consuming audience through demonstrated success in athletic competition." Compl. ¶ 30(d). *See supra* IV.A.1.a. Unlike non-Elite MMA Fighters, Elite MMA Fighters have "substantial national or regional notoriety," *id.* ¶10; have "reputations for winning professional bouts or … have gained notoriety with the MMA fan base and thus … can attract a wide audience," *id.* ¶ 58; are highly "skilled athletes who typically train for years before competing professionally, *id.* ¶¶ 58, 77, 94; are "rare multidisciplinary athletes who can perform at very high levels in more than one discipline, *id.* ¶ 94; and have worked their way "up the ranks in local and regional promotions" to be able to compete in the UFC, *id.* ¶¶ 94, 97. Elite MMA Fighters are not interchangeable with non-Elite MMA Fighters as demonstrated by bout purse differentials, fan demand, gate revenues, attendance figures, merchandise sales, licensing fees, advertising rates, media rankings, public notoriety, endorsements or sponsorships, and fighter earning potential, supporting a separate market for Elite MMA Fighters. *Id.* ¶¶ 74, 108, 135, 138-39, 147.

### b.    Plaintiffs Allege a Dominant Market Share.

Plaintiffs allege the UFC has a dominant share in the market for Elite MMA Fighter services. The UFC controls "virtually all" Elite MMA Fighters. Compl. ¶ 134. The UFC argues the Complaints do not quantify the number of Elite Fighters. Def. Br. 14. Plaintiffs need not identify the precise size of the market or otherwise plead market share with specificity. *See GSI Tech., Inc. v. Cypress Semiconductor*

---

[14] *High Tech. Careers v. San Jose Mercury News*, 996 F.2d 987, 990 (9th Cir. 1993) (market definition depends on "a factual inquiry into the 'commercial realities' faced by consumers").

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD
10
PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO DISMISS

*Corp.*, 2012 U.S. Dist. LEXIS 93888, at *14 (N.D. Cal. July 6, 2012) (citing *Newcal Indus.*, 513 F.3d at 1044).[15]

### 3.    Plaintiffs Allege Direct Evidence of Monopoly and Monopsony Power.

Direct evidence of monopoly power includes allegations of "restricted output and supracompetitive prices." *Rebel Oil*, 51 F.3d at 1434; *Meijer, Inc. v. Abbott Labs.*, 544 F. Supp. 2d 995, 1002-04 (N.D. Cal. 2008) (ability to price drugs so as to exclude competition is evidence of market power in a Section 2 claim). On a motion to dismiss, "[t]his Court need not engage in an extensive analysis of circumstantial evidence of market power because direct evidence of such power is available" through Plaintiffs' direct allegations of monopoly power.[16] The allegations establish the UFC exercises power over sales of Elite MMA Events by raising ticket and PPV prices significantly above competitive levels, *id.* ¶ 157, and it has the power to exclude competition in the relevant markets, controlling virtually all Elite MMA Fighters and restricting the number of bouts. *Id.* ¶¶ 7, 72, 74, 134, 152.[17] Plaintiffs also directly allege monopsony power, including that the UFC artificially suppresses compensation for Elite MMA Fighters and controls the number of bouts they fight. Compl. ¶ 151. Direct allegations of monopoly and monopsony power suffice to survive a motion to dismiss, even without allegations of circumstantial evidence. *Rebel Oil*, 51 F.3d at 1434 (direct allegations of monopoly power sufficient); *Allen v. Dairy Farmers of Am., Inc.*, 2014 U.S. Dist. LEXIS 81193, *29-30 (D. Vt., June 11, 2014) (citing *Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 98 (2d Cir. 1998)) (direct allegations of monopsony power sufficient); *Todd*, 275 F.3d at 206-07 (same) ).

---

[15] Plaintiffs explain above that the UFC's anticompetitive scheme imposed barriers to entry for other promoters, which are applicable also to their monopsony claim. *See, supra,* IV.A.1.c. *See also W. Penn Allegheny Health Sys. v. UPMC*, 627 F.3d 85, 103-104 (3d Cir. 2010) ("monopsony power" allegations constituting "significant entry barriers" include factors similar to those recognized by *Rebel Oil* such as industry consolidation and defendants' "unwillingness to deal competitively" with competitors, leaving plaintiff "medical providers [with] very few alternative purchasers for their services").

[16] *In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367, 389 (D. Mass. 2013) (charging supracompetitive prices for drugs, alone, establishes monopoly market power directly); *Marchbanks Truck Serv. v. Comdata Network, Inc.*, 2011 U.S. Dist. LEXIS 158011, at *73 (E.D. Pa. Mar. 24, 2011); *Safeway Inc*, 761 F. Supp. 2d at 887..

[17] Plaintiffs further support their market power allegations with admissions from the UFC itself: "There is no competition. . . . There is no other guy." *Id.* ¶¶ 8, 12-14, 70, 130-34.

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

11

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO DISMISS

**B.**   **Plaintiffs Plausibly Allege Exclusionary Conduct in Violation of Section 2.**

Plaintiffs sufficiently plead the second element of a Section 2 claim: willful acquisition of monopoly and monopsony power through an exclusionary scheme. *See United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966); *Image Tech*, 125 F.3d at 1208 ("[U]se of monopoly power to gain a competitive advantage, or to destroy a competitor" meets the willfulness element). That scheme involved: (1) locking in Elite MMA Fighters perpetually and exclusively for the UFC, Compl. ¶¶ 109-115; (2) eliminating and impairing actual or potential rivals in the market for promoting Elite MMA Events, *id*. ¶¶ 128-150; (3) restricting actual or potential rivals' access to top quality venues, sponsors, endorsements, and PPV and television broadcast outlets through exclusive dealing arrangements, *id*. ¶¶ 73, 120-127; and (4) retaliating against Elite MMA Fighters and sponsors who support would-be rivals or speak out against the UFC. *Id*. ¶¶ 116-120, 122, 132. *See also id*. ¶¶ 21, 68, 110, 125, 127, 134.

