1   WILLIAM A. ISAACSON (Admitted *Pro Hac Vice*)
    (wisaacson@bsfllp.com)
2   BOIES, SCHILLER & FLEXNER LLP
3   5301 Wisconsin Ave, NW, Washington, DC 20015
    Telephone: (202) 237-2727; Fax: (202) 237-6131
4
    JOHN F. COVE, JR. #212213
5   (jcove@bsfllp.com)
    BOIES, SCHILLER & FLEXNER LLP
6   1999 Harrison Street, Suite 900, Oakland, CA 94612
7   Telephone: (510) 874-1000; Fax: (510) 874-1460

8   RICHARD J. POCKER #114441
    (rpocker@bsfllp.com)
9   BOIES, SCHILLER & FLEXNER LLP
10  300 South Fourth Street, Suite 800, Las Vegas, NV 89101
    Telephone: (702) 382 7300; Fax: (702) 382 2755
11
    DONALD J. CAMPBELL (Admitted *Pro Hac Vice*)
12  (djc@campbellandwilliams.com)
    J. COLBY WILLIAMS (Admitted *Pro Hac Vice*)
13  (jcw@campbellandwilliams.com)
    CAMPBELL & WILLIAMS
14  700 South 7th Street, Las Vegas, Nevada 89101
15  Telephone: (702) 382-5222; Fax: (702) 382-0540

16  *Attorneys for Defendant* Zuffa, LLC, d/b/a
    Ultimate Fighting Championship and UFC
17

18              UNITED STATES DISTRICT COURT

19      NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

20  Cung Le, Nathan Quarry, Jon Fitch, on behalf    Case No.  5:14-cv-05484 EJD
    of themselves and all others similarly situated,
21
                                                    **DEFENDANT ZUFFA, LLC'S**
22                  Plaintiffs,                      **CONSOLIDATED REPLY TO**
                v.                                  **PLAINTIFFS' OPPOSITION TO ZUFFA,**
23                                                  **LLC'S MOTION TO TRANSFER VENUE**
                                                    **UNDER 28 U.S.C. § 1404(a)**
24  Zuffa, LLC, d/b/a Ultimate Fighting
    Championship and UFC,
25
                    Defendant.
26

27

28

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

| | |
|---|---|
| Luis Javier Vazquez and Dennis Lloyd Hallman, on behalf of themselves and all others similarly situated, | Case No.  5:14-cv-05591 EJD |
| Plaintiffs, | |
| v. | |
| Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC, | |
| Defendant. | |
| Brandon Vera and Pablo Garza, on behalf of themselves and all others similarly situated, | Case No.  5:14-cv-05621 EJD |
| Plaintiffs, | |
| v. | |
| Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC, | |
| Defendant. | |
| Gabe Ruediger and Mac Danzig, on behalf of themselves and all others similarly situated, | Case No.  5:15-cv-00521 EJD |
| Plaintiffs, | |
| v. | |
| Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC, | |
| Defendant. | |

1   Kyle Kingsbury and Darren Uyenoyama, on       Case No. 5:15-cv-01324 EJD
2   behalf of themselves and all others similarly
    situated,
3                    Plaintiffs,

4        v.

5   Zuffa, LLC, d/b/a Ultimate Fighting
6   Championship and UFC,

7
                     Defendant.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................1

II.    THE FORUM SELECTION CLAUSES AGREED TO BY A MAJORITY OF
PLAINTIFFS REQUIRE TRANSFER. ...................................................2

     A.    Antitrust Claims That Rely on Allegations That Contracts Suppress
Competition Require Interpretation of Those Contracts. ......................3

     B.    Antitrust Actions Like This One Constitute "Actions to Interpret" a
Contract Within the Meaning of the Applicable Forum Selection Clause. .............4

     C.    Plaintiffs' Antitrust Claim Relies on Their Implausibly Restrictive
Interpretation of the Duration, Terminability, and/or Scope of Plaintiffs'
Agreements with the UFC. ...................................................................6

     D.    Plaintiffs Who Agreed to an Enforceable Forum Selection Clause Cannot
Avoid Their Obligations Simply by Joining an Action with Plaintiffs
Whose Contracts Did Not Contain the Same Clause. ............................8

III.   PLAINTIFFS' OPPOSITION CONFIRMS THAT THE CONVENIENCE AND
FAIRNESS FACTORS ARTICULATED BY § 1404(a) AND THE NINTH
CIRCUIT OVERWHELMINGLY FAVOR TRANSFER TO NEVADA. ........9

     A.    Plaintiffs Do Not Dispute That Their Choice of Forum Is Entitled to
Diminished Weight Because They Seek to Represent Putative
Nationwide Classes. .............................................................................9

     B.    The Convenience of the Parties Weighs in Favor of Transfer. ............11

     C.    The Convenience of Witnesses Weighs in Favor of Transfer. .............11

     D.    The Location Where the Relevant Agreements Were Negotiated and
Executed Favors Transfer. ..................................................................12

     E.    Nevada is More Familiar with the Governing Law of the Contracts and
the Relative Volume of Antitrust Cases Between Districts Is Irrelevant to
the § 1404(a) Analysis. .......................................................................13

     F.    The Respective Parties' Contacts with the Forum Overwhelmingly
Favors Transfer to Nevada. ................................................................13

     G.    Plaintiffs Have Not Shown a Strong Local Interest in the Underlying
Litigation. ...........................................................................................14

     H.    The Relative Ease of Access to Proof and the Difference in the Cost of
Litigation Between the Two Forums Favors Transfer to Nevada ........14

     I.    Issues of Court Congestion Are Not Material Here. ............................15

IV.   CONCLUSION ....................................................................................15

i

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

## TABLE OF AUTHORITIES

### CASES

*Arreola v. Finish Line*,
No. 14-CV-03339-LHK, 2014 WL 6982571 (N.D. Cal. Dec. 9, 2014) ....................................15

*Atlantic Marine Construction Co. v. United States Dist. Ct. for the W. Dist. of Tex.*,
134 S. Ct. 568 (2013)........................................................................................................4, 5

*BAM! Entertainment, Inc. v. Zuffa, LLC*,
No. 01-cv-21207 (N.D. Cal. filed Dec. 21, 2001) ...........................................................11

*Berrett v. Life Ins. Co. of the SW*,
623 F. Supp. 946 (D. Utah 1985)........................................................................................6

*Brown v. Abercrombie & Fitch Co.*,
No. 4:13-CV-05205 YGR, 2014 WL 715082 (N.D. Cal. Feb. 14, 2014) ........................12

*Gates Learjet Corp. v. Jensen*,
743 F.2d 1325 (9th Cir. 1984) ..........................................................................................15

*Genden v. Merrill, Lynch, Pierce Fenner & Smith, Inc.*,
621 F. Supp. 780 (N.D. Ill. 1985) .....................................................................................10

*Graham v. VCA Antech, Inc.*,
No. 14-cv-02158-MEJ, 2014 WL 5528402 (N.D. Cal. Oct. 31, 2014) ............................10

*Hawkes v. Hewlett-Packard Co.*,
No. CV-10-05957-EJD, 2010 WL 506569 (N.D. Cal. Feb. 15, 2012)..............................13

*Hoffman v. Minuteman Press Int'l, Inc.*,
747 F. Supp. 552 (W.D. Mo. 1990).....................................................................................6

*In re TFT-LCD Antitrust Litigation*,
No. M 07-1827, 2011 U.S. Dist. LEXIS 105152 (N.D. Cal. Sept. 15, 2011) .....................4

