Joseph R. Saveri (State Bar No. 130064)
JOSEPH SAVERI LAW FIRM, INC.
505 Montgomery Street, Suite 625
San Francisco, California 94111
Telephone:      (415) 500-6800
Facsimile:      (415) 395-9940
jsaveri@saverilawfirm.com

Benjamin D. Brown (State Bar No. 202545)
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., N.W.,
Suite 500, East Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile:      (202) 408 4699
rkoffman@cohenmilstein.com

Eric L. Cramer (*pro hac vice*)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
ecramer@bm.net

*Attorneys for Individual and Representative
Plaintiffs Cung Le, Nathan Quarry, Jon Fitch,
Luis Javier Vazquez, Dennis Lloyd Hallman,
Brandon Vera, Pablo Garza, Gabe Ruediger,
Mac Danzig, Kyle Kingsbury, and Darren
Uyenoyama*

[Additional Counsel Listed on Signature Page]

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| **Cung Le, Nathan Quarry, and Jon Fitch, on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,**<br><br>**Defendant.** | Case Nos.  5:14-cv-05484-EJD; 5:14-cv-05591-EJD; 5:14-cv-05621-EJD; 5:15-cv-00521-EJD; 5:15-cv-01324-EJD<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>Date:          May 7, 2015<br>Time:          9:00 a.m.<br>Courtroom:   4<br>Judge:        Hon. Edward J. Davila |

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

1  **Luis Javier Vazquez and Dennis Lloyd**
2  **Hallman, on behalf of themselves and all others similarly situated,**

3                    **Plaintiffs,**

4          **v.**

5  **Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,**
6
7                    **Defendant.**

8  **Brandon Vera and Pablo Garza, on behalf of themselves and all others similarly situated,**
9
10                    **Plaintiffs,**

11         **v.**

12  **Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,**

13                    **Defendant.**

14  **Gabe Ruediger and Mac Danzig, on behalf of**
15  **themselves and all others similarly situated,**

16  **Plaintiffs,**

17         **v.**

18  **Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,**
19
20  **Defendant.**

21
22
23
24
25
26
27
28

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

Joint Case Management Conference Statement

Pursuant to Federal Rule of Civil Procedure 26(f), Civil Local Rule 16-9, and the Standing Order for All Judges of the Northern District of California, the parties in the above-captioned cases (collectively, the "Action") have met and conferred and respectfully submit this Joint Case Management Statement.[1]

1. **JURISDICTION AND SERVICE**

Plaintiffs bring this Action under Section 2 of the Sherman Act, 15 U.S.C. § 2, and Section 4 of the Clayton Act, 15 U.S.C. § 15(a). The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337(a), and 15 U.S.C. § 15. There are no issues concerning personal jurisdiction.   The Defendant has been served.

2. **FACTS**

a. **Plaintiffs' Statement**

Plaintiffs are eleven Elite Professional Mixed Martial Arts Fighters ("Elite Professional MMA Fighters") who have brought this antitrust class action against Zuffa, LLC (the "UFC" or "Defendant"). Plaintiffs, who have all fought for the UFC, allege that, through a series of anticompetitive, illicit, and exclusionary acts (the "scheme"), the UFC has illegally acquired, enhanced, and maintained dominant positions in the markets for (a) promoting live Elite Professional MMA events, and (b) the market for Elite MMA Fighter services (together, the "Relevant Markets"). Plaintiffs plead that there are two separate classes, the "Bout Class" (persons who have "competed in one or more live professional UFC-promoted MMA bouts") and the "Identity Class" (persons who have had their "Identit[ies] . . . expropriated or exploited by the UFC"). Compl. ¶¶ 39, 47.  Plaintiffs allege that, as a result of the alleged anticompetitive scheme, the UFC has enhanced and maintained its market power in the Relevant Markets and used that power to artificially suppress compensation to Plaintiffs and members of the Bout and Identity Classes.

---

[1] "Plaintiffs" in these related actions are Elite Professional MMA Fighters Cung Le, Nathan Quarry, Jon Fitch, Luis Javier Vazquez, Dennis Lloyd Hallman, Brandon Vera, Pablo Garza, Gabe Ruediger, Mac Danzig, Kyle Kingsbury, and Darren Uyenoyama. "Defendant" or the "UFC" refers to Defendant Zuffa, LLC. References to "Compl." are to the complaint filed in the matter of *Cung Le, et al. v. Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC*, Case No. 5:14-cv-05484-EJD.

