**WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP**
Don Springmeyer
Nevada Bar No. 1021
Bradley S. Schrager
Nevada Bar No. 10217
Justin C. Jones
Nevada Bar No. 8519
3556 E. Russell Road, Second Floor
Las Vegas, Nevada 89120
(702) 341-5200/Fax: (702) 341-5300
dspringmeyer@wrslawyers.com
bschrager@wrslawyers.com
jjones@wrslawyers.com
*Attorneys for Plaintiffs*
*(Additional counsel appear on signature page)*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Cung Le, Nathan Quarry, and Jon Fitch, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>vs.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>Defendant. | Lead Case No. 2:15-cv-01045 RFB-(PAL)<br><br>Consolidated Case Nos.:<br>    2:15-cv-01046-RFB-(PAL)<br>    2:15-cv-01055-RFB-(PAL)<br>    2:15-cv-01056-RFB-(PAL)<br>    2:15-cv-01057-RFB-(PAL)<br><br>**PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO STAY** |
| And Related Consolidated Cases | |

## Table of Contents

I.     INTRODUCTION ................................................................................................. 1

II.    BACKGROUND ................................................................................................ 2

     A.     The UFC Has Engaged in an Anticompetitive Scheme to Exclude Rivals and Suppress Compensation to Elite MMA Fighters. ........................................... 2

     B.     The UFC's Motion to Dismiss Is Fatally Flawed ........................................ 5

     C.     Plaintiffs' Discovery Is Relevant to the Issues Raised in the UFC's Motion to Dismiss Because the UFC's Motion Relies Heavily Upon Challenges to the Well Pleaded Facts in the Complaint ............................................................. 5

III.   LEGAL STANDARD ....................................................................................... 8

IV.   ARGUMENT .................................................................................................. 11

     A.     The UFC's Motion to Stay Should Be Denied Because its Rule 12(b)(6) Motion Is Highly Unlikely to Succeed and Discovery Is Required to Resolve the Factual Issues that the UFC Raises. .......................................................... 11

         1.     The UFC's Motion to Dismiss Is Fatally Flawed. ................................ 11

         2.     Plaintiffs' Discovery Requests Bolster the Complaint and Pertain to the UFC's Factual Challenges in the Motion to Dismiss.......................... 15

     B.     No Other Relevant Factor Favors a Stay. ................................................ 18

         1.     A Stay Would Prejudice Plaintiffs. ..................................................... 18

         2.     The UFC's Motion to Dismiss Does not Raise Dispositive Legal Flaws. ........... 19

         3.     The Supposed Complexity of This Action Does not Favor a Stay. ...................... 20

V.     CONCLUSION ............................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ACT, Inc. v. Sylvan Learning Sys.*,
  104 F. Supp. 2d 1096 (N.D. Iowa 1999) .................................................... 13

*Allied Orthopedic Appliances, Inc. v. Tyco Health Care Grp. LP*,
  592 F.3d 991 (9th Cir. 2010) .................................................................... 17

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................. 9, 19

*Blankenship v. Hearst Corp.*,
  519 F.2d 418 (9th Cir. 1975) ....................................................................... 8

*Castro v. Sanofi Pasteur, Inc.*,
  No. 2:11-cv-7178 (D.N.J. July 18, 2012) .................................................... 8

*Continental Ore Co. v. Union Carbide & Carbon Corp.*,
  370 U.S. 690 (1962) ................................................................................. 11

*Costco Wholesale Corp. v. Maleng*,
  522 F.3d 874 (9th Cir. 2008) ................................................................... 11

*Davis v. Nevada*,
  2014 U.S. Dist. LEXIS 44626 (D. Nev. Mar. 31, 2014) ........................... 9, 20

*DM Research, Inc. v. College of Am. Pathologists*,
  170 F.3d 53 (1st Cir. 1999) ..................................................................... 15

*Forest River, Inc. v. Heartland Rec. Vehicles, LLC*,
  2012 U.S. Dist. LEXIS 130689 (N.D. Ind. Sept. 12, 2012) ......................... 8

*Frias Holding Co. v. Greenberg Traurig, LLP*,
  No. 2:11-cv-160, 2015 WL 1268403 (D. Nev. Mar. 19, 2015) .................... 9

*Grand Canyon Skywalk Dev. LLC v. Steele*,
  2014 U.S. Dist. LEXIS 1550 (D. Nev. Jan. 6, 2014) ............................... 10

*In re Capacitors Antitrust Litig.*,
  No. 3:14-cv-3264 (N.D. Cal. Jan. 14, 2015) ................................................ 8

*In re Graphics Processing Units Antitrust Litig.*,
  No. 06-cv-7417, 2007 WL 2127577 (N.D. Cal. July 24, 2007) ................ 9, 20

*In re Lithium Ion Batteries Antitrust Litig.*,
  2013 U.S. Dist. LEXIS 72868 (N.D. Cal. May 21, 2013) .............................. 8

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO STAY

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
 580 F. Supp. 2d 896 (N.D. Cal. 2008)...................................................................................16

*Jarvis v. Regan*,
 833 F.3d 149 (9th Cir. 1987)...............................................................................................20

*Johnson v. Cheryl*,
 2013 U.S. Dist. LEXIS 3342 (D. Nev. Jan. 9, 2013)...........................................................19

*Kor Media Group, LLC v. Green*,
 294 F.R.D. 579 (D. Nev. 2013)..............................................................................................9

*McGee v. Donahoe*,
 2014 U.S. Dist. LEXIS 139489 (D. Nev. Sept. 30, 2014)....................................................19

*Morrison v. Quest Diagnostics, Inc.*,
 2015 U.S. Dist. LEXIS 46541 (D. Nev. Apr.7, 2015)..........................................................19

*New York v. Hill*,
 528 U.S. 100 (2000)..............................................................................................................18

*Paddock Publishers v. Chicago Tribune Co.*,
 103 F.3d 42 (7th Cir. 1996)..................................................................................................17

*Puckett v. Schnog*,
 2013 U.S. Dist. LEXIS 63635 (D. Nev. May 3, 2013)..........................................................19

*Rosenstein v. Clark County Sch. Dist.*,
 No. 13-cv-1443, 2014 WL 2835074 (D. Nev. June 23, 2014)......................................passim

*Tele Atlas N.V. v NAVTEQ Corp.*,
 397 F. Supp. 2d 1184 (N.D. Cal. 2005)................................................................................13

*Tracy v. United States*,
 243 F.R.D. 662 (D. Nev. 2007)..............................................................................................15

*Tradebay, LLC v. eBay, Inc.*,
 278 F.R.D. 597 (D. Nev. 2011).......................................................................................passim

*Turner Broadcasting System, Inc. v. Tracinda Corp.*,
 175 F.R.D. 554 (D. Nev. 1997).......................................................................................1, 19

*Twin City Fire Ins. Co. v. Employers Ins. of Wausau*,
 124 F.R.D. 652 (D. Nev. 1989)..............................................................................................9

*Tyler v. Cisneros*,
 136 F.3d 606 (9th Cir. 1988)..................................................................................................3

*Universal Delaware, Inc. v. Comdata Corp.*,
 No. 2:07-cv-1078 (E.D. Pa. Nov. 12, 2009)..........................................................................8

iv

*Wood v. McEwen*,
    644 F.2d 797 (9th Cir. 1981)..................................................................................................... 1

**STATUTES**

15 U.S.C. § 2 ......................................................................................................... 2, 3, 9, 18

**OTHER AUTHORITIES**

Fed. R. Civ. P. 1 ............................................................................................... 2, 9, 18, 20

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 10, 13, 19

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO STAY

# I.     INTRODUCTION

The Court should deny the Motion to Stay filed by defendant Zuffa LLC, d/b/a Ultimate Fighting Championship and UFC (the "UFC" or "Defendant") because the UFC cannot meet its heavy burden of convincing this Court, upon a mere "preliminary peek" into the merits of the UFC's pending Motion to Dismiss, both that (a) the Complaint (defined in n. 2, *infra*) is effectively deficient on its face and thus will almost certainly be dismissed without right to re-plead, *and* that (b) discovery would be irrelevant to the issues raised in the Motion to Dismiss. *See Turner Broadcasting System, Inc. v. Tracinda Corp.*, 175 F.R.D. 554 (D. Nev. 1997) ("A district court may … stay discovery when it is *convinced* that the plaintiff will be unable to state a claim for relief." (quoting *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981) (emphasis in *Turner*)).

