1
**WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP**
Don Springmeyer
2   Nevada Bar No. 1021
Bradley S. Schrager
3   Nevada Bar No. 10217
Justin C. Jones
4   Nevada Bar No. 8519
3556 E. Russell Road, Second Floor
5   Las Vegas, Nevada 89120
(702) 341-5200/Fax: (702) 341-5300
6   dspringmeyer@wrslawyers.com
bschrager@wrslawyers.com
7   jjones@wrslawyers.com
*Attorneys for Plaintiffs*
8   *(Additional counsel appear on signature page)*

9                     **UNITED STATES DISTRICT COURT**

10                          **DISTRICT OF NEVADA**

11   Cung Le, Nathan Quarry, and Jon Fitch, on      Lead Case No.: 2:15-cv-01045 RFB-(PAL)
     behalf of themselves and all others similarly
12   situated,                                      Consolidated Case Nos.:
                                                          2:15-cv-01046-RFB-(PAL)
13                     Plaintiffs,                        2:15-cv-01055-RFB-(PAL)
                vs.                                       2:15-cv-01056-RFB-(PAL)
14                                                        2:15-cv-01057-RFB-(PAL)
     Zuffa, LLC, d/b/a Ultimate Fighting
15   Championship and UFC,
                                                    **UNOPPOSED MOTION TO APPOINT
16                     Defendant.                   INTERIM CO-LEAD CLASS COUNSEL
                                                    AND INTERIM LIAISON COUNSEL**
17   ────────────────────────────────

18   And Related Consolidated Cases

19

20          Plaintiffs, by and through their attorneys of record, hereby move this Court for entry of an

21   order appointing Interim Co-Lead Class Counsel and Interim Liaison Counsel pursuant to Fed. R.

22   Civ. P. 23(g)(3). Plaintiffs' Motion is based on the Declaration of Eric L. Cramer; the Declaration of

23   Benjamin D. Brown; the Declaration of Joseph R. Saveri; the Declaration of Don Springmeyer; the

24   memorandum of points and authorities below; the Court's docket in these consolidated matters and

25   all documents therein; and any argument or materials that may be submitted at any oral argument

26   on this matter.

27   / / /

28
─────────────────────────────────────────────────
UNOPPOSED MOTION TO APPOINT INTERIM CO-LEAD CLASS COUNSEL AND INTERIM LIAISON
COUNSEL

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Luis Javier Vazquez, Dennis Lloyd Hallman, Brandon Vera, Pablo Garza, Gabe Ruediger, Mac Danzig, Kyle Kingsbury and Darren Uyenoyama, plaintiffs seeking to serve as class representatives in this antitrust class action ("Plaintiffs"), move for entry of an Order (a) appointing the following law firms as Interim Co-Lead Class Counsel: Berger & Montague, P.C.; Cohen Milstein Sellers & Toll PLLC; and the Joseph Saveri Law Firm, Inc. ("Proposed Interim Co-Lead Class Counsel"), and (b) appointing the following firm as Liaison Counsel: Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP ("Proposed Interim Liaison Counsel") (collectively, "Proposed Class Counsel"). *See* [Proposed] Order Appointing Interim Co-Lead Counsel and Liaison Counsel. Prior to filing this motion, Proposed Class Counsel consulted with Defendant's counsel regarding this motion, and Defendant's counsel indicated that Defendant would not oppose this motion.

Representing the consensus of Plaintiffs in all consolidated cases, and the agreement of their counsel located across the United States, Proposed Class Counsel will ensure that this complex antitrust litigation proceeds effectively and efficiently in the best interests of the members of the proposed classes, and that the pre-trial and case management strategy is coordinated and unified. Appointment of Proposed Class Counsel is consistent with Fed. R. Civ. P. 23(g) and sound principles of case management. The Court should appoint interim leadership where, as here, there are a number of overlapping actions filed by multiple counsel concerning the same legal and factual claims: "designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." *Manual for Complex Litigation, Fourth*, § 21.11 at 246 (2004) (the "Manual").

Appointing interim class counsel is critical because the early stages of this litigation will include complex motion practice as well as other responses that are anticipated to Plaintiffs' Complaints. The UFC is a multi-billion dollar mixed martial arts company, which by its own

account dominates the popular combat sport of mixed martial arts. *See, e.g.,* Complaint, *Le et al. v. Zuffa, LLC*, 2:15-cv-01045 RFB-PAL (D. Nev. Dec. 16, 2014) ("*Le* Complaint"), at ¶ 8 ("The sport of mixed martial arts is known by one name: UFC"; "There is no other guy"). The UFC has hired two prominent law firms to represent it and has had a team of attorneys from offices in three states make appearances. There is little doubt that this case will be aggressively litigated. Plaintiffs need experienced and accomplished advocates with the resources to litigate this important case, and Proposed Class Counsel fit that bill. As demonstrated by their zealous advocacy on behalf of Plaintiffs in this litigation to date (including their extensive investigation into the underlying legal and factual claims), and as is set forth in detail in their respective firm resumes, Proposed Class Counsel have the collective talent and resources to pursue these antitrust claims against the UFC.

## II.     BACKGROUND

Plaintiffs in the above-captioned actions are elite mixed martial arts ("MMA") athletes who allege violations of the antitrust laws pursuant to Section 2 of the Sherman Act, 15 U.S.C. § 2 ("Section 2"), against Defendant, Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC. Plaintiffs Cung Le, Nathan Quarry, and John Fitch filed the first of these actions on December 16, 2014. Plaintiffs Luis Javier Vasquez and Dennis Lloyd Hallman filed the second of these actions on December 22, 2014. Plaintiffs Brandon Vera and Pablo Garza filed the third of these actions on December 24, 2014 (Collectively, "the Complaints."). The Complaints have been consolidated by this Court. Dkt. 101.

