WILLIAM A. ISAACSON (*Pro Hac Vice* pending)
(wisaacson@bsfllp.com)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave, NW, Washington, DC 20015
Telephone: (202) 237-2727; Fax: (202) 237-6131

JOHN F. COVE, JR  (*Pro Hac Vice* pending)
(jcove@bsfllp.com)
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900, Oakland, CA 94612
Telephone: (510) 874-1000; Fax: (510) 874-1460

RICHARD J. POCKER #3568
(rpocker@bsfllp.com)
BOIES, SCHILLER & FLEXNER LLP
300 South Fourth Street, Suite 800, Las Vegas, NV 89101
Telephone: (702) 382 7300; Fax: (702) 382 2755

DONALD J. CAMPBELL #1216
(djc@campbellandwilliams.com)
J. COLBY WILLIAMS  #5549
(jcw@campbellandwilliams.com)
CAMPBELL & WILLIAMS
700 South 7th Street, Las Vegas, Nevada 89101
Telephone: (702) 382-5222; Fax: (702) 382-0540

*Attorneys for Defendant* Zuffa, LLC, d/b/a
Ultimate Fighting Championship and UFC

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Cung Le, Nathan Quarry, Jon Fitch, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>    Defendant. | Lead Case No.: 2:15-cv-01045-RFB-(PAL)<br><br>Member Case Nos.:<br>   2:15-cv-01046-RFB-(PAL)<br>   2:15-cv-01055-RFB-(PAL)<br>   2:15-cv-01056-RFB-(PAL)<br>   2:15-cv-01057-RFB-(PAL)<br><br>**DEFENDANT ZUFFA, LLC'S REPLY IN SUPPORT OF MOTION TO STAY DISCOVERY** |

| | |
|---|---|
| Luis Javier Vazquez and Dennis Lloyd Hallman, on behalf of themselves and all others similarly situated, | Case No.  2:15-cv-01055 RFB-(PAL) |
| Plaintiffs, | |
| v. | |
| Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC, | |
| Defendant. | |
| Brandon Vera and Pablo Garza, on behalf of themselves and all others similarly situated, | Case No.  2:15-cv-01056 RFB-(PAL) |
| Plaintiffs, | |
| v. | |
| Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC, | |
| Defendant. | |
| Gabe Ruediger and Mac Danzig, on behalf of themselves and all others similarly situated, | Case No.  2:15-cv-01057 RFB-(PAL) |
| Plaintiffs, | |
| v. | |
| Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC, | |
| Defendant. | |
| Kyle Kingsbury and Darren Uyenoyama, on behalf of themselves and all others similarly situated, | Case No. 2:15-cv-01046 RFB-(PAL) |
| Plaintiffs, | |
| v. | |
| Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC, | |
| Defendant. | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

I.     Staying Discovery Until Resolution of the Motion to Dismiss Serves This
       Court's "Prime Directive" of Securing the Efficient Determination of This
       Action.................................................................................................................... 2

II.    Plaintiffs' Opposition Ignores *Twombly* and Other Relevant Precedent. ........... 2

III.   Plaintiffs' Opposition Confirms the Weakness of Their Complaints and the
       Strength of Zuffa's Motion to Dismiss. ............................................................... 7

       A.    Plaintiffs' "Monopoly Broth" Approach Does Not Salvage Their Claims
             or Justify Immediate Discovery. ............................................................... 8

       B.    Plaintiffs Mischaracterize Their Own Pleading Deficiencies as "Factual
             Disputes" or "Defenses" and Otherwise Distort Zuffa's Arguments. .................. 11

             1.    Plaintiffs' Failure to Plausibly Allege Foreclosure of So-Called
                   "Elite Professional MMA Fighters" Is a Pleading Deficiency, Not a
                   Factual Contention and Requires No Discovery to Resolve. ........................ 11

             2.    Plaintiffs' Implausible Conclusions of Foreclosure of Sponsors,
                   Venues, and Media Outlets Are Fatally Flawed............................................ 13

             3.    Plaintiffs' Alleged Relevant Market Definition Fails As A Matter of
                   Law. ...................................................................................................... 14

             4.    Plaintiffs' Allegations That Zuffa Refused to "Co-Promote" Events
                   with Rivals Cannot as a Matter of Law Support Its Claims. ......................... 15

             5.    Plaintiffs' Allegations Related to Intellectual Property Do Not Give
                   Rise to an Antitrust Cause of Action. ....................................................... 15

             6.    Plaintiffs' Failure to Allege Facts Showing That Zuffa's
                   Acquisitions Are Anticompetitive Is a Pleading Deficiency, and
                   Requires No Discovery to Resolve............................................................. 15

IV.    Plaintiffs' Suggestion That Discovery Can Cure the Complaints' Deficiencies Is
       Wrong. ................................................................................................................ 16

V.     The Expansive Nature of the Discovery Sought and the Minimal Prejudice
       Resulting From a Stay Also Favor Granting the Motion. ..................................... 17

CONCLUSION ................................................................................................................ 19

1

2

3

4

<u>TABLE OF AUTHORITIES</u>

**Cases**

*Abbyy USA Software House, Inc. v. Nuance Commc'ns Inc.*,
  No. C 08-01035 JSW, 2008 WL 4830740 (N.D. Cal. Nov. 6, 2008) ...................................... 10

*Allied Orthopedic Appliances, Inc. v. Tyco Health Care Grp., LLP*,
  592 F.3d 991 (9th Cir. 2010)................................................................................................... 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................................. 19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)................................................. passim

*Blankenship v. Hearst Corp.*,
  519 F.2d 418 (9th Cir. 1975)...................................................................................................... 6

*Castro v. Sanofi Pasteur, Inc.*,
  No. 2:11-cv-7178, Dkt. 102 (D.N.J. July 18, 2012).................................................................. 7

*CDC Techs, Inc. v. IDEXX Labs., Inc.*,
  186 F.3d 74 (2d Cir. 1999)........................................................................................................ 10

*Chuck's Feed & Seed Co. v. Ralston Purina Co.*,
  810 F.2d 1289 (4th Cir. 1987)................................................................................................... 13

*City of Groton v. Conn. Light & Power Co.*,
  662 F.2d 921 (2d Cir. 1981)................................................................................................. 8, 10

*Davis v. Nevada*,
  No. 3:13-CV-00559-MMD, 2014 WL 1308347 (D. Nev. Mar. 31, 2014).................... 2, 3, 8, 19

*DM Research, Inc. v. College of Am. Pathologists*,
  170 F.3d 53 (1st Cir. 1999)......................................................................................................... 5

*DSM Desotech Inc. v. 3d Sys. Corp.*,
  No. 08 CV 1531, 2008 WL 4812440 (N.D. Ill. Oct. 28, 2008) ................................................. 5

*Forest River, Inc. v. Heartland Recreational Vehicles, LLC*,
  No. 3:08-cv-490-JD, 2012 WL 4049268  (N.D. Ind. Sept. 12, 2012) ....................................... 6

*Gonzalez v. Planned Parenthood of Los Angeles*,
  759 F.3d 1112 (9th Cir. 2014).................................................................................................. 12

*Grand Canyon Skywalk Dev. LLC v. Steele*,
  No. 2:13-CV-00596-JAD, 2014 WL 60216  (D. Nev. Jan. 7, 2014) .................................... 7, 18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*In re Capacitors Antitrust Litig.*,
  No. 3:14-cv-3264 (Dkt. 309 at 2) (Dkt. 514 at 2) (N.D. Cal.) ...................................... 6

