# EXHIBIT "1"

EXHIBIT "1"

1622 LOCUST STREET   |   PHILADELPHIA, PA 19103-6305   |   PHONE: 215/875-3000   |   FAX: 215/875-4604   |   www.bergermontague.com



| | |
|---|---|
| **Michael Dell'Angelo** | ALSO ADMITTED IN NJ |
| WRITER'S DIRECT DIAL | 215/875-3080 |
| WRITER'S DIRECT FAX | 215/875-4604 |
| WRITER'S DIRECT E-MAIL | mdellangelo@bm.net |

August 25, 2015

**Via E-Mail Only**
John F. Cove, Jr.
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
jcove@bsfllp.com

    Re:    *Le v. Zuffa, LLC*, **2:15-cv-01045-RFB-(PAL) (D. NV.)**

Dear John:

    I am writing to briefly summarize the parties' telephonic meet and confer on August 20, 2015.

    Prior to the meet and confer the parties exchanged drafts of the [Proposed] Stipulated Order Re: Discovery of Electronically Stored Information ("ESI Stipulation") and Stipulation and [Proposed] Protective Order ("Protective Order").

    **Protective Order**

    For the first time, at the outset of the meet and confer, Zuffa stated that the Protective Order should include a new designation of "highly confidential" documents and information.

    As an initial matter, Zuffa's proposed "highly confidential" designation is overbroad. It appears that this designation would apply to common business documents maintained by Zuffa, such as purported "trade secrets" or documents relating to business "strategies" "revenues" and "costs."

    You explained that the impetus for Zuffa's proposal was the perceived activity of counsel for Plaintiffs and attorney of record Robert Maysey, as well as Neal Tabachnick, a lawyer in the law firm of Wolf Rifkin Shapiro Schulman & Rabkin, LLP, who is not an attorney of record in this case. Specifically, you expressed the view that Mr. Maysey should not have access to certain as yet unidentified and unproduced documents and information because Zuffa believes that Mr. Maysey is "the head" of an organization that is seeking group licensing on behalf of UFC fighters. Thus, it is Zuffa's view that if the outcome of the lawsuit leads to the ability of fighters to engage in group licensing, Mr. Maysey's ability to have reviewed unspecified "group licensing" documents that *may* be produced in the litigation *may* afford him an unfair competitive advance because he cannot "unsee" the documents, as you characterized it.

    Additionally, you expressed the view that agents who may represent MMA fighters would be similarly advantaged by the opportunity to view unspecified documents that may be produced by Zuffa in the litigation. In this regard, you identified Mr. Tabacnick as a lawyer associated with counsel of record who may have served as an MMA agent.



John F. Cove, Jr.
August 25, 2015
Page 2

At the outset, you did not identify what documents and information Zuffa contemplates would constitute the proposed "highly confidential" designation. As such, the designation appears to be a blanket exclusion to which Plaintiffs cannot agree. Regardless, we understand that outside of the UFC no group licensing by its current or former fighters exists because the UFC's contracts with its current and former fighters prohibit it. Additionally, Mr. Maysey is the founder of the Mixed Martial Arts Fighters Association ("MMAFA"). As such, however, Mr. Maysey is not "the head" of the MMAFA. Rather, "the head" of that organization, if any, will be duly elected and Mr. Maysey is, by no means, guaranteed to be elected should he seek election. Even so, the MMAFA, as an association, does not now nor does it propose in the future to engage in commercial activity such as group licensing and its conduct is protected speech, not commercial activity were that even possible. We have conferred with Mr. Tabacnick regarding Zuffa's belief that he has served as an "agent" for MMA fighters and understand that although he has occasionally been retained as counsel for MMA fighters, he has never been retained as an agent.

Setting aside the issues with agents and the MMAFA, the revised protective order subsequently proposed by Zuffa would prevent Plaintiffs from viewing "highly confidential" information. This proposal comes as a surprise to us, as it was not discussed on our call and Zuffa has not even suggested that any Plaintiff is a potential competitor. We view this restriction as gratuitous and an unwarranted attempt to interfere with our prosecution of this matter.

**ESI Stipulation**

Plaintiffs' version of the ESI Stipulation proposes that the parties should preserve data from 2000 to the present. During the meet and confer Zuffa proposed that the ESI stipulation should be modified to establish Zuffa's obligation to preserve data from 2010 to the present. In response, we asked why the ESI stipulation should now authorize Zuffa to destroy potentially relevant documents and information dating back to 2000 if those materials have been preserved by Zuffa for the last 15 years. That is, what burden would Zuffa suffer if it was required to continue to maintain documents and information for purposes of this litigation if it has been voluntarily preserving the same materials since 2000, or longer? Although you did not answer the question directly, we understand that Zuffa objects to a time-frame for preservation that dates to 2000. Alternatively, you proposed a preservation cut-off of 2010. However, we understood you to confirm that Zuffa is already preserving documents dating back to 2000. Also, Plaintiffs stated that paragraph 129 of the *Le* complaint alleges that the conspiracy at issue began as early as 2006. Thus, even if the parties were to agree to a relevant time period between 2000 and 2010, such period could, in no event, postdate January 1, 2006. Nevertheless, Plaintiffs indicated that the relevant time period should extend to the period well before the first *act* that is alleged to have begun the conspiracy, *i.e.*, 2006, and that there is no sound reason for Zuffa to now begin destroying documents and information created or received after January 1, 2000.

