# EXHIBIT "2"

EXHIBIT "2"

# BOIES, SCHILLER & FLEXNER LLP

1999 HARRISON STREET • SUITE 900 • OAKLAND, CA 94612 • PH. 510.874.1000 • FAX 510.874.1460

August 26, 2015

**Via Electronic Mail**

Michael Dell'Angelo
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103

      Re:    *Le, et al. v. Zuffa, LLC*, Case No. 2:15-cv-01045-RFB-(PAL),
             and consolidated cases

Dear Michael:

      We write in response to your letter of last night regarding the draft protective order and ESI stipulation. In light of the deadline of tomorrow to file these documents, this letter is generally limited to those subjects; we will respond to the discussion of streamlining discovery in a separate letter.

**Protective Order**

      As an initial matter, your statement that we raised the issue of Mr. Maysey's and Mr. Tabachnick's access to highly confidential materials for the "first time" during the August 20 meet and confer is incorrect. In fact, in a telephone conversation the week before the formal meet and confer, I told your colleague Mr. Saveri that, in light of their roles with regard to Zuffa outside the litigation, my client objected strongly to providing highly confidential information to these and similarly situated individuals and that we would need to discuss a solution at the meet and confer.

      Two-tiered Protective Orders, like the one that Zuffa has proposed, are commonly used to protect competitively-sensitive information in a number of matters. *In re Rail Freight Fuel Surcharge Antitrust Litigation*, MDL 1869 (Dkt. 195); *Universal Delaware, Inc. v. Ceridian Corp.*, No. 07-1078-JKG (Dkt. 56); *In re Flonase Antitrust Litig.*, No. 08-cv-3149 (Dkt. 61-1); *Babyage.com v. ToysRUs*, No. 2:05-cv-06792 (Jan. 18, 2007) (Dkt. 169). The Protective Orders in those cases employed similar tiers of confidentiality designations to protect the parties' most sensitive business information, including provisions preventing disclosure of highly confidential information to outside counsel who are involved in competitive decision-making. *See High Tech Employee Antitrust Litig.*, No. 11-cv-2509-LHK (Dkt. 107) (limiting disclosure of highly

BOIES, SCHILLER & FLEXNER LLP

Michael Dell'Angelo
August 26, 2015
Page 2 of 6

confidential information to Outside Counsel "not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984)").

Zuffa's desire to protect its highly confidential information, as well as its obligation to protect third parties' highly confidential information, does not hinge on whether Mr. Tabachnick is an "agent", whether Mr. Maysey is the "head" of the MMAFA, or whether the MMAFA is engaging in "protected speech." Rather, the critical issue is whether these individuals or others similarly situated could inadvertently use or rely on confidential information in making decisions or advising others in a way that would be adverse to Zuffa's commercial or business interests.

With regard to fighters and their representatives who negotiate contracts for them, neither are entitled to see Highly Confidential information that relates to Zuffa or other fighters. For example, Plaintiffs have requested specific payment and revenue information for every MMA fighter who has appeared in a Zuffa-promoted activity. The individual plaintiffs and their representatives who negotiate their contracts for them are not entitled to see such information about other fighters while they are still competing in the MMA Industry and negotiating contracts with Zuffa and other competing promoters. This would include Mr. Tabachnick who negotiates contracts with MMA promoters, including Zuffa.[1] While Mr. Tabachnick is entitled to see highly confidential information from his clients who have retained him as their lawyer, he is not entitled to access highly confidential information about all of the other fighters who contract with Zuffa. Such disclosure would injure both Zuffa and the other fighters who compete against his clients. Further, other individual plaintiffs may be working with Zuffa's competitors and are not entitled to receive Zuffa's most highly confidential competitive and business information.

With regard to Mr. Maysey, the MMAFA website describes Mr. Maysey as a member of the organization's "executive team," and multiple articles (including one as recent as three weeks ago[2]) have referred to Mr. Maysey as "head" of the MMAFA. Your statement that "the MMAFA, as an association, does not now nor does it propose in the future to engage in

---

[1] Steven Marrocco, "How Eddie Alvarez and Bellator arrived at dueling lawsuits," MMA Junkie (Jan. 11, 2013), http://mmajunkie.com/2013/01/how-eddie-alvarez-and-bellator-arrived-at-dueling-lawsuits (last accessed August 26, 2015) (describing Neal Tabachnick negotiating with Bellator and Zuffa on behalf of Eddie Alvarez).

