1  WILLIAM A. ISAACSON (Admitted *Pro Hac Vice*)
   (wisaacson@bsfllp.com)
2  BOIES, SCHILLER & FLEXNER LLP
   5301 Wisconsin Ave, NW, Washington, DC 20015
3  Telephone: (202) 237-2727; Fax: (202) 237-6131

4
   JOHN F. COVE, JR  (Admitted *Pro Hac Vice*)
5  (jcove@bsfllp.com)
   BOIES, SCHILLER & FLEXNER LLP
6  1999 Harrison Street, Suite 900, Oakland, CA 94612
7  Telephone: (510) 874-1000; Fax: (510) 874-1460

8  RICHARD J. POCKER #3568
   (rpocker@bsfllp.com)
9  BOIES, SCHILLER & FLEXNER LLP
   300 South Fourth Street, Suite 800, Las Vegas, NV 89101
10 Telephone: (702) 382 7300; Fax: (702) 382 2755

11
   DONALD J. CAMPBELL #1216
12 (djc@campbellandwilliams.com)
   J. COLBY WILLIAMS  #5549
13 (jcw@campbellandwilliams.com)
   CAMPBELL & WILLIAMS
14 700 South 7th Street, Las Vegas, Nevada 89101
15 Telephone: (702) 382-5222; Fax: (702) 382-0540

16 *Attorneys for Defendant* Zuffa, LLC, d/b/a
   Ultimate Fighting Championship and UFC
17

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Cung Le, Nathan Quarry, Jon Fitch, on behalf of themselves and all others similarly situated, | Lead Case No.: 2:15-cv-01045-RFB-(PAL) |
| Plaintiffs,<br>v.<br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br>Defendant. | Member Case Nos.:<br>2:15-cv-01046-RFB-(PAL)<br>2:15-cv-01055-RFB-(PAL)<br>2:15-cv-01056-RFB-(PAL)<br>2:15-cv-01057-RFB-(PAL)<br><br>**MEMORANDUM IN SUPPORT OF ZUFFA, LLC'S [PROPOSED] PROTECTIVE ORDER** |

| | | |
|---|---|---|
| 1 | Luis Javier Vazquez and Dennis Lloyd Hallman, on behalf of themselves and all others similarly situated, | Case No.  2:15-cv-01055 RFB-(PAL) |
| 2 | | |
| 3 | Plaintiffs, | |
| 4 | v. | |
| 5 | Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC, | |
| 6 | | |
| 7 | Defendant. | |
| 8 | Brandon Vera and Pablo Garza, on behalf of themselves and all others similarly situated, | Case No.  2:15-cv-01056 RFB-(PAL) |
| 9 | | |
| 10 | Plaintiffs, | |
| 11 | v. | |
| 12 | Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC, | |
| 13 | | |
| 14 | Defendant. | |
| 15 | Gabe Ruediger and Mac Danzig, on behalf of themselves and all others similarly situated, | Case No.  2:15-cv-01057 RFB-(PAL) |
| 16 | | |
| 17 | Plaintiffs, v. | |
| 18 | Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC, | |
| 19 | | |
| 20 | Defendant. | |
| 21 | Kyle Kingsbury and Darren Uyenoyama, on behalf of themselves and all others similarly situated, | Case No. 2:15-cv-01046 RFB-(PAL) |
| 22 | | |
| 23 | Plaintiffs, | |
| 24 | v. | |
| 25 | Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC, | |
| 26 | | |
| 27 | Defendant. | |
| 28 | | |

MEMO ISO ZUFFA, LLC'S [PROPOSED] PROT ORDER

## I.  INTRODUCTION

Zuffa submits this memorandum in support of its proposed protective order. The only substantive difference between Zuffa's proposal and Plaintiffs' proposed order is that Zuffa's order provides a greater degree of protection to the parties' most sensitive business information. This protection is necessary because certain counsel for Plaintiffs and/or their partners either represent individual MMA athletes in contract negotiations with Zuffa or engage in commercial activities in competition with Zuffa or adverse to Zuffa's interest outside this litigation, including Robert Maysey, the founder and a member of the "executive team" of the so-called Mixed Martial Arts Fighters Association ("MMAFA").

