WILLIAM A. ISAACSON (Admitted *Pro Hac Vice*)
(wisaacson@bsfllp.com)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave, NW, Washington, DC  20015
Telephone: (202) 237-2727; Fax: (202) 237-6131

JOHN F. COVE, JR. (Admitted *Pro Hac Vice*)
(jcove@bsfllp.com)
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900, Oakland, CA  94612
Telephone: (510) 874-1000; Fax: (510) 874-1460

RICHARD J. POCKER #3568
(rpocker@bsfllp.com)
BOIES, SCHILLER & FLEXNER LLP
300 South Fourth Street, Suite 800, Las Vegas, NV  89101
Telephone: (702) 382 7300; Fax: (702) 382 2755

DONALD J. CAMPBELL #1216
(DJC@campbellandwilliams.com)
J. COLBY WILLIAMS  #5549
(JCW@campbellandwilliams.com)
CAMPBELL & WILLIAMS
700 South 7th Street, Las Vegas, NV  89101
Telephone: (702) 382-5222; Fax: (702) 382-0540

*Attorneys for Defendant* Zuffa, LLC, d/b/a
Ultimate Fighting Championship and UFC

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| **Cung Le, Nathan Quarry, and Jon Fitch, on behalf of themselves and all others similarly situated,**<br><br>Plaintiffs,<br><br>v.<br><br>**Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,**<br><br>Defendant.<br><br>**And Related Consolidated Cases** | Lead Case No.: 2:15-cv-01045-RFB-(PAL)<br><br>Member Case Nos.:<br>    2:15-cv-01046-RFB-(PAL)<br>    2:15-cv-01055-RFB-(PAL)<br>    2:15-cv-01056-RFB-(PAL)<br>    2:15-cv-01057-RFB-(PAL)<br><br>**[PROPOSED] STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

1. **PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in the above-captioned case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

2. **COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

3. **LIAISON**

The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

4. **PRESERVATION**

The parties have discussed their preservation obligations and needs, and agree that potentially relevant ESI has been preserved, and will continue to be preserved, in a reasonable and proportionate manner. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved during the litigation, the parties agree that:

  a) The duty to preserve evidence is separate and apart from the duty to produce evidence, and the duty to preserve is broader in scope than the duty to produce. The duty to preserve evidence applies to all evidence a party knows or should know is relevant or may lead to the discovery of relevant evidence, and goes into effect as soon as a potential claim is identified. The duty to produce evidence applies to evidence that is responsive to the other party's discovery requests or that a party plans to use for its own claims or defenses.

  b) Subject to the exceptions enumerated below in paragraph (f), Defendant Zuffa, LLC d/b/a Ultimate Fighting Championship and UFC ("Zuffa") has taken reasonable and good faith steps to preserve relevant ESI created or received between January 1, 2000 and August 28,

2

2015, to the extent such relevant ESI existed as of the date the first Complaint in this action was filed. Zuffa will continue to preserve such information, subject to any agreements the Parties reach pursuant to section 4(d) below or further Court order.

c) Subject to the exceptions enumerated below in paragraph (f), Plaintiffs have taken reasonable and good faith steps to preserve ESI created or received on or after January 1, 2000. Plaintiffs will continue to preserve such information, subject to any agreements the Parties reach pursuant to subsection 4(d) below or further Court order.

d) The Parties will meet and confer to agree on the extent to which ESI and other information created after August 28, 2015 needs to be preserved as it is created. The Parties will also meet and confer on whether there is ESI already preserved that no longer needs to be preserved.

e) The parties have exchanged information regarding ESI that is being preserved. The parties have discussed the identification of non-custodial sources of potentially relevant ESI. All parties have advised that they have implemented litigation holds and that they have taken reasonable and good faith steps to preserve all existing relevant company, class representative, and custodial files.

