
**JOSEPH SAVERI LAW FIRM, INC.**

Joseph R. Saveri (admitted *pro hac vice*)
Joshua P. Davis (admitted *pro hac vice*)
Matthew S. Weiler (admitted *pro hac vice*)
Kevin E. Rayhill (admitted *pro hac vice*)
555 Montgomery Street, Suite 1210
San Francisco, California 94111
Telephone:     (415) 500-6800
Facsimile:      (415) 395-9940
jsaveri@saverilawfirm.com
jdavis@saverilawfirm.com
mweiler@saverilawfirm.com
krayhill@saverilawfirm.com

*(Additional counsel appear on signature page)*

*Attorneys for Individual and Representative Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Luis Javier Vazquez, Dennis Lloyd Hallman, Brandon Vera, Pablo Garza, Gabe Ruediger, Mac Danzig, Kyle Kingsbury and Darren Uyenoyama*

[Additional Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| **Cung Le, Nathan Quarry, and Jon Fitch, on behalf of themselves and all others similarly situated,**<br><br>Plaintiffs,<br><br>v.<br><br>**Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,**<br><br>Defendant.<br><br>**And Related Consolidated Cases** | Lead Case No.: 2:15-cv-01045-RFB-(PAL)<br><br>Member Case Nos.:<br>    2:15-cv-01046-RFB-(PAL)<br>    2:15-cv-01055-RFB-(PAL)<br>    2:15-cv-01056-RFB-(PAL)<br>    2:15-cv-01057-RFB-(PAL)<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANT ZUFFA, LLC'S MEMORANDUM IN SUPPORT OF PROTECTIVE ORDER** |

# INTRODUCTION

Plaintiffs submit this response to address the arguments set forth by Defendant Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC ("Zuffa") in its memorandum in support of its proposed protective order ("Zuffa Memo.," Dkt. 159-1). Zuffa asks the Court to impose a restriction on all materials designated HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY so as to prevent Plaintiffs' counsel Rob Maysey from view the materials. Zuffa fails to provide a basis for such extraordinary relief because it fails to show—much less offer—evidence to support its premise: Mr. Maysey is not a competitive decisionmaker, or a competitor of the UFC in any way.

# ARGUMENT

Zuffa offers two possible justifications for excluding Mr. Maysey. First, Zuffa claims that Mr. Maysey is a "competitive decision maker" based on his involvement in a fighters' association called MMAFA. Zuffa Memo. at 4. This claim fails because the MMAFA is not a competitor to the UFC, and Mr. Maysey is not an owner, officer or member of the MMAFA and thus a fortiori is not a "decision maker" at all. Second, Zuffa claims that "as a potential collective bargaining agent," the MMAFA and Mr. Maysey are "directly adverse to Zuffa." *Id*. 6. This claim fails because under the relevant case law being economically adverse does not make a person or entity a competitor and does not justify the exclusions sought by Zuffa.

Moreover, Zuffa's attempt to exclude Mr. Maysey from viewing relevant discovery materials is an improper attempt to prejudice Plaintiffs' case and deprive them of counsel of their choosing.

    **1.** **Plaintiffs' counsel of record Robert C. Maysey is not a "competitive decisionmaker" because the MMAFA is not a competitor to Zuffa and Mr. Maysey is not an owner, member or officer of the MMAFA.**

Zuffa claims that "the risk of inadvertent disclosure of Zuffa's highly confidential information is very high because Robert Maysey is indisputably a 'competitive decisionmaker' at the Mixed Martial Arts Fighters Association." Zuffa Memo. at 4. Zuffa asserts that Mr. Maysey "intends to compete with Zuffa for . . . 'revenue streams' from corporate sponsors, gear providers, and advertisers." *Id.*, pp. 4, 5. But neither the facts nor the case law Zuffa cites support this claim.

"Attorneys' eye only" should be used only sparingly, and only upon a showing of extreme need for protection. "In general, courts utilize 'attorneys' eyes only' protective orders when especially sensitive information is at issue or the information is to be provided to a *competitor*." *Daugherty, supra*, 2013 U.S. Dist. LEXIS 89683, at *5 (emphasis added). "A competitive decisionmaker is one who advises on decisions about pricing or design made in light of similar or corresponding information about a *competitor*." *Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*, 2015 U.S. Dist. LEXIS 49740, at *37 (N.D. Cal. Apr. 15, 2015) (quotations and citation omitted, emphasis added); *accord, Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. Cal. 1992). A competitive decisionmaker "must be in a position to effectuate or direct decisions made using knowledge that is tainted by [the competitor's] confidential information." *Santella v. Grizzly Indus.* ("*Santella*"), 2012 U.S. Dist. LEXIS 158349, at *17 (D. Or. Nov. 5, 2012).

