WILLIAM A. ISAACSON (Admitted *Pro Hac Vice*)
(wisaacson@bsfllp.com)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave, NW, Washington, DC 20015
Telephone: (202) 237-2727; Fax: (202) 237-6131

JOHN F. COVE, JR  (Admitted *Pro Hac Vice*)
(jcove@bsfllp.com)
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900, Oakland, CA 94612
Telephone: (510) 874-1000; Fax: (510) 874-1460

RICHARD J. POCKER #3568
(rpocker@bsfllp.com)
BOIES, SCHILLER & FLEXNER LLP
300 South Fourth Street, Suite 800, Las Vegas, NV 89101
Telephone: (702) 382 7300; Fax: (702) 382 2755

DONALD J. CAMPBELL #1216
(djc@campbellandwilliams.com)
J. COLBY WILLIAMS  #5549
(jcw@campbellandwilliams.com)
CAMPBELL & WILLIAMS
700 South 7th Street, Las Vegas, Nevada 89101
Telephone: (702) 382-5222; Fax: (702) 382-0540

*Attorneys for Defendant* Zuffa, LLC, d/b/a
Ultimate Fighting Championship and UFC

*Additional counsel on signature page*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Cung Le, Nathan Quarry, Jon Fitch, on behalf of themselves and all others similarly situated,<br><br>              Plaintiffs,<br>      v.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>            Defendant. | Lead Case No.: 2:15-cv-01045-RFB-(PAL)<br><br>Member Case Nos.:<br>       2:15-cv-01046-RFB-(PAL)<br>       2:15-cv-01055-RFB-(PAL)<br>       2:15-cv-01056-RFB-(PAL)<br>       2:15-cv-01057-RFB-(PAL)<br><br>**JOINT STATUS REPORT** |

| | |
|---|---|
| Luis Javier Vazquez and Dennis Lloyd Hallman, on behalf of themselves and all others similarly situated, | Case No.  2:15-cv-01055 RFB-(PAL) |
| Plaintiffs, | |
| v. | |
| Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC, | |
| Defendant. | |
| Brandon Vera and Pablo Garza, on behalf of themselves and all others similarly situated, | Case No.  2:15-cv-01056 RFB-(PAL) |
| Plaintiffs, | |
| v. | |
| Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC, | |
| Defendant. | |
| Gabe Ruediger and Mac Danzig, on behalf of themselves and all others similarly situated, | Case No.  2:15-cv-01057 RFB-(PAL) |
| Plaintiffs, | |
| v. | |
| Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC, | |
| Defendant. | |
| Kyle Kingsbury and Darren Uyenoyama, on behalf of themselves and all others similarly situated, | Case No. 2:15-cv-01046 RFB-(PAL) |
| Plaintiffs, | |
| v. | |
| Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC, | |
| Defendant. | |

JOINT STATUS REPORT

The parties in the above-captioned matters have met and conferred and submit the following Joint Status Report.

## I.      Outstanding Motions

The only outstanding motion is Zuffa's Motion to Dismiss.  (Dkt. 64).  Judge Boulware has scheduled a hearing today, September 25, 2015, on that motion.

## II.     Protective Order

The parties met and conferred on a proposed stipulated Protective Order and came to agreement on all issues except one:  whether a two-tiered system of confidentiality designations is appropriate in this case and who should have access to "Highly Confidential" information under that Order.  On August 27, 2015, the parties each filed their respective proposed Protective Orders, which differ only in this regard.  Dkt. Nos. 158, 159, 178.  Each party also filed a brief memorandum setting out its position with regard to this issue.  Plaintiffs filed a response to Zuffa's submission addressing issues related to Zuffa's attempt to prevent Plaintiffs' counsel Rob Maysey from viewing "highly confidential" materials. Dkt. No. 183.  Pursuant to Local Rule 7-2, Zuffa will move to strike Plaintiffs' untimely opposition.

## III.    ESI Stipulation

On September 2, 2015, the parties submitted a [Proposed] Stipulated Order re: Discovery of Electronically Stored Information that would govern the treatment of ESI in this case.  Dkt. 160.  Judge Boulware has scheduled a hearing today, September 25, 2015, on the ESI Stipulation submission.  The parties will advise the Court, following Judge Boulware's decision, if further follow-up on this issue is required.

