WILLIAM A. ISAACSON (Admitted *Pro Hac Vice*)
(wisaacson@bsfllp.com)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave, NW, Washington, DC 20015
Telephone: (202) 237-2727; Fax: (202) 237-6131

JOHN F. COVE, JR (Admitted *Pro Hac Vice*)
(jcove@bsfllp.com)
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900, Oakland, CA 94612
Telephone: (510) 874-1000; Fax: (510) 874-1460

RICHARD J. POCKER #3568
(rpocker@bsfllp.com)
BOIES, SCHILLER & FLEXNER LLP
300 South Fourth Street, Suite 800, Las Vegas, NV 89101
Telephone: (702) 382 7300; Fax: (702) 382 2755

DONALD J. CAMPBELL #1216
(djc@campbellandwilliams.com)
J. COLBY WILLIAMS #5549
(jcw@campbellandwilliams.com)
CAMPBELL & WILLIAMS
700 South 7th Street, Las Vegas, Nevada 89101
Telephone: (702) 382-5222; Fax: (702) 382-0540

*Attorneys for Defendant* Zuffa, LLC, d/b/a
Ultimate Fighting Championship and UFC

*Additional counsel on signature page*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Cung Le, Nathan Quarry, Jon Fitch, on behalf of themselves and all others similarly situated, | Lead Case No.: 2:15-cv-01045-RFB-(PAL) |
| Plaintiffs, <br> v. | Member Case Nos.: <br> 2:15-cv-01046-RFB-(PAL) <br> 2:15-cv-01055-RFB-(PAL) |
| Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC, | 2:15-cv-01056-RFB-(PAL) <br> 2:15-cv-01057-RFB-(PAL) |
| Defendant. | **JOINT STATUS REPORT** |
| And Related Consolidated Cases | |

The parties in the above-captioned matters have met and conferred and submit the following Joint Status Report.

**I.        Outstanding Motions and Proposed Stipulations (Joint Statement)**

There are no currently outstanding motions or proposed stipulations.

**II.       Discovery Progress**

Since the last Joint Status Report (ECF 199), the parties have made the following progress in discovery.

**A.   Discovery Sought From Plaintiffs (Joint Statement)**

The parties have exchanged correspondence regarding Zuffa's First Set of Requests for Production and have met and conferred regarding Plaintiffs' objections and responses. The parties have scheduled an additional meet and confer discussion for December 9. Because the meet and confer process has just begun, no date has been established for the commencement of Plaintiffs' production.  The parties do not require any action from the Court at this time.

**B.   Discovery Sought From Defendant (Defendant's Statement)**

On November 23, Zuffa made an additional document production of 414 documents consisting of documents from the named Plaintiffs' fighter files, as well as additional financial documents and ESI that contained personally-identifiable information ("PII") and had previously been withheld until an agreement regarding the production of documents containing PII was reached.  To facilitate any future redaction of PII in the event such documents are introduced to the Court, Zuffa provided Plaintiffs with a metadata field indicating which documents likely contained PII.

Zuffa is continuing to collect, process and review documents and will continue to make rolling productions of documents responsive to Plaintiffs' requests.

Zuffa has also sent contractually-required notices to approximately 60 third parties with whom it has contractual relationships, informing them that documents that contain their confidential information will be produced in discovery.  As Zuffa works through the document collection and review process, it anticipates sending many more such notices.

1

### C.  Third-Party Discovery (Joint Statement)

Since the last status conference, Plaintiffs have provided Defendant with notice that Plaintiffs are serving 27 additional subpoenas over and above the 15 Plaintiffs had previously served. Plaintiffs anticipate serving up to 100 additional subpoenas in the coming weeks.

On November 23 and December 3, Zuffa served third party subpoenas on 12 third parties previously served with subpoenas by Plaintiffs.

### III.    Current Discovery Disputes (Joint Statement)

The parties have met and conferred on a wide range of issues. With respect to certain issues, the parties are at an impasse. Specifically, the parties are at an impasse regarding:

1)    the identification of Zuffa's custodians;

2)    limitations Zuffa seeks to impose on the search of relevant documents from certain custodians who held positions in Zuffa's legal department;

3)    whether Zuffa has to search for and produce documents relating to members of the proposed "Identity Class" [1] who are not also members of the proposed "Bout Class"[2] ;

4)    the total number of interrogatories that each party may serve;

5)    whether depositions should be calculated by total hours or the number of

---

[1] The Identity Class is defined as follows:

> Each and every UFC Fighter whose Identity was expropriated or exploited by the UFC, including in UFC Licensed Merchandise and/or UFC Promotional Materials, during the Class Period in the United States.

*Le* Comp., ¶ 47.

[2] The Bout Class is defined as follows:

> All persons who competed in one or more live professional UFC-promoted MMA bouts taking place or broadcast in the United States during the Class Period. The Bout Class excludes all persons who are not residents or citizens of the United States unless the UFC paid such persons for competing in a bout fought in the United States.

*Le* Comp., ¶ 39.

2

depositions and the proposed limits; and

6)      whether, in addition to adopting the parties' joint proposed case schedule, the
Court should also set deadlines for summary judgment motion briefing schedule,
pretrial conference and trial (as Plaintiffs' request).

**A.   Identifying Custodians**

**1.   Plaintiffs' Position (Plaintiffs' Statement)**

Plaintiffs request that the Court find Defendant's undue burden objections without merit
and require Defendant to search for and produce all responsive documents and information from
all the agreed custodians, plus all of the additional 28 potential custodians, as discussed below,
and, subject to the Court's determination, any additional custodians who are later determined to
be appropriate based on the ongoing discovery process.

On November 20, 2015, Zuffa provided information to Plaintiffs concerning additional
potential custodians in response to the Court's November 17, 2015, Order. Zuffa's November 20,
2015, letter provided some useful information regarding the custodians. However, Zuffa did not
identify the predecessor or successor holders of custodian job titles and duties, nor did Zuffa
specify the custodians' devices (and personal email accounts used for business purposes)
currently in Defendant's possession, custody or control.

The parties had made little additional progress on custodians between the November 17,
2015, Status and Dispute Resolution Conference and December 4, 2015, when, at 2:41 a.m.
Eastern, Zuffa sent Plaintiffs a 15 page single spaced letter containing additional information
regarding the custodians under consideration.[3] (December 4, 2015, letter from John Cove to

_____

[3] Based on the information available to Plaintiffs prior to December 4, 2015, as to many
custodians, it was difficult (if not impossible) to identify each person who performed a relevant
job function or held a relevant position during the relevant discovery period. Thus, because
Plaintiffs simply did not know who held certain positions or performed certain duties during the
relevant time period and did not have an understanding of the potential universe of what, if any
ESI and documents existed for many of the potential custodians, selecting a final list of custodians was an
unnecessarily unreliable process in this case.

3

JOINT STATUS REPORT

Michael Dell'Angleo.)[4]

Although Zuffa has not supplied all of the information requested, Plaintiffs believe that we now possess adequate information to identify those custodians' files that should be searched. Plaintiffs have consistently pointed out that there is no intrinsic relevance to the number of custodians when properly managing e-discovery. Of course, the correct custodians should be chosen, given the nature of the case, the location of discoverable information, and other case-specific facts. Here, Plaintiffs have attempted to identify a set of custodians who have responsive ESI and documents concerning the facts pleaded in the operative complaint, covering the entire relevant time period[5], and have asked Zuffa to confirm that such documents have not been destroyed.[6]

Prior to November 17, Zuffa had refused to provide much of the information Plaintiffs had requested and deemed necessary to make informed decisions that would result in long-term efficiencies for both parties. However, receiving the requested information, which as of December 4 Plaintiffs appear now to have, was a prerequisite to selecting custodians and to assessing Zuffa's objection that searching for and producing such material would constitute an *undue* burden. Plaintiffs could not reliably make these determinations sooner because Zuffa obfuscated with respect to the custodians. Specifically, Zuffa did not affirmatively disclose it

---

[4] Zuffa complains that Plaintiffs first made a specific request for the 28 custodians to which the parties had not previously agreed, until December 4, 2015 at 2:17 p.m. Pacific. However, the parties' discussion of custodians began in September, Plaintiffs identified virtually every one of the 28 custodians to Zuffa as of November 6, 2016, identified all but one in the parties' November 17, 2015, joint Status Report (Dkt. 199), and last received Zuffa's supplemental information regarding many of the custodians at 2:41 a.m. on December 4, 2015. To assuage Zuffa's concerns and in an attempt to continue to narrow the issues, Plaintiffs are prepared to continue to meet and confer with Zuffa regarding the 28 custodians in advance of the December 8, 2015, Status and Joint Resolution Conference.

[5] The Court has already ruled that the Relevant Time Period extends back to January 1, 2005. and with respect to some requests Zuffa has agreed to extend the period back even further into the past.

[6] Before formally requesting discovery of custodians, Plaintiffs attempted to assess whether discovery from the limited universe of custodians identified to date was necessary, and duly considered the relative burden. To do so, Plaintiffs sought information regarding the duties of the custodians, the identity of their predecessors and successors, the volume of ESI and documents available for each and information about their devices in Zuffa's possession, custody, or control.

lacked ESI for any potential custodians. After Plaintiffs had agreed to 16 custodians,[7] Zuffa disclosed there were no emails or other ESI in custodian-specific folders for three of them.[8] Similarly, Plaintiffs learned that of the 32 additional potential custodians Plaintiffs had identified,[9] Zuffa does not even have emails on its server or custodian specific folders on its network drive for 10 of them.[10] Despite these disclosures about these custodians, Zuffa nevertheless insists that the 16 "agreed" custodians plus two more of Plaintiffs' choosing are sufficient. The information that Zuffa has now provided suggests that Zuffa possesses little or no ESI for many of these addition "custodians." Nor has Zuffa identified hardcopy files for these custodians for whom little or no ESI exists.

