```
                  UNITED STATES DISTRICT COURT
                      DISTRICT OF NEVADA
                      LAS VEGAS, NEVADA


CUNG LE, et al.,              )
                             )  CASE No. 2:15-CV-1045-RFB-PAL
              Plaintiffs,     )
                             )
         vs.                  )
                             )
ZUFFA, LLC, et al.,          )
                             )
              Defendants.     )  Las Vegas, Nevada
                             )  December 8, 2015
_____ )  1:48:39 p.m.
And related parties and cases)
```

**HEARING ON MOTIONS**


THE HONORABLE PEGGY A. LEEN, PRESIDING
MAGISTRATE JUDGE OF THE U.S. DISTRICT COURT


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

---

**2:15-CV-1045-RFB-PAL**          **Le v. Zuffa**          **12/08/15**          **Status Conference**

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwranscripts.com

1

APPEARANCES:

**FOR THE PLAINTIFFS:**

    **DON SPRINGMEYER,** Esq.
    Wolf, Rifkin, Shapiro, Schulman & Rabkin
    3556 E. Russell Road, Second Floor
    Las Vegas, NV 89120-2234
    702-341-5200
    dspringmeyer@wrslawyers.com

    **MICHAEL DELL'ANGELO,** Esq.
    **PATRICK F. MADDEN,** Esq.
    Berger & Montague, P.C.
    1622 Locust Street
    Philadelphia, PA 19103
    215-875-3000
    mdellangelo@bm.net
    pmadden@bm.net


**FOR THE DEFENDANTS:**

    **JOHN F. COVE,** JR., Esq.
    Boies Schiller & Flexner LLP
    1999 Harrison Street, Suite 900
    Oakland, CA 94612
    510-874-1000
    jcove@bsfllp.com

    **MARCY N. LYNCH,** Esq.
    Boies, Schiller & Flexner LLP
    121 S. Orange Avenue, Suite 840
    Orlando, FL 32801
    407-425-7118
    mlynch@bsfllp.com

    **J. COLBY WILLIAMS,** Esq.
    Campbell & Williams
    700 S. 7th Street
    Las Vegas, NV 89101
    (702) 382-5222
    jcw@campbellandwilliams.com

    **KIRK D. HENDRICK,** Esq.
    Chief Legal Officer at Zuffa, LLC.
    2960 W. Sahara Avenue, #120
    Las Vegas, NV 89102
    702-221-4757
    khendrick@ufc.com

**2:15-CV-1045-RFB-PAL**          **Le v. Zuffa**          **12/08/15**          **Status
Conference**

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwranscripts.com          2

```
 1  LAS VEGAS, NEVADA                  TUESDAY, DECEMBER 8, 2015

 2              PROCEEDINGS BEGAN AT 1:48:39 P.M.

 3                         * * * * *

 4        THE COURT:  Good afternoon.  Please be seated.

 5        THE CLERK:  Your Honor, we are calling the status

 6  conference in the matter of Le versus Zuffa, LLC.  The case

 7  number is 2:15-CV-1045-RFB-PAL.

 8            Beginning with plaintiff's counsel, counsel, please

 9  state your names for the record.

10        MR. DELL'ANGELO:  Michael Dell'Angelo from the law

11  firm of Berger & Montague on behalf of the plaintiffs.

12        MR. MADDEN:  Patrick Madden from the law firm of

13  Berger & Montague on behalf of plaintiffs.

14        MR. SPRINGMEYER:  Don Springmeyer from Wolf Rifkin

15  for plaintiffs.

16        MR. WILLIAMS:  Good afternoon, Your Honor.  Colby

17  Williams, Campbell & Williams on behalf of the defendant,

18  Zuffa, LLC.

19        MR. COVE:  Morning, Your Honor.  John Cove from

20  Bois Schiller & Flexner on behalf of Zuffa, LLC.

21        MS. LYNCH:  Marcy Lynch from Bois Schiller &

22  Flexner on behalf of Zuffa, LLC.

23        MR. HENDRICK:  Good afternoon, Your Honor.  Kirk

24  Hendrick, Chief Legal Officer for Zuffa, LLC, UFC here in Las

25  Vegas.
```

2:15-CV-1045-RFB-PAL          Le v. Zuffa          12/08/15          Status
                                                                   Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwranscripts.com                    3

 1          THE COURT:  This is the time set for a status and

 2   dispute resolution conference.  I have reviewed your joint

 3   status report.  Before we address the areas of impasse for

 4   which you need judicial resolution, are there any preliminary

 5   matters that should be addressed?

 6          ATTORNEYS:  [No audible response].

 7          THE COURT:  Hearing none.  Let's start with the --

 8          MR. WILLIAMS:  Oh, Your Honor, actually I think

 9   there are -- there is one at least.

10          THE COURT:  Yes, Mr. Williams.

11          MR. WILLIAMS:  And that has to do with the issue

12   of custodians, and I'm setting aside for the time being the

13   issue of the legal custodians, but with respect to the, what

14   I'll just characterize as the general list of custodians.

15   The plaintiffs had put in their status report that they

16   believed that it would be reasonable for Zuffa to go ahead

17   and perform searches for those custodians that we've

18   identified that our preliminary review demonstrates that

19   there are no ESI documents for them, there's no emails or

20   custodian specific files on the shared drive.  And we had a

21   meet and confer about this on Monday where we indicated that

22   we may be willing to consider that further, and the only

23   thought being that it may make sense, if we were willing to

24   do that, that maybe we'd move that back in the queue so that

25   we focus on the people that we know have information first.

2:15-CV-1045-RFB-PAL          Le v. Zuffa          12/08/15          Status
                                                                        Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwranscripts.com                    4

1          And after conferring with the client, we are

2    willing to do perform that search.  So to the extent that

3    that helps address the issues regarding that category, I

4    wanted to get that out there first.

5          THE COURT:  So you're going to do a search to

6    confirm that you really don't have anything?

7          MR. WILLIAMS:  Well, that's right, Your Honor.  And

8    it sounds -- it does sound a little odd.  But I guess to the

9    extent that when you do finally begin doing the extensive

10   searching that's going to be required here, stuff always

11   turns up.  And so to the extent that there may be an

12   additional place where information for these people turn up

13   that isn't found in their emails or a custodian specific

14   folder for them on the shared drive, then we're willing to do

15   that.  So we agreed with plaintiffs on that.

16         THE COURT:  All right.  So --

17         MR. DELL'ANGELO:  Your Honor, may I just follow --

18         THE COURT:  Yes, Mr. Dell'Angelo.

19         MR. DELL'ANGELO:  -- follow on that?  So we did in

20   the status report suggest that it may be beneficial for the

21   parties to meet and confer, and we did so on Monday, as Mr.

22   Colby has indicated, or Mr. Williams has indicated.

23         And just to put a little bit of context on there.

24   Part of the issue, Your Honor, was with respect to 13 of the

25   proposed custodians, Zuffa had reported that there was no

2:15-CV-1045-RFB-PAL          Le v. Zuffa          12/08/15          Status
Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwtranscripts.com                    5

 1  email or custodian specific folders.  And what we had

 2  suggested, and as I understand that Zuffa has agreed to do

 3  is, as we get into the search for the rest of the custodians

 4  to just make a determination as to whether or not there are

 5  other custodian specific files or folders that are custodian

 6  folders or documents within the larger ESI set that they

 7  have.  They're not within the two reported sets which are

 8  ESI and custodian specific folders.  And then separately,

 9  outside of ESI, whether or not, for example, there are hard

10  copied documents that may still exist at the facility, you

11  know,  over at headquarters or something like that, or in

12  some archive facility, to just kind of close the loop on

13  those individuals as custodians.  That was our

14  recommendation and proposal and I think we have a general

15  agreement on that, so.

16          THE COURT:  Good.

17          So let's start with the issue with respect to the

18  identification of Zuffa custodians.  If I get the gist, the

19  parties have agreed on 16 custodians, however three of those

20  have no emails or ESI and custodian specific folders.  And

21  the parties are at odds because Zuffa proposes that you

22  perform a search and plaintiff make an election of two

23  additional custodians.  Plaintiffs want 44 additional -- or

24  44 total, 32 additional to the 30.  Sixteen that you've

25  agreed upon.  Correct?

2:15-CV-1045-RFB-PAL          Le v. Zuffa          12/08/15          Status
                                                                   Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwtranscripts.com                    6

1          MR. DELL'ANGELO:  I think there's -- there's some

2    context that we can provide around those numbers, Your Honor,

3    but in essence that is correct, yes.

4          THE COURT:  You want 44 custodians, they want 18.

5          MR. DELL'ANGELO:  That is correct, Your Honor.

6          THE COURT:  Okay.  That part I got now.

7          MR. DELL'ANGELO:  Okay.

8          THE COURT:  So let's talk about -- there has been a

9    great deal of information exchanged, although I understand

10   some of the latest round of information was that 15 page

11   single spaced letter that you got at 2:41 a.m. Eastern Time.

12         What -- let me hear from you concerning -- there's

13   a limit to how much time I'm going to have you do exchanges

14   about information before you get an ESI protocol in place and

15   actually search and produce documents.  So let me hear from

16   the plaintiffs about why it is that you need 44 custodians

17   and why you can't pare down that list.

