WILLIAM A. ISAACSON (Admitted Pro Hac Vice)
(wisaacson@bsfllp.com)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave, NW, Washington, DC 20015
Telephone: (202) 237-2727; Fax: (202) 237-6131

JOHN F. COVE, JR (Admitted Pro Hac Vice)
(jcove@bsfllp.com)
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900, Oakland, CA 94612
Telephone: (510) 874-1000; Fax: (510) 874-1460

RICHARD J. POCKER #3568
(rpocker@bsfllp.com)
BOIES, SCHILLER & FLEXNER LLP
300 South Fourth Street, Suite 800, Las Vegas, NV 89101
Telephone: (702) 382 7300; Fax: (702) 382 2755

DONALD J. CAMPBELL #1216
(djc@campbellandwilliams.com)
J. COLBY WILLIAMS #5549
(jcw@campbellandwilliams.com)
CAMPBELL & WILLIAMS
700 South 7th Street, Las Vegas, Nevada 89101
Telephone: (702) 382-5222; Fax: (702) 382-0540

Attorneys for Defendant Zuffa, LLC, d/b/a
Ultimate Fighting Championship and UFC

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,

Defendant.

Case No.: 2:15-cv-01045-RFB-(PAL)

ZUFFA, LLC'S OPPOSITION TO PLAINTIFFS' MOTION TO CHALLENGE PRIVILEGE DESIGNATIONS

REDACTED

CORRECTED IMAGE

Pursuant to Section 11 of the February 10, 2016 Revised Stipulation and Protective Order, Defendant Zuffa, LLC ("Zuffa") respectfully submits this opposition to Plaintiffs' Motion to Challenge Defendant's Privilege Designations (Dkt. 229). As discussed more fully below, the confidential communications between Zuffa and its legal counsel that Plaintiffs seek to breach are protected by attorney-client privilege and should be returned.

## I. BACKGROUND

### A. The 2011 FTC Production

In 2011, during an investigation by the Federal Trade Commission ("FTC" or "Commission") of the acquisition of Mixed Martial Arts ("MMA") promoter Strikeforce by a Zuffa subsidiary, Zuffa made several productions of documents to the Commission staff, comprising approximately 108,000 documents. In this process, a small number of documents containing privileged information were inadvertently produced. One such production occurred on August 19, 2011, when Zuffa's counsel inadvertently produced three documents, including ZUF-00031544 (the "Milbank Email"). Declaration of Marcy Norwood Lynch ("Lynch Decl.") ¶ 10, Ex. A (Ltr. from N. Gaglio to C. Woolley, Aug. 22, 2011) at 1. Upon discovery, Zuffa took immediate steps to claw back the document. Specifically, on August 22, 2011, counsel for Zuffa wrote to the Commission staff, explaining the inadvertent production of the three privileged documents, including the Milbank Email, and requesting that the FTC delete all copies of these documents. *Id.* at 1. Zuffa's counsel also informed the FTC that it would provide an overlay to "replace the images for inadvertently produced privilege records with single-page placeholder tiff images indicating the records have been withheld as privileged . . . ." *Id.* at 1-2. Zuffa's counsel provided the overlay for these inadvertently produced documents on August 24, 2011. Lynch Decl. ¶ 11, Ex. B (Ltr. from N. Gaglio to C. Woolley, Aug. 24, 2011) at 1.

The FTC promptly complied with the clawback request. Lynch Decl. ¶ 12, Ex. C (Ltr. from C. Woolley to N. Gaglio, Aug, 26, 2011) at 1. At that time, Zuffa's e-discovery vendor loaded the tiff image files containing the placeholders or slipsheets onto its e-discovery platform, but did not replace the extracted text on its platform with the replacement text that was provided to the FTC.

The privilege log provided to the FTC lists the Milbank e-mail at entry 7531, including the e-mail's author, addressees, recipients, date, a description of its contents, a notation identifying the source of the privilege as an attorney-client communication, and whether there were any redactions; however, the privilege log does not reflect the Bates number that was originally assigned to this e-mail—ZUF-00031544. Lynch Decl. ¶ 13, Ex. D (Excerpt of Privilege Log for 2011 Production).

