WILLIAM A. ISAACSON (*Pro Hac Vice*)
(wisaacson@bsfllp.com)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave, NW, Washington, DC 20015
Telephone: (202) 237-2727; Fax: (202) 237-6131

JOHN F. COVE, JR (*Pro Hac Vice*)
(jcove@bsfllp.com)
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900, Oakland, CA 94612
Telephone: (510) 874-1000; Fax: (510) 874-1460

RICHARD J. POCKER #3568
(rpocker@bsfllp.com)
BOIES, SCHILLER & FLEXNER LLP
300 South Fourth Street, Suite 800, Las Vegas, NV 89101
Telephone: (702) 382 7300; Fax: (702) 382 2755

DONALD J. CAMPBELL #1216
(djc@campbellandwilliams.com)
J. COLBY WILLIAMS #5549
(jcw@campbellandwilliams.com)
CAMPBELL & WILLIAMS
700 South 7th Street, Las Vegas, Nevada 89101
Telephone: (702) 382-5222; Fax: (702) 382-0540

*Attorneys for Defendant* Zuffa, LLC, d/b/a
Ultimate Fighting Championship and UFC

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury on behalf of themselves and all others similarly situated, | Case No.: 2:15-cv-01045-RFB-(PAL) |
| Plaintiffs, | **DEFENDANT ZUFFA, LLC'S OPPOSITION TO PLAINTIFFS' MOTION TO CHALLENGE PRIVILEGE DESIGNATION** |
| v. | |
| Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC, | **REDACTED** |
| Defendant. | |

## I.      INTRODUCTION

Plaintiffs' motion contests whether a communication between a lawyer, on one hand, and his supervising attorney and a high-level executive of his employer on the other, requesting feedback on draft language to be inserted into a contract is privileged.  Plaintiffs assert that the challenged communication relates "solely [to] a business matter" and that Defendant waived privilege when it produced the document.  Plaintiffs' assertions fail because: (1) the document is in fact a quintessential request for legal advice about contractual language, and therefore privileged; (2) the privilege was not waived; and (3) the motion is procedurally improper as the Plaintiffs did not comply with their obligations under the Federal Rules of Civil Procedure and the requirements under the Local Rules to meet and confer before seeking relief from the Court. Because Plaintiffs lack a legitimate argument that the communication is not privileged, it appears their purpose is to extend their briefing on issues relating to the burden of document review and production (already comprising approximately 36 pages of argument by Plaintiffs in the last Joint Status Report alone).  To make these points, however, they grossly inflate the importance of this document and resort to mischaracterizing the record, including the circumstances under which Zuffa voluntarily produced thousands of sample documents to the Plaintiffs in order to aid the parties' ongoing discussion of search terms.

Plaintiffs' privilege challenge is based on their unsupported reading of the document that the e-mail exchanged between Zuffa's Associate General Counsel (Michael Mersch) to his supervising attorney Chief Legal Officer (Kirk Hendrick) and its former General Counsel and current Chief Operating Officer (Lawrence Epstein) seeking advice on the "language" of a draft contract provision as a "pure business issue."  To support this incredible claim, Plaintiffs ask the Court to rely on a subtext that only they can see:  "Though Mr. Mersch asks for approval of the bonus language, he is clearly seeking approval of the amount and terms as a business decision." ECF No. 251 at p.6.  Nowhere does Mr. Mersch ask for approval of the "amount" of the bonus. Plaintiffs simply make this up.

Opposition to Motion to Challenge Privilege Designation

Plaintiffs' only remaining argument is that Zuffa has waived privilege by its inadvertent disclosure of this document when it provided a set of sample documents for testing purposes. This argument fails because (1) it omits and ignores the parties' explicit agreement that the provision of sample documents would not constitute any waiver, (2) Zuffa took adequate steps to prevent disclosure and promptly took reasonable steps to remedy the error, and (3) it is contrary to the letter and spirit of the Protective Order in this case.

Plaintiffs' motion raises graver concerns about the ability to efficiently and expeditiously produce documents and resolve discovery disputes in this matter. In resolving the instant motion, Zuffa respectively requests the Court to consider the potential effects on the discovery process going forward if Plaintiffs are permitted to disregard both the local rules and commitments Plaintiffs have negotiated with Zuffa to expedite the discovery process and the time and expense that will be required if Plaintiffs continue to make far-fetched challenges to the inadvertent production of privileged documents that are certain to occur in a case of this size.

