1

2

3

4

5

6

7

8

9

10

11

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

CUNG LE, et al.,

Plaintiffs,

v.

ZUFFA, LLC, et al,

Defendants.

Case No. 2:15-cv-01045-RFB-PAL

**ORDER**

(Mot Challenge Privilege – (Dkt. ##227/229)

12      Before the court is Plaintiffs' Motion to Challenge Privilege Designation (Dkt. #227)

13   filed under seal, and the redacted version (Dkt. #229) filed on the public record.  The court has

14   considered the motion, Defendant Zuffa, LLC's opposition (Dkt. #231), and numerous related

15   filings.[1]

16                                    **BACKGROUND**

17   **I.      THE AMENDED COMPLAINT AND PROCEDURAL HISTORY**

18      Plaintiffs filed their Consolidated Amended Antitrust Class Action Complaint (Dkt. #208) on

19   December 18, 2015.  It is a civil antitrust action under Section 2 of the Sherman Act, 15 U.S.C.

20   § 2, for treble damages and other relief arising out of allegations of Zuffa's anti-competitive

21   scheme to maintain and enhance a monopoly power in the market for promotion of live elite

22   professional Mixed Martial Arts ("MMA") fighter bouts and monopsony power of the market for

23   live elite professional MMA fighter services.  The named Plaintiffs bring suit on behalf of

24   themselves and as a class action on behalf of others similarly situated under Rule 23 of the

25   Federal Rules of Civil Procedure against Zuffa, operating under the trademark Ultimate Fighting

26

27   [1]   The papers in this case were filed in a confusing fashion and were not linked by docket numbers.
Rather than list all of the docket numbers concerning matters filed on the public record, and matters filed

28   under seal and redacted, the court assures the parties it has reviewed all of the moving and responsive
papers pertinent to this motion.

1

1  Championship or "UFC".  Plaintiffs claim that the UFC has engaged in an illegal scheme to

2  eliminate competition from would-be MMA promoters by systematically preventing them from

3  gaining access to resources critical to successful MMA promotions, including by imposing

4  extreme restrictions on UFC fighters' ability to fight for would-be rivals during and after their

5  tenure with the UFC.  The amended complaint claims that as part of its scheme, UFC controls

6  not only fighter careers, but also takes and expropriates the rights to their names and likeliness in

7  perpetuity.  As a result of this conduct, UFC fighters are paid a fraction of what they would earn

8  in a competitive marketplace.

9  **II.    THE PARTIES' DISPUTE**

10        **A.    Plaintiff's Motion to Challenge Privilege**

11        In the current motion, Plaintiffs challenge the designation of an email as privileged.  For

12  ease of reference the email is referred to as the "Milbank email."  It was produced by Zuffa in

13  response to Request for Production No. 54, which sought all documents or communications

14  provided to or received from any government agency, including the Federal Trade Commission

15  ("FTC").  The Milbank email was produced as part of approximately 108,000 documents that

16  Zuffa had originally produced to the FTC in 2011 during an FTC investigation of Zuffa's

17  acquisition of rival promoter Strikeforce.  The email was produced with an electronic slip sheet

18  indicating it was withheld as privileged, but the document itself was not removed from the

19  production.

20        On January 27, 2016, Plaintiffs notified Zuffa that it had produced a number of

21  documents with slip sheets indicating they were privileged, along with the documents

22  themselves.  Plaintiffs inquired whether Zuffa intended to produce the text of the documents and

23  whether it claimed the documents were privileged.  Zuffa responded on February 12, 2016, that

24  the documents were protected by the attorney-client privilege.  Plaintiffs requested that Zuffa

25  state with specificity the basis for its assertion of privilege.  Zuffa responded on March 4, 2016,

26  submitting a redacted version of the Milbank email claiming certain portions were privileged and

27  certain portions were not. On March 16, 2016, Plaintiffs agreed to return four of the documents

28

1  Zuffa claimed were privileged, but dispute some of the redacted portions of the Milbank email

2  are attorney-client protected.

3  The Milbank email concerns Zuffa's acquisition of Pride FC, a rival mixed martial arts

4  promoter.  It is a January 31, 2007 email sent by Zuffa's outside counsel, C. Thomas Paschal, of

5  Milbank, Tweed, Hadley & McCloy, LLP, to two Zuffa managers and its CEO, COO, and CFO,

6  and copied to two other Milbank lawyers.  Plaintiffs maintain that the redacted portions of the

7  document are not privileged because there is no analysis of any law or statute, no legal advice is

8  communicated, and the document either rehashes the respective positions of the parties to an

9  arms-length business transaction, or states Zuffa's business intention in pursuing the acquisition.

