CONFIDENTIAL

Joseph R. Saveri (admitted *pro hac vice*)
Joshua P. Davis (admitted *pro hac vice*)
Matthew S. Weiler (admitted *pro hac vice*)
Kevin E. Rayhill (admitted *pro hac vice*)
**JOSEPH SAVERI LAW FIRM, INC.**
555 Montgomery Street, Suite 1210
San Francisco, California 94111
Phone: (415) 500-6800
Fax: (415) 395-9940
jsaveri@saverilawfirm.com
jdavis@saverilawfirm.com
mweiler@saverilawfirm.com
krayhill@saverilawfirm.com

*Co-Lead Counsel for the Classes and
Attorneys for Individual and Representative Plaintiffs
Cung Le, Nathan Quarry, Jon Fitch, Luis Javier Vazquez,
Brandon Vera, and Kyle Kingsbury*

[Additional counsel appear on signature page]

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| **Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury** on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>**Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,**<br><br>**Defendant**. | Case No.: 2:15-cv-01045 RFB-(PAL)<br><br>**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO CHALLENGE WORK PRODUCT DESIGNATION**<br><br>**PUBLIC COPY - REDACTED** |

CONFIDENTIAL

## I. INTRODUCTION

Zuffa's Opposition to Plaintiffs' Motion to Challenge Work Product Designation (the "Opposition") fails to carry Zuffa's burden to demonstrate that the Mercer Documents[1] are work product. Zuffa concedes that the Mercer Documents were not prepared in preparation for this litigation. Instead, Zuffa argues the documents were created in connection with another litigation between a fighter named Eddie Alvarez and Bellator. Yet Zuffa establishes no connection between the Mercer Documents and the Alvarez litigation, or any other litigation Zuffa claims was anticipated as of the time the Mercer Documents were created.

Zuffa fails to show the Mercer Documents were created due to the Alvarez litigation. Zuffa argues ███ was created in anticipation of litigation because it was commissioned "after Zuffa became embroiled in" the Alvarez litigation. The Alvarez litigation was a contract dispute that concerned the terms of **Bellator's** contract. Zuffa fails to explain how ███ Zuffa commissioned from Mercer was relevant to Bellator's contract dispute with Mr. Alvarez. Moreover, Zuffa concedes that ███ was commissioned **after** the Alvarez litigation **settled**. It strains credulity to claim the Mercer Documents were created in anticipation of litigation that had already concluded. And the fact that the documents may **now** have a litigation purpose—or are probative of the claims in this litigation—does not change that the documents were not work product when they were created.

Zuffa argues that the public disclosure of one of its contracts in the Alvarez litigation broadly opened up Zuffa to **public** criticism concerning ███ generally. This is **exactly** the type of **generalized and non-specific threat** of litigation that courts have deemed insufficient as the basis for work product protection. It is settled law that "[d]ocuments are not work product simply because litigation is in the air or there is a remote possibility of some future litigation." *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 635 (D. Nev. 2013).

---

[1] The "Mercer Documents" are ███

1  Moreover, where, as here, the documents clearly serve dual business and litigation purposes,
2  work product protection is only afforded where the **documents would not have been created** in
3  substantially similar form but for the prospect of that litigation. Indeed, Zuffa admits that Mercer
4  ███████████████████████████████ before Zuffa's outside counsel allegedly recommended
5  the ███ to prepare for unspecified "imminent" litigation—thus, Zuffa cannot show they served a sole
6  litigation purpose. In fact, Zuffa concedes the ███ Mercer proposed had no litigation purpose, and ██
7  ████████████████████████████████████████████████ Zuffa now claims
8  is work product.

9  Next, Zuffa argues that Plaintiffs cannot show a substantial need for the Mercer Documents
10  because they are not relevant. Not so. Zuffa ignores Plaintiffs' allegations that █████████████
11  ████████████████████, making the Mercer Documents directly relevant and highly probative.
12  *See* Consolidated Amended Complaint ("CAC"), ECF No. 208, ¶ 103. Zuffa does not argue the Mercer
13  Documents ████ ████ are inaccurate; indeed, they appear to be authoritative. The fact that
14  Plaintiffs have requested similar information from Zuffa is beside the point. That similar evidence may
15  be available does not operate to cloak the material from production or discovery. In fact, ████████
16  █████████████ is unique, and to Plaintiffs' knowledge is the only ████████ Zuffa performed
17  █████████████████████████. Plaintiffs should be entitled to discovery into this
18  ███████████████ which are presently unknown to Plaintiffs.

