WILLIAM A. ISAACSON (*Pro Hac Vice*)
(wisaacson@bsfllp.com)
STACEY K. GRIGSBY (*Pro Hac Vice*)
(sgrigsby@bsfllp.com)
NICHOLAS A. WIDNELL (*Pro Hac Vice*)
(nwidnell@bsfllp.com)
BOIES, SCHILLER & FLEXNER LLP
1401 New York Avenue NW, 11th Floor, Washington, DC
20005 Telephone: (202) 237-2727; Fax: (202) 237-6131

RICHARD J. POCKER #3568
(rpocker@bsfllp.com)
BOIES, SCHILLER & FLEXNER LLP
300 South Fourth Street, Suite 800, Las Vegas, NV 89101
Telephone: (702) 382-7300; Fax: (702) 382-2755

DONALD J. CAMPBELL #1216
(djc@campbellandwilliams.com)
J. COLBY WILLIAMS #5549
(jcw@campbellandwilliams.com)
CAMPBELL & WILLIAMS
700 South 7th Street, Las Vegas, Nevada 89101
Telephone: (702) 382-5222; Fax: (702) 382-0540

*Attorneys for Defendant* Zuffa, LLC, d/b/a
Ultimate Fighting Championship and UFC

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury on behalf of themselves and all others similarly situated,<br><br>                              Plaintiffs,<br><br>                    v.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>                              Defendant. | Case No.: 2:15-cv-01045-RFB-(PAL)<br><br>**DEFENDANT ZUFFA, LLC'S OPPOSITION TO PLAINTIFFS' MOTION TO CHALLENGE ATTORNEY-CLIENT PRIVILEGE (ECF No. 320)**<br><br>**[FILED UNDER SEAL]** |

1
2

## **TABLE OF CONTENTS**

3    I.    INTRODUCTION .................................................................................................. 1
4    II.   FACTS ................................................................................................................. 2
5          A.    The ███████████████ By In-House Counsel, Michael Mersch, And
                 Related Email Correspondence ................................................................. 2
6          B.    Email Correspondence Concerning ███████████████████
                 ███████████ ............................................................................................ 3
7          C.    Zuffa's Clawback Of The Privileged Documents ..................................... 4
8    III.  ARGUMENT ........................................................................................................ 5
9          A.    Legal Standard .......................................................................................... 5
           B.    Mr. Mersch's ██████████████ Is Privileged .......................................... 7
10               1.    The ██████████████ From Zuffa's In-House Counsel
                       To Zuffa's CEO Is A Legal Analysis Of Contractual Language ................... 7
11               2.    The ██████████████████████ Is
                       Privileged .......................................................................................... 15
12
13         C.    The E-mails Related To ██████████████ Contain Privileged
                 Attorney-Client Communications ............................................................. 16
14         D.    The ██████████████ Contain Privileged Attorney-
                 Client Communications, And Zuffa Did Not Waive That Privilege ............. 18
15               1.    The ██████████████ Contain Privileged Attorney-Client
                       Communications ................................................................................... 18
16               2.    Zuffa's Production Of Business Communications On The Same
                       Subject Does Not Waive Privilege ....................................................... 19
17         E.    Plaintiffs Will Not Be Prejudiced As A Result of Zuffa's Privilege Claim
                 Over The Challenged Documents ............................................................. 21
18   III.  CONCLUSION ................................................................................................... 22
19
20
21
22
23
24
25
26
27
28

Zuffa's Opposition to Plaintiffs' Motion to Challenge Attorney-Client Privilege

1

## <u>TABLE OF AUTHORITIES</u>

2

**CASES**

3

*Brincko v. Rio Properties, Inc.*,
4
  278 F.R.D. 576 (D. Nev. 2011).................................................................................... 5

*Churchill v. Trinity Universal Ins. Co.*,
5
  No. CV 08-99-M-DWM, 2009 WL 10656999 (D. Mont. Nov. 17, 2009) .............................. 18

6

*Commodity Futures Trading Comm'n v. Weintraub*,
7
  471 U.S. 343 (1985).................................................................................................. 6

8

*Complex Sys., Inc. v. ABN AMRO Bank N.V.*,
  279 F.R.D. 140 (S.D.N.Y. 2011) ............................................................................... 20
9

*Hernandez v. Tanninen*,
10
  604 F.3d 1095 (9th Cir. 2010)................................................................................... 19

11

*Ideal Elec. Co. v. Flowserve Corp.*,
12
  230 F.R.D. 603 (D. Nev. 2005).......................................................................... 6, 16, 17

13

*In re County of Erie*,
  473 F.3d 413 (2d Cir. 2007)....................................................................................... 7
14

*Int'l Cards Co. v. Mastercard Int'l Inc.*,
15
  No. 13-CV-02576 LGS SN, 2014 WL 4357450 (S.D.N.Y. Aug. 27, 2014) ........................... 20

16

*Phillips v. C.R. Bard, Inc.*,
17
  290 F.R.D. 615 (D. Nev. 2013)................................................................................. 18

18

*Premiere Digital Access, Inc. v. Cent. Tel. Co.*,
  360 F. Supp. 2d 1168 (D. Nev. 2005) .................................................................. 6, 7, 19
19

*Regents of Univ. of California v. Micro Therapeutics, Inc.*,
20
  2007 WL 2069946 (N.D. Cal. 2007) .......................................................................... 20

