1  WILLIAM A. ISAACSON (*Pro Hac Vice*)
   STACEY K. GRIGSBY(*Pro Hac Vice*)
2  NICHOLAS A. WIDNELL (*Pro Hac Vice*)
   (wisaacson@bsfllp.com)
3  (sgrigsby@bsfllp.com)
   (nwidnell@bsfllp.com)
4  BOIES, SCHILLER & FLEXNER LLP
5  1401 New York Avenue, NW, Washington, DC 20005
   Telephone: (202) 237-2727; Fax: (202) 237-6131
6
7  RICHARD J. POCKER #3568
   (rpocker@bsfllp.com)
8  BOIES, SCHILLER & FLEXNER LLP
   300 South Fourth Street, Suite 800, Las Vegas, NV 89101
9  Telephone: (702) 382-7300; Fax: (702) 382-2755

10 DONALD J. CAMPBELL #1216
   (djc@campbellandwilliams.com)
11 J. COLBY WILLIAMS  #5549
   (jcw@campbellandwilliams.com)
12 CAMPBELL & WILLIAMS
13 700 South 7th Street, Las Vegas, Nevada 89101
   Telephone: (702) 382-5222; Fax: (702) 382-0540
14
15 *Attorneys for Defendant* Zuffa, LLC, d/b/a
   Ultimate Fighting Championship and UFC
16
17              UNITED STATES DISTRICT COURT
18                  DISTRICT OF NEVADA

19 Cung Le, Nathan Quarry, Jon Fitch, Brandon          No.: 2:15-cv-01045-RFB-(PAL)
   Vera, Luis Javier Vazquez, and Kyle
20 Kingsbury, on behalf of themselves and all          **ZUFFA, LLC'S MOTION FOR**
   others similarly situated,                          **PARTIAL SUMMARY JUDGMENT AS**
21                                                      **TO PLAINTIFF NATHAN QUARRY**
22              Plaintiffs,                             **ON STATUTE OF LIMITATIONS**
          v.                                           **GROUNDS AND SUPPORTING**
23                                                      **MEMORANDUM OF LAW**
   Zuffa, LLC, d/b/a Ultimate Fighting                 **(HEARING REQUESTED)**
24 Championship and UFC,
25              Defendant.
26
27
28

MEM. OF LAW ISO ZUFFA MSA                            Case No.: 2:15-cv-01045-RFB-(PAL)

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

RELEVANT FACTUAL BACKGROUND ...................................................................... 3

I.      Mr. Quarry's Pre-Limitations Contracts with Zuffa. ......................................... 3

        A.      Mr. Quarry's Promotional Agreements ................................................... 4

        B.      Mr. Quarry's Bout Agreements ............................................................... 5

        C.      Mr. Quarry's Merchandise Rights Agreements ...................................... 6

II.     Mr. Quarry's Allegations Against Zuffa. ........................................................... 8

Legal Standard ................................................................................................................. 8

Argument ......................................................................................................................... 9

I.      Mr. Quarry's Antitrust Claim Is Barred by the Four-Year Statute of Limitations. ............ 9

II.     The Continuing Violation Exception Does Not Apply to Mr. Quarry's Untimely
        Claim. ................................................................................................................. 11

CONCLUSION ............................................................................................................... 14

MEM. OF LAW ISO ZUFFA MSA                              Case No.: 2:15-cv-01045-RFB-(PAL)

1

## TABLE OF AUTHORITIES

2

### CASES

3

*Anderson v. Liberty Lobby, Inc.*,
4
    477 U.S. 242 (1986)................................................................................................... 8, 9

5
*Anheuser-Busch, Inc. v. Natural Beverage Distributors*,
    69 F.3d 337 (9th Cir. 1995) ......................................................................................... 9

6
*Aurora Enterprises., Inc. v. National Broadcasting Co.*,
7
    688 F.2d 689 (9th Cir. 1982)................................................................... 9, 11, 12, 13

8
*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)..................................................................................................... 9
9

10
*Eichman v. Fotomat Corp.*,
    880 F.2d 149 (9th Cir. 1989)................................................................................ 9, 12

11
*FTC v. Stefanchik*,
12
    559 F.3d 924 (9th Cir. 2009)....................................................................................... 9

13
*In re Multidistrict Vehicle Air Pollution*,
    591 F.2d 68 (9th Cir. 1979)....................................................................................... 13
14

15
*Joseph v. Amazon.com, Inc.*,
    46 F. Supp. 3d 1095 (W.D. Wash. 2014) ................................................................... 9

16
*MedioStream, Inc. v. Microsoft Corp.*,
17
    869 F. Supp. 2d 1095 (N.D. Cal. 2012) ................................................................... 13

18
*Pace Indus., Inc. v. Three Phoenix Co.*,
    813 F.2d 234 (9th Cir. 1987)..................................................................................... 12
19

20
*Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*,
    517 F.2d 117 (5th Cir. 1975)..................................................................................... 13

21
*Twin City Sportservice, Inc. v. Charles O. Finley & Co.*,
22
    512 F.2d 1264 (9th Cir. 1975)................................................................................... 12

23
*United States v. Grinnell Corp.*,
    384 U.S. 563 (1966)..................................................................................................... 2
24

25
*Varner v. Peterson Farms*,
    371 F.3d 1011 (8th Cir. 2004)................................................................................... 12

26
*Witt Co. v. RISO, Inc.*,
27
    948 F. Supp. 2d 1227 (D. Or. 2013) ........................................................................ 13

28

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
  401 U.S. 321 (1971)..................................................................................................................... 9

**STATUTES**

15 U.S.C. § 15 ............................................................................................................................... 9

15 U.S.C. § 15b ........................................................................................................................... 11

**RULES**

Fed. R. Civ. P. 56(a)..................................................................................................................... 8

Fed. R. Civ. P. 56(c)..................................................................................................................... 9

1    Defendant Zuffa, LLC ("Zuffa") submits this Motion for Partial Summary Judgment As to

2    Plaintiff Nathan Quarry on Statute Of Limitations Grounds And Supporting Memorandum Of

3    Law ("Zuffa Motion") and seeks judgment in its favor as to all of Plaintiff Quarry's claims on the

4    grounds that his claims are time-barred.  In addition to its Motion, Zuffa submits its Statement of

5    Undisputed Material Facts in Support of the Zuffa Motion ("SUF") and the Declaration of Kirk

6    D. Hendrick In Support Of Zuffa, LLC's Motion For Summary Judgment As To Plaintiff Nathan

7    Quarry On Statute Of Limitations Grounds.[1]

8    **INTRODUCTION**

9    Plaintiffs allege that Zuffa has monopolized an "output" market for "promoting live, elite,

10   professional MMA [(mixed martial arts)] bouts" by foreclosing other MMA promoters from

11   access to "elite MMA fighters," "key sponsors," and "premier venues," and, in doing so, became

12   a monopsonist in the "input" market for purchasing "live, elite, professional MMA fighter

13   services."  Consolidated Am. Compl. ("CAC") (ECF No. 208) ¶¶ 55, 76, 107, 116, 122.  In short,

14   Plaintiffs' proposed theory is that Zuffa succeeded because potential rivals could not compete

15   when Zuffa denied them access to the relationships that Zuffa had developed for itself, *i.e.* when

16   rival promoters did not have access to the same fighters, the same venues (for the same time

17   periods), and the same sponsors as Zuffa, those promoters were incapable of competing.  In

18   actuality, Zuffa rose to prominence because it created a product and then was a better competitor

19   than its rivals.

20   Zuffa was formed to purchase the failing Ultimate Fighting Championship® ("UFC")

21   brand in 2001.  *Id.* ¶ 28.  At the time of purchase, the future success of UFC was by no means

22   guaranteed, as evidenced by its $ 2 million price tag.  *Id.*  Indeed, from 2001 to 2004, Zuffa

23   struggled and lost millions of dollars.  Yet, in less than a decade, Zuffa transformed the UFC from

24   a struggling business to a successful MMA promoter through its investments in the UFC and in

[1] Exhibits to Hendrick Declaration are referenced herein as "Zuffa Mot. Ex."

ZUFFA MOT. FOR PARTIAL SUMM. J.          Case No.: 2:15-cv-01045-RFB-(PAL)

1   growing the sport of MMA as a whole.  Many of Zuffa's business decisions enabled this

2   transformation to occur—Zuffa had to invest in lobbying for rules and regulations at the state

3   level for fair and safe bouts; Zuffa had to attract top athletes by paying them as much or more

4   than other promoters were willing to pay; and Zuffa had to create a better experience for the

5   athletes to compete and the fans to enjoy the competition.  Ultimately, these business decisions

6   allowed Zuffa to offer athletes the best promotional opportunities and, as a result, athletes stayed

7   with Zuffa.  Plaintiffs' case is flawed in many respects,[2] but first and foremost, Plaintiffs'

8   allegations run afoul of the well-established principle that antitrust liability cannot arise from

9   "growth or development as a consequence of a superior product, business acumen, or historic

10  accident."  *United States v. Grinnell Corp.*, 384 U.S. 563, 570 (1966).

11       Although the broader flaws with Plaintiffs' case await full discovery before they can be

12  resolved, one issue does not raise any disputed facts.  Mr. Quarry's claim that his "Identity was

13  expropriated and his payments for appearing in UFC Licensed Merchandise and UFC

14  Promotional Materials was artificially suppressed" arises solely out of the express terms of his

15  agreements with Zuffa, all of which were executed outside the applicable four-year statute of

16  limitations period that began to run on December 16, 2010.  All the terms to which Plaintiffs

17  object were set before that date.  As a result, his December 16, 2014 claim based on the alleged

18  "expropriation" and "exploitation" of his identity rights is time-barred, and none of the

19  recognized exceptions to the statute of limitations excuse Mr. Quarry's failure to bring his claim

20  in a timely fashion.

---

[2] Although insufficient to overcome "the fairly forgiving standard" on a motion to dismiss, Mot. to Dismiss Hearing Tr. 13:9-13, Sept. 25, 2015, Zuffa has identified a number of issues with Plaintiffs' market definition and the implausible basis for asserting that Zuffa foreclosed competitors from inputs necessary to compete.  *See generally* ECF Nos. 64, 82.

ZUFFA MOT. FOR PARTIAL SUMM. J.                    Case No.: 2:15-cv-01045-RFB-(PAL)

**RELEVANT FACTUAL BACKGROUND**

Zuffa promotes live professional MMA bouts in the U.S. and elsewhere, under the trade names of the Ultimate Fighting Championship® and UFC®.[3] CAC ¶ 30.[4] As part of this business, Zuffa contracts with athletes to participate in live bouts and to allow Zuffa the right to use their identities — including an athlete's "name, sobriquet, voice, persona, signature, likeness, and/or biography" — in certain limited ways in connection with UFC promotions. CAC ¶ 27(f); SUF ¶ 2 (quoting Zuffa Mot. Ex. A, Art. 3.1) (collectively, "UFC Identity Rights"). Three categories of agreements govern the use of an athlete's identity: (1) Promotional and Ancillary Rights Agreements ("Promotional Agreement"), (2) Merchandise Rights Agreements, and (3) Bout Agreements. SUF ¶ 3. Each of these agreements defines the scope of the Identity Rights an athlete will grant and any services the athlete must perform, and specifies the payments Zuffa will make in exchange for those rights. The UFC Identity Rights do not limit ███████████ ████████████████████████████████████████████████████████████ These agreements allow Zuffa to ████████████████████████████████ ████████████████████████████████████████████. *E.g.*, SUF ¶ 8 (citing Zuffa Mot. Ex. A, Art. 3.1). The agreements also permit Zuffa to ██████████████████ ███████████████████. *E.g.*, SUF ¶ 31.

**I.  Contracts Executed by Mr. Quarry and Zuffa Before the Statute-of-Limitations Period**

All the parties agree that Plaintiff Nathan Quarry is an athlete who contracted with Zuffa and competed in the UFC and received contractual payments in exchange for services to be performed and the use of his UFC Identity Rights. CAC ¶ 34; SUF ¶¶ 15-16, 29-30, 32. It is also undisputed that Mr. Quarry's Promotional Agreement, Merchandise Rights Agreements, and Bout Agreements pre-date the first complaint filed in this action by more than four years. SUF ¶ 51.

---

[3] As a defined term in Zuffa's agreements, a "Bout" is a "███████████████████████████ ██████. *E.g.*, SUF ¶ 16 (quoting Zuffa Mot. Ex. A, at LEPLAINTIFFS-0048763).

[4] For purposes of this motion for summary judgment only, Zuffa accepts in a light most favorable to Plaintiffs certain factual allegations in the Consolidated Amended Complaint.

ZUFFA MOT. FOR PARTIAL SUMM. J.          Case No.: 2:15-cv-01045-RFB-(PAL)

**A.      Mr. Quarry's Promotional Agreements**

Mr. Quarry's first agreement with Zuffa, a Promotional and Ancillary Rights Agreement, took effect on October 5, 2004 ("2004 Promotional Agreement").  SUF ¶ 5 (citing Zuffa Mot. Ex. D); *see* CAC ¶ 27(e) (defining "Exclusive Promotional and Ancillary Rights Agreement").[5]  The 2004 Promotional Agreement provides Zuffa the right to use Mr. Quarry's Identity "████████

████████████████████████████████████████████████████████████████

████████████████████████████████████"  *E.g.,*  SUF ¶ 8 (quoting Zuffa Mot. Ex. A, Art. 3.1).

Among other terms, a provision for the "Grant of Ancillary Rights/Collective Rights," (hereinafter, "Grant of Ancillary Rights") in the 2004 Promotional Agreement defined the scope of Identity Rights that Mr. Quarry granted to Zuffa.  The Grant of Ancillary Rights in the 2004 Promotional Agreement allowed Zuffa to have the "████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████"  SUF ¶ 9 (quoting Zuffa Mot. Ex. D) at Art. 5.1; *see* CAC ¶ 27(q) (defining "Promotional Rights and Ancillary Rights"); CAC ¶ 27 (t) (defining "UFC Licensed Merchandise"), ¶ 27(u) (defining "UFC Promotional Materials").  The Grant of Ancillary Rights also provided that Zuffa could use Mr. Quarry's UFC Identity Rights "████████████████████████████████████████████████████

████████████████████████  SUF ¶ 11 (quoting Zuffa Mot. Ex. D, Art. 5.2, 5.4, 13.3 (████

██████████████████████████████)  CAC ¶ 27(q), ¶ 113(d) (alleging the "Ancillary Rights Clause remains in effect in perpetuity," including after the term of the contract).  Finally, Article IX of the 2004 Promotional Agreement sets forth the total payments

_____

[5] The terms of the 2004 Promotional Agreement became effective upon ████████████████████████ ████████, which Zuffa exercised on February 25, 2005.  SUF ¶ 7.

ZUFFA MOT. FOR PARTIAL SUMM. J.                    Case No.: 2:15-cv-01045-RFB-(PAL)

Zuffa would make to Mr. Quarry for the services to be performed as well as all rights granted under the agreement.  SUF ¶ 12 (citing Zuffa Mot. Ex. D, Art. 9.3).

On November 14, 2005, Zuffa and Mr. Quarry executed a new and superseding Promotional Agreement ("2005 Promotional Agreement"), which contained a Grant of Ancillary Rights identical to the 2004 Promotional Agreement.  SUF ¶ 13.  In addition to providing for the scope and duration of the grant of Mr. Quarry's Identity Rights, Article VII of the 2005 Promotional Agreement also sets forth the total payments Zuffa would make to Mr. Quarry for the services to be performed and the rights granted under the 2005 agreement.  SUF ¶¶ 13-14 ("████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ █████████████████████████████████") (quoting Zuffa Mot. Ex. F, Art. 7.3, at ZFL-0003093).

On October 13, 2008, a new and superseding Promotional Agreement between Zuffa and Mr. Quarry took effect ("2008 Promotional Agreement").  SUF ¶ 15.  Article III of the 2008 Promotional Agreement was almost identical to the Grant of Ancillary Rights in the 2004 and 2005 Promotional Agreements, except it allowed Zuffa to use Mr. Quarry's Identity:  (1) ████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ █████████████████████████████████████████████" SUF ¶ 18 (quoting Zuffa Mot. Ex. A, Art. 3.4(h), 3.4(i)).  As with both the 2004 and 2005 agreements, Article VII of the 2008 Promotional Agreement set forth in express terms the total payments Zuffa would make to Mr. Quarry in exchange for the services to be performed and the rights granted under the agreement.  SUF ¶¶ 14, 16, 19.

**B.      Mr. Quarry's Bout Agreements**

For each UFC bout in which Mr. Quarry participated, the Promotional Agreements provided that the parties would "████████████████████████████████████ " SUF ¶ 20 (quoting Zuffa Mot. Ex. A, Art. VI); *see* CAC ¶ 27(a) (defining "Bout Agreement").  In addition to such details as the date, location, weight class, and payments for the specified bout,

the Bout Agreement also included ancillary rights ("Bout Ancillary Rights") correlated to the Grant of Ancillary Rights in the Promotional Agreement. *E.g.*, SUF ¶ 21 (Zuffa Mot. Ex. C, at ZFL-0390586 (defining "Bout Ancillary Rights")) and SUF ¶ 25 (enumerating "Bout Ancillary Rights"). The Bout Ancillary Rights include the rights to (a) ███████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████    *Id*. ¶ 22.

Mr. Quarry's last Bout Agreement with Zuffa took effect on January 13, 2010 ("2010 Bout Agreement") in advance of a March 31, 2010 bout. *Id.* ¶ 23. Among other terms, the 2010 Bout Agreement contained a grant of Bout Ancillary Rights for the March 31, 2010 bout. *Id.* ¶ 25 (citing Zuffa Mot. Ex. C, at ZFL-0390586 and ZFL-0390592 ). The 2010 Bout Agreement also specified the total payments Zuffa would make to Mr. Quarry for the services to be performed and the grant of rights under the Agreement. *Id.* ¶ 26 (citing Zuffa Mot. Ex. C, at ZFL-0390586).

On March 31, 2010, Mr. Quarry fought his last bout promoted by the UFC. CAC ¶ 34. The January 13, 2010 Bout Agreement is the most recent agreement of any kind between Mr. Quarry and Zuffa related to his Identity Rights. SUF ¶ 28.

**C.     Mr. Quarry's Merchandise Rights Agreements**

In 2008, Mr. Quarry and Zuffa executed a Merchandise Rights Agreement ("Merchandise Rights Agreement"), which took effect on October 13, 2008. SUF ¶ 30 (citing Zuffa Mot., Ex. B); *see* CAC ¶ 27(i) (defining "Merchandise Rights Agreement"). In that Agreement, Mr. Quarry granted Zuffa and its affiliates certain rights to use his identity in "Licensed Merchandise" in exchange for royalty payments fixed by the contract. SUF ¶ 31 (quoting Zuffa Mot. Ex. B, Art. I & Art. III); *see* CAC ¶ 27(h) (defining "Merchandise Rights"); ¶ 27(i) (defining "Merchandise Rights Agreement"). "Licensed Merchandise" includes ███████████████

███████████████████████████████████████

ZUFFA MOT. FOR PARTIAL SUMM. J.          Case No.: 2:15-cv-01045-RFB-(PAL)

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████ CAC ¶ 27(t); SUF ¶ 34 (quoting Zuffa Mot. Ex. B, Art. 1.3).  The Merchandise

Rights Agreement only addresses the use of an athlete's Identity in connection with merchandise

containing the UFC's intellectual property.  CAC ¶ 27(t); SUF ¶ 35 (citing Zuffa Mot. Ex. B, Art.

1.3 (defining "Licensed Merchandise)); CAC ¶ 27(t) (defining "UFC Licensed Merchandise").

The Merchandise Rights Agreement expressly sets forth the royalty rates that Zuffa will pay Mr.

Quarry ██████████████████████████████████████"  SUF ¶ 36

(quoting Zuffa Mot. Ex. B, Art. 3.1(a)- (b)).  The term of the 2008 Merchandise Rights

Agreements is ████████████████████████████████████████

██████ SUF ¶ 38 (quoting Zuffa Mot. Ex. B, Art. 2.1-2.2).

**D.    Mr. Quarry Understood the Obligations Under These Agreements**

It is undisputed that the provisions in the contracts form the basis for Mr. Quarry's claims

and that Mr. Quarry understood that the alleged harm he has claimed to suffer arose from his

agreement to the terms in the contract.  SUF ¶¶ 49-51.

> "Q: Okay. And while I understand you are not -- you are neither a lawyer, nor perhaps someone who understands all the legal terminology, when you're talking about the contracts that took your identity, are you referring to these promotional and ancillary rights agreements that you entered into with Zuffa?
>
> . . .
>
> THE WITNESS: I believe this was the start of such things, and there were further contracts to come."

Zuffa Mot., Ex. G, Quarry Dep. 118:17-21, 118:23-119:6, 119:9-18, 119:21.  It is also

undisputed that Mr. Quarry became aware of the effect of these agreements at least

sometime before his last bout in March of 2010.  *Id.* at 120:11-19, 121:25-122:12; SUF

¶¶ 50-51.  In fact, Mr. Quarry recalls speaking to others about his concerns before his last

bout:

> "Q And when I say that, at the time you would begin to speak out about your concern that your likeness rights were being used by the UFC, that's something

7

1    you might say to other fighters or if asked by the MMA media?

2    . . .

3    THE WITNESS: Well, specifically speaking about the UFC video game and
     talking to Joe Silva was that my likeness is being used in this video game. I am
4    not being compensated whatsoever. So that is definitely a pinpoint in time where I
     was very unhappy about my likeness and other fighters' likenesses being used
5    without any payments or the ability to negotiate for payments."

6

7    Zuffa Mot., Ex. G, Quarry Dep.122:19-23, 123:1-8, 123:10-15; SUF ¶ 51.

8    **II.     Mr. Quarry's Allegations Against Zuffa**

9         On December 16, 2014, more than four years after Mr. Quarry executed his last agreement

10   with Zuffa, Mr. Quarry filed his Complaint.  SUF ¶¶ 48, 52; ECF No. 1.  Mr. Quarry alleges only:

11   (1) that he "appeared in the UFC Undisputed 2010 video game that debuted on May 25, 2010, in

12   North America, and is still sold today," (2) that he "has also been featured in a number of trading

13   cards manufactured and sold by Topps Trading Cards, including a series in 2010, which are still

14   sold today," CAC ¶ 34, and (3) that Zuffa has exploited and continues to exploit Mr. Quarry's

15   identity pursuant to the terms of his operative agreements during the "Class Period," i.e., since

16   December 16, 2010.  CAC ¶ 3.  Plaintiffs never allege that Mr. Quarry entered any agreement

17   after December 16, 2010 that affected the scope or duration of his grants of Identity Rights to

18   Zuffa or the payments Zuffa would pay Mr. Quarry for appearing in what Plaintiffs define as

19   "UFC Licensed Merchandise" and "UFC Promotional Materials."  CAC ¶¶ 27(t), 27(u), 34.

20                                    **LEGAL STANDARD**

21        "The court shall grant summary judgment if the movant shows that there is no genuine

22   dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

23   Civ. P. 56(a).  "[T]here is no issue for trial unless there is sufficient evidence favoring the

24   nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable,

25   or is not significantly probative, summary judgment may be granted."  *Anderson v. Liberty*

26   *Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted).  "In making such a

27   determination, the Court must view the facts and inferences to be drawn therefrom in the light

28   most favorable to the nonmoving party, and may consider extrinsic materials so long as they

8

1    would be admissible in evidence." *Joseph v. Amazon.com, Inc.*, 46 F. Supp. 3d 1095, 1100 (W.D.

2    Wash. 2014) (citing *Anderson,* 477 U.S. at 247–50; Fed. R. Civ. P. 56(c)).

3          The moving party bears the initial burden of informing the court of the basis for the

4    summary judgment motion.  Fed. R. Civ. P. 56(c); see *Celotex Corp. v. Catrett*, 477 U.S. 317,

5    322 (1986).  "Once the moving party meets its initial burden, . . . the burden shifts to the non-

6    moving party to set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing

7    that there is a genuine issue for trial."  *FTC v. Stefanchik*, 559 F.3d 924, 927-28 (9th Cir. 2009)

8    (quoting *Celotex*, 477 U.S. at 323) (internal quotation marks and citation omitted).  Conclusory or

9    speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment.

10   *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 345 (9th Cir. 1995).

11                                       **ARGUMENT**

12   **I.    Mr. Quarry's Antitrust Claim Is Barred by the Four-Year Statute of Limitations**

13         Mr. Quarry's antitrust claim is time-barred because the terms he attacks in his

14   agreements—the grants of Identity Rights to Zuffa and the payments he received—were fixed

15   outside the four-year limitations period.  Private antitrust claims are subject to a four-year statute

16   of limitations that begins "to run when a defendant commits an act that injures a plaintiff's

17   business."  *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971) (citing 15

18   U.S.C. § 15) (emphasis added).  As soon as a potential plaintiff is harmed, "a cause of action

19   immediately accrues to him to recover all damages incurred by that date and all provable damages

20   that will flow in the future from" those acts.  *Id.* at 339.  It necessarily follows that where an

21   antitrust claim challenges an allegedly anticompetitive contract that causes immediate injury, a

22   plaintiff must file suit within four years after executing that contract.  *See Eichman v. Fotomat*

23   *Corp.*, 880 F.2d 149, 160 (9th Cir. 1989) (statute of limitations barred antitrust claim when lease

24   contract containing allegedly anticompetitive provisions was entered into outside the limitations

25   period); *Aurora Enterprises., Inc. v. National Broadcasting Co.,* 688 F.2d 689, 693 (9th Cir.

26   1982) (statute of limitations barred plaintiff's claim where contract containing allegedly

27   anticompetitive provision executed more than four years before complaint was filed).

28         Distilled to its essence, Mr. Quarry's claim challenges the scope of the UFC Identity

Rights he contractually granted to Zuffa, the duration of those grants, and the payments he received in return—all terms in his 2004, 2005, and 2008 Promotional Agreements; his 2008 Merchandise Rights Agreement; and his January 2010 Bout Agreement.  Specifically, Mr. Quarry challenges the scope and duration in the Ancillary Rights Clauses in his agreements with Zuffa, *i.e.*, the Grant of Ancillary Rights, the Bout Ancillary Rights, and the Grant of Merchandise Rights.  Mr. Quarry argues that these clauses have led to the  "expropriation" and "exploitation" of his Identity by "grant[ing] the UFC exclusive and perpetual worldwide personality and Identity rights not only of the UFC Fighter, but of 'all persons associated with' the athlete, in any medium, including merchandising, video games and broadcasts, and for all other commercial purposes."  CAC ¶¶ 34, 113(d).  Yet, all of the terms that allegedly "expropriated" Mr. Quarry's Identity appeared in his pre-limitations period agreements with Zuffa.

The 2008 Promotional Agreement fixed the scope, duration, and payments that Mr. Quarry agreed to receive in exchange for participation in UFC bouts and for the use of his Identity Rights.  SUF ¶¶16, 18.  Mr. Quarry claims that he suffered injury because the perpetual duration of the Ancillary Rights Clauses of the Promotion Agreement prevent him and other fighters "from financially benefiting from the reputations that they built during their MMA careers even after death, and lock[s] UFC Fighters out of revenues generated by the exploitation of their Identities, including after the term of the contract."  CAC ¶¶ 34, 113(d).  Mr. Quarry's claims mischaracterize the terms of his agreement, but regardless, the agreements at issue lie outside the limitations period.

The Bout Agreements, which incorporate by reference the Grant of Ancillary Rights from the Promotional Agreements, are equally clear about the scope, duration, and payments to be made for Mr. Quarry's grant of Identity Rights contained therein. *See, e.g.*, SUF ¶ 26 (citing Zuffa Mot. Ex. C, at ZFL-0390586  ( █████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████████████ ). The same is true of Mr. Quarry's claims as they relate to the use of his Identity in "UFC Licensed

ZUFFA MOT. FOR PARTIAL SUMM. J.                    Case No.: 2:15-cv-01045-RFB-(PAL)

1   Merchandise" because the scope, duration, and payments for Identity Rights are all expressly

2   provided for in his 2008 Merchandise Rights Agreement.  SUF ¶¶ 33, 34,37-38 (citing Zuffa Mot.

3   Ex. B, Art. 1.1 ("███████████████████████████████████████████████████████

4   ██████████████████████████████████████████████████████████████

5   ███████████████████████████████████████████████████████"), Art. 1.2

6   (duration), Art. 1.3 (defining "Licensed Merchandise), Art. 3.2  (█████████████████████

7   ██████████████████████████████████████████████████████████████

8   ██████████████████████████████████████████████████████████████

9   ██████████████████████████████████████████████████████

10  ████████).

11      These contract provisions demonstrate that Mr. Quarry had complete knowledge of the

12  payments he would receive in exchange for granting Zuffa his Identity Rights for use in "UFC

13  Promotional Materials" and "UFC Licensed Merchandise" at the time each of his agreements

14  with Zuffa was executed—the latest of which was January 13, 2010.  *See* SUF ¶ 23.

15      This case is no different than *Aurora Enterprises, Inc. v. National Broadcasting Co.* where

16  the plaintiff was aware of the terms of the alleged anti-competitive contract in 1966 and then

17  chose to file suit in 1981.  688 F.2d at 691-94.  Mr. Quarry's last relevant agreement with Zuffa

18  was executed in January 2010, but he chose to file suit in December 2014.  SUF ¶¶ 21, 26, 48.

19  Because Mr. Quarry did not file his complaint until December 16, 2014, more than four years

20  after his cause of action accrued, his antitrust claim is barred by the four-year statute of

21  limitations applicable to private antitrust claims.  15 U.S.C. § 15b.

22  **II.   The Continuing Violation Exception Does Not Apply to Mr. Quarry's Untimely**
        **Claim.**

23

24      Plaintiffs have suggested that "Mr. Quarry's identity was indeed exploited during the

25  Class Period, for which he received payments (i.e., zero)," and, as a result, Mr. Quarry has

26  alleged that a continuing antitrust violation occurred during the limitations period.  ECF No. 206

27

28

ZUFFA MOT. FOR PARTIAL SUMM. J.              Case No.: 2:15-cv-01045-RFB-(PAL)

1  at 23.[6]  This argument fails because Mr. Quarry cannot revive a time-barred claim based on

2  allegations that, during the Class Period, Zuffa received benefits under pre-limitations period

3  agreements.  As the Ninth Circuit has recognized, to rule in Mr. Quarry's favor would effectively

4  render the statute of limitations meaningless in all instances where plaintiffs argue that

5  defendants' alleged conduct depressed the value of a contract related to intellectual property.

6  *Aurora Enter.*, 688 F.2d at 694 ("Any other holding would destroy the function of the statute,

7  since parties may continue indefinitely to receive some benefit as a result of an illegal act

8  performed in the distant past.").

9         "A continuing violation is one in which the plaintiff's interests are repeatedly invaded and

10  a cause of action arises each time the plaintiff is injured."  *Pace Indus., Inc. v. Three Phoenix Co.*,

11  813 F.2d 234, 237 (9th Cir. 1987).  "However, even when a plaintiff alleges a continuing

12  violation, an overt act by the defendant is required to restart the statute of limitations and the

13  statute runs from the last overt act."  *Id.*  To generate a new antitrust claim for limitations

14  purposes, an "overt act" must meet two conditions:  First, it must be a "new and independent act

15  that is not merely a reaffirmation of a previous act" and second, it must "inflict new and

16  accumulating injury on the plaintiff."  *Id.* at 237.  "[N]ot every act by an antitrust defendant is

17  sufficient to restart the statute of limitations."  *Aurora Enters*, 688 F.2d at 694; *accord Varner v.*

18  *Peterson Farms*, 371 F.3d 1011, 1020 (8th Cir. 2004) ("Performance of the alleged

19  anticompetitive contracts during the limitations period is not sufficient to restart the period").

20         The Ninth Circuit has held that a defendant's continued receipt of benefits from pre-

21  limitations period agreements does not trigger the continuing violation exception—squarely

22

23  [6] Mr. Quarry could also argue that the statute of limitations is tolled by "active enforcement" by
   Zuffa.  *See, e.g., Eichman*, 880 F.2d at 160 (citing *Twin City Sportservice, Inc. v. Charles O.*
24  *Finley & Co.*, 512 F.2d 1264 (9th Cir. 1975).  Mr. Quarry has failed to make such an allegation in
   his complaint and Zuffa is aware of no action it has taken that would qualify as active
25  enforcement as that term has been defined in *Eichman*.  *Id.* (noting active enforcement in *Finley*
   applied when the litigation originated from "an action by the antitrust cross-defendant to enforce
26  the contract" and "the plaintiff actively attempted to avoid being bound by the contract.")
   Specifically, this matter does not arise in the context of Zuffa seeking to enforce its contractual
27  rights and there are no allegations that Mr. Quarry attempted to avoid being bound by the
   contractual provisions during the statute-of-limitations period.
28

ZUFFA MOT. FOR PARTIAL SUMM. J.          Case No.: 2:15-cv-01045-RFB-(PAL)

1    rejecting the argument that Plaintiffs rely upon. *Aurora Enters.*, 688 F.2d at 694. For example, in

2    *Aurora*, the Ninth Circuit expressly rejected an antitrust plaintiff's argument that the continued

3    receipt of benefits from a contract constituted an overt act sufficient to restart the statute of

4    limitations. *Id.* "[T]he mere fact that defendants receive a benefit today as a result of a contract

5    executed in 1966 in which Xanadu was purportedly coerced to part with syndication rights, is not

6    enough to restart the statute of limitations." *Id.* at 694.

7             Mr. Quarry's argument for applying the continuing violation exception in this case is

8    indistinguishable from the one the Ninth Circuit rejected in *Aurora*. Mr. Quarry cannot dispute

9    that all of the agreements granting his Identity Rights to Zuffa were executed outside the

10   limitations period. As the plaintiff argued unsuccessfully in *Aurora*, Mr. Quarry claims that Zuffa

11   "deprived [him] of revenues that [he] would have earned had [he] not been forced to part with

12   [his Identity] rights." 688 F.2d at 693. But, just as NBC's right to benefit from Chapparal's

13   syndication rights was set in pre-limitations period agreements, Zuffa's use of Mr. Quarry's

14   Identity under the terms and at the payments levels was set in the 2008 Promotional Agreement,

15   2008 Merchandise Rights Agreement, and pre-limitations period Bout Agreements. That Mr.

16   Quarry has not received revenues from the exploitation of his Identity during the limitations

17   period is not a new injury, "but unabated inertial consequences of some pre-limitations action"

18   and cannot serve as the basis for his claims for damages. *In re Multidistrict Vehicle Air Pollution*,

19   591 F.2d 68, 72 (9th Cir. 1979) (quoting *Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 517 F.2d

20   117, 128 (5th Cir. 1975), cert. denied, 423 U.S. 1054 (1976)); *see Witt Co. v. RISO, Inc.*, 948 F.

21   Supp. 2d 1227, 1236 (D. Or. 2013) ("any sales of digital duplicators and supplies pursuant to

22   paragraph 3(a) of the 2007 Dealer Agreement and occurring during the limitations period do not

23   amount to continuing violations because performance of an alleged illegal contractual tie-in

24   provision does not satisfy the continuing violation requirements"); *MedioStream, Inc. v.*

25   *Microsoft Corp.*, 869 F. Supp. 2d 1095, 1106 (N.D. Cal. 2012) ("mere fulfillment of the terms of

26   a permanent agreement executed outside the limitations period" does not trigger the continuing

27   violation exception) (internal quotation marks omitted).

28

ZUFFA MOT. FOR PARTIAL SUMM. J.              Case No.: 2:15-cv-01045-RFB-(PAL)

1    Because application of the continuing violation exception to Mr. Quarry's claim

2  contradicts binding Ninth Circuit law, this Court should reject Plaintiffs' invitation to do

3  so.

4                                   **CONCLUSION**

5    For the reasons set forth above, Defendant Zuffa respectfully submits that summary

6  judgment should be entered against Mr. Quarry and all similarly situated members of the putative

7  Identity Class because their claims are untimely under the governing four-year statute of

8  limitations.

9

10  Dated: February 1, 2017                   Respectfully Submitted,

11                                            BOIES, SCHILLER & FLEXNER LLP

12

13                                            By: /s/ Nicholas A. Widnell
14                                                 Nicholas A. Widnell
                                              *Attorneys for Defendant* Zuffa, LLC, d/b/a
15                                            Ultimate Fighting Championship and UFC

16

17

18

19

20

21

22

23

24

25

26

27

28

ZUFFA MOT. FOR PARTIAL SUMM. J.                    Case No.: 2:15-cv-01045-RFB-(PAL)

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that service of the foregoing **Defendant Zuffa, LLC's**

**Motion for Partial Summary Judgment As to Plaintiff Nathan Quarry on Statute Of**

**Limitations Grounds And Supporting Memorandum Of Law** was served on February 1, 2017

via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.


/s/ Michael Kim

An employee of Boies, Schiller & Flexner, LLP

ZUFFA MOT. FOR PARTIAL SUMM. J.                    Case No.: 2:15-cv-01045-RFB-(PAL)