# EXHIBIT G

# Excerpts from Quarry Video Deposition

Page 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Cung Le, Nathan Quarry, Jon Fitch )Case No:   2:15-cv-01045-RFB(PAL)
Brandon Vera, Luis Javier Vazquez,)
and Kyle Kingsbury on behalf of   )
themselves and all others         )
similarly situated,               )
                                  )
          Plaintiff,              )
                                  )
vs.                               )
                                  )
Zuffa, LLC, d/b/a Ultimate        )
Fighting Championship and UFC,    )
                                  )
                                  )
          Defendants.             )

VIDEO DEPOSITION OF NATHAN QUARRY

taken at 300 South Fourth Street, Suite 800,

Las Vegas, Nevada 89101, beginning at 9:09 A.M.

and ending at 4:59 P.M. on Friday, September 30, 2016

Reported by:

Sarah Padilla
CCR NO. 929

Job No. 270538                                                    1
Pages 1-297



```
                                                      Page 2
 1   APPEARANCES OF COUNSEL:
 2
 3   FOR PLAINTIFFS:
 4      BERGER & MONTAGUE, P.C.
        BY: ERIC C. CRAMER ATTORNEY AT LAW
 5      1622 Locust Street
        Philadelphia, Pennsylvania 19103-6305
 6      (215)875-3000
        ecramer@bm.net
 7
 8   FOR PLAINTIFFS:
 9      WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP
        BY: DON SPRINGMEYER, ATTORNEY AT LAW
10      3556 E. Russell Road, 2nd Floor
        Las Vegas, Nevada 89120-2234
11      (702)341-5200
        dspringmeyer@wrslawyers.com
12
13   FOR DEFENDANT ZUFFA, LLC, d/b/a ULTIMATE FIGHTING
     CHAMPIONSHIP and UFC:
14
        BOIES, SCHILLER & FLEXNER, LLP
15      BY: WILLIAM A. ISAACSON, ATTORNEY AT LAW
        BY: PERRY GROSSMAN, ATTORNEY AT LAW
16      5301 Wisconsin Avenue NW
        Washington, DC 20015
17      (202)237-2727
        wisaacson@bsfllp.com
18
19   FOR DEFENDANT ZUFFA, LLC:
20      LAW OFFICE OF KIRK HENDRICK
        BY: KIRK HENDRICK, ATTORNEY AT LAW
21      2960 W. Sahara Avenue
        Las Vegas, Nevada 89102
22      (702) 221-4757
23
24   Also Present: Alan Taggert, Legal Videographer
                                 2
25
```

```
                                                      Page 3
 1                      I N D E X
 2   WITNESS           EXAMINATION              PAGE
 3   NATHAN QUARRY
 4
 5        BY: MR. ISAACSON                       8
 6
 7
 8                      EXHIBITS
 9   EXHIBIT NO.   PAGE  DESCRIPTION
10   Exhibit 1 -   101   Amended Antitrust Complaint
11
12   Exhibit 2 -   116   Agreement
13
14   Exhibit 3 -   124   E-mail
15
16   Exhibit 4 -   126   Bout Agreement
17
18   Exhibit 5 -   127   Agreement
19
20   Exhibit 6 -   131   Agreement
21
22   Exhibit 7 -   133   Merchandise Rights Agreement
23
24   Exhibit 8 -   134   E-mails
                                 3
25
```

```
                                                      Page 4
 1                      EXHIBITS
 2   EXHIBIT NO.   PAGE  DESCRIPTION
 3   Exhibit 9 -   137   Agreement
 4
 5   Exhibit 10 -  139   E-mails
 6
 7   Exhibit 11 -  161   E-mail
 8
 9   Exhibit 12 -  165   E-mail
10
11   Exhibit 13 -  176   Mixedmartialarts.com Printout
12
13   Exhibit 14 -  191   BloodyElbow.com Article
14
15   Exhibit 15 -  202   Internet Post by Nathan Quarry
16
17   Exhibit 16 -  209   Internet Posts
18
19   Exhibit 17 -  229   January 1, 2012 Agreement
20
21   Exhibit 18 -  234   Bellator Agreement
22
23   Exhibit 19 -  243   On Camera Talent and Rights Agreement
24
                                 4
25   Exhibit 20 -  246   WSOF Global Agreement
```

```
                                                      Page 5
 1                      EXHIBITS
 2   EXHIBIT NO.   PAGE  DESCRIPTION
 3
 4   Exhibit 21 -  247   WSOF Global Agreement
 5
 6   Exhibit 22 -  253   Text Messaging Printouts
 7
 8   Exhibit 23 -  254   E-mails
 9
10   Exhibit 24 -  255   E-mails
11
12   Exhibit 25 -  258   E-mail
13
14   Exhibit 26 -  260   E-mail
15
16   Exhibit 27 -  262   Deal Memo, Promotional Services
17
18   Exhibit 28 -  263   Deal Memo Signature Page
19
20   Exhibit 29 -  265   Nathan Quarry Printout/Bio
21
22   Exhibit 30 -  266   Square Promotion Bout Agreement
23
24   Exhibit 31 -  268   Message Printout
                                 5
25
```



Page 6

```
 1                EXHIBITS
 2   EXHIBIT NO.   PAGE  DESCRIPTION
 3
 4   Exhibit 32 -  270   E-mails
 5
 6   Exhibit 33 -  276   E-mails
 7
 8   Exhibit 34 -  278   E-mails
 9
10   Exhibit 35 -  289   E-mails
11
12   Exhibit 36 -  292   Nate Quarry Sponsor List
13
14                 -oOo-
```

6

Page 7

```
 1       Las Vegas, Nevada, Friday, September 30, 2016
 2              9:09 A.M. - 4:59 P.M.
 3                    -oOo-
 4       THE VIDEOGRAPHER:  We are now on the
 5  record.  This begins videotape No. 1 in the
 6  deposition of Nathan Quarry in the matter of Cung
 7  Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis
 8  Javier Vasquez, and Kyle Kingsbury on behalf of
 9  themselves and all others similarly situated versus
10  Zuffa, LLC doing business as Ultimate Fighting
11  Championship and UFC.
12       This case is filed in the United States
13  District Court for the District of Arizona, case No.
14  2:15-CV-01045-RFB-PAL.
15       Today is September 30, 2016, and the time
16  is approximately 9:09 A.M.  This deposition is being
17  taken in the office of Boies, Schiller & Flexner,
18  LLP of Las Vegas, Nevada.  The videographer is Alan
19  Taggart of Magna Legal Services and the court
20  reporter is Sarah Padilla of Magna Legal Services.
21       Will all counsel please identify
22  themselves for the record.
23       MR. CRAMER:  Eric Cramer for the witness
24  and the plaintiffs.
```

7

```
25       MR. SPRINGMEYER:  Don Springmeyer for the
```

Page 8

```
 1  witness and the plaintiffs.
 2       MR. HENDRICK:  Kirk Hendrick, chief legal
 3  officer for Zuffa, LLC.
 4       MR. GROSSMAN:  Perry Grossman for Zuffa.
 5       MR. ISAACSON:  Bill Isaacson, Boies,
 6  Schiller & Flexner for Zuffa.
 7       THE VIDEOGRAPHER:  Will the court reporter
 8  please swear in the witness.
 9       (Witness sworn.)
10                 -oOo-
11            NATHAN QUARRY,
12  called as a witness on behalf of Defendants,
13  having been administered an oath, was examined
14  and testified as follows:
15            ---------------------------------
                      EXAMINATION
16            ---------------------------------
17  BY MR. ISAACSON:
18    Q   You all set there?
19    A   Yes, sir.
20    Q   Mr. Quarry, I'm Bill Isaacson.  I'll be
21  asking you questions today.  If you ever don't
22  understand something I am asking you, just ask me to
23  ask again or say it better.
24    A   Yes, sir.
```

8

```
25    Q   All right.  Have you ever testified as a
```

Page 9

```
 1  witness in the deposition or in a hearing or a trail
 2  before?
 3    A   I don't think I have.  I don't recall
 4  that.
 5    Q   Ever remember testifying under oath?
 6    A   I had a real estate issue ten or 12 years
 7  ago.  I may have testified during that actually here
 8  in Nevada.  I think that would be the only time.
 9    Q   Did you -- was your real estate issue, did
10  it actually result in a court proceeding?
11    A   No.
12    Q   Was there any sort of lawsuit involved
13  with your real estate issue?
14    A   I was trying to get back the earnest money
15  that someone had put down on a house that they
16  didn't feel I should have.
17    Q   Okay.  And did you file a lawsuit?
18    A   Well, I'm not sure if that's what we were
19  there for.  I wanted to get that -- or he wanted to
20  get his money back, so I guess it would be him that
21  filed.
22    Q   So did he -- the person that you had a
23  dispute over earnest money with someone.  Do you
24  remember who that was?
```

9

```
25    A   No.
```



Page 118

```
 1   calls for a legal conclusion.  Form.  You may answer
 2   if the you understand the question.
 3           THE WITNESS:  I had no legal understanding
 4   of this contract.
 5   BY MR. ISAACSON:
 6       Q   All right.  So you talked earlier today
 7   about how, on your own behalf and on the behalf the
 8   identity class, you feel the UFC has taken your
 9   identity and that you didn't have the right to
10   negotiate for the value of your identity.  Is this
11   contract an example of one of the contracts that you
12   thought was an improper taking of your identity?
13           MR. CRAMER:  Objection to form.  You may
14   answer if you understand.
15           THE WITNESS:  Yeah, I don't really
16   understand the question.
17   BY MR. ISAACSON:
18       Q   Okay.  When you spoke earlier today about
19   how Zuffa has taken your identity and denied you the
20   right to negotiate a better deal for your identity,
21   was that something Zuffa did in contracts with you?
22           MR. CRAMER:  Objection to form.
23           THE WITNESS:  To my understanding, yes.
24   BY MR. ISAACSON:
25       Q   Okay.  And while I understand you are
                              118
```

Page 119

```
 1   not -- you are neither a lawyer, nor perhaps someone
 2   who understands all the legal terminology, when
 3   you're talking about the contracts that took your
 4   identity, are you referring to these promotional and
 5   ancillary rights agreements that you entered into
 6   with Zuffa?
 7           MR. CRAMER:  Objection to form.  You can
 8   answer.
 9           THE WITNESS:  I believe this was the start
10   of such things, and there were further contracts to
11   come.
12   BY MR. ISAACSON:
13       Q   Yes.  We'll take a look at those.  But
14   the -- it's those -- when you're talking about the
15   taking of your identity, are you talking about these
16   contracts that talk about ancillary rights that
17   started with this and continued with other
18   contracts?
19           MR. CRAMER:  Objection form.  Asked and
20   answered earlier about appropriation.
21           THE WITNESS:  Yes, I believe so.
22   BY MR. ISAACSON:
23       Q   Okay.  And when -- to your recollection,
24   when did you first conclude that the contracts you
                              119
25   were entering were inappropriately taking your
```

Page 120

```
 1   identity or your rights?
 2           MR. CRAMER:  Objection to form.  Assumes
 3   facts not in evidence.  Calls for a legal
 4   conclusion.  Answer if you understand the question.
 5           THE WITNESS:  It would be sometime in the
 6   future when I realized how little control I had over
 7   my own work, my own likeness.  When I was presented
 8   with this contract, I had no -- no idea of the
 9   legalities of such.
10   BY MR. ISAACSON:
11       Q   And in terms of when you first realized
12   how little control you had over your own work and
13   likeness, did that happen before your last fight?
14       A   Yes.
15       Q   And when you realized how little control
16   you had over your own work and your own likeness,
17   that was, at least in part, due to the contracts you
18   had interred; correct?
19       A   Yes.
20           MR. CRAMER:  Objection to the extent it
21   calls for a legal conclusion.  You can answer.
22           THE WITNESS:  That is my understanding.
23   BY MR. ISAACSON:
24       Q   And you -- how long before your --
                              120
25   generally, how long before your last fight did you
```

Page 121

```
 1   come to this realization that you, through your
 2   contracts, had lost control of your own likeness?
 3           MR. CRAMER:  Objection to form.  You may
 4   answer.
 5           THE WITNESS:  I don't know.  I don't know
 6   when it was that I came to realization I couldn't
 7   use my own fight photos or things like that.
 8   BY MR. ISAACSON:
 9       Q   Was it more than a year before?  Was it a
10   couple years?  Can you give me some reasonable
11   estimate?
12           MR. CRAMER:  Don't speculate.  If you can
13   give him a reasonable estimate, you should.  But
14   otherwise, you shouldn't speculate.
15           THE WITNESS:  It was definitely a few
16   years after this.  So if this was 2004, probably
17   closer to 2007, 2008.  I am speculating against the
18   advice of my lawyer.
19   BY MR. ISAACSON:
20       Q   Just to be clear, your lawyer -- we don't
21   want your lawyer to be accused of coaching.  If you
22   don't know, don't answer.  That is true of all of my
23   questions.
24       A   Yes, sir.
                              121
25       Q   If you don't know, just tell me you don't
```



Page 122

1  know. And throughout, I am not asking you to
2  speculate. I will occasionally ask you if you can
3  give me a reasonable estimate. At some point I
4  think you have described yourself as someone who was
5  spoken out about things either to the media and to
6  other fighters. At some point did you begin to
7  speak out about the -- your concern that your
8  likeness rights were being used by the UFC?
9     A  Yes.
10    Q  And did that happen before your last fight
11 in March 2010?
12    A  Yes.
13    Q  That happened at least a few years before
14 your last fight in March of 2010?
15    A  I don't know.
16    Q  Okay. Would it have happened more than a
17 year before that fight?
18    A  I don't know.
19    Q  And when I say that, at the time you would
20 begin to speak out about your concern that your
21 likeness rights were being used by the UFC, that's
22 something you might say to other fighters or if
23 asked by the MMA media?
24       MR. CRAMER: Objection to form. You may
25 answer.

122

Page 123

1        THE WITNESS: Well, specifically speaking
2  about the UFC video game and talking to Joe Silva
3  was that my likeness is being used in this video
4  game. I am not being compensated whatsoever. So
5  that is definitely a pinpoint in time where I was
6  very unhappy about my likeness and other fighters'
7  likenesses being used without any compensation or
8  the ability to negotiate for compensation.
9  BY MR. ISAACSON:
10    Q  And so this conversation that you -- with
11 Mr. Silva about the UFC video game, did that take
12 place before your last fight?
13    A  Yes. This was before the Seattle card
14 where I was trying to get fights, so I would have to
15 know when that Seattle card was.
16       MR. ISAACSON: Do you have that? Did we
17 print that out?
18       MR. HENDRICK: We did, but that Seattle
19 card was before his last fight.
20       MR. ISAACSON: Oh, okay. We may have two
21 Seattles. We'll try to get the answer to that for
22 you over lunch.
23       THE WITNESS: The Korean Zombie fought on
24 it, I believe.
25

123

Page 124

1  BY MR. ISAACSON:
2     Q  That actually will be two. You mentioned
3  two -- you mentioned Seattle twice.
4     A  Uh-huh.
5     Q  Is it the same?
6     A  It's the same time.
7     Q  Same time. And so we can use the magical
8  tool of Google to locate the date. If you've got
9  any other clues --
10       MR. HENDRICK: What did you say the
11 Zombie -- which Zombie?
12       MR. ISAACSON: Korean Zombie. Yeah, and
13 actually we've got printouts of this. Let's mark
14 this as Exhibit 3.
15       (Exhibit 3 was marked.)
16 BY MR. ISAACSON:
17    Q  All right. I've handed you Quarry Exhibit
18 3, which is Bates stamped Ibarra 27454.
19    A  This is a different event.
20    Q  That's why we put these things in front of
21 you to ask. This is -- it says -- it makes
22 reference to a Seattle event and two tickets.
23    A  Yeah, this is a different event.
24    Q  Let me -- I think we're on the same page,
25 but it works better if I give you a question and you

124

Page 125

1  give an answer.
2        You talked about a conversation with
3  Mr. Silva about getting tickets to a Seattle event.
4  Is it this event or a different one?
5     A  I do not believe it was this event.
6  Around March 24, 2011. I believe it was a different
7  event before that time period.
8     Q  So Quarry Exhibit 3, is -- for this
9  Seattle event, did you ask for two tickets to the
10 event and you received them?
11    A  I did not ask for tickets to the event.
12    Q  Did you receive two tickets to the event?
13    A  I did not receive two tickets to the
14 event, because I did not go to the event.
15    Q  Okay. The --
16    A  After the issue with --
17       MR. CRAMER: There's no question. There's
18 no question pending.
19 BY MR. ISAACSON:
20    Q  We're fine. So when you're talking about
21 a Seattle event, you were referring to a Seattle
22 event earlier than March 2011?
23    A  I believe so.
24    Q  Okay. We'll try and track that down.
25       MR. ISAACSON: All right. So next would

125



32 (Pages 122 to 125)

Page 294

1  A  I do not recognize Full Combat
2  Supplements, LaCrosse Footwear.
3     Q  LaCrosse Footwear?
4     A  I don't think so.  I think I recognize the
5  rest.  Gary Ibarra would definitely know more than I
6  would about sponsors.
7     Q  And why would you be unfamiliar, or why
8  would Mr. Ibarra be more familiar with your sponsors
9  than you?
10    A  Because he was my agent, and he would get
11 me the sponsors, and put them on my gear, and on my
12 banners, and then collect the funds, generally.  So
13 I didn't have to have very much interaction with any
14 this.  The sponsors just wanted to use me as
15 advertising space.
16    Q  All right.  So if you got a complete list
17 of your sponsors during your time of your fighting
18 career, you would not recognize all of the sponsors
19 on there?
20    A  Most likely I would not.
21       MR. ISAACSON:  All right.  Thanks for your
22 time today, sir.
23       MR. CRAMER:  We have no questions.
24       THE VIDEOGRAPHER:  This concludes the
25 video deposition of Nathan Quarry.  We are now going

Page 295

1  off the record.  The time is approximately 4:59 P.M.
2        THE COURT REPORTER:  Are you getting a
3  copy, Counsel?
4        MR. CRAMER:  Yes.  Read and sign.
5        (TIME NOTED: 4:59 P.M.)

Page 296

1              CERTIFICATE OF WITNESS
2  PAGE  LINE  CHANGE         REASON
3
4  _____
5
6  _____
7
8  _____
9
10 _____
11
12 _____
13
14 _____
15
16 _____
17 _____
18
19 _____
20              * * * * *
21     I, Nathan Quarry, witness herein, do hereby
   certify and declare under penalty of perjury the within
22 and foregoing transcription to be my deposition in said
   action; that I have read, corrected and do hereby affix
23 my signature to said deposition.
24 _____   _____
   Nathan Quarry
25 Witness                             Date

Page 297

1  STATE OF NEVADA)
          ) Ss
2  COUNTY OF CLARK)
3
4      I, Sarah Padilla, a duly commissioned and
5  licensed court reporter, Clark County, State of Nevada,
6  do hereby certify:  That I reported the taking of the
7  deposition of the witness, Nathan Quarry, commencing on
8  Friday, September 30, 201, at 9:09 A.M.; That prior to
9  being examined, the witness was, by me, duly sworn to
10 testify to the truth; That thereafter I transcribed my
11 shorthand notes into typewriting and that the typewritten
12 transcript of said deposition is a complete, true, and
13 accurate record of said shorthand notes.  I further
14 certify that I am not a relative or employee of any
15 attorney or counsel of any of the parties nor a relative
16 or employee of an attorney or counsel involved in said
17 action, nor a person financially interested in the
18 action; that a request [x] has [] has not been made to
19 review the transcript.
20     IN WITNESS WHEREOF, I have hereunto set my
21 hand in the County of Clark, State of Nevada, this __ day
22 of _____.
23                    _____
                      SARAH PADILLA, CCR 929
24



Page 296

CERTIFICATE OF WITNESS

PAGE     LINE     CHANGE                    REASON

See attached file with typo and content corrections.

\* \* \* \* \*

I, Nathan Quarry, witness herein, do hereby certify and declare under penalty of perjury the within and foregoing transcription to be my deposition in said action; that I have read, corrected and do hereby affix my signature to said deposition.



_____   11·8·16
Nathan Quarry
Witness                      Date

296

**MAGNA** ▶
LEGAL SERVICES

## CORRECTIONS TO NATE QUARRY DEPOSTION TRANSCRIPT

| PAGE | LINE | CHANGE | REASON |
|---|---|---|---|
| 9 | 1-2 | should read "a *trial* before". | typographical error |
| 10 | 23 | should read "Rob *Maysey*", not Rob Macy. | misspelling |
| 11 | 1, 5 & 15 | should read "Mr. *Maysey*," not Mr. Macy. | misspelling |
| 12 | 2, 9 & 24 | should read "Mr. *Maysey*," not Mr. Macy. | misspelling |
| 13 | 5, 13, 20 & 25 | should read "*Maysey*," not Macy. | misspelling |
| 14 | 7 & 24 | should read "*Maysey*," not Macy. | misspelling |
| 20 | 20 | should read "*Maysey*," not Macy. | misspelling |
| 21 | 5 & 11 | should read "*Maysey*," not Macy. | misspelling |
| 21 | 12 | should read "the *term* antitrust lawsuit" | typographical error |
| 22 | 4, 12 & 16 | should read "*Maysey*," not Macy. | misspelling |
| 25 | 4 & 14 | should read "*Maysey*," not Macy. | misspelling |
| 25 | 10 | should read "I am *not* sure" | typographical error |
| 41 | 9 | should read "fighters under *contract*," | typographical error |
| 55 | 8 | should read "*Maysey*", not Macy | misspelling |
| 59 | 23 | should read "have you spoken *to* any of those" | typographical error |
| 76 | 6 | should read "This makes *no* sense to me." | typographical error |
| 95 | 5 | should read "Fitch*,* Javier Vazquez especially." | typographical error |
| 95 | 22 | should read "Mr. Penn," not Mr. Pen | misspelling |
| 96 | 12 | should read "was *not* in the UFC" | typographical error |
| 104 | 5 | should read "That was pretty much my understanding." | clarification |
| 110 | 21 | should read "What about *Oren Hodak*." | misspelling |
| 111 | 17 | should read "Mr. *Roveta*?" | misspelling |

| | | | |
|---|---|---|---|
| 112 | 3 | should read "Mr. *Roveta*" | misspelling |
| 112 | 21 | should read "And then *Oren Hodak*, would" | misspelling |
| 114 | 18 | should read "to Robert *Roveta*. And *Roveta* was my" | misspelling |
| 115 | 7 & 12 | should read "Mr. *Maysey*" | misspelling |
| 130 | 21 | should read "*bout*?" | misspelling |
| 147 | 17 | should read "to Elite *XC*" | misspelling |
| 157 | 7 | should read "*belittle*" | misspelling |
| 161 | 3 | should read "you, and this is what you should" | clarification |
| 161 | 16 | should read "So *to* me, that is a pretty broad" | clarification |
| 167 | 1 | should read "in getting me known" | clarification |
| 180 | 22 | should read "How long were *you* the host" | typographical error |
| 182 | 2 | should read "*TUF*." | misspelling |
| 182 | 20 | should read "I'm going *to*" | typographical error |
| 190 | 17 | should read "Someone like *Jon* Jones," | misspelling |
| 214 | 22 | should read "became a free *agent* so he could" | typographical error |
| 267 | 25-26 | should read "couldn't find him" | clarification |
| 289 | 12 | should read "*Starnes*," not Storms. | misspelling |
| 291 | 15 | should read "was so *boring*," | typographical error |
| 294 | 13-14 | should read "with any *of* this." | clarification |