UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CUNG LE, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>ZUFFA, LLC, d/b/a UFC Ultimate Fighting Championship,<br><br>  Defendant. | Lead Case No. 2:15-cv-01045-RFB-PAL[1]<br><br>**ORDER**<br><br>(Mot. to Challenge Atty/Client Privilege – ECF No. 320) |

This matter is before the court on Plaintiffs' Motion to Challenge Attorney-Client Privilege (ECF No. 320). This Motion was automatically referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and LR IB 1-3 of the Local Rules of Practice. On February 7, 2017, the court held a hearing on the Motion. Present was counsel for Plaintiffs, Kevin Rayhill, Esq., Matthew Weiler, Esq., and counsel for Defendant Zuffa, LLC, J. Williams, Esq., Stacey Grigsby, Esq. The court has considered the Motion, Defendant's Response (ECF Nos. 328/329), Plaintiff's Reply (ECF Nos. 334/336), and the arguments of counsel at the hearing.

The motion challenge the attorney-client status of documents Zuffa produced, but later clawed back. Plaintiffs assert the documents contain no legal analysis or advise, and consist of Zuffa's negotiating positions, business strategies and tactics. Zuffa disputes this characterization of the documents and asserts legal staff and corporate decision makers were involved in the communications which involve requests for legal advice and analysis which in house counsel provided. The disputed documents were attached as exhibits to the parties' moving and responsive papers under seal. Redacted moving and responsive papers generally describe the parties' disputes

---

[1] Member Case Nos.: 2:15-cv-01046-RCJ-NJK; 2:15-cv-01055-APG-GWF; 2:15-cv-01056-RFB-GWF; and 2:15-cv-01057-JCM-CWH.

1

without disclosing the information claimed privileged. The court granted a number of motions to seal documents at the hearing, finding that even if the documents were not covered by the attorney-client privilege Zuffa had met its burden of showing good cause for maintaining the documents as confidential as they contain sensitive financial and other competitive business information.

This order memorializes the court's ruling at the hearing finding that Zuffa had not met its burden of establishing 11 of the 12 challenged documents were privileged, but had met its burden of showing portions of a single document contain confidential attorney-client communications.

The attorney-client privilege protects confidential disclosures made by a client to an attorney to obtain legal advice and an attorney's advice in response to such disclosures. *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996). The privilege applies where legal advice of any kind is sought from a professional legal advisor in her capacity as such, and the communication relates to that purpose, and is made in confidence by or for the client. *Upjohn Co., v. United States*, 449 U.S. 383, 389 (1981). This privilege serves to protect confidential communications between a party and its attorney in order to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* In the Ninth Circuit, an eight-part test determines whether information is covered by the attorney-client privilege: (1) where legal advice of any kind is sought, (2) from a professional legal advisor in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are, at that instance, permanently protected, (7) from disclosure by the client or by the legal advisor, and (8) unless the protection is waived. *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010); *LightGuard Sys., Inc. v. Spot Devices, Inc.*, 281 F.R.D. 593, 597–98 (D. Nev. 2012).

"The burden is on the party asserting the privilege to establish all the elements of the privilege." *United States v. Martin*, 378 F.3d 988, 999–1000 (9th Cir. 2002). The party asserting the privilege must, at a minimum, make a prima facie showing that the privilege protects the information the party intends to withhold. *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992). Blanket assertions of attorney-client privilege are "extremely disfavored." *Martin*, 278 F.3d at 1000. Courts narrowly construe the attorney-client privilege. *Trammel v.*

*United States*, 445 U.S. 40, 50 (1980); *Weil*, 647 F.2d at 24. Because the attorney-client privilege impedes the truth-finding process and must be strictly construed, "the privilege should attach only where extending its protection would foster more forthright and complete communication between the attorney and her client *about the client's legal dilemma*." *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1070 (N.D. Cal. 2002) (emphasis in original).

Not all communications between an attorney and client are privileged. *Martin*, 278 F.3d at 999 ("The fact that a person is a lawyer does not make all communications with that person privileged."). Information such as the identity of the client, the amount of the fee, the identification of payment by case file name, the general purpose of the work performed, and whether an attorney coached a client in his testimony is not privileged. *See, e.g., United States v. Carrillo*, 16 F.3d 1046, 1050 (9th Cir. 1994); *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992). Similarly, when an attorney is merely communicating information, the communications between the attorney and the client are not privileged. *United States v. Gray*, 876 F.2d 1411, 1415–16 (9th Cir. 1989) (holding attorney-client privilege did not preclude lawyer from testifying he advised client of the sentencing date in prosecution of client for failure to appear); *McKay v. Comm'r Internal Revenue Service*, 886 F.2d 1237, 1238 (9th Cir. 1989) (holding testimony of taxpayer's attorney that the gave taxpayer a copy of deficiency notice from the IRS in ample time to file a petition timely did not violate the attorney-client privilege).

When examining "communications to or from in-house counsel, many courts have found that in order for a communication that pertains to both business and legal advice to be considered privileged, the 'primary purpose' must be to obtain or give legal advice." *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 628 (D. Nev. 2013) (citing *United States v. Salyer*, 853 F. Supp. 2d 1014, 1018 (E.D. Cal. 2012); *Premiere Digital Access, Inc. v. Central Telephone Co.*, 360 F. Supp. 2d 1168 (D. Nev. 2005); *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065 (N.D. Cal. 2002)). Although in-house attorneys are often very involved in a company's business, "the attorney-client privilege does not apply when the attorney is providing strictly business advice." *Phillips*, 290 F.R.D. at 628 (citing *ChevronTexaco Corp.*, 241 F. Supp. 2d at 1076).

Two sets of documents are at issue. The first involve contract negotiations with a fighter. The fighter's counsel provided a marked up version of the fighter's existing contract with the fighter's proposed changes, to Zuffa's COO, Frank Fertitta, who was responsible for negotiations with the fighter. Mr. Fertitta forwarded the marked up contract to in house paralegal Tracy Long and requested a summary of the proposed changes. Ms. Long indicated she would get the input of in house counsel Michael Mersch, and would respond by memo the following day. Zuffa claims a summary of the fighter's proposed changes, a memo from Mr. Mersch to Mr. Fertitta, and related emails are protected by the attorney client privilege. Zuffa's opposition was supported by several declarations which outline the titles various individuals held within the organization during various time periods. Noticeably absent were declarations from the in house counsel involved in the communications, Mr. Mersch, or Mr. Fertitta, the negotiator and executive requesting the summary of proposed changes.

The court carefully reviewed the documents, considered the context of the communications in which various individuals who sent or received the documents was involved, and found Zuffa simply had not met its burden of showing the documents were privileged. The summary merely recites what the fighter, through counsel, was requesting in contract negotiations. The summary contains no legal analysis or advice, nor do the emails which forward information about what the fighter was requesting, and comment on whether Zuffa should agree or disagree. The court finds these documents contain Zuffa's negotiating positions and business strategies and decision-making, and are not attorney-client privileged communications. The documents involve discussions, and requests for input on business decisions involvin contract negotiations with the fighter, express the business implications of setting precedent in negotiations with others, and comment on whether proposed terms were reasonable or ridiculous, and/or whether certain requested terms had been given to any other fighter in the past.

Most of the Mersch memo contains comments about whether Zuffa could or should agree or "push back" on proposed changes requested by the fighter rather than legal analysis or discussion of the legal ramifications of the fighter's proposals. However, portions of Mr. Mersch's memo to Mr. Fertitta, read in context, contain his legal analysis of existing contract terms and the

legal consequences of agreeing or disagreeing with what the fighter's counsel was proposing. Although the memo does not specifically use terms or phrases such as "this is my legal advice" or "this is the legal effect" of what the fighter's counsel is requesting, legal analysis of the proposed terms is evident. The court will therefore require that the document be produced to Plaintiffs as redacted below.

The second set of documents are emails exchanged between Zuffa's Vice President of Licensing and Merchandising, and Executive Vice President and General Counsel during the relevant time period. The emails involve discussions about a clothing line company promoting its line at UFC events which had also entered into an agreement with a national retailer to sell UFC-related clothing. The email chain starts with a newspaper article commenting on what the clothing line company was doing and contains internal business discussions about Zuffa's licensing and sponsorship decisions and strategies. The exchanges describe what Zuffa was doing, what various executives thought it should be doing, whether a change in the relationship with the clothing line company would impact the compensation of one of Zuffa's fighters who had an agreement with the company, the fighter's likely response should Zuffa change the arrangement, and comments Zuffa should be developing its own brand to maximize its revenue potential. Zuffa has not met its burden of showing these emails were to solicit or receive legal advice. Rather, the documents discuss business positions, strategies, options Zuffa had for addressing the situation and potential business consequences of various alternative courses of action.

For these reasons,

**IT IS ORDERED** that Plaintiffs' Motion to Challenge Attorney-Client Privilege (ECF No320) is GRANTED with the exception of portions of the Merch memo which Defendant Zuffa, LLC shall produce redacted as follows:

Paragraph A entitled, *Introductory Language and Recitals on first page*, in subparagraph (a) redact the first sentence after the words "requesting are" through the end of the sentence.

Paragraph C entitled, A*rticle 2 – Ancillary Rights*, redact subparagraph (a) in its entirety; subparagraph (f), redact the last sentence beginning with the word "[a]gain" through the word "etc."

5

1    Paragraph E entitled, *Article 4 – Term*, redact subparagraph (d) in its entirety.

2    Paragraph I entitled, *Article 9 – Injury/Retirement*, redact subparagraph (b) in its entirety.

3    Paragraph J entitled, *Article 10 – Termination/Remedies*, redact subparagraphs (c), (d), and (e) in their entirety.

5    Paragraph L entitled, *Article 13 – Reps and Warranties*, redact subparagraph (a) in its entirety.

7    N.  *Article 15 – Indemnity*, redact subparagraph (a) in its entirety.

8    Paragraph 1[sic] entitled, *Article 16 – Prohibition on Use of IP*, redact subparagraph (b) in its entirety.

Dated this 13th day of February, 2017.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE