Joseph R. Saveri (State Bar No. 130064)
JOSEPH SAVERI LAW FIRM, INC.
555 Montgomery Street, Suite 1200
San Francisco, California 94111
Telephone: (415) 500-6800
Facsimile:   (415) 395-9940
jsaveri@saverilawfirm.com

Richard A. Koffman (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., N.W., Suite 500, East Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile:   (202) 408 4699
rkoffman@cohenmilstein.com

Eric L. Cramer (*pro hac vice*)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile:   (215) 875-4604
ecramer@bm.net

*Attorneys for Individual and Representative Plaintiffs*
*Cung Le, Nathan Quarry, and Jon Fitch, Bradon Vera, Luis*
*Javier Vazquez, and Kyle Kingsbury,*

[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| **Cung Le, Nathan Quarry, and Jon Fitch, Bradon Vera, Luis Javier Vazquez, and Kyle Kingsbury, on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,**<br><br>**Defendant.** | No.: 2:15-cv-01045-RFB-(PAL)<br><br>**PLAINTIFFS' OPPOSITION TO ZUFFA, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFF NATHAN QUARRY ON STATUTE OF LIMITATIONS GROUNDS** |

**TABLE OF CONTENTS**

I.     INTRODUCTION ....................................................................................................... 1

II.    BACKGROUND ......................................................................................................... 4

       A.    Zuffa's Anticompetitive Scheme ..................................................................... 4

       B.    Plaintiff Quarry and Members of the Identity Class Allege Ongoing Antitrust
             Injury. ............................................................................................................... 5

       C.    Zuffa's Use of Plaintiff Quarry's and Other Class Members' Identities After
             December 16, 2010. ........................................................................................... 6

             1.    Zuffa Appropriates Plaintiff Quarry's Image and Likeness In Promotional
                   Materials, Including Fight Pass. ............................................................... 6

             2.    Zuffa Used and Continues to Use Plaintiff Quarry's Image and Likeness
                   in UFC Licensed Merchandise Within the Limitations Period. ............... 8

             3.    Zuffa Has Accounted for Uses of Plaintiff Quarry's Image or Likeness
                   Within the Limitations Period. ................................................................. 9

III.   ARGUMENT ............................................................................................................ 10

       A.    Standard Governing Summary Judgment ...................................................... 10

       B.    Zuffa Has Failed to Carry its Initial Burden . ............................................... 11

       C.    Plaintiffs, Including Plaintiff Quarry, Allege Continuing Antitrust Violations and
             Injuries. .......................................................................................................... 13

             1.    Each Overt Act Injuring Plaintiff Quarry Restarted the Statute of
                   Limitations. ............................................................................................. 13

             2.    Plaintiff Quarry Presents Ample Evidence of Overt Acts Within the
                   Limitations Period. .................................................................................. 14

       D.    Plaintiff Quarry Does Not Simply Seek Benefits from a Distant Harm or Claim
             Performance of His Contract as an "Overt Act." .......................................... 18

IV.    CONCLUSION ........................................................................................................ 20

Case No.: 2:15-cv-01045-RFB-(PAL)

PLAINTIFF QUARRY'S OPPOSITION TO ZUFFA'S MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

## Cases

*Adickes v. Kress*, 398 U.S. 144 (1970) .................................................................................. 12

*Alarcon v. Am. Family Ins. Grp.*, 2010 U.S. Dist. LEXIS 60879 (D. Colo. June 18, 2010) ...................... 12

*Aurora Enters. v. Nat'l Broad. Co.*, 688 F.2d 689 (9th Cir. 1982) .......................................... 19, 20

*Berkey Photo Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) .......................................... 17

*Cal. Sansome Co. v. United States Gypsum*, 55 F.3d 1402 (9th Cir. 1995) .................................... 12

*City of Long Beach v. Standard Oil Co.*, 872 F.2d 1401 (9th Cir. 1989) ...................................... 13

*Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252 (9th Cir. 2001) .................................. 12

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690 (1962) ...................................... 14

*Cung Le v. Zuffa, LLC*, No. 2:15-cv-01045-RFB-PAL, 2016 U.S. Dist. LEXIS 145478 (D. Nev. Oct. 19, 2016) ........................................................................................ 6

*Free FreeHand Corp. v. Adobe Systems, Inc.*, 852 F. Supp. 2d 1171 (N.D. Cal. 2012) .................... 15, 17, 20

*Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 88 S. Ct. 2224 (1968) ....................... 15

*Hennegan v. Pacifico Creative Serv., Inc.*, 787 F.2d 1299 (9th Cir. 1986) .................................. 15

*Houghton v. South*, 965 F.2d 1532 (9th Cir. 1992) ........................................................ 12

*In re Buspirone Patent Antitrust Litig.*, 185 F. Supp. 2d 363 (S.D.N.Y. 2002)........................... 18

*In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274 (4th Cir. 2007) ........................................ 15

*In re High-Tech Employee Antitrust Litig.*, 856 F. Supp. 2d 1103 (N.D. Cal. 2012) ................................ 14

*In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517 (D.N.J. 2004) .......................................... 18

*In re Lithium Ion Batteries Antitrust Litig.*, 2014 U.S. Dist. LEXIS 7516 (N.D. Cal. Jan. 21, 2014) ............................................................................................ 14

*In re Multidistrict Vehicle Air Pollution*, 591 F.2d 68 (9th Cir. 1979) .................................. 20

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 37 F. Supp. 3d 1126 (N.D. Cal. 2014) ........................................................................................ 5, 16

*Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997) ........................................................ 15

*Marchbanks Truck Serv. v. Comdata Network, Inc.*, 2011 U.S. Dist. LEXIS 158011, 2011 WL 11559549 (E.D. Pa. Mar. 24, 2011) .......................................................... 17

*MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095 (N.D. Cal. 2012)........................... 20

*Meijer, Inc. v. 3M*, 2005 WL 1660188 (E.D. Pa. July 13, 2005) ........................................ 18

1   *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823 (11th Cir. 1999) ........................................... 15

2   *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.,* 211 F.3d 1224 (11th Cir. 2000) ........................................ 15

3   *O'Bannon v. NCAA*, 2010 U.S. Dist. LEXIS 19170 (N.D. Cal. Feb. 8, 2010)...................................15, 16

4   *Pace Indus., Inc. v. Three Phx. Co.*, 813 F.2d 234 (9th Cir. 1987) ......................................................... 15, 20

5   *Russell v. NCAA*, 2012 U.S. Dist. LEXIS 68684 (N.D. Cal. May 16, 2012) .......................................5, 17

6   *Smith v. Ebay Corp.*, 2012 U.S. Dist. LEXIS 1211 (N.D. Cal. Jan. 5, 2012) ........................................... 17

7   *Solo v. SD-3C LLC*, 751 F.3d 1081 (9th Cir. 2014)........................................................................... 15

8   *Tolan v. Cotton*, 134 S. Ct. 1861 (2014) .......................................................................................... 12

9   *Toledo Mack Sales & Service, Inc. v. Mack Trucks, Inc.*, 530 F.3d 204 (3d Cir. 2008) ............................... 17

10  *Univac Dental Co. v. Dentsply Int'l, Inc.*, 2008 WL 719227 (M.D. Pa. March 14, 2008) ........................ 18

11  *Varner v. Peterson Farms*, 371 F.3d 1011(8th Cir. 2004) ................................................................... 21

12  *Witt Co. v. Riso, Inc.*, 948 F. Supp. 2d 1227 (D. Or. 2013) ...................................................................... 21

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   INTRODUCTION

Zuffa's motion for partial summary judgment seeks dismissal of claims brought by Plaintiff Nate Quarry based on the statute of limitations. Dkt. 347 ("Motion"). Plaintiff Quarry alleges that Zuffa suppressed the compensation he received for his identity rights by engaging in a multifaceted scheme in violation of Section 2 of the Sherman Act. The alleged scheme included the use of exclusive fighter contracts, the acquisition of rivals, and threats to fighters and rivals to acquire monopsony power in the market for "Elite Professional MMA Fighter Services." Consolidated Amended Antitrust Class Action Complaint ("CAC") ¶¶ 109-134. Zuffa used its monopsony power to artificially under-compensate the proposed Class of MMA Fighters, such as Plaintiff Quarry, for use of their images and likenesses. CAC ¶¶ 3, 22, 34, 92, 107, 151.[1] Plaintiff Quarry was injured in this way (*i.e.*, through under-compensation for the UFC's exploitation of his identity rights) during the limitations period.[2] This is so because, *inter alia*, Zuffa continues to sell licensed products and digital media that feature his image and likeness and thereby continues to injure him. *Id.* ¶ 34. Plaintiff Quarry has received *no payment* from Zuffa during the limitations period, and continues to receive *no payment* for Zuffa's ongoing uses of his image and likeness. The CAC alleges that absent the challenged anticompetitive scheme Plaintiff Quarry and the other members of the Identity Class would be compensated more than they currently are *each time* Zuffa *exploits* any of their identity rights. CAC ¶¶ 92, 107. Thus, each time Zuffa exploits Plaintiff Quarry's identity rights during the limitations period Zuffa injures him anew.

Zuffa's motion rests on a fundamental misunderstanding of the claims of members of the proposed Identity Class of which Plaintiff Quarry is a representative.[3] They are based not simply—or even significantly—on Zuffa's *agreements* with Identity Class members like Plaintiff Quarry, but on Zuffa's anticompetitive scheme *as a whole*. That scheme, which is ongoing, has continued to harm

---

[1] Plaintiff Quarry is a representative of the "Identity Class." CAC ¶¶ 34, 50.

[2] Plaintiff Quarry filed suit on December 16, 2014. Dkt. 1. The limitations period is thus the four-year period between December 16, 2010 to December 16, 2014 (hereinafter, "limitations period").

[3] The CAC alleges two classes, the Bout Class and Identity Class, and two types of antitrust injury: Zuffa has artificially under-compensated the Bout Class members for their fights; Zuffa has artificially under-compensated the Identity Class members for the use of their likenesses and identities. *Id.* ¶ 21. Plaintiff Quarry did not fight during the four year limitations period, and so is not a member of the Bout Class.

Plaintiff Quarry each time Zuffa has used his likeness without compensating him at a competitive level, which, in his case, is above zero. CAC ¶ 34, 50.

Zuffa thus misses the point when it argues that because the harm Plaintiff Quarry alleges "arises solely out of the express terms of his agreements with Zuffa" his claims are time-barred. Motion at 2. It is true, as Zuffa asserts, that the last contract between Zuffa and Plaintiff Quarry relating to his identity rights was in 2010. *Id.* at 6, 8-10. But it is untrue that the harm Plaintiff Quarry suffered arises solely out of the express terms of his agreements with Zuffa. The harm arises from the scheme as a whole. As a result, for purposes of the statute of limitations, the dates of his contracts with Zuffa are beside the point. What matters is that Zuffa's overall scheme injured Plaintiff Quarry each time the UFC exploited Plaintiff Quarry's identity rights during the limitations period—*i.e.*, each time it paid Plaintiff Quarry nothing when it sold a product or service featuring his image or likeness or licensed the ability to do so to a business partner. In any event, Zuffa contracted to exploit Plaintiff Quarry's identity rights with its business partners such as Reebok, Topps, and Getty Images within the limitations period.

None of the expropriations Plaintiff Quarry challenges are spelled out in the "express terms" of his contracts with Zuffa. Zuffa presents no evidence that they are. Rather, the expropriations are continuing acts in a larger ongoing anticompetitive scheme. Plaintiff Quarry's allegations that his identity rights were expropriated during the limitations period, and that this harm is ongoing, are unchallenged. The evidence offered by Zuffa does not address the issues that are central to applying the statute of limitations. Thus, Zuffa has not met its initial burden to present evidence that Plaintiff Quarry's claims are time-barred, and Zuffa has failed to shift the burden to Plaintiff Quarry to present evidence that his claims are timely.

Even assuming Zuffa's motion shifted the burden to Plaintiff Quarry, his claims are not time-barred because he can show evidence of affirmative "overt acts" taken by Zuffa where his image or likeness was used without fair compensation within the limitations period. As alleged, absent the challenged anticompetitive scheme, Zuffa would not have had sufficient monopsony power to under-compensate its fighters, such as Plaintiff Quarry, and he would have been paid for each use. CAC ¶¶ 50, 92, 107. In December 2013, Zuffa launched "Fight Pass," an online digital media platform. On Fight Pass, Zuffa has published and made available for public viewing—for a price—the UFC fights of its

fighters, including Plaintiff Quarry's. Zuffa has even published and made available for public viewing selected fights of its fighters before they were in the UFC, including one of Plaintiff Quarry's fights with a minor league promoter. Additionally, in the four years before Plaintiff Quarry filed suit, Zuffa took numerous other "overt acts:" it licensed Plaintiff Quarry's likeness and image for UFC trading cards published in 2011 and 2013; it sold and continues to sell autographed posters for Plaintiff Quarry's UFC Middleweight Championship bout; it created television and internet programming featuring Plaintiff Quarry; and it included Plaintiff Quarry's image and likeness in promotional content posted on its website. Zuffa also used Plaintiff Quarry's likeness on a regular basis as part of the opening video montage for Zuffa's most lucrative events: For years, Zuffa used a clip of one of Plaintiff Quarry's fights as the opening for its Pay-Per-View ("PPV") events. Zuffa compensated Plaintiff Quarry at artificially low levels (*i.e.*, at zero) for each of these uses. Plaintiff Quarry testified to these expropriations during his deposition, and Zuffa's motion ignores all of them.

Zuffa argues that Plaintiff Quarry cannot show a continuing violation because its own "receipt of benefits" from an alleged anticompetitive scheme cannot be an "overt act" for purposes of the statute of limitations. Motion at 12. But affirmative acts to expropriate identity rights are indeed "overt acts." Under remarkably similar circumstances, a district court in the Ninth Circuit rejected the very argument Zuffa relies on here, *i.e.*, that expropriation of athletes' likenesses is simply the "receipt of benefits" (coincidentally relying on a brief authored by Zuffa's current counsel, who in that case represented the injured athlete). That litigation involved the use of the images and likenesses of college athletes by the NCAA and its business partners. The NCAA sought to dismiss antitrust claims by two college basketball legends—Ed O'Bannon and Bill Russell—whose identity rights were expropriated by the NCAA subject to the terms on which they agreed to scholarships with their respective schools many years before the initiation of the litigation. *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 37 F. Supp. 3d 1126 (N.D. Cal. 2014); *Russell v. NCAA*, 2012 U.S. Dist. LEXIS 68684 (N.D. Cal. May 16, 2012). The NCAA argued that O'Bannon and Russell's scholarship agreements occurred much more than four years before the lawsuits were filed. The District Court rejected those arguments, holding that the claims did *not* arise from the scholarship agreements by which compensation for their likenesses was suppressed, but from the "overt acts" taken by the NCAA in offering digital media

featuring games in which they played for sale on the internet. As Zuffa indisputably offered a similar digital streaming service starting in 2013, *O'Bannon* and *Russell*—which are consistent with a long line of precedent—are directly on point. This Court should similarly reject Zuffa's argument based on the statute of limitations.

## II.     BACKGROUND

### A.     Zuffa's Anticompetitive Scheme

Plaintiffs[4] allege that Zuffa used anticompetitive conduct to establish and maintain its dominance in the market for purchasing the services and identity rights of Elite MMA Fighters, including Plaintiff Quarry. Zuffa acquired monopsony power in the market for "Elite Professional MMA Fighter Services" by engaging in a series of anticompetitive actions, including (a) entering long-term, exclusive contracts with Elite MMA Fighters that effectively blocked the vast majority from fighting for rival promotions (CAC ¶¶ 109-114); (b) threatening or otherwise impairing other MMA promoters, sponsors and fighters from working with the UFC's potential rivals (*Id.* ¶¶ 116-119); (c) entering into exclusive agreements with sponsors and venues (*Id.* ¶¶ 120-127); and (d) acquiring multiple rival promotion companies that Zuffa had weakened through the foregoing conduct. *Id.* ¶¶ 129-134. As a result of this Scheme, Zuffa is the "only game in town" in the relevant market. *Id.* ¶¶ 5. As the Court noted, "Exclusive dealing arrangements are but a part of this scheme," and "Plaintiffs allege multiple acts that, as a whole, constitute an anticompetitive scheme." *Cung Le v. Zuffa, LLC*, No. 2:15-cv-01045-RFB-PAL, 2016 U.S. Dist. LEXIS 145478, at *40 (D. Nev. Oct. 19, 2016).

Plaintiffs allege that because of Zuffa's monopsony power Plaintiff Quarry and other members of the Identity Class lacked the ability to "turn to alternative MMA Promoters to earn competitive compensation" for their identity rights. CAC ¶ 90. More specifically, as relevant to Plaintiff Quarry's claims, Zuffa uses its monopsony power to "require UFC Fighters to enter into restrictive contracts," "expropriate the rights to UFC Fighters' Identities in perpetuity for little or no compensation (which is below competitive levels)," and "expropriate the Identities and deprive UFC Fighters of competitive

---

[4] Plaintiffs are Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury. CAC ¶¶ 2-3.

levels of payment for the exploitation of their Identities in UFC Licensed Merchandise and/or Promotional Materials licensed or sold by the UFC or its licensees." *Id.* ¶ 91.

Zuffa's motion does not challenge any aspects of the foregoing monopsony scheme alleged by Plaintiffs. Zuffa does not dispute in its motion that being under-compensated for identity rights due to an anticompetitive scheme constitutes cognizable antitrust injury. Indeed, this Court has noted that Zuffa's contracts require "UFC Fighters to attend, cooperate and assist in the promotion of bouts in which they fight and, as required by the UFC, any other bouts, events, broadcasts, press conferences and sale of merchandise, for no additional compensation." *Le v. Zuffa, LLC*, 2016 U.S. Dist. LEXIS 145478 at *40. Nor does Zuffa deny that it expropriated Plaintiff Quarry's identity rights during the limitations period.

### B.   Plaintiff Quarry and Members of the Identity Class Allege Ongoing Antitrust Injury.

Plaintiff Quarry is a representative and member of the "Identity Class," which comprises "[e]ach and every UFC Fighter whose Identity was expropriated or exploited by the UFC, including in UFC Licensed Merchandise and/or UFC Promotional Materials." CAC ¶ 47. "UFC Promotional Materials" include uses of UFC Fighters' identities in "all forms of television" "including . . . interactive, home or . . . pay . . . subscription" and video footage that is accessed via "computer . . . and all Internet applications" for which Zuffa receives revenues. CAC ¶ 27(u). This definition also includes efforts to monetize UFC Fighters' "photographs" and "merchandising" based on their UFC fights. *Id.* "UFC Licensed Merchandise" means "apparel," "photographs," "collectibles," "trading cards," and other products bearing the UFC trademark and UFC Fighters' images, likeness, or names. *Id.* ¶ 27(t).

Plaintiff Quarry alleges that Zuffa expropriated and exploited by his identity rights—and continues to do so. CAC ¶ 34 ("Quarry's Identity was expropriated and his compensation for appearing in UFC Licensed Merchandise and UFC Promotional Materials was artificially suppressed due to the scheme alleged herein. Quarry was and *continues to be* injured as a result of the Defendant's unlawful conduct.") (emphasis added).

On September 25, 2015 the Court denied Zuffa's motion to dismiss these claims. Ruling from the bench, the Court observed that Plaintiffs had alleged that, as a result of Zuffa's conduct, UFC

Fighters such as Plaintiff Quarry were harmed: "the antitrust injury on the monopsony part is that the fighters don't get the salaries that they want to get. They don't get the number of fights that they'd want to get. *They don't get to control their images.*" Sept. 25, 2015 Tr.. at 46:24-47:2 (emphasis added). [5] Summarizing Plaintiffs' allegations of antitrust injury, including that "the Identities of UFC Fighters continue[] to be expropriated and compensation by the UFC and its licensees for the expropriation of, exploitation of and right to exploit Identities of the members of the Identity Class has been and continues to be artificially suppressed," this Court ruled that "Plaintiff has sufficiently plead antitrust injuries sufficient to survive a motion to dismiss." *Cung Le v. Zuffa, LLC*, 2016 U.S. Dist. LEXIS 145478 at *44-45.

Zuffa's motion does not dispute any of Plaintiffs' allegations concerning Zuffa's use of UFC Fighters' images and likenesses and whether that constitutes cognizable antitrust injury.

### C.   Zuffa's Use of Plaintiff Quarry's and Other Class Members' Identities After December 16, 2010.

The UFC provided Plaintiff Quarry below-competitive compensation—indeed, no compensation at all—while using his name, image, or likeness in multiple UFC licensed products, services, and commercial promotions within the limitations period, *i.e.*, after December 16, 2010 (the limitations period dates back four years before the filing of the first complaint in this matter on December 16, 2014).

#### 1.   Zuffa Appropriates Plaintiff Quarry's Image and Likeness in Promotional Materials, Including Fight Pass.

On November 19, 2005, Plaintiff Quarry fought for the UFC Middleweight Championship in "UFC 56." Declaration of Nathan Quarry ("Quarry Decl.") ¶ 5. Plaintiff Quarry's fight was the co-headlining event for UFC 56, and Zuffa printed posters to promote and advertise the event. *Id.* ¶ 15. Plaintiff Quarry lost his match with Rich Franklin in UFC 56 in what became an iconic moment in UFC history. Zuffa has regularly used a clip from this fight to promote the UFC. Plaintiff's Statement of Additional Material Facts ("SAMF"), at ¶¶ 63 & 72. The clip became part of Zuffa's video montage for

---

[5] Relevant pages of the transcript are attached as Exhibit 24 to the Declaration of Matthew S. Weiler ("Weiler Decl.").

the introduction to its PPV events for many years, at least through 2015. Quarry Decl. ¶ 6; Quarry Dep. Tr. at 48:20-23; 105:23-25; SAMF ¶ 63. In November 2013, Zuffa published the "Top 20 Knockouts in UFC History," a video compilation including Plaintiff Quarry's fight with Franklin that Zuffa posted on Youtube to commemorate the UFC's twentieth anniversary. SAMF ¶ 70. The video has been viewed over sixty-nine million times. Weiler Decl. Ex. 2. Plaintiff Quarry never received any compensation for Zuffa's use of this footage. SAMF ¶ 63, 70.

In December 2013 Zuffa launched Fight Pass. SAMF ¶ 59; Zelaznik Dep. Tr. at 17:11-12. Fight Pass is a subscription "digital streaming service" that allows viewers to access a substantial library of content featuring virtually all UFC Fighters, making it "[t]he world's largest mixed martial arts fight library." SAMF ¶ 60. On Fight Pass, which is accessed through Zuffa's website, Zuffa charges MMA fans a subscription fee to use "a platform for all this MMA so that fans could access it." Zelaznik Dep. Tr. at 69:10-12; *see also id.* at 69:20-70:2. ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████

All nine of Plaintiff Quarry's fights while under contract with Zuffa can be viewed in their entirety on Fight Pass, as can other videos featuring Plaintiff Quarry. Weiler Decl.Ex. 5; Quarry Dep. Tr. at 104:15-17; SAMF ¶ 61 . Purchasers of Fight Pass can watch Plaintiff Quarry's win in the finale of The Ultimate Fighter Season 1, and his victory as part of an MMA event called "Gladiator Challenge 14." *Id.*; SAMF ¶ 62. Zuffa allows business partners such as Amazon, Sony, and Xbox to make available UFC events that featured Plaintiff Quarry, and received additional revenue from these partners when viewers watched these events through these platforms. SAMF ¶ 66. ████████████████████████

████████████████████████████████████████████████████

████████████████

Zuffa did not compensate UFC Fighters for the use of their images or likenesses in connection with Fight Pass. SAMF ¶ 64. ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

<span style="background-color:black; color:black">███████████████████████████</span> Zelaznik Dep. Tr. at 82:15-17; *see also id.* at 83:11-13. Plaintiff Quarry has never been compensated for any content that was made available on Fight Pass. Quarry Dep. Tr. at 104:15-17; SAMF ¶ 65.

In addition to its Fight Pass service, Zuffa published certain of Plaintiff Quarry's fights on its website to promote the UFC. In January 2012, Zuffa published a video of Plaintiff Quarry's fight with Demian Maia, deeming it the "Submission of the Week." SAMF ¶ 67. Plaintiff Quarry received no compensation from Zuffa in connection with the posting of this video. *Id.*

Plaintiff Quarry's win over UFC Fighter Shonnie Carter was also featured in episode Number 107 of "UFC Unleashed," a program that Zuffa produced for Spike TV. Weiler Decl.Exs. 9- 10; SAMF ¶ 6. That video was also posted on Zuffa's website on or about September 13, 2013, where it remains today. Weiler Decl.Exs. 9- 10. In September 2013, Zuffa published episode Number 102 of "UFC Unleashed," featuring Plaintiff Quarry's win against Lodune Sincaid in The Ultimate Fighter in 2005, to its Brazilian language website. SAMF ¶ 68. Plaintiff Quarry received no compensation from Zuffa in connection with either of those episodes of "UFC Unleashed." SAMF ¶¶ 68-69.

Plaintiff Quarry also featured prominently in a story published by UFC called "16 Bizarre Moments in UFC History." SAMF ¶ 71; Weiler Decl.Ex. 11. A photograph of Plaintiff Quarry appears in that article, as well as an account of one of Plaintiff Quarry's victories in the Octagon. Weiler Decl.Ex. 11. ("Quarry, who chased his foe in frustration for the 15 minute bout, even resorted to showboating (including the 'running man') to try to get Starnes to fight, but to no avail, and he was forced to settle for a decision victory."). Zuffa published the story on March 26, 2013 and Plaintiff Quarry received no compensation for the use of his image. *Id.*; Quarry Decl.¶ 12; SAMF ¶ 71.

On June 10, 2016 Zuffa published a photograph of Plaintiff Quarry's fight with Rich Franklin in a story on its website entitled "Behind the Lens: UFC Photog's Favorite KOs." SAMF ¶ 72. Plaintiff Quarry received no compensation for the use of this photograph. *Id.*

        **2.**    **Zuffa Used and Continues to Use Plaintiff Quarry's Image and Likeness in UFC Licensed Merchandise Within the Limitations Period.**

As of March 2017, posters autographed by Plaintiff Quarry promoting his title fight in UFC 56 remained for sale by Zuffa on the "ufcstore.com" website for $999.99 and $1,149.99. SAMF ¶ 75. Plaintiff Quarry has received no compensation from any sales of these posters. *Id.*

Zuffa licenses images and likenesses of members of the Identity Class to Topps, a company that publishes trading cards. SAMF ¶ 73. Plaintiff Quarry was featured in a series of UFC trading cards created by Topps, including the "2010 Topps UFC Knockout" series that was published in February 2011. SAMF ¶ 74. Plaintiff Quarry's image also appeared in the "2013 Topps UFC Knockout" series as part of the "Ultimate Knockout Relics Set." SAMF ¶ 74. Documents produced in discovery reflect that in the Fourth Quarter of 2013, a $0.08 royalty was attributed to Plaintiff Quarry for 50 "Units Sold" of "Trading Cards" as "UFC Direct Sales." Quarry Decl. Ex. 1. Zuffa has never explained this transaction to Plaintiff Quarry, and Plaintiff Quarry never received any compensation for Topps cards in 2013. SAMF ¶ 74.

Zuffa licenses certain identity rights of members of the Identity Class to Reebok, a company that manufacturers sporting apparel. SAMF ¶ 76. Plaintiff Quarry was also featured by Reebok in a series of UFC jerseys that first appeared in 2014. *Id.* As Plaintiff Quarry testified, "You can order yourself a Reebok jersey with my name on it." Quarry Dep. Tr. at 104:16-17. Plaintiff Quarry was not compensated for any of these products. SAMF ¶ 76.

Zuffa also licenses to Getty Images the right to sell photographs of UFC Fighters, including Plaintiff Quarry. *Id.* ¶ 77. ███████████████████████████████████████████

███████████████████████████████████████████████████████

Weiler Decl. Ex. 19. There is some evidence that Zuffa sold Getty Images of Plaintiff Quarry in 2013. Quarry Decl. Ex. 1. Dozens of photographs of Plaintiff Quarry remain for sale on the Getty Images website. Weiler Decl. Ex. 20. For example, Getty Images sells a medium resolution photograph of Plaintiff Quarry for $1,805 to users who wish to use Plaintiff Quarry's image on the homepage of their website for "corporate or promotional use." SAMF ¶ 78; Weiler Decl. Ex. 21.

### 3. Zuffa Has Accounted for Uses of Plaintiff Quarry's Image or Likeness Within the Limitations Period.

Documents produced in litigation confirm that Zuffa continued to use Plaintiff Quarry's identity within the limitations period, and that Zuffa continues to artificially under-compensate Plaintiff Quarry for the use of his image and likeness.

A document produced by Zuffa dated December 31, 2013, identifies five instances of Zuffa appearing to account for uses of Plaintiff Quarry's image or likeness within the limitations period:

- A $0.13 royalty was generated in the First Quarter of 2011 in connection with Plaintiff Quarry's image or likeness;

- A $0.24 royalty was generated in the Third Quarter of 2012 in connection with Plaintiff Quarry's image or likeness;

- A $5.00 royalty was generated in the Fourth Quarter of 2012 in connection with Plaintiff Quarry's image or likeness;

- A $10.00 royalty was generated in the Third Quarter of 2013 in connection with Plaintiff Quarry's image or likeness;

- A $0.08 royalty was generated in the Third Quarter of 2013 in connection with Plaintiff Quarry's image or likeness.

Quarry Decl.Ex. 1. Zuffa realized much larger revenues. *Id.* Plaintiff Quarry did not receive the royalty amounts reflected on these documents when they were accrued. Quarry Decl.¶ 19-22; SAMF ¶¶ 73-74, 77. These royalty amounts, which were artificially suppressed due to the scheme Plaintiffs allege, demonstrate that the uses of Plaintiff Quarry's identity are both new and accumulating, as Zuffa has assigned at least five of them a nominal value. Of course, there are many valuable uses of Plaintiff Quarry's identity for which Zuffa has provided *nothing*.

## III.   ARGUMENT

### A.   Standard Governing Summary Judgment

Zuffa has not met its burden on summary judgment. As the statute of limitations is an affirmative defense, Zuffa bears the initial burden of showing that Plaintiff Quarry's claim is time-barred. "When a defendant seeks summary judgment on a statute of limitations affirmative defense, the initial burden rests on the defendant to demonstrate by sufficient, competent evidence that the defense applies to bar the claim. . . . If the defendant meets this burden, the claim is barred by the statute of

limitations unless the plaintiff can establish a disputed issue of material fact as to the application of the defense or provide sufficient facts to establish a prima facie case for tolling the statute of limitation." *Alarcon v. Am. Family Ins. Grp.*, 2010 U.S. Dist. LEXIS 60879, at *5-6 (D. Colo. June 18, 2010). To carry its initial burden, Zuffa must provide evidence that Plaintiff Quarry's claims are time-barred by demonstrating both the harm and the wrongdoing occurred outside of the limitations period. *Cal. Sansome Co. v. United States Gypsum*, 55 F.3d 1402, 1406 (9th Cir. 1995) ("defendant raising the statute of limitations as an affirmative defense has the burden of proving the action is time barred" and "the defendant has the burden of demonstrating the complained of wrongdoing and harm occurred outside the limitations period"). Only if Zuffa produces this evidence does the burden shift to Plaintiff Quarry to provide contrary evidence. *Id.* at 1407-08; *see also Houghton v. South*, 965 F.2d 1532, 1536-37 (9th Cir. 1992) (to shift the burden, defendant must "establish the absence of a genuine issue of fact on each issue material to [the] affirmative defense").

Any evidence presented by Plaintiff Quarry must be viewed in the light most favorable to him, and all inferences must be drawn in his favor. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (citing *Adickes v. Kress*, 398 U.S. 144, 157 (1970)); *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001) (citation omitted).

### B.   Zuffa Has Failed to Carry its Initial Burden.

To shift the burden to Plaintiff Quarry, Zuffa was required to produce evidence that demonstrates the statute of limitations has expired. *Cal. Sansome Co.*, 55 F.3d at 1407-08 (defendant failed to introduce evidence shifting the burden to plaintiff). Zuffa has failed to do so. Even without considering the raft of evidence that Zuffa continued to use Plaintiff Quarry's identity during the limitations period—which indisputably causes Quarry antitrust injury on each exploitation without fair compensation—Zuffa's motion should be denied.

Zuffa does not dispute that, during the limitations period, it used and continues to use his image or likeness without compensation at competitive levels, *i.e.*, the compensation that Zuffa would have paid him and other Identity Class members had it not engaged in its anticompetitive scheme. CAC ¶¶ 22, 34. Plaintiff Quarry specifically alleged that Zuffa used his identity in connection with licensed products such as video games and UFC trading cards, and that each such use constituted antitrust

injury. *Id.* ¶ 34, 50; *see also Cung Le v. Zuffa, LLC*, 2016 U.S. Dist. LEXIS 145478 at *44-45 (use of Plaintiffs' images and likenesses without fair compensation is an antitrust injury for the Identity Class). Given Zuffa's failure to contest those allegations, they must be accepted as true. *City of Long Beach v. Standard Oil Co.*, 872 F.2d 1401, 1404 (9th Cir. 1989) ("In reviewing the summary judgment motion we accept the city's undisputed allegations as true.").

Zuffa has also produced *no evidence* that the anticompetitive scheme alleged by Plaintiffs stopped in 2010. Zuffa similarly has produced *no evidence* that the use of Plaintiff Quarry's image or likeness without fair compensation stopped in 2010. And Zuffa has produced *no evidence* to contradict Plaintiff Quarry's allegations that the use of his likeness in connection with UFC Topps trading cards is continuing and did not stop in 2010.

Instead, Zuffa has presented evidence only that Plaintiff Quarry entered into a contract in January 2010, in connection with his last fight in March 2010. Motion at 8-10. Zuffa argues that Plaintiff Quarry's claims are barred because the "terms he attacks in his agreements . . . were fixed outside the four-year limitations period." *Id.* at 9.

But Zuffa's evidence does not address the relevant conduct for purposes of statute of limitations. Plaintiff Quarry alleges antitrust injury caused by Zuffa's ongoing *scheme as a whole*—including hundreds of contracts with multiple entities (among them sponsors, venues, merchandisers and fighters) and other conduct unrelated to contracts. CAC ¶¶ 109-134. Indeed, as the CAC makes clear, Plaintiffs do not claim they were injured by their respective individual contracts, but instead by the scheme as a whole. *Id.* ¶ 115. Plaintiffs allege that the scheme, rather than their contracts standing alone, gave Zuffa the monopsony power to extract class members' identity rights for no or uncompetitive compensation levels, and then to continue to exploit those rights and injure class members during the limitations period and continuing to this day. *Id.* ("Plaintiffs allege here that all of the UFC's contracts with Fighters-and the exclusionary provisions therein-taken together form part of the UFC's anticompetitive scheme to impair actual or potential rivals and enhance its" monopsony power). Many elements of this scheme, including the acquisition of StrikeForce and the many uses of Plaintiff Quarry's identity without compensation, occurred less than four years before Plaintiff Quarry filed suit.

Zuffa's contention that the statute of limitations issue should be controlled by class members' own individual contracts, thus, misunderstands the scheme. Plaintiffs do not allege that they were harmed by any one contract by itself, but rather that the contracts collectively, together with the other aspects of the scheme, afforded Zuffa the monopsony power to extract identity rights from each class member at uncompetitive prices, and then continue to exploit those rights during the limitations period. Zuffa's position violates the cardinal rule that "character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole." *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962). "Though not a pleading standards case, *Continental Ore* warns against 'tightly compartmentalizing the various factual components' of a plaintiff's case 'and wiping the slate clean after scrutiny of each.'" *In re Lithium Ion Batteries Antitrust Litig.*, 2014 U.S. Dist. LEXIS 7516, at *71-72 (N.D. Cal. Jan. 21, 2014) (quoting *In re High-Tech Employee Antitrust Litig.*, 856 F. Supp. 2d 1103, 1118 (N.D. Cal. 2012)). By seeking to tie the statute of limitations issue to only a single contract out of a scheme that includes thousands of contracts and multiple other facets, Zuffa improperly cabins the claims presented. This Court has already rejected Zuffa's attempt to analyze the scheme by reference to a single element of it when it noted, "The Court disagrees with the contention that a single element of a scheme, if legal, makes legal the conduct as a whole" and Zuffa "overlooks the scheme that Plaintiff alleges, and concerns itself instead with the validity of the exclusive dealing agreements." *Cung Le v. Zuffa, LLC*, 2016 U.S. Dist. LEXIS 145478 at *42. In its current Motion, Zuffa repeats the same mistake.

**C.      Plaintiffs, Including Plaintiff Quarry, Allege Continuing Antitrust Violations and Injuries.**

Assuming *arguendo* Zuffa's Motion shifted the burden, Plaintiff Quarry has carried it. Each time that Zuffa used Plaintiff Quarry's image or likeness without fairly compensating him constituted a new invasion of his rights and new antitrust injury. Each occasion thus involved an "overt act" restarting the statute of limitations.

**1.      Each Overt Act Injuring Plaintiff Quarry Restarted the Statute of Limitations.**

Illegal conduct that continues to invade a plaintiff's rights, and thereby causes antitrust injury, restarts the statute of limitations. *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 502, n.15 (1968). Additionally, the statute of limitations begins anew each time a defendant takes an "overt act" that injures a plaintiff, such as, *e.g.*, each time a defendant overcharges a buyer in a price fixing case or each time a defendant artificially under-compensates a seller of services, like Quarry here, in a monopsonization case. *See, e.g.*, *Solo v. SD-3C LLC*, 751 F.3d 1081, 1086 (9th Cir. 2014) ("the Supreme Court and federal appellate courts have recognized that each time a defendant sells its price-fixed product, the sale constitutes a new overt act causing injury to the purchaser and the statute of limitations runs from the date of the act."); *Hennegan v. Pacifico Creative Serv., Inc.*, 787 F.2d 1299, 1301 (9th Cir. 1986) (holding that a new overt act occurred each time tour operators shepherded tourists away from plaintiffs' shop in exchange for payment); *In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 290-91 (4th Cir. 2007) ("[I]n cases like this one involving allegations of 'a price-fixing conspiracy that brings about a series of unlawfully high priced sales over a period of years, each overt act that is part of the violation and that injures the plaintiff, *e.g.*, each sale to the plaintiff, starts the statutory period running again.'" (quoting *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997)); *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823 (11th Cir. 1999) amended in part, 211 F.3d 1224 (11th Cir. 2000) (holding that each sale of milk a price-fixed price constitutes a new overt act (*citing Klehr*, 521 U.S. at 189)).

An overt act restarts the statute of limitations where it is a "new and independent act that is not merely a reaffirmation of a previous act" and inflicts "new and accumulating injury" on the Plaintiff. *Free FreeHand Corp. v. Adobe Systems, Inc.*, 852 F. Supp. 2d 1171, 1187-88 (N.D. Cal. 2012) (quoting *Pace Indus. v. Three Phoenix Co.*, 813 F.2d 234, 237 (9th Cir. 1987)).

### 2. Plaintiff Quarry Presents Ample Evidence of Overt Acts Within the Limitations Period.

Zuffa took multiple overt acts after December 16, 2010, sufficient to restart the statute of limitations period as to Plaintiff Quarry, including its launch of Fight Pass in December 2013. *See O'Bannon v. NCAA*, 2010 U.S. Dist. LEXIS 19170, at *16 (N.D. Cal. Feb. 8, 2010) ("O'Bannon has sufficiently alleged a continuing violation" where the "NCAA continues to enter into agreements that

allow the use of his image without compensation paid to him"). In addition to Fight Pass, Zuffa used

Plaintiff Quarry's image and likeness without compensation dozens of times since December 2010. His

likeness has been featured in trading cards, posters, and commercial photographs. SAMF ¶¶ 73-75, 77.

He has appeared on Zuffa's MMA programming, including episodes of television and internet MMA

entertainment created by Zuffa and in the opening credits of Zuffa's PPV events. SAMF ¶¶ 63, 67-72.

His image and likeness have also appeared in content posted on Zuffa's website. *Id.*

    *O'Bannon* is directly on point. In *O'Bannon*, a former UCLA basketball player, who starred on

the Bruins' 1995 NCAA championship team, sued the NCAA in 2009 alleging "its member schools and

various businesses conspired to fix the price of former student athletes' images at zero." 2010 U.S. Dist.

LEXIS 19170, at *13. The NCAA moved to dismiss O'Bannon's claims as barred by the statute of

limitations, but the court ruled that "in 2007, [the] NCAA entered into an agreement with Thought

Equity Motion, Inc. to offer 'classic' college basketball games online," and thus Plaintiffs had alleged the

NCAA's sale of videos with O'Bannon's image restarted the statute of limitations. *Id.* at *16. Counsel

for Zuffa submitted a brief on behalf of O'Bannon that identified the correct legal framework to address

Plaintiff Quarry's claims:

> The NCAA has repeatedly invaded Plaintiff's commercial interest by
> obtaining revenue from the exploitation or sale of Plaintiff's image. Each
> sale by Defendants was a new and independent act and caused a new and
> accumulating financial injury to Plaintiff. *These sales*, which Defendant
> had to be advertised, promoted or negotiated before the sale took place,
> *constitute independent overt acts*—they were far from "passive" events.
> Videos with Plaintiff's image are currently available for purchase through
> on-line stores.

Weiler Decl.Ex. 22 at 19 (O'Bannon's Opposition to NCAA's Motion to Dismiss at 19 (emphasis

added)). The court adopted the arguments made by Zuffa's counsel, and later ruled that O'Bannon and

other similarly situated plaintiffs could proceed to trial on the same theory: "This Court previously

recognized that the continuing violations doctrine applied to Plaintiffs' claims in this case because

Plaintiffs alleged that the NCAA committed certain overt acts after July 2005 which revived Plaintiffs'

antitrust claims. . . . Although Plaintiffs have failed to identify any evidence of those overt acts here,

they may nevertheless proceed to trial on their claims." *In re NCAA Student-Athlete Name & Likeness

Licensing Litig.*, 37 F. Supp. 3d at 1139.

The NCAA sought dismissal of similar claims filed by NBA legend Bill Russell, who won the 1955 and 1956 NCAA championship at the University of San Francisco. *Russell v. NCAA*, 2012 U.S. Dist. LEXIS 68684 at *8-9. Russell, like O'Bannon, alleged that the "NCAA and its co-conspirators have worked together to depress to zero the amount paid to student-athletes for their likenesses in perpetuity." *Id.* Applying its earlier ruling, the court in *Russell* ruled that plaintiff had plead a continuing violation based on the allegations "that footage from specific games in which he played and at least fifty-four video-clips featuring his collegiate image currently appear on Thought Equity Motion's website." *Id.* at *12.

The results in *O'Bannon* and *Russell* are consistent with the decisions courts have reached in multiple analogous antitrust actions, including Section 2 claims based in part on acquisitions and antitrust injuries that include overcharge payments.

For instance, in *Free FreeHand*, the court ruled that "overt acts" for purposes of restarting the statute of limitations in a Section 2 monopolization cause of action included acts as part of an anticompetitive scheme that followed an acquisition. 852. F. Supp. 2d at 1188 ("Plaintiffs' claims are not based solely on the fact that Adobe acquired Macromedia"); *see also Smith v. Ebay Corp.*, 2012 U.S. Dist. LEXIS 1211, at *15-16 (N.D. Cal. Jan. 5, 2012) ("Plaintiffs' claims of monopolization and attempted monopolization are not based solely on the fact that eBay acquired PayPal.") (holding claims are timely). Those cases involved the same type of multifaceted scheme that Plaintiffs allege here.

Courts have also found that monopolists who charge supracompetitive prices cannot rely on the statute of limitations for repose. *See, e.g.*, *Berkey Photo Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 295 (2d Cir. 1979) (a monopolist that "continues to use the power it has gained illicitly to overcharge its customers . . . has no claim on the repose that a statute of limitations is intended to provide"); *id.* ("[i]t is only when the monopolist, having devoured its smaller rivals, enjoys the spoils of its conquest by boosting its price to excessive levels that a purchaser 'feels the adverse impact' of the violation"); *Marchbanks Truck Serv. v. Comdata Network, Inc.*, 2011 U.S. Dist. LEXIS 158011, *81, 2011 WL 11559549 (E.D. Pa. Mar. 24, 2011) (citing *Toledo Mack Sales & Service, Inc. v. Mack Trucks, Inc.*, 530 F.3d 204, 217 (3d Cir. 2008) ("[I]n the context of a continuing conspiracy to violate antitrust laws, a claim accrues

each time a plaintiff is injured by an act of the defendant and, as to those damages, the statute of limitations runs from the commission of the act.").[6]

The scheme here, as in *O'Bannon* and *Russell*, is the mirror image of supracompetitive pricing schemes in cases such as *Berkey Photo Inc.*: Zuffa, a monopsonist, continued to use Plaintiff Quarry's likeness and image without paying fair compensation, selling products and services containing the images and likenesses of Plaintiff Quarry and other class members. Each time Zuffa, a monopsonist, fails to pay Plaintiff Quarry at a competitive rate its overt act restarts the statute of limitations, just as each overcharge by a monopolist does the same.

Finally, there can be no doubt that the harm to Plaintiff Quarry from each use of his likeness or image without fair compensation is both new and accumulating. Documents produced in discovery demonstrate that each admitted new use of Plaintiff Quarry's likeness or image is separately credited by Zuffa, albeit at artificially suppressed levels. *See, e.g.*, Quarry Decl. Ex. 1. That Zuffa appears to have separately accounted for at least five uses of Plaintiff Quarry's image or likeness within the limitations period confirms that each use of Plaintiff Quarry's identity without fair compensation is an "overt act" that has independent value.[7]

---

[6] *See also Univac Dental Co. v. Dentsply Int'l, Inc.*, 2008 WL 719227, at *4 (M.D. Pa. March 14, 2008) ("The continuing violation theory authorizes antitrust recovery for a defendant's time-barred actions if the plaintiff demonstrates that they caused the plaintiff to incur damage within the limitations period."); *Meijer, Inc. v. 3M*, 2005 WL 1660188, at *4 (E.D. Pa. July 13, 2005) (in "purchaser antitrust actions" such as this one, "the requisite injurious act within the limitations period can include being overcharged as a result of an unlawful act which took place outside the limitations period"); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 551 (D.N.J. 2004) ("Plaintiffs have alleged that they were overcharged and paid supra-competitive prices for K-Dur as a result of Defendants' settlement agreements. As such it appears that Plaintiffs' claims are not barred by the statute of limitations to the extent that they bought and overpaid for K-Dur within the applicable time limitations."); *In re Buspirone Patent Antitrust Litig.*, 185 F. Supp. 2d 363, 378 (S.D.N.Y. 2002) ("if a party commits an initial unlawful act that allows it to maintain market control and overcharge purchasers for a period longer than four years, purchasers maintain a right of action for any overcharges paid within the four years prior to their filings.").

[7] Zuffa presents no evidence that ███████████████████████████████████████████████████ ████████████████ *See* SUF ¶ 39. As an initial matter, on its face the payment made by Zuffa purports to relate only to the Merchandise Rights Agreement. But Plaintiff Quarry's identity rights were expropriated by a number of agreements, including the Exclusive Promotional and Ancillary Rights Agreement, that purported to make Plaintiff Quarry's image and likeness ██████████████████████ ███████████████████████████████████████████████████████████████████

### D.   Plaintiff Quarry Does Not Simply Seek Benefits from a Distant Harm or Claim Performance of His Contract as an "Overt Act."

Zuffa argues that Plaintiff Quarry cannot demonstrate a continuing violation because "receipt of benefits from [the] pre-limitations period" cannot be the basis of a continuing violation. Motion at 12. Again, Zuffa mischaracterizes Plaintiff Quarry's claims. Plaintiff Quarry's claims do not arise from the mere *receipt of benefits*, but from a continuing scheme and Zuffa's many uses of Plaintiff Quarry's identity that occurred after December 16, 2010. Accordingly, Zuffa's reliance on *Aurora Enters. v. Nat'l Broad. Co.*, 688 F.2d 689, 694 (9th Cir. 1982), Motion at 11, is misplaced. In that action, NBC took *no overt act* that harmed the plaintiff after the statute of limitations period had expired. Instead, NBC continued to passively receive the benefits of "syndication profits" from a contract it had entered into in 1966. The only overt act alleged by plaintiff in that matter was "coerc[ion]" that occurred in 1966: "In 1973, defendant NTA purchased the assets of NBC's syndication subsidiaries and took over syndication of NBC's programs. NBC now receives syndication profits, if there are any, from NTA. Defendant NTA is entitled to a share of syndication profits under its contract with NBC. However, the mere fact that defendants receive a benefit today as a result of a contract executed in 1966 in which Xanadu was purportedly coerced to part with syndication rights, is not enough to restart the statute of limitations." *Id.*

---

Additionally, there is no evidence of the existence of an agreement between Plaintiff Quarry and Zuffa that any payment from Zuffa was to compensate Plaintiff Quarry for all future uses of his image or likeness. The documents referenced as Exhibits H & I to Zuffa's motion provide no support for the existence of any agreement about an advance on royalty payments or the use of Plaintiff Quarry's image of likeness. Other evidence, such that Zuffa separately paid Plaintiff Quarry $625 for the use of his identity in a videogame in October 2010, conflicts with Zuffa's characterization. *See* Exhibit J to Zuffa's Motion. Plaintiff Quarry does not deny receiving $2,500 from Zuffa in March 2009, but was unaware of the purpose of the payment at the time. Quarry Decl., ¶ 22. ███████████████████████ ██████████████████████████████████████████ Accordingly, Plaintiff Quarry objects to Paragraph 12 of the Declaration of Kirk Hendrick because it lacks foundation, assumes facts that have not been established, and it is non-admissible hearsay.

*Aurora* does not apply where, as here, a defendant has engaged in an ongoing scheme comprised of many anticompetitive acts, including overt instances of active exploitation of Plaintiff Quarry's identity rights in new and different ways during the limitations period. Zuffa was not merely passively receiving the benefits of a contract. Courts applying *Aurora* have recognized its narrow application. For example, the court in *Free Freehand* ruled that Section 2 claims that concerned a pattern of anticompetitive conduct following an acquisition is not "'continu[ing] indefinitely to receive some benefit as a result of an illegal act performed in the distant past.'" 852 F. Supp. 2d at 1187 (quoting *Aurora*, 688 F.2d at 694).[8]

Similarly, Zuffa's characterization of Plaintiff Quarry's claims as the "unabated inertial consequences of some pre-limitations action," Motion at 13 (quoting *In re Multidistrict Vehicle Air Pollution*, 591 F.2d 68 (9th Cir. 1979)), is inaccurate. The harm that is the basis of Plaintiff Quarry's claims is *not inertial*—it results from *affirmative acts* that Zuffa has taken since 2013, including the creation of Fight Pass, which indisputably resulted in no compensation to Plaintiff Quarry. In *Multidistrict Vehicle Air Pollution*, the Ninth Circuit considered a refusal to deal case where the refusals all occurred more than four years before the plaintiff AMF filed suit: "No forbidden 'overt acts' occurred thereafter; appellees merely supplied their needs from sources other than AMF." *Id.* at 71.

*Pace Indus., Inc. v. Three Phx. Co.*, 813 F.2d 234, 236 (9th Cir. 1987), Motion at 12, is likewise inapposite. The plaintiff there challenged one discrete act—initiation of a lawsuit seeking an injunction to restrain plaintiff—and the lawsuit was filed more than four years after the injunction was sought. *Id.* The Ninth Circuit ruled there was no continuing violation because the actions taken since the lawsuit were indistinguishable from the irrevocable first act of filing suit: "The initiation of a lawsuit is the final, immutable act of enforcement of an allegedly illegal contract. At that point in time the lawsuit assumes an existence separate from the contract. All subsequent acts are controlled by the exigencies of

---

[8] *Eichman v. Fotomat Corp.*, 880 F.2d 149 (9th Cir. 1989), Motion at 9, is similarly inapposite. In that matter, the defendant had had done nothing since entering into a lease agreement except passively receive payments: "The mere fact that Eichman has made lease payments to Fotomat since 1968 does not establish Fotomat's ability." *Id.* at 160.

litigation, not enforcement of the contract." *Id.* at 236. In *Pace*, the plaintiff had failed to allege any "new" conduct because all of the purported ongoing conduct was the maintenance of the same lawsuit. *See also MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1105 (N.D. Cal. 2012) (conduct was not "new" because the plaintiff sued Microsoft in 2007 for the *exact same conduct* Microsoft had committed starting in 2002). Here, the specific uses of Plaintiff Quarry's identity are both new and accumulating because Zuffa has initiated many different ways to monetize the identity rights in the last several years, including Fight Pass and the 2014 deal with Reebok.

Finally, Zuffa argues that performance of a contract that was executed outside the statute of limitations period cannot be an "overt act." Motion at 12. Those authorities are inapplicable because the conduct Plaintiff Quarry challenges is a monopsonization scheme involving the collective effect of thousands of contracts, as well as other facets—which combined afforded Zuffa the monopsony power to exploit the identity rights of class members in new and different ways during the limitations period. Plaintiffs' claims are not simply challenging the express terms of individual contractual agreements. Zuffa's citation to *Varner v. Peterson Farms*, 371 F.3d 1011(8th Cir. 2004), Motion at 12, is thus inapposite. The challenged antitrust conduct there was the entry into a tying agreement, and the purported "overt acts" were simply the "express terms" of the challenged agreements. *Id.* at 1019-1020; *see also See Witt Co. v. Riso, Inc.*, 948 F. Supp. 2d 1227, 1236 (D. Or. 2013) ("performance of an alleged illegal contractual tie-in provision does not satisfy the continuing violation requirements"). The uncompensated uses of Plaintiff Quarry's identity were not spelled out in his contracts with Zuffa. Indeed, many of the schemes Zuffa had used to exploit the identity rights it had expropriated had not been initiated in January 2010, when Plaintiff Quarry signed his last contract with Zuffa.

## IV.   CONCLUSION

Zuffa has not carried its burden  to demonstrate that Plaintiff Quarry's claims are barred by statute of limitations. Zuffa has engaged in ongoing scheme to exploit the images and likeness of UFC Fighters such as Plaintiff Quarry, taking various overt acts and failing to compensate them during the statutory period. Zuffa improperly addresses only the dates on which he signed his contracts. But Zuffa has used Plaintiff Quarry's identity without compensating him on numerous occasions since he signed his last contract in January 2010, and thus found multiple new and different ways to cause him the

other members of the identity class to suffer antitrust injuries. There is ample evidence that Zuffa committed "overt acts" within the statutory period.

Respectfully Submitted,
JOSEPH SAVERI LAW FIRM, INC.

By:                /s/Matthew S. Weiler
                    Matthew S. Weiler

Joseph R. Saveri (admitted *pro hac vice*)
Joshua P. Davis (admitted *pro hac vice*)
Matthew S. Weiler (admitted *pro hac vice*)
Kevin E. Rayhill (admitted *pro hac vice*)
555 Montgomery Street, Suite 1210
San Francisco, California 94111
Phone: (415) 500-6800/Fax: (415) 395-9940
jsaveri@saverilawfirm.com
jdavis@saverilawfirm.com
mweiler@saverilawfirm.com
krayhill@saverilawfirm.com

*Co-Lead Counsel for the Classes and Attorneys for Individual and Representative Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Luis Javier Vazquez, Brandon Vera, and Kyle Kingsbury*

COHEN MILSTEIN SELLERS & TOLL, PLLC
Benjamin D. Brown (admitted *pro hac vice*)
Richard A. Koffman (admitted *pro hac vice*)
Dan Silverman (admitted *pro hac vice*)
1100 New York Ave., N.W., Suite 500, East Tower
Washington, DC 20005
Phone: (202) 408-4600/Fax: (202) 408 4699
bbrown@cohenmilstein.com
rkoffman@cohenmilstein.com
dsilverman@cohenmilstein.com

*Co-Lead Counsel for the Classes and Attorneys for Individual and Representative Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Luis Javier Vazquez, Brandon Vera, and Kyle Kingsbury*

Case No.: 2:15-cv-01045-RFB-(PAL)
PLAINTIFF QUARRY'S OPPOSITION TO ZUFFA'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1  BERGER & MONTAGUE, P.C.
Eric L. Cramer (admitted *pro hac vice*)
2  Michael Dell'Angelo (admitted *pro hac vice*)
Patrick Madden (admitted *pro hac vice*)
3  1622 Locust Street
Philadelphia, PA 19103
4  Phone: (215) 875-3000/Fax: (215) 875-4604
ecramer@bm.net
5  mdellangelo@bm.net
pmadden@bm.net
6
*Co-Lead Counsel for the Classes and Attorneys for*
7  *Individual and Representative Plaintiffs Cung Le, Nathan*
*Quarry, Jon Fitch, Luis Javier Vazquez, Brandon Vera,*
8  *and Kyle Kingsbury*

9  WOLF, RIFKIN, SHAPIRO,
SCHULMAN & RABKIN, LLP
10  Don Springmeyer
Nevada Bar No. 1021
11  Bradley S. Schrager
Nevada Bar No. 10217
12  Justin C. Jones
Nevada Bar No. 8519
13  3556 E. Russell Road, Second Floor
Las Vegas, Nevada 89120
14  (702) 341-5200/Fax: (702) 341-5300
dspringmeyer@wrslawyers.com
15  bschrager@wrslawyers.com
jjones@wrslawyers.com
16
*Liaison Counsel for the Classes and Attorneys for*
17  *Individual and Representative Plaintiffs Cung Le, Nathan*
*Quarry, Jon Fitch, Luis Javier Vazquez, Brandon Vera,*
18  *and Kyle Kingsbury*

19  WARNER ANGLE HALLAM JACKSON &
FORMANEK PLC
20  Robert C. Maysey (admitted *pro hac vice*)
Jerome K. Elwell (admitted *pro hac vice*)
21  2555 E. Camelback Road, Suite 800
Phoenix, AZ 85016
22  Phone: (602) 264-7101/Fax: (602) 234-0419
rmaysey@warnerangle.com
23  jelwell@warnerangle.com

24  *Counsel for the Classes and Attorneys for Individual and*
*Representative Plaintiffs Cung Le, Nathan Quarry, Jon*
25  *Fitch, Luis Javier Vazquez, Brandon Vera, and Kyle*
*Kingsbury*
26

27

28

PLAINTIFF QUARRY'S OPPOSITION TO ZUFFA'S MOTION FOR PARTIAL SUMMARY JUDGMENT

LAW OFFICE OF FREDERICK S. SCHWARTZ
Frederick S. Schwartz (admitted *pro hac vice*)
15303 Ventura Boulevard, #1040
Sherman Oaks, CA 91403
Phone: (818) 986-2407/Fax: (818) 995-4124
fred@fredschwartzlaw.com

*Attorney for Plaintiffs*

SPECTOR ROSEMAN KODROFF & WILLIS, P.C.
Jeffrey J. Corrigan (admitted *pro hac vice*)
William G. Caldes (admitted *pro hac vice*)
1818 Market Street – Suite 2500
Philadelphia, PA 19103
Phone: (215) 496-0300/Fax: (215) 496-6611
jcorrigan@srkw-law.com
wcaldes@srkw-law.com

*Attorneys for Plaintiffs*

Case No.: 2:15-cv-01045-RFB-(PAL)

PLAINTIFF QUARRY'S OPPOSITION TO ZUFFA'S MOTION FOR PARTIAL SUMMARY JUDGMENT