Joseph R. Saveri (State Bar No. 130064)
JOSEPH SAVERI LAW FIRM, INC.
555 Montgomery Street, Suite 1200
San Francisco, California 94111
Telephone: (415) 500-6800
Facsimile:  (415) 395-9940
jsaveri@saverilawfirm.com

Richard A. Koffman (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., N.W., Suite 500, East Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile:  (202) 408 4699
rkoffman@cohenmilstein.com

Eric L. Cramer (*pro hac vice*)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile:  (215) 875-4604
ecramer@bm.net

*Attorneys for Individual and Representative Plaintiffs*
*Cung Le, Nathan Quarry, and Jon Fitch, Bradon Vera, Luis*
*Javier Vazquez, and Kyle Kingsbury*

[Additional counsel appear on signature page]

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>Defendant. | Case No.: 2:15-cv-01045 RFB-(PAL)<br><br>**PLAINTIFFS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THEIR OPPOSITION TO ZUFFA, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Case No.: 2:15-cv-01045 RFB-(PAL)

**PLAINTIFFS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THEIR OPPOSITION TO ZUFFA'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 56-1, Plaintiffs submit these Undisputed Material Facts, together with reference to supporting evidence in support of Plaintiffs' Opposition to Zuffa's Motion for Partial Summary Judgment.

**I.   Plaintiffs' Response to Zuffa's Statement of Undisputed Material Facts**

1. Undisputed.

2. Undisputed.

3. Disputed. Neither the specific uses to which Zuffa would put fighter identity rights (including Plaintiff Quarry's), nor the compensation they would (or would not) receive, are enumerated in the Promotional Agreement, Merchandise Rights Agreements, or Bout Agreements (the "Agreements"). As part of its ongoing anticompetitive scheme, Zuffa continued to exploit Plaintiff Quarry's identity rights at compensation below competitive levels many years after the Agreement was executed, including during and throughout the limitations period (i.e., after December 16, 2014). Quarry Decl. ¶¶ 6-18; Weiler Decl. Exs. 2, 5-13, 16-17, 19-21; Quarry Decl. Ex. 1.

Zuffa entered into multiple agreements that granted its business partners the right to use an athlete's identity—including Plaintiff Quarry's—after December 16, 2014. For example, Zuffa granted Topps the right to use Plaintiff Quarry's identity in 2011, and granted Reebok the right to do so in 2014. Weiler Decl. Exs. 15, 18.

4. Undisputed. Zuffa was able to extract such Identity rights at compensation below competitive levels due to, and as part of, its ongoing anticompetitive scheme. CAC ¶¶ 3, 22, 34, 90-92, 107, 109-34, 151.

5. Undisputed, though immaterial. Plaintiffs do not dispute that Plaintiff Quarry entered into the Promotional and Ancillary Rights Agreement on October 5, 2004.

Plaintiffs do not allege that they were harmed by any one contract by itself, but rather that Zuffa's contracts collectively, together with the other aspects of the ongoing anticompetitive scheme, afforded Zuffa the ability to foreclose competition, and thereby enhance its monopsony power, such that it was able to extract identity rights from each class member at uncompetitive prices, and then continue to exploit those rights during the limitations period.

Zuffa suppressed the compensation Plaintiff Quarry received for his Identity rights by engaging in a multifaceted scheme in violation of Section 2 of the Sherman Act that included the use of exclusive fighter contracts, the acquisition of rivals, and threats to fighters and rivals to acquire monopsony power in the market for "Elite Professional MMA Fighter Services." Consolidated Amended Antitrust Class Action Complaint ("CAC") ¶¶ 109-134. Zuffa used this monopsony power to artificially under-compensate the proposed Class of MMA Fighters such as Plaintiff Quarry for use of their images and likenesses. CAC ¶¶ 3, 22, 34, 92, 107, 151.

6. Undisputed (but see Response No. 4, supra). Immaterial (see Response No. 5, supra).

7. Undisputed (but see Response No. 4, supra). Immaterial (see Response No. 5, supra).

8. Undisputed (but see Response No. 4, supra). Immaterial (see Response No. 5, supra).

9. Undisputed (but see Response No. 4, supra). Immaterial (see Response No. 5, supra).

10. Undisputed (but see Response No. 4, supra). Immaterial (see Response No. 5, supra).

11. Undisputed (but see Response No. 4, supra). Immaterial (see Response No. 5, supra).

12. Disputed (see Response No. 3, supra). Neither the uses of Plaintiff Quarry's identity rights, nor the compensation he would receive, are enumerated in the 2004 Promotional Agreement. Zuffa was able to extract such Identity rights at compensation below competitive levels due to, and as part of, its ongoing anticompetitive scheme (see Response No. 4, supra).

13. Undisputed (but see Response No. 4, supra). Immaterial (see Response No. 5, supra).

14. Disputed (see Response No. 3, supra). Neither the uses of Plaintiff Quarry's identity rights, nor the compensation he would receive, are enumerated in the 2005 Promotional Agreement. Zuffa was able to extract such Identity rights at compensation below competitive levels due to, and as part of, its ongoing anticompetitive scheme (see Response No. 4, supra).

15. Undisputed (but see Response No. 4, supra). Immaterial (see Response No. 5, supra).

16. Undisputed.

17. Undisputed.

18. Undisputed (but see Response No. 4, supra). Immaterial (see Response No. 5, supra).

19. Disputed (see Response No. 3, supra). Neither the uses of Plaintiff Quarry's identity rights, nor the compensation he would receive, are enumerated in the 2005 Promotional Agreement. Further,

Zuffa was able to extract such Identity and Ancillary rights at compensation below competitive levels due to, and as part of, its ongoing anticompetitive scheme (see Response No. 4, supra).

20. Undisputed.

21. Undisputed (but see Response No. 4, supra). Immaterial (see Response No. 5, supra).

22. Undisputed (but see Response No. 4, supra). Immaterial (see Response No. 5, supra).

23. Undisputed that Quarry's last Bout Agreement with Zuffa was executed on January 13, 2010 before Quarry's March 31, 2010 bout, but otherwise disputed. Zuffa engaged in an ongoing and continuing anticompetitive scheme of which the successive Promotional Agreements were a part. See Response No. 5, supra.

24. Undisputed.

25. Disputed. Incomprehensible, calls for a legal conclusion, and otherwise immaterial. See Response No. 5, supra.

26. Disputed (see Response No. 3, supra). Neither the uses of Plaintiff Quarry's identity rights, nor the compensation he would receive, are enumerated in the 2010 Bout Agreement. Further, Zuffa was able to extract such Identity and Ancillary rights at compensation below competitive levels due to, and as part of, its ongoing anticompetitive scheme (see Response No. 4, supra).

27. Undisputed.

28. Undisputed that the January 13, 2010 Bout Agreement was Quarry's final bout agreement with Zuffa, but otherwise disputed. Plaintiffs allege an ongoing and continuing scheme of which the successive Promotional Agreements were a part. Immaterial. See Response No. 5, supra. Further, Zuffa was able to extract such Identity and Ancillary rights at compensation below competitive levels due to, and as part of, its ongoing anticompetitive scheme (see Response No. 4, supra).

29. Disputed (see Response No. 3, supra). Neither the uses of Plaintiff Quarry's identity rights, nor the compensation he would receive, are enumerated in the 2010 Bout Agreement. Further, Zuffa was able to extract such Identity and Ancillary rights at compensation below competitive levels due to, and as part of, its ongoing anticompetitive scheme (see Response No. 4, supra).

30. Undisputed, though immaterial (see Response No. 5, supra). Zuffa was able to extract such Identity and Ancillary rights at compensation below competitive levels due to, and as part of, its ongoing anticompetitive scheme (see Response No. 4, supra).

31. Disputed (see Response No. 3, supra). Neither the uses of Plaintiff Quarry's identity rights, nor the compensation he would receive, are enumerated in the Merchandise Rights Agreement. Further, Zuffa was able to extract such Identity and Ancillary rights at compensation below competitive levels due to, and as part of, its ongoing anticompetitive scheme (see Response No. 4, supra).

32. Undisputed, though immaterial (see Response No. 5, supra).

33. Disputed. Incomplete.

34. Undisputed (but see Response No. 4, supra). Immaterial (see Response No. 5, supra).

35. Undisputed (but see Response No. 4, supra).

36. Disputed (see Response No. 3, supra). Neither the uses of Plaintiff Quarry's identity rights, nor the compensation he would receive, are enumerated in the Merchandise Rights Agreement. Further, Zuffa was able to extract such Identity and Ancillary rights at compensation below competitive levels due to, and as part of, its ongoing anticompetitive scheme (see Response No. 4, supra).

37. Undisputed (but see Response No. 4, supra).

38. Disputed. Plaintiffs allege an ongoing and continuing anticompetitive scheme of which the successive Promotional Agreements with UFC fighters were a part. See Response No. 5, supra. Further, Zuffa was able to extract such Identity and Ancillary rights at compensation below competitive levels due to, and as part of, its ongoing anticompetitive scheme (see Response No. 4, supra).

39. Undisputed that Zuffa made a payment of $2,500 to Plaintiff Quarry on or about March 5, 2009, but otherwise disputed. There was no agreement or understanding that any payment made by Zuffa was an "advance" against future uses of Plaintiff Quarry's image or likeness. Quarry Decl. ¶ 22.

40. Undisputed (but see Response No. 4, supra).

41. Undisputed that Quarry, along with others, filed his initial Complaint in this matter on December 16, 2014, and also that the last agreement executed between Zuffa and Quarry was executed before that date, but otherwise disputed. Plaintiffs allege an ongoing and continuing scheme of which the successive Promotional Agreements were a part. See Response No. 5, supra.

42. Disputed (see Response No. 3, supra).

43. Undisputed.

44. Undisputed, though incomplete. Plaintiff Quarry was featured in a series of UFC trading cards created by Topps, including the "2010 Topps UFC Knockout" series that was first published in February 2011. Weiler Decl. Ex. 16. Plaintiff Quarry's image also first appeared in the "2013 Topps UFC Knockout" series as part of the "Ultimate Knockout Relics Set." Weiler Decl. Ex. 17.

45. Disputed. As part of its ongoing anticompetitive scheme, Zuffa took multiple overt acts to exploit Quarry's Identity Rights since December 16, 2010, when it used Plaintiff Quarry's image or likeness without fair compensation. Each use of Plaintiff Quarry's image or likeness after December 16, 2010 is a use of his Identity Rights for which he has not been compensated. Quarry Decl. ¶¶ 6-18; Weiler Decl. Exs. 2, 5-13, 16-17, 19-21; Quarry Decl. Ex. 1.

46. This is not a fact that must be admitted or denied as the Complaint speaks for itself about Quarry's claims.

47. This is not a fact that must be admitted or denied as the Complaint speaks for itself about Quarry's claims.

48. Undisputed.

49. This is not a fact that must be admitted or denied as the Complaint speaks for itself about Quarry's claims, but in any event it is disputed.

Plaintiff Quarry does not contend he was harmed by any one contract by itself, but rather that Zuffa's contracts collectively, together with the other aspects of Zuffa's ongoing anticompetitive scheme, afforded Zuffa the monopsony power to extract identity rights from him at uncompetitive prices, and then continue to take overt acts to exploit those rights during the limitations period.

Plaintiff Quarry alleges that Zuffa suppressed the compensation he received for his identity rights by engaging in a multifaceted scheme in violation of Section 2 of the Sherman Act that included the use of exclusive fighter contracts, the acquisition of rivals, and threats to fighters and rivals to acquire monopsony power in the market for "Elite Professional MMA Fighter Services." CAC ¶¶ 109-134. Zuffa used this monopsony power to artificially under-compensate the proposed Class of MMA

Fighters such as Plaintiff Quarry for use of their images and likenesses. CAC ¶¶ 3, 22, 34, 92, 107, 151; Quarry Decl. ¶ 22

50. Disputed. The cited testimony states only that, (a) Plaintiff Quarry realized "how little control [he] had over [his] own work and likeness" before his last fight; (b) Plaintiff Quarry's layman understanding of the reason he had little control over his own work and likeness "was, at least in part, due to the contracts [he] had interred [sic]";[1] and, (c) that Plaintiff Quarry spoke about his concern that his likeness rights were being used by the UFC before his last fight. The cited testimony says nothing about Plaintiff Quarry's knowledge of the scope and duration of the identity rights that Zuffa expropriated in the agreements. Zuffa Mot., Ex. G (Quarry Dep. 120:11-19, 121:25-122:12).

51. Disputed. Plaintiff Quarry does not dispute that he was aware that Zuffa had been artificially under-compensating him for the use of his identity rights as of March 2010 as a result and part of Zuffa's ongoing anticompetitive scheme.

As part of its ongoing anticompetitive scheme, Zuffa took multiple overt acts to exploit Plaintiff Quarry's Identity Rights after March 2010 when it exploited Plaintiff Quarry's image or likeness for compensation at below competitive levels. Each such exploitation of Plaintiff Quarry's image or likeness is a use of his Identity Rights for which he has not been compensated at competitive levels due to Zuffa's ongoing scheme. Plaintiff Quarry was not aware of the scope or nature of Zuffa's future uses of his likeness or image. Quarry Decl. ¶¶ 6-18; Weiler Decl. Exs. 2, 5-13, 16-17, 19-21; Quarry Decl. Ex. 1.

52. Undisputed, though immaterial (see Response No. 5, supra). Additionally, as part of its ongoing anticompetitive scheme, Zuffa engaged in multiple overt acts to exploit Plaintiff Quarry's image or likeness since December 16, 2010. Quarry Decl. ¶¶ 6-18; Weiler Decl. Exs. 2, 5-13, 16-17, 19-21; Quarry Decl. Ex. 1.

53. Disputed (see Response No. 3, supra). As part of its ongoing anticompetitive scheme, Zuffa took multiple overt acts to exploit Plaintiff Quarry's Identity Rights after March 2010 when it used Plaintiff Quarry's image or likeness for compensation at below competitive levels. Each such exploitation of Plaintiff Quarry's image or likeness is a use of his Identity Rights for which he has not

---

[1] Plaintiffs stand by their objection that this question calls for a legal conclusion.

been compensated at competitive levels due to Zuffa's ongoing scheme. Quarry Decl. ¶¶ 6-18; Weiler Decl. Exs. 2, 5-13, 16-17, 19-21; Quarry Decl. Ex. 1. As part of its ongoing anticompetitive scheme, Zuffa took overt acts to exploit Plaintiff Quarry's identity rights when it contracted with Topps and Reebok in 2011 and 2014 to license them Plaintiff Quarry's Identity Rights. Weiler Decl. Exs. 15, 18.

## II. Plaintiffs' Statement of Undisputed Material Facts And Supporting Evidence.

54. Plaintiff Quarry alleges that Zuffa used anticompetitive conduct to establish and maintain its dominance in the market for purchasing the services and identity rights of Elite MMA Fighters, including Plaintiff Quarry. CAC ¶¶ 5, 109-134.

55. Plaintiff Quarry alleges that Zuffa acquired monopsony power in the market for "Elite Professional MMA Fighter Services" by engaging in a series of anticompetitive actions, including (a) entering long-term, exclusive contracts with Elite MMA Fighters that effectively blocked the vast majority from fighting for rival promotions (CAC ¶¶ 109-114); (b) threatening or otherwise impairing other MMA promoters, sponsors and fighters who worked with or considered working with the UFC's potential rivals (*Id.* ¶¶ 116-119); (c) entering into exclusive agreements with sponsors and venues (*Id.* ¶¶ 120-127); and (d) acquiring multiple rival promotion companies that Zuffa had weakened through the foregoing conduct. *Id.* ¶¶ 129-134. As a result of this ongoing anticompetitive Scheme, Zuffa is the "only game in town" in the relevant markets. *Id.* ¶¶ 5, 109-134.

56. Plaintiff Quarry alleges that because of the monopsony power Zuffa acquired and maintained through the challenged anticompetitive scheme, Plaintiff Quarry and other members of the proposed Identity Class lacked the ability to "turn to alternative MMA Promoters to earn competitive compensation" for their identity rights. CAC ¶ 90.

57. Plaintiff Quarry alleges that Zuffa uses its monopsony power to "require UFC Fighters to enter into restrictive contracts," "expropriate the rights to UFC Fighters' Identities in perpetuity for little or no compensation (which is below competitive levels)," and "expropriate the Identities and deprive UFC Fighters of competitive levels of payment for the exploitation of their Identities in UFC Licensed Merchandise and/or Promotional Materials licensed or sold by the UFC or its licensees." CAC ¶ 91.

58. Plaintiff Quarry alleges that Zuffa used the monopsony power it acquired and maintained through the ongoing anticompetitive scheme to take multiple overt acts to artificially under-compensate the proposed Identity Class, including Plaintiff Quarry, for use of their images and likenesses. CAC ¶¶ 3, 22, 34, 92, 107, 151.

59. Zuffa initiated its Fight Pass internet subscription service in December 2013. Weiler Decl. Ex. 3 (Zelaznik Deposition Transcript at 17:11-12), Quarry Decl. ¶ 8.

60. Through Fight Pass, Zuffa makes available on the internet to consumers, for payment, recordings of past MMA bouts from the UFC's own past events and also of MMA events put on by other MMA promoters. Weiler Decl. Ex. 3 (Zelaznik Depo. Tr. at 14:23-15:12, 33:8-24, 68:22-69:4); Weiler Decl. Ex. 4 (Zelaznik Depo. Ex. 175).

61. Through Fight Pass, which consumers access through Zuffa's website, Zuffa charges consumers a subscription fee. Fight Pass was profitable and generated millions of dollars in revenue for Zuffa. Weiler Decl. Ex. 3 (Zelaznik Depo. Tr. at 69:20-70:2, 71:2-4, 112:21-113:1).

62. Well after December 16, 2010, Zuffa made available for purchase by consumers each of Plaintiff Quarry's fights in the UFC, and one of Plaintiff Quarry's fights with "Gladiator Challenge 14," on Fight Pass. Weiler Decl. Exs. 1 (Quarry Dep. Tr. at 104:15-17), 5 (Fight Pass Screenshots); Quarry Decl. ¶ 8.

63. Zuffa included a clip of Plaintiff Quarry's fight with Rich Franklin as part of the opening segment of its Pay-Per-View ("PPV") events throughout the limitations period, until at least 2015. Quarry Decl. ¶ 6; Weiler Decl. Ex. 1 (Quarry Depo Tr. at 48:20-23).

64. Zuffa did not provide any compensation to UFC Fighters specifically in connection with Zuffa's exploitation of their images or likenesses in Fight Pass. Weiler Decl. Ex. 3 (Zelaznik Depo. Tr. at 82:15-17, 83:11-13).

65. Zuffa did not provide any compensation to Plaintiff Quarry specifically in connection with any content Zuffa made available on Fight Pass. Weiler Decl. Ex. 1 (Quarry Dep. Tr. at 104:15-17); Quarry Decl. ¶ 8.

66. Zuffa made available and sold videos of Plaintiff Quarry's fights through Amazon, Sony, and Xbox in 2011 and 2014. Weiler Decl. Ex. 6. Plaintiff Quarry was not provided compensation specifically in connection with any of these sales. Quarry Decl. ¶ 9.

67. In January 2012, Zuffa broadcast a video of Plaintiff Quarry's fight with Demian Maia on its website, deeming it the "Submission of the Week." Weiler Decl. Ex. 7. Zuffa did not provide compensation to Plaintiff Quarry specifically in connection with this exploitation of his Identity. Quarry Decl. ¶ 10.

68. Zuffa produced "UFC Unleashed," a program that aired on Spike TV. Plaintiff Quarry was featured in episode Number 102 of "UFC Unleashed," featuring Plaintiff Quarry's victory over UFC Fighter Lodune Sincaid in the finale of Ultimate Fighter Season 1. Although the fight occurred in 2005, this video was published in 2013 to Zuffa's Brazilian language website. Weiler Decl. Exs. 8-9. Zuffa did not provide compensation to Plaintiff Quarry specifically in connection with this publication. Quarry Decl. ¶ 11.

69. Spike TV broadcast Plaintiff Quarry's win over UFC Fighter Shonie Carter in episode Number 107 of "UFC Unleashed." Zuffa posted the content on its website in 2013. Weiler Decl. Ex. 10. Zuffa did not provide compensation to Plaintiff Quarry specifically in connection with making this content available on its website. Quarry Decl. ¶ 11.

70. In November 2013, Zuffa published the "Top 20 Knockouts in UFC History," on Youtube to commemorate the UFC's twentieth anniversary. Weiler Decl. Ex. 2. Zuffa did not provide compensation to Plaintiff Quarry specifically in connection with making this content available online. Quarry Decl. ¶ 7.

71. A photograph of Plaintiff Quarry appears in a story published on March 26, 2013 by UFC called "16 Bizarre Moments in UFC History." Weiler Decl. Ex. 11. Zuffa did not provide compensation to Plaintiff Quarry specifically in connection with this exploitation of his Identity.  Quarry Decl. ¶ 12.

72. On June 10, 2016, Zuffa published a photograph of Plaintiff Quarry's fight with Rich Franklin in a story on its website entitled "Behind the Lens: UFC Photog's Favorite KOs." Weiler Decl. Ex. 12. Zuffa did not provide compensation to Plaintiff Quarry specifically in connection with this exploitation of his Identity. Quarry Decl. ¶ 13.

73. Zuffa licensed to Topps the right to feature Plaintiff Quarry in UFC trading cards created by Topps, including the "2010 Topps UFC Knockout" series that was published in February 2011. Weiler Decl. Exs. 14-16. Zuffa did not provide compensation to Plaintiff Quarry specifically in connection with this exploitation of his Identity. Quarry Decl. ¶¶ 16, 21-22.

74. Zuffa licensed to Topps the right to feature Plaintiff Quarry's image in the "2013 Topps UFC Knockout" series as part of the "Ultimate Knockout Relics Set." Weiler Decl. Exs. 14-15, 17. Zuffa did not provide compensation to Plaintiff Quarry specifically in connection with this exploitation of his Identity. Quarry Decl. ¶¶ 16, 21-22.

75. Zuffa has sold throughout the limitations period and continuing to this day posters autographed by Plaintiff Quarry promoting his title fight in UFC 56 on the "ufcstore.com" website for $999.99 and $1149.99. Weiler Decl. Ex. 13. Zuffa did not provide compensation to Plaintiff Quarry specifically in connection with this exploitation of his Identity. Quarry Decl. ¶ 15.

76. Zuffa licensed fighter identities to Reebok in 2014. Reebok featured Plaintiff Quarry in a series of UFC jerseys that Reebok first made available for sale in 2014. Weiler Decl. Ex. 18; Weiler Decl. Ex. 1 (Quarry Dep. Tr. at 104:16-17). Neither Zuffa nor Reebok compensated Plaintiff Quarry specifically in connection with this exploitation of his Identity. Quarry Decl. ¶ 18.

77. Zuffa licensed fighter identities, including that of Plaintiff Quarry, to Getty Images. Zuffa business records show revenues generated from sales of Getty Images featuring Plaintiff Quarry after December 16, 2010. Weiler Decl. Ex. 19; Quarry Decl. Ex. 1. Zuffa did not provide compensation to Plaintiff Quarry specifically in connection with this exploitation of his Identity. Quarry Decl. ¶¶ 17, 20, 22.

78. Getty Images sells dozens of photographs of Plaintiff Quarry, including a medium resolution photograph of Plaintiff Quarry for $1805. Weiler Decl. Exs. 20-21.

Dated: March 24, 2017

Respectfully Submitted,
JOSEPH SAVERI LAW FIRM, INC.

By:     */s/Matthew S. Weiler*
        Matthew S. Weiler

Joseph R. Saveri (admitted pro hac vice)
Joshua P. Davis (admitted pro hac vice)
Matthew S. Weiler (admitted pro hac vice)
Kevin E. Rayhill (admitted pro hac vice)
555 Montgomery Street, Suite 1210
San Francisco, California 94111
Phone: (415) 500-6800/Fax: (415) 395-9940
jsaveri@saverilawfirm.com
jdavis@saverilawfirm.com
mweiler@saverilawfirm.com
krayhill@saverilawfirm.com

*Co-Lead Counsel for the Classes and Attorneys for Individual and Representative Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Luis Javier Vazquez, Brandon Vera, and Kyle Kingsbury*

COHEN MILSTEIN SELLERS & TOLL, PLLC
Benjamin D. Brown (admitted pro hac vice)
Richard A. Koffman (admitted pro hac vice)
Hiba Hafiz (admitted pro hac vice)
1100 New York Ave., N.W., Suite 500, East Tower
Washington, DC 20005
Phone: (202) 408-4600/Fax: (202) 408 4699
bbrown@cohenmilstein.com
rkoffman@cohenmilstein.com
hhafiz@cohenmilstein.com

*Co-Lead Counsel for the Classes and Attorneys for Individual and Representative Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Luis Javier Vazquez, Brandon Vera, and Kyle Kingsbury*

BERGER & MONTAGUE, P.C.
Eric L. Cramer (admitted pro hac vice)
Michael Dell'Angelo (admitted pro hac vice)
Patrick Madden (admitted pro hac vice)
1622 Locust Street
Philadelphia, PA 19103
Phone: (215) 875-3000/Fax: (215) 875-4604
ecramer@bm.net
mdellangelo@bm.net
pmadden@bm.net

*Co-Lead Counsel for the Classes and Attorneys for Individual and Representative Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Luis Javier Vazquez, Brandon Vera, and Kyle Kingsbury*

11    Case No.: 2:15-cv-01045 RFB-(PAL)

**PLAINTIFFS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THEIR OPPOSITION TO ZUFFA'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP
Don Springmeyer
Nevada Bar No. 1021
Bradley S. Schrager
Nevada Bar No. 10217
Justin C. Jones
Nevada Bar No. 8519
3556 E. Russell Road, Second Floor
Las Vegas, Nevada 89120
(702) 341-5200/Fax: (702) 341-5300
dspringmeyer@wrslawyers.com
bschrager@wrslawyers.com
jjones@wrslawyers.com

*Liaison Counsel for the Classes and Attorneys for Individual and Representative Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Luis Javier Vazquez, Brandon Vera, and Kyle Kingsbury*

WARNER ANGLE HALLAM JACKSON & FORMANEK PLC
Robert C. Maysey (admitted pro hac vice)
Jerome K. Elwell (admitted pro hac vice)
2555 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Phone: (602) 264-7101/Fax: (602) 234-0419
rmaysey@warnerangle.com
jelwell@warnerangle.com

*Counsel for the Classes and Attorneys for Individual and Representative Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Luis Javier Vazquez, Brandon Vera, and Kyle Kingsbury*

LAW OFFICE OF FREDERICK S. SCHWARTZ
Frederick S. Schwartz (admitted pro hac vice)
15303 Ventura Boulevard, #1040
Sherman Oaks, CA 91403
Phone: (818) 986-2407/Fax: (818) 995-4124
fred@fredschwartzlaw.com

*Attorneys for Plaintiffs*

SPECTOR ROSEMAN KODROFF & WILLIS, P.C.
Jeffrey J. Corrigan (admitted pro hac vice)
William G. Caldes (admitted pro hac vice)
1818 Market Street – Suite 2500
Philadelphia, PA 19103
Phone: (215) 496-0300/Fax: (215) 496-6611
jcorrigan@srkw-law.com
wcaldes@srkw-law.com

*Attorneys for Plaintiffs*

**PLAINTIFFS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THEIR OPPOSITION TO ZUFFA'S MOTION FOR PARTIAL SUMMARY JUDGMENT**