WILLIAM A. ISAACSON (*Pro hac vice*)
(wisaacson@bsfllp.com)
STACEY K. GRIGSBY (*Pro hac vice*)
(sgrigsby@bsfllp.com)
NICHOLAS WIDNELL (*Pro hac vice*)
(nwidnell@bsfllp.com)
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
Tel: (202) 237-2727; Fax: (202) 237-6131

RICHARD J. POCKER #3568
(rpocker@bsfllp.com)
BOIES SCHILLER FLEXNER LLP
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Tel: (702) 382-7300; Fax: (702) 382-2755

DONALD J. CAMPBELL #1216
(djc@campbellandwilliams.com)
J. COLBY WILLIAMS  #5549
(jcw@campbellandwilliams.com)
CAMPBELL & WILLIAMS
700 South 7th Street
Las Vegas, Nevada 89101
Tel: (702) 382-5222; Fax: (702) 382-0540

*Attorneys for Defendant* Zuffa, LLC, d/b/a
Ultimate Fighting Championship and UFC

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Cung Le, Nathan Mr. Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>Defendant | No.: 2:15-cv-01045-RFB-(PAL)<br><br>**ZUFFA, LLC'S REPLY TO PLAINTIFFS' OPPOSITION TO ZUFFA'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFF NATHAN QUARRY ON STATUTE OF LIMITATIONS GROUNDS** |

TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

I. Zuffa's Use of Mr. Quarry's Contracted for Identity Rights Is Not An Act in Furtherance of Plaintiffs' Alleged Monopsonization. ........................................2

II. Under Established Ninth Circuit Law, Alleged Underpayments That Result from A Licensing Agreement Must Be Evaluated at The Time The Agreement Was Executed. ........................................................................................................3

III. Plaintiffs' Factual Disputes over The Terms of Mr. Quarry's Agreement Are Irrelevant. ........................................................................................................6

CONCLUSION .....................................................................................................................7

i

ZUFFA REPLY TO PLS' OPP'N TO
PARTIAL SUMM. J. MOT.

Case No.: 2:15-cv-01045-RFB-(PAL)

# TABLE OF AUTHORITIES

## CASES

*Aurora Enters., Inc. v. Nat'l Broad. Co.*,
  688 F.2d 689 (9th Cir. 1982) .................................................................................. 4, 5

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
  603 F.2d 263 (2d Cir. 1979) ................................................................................. 3, 4, 6

*City of Moundridge, Kan. v. Exxon Mobil Corp.*,
  471 F. Supp. 2d 20 (D.D.C. 2007) ............................................................................. 3

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.*,
  370 U.S. 690 (1962) .................................................................................................. 4

*Eichman v. Fotomat Corp.*,
  880 F.2d 149 (9th Cir.1989) ...................................................................................... 4

*In re Buspirone Patent Litig.*,
  185 F. Supp. 2d 363 (S.D.N.Y. 2002) ........................................................................ 5

*In re Multidistrict Vehicle Air Pollution*,
  591 F.2d 68 (9th Cir. 1979) ....................................................................................... 5

*Le v. Zuffa, LLC*,
  No. 215CV01045RFBPAL, 2016 WL 6134520 (D. Nev. Oct. 19, 2016) ................. 3, 6

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*,
  791 F.2d 1356 (9th Cir. 1986) ................................................................................... 6

*Movie 1 & 2 v. United Artists Commc'ns, Inc.*,
  909 F.2d 1245 (9th Cir. 1990) ................................................................................... 3

*O'Bannon v. NCAA*,
  Nos. C 09–1967 CW, C 09–3329 CW, C 09–4882 CW,
  2010 WL 445190 (N.D. Cal. Feb. 8, 2010) ........................................................ 1, 2, 3

*Pace Indus., Inc. v. Three Phoenix Co.*,
  813 F.2d 234 (9th Cir. 1987) ..................................................................................... 1

*Rebel Oil Co. v. Atl. Richfield Co.*,
  51 F.3d 1421 (9th Cir. 1995) ..................................................................................... 6

*Rite Aid Corp. v. Am. Express Travel Related Servs. Co.*,
  708 F. Supp. 2d 257 (E.D.N.Y.2010) ........................................................................ 5

*Russell v. NCAA*,
  No. C 11–4938 CW, 2012 WL 1747496 (N.D. Cal. May 16, 2012) ....................... 2, 3

*Spectrum Sports, Inc. v. McQuillan*,
  506 U.S. 447 (1993) .................................................................................................. 3

ii

ZUFFA REPLY TO PLS' OPP'N TO                         Case No.: 2:15-cv-01045-RFB-(PAL)
PARTIAL SUMM. J. MOT.

*Varner v. Peterson Farms*,
  371 F.3d 1011 (8th Cir. 2004) ............................................................................................... 4

*Witt Co. v. RISO, Inc.*,
  948 F. Supp. 2d 1227 (D. Or. 2013) ..................................................................................... 4

iii

ZUFFA REPLY TO PLS' OPP'N TO                                  Case No.: 2:15-cv-01045-RFB-(PAL)
PARTIAL SUMM. J. MOT.

Defendant Zuffa, LLC ("Zuffa") submits this Reply to Plaintiffs' Opposition to Zuffa's Motion for Partial Summary Judgment as to Plaintiff Nathan Quarry on Statute of Limitations Grounds and seeks judgment in its favor as to all of Plaintiff Quarry's claims on the grounds that his claims are time-barred.

## INTRODUCTION

In contracts executed before the limitations period, Zuffa acquired specific rights to use Mr. Quarry's identity. The question before the Court is whether the later use of those rights and the payment of predetermined licensing fees during the limitations period amount to overt acts that restart the statute of limitations. In the Ninth Circuit, "two elements characterize an overt act which will restart the statute of limitations: 1) It must be a new and independent act that is not merely a reaffirmation of a previous act; and 2) it must inflict new and accumulating injury on the plaintiff." *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 238 (9th Cir. 1987). As a matter of Ninth Circuit law, neither the use of Mr. Quarry's identity rights nor the licensing fees received by Mr. Quarry is a new and independent act that furthers Plaintiffs' monopolization allegation. Plaintiffs have also failed under Ninth Circuit law to allege new and accumulating injury—the compensation Mr. Quarry received was known and foreseeable at the time his agreements with Zuffa were executed. Plaintiffs make three arguments in response, all of which are unpersuasive.

*First,* Plaintiffs rely on Sherman Act Section 1 horizontal agreement cases with ongoing agreements among competitors alleged as violations of Section 1, including *O'Bannon v. NCAA*, Nos. C 09–1967 CW, C 09–3329 CW, C 09–4882 CW, 2010 WL 445190 (N.D. Cal. Feb. 8, 2010) (which Plaintiffs here point out as hopefully significant because Plaintiffs in that case were represented by undersigned counsel). In the Section 1 cases, the alleged conduct was an ongoing agreement and conspiracy (including competitor meetings, agreements, rules, enforcement of agreements, etc.) that furthered the alleged conspiracy, and not a contract entered by an alleged monopolist. Plaintiffs' claim here that each use of Mr. Quarry's identity rights during the limitations period stemming from a contract before the limitations period extends the limitations period differs markedly from an ongoing conspiracy and is insufficient as a matter of law to bring contracts from long ago within the limitations period. If Plaintiffs' argument were accepted, Plaintiffs could make

claims based on contracts entered decades ago so long as the contracts continue to be performed, making a sham of any statute of limitations.

*Second,* Plaintiffs argue that relevant monopolization law supports a conclusion that Zuffa committed continuing overt acts by either (1) harming Mr. Quarry by paying him underpayments during the limitations period for the use of his identity rights or (2) engaging in other conduct during the limitations period that permitted Zuffa to attain or maintain monopsony power.  The use of Mr. Quarry's identity rights and the licensing fees paid to Mr. Quarry do not constitute underpayments during the limitations period because, in the Ninth Circuit, the law is clear that a defendant's receipt of a continuing benefit from a contract executed before the limitations period does not constitute harm or a continuing overt act that tolls the statute of limitations.  Other allegations regarding Zuffa's behavior during the limitations period do not toll the limitations period with respect to Mr. Quarry's claims.  The law is clear that Mr. Quarry's alleged damages must flow from an anticompetitive aspect or effect of Zuffa's alleged behavior.  Because Mr. Quarry alleges he was underpaid as a result of contracts negotiations *before* the limitations period, no harm can flow to him from alleged conduct that occurred *after* those negotiations.

*Third and finally,* Plaintiffs argue that there is a "factual dispute" regarding the interpretation of the contracts.  Regardless of the meaning of the contracts, it is undisputed that (1) any agreements between Zuffa and Mr. Quarry were executed before the limitations period and (2) Zuffa never modified or enforced the agreements during the limitations period.

I.   **Zuffa's Use of** Mr. **Quarry's Contracted for Identity Rights Is Not An Act in Furtherance of Plaintiffs' Alleged Monopsonization.**

Plaintiffs claim that each use of Mr. Quarry's contracted for identity rights amounts to a separate, overt act that restarts the limitations period.  Opp'n at 14-15.  Plaintiffs base this argument on two Sherman Act Section 1 conspiracy cases, *O'Bannon* and *Russell*, which they claim stand for the proposition that expropriation of identity rights can be an overt act that tolls the statute of limitations.  Opp'n at 5, 15-17; *O'Bannon*, 2010 WL 445190 (N.D. Cal. Feb. 8, 2010); *Russell v. NCAA*, No. C 11–4938 CW, 2012 WL 1747496 (N.D. Cal. May 16, 2012). In both *O'Bannon* and *Russell*, the allegations were not limited to the expropriation of the plaintiffs' likeness.  In both

2

cases, plaintiffs alleged that the NCAA and co-conspirators had meetings and entered into agreements (and enforced agreements) during the limitations period that furthered an illegal price fixing and boycott agreement. *O'Bannon*, 2010 WL 445190 at *2, *6 ("O'Bannon alleges that NCAA continues to enter into agreements that allow the use of his image without compensation paid to him."); *Russell*, 2012 WL 1747496 at *3-*4 (plaintiff made same allegations as those in O'Bannon complaint). While those agreements involved the use of O'Bannon's and Russell's likeness, the relevant aspect of the conduct that made it an overt act was the agreement between NCAA and its co-conspirators, not the expropriation of plaintiffs' identity rights.

Mr. Quarry's allegations that he has been inadequately compensated for his identity rights may be evidence of harm, but it is not evidence of an act that furthers the allegation that Zuffa "willfully acquired or maintained its monopoly power through exclusionary conduct." *Le v. Zuffa, LLC*, No. 215CV01045RFBPAL, 2016 WL 6134520, at *3 (D. Nev. Oct. 19, 2016) (internal quotation marks omitted) (quoting *Movie 1 & 2 v. United Artists Commc'ns, Inc.*, 909 F.2d 1245, 1255 (9th Cir. 1990)); *see, e.g., City of Moundridge, Kan. v. Exxon Mobil Corp.*, 471 F. Supp. 2d 20, 42 (D.D.C. 2007) (citing *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 454 (1993)) ("Monopolization and attempted monopolization claims must address the unilateral actions of a single firm"). Unlike the allegations in *O'Bannon* and *Russell*, where a new agreement among conspirators evidenced a Section 1 conspiracy violation, Zuffa's use of Mr. Quarry's identity was merely the use of rights Zuffa believed it had legitimately obtained through its agreement with Mr. Quarry. Plaintiffs concede that this cannot be an act furthering a monopolization claim when they stress that they make no claim that individual agreements between Zuffa and athletes, standing alone, violate the antitrust laws. CAC ¶ 115 ("Nor is any Plaintiff in this matter claiming, as part of this case, on behalf of himself or herself or any proposed class member, that his or her contract, standing alone, violates the antitrust laws").

II.     **Under Established Ninth Circuit Law, Alleged Underpayments That Result from A Licensing Agreement Must Be Evaluated at The Time The Agreement Was Executed.**

Plaintiffs rely on *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979), for

1 the proposition that, each time a price is charged by a monopolist, it may[1] constitute a continuing violation to the extent it amounts to an overcharge that "flows" from anticompetitive conduct before the limitations period. *Id*. at 296-97. In *Berkey Photo*, the court focused on whether agreements negotiating the price during the limitations period tolled the statute of limitations. *Id.* at 295 ("Not until the monopolist actually sets an inflated price and its customers determine the amount of their purchases can a reasonable estimate [of damages] be made"). Mr. Quarry's identity rights case, unlike *Berkey Photo*, relies on agreements negotiated before the limitations period. Plaintiffs argue that Zuffa's use under those contracts of Mr. Quarry's identity amounts to an underpayment for Mr. Quarry's identity rights that flows from Zuffa's alleged anticompetitive conduct. But Plaintiffs' argument attributes the wrong date for when Mr. Quarry's alleged under-compensation accrued. The compensation Mr. Quarry received was determined before the limitations period at the time the contracts were entered.

The Second Circuit in *Berkey* did not address this issue, but the Ninth Circuit and other courts have long recognized that an alleged injury stemming from the benefits of a contract should accrue at the time the contract is entered. *Eichman v. Fotomat Corp.*, 880 F.2d 149, 160 (9th Cir.1989) (rejecting plaintiff's argument that each payment under an allegedly illegal lease contract entered into outside the limitations period was a new injury for the purposes of the statute of limitations); *Aurora Enters., Inc. v. Nat'l Broad. Co.*, 688 F.2d 689, 694 (9th Cir. 1982); *Witt Co. v. RISO, Inc.*, 948 F. Supp. 2d 1227, 1236 (D. Or. 2013) (performance of an alleged illegal contractual tie-in provision executed prior to the limitations period does not satisfy the continuing violation requirements); *Varner v. Peterson Farms*, 371 F.3d 1011, 1019 (8th Cir. 2004) (citing *Eichman*, 880 F.2d at 160) (claim barred by statute of limitations when contract entered into outside of limitations period because "[p]erformance of the alleged anticompetitive contracts during the limitations period

---

[1] The court in *Berkey* illustrated the uncertain nature of the limitations period given its ruling, stating that relying on anticompetitive conduct outside the limitations period is not absolute. "It should not be inferred that this ruling grants antitrust plaintiffs a license to embark on . . . a time-warped fishing expedition. A trial court in its discretion may always 'set a reasonable cut-off date, evidence before which point is to be considered too remote to have sufficient probative value to justify burdening the record with it.'" *Id.* at 296 (quoting *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 710 (1962)).

4

is not sufficient to restart the period"); *Rite Aid Corp. v. Am. Express Travel Related Servs. Co.*, 708 F. Supp. 2d 257, 270 (E.D.N.Y.2010) ("Collecting a contract fee is not a new and independent act"); *In re Buspirone Patent Litig.*, 185 F. Supp. 2d 363, 379 (S.D.N.Y. 2002) (citations omitted) ("such payments are mere consequences of the original Agreement and do not restart the statute of limitations"); *see also In re Multidistrict Vehicle Air Pollution*, 591 F.2d 68, 71 (9th Cir. 1979) ("AMF's position resembles that of a disappointed patron of the theater. When turned away from the theater at eight o'clock because the performance is sold out, his exclusion occurs at eight, not during the performance or when it concludes at eleven o'clock").  Whether licensing fees should be evaluated at the time of the contract was considered by the Ninth Circuit in *Aurora*, which held that "the mere fact that defendants receive a benefit today as a result of a contract executed" before the limitations period "is not enough to restart the statute of limitations." 688 F.2d at 694.

Importantly, the Ninth Circuit noted that, "[a]ny other holding would destroy the function of the statute, since parties may continue indefinitely to receive some benefit as a result of an illegal act performed in the distant past." *Id.* at 694. While Plaintiffs attempt to distinguish the facts in *Aurora*, they cite no case addressing licensing fees or the use of identity rights that supports a contrary approach in a Section 2 monopolization case. Plaintiffs' argument also illustrates the concern articulated by the Court in *Aurora*, because their argument would mean that actions based on contracts, however old, would not be subject to the limitations period so long as they were being performed.

Plaintiffs also rely on a "totality of the circumstances" argument and seek to admonish the Court to abide by the "cardinal rule that the character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts. . . ." Opp'n at 13 (citation and quotation marks omitted).  Here, there is no "conspiracy"; Plaintiffs assert claims of alleged monopolization by a single entity.   Plaintiffs also assert that "the statute of limitations issue" should not be controlled "by class members' own individual contracts." However, assessing the statute of limitations requires just such an assessment because it requires a determination of when and how each plaintiff was injured.

In a monopolization case, the correct calculation of damages requires an assessment of the

5

defendant's monopoly power that is *attributable* to the defendant's anticompetitive conduct. "To show antitrust injury, a plaintiff must prove that his loss flows from an anticompetitive aspect or effect of the defendant's behavior, since it is inimical to the antitrust laws to award damages for losses stemming from acts that do not hurt competition." *Le v. Zuffa, LLC,* No. 215CV01045RFBPAL, 2016 WL 6134520, at *4 (D. Nev. Oct. 19, 2016) (quoting *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995)); *Berkey*, 603 F.2d at 297 ("a purchaser may recover only for the price increment that 'flows from' the distortion of the market caused by the monopolist's anticompetitive conduct"); *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356, 1372 (9th Cir. 1986). Because an assessment of damages in a Section 2 case must be tied to the specific anticompetitive conduct that created the market distortion at the time of the overcharge, Zuffa's actions after Mr. Quarry negotiated his last agreement are not relevant to Mr. Quarry's claims.

### III. Plaintiffs' Factual Disputes over The Terms of Mr. Quarry's Agreement Are Irrelevant.

Plaintiffs also claim that there is a factual dispute over the terms of the contract. Plaintiffs' SUMF at ¶¶ 26, 31 ("Neither the uses of Plaintiff Quarry's identity rights, nor the compensation he would receive, are enumerated in the 2010 Bout Agreement," and "Neither the uses of Plaintiff Quarry's identity rights, nor the compensation he would receive, are enumerated in the Merchandise Rights Agreement"). Regardless of Plaintiffs' interpretation of the relevant contracts at issue, one conclusion is incontrovertible: The only way Plaintiffs' claim can sound in antitrust is if Zuffa and Mr. Quarry agreed to a valid contract in which Mr. Quarry exchanged his identity rights for some form of compensation. Plaintiffs basically concede this in their statement of undisputed facts: "Zuffa was able to extract such Identity rights at compensation below competitive levels due to, and as part of, its ongoing anticompetitive scheme." Because the agreements between Mr. Quarry and Zuffa, whatever their terms, were entered before the limitations period, Plaintiff's claim concerning his identity rights is barred by the limitations period. If Zuffa failed to properly execute such an agreement, then Mr. Quarry may have a different claim that sounds in tort or contract, but he does not have a cognizable claim under the antitrust laws.

**CONCLUSION**

For the reasons set forth above, Defendant Zuffa respectfully submits that summary judgment should be entered against Mr. Quarry and all similarly situated members of the putative Identity Class because their claims are untimely under the governing four-year statute of limitations.

Dated: May 1, 2017

Respectfully Submitted,

BOIES SCHILLER FLEXNER LLP

By: /s/ William A. Isaacson
William A. Isaacson
*Attorneys for Defendant* Zuffa, LLC, d/b/a
Ultimate Fighting Championship and UFC

WILLIAM A. ISAACSON (*Pro Hac Vice*)
(wisaacson@bsfllp.com)
STACEY K. GRIGSBY (*Pro Hac Vice*)
(sgrigsby@bsfllp.com)
NICHOLAS A. WIDNELL (*Pro Hac Vice*)
(nwidnell@bsfllp.com)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave., NW, Washington, DC 20005
Telephone: (202) 237-2727; Fax: (202) 237-6131

RICHARD J. POCKER #3568
(rpocker@bsfllp.com)
BOIES SCHILLER FLEXNER LLP
300 South Fourth St., Ste. 800, Las Vegas, NV 89101
Telephone: (702) 382 7300; Fax: (702) 382 2755

DONALD J. CAMPBELL #1216
(djc@campbellandwilliams.com)
J. COLBY WILLIAMS #5549
(jcw@campbellandwilliams.com)
CAMPBELL & WILLIAMS
700 South 7th Street, Las Vegas, NV 89101
Telephone: (702) 382-5222; Fax: (702) 382-0540

*Attorneys for Defendant* Zuffa, LLC, d/b/a
Ultimate Fighting Championship and UFC

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing **Zuffa, LLC's Reply to Plaintiffs' Opposition to Zuffa's Motion for Partial Summary Judgment as to Plaintiff Nathan Quarry on Statute of Limitations Grounds** was served on May 1, 2017 via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

/s/ Michael Kim

**Michael Kim**, an Employee of Boies Schiller Flexner LLP