# EXHIBIT 2
# FILED UNDER SEAL



April 24, 2017

<u>*Via E-Mail*</u>

Michael Dell'Angelo
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
mdellangelo@bm.net

    Re:   Production of Documents in *Le, et al. v. Zuffa, LLC;*
            *Case No. 2:15-cv-01045-RFB-(PAL), and consolidated cases*

Dear Michael:

    I write in response to Plaintiffs' questions regarding Zuffa's productions of text messages in this matter. As an initial matter, we disagree with your assertion in your April 24 letter regarding any prejudice to Plaintiffs regarding Zuffa's text message productions. Plaintiffs waited eight (8) months after Zuffa produced text messages to raise these issues, and Zuffa promptly investigated Plaintiffs' numerous and seriatim questions. Plaintiffs' dilatory tactics in this regard do not justify further attempts to reschedule depositions. In particular, Plaintiffs' belated attempt to effect a *de facto* unilateral extension of the fact discovery period by threatening to remove Dana White's deposition from the calendar and reschedule it for some time in the future on the basis of any issues in the produced text messages is inappropriate. Zuffa cannot agree to make Mr. White available for a deposition on another date.

    As you know, Zuffa produced text messages to Plaintiffs in July 2016. On April 7, 2017, in response to Plaintiffs' March 2017 request, Zuffa produced the native Excel spreadsheets into which the text messages that were previously produced to Plaintiffs in July 2016 were exported for production. The production of the Excels, which allows Plaintiffs to sort the produced metadata, should address Plaintiffs' questions regarding the way the data was sorted in the original July 2016 production, as well as any concerns regarding content in cells that may have been inadvertently cut off during the TIFFing process.

    With regard to Plaintiffs' concerns about text message threading, Zuffa undertook extensive collections of custodians' personal cell phones in order to preserve and ultimately produce potentially relevant messages. Zuffa's vendors used forensic collection software to preserve and export such data. That software exported the text



Michael Dell'Angelo
April 24, 2017
Page 2

messages in non-threaded format, and Zuffa produced the text messages in that manner. In its initial production of text messages in July 2016, Zuffa produced the text messages sorted by date, which corresponded to the way the data was exported through forensic software and which sought to produce the documents in a reasonably usable form. Following Plaintiffs' March 2017 request for the text messages in Excel format, we reproduced the text messages in Excel. Those Excels allow Plaintiffs to sort the messages by available fields if Plaintiffs prefer that the messages be sorted by a field other than date. In addition, each Excel file corresponds to an individual and his or her phone, thus permitting Plaintiffs to infer that all text messages recovered from that device were sent or received by the phone's owner. Contrary to your assertion, Zuffa was not obligated to produce text messages natively. Indeed, each of the limited number of text messages that Plaintiffs produced to Zuffa was produced as a TIFF image.

We have investigated your additional questions, which are addressed below:

**<u>Dana White's Devices</u>**

Zuffa has produced text messages from two phones for Dana White – an iPhone 4S and an iPhone 6. Both of these phones contain text messages associated with phone number ████████████. In addition to these two phones, Mr. White previously used a Nokia flip phone, which was associated with phone number ████████████. The Nokia flip phone had very limited internal memory, which memory was shared between text messages, contacts, and other functions. As a result, the phone retained a very limited number of messages at any given time, and automatically deleted prior messages to free up space for new incoming messages and information. Due to the memory and technological limitations of the phone, such automatic deletion could not be overridden or disabled. As a result, counsel for Zuffa asked Mr. White to switch — and Mr. White complied with the request — to an iPhone, which could be and was preserved to retain text messages.

Zuffa hired two different forensic consultants to attempt to retrieve messages off of the flip phone, and both were unsuccessful in doing so due to the limitations of the phone. Please note that the Nokia flip phone Mr. White used was released between 2005 and 2006. Although the forensic consultants made several attempts to retrieve data from the Nokia, they concluded that the data was not reasonably accessible and could not be retrieved.

Although he had no obligation to do so, Mr. White stopped using the flip phone and switched to a modern-era smartphone in order to preserve his messages.



Michael Dell'Angelo
April 24, 2017
Page 3

**E-mails as texts**

    In some instances, text messages sent from iPhones are inadvertently sent across an e-mail server.  To the extent text messages were inadvertently sent or received through Nakisa Bidarian's ███████████████ address or Joe Silva's ███████████ account, such messages were preserved and reviewed, to the extent they existed when this litigation commenced, and were produced if they were responsive.  *See, e.g.*, ZFL-1862814, ZFL-1862830, ZFL-1862846, ZFL-1862894, ZFL-1862900, ZFL-1862901, ZFL-1863007, ZFL-1863013, ZFL-1863036, and ZFL-1863045.

    Similarly, the Apple iCloud email address for Dana White, ███████████████ was only used when text messages were inadvertently sent through the Apple account linked to Mr. White's phone number.  To the extent text messages were inadvertently sent or received through Mr. White's ███████████████ account, such messages were preserved and reviewed, to the extent they existed when this litigation commenced, and were produced if they were responsive.  *See, e.g.*, ZFL-1857756 (produced from Dana White's phone) and ZFL-1881792 (identical message produced from Joe Silva's phone and sent to ███████████████).

**Missing Fields**

    As addressed above, at Zuffa's direction, Zuffa's vendors used forensic collection software to collect and process text messages from custodians' cell phones.  In some instances, certain data was unavailable for export.  For example, the custodians' cell phone number was unavailable for export in certain of the collections, resulting in a blank field for the custodian's cell phone number.  Despite efforts to do so, our vendor was unable to export certain of the data in a way that populated the missing field containing the custodian's cell phone number.  To the extent such information was available, it was produced to Plaintiffs.

    With regard to the limited number of entries where there is no message in the "Text" field, we have confirmed that those fields were blank as collected.

    Finally, other blank fields exist because Zuffa collected, out of an abundance of caution, text messages contained in the deleted space of the custodians' phones.  For example, although the custodians' cell phones were not subject to a legal hold prior to the commencement of this litigation, Zuffa's vendor retrieved pre-litigation deleted text messages from custodians' cell phones if such messages were stored on the phone.  Such



Michael Dell'Angelo
April 24, 2017
Page 4

text messages, such as Sean Shelby's text messages at ZFL-1897294, were sent or received prior to commencement of this action and, therefore, prior to the custodians' obligations to preserve their text messages. Nonetheless, Zuffa's vendor retrieved the available data from the deleted files and Zuffa produced such available data for responsive text messages. Because the data was in the deleted space, however, the recovered data was not always fully available. Zuffa produced the data that its vendor was able to retrieve and restore.

### Text Message Availability

In some instances, certain text messages that were sent and received between custodians may have been produced only from one (or more) custodians' files. Prior to the commencement of this action, the custodians' cell phones were not subject to a legal hold. As a result, some custodians may have deleted text messages from their phones while others retained some or all of their text messages. For example, Lorenzo Fertitta retained certain text messages dating back to 2012. To the extent such messages were responsive, Zuffa produced them. Other custodians routinely deleted text messages prior to commencement of this action and, therefore, their messages were unavailable for collection. As described previously, if their deleted messages were accessible through forensic collection tools, Zuffa's vendors collected and recovered the available data.

There appear to be a limited number of instances where text messages sent or received after the commencement of the litigation were not produced from all of the involved custodians' phones. Zuffa and its employees engaged in best efforts and invested significant amounts of time and resources to retain and preserve all potentially relevant documents after the commencement of the litigation. In a limited number of circumstances, text messages may have been inadvertently deleted or Zuffa's vendors were unable to retrieve certain text messages from custodians' phones. We are continuing to investigate the limited number of times this may have occurred, and will get back to you shortly.

### Text Messages Dated After June 30, 2015

Plaintiffs also allege that there is a "gap" in Zuffa's text messages after June 30, 2015. As addressed in my previous correspondence on April 14, Zuffa did not produce text messages (except with regard to a few inadvertently produced messages) dated after June 30, 2015 because the parties agreed to a June 30, 2015 cut-off date for collection of documents. (See Dkt 199: "The parties agree that the cut-off date for the end of the relevant time period for documents and information to be searched and produced is June



Michael Dell'Angelo
April 24, 2017
Page 5

30, 2015." See also 11/17/2015 Status Conference Transcript at 20: "THE COURT: Right. So you want a uniform time period of January 1, 2005, through June 30th of 2015 for all categories of documents aside from the fighter contracts?  MR. DELL'ANGELO: That's correct, Your Honor, with the -- with the exception of a few instances where we've reached agreement.")

                                            Very truly yours,

                                            Marcy Norwood Lynch