# EXHIBIT 22
## FILED UNDER SEAL



April 29, 2017

**Via Electronic Mail**

Michael Dell'Angelo
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
mdellangelo@bm.net

      Re:    Production of Documents and Deposition Scheduling in *Le, et al. v. Zuffa, LLC*; Case No. 2:15-cv-01045-RFB-(PAL), and consolidated cases

Dear Mr. Dell'Angelo:

    I write to follow up on the issues discussed during our meet and confer conferences on April 25, 2017 and April 26, 2017 and to address your subsequent e-mails dated April 25, 2017 and April 26, 2017. We have worked to address all of the issues we discussed on these calls and believe we are in a position to resolve most of the outstanding issues.

**Custodian of Records Deposition**

    In response to your request for a custodian of records deposition, we have designated an individual who will serve as the custodian of records designee. Our document custodian for the deposition Plaintiffs requested will be Jeff Quinn of IMG  Mr. Quinn is available for a deposition the week of May 22, as well as May 29 and May 30, which you indicated are dates that you are available to take the deposition. Mr. Quinn works in Las Vegas, and we would appreciate having his deposition take place at Boies Schiller Flexner LLP's Las Vegas office.

**Production of Responsive Messages from Cellular Phones**

    As discussed on our April 26 call, we have been working to determine whether we can extract text messages from the cellular phones at issue with telephone numbers ending in ▇▇▇▇ and ▇▇▇▇, and whether we are willing to allow Plaintiffs to examine the phone with the number ending in ▇▇▇▇

BSF

As we discussed during our meet and confer on April 26, we disagree with your statement that "Zuffa knew all along" that the phones with numbers ending in [redacted] and -[redacted] contained potentially responsive text message data belonging to Mr. White. As part of its investigation and collection of documents and data, Zuffa sought to identify devices that its custodians and potential custodians used for Zuffa-related business purposes. Despite Zuffa's reasonable investigation, neither the [redacted] nor [redacted] phones were identified as containing information that was potentially relevant to the litigation. When Plaintiffs raised questions regarding these phones, we investigated these issues, as well as the other issues Plaintiffs raised in their e-mails, in order to provide accurate answers to Plaintiffs' numerous questions. We disagree with your accusation that "much if not all of which answers were known to Zuffa long before Plaintiffs even asked" particularly where, as here, personal cell phone devices may have been used from time to time for business purposes. Zuffa's substantial collection and production of text messages from a variety of devices from a large number of custodians, at great cost and personal intrusion to its employees, belies Plaintiffs' accusations – which Plaintiffs waited eight months to raise – of impropriety.

***Mr. White's Flip Phone,*** [redacted]

Zuffa is willing to permit a vendor of Plaintiffs' choice to examine and attempt to extract messages from the "flip" phone with a telephone number ending in [redacted] that belonged to Dana White. As we told you in a prior letter and during the meet and confer conferences, Zuffa issued a litigation hold in December 2014 and collected this phone on January 8, 2015. The [redacted] phone is a Nokia 6101 "flip" phone that had only limited memory. In an attempt to extract data from this phone, Zuffa previously hired two different vendors, but both vendors were unable to extract messages and thereafter informed Zuffa that text message extraction was not possible using the technology at their disposal. We are puzzled by your statement that Zuffa has represented to the Court that it produced the text messages from the [redacted] number. In the January 26, 2016 status conference, Zuffa accurately represented to the Court that it had collected over 100,000 text messages. Zuffa made no representations as to its ability to extract data from any particular custodian's cell phone. It was not until Zuffa attempted to extract data from the [redacted] cell that it learned that the texts from the Nokia flip phone were inaccessible.

Zuffa will allow a third vendor access to the [redacted] phone to try to get messages from its limited memory. If Plaintiffs wish to pursue this option, we propose that the parties decide on a protocol that will permit a consultant of Plaintiffs' choice to attempt to extract text messages from the [redacted] phone but, if the extraction attempt is successful, that Plaintiffs will provide Zuffa with the ability to review those messages for privilege and responsiveness prior to review by or production to Plaintiffs. Because that phone may contain Mr. White's personal text messages, Plaintiffs are not entitled to review such



Michael Dell'Angelo
April 28, 2017
Page 3

messages prior to production and Plaintiffs' vendor may not provide any extracted messages to Plaintiffs or review substantively the content of such messages. To be clear, Zuffa is ready and willing to produce to Plaintiffs extracted text messages from the ▮ phone, but only to the extent that such messages are responsive and not privileged.

Finally, as neither of our two vendors was able to extract any text messages from the ▮ phone, we have no information regarding the possibility or feasibility of collecting messages by conversation (threading). If Plaintiffs decide to select a vendor for the physical inspection of this phone, we will discuss any threading issues that arise with Plaintiffs and that vendor.

### The ▮ Cellular Phone

As I stated on our April 26 call, Zuffa has located and secured the cellular telephone with the phone number ending ▮. Zuffa has already hired a vendor to extract text messages from the ▮ device and will endeavor to produce non-privileged, responsive text messages, if any, by Monday, May 15.

We are still in the process of determining whether our vendor can extract text messages in a manner that would permit them to be produced in threaded format. I will inform you by Thursday, May 4 if a production in Plaintiffs' requested format is possible.

### The ▮ Cellular Phone

After receiving your letter, we have worked with Mr. White and Zuffa's IT Department to determine whether Mr. White used the cell phone ending in the digits ▮ and if so, whether this telephone has been preserved. As we discussed in our meet and confer conference, Zuffa employees received a litigation hold letter in December 2014. At that time, the ▮ phone was not identified as one of Mr. White's Zuffa phones that would be subject to the litigation hold. Out of an abundance of caution and based on the question raised in your letter, we began to search for this telephone once it appeared that other custodians had responsive text messages that were sent to this telephone number. At this time, we are attempting to locate the physical cell phone associated with the telephone number ending in ▮ We are continuing to investigate this issue and will provide you with an update in short order.

**E-mail Addresses Identified in Zuffa's Text Message Productions**

During our April 26 call, we confirmed that the e-mail address produced in text messages for Joe Silva, ▮ was not used for UFC or Zuffa-related purposes. We are still seeking to confirm that all the custodians' email addresses, such as



Michael Dell'Angelo
April 28, 2017
Page 4

███████████████ and ███████████████ do not have any additional text messages and emails beyond what were already produced.  We will provide an update on this issue by Thursday, May 4.

**<u>Rescheduling Mr. White's Deposition</u>**

In our April 26, 2017 meet and confer, you requested that Zuffa agree to reschedule Mr. White's deposition, which was originally noticed on Tuesday, May 2. You also indicated that, subject to reviewing any additional text messages produced, that you may be ready to take Mr. White's deposition approximately one week after we produce all reasonably accessible and responsive text messages from the ████, and, if possible, the ████ and ████ devices.  I will have a much better sense of the potential volume of production following our review of any text messages that may be extracted from the ████ phone.

Regards,

*Stacey Grigsby*

Stacey K. Grigsby