# EXHIBIT G
# Declaration of Marcy Norwood Lynch

WILLIAM A. ISAACSON (*Pro hac vice*)
(wisaacson@bsfllp.com)
STACEY K. GRIGSBY (*Pro hac vice*)
(sgrigsby@bsfllp.com)
NICHOLAS WIDNELL (*Pro hac vice*)
(nwidnell@bsfllp.com)
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
Tel: (202) 237-2727; Fax: (202) 237-6131

RICHARD J. POCKER #3568
(rpocker@bsfllp.com)
BOIES SCHILLER FLEXNER LLP
300 South Fourth Street, Suite 800
Las Vegas, Nevada 89101
Tel: (702) 382-7300; Fax: (702) 382-2755

DONALD J. CAMPBELL #1216
(djc@campbellandwilliams.com)
J. COLBY WILLIAMS  #5549
(jcw@campbellandwilliams.com)
CAMPBELL & WILLIAMS
700 South 7th Street
Las Vegas, Nevada 89101
Tel: (702) 382-5222; Fax: (702) 382-0540

*Attorneys for Defendant* Zuffa, LLC, d/b/a
Ultimate Fighting Championship and UFC

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Cung Le, Nathan Mr. Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>Defendant | No.: 2:15-cv-01045-RFB-(PAL)<br><br>**DECLARATION OF MARCY NORWOOD LYNCH IN SUPPORT OF ZUFFA, LLC'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DEFENDANT TO PRODUCE A LOG OF COMMUNICATIONS FOR DANA WHITE'S DISCOVERABLE TELEPHONE NUMBERS AND ELECTRONIC COMMUNICATION DEVICES AND DIRECTING DEFENDANT TO SUBMIT AN INVENTORY OF ELECTRONIC COMMUNICATION DEVICES (ECF No. 395)** |

I, Marcy Norwood Lynch, declare as follows:

1. I am a member in good standing of the bars of the states of Florida and New York. I am admitted pro hac vice to practice before this Court. I am Counsel in the law firm Boies Schiller Flexner LLP ("BSF"), counsel for Zuffa, LLC ("Zuffa") in the above captioned action in the U.S. District Court for the District of Nevada, *Le et al. v. Zuffa, LLC*, No. 2:15-cv-01045-RFP-PAL.

2. I make this declaration in support of Zuffa's Opposition to Plaintiffs' Motion to Compel Defendant to Produce a Log of Communications for Dana White's Discoverable Telephone Numbers and Electronic Communication Devices and Directing Defendant to Submit an Inventory of Electronic Communication Devices and Related Documents (ECF No. 395).

3. Except where otherwise stated, based on my discussions with employees at Zuffa and my review of the files, records, and communications in this case, I have personal knowledge of the facts set forth in this Declaration and, if called to testify, could and would testify competently to those facts under oath.

4. Plaintiffs filed this action on December 16, 2014 in the U.S. District Court for the Northern District of California and Zuffa was served with the Complaint in this action on December 18, 2014.

5. On December 18, 2014, Zuffa's then-Chief Legal Officer Kirk Hendrick sent a litigation hold and mandatory document preservation notice to all Zuffa employees ("Mandatory Preservation Notice"). The Mandatory Preservation Notice instructed all Zuffa employees to retain and preserve all documents and electronically stored information.

6. As a Zuffa employee, Dana White received a copy of the Mandatory Preservation Notice instructing him to retain and preserve all documents and electronically stored information.

7. During the course of this litigation, in addition to the December 18, 2014 Mandatory Preservation Notice, Zuffa issued updated mandatory preservation notices to certain Zuffa employees in February 2015, October 2015, and August 2016.

8. Zuffa chose to retain BSF and Campbell & Williams as counsel shortly after the filing of this lawsuit. Both law firms remain counsel of record for Zuffa.

9. In the first week of January 2015, I, along with others from BSF, worked to select and engage an e-discovery vendor with forensic expertise in extracting and retaining text messages from cellular telephones.

10. In the first and second weeks of January 2015, I worked with other BSF attorneys, Mr. Hendrick, and other Zuffa employees to compile a list of cellular phones used by potential document custodians in order to identify cellular phones and other portable devices for preservation and collection of text message data and other information.

11. On January 8, 2015, Mr. White was instructed by Mr. Hendrick and then-counsel for Zuffa, John Cove, to immediately stop using the Nokia 6101 "flip phone" with the phone number ending in -20 ("-20 Flip Phone"). Mr. White was instructed to stop using the -20 Flip Phone in part because of the phone's limited memory and storage capacity.

12. Mr. White complied with Mr. Hendrick's and Mr. Cove's instruction to cease using the -20 Flip Phone. The -20 Flip Phone was shut off, collected by Zuffa, and stored for preservation.

13. On approximately January 14, 2015, Zuffa engaged an e-discovery vendor, ▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ with forensic expertise in cellular phone data extraction.

14. From late January 2015 to early February 2015, I worked with ▓▓▓▓ and employees from Zuffa to collect and preserve cell phone data from potential and likely document custodians.

15. Along with ▓▓▓▓ and Zuffa's legal department, I interviewed potential custodians prior to the Rule 26(f) discovery conference, prior to the issuance of any document requests by Plaintiffs, and prior to any Court orders regarding discovery, and worked with those employees to preserve for discovery data and documents covered by the Mandatory Preservation Notice.

16. During the late January to February 1, 2015 time period, we collected two cellular phones that Mr. White identified as the phones he used for business-related communications. The collected phones were Mr. White's -20 Flip Phone and an iPhone 4S that was associated with a phone number ending in -92 (the "-92 iPhone 4").

17. On January 21, 2015, ▓▓▓▓ attempted to extract data and text messages from Mr. White's -92 iPhone 4.

2

LYNCH DECLARATION ISO ZUFFA   Case No.: 2:15-cv-01045-RFB-(PAL)
OPP'N TO PLS' MOT. TO COMPEL

18. ▇ successfully preserved the data that was present on the -92 iPhone 4.

19. On several occasions in January 2015, ▇ attempted to extract data and text messages from Mr. White's -20 Flip Phone.

20. ▇ could not successfully extract and preserve text messages from the -20 Flip Phone, despite several attempts. After the initial failed extraction attempts, staff at ▇ told me that it was investigating additional extraction options, including powering on the phone and reading any saved text messages on the screen of the device itself, but that there would be a meaningful risk of losing all prior data on the phone if the phone was powered on for this purpose. Staff at ▇ told me that if the -20 Flip Phone could access the internet or cellular network, the phone might retrieve messages and, in doing so, delete existing messages because of the -20 Flip Phone's limited memory capacity. The staff further informed me that this risk did not exist when using forensic software because the -20 Flip Phone would not connect to the internet or cellular network during that process.

21. As a result of the meaningful risk of losing all prior data on the phone, Zuffa elected to continue to safely store the phone and did not instruct ▇ to make any non-forensic attempts at extracting text message data from the -20 Flip Phone.

22. In February 2015, I, along with others at BSF and Zuffa, investigated retaining another e-discovery vendor for data collection and e-discovery services for this litigation.

23. In approximately June 2015, Zuffa retained a second e-discovery vendor, ▇ ▇ to collect and preserve data for this litigation. ▇ also had experience in forensic extractions, including extracting text messages from cellular phones.

24. Between December 8, 2015 and February 22, 2016, following an agreement between Zuffa and Plaintiffs regarding document custodians, Zuffa performed an updated collection of, among other things, cellular phones.

25. Prior to and during such collections, I worked with other BSF attorneys, Mr. Hendrick, and other Zuffa employees to update and refine the list of cellular phones used by document custodians for Zuffa-related communications. Sometime in 2015, Mr. White had

3

1  upgraded his -92 iPhone 4 to an iPhone 6, which was still associated with the phone number ending
2  in -92 (the "-92 iPhone 6").
3      26.    Zuffa collected the -92 iPhone 6 as part of this updated cellular phone collection.
4      27.    During this updated collection, ▬▬▬▬ preserved the data that was present on Mr.
5  White's -92 iPhone 4, which was no longer in use, as well as from the -92 iPhone 6.
6      28.    During this updated collection, ▬▬▬▬ attempted to extract data from Mr. White's
7  -20 Flip Phone. ▬▬▬▬ forensic attempts to extract data failed to extract messages from the -20
8  Flip Phone.
9      29.    Because the text messages were collected using forensic collection software, they had
10 to be exported for review in a readable format. The custodial text messages consisted primarily of
11 personal (non-Zuffa related) messages and, therefore, had to be reviewed for responsiveness,
12 privilege, and personally-identifiable information prior to production. The text messages were
13 exported for review into Excel spreadsheets for work product purposes, which allowed Zuffa to
14 extract for production the responsive text messages. However, the text messages were not natively
15 stored as Excel spreadsheets on custodians' phones or in the forensic extraction tools.
16     30.    Prior to producing text messages as requested by Plaintiffs' First Requests for
17 Production ("First RFPs"), Zuffa had eight attorneys reviewing text messages for responsiveness,
18 privilege, and personally-identifiable information. In order to produce the text messages as
19 expeditiously as possible, the attorneys reviewing the text messages reviewed the messages
20 concurrently, with each reviewing attorney assigned to review a particular custodian's data. This
21 meant that, for example, an attorney reviewing the text messages of Lorenzo Fertitta would not have
22 matched any messages to Mr. White's custodial files and text messages extracted from Mr. White's
23 devices.
24     31.    On July 8, 2016, Zuffa produced 27 sets of text messages from document custodians'
25 cellular phones. This production included over 6,800 text messages that were extracted from Mr.
26 White's -92 iPhone 4 and -92 iPhone 6.
27     32.    Pursuant to the Stipulated Order re Discovery of Electronically Stored Information
28 ("ESI Order"), Zuffa produced the text messages in TIFF format, accompanied by extracted text and

4

load files. Zuffa's production included the text messages and all of the ESI Order-specified data and metadata its vendor was able to extract. The ESI Agreement did not specify the production format for text messages, so Zuffa produced them as TIFFs, both because the ESI Order required TIFF productions for most ESI and because Plaintiffs had previously produced text messages in TIFF format.

33. The July 8, 2016 production included 44,928 text messages.

34. On March 20, 2017, more than eight months after Zuffa produced the 27 sets of text messages to Plaintiffs, Patrick Madden, counsel for Plaintiffs, contacted me regarding Plaintiffs' perceived issues with the production format of Zuffa's produced text messages, as well as a non-text message question regarding Zuffa's 2016 productions. First, Mr. Madden asked that Zuffa re-produce the July 2016 text messages "sorted as they were maintained on [cell phone] devices." Second, in a later e-mail that day, Mr. Madden noted that one set of text messages was missing either To or From data, and requested that Zuffa re-produce the document with fully populated data. I responded two days later and informed Mr. Madden that I was investigating Plaintiffs' perceived issues with the way the text messages had been produced, and provided him with information regarding his other production question on March 22, and with additional information on March 31.

35. After receiving Mr. Madden's March 20, 2017 e-mail, I, along with others at BSF and at Zuffa, began investigating the issues raised in his e-mail.

36. On March 29, Michael Dell'Angelo, counsel for Plaintiffs, contacted me regarding additional questions regarding Zuffa's production of text messages. Among other issues, in that e-mail, Mr. Dell'Angelo identified text messages that had been exchanged between Mr. White and others that were not produced from Mr. White's custodial files.

37. At that time, I and others at BSF were not aware that Mr. White had sent or received potentially business-related text messages from phone numbers other than the -20 Flip Phone, the -92 iPhone 4, and the -92 iPhone 6. As a result, we undertook an investigation of the issues Mr. Dell'Angelo raised.

38. On April 4, 2017, I wrote to Michael Dell'Angelo, stating that Zuffa would re-produce the 27 sets of text messages in a native Excel format to address many of Plaintiffs' issues. I

5

also advised Mr. Dell'Angelo that we were investigating the other issues he had raised and that additional time was necessary to investigate the additional issues he had raised.

39. During our investigation, Mr. Dell'Angelo raised additional text message-related issues in separate e-mails dated April 4, April 13, and two April 14 e-mails. Each of Mr. Dell'Angelo's e-mails required investigation and review.

40. On April 7, 2017, Zuffa re-produced all 27 sets of text messages in Excel format to Plaintiffs.

41. As of today, Zuffa has produced over 650,000 documents (comprising over 3 million TIFFed pages and over 60,000 native files) to Plaintiffs, including 44,928 text messages.

42. To date, Zuffa has spent millions of dollars on preserving, collecting, and producing documents to Plaintiffs.

43. Zuffa has paid over $100,000 to three different vendors in fees associated with those vendors' attempts to extract text messages from various cellular phones.

I declare under penalty of perjury under the laws of the United States of America that the foregoing facts are true and correct. Executed this 24th day of May, 2017, in Orlando, Florida.

                                        */s / Marcy Norwood Lynch*
                                        Marcy Norwood Lynch