Joseph R. Saveri (*pro hac vice*)
JOSEPH SAVERI LAW FIRM, INC.
555 Montgomery Street, Suite 1200
San Francisco, California 94111
Telephone: (415) 500-6800
Facsimile:  (415) 395-9940
jsaveri@saverilawfirm.com

Richard A. Koffman (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., N.W., Suite 500, East Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile:  (202) 408 4699
rkoffman@cohenmilstein.com

Eric L. Cramer (*pro hac vice*)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile:  (215) 875-4604
ecramer@bm.net

*Co-lead Class Counsel and Attorneys for Individual and Representative Plaintiffs Cung Le, Nathan Quarry, and Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury*

[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| **Cung Le, Nathan Quarry, and Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury, on behalf of themselves and all others similarly situated,**<br><br>    **Plaintiffs,**<br><br>        v.<br><br>**Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,**<br><br>    **Defendant.** | No.: 2:15-cv-01045-RFB-(PAL)<br><br>**PLAINTIFFS' MOTION TO EXTEND DURATION OF DEPOSITIONS FOR CERTAIN ZUFFA EXECUTIVES** |

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ...................................................................................................................1

II. BACKGROUND ....................................................................................................................1

III. ARGUMENT .........................................................................................................................2

    A. Legal Standard ............................................................................................................2

    B. Good Cause is Demonstrated By the Extent of the Five Witnesses' Involvement in Zuffa's Business and the Challenged Conduct ......................................................3

        1. Dana White ......................................................................................................4

        2. Joe Silva ...........................................................................................................4

        3. Michael Mersch ...............................................................................................5

        4. Kirk Hendrick .................................................................................................6

        5. Lawrence Epstein ............................................................................................6

    C. The Time for Depositions Should be Extended Because of the Voluminous Discovery Record .......................................................................................................7

    D. The Time for Depositions Should be Extended Because of The Long Period of Time Relevant to Plaintiffs' Claims ............................................................................8

    E. Extension is Warranted Due To The Breadth Of Issues At Issue ...............................9

    F. Extension Is Warranted Due To The Limited Burden On Defendant .......................10

IV. CONCLUSION ....................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cung Le v. Zuffa*, LLC, No. 2:15-cv-01045-RFB-PAL, 2016 U.S. Dist. LEXIS 145478 (D. Nev. Oct. 19, 2016) .................................................................................................................. 4

*Multiven, Inc. v. Cisco Sys.*, No. C08-05391 JW (HRL), 2010 U.S. Dist. LEXIS 20874 (N.D. Cal. Feb. 16, 2010) ............................................................................................... 3, 10

*Rutherford v. Palo Verde Health Care Dist.*, No. EDCV 13-1247-JAK (OPx), 2014 U.S. Dist. LEXIS 196746 (C.D. Cal. Jan. 22, 2014) ......................................................... 2, 10

*Saunders v. Knight*, 2007 WL 38000 (E.D. Cal. Jan. 4, 2007) ................................................ 2, 8

*Smith v. Hewlett-Packard Co.*, No. 2:15-cv-484-GMN-VCF, 2015 U.S. Dist. LEXIS 170639 (D. Nev. Dec. 21, 2015) (D. Nev. Dec. 21, 2015). ................................................ 3, 11

*Tatum v. Schwartz*, No. CIV S-06-1440 RRB EFB, 2008 U.S. Dist. LEXIS 10715 (E.D. Cal. Jan. 31, 2008) ............................................................................................... 4, 8, 10

*Valois v. Airlines*, 2011 WL 13042826 (C.D. Cal. Apr. 4, 2011) ......................................... passim

**Rules**

Fed. R. Civ. P. 26(b)(1) ................................................................................................................ 10

Fed. R. Civ. P. 26(b)(2) ............................................................................................................ 2, 10

Fed. R. Civ. P. 30(d)(1) .................................................................................................................. 2

## I. INTRODUCTION

Plaintiffs seek an order extending the duration of depositions of Zuffa, LLC ("Zuffa") executives Dana White, Joe Silva, Michael Mersch, Kirk Hendrick, and Lawrence Epstein from one day of seven hours to two days totaling fourteen hours. As numerous cases hold, there is good cause to extend these depositions of five key witnesses. Good cause exists because of the extensive involvement of (1) each deponent in Zuffa's management and business affairs, (2) the large number of documents relevant to each witness (including those produced from the respective witness' files), (3) the period of time during which each witness occupied key jobs at Zuffa, and (4) the breadth of the issues in this case. These five executives, along with Lorenzo Fertitta (who was previously deposed) are Zuffa's top executives and managers. They therefore know the most regarding the anticompetitive scheme Plaintiffs challenge. Among other things, each was personally involved in creating and enforcing the mixed-martial arts ("MMA") athlete compensation and sponsorship policies Zuffa adopted and enforced, as well as the acquisitions of rival MMA promoters. These events are at the heart of this litigation. In light of their extensive knowledge of issues material to Plaintiffs' claims, together with the breadth of Plaintiffs' claims, good cause exists to extend the duration of the depositions for each of these witnesses to fourteen hours.

## II. BACKGROUND

Plaintiffs have met and conferred with Zuffa concerning the relief they seek. Plaintiffs requested two-day depositions for Messrs. White, Silva, Mersch, Hendrick, and Epstein on May 12, 2017. Declaration of Matthew S. Weiler ("Weiler Decl."), ¶ 3. Plaintiffs met and conferred by telephone with Zuffa on May 15, and have had follow up discussions over email and in person on May 26. *Id.*, ¶¶ 3-6. Zuffa does not agree that any of the depositions should be two days.

In addition, there are numerous disputed documents withheld completely or redacted among the 30,000 documents in Zuffa's privilege log. Zuffa produced the log very late in the discovery period, submitting a revised log on April 24, 2017. The review of the log has been time and labor intensive. In fact, Zuffa has recently—on May 26, 2017 during the deposition of Lawrence Epstein discussed below—produced a number of documents withheld erroneously. Plaintiffs reasonably expect additional

productions of withheld material to follow. *See*, *e.g.*, Weiler Decl. ¶¶ 4-5 & Exs. 1-2. Plaintiffs' meet and confer efforts with Zuffa on these issues are ongoing.

### III.  ARGUMENT

#### A.  Legal Standard

Rule 30(d)(1) of the Federal Rules of Civil Procedure provides: "Unless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours. The court **must allow additional time** consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent [or if the deponent, another person, or any other circumstance impedes or delays the examination]." *Fed. R. Civ. P.* 30(d)(1) (emphasis added). Rule 26(b)(2) states "the court may alter the limits . . . on the length of depositions under Rule 30." *Id.* at 26(b)(2).

The Advisory Committee Note on Rule 30(d)(1) instructs: "The party seeking a court order to extend the examination, or otherwise alter the limitations, is expected to show good cause to justify such an order." *Fed. R. Civ. P. 30(d)(1)* advisory committee's notes to 2000 amendment (emphasis added). "[C]ourts asked to order an extension—might consider a variety of factors." *Id.* For example, "[i]f the examination will cover events occurring over a long period of time, that may justify allowing additional time." *Id.* As the advisory committee instructs: "[p]reoccupation with timing is to be avoided." *Id.* The decision to extend is within the district court's discretion. *See Rutherford v. Palo Verde Health Care Dist.*, No. EDCV 13-1247-JAK (OPx), 2014 U.S. Dist. LEXIS 196746 at *4 (C.D. Cal. Jan. 22, 2014) ("Trial courts have broad discretion in granting or denying discovery").

Courts have found good cause justifying extensions of the durational limit for depositions under Rule 30(d)(1) in many different situations. For example, courts have extended time for depositions where the case involved "voluminous background material," *Saunders v. Knight*, 2007 WL 38000 at *3 (E.D. Cal. Jan. 4, 2007), or "the case involved numerous documents," *Valois v. Airlines*, 2011 WL 13042826 at *3 (C.D. Cal. Apr. 4, 2011) . Similarly, courts have enlarged the time for deposition where plaintiff's claims spanned "a lengthy time period," *Valois*, 2011 WL 13042826 at *3. Courts also enlarge the deposition time where the case involves "allegations of multiple instances of misconduct… against two defendants under different legal theories," *id.*, and the "witness is key to both [parties] counterclaims and . . .defenses," *Multiven, Inc. v. Cisco Sys.*, No. C08-05391 JW (HRL), 2010 U.S. Dist.

LEXIS 20874 at *5 (N.D. Cal. Feb. 16, 2010). Depositions should be extended where "the burden [of] a second deposition is outweighed by the benefit of the additional information Plaintiffs will obtain." *Smith v. Hewlett-Packard Co.*, No. 2:15-cv-484-GMN-VCF, 2015 U.S. Dist. LEXIS 170639, at *5 (D. Nev. Dec. 21, 2015) (D. Nev. Dec. 21, 2015).

### B. Good Cause is Demonstrated By the Extent of the Five Witnesses' Involvement in Zuffa's Business and the Challenged Conduct.

The records here shows that there is good cause for extending the depositions of these five witnesses. The discovery record involves a voluminous discovery record, involving hundreds of thousands of documents, taking place over well over a decade. Weiler Declaration

Plaintiffs allege that Zuffa used anticompetitive conduct to establish a monopsony with respect to the acquisition and compensation of MMA talent. As part of the Scheme, Zuffa acquired and maintained s dominance in the market for purchasing the services and identity rights of MMA fighters. Zuffa acquired monopsony power in the market for "Elite Professional MMA Fighter Services" by engaging in a series of anticompetitive actions, including (a) entering long-term, exclusive contracts with Elite MMA Fighters that effectively blocked the vast majority from fighting for rival promotions (CAC[1] ¶¶ 109-114); (b) threatening or otherwise impairing other MMA promoters, sponsors and fighters from working with the UFC's potential rivals (*Id.* ¶¶ 116-119); (c) entering into exclusive agreements with sponsors and venues (*Id.* ¶¶ 120-127); and (d) acquiring multiple rival promotion companies that Zuffa had weakened through the foregoing conduct. *Id.* ¶¶ 129-134. As a result of this Scheme, Zuffa is the "only game in town" in the relevant market. *Id.* ¶ 5. As the Court noted, "Exclusive dealing arrangements are but a part of this scheme," and "Plaintiffs allege multiple acts that, as a whole, constitute an anticompetitive scheme." *Cung Le v. Zuffa, LLC,* No. 2:15-cv-01045-RFB-PAL, 2016 U.S. Dist. LEXIS 145478, at *40 (D. Nev. Oct. 19, 2016).

White, Silva, Mersch, Hendrick, and Epstein were top executives of Zuffa throughout the period and exercised management authority. Together, they participated in virtually all key events in this case. The each played key roles in many aspects of this scheme. In light of the "breadth of these deposition

---

[1] Consolidated Amend Class Action Complaint ("CAC"), ECF No. 208.

topics," and the key roles played by these deponents, good cause exists to extend the time for these depositions. *Tatum v. Schwartz*, No. CIV S-06-1440 RRB EFB, 2008 U.S. Dist. LEXIS 10715 at *4 (E.D. Cal. Jan. 31, 2008).

### 1. Dana White

Dana White is the face of the UFC and the mouthpiece of Zuffa's monopsony. White was involved in MMA prior to Zuffa's acquisition of the UFC in 2001 as an agent to top MMA fighters, and has been synonymous with the UFC since Zuffa's acquisition of the promotion.

White has been personally involved in contract negotiations with the UFC's most important fighters, and implemented key aspects of the UFC's fighter compensation practices and policies. White also enforced the exclusive fighter contracts that were a prominent aspect of Zuffa's exclusionary scheme. Indeed, White's role was to publicly shame and humiliate MMA fighters who attempted to resist the UFC's onerous contractual terms. Additionally, White negotiated agreements with several MMA promoters ████████████ effectively neutralizing competitive threats to Zuffa.

A good deal of the anticompetitive conduct Plaintiffs challenge involves White's disputes with MMA fighters and potential rival promotions. White wielded Zuffa's market power ruthlessly, and to great effect, by bullying Zuffa's fighters and potential rivals. Plaintiffs have uncovered dozens of instances of White using threats to fighters, sponsors, and other MMA promoters to further Zuffa's anti-competitive scheme. Plaintiffs have also identified dozens of White's compelling admissions of Zuffa's domination of MMA: "As bad as people don't want to believe it, they don't want to hear it, meaning the other owners of the other mixed martial arts organizations—that's all they all are, they're all the Triple-A [i.e., minor leagues] to Zuffa. . . . All the people that don't embrace it, embrace losing sh*t loads of money." CAC ¶ 145; *see also id*. ¶ 8.

### 2. Joe Silva

For over twenty years, Joe Silva was the UFC's "matchmaker." Silva's involvement in the UFC pre-dated Zuffa's acquisition of the UFC, and perhaps nobody else at Zuffa is as knowledgeable about Zuffa's fighters and its dealings with fighters. Silva's deposition is currently scheduled for June 7, 2017.

He left the employ of Zuffa at the end of 2016, but Zuffa is representing him for purposes of the deposition.

In several ways, Silva enforced the monopsony power that Zuffa had gained. One of his primary responsibilities was to negotiate terms and assign fights to Zuffa's roster of MMA Fighters. Silva had the ability to force MMA fighters to accept any fight; through Silva, MMA fighters under contract to Zuffa relinquished control over their careers to Zuffa. There are dozens of examples of Silva coercing MMA fighters into accepting the matchups he had chosen.

Silva also understood and enforced Zuffa's athlete compensation practices. Silva ensured that there was parity and consistency across the compensation levels of MMA fighters with commensurate experience. Silva directly relayed these decisions concerning fighter compensation to fighters and their representatives. Silva's in-depth knowledge of Zuffa's fighter compensation policies and practices will be important to Plaintiffs' expert analysis, and to showing that Zuffa used its monopsony power to systematically suppress the compensation of MMA fighters.

### 3. Michael Mersch

Michael Mersch was an attorney at Zuffa. His responsibilities included enforcement of MMA fighters' contracts and Zuffa's policies governing MMA athlete sponsorship. Mersch, as Zuffa's Senior Vice President of Business, Legal and Government Affairs and Assistant General Counsel, regularly conferred with Zuffa's executives about regulating MMA fighters' sponsorship opportunities. Mersch's role in this regard spanned eight years in the middle of the class period. During this time, Mersch frequently foreclosed sponsorship opportunities for fighters, and implemented the exclusive restrictions that Plaintiffs challenge by this litigation. There are dozens of iterations of this fact pattern in the documents produced to Plaintiffs. Plaintiffs and Zuffa are currently discussing the scheduling of the Mersch deposition. Plaintiffs have suggested the second week of July in order to ensure that issues pertaining to production of his text messages have been resolved, but Zuffa insists that the deposition must take place in June.

Mersch was also intimately aware of the purposes behind Zuffa's acquisition of its rivals and potential rivals—*i.e.*, to destroy the potential competition. Mersch was involved in dozens of communications concerning Zuffa's acquisitions.

### 4. Kirk Hendrick

Kirk Hendrick was the UFC's long-time Chief Operating Officer ("COO") for nearly ten years, from 2003 to 2012. Hendrick had plenary responsibility for Zuffa's business, including having some role in every aspect of the scheme alleged by Plaintiffs. Hendrick was intimately involved in the creation and enforcement of Zuffa's fighter contracts; was personally involved in issues related to compensation of MMA fighters, including the Mercer study that is the subject of Plaintiffs' motion to challenge work product (see ECF. Nos. 286, 303);[2] was personally involved in every one of the transactions that resulted in the destruction of all of Zuffa's serious competitors; had roles in creating and enforcing Zuffa's athlete sponsorship policies; and had knowledge of Zuffa's practices regarding pricing of Pay-Per View ("PPV") events.

The documents Zuffa produced concerning Hendrick are voluminous, and Plaintiffs and Zuffa are discussing a mutually agreeable date to depose Hendrick.

### 5. Lawrence Epstein

Lawrence Epstein began representing Zuffa in its negotiations with fighters shortly after Zuffa acquired the UFC in 2001. After joining the UFC as an in-house attorney in 2007, Epstein shifted responsibility to Chief Operating Officer. Over the course of his tenure at Zuffa, Epstein has held several executives roles, and has had substantial responsibility for the issues raised in Plaintiffs' claims. Epstein personally conducted dozens of fighter contract negotiations and was responsible for enforcing the anticompetitive contractual provisions Plaintiffs challenge in this litigation. Epstein was also personally involved in negotiating athlete sponsorships, UFC's broadcasting relationships, UFC's acquisition of

---

[2] On April 27, in resolution of Plaintiffs' Emergency Motion to Reschedule Depositions, Zuffa and Plaintiffs agreed that Hendrick and Epstein's depositions would be kept open to address issues concerning the Mercer study. See ECF. No. 386. This stipulation was based on the assumption of a seven-hour deposition of Hendrick and Epstein, and time was allocated to account for the Mercer study. Id. On May 12, counsel for Plaintiffs requested two-day depositions for Hendrick and Epstein, as well as three other Zuffa executives. Weiler Decl., ¶ 3. On May 15, Plaintiffs and Zuffa met and conferred, and Zuffa did not agree to a seven-hour extension. Zuffa has taken the position that the issue concerning the length of Hendrick and Epstein's deposition is settled by the April 27 stipulation. To the contrary, the dispute concerning the duration of depositions had not arisen at the time the stipulation was made, and nothing in the stipulation prevents Plaintiffs from seeking any relief, as expressly permitted by Rule 30(d)(1), concerning the length of either Hendrick's or Epstein's depositions.

Strikeforce (and the subsequent termination of Strikeforce as an independent promotion), and had a significant role in discussions concerning athlete compensation. Due to Epstein's knowledge of issues related to the Mercer study of athlete compensation, Plaintiffs and Zuffa previously agreed that Plaintiffs would be allowed to depose Mr. Epstein concerning the Mercer study. *See supra* n. 2.

The documents Zuffa produced concerning Epstein are substantial. Plaintiffs have identified hundreds of other documents that were improperly designated as "privileged," including 1,712 emails that relate to contractual negotiations with fighters, most of which are withheld on the inscrutable basis that they "provid[e] legal advice regarding fighter contracts." *See* Weiler Decl. ¶¶ 4-5 & Exs. 1-2. Plaintiffs are confident that these withheld documents are replete with descriptions of Zuffa's anti-competitive business purposes behind the contractual provisions Plaintiffs challenge, and how they were used to coerce MMA fighters. Epstein was deposed for one day on May 26, 2017. [3]

### C. The Time for Depositions Should be Extended Because of the Voluminous Discovery Record

Zuffa has produced hundreds of thousands of its business records and other documents. For each of these deponents, Zuffa has produced hundreds or thousands of emails and text messages, and there are numerous other documents to and from the witnesses produced by third parties that Zuffa has

---

[3] Given the pendency of the request to enlarge the deposition and the existence of unresolved issues regarding documents withheld on privilege grounds, Plaintiffs suggested that the deposition of Mr. Epstein be continued. Weiler Decl., Ex. 1. Among other things, it would be fair and reasonable to know the amount of time available for the deposition before the deposition takes place. Nonetheless, Zuffa rebuffed the request and instead insisted that the deposition go forward. *Id.*, Ex. 2. Remarkably, on the eve of the deposition, Zuffa agreed to produce a number of disputed documents, and the electronic files of the documents were made available during the Epstein deposition. *Id.*, ¶¶ 4-5. Nonetheless, Plaintiffs proceeded with the deposition for 7 hours. The examination of Epstein is not complete.

Substantial time was wasted by Zuffa objecting that questioning was not permitted because Epstein was questioned on topics on which Zuffa previously produced a witness to testify on behalf of Zuffa pursuant to Rule 30(b)(6). *Id.*, ¶ 7. Zuffa apparently takes the position that designation of a witness to testify on behalf of Zuffa under Rule 30(b)(6) forecloses Plaintiffs' rights to elicit related testimony from knowledgeable percipient witnesses pursuant to Rule 30(b)(1). That is incorrect. The questions—here about the communications to and from Epstein regarding the fighter contracts Epstein negotiated, drafted and enforced—clearly relate to the fighter contracts on which Zuffa produced a 30(b)(6) witness. In any event, Plaintiffs rejected this demand. *Id.*, Ex. 3. At a minimum, foundational testimony regarding those contracts to the witness who wrote them (i.e., Epstein) should not be foreclosed. In order to resolve this issue, Plaintiffs also sought Zuffa's agreement that Epstein would not testify at trial about fighter contracts at trial. Zuffa refused. *Id.*, ¶ 7.

7   Case No.: 2:15-cv-01045-RFB-(PAL)
PLAINTIFFS' MOTION TO EXTEND DURATION OF DEPOSITIONS FOR CERTAIN ZUFFA EXECUTIVES

otherwise destroyed. Courts routinely conclude that good cause exists to extend time for depositions when the litigation concerns long periods of time and extensive information. *See, e.g.*, *Saunders*, 2007 WL 38000 at *3 (granting extra time "[d]ue to the voluminous background material and exhaustive investigation"); *Valois*, 2011 WL 13042826 at *3 ("the case involved numerous documents, some of which plaintiff failed timely to produce"); *Tatum*, 2008 U.S. Dist. LEXIS 10715, at *4. As evidenced by the operative complaint in this matter, Plaintiffs have stated a claim under Section 2 regarding a multifaceted anticompetitive scheme spanning over a decade. Plaintiffs reasonably expect the trial in this matter to be lengthy and will likely involve numerous witnesses and testimony regarding numerous documents. It would be unfair in this case to limit Plaintiffs to seven hour depositions of key witnesses expected to testify at trial on the central issues in dispute in this case.

In addition to the voluminous documents already produced in this action, Plaintiffs are seeking further document production from Zuffa in this case. Plaintiffs' Motion to Compel Defendant to Produce a Log of Communications for Dana White's Discoverable Telephone Numbers and Electronic Communication Devices will be specifically relevant to the deposition of Dana White. *See* ECF Nos. 395-398, filed May 9, 2017. Plaintiffs have also requested from Zuffa documents relating to a third-party study on fighter compensation issues; Defendant has refused to produce these documents, and the dispute is subject to Plaintiffs' Motion to Challenge Work Product Designation, ECF No. 282. As the Advisory Committee Note on Rule 30(d)(1) states: "If the examination reveals that documents have been requested but not produced, that may justify further examination." *Fed. R. Civ. P. 30(d)(1)* advisory committee notes to 2000 amendment.

Due to the voluminous documentary evidence already produced in this action, the late production of relevant documents, and more likely to come, extending the depositions of the above-named deponents is necessary to fairly examine them and obtain a complete record of their extensive involvement in conduct central to the case and to prepare for trial

### D. The Time for Depositions Should be Extended Because of The Long Period of Time Relevant to Plaintiffs' Claims

The CAC asserts claims under federal antitrust law on behalf of a nationwide class of similarly situated MMA fighters. Among other things, Plaintiffs allege that Defendant illegally acquired,

enhanced and maintained a monopoly in the market for promoting live Elite Professional MMA Fighter bouts and a monopsony in the market for Elite Professional MMA Fighter services, then exploited its dominant position in that market to illegally suppress compensation for Elite Professional MMA Fighters. Plaintiffs claim damages and other relief under Section 2 of the Sherman Act, 15 U.S.C. § 2. The factual bases to support these allegations cover a long time period, from 2001, when Zuffa purchased the UFC, until the present. *Valois*, 2011 WL 13042826 at *3

Questioning these five key witnesses on sixteen years of factual matters within seven hours is unreasonable and would deprive Plaintiffs of key relevant evidence. As stated by the Advisory Committee on Rule 30(d)(1): "If the examination will cover events occurring over a long period of time, that may justify allowing additional time." *Fed. R. Civ. P. 30(d)(1)* advisory committee notes to 2000 amendment. Courts considering this issue have found good cause exists to extend time for depositions for this reason. The court in *Valois* held that the fact plaintiff's claims spanned "a lengthy time period" constituted good cause to extend time for the depositions. *Valois*, 2011 WL 13042826 at *3. *Accord Rutherford*, 2014 U.S. Dist. LEXIS 196746 at *7-8.

In this case, Plaintiffs' allegations cover sixteen years and involve numerous legal theories, far more time than the court in *Valois* held was good cause to order an extension of the deposition "necessary for [plaintiffs to] fairly…examine" deponents. *Valois*, 2011 WL 13042826, at *3. Accordingly, the protracted time period covered by the allegations in the complaint, that will need to be addressed in these depositions, is good cause supporting extending the time for these depositions. A seven hour extension of the time for each of these depositions is necessary in order to fairly examine these deponents and is reasonable in light of the allegations advanced in this case and the number of years they cover. *Id.*

E.      **Extension is Warranted Due To The Breadth Of Issues At Issue**

Plaintiffs assert antitrust injury claims based on an interlocking theory of monopoly and monopsony power, brought on behalf of two prospective classes. The breadth of the issues raised in this action, both legally and factually, supports extending the time for these depositions. *Multiven,* 2010 U.S. Dist. LEXIS 20874 at *5 . The court in *Valois* held that defendants demonstrated good cause to extend the time of plaintiff's deposition in part because "plaintiff's claims involve allegations of multiple

instances of misconduct over a four year period, against two defendants under different legal theories." *Valois*, 2011 WL 13042826 at *3. The issues in this litigation are far broader than in *Valois*, an employment discrimination and harassment suit, and the allegations extend over a longer time period. CAC ¶¶ 109-134.

The importance of these witnesses' testimony to the court's understanding of the manifold issues raised in this litigation cannot be understated; they are crucial percipient witnesses. The lengthy time period at issue and the "breadth of these deposition topics" support extending the time for these depositions. *Tatum*, No. CIV S-06-1440 RRB EFB, 2008 U.S. Dist. LEXIS 10715 at *4. The Northern District of California Court held, in an antitrust case, that good cause existed to extend time for depositions where a witness is key to numerous parties' claims in the litigation, reasoning: "[u]nder the circumstances, where a…witness is key to both Cisco's counterclaims and Multiven's defenses to the same, an extension of the deposition time limit is appropriate." *Multiven,* 2010 U.S. Dist. LEXIS 20874 at *5 (emphasis added). Here, similarly, Plaintiffs' manifold claims demonstrate sufficient good cause to extend the time for these depositions.

### F. Extension Is Warranted Due To The Limited Burden On Defendant

Good cause exists to extend the time for these depositions. Moreover, the burden to Zuffa of granting this extension is minimal. *Fed. R. Civ. P. 26(b)(2)*. "[T]he scope of discovery is as follows: Parties may obtain discovery regarding [1] any nonprivileged matter that is relevant to any party's claim or defense and [2] proportional to the needs of the case." *Smith*, 2015 U.S. Dist. LEXIS 170639 at *3. When considering whether discovery is proportional to the needs of the action, the courts consider: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its benefits." *Id*.

In conducting such a proportionality analysis, this District Court in *Smith* found the benefit of additional relevant oral testimony, resulting from extending the time for the deposition to a second day, outweighed the burden on producing the deponent for a second day. *Id*. at *5-6. The Court in *Smith* held that:

> Plaintiffs' request to extend…deposition is proportional to the needs of the instant action for the following reasons: (1) **[Deponent] is an**

**important witness and possesses information relevant to each of Plaintiffs' claims**, (2) [Deponent's] oral testimony is an efficient manner for Plaintiffs' to obtain relevant information on their claims, and (3) **the burden on [Defendant] to produce [Deponent] for a second deposition is outweighed by the benefit of the additional information Plaintiffs will obtain.**

*Id*. (emphasis added).

In this case, each of the above-named deponents possess unique, first-hand, personal knowledge. They are key percipient witnesses. Their testimony is important for Plaintiffs to prove their claims and to prepare for cross-examination. In light of the significant benefit of hearing their oral testimony and the limited burden on producing these deponents for a second day of depositions, proportionality weighs in Plaintiffs' favor.

### IV.  CONCLUSION

This Court should extend the time for these depositions to fourteen hours over two days for each of Messrs. White, Silva, Mersch, Hendrick, and Epstein.

DATED: May 30, 2017

Respectfully Submitted,
JOSEPH SAVERI LAW FIRM, INC.

By:   /s/Matthew S. Weiler
       Matthew S. Weiler

Joseph R. Saveri (admitted *pro hac vice*)
Joshua P. Davis (admitted *pro hac vice*)
Matthew S. Weiler (admitted *pro hac vice*)
Kevin E. Rayhill (admitted *pro hac vice*)
555 Montgomery Street, Suite 1210
San Francisco, California 94111
Phone: (415) 500-6800/Fax: (415) 395-9940
jsaveri@saverilawfirm.com
jdavis@saverilawfirm.com
mweiler@saverilawfirm.com
krayhill@saverilawfirm.com

*Co-Lead Counsel for the Classes and Attorneys for Individual and Representative Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Luis Javier Vazquez, Brandon Vera, and Kyle Kingsbury*

COHEN MILSTEIN SELLERS & TOLL, PLLC
Benjamin D. Brown (admitted *pro hac vice*)
Richard A. Koffman (admitted *pro hac vice*)
Dan Silverman (admitted *pro hac vice*)
1100 New York Ave., N.W., Suite 500, East Tower
Washington, DC 20005
Phone: (202) 408-4600/Fax: (202) 408 4699
bbrown@cohenmilstein.com
rkoffman@cohenmilstein.com
dsilverman@cohenmilstein.com

*Co-Lead Counsel for the Classes and Attorneys for Individual and Representative Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Luis Javier Vazquez, Brandon Vera, and Kyle Kingsbury*

BERGER & MONTAGUE, P.C.
Eric L. Cramer (admitted *pro hac vice*)
Michael Dell'Angelo (admitted *pro hac vice*)
Patrick Madden (admitted *pro hac vice*)
1622 Locust Street
Philadelphia, PA 19103
Phone: (215) 875-3000/Fax: (215) 875-4604
ecramer@bm.net
mdellangelo@bm.net
pmadden@bm.net

*Co-Lead Counsel for the Classes and Attorneys for Individual and Representative Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Luis Javier Vazquez, Brandon Vera, and Kyle Kingsbury*

WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP
Don Springmeyer
Nevada Bar No. 1021
Bradley S. Schrager
Nevada Bar No. 10217
Justin C. Jones
Nevada Bar No. 8519
3556 E. Russell Road, Second Floor
Las Vegas, Nevada 89120
(702) 341-5200/Fax: (702) 341-5300
dspringmeyer@wrslawyers.com
bschrager@wrslawyers.com
jjones@wrslawyers.com

*Liaison Counsel for the Classes and Attorneys for Individual and Representative Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Luis Javier Vazquez, Brandon Vera, and Kyle Kingsbury*

WARNER ANGLE HALLAM JACKSON & FORMANEK PLC
Robert C. Maysey (admitted *pro hac vice*)
Jerome K. Elwell (admitted *pro hac vice*)
2555 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Phone: (602) 264-7101/Fax: (602) 234-0419
rmaysey@warnerangle.com
jelwell@warnerangle.com

*Counsel for the Classes and Attorneys for Individual and Representative Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Luis Javier Vazquez, Brandon Vera, and Kyle Kingsbury*

LAW OFFICE OF FREDERICK S. SCHWARTZ
Frederick S. Schwartz (admitted *pro hac vice*)
15303 Ventura Boulevard, #1040
Sherman Oaks, CA 91403
Phone: (818) 986-2407/Fax: (818) 995-4124
fred@fredschwartzlaw.com

*Attorney for Plaintiffs*

SPECTOR ROSEMAN KODROFF & WILLIS, P.C.
Jeffrey J. Corrigan (admitted *pro hac vice*)
William G. Caldes (admitted *pro hac vice*)
1818 Market Street – Suite 2500
Philadelphia, PA 19103
Phone: (215) 496-0300/Fax: (215) 496-6611
jcorrigan@srkw-law.com
wcaldes@srkw-law.com

*Attorneys for Plaintiffs*