UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

CUNG LE, et al.,

Plaintiffs,

v.

ZUFFA, LLC, et al.,

Defendants.

Case No. 2:15-cv-01045-RFB-PAL

**ORDER**

(Mot Challenge Designation
ECF Nos. 281/282)

Before the court is Plaintiffs' Motion to Challenge Work Product Designation (ECF No. 281 filed under seal, and the redacted version (ECF No. 282) filed on the public record. The court has considered the motion, Zuffa's Opposition (ECF Nos. 294/295), numerous related filings[1], and the arguments of counsel at the hearing on this matter.

## BACKGROUND

I. **The Amended Complaint and Procedural History**

Plaintiffs filed their Consolidated Amended Antitrust Class Action Complaint (Dkt. #208) on December 18, 2015. It is a civil antitrust action under Section 2 of the Sherman Act, 15 U.S.C. § 2, for treble damages and other relief arising out of allegations of Zuffa's anti-competitive scheme to maintain and enhance a monopoly power in the market for promotion of live elite professional Mixed Martial Arts ("MMA") fighter bouts and monopsony power of the market for live elite professional MMA fighter services. The named Plaintiffs bring suit on behalf of themselves and a putative class of others similarly situated under Rule 23 of the Federal Rules of Civil Procedure against Zuffa, operating under the trademark Ultimate Fighting Championship or

---

[1] The papers in this case were filed in a confusing fashion and were not linked by docket numbers. Rather than list all of the docket numbers concerning matters filed on the public record, and matters filed under seal and redacted, the court assures the parties it has reviewed all of the moving and responsive papers pertinent to this motion.

"UFC". Plaintiffs claim that the UFC has engaged in an illegal scheme to eliminate competition from would-be MMA promoters by systematically preventing them from gaining access to resources critical to successful MMA promotions, including by imposing extreme restrictions on UFC fighters' ability to fight for would-be rivals during and after their tenure with the UFC. The amended complaint claims that as part of its scheme, UFC controls not only fighter careers, but also takes and expropriates the rights to their names and likeliness in perpetuity. As a result of this conduct, UFC fighters are paid a fraction of what they would earn in a competitive marketplace.

## II. The Parties' Dispute

### A. Plaintiff's Motion to Challenge Work Product Designation

In the current motion, the plaintiffs challenge defendant Zuffa's designation of three documents produced in discovery in this case as covered by the work product privilege. Zuffa Bates-stamped and produced the three documents at issue in response to plaintiffs' Request for Production of Document No. 23 seeking documents analyzing the effect of contractual terms on fighter compensation or on Zuffa's strategies, revenues and profitability. However, it subsequently sought to claw back the documents asserting they are entitled to work product protection.

The three documents at issue involve a proposal by a third-party human resources consultant, Mercer (U.S.) Inc. ("Mercer") to produce a "fighter pay assessment", the stated objective of which was to "guide future compensation and benefits program design, including fighter pay (base and incentives) and benefit levels."

In response to plaintiff's Request for Production No. 23, Zuffa produced six documents or communications relating to the Mercer fighter pay assessment, including the three documents now in dispute. Two of the three challenged documents were created by Mercer, and the third is an email chain between Zuffa's Chief Legal Officer, Kirk Hendrick, and William Hunter Campbell, an attorney at Campbell & Williams, outside counsel for Zuffa. The email chain attaches one of the Mercer documents, and discusses setting up a telephone call with outside consultants.

After the documents were produced in discovery, plaintiffs served Zuffa with a Rule 30(b)(6) notice on July 5, 2016 requesting deposition testimony about the work done by Mercer as a category and citing the statement of work by Bates number that Zuffa produced. On July 28,

2

2016, plaintiffs provided notice to Zuffa pursuant to Fed. R. Civ. P. 45(a)(4) that plaintiffs intended to serve a subpoena duces tecum on Mercer. The subpoena was served on Mercer July 29, 2016. To date, Mercer has not produced responsive documents and Zuffa has not objected to the subpoena. On August 8, 2016, plaintiffs served a Second Request for Production of Documents on Zuffa asking for all documents and communications concerning Zuffa's engagement of Mercer in connection with the "Fighter Pay Program Review and Design," as well as communications with Mercer, documents and information provided to Mercer, Mercer's findings and Zuffa's response to Mercer's findings.

On August 19, 2016, Zuffa sent plaintiffs a letter stating that they were clawing back the three documents at issue in this motion as attorney work product. Plaintiffs notified Zuffa of their intent to challenge the designation and this motion was filed. Although Zuffa has claimed work product protection for the 3 documents in dispute it has not attempted to claw back the Mercer statement of work for the fighter pay assessment project.

Plaintiffs claim that the challenged documents consist of documents directly related to the August 8, 2013 statement of work Bates-stamped ZFL-1007379 which Zuffa has not clawed back, which references an engagement letter of March 8, 2013. Plaintiffs argue that the challenged documents pertain to a project which was originally contemplated and commenced in March 2013, more than 21 months prior to the filing of the first complaint in this case. The first document is a memorandum by Cathy Shepard, a non-attorney employee of Mercer, dated September 27, 2013. It seeks documents and information that Mercer intended to use to develop a "fighter pay assessment" for Zuffa and specifies the documents requested. Nothing on the face of the document indicates that it was prepared in anticipation of litigation or involved an attorney. No attorneys or litigation are referenced, nor are any legal concepts or strategies discussed.

The second document challenged is an email Bates-stamped ZFL-1824835. The Mercer (Shepard) memo was attached to this document which consists of an email chain between Mr. Hendrick and Mr. Campbell between September 30th and October 1st, 2013, to schedule a call "with some outside consultants."

3

The third document is a Mercer presentation Bates-stamped ZFL-0557588. It is a draft presentation entitled "Fighter Pay/Project Update and Methodology Discussion" dated March 18, 2014. The presentation is a status report on the progress of the fighter pay assessment project, along with a summary of the methodology to be used and a list of the next steps for the project. The presentation discusses a comparator group of other sports organizations including NASCAR, MLB, the NBA, and the NHL whose compensation practices Mercer proposed to study to "provide an external basis for understanding how UFC's fighter pay structure and practices compares to similar companies."

Plaintiffs argue that Mercer is a human resources consulting company that describes itself as a "global consulting leader in health, retirement, investments, and talent," and offers HR solutions for companies including "compensation data to benchmark your organization against others…." The statement of work for the fighter pay assessment indicates that Mercer analyzed Zuffa's information and compared it to compensation practices in the comparator groups to assess Zuffa's current compensation model and make recommendations for the future. The goal of the project was to "not only help test the alignment of current fighter compensation and benefits practices against UFC strategies and market practices, but also identify potential opportunities for change."

Plaintiffs contend that none of the documents at issue in this motion qualify as work product. Fighter compensation is at the heart of the plaintiffs' claims against Zuffa. The amended complaint alleges that Zuffa suppressed compensation for elite professional MMA fighters by using its monopoly and monopsony power. The challenged documents concern compensation to be paid to UFC fighters. The materials consist of a survey of compensation for UFC fighters, and includes a number of comparisons between pay for UFC fighters and other professional athletes.

Citing *In re Grand Jury Subpoena*, 357 F.3d 900, 908 (9th Cir. 2003), plaintiffs argue the documents do not meet the Ninth Circuit standard to qualify as work product. The Ninth Circuit has adopted a "because of" standard that requires consideration of the totality of the circumstances and affords work product protection only when it can fairly be said that the documents were created because of anticipated litigation, and would not have been created in substantially similar form but

for the prospect of litigation. Plaintiffs cite district court decisions holding that documents prepared in the ordinary course of business, or that would have been created in essentially the similar form irrespective of litigation, are not work product documents. Plaintiffs cite *Ooida Risk Retention Grp., Inc. v. Bordeaux*, 2016 U.S. Dist. LEXIS 12851, at *3 (D. Nev. February 3, 2016) for the proposition that "documents generated in the ordinary course of business are generally not protected under the work product doctrine, even if produced at a time when litigation was anticipated." Documents are not work product simply because litigation "is in the air or there is a remote possibility of some future litigation."

Zuffa bears the burden of demonstrating the work product doctrine applies. Consulting work performed by a third party cannot be work product if it is the type of work routinely done on behalf of a company. In this case, all three of the documents are routine business communications related to fighter pay assessment. The Mercer memo itself concerns materials Mercer asked for to assess fighter pay and was not written by a lawyer. The memo provides a quote for the proposed services, describes Mercer employees who would be doing the work, and a describes the work to be done. The email chain between Zuffa's general counsel, Kirk Hendrick, and outside counsel, William Hunter Campbell, was created 15 months before the complaint in this case was filed, and does nothing more than transmit a memo and make arrangements for a telephone call for a purely business purpose. The Mercer presentation was created by Mercer employees, not lawyers, in approximately March 2014, nine months before the complaint in this case was filed. The presentation itself shows that Mercer was creating a human resources document pertaining to employee compensation, an ordinary business activity, that was to be used for business purposes. Nothing in the documents contain legal analysis or reflects that they were prepared in anticipation of litigation. In attempting to claw back the documents, Zuffa has not identified any potential or actual litigation that was related to the challenged documents. Assuming *arguendo* that the challenged documents were created as part of Zuffa's internal investigation of its compensation policies, the documents are so devoid of any reference to the threat of litigation that Zuffa's *post hoc* rationale should be rejected as insufficient.

Plaintiffs argue, in the alternative, that if the court determines the documents are covered by the work product doctrine, plaintiffs have shown substantial need for the documents and that they would suffer undue hardship if the documents are not produced because the documents are not available from another source.

The case law distinguishes between two types of work product which are subject to two different standards for discovery. Ordinary work product includes raw factual information, while opinion work product includes the mental impressions, conclusions, opinions, or legal theories of an attorney or representative concerning litigation. The plaintiffs should be permitted to discover ordinary work product consisting of factual materials on a showing of substantial need if plaintiffs "cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3). This is determined on a case-by-case basis. In this case, plaintiffs have alleged that Zuffa suppressed compensation for the plaintiffs and the putative class. Fighter compensation is a central issue in this case and plaintiffs seek to prove that UFC fighter compensation is inordinately low when compared to compensation to athletes in other sports. The fighter pay assessment Mercer performed addresses this allegation directly. Plaintiffs are aware of no other documents that make the comparison and analysis contained in the fighter pay assessment. The court should therefore order that the documents be produced as plaintiffs have established substantial need for them and that they cannot obtain the substantial equivalent by other means.

In the alternative, plaintiffs argue Zuffa has waived work product protection for the documents because it produced other documents relating to the Mercer fight pay assessment. Thus, even if the documents were protected by work product privilege, Zuffa has waived the protection by selectively disclosing certain privileged materials, while selectively withholding others, presumably to mislead the plaintiffs and gain an advantage. Plaintiffs contend that at a minimum, the scope of the waiver includes each of the challenged documents as well as any other documents containing the facts and materials on which Mercer relied in conducting its fighter pay assessment and any documents containing or disclosing Mercer's findings and recommendations in connection with the fighter pay assessment.

To support its waiver arguments, the plaintiffs assert that Zuffa produced several documents related to the fighter pay assessment including the three challenged documents and the statement of work which it is not attempting to claw back. The Mercer presentation was produced March 24, 2016. The statement of work was produced May 18, 2016, and the memo and email chain were produced on July 11, 2016. Plaintiffs put Zuffa on notice that they possessed and intended to use the statement of work on July 5, 2016, when plaintiffs referred to it by Bates number and title in the Rule 30(b)(6) notice of deposition plaintiffs served. The parties had a meet-and-confer telephone conference on July 26, 2016, to discuss the topics in the July 5th notice. Zuffa raised certain privilege issues implicated by other topics, but did not raise any potential issues related to the Mercer fighter pay assessment or statement of work.

On August 3, 2016, plaintiff served a revised Rule 30(b)(6) notice which again specifically referenced the Mercer statement of work by Bates number and title. Another meet-and-confer call was conducted August 12, 2016, to discuss the notice. Zuffa failed to raise any work product issues related to the statement of work. On August 8, 2016, plaintiffs served their Second Set of Requests for Production of Documents which specifically requested documents related to the fighter pay assessment performed by Mercer. A meet and confer was conducted August 25, 2016 to discuss the Second Set of Requests for Production of Documents, but Zuffa did not raise any work product issues with respect to the statement of work. However, Zuffa's August 19, 2016 letter clawed back the Mercer memo, the email chain, and presentation, but not the statement of work. Having provided the statement of work to plaintiffs, Zuffa has waived the right to assert work product protection for the memo and presentation which addresses the same subject matter, any other documents containing the facts and materials on which Mercer relied in conducting the fighter pay assessment, and any documents containing or disclosing Mercer's findings and recommendations in connection with its fighter pay assessment.

Zuffa therefore seeks an order granting its challenge to work product designation of the three challenged documents and compelling production of related materials.

/ / /

/ / /

### B.  Zuffa's Opposition

Zuffa's Opposition asserts that plaintiffs' motion is based on two incorrect assumptions: first, that Zuffa engaged Mercer to perform a fighter pay study; and second, that the resulting study was performed in anticipation of this litigation.  Zuffa's motion, which is supported by the declarations of outside counsel, William Hunter Campbell, Zuffa's Vice President and Chief Legal Officer, Kirk Hendrick , and outside counsel Stacey Grigsby, maintains that Zuffa did not execute the Mercer statement of work that Zuffa produced in this case.

The response represents that Zuffa's outside counsel commissioned Mercer to conduct a study related to fighter pay after Zuffa became embroiled in litigation involving fighter Eddie Alvarez in a federal lawsuit filed in January 2013 by rival MMA promotor, Bellator, in the District of New Jersey.  The Alvarez litigation sparked intense scrutiny of Zuffa's contracts with fighters and their compensation which led several fighters to make public statements that Zuffa did not pay its fighters fairly, and claims that Zuffa's contracts were unenforceable.  To assess Zuffa's exposure in the Alvarez litigation and "attendant allegations" from fighters regarding their compensation, Zuffa's outside law firm, Campbell & Williams, hired Mercer to conduct the study which would assist the firm in advising Zuffa on the actual and threatened litigation.

Zuffa maintains that the challenged documents relate to a fighter compensation study that Campbell & Williams commissioned in anticipated litigation, and are therefore protected by the work product doctrine.  Bellator filed a federal complaint in the District if New Jersey against its former fighter Eddie Alvarez involving the contract disputes among them.  Bellator's suit named Alvarez and five Doe defendants.  A claim for tortious interference with the parties' contract was asserted against the Doe defendants.  Alvarez's negotiations with Zuffa, and Zuffa's subsequent offer to him were central to the Alvarez litigation.  Thus, although Zuffa was not named as a party in the lawsuit, its outside counsel believed there was a high likelihood that Zuffa could be named in the lawsuit as one of the Doe defendants.

Campbell & Williams had "a number of interactions" with Bellator's counsel regarding the litigation that "subjectively and objectively made litigation with Bellator over Mr. Alvarez a reasonably foreseeable possibility."  Bellator served Zuffa with a broad subpoena for 11 categories

of documents regarding a number of aspects of Zuffa's business, and efforts to resolve the subpoena disputes were "quite contentious."

Zuffa sent a litigation hold letter to certain Zuffa employees, at the request of Campbell & Williams, to preserve documents for the Alvarez litigation in May 2013. The Bellator/Alvarez case settled in August 2013. However, Zuffa continued to anticipate potential litigation with Bellator over Alvarez because the terms of the Bellator/Alvarez settlement provided, *inter alia*, that Alvarez would fight one more bout for Bellator before being able to negotiate with Zuffa and others for his services. This agreement contained a unique clause that required Bellator to sign off on a confidentiality provision in Bellator's favor before Alvarez could negotiate with others. This clause later proved problematic and contentious when the parties could not agree on mutually satisfactory language which heightened the concern for potential litigation.

Bellator also attached an unredacted version of the entire proffered contract between Zuffa and Alvarez to its New Jersey complaint, which Zuffa maintained was a confidential document. This brought a substantial amount of media attention and increased scrutiny and controversy over fighter contracts and compensation. The publication of Zuffa's contract led to a number of questions and publications regarding fighter pay and the enforceability of Zuffa contract provisions. Fighters began to speak up publicly about these issues, and numerous individuals began to question Zuffa's compensation practices.

Thus, outside counsel reasonably anticipated litigation with Bellator over potential interference with contract claims, and also had significant concerns that other fighters might file suit regarding issues of fighter pay and the enforceability of Zuffa's contracts. As a result, in September 2013, Campbell & Williams requested that Mercer conduct a fighter pay assessment study. The firm was familiar with Mercer because it had previously conducted an employee compensation study for Zuffa unrelated to fighter compensation. Mercer pitched another project to Zuffa in August 2013 after the March study was completed. Zuffa did not believe it had a business purpose significant enough to warrant the commission of this type of assessment and decided not to engage Mercer to conduct the proposed fighter pay program review and design. However, as legal advisors to Zuffa, Campbell & Williams recognized that an analysis of fighter

9

compensation could assist the firm in defending Zuffa in any litigation with Bellator or other fighters. Thus, in September 2013, Campbell & Williams retained Mercer to conduct a fighter pay study. Zuffa maintains that if the law firm had not anticipated the Alvarez litigation and other related litigations regarding Zuffa's contracts and fighter pay, the study would not have been commissioned. Counsel also represent that a final version of the fighter pay assessment was never completed, in part, because of concerns about Mercer's methodology.

This lawsuit was filed well over a year after Campbell & Williams retained Mercer. In July 2016, plaintiffs served a 56 topic Rule 30(b)(6) deposition notice which included a single topic on Zuffa's purported retention of Mercer citing the unexecuted statement of work that Mercer sent to Zuffa. Zuffa does not claim the statement of work is attorney work product because it is nothing more than a rejected business proposal, and therefore, did not believe it necessary to claw back the document. However, as Ms. Grigsby began to prepare for the Rule 30(b)(6) deposition, she learned that Campbell & Williams had retained Mercer to conduct a similar study in anticipation of litigation. Out of an abundance of caution, Zuffa's counsel searched its voluminous document productions and discovered that three of the Campbell & Williams' documents had been inadvertently produced. Counsel for Zuffa therefore sent Plaintiffs a letter advising them of the inadvertent production pursuant to the claw back provision of the protective order entered in this case. Counsel for plaintiffs, Kevin Rayhill, responded to the claw back letter indicating plaintiffs intended to challenge the designation of work product for the three documents, but did not request a meet and confer before filing the motion.

The response argues that the challenged documents are work product because they were created as a result of the real and substantial threat of being sued in the Alvarez litigation and potential other litigation regarding Zuffa's fighter pay and "other issues regarding its contract." The core of the work product doctrine shelters the mental processes of the attorney. It is an intensely practical doctrine grounded in the realities of litigation that recognizes attorneys often rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. The work product doctrine protects the collection of facts if presented in such a way that it discloses counsel's mental impressions. In this case, the Mercer fighter pay and

assessment study was done "precisely and only because of the threat of imminent litigation." Outside counsel decided to engage a third-party consultant to look into issues regarding Zuffa's fighter pay, and more generally, the structure of compensation and benefits paid to athletes in a variety of sports to prepare for the anticipated litigation and devise a legal strategy for handling this issue in foreseeable litigation. The documents therefore fall squarely within the parameters of the work product protection.

The documents at issue satisfy both the temporal and motivational component of the anticipation of litigation requirement. In September 2013, Zuffa had just emerged from the first round of the Alvarez litigation and "rightly perceived that this dispute would continue after Alvarez and Bellator reached a settlement." In addition, because Bellator publicized the confidential contract Zuffa offered to Alvarez which resulted in "a very public conversation about the propriety of Zuffa's contracts and fighter compensation" the law firm had a reasonable subjective belief of anticipated litigation. Bellator's refusal to agree upon the language for a confidentiality agreement for negotiations with Alvarez led to accusations that there had been a breach of the contract and interference with the contract. Mr. Campbell and others at his firm began to receive inquiries from fighters and their agents as well as reporters regarding issues of fighter pay and Zuffa's contract after public disclosure. Thus, the law firm also had an objectively reasonable belief "in light of the tenor of the situation at the time that his firm engaged Mercer" that litigation was reasonably foreseeable. The work product doctrine does not require that materials be created after litigation is filed, only where litigation is reasonably foreseeable.

Zuffa argues that plaintiffs have not and cannot show a substantial need for the challenged documents because plaintiffs could obtain the information from easily available public sources. As the Mercer proposal makes clear, Mercer planned to use financial information from a variety of public sources for its analysis of other sports organizations' compensation and benefits for its proposed study. The proposed comparator group information is publicly available for plaintiffs to access in a simple internet search of various websites identified in the opposition. Additionally, Zuffa has already produced all of the financial data that it could have produced to Mercer including detailed information regarding fighter event and non-event pay, sponsorship payments, and

merchandise payments. Thus, plaintiffs have all the information they need to conduct their own comparison of Zuffa's fighter pay to other sports organizations and cannot show that their need for this information overcomes the work product protection for these documents. To find otherwise would constitute an inappropriate exploitation of Zuffa's efforts in preparing for litigation.

Zuffa also maintains that the documents are not relevant to this case because plaintiffs have alleged a market that is limited to MMA fighters and the promotion of MMA events, and that Zuffa has suppressed compensation of MMA fighters. A study comparing fighter pay and compensation between Zuffa and other unrelated sports is therefore irrelevant to plaintiffs' claims that Zuffa suppressed fighter compensation in the MMA market. Additionally, the substantial differences between MMA and other sports in terms of revenues, costs, structures of other leagues, etc., render any comparison between Zuffa fighter pay and the pay of other athletes in other sports "speculative at best."

Zuffa disputes that it waived work product protection for the challenged documents. Pursuant to Fed. R. Evid. 502(b) its inadvertent disclosure of the challenged documents does not operate as a waiver where (a) the disclosure is inadvertent; (b) the holder of the privilege took reasonable steps to prevent disclosure; and (c) the holder promptly took reasonable steps to rectify the error. Zuffa has produced over 641,000 documents, totaling over 2.6 million pages of materials in discovery in addition to the 108,000 documents that were produced to the FTC in 2011. In a document production of this magnitude, it is inevitable that documents may be inadvertently produced. This is the purpose of the protective order that was entered in this case that provides for claw back of inadvertently produced documents without waiver of the privilege.

Finally, Zuffa maintains the court should not consider plaintiff's motion challenging the documents at issue because counsel for plaintiffs failed to meet and confer in good faith before filing its motion to compel. Plaintiffs only sent counsel an August 24, 2016 letter stating, in general terms, they intended to challenge Zuffa's work product designation of the challenged documents, but did not request, nor did the parties conduct, a meet and confer. Had they done so, they would have learned about the erroneous assumptions underlying the motion. The reason Zuffa never

identified the potential or anticipated litigation involved in the challenged documents is because plaintiffs never asked Zuffa for the basis of its work product claim. For all of these reasons, the court should deny plaintiffs' motion.

## C. Plaintiffs' Reply

Plaintiffs reply that Zuffa's response has failed to establish a logical and necessary connection between the Mercer documents and the Alvarez litigation, or any other litigation Zuffa claims was anticipated at the time the Mercer documents were created. Additionally, Zuffa did not even disclose the Alvarez litigation in the list of litigations and disputes it provided in discovery in this case. The gravamen of the Alvarez litigation was that the UFC paid its fighters more than Bellator, who sued Alvarez to prevent him from fighting in the UFC for more money. Similarly, Zuffa has not shown that litigation from current or former fighters was fairly foreseeable at the time the documents were prepared or created. Its concerns that fighters might file suit regarding issues of fighter pay and enforceability of Zuffa's contracts do not constitute a credible threat of litigation. Similarly, inquiries from reporters and bloggers and fighters and their agents which related to typical business concerns do not meet Zuffa's burden of establishing a specific threat of litigation. Zuffa's explanation about reasonably foreseeable litigation which generated the Mercer documents is "exactly the type of generalized and un-specific threat of litigation that courts have deemed insufficient to establish work product protection." This case is too temporally remote from the creation of the Mercer documents to qualify as work product documents. No other litigation ever materialized and the work product doctrine does not apply to documents created in the ordinary course of business that later serve a litigation-related purpose.

The fighter pay assessment was commissioned after the Alvarez litigation settled. The fact that the documents may now have a litigation purpose, or are probative of the claims in this litigation, does mean that the documents were work product protected when they were created. Plaintiffs also argue that the challenged documents clearly serve dual business and litigation purposes. Work product protection is only afforded to documents that would not have been created in a substantially similar form but for the prospect of litigation. Zuffa concedes that Mercer

proposed to perform virtually the same study before Zuffa's outside counsel allegedly recommended the study to prepare for unspecified "imminent litigation."

Plaintiffs have shown substantial need for the documents because plaintiffs complaint makes allegations that compare fighter pay in the UFC with other sports leagues, making these documents directly relevant and highly probative. The fact that similar evidence may be available does not cloak the material from production or discovery. Mercer's analysis is unique, and to plaintiffs' knowledge, the only type of analysis Zuffa performed comparing fighter pay to other sports leagues.

Plaintiffs also argue that Zuffa appears to have used the fighter pay assessment for non-legal purposes. Zuffa executives frequently compare UFC fighter and compensation to other sports. Specifically, in January 2015, Zuffa created a presentation entitled "Minimum Fighter Pay" which was produced in this case. The presentation reflects analysis of different pay scales for UFC fighters and the effect on UFC's total fighter compensation. This presentation makes it implausible that Zuffa did not use any information or data from the pay assessment performed by Mercer for business purposes.

The reply reiterates arguments that Plaintiffs have a substantial need for the documents because they directly address plaintiffs' allegation that Zuffa's pay structure harmed plaintiffs by suppressing their wages, and that UFC fighter pay compares unfavorably to the four major sports leagues that are part of the comparator group proposed by Mercer. Plaintiffs dispute that the Mercer presentation refers to documents publicly available. The proposal refers to the Form 990 for the PGA and NFL, but for the rest of the categories "it is impossible to tell where Mercer got this information." The reply also reiterates arguments that Zuffa waived any work product protection for the challenged documents by failing to claw back the Mercer statement of work.

Finally, plaintiffs contend that the motion challenging work product was appropriately filed pursuant to the protective order entered in this case. A meet and confer would not have been productive to narrow the privilege dispute that concerns three documents "where the parties' positions are well understood."

/ / /

**D. Motions to Seal**

The motion, response, reply, and supporting exhibits and declarations filed on the public record were heavily redacted, and numerous motions to seal were filed requesting that redacted briefs, declarations and exhibits filed under seal remain redacted and sealed on the public record. Plaintiffs' motions to seal are based on their obligation to file documents produced in discovery which opposing counsel marked as confidential pursuant to the protective order and amended protective order governing confidentiality entered in this case. Defendants' motions to seal are based on arguments the redacted portions of the briefs and supporting declarations, and exhibits filed under seal, are confidential and entitled to protection from public disclosure on various grounds.

Hundreds of pages were filed in connection with the moving and responsive papers involved in this motion challenging work product protection. The court lacks the time and the resources to determine, on a line-by-line, page-by-page, and document-by-document basis whether the parties have shown good cause for each and every redaction and sealed document. The court finds that the documents filed on the public record, coupled with this detailed decision and order which explains the parties' disputes and the court's rationale for its decision, complies with the holdings of the Supreme Court and Ninth Circuit which create a presumption of public access to judicial files and records, and the good cause showing required for sealing documents. This is a non-dispositive motion, and the parties' motions, coupled with this detailed decision and order explaining the rationale for the court's order accomplishes the objective of providing public access.

## DISCUSSION

**I. Meet and Confer**

"Discovery is supposed to proceed with minimal involvement of the Court." *Cardoza v. Bloomin' Brands, Inc.*, No. 2:13-cv-01820-JAD-NJK, --- F. Supp. 3d. ----, 2015 WL 6123192, at *6 (D. Nev. Oct. 16, 2015) (citing *F.D.I.C. v. Butcher*, 116 F.R.D. 196, 203 (E.D. Tenn. 1986)). Litigants and their counsel should strive to be cooperative, practical, and sensible, and should seek

judicial intervention "only in extraordinary situations that implicate truly significant interests." *Id.* (citing *In re Convergent Techs. Securities Litig.*, 108 F.R.D. 328, 331 (N.D. Cal. 1985)).

A threshold issue in the review of any discovery motion is whether the movant made adequate efforts to resolve the dispute without court intervention. Federal Rule of Civil Procedure 37(a)(1) requires that the party bringing a discovery motion must "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Similarly, Local Rule 26–7(c) provides that "[d]iscovery motions will not be considered unless the movant (1) has made a good-faith effort to meet and confer as defined by LR IA 1-3(f) before filing the motion, and (2) includes a declaration setting forth the details and results of the meet-and-confer conference about each disputed discovery conference."

Judges in this district have held that "personal consultation" means the movant must "personally engage in two-way communication with the nonresponding party to meaningfully discuss each contested discovery dispute in a genuine effort to avoid judicial intervention." *ShuffleMaster*, *Inc. v. Progressive Games*, *Inc.*, 170 F.R.D. 166, 171 (D. Nev. 1996). The consultation obligation "promote[s] a frank exchange between counsel to resolve issues by agreement or to at least narrow and focus matters in controversy before judicial resolution is sought." *Nevada Power v. Monsanto*, 151 F.R.D. 118, 120 (D. Nev. 1993). To meet this obligation, parties must "treat the informal negotiation process as a substitute for, and not simply a formalistic prerequisite to, judicial resolution of discovery disputes." *Id.* This is done when the parties "present to each other the merits of their respective positions with the same candor, specificity, and support during the informal negotiations as during the briefing of discovery motions." *Id.* To ensure that parties comply with these requirements, movants must file certifications that "accurately and specifically convey to the court who, where, how, and when the respective parties attempted to personally resolve the discovery dispute." *ShuffleMaster*, 170 F.R.D. at 170. Courts may look beyond the certification made to determine whether a sufficient meet-and-confer actually took place. *See*, *e.g.*, *F.D.I.C. v. 26 Flamingo*, *LLC*, 2013 WL 2558219,

*1 (D. Nev. June 10, 2013) (quoting *De Leon v. CIT Small Business Lending Corp.*, 2013 WL 1907786 (D. Nev. May 7, 2013)).

Neither side complied with its meet-and-confer obligations before this motion was filed. Zuffa's claw back letter did not articulate a basis for its claim the documents were work product protected. It was Zuffa's burden, as the party claiming work product protection, to substantiate its claim of qualified privilege. Nothing in the record establishes that Zuffa even attempted to meet its burden until after this motion was filed. Zuffa did not list the documents on a privilege log before this motion was filed. A privileged document log was provided, for the first time, on April 27, 2017, and logged approximately 30,000 documents. Plaintiff sent a letter indicating an intention to challenge Zuffa's claw back of the documents in dispute. Counsel for plaintiffs made no effort to genuinely try to resolve the parties' dispute without court intervention. The meet and confer process would, at a minimum, have clarified and narrowed the issues. However, it is apparent that no amount of meet and confer would have resolved the parties' current dispute. Judicial intervention was inevitable. Rather than deny the motion on the parties' failure to comply with their meet-and-confer obligations, the court will decide the matter on the merits to avoid further delay and interruption with already protracted pretrial litigation proceedings in this case.

## II.    The Work Product Doctrine

The work product doctrine is a "qualified privilege" that protects "certain materials prepared by an attorney acting for his client in anticipation of litigation." *United States v. Nobles*, 422 U.S. 225, 237–38 (1975) (internal quotation omitted) ("At its core the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case."). The work product doctrine is codified in Rule 26(b)(3) and it protects "from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *In re: Grand Jury Subpoena*, 357 F.3d 900, 906 (9th Cir. 2004), (citing *Admiral Ins. Co. v. United States District Court*, 881 F.2d 1486, 1494 (9th Cir. 1989)). An adverse party may obtain documents protected by the work product privilege only upon a showing of substantial need and undue hardship in obtaining the substantial equivalent of the materials by other means. Fed. R. Civ. P. 26(b)(3).

The Ninth Circuit has held that to qualify for work product protection under Rule 26(b)(3), the documents must: (1) be prepared in anticipation of litigation or for trial; and (2) be prepared by or for another party, or by or for that other party's representative. *In re: Grand Jury Subpoena*, 357 F.3d at 907. The Ninth Circuit refers to documents prepared exclusively "in anticipation of litigation" as "single purpose" documents. *Id.*

Plaintiffs claim that the documents in dispute are ordinary business documents which are not protected by the work product doctrine, or at most, "dual purpose" documents. The Ninth Circuit has adopted the "because of" standard articulated by Wright and Miller in applying the work product doctrine to dual purpose documents. *Id.* Under this standard, documents should be deemed prepared "in anticipation of litigation" for purposes of qualified work product protection under Rule 26(b)(3) if "in the light of the nature of the documents and the factual situation in the particular case, the documents can be fairly said to have been prepared or obtained because of the prospect of litigation." *Id.* quoting The Late Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, 8 *Federal Practice and Procedure* § 2024 (2d ed. 1994). This standard "does not consider whether litigation was a primary or secondary motive" for creation of the document. *Id.* at 908. Rather, the court examines the totality of the circumstances and affords work product protection if it finds the "document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation." *Id.* quoting *United States v. Aldman*, 134 F.3d 1194, 1195 (2nd Cir. 1998). "When there is a true independent purpose for creating a document, work product protection is less likely, but when two purposes are profoundly interconnected, the analysis is more complicated." *Id.*

It is undisputed that the Mercer documents were not prepared in anticipation of this case. The documents were created many months before the complaint in this case was filed. Zuffa does not claim that the documents are entitled to protection as dual-purpose documents. Rather, it claims the documents are single purpose documents prepared by a representative of outside counsel in anticipation of litigation.

Zuffa claims that it anticipated litigation with Bellator and MMA fighters because of a lawsuit filed in the District of New Jersey in January 2013 by Bellator, a rival MMA promoter,

against Eddie Alvarez, a fighter under contract with Bellator. The complaint in that case alleged that Eddie Alvarez had breached his contract with Bellator by negotiating with Zuffa before his contractual obligations to Bellator were concluded. The complaint also asserted tortious interference with contract claims against unserved Doe defendants. Zuffa's opposition claims that because Zuffa was negotiating with Alvarez "its outside counsel believed there was a high likelihood that Zuffa could be named in the lawsuit as one of the Doe defendants." Zuffa received a non-party subpoena duces tecum and Campbell & Williams engaged in a "number of interactions with Bellator's counsel." Thus, Zuffa argues, the Bellator/Alvarez lawsuit led outside counsel to subjectively and objectively believe that litigation with Bellator over Mr. Alvarez was a reasonably foreseeable possibility.

Zuffa claims outside counsel commissioned the fighter pay assessment study to assess its exposure in the Alvarez litigation and "attendant allegations" from fighters regarding their compensation, and the enforceability of Zuffa's standard fighter contract. Zuffa does not explain, and the court cannot discern, how the fighter pay assessment study would assist outside counsel in assessing Zuffa's potential exposure to Bellator in a potential tortious interference with the Alvarez/Bellator contract claim. Additionally, Zuffa has not identified a single threat of litigation from a fighter, fighter representative, or any other party. Public statements by fighters, their representatives, and members of the press questioning the fairness of Zuffa fighter compensation and contract terms simply do not amount to the threat of reasonably foreseeable litigation.

The court finds that Zuffa has not shown that in the light of the nature of the disputed documents themselves, and the totality of the circumstances at the time the documents were prepared, that the documents were prepared because of reasonably foreseeable litigation. It is undisputed that Zuffa hired Mercer, an HR consulting company, to conduct a non-fighter pay assessment study in March 2013. Zuffa's opposition claims that after that study was completed, Mercer proposed a fighter pay assessment study.

The Hendricks declaration submitted in support of Zuffa's opposition states that in March 2013, Zuffa engaged Mercer to perform a study of Zuffa employee compensation. Zuffa Opposition (ECF Nos. 294, 295), Hendricks declaration ¶ 2. The study did not involve fighters

under contract with Zuffa.  *Id.*  After Mercer completed the compensation study, Mercer proposed a new study regarding fighter pay compensation.  *Id.* ¶ 3.  On August 8, 2013, Cathy Shepard sent Zuffa CEO Lorenzo Fertitta a draft Statement of Work-Fighter Pay Program Review and Design.  *Id.*  Mr. Hendricks attests that Zuffa never retained Mercer to do the proposed study because there was no "business purpose significant enough to justify" it.  *Id.* ¶ 4.  Because of ongoing litigation between Bellator and Alvarez "Zuffa put a litigation hold on potentially relevant documents" on May 3, 2013.  *Id.* ¶ 5.

Zuffa claims that outside counsel, Campbell & Williams, became aware of the Mercer proposal, and decided to commission the study to assist in potential litigation with Bellator arising out of the Bellator/Alvarez case.  Zuffa's Opposition, Campbell Declaration.  Hunter Campbell's declaration attests that in August 2013, the firm learned that Bellator and Alvarez reached a settlement of the Alvarez litigation.  *Id.* ¶ 6.  The firm did not know the terms of the settlement agreement, but subsequently became aware of at least some of the terms.  *Id.*  The settlement agreement contained a unique clause that provided, inter alia, that any negotiations between Alvarez and Zuffa were to be kept strictly confidential and subject to a written confidentiality agreement that was approved by Bellator.  *Id.*  The law firm believed litigation with Bellator regarding Alvarez was likely even after the settlement.  *Id.* ¶ 7.  There were difficulties with Bellator concerning Alvarez between February 2014, and August 2014.  *Id.* ¶ 7.

The publication of Zuffa's contract in the New Jersey litigation generated a significant amount of media interest and public scrutiny over Zuffa's compensation to fighters and the terms of its agreements.  *Id.* ¶ 9.  Zuffa and the law firm began receiving numerous inquiring from reporters and bloggers, fighters, and their agents.  *Id.*  The declaration provides specific examples of inquiries and public commentary in paragraph 10.  "The significant public fallout from the disclosure of Zuffa's contract made Campbell & Williams believe that litigation from a fighter regarding Zuffa's compensation or the enforceability of Zuffa's contract provisions was likely to occur in the near future."  *Id.* ¶ 7.  This led to discussions with Zuffa executives.  *Id.* ¶ 12.  From discussions with Zuffa executives the firm learned that Mercer "had pitched a product regarding

Zuffa's fighter pay and an assessment of the pay and benefits of Zuffa's fighters in comparison to other athletes in sports organizations." *Id.*

Campbell & Williams engaged Mercer in its role as outside counsel on September 25, 2013, and paid Mercer directly for its services, believing Mercer's work would be helpful to shape litigation strategies in anticipation of lawsuits with Bellator regarding Alvarez and fighters under contract with the UFC. *Id.* Mr Campbell avers that "[t]o my knowledge the Mercer study was not commissioned for any business purpose, and I am not aware of anyone at Zuffa using it for a business purpose." *Id.* ¶ 14. The firm would not have commissioned the study but for anticipated litigation. *Id.* After the firm engaged Mercer on September 25, 2013, Hunter coordinated as needed with Zuffa employees to collect data for the study. *Id.* ¶ 15. Ultimately, the study was not completed "as Mercer, by its own admission, lacked adequate statistical information to complete the study, particularly as it related to other combat sports and smaller sports organizations." *Id.*

The court does not doubt the representations made by Campbell & Williams that it directly commissioned the study and paid for it. However, it is clear that the Mercer fighter pay assessment proposal followed closely on the heels of work Mercer did for Zuffa exclusively for business purposes. Zuffa also contends that the Mercer proposal was unsolicited, and that when Campbell & Williams learned about the proposal in September 2013, the firm decided it would be helpful to prepare for potential litigation with Bellator and fighters under contract with Zuffa.

The court finds these arguments unpersuasive. A plain reading of the documents themselves does not support Zuffa's arguments that the fighter pay assessment proposal was unsolicited. The August 8, 2013 Mercer statement of work for a proposed fighter pay program review and design which was addressed to Zuffa's CEO, Lorenzo Fertitta, and refers to an engagement letter containing terms and conditions dated March 3, 2013. Opposition (ECF No 294/295), Exhibit K. Zuffa does not claim this document is work product, characterizing it as a rejected business proposal. The August 9, 2013 email from Cathy Shepard of Mercer to Mr. Fertitta and others with Zuffa refers to an attached proposal prepared by Howard Levine and Shepard "per your request" for "designing a compensation and benefits approach for your Fighters." *Id*, Exhibit J. A follow up email was sent to Mr. Fertitta and Lawrence Epstein inquiring

whether they had reviewed the fighter pay proposal, had any questions or wanted to schedule a call to discuss it. *Id*, Exhibit L. The statement of work describes the proposed "Fighter Pay Review and Design." Its goal was to "not only help test the alignment of current fighter compensation and benefits practices against UFC strategies and market practices, but also identify potential opportunities for change." The context in which the documents were created, on the heels of a non-fighter pay assessment study, the references to requests made for the proposal by Mr. Fertitta, and the description of the purpose of the proposed study suggest a business rather than legal purpose.

Nothing in the record suggests that Zuffa had been threatened with a lawsuit over fighter compensation at the time Mercer made its proposal, or at the time Campbell & Williams commissioned the study. Additionally, Zuffa does not articulate how a fighter pay assessment study would be useful in potential litigation with Bellator over the Eddie Alvarez contract negotiations. The District of New Jersey case involved a contract dispute between a rival promotor and a fighter under contract with that rival MMA promoter. It was filed in January 2013, and settled in August 2013. Bellator sued Alvarez for breach of contract to preclude Alvarez from negotiating with Zuffa, while he was still under contract with Bellator. Bellator's potential tortious interference claim involved allegations unidentified parties were interfering with the Bellator/Alvarez contract. Zuffa does not explain how a fighter pay program review and design study is work product linked to Bellator's potential tortious interference claim against it.

Moreover, the three disputed documents do not contain any indication on their face that they were prepared by or at the request of outside counsel. This is probably why litigation counsel who produced the documents did not recognize that they were potentially covered by qualified work product protection. No attempt was made to claw back the documents for months, even though counsel for both sides were meeting and conferring about Rule 30(b)(6) deposition topics, including on the subject matter discussed in the Mercer documents. Nothing in the documents themselves contain the mental impressions, conclusions, opinions, or legal theories of counsel.

It is now well settled that the work product doctrine is an intensely practical one that protects materials prepared by attorneys and their agents in anticipation of litigation. *Nobles*, 422

U.S. at 2170. The court finds that Zuffa has not established that the Mercer documents in dispute in this motion were prepared in anticipation of reasonably foreseeable litigation. At most, Zuffa has shown that the Bellator/Alvarez lawsuit generated a great deal of interest in the MMA industry about Zuffa's fighter compensation, and that Zuffa and its outside counsel, Campbell & Williams, were receiving numerous inquiries about the New Jersey lawsuit and Zuffa's compensation of its fighters.

The timing and context of the creation of the documents lead the court to conclude they were created in response to a public relations problem, or what Mr. Campbell's declaration describes as "the significant public fallout from the disclosure of the Zuffa contract" in the New Jersey litigation. The documents themselves contain references to a business purpose for comparing fighter compensation of UFC athletes with that of athletes in other sports—"designing a compensation and benefits approach for your Fighters" with the goal of the study to "not only help test the alignment of current fighter compensation and benefits practices against UFC's strategies and market practices, but also identify potential opportunities for change." There is simply no support in the record that litigation over Zuffa's fighter compensation practices was threatened at the time the documents were created. Zuffa has shown that there was a great deal media interest and public scrutiny, "significant public fallout" and expressions of frustration and dissatisfaction over fighter pay and contract terms as a result off the disclosure Zuffa documents in the Alvarez litigation in New Jersey. This is insufficient to meet its burden of establishing the Mercer documents in dispute were prepared in anticipation of litigation.

The documents were prepared in the context of a follow up to a non-fighter compensation study Zuffa acknowledges it conducted for a business purpose. Zuffa does not claim that any fighter, fighter representative, or anyone else actually threatened litigation over Zuffa's compensation to fighters or the enforceability of Zuffa's fighter contract. It is obvious how the proposed fighter pay program review and design study would be useful in contract negotiations with fighters and their agents, and to respond to industry criticism. Zuffa has not shown how the disputed documents would help outside counsel analyze a potential tortious interference claim by Bellator.

Because the court has found that Zuffa has not met its burden of establishing that the three disputed documents involved in this motion are protected by the qualified work product privilege, the court need not determine whether plaintiffs have shown substantial need for the documents, or that plaintiffs cannot obtain their substantial equivalent without undue burden.

### III.    Waiver

Unlike the attorney-client privilege, which is waived by voluntary disclosure, the work product privilege is not waived unless voluntary disclosure "has substantially increased the opportunities for potential adversaries to obtain the information." *Goff v. Harris Operating Co., Inc.*, 240 F.R.D. 659 (2007) (citing Charles A. Wright, Arthur R. Miller & Richard L. Moore, *Federal Practice & Procedure*: Civil 2d § 2024 (1994) at 369 & n.52).  Thus, one may waive the attorney-client privilege without waiving the work-product privilege.  *Id.* (citing Wright & Miller and *In re: EchoStar Communications*, 448 F.3d 1294, 1301 (Fed. Cir. 2006)).  In *EchoStar*, the Federal Circuit held that "work product waiver is not a broad waiver of all work product related to the same subject matter like the attorney-client privilege."  448 F.3d at 1301. (citation omitted). Rather, waiver of work product only extends to the "factual" or "non-opinion" work product concerning the same subject matter as the disclosed work product.  *Id.*, citing *Nobles*, 422 U.S. at 239.

As Wright & Miller explain, the purpose of the attorney-client privilege is to protect confidential communications.  The purpose of the privilege ceases to exist if the communications are voluntarily disclosed to a third person.  *Federal Practice & Procedure*, 3d § 2024 at 531. However, the purpose of the work product rule is to protect evidence from the knowledge of opposing counsel and his client, thereby preventing its use against the lawyer gathering the materials.  *Id.*  Work product protection is only waived with respect to matters disclosed. *Hernandez v. Tanninem*, 604 F.3d 1095, 1100 (9th Cir. 2010) (holding district court erred in finding blanket waiver of attorney-client and work-product privilege as to entire case file of former attorney, and finding work-product waiver only as to the subject of former attorney's communications with witness produced in evidence in opposition to defense motion for summary judgment).

As the court reasoned in *Goff v. Harrah's*, 240 F.R.D. 659, 662 (D. Nev. 2007)

> A per se rule against partial disclosure of work product would force a choice between improperly concealing facts contained in work product that should be revealed, or revealing the entirety of trial preparation documents even though the documents contain opinions to which the other party is not entitled. The work product privilege is 'intensely practical' [citation omitted] and does not compel such a result.

Zuffa only recently produced a privileged document log on April 27, 2017, on which approximately 30,000 documents have been logged. At the June 1, 2017 hearing, the court declined to rule on counsel for plaintiffs' oral request to deem work product privilege waived with respect to all of the Mercer documents listed on the privilege log. The court has not seen the privileged document log, has no idea whether Zuffa complied with its obligations under Rule 26(b)(2)(5) to justify its privileged designations, and expresses no opinion about whether there are Mercer documents which may be appropriately withheld as privileged. The parties must meaningful meet and confer before requesting judicial intervention on the propriety of disputed privilege log designations. However, the court finds that Zuffa has waived work product protection for documents containing the facts and non-opinion work product on which Mercer relied on in conducting its proposed study, and any documents containing or discussing Mercer's findings, conclusions, and recommendations in connection with its proposed fighter pay assessment study.

**IT IS ORDERED** that:

1. Plaintiffs' Motion to Challenge Work Product Designation (ECF Nos. 281, 282) is **GRANTED** and Zuffa shall produce the three disputed documents.

2. Zuffa shall also produce all documents containing the facts and non-opinion work product on which Mercer relied on in conducting its proposed study, and any documents containing or disclosing Mercer's findings, conclusions, and recommendations in connection with its proposed fighter pay program review and design/fighter pay assessment study.

/ / /

3. The parties' Motions to Seal (ECF Nos. 296, 298, 305, 308, 310) related to this motion are **GRANTED**.

DATED this 9th day of June, 2017.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE