| | |
|---|---|
| **From:** | Marroso, David |
| **To:** | Robert C. Maysey |
| **Cc:** | Jenkins, Brooke D. |
| **Subject:** | Top Rank, Arum | Objections |
| **Date:** | Tuesday, April 25, 2017 1:00:47 PM |
| **Attachments:** | 04_25_17_Arum_Objs_to_Subpoena.pdf |
| | 04_25_17_Top_Rank_Objs_to_Subpoena.pdf |

Rob,

Attached are courtesy copies of objections being served by Top Rank and Mr. Arum.

David

### O'Melveny

David Marroso
dmarroso@omm.com
310-246-8469

O'Melveny & Myers LLP

1999 Ave. of the Stars, 8th Fl
Los Angeles, CA  90067

DAVID MARROSO (Cal. S.B. #211655)
dmarroso@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067-6035
Telephone:  (310) 553-6700
Facsimile:   (310) 246-6779

Attorneys for Non-Party
Robert Arum

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| Cung Le, Nathan Quarry, Jon Fitch et al. | Case No. 2:15-cv-01045-RFB-PAL |
|---|---|
| Plaintiffs, | Honorable Richard F. Boulware, II |
| v. | **NON-PARTY ROBERT ARUM'S OBJECTIONS TO PLAINTIFFS' SUBPOENA TO TESTIFY AT A DEPOSITION** |
| Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC, | |
| Defendant. | |

Pursuant to Rules 26, 34, and 45 of the Federal Rules of Civil Procedure, Robert Arum, a Non-party, hereby objects and responds to the Subpoena To Testify At A Deposition (the "Subpoena") propounded by Plaintiffs, dated January 23, 2017, as follows:

## PRELIMINARY STATEMENT

Plaintiffs are professional mixed martial arts ("MMA") fighters who have fought in bouts promoted by Defendant, Zuffa d/b/a Ultimate Fighting Championship ("UFC"). Arum is the founder and CEO of Top Rank, a promoter in the boxing industry, not the MMA industry. Arum nor Top Rank is a party to this action. Top Rank has never promoted an MMA event. Boxing and MMA are two different sports, promoting them is two different businesses, and, importantly for purposes of these objections, they are two completely different markets—according to Plaintiffs themselves. For example, in their Complaint, Plaintiffs assert:

- "Combat sports such as boxing or those that are limited to a single martial art, such as judo, are not adequate substitutes for live Elite Professional MMA." Consolidated Amended Antitrust Class Action Complaint ¶ 60.

- "Single discipline combat sports, such as boxing and kick-boxing, do not qualify as economic substitutes because they do not enjoy reasonable interchangeability of use and cross-elasticity of demand amongst the consuming audience." *Id.*

- "Promotion of live Elite Professional MMA events is not reasonably interchangeable with promoting any other sport or entertainment, including boxing and/or kick-boxing. For instance, and on information and belief, raising the prices for live MMA events above competitive levels by a small but significant amount for a substantial period of time would not cause so many consumers to switch to other sporting events or entertainment options that such price inflation would be unprofitable. Moreover, dropping the price for attending or viewing any other sport relative to the price of attending or viewing an MMA event by a small but significant amount for a substantial period of time would not cause so many consumers to switch to the other sport that such relative price difference would be profitable for the non-MMA event." *Id.* ¶ 62.

- "Athletes who have trained for, and now engage in, sports other than MMA, including professional boxing, and those who engage in a single martial art, such as judo, are not substitutes for Elite Professional MMA Fighters." *Id.* ¶ 79.

- "[N]o material number of Elite Professional MMA Fighters could successfully transition to boxing sufficient to prevent a monopsonist in the market for Elite Professional MMA Fighter services from artificially suppressing Elite Professional MMA Fighter compensation below competitive levels by even a significant degree for a substantial period of time." *Id.* ¶ 82.

- "Because other sports are not plausible alternatives for Elite Professional MMA Fighters, reducing the compensation of Elite Professional MMA Fighters below competitive levels by even a significant degree for a substantial period of time will not cause sufficient numbers of Elite Professional MMA Fighters to switch to other sports or professions to make the Elite Professional MMA Fighter compensation suppression unprofitable." *Id.* ¶ 84

Despite advancing the position that boxing and MMA are wholly different markets, Plaintiffs nevertheless served a subpoena for testimony on Top Rank's Founder and CEO, Bob Arum, as well as sweeping document requests seeking confidential, proprietary financial information for over 100 separate boxing events. In an effort to avoid embroiling the court in a potentially wasteful dispute, on April 4, 2017, Top Rank offered to provide a set of "sufficient to show" documents and Arum offered to provide testimony for three hours in Los Angeles on a date convenient for all parties. Plaintiffs rejected this offer with no explanation other than they want more.

Accordingly, Top Rank asserts objections to the subpoena served on it and Arum asserts these objections. These objections are made subject to, and without in any way waiving or intending to waive, any future objections as to competency, relevance, materiality, privilege, or admissibility. No incidental or implied admissions are intended by these objections. The fact that Arum objects to the Subpoena is not intended and shall not be construed as an admission that Arum accepts or admits the existence of any facts or legal contentions set forth or assumed by said Subpoena, or that any of said objections constitute admissible evidence.

Arum makes these objections based solely on information that is presently available and specifically known to Arum. Arum expressly reserves the right to amend or supplement these objections at any time. Arum also makes these objections without waiving, or intending to waive, his right to seek a protective order or file a motion to quash the Subpoena to which these objections are addressed.

**GENERAL OBJECTIONS**

The following general objections and statements apply to the Subpoena issued by Plaintiffs:

1. Arum objects to the Subpoena to the extent that it purports to impose obligations or burdens different from, or in excess of, those set forth in the Federal Rules of Civil Procedure or applicable local rules.

2. Arum objects to the Subpoena to the extent that it seeks information that is not relevant, beyond the scope of permissible discovery, or not reasonably calculated to lead to the discovery of admissible evidence.

3. Arum objects to the Subpoena to the extent that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney work product doctrine, the common legal interest doctrine, or similar privileges or protections. Arum does not waive, and hereby asserts and preserves, all such applicable privileges and protections.

4. Arum objects to the Subpoena to the extent that it seeks disclosure of information where such disclosure would violate any constitutional, statutory, or common-law privacy right of individuals or entities. Arum further objects to the Subpoena to the extent that it seeks information that is proprietary, confidential, trade secret, or within the scope of a confidentiality agreement, employment agreement, protective order or settlement agreement, or would otherwise require the consent of others prior to disclosure.

5. Arum objections to the Subpoena to the extent it is being used for any other improper purpose, such as to harass.

Dated: April 25, 2017

O'MELVENY & MYERS LLP

By: /s/ David Marroso /BDJ

*Attorneys for Non-Party Robert Arum*

**PROOF OF SERVICE BY FEDEX/OVERNIGHT DELIVERY**

I am over the age of eighteen years and not a party to the within action. I am a resident of or employed in the county where the service described below occurred. My business address is 1999 Avenue of the Stars, 8th Floor, Los Angeles, California 90067-6035. On April 25, 2017, I served the following:

**NON-PARTY ROBERT ARUM'S OBJECTIONS TO PLAINTIFFS' SUBPOENA TO TESTIFY AT A DEPOSITION**

by putting a true and correct copy thereof together with an unsigned copy of this declaration, in a sealed envelope, with delivery fees paid or provided for, for delivery the next business day to:

> Robert C. Maysey
> **Warner Angle Hallam Jackson & Formanek PLC**
> 2555 E. Camelback Road
> Suite 800
> Phoenix, Arizona 85016

and by placing the envelope for collection today by the overnight courier in accordance with the firm's ordinary business practices. I am readily familiar with this firm's practice for collection and processing of overnight courier correspondence. In the ordinary course of business, such correspondence collected from me would be processed on the same day, with fees thereon fully prepaid, and deposited that day in a box or other facility regularly maintained by FedEx, which is an overnight carrier.

I declare under penalty of perjury under the laws of State of California that the above is true and correct. Executed on April 25, 2017, at Los Angeles, California.

*/s/ Julia Fairfoot*
Julia Fairfoot

1  DAVID MARROSO (Cal. S.B. #211655)
   dmarroso@omm.com
2  O'MELVENY & MYERS LLP
   1999 Avenue of the Stars, 8th Floor
3  Los Angeles, CA 90067-6035
   Telephone:  (310) 553-6700
4  Facsimile:   (310) 246-6779

5  Attorneys for Non-Party
   Top Rank, Inc.

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Cung Le, Nathan Quarry, Jon Fitch et al. | Case No. 2:15-cv-01045-RFB-PAL |
| Plaintiffs, | Honorable Richard F. Boulware, II |
| v. | **NON-PARTY TOP RANK, INC.'S OBJECTIONS TO PLAINTIFFS' SUBPOENA TO PRODUCE DOCUMENTS** |
| Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC, | |
| Defendant. | |

1   Pursuant to Rules 26, 34, and 45 of the Federal Rules of Civil Procedure, Top Rank, Inc.
2   ("Top Rank"), a Non-party, hereby objects and responds to the Subpoena To Produce Documents,
3   Information, Or Objects Or To Permit Inspection Of Premises (the "Subpoena") propounded by
4   Plaintiffs, dated February 2, 2017, as follows:

## PRELIMINARY STATEMENT

Federal Rule of Civil Procedure 45 states that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." FED. R. CIV. P. 45(d)(1). In determining whether a subpoena imposes undue burden or expense, courts apply the classic "proportionality" standard which balances the importance and relevance of the requested information against the scope of the requests and whether the information is confidential or proprietary. *See Roberts v. Clark Cnty. Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. 2016); *cf.* FED. R. CIV. P. 26 (party discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit"). Here, Plaintiffs seek to impose a massive time-consuming and expensive burden on a non-party that runs its business in—*by Plaintiffs' own admissions*—a wholly separate and distinct market.

Different Markets. Plaintiffs are professional mixed martial arts ("MMA") fighters who have fought in bouts promoted by Defendant, Zuffa d/b/a Ultimate Fighting Championship ("UFC"). Top Rank is not a party to this action. Top Rank is a promoter in the boxing, not the MMA, industry. Top Rank has never promoted an MMA event. Boxing and MMA are two different sports, promoting them is two different businesses, and, importantly for purposes of these objections, they are two completely different markets—according to Plaintiffs themselves. For example, in their Complaint, Plaintiffs assert:

- "Combat sports such as boxing or those that are limited to a single martial art, such as judo, are not adequate substitutes for live Elite Professional MMA." Consolidated Amended Antitrust Class Action Complaint ¶ 60.

- "Single discipline combat sports, such as boxing and kick-boxing, do not qualify as econo.nic substitutes because they do not enjoy reasonable interchangeability of use and cross-elasticity of demand amongst the consuming audience." *Id.*

- "Promotion of live Elite Professional MMA events is not reasonably interchangeable with promoting any other sport or entertainment, including boxing and/or kick-boxing. For instance, and on information and belief, raising the prices for live MMA events above competitive levels by a small but significant amount for a substantial period of time would not cause so many consumers to switch to other sporting events or entertainment options that such price inflation would be unprofitable. Moreover, dropping the price for attending or viewing any other sport relative to the price of attending or viewing an MMA event by a small but significant amount for a substantial period of time would not cause so many consumers to switch to the other sport that such relative price difference would be profitable for the non-MMA event." *Id.* ¶ 62.

- "Athletes who have trained for, and now engage in, sports other than MMA, including professional boxing, and those who engage in a single martial art, such as judo, are not substitutes for Elite Professional MMA Fighters." *Id.* ¶ 79.

- "[N]o material number of Elite Professional MMA Fighters could successfully transition to boxing sufficient to prevent a monopsonist in the market for Elite Professional MMA Fighter services from artificially suppressing Elite Professional MMA Fighter compensation below competitive levels by even a significant degree for a substantial period of time." *Id.* ¶ 82.

- "Because other sports are not plausible alternatives for Elite Professional MMA Fighters, reducing the compensation of Elite Professional MMA Fighters below competitive levels by even a significant degree for a substantial period of time will not cause sufficient numbers of Elite Professional MMA Fighters to switch to other sports or professions to make the Elite Professional MMA Fighter compensation suppression unprofitable." *Id.* ¶ 84

Sweeping Requests. Despite advancing the position that boxing and MMA are wholly different markets, Plaintiffs nevertheless served a sweeping document subpoena on non-party boxing promoter Top Rank seeking the production of years' worth of the most confidential, highly sensitive commercial and proprietary information imaginable. From Top Rank, Plaintiffs demand all documents during the "Relevant Period"—more than five years—relating to Top Rank's "income statements," accounting of revenues, expenses, and profits for boxing events it promotes, documents showing all payments Top Rank has made to boxers its promotes, and Top Rank's agreements with boxers under Top Rank's exclusive promotional control as well as all documents related to the negotiation of such agreements. In other words, Plaintiffs demand Top

1  Rank's "secret sauce"—how do you do what you do, how much do you charge your vendors, and
2  how much do you pay your talent. Obviously, Top Rank has a powerful privacy interest in
3  protecting this information.

4  Furthermore, collecting and organizing that mass of information would be a gargantuan
5  task. Top Rank currently promotes over 60 boxers and has promoted well over 100 boxers during
6  Plaintiffs' "Relevant Time Period." Top Rank has agreements and relationship s with multiple
7  domestic and international broadcasters and with venues around the globe. On average, Top
8  Rank promotes approximately 30 events per year, each with five or six matches per event. Over
9  the Relevant Time Period, then, Plaintiffs seek from a non-party in an unrelated and separate
10 market highly confidential and sensitive "profit and loss statements," proof of payment, revenue
11 ledgers for approximately 150 events and over 500 individual matches. The burden is
12 extraordinary.

13 Attempt to Compromise. In an effort to avoid embroiling the court in a potentially
14 wasteful dispute, on April 4, 2017, Top Rank offered to provide: (1) the gross revenue generated
15 from one event promoted by Top Rank in each of 2013, 2014, 2015, and 2016; and (2) the bout
16 agreement for each fighter from the event that was filed with each State's boxing/athletic
17 commission. Plaintiffs rejected this offer with no explanation other than they want more.

18 Top Rank, accordingly, asserts these responses and objections. These responses are made
19 subject to, and without in any way waiving or intending to waive, any future objections as to
20 competency, relevance, materiality, privilege, or admissibility. No incidental or implied
21 admissions are intended by these responses. The fact that Top Rank objects to the Subpoena or
22 any particular request described therein is not intended and shall not be construed as an admission
23 that Top Rank accepts or admits the existence of any facts or legal contentions set forth or
24 assumed by said request, or that any of said objections constitute admissible evidence.

25 Top Rank makes these responses based solely on information that is presently available
26 and specifically known to Top Rank. Top Rank expressly reserves the right to amend or
27 supplement these responses at any time. Top Rank also makes these responses without waiving,
28 or intending to waive, its right to seek a protective order or file a motion to quash the Subpoena to

1 | which these responses and objections are addressed.

## GENERAL OBJECTIONS

The following general objections and statements apply to each of the particular Requests propounded by Plaintiffs and are hereby incorporated within each response set forth below:

1. Top Rank objects to the Subpoena to the extent that it purports to impose obligations or burdens different from, or in excess of, those set forth in the Federal Rules of Civil Procedure or applicable local rules.

2. Top Rank objects to the Subpoena to the extent that it seeks documents and information that are protected from disclosure by the attorney-client privilege, the attorney work product doctrine, the common legal interest doctrine, or similar privileges or protections. Top Rank does not waive, and hereby asserts and preserves, all such applicable privileges and protections. Top Rank also objects to the Subpoena to the extent that it seeks disclosure of documents and information where such disclosure would violate any constitutional, statutory, or common-law privacy right of individuals or entities. Top Rank further objects to the Subpoena to the extent that it seeks documents and information that are proprietary, confidential, trade secret, or within the scope of a confidentiality agreement, employment agreement, protective order or settlement agreement, or would otherwise require the consent of others prior to disclosure.

3. Top Rank objects to the Subpoena to the extent that its defined terms, instructions, and requests for production (i) are unclear, ambiguous, subject to multiple interpretations, overbroad, or unduly burdensome; (ii) are inconsistent with the ordinary and customary meaning of the words or phrases they purport to define; (iii) seek to expand the obligations of the subpoenaed entity beyond those imposed by law; (iv) include assertions of purported fact that are inaccurate or at the very least are disputed by the parties to this action; or (v) incorporate other purported defined terms that suffer from such defects. In objecting to the Subpoena, Top Rank will employ what it regards as the reasonable, commonsense interpretation of the Subpoena in light of the relevant issues in the case.

4. Top Rank objects to the Subpoena to the extent that it seeks documents and information that are not relevant, beyond the scope of permissible discovery, or not reasonably

- 4 -

1  calculated to lead to the discovery of admissible evidence.

2      5.    Top Rank objects to the Subpoena to the extent it seeks documents and
3  information that are outside of its possession, custody, or control.

4      6.    Top Rank objects to the Subpoena to the extent it seeks documents and
5  information that are publicly available, or that are obtainable from some other source that is more
6  convenient, less burdensome or less expensive.

7      7.    Each of the above General Objections is incorporated into each Specific Objection
8  set forth below unless specifically stated otherwise.

9  **SPECIFIC REPONSES AND OBJECTIONS TO REQUESTS FOR PRODUCTION**
10 **REQUEST NO. 1:**

11 Your Company's Income Statements, including event-level profit and loss statements for
12 the Relevant Time Period, including without limitation All Documents, including depositions,
13 declarations, affidavits, or other statements under oath, You produced in any lawsuits or
14 arbitrations, or to any governing athletic commission or sanctioning body, relating to TOP
15 RANK's accounting of its revenues, expenses, and profits.

16 **RESPONSE TO REQUEST NO. 1:**

17 Top Rank incorporates by reference each of the above-stated General Objections as if
18 fully set forth herein. Top Rank further objects to this request on the grounds that it (a) is not
19 relevant to any claim or defense in the underlying litigation, nor reasonably calculated to lead to
20 the discovery of admissible evidence; (b) is overbroad and unduly burdensome in seeking Top
21 Rank's, a non-party's, income statements, including all documents relating to Top Rank's
22 accounting of its revenues, expenses, and profits without regard to whether such documents are
23 relevant to the underlying litigation; (c) seeks documents protected from discovery by the
24 attorney-client privilege, attorney work product doctrine, and/or common legal interest doctrine;
25 (d) seeks confidential, proprietary business information of Top Rank; (e) seeks sensitive financial
26 documents protected by the right to privacy; (f) seeks documents that are equally available to
27 Plaintiffs; and (g) is harassing and oppressive in seeking all documents dating back to January 1,
28 2005 through the present.

1   Prior to serving these Objections, Top Rank sought to meet and confer with Plaintiffs to
2   address how this request could be limited and/or clarified to address the objections. Plaintiffs
3   rejected Top Rank's proposed compromise.

**REQUEST NO. 2**

Data in as granular form as it is maintained (itemized ledger entries, if they exist) sufficient to show all bout-related revenues and expenses (including for championship bouts, bouts where victory leads to championship, and all other Professional Boxing Events), payments made to individual Professional Boxers (including purses, bonuses, pay-per view, and any other event and non-event related payments), and non-bout related revenues and expenses.

**RESPONSE TO REQUEST NO. 2:**

Top Rank incorporates by reference each of the above-stated General Objections as if fully set forth herein. Top Rank further objects to this request on the grounds that it (a) is not relevant to any claim or defense in the underlying litigation, nor reasonably calculated to lead to the discovery of admissible evidence; (b) is overbroad and unduly burdensome in seeking data sufficient to show all bout-related revenues and expenses, payments made to individual professional boxers, and non-bout related revenues and expenses without regard to whether such documents are relevant to the underlying litigation; (c) seeks documents protected from discovery by the attorney-client privilege, attorney work product doctrine, and/or common legal interest doctrine; (d) seeks confidential, proprietary business information of Top Rank; (e) seeks sensitive financial documents protected by the right to privacy; (f) seeks documents that are equally available to Plaintiffs; and (g) is harassing and oppressive in seeking all documents dating back to January 1, 2005 through the present.

Prior to serving these Objections, Top Rank sought to meet and confer with Plaintiffs to address how this request could be limited and/or clarified to address the objections. Plaintiffs rejected Top Rank's proposed compromise.

**REQUEST NO. 3**

To the extent not included in Your response to Request Nos. 1 and 2 above, documents sufficient to substantiate Bob Arum's statement that TOP RANK pays 80% of event revenue to

1   the Professional Boxers who participate in bouts promoted by TOP RANK, as set forth in the
2   following article: http://www.mmamania.com/2011/9/23/2444228/bob-arum-fires-back-at-
3   danawhite-ufc-fighters-get-paid-nothing.

**RESPONSE TO REQUEST NO. 3**

Top Rank incorporates by reference each of the above-stated General Objections as if fully set forth herein. Top Rank further objects to this request on the grounds that it (a) is not relevant to any claim or defense in the underlying litigation, nor reasonably calculated to lead to the discovery of admissible evidence; (b) is overbroad and unduly burdensome in seeking documents sufficient to substantiate Bob Arum's statement without regard to whether such documents are relevant to the underlying litigation; (c) seeks documents protected from discovery by the attorney-client privilege, attorney work product doctrine, and/or common legal interest doctrine; (d) seeks confidential, proprietary business information of Top Rank; (e) seeks sensitive financial documents protected by the right to privacy; (f) seeks documents that are equally available to Plaintiffs; and (g) is harassing and oppressive in seeking all documents dating back to January 1, 2005 through the present.

Prior to serving these Objections, Top Rank sought to meet and confer with Plaintiffs to address how this request could be limited and/or clarified to address the objections. Plaintiffs rejected Top Rank's proposed compromise.

**REQUEST NO. 4**

A Representative Sample of All Agreements between TOP RANK and any Boxers, relating to participation in a Professional Boxing Fight or Professional Boxing Event, and any Documents and Communications relating to the negotiation, termination, cancellation or transfer thereof. Responsive Documents include, without limitation, executed Agreements, draft Agreements, side letters, all negotiations between TOP RANK and any Boxer, including any Professional Boxer, or their agents, managers, promoters, or other representatives (regardless of whether such negotiations resulted in an executed Agreement), copies of any form agreements; and all Documents relating to the effects any such actual or potential Agreements between TOP RANK and any Athlete, including any professional Boxer, had on TOP RANK's revenues,

valuation, or ability to operate profitably as a Boxing Promoter.

**RESPONSE TO REQUEST NO. 4**

Top Rank incorporates by reference each of the above-stated General Objections as if fully set forth herein. Top Rank further objects to this request on the grounds that it (a) is not relevant to any claim or defense in the underlying litigation, nor reasonably calculated to lead to the discovery of admissible evidence; (b) is overbroad and unduly burdensome in seeking a sample of all agreement between Top Rank and any boxers relating to participation in a professional boxing fight or professional boxing event, and any documents and communications relating to the negotiation, termination, cancellation or transfer thereof without regard to whether such documents are relevant to the underlying litigation; (c) seeks documents protected from discovery by the attorney-client privilege, attorney work product doctrine, and/or common legal interest doctrine; (d) seeks confidential, proprietary business information of Top Rank; (e) seeks sensitive financial documents protected by the right to privacy; (f) seeks documents that are equally available to Plaintiffs; and (g) is harassing and oppressive in seeking all documents dating back to January 1, 2005 through the present.

Prior to serving these Objections, Top Rank sought to meet and confer with Plaintiffs to address how this request could be limited and/or clarified to address the objections. Plaintiffs rejected Top Rank's proposed compromise.

Dated: April 25, 2017

O'MELVENY & MYERS LLP

By: _____
David Marroso

*Attorneys for Non-Party Top Rank, Inc.*

**PROOF OF SERVICE BY FEDEX/OVERNIGHT DELIVERY**

I am over the age of eighteen years and not a party to the within action. I am a resident of or employed in the county where the service described below occurred. My business address is 1999 Avenue of the Stars, 8th Floor, Los Angeles, California 90067-6035. On April 25, 2017, I served the following:

**NON-PARTY TOP RANK, INC.'S OBJECTIONS TO PLAINTIFFS' SUBPOENA TO PRODUCE DOCUMENTS**

by putting a true and correct copy thereof together with an unsigned copy of this declaration, in a sealed envelope, with delivery fees paid or provided for, for delivery the next business day to:

> Robert C. Maysey
> **Warner Angle Hallam Jackson & Formanek PLC**
> 2555 E. Camelback Road
> Suite 800
> Phoenix, Arizona 85016

and by placing the envelope for collection today by the overnight courier in accordance with the firm's ordinary business practices. I am readily familiar with this firm's practice for collection and processing of overnight courier correspondence. In the ordinary course of business, such correspondence collected from me would be processed on the same day, with fees thereon fully prepaid, and deposited that day in a box or other facility regularly maintained by FedEx, which is an overnight carrier.

I declare under penalty of perjury under the laws of State of California that the above is true and correct. Executed on April 25, 2017, at Los Angeles, California.

_____
Julia Fairfoot