Jerome K. Elwell, State Bar No. 012699
Robert C. Maysey, State Bar No. 024204
WARNER ANGLE HALLAM
JACKSON & FORMANEK PLC
2555 East Camelback Road, Suite 800
Phoenix, Arizona 85016
Telephone: (602) 264-7101
jelwell@warnerangle.com
rmaysey@warnerangle.com

*Attorneys for Individual and Representative Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Luis Javier Vazquez, Brandon Vera, and Kyle Kingsbury*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In Re Subpoena Of<br><br>Top Rank, Inc. and Robert Arum<br><br>Cung Le, Nathan Quarry, and Jon Fitch, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>Defendant. | Case No.: 2:15-cv-01045-RFB-PAL<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO THEIR SUBPOENA TO THIRD PARTY TOP RANK, INC. AND MOTION TO COMPEL ATTENDANCE AT DEPOSITION OF ROBERT ARUM, PRESIDENT OF TOP RANK, INC** |

**TABLE OF CONTENTS**

I.     INTRODUCTION ..................................................................................................................1

II.    ARGUMENT .........................................................................................................................3

    A.   PLAINTIFFS ALLEGE THAT PROFESSIONAL BOXING AND ELITE PROFESSIONAL MIXED MARTIAL ARTS ARE DISTINCT PRODUCT MARKETS REQUIRING SPECIALIZED AND DIFFERENTIATED LABOR INPUTS, AND THESE REMAIN DISPUTED FACTS. ......................................................3

    B.   ZUFFA LACKS STANDING TO FILE AN OBJECTION TO PLAINTIFFS' MOTION TO COMPEL. ................................................................................................9

III.   THE BUSINESS OF PROMOTING FIGHTS IS THE SAME FOR ALL COMBAT SPORTS. ...............................................................................................................................10

IV.    FINANCIAL DATA FROM BOXING IS RELEVANT FOR PLAINTIFFS' EXPERTS TO BENCHMARK COMPENSATION LEVELS IN A COMPETITIVE MARKET .................11

V.     CONCLUSION ....................................................................................................................11

**Cases**

*Apple Inc. v. Samsung Elecs. Co.*, No. 12-CV-0630-LHK (PSG), 2013 U.S. Dist. LEXIS 67085 (N.D. Cal. May 9, 2013) ............................................................................................. 2

*FTC v. AMG Servs.*, 291 F.R.D. 544 (D. Nev. 2013) ............................................................... 1

*In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493 (S.D.N.Y. 1996) ....................... 9

*Racing Optics v. Aevoe Corp.*, No. 2:15-cv-1774-RCJ-VCF, 2016 U.S. Dist. LEXIS 98776 (D. Nev. July 27, 2016) ............................................................................................. 10

*State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, Civil Action No. 12-cv-11500, 2013 U.S. Dist. LEXIS 189832 (E.D. Mich. Nov. 26, 2013) ........................................................... 2

## I. INTRODUCTION[1]

Plaintiffs submit this Reply in support of their motion to compel production of documents and deposition testimony (the "Reply Motion") by Third Party Top Rank, Inc. and Robert Arum, President of Top Rank, Inc. (together, "Top Rank"), and supporting Declaration of Robert C. Maysey ("Maysey Declaration") filed in support of this Reply Motion. Plaintiffs' subpoenas are narrowly tailored to seek relevant information to which Plaintiffs are entitled under Rule 45. Top Rank's Opposition fails to carry Top Rank's burden to show that the discovery sought should be denied. *See FTC v. AMG Servs.*, 291 F.R.D. 544, 553 (D. Nev. 2013) ("The party resisting discovery bears the burden of showing why a discovery request should be denied.") (quotation omitted).

Top Rank propounds three arguments in opposition to Plaintiffs' Motion, each of which fails on its own terms. First, Top Rank asserts that the discovery sought by Plaintiffs is not relevant to the underlying dispute. This is demonstrably false. Plaintiffs allege that Zuffa pays its fighters significantly less than comparable sports organizations, including professional boxing. *See* ECF No. 208 (Plaintiffs' Consolidated Amended Complaint ("CAC") at ¶¶ 19, 103, 104. Moreover, Mr. Arum is quoted in the CAC stating that, "[b]ecause of the monopoly that the UFC has, they [the UFC] pay their fighters maybe 20% of the proceeds that come in on a UFC fight." CAC at ¶104. The fact that Zuffa denies these allegations only reinforces the relevance of Top Rank's evidence.

Top Rank asserts that Plaintiffs cannot claim in their CAC that boxing does not provide a reasonable alternative for MMA fighters, then turn around and claim that Top Rank's evidence is relevant. ECF No. 481 (the "Opposition") at 1-2. Top Rank misses the point. The statements quoted by Top Rank refer to interchangeability for the purposes of defining the relevant markets. Plaintiffs seek Top Rank's evidence to provide a benchmark against which to measure Zuffa's fighter compensation for the purposes of establishing damages. These two issues are unrelated, and Plaintiffs claims that boxing and MMA are not interchangeable do not affect the relevance of evidence regarding compensation. Indeed,

[REDACTED]

---

[1] Upon the agreement of counsel for Top Rank, Defendant Zuffa, and Plaintiffs' Counsel, this Reply is being filed on August 31, 2017.

██████████████████████████████████████████████████████████. *See* Maysey Declaration, ¶¶ 12-15, Exhs. 12-15 (ZFL-2701627, ZFL-2700612, ZFL-2700510, ZFL-2701700). The evidence sought from Top Rank is relevant to the underlying litigation.

Second, Top Rank argues that Plaintiffs have not demonstrated a substantial need for Top Rank's evidence. This argument also fails. As stated in Plaintiffs' Motion, Plaintiffs need Top Rank's financial information "[t]o enable Plaintiffs' experts to benchmark percentages of revenues generated from boxing events paid to boxers . . . ." ECF No. 470 at 4. Due to the similarity between MMA and boxing, and statements made by Mr. Arum about the relative compensation of boxers and MMA fighters, boxing provides a particularly useful benchmark by which to measure Zuffa's fighter compensation. Top Rank's evidence is crucial to Plaintiffs' ability to fully prosecute their claims.

Third, Top Rank argues that Plaintiffs' document requests are overly burdensome. But Top Rank has failed to show that the burden of collecting documents that are almost certainly maintained in the ordinary course of its business presents an undue burden. As Top Rank acknowledges, Plaintiffs have narrowed their requests in a good faith attempt to limit the burden to Top Rank. (Opposition at 13). The fact that Top Rank is a third party does not relieve it of its obligation to comply with a narrowly tailored subpoena. *See e.g. Apple Inc. v. Samsung Elecs. Co.*, No. 12-CV-0630-LHK (PSG), 2013 U.S. Dist. LEXIS 67085, at *43 (N.D. Cal. May 9, 2013) (third party status does not relieve a third party of its "obligations, once subject to a subpoena, to participate in transparent and collaborative discovery. Third-party status does not confer a right to obfuscation or obstinacy."); *State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, Civil Action No. 12-cv-11500, 2013 U.S. Dist. LEXIS 189832, at *48 (E.D. Mich. Nov. 26, 2013) (rejecting claim of undue burden and stating, "any requirement for a third-party to comply with a subpoena will generate some burden in time and expense"). Top Rank has not carried its burden of showing that it will be unduly burdened by Plaintiffs' subpoena.

Top Rank also asserts that Plaintiffs' deposition subpoena to Mr. Arum is irrelevant. In light of Mr. Arum's statements comparing compensation to boxers with compensation to MMA fighters, and Plaintiffs' demonstrated need for Top Rank's evidence, this assertion clearly fails.

Plaintiffs are entitled to Top Rank's discovery. The evidence sought is relevant; Plaintiffs have a substantial need for the evidence; and producing the discovery will not be overly burdensome to Top

Rank.

In its Opposition, Top Rank asserts that "plaintiffs had no business subpoenaing Top Rank" because Plaintiffs allege that professional boxing and Elite Professional Mixed Martial Arts are separate product markets and that boxing is not a reasonable alternative for Elite Professional Mixed Martial Artists due to the highly differentiated and specialized skills required in each sport. (Opposition at 2). Similarly, Defendant Zuffa opposes Plaintiffs' Motion by asserting that Plaintiffs have done nothing to establish the relevance of boxing to the Related Case. (ECF No. 475).

Each of these objections misses the mark. While Plaintiffs have alleged that boxing and Elite Professional Mixed Martial Arts are distinct product markets requiring specialized skills from the input market, Defendant Zuffa has denied these allegations. Further, Plaintiffs' have alleged that the promotion of professional boxing, the professional sport most closely analogous to Professional MMA, is highly relevant to the inquiry of what the market for Elite Professional Mixed Martial Arts would resemble, but for the alleged anticompetitive conduct that Zuffa engaged in. *See* CAC at ¶¶ 19, 103, 104. Plaintiffs' experts intend to utilize the compensation levels paid by boxing promoters as a "benchmark" to determine what compensation levels would approximate in the market for Elite Professional Mixed Martial Artists, but-for the alleged anticompetitive conduct engaged in by Zuffa.

## II. ARGUMENT

### A. PLAINTIFFS ALLEGE THAT PROFESSIONAL BOXING AND ELITE PROFESSIONAL MIXED MARTIAL ARTS ARE DISTINCT PRODUCT MARKETS REQUIRING SPECIALIZED AND DIFFERENTIATED LABOR INPUTS, AND THESE REMAIN DISPUTED FACTS.

Top Rank goes to great lengths to enumerate allegations in the CAC where Plaintiffs' have alleged that boxing is a distinct and separate market, and that the sport of professional boxing does not provide a reasonable substitute for Elite Professional Martial Artists. (Opposition at 1-2). Further, Top Rank asserts that, "[h]aving made the distinctions between MMA and boxing the centerpiece and tent-pole of their complaint. . . plaintiffs have no business reversing course and now arguing to the Court that Top Rank's profit-loss and payment information is not only relevant but essential to plaintiffs' experts' economic work." (*Id*. at 2). But this argument mixes apples and oranges. All of the statements from

Plaintiffs' CAC cited by Top Rank were made by Plaintiffs in order to define the limits of the relevant markets, and show that boxing and MMA are not interchangeable athletic pursuits for UFC fighters, UFC fans, or in the markets for promoting MMA events and for acquiring the services of MMA fighters.

Further, Top Rank ignores that each of these allegations was denied by Defendant Zuffa. Each of the allegations enumerated by Top Rank in its Opposition is addressed below (ECF 481 at P. 1-2):

- "Combat sports such as boxing or those that are limited to a single martial art, such as judo, are not adequate substitutes for live Elite Professional MMA. . . Single discipline combat sports, such as boxing and kick-boxing, do not qualify as economic substitutes because they do not enjoy reasonable interchangeability of use and cross-elasticity of demand amongst the consuming audience." (quoting portion of CAC ¶ 60).

  Zuffa's answer to this allegation:

  > "*Zuffa denies the averments in Paragraph 60 of the Complaint, except to state that so-called "professional" wrestling as currently promoted under the umbrella of World Wrestling Entertainment ("WWE") is staged or scripted entertainment, which MMA is not.*" ("Zuffa's Answer", ECF 212 at ¶ 60).

- "Boxing does not combine different elements from a diverse set of martial arts, as it is limited to only strikes with the hands above the waist on an opponent, and hence does not provide a viewing experience akin to MMA." (quoting CAC ¶ 61).

  Zuffa's answer to this allegation:

  > "*Zuffa admits that for bouts that take place in the United States, scoring in live Professional MMA bouts is based on approved definitions, rules, and requirements, typically set by the applicable athletic commission, including without limitation, for striking and grappling, and that many of the definitions, rules, and requirements for MMA are different from boxing, **but denies the remaining averments in Paragraph 61.**"* (Zuffa's Answer ¶ 61) (emphasis added)**.**

- "Promotion of live Elite Professional MMA events is not reasonably interchangeable with promoting any other sport or entertainment, including boxing and/or kick-boxing." (quoting CAC ¶ 62).

  Zuffa's answer to this allegation:

  "*Zuffa denies the averments in Paragraph 62 of the Complaint.*" (Zuffa's Answer ¶ 62).

- "Athletes who have trained for, and now engage in, sports other than MMA, including professional boxing, and those who engage in a single martial art, such as judo, are not substitutes for Elite Professional MMA Fighters.  For instance, boxers and those who engage in a single martial art are generally not trained in the additional forms of martial arts (which may include wrestling, judo, jiu-jitsu, taekwondo, Muay Thai and karate) necessary to become and successfully compete as an Elite Professional MMA Fighter." (quoting CAC ¶ 79).

  Zuffa's answer to this allegation:

  "*Zuffa denies the averments in Paragraph 79 of the Complaint.*" (Zuffa's Answer ¶ 79)

- "Neither boxing nor 'professional' WWE wrestling provides reasonable alternatives for Elite Professional MMA Fighters.  Professional boxing requires years of intensive, specialized and limited training in a striking art that MMA Fighters do not undergo. " (quoting CAC ¶ 82).

  Zuffa's answer to this allegation:

  "*Zuffa denies the averments in Paragraph 82 of the Complaint, except to state that professional MMA fighters do train in boxing.*"  (Zuffa's Answer ¶ 82).

- "[W]hile a professional boxer may possess the mental and athletic skill to box and take blows in the form of punches, if he does not possess expert ability to grapple, wrestle or engage in other martial arts, he will not succeed as an Elite Professional MMA Fighter."  (quoting CAC ¶ 94).

Zuffa's answer to this allegation:

> *"Zuffa avers that the allegations in Paragraph 94 of the Complaint contain legal contentions to which no response is required.* **To the extent a response is required, Zuffa denies the averments in Paragraph 94 of the Complaint**, *except to state that preparing to fight in a professional MMA bout typically requires training in more than one martial arts discipline."* (Zuffa's Answer ¶ 94) (emphasis added).

In fact, Defendant Zuffa has denied each of the allegations complained of in Top Rank's opposition, requiring discovery.

Further, Plaintiffs' in the CAC alleged that due to Zuffa's anticompetitive scheme, UFC Fighters are paid a fraction of what they would in a competitive market, and earn substantially less than professional boxers:

> "As a result of the anticompetitive scheme alleged herein, the UFC has foreclosed competition and gained, maintained, and enhanced its position as the dominant promoter of MMA and one of the most powerful organizations in professional sports. The UFC now generates over half a billion dollars in annual revenues and has profit margins higher than all or nearly all other major professional sports. This anticompetitive scheme, which has afforded the UFC dominance in the Relevant Markets, allows it to exploit the MMA Fighters on whose backs the business rests. All UFC Fighters are paid a mere fraction of what they would make in a competitive market. Rather than earning paydays comparable to boxers, a sport with many natural parallels, Elite Professional MMA Fighters go substantially undercompensated despite the punishing—and popular—nature of their profession." (CAC ¶ 19).

Zuffa's answer to this allegation:

> *"Zuffa denies the averments in Paragraph 19 of the Complaint except for the second sentence. With regard to the second sentence of Paragraph 19, Zuffa*

> *admits that its gross revenues in 2015 exceeded a half billion dollars, and denies the remainder of the second sentence for lack of knowledge."* (Zuffa's Answer ¶ 19).

Likewise, Plaintiffs' alleged that boxing and the other "Big 4" league sports typically pay more than 50% of revenue to the athletes:

> "Athletes in sports such as boxing and the "Big 4," i.e., football, baseball, basketball and hockey in the United States, generally earn more than 50% of league revenue, a significantly higher percentage of revenues than those paid to UFC Fighters." (CAC ¶ 103).

Zuffa's answer to this allegation:

> *"Zuffa lacks sufficient knowledge or information to form a belief as to the truth of the averments in Paragraph 103 of the Complaint and therefore denies them."* (Zuffa's Answer ¶ 103).

Further, and directly related to Top Rank, Plaintiffs' in the CAC quote Top Rank's president, Hall of Fame boxing promoter Bob Arum:

> "Boxers Floyd Mayweather and Manny Pacquiao take the number one and two spots, respectively, on the "Forbes 100-highest paid athletes list," earning upwards of $40 million in guaranteed purse for a single bout, before inclusion of PPV profits. Mayweather's compensation has reportedly topped $90 million for a single bout for an event that draws comparable PPV purchase rates to high-profile UFC events. As a result of the scheme alleged herein, UFC Fighters get a fraction of that level of compensation. Famed boxing promoter Bob Arum, for example, pays his fighters approximately 80% of the proceeds generated by a Card. Comparing the fighter compensation between boxing and the UFC, Arum accurately described the disparity between the UFC and boxing as follows: "Because of the monopoly that the UFC has, they [the UFC] pay[s] their fighters maybe 20% of the proceeds that come in on a UFC fight." (CAC ¶ 104).

Zuffa's answer to this allegation:

> "Zuffa denies the averments of Paragraph 104 of the Complaint to the extent that they purport to describe the conduct of the UFC. Zuffa lacks sufficient knowledge or information to form a belief as to the truth of the remaining averments in Paragraph 104 and therefore denies them." (Zuffa's Answer ¶ 104).

Thus, each of the allegations in the complaint that Top Rank complains of remain disputed fact requiring further discovery. Top Rank's evidence is necessary to substantiate these allegations. Further, the relevance of Plaintiffs' inquiry is dramatically highlighted by Top Rank's president, Bob Arum, who in his own words said Zuffa pays fractions of what boxing promoters do due to the monopoly they have obtained.[2]

Moreover, as stated in the Motion, Plaintiffs intend to use financial information from Top Rank and other boxing promoters to establish a "yardstick against which to measure Zuffa's fighter compensation in order to establish damages. *See In re NASDAQ Mkt.-Makers Antitrust Litig*., 169 F.R.D. 493, 521 (S.D.N.Y. 1996) (stating that "[t]he 'yardstick' approach compares profits earned or prices paid by the plaintiff with the corresponding data for a firm or in a market unaffected by the violation," and is a "widely accepted means of measuring damages in antitrust cases"). This evidence is clearly necessary to enable Plaintiffs to establish damages in the underlying litigation.

Zuffa's Objections and Responses to Plaintiffs' First Set of Requests for Admission further highlight the relevance Top Rank's financial information. Asked to admit it contends that "the compensation of athletes in . . . any professional boxing promotion is not relevant to measuring the impact or damages allegedly caused by the allegedly anticompetitive conduct in this lawsuit," Zuffa responded that it "cannot determine at this time the relevance of the information identified in Request No. 1, and has insufficient information to admit or deny." (Maysey Declaration, ¶1). In Request No. 2,

---

[2] See also https://www.youtube.com/watch?v=boAcF029Dsc (Arum: "UFC Fighters because of the UFC monopoly get stiffed. . . we pay out 80% of the revenue to the fighters. . . [the UFC] doesn't pay out 20% to the fighters. . .They are a monopoly—and we are not." *See also* https://www.youtube.com/watch?v=xTIJjoI6pnk&feature=youtu.be.

Zuffa was asked to admit that it "contends that the compensation of athletes in . . . any professional boxing promotion is not relevant to any aspect of the antitrust claims asserted by Plaintiffs in this lawsuit," and Zuffa responded that it has "insufficient information to admit or deny." (*Id.*) These responses have not been supplemented, and give added urgency to Plaintiffs' need for Top Rank's information. Thus, Defendant Zuffa's opposition on the grounds of relevance is inappropriate and contrary to its express position in this case.

### B. ZUFFA LACKS STANDING TO FILE AN OBJECTION TO PLAINTIFFS' MOTION TO COMPEL.

On August 14, 2017, Zuffa filed an opposition to Plaintiffs' Motion. (ECF No. 475) (the "Zuffa Opposition"). Because the Motion was directed at a third party, Zuffa lacks standing to file an objection. "A party lacks standing under Fed. R. Civ. P. 45[(d)(3)(A)] to challenge a subpoena issued to a non-party unless the party claims a personal right or privilege with respect to the documents requested in the subpoena. Courts in this district held that objections based on relevance and undue burden on the non-parties do not constitute a party's personal right or privilege." *Racing Optics v. Aevoe Corp.*, No. 2:15-cv-1774-RCJ-VCF, 2016 U.S. Dist. LEXIS 98776, at *2 (D. Nev. July 27, 2016) (quotations and citation omitted). Accordingly, the Zuffa Opposition should be disallowed by the Court. Zuffa is represented by sophisticated counsel who are no doubt aware that Zuffa lacks standing, and the Zuffa Opposition could be construed as an improper attempt to influence the Court. Zuffa's arguments should be ignored.

Even if the Court were to consider Zuffa's arguments, these arguments fail. Zuffa's first argument is that Plaintiffs have failed to demonstrate the relevance of the discovery Plaintiffs seek. (Zuffa Opposition at 1-2.) To the contrary, Plaintiffs have demonstrated that the discovery sought from top Rank is relevant and necessary to Plaintiffs' claims, and Zuffa's Opposition on the grounds of relevance is inappropriate and contrary to its express position in this case. *See* section A, *supra*.

Zuffa was well aware of Plaintiffs' intent to depose boxing promoters, as it was fully briefed in a Joint Status Report (ECF 418), argued and decided in front of this Court at the status conference conducted on June 1, 2017 (ECF 422), and clarified by this Court at a subsequent hearing (ECF 446). Defendant Zuffa raised no relevance objections during these proceedings, and thus, these arguments should be deemed waived and the matter decided.

Zuffa's second argument is that Plaintiffs' motion is untimely. This argument would also fail, were the Court to consider it. Plaintiffs' Motion was timely filed within the discovery period, after extensive attempts to obtain Top Rank's discovery through the meet and confer process. Thus there is no basis for a claim of untimeliness.

### III. THE BUSINESS OF PROMOTING FIGHTS IS THE SAME FOR ALL COMBAT SPORTS.

A sprinter does not a marathoner make, but both are runners. The same is true for combat sports. The promoter's job is to stage, market and sell fights. UFC President Dana White, at his deposition conducted on August 9, 2017, testified that ▮▮▮▮ ▮▮▮▮ (Maysey Declaration, ¶2). Likewise, White testified that ▮▮▮▮ ▮▮▮▮ (Maysey Declaration, ¶3). On August 10, 2017, White further testified: ▮▮▮▮ ▮▮▮▮ (Maysey Declaration, ¶4). ▮▮▮▮, on August 9, 2017, UFC President Dana White testified at his deposition that ▮▮▮▮ ▮▮▮▮ (Maysey Declaration, ¶5). Echoing White, at his deposition conducted on August 29, 2017, boxing promoter Lou Dibella testified that ▮▮▮▮. (Maysey Declaration, ¶6). Dibella further detailed ▮▮▮▮ ▮▮▮▮ (Maysey Declaration, ¶7). Dibella further testified about ▮▮▮▮ ▮▮▮▮ (Maysey Declaration, ¶8). Dibella also testified that ▮▮▮▮ ▮▮▮▮ (Maysey Declaration, ¶9). Thus, the testimony and documents produced by Mr. Arum is within the scope of discovery and is likely to produce similar relevant evidence in this litigation.

## IV. FINANCIAL DATA FROM BOXING IS RELEVANT FOR PLAINTIFFS' EXPERTS TO BENCHMARK COMPENSATION LEVELS IN A COMPETITIVE MARKET

Promoter Lou Dibella testified ████████████████████████████████████████ ████████████████████████████████████ (Maysey Declaration, ¶10). Similarly, boxing promoter Leon Margueles testified that ████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████ Margueles further testified that ████████ ████████████████████████████████████████████████████████ ████████████████████████ (Maysey declaration, ¶11).

In order for Plaintiffs' experts to "benchmark" the financial compensation achieved by boxers in a competitive industry, it is useful and relevant to obtain and use revenue and compensation data from boxing promoters who are prominent in the industry.

## V. CONCLUSION

For the foregoing reasons and the reasons contained in Plaintiffs' Motion To Compel (ECF 470) which are incorporated herein, the Court should grant Plaintiffs' Motion to Compel.

DATED:  August 31, 2017

                                      WARNER ANGLE HALLAM JACKSON
                                      & FORMANEK PLC

                                      By: /s/ Robert C. Maysey
                                          Robert C. Maysey
                                            Attorney for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2017, I electronically transmitted PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO THEIR SUBPOENA TO THIRD PARTY TOP RANK, INC. AND MOTION TO COMPEL ATTENDANCE AT DEPOSITION OF ROBERT ARUM, PRESIDENT OF TOP RANK, INC to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all registered users, and also served the same by mailing a copy via certified mail on the following, who are not registered participants of the CM/ECF System:

*/s/Teresa Baldridge*
Teresa Baldridge, an Employee of Warner Angle Hallam Jackson & Formanek PLC