# EXHIBIT 7

*Antitrust Law*

Phillip E. Areeda
*Late Langdell Professor of Law*
Harvard University

Roger D. Blair
*Huber Hurst Professor of Economics and Legal Studies*
University of Florida

Herbert Hovenkamp
*Ben V. & Dorothy Willie Professor of Law*
University of Iowa

Christine Piette Durrance
*Assistant Professor of Public Policy*
University of North Carolina Chapel Hill

Volume IIA
Fourth Edition

# Antitrust Law

An Analysis of Antitrust Principles and Their Application



Wolters Kluwer

This publication is designed to provide accurate and authoritative information in regard to the subject matter covered. It is sold with the understanding that the publisher and the author(s) are not engaged in rendering legal, accounting, or other professional services. If legal advice or other professional assistance is required, the services of a competent professional should be sought.

— From a *Declaration of Principles* jointly adopted by a Committee of the American Bar Association and a Committee of Publishers and Associations

Copyright © 2014 President and Fellows of Harvard College. All Rights Reserved.

No part of this publication may be reproduced or transmitted in any form or by any means, including electronic, mechanical, photocopying, recording, or utilized by any information storage or retrieval system, without written permission from the publisher. For information about permissions or to request permissions online, visit us at *http://www.wklawbusiness.com/footer-pages/permissions*, or a written request may be faxed to our permissions department at 212-771-0803.

Published by Wolters Kluwer in New York.

Wolters Kluwer serves customers worldwide with CCH, Aspen Publishers and Kluwer Law International products.

Printed in the United States of America

ISBN 978-0-7355-6428-2 (Set)

ISBN 978-1-4548-4476-1 (Vol. IIA)

1 2 3 4 5 6 7 8 9 0



argument that the burst of profitability was more than an aberration. For example, in *Hawaiian Oke*,[22] the court rejected the plaintiff's projection of profits based on an abnormally profitable six-month period. Similarly, in *Pennsy Supply*,[23] the damage estimates were rejected because the plaintiff tried to use the most profitable portions of two different years to support its damage estimates. When the plaintiff's experience in the before period provides an inadequate foundation for inferences in the after period, the damage estimates are apt to be rejected as speculative.

Second, a related problem arises when the plaintiff's actual experience in the after period is influenced by causal factors other than the unlawful conduct of the defendant. In general, the subsequent performance of the plaintiff can be caused by its own failings (i.e., managerial mishaps), the lawful behavior of the defendant, and changed market conditions. The plaintiff must control for these other causal factors in its damage calculations. Suppose, for example, that a firm held a market share of 20 percent in the base period and a 5 percent share during the damage period. It is inherently unreasonable to claim a loss in market share of 15 percent due to some action of the defendant if there has also been substantial entry into the plaintiff's industry. What is necessary is an estimate of the effect of the unlawful conduct net of the impact of entry. Failing to control for the effect of entry leads to speculative damage estimates.

392f. Yardstick models and evidentiary problems.
*1. Generally.* The major difficulty encountered in the use of a yardstick is finding one. The central idea behind the yardstick approach is to find a firm that is comparable in all important respects to the plaintiff. The economic performance of the yardstick firm is then used as an estimate of the performance that the plaintiff would have experienced "but for" the antitrust violation. The ideal yardstick is a clone or an identical twin of the plaintiff. Short of this, one must identify a firm that is truly comparable in order for the inferences drawn to be reliable rather than speculative. One may describe the yardstick method as follows: "Under the yardstick approach the plaintiff attempts to identify a firm

---

22. *Joseph E. Seagram & Sons v. Hawaiian Oke & Liquors*, 416 F.2d 71 (9th Cir. 1969), *cert. denied*, 396 U.S. 1062 (1970).
23. *R.S.E. v. Pennsy Supply, Inc..*, 523 F. Supp. 954, 966–68 (M.D. Pa. 1981).

similar to the plaintiff in all respects 'but for' the impact of the antitrust violation."[24] But the yardstick approach is demanding:

> ... *if* the markets of the two firms are identical, and *if* the plaintiff's firm and the firm used for comparison stand in the same relative position in those markets, offer the same product mix, have comparable managements and are comparable in all other respects, then the fact finder may infer that the two would have had comparable revenues or profits "but for" the violation.[25]

For the yardstick approach to be viable, it is essential that the plaintiff and the yardstick operate in the same product market but in distinct geographic markets. In both *Farmington Dowel*[26] and *Admiral Theatre*,[27] the court explained that it was inappropriate to use a firm in the plaintiff's geographic market as a yardstick. The economic reason is plain: the financial performance of the yardstick is apt to be enhanced by the injury to the plaintiff. As a result, the damage estimate will be biased upward if the yardstick is in the plaintiff's market.

*392f2. Unestablished business.* In a case where the plaintiff's fortunes were nipped in the bud by an antitrust violation, the plaintiff will have no real track record on which to rely for a before-and-after measure of damages. Absent prior history, the plaintiff will have to link its "experience in a hypothetical free market to the experience of a comparable firm in an actual free market."[28] That is, it must resort to a yardstick approach. Before doing so, however, the plaintiff must provide some evidence that it would have been a viable entrant but for the exclusionary practices. The plaintiff can shoulder that burden by demonstrating that it was prepared to enter. It should show evidence of adequate capitalization,

---

24. Herbert Hovenkamp, Federal Antitrust Policy: The Law of Competition and Its Practice §16.5 (5th ed. 2015).
25. *Id.* (emphasis in original). In *Farmington Dowel Products v. Forster Manufacturing Co.*, 421 F.2d 61 (1st Cir. 1970), the plaintiff's yardstick damage evidence was rejected because (1) the plaintiff sold a single product, whereas the yardstick's offerings were more diversified; (2) the plaintiff's sales organization paled in comparison to that of the yardstick; and (3) the yardstick was more amply capitalized than the plaintiff. The plaintiff and the purported yardstick were simply not sufficiently similar to support the inferred damages.
26. *Farmington Dowel Prods. v. Forster Mfg. Co.*, 421 F.2d 61 (1st Cir. 1970).
27. *Admiral Theatre Corp. v. Douglas Theatre Co.*, 437 F. Supp. 1268 (D. Neb. 1977).
28. *Fishman v. Estate of Wirtz*, 807 F.2d 520, 551 (7th Cir. 1986). On the unestablished business and problems of proof, see Roger D. Blair & William H. Page, *The Role of Economics in Defining Antitrust Injury and Standing*, 17 Managerial & Decision Econ. 127 (1996). For problems of standing, see Herbert Hovenkamp, Federal Antitrust Policy: The Law of Competition and Its Practice ch. 16 (5th ed. 2015).