# Exhibit 54

Deposition of Elizabeth Kroger Davis
(November 28, 2017) (excerpted)

PUBLIC COPY - REDACTED

**PUBLIC COPY - REDACTED**

1

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA


CUNG LE; NATHAN QUARRY, JON      )
FITCH, on behalf of              )
themselves and all others        )
similarly situated,              )
                                 )
            Plaintiffs,           )
                                 )
        vs.                      )   Case No.
                                 )   2:15-cv-01045-RFB-(PAL)
                                 )
ZUFFA, LLC, d/b/a Ultimate       )
Fighting Championship and        )
UFC,                             )
                                 )
            Defendant.            )
_____)


HIGHLY CONFIDENTIAL

VIDEOTAPED DEPOSITION OF ELIZABETH KROGER DAVIS

Washington, D.C.

November 28, 2017

11:17 a.m.




REPORTED BY:
Tina Alfaro, RPR, CRR, RMR
Job No: 52562

PUBLIC COPY - REDACTED

ELIZABETH KROGER DAVIS - HIGHLY CONFIDENTIAL

---

94

ELIZABETH KROGER DAVIS - HIGHLY CONFIDENTIAL
1  Zuffa's behavior violated the antitrust laws?
2
3      A.  I've read the complaint and I think that's
4  generally fair.
5      Q.  And do you understand that Zuffa's -- I'm
6  sorry.  Strike that.
7          Do you understand that the Plaintiffs'
8  experts are trying to determine how much more the
9  Plaintiffs would have been paid had Zuffa not
10 engaged in that conduct?
11         MR. NORTH:  Objection, calls for
12 speculation.
13 BY THE WITNESS:
14     A.  My understanding is that they have prepared
15 damages that -- that measure the incremental income
16 that they believe should have been paid to the bout
17 class and the identity class.
18     Q.  Should have been paid if what had happened
19 differently?
20     A.  My understanding is that the economists
21 have prepared models to determine these amounts.  I
22 haven't studied their amount -- their models in
23 detail.  So I -- I can't comment on all the
24 different factors that they may or may not have
25 considered.

---

95

ELIZABETH KROGER DAVIS - HIGHLY CONFIDENTIAL
1      Q.  Do you know whether the economists came to
2  any conclusions about what the size of the MMA
3  market would have been had Zuffa not engaged in the
4  conduct that Plaintiffs challenged?
5      A.  I've not looked at that issue.
6      Q.  But your analysis assumes that the -- that
7  the market would have been the same size and the
8  only difference is the damages; is that right?
9          MR. NORTH:  Objection to form.
10 BY THE WITNESS:
11     A.  My analysis takes the damages that were
12 estimated by the Plaintiffs' experts and says what
13 would be the impact of those damages on the
14 historical financial statements.
15     Q.  Okay.  And by "historical" you mean the way
16 things actually were in the past?
17     A.  The financial results that Zuffa reported
18 during the class period.
19     Q.  And you're assuming nothing would have
20 changed about those financial results other than the
21 application of the damages?
22         MR. NORTH:  Objection to form.
23 BY THE WITNESS:
24     A.  I rely upon the historical financial
25

---

96

ELIZABETH KROGER DAVIS - HIGHLY CONFIDENTIAL
1  statements what Zuffa reported.  I haven't changed
2  those numbers.
3      Q.  Okay.
4          You mentioned that you've studied some
5  economics; is that right?
6      A.  Yes.
7      Q.  Are you aware that economic theory holds
8  that monopolistic conduct tends to reduce output?
9      A.  You know, that's -- that's a very broad
10 question.  I haven't thought about it in the context
11 of this case.  I have to think about it.
12     Q.  Okay.  You are aware that Plaintiffs allege
13 that Zuffa engaged in conduct that was both
14 monopolistic and monopsonistic; is that right?
15     A.  I do.
16     Q.  And you're not offering an opinion one way
17 or the other as to whether that's accurate; is that
18 right?
19     A.  You mean whether they were a monopolist and
20 a monopsonist?
21     Q.  Correct.
22     A.  That is what you mean by that?
23     Q.  Yes.
24     A.  I'm not offering an opinion.
25

---

97

ELIZABETH KROGER DAVIS - HIGHLY CONFIDENTIAL
1      Q.  You're question was better than mine.
2  Thank you.
3      A.  I'm just trying to understand the
4  question.
5      Q.  I appreciate it.
6          If hypothetically Zuffa had engaged in
7  conduct that reduced output, there would have been
8  more MMA bouts absent that conduct; is that fair?
9          MR. NORTH:  Objection to form.
10 BY THE WITNESS:
11     A.  I'm not offering an opinion on that.  I'd
12 have to think about it.
13     Q.  Okay.  Well, can you think about it now?  I
14 mean, is that something that you could come up
15 with --
16     A.  It's a complicated question.  There's a lot
17 of assumptions that would go into that.
18     Q.  Okay.  Well, I'm asking you to assume that
19 Zuffa engaged in conduct that reduced output, right?
20 And then I'm asking you to assume had they not
21 engaged in that conduct would output have been
22 greater?  There's only two assumptions there.
23     A.  Well, I -- I --
24         MR. NORTH:  I'm sorry.  Is there a question

---

25 (Pages 94 to 97)

PUBLIC COPY - REDACTED

ELIZABETH KROGER DAVIS - HIGHLY CONFIDENTIAL

98

1    ELIZABETH KROGER DAVIS - HIGHLY CONFIDENTIAL
2    pending?
3        MR. KOFFMAN:  Yeah.
4    BY THE WITNESS:
5        A.  Why don't you repeat the question back to
6    me one more time.
7        Q.  Sure.  If, in fact, Zuffa engaged in
8    conduct that reduced output, is it fair to say that
9    there would have been more MMA bouts absent that
10   conduct?
11       A.  I -- I don't have an opinion on that.  I
12   can't say whether there would have been more bouts,
13   less bouts, would there have been more fighters
14   fighting per bout.  I don't know.
15       Q.  Okay.
16       If hypothetically there were more MMA bouts
17   during the class period, is it fair to say that
18   could have resulted in more revenue for Zuffa during
19   the class period?
20       MR. NORTH:  Objection to form.
21   BY THE WITNESS:
22       A.  Again, that -- that is a difficult question
23   to answer.  You're asking if there had been more
24   bouts.  I don't know if there had been more bouts
25   whether that would have created more revenue or not.

99

1    ELIZABETH KROGER DAVIS - HIGHLY CONFIDENTIAL
2    I don't know if having additional bouts would
3    encourage people to buy additional Pay-Per-Views,
4    okay.  If having more bouts would drive more people
5    to live events.  I don't know the answer to that.  I
6    suppose it depends on a bunch of variables.
7        Q.  Okay.
8        If Zuffa's class period revenue increased,
9    would that throw off the calculations in your
10   opinion No. 2?
11       MR. NORTH:  Objection to form.
12   BY THE WITNESS:
13       A.  My opinion is, again, based on the
14   historical financial statements and comparing the
15   amounts that the Plaintiffs' experts have computed
16   as damages to those historical financial statements.
17   I have not assumed any other counterfactual.
18       Q.  Okay.  But if you did assume a
19   counterfactual, if you assumed that the class period
20   revenues increased over what they were historically,
21   would that change your numbers in opinion 2?
22       A.  If you're asking me to hold everything else
23   constant and assume that revenues went up one
24   dollar, it would mathematically change my
25   calculation.

100

1    ELIZABETH KROGER DAVIS - HIGHLY CONFIDENTIAL
2        Q.  Does your second opinion rely on an
3    assumption that all of the damages calculated by
4    Dr. Zimba-- by Dr. Zimbalist would have been paid
5    by Zuffa?
6        A.  My calculation does not assume who would
7    have paid -- well, my calculation takes the damages
8    that they argue is the additional compensation that
9    should have been paid to fighters and allocates it
10   to Zuffa's historical financial statements.  So if
11   the fact that I'm reflecting the amounts on Zuffa's
12   financial statements, you know, suggests to you that
13   Zuffa would be paying such amounts, then yes.
14       Q.  Okay.  And what is your basis for that
15   assumption?
16       A.  Because I'm applying the damages amounts to
17   Zuffa's financial statements.  If Zuffa wasn't
18   paying the fighters, it's not clear to me what
19   entity would be paying them.
20       Q.  Are you aware that the Plaintiffs allege
21   that conduct by Zuffa reduced compet-- competition
22   from other MMA promotions?
23       A.  I'm aware of that allegation.
24       Q.  But you're not offering an opinion one way
25   or the other as to whether that allegation is true

101

1    ELIZABETH KROGER DAVIS - HIGHLY CONFIDENTIAL
2    or false, correct?
3        A.  I'm not.
4        Q.  Assuming hypothetically that Zuffa did
5    engage in conduct that reduced competition from
6    other MMA promote-- promoters, then absent that
7    conduct there would have been more competition,
8    correct?
9        MR. NORTH:  Objection to form.
10   BY THE WITNESS:
11       A.  I -- I haven't studied that issue in the
12   context of this case.
13       Q.  Let me ask it a different way.  Is it
14   possible that if Plaintiffs' allegations are correct
15   that some of the damages would have been paid by
16   promoters other than Zuffa?
17       MR. NORTH:  Objection to form.
18   BY THE WITNESS:
19       A.  I -- I can't possibly answer that question.
20   It's a function of how they created their model.
21   It's a function of how much they think fighters
22   would have been paid for different bouts.  So I
23   don't know how it would all shake out.  It's a
24   complicated question.
25       Q.  And do you know whether Plaintiffs' experts

26  (Pages 98 to 101)

PUBLIC COPY - REDACTED

ELIZABETH KROGER DAVIS - HIGHLY CONFIDENTIAL



**102**

1  ELIZABETH KROGER DAVIS - HIGHLY CONFIDENTIAL
2  have considered that question?
3  A. I don't.
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**103**

1
2
3
4
5
6
7  that was the assignment I carried out.
8  Q. Okay.
9  THE REPORTER:  Good time for a break?
10  MR. KOFFMAN:  Sure.  Let's take a short
11  break.
12  THE VIDEOGRAPHER:  Going off the record at
13  2:09.
14  (A short break was had.)
15  THE VIDEOGRAPHER:  We're going back on the
16  record at 2:22.
17  BY MR. KOFFMAN:
18  Q. So we've -- we've had some discussion today
19  about the term "but-for world"; do you remember
20  that?
21  A. It's a term you've used.
22  Q. Okay.  And it's not a term that you've used
23  before today?
24  A. No, it's not.  Well, not -- well, let me
25  clarify.

**104**

1  ELIZABETH KROGER DAVIS - HIGHLY CONFIDENTIAL
2  Q. Sure.
3  A. Not in the context of this case.
4  Q. Okay.
5  A. I've heard about a but-for world in other
6  litigation, but not -- I haven't used that term
7  here.
8  Q. Okay.  What types of litigation have you
9  heard the term used in?
10  A. Yeah.  So I have heard the term used in
11  other antitrust cases and some cases involving
12  commercial damages.
13  Q. Are you aware that economists in antitrust
14  cases sometimes construct but-for worlds to analyze
15  what would have happened absent the conduct that's
16  challenged in the case?
17  A. I am aware of that.
18  Q. And are you aware that Plaintiffs' experts
19  did that here?
20  A. To be clear, I -- I have not reviewed the
21  Plaintiffs' expert reports in detail in terms of how
22  they constructed their models and methods.  I have
23  focused on the results, the amounts they compute.
24  Q. Okay.  So you focused just on their damages
25  estimates?

**105**

1  ELIZABETH KROGER DAVIS - HIGHLY CONFIDENTIAL
2  A. Yes.
3  Q. And not on how they got to those numbers?
4  A. Correct.
5  Q. Have you, yourself ever constructed a
6  but-for world for use in litigation?
7  MR. NORTH:  Objection to form.
8  BY THE WITNESS:
9  A. Well, "you, yourself constructed," I'm
10  having a little trouble with those words.  I've
11  worked on assignments where there has been teams of
12  consultants which I've been a part where we've
13  analyzed the issue.
14  Q. Okay.
15  You've looked at Plaintiffs' damages
16  estimates and their effects on Zuffa's
17  profitability; is that fair?
18  A. Again, I have taken their damages -- you're
19  saying Zuffa's profitability.  I have taken their
20  damages and applied those damages to the historical
21  financial results and three specific financial
22  metrics of those results.
23  Q. Okay.  Is it your opinion that Zuffa could
24  not have paid its fighters any more than it did
25  during the class period and remain profitable?

27 (Pages 102 to 105)

DAVID FELDMAN WORLDWIDE, INC.
450 Seventh Avenue - Ste 502, New York, NY 10123 1.800.642.1099

**PUBLIC COPY - REDACTED**