WILLIAM A. ISAACSON (*Pro hac vice*)
(wisaacson@bsfllp.com)
STACEY K. GRIGSBY (*Pro hac vice*)
(sgrigsby@bsfllp.com)
NICHOLAS WIDNELL (*Pro hac vice*)
(nwidnell@bsfllp.com)
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
Tel: (202) 237-2727; Fax: (202) 237-6131

RICHARD J. POCKER #3568
(rpocker@bsfllp.com)
BOIES SCHILLER FLEXNER LLP
300 South Fourth Street, Suite 800
Las Vegas, Nevada 89101
Tel: (702) 382-7300; Fax: (702) 382-2755

DONALD J. CAMPBELL #1216
(djc@campbellandwilliams.com)
J. COLBY WILLIAMS  #5549
(jcw@campbellandwilliams.com)
CAMPBELL & WILLIAMS
700 South 7th Street
Las Vegas, Nevada 89101
Tel: (702) 382-5222; Fax: (702) 382-0540

*Attorneys for Defendant* Zuffa, LLC, d/b/a
Ultimate Fighting Championship and UFC

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br>          v.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>                    Defendant | No.: 2:15-cv-01045-RFB-(PAL)<br><br>**DECLARATION OF BRENT K. NAKAMURA IN SUPPORT OF ZUFFA, LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

I, Brent K. Nakamura, declare as follows:

1. I am a member in good standing of the bars of the District of Columbia and the State of California. I am admitted *pro hac vice* to practice before this Court. I am an associate in the law firm Boies Schiller Flexner LLP ("BSF"), counsel for Zuffa, LLC ("Zuffa") in the above captioned action in the U.S. District Court for the District of Nevada, *Le et al. v. Zuffa, LLC*, No. 2:15-cv-01045-RFP-PAL.

2. I make this declaration in support of Zuffa's Opposition to Plaintiffs' Motion for Class Certification ("Opposition").

3. Based on my review of the files, records, and communications in this case, including the Expert Report of Professor Robert H. Topel (the "Topel Report") that Zuffa served on Plaintiffs on October 27, 2017, as well as the backup materials to that report (the "Topel Backup") served on Plaintiffs on November 1, 2017, and the Expert Report (the "Singer Report") and Rebuttal Expert Report of Dr. Hal J. Singer and the backup materials to the Singer Report (the "Singer Backup"). I have personal knowledge of the facts set forth in this Declaration and, if called to testify, could and would testify competently to those facts under oath.

4. The Singer Backup materials contain a folder named "Do," which contains .do files that permit the commercially available statistical program Stata to modify and perform calculations and analyses on Dr. Singer's data sets. That folder contains 15 files which, if executed properly, create an output data file named "Regression Data.dta." The "Regression Data.dta" file contains 9,477 observations (rows of data), 919 variables, and is over 70 megabytes in size.

5. In paragraphs 292 through 310 of the Singer Report, Dr. Singer describes the large and voluminous data sets that he used to assemble the files and data sources that underlie the Regression Data.dta file. These data sets include, but are not limited to, Zuffa's Bout Compensation Data, Zuffa's Contract Data, Zuffa's Event Profit and Loss Data, Sherdog Data, and FightMatrix Data.

6. In the Topel Backup materials provided to Plaintiffs, Dr. Topel provided the .do files and Stata code used to generate Exhibit 34 of his report, which included an analysis of the Regression Data.dta file and provided a means of selecting and defining the data to be analyzed such

1

that the only observations included were those within the Regression Data.dta file for which it was possible for Dr. Singer to estimate damages by running his regression model. This smaller version of the Regression Data.dta file ("Defined Regression Data") contains only 4,618 of the original 9,477 observations in Dr. Singer's Regression Data.dta.

7. Variables contained in the Regression Data.dta and Defined Regression Data file include, for example, variables that Dr. Singer has labeled: Fighter Name, Fighter Nickname, Event Date, Weight Class, Promoter, Title Fight, Show Purse, Win Purse, Discretionary Bonus, Performance Bonus, KO of the Night Bonus, Submission of the Night Bonus, Other Compensation, Letter of Agreement Payment, Event Channel, and many others.

8. Exhibits 87 through 89 to the Declaration of Stacey K. Grigsby in Support of Zuffa's Opposition to Plaintiffs' Motion for Class Certification ("Grigsby Declaration") are histograms that were created as described below. The compensation data presented in the histograms was created to provide accurate, summarized information derived from large and lengthy databases and underlying sources of data from Zuffa and other sources.

9. Exhibits 87 through 89 to the Grigsby Declaration were created from the Regression Data.dta file with several modifications designed to standardize the data for analysis. First, the amounts paid to athletes were standardized using the Consumer Price Index (unchained) ("CPI-U") such that the compensation levels will be in terms of 2016 U.S. dollars as explained in, for example, Topel Report paragraph 122, note 202 and paragraph 153, note 220. Second, the data set was limited to only those observations within the Regression Data.dta file for which it was possible for Dr. Singer to estimate damages by running his regression model. Third, the weight class division labels, from Dr. Singer's weight class "WeightClassID" variable were standardized to include names such as "Heavyweight Division" and certain weight classes were combined, *e.g.* "Catchweight, Flyweight and All Women's Divisions" as shown in the Exhibits. Fourth, the histograms' horizontal axes were set up such that the per bout event compensation was shown separately for each athlete-bout at or below $500,000 and, only for those individual bouts where athletes who earned more than $500,000 in event compensation, grouped those athlete-bouts at the right-most point on the horizontal axes.

10. The compensation summarized in the histograms includes all event compensation

2

paid per bout during the class period and included in Dr. Singer's impact regression, including win, show, pay-per-view, Letter of Agreement (LOA), performance bonus, and discretionary pay and are based on what Dr. Singer calls his "Total Event Compensation" variable ("fighter_comp").

11. For the histograms that summarize compensation distribution information by weight class or across all weight divisions by the number of previous bouts, the histograms were created, in addition to the modifications described in paragraph 9 above, through the categorization of athletes into groups with 0, 1-2, 3-4, 5-6, 9-14 and 15 or more bouts as defined by Dr. Singer's "Fights" variable.

12. For the histograms that summarize compensation distribution information by weight class or across all weight divisions by the athletes' rankings and weight classes, the histograms were created, in addition to the modifications described in paragraph 9 above, through the categorization of athletes into groups based on their FightMatrix ranking at the time of a bout that was part of a UFC event. The rankings groups are athletes ranked between 1 and 5, 6 and 10, 11 and 25, 26 and 50, 51 and 100, and outside of the top 100.

13. For the histograms that summarize compensation distribution information by weight class or across all weight divisions by the number of previous wins, the histograms were created, in addition to the modifications described in paragraph 9 above, through the categorization of athletes into groups with the following number(s) of previous wins: 0, 1, 2 through 3, 4 through 5, 6 through 9, or 10 or more wins as defined by Dr. Singer's "Wins" variable.

14. Zuffa's opposition includes a calculation stating that the fourteen athletes in Exhibit 34 of the Topel Report ("Negative Damage Athletes") account for approximately 27 percent of the total event compensation that is included in Dr. Singer's impact regression and is paid to athletes that are part of the Bout Class. This calculation was made using the Defined Regression Data set based on the files contained in the Singer Backup and Topel Backup materials. Specifically, that calculation uses the Defined Regression Data set, adds up all of the "Total Event Compensation" paid in total for UFC events during the class period to the fourteen Negative Damage Athletes and divides that total by all of the "Total Event Compensation" paid in total for UFC events during the class period to all athletes. The result of that calculation is that approximately 27.34% of total event

3

1  compensation paid to all athletes in the Defined Regression Data Set was paid to the Negative
2  Damage Athletes during the class period for participation in UFC events.

3      15.     Exhibit 109 to the Grigsby Declaration is a filtered excerpt of produced document
4  ZFL-2764800 (a spreadsheet reflecting Zuffa's athlete compensation data). This exhibit was filtered
5  by date to show only entries on or after December 16, 2010 (the start of the class period as defined in
6  Plaintiffs' Motion for Class Certification) and to show only those rows that contain an entry in the
7  "PPV" column, which reflects Pay-Per-View payments made to athletes.

8      16.     Exhibit 118 to the Grigsby Declaration is a filtered excerpt of produced document
9  ZFL-2764800 (a spreadsheet reflecting Zuffa's athlete compensation data). This exhibit was filtered
10 by date to show only entries on or after December 16, 2010 (the start of the class period as defined in
11 Plaintiffs' Motion for Class Certification) and to show only those rows that contain an entry in the
12 "LOA" column, which reflects payments made to athletes pursuant to a Letter of Agreement.

13     17.     Exhibit 119 to the Grigsby Declaration is a filtered excerpt of produced document
14 ZFL-2764800 (a spreadsheet reflecting Zuffa's athlete compensation data). This exhibit was filtered
15 by date to show only entries on or after December 16, 2010 (the start of the class period as defined in
16 Plaintiffs' Motion for Class Certification) and to show only those rows that contain an entry in the
17 "Fight of the Night" column, which reflects discretionary bonus payments made to athletes for being
18 awarded the Fight of the Night.

19     18.     Exhibit 120 to the Grigsby Declaration is a filtered excerpt of produced document
20 ZFL-2764800 (a spreadsheet reflecting Zuffa's athlete compensation data). This exhibit was filtered
21 by date to show only entries on or after December 16, 2010 (the start of the class period as defined in
22 Plaintiffs' Motion for Class Certification) and to show only those rows that contain an entry in the
23 "KO of the Night" column, which reflects discretionary bonus payments made to athletes for being
24 awarded the Knockout of the Night.

25     19.     Exhibit 121 to the Grigsby Declaration is a filtered excerpt of produced document
26 ZFL-2764800 (a spreadsheet reflecting Zuffa's athlete compensation data). This exhibit was filtered
27 by date to show only entries on or after December 16, 2010 (the start of the class period as defined in
28 Plaintiffs' Motion for Class Certification) and to show only those rows that contain an entry in the

"Submission" column, which reflects discretionary bonus payments made to athletes for being awarded the Submission of the Night.

20. Exhibit 122 to the Grigsby Declaration is a filtered excerpt of produced document ZFL-2764800 (a spreadsheet reflecting Zuffa's athlete compensation data). This exhibit was filtered by date to show only entries on or after December 16, 2010 (the start of the class period as defined in Plaintiffs' Motion for Class Certification) and to show only those rows that contain an entry in the "Performance" column, which reflects discretionary bonus payments made to athletes for being awarded the Performance of the Night.

21. Upon Plaintiffs' request, Zuffa will make the Stata .do files used to generate the Exhibit calculation described in paragraph 14 above and the histograms described in paragraphs 8 through 13 above.

I declare under penalty of perjury under the laws of the United States of America that the foregoing facts are true and correct. Executed this 6th day of April, 2018 in Washington, D.C.

                                          */s/ Brent K. Nakamura*
                                          Brent K. Nakamura