# EXHIBIT 44

## Redacted Excerpts from the 30(b)(6) Deposition of Lawrence Epstein on Fighter Compensation

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

CUNG LE; NATHAN QUARRY, JON FITCH, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

ZUFFA, LLC, d/b/a Ultimate Fighting Championship and UFC,

Defendant.

Case No. 2:15-cv-01045-RFB-(PAL)

HIGHLY CONFIDENTIAL

VIDEOTAPED DEPOSITION OF IKE LAWRENCE EPSTEIN

LAS VEGAS, NEVADA

AUGUST 15, 2017

9:32 A.M.

REPORTED BY:
MICHELLE R. FERREYRA, CCR No. 876
JOB NO. 51651

Ike Lawrence Epstein - HIGHLY CONFIDENTIAL

the night bonuses. During the relevant period, they were called submission of the night, knock out of the night bonuses.

**Q. Okay. And so during one of those periods of time, any fighter that won fighter of the night bonus, for example, would have received the same amount?**

A. I believe that's true, yeah.

**Q. Same for performance of the night?**

A. Yes.

**Q. Submission of the night?**

A. Yes.

**Q. Knock out of the night?**

A. Correct.

**Q. Did I forget any?**

A. I don't know.

**Q. And do you recall roughly how long ago that change was?**

A. I don't. We provided some written documents to you, I believe, that detailed this, exactly when the changes were made; so I'd rely on those for my testimony.

DAVID FELDMAN WORLDWIDE, INC.
450 Seventh Avenue - Ste 500, New York, NY 10123 1.800.642.1099





22

[redacted]

23

[redacted]

Q. Do you recall any athlete that you -- that Zuffa did that for?

MR. WIDNELL: Objection. This line is beyond the scope of the 30(b)(6).

THE WITNESS: I don't, but there were many -- there were many. I don't recall off the top of my head, but there were many.

MR. RAYHILL: Nick, I -- I understand your objection, but I think --

MR. WIDNELL: Okay. Can -- can we just make it a continuing objection, just so that -- for simplicity sake because --

MR. RAYHILL: Absolutely. That's fine. That's fine.

MR. WIDNELL: I fail to see how any of this

24

Ike Lawrence Epstein - HIGHLY CONFIDENTIAL

is relevant to compensation.

MR. RAYHILL: Well, to -- Mr. Epstein put the -- put the contract language at issue when he said that they changed it.

MR. WIDNELL: So I -- I -- again, I -- I think the objection stands.

MR. RAYHILL: Understood. Uh-huh.

BY MR. RAYHILL:

[redacted]

25

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

**Q. And so let's just let's flush that out a little bit. So does Zuffa enter into licensing agreements with certain manufacturers?**

A. Yes.

**Q. And so I think you mentioned mugs, just for**

**an example; so does Zuffa have a licensing agreement with a company that manufacturers mugs with the likeness of UFC fighters?**

A. I don't think we have a deal that has the likeness of UFC fighters on any of our coffee mugs. It's -- it's mainly just the UFC brand.

**Q. How about trading cards?**

A. We have trading cards, you know, that -- that uses the likeness of our athletes, yes.

**Q. Okay. And so in the trading card deal, you sign -- Zuffa signs a licensing agreement with the company that makes the training cards?**

A. Correct. Topps.

[redacted]

[redacted]

[redacted]

**Q. Okay. Does Zuffa have licensing agreements for posters?**

A. I don't recall any. I know we have posters that we produce for the events, but I don't recall a

Ike Lawrence Epstein - HIGHLY CONFIDENTIAL

licensing arrangement for posters. We may have had them. I mean, the period of time that this lawsuit covers is pretty expansive; so there certainly may have been, but I don't recall.

**Q. How about video games?**

A. Yes.

**Q. And is the arrangement roughly the same for video games check strike that. Strike that.**

[redacted]



70

Ike Lawrence Epstein HIGHLY CONFIDENTIAL

**the front. And I just want to point out that the date on the front says January 2015.**

A. I see it.

**Q. Okay. Okay. So looking at that first column, again on the last page**

A. Yes.

71

72

73

74

[redacted]

75

[redacted]

76

[redacted]

77

[redacted]

78

[redacted]

80

Ike Lawrence Epstein - HIGHLY CONFIDENTIAL

MR. WIDNELL: So you have asked a number of questions where you said, Are you aware of an instance where a fighter won four times and the -- the compensation increased? We did not prepare the witness, just to be clear, to answer at -- at that level of detail for each individual fighter.

MR. RAYHILL: Okay. Well, your objection is noted. I would point out that it's an inappropriate speaking objection.

MR. WIDNELL: I -- I was trying to help clarify in terms of questions that you -- you continue to ask. Because you've asked that question a number of times, and I wanted to try and make sure that you understood our understanding of the -- the 30(b)(6) requirements.

MR. RAYHILL: I -- I understand. But, you know, I think the proper way to handle this is to state your objection as to form and leave it at that. Fair enough.

MR. WIDNELL: I disagree, but I understand what you are saying.

MR. RAYHILL: Okay.

BY MR. RAYHILL:

[redacted]

79

[redacted]

MR. WIDNELL: I just want to object quickly. I don't believe -- or we do not believe that those are within the scope that the witness should have to be able to answer about the compensation of each and individual fighter after each and every individual fight.

You do have that information. We have provided it. I want to make clear that you can answer those questions simply by looking at the data that we have produced. But I -- I do want to make it clear that we don't think it's appropriate to -- or within the scope to expect the witness to be able to answer, you know, has this scenario ever happened and have that kind of encyclopedic knowledge about each and every individual fighter's compensation.

MR. RAYHILL: So, first of all, I haven't asked him about individual fighter's compensation.

81

[redacted]

MR. RAYHILL: I will just note for the record that that theory was posited in the -- the -- our motion to challenge privilege on the Mercer documents, and I believe it was rejected by the Court.

MR. WIDNELL: Just to be clear, I think the Court rejected the privilege on the basis of that point, but I don't think that the Court made a factual finding that that wasn't the intent of -- of Zuffa and its counsel in what it did.

MR. RAYHILL: Fair enough. I will accept

that statement. Okay.

BY MR. RAYHILL:

MR. RAYHILL: Okay. I have no more questions about that document.

We can go off the record and break for lunch.

VIDEOGRAPHER: We are off the record at 12:03 p.m.

-o0o-

(Lunch recess)

-o0o-

(Exhibit 8 marked.)

VIDEOGRAPHER: We are back on the record at 1:14 p.m.

BY MR. RAYHILL:

**Q. Okay. You have been handed what's been marked as Exhibit 8. It has the Bates No. ZFL 2701804, and it has an attachment that begins at the Bates No. ending in 1810. Let me know when you have had a chance to look it over.**

A. All right.

**s,**

**including bonuses. Do you know if Zuffa provided this**

110
112
111
113

29 (Pages 110 to 113)

DAVID FELDMAN WORLDWIDE, INC.
450 Seventh Avenue - Ste 500, New York, NY 10123 1.800.642.1099

114

[redacted]

116

Ike Lawrence Epstein - HIGHLY CONFIDENTIAL

(Exhibit 9 marked.)

BY MR. RAYHILL:

**Q. You have being handed what's been marked as Exhibit 9.**

MR. RAYHILL: Correct?

MADAM REPORTER: Yes.

BY MR. RAYHILL:

**Q. Okay. It's e-mail and an attachment. The e-mail has the Bates stamp No. ZFL-2701738. And the attachment begins at ZFL-2701740. This is a spreadsheet that was produced in native form; so it's something that formatting reflects how we -- plaintiffs printed the document up. Let me know when you've had a chance to look it over.**

A. I have looked at it quickly. Obviously, it's many, many pages; so I can't look at it in detail.

**Q. Okay. All right. So the e-mail on the front -- front page is from Hunter Campbell to Patrick Ro at Mercer.com. The date is November 26, 2013.**

A. Yeah.

[redacted]

115

[redacted]

117

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

40 (Pages 154 to 157)

158

[redacted]

160

[redacted]

159

[redacted]

161

[redacted]

[redacted]

MR. DONALD CAMPBELL: Is there a question there?

MR. RAYHILL: I'm working on it.

MR. DONALD CAMPBELL: Oh, okay.

MR. RAYHILL: No. We will move on to 1224.

BY MR. RAYHILL:

[redacted]

[redacted]

[redacted]

**Q. Okay. I'm finished with that document for now.**

**(Exhibit 14 marked.)**

THE WITNESS: Thank you.

MADAM REPORTER: You're welcome.

MR. RAYHILL: 11, 12, 13?

MADAM REPORTER: 14.

THE WITNESS: 14.

BY MR. RAYHILL:

**Q. You have been handed what's been marked Exhibit 14. It has the Bates No. it's an e mail and attachment. The e mail has the Bates No. ZFL 2700520. And the attachment is an Excel spreadsheet that starts with the Bates No. ZFL 2700522. This is a document that plaintiffs have added some highlighting to, but otherwise have not have produced it in the form in which it was produced to us.**

A. Okay.

**Q. Okay. So the e mail is dated January 22, 2014. And it's an e mail from Hunter Campbell no,**

[redacted]

MR. RAYHILL: Okay. I have no more questions.
MR. WIDNELL: I have no questions either.
VIDEOGRAPHER: We're finished?
MR. RAYHILL: Yes.
VIDEOGRAPHER: This concludes today's deposition of Ike Lawrence Epstein. The number of

media used was four. We are off the record at 6:21 p.m.

(Thereupon, the videotaped deposition concluded at 6:21 p.m.)

STATE OF )
) :ss
COUNTY OF )

I, IKE LAWRENCE EPSTEIN, the witness herein, having read the foregoing testimony of the pages of this deposition, do hereby certify it to be a true and correct transcript, subject to the corrections, if any, shown on the attached page.

IKE LAWRENCE EPSTEIN

Sworn and subscribed to before me, this day of , 2017.

Notary Public

CERTIFICATE OF REPORTER

STATE OF NEVADA )
COUNTY OF CLARK )

I, Michelle R. Ferreyra, a Certified Court Reporter licensed by the State of Nevada, do hereby certify: That I reported the videotaped deposition of IKE LAWRENCE EPSTEIN, commencing on TUESDAY, AUGUST 15, 2017, at 9:32 a.m.

That prior to being deposed, the witness was duly sworn by me to testify to the truth. That I thereafter transcribed my said stenographic notes into written form, and that the typewritten transcript is a complete, true and accurate transcription of my said stenographic notes, and that a request has been made to review the transcript.

I further certify that I am not a relative, employee or independent contractor of counsel or of any of the parties involved in the proceeding, nor a person financially interested in the proceeding, nor do I have any other relationship that may reasonably cause my impartiality to be questioned.

IN WITNESS WHEREOF, I have set my hand in my office in the County of Clark, State of Nevada, this 31st day of August, 2017.

MICHELLE R. FERREYRA, CCR No. 876

INSTRUCTIONS TO WITNESS

Please read your deposition over carefully and make any necessary corrections. You should state the reason in the appropriate space on the errata sheet for any corrections that are made.

After doing so, please sign the errata sheet and date it.

You are signing same subject to the changes you have noted on the errata sheet, which will be attached to your deposition.

It is imperative that you return the original errata sheet to the deposing attorney within thirty (30) days of receipt of the deposition transcript by you. If you fail to do so, the deposition transcript may be deemed to be accurate and may be used in court.

E R R A T A

I wish to make the following changes, for the following reasons:

PAGE LINE

CHANGE:

REASON:

CHANGE:

REASON:

CHANGE:

REASON:

CHANGE:

REASON:

CHANGE:

REASON:

CHANGE:

REASON:

WITNESS' SIGNATURE DATE