# EXHIBIT 52

**Redacted Excerpts of Plaintiffs' Answers to Defendant Zuffa, LLC's First Set of Interrogatories to Plaintiffs and Plaintiffs' Verifications**

**BERGER & MONTAGUE, P.C.**
Eric L. Cramer (pro hac vice*)*
Michael Dell'Angelo (pro hac vice*)*
Patrick F. Madden (pro hac vice*)*
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Fax: (215) 875-4604
ecramer@bm.net
mdellangelo@bm.net
pmadden@bm.net

*(Additional counsel appear on signature page)*

*Attorneys for Individual and Representative Plaintiffs*
*Cung Le, Nathan Quarry, Jon Fitch, Luis Javier Vazquez,*
*Brandon Vera and Kyle Kingsbury*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>Defendant. | Case No. 2:15-cv-01045-RFB-(PAL)<br><br>**ANSWERS TO DEFENDANT ZUFFA, LLC'S FIRST SET OF INTERROGATORIES TO PLAINTIFFS LE, QUARRY, FITCH, VERA, VAZQUEZ AND KINGSBURY** |

Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury, ("**Plaintiffs**"), through the undersigned counsel, hereby responds to Defendant Zuffa, LLC's ("**Zuffa**" or "**UFC**") First Set of Interrogatories, dated July 22, 2016, as follows:

**PRELIMINARY STATEMENT**

The following responses are made solely for the purpose of and in relation to the captioned lawsuit. These responses are given without prejudice to Plaintiffs' right to produce evidence of any subsequently discovered or recalled facts, and Plaintiffs reserve the right to

20 **INTERROGATORY NO. 2 (Common and Individual Answers):**

21 For each **AGREEMENT** signed between **YOU** and any **COMBAT SPORTS**
22 **PROMOTER**, including **ZUFFA**, **IDENTIFY** every provision or term that **YOU** negotiated or
23 attempted to negotiate and the result of that negotiation.

24 **ANSWER:**

25 In addition to the General Objections set forth above, Plaintiffs respond to Interrogatory
26 No. 2 as follows:

27 **Plaintiffs' Common Response:**

28

The vast majority of the contractual provisions in each of the contracts that Plaintiffs and other UFC Fighters entered into with Zuffa were non-negotiable. Zuffa presented each agreement basically on a take it or leave it basis, with negotiations only at the margins if at all.

**Plaintiff Fitch:**

Plaintiff Fitch entered into three main kinds of agreements with Zuffa: an Exclusive Promotional and Ancillary Rights Agreement ("Promotion and Ancillary Rights Agreement"), Merchandising and Ancillary Rights Agreements ("Merchandising Rights Agreements"), and one or more Bout Agreements (together, the "Fitch Contracts").[1] As explained in greater detail in response to Interrogatory No. 3 below, the Fitch Contracts made Zuffa the exclusive promoter of Plaintiff Fitch's bouts, and granted certain ancillary rights (together with Zuffa's other Fighter Contracts) to Zuffa, which impaired the incentives and ability of rival promoters to contract with UFC Fighters, including Plaintiff Fitch.

Plaintiff Fitch attempted to negotiate purse levels with Zuffa, but was not successful.

Plaintiff Fitch also attempted to negotiate the terms of the merchandising agreement and video game addendum with Zuffa. Plaintiff Fitch attempted to negotiate a limited term to these assignments of likeness rights. The UFC released Plaintiff Fitch as a result of Plaintiff Fitch's attempt to negotiate these agreements.

On November 19, 2008, following Plaintiff Fitch's attempt to negotiate these provisions, Zuffa sent Fitch a letter notifying him of his release from the UFC. member of the American Kickboxing Academy ("AKA"), a team of Fighters including Plaintiff Fitch that sparred and trained together at a well-

---

[1] "'Bout Agreement' means a contract between a UFC Fighter and Zuffa, or its affiliates, which designates, among other things, the opponent, weight class, and date of a scheduled bout." CC ¶ 27(a).

1  known gym in San Jose, California. ▮
2  ▮
3  ▮
4  ▮ Plaintiff Fitch relented ▮
5  ▮ and signed the agreements. On November 21, 2008,
6  immediately after Plaintiff Fitch executed the agreements, Zuffa notified Plaintiff Fitch that it
7  had rescinded his release from the UFC.

8  **Plaintiff Kingsbury:**

9  Plaintiff Kingsbury entered into three main kinds of agreements with Zuffa: an Exclusive
10 Promotional and Ancillary Rights Agreement ("Promotion and Ancillary Rights Agreement"),
11 Merchandising and Ancillary Rights Agreements ("Merchandising Rights Agreements"), and
12 one or more Bout Agreements (together, the "Kingsbury Contracts"). As explained in greater
13 detail in response to Interrogatory No. 3 below, the Kingsbury Contracts made Zuffa the
14 exclusive promoter of Plaintiff Kingsbury's bouts, and granted certain ancillary rights to Zuffa,
15 which (together with Zuffa's other Fighter Contracts) impaired the incentives and ability of rival
16 promoters to contract with UFC Fighters, including Plaintiff Kingsbury.

17 The vast majority of the contractual provisions in each of the Kingsbury Contracts, and
18 Zuffa's Contracts with Fighters generally, were non-negotiable. Zuffa presented each agreement
19 basically on a take it or leave it basis, with negotiations only at the margins if at all.

20 ▮
21 ▮ Prior to his fighting with the UFC, during the years 2006 and
22 2007, Plaintiff Kingsbury had negotiated compensation with two regional promotions, Rage In
23 the Cage and with the King of the Cage promotions; Plaintiff Kingsbury was able to negotiate a
24 higher percentage of revenue earned through ticket sales at these promotions.

25 The UFC told Plaintiff Kingsbury that the Kingsbury Contracts, and Zuffa's Fighter
26 contracts generally, were "non-negotiable" and offered on a "take it or leave it basis" so Plaintiff
27 Kingsbury did not attempt to negotiate the terms of his UFC agreements.

28

**Plaintiff Le:**

Plaintiff Le entered into three main kinds of agreements with Zuffa: an Exclusive Promotional and Ancillary Rights Agreement ("Promotion and Ancillary Rights Agreement"), Merchandising and Ancillary Rights Agreements ("Merchandising Rights Agreements"), and one or more Bout Agreements (together, the "Le Contracts"). As explained in greater detail in response to Interrogatory No. 3 below, the Le Contracts made Zuffa the exclusive promoter of Plaintiff Le's bouts, and granted certain ancillary rights to Zuffa, which (together with Zuffa's other Fighter Contracts) impaired the incentives and ability of rival promoters to contract with UFC Fighters, including Plaintiff Le.

The vast majority of the contractual provisions in each of the Le Contracts were non-negotiable. Zuffa presented each agreement basically on a take it or leave it basis, with negotiations only at the margins if at all.

Plaintiff Le attempted to negotiate Pay Per View (PPV) points with Zuffa, an arrangement where Plaintiff Le would receive part of the revenues for PPV events, and Zuffa told him                                                             Plaintiff Le was not successful in these negotiations.

**Plaintiff Quarry:**

Plaintiff Quarry entered into three main kinds of agreements with Zuffa: an Exclusive Promotional and Ancillary Rights Agreement ("Promotion and Ancillary Rights Agreement"), Merchandising and Ancillary Rights Agreements ("Merchandising Rights Agreements"), and one or more Bout Agreements (together, the "Quarry Contracts"). As explained in greater detail in response to Interrogatory No. 3 below, As explained in greater detail in response to Interrogatory No. 3 below, the Quarry Contracts made Zuffa the exclusive promoter of Plaintiff Quarry's bouts, and granted certain ancillary rights to Zuffa, which (together with Zuffa's other

1  Fighter Contracts) impaired the incentives and ability of rival promoters to contract with UFC
2  Fighters, including Plaintiff Quarry.

3  The vast majority of the contractual provisions in the Quarry Contracts, and Zuffa's
4  contracts with Fighters, were non-negotiable. Zuffa presented each agreement basically on a take
5  it or leave it basis, with negotiations only at the margins if at all. Plaintiff Quarry attempted to
6  negotiate Zuffa's requirement that the Fighter assign his likeness rights, which, *inter alia*, allow
7  Zuffa to merchandise Fighter images for no compensation. Zuffa rebuffed Quarry's attempt to
8  strike out this provision. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
9  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
10 ▮▮▮▮▮▮▮▮

11 Zuffa initially agreed to pay Quarry purses of ▮▮▮▮▮▮ for participating in a bout, and
12 another ▮▮▮▮▮▮ for prevailing. Plaintiff Quarry subsequently requested additional compensation.
13 Zuffa advised Quarry that the UFC would increase his compensation scale to match that of
14 another UFC Fighter, ▮▮▮▮▮▮▮▮▮, raising his pay to ▮▮▮▮▮▮ for participating in a bout, and an
15 additional ▮▮▮▮▮▮ for prevailing. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
16 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Plaintiff Quarry attempted to
17 negotiate further increases in his compensation, but despite his efforts, Plaintiff Quarry was not
18 successful in negotiating his bout purses beyond this point.

19 Zuffa excluded Plaintiff Quarry from the UFC video game Zuffa had licensed for the year
20 2009, but included Plaintiff Quarry's sponsors in the video game for which Plaintiff Quarry
21 received no compensation. Zuffa included Plaintiff Quarry in the 2010 video game, which was
22 on shelves at least until the next version of the video game came out in February 2012, but did
23 not compensate Quarry for using his likeness in the video game.

24 As with many other UFC Fighters, Quarry tried to negotiate sponsorship agreements, but
25 because Zuffa's contracts required Zuffa's consent, he was unsuccessful because Zuffa never
26 consented. For example, Quarry tentatively secured a sponsorship from the "Ultimate Fighting
27 Warehouse," but Zuffa President Dana White refused to consent, and thus Quarry lost the
28

sponsorship. Quarry also attempted to negotiate a sponsorship from a local level promotion in the Portland area called "Sport Fight," which White also rejected, and thus Quarry lost that as well. Quarry also tentatively secured the first shoe sponsorship from "And-1," a basketball shoe manufacturer. Zuffa said it would consent only if And-1 agreed to pay Zuffa a sponsorship tax, which And-1 refused, causing Quarry to lose that opportunity. Additionally, Zuffa included Quarry's sponsors in the video game without compensating Quarry.

**Plaintiff Vazquez:**

Plaintiff Vazquez entered into three main kinds of agreements with Zuffa: an Exclusive Promotional and Ancillary Rights Agreement ("Promotion and Ancillary Rights Agreement"), Merchandising and Ancillary Rights Agreements ("Merchandising Rights Agreements"), and Bout Agreements (together, the "Vazquez Contracts"). As explained in greater detail in response to Interrogatory No. 3 below, the Vazquez Contracts made Zuffa the exclusive promoter of Plaintiff Vazquez's bouts, and granted certain ancillary rights to Zuffa, which (together with Zuffa's other Fighter Contracts) impaired the incentives and ability of rival promoters to contract with UFC Fighters, including Plaintiff Vazquez.

The vast majority of the contractual provisions in each of the Vazquez Contracts, and Zuffa's contracts with Fighters generally, were non-negotiable. Zuffa presented each agreement basically on a take it or leave it basis, with negotiations only at the margins if at all.

█████████████████████████████████████████████████████████████████████████ As explained below Plaintiff Vazquez attempted to negotiate his compensation with Zuffa but was unsuccessful.

Plaintiff Vazquez was successful in negotiating the compensation he was paid by the WEC. Plaintiff Vazquez negotiated a pay increase in his WEC contract from a structure that paid ███ to fight, and ███ win bonus, to one that gave him ███ for each. Plaintiff Vazquez also negotiated for a ███ signing bonus with the WEC.

Plaintiff Vazquez attempted to negotiate for a signing bonus with the UFC, and was rebuffed. Plaintiff Vazquez attempted to negotiate the ancillary rights provisions in his UFC

1  contract. This attempt was not successful.

2

3

4  **Plaintiff Vera:**

5  Plaintiff Vera entered into three main kinds of agreements with Zuffa: an Exclusive Promotional and Ancillary Rights Agreement ("Promotion and Ancillary Rights Agreement"), Merchandising and Ancillary Rights Agreements ("Merchandising Rights Agreements"), and Bout Agreements (together, the "Vera Contracts"). As explained in greater detail in response to Interrogatory No. 3 below, the Vera Contracts made Zuffa the exclusive promoter of Plaintiff Vera's bouts for a period of time, and granted certain ancillary rights to Zuffa, which (together with Zuffa's other Fighter Contracts) impaired the incentives and ability of rival promoters to contract with UFC Fighters, including Plaintiff Vera.

The vast majority of the contractual provisions in each of the Vera Contracts, and Zuffa's contracts with UFC Fighters more generally, were non-negotiable. Zuffa presented each agreement basically on a take it or leave it basis, with negotiations only at the margins if at all.

Plaintiff Vera attempted to negotiate his compensation, asking for more money per bout. Zuffa informed Plaintiff Vera that his compensation was non-negotiable. Plaintiff Vera, who fights as a heavyweight and needs more room on an airplane than an averaged sized male, also attempted to negotiate for business-class airfare, but Zuffa denied his request. In or about 2006, Plaintiff Vera successfully negotiated a signing bonus of with Zuffa to re-sign following the expiration of his initial Zuffa Promotion and Ancillary Rights Agreement.

In October 2005, Zuffa offered Vera a contract for The Ultimate Fighter, a television reality series produced by Zuffa. Zuffa rejected his attempt to make modifications to the contract, and he was told he would not be on the show simply because Vera attempted to negotiate contractual terms.

DATED: _September 16, 2016     */s/ Eric L. Cramer*
Eric L. Cramer
Michael Dell'Angelo
Patrick F. Madden
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000/Fax: (215) 875-4604
ecramer@bm.net
mdellangelo@bm.net
pmadden@bm.net

WOLF RIFKIN SHAPIRO SCHULMAN & RABKIN, LLP
Don Springmeyer
Nevada State Bar No. 1021
Bradley Schrager
Nevada State Bar No. 10217

Daniel Bravo
Nevada State Bar No. 13078
3556 East Russell Road, Second Floor
Las Vegas, NV 89120
Telephone: (702) 341-5200
Fax: (702) 341-5300

COHEN MILSTEIN SELLERS & TOLL, PLLC
Benjamin D. Brown
Richard A. Koffman
Daniel Silverman
1100 New York Ave., N.W., Ste. 500, East Tower
Washington, DC 20005
Telephone: (202) 408-4600/Fax: (202) 408 4699
bbrown@cohenmilstein.com
rkoffman@cohenmilstein.com
dsilverman@cohenmilstein.com

JOSEPH SAVERI LAW FIRM, INC.
Joseph R. Saveri
Joshua P. Davis
Matthew Weiler
Andrew M. Purdy
Kevin E. Rayhill
555 Montgomery Street, Suite 1210
San Francisco, California 94111
Telephone: (415) 500-6800/Fax: (415) 395-9940
jsaveri@saverilawfirm.com
jdavis@saverilawfirm.com
mweiler@saverilawfirm.com
apurdy@saverilawfirm.com
krayhill@saverilawfirm.com

WARNER ANGLE HALLAM JACKSON &
FORMANEK PLC
Robert C. Maysey
Jerome K. Elwell
2555 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Telephone: (602) 264-7101/Fax: (602) 234-0419
rmaysey@warnerangle.com
jelwell@warnerangle.com

LAW OFFICE OF FREDERICK S. SCHWARTZ
Frederick S. Schwartz
15303 Ventura Boulevard, #1040
Sherman Oaks, CA 91403
Telephone: (818) 986-2407/Fax: (818) 995-4124
fred@fredschwartzlaw.com

SPECTOR ROSEMAN KODROFF &
WILLIS, P.C.
Eugene A. Spector
Jeffrey J. Corrigan
Jay S. Cohen

Case No. 2:15-cv-01045-RFB-(PAL)                34
PLAINTIFFS' ANSWERS TO INTERROGATORIES

William G. Caldes
1818 Market Street – Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300/Fax: (215) 496-6611
espector@srkw-law.com
jcorrigan@srkw-law.com
jcohen@srkw-law.com
wcaldes@srkw-law.com

*Attorneys for Individual and Representative Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Luis Javier Vazquez, Brandon Vera and Kyle Kingsbury*

## VERIFICATION

My name is Nathan Quarry. I am one of the named Plaintiffs in the action captioned Le et al. v. Zuffa, LLC, Case No. 2:15-cv-01045-RFB-PAL (D. Nev.).

I have reviewed the following document:

**FIRST AMENDED ANSWERS TO DEFENDANT ZUFFA, LLC'S FIRST SET OF INTERROGATORIES TO PLAINTIFF NATHAN QUARRY**

I believe this document to be true and accurate with respect to statements based on my personal knowledge. Otherwise, I am informed and believe that the matters stated therein are true and correct.

I declare under penalty of perjury under the laws of the United States that these answers are true and correct. Executed on the 14th day of November, 2016.

_____
Nathan Quarry

**VERIFICATION**

My name is Luis Javier Vazquez. I am one of the named Plaintiffs in the action captioned Le et al. v. Zuffa, LLC, Case No. 2:15-cv-01045-RFB-PAL (D. Nev.).

I have reviewed the following document:

**FIRST AMENDED ANSWERS TO DEFENDANT ZUFFA, LLC'S FIRST SET OF INTERROGATORIES TO PLAINTIFF LUIS JAVIER VAZQUEZ**

I believe this document to be true and accurate with respect to statements based on my personal knowledge. Otherwise, I am informed and believe that the matters stated therein are true and correct.

I declare under penalty of perjury under the laws of the United States that these answers are true and correct. Executed on the 14th day of November, 2016.

_____
Luis Javier Vazquez

358089

## VERIFICATION

My name is Kyle Kingsbury. I am one of the named Plaintiffs in the action captioned Le et al. v. Zuffa, LLC, Case No. 2:15-cv-01045-RFB-PAL (D. Nev.).

I have reviewed the following document:

**FIRST AMENDED ANSWERS TO DEFENDANT ZUFFA, LLC'S FIRST SET OF INTERROGATORIES TO PLAINTIFF KYLE KINGSBURY**

I believe this document to be true and accurate with respect to statements based on my personal knowledge. Otherwise, I am informed and believe that the matters stated therein are true and correct.

I declare under penalty of perjury under the laws of the United States that these answers are true and correct. Executed on the 14th day of November, 2016.

_____
Kyle Kingsbury

358099

## VERIFICATION

My name is Jon Fitch. I am one of the named Plaintiffs in the action captioned Le et al. v. Zuffa, LLC, Case No. 2:15-cv-01045-RFB-PAL (D. Nev.).

I have reviewed the following document:

**FIRST AMENDED ANSWERS TO DEFENDANT ZUFFA, LLC'S FIRST SET OF INTERROGATORIES TO PLAINTIFF JON FITCH**

I believe this document to be true and accurate with respect to statements based on my personal knowledge. Otherwise, I am informed and believe that the matters stated therein are true and correct.

I declare under penalty of perjury under the laws of the United States that these answers are true and correct. Executed on the 14th day of November, 2016.

_____
Jon Fitch

358092

## VERIFICATION

My name is Cung Le. I am one of the named Plaintiffs in the action captioned Le et al. v. Zuffa, LLC, Case No. 2:15-cv-01045-RFB-PAL (D. Nev.).

I have reviewed the following document:

**FIRST AMENDED ANSWERS TO DEFENDANT ZUFFA, LLC'S FIRST SET OF INTERROGATORIES TO PLAINTIFF CUNG LE**

I believe this document to be true and accurate with respect to statements based on my personal knowledge. Otherwise, I am informed and believe that the matters stated therein are true and correct.

I declare under penalty of perjury under the laws of the United States that these answers are true and correct. Executed on the 14th day of November, 2016.

_____
Cung Le

358091

# **VERIFICATION**

My name is Brandon Vera.  I am one of the named Plaintiffs in the action captioned Le et al. v. Zuffa, LLC, Case No. 2:15-cv-01045-RFB-PAL (D. Nev.).

I have reviewed the following document:

**FIRST AMENDED ANSWERS TO DEFENDANT ZUFFA, LLC'S FIRST SET OF INTERROGATORIES TO PLAINTIFF BRANDON VERA**

I believe this document to be true and accurate with respect to statements based on my personal knowledge. Otherwise, I am informed and believe that the matters stated therein are true and correct.

I declare under penalty of perjury under the laws of the United States that the answers are true and correct.  Executed on the 14th day of November, 2016.

_____
Brandon Vera

358090