# EXHIBIT 137

# Excerpts from the Deposition of Robert H. Topel

267

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

CUNG LE; NATHAN QUARRY, JON )
FITCH, on behalf of )
themselves and all others )
similarly situated, )
 )
       Plaintiffs, )
 )
       vs. ) Case No.
 ) 2:15-cv-01045-RFB-(PAL)
 )
ZUFFA, LLC, d/b/a Ultimate )
Fighting Championship and )
UFC, )
 )
       Defendant. )
_____)

HIGHLY CONFIDENTIAL

CONTINUED VIDEOTAPED DEPOSITION OF

ROBERT TOPEL, VOL. II

Washington, D.C.

December 6, 2017

8:39 a.m.

REPORTED BY:
Tina Alfaro, RPR, CRR, RMR
Job No. 52570

432

1  MR. WIDNELL: Objection, form.
2  BY THE WITNESS:
3  A. Since I don't know exactly how the ratings
4  or the rankings happen, let's assume they're like
5  college football rankings, then you take into
6  account the types of opponents you've had and how
7  you did and somebody has a formula that tries to
8  take that into account. Same thing with golf
9  rankings and all sorts of things.
10  **Q. All things equal, consumers will be**
11  **willing to pay more to see highly-ranked opponents**
12  **fight than lower-ranked opponents fight; is that**
13  **fair?**
14  MR. WIDNELL: Objection, form.
15  BY THE WITNESS:
16  A. In every instance, no, but on average
17  probably yes.
18  **Q. Higher ranked fighters, all things equal,**
19  **generate more revenues when they fight than**
20  **lower-ranked fighters, correct?**
21  MR. WIDNELL: Objection, form.
22  BY THE WITNESS:
23  A. Not always, but on average that's probably
24  true.
25  **Q. Turn to paragraph 96, please. In the**

433

1  **first sentence after the dash you state "There is a**
2  **natural tendency for a leading promoter to attract**
3  **a significant share of the top athletes"?**
4  A. Yes.
5  **Q. "This follows," you say, "from the**
6  **complimentarity of athlete talents in producing**
7  **high-quality bouts" --**
8  A. That's the point we just made.
9  **Q. -- "and the desire among athletes to fight**
10  **against the best"; do you see that?**
11  A. Yes.
12  **Q. And you agree with that?**
13  A. Yes.
14  **Q. Can you please explain the natural**
15  **tendency for a leading promoter to attract a**
16  **significant share of the top athletes. What does**
17  **that mean?**
18  A. It means that athletes -- their talents
19  are complementary, that the good athletes want to
20  be in the places where the -- where the other good
21  athletes are so they can fight them. And then
22  it's -- it's kind of a feedback system that you
23  attract some of the good athletes, they fight well,
24  it makes it more attractive for the other good
25  athletes, and so on. So Zuffa kind of runs a

434

1  platform that has been successful in attracting the
2  top athletes and that complementarity plays a
3  role.
4  **Q. How do you define "significant share" as**
5  **you use that term in this sentence?**
6  A. All other things equal, a firm that is
7  attracting the top athletes will see its share
8  among the top athletes rise.
9  **Q. And that's because fighters generally have**
10  **an interest in competing against the best fighters,**
11  **right?**
12  A. Well, that's part of it, but the
13  complementarity is there's more energy created when
14  you put the good fighters against each other. So
15  the -- the customers like that too.
16  **Q. And those are the fights that would likely**
17  **lead to career advancement and higher compensation**
18  **ultimately, correct?**
19  MR. WIDNELL: Objection, form.
20  BY MR. CRAMER:
21  **Q. The ones with higher energy.**
22  A. Broadly speaking.
23  **Q. Broadly speaking, yes?**
24  A. Broadly speaking, if I -- if I'm
25  successful against higher-ranked people, I will

435

1  probably advance more and get paid more and so on,
2  as I understand the process.
3  **Q. You can put that paragraph aside.**
4  **Would you agree with me that by**
5  **restricting fighter mobility used the challenged**
6  **contracts Zuffa's made it more difficult for other**
7  **MMA promotions to access UFC's top fighters, all**
8  **things equal?**
9  A. No.
10  **Q. Are you aware that Zuffa and banks working**
11  **with Zuffa have seen the challenged contracts and**
12  **describe the challenged contracts as barriers to**
13  **entry to rivals?**
14  A. I think I know what you're -- to what you
15  are referring and I wouldn't characterize it that
16  way.
17  **Q. All right. Would you take a look at what**
18  **has been marked as Exhibit 12. We marked it**
19  **earlier today. It was in the pile in front of you.**
20  A. Exhibit --
21  **Q. 12. It is the --**
22  A. It's the Deutsche Bank?
23  **Q. Correct.**
24  A. What page do you want?
25  **Q. I would like you to turn to page 7 of the**

**Deutsche Bank document.**

A. Yep.

[redacted]

[redacted]

[redacted]

[redacted]

```
440                                              442
[redacted]                                       [redacted]
                                                 20    MR. CRAMER: All right. I'd like to show
                                                 21    you -- or have marked as Exhibit 17 the next
                                                 22    document.
                                                 23         (Topel Exhibit 17 was marked
                                                 24           as requested.)
                                                 25    BY MR. CRAMER:

441                                              443
[redacted]                                       1     Q. Exhibit 17 is a two-page series of e-mails
                                                 2     bearing the Bates range WME-Zuffa-00013978 through
                                                 3     979. The cover e-mail is from Brent Richard to
                                                 4     Al Pfitzenmaier and its subject is "Risks and
                                                 5     mitigants" and it's dated --
                                                 6     A. I'm a little confused. This one says it's
                                                 7     from Brent Richard to Brent Richard. So...
                                                 8     Q. -- and it's dated March 20, 2016. There's
                                                 9     an e-mail at the bottom that he must have been
                                                 10    sending it to himself --
                                                 11    A. That's my --
                                                 12       THE REPORTER: One at a time, please.
                                                 13       THE WITNESS: Sorry.
                                                 14    BY MR. CRAMER:
                                                 15    Q. Do you know who Brent Richards is?
                                                 16    A. It says here he's the global head of M&A
                                                 17    at WME and IMG.
                                                 18    Q. Okay. And you've seen this document
                                                 19    before, right?
                                                 20    A. Yeah, I probably saw this. I've seen
                                                 21    thousands of documents.
                                                 22    Q. Well, you rely upon it in your footnote 46
                                                 23    and 407; is that right?
                                                 24    A. Let's take a look at it, footnote 46 and
                                                 25    407. What is this supporting -- okay. Okay. And
```


**528**

```
 1
 2     STATE OF _____ )
 3                    ) :ss
 4     COUNTY OF _____ )
 5
 6
 7         I, ROBERT TOPEL, the witness
 8     herein, having read the foregoing
 9     testimony of the pages of this deposition,
10     do hereby certify it to be a true and
11     correct transcript, subject to the
12     corrections, if any, shown on the attached
13     page.
14
15             _____
16                  ROBERT TOPEL
17
18
19
20     Sworn and subscribed to before
21     me, this       day of
22           , 2017.
23
24     _____
25          Notary Public
```

**529**

```
 1     CERTIFICATE OF SHORTHAND REPORTER-NOTARY PUBLIC
 2         I, TINA M. ALFARO, Registered Professional
 3     Reporter, Certified Realtime Reporter, and Notary
 4     Public, the officer before whom the foregoing
 5     deposition was taken, do hereby certify that the
 6     foregoing transcript is a true and correct record
 7     of the testimony given; that said testimony was
 8     taken by me stenographically and thereafter reduced
 9     to typewriting under my direction; that reading and
10     signing was requested; and that I am neither
11     counsel for, related to, nor employed by any of the
12     parties to this case and have no interest,
13     financial or otherwise, in its outcome.
14         IN WITNESS WHEREOF, I have hereunto set my
15     hand and affixed my notarial seal this 19th day of
16     December, 2017.
17
18     My Commission expires October 31, 2020.
19
20     _____
21     NOTARY PUBLIC IN AND FOR THE
22     DISTRICT OF COLUMBIA
23
24
25
```

**530**

```
 1            INSTRUCTIONS TO WITNESS
 2
 3       Please read your deposition over carefully
 4    and make any necessary corrections. You should state
 5    the reason in the appropriate space on the errata
 6    sheet for any corrections that are made.
 7       After doing so, please sign the errata sheet
 8    and date it.
 9       You are signing same subject to the changes
10    you have noted on the errata sheet, which will be
11    attached to your deposition.
12       It is imperative that you return the original
13    errata sheet to the deposing attorney within thirty
14    (30) days of receipt of the deposition transcript by
15    you. If you fail to do so, the deposition transcript
16    may be deemed to be accurate and may be used in court.
```

**531**

```
 1                  E R R A T A
 2
 3
 4
 5       I wish to make the following changes,
 6    for the following reasons:
 7
 8    PAGE LINE
 9    ___ ___ CHANGE:_____
10    REASON:_____
11    ___ ___ CHANGE:_____
12    REASON:_____
13    ___ ___ CHANGE:_____
14    REASON:_____
15    ___ ___ CHANGE:_____
16    REASON:_____
17    ___ ___ CHANGE:_____
18    REASON:_____
19    ___ ___ CHANGE:_____
20    REASON:_____
21
22    _____  _____
23    WITNESS' SIGNATURE         DATE
```