1  WILLIAM A. ISAACSON (*Pro hac vice*)
   (wisaacson@bsfllp.com)
2  STACEY K. GRIGSBY (*Pro hac vice*)
   (sgrigsby@bsfllp.com)
3  NICHOLAS A. WIDNELL (*Pro hac vice*)
   (nwidnell@bsfllp.com)
4  BOIES SCHILLER FLEXNER LLP
   1401 New York Avenue, NW
5  Washington, DC 20005
   Telephone: (202) 237-2727; Fax: (202) 237-6131
6
   RICHARD J. POCKER #3568
7  (rpocker@bsfllp.com)
   BOIES SCHILLER FLEXNER LLP
8  300 South Fourth Street, Suite 800
   Las Vegas, NV 89101
9  Telephone: (702) 382-7300; Fax: (702) 382-2755

10 DONALD J. CAMPBELL #1216
   (djc@campbellandwilliams.com)
11 J. COLBY WILLIAMS #5549
   (jcw@campbellandwilliams.com)
12 CAMPBELL & WILLIAMS
   700 South 7th Street
13 Las Vegas, NV 89101
   Telephone: (702) 382-5222; Fax: (702) 382-0540
14
   *Attorneys for Defendant* Zuffa, LLC, d/b/a
15 Ultimate Fighting Championship and UFC

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>Defendant. | Case No.: 2:15-cv-01045-RFB-(PAL)<br><br>**ZUFFA, LLC'S REPLY IN SUPPORT OF MOTION TO EXCLUDE THE TESTIMONY OF DR. ANDREW ZIMBALIST UNDER FED. R. EVID. 702 AND** *DAUBERT*<br><br>**HEARING REQUESTED**<br><br>[REDACTED] |

ZUFFA, LLC'S REPLY ISO MOTION TO EXCLUDE DR. ANDREW ZIMBALIST

# **TABLE OF CONTENTS**

I. Dr. Zimbalist Conducted No Analysis And Used No Standards In His Yardstick Method. ................................................................................................... 1

II. Using Wage Share Does Not Itself Allow Comparisons Across Firms. ............................ 4

III. The Comparator Dr. Zimbalist Claims Is Closest To MMA—Boxing—Is Flawed. .......... 5

IV. Dr. Zimbalist's Reports Do Not Support Dr. Singer's Analysis Or Vice Versa. ................ 8

# **TABLE OF AUTHORITIES**

**CASES**

*CDW LLC v. NETech Corp.*,
  906 F. Supp. 2d 815 (S.D. Ind. 2012) ............................................................................... 5

*Gen. Elec. Co. v. Joiner*
  522 U.S. 136 (1997) ........................................................................................................... 3

*Gray v. United States*
  2007 WL 4644736 (S.D. Cal. Mar. 12, 2007) .................................................................. 6

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
  125 F.3d 1195 (9th Cir. 1997) ........................................................................................... 2

*In re ConAgra Foods, Inc.*
  302 F.R.D. 537 (C.D. Cal. 2014) ...................................................................................... 6

*Tawfilis v. Allergan, Inc.*
  2017 WL 3084275 (C.D. Cal June 26, 2017) .................................................................. 2

*Thermotek, Inc. v. Orthoflex, Inc.*
  2016 WL 4678888 (N.D. Tex. Sept. 7, 2016) .................................................................. 5

In opposition to Defendant Zuffa, LLC's ("Zuffa" or "UFC") motion to exclude the testimony of Dr. Andrew Zimbalist, Plaintiffs recast and transform Dr. Zimbalist's testimony in an effort to bring it within the scope of admissibility. But the appropriate focus is on Dr. Zimbalist's work, not Plaintiffs' creative interpretation of that work. Dr. Zimbalist's testimony remains junk science that must be excluded.

I.   Dr. Zimbalist Conducted No Analysis And Used No Standards In His Yardstick Method.

In its opening motion, Zuffa showed that Dr. Zimbalist admitted that he did not apply any known standards for applying a yardstick method. Mot. 5-9. Dr. Zimbalist even admitted that he did not know of the existence of such standards. Mot. 5. In the absence of knowing any standards for his work, Dr. Zimbalist explained that his yardstick was to use comparators as similar as possible from those he could find in the field of sports with which he was familiar. Mot. 4-5. Zuffa showed that standards for a yardstick method do exist and can be used in "limited situations," they are not the standards applied by Dr. Zimbalist, and thus his work must be rejected based on the accepted methods. Mot. 6-7 (citing Ex. 3,[1] Hovenkamp, *Federal Antitrust Policy*).

Plaintiffs dispute the appropriate standard for the yardstick method. According to Plaintiffs, the standard that Dr. Zimbalist created for this case—that the yardstick need only be as similar as possible, allowing for any level of dissimilarity—is the correct one. They describe as "impracticable" the standard ("comparable in all important respects," Mot. 7 (citing Ex. 7, Areeda & Hovenkamp, *Antitrust Law*)) described in the countless cases and antitrust treatises identified in Zuffa's motion. Pls. Opp. 52. As a threshold matter, Plaintiffs' argument misses the point. Dr. Zimbalist as the purported expert witness must use an accepted, tested, and reliable method and apply it reliably, and Dr. Zimbalist admitted that he was completely unfamiliar with any standards for applying the yardstick method and did not use any known standards. Mot. 5-6. Dr. Zimbalist cannot have reliably applied the appropriate standard if he did not know that standard.

---

[1] All exhibits cited herein are to the Widnell Declaration submitted in connection with Zuffa's opening *Daubert* motion unless otherwise stated.

Plaintiffs' primary dispute is whether a yardstick must be comparable in all respects, or something less than that. Pls. Opp. 52. As the numerous treatises and cases cited in Zuffa's motion make clear, "one must identify a firm that is truly comparable in order for the inferences drawn to be reliable rather than speculative." Mot. 7 (citing Ex. 7, Areeda & Hovenkamp, *Antitrust Law*). "Under the yardstick approach the plaintiff attempts to identify a market or firm similar to the plaintiff in all respects but for the impact of the antitrust violation." Mot. 6 (citing Ex. 3, Hovenkamp, *Federal Antitrust Policy*). And "If an appropriate yardstick is available, it is important to take into account any differences in costs and the extent of competition between the yardstick market and the market at issue in the but-for world." Mot. 7 (citing Ex. 6, Rubinfeld, *Research Handbook on the Economics of Antitrust Law*). Dr. Zimbalist does not even pretend to meet these standards.

Plaintiffs' reliance on *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1222 (9th Cir. 1997) is not to the contrary. The issue in *Image Tech* was whether there was sufficient evidence to overturn a jury verdict, not whether the expert's analysis should be excluded pursuant to FRE 702 or *Daubert*. Plaintiffs' citation to *Tawfilis v. Allergan, Inc.*, 2017 WL 3084275 (C.D. Cal June 26, 2017) is not only selectively quoted, but in fact quotes the very treatise (*Antitrust Law*) identified in Zuffa's motion as describing the appropriate standard. Plaintiffs quote *Tawfilis* as follows: "the yardstick market [should] be *as comparable as possible*" (emphasis in Plaintiffs' opposition). Pls. Opp. 52. The actual quote in *Tawfilis*: "[i]t is also necessary that the yardstick market be as comparable as possible in all respects." *Tawfilis* at *6. Plaintiffs cite no authority supporting Dr. Zimbalist's newly-created standard or refuting the standards Zuffa identified as repeatedly used by economists and courts for the yardstick method.

According to Plaintiffs, Dr. Zimbalist properly applied his modified yardstick method because each of his comparators "produce[] a similar product," have "similar business models" and "similar revenue sources," and all "use athletes as their primary input" and "share other inputs." Pls. Opp. 53. As Zuffa explained in its motion, Dr. Zimbalist does not actually know if any of these assertions by Plaintiffs' counsel are true, because he conducted no empirical analysis to determine their veracity. Mot. § I.D. Plaintiffs do not and cannot identify any part of Dr.

1    Zimbalist's two expert reports or two depositions in which he empirically analyzes product
2    markets, business models, revenue sources, or inputs.  Dr. Zimbalist has neither analyzed these
3    aspects of the comparators, nor compared them to Zuffa to determine if they are the same or
4    similar.  Mot. 10 (citing Ex. 2 at 157:10-17).  Nor has he considered any of the other factors that
5    must be assessed using the yardstick method, including (for example) demand conditions or
6    whether the comparators stand in the same relative position in their markets.  Mot. 6-7.

   Contrary to Plaintiffs' assertions, the reliability of the yardstick method is an issue of
admissibility, not weight (Pls. Opp. 56), as evidenced by the myriad courts which have excluded
yardstick analyses under FRE 702 and *Daubert*.  Mot. 13-14 and n.9.  Plaintiffs appear to believe
that because the UFC and the comparators are sports, their businesses must be the same, and
because Dr. Zimbalist is a sports economist, he can offer this opinion without support.  This is the
hallmark opinion reliant entirely on "the *ipse dixit* of the expert" that must be excluded.  *Gen.
Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

███████████████████████████████████████████
██████████████████████████ Zuffa has not done damage estimates, including for
antitrust cases, using a yardstick method.  █████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████
█████████████████ [2]

   Plaintiffs ignore the many differences identified by Prof. Blair between MMA and the
comparators, Mot. § 1.D, and respond to only one of those obvious differences: that the four
league sport comparators are unionized and Zuffa would not be unionized in Dr. Zimbalist's but-

---

[2] ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████

3
ZUFFA, LLC'S REPLY ISO MOTION TO EXCLUDE DR. ANDREW ZIMBALIST

for world. Prof. Blair observed that MMA is different than Dr. Zimbalist's comparators for many reasons, including because they offer different products, have different demand conditions and different business models, and the leagues have player drafts, salary minimums, salary caps, luxury taxes, and restricted free agency, among other differences. Ex. 8 ¶¶ 63-68. According to Plaintiffs, unionization is irrelevant because even in unionized sports, players negotiate for their individual salaries. Pls. Opp. 61. Neither Dr. Zimbalist nor Plaintiffs are measuring damages in this case using individual salaries—they measure damages by wage share. In the four league comparators, the unions negotiate for a defined wage share. This would not happen in the but-for world where Zuffa did not engage in the challenged conduct. In that but-for world (as in the real world), Zuffa's wage share would be determined in part by the sum of hundreds of negotiations with individual athletes. It is highly speculative for Dr. Zimbalist to assume without foundation that these hundreds of negotiations would add up to a similar wage share as the contractually defined wage shares collectively bargained by the unions in the comparator sports.[3] Mot. 12.

II. Using Wage Share Does Not Itself Allow Comparisons Across Firms.

Plaintiffs offer wage share as a panacea for the shortcomings of Dr. Zimbalist's yardstick analysis. Plaintiffs claim that "Dr. Zimbalist controls for relative differences in quality and popularity by using Wage Share" and that "Dr. Zimbalist controls for many of the variables Zuffa identifies, such as location, facility condition, and demand for the sport, by comparing the ratio of compensation to revenue." Pls. Opp. 57-58. Plaintiffs cite no authority for the proposition that the metric used to measure damages—wage share or otherwise—can account for the differences between firms in a yardstick analysis. This would turn the yardstick method on its head. Even accepting that wage share is an appropriate metric (it is not), the yardstick method requires a determination that the comparator firms are similar in all important respects *before* comparing

---

[3] As with many of the so-called "admissions" identified by Plaintiffs, Prof. Blair did not admit (as Plaintiffs claim) that MMA athletes generate a similar amount of revenue than athletes in Dr. Zimbalist's comparators. Pls. Opp. 51 n.97, 57 n.105. Prof. Blair testified merely that "I haven't thought about that specifically, so as I sit here today, I don't really have an informed response for you." Cramer Decl. Ex. 59, 315:1-8. This is unsurprising. As Prof. Blair explained in his report and Dr. Zimbalist admitted, there is no way to measure or prove this assumption. Mot. § II.

1  their wage share.  Plaintiffs' approach is no different than using profit margin instead of actual
2  profits to compare two businesses that are substantially different, an approach that courts have
3  rejected.  *Thermotek, Inc. v. Orthoflex, Inc.*, 2016 WL 4678888, at *10, *12 (N.D. Tex. Sept. 7,
4  2016), *aff'd sub nom.* 875 F.3d 765 (5th Cir. 2017) (excluding yardstick analysis using profit
5  margin as relevant metric where companies were not comparable).

6        If wage share itself could explain the differences between firms, then any two firms could
7  be compared using the yardstick method as long as they had employees and revenue.  This would
8  be true even if, for example, the two firms had vastly different non-wage costs, meaning a given
9  wage share for one company would bankrupt the comparator firm.  This is clearly not what is
10 contemplated by the yardstick method.  The yardstick method is rigorous enough that courts have
11 rejected expert testimony comparing offices *in the same company*.  *CDW LLC v. NETech Corp.*,
12 906 F. Supp. 2d 815, 824 (S.D. Ind. 2012).  It is therefore not plausible that using wage share
13 alone can account for differences between firms—particularly the obvious and glaring differences
14 between Zuffa and Dr. Zimbalist's comparators.

15     III.    <u>The Comparator Dr. Zimbalist Claims Is Closest To MMA—Boxing—Is Flawed.</u>

16       Dr. Zimbalist identifies boxing as the lone comparator in his yardstick analysis that has
17 even a facial similarity to the product offered by Zuffa.  Ex. 1 ¶ 89.  And even Dr. Zimbalist
18 admits that given the inadequacies of the boxing data he relies on, he would not reach his
19 damages opinions based on boxing alone.  Mot. 22 (citing Ex. 2 at 153:1-16).  As explained in
20 Zuffa's motion, Dr. Zimbalist's boxing analysis is premised on faulty data.  Mot. § III.  Dr.
21 Zimbalist uses a single boxing promoter (Golden Boy) to measure the entire boxing industry.  Dr.
22 Zimbalist uses Golden Boy data derived from publicly available *excerpts* of the Expert Report of
23 Gene Deetz—data which Dr. Zimbalist did not independently verify.  *Id.*  Plaintiffs claim in their
24 opposition that Dr. Zimbalist did verify the Deetz data, but Dr. Zimbalist admitted in deposition
25 testimony that he "didn't take any steps to independently verify the data" from Deetz.  Mot. 21
26 (citing Ex. 9 at 152:20-24).  Plaintiffs say that he did review other "data," but those data were
27 backup tables also created by Deetz, which are among the data Dr. Zimbalist did not
28 independently verify.  Dr. Zimbalist has not reviewed the Bates-numbered documents cited in the

Deetz report as the data sources for Deetz's analysis. *Id.* Nor has Dr. Zimbalist spoken to Deetz to determine how Deetz made the calculations reflected in any of his charts, or identified the purposes behind the Deetz report. *Id.* ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

Dr. Zimbalist did not do the type of independent verification that is required to ensure his analysis is reliable. Mot. 20-21 (citing cases); *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 556 (C.D. Cal. 2014) (excluding testimony where expert relied on third party data without "independent evaluation of that evidence"). Plaintiffs cite no evidence or authority that excerpts of an expert report which happen to be available on a public docket are the type of evidence normally relied on by economists to calculate antitrust damages.[4]

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

But this "egregious discrepancy" proves the unreliability of Dr. Zimbalist's boxing analysis. It is not clear why the discrepancy exists, and Plaintiffs made no effort in discovery to clarify it. For example, their expert could have spoken to Deetz ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, as they did for other boxing promoters (Top Rank, DiBella Entertainment, and Warriors Boxing). ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬ This speculation renders Dr. Zimbalist's boxing analysis unreliable, which in turn renders Dr. Zimbalist's average yardstick, and thus his damages estimate, unreliable.

---

[4] Plaintiffs' reliance on *Gray v. United States*, 2007 WL 4644736 (S.D. Cal. Mar. 12, 2007) and cases cited therein is inapposite. In that case, the Court held that a vocational expert's report which included some information gathered from a recruiter would not be excluded because, among other reasons, (1) other vocational experts, including the moving party's own expert in that case, regularly used this type of recruiter information; (2) the vocational expert herself had contacted recruiters for purposes of generating the report; and (3) the expert had relied on a litany of other data sources in the report. *Id.* at *6-8. In this case, Dr. Zimbalist relies entirely on the Deetz data and has made no showing that economists regularly rely on such hearsay data in their analysis.

1 ████████████████████████████████████████

2 ████████████████████████████████████████

3 ████████████████████████████████████████

differs significantly from Dr. Zimbalist's choice to pull unverified numbers from a chart of a redacted expert report. Ex. 8 ¶ 70. Second, even assuming Prof. Blair's numbers were incomplete, that fact would not make Dr. Zimbalist's data reliable or his opinions admissible. Mot. § III. If Plaintiffs thought that Prof. Blair's data was unreliable, they had the opportunity to seek to exclude his testimony through a *Daubert* motion, but chose not to do so.

Plaintiffs claim that Dr. Zimbalist's boxing analysis is based not only on the Deetz Golden Boy data, but also on unverified anecdotal evidence from two other boxing promoters. Pls. Opp. 63. This is incorrect. Dr. Zimbalist's actual damages estimate is based only the Deetz data. Ex. 1 ¶¶ 111-12. Dr. Zimbalist's additional "data" points are not actually used for his damages calculation. Even if they were, these "data" points are unreliable according to Plaintiffs' own logic. Dr. Zimbalist cannot rely on unverified anecdotal information from other boxing promoters to support his analysis.

Dr. Zimbalist's boxing analysis is also flawed because he cannot show that the difference between boxing and Zuffa (to the extent it exists) is explained by the Zuffa contractual provisions Plaintiffs challenge. Even if one were to accept that boxing has a higher wage share than Zuffa (which Dr. Zimbalist has not reliably shown), that difference could not possibly be explained by Zuffa's contracts because boxing has nearly identical contracts. ████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████[5] Dr. Zimbalist

---

[5] Ex. 15 to Widnell Decl. ISO Reply ("Widnell Reply Decl."), Top Rank Inc. Promotional Rights Agreement, at § 1 (exclusivity clause, ancillary rights clause), § 2(a) (five year term); § 2(b)-(c) (cut clauses); § 5(a) (right to match); § 6 (30-month champion's clause); § 11 (tolling provisions).

cannot plausibly argue that Zuffa's contracts caused its wage share to be lower than boxing when boxing has the same contracts.[6]  Mot. 13.

    IV.    <u>Dr. Zimbalist's Reports Do Not Support Dr. Singer's Analysis Or Vice Versa.</u>

Plaintiffs claim that Dr. Zimbalist "opines that Zuffa's Scheme is anticompetitive," Pls. Opp. 50, but Dr. Zimbalist specifically disclaimed such an opinion in his deposition.  Ex. 2 at 43:24-44:9.  That is all that is required to reject Plaintiffs' counsel argument attempting to link Dr. Zimbalist's report to conclusions about anticompetitive conduct.  Plaintiffs also claim that Dr. Zimbalist "confirms the reasonableness of Dr. Singer's analysis of Bout Class damages."  Pls. Opp. 50.  Dr. Zimbalist did not identify this as within the scope of his assignment, Ex. 1 ¶ 4, and Dr. Singer's name is not referenced a single time in either of Dr. Zimbalist's reports.

Plaintiffs then allege that Dr. Zimbalist need not "show that the Scheme caused injury" because "Dr. Singer addresses causation and fact of damage" and Dr. Zimbalist "calculates the amount of damages" only.  Pls. Opp. 60 (emphasis omitted); *see also* Ex. 2 at 43:24-25 (stating only that he is "not doing a liability report").  Dr. Singer's analysis cannot support Dr. Zimbalist's damages estimate.  The two experts identify different conduct alleged to be anticompetitive.[7] Nowhere does Dr. Zimbalist claim that the damages he measures were caused by the conduct Dr. Singer identified as anticompetitive.  Rather, Dr. Zimbalist must connect his damages estimate to the challenged conduct, which he failed to do.  Mot. § I.F.

---

[6] Plaintiffs appear to suggest that the Ali Act bars any boxing contract lasting more than 12 months.  Pls. Opp. 56 n.103.  This is not accurate.  The Ali Act bars any contract with a "coercive provision" lasting more than 12 months, and defines a "coercive provision" as "a contract provision that grants any rights between a boxer and a promoter, or between promoters with respect to a boxer, if the boxer is required to grant such rights, or a boxer's promoter is required to grant such rights with respect to a boxer to another promoter, as a condition precedent to the boxer's participation in a professional boxing match against another boxer who is under contract to the promoter."  2000 Enacted H.R. 1832, 106 Enacted H.R. 1832, 114 Stat. 321, §10(a)(1)(B). The Act does not address any of the Zuffa contractual provisions Plaintiffs challenge in this case, nor limit contracts to less than 12 months ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

[7] Dr. Singer identifies the number of athletes signed to exclusive contracts with a 30-month or longer duration as causing damages, whereas Dr. Zimbalist claims that any conduct which reduced the amount of competition in MMA would cause the damages he estimates.  Mot. 17.

8

Dated:  May 7, 2018                              BOIES SCHILLER FLEXNER LLP


By: /s/ *Nicholas A. Widnell*
Nicholas A. Widnell (*Pro Hac Vice*)
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
Tel: (202) 237-2727
Fax: (202) 237-6131
Email: nwidnell@bsfllp.com

*Attorney for Defendant* Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that service of the foregoing **Zuffa, LLC's Reply In Support Of Motion to Exclude The Testimony of Dr. Andrew Zimbalist** was served to opposing counsel on May 7, 2018 via email and the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

/s/ *Roderick Crawford*

An employee of Boies Schiller Flexner LLP