# Exhibit 10

Antitrust Suit_ Fighters File For Class Certification, UFC Wants 'Junk Science' Excluded

**Forbes** / SportsMoney / #SportsMoney

FEB 17, 2018 @ 08:44 AM        8,703                                            2 Free Issues of Forbes

# Antitrust Suit: Fighters File For Class Certification, UFC Wants 'Junk Science' Excluded



**Paul Gift,** CONTRIBUTOR
*I write about MMA biz, analytics, and officiating* **FULL BIO** ⌄
Opinions expressed by Forbes Contributors are their own.

The UFC antitrust lawsuit is heating up again. Last year was largely about discovery disputes, depositions, and expert reports – relatively dull from a newsworthiness perspective. 2018 will see the case transition into the next key phases of class certification and summary judgment, where the respective arguments, strengths and weaknesses of each side should start to achieve clarification.



*Plaintiff fighters and the UFC moved MMA's antitrust case into its next phase on Friday with four court filings. (Photo by Jeff* [+]

As a class-action, antitrust lawsuit filed against the UFC by now-former fighters, the Bout Class of fighters who competed in qualifying bouts and Identity Class of those whose identities were allegedly expropriated must be certified by the Court or the case would likely grind to a halt. For certification, Plaintiffs need to show there are enough similarities among class members to justify joining them together. Their initial

certification motion was filed yesterday evening.

On the same day, the UFC submitted three motions to exclude the testimony of Plaintiffs' expert witnesses Andrew Zimbalist, Hal Singer and Guy Davis. Including exhibits, the filings contain over 1,500 pages. So here's a summary of the arguments, nuggets of information gleaned and what it all might mean for the case.

**Class Certification**

Plaintiffs claim the UFC used an anticompetitive scheme to establish and maintain market dominance, resulting in substantially lower fighter compensation than would have occurred in a competitive market. In a heavily redacted class certification filing, they argued the scheme stems from three types of conduct: Long-term exclusive contracts with fighters, coercing fighters to re-sign, and acquiring and shutting down other MMA promoters.

A prior focus on the overall effect of exclusive contracts with fighters, venues, sponsors and television networks, also known as monopoly broth, didn't seem to appear. It's unclear if it will return later or if the focus has shifted to fighter contracts as the venue, sponsor and television contract claims were likely weak.

One problem Plaintiffs were going to have with fighter contracts is the duration. If exclusive contracts are short term, it's difficult to show they prevented rival MMA promoters from having access to the critical fighter services needed to compete. In yesterday's filing, Plaintiffs argued UFC exclusive contracts are "effectively perpetual" and cited control over fighter careers, control over marquee fighters, and the right to match as primary reasons why.

Another danger area for Plaintiffs was consumer harm. Fighters are inputs into the MMA industry and, in order to prevail in their antitrust case, Plaintiffs likely need to show that consumers in the output market for MMA events were harmed by the UFC's alleged conduct. If the UFC competes in entertainment for *things we might do with our time on a Saturday night*, demonstrating consumer harm through a monopolistic increase in price is a heavy task.

Plaintiffs instead appear to be going the quality reduction route, noting that two of their expert witnesses, Singer and Zimbalist, concluded "...increasing MMA Fighter compensation closer to competitive levels would cause Fighters to better promote themselves and to enhance their training, improving the quality of Fighters and, ultimately, Events."

To help support the claim of a common impact on class members, Singer performed a regression analysis and found that 78% of fighter compensation is explained by "common, objectively measurable variables. Those variables include weight class, rank, gender,

placement on the card, year, country, and venue. So the great majority of Fighter compensation is formulaic and any downward shift in compensation would affect the Bout Class as a whole." Quotes from former UFC matchmaker Joe Silva and current matchmaker Sean Shelby (likely from depositions) were cited in the same part of the document, but fully redacted.

The UFC will surely have a different side of the story when it responds in April, one which began to take shape in its arguments to exclude three Plaintiff experts.

### UFC's Daubert Motions

*Relentless* best describes the UFC's attack on the work of economist Andrew Zimbalist in its motion to have his testimony excluded. Calling it "junk science," the UFC noted that Zimbalist measured purported damages using a legitimate technique known as the yardstick method, but with a "different and previously unknown basis of comparing firms."

The yardstick method compares businesses that are similar in all respects other than the antitrust conduct in question. Zimbalist allegedly compared the UFC's fighter wages as a percentage of event revenues to the average labor share of revenue across five sports: The NBA, NFL, MLB, NHL and boxing. Why the Big Four plus boxing? The UFC argued it's because Zimbalist was "comfortable" with them, and then proceeded to pick apart the foundations of his analysis.

Among many examples, the UFC noted the Big Four league sports have players who are unionized employees, increasing wages and causing Zimbalist's analysis to be "speculative and unreliable." And even though there are "at least twenty" boxing promoters with nationally televised events, the boxing wage percentages came from a 2 ½ year sample of a single promotion (Golden Boy) which I discovered in boxing's Al Haymon antitrust lawsuit 13 months ago. The UFC claims expert analyses from other litigation should not be permitted without independent verification of the underlying work, which Zimbalist allegedly did not do.

Daubert motions are sometimes used to prime a judge for the arguments to come against an expert's work, knowing the motion itself will likely fail. But in this case, it wouldn't be surprising if Zimbalist's work is actually tossed out. Its foundation appears shaky at best and the UFC claims his work has been excluded in another case for a similar reason: Using "his own version" of a test.

Zimbalist's final calculation of damages was redacted and is still unknown at this time.

While Zimbalist's use of an averaged Big Four plus boxing yardstick is tenuous at best, the UFC's Daubert motion against Singer reveals where the true expert battle will likely take place.

A theme throughout the filings was conflict over the use of "wage share" versus wage level. Wage share is total compensation as a percentage of relevant revenues. Wage levels are the wages themselves. As UFC revenues have taken off since 2006, one can infer that its wage shares have declined. Singer appears to use this along with a measure called "foreclosure share" to determine that higher foreclosure rates lead to lower wage shares, and estimates damages accordingly to the tune of $811.2 million to $1.6 billion. The UFC's expert purportedly ran the exact same model using wage levels – which have been increasing over time – and found no damages at all.

A term bandied about in this argument is Marginal Revenue Product (MRP). It's what workers should earn in a competitive market. But it's also not easily estimated, giving each side leeway to develop their own process for approximating fighter wages relative to MRP. Then they argue about reputable peer-reviewed research and what's been done in prior antitrust cases. The UFC claims, if allowed, Singer's use of wage share would be the first known case "used to measure an alleged anticompetitive effect, antitrust injury or damages."

Given how the choice of a single metric can potentially change damages from $1.6 billion to zero, the judge or jury's final determination on the wage share issue could be critical.

The UFC also attacked Singer's definition of foreclosure as 30-month bout contracts or longer (with a Champion's Clause), the input market for fighter services, calculation of market shares and "unwarranted conclusions" regarding alleged decreases in the number of UFC events on PPV, an increase in PPV revenue, and how Zuffa enforced its sponsorship rules with athletes.

A final expert the UFC wants excluded, Guy Davis, is a CPA who purportedly found "that Zuffa could have increased athlete compensation by as much as $706 million over the course of the Class Period while remaining a 'financially healthy' company." The UFC says Davis' analysis is not relevant to whether it violated the antitrust laws and would "mislead" a jury.

Class-action antitrust cases can be extremely complex, and economic expert witness testimony is absolutely critical to a party's success. Yesterday's filings provided an initial glimpse into the new, focused arguments of each side after exchanging millions of documents in discovery and conducting depositions.

Plaintiffs' positions on certain important matters have been clarified. Zimbalist's standing in the case is on shaky ground as the UFC argued, "A 'scientific' method without generally accepted standards is the hallmark of what Daubert said must be excluded."

Wage share or wage levels? It's a fight we'll be hearing more on in the months to come. How were market and foreclosure shares weighted? How were regressions setup and run? It's the academic detail and support that could play an important role in the outcome of

this case. And the two sides certainly have strong differences of opinion.

A request for comment from the UFC was not returned as of this writing. Plaintiff attorney Eric Cramer provided the following statement: "The lengthy fact and expert discovery process has nearly come to a close. As our motion for class certification reflects, we believe we have amassed a powerful case, which would be most efficiently and fairly tried as a class action. We look forward to doing so before a jury in Las Vegas."

*Paul is an associate professor of economics at Pepperdine Univ. and an ABC-certified referee and judge for the California Amateur MMA Organization (CAMO). Follow him on Twitter @MMAanalytics.*