# Exhibit 16

UFC antitrust lawsuit_ Inside Bellator's contracts and the effect on plaintiff fighters - Bloody Elbow



Bloody Elbow, for MMA and UFC news

MMA EDITORIAL

51

# UFC antitrust lawsuit: Inside Bellator's contracts and the effect on plaintiff fighters

*Bloody Elbow's resident economist and former antitrust practitioner shares Eddie Alvarez's Bellator and UFC contracts, and takes readers through some comparisons plaintiffs and the defense will likely make in the antitrust lawsuit.*

By Paul Gift | @MMAanalytics | Mar 4, 2015, 12:00pm EST



Jayne Kamin-Oncea-USA TODAY Sports

Many media and fight fans know that **Eddie Alvarez's** 2012 UFC contract is in the public domain as part of Bellator's lawsuit against him in January 2013. Bellator's contractual match is effectively public as well, since its attorney admitted in an e-mail, "...we copied the Zuffa contract..." There are even court filings of a draft contract with "UFC" and "Zuffa"

simply crossed out at every occurrence and replaced by "Bellator."

Bellator's initial complaint contained Alvarez's complete UFC contract and, for obvious reasons, only limited excerpts of his Bellator contract. But only a few short weeks later Bellator needed to prevent Alvarez from obtaining an injunction which would free him to fight for the UFC that coming April. Bellator filed a brief and, low and behold, one of the appendices contained Alvarez's complete 2008 contract.

Why does this matter? First, to my knowledge it's the first time a complete Bellator fighter contract has been made public. It didn't get picked up by the media a couple years ago like Alvarez's UFC contract, I'm guessing, because the filing was somewhat under the radar and not central to the case.

Second, the UFC is presently being sued by current and former fighters for anticompetitive practices via "**an illegal scheme** to eliminate competition from would-be rival MMA Promoters by systematically preventing them from gaining access to resources critical to successful MMA Promotions, including by imposing extreme restrictions on UFC Fighters' ability to fight for would-be rivals during and after their tenure with the UFC." Put in English, they claim strict UFC contract terms keep fighters away from rival MMA promotions, thereby foreclosing other promoters and enabling the UFC to maintain and enhance its monopoly/monopsony power.

As someone who's provided expert witness support for antitrust cases before (including what was at the time the largest antitrust case in U.S. history), one of the things we often see in these situations is the two sides checking if other competitors have undertaken similar actions to the ones that are allegedly anticompetitive.

If competitors consistently use similar strategies, the defense will argue this is evidence the actions in question aren't monopolistic, but competitive. If they don't, plaintiffs will argue this supports the notion the actions were anticompetitive.

Another defense tactic is to look back at what was being done at times when most would agree the market was competitive. If all players were using allegedly anticompetitive tactics when the market was competitive, there must be strong legitimate business reasons for the tactics beyond just monopolization.

In the present UFC antitrust lawsuit, the plaintiff fighters almost as much as admitted the

**MMA output and input markets were competitive in 2006** in their complaint. The UFC owns the contracts of Pride, Strikeforce, EliteXC and others from around that time and you can be sure its legal team (and eventually the fighters' legal team through discovery) will review them to gather evidence on the contractual terminology used by competing promotions.

If we try to walk into the UFC's corporate offices to examine the contracts ourselves, we'll get **tased bro** faster than **Ronda Rousey** can rip off **Cat Zingano's** arm. Thanks to Eddie Alvarez, we at least have one real contract from Bellator and the UFC to compare. It would be nice to have numerous contracts from 2006 and earlier as well as from the 2010-2014 class period, but that's not the world we live in. We'll scour through both contracts to see if the UFC was the only MMA promotion using the contractual language to which the fighters object or if competitors employed the same or similar language. It's a good bet this same exercise will be done in the future by both sides.

We won't touch on pay issues as **MMA Payout covered pay in the standard Bellator contract in 2009**. But it should be noted Alvarez had two special addenda in his contract relating to pay: a $150,000 signing bonus and PPV points of $1 over 80,000 buys and $2 over 150,000.

If you'd like to follow along yourself or search for anything I might miss, here are PDFs of Alvarez's **2008 Bellator contract** and **2012 UFC contract**. Both were obtained from PACER. If you find any meaningful differences or similarities not mentioned below, share them in the comments.

For a refresher on the key elements of the fighters' case, see the **complaint itself**, my **detailed dissection** of the complaint or the **UFC's motion to dismiss**. In what follows, I'm simply ticking down the items listed in page 35-37 of the fighters' complaint.

### Exclusivity Clause

The plaintiffs take issue with the restrictive provision of exclusivity "which binds UFC Fighters into a restricted relationship with the UFC and prohibits them from appearing in bouts televised or organized by actual or potential rival promotions." Here are the UFC and Bellator clauses:

UFC

> *The Fighter hereby grants to ZUFFA the exclusive unrestricted worldwide right to secure, promote, arrange and present any and all mixed martial arts contests to be engaged in by Fighter during the Term and any Extension Term...*
>
> *During the Term, ZUFFA shall have the exclusive right to promote all of Fighter's bouts and Fighter shall not participate in or render his services as a professional fighter or in any other capacity to any other mixed martial art, martial art, boxing, professional wrestling, or any other fighting competition or exhibition, except as otherwise expressly permitted by this Agreement.*

Bellator

> *...FIGHTER hereby grants to PROMOTER the exclusive unrestricted worldwide rights to secure, promote, arrange, present, coordinate, create and produce all MMA, martial arts and unarmed combat contests to be engaged in by FIGHTER during the term of this Agreement and any extensions thereof.*
>
> *During the term, PROMOTER shall have the exclusive right to promote all of FIGHTER's bouts and Fighter shall not participate in or render his services as a professional fighter or in any other capacity to any MMA, boxing, martial art, professional wrestling, or any other fighter competition or exhibition, except as otherwise expressly permitted by PROMOTER.*

These clauses are almost verbatim identical. Initially, it seemed Bellator's could be more restrictive as they forbid fighters from martial arts competitions in the first paragraph, but the UFC has the same restriction, just moved to the second paragraph.

Exclusivity would appear to be a wash between the UFC and Bellator, except Alvarez negotiated a contractual addendum for the ability to participate in three bouts outside of the agreement, two with Dream and one with **Extreme Challenge**. The exception was limited in that the Extreme Challenge bout had to occur within three months and both Dream bouts were subject to Bellator's pre-approval which could be withheld at Bellator's discretion. This led to bouts with **Shinya Aoki** and **Katsunori Kikuno** while Alvarez was under contract with Bellator.

So we're left with exclusivity being a wash in the *standard* contract language of the UFC and Bellator. The size and scope of any exceptions would be examined in any thorough

analysis by either side.

Another point the UFC might raise is that competing MMA promotions don't only sign exclusives with fighters but also with other independent contractors such as television producers. This is from the Bellator contract of Eric Talent in *Bellator Sport Worldwide v. Eric Talent (2012)*.

> (a) Title: Senior Coordinating Producer
>
> (b) Exclusivity: Eric shall be permitted to work for third parties during all periods of service defined herein, except that Eric shall be exclusive to Bellator for "combat sports."

## Champion's Clause

The fighters claim the Champion's clause "allows the UFC to extend a UFC Fighter's contract for as long as the athlete is a 'champion' in his or her weight class, preventing the Fighter from financially benefiting from his or her 'championship' status by soliciting competing bids from other MMA Promotions even after the end of his or her original UFC contract term." Here are the UFC and Bellator clauses:

UFC

> *If, at the expiration of the Term, Fighter is then a UFC champion, the Term shall automatically be extended for the period commencing on the Termination Date and ending on the later of (i) one (1) year from the Termination Date; or (ii) the date on which Fighter has participated in three (3) bouts promoted by ZUFFA, regardless of weight class or title...*

Bellator

> *If, at any time during the Term, FIGHTER is declared the champion of his weight class, a Tournament winner, or a Tournament runner-up, the Term shall be automatically extended for a period commencing on the Termination Date and ending on the earlier of (i) eighteen (18) months from the Termination Date, or (ii) the date in which FIGHTER has participated in three (3) bouts promoted by PROMOTER following the Termination Date...*

Bloody Elbow's John Nash reported last year that at some point Bellator also added an

**option clause** allowing them to tack on an additional bout if a fighter is champion at the end of his contract. Option bouts for champions could potentially be added five or more times.

We're left with a UFC extension being triggered for one year or three fights upon being a champion at the end of one's contract. A Bellator extension was triggered for eighteen months or three fights for being a champion, tournament winner or tournament runner-up at *any time during one's contract*. Bellator seems to be more restrictive than the UFC, and this is the type of evidence wouldn't do the plaintiffs any favors in their lawsuit. But we could also be in for a legal word-parsing battle here about whether certain extensions can be triggered only once or multiple times.

**Right to Match**

Plaintiffs argue Right to Match clauses "...grant the UFC the option to match the financial terms and conditions of any offer made to a UFC Fighter for an MMA bout even after the Fighter's contract has expired." They go on to claim any offer would be artificially suppressed since fighters don't own their ancillary rights, but ancillary rights are a separate issue. Here are the UFC and Bellator Right to Match clauses:

UFC

> *During the one (1) year period after conclusion of the Term for any reason whatsoever*
>
> *(the "Matching Period"), ZUFFA shall have the option to match the financial terms and conditions of any offer made to Fighter for an Other Bout as defined in Section 3.6 of this Agreement...Prior to acceptance of any Offer made during the Matching Period, Fighter shall first deliver to ZUFFA a written notice of all material financial terms and conditions of the offer, including, but not limited to, the identity of the promotional entity making the offer. Such notice shall constitute an exclusive, irrevocable offer (the "Fighter Offer") to contract with ZUFFA on the same financial terms and conditions.*

Bellator

> *Upon expiration of the Term, FIGHTER agrees to negotiate exclusively and in good faith with PROMOTER regarding the extension or renewal of the Term for a period of ninety (90) days following the expiration of the Term.*

> *In the event no such agreement is reached between FIGHTER and PROMOTER during the aforementioned ninety (90) day period, FIGHTER may negotiate with other promotional entities, subject to PROMOTER's right to match the terms of any agreement offered to FIGHTER by such other promotional entity. PROMOTER's right to match shall begin at the end of the ninety (90) day period and last for one (1) year.*
>
> *FIGHTER shall provide PROMOTER with prompt written notice of any such offer, containing full details in regards thereof. Such notice shall constitute an exclusive, irrevocable offer to contract with PROMOTER on the same terms and conditions.*

What do you think? They look pretty similar except Bellator's are again more restrictive. Both promotions have one-year matching periods but Bellator first has 90 days of exclusive negotiation. Remember, these are sample contracts so it's possible the UFC typically includes an exclusive negotiation period but chose not to do so this time.

Things that could hurt the plaintiffs even more are documented statements under oath from other fight promoters. The Bellator/Alvarez case alone produced two statements on the legitimate business justifications of rights to match.

**Bjorn Rebney** (CEO of Bellator):

> *Provisions of this nature are very common in the field of Combat Sports. Promoters at the level of Bellator (and for that matter, its competitor, Zuffa) often spend a great deal of money promoting fighters and in building their careers. MMA Promoters not only promote events; they promote fighters. As noted, and only as an example, Mr. Alvarez has been paid approximately Eight Hundred Thirty-Five Thousand Dollars ($835,000.00) by Bellator, and the public relations capital Mr. Alvarez has received from his time with Bellator has both a monetary component (which I cannot at this time estimate but is very significant) and a reputational component which is very important from a promotional perspective.*
>
> *Clauses in promotional agreements such as [right of first refusal] are a common compromise between the option of forging a longer promotional contract with a fighter and executing a shorter contract that allows fighters to simply leave at the end of specified term to the detriment of the promoters who effectively built their careers.*

Kathryn Duva (CEO of Main Events Promotions):

> *"Right to match" clauses are standard in the contracts of fight promoters. Promoters, often expend a great deal of money to develop fighters' careers and the purpose of a "right to match" clause is to protect the promoter from losing the services of the fighter it has expended resources to develop if material terms are matched.*

**Ancilliary Rights Clause**

The plaintiffs claim Zuffa's Ancillary Rights Clause "grants the UFC exclusive and perpetual worldwide personality and Identity rights not only of the UFC Fighter, but of 'all persons associated with' the athlete in any medium...and for all other commercial purposes, thus preventing MMA Fighters from financially benefiting from the reputations that they built during their MMA careers even after death, and locking UFC Fighters out of revenues generated by the exploitation of their Identities, including after the term of the contract."

This section's a bit more difficult as ancillary rights clauses are long and convoluted. There eventually will be legal wrangling as to their meaning. I'll try to summarize as best I can without being overwhelming. Those who are particularly interested should read the contracts themselves.

UFC

> *Fighter hereby grants to ZUFFA the exclusive worldwide right to use, display...the name, sobriquet, image, likeness...material of Fighter and all persons associated with Fighter, in any medium in connection with...the UFC brand and each Bout...*
>
> *The expiration or earlier termination of the Term...or the death or incapacity of the Fighter, shall not affect or terminate the grant of the Ancillary Rights or any of the other general or specific provisions of this Agreement, all of which shall survive any such expiration, termination, Acceleration, death or incapacity.*

Bellator

> *FIGHTER hereby grants to PROMOTER the exclusive unrestricted worldwide rights to the following ancillary rights...which shall include the unrestricted right to fully exploit, use, profit, disseminate...FIGHTER's names, images, likenesses...and shall include all persons associated or affiliated with FIGHTER, including FIGHTER's trainers and seconds.*

> *The expiration of the Term shall not affect or terminate the grant of Ancillary Rights or any of the general or specific provision of this Agreement which shall survive any such expiration or termination...The termination of this Agreement or the expiration of the Term shall not serve to affect or terminate the Ancillary Rights granted under this Agreement, as they shall survive any such termination, expiration or acceleration and this Agreement shall remain in full force and effect with respect thereto.*

I've only pulled a little from each section, trying to focus on the heart of the fighters' allegation above. The wording isn't the same but both promotions appeared to have worldwide exclusivity with rights lasting past expiration of the Term. The UFC also threw in death and incapacity for good measure. This whole section is another area where lawyers will parse words and meaning.

Bellator had two other clauses that may not end up relevant to the case but stand out as markedly different. It had the right to register the fighter "as one or more domain names" and utilize and own them during the term of the contract without restriction, and the right to register a trademark for a fighter's "name, stage name, Identity, or any other feature of FIGHTER..."

**Promotion Clause**

Fighters claim Zuffa "...requires UFC Fighters to attend, cooperate and assist in the promotion of bouts in which they fight and, as required by the UFC, any other bouts, events, broadcasts, press conferences and sale of merchandise, for no additional compensation." Here are the UFC and Bellator clauses:

UFC

> *Fighter shall cooperate and assist in the advertising, publicity, and promotion of (i) the Bouts, (ii) any and all rebroadcast of the Bouts in any media whatsoever, (iii) other UFC bouts, (iv) other UFC events and broadcasts, and (v) the sale of UFC merchandise, including making appearances at a reasonable number of press conferences, interviews and other sponsorship and promotional activities (any of which may be telecast, broadcast, recorded or filmed) at times and places reasonably designated by ZUFFA, without additional compensation therefore.*

Bellator

> *FIGHTER shall cooperate and assist in the advertising, publicity, and promotion of (i) the Bouts and/or Tournaments, (ii) any and all rebroadcast of the Bouts and/or Tournaments in any media whatsoever. (iii) other bouts of PROMOTER, (iv) any other exploitation by PROMOTER resulting from the grant of Promotional Rights and Ancillary Rights.*
>
> *FIGHTER's cooperation and assistance shall include but not be limited to making appearances at such reasonable number of press conferences, interviews, appearances, and other sponsorship and promotional activities...as PROMOTER may designate, without additional compensation therefore.*

In both companies, fighters were expected to cooperate with publicity for no additional compensation (other than travel, hotel and meal expenses). The UFC expected fighters to cooperate with the sale of UFC merchandise but that might also be captured as "any other exploitation by PROMOTER" in Bellator's contract. Overall, the clauses look very similar.

**Retirement Clause**

The fighters claim the Retirement Clause "...gives the UFC the power 'to retain the rights to a retired fighter in perpetuity.'" Here are the UFC and Bellator clauses:

UFC

> *If at any time during the Term, Fighter decides to retire from mixed martial arts or other professional fighting competition or is permanently disabled, then ZUFFA may, at its election, (i) suspend the Term for the period of such retirement or disability; (ii) declare that ZUFFA has satisfied its obligation to promote all future Bouts to be promoted by ZUFFA hereunder, without any compensation due to Fighter therefor; or (iii) elect to provide Fighter with notice of an Acceleration.*

Bellator

> *If at any time during the Term, FIGHTER decides to retire, PROMOTER may, at its election, suspend the Term for the period of such retirement.*

Both promotions could suspend a fighter's contract due to retirement. The UFC could also terminate or accelerate the contract, but with regard to the fighters' stated concern of

retaining rights in perpetuity, both promotions had that ability.

**Tolling Provisions**

The plaintiffs argue Zuffa had the ability to "...extend the term of the UFC Fighter's contract during periods when he or she is injured, retired, or otherwise declines to compete, thus virtually prohibiting even disgruntled athletes from sitting out the term and signing with a would be rival promoter." Now, I'm pretty sure that's exactly the point of such contract terms, but let's see what each promotion did in this regard.

UFC

> *The length of time for ZUFFA to provide Fighter with the minimum number of Bouts...shall be extended for six (6) months or any period of time that Fighter is unable or unwilling to compete, whichever is greater. Such extension shall include, without limitation, any time periods when Fighter is disabled, sick or injured for any reason; incarcerated; suspended or revoked by an Athletic Commission; has his ability to travel restricted by a governmental agency or is otherwise unable, unwilling or refuses to compete or train for a Bout for any reason whatsoever, including, without limitation, not approving of an opponent designated by ZUFFA...*

Bellator

> *The respective lengths of time to provide FIGHTER with the minimum number of Bouts shall be extended, (i) that period of time that FIGHTER is unable or unwilling to compete, or (ii) for a period of six (6) months, whichever is longer. Such extension shall include without limitation, any time periods when FIGHTER is disabled, sick or injured for any reason, incarcerated, suspended or revoked by a Commission, has his ability to travel restricted by a recognized governmental agency or is otherwise unable, unwilling or refuses to compete or train for a Bout for any reason whatsoever.*

These look mighty similar. The only additional provision on the UFC side is a contract extension for the length of time a fighter serves as coach on *The Ultimate Fighter*.

**Sponsorship and Endorsement Clause**

The Fighters claim Zuffa has "...sole discretion over all sponsorship and endorsement

approvals. In effect, the Sponsorship and Endorsement Clause requires the approval of the UFC before an entity can contract with a UFC Fighter to sponsor or endorse the entity's product or service during any UFC events."

UFC sponsorship restrictions will obviously change with the Reebok exclusive partnership set to begin this July. But the contractual language during the 2010-2014 class period and earlier is what will be relevant to this case. Here are the UFC and Bellator clauses:

UFC

> *Fighter covenants and agrees that no wording, symbols, pictures, designs...(i) for any beer, alcohol, beverage company, tobacco, casino or gaming company, media company (including, but not limited to, HBO, ABC, SNI, ESPN, Spike, any Viacom owned network and any Internet related company); (ii) of any sponsor in conflict or competition with ZUFFA or any of ZUFFA's sponsors; (iii) of any sponsor causing injury to the reputation of ZUFFA or ZUFFA's sponsors or their respective officers and owners; or (iv) which has not been pre-approved in writing by ZUFFA shall appear on the trunks, gloves, robe, shoes or any other part of the costume or the body (including by use of temporary or henna tattoos) of Fighter or any of Fighter's Affiliates during or at any Bouts, Pre-Bout Events or Post-Bout Events. For the avoidance of doubt, all sponsorship and endorsement approvals shall be at ZUFFA's sole discretion.*

Bellator

> *FIGHTER agrees that no wording, symbol, picture, design...shall appear on his person, or upon trunks, robe, shoes, or other clothing worn by FIGHTER, his trainers, seconds or assistants during any Bout hereunder, without prior written approval of PROMOTER.*
>
> *...FIGHTER shall not display any wording, symbol, picture design...during any Bout hereunder or at any activity sponsored by PROMOTER which; (i) is in conflict or competition with PROMOTER or any of PROMOTER's sponsors, (ii) is in conflict or competition with the requirements of any telecaster, (iii) represents any beer, alcohol, beverage, tobacco, casino, gaming or media company, (iv) may cause injury to the reputation of PROMOTER or its sponsors, or (v) is considered by PROMOTER, in its sole discretion, to be in bad taste.*

Essentially, all sponsorship logos and designs must be pre-approved in writing by both

promotions and each can approve or deny at its sole discretion. The UFC extends these restrictions to pre- and post-bout events.

I obtained a sample Strikeforce contract shortly before final submission of this piece. A cursory review revealed similar contractual exclusivity, a one-year extension if the fighter becomes champion at any point during the term, a 90-day exclusive negotiation period at contract expiration with a subsequent 180-day matching period, exclusive name, image and likeness rights in any medium in connection with Strikeforce in perpetuity, publicizing events with no additional compensation, the right to suspend or extend the term of the contract (for a maximum of five years) for fighter injury, retirement, refusal to fight an opponent or being unwilling to participate in unarmed combat, and written approval of commercial endorsements that Strikeforce may withhold at its sole discretion.

There will probably end up being word-parsing battles, but one thing is clear. In these sample contracts, the UFC did not, on its face, have markedly different contractual language than Bellator and Strikeforce in the areas examined (except maybe Strikeforce's 180-day matching period). If this holds more broadly, expect the UFC defense team to latch on and not let go.

This is a small taste of what the legal teams and expert witnesses on both sides will try to do regarding the fighter contracts of different MMA promotions. Both sides should have the funding and the manpower to do a much more thorough job than this. Exhibits will be made regarding the number and percentage of competitor contracts that were fully exclusive, partially exclusive and non-exclusive. Similar work will likely be done regarding the Champion's Clause, ancillary rights, and all other pertinent clauses. This is legal and economic warfare, and we're just getting started.

**Scott Coker's** running the show now at Bellator and some of their business practices have changed, but remember the relevant contract analysis will cover the 2010-2014 class period and prior times when MMA markets were more uniformly agreed to be competitive.

*Paul is an economics professor, former provider of expert witness support in antitrust cases and Bloody Elbow's analytics writer. Follow him* **@MMAanalytics**.

## LATEST FROM OUR PARTNERS



Biggest Disappointments in UFC History
Biggest Busts in UFC History
Dirtiest Moments in MMA History
Best Fighters in Women's MMA History
Top 10 Greatest Title Reigns in UFC History
UFC Fighters Who Would Make Great WWE Stars

# LATEST FROM MMA WAREHOUSE



UFC Legacy Series Khabib Nurmagomedov Walkout Jersey
Roots of Fight Andre the Giant Photo Shirt
Hypnotik x Onnit Invitational 7 Rashguard (Limited Edition)
UFC Conor McGregor Notorious Tiger Longsleeve Shirt
UFC Rose Namajunas Thug Rose Shirt
UFC Georges St Pierre GSP Red Maple Leaf Shirt
UFC Legacy Series UFC 220 Daniel Cormier Walkout Jersey
**More:** Apparel Accessories Gloves Sale