Joseph R. Saveri (admitted *pro hac vice*)
Joshua P. Davis (admitted *pro hac vice*)
Kevin E. Rayhill (admitted *pro hac vice*)
Jiamin Chen (admitted *pro hac vice*)
**JOSEPH SAVERI LAW FIRM, INC.**
601 California Street, Suite 1000
San Francisco, California 94108
Phone: (415) 500-6800
Fax: (415) 395-9940
jsaveri@saverilawfirm.com
jdavis@saverilawfirm.com
krayhill@saverilawfirm.com
jchen@saverilawfirm.com

*Co-Lead Counsel for the Classes and*
*Attorneys for Individual and Representative Plaintiffs*
*Cung Le, Nathan Quarry, Jon Fitch, Luis Javier Vazquez,*
*Brandon Vera, and Kyle Kingsbury*

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>                    Defendant. | Case No.: 2:15-cv-01045-RFB-(PAL)<br><br>**PLAINTIFFS' CORRECTED OPPOSITION TO DEFENDANT ZUFFA, LLC'S MOTION TO SEAL PORTIONS OF PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND RELATED MATERIALS (ECF NO._557)** |

## TABLE OF CONTENTS

Page(s)

I.   INTRODUCTION ................................................................................................... 1

II.  LEGAL STANDARD .......................................................................................... 3

III. ARGUMENT ......................................................................................................... 7

     A.   Zuffa Asks the Court to Seal Materials that Are Not Trade Secrets ............. 7

          1.   Plaintiffs' Reply Contains No Trade Secrets. ........................................ 7

          2.   Most of Zuffa's Financial Information Is Too Old to Have
               Competitive Value. ................................................................................. 14

          3.   Plaintiffs' Expert Analyses Contain No Trade Secrets. ....................... 16

     B.   Zuffa Fails to Provide Compelling Reasons to Seal Plaintiffs' Reply ........... 17

     C.   Zuffa Should Not Be Permitted to Invoke Confidentiality Selectively as a
          Sword and a Shield ......................................................................................... 19

IV.  CONCLUSION ...................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agency Sols. Com, LLC v. TriZetto Grp., Inc.,*
   819 F. Supp. 2d 1001 (E.D. Cal. 2011) ............................................................... 17

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,*
   568 U.S. 455 (2013) ......................................................................................... 4

*Apple Inc. v. Samsung Elecs. Co.,*
   727 F.3d 1214 (Fed. Cir. 2013) ......................................................................... 7

*Bartech Int'l, Inc. v. Mobile Simple Sols., Inc.,*
   No. 2:15-cv-02422-MMD-NJK, 2016 U.S. Dist. LEXIS 59852 (D. Nev. May 5, 2016) ...........5, 7, 15

*Chi. Coll. of Osteopathic Med. v. George A. Fuller Co.,*
   801 F.2d 908 (7th Cir. 1986) ............................................................................. 16

*Cohan v. Provident Life & Accident Ins. Co.,*
   No. 2:13-cv-00975-LDG-CWH, 2014 U.S. Dist. LEXIS 194256 (D. Nev. Nov. 7,
   2014) ............................................................................................................. 7

*Collectors Coffee Inc. v. Blue Sunsets, LLC,*
   No. 2:17-cv-01252-JCM-PAL, 2017 U.S. Dist. LEXIS 96273 (D. Nev. June 21, 2017) .................. 5

*Ctr. for Auto Safety v. Chrysler Grp., LLC,*
   809 F.3d 1092 (9th Cir. 2016) ......................................................................... 4, 6

*Cung Le, et al. v. Zuffa, LLC,*
   ECF No. 518-5 .................................................................................................. 8

*Elec. Arts, Inc. v. United States Dist. Court (In re Elec. Arts, Inc.),*
   298 F. App'x 568 (9th Cir. 2008) ....................................................................... 7

*Foltz v. State Farm Mut. Auto. Ins. Co.,*
   331 F.3d 1122 (9th Cir. 2003) ........................................................................... 6

*Fox Sports Net N. v. Minn. Twins P'ship,*
   319 F.3d 329 (8th Cir. 2003) ........................................................................... 14

*Fujitsu Ltd. v. Belkin Int'l,*
   No. 10-CV-03972-LHK, 2012 U.S. Dist. LEXIS 172199 (N.D. Cal. Dec. 3, 2012) ..................... 4

*GoDaddy.com LLC v. RPost Communs. Ltd.,*
   No. CV-14-00126-PHX-JAT, 2016 U.S. Dist. LEXIS 38637 (D. Ariz. Mar. 24, 2016) .................. 7

*Hodges v. Apple Inc.,*
No. 13-cv-01128-WHO (WHO), 2013 U.S. Dist. LEXIS 164674 (N.D. Cal. Nov. 18,
2013) ............................................................................................................... 4, 5, 17, 18

*Hunt v. VEP Healthcare,*
No. 16-cv-04790-VC, 2017 U.S. Dist. LEXIS 139700 (N.D. Cal. Aug. 22, 2017) ............................ 6

*In re Midland Nat'l Life Ins. Co Annuity Sales Practices Litig. v. Allianz Life Ins. Co. of N. Am.,*
686 F.3d 1115 (9th Cir. 2012) ............................................................................................ 4

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.,*
No. 09-cv-01967 CW (NC), 2013 U.S. Dist. LEXIS 85375 (N.D. Cal. June 17, 2013) ..................... 14

*Kamakana v. City & Cty. of Honolulu,*
447 F.3d 1172 (9th Cir. 2006) ..................................................................................*passim*

*Lucas v. Breg, Inc.,*
No. 15-cv-00258-BAS-NLS, 2016 U.S. Dist. LEXIS 134951 (S.D. Cal. Sept. 28,
2016) ............................................................................................................................. 4

*Marsh v. First Bank of Del.,*
No. 11-cv-05226-WHO, 2014 U.S. Dist. LEXIS 4022, at *4 (N.D. Cal. Jan. 13, 2014) ............... 5, 10

*Moussouris v. Microsoft Corp.,*
No. 15-cv-1483 JLR, 2018 U.S. Dist. LEXIS 34685 (W.D. Wash. Feb. 16, 2018) .......................... 4

*Nixon v. Warner Commc'ns,*
435 U.S. 589 (1978) ............................................................................................................ 5

*Phillips v. General Motors Corp.,*
307 F.3d 1206 (9th Cir. 2002) .............................................................................................. 6

*PrimeSource Bldg. Prods. v. Huttig Bldg. Prods.,*
No. 16 CV 11390, 2017 U.S. Dist. LEXIS 202748 (N.D. Ill. Dec. 9, 2017) .............................. 14

*Ramirez v. Trans Union, LLC,*
No. 12-cv-00632-JSC, 2017 U.S. Dist. LEXIS 66194 (N.D. Cal. May 1, 2017) ........................ 14

*Ridgway v. Wal-Mart Stores, Inc.,*
No. 08-cv-05221-SI, 2016 U.S. Dist. LEXIS 94800 (N.D. Cal. July 20, 2016) ........................ 17

*Seattle Times Co. v. Rhinehart,*
467 U.S. 20 (1984) ............................................................................................................ 6

*Shane Grp., Inc. v. Blue Cross Blue Shield,*
825 F.3d 299 (6th Cir. 2016) .................................................................................. 5, 17, 19, 20

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338, 351 (2011)). .................................................................................. 4

*Zakaria v. Gerber Prods. Co.*,
    No. LA CV15-00200 JAK (Ex), 2016 U.S. Dist. LEXIS 184861, at *41 (C.D. Cal.
    Mar. 23, 2016) ..................................................................................................... 16

**Other Authorities**

Federal Rule of Civil Procedure 26(c) ..................................................................... 6

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiffs file this opposition to Zuffa LLC's Motion to Seal Plaintiffs' Reply in Support of Plaintiffs' Motion to Certify Class and Related Materials ("Motion to Seal"). ECF No. 557. This Court should deny Zuffa's Motion to Seal because: (1) the materials Zuffa seeks to seal are not trade secrets, but rather largely outdated, aggregate data, and Zuffa would suffer no competitive harm if they were disclosed; (2) Zuffa's justifications for sealing do not satisfy the applicable "compelling reasons" standard; (3) the right of the public, the press, the named Plaintiffs, and Class members to access judicial materials is especially robust where, as here, sealing the materials would impede assessment of the legal issues at stake in this important litigation and the relative merits of the two sides' legal arguments, allowing Zuffa's unlawful activities to escape public scrutiny, and preventing Plaintiffs and Class members from evaluating the evidence; and (4) Zuffa is attempting to gain an advantage by over-designating materials that support Plaintiffs' claims and their motion for class certification, when Zuffa has selectively revealed similar information that served Zuffa's purposes. By doing so, Zuffa has sought to game the system and gain an advantage in the court of public opinion.[1]

Zuffa, for example, seeks to keep under seal the finding of Plaintiffs' experts that Zuffa's wage share—the percentage of event revenues it pays its fighters—would have been ███████████ if not for its illegal conduct, instead of the ██████ of event revenues Zuffa has actually paid. *See, e.g.*, Reply in Support of Plaintiffs' Motion for Class Certification ("Reply" or "Reply Brief") at pp. 1:12-13; 2:4; 21:18 & 20; and 22:2 & 24-28. Zuffa hopes to prevent the public from learning the extent to which Zuffa has been able to suppress its wage share by increasing its dominance of the market. Plaintiffs' experts have shown that as Zuffa's foreclosure of the market has risen, its wage share has fallen (controlling for hundreds of other factors affecting Fighter compensation). Reply at 7:9-13. Notably, this finding is not

---

[1] Plaintiffs have reserved their rights to challenge Zuffa's confidentiality designations in accordance with the Revised Stipulation and Protective Order signed by the Court on February 10, 2016. Section 6.1 of the Protective Order states that a party can challenge a confidentiality designation "at any time," and that a "Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed." Plaintiffs continue to reserve all rights, and this motion should not be interpreted to mean Plaintiffs have waived their right to challenge any past confidentiality designations by Zuffa or any third party. Plaintiffs intend to challenge Zuffa's past designations at an appropriate time.

Case No.: 2:15-cv-01045 RFB-(PAL)
**PLAINTIFFS' OPPOSITION TO DEFENDANT ZUFFA, LLC'S MOTION TO SEAL PORTIONS OF PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND RELATED MATERIALS (ECF NO._557)**

even controversial, given that Zuffa's main economist in this case, Dr. Robert H. Topel, has *conceded* that Zuffa's ███████████████████████████████████████ ███████ TR1 ¶27 (emphasis in original). But Zuffa nonetheless claims this finding and these wage share figures "contain highly confidential financial information regarding Zuffa's exact compensation paid to athletes, as well as information about Zuffa's event-level revenue . . . ." Motion to Seal at 5. But while wage share is of course based on Zuffa's actual compensation and revenue data, it reveals only the *relationship* between fighter compensation and event revenues; it does not reveal the actual fighter compensation or actual event revenues it is based on. And even if it did, actual fighter compensation and event revenues are not trade secrets. Indeed, they're not secret at all: much of Zuffa's fighter compensation and event revenue are already publicly available.[2] Zuffa itself has released such information.[3] Further, if Zuffa had not released this information, that would not make it a trade secret: all other major sports organizations in the United States publish salary information for every player,[4] and team revenues are also widely available.[5]

Zuffa claims public disclosure of this information "could permit . . . competitors to gain unfair insights into Zuffa's strategic business practices and gain an unearned advantage in competition with Zuffa." Motion to Seal at 5. But that is a red herring. Zuffa is trying to seal this information to control the flow of information to the public, the press, the named Plaintiffs, and the class members, and prevent Plaintiffs from telling their side of the story to the public. That Zuffa's wage share has decreased as its foreclosure share has increased is not a trade secret; it is proof that Zuffa is exploiting its unlawfully acquired and maintained monopsony power to suppress fighter compensation. Any harm Zuffa might suffer from public disclosure of this information flows not from potential competitors

---

[2] *See e.g.*, Exhibit 2, John S. Nash, *What investors are being told about UFC revenues*, BloodyElbow.com, Oct. 20, 2015, available at https://www.bloodyelbow.com/2015/10/20/9547333/what-deutsche-bank-moodys-and-standard-poors-tell-us-about-the-ufc (revealing detailed year-by-year data about Zuffa's revenues).

[3] *See* Exhibit 3, (Nate Wilcox, *Dana White: 'Wanderlei Silva was paid $9.7 million' by the UFC*, BloodyElbow.com, Sept. 27, 2014, https://sports.yahoo.com/news/dana-white-wanderlei-silva-paid-151631358.html). More examples are included below at p. 19, nn.22-26.

[4] Salary rankings for MLB, the NFL, the NBA, the NHL, and MLS can be viewed and downloaded at http://www.spotrac.com. See also, Exhibit 4, https://www.usatoday.com/sports/mlb/salaries/.

[5] *See e.g.*, Exhibit 5, *The Business of Baseball*, Forbes.com (listing market valuation, revenue, and operating income for all 30 MLB teams), available at https://www.forbes.com/mlb-valuations/list/.

Case No.: 2:15-cv-01045 RFB-(PAL)

**PLAINTIFFS' OPPOSITION TO DEFENDANT ZUFFA, LLC'S MOTION TO SEAL PORTIONS OF PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND RELATED MATERIALS (ECF NO._557)**

exploiting trade secrets, but instead from the public learning about Zuffa's misconduct. "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) ("*Kamakana*") (citation omitted).

The same is true for the sophisticated regression analysis of Plaintiffs' expert, Dr. Hal Singer. It shows that Zuffa's conduct ███████████████████████, Reply at pp. 2:4, 19-20, & 22-23; 6:16 & 20-21; 11:4; 16:4; 22:2 & 24-28; 23:1-4, 6-9, 11, & 14-16, while Zuffa admits that a class can be certified even if up to 5-6% of Class members were unharmed. *Id.* at p. 6:19. The aggregate percentage of Class members that Dr. Singer demonstrates were injured does not reveal any trade secrets. Zuffa has not explained how another promoter could use that statistic to gain an unfair business advantage. It shows only the strength of Plaintiffs' class certification motion, the predominance of common issues (like proof of harm), and one reason why this litigation can benefit virtually all Class members.

The same is also true for Plaintiffs' evidence that Zuffa, other industry participants, and Zuffa's own economist, Dr. Topel, knew that ███████████████████████████████ ████████████████████████████████████ ██████████ Reply at p. 10:3-5. Zuffa's potential competitors already know that ████████████ ████████████████████. They live that reality every day, forced, as they are, to rely on the handful of top level fighters who are not under contract with the UFC. It is only the public, the press, the named Plaintiffs, and Class members who are being deprived of information about how the economics of the UFC support Plaintiffs' antitrust claims. These stakeholders have the right to access to judicial records in this case so that they can learn the truth about Zuffa's actions and about the merits of this case.

Plaintiffs respectfully ask the Court to make their Reply Brief and supporting materials open and accessible to the public, in accordance with the Ninth Circuit's "strong presumption in favor of access" to judicial records. *Kamakana*, 447 F.3d at 1178 (citation omitted). This Court should deny Zuffa's Motion to Seal, other than regarding those portions designated as confidential by third parties.

## II.    LEGAL STANDARD

Zuffa fails to satisfy the high burden of keeping the materials in Plaintiffs' Reply Brief under seal.

In the Ninth Circuit, if a motion is "more than tangentially related to the merits of a case," meaning it is "able to significantly affect the disposition of the issues in the case," compelling reasons are necessary to justify sealing materials. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1100-01 (9th Cir. 2016) ("*Chrysler Grp.*"). "In deciding whether to certify a class, district courts engage in a 'rigorous analysis' that frequently 'will entail some overlap with the merits of the plaintiff's underlying claim.'" *Lucas v. Breg, Inc.*, No. 15-cv-00258-BAS-NLS, 2016 U.S. Dist. LEXIS 134951, at *3-4 (S.D. Cal. Sept. 28, 2016) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)).[6] Thus, motions for class certification are more than "tangentially related" to the merits of the Plaintiffs' underlying claim, and the "compelling reasons" standard applies. *See, e.g., Lucas*, at *3-4 (holding that plaintiffs' motion for class certification was "more than tangentially related to the merits of the case, and that the compelling reasons standard applie[d]" to motion to seal documents related thereto); *Moussouris v. Microsoft Corp.*, No. 15-cv-1483 JLR, 2018 U.S. Dist. LEXIS 34685, at *12 (W.D. Wash. Feb. 16, 2018) ("after *Chrysler*, district courts that have addressed the issue have found that the 'compelling reasons' standard applies to motions for class certification").[7]

A party seeking to seal a judicial record bears the burden of overcoming "a strong presumption in favor of access" by meeting the "compelling reasons" standard. *Kamakana*, 447 F.3d at 1178 (citation omitted). The sealing party must "'articulate compelling reasons supported by specific factual findings,' providing 'articulable facts' that identify the interests favoring secrecy and showing how those interests outweigh the presumption of public access to judicial records." *Hodges v. Apple Inc.*, No. 13-cv-01128-WHO (WHO), 2013 U.S. Dist. LEXIS 164674, at *2-3 (N.D. Cal. Nov. 18, 2013) ("*Hodges*") (quoting

---

[6] To be clear, a court may consider the merits to the extent—and only to the extent—that they are relevant to the class certification standard. Reply at 3 (citing *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013)). Thus, the court should not resolve an issue that by its nature is common to the class, such as, here, whether Zuffa's conduct violated the antitrust laws. Reply at 4-6.

[7] Courts in the Ninth Circuit have also applied the "compelling reasons" standard to *Daubert* motions. *See e.g. In re Midland Nat'l Life Ins. Co Annuity Sales Practices Litig. v. Allianz Life Ins. Co. of N. Am.*, 686 F.3d 1115, 1120 (9th Cir. 2012) (holding where resolution of a *Daubert* motion may be dispositive of a motion affecting the merits—in that case a motion for summary judgment—a motion to seal records connected to the *Daubert* motion is subject to the compelling reasons standard); *Fujitsu Ltd. v. Belkin Int'l*, No. 10-CV-03972-LHK, 2012 U.S. Dist. LEXIS 172199, at *16 (N.D. Cal. Dec. 3, 2012) ("the critical inquiry is whether the motion is connected to a proceeding that is potentially case dispositive" and holding that the defendants had failed to provide compelling reasons to seal expert reports attached to a *Daubert* motion) (citation omitted).

*Kamakana*, 447 F.3d at 1178, 1181). Compelling reasons "exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* at 1179. (quoting *Nixon v. Warner Commc'ns*, 435 U.S. 589, 598 (1978)). "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana*, 447 F.3d at 1179 (citation omitted). "An unsupported assertion of unfair advantage to competitors without explaining *how* a competitor would use the information to obtain an unfair advantage is insufficient." *Hodges*, 2013 U.S. Dist. LEXIS 164674, at *4-5 (italics added) (citation omitted). "The Ninth Circuit has rejected efforts to seal documents under the 'compelling reasons' standard based on 'conclusory statements [that] the contents of the documents . . . are confidential and that, in general,' their disclosure would be harmful to the movant." *Bartech Int'l, Inc. v. Mobile Simple Sols., Inc.*, No. 2:15-cv-02422-MMD-NJK, 2016 U.S. Dist. LEXIS 59852, at *3 (D. Nev. May 5, 2016) (quoting *Kamakana*, 447 F.3d at 1182) ("*Bartech*"). "A litigant is required to make a particularized showing for each document it seeks to file under seal . . . ." *Collectors Coffee Inc. v. Blue Sunsets, LLC*, No. 2:17-cv-01252-JCM-PAL, 2017 U.S. Dist. LEXIS 96273, at *6 n.1 (D. Nev. June 21, 2017).

Moreover, "in class actions—where by definition some members of the public are also parties to the case—the standards for denying public access to the record should be applied with particular strictness." *Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 305 (6th Cir. 2016) (citation omitted) ("*Shane*"). *Accord Marsh v. First Bank of Del.*, No. 11-cv-05226-WHO, 2014 U.S. Dist. LEXIS 4022, at *4 (N.D. Cal. Jan. 13, 2014) ("*Marsh*") ("In a class action, the public right of access to court documents is especially heightened."). This is especially so in antitrust cases, where "the public's interest is focused not only on the result, but also on the conduct giving rise to the case. In those cases, secrecy insulates the participants, masking impropriety, obscuring incompetence, and concealing corruption." *Shane*, 825 F.3d at 305 (citation omitted). "[E]ven where a party can show a compelling reason why certain documents or portions thereof should be sealed, the seal itself must be narrowly tailored to serve that reason. The proponent of sealing therefore must analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations." *Id.* at 305-06 (citation

**PLAINTIFFS' OPPOSITION TO DEFENDANT ZUFFA, LLC'S MOTION TO SEAL PORTIONS OF PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND RELATED MATERIALS (ECF NO._557)**

omitted). Sealing information in a class action is inappropriate when doing so would "interfere with the right of class members to make an informed decision about whether to object or opt out." *Hunt v. VEP Healthcare*, No. 16-cv-04790-VC, 2017 U.S. Dist. LEXIS 139700, at *3 n.1 (N.D. Cal. Aug. 22, 2017).

The "good cause" standard does not apply here. The good cause standard arises from Federal Rule of Civil Procedure 26(c), which provides "General Provisions Governing Discovery," and under which a court may issue a protective order for good cause shown to protect documents produced in discovery. However, "when discovery material is filed with the court . . . , its status changes," so that even material deemed confidential under a protective order is subject to the "strong presumption in favor of access to court records," which can be overcome only by showing "compelling reasons" for limiting the public's presumed right of access. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1134-35 (9th Cir. 2003) ("*Foltz*"). "Unlike private materials unearthed during discovery, judicial records are public documents almost by definition, and the public is entitled to access by default. This fact sharply tips the balance in favor of production when a document, formerly sealed for good cause under Rule 26(c), becomes part of a judicial record." *Kamakana*, 447 F.3d at 1180 (citation omitted). Zuffa states that the "Court has 'broad latitude' under Rule 26(c) 'to prevent disclosure of materials for many types of information, including, but not limited to, trade secrets or other confidential research, development, or commercial information.'" Motion to Seal at p. 2:7-10 (quoting *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002)). But Rule 26 does not provide the standard here. The "good cause" standard applies to "discovery motion[s] unrelated to the merits of a case." *Chrysler Grp.*, 809 F.3d at 1097. "[D]iscovery is largely conducted in private as a matter of modern practice,' so the public is not presumed to have a right of access to it." *Id.* (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984)). Zuffa must provide "compelling reasons" to justify sealing judicial records. But even if good cause were the relevant standard here—it is not—Zuffa must show that "specific prejudice or harm will result" if the information is disclosed. *Foltz*, 331 F.3d at 1130. "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Id.* For the reasons discussed below, Zuffa fails to satisfy not only the applicable compelling reasons standard, but also the less stringent good cause standard.

### III.     ARGUMENT

#### A.     Zuffa Asks the Court to Seal Materials that Are Not Trade Secrets

Zuffa has not shown any of the materials it seeks to keep from the public are trade secrets, and thus fails to meet its burden. Information may be sealed if its disclosure would "release trade secrets." *Kamakana*, 447 F.3d at 1179. "A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Elec. Arts, Inc. v. United States Dist. Court (In re Elec. Arts, Inc.)*, 298 F. App'x 568, 569 (9th Cir. 2008). Parties "have an interest in keeping their detailed product-specific financial information secret . . . [when] they could suffer competitive harm if this information is made public." *Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1225 (Fed. Cir. 2013) (applying Ninth Circuit law). Courts will grant a party's motion to seal where public disclosure would "cause it competitive disadvantage by permitting its competitors to exploit its trade secrets." *Bartech,* 2016 U.S. Dist. LEXIS 59852, at *5. "The touchstone for evaluating the existence of a trade secret focuses on the need for secrecy." *Cohan v. Provident Life & Accident Ins. Co.*, No. 2:13-cv-00975-LDG-CWH, 2014 U.S. Dist. LEXIS 194256, at *6 (D. Nev. Nov. 7, 2014) (citation omitted). "[B]ecause confidentiality alone does not transform business information into a trade secret, a party alleging trade secret protection as a basis for sealing court records must show that the business information is in fact a trade secret." *GoDaddy.com LLC v. RPost Communs. Ltd.*, No. CV-14-00126-PHX-JAT, 2016 U.S. Dist. LEXIS 38637, at *5 (D. Ariz. Mar. 24, 2016) (citation omitted). To justify sealing portions of Plaintiffs' Reply and supporting documents, Zuffa must make a particularized showing that each record it seeks to seal contains a trade secret.

#### 1.     Plaintiffs' Reply Contains No Trade Secrets.

The materials Zuffa asks the Court to seal do not contain any trade secrets. For example, Zuffa asks the Court to seal all references to "wage share," which is the percentage of Zuffa's event revenues that it paid in fighter compensation. In particular, Zuffa asks the Court to seal portions of the following sentence: "Eliminate the Exclusive Contracts, and Zuffa's Foreclosure Share would drop to 0% and its Wage Share would rise from about ▉ to about ▉." Reply at p. 1:11-13. (Throughout this brief, Plaintiffs use underlining to represent portions of quoted text in the Reply that Zuffa proposes to

Case No.: 2:15-cv-01045 RFB-(PAL)
**PLAINTIFFS' OPPOSITION TO DEFENDANT ZUFFA, LLC'S MOTION TO SEAL PORTIONS OF PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND RELATED MATERIALS (ECF NO._557)**

redact; in the preceding sentence, "██" and "██" are the proposed redactions.) While wage share measures the relationship of compensation to event revenues, it does not reveal—nor could it be reverse engineered to reveal—actual revenues or actual compensation. Moreover, the second of the two numbers Zuffa seeks to seal in the above sentence—"██"—refers to the "but for" wage share, what the wage share would be absent Zuffa's anticompetitive actions. By definition, it is a depiction of what Zuffa is *not* paying its fighters now, so it cannot contain confidential information about what Zuffa *is* paying its fighters. Zuffa fails to specify—as it must—how a potential competitor could use this information to harm Zuffa's business, relying instead on generic allegations of unspecified harm.[8,9]

Even if it were possible to deduce information about actual compensation or revenues from wage share, Plaintiffs do not believe, and Zuffa has not shown, that its event revenues or fighter compensation are trade secrets. Other sports organizations, including MLB, the NFL, the NBA, and the NHL, release information about team revenues and player compensation (both individual and aggregate compensation) on a regular basis, without suffering competitive harm.[10] As Plaintiffs' experts have shown, teams in those sports have suffered no ill effects from sharing this information. Indeed, they have thrived. *See* Expert Report of Andrew Zimbalist in *Cung Le, et al. v. Zuffa, LLC*, ECF No. 518-5, ¶ 83 ("revenue, profits and franchise values have all skyrocketed since the advent of free agency in each sport," referring to MLB, the NFL, the NBA, and the NHL).

Zuffa seeks to seal wage share information for the purpose of controlling how the public, the press, the named Plaintiffs, and Class members perceive the relative merits in this case, and to avoid

---

[8] Zuffa asks the Court to seal other references to wage share on pages 2, 11, 21, 22, and 24. *See* Exhibit 1 for a complete list of Zuffa's requests to seal and the actual portions of Plaintiffs' Reply that Zuffa seeks to seal.

[9] Footnote 20 in the Reply contains the following language: "That is what Dr. Singer does to show ████████████. Further, a simple comparison supports Plaintiffs' point. For instance, according to a 2013 internal Zuffa document, ██████████████████████████████████████ SR1 ¶ 173 & Fig. 3 (using the Tracked definition). For the reasons stated above, Plaintiffs do not believe the quoted text contains trade secret. Zuffa asks the Court the seal the "final three redacted lines of *footnote 19*" (emphasis added). Motion to Seal at 5, 8. Plaintiffs made no provisional redactions in footnote 19 (which contains only citations to case law) when they filed the Reply. Assuming Zuffa meant to refer to footnote 20, Plaintiffs believe this statement should not be sealed.

[10] *See, e.g.*, http://www.spotrac.com.

being held accountable for their anticompetitive actions. Zuffa does not want Plaintiffs and the Class to know how much money Zuffa makes, and how little of that money goes to fighters. The information does not give Zuffa a competitive advantage over its potential competitors, but it does allow Zuffa to conceal the effects of its anticompetitive actions from the public, the press, the named Plaintiffs, and the class members.

Zuffa's wage share information is at the core of Plaintiffs' merits argument. Plaintiffs use wage share to "measure the effects of Zuffa's illegal accretion of market power." Reply at p. 1:21-22. Specifically, "as Zuffa's Foreclosure Share increased, its Wage Share decreased." *Id*. at p. 7:12-13. It is one of the key components of Plaintiffs' merits argument and forms a key basis for Plaintiffs' damages calculations. Plaintiffs have shown that numerous economists—*including Zuffa's own*—recognize that wage share is the proper measure of the impact of a change in monopsony power in professional sports. *Id*. at p. 7:23-28. Zuffa argues that the correct measure of the impact of monopsony power is wage *level*: it asserts that if its absolute wages have increased at all during the class period, then there has been no harm to the fighters. *Id*. at p. 1:14-20. But Plaintiffs have shown—and Zuffa's economists have conceded—that monopsony power can suppress worker pay even when absolute wage levels rise. *Id*. at p. 8:4-6. This disagreement reveals a great deal about whether Zuffa's conduct violated the antitrust laws—and therefore is of great importance to the press, the public, the named Plaintiffs, and Class members—but nothing that could reasonably be deemed a trade secret or could give any potential competitor an unfair advantage over Zuffa.

Zuffa's attempts to seal these references, if successful, would impede the ability of the press, the public, Plaintiffs, and absent Class members to understand the nature of the dispute and the legal issues involved in this important case. It would also prevent them from fully and accurately weighing the relative merits of the two sides' arguments, in contravention of their right of access to judicial documents and to be informed of the case. "Historically, courts have recognized a general right to inspect and copy public records and documents, including judicial records and documents. This right is justified by the interest of citizens in keeping a watchful eye on the workings of public agencies." *Kamakana*, 447 F.3d at 1178 (citation omitted).

Moreover, "[s]uch vigilance is aided by the efforts of newspapers to publish information

**PLAINTIFFS' OPPOSITION TO DEFENDANT ZUFFA, LLC'S MOTION TO SEAL PORTIONS OF PLAINTIFFS' REPLY
IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND RELATED MATERIALS (ECF NO._557)**

concerning the operation of government." *Id.* Journalists covering this case have expressed frustration with their inability to gain full access to judicial materials,[11] and one of them, John Nash, has asked the court to unseal all filings and related documents in this case. *See* Exhibit 7, Nash Email to Judge Boulware, June 3, 2018.

On June 10, Zuffa submitted a reply letter to the Court, asserting that the materials it asks the Court to seal are "properly filed under seal." *See* Exhibit 8, S. Grigsby Ltr. to Court, June 10, 2018, at 2. Zuffa states that members of the press have had "ample opportunity to follow and debate the merits and details of the class certification filings" even with Zuffa's proposed redactions. But as Mr. Nash pointed out in his June 15 letter to the Court responding to Zuffa's letter, the articles and podcast that Zuffa points to as proof contain multiple complaints from the authors and participants that the filings have been heavily redacted.[12] That enterprising members of the press have been able to scrape together incomplete information about this case does not mean they have had adequate access to assess this case and inform others. Given the "heightened" interest of the public, the named Plaintiffs, and Class members in an important class action such as this, full and open access for the press is crucial. *Marsh*, 2014 U.S. Dist. LEXIS 4022, at *4. Plaintiffs support Mr. Nash's request to unseal judicial records and, consistent with the protocol in the protective order this Court entered, ECF No. 217, intend to move to unseal all briefing and exhibits associated with Plaintiffs' Motion for Class Certification and Defendant's

---

[11] *See, e.g.*, Exhibit 6. Paul Gift, *UFC's Dana White: 'Insane' If You Don't Worry About Competition*, Forbes.com, Feb. 28, 2018 ("There's still much about this case that's unknown. Significant portions of expert reports were redacted and some deposition transcripts were either excluded in their entirety or had only small parts that were public and unredacted."), available at https://www.forbes.com/sites/paulgift/2018/02/28/ufcs-dana-white-insane-if-you-dont-worry-about-competition/#7c8d97876ab5.

[12] *See,* Exhibit 9 (Nash Response Letter, June 15, 2018); Exhibit 10, Paul Gift, *Antitrust Suit: Fighters File For Class Certification, UFC Wants 'Junk Science' Excluded*, Forbes.com, Feb. 17, 2018 (stating three times that portions of the class certification were redacted), available at https://www.forbes.com/sites/paulgift/2018/02/17/ufc-antitrust-lawsuit-class-certification-junk-science-excluded-mma-news/#51e64ebc2c73; Exhibit 11, John S. Nash, *UFC Lawsuit: Expert for Plaintiff sets damages at up to $1.6 billion*, Bloody Elbow Feb. 19, 2018 (stating three times that portions of the class certification were redacted), available at https://www.bloodyelbow.com/2018/2/19/17023756/expert-plaintiffs-sets-damages-ufcclass-action-suit-up-to-1-6-billion; Paul Gift, John S. Nash, and Jason Cruz, *Show Money 21: Takeaways from the UFC antitrust document dump and Project Spearhead*, BloodyElbow.com, Mar. 8, 2018, (at minute 46:36 of the podcast, Gift states, "You can't read what [the experts] are saying because it's redacted, but you can see the titles."), podcast available at https://www.bloodyelbow.com/2018/3/8/17094806/show-money-21-ufc-antitrust-class-certification-daubert-project-spearhead-mma-editorial.

Case No.: 2:15-cv-01045 RFB-(PAL)
**PLAINTIFFS' OPPOSITION TO DEFENDANT ZUFFA, LLC'S MOTION TO SEAL CERTAIN PORTIONS OF PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND RELATED MATERIALS (ECF NO. 557)**

*Daubert* Motions. Plaintiffs continue to reserve all rights in that regard.

In another example of material Zuffa asks the Court to seal that does not contain trade secret information, Zuffa asks the Court to seal all references to the classwide impact of Zuffa's anticompetitive actions, as, for example, in the following sentence: "Plaintiffs show common impact using . . . an impact regression showing Zuffa ███████████████████████ . . . ." Reply at p. 2:19-20. This statement contains no information that a potential competitor could use to cause cognizable competitive harm to Zuffa, and Zuffa has not provided any reason to believe to the contrary.[13] It does, however, provide information highly relevant to whether this Court should grant class certification, an issue that the press, the Class, and public have a great interest in assessing. It also shows that the vast majority of Class members would benefit from the success of the lawsuit, an issue of great potential significance to them.

Zuffa also asks the Court to seal all references to Zuffa's ████████████████ █████████, as, for example in this sentence: "██████████████████████ ███████████████████████████████████████. So there is no evidence ███████████████████████████████████████. ." Reply at p. 23:1-4 (citations omitted). These references contain no competitively harmful information, and none could be deduced from these statements. Again, Zuffa offers no specifics as to how a potential competitor could use this information to Zuffa's disadvantage. If Zuffa did have some special secret way of promoting MMA fighters—one that somehow improved disproportionately to its event revenues—that might constitute a trade secret. But that is precisely what Zuffa has failed to show. Instead, the only evidence is that Zuffa's secret to paying a low wage share lies in its exclusive contracts with fighters that foreclose competition—an antitrust violation. So, what the above quotation does reveal is why Zuffa's conduct violated the antitrust laws and why its argument to the contrary is unpersuasive. That information should be made available to the press, the public, the named Plaintiffs, and Class members.

---

[13] Zuffa asks the Court to seal other references to undercompensation of 99% of class members on pages 6, 11, 16, and 25. *See* Exhibit 1.

**PLAINTIFFS' OPPOSITION TO DEFENDANT ZUFFA, LLC'S MOTION TO SEAL PORTIONS OF PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND RELATED MATERIALS (ECF NO. 557)**

1   In another example, Zuffa asks the Court to seal information about barriers to entry, as in this

2   statement: "documentary evidence confirms Zuffa and other industry participants ████████

3   ████████████████████████████████████████████████████. Dr. Topel himself *admitted*

4   that ████████████████████████████████████████████████████."'"

5   Reply at p. 10:2-5 (citations omitted) (italics in original). That is not a trade secret. Zuffa is asking the

6   Court to seal their economist's analysis, even though that analysis contains no commercial information

7   that Zuffa needs to protect. Other promoters are well aware of Zuffa's ████████████████

8   ████████████████████████████. If they weren't, they would soon learn about them when they try

9   to hire UFC fighters and are told they cannot do so. The only basis for sealing the statements regarding

10  Dr. Topel appears to be that the statements do not support Zuffa's position. "The mere fact that the

11  production of records may lead to a litigant's embarrassment, incrimination, or exposure to further

12  litigation will not, without more, compel the court to seal its records." *Kamakana*, 447 F.3d at 1179

13  (citation omitted). Indeed, Zuffa goes to great lengths to keep the public from learning what the parties'

14  experts have to say in this case. When expert analysis does not disclose trade secrets, it cannot properly

15  be sealed. *Id.*

16  Some of the materials Zuffa asks the Court to seal are public knowledge. For example, Zuffa asks

17  the Court to seal a reference to the average length of an MMA fighter's career: "He also shows the

18  average professional career of an MMA Fighter ranges from about ████████." Motion to Seal at 8

19  (referring to Reply at 9). But Zuffa itself has made this information public. Zuffa filed a redacted version

20  of the Rebuttal Expert Report of Hal J. Singer, Ph.D., ECF No. 518-4, in which Zuffa left Table 1

21  unredacted. The unredacted Table 1 (on page 53 of the Rebuttal Report) reflects Dr. Singer's

22  calculations of the median and mean career durations for (1) Zuffa Fighters in Zuffa Bouts, (2) Fighters

23  in the Relevant Input Market (Tracked Measure), (3) Fighters in the relevant input market (Ranked

24  Measure) and (4) Fighters in the Headliner Submarket. These measures range from means of 21.6

25  months to 30.6 months and medians of 4.56 months to 15.96 months. With such figures in the public

26  domain, Zuffa's requested redaction of similar and consistent information cannot contain highly

27  confidential trade secrets.

28  Many of Zuffa's other proposed redactions also refer to information that is public knowledge.

12

Case No.: 2:15-cv-01045 RFB-(PAL)

**PLAINTIFFS' OPPOSITION TO DEFENDANT ZUFFA, LLC'S MOTION TO SEAL PORTIONS OF PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND RELATED MATERIALS (ECF NO._557)**

For example, Zuffa asks the Court to seal all references to the price for which the company was sold in

2016. But it is widely known that WME/IMG paid ██████████ for Zuffa.[14] Moreover, much of Zuffa's

financial information was disclosed in credit opinions that are publicly available.[15] In addition, articles in

the MMA press disclosed financial information contained in documents that were not initially released

publicly but to which reporters gained access.[16] Zuffa asks the Court to seal references to ████████

██████████████████████████████████████████, but this has also been widely

reported.[17] Similarly, in light of past public disclosures of the standard terms in Zuffa's fighter contracts,

they are no longer confidential.[18] All that sealing this information would do is prevent Plaintiffs from

explaining its significance for the antitrust claims they are pursuing.

    None of the examples cited above, or any other request asserted by Zuffa, contains any

information that could reasonably be construed as a trade secret. Nor could the information somehow be

"reverse engineered" to extract trade secrets, as Zuffa suggests. Motion to seal at 5, 7. There is no trade

---

[14] *See e.g.*, Exhibit 12, Michael J. de la Merced, *U.F.C. Sells Itself for $4 Billion*, NYTimes.com, July 11, 2016, available at https://www.nytimes.com/2016/07/11/business/dealbook/ufc-sells-itself-for-4-billion.html; http://www.espn.com/mma/story/_/id/16970360/ufc-sold-unprecedented-4-billion-dana-white-confirms; https://www.forbes.com/sites/noahkirsch/2017/09/07/exclusive-billionaire-fertitta-brothers-sell-remaining-ufc-stakes-at-5-billion-valuation/#55712d0d4d69; https://en.wikipedia.org/wiki/Zuffa ("On July 11, 2016, Zuffa announced that it would be purchased by WME-IMG for the price of $4.2 billion.").

[15] *See e.g.*, Exhibit 2 at 3 ("The revenue for the years 2013 and 2014 were reported in the February 3, 2014 and February 19, 2015 Moody's Credit Opinion: Zuffa, LLC, respectively.").

[16] *See e.g.*, Exhibit 13, https://www.bloodyelbow.com/2016/2/15/10985436/moodys-reports-a-big-2015-for-the-ufc; Exhibit 14, https://www.bloodyelbow.com/2015/11/3/9561981/ufc-finances-zuffa-debt-deutsche-bank-moodys-standard-and-poor-investors-bonds.

[17] *See e.g.*, Exhibit 29, *Sponsor speaks of ills of UFC "tax"*, MMAPayout.com, March 22, 2014, available at http://mmapayout.com/2014/03/sponsor-speaks-of-ills-of-ufc-tax/.

[18] UFC Fighter Eddie Alvarez's 2012 Zuffa contract was filed as a public exhibit in litigation between Mr. Alvarez and Bellator in 2013. The contract is still available online. *See* Exhibit 15, available at, https://cdn1.vox-cdn.com/uploads/chorus_asset/file/3467750/Bellator_vs_Alvarez_-_1_-_Alvarez_UFC_Contract__PACER_.0.pdf. The MMA journalist Paul Gift analyzed each of Zuffa's contract terms from the Alvarez contract and compared them to Bellator's contract terms. *See* Exhibit 16, Paul Gift, *UFC antitrust lawsuit: Inside Bellator's contracts and the effect on plaintiff fighters*, BloodyElbow.com. March 4, 2015, available at https://www.bloodyelbow.com/2015/3/4/8146159/mma-ufc-antitrust-monopoly-bellator-contracts. *See also*, Exhibit 17, Adam Swift, *Inside the Standard Zuffa Contract*, Sherdog.com, Oct. 31, 2007, available at http://www.sherdog.com/news/articles/Inside-the-Standard-Zuffa-Contract-9734 (listing standard Zuffa contract clauses, including the Retirement Clause, the Champion's Clause, tolling provisions, the right to match period, and the exclusive negotiating period, among other contract provisions).

secret information contained in Plaintiffs' Reply. For a complete list of every item Zuffa seeks to seal, including the affected text, Zuffa's purported justification for sealing, and Plaintiffs' reasoning against sealing, Plaintiffs refer the Court to Exhibit 1.

> ### 2.   Most of Zuffa's Financial Information Is Too Old to Have Competitive Value.

Information that is outdated or obsolete loses its value as confidential information or a trade secret. *See Ramirez v. Trans Union, LLC*, No. 12-cv-00632-JSC, 2017 U.S. Dist. LEXIS 66194, at *17 (N.D. Cal. May 1, 2017) (holding that seven-year-old information was "stale" and therefore no longer reveals a trade secret or otherwise confidential information); *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. 09-cv-01967 CW (NC), 2013 U.S. Dist. LEXIS 85375, at *12 (N.D. Cal. June 17, 2013) ("*NCAA*") (denying motion to seal where document was eight years old, and the defendant "fail[ed] to articulate what specific harm an outdated document will have on its current or future operations"); *Fox Sports Net N. v. Minn. Twins P'ship*, 319 F.3d 329, 336 (8th Cir. 2003) ("obsolete information cannot form the basis for a trade secret claim because the information has no economic value"); *PrimeSource Bldg. Prods. v. Huttig Bldg. Prods.*, No. 16 CV 11390, 2017 U.S. Dist. LEXIS 202748, at *47 (N.D. Ill. Dec. 9, 2017) (holding that two-year-old vendor pricing information was not a trade secret because pricing had changed in the interim: "Information that is too old to hold any value loses any protection it would otherwise be entitled to as a trade secret").

As noted above, the Reply contains neither trade secrets nor information from which trade secrets could be deduced. Indeed, even the underlying documents referenced in the Reply do not contain trade secret information, in part because they are too old to have current competitive significance. For example, Zuffa asks the Court to seal the following portion of the Reply: "Further, a simple comparison *supports* Plaintiffs' point. For instance, according to a 2013 internal Zuffa document,

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████." Reply at 11, n.20 (citations omitted). The most recent data in ZFL-1484034-37 is nearly five years old. *See* Exhibit 18. There has also been a change in Zuffa's ownership since the email was sent. Even if this information had once held competitive value—it did

**PLAINTIFFS' OPPOSITION TO DEFENDANT ZUFFA, LLC'S MOTION TO SEAL PORTIONS OF PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND RELATED MATERIALS (ECF NO._557)**

not[19]—it is now too old to be of value to a potential competitor of Zuffa, like most of the information produced by Zuffa in this litigation.

In another example, Zuffa asks the court to seal a statement that testimony from Zuffa matchmaker Joe Silva "was corroborated by admissions from ██████████████████████████ ██████████████████████████████████████████████." Reply at pp. 14:19 – 15:1. This sentence contains no confidential information: the names of Zuffa's executives are public information. But even the underlying documents are not confidential because the information is stale.[20] ████████████ testimony relates to a text he sent over four years ago on February 25, 2014.[21] SR1 at 223. The text is obsolete because it discusses compensation for a fighter ████████ who is no longer signed to the UFC. ████████████ testimony relates to a ████████████████ document from January 2015. This information is similarly obsolete because ████████████████████ ████████████████████████████████████ are matters of public record and widely reported on.[22] No competitive harm could come from disclosure of ████████████████

---

[19] ZFL-1484034-37 is an email and attachment dated August 1, 2013. The attachment contains aggregated financial data relating to annual gross fighter compensation, annual per-event average fighter compensation, and annual fighter compensation as a percentage of event revenue. Aggregated compensation and revenue data are no different than the information in a public company's annual 10-K report—which will usually contain information about a company's gross and net income, its costs, income by division or by product, *etc.* As noted above, other sports organizations routinely make this information public without suffering ill competitive effects.

[20] Further, Zuffa argues that the testimony that these executives corroborate is not "a policy applicable to all of Zuffa." *See* Opp. to Plaintiffs' Motion for Class Certification, ECF No. 540, at 33 (Apr. 6, 2018). Zuffa cannot credibly argue that the underlying testimony is a "trade secret" and that the subject policy is not applicable.

[21] The text is taken from ZFL-1897652, which contains 3,817 text messages taken from ████████ ████████ smart phone. *See* Exhibit 19 (excerpts from ZFL-1897652). Zuffa has designated the *entire document* Confidential, and has asked the Court to seal most references to it in Dr. Singer's Opening Report. *See* Zuffa's Motion to Seal their Motion to Exclude, ECF 525, at 4. This broad over-designation fails to provide a compelling reason to seal and is an abuse of the process. *See Bartech*, 2016 U.S. Dist. LEXIS 59852, at *3. There are many statements in these texts that are supportive of Plaintiffs' claims and that are not trade secrets. For example, referring to a tough negotiation with a UFC fighter, ████████████████████████. *Id.* at ZFL-1897726. To the extent that Zuffa wishes to seal any of ████████████ texts, the burden is on Zuffa to identify each individual text it seeks to seal and provide a specific factual basis that supports sealing the text.

[22] *See, e.g.*, Exhibit 20, Trent Reinsmith, *UFC 220 Fighter Salaries: Stipe Miocic, Francis Ngannou And Daniel Cormier Take Home Biggest Paydays*, Forbes.com, Jan. 30, 2018, available at https://www.forbes.com/sites/trentreinsmith/2018/01/30/ufc-220-fighter-salaries-stipe-miocic-francis-ngannou-and-daniel-cormier-take-home-biggest-paydays/#3b838ee11730 (discussing

---

15

Case No.: 2:15-cv-01045 RFB-(PAL)

1  testimony.

2  **3.  Plaintiffs' Expert Analyses Contain No Trade Secrets.**

3  As noted above, many of the materials Zuffa asks the Court to seal relate to analysis by Dr.

4  Singer. Indeed, Zuffa goes even further, asking the Court to seal Dr. Singer's entire Second

5  Supplemental Report and portions of his deposition testimony filed as exhibits to the Reply. Motion to

6  Seal at 7-11. But as discussed above, none of the references to Dr. Singer's analysis contains trade

7  secrets, and none can be "reverse engineered" to disclose such information. Even if Dr. Singer had

8  analyzed trade secrets, references to his analysis in the Reply would not be confidential if they do not

9  themselves reveal trade secrets.

10  Another example of Zuffa trying to seal expert analysis (in addition to those provided above) is in

11  the following excerpt from the Reply: "███████████████████████████████████████

12  ████████████████████████████████████████████

13  ███████████ And Zuffa has made no showing that the *effects* of ████████████████

14  ███████████████." Reply at 16, n.27. These statements are based on Dr. Singer's Second

15  Supplemental Report, which analyzed Zuffa's Profit and Loss data. As with the wage share references,

16  these statements describe only the relationship between Zuffa's ████████████████████████

17  ██████.[23]

18  As is common in complex antitrust class actions such as this, expert testimony forms an

19  important part of Plaintiffs' case-in-chief.[24] Zuffa's attempts to seal analysis and insights provided by

20

21  ───────────────────────

[23] Footnote 18 of the Reply (p. 10) contains another reference to the proportion of non-fighter
22  expenditures to revenues: "More specifically, Zuffa has belatedly suggested that increased 'advertising,'
or increased non-Fighter event spending more broadly, could explain falling wage share. But the
evidence is that ███████████████████████████████████████████" (Citations
23  omitted.) For the reasons discussed above, Plaintiffs believe this information should be public, but out of
an abundance of caution Plaintiffs provisionally redacted this reference when the Reply was filed. Zuffa
24  asks the Court to seal *footnote 17* on page 10 of the Reply, and does not ask the Court to seal anything in
footnote 18. Footnote 17 discusses Dr. Singer's choice of a minimum contract duration. Plaintiffs do not
25  believe footnote 17 or footnote 18 contains any trade secret information, and Zuffa does not identify any.

26  [24] *See Chi. Coll. of Osteopathic Med. v. George A. Fuller Co.*, 801 F.2d 908, 911 (7th Cir. 1986) ("in a great
deal of complex litigation, including most patent and antitrust litigation, expert testimony is a practical if
27  not legal necessity"); *Zakaria v. Gerber Prods. Co.*, No. LA CV15-00200 JAK (Ex), 2016 U.S. Dist.
LEXIS 184861, at *41 (C.D. Cal. Mar. 23, 2016) (discussing importance of expert analysis in antitrust
28  litigation). "Statistical evidence is routinely introduced and explained by experts in antitrust
litigation . . . and proof of damages suffered by plaintiffs in these cases also may rest heavily on expert
testimony." Manual for Complex Litigation, Fourth, §23.1, pp. 470-71 (2004).

Plaintiffs' experts would, if successful, prevent the press, the public, the named Plaintiffs, and Class members from assessing the legal issues raised and the relative merits of the arguments in this case. The Court should not allow Zuffa to play for advantage in the minds of the press, the public, Plaintiffs, and the Class.

Expert reports will necessarily include citations to the record, but any attempt to seal the reports must be narrowly tailored to affect only information that could be exploited unfairly by Zuffa's potential competitors. *See, e.g.*, *Ridgway v. Wal-Mart Stores, Inc.*, No. 08-cv-05221-SI, 2016 U.S. Dist. LEXIS 94800, at *6 (N.D. Cal. July 20, 2016) (denying a motion to seal where defendant failed to show how it would be harmed and failed to narrowly tailor its redactions). Zuffa has provided no compelling reasons to seal and has not narrowly tailored its requests. It is not the job of the Court (or of Plaintiffs) to ascertain any narrow portions of records Zuffa seeks to seal that are actually trade secrets; that burden lies with Zuffa alone. *See, e.g.*, *Agency Sols. Com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1017 (E.D. Cal. 2011) ("A district court can . . . reject a claim that information is a trade secret *sua sponte* if the information is not identified by the claimant with sufficient particularity to allow the court to determine what the information is.").

### B.   Zuffa Fails to Provide Compelling Reasons to Seal Plaintiffs' Reply

Zuffa relies on unsupported boilerplate assertions that disclosure would harm their business. "An unsupported assertion of unfair advantage to competitors without explaining how a competitor would use the information to obtain an unfair advantage is insufficient." *Hodges*, 2013 U.S. Dist. LEXIS 164674, at *4-5 (citation omitted). "The proponent of sealing . . . must analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations." *Shane,* 825 F.3d at 305-06 (citation omitted). Zuffa fails to satisfy these standards.

Zuffa's requests to seal references to wage share do not provide compelling reasons to seal. Zuffa claims these references "contain highly confidential financial information regarding Zuffa's exact compensation paid to athletes, as well as information about Zuffa's event-level revenue, information which, if disclosed to competitors, could permit those competitors to gain unfair insights into Zuffa's strategic business practices and gain an unearned advantage in competition with Zuffa." Motion to Seal at 5 (referring to a redaction on the first page of Plaintiffs' Reply, "Reply 1"). This justification fails for

**PLAINTIFFS' OPPOSITION TO DEFENDANT ZUFFA, LLC'S MOTION TO SEAL PORTIONS OF PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND RELATED MATERIALS (ECF NO._557)**

three reasons. First, it is wrong on the facts: wage share reveals no information about the "exact compensation paid to athletes" or "event-level revenue." A potential competitor could not deduce or infer Zuffa's athlete compensation or event level revenue from the wage share numbers. The only information a potential competitor could gain from wage share is a sense of the relative size of Zuffa's fighter compensation as compared to its event revenues. Second, as noted above, the sort of information Zuffa has identified is routinely disclosed by market actors, including by public companies in their mandatory filings and by most major sports, which do not keep individual player compensation from the public or competitors. Thus, no potential competitor could "gain unfair insights into Zuffa's strategic business practices" if it was publicly disclosed. Third, Zuffa fails to specify how a potential competitor could use the ratio between its event revenues and its fighter compensation to gain an unfair advantage over Zuffa. Thus, it fails to provide a compelling reason to overcome the "strong presumption of access to judicial records." *Hodges*, 2013 U.S. Dist. LEXIS 164674, at *8 (quoting *Kamakana*, 447 F.3d at 1179).

Similarly, Zuffa argues that references to Dr. Singer's finding of classwide impact "contain analyses based on and derived from Zuffa's highly confidential compensation, event-revenue, and other non-public information and, when combined with other information and analysis, could permit Zuffa's competitors to gain unfair insights into Zuffa's strategic business practices—including reverse engineering regression results and other statistical information—and obtain an unearned advantage in competition with Zuffa." Motion to Seal at 5. Zuffa's assertion is inaccurate because it seeks to seal Dr. Singer's conclusions that reveal no underlying analysis—they simply explain that Dr. Singer's regression shows that "Zuffa ███████████████████████," or "███████████████████████████████." Reply at 2. These statements describe neither the information on which they are based nor the processes Dr. Singer used to arrive at his conclusions. Zuffa fails to identify what information a potential competitor could glean from Dr. Singer's statements or to show how a potential competitor could "reverse engineer" Dr. Singer's conclusions to learn anything of competitive value. Further, even the discussion of Dr. Singer's processes in his reports would not permit the public to "reverse engineer" anything of competitive value, nor has Zuffa explained how that would be possible.

Zuffa also claims that references to the ratio of Zuffa's non-wage costs to its revenues "contain[] information derived from highly confidential internal Zuffa financial information, which is not public,

**PLAINTIFFS' OPPOSITION TO DEFENDANT ZUFFA, LLC'S MOTION TO SEAL PORTIONS OF PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND RELATED MATERIALS (ECF NO. _557)**

and disclosure of this portion of the reply could therefore permit those competitors to gain unfair insights into Zuffa's strategic business practices and gain an unearned advantage in competition with Zuffa." Motion to Seal at 5. But Zuffa again provides no explanation of how a potential competitor could unfairly use this information to undermine its competitive position.

In sum, the vague justifications Zuffa provides for sealing judicial records do not contain the "specific factual findings" (*Kamakana*, 447 F.3d at 1178) or "detail[ed], document by document" analysis required to justify sealing judicial records in an antitrust class action. *Shane*, 825 F.3d 299, 305-06. Accordingly, the Court should deny Zuffa's motion.

### C.  Zuffa Should Not Be Permitted to Invoke Confidentiality Selectively as a Sword and a Shield

Zuffa's selectivity in invoking confidentiality belies its position. It seeks, for example, to seal information about wage share—Plaintiffs' proposed way to analyze Zuffa's conduct on the basis that it contains "highly confidential information regarding Zuffa's exact compensation paid to athletes." *See* Reply at 1, 2, 21, 22. Yet Zuffa has released exactly the sort of purportedly "highly confidential" information it now claims to be protecting when it has suited Zuffa's purposes. For example, Zuffa has disclosed in statements to the press compensation information for certain UFC Fighters, including Wanderlei Silva,[25] Quinton "Rampage" Jackson,[26] Jon Fitch,[27] Donald Cerrone,[28] and Randy Couture.[29] The result is that while Zuffa has been able to present its side of the story, Plaintiffs'

---

[25] *See* Exhibit 3 (Nate Wilcox, *Dana White: 'Wanderlei Silva was paid $9.7 million' by the UFC*, BloodyElbow.com, Sept. 27, 2014, https://sports.yahoo.com/news/dana-white-wanderlei-silva-paid-151631358.html).

[26] *See* Exhibit 21 (Adam Guillen, Jr., *Dana White: Rampage Jackson has made $15.2 million in career earnings fighting for UFC*, MMAMania.com, Jan. 24, 2013, https://www.mmamania.com/2013/1/24/3913294/dana-white-rampage-jackson-career-earnings-ufc-millions).

[27] *See* Exhibit 22 ( John Morgan, *Dana White: 'Delusional' Jon Fitch made $302K in UFC discretionary bonus money*, MMAJunkie.com, June 7, 2013, https://mmajunkie.com/2013/06/dana-white-delusional-jon-fitch-made-302k-in-ufc-discretionary-bonus-money).

[28] *See* Exhibit 23 ( Jason Nawara, *Dana White Believes Donald Cerrone Is Getting Paid Plenty By The UFC, Thanks Very Much*, Uproxx.com, June 22, 2016, https://uproxx.com/sports/donald-cerrone-ufc-pay-complaint-dana-white/).

[29] *See* Exhibit 24 (Adam Guillen, Jr., – *UFC DISPUTES COUTURE'S CLAIMS ABOUT HIS PAY*, MMAWeekly.com, Oct. 30, 2007, https://www.mmaweekly.com/ufc-disputes-coutures-claims-about-his-pay-2).

criticism of Zuffa's anticompetitive conduct has been locked behind Zuffa's confidentiality designations. Zuffa provides no explanation as to why aggregate information about its wage share is any more likely to give its potential competitors an unfair strategic advantage than the wage information Zuffa has chosen to make public. The truth is that revealing information about wage share would not cause Zuffa any unfair competitive harm. It would just reveal the strength of Plaintiffs' antitrust claims.

In reality, then, Zuffa's over-designation of materials as confidential is not designed to protect it from unfair competition but rather to shield its anticompetitive actions from public scrutiny—and, worse yet, to provide a biased set of facts designed to cast its conduct in a falsely flattering light. That is improper. In antitrust cases, "the public's interest is focused not only on the result, but also on the conduct giving rise to the case. In those cases, secrecy insulates the participants, masking impropriety, obscuring incompetence, and concealing corruption." *Shane*, 825 F.3d at 305 (citation omitted). By attempting to seal non-confidential documents and information Zuffa is attempting to "mask[] impropriety [and] conceal[] corruption." *Id.* This Court should not allow Zuffa to game the system in that way.

Indeed, even the information that Zuffa falsely claims can be "reverse engineered" from wage share—information, for example, about the amounts it pays particular fighters—isn't as sensitive as Zuffa claims. We know that because Zuffa reveals that information when it serves its purpose to do so. *See, supra,* nn. 22-26, and accompanying text. Zuffa revealed highly specific information about how much it was paying some of its top fighters, which—unlike the materials Zuffa asks the Court to seal here—a potential competitor *could* have used to try to lure away fighters (if any promotion were in a position to do so). Yet Zuffa voluntarily disclosed that information. Here Zuffa asks the Court to seal all references to Zuffa's wage share, even though Zuffa has not shown and cannot show how a potential competitor might use this information to harm its business unfairly. Zuffa's attempt to gain an advantage by using confidentiality as both a shield and a sword should not be countenanced.

Zuffa also asks the Court to seal statements about its exclusive contracts: "documentary evidence confirms Zuffa and other industry participants ███████████████████████████████ ████████████████████████████████████. Dr. Topel himself *admitted* that ████████████ ████████████████████████████████████████████.'" Reply at p. 10:2-5

(citations omitted). Zuffa does not explain how this information would give its potential competitors an unfair strategic advantage they would not otherwise have. Of course Zuffa's potential competitors know that Zuffa has exclusive contracts. That is the point of them—to prevent Zuffa's fighters from signing with other promoters. It is not credible that other promoters were unaware of this exclusivity—that they never knew that Zuffa fighters compete only for Zuffa or were locked into long-term deals with ███

██████.[30] Indeed, Zuffa frequently makes public statements about the nature of its contracts. For example, when told that Conor McGregor said he might negotiate a fight with Floyd Mayweather outside the auspices of the UFC, Dana White responded, "It will never happen; that's not even possible. He's under contract with us . . . . And if that's what Conor wants to do, he's got four fights left. He's got four fights left with the UFC. Fight your four fights and, you know, go out and do what you want to do."[31] In another example, asked about rumors that McGregor was planning to fight boxer Manny Pacquiao, UFC President Dana White responded, "That would be weird, because he's under contract with us. If that's true, I'll be suing Manny Pacquiao and whoever's representing him."[32] In another example, after UFC fighter Georges St. Pierre told reporters he had terminated his Zuffa contract, Zuffa responded, "Georges St-Pierre remains under an existing agreement with Zuffa, LLC as his MMA promoter. Zuffa intends to honor its agreement with St-Pierre and reserves its rights under the law to have St-Pierre do the same."[33]

        White has also emphatically demonstrated Zuffa's monopsony power in statements meant to keep fighters in line. On May 27, 2018, Zuffa President Dana White told reporters that he cut highly-ranked featherweight prospect Yair Rodriguez because: "We offered him fights, he turned down the

---

[30] In fact, as noted above, Zuffa's standard fighter contract has been published in the press, and Zuffa's competitors are presumably well aware of its terms. *See* fn. 14, *supra*.

[31] See Exhibit 25, Patrick McCrary, *Dana White reveals how many fights Conor McGregor has left on his UFC contract*, Sporsjoe.ie, Feb. 2017, available at https://www.sportsjoe.ie/mma/dana-white-reveals-many-fights-conor-mcgregor-left-ufc-contract-112574.

[32] See Exhibit 26, Andrew Pearson, UFC Fresno, *The Morning After: Dana White says he will sue Pacquiao if McGregor rumors are true*, MMAMania.com, Dec. 10, 2017, available at https://www.mmamania.com/2017/12/10/16758194/ufc-fresno-the-morning-after-dana-white-says-he-will-sue-pacquiao-if-mcgregor-rumors-are-true.

[33] See Exhibit 27, Brett Okamoto, *Georges St-Pierre says he legally terminated his contract with UFC*, ESPN.com, Oct. 19, 2016, available at http://www.espn.com/mma/story/_/id/17818697/georges-st-pierre-says-legally-terminates-contract-ufc.

fights."[34]

So Zuffa's exclusive contracts and their bullying of fighters is not confidential. Zuffa has already revealed all of that, and has done so intentionally to intimidate its fighters. What Zuffa's attempt to seal documents can achieve, however, is to prevent the press, the public, the named Plaintiffs, and Class members from understanding the strength of Plaintiffs' antitrust claims in context. Zuffa seeks to obscure what Plaintiffs' analysis, evidence in the case, and expert testimony show: that the right way to assess Zuffa's monopsony power, including from its exclusive contracts, is to use wage share—the proportion of its event revenues it paid it fighters; that if not for Zuffa's exclusive contracts, it would have paid its fighters ███ or more of its event revenues rather than ███ or less of its event revenues, as it has done; and that Zuffa's suppression of fighter compensation has harmed ████████████. That information will not give other promoters an unfair strategic advantage against Zuffa, but it will allow an accurate assessment of the strength of Plaintiffs' antitrust case. Depriving the press, the public, the named Plaintiffs, and Class members of the ability to make that assessment—which is what Zuffa's selective confidentiality reveals it is doing—is not a legitimate basis for sealing court documents. *Kamakana*, 447 F.3d at 1179 ("The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records.") (citation omitted).

## IV.    CONCLUSION

For the reasons stated above, this Court should deny Zuffa's Motion to Seal portions of Plaintiffs' Reply and supporting documents, with the exception of testimony or documents from third parties that they designated as confidential.

---

[34] *See* Exhibit 28, Anton Tabuena, *White tells fighters to learn from Yair Rodriguez: When I offer you a fight you should probably take it*, BloodyElbow.com, May 30, 2018, available at https://www.bloodyelbow.com/2018/5/30/17404126/white-tells-fighters-to-learn-from-yair-rodriguez-when-i-offer-you-a-fight-take-it-mma-ufc.

Dated:  June 19, 2018

Respectfully Submitted,
JOSEPH SAVERI LAW FIRM, INC.


By:              */s/Kevin E. Rayhill*
                      Kevin E. Rayhill

Joseph R. Saveri (admitted *pro hac vice*)
Joshua P. Davis (admitted *pro hac vice*)
Kevin E. Rayhill (admitted *pro hac vice*)
Jiamin Chen (admitted *pro hac vice*)
601 California Street, Suite 1000
San Francisco, California 94108
Phone: (415) 500-6800/Fax: (415) 395-9940
jsaveri@saverilawfirm.com
jdavis@saverilawfirm.com
krayhill@saverilawfirm.com
jchen@saverilawfirm.com

*Co-Lead Counsel for the Classes and Attorneys for
Individual and Representative Plaintiffs Cung Le, Nathan
Quarry, Jon Fitch, Luis Javier Vazquez, Brandon Vera,
and Kyle Kingsbury*

COHEN MILSTEIN SELLERS & TOLL, PLLC
Benjamin D. Brown (admitted *pro hac vice*)
Richard A. Koffman (admitted *pro hac vice*)
Daniel H. Silverman (admitted *pro hac vice*)
1100 New York Ave., N.W., Suite 500, East Tower
Washington, DC 20005
Phone: (202) 408-4600/Fax: (202) 408 4699
bbrown@cohenmilstein.com
rkoffman@cohenmilstein.com
dsilverman@cohenmilstein.com

*Co-Lead Counsel for the Classes and Attorneys for
Individual and Representative Plaintiffs Cung Le, Nathan
Quarry, Jon Fitch, Luis Javier Vazquez, Brandon Vera,
and Kyle Kingsbury*

BERGER & MONTAGUE, P.C.
Eric L. Cramer (admitted *pro hac vice*)
Michael Dell'Angelo (admitted *pro hac vice*)
Patrick Madden (admitted *pro hac vice*)
Mark R. Suter (admitted *pro hac vice*)
1622 Locust Street
Philadelphia, PA 19103
Phone: (215) 875-3000/Fax: (215) 875-4604
ecramer@bm.net
mdellangelo@bm.net
pmadden@bm.net
msuter@bm.net

*Co-Lead Counsel for the Classes and Attorneys for
Individual and Representative Plaintiffs Cung Le, Nathan
Quarry, Jon Fitch, Luis Javier Vazquez, Brandon Vera,
and Kyle Kingsbury*

WOLF, RIFKIN, SHAPIRO,
SCHULMAN & RABKIN, LLP
Don Springmeyer
Nevada Bar No. 1021
Bradley S. Schrager
Nevada Bar No. 10217
Justin C. Jones
Nevada Bar No. 8519
3556 E. Russell Road, Second Floor
Las Vegas, Nevada 89120
(702) 341-5200/Fax: (702) 341-5300
dspringmeyer@wrslawyers.com
bschrager@wrslawyers.com
jjones@wrslawyers.com

*Liaison Counsel for the Classes and Attorneys for
Individual and Representative Plaintiffs Cung Le, Nathan
Quarry, Jon Fitch, Luis Javier Vazquez, Brandon Vera,
and Kyle Kingsbury*

Case No.: 2:15-cv-01045 RFB-(PAL)
**PLAINTIFFS' OPPOSITION TO DEFENDANT ZUFFA, LLC'S MOTION TO SEAL PORTIONS OF PLAINTIFFS' REPLY
IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND RELATED MATERIALS (ECF NO._557)**

WARNER ANGLE HALLAM JACKSON &
FORMANEK PLC
Robert C. Maysey (admitted *pro hac vice*)
Jerome K. Elwell (admitted *pro hac vice*)
2555 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Phone: (602) 264-7101/Fax: (602) 234-0419
rmaysey@warnerangle.com
jelwell@warnerangle.com

*Counsel for the Classes and Attorneys for Individual and*
*Representative Plaintiffs Cung Le, Nathan Quarry, Jon*
*Fitch, Luis Javier Vazquez, Brandon Vera, and Kyle*
*Kingsbury*

LAW OFFICE OF FREDERICK S. SCHWARTZ
Frederick S. Schwartz (admitted *pro hac vice*)
15303 Ventura Boulevard, #1040
Sherman Oaks, CA 91403
Phone: (818) 986-2407/Fax: (818) 995-4124
fred@fredschwartzlaw.com

*Attorney for Plaintiffs*

SPECTOR ROSEMAN KODROFF & WILLIS, P.C.
Jeffrey J. Corrigan (admitted *pro hac vice*)
William G. Caldes (admitted *pro hac vice*)
1818 Market Street – Suite 2500
Philadelphia, PA 19103
Phone: (215) 496-0300/Fax: (215) 496-6611
jcorrigan@srkw-law.com
wcaldes@srkw-law.com

*Attorneys for Plaintiffs*

Case No.: 2:15-cv-01045 RFB-(PAL)

**PLAINTIFFS' OPPOSITION TO DEFENDANT ZUFFA, LLC'S MOTION TO SEAL PORTIONS OF PLAINTIFFS' REPLY
IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND RELATED MATERIALS (ECF NO._557)**

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 19th day of June, 2018 true and correct copies of the following document was served via the District of Nevada's ECF system to all counsel of record who have enrolled in the ECF system:

- **PLAINTIFFS' CORRECTED OPPOSITION TO DEFENDANT ZUFFA, LLC'S MOTION TO SEAL PORTIONS OF PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND RELATED MATERIALS (ECF NO._557).**

By:

                                        */s/ Kevin E. Rayhill*