The UFC improperly challenges each component of the alleged anticompetitive scheme separately, arguing that each, **in isolation**, insufficiently foreclosed competition. Def. Br. 9-16, 23-24. But the UFC has not made the same argument when the alleged exclusionary conduct is considered *as a whole*. That is fatal to its position: "in the antitrust context, the 'character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it *as a whole*.'" *Costco Wholesale Corp. v. Maleng*, 522 F.3d 874, 886 (9th Cir. 2008) (quoting *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962)) (emphasis added); *Masimo Corp. v. Tyco Health Care Grp., L.P.*, 2004 WL 5907538, at *5 (C.D. Cal. June 10, 2004).[18] Plaintiffs allege that, collectively, the UFC's conduct resulted in substantial foreclosure of "virtually all" of the markets for Elite MMA Events and Elite MMA Fighter services. Compl. ¶¶ 9-10, 19, 21, 68, 110, 115, 120, 125, 127, 134, 155. The Elite MMA Events market was foreclosed because competitors could not obtain critical inputs such as Elite MMA Fighters, sponsors and venues; the Elite MMA Fighter services market was foreclosed because Elite MMA Fighters could not earn a living by turning to any other promoter. The UFC

---

[18] *Integraph Corp. v. Intel Corp.*, 195 F.3d 1346, 1367 (Fed. Cir. 1999), Def. Br. 8-9, is inapposite. In *Integraph*, the Federal Circuit rejected plaintiff's argument that its *legal theories* should be considered in the aggregate, explaining that *Continental Ore* held that "the 'factual components' of a case should be viewed together, not the pieces of the legal theory." *Id*. at 1366-67. Plaintiffs here present a single legal theory, and argue that the *factual components* of the conduct be considered as a whole.

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD
12
PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO DISMISS

"receives approximately 90% of all revenue generated from MMA events from the Relevant Output Market," *id.* ¶¶ 74, 115, 134, and controls virtually all Elite MMA Fighters, *id.* ¶ 134. *Twin City Sportserv., Inc. v. Charles O. Finely & Co.*, 676 F.2d 1291, 1298 (9th Cir. 1982) (where exclusionary agreement was not terminable on short notice, 24% market foreclosure was sufficient to trigger Sherman Act liability). The UFC has no meaningful response to these allegations.

### 1.    The UFC's Exclusionary Conduct Substantially Foreclosed Competition.

The alleged scheme satisfies Section 2 because it "foreclose[d] competition in a substantial share of the line of commerce affected." *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961); *Omega Envtl. v. Gilbarco*, 127 F.3d 1157, 1162 (9th Cir. 1997).[19] Here, Plaintiffs allege the UFC's scheme foreclosed *all* competition for Elite MMA Events—100%—and relegated all rivals to the "minor leagues." Compl. ¶ 8 ("There is no competition. . . . **There is no other guy**."); *see also id.* ¶¶ 5, 7, 9, 19, 21, 68, 110, 120-27, 155, 166. The UFC argues that Plaintiffs must numerically delineate the degree of foreclosure. *See* Def. Br. 11-12, 14-15. Plaintiffs satisfy the standard (100% *is* a number). But, in any case, disputes about the degree of foreclosure should not be resolved on the pleadings.[20] *See Pro Search Plus, LLC v. VFM Leonardo, Inc.*, 2013 U.S. Dist. LEXIS 169856, at *20 (C.D. Cal. Dec. 2, 2013); *In re Ductile Iron Pipe Fittings Direct Purchaser Antitrust Litig.*, 2013 U.S. Dist. LEXIS 29865, at *57 (D.N.J. Mar. 5, 2013) ("whether the alleged exclusive dealing arrangements foreclosed a substantial share of the line of commerce is . . . not proper for the pleading stage").[21] The UFC does not cite any case holding a

---

[19] The UFC conflates the separate elements of willful acquisition and antitrust injury in its discussion of foreclosure. Def. Br. 9-16 & 23-25. Although some courts have discussed foreclosure in connection with the causal element of an antitrust claim, it is better understood as part of willful acquisition. *See United States v. Delta Dental*, 943 F. Supp. 172, 174 (D.R.I. 1996) ("The second element of a § 2 claim is the use of monopoly power 'to foreclose competition, or to destroy a competitor.'"). But, either way, Plaintiffs' allegations suffice.

[20] The UFC's reliance on *Omega*, 127 F.3d at 1162-63, is misplaced because that decision occurred after a jury trial on a motion for judgment as a matter of law. Def. Br. 11-12. *Omega* is also distinguishable because Plaintiffs here have alleged 100% foreclosure.

[21] *See also In re Hypodermic Prods. Antitrust Litig.*, 2007 U.S. Dist. LEXIS 47439, at *51-52 (D.N.J. June 29, 2007) (denying Rule 12(b)(6) motion where plaintiff simply pled a "substantial" part of the market was foreclosed); *United States v. Dentsply Int'l, Inc.*, 399 F.3d 181, 187 (3d Cir. 2005) ("The test is not total foreclosure, but whether the challenged practices bar a substantial number of rivals or severely restrict the market's ambit.").

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD
13
PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO DISMISS

plaintiff must allege a specific percentage of market foreclosure rather than substantial foreclosure. The

UFC cites cases only where plaintiffs failed to identify the *conduct* or *markets* that were the basis for their

claims.[22]

                **a.**     **The UFC Unlawfully Acquired and Maintains Monopoly and**
                         **Monopsony Power Through Exclusionary Contracts.**

       A crucial component of the UFC's anticompetitive scheme is its control of a key input for rival

promoters: Elite MMA Fighter services. The UFC enters exclusive and often perpetual contracts with

fighters to restrict access and limit expansion of potential rival promoters of Elite MMA Events. Compl.

¶ 73. Because no rival promoters can offer Elite bouts, Elite MMA Fighters cannot sell their services to

anyone other than the UFC, solidifying the UFC's monopsony control. *Id.* ¶¶ 109-16, 151. Additionally,

the UFC maintains and enhances its monopsony and monopoly power by restricting its rivals' access to

other necessary inputs—top quality venues, sponsors, athlete and event endorsement rights, PPV and

television broadcast outlets, taped television programming, video-on-demand, merchandise, and

copyright and trademark royalties—through a succession of exclusive dealing arrangements. *Id.* ¶ 73.

The use of exclusionary contracts has long been deemed capable of violating the antitrust laws. *E.g.,*

*United States v. Am. Express Co.*, 2015 U.S. Dist. LEXIS 20114, at *24 (E.D.N.Y. Feb. 19, 2015)

(contractual restraints can be the basis of an antitrust claim); *Castro v. Sanofi Pasteur Inc.*, 2012 U.S.

Dist. LEXIS 190438, at *31-33 (D.N.J. Aug. 6, 2012) (cumulative impact of a "web of contracts"

---

[22] The three cases the UFC cites, Def. Br. 10-12, contain scant facts establishing anticompetitive
conduct or foreclosure. In *Abbyy USA Software House, Inc. v. Nuance Commc'ns Inc.*, 2008 WL 4830740,
at *5 (N.D. Cal. Nov. 6, 2008), this Court found no foreclosure where a plaintiff failed to "allege with
any specificity any information regarding the types of contracts, the contracting parties, the degree of
the market allegedly foreclosed as a result of the[] contracts, or whether alternative channels" were
available. The plaintiff did not even allege "that the dominance over certain retail outlets ha[d] the
effect of restricting competition in the relevant market." *Id.* at *6. Similarly, in *Rheumatology Diagnostics
Lab., Inc. v. Aetna, Inc.*, 2013 U.S. Dist. LEXIS 151128 (N.D. Cal. Oct. 18, 2013), the plaintiffs had failed
to plead "the size of the relevant market" and had not alleged "any indicia that competition ha[d] been
harmed" or even "which of the five relevant markets" had been affected. *Id.* at *36. Finally, in *Colonial
Med. Grp., Inc. v. Catholic Healthcare W.*, 2010 WL 2108123, at *15, *20 (N.D. Cal. May 25, 2010), the
plaintiffs did "not allege, even as a conclusion, much less with the requisite evidentiary facts," that
defendant monopolized the relevant market. The UFC also cites *Kan. Penn. Gaming v. Collins*, 656 F.3d
1210, 1215 (10th Cir. 2011), which is inapposite because it only generally proclaims as insufficient
allegations about a "wide swath of conduct, much of it innocent." Def. Br. 9. Plaintiffs here allege
specific facts pertaining to the UFC's conduct, all of which contributed to the anticompetitive scheme.

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD
14
PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO DISMISS

preventing purchases from competitors can state a Section 2 claim); *Maxon Hyundai Mazda v. Carfax, Inc.*, 2014 U.S. Dist. LEXIS 139480, *263-264 (S.D.N.Y. Sept. 29, 2014) (scheme involving dozens of exclusive dealing contracts constituted cognizable antitrust scheme); *Marchbanks Truck Serv.,* 2011 U.S. Dist. LEXIS 158011, at *18  (denying Rule 12(b)(6) motion where "[t]he intended purpose and effect of [credit card] agreements" is to engage in an exclusionary scheme); *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 284-85 (3d Cir. 2012) (exclusive contracts basis of monopsony claim).

The UFC makes three arguments: (1) Plaintiffs fail to plead "specific facts concerning all of the exclusive contracts at issue, including their duration" (Def. Br. 10, 12-15); (2) the "ancillary rights" provisions do not foreclose competition (*id.* 19-23); and (3) Plaintiffs fail to allege substantial foreclosure of sponsors, event venues, and television distribution outlets (*id.* 15-16). None has merit.

### i. The UFC Uses Its Exclusive Agreements with Fighters as a Chokehold on Inputs to the Market for MMA Events.

The UFC claims that Plaintiffs have not alleged specific facts as to the *extent* of the UFC's use of exclusive contracts with MMA fighters and that Plaintiffs must separately show foreclosure of competition by means of the exclusive contracts *alone*. Def. Br. 11-13. Both claims are wrong. A plaintiff need only put a defendant on notice by alleging how a "scheme operates," not provide specific facts or numerical precision. *See Tele Atlas N.V. v. NAVTEQ Corp.*, 397 F. Supp. 2d 1184, 1190 (N.D. Cal. 2005). Further, plaintiffs may allege foreclosure as a result of *cumulative* conduct—here, the UFC's use of its monopoly power to secure exclusive agreements with Fighters, sponsors, venues, and distribution outlets. *Continental Ore*, 370 U.S. at 699; *Costco Wholesale*, 522 F.3d at 886; *Applied Med. Res. Corp. v. Ethicon Inc.*, 2006 U.S. Dist. LEXIS 12845, at *17 (C.D. Cal. Feb. 2, 2006) (in determining willfulness, "what is dispositive is the overall effect of the conduct").

Second, regarding duration of the exclusive contracts, the UFC is wrong on the facts and law. The Agreements bind Fighters effectively *indefinitely*. *See* Compl. ¶ 113(a). As a result, actual or potential competitors are blocked from accessing Elite MMA Fighters under contract with the UFC for protracted periods of time. *Id.; see ACT, Inc. v. Sylvan Learning Sys.*, 104 F. Supp. 2d 1096, 1111 (N.D. Iowa 1999) (long-term exclusive contracts and acquisitions show willful acquisition of monopoly power).

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

15

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO DISMISS

The UFC's argument that Plaintiffs fail to allege the specific length of the contracts and its speculation that the Agreements could be "staggered," Def. Br. 13, are also without merit. There is no allegation in the Complaints that the Agreements are staggered. Moreover, the length of any given contract does not bear on the *cumulative impact* of the Agreements—taken together—on competition, which the Complaints allege *foreclosed all actual and potential rivals. Castro*, 2012 U.S. Dist. LEXIS 190438, at *31-33; *see* Compl. ¶¶ 10, 21, 109-15, 151. In any event, a rival promoter needs more than a single Elite Fighter; it requires numerous Elite MMA Fighters to compete with the UFC. Compl. ¶¶ 75, 100, 108, 130, 139. The UFC also cites "competition-for-the-contract" cases, suggesting competition occurs at the inception of the exclusive contracts. Def. Br. 11-13. These cases do not apply.[23] They concerned contracts that were "terminable at will or short notice," unlike the Agreements at issue here. *See Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 996 (9th Cir. 2010) (contracts had "easy terminability" where a customer could "choose at anytime to forego the discount offered by [defendant] and purchase from a generic competitor" at any time). The UFC's Agreements with Fighters were not easily terminable; indeed, these contracts had "termination and extension clauses that can be triggered at the UFC's sole discretion," Compl. ¶ 113(a), which foreclosed "competition on the contract."

Further, in direct contradiction of Plaintiffs' allegations, the UFC posits the existence of robust competition in the market for Elite MMA Fighter services. It must do so. The cases on which it relies—including *Paddock Publishers*[24]—depend on "competition-for-the-contract" where other entities can enter the market "by competing at intervals for [exclusive] contracts." *Paddock*, 103 F.3d at 45.[25] But

---

[23] The UFC's naked assertion that there is "competition for the contract" in the MMA industry (Def. Br. 11-13) is not based on any allegations contained in the Complaints and attempts to create factual disputes by making its own allegations not found in the Complaints, which is improper.

[24] *Cf. Paddock Publishers v. Chicago Tribune Co.*, 103 F.3d 42, 44-45 (7th Cir. 1996) (involving short-term exclusive renewable tire contracts that "drive[] down the price of tires, to the ultimate benefit of consumers"); *PNY Techs., Inc. v. SanDisk Corp.*, 2014 U.S. Dist. LEXIS 90649, at *14 (N.D. Cal. July 2, 2014) (contracts with "short duration and easy terminability"); *Gilbarco*, 127 F.3d at 1163 (distributor contracts of "short duration and easy terminability").

[25] Also, as discussed in Section IV.B.1.a.i, *infra*, competition-for-the-contract theory has no application because that doctrine applies "'a higher standard of proof for 'substantial foreclosure,''" on the assumption of a consumer benefit, and no such benefit is alleged here. *PNY Techs.*, 2014 U.S. Dist. LEXIS 90649, at *14.

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD
16
PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO DISMISS

Plaintiffs allege the UFC systematically eliminated all rival promoters, including through other aspects of the scheme, so no rivals *could* compete for Elite MMA Fighters' services. *See, e.g.*, Compl. ¶ 8 (the UFC was "the only game in town"); ¶ 112 ("Elite [] MMA Fighters have little choice but to accept the UFC's exclusionary terms if they want to try to earn a living as Elite [] MMA Fighters"); ¶ 155.[26] Under these circumstances, even relatively short-term provisions are exclusionary because the UFC has formed exclusionary contracts with "all or virtually all" of the inputs—here fighters—in the relevant market. *Meritor*, 696 F.3d at 287 (while "long exclusive dealing contracts are not *per se* unlawful, '[t]he significance of any particular contract duration is a function of both the number of such contracts and market share covered by the exclusive-dealing contracts'") (internal citation omitted).

The UFC alleges that it "continues to face well-funded competitors that can attract prominent fighters and television distribution" (Def. Br. 24), cites the existence of *some* other promoters (Def. Br. 6-7), and argues that there are no facts from which it can be plausibly inferred that the Elite MMA Events market has high barriers to entry. Def. Br. 24. These arguments are a mixture of facts not alleged in the Complaints and facts that contradict the allegations in the Complaints. For example, the Complaints nowhere allege that the UFC's competitors can attract prominent fighters but, to the contrary, assert that the UFC's scheme prevents them from doing so. Compl. ¶¶ 9-10, 75, 108, 109-15, 166. Moreover, the Complaints detail why there are high barriers to entry, including because of the many aspects of the UFC's scheme—locking up virtually all of the Elite MMA Fighters, *id.* ¶¶ 75, 94, and entering exclusive contracts with venues, vendors, and sponsors. *Id.* ¶¶ 120-27.

Further, even if the UFC had one or more real competitors who overcame the barriers to entry—rather than mere "minor leagues" that feed into it, as Plaintiffs allege—that would not defeat

---

[26] *Menasha Corp. v. News Am. Marketing In-Store, Inc.*, 354 F.3d 661 (7th Cir. 2004) (Def. Br. 13) affirmed summary judgment based on a *lack of evidence* that at-shelf coupon dispensers form a distinct market from other sources of coupons. *Id.* at 664-66. It provides no support for dismissal before discovery, and is not remotely applicable, as there "at-shelf coupons compete against signs and placards, end caps (product racks at the end of aisles), sales, coupons included on (or in) the product's package, coupons distributed at the checkout counter, and against the traditional coupons distributed by mail or newspaper." *Id.* at 664.. The UFC denies that its contracts are long-term or indefinite and, on that basis, suggests Plaintiffs have not plausibly alleged rivals are foreclosed from virtually all Elite MMA Fighters. Def. Br. 13. But that is just the UFC contesting non-conclusory factual allegations, an inappropriate argument on a motion to dismiss.

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

17

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO DISMISS

Plaintiffs' claims. Minimal competition is insufficient to undermine a monopolization claim: "The fact that entry has occurred does not necessarily preclude the existence of 'significant' entry barriers. If the output or capacity of the new entrant is insufficient to take significant business away from the [alleged monopolist], they are unlikely to present a challenge [to] the[ir] market power." *Rebel Oil*, 51 F.3d at 1440; *id*. ("[b]arriers may still be 'significant' if the market is unable to correct itself despite the entry of small rivals."); *see also Oahu Gas Serv.*, 838 F.2d at 367 ("evidence that the firm remained very small could reasonably preclude a decision that [the rival's] entry reflected a breakdown of barriers to entry.").

The UFC also speculates that, even if it monopolizes the relevant market *now*, rival promoters can compete in the "minors" in the hopes of one day landing "Elite" talent. Def. Br. 14. But competing in the "minors" is not competing with the UFC, and the Complaints allege the UFC prevents Fighters from moving to the "majors" unless they enter exclusive contracts with the UFC. Compl. ¶ 112. The UFC relies on *Fleer Corp. v. Topps Chewing Gum, Inc.*, 658 F.2d 139, 150-51 (3d Cir. 1981). Def. Br. 14-15. It is inapposite. There, the plaintiff claimed it was unable to secure active major league baseball player licensing contracts to sell baseball trading cards because its competitor, Topps, had exclusive contracts with individual major league players and an exclusive licensing agreement with the baseball players' association. 658 F.2d 139 at 141-45. But *Fleer* was resolved based on the *evidence after trial*, not on a motion to dismiss. *Id*. at 140-41. Also, Topps' competitor, the plaintiff, *could* enter contracts with minor leaguers who would eventually enter the majors and Topps did not control which players entered the majors, *id*. at 150-51, whereas the UFC is *the* "major league," controls access to the majors, and insists its Fighters agree to its exclusive contracts when they arrive. Compl. ¶ 112.[27]

ii.    **The UFC's Expropriation of Plaintiffs' Identity Rights is Exclusionary and Compounds the Foreclosure.**

The UFC argues the identity rights provisions of the contracts do not foreclose competition in the market for "UFC Licensed Merchandise or Promotional Material" or the market for "sponsor

---

[27] Further, unlike here: defendant Topps lacked market power and had no power to control the price of the product, baseball trading cards, 658 F.2d 139 at 144, 153; the exclusive contract at issue in *Fleer* did not prevent the entry of competing licensed products, *id*. at 144; and in *Fleer* the conduct did not decrease compensation to players for their likenesses—in fact the court noted that the MLB players' association had negotiated a deal with Topps to maximize player compensation. *Id*. at 144, 152.

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD
18
PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO DISMISS

licensing rights." Def. Br. 22. But those markets are irrelevant. No law requires Plaintiffs to show the UFC's scheme harmed competition in *every* possible market. What matters is that, by locking up Fighters' identity rights, the UFC prevents Fighters from promoting themselves to rival promoters, Compl. ¶ 113(d), and prevents rival promoters from using Fighters' identities to promote Elite MMA bouts. *Id.* ¶¶ 75, 113(d), 119. The UFC is thus also wrong in asserting that Plaintiffs have not shown how allowing Fighters to use their identities would enhance competition. Def. Br. 19.

The UFC claims Plaintiffs' allegations regarding identity rights "ignore [its] right to control its name and intellectual property." Def. Br. 19-23.[28] But Plaintiffs' allegations concern *the images and likenesses of the Fighters*, not the UFC's trademarks or other rights.[29] Compl. ¶¶ 8, 113-13, 122-26, 129-31. Further, courts properly reject intellectual property defenses to antitrust claims when "they are based principally on an injury to competition, not simply misappropriation." *See In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 990 F. Supp. 2d 996, 1008 (N.D. Cal. 2013); *see also Microsoft*, 253 F.3d at 63 ("Intellectual property rights do not confer a privilege to violate the antitrust laws."); *FTC v. Actavis*, 133 S. Ct. 2223 (2013) (holding anticompetitive use of patent rights can violate antitrust law).

---

[28] The UFC also argues that its exclusive licensing grants are procompetitive and "necessary to allow athletes to obtain value for their performance or services," relying on *Haelan Labs. Inc. v. Topps Chewing Gum, Inc.*, 202 F.2d 866, 868 (2d Cir .1953) and *O'Bannon v. Nat'l Collegiate Athletic Ass'n*, *supra*. Def. Br. 20. Assessing procompetitive benefits is premature—*Haelan* overturned a bench trial verdict and *O'Bannon* granted a preliminary injunction after full evidentiary hearings. *Haelan* and *O'Bannon* are also distinguishable because Plaintiffs, unlike the baseball players in *Haelan* and like the plaintiffs in *O'Bannon*, saw the value of their likenesses diminished by the UFC. The UFC's exclusionary conduct deprived Plaintiffs of an opportunity to monetize their likenesses in a competitive market. *Hazel Bishop, Inc. v. Perfemme, Inc.*, 314 F.2d 399 (2d Cir. 1963) (Def. Br. 20) and *Rooney v. Columbia Pictures Indus., Inc.*, 538 F. Supp. 211 (S.D.N.Y. 1982) are distinguishable on the same basis.

[29] The UFC misses this distinction in relying on *MiniFrame Ltd. v. Microsoft Corp.*, No. 11 Civ. 7419 (RJS), 2013 U.S. Dist. LEXIS 49813 (S.D.N.Y. Mar. 28, 2013), which concerned patent holders' duty to deal with competitors in accessing patented technology. Def. Br. 21. The UFC also cites the inapposite *Washington v. NFL*, 880 F. Supp. 2d 1004, 1007 (D. Minn. 2012), which found that plaintiffs failed to prove that game footage of individual NFL players, without NFL logos or marks, could be a proper market because, in the NFL, "[t]he market is for game footage featuring *many* players, wearing NFL logos and treading fields replete with NFL marks." That is not the case in MMA where Fighters are individually identifiable and their identities are key selling points.

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD
19
PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO DISMISS

### iii.     The UFC Enhanced Foreclosure Through Exclusive Dealing Agreements with Venues, Sponsors and Distributors.

The UFC also engages in exclusive agreements with sponsors, venues, and distributors. Compl. ¶¶ 73, 122-26. Such exclusive agreements are cognizable parts of an anticompetitive scheme. *See, e.g.*, *supra*, at IV.B.1.a. (citing cases); *Lorain Journal Co. v. United States*, 342 U.S. 143, 155 (1951); *Microsoft*, 253 F.3d at 76-77. The UFC improperly addresses each of these parts of the scheme separately, suggesting each, standing alone, did not foreclose competition. Def. Br. 15-16. But that is improper. *City of Anaheim v. S. Cal. Edison Co.*, 955 F.2d 1373, 1376-78 (9th Cir. 1992) (Section 2 allegations are not considered in isolation but as part of "synergistic mix"); *Church & Dwight Co., Inc. v. Mayer Labs., Inc.*, 2011 U.S. Dist. LEXIS 35969, at *19 (N.D. Cal. Apr. 1, 2011). The *cumulative effect* was foreclosure. *Id.* ¶¶ 127. That is what matters. The UFC also contends Plaintiffs' claims "do not make economic sense" because Plaintiffs have not alleged *all* sponsors, venues or television outlets have been foreclosed. Def. Br. 15-16. Not so. It is in the UFC's interest to restrict rivals' access to *key* sponsors, venues, and media outlets. Moreover, contra the UFC's argument (Def. Br. 15), it makes economic sense for the UFC to use its dominant position to threaten sponsors. Compl. ¶ 123.[30]

---

[30] *Adaptive Power Solutions, LLC v. Hughes Missile Sys. Co.*, 141 F.3d 947, 952 (9th Cir. 1998), Def. Br. 15-16, is inapposite. There, the court affirmed summary judgment for defendant missile purchaser where plaintiff missile manufacturer alleged the defendant acted against its economic interest by eliminating competition in the missiles market, resulting in its paying a price increase. Here, to the contrary, it was in the UFC's economic interest to eliminate rival promoters because that would eliminate price competition for Elite MMA Fighter services. The UFC similarly errs by relying on *Am. Football League v. Nat'l Football League*, 323 F.2d 124, 130 (4th Cir. 1963), for the proposition that Plaintiffs insufficiently allege the UFC's exclusionary conduct hindered or prevented rivals' access to event venues. Def. Br. 15. In *AFL*, the court held that the AFL's antitrust claim failed *at trial* because the "[NFL] did not have the power to monopolize the relevant market," and the AFL successfully developed a league with popular teams, competed for players, and placed teams where the NFL had tried to develop its own teams. *Id.* The NFL's occupation of sites was not "exclusive" because the AFL had franchises in three cities where the NFL had teams. *Id.* Here, the market for event venues is *not* the relevant market, Plaintiffs sufficiently allege market power in the relevant markets, and there is no UFC competitor to develop popular players, compete for Elite MMA Fighters, or promote Elite MMA Events. Compl. ¶¶ 55-62, 67-84, 139, 151, 166-67. In any case, a ruling at this stage on these issues would be premature.

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

20

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO DISMISS

**b.    The UFC Unlawfully Acquired and Maintained Monopoly Power Through Acquisitions.**

The UFC's anticompetitive scheme included eliminating key competitors by acquiring them or driving them out of business, culminating with the purchase of Strikeforce. Compl. ¶¶ 128-50. The UFC first acquired competitors World Extreme Cagefighting, World Fighting Alliance, and Pride, *id.* ¶ 129, then forced two other rivals out of business by blocking or interfering with their sponsorship of events or Fighters. *Id.* ¶ 130. Strikeforce was the strongest of its rival promoters. *Id.* ¶ 131. The UFC used its market dominance to pressure Strikeforce's sponsors with boycotts, counterprogrammed Strikeforce events, and eventually forced Strikeforce to sell to the UFC. *Id.* ¶ 132-33.[31] As a result of these acquisitions, the UFC "controlled virtually all Elite Professional MMA Fighters in every weight class." *Id.* ¶ 134. It made all other promoters "minor league" players. *Id.* ¶ 135. Such "mergers to monopoly," even apart from the rest of the scheme, violate Section 2 because they result in unlawful power over price or to exclude competitors. *See, e.g.*, *Grinnell*, 384 U.S. at 576 (competitor acquisitions exclusionary conduct under antitrust laws); *Standard Oil Co. v. United States*, 221 U.S. 1, 72-75 (1911) (Section 2 prohibits competitor acquisitions "with the purpose of excluding others from trade").[32]

---

[31] The UFC notes that the 2011 Strikeforce acquisition was the subject of an FTC investigation that was closed in January 2012. Def. Br. 24 n.13. But declination by the government to prosecute does not preclude private actions—particularly where, as here, the plaintiff alleges a multi-faceted anticompetitive scheme. *See, e.g., Free Freehand Corp. v. Adobe Sys.*, 852 F. Supp. 2d 1171, 1181 (N.D. Cal. 2012).

[32] *See also Nelson v. Monroe Reg'l Med. Ctr.*, 925 F.2d 1555, 1565 (7th Cir. 1991) ("a marketplace rendered non-competitive by its merger with a competitor is an injury that can be said to be directly caused by an absence of competition, the kind of injury the antitrust laws were intended to prevent and redress"); *Marchbanks*, 2011 U.S. Dist. LEXIS 158011, at *81 (upholding Section 2 claim where defendant alleged, as part of an exclusionary scheme involving multiple contracts and other conduct, to have "engaged in targeted acquisitions throughout the 1990s to establish [its product] in the relevant markets"). The UFC also argues that "Plaintiffs' allegations rely on the faulty assumption that the antitrust laws require the UFC to deal with its competitors and co-promote events, which they do not." Def. Br. 10; *see also id.* 2, 16-17. False. First, Plaintiffs' allegations do not claim the UFC has a duty to deal, *i.e.*, co-promote events with rivals. Second, the UFC's own authorities state that the ability to refuse to deal is qualified and, "[u]nder certain circumstances, a refusal to cooperate with rivals can constitute anticompetitive conduct and violate [Section] 2." *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004); *see also Sanderson v. Culligan Int'l Co.*, 415 F.3d 620, 623 (7th Cir. 2005) ("Antitrust law condemns practices that drive up prices by curtailing output."); *Schacher v. Am. Academy of Ophthalmology, Inc.*, 870 F.2d 397 (7th Cir. 1989) (same).

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

21

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO DISMISS

The UFC argues that the pre-Strikeforce acquisitions cannot serve as a basis for liability because they occurred more than four years ago. Def. Br. 23-24. This argument fails under the continuing violation doctrine. Compl. ¶¶ 158, 161. The scheme continued into the limitations period in two ways. First, the acquisitions culminated in the acquisition of Strikeforce, which occurred within the limitations period. *See Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 238 (9th Cir. 1987). Second, each time the UFC undercompensates an Elite MMA Fighter as a result of the anticompetitive scheme, the statute starts anew. *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997) ("[I]n the case of a 'continuing violation,' say, a price-fixing conspiracy that brings about a series of unlawfully high priced sales over a period of years . . . each sale to the plaintiff starts the statutory period running again."); *Solo v. SD-3C LLC*, 751 F.3d 1081, 1086 (9th Cir. 2014).[33]

### 2.   The UFC's Monopolistic Boasts Are Not Indicative of Competition.

The UFC argues that its "brash, colorful, and sometimes intemperate remarks about rival MMA promoters, fighters and the UFC's own place in the industry" indicate vigorous competition and cannot be deemed anticompetitive. Def. Br. 25. Not true. The Complaints do not allege aggressive competition. They allege boasts about monopoly power and use of strong-arm tactics to enforce exclusive contracts, such as threats and retaliation against Elite MMA Fighters and potential rivals. *Id.* ¶¶ 8, 116, 145. As a result, UFC Fighters have refused to fight for rival promoters, even for higher compensation, out of fear of retaliation. *Id.* Exclusionary threats and intimidation by defendants with sufficient market power have long been held to violate antitrust law. *See, e.g.*, *Conwood Co. v. United States Tobacco Co.*, 290 F.3d 768, 783-84 (6th Cir. 2002) (removing display racks, providing misleading information, and other interference with point-of-sale transactions violates Section 2); *Microsoft*, 253 F.3d at 76-77.

### C.   Plaintiffs Sufficiently Allege Anticompetitive Effects.

The anticompetitive effects of the UFC's scheme are clear: reduced competitiveness of Elite MMA Events, suppressed output of Elite MMA Events, higher gate and PPV ticket prices for Elite

---

[33] *ITT v. Gen. Tel. & Elecs. Corp.*, 518 F.2d 913 (9th Cir. 1975), Def. Br. 24, is not to the contrary. There, the issue was whether acquisitions occurring before the statute "constituted actual violations of the Sherman and Clayton Acts" for purposes of a laches defense. *Id.* at 929. Here, Plaintiffs' claims are not based on any particular acquisition, but on a pattern of continuing conduct that includes acquisitions during the limitations period, as well as other practices that also continued into the limitations period.

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD
22
PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO DISMISS

MMA Events, and suppressed compensation for Elite MMA Fighters. Compl. ¶¶ 151-152, 157.[34] The

UFC asserts exclusive contracts *can* prevent "free riding," Def. Br. 11, 21, and acquisitions *can* result in

increased output. Def. Br. 23-24. *Id*. But Plaintiffs do not *allege* any procompetitive effects, only

anticompetitive ones. Compl. ¶¶ 151-152, 157. The UFC must wait until later in the case to offer any

evidence to contrary. *SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 786 (9th Cir.

1996).[35] Moreover, the relevant question is not whether output increased, but whether it did so *relative*

to what would have occurred in a competitive market.[36] Plaintiffs allege it did not. Compl. ¶¶ 151-152,

---

[34] The UFC argues Plaintiffs fail to quantify the impact of the Strikeforce acquisition. Def. Br. 24. But the UFC's attempt to isolate that acquisition is exactly the type of "dismemberment" that courts have rejected. *See Costco Wholesale Corp.*, 522 F.3d at 886. Moreover, Plaintiffs' specifically allege that, "following the Strikeforce purchase, the UFC could accurately state that it now controlled virtually all Elite [] MMA Fighters in every weight class" (Compl. ¶ 134), and the acquisition resulted in Fighter compensation being "substantially and artificially suppressed" (*id.* ¶¶ 1, 19, 21, 36-38, 42, 92, 102-04).

[35] *See also Retrophin, Inc. v. Questcor Pharms., Inc.*, 41 F. Supp. 3d 906, 918 (C.D. Cal. 2014); *In re EBay Seller Antitrust Litig.*, 545 F. Supp. 2d 1027, 1033 (N.D. Cal. 2008) (procompetitive benefits of allegedly anticompetitive conduct are not relevant at the motion to dismiss stage). Similarly, in *Board of Regents*, Def. Br. 16, the Supreme Court upheld a ruling that the NCAA had violated Section 1 of the Sherman Act by restricting the number of televised college football games, 468 U.S. 85, and Plaintiffs here similarly allege that the UFC's conduct has resulted in decreased output of Elite MMA Events. Compl. ¶ 151. Indeed, Plaintiffs have alleged foreclosure of "virtually all" of the Relevant Markets. For this reason the UFC's reliance on *JBL Enters., Inc. v. Jhirmack Enters., Inc.*, 698 F.2d 1011 (9th Cir. 1983) , and *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380 (7th Cir. 1984) , is misplaced. Def. Br. 9-11. *Ind. Entm't Grp. v. Nat'l Basketball Ass'n*, 853 F. Supp. 333 (C.D. Cal. 1994) , is inapplicable because it was resolved at summary judgment, not on a motion to dismiss, *id.* at 335, and it distinguished a team sport subject to a collective bargaining agreement from a situation involving individual tennis players competing in different promotions—a situation more closely analogous to the UFC than the NBA—where dismissal was reversed. *Id.* at 338 (citing *Volvo North America Corp. v. Men's International Professional Tennis Council*, 857 F.2d 55 (2d Cir. 1988)).

[36] *See Bd. of Regents*, 468 U.S. at 109 & 109 n.38; *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 990 F. Supp. 2d at 1004 (the test is whether conduct "'result[s] in lower compensation. . . than would otherwise prevail in a more competitive market.'") (citation omitted). The UFC's authorities are thus inapplicable. *See* Def. Br. 23-25. *United States v. Syufy Enterprises*, 903 F.2d 659, 669 (9th Cir. 1990), concerned a defendant owner of movie theaters found by the court to have no ability to raise prices for consumers or squeeze its distributors. Here, the UFC had the ability to and did lower Fighter compensation and eliminated or foreclosed competitor promotions. *Syufy* is also inapplicable because "the accused monopolist is a relatively tiny regional entrepreneur while the alleged victims are humungous national corporations with considerable market power of their own." *Id.* at 662. Here, the UFC is "the only game in town." Compl. ¶¶ 5, 8. In addition, *FTC v. Lab. Corp. of Am.*, 2011 U.S. Dist. LEXIS 20354, at *1-2, 26-27 (C.D. Cal. Feb. 22, 2011), emphasized *evidence* of the "procompetitive" benefits of the merger at issue—including savings to consumers from economies of scale and elimination of costs—that have no application here.

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

23

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO DISMISS

157. The Complaints also allege athletes in other professional sports earn anywhere from 50-80% of league revenue, while Elite MMA Fighters earn only 10-17% of total revenues generated from bouts. *Id.* 102-04. These allegations show the UFC's acquisitions, culminating in the Strikeforce acquisition, contributed to decreased competition in the market for Elite MMA Fighters. *Id.* ¶ 138.[37]

## D.    Plaintiffs Sufficiently Allege Antitrust Injury.

Plaintiffs allege the UFC's scheme suppressed Fighters' compensation for UFC-promoted MMA bouts and their Identity rights. Compl. ¶¶ 153-60. The UFC mischaracterizes Plaintiffs' allegations concerning their identity rights as "no more than a challenge to the terms and compensation received under their contracts." Def. Br. 22 (citing *In re Adderall XR Antitrust Litig.*, 754 F.3d 128 (2d Cir. 2014) and *Washington*, 880 F. Supp. 2d at 1008). Untrue. Plaintiffs allege the scheme suppressed their compensation, a traditional antitrust injury. *Safeway*, 761 F. Supp. 2d, at 886; *In re High-Tech Employee Antitrust Litig.*, 856 F. Supp. 2d 1103, 1123 (N.D. Cal. 2012); *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 990 F. Supp. 2d at 1008 (antitrust injury is satisfied where plaintiffs plead uncompensated use of likenesses); *Doe v. Ariz. Hospital and Healthcare Assoc.*, 2009 WL 1423378, at *3-4 (D. Ariz. Mar. 19, 2009).

///

///

///

///

///

///

///

///

---

[37] The UFC relies on *CareFusion Corp. v. Medtronic Spine LLC*,  2010 U.S. Dist. LEXIS 122004 (N.D. Cal. Nov. 1, 2010), for the proposition that there are no anticompetitive effects from the acquisitions. Def. Br. 23. There, the allegations were "insufficient to establish that the merger led to a greater power to exclude competitors" than was already "inherent" in the pre-merger market. *Id.* at *24-25. Plaintiffs here allege that the Strikeforce acquisition left the UFC with no other competition—a significant change from the *status quo ante.*

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD
24
PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO DISMISS

## V.    CONCLUSION

For the foregoing reasons, the UFC's Motion should be denied.


Dated: April 10, 2015                    JOSEPH SAVERI LAW FIRM, INC.

                                          By:    _/s/ Joseph R. Saveri_
                                                    Joseph R. Saveri

                                          Joseph R. Saveri (State Bar No. 130064)
                                          Joshua P. Davis (State Bar No. 193254)
                                          Andrew M. Purdy (State Bar No. 261912)
                                          Matthew S. Weiler (State Bar No. 236052)
                                          Kevin E. Rayhill (State Bar No. 267496)
                                          JOSEPH SAVERI LAW FIRM, INC.
                                          505 Montgomery Street, Suite 625
                                          San Francisco, California 94111
                                          Telephone:  (415) 500-6800
                                          Facsimile:   (415) 395-9940
                                          jsaveri@saverilawfirm.com
                                          jdavis@saverilawfirm.com
                                          apurdy@saverilawfirm.com
                                          mweiler@saverilawfirm.com
                                          krayhill@saverilawfirm.com


                                          Robert C. Maysey (State Bar No. 205769)
                                          Jerome K. Elwell (_pro hac vice_)
                                          WARNER ANGLE HALLAM JACKSON &
                                          FORMANEK PLC
                                          2555 E. Camelback Road, Suite 800
                                          Phoenix, AZ 85016
                                          Telephone:  (602) 264-7101
                                          Facsimile:  (602) 234-0419
                                          rmaysey@warnerangle.com
                                          jelwell@warnerangle.com


                                          Benjamin D. Brown (State Bar No. 202545)
                                          Richard A. Koffman (_pro hac vice_)
                                          Hiba Hafiz (_pro hac vice_ pending)
                                          COHEN MILSTEIN SELLERS & TOLL, PLLC
                                          1100 New York Ave., N.W., Suite 500, East Tower
                                          Washington, DC 20005
                                          Telephone: (202) 408-4600
                                          Facsimile:   (202) 408 4699
                                          bbrown@cohenmilstein.com
                                          rkoffman@cohenmilstein.com
                                          hhafiz@cohenmilstein.com

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

25

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO DISMISS

Eric L. Cramer (*pro hac vice*)
Michael Dell'Angelo (*pro hac vice*)
Patrick Madden (*pro hac vice*)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
ecramer@bm.net
mdellangelo@bm.net
pmadden@bm.net

Eugene A. Spector (pro hac vice pending)
Jeffrey J. Corrigan (pro hac vice pending)
Jay S. Cohen (pro hac vice pending)
William G. Caldes (pro hac vice pending)
SPECTOR ROSEMAN KODROFF & WILLIS, P.C.
1818 Market Street – Suite 2500
Philadelphia, PA  19103
Telephone:  (215) 496-0300
Facsimile:  (215) 496-6611
espector@srkw-law.com
jcorrigan@srkw-law.com
jcohen@srkw-law.com
wcaldes@srkw-law.com

Frederick S. Schwartz (State Bar No. 145351)
LAW OFFICE OF FREDERICK S. SCHWARTZ
15303 Ventura Boulevard, #1040
Sherman Oaks, CA 91403
Telephone: (818) 986-2407
Facsimile:  (818) 995-4124
fred@fredschwartzlaw.com

*Attorneys for Individual and Representative Plaintiffs*
*Cung Le, Nathan Quarry, Jon Fitch, Luis Javier*
*Vazquez, Dennis Lloyd Hallman, Brandon Vera, Pablo*
*Garza, Gabe Ruediger, Mac Danzig, Kyle Kingsbury,*
*and Darren Uyenoyama*

Pursuant to Local Rule 5.1(i)(3), I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: April 10, 2015          By:   _/s/ Joseph R. Saveri_
                                     Joseph R. Saveri

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD
26
PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO DISMISS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD
27
PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO DISMISS