*Incorp Servs. Inc. v. Incsmart.Biz, Inc.*,
No. 11-CV-4660-EJD-PSG, 2012 WL 3685994 (N.D. Cal. Aug. 24, 2012) ....................15

*Indep. Entm't Grp. v. Nat'l Basketball Ass'n*,
853 F. Supp. 333 (C.D. Cal. 1994) (citation omitted) ........................................................7

*Johns v. Panera Bread Co.*,
No. 08-1071 SC, 2008 WL 2811827 (N.D. Cal. Jul. 21, 2008) .......................................10

*Jones v. GNC Franchising, Inc.*,
211 F.3d 495 (9th Cir. 2000) ............................................................................................13

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

*Joseph v. Amazon.Com, Inc.*,
    No. C12–06256 HRL, 2013 WL 4806462 (N.D. Cal. Sept. 9, 2013) ....................................3, 4

*Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*,
    406 F. Supp. 2d 751 (E.D. Ky. 2005) ...........................................................................................5

*King v. SAM Holdings, LLC*,
    No. 5:CV-10-04706-EJD, 2011 WL 4948603 (N.D. Cal. Oct. 11, 2011) ...................................15

*Kinney v. Chomsky*,
    No. C 14-02187 LB, 2014 WL 3725932  (N.D. Cal. July 25, 2014) .............................................9

*Koster v. Am. Lumbermens Mut. Cas. Co.*,
    330 U.S. 518 (1947) ...............................................................................................................10, 11

*Lou v. Belzberg*,
    834 F.2d 730 (9th Cir. 1987) ......................................................................................................10

*McNair v. Monsanto Co.*,
    279 F. Supp. 2d 1290 (M.D. Ga. 2003) ........................................................................................9

*Morris v. Safeco Ins. Co.*,
    No. C 07-2890 PJH, 2008 WL 5273719  (N.D. Cal. Dec. 19, 2008) ..........................................12

*Norwood v. Kirkpatrick*,
    349 U.S. 29 (1955) .......................................................................................................................9

*Omega Envtl., Inc. v. Gilbarco, Inc.*,
    127 F.3d 1157 (9th Cir. 1997) ......................................................................................................7

*Park v. Dole Fresh Vegetables, Inc.*,
    964 F. Supp. 2d 1088 (N.D. Cal. 2013) ................................................................................10, 15

*Perry v. Nat'l City Mortg., Inc.*,
    2006 U.S. Dist. LEXIS 62419 (S.D. Ill. Aug. 15, 2006) ..............................................................6

*PPG Indus., Inc. v. Pilkington PLC*,
    825 F. Supp. 1465 (D. Ariz. 1993) ..........................................................................................3, 4

*Ravelo Monegro v. Rosa*,
    211 F.3d 509 (9th Cir. 2000) ........................................................................................................9

*Ruiz v. Darigold, Inc.*,
    No. 14-cv-02054-WHO, 2014 WL 4063002 (N.D. Cal. Aug. 14, 2014) ..............................10, 11

*Saunders v. USAA Life Ins. Co.*,
    No. 5:14-CV-01868 EJD, 2014 WL 5339205 (N.D. Cal. Oct. 17, 2014) ..............................10, 13

*S-Fer Int'l, Inc. v. Paladion Partners, Ltd.*,
    906 F. Supp. 211 (S.D.N.Y. 1995) ...............................................................................................6

iii

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

*Simula, Inc. v. Autoliv, Inc.*
175 F.3d 716, 722 (9th Cir. 1999) ........................................................................3, 4

*United States v. Am. Express,*
2015 U.S. Dist. LEXIS 20114 (E.D.N.Y. Feb. 19, 2015) ...........................................8

*United States v. Visa, U.S.A., Inc.,*
163 F. Supp. 2d 322 (S.D.N.Y. 2011) ........................................................................8

*Watson v. Eaton Elec. Inc.,*
No. 206-CV-00277-KJD-GWF, 2008 WL 4527693 (D. Nev. Sept. 29, 2008)............8

*Zuffa LLC v. Dodson,*
No. 13-cv-04004 (N.D. Cal. filed Aug. 28, 2013)....................................................11

### STATUTES

United States Code
Title 28, Section 1404(a) .............................................................................passim

Zuffa's Reply ISO
Mot. to Transfer

Case Nos. 5:14-cv-05484 EJD; 5:14-cv-05591 EJD;
5:14-cv-05621 EJD; 5:15-cv-00521 EJD; 5:15-cv-01324 EJD

**I.     INTRODUCTION**

Plaintiffs' opposition to Zuffa's motion to transfer confirms that the District of Nevada is the more appropriate forum for this action.  Both the forum selection clause agreed to by a majority of Plaintiffs, as well as the balance of convenience and fairness factors articulated by 28 U.S.C. § 1404(a) and the Ninth Circuit, mandate transfer of these actions.

First, Plaintiffs' argument that the Court should not enforce the forum selection clauses that the parties agreed to is based entirely on the incorrect premise that this litigation will not require the interpretation of the Plaintiffs' agreements with Zuffa.  Opp §III.D.[1]  But a "crucial component" of Plaintiffs' case, as reflected in their Complaints and in their opposition to the Motion to Dismiss, is the allegation that Zuffa's contracts with Plaintiffs improperly restrict competition.[2]  While the Complaints fall woefully short on exactly how the contracts do this, at some point if the case proceeds they will need to show how the specific terms of the contracts operate to illegally bar competition.  Contrary to the suggestion in their Opposition that they can make their case just by showing effects, i.e., that Zuffa allegedly has a high market share or that Plaintiffs' purses were allegedly too low, (Opp. at 13), Plaintiffs will need to show that the contracts by their terms actually and improperly cause a reduction in competition.  That cannot be done without interpreting the contracts' terms to determine the parties' rights and obligations, and then whether they are capable of causing and did in fact cause the anticompetitive effects Plaintiffs allege.

Further, Plaintiffs' remarkable claim that "both parties agree on the interpretation of the contract" (Opp. at 12 n.8, 14-15) is wrong.  Zuffa disputes any number of Plaintiffs' claims about the contracts, including the claim that the contracts impose exclusivity on athletes "perpetually" and "indefinitely."  Le Compl. ¶¶ 9, 110, 113(a).  These disputes cannot be resolved without

---

[1] For ease of reference, Zuffa's initial Consolidated Motion to Transfer Venue (*Le* Dkt. 31) will be referred to as "Mot.," Plaintiffs' Opposition to Zuffa's Motion to Transfer (*Le* Dkt. 69) will be referred to as "Opp.," Zuffa's Consolidated Motion to Dismiss Plaintiffs' Complaints (*Le* Dkt. 64) will be referred to as "MTD," and Plaintiffs' Opposition to Zuffa's Motion to Dismiss (*Le* Dkt. 71) will be referred to as "MTD Opp."

[2] Opp. at 13 ("the UFC's anticompetitive scheme involves the use of contracts to unreasonably restrain competition, aggregately, by preventing competition in the marketplace").

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P   O A K L A N D ,   C A L I F O R N I A

1    interpreting the contract language.  That other evidence beyond the contracts may also be relevant

2    to the claims does not negate that contract interpretation is required.

3         Second, Plaintiffs' opposition only underscores that the convenience and fairness factors

4    articulated by 28 U.S.C. § 1404(a) and the Ninth Circuit overwhelmingly favor transfer to the

5    District of Nevada.  Plaintiffs' argument is based almost entirely on their choice of forum, but

6    they do not dispute that their choice of venue is entitled to significantly diminished weight

7    because they brought it as a proposed nationwide class action.  And nothing else in their

8    opposition suggests that any other relevant factor materially favors venue in this District.

9
10   **II.    THE FORUM SELECTION CLAUSES AGREED TO BY A MAJORITY OF PLAINTIFFS REQUIRE TRANSFER.**

11        Seven out of eleven Plaintiffs agreed to forum selection clauses that require transfer of

12   this action to the District of Nevada.  Plaintiffs' attempt to evade enforcement of the forum

13   selection clauses relies on three related propositions, all of which depend on the incorrect premise

14   that the resolution of their claims will not require interpretation of the contracts.[3]  First, Plaintiffs

15   propose that an antitrust claim alleging that contracts have anticompetitive effects does not

16   require courts to interpret those contracts in determining whether the contracts suppress

17   competition.  Second, Plaintiffs propose that the forum selection clause, which applies broadly to

18   any "actions to interpret," without any limitation on whether the action sounds in tort, contract, or

19   otherwise, categorically does not apply to antitrust actions or other tort claims.  And third,

20   Plaintiffs argue that their particular antitrust claim will not require this Court to interpret the

21   agreements between Plaintiffs and Zuffa that they allege are anticompetitive, including on terms

22   such as duration, terminability, and scope.  Each of these propositions is wrong.

23   _____

24   [3] Plaintiffs assert that "only Fitch, Garza, Le, Vera, Kingsbury, and Uyenoyama" agreed to
     contracts containing the forum selection clause that applies to federal claims.  Opp. at 5, n.6; *see*
25   *also* Declaration of Kirk D. Hendrick ISO Consolidated Mot. to Transfer Venue ("Hendrick Con.
     Decl."), Case No. 5:14-cv-05484 EJD, Dkt. 46, at ¶ 19, Exs. B, C, D, F, H, K, O; Declaration of
26   Kirk D. Hendrick ISO Mot. to Transfer Venue ("Hendrick Kingsbury Decl."), Case No. 5:15-cv-
     01324-EJD, Dkt. 12, at ¶ 6, Exs. A, K, M, O, P, Q.  But Danzig also agreed to it as well.
27   Declaration of Kirk D. Hendrick ISO Mot. to Transfer Venue ("Hendrick Ruediger Decl."), Case
     No. 5:15-cv-00521-EJD, Dkt. 18-1 at ¶ 6, Exs. G, R, S, T.
28

Zuffa's Reply ISO                    Case Nos. 5:14-cv-05484 EJD; 5:14-cv-05591 EJD;
Mot. to Transfer                     5:14-cv-05621 EJD; 5:15-cv-00521 EJD; 5:15-cv-01324 EJD

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

**A.    Antitrust Claims That Rely on Allegations That Contracts Suppress Competition Require Interpretation of Those Contracts.**

Plaintiffs argue that they should avoid the forum selection provisions to which they agreed, which require that any action "to interpret" the contract be brought in courts located in Nevada, because they pleaded an antitrust claim and not a contract claim.  Opp. at 6, § III.A. Plaintiffs ignore the Ninth Circuit authority to the contrary and cite no authority to support their contention that an antitrust claim cannot constitute an action "to interpret" a contract.  *Id.*

Binding Ninth Circuit authority directly contradicts Plaintiffs' argument that Section 2 claims like theirs do not require contract interpretation.  Mot. at 11-12.  In *Simula, Inc. v. Autoliv, Inc.*, the Ninth Circuit held that where a plaintiff brings a Section 2 claim alleging, *inter alia*, that agreements between the parties have anticompetitive effects, resolving those claims "will necessitate interpreting the [parties'] Agreement to determine its meaning and whether the contracts between [the parties] actually do suppress competition as alleged."  175 F.3d 716, 722 (9th Cir. 1999).  This Court and other district courts in the Ninth Circuit have ruled similarly. *PPG Indus., Inc. v. Pilkington PLC*, 825 F. Supp. 1465, 1478 (D. Ariz. 1993) (where plaintiff alleges defendant's use of anticompetitive contracts as part of a Section 2 claim, "The Court will necessarily have to interpret or ascertain the meaning of the Agreement to determine if [the defendant] has misused the Agreement's restraints in the manner alleged").

In *Joseph v. Amazon.Com, Inc.*, No. C12–06256 HRL, 2013 WL 4806462 (N.D. Cal. Sept. 9, 2013), the court enforced a forum selection clause similar to the clause here and transferred an antitrust action challenging an agreement between plaintiff and Amazon as anticompetitive because "the crux of [plaintiff's] antitrust claim is that [the defendant] foists upon [plaintiff] what plaintiff says are burdensome and economically disadvantageous terms" and the "antitrust claim therefore will involve interpretation of the [] agreement and the performance requirements mandated by its terms."  *Id.* at *4.  *Simula*, *PPG Industries*, and *Joseph* all make clear that antitrust actions based on allegedly anticompetitive contracts turn on the interpretation of the contracts, and that courts must determine the parties' performance obligations in order to analyze competitive effects.

Plaintiffs attempt to distinguish *Simula*, *PPG Industries*, and *Joseph* by asserting that the

3

BOIES  SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

1   language of the forum selection clauses in those cases was broader than the clause at issue here

2   and that the forum selection clauses in *Simula* and *PPG Industries* were arbitration provisions.

3   Opp. at 10-11.  Plaintiffs have not shown that the forum selection clause here is so narrow that it

4   does not apply to their claims.  *Joseph*, 2013 WL 4806462, at *4 (the necessity of contract

5   interpretation to Section 2 claim was the primary reason for applying forum selection clause and

6   broad language of the forum selection clause was an independent, secondary reason for applying

7   the forum selection clause).  Nor have they shown that the courts' analysis of the language in the

8   contractual provisions calling for arbitration of disputes in *Simula* or *PPG Industries* would have

9   been different if the provision had simply governed forum selection.  *Atlantic Marine*

10   *Construction Co. v. United States Dist. Ct. for the W. Dist. of Tex.*, 134 S. Ct. 568, 579 (2013)

11   (forum selection clauses should be enforced except in the most exceptional circumstances").

12   Plaintiffs' insistence that "what matters is the practical effect [of the contracts] in the

13   marketplace" (Opp. at 12), misses the point.  The practical effects of the contracts will need to be

14   considered, but that requires interpreting the contracts to determine whether the UFC's contracts

15   with Plaintiffs "actually do suppress competition as alleged."  *Simula*, 175 F.3d at 722.  This

16   necessary interpretation places Plaintiffs' antitrust claims squarely within the class of "actions to

17   interpret" the contract to which the forum selection clause applies.

18   **B.      Antitrust Actions Like This One Constitute "Actions to Interpret" a Contract**

19   **         Within the Meaning of the Applicable Forum Selection Clause.**

20   Plaintiffs argue that the relevant forum selection clause categorically "does not apply to

21   antitrust or to similar claims sounding in tort."  Opp. at 6 § III.B.  But the forum selection clause

22   here applies broadly to "action[s] to interpret" without any express limitation on whether the

23   action sounds in tort, contract, or otherwise.  *See Simula*, 175 F.3d at 722; § II.A, *infra*.

24   The authorities cited by Plaintiffs do not support the proposition that the forum selection

25   clause here categorically excludes antitrust claims regardless of whether the claims require

26   interpretation of contract terms.  For example, *In re TFT-LCD Antitrust Litigation*, No. M 07-

27   1827, 2011 U.S. Dist. LEXIS 105152, at *14, 24-25 (N.D. Cal. Sept. 15, 2011), involved a *per se*

28   horizontal price-fixing claim based on a conspiracy among the colluding LCD sellers, and had

4

1   nothing to do with the terms of the contract between the plaintiff-buyer and the defendant-seller.

2   By contrast, Plaintiffs' claim here is that the contracts between Zuffa and Plaintiffs themselves

3   foreclose competition.  Le Compl. ¶ 113.

4       Plaintiffs' reliance on *Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing,*

5   *Inc.*, 406 F. Supp. 2d 751 (E.D. Ky. 2005), is also misplaced.  First, the heart of plaintiff's

6   antitrust claim there was an alleged conspiracy and related activity by defendants to exclude

7   plaintiff from hosting certain NASCAR races.  *Id.* at 752.  The plaintiff did not allege that the

8   contracts between the plaintiff and one defendant that contained the forum selection clause were

9   part of the alleged anticompetitive scheme.  Here, Plaintiffs admit that that their contracts with

10  Zuffa are a "crucial" part of the alleged anticompetitive scheme.  MTD Opp. 2-3, 14.

11      Second, in refusing to enforce the forum selection clause in *Kentucky Speedway*, the court

12  relied largely on its finding that there was a "great public interest" in having that case heard

13  locally in the Eastern District of Kentucky.  406 F. Supp. 2d at 756.  Plaintiffs have not shown

14  that there is any "great public interest" in having this case heard in the Northern District.

15      Third, the *Kentucky Speedway* court applied an outdated legal standard that has since been

16  overruled by the Supreme Court.  Expressly noting a circuit split, the *Kentucky Speedway* court

17  applied the then-current Sixth Circuit rule, that a forum selection clause "is not determinative, but

18  merely one factor to be thrown into the balance with other § 1404(a) factors."  *Id.* at 754.  In

19  *Atlantic Marine,* the Supreme Court rejected the idea that a forum selection clause was just one

20  factor in the mix, holding instead "a proper application of § 1404(a) requires that a forum-

21  selection clause be given *controlling weight* in all but the most exceptional cases."  134 S. Ct. at

22  579 (emphasis added).  Plaintiffs here have not shown that this is a "most exceptional" case in

23  which the forum selection clause should not be given controlling weight.  Plaintiffs' other cases

24  on this point are inapposite, because the claims at issue were not based on allegations that

25  contracts between the parties had anticompetitive effects.[4]

26  _____

27  [4] *See S-Fer Int'l, Inc. v. Paladion Partners, Ltd.*, 906 F. Supp. 211, 213-14 (S.D.N.Y. 1995)
    (forum selection clause only addresses "action[s] for enforcement," without reference to
28  interpretation); *Hoffman v. Minuteman Press Int'l, Inc.*, 747 F. Supp. 552, 559 (W.D. Mo. 1990)

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

1    Plaintiffs argue that "If the parties had wished to include antitrust or other statutory claims

2    within the scope of the forum selection clause, they could have." Opp. at 7-8. First, there is no

3    requirement that parties list all the specific statutory claims that could be covered in a clearly-

4    worded forum selection clause, and to do so would be impractical. Second, Plaintiffs' argument

5    is no more persuasive than its converse: if the parties wanted to *exclude* any category of claims

6    from the definition of an action "to interpret," they could have done so, but they did not. Third,

7    courts have found that the category of disputes over "interpretation" should be read expansively.

8    Mot. at 10-11.

9    **C.    Plaintiffs' Antitrust Claim Relies on Their Implausibly Restrictive**
         **Interpretation of the Duration, Terminability, and/or Scope of Plaintiffs'**
10       **Agreements with the UFC.**

11   Plaintiffs' claim that their Complaints "make no allegations requiring the Court or jury to

12   interpret or enforce these contracts" (Opp. at 6) is particularly disingenuous with regard to their

13   allegations as to the duration, terminability and scope of the contracts. The Complaints mention a

14   series of clauses or terms that they allege collectively result in "perpetual" and "indefinite"

15   exclusion of competition. Le Compl. ¶ 113 (listing clauses). These allegations are entirely

16   conclusory and deliberately avoid quoting the actual contract language or explaining how it can

17   be interpreted to support their allegation. But Plaintiffs' strategic choice to be vague and

18   conclusory in their Complaints does not mean that the actual language of the contracts will not

19   need to be examined and interpreted.

20   The Court will determine in this case what the contracts require the parties to do or not do,

21   and whether they are reasonable and/or have anticompetitive effects. Plaintiffs admit this in their

22   separate opposition to the motion to dismiss, arguing there that the UFC's "exclusive contracts

23   with the restrictive provisions" are a critical part of its allegedly anticompetitive scheme,

24   (claim of fraudulent inducement to contract did not relate to interpretation of contract); *Berrett v.*

25   *Life Ins. Co. of the SW*, 623 F. Supp. 946, 948-49 (D. Utah 1985) (alleged tortious acts of
     defendants, including calling plaintiffs' clients and encouraging them not to do business with

26   plaintiffs and otherwise defaming plaintiffs, were "unrelated to the interpretation" of the
     agreement at issue); *Perry v. Nat'l City Mortg., Inc.*, 2006 U.S. Dist. LEXIS 62419, at *4-5 (S.D.

27   Ill. Aug. 15, 2006) (terms of employment agreements were "outside the scope" of plaintiffs'
     FLSA claim).

28

Zuffa's Reply ISO                    Case Nos. 5:14-cv-05484 EJD; 5:14-cv-05591 EJD;
Mot. to Transfer                     5:14-cv-05621 EJD; 5:15-cv-00521 EJD; 5:15-cv-01324 EJD

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

1  including "Exclusivity Clauses," "Ancillary Rights Clauses," "Champion's Clauses," "Right to

2  Match Clauses," "Retirement Clauses," and "tolling provisions."  MTD Opp. 2-3.  Plaintiffs even

3  argue the alleged "exclusive and often perpetual" contracts are a "crucial component" of the

4  UFC's alleged "anticompetitive scheme."  MTD Opp. 14.  These contracts are key because the

5  "short duration and easy terminability" of exclusive agreements "negate substantially their

6  potential to foreclose competition."  *Omega Envtl., Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1163-64

7  (9th Cir. 1997).  The duration of an exclusive agreement "is a matter of contract interpretation for

8  the Court."  *Indep. Entm't Grp. v. Nat'l Basketball Ass'n*, 853 F. Supp. 333, 338-39 (C.D. Cal.

9  1994) (citation omitted).[5]

10       For example, paragraph 113(a) of the Le Complaint[6] purports to interpret several

11  provisions of the so-called "Exclusivity Clause," including the duration of the obligation (which

12  Plaintiffs characterize as "perpetually" and "indefinitely") and the terminability of the obligation

13  (which Plaintiffs characterize as "at the UFC's sole discretion").  Should this case proceed, Zuffa

14  intends to show that these contracts have durations of reasonable lengths, which are subject to

15  negotiation and vary by contract and fighter, and which may be subject to certain extensions or

16  accelerations in specific, enumerated circumstances.  In sum, the contract terms do not lock in

17  fighters "perpetually and exclusively" as Plaintiffs allege.  Le Compl. ¶ 110.

18       Any trial of this case would accordingly involve both examination and interpretation of

19  the contractual language and extrinsic evidence of the real world behavior.  For example, that

20  Plaintiffs and others who fought for the UFC later fought for other promoters demonstrates that

21  these agreements are not perpetually exclusive (MTD at 5-6), and that the scope of the ancillary

---

22  [5] Plaintiffs' argument that a dispute over the duration of the contracts is not a matter of contract

23  interpretation because their allegation that the agreements restrict fighters "all but indefinitely"
   "is not to be found in any of the Agreements" (Opp. at 14-15) is a non-sequitur.  Zuffa agrees that

24  no "all but indefinitely" provision is either found or implied in any agreement.  This is exactly

25  why Plaintiffs would need to prove that the contracts are interpreted to have that effect.  They
   cannot establish anticompetitive conduct or effects, for example, simply by pointing out some

26  Plaintiffs fought only for the UFC; they will need to establish, at a minimum, that specific
   contractual terms mandated this result, as opposed to, say, consistently attractive financial offers

27  from the UFC.

28  [6] ¶ 112(a) in the *Vazquez*, *Vera*, *Ruediger*, and *Kingsbury* Complaints.

7

1  rights provisions are not so broad as to prevent fighters from being promoted by the UFC's

2  competitors (MTD at 19-22).  Such extrinsic evidence is a key part of contract interpretation.

3  *E.g.*, *Watson v. Eaton Elec. Inc.*, No. 206-CV-00277-KJD-GWF, 2008 WL 4527693, at *3 (D.

4  Nev. Sept. 29, 2008) (where "a contract's terms are reasonably susceptible to more than one

5  interpretation, extrinsic evidence is admissible to determine the parties' true intent").

6    Further, Plaintiffs' strange assertion that Zuffa agrees with their interpretation of this

7  provision (Opp. at 14-15) is wrong.  In its Motion to Dismiss, Zuffa did not contest incorrect

8  factual allegations in the Complaints because a motion to dismiss is not the proper vehicle for

9  doing so.  But Zuffa made clear in its Motion to Transfer that "[s]hould this case go to trial, Zuffa

10 intends to contest vigorously these allegations as to the interpretation of these contracts."  Mot. at

11 12.  The duration, terminability and scope of Zuffa's exclusivity provisions, as well as the

12 business reasons for and the competitive effects of these terms, are all potentially relevant to the

13 antitrust analysis, and none of these issues can be evaluated without examining the language of

14 the contracts and interpreting them.[7]

15   **D.** **Plaintiffs Who Agreed to an Enforceable Forum Selection Clause Cannot**
16     **Avoid Their Obligations Simply by Joining an Action with Plaintiffs Whose**
       **Contracts Did Not Contain the Same Clause.**

17   Although the majority of Plaintiffs agreed to an enforceable forum selection clause that

18 applies to these actions, Plaintiffs argue that the Plaintiffs whose agreements contain only the

19 Nevada state court forum selection clause should not be bound.  Opp. § III.E.  But Plaintiffs have

20 not offered a persuasive reason why this court should not apply the principle articulated in

21 *McNair v. Monsanto Co.*, that "where the record shows that some of the Plaintiffs are not bound

22 by the forum selection clause, . . . those Plaintiffs are bound by their choice to bring suit in

23 concert with others that are."  279 F. Supp. 2d 1290, 1309-10 (M.D. Ga. 2003).  As in *McNair*, a

24

25 [7] Plaintiffs citations to *United States v. Am. Express*, 2015 U.S. Dist. LEXIS 20114, at *13-14
   (E.D.N.Y. Feb. 19, 2015) and *United States v. Visa, U.S.A., Inc.*, 163 F. Supp. 2d 322 (S.D.N.Y.
26 2011) do not support their argument.  Before engaging in a competitive effects analysis, both
   courts examined the relevant contract terms, heard evidence on their interpretation, and
27 determined the performance obligations set forth by the relevant agreements.  *See Am. Express*,
   2015 U.S. LEXIS 20114, at *46-*59; *Visa*, 163 F. Supp. 2d at 368-69.
28

| Zuffa's Reply ISO | Case Nos. 5:14-cv-05484 EJD; 5:14-cv-05591 EJD; |
| Mot. to Transfer | 5:14-cv-05621 EJD; 5:15-cv-00521 EJD; 5:15-cv-01324 EJD |

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

O A K L A N D ,   C A L I F O R N I A

1   majority of Plaintiffs have agreed to the binding forum selection clause at issue.  That this action

2   is a putative class action while *McNair* was a mass action makes no difference.  Plaintiffs'

3   position is unworkable and would allow any litigant to avoid an enforceable forum selection

4   clause simply by bringing an action with another plaintiff whose contract did not contain the same

5   clause.  The Court should reject this position.  Further, Zuffa is not seeking to "splinter" these

6   Plaintiffs or these cases based on the forum selection clause—quite the opposite.  Consistent with

7   § 1404(a), Zuffa is seeking transfer of all five related actions in their entirety without

8   "splintering" off any Plaintiffs or claims.  *McNair*, 279 F. Supp. 2d at 1314 ("Section 1404(a)

9   provides for transfer of '*any civil action*' and not individual claims.").

## III.   PLAINTIFFS' OPPOSITION CONFIRMS THAT THE CONVENIENCE AND FAIRNESS FACTORS ARTICULATED BY § 1404(a) AND THE NINTH CIRCUIT OVERWHELMINGLY FAVOR TRANSFER TO NEVADA.

12       Plaintiffs' Opposition fails to demonstrate a significant connection between their actions

13   and this District or to show that the Northern District of California is a more convenient forum

14   than the District of Nevada.  Plaintiffs' attempt to establish *some* connection between these

15   actions and the Northern District only demonstrates that the District of Nevada is the "more

16   appropriate forum" based on the Ninth Circuit's convenience and fairness factors.[8]

### A.   Plaintiffs Do Not Dispute That Their Choice of Forum Is Entitled to Diminished Weight Because They Seek to Represent Putative Nationwide Classes.

19       Plaintiffs' primary argument against transfer is that their choice to bring these actions in

20   this District is entitled to deference.  Opp. § IV.A.  "But while this factor can sometimes be a

21   weighty one under other circumstances, it is afforded less deference when, as here, the action is

23   [8] Plaintiffs citation to *Ravelo Monegro v. Rosa*, 211 F.3d 509 (9th Cir. 2000) for the proposition
24   that "transfer under Section 1404(a) is 'an exceptional tool to be applied sparingly'" is inaccurate.
     Opp. at 17.  The quote from *Ravelo Monegro* discusses dismissal under the doctrine of *forum non*
25   *conveniens*, not transfer under § 1404(a).  *Id.* at 510 ("The district court dismissed Plaintiffs'
     action on the ground of *forum non conveniens*"), 514 ("rather than treating *forum non conveniens*
26   as an exceptional tool to be employed sparingly").  A "§ 1404(a) transfer is available 'upon a
     lesser showing of inconvenience' than that required for a *forum non conveniens* dismissal."
27   *Kinney v. Chomsky*, No. C 14-02187 LB, 2014 WL 3725932, at *2 (N.D. Cal. July 25, 2014)
     (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)).

Zuffa's Reply ISO                 Case Nos. 5:14-cv-05484 EJD; 5:14-cv-05591 EJD;
Mot. to Transfer                  5:14-cv-05621 EJD; 5:15-cv-00521 EJD; 5:15-cv-01324 EJD

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

O A K L A N D ,   C A L I F O R N I A

1    brought as a class action on behalf of a representative class." *Saunders v. USAA Life Ins. Co.*,

2    No. 5:14-CV-01868 EJD, 2014 WL 5339205, at *2 (N.D. Cal. Oct. 17, 2014) (citing *Lou v.*

3    *Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987)).  When a plaintiff brings a class action, the "location

4    of the main class representative plaintiffs" is simply not "relevant to a Section 1404(a)

5    determination," *Genden v. Merrill, Lynch, Pierce Fenner & Smith, Inc.*, 621 F. Supp. 780, 782

6    (N.D. Ill. 1985), or, at the very least, "substantially undercuts this deference" that is afforded to a

7    plaintiff's choice of forum.  *Johns v. Panera Bread Co.*, No. 08-1071 SC, 2008 WL 2811827, at

8    *2 (N.D. Cal. Jul. 21, 2008); *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1094

9    (N.D. Cal. 2013) ("the degree of deference to [plaintiffs' choice of forum] is substantially

10   diminished in several circumstances, including where . . . the plaintiff sues on behalf of a putative

11   class").  This is particularly true where the plaintiff alleges a nationwide class action where

12   putative class members are dispersed throughout the country.  "[W]here there are hundreds of

13   potential plaintiffs . . . all of whom could with equal show of right go into their many home

14   courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home

15   forum is considerably weakened."  *Ruiz v. Darigold, Inc.*, No. 14-cv-02054-WHO, 2014 WL

16   4063002, at *3 (N.D. Cal. Aug. 14, 2014) (quoting *Koster v. Am. Lumbermens Mut. Cas. Co.*, 330

17   U.S. 518, 524 (1947)); *see also Graham v. VCA Antech, Inc.*, No. 14-cv-02158-MEJ, 2014 WL

18   5528402, at *2 (N.D. Cal. Oct. 31, 2014) (plaintiff's choice of venue should be afforded "little

19   weight" where it was brought as a class action and "only one of the two named Plaintiffs is

20   resident in this District").  Plaintiffs are silent on this point, choosing to rely instead on cases

21   involving individual actions.  Opp. at 16-17.

22        Plaintiffs' choice of venue also receives "substantially diminished" deference when "the

23   plaintiff's venue choice is not its residence."  *Park*, 964 F. Supp. 2d at 1094.  For three of the five

24   administratively-related actions before the court (*Vazquez*, *Vera*, and *Ruediger*), no plaintiff

25   resides in this district.  Only three of the eleven putative class representatives are alleged to reside

26   in this District, and two of them - Kingsbury and Uyenoyama - did not file their Complaint until

27   nearly two months after Zuffa moved to transfer.  A post-hoc attempt to influence an outstanding

28   motion with an additional, redundant filing that contains nothing new of substance is no reason to

10

1   show deference to Plaintiffs' choice.  Similarly, Plaintiffs' failure to demonstrate any other

2   significant connection between their cause of action and their choice of forum also reduces the

3   weight to be afforded to Plaintiffs' choice.  *See* § III.F & G, *infra*.

4       **B.    The Convenience of the Parties Weighs in Favor of Transfer.**

5           Other than belatedly adding two putative class representatives, Plaintiffs have done little

6   to attempt to overcome Zuffa's showing that the District of Nevada is a much more convenient

7   forum for the parties.  As discussed in Zuffa's opening brief, the District of Nevada remains a far

8   more convenient forum for Zuffa because all of its senior executives, most of its employees, and

9   its headquarters, which house its records, are based in Las Vegas.  Zuffa has no offices or

10  employees based in this District and would suffer significant disruption to its business if senior

11  executives had to spend significant time away from its Las Vegas headquarters.  Mot. at 16-17.[9]

12  That every Plaintiff agreed to forum selection clauses that designate courts in Nevada as the

13  dispute resolution venue in all of their contracts with Zuffa — regardless of whether those

14  provisions are dispositive as to these actions — demonstrates that Plaintiffs consider Nevada a

15  convenient forum for litigation.  *Id.*  Finally, that putative class representatives reside in both

16  districts makes the District of Nevada no less convenient than the Northern District of California.

17  *Ruiz*, 2014 WL 4063002, at *3 (quoting *Koster*, 330 U.S. at 524).

18      **C.    The Convenience of Witnesses Weighs in Favor of Transfer.**

19          Plaintiffs fail to show that San Jose is a more convenient forum for a greater number of

20  non-party witnesses.  "In establishing inconvenience to witnesses, the moving party must name

21  the witnesses, state their location, and explain their testimony and its relevance." *Morris v. Safeco*

22  *Ins. Co.*, No. C 07-2890 PJH, 2008 WL 5273719, at *4 (N.D. Cal. Dec. 19, 2008) (citation

23  omitted).  In its opening brief, Zuffa identified with specificity at least twelve non-party witnesses

24

25  [9] Plaintiffs note that Zuffa has participated in two other lawsuits in this District.  These were two
    small lawsuits against California parties relating to violations of Zuffa's IP rights that occurred in
26  California. *Zuffa LLC v. Dodson*, No. 13-cv-04004 (N.D. Cal. filed Aug. 28, 2013)
    (copyright/unauthorized PPV); *BAM! Entertainment, Inc. v. Zuffa, LLC*, No. 01-cv-21207 (N.D.
27  Cal. filed Dec. 21, 2001) (trademark).  No principle of law suggests that participating in a lawsuit
    in one case should prevent a party from seeking a more convenient forum in another case.

28

| Zuffa's Reply ISO | Case Nos. 5:14-cv-05484 EJD; 5:14-cv-05591 EJD; |
| Mot. to Transfer | 5:14-cv-05621 EJD; 5:15-cv-00521 EJD; 5:15-cv-01324 EJD |

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

based in Las Vegas — including competing promoters, who can testify to facts relevant to, *inter alia*, market definition and competition, and event venues that have hosted MMA events for the UFC or its competitors, who can testify regarding the scope and duration of any exclusivity provisions in their contracts with the UFC and other promoters.  Mot. at 17-19.  By contrast, Plaintiffs list only four potential non-party witnesses with specificity — two venues, EA Sports, and Yahoo!.[10]  Opp. at 22.  Although Plaintiffs make vague references to "(4) numerous class members and their representatives; (5) world class trainers and training facilities; and (6) numerous merchandisers involved in the MMA Industry" (*id.*), those references fail to identify with any specificity the witnesses likely to testify or subjects of their testimony.[11]  *Brown v. Abercrombie & Fitch Co.*, No. 4:13-CV-05205 YGR, 2014 WL 715082, at *4 (N.D. Cal. Feb. 14, 2014) (where plaintiff fails to specifically identify non-party witnesses "the location of these unidentified, hypothetical witnesses bears little weight in the Court's analysis") (citing cases).  Similarly, while Plaintiffs refer to Strikeforce as formerly based in this District, they do not identify any knowledgeable former employee in this District, and Zuffa has already pointed out that Strikeforce's former CEO Scott Coker, now Bellator's CEO, does not reside in this District.  Mot. at 19.

## D. The Location Where the Relevant Agreements Were Negotiated and Executed Favors Transfer.

Zuffa's opening brief showed that the location where the relevant agreements were negotiated and executed is important to the Section § 1404(a) analysis and that factor favored Nevada.  *See* Mot. at 20; *Saunders*, 2014 WL 5339205, at *1 (quoting *Jones v. GNC Franchising,*

---

[10] Plaintiffs claim that Fox Sports 1 is located in this District, Opp. at 4, but can provide no support for that assertion because Fox Sports 1 is located in Los Angeles.  Marc Larter, "Fox Sports 1 almost ready in its L.A. digs," LA Observed, Aug. 1, 2013, http://www.laobserved.com/biz/2013/08/fox_sports_1_almost.php (last accessed Apr. 21, 2015).
[11] In the first four Complaints, Plaintiffs alleged that certain non-Plaintiff MMA Fighters resided in the Northern District of California.  *Le* Compl. ¶ 28; *Vazquez* Compl. ¶ 28; *Vera* Compl. ¶ 28; *Ruediger* Compl. ¶ 28.  But in the *Kingsbury* Complaint, Plaintiffs removed five of those fighters — Nick Diaz, Nate Diaz, T.J. Dillashaw, Joseph Benavidez, and Urijah Faber — from the list, presumably because none of them actually live in the Northern District of California.  *Kingsbury* Compl. ¶ 28.

---

| Zuffa's Reply ISO | Case Nos. 5:14-cv-05484 EJD; 5:14-cv-05591 EJD; |
|---|---|
| Mot. to Transfer | 5:14-cv-05621 EJD; 5:15-cv-00521 EJD; 5:15-cv-01324 EJD |

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

*Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000)).  Plaintiffs ignore this factor in their Opposition.

### E.   Nevada is More Familiar with the Governing Law of the Contracts and the Relative Volume of Antitrust Cases Between Districts Is Irrelevant to the § 1404(a) Analysis.

As discussed above, this Court will need to interpret the parties' performance obligations under the contracts, which all designate Nevada as the governing law.  Plaintiffs do not dispute that the agreements are governed by Nevada law.

Plaintiffs claim that "a significant disparity in the volume of cases brought pursuant to a given statute can make one venue preferable over another," (Opp. at 23) but provide no authority to suggest that this is an accepted consideration in the § 1404(a) analysis, and the logical implication of this argument – that the more cases plaintiffs choose to bring in a particular District, the more that District should be favored in resolving transfer motions – is questionable at best.  Moreover, this logic would lead to the absurd result that the transfer analysis would always favor busy, populous districts like the Northern District of California.  Regardless of the volume and composition of their dockets, "District courts are 'equally capable of applying federal law," *Hawkes v. Hewlett-Packard Co.*, No. CV-10-05957-EJD, 2010 WL 506569, at *5 (N.D. Cal. Feb. 15, 2012), and the District of Nevada would competently and efficiently handle this case as would this District.  Mot. at 20.

### F.   The Respective Parties' Contacts with the Forum Overwhelmingly Favors Transfer to Nevada.

Plaintiffs do not dispute that Zuffa's contacts with the District of Nevada are orders of magnitude greater than their contacts with this District.  Their opposition only confirms that the putative class representatives' contacts with the District of Nevada are substantially greater than their contacts with this District.  Every Plaintiff agreed to multiple contracts expressly deemed made in Las Vegas and designating Nevada courts as the forum for dispute resolution.  Mot. at 5. Further, according to Plaintiffs, only five putative class representatives ever fought in the Northern District of California, (Opp. at 19)  This means that a majority of putative class representatives *never* fought in this District, while 10 out of 11 Plaintiffs (Mr. Uyenoyama is the lone exception) competed for the UFC or its competitors in Las Vegas.  Appendix A.  Finally,

13

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA

1  Plaintiffs Hallman, Ruediger, Kingsbury, Quarry, and Garza all engaged in other MMA-related
2  activities in Las Vegas as contestants or coaches on the television program *The Ultimate Fighter*,
3  which historically has been filmed in Las Vegas.[12]

**G.    Plaintiffs Have Not Shown a Strong Local Interest in the Underlying Litigation.**

6       Plaintiffs argue that this District has a strong local interest in this litigation.  Opp. at 24.
7  This argument ignores the historic role of Las Vegas as the hub of competition in combat sports,
8  especially MMA and boxing.  For example, Las Vegas is often referred to as "The Fight Capital
9  of the World."[13]  As noted, Zuffa is headquartered there and most of its employees reside there.
10  Mot. at 4.  Many times more MMA bouts take place in Las Vegas every year than in this District.
11  Mot. at 6.  If any District has a particularly strong local interest in ensuring vigorous competition
12  in MMA, it is the District of Nevada.

**H.    The Relative Ease of Access to Proof and the Difference in the Cost of Litigation Between the Two Forums Favors Transfer to Nevada.**

15       Plaintiffs do not meaningfully dispute that transfer to Nevada would place the venue near
16  the largest source of original documentary evidence and the most witnesses likely to testify at
17  trial.  *King v. SAM Holdings, LLC*, No. 5:CV-10-04706-EJD, 2011 WL 4948603, at *4 (N.D. Cal.
18  Oct. 11, 2011) (ease of access to sources of proof favored transfer where "all of the original
19  documents" were stored at defendant's headquarters in transfer district); *Park*, 964 F. Supp. 2d at
20  1095 ("Generally, litigation costs are reduced when venue is located near the most witnesses
21  expected to testify").  The result is that the costs of litigation are lower in the District of Nevada
22  than in the Northern District of California, which favors transfer.

---

[12] "Dennis Hallman," http://www.imdb.com/name/nm2075771/?ref_=fn_al_nm_1;
"Gabe Ruediger," http://www.imdb.com/name/nm2393259/?ref_=fn_al_nm_1;
"Kyle Kingsbury," http://www.imdb.com/name/nm3171167/?ref_=fn_al_nm_1;
"Nate Quarry," http://www.imdb.com/name/nm1855255/?ref_=fn_al_nm_1;
"Pablo Garza," http://www.imdb.com/name/nm4087285/?ref_=fn_al_nm_2
[13] "WSOF 17: Jake Shields vs. Brian Foster," MMA World Series of Fighting, Dec. 17, 2014;
http://www.wsof.com/news-view.php?id=326; Le Compl. ¶ 122 (some of the "most important"
venues in MMA are located in Las Vegas).

14

Zuffa's Reply ISO                    Case Nos. 5:14-cv-05484 EJD; 5:14-cv-05591 EJD;
Mot. to Transfer                     5:14-cv-05621 EJD; 5:15-cv-00521 EJD; 5:15-cv-01324 EJD

B O I E S ,  S C H I L L E R  &  F L E X N E R   L L P
O A K L A N D ,  C A L I F O R N I A

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
O A K L A N D ,   C A L I F O R N I A

I.      **Issues of Court Congestion Are Not Material Here.**

"Typically, administrative considerations, such as docket congestion, are given little weight in assessing the grant of a transfer motion."  *See Incorp Servs. Inc. v. Incsmart.Biz, Inc.*, No. 11-CV-4660-EJD-PSG, 2012 WL 3685994, at *15 (N.D. Cal. Aug. 24, 2012) (*citing Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335 (9th Cir. 1984)).  "To measure congestion, courts compare the two fora's median time from filing to disposition or trial." *Arreola v. Finish Line*, No. 14-CV-03339-LHK, 2014 WL 6982571, at *11 (N.D. Cal. Dec. 9, 2014).  The median time from filing to disposition and the median time from filing to trial in the Northern District of California are 8.2 and 31.0 months respectively, compared to 8.9 months and 40.7 months in the District of Nevada.[14]  Slight differences in the median resolution times over the entire docket are certainly not sufficient to suggest that there is unusual docket congestion in Las Vegas that would counsel against transfer.

IV.      **CONCLUSION**

For the foregoing reasons and for the reasons stated in Zuffa's motions to transfer venue under 28 U.S.C. § 1404(a) filed in each of these five related actions, this Court should transfer these actions to the District of Nevada.


Dated: April 28, 2015                                   Respectfully Submitted,

                                                                   BOIES, SCHILLER & FLEXNER LLP


                                                                   By: */s/ William A. Isaacson*
                                                                          William A. Isaacson
                                                                   *Attorneys for Defendant* Zuffa, LLC, d/b/a
                                                                   Ultimate Fighting Championship and UFC

---

[14] United States Courts, Federal Court Management Statistics, December 2014, at page 9 (showing comparative management statistics for district courts in the Ninth Circuit), *available at* http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/FederalCourtManagementStatistics/2014/comparison-districts-within-circuit-june-2014.pdf&page=9.

## Appendix A

Named Plaintiffs' Bouts in Nevada

| Plaintiff | Promoter | Date | Location |
|---|---|---|---|
| Cung Le[1] | | | |
| Cung Le | UFC | 7/7/2012 | MGM, Las Vegas, NV |
| Nate Quarry[2] | | | |
| Nate Quarry | UFC | 11/15/2008 | MGM, Las Vegas, NV |
| Nate Quarry | UFC | 9/19/2007 | Palms Casino, Las Vegas, NV |
| Nate Quarry | UFC | 11/19/2005 | MGM, Las Vegas, NV |
| Nate Quarry | UFC | 8/6/2005 | Cox Pavilion, Las Vegas, NV |
| Nate Quarry | UFC | 4/9/2005 | Cox Pavilion, Las Vegas, NV |
| Jon Fitch[3] | | | |
| Jon Fitch | WSOF 3 | 6/14/2013 | Hard Rock Casino, Las Vegas, NV |
| Jon Fitch | UFC | 2/2/2013 | Mandalay Bay, Las Vegas, NV |
| Jon Fitch | UFC | 12/30/2011 | MGM, Las Vegas, NV |
| Jon Fitch | UFC | 7/11/2009 | Mandalay Bay, Las Vegas, NV |
| Jon Fitch | UFC | 1/31/2009 | MGM, Las Vegas, NV |
| Jon Fitch | UFC | 10/14/2006 | Mandalay Bay, Las Vegas, NV |
| Jon Fitch | UFC | 6/28/2006 | Hard Rock Casino, Las Vegas, NV |
| Jon Fitch | UFC | 4/6/2006 | Hard Rock Casino, Las Vegas, NV |
| Jon Fitch | UFC | 10/3/2005 | Hard Rock Casino, Las Vegas, NV |
| Jon Fitch | SHOOTO USA | 11/14/2003 | Orleans Casino, Las Vegas, NV |
| Jon Fitch | RFC 1 | 7/13/2002 | Stardust Casino, Las Vegas, NV |
| Luis Javier Vazquez[4] | | | |
| Luis Javier Vazquez | WEC | 11/11/2010 | Palms Casino, Las Vegas, NV |
| Luis Javier Vazquez | WEC | 8/18/2010 | Palms Casino, Las Vegas, NV |
| Luis Javier Vazquez | WEC | 8/9/2009 | Hard Rock Casino, Las Vegas, NV |
| Luis Javier Vazquez | SHOOTO | 11/14/2003 | Orleans Casino, Las Vegas, NV |
| Luis Javier Vazquez | KOTC | 5/17/2002 | Silver Legacy, Reno, NV |

---

[1] "Cung Le Fight History," http://www.sherdog.com/fighter/Cung-Le-14883 (last accessed Apr. 21, 2015)
[2] "Nate Quarry Fight History," http://www.sherdog.com/fighter/Nate-Quarry-2383 (last accessed Apr. 21, 2015)
[3] "Jon Fitch Fight History," http://www.sherdog.com/fighter/Jon-Fitch-4865 (last accessed Apr. 21, 2015)
[4] "Javier Vazquez Fight History," http://www.sherdog.com/fighter/Javier-Vazquez-511 (last accessed Apr. 21, 2015)

| Dennis Hallman[5] | | | |
|---|---|---|---|
| Dennis Lloyd Hallman | UFC | 12/5/2009 | Palms Casino, Las Vegas, NV |
| Dennis Lloyd Hallman | SF 6 | 9/23/2004 | Reno Hilton, Reno, NV |
| Dennis Lloyd Hallman | UFC | 6/19/2004 | Mandalay Bay, Las Vegas, NV |
| Dennis Lloyd Hallman | KOTC 28 | 8/16/2003 | Reno, NV |
| Dennis Lloyd Hallman | WFA 3 | 11/23/2002 | Aladdin's Arts Ctr, Las Vegas, NV |
| Dennis Lloyd Hallman | KOTC 18 | 11/1/2002 | Silver Legacy, Reno, NV |
| Dennis Lloyd Hallman | UFC | 9/28/2001 | Mandalay Bay, Las Vegas, NV |
| Brandon Vera[6] | | | |
| Brandon Vera | UFC | 10/29/2011 | Mandalay Bay, Las Vegas, NV |
| Brandon Vera | UFC | 1/1/2011 | MGM, Las Vegas, NV |
| Brandon Vera | UFC | 7/19/2008 | Palms Casino, Las Vegas, NV |
| Brandon Vera | UFC | 2/4/2006 | Mandalay Bay, Las Vegas, NV |
| Brandon Vera | UFC | 10/3/2005 | Hard Rock Casino, Las Vegas, NV |
| Pablo Garza[7] | | | |
| Pablo Garza | UFC | 12/4/2010 | Palms Casino, Las Vegas, NV |
| Gabe Ruediger[8] | | | |
| Gabe Ruediger | UFC | 2/5/2011 | Mandalay Bay, Las Vegas, NV |
| Gabe Ruediger | IFC | 1/31/2004 | Lake Tahoe, NV |
| Mac Danzig[9] | | | |
| Mac Danzig | UFC | 2/6/2010 | Mandalay Bay, Las Vegas, NV |
| Mac Danzig | UFC | 7/11/2009 | Mandalay Bay, Las Vegas, NV |
| Mac Danzig | UFC | 12/8/2007 | Palms Casino, Las Vegas, NV |
| Mac Danzig | PRIDE 33 | 2/24/2007 | Thomas & Mack Ctr, Las Vegas, NV |
| Mac Danzig | KOTC | 10/29/2005 | Silver Legacy, Reno, NV |
| Kyle Kingsbury[10] | | | |
| Kyle Kingsbury | UFC | 5/26/2012 | MGM, Las Vegas, NV |
| Kyle Kingsbury | UFC | 6/4/2011 | Palms Casino, Las Vegas, NV |
| Kyle Kingsbury | UFC | 2/5/2011 | Mandalay Bay, Las Vegas, NV |

[5] "Dennis Hallman Fight History," http://www.sherdog.com/fighter/Dennis-Hallman-275 (last accessed Apr. 21, 2015)

[6] "Brandon Vera Fight History," http://www.sherdog.com/fighter/Brandon-Vera-4886 (last accessed Apr. 21, 2015)

[7] "Pablo Garza Fight History," http://www.sherdog.com/fighter/Pablo-Garza-35448 (last accessed Apr. 21, 2015)

[8] "Gabe Ruediger Fight History," http://www.sherdog.com/fighter/Gabe-Ruediger-5542 (last accessed Apr. 21, 2015)

[9] "Mac Danzig Fight History," http://www.sherdog.com/fighter/Mac-Danzig-3396 (last accessed Apr. 21, 2015)

[10] "Kyle Kingsbury Fight History," http://www.sherdog.com/fighter/Kyle-Kingsbury-16558 (last accessed Apr. 21, 2015)

| Kyle Kingsbury | UFC | 12/13/2008 | Palms Casino, Las Vegas, NV |
|---|---|---|---|
| Kyle Kingsbury | KOTC | 9/15/2007 | Laughlin, NV |
| Kyle Kingsbury | KOTC | 3/10/2007 | Avi Casino, Laughlin, NV |