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD
1
Joint Case Management Conference Statement

The UFC has obtained and maintained these dominant market positions through its exclusionary scheme. The scheme involves, among other things, (a) entering exclusive contracts with Elite MMA Fighters that effectively blocked the vast majority from fighting for rivals, (b) impairing and then acquiring multiple rival promotion companies, and (c) entering exclusive agreements with key sponsors and venues. The UFC's exclusive contracts with Fighters are set up so that they effectively lock Fighters into the UFC in perpetuity.  The contracts collectively operate as a significant barrier to entry by rival promoters in the Relevant Markets. As a result of its scheme, the UFC has foreclosed—and faces no—competition in the market for promoting live Elite MMA Events, relegating all other MMA promotional outfits to "minor league" status.

The UFC's exclusionary scheme and dominant market positions allow it to exploit UFC Fighters by operating as a monopsony in the market for Elite MMA Fighter services.  Elite MMA fighters have nowhere else to turn to sell their services.  As a result, the UFC's Fighters are all compensated a mere fraction of what they would make in a competitive market. Rather than earning paydays comparable to boxers, a sport with many natural parallels, all of the UFC's MMA Fighters are substantially undercompensated despite the punishing—and popular—nature of their profession.  The UFC's position that it is paying its Fighters more than it would in a competitive market where the UFC had to compete with other promotion companies for Fighter services defies economic logic and common sense.  Because, among other reasons, all of the UFC Fighters in the Bout Class are similarly situated to each other in that, *e.g.*, each was undercompensated by the UFC as a result of the challenged conduct, and because all of the UFC Fighters in the Identity Class are similarly situated to each other in that, *e.g.*, each was undercompensated by the UFC as a result of the challenged conduct, certification of both classes under Fed. R. Civ. P. 23(b)(2) and (b)(3) is warranted.

**b.  Defendant's Statement**

Defendant denies that its contracts with athletes, venues, sponsors, and television networks are anticompetitive or foreclose competition, either individually or in the aggregate. These types of contracts are common and widely used in sports and entertainment and in other businesses, and encourage the parties to invest in mutually beneficial promotional activities and prevent competitors from free-riding on those investments. Defendant believes that the challenged conduct has and

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD
2
Joint Case Management Conference Statement

continues to benefit consumers and fighters by increasing demand for fighter services and increasing the supply of MMA events. Defendant also contends that many of the challenged contractual provisions enable Defendant to pay or otherwise compensate fighters more than it would otherwise and that the mandated elimination of provisions challenged by Plaintiffs would result in lower compensation for fighters.  Plaintiffs' characterization of Defendant's position in the above paragraph – that "it is paying its Fighters more than it would in a competitive market" – is wrong.  Defendant's business is in fact competitive; that a firm in a competitive business may pay more, for example, for a longer-term exclusive contract than a shorter-term non-exclusive contract is perfectly consistent with economic logic and common sense.

Defendant contends that rivals have ample access to necessary competitive inputs and that competition in the MMA industry has flourished accordingly. Further, Defendant believes that its success as a promoter is due to its hard work, investments, and foresight in developing professional MMA from the fringe to a successful mainstream sport enjoyed by millions of people around the world. New promoters have entered the market and successfully contracted with fighters, secured venues, and attracted sponsors and media distribution. Today, MMA is one of the fastest growing spectator sports in the world and athletes have more opportunities than ever before to participate in MMA events and/or to receive greater compensation.

In short, Defendant contends that its practices are wholly lawful under the Sherman Act, that the Complaints fail to state a cause of action, and that the action is not properly maintained as a class action.

On February 27, 2015 and April 10, 2015, Defendant filed motions to dismiss Plaintiffs' Complaints.  On April 10, 2015 and April 21, 2015, Plaintiffs filed their oppositions to Defendant's motions to dismiss.  On May 1, 2015, Defendant will file its reply.

3.   **LEGAL ISSUES**

   **a. Plaintiffs' Statement**

To prevail on the merits of these claims brought under Section 2 of the Sherman Act, 15 U.S.C. § 2, Plaintiffs must demonstrate at trial that the UFC (1) possessed monopoly or monopsony power, (2) willfully acquired or maintained that power through exclusionary conduct, and (3) caused antitrust

3

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD
Joint Case Management Conference Statement

injury. *MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1130 (9th Cir. 2004); *see also Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 596-97 (1985).  To succeed in obtaining certification of the Bout and Identity Classes, Plaintiffs must satisfy the elements of Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3).

**b.  Defendant's Statement**

The legal issues in this case include, but are not limited to:

1.  Whether the Plaintiffs have stated a valid claim for relief under the Sherman Act;

2.  Whether Plaintiffs and/or the putative class members have standing to assert the claims proposed in the Complaints;

3.  Whether the alleged "Elite Professional MMA Fighter" market is a legally cognizable relevant antitrust market;

4.  Whether the promotion of "Elite Professional MMA bouts" market is a legally cognizable relevant antitrust market;

5.  The proper definition of the relevant  markets;

6.  The proper definition of the relevant geographic markets;

7.  Whether Defendant has monopsony power in the relevant input market;

8.  Whether Defendant has monopoly power in the relevant output market;

9.  Whether there are legitimate justifications for Defendant's alleged conduct;

10. Whether Defendant engaged in anticompetitive conduct;

11. Whether Defendant's alleged conduct foreclosed competition in the relevant markets;

12. Whether Plaintiffs are appropriate representatives of the putative classes;

13. Whether this action is suitable for class treatment under Federal Rule of Civil Procedure 23;

14. Whether Plaintiffs and/or members of the putative class have been injured by Defendant's alleged anticompetitive conduct; and

15. Whether and the extent to which Defendant's alleged conduct caused damage to Plaintiffs or any member of the putative class.

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

4

Joint Case Management Conference Statement

4.   **MOTIONS**

Motions to Transfer, Consolidate, Appoint Interim Class Counsel, and Dismiss have been filed and are pending. *See* Appendix A.

**Motion to Transfer Venue**

In Plaintiffs' view, the UFC's Motion to Transfer (Dkt. 31) should be heard with the Motion to Dismiss at the hearing set for July 23, 2015. The UFC noticed the Motion to Transfer for May 7 when it was filed and asked the Court to advance the hearing date and adopt a briefing schedule other than that to which the parties had agreed for responsive motions. *See* Dkt. 32. Plaintiffs opposed the motion to advance, pointing out that the parties had already stipulated to a briefing schedule.  The Court denied the UFC's motion to advance the hearing date and briefing schedule. *See* Dkt. No. 51. For the convenience of the Court and counsel, Plaintiffs propose that the Motion to Transfer be heard with the Motion to Dismiss on July 23, 2015.

In Defendant's view, the Motion to Transfer Venue, which was filed in the *Le*, *Vazquez*, and *Vera* cases on January 30, 2015, should be heard as currently scheduled on May 7, 2015.  On February 10, after briefing on the issue of whether the Stipulation regarding responses to the Complaint applied to the Transfer Motion, the Court resolved the schedule for hearing the Transfer Motion, denying Defendant's motion to advance the hearing on the Motion to Transfer Venue to March 26, and leaving the hearing set for May 7.  After Defendant filed its initial Motion to Transfer Venue, Plaintiffs filed the *Ruediger* and *Kingsbury* actions. Defendant filed Motions to Transfer Venue in the *Ruediger* action on March 6, 2015 and in the *Kingsbury* action on April 2, 2015, neither of which involved new issues beyond the original briefing.  Briefing is now complete on the Transfer Motion. In Defendant's view, the Motion to Transfer Venue should be heard on May 7, prior to the hearing on the Motion to Dismiss, because doing so will promote judicial economy by allowing the threshold question of where these actions will be heard to be presented at the outset, before the Court undertakes substantial efforts in these cases, and by helping ensure that the Court ultimately responsible for the cases supervises all important phases of the cases.

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

5

Joint Case Management Conference Statement

5.   **AMENDMENT OF PLEADINGS**

The Plaintiffs request 90 days after the UFC certifies substantial completion of its document production to file a consolidated amended complaint or advise that they will stand on the original Complaints.  In Plaintiffs' view, as confirmed by the consolidated briefs on the pending motion to dismiss, all of the Complaints filed to date are substantially identical, other than the names and identities of the Plaintiffs, a consolidated complaint merely for the purposes of combining the existing complaints into one document is procedurally unnecessary and will serve only to delay the proceedings. As discussed below in Section 10, the parties agree that the cases should be consolidated for pre-trial purposes.  Plaintiffs believe that a single complaint could be chosen as the operative complaint to deal with the UFC's housekeeping concerns.

Defendant believes that the five cases should be consolidated and, if the Complaints are not dismissed with prejudice, an amended consolidated complaint should be filed within thirty days (30) days after the Court's ruling on the Motion to Dismiss. A consolidated complaint would increase efficiency by, for example, eliminating the need for duplicative filings, eliminating the need to cross-reference different paragraph numbers in different complaints that contain the same allegations, potentially having to file five different responses, etc.

6.   **EVIDENCE PRESERVATION**

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information. The parties have met and conferred concerning the reasonable and proportionate steps to preserve evidence relevant to the issues in this Action and represent that they have taken, or will take, appropriate steps to preserve such evidence. In the event that any issue arises as to evidence preservation, the Parties shall meet and confer; and, if necessary, seek Court assistance.

7.   **DISCLOSURES**

The parties shall exchange their Rule 26(a) disclosures no later than May 8, 2015.

8.   **DISCOVERY**

The parties held an in-person Rule 26(f) conference on April 15, 2015 and discussed related issues by phone on other occasions.

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD
6
Joint Case Management Conference Statement

The parties are following the eDiscovery Guidelines of the Northern District of California. Plaintiffs propounded their first sets of document requests via email on Sunday, April 26. As discussed more fully below, Defendant believes discovery should be stayed pending resolution of the Motion to Transfer Venue and the Motion to Dismiss. Plaintiffs believe discovery should proceed immediately, and without delay.

Plaintiffs have initiated third-party discovery in this District to obtain and seek preservation of social media relevant to this litigation (in part because Plaintiffs had reason to believe that certain social media information may have been deleted after the filing of the first Complaint in this matter).

Defendant believes that this third-party discovery, which Defendant believes Plaintiffs prematurely served prior to the Rule 26(f) conference, was improper. Defendant understands that the third parties have objected to the propounded discovery on this and other grounds. Defendant has investigated and met and conferred with Plaintiffs over their suspicions regarding the potential post-filing deletion of social media information, and found no evidence to substantiate this suspicion. To the contrary, and as discussed during the Rule 26(f) conference, it appears that Plaintiffs did not correctly utilize the search functions of the targeted social media, and therefore, were unable to initially locate certain information. Nonetheless, Defendant has undertaken extensive and costly efforts to preserve potentially relevant documents and ESI, including social media.

9.   **CLASS ACTIONS**

   **a. Plaintiffs' Statement**

Plaintiffs satisfy the requirements of Fed. R. Civ. P. 23. Plaintiffs intend to move to certify two classes pursuant to Rules 23(a), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure. First, Plaintiffs will seek certification of a "Bout Class" consisting of "All persons who competed in one or more live professional UFC-promoted MMA bouts taking place or broadcast in the United States during the Class Period." Compl. ¶ 39. The Bout Plaintiffs allege that the UFC's monopolization and monopsonization scheme artificially suppressed compensation of members of the Bout Class below competitive levels. *Id*. ¶ 46. Second, Plaintiffs will seek certification of an "Identity Class" consisting of "Each and every UFC Fighter whose Identity was expropriated or exploited by the UFC, including in UFC Licensed Merchandise and/or UFC Promotional Materials, during the Class Period in the United

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

7

Joint Case Management Conference Statement

States." *Id.* ¶ 47. The Identity Plaintiffs claim that the UFC's alleged monopolization and monopsonization scheme artificially suppressed compensation for their identity rights below competitive levels. *Id.* ¶ 54. As to both classes, because the conduct is ongoing, Plaintiffs will seek certification of an injunctive relief class under Rule 23(b)(2) and a damages class under Rule 23(b)(3).

In brief, the proposed Bout and Identity Classes should both be certified because, among other reasons, (a) all Plaintiffs and members of the Bout and Identity Classes have interests that are aligned in that all were undercompensated by the UFC due to the UFC's anticompetitive scheme that enhanced and maintained the UFC's monopoly and monopsony power, and which caused the UFC to pay all of the members of both classes less than each would have been paid in a competitive market; (b) the class action procedure is the best, and likely the only, means of resolving the issues relating to the UFC's anticompetitive misconduct because the case will focus on the conduct of the UFC, and the cost of prosecuting such claims individually would be prohibitive for all or nearly all of the class members; and (c) the identities of all members of both classes (defined as each person who "competed" for the UFC (Bout Class) or who had his or her "Identity expropriated or exploited by" the UFC (Identity Class)) are objectively and straightforwardly ascertainable from the books and records of the UFC (contrary to the UFC's implication, the word "elite" does not appear in either class definition). *See, e.g., In re High Tech Antitrust Litig.*, 985 F. Supp. 2d 1167 (N.D. Cal. 2013) (certifying under Fed. R. Civ. P. 23(b)(3) a class of tens of thousands of employees with dozens of different job titles at varying compensation levels whose compensation was allegedly diminished due to anticompetitive agreements between several high-tech companies not to poach employees).

**b. Defendant's Statement**

This case is not appropriate for class treatment for a number of reasons, including that individual issues will predominate over class issues with regard to both impact and damages. The members of the putative class are a widely divergent group who run the gamut from established stars who negotiate for and obtain compensation well into the seven figures to journeymen who may have participated in one or two fights at the per-bout minimum that Defendant offered at the time. In addition, there is a conflict among the putative class members because many fighters benefit from the alleged conduct to varying degrees. As just one example, mandatory changes to Defendant's

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

8

Joint Case Management Conference Statement

contractual terms requested by Plaintiffs (e.g., barring longer-term contracts or restrictions on the ability to contract for ancillary rights) could result in reduced compensation to some, if not all, fighters. In addition, (1) the class representatives are neither adequate nor typical of the putative class; (2) a class action is not superior to other means of resolving this dispute; and (3) the class is unascertainable and unmanageable because of the difficulty in ascertaining who is in the putative classes of so-called "Elite" fighters and which of them were allegedly injured. *See, e.g., In re NCAA Student-Athlete Name & Likeness Licensing Litigation*, 2013 WL 5979327, *8 (N.D. Ca. 2013) (denying certification of proposed damages subclass because (1) "the 'fact of injury' [could not] be determined by a 'virtually mechanical task'" and (2) the plaintiffs did not have "a straightforward method" for identifying subclass members).

10.   **RELATED CASES AND CONSOLIDATION**

All of the cases filed in this District have been related to the lead case, *Le et al. v. Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC* ("*UFC*"), No. 5:14-cv-05484-EJD, by prior orders of the Court. *See Le*, Dkt. Nos. 18-19, 59 & 68.  Those cases include: (1) *Vazquez et al. v. UFC*, No. 5:14-cv-05591-EJD; (2) *Vera et al. v. UFC*, No. 5:14-cv-05621-EJD; (3) *Ruediger et al. v. UFC*, No. 5:15-cv-00521-EJD; and (4) *Kingsbury et al. v. UFC*, No. 5:15-cv-01324-EJD.

The parties agree that the cases should be consolidated. *See* Dkt. Nos. 52, 62 & 66. However, they disagree on whether the cases should be consolidated for pre-trial purposes only or for trial.

11.   **RELIEF SOUGHT**

a.   **Plaintiffs' Statement**

Plaintiffs seek the following relief: treble damages (measured as the additional compensation Plaintiffs and other members of the Bout and Identity Classes would have earned or received absent the anticompetitive scheme alleged in the Complaints); recovery of costs, attorneys' fees, and expenses; a determination declaring that this action may be maintained as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3), directing that reasonable notice of this action, as provided by Fed. R. Civ. P. 23(c)(2), be given to the Classes, and declaring the Plaintiffs as the representatives of the Classes; judgment against Defendant and in favor of Plaintiffs; injunctive relief on behalf of the Classes barring

9

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

Joint Case Management Conference Statement

Defendant from engaging in the anticompetitive scheme alleged in the Complaints; and such other and further relief as the Court deems just and proper.

**b. Defendant's Statement**

Defendant intends to oppose all of Plaintiffs' requested relief and to seek an award of all applicable fees and costs.

12. **SETTLEMENT AND ADR**

The parties filed ADR Certifications and a Stipulation and Proposed Order concerning an ADR process. The Court entered an Order approving the parties' Stipulation on April 17, 2015.

That Stipulation reflected the parties' agreement that mediation would be premature at this stage in light of the pending and anticipated motions and other factors. It further reflected the parties' belief that meeting and conferring on the appropriate date for mediation would be more productive when the case is further advanced. The Stipulation further provided that the parties shall meet and confer no later than September 30, 2015 to agree upon an appropriate mediator and a schedule for mediation.

13. **CONSENT TO A MAGISTRATE**

The parties do not consent to assignment of this case to a magistrate judge for all purposes.

14. **OTHER REFERENCES**

The parties do not believe that this case is suitable for reference to binding arbitration or a special master. At this time, all related actions are pending in this District and have been designated as related.

15. **NARROWING OF ISSUES**

The parties have explored avenues for narrowing the issues and will continue to do so, but respectfully submit that narrowing the issues is premature at this time.

16. **EXPEDITED SCHEDULE**

Scheduling is addressed below. In light of the scope of the allegations in the Complaints, the parties do not believe it is appropriate to expedite any issues for resolution.

17. **SCHEDULING**

The parties have met and conferred but are unable to agree upon a comprehensive schedule at this point.  Plaintiffs' proposed schedule is set out in Appendix B hereto and discussed below as part of

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

10

Joint Case Management Conference Statement

1  "Further Proceedings."  Defendant has not proposed a schedule at this time because it believes it is

2  premature to do so pending resolution of its Motions to Transfer and Dismiss.

3      **A.  Discovery**

4          **a.  Plaintiffs' Statement**

5        As noted above, Plaintiffs believe that discovery should commence immediately.  In Plaintiffs'

6  view, there is also no good reason to delay fact discovery.  First, the pendency of the Motion to Transfer

7  is irrelevant to the issue given that discovery would go forward whether the cases are venued in this

8  Court or in a federal court in Nevada.  Defendant's concern about judicial efficiencies in awaiting a

9  decision on its motion to transfer to begin discovery is misplaced and will only serve to set back the

10  orderly advancement of this case.    Second, neither the Federal Rules nor the Local Rules or

11  proceedings of this district provide for an automatic stay pending the filing of a motion to dismiss, and

12  for good reason.  *See Svenson v. Google, Inc.*, No. 13-cv-04080-BLF, 2014 U.S. Dist. LEXIS 165658,

13  *2 (N.D. Cal. Nov. 25, 2014) (denying motion to stay discovery pending motion to dismiss, noting

14  "[h]ad the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6) would

15  stay discovery, the Rules would contain a provision to that effect. In fact, such a notion is directly at

16  odds with the need for expeditious resolution of litigation.") (quotation omitted). Discovery in multiple

17  complex cases in this District has proceeded during the pendency of motions to dismiss.  *See, e.g.*, *In re*

18  *Lithium Ion Batteries Antitrust Litig.*, 2013 U.S. Dist. LEXIS 72868, *31 (N.D. Cal. May 21, 2013)

19  ("At this time, the Court will not disallow discovery simply because the Defendants anticipate filing

20  motions to dismiss"); *In re Capacitors Antitrust Litig.*, No. 3:14-cv-03264-JD, ECF 514 (N.D. Cal. Jan.

21  15, 2015) (permitting discovery into enumerated subjects by plaintiffs while a motion to dismiss was

22  pending limited only because of concern by Department of Justice that discovery would disrupt its

23  investigation); *In re Capacitors Antitrust Litig.*, No. 3:14-cv-03264-JD, ECF No. 632 (N.D. Cal. Apr.

24  17, 2015) (lifting limited discovery stay while motion to dismiss remains pending once Department of

25  Justice dropped its objection to discovery proceeding).  The same should be true here, where

26  negotiations over Plaintiffs' document requests, served upon the Defendant on April 26, will not begin

27  until at least the end of May, and will then likely extend over several weeks after that. Most likely,

28  document productions will take place over the next several months.  Delaying the outset of that lengthy

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD
11
Joint Case Management Conference Statement

process from occurring pending the motion to dismiss will interpose a substantial amount of unnecessary delay in a case—which alleges ongoing harm to thousands of Fighters—that has been pending for four and a half months.  Defendant has not made the case for delaying the discovery process from getting underway, especially given that a quick look at its motion to dismiss reveals that it effectively asks the Court to resolve inherently factual issues relating to the elements of Plaintiffs' claims, including "relevant market," and other matters not typically resolved on summary judgment let alone on a Rule 12 motion.  Third, and more generally, delaying discovery redounds to the detriment of plaintiffs due to the inherent loss of memory and potential loss of documentary evidence that occurs over time (including from third parties who are under no obligation to preserve documents).  Accordingly, the parties can and should begin to work now on discovery planning and management.  Even if there is no stay, one would not reasonably expect document production even to begin for many weeks.  Plaintiffs' proposed schedule contemplates that fact discovery will require twelve months after it begins.  Plaintiffs suggest that it begin now.

### b.  Defendant's Statement

Defendant intends to move for a stay of discovery pending disposition of the motions to dismiss and to transfer because it will promote judicial and litigant economy and will not prejudice Plaintiffs.  First, a stay of discovery pending a decision on the Motions to Transfer will promote judicial economy.  A stay will ensure that the Court that ultimately supervises the action makes important decisions on issues such as discovery and scheduling and that the transferee Court does not need to expend "its energies familiarizing itself with the intricacies of a case that would be heard by another judge." *Rivers v. Walt Disney Company*, 980 F. Supp. 1358, 1360 (C.D. Ca. 1997).  It will also ensure that duplicative efforts by the transferee judge do not occur since "any efforts on behalf of this Court concerning case management will most likely have to be replicated by the judge that is assigned to handle the consolidated litigation." *Id.* at 1360-61.

Second, staying discovery pending resolution of the motion to dismiss is appropriate here because, as the Supreme Court has noted, discovery in an antitrust case can be enormously burdensome and expensive.  This is particularly true in light of the massive discovery that Plaintiffs seek here; their First Request for Production emailed on April 26 contained 59 separate document requests

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

12

Joint Case Management Conference Statement

encompassing nearly every aspect of Zuffa's business.  If these cases are dismissed, in whole or in part, these enormous costs can be avoided, or if the case is narrowed, at least streamlined or tailored to the allegations that remain in the case.  Clearly, "the next several months" of discovery that Plaintiffs contemplate would be an enormously expensive undertaking.[2]  That burden, in a case that may be dismissed or limited through a dispositive motion, should not fall on Defendant when such a burden can be minimized or reduced through a brief stay of discovery.

Many courts in this Circuit have stayed discovery pending a motion to dismiss where, as here, proceeding with discovery would be burdensome, costly, and wasteful if the case is dismissed or limited.   The Ninth Circuit has explained that the "purpose of Fed. R. Civ. P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987).  This is particularly true in antitrust cases where "the costs of discovery in such actions are prohibitive." *Id.*  The "sounder practice" is "to determine whether there is any reasonable likelihood that plaintiffs can construct a claim before forcing the parties to undergo the expense of discovery." *Id.*  Courts in this Circuit and District have routinely stayed discovery under similar circumstances to avoid subjecting defendants to costly and time consuming discovery. *See, e.g., Jarvis v. Regan*, 833 F.2d 149, 155 (9th Cir. 1987);  *Gibbs v. Carson*, 2104 WL 172187, *3 (N.D. Cal. 2014);  *In re Graphics Processing Units Antitrust Litigation*, 2007 WL 2127577 (N.D. Cal. 2007) (discovery stayed pending motion to dismiss even where documents for production had already been assembled and produced to the grand jury).

Finally, a brief stay of discovery pending the outcome of these two important motions will not prejudice Plaintiffs.  Plaintiffs filed their fifth Complaint in these cases less than six weeks ago.

**B.  Next Case Management Conference**

---

[2] Most of the cases cited above by Plaintiffs denying a stay involved follow-ons to grand jury investigations of price fixing where the defendants had already collected and produced documents to the grand jury; the additional burden of collection and production in those circumstances is much less than here.

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

13

Joint Case Management Conference Statement

The parties propose that the next Case Management Conference be scheduled to coincide either with the currently-scheduled June 11 hearing on the Interim Class Counsel Motion or the July 23 hearing on the Motion to Dismiss, at which point the schedule for further Case Management Conferences can be discussed.

### C.  Further Proceedings

#### a.      Plaintiffs' Statement

Plaintiffs believe that there is no good reason to delay adopting a comprehensive schedule for the case now.  Plaintiffs have proposed a schedule, set out below as Appendix B, that would begin when the Court allows fact discovery to proceed (which Plaintiffs believe should be now and Defendant believes should await resolution of pending motions).  Plaintiffs' schedule provides for: twelve months of fact discovery, followed by class and merit related expert discovery; class certification briefing; class certification argument; summary judgment briefing; pre-trial conference; and a trial in or around the fall of 2017 (presuming fact discovery gets underway soon).

#### b.      Defendant's Statement

Defendant believes that setting a comprehensive schedule should await resolution of the Motion to Transfer and the Motion to Dismiss, and Plaintiffs and Defendants should meet and confer to attempt to agree upon a schedule once those motions are resolved.

### 18.   TRIAL

Plaintiffs have demanded a trial by jury and expect that trial of this Action shall require twenty (20) trial days.

### 19.   DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

#### a.  Plaintiffs' Disclosure

Plaintiffs are eleven individuals who seek to represent themselves and similarly situated persons in connection with the claims asserted in the Complaints in the Action and described above. Other than the named Plaintiffs themselves and the Classes they seek to represent, there is no other interest to report that Plaintiffs are aware of at this time.

#### b.  Defendant's Disclosure

Defendant filed its Certificate of Interested Persons and Entities on February 13, 2015

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD
14
Joint Case Management Conference Statement

(*Le* Dkt. 55) and April 10, 2015 (*Kingsbury* Dkt. 15) and identified the following persons or entities to have either: (1) a financial interest in the subject matter in controversy or in a party to the proceeding; or (2) any other kind of interest that could be substantially affected by the outcome of the proceeding:

- Fertitta Business Management, LLC, owns an approximate 72% interest in Zuffa, LLC.  Fertitta Business Management, LLC is wholly owned by Fertitta family trusts.
- A Frank J. Fertitta III family trust owns an approximate 4.5% interest in Zuffa, LLC.
- A Lorenzo J. Fertitta family trust owns an approximate 4.5% interest in Zuffa, LLC.
- Dana White's family trusts own an approximate 9% interest in Zuffa, LLC.
- January Capital owns an approximate 10% interest in Zuffa, LLC.  January Capital is owned by Flash Entertainment, FZ-LLC, which is in turn owned by the Executive Affairs Authority of Abu Dhabi.
- Zuffa Pipco 1, LLC, an entity established for an employee Participation Interest Plan, owns an approximate 0.08% interest in Zuffa, LLC.

20.     **PROFESSIONAL CONDUCT**

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

21.     **OTHER MATTERS**

Prior to resolution of the currently pending motions, the parties have not identified any other matters that may facilitate the just, speedy, and inexpensive disposition of this action.

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

15

Joint Case Management Conference Statement

1   DATED: April 30, 2015

2   JOSEPH SAVERI LAW FIRM, INC.

3   By:      /s/ Joseph R. Saveri
4            Joseph R. Saveri

5   Joseph R. Saveri (State Bar No. 130064)
    Joshua P. Davis (State Bar No. 193254)
6   Andrew M. Purdy (State Bar No. 261912)
    Matthew S. Weiler (State Bar No. 236052)
7   Kevin E. Rayhill (State Bar No. 267496)
    JOSEPH SAVERI LAW FIRM, INC.
8   505 Montgomery Street, Suite 625
    San Francisco, California 94111
9   Telephone: (415) 500-6800
    Facsimile:  (415) 395-9940
10  jsaveri@saverilawfirm.com
    jdavis@saverilawfirm.com
11  apurdy@saverilawfirm.com
    mweiler@saverilawfirm.com
12  krayhill@saverilawfirm.com

13  Benjamin D. Brown (State Bar No. 202545)
    Richard A. Koffman (*pro hac vice*)
14  Hiba Hafiz (*pro hac vice* pending)
    COHEN MILSTEIN SELLERS & TOLL, PLLC
15  1100 New York Ave., N.W., Suite 500, East Tower
    Washington, DC 20005
16  Telephone: (202) 408-4600
    Facsimile:  (202) 408 4699
17  bbrown@cohenmilstein.com
    rkoffman@cohenmilstein.com
18  hhafiz@cohenmilstein.com

19

20

21

22

23

24

25

26

27

28

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD
16
Joint Case Management Conference Statement

Eric L. Cramer (*pro hac vice*)
Michael Dell'Angelo (*pro hac vice*)
Patrick Madden (*pro hac vice*)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
ecramer@bm.net
mdellangelo@bm.net
pmadden@bm.net

Robert C. Maysey (State Bar No. 205769)
Jerome K. Elwell (*pro hac vice*)
WARNER ANGLE HALLAM JACKSON &
FORMANEK PLC
2555 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Telephone: (602) 264-7101
Facsimile: (602) 234-0419
rmaysey@warnerangle.com
jelwell@warnerangle.com

Eugene A. Spector (pro hac vice pending)
Jeffrey J. Corrigan (pro hac vice pending)
Jay S. Cohen (pro hac vice pending)
William G. Caldes (pro hac vice pending)
SPECTOR ROSEMAN KODROFF & WILLIS, P.C.
1818 Market Street – Suite 2500
Philadelphia, PA  19103
Telephone:  (215) 496-0300
Facsimile:  (215) 496-6611
espector@srkw-law.com
jcorrigan@srkw-law.com
jcohen@srkw-law.com
wcaldes@srkw-law.com

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD
17
Joint Case Management Conference Statement

Frederick S. Schwartz (State Bar No. 145351)
LAW OFFICE OF FREDERICK S. SCHWARTZ
15303 Ventura Boulevard, #1040
Sherman Oaks, CA 91403
Telephone: (818) 986-2407
Facsimile:  (818) 995-4124
fred@fredschwartzlaw.com

*Attorneys for Individual and Representative*
*Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Luis*
*Javier Vazquez, Dennis Lloyd Hallman, Brandon*
*Vera, Pablo Garza, Gabe Ruediger, Mac Danzig,*
*Kyle Kingsbury, and Darren Uyenoyama*

BOIES, SCHILLER & FLEXNER LLP

By:        */s/ William A. Isaacson*
            William A. Isaacson

William A. Isaacson (*Pro Hac Vice*)
5301 Wisconsin Ave, NW
Washington, DC 20015
Telephone: (202) 237-2727;
Facsimile:  (202) 237-6131
wisaacson@bsfllp.com

John F. Cove, Jr. (State Bar No. 212213)
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000;
Facsimile:  (510) 874-1460
jcove@bsfllp.com

Richard J. Pocker (State Bar No. 114441)
BOIES, SCHILLER & FLEXNER LLP
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone: (702) 382 7300;
Facsimile:  (702) 382 2755
rpocker@bsfllp.com

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

18

Joint Case Management Conference Statement

Donald J. Campbell (Pro Hac Vice to be filed)
J. Colby Williams (Pro Hac Vice to be filed)
CAMPBELL & WILLIAMS
700 South 7th Street
Las Vegas, Nevada 89101
Telephone: (702) 382-5222;
Facsimile:  (702) 382-0540
DJC@campbellandwilliams.com
JCW@campbellandwilliams.com

*Attorneys for Defendant Zuffa, LLC, d/b/a Ultimate
Fighting Championship and UFC*

5:14-cv-05484-EJD, 5:14-cv-05591-EJD
5:14-cv-05621-EJD, 5:15-cv-00521-EJD
5:15-cv-01324-EJD

19

Joint Case Management Conference Statement