Plaintiffs[1] are eleven Elite Mixed-Martial Arts Fighters ("Elite MMA Fighters" or "Fighters") who have brought this antitrust class action against the UFC. Plaintiffs allege that through the UFC's predatory and anticompetitive conduct challenged in this case, the UFC is now the only major promoter of elite professional mixed martial arts competitions in the U.S. As a result of the anticompetitive scheme alleged here, the UFC has relegated all of the other MMA promoters to the "minor leagues," who feed talent into the UFC but do not compete with it. The UFC has used its ill-gotten market power to suppress compensation to Fighters for participation in bouts and for their identity rights. These Fighters literally put their health and livelihoods on the line in every bout. They are *the* critical component of the UFC's success. This case, at root, is about promoting a fair fight in the business of promoting fights.

Elite MMA Fighters, Cung Le, Nathan Quarry, and Jon Fitch, filed the first of five related cases in December 2014 in the Northern District of California. Ever since, the UFC has been fighting to delay the day it must open up its files to Plaintiffs. Despite the detailed complaints and multiple factual issues at play, it filed a motion to dismiss, which its experienced counsel must know has little chance of ending the case. The UFC then (i) moved to transfer the case to this jurisdiction, (ii) refused to consent

---

[1]     As used herein, "Plaintiffs" in these consolidated actions are Cung Le, Nathan Quarry, Jon Fitch, Luis Javier Vazquez, Dennis Lloyd Hallman, Brandon Vera, Pablo Garza, Gabe Ruediger, Mac Danzig, Kyle Kingsbury, and Darren Uyenoyama. All have fought for the UFC.

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO STAY

to appointment of interim-co-lead counsel (for unexplained reasons), (iii) rejected all efforts to compromise on discovery pending the resolution of its motion to dismiss, and finally, at issue here, (iv) asked for a blanket stay of discovery.

The UFC has not and cannot sustain its heavy burden of demonstrating that discovery should be barred pending a resolution of its Motion to Dismiss. The Complaint here is carefully drafted,[2] and the material allegations setting forth the elements of a violation of Section 2 of the Sherman Act, 15 U.S.C. § 2 ("Section 2"), are amply supported with pertinent factual detail. Delaying this case any further, in light of the deficiencies in the Motion to Dismiss, would be contrary to the Federal Rules of Civil Procedure and sound principles of case management. *See* Fed. R. Civ. P. 1 (Federal Rules should be construed "to secure the just, speedy, and inexpensive determination of every action and proceeding"). Plaintiffs have served discovery that would, *inter alia*, test a number of the defenses raised by the UFC's Motion to Dismiss. A stay would frustrate the just and speedy resolution of this matter, and thus should be denied.

## II.  BACKGROUND

### A.  The UFC Has Engaged in an Anticompetitive Scheme to Exclude Rivals and Suppress Compensation to Elite MMA Fighters.

Cung Le, Nathan Quarry and Jon Fitch filed the first of these consolidated class action cases in the Northern District of California on December 16, 2014. Dkt. 1.[3] In the following weeks, eight other Fighters filed four additional and substantially similar class action complaints,[4] all of which were consolidated by the Court. Dkt. 101. Plaintiffs, who have all fought for the UFC, allege on their own

---

[2]     As used herein, references to the Complaint ("Compl.") are to the lead case, *Le, et al. v. Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC*, Dkt. 1. Due to the substantial similarity in the complaints filed in the related cases (*Vazquez v. Zuffa, LLC*, No. 2:15-cv-1055; *Vera v. Zuffa, LLC*, 2:15-cv-1056; *Ruediger v. Zuffa, LLC*, 2:15-cv-1057; *Kingsbury v. Zuffa*, LLC, 2:15-cv-1046), Plaintiffs cite to the lead case Complaint.

[3]     Plaintiffs pleaded two separate classes of Elite MMA Fighters, the "Bout Class" (persons who have "competed in one or more live professional UFC-promoted MMA bouts") and the "Identity Class" (persons who have had their "Identit[ies] … expropriated or exploited by the UFC") (together, the "Classes"). Compl. ¶¶ 39, 47.

[4]     Luis Javier Vazquez and Dennis Lloyd Hallman filed *Vazquez v. Zuffa, LLC*, No. 2:15-cv-1055. Brandon Vera and Pablo Garza filed *Vera v. Zuffa, LLC*, 2:15-cv-1056. Gabe Ruediger and Mac Danzig filed *Ruediger v. Zuffa, LLC*, 2:15-cv-1057. Kyle Kingsbury and Darren Uyenoyama filed *Kingsbury v. Zuffa, LLC*, 2:15-cv-1046.

behalf and on behalf of those similarly situated, that, through a series of anticompetitive, illicit, and exclusionary acts, the UFC has illegally acquired and enhanced monopoly and monopsony power in violation of Section 2 of the Sherman Act and used that power to artificially suppress compensation to Plaintiffs and members of the proposed classes.[5] Plaintiffs claim the UFC's illicit scheme involves, among other things, (a) requiring, as a condition of fighting for the UFC (which is the only game in town for Elite MMA Fighters), that Fighters enter into onerous exclusive contracts that effectively blocked all of them from fighting for rivals during the primes of their careers, (b) impairing and then acquiring multiple rival promotion companies, and (c) entering exclusive agreements with key sponsors and venues. The UFC's exclusive contracts with fighters are set up so that they effectively lock Elite MMA Fighters into the UFC in perpetuity, or at least until the Fighters are no longer in the primes of their careers. Elite MMA Fighters, key venues and sponsors are all essential inputs into a successful MMA promotion company. By locking up all of these inputs, the UFC has cut off the necessary oxygen to rival promotions. And those rivals that it could not kill, it weakened and then bought. *See* Compl. ¶ 128. As a result of its scheme, the UFC has foreclosed—and faces no—competition in the market for promoting live Elite MMA Events, relegating all other MMA promotional outfits to "minor league" status. *See, e.g.*, *id.* ¶ 74 (noting that 90% of all revenue generated by MMA events is received by the UFC).

Plaintiffs' Complaint is replete with allegations, including the UFC's admissions, of the UFC's successful execution its anticompetitive scheme. For example, in November 2008, following the success of the UFC's scheme in shutting down several competitors, UFC President Dana White took credit for the competitors' demise, proclaiming "I'm the grim reaper, mother***ers." Compl. ¶ 12-13.[6] In the absence of these would-be competitors that the UFC drove out of business, the UFC was left without competition. As Lorenzo Fertitta, an owner of the UFC, publicly conceded, "[w]e are like

---

[5]     The facts as alleged must be taken as true for purposes of both a motion to dismiss, and a motion to stay discovery pending resolution of a motion to dismiss. *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 607 (D. Nev. 2011) ("At the motion to dismiss stage, the court must accept the facts alleged in the complaint as true."). Additionally, all reasonable inferences from Plaintiffs' allegations should be drawn in their favor. *Tyler v. Cisneros*, 136 F.3d 606, 607 (9th Cir. 1988) (court must give plaintiff every inference that may be drawn from well-pleaded facts).

[6]     White later bragged that he "killed" the Pride Fighting Championships promotion. Compl. ¶ 14.

football and the NFL. The sport of [MMA] is known by one name: UFC." *Id.* ¶ 8. UFC President Dana White echoed Fertitta's statement, "There was a time when [competition in the MMA industry] was neck-and-neck. That time is over … [E]verybody needs to just concede and realize we're the [expletive] NFL. Period. End of story." *Id.* ¶ 15.

While the UFC does dominate the sport of MMA much like the NFL dominates the sport of football, the UFC is not an association of rival teams that vie to sign players based on their estimated value in a competitive market, nor is it a "league" of any kind. Rather, the UFC is the only promoter of Elite MMA events; as such, it promotes both sides of every bout. Elite MMA Fighters have nowhere else to turn to sell their services. Thus, because of its anticompetitive scheme, the UFC has become a classic monopsony. As a result, the UFC's fighters are all compensated a mere fraction of what they would make in a competitive market. Rather than earning paydays comparable to boxers, a sport with many natural parallels, all of the UFC's fighters are substantially undercompensated despite the punishing—and popular—nature of their profession, which is immensely profitable to the UFC.

As a result of this scheme, the UFC receives approximately 90% of *all* revenue generated by MMA Events. *Id.* ¶¶ 7, 72, 74, 134, 152. Yet, Fighters receive only approximately 10-17% of the UFC's revenues from bouts. *Id.* ¶ 102. Comparatively, athletes in sports such as boxing and the "Big 4," *i.e.*, football, baseball, basketball and hockey in the United States generally earn more than 50% of league revenue. In particular, boxers are paid a substantially higher percentage of bout revenues. Famed boxing promoter Bob Arum, for example, pays his boxers approximately 80% of the proceeds of events. *Id.* ¶ 104. Arum accurately describes the disparity between the UFC and boxing as follows: "Because of the monopoly that the UFC has, [the UFC] pay[s] [its] fighters maybe 20% of the proceeds that come in on a UFC fight." *Id.* It is the scheme that allowed this dominance that these consolidated actions seek to interrupt, and for which Plaintiffs seek recompense in the form of money damages.

/ / /

/ / /

/ / /

/ / /

**B.     The UFC's Motion to Dismiss Is Fatally Flawed**

On February 27, 2015, the UFC filed a Motion to Dismiss.[7] In large part, the Motion to Dismiss challenges the facts alleged in the Complaint and previews the UFC's supposed defenses to the allegations in the Complaint. Dkt. 64. In sum, the UFC's Motion to Dismiss relies almost entirely on contentions that can only be resolved only after the very discovery it seeks to stay, not before.

**C.     Plaintiffs' Discovery Is Relevant to the Issues Raised in the UFC's Motion to Dismiss Because the UFC's Motion Relies Heavily Upon Challenges to the Well Pleaded Facts in the Complaint.**

The UFC's claim that "discovery is not necessary for resolution of the Motion to Dismiss" because the issues raised "are legal in nature,"  is wrong. *See* Motion to Stay at 8. The Motion to Dismiss is premised upon multiple factual assertions and defenses that contradict facts pleaded in the Complaint. Moreover, the UFC's Motion to Dismiss relies heavily on inapposite legal opinions resolving cases *after substantial discovery had occurred* (and which are distinguishable in any case). Plaintiffs have propounded discovery requests targeted at obtaining information relevant to each of the UFC's factual arguments and defenses previewed in its Motion to Dismiss.[8]

For example, at the same time that it tries to defend its exclusionary conduct by arguing that its exclusive fighter contracts are necessary for it to run a successful MMA promotion business,[9] the UFC implausibly argues, contrary to the Complaint, that it does not actually even have long-term exclusive contracts with Fighters. *See* Motion to Stay at 9; Motion to Dismiss at 5-6, nn. 4-8; Motion to Dismiss Reply at 5-6. Plaintiffs served several RFPs that seek information at the heart of this dispute, *e.g.*:

- RFP No. 20: "All Documents, from 1993 to present, discussing, evaluating, or analyzing actual or proposed contractual terms or provisions … for use in [Fighter contracts] … including all Documents discussing or reflecting the … competitive effects of such … contracts … Responsive Documents include … Documents referencing or relating to the

---

[7]     The UFC also filed substantively identical motions to dismiss in the *Vazquez*, Dkt. 39; *Vera*, Dkt. 39; *Ruediger*, Dkt. 16, and; *Kingsbury*, Dkt. 16.

[8]     Plaintiffs served their First Set of Requests for Production ("Requests for Production" or "RFPs") on April 26, 2015. The UFC filed Plaintiffs' RFPs as Exhibit A to its Motion to Stay. Dkt. No. 107-1.

[9]     *See* Motion to Dismiss at 1 ("Exclusive deals are common and procompetitive, including in sports, because they encourage interbrand competition, encourage promoters to invest in marketing both the athlete and the sport, and prevent competitors from free-riding on those investments"); *id.* at 10-11 (same); Amended Joint Case Management Conference Statement, Dkt. 81, at 3 (arguing its contracts enable the UFC "to invest in mutually beneficial promotional activities and prevent competitors from free-riding on those investments").

5

effects of such contractual provisions on: … Your ability to compete in the market for promoting Professional MMA Bouts; … Your ability to compete … for the services of MMA fighters …; or any actual or potential … competitor's ability to compete with the UFC."

- RFP No. 22: "All Documents referencing or relating to … the reasoning behind [the exclusionary provisions of Fighter contracts alleged in the Complaint]."

- RFP No. 24: "All Documents reflecting or relating to the effects of any of the contractual provisions identified in Request No. 22 on any actual or potential competitor …"

- RFP No. 40 "All Documents … relating to any MMA Fighter under contract with the UFC competing in a bout for an actual or potential rival MMA Promotion. Responsive Documents include … Documents referencing or relating to … any requirements or obligations imposed by a contract between the UFC and MMA Fighters with respect to a switch or potential switch from the UFC to another actual or potential rival promotion."

Request for Production, Dkt. 107-1. These RFPs, like others, are narrowly tailored to seek documents evidencing the facts alleged in the Complaint—*e.g.*, that these exclusive contracts "foreclose would-be rival promoters from vital inputs—namely Elite Professional MMA Fighter services with the notoriety needed to sustain a successful live Elite Professional MMA promotion." Compl. ¶ 110.

The UFC also argues that Plaintiffs do not show how excluding would-be rivals from access to some venues, sponsors and TV networks amounts to substantial foreclosure (separate and apart from the rest of the scheme). Motion to Stay at 9-10. Putting aside the impropriety of slicing and dicing the alleged scheme into its constituent parts, and then disputing the facts of each part, Plaintiffs have sought discovery concerning the facts they allege to demonstrate the effect of these exclusionary contracts on competition:

- RFP No. 27: seeking documents "referencing or relating to agreements … regarding venues for professional MMA bouts …"

- RFP No. 29: seeking documents relating to the justifications and reasoning behind provisions that restrict venues' ability to host MMA events organized by other promoters.

- RFP No. 33: seeking documents concerning agreements between the UFC and any broadcaster, including, *e.g.*, cable, television, internet, PPV and online distribution.

- RFP No. 35: seeking documents concerning agreements with third-party merchandisers or retailers selling MMA-related merchandise.

- RFP No. 37: seeking documents concerning agreements with sponsors of the UFC or of the MMA Fighters under contract with the UFC.

- RFP No. 39: seeking documents "referring or relating to the UFC denying permission to, or otherwise discouraging, UFC Fighters from contracting or working with particular sponsors, banning or discouraging particular sponsors from contracting with UFC Fighters, banning or discouraging UFC Fighters from contracting with sponsors" or the UFC threatening MMA Fighters who contract with specific sponsors.

Request for Production, Dkt. 107-1.

Furthermore, the UFC alleges the existence of supposed "rival promoters" in purported contradiction of Plaintiffs' allegation that there is no competition for the UFC. Motion to Dismiss at 6-7, 14, 24; Motion to Stay at 10. Plaintiffs' discovery requests seek information to confirm the Complaint's allegations that these "minor league" promoters who act as feeders to the UFC do not—as the UFC's own executives and owners have publicly admitted—compete directly with the UFC:

- RFP No. 15: seeking documents from analysts and consultants concerning "Zuffa and the MMA Industry, including without limitation, reports that analyze or project … market share derived from or relating to MMA bouts …"

- RFP No. 16: seeking documents that compare or analyze "athlete contracts … [with] different MMA Promoters …"

- RFP No. 17 seeking documents relating to negotiations and/or agreements with MMA promoters concerning acquisitions of these former rival promoters.

- RFP No. 19: seeking documents concerning actual or potential competitors to the UFC including those analyzing the competitive strengths or weaknesses of the competitors, the competitors' market shares, and the competitors' business models.

Request for Production, Dkt. 107-1. Such discovery would also confirm the falsity of the UFC's own factual contentions.

Collectively, the discovery Plaintiffs have requested seeks information central to the view of the facts the UFC sets forth in its Motion to Dismiss in order to obtain the evidence to prove the well-pleaded allegations of the Complaint.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## III.    LEGAL STANDARD

The UFC has a "heavy burden" that it does not and cannot meet. "The Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending." *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 601 (D. Nev. 2011).[10] Rather, motions to stay discovery pending resolution of motions to dismiss are disfavored, and such motions in antitrust actions are **not** an exception. *See, e.g.*, *In re Lithium Ion Batteries Antitrust Litig.*, 2013 U.S. Dist. LEXIS 72868, at *30 (N.D. Cal. May 21, 2013) ("[T]he costs and burdens of antitrust discovery do not erect an automatic barrier to discovery in every case in which an antitrust defendant challenges the sufficiency of a complaint."); *In re Capacitors Antitrust Litig.*, No. 3:14-cv-3264, Dkt. 514, at 2 (N.D. Cal. Jan. 14, 2015) (directing discovery to proceed pending a motion to dismiss); *Castro v. Sanofi Pasteur, Inc.*, No. 2:11-cv-7178, Dkt. 102 (D.N.J. July 18, 2012) (denying motion to stay discovery, rejecting defendant's argument that "failure to grant a stay could impose significant, needless, and asymmetric costs"); *Universal Delaware, Inc. v. Comdata Corp.*, No. 2:07-cv-1078, Dkt. 180, at n. 1 (E.D. Pa. Nov. 12, 2009) (directing the parties to engage in discovery in an antitrust class action, noting "[t]his court is unaware of any Federal Rule of Civil Procedure or case law precluding discovery [where motions to dismiss are pending or a motion to amend the pleadings is pending]"); *Forest River, Inc. v. Heartland Rec. Vehicles, LLC*, 2012 U.S. Dist. LEXIS 130689, at *9 (N.D. Ind. Sept. 12, 2012) (denying motion to stay antitrust claims where "movants do not provide the Court with any specifics regarding the anticipated costs of providing the discovery or any evidentiary support as to such cost estimates" but "make only bald assertions that discovery relative to the claims would be an 'enormous, needless expense.'"); *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. Cal. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a **heavy**

---

[10]    *Tradebay*, cited by the UFC, considered a motion to dismiss that raised the defense of lack of subject matter jurisdiction under the Declaratory Judgement Act and Article III. The Court observed that "issues of jurisdiction, venue, or immunity" raised by motions to dismiss may warrant a stay of discovery. *Id.* at 603. No such threshold legal issues are presented by the UFC's motion.

**burden** of showing why discovery was denied.") (emphasis added).[11] Due to this disfavor, such motions require a showing of "good cause" which is not easily met. *See Twin City Fire Ins. Co. v. Employers Ins. of Wausau*, 124 F.R.D. 652, 653 (D. Nev. 1989) ("Some extraordinary justification [for a stay] must be shown to satisfy the good cause requirement[.]"). *See also Rosenstein v. Clark County Sch. Dist.*, No. 13-cv-1443, 2014 WL 2835074, at *3 (D. Nev. June 23, 2014) ("Satisfying the 'good cause' obligation is a challenging task.").

To determine whether to grant the extraordinary request to stay discovery pending resolution of motions to dismiss, courts consider the goals of Fed. R. Civ. P. 1 to "secure the just, speedy, and inexpensive" determination of all cases. As part of their analyses, courts in this District take a "preliminary peek" at the merits of the potentially dispositive motion. *Kor Media Group, LLC v. Green*, 294 F.R.D. 579, 581 (D. Nev. 2013). The purpose of the "preliminary peek" is not to prejudge the outcome of the motion to dismiss, but rather to evaluate the propriety of an order staying or limiting discovery with the goal of accomplishing the objectives of Fed. R. Civ. P. 1. *Frias Holding Co. v. Greenberg Traurig*, LLP, No. 2:11-cv-160, 2015 WL 1268403, at *2 (D. Nev. Mar. 19, 2015); *accord Davis v. Nevada*, 2014 U.S. Dist. LEXIS 44626, at **4-5 (D. Nev. Mar. 31, 2014).

Courts therefore impose a high standard on defendants seeking discovery stays pending a motion to dismiss. "Generally, imposing a stay of discovery pending a motion to dismiss is permissible

---

[11]     The UFC is wrong that *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), requires granting its Motion. Stay Mot. at 3-4. As the court in *In re Graphics Processing Units Antitrust Litig.*, No. 06-cv-7417, 2007 WL 2127577, *4 (N.D. Cal. July 24, 2007), explained, "[*Twombly*] used concerns about the breadth of antitrust discovery to identify pleading standards for complaints, it did not use pleading standards to find a reason to foreclose all discovery." Courts have universally held that the mere possibility that a motion to dismiss could be granted does not warrant a stay of discovery. *See Tradebay*, 278 F.R.D. at 603 ("The fact that a non-frivolous motion is pending is simply not enough to warrant a blanket stay of all discovery" under *Iqbal* and *Twombly*). Moreover, *Twombly* was a conspiracy case brought under Section 1 of the Sherman Act. *Twombly*, 550 U.S. at 548-49. Because the plaintiffs in that case did not plead any *direct evidence* of conspiracy, the case turned entirely on whether Plaintiffs had pled sufficient *circumstantial evidence* of conspiracy from which the jury might infer a plausible conspiracy claim. *Id.* at 554-57, 564. Here, by contrast, Plaintiffs are not relying on pleading circumstantial evidence of a conspiracy, but rather have pled direct facts constituting a Section 2 monopolization claim. Plaintiffs have pled the existence of, *e.g.*: (a) exclusive contracts with Fighters, Venues, and Sponsors; (b) predatory conduct putting rivals out of business; and (c) buying up key rivals. Plaintiffs have further pled that this conduct, taken together, has foreclosed substantial competition and caused the UFC to artificially underpay the Fighters for participation in bouts and for expropriation of identity rights. None of these allegations requires the Court to infer a conspiracy from circumstantial evidence and determine whether it is plausible. *Twombly* thus does not support the UFC's motion here.

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO STAY

if there are no factual issues raised by the motion to dismiss, discovery is not required to address the issues raised by the motion to dismiss, and the court is 'convinced' that the plaintiff is unable to state a claim for relief." *Rosenstein*, 2014 WL 2835074, at *3; *see also Grand Canyon Skywalk Dev. LLC v. Steele*, 2014 U.S. Dist. LEXIS 1550, at **10-11 (D. Nev. Jan. 6, 2014) (noting courts must be "convinced that an underlying Rule 12(b)(6) motion will be granted before" granting a stay of discovery); *Tradebay*, 278 F.R.D. at 607 ("a district court may stay discovery only when it is *convinced* that the Plaintiff will be unable to state a claim for relief." (emphasis in original)). Indeed, as the court in *Grand Canyon Skywalk Development LLC v. Steele* wrote:

> [this standard] makes sense given that such motions are subject to fairly stringent standards. Although pleading requirements have been significantly tightened as a result of the Supreme Court's decisions in [Twombly] and Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), the plaintiff's factual allegations must still be accepted as true and the complaint may only be dismissed if the court finds that plaintiff cannot succeed on his or her claims as a matter of law. Rule 12(b)(6) motions are frequently filed and also frequently denied, in whole or in part. Even where such motions are granted, plaintiffs are often given leave to file an amended complaint to cure the defects in their initial pleading. Discovery would be unnecessarily delayed in too many cases if the district courts applied a lenient standard in staying all discovery until a decision on such a motion.

*Id.* Importantly, even if the court were to believe that a plaintiff had not adequately pleaded her case, to grant a stay, the court must further conclude that the complaint will be dismissed with prejudice. *See Rosenstein*, 2014 WL 2835074, at *7 (denying motion to stay discovery even though "the court agree[d] that the [plaintiffs'] complaint is factually deficient" because "the court should order a stay of discovery if it is 'convinced' that the plaintiff is unable to state a claim for relief" and "the court [was] far from 'convinced'"). Far from dismissal with prejudice, a "preliminary peek" at the Motion to Dismiss reveals a well-pleaded Complaint that will move forward toward discovery.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## IV.    ARGUMENT

**A.    The UFC's Motion to Stay Should Be Denied Because its Rule 12(b)(6) Motion Is Highly Unlikely to Succeed and Discovery Is Required to Resolve the Factual Issues that the UFC Raises.**

### 1.    The UFC's Motion to Dismiss Is Fatally Flawed.

The Motion to Dismiss is fatally flawed in several key ways.

*First*, the UFC improperly challenges each component of the alleged anticompetitive scheme separately, arguing that each, *in isolation*, insufficiently foreclosed competition. Motion to Dismiss, Dkt. 64, at 9-16, 23-24. That attempt to slice and dice the claim is fatal because "in the antitrust context, the 'character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole.'" *Costco Wholesale Corp. v. Maleng*, 522 F.3d 874, 886 (9th Cir. 2008) (quoting *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962)). Viewed as a whole, there is little question that the Complaint pleads that the UFC's conduct has allowed it to foreclose competition and obtain monopoly and monopsony power. As the Complaint sets out, the UFC's own owners have admitted (even loudly proclaimed) that *it has no competition* for Elite MMA Events.

*Second*, the UFC incorrectly asserts that Plaintiffs have failed to plead foreclosure of a "substantial share of the line of commerce affected." Motion to Stay at 9. Not so. Contrary to the UFC's assertions, Plaintiffs specifically allege the UFC's scheme resulted in substantial foreclosure in the market for promoting Elite MMA Events and the market for purchasing Elite MMA Fighter services. "The UFC … has engaged in a scheme to deny its actual or potential rival MMA Promoters (and any potential future rivals) the access to inputs necessary to promote successful MMA events (*e.g.*, Elite Professional MMA Fighters, major sponsors, key venues)." Compl. ¶ 108. "The UFC's illegal monopsony position is sustained, in part, through the use of exclusive dealing agreements with UFC Fighters that lock in Elite Professional MMA Fighter services perpetually and exclusively for the UFC." *Id.* ¶ 110. These exclusive contracts "foreclose would-be rival promoters from vital inputs—namely Elite Professional MMA Fighter services with the notoriety needed to sustain a successful live Elite Professional MMA promotion." *Id.* To tighten its grip on Fighters, "the UFC has retaliated against

(i) UFC Fighters who work or threaten to work with would-be rival promoters, (ii) MMA Fighters who might someday wish to compete in the UFC, and (iii) would-be rival promoters who work with UFC Fighters." *Id.* ¶ 116. "As a result, UFC Fighters have refused offers to fight for actual or potential rival promoters, even those that offer higher compensation, out of fear that the UFC would retaliate against both the promoter and the Fighter."[12] *Id.* The UFC also "frustrated entry and retarded rival expansion through a series of exclusive arrangements that foreclose would-be rival promoters from holding or distributing live Elite Professional MMA events through various venues." *Id.* ¶ 120. "[T]he UFC imposes exclusivity provisions into its physical venue agreements that severely limit, and in some cases remove altogether, the ability of any would-be competitor to hold MMA events at premier venues in the U.S." *Id.* ¶ 122. The UFC also "fundamentally restructured MMA sponsorship to: (a) require that sponsors contract with and pay a fee to the UFC as a condition precedent to their ability to contract with any UFC Fighter, and (b) prohibit any sponsor who wants to work with the UFC from contracting actual or potential rival promotion companies or sponsoring non-UFC MMA Fighters." *Id.* ¶ 123.

"The UFC's scheme successfully blocked actual or potential rival promoters from accessing inputs necessary to put on successful MMA events and to operate, sustain, and grow successful MMA Promotions that could eventually compete directly with the UFC." Compl. ¶ 128. "This scheme put several actual or potential rival MMA Promoters out of business[, and t]hose companies that were not forced to exit the MMA Promotion business … were weakened to such a degree that selling out to the UFC was the only realistic option." *Id.* "As a result of [these acquisitions], the UFC controlled virtually all Elite Professional MMA Fighters in every weight class." *Id.* ¶ 134. "[T]hose few fringe MMA Promoters that the UFC had not yet acquired or put out of business … effectively functioned and continue to function as 'minor leagues.'" *Id.* ¶ 135. "Without big ticket MMA Cards with Elite Professional MMA Fighters, would-be rival promotions are unable to secure sufficient public interest or sponsors and venues large enough or prestigious enough to generate revenues and bout purses that

---

[12] Such threats are well documented in the Complaint. For example, when one Fighter, B.J. Penn, informed the UFC that he planned to sign with a rival promotion company for higher pay, UFC President Dana White called Penn and stated Penn was "f***ing done! You'll never fight in the UFC again! You're finished. You're scorched earth, mother***er. Scorched earth. Don't call me crying saying you want to come back because you're f***ing done!" Compl. ¶ 118.

can sustain the demands of training costs, travel, health coverage, gym membership, sparring partners, and other expenses necessary for sustaining a career as an Elite Professional MMA Fighter." *Id.* ¶ 139. Elite MMA Fighters are left with nowhere else to turn to sell their services due to the substantial foreclosure of the market for their services resulting from the UFC's scheme. *See, e.g.*, Compl. ¶ 74 (noting that 90% of all revenue generated by MMA events is received by the UFC).

Collectively, these facts, along with the many other specifically pled aspects of the scheme, are more than sufficient to satisfy the foreclosure requirement: (1) the Elite MMA Events market was foreclosed because competitors could not obtain critical inputs such as Elite MMA Fighters, key venues and sponsors; and (2) the market for Elite MMA Fighter services was foreclosed because Elite MMA Fighters could not earn a living by turning to any other promoter. *See Tele Atlas N.V. v NAVTEQ Corp.*, 397 F. Supp. 2d 1184, 1190 (N.D. Cal. 2005) (A plaintiff need only put a defendant on notice by alleging how a "scheme operates" not provide specific facts or numerical precision). The UFC's arguments to the contrary require either ignoring the well-pled allegations or replacing them with the UFC's counter-allegations of fact. Neither is appropriate on a Rule 12(b)(6) motion.

***Third***, the UFC argues that Plaintiffs failed to allege sufficiently that the UFC's exclusive contracts with Fighters, *by themselves*, impaired competition by other promoters. Motion to Stay at 9; Motion to Dismiss at 5-6, nn. 4-8; Motion to Dismiss Reply at 5-6. The UFC is wrong. As an initial matter, Plaintiffs' claim is based on the competition suppressing effects of the scheme as a whole, not any one aspect of it in isolation. Furthermore, and in any event, Plaintiffs allege in great detail the competition-suppressing effects of the exclusionary provisions in the Fighters' contracts. *See* Compl. ¶ 113. Specifically, Plaintiffs plead facts showing how the UFC used its contracts with Fighters to lock them up in perpetuity. *E.g.*, *id.* ¶ 113(a) (detailing the "Exclusivity Clause" which binds UFC Fighters into a restricted relationship with the UFC and prohibits them in appear in bouts televised or organized by actual or potential rival promoters); *id.* ¶ 113(b)-(c) & (f)-(g) (detailing various tolling and extension provisions conferring a unilateral right to the UFC to renew the contract). As a result, actual or potential competitors are blocked from accessing Elite MMA Fighters under contract with the UFC—the vast majority of Elite MMA Fighters—for protracted periods of time, and critically, for the

primes of each of the Fighters' careers. *See ACT, Inc. v. Sylvan Learning Sys.*, 104 F. Supp. 2d 1096, 1111 (N.D. Iowa 1999) (long-term exclusive contracts show willful acquisition of monopoly power).

The unavailability of Elite MMA Fighters prevents actual or potential rivals from "secur[ing] sufficient public interest or sponsors and venues large enough or prestigious enough to generate revenues and bout purses that can sustain" Elite MMA Fighters' careers. *Id.* ¶ 139; *see also* Moody's Investors Service Credit Opinion: Zuffa, LLC ("Moody's Opinion"), Request for Judicial Notice, Dkt. 72, at Ex. 12 ("[The UFC's] strong competitive position is protected by high barriers to entry, which include … its large contractually bound pool of fighters with superior opportunities for exposure and profit."). The effect of the UFC's exclusive provisions in Fighter contracts is substantial foreclosure of would-be rivals' opportunity to promote Elite MMA Events and compete for Elite Fighter services. The UFC may dispute these facts, but such a dispute is to be resolved—after discovery—by the trier of fact.

***Fourth***, the UFC argues that Plaintiffs do not allege facts sufficient to show how excluding would-be rivals from access to some venues, sponsors and/or TV Networks amounts to substantial foreclosure. Motion to Stay at 9. The UFC is wrong for at least two reasons. The first is that the UFC is again improperly dismembering the scheme, rather than viewing it as a whole. There is no requirement that Plaintiffs show that these aspects of the scheme (cutting off rival promoters from key sponsors, venues and TV outlets)—by themselves and divorced from the rest of the scheme—caused substantial foreclosure. The only requirement is that the Plaintiffs show that the scheme *as a whole* did so, which (as discussed above) Plaintiffs can and have adequately pled. The second reason is that Plaintiffs specifically allege that the exclusive agreements at issue locked up "key" sponsors, venues, and distributors—including, *e.g.*, (a) "top event venues along the Las Vegas Strip" and (b) sponsors that had shown interest in sponsoring fighters who fought with other promotors. The Complaint also specifically alleges that this conduct (even divorced from the rest of the scheme) impaired the ability of rivals to stage Elite MMA Events. Compl. ¶¶ 73, 122-26, 127. The UFC disputes these facts. Thus, there are factual disputes concerning the market for Elite MMA Events that require discovery to resolve. The factual disputes regarding the extent of UFC's exclusion of would-be rivals from "key"

sponsors, venues, and distributors must be resolved by the trier of fact based on discovery and evidence.

**Fifth**, the UFC asserts that the existence of purported "rival" promoters, which the Complaint alleges are "minor league" promoters that do not and cannot compete directly, preclude Plaintiffs' claims. Motion to Dismiss at 11-13. In fact, Plaintiffs plead a detailed factual basis for their allegation that such "rival" promoters cannot and do not compete with the UFC and are merely "fringe" promoters. *See, e.g.*, Compl. ¶¶ 135-148. That the UFC has admitted that the time of competition in the MMA promotion business "is over," should be sufficient to defeat the UFC's motion without more. *Id.* ¶ 15. At a minimum, the UFC's contention is not a proper basis for granting a motion to dismiss as it requires weighing the UFC's self-serving factual contention against Plaintiffs' Complaint. Such disputes may only be resolved after discovery.

Even if the Court were to analyze any of these aspects of the scheme in isolation (which would be legally improper), and found that Plaintiffs had not adequately plead that any of these aspects of the scheme (exclusive Fighter contracts, venue agreements, TV broadcast deals, or sponsorship agreements), by themselves, could have harmed competition, that would have no bearing on whether the Motion to Dismiss should be granted. As long as any piece of the scheme, standing alone or as part of any group of other parts, is sufficient to establish the elements of the claim, then Plaintiffs have met their pleading burden and the Motion to Dismiss should be denied. Accordingly, the Motion to Stay should be denied.

### 2. Plaintiffs' Discovery Requests Bolster the Complaint and Pertain to the UFC's Factual Challenges in the Motion to Dismiss.

Citing *Tracy v. United States*, 243 F.R.D. 662 (D. Nev. 2007), and *DM Research, Inc. v. College of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999), the UFC argues that Plaintiffs should be denied discovery because they have not alleged the factual predicate to their claims. Motion to Stay at 8. The UFC misconstrues the case law. To the contrary, the law is clear that if discovery could be used to bolster a deficient complaint that was dismissed with leave to amend, then a discovery stay should not be granted. *Tracy*, 243 F.R.D. at 664-665 ("Dismissal is warranted only if it appears to a certainty

that the Plaintiff would not be entitled to relief under any set of facts that could be proven."); *see also Rosenstein*, 2014 WL 2835074, at *7 (denying motion to stay discovery after finding that the complaint was factually deficient because "the court [was] far from 'convinced'" that the plaintiff would be unable to state a claim in a subsequent complaint).[13] As discussed above (and detailed further below), Plaintiffs' highly detailed Complaint specifically pleads sufficient facts in support of each element of their claims. But even if they had not done so, the Motion to Stay should still be denied because discovery will bolster the Complaint and bear on the UFC's factual challenges to the Complaint.

The UFC's Motion to Dismiss raises at least four contentions that will require discovery—and the trier of fact—to resolve. Because the UFC's Motion to Dismiss previews its defenses to this matter, presenting factual disputes concerning the extent of foreclosure that require discovery to resolve, a stay would not further the interests of efficiency. *Tradebay*, 278 F.R.D. 597 at 608; *Rosenstein*, 2014 WL 2835074, at *3 ("imposing a stay of discovery pending a motion to dismiss is permissible if there are no factual issues raised by the motion to dismiss, [and] discovery is not required to address the issues raised by the motion to dismiss").

First, as discussed above, the UFC asserts that its exclusive contracts with fighters, sponsors, venues and others do not substantially foreclose competition or impair rival promoters. Motion to Dismiss at 6-7. Plaintiffs allege to the contrary. *See supra* at 10-12 (discussing the allegations in the Complaint of substantial foreclosure). Plaintiffs' discovery will confirm Plaintiffs' allegations. *See, e.g.*, Request for Production, Dkt. 107-1, Nos. 20, 22, 24, 40.

Second, the UFC cites the existence of purportedly "rival" promoters—even though the Complaint (and UFC executives in more candid moments) characterize these so-called "rivals" as "minor leagues" to the UFC that do not compete directly with it, *e.g.*, Compl. ¶¶ 135-50—as demonstrating that the UFC has not substantially foreclosed competition. Motion to Dismiss at 6-7, 14,

---

[13]     Under *Rosenstein*, in order to stay discovery, the Court must not only determine that it is convinced the UFC's Motion to Dismiss will be granted, the Court must also be convinced that Plaintiffs cannot amend the Complaint to remedy any deficiency the Court identifies.

24; Motion to Stay at 10.[14] But this resolution of this dispositive motion requires the Court to accept Plaintiffs' well-pled allegations that "minor league" events put on by such promoters do not draw large audiences, sponsors, or revenues, and are not substitutes for Elite MMA Events. *See* Compl. ¶¶ 7, 139, 145; *see also id.* ¶ 74 (noting that 90% of all revenue generated by MMA events is received by the UFC). Indeed, Plaintiffs also allege that the remaining promoters put on "fringe" events that lack the pay or prestige of the UFC; do not generate the interest, revenues, attendance, merchandise sales, or television revenues of the UFC; and consist of either former UFC fighters, or fighters who are trying to break into the UFC. *Id.* ¶¶ 135-148. Such promoters do not compete with the UFC and are certainly not "rivals." Plaintiffs' discovery requests seek information to confirm the Complaint's allegations that these "minor league" promoters do not compete with the UFC. *See, e.g.*, Requests for Production, Dkt. 107-1, Nos. 11, 15-17, 19.[15]

Third, the UFC's Motion to Dismiss asserts that there is "competition for the contract" in the MMA industry, relying on authorities where contracts expire and competitors compete. Motion to Dismiss at 11-13. Even if they were right on the law (and they are not),[16] the UFC's arguments are not

---

[14]     Apart from ignoring Plaintiffs' allegations, these improper factual contentions include two "rival" promoters—World Series of Fighting and BAMMA—that are not mentioned in Plaintiffs' Complaint. *See In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 911 (N.D. Cal. 2008) (sustaining plaintiffs' objections to defendants' "improper introduction of extrinsic evidence on a motion to dismiss").

[15]     Similarly, the UFC's Motion to Dismiss asserts facts about bouts some of the Plaintiffs supposedly fought with these "minor league" promoters after their association with the UFC had ended. Motion to Dismiss at 5-6 n.4-n.8; Reply at 5-6. Plaintiffs do not allege that these fights were of the same caliber as UFC events, and allege that these rivals were not directly in competition with the UFC. As discovery will reveal, the UFC releases Fighters from their contracts only when the UFC has no more use for them (*e.g.*, the Fighters are injured or have lost too many bouts, or do not fight the right style). After being released, some former UFC fighters sometimes fight for "minor league" promoters. Compl. ¶¶ 135-146. The Complaint alleges that these events are not "Elite," and do not compete with the UFC. *See id.* ¶ 135 (such promotion outfits "provide no real access to top media rankings, public notoriety, lucrative bout purses, endorsements, or sponsorships").

[16]     As detailed in Plaintiffs' Opposition to the Motion to Dismiss, at 16-18, the cases on which the UFC relies are distinguishable because they concerned contracts that were "terminable at will or short notice," unlike the long term and/or perpetual agreements at issue here. *See Allied Orthopedic Appliances, Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 996 (9th Cir. 2010). Furthermore, in order for this argument to succeed, the UFC hypothesizes the existence of robust competition for the contract in the market for Elite MMA Fighter Services. *See Paddock Publishers v. Chicago Tribune Co.*, 103 F.3d 42, 45 (7th Cir. 1996) ("competition for the contract" exists where other entities can enter the market "by competing at intervals for [exclusive] contracts"). This hypothesis is directly contrary to the central factual allegations in the Complaint, which directly refute the existence of robust competition for these contracts because, through its scheme, the UFC has succeeded in destroying its competition.

based on any allegations contained in the Complaint, which alleges that Elite MMA Fighters are under exclusive, indefinite contracts with the UFC until such time as the UFC deigns to release them when they are no longer needed or wanted. As a result, the competitive effects of these contracts and whether would-be rival promoters can compete for them is a factual dispute that will be explored in discovery and decided by the trier of fact. *See, e.g.*, Request for Production, Dkt. 107-1, Nos. 24, 39, 40.

Fourth, the UFC challenges whether the term "elite MMA fighter" is used in the industry, creating a factual dispute. Motion to Dismiss at 17. As Plaintiffs show, this argument is contrary to the UFC's own marketing materials. *See, e.g.*, Request for Judicial Notice, Dkt. 72, at Ex. 2 ("[The UFC's Fighters] are hand-picked from the best of the best and the few chosen ones make it to the pinnacle of MMA fighting …"); *id.* at Ex. 5 ("Meet elite fighters and interact with industry icons [at the UFC Fan Expo]."); *id.* at Ex. 6 ("WHAT DISTINGUISHES UFC FROM ITS COMPETITORS? The elite level of the competitor …"); *id.* at Ex. 8 (job announcement stating UFC Marketing Manager is responsible for marketing concerning the UFC's "elite athlete roster"). Similarly, investment analysts like Moody's describes UFC's market dominance based on its elite fighters. *See, e.g.*, Moody's Opinion ("The current scale and recognition of the UFC dwarfs any of its competitors in Moody's opinion … [W]e believe that [the UFC] has attracted and secured under exclusive contract most of the top highly trained fighters in the sport, which is a qualitative competitive advantage.").

These factual assertions by the UFC—which are contradicted both by well-pled allegations in the Complaint and external materials regarding which the Court can take judicial notice (at minimum, for the purposes of determining that discovery would bear upon the issue)—demonstrate the value and importance of adhering to ordinary practice under the Federal Rules and commencing discovery immediately to move this case to a speedy resolution. Because the UFC relies on these factual contentions in its Motion to Dismiss, not only must that motion fail, but the Motion to Stay should be denied.

**B.  No Other Relevant Factor Favors a Stay.**

**1.  A Stay Would Prejudice Plaintiffs.**

Plaintiffs and the classes they represent seek, *inter alia*, injunctive relief for the UFC's

continuing violations of Section 2. Compl. ¶¶ 170, 171. Any delay in the resolution of this matter impacts the livelihoods and lives of hundreds of current and former UFC Fighters (who either currently fight for the UFC and are undercompensated as a result of the scheme or who are currently being undercompensated for their identity rights).

The UFC has made no secret of its intention to delay and multiply these proceedings, and make discovery a "lengthy process." Motion to Stay at 13. These cases were first filed in December of 2014, and the UFC has resisted discovery at every turn. Further delay while the Court considers the UFC's factual challenges to the Complaint is inconsistent with the purposes of Rule 1. *See New York v. Hill*, 528 U.S. 100, 117 (2000) (recognizing that "[d]elay can lead to a less accurate outcome as witnesses become unavailable and memories fade").

## 2. The UFC's Motion to Dismiss Does not Raise Dispositive Legal Flaws.

Courts in this District have held that a stay may be appropriate where a motion to dismiss raises threshold legal issues concerning jurisdiction, immunity, or standing. *Tradebay*, 278 F.R.D. at 602; *see also id.* at 608 ("The motion raises no factual issues, and will be decided purely on issues of law."); *Rosenstein*, 2014 U.S. Dist. LEXIS 85019, at *8 ("Typical situations in which staying discovery pending a ruling on a dispositive motion are appropriate would be where the dispositive motion raises issues of jurisdiction, venue, or immunity").[17] The UFC's Motion to Dismiss does not raise any such threshold legal issue; rather is a Rule 12(b)(6) *Twombly* challenge to the sufficiency of the Complaint. Indeed, *Johnson v. Cheryl*, 2013 U.S. Dist. LEXIS 3342, at *11 (D. Nev. Jan. 9, 2013), relied on by the UFC, supports Plaintiffs' position. In *Johnson* a stay was granted because the court was "concerned by the pace at which this case is progressing" and granted "a stay of discovery … while Plaintiff continues his attempt to serve the remaining defendants." No such delay is at issue here, other than the UFC's attempt to derail discovery.

---

[17]    The vast majority of the UFC's cited authorities concern stay motions granted when threshold legal issues such as standing, and immunity, were at issue, unlike here. *See Morrison v. Quest Diagnostics, Inc.*, 2015 U.S. Dist. LEXIS 46541 (D. Nev. April 7, 2015) (standing and statute of limitations); *Puckett v. Schnog*, 2013 U.S. Dist. LEXIS 63635, at *3 (D. Nev. May 3, 2013) (abstention under *Colorado River* doctrine); *McGee v. Donahoe*, 2014 U.S. Dist. LEXIS 139489, at *6 (D. Nev. Sept. 30, 2014) (jurisdiction); *Tradebay*, 278 F.R.D. at 602 (standing and jurisdiction).

The UFC argues that the fact that it has filed a motion to dismiss rather than a motion for summary judgment favors a stay. Motion to Stay at 10-11. But this comparison is irrelevant. The UFC has the burden of convincing the Court that Plaintiffs cannot facts sufficient to state a claim (even on an amended complaint), *Rosenstein*, 2014 WL 2835074, at *7, and that discovery would be irrelevant to the issues raised in the Motion to Dismiss. *See Turner*, 175 F.R.D. at 555. That the UFC's motion is styled as a motion to dismiss does not, in itself, support its Motion to Stay. Moreover, because UFC's Motion to Dismiss contests many of the Complaint's factual allegations, it reads more like a summary judgment motion than a properly drafted motion to dismiss, which accepts as true the well-pleaded allegations of the Complaint.

### 3.    The Supposed Complexity of This Action Does not Favor a Stay.

The UFC raises the prospect that discovery in this matter may be expensive and extensive because it is an antitrust matter. Motion to Stay at 11-12. This makeweight claim has been repeatedly rejected. *See Tradebay*, 278 F.R.D. at 601 ("inconvenience and expense" of discovery is an insufficient basis to enter a stay). Moreover, a stay of discovery would impede the prosecution of this important case, in contravention of Rule 1 and other provisions of the Federal Rules. *Id.*

Citing *In re Graphics Processing Units Antitrust Litig.* ("*GPU*"), 2007 WL 2127577 (N.D. Cal. July 24, 2007), the UFC argues that resolving the motion to dismiss will "shed light" on discovery. Motion to Stay at 11-12. Courts in this District have not followed the approach of *GPU*, where the district court stayed an antitrust action where a parallel federal criminal investigation was pending, but rather apply a "preliminary peek" at the merits, and only grant the motion where the court is "convinced that plaintiff will be unable to state a claim for relief," a procedure that was not applied in *GPU*. *Davis*, 2014 U.S. Dist. LEXIS 44626, at *7; *Tradebay*, 278 F.R.D. at 602. Thus, the requirement

in *GPU* for a "compelling need for prompt discovery" is not applicable in this District, and should not be applied here.[18]

As a supposed explanation of how a stay of discovery would narrow or streamline the issues in dispute, the UFC argues that it could avoid discovery into Plaintiffs' allegation that, among the many exclusionary contracts used by the UFC, the UFC had exclusive relationships with television outlets that harmed potential rivals. Motion to Stay at 12. There are two flaws in this argument. First, as in the UFC's Motion to Dismiss, it fails to view the allegations of exclusionary conduct as a whole, and instead focuses on only one part of the UFC's scheme. Thus, Plaintiffs are not required to establish that this particular aspect of the case, standing alone, meets all of the elements of their claims. Plaintiffs have sufficiently pled that these predatory and exclusionary acts were part and parcel of the UFC's scheme to dominate the relevant markets. They cannot and should not be viewed in isolation, and Plaintiffs are entitled to discovery on all aspects of the alleged scheme to demonstrate its compound effect. Second, claims about the relevance or scope of discovery are more appropriately and efficiently managed under the Federal Rules than through a discovery stay.[19]

/ / /

/ / /

/ / /

/ / /

---

[18] In stark contrast to Plaintiffs' single count Complaint against only the UFC, several of the UFC's authorities concern sprawling complaints with multiple defendants and dozens of claims, where only a few potentially meritorious claims. *See Davis v. Nevada*, 2014 U.S. Dist. LEXIS 44626, at *12 ("Defendants in this matter have challenged the legal viability of the ten causes of action and twenty claims for relief that are alleged against fourteen defendants"); *Jarvis v. Regan*, 833 F.3d 149 (9th Cir. 1987) (considering RICO conspiracy allegations against the United States Secretary of the Treasury, and several non-profits and agencies).

[19] Moreover, the UFC's example further underscores the need for discovery. The UFC claims that it has been "admitted" that there are "relationships between competitors and major networks such as Viacom, NBC Sports, and CBS Sports." Motion to Stay at 12. This is incorrect. The Complaint does not mention Viacom or NBC Sports, nor do they allege "competitors" have any media relationships whatsoever. To the contrary, the Complaint only alleges that "minor league" competitor Titan Fighting Championship ("Titan FC") was broadcast on the CBS Sports cable network, and that Titan FC's principal has stated he "is not looking to compete with Zuffa." Compl. ¶ 142. Thus, the very example to which the UFC points, demonstrates exactly why discovery is necessary to test its contentions and efforts to dispute the allegations of the Complaint in its Motion to Dismiss.

## V.      CONCLUSION

For the foregoing reasons, the UFC's Motion to Stay should be denied. Discovery in this case should proceed without further delay.

DATED this 2nd day of July, 2015.

*/s/ Don Springmeyer*
**WOLF RIFKIN SHAPIRO & RABKIN, LLP**
DON SPRINGMEYER, ESQ.
Nevada State Bar No. 1021
BRADLEY SCHRAGER, ESQ.
Nevada State Bar No. 10217
DANIEL BRAVO, ESQ.
Nevada State Bar No. 13078
3556 East Russell Road, Second Floor
Las Vegas, NV 89120
Telephone: (702) 341-5200
Fax: (702) 341-5300

**COHEN MILSTEIN SELLERS & TOLL, PLLC**
Benjamin D. Brown
Richard A. Koffman
Hiba Hafiz
1100 New York Ave., N.W., Suite 500, East Tower
Washington, DC 20005
Telephone: (202) 408-4600/Fax: (202) 408 4699
bbrown@cohenmilstein.com
rkoffman@cohenmilstein.com
hhafiz@cohenmilstein.com

**BERGER & MONTAGUE, P.C.**
Eric L. Cramer
Michael Dell'Angelo
Patrick Madden
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000/Fax: (215) 875-4604
ecramer@bm.net
mdellangelo@bm.net
pmadden@bm.net

**JOSEPH SAVERI LAW FIRM, INC.**
Joseph R. Saveri
Joshua P. Davis
Matthew Weiler
Kevin E. Rayhill
505 Montgomery Street, Suite 625

San Francisco, California 94111
Telephone: (415) 500-6800/Fax: (415) 395-9940
jsaveri@saverilawfirm.com
jdavis@saverilawfirm.com
mweiler@saverilawfirm.com
krayhill@saverilawfirm.com

**WARNER   ANGLE   HALLAM   JACKSON   &
FORMANEK PLC**
Robert C. Maysey
Jerome K. Elwell
2555 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Telephone: (602) 264-7101/Fax: (602) 234-0419
rmaysey@warnerangle.com
jelwell@warnerangle.com

**LAW OFFICE OF FREDERICK S. SCHWARTZ**
Frederick S. Schwartz
15303 Ventura Boulevard, #1040
Sherman Oaks, CA 91403
Telephone: (818) 986-2407/Fax: (818) 995-4124
fred@fredschwartzlaw.com

**SPECTOR   ROSEMAN   KODROFF   &   WILLIS,
P.C.**
Eugene A. Spector
Jeffrey J. Corrigan
Jay S. Cohen
William G. Caldes
1818 Market Street – Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300/Fax: (215) 496-6611
espector@srkw-law.com
jcorrigan@srkw-law.com
jcohen@srkw-law.com
wcaldes@srkw-law.com

*Attorneys for Individual and Representative Plaintiffs
Cung Le, Nathan Quarry, Jon Fitch, Luis Javier
Vazquez, Dennis Lloyd Hallman, Brandon Vera,
Pablo Garza, Gabe Ruediger, Mac Danzig, Kyle
Kingsbury, and Darren Uyenoyama*

1

## CERTIFICATE OF SERVICE

2        I hereby certify that on this 2nd day of July, 2015, a true and correct copy of **PLAINTIFFS'**

3   **OPPOSITION TO THE UFC'S MOTION TO STAY** was served via the United States District

4   Court CM/ECF system on all parties or persons requiring notice.

5                                        By:   /s/ Christie Rehfeld

6                                              Christie Rehfeld, an Employee of
                                               WOLF, RIFKIN, SHAPIRO, SCHULMAN &
7                                              RABKIN, LLP

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO THE UFC'S MOTION TO STAY