The Complaints are the product of extensive factual investigation and legal analysis. *See* **Exhibit 1**, Declaration of Eric L. Cramer[1] ("Cramer Decl."), ¶¶ 14-15; **Exhibit 2**, Declaration of Joseph R. Saveri ("Saveri Decl."), ¶ 2. They reflect hundreds of hours of work by lawyers and professional staff. *Id*. Proposed Interim Co-Lead Class Counsel initiated these cases along with

---

[1]    The Declarations of Eric L. Cramer, Joseph R. Saveri, and Benjamin D. Brown are here resubmitted as Exhibits to this Motion; these Declarations were originally filed in the Northern District of California in support of the Motion to Appoint Interim Co-Lead Counsel, Dkt. 58, before these cases were transferred to the District of Nevada.

UNOPPOSED MOTION TO APPOINT INTERIM CO-LEAD CLASS COUNSEL AND INTERIM LIAISON COUNSEL

their co-counsel, including Robert Maysey of Warner Angle Hallam Jackson & Formanek, PLC, who is a highly experienced advocate in the MMA industry. *See* **Ex. 2**, Saveri Decl., ¶¶ 2-3, Ex. 1; **Ex. 1**, Cramer Decl., ¶ 14. The cases seek money damages and other redress on behalf of two proposed nationwide classes of similarly-situated elite MMA athletes. *See*, *e.g.*, *Le* Complaint ¶¶ 39, 46, 47, 54 (Dkt. 1).

The Complaints have generated intense public interest, leading to stories run on ESPN, Sports Illustrated, Yahoo Sports, Fox Sports, the Sporting News, Washington Post, LA Times, and Newsday, among other media outlets. *See*, *e.g.*, **Ex. 2**, Saveri Decl., Ex. 2.

Since filing these actions, Proposed Interim Co-Lead Class Counsel have taken several meaningful steps to prosecute these claims and protect the interests of Plaintiffs and other class members. As is described in more detail in **Ex. 2**, the Saveri Declaration, and the Declaration of Don Springmeyer ("Springmeyer Decl."), Plaintiffs have, among other things, served a set of document requests on the Defendant; fully briefed and argued the UFC's motion to transfer venue, fully briefed the UFC's motion to dismiss (Dkt. 71), engaged with counsel for Defendant in a Rule 26(f) conference; fully briefed the UFC's motion to stay discovery (Dkt. 120), served limited third-party discovery to ensure preservation of evidence; zealously represented the interests of Plaintiffs and other class members in this litigation to date; and have privately ordered themselves, by amicably creating an organizational structure to manage the day-to-day progress of this litigation efficiently. Among other things, Plaintiffs anticipate presenting a consolidated opposition to any responsive motions or pleadings to be filed by the Defendant.

Plaintiffs Gabe Ruediger and Mac Danzig filed a fourth action based on the same set of facts on February 4, 2015. *Ruediger, et al. v. Zuffa, LLC*, Case No. 5:15-cv-00521-NC (N.D. Cal.). Proposed Interim Co-Lead Class Counsel promptly coordinated with counsel for Ruediger and Danzig. Counsel for Ruediger and Danzig support this Motion and have agreed to work cooperatively with Proposed Interim Co-Lead Class Counsel in these actions on behalf of the class of elite MMA athletes. *See* **Ex. 2**, Saveri Decl., ¶ 5. Plaintiffs Kyle Kingsbury and Darren Uyenoyama filed the fifth of these actions on March 20, 2015. *Kinsbury, et al. v. Zuffa, LLC*, Case

No. 3:15-cv-01324 (N.D. Cal.). Proposed Interim Co-Lead Class Counsel are counsel for Kingbury and Uyenoyama.

The UFC is known for aggressive litigation tactics,[2] and has already begun to mount a vigorous defense to these claims—claims which could threaten its business model that, as Plaintiffs allege, is built on unfair business practices, foreclosure of rivals, and the exploitation of elite MMA athletes. *See Le* Complaint ¶¶ 107-152 (Dkt. 1). Appointment of Proposed Class Counsel would best provide Plaintiffs the legal representation to fight for the livelihoods of elite MMA athletes.

## III.    LEGAL STANDARD

Under Fed. R. Civ. P. 23(g)(3), a court has discretion whether to appoint class counsel before class certification.[3] When "overlapping, duplicative, or competing class suits are pending before a court … appointment of interim counsel is necessary to protect the interests of class members[.]" *White v. TransUnion, LLC*, 239 F.R.D. 681, 683 (C.D. Cal. 2006) (citing Manual § 21.11); *see also In re Air Cargo Antitrust Litig.*, 240 F.R.D. at 57 (where "multiple overlapping and duplicative class actions" are pending, interim class counsel designation is "probably essential for efficient case management"). A court considering the appointment of class counsel must consider the following criteria: "(i) the work counsel has done in identifying or

---

[2]    For example, the UFC pursued national litigation against dozens of its fans, including several fans in California, seeking money damages for alleged unauthorized viewing of UFC events. *See* **Ex. 2**, Saveri Decl., Exs. 4 & 5.

[3]    A court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). While neither Rule 23(g) nor the Advisory Committee Notes explicitly set forth the standards to be applied in choosing *interim* class counsel, courts have held that the same factors that apply in choosing class counsel upon class certification apply in choosing interim class counsel. *See In re Air Cargo Shipping Services Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006) ("Although neither the federal rules nor the advisory committee notes expressly so state, it appears to be generally accepted that the considerations set out in Rule 23(g)(1)(C), which governs appointment of class counsel once a class is certified, apply equally to the designation of interim class counsel before certification."); *Parkinson v. Hyundai Motor Am.*, No. CV06-345AHS (MLGX), 2006 WL 2289801 at *2 (C.D. Cal. Aug. 7, 2006) ("Rule 23(g) provides criteria to consider when appointing class counsel, without distinguishing interim counsel. Presumably the same factors apply, however.").

UNOPPOSED MOTION TO APPOINT INTERIM CO-LEAD CLASS COUNSEL AND INTERIM LIAISON COUNSEL

investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The focus in appointing lead counsel should be on the best interest of the parties and the Court. In determining an appropriate leadership, the Manual urges the court to ensure that designated counsel fairly represent the various interests in the litigation. Manual § 21.27 at 278. *See* Fed. R. Civ. P. 23(g)(4).

The most common and desirable means of selecting class counsel is "private ordering." Manual § 21.272 at 279. "The lawyers agree who should be lead class counsel and the court approves the selection after a review to ensure that the counsel selected is adequate to represent the class interests." *Id.* Efforts of plaintiffs' counsel to coordinate their activities among themselves are to be encouraged. Manual § 10.22 at 24.

Given the complexity of this antitrust matter, including the wide geographic dispersion of elite MMA athlete class members, it is appropriate for the Court to appoint three firms as interim class counsel. This practice is common in complex antitrust cases. *See, e.g., In re 5-Hour ENERGY Marketing and Sales Practices Litigation*, No. 13-ml-02438-PSG-PLA, Dkt. 25 (C.D. Cal. Nov. 8, 2013) ("In light of the size and scope of this case … the Court believes that the interests of the prospective class members will be best served by appointing three firms as Interim Co-Lead Class Counsel."); *Douglas v. Haier Am. Trading, LLC*, No. 5:11-cv-02911 EJD, 2011 U.S. Dist. LEXIS 91695 at *5 (N.D. Cal. Aug. 17, 2011); *In re Titanium Dioxide Antitrust Litigation*, 10-cv-00318-RDB, Dkt. 106 (D. Md. Apr. 1, 2011); *Meijer Distrib., Inc. v. Abbott Labs, Inc.*, No. 4:07-cv-06118, Dkt. 104 (N.D. Cal. Jun. 18, 2008) (appointing three firms as interim co-lead including Berger & Montague as one of the three leads); *In re Air Cargo Antitrust Litig.*, 240 F.R.D. 56, 58-59 (E.D.N.Y. 2006).

/ / /

/ / /

/ / /

UNOPPOSED MOTION TO APPOINT INTERIM CO-LEAD CLASS COUNSEL AND INTERIM LIAISON COUNSEL

## IV.   ARGUMENT

### A.   Proposed Interim Co-Lead Class Counsel Have Undertaken All the Investigation and Research Underpinning the Ultimate Fighting Championship Antitrust Litigation.

Fed. R. Civ. P. 23 (g)(1)(A)(i) directs the Court to consider "the work counsel has done in identifying and investigating" claims in the present action when weighing the appointment of lead counsel. Proposed Interim Co-Lead Class Counsel and the firms supporting their application for lead, including the Warner Angle firm, were the first—and to date the only—firms whose active investigation of the UFC's acquisitions and practices have resulted in lawsuits alleging violations of Section 2 of the Sherman Act. As is demonstrated in greater detail *infra*, Proposed Interim Co-Lead Class Counsel have investigated the underlying facts and law, filed the first cases, and diligently prosecuted the litigation to date. *See* **Ex. 1**, Cramer Decl., ¶ 14. They have demonstrated the ability to work cooperatively with others, including other attorneys for Plaintiffs, and intend to implement protocols to ensure the efficient, non-duplicative and cost-effective prosecution of this matter.

In addition to the substantial work to date conducting the factual investigation and developing the legal theories for the Complaints, Proposed Interim Co-Lead Class Counsel's work to date includes several significant tasks:

**First**, Proposed Interim Co-Lead Class Counsel served the Complaints, summons and related materials on Defendant. **Ex. 2**, Saveri Decl., ¶ 7.

**Second**, Proposed Interim Co-Lead Class Counsel responded to the UFC's motion to dismiss, which is now fully briefed; s*ee* Dkt. 28.

**Third**, Proposed Interim Co-Lead Class Counsel have served document requests on the UFC and third-party subpoenas on Twitter, Inc. and Google, Inc., in order to address a potential spoliation issue concerning what has appeared to be deletion of "tweets" by the UFC's President at or around the time the *Le* Complaint was filed. **Ex. 2**, Saveri Decl., ¶ 8. Plaintiffs have conducted an investigation of the issue and have taken steps to preserve potentially relevant data. *Id.*

UNOPPOSED MOTION TO APPOINT INTERIM CO-LEAD CLASS COUNSEL AND INTERIM LIAISON COUNSEL

**Fourth**, Proposed Interim Co-Lead Class Counsel full briefed and argued in response to the UFC's motion to transfer venue and filed a brief in response to the UFC's motion to stay discovery. Dkt. 39, 120.

**Fifth**, Proposed Interim Co-Lead Class Counsel have conducted a Fed. R. Civ. P. 23(f) conference with the UFC and begun to work out an e-discovery protocol.

**Sixth**, Proposed Interim Co-Lead Class Counsel, in conjunction with Plaintiffs' other attorneys, have taken measures to protect Plaintiffs' interests in connection with the UFC's disclosure of Plaintiffs Le, Quarry, Fitch, Vasquez, Hallman, Vera, and Garza's social security numbers, which the UFC made public for five days because of its failure to redact exhibits to a declaration from one of their in-house attorneys that was submitted with the UFC's motion to transfer. Proposed Interim Co-Lead Class Counsel promptly informed the UFC of the disclosure, so that the exhibits would be removed as soon as possible. **Ex. 2**, Saveri Decl., ¶ 9. The next morning, February 4, the UFC moved to have the exhibits removed from the Court's public docket, and the Court ordered their removal that same day. *Id.*; *see* Dkt. 45. On February 5, Proposed Interim Co-Lead Class Counsel demanded that, *inter alia*, the UFC (1) explain how the information was disclosed, so that Plaintiffs can be sure it will not happen again; (2) search the public domain for copies of the exhibits and ensure their removal; (3) investigate whether the information has been used; (4) pay for seven years of credit monitoring for each of Messrs. Le, Fitch, Quarry, Garza, Vera, Hallman, and Vazquez, and agree to reimburse these individuals for all consequential damages, if any, flowing from the improper disclosure of this information. *Id.* On February 6, the UFC responded by letter, providing an explanation for the transmission and updating Proposed Interim Co-Lead Class Counsel on its investigation of the consequences of the transmission. *Id.* UFC sent Proposed Interim Co-Lead Class Counsel another letter on February 12, providing an additional update. *Id*. Proposed Interim Co-Lead Class Counsel negotiated a resolution with the UFC's Counsel on Plaintiffs' behalf under which the UFC's Counsel agreed to pay for a monitoring service to protect the interests of the Plaintiffs. *See* Springmeyer Decl., ¶ 4.

**Seventh**, Proposed Interim Co-Lead Class Counsel drafted a proposed Stipulated Protective Order along the lines of the suggested model provided by the Northern District of California, and have discussed entry of the Protective Order with the UFC. *See* **Ex. 2**, Saveri Decl., ¶ 10. The UFC responded by proposing a number of changes from the Northern District's model. Plaintiffs are presently evaluating the UFC's revisions, and intend to discuss with the UFC any modifications that may be called for due to the transfer of the cases to the District of Nevada and the practices in this District. *See* Springmeyer Decl., ¶ 4.

**Eighth**, Proposed Interim Co-Lead Class Counsel have worked to integrate these cases, to ensure efficient as well as effective representation, and generally to advance this litigation consistent with the Federal Rules and principles of sound case management. *See* Fed. R. Civ. P. 1 (the Federal Rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding"). Proposed Interim Co-Lead Class Counsel promptly sought to relate the *Vasquez* and *Vera* matters to the *Le* Complaint, resulting in the consolidation of those three cases. **Ex. 2**, Saveri Decl., ¶ 11; *see also* Dkt. 18-19. Proposed Interim Co-Lead Class Counsel also sought to relate the *Ruediger* matter. *See* Dkt. 49. Proposed Interim Co-Lead Class Counsel filed a motion to consolidate these four matters on February 10, 2015, which would streamline these four matters considerably. *See* Dkt. 52. Proposed Interim Co-Lead Class Counsel discussed case management issues with the UFC's counsel in some detail, and obtained counsel for the UFC's agreement on nearly all terms of the [Proposed] Case Management Order submitted with the Motion to Consolidate, except that the UFC wanted consolidation to be for all purposes, while Plaintiffs had requested that consolidation be limited to pre-trial proceedings for the time being. *See* Dkt. 48-1 at ¶ 5. Additionally, Proposed Interim Co-Lead Class Counsel have divided the work among Plaintiffs' attorneys to ensure efficient and non-duplicative practices, and have continuously communicated with Plaintiffs' other attorneys. **Ex. 2**, Saveri Decl., ¶ 11.

Finally, in the interests of efficiency, and because Proposed Interim Co-Lead Class Counsel had no reason to believe that a motion to appoint counsel would be opposed, Proposed Interim Co-Lead Class Counsel sought to have interim counsel appointed through the Northern District of

UNOPPOSED MOTION TO APPOINT INTERIM CO-LEAD CLASS COUNSEL AND INTERIM LIAISON COUNSEL

California Court's administrative motion procedure. **Ex. 2**, Saveri Decl., ¶ 12. After that court directed Plaintiffs to submit their motion to appoint interim counsel through a noticed motion procedure, Proposed Interim Co-Lead Class Counsel promptly prepared such a motion. Dkt. 58. Before the motion could be acted on by that court, these cases were transferred.

**B.    Proposed Interim Co-Lead Class Counsel Have Substantial Experience in Leading the Prosecution of Antitrust Class Actions, and Are Leading Figures in the Antitrust Law Bar.**

Fed. R. Civ. P. 23(g)(1)(A)(ii) directs the Court to consider proposed class counsel's experience "in handling class actions, other complex litigation, and the types of claims asserted in the [present] action." *See* Fed. R. Civ. P. 23(g)(1)(A)(ii). Similarly, Fed. R. Civ. P. 23(g)(1)(A)(iii) directs the Court to consider "counsel's knowledge of the applicable law" in the present case. *See* Fed. R. Civ. P. 23(g)(1)(A)(iii). As set forth above and in the firm profiles attached as Exhibits to the Cramer, Brown, Saveri, and Springmeyer Declarations, and summarized below, Proposed Class Counsel have decades of substantial experience prosecuting complex litigation on behalf of a wide variety of plaintiffs in a wide range of antitrust and other types of class action litigation. The firms selected by Plaintiffs to serve as Interim Co-Lead Class Counsel have handled some of the largest and most important cases in recent years, have generated billions of dollars in settlements and verdicts for their clients, and have the necessary experience and resources to prosecute this litigation to a successful conclusion.

**1.    The Accomplishments of Berger & Montague, P.C.**

Described by *Chambers & Partners* as a "[b]outique firm with deep expertise in complex antitrust litigation," Berger & Montague pioneered the antitrust class action and has been engaged in the practice of complex and class action litigation for 44 years. *See* **Ex. 1**, Cramer Decl., ¶ 5. Since its founding by David Berger—one of the "fathers of the class action practice"—Berger & Montague has been a leading national advocate for clients and class members in many of the most important complex antitrust cases ever litigated, including, more recently, the largest private antitrust settlement ever achieved (over $5.7 billion) in the *Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, MDL No. 1720 (JG)(JO) (E.D.N.Y.). Berger & Montague has

UNOPPOSED MOTION TO APPOINT INTERIM CO-LEAD CLASS COUNSEL AND INTERIM LIAISON COUNSEL

1    won verdicts and settlements recovering over $40 billion for clients and class members. *Id.*

2        The U.S. edition of *The Legal 500* has recommended Berger & Montague as a "Top Tier

3    Firm" for representing plaintiffs in antitrust class action litigation and describes the firm as

4    "excellent," "easy to deal with," and "noted for the depth of its team." **Ex. 1**, Cramer Decl., ¶ 6.

5    Berger & Montague has also appeared on *The National Law Journal*'s "Hot List" of the Top

6    Plaintiffs' Law Firms in the United States in ten of the last twelve years. *Chambers & Partners* has

7    named Berger & Montague a leading antitrust law firm for eight consecutive years. *Id.* The firm

8    was also recently selected for inclusion on *The National Law Journal* and Law.com's inaugural list

9    of "Elite Trial Lawyers" recognizing law firms that "have done exemplary and cutting-edge work

10   on behalf of their clients and are established leaders in the area of plaintiff law." *Id.*

11       Over the past 44 years, Berger & Montague has served as lead or co-lead counsel in myriad

12   antitrust cases representing plaintiff classes alleging price fixing, vertical trade restraints,

13   monopolization and other anticompetitive conduct in diverse markets. **Ex. 1**, Cramer Decl., ¶ 7.

14       **Eric L. Cramer**, managing shareholder at Berger & Montague, has a national practice in

15   the field of complex litigation, primarily in the area of antitrust class actions, and repeatedly has

16   been selected by *Chambers & Partners* as one of Pennsylvania's top tier antitrust lawyers and in

17   2015 was nationally ranked in the field of antitrust; highlighted annually since 2011 by *The Legal*

18   *500* as one of the country's top lawyers in the field of complex antitrust litigation; repeatedly

19   deemed one of the "Best Lawyers in America;" and designated a "Super Lawyer" by *Philadelphia*

20   *Magazine* for many years in a row. **Ex. 1**, Cramer Decl., ¶ 10. In 2014, Mr. Cramer was selected by

21   *Philadelphia Magazine* as one of the top 100 lawyers in Philadelphia. *Id. Chambers & Partners* has

22   observed that Mr. Cramer is "really a tremendous advocate in the courtroom, with a very good

23   mind and presence." *Id.*

24       Mr. Cramer has prosecuted multiple complex antitrust matters and is responsible for

25   winning numerous significant settlements for his clients and class members totaling well over $2

26   billion. *See* **Ex. 1**, Cramer Decl., ¶ 11. Recently, Mr. Cramer and his team achieved a ground-

27   breaking settlement in an antitrust case relating to the over-the-road fleet payment card market in

28
                                                     11

*Comdata*. *Id.* The *Comdata* settlement, which received final approval in July 2014, provides for $130 million plus valuable prospective relief that rolled back much of the conduct plaintiffs had challenged as anticompetitive for a class including thousands of truck stops and retail fueling facilities across the country. *Id.* Mr. Cramer was also co-lead counsel and on the trial team of the *Meijer v. Abbott Labs.*, No. 07-5985 (N.D. Cal.), which settled in 2011 after three days of trial before Judge Wilken for $52 million. *Id.*

In addition to Mr. Cramer, shareholder **Michael Dell'Angelo** will also serve in a leading role for Berger & Montague. Michael Dell'Angelo is a member of the firm's Antitrust and Commodities & Options practice groups. **Ex. 1**, Cramer Decl., Ex. A. Mr. Dell'Angelo currently serves as court-appointed co-lead counsel in several major nationwide class actions, including *In re: Domestic Drywall Antitrust Litigation*, 2:13-MD-2437-MMB (E.D. Pa.), and *In re: Commodity Exchange, Inc., Gold Futures And Options Trading Litigation*, 1:14-MD-2548-VEC (S.D.N.Y). *Id.*

### 2.   The Accomplishments of Cohen Milstein Sellers & Toll PLLC.

One of the largest class action firms in the country, Cohen Milstein has more than 40 years' experience litigating complex antitrust matters. In recognition for the outstanding results achieved for its clients, *Legal 500* recently ranked Cohen Milstein as a Leading Plaintiff Class Action Antitrust Firm for the sixth year in a row, and *The National Law Journal* named Cohen Milstein to the Plaintiff's Hot List for the third year in a row. *See* **Exhibit 3**, Declaration of Benjamin D. Brown ("Brown Decl."), Ex. A. Deemed one of the "Most Feared Plaintiffs Firms" and "Competition Practice Group of the Year" in 2014 by *Law360*, Cohen Milstein has obtained record-setting results for its clients in several antitrust actions over the years, including a 2013 jury verdict of more than $400 million, before trebling, in *In re Urethane Antitrust Litigation* (D. Kan.). *Id.*

Cohen Milstein partners **Benjamin Brown** and **Richard Koffman**, both of whom will actively participate in the litigation of this matter, are both veterans of the Antitrust Division of the U.S. Department of Justice and of the plaintiffs' class action antitrust bar. *See* **Ex. 3**, Brown Decl., Ex. 1. *Legal 500* named Mr. Koffman one of a dozen or so "Leading Lawyers" in the field of antitrust plaintiff representation for each of the past four years, describing him as "a strong brief

UNOPPOSED MOTION TO APPOINT INTERIM CO-LEAD CLASS COUNSEL AND INTERIM LIAISON COUNSEL

writer and an excellent oral advocate." *Id.* A graduate of Yale Law School and former law clerk to Judge Anthony J. Scirica of the U.S. Court of Appeals for the Third Circuit and Judge James B. McMillan of the Western District of North Carolina, Mr. Koffman has served as lead counsel for the direct purchasers in numerous actions including *In re Urethane Antitrust Litigation* (D. Kan.) (settlements totaling $139.5 million and a trial verdict awarding plaintiffs more than $400 million, trebled, against a non-settling defendant), *In re Plasma-Derivative Protein Therapies Antitrust Litigation* (N.D. Ill.) (settled for $128 million), and *Wallach v. Eaton Corporation* (D. Del.). *Id.* In addition to his work on behalf of plaintiffs in antitrust matters, Mr. Koffman spent four years as a Senior Trial Attorney at the Department of Justice. *Id.*

   *The Legal 500* has recognized Benjamin Brown as one of the nation's leading class action antitrust attorneys, and Benchmark Litigation listed him as one of Washington D.C.'s "Leading Star" Plaintiffs' Litigators. *See* **Ex. 3**, Brown Decl., Ex. 1. Mr. Brown currently serves as co-lead counsel or on steering committees for plaintiffs in, among other cases, *In re Plasma-Derivative Protein Therapies Antitrust Litigation* (N.D. Ill.) (settled for $128 million); *Allen, et al. v. Dairy Farmers of America, Inc.* (D. Vt.); and *Carlin, et al. v. DairyAmerica, Inc.* (E.D. Ca.). *Id.* Mr. Brown served for four years as a trial attorney with the Antitrust Division of the United States Department of Justice, where he led and assisted in numerous investigations, litigations and trials involving anticompetitive conduct and mergers. *Id.* Mr. Brown also prosecuted criminal cases as a Special Assistant United States Attorney in the Eastern District of Virginia. *Id.* Prior to joining the Department of Justice, he was in private practice with Covington & Burling in Washington, D.C. *Id.* Mr. Brown served as a judicial law clerk for Chief Judge Juan R. Torruella of the U.S. Court of Appeals for the First Circuit. *Id.* Mr. Brown graduated *cum laude* from Harvard Law School and Phi Beta Kappa from the University of Wisconsin – Madison. *Id.*

### 3.   The Accomplishments of the Joseph Saveri Law Firm, Inc.

   Since its founding in 2012, the Joseph Saveri Law Firm, Inc. ("JSLF") has developed a track record of successful advocacy through prosecuting complex civil cases and antitrust class action cases in federal and state courts throughout the United States on its clients' behalf. *See* **Ex. 2**,

13

1  Saveri Decl., Ex. 6. Over the last two years, JSLF has produced settlements totaling over $615

2  million in antitrust class action cases.[4] *Id.*

3        **Joseph R. Saveri**, the firm's founder, has more than 25 years of professional and leadership

4  experience in litigating numerous antitrust claims on behalf of businesses, entrepreneurs,

5  individuals, consumers, and public officials negatively affected by price-fixing, cartel behavior,

6  monopolies and other anticompetitive business practices.[5] Additionally, JSLF team members have

7  significant sports law experience, including representing athletes and professional sports franchises.

8  *See* **Ex. 2**, Saveri Decl., Ex. 6. In 1992, Mr. Saveri joined the plaintiffs' firm that would eventually

9  become Lieff, Cabraser, Heimann & Bernstein ("Lieff"), where he founded the firm's Antitrust and

10 Intellectual Property Practice Group. *Id.* Mr. Saveri chaired this award-winning practice group for

11 his entire tenure at Lieff, and under his direction, it obtained over $4 billion in settlements through

12 prosecuting various novel and landmark antitrust class actions. *Id.*

13       Since founding JSLF, Mr. Saveri has served and continues to serve in leadership positions

14 through the firm's appointment in a number of significant antitrust class actions:

15 •   *In re Titanium Dioxide Antitrust Litigation*, **Case No. 10-cv-00318-RDB (D. Md.):** JSLF
16     served as Co-Lead Counsel with Gold Bennett, representing the titanium dioxide direct
    purchaser class in prosecuting their price-fixing against manufacturers. Mr. Saveri was
    responsible for directing and conducting all phases of the litigation and trial preparation.
17     The case settled on the day before the start of trial, with the complete settlement ultimately
    totaling $163.5 million. **Ex. 2**, Saveri Decl., Ex. 6.

18

19 •   *In re High-Tech Employee Antitrust Litigation*, **Case No. ll-cv-2509 (N.D. Cal.)**: JSLF
    currently serves as one of the Lead Counsel for a class of high-tech employees denied job
20     opportunities by defendants' unlawful agreements to not recruit or hire each other's
    employees. Mr. Saveri's tireless prosecution of this case has been profiled throughout the
    media (Wall Street Journal, New York Times, Wired, CBS Evening News, etc.) over the last
21     four years. Mr. Saveri investigated and initiated the litigation and has been responsible for
    all phases of this litigation, in which many of the most powerful companies in Silicon
22     Valley were named as defendants. In 2013, three defendants settled for $20 million, and in

23 _____

24 [4]  *See* the Joseph Saveri Law Firm profile, **Ex. 2**, Saveri Decl., Ex. 6. In 2013 and 2014, the
Joseph Saveri Law Firm was recognized as a "Best Law firm" by U.S. News and World Report. *Id*.

25 [5]  Mr. Saveri is an AV peer-rated attorney who was recognized as a top-ranked attorney by

26 Chambers USA in 2014, and has been recognized as a Northern California Super Lawyer from
2006 to 2014. *See id.*, Ex. 6.

27

28

UNOPPOSED MOTION TO APPOINT INTERIM CO-LEAD CLASS COUNSEL AND INTERIM LIAISON
COUNSEL

January 2015 the remaining defendants (Adobe, Apple, Google, and Intel) agreed to settle for $415 million. *Id.*

- ***In re Capacitors Antitrust Litigation* Case No. 14-cv-03264 (N.D. Cal.):** JSLF has been appointed Interim Lead Class Counsel representing a class of direct purchasers of capacitors used in electronic devices. Plaintiffs allege that Defendants formed a cartel and conspired to fix, raise and stabilize prices in the multi-billion dollar market for aluminum, tantalum, and film capacitors. *Id.*

- ***In re Lidoderm Antitrust Litigation*, Case No. 14-md-02521-WHO (N.D. Cal.):** Mr. Saveri serves as Court-appointed Liaison Counsel for the Indirect Purchaser Plaintiffs in this case, who allege violation of state law antitrust claims by pharmaceutical companies that entered a reverse payment settlement agreement relating to patent infringement litigation over the local analgesic drug Lidoderm. *Id.*

### 4.     The Accomplishments of Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP

Wolf, Rifkin, Shapiro, Schulman & Rabkin LLP ("Wolf Rifkin") is eminently qualified to act as class liaison counsel in this action. Wolf, Rifkin was founded 1977 and is comprised of a team of over 40 attorneys who handle cases in all areas of law, with offices in Los Angeles, Las Vegas, and Reno. *See* Springmeyer Decl., ¶ 2. The Firm's clientele includes individuals as well as businesses ranging from fledgling firms to Fortune 500 companies. *Id.* Within the last three years, Wolf, Rifkin has been designated as lead counsel for class actions pending in six separate states, aside from Nevada. *Id.* Within the last year here in Nevada, Wolf Rifkin has been designated as co-lead class counsel by Hon. Jennifer Dorsey in the conditionally certified FLSA collective and class action entitled *Cardoza v. Bloomin' Brands, Inc.*, 2:13-cv-01820-JAD-NJK (a case involving a national putative class of approximately 135,000 hourly employees at Outback Steakhouse restaurants). *Id.* Wolf Rifkin has an experienced and available team of attorneys and staff, led by Don Springmeyer, as well as all necessary resources, to fully perform all functions of liaison counsel for this litigation.

**Don Springmeyer**, Wolf, Rifkin's litigation partner in charge of class action and complex litigation, has 34 years of experience in high stakes litigation including class actions of all types, mass torts ranging from medical device and pharmaceutical products to components of home building construction, residential and commercial construction defects, real estate and condominium litigation, water rights/environmental, and insurance bad faith. *See* Springmeyer

15

1  Decl., ¶ 2. Mr. Springmeyer was named to 2012 and 2013 "Top Lawyers: 100 top lawyers in

2  Southern Nevada" by the business weekly Vegas Inc. *Id*. at ¶ 3. Mr. Springmeyer was honored as

3  the first Trial Lawyer of the Year by the Nevada Trial Lawyers Association in 1997, in recognition

4  of his work on the infant formula price-fixing class actions, and his pro bono work on health

5  insurance coverage cases for breast cancer victims. *Id*. He has been AV® Peer Review Rated 5.0

6  through Martindale-Hubble for 18 years. *Id*. Mr. Springmeyer also conducts an extensive appellate

7  practice, appearing in multiple cases before the Nevada Supreme Court, and the United States

8  Courts of Appeal for the Ninth, Fourth, Seventh, Sixth, and Eleventh Circuits. *Id*. He graduated

9  from Yale College, *cum laude*, and the University of Wisconsin-Madison Law School, *cum laude*.

10 *Id.* at ¶ 2. Mr. Springmeyer then served as a judicial law clerk to Senior United States District

11 Judge Bruce R. Thompson, District of Nevada. *Id*. at ¶ 2.

12
13        **C.**    **Proposed Class Counsel Will Commit the Time, Staffing and Monetary Resources Necessary to Prosecute this Action.**

14       Counsel responsible for prosecuting Plaintiffs' claims must be able to dedicate very

15 significant resources to advance the claims of the two proposed classes. *See* Fed. R. Civ. P.

16 23(g)(1)(A)(iv). Plaintiffs' livelihoods are invested in this litigation, as the case seeks recovery for

17 years of under-compensation for elite MMA fighters as well as important prospective relief to

18 correct the UFC's unlawful conduct and create a free and fair marketplace going forward.

19       In all likelihood, Plaintiffs face a lengthy and resource-intensive fight. The UFC is a deep-

20 pocketed defendant, described by Forbes Magazine as the "Ultimate Cash Machine" (*Le* Complaint

21 ¶ 8) (Dkt. 1), with the resources to hire world-class defense counsel to fight Plaintiffs' claims.

22 Proposed Interim Co-Lead Class Counsel have more than sufficient time and monetary resources,

23 as well as the necessary roster of talented attorneys and capable professional staff, to litigate

24 Plaintiffs' claims efficiently and aggressively, and to pursue all expert discovery that may be

25 necessary to prove their claims. *See* **Ex. 3**, Brown Decl., ¶ 5; **Ex. 1**, Cramer Decl., ¶¶ 16-17; **Ex. 2**,

26 Saveri Decl., ¶ 13.

27
28

UNOPPOSED MOTION TO APPOINT INTERIM CO-LEAD CLASS COUNSEL AND INTERIM LIAISON COUNSEL

## V.      CONCLUSION

For the foregoing reasons, Berger & Montague, P.C.; Cohen Milstein Sellers & Toll PLLC; and the Joseph Saveri Law Firm, Inc., should be appointed as Plaintiffs' Interim Co-Lead Class Counsel; and Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP should be appointed as Plaintiffs' Interim Liaison Counsel.

DATED 9th day of July, 2015.

**WOLF, RIFKIN, SHAPIRO,
SCHULMAN & RABKIN, LLP**

By:    _/s/ Don Springmeyer_
Don Springmeyer
Nevada Bar No. 1021
Bradley S. Schrager
Nevada Bar No. 10217
Justin C. Jones
Nevada Bar No. 8519
3556 E. Russell Road, Second Floor
Las Vegas, Nevada 89120
(702) 341-5200/Fax: (702) 341-5300
dspringmeyer@wrslawyers.com
bschrager@wrslawyers.com
jjones@wrslawyers.com

**COHEN MILSTEIN SELLERS & TOLL,
PLLC**
Benjamin D. Brown
Richard A. Koffman
Hiba Hafiz
1100 New York Ave., N.W., Suite 500, East Tower
Washington, DC 20005
Telephone: (202) 408-4600/Fax: (202) 408 4699
bbrown@cohenmilstein.com
rkoffman@cohenmilstein.com
hhafiz@cohenmilstein.com

**BERGER & MONTAGUE, P.C.**
Eric L. Cramer
Michael Dell'Angelo
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000/Fax: (215) 875-4604
ecramer@bm.net
mdellangelo@bm.net

17

1

2
**JOSEPH SAVERI LAW FIRM, INC.**
Joseph R. Saveri

3
Joshua P. Davis
Matthew Weiler

4
Kevin E. Rayhill
505 Montgomery Street, Suite 625

5
San Francisco, California 94111
Telephone: (415) 500-6800/Fax: (415) 395-9940

6
jsaveri@saverilawfirm.com
jdavis@saverilawfirm.com

7
mweiler@saverilawfirm.com
krayhill@saverilawfirm.com

8

9
**WARNER ANGLE HALLAM JACKSON &**

10
**FORMANEK PLC**
Robert C. Maysey

11
Jerome K. Elwell
2555 E. Camelback Road, Suite 800

12
Phoenix, AZ 85016
Telephone: (602) 264-7101/Fax: (602) 234-0419

13
rmaysey@warnerangle.com
jelwell@warnerangle.com

14

15
**LAW OFFICE OF FREDERICK S.**
**SCHWARTZ**

16
Frederick S. Schwartz
15303 Ventura Boulevard, #1040

17
Sherman Oaks, CA 91403
Telephone: (818) 986-2407/Fax: (818) 995-4124

18
fred@fredschwartzlaw.com

19
**SPECTOR ROSEMAN KODROFF &**

20
**WILLIS, P.C.**
Jeffrey J. Corrigan

21
Jay S. Cohen
1818 Market Street – Suite 2500

22
Philadelphia, PA 19103
Telephone: (215) 496-0300/Fax: (215) 496-6611

23
espector@srkw-law.com
jcorrigan@srkw-law.com

24
jcohen@srkw-law.com
wcaldes@srkw-law.com

25

26

27

28

18
UNOPPOSED MOTION TO APPOINT INTERIM CO-LEAD CLASS COUNSEL AND INTERIM LIAISON
COUNSEL

1

## CERTIFICATE OF SERVICE

2         I hereby certify that on this 9th day of July, 2015, a true and correct copy of **UNOPPOSED**

3    **MOTION TO APPOINT INTERIM CO-LEAD CLASS COUNSEL AND INTERIM**

4    **LIAISON COUNSEL** was served via the United States District Court CM/ECF system on all

5    parties or persons requiring notice.

6

7                         By:   */s/ Christie Rehfeld*

8                              Christie Rehfeld, an Employee of
                          WOLF, RIFKIN, SHAPIRO, SCHULMAN &
                          RABKIN, LLP

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19

UNOPPOSED MOTION TO APPOINT INTERIM CO-LEAD CLASS COUNSEL AND INTERIM LIAISON
COUNSEL