*In re Graphics Processing Units Antitrust Litig.*,
  No. C 06-07417 WHA, 2007 WL 2127577 (N.D. Cal. July 24, 2007) ................................ 5, 19

*In re Lithium Ion Batteries Antitrust Litig.*,
  No. 13-MD-02420 YGR, 2013 WL 2237887 (N.D. Cal. May 21, 2013)................................ 6

*Kendall v. Visa U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir. 2008)........................................................................................... 5

*Masimo Corp. v. Tyco Health Care Grp., L.P.*,
  No. CV 02-4771 MRP, 2004 WL 5907538  (C.D. Cal. Jun. 10, 2004)..................................... 9

*Nexstar Broadcasting, Inc. v. Granite Broadcasting Corp.*,
  No. 1:11-cv-249, 2011 WL 4345432 (N.D. Ill. Sept. 15, 2011) ...................................... 3, 8

*Omega Envtl., Inc. v. Gilbarco, Inc.*,
  127 F.3d 1157 (9th Cir. 1997)................................................................................ 9, 10, 14

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
  124 F.3d 430 (3d Cir. 1997).............................................................................................. 14

*Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*,
  No. 12-CV-05847-JST, 2013 WL 3242245 (N.D. Cal. Jun. 25, 2013) .................................... 11

*Rosenstein v. Clark Cnty. Sch. Dist.*,
  No. 2:13-CV-1443-JCM-VCF, 2014 WL 2835074 (D. Nev. June 23, 2014) ........................... 7

*Rutman Wine Co. v. E. & J. Gallo Winery*,
  829 F.2d 729 (9th Cir. 1987)........................................................................................... 3, 4

*Somers v. Apple*,
  729 F.3d 953 (9th Cir. 2013)............................................................................................. 5

*Spinelli v. NFL*,
  -- F. Supp. 3d --, No. 13 CIV 7398 (RWS), 2015 WL 1433730 (S.D.N.Y. Mar. 27, 2015) ..... 19

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001)........................................................................................ 11, 12

*Starr v. County of Los Angeles*,
  659 F.3d 850 (9th Cir. 2011)............................................................................................. 3

*Tampa Elec. Co. v. Nashville Coal Co.*,
  365 U.S. 320 (1949) .................................................................................................... 13, 14

*Tracy v. United States*,
  243 F.R.D. 662 (D. Nev. 2007)......................................................................................... 4

*Tradebay, LLC v. eBay, Inc.*,
    278 F.R.D 597 (D. Nev. 2011) ............................................................................ passim

*Universal Delaware, Inc. v. Comdata Corp.*,
    No. 2:07-cv-1078, Dkt. 180 (E.D. Pa. Nov. 12, 2009) ............................................ 7

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004) ............................................................................................... 15

*Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*,
    513 F. Supp. 1100 (E.D. Pa. 1981) ...................................................................... 10

**Other Authorities**

IIA Areeda & Hovenkamp,
    Antitrust Law, ¶ 310c2 (4th ed. 2014) .................................................................... 8

**Rules**

Federal Rules of Civil Procedure
    Rule 1 ............................................................................................................. passim
    Rule 12(b)(6) ........................................................................................................... 8

1

**INTRODUCTION**

2       Plaintiffs' Opposition to Defendant Zuffa, LLC's ("Zuffa") motion for a stay of discovery

3   pending resolution of the fully briefed Motion to Dismiss misstates the applicable legal standard

4   for evaluating the Motion and ignores important principles enunciated by the Supreme Court in

5   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Plaintiffs avoid grappling with the "real

6   questions" about the merits of Plaintiffs' claims raised in the Motion to Dismiss, and rely instead

7   on a rehash of the Complaints' conclusory assertions, such as that (1) Zuffa has locked up

8   "virtually all" so-called "Elite Professional MMA Fighters" "in perpetuity"; (2) Zuffa has

9   foreclosed competitors' ability to obtain sponsors, venues, and TV distribution outlets; and (3)

10  Zuffa faces no competitive rivals in MMA promotion. As the Motion to Dismiss establishes,

11  none of these conclusions withstands scrutiny under a *Twombly* analysis.

12      Plaintiffs' argument that their allegations must be considered as a whole, without regard to

13  the plausibility of any single conclusion, does not save their deficient Complaints because they

14  have not adequately alleged facts showing anticompetitive conduct or foreclosure either

15  individually or collectively. Similarly, Plaintiffs' argument that discovery is necessary to

16  "confirm" their contentions fails because (1) *Twombly* held that antitrust plaintiffs are not entitled

17  to discovery in the absence of a viable complaint and (2) discovery cannot cure the fundamental

18  flaws in the Complaints.

19      Plaintiffs do not dispute that the discovery they seek encompasses nearly every aspect of

20  Zuffa's business and would be massively expensive and burdensome. Nor do they dispute that,

21  even if Plaintiffs' claims ultimately survive in some form, the Court's evaluation of the

22  contentions in the Complaint and the arguments in the Motion to Dismiss would be helpful in

23  guiding discovery. Nor have Plaintiffs shown that any prejudice would result from a stay or any

24  particular need for expedition that compels starting discovery immediately, without the benefit of

25  this evaluation. This Court should exercise its discretion under Rule 1 to stay discovery pending

26  resolution of the Motion to Dismiss because that is the most just and efficient result under the

27  circumstances presented in this case at this time.

28

**ARGUMENT**

**I.      Staying Discovery Until Resolution of the Motion to Dismiss Serves This Court's "Prime Directive" of Securing the Efficient Determination of This Action.**

Zuffa seeks only a brief stay of discovery pending resolution of the Motion to Dismiss. The Motion to Dismiss is fully briefed and awaiting argument,[1] and, Zuffa respectfully submits, should result in the dismissal of Plaintiffs' entire case, or at a minimum, substantially narrow and guide the scope of discovery.  A stay in this instance is entirely consistent with this Court's "prime directive" in assessing a motion to stay, that is, to advance the goal of Rule 1 "'to secure the just, speedy and inexpensive determination of every action.'"  *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D 597, 602-03 (D. Nev. 2011) (citing Fed. R. Civ. P. 1).  Where a motion to dismiss raises "real question[s]" about a plaintiff's claims and offers an opportunity for the court to sharpen the focus of discovery by disposing of any legally insufficient theories, a stay of discovery is appropriate.  *Davis v. Nevada*, No. 3:13-CV-00559-MMD, 2014 WL 1308347, at *3-4 & nn.2-3 (D. Nev. Mar. 31, 2014).

To determine whether such "real questions" warrant a stay of any or all discovery, courts take a "preliminary peek" at the pending dispositive motion, not "to prejudge its outcome," but "to evaluate the propriety of an order staying or limiting discovery with the goal of accomplishing the objectives of Rule 1."  *Tradebay*, 278 F.R.D. at 603.  A "preliminary peek" into Zuffa's Motion to Dismiss shows that a stay of discovery pending resolution of this fully-briefed motion would best accomplish the goals of Rule 1 by ensuring that the Court, the parties, and third parties are not prematurely saddled with the burden of substantial unnecessary discovery and its attendant disputes based on allegations that fail as a matter of law.

**II.      Plaintiffs' Opposition Ignores *Twombly* and Other Relevant Precedent.**

Plaintiffs argue that they should be able to conduct a burdensome and expensive fishing expedition into Zuffa's documents unless the Court is certain after a "preliminary peek" both that

---

[1] In their June 12 status report to the Court, the parties indicated that the Motion to Dismiss was fully briefed and requested that the Court set a date for argument. Dkt. 102.

the Complaints will be dismissed with prejudice <u>and</u> that "discovery would be irrelevant to the issues raised in the Motion to Dismiss." Opp. at 1.[2]  This position is contrary to the principles the Supreme Court set forth in *Twombly,* Ninth Circuit precedent such as *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729 (9th Cir. 1987), and this Court's guidance in *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597 (D. Nev. 2011).  Here, a stay is appropriate because "Plaintiff's action is likely to either be dismissed in its entirety or at least reduced in scope."  *Davis v. Nevada*, No. 3:13-CV-00559-MMD, 2014 WL 1308347, at *4-*5 (D. Nev. Mar. 31, 2014).  Thus, a preliminary peek at Zuffa's Motion to Dismiss raises a "real question" as to whether Plaintiffs' Complaints will survive the motion intact.

The Ninth Circuit and the Supreme Court have warned that antitrust claims are "unique" and "prone to burdensome discovery requests."  *Starr v. County of Los Angeles*, 659 F.3d 850, 851-52 (9th Cir. 2011) (citing *Twombly*, 550 U.S. 544).  These burdens are compounded "when multiple theories of antitrust liability are advanced," given that "defendants face a potentially greater burden because the scope of discovery must be further expanded to encompass each type of alleged anticompetitive action."  *Nexstar Broadcasting, Inc. v. Granite Broadcasting Corp.*, No. 1:11-cv-249, 2011 WL 4345432, at *2 (N.D. Ill. Sept. 15, 2011) (granting a stay of discovery).

The Supreme Court has made clear that a district court has the power to require a plaintiff to demonstrate that it can state a valid legal claim before proceeding with massive discovery.  *Twombly*, 550 U.S. at 558 ("a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed"); *Rutman Wine*, 829 F.2d at 738; *Tradebay*, 278 F.R.D. at 601.  In any analysis, the Court must be guided by the Rule 1 inquiry into what is the most just and efficient path forward.  *Tradebay*, 278 F.R.D. at 603.

No Nevada court has required a defendant to establish that a complaint will be dismissed with prejudice and that the discovery requested is "irrelevant" to the issues raised in the motion

---

[2] Plaintiffs' Opposition to the UFC's Motion to Stay ("Opp."), Dkt. 120.

1   (Opp. at 1) in order to obtain a stay of discovery.  Instead, Nevada courts follow a two-prong

2   approach, which Zuffa readily meets.  *Tradebay*, 278 F.R.D. at 602; Mot. at 6.[3]

3        Plaintiffs assert that "If discovery could be used to bolster a deficient complaint that was

4   dismissed with leave to amend, then a discovery stay should not be granted."  Opp. at 15 (citing

5   *Tracy v. United States*, 243 F.R.D. 662, 664-65 (D. Nev. 2007)).  First, *Tracy* addressed only the

6   legal standard for granting a motion to dismiss.  It neither considered nor discussed a motion to

7   stay.  Second, Plaintiffs' approach would render *Twombly* and its progeny a nullity.  "The

8   purpose of Federal Rule of Civil Procedure 12(b)(6) is to enable defendants to challenge the legal

9   sufficiency of a complaint without subjecting themselves to discovery."  *Tradebay*, 278 F.R.D. at

10   597 (citing *Rutman Wine,* 829 F.2d at 738).

11        Plaintiffs do not contest that *Twombly* warned courts against allowing parties to proceed to

12   burdensome and costly discovery in antitrust cases without first determining that plaintiffs have

13   presented a viable complaint.  *Twombly*, 540 U.S. at 555-56.  Nor do Plaintiffs contest that the

14   discovery they seek would be both burdensome and expensive.  *See* Opp. at 20.  Instead,

15   Plaintiffs try to distinguish *Twombly* on its facts and its procedural posture.  Opp. at 9 n.11.

16   Neither argument is persuasive.

17        Plaintiffs distinguish *Twombly* because it was a Section 1 case based on alleged

18   circumstantial evidence of a conspiracy among competitors.  *Id.*  That distinction highlights the

19   reason for a stay in this case.  Unlike a conspiracy case involving alleged secret agreements,

20   Plaintiffs' case is based primarily on Zuffa's allegedly anticompetitive contracts with fighters,

21   contracts to which each Plaintiff was a party and to which each Plaintiff has ready access.

22   Plaintiffs also possess information from a wide variety of public sources and their own resources

23   relating to competition in the industry.  As the Motion to Dismiss demonstrates, notwithstanding

24   the information available to them, Plaintiffs have not stated a viable claim under the Sherman

25   Act.  Their inability to do so does not entitle them to demand production of potentially millions of

26   pages of documents in hopes of finding something else to support their claim.  *Twombly*, 550 U.S.

27

28   [3] Zuffa, LLC's Motion to Stay Discovery ("Mot."), Dkt. 103.

1    at 556; *see also DM Research, Inc. v. College of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir.

2    1999) (in antitrust litigation, "the price of entry, even to discovery, is for the plaintiff to allege a

3    factual predicate concrete enough to warrant further proceedings").

4         Plaintiffs argue that *GPU*[4] interpreted *Twombly* as using "concerns about the breadth of

5    antitrust discovery to identify pleading standards for complaints," not vice-versa.  Opp. at 9 n.11.

6    Plaintiffs are, of course, correct that *Twombly* explicitly addresses the standard for pleading an

7    antitrust claim, not a discovery stay.  But, as the very next sentence in *GPU* goes on to explain,

8    "to allow antitrust discovery prior to sustaining a complaint would defeat one of the rationales of

9    *Twombly*, at least when the discovery would be burdensome."  2007 WL 2127577, at *4.

10   Therefore, it is vital to take into account, as the *GPU* court did, the important considerations

11   articulated in *Twombly* in evaluating the discovery stay motion under Rule 1.[5]  Burdensome and

12   expensive discovery should not go forward before the Court has the chance to assess whether the

13   *Twombly* pleading standard has been met.

14        Since *Twombly*, courts have insisted that antitrust plaintiffs must plead sufficient, specific

15   facts to withstand a motion to dismiss before they are entitled to discovery.  *Somers v. Apple*, 729

16   F.3d 953, 966 (9th Cir. 2013) ("insistence on specificity of facts is warranted before permitting a

17   case to proceed into costly and protracted discovery in an antitrust case, especially where, as here,

18   the potential expense of discovery is obviously great"); *Kendall v. Visa U.S.A., Inc.*, 518 F.3d

19   1042, 1047 (9th Cir. 2008) ("discovery in antitrust cases frequently causes substantial

20   expenditures and gives the plaintiff the opportunity to extort large settlements even where he does

21   not have much of a case"); *accord DSM Desotech Inc. v. 3d Sys. Corp.*, No. 08 CV 1531, 2008

22   WL 4812440, at *2 (N.D. Ill. Oct. 28, 2008) (finding that the "hefty costs of antitrust discovery is

23   not . . . tantamount to an automatic prohibition on discovery" but *Twombly* does "suggest the

24

25   [4] *In re Graphics Processing Units Antitrust Litig.*, No. C 06-07417 WHA, 2007 WL 2127577, at *4 (N.D. Cal. July 24, 2007) ("*GPU*").

26   [5] It should be noted that the burden of discovery in *GPU* was far less than here because the defendants there had received a grand jury subpoena in a federal price-fixing investigation and at

27   least initially had only to turn over documents they had already collected, reviewed and produced to the grand jury.  *GPU*, 2007 WL 2127577, at *5.

28

1    court should be particularly mindful of the course of discovery it will authorize in antitrust cases"

2    where defendants challenge the sufficiency of the complaint).

3         Courts have been clear since *Twombly* that where discovery would be burdensome, a stay

4    is appropriate. *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420 YGR, 2013 WL

5    2237887, at *3 (N.D. Cal. May 21, 2013) ("Stays of discovery may be deemed warranted where a

6    motion to dismiss can resolve a threshold issue such as jurisdiction, qualified immunity, ***or*** where

7    discovery may be especially burdensome or costly." (emphasis added)); *Bethpage Water Dist. v.*

8    *Northrup Grumman Corp.*, No. 13-CV-6362 (SJF)(WDW), 2014 WL 6883529, at *3 (E.D.N.Y.

9    Dec. 3, 2014) (granting stay of discovery pending motion to dismiss where "the burdens of

10   discovery are considerable").

11        Plaintiffs' assertion that "motions to stay discovery pending resolution of motions to

12   dismiss are disfavored, and such motions in antitrust actions are not an exception" (Opp. at 8) is

13   based upon citation to a string of unpublished, out-of-district authority; one inapposite, forty-year

14   old Ninth Circuit case; and two cases from the District of Nevada, neither of which is an antitrust

15   case and one of which *granted* a stay of discovery pending the resolution of the motion to

16   dismiss.  Opp. at 8-10.  None of Plaintiffs' cases supports the argument that a stay should be

17   denied here.  *Blankenship v. Hearst Corp.*, 519 F.2d 418, 422, 429 (9th Cir. 1975) (after the court

18   granted a judgment on the pleadings at trial, the Ninth Circuit questioned the district court's

19   decision to ***permanently*** deny plaintiffs the right to depose a key witness); *In re Lithium Ion*

20   *Batteries*, 2013 WL 2237887 at *1  (granting a motion to stay discovery for defendants who had

21   not produced any documents to a government agency in a related investigation); *In re Capacitors*

22   *Antitrust Litig.*, No. 3:14-cv-3264 (Dkt. 309 at 2) (Dkt. 514 at 2) (N.D. Cal.) (initially granting a

23   stay of discovery and later lifting the stay of discovery with DOJ approval but limiting discovery

24   to eight "targeted" topics); *Forest River, Inc. v. Heartland Recreational Vehicles, LLC*, No. 3:08-

25   cv-490-JD, 2012 WL 4049268, at *4 (N.D. Ind. Sept. 12, 2012) (denying a stay where discovery

26   had already been ongoing and was "nearing the end of its road" and "any remaining discovery is

27   unlikely to be excessive in costs or burdens" and clarifying that while "the costs and burdens of

28   discovery are prevalent in antitrust litigation, the movants neglect the fact that the circumstances

of this litigation are unlike most cases where such a stay might otherwise be appropriate");

*Rosenstein v. Clark Cnty. Sch. Dist.*, No. 2:13-CV-1443-JCM-VCF, 2014 WL 2835074, at *6-7

(D. Nev. June 23, 2014) (denying a stay of discovery in a child abuse case where the victim was

so traumatized he could not speak about the abuse and discovery helped illuminate facts not in

plaintiff's control); *Grand Canyon Skywalk Dev. LLC v. Steele*, No. 2:13-CV-00596-JAD, 2014

WL 60216, at *5 (D. Nev. Jan. 7, 2014) (granting a stay of discovery pending motions to dismiss,

because, among other reasons, the "motions to dismiss have been under submission . . . and will

probably be decided within the relatively near future" such that the "Court therefore does not

anticipate a lengthy stay of discovery"); *Castro v. Sanofi Pasteur, Inc.*, No. 2:11-cv-7178, Dkt.

102 at 2 (D.N.J. July 18, 2012) (denying stay under a different standard than applied in the

District of Nevada); *Universal Delaware, Inc. v. Comdata Corp.*, No. 2:07-cv-1078, Dkt. 180

(E.D. Pa. Nov. 12, 2009) (informing parties who had voluntarily stopped discovery where an

amended complaint might negate a second action that discovery could continue).

**III.    Plaintiffs' Opposition Confirms the Weakness of Their Complaints and the Strength of Zuffa's Motion to Dismiss.**

As explained in the opening brief, Zuffa's Motion to Dismiss provides solid grounds for

the Court to dispose of the Complaints altogether or, at a minimum, narrow the scope of

discovery.  Mot. at 8-9.  As with Zuffa's opening brief, Zuffa will not reargue the merits of the

Motion to Dismiss here and instead respectfully refers the Court to the briefing on the Motion to

Dismiss itself for the purposes of the "preliminary peek."  Nevertheless, Plaintiffs' Opposition to

the Motion to Stay raises some issues that require a response.

First, Plaintiffs attempt to shield their vague and implausible conclusions from scrutiny by

arguing that Zuffa is wrong to attack individually each piece of the alleged "scheme."  *See* Opp.

at 11, 13-15, 21.  Second, Plaintiffs mischaracterize Zuffa's attacks on the legal sufficiency of

their Complaints as "factual assertions" or "defenses."  Opp. at 11-15.  Finally, unable to defend

the vague and subjective definition of "Elite" professional MMA fighters that is the linchpin of

their claim, Plaintiffs attempt to rewrite their Complaints in a way that only highlights the

incurable defect in their claim.  Opp. at 3, 13-14.

Ultimately, Plaintiffs' Opposition only demonstrates that there are "real questions" about the legal viability of their antitrust claim and that Zuffa's Motion to Dismiss offers strong arguments to dismiss or narrow those claims. *Davis*, 2014 WL 1308347 at *3.

### A.   Plaintiffs' "Monopoly Broth" Approach Does Not Salvage Their Claims or Justify Immediate Discovery.

Plaintiffs assert only one cause of action – a monopolization claim under Section 2 of the Sherman Act – which is comprised of a scattershot blast of allegations as to a wide variety of contracts and alleged business practices of Zuffa, *i.e.*, a "monopoly broth," which they allege collectively but not individually, forecloses competition.  Plaintiffs contend they are entitled to compel Zuffa to embark with them on a vast discovery enterprise coterminous with these allegations before the Court has ruled on the viability of the Complaints.  Opp. at 21.  But a "monopoly broth" theory does not exempt Plaintiffs from the required antitrust pleading standards or justify vast premature discovery. *Nexstar Broad.,* 2011 WL 435432 at *2 (noting burden of discovery where complaint contained a wide variety of different allegations and granting a stay).

Where a plaintiff alleges a Section 2 claim based on a combination of allegedly exclusionary acts, the plaintiff must plead specific facts showing both that each act individually and the acts together that are alleged to be part of the scheme are both anticompetitive and contribute to substantial foreclosure of competition in the relevant market.  MTD Reply at 3-4[6] (citing *City of Groton v. Conn. Light & Power Co.*, 662 F.2d 921, 928-29 (2d Cir. 1981)); IIA Areeda & Hovenkamp, Antitrust Law, ¶ 310c2 (4th ed. 2014) ("Claims are not subject to aggregation when there is no cardinal unit in one that can be added to any unit in another to produce a meaningful sum").  Close scrutiny of the individual acts contributing to the alleged scheme is necessary because a "monopoly broth" theory of liability "does not allow for clearly

---

[6] "MTD" refers to Defendant Zuffa, LLC's Consolidated Motion to Dismiss Plaintiffs' Complaints Pursuant to Fed. R. Civ. P. 12(b)(6).  Dkt. 64.  "MTD Reply" refers to Defendant Zuffa's Consolidated Reply to Plaintiffs' Opposition to Zuffa, LLC's Motion to Dismiss Plaintiffs' Complaints Pursuant to Fed. R. Civ. P. 12(b)(6).  Dkt. 82

1   legal acts to be thrown into the mix to bolster a plaintiff's antitrust case." *Masimo Corp. v. Tyco*

2   *Health Care Grp., L.P.*, No. CV 02-4771 MRP, 2004 WL 5907538, at *5 (C.D. Cal. Jun. 10,

3   2004) (citing *City of Anaheim v. S. Cal. Edison Co.*, 955 F.2d 1373, 1378 (9th Cir. 1992)).

4          Further, plaintiffs are required to plead facts that make it plausible and not merely possible

5   or conceivable that they will be able to prove facts necessary to support their claims. *Twombly*,

6   550 U.S. at 570.  Where plaintiffs' allegations regarding one aspect of the scheme are lacking in

7   specificity or plausibility, this aspect of the purported scheme cannot be used as a basis for

8   liability as a whole.  MTD Reply at 4.  For example, one of Plaintiffs' central allegations is that

9   the UFC has "used its ill-gotten power in the Relevant Markets to restrict actual or potential

10   rivals' access to top quality . . . PPV and television broadcast outlets."  Compl. ¶ 73[7].  However,

11   as explained in Zuffa's Motion to Dismiss, Plaintiffs provide no specifics as to *how* Zuffa

12   purportedly did so, nor is such a conclusory allegation plausible given the hundreds of television

13   distribution outlets available and the admission that at least four other MMA promoters have

14   secured broadcast or pay-per-view distribution.  MTD at 16, 7 (citing Compl. ¶¶ 141-43, 150).[8]

15   In short, this allegation provides no support to Plaintiffs' claim, either individually or in

16   conjunction with other allegations.  The Motion to Dismiss demonstrates similar defects with

17   regard to the claim that the UFC has foreclosed access to fighters, sponsors and venues.  MTD at

18   11-16; MTD Reply at 4-9.

19          Plaintiffs' attempt to overcome these inadequacies by arguing that its allegations must be

20   viewed as a whole does not salvage its claim.  MTD Opp. at 15, 20.[9]  If Zuffa has an exclusive

21   distribution deal with one TV network, but many others remain, there is no foreclosure.  *Omega*

22   *Envtl., Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1162-63 (9th Cir. 1997).  This allegation does not

23   contribute a fraction to the alleged anticompetitive effect; it contributes nothing.  So too with

24   exclusive sponsorships with Zuffa's apparel sponsor, its mobile phone sponsor, its motorcycle

25

[7] Unless otherwise noted, all "Compl." citations are to the *Le* Complaint.

26   [8] Perhaps recognizing their allegation that Zuffa somehow foreclosed all suitable media outlets
for MMA competitors is not only facially implausible but flatly impossible, Plaintiffs' Opposition

27   to the Motion to Stay all but abandons this allegation.

28   [9] "MTD Opp." refers to Plaintiffs' Opposition to UFC's Motion to Dismiss.  Dkt. 71.

1    sponsor, and so on.  Where there are alternatives available, there is no foreclosure.  *Abbyy USA*

2    *Software House, Inc. v. Nuance Comm'ns Inc.*, No. C 08-01035 JSW, 2008 WL 4830740, at *2

3    (N.D. Cal. Nov. 6, 2008) (holding that plaintiff "has not pled any foreclosure whatsoever in the

4    relevant market" where plaintiff only alleged it was foreclosed from "certain retail outlets" and

5    did not allege it was foreclosed from all alternative channels); *CDC Techs, Inc. v. IDEXX Labs.,*

6    *Inc.*, 186 F.3d 74, 80 (2d Cir. 1999) (following *Omega*, and rejecting plaintiff's claim that

7    defendant's exclusive dealing contracts with distributors, which prohibited them from distributing

8    plaintiff's products, foreclosed competition because alternative channels of distribution were

9    available).  With regard to venues, the Motion to Dismiss similarly demonstrated no plausible

10   allegation of foreclosure.  MTD at 15 (allegation that UFC locked up all suitable venues in Las

11   Vegas, much less in the alleged relevant geographic market of the United States, is implausible

12   and contradicted by unchallenged judicially noticeable facts).  Taken together, these allegations

13   demonstrate no more foreclosure of the alleged relevant markets than each does in isolation.  *City*

14   *of Groton*, 662 F.2d at 928-29; *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 513 F. Supp.

15   1100, 1310-11 (E.D. Pa. 1981) ("it is clear that by merely intoning the magic words . . . 'totality

16   of the evidence' antitrust plaintiffs cannot foreclose critical analysis").

17           Crediting Plaintiffs' position would only favor poor form over real substance and lead to

18   consequences distinctly at odds with Rule 1.  If a plaintiff is entitled to discovery relevant to any

19   conceivable allegation before a court passes judgment on a complaint's validity, then plaintiffs

20   will favor prolix complaints backed by voluminous discovery requests "taking up the time of a

21   number of other people, with the right to do so representing an *in terrorem* increment of the

22   settlement value." *Twombly*, 550 U.S. 557-58.  Concocting a "monopoly broth" of allegations

23   spanning the breadth of a defendant's business should not create a license to impose a massive

24   discovery burden of the same breadth across the entire scope of a defendant's business activities.

25   This is particularly true where the allegations are based entirely on pejorative and conclusory

26   characterizations of commonplace, pro-competitive business practices, such as limited-term

27   services contracts, exclusive sponsorship agreements, or licenses of the rights relating to activities

28   performed under a contract – all of which are used routinely in all kinds of businesses.  *See* MTD

1     at 10-16, 19-22.

2               **B.**      **Plaintiffs Mischaracterize Their Own Pleading Deficiencies as "Factual**

3                    **Disputes" or "Defenses" and Otherwise Distort Zuffa's Arguments.**

4         Each of the arguments in Zuffa's Motion to Dismiss focuses squarely on the legal

5     sufficiency of Plaintiffs' allegations to state a claim for relief.  The Motion to Dismiss

6     demonstrates that Plaintiffs' cause of action depends on allegations that (1) cannot support an

7     antitrust claim as a matter of law, (2) are contradicted by uncontested judicially noticeable facts,

8     (3) are internally inconsistent, (4) are economically implausible and/or (5) are too vague and

9     conclusory to satisfy the heightened pleading standard applied to antitrust claims since *Twombly*.

10    Each of Zuffa's challenges to Plaintiffs' allegations are entirely proper on a motion to dismiss

11    because courts "need not . . . accept as true allegations that contradict matters properly subject to

12    judicial notice or by exhibit" or "allegations that are merely conclusory, unwarranted deductions

13    of fact, or unreasonable inferences" or internally inconsistent allegations.  *Sprewell v. Golden*

14    *State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001).  A "preliminary peek" at the arguments in

15    Zuffa's Motion to Dismiss reveals Plaintiffs' accusations of "factual challenges" are groundless

16    and only underscore that the Complaints cannot withstand scrutiny.

17               **1.**      **Plaintiffs' Failure to Plausibly Allege Foreclosure of So-Called "Elite**

18                    **Professional MMA Fighters" Is a Pleading Deficiency, Not a Factual**
                   **Contention and Requires No Discovery to Resolve.**

19        Plaintiffs' failure to plead specific facts plausibly showing that Zuffa's contracts have

20    foreclosed rival promoters from competing for fighter services is fatal to their claim.  The law is

21    clear that "antitrust plaintiffs must allege, and ultimately prove that [an exclusive dealing]

22    arrangement's effect is to 'foreclose competition in a substantial share of the line of commerce

23    affected.'"  *Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*, No. 12-CV-05847-JST, 2013 WL

24    3242245, at *10 (N.D. Cal. Jun. 25, 2013) (quoting *Allied Orthopedic Appliances, Inc. v. Tyco*

25    *Health Care Grp., LLP*, 592 F.3d 991, 996 (9th Cir. 2010)); MTD at 11-12, MTD Reply at 6-7.

26    But Plaintiffs did not plead either the size of the relevant markets, the share of the markets

27    foreclosed, or the duration of these contracts with any specificity, leaving no plausible allegations

28    of <u>any</u> foreclosure of rival promoters from the relevant markets.  MTD at 11-15; MTD Reply at

1    6-7.

2         In their Opposition to the Motion to Stay, Plaintiffs do not point to specific factual

3    allegations that meet their burden; instead they summarize the same conclusory allegations that

4    permeate their Complaints, e.g., that Zuffa has "effectively lock[ed] Elite MMA Fighters in the

5    UFC in perpetuity," "lock[ed] up all these inputs [fighters, venues and sponsors]," and "cut off

6    the necessary oxygen to rival promotions," and quote public statements by UFC personnel

7    promoting the UFC at the expense of competitors.  Opp. at 2-4.  They go on to contend that this

8    pleading deficiency is simply a factual dispute and that discovery will "confirm" Plaintiffs'

9    conclusory allegation that the UFC's contracts are "long-term" and foreclose competition.  Opp.

10   at 5-7, 15-18.

11        Since Plaintiffs fail to plead the specific duration of any contract, <u>even their own</u>

12   <u>contracts</u>, then their allegation that <u>all</u> of Zuffa's contracts are "long-term" is either "merely

13   conclusory" or an "unreasonable inference" and should not be credited.  *Sprewell,* 266 F.3d at

14   988.  Before Plaintiffs are entitled to the discovery they have requested including*, inter alia,* all

15   documents and all communications relating to all of Zuffa's contracts with every fighter who

16   fought for Zuffa for the last fifteen years, and all documents "from 1993 to the present,

17   discussing, evaluating, or analyzing actual or proposed contractual terms or provisions" (RFPs

18   20-21, Dkt. 107-1), they should first be required to plead specific facts demonstrating that their

19   own contracts – which are in their possession without additional discovery – can support their

20   allegations.

21        Plaintiffs also argue that Zuffa raises "factual contentions" by submitting judicially

22   noticeable facts that directly contradict Plaintiffs' only specific allegation of foreclosure, i.e., that

23   Zuffa has foreclosed "100%" of the relevant markets because the UFC allegedly controls "all or

24   virtually all" so-called "Elite" professional MMA fighters "in perpetuity."  Opp. at 16-18.  But

25   courts may consider judicially noticeable facts on a motion to dismiss and are not forced to accept

26   as true allegations contrary to judicially noticeable facts.  *Gonzalez v. Planned Parenthood of Los*

27   *Angeles,* 759 F.3d 1112, 1115 (9th Cir. 2014).  Further, Plaintiffs <u>did not oppose</u> Zuffa's request

28   for judicial notice of the state athletic commission records that they now claim this Court should

1    not consider.  These uncontested public records establish that (1) Plaintiffs and other allegedly

2    "Elite" professional MMA fighters named in the Complaints are not under contract "in

3    perpetuity"; (2) they can and do fight for rival MMA promoters when their UFC contracts end;

4    and (3) other MMA promoters can contract with so-called "Elite" fighters.  MTD at 5-6, nn.4-8,

5    Reply at 5-6.

6         In the face of these judicially noticeable facts, Plaintiffs now attempt to re-write their

7    Complaints.  Opp. at 17, n.15.  The Complaints allege that the UFC foreclosed rivals' access to

8    all UFC fighters in perpetuity.  Compl. ¶ 110.  But now for the first time in this case, Plaintiffs

9    back off these allegations by claiming that Zuffa's contracts "lock Elite MMA Fighters into the

10   UFC in perpetuity, or at least until the Fighters are no longer in the primes of their careers."  Opp.

11   at 3; accord Opp. at 13-14.  Plaintiffs also contradict this new allegation with yet another new

12   allegation that does not appear in their Complaints, i.e., the UFC "releases fighters from their

13   contracts" when fighters "are injured or have lost too many bouts, or do not fight the right style."

14   Opp. at 17, n.15.  This claim indicates that an entire class of "Elite" fighters – those who "do not

15   fight the right style" – are available to other promoters while in the primes of their careers.

16   Together, these impermissible attempts to amend their Complaints merely to appear closer to the

17   realm of plausibility demonstrate that Plaintiffs' Complaints do not withstand scrutiny as they are.

18   MTD at 12-15, Reply at 5-8.

19                    **2.    Plaintiffs' Implausible Conclusions of Foreclosure of Sponsors,**

20                    **Venues, and Media Outlets Are Fatally Flawed.**

21        As discussed above, Plaintiffs do not identify the sponsors, venues, or media outlets that

22   Zuffa allegedly foreclosed to rivals and cannot explain how, in an alleged geographic market that

23   is no smaller than the United States, Zuffa could possibly deny rivals access to a significant share

24   of any of these inputs.  MTD Reply at 8-9.  The only legitimate antitrust concern about "exclusive

25   dealing arrangements is the possibility that a single manufacturer will control ***all or a substantial***

26   ***number*** of the available retail outlets for a certain kind of product in a given geographical

27   area."  *Chuck's Feed & Seed Co. v. Ralston Purina Co.*, 810 F.2d 1289, 1293 (4th Cir. 1987)

28   (emphasis added) (citing *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327-29 (1949)).

1    In opposition, Plaintiffs only reprint their implausible conclusions, call them "facts," and contend

2    that Zuffa "disputes these facts" and therefore discovery is necessary to resolve the dispute.  Opp.

3    at 14-15.  But simply characterizing Zuffa's argument as a factual dispute does not make it so.

4    That Zuffa's contracts might foreclose rivals' access – at least for a short period of time – to

5    particular sponsors, venues or TV outlets, does not meet Plaintiffs' burden to show that Zuffa has

6    foreclosed "all or a substantial number" of the sponsors or media outlets necessary for

7    competition or demonstrated substantial foreclosure in the relevant market as a whole.  *See*

8    *Omega Envtl.*, 127 F.3d at 1162; *Tampa Elec.*, 365 U.S. at 328 (for an exclusive dealing

9    arrangement to constitute an antitrust violation "the competition foreclosed by the contract must

10   be found to constitute a substantial share of the relevant market").

11          This is another instance where discovery would be burdensome but would not illuminate

12   the issues or allow Plaintiffs to fix the fatal flaws in their Complaints.

13                  **3.      Plaintiffs' Alleged Relevant Market Definition Fails As A Matter of**
14                  **Law.**

15          Zuffa's Motion to Dismiss shows that Plaintiffs have not defined a proper relevant market;

16   rather, Plaintiffs only allege a market for allegedly "Elite Professional MMA Fighters" that is co-

17   extensive with a single-brand market for "fighters who fought in the UFC."  MTD at 17-19, MTD

18   Reply at 9-12.  Courts routinely dismiss antitrust claims where plaintiffs allege this kind of

19   outcome-driven, gerrymandered relevant market, rather than a relevant market based on the well-

20   established rule of reasonable interchangeability and cross-elasticity of demand.  *Id.*; *see also*

21   *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997).

22          In addressing this issue, Plaintiffs' Opposition claims that their Complaints say things that

23   they do not in fact say.  For example, the Motion to Dismiss showed that the Complaints' basic

24   premise – that Zuffa's contracts locked up fighters in perpetuity – was unsupported by their own

25   contracts, implausible, and contradicted by the experience of several Plaintiffs who had in fact

26   fought for other promotions.  MTD at 5-6, nn.4-8, Reply at 5-6.  Now, as discussed above, in the

27   response to the Motion to Stay, Plaintiffs argue for the first time that the UFC does not

28   necessarily lock up all Elite Fighters "in perpetuity," but instead "for the primes of each of the

                                                  14

Fighters' careers."  Opp. at 13-14; *see also* Opp. at 3.  Plaintiffs' new proposed market definition would not only have everyone guessing at which fighters are sufficiently good or well-known to be "Elite," but when the "primes of their careers" begin and end.  As with their foreclosure allegation, Plaintiffs' improper attempt to amend their market definition only highlights the inadequacy of the market defined in their Complaints, demonstrates the likelihood that Zuffa's Motion to Dismiss will be granted, and reinforces the need to stay discovery.

> **4.    Plaintiffs' Allegations That Zuffa Refused to "Co-Promote" Events with Rivals Cannot as a Matter of Law Support Its Claims.**

The Complaints accuse Zuffa of refusing to "co-promote" with MMA rival promoters, but, as a matter of law, these allegations cannot support an antitrust claim because it is well-established that Zuffa has no duty to deal with or aid competitors.  MTD at 16-17 (citing *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 411 (2004)).  Plaintiffs' Opposition ignores this argument altogether.

> **5.    Plaintiffs' Allegations Related to Intellectual Property Do Not Give Rise to an Antitrust Cause of Action.**

Plaintiffs' Opposition ignores Zuffa's argument that the allegations regarding terms of fighters' contracts related to intellectual property do not plead any anticompetitive conduct. MTD 19-23, MTD Reply at 12-13.  Plaintiffs' allegations related to fighters' ancillary rights are consistent with Zuffa's legal right to protect its copyright, trademark, and other intellectual property rights in its content and the UFC name and brand.  *Id.*  Furthermore, Plaintiffs have not and cannot show that these grants of ancillary rights have reduced competition in the alleged relevant markets.  *Id*.  Because these allegations show only lawful conduct, they cannot support Plaintiffs' claim.

> **6.    Plaintiffs' Failure to Allege Facts Showing That Zuffa's Acquisitions Are Anticompetitive Is a Pleading Deficiency, and Requires No Discovery to Resolve.**

Finally, Zuffa's Motion to Dismiss shows that Plaintiffs' allegations related to Zuffa's acquisitions do not establish any resulting reduction in competition in the relevant output market, i.e., the market for promoting live MMA bouts.  MTD at 23-25, MTD Reply at 13-14.  The

1   Motion to Dismiss points out that the Complaints name no fewer than five other MMA promoters

2   and that judicially noticeable records reveal that several Plaintiffs and other allegedly "Elite"

3   fighters have fought for some of the promoters named in the Complaints and two other promoters

4   omitted from the Complaints.  MTD at 5-7.  Plaintiffs argue that Zuffa's references to any "rival"

5   MMA promoter raises improper factual contentions.  Opp. at 16-17.[10]  Both the unopposed

6   judicially noticeable facts and Plaintiffs' own allegations show that other MMA promoters have

7   been successful at contracting with "Elite" fighters and attracting television distribution,

8   contradicting Plaintiffs' unsupported conclusions that Zuffa "deprives would-be rival promoters

9   of MMA events of necessary inputs to pull off successful promotions . . . ."  Compl. ¶ 75.

10  Because these allegations do not show any anticompetitive conduct, they cannot support

11  Plaintiffs' claim and the scope of discovery should be further reduced.

12  **IV.   Plaintiffs' Suggestion That Discovery Can Cure the Complaints' Deficiencies Is**
13          **Wrong.**

14          Plaintiffs' claim that discovery can cure or "confirm" their allegations (Opp. at 15-18) is

15  wrong because their errors are fundamental to their claims.  Discovery pertaining to Zuffa's

16  contracts with apparel sponsor Reebok, for example, is not going to answer the question how an

17  exclusive sponsorship with one sponsor in a category – in this example, apparel – forecloses

18  competitors from sponsorship deals with the countless other apparel companies.  In fact, it

19  actually proves that competitors <u>can</u> compete for sponsors with every other brand that does not

20  have an exclusive agreement with the UFC.  The same principle applies to other sponsorship

21  categories (e.g., beer, soft drinks or energy drinks), to TV networks and other media outlets, and

22  to venues.  Discovery is not going to answer this question or solve this problem for Plaintiffs.

23          In addition to the contractual foreclosure issue, Plaintiffs' claim that discovery is

24  [10] Plaintiffs assert that Zuffa has made "improper factual contentions" regarding "two 'rival
25  promoters' – World Series of Fighting and BAMMA – that are not mentioned in Plaintiffs'
    Complaints.  Opp. at 17 n.14.  But the judicially noticeable State Athletic Commission records
26  submitted with Zuffa's Motion to Dismiss demonstrate that several Plaintiffs and other fighters
    named in the Complaints, each alleged to currently be "Elite" fighters, have participated in bouts
27  for these two promoters.  Plaintiffs did not object to these judicially noticeable facts and thus
    cannot now claim that such facts are "improper."

28

1    necessary to address certain other issues with their Complaints.  Plaintiffs allege that "other

2    promoters do not compete with the UFC" because their events do not draw as well, and they have

3    lower revenues for sponsorships, merchandise sales, television, etc., and because the UFC

4    promotes itself as superior to its competitors.  Opp. at 16-17.  But being the most successful firm

5    in a category does not show that a firm is a monopolist or that it has engaged in anticompetitive

6    conduct, both essential elements of Plaintiffs' Section 2 claim.  Plaintiffs do not have an

7    automatic right to discovery just because a firm is the most successful one in an industry or may

8    have competitive advantages over other firms.

9         Plaintiffs also state that there is a factual dispute about "whether the term 'elite MMA

10   fighter' is used in the industry."  Opp. at 18.  But the issue is not whether the term "elite MMA

11   fighter" is used in the industry; the issue is whether the Plaintiffs' alleged market definition based

12   on "Elite Professional MMA Fighter" services survives as a matter of law.  MTD at 17-19, MTD

13   Reply at 9-12.  Of course, "elite" and similar adjectives are used in marketing and promotional

14   materials in MMA, as they are in countless other businesses.  MMA fighters are also often called

15   "tough," "athletic," and other such alternatives, but those terms – like the adjective "elite" –

16   cannot define the relevant antitrust market as required to state a Section 2 claim.  The Motion to

17   Dismiss demonstrated that Plaintiffs' alleged market definition of "Elite Professional MMA

18   Fighters" is both gerrymandered and circular, designed to encompass an improper single-brand

19   market comprised almost exclusively of UFC fighters, and is vague and unworkable as a matter

20   of law.  MTD at 17-19, MTD Reply at 9-12.  Discovery on the degree to which the term "elite" is

21   used in the industry is not going to solve Plaintiffs' flawed market definition.  Further, the

22   allegation that the UFC's roster of fighters currently under contract constitutes a "qualitative

23   competitive advantage" (Opp. at 18) again describes a normal competitive situation, not an

24   antitrust violation.

25   **V.    The Expansive Nature of the Discovery Sought and the Minimal Prejudice Resulting**
     **        From a Stay Also Favor Granting the Motion.**
26

27        In its Motion, Zuffa discussed seven other factors that Nevada courts consider when

28   deciding whether to grant a motion to stay and explained why those factors weighed in favor of

1    granting a stay.  Mot. at 10; *Tradebay*, 278 F.R.D. at 602.  In Opposition, Plaintiffs respond to

2    only one of these factors – the complexity of the action.  Opp. at 20.  Plaintiffs also list two

3    additional factors which are not included in the list of factors cited in *Tradebay* and, more

4    importantly, do not move the needle in Plaintiffs' direction.  Opp. at 18-20.

5         First, Plaintiffs argue that a stay would prejudice Plaintiffs because it "would frustrate the

6    just and speedy resolution of this matter . . . ."  Opp. at 2, 19.  But Plaintiffs do not explain how a

7    short stay of discovery pending resolution on a fully briefed motion is likely to do so.  *Grand*

8    *Canyon*, 2014 WL 60216, at *7 (granting a stay of discovery pending the resolution of a motion

9    to dismiss in part because the motion "will probably be decided within the relatively near future.

10   The Court therefore does not anticipate a lengthy stay of discovery").  Given the completed

11   briefing, any stay is not likely to be lengthy.

12        Remarkably, Plaintiffs accuse Zuffa of dilatory conduct and delaying tactics when it

13   "moved to transfer the case to this jurisdiction" and "refused to consent to appointment of

14   interim-co-lead counsel (for unexplained reasons)."  Opp. at 1-2.  With regard to the Motion to

15   Transfer, it was Plaintiffs who delayed the progress of the matter by ignoring the Nevada forum

16   selection clauses to which they had agreed, filing their cases in an incorrect venue, and resisting

17   Zuffa's motion to transfer the cases to the agreed-upon venue, a motion that Judge Davila agreed

18   with and granted.  Dkt. 93.  With regard to the appointment of interim counsel, Zuffa did not

19   object to the proposed interim counsel.  Rather, it explained that counsel's attempt to short cut the

20   normal process with an administrative motion under the Northern District's Local Rules –

21   typically used for housekeeping matters – rather than proceeding by a standard noticed motion,

22   was improper in light of the importance of giving absent class members an opportunity to be

23   heard on the issue of their representation.  Dkt. 48.  Again, Judge Davila agreed with Zuffa,

24   denying the administrative motion as procedurally improper in light of the rights of absent class

25   members.  Dkt. 50.  When Plaintiffs filed a properly noticed motion, Zuffa did not oppose it and

26   has not opposed the renewed motion in this Court.

27        Plaintiffs also contend that Zuffa's motion does not raise dispositive legal issues such as

28   jurisdiction, immunity, or standing.  Opp. at 19.  First, Zuffa did raise issues regarding Plaintiffs'

1   standing in its Motion to Dismiss, arguing that Plaintiffs' lacked antitrust standing due to the lack

2   of direct causation between the alleged restraint on competition and their alleged injury.  MTD

3   Reply at 14-15 (citing *Spinelli v. NFL*, -- F. Supp. 3d --, No. 13 CIV 7398 (RWS), 2015 WL

4   1433730 (S.D.N.Y. Mar. 27, 2015) (antitrust plaintiffs lacked standing due to lack of direct

5   connection between alleged restraint and alleged injury)).  Second, the most important question is

6   whether the motion would dispose of the case – not necessarily the reasons underlying the

7   disposition – and Zuffa's Motion to Dismiss, if granted, would dispose of the case.  E.g., *Davis*,

8   2014 WL 1308347, at \*4-\*5 (on "preliminary peek," courts also consider sufficiency of plaintiff's

9   allegations under *Twombly*, 550 U.S. 544, and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) to

10  determine whether "Plaintiff's action is likely to either be dismissed in its entirety or at least

11  reduced in scope").

12        Plaintiffs finally argue that this District has not followed the reasoning in *GPU*.  Opp. at

13  20-21.  This is wrong.  Courts in this District have held that a court evaluating a motion to stay

14  must decide whether it is "more just to speed the parties along in discovery and other proceedings

15  while a dispositive motion is pending, or whether it is more just to delay or limit discovery and

16  other proceedings to accomplish the inexpensive determination of the case."  *Tradebay*, 278

17  F.R.D. at 603.  This is the same analytical approach that Judge Alsup used in *GPU* to conclude

18  that evaluating the motion to dismiss in that case before permitting discovery would "shed light

19  on the best course for discovery."  *GPU*, 2007 WL 2127577 at \*5.

20                                    **CONCLUSION**

21        For the foregoing reasons, Zuffa respectfully requests that this Court order a stay of

22  discovery pending resolution of the Motion to Dismiss.

23

24

25

26

27

28

                                        19

Dated: July 14, 2014

Respectfully Submitted,

CAMPBELL & WILLIAMS

By: /s/ J. Colby Williams
J. COLBY WILLIAMS
*Attorneys for Defendant* Zuffa, LLC, d/b/a
Ultimate Fighting Championship and UFC

Donald J. Campbell #1216
J. Colby Williams #5549
CAMPBELL & WILLIAMS
700 South 7th Street
Las Vegas, Nevada 89101
Tel: (702) 382-5222
Fax: (702) 382-0540
Email: DJC@campbellandwilliams.com
      JCW@campbellandwilliams.com

William A. Isaacson (*Pro Hac Vice* pending)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave, NW
Washington, DC 20015
Tel: (202) 237-2727
Fax: (202) 237-6131
Email: wisaacson@bsfllp.com

John F. Cove, Jr. (*Pro Hac Vice* pending)
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
Tel: (510) 874-1000
Fax: (510) 874-1460
Email: jcove@bsfllp.com

Richard J. Pocker #3568
BOIES, SCHILLER & FLEXNER LLP
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Tel: (702) 382 7300
Fax: (702) 382 2755
Email: rpocker@bsfllp.com

*Attorneys for Defendant* Zuffa, LLC, d/b/a Ultimate
Fighting Championship and UFC

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that service of the foregoing **REPLY IN SUPPORT OF MOTION TO STAY DISCOVERY** was served on the 14th day of July, 2015 via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

/s/ J. Colby Williams
_____
An employee of Campbell & Williams