Also, you asked whether Plaintiffs preserved the "parent/child" relationship for the email that they collected. We can confirm that, wherever possible, Plaintiffs preserved the "parent/child" relationship for the email that they collected.



John F. Cove, Jr.
August 25, 2015
Page 3

**Streamlining of Discovery**

During the meet and confer both parties laid out initial proposals to streamline discovery.

Zuffa proposed that the parties consider implementing one or more of the following four methods to limit the manner in which ESI is searched, as follows:

1. Predictive Coding. Non-traditional or alternative review methods such as technology assisted review (TAR) or predictive coding.
2. Linguistic Review. Engage third party linguists who would review documents and try to develop search terms. Zuffa would then use predictive coding or TAR to conduct searches.
3. "Near" de-duplication. Zuffa proposed to use this method to eliminate documents with an identical md5 hash value and other documents that are very similar. For example, Zuffa explained that where two MS Word documents, such contracts, were saved with different names and to which "minor" changes were made from one document to the next, the prior iteration would not be produced. Thus, highly similar but non-identical documents would be "de-deuplicated" and only the final document would be produced.
4. Email threading. Email threads would be produced, but exact duplicates would be deleted from separate threads to reduce the volume of exact duplicates.

Plaintiffs are evaluating Zuffa's proposed search methods and will be prepared to continue the discussion on the parties' next meet and confer call. As noted on the call, if the parties pursue one or more methods of ESI searching that requires the identification of custodians, you noted that it will be necessary for Plaintiffs to analyze Zuffa's organizational charts. In such an event, we would expect organizational charts and related information to be produced early on in the process of identifying custodians. We noted that Plaintiffs are not fundamentally opposed to predicative coding and TAR, despite its inherent limitations. However, we also stated that Plaintiffs' willingness to utilize predictive coding or TAR will require full transparency into the process which we understand you agree with.

Plaintiffs proposed to divide their First Set of Requests for the Production of Documents into two phases.  Phase 1 would consist of Requests 11-17, 19, 20-25, 27, 31, 33, 35, 37, 39, 40, 42, 43, 49-52, 54-57. Phase 2 would consist of Requests 1-10, 18, 26, 28-30, 32, 34, 36, 38, 41, 44-48, 53, 58.  We explained that Plaintiffs' phasing proposal was developed with an eye to balancing the parties' needs to efficiently proceed with discovery and Magistrate Judge Leen's admonition to limit discovery prior to the Court's decision on Zuffa's Rule 12(b)(6) motion.  Thus, Plaintiffs proposed that Zuffa begin production of Phase 1 documents immediately and reserve production of Phase 2 documents pending a decision on the motion to dismiss.

We understand that Zuffa rejected Plaintiffs' phasing proposal because it believes that even if the case is not dismissed, the Court will narrow discovery and Zuffa does not want to conduct multiple



John F. Cove, Jr.
August 25, 2015
Page 4

electronic searches. However, Plaintiffs' phasing proposal does not require multiple electronic searches which must be conducted regardless of when documents are produced.

In rejecting Plaintiffs' proposal, Zuffa proposed that it identify discrete categories of documents that it believes would be "helpful," but exclude altogether electronic searches of the documents. That proposal is unacceptable. First, Plaintiffs do not agree that electronic searching of Zuffa's documents and information should be deferred indefinitely or even until after Zuffa's motion to dismiss is decided. Deferring any search for and production of ESI is tantamount to the very stay of discovery that the court already rejected. Second, although you did not explain what Zuffa contemplated by "helpful" documents, Plaintiffs have already stated that they believe that documents responsive to the Phase 1 document requests represent the most efficient and necessary, i.e., "helpful" documents to Plaintiffs for the purpose of beginning the discovery process. Finally, we understood you to indicate that non-ESI contract files, organizational charts and most other documents response to Plaintiffs' document requests 1-10 can be provided shortly. If Zuffa's hard-copy files including documents such as organizational charts, diligence materials for transactions and financing arrangements can be readily accessed now, Zuffa should produce those documents without further delay.

We look forward to continuing the parties' meet and confer on September 2, 2015 at 11:00 a.m. Pacific.

Very truly yours,

Michael C. Dell'Angelo

cc: Joseph Saveri
    Matthew S. Weiler
    Marcy Norwood Lynch
    Suzanne E. Jaffe
    Perry Grossman