[2] Rory Kernaghan, "Wanderlei Silva and Ex-UFC Fighters Pushing for Muhammad Ali Act in MMA," Low Kick (Aug. 5, 2015), http://www.lowkickmma.com/UFC/wanderlei-silva-and-ex-ufc-fighters-pushing-for-muhammad-ali-act-in-mma/ (last accessed August 26, 2015) (referring to "head of the MMAFA (mixed martial arts fighters organization) Rob Maysey").

BOIES, SCHILLER & FLEXNER LLP

Michael Dell'Angelo
August 26, 2015
Page 3 of 6

commercial activity such as group licensing" is directly contradicted by MMAFA's website, which states that a service the MMAFA intends to provide to its members is: "Revenue maximization through merchandising and <u>licensing of collective brand</u>."[3] Published articles and Mr. Maysey's own public statements demonstrate that for years, he has attempted to recruit fighters to join the MMAFA and to engage in group licensing, collective bargaining, and other commercial activities adverse to Zuffa and other promoters. Similarly, your contention that Zuffa's contracts impede the MMAFA from realizing the ambitions that Mr. Maysey has articulated does not mean it is not a competitor. Moreover, Mr. Maysey's firm profile states that "Rob has been actively involved in all facets of the Mixed Martial Arts (MMA) industry, assisting athletes and agents in litigation matters and in negotiating agreements." Like Mr. Tabachnick, Mr. Maysey should not be able to use Zuffa's highly confidential information to his, or his other clients, or his association's competitive benefit.

You have asserted that Zuffa's proposal to designate certain documents as "Highly Confidential" is overbroad. Not so. Zuffa only seeks to designate as Highly Confidential those documents that "would create a substantial risk of significant competitive or business injury." (Draft Protective Order at § 2.7.) Plaintiffs have requested virtually every document Zuffa maintains, including granular revenue and cost information for all aspects of its business, its highly confidential agreements it has entered into with non-fighter third parties, and its internal analyses regarding strategic decisions and competition in the industry. The above categories are only examples of the types of competitively-sensitive information Plaintiffs have requested in their broad Requests for Production. In light of the over breadth of Plaintiffs' current discovery requests, it is impossible to list with particularity all the specific documents that will or will not be considered highly confidential; however, the Protective Order already states that "[m]ass, indiscriminate, or routinized designations are prohibited," thus alleviating your concern that the highly confidential designation is a "blanket exclusion." Stipulated protective orders precluding the disclosure of such information are now routine, especially in antitrust cases where the parties or third parties producing documents either compete with each other or are in vertical buy/sell relationships with each other (such as promoters and fighters), such that inadvertent disclosure of highly confidential information would harm the producing party. *See, e.g.*, *Suture Exp., Inc. v. Cardinal Health, 200, LLC*, No. 12-2760-RDR, 2013 WL 6909158, at *3 (D. Kan. Dec. 31, 2013); *Oracle USA, Inc. v. Rimini Street, Inc.*, No. 2:10-cv-00106-LRH-PAL, at *9 (D. Nev. Dec. 7, 2012).

---

[3] MMAFA, "About MMAFA," MMAFA.tv, http://mmafa.tv/about-mmafa/ (last accessed August 26, 2015).

BOIES, SCHILLER & FLEXNER LLP

Michael Dell'Angelo
August 26, 2015
Page 4 of 6

To the extent Plaintiffs believe that a document or a group of documents are misclassified as "highly confidential", the draft Protective Order outlines the procedures for challenging the confidentiality designation. (Draft Protective Order at § 6.) The numerous Plaintiff Counsel who are entitled under the draft Protective Order to receive such documents, including all of the attorneys whom the Court appointed as interim co-lead counsel, are more than capable of challenging the designation, if necessary.

Given the limited definition of documents subject to the Highly Confidential designation, as well as the protections afforded Plaintiffs if they disagree with such a designation, Zuffa believes that its proposed Protective Order is the least restrictive process for protecting its highly confidential information.

Please let us know if you believe we have reached an impasse on this issue or if you are willing to agree to the structure we have proposed. Of course, we are happy to discuss this further with you.

**ESI Stipulation**

With regard to the draft ESI Stipulation, we explained to you that the proposal to preserve documents dating back to 2000 is a burdensome one.[4] While we do not agree with your position on the preservation date of 2000, we are willing to agree with it now to present an agreed upon order to the court, subject to the understanding that (1) our agreement and preservation of these documents is without prejudice to our objection to searching, reviewing and producing documents from that date forward and (2) we will continue to meet and confer to determine whether we can narrow the scope of preservation for documents that we can agree are unnecessary to preserve.

---

[4] You asked, in your letter, "what burden would Zuffa suffer if it was required to continue to maintain documents and information for purposes of this litigation if it has been voluntarily preserving the same materials since 2000, or longer?" As you must know, the costs of preserving data increase with the size and scope of the materials to be preserved. As reflected in the *Sedona Principles*, "When balancing the cost, burden, and need for electronic data and documents, courts and parties should apply the balancing standard embodied in Fed. R. Civ. P. 26(b)(2) and its state law equivalents, which require considering the technological feasibility and realistic costs of preserving, retrieving, producing, and reviewing electronic data, as well as the nature of the litigation and the amount in controversy." Zuffa's position is that the burden and expense of the proposed preservation is high compared to its likely benefit particularly where, as here, the statute of limitations for Plaintiffs' cause of action is only four years.

BOIES, SCHILLER & FLEXNER LLP

Michael Dell'Angelo
August 26, 2015
Page 5 of 6

Since you did not raise any other issues with our ESI draft, we have attached a revised draft ESI stipulation that accepts all previous changes we made but reverts to your original proposal to preserve documents dating back to 2000.

With that change, our understanding is that there are now only two outstanding issues on the ESI stipulation. First, in the first draft of the ESI stipulation, Plaintiffs wrote "Plaintiffs have preserved and will continue to preserve ESI . . . to the extent such ESI existed as of the date Plaintiffs first became agreed to join this action." We indicated that we did not understand what "to the extent such ESI existed as of the date Plaintiffs first became agreed to join this action" meant. Your letter does not answer this question, and, in any event, the law requires that documents be preserved from the date the action was reasonably anticipated. Since we do not know what steps Plaintiffs took, if any, to preserve information, please let us know what representation you intended to make in section 4(c). Second, in the initial draft of Exhibit A of the ESI stipulation, Plaintiffs' draft stated only Defendant's intention regarding "TIFF Productions." In response, our draft modified section 2 as to Zuffa's intent regarding TIFF productions and left a space for Plaintiffs to indicate their intentions regarding TIFF Productions. Your letter also did not address this outstanding issue. Please indicate your intentions in this regard.

### Other Discovery Issues

The parties also discussed, as Magistrate Judge Leen directed us to do, the potential use of non-traditional review methods. Plaintiffs' counsel stated that they planned to use the traditional methods of applying custodians and search terms, and had not investigated (and did not propose) non-traditional review methods. We advised you that, pursuant to Magistrate Judge Leen's direction, we had investigated potential non-traditional review methods, and we presented our ideas to you for discussion and consideration. While the description in your letter of those potential methods is generally correct, please note that the "Near" De-duplication method does not eliminate documents with identical MD5 Hash values. We anticipate, and both parties proposed in the draft ESI Stipulation, that documents with identical MD5 Hash and SHA1 Hash values be de-duplicated during processing. The Near De-Duplication method would provide further potential de-duplication beyond traditional MD5 and SHA1 Hash (bit-for-bit identicality of the document content) de-duplication. Similarly, Email Threading does not eliminate exact duplicates – it eliminates email threads that are also contained in a later, inclusive e-mail.

BOIES, SCHILLER & FLEXNER LLP

Michael Dell'Angelo
August 26, 2015
Page 6 of 6

      Given the August 27, 2015 deadline to submit a proposed Protective Order and ESI stipulation, please let us know promptly your position on the two-tier protective order in light of the discussion above and your response on the two outstanding issues in the ESI stipulation.

                                      Sincerely,

                                        John Cove /by SEJ
                                      John F. Cove, Jr.

cc:     Joseph R. Saveri (jsaveri@saverilawfirm.com)
         Matthew S. Weiler (mweiler@saverilawfirm.com)