## II.  ZUFFA'S PROPOSED PROTECTIVE ORDER

Zuffa's proposal, which would govern confidential information obtained in discovery by both parties and non-parties, provides for two types of confidentiality designations: "CONFIDENTIAL" and HIGHLY CONFIDENTIAL—Attorneys' Eyes Only." "CONFIDENTIAL" information may be viewed by the parties, their outside counsel of record, including Mr. Maysey, the Court and court personnel, experts, consultants, and appropriate vendors. Zuffa's [Proposed] Protective Order ("Zuffa Proposal") at §§ 2.2, 7.2. "HIGHLY CONFIDENTIAL—Attorneys' Eyes Only" information is reserved for "extremely sensitive, highly confidential, non-public information, consisting either of trade secrets or other highly confidential information directly concerning business plans, strategies, revenues or costs, disclosure of which to another Party or Non-Party would create a substantial risk of significant competitive or business injury." Zuffa Proposal at § 2.7. Of those persons with access to "CONFIDENTIAL" information, the following groups would be prohibited from viewing "HIGHLY CONFIDENTIAL" information:

> (1) the Receiving Party or a Receiving Party's officers, directors, managers, and employees, other than In-House Legal Department Personnel who shall be permitted to view such information; (2) anyone who has served or anticipates serving as an agent for any athlete in contract negotiations with any sports promoter or league; or (3) anyone who has served in any capacity with, or has attempted to form, any entity, association, or organization that has sought to or does collectively represent athletes in licensing, or in the formation of a union or

association, including but not limited to the entity that calls itself the Mixed
Martial Arts Fighters Association.

*Id.* § 7.3.

Zuffa's proposed order requires that: "Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards." Zuffa Proposal at § 5.1. To the extent a party believes that a document or a group of documents are misclassified as "highly confidential", the [Proposed] Protective Order provides a procedure for challenging the confidentiality designation. Zuffa Proposal at § 6. "Consistent with applicable law," the ultimate burden of persuasion regarding the appropriate level of confidentiality rests with the parties that has designated the information at issue. Zuffa Proposal at § 6.3; *Oracle USA, Inc. v. Rimini St., Inc.*, No. 2:10-CV-00106-LRH-PAL, 2012 WL 6100306, at *9 (D. Nev. Dec. 7, 2012) (upholding protective order limiting disclosure of highly confidential information because "the stipulated protective order did not allow counsel to maintain the confidentiality of all documents" but rather "allows the parties and non-parties producing discovery in this case to designate materials as confidential or highly confidential only if counsel for the designating party reasonably believes there is a valid basis for doing so"); *U.S. ex rel. Daugherty v. Bostwick Labs.*, No. 1:08-CV-354, 2013 WL 3270355, at *9 (S.D. Ohio June 26, 2013).[1] If Plaintiffs believe Zuffa is "'over-designating'" information as Attorneys' Eyes Only, the Parties will be obliged to confer, and the objecting party may seek relief from the Court if the parties are unable to resolve the dispute." Zuffa Proposal at § 6.

Zuffa requests that the Court adopt this two-tier confidentiality designation system to protect the parties' competitively and commercially sensitive information from being shared with

---

[1] "Bostwick has proposed a reasonable procedure permitting the Parties to designate documents as Attorneys Eyes' Only as they review and produce documents in the ordinary course of discovery only if they fall into the defined categories above. Under Bostwick's proposed protective order, each of the Parties has a good faith obligation to limit their designation of Attorneys' Eyes Only documents to those documents meriting such additional protection. In fact, recognizing that disputes about the categorization of individual documents may arise, Bostwick's proposed order includes a procedure by which any party can dispute a confidentiality designation assigned by another party." *Bostwick Labs.*, 2013 WL 3270355, at *9

their competitors and other persons to whom disclosure would create a substantial risk of significant competitive or business injury.

### III.     LEGAL STANDARD

Federal Rule of Civil Procedure 26(c) authorizes the Court to protect a party from "undue burden or expense" in discovery by directing that "confidential research, development, or commercial information not be revealed or be revealed only in a specified way."  When counsel for a party receiving confidential information ("Receiving Party") holds a position with a competitor, customer, supplier, or other party in a commercially adverse relationship to the party producing that information ("Producing Party"), courts may grant protective orders restricting that counsel's access to information that, if disclosed, would pose a substantial risk of significant competitive or business injury to the Producing Party.  *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992).

Courts grant such protective orders because "it is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so."  *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010) (quoting *FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980)).  "Even if the [Receiving Party's] counsel acted in the best of faith and in accordance with the highest ethical standards, the question remains whether access to the [Producing Party's] confidential information would create 'an unacceptable opportunity for inadvertent disclosure.'"  *Mikohn Gaming Corp. v. Acres Gaming Inc.*, No. CV-S-97-1383-HDM (LRL), 1998 WL 1059557, at *2 (D. Nev. Apr. 15, 1998) (quoting *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984), *disagreed with on other grounds by In re Deutsche Bank*, 605 F.3d at 1379).  In evaluating what protections are appropriate, "the court must balance the risk to the moving party of inadvertent disclosure against the risk that the protective order will impair the prosecution or defense of the other party's claims."  *Id.* at *2 (citing *Brown Bag*, 960 F.2d at 1470).

//

## IV. ARGUMENT

### A. Without Protection, There Is an Extremely High Risk of Inadvertent Disclosure.

A key factor in determining what level of protection is warranted is whether counsel is involved in "competitive decisionmaking"; that is, advising on decisions about contracts, marketing, employment, pricing, or design "made in light of similar or corresponding information about a competitor." *Brown Bag*, 960 F.2d at 1470; *U.S. Steel*, 730 F.2d at 1468 & n.3. "'[C]ompetitive decisionmaker' . . . is a shorthand label for a person who, because of her position and the particular decisions in which she is involved, cannot help but inadvertently rely on the confidential information at issue in discussing or reaching those decisions." *Rheumatology Diagnostics Lab., Inc v. Aetna, Inc.*, No. 12-CV-05847-WHO, 2015 WL 1744330, at *12 (N.D. Cal. Apr. 15, 2015). "In the classic scenario, a decisionmaker may learn how a competitor prices its product and despite the decisionmaker's best conscious effort his or her future pricing decisions may be made in partial reliance on that information." *Id*.

Here, the risk of inadvertent disclosure of Zuffa's highly confidential information is very high because Robert Maysey is indisputably a "competitive decisionmaker" at the Mixed Martial Arts Fighters Association ("MMAFA").[2] Mr. Maysey founded the MMAFA in 2005 and has since held himself out as the head of the association and a member of the "executive team."[3] Mr. Maysey, under the auspices of the MMAFA, seeks to organize and/or represent MMA athletes for the purposes of group licensing, merchandising, and collective bargaining.[4] For example, Mr.

---

[2] Although Mr. Maysey's web site suggests that his primary practice is in real estate, Mr. Maysey also claims to have personally represented MMA athletes and agents "in negotiating agreements." Exhibit A, Warner Angle Hallam Jackson & Formanek PLC, "Real Estate Law: Robert C. Maysey," http://www.warnerangle.com/attorneys/maysey.htm (last accessed August 27, 2015).

[3] Exhibit B, Facebook, "MMAFA//Mixed Martial Arts Figters Association: About," https://www.facebook.com/TheMMAFA/info?tab=page_info (last accessed August 27, 2015) ("The MMAFA was founded by Rob Maysey" and describing his as a member of the executive team).

[4] Exhibit C, MMAFA, "FAQ," http://mmafa.tv/faq-2/ (last accessed August 27, 2015) ("The MMAFA provides its members with a brand that can be monetized through the sale of merchandise, and through licensing to third parties"); Exhibit D, Robert Joyner, "Maysey Further Explains Benefits of MMAFA," MMAPayout.com (July 8, 2009) (hereinafter, "Joyner"),

Maysey stated:

> In terms of the MMAFA, organization is the precursor to group licensing, branding and effective lobbying . . . . Talent isn't even in the market for the vast majority of these revenue streams at all, because they don't have a group to present to the corporate sponsors and gear providers, and they don't have a group vehicle on the web to present to advertisers.[5]

In other words, Mr. Maysey intends to compete with Zuffa for those "revenue streams" from corporate sponsors, gear providers, and advertisers. Further, Mr. Maysey has used the threat of an antitrust suit to attempt to induce Zuffa to recognize his organization as a negotiating authority on behalf of MMA athletes. In an interview with ESPN on the day the *Le* Complaint was filed, Mr. Maysey stated: "I called [the UFC] in 2006 and said, 'You have a choice,' I said, 'You guys are going to recognize a fighters' association or you're going to face an antitrust case.'"[6] Because the MMAFA is adverse to Zuffa with respect to at least group licensing, merchandizing and collective bargaining, Zuffa would face a significant risk of substantial competitive and/or business injury if its highly confidential information were disclosed to the MMAFA.

In this case, Plaintiffs have requested confidential information covering essentially all the information in Zuffa's possession about the contracts, use and compensation for MMA athletes' various intellectual property and publicity rights.[7] If Mr. Maysey as head of the MMAFA were to gain access to the highly confidential aspects of this information, it would be impossible for him "to compartmentalize and selectively suppress information once learned" in his work on behalf of

---

http://mmapayout.com/2009/07/maysey-further-explains-benefits-of-mmafa/ (last accessed August 27, 2015) (referring to Maysey as "head" of the MMAFA).

[5] Joyner, note 4 *supra*.

[6] Exhibit E, John Barr, "Fighters claim UFC restricts earnings," ESPN.com (Dec. 16, 2014)), http://espn.go.com/mma/story/_/id/12037883/antitrust-lawsuit-filed-ufc-parent-company-claims-monopoly (last accessed August 27, 2015).

[7] *E.g.*, Plaintiffs' First Set of RFPs No. 11(g) (requesting "total revenues derived in any way from the Merchandise Rights, including licensing revenues, relating to each MMA Fighter at any time during the Relevant Time Period, broken down by Fighter, month and year and itemized by revenue source and line item"); Plaintiffs' First Set of Interrogatories No. 2 (requesting Zuffa identify "each and every MMA Fighter whose Identity You utilized for any purpose between December 16, 2010 and the present, setting out the use to which the Identity was put, the dates the Identity was used, the revenues if any earned from that use, and the share of those revenues paid to the Fighter (if any)").

the MMAFA, including, for example, in advising the MMAFA on decisions regarding pricing, contract terms, and marketing of licenses when approaching actual and potential customers of Zuffa, including sponsors, advertisers, and merchandisers. *In re Deutsche Bank Trust Co. Americas*, 605 F.3d at 1378. This is information that Mr. Maysey has made clear he wants. For example, Mr. Maysey, tweeting through the MMAFA twitter account (@MMAFA) expressed interest in seeing highly confidential information regarding Zuffa's merchandising agreements.[8] Clearly, it is improper to use the discovery process to obtain confidential business information for any use outside of the litigation. *Humboldt Baykeeper v. Union Pac. R. Co.*, 244 F.R.D. 560, 563 (N.D. Cal. 2007) (protective orders are appropriate to prevent "improperly motivated harm to interests that are external to the litigation" or "unintended but harmful collateral consequences to legitimate interests that are external to the litigation").

Furthermore, as a potential collective bargaining agent, the MMAFA is directly adverse to Zuffa. While any promoter of collective bargaining would naturally like to obtain essentially all the private business information of their target, which is what Plaintiffs here have asked for,[9] they have no legal right to do so under the guise of an antitrust lawsuit in federal district court. Under these circumstances, "[k]nowledge of [Zuffa's confidential information] would place [Maysey] in the 'untenable position' of having to refuse [the MMAFA] legal [and commercial] advice on a host of contract, employment, and competitive marketing decisions lest he improperly or indirectly reveal [Zuffa's confidential information]." *Brown Bag*, 960 F.2d at 1471.

In *Brown Bag*, the Ninth Circuit affirmed the district court's decision to deny counsel access to confidential information where that attorney acted as a competitor's "sole legal advisor

---

[8] On August 18, 2015, Maysey tweeted using @MMAFA account: "I wonder--what do fighters get paid under the Merchandising Agreement? Why do many suppose the split is vastly different for bouts?" Exhibit F, (https://twitter.com/MMAFA/status/633909903850008577).

[9] *E.g.*, Pls. First Set of RFPs (Dkt. 107-1) Nos. 11, 12, 13, 14, 15, 20, 33, 35, 37. Plaintiffs have also requested "All Documents concerning any actual or potential attempt by MMA Fighters to unionize or organize into another form of collective or collective bargaining unit." Pls. First Set of RFPs No. 44. Mr. Maysey and the MMAFA should not be permitted to use this patently irrelevant request, or even for that matter a relevant request, as a back door to Zuffa's confidential communications or documents regarding his organization.

and personal manager" on "a gamut of legal issues, including contracts, marketing and employment." 960 F.2d at 1471. District courts in the Ninth Circuit have issued protective orders in antitrust cases where counsel were in far less sensitive positions than the one Mr. Maysey holds with the MMAFA. *E.g., Saint Alphonsus Med. Ctr. v. St. Luke's Health Sys.*, No. 1:12-CV-00560-BLW-RE, 2013 WL 139324, at *4 (D. Idaho Jan. 10, 2013) (issuing protective order barring two in-house counsel who were part a four-attorney legal department from reviewing competitively sensitive information); *Frank Brunckhorst Co., LLC v. Ihm*, No. CIV. 11-1883 CAB NLS, 2012 WL 684760, at *2-*3 (S.D. Cal. Mar. 2, 2012) (barring plaintiff's general counsel from seeing competitively sensitive information notwithstanding declarations that he had "no executive or non-legal functions" at plaintiff's companies). Here, Mr. Maysey not only advises the MMAFA on legal and business issues but also manages and is the public face of the organization.

Two-tiered Protective Orders, like the one that Zuffa has proposed, are commonly used to protect competitively-sensitive information, including by preventing disclosure of highly confidential information to outside counsel who are involved in competitive decision-making. *See High Tech Employee Antitrust Litig.*, No. 11-cv-2509-LHK (Dkt. 107) (limiting disclosure of highly confidential information to Outside Counsel who are "not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984)").[10] The use of a two-tiered confidentiality provision is especially appropriate in antitrust cases where the parties or third parties producing documents either compete with each other or are engaged in vertical buy/sell relationships with each other (such as promoters and MMA athletes or promoters and sponsors), such that inadvertent disclosure of highly confidential information would harm the producing party. *In re Rail Freight Fuel Surcharge Antitrust Litigation*, MDL 1869 (Dkt. 195); *Universal Delaware, Inc. v. Ceridian Corp.*, No. 07-1078-JKG

---

[10] In each case cited in this paragraph, at least one of the interim lead counsel in this action stipulated to a two-tiered order. Further, in each of these cases, those interim lead counsel also agreed to protective orders that denied class representatives access to defendants' highly confidential information.

(Dkt. 56); *Babyage.com v. ToysRUs*, No. 2:05-cv-06792 (Jan. 18, 2007) (Dkt. 169).

### B. A Protective Order That Restricts Access to Zuffa's Highly Confidential Information Will Not Impair Plaintiffs' Ability to Prosecute This Action.

Plaintiffs' ability to prosecute this action will not be impaired if Mr. Maysey or other counsel engaged in adverse commercial activities are prohibited from accessing Zuffa's highly confidential material because many other experienced counsel have been involved in the litigation from its inception. *See* Pls. Mot. for Appointment of Interim Co-Lead Class Counsel (Dkt. 127) (detailing interim lead counsel's extensive experience and resources); *Mikohn Gaming*, 1998 WL 1059557, at *5; *see Frank Brunckhorst Co.*, 2012 WL 684760, at *5 (finding no prejudice would result from barring in-house counsel from access to defendant's confidential information where plaintiff "has competent outside counsel already working on this case, and will have sufficient time to review the confidential materials"); *accord Saint Alphonsus Med. Ctr.*, 2013 WL 139324, at *5 (D. Idaho Jan. 10, 2013). Plaintiffs moved, and the Court granted, the appointment of four firms as interim co-lead counsel. (Dkt. 140). Mr. Maysey's firm is not among those appointed to act as interim co-lead counsel. Absent Mr. Maysey, Plaintiffs will still have at least four firms and dozens of other lawyers to review Zuffa's highly confidential information. Moreover, as explained in Section II above, the proposed order provides a mechanism for challenging overbroad designations in the event Plaintiffs feel improper designations are hampering their efforts. Zuffa Proposal at § 6.

### IV. CONCLUSION

For the foregoing reasons, Zuffa respectfully requests that the Court adopt its proposed system of confidentiality designations and its attendant restrictions on access to information designated highly confidential.

Dated: August 27, 2015          Respectfully Submitted,

BOIES, SCHILLER & FLEXNER LLP


By:  /s/ John F. Cove, Jr.
     John F. Cove, Jr.
*Attorneys for Defendant* Zuffa, LLC, d/b/a
Ultimate Fighting Championship and UFC

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that service of the foregoing **Memorandum in Support of Zuffa, LLC's [Proposed] Protective Order** was served on August 27, 2015 via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

                                              Christina Seki

                                    An employee of Boies, Schiller & Flexner, LLP