f) The parties have conferred about sources of potentially relevant ESI that are not reasonably accessible because of undue burden or cost. To the extent Plaintiffs or Defendant identifies potentially relevant ESI that is not reasonably accessible, the parties agree that they are not required to preserve, search, review or produce such ESI, provided that the party that has identified what it reasonably believes to constitute such ESI provides reasonable notice to the opposing party. The parties shall meet and confer following such notice. Upon agreement by the parties or a Court order, the party in possession of ESI that is not reasonably accessible shall not be required to preserve, search, review or produce such ESI. The parties have agreed that the following sources of data may not be reasonably accessible and have agreed that they need not preserve, search, review, or produce the following:

    i. Backup media, backup tapes, or other long-term storage media that were created strictly for use as a data back-up or disaster recovery medium provided, however, that all such data shall be preserved if the data cannot be accessed in any other way than the backup media;

  ii. Automatically saved versions of documents and temporary data stored in random access memory (RAM), or other ephemeral data that are difficult to preserve without disabling the operating system;

  iii. Data only accessible by advanced forensic analysis, including deleted, slack, fragmented data;

  iv. Temporary Internet files, history, cache, and cookies;

  v. Voicemail messages received after August 28, 2015; and

  vi. Logs of communications made from mobile devices that were created after August 28, 2015.

Each party reserves the right to identify additional categories of data that are not reasonably accessible as the litigation progresses.

g) The parties have discussed proportionality considerations and will meet and confer to discuss, to the extent not already addressed above, the types of ESI they believe should be preserved, the general job titles or descriptions of custodians, agents, and representatives for whom they believe ESI should be preserved, and the number of custodians per party for whom they believe ESI should be preserved. The parties may add or remove custodians as reasonably necessary.

5. **SEARCH TERMS AND TECHNOLOGY-ASSISTED REVIEW**

The parties will meet and confer about methods to search, cull, and identify potentially responsive ESI, including: (a) identification of custodians and use of filtering search terms to identify ESI that is potentially responsive to the parties' discovery requests; and (b) whether it is appropriate to use identification of computer-assisted and/or linguist-assisted review to identify ESI that is potentially responsive to the parties' discovery requests and to filter out ESI that is not subject to discovery.

6. **DE-DUPLICATION AND DE-NISTING**

The parties agree to de-duplicate ESI across custodians. The parties may de-NIST ESI using the current list of system files maintained by the National Software Reference Library.

7. **PRODUCTION FORMATS**

The parties generally agree to produce responsive, non-privileged documents in TIFF and native formats with load files, with specifications for production formats and production of metadata set forth in

4

Exhibit A to this [Proposed] Stipulated Order. The parties agree not to degrade the searchability of documents as part of the document production process.

The parties will meet and confer to determine whether responsive and non-privileged discoverable documents previously produced to the Federal Trade Commission or any other government agency can be deemed compliant with the production protocol.

8. **DOCUMENTS PROTECTED FROM DISCOVERY**

   a) Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document (collectively, a "privileged document"), whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

   b) The parties have agreed upon a "claw back" procedure and, subject to Court approval, reserve rights to assert privilege as will be provided for in the Protective Order.

   c) When a Producing Party gives notice to Receiving Parties that it inadvertently produced documents, testimony, information, and/or things that are protected from disclosure under the attorney-client privilege, work product doctrine, and/or any other applicable privilege or immunity from disclosure, or the Receiving Party discovers such inadvertent production, the inadvertent production shall not be deemed a waiver of the applicable privilege or protection.  The Receiving Party shall immediately return all copies of such documents, testimony, information and/or things to the inadvertently Producing Party and shall not use such items for any purpose until further order of the Court.  If the Receiving Party does not challenge the designation, such return must occur within three (3) business days of receipt of notice or discovery of the inadvertent production. If a Receiving Party wishes to challenge the designation, the Receiving Party must inform the Producing Party within three (3) business days of receipt of notice or discovery of the inadvertent production, and must file its challenge to the privilege designation with the Court within seven days of notifying the Producing Party of its intent to challenge, unless the Parties

agree to a longer schedule. The Receiving Party may maintain a copy of the challenged document solely for the purpose of the privilege challenge until the Court resolves the issue, but may not disclose or otherwise use the document until the Court resolves the issue. The return of any discovery item to the inadvertently Producing Party shall not in any way preclude the Receiving Party from moving the Court for a ruling that the document or thing was never privileged.

d) Privileged communications involving the Parties that post-date the filing of the First Complaint in this consolidated action (*Le, et. al v. Zuffa, LLC*) need not be placed on a privilege log.

**9.   MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: September 1, 2015        By:      */s/ John F. Cove, Jr.*
                                              John F. Cove, Jr.

John F. Cove, Jr. (*Pro Hac Vice*)
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
Tel: (510) 874-1000
Fax: (510) 874-1460
Email: jcove@bsfllp.com

William A. Isaacson (*Pro Hac Vice*)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave, NW
Washington, DC 20015
Telephone: (202) 237-2727;
Facsimile:  (202) 237-6131
wisaacson@bsfllp.com

Richard J. Pocker (#3568)
BOIES, SCHILLER & FLEXNER LLP
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone: (702) 382 7300;
Facsimile:  (702) 382 2755
rpocker@bsfllp.com

Donald J. Campbell (#1216)
J. Colby Williams (#5549)
CAMPBELL & WILLIAMS
700 South 7th Street
Las Vegas, Nevada 89101
Telephone: (702) 382-5222;
Facsimile: (702) 382-0540
DJC@campbellandwilliams.com
JCW@campbellandwilliams.com

*Attorneys for Defendant Zuffa, LLC*

Dated: September 1, 2015                By:      */s/ Don Springmeyer*
                                                 Don Springmeyer

Don Springmeyer (Nevada Bar No. 1021)
Bradley S. Schrager (Nevada Bar No. 10217)
Justin C. Jones (Nevada Bar No. 8519)
WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP
3556 E. Russell Road, Second Floor
Las Vegas, Nevada 89120
(702) 341-5200/Fax: (702) 341-5300
dspringmeyer@wrslawyers.com
bschrager@wrslawyers.com
jjones@wrslawyers.com

JOSEPH SAVERI LAW FIRM, INC.
Joseph R. Saveri (*pro hac vice* pending)
Joshua P. Davis (*pro hac vice* pending)
Matthew S. Weiler (*pro hac vice* pending)
Kevin E. Rayhill (*pro hac vice* pending)
JOSEPH SAVERI LAW FIRM, INC.
505 Montgomery Street, Suite 625
San Francisco, California 94111
Telephone:     (415) 500-6800
Facsimile:     (415) 395-9940
jsaveri@saverilawfirm.com
jdavis@saverilawfirm.com
mweiler@saverilawfirm.com
krayhill@saverilawfirm.com

Robert C. Maysey (*pro hac vice* pending)
Jerome K. Elwell (*pro hac vice* pending)
WARNER ANGLE HALLAM JACKSON &
FORMANEK PLC
2555 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Telephone: (602) 264-7101
Facsimile:  (602) 234-0419
rmaysey@warnerangle.com
jelwell@warnerangle.com


Benjamin D. Brown (*pro hac vice* pending)
Richard A. Koffman (*pro hac vice* pending)
Hiba Hafiz (*pro hac vice* pending)
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., N.W., Suite 500, East Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile:  (202) 408 4699
bbrown@cohenmilstein.com
hhafiz@cohenmilstein.com

Eric L. Cramer (*pro hac vice* pending)
Michael Dell'Angelo (*pro hac vice* pending)
Patrick Madden (*pro hac vice* pending)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone:  (215) 875-3000
Facsimile:   (215) 875-4604
ecramer@bm.net
mdellangelo@bm.net
pmadden@bm.net

Eugene A. Spector (*pro hac vice* pending)
Jeffrey J. Corrigan (*pro hac vice* pending)
Jay S. Cohen (*pro hac vice* pending)
William G. Caldes (*pro hac vice* pending)
SPECTOR ROSEMAN KODROFF & WILLIS, P.C.
1818 Market Street – Suite 2500
Philadelphia, PA  19103
Telephone:  (215) 496-0300
Facsimile:   (215) 496-6611
espector@srkw-law.com
jcorrigan@srkw-law.com
jcohen@srkw-law.com
bcaldes@srkw-law.com

Frederick S. Schwartz (*pro hac vice* pending)
LAW OFFICE OF FREDERICK S. SCHWARTZ
15303 Ventura Boulevard, #1040
Sherman Oaks, CA 91403
Telephone:  (818) 986-2407
Facsimile:    (818) 995-4124
fred@fredschwartzlaw.com

*Attorneys for Individual and Representative Plaintiffs Cung Le, Nathan Quarry and Jon Fitch, Luis Javier Vazquez, Dennis Lloyd Hallman, Brandon Vera, Pablo Garza, Gabe Ruediger, Mac Danzig, Kyle Kingsbury and Darren Uyenoyama*

**IT IS SO ORDERED**:

HON. PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE,

DATED: _____

## ATTESTATION OF FILER

The signatories to this document are myself and Don Springmeyer, and I have obtained Mr. Springmeyer's concurrence to file this document on his behalf.

Dated:  September 1, 2015

>                                    BOIES, SCHILLER & FLEXNER LLP
>
>                      By:   */s/ John F. Cove, Jr.*
>                            John F. Cove, Jr. (*Pro Hac Vice*)
>                            1999 Harrison Street, Suite 900
>                            Oakland, CA 94612
>                            Tel: (510) 874-1000
>                            Fax: (510) 874-1460
>                            Email: jcove@bsfllp.com

# EXHIBIT A – PRODUCTION FORMAT REQUESTS

Responsive, non-privileged documents and ESI shall be produced as follows:

**A. Production Format**

   **1. Native Productions**

Except as specified in this section, all documents may be produced in TIFF format.

All spreadsheet files (e.g., Excel), audio, and video files shall be produced in native format to the extent possible. Additionally, any other file types that cannot be converted to TIFF will be produced in native format.

"Native" files refer to electronic files in the same format in which they were originally collected from custodians or other sources. Native file productions shall include metadata as set forth in Section B and a single page TIFF image indicating that the associated file was produced in native form. Each produced native file shall be named with a unique Bates Number (e.g., ABC00000001.xls). If the file contains privileged or work product content, the producing party may TIFF the document to redact that content from the document before production and produce the redacted document in TIFF format.

To the extent that any such native files are used in any pretrial motion or proceeding, those files will be referred to by the Bates-number(s) assigned during processing.

   **2. TIFF Productions**

Defendant has indicated that it intends to make its document productions in TIFF format, with the exception of those document formats specified above. Plaintiffs may also use TIFF production. The standards below pertain to TIFF productions.

      **a. Image Production Standard**

(1) **TIFF Images.** Unless otherwise stated in this Production Protocol, each document shall be produced in Group IV Tagged Image File Format ("TIFF") regardless of whether such documents are stored by the parties in the ordinary course of business in electronic or hard copy form. Each TIFF image file should be one page and should reflect how the source document would appear if printed to hard copy.

All TIFF images shall be produced in a folder named "IMAGES", which shall contain sub-folders named "0001", "0002", etc. Each sub-folder shall contain no more than 3,000 images. Images from a single document shall not span multiple sub-folders.

      (2) **Load Files.** Document productions shall include Concordance-compatible Load Files, including a Concordance DAT file and an Opticon delimited file, that indicate document breaks of the TIFF images and additional fields as identified in Section B below.  All Load and Cross-reference files shall be produced in a folder named "DATA".

      (3) **File Name.** Each document image file shall be named with the unique Bates Number of the page of the document in question followed by the file extension "TIF". File names should not be more than fifteen characters long or contain spaces or underscore symbols.

      (4) **Document Unitization.** If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

      (5) **Color.** Documents shall be produced as black and white TIFF images.  Upon written request, a party shall produce color documents reasonably necessary to decipher the complete meaning, context, or content of the documents which were originally in color.  The requesting party shall specify the requested documents by Bates Number range.

    **3.**      **Searchable Text:**  In addition to TIFF images and/or Native files, each production will include text files corresponding to the TIFF image or Native files described above.

        **a.**      **Hard Copy Documents.** Hard copy documents shall be scanned using Optical Character Recognition ("OCR") technology and searchable ASCII text (or Unicode text if the text is in a language requiring characters outside of the ASCII character set) files shall be produced. Each file shall be named with the unique Bates Number of the first page of the corresponding TIFF document followed by the extension "TXT".

        **b.**      **Extracted Text or Optical Character Recognition ("OCR") Text for TIFF Images and Native Files.**   To the extent practicable, each individual document based on an electronic file shall be accompanied by one corresponding text file with text that is extracted from the electronic file, not generated as an OCR file from the TIFF image(s). The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a language requiring characters outside of the ASCII character set) and shall be named with the unique Bates Number of the first page of the corresponding TIFF document followed by the extension "TXT". Searchable text files corresponding to the TIFF image files for redacted Electronic Documents must include Extracted Text or OCR text only

to the extent that it will not disclose redacted information. The production of relevant ESI in searchable, full text format is limited to those forms of ESI that have text (in other words, any non-text formats [*e.g.,* .wav and .jpeg] would not produce any corresponding text files).

All Extracted Text and OCR files shall be produced in a folder named "TEXT". The Concordance load file will contain a link to the extracted text or OCR text file if applicable. The text should not be included in the Concordance .DAT load file.

**4.     Databases.** Databases are not included in this Production Protocol, but will be the subject of meet-and-confers as needed.

**B. Metadata Fields**

The following corresponding metadata fields, to the extent applicable to a produced electronic document, will be included in a searchable fielded data file, regardless of the production format:

- *BegDoc (Beginning Bates number)
- *EndDoc (Ending Bates number)
- *BegAttach (Begin Attachment(s) Bates number)
- *EndAttach (End Attachment(s) Bates number)
- *PgCount (Page Count)
- *Type ("P" for parent document; "C" for child document)
- Document File extension or application
- Document Date (date sent for e-mails; latest chronologically saved date for electronic documents; MM/DD/YYYY format)
- Sent Time (e-mails only)
- Create Date
- Create Time
- Author
- From
- Recipients (multiple entries separated by "; ")
- CC (multiple entries separated by "; ")
- BCC (multiple entries separated by "; ")
- Subject (for emails)—unless the subject has been redacted
- Title (for files)—unless the document title has been redacted
- *Custodian (Last Name, First Name) (multiple entries separated by "; ")
- File Name
- Modified Date
- Modified Time
- *Full Text File Location (the corresponding text file will contain re-OCR'd text if redactions were made)
- * Notation of Redaction presence (if applicable; designated with "Redacted")
- *Confidentiality Designation (if applicable)
- DocLink
- MD5 or SHA1 Hash

*If hard copy documents are produced, only these fields of information will be included in the load file.*

No party will have any obligation to manually generate information to populate these fields.

**1. Redactions.** For redacted electronic documents, metadata fields must be produced only to the extent such fields will not disclose redacted information.

**2. Redaction of Images.** If the parties redact images on grounds of the attorney-client privilege or attorney work product doctrine, these redactions will be listed on a Privilege Log. In the event a document is redacted, the redaction will be marked by either a box that covers the protected text and/or the term "Redacted." The extracted text described above will not be delivered for that document and in place of extracted text, OCR output will be delivered based on the redacted images, to the extent reasonably feasible. The parties agree and understand that redaction requires that a document be produced in TIFF format.

**3. Parent/Child.** Parent-child relationships (the association between an attachment and its parent document) should be preserved and appropriately reflected in the metadata. Bates numbering of a parent document and any attachments shall be sequential such that a parent document has the lowest value Bates Number when compared to its attachment(s).

**4. Foreign Language Documents.** The parties agree that the producing party shall not bear the cost of translating foreign language documents produced in this case. The requesting parties shall bear the burden of any costs associated with the translation of foreign language documents.

**C. De-Duplication of Productions**

To the extent that exact duplicate documents (based on MD5 or SHA-1 hash values) reside within a party's ESI data set, each Party may produce only a single copy of a responsive document. Exact duplicate shall mean bit-for-bit identicality of the document content. For exact duplicate documents, the Producing Party will produce the metadata described in Section B herein for the produced copy, as well as any such metadata that differs for the duplicate document(s). De-duplication shall be done at the document family level, such that where any exact duplicate documents have attachments, hash values must be identical for both the document-plus-attachment (including associated metadata) as well as for any attachment (including associated metadata) standing alone.

The parties may de-duplicate identical ESI vertically (i.e., by custodian) and horizontally (i.e., globally across custodians). If the Producing Party chooses to de-duplicate horizontally, the Producing Party shall populate the Custodian field listed in Section B herein that identifies each custodian who had the produced document in his or her files.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that service of the foregoing **[Proposed] Stipulated Order re: Discovery of Electronically Stored Information** was served on September 1, 2015 via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

\_\_\_\_/s/ Suzanne E. Jaffe_____

An employee of Boies, Schiller & Flexner, LLP