As a threshold matter, the MMAFA is not a competitor of the UFC. It does not promote, arrange, or put on MMA contests. It does not engage in collective bargaining or pursue group licensing or merchandizing deals. Zuffa's allegation that the MMAFA "intends to compete with Zuffa for … 'revenue streams' from corporate sponsors, gear providers, and advertisers," is purely speculative and does not "articulate specific facts showing clearly defined and serious injury." *Daugherty, supra,* 2013 U.S. Dist. LEXIS 89683, at *39. "Competitors are 'persons endeavoring to do the same thing and each offering to perform the act, furnish the merchandise, or render the service better or cheaper than his rival.'" *Fuller Bros. v. Int'l Mktg.*, 870 F. Supp. 299, 303 (D. Or. 1994) (quoting Black's Law Dictionary, Fifth Edition, p. 257). A competitor is "a 'rival' or 'one selling or buying goods or services in the same market as another.'" *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1104 (C.D. Cal. 2004) (quoting Webster's Ninth New Collegiate Dictionary 268 (9th ed. 1991). The MMAFA and Zuffa do not compete on any level. Zuffa does not contend to the contrary.

Indeed, even were the MMAFA hypothetically a potential competitor, that would be insufficient. The case law requires that the party wishing to foreclose access to discovery materials demonstrate an

actual threat.[1] *See Innovatier, Inc. v. Cardxx, Inc.*, 2008 U.S. Dist. LEXIS 94560, 2008 WL 4889867 at *2 (D. Col. 2008) (rejecting plaintiff's motion for attorney-eyes-only protective order in litigation with purported competitor where there was no proof of actual competition); *see also Penn, LLC v. Prosper Bus. Dev. Corp.*, 2012 U.S. Dist. LEXIS 168577, at *12 (S.D. Ohio Nov. 28, 2012) ("A party seeking [attorneys' eyes only designation must describe the alleged harm it will suffer from any disclosure 'with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'"); *Ragland v. Blue Cross Blue Shield of N. Dakota*, 2013 U.S. Dist. LEXIS 99369, 2013 WL 3776495 at *1 (D. N.D. June 25, 2013) ("While limiting disclosure on an 'attorneys' eyes only' basis is recognized as an appropriate method of protecting information in very limited situations, e.g., cases involving trade secrets, … it is a drastic remedy given its impact on the patty entitled to the information").

In addition, Mr. Maysey cannot be a competitive decision maker for the MMAFA because he does not hold any position, executive or otherwise, with the MMAFA. While Mr. Maysey has been actively engaged in promoting the creation of the MMAFA, he has not been involved in any "decisions about pricing or design" or any other competitive matters. He does not hold a position of authority which empowers him to make decisions for the MMAFA—nor indeed, any position at all. Membership in the MMAFA is limited to "professional mixed martial artists, their coaches and trainers." Its leadership will be limited to persons elected from within its ranks. Mr. Maysey cannot possibly be a competitive decision maker because he holds no position, has no managerial or executive authority with the MMAFA, and is not "in a position to effectuate or direct decisions." *Santella, supra,* at *17.

To say the UFC and the MMAFA compete is analogous to saying, for example, the NFL Players Association (NFLPA) competes with the NFL. The NFLPA and the NFL *are* economically adverse in a limited sense because any negotiations between them may include a negotiation over shares of total football revenues for their members (of course, they include other matters, like fringe benefits, health and safety, and other issues). Nonetheless, they are not competitors and they do not compete—they are not selling competing products within a given market. Advocacy on behalf of an organization's members is

---

[1] As alleged, Zuffa has wiped out all competitive threats, such that "[t]here is no competition" in promoting lucrative MMA events. *See Le* Compl. ¶ 8. Zuffa's hyper sensitivity to this imagined competitor speaks volumes as to its anticompetitive intent.

not analogous or similar to competing with Zuffa in the market for MMA promotions.[2] The same holds true for the MMAFA and the UFC. While the relationship between the two may involve bargaining over financial issues, an organization bargaining on behalf of MMA fighters would not be competing with the UFC in the market for promoting live MMA events or any other profit-making venture the UFC is involved in.

  Zuffa trumps up and misconstrues statements from Mr. Maysey. For example, Zuffa tries to twist Mr. Maysey's statement regarding the MMAFA's potential future activities by claiming that the MMAFA may pursue group licensing, branding and effective lobbying on behalf of its members into a claim that "Mr. Maysey intends to compete with Zuffa for those 'revenue streams' . . . ." Zuffa Memo. at 5. But again, advocacy on behalf of a fighters' organization adverse to an employer is not the same as competition against that employer in the marketplace. Zuffa fails to explain *how* licensing, branding and effective lobbying on behalf of the MMAFA's members constitute commercial activity that would compete with Zuffa's. And even if Zuffa were able to make such a showing, it is entirely speculative that Mr. Maysey would have any role—much less a defining role—in such activities. Zuffa's speculation and hypotheticals are insufficient.

  Another example is Zuffa's attempt to twist Mr. Maysey's rhetorical question regarding whether fighters were being treated fairly in a recent merchandising agreement[3] into his "interest in seeing highly confidential information regarding Zuffa's merchandising agreements." Zuffa Memo, p. 6. In fact, the revenue splits from the UFC's Merchandizing Agreement were openly reported on and publicly available, and Mr. Maysey was well aware of the payout percentages. Rayhill Decl., ¶¶ 2, 3. Of course Plaintiffs *do* want to see Zuffa's financial information: this information is at the heart of Plaintiffs' allegations that

---

[2] This is supported by Supreme Court jurisprudence holding that traditional labor negotiation activities are generally exempt from the antitrust laws. *See, Brown v. Pro Football,* 518 U.S. 231, 240 (U.S. 1996) *(*when "the practice at issue . . . plays a significant role in a collective-bargaining process" it is exempt from the antitrust laws). *Accord Cal. ex rel. Brown v. Safeway, Inc.*, 615 F.3d 1171, 1194 (9th Cir. Cal. 2010) ("the Clayton and Norris-LaGuardia Acts . . . exempted trade union activities from review under the Sherman Act").

[3] On August 18, 2015, Mr. Maysey tweeted "I wonder—what do fighters get paid under the Merchandising Agreement? Why do many suppose the split is vastly different for bouts?" Zuffa Memo, p. 6, fn. 8.

Zuffa has illegally acquired and maintained monopoly and monopsony power and is using that power to inflict antitrust injuries on the Plaintiffs. But Zuffa's attempt to paint these discovery requests as the ploy of a competitor trying to get a leg up on Zuffa reveals a certain level of paranoia but it is wholly misplaced. It is simply a stretch to believe that the activities of what might develop into a players organization in the future are the activities of a rival promoter seeking a competitive advantage. It is like saying the United Steelworkers Union competes for business with U.S. Steel when it demands higher wages and better working conditions for its members, a statement that is patently without merit.

### 2. Even if the MMAFA's activities would be economically adverse to Zuffa, such activities do not justify a HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY designation.

Zuffa then claims that "Mr. Maysey, under the auspices of the MMAFA, seeks to organize and/or represent MMA athletes for the purposes of group licensing, merchandising, and collective bargaining." Zuffa Memo, p. 4. "[A]s a potential collective bargaining agent, the MMAFA is directly adverse to Zuffa." *Id.*, p. 6. If Mr. Maysey is allowed access to Zuffa's sensitive commercial information, the argument goes, he would be "'in the untenable position of having to refuse [the MMAFA] legal [and commercial] advice on a host of contract, employment, and competitive marketing decisions lest he improperly or indirectly reveal [Zuffa's confidential information].'" *Id.*, quoting *Brown Bag, supra*, 960 F.2d 1465, 1471. These claims do not comport with the facts and are not supported by relevant case law.

First, and importantly, Zuffa's statements about the MMAFA are speculative at best. At this point in time the MMAFA is still a nascent organization: it does not negotiate with anyone, and Mr. Maysey holds no position with the organization. To say that the MMAFA is a potential collective bargaining agent is to characterize the MMAFA with attributes which it does not now and may never have. Zuffa has failed to meet its burden of "articulat[ing] specific facts showing clearly defined and serious injury." *Daugherty v. Bostwick Labs., supra,* 2013 U.S. Dist. LEXIS 89683, at *39. Further, Zuffa's additional allegation that the MMAFA "is adverse to Zuffa with respect to at least group licensing, merchandizing and collective bargaining" is demonstrably not true. *Id.*, p. 5. The MMAFA has not engaged in any of these activities. Accordingly, Zuffa's admonition that "it is improper to use the discovery process to obtain confidential business information for any use outside of the litigation"( Zuffa Memo. at 6) is misplaced.

Second, the relevant case law does not support Zuffa's assertions: "evidence indicating that [one

person's] business model may adversely impact [another person's] bottom line is [not] enough" to make them competitors for purposes of restricting access to discovery materials. *Rheumatology Diagnostics, supra*, 2015 U.S. Dist. LEXIS 49740, at *36. "Characterizing every entity whose activities have an economic effect on [another entity] as a competitor goes far beyond what is necessary to serve the purposes of the protective order." *Id.* at *36-37. The protective order in *Rheumatology Diagnostics* provided for a "highly confidential—attorneys' eyes only" designation, but this made sense because the defendant was a *direct competitor* of the plaintiffs in the "highly competitive" market for clinical laboratory services. *Id.* at *3-6. The court took pains to define competitors as "'persons endeavoring to do the same thing and each offering to perform the act, furnish the merchandise, or render the service better or cheaper than his rival.'" *Id.* at *30 (quoting *Summit Tech., Inc. v. High-Line Med. Instruments, Co.*, 933 F. Supp. 918, 939 n.14 (C.D. Cal. 1996)). By that definition, neither Mr. Maysey nor the MMAFA is a competitor with Zuffa.

Moreover, the defendant in *Rheumatology Diagnostics* tried to exclude the plaintiffs' expert from seeing their "highly confidential—attorneys' eyes only" documents on the basis that he was a "competitive decisionmaker" who could share the defendant's sensitive information with his clients in the market for clinical lab services. The court rejected this. It held that, because the expert's business *installed* labs rather than *operating* them, his business model was "too distinct" from the defendant's to qualify as a competitor *Id.* at *36-37. The court denied the defendant's attempt to prevent the plaintiff's expert from accessing discovery materials because the defendant was "unable to articulate a concrete scenario in which information regarding its pricing and costs would be useful to [the expert's clients], much less one in which such information would give [the clients] a competitive advantage." *Id.* at * 39.

In the present case, the operations of the MMAFA are distinct in nature and do not resemble the basic features of the UFC. Providing Mr. Maysey with access to discovery materials will not create a threat of competitive injury based on any sensitive information. Even if the MMAFA's activities were eventually to have an economic effect on the UFC, that would not make them competitors.

Zuffa's reliance on *Brown Bag* is misplaced. First, the parties in *Brown Bag* were *direct competitors* in the market for computer outlining software. Zuffa's attempt to elide the "adverse" interests of the MMAFA and the UFC under the umbrella of *Brown Bag's* holding regarding "competitive

decisionmakers" is baseless: *Brown Bag's* holding applied to *direct competitors*. Second, in *Brown Bag*, the court upheld a protective order which excluded plaintiff Brown Bag's litigation counsel because he was also Brown Bag's in-house counsel—a fact Zuffa remarkably omits—and would be advising his employer on contracts, marketing, and employment decisions that would "necessarily entail advising his employer in areas relating to [the defendant's] trade secrets." *Id.* at 1471. Here, Mr. Maysey holds no position with the MMAFA, an organization which does not compete against the UFC. The facts of this case simply do not align with *Brown Bag*.[4]

### 3. Zuffa's attempt to exclude Mr. Maysey through its [Proposed] Protective Order Impinges on Plaintiffs' due process rights.

Plaintiffs have a right to counsel of their choice, which should not be subject to meddling or mischief by the opposing party in the absence of good cause. *See, Richardson-Merrell, Inc. v. Koller,* 472 U.S. 424, 438 (U.S. 1985) (discussing the "right to counsel of choice in civil cases"); *In re BellSouth Corp.*, 334 F.3d 941, 975 (11th Cir. Ala. 2003) ("The Fifth Amendment Due Process Clause guarantees civil litigants the right to retained counsel, which ordinarily includes the right to be represented by the counsel of their choice."). Accordingly, restrictions on counsel's ability to represent his clients, or which would limit Plaintiffs' choice of counsel, should not be made lightly. *See United Mine Workers v. Illinois State Bar*

---

[4] The same is true for nearly every other opinion cited by Zuffa as support for a HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY provision. All of these cases involved competitors in the same market, and many involved a protective order excluding counsel who was also advising a competitor on business decisions or in other competitive litigation: *In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373, 1379 (Fed. Cir. 2010) (rival patent holders, court upheld protective order where trial counsel in a patent infringement suit "also represent[ed] the same client in prosecuting patent applications before the PTO"); *FTC v. Exxon Corp.*, 636 F.2d 1336, 1351 (D.C. Cir. 1980) (competitors in market for industrial drives, court upheld protective order excluding in-house counsel and outside counsel of "a possible major competitor" in a highly concentrated market); *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 1998 U.S. Dist. LEXIS 22251, at *11, (D. Nev. Apr. 15, 1998) (rival patent holders, court upheld protective order excluding defendant's outside litigation counsel that was also acting as its patent prosecution counsel in other cases); *Frank Brunckhorst Co., LLC v. Ihm*, 2012 U.S. Dist. LEXIS 28152, at *8, 2012 WL 684760 (S.D. Cal. Mar. 2, 2012) (rival meat distributors, court upheld protective order excluding in-house counsel also could "advise[] the Companies on when to enter into, terminate, or enforce distributor relationships in light of what the competitors do"; *United States ex rel. Daugherty v. Bostwick Labs.*, 2013 U.S. Dist. LEXIS 89683, at *2, 2013 WL 3270355 (S.D. Ohio June 24, 2013) (rival urology laboratories). These cases find no analog in the instant case, which does not involve competitors in the same market.

*Ass'n*, 389 U.S. 217, 225 ( 1967) ("The decree at issue here thus substantially impairs the associational rights of the Mine Workers and is not needed to protect the State's interest in high standards of legal ethics.")[5]. Zuffa's attempt to foreclose these important rights on such a makeweight showing should thus be rejected.

Dated: September 23, 2015

By:    */s/ Don Springmeyer*
      Don Springmeyer

Don Springmeyer (Nevada Bar No. 1021)
Bradley S. Schrager (Nevada Bar No. 10217)
Justin C. Jones (Nevada Bar No. 8519)
WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP
3556 E. Russell Road, Second Floor
Las Vegas, Nevada 89120
(702) 341-5200/Fax: (702) 341-5300
dspringmeyer@wrslawyers.com
bschrager@wrslawyers.com
jjones@wrslawyers.com

By:    */s/ Joseph R. Saveri*
      Joseph R. Saveri

Joseph R. Saveri (admitted *pro hac vice*)
Joshua P. Davis (admitted *pro hac vice*)
Matthew S. Weiler (admitted *pro hac vice*)
Kevin E. Rayhill (admitted *pro hac vice*)
JOSEPH SAVERI LAW FIRM, INC.
555 Montgomery Street, Suite 1210
San Francisco, California 94111
Telephone:   (415) 500-6800
Facsimile:    (415) 395-9940
jsaveri@saverilawfirm.com
jdavis@saverilawfirm.com
mweiler@saverilawfirm.com
krayhill@saverilawfirm.com

---

[5] *See also, NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 460 (1958) ("It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech.").

Robert C. Maysey (admitted *pro hac vice*)
Jerome K. Elwell (admitted *pro hac vice*)
WARNER ANGLE HALLAM JACKSON & FORMANEK PLC
2555 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Telephone: (602) 264-7101
Facsimile: (602) 234-0419
rmaysey@warnerangle.com
jelwell@warnerangle.com

Benjamin D. Brown (admitted *pro hac vice*)
Richard A. Koffman (admitted *pro hac vice*)
Hiba Hafiz (*pro hac vice* pending)
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., N.W., Suite 500, East Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408 4699
bbrown@cohenmilstein.com
hhafiz@cohenmilstein.com

Eric L. Cramer (admitted *pro hac vice*)
Michael Dell'Angelo (admitted *pro hac vice*)
Patrick Madden (admitted *pro hac vice*)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
ecramer@bm.net
mdellangelo@bm.net
pmadden@bm.net

Jeffrey J. Corrigan (admitted *pro hac vice*)
William G. Caldes (admitted *pro hac vice*)
SPECTOR ROSEMAN KODROFF & WILLIS, P.C.
1818 Market Street – Suite 2500
Philadelphia, PA  19103
Telephone:  (215) 496-0300
Facsimile:   (215) 496-6611
jcorrigan@srkw-law.com
bcaldes@srkw-law.com

Frederick S. Schwartz (admitted *pro hac vice*)
LAW OFFICE OF FREDERICK S. SCHWARTZ
15303 Ventura Boulevard, #1040
Sherman Oaks, CA 91403
Telephone:  (818) 986-2407
Facsimile:   (818) 995-4124
fred@fredschwartzlaw.com

*Attorneys for Individual and Representative Plaintiffs Cung Le, Nathan Quarry and Jon Fitch, Luis Javier Vazquez, Dennis Lloyd Hallman, Brandon Vera, Pablo Garza, Gabe Ruediger, Mac Danzig, Kyle Kingsbury and Darren Uyenoyama*

# CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2015, the foregoing **PLAINTIFFS' RESPONSE TO DEFENDANT ZUFFA, LLC'S MEMORANDUM IN SUPPORT OF PROTECTIVE ORDER** was served via the Court's CM/ECF electronic filing system on all parties on the Court's e-service list for the above-captioned action.

*s/ Kevin E. Rayhill*
Kevin E. Rayhill