## IV.     Phasing Discovery

Following the hearing on the Motion to Stay, the Court directed the parties to make "preliminary progress" and try to reach agreement with respect to the categories of information that could be provided or a phasing of discovery that could proceed in a cost-effective way.  The parties have met and conferred numerous times on the proper approach and have presented and discussed their respective proposals for the phasing of discovery and production.  While the parties have not reached agreement, Zuffa has committed to producing certain categories of hard

1  copy documents and ESI, as discussed more fully below.  Plaintiffs agree that Zuffa should

2  promptly produce the categories of hard copy documents and ESI set forth in Zuffa's proposal,

3  but submit that Zuffa's production should be broader, as discussed more fully below.

4  **Plaintiffs' Proposal**

5          Plaintiffs' proposal contemplates an efficient two-phase discovery process that

6  balances Plaintiffs' legitimate discovery needs with Zuffa's discovery obligations.

7  Plaintiffs' proposal is intended to expedite the production of documents and information in

8  response to Plaintiffs' First Set of Requests for Production, which have been pending since

9  April 26, 2015, and necessary to prosecute Plaintiffs' claims in a cost-effective way that

10  minimizes the time and burden on Zuffa without imposing substantial delay and

11  uncertainty. Because the Court has scheduled a hearing on Zuffa's motion to dismiss for

12  today, September 25, 2015, and the process of developing and implementing a plan to

13  collect, search, review and produce ESI and custodial files is time consuming, Plaintiffs

14  believe that process should begin in earnest now and not after the Court has decided the

15  Motion to Dismiss. Plaintiffs submit that because of the amount of time that developing

16  and beginning to implement the process has and will continue to consume, it is unlikely

17  that Zuffa will incur substantial expense before the motion to dismiss is decided in any

18  event.

19          By way of background, Plaintiffs allege that Zuffa possesses illegal monopoly

20  power over the market for Elite MMA Events and illegal monopsony power over Elite

21  MMA Fighters

22          The *Le* Complaint alleges that Zuffa engaged in an anticompetitive scheme though

23  which it used anticompetitive conduct to establish and maintain its dominance in the

24  market for promoting live elite professional MMA events ("Elite MMA Events"). That

25  conduct included, among other things, (a) entering exclusive contracts with Elite MMA

26  Fighters that effectively blocked the vast majority from fighting for rivals, (b) using

27  threats, intimidation, and retaliation against MMA fighters who work with or for would-be

28  rivals or speak out against Zuffa, (c) acquiring rival promotion companies and relegating to

"minor leagues" those that it did not acquire, and (d) entering exclusive agreements with key sponsors and venues.

Plaintiffs also allege that by impairing the ability of its potential or actual rivals' access to necessary inputs (i.e., Elite MMA Fighters) and acquiring them, Zuffa foreclosed competition from actual or potential rival elite MMA promoters. As a result, Zuffa became the dominant, indeed only, promoter of Elite MMA Events. Zuffa's resulting monopoly power in turn gave the Zuffa monopsony power over Elite MMA Fighters because it was the dominant, if only, purchaser of their services. That monopsony power enabled Zuffa to impose certain exclusive contractual terms on Elite MMA Fighters, including relinquishing their identity rights.  Zuffa thereby impaired the ability of rival promoters to access certain inputs necessary to operate a successful MMA promotion company. Thus the scheme enabled Zuffa to injure MMA Fighters by artificially suppressing their compensation for bouts and their identity rights.

At the outset, Plaintiffs propose that Zuffa produce documents and information now in response to only 31 of Plaintiffs' 59 document requests in the first phase. (*i.e.*, Requests 11-17, 19-25, 27, 31, 33, 35, 37, 39, 40, 42, 43, 49, 50-52, 54-57) ("Phase 1").

With respect to the documents and information to be produced in response to the 31 Phase 1 Requests, Plaintiffs propose several ways in which many of the requests can be tailored to reduce the volume of documents and information to be produced and, therefore, the associated cost and burden.

During the meet and confer process Zuffa produced organizational charts responsive to Request No. 8. However, the organizational charts produced cover only the period beginning in January 2015, after the first complaint was filed in this action. Zuffa has informed Plaintiffs that it does not have reliable, finalized organizational charts before this period.  Therefore, Plaintiffs have proposed that Zuffa identify all custodians (with titles) who may have potentially relevant information and who were employed by it during the Relevant Period. Once Plaintiffs have the opportunity to review the requested custodial information, they can engage in an informed and meaningful negotiation to identify an

JOINT STATUS REPORT

agreed number of custodians whose documents and information should be searched for production. Once Zuffa's custodians are identified, Plaintiffs propose that Zuffa identify the volume and location of ESI associated with each custodian, which will help the parties make informed decisions about the scope and volume of potentially responsive documents and the best way, to the extent necessary, to make the production more efficient and cost-effective.

With respect to Requests 11-14, which seek information about Zuffa's revenues and costs including fighter compensation among other things, Plaintiffs propose to minimize the scope of responsive documents by foregoing the production of "check level" documents, based upon Plaintiffs' understanding of the nature of responsive information which Zuffa proposes to produce in response to these Requests. However, Plaintiffs understand that the parties have agreed that by doing so Plaintiffs' are not waiving their right to seek the production of check level documents or additional documents and information after Plaintiffs have had the opportunity to review and analyze Zuffa's proposed production in response to Requests 11-14.

Plaintiffs propose to limit the scope of Zuffa's response to Request 17, regarding negotiations and agreements between Zuffa and other MMA promoters, by limiting it to responsive documents and information regarding actual or potential acquisitions of actual or potential rival MMA promoters on or after January 2006, but not earlier. This time frame and scope of actual or potential acquisitions coincides with the allegations in the Complaint that Zuffa's scheme of anticompetitive acquisitions began in 2006, not with the Strikeforce acquisition in 2010. *See* Le Compl. at ¶ 129 ("Beginning at least as early as December 2006, the UFC embarked on a campaign to monopolize and monopsonize the Relevant Markets. As part of a deliberate plan to consolidate the MMA Industry and more broadly solidify its control over the Relevant Markets, the UFC began acquiring its competitors one by one.").

Plaintiffs also propose to substantially narrow the scope of Requests 50 and 52, regarding agreements with and content posted to websites and social media, by limiting the

production of responsive documents and information to only 15 of the 123 websites, social media and on-line accounts identified by Zuffa in response to Plaintiffs' interrogatories. However, the parties are continuing to meet and confer regarding the scope of the responsive on-line and social media accounts at issue. Therefore, Plaintiffs reserve the right to seek productions relating to additional accounts identified by Plaintiffs that are responsive to Requests 50 and 52. Plaintiffs also propose to exclude all responsive videos that include only footage of a bout. Plaintiffs believe that given Zuffa's vast library of bout videos and the traditional size of such files, eliminating such bout footage will substantially reduce the total ESI to be searched and produced.  Plaintiffs understand that all of the documents and information contained in the subset of materials that they propose Zuffa produce in response to these requests was made publicly available by Zuffa. Therefore, Plaintiffs believe that the production of these materials will not impose a substantial burden on Zuffa because it is not necessary to review the materials for privilege or legal protections and Plaintiffs are willing to forego a Zuffa's review for responsiveness. Zuffa's stated belief that at least some of the Plaintiffs and their counsel have monitored some of these sites does not relieve it of its obligations under the Federal Rules. Moreover, although materials that remain online can be collected by Plaintiffs, Plaintiffs believe that before Zuffa is excused from producing certain materials that are currently publicly available, the parties must reach appropriate agreements regarding the evidentiary nature and admissibility of such material. Zuffa's complaint regarding the purported high cost of collecting data from third party providers such as Twitter rings hollow because Zuffa has objected to Plaintiffs' subpoena to Twitter and has provided Plaintiffs with no information regarding the burden, if any, and associated costs of collecting this material.

Plaintiffs propose that Zuffa produce a listing of investigations, litigations, arbitrations and other disputes responsive to Requests 54, 55, and 56. By doing so, Plaintiffs believe that they can reduce the scope of responsive material by identifying a subset of relevant investigations and disputes for production in addition to the production

of documents that Zuffa provided to the FTC in response to its inquiry regarding Zuffa's acquisition of Strikeforce.

Plaintiffs have also proposed to narrow the Relevant Period which will necessarily reduce the total volume of documents and information to be searched. As noted, the complaint alleges that Zuffa's anticompetitive scheme began at least as early as 2006.

Plaintiffs' proposal also contemplates that the parties will meet and confer about additional ways in which the remaining requests can be narrowed. Throughout the meet and confer process, until now, Zuffa had proposed to defer the process of narrowing the scope of the requests regarding custodial documents to a second phase after the motion to dismiss is decided. However, the parties have had preliminary discussions about whether to use search terms to narrow the universe of responsive custodial documents, but have not yet exchanged proposed search terms. Plaintiffs believe that, in addition to ways in which the requests can be narrowed identified above, many of the remaining requests may be subject to further narrowing through the meet and confer process. However, Plaintiffs believe that deferring that aspect of the meet and confer process is inefficient and imposes unnecessary delay.

Plaintiffs propose to further reduce the volume of ESI and custodial documents by applying De-NISTing[1] and email threading. Plaintiffs also propose that the parties continue to meet and confer regarding the application of non-traditional review methods, such as predictive coding and technology assisted review, once Plaintiffs have what they believe is an adequate understanding of the identity and number of Zuffa's custodians with potentially relevant information, the types of systems and devices on which ESI is maintained or stored, and the volume.

In addition, Plaintiffs also agreed to substantially limit Zuffa's preservation obligations regarding relevant voicemail. Plaintiffs' proposal thus contemplates that Zuffa

---

[1] De-NISTing is the process of identifying and removing files that are system generated and generally accepted to have no substantive value in most instances.

JOINT STATUS REPORT

need not produce voicemail generated after its preservation obligation was eliminated by agreement of the parties.

Finally, of Plaintiffs' remaining 28 requests which Plaintiffs did not include in their Phase 1 proposal, Plaintiffs also propose that Zuffa need not produce any documents or information in response to six requests (26, 28, 32, 34, 36 and 38) if Zuffa provides complete answers to related interrogatories for an agreed upon Relevant Period. Plaintiffs propose that once substantial progress has been made on their Phase 1 proposal, Zuffa can begin production in response to the remainder of Plaintiffs' requests. However, in the interest of efficiency, Plaintiffs propose that the parties work to address the scope of all of both Phase 1 and Phase 1 requests at the outset.

Based on the parties' extensive meet and confers, Plaintiffs believe that, aside from certain areas such as financial information, the production of only non-custodial documents and information will not provide Plaintiffs with necessary discovery regarding many aspects of the alleged conduct that can only (or in some cases most efficiently), be obtained from Zuffa's custodial files. Such areas include the alleged use of threats, intimidation, and retaliation and the motivations, intentions and decision making process of Zuffa and its personnel when engaging in certain alleged conduct and practices such as proposed acquisitions and commercial relationships as well as its dealings with class members and third parties that are not memorialized in the terms of executed contracts.

Plaintiffs propose that all readily-available hardcopy documents and "centrally maintained" ESI in response to Plaintiffs' requests for files related to fighters, sponsors, and venues (Requests Nos. 16, 20-28, 35, 37 39, 40, 43) should be produced in Phase 1, especially if they are not part of what Zuffa has called its "custodial files". These documents are central to Plaintiffs' case. Plaintiffs fail to see any unique burden in producing all of these readily-accessible files in Phase 1. This is especially true because Zuffa has not specified what volume of materials is at issue. Zuffa has not informed Plaintiffs what volume of responsive information is contained in "centrally maintained" ESI relating to fighters, sponsors, or venues. Zuffa has also not informed Plaintiffs what volume of hardcopy files are available for fighters, sponsors, or venues. Zuffa's contention that the identification and production of an unspecified volume of

documents and information that go to the central allegations in the complaint is *per* se overly burdensome rings hollow. Plaintiffs cannot yet meaningfully evaluate Zuffa's proposal to produce only a subset of this information without additional information regarding the volume of materials at contained in Zuffa's "centrally maintained" ESI and the volume of hardcopy files available for fighters, sponsor, and venues. Plaintiffs propose to continue to meet and confer with Zuffa on these issues.

In addition to all readily-available hardcopy documents and "centrally maintained" ESI in response to Plaintiffs' requests for files related to fighters, sponsors, and venues as discussed above, Plaintiffs propose that at this time Zuffa produce hard copy documents in response to the remainder of Requests Nos. 16, 20-28, 35, 37 39, 40, 43. Plaintiffs understand that Zuffa has easily accessible hardcopy files related to Requests Nos. 16, 20-28, 35, 37 39, 40, 43. Although Plaintiffs can appreciate that full-blown ESI production can be costly, that is not what Plaintiffs propose. It is not unreasonable to require Zuffa to perform the privilege review necessary to produce the requested hard copy document at this time. Zuffa has not provided Plaintiffs with details on the volume of its hardcopy "custodial files," therefore, there is no basis to conclude that a privilege review will impose an unreasonable burden. This is especially true because the versions of the Protective Order proposed by both parties has a "clawback" provision that allows for production of documents without privilege review, should a party deem it too expensive. At this time, Plaintiffs are only aware that Zuffa's hard copy contract files likely include documents relating to hundreds of athletes, but Zuffa has not provided Plaintiffs with details regarding the actual volume.

Plaintiffs agree with Zuffa, in principal, that production of custodial ESI can wait until Phase 2, but as explained above, believe that more comprehensive engagement is required at this time to ensure that the parties are prepared for ESI discovery promptly if the Court sustains Plaintiffs' Complaint. Plaintiffs propose that the parties continue to meet and confer on selection of custodians and search terms.

JOINT STATUS REPORT

**Zuffa's Proposal**

Zuffa's proposal contemplates an efficient and cost-effective two-phase discovery process.  In Phase 1, Zuffa would provide Plaintiffs with a significant number of core documents responsive to their Requests for Production that can be obtained from centrally-maintained hard copy and ESI files or from targeted searches of certain custodial files.  This plan would provide Plaintiffs with substantial information related to the core allegations in their Complaints, while reserving the costly and time consuming process of collecting, processing, searching, and reviewing entire hard copy and electronic custodial files, including reviewing them for privilege, until the second phase of discovery, after the Court has decided the Motion to Dismiss.  In total, Zuffa's proposal would provide Plaintiffs in Phase 1 with relevant documents and information responsive to 30 of their 59 Requests for Production, including extensive financial data and the contracts that go the heart of Plaintiffs' case.

Zuffa's Phase 1 proposal includes, but is not limited to, the provision of the following categories of documents:

- **Organizational charts (RFP 8)**:  Zuffa has already produced to Plaintiffs copies of two organizational charts from 2015, as well as responding to interrogatories requesting similar information.  Zuffa does not currently have reliable, finalized versions of organizational charts prior to that date.  However, it has provided some additional information with regard to the periods various individuals held their respective positions, is gathering additional information on predecessors to the individuals currently holding pertinent positions and anticipates providing additional information next week.

- **Financial Documents (RFPs 11-14)**:  Zuffa has agreed to provide documents responsive to these requests in Phase 1, including detailed financial documents such as consolidated financial statements, event-by-event financial analyses, where available, showing gate receipts, Pay-Per-View revenues, and sponsorship and merchandise revenues and documents showing revenue from other sources that are not contained in the event-by event analyses.  Zuffa also proposed to provide financial data sufficient to show each athlete's event and non-event related compensation in Plaintiffs' requested format, where possible, on an event-by-event and fighter-by-fighter basis.

Zuffa believes that the information and documents it intends to collect and provide in Phase 1 in response to these requests will (to the extent that responsive documents exist in the normal course of business) essentially satisfy these requests, and that to the extent Plaintiffs determine that they require additional information, such discussions will be more productive after Plaintiffs review the Phase 1 production.

- **Fighter Contract Files (RFPs 16, 20-26, 39, 40, 43)**:  In Phase 1, Zuffa proposed to provide to Plaintiffs copies of the hard copy Fighter Files for the named Plaintiffs and an agreed-upon number of additional fighters selected by Plaintiffs.  These hard copy files contain not only the agreements entered into between Zuffa and the fighter but, where applicable, also correspondence related to the contracts, including negotiations, and correspondence regarding extensions and suspensions and related information that Plaintiffs can use to test their allegation that the contracts lock fighters up "in perpetuity."  These files, which include contracts and other information for, at minimum, hundreds of athletes, are extraordinarily voluminous and, given the communications regarding negotiations, contracts, and extensions, contain materials that may be privileged and will require close privilege review.  Moreover, because these files contain personally identifiable information ("PII"), such as Social Security numbers, the files will need to be redacted to protect the athletes' PII.  Given those considerations, which will require extensive review of the files prior to production, Zuffa has agreed to produce a representative subset of these files to Plaintiffs in Phase 1.  For these and the other files for which Zuffa has offered to provide representative samples, Zuffa has offered to discuss an appropriate sampling method with Plaintiffs.

- **Venue Contract Files (RFP 27, 28)**:  Zuffa has proposed to provide Plaintiffs with the contract files for an agreed-upon number of venues selected by the Plaintiffs.  These contract files contain not only the agreement between Zuffa and the venue but may also contain additional information related to the contract, such as correspondence.  Given the potential for privileged information in these files, which will require extensive review prior to production, Zuffa has proposed in Phase 1 to provide Plaintiffs with a representative sample of these files.

- **Sponsor Contract Files (RFP 37)**:  Zuffa has proposed in Phase 1 to provide Plaintiffs

with the contract files for an agreed-upon number of sponsors selected by Plaintiffs.  Like the venue files, these files may also contain additional information such as correspondence related to the agreement.  Given the potential for privileged information in these files, which will require extensive review prior to production, Zuffa has proposed in Phase 1 to provide Plaintiffs with a representative sample of these files.

- **Merchandise Contract Files (RFP 35)**:  Zuffa has proposed in Phase 1 to provide Plaintiffs with a representative sample of contract files for an agreed-upon number of third-party merchandisers selected by Plaintiffs.  These files are not limited to the agreements but may contain additional information related to the agreement, such as correspondence.  Given the potential for privileged information in these files, which will require extensive review prior to production, Zuffa has proposed in Phase 1 to provide Plaintiffs with a representative sample of these files.

- **List of Television Contracts (RFP 33)**:  In Phase 1, Zuffa will provide a list of contracts it has with television distribution outlets.  Zuffa will then meet and confer with Plaintiffs regarding a plan for which documents should be produced.

- **Third Party Analyst/Consultant Reports (RFP 15)**:  Zuffa has proposed to search for and produce third-party analyst or consultant reports responsive to this Request found in Zuffa's financial department.

- **FTC Strikeforce Documents (RFP 17, 31, 54)**:  Zuffa has proposed to produce in Phase 1 all documents produced to the Federal Trade Commission in response to the Commission's closed investigation of Zuffa's acquisition of the Strikeforce promotion, the only acquisition in the Complaints that arguably falls within the statute of limitations.

- **List of Litigations/Arbitrations (RFP 55-57)**:  Zuffa has proposed to initially provide Plaintiffs with a list of litigations and arbitrations with athletes and their representatives related to Zuffa's contracts, at which point the parties can meet and confer to refine the set of documents responsive to these Requests.

In addition, Zuffa's Responses to Plaintiffs' First Set of Interrogatories addressed several of Plaintiffs' other Requests.  (RFPs 32, 36, 38, 49, 52).

Zuffa's proposal serves the goal of moving discovery forward by providing Plaintiffs with information relevant to the core allegations in their Complaints, while limiting the prohibitive costs that would be incurred from collecting, processing, searching, and reviewing custodial documents, including but not limited to privilege review.  If the contracts were anticompetitive, as Plaintiffs allege, this discovery would give Plaintiffs more than enough basis to cure the defects in the existing Complaints.  Moreover, Zuffa's phasing proposal would eliminate the need to do duplicative searches and review of the same documents that would be required if Zuffa were to respond to a limited number of Plaintiffs' Requests, including searching and reviewing individual custodial documents, in Phase 1 and to respond to other Requests in Phase 2.  Saving the individualized searches of custodial files to all of Plaintiffs' Requests to Phase 2 saves this unnecessary and expensive effort.

Zuffa is moving forward promptly to collect, review and produce these documents, irrespective of the lack of agreement with the Plaintiffs on phasing.

In addition to its proposal for Phase 1 discovery, Zuffa has presented a proposal for Phase 2 discovery involving custodial searches of hard copy documents and ESI for designated custodians, as well as targeted searches for other documents.  Zuffa has proposed to Plaintiffs a list of nine custodians, broken down by topic, who Zuffa believes are most knowledgeable about the subject matter of Plaintiffs' Complaints.  These custodians comprise the three primary decision-makers at the company, the three other individuals primarily responsible for fighter relations, as well as the group leaders for agreements with sponsors, venues and merchandizers.  Zuffa has also agreed that it will produce available documents for any predecessors to those custodians back to 2010.  Zuffa believes that the overbreadth of many of the Plaintiffs' Requests can be addressed by limitations on custodians and an appropriate list of search terms.

To be clear, Zuffa believes that these custodial searches should not begin unless and until the Motion to Dismiss is denied, but intends to continue to meet and confer regarding the scope of custodial searches, search terms, other means of narrowing the overbroad requests, and other issues of discovery to attempt to reach an agreement on these parameters.

With regard to websites and social media accounts, Zuffa has provided Plaintiffs with a

list of websites and social media accounts.  Plaintiffs have requested collection and production

from a subset of these accounts, including UFC's main site, UFC.com.  The only limitation they

have offered on their request is that the actual bout footage need not be produced.  This would

leave massive amounts of other content to be collected, reviewed and produced, including but not

limited to every kind of promotional material, e.g., videos of pre- and post-fight interviews,

weigh-ins, other promotional events, commentary, news reports, outtakes, etc.  This is

unreasonably burdensome, especially since the responsive material was publicly available.  Zuffa

believes that at least some of the Plaintiffs and their counsel have been monitoring these sites for

years.  Moreover, the voluminous materials that remain online can be collected by Plaintiffs as

readily as by Zuffa.  While Plaintiffs state that the burden of production is low because publicly-

available materials do not require privilege review, the materials will still need to be reviewed for

responsiveness and the high cost of collecting and retrieving this publicly-available data,

including data from third party providers such as Twitter, is also burdensome and should not be

borne by Zuffa, particularly at this stage of the litigation.  Thus, Zuffa believes that further

meeting and conferring on this issue is necessary.

Plaintiffs state that "Plaintiffs understand that Zuffa has easily accessible hardcopy files

related to Requests Nos. 16, 20-28, 35, 37 39, 40, 43," and propose that all hard copy and

"centrally maintained" ESI responsive to these requests be produced immediately.   These

requests taken together essentially request all documents that constitute or relate in any way to

fighter contracts and compensation or to contracts with venues, sponsors, merchandizers or TV

outlets, e.g., RFP 20 calls for "All documents since 1993 to present discussing, evaluating,

analyzing actual or potential contract terms . . . ."  To be clear, Zuffa's proposal is to produce

responsive documents that are found in the selection of contract files to be agreed upon as

discussed above, subject to an appropriate time limitation.  Plaintiffs' proposal as articulated

would essentially require the collection, review (including for privilege) and production of (a)

every document in every hard copy contract file for every fighter, sponsor, venue, merchandiser,

or TV network with which Zuffa has or had a contract, (b) any other electronic document in

"centrally maintained" ESI that may exist, and (c) any hard copy document in the file of any of

Zuffa's hundreds of employees relating to these topics, which collectively comprise the vast majority of Zuffa's business.  This is untenable and demonstrates why some selection process is necessary.

Further, Plaintiffs' complaint that they have not received enough information to evaluate this burden is hollow; the requested documents comprise essentially every document in every contract for every counterparty in the broad categories discussed above, many of which are irrelevant.  Moreover, searching the company for every additional hard copy document that might contain a document related to these subjects just to provide a volume estimate would be itself an unnecessary and burdensome exercise because, inter alia, it is patently unreasonable to search and produce every document in the company on these broad topics in any event.  Finally, Zuffa rejected during the 26(f) conference the suggestion that Zuffa should turn over attorney-client privileged documents to its litigation adversaries (and in some cases business adversaries) if the protective order contains a clawback provision.  Zuffa's position remains unchanged on this issue.

### V.   Alternative Search Methods

The parties have met and conferred on alternative search methods and the parties have agreed in principle to email threading.[2]

The parties also had a joint discussion with a vendor specializing in another alternative search method – linguistic review.  Plaintiffs raised concerns regarding the reliability of the vendor's linguistic review methodologies and capabilities, but remain open to evaluating alternative linguistic review vendors.  Zuffa believes that such concerns can be addressed, but also believes that an appropriate agreement on custodians, search parameters, and search terms may obviate the need for alternative search methods.  At this point, the parties believe it would be most productive to focus on reaching agreement on custodians, search terms, and other search parameters, while remaining open to further discussion on the usefulness of predictive coding/TAR, if necessary.

---

[2] The parties agreed in the Proposed Stipulated ESI Agreement to allow de-duplication and de-NISTing to cull ESI.  Dkt. 160, ESI Stipulation at ¶ 6.

Dated: September 25, 2015                     Respectfully Submitted,

                                              BOIES, SCHILLER & FLEXNER LLP


                                              By: /s/ John F. Cove, Jr.
                                                    John F. Cove, Jr.
                                              *Attorneys for Defendant* Zuffa, LLC, d/b/a
                                              Ultimate Fighting Championship and UFC

                                              John F. Cove, Jr. (*Pro Hac Vice* granted)
                                              BOIES, SCHILLER & FLEXNER LLP
                                              1999 Harrison Street, Suite 900
                                              Oakland, CA 94612
                                              Tel: (510) 874-1000
                                              Fax: (510) 874-1460
                                              Email: jcove@bsfllp.com

                                              William A. Isaacson (*Pro Hac Vice* granted)
                                              BOIES, SCHILLER & FLEXNER LLP
                                              5301 Wisconsin Ave, NW
                                              Washington, DC 20015
                                              Tel: (202) 237-2727
                                              Fax: (202) 237-6131
                                              Email: wisaacson@bsfllp.com

                                              Donald J. Campbell #1216
                                              J. Colby Williams #5549
                                              CAMPBELL & WILLIAMS
                                              700 South 7th Street
                                              Las Vegas, Nevada 89101
                                              Tel: (702) 382-5222
                                              Fax: (702) 382-0540
                                              Email: djc@campbellandwilliams.com
                                                     jcw@campbellandwilliams.com

                                              Richard J. Pocker #3568
                                              BOIES, SCHILLER & FLEXNER LLP
                                              300 South Fourth Street, Suite 800
                                              Las Vegas, NV 89101
                                              Tel: (702) 382 7300
                                              Fax: (702) 382 2755
                                              Email: rpocker@bsfllp.com

                                              *Attorneys for Defendant* Zuffa, LLC, d/b/a Ultimate
                                              Fighting Championship and UFC

---

15

JOINT STATUS REPORT

1

2      Dated:  September 25, 2015                By:     /s/ Michael Dell'Angelo

3                                                       Michael Dell'Angelo

4                                              Eric L. Cramer
        Michael Dell'Angelo
        Patrick Madden

5      BERGER & MONTAGUE, P.C.
        1622 Locust Street

6      Philadelphia, PA 19103
        Telephone:  (215) 875-3000

7      Facsimile:   (215) 875-4604
        ecramer@bm.net

8      mdellangelo@bm.net
        pmadden@bm.net

9

10     Don Springmeyer (Nevada Bar No. 1021)
        Bradley S. Schrager (Nevada Bar No. 10217)

11     Justin C. Jones (Nevada Bar No. 8519)
        WOLF, RIFKIN, SHAPIRO, SCHULMAN &

12     RABKIN, LLP
        3556 E. Russell Road, Second Floor

13     Las Vegas, Nevada 89120
        (702) 341-5200/Fax: (702) 341-5300

14     dspringmeyer@wrslawyers.com
        bschrager@wrslawyers.com

15     jjones@wrslawyers.com

16     JOSEPH SAVERI LAW FIRM, INC.
        Joseph R. Saveri

17     Joshua P. Davis
        Matthew S. Weiler

18     Kevin E. Rayhill
        JOSEPH SAVERI LAW FIRM, INC.

19     505 Montgomery Street, Suite 625
        San Francisco, California 94111

20     Telephone:     (415) 500-6800
        Facsimile:      (415) 395-9940

21     jsaveri@saverilawfirm.com
        jdavis@saverilawfirm.com

22     mweiler@saverilawfirm.com
        krayhill@saverilawfirm.com

23

24

25

26

27

28

16

JOINT STATUS REPORT

Robert C. Maysey
Jerome K. Elwell
WARNER ANGLE HALLAM JACKSON &
FORMANEK PLC
2555 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Telephone: (602) 264-7101
Facsimile:  (602) 234-0419
rmaysey@warnerangle.com
jelwell@warnerangle.com


Benjamin D. Brown
Richard A. Koffman
Hiba Hafiz
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., N.W., Suite 500, East Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile:   (202) 408 4699
bbrown@cohenmilstein.com
hhafiz@cohenmilstein.com


Eugene A. Spector
Jeffrey J. Corrigan
Jay S. Cohen
William G. Caldes
SPECTOR ROSEMAN KODROFF & WILLIS,
P.C.
1818 Market Street – Suite 2500
Philadelphia, PA  19103
Telephone:  (215) 496-0300
Facsimile:   (215) 496-6611
espector@srkw-law.com
jcorrigan@srkw-law.com
jcohen@srkw-law.com
bcaldes@srkw-law.com


Frederick S. Schwartz
LAW OFFICE OF FREDERICK S. SCHWARTZ
15303 Ventura Boulevard, #1040
Sherman Oaks, CA 91403
Telephone:  (818) 986-2407
Facsimile:    (818) 995-4124
fred@fredschwartzlaw.com

*Attorneys for Individual and Representative
Plaintiffs Cung Le, Nathan Quarry and Jon Fitch,
Luis Javier Vazquez, Dennis Lloyd Hallman,
Brandon Vera, Pablo Garza, Gabe Ruediger, Mac
Danzig, Kyle Kingsbury and Darren Uyenoyama*

17

## **ATTESTATION OF FILER**

The signatories to this document are myself and Michael Dell'Angelo and I have obtained Mr. Dell'Angelo's concurrence to file this document on his behalf.

Dated:  September 25, 2015

BOIES, SCHILLER & FLEXNER LLP

By:     /s/ John F. Cove, Jr.
John F. Cove, Jr. (*Pro Hac Vice*)
1999 Harrison Street, Suite 900
Oakland, CA 94612
Tel: (510) 874-1000
Fax: (510) 874-1460
Email: jcove@bsfllp.com

18

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that service of the foregoing **Joint Status Report** was served on September 25, 2015 via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

<u>   /s/ Suzanne E. Jaffe           </u>

An employee of Boies, Schiller & Flexner, LLP

19