The information that Zuffa has now provided, if accurate, reveals that Zuffa possesses little or no ESI for many of the proposed custodians and that it has not yet identified hardcopy files for any of them. Indeed, as Zuffa states below, "pursuant to Zuffa's established document retention policy, email boxes, computers, and personal folders on the shared drives were generally not maintained when an employee left the company unless that employee was subject to a preservation notice that temporarily suspended the destruction of documents that would otherwise be destroyed under the policy, such as the litigation holds issued beginning on December 18, 2014 in this case."

Based solely on the information that Zuffa has provided regarding alleged burden, there is no reason to exclude any of the 48 persons whom Plaintiffs have identified as potential custodians. However, Plaintiffs have been able to reduce the number of proposed custodians to 44

---

[7] Tracey Bleczinski, Peter Dropick, I. Lawrence Epstein, Lorenzo Fertitta, Reed Harris, Kirk Hendrick, Bryan Johnston, Tracy (Hyman) Long, Sonja McKinney, Michael Mersch, Michael Mossholder, John Mulkey, Michael Pine, Sean Shelby, Joe Silva, and Dana White.

[8] Bryan Johnston, Sonja McKinney, and Michael Pine.

[9] Scott Adams, Akpom Akosa, Tim Bellamy, Nakisa Bidarian, Craig Borsari, Scott Coker, Gary Cook, Chari Cuthbert, Tom D'Urso, Anthony Evans, Jim Frevola, Don Gold, Ryan Grab, Jason Haddon, Doug Hartling, Greg Hendrick, Melissa Henricks, Richard Hollis, Chad Hurley, Randy Klein, Aimee Levine, Elizabeth Locheur, Donna Marcolini, Jaime Pollack, Jackie Poriadjian, Marc Ratner, David Shaw, David Sholler, William Sorenson, Jen Wenk, Tom Wright, and Marshall Zelaznik.

[10] Scott Adams, Scott Coker, Chari Cuthbert, Tom D'Urso, Jim Frevola, Greg Hendrick, Richard Hollis, Randy Klein, Elizabeth Locheur, and Jen Wenk.

JOINT STATUS REPORT

(with further limitations as to some), based on an analysis of the substantive information Zuffa provided as late as December 4, regarding successors and predecessors as well as job titles and duties. Plaintiffs propose that the files of 44 custodians be searched.[11] This figure includes the 13 custodians as to whom Zuffa has indicated it does not have any documents on its E-mail Server or any documents in custodian-specific folders on Defendant's Network Drive (and thus represent no demonstrated burden to include), and 5 other custodians for whom Plaintiffs propose to limit the relevant time period as set forth more fully below.

The parties have agreed on the identity of 16 custodians, 3 of whom, Defendant has indicated do not have any documents on its E-mail Server, any documents in custodian-specific folders on Defendant's Network Drive, or any retained devices.[12] Plaintiffs propose including all 16 as custodians in this matter.

In addition to these 16 "agreed custodians," the parties have met and conferred regarding 32 additional custodians (the "potential custodians"). Zuffa stated it does not have any documents on its E-mail Server or any documents in custodian-specific folders on Defendant's Network Drive for 10 potential custodians. Thus, with respect to many of the custodians whom Plaintiffs propose to include the burden will be minimal, if any, and likely limited to any hardcopy files, custodian-specific network documents, and shared network drives, to the extent Zuffa determines that any exist for the custodians.

In consideration of the information provided by Defendant on November 20, 2015 and December 4, 2015, Plaintiffs further proposed to exclude Jaime Pollack (the custodian with the

---

[11] Scott Adams, Akpom Akosa, Tim Bellamy, Nakisa Bidarian, Tracey Bleczinski, Craig Borsari, Scott Coker, Chari Cuthbert, Tom D'Urso, Peter Dropick, I. Lawrence Epstein, Anthony Evans, Lorenzo Fertitta, Jim Frevola, Don Gold, Ryan Grab, Jason Haddon, Reed Harris, Doug Hartling, Greg Hendrick, Kirk Hendrick, Melissa Henricks, Richard Hollis, Chad Hurley, Bryan Johnston, Randy Klein, Aimee Levine, Elizabeth Locheur, Tracy (Hyman) Long, Donna Marcolini, Sonja McKinney, Michael Mersch, Michael Mossholder, John Mulkey, Michael Pine, Jackie Poriadjian, Marc Ratner, David Shaw, Sean Shelby, David Sholler, Joe Silva, Jen Wenk, Dana White, and Marshall Zelaznik

[12] Without identifying any discoverable material, there is no burden associated with including these three individuals as custodians. However, to the extent Defendant uncovers any hardcopy documents or other relevant, responsive documents of these custodians, such documents should be produced.

highest volume of ESI on Defendant's servers), Gary Cook, Tom Wright and William Sorensen in full.[13] In addition, based on the positions and duties described by Defendant, Plaintiffs propose to limit the custodial search and production for 5 additional potential custodians by excluding documents created during the time their job duties involved only international aspects of Defendant's business, or in one case, a Zuffa business line that is not at issue in this case as currently framed by Plaintiffs. Specifically, Plaintiffs propose to limit the custodial search and production of Anthony Evans, Don Gold, Jackie Poriadjian, David Shaw, and Marshall Zelaznik as follows:

- **Anthony Evans**: Plaintiffs propose to exclude documents and ESI created during his time period as a Senior Communications Manager in Zuffa's United Kingdom Office (from 2007-2011);

- **Don Gold**: Plaintiffs propose to exclude documents and ESI created during his time period as the Chief Revenue Officer for UFC FIT (2013-2015);

- **Jackie Poriadjian**: Plaintiffs propose to exclude documents and ESI created during her time as Vice President and Managing Director, Europe, Middle East and Africa (2011-2012) and her time as Vice President, Business Development and Operations and Managing Director of International Distribution in the London Office (2007-2011);

- **David Shaw**: Plaintiffs propose to exclude documents and ESI created during his time as Senior Director (and Director), Business & Sport Development, Canada (2010-2013);

- **Marshall Zelaznik**: Plaintiffs propose to exclude documents and ESI created during his time as President of the United Kingdom Division (2006-2010).

---

[13] For each of these four potential custodians, Defendant has identified their duties as limited to Defendant's international operations. The reduced burden associated with excluding these custodians is significant. Defendant identified Mr. Pollack as having 326,358 email files and 8,002 files on its Network Drive. Mr. Pollack is thus the custodian with the highest volume of potentially discoverable ESI (nearly double the next highest individual), but due to the description of his duties provided by Defendant, Plaintiffs have agreed to exclude him from the custodians in this matter. Defendant identified Mr. Cook as possessing 43,545 email files (the 18th highest of the 48 potential custodians) and Mr. Sorensen was identified as possessing 8,761 files. Defendant has not identified the volume of ESI held for Mr. Wright but he is a current employee who has been with Zuffa since 2010.

JOINT STATUS REPORT

Importantly, Mr. Gold, Ms. Poriadjian and Mr. Zelaznik represent three of the nine highest volumes of documents on Zuffa's email servers among the potential custodians. By excluding substantial time periods of their employment from search, review and production, Plaintiffs' proposal reduces the burden of including these custodians in significant ways.[14]

Plaintiffs request that the Court reject Defendant's undue burden objections and require Defendant to search for and produce all responsive documents and information from all the agreed custodians, plus all of the additional 28 potential custodians as set forth above and, subject to the Court's determination, any additional custodians who are later determined to be appropriate based on the ongoing discovery process.

### 2.  Zuffa's Position (Zuffa's Statement)[15]

Since the November 17, 2015, Status and Dispute Resolution Conference, Zuffa has provided the following information in response to Plaintiffs' requests in an effort to move forward toward a resolution regarding custodians:

• Job titles and a brief description of their responsibilities for current and past positions for 31 additional employees and former employees (November 20, 2015 letter);

• Job tenure (by year) for current and past positions for 31 additional employees and former employees (*Id.*);

• The employment status of 16 current employees and departure dates for 15 former employees (*Id.*);

• The volume of the 31 additional employees and former employees' documents that Zuffa maintains on its e-mail server as of November 18, 2015 (*Id.*);

---

[14] Notwithstanding Plaintiffs' repeated requests for the information, Zuffa has not provided the ESI volume for various time periods. Thus, Plaintiffs are unable to quantify the precise burden eliminated by this proposal.

[15] On December 4 at 2:17 p.m. PT, the day this Report was due, Plaintiffs provided for the first time their specific demand for a total of 44 custodians (see n. 10 above), 32 beyond the original 16 the parties had agreed to along with approximately 4 pages of new material discussing this issue. Zuffa does not have time to respond to this new material and still meet the Court's deadline for this Joint Status Report. Zuffa will be prepared to discuss this further at the Status Conference.

JOINT STATUS REPORT

- The number of documents stored in custodian-specific folders on Zuffa's network drives for the 31 additional employees and former employees, to the extent such individuals save documents using that storage method (*Id.*);

- In response to Plaintiffs' Friday November 27 letter, additional details regarding the roles, predecessors, and successors to 22 employees and former employees (December 3, 2015 Letter);

- A list of the computers retained and used by the 16 agreed-upon custodians (*Id.*);

- A list of the specific cell phones, smartphones, or tablets retained and used for business purposes by the 16 agreed-upon custodians (*Id.*);[16]

- An initial estimate of the volume of materials on 8 of the agreed-upon custodian's hard drives (*Id.*)[17]; and

- Details regarding a new potential custodian (Tom Wright), as requested by Plaintiffs in their November 27 letter (*Id.*).

Zuffa is continuing to research Plaintiffs' remaining requests and will provide additional information as it is obtained; however, each question takes time to answer. Zuffa believes further requests for information are not necessary for a decision to be made on custodians given the substantial information that Zuffa has provided to Plaintiffs to date.

Over the past three months, Zuffa has diligently worked to respond to Plaintiffs' many requests for information and provide Plaintiffs with a significant amount of information and data to assist them in their analysis of potential custodians. In addition to the above, Zuffa previously provided Plaintiffs with the below information in response to Plaintiffs' previous requests for information regarding custodians:

- Final and draft organizational charts for the period 2008 through 2015 (September 4, September 29, and October 12);

---

[16] This list reflected the devices that were previously preserved or collected from the custodians. Some of these employees have since upgraded their devices, so additional data will be provided when the vendor updates the collection, starting the week of December 7.

[17] Zuffa anticipates providing these volume estimates for the balance of the agreed upon custodians the week of December 7.

JOINT STATUS REPORT

- The overall volume of ESI (over 3 petabytes) maintained by Zuffa (September 15);

- A proposed list of 9 custodians that Zuffa believed, based on its knowledge of its business, would reasonably provide Plaintiffs with responsive documents relevant to the issues on the case from the key executives, decision-makers, and department heads in the company (September 8);

- Copies of Zuffa's document retention and destruction policies since 2008 (September 15);

- The tenure of, and predecessors to, each of the proposed 9 custodians (September 28);

- Preliminary e-mail volumes for the 9 proposed custodians to help facilitate a discussion of custodial ESI searches (September 28);

- An offer to research information regarding employees' positions prior to 2008 (the date of the earliest organizational chart in Zuffa's records) (October 12);

- Information regarding 12 additional custodians proposed by Plaintiffs, and an offer to increase the number of agreed custodians to 16 (October 28);

- Preliminary e-mail volumes and document volumes in personal folders on shared drives for the 5 Legal Department custodians (November 10);

- A list of all employees and former employees, and their current or last known titles, subject to a litigation hold in these cases, as of November 12, 2015;

- Collected e-mail volumes for 12 agreed custodians and the approximate time span of those e-mails (November 12); and

- Document volumes in personal folders on shared drives for the agreed custodians who utilize such drives (November 12).

In light of the extensive information Zuffa has provided to Plaintiffs over a three-month period, Zuffa believes Plaintiff have more than sufficient information to complete the custodian negotiation process. Additional minutiae regarding predecessors, devices, and ESI volume estimates for the 48 employees and former employees extensively discussed to date will not

JOINT STATUS REPORT

further the process, and additional "discovery about discovery" will only serve to delay the actual discovery of information through the review and production of documents and depositions.

This is especially true in that, pursuant to Zuffa's established document retention policy, email boxes, computers, and personal folders on the shared drives were generally not maintained when an employee left the company unless that employee was subject to a preservation notice that temporarily suspended the destruction of documents that would otherwise be destroyed under the policy, such as the litigation holds issued beginning on December 18, 2014 in this case.  To the extent that these former employees negotiated contracts with fighters, sponsors, venues and merchandisers, these contracts will be produced for the time frame set out in the Court's prior ruling, as will responsive documents relating to these contracts that were maintained in the contract files.   Additional information about former employees or lower level current employees beyond the extensive information already provided is not going to advance the ball further, nor will additional interim volume information that will inevitably be superseded once the agreed upon custodians' data  are loaded on a platform, processed and analyzed.

Zuffa has offered to allow the Plaintiffs to choose two additional custodians in addition to the 16 already agreed upon. This is a reasonable offer.  It is time for Plaintiffs to fish or cut bait so that Zuffa can focus on actually providing the discovery it is obligated to provide.

**B. Defendant's Proposal to Limit the Custodial Search and Production for Certain Custodians in the Legal Department**

**1. Plaintiffs' Position (Plaintiffs' Statement)**

With respect to potential custodians who performed some legal work, Zuffa refuses to search for concededly relevant documents based on a blanket peremptory assertion of the attorney-client privilege or the work product doctrine. Zuffa has proposed to limit the collection, search and review of potentially responsive documents to four custodians, Tim Bellamy, Kirk Hendrick, Michael Mersch and Tracy Long.[18] It appears that each at some point performed legal

---

[18] Initially, Zuffa also asserted the same objection as to Ike Lawrence Epstein, a former General Counsel and current COO and Sonja McKinney, a former paralegal. However, following Zuffa's disclosure that Defendant's email server did not contain any "email documents" for either Epstein

JOINT STATUS REPORT

functions ("Legal Custodians"). Zuffa agrees to search and produce external communications with persons or entities outside Zuffa (not including outside counsel working for Zuffa). Zuffa refuses to search and produce internal communications. Because each of these custodians performed significant, highly relevant non-legal functions in addition to their legal functions. Zuffa should be required to search and review all communications, including purely internal communications, for each of the Legal Custodians. Documents withheld on privilege or work product grounds should be logged consistent with standard practice.

With respect to Bellamy, Mersch and Long, the blanket assertion of privilege or work product protection is not appropriate because each held non-lawyer positions *concurrently* with their positions in the legal department. Mersch was Senior Vice President of Athlete Relations concurrently with his role as an assistant general counsel.[19] Long was the Executive Assistant to the Chief Operating Officer, Lawrence Epstein and a Director of Athlete Relations concurrently with her position as a paralegal in the legal department. Defendant does not dispute that Ms. Long and Mr. Mersch performed non-legal duties. Instead, Defendant argues that their dual role in Zuffa's in-house legal department somehow exempts Defendant from having to review and produce relevant, responsive material from these custodians. No authority supports this position. Additionally, according to Zuffa, Bellamy[20] was responsible for "some negotiation and handling of contract terms, other than fighter contracts" from 2010-present. (November 20, 2015, letter from John Cove to Michael Dell'Angelo, at p. 1.) Additionally, in Zuffa's answer to Plaintiffs' Interrogatory No. 6, identified  Mr. Bellamy as an individual "primarily responsible for

nor McKinney during their tenure in the legal department, Defendant withdrew the objection as to those custodians.

[19] Mr. Mersch was quoted in press coverage of the economic impact the UFC's events had. See http://www.wtoc.com/story/27619081/ufc-eventin-phoenix-brings-5-to-area.

[20] Following the receipt of Zuffa's correspondence at 2:41 a.m. Eastern on December 4, 2015, with additional information regarding custodians, Plaintiffs included Mr. Bellamy among the custodians for whom they seek production. Plaintiffs first identified Mr. Bellamy to Zuffa as a potential custodian on November 6, 2015. (November 6, 2015, letter from Michael Dell'Angleo to John Cove, at p. 5.) Mr. Bellamy was identified in the parties' November 17, 2015, Status Report.  (Dkt. 199, at p. 40.) However, Zuffa's draft Status Report at 3:54 pm Pacific is the first time that Zuffa identified Mr. Bellamy as a contested custodian on the basis of privilege.

negotiating or approving agreements" relating to venues and broadcasters. This function, like Mr. Hendrick's, is substantially non-legal and warrants inclusion of Mr. Bellamy as a custodian.

Defendant's proposed blanket application of the privilege to internal communications would unnecessarily exclude internal emails exchanged between Mr. Mersch and Ms. Long and other Zuffa employees in their respective capacities as Senior Vice President of Athlete Relations, Executive Assistant to the Chief Operating Officer, and a Director of Athlete Relations. In these roles, Mr. Mersch and Ms. Long were among those responsible for (and privy to communications concerning) the negotiation of fighter contracts. Thus, Mr. Mersch and Ms. Long are likely to possess relevant, responsive, and non-privileged documents and ESI concerning the business purposes behind the negotiation of fighter contracts that would be excluded by Defendant's improper assertion of a blanket privilege over all their internal documents and communications. Therefore, the ordinary procedures regarding assertion of privilege or the work product doctrine should apply: a search for relevant documents and logging of any withheld. "A party claiming the attorney-client privilege must identify specific communications and the grounds supporting the privilege as to each piece of evidence over which privilege is asserted. Blanket assertions of attorney-client privilege are extremely disfavored." *Elan Microelectronics Corp. v. Pixcir Microelectronics Co.*, 2013 U.S. Dist. LEXIS 114788, at *11-12 (D. Nev. Aug. 13, 2013) (internal quotations omitted).

Similarly, Kirk Hendrick served also served as a lawyer for only a part of the relevant period. At various times, Hendrick held the titles of Chief Operating Officer (2003-2012), General Counsel (2003-2007) and Chief Legal Officer (2013-present). Thus, there was a significant period of time during the relevant time period when Hendrick's job was as a top business executive of Zuffa, a non-legal role which likely continued even when he was given the title of Chief Legal Officer. As such, Hendrick possessed relevant discoverable information. The fact that he was a lawyer does not immunize such information from discovery. Likewise, it is logical to assume—and there is no contention to the contrary—that Hendrick continued to participate in business functions when his title changed. It is hornbook law that documents are "not entitled to protection by the [attorney client] privilege simply because in house counsel were

involved in the transactions." *Diagnostics Sys. Corp. v. Symantec Corp.*, 2008 U.S. Dist. LEXIS 123915, *31, 2008 WL 9396387 (C.D. Cal. Aug. 12, 2008). "[A] party attempting to demonstrate that an internal communication involving in-house counsel deserves privileged status must make a clear showing that the speaker made the communication for the purpose of obtaining or providing legal advice." *Oracle Am., Inc. v. Google Inc.*, 2011 U.S. Dist. LEXIS 121446, at *23, (N.D. Cal. Oct. 20, 2011). Therefore, there is no basis to exclude discoverable information from discovery as a rule. Any protected information should be logged. A party seeking to withhold discovery based on the burden of producing it must "present specific information — generally supported by an affidavit or declaration — demonstrating that the information is not reasonably accessible because of undue burden or cost." *Tyler v. City of San Diego*, 2015 U.S. Dist. LEXIS 56309, *4 (S.D. Cal. Apr. 29, 2015).

Zuffa provides no proper basis for its blanket assertion of privilege. Rather, it has simply provided Plaintiffs with counts of emails for Mersch (114,743), Long (121,171) and Hendrick (177,034), without even attempting to describe what (if any) of these messages related to legal services. First, the email counts say nothing about the fact that Mersch and Long—as indicated by their job titles—performed non-lawyer functions and therefore likely possess substantial quantities of non-protected ESI. Likewise, the email counts say nothing about the fact that Hendrick—even though he is a licensed lawyer—was not serving as a lawyer when he served as COO. And they say nothing about the fact that the non-lawyer functions likely continued after he received the Chief Legal Officer title. Moreover the "email document" counts are misleading as a measure of burden. The counts reflect the total number of documents in the custodian's email box, including email *and* attachments.[21] They include a large number of documents that would not be responsive and easy and non-burdensome to identify and exclude from production.

The counts do not distinguish between purely internal communications and communications with persons or entities outside Zuffa. That distinction is important because with respect to the Legal Custodians, Zuffa "propose[d] to search and produce their ESI and

---

[21] Defendant has stated that these email and attachment counts have been deduplicated but has not identified against what the documents have been deduplicated against.

JOINT STATUS REPORT

documents for responsive communications with persons or entities outside of Zuffa (not including outside counsel working for Zuffa. Purely internal communications would be excluded from the search." (Cove letter to Dell'Angelo, October 28, 2015, at p. 4). Because only a subset of the Legal Custodians' documents include the "purely internal communications" which Zuffa proposes to exclude and Zuffa has not quantified the volumes, it is impossible to reliably gauge the burden associated with reviewing them for privilege.

Zuffa should be required to search, review and produce all responsive, non-privileged email for each of the proposed Legal Custodians. In the alternative, Plaintiffs further propose that several techniques can be applied to reduce the burden of Zuffa's privilege review, including, a 'quick peek' stipulation under Federal Rule of Evidence 502,[22] the use of search terms to exclude likely privileged documents, limitations on the obligation to log privileged material and eliminating the obligation to log privileged redactions provided metadata for such documents is produced.

## 2. Defendant's Position (Zuffa's Statement)[23]

As explained in the previous Joint Status Report (Dkt. 199 at 51-53), Plaintiffs have requested that Zuffa produce documents from at least five current or former members of its legal department, including Zuffa's present Chief Legal Officer Kirk Hendrick, Zuffa's former General Counsel and COO Lawrence Epstein, former Associate General Counsel Michael Mersch, and two paralegals Sonja McKinney and Tracy Long.  Since Mr. Epstein has a relatively small

---

[22] The Court can enter a Fed. R. Ev. 502 order without Zuffa's agreement. *See* http://www.gpo.gov/fdsys/pkg/CREC-2008-09-08/pdf/CREC-2008-09-08-pt1-PgH7817.pdf#page=2 at H7819) (statement in the congressional record relating to the enactment of Rule 502). Under Rule 26(c)(1), the court can enter a clawback order where not all parties agree, using its authority to create a protective order. *See, e.g.*, *Rajala v. McGuire Woods LLP*, 2010 WL 2949582 (D. Kan. July 22, 2010) .

[23] In their 2:17 p.m. revision of this Joint Status Report, Plaintiffs also demanded another in-house lawyer – Senior Vice President and Associate General Counsel Tim Bellamy – be named as a custodian.  Zuffa does not believe that Mr. Bellamy should be a custodian at all and, if he is, there should be a reasonable limitation on the search and production of his documents.  As we have previously informed Plaintiffs, Zuffa's preliminary assessment shows Mr. Bellamy has 135,064 files in Zuffa's retained email server and 606 files in the custodian-specific folder on Zuffa's shared network drive.  This does not include any ESI stored on Mr. Bellamy's hard drive or his cell phone or any hard copy documents in his possession.

number of custodial documents remaining from his time as General Counsel and Ms. McKinney's custodial email and other ESI was not maintained after she left the company before the Complaint was filed, Zuffa has agreed to review and produce (subject to any other agreed upon or court-ordered limitations) all their responsive non-privileged documents and to log their privileged documents to the extent that such documents still exist.  Further, subject to any other agreed upon or court-ordered limitations, all responsive, privileged documents from Mr. Epstein's time as COO, as well as from all the other agreed-upon custodians, would be logged as privileged.  However, given the large volume of documents that would need to be reviewed from Mr. Hendrick, Mr. Mersch and Ms. Long, and the tremendous burden of reviewing and logging all the privileged documents within that, Zuffa proposed a reasonable and proportional limitation on the collection and production of documents from Mr. Hendrick, Mr. Mersch, and Ms. Long.  Under Zuffa's proposal, Zuffa would search and produce these individuals' ESI for responsive communications with persons or entities outside of Zuffa (not including outside counsel working for Zuffa) and would exclude from the search purely internal communications.  By its nature, this proposal would capture any communication with fighters, their agents or managers, or other third parties, including any negotiations about the contracts terms at issue in the litigation, as well as any communications that Plaintiffs wish to characterize as alleged "threats."

**Custodians At Issue**

**1. Tracy Long**

Ms. Long started with Zuffa as an executive assistant to Mr. Epstein when he was Chief Legal Officer, and has held a variety of titles during her tenure — Paralegal, Chief Paralegal, Director - Athlete Relations, Legal Affairs Manager, and currently Director - Athlete Compliance and Regulation — always in the Legal Department and always working under the supervision of one or more of Zuffa's in-house counsel.  Her files and email contain a substantial number of documents that are protected by the attorney-client privilege and/or work product doctrine.  Throughout her tenure, Ms. Long has always been responsible for oversight and organization of fighter contracts and files under the supervision of attorneys, as well as assisting the lawyers and conducting general paralegal duties, including litigation support.  Zuffa will log any privileged

16

documents found in those contract files.[24]  Zuffa has also agreed to provide any regularly prepared non-privileged reports that Ms. Long prepared.  But Zuffa's initial document collection assessments show Ms. Long also has 121,171 emails on Zuffa's retained server,[25] approximately 70,000 files on Zuffa's custodian-specific network drive folder and 14,903 files on her hard drive.

### 2. Michael Mersch

Mr. Mersch also served in the Legal Department under the supervision of Chief Legal Officer Kirk Hendrick as Senior V.P. for Athlete Relations and Associate General Counsel.  His files and email contain a substantial number of documents that are protected by the attorney-client privilege and/or work product doctrine.  As Zuffa informed Plaintiffs in its interrogatory responses, one of Mr. Mersch's duties was to negotiate contract terms with fighters, in addition to his role in providing legal services and advice as Associate General Counsel.  Under Zuffa's proposal, Zuffa would search and produce Mr. Mersch's communications with third parties, thus providing Plaintiffs with the documents regarding these contract negotiations that are at the core of their Complaints.  Zuffa has informed Plaintiffs that its initial document collection assessments show that Mr. Mersch has 114,743 emails on Zuffa's email server and approximately 36,000 files on his hard drive.

### 3. Kirk Hendrick

Since late 2012, Mr. Hendrick has served as Chief Legal Officer for Zuffa where he is responsible for overseeing all litigation and potential litigation for the company, providing legal advice, supervising outside counsel, among other legal duties.[26]  His files and email contain a substantial number of documents that are protected by the attorney-client privilege and/or work

---

[24] At the previous status conference, the Court adopted Zuffa's position regarding the production of the approximately 940 fighter files for individuals who competed in a bout after December 16, 2010, in addition to the electronic fighter contract files, without regard to time.

[25] This count is from February 2014 to October 2015.  The final number will be slightly less given the parties' agreement on a June 30, 2015 cutoff date.

[26] Mr. Hendrick served as COO prior to 2013.  Zuffa is not proposing to limit review of any of Mr. Hendrick's documents from his time as COO; privileged documents from that period would be logged as with other custodians.  Further, Zuffa has already produced to Plaintiffs 8,685 documents from Mr. Hendrick's custodial files during his time as COO, some dating back as far as 2005, that were previously produced to the FTC.

1    product doctrine.   As noted in Zuffa's interrogatory responses, Mr. Hendrick was involved in

2    contract negotiations with fighters and their managers and agents, venues, broadcasters,

3    merchandisers, sponsors, and for the acquisition of other MMA promoters.  Under Zuffa's

4    proposal, Zuffa would search and produce documents regarding Mr. Hendrick's communications

5    with third parties (outside of communications with Zuffa's retained counsel) relating to these

6    negotiations or any other matter responsive to Plaintiffs' requests.  Zuffa has informed Plaintiffs

7    that its initial document collection assessments show that Mr. Hendrick has 177,034 emails on

8    Zuffa's email server,[27] 10,000 files on Zuffa's custodian-specific folder on its network drive, as

9    well as additional documents on his hard drive and cell phone.

10       **Discussion**

11       Contrary to Plaintiffs' argument, and as Zuffa made clear in the last status report, Zuffa is

12   not proposing a blanket assertion of privilege.  Rather, it is proposing a reasonable limitation on

13   searching and logging of these custodians' documents only that, in addition to the other

14   documents and materials that are being produced (or logged for privilege), allows Plaintiffs to

15   access core documents relevant to their accusations.  This proposal is a reasonable means of

16   providing discovery "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  Courts

17   frequently limit discovery with regard to legal custodians where the burdens of reviewing

18   documents for privilege and creating a privilege log outweigh the benefits of a document

19   production.  *Goldenson v. Steffens*, No. 2:10-cv-00440-JAW, 2013 WL 145587, at *10 (D. Me

20   Jan. 14, 2013); *Eli Lilly & Co. v. Valeant Pharm Int'l*, No. 1:08-cv-1720-TWP-TAB, 2011 WL

21   691982, at *2 (S.D. In. Feb. 15, 2011).  And creating document-by-document privilege logs can

22   be especially "unreasonable and overly burdensome" where withheld documents originate from

23   attorney custodians.  *See In re Imperial Corp. of Am. v. Shields*, 174 F.R.D. 475, 478-79 (S.D.

24   Cal. 1997); *accord Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 623, 638 (D. Nev. 2013) (applying

25   *Imperial Corp.* standard).

26

27   ───────────────────────

     [27] This count is from April 2013 to July 2015.  The final number will be slightly less given the

28   parties' agreement on a June 30, 2015 cutoff date.

Zuffa's proposal provides Plaintiffs with the documents most relevant to their case — i.e., all responsive negotiations and communications between these custodians and fighters, their managers and agents, venues, sponsors, and other third parties, including alleged "threats," if any, to such persons — while saving the extensive burden and expense of performing privilege review and logging of the full extent of these legal department employees' documents.  To be clear, this limitation would apply only to the custodial files of these custodians during their time in the legal department.  Documents in the custodial files of other custodians outside the legal department would still be searched and produced, including logging privileged documents in a manner to be agreed upon by the parties.  For example, an internal email between Mr. Epstein or Mr. White and Mr. Hendrick and found in Mr. Epstein's or Mr. White's files would still be reviewed and either produced or withheld and logged as privileged.

Zuffa believes its proposed compromise adequately fulfills Plaintiffs' desire to capture any communications with fighters or other third parties that they allege may be anticompetitive, while relieving Zuffa of the burden of an extensive privilege review of hundreds of thousands of documents and the logging of what is likely thousands of privileged communications.

### C. Identification of "Identity Class" Members and Production of "Identity Class" Members' Contract Files

#### 1. Plaintiffs' Position (Plaintiffs' Statement)

##### a. Production of Identity Class Members' Documents and Identification of Identity Class Members

Plaintiffs assert claims on behalf of two proposed classes of plaintiffs: the Bout Class and the Identity Class. At the November 17, 2015, Status Conference, the Court adopted Zuffa's proposal regarding the production of Bout Class documents and the time period for which historical contracts should be produced for UFC fighters, regardless of whether or not they are members of the Bout Class or Identity Class. However, the parties have not resolved and the Court has not specifically addressed the scope of Zuffa's obligation to produce contract files for members of the Identity Class or the basis for Zuffa's objection to doing so, as discussed by the parties in their November 16, 2015, Joint Status Report. (Dkt. 199. at pp. 31-36.)

JOINT STATUS REPORT

Zuffa has refused to identify all members of the proposed Identity Class in response to Plaintiffs' Interrogatory No. 2 and refused, in response to Plaintiffs' Document Requests, to produce their contract files to the extent the Identity Class members are not also members of the separate Bout Class or otherwise found within an "electronic collection" of fighter contracts created by Zuffa in the regular course of business, but which Zuffa has represented is incomplete. Zuffa has refused discovery for any member of the Identity Class who is not also a member of the Bout Class on the basis of a disputed legal issue with respect to a subset of the Identity Class. Zuffa should be required to identify all members of the Identity Class and to produce their contract files and other documents regardless of whether a given Identity Class member is also a member of the separate Bout Class.

### 1. Interrogatory No. 2: Identification of Identity Class Members

Plaintiffs have requested a more complete Answer to Plaintiffs' Interrogatory No. 2, which states:

> **Identify:** (a) each **MMA Fighter** with whom You have entered into an agreement granting you the right to use, expropriate, exploit, market, or profit from such Fighter's **Identity**, and (b) each and every MMA Fighter whose **Identity** You utilized for any purpose between December 16, 2010 and the present, setting out the use to which the Identity was put, the dates the Identity was used, the revenues if any earned from that use, and the share of those revenues paid to the Fighter (if any).

In response, Zuffa provided Plaintiffs with a list of members of the Bout Class and has refused to provide the information called for, including a list of the members of the Identity Class. Specifically, Zuffa has failed to identify each MMA Fighter with whom it entered into an agreement granting Zuffa the right to use, expropriate, exploit, market, or profit from the MMA Fighters' Identify and each MMA Fighter whose Identity Zuffa utilized during the Class Period, *i.e.*, the members of the Identity Class. Instead, Zuffa provided only a "list of every athlete who participated in a bout between December 16, 2010 and May 16, 2015," *i.e.*, the members of the Bout Class, stating generally that Zuffa would produce records kept in the normal course of business that will show compensation that Zuffa provided athletes.

Zuffa contends below that it "will provide documents sufficient to identify all the fighters who fought in the UFC since Zuffa purchased the UFC brand in 2001 and will identify such documents when they are produced under Rule 33(d). By definition, this will answer the first specification of Interrogatory 2 since all fighters agreed to grant 'identity rights' that allowed the UFC to, *inter alia*, publicize, promote, broadcast and replay the fighter's bouts." Zuffa also contends that it will provide financial data that will, in part, answer Interrogatory No. 2 and identify certain Identity Class members.

Zuffa's proposed response falls short in two important ways. First, a central issue for the Identity Class is not when the fighter, if ever, participated in a Bout, but whether Zuffa utilized his or her identity (allegedly without adequate, or indeed any, compensation) during the Class Period. Simply providing Plaintiffs with list of every fighter who ever participated in a bout for the UFC is useful for other aspects of discovery, but does not advance the issues specific to the Identity Class. Second, providing information regarding revenues paid to members of the Identity Class does not ignores the fact that Plaintiffs allege Zuffa expropriated and exploited the identities of members of the Identity Class, in some cases, without any compensation whatsoever, and in all cases with compensation levels artificially suppressed by the challenged conduct. *See Le* Compl., ¶ 92, 107, 117.

**2.  Production of Identity Class Members' Contract Files and Documents**

Second, with respect to Plaintiffs' document requests, Zuffa has agreed to produce fighter files[28] for all members of the Bout Class with no date restriction. Zuffa has also agreed to produce contracts for all persons who did not fight in the UFC after December 16, 2010, from what it has identified as an "electronic collection" of fighter contracts recently scanned by Zuffa in the ordinary course of business. Those as yet produced documents would necessarily include *some* members of the Identity Class who are not in the Bout Class. However, Zuffa has

---

[28] These files include Promotional and Ancillary Rights Agreements, Bout Agreements and related correspondence and other documents and contracts,

JOINT STATUS REPORT

1
2
3

acknowledged that the electronic collection it proposes to produce is incomplete. Zuffa has thus refused to produce a complete set of fighter files for Identity Class members who are not also members of the Bout Class and refused to identify all Identity Class members.

4
5
6
7
8
9
10
11
12
13
14

Zuffa's refusal to identify all members of the alleged Identity Class or to produce their contracts and related documents is based on an argument that goes to the merits of Plaintiffs' claims. Zuffa claims that members of the proposed Identity Class were not injured if they did not sign a contract during the Class Period, even if Zuffa used their identities or benefitted from the use of their identities during the Class Period at compensation levels that Plaintiffs allege were artificially suppressed by the challenged conduct. Given that the alleged injury is receiving artificially reduced compensation for the exploitation of Fighter's identity rights, at least one of the time periods relevant to suffering that injury is *the time those rights are exploited, i.e., during the Class Period*.  Thus, although Zuffa concedes information regarding the identity of members of the classes is generally relevant, it has raised a (bogus) dispute with respect to the scope of the membership of the Identity Class.

15
16
17
18
19
20
21
22
23
24
25
26
27

Plaintiffs allege that as part of the anticompetitive scheme, Zuffa expropriated or exploited the identities of members of the Identity Class in UFC licensed merchandise and promotional materials during the Class Period. Zuffa has raised no legitimate reason for not producing this information nor has it specified any arguably unreasonable burden. Zuffa's refusal is not appropriately resolved through discovery objections and disregards the fact that this Court sustained the well-pleaded complaint, which includes the claims of the Identity Class as defined above. Discovery regarding and prosecution of the Identity Class members' claims should not be denied for want of the resolution of substantive factual and legal issues best resolved on summary judgment. Plaintiffs are entitled to discover the identity of the Identity Class members and to the production of their contracts pursuant to which Zuffa expropriated or exploited their identities as part of the alleged scheme. Regardless, the incremental burden of producing the remaining fighter files of Identity Class members who are also not members of the Bout Class is entirely warranted because it is essential to the prosecution of the Identity Class claims as pled. Defendant should be

28

ordered to produce documents relating to the Identity Class, including, but not limited to, their

fighter files, as well as provide a complete answer to Interrogatory No. 2.

### b.  <u>Statute of Limitations Applicable to Identity Class Members</u>

Zuffa argues that the claims of those plaintiffs who did not execute an agreement during

the Plaintiffs' proposed relevant time period are barred by the statute of limitations because

Identity Class members purportedly were not injured during the Class Period. This issue is not

appropriate for resolution in a Status Report and best resolved through dispositive motion

practice. This issue has no relevance to the scope of discovery or any other issue properly before

the Court at this time.

Moreover, Zuffa's also has the facts wrong. It contends, for example, that Plaintiff Quarry

could not have suffered an injury in the statutory period because he did not fight for the UFC or

sign a contract during that time. However, Plaintiff Quarry is not a member of the proposed Bout

Class, which consists of those who fought for Zuffa during the Class Period (*see Le* Compl., ¶ 2).

Quarry is only pled as a member of the proposed Identity Class, which consists of fighters whose

Identity was expropriated or exploited by the UFC during the Class Period. *Id.* at ¶ 3. Because

Quarry's identity was indeed exploited during the Class Period, for which he received

compensation (*i.e.*, zero) below the higher levels that Plaintiffs claim would have prevailed absent

the conduct, *he was injured during the Class Period and thus he is appropriately pled as part of*

*the Identity Class*. In other words, each time the UFC exploited the identity rights of a member of

the Identity Class and that Class member received zero dollars instead of actual dollars at the time

of exploitation, that Class member suffered harm and was injured. Zuffa is simply wrong about

the timing of the suffered injuries, and thus its statute of limitations arguments are factually

invalid and legally irrelevant. Regardless, because Zuffa has elected to raise the statute of

limitations issue in the context of a Status Report, Plaintiffs provide the following brief response.

Plaintiffs have alleged their injury was caused by Zuffa's ongoing and multifaceted

scheme as a whole—which includes hundreds of contracts with multiple entities (including

sponsors, venues, merchandisers and fighters) *and* other conduct unrelated to contracts—not any

individual contract. *See*, *e.g.*, *Le* Compl. ¶¶ 153-58. The complaints plainly allege that Zuffa's

1    scheme is ongoing[29] and multifaceted.[30] Thus, contrary to Zuffa's argument, the date any

2    member of either the Bout Class or the Identity Class executed his or her agreement(s) is not

3    dispositive of the date of injury, the accrual of the claim, or the statute of limitations. A class

4    member could, in theory, possess a valid claim without having signed any contract at all, let alone

5    one outside of the limitations period—just as long as due to the ongoing Scheme, that Class

6    member was paid less than that fighter would have been paid for a bout or identity rights during

7    the limitations period.

8          In addition, the statute of limitations has not run regarding an antitrust violation if the

9    illegal conduct continues into the limitations period. *Hanover Shoe, Inc. v. United Shoe*

10   *Machinery Corp.*, 392 U.S. 481, 502, n.15, 88 S. Ct. 2224, 2236, n.15 (1968)). Courts repeatedly

11   find that monopolists that use their power, illicitly gained, to charge supracompetitive prices have

12   no claim on the repose that the statute of limitations provides. *See, e.g.*, *Berkey Photo Inc. v.*

13   *Eastman Kodak Co.*, 603 F.2d 263, 295 (2d Cir. 1979) (a monopolist that "continues to use the

14

---

15   [29] Plaintiffs allege that "by gaining, maintaining, and enhancing iron-fisted control over the
Relevant Markets through the *ongoing* exclusionary scheme alleged herein, the [Zuffa] has
16   foreclosed competition in the Relevant Markets, acquired, enhanced, and maintained (i)
monopoly power in the Relevant Output Market and (ii) monopsony power in the Relevant Input
17   Market, and used its dominant position to enter into and dominate other segments of the MMA
Industry unrelated to the promotion of live Elite Professional MMA events." *See Le* Compl., ¶ 21
18   (emphasis added). Plaintiffs also allege that Zuffa's "*ongoing* anticompetitive scheme has
enhanced and maintained the UFC's monopoly power in the Relevant Output Market and
19   monopsony power in the Relevant Input Market. As a result of the UFC's scheme: (i)
compensation associated with fighting in MMA bouts to members of the Bout Class has been and
20   continues to be artificially suppressed, and (ii) the Identities of UFC Fighters continues to be
expropriated and compensation for the UFC and its licensees for the expropriation of, exploitation
21   of and right to exploit Identities of the members of the Identity Class has been and continues to be
artificially suppressed." *See id.* at ¶ 151 (emphasis added). *See also id.*, at ¶¶ 158, 161 (alleging
22   Zuffa's anticompetitive scheme is "continuing" and so are the damages suffered by the members
23   of the Bout Class and Identity Class).
24   [30] The complaints allege that the ongoing scheme consists of "a series of exclusionary acts" and
is "multifaceted" (*see id.* at ¶ 9), and provide specific examples of the various aspects of Zuffa's
25   scheme. For example, Plaintiffs allege "Through the scheme alleged herein, the UFC locked up:
(i) all or virtually all Elite Professional MMA Fighters with substantial national or regional
26   notoriety; (ii) the vast majority of major sponsors; and (iii) key physical and television venues."
27   *See, e.g.*, *id.* at ¶ 10. Each aspect of the scheme is alleged in detail; there is no mistaking that
Plaintiffs allege the scheme is ongoing and not limited to fighter contracts.
28

1   power it has gained illicitly to overcharge its customers . . . has no claim on the repose that a

2   statute of limitations is intended to provide"); *id.* ("[i]t is only when the monopolist, having

3   devoured its smaller rivals, enjoys the spoils of its conquest by boosting its price to excessive

4   levels that a purchaser 'feels the adverse impact' of the violation"); *Marchbanks Truck Serv. v.*

5   *Comdata Network, Inc*., 2011 U.S. Dist. LEXIS 158011, *81, 2011 WL 11559549 (E.D. Pa. Mar.

6   24, 2011) (citing *Toledo Mack Sales & Service, Inc. v. Mack Trucks, Inc*., 530 F.3d 204, 217 (3d

7   Cir. 2008) ("[I]n the context of a continuing conspiracy to violate antitrust laws, a claim accrues

8   each time a plaintiff is injured by an act of the defendant and, as to those damages, the statute of

9   limitations runs from the commission of the act.").[31]

10      A prime example in this Circuit is the decision in *Free FreeHand Corp. v. Adobe Systems,*

11   *Inc.*, 852 F. Supp. 2d 1171, 1187-88 (N.D. Cal. 2012). In *FreeHand*, the court considered a

12   similar argument to Zuffa's in another Section 2 case. The court held "[u]nder the 'continuing

13   violation' doctrine, 'each overt act that is part of the [antitrust] violation and that injures the

14   plaintiff … starts the statutory period running again, regardless of the plaintiff's knowledge of the

15   alleged illegality at much earlier times." *Id.* (quoting *Klehr v. A.O. Smith Corp.*, 521 U.S. 179,

16   189 (1997). "In the Ninth Circuit, an overt act restarts the statute of limitations if it: (1) is 'a new

17   and independent act that is not merely a reaffirmation of a previous act'; and (2) 'inflict[s] new

18   and accumulating injury on the plaintiff." *Id.* (quoting *Pace Indus. v. Three Phoenix Co.*, 813

19   F.2d 234, 237 (9th Cir. 1987)).

---

20   [31] *See also Univac Dental Co. v. Dentsply Int'l, Inc.*, 2008 WL 719227, at *4 (M.D. Pa. March

21   14, 2008) ("The continuing violation theory authorizes antitrust recovery for a defendant's time-
barred actions if the plaintiff demonstrates that they caused the plaintiff to incur damage within

22   the limitations period."); *Meijer, Inc. v. 3M*, 2005 WL 1660188, at *4 (E.D. Pa. July 13, 2005) (in
"purchaser antitrust actions" such as this one, "the requisite injurious act within the limitations

23   period can include being overcharged as a result of an unlawful act which took place outside the
limitations period"); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 551 (D.N.J. 2004)

24   ("Plaintiffs have alleged that they were overcharged and paid supra-competitive prices for K-Dur
as a result of Defendants' settlement agreements.  As such it appears that Plaintiffs' claims are not

25   barred by the statute of limitations to the extent that they bought and overpaid for K-Dur within
the applicable time limitations."); *In re Buspirone Patent Antitrust Litig.*, 185 F. Supp. 2d 363,

26   378 (S.D.N.Y. 2002) ("if a party commits an initial unlawful act that allows it to maintain market

27   control and overcharge purchasers for a period longer than four years, purchasers maintain a right
of action for any overcharges paid within the four years prior to their filings").

28

Zuffa's multi-faceted scheme is a continuing violation of the antitrust laws, alleged to be composed of several elements including, *inter alia*, a series of acquisitions of actual and potential rivals, including Zuffa's acquisition of Strikeforce, during the statute of limitations period, *id.* at ¶ 128, exclusionary deals with fighters, *id.* at ¶¶ 109-15, exclusionary deals with venues and sponsors, *e.g.*, *id.* at ¶¶ 10, 122 & 16, and enforcement and threatened enforcement of these exclusionary deals, *e.g.*, *id.* at ¶ 110. This scheme thus includes independent elements that occurred during the statutory period and caused new injury to Plaintiffs and the Classes. For example, the acquisition of actual and potential rivals (and the impairment of potential rivals) extends to the present and has injured all Plaintiffs in the suppressed compensation available to them as a result of the anticompetitive scheme (regardless whether the fighter is under contract with Zuffa). Zuffa's argument even acknowledges that Plaintiff Nate Quarry has a claim for injury during the statutory period, and coupled with the well-pleaded allegations of new and independent acts in furtherance of the anticompetitive scheme, Plaintiffs demonstrate a continuing violation.

Zuffa relies principally on the Ninth Circuit decision of *Aurora Enterprises, Inc. v. National Broadcasting Company, Inc.*, 688 F.2d 689 (9th Cir. 1982). In *Aurora Enterprises*, the plaintiff, Xanadu Productions, Inc. ("Xanadu") was a television production company that had a role in developing the television series The High Chaparral ("Chaparral"). Defendant National Broadcasting Co. ("NBC") had purchased the rights to broadcast Chaparral, which included syndication rights. After the Federal Communications Commission ordered NBC to divest itself of syndication rights, including the rights to Chaparral, NBC sold the rights to another defendant. Xanadu sued defendants alleging a tying violation of the Sherman Act, that as a condition to purchasing the Chaparral exhibition rights, NBC insisted on purchasing the syndication rights which unreasonably restrained trade. The district court dismissed Xanadu's tying claims as time barred under 15 U.S.C. § 15(b) because Xanadu's claims and injuries arose from the sale of syndication rights that occurred more than four years before the filing of the complaint. Here, of course, Identity Class members suffered injuries from the Scheme *each time their identities were exploited during the Class Period* for zero compensation (which amount was below the level that

would have been paid absent the challenged conduct).  The court in *Aurora* even recognized that certain exceptions can apply to renew the statute of limitations, including the situation here where there is a "continuous antitrust violation" (causing continuing harm during the limitations period), but that no such exception applied to Xanadu's claims. Zuffa's reliance on *Aurora Enterprises* is misplaced.

### 2.  Defendant's Position (Zuffa's Statement)

#### a.  Production of Contract Files for Putative Class Members Outside the Statute of Limitations

Plaintiffs' attempt to revisit the Court's ruling as to the scope of production of fighter contracts files is based on their insistence on maintaining claims that are barred by the applicable statute of limitations.  Contrary to the Plaintiffs' characterization of the Court's ruling as limited to the Bout class, the issue was fully briefed as to all fighters.  (Dkt. 199 at 31-32).  As Zuffa explained in the last Joint Status Report, Plaintiffs' causes of action under Section 2 of the Sherman Act are subject to a four-year statute of limitations period, which bars claims prior to December 16, 2010.  15 U.S.C. § 15b; *see* Le Compl. ¶ 30(c) (defining "Class Period" as beginning December 16, 2010, four years before filing of the *Le* Complaint).  Any claims by putative "Identity Class" members who did not contract during the statute period arise out of agreements executed outside the limitations period and are therefore time-barred, because their injury, if any, occurred when the contract was signed, not when Zuffa allegedly benefitted from the rights granted in the contract.  Plaintiff Quarry, for example, neither fought in the UFC nor signed a contract with Zuffa within the statute of limitations period, and therefore suffered no antitrust injury in the statute period.  *Aurora Enters., Inc. v. Nat'l Broad. Co.,* 688 F.2d 689, 694 (9th Cir. 1982) (The "mere fact that defendants receive a benefit today as a result of a contract executed" outside the limitations period "in which [Plaintiffs were] purportedly coerced to part with [certain] rights, is not enough to restart the statute of limitations."); *accord Varner v. Peterson Farms*, 371 F.3d 1011, 1020 (8th Cir. 2004).  Any obligations performed or benefits received by either Zuffa or the putative class members are "but unabated inertial consequences of some pre-limitations action" and cannot serve to revive those plaintiff's time-barred claims for

1  damages.  *In re Multidistrict Vehicle Air Pollution*, 591 F.2d 68, 72 (9th Cir. 1979) (quoting

2  *Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 517 F.2d 117, 128 (5th Cir. 1975), cert. denied,

3  423 U.S. 1054 (1976)).  Contrary to the Plaintiffs' argument – that the allegedly illegal conduct

4  continued into the limitations period – this does not extend the statute for an injury that occurred

5  outside the limitations period.

6       This is not, as Plaintiffs would have it, a factual issue, but a legal issue.  Zuffa believes

7  that this legal issue could be resolved by a motion for summary judgment on stipulated facts or

8  with relatively brief discovery.  Zuffa suggests that the parties meet and confer on a process to

9  bring this issue to resolution in an expeditious fashion.

10      At the last status conference, the Court previously addressed and ruled on the issue of the

11  production of hard copy contract files.  The Court rejected Plaintiffs' position that Plaintiffs are

12  entitled to all of Zuffa's hard copy contract files including those from all athletes who fought for

13  the UFC since its inception.  Instead, the Court found that, at this time, the production of all the

14  contract files for the approximately 940 athletes who competed in a bout after December 16, 2010

15  was reasonable and proportional.  Subsequently, to address any remaining individuals who

16  entered into an agreement granting identity rights after December 16, 2010 but who did not

17  compete in a bout, Zuffa also agreed to produce the contract files for any of those individuals

18  without date restriction as well.  Thus, Zuffa has already agreed to produce the contract files for

19  all members of Plaintiffs' proposed putative classes with claims that fall within the statute of

20  limitations.  Plaintiffs did not raise the issue of hard copy fighter files in relation to the identity

21  class when the topic was being discussed at the last status conference and their decision to raise it

22  now appears to simply be an attempt to rehash their previously rejected position.

23                              **b.  Interrogatory No. 2**

24      Plaintiffs also raise the issue of Zuffa's response to Interrogatory No. 2 to Plaintiffs' First

25  set of Interrogatories, which Plaintiffs raised for the first time during the November 30 meet and

26  confer.

27      Despite being listed as one interrogatory, Interrogatory No. 2 seeks the following 6 pieces

28  of information:

1. Identification of each MMA Fighter with whom You have entered into an agreement granting you the right to use, expropriate, exploit, market, or profit from such Fighter's Identity
2. Identification of each and every MMA Fighter whose Identity You utilized for any purpose between December 16, 2010 and the present
3. The use to which the Identity was put
4. The dates the Identity was used
5. The revenues if any earned from that use
6. The shares of revenues paid to the fighter (if any)

Plaintiffs state that "Zuffa has failed to provide a complete substantive answer" and "refused to identify all members of the Identity Class who are not also members of the Bout Class."  In fact, Zuffa will provide documents sufficient to identify all the fighters who fought in the UFC since Zuffa purchased the UFC brand in 2001 and will identify such documents when they are produced under Rule 33(d).  By definition, this will answer the first specification of Interrogatory 2 since all fighters agreed in return for the compensation paid under their relevant agreements with Zuffa to grant "identity rights" that allowed the UFC to, inter alia, publicize, promote, broadcast and replay the fighter's bouts.  Similarly, Zuffa has already provided some data and will provide additional financial data kept in the ordinary course of business that answer Specifications 5 and 6, and Zuffa will identify it under Rule 33(d).  What Zuffa cannot do is respond fully to Specifications 3 and 4.  As Zuffa explained in its interrogatory responses:

> Athletes' identity rights, including athletes' names, likenesses, photographs, and videos are used in a variety of ways, including publicizing and promoting bouts, broadcasting and replaying bouts, and sometimes in connection with sponsorship licenses and merchandise, *e.g.*, posters, t-shirts. Attachment A contains a list of every athlete who participated in a bout between December 16, 2010 and May 16, 2015. For every athlete listed in Attachment A, identity rights would have been used, at a minimum, in publicizing and promoting the bout/events and in any broadcasting or replaying of the bouts, but it would be impossible to list every time such rights pursuant to the contracts were used. In addition to the athletes listed in Attachment A, Zuffa also would have used video, images, and descriptions of some bouts and events that took place before December 16, 2010 after such date and these uses may have included rights that Zuffa had contracted for before December 16, 2010. For example, if Fighter A fought Fighter B in 2005, an image or video clip from that bout that contained an image of Fighter A may have been used to promote a bout involving Fighter B in 2011.  To the extent that this Interrogatory seeks information as to each such occurrence, it is overly burdensome and impossible reasonably to comply with.

Zuffa stands on this objection, but as discussed in the meet and confer, Zuffa is willing to discuss providing information on particular categories of rights usage that are tracked in the

normal course of business, such as use of an athlete's identity in a video game or on merchandise. To the extent that Plaintiffs require other information, Zuffa remains willing to meet and confer with Plaintiffs to find efficient ways to provide information responsive to this request.  Given that these issues were first raised this week, Zuffa does not think any relief is needed from the Court at this point.

### D.  Case Management Issues (Joint Statement)

#### 1.  Discovery Limitations

The parties disagree as to the number of interrogatories that will be permitted and the number of depositions that will be permitted without leave of the Court.

#### a.  Interrogatories

**Plaintiffs' Proposal:**

Plaintiffs propose that Plaintiffs may collectively serve no more than 40 interrogatories on Defendant. Further, Plaintiffs propose that Defendant may serve no more than 10 interrogatories requiring a separate response by each named Plaintiff[32] and serve no more than 20 additional interrogatories to be answered collectively, *i.e.*, once, by all Plaintiffs.[33] If, after Plaintiffs file their Consolidated Amended Complaint, the total number of proposed representative plaintiffs is reduced from 11 to 6, Plaintiffs' proposal would allow for Zuffa to serve a total of up to 80 interrogatories (*i.e.*, up to 60 interrogatories requiring a separate response (10 interrogatories for each of 6 plaintiffs) and up to 20 interrogatories to be answered collectively). Thus, under Plaintiffs' proposal, Zuffa would be entitled to serve twice the total number of interrogatories (80) as Plaintiffs (40). Under Plaintiffs' proposals, with the current 11 proposed representative plaintiffs, Zuffa would be entitled to serve up to 130 interrogatories versus Plaintiffs' 40 interrogatories. Even assuming 6 representative plaintiffs, Zuffa's proposal would afford it 140 separate interrogatories (i.e., up to 120 interrogatories requiring a separate response (20 interrogatories for each of the 6 plaintiffs) and up to 20 interrogatories to be answered

---

[32] There are ___ named Plaintiffs.

[33] For example, contention interrogatories.

1   collectively).

2   **Defendant's Proposal:** Zuffa's position remains unchanged from the previous Joint

3   Status Report.  Dkt. 199 at 53-54.  Zuffa proposes limiting the number of interrogatories to 40 per

4   side, with no more than 20 interrogatories requiring a separate response by each plaintiff – the

5   balance could be answered collectively, *i.e.*, once by all Plaintiffs.  In this regard, Zuffa notes that

6   the Plaintiffs have indicated that they intend to file a consolidated amended complaint, in which

7   they would drop approximately half of the current 11 plaintiffs, which would also halve the

8   burden of responding to 20 plaintiff-specific interrogatories.   Zuffa disagrees that Plaintiffs

9   should be entitled to more interrogatories than it receives as Plaintiffs' proposes, but agrees to

10  count Plaintiffs' previously-served interrogatories as 6 interrogatories despite the multiplicitous

11  nature of the questions.

12  **b.   Depositions**

13  **Plaintiffs' Proposal:**

14  Plaintiffs' position remains unchanged from the previous Joint Status Report. Dkt. 199 at

15  54. Plaintiffs propose that each party be permitted to take up to 70 depositions. Plaintiff proposes

16  that no more than 25 depositions (out of the 70) of current Zuffa employees.[34]

17  70 depositions are reasonable—and necessary—given the complexity of this case, the

18  number of percipient witnesses (party and non-party) and the length of the relevant period.

19  Plaintiffs allege that Defendant engaged in an anticompetitive scheme to monopolize the market

20  for promoting Elite Professional MMA Events and monopsonize the market for Elite Professional

21  MMA Fighter services going at least ten years.[35] In furtherance of this scheme, Defendant

22

23  _____

24  [34] To the extent that a Zuffa employee would need to be deposed for more than one 7-hour day, Plaintiffs have proposed to count additional days as individual depositions.

25  [35] Antitrust cases regularly require more depositions. *See In re Fine Paper Antitrust Litigation*, 685 F.2d 810, 818 (3d Cir. 1982) (no abuse of discretion where trial court permitted taking of 270

26  depositions); *In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599, 614 (7th Cir. 1997) (pretrial discovery involved more than 1,000 depositions); *Wal-Mart Stores, Inc. v.*

27  *Visa U.S.A. Inc.*, 396 F.3d 96, 117 (2d Cir. 2005) ("Counsel for the class took and defended approximately 400 depositions"); *see also In re Plastics Additives Antitrust Litig.*, 2004 U.S. Dist.

28

entered into exclusive contracts with more than 1,000 Elite Professional MMA Fighters, represented by at least 24 third-party managers or agents. Also in furtherance of the scheme, Zuffa entered into exclusive contracts with dozens of event venues, dozens of sponsors and merchandizers, as well as media broadcasters and distributers. In addition, there are a number of actual or potential competitors who possess evidence of the fact, the nature, the duration, and economic effects of the scheme. Plaintiffs' Complaints specifically identify a dozen such promoters. *See, e.g., Le* Compl. ¶¶129-50. Finally, the proposal would include the depositions of former Zuffa employees. Plaintiffs' Rule 26(a) Disclosures, consistent with the scope of the Complaints' allegations, identified 31 current and former Zuffa employees and more than 80 third-party entities and individuals likely to have discoverable information. *See* ECF No. 107-2. Plaintiffs' proposal of 70 depositions is therefore consistent with the anticipated scope of discovery. In fact, the proposal is modest given the number of witnesses possessing relevant information and would require Plaintiffs to forgo testimony from many knowledgeable fact witnesses.

Further, Plaintiffs agreement to limit the number of depositions of Zuffa current employees to 25 (out of the 70) reasonably limits burden with respect to Zuffa. As noted, there are dozens of Zuffa employees possessing relevant information identified already. Discovery can reasonably be anticipated to identify others.

On the other hand, Defendants' proposal ignores the number of witnesses with relevant information and instead seeks to impose an arbitrary and unreasonably low limit on deposition discovery. Defendant proposes 150 deposition hours (equivalent to less than 22 seven-hour depositions) and offers no justification for such a limit. Perhaps Zuffa's proposal is simply a bargaining ploy: a low bid, even if unreasonable, will encourage a lower number of depositions. This sort of gamesmanship should have no place in the determination of the appropriate number of depositions. The appropriate number should be tied to the reasonable scope of discovery in this matter. Plaintiffs' proposal is.

LEXIS 23989, *45-46 (E.D. Pa. Nov. 29, 2004) ("The scope of document production in antitrust litigation is often quite expansive.").

JOINT STATUS REPORT

**Defendant's Proposal:** Zuffa's position remains unchanged from the previous Joint Status Report.  Dkt. 199 at 55.  Zuffa proposes that depositions be counted by hours, not deposition, and that each party be limited to 150 hours of depositions.  Plaintiffs note a number of parties and nonparties whom they believe will need to be deposed in this case, although many of these depositions will likely not require a 7-hour deposition.  The division of depositions by hours as opposed to number is an efficient way to balance the needs of the parties for conducting many depositions but also limiting the burdens of discovery by forcing the parties to manage their time wisely and focus on the key issues in the case.  This structure is becoming commonly used, including in this district.  *See, e.g.*, *Unwired Planet, LLC v. Square, Inc.*, No. 3:13-CV-00579-RCJ, 2014 WL 1159833, at \*5 (D. Nev. Mar. 17, 2014) (limiting both parties to seventy hours of fact witness depositions).

### 2.  Case Schedule (Joint Statement)

The parties have agreed to a substantial portion of a proposed case schedule and propose the following agreed deadlines:

| Case Event | Date |
|---|---|
| Parties Certify Substantial Completion of Document Discovery | June 1, 2016 |
| Deadline to Amend Pleadings | September 1, 2016 |
| Close of Fact Discovery | March 31, 2017 |
| Plaintiffs' Opening Expert Reports (class and merits) | April 28, 2017 |
| Last Day to Depose Experts Concerning Opening Reports | May 26, 2017 |
| Opposition Expert Reports | June 23, 2017 |
| Last Day to Depose Opposition Experts | July 21, 2017 |
| Reply Expert Reports | August 4, 2017 |
| Daubert Motions | September 1, 2017 |
| Class Certification Motion | September 1, 2017 |
| Daubert Opposition Briefs | October 27, 2017 |
| Class Certification Opposition Brief | October 27, 2017 |
| Daubert Reply Briefs | November 24, 2017 |
| Class Certification Reply Brief | December 15, 2017 |
| Class Certification Hearing | Court's Convenience |

**Plaintiffs' Proposal:** In addition, Plaintiffs propose that the Court include a Summary Judgment Motion briefing schedule, Pretrial Conference and Trial on the calendar as follows:

| Case Event | Date |
|---|---|
| Summary Judgment Motions | February 22, 2018 |
| Summary Judgment Opposition Briefs | March 23, 2018 |

| Summary Judgment Reply Briefs | April 20, 2018 |
| Pretrial Conference | May 2018 |
| Trial | July 2018 |

**Defendant's Proposal:** Because the contours of the case will be affected by whether the Court certifies a class and, if so, which one(s), Defendant proposes that the deadlines for further proceedings await the Court's resolution of the class certification motion. Defendant reserves its right to file one or more motions that would dispose of the case in whole or in part prior to the deadline.

Dated: December 4, 2015          BOIES, SCHILLER & FLEXNER LLP

By:    */s/ John F. Cove, Jr.*
*Attorneys for Defendant* Zuffa, LLC, d/b/a
Ultimate Fighting Championship and UFC

John F. Cove, Jr. (*Pro Hac Vice* granted)
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
Tel: (510) 874-1000
Fax: (510) 874-1460
Email: jcove@bsfllp.com

William A. Isaacson (*Pro Hac Vice* granted)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave, NW
Washington, DC 20015
Tel: (202) 237-2727
Fax: (202) 237-6131
Email: wisaacson@bsfllp.com

Donald J. Campbell #1216
J. Colby Williams #5549
CAMPBELL & WILLIAMS
700 South 7th Street
Las Vegas, Nevada 89101
Tel: (702) 382-5222
Fax: (702) 382-0540
Email: djc@campbellandwilliams.com
      jcw@campbellandwilliams.com

Richard J. Pocker #3568
BOIES, SCHILLER & FLEXNER LLP
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Tel: (702) 382 7300
Fax: (702) 382 2755
Email: rpocker@bsfllp.com

*Attorneys for Defendant* Zuffa, LLC, d/b/a Ultimate
Fighting Championship and UFC

JOINT STATUS REPORT

Dated: December 4, 2015

Respectfully Submitted,

By: ___*/s/ Michael Dell'Angelo*___

Michael Dell'Angelo
Eric L. Cramer
Patrick Madden
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
ecramer@bm.net
mdellangelo@bm.net
pmadden@bm.net

***Co-Lead Class Counsel:***

Don Springmeyer (Nevada Bar No. 1021)
Bradley S. Schrager (Nevada Bar No. 10217)
Justin C. Jones (Nevada Bar No. 8519)
WOLF, RIFKIN, SHAPIRO, SCHULMAN &
RABKIN, LLP
3556 E. Russell Road, Second Floor
Las Vegas, Nevada 89120
(702) 341-5200/Fax: (702) 341-5300
dspringmeyer@wrslawyers.com
bschrager@wrslawyers.com
jjones@wrslawyers.com

Joseph R. Saveri
Joshua P. Davis
Matthew S. Weiler
Kevin E. Rayhill
JOSEPH SAVERI LAW FIRM, INC.
505 Montgomery Street, Suite 625
San Francisco, California 94111
Telephone:      (415) 500-6800
Facsimile:       (415) 395-9940
jsaveri@saverilawfirm.com
jdavis@saverilawfirm.com
mweiler@saverilawfirm.com
krayhill@saverilawfirm.com

JOINT STATUS REPORT

Benjamin D. Brown
Richard A. Koffman
Hiba Hafiz
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., N.W., Suite 500, East Tower Washington, DC 20005
Telephone: (202) 408-4600
Facsimile:  (202) 408 4699
bbrown@cohenmilstein.com
hhafiz@cohenmilstein.com

***Additional Counsel for the Classes:***
Robert C. Maysey
Jerome K. Elwell
WARNER ANGLE HALLAM JACKSON & FORMANEK PLC
2555 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Telephone: (602) 264-7101
Facsimile: (602) 234-0419
rmaysey@warnerangle.com
jelwell@warnerangle.com


Eugene A. Spector
Jeffrey J. Corrigan
William G. Caldes
SPECTOR ROSEMAN KODROFF & WILLIS, P.C.
1818 Market Street – Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611
espector@srkw-law.com
jcorrigan@srkw-law.com
bcaldes@srkw-law.com


Frederick S. Schwartz
LAW OFFICE OF FREDERICK S. SCHWARTZ
15303 Ventura Boulevard, #1040
Sherman Oaks, CA 91403
Telephone: (818) 986-2407
Facsimile: (818) 995-4124
fred@fredschwartzlaw.com

*Attorneys for Individual and Representative Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Luis Javier Vazquez, Dennis Lloyd Hallman, Brandon Vera, Pablo Garza, Gabe Ruediger, Mac Danzig, Kyle Kingsbury and Darren Uyenoyama*

37

**ATTESTATION OF FILER**

The signatories to this document are myself and Michael Dell'Angelo, and I have obtained Mr. Dell'Angelo's concurrence to file this document on his behalf.

Dated: December 4, 2015

By:        */s/ John F. Cove, Jr.*

John F. Cove, Jr. (*Pro Hac Vice* granted)
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
Tel: (510) 874-1000
Fax: (510) 874-1460
Email: jcove@bsfllp.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that service of the foregoing **Joint Status Report** was served on December 4, 2015 via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

*/s/ Suzanne E. Jaffe*

Suzanne E. Jaffe