18         MR. DELL'ANGELO:  Sure, Your Honor.  Thank you.

19         So you know, we're dealing, Your Honor, with a

20   fairly complex antitrust case with a 10 year relevant period,

21   pursuant to your last order.  The current employee count, as

22   we understand it from some public statements for the company

23   is that Zuffa has between 400 and 500 employees.  There are

24   also a substantial number of former employees, as the Court

25   has --

2:15-CV-1045-RFB-PAL          Le v. Zuffa          12/08/15          Status
Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwtranscripts.com                    7

1           THE COURT:  Have you ever take -- have you ever

2    been in a lawsuit in which you get to depose all the

3    employees of a company?

4           MR. DELL'ANGELO:  Not -- not --

5           THE COURT:  Not unless you have four or five, huh?

6           MR. DELL'ANGELO:  That's correct, Your Honor.

7           So what we did, as the status report indicates, and

8    I think the Court has recognized is that there was

9    considerable effort by the parties put into identifying who

10   the custodians are, their predecessors and successors, their

11   roles, their duties.  And what we were able to do as a result

12   of that process is reduce the potential universe of

13   custodians down to about 50.  And from that universe we

14   reduced it down to a proposal that is a total of 44.  Within

15   that proposal, Your Honor, however, 13 of those custodians

16   are ones about whom you just heard, for which there's no ESI,

17   there are no shared network documents.

18          So as a practical matter, subject to following up

19   information we may receive from Zuffa about those other

20   custodians, what we're really talking about is a universe of

21   31 custodians.

22          And if I may, Your Honor, we prepared a little

23   chart that I think would be helpful and instructive.  I sent

24   it to -- we prepared it yesterday, and this morning sent a

25   copy to the defendants this morning.  And if I may approach

2:15-CV-1045-RFB-PAL          Le v. Zuffa          12/08/15          Status
                                                                   Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwtranscripts.com                              8

1  and provide the Court --

2         THE COURT:  Certainly.

3         MR. DELL'ANGELO:  -- I think it would be helpful.

4         We have additional copies.  Do you all have copies?

5  Okay.

6         So we thought it might be helpful, Your Honor, to

7  put our proposal into context.  So we derived this chart that

8  you have titled "Plaintiff's Custodian -- Plaintiff's

9  Custodian Proposal" from the information that we got during

10 the meet and confer process.

11        So if you look at rows 1 through 13, that shows the

12 13 custodians for whom there's no currently reported ESI and

13 about whom the parties reported to have this agreement that

14 they reached as a result of the meet and confer that we had

15 suggested and had on Monday.

16        If you continue down the list -- so what that

17 leaves us is with a potential of 31 custodians, Your Honor.

18 And of those 31, if you look down the list, Your Honor, they,

19 to give you some perspective, the individuals who are shaded

20 are those -- are the 16 for whom Zuffa has already agreed to

21 include as custodians.  So that leaves 18 for whom there's no

22 agreement.

23        And then with respect to those 18 there are four

24 for whom we've proposed to further limit the searches, and

25 that's where you see the shading in yellow.  So row 16, Mr.

2:15-CV-1045-RFB-PAL        Le v. Zuffa        12/08/15        Status
Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwtranscripts.com                    9

 1  Evans; row 35, Ms. Poriadjian, row 37, Mr. Gold, and row 41,

 2  Mr. Zelaznik.

 3          As --

 4          THE COURT:  And those limitations have to do with

 5  the -- their activities internationally?

 6          MR. DELL'ANGELO:  Or other activities, Your Honor.

 7  So as we came to understand their roles and duties in the

 8  time periods that they held various positions, it was our

 9  conclusion, based on the information that we've been provided

10  that the periods shaded in yellow, the custodians probably

11  didn't perform duties that were relevant to the issues in the

12  lawsuit.  So, you know, in an attempt to achieve some further

13  efficiencies, we recommended that those periods not be

14  included for those particular custodians.

15          And I think it's notable because if you look at row

16  35 for Ms. Poriadjian, row 37 for Mr. Gold, and row 41 for

17  Mr. Zelaznik, those are three of the largest custodians.

18  We've sorted this by volume order, so there's some additional

19  efficiencies there.

20          But as you study this information, Your Honor, you

21  see from row 14 through row 21, each of those custodians are

22  those eight custodians.  Their volume is very small for a

23  custodian generally, and for -- certainly for a case like

24  this.  I mean collectively they have something like 87,000

25  email documents.  But it's important to even put the

2:15-CV-1045-RFB-PAL          Le v. Zuffa          12/08/15          Status
                                                                        Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwtranscripts.com                          10

1   information you have in this chart into perspective.

2           So as we understand it, if you look at the far

3   right column, "Email Time Period," what you see is the

4   collections that we've been provided and we don't -- it

5   wasn't clear to us the begin date.  But if you see the end

6   date it goes through, for almost all these custodians,

7   11/2015.  That's several months after the June 30, 2015

8   cutoffs the parties have agreed to.  So these counts are

9   already larger than they will be for purposes of searching

10  the custodians.

11          Then there's some other issues.  These documents,

12  as they reported to us, are not just raw emails, they're what

13  Zuffa has described as email documents.  So it's the email,

14  and as we understand it, all the documents that may be

15  attached to it.

16          So for example, if you look at row 14 for Mr.

17  Acquom [phonetic], 6,089 email documents is not even 6,089

18  emails, it's 6,089 email documents, so emails and

19  attachments.  So I think as you start to sort through these

20  numbers they'll get smaller.

21          There's also the issue of de-duplication.  My

22  understanding is some of this is de-duplicated but most of

23  it's not.  So when these are de-duplicated against one

24  another those numbers get even smaller, Your Honor.

25          And then as you continue down, if, for example, you

2:15-CV-1045-RFB-PAL          Le v. Zuffa          12/08/15          **Status Conference**

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwranscripts.com          11

1  jump to row 24 and you go through row 31, and most of those

2  custodians again are relatively small, having between 31 and

3  about 65,000 total email documents.  Again, for this period

4  that's longer than the actual agreed up discovery period.

5         There are really only five custodians, Your Honor,

6  that have -- that we're proposing that are not already agreed

7  to, but have larger -- what I would describe as larger email

8  box that say over 100,000 documents.  And again, there are

9  not only the limitations that I've talked about for three of

10 them, Mr. Poriadjian, Mr. Gold, Mr. Zelaznik, we've suggested

11 some other ways to limit them.

12        So I think in totality when you're really talking

13 about what's likely 31 custodians with ESI, the other

14 limitations that will naturally be imposed and reduce the

15 volume on these, it's actually quite a reasonable number,

16 also when coupled with a recognition of how small many of

17 these custodians are from an ESI perspective.

18        THE COURT:  All right.  In a nutshell your 44 isn't

19 really 44, it's 31, and de-duplication will limit further.

20 Plus your additional limitations and the difference between

21 the number of emails and the number of documents is going to

22 reduce the universe?

23        MR. DELL'ANGELO:  That's correct, Your Honor.  And

24 if you look at, you know, again rows 14 through 21, if you

25 add the volume of all those custodians, those eight

2:15-CV-1045-RFB-PAL          Le v. Zuffa          12/08/15          Status
                                                                      Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwranscripts.com                    12

1   custodians, if you get the 87,000 documents that have yet to

2   be de-duplicated that are reduced for time period, things

3   like demisting and other filtering techniques could be

4   applied.

5          You know, on average, it's about the size of one

6   custodian.  And, you know, some of this becomes particularly

7   important, Your Honor, because there's a fairly aggressive

8   document retention policy in place at Zuffa.  So certainly a

9   lot of these documents are kind of limited, appear to be

10  weighted toward the end of the period, so it sort of --

11  certainly makes it helpful to the extent that there are, you

12  know, older files imbedded within here that we're able to get

13  those as well.

14         But yes, I think I want to balance what really

15  becomes 31 custodians with ESI, Your Honor, after all these

16  techniques are applied, the volume that you see here will be

17  reduced substantially.

18         So I think -- thinking about this in terms of

19  numbers of pure custodians is a little bit of a red herring,

20  and on balance the proposal the actually quite reasonable.

21         THE COURT:  Counsel for Zuffa.  Who will be

22  addressing your client's position?

23         MR. WILLIAMS:  Your Honor, I'll handle this

24  category.

25         THE COURT:  Mr. Williams.

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwtranscripts.com          13

1              MR. WILLIAMS:  Thank you, Your Honor.  Colby

2    Williams on behalf of Zuffa.

3              Your Honor, when you're dealing with ESI, as you

4    know all too well, there's a tendency to focus on numbers,

5    and I understand that, and it's natural.  And we've just

6    heard how the numbers that were proposed in plaintiff's

7    demonstrative exhibits are going to go down.  And I think

8    there's a reason that they have pursued that theme, and it's

9    because they didn't include the totals on these, which we

10   put together while -- after we got this this morning and so

11   let's focus a little bit on the numbers because I think

12   they're going to change the other direction as well, and

13   they're going to.  So while we've heard how they can come

14   down.  There's also other ways they're going to go up.

15             The first example is that one of the custodians

16   that has now been agreed upon is John Mulkey.  John Mulkey is

17   our Chief Financial Officer.  John Mulkey's email volume is

18   not included on here because he was a late add.  Originally

19   there was a dispute whether he should be included or not,

20   and we ultimately agreed that -- agreed that he will be

21   included.  And we haven't gotten a specific number.  But the

22   preliminary number for his emails looks like they're

23   somewhere on the order of 150,000.

24             So in addition to that, when you get beyond the

25   other categories beyond email, when we're talking about

2:15-CV-1045-RFB-PAL          Le v. Zuffa          12/08/15          **Status**
                                                                                  **Conference**

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwranscripts.com                          14

1    network volumes and things of that nature, we've talked a

2    little bit in previous status checks and reports, and a

3    little bit today about custodian specific files on the shared

4    drive.

5           Well, there's also a group shared drive with -- we -

6    - you know, we're going to go through it and we're going to

7    see what's on it.  But again, that appears to contain 353,000

8    files, 1.89 terabytes of data that we're going to have to go

9    through.

10          And so when you compare what we've proposed versus

11   what the plaintiffs have proposed in total numbers, so if we

12   talk -- and this excludes Mr. Mulkey, who I just referenced,

13   the total email volume that we are proposing for our

14   custodians is 980,958, whereas when you look at what the

15   plaintiffs have proposed, that number jumps to 1,932,553.

16          And just because email documents may include

17   something beyond email, the attachments for example, it

18   doesn't mean there's much less burden involved.  They still

19   need to be collected; they still need to be reviewed.  So --

20          THE COURT:  Have you done any surveying or

21   preliminary sampling to determine what percentage are going

22   to be called out in the de-dup [sic] process?

23          MR. WILLIAMS:  Your Honor, the answer to that

24   question is no.  Our vendor is actually onsite this week

25   engaging in activities, you know, in conjunction with this

2:15-CV-1045-RFB-PAL          Le v. Zuffa          12/08/15          **Status**
                                                                                                                   **Conference**

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwtranscripts.com                                                                    15

1   case.

2          But it's important for us to get an idea from the

3   Court who the custodians are going to be so we can collect

4   the data and get it uploaded to the review platform.  And

5   once it's there we can then engage in a more specific

6   analysis of the data, including the de-dup process.  So I

7   don't have an answer for the Court at this point because we

8   have to get this initial step figured out first.

9          So, Your Honor -- and with respect to -- let me --

10  I'm going to pull out an example of a custodian where there

11  is no agreement and there's a substantial number of emails,

12  and that's Mr. Marc Ratner.  Marc Ratner has something on

13  the order of 125,000 emails.  Mr. Ratner is a senior VP and

14  head of government affairs for us.  What Mr. Ratner does is

15  he -- you may recall, Mr. Ratner was the former Executive

16  Director for the Nevada State Athletic Commission here for a

17  number of years.  He's been working at Zuffa for I think the

18  better  part of a decade.  And what Mr. Ratner does is he

19  goes around across the country and lobbies various government

20  bodies with respect to the legalization of MMA, and that's

21  what he does.

22          That doesn't have anything to do with the anti-

23  competitive claims that are at issue in the complaint.  And

24  so while plaintiffs may say well, it's just adding  another

25  one in there.  True, but there has to be proportionality,

2:15-CV-1045-RFB-PAL          Le v. Zuffa          12/08/15          Status
Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwtranscripts.com          16

1  there has to be reasonableness, and they're not going to get

2  anything from Mr. Ratner, and there are others that fall into

3  that category.

4        So we submit that we've -- you know, we've made a

5  reasonable proposal, we've said 16 are agreed to, pick two

6  additional others.  But it's important to remember, Your

7  Honor, we've also said two isn't a firm number.  If you come

8  to us and you say you know what, in addition to those 18 we

9  want these three, then we're willing to consider it and

10  probably do it, Your Honor.  But 44 or 31, whatever the

11  number really is, as they characterize it, is just too much.

12        THE COURT:  Well, they were asking for basically 15

13  more than you've agreed to.  Actually 13 more than you've

14  agreed to because you've agreed to 16 plus two.

15        MR. WILLIAMS:  That's right, Your Honor.  That's

16  right.  So, unless the Court has any other questions on this

17  issue I'll sit down.

18        THE COURT:  Nope.

19        We'll allow the plaintiffs to select an additional

20  six beyond the 16 that have been agreed to for custodians,

21  unless, for good cause shown, there is some essential person

22  that you haven't been able to identify at this stage with the

23  information that you have, I'll leave the door open, but

24  you're going to get an additional six.

25        MR. DELL'ANGELO:  Thank you, Your Honor.

2:15-CV-1045-RFB-PAL        Le v. Zuffa        12/08/15        **Status Conference**

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwranscripts.com                    17

1          THE COURT:  Okay.

2          MR. DELL'ANGELO:  May I just correct one issue for

3    the record before we leave this subject?  I think it was

4    indicated that Mr. Mulkey was a late add, and I would

5    respectfully disagree with that.

6          If I could direct the Court's attention to the

7    prior joint status report at Docket 199 at ECF page 39.

8          THE COURT:  Late is relative.  I understood that.

9    Yes.

10         MR. DELL'ANGELO:  Okay.  Thank you, Your Honor.

11         THE COURT:  The next issue has to do on the

12   proposal concerning the limitation on searches for the legal

13   department custodians for specific individuals.  The issue

14   here is the defendant's propose to limit the collection,

15   search and review of potentially responsive documents for

16   these four individuals, Bellamy, Hendrick,  Mersch and Long

17   to external communications and plaintiff's propose that the

18   defendants be required to collect, search  and review for

19   potentially responsive documents, both  internal and

20   external.

21         So let me hear from the party proposing the

22   limitation and why a limitation is reasonable?

23         MR. WILLIAMS:  Sure, Your Honor.

24         THE COURT:  Again, this is Mr. Williams for the

25   record.

2:15-CV-1045-RFB-PAL          Le v. Zuffa          12/08/15          Status
                                                                    Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwranscripts.com                    18

1        MR. WILLIAMS:  Yes.  Thank you, Your Honor.  Colby

2  Williams on behalf of Zuffa.

3        Your Honor, I think it's important to clear up the

4  argument and the theme that you see in plaintiff's papers

5  that we're asserting a blanket privilege with respect to

6  these custodians.  We aren't.  So let me break it down a

7  little bit.

8        With respect to Lawrence Epstein and Sonja

9  McKinney, because of the document retention policy they

10  don't have a lot of information, so we've excluded that --

11  well --

12        THE COURT:  So you're not giving up much --

13        MR. WILLIAMS:  Right.  Right.

14        THE COURT:  -- so it's okay with you.

15        MR. WILLIAMS:  Understood, Your Honor.  I get it.

16     [Laughter].

17        MR. WILLIAMS:  So I understand that's not a big

18  gift there, but I just wanted to go through the players.

19        So the next categories that we have, we've got

20  Kirk Hendrick.  Kirk -- Mr. Hendrick did serve a dual role,

21  plaintiffs are absolutely right about that.  He started off

22  as general -- I don't know if it was general counsel, but he

23  was lead counsel in-house.  His duties then changed to Chief

24  Operating Officer.  And then in late 2012 he became --

25  excuse me, Chief Operating Officer, he's now chief legal

2:15-CV-1045-RFB-PAL          Le v. Zuffa          12/08/15          Status
Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwranscripts.com                    19

1  officer.

2         Let me clarify what our position is with respect to

3  Mr. Hendrick.  During the time that he was chief operating

4  officer we're not proposing any sort of limitation.

5  Obviously he was not functioning in his capacity as counsel

6  then, and so I want to clarify, to the extent it isn't

7  already, that we're not -- the proposal that we're offering

8  here is not including the time frame when he was COO.

9         With respect though when he's chief legal officer

10 and then also with Tracy Long, who has been a long time

11 employee in the legal department.  Mr. Mersch, who was former

12 associate general counsel in the legal department.  And we

13 have one other who falls under this category.

14        The proposal that we're making is that with respect

15 to communications that occurred with third parties, which is

16 going to get at the heart of what plaintiff's claims are.

17 You know, the communications with fighters and negotiating

18 their contracts.  You know, we're going to produce that

19 stuff.  The limitation we'd seek to include is that for

20 purely internal communications that we don't have to review

21 it, insofar as we're reviewing the custodian files for the

22 people in the legal department.  But that is not tantamount

23 to a blanket assertion of privilege for the following

24 reason.

25        To the extent that an email is sent to Mr. White

2:15-CV-1045-RFB-PAL          Le v. Zuffa          12/08/15          Status
Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwtranscripts.com                    20

1  or Mr. Fertitta, when we search those custodian files and

2  they've received an email from someone in the legal

3  department, it's going to have to be reviewed and logged.

4  We're going to do that.

5        But to the extent that we're reviewing the hundreds

6  of thousands of emails for the legal custodians, our proposal

7  is that it's overly burdensome for us to review and log all

8  of those.  Now I understand not all of them necessarily would

9  be a privileged communication, but we believe the vast

10 majority of them will.  And that plaintiffs will still be

11 able to get the information they're entitled to by -- through

12 our proposal.  So that's where it comes down.

13       With respect to Mr. Bellamy, we're already

14 producing Mr. Epstein, Ms. McKinney, Kirk Hendrick, Tracy

15 Long, Michael Mersch, that's five people within the legal

16 department.  Mr. Bellamy negotiates contracts, is the

17 primary thing that he does.  To the extent that he's not out

18 there pitching the attractiveness of a particular business

19 deal or anything like that, he's the nuts and bolts of

20 putting together a transaction.

21       The plaintiffs are going to get the subject

22 contract that resulted, you know, from the negotiations that

23 took place.  Mr. -- going through hundreds of thousands of

24 emails that are in Mr. Bellamy's files aren't going to give

25 the plaintiffs anything else.  And to the extent that we're

2:15-CV-1045-RFB-PAL        Le v. Zuffa        12/08/15        Status
                                                                   Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwtranscripts.com                    21

1  already doing it for the other people in the legal

2  department, we think he should be excluded.  But to the

3  extent the Court rules he is included in the mix, then we

4  obviously believe he should be subject to our limitation.

5          THE COURT:  Address the plaintiffs' arguments that

6  they don't expect a document by document privilege log.  And

7  there are other tools that you can use to identify likely

8  privileged documents and employee search techniques that

9  limit what would be truly privileged.  For example, you

10  could run a search for all of the names of all of your

11  outside counsel and eliminate all communications between

12  these individuals and the folks that you know are outside

13  counsel.

14          MR. WILLIAMS:  Right.  Well, Your Honor, I think

15  that, you know, to the extent we -- that would deal with

16  communications with third parties.  And our proposal on that

17  is that, to the extent we've communicated with third parties,

18  other than our outside counsel, then we're going to produce

19  those.

20          THE COURT:  That part I understand.

21          MR. WILLIAMS:  Okay.

22          THE COURT:  But you're talking about out -- outside

23  counsel is something that would be a relatively easy thing

24  for you to identify --

25          MR. WILLIAMS:  Right.

2:15-CV-1045-RFB-PAL          Le v. Zuffa          12/08/15          Status
Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwranscripts.com          22

1            THE COURT:  -- one would think, in terms of

2    identifying those communications are most probably absolutely

3    privileged.

4            MR. WILLIAMS:  Mm-hmm.

5            THE COURT:  There are a series of techniques, it

6    would seem to me, that you can employ to lessen the burden on

7    what you fear doing, which is, you know, a document by

8    document.  You know, for example -- and privileged

9    preparation or document by document review.

10           For example, you could identify in some manner a

11   litigation file of so and so re: this case or that case --

12           MR. WILLIAMS:  Mm-hmm.

13           THE COURT:  -- this litigation, that litigation

14   case to cull down the universe because what I perceive is the

15   difficulty of your proposal is there may very well be some

16   sensitive information that were exchanges among the legal

17   custodians --

18           MR. WILLIAMS:  Mm-hmm.

19           THE COURT:  -- that are relevant and discoverable

20   in this litigation that are not going to be captured in your

21   outside only or custodian search.

22           MR. WILLIAMS:  Yeah.  Your Honor, I need to think

23   a little bit about what -- and make sure I understand.

24           So with respect to the -- what we're proposing to

25   put the limit on are the internal communications.

2:15-CV-1045-RFB-PAL          Le v. Zuffa          12/08/15          Status
                                                                  Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwranscripts.com                            23

```
 1                THE COURT:  That I understand.

 2                MR. WILLIAMS:  Okay.

 3                THE COURT:  And I'm saying but there may be --

 4                MR. WILLIAMS:  And I -- I understand the Court gets

 5     it.

 6                THE COURT:  -- very well be some very sensitive

 7     internal communications that would be responsive and

 8     discoverable --

 9                MR. WILLIAMS:  Mm-hmm.

10                THE COURT:  -- among the legal custodians.

11                MR. WILLIAMS:  Among the legal custodians.

12                THE COURT:  Correct.

13                MR. WILLIAMS:  Okay.  So we're excluding -- you

14     know, to the extent that there's a communication from a

15     legal custodian to a non-legal custodian that would get

16     picked up and if privileged, logged when the non-custodian --

17                THE COURT:  With the limitation of the number of

18     custodians I'm allowing.

19                MR. WILLIAMS:  Correct.  Correct, Your Honor.

20                So with respect to, you know, purely internal

21     communications among legal custodians, to be perfectly

22     candid with the Court, I would have to defer to someone

23     that's more, you know, experienced with respect to the

24     technique, the actual technology that could be employed to

25     potentially limit that search.  As I sit here, you know, I
```

2:15-CV-1045-RFB-PAL        Le v. Zuffa        12/08/15        Status
Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwranscripts.com                 24

1   can't clarify for the Court whether there's an ability to do

2   that or not, that would make sense.  From my own experience,

3   you know, having represented Zuffa from, you know, 2007 I

4   think, you know, the legal department, to the extent that --

5   I mean there's a myriad of legal issues that come up, and

6   they aren't just limited to, for example, you know, a

7   particular piece of litigation.

8           You know, you have fighters who get into trouble

9   all over, or you have things that happen that require, you

10  know -- you know, a lot of communications that I think it

11  would be -- you know, it's going to be tough to just like

12  categorize this legal issue or that legal issue to

13  potentially exclude it.  That's just my, you know, off the

14  head observation.

15          Now I would defer, to the extent that there's

16  something that, you know, would accommodate what the Court

17  suggests.  I mean I'll certainly confer --

18          THE COURT:  Well, these are suggestions that

19  plaintiffs have made --

20          MR. WILLIAMS:  Mm-hmm.

21          THE COURT:  -- and they are suggestions that have

22  been employed in other cases that I've shepherded.

23          MR. WILLIAMS:  Mm-hmm.

24          THE COURT:  There are techniques that can be used

25  when you have files that are likely to contain a high

2:15-CV-1045-RFB-PAL        Le v. Zuffa        12/08/15        Status
                                                                    Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwtranscripts.com                    25

1  percentage of privileged materials.

2          MR. WILLIAMS:  Right.

3          THE COURT:  But you really haven't explored that

4  with your consultant to determine if that's feasible or to --

5          MR. WILLIAMS:  Speaking for myself, Your Honor.

6  When I sit down and we'll listen to plaintiffs' counsel,

7  I'll determine whether my representation to the Court in that

8  regard is -- it's certainly accurate as far as I'm concerned,

9  but to the extent we have additional information I can

10  provide --

11          THE COURT:  All right.

12          MR. WILLIAMS:  -- I'll get back up here and let you

13  know what it is.

14          THE COURT:  All right.  Mr. Dell'Angelo.

15          MR. DELL'ANGELO:  Your Honor, Michael, Dell'Angelo.

16  I think I can brief -- be brief, Your Honor.

17          The four custodians at issue, Mr. Bellamy, Mr.

18  Mersch, Mr. Hendrick and Ms. Long, are not legal custodians

19  who are theoretical, or were chosen in a vacuum.  With

20  respect to three of them in particular, Bellamy, Mersch and

21  Hendrick, they were all identified in response to

22  plaintiffs' interrogatory number 6 that asked for people who

23  had responsibilities with respect to specific issues that

24  were --

25          THE COURT:  No, I understand that.

2:15-CV-1045-RFB-PAL          Le v. Zuffa          12/08/15          Status
Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwtranscripts.com          26

1            MR. DELL'ANGELO:  Okay.

2            THE COURT:  And they acknowledge that these are --

3            MR. DELL'ANGELO:  Yeah.  Right.

4            THE COURT:  -- important people that you need

5      discovery about.

6            MR. DELL'ANGELO:  Okay.

7            THE COURT:  Their comments are, you're going to get

8      what you need and what's reasonable and proportional to the

9      case, between a combination of the responsive documents from

10     the custodians that you're going to get, plus the outside

11     external communications with all the people that, you know,

12     that have to do with the issues that are involved, the

13     promoters, the fighters.  You're going to get all of that,

14     so you're essentially getting what you need anyway and

15     saving them the huge cost and expense of reviewing hundreds

16     and hundreds of thousands of likely privileged documents.

17            MR. DELL'ANGELO:  So I think, Your Honor, that

18     view misses the point for a couple of reasons that we just

19     heard.

20            The first is that when you consider that we're

21     dealing with four custodians for whom you have the volume in

22     that chart that we provided to you in connection with the

23     larger custodial discussion, you can see that the volumes

24     are not -- are not vast for these four, even collectively.

25     Then there are the limitations with respect to the time

2:15-CV-1045-RFB-PAL        Le v. Zuffa        12/08/15        Status
Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwtranscripts.com        27

1  period that we talked about, then it was time period being

2  longer.

3           But all of these custodians had duties that were

4  both legal and non-legal.  And with respect to Mr. Bellamy,

5  Mr. Mersch and Ms. Long, they were all very clearly

6  overlapping.  They were serving both legal and non-legal --

7  in non-legal and legal capacities simultaneously.  And what

8  we don't know if what the de-duplicated amounts look like,

9  what percentage of their time was spent performing a legal

10 function versus a non-legal function, and therefore from

11 which you might derive some sense of what the volumes of the

12 emails at issue might actually be, and what percentage of

13 those emails are internal versus external.

14          So what is being proposed is a blanket assertion of

15 privilege, as we understand it, for any internal

16 communications with any custodian that's not one of the other

17 agreed upon custodians subject to your order.  And that I

18 think clearly excludes a lot of the communications that these

19 custodians would have had internally.  And this is where it

20 gets to the nub of the issue.

21          What you see in the status report and what you

22 just heard is that plaintiffs will get -- that Zuffa's

23 proposal will give plaintiffs the communications they need

24 with the fighters, right, and with third parties that are

25 about the issues in the case.  But what Zuffa's proposal

2:15-CV-1045-RFB-PAL          Le v. Zuffa          12/08/15          **Status
Conference**

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwranscripts.com                    28

1   does is that it excludes all of the communications about

2   those dealings.  The communications by these individuals who

3   held titles like Senior VP of Athlete Relations, et cetera.

4   It excludes all of the internal communications about, you

5   know, the external communications; internal communications

6   about the communications with the fighters, et cetera.

7           And I think, you know, in a case like this, those

8   are, as I think the Court recognized, often the really

9   critical documents that just get lost in this process.  And

10  as the Court also recognized, I think there are a number of

11  ways that the parties can work together and sort of limit the

12  burden which hasn't really been demonstrated in any sort of

13  quantifiable way.  And we proposed a number of those, and

14  they simply -- and you know, unfortunately as yet haven't

15  been accepted, but I believe that we can work together to

16  find some way to make our proposal reasonable and workable.

17          THE COURT:  Mr. Williams, anything you want to add?

18  Any additional intelligence to the mix?

19          MR. WILLIAMS:  Your Honor, I came up a little

20  short, but I don't have anything in the way of specific

21  techniques that can be employed by our vendor.  But what I

22  -- what I would offer to the Court and to counsel is that to

23  the extent that there is a specific suggestion, and I don't

24  know that I've heard it, but with respect to how this can be

25  done to lessen the burden and proportionality, then we're

2:15-CV-1045-RFB-PAL          Le v. Zuffa          12/08/15          Status
                                                                              Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwtranscripts.com                              29

 1  happy to consider it and meet and confer on that issue.

 2          I think the burden, again, just to address that

 3  point, has been shown.  I mean we're talking about over 560

 4  some odd thousand emails.  So -- and I understand we haven't

 5  gotten them on the platform and that number may shift as a

 6  result of de-duplication and things, but it's still a

 7  significant number.  And we suggest as, you know, currently

 8  proposed by plaintiffs, it's just not proportional to the

 9  burden and the needs of this case, so.

10          THE COURT:  I'm not going to allow the defendants

11  to not produce internal communications among the legal

12  custodians that are at issue in this case.  I will allow you

13  to come up with a reasonable proposal to limit the search

14  methodology in a way that is likely to isolate and prohibit

15  you from doing a document by document review of likely

16  privileged materials.

17          Though suggest you talk with your consultant about

18  that and how to go about -- your client is in the best

19  position to know what kind of documents you have, how they're

20  organized, and provide the information the consultant will

21  need to come up with a proposal that limits the burden.  But

22  I agree with counsel for plaintiffs that some very highly

23  probative and sensitive information is likely to be in those

24  materials that are not necessarily privileged and may have

25  been shared with a non-custodian.

2:15-CV-1045-RFB-PAL          Le v. Zuffa          12/08/15          Status
                                                                  Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwtranscripts.com                          30

1          So let me shift to the issues concerning the

2   identity class/about class.  And the plaintiffs want me to

3   revisit this issue, saying it wasn't specifically addressed.

4          When I limited the files you were going to get --

5   the contract files you were going to get, and the defendants

6   are telling me you're basically trying to get another bite at

7   the apple 'cause you didn't like the first ruling.

8          So let me put you on the hot seat, Mr.

9   Dell'Angelo.

10         MR. DELL'ANGELO:  With pleasure, Your Honor.

11  Michael Dell'Angelo.

12         I don't see this as revisiting the issue, Your

13  Honor.  So if you look at the last status conference, or

14  status report, there was a discussion about contracts, and

15  there was a whole separate issue about statute of limitations

16  and how that had an interplay with, you know, certain swaps

17  of documents.

18         And as the Court may recall, we were quite limited

19  in our time last time and you asked us to get to some of the

20  most important issues.  And one of the -- one of the several

21  issues that we didn't reach was how the statute of

22  limitations argument, defendants -- or defendant has raised

23  has an interplay here.

24         So here's how we understood the issue.  That, you

25  know, as the Court I think is aware that there's a bout class

2:15-CV-1045-RFB-PAL          Le v. Zuffa          12/08/15          Status
                                                                    Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwranscripts.com                31

 1   and an identity class.  The bout class in sum, is all

 2   fighters who fought a bout during a bout -- during the class

 3   period.  And the identify class are fighters whose identity

 4   was used by Zuffa during the class period.  Those are really

 5   two mutually exclusive groups of people because, for example,

 6   you may have members of the identity class who stopped

 7   fighting before the class period began but whose identity

 8   continued to be used through that period.

 9        So what you end up with is the sort of delta of

10   identity class members who don't fall within the bout class.

11   And all we're really asking for is to make sure that we know

12   who those people are, that is, you know, know who the

13   members of the identity class are.  And to the extent that

14   contracts and contract files for the class members will be

15   produced, that we get for the identify class what we're

16   getting for the bout class, which is their contract files and

17   their contract; and that members of the identity class who

18   don't also fall within the bout class don't get lost in the

19   shuffle here and excluded from discovery.

20        So we can quibble with Zuffa about whether or not

21   we're revisiting the issue, whether or not it was covered,

22   but the reality is it's a very important issue because lost

23   in the shuffle here will be a portion of the identity class

24   for -- that's defined in the complaint that it was as

25   sustained, and it will be lost in the discovery process.

2:15-CV-1045-RFB-PAL        Le v. Zuffa        12/08/15        **Status Conference**

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwranscripts.com                    32

1          And, you know, there is clearly an issue that Zuffa

2    has raised with respect to legal issues that they've raised,

3    with respect to whether or not members of the identity class

4    who didn't sign a contract or fight a bout during the class

5    period have a claim.  I think we -- Zuffa has acknowledged

6    that from their perspective that signing a contract is the

7    injury.  We think that the injury is also every time the

8    identity is used, and that happens during the class period.

9          So that -- but my view is -- or our view, Your

10   Honor, is that that -- that disagreement shouldn't just drive

11   discovery as to whether or not the contracts, contract files

12   and other documents from identify class members who don't

13   fall within the bout class shouldn't be produced.

14         THE COURT:  And the legal -- isn't it the legal

15   issue whether the identity class, what's the applicable

16   period of time?  What's the applicable statute of limitation

17   for the identity class?  Is it -- Zuffa says it's -- if they

18   didn't sign a contract within the applicable class period

19   they're out of luck.  You say if -- doesn't matter when they

20   sign their contract, if their image was exploited during the

21   class period they've been injured and they have a right to

22   recover.

23         MR. DELL'ANGELO:  That's correct, Your Honor.

24         THE COURT:  And you want to make sure that you have

25   the ability to identify any of those people who may not be

2:15-CV-1045-RFB-PAL          Le v. Zuffa          12/08/15        Status
                                                                          Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwranscripts.com                          33

1  members of the bout class but may -- may have had their

2  identity exploited during the class period.

3          MR. DELL'ANGELO:  That's exactly correct, Your

4  Honor.

5          THE COURT:  Why isn't this a matter that should be

6  resolved as a matter of law and a sequencing issue with

7  respect to need for future discovery?

8          MR. DELL'ANGELO:  So we don't have any issue with

9  this Zuffa's defense, if you will, being resolved as a

10 matter of law, but it's incumbent upon Zuffa to raise that

11 issue.

12         I mean, for example, that issue could have been

13 raised at the motion to dismiss stage on a -- in a 12(c)

14 motion, right?  But it wasn't.  And so what's happening is,

15 we're now months and months into the case.

16         THE COURT:  They're not filing a motion but they

17 want to preclude you from getting the discovery.

18         MR. DELL'ANGELO:  That's correct, Your Honor.

19         THE COURT:  Okay.

20         MR. DELL'ANGELO:  So one of these two things has

21 to happen, and the reality is there's a group of class

22 members -- identity class members for whom discovery is

23 being lost and who are being left behind.  And then this

24 begs the next question, you know, as we get into the

25 contract files, as we get into the electronic files, all

2:15-CV-1045-RFB-PAL          Le v. Zuffa          12/08/15        Status
                                                                    Conference

                        NW TRANSCRIPTS, LLC - Nevada Division
                        P.O. Box 33, Issaquah, Washington 98038-0002
                        (208) 989-3455 - gayle@nwtranscripts.com          34

1  those sorts of things, because this group of plaintiffs get

2  left behind only for us to find out, you know, what we think

3  the law is quite clear on with respect to continuing

4  violations, that these members of the identify class are in

5  the class and that they do have a continuing harm and that

6  the statute hasn't run against them.  Do we then need to

7  sort of go back and revisit all of this discovery issue,

8  which becomes I think far more inefficient than just getting

9  it now.  But either way, I think it needed to have been and

10  should be raised.  And given the status quo, you know, we are

11  entitled to and should receive the discovery.

12          THE COURT:  Defense counsel, Mr. Cove.

13          MR. COVE:  Thank you, Your Honor.  John Cove for

14  Zuffa.

15          We believe the issue was resolved at the last

16  hearing.  I don't think I need to belabor that point.  We

17  think the issue is a clear question of law, which is whether

18  the claim of a plaintiff who is allegedly injured out --

19          THE COURT:  Then why haven't you raised it?

20          MR. COVE:  Well, there are some facts that have to

21  be submitted in connection with a motion for summary

22  judgment as to -- as to who did what when.  And we can raise

23  it as soon as possible.  We haven't done it yet.  There are

24  some issues that we hadn't anticipated that they raised in

25  the last joint status report as to the legal standards that

2:15-CV-1045-RFB-PAL          Le v. Zuffa          12/08/15          **Status Conference**

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwtranscripts.com          35

1   would apply, and I think we need to analyze whether there are

2   facts -- we don't agree with their legal analysis, but

3   whether there are facts that are necessary to deal with

4   those.  But we think the --

5          THE COURT:  And if there are then you need a

6   developed record in order to get a decision as a matter of

7   law.

8          MR. COVE:  Right.  But I think we have a -- we can -

9   - we have not gotten any discovery from them.  I think we  can

10  file a motion for summary judgment and they can file a Rule

11  56(f) opposition if they think --

12         THE COURT:  Which is going to say they need the

13  identity of the fight --

14         MR. COVE:  Well, this would not be a motion for

15  summary judgment as to the class, it would be a motion as to

16  summary judgment as to particular named plaintiffs who -- or

17  currently named plaintiffs who fit in this factual situation.

18  We couldn't -- we couldn't do anything with regard to the

19  class before we have a certified class.  But the --

20  fortunately we have a plaintiff -- we have plaintiffs, Mr.

21  Quarry did not -- neither fought nor signed a contract within

22  the statute of limitations period, and two of the others

23  signed a contract before but fought in the statute of in

24  limitations period.  So there's a factual scenario to file a

25  motion for summary judgment as to both of those categories.

2:15-CV-1045-RFB-PAL        Le v. Zuffa        12/08/15        Status
                                                              Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwtranscripts.com                      36

1  We think the legal analysis is the same but it captures -- it

2  will capture -- it will set a precedent for everybody else in

3  the class or the punitive class that falls in those

4  categories that did not sign a contract within the statute

5  of limitations period.

6          We think the law is quite clear that what matters

7  is when you are injured, the cases that they cite in their

8  brief all deal with conduct of the defendant that occurred

9  before the limitations period and allegedly caused an injury

10 in the limitations period, and then there's an issue of

11 whether there was a continuing violation or not.

12         We don't have that scenario here.  We have an

13 injury, you know, regard -- accepting that they, for the

14 sake of argument, they've alleged a continuing monopolization

15 violation.  That is not going to extend the statute for an

16 injury that occurred beforehand, before the statute of

17 limitations period.

18         So -- and there's a --

19         THE COURT:  Correct.  But if they don't know who

20 all these people are --

21         MR. COVE:  Well, we are going to identify -- the

22 material that we provide will provide all the identities of

23 everybody who fought for the UFC.  They will get that

24 information.  We've told them they will get that

25 information.

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwranscripts.com

1          So, and there's an additional complication, or

2     initial issue I want to raise that even accepting their

3     theory, they allege that the monopolization scheme began in

4     2005.  So a plaintiff who signed a contract before 2005 would

5     not have been injured by any anti-competitive conduct, even

6     if Zuffa later used that person's rights in the limitations

7     period.  Now that person doesn't have any standing to assert

8     a violation or an injury that occurred to somebody down the

9     road.

10          You know, according to their theory of the

11     complaint, the market was competitive from 2000 and 2005,

12     and those people, if they signed a contract, regardless of

13     whether they're allegedly injured later, couldn't possibly be

14     in the class.

15          Similarly, Zuffa has purchased fight libraries

16     from certain promoters.  Those libraries are replayed on

17     Zuffa's website.  Those fights are replayed, you know, under

18     the rights that were granted to the original promoter and

19     then that Zuffa acquired.  Clearly there was no anti-

20     competitive conduct with regard to the original promoter, and

21     those plaintiffs don't have any standing either.

22          So we think that this thing can all be resolved as

23     a matter of law, and can start to narrow the case very, very

24     quickly here.

25          What they've suggested they want to do is try to

2:15-CV-1045-RFB-PAL          Le v. Zuffa          12/08/15          Status
Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwtranscripts.com                    38

1  figure out somehow, how every time a Zuffa -- excuse me,

2  every time a fighter's name or likeness was appeared or used

3  in any promotional material in any way at any time by Zuffa,

4  any time that occurred, that's impossible to do.  It's

5  incredibly burdensome to attempt to do, so we think it's very

6  important right now to narrow the --

7        THE COURT:  But if I understand you correctly

8  you're saying you're going to give them the category, such

9  as the merchandising --

10        MR. COVE:  Yes.

11        THE COURT:  -- data and the video imaging data?

12        MR. COVE:  Well, we -- no, it's not video.  I'm

13  sorry.  It's not video imaging data.  There's a video game

14  and certain athletes were in it and, therefore, there are

15  clear records that were kept in the normal course of business

16  as to who was in it and who got paid what under that, and the

17  same with merchandising deals.

18        So those discrete kind of arrangements we can

19  provide that data and we are going to provide that data.  The

20  problem is every time a video came up on the website, or

21  every time somebody's picture came up when they were

22  advertising a fight between, you know, Fighter A and Fighter

23  B, and you're trying to promote Fighter A, and -- but

24  Fighter B is in the picture, we can't figure out every time

25  Figure B's image was used.  That's impossible to do and it's

2:15-CV-1045-RFB-PAL        Le v. Zuffa        12/08/15        Status
                                                                    Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwtranscripts.com                      39

1   going to be extremely burdensome, and they're insisting on

2   that.

3            So that's why we think it's important to really

4   narrow this soon.  And we can file a motion for summary

5   judgment pretty soon and then get the case narrowed.  And you

6   know, in the meantime we've already agreed they get all the

7   -- all the fight -- everybody who fought after December 10th,

8   2010.  We've also agreed that we're going to provide all the

9   electronic restored contract files for all the fighters.

10  We're still working through that.  It's turning out to be a

11  little more burdensome than we -- I think we thought last

12  time because --

13           THE COURT:  It was your proposal.

14           MR. COVE:  No, I know it was, but I'm just

15  explaining, it's -- we thought it would be a relatively clean

16  contract file, and there's graphs and there's privileged

17  material in those electronic files.  They're not in one

18  single drive, and we're compiling them, but it will take more

19  review than originally anticipated to make sure that we're

20  not -- that we're not providing privileged material and so

21  forth.

22           So that's what we think we should do is, we think

23  this motion -- this issue was resolved as far as what would

24  be produced with regard to the contract files.  We think the

25  issue can be narrowed by a prompt summary judgment motion.

2:15-CV-1045-RFB-PAL         Le v. Zuffa         12/08/15      Status
                                                                 Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwranscripts.com                              40

1  And therefore, there's nothing for the Court to do on this

2  issue right now.

3          THE COURT:  I do sustain Zuffa's position in this

4  regard.  I did visit this.  We did talk about contract files.

5  We did talk about what the universe was.  And for a certain

6  category of information that they're going to get everything

7  in the files, and for the -- and you did represent that you

8  give historical documents dating back even longer.  So I

9  sustain your position in this regard.

10          MR. COVE:  Thank you, Your Honor.

11          THE COURT:  And that leaves the issue with respect

12  to the total number of interrogatories that each party may

13  serve.

14          Plaintiffs propose that the defendants be limited

15  to ten interrogatory -- individual interrogatories addressed

16  to the individual clients.  Correct?

17          MR. DELL'ANGELO:  Yes, Your Honor.  But while we're

18  on the subject of interrogatories though, I just would ask,

19  before we move on if we could just indulge you for a

20  clarification because in the joint status report one of the

21  items that was at issue was also Zuffa's response to

22  interrogatory number 2, which I think was very clear --

23          THE COURT:  If I wasn't explicit enough, I'm not

24  going to compel them to respond further than they have.

25  They've identified all of the fighters.  The sub-information

2:15-CV-1045-RFB-PAL          Le v. Zuffa          12/08/15          Status
                                                                        Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwtranscripts.com                    41

 1   is information that they're entitled to respond with a Rule

 2   33(d) response.  And once you get that material, if it's

 3   inadequate, I leave the door open for you to tell me that.

 4   But that's -- for the first round, for what they're required

 5   to do, I sustained their position, and that has to do with

 6   interrogatory number 2 as well.

 7            MR. DELL'ANGELO:  Thank you for the clarification,

 8   Your Honor.

 9            THE COURT:  Sure.

10            So now we're moving along to the number of

11   interrogatories that each side may propound.

12            I take it both sides propose a consolidated set

13   that's basically the contention variety.  And then I'm not

14   clear what information you want from the individual fighters

15   that can't be covered in ten interrogatories.  The individual

16   plaintiffs that is.

17            MR. COVE:  Your Honor, John Cove.

18            Well, at this point in the litigation, I mean there

19   are a number of things that we would like the fighters to

20   answer individually, such as -- and we haven't served any

21   interrogatories yet.

22            THE COURT:  I understand that.  But usually

23   interrogatories are really not a very efficient way of

24   getting a lot of information in a complex case.

25            MR. COVE:  Well, there are various -- I mean we

2:15-CV-1045-RFB-PAL          Le v. Zuffa          12/08/15          Status
                                                                      Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwtranscripts.com                    42

1    need to know where they fought; when they fought and how much

2    they were compensated; who made them other offers that they

3    did not accept; who made them offers for sponsorships that

4    they either accepted or did not accept; who made them offers

5    for merchandise that they either accepted or didn't accept.

6    You know, what do they do internationally; what offers did

7    they have to fight outside the United States.  All those kind

8    of issues.

9         It's -- I don't know how many I've just rattled

10   off, but those are the kind of issues we would want an

11   individual response to.  We don't think that in light of --

12   especially in light of the burden that we are put to here,

13   that having the fighters answer those individually is going

14   to be extremely burdensome at the level of 20.  And I don't

15   know that there will be 20, it's just at any stage of the

16   case, once the experts get involved and other things like

17   that, there may be additional ones that we think of.  I

18   think I've probably rattled off, if they're separate

19   interrogatories, eight or nine already, and I don't think any

20   of them were unreasonable.  I think they're all very logical

21   and simple.

22        So I think 40 interrogatories in total is not

23   extremely burdensome, in light of the proportionality here.

24   We've got 20 -- you know, we have 20 that all -- that can be

25   answered all at once, and another 20 is not unreasonable.

2:15-CV-1045-RFB-PAL        Le v. Zuffa        12/08/15        Status
Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwtranscripts.com        43

1  And if we don't use them on individuals we could use them for

2  a total of 40 that they could be answered jointly.

3         So I don't -- I just don't see it as any potential

4  for harassment or undue burden.  It may be that there aren't

5  20.  But since I can think of eight of nine right now off

6  the top of my head, and not all the class and other issues

7  have been crystalized yet, I think 20 is not unreasonable to

8  keep as an open number.

9         THE COURT:  All right.  Do I hear 10?

10         Mr. Dell'Angelo.

11         MR. DELL'ANGELO:  You do.  You do, Your Honor.

12  Michael Dell'Angelo.

13         So, you know, our approach to this, Your Honor, is

14  largely a result of the observation that you had, which is

15  that interrogatories are not a particularly efficient way of

16  getting information.  And the -- we tried to lay this out in

17  the joint status report.  But the difference between 10

18  interrogatories to be answered individually by each

19  plaintiff, as we had proposed, and 20 actually increases the

20  burden quite substantially from a numerical perspective.

21         So I think, as the Court is aware, as a result of

22  the stipulation that it entered recently, plaintiffs are

23  proposing to file an amended consolidated complaint and may

24  reduce the total number of plaintiffs.  But even if that

25  number is taken to 60 -- or excuse me, six plaintiffs, for

2:15-CV-1045-RFB-PAL          Le v. Zuffa          12/08/15          Status
                                                                       Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwranscripts.com                    44

1  example, with 10 interrogatories individually to be answered

2  by each plaintiff and 20 collectively, you're still looking

3  at 80 interrogatories.  And with the same six plaintiffs

4  under Zuffa's proposal, that number swells to 140.  And then

5  with each plaintiff that, you know, that number sort of

6  increases substantially.

7        And I think for a relatively inefficient method of

8  gathering discovery, it becomes extremely burdensome to deal

9  with, you know, all these plaintiffs answering all of these

10  individual questions when they've already, you know, rather

11  broad discovery requests for documents to each of them.  So

12  we think that the proposal that we've set forth is actually

13  quite reasonable and sort of -- will meet all of Zuffa's

14  needs.

15        So we've been at this issue for quite some time,

16  as the Court is aware.  And even as of today, you know,

17  counsel can't give you more than seven, eight, nine

18  interrogatories.  So it's difficult from our perspective to

19  understand what the need really is.

20        THE COURT:  Okay.  Mr. Cove, be efficient.  You're

21  limited to 10 per individual plaintiff and 25 total

22  consolidated.

23        MR. COVE:  Thank you, Your Honor.

24        THE COURT:  Okay.  Are there -- the next issue has

25  to do with the limitation on the number of depositions.  Both

2:15-CV-1045-RFB-PAL        Le v. Zuffa        12/08/15        Status
Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwtranscripts.com                    45

1   sides don't want to be limited to 10.  Defendants propose 150

2   total hours so that that can be divvied up and parties will

3   have an incentive to be as efficient as possible and not have

4   every deposition last seven hours.

5          And plaintiffs propose 70 deposition because you

6   have 31 employees identified in your initial disclosures and

7   80 outside individuals with discoverable information, and so

8   they think that's reasonable.

9          So let me hear from counsel for plaintiffs.

10          MR. DELL'ANGELO:  Michael Dell'Angelo, Your Honor.

11          So, yes, it is correct we propose 70 depositions.

12   And I think the first observation that I'd make is that

13   we're, by no means, suggesting that every one of those

14   depositions would be seven hours.  It's quite likely that a

15   number of them would be shorter.  So to look at this as 70

16   seven hour depositions is I think not the appropriate context

17   in which to look at it.  And rather, it makes more sense to

18   look at this in terms of the allegations at issue and the

19   numbers of, you know, custodians and third parties that

20   we're talking about.

21          So we're talking about a multifaceted scheme that,

22   you know, we -- has a discovery period that extends about

23   ten years.  There are, as the Court observed, 31 former

24   employees that we've identified in initial disclosures.  As

25   we heard a few moments ago, there are as many as 44 from

2:15-CV-1045-RFB-PAL          Le v. Zuffa          12/08/15          Status
Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwtranscripts.com                    46

1  whom, based on varying extensive work we think, you know are

2  custodians with relevant information.

3          There are at leave 80 third parties.  There are

4  1,000 fighters within -- I think it's 940 is the exact number

5  within the bout class.  We won't know, you know, how many

6  more fall within the identity class that don't already fall

7  within the bout class at least for some time.

8          But then there are also dozens of agents, managers

9  for those 940 plus fighters; as well as dozens of sponsors,

10 merchandisers, venues, broadcasters and distributors.

11         So, you know, when you look at the totality of both

12 of the current and former employees of Zuffa, as well as the

13 30 -- the third parties, we think that 70 is reasonable and

14 proportional to the needs of the case; recognizing again that

15 many of them probably will not be, you know, full seven hour

16 depositions.

17         And I would observe, Your Honor, that we have

18 issued several dozen I think now subpoenas to third parties.

19 And I believe the number is correct, Your Honor, that Zuffa

20 has issued 12.  And those -- the 12 subpoenas, and certainly

21 Mr. Cove will correct me if I'm wrong, that Zuffa has issued

22 to date are for the same third parties that the plaintiffs

23 have issued.

24         So I think what we'll find is that the parties are

25 probably pursuing many of the same potential deponents, but

2:15-CV-1045-RFB-PAL          Le v. Zuffa          12/08/15          Status
                                                                    Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwtranscripts.com                          47

1    it's quite clear from the record that there are a number of

2    them.  And as we see the, you know, particularly in light of

3    the sort of reduction of universe of custodians, I think

4    it's all the more important that we have the opportunity to

5    depose people that we need to depose to prove out the case

6    and submit it -- limiting it to mere hours, particularly at

7    150 is simply not proportional [unintelligible].

8              THE COURT:  And who wishes to be heard on behalf

9    of the defendants?

10             MR. WILLIAMS:  Sure.  Good afternoon, Your Honor.

11   Colby Williams.

12             Again, Your Honor, this is not -- this is an

13   antitrust case.  It's obviously not your average piece of

14   litigation that we have in this district.  And I -- we

15   understand and recognize that there's going to be more in

16   terms of discovery that's required.  We get that.

17             But by the same token, this is not like some of the

18   cases that you see cited in the status report by the

19   plaintiffs.  This isn't the Visa antitrust litigation where

20   there was 400 depositions or Walmart.

21             Zuffa, for all its success and in this company have

22   grown quite a bit.  This is not Apple.  It's just not on that

23   scale with some of these big corporations that are sued in

24   these types of cases.

25             This, we're talking about a monopolization case.

2:15-CV-1045-RFB-PAL          Le v. Zuffa          12/08/15          Status
                                                                  Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwranscripts.com                    48

1  We're talking about single firm conduct.  And, quite frankly

2  again, and the reason you see me standing up here a little

3  bit is just to provide some historical perspective, which is

4  that having represented the company for as long as I have,

5  there really are very few decision makers in the company.

6  And I recognize that they've talked about a lot of people

7  outside the company that they want to take, but to suggest

8  that you need to take 25 depositions of Zuffa employees,

9  Your Honor, I don't know that I've met 25 Zuffa employees

10 that are responsible for decision making that is alleged to

11 be at issue in this case.  So we think we've presented a

12 reasonable proposal --

13        THE COURT:  Decision making and people with

14 knowledge of the things that the decision makers are doing

15 are often different things.

16        MR. WILLIAMS:  We understand that, Your Honor.  And

17 obviously I'm not saying that there are a number of

18 depositions, that Zuffa should be limited to four.  But

19 something, you know, between -- you know, something less than

20 certainly 25 I would suggest would get the plaintiffs more

21 than sufficient information than what they're proposing they

22 need to do in the way of depositions.

23        As for the other third parties, we have been

24 issuing subpoenas that are to some of the same entities that

25 plaintiffs have been.  But, quite frankly, Your Honor, it's

2:15-CV-1045-RFB-PAL        Le v. Zuffa        12/08/15        Status
Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwranscripts.com                49

1  out of an abundance of caution to make sure that we're

2  getting the same documents that plaintiffs are getting.  It's

3  not necessarily because we think, you know, all of these

4  outside players are going to be required to be deposed, and

5  we think the number that we've submitted is sufficient.

6         THE COURT:  Ever occur to both of you folks to

7  jointly subpoena the documents at the same time to avoid that

8  duplication?  I know it runs an -- runs contrary to the blood

9  of every litigator, but there are some things that might be

10  in your mutual self interest there.

11         I'm going to limit the number of depositions at

12  this point to 45 per side, and limit the number of Zuffa

13  employee depositions to 15.  Again, and exclude, for purposes

14  of the 45 limitation, custodian of records depositions are

15  more authentication type depos that are a short duration.

16  They're just needed in order to confirm documents, or

17  authenticate documents.

18         So I'll leave the door open if it appears

19  inadequate or if one side or the other is abusing the

20  deposition process in any way.  I can always take one of the

21  many arrows out of my quiver.  Okay.

22         The final issue that we have is with respect to the

23  schedule in this case.  The plaintiffs propose that I set a

24  date for a pretrial conference and trial date.  I'll just

25  tell you, that is something that your trial judge will do.

2:15-CV-1045-RFB-PAL         Le v. Zuffa         12/08/15         Status
                                                                    Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwtranscripts.com                          50

 1  And typically the way it works in this district, Judge

 2  Boulware is our newest judge so he is always free to adopt

 3  his own case management practices.  But a trial date is

 4  assigned once the joint pretrial order is lodged with the

 5  Court after the close of discovery and after dispositive

 6  motions have been decided.

 7          So I'm inclined to set a deadline for filing

 8  dispositive motions and -- so that you get on track to get in

 9  the queue to get a trial date.  And then, of course, nothing

10  prohibits you from asking for a pretrial conference under the

11  rule before the trial judge in advance of the trial.

12          I don't know right now how far out he is from the

13  time that you ask for a trial date until he schedules one.

14  I'm getting -- the prior case is not this type of a case, but

15  some of his settings right now are relatively short.  But --

16  okay, uncomfortably short for some litigants, so.

17          We'll go ahead and set the deadline for filing

18  dispositive motions.  And plaintiff's proposal seems

19  reasonable to me, after the briefing is complete on the class

20  certification motion, so there doesn't seem to be any reason

21  why any existing summary judgment motions shouldn't be filed

22  by February 22nd; and opposition briefs on March 23rd; with

23  replies due April 20th of 2018.  I can't believe I'm even

24  saying that.

25          [Laughter].

2:15-CV-1045-RFB-PAL          Le v. Zuffa          12/08/15          Status
                                                                    Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwtranscripts.com                                    51

1          THE COURT:  So I'll go ahead and adopt that.  And

2    then as I said, as you get closer or as you get decisions and

3    things change in the case, if the procedural posture of the

4    case changes because it's been narrowed through motion

5    practice or agreement then we can revisit these deadlines.

6    But this is -- you have a lot of work to do but you need to

7    get started, and this is a -- this is already going to be a

8    three year case if these deadlines are not met, so.

9          Anything further on behalf of the plaintiffs?

10         MR. DELL'ANGELO:  May I just ask one clarifying

11   question, Your Honor?

12         THE COURT:  Sure.

13         MR. DELL'ANGELO:  Thank you.  Otherwise I have

14   nothing.

15         Just with respect to the Court's order regarding

16   custodians, one thing I think that -- and though

17   [unintelligible] suggested may have been a little unclear to

18   some of us, is whether or not the Court was adopting Zuffa's

19   proposal of 16 plus two custodians and then adding more or 16

20   custodians plus six.

21         THE COURT:  Sixteen plus six total.

22         MR. DELL'ANGELO:  Thank you, Your Honor.

23         THE COURT:  Okay.

24         MR. COVE:  Your Honor, John Cove.  I have two

25   things.

2:15-CV-1045-RFB-PAL          Le v. Zuffa          12/08/15          Status
                                                                          Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwranscripts.com                              52

 1          One doesn't -- neither of them require any action

 2     by the Court right now.  But I wanted to alert you that we

 3     have -- as counsel has said, we have issued subpoenas, both

 4     sides have issued subpoenas to some of Zuffa's competitors.

 5     In the initial discussions they have raised very serious

 6     concerns about in-house counsel having any access to their

 7     material, which I think are legitimate concerns.  So we are

 8     going -- we've talked to the plaintiffs in general terms and

 9     we are going to propose an amendment to the protective order

10     that will address the concerns about the third party --

11          THE COURT:  Attorney's eyes only for --

12          MR. COVE:  -- for third party materials.  So we're

13     going to meet and confer.  I suspect we'll be able to reach

14     an agreement on that.

15          One other clarification I wanted to make was at the

16     beginning in Mr. Dell'Angelo's presentation, he explained

17     that he had excluded some of the proposed custodian's time

18     in the international aspects of Zuffa's business in making

19     his proposal.  We have, on many occasions in our meet and

20     confers, told them that we contest their market -- the

21     geographic market definition.  We believe that that is -- is

22     a worldwide geographic market.  I don't think -- I'm not

23     sure if it's in writing anyway, but I wanted to make sure

24     that, before they choose their custodians, our position was

25     on the record that we think it's a worldwide market that's a

2:15-CV-1045-RFB-PAL          Le v. Zuffa          12/08/15          Status
Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwtranscripts.com                              53

1   disputed issue.

2           We think all the decisions that are important to a

3   worldwide market, where bouts will be held, who was going to

4   participate, how much they would get paid are made by the

5   people in the United States, are the same decision makers

6   that make decisions about bouts in the United States.  But I

7   want it to be absolutely clear that that's on the record

8   before the custodians --

9           THE COURT:  Before they make their elections.

10          MR. COVE:  Exactly.

11          THE COURT:  Okay.

12          MR. COVE:  Thank you, Your Honor.

13          THE COURT:  When do you folks believe it would be

14  helpful to have another status and dispute resolution

15  conference?

16          MR. COVE:  Your Honor, I personally am tentatively

17  scheduled for depositions in San Francisco the week of --

18  well, starting on Wednesday, the 13th of January, and then

19  into the following week.  I would suggest the week after that,

20  if that's convenient to everyone.

21          THE COURT:  Mr. DelAnjo [sic] -- Dell'Angelo,

22  excuse me.

23          MR. DELL'ANGELO:  Thank you, Your Honor.  I think

24  that that date is fine.  I'm not aware of any conflict at

25  this time.

2:15-CV-1045-RFB-PAL         Le v. Zuffa         12/08/15         Status
                                                                    Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwtranscripts.com                            54

1           MR. COVE:  Your Honor, I didn't consult with Mr.

2    Williams or Mr. Hendrick before making that proposal, and I

3    probably should have.

4           MR. WILLIAMS:  That's fine with us, Your Honor.

5           MR. COVE:  Is that alright?

6           THE COURT:  The week of the 18th?

7           UNIDENTIFIED SPEAKER:  No, I believe that's the

8    25th.

9           THE COURT:  The following the week.  Okay.  I

10   didn't want to compress the time.  People do things over this

11   time of year and -- as much fun as it is to hold hearings on

12   Christmas Eve, I'll try to --

13          Mr. Miller, what do we have that week?

14          THE CLERK:  That would be the week beginning of

15   Monday, January 25th.  Am I on the same page?

16          THE COURT:  Correct.

17          THE CLERK:  We can schedule this matter for a

18   continued status conference on Tuesday, January the 26th,

19   2016, at 1:45 p.m. in this courtroom.

20          THE COURT:  Does that work for you folks, 'cause

21   what I'd do is just clear my afternoon so that I give you

22   that time and squeeze all my other hearings in, in on the

23   morning.

24          MR. COVE:  Yeah.  We really appreciate it, Your

25   Honor.  We understand how much work this is for the Court as

2:15-CV-1045-RFB-PAL          Le v. Zuffa          12/08/15          Status
Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwranscripts.com                    55

1  well, and I -- I think we all wanted to thank the Court for

2  its time and effort on this.

3          THE COURT:  That's my job.

4          MR. DELL'ANGELO:  I share that view, Your Honor.  I

5  guess I'd just observe that with respect to the international

6  aspect, I do acknowledge Mr. Cove, at least on one occasion

7  as indicated that, you know, they view the relevant market as

8  potentially being worldwide.

9          But, you know, I just want to make clear for the

10 record that we had a different with respect to the

11 discovery --

12          THE COURT:  I know you're not biting into that, but

13 he just wants you to know that so when you make your

14 selection on your custodians you have that observation in

15 mind.

16          MR. DELL'ANGELO:  Well, I -- I appreciate that,

17 Your Honor.  And I guess all I wanted to make clear is that

18 the selections that we made were with respect to a geographic

19 market that's not greater than North America.  So if -- we

20 may be -- that calculus may change from our perspective and

21 we may be coming back to talk to you about custodians to the

22 extent we're dealing with international aspects.

23          THE COURT:  I'm not going to anticipate a problem

24 that hasn't arisen.

25          MR. DELL'ANGELO:  I understand.

2:15-CV-1045-RFB-PAL          Le v. Zuffa          12/08/15          Status
                                                                 Conference

                        NW TRANSCRIPTS, LLC - Nevada Division
                      P.O. Box 33, Issaquah, Washington 98038-0002
                        (208) 989-3455 - gayle@nwranscripts.com          56

1          THE COURT:  You've had your say on this and we'll

2    see you back on January 26th.

3          MR. DELL'ANGELO:  I appreciate that, Your Honor.  I

4    just didn't want to be silent on the issue.

5       [Laughter].

6          THE COURT:  We're adjourned.  Thank you, counsel.

7          ATTORNEYS:  Thank you, Your Honor.

8             PROCEEDINGS CONCLUDED AT 3:02:39 P.M.

9                     *  *  *  *  *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**2:15-CV-1045-RFB-PAL**          **Le v. Zuffa**          **12/08/15**          **Status Conference**

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwranscripts.com          57

**CERTIFICATION**


I (WE) CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE ELECTRONIC SOUND RECORDING OF THE PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.



**NW TRANSCRIPTS, LLC**
**NEVADA DIVISION**
**P.O. BOX 33**
**ISSAQUAH, WASHINGTON 98027-0002**
**(208) 989-3455**
**gayle@nwtranscripts.com**



/s/ Gayle Martin-Lutz
FEDERALLY CERTIFIED MANAGER/OWNER

Kari Riley                                    12/22/15
TRANSCRIBER                                   DATE




2:15-CV-1045-RFB-PAL        Le v. Zuffa        12/08/15        Status
                                                                    Conference

NW TRANSCRIPTS, LLC - Nevada Division
P.O. Box 33, Issaquah, Washington 98038-0002
(208) 989-3455 - gayle@nwranscripts.com                             58