**B. The Challenged Document Was Inadvertently Produced to Plaintiffs in This Case and Zuffa Promptly Attempted to Claw Back the Document**

The Protective Order governing this case provides that after receiving notice of or discovering any inadvertent production of privileged documents, the other party must either return the inadvertently produced privileged documents or challenge the privilege designation within three business days of receipt of notice or discovery. (Dkt. 197 at 12-13; Dkt. 215 at 14). The Protective Order does not require the party asserting privilege to provide any other reasoning or documentation supporting the claim. (Dkt. 197; Dkt. 215).

In November 2015, in response to Plaintiffs' Request for Production No. 54, which requested "All Documents provided to or received from any governmental agency . . . ," counsel for Zuffa began producing documents that had been originally produced to the FTC in 2011 to the Plaintiffs. Lynch Decl. ¶ 5. To expedite production of this substantial quantity of documents, counsel for the parties had agreed that Zuffa would re-produce its production to the FTC during the 2011 Strikeforce investigation "in the form in which it was initially produced." Lynch Decl. ¶ 14, Ex. E (Oct. 22, 2015 E-mail exchange between M. Lynch and M. Dell'Angelo). In its initial production to Plaintiffs, Zuffa's counsel re-produced the Strikeforce production in the form in which it received those documents from the e-discovery vendor that handled the 2011 production. Unknown to counsel at that time, the four-year old production was transferred to current counsel with extracted text, rather than as-produced text. The result was that counsel inadvertently produced a group of documents, including ZUF-00031544, containing slipsheets stating "DOCUMENT WITHHELD FOR PRIVILEGE" in boldfaced type in the middle of the page, but with extracted text reflecting the underlying privileged information, rather than the OCR'd text of

the slipsheet that had been produced to the FTC in the correction to the original inadvertent production in 2011.[1]

On January 27, 2016, Plaintiffs wrote to Zuffa, notifying Zuffa of their ability to view the information from the documents designated as privileged. Lynch Decl. ¶ 15, Ex. F (Ltr. from M. Dell'Angelo to J. Cove, Jan. 27, 2016) at 1. Plaintiffs' letter indicated that they discovered two documents, including ZUF-00031544, "preceded by a TIFF slip sheet that states 'This document has been withheld as privilege[d],' but the Native or text view reflects the OCR-ed text of the document." *Id*. Counsel immediately began investigating this issue and responded to Plaintiffs via e-mail less than 3 hours later, confirming that (1) both documents identified by Plaintiffs, including ZUF-00031544, were privileged, (2) these documents were likely inadvertently produced to the FTC in the first instance; and (3) the inadvertent production of these documents did not waive privilege. Lynch Decl. ¶ 16, Ex. G (E-mail from J. Cove to M. Dell'Angelo, Jan. 27, 2016).

During its subsequent investigation, counsel confirmed that the Milbank Email was inadvertently produced in 2011, identified the technical error that caused the document to be inadvertently produced in this litigation, and provided Plaintiffs with the clawback correspondence between the FTC and Zuffa from 2011. Lynch Decl. ¶ 17, Ex. H (E-mail from M. Lynch to M. Dell'Angelo, Feb. 2, 2016). Because neither party discovered an efficient method to determine precisely the total number of documents with slipsheets that had been inadvertently produced with extracted text due to the technical transfer error, on February 5, 2016, the parties agreed that the appropriate solution was to provide a text file overlay for the entire production. Lynch Decl. ¶ 9. On February 12, 2016, Zuffa provided that overlay. *Id.*

---

[1] In certain cases, the re-production of a legacy production entails only copying the media from the original production. In this case, however, the 2011 FTC Production contained some documents and contracts that required Zuffa to provide notice to third parties that the documents would be produced in civil litigation before producing them. Lynch Decl. ¶ 4. In order to produce as many documents that did not require notice as quickly as possible, counsel needed to identify and segregate documents requiring notice from those it could produce immediately. *Id.* Thus, counsel was unable to simply copy and re-produce the as-produced media. *Id.*

Instead of either challenging the privilege designation or returning the documents, as required by the Protective Order, Plaintiffs demanded further information regarding the basis for the assertion of privilege over five documents, including the Milbank Email. Lynch Decl. ¶18, Ex. I (Ltr. from K. Rayhill to M. Lynch, Feb. 16, 2016). While this specificity is not required by the Protective Order, in the spirit of cooperation and in the hope of avoiding further litigation over this issue, counsel provided detailed descriptions of each of the documents at issue, the justifications for asserting privilege, a copy of the privilege log provided to the FTC in its native excel format, and a redacted version of the Milbank Email to Plaintiffs. Lynch Decl., Ex. ¶ 19, Ex. J (Ltr. from M. Lynch to K. Rayhill, Mar. 4, 2016). Notwithstanding Zuffa's efforts to resolve this issue without resort to motion practice, Plaintiffs determined to challenge the privilege designation of the Milbank Email and, on April 1, 2016, filed the instant motion. (Dkt. 229)

**C. The Email Message Contains Legal Advice from Zuffa's Attorney**

In 2006, Zuffa retained the law firm of Milbank, Tweed, Hadley & McCloy LLP ("Milbank") to provide legal representation regarding the potential acquisition of assets from Dream Stage Entertainment, owner of the Japan-based MMA promotion Pride FC. Declaration of Charles Thomas Paschall ("Paschall Decl.") ¶¶ 1, 2. Kenneth Baronsky, then managing partner of Milbank's Los Angeles office and head of its corporate practice group, was the partner in charge of the matter and C. Thomas Paschall, a senior level associate at that time, worked on the matter under Mr. Baronsky's supervision and at his direction. Paschall Decl. ¶ 3. In the course of that representation, Mr. Baronsky and Mr. Paschall received confidential information from Zuffa for the purpose of evaluating and making recommendations regarding [REDACTED] [REDACTED] and other terms of the proposed acquisition transaction, as well as [REDACTED] [REDACTED] and other legal requirements to be performed in advance of the proposed acquisitions. Paschall Decl. ¶ 3. In furtherance of that representation, Mr. Paschall traveled to Tokyo, Japan in January 2007 to meet with executives from Dream Stage and their counsel regarding the proposed acquisition transaction. Paschall Decl. ¶ 4. After the meeting, Mr. Paschall sent an e-mail to two of Zuffa's managers and its CEO and COO, copying two other

Milbank lawyers—Mr. Baronsky and Pamela Neufeld, reporting the positions advanced by both Dream Stage and Zuffa at the meeting and also implications. Mr. Paschall's e-mail also discussed implications and reasons underlying Milbank's advice regarding, among other things, [REDACTED], his analysis of the impact of [REDACTED] as well as [REDACTED] and [REDACTED], such as [REDACTED] in light of his understanding of [REDACTED] Paschall Decl. ¶ 5. Plaintiffs challenge the privilege designation of the redacted portion of that email.

In the unredacted portions of this e-mail, Mr. Paschall reports the positions that Dream Stage's representatives communicated to him and the positions that he communicated to Dream Stage on behalf of Zuffa. In the redacted portions of this e-mail, Mr. Paschall communicates to Zuffa and to the other Milbank lawyers (1) confidential legal advice developed in the course of due diligence performed by his law firm in representing Zuffa in this particular transaction and (2) confidential disclosures made by Zuffa to its outside counsel to obtain legal advice regarding the acquisition of assets from Dream Stage. The first redacted paragraph both reflects Mr. Paschall's impressions of confidential disclosures made by Zuffa to its attorneys at Milbank for the purpose of seeking advice and conveys legal advice from Mr. Paschall to Zuffa based on and regarding [REDACTED]

> [REDACTED]

Dkt. 229, Ex. 3. The second redacted paragraph contains Mr. Paschall's impressions of confidential communications made by Zuffa to its attorneys for the purpose of obtaining legal advice, including the company's concerns regarding [REDACTED] and also reflects legal advice provided to Zuffa by Milbank regarding [REDACTED]

*Id.* Plaintiffs do not appear to contest the redaction of the third redacted section, which reflects the status of ongoing legal analysis to be performed by Milbank regarding of the proposed transaction and requests client feedback on certain outstanding issues. Dkt. 229 at 5.

## II. LEGAL STANDARD

Rule 501 of the Federal Rules of Evidence codifies the applicability of common law to federal proceedings, stating that the "common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege" unless the U.S. Constitution, federal statute, or the rules provide otherwise. Fed. R. Evid. 501. The purpose of shielding attorney-client communications from disclosure rests on an attorney's need to know all information that relates to the client's need for representation. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (quoting and citing *Trammel v. United States*, 445 U.S. 40, 51 (1980)). The privilege "serves to protect confidential communications between a party and its attorney in order to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'" *Harter v. CPS Sec. (USA), Inc.*, No. 2:12-CV-00084-MMD, 2013 WL 3108947, at *4 (D. Nev. June 18, 2013) (quoting *Upjohn*, 449 U.S. at 389).

As Plaintiffs acknowledge, the touchstone of whether a communication falls within the scope of the privilege is whether the communication either seeks or renders legal advice. *See* Dkt. 229, at 6. Courts have recognized the existence of the privilege "where legal advice of any kind is sought from a professional legal advisor in her capacity as a legal advisor concerning communications relating to that purpose, made in confidence by the client." *Brincko v. Rio Properties, Inc.*, 278 F.R.D. 576, 583 (D. Nev. 2011).

Against this background, the Ninth Circuit has adopted an eight-part test to determine

whether the attorney-client privilege applies:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (citations and quotations omitted).

Although the party asserting the privilege bears the burden of establishing that the elements of privilege are met, "[i]f a person hires a lawyer for advice, there is a rebuttable presumption that the lawyer is hired 'as such' to give 'legal advice,' whether the subject of the advice is criminal or civil, business, tort, domestic relations, or anything else." *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996). The privilege extends beyond attorneys acting as litigation counsel to attorneys providing any type of legal advice. For example, the privilege "applies to communications between lawyers and their clients when the lawyers act in a counseling or planning role . . . ." *Ideal Elec. Co. v. Flowserve Corp.*, 230 F.R.D. 603, 607 (D. Nev. 2005).

The mere fact that an attorney may discuss business issues in a communication alone does not defeat the privilege. Although the attorney-client privilege does not apply to communications that do not give, solicit or reflect legal advice, the fact that a communication relates to a business purpose is not dispositive. For communications that have both a dual purpose, the "issue is not whether any business considerations were also under discussion between the attorney and client but 'whether the predominant purpose of the communication is to render or solicit legal advice.'" *Wellnix Life Sciences, Inc. v. Iovate Health Sciences Research, Inc.*, No. 06 Civ. 7785(PKC), 2007 WL 1573913, *2 (S.D.N.Y. May 24, 2007) (quoting *In re County of Erie*, 473 F.3d 413, 418 (2d Cir. 2007)).

## III. LEGAL ARGUMENT

### A. The Redacted Parts of the Milbank Email Were Privileged at Their Inception.

Zuffa carefully redacted the document in question to distinguish between Zuffa's attorney's mere transmittal of information from a third party, on one hand, and the information

and guidance provided by the client for the purpose of obtaining legal advice and the legal advice provided or described, on the other. The redacted portions of the Milbank Email satisfy all the elements for the attorney-client privilege to attach. Mr. Paschall and his firm, Milbank, Tweed, Hadley & McCoy, LLP, are professional legal advisers that were retained by Zuffa as outside counsel to provide legal advice and services in connection with the acquisition of assets from Dream Stage. *See* Paschall Decl. ¶¶ 2-3. There is no dispute that this communication was made in confidence. Further, "Communications between a client and its outside counsel are presumed to be made for the purpose of obtaining legal advice." *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1073 (N.D. Cal. 2002) (citing *Chen*, 99 F.3d 1501). All the evidence here supports that presumption and none contradicts it. Viewed in the context of this relationship, it is clear that the Milbank Email contained more than Mr. Paschall's lay observations about the negotiations and Zuffa's business strategy. Mr. Paschall's email conveyed specific legal advice, including referring back to previously rendered legal advice and his understanding of confidential client communications underlying that advice.[2] *See Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 441-42 (S.D.N.Y. 1995) ("It is now well established that the privilege attaches not only to communications by the client to the attorney, but also to advice rendered by the attorney to the client, at least to the extent that such advice may reflect confidential information conveyed by the client.") (citations omitted).

For example, the first redacted paragraph of Mr. Paschall's message reflects that Zuffa confidentially disclosed to him and two other attorneys information related to the history of negotiations with Dream Stage for the purpose of seeking advice on the potential acquisition. In response, Mr. Paschall recommends [REDACTED] Dkt. 229, Ex. 3. The second redacted paragraph refers to Mr. Paschall's understanding of confidential information Zuffa shared with its attorneys to obtain legal advice as to at least both [REDACTED]

---

[2] That Mr. Paschall's understanding of information he received in confidence from Zuffa may not have been accurate in all respects does not affect the validity of the privilege.

including explaining his understanding of why his firm "[REDACTED]" *Id.*; Paschall Decl. ¶ 5. A lawyer's advice as to the legal effect of a [REDACTED] is quintessential legal advice and both it and the client communications in furtherance of obtaining the advice are privileged.

Plaintiffs assert that the Milbank Email "is not legal advice from an attorney in his capacity as a legal advisor" and "could have been provided by ***any*** Zuffa business executive who was present at the meeting and familiar with the negotiations and Zuffa's business strategy." (Dkt. 229, at 7). This argument ignores the content of the redacted paragraphs which clearly address legal issues. Moreover, contrary to Plaintiffs' argument, that a non-lawyer business person may be able to express views on the same subject, e.g., [REDACTED] does not mean that a lawyer advising on the subject is not rendering legal advice. Indeed, courts have made clear that attorney-client communications need not follow a traditional format to be privileged. *See In re Cty. of Erie*, 473 F.3d 413, 420-21 (2d Cir. 2007). Contrary to plaintiffs' suggestion, the lack of citation to statutes, laws, or rules (*see* Dkt. 229, at 7), does not transform legal advice into business advice that any executive could give. Counsel are often called upon to render advice based on (and because of) their existing legal expertise and experience without any expectation that they will conduct new research or expressly cite cases or other authority in rendering advice. As the Second Circuit explained:

> The complete lawyer may well promote and reinforce the legal advice given, weigh it, and lay out its ramifications by explaining: how the advice is feasible and can be implemented; the legal downsides, risks and costs of taking the advice or doing otherwise; what alternatives exist to present measures or the measures advised; what other persons are doing or thinking about the matter; or the collateral benefits, risks or costs in terms of expense, politics, insurance, commerce, morals, and appearances. So long as the predominant purpose of the communication is legal advice, these considerations and caveats are not other than legal advice or severable from it.

*In re Cty. of Erie*, 473 F.3d at 420-21; *see Bodega Investments, LLC ex rel. Kreisberg v. United States*, No. 08CIV.4065RMBMHD, 2009 WL 1456642, at *5 (S.D.N.Y. May 15, 2009) ("documents are protected by the privilege even when they include references to, or even fairly extensive discussions of, financial questions and issues of commercial strategy and tactics, if they

do so in a context that makes it evident that the attorney is presenting the issues and analyzing the choices on the basis of his legal expertise and with an obvious eye to the constraints imposed by applicable law") (citations and internal quotation marks omitted).

*Wellnix Life Sciences, Inc. v. Iovate Health Sciences Research, Inc.* illustrates this point. No. 06 CIV. 7785 (PKC), 2007 WL 1573913 (S.D.N.Y. May 24, 2007). In *Wellnix*, the court concluded that the attorney-client privilege applied to an email originally sent by an attorney to his client that contained 14 "key points" that needed to be "folded into" a "letter of understanding." *Id.* at *1. In reaching this conclusion, the court recognized that the client sent a message to its attorney "for the purpose of obtaining [that attorney's] legal advice and his skills as a lawyer to negotiate a contract." *Id.* The attorney's email then responded by describing terms that the client wanted "to see incorporated into an agreement which was then under negotiation." *Id.*, at *3. The *Wellnix* court had no difficulty determining that the attorney client privilege protected this mixed communication. *Id.* at *2-*3. The email from Mr. Paschall reflects that Zuffa, like the client in *Wellnix*, sought Milbank's legal expertise on [REDACTED] in connection with the acquisition of assets from Dream Stage, in particular as it relates to [REDACTED] [REDACTED].

The cases cited by Plaintiffs support Zuffa's decision to leave unredacted those portions of the e-mail where Mr. Paschall is "reporting facts learned from a third party" and to redact for privilege those portions of the e-mail in which Mr. Paschall discusses legal advice, including his understanding of confidential information provided by Zuffa for the purposes of [REDACTED] [REDACTED] and its attendant [REDACTED] *In re Human Tissue Products Liab. Litig.*, No. CIV. 06-135, 2009 WL 1097671, at *2 (D.N.J. Apr. 23, 2009) ("An attorney's communication to a client reporting facts learned from a third party is not within the attorney-client privilege unless the information is included in legal analysis or advice communicated to the client."); *United States v. Motorola, Inc.*, No. CIV.A.94-2331TFH/JMF, 1999 WL 552553, at *2 (D.D.C. May 28, 1999) ("it is clear that when an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged"). In *Human Tissue Products*, the court found that documents were not privileged because outside counsel stated "that the issue

presented to him is not contractual in nature, but instead pertains to business sense" or where e-mail merely transmitted a report prepared by a private investigator without "any indicia of legal analysis." *Id.* Similarly, the contested documents in *Burroughs Wellcome* addressed the business decision whether to pursue a patent and associated media and publicity issues, not the "distinct" legal issue of "how to obtain the best patent protection." 143 F.R.D. 611, 619 (E.D.N.C. 1992); *see also United States v. Motorola, Inc.*, No. CIV.A.94-2331TFH/JMF, 1999 WL 552553, at *3 (D.D.C. May 28, 1999) (e-mail regarding an auction strategy from a telecommunications executive to a group of his employees and attorneys without any evidence that the executive was seeking advice from the lawyers specifically found not privileged). In contrast with subjects like "publicity," "dealing with the media," or auction strategy, the redacted portions of the Milbank Email address communications from Zuffa's outside counsel on matters squarely within the ken of legal advice, to wit, [REDACTED] and [REDACTED], and [REDACTED] as well as [REDACTED]. This is precisely the kind of information the attorney client privilege was intended to protect.

### B. Defendants' Production of Business Communications on the Same Subject Does Not Waive Privilege

Plaintiffs also argue Zuffa waived privilege over the redacted portions of the e-mail by producing unredacted portions of the e-mail. The reason this is incorrect is simple: Because the unredacted portions of the e-mail are not privileged, no waiver can result from their production. Plaintiffs' theory would perversely penalize Zuffa for carefully distinguishing between privileged and non-privileged aspects of the communication in redacting the documents, and would encourage overbroad privilege claims. Courts routinely allow or order redactions where documents contain a mix of protected privileged communications and business advice. *See, e.g.*, *TVT Records v. Island Def Jam Music Grp.*, 214 F.R.D. 143, 146 (S.D.N.Y. 2003) (allowing redaction of legal advice in emails that had a mixture of legal and business advice.); *Complex Sys., Inc. v. ABN AMRO Bank N.V.*, 279 F.R.D. 140, 150-51 (S.D.N.Y. 2011) (same); *Int'l Cards Co. v. Mastercard Int'l Inc.*, No. 13-CV-02576 LGS SN, 2014 WL 4357450 (S.D.N.Y. Aug. 27,

2014) (ordering the redaction of some emails that had a mix of business related communications and legal communications.). The rule Plaintiffs urge would have absurd consequences. Plaintiffs' argument would mean that where a party provides a document containing both redacted, privileged legal communications and unredacted, non-privileged business communication, the party has waived privilege as to the redacted portions of the document. If that were the case, courts would never order parties to redact documents, but, instead, would either require documents be withheld in their entirety or disclosed in their entirety.

Federal law provides that only "[d]isclosing a privileged communication . . . results in waiver as to all other communications on the same subject." *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) (citations omitted). As Plaintiffs correctly note, the unredacted portions of the communication produced to the Plaintiffs is "material [that] is not privileged." (Dkt. 229 at 4). Neither side disputes whether the unredacted paragraphs contain privileged information; they do not.[3] These paragraphs are merely Zuffa's attorney relaying factual information regarding positions expressed during a meeting by representatives of both Dream Stage and Zuffa, as opposed to legal advice reflecting Mr. Paschall's understanding of confidential information received from Zuffa and analysis of the parties' positions. Where unredacted portions of a document reveal "only factual information . . . and contain[ed] no component of legal analysis," their disclosure does not waive privilege as to the redacted portions of those same documents. *Regents of University of California v. Micro Therapeutics, Inc.*, 2007 WL 2069946 at *3 (N.D. Cal. 2007); *see Robert Bosch LLC v. Pylon Mfg. Corp.*, 263 F.R.D. 142, 150 (D. Del. 2009) (finding that "disclosed parts of [] unredacted documents" that did not

---

[3] After contending that the Contested Communication contains no privileged information whatsoever, Plaintiffs make a half-hearted attempt to claim that one unredacted sentence may be privileged after all: [redacted] (Dkt. 229 at 8). In this sentence, Mr. Paschall is reporting only the position disclosed to him at the meeting by representatives of Dream Stage that [redacted] not his own assessment of the opportunity. An otherwise non-privileged statement by a third-party does not become privileged merely because it is paraphrased by lawyer and relayed to his client.

"contain any advice of counsel" did not waive attorney-client privilege as to the redacted portions of those same documents). Zuffa's disclosure of these unredacted paragraphs that include undisputedly non-privileged statements cannot constitute a waiver of privilege as to the redacted communications on this subject, which contain legal advice from its outside counsel.

The cases upon which Plaintiffs rely are easily distinguishable. The defendants in *Haigh* did not contest that they had voluntarily waived attorney-client privilege by producing entire communications regarding the suspension of an employee's pension in response to another motion. No. 2:14-CV-1545-JAD-VCF, 2015 WL 8375150, at *5 (D. Nev. Dec. 9, 2015) ("Pension Trust acknowledges that its disclosure of the emails constituted a waiver of the attorney-client privilege."). In *Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.*, again, the defendant conceded that they had waived attorney-client privilege as to communications between the defendant and its patent attorney that the defendant had already intentionally disclosed in the case. 254 F.R.D. 568, 576 (N.D. Cal. 2008) ("Phoenix acknowledges that it produced the original documents . . . voluntarily and not inadvertently and that attorney-client privilege as to those documents had been waived as a result."). In *Tennenbaum v. Deloitte & Touche*, the Ninth Circuit actually *reversed* a district court's finding of a privilege waiver, holding that there was no waiver where a party had not produced privileged material, even where the party had agreed to waive privilege in an agreement to settle a related action. 77 F.3d 337, 338-39 (9th Cir. 1996). None of these case support Plaintiffs argument that the disclosure of information that <u>the parties agree is not privileged</u> can result in the waiver for material that is otherwise privileged.

Finally, Plaintiffs' argument that Zuffa's assertion of affirmative defenses relating to the pro-competitive nature and effects of its conduct, [4] including acquisitions such as the PRIDE FC

---

[4] As an initial matter, the defense that an acquisition or other challenged conduct was procompetitive is not an affirmative defense in the sense that the burden of proof is on the defendant. It is well-established that Plaintiffs bear the burden of proving that the alleged conduct has anticompetitive effects. *Rambus Inc. v. F.T.C., 522* F.3d 456, 463 (D.C. Cir. 2008) ("it is the antitrust plaintiff . . . that bears the burden of proving the anticompetitive effect of the monopolist's conduct"). Although Zuffa, in an abundance of caution, expressly listed in its Answer that the challenged conduct was pro-competitive and supported by legitimate business justifications as an affirmative defense, this does not shift the burden to the defendant. Dkt. 212

purchase, somehow waives attorney-client privilege regarding *all* documents related to acquisitions of other promoters is wrong. Dkt 229 at 9. First, Zuffa has not raised advice of counsel as an affirmative defense. Second, the case Plaintiffs rely upon, *Phillips v. C.R. Bard, Inc.*, expressly rejected the argument that by raising an affirmative defense, a defendant has waived privilege on that subject matter as to all documents. 290 F.R.D. 615, 640-641. The *Bard* court recognized that a waiver of privilege resulting from a party's use of an affirmative defense is warranted "only once a party indicates an intention of relying upon privileged evidence during trial" and that a waiver is not appropriate when it is "not readily apparent . . . that [the party claiming privilege] will be relying on any specific documents it has withheld to support its defenses." *Id.* at 640. This makes sense and other courts have come to the same conclusion.[5] As the *Bard* court recognized, finding a waiver before the party claiming privilege has asserted an intent to use to document affirmatively asks "the court to make a leap between the assertion of broad affirmative defenses by [the defendant] and various documents that Plaintiff speculates [the defendant] will rely on in proving these defenses." *Id.* at 640-41. Zuffa has not shown any intent to use the document at issue for any purpose, let alone one that would warrant waiver. Plaintiffs' rank speculation that Zuffa is "producing communications [it] believes support its defense" does

---

at 23. In any event, regardless of whether one considers pro-competitive effects as an affirmative defense or not, Zuffa has no intention of relying on the advice of counsel or the Milbank Email to prove competitive effects of the acquisition of assets from Dream Stage (or any other acquisition); competitive effects will be shown in the usual fashion – through marketplace facts and economic evidence.

Similarly, the true affirmative defense that is relevant to the PRIDE acquisition – that the four-year statute of limitations (15 U.S.C. § 15b) has long since expired on this 2007 transaction – will be proven by other evidence, not by the Milbank Email or advice of counsel.

[5] *Bowoto v. Chevron Corp*, 2006 WL 2589198 at *3 (N.D. Cal. Aug. 30, 2006) (a party must use "the information contained in the [privileged] communications as an affirmative defense" to put the communications at issue and waive privilege); *see also Safety Dynamics Inc. v. General Star Indem. Co.*, 2014 WL 268653 at *3 (D. Ariz. Jan. 24, 2014) ("In order to waive the privilege, the party asserting the privilege must assert some claim or defense . . . .*and* that analysis must have incorporated information the litigant learned from counsel.") (emphasis added); *Harter v. CPS Security(USA), Inc.*, 2013 WL 3109847, at *8 (D. Nev. June 18, 2013) (defendants did not waive privilege by asserting an affirmative defense when they did not rely "on privileged, confidential advice received from pre-litigation counsel to support their affirmative defenses.").

not compel a contrary conclusion.

Furthermore, Plaintiffs proposed theory of waiver would effectively swallow the attorney-client privilege. "[T]he mere fact that an issue may be 'subject to dispute' does not mean that the parties have waived privilege with respect to any attorney-client communications 'that might touch on that question." *Fed. Deposit Ins. Corp. v. Lowis & Gellen LLP*, No. 11 CV 5902, 2014 WL 656660, at *5 (N.D. Ill. Feb. 20, 2014). If a waiver resulted from the mere possibility that a party could conceivably use privileged information to support its affirmative defenses (or case-in-chief), then the fear of inevitable discoverability would thwart the central purpose of the attorney-client privilege, that is, "to foster openness between attorney and client to enable the attorney to give the most well-informed legal advice to the client." *Premiere Digital Access, Inc. v. Cent. Tel. Co.*, 360 F. Supp. 2d 1168, 1175 (D. Nev. 2005)

## IV. CONCLUSION

For the foregoing reasons, Zuffa respectfully requests that this Court deny Plaintiffs' Motion to Challenge Privilege Designations. Because Plaintiffs' motion is not substantially justified and no other circumstances would make an award of expenses unjust, Zuffa respectfully requests that this Court award Zuffa its fees and costs in defending the instant motion. Fed. R. Civ. P. 37(a)(5)(B).

Dated: April 11, 2016

Respectfully submitted,

BOIES, SCHILLER & FLEXNER LLP

By: /s/John F. Cove, Jr.
John F. Cove, Jr.
*Attorneys for Defendant* Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC

John F. Cove, Jr. (*Pro Hac Vice* granted)
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
Tel: (510) 874-1000

Fax: (510) 874-1460
Email: jcove@bsfllp.com

William A. Isaacson (*Pro Hac Vice* granted)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave, NW
Washington, DC 20015
Tel: (202) 237-2727
Fax: (202) 237-6131
Email: wisaacson@bsfllp.com

Donald J. Campbell #1216
J. Colby Williams #5549
CAMPBELL & WILLIAMS
700 South 7th Street
Las Vegas, Nevada 89101
Tel: (702) 382-5222
Fax: (702) 382-0540
Email: djc@campbellandwilliams.com
jcw@campbellandwilliams.com

Richard J. Pocker #3568
BOIES, SCHILLER & FLEXNER LLP
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Tel: (702) 382 7300
Fax: (702) 382 2755
Email: rpocker@bsfllp.com

*Attorneys for Defendant* Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that service of the foregoing ZUFFA, LLC'S OPPOSITION TO PLAINTIFFS' MOTION TO CHALLENGE PRIVILEGE DESIGNATIONS (CORRECTED IMAGE) was served on the 18th day of April, 2016 via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

/s/ Michael Kim
An employee of Boies, Schiller & Flexner LLP