Furthermore, Zuffa requests that the Court award it the fees and costs associated with defending against Plaintiffs' unsubstantiated and improper motion.

## II.     FACTS

### A.  Zuffa's Provision of Sample Documents

Zuffa provided Plaintiffs with four sample sets of documents totaling 6,300 documents to allow Plaintiffs to test the efficacy of the parties' search terms and other proposals. April Joint Status Report, ECF No. 244 at p. 45. The documents in these sample sets did not constitute a formal production, but were provided to Plaintiffs on an expedited basis as a courtesy under the parties' agreement that providing the samples "will not constitute a waiver of Zuffa's positions regarding responsiveness, attorney-client privilege, work product, or other applicable privileges" and "will be treated by Plaintiffs as Highly Confidential-Attorneys' Eyes Only under the Protective Order." Lynch Decl. ¶ 8.

In late March 2016, during the parties' continued discussions over search terms, the parties agreed that Zuffa would provide a sample of 2,000 documents intended to test a recent

Opposition to Motion to Challenge Privilege Designation

iteration of the parties' proposals.  Lynch Decl. ¶ 4.  Zuffa provided Plaintiffs with this sample on April 4 and April 5.  *Id.*  Because Zuffa ran the sample sets before the implementation of some agreed-upon winnowing proposals and before the segregation of some documents that were to be reviewed without search terms, Plaintiffs objected that the 2,000 sample documents contained some documents that should have been excluded from the sample.  *Id.* ¶ 6.  The Plaintiffs estimate was that approximately 10% of the 2,000 document sample (200 documents) may have been affected.   Although Zuffa believed this estimate was based in part on flawed premises and exaggerated numbers, to preempt any argument the sample was inadequate, Zuffa voluntarily provided a second sample of an additional 2,000 documents to Plaintiffs.  *Id.* ¶¶ 6-7.

### B.   The Challenged E-mail Was Coded Privileged on Zuffa's E-Discovery Platform, but Inadvertently Provided to Plaintiffs and Immediately Clawed Back.

At 8:03 p.m. PT on April 28 – the night before the most recent Joint Status Report was due – Plaintiffs for the first time sent Zuffa a packet of 15 exhibits drawn from the most recent 4,000 document samples that it planned to file with the Joint Status Report.  Lynch Decl. ¶ 9.  Among these 15 documents was MMERSCH00066967 (the "Challenged E-mail").  *Id.* ¶ 17, Ex, A.  As explained in the Lynch Declaration, Zuffa's reviewers had identified this document as privileged, coded it as such, and designated it for redaction or withholding prior to production.  Unfortunately, through an inadvertent error in the quality control ("QC") process, the redactions that should have been applied to MMERSCH00066967 were either not applied or failed to save before the document was provided.  Lynch Decl. ¶ 16.   This was, in part, due to Plaintiffs' request that the sample documents be produced natively, which required Zuffa to implement a two-tier production protocol for the samples, whereby non-privileged documents were produced natively and privileged documents or documents containing personal information were tiffed and redacted.

The following morning after Plaintiffs notified Zuffa that they intended to include MMERSCH00066967 as an exhibit to the Joint Status Report, Zuffa informed Plaintiffs that the sample document was privileged and had been inadvertently provided to them.  Lynch Decl. ¶ 10.  Plaintiffs responded that the claim of inadvertent production "strains credulity beyond breaking,"

Opposition to Motion to Challenge Privilege Designation

1  ECF No. 251-5 at p. 2 (M. Dell'Angelo 9:25 a.m. email) and asserted that Zuffa could not claw

2  the sample document back unless Zuffa agreed that Plaintiffs also were entitled to challenge the

3  designation of the sample document, which was never part of a formal production. *Id*. Zuffa

4  explained that Plaintiffs would be entitled to challenge the designation of this document at the

5  time it was formally produced and/or listed on its privileged log. *Id*. at p. 1 (M. Lynch 10:16 a.m.

6  email). Plaintiffs removed the exhibit and the one line parenthetical citation to the exhibit in the

7  Joint Status Report, but nevertheless indicated they would challenge the document's privilege

8  designation. Lynch Decl. ¶ 13. Since this time, Plaintiffs have not engaged in any further

9  discussions with Zuffa regarding this document or attempted to meet and confer about the subject

10 of this motion. *Id*. ¶ 14.

11        **C.  The Challenged E-mail Contains a Request for Legal Advice from Zuffa's**
          **Assistant General Counsel to Its Chief Legal Officer and Chief Operating**

12           **Officer/Former General Counsel.**

13     The Challenged E-mail was sent by Michael Mersch, Zuffa's Assistant General Counsel

14 to Kirk Hendrick, Zuffa's Chief Legal Officer, and Lawrence Epstein, who previously served as

15 the company's General Counsel from 2007 until 2012, when he assumed his current role as Chief

16 Operating Officer. Mr. Mersch's e-mail sets forth the text of proposed contractual language to

17 provide for the payment of an █████████████████████████████████████

18 ████████████████████████████ Ex. A. Mr. Mersch then requests legal advice from

19 Mr. Hendrick and Mr. Epstein, asking: "████████████████████████████████" *Id*.

20 (emphasis added). Significantly, the e-mail does not request that Mr. Hendrick or Mr. Epstein

21 review or approve the <u>amount of the proposed compensation</u> in the proposed text, but instead

22 requests that they review the language itself.

23     The language of the proposed contract term in the Challenged E-mail differs from the

24 language in the contract that was ultimately executed by the athlete. In the Challenged E-mail,

25 the proposed contractual language is as follows, with the language deleted between this iteration

26 and the negotiated, executed contract in boldface type:

27 ██████████████████████████████████████

28 ██████████████████████████████████████

Opposition to Motion to Challenge Privilege Designation



Although the amount of the additional bonus did not change, the executed agreement, which has already been produced to Plaintiffs, differs from the draft language in the Challenged E-mail about which Mr. Mersch requested legal advice.  The newly added language is in boldface type below:



Lynch Decl. ¶ 18, Ex. B, ZFL-0146240.  Other documents already produced to Plaintiffs show that the negotiation during this time period between Zuffa and the athlete's attorney and other representatives was over the language of the contractual term, not the amount itself.  Lynch Decl. ¶ 19, Ex. C, ZFL-0945636 to 0945661 (February 24, 2014 E-mail from Mr. Mersch to the athlete's representatives, enclosing a redline version of the agreement).  Mr. Mersch sent the revised drafts to the athlete's representatives after seeking legal advice from Mr. Hendrick regarding the language of the agreement.

III.    ARGUMENT

  A. Plaintiffs' Motion Fails on the Merits.

Plaintiffs' motion fails on the merits because the Challenged E-mail, sent by Zuffa's Assistant General Counsel to its Chief Legal Officer and its former General Counsel requesting legal advice on the language of a draft contract provision, is clearly privileged.  Furthermore, Zuffa's inadvertent disclosure of this sample document to Plaintiffs does not constitute a waiver because (1) Zuffa took reasonable measures to protect the document, (2) this sample document

has not yet been formally produced and thus does not fall under the requirements of Federal Rule of Civil Procedure 26, and (3) it was provided to Plaintiffs under express assurances that doing so would not constitute a waiver of any applicable privilege.

### 1. Legal Standard

Rule 501 of the Federal Rules of Evidence codifies the applicability of common law to federal proceedings, stating that the "common law – as interpreted by United States courts in the light of reason and experience – governs a claim of privilege" unless the U.S. Constitution, federal statute, or the rules provide otherwise.  Fed. R. Evid. 501.  The privilege "serves to protect confidential communications between a party and its attorney in order to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'"  *Harter v. CPS Sec. (USA), Inc.*, No. 2:12-CV-00084-MMD, 2013 WL 3108947, at *4 (D. Nev. June 18, 2013) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).  The Ninth Circuit recognizes the attorney-client privilege attaches:  (1) where legal advice of any kind is sought, (2) from a professional legal advisor in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are, at that instance, permanently protected, (7) from disclosure by the client or by the legal advisor, and (8) unless the protection is waived.  *In re: Fischel,* 557 F.2d 209, 211 (9th Cir. 1977); *Admiral Ins. Co. v. U.S. Dist. Ct.,* 881 F.2d 1486, 1492 (9th Cir. 1989).

The privilege applies where legal advice of any kind is sought from a professional legal advisor in her capacity as such, and the communication relates to that purpose, and is made in confidence by or for the client.  *Upjohn Co.,* 449 U.S. at 389.  "It is by now well established . . . that the attorney-client privilege attaches to corporations as well as to individuals" and "serves the function of promoting full and frank communications between attorneys and their clients." *Commodity Futures Trading Com'n v. Weintraub*, 471 U.S. 343, 348 (1985).  "The Supreme Court has held that a corporation's in-house counsel qualifies as an attorney for purposes of the attorney-client privilege." *Premiere Digital Access, Inc. v. Cent. Tel. Co.*, 360 F. Supp. 2d 1168, 1175 (D. Nev. 2005) (citing *Upjohn*, 449 U.S. at 394-95).  The privilege extends beyond litigation counsel to attorneys providing any type of legal advice, and "applies to communications between

6

lawyers and their clients when the lawyers act in a counseling or planning role . . . ." *Ideal Elec.*

*Co. v. Flowserve Corp.*, 230 F.R.D. 603, 607 (D. Nev. 2005).

### 2. The Challenged E-mail Contains Privileged Communications Between Zuffa's In-House Counsel About the Sufficiency of Proposed Contractual Language.

The Challenged E-mail reflects a quintessential attorney-client privileged communication – one lawyer sends proposed contractual language to another lawyer and seeks his advice on the language of the provision. Courts have routinely held that proposed contractual language is the type of attorney-client communication deserving of protection. For example, in *Muller v. Walt Disney Products*, the court explained that "[p]reliminary drafts of contracts are generally protected by attorney/client privilege, since they may reflect not only client confidences, but also legal advice and opinions of attorneys, all of which is protected by the attorney/client privilege." 871 F. Supp. 678, 682 (S.D.N.Y. 1994); *see also Iowa Pac. Holdings, LLC v. Nat'l R.R. Passenger Corp.*, No. 09-cv-02977-REB-KLM, 2011 WL 1527599, at *4 (D. Colo. Apr. 21, 2011) (same); *Se. Pennsylvania Transp. Auth. v. Caremarkpcs Health, L.P.*, 254 F.R.D. 253, 260 (E.D. Pa. 2008) (denying a motion to compel and holding that the challenged "communications are privileged because they contain legal advice regarding proposed contract language").

Here, Mr. Mersch, Zuffa's former Assistant General Counsel, sent an email titled ' ███████ ███████████████████████████████████████ That email includes a draft of proposed language for a contract provision and asks Mr. Hendrick, Zuffa's Chief Legal Officer, and Mr. Epstein, Zuffa's COO (*i.e.*, Mr. Mersch's client), whether they ███████████████ ██████████████ Ex. A; *see also* Declaration of Kirk D. Hendrick ("Hendrick Decl.") ¶ 4. Ensuring that a contract is clearly and accurately drafted is a critical legal function and protecting the privilege afforded to communications such as this one is critical because it is at this "time when the attorney's advice is most useful – i.e., before the client takes an action that could ultimately lead to a costly dispute in the courts." *Premiere Digital Access*, 360 F. Supp. 2d at 1175. This communication among lawyers and a client regarding proposed contractual language is precisely the type of communication the attorney-client privilege is designed to protect. Every

7

contract is a "business document" with a business purpose, but that does not mean, as Plaintiffs would have it, that a confidential request for legal advice between lawyers as to potential language of the contract is not privileged.

A comparison of the proposed contractual language in the Challenged E-mail and in the executed agreement provides further support that this document is privileged.  Evidence that a document contains draft contract language that differs from the final executed version of the contract supports a finding of privilege. *United States v. New York Metro. Transp. Auth.*, No. CV 2004-4237(SLT)(MDG), 2006 WL 3833120, at *1 (E.D.N.Y. Dec. 29, 2006) ("Draft documents ultimately sent to third parties retain their privilege 'if they were prepared for the purpose of obtaining legal advice and/or contain information a client considered but decided not to include in the final version.'") (citing *Renner v. Chase Manhattan Bank*, 1998 No. 98 CIV 926, 2001 WL 1356192, at *8 (S.D.N.Y. Nov. 1, 2001)); *see also Andritz Sprout-Bauer, Inc. v. Beazer East, Inc.*, 174 F.R.D. 609, 633 (M.D. Pa. July 28, 1997) ("Draft of documents prepared by counsel or circulated to counsel for comments on legal issues are considered privileged if they were prepared or circulated for the purpose of giving or obtaining legal advice and contain information or comments not included in the final version").  As discussed above, the proposed language contained in the Challenged E-mail differs from the final, executed version of the agreement. S*ee* Section II.C *supra*.  Although the communication would still be privileged even if the final exchanged version were identical to a draft sent internally sent between in-house counsel, *New York Metro. Transp. Auth.*, 2006 WL 3833120, at *2 ("Although the uniform policy bulletins were intended to be, and ultimately were, released to TA employees, it is clear from review that the client still intended that his communications with his attorney prior to the finalization of the document remain confidential."), the fact that the language differs further supports that this is a privileged communication.

Plaintiffs cannot argue that an attorney seeking advice related to proposed contractual language is not privileged.  The cases that Plaintiffs' cite expressly acknowledge that "drafts of a contract, which, when prepared by counsel or containing comments by counsel that communicate

Opposition to Motion to Challenge Privilege Designation

legal advice, can be protected by attorney-client privilege." *Schlicksup v. Caterpillar, Inc.*, No. 09-CV-1208, 2011 WL 11737159, at *4, n.5 (C.D. Ill. Aug. 19, 2011) (citation omitted).  Instead, they mischaracterize the Challenged Email, stating that it says something it does not – that "this email is a simple recitation of the amount of a ███████████, and a request for approval of that bonus." ECF No. 251 at p.7.  But both the subject line of the email – ███████████████ ████████████████████████████████ – and the request for legal advice in the body of the email itself – ███████████████████████████████████ – make clear that the nature of the request for advice is about contractual language, Lynch Decl. ¶ 18, Ex. B, ZFL-0146240 (emphasis added) , not "the amount of a ███████████" as Plaintiffs' repeatedly claim.  ECF No. 251 at p. 7; *cf* Hendrick Decl. ¶ 4.  Other documents already produced in discovery provide further support that it was the language of the provision and not the amount itself which was subject to negotiation at this time.  In Exhibit C, Zuffa's counsel provides a redline agreement to the athlete's representatives which shows the changes from the previous version.  Contrary to Plaintiffs' argument, this document shows that the amount of the bonus stayed the same, but the language in the provision changed.

Finally, the identity of the three participants in the email chain provides further support that Mr. Mersch's request was a legal one, not a business one.  The document does not include any of the non-lawyer employees or executives who are routinely involved in negotiations with athletes, which further undermines Plaintiffs' position that this is about the approval of a payment amount.  *Cf. Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 657 (D. Nev. 2013) (limiting distribution of communication of request to in-house counsel for legal advice favors finding of privilege).  Their own *ipse dixit* aside, nothing in the Challenged E-mail supports Plaintiffs' position that this e-mail addresses only a "pure business issue" rather than a request for legal advice.  ECF No. 251 at p. 1.[1]  To the contrary, the e-mail contains no indicia that Mr. Mersch requested anything other than legal advice.

---

[1] The cases Plaintiffs cite in support of their position highlight the privileged nature of the challenged communication.  In *Oracle Am., Inc. v. Google, Inc.*, the challenged e-mail was sent by a software engineer to the Vice-President in charge of Google and Android and an in-house

Opposition to Motion to Challenge Privilege Designation

**3. Zuffa Has Not Waived Privilege Over the Challenged E-mail.**

Zuffa's provision of the Challenged E-mail to Plaintiffs in the sample set does not waive

privilege over the document because:  (1) the disclosure was inadvertent; (2) Zuffa took

reasonable steps to prevent disclosure; and (3) Zuffa took less than a day before learning of the

disclosure to clawback the document.  "Under FRE 502(b), disclosure does not operate as a

waiver where (a) the disclosure is inadvertent; (b) the holder of the privilege took reasonable

steps to prevent disclosure; and (c) the holder promptly took reasonably steps to rectify the error."

*Pac. Coast Steel v. Leany*, No. 2:09-CV-02190-KJD, 2011 WL 4704217, at *1 (D. Nev. Oct. 4,

2011).  "Factors to be considered in determining whether the disclosure was inadvertent include:

(a) the reasonableness of precautions used to prevent inadvertent disclosure; (b) the time taken to

rectify the error; (c) the scope of discovery; (d) the extent of the disclosure; and (e) the overriding

issue of fairness."  *Id.* at *4.

Zuffa is in the process of reviewing and producing a massive volume of documents.  To

date, Zuffa has produced over 140,000 new documents comprising nearly a million pages.

Parallel to its efforts to review and produce documents, since the last Status Conference alone

Zuffa has also provided Plaintiffs with 4,000 additional sample documents to aid in the parties'

search term negotiations, which contained this one-page privileged e-mail.

Plaintiffs claim that because other sample documents provided were properly redacted for

privilege that Zuffa's counsel must have consciously determined that this document was not

privileged, then for no discernable reason changed their mind.  This position is illogical.  The

nature of an inadvertent production is a document that was intended to have been withheld or

redacted *inadvertently* was not.  As Ms. Lynch explains, this document was flagged as privileged,

---

attorney at Google.  No. C 10-03561 WHA, 2011 WL 5024457, at *2 (N.D. Cal. Oct. 20, 2011).
In finding that the e-mail was not privileged, the court noted that (1) the e-mail was addressed
only to the non-lawyer; (2) did not "indicate that it was prepared in anticipation of litigation and
to further the provision of legal advice"; and (3) Google did not object when part of the e-mail
was read into the record at a hearing.  *Id.* at *1-2, 4.  Here, the email was addressed to two
lawyers, Mr. Mersch specifically sought legal advice regarding proposed contractual language,
and Zuffa objected to Plaintiffs' use of the document prior to its inclusion in any filing.

Opposition to Motion to Challenge Privilege Designation

but through an error in the QC process failed to have the redactions applied or saved to the document prior to Zuffa providing it to Plaintiffs.  Lynch Decl. ¶ 16.  After learning of the disclosure at 8:03 p.m. on April 28, Zuffa acted to remedy this error before 9 a.m. the following morning.  Lynch Decl. ¶¶ 9-10.

Finally, considerations of fairness overwhelmingly favor Zuffa.  The document at issue has neither been formally produced nor formally withheld from production at this point, but instead was provided to Plaintiffs as a courtesy to aid in the parties' search term negotiations.  Plaintiffs' position – that Rule 26 applies to the sample set – would require Zuffa to provide a privilege log to justify every redaction made in the sample set, an exercise that defies all reasonable expectations, particularly where, as here, thousands of non-responsive and potentially privileged documents have been provided to Plaintiffs solely for the purpose of analyzing the precision and recall of search terms.  As Zuffa informed Plaintiffs, "Plaintiffs will have a right to challenge Zuffa's privilege designation of this document at the time it is formally produced and/or listed on Zuffa's privilege log, subject to the parties' further discussion regarding legal custodians."  Exhibit 4, ECF No. 251-5 at p.1.

Plaintiffs' position that Zuffa has waived the privilege of this document also directly contradicts the parties' agreement on the provision of sample documents.  It was Plaintiffs who proposed the protocol under which sample documents would be provided, including that the provision of sample documents would not constitute a waiver.[2]  Relying on the parties' agreement, Zuffa provided the sample documents to Plaintiffs with the clear explanation that:

> These sample documents are produced for sampling purposes only, ***will not constitute a waiver of Zuffa's positions regarding responsiveness, attorney-client privilege, work product, or other applicable privileges***, are not being endorsed, will be treated by Plaintiffs as Highly Confidential-Attorneys' Eyes Only under the

---

[2] "The Parties agree that the Non-Hits will be produced for sampling purposes only, will not constitute a waiver, do not need to be endorsed prior to production, will be treated as Attorneys Eyes Only and will be returned not later than 48 hours after the Court's order regarding the applicability of search terms, unless otherwise agreed by the parties in writing." Lynch Decl. ¶ 3, Feb. 2, 2016 Email from M. Dell'Angelo.

Opposition to Motion to Challenge Privilege Designation

> Protective Order, and will be returned no later than 48 hours after the Court's order regarding the applicability of search terms, unless otherwise agreed by the Parties in writing.

Lynch Decl. ¶ 8 (emphasis added).  Despite an explicit agreement that the sample documents would not constitute a waiver, Plaintiffs now assert that Zuffa has waived the privilege of this document.  This is now the second time since the last Status Conference that Plaintiffs have agreed to one procedure in discussions with Zuffa's counsel and then subsequently challenged Zuffa's reliance on that agreement in a court filing.[3]  This behavior significantly hinders the parties' ability to move forward with negotiations in good faith.  Zuffa can no longer provide information to Plaintiffs under assurances agreed to by the parties for fear that it will later lead to frivolous challenges that seem designed only to increase costs, churn resources, and waste the valuable time of the parties and this Court.

### 4. Plaintiffs' Motion is an Impermissible Attempt to Supplement the Joint Status Report.

In an apparent attempt to supplement the 70-page Joint Status Report, Plaintiffs include two sections in the Motion on why they believe this document is relevant to their case and their impression of the impact this document has on the parties' search term proposals.  This discussion is wholly unwarranted in a motion determining whether a challenged document is privileged, but provides insight into Plaintiffs' motivation for challenging this obviously privileged document.

Because Plaintiffs have raised this issue, a few points in response are necessary. First, the challenged document is included in Zuffa's current Review Set because it hits on Zuffa's new search term " ███████████████████ " ECF No. 244-4.  This document thus shows the sufficiency of Zuffa's revised search term list, which Plaintiffs criticized in the Joint Status Report.  Second, Zuffa has already produced to Plaintiffs the very sorts of "behavioral" documents they claim are lacking from the fighter files.  These documents include Exhibit D, ZFL-0827826-28 (internal discussions regarding competing offer to ████████ from UFC competitor ████████); Exhibit E, ZFL-0945634 (communication from ████████ attorney and

---

[3] Zuffa discussed the other incident in the Joint Status Report ECF No. 244 pp. 52-59.

1   management team regarding Zuffa's offer); Exhibit C, ZFL-0945636 (negotiations between Zuffa

2   and ██████████ manager/agent regarding the agreement); Exhibit F, ZFL-0146593 (Staff Briefing

3   on ████████ signing).  Lynch Decl. ¶¶ 18-21.  In short, Plaintiffs have received documents

4   showing the full picture of these negotiations, including communications about contractual terms,

5   the draft agreements exchanged between Zuffa and this and other athletes' agents, as well as the

6   final executed version of agreements and granular financial data showing all the various sources

7   and amounts of compensation Zuffa paid to the athletes.  Plaintiffs are not entitled, however, to

8   privileged communications between in-house lawyers regarding proposed contractual language.[4]

9           Finally, Plaintiffs' suggestion that this document is of some probative significance in this

10   case is not credible.  Until now, Plaintiffs have not attacked the payment of individually

11   negotiated bonuses, nor could they and still purport to represent the putative class.  The

12   contractual provision here – ████████████████████████████████████ – is not

13   one that Plaintiffs have challenged in their Complaint and they have offered no theory whereby

14   this provision could have any exclusionary or anticompetitive effect.  In any event, as noted

15   above, Plaintiffs already have the executed contracts and have or will get the draft contracts

16   exchanged between the parties and a number of other documents related to the contracts, which

17   not only are captured by many of Zuffa's search terms, but also are contained in the Fighter Files

18   which Zuffa has reviewed without the use of search terms.  Indeed, in making this argument,

19   Plaintiffs demonstrate exactly why their position that it is necessary to capture every document

20   that mentions the first, last or nickname of every fighter is wrong.  The fact that they need to rely

21

22

---

23   [4] Plaintiffs' insinuation that Zuffa clawed the document back after seeing its context in the Joint
     Status Report is misleading.  Plaintiffs provided Zuffa with a draft of its Joint Status Report and

24   the exhibits to be included after 8:00 p.m. PT the day before the Joint Status Report was due.
     Zuffa clawed back the document the very next morning.  Had Plaintiffs provided Zuffa the

25   exhibits that it intended to include with the Joint Status Report prior to exchanging its draft, Zuffa
     would have clawed the document back earlier.  Nor did Plaintiffs discuss this document in any

26   depth in its previous draft of the Joint Status Report.  Plaintiffs included only a single
     parenthetical about this document: "noting fighter's effort to negotiate specific provision of

27   contract." ECF No. 251-3 at p.18.

28

Opposition to Motion to Challenge Privilege Designation

1    on this document, out of thousands of samples, to suggest that Zuffa's search terms are missing

2    important documents demonstrates that Zuffa's search terms are in fact working properly.

3    **B.  Plaintiffs' Motion is Procedurally Improper.**

4    In addition to failing on the merits, Plaintiffs' motion is procedurally improper because

5    Plaintiffs have failed to comply with requirements of Federal Rule of Civil Procedure 37(a) and

6    Local Rule 26-7, which obligates the parties to meet and confer prior to seeking relief from the

7    Court.  Since the parties have not met and conferred on this dispute, Mr. Rayhill's declaration

8    fails to meet the requirements of L.R. IA 1-3(f)(2), including describing "all meet-and-confer

9    efforts, including the time, place, manner, and participants" and providing a certification that

10   "despite a sincere effort to resolve or narrow the dispute during the meet and confer conference,

11   the parties were unable to resolve or narrow the dispute without court intervention."  Local Rule

12   26-7 makes clear that discovery motions which do not comply with its requirements "will not be

13   considered."  As such, Plaintiffs' motion can also be denied on this independent basis.  *Elan*

14   *Microelecs. Corp. v. Pixcir Microelecs. Co. Ltd.*, No. 2:10-cv-00014-GMN-PAL, 2013 WL

15   4499006, at *6 (D. Nev. Aug. 14, 2013).

16   **C.  Zuffa Should Be Awarded Costs and Fees for Responding to Plaintiffs'**
     **Improper Motion**

17

18   Plaintiffs' motion is both procedurally improper and lacking in merit.  Under Federal Rule

19   of Civil Procedure 37(a)(5)(B), the Court may award Zuffa its fees and costs in defending a

20   motion that was not substantially justified.  A matter is not substantially justified if reasonable

21   people could not differ on the matter in dispute.  *U.S. E.E.O.C. v. Caesars Entert., Inc.*, 237 F.R.

22   D. 428, 435 (D. Nev. Aug. 22, 2006).  Here, as a matter of law, Plaintiffs' motion is procedurally

23   deficient because it does not comply with the Local Rules and reasonable people could not

24   dispute that the challenged document is privileged.  For the reasons explained more fully above,

25   the award of fees and costs are warranted pursuant to Federal Rule of Civil Procedure 37(a)(5)(B)

26   and Local Rule IA 1-3 (f)(3), which permits a Court to "impose appropriate sanctions under LR

27   IA 11-8 for a party's failure to comply with the meet and confer requirement."

28

Opposition to Motion to Challenge Privilege Designation

## IV. CONCLUSION

Zuffa respectfully requests the Court deny Plaintiffs' Motion to Challenge Privileged Designation and award Zuffa its fees and costs in responding to the motion.


Dated: May 13, 2016                              **BOIES, SCHILLER & FLEXNER LLP**



By: /s/ John F. Cove, Jr.
     John F. Cove, Jr.
*Attorneys for Defendant* Zuffa, LLC, d/b/a
Ultimate Fighting Championship and UFC

John F. Cove, Jr. (*Pro Hac Vice*)
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
Tel: (510) 874-1000
Fax: (510) 874-1460
Email: jcove@bsfllp.com


William A. Isaacson (*Pro Hac Vice*)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave, NW
Washington, DC 20015
Tel: (202) 237-2727
Fax: (202) 237-6131
Email: wisaacson@bsfllp.com

Donald J. Campbell #1216
J. Colby Williams #5549
CAMPBELL & WILLIAMS
700 South 7th Street
Las Vegas, Nevada 89101
Tel: (702) 382-5222
Fax: (702) 382-0540
Email: djc@campbellandwilliams.com
           jcw@campbellandwilliams.com


Richard J. Pocker #3568
BOIES, SCHILLER & FLEXNER LLP
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Tel: (702) 382 7300

15

1

Fax: (702) 382 2755
Email: rpocker@bsfllp.com

2

*Attorneys for Defendant* Zuffa, LLC, d/b/a Ultimate
Fighting Championship and UFC

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Opposition to Motion to Challenge Privilege Designation

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that service of the foregoing **Defendant Zuffa, LLC's Opposition to Plaintiffs' Motion to Challenge Privilege Designation** was served on May 13, 2016 via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

/s/ Michael J. Kim
An employee of Boies, Schiller & Flexner, LLP

17

Opposition to Motion to Challenge Privilege Designation