10  Plaintiffs rely on a line of cases holding that a company's business objectives in entering into a

11  transaction are not privileged, and that when a lawyer serves as a negotiating agent

12  communicating negotiations to his client, the attorney-client privilege is not implicated.

13  Plaintiffs concede that certain paragraphs of the communication were appropriately

14  redacted.  However, Plaintiffs also argue that Zuffa waived any arguable claim of privilege by

15  producing other communications by Mr. Paschal concerning the same negotiation and by

16  producing a redacted version of the disputed email. Relying on the doctrine of selective waiver,

17  Plaintiffs argue that fundamental fairness prohibits a privilege holder from selectively disclosing

18  privileged communications to an adversary revealing those that support the adversary's case

19  while withholding information that is less favorable.  Plaintiffs therefore ask the court to order

20  Zuffa to withdraw the challenged redactions to the email and produce an appropriately modified

21  version for Plaintiff's use in this litigation.

22  One of the Plaintiffs' claims in this case is that Zuffa acquired Pride FC as part of an anti-

23  competitive scheme to acquire and eliminate rivals.  *See* Plaintiffs' Consolidated Complaint

24  (Dkt. #208), ¶ 14.  Zuffa's President, Dana White, made conflicting statements about the Pride

25  acquisition.  On the one hand he boasted "Pride is dead, dummy!  I killed them!!!"  *Id.* at ¶ 129.

26  On the other hand, White also made statements denying that Zuffa intended to kill Pride in

27  public statements, and Zuffa denied that it purchased Pride FC as part of a scheme to acquire and

28  eliminate rivals in its answer.  (Dkt. #212, ¶ 17).

3

1          **B.      Zuffa's Opposition**

2          Zuffa opposition recites the history of its 2011 production to the FTC.  On August 19,

3    2011, Zuffa's counsel inadvertently produced three documents, including the Milbank email at

4    issue in Plaintiffs' motion.  Counsel for Zuffa wrote to FTC staff, explained the inadvertent

5    production of three privileged documents, and obtained the FTC's agreement to clawback the

6    documents.  The documents, including the Milbank email, were listed on the privilege log Zuffa

7    provided to the FTC.  However, an error by Zuffa's vendor resulted in its inadvertent production.

8    Zuffa produced the FTC production to the Plaintiffs in response to Request for Production No.

9    54 in November 2015.  To expedite production of the FTC materials, counsel for the parties

10   agreed Zuffa would reproduce its production to the FTC concerning the Strikeforce investigation

11   "in the form in which it was initially produced."  Zuffa's counsel reproduced the FTC production

12   in the form in which it received those documents from the e-discovery vendor that handled the

13   2011 production.  Counsel for Zuffa did not realize that the FTC production was transferred to

14   current counsel for Zuffa with extracted text, rather than as-produced text.  The result is that

15   Zuffa's current counsel inadvertently produced a group of documents containing slip sheets

16   identifying the documents were withheld as privileged, but with extracted text reflecting the

17   underlying privileged information rather than the OCR'd text of the slip sheet that had been

18   produced to the FTC to correct the original inadvertent production in 2011.

19         On January 27, 2016, counsel for Plaintiffs wrote informing Zuffa that the information

20   from the documents designated as privileged were viewable.  Counsel for Zuffa responded a

21   short time later the same day after investigating the matter and confirmed that the documents

22   identified by Plaintiffs were privileged, likely inadvertently produced to the FTC in the first

23   instance, and that the inadvertent production of the documents did not waive Zuffa's privilege.

24         During a subsequent investigation, counsel for Zuffa confirmed that the Milbank email

25   was inadvertently produced in 2011, identified the technical error that caused the inadvertent

26   production, and provided Plaintiffs with clawback correspondence between the FTC and Zuffa

27   from 2011.  The parties discussed an appropriate solution and decided to provide a text file

28   overlay for the entire production.  Zuffa provided that overlay on February 12, 2016.  Plaintiffs

1    demanded further information regarding the basis for the assertion of privilege for five

2    documents, including the Milbank email.  Zuffa responded with justifications for asserting the

3    privilege, provided a copy of the privilege log it provided to the FTC in its native Excel format,

4    and a redacted version of the Milbank email to Plaintiffs.  It was not until April 1, 2016, that

5    Plaintiffs decided to challenge the privilege designation.

6         Zuffa contends that the Milbank email contains legal advice from Zuffa attorney, Charles

7    Thomas Paschal.  The law firm of Milbank, Tweed, Hadley and McCloy was retained in 2006 to

8    provide legal representation regarding the potential acquisition of the assets of Dream Stage

9    Entertainment, owner of the Japan-based MMA promoter Pride FC.  Mr. Paschal was the senior

10   level associate with the firm who worked on the matter under the direction of managing partner,

11   Kenneth Baronsky.

12        The opposition is supported by the declaration of Mr. Paschal.  In it, Paschal avers that in

13   the course of representing Zuffa, both he and his managing partner received confidential

14   information from Zuffa for the purpose of evaluating and making recommendations regarding

15   the legal ramifications of the structure, timing, and other terms of the proposed acquisition

16   transaction, as well as the extent of the due diligence and other legal requirements to be

17   performed in advance of the proposed acquisition. Paschal Declaration ¶ 3.  Paschal traveled to

18   Tokyo, Japan in January 2007, to meet with executives from Dream Stage and their counsel

19   regarding the proposed acquisition. *Id.* ¶ 4.  After the meeting, Mr. Paschal sent an email to two

20   of Zuffa's managers and its CEO and COO copying two other Milbank lawyers. *Id.* ¶ 5.  The

21   email discussed: implications and reasons underlying Milbank's advice regarding, among other

22   things; due diligence and the letter of intent; the timing and structure of this transaction; and

23   further analyses and services that would be necessary to move forward, such as obtaining tax

24   advice. *Id.*

25        Zuffa maintains that the unredacted portions of the Milbank email consists of Paschal's

26   reports of the positions that Dream Stage's representatives communicated to him and the

27   positions that he communicated to Dream Stage on behalf of Zuffa.  Zuffa contends that the

28   redacted portions of the email consist of Paschal's communication to Zuffa and other lawyers

1   which consists of confidential legal advice developed in the course of due diligence performed

2   by the firm on Zuffa's behalf and confidential disclosures made by Zuffa to its outside counsel to

3   obtain legal advice regarding the acquisition of assets from Dream Stage.  The first redacted

4   paragraph also reflects Mr. Paschal's impressions of confidential disclosures made by Zuffa to its

5   attorneys at Milbank for the purpose of seeking legal advice and conveys legal advice from

6   Paschal to Zuffa based on and regarding the extent of due diligence performed on the proposed

7   acquisition.

8        The second redacted paragraph contains Mr. Paschal's impressions of confidential

9   communications made by Zuffa to its attorneys for the purpose of obtaining legal advice.  Zuffa

10  therefore seeks to clawback the document under Rule 501 of the Federal Rules of Evidence

11  which shields attorney-client communications from disclosure.  The touchstone of whether a

12  communication falls within the scope of the attorney-client privilege is whether the

13  communication either seeks or renders legal advice.  Both sides agree that the Ninth Circuit

14  applies an eight-part test to determine whether the attorney client privilege applies.  Zuffa

15  acknowledges it has the burden of establishing that all of the elements of the privilege are met.

16  Citing *Ideal Electric Co. v. Flowerserve Corp.*, 230 F.R.D. 603 (D. Nev. 2005), Zuffa argues that

17  the attorney-client privilege "applies to communications between lawyers and their clients when

18  the lawyers act in a counseling or planning role . . . ."  *Id.* at 607.

19       Zuffa maintains that the mere fact that an attorney may discuss business issues in a

20  communication does not defeat the privilege.  Zuffa concedes that the attorney-client privilege

21  does not apply to communications that do not give, solicit, or reflect legal advice, citing *Wellnix*

22  *Life Sciences*, *Inc. v. Iovate Health Sciences Research*, *Inc.*, 2007 WL 1573913, at *2 (S.D.N.Y

23  May 24, 2007) (quoting *In re: County of Erie*, 473 F.3d 413, 418 (2nd Cir. 2007)).  However,

24  Zuffa argues that the fact that a communication relates to a business purpose is not dispositive.

25  In dual-purpose documents the "issue is not whether any business considerations were also under

26  discussion between the attorney and client, but 'whether the predominant purpose of the

27  communication is to render or solicit legal advice.'"  *Id.*

28  / / /

6

1    Zuffa asserts that the redacted portions of the Milbank email were privileged from their

2    inception and satisfy all of the elements of the attorney-client privilege.  The content of the

3    redacted paragraphs clearly address legal issues.  The fact that the emails do not contain citations

4    to statute, laws, or rules does not transform legal advice into business advice.  Zuffa relies on

5    cases in the Second Circuit holding that documents are protected by privilege even when they

6    include references to, or fairly extensive discussions of, financial questions and issues of

7    commercial strategy and tactics as long as they do so in a context that makes it evident that the

8    attorney is presenting the issues and analyzing the choices on the basis of his legal expertise.

9    Zuffa claims that the cases cited by Plaintiffs support its decision to unredact portions of

10   the email where Mr. Paschal is reporting facts learned from a third party and its decision to

11   redact those privileged portions.  Zuffa contends that the redacted portions of the Milbank email

12   address communications from Zuffa's outside counsel "on matters squarely within the ken of

13   legal advice."  Specifically, the redactions concern the nature and extent of due diligence and

14   whether and when the letter of intent would become binding, and the relationship between these

15   issues in addition to the ramifications of particular tax structures for the proposed transaction.

16   Zuffa disputes that it waived the privilege over the redacted portions of the email by

17   producing unredacted portions of the email.  The unredacted portions of the email are not

18   privileged, so no waiver results.  A contrary ruling would perversely penalize Zuffa for carefully

19   distinguishing between privileged and non-privileged aspects of the communication in redacting

20   documents, and encourage overbroad privilege claims.  Courts routinely allow or order

21   redactions of documents containing a mix of protected privileged communications and business

22   advice.  None of the cases cited by the Plaintiffs support the proposition that the disclosure of

23   information that parties agree is not privileged can result in a waiver of the material that is

24   otherwise privileged.  Finally, Zuffa disputes that Plaintiffs have asserted the advice of counsel is

25   an affirmative defense to Plaintiffs' complaint allegations.  Zuffa asks that the court deny

26   Plaintiffs' motion to challenge the privilege and award reasonable costs and attorney's fees under

27   Rule 37(a)(5)(B) because the motion was not substantially justified and no other circumstances

28   would make an award of expenses unjust.

**DISCUSSION**

The attorney-client privilege protects confidential disclosures made by a client to an attorney to obtain legal advice and an attorney's advice in response to such disclosures. *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) (quotation omitted). "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co.*, *v. United States*, 449 U.S. 383, 389 (1981). It serves to protect confidential communications between a party and its attorney in order to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* The privilege applies where legal advice of any kind is sought from a professional legal advisor in her capacity as such, and the communication relates to that purpose, and is made in confidence by or for the client. *Id.* In the Ninth Circuit, an eight-part test determines whether information is covered by the attorney-client privilege: (1) where legal advice of any kind is sought, (2) from a professional legal advisor in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are, at that instance, permanently protected, (7) from disclosure by the client or by the legal advisor, and (8) unless the protection is waived. *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010); *LightGuard Sys., Inc. v. Spot Devices, Inc.*, 281 F.R.D. 593, 597–98 (D. Nev. 2012).

"The burden is on the party asserting the privilege to establish all the elements of the privilege." *United States v. Martin*, 378 F.3d 988, 999–1000 (9th Cir. 2002). The party asserting the attorney-client privilege must establish the attorney-client relationship and the privileged nature of the communication. *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997). A party claiming the attorney-client privilege "must identify specific communications and the grounds supporting the privilege as to each piece of evidence over which privilege is asserted." *Martin*, 278 F.3d at 1000. Blanket assertions of attorney-client privilege are "extremely disfavored." *Id.* Additionally, "the communication must be between the client and lawyer for the purpose of obtaining legal advice." *Id.* "The fact that a person is a lawyer does not make all communications with that person privileged." *Id.* at 999. The party asserting the privilege must,

1    at a minimum, make a prima facie showing that the privilege protects the information the party

2    intends to withhold.  *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992).

3         Not all communications between an attorney and client are privileged.  Information such

4    as the identity of the client, the amount of the fee, the identification of payment by case file

5    name, the general purpose of the work performed, and whether an attorney coached a client in

6    his testimony is not privileged.  *See, e.g.*, *United States v. Carrillo*, 16 F.3d 1046, 1050 (9th Cir.

7    1994); *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992).  Similarly, when

8    an attorney is merely communicating information, such as an order to appear in court, the

9    communications between the attorney and the client are not privileged.  *United States v. Gray*,

10   876 F.2d 1411, 1415–16 (9th Cir. 1989) (holding attorney-client privilege did not preclude

11   lawyer from testifying he advised client of the sentencing date in prosecution of client for failure

12   to appear); *McKay v. Comm'r Internal Revenue Service*, 886 F.2d 1237, 1238 (9th Cir. 1989)

13   (holding testimony of taxpayer's attorney that the gave taxpayer a copy of deficiency notice from

14   the IRS in ample time to file a petition timely did not violate the attorney-client privilege).

15        The attorney-client privilege is a rule of evidence; it has not been held a constitutional

16   right.  *Clutchette v. Rushen*, 770 F.2d 1469, 1471 (9th Cir. 1985).  "Because it impedes full and

17   free discovery of the truth, the attorney-client privilege is strictly construed."  *Weil v.*

18   *Investment/Indicators*, *Research & Mgmt.*, *Inc.*, 647 F.2d 18, 24 (9th Cir. 1980).  The party

19   asserting the attorney-client privilege has the burden of proving the attorney-client privilege

20   applies.  *Id*. at 25.  "One of the elements that the asserting party must prove is that it has not

21   waived the privilege."  *Id*.  The attorney-client privilege is waived when communications are

22   made in the presence of third parties.  *United States v. Gann*, 732 F.2d 714, 723 (9th Cir. 1984).

23   It is well established that "voluntary disclosure of the content of a privileged attorney

24   communication constitutes a waiver of the privilege as to all other such communications on the

25   same subject."  *Id*.  In *Weil*, the Ninth Circuit recognized that waiver of the privilege "may be

26   effected by implication" and by inadvertent disclosure.  *Id*.  Additionally, "the subjective intent

27   of the party asserting the privilege is only one factor to be considered in determining whether

28   waiver should be implied."  *Id*.

1    Courts narrowly construe the privilege and recognize it "only to the limited extent that ...

2    excluding relevant evidence has a public good transcending the normal predominate principal of

3    utilizing all rational means for ascertaining the truth." *Trammel v. United States*, 445 U.S. 40, 50

4    (1980); *Weil*, 647 F.2d at 24 ("Because it impedes full and free discovery of the truth, the

5    attorney-client privilege is strictly construed."). Similarly, because the attorney-client privilege

6    is in derogation of the truth-finding process and must be strictly construed, "the privilege should

7    attach only where extending its protection would foster more forthright and complete

8    communication between the attorney and her client *about the client's legal dilemma.*" *United*

9    *States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1070 (N.D. Cal. 2002) (emphasis in

10   original).

11   Generally, the voluntary disclosure of privileged attorney-client communications

12   constitutes a waiver of the privilege as to all other such communications dealing with the same

13   subject matter. *United States v. Zolin*, 809 F.2d 1411, 1415 (9th Cir. 1987), *rev'd in part on*

14   *other grounds by* 491 U.S. 554 (1989). "In order to establish the applicability of the attorney-

15   client privilege to a given communication, the party asserting the privilege must affirmatively

16   demonstrate non-waiver." *Id.* Any disclosure inconsistent with maintaining the confidential

17   nature of the attorney-client relationship waives the privilege. *Id.* The Ninth Circuit employs a

18   three-prong test to determine whether a waiver of the attorney-client privilege has occurred.

19   *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999). First, the court considers whether

20   a party is asserting the attorney-client privilege as a result of some affirmative act. *Id.* Second,

21   the court examines whether the party asserting the privilege through an affirmative act has put

22   the privileged information at issue. *Id.* Third, the court evaluates whether allowing the privilege

23   would deny the opposing party access to information vital to its case. *Id.*

24   Applying these principles, the court finds the majority of the redacted paragraphs in

25   dispute in this motion are not privileged. The first redacted paragraph relates Pride FC's

26   negotiating positions, the fact the Pride did not trust Zuffa anymore than Zuffa trusted Pride, and

27   that Pride did not want its business tied up any longer in negotiations. The paragraph reports the

28   parties' negotiating positions and contains no legal analysis or advice. The second paragraph

10

1  relates Zuffa's business purpose for the acquisition—to stop others from buying Pride and to

2  acquire Pride to shut the business down and acquire its fighters for the UFC.  It relates Pride's

3  negotiating position that resulted Zuffa's business decision to set a low threshold for due

4  diligence before the deal became binding on both sides.  However, a portion of the last sentence

5  of the paragraph relates the client's concern about a legal matter.  In context, it appears to be a

6  legal issue the client and counsel discussed in the expectation it was a confidential

7  communication.  The remaining communications do not relate to legal advice sought by or given

8  to Zuffa.  Mr. Pachal relates Pride's communications to him during the course of business

9  negotiations.  Mr. Paschal was merely serving as a conduit of this information from Pride to his

10  client, Zuffa.  The other communications relate to the negotiating parties' commercial strategies

11  and tactics.  As such, they are not privileged.

12       For the reasons explained,

13       **IT IS ORDERED** Plaintiff's Motion to Challenge Privilege is **GRANTED,** and Zuffa

14  shall produce the Milbank email to Plaintiffs unredacted of the paragraphs in dispute with the

15  exception of the last sentence of disputed paragraph two which may remain redacted from "and

16  you had expressed" through the end of the sentence.

17       DATED this 26th day of May, 2016.

18

19                  PEGGY A. LEEN
                UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28