19  Zuffa argues that it has not waived work product protection by producing other documents
20  relating to the ████████████ because the other Mercer-related documents are not work
21  product. This logic demonstrates the flaw in Zuffa's position: Zuffa admits the █████████████
22  █████████████████ have **a business purpose**, and therefore Zuffa produced them. Thus, the
23  Mercer Documents cannot have a sole litigation purpose. In any event, it is undisputed that all of these
24  documents relate to the same subject matter, and it would be unfair to allow Zuffa to unilaterally
25  determine what documents concerning ████████ it will produce, especially because the issue is central
26  to Plaintiffs claims.

27  Finally, Zuffa argues the Motion is procedurally improper because Plaintiffs did not meet and
28  confer with Zuffa before filing the Motion. But Plaintiffs notified Zuffa of their intent to challenge within

three days of receiving Zuffa's clawback letter, as required by the Revised Stipulation and Protective Order adopted by this Court. *See* ECF No. 217 at ¶ 11 ("If a Receiving Party wishes to challenge the designation, the Receiving Party must inform the Producing Party or Non-Party within three (3) business days of receipt of notice or discovery of the inadvertent production, and must file its challenge to the privilege designation with the Court within seven days of notifying the Producing Party or Non-Party of its intent to challenge, unless the Parties agree to a longer schedule").

**II.   ARGUMENT**

   **A. Zuffa's Opposition Fails to Meet its Burden to Show the Challenged Documents are Protected Under the Work Product Doctrine.**

Zuffa concedes the Mercer Documents were not prepared in anticipation of this litigation. Instead, Zuffa claims the Mercer Documents are work-product because they were created as a result of the Alvarez Litigation and other unspecified and unfiled litigation regarding ▬▬▬▬ and other issues regarding its contracts. Opposition at 8. Neither of these distinct and separate theoretical litigation possibilities—the Alvarez litigation or unspecified ▬▬▬ litigation that might occur in the future—justifies the work product protection that Zuffa claims. Indeed, both fail because they are too remote and temporally disconnected from the Mercer Documents. Even if Zuffa could show some contemporaneous litigation connection with the Mercer Documents—and this is a dubious premise—Zuffa's claim of work product fails under the Ninth Circuit's "dual purpose" test.

   **1. The Mercer Documents are Temporally Too Far Removed From the Instant Litigation.**

"The 'in anticipation of litigation' requirement includes both a temporal and a motivational component." *Ooida Risk Retention Grp.,* 2016 U.S. Dist. LEXIS 12851, at *12-13. Zuffa shows neither here. It is undisputed that no litigation was brought against Zuffa regarding ▬▬▬▬▬ ▬▬▬until the first complaint was filed in the instant litigation, **fourteen months after Zuffa commissioned the** ▬▬▬▬▬. *See* Opposition at 10 ("the temporal element is met because Campbell & Williams's retention of Mercer occurred shortly after counsel anticipated litigation regarding Eddie Alvarez and the foreseeable litigation regarding ▬▬▬▬ ▬▬▬"). The potential litigation Zuffa identifies as a basis for its work product claim—contract negotiations with Mr. Alvarez and unspecified potential litigation over ▬▬▬▬▬

▊—are repeatedly mentioned in the same sentence, as though they were one and the same.[2] *See e.g.,* Opposition at 8. But the Alvarez litigation concluded before the Mercer survey was even proposed, and no other litigation ever materialized. Moreover, the two potential litigation justifications for assertion of work product are **not** related. Zuffa identifies no litigation over ▊ that arose from or was threatened as a result of the Alvarez contract dispute. And no such litigation was initiated until nearly a year and a half after the Alvarez contract litigation was settled.

The instant litigation is too temporally remote from the creation of the Mercer Documents to provide the basis for assertion of work product protection. The work product doctrine "does **not** cover documents created in the ordinary course of business that **later** serve a litigation-related purpose." *E.I. Dupont De Nemours & Co. v. Kolon Indus.,* 269 F.R.D. 600, 604 (E.D. Va. 2010) (emphasis added). Indeed, Zuffa concedes the Mercer Documents were not created in anticipation of this litigation. Opposition at 1. This only weakens Zuffa's claim, because that shows that the Mercer Documents do not relate to any litigation whatsoever. No other litigation has ever been brought against Zuffa involving ▊, which are the subject of the Mercer Documents. If, as Zuffa concedes, the instant litigation does not provide the justification for asserting work product, then no justification remains.

2. **Zuffa Fails to Establish a Logical or Necessary Relationship Between The Alvarez Litigation and the Mercer Documents.**

Zuffa claims that the Alvarez litigation created a generalized threat of "imminent" litigation that led to the Mercer documents. Opposition at 8. As an initial matter, this is revisionist history. Zuffa offers no contemporaneous evidence that other litigation—particularly any specific lawsuit—was "imminent" at the time the Mercer Documents were created. Zuffa points to evidence of ▊ as evidence that the Mercer Documents were prepared in anticipation of litigation. Opposition at 3. This litigation demonstrates that ▊ . Indeed, Zuffa's ▊ was in place at

---

[2] Zuffa consistently and improperly intermingles these two distinct and fundamentally different litigation possibilities as though they were one litigation throughout the Opposition. *See e.g.,* "To assess Zuffa's exposure in **the Alvarez Litigation and** ▊, it was eminently reasonable for Zuffa's outside law firm – Campbell & Williams – to hire Mercer to conduct a study ..." Opposition at 1 (emphasis added); *see also id.* at 4, 5, 8, 9, 16.

all times Zuffa now claims a litigation threat was "imminent."³ That the Alvarez litigation has nothing to do with this purported work product is demonstrated by the fact that Zuffa did not even disclose the Alvarez litigation in the dozens of litigations that had any relationship to this case for purposes of responding to Plaintiffs' document requests. In their January 13, 2016 letter to Plaintiffs, Defendant provided a list of litigations and disputes intended to guide Plaintiffs as to particular documents they might seek. This list did not include the Alvarez litigation. Rayhill Decl., Ex. 1.

It is speculative to posit a relationship between the Alvarez litigation and any litigation with Zuffa. *See Phillips*, 290 F.R.D. at 634 ("[T]he party claiming the protection bears the burden of demonstrating the applicability of the work product doctrine."). The Mercer Documents had nothing to do with the Alvarez litigation. The Mercer Documents mention neither Mr. Alvarez nor Bellator. And Zuffa has not shown the relevance of ▮▮▮▮▮▮▮▮▮▮▮▮ to potential litigation with Bellator or Mr. Alvarez. The gravamen of the Alvarez litigation was that the UFC paid its fighters more than Bellator, who sued Alvarez to prevent him from fighting in the UFC for more money. The Alvarez litigation settled in August 2013, **before** the Mercer study was commissioned. Zuffa claims ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ was commissioned "[t]o assess Zuffa's exposure in the Alvarez Litigation" (Opposition at 1). This is false: the Alvarez litigation had already settled. The facts of the Alvarez litigation concern disputes of interpretation of the individual contracts at issue and the actions taken by Bellator and Mr. Alvarez with respect to those contracts. *See* Grigsby Decl., Ex. A. Zuffa offers no explanation for why a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ would have played a role in that litigation.

None of Zuffa's authorities support its position that the Mercer Documents relate to the Alvarez litigation. Zuffa relies on *Hertzberg v. Veneman*, 273 F. Supp. 2d 67 (D.D.C. 2003) to claim that litigation need only be "fairly foreseeable" in order to qualify for work product protection. Opposition at 7. Zuffa meets neither the "foreseeable" standard nor the more stringent test articulated there: "[w]hile litigation need not be imminent or certain in order to satisfy the anticipation of -litigation prong of the

---

³ 

test, this circuit has held that '**at the very least some articulable claim, likely to lead to litigation, must have arisen**,' such that litigation was 'fairly foreseeable at the time' the materials were prepared. *Id.* at 75 (citation omitted). Zuffa cites no such articulable claim. The threat of litigation Zuffa cites applies equally to all of its thousands of current or former fighters, concerning all aspects of its contracts, for any manner of complaint.

Zuffa's other cases are inapposite because Zuffa cannot show "an objectively reasonable" belief that litigation was "a real possibility." *OOIDA Risk Retention Grp., Inc. v. Bordeaux*, 2016 U.S. Dist. LEXIS 12851, at *13 (D. Nev. Feb. 3, 2016). Here, Zuffa abandons the claims that the Mercer Documents relate to the Alvarez litigation, and argues outside counsel subjectively believed that litigation was likely based on ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ following the public disclosure of Zuffa's contract in the Alvarez litigation." Opposition at 10. But none of the ▬▬▬▬▬▬▬▬ cited by Zuffa even mentions the prospect of litigation with Zuffa, much less makes an "articulable claim, likely to lead to litigation." These ▬▬ are nothing more than general bad publicity, which cannot serve as basis for work product protection as discussed *infra*.

### 3. Zuffa Fails to Establish an "Identifiable Resolve to Litigate" Based on Statements From Fighters.

Zuffa's claim that the Mercer Documents were created because of its "significant concerns that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬" (Opposition at 8) also fails because Zuffa has not cited any credible threat of litigation. "[T]o be subject to work product immunity, documents must have been created in response to a substantial and significant threat of litigation, which can be shown by **objective facts establishing an identifiable resolve to litigate**. Documents are not work product simply because litigation is in the air or there is a remote possibility of some future litigation." *Phillips*, 290 F.R.D. at 635 (citation omitted). Similarly, bad publicity cannot serve as the basis for a work product claim. *See Sowell v. Dominguez*, 2011 U.S. Dist. LEXIS 110407, *19-20 (N.D. Ind. Sept. 27, 2011) (rejecting claim that "that litigation was inevitable

given the extent of publicity" absent "specific threat of litigation").[4]

Zuffa cites ▮▮▮▮▮ as a basis to support its work product assertion. But as with the other bad publicity Zuffa has earned, this fails to identify any specific threat of litigation. Zuffa states that after the publication during the Alvarez litigation of a contract Zuffa had offered to Mr. Alvarez, ▮▮▮▮▮. Opposition at 3. Zuffa outside counsel states that ▮▮▮▮▮" Campbell Declaration ¶ 9. But these statements do not identify any specific claim, much less demonstrate why it was objectively reasonable for Zuffa commission ▮▮▮▮▮ in response to a threat of litigation. These inquiries appear to all relate to typical business concerns, such as requests to re-negotiate contracts, and Mr. Campbell's declaration gives no indication to the contrary. Furthermore, fighters and their agents already possessed and knew the contents of their contracts with Zuffa. The public release of the contract in the Alvarez litigation bears no connection with ▮▮▮▮▮ notwithstanding Zuffa's insinuation to the contrary.[5]

Zuffa relies on *United States v. Roxworthy*, 457 F.3d 590, 597 (6th Cir. 2006) for the proposition that "[w]here an undisputed affidavit is specific and detailed to indicate that the documents were prepared in anticipation of litigation or trial, then the party claiming work product protection has met its burden." Opposition at 7. First, Mr. Campbell's declaration is not uncontested. Plaintiffs have reasonable basis to believe it is untrue and inaccurate and would request the opportunity to test its veracity. Moreover, Mr. Campbell's declaration lacks sufficient detail to support Zuffa's assertion of work product. Mr. Campbell's conclusory statements are not enough. As the court in *Roxworthy* made clear, "application of the privilege will be rejected where the only basis for the claim is an affidavit containing conclusory statements." *Id.*

---

[4] Moreover, Zuffa's poor treatment of fighters generated negative publicity well before the Alvarez litigation. See Jeffrey B. Same, Breaking the Choke Hold: An Analysis of Potential Defenses Against Coercive Contracts in Mixed Martial Arts, 2012 MICH. ST. L. REV. 1057.

[5] ▮▮▮▮▮ also have no relevance to a work product claim as neither has standing to sue Zuffa over ▮▮▮▮▮ even if they could have demonstrated an identifiable resolve to litigate.

Zuffa cites ▮▮▮▮▮ to support its claim that the Mercer Documents were created in anticipation of litigation. None of the ▮▮▮ makes any reference to litigation. Indeed, several of the fighters go out of their way to avoid offending executives at Zuffa. For example, an article about Jose Aldo quoted in the Opposition as an example of fighters speaking out about contract terms and fighter pay goes on to say, "A world wide league has even been created by the UFC is where it is for Dana's work. [sic] They invested so much and they deserve to be where they are. The UFC at least is trying to spread all over." Grigsby Decl. Ex. E. None of the articles contains any references to planned or potential litigation.

### 4. Zuffa Cannot Meet Its Burden Under the Dual Purpose Test.

Zuffa argues that the Mercer Documents serve a "single purpose" because they "were created solely in anticipation of litigation." Opposition at 8. As explained in Plaintiffs' opening brief and summarized below, Zuffa has produced documents related to Mercer's proposal to perform a ▮▮▮▮▮▮▮▮▮▮ in the challenged Mercer Documents. *See infra* at 11-12. The existence of ▮▮▮ from Mercer demonstrates that Zuffa cannot meet its burden under the dual purpose test, where a document has a litigation and business purpose, that the work product "would not have been created in substantially similar form but for the prospect of that litigation." *In re Grand Jury Subpoena*, 357 F.3d 900, 908 (9th Cir. 2003) (quotation and citation omitted). It is clear that Zuffa, purportedly at the suggestion of its outside counsel, retained Mercer to perform ▮▮▮ it would have created in **the ordinary course of its business**. This is not the first time that Zuffa had its outside counsel perform ordinary business functions, and that outside counsel recommended the Mercer ▮▮ does not transform it into a sole litigation purpose when Zuffa was concededly considering ▮▮▮ at an earlier time purely as a business matter.

Zuffa's self-serving statements by its outside counsel cannot change the fact that Zuffa considered ▮▮▮▮▮▮▮▮▮▮ Zuffa asserts that the Mercer Documents are "single purpose" because Mr. Campbell states that "[t]o my knowledge, the Mercer ▮▮ was not commissioned for any business purpose, and I am not aware of anyone at Zuffa using it for

a business purpose." Campbell Decl. ¶ 14.[6] But a simple conclusory statement that a document was created solely for a litigation purpose is not sufficient to support work product protection. "[T]o be subject to work product immunity, documents must have been created in response to a substantial and significant threat of litigation, which can be shown by objective facts establishing an identifiable resolve to litigate. Documents are not work product simply because litigation is in the air or there is a remote possibility of some future litigation." *Phillips.*, 290 F.R.D. at 635 (citation omitted).

Moreover, contrary to Mr. Campbell's declaration, Zuffa does appear to have used ▓▓▓▓ ▓▓▓▓ or non-legal purposes. Indeed, Zuffa's executives frequently ▓▓▓▓ ▓▓▓▓. See, e.g., Rayhill Decl., Ex. 2 (article entitled "*White defends UFC pay: Fighters make a lot of money, we're on par with other sports*," 6/23/16); *Id*. Ex. 3 (Article entitled "*UFC CEO Lorenzo Fertitta Reports Record UFC Revenue, Defends Fighter Pay Scale*," 12/28/15). Similarly, in January 2015, consistent with the timeline of the Mercer Documents, Zuffa created a presentation titled ▓▓▓▓ (ZFL-2486546). See *Id*., Ex. 4. This presentation reflects ▓▓▓▓ ▓▓▓▓ *See* Mercer Presentation, ZFL-0557588 at ZFL-0557590 ("▓▓▓▓ ▓▓▓▓").

Regardless of whether ▓▓▓▓ formed the sole predicate for the ▓▓▓▓, the relationship between the subject matter and the timing makes it implausible to suggest that Zuffa did not use any information or data from ▓▓▓▓ Thus, to the extent ▓▓▓▓ had any litigation use or purpose whatsoever, it necessarily had at least dual litigation-business uses and purposes.

---

[6] Plaintiffs object to Campbell's declaration because he lacks foundation to opine of Zuffa's business operations, and whether a matter was of a business or legal nature. Campbell's declaration is also improper to the extent that it simply states a legal conclusion that the documents had a legal purpose and no business purpose.

### B. Plaintiffs Have a Substantial Need for the Documents and Cannot Obtain Them Elsewhere.

Zuffa claims Plaintiffs do not have a substantial need for the Mercer Documents on the grounds they are not relevant to the case. Opposition at 11. This is incorrect. The Mercer Documents are highly relevant and probative. Plaintiffs have a substantial need for the documents because they directly address a central tenet of Plaintiffs allegations: ███████████████████████████████ ███████████████████. CAC ¶ 102. Zuffa disputes the relevance because ███████████████ ██████████████████. Opposition at 11. This may or may not be true, but it is not what Plaintiffs allege. Zuffa ignores that Plaintiffs have alleged ██████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ███████ is directly relevant to these allegations.

Zuffa argues that Plaintiffs request ██████████████████ from Zuffa, and could get it from other sources. This is not true. **Mercer's** ██████████████████████████████████ ██████████████████████████████ which Plaintiffs will not be able to retrieve from any other source, or reconstruct. Moreover, that other evidence may be similar or supportive is beside the point.

Finally, Zuffa claims that ██████████████████ states that these documents are publicly available. This appears to be incorrect since ██████████████████ only refers to ██████████████ ██████████████████████████████████████████████████ For the rest of the categories, it is impossible to tell where Mercer got this information. In addition, ██ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████. Plaintiffs need these materials in order to fully assess ██████████████████████████████ ██████████████████████.

### C. Production of the Statement of Work Waived Work Product Protection for all Documents Relating to the ████████████

Zuffa argues that there is no waiver because the prior proposal from Mercer is not work product. Opposition at 13-14. This argument demonstrates how arbitrary Zuffa's work product claim is. The statement of work, like the Mercer Documents over which Zuffa claims protection, was created after the Alvarez litigation in August 2013. Moreover, even a cursory review shows that ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Indeed, Zuffa claims that it went into "imminent" litigation threat mode only five or six weeks later, on September 25. Campbell Decl. ¶ 15. But all of the same supposed bases for imminent threat would apply to the August 2013 statement of work, including the Alvarez litigation and four of the articles from May and June 2013 that Zuffa claims support the notion litigation was "imminent." Grigsby Decl. Exs. A-D, F.

The Court should reject Zuffa's attempt to selectively waive work product here because the subject matter of the Mercer Documents is of central importance to Plaintiffs' claims that Plaintiffs are prejudiced by allowing Zuffa to pick and choose what documents it will produce concerning ████████ ████████████. *See Aclara Biosciences v. Caliper Techs. Corp.*, 2000 U.S. Dist. LEXIS 10585, *19 (N.D. Cal. June 16, 2000) ("It would be unfair to allow ACLARA to limit its waiver to communications with Rowland when a key issue in this action will be whether Rowland passed on Caliper's alleged trade secrets to another Flehr attorney").

### D. Plaintiffs' Work Product Challenge Is Procedurally Sound.

Zuffa argues the Motion is procedurally improper because Plaintiffs did not meet and confer with Zuffa before filing the Motion. This is nonsense. Plaintiffs notified Zuffa of their intent to challenge within three days of receiving Zuffa's claw back letter, as required by the Revised Stipulation and Protective Order adopted by this Court. That is all that is needed. The premise of Zuffa's argument is that the motion to challenge is a discovery motion. It is not. Federal Rule of Civil Procedure 37, which relates to motions to compel disclosure, motions to compel a discovery response, or motions seeking a court's order regarding a deposition, does not apply here. Plaintiffs' Motion is none of those things. It is rather an administrative motion created by the Protective Order.

Case 2:15-cv-01045-RFB-BNW   Document 300   Filed 09/26/16   Page 13 of 17

CONFIDENTIAL

Requiring the parties to meet and confer on a discrete issue such as a claim of privilege is inefficient, and does not implicate the concerns that motivate a meet and confer in the context of discovery disputes, which typically concern a host of issues impacting thousands or more of documents. Indeed, Zuffa concedes that "[g]iven the size of Zuffa's production, the disclosure of three work product documents on this topic is small." Opposition at 15. This same rationale demonstrates why it would not be productive to meet and confer on a narrow privilege dispute that concerns three documents, where the parties' positions are well understood.

### E. Inadvertent Disclosure Has No Bearing on Plaintiffs' Motion.

Zuffa refers to an error Plaintiffs' counsel made in redacting the documents at issue in this case. Opposition at 6 n.2. Plaintiffs took prompt steps to address the inadvertent production, and it has no bearing on this motion. First, Plaintiffs filed a replacement image with the Court the day after the motion was filed. Second, Plaintiffs requested the media outlet who published the article with the un-redacted information take the article down. The media outlet complied with this request. See Rayhill Decl. Ex. 5. Third, Plaintiffs requested that all copies of the filing with the un-redacted version of the filing be returned, and that the author of the article, the editor who approved its publication, and the Chief Legal Officer agree to sign Exhibit A of the Protective Order. Id., Ex. 6.

12                    Case No.: 2:15-cv-01045 RFB-(PAL)
**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO CHALLENGE WORK PRODUCT DESIGNATION**

CONFIDENTIAL

Dated: September 26, 2016

Respectfully Submitted,
JOSEPH SAVERI LAW FIRM, INC.

By:        */s/Joseph R. Saveri*
             Joseph R. Saveri

Joseph R. Saveri (admitted *pro hac vice*)
Joshua P. Davis (admitted *pro hac vice*)
Matthew S. Weiler (admitted *pro hac vice*)
Kevin E. Rayhill (admitted *pro hac vice*)
555 Montgomery Street, Suite 1210
San Francisco, California 94111
Phone: (415) 500-6800/Fax: (415) 395-9940
jsaveri@saverilawfirm.com
jdavis@saverilawfirm.com
mweiler@saverilawfirm.com
krayhill@saverilawfirm.com

*Co-Lead Counsel for the Classes and Attorneys for Individual and Representative Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Luis Javier Vazquez, Brandon Vera, and Kyle Kingsbury*

CONFIDENTIAL

|   |   |
|---|---|
| 1 | COHEN MILSTEIN SELLERS & TOLL, PLLC |
| 2 | Benjamin D. Brown (admitted *pro hac vice*) |
|   | Richard A. Koffman (admitted *pro hac vice*) |
| 3 | Hiba Hafiz (admitted *pro hac vice*) |
|   | 1100 New York Ave., N.W., Suite 500, East Tower |
| 4 | Washington, DC 20005 |
|   | Phone: (202) 408-4600/Fax: (202) 408 4699 |
| 5 | bbrown@cohenmilstein.com |
|   | rkoffman@cohenmilstein.com |
|   | hhafiz@cohenmilstein.com |

*Co-Lead Counsel for the Classes and Attorneys for Individual and Representative Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Luis Javier Vazquez, Brandon Vera, and Kyle Kingsbury*

BERGER & MONTAGUE, P.C.
Eric L. Cramer (admitted *pro hac vice*)
Michael Dell'Angelo (admitted *pro hac vice*)
Patrick Madden (admitted *pro hac vice*)
1622 Locust Street
Philadelphia, PA 19103
Phone: (215) 875-3000/Fax: (215) 875-4604
ecramer@bm.net
mdellangelo@bm.net
pmadden@bm.net

*Co-Lead Counsel for the Classes and Attorneys for Individual and Representative Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Luis Javier Vazquez, Brandon Vera, and Kyle Kingsbury*

WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP
Don Springmeyer
Nevada Bar No. 1021
Bradley S. Schrager
Nevada Bar No. 10217
Justin C. Jones
Nevada Bar No. 8519
3556 E. Russell Road, Second Floor
Las Vegas, Nevada 89120
(702) 341-5200/Fax: (702) 341-5300
dspringmeyer@wrslawyers.com
bschrager@wrslawyers.com
jjones@wrslawyers.com

*Liaison Counsel for the Classes and Attorneys for Individual and Representative Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Luis Javier Vazquez, Brandon Vera, and Kyle Kingsbury*

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO CHALLENGE WORK PRODUCT DESIGNATION**

CONFIDENTIAL

WARNER ANGLE HALLAM JACKSON & FORMANEK PLC
Robert C. Maysey (admitted *pro hac vice*)
Jerome K. Elwell (admitted *pro hac vice*)
2555 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Phone: (602) 264-7101/Fax: (602) 234-0419
rmaysey@warnerangle.com
jelwell@warnerangle.com

*Counsel for the Classes and Attorneys for Individual and Representative Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Luis Javier Vazquez, Brandon Vera, and Kyle Kingsbury*

LAW OFFICE OF FREDERICK S. SCHWARTZ
Frederick S. Schwartz (admitted *pro hac vice*)
15303 Ventura Boulevard, #1040
Sherman Oaks, CA 91403
Phone: (818) 986-2407/Fax: (818) 995-4124
fred@fredschwartzlaw.com

*Attorneys for Plaintiffs*

SPECTOR ROSEMAN KODROFF & WILLIS, P.C.
Jeffrey J. Corrigan (admitted *pro hac vice*)
William G. Caldes (admitted *pro hac vice*)
1818 Market Street – Suite 2500
Philadelphia, PA 19103
Phone: (215) 496-0300/Fax: (215) 496-6611
jcorrigan@srkw-law.com
wcaldes@srkw-law.com

*Attorneys for Plaintiffs*

CONFIDENTIAL

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of September, 2016 a true and correct copy of **PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO CHALLENGE WORK PRODUCT DESIGNATION—LODGED UNDER SEAL** was served via email on all parties or persons requiring notice.

By:  /s/ Kevin E. Rayhill