21

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
22
  263 F.R.D. 142 (D. Del. 2009).................................................................................. 20

23

*Southeastern Pennsylvania Transport. Auth. v. CaremarkPCS Health, L.P.*,
  254 F.R.D. 253 (E.D. Pa. 2008) ............................................................................... 17
24

*TVT Records v. Island Def Jam Music Grp.*,
25
  214 F.R.D. 143 (S.D.N.Y. 2003) .............................................................................. 20

26

*United States v. Bauer*,
27
  132 F.3d 504 (9th Cir. 1997).................................................................................... 6

28

Zuffa's Opposition to Plaintiffs' Motion to Challenge Attorney-Client Privilege

*United States v. Chen*,
  99 F.3d 1495 (9th Cir. 1996) ........................................................................... 6

*United States v. ChevronTexaco Corp.*,
  241 F. Supp. 2d 1065 (N.D. Cal. 2002). .......................................................... 6

*United States v. Graf*,
  610 F.3d 1148 (9th Cir. 2010) ......................................................................... 6

*Upjohn Co. v. United States*,
  449 U.S. 383 (1981) ................................................................................. 1, 5, 6

**RULES**

Fed. R. Civ. P. 30(b)(6) ........................................................................................ 2, 4

Zuffa's Opposition to Plaintiffs' Motion to Challenge Attorney-Client Privilege

Pursuant to Section 11 of the February 10, 2016 Revised Stipulation and Protective Order ("Protective Order"), Defendant Zuffa, LLC ("Zuffa") respectfully submits this opposition to Plaintiffs' Motion to Challenge Attorney-Client Privilege (ECF No. 320) ("Plaintiffs' Motion"). Plaintiffs have challenged Zuffa's assertion of attorney-client privilege over documents with Bates numbers ZFL-0550804, ZFL-1014072, ZFL-1014103, ZFL-1014102, ZFL-1014078, ZFL-1014049, ZFL-1014047, ZFL-1014045, ZFL-1845337, ZFL-1845335, ZFL-1845332, and ZFL-1845329. For the reasons discussed below, the Court should deny Plaintiffs' Motion.

## I.    **INTRODUCTION**

Once again, Plaintiffs assert that several documents, which Zuffa has identified as protected by the attorney-client privilege, do not convey any legal advice or constitute only business advice. In Plaintiffs' previous motion challenging privilege (ECF No. 250), Plaintiffs asserted that a request to in-house counsel about ███████████████████ ████████████████████████████. The Court correctly denied that motion and should likewise do so here, where Plaintiffs assert similarly strained interpretations of communications between Zuffa's employees and its in-house counsel. For example, Plaintiffs claim that in-house counsel's ████████████████████████ ██████████████████████████████████████████. By making these assertions, Plaintiffs ignore the context of the communications at issue, which involve either: (1) advice by in-house counsel on the legal effect of revising contractual language or (2) an assessment of Zuffa's contractual obligations. Under Plaintiffs' understanding of the attorney-client privilege, virtually every communication of in-house counsel would be discoverable as business advice. Yet the Supreme Court has rejected this position and held that the attorney-client privilege covers communications between in-house attorneys and a company's employees. *See generally Upjohn Co. v. United States*, 449 U.S. 383 (1981). In each of the privileged documents, a Zuffa executive asks an in-house attorney to assess a specific legal problem. In each of these communications, Zuffa's in-house attorney provides his legal advice to his client, Zuffa. These types of confidential communications by Zuffa's in-house counsel are protected by the attorney-client privilege.

## II.   FACTS

Plaintiffs have brought this dispute concerning two sets of documents that Zuffa clawed back during Plaintiffs' deposition of Zuffa noticed pursuant to Fed. R. Civ. P. 30(b)(6).

**A. The** ██████████████ **By In-House Counsel, Michael Mersch, And Related Email Correspondence**

The first set of documents Plaintiffs challenge relate to ███████████ authored by Michael Mersch, Zuffa's then-Vice President of Business and Legal Affairs and Assistant General Counsel, to Lorenzo Fertitta, Zuffa's then-Chief Executive Officer, ████████████ ████████████████████████████. *See* Declaration of Kevin E. Rayhill in Support of Plaintiffs' Motion to Challenge Attorney-Client Privilege ("Rayhill Declaration") (ECF No. 320-1), Ex. 4, ZFL-1014049 (ECF No. 320-5); *see also* Declaration of Stacey K. Grigsby in Support of Defendant Zuffa, LLC's Opposition to Plaintiffs' Motion to Challenge Attorney-Client Privilege ("Grigsby Declaration"), Ex. A, Declaration of Ike Lawrence Epstein in Support of Defendant Zuffa, LLC's Opposition to Plaintiffs' Motion to Challenge Attorney-Client Privilege ("Epstein Declaration") ¶ 3.

In ████████████████████████████ ████████████████████████████████████████ ████████████████████████████████ After Mr. Fertitta received ████████████████████████████████████ Mr. Fertitta sent an email to Tracy Long, the Legal Affairs Manager and the Executive Assistant to the General Counsel, Ike Lawrence Epstein, and Assistant General Counsel, Michael Mersch, which ████████████████████████████ ████████████████████ *See* Rayhill Decl., Ex. 2, ZFL-1014045 (ECF No. 320-3) (email from Mr. Fertitta to Ms. Long); Ex. 7, ZFL-1014102 (response from Ms. Long including her title as "LEGAL AFFAIRS MANAGER & EXECUTIVE ASSISTANT TO IKE LAWRENCE EPSTEIN, EVP & GC & EXECUTIVE ASSISTANT TO MICHAEL MERSCH, SVP & AGC"); Ex. 17, ZFL-1014051 (ECF No. 320-18) ██████████████████████████). ████████████████████████████████████████

1  ████████████████████████████████████████████████████████████

2  ████████████████████████████████████████████████████████████

3  █ Rayhill Decl., Ex. 6, ZFL-1014078 (ECF No. 320-7); *see also* Epstein Decl. ¶ 5 (describing

4  Ms. Long's role at Zuffa).  As Assistant General Counsel, Mr. Mersch ███████████████████

5  ████████████████████████████████████████████████████████████

6  ████████.  Epstein Decl. ¶ 4.

7  The following morning, Mr. Mersch replied to Mr. Fertitta ███████████████████

8  ████████████████████████████████████████████████████████████

9  ███████████████████████████████████ *See* Rayhill Decl., Ex. 2, ZFL-1014045.

10  Mr. Fertitta then responded to Mr. Mersch's email suggesting that they discuss ████████████

11  the next day.  *Id.*  Mr. Epstein, Zuffa's then-General Counsel and Mr. Mersch's supervisor,

12  responded to the same email chain and ████████████████████████████████████

13  ████████████████████ *Id.* at Ex. 3; *see also* Epstein Decl. ¶¶ 2-4, 6-7.

14  **B.  Email Correspondence Concerning** ████████████████████████████

15  ████

16  The second set of documents include communications between Mr. Epstein, Zuffa's then-

17  General Counsel, and Randy Klein, Zuffa's former Vice President of Licensing and

18  Merchandising, ████████████████████████████████████████████

19  ████████████████████████████████████████████████████████

20  Plaintiffs' Motion collectively refers to these communications █████████████████████

21  Rayhill Decl. Ex. 9, ZFL-1845329; Ex. 10, ZFL-1845332; Ex. 11, ZFL-1845335; Ex. 12, ZFL-

22  1845337 (ECF Nos. 320-10, 320-11, 320-12, 320-13).

23  On December 24, 2008, Mr. Klein sent a message to Mr. Epstein, soliciting Mr. Epstein's

24  advice ████████████████████████████████████████████████████

25  Rayhill Decl., Ex. 12, ZFL-1845337.  In this email, Mr. Klein ████████████████████

26  ████████████████ *Id.*; *see also id.* ███████████████████████

27  ██████████████████████████████████████████████████████████.

28  After laying out what ████████████████████████████████ he closed his message by

1   stating: ████████████████████████████████  In

2   Mr. Epstein's response, he advised Mr. Klein ████████████████████

3   ████████████████████████████████████████████

4   ████████████████████████████████████████████████

5   ████  *Id.*  Mr. Epstein also explained that he copied Zuffa's then-Chief Operating Officer, Kirk

6   D. Hendrick, ████████████████  *Id.*

7   **C. Zuffa's Clawback Of The Privileged Documents**

8   On November 30, 2016, during Plaintiffs' deposition of Zuffa's corporate representative

9   pursuant to Fed. R. Civ. P. 30(b)(6), Plaintiffs' counsel attempted to introduce documents bearing

10  Bates numbers ZFL-1014072 and ZFL-1845329.  Grigsby Decl. ¶¶ 3, 5.  Zuffa's counsel

11  immediately clawed back both document under the terms of Section 11 of Protective Order.  *Id.*

12  After the conclusion of the testimony that day, Zuffa's counsel undertook an immediate

13  investigation to determine whether any related privileged documents had been inadvertently

14  produced.  *Id.* ¶¶ 4, 6.  As a result of this initial investigation, Zuffa's counsel sent Plaintiffs'

15  counsel a letter clawing back a total of six documents on November 30, 2016, *id.* ¶ 7, and sent a

16  second letter on December 5, 2016, clawing back six additional documents, *id.* ¶¶ 8-10.  The

17  documents listed in the November 30 and December 5 letters were all duplicates of, or related

18  email threads to, the two documents that Zuffa clawed back during the deposition.

19  On December 8, 2016, the parties participated in a telephonic meet-and-confer

20  conference.  At that conference, Zuffa agreed to withdraw its assertion of privilege over the

21  document bearing Bates number ZFL-1014051.  *See* Rayhill Decl. ¶ 20.  Zuffa and Plaintiffs,

22  however, could not reach an agreement concerning the following documents that have become

23  the subject of Plaintiffs' Motion.

24

25

26

27

28

Zuffa's Opposition to Plaintiffs' Motion to Challenge Attorney-Client Privilege

| Description | Bates Numbers (ECF No.) | Rayhill Decl. Ex. |
|---|---|---|
| October 23, 2012 ▮▮▮▮▮▮▮▮ from Michael Mersch to Lorenzo Fertitta ▮▮▮▮▮▮▮▮ ) | ZFL-0550804 (320-2); ZFL-1014072 (320-6) | 1, 5 |
| October 22-24, 2012, Email Exchange between Tracy Long, Lorenzo Fertitta, and Lawrence Epstein | ZFL-1014103 (320-9); ZFL-1014102 (320-8); ZFL-1014078 (320-7); ZFL-1014049 (320-5); ZFL-1014047 (320-4); ZFL-1014045 (320-3) | 2-4, 6-8 |
| December 24, 2008 Email Exchange between Randy Klein, Lawrence Epstein, Kirk Hendrick, ▮▮▮▮▮▮▮▮ | ZFL-1845337 (320-13); ZFL-1845335 (320-12); ZFL-1845332 (320-11); ZFL-1845329 (320-10) | 9-12 |

## III.   ARGUMENT

### A. Legal Standard

"The attorney–client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co.*, 449 U.S. at 389 (citation omitted).  In protecting confidential communications between a party and its attorney from disclosure, the privilege encourages "full and frank communication between attorneys and their clients and thereby promote[s] broader public interests in the observance of law and administration of justice." *Id.*

Whether a communication falls within the scope of the privilege turns on whether the communication either seeks or renders legal advice.  Courts have recognized the existence of the privilege "where legal advice of any kind is sought from a professional legal advisor in her capacity as a legal advisor concerning communications relating to that purpose, made in confidence by the client." *Brincko v. Rio Properties, Inc.*, 278 F.R.D. 576, 583 (D. Nev. 2011).

5

The Ninth Circuit has adopted an eight-part test to determine if the attorney-client privilege protects information:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection [is] waived.

*United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010) (citation omitted).  A party asserting the privilege bears the burden of establishing that the elements of privilege are met.  *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997).

"[T]he attorney-client privilege attaches to corporations as well as to individuals." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985) (citing *Upjohn*, 449 U.S. 383).  "Both for corporations and individuals, the attorney-client privilege serves to promote full and frank communications between attorneys and their clients."  *Id.*  "The Supreme Court has held that a corporation's in-house counsel qualifies as an attorney for purposes of the attorney-client privilege."  *Premiere Digital Access, Inc. v. Cent. Tel. Co.*, 360 F. Supp. 2d 1168, 1175 (D. Nev. 2005) (citing *Upjohn*, 449 U.S. at 394).  The privilege extends to various types of legal advice that an in-house attorney may provide, and "applies to communications between lawyers and their clients when the lawyers act in a counseling and planning role . . . ."  *Ideal Elec. Co. v. Flowserve Corp.*, 230 F.R.D. 603, 607 (D. Nev. 2005) (citing *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996)).  Where the client is a corporation, "any advice sought by its representatives will obviously be, on some level, for purposes of how that corporation should conduct its business.  However . . . where . . . the primary purpose of the communication is to discern the legal ramifications of a potential course of action, that communication is for a 'legal purpose.'"  *Premiere Digital*, 360 F. Supp. 2d at 1174 (D. Nev. 2005); *accord United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002).  The inquiry into the question of whether a communication has a legal purpose generally is not amenable to bright line rules.  *Upjohn*, 449 U.S. at 396.

1    **B.  Mr. Mersch's** ███████████████████ **Is Privileged**

2    Plaintiffs parse each statement in the ████████████████████████████

3    ██████ to bolster their argument that the primary purpose of the documents "[i]s [t]o [o]btain

4    [o]r [p]rovide [b]usiness [a]dvice… ."  Pl. Mot. at 5.  This position stands at odds with the genesis

5    of this document.  Mr. Mersch ████████████████████████████████████████

6    ████████████████████████████████████████████████████████████ Rayhill

7    Decl., Ex. 2, ZFL-1014045.  As Zuffa's in-house counsel, Mr. Mersch ██████████████████

8    ████████████████████████████████████████████████████████████████████

9    ██████████████████████████████████ This legal analysis and advice is exactly the type of

10   communication that the attorney-client privilege protects.

11   Courts have emphasized that the particular *format* of the legal advice does not control the

12   attorney-client privilege analysis.  A forwarded email or a short message, even if it does not

13   include extensive citations to cases and statutes may warrant the attorney-client privilege

14   protection as long as the *content* demonstrates that the attorney is providing legal advice.  *See,*

15   *e.g.*, *In re County of Erie*, 473 F.3d 413, 420-21 (2d Cir. 2007).  For example, in *Premiere Digital*

16   *Access, Inc. v. Central Telephone Company*, the Court ruled that the attorney-client privilege

17   covered e-mails forwarded to a company's in-house counsel from company employees that

18   "contained in-house counsel's recommendation as to how Sprint [the company] should proceed in

19   terminating the service of a different customer."  360 F. Supp. 2d at 1171.  Of particular

20   importance, the Court noted that "th[e] communication was made between a Sprint employee in

21   the scope of his employment and Sprint's in-house counsel acting in his capacity as such for the

22   purpose of securing legal advice."  *Id.* at 1175.  Accepting a contrary view "would essentially

23   render unprotected any communication that occurred between attorney and client prior to the start

24   of preparation for litigation."  *Id.*

25   **1.  The** ███████████████████ **From Zuffa's In-House Counsel**
     **To Zuffa's CEO Is A Legal Analysis Of Contractual Language**

26

27   Mr. Mersch's ██████████ is representative of a core function of an in-house attorney –

28   to provide legal advice to an organization's employees ████████████████████████

7

Zuffa's Opposition to Plaintiffs' Motion to Challenge Attorney-Client Privilege

1  ████████████████████████████████.  Mr. Mersch ████████████████████████

2  ██████████████████████████ in his role as Assistant General Counsel.  Epstein Decl.

3  ¶ 4.  In ████████████  Mr. Mersch does not merely recount Zuffa's business objectives ██

4  ████████████████████, but counsels Mr. Fertitta on:

5  • ████████████████████████████████████████



| Section of Rayhill Decl., Ex. 1, ZFL-0550804-808 and Ex. 5, ZFL-1014072-76 | |
|---|---|
| ██████████ | ████████████████████████ |
| █████ | ████████████████████████ |
| ██ | ██████████████████████ |
| ███ | ███████████████████████ |
| ███ | ████████████████████████ |
| ████ | ███████████████████████ |
| ██ | █████████████████████████ |
| ██ | ████████████████████████ |
| ███ | ████████████████████████ |

28

Zuffa's Opposition to Plaintiffs' Motion to Challenge Attorney-Client Privilege

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



| Section of |
|---|
| Rayhill Decl., Ex. 1, ZFL-0550804-808 and Ex. 5, ZFL-1014072-76 |

Zuffa's Opposition to Plaintiffs' Motion to Challenge Attorney-Client Privilege

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



| Section of |
| --- |
| Rayhill Decl., Ex. 1, ZFL-0550804-808 and Ex. 5, ZFL-1014072-76 |

Zuffa's Opposition to Plaintiffs' Motion to Challenge Attorney-Client Privilege

1



Zuffa's Opposition to Plaintiffs' Motion to Challenge Attorney-Client Privilege



As the above list illustrates, ███████████ Mr. Mersch provides his legal analysis on the

effect of proposed contractual changes and advice as to whether Mr. Fertitta should ████████

███████████████████████████████████████████████████████████

███████████████ This primary purpose of this communication plainly is to convey legal,

not merely business, advice.

In challenging this document, Plaintiffs ignore this Court's prior ruling on a nearly

identical issue.  During the May 17, 2016 status conference, the Court considered Plaintiffs'

challenge to Zuffa's assertion of attorney-client privilege over a communication between a lawyer

and his supervising attorney and a high-level executive, requesting feedback on draft language to

be inserted into a contract.  Zuffa's Opp'n to Pls.' Mot. To Challenge Privilege Designation (ECF

No. 256) at 1.  At the May 17, 2016 hearing, the Court questioned Plaintiffs' position that an

exchange between an attorney and his client requesting advice about contractual language may not be privileged:

> MR. RAYHILL: Okay. So the document in question is an e-mail from an UFC attorney, Michael Mersch, to other UFC executives, and it concerns a language in a contract. And the language has to do with a bonus clause. It just quotes the clause itself, which apparently is language that was suggested by the fighter. It is not –
>
> THE COURT: Counsel for the fighter.
>
> MR. RAYHILL: I believe it was -- yeah. Okay. Counsel for the fighter. And the attorney, Michael Mersch, simply asks, Are we okay with this language, to the two Zuffa executives. So it's clearly strictly a business purpose. It's a straight-up contract negotiation. There are no legal issues raised. It has strictly to do with the amount of money –
>
> THE COURT: Where -- how do you get that read from looking at it? Are we okay with this language?
>
> MR. RAYHILL: Well, the language is about the – the language is proposed by the fighter, and the language is about the amount of money that's going to be included in this bonus clause.
>
> . . .
>
> THE COURT:  If your client writes you a letter and says, "Here's a contract that I've been handed.  Can I sign this?  Is he or she asking you for legal advice?"
>
> MR. RAYHILL:  Well, that's not what the e-mail says.  In that case I think it would depend on the circumstances of the contract and the circumstances of the letter.  Maybe the – my client is asking, Am I getting enough money?  In which case the answer is it not privileged.  If the client is saying, "Am I exposing myself to liability, legal liability," then the answer is it's privileged.
>
>          So without knowing the context, I think it's impossible to answer one way or another.  It really depends on what the client is asking.  And in this case the client is asking, Do we want to pay the amount --

May 17, 2016 Status Conference Tr. ("Status Conf. Tr.") 9:17-10:10, 15:16-16:4 (ECF No. 269).

After brief additional discussion, the Court denied Plaintiffs' privilege challenge, holding that "[t]he document is privileged."  *Id.* at 20:15-16.

Zuffa's Opposition to Plaintiffs' Motion to Challenge Attorney-Client Privilege

1   The legal issue here is no different than the one argued during the May 17, 2016 Status

2   Conference.  Here, ███████████████████████████████████████████████████████████

3   ████████ Mr. Fertitta ██████████████████████████████ to his attorney, Mr. Mersch, to seek

4   legal advice, essentially asking Mr. Mersch ████████████████████████  Mr. Fertitta's

5   choice to send these changes to Zuffa's legal department, rather than its Chief Operating Officer,

6   indicates that Mr. Fertitta wanted legal, not business, advice.  Acting in his role as Assistant

7   General Counsel, Mr. Mersch responded to Mr. Fertitta's request by providing his legal opinion

8   on ██████████████████████████████████████  Indeed, some of the responses

9   that Plaintiffs cast as "business advice" would make little sense from a non-lawyer.  For example,

10  ██████████████████████████████████████████████████████████████████████

11  ██████████████████████████████████████████. *See, e.g.,* ████████████████████████

12  ██ He, however, notes that as a legal matter, ███████████████████████████████

13  ████████████████████████████████████████████████

14  ████████████████████ Rayhill Decl. Ex. 1, at ZFL-0550805 ("████████████████████

15  ████████████████████████████████████████████████████████

16  ██████████████████████████████████████████████████████████████████████████

17  ███████████████████████████"), *id.* ("████████████████████████████████████

18  ████████████████████████████████████████"), *id.* at ZFL-0550806 ("██████████

19  █████████████████████████████████████████████████████████████

20  █████████████████████████████████████████████████████████"); *id.* at ZFL-0550807

21  ("█████████████████████████████████████████████████████████████████

22  ███████████████████████████████████████████████████"); *id.* at ZFL-

23  0550808 ("████████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████") Like the

25  document at issue in the May 17 status conference, the attorney-client privilege protects this

26  memorandum.

27   Plaintiffs erroneously claim all Mr. Mersch's statements apart from a single sentence are

28  not privileged because they: are descriptive; lack a legal justification; fall into the category of

14

1  "past performance"; or qualify as business advice.  Pls.' Mot. at 6-16.  This categorization ignores

2  the substance ███████████████████████████████████████████████████████████

3  ████████████████████████████████████████████, *what* the legal

4  implications of these changes would be, and *whether* Zuffa should █████████████

5  ███████████████████  Although Plaintiffs attempt to dissect and weigh each statement

6  in isolation, they fail to appreciate that ████████████████████████████

7  ████████████████████████████████████████████████████████████████

8  ████████████████  Rayhill Decl., Ex. 2, ZFL-1014045.  This analysis is legal in nature.

9  And Plaintiffs' suggested characterizations cannot transform attorney-client privileged material

10 into unprivileged business advice.

11 **2.  The** ██████████████████████████ **Is**

12 **Privileged**

13 Separately, Plaintiffs argue that ██████████████████ is not privileged

14 because it █████████████████████████████████████████

15 ███████████████████████  Pls.' Mot. at 5.  Even a cursory review of the

16 document belies this assertion.  The ████████████████████████████████

17 ███████████████████████████████████████████████

18 ████████████████████████████████████████████████

19 ████████████████████  Rayhill Decl., Exs. 1 & 5, at ZFL-0550804 and ZFL-

20 1014072; *see also* Ex. 4 at ZFL-1014049.

21 Mr. Mersch's ██████████████████ reflects his legal opinion regarding what he

22 believed ████████████████████████████████████████████████

23 ███████████████████  In this ███████████████████████████████

24 ███████████████████████████████████████  For example, ██

25 ███████████████████████████████████████████

26 ███████████████████████████████████████████

27 ███████████████████████  Rayhill Decl., Exs. 1 & 5, at ZFL-0550804 and

28 ZFL-1014072. By contrast, he █████████████████████████████████████



1   ███████████████████████████████████████████████

2   Rayhill Decl., Ex. 17 at ZFL-1014053 (███████████████████████████

3   ██████████████████████. Mr. Mersch also omitted several other ████████

4   ██████████████████████████████████████████ *E.g., id.* at

5   ZFL-1014051 (████████████████████████████████████████

6   ██████████████████) and ZFL-1014051 (██████████████████

7   ███████████████████████████████████████████████

8   ██████████████████████).

9          What Plaintiffs describe as a ██████████████████████ is actually a

10  legal analysis of the most important aspects of ██████████████████████ To

11  accept Plaintiff's argument that Mr. Mersch's advice to Zuffa was not legal in nature is to believe

12  ███████████████████████████████████████████████

13  ████████████████████████████. Yet Plaintiffs have not gone as far as to

14  suggest that ███████████████████████████████. Mr. Mersch's decision to

15  include certain facts and to omit certain other facts in ██████████ provides insight into his legal

16  opinions regarding ███████████████████████████████████████

17  should be evaluated. *See Ideal Elec.*, 230 F.R.D. at 607 (finding that the attorney-client privilege

18  covers "communications with respect to how the facts should be presented").  It is therefore

19  properly protected by the attorney-client privilege.

20          Zuffa has properly asserted the privilege applies to the ████████████████

21  ██████████████████.

22       **C. The E-mails Related To Mr. Mersch's ██████████████ Contain Privileged**
        **Attorney-Client Communications**

23

24          Plaintiffs also dispute that the email communications concerning Mr. Mersch's ████████

25  ██████████████████ arguing that the emails do not "refer to legal concepts,

26  strategy or advice."  Pls.' Mot. at 17. This is incorrect.  Zuffa asserts privilege only over emails

27  that communicate a confidential request for advice, include privileged advice, or respond to that

28  advice.

Mr. Mersch and Ms. Long's responses to Mr. Fertitta's request for legal advice are privileged.  It is well-settled that a communication by an attorney in response to a request by an employee of an organization for legal advice is covered by the attorney-client privilege.  *See Ideal Elec.*, 230 F.R.D. at 607 (explaining that the attorney-client privilege "applies to communications between lawyers and their clients when the lawyers act in a counseling and planning role") (citation omitted).  It is also well-settled that "[c]ommunications with the subordinate of an attorney, such as a paralegal, are also protected by the attorney-client privilege so long as the subordinate is acting as the agent of a duly qualified attorney under circumstances that would otherwise be sufficient to invoke the privilege."  *Southeastern Pennsylvania Transport. Auth. v. CaremarkPCS Health, L.P.*, 254 F.R.D. 253, 257 (E.D. Pa. 2008) (citation and quotation marks omitted).

At Zuffa, Ms. Long, acting as Legal Affairs Manager and the Executive Assistant to Mr. Mersch and Mr. Epstein, ██████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ Epstein Decl. ¶¶ 5-6.  These portions of the e-mails are privileged because Ms. Long was acting under the supervision of Mr. Epstein as General Counsel and, in her own words, ████████████████ ████████████████████████████████████████████.  *See* Rayhill Decl., Ex. 6 at ZFL-1014078; *see also CaremarkPCS*, 254 F.R.D. at 257.

As to Mr. Mersch's ████████████████████████████ that communication is privileged for the reasons discussed above, namely that it conveys legal advice from an attorney to his client.  *See* Section III.B *supra*.  The ████████████████████████████████ ████████████████████████████████████  That portion of ZFL-1014049 is privileged.   Likewise, Mr. Epstein's ████████ ████████████████ is also privileged legal advice – Mr. Epstein was acting in his role as General Counsel and providing his legal impressions of Mr. Mersch's ████████████████████████ ████████████████████████████ Epstein Decl. ¶ 7.  Finally, Mr. Fertitta's

1    response to Mr. Mersch's ███████████████ is a response to Mr. Mersch's legal

2    advice, and, as such, is privileged.

3        In sum, the email communications discussing Mr. Mersch's ████████████████

4    ███████████ are privileged.

5    **D. The ████████████ Contain Privileged Attorney-Client**

6    **Communications, And Zuffa Did Not Waive That Privilege**

7        **1. The ████████████ Contain Privileged Attorney-Client**
     **Communications**

8

9        In attacking Zuffa's assertion of attorney-client privilege over █████████████,

10   Plaintiffs again seek to decontextualize privileged statements and, in doing so, distract from their

11   clearly privileged nature.  The only relevant questions are if Mr. Klein's purpose was to solicit

12   legal advice, and whether Mr. Epstein's purpose was to render legal advice.  The context of the

13   ███████████ demonstrates that the answer to both questions is yes.

14       The identity of the participants in the email chain shows that Mr. Klein's request was a

15   legal one, not a business one.  Mr. Klein's initial email did not include any of the non-lawyer

16   employees or executives who are ████████████████████████████

17   ████████ Mr. Klein did not address his inquiry ████████████████████████

18   ██████████████████████.  Mr. Klein did not merely copy in-house counsel on

19   a request to others.  Instead, Mr. Klein emailed Mr. Epstein directly and did not copy anyone.

20   Mr. Klein's choice to email the company's top lawyer—and only a lawyer—refutes Plaintiffs'

21   position that this email communication is a discussion of business issues.  *Cf. Phillips v. C.R.*

22   *Bard, Inc.*, 290 F.R.D. 615, 657 (D. Nev. 2013) (limiting distribution of communication of

23   request to in-house counsel for legal advice favors finding of privilege); *Churchill v. Trinity*

24   *Universal Ins. Co.*, No. CV 08-99-M-DWM, 2009 WL 10656999, at *3 (D. Mont. Nov. 17, 2009)

25   (holding that documents were properly withheld where they were "for legal purposes limited to

26   where . . . in-house counsel was the author or recipient" as opposed to being copied).  Their own

27   *ipse dixit* aside, nothing in the email chain supports Plaintiffs' position that the e-mail chain

28   addresses only a "pure business purpose" rather than a request for legal advice.  To the contrary,

18

1  the e-mails indicate that Mr. Klein's purpose was to request legal advice, which Mr. Epstein

2  provided.

3       The privileged portions of the ███████████████████████████████

4  ████████████████████████████████████████████████████████████████████████

5  █████████████████████████████████████████████████  In fact, ████████████

6  ████████████████████████████████████████████████████████████████████████

7  ████████████████  Epstein Decl. ¶ 10 & Grigsby Decl., Ex. C.  In the course of ████

8  ████████████████████████████████████████████████████████████████████████

9  ██████████████████████████████████████████████.  Grigsby Decl., Ex.

10  C at ZFL-1153898. In the ███████████████, Mr. Epstein provided his legal advice

11  regarding ████████████████████████████  Epstein Decl. ¶ 11.  As Mr. Epstein

12  was, at Mr. Klein's request, providing his legal interpretation of the effect of the contractual

13  agreement in force with ████████ at the time, Mr. Epstein's response, Mr. Klein's request, and

14  Mr. Klein's response to Mr. Epstein's advice are all privileged communications.  As explained

15  above, this type of request by an employee and advice by an in-house attorney are protected by

16  the attorney-client privilege.  Plaintiff's naked assertions aside, Mr. Klein sought and Mr. Epstein

17  provided legal advice █████████████████████████████████████████████

18  ████████ and Plaintiffs have not provided any evidence otherwise.  *Premiere Digital*, 360 F.

19  Supp. 2d at 1174 ("As this client is a corporation, any advice sought by its representatives will

20  obviously be, on some level, for the purposes of determining how that corporation should conduct

21  its business.  However, the Court finds that where, as here, the primary purpose of the

22  communication is to discern the legal ramifications of a potential course of action, that

23  communication is for a 'legal' purpose.").

24            **2.  Zuffa's Production Of Business Communications On The Same**
                 **Subject Does Not Waive Privilege**

25

26       Plaintiffs also argue Zuffa waived privilege over the redacted portions of the ████████

27  ████████ by producing unredacted portions of the documents.  The flaw in this argument is

28  simple:  Because the unredacted portions of the documents are not privileged, no waiver can

1    result from their production.  Plaintiffs' theory would perversely penalize Zuffa for carefully

2    distinguishing between privileged and non-privileged aspects of the communication in redacting

3    the documents and would encourage overbroad privilege claims.  Federal law dictates that only

4    "[d]isclosing a privileged communication . . . results in waiver as to all other communications on

5    the same subject." *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) (citations

6    omitted).   Neither side disputes whether the unredacted communications contain privileged

7    information; they do not.  The unredacted communications are ████████████████████

8    ███████████████████████████████████████████████, as opposed to

9    Mr. Klein directly seeking legal advice from Mr. Epstein, Mr. Epstein responding with that legal

10   advice, and Mr. Klein directly responding to Mr. Epstein's legal advice.  Where unredacted

11   portions of a document reveal "only factual information . . . and contain[ed] no component of

12   legal analysis," their disclosure does not waive privilege as to the redacted portions of those same

13   documents. *Regents of Univ. of California v. Micro Therapeutics, Inc.*, 2007 WL 2069946, at *3

14   (N.D. Cal. 2007); *see Robert Bosch LLC v. Pylon Mfg. Corp.*, 263 F.R.D. 142, 150 (D. Del. 2009)

15   (finding that "disclosed parts of [] unredacted documents" that did not "contain any advice of

16   counsel" did not waive attorney-client privilege as to the redacted portions of those same

17   documents).  Zuffa's disclosure of these unredacted communications that include non-privileged

18   statements cannot constitute a waiver of privilege as to the redacted communications on this

19   subject, which contain legal advice sought and received from counsel.

20           Courts routinely allow or order redactions where documents contain a mix of protected

21   privileged communications and business advice.  *See, e.g., TVT Records v. Island Def Jam Music*

22   *Grp.,* 214 F.R.D. 143, 146 (S.D.N.Y. 2003) (allowing redaction of legal advice in emails that had

23   a mixture of legal and business advice.); *Complex Sys., Inc. v. ABN AMRO Bank N.V.*, 279 F.R.D.

24   140, 150-51 (S.D.N.Y. 2011) (same); *Int'l Cards Co. v. Mastercard Int'l Inc.,* No. 13-CV-02576

25   LGS SN, 2014 WL 4357450 (S.D.N.Y. Aug. 27, 2014) (ordering the redaction of some emails

26   that had a mix of business related communications and legal communications).  The rule

27   Plaintiffs urge would have absurd consequences.  Plaintiffs' argument would mean that where a

28   party provides a document containing both redacted, privileged legal communications and

unredacted, non-privileged business communications, the party has waived privilege as to the redacted portions of the document.  If that were the case, courts would never order parties to redact documents, but, instead, would either require documents be withheld in their entirety or disclosed in their entirety.  Plaintiffs should not be permitted to use Zuffa's good faith efforts to distinguish between privileged and non-privileged communications as a sword to defeat Zuffa's privilege designations.

### E.  Plaintiffs Will Not Be Prejudiced As A Result of Zuffa's Privilege Claim Over The Challenged Documents

Plaintiffs argue that they would be prejudiced by Zuffa's withholding or redacting the Challenged Documents as protected by attorney-client privilege.  Pls.' Mot. at 23.  As to the ███████████████████████ and the related emails, the Court's question on a similar issue at the May 17, 2016 status conference is instructive: "THE COURT:  How are they protecting it if they produce the proposal from the fighter and the response and final draft?" Status Conf. Tr. 18:13-14.  As to ████████████████████████████ Zuffa has provided Plaintiffs with an enormous number of ████████████████████████ *and* has provided, as with ██████████████████████████████████████ ███████████████████████████████████████████████ ██████

Specifically as to ████████ Zuffa has produced:  (1) ██████████████ ████████████████████████ Rayhill Decl., Ex. 17, ZFL-1014051; (2) the ████████████████████████████████████████, Grigsby Decl., Ex. B; and (3) other documents ████████████████████████ ██████.  In addition to testimony they will take during numerous depositions with a wide range of Zuffa employees, former employees, and third parties, Plaintiffs have enough information and documentation from Zuffa's productions such that they are not prejudiced by the withholding and redaction of Zuffa's privileged information.

Plaintiffs have simply not been prejudiced and will not be prejudiced if the privileged documents are withheld.

Zuffa's Opposition to Plaintiffs' Motion to Challenge Attorney-Client Privilege

1    IV.    __CONCLUSION__

2          Zuffa respectfully requests that the Court deny Plaintiffs' challenge to attorney-client

3    privilege.

4

5    Dated: January 3, 2017                    BOIES, SCHILLER & FLEXNER LLP

6

7                                              By: /s/ Stacey K. Grigsby

8
                                              Stacey K. Grigsby (*Pro Hac Vice*)
9                                             BOIES, SCHILLER & FLEXNER LLP
                                              1401 New York Avenue NW, 11th Floor
10                                            Washington, DC 20005
                                              Tel: (202) 237-2727
11                                            Fax: (202) 237-6131
                                              Email: sgrigsby@bsfllp.com
12
                                              *Attorneys for Defendant* Zuffa, LLC, d/b/a
13                                            Ultimate Fighting Championship and UFC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Zuffa's Opposition to Plaintiffs' Motion to Challenge Attorney-Client Privilege

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that service of the foregoing **DEFENDANT ZUFFA, LLC'S OPPOSITION TO PLAINTIFFS' MOTION TO CHALLENGE ATTORNEY-CLIENT PRIVILEGE (ECF No. 320)** was served on January 3, 2017 via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

_____/s/ Christina Seki_____

**Christina Seki**, an Employee of Boies, Schiller & Flexner, LLP