# EXHIBIT 14

## Redacted Excerpts from Deposition of Michael Mersch

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

CUNG LE; NATHAN QUARRY, JON FITCH, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

ZUFFA, LLC, d/b/a Ultimate Fighting Championship and UFC,

Defendant.

Case No. 2:15-cv-01045-RFB-(PAL)

C O N F I D E N T I A L

VIDEOTAPED DEPOSITION OF

MICHAEL P. MERSCH

MORNING SESSION (PAGES 1 to 332)

LAS VEGAS, NEVADA

JULY 14, 2017

8:05 a.m.

REPORTED BY:
CYNTHIA K. DuRIVAGE, CSR #451
JOB NO. 51253-A

standardized or typical type bucket of what is an expected business life cycle because it is a very obviously nuanced industry, a very unique industry that has its own, as I mentioned earlier, factors that go into, you know, the development of a company, the development of the value or the following of a promotion.

So there's so many factors that go into it. But yes, I mean, I think in general you could say that a newer organization is going to have more growing pains than one that has more experience.

**Q. Can you describe the factors that make the MMA promotion industry a unique industry?**

A. I think that's -- I think that's an extremely complicated question.

I think -- well, certainly, the -- you know, the matchups that exist, as I mentioned earlier, the individuals that are participating on the card, I think, is probably arguably the most important thing in how well those matchups are put together, how compelling the matchup between fighter A and fighter B is, I think is, and has always been going back 200 years in boxing, you know, the most important factor.

But there are a number of factors, and you

know, when I say some of these might be common sense, they're really that.

If you have fighter A from, you know, Dallas, Texas, it makes sense that putting on an event in Dallas, Texas involving fighter A might be more appealing to the fans who might buy tickets in Dallas, Texas. So location is a big factor.

And again, there are any number of factors, including, you know, style issues, matchup issues, previous history issues.

So again, I think that the question is impossible to answer with any specific detail because there are just too many factors that would go into you know -- in other words, if it was easy to distill that down into a bottle, everybody would be doing it.

**Q. So it's difficult to get into the business?**

A. Not at all.

MR. WILLIAMS: Objection to the form of the question.

BY MR. CRAMER:

**Q. Well, you said if it was easy, everybody would be doing it.**

A. I did not say that.

**Q. You said if it was easy to distill it into a bottle, everybody would be doing it.**

A. But "it" in my reference there was in putting together the various ingredients that go into putting together a successful MMA promotion. It had nothing do with getting into or attempting to become an MMA or a combat sports promoter.

**Q. It's relatively easy to say, "I'm a promoter"; it's hard to succeed at it is what you're saying?**

A. I think it's hard to succeed in any business. I think without, you know, putting together the right, you know, series of factors, you know, given -- given various factors in, you know, in the lifestyle of a different company like Starbucks or Amazon, they might not be successful, but they were able to come together and put together the right ingredient of price and cost and deliverable factors that made them appealing and has turned them into very successful business.

**Q. But one of the factors that would make an MMA promotion a successful business is the ability to have a sufficient number of fighters under contract that you can put together compelling fights, correct?**

A. I would agree that you have to have compelling matchups and compelling fights to, you know, generally succeed in MMA combat sports.

**Q. If you only had one top fighter and nobody to set up against that one top fighter, you're going to struggle as an MMA promoter; you need more than one, correct?**

A. By definition and by pursuant to the rules of every athletic commission on the planet, you cannot have one person in a combat sports event.

**Q. Right, but you can have lots of different people who are MMA fighters but not necessarily at the level of the top guy that you have. You need other top guys to create compelling matchups?**

A. You need to have compelling fights, whether that's a top person against a top person, a mid-tier fighter against a mid-tier fighter or a novice fighter against a novice fighter.

The important thing, back to my earlier comments, are about proper matchups, starting at all times and being at all times mindful of the health and safety aspects of matching up fighters.

**Q. Right. So mindful of health and safety of fighters, you can't just match up a champion contender with some guy who just joined MMA fighting, that might not even get approved?**

A. In my -- in my experience, working with virtually every athletic commission in the country,

326

[redacted]

328

[redacted]

MR. CRAMER: All right. Let's go off the record.

THE VIDEOGRAPHER: We are off the record, 4:12 p m.

(There was a recess taken.)

(Whereupon, Court Reporter Cynthia K. DuRivage was relieved by Court Reporter Jualita Stewart, the transcript of which is contained in a separate booklet.)

* * * * *

327

[redacted]

329

STATE OF ______________ )
) :ss
COUNTY OF ______________)

I, MICHAEL P. MERSCH, the witness herein, having read the foregoing testimony of the pages of this deposition, do hereby certify it to be a true and correct transcript, subject to the corrections, if any, shown on the attached page.

______________________
MICHAEL P. MERSCH

Sworn and subscribed to before me, this day of , 2017.

______________________
Notary Public

CERTIFICATE OF REPORTER

I, Cynthia K. DuRivage, a Certified Shorthand Reporter of the State of Nevada, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were duly sworn; that a record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction; that the foregoing transcript is a true record of the testimony given.

I further certify I am neither financially interested in the action nor a relative or employee of any attorney or party to this action.

Reading and signing by the witness was requested.

IN WITNESS WHEREOF, I have this date subscribed my name.

Dated: August 1, 2017

____________________________

CYNTHIA K. DuRIVAGE
CCR No. 451

INSTRUCTIONS TO WITNESS

Please read your deposition over carefully and make any necessary corrections. You should state the reason in the appropriate space on the errata sheet for any corrections that are made.

After doing so, please sign the errata sheet and date it.

You are signing same subject to the changes you have noted on the errata sheet, which will be attached to your deposition.

It is imperative that you return the original errata sheet to the deposing attorney within thirty (30) days of receipt of the deposition transcript by you. If you fail to do so, the deposition transcript may be deemed to be accurate and may be used in court.

E R R A T A

I wish to make the following changes, for the following reasons:

PAGE LINE
___ ___ CHANGE:________________________
REASON:________________________________
___ ___ CHANGE:________________________
REASON:________________________________
___ ___ CHANGE:________________________
REASON:________________________________
___ ___ CHANGE: ________________________
REASON:________________________________
___ ___ CHANGE: ________________________
REASON:________________________________
___ ___ CHANGE: ________________________
REASON:________________________________

________________________ ____________
WITNESS' SIGNATURE DATE

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

CUNG LE; NATHAN QUARRY, JON FITCH, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

ZUFFA, LLC, d/b/a Ultimate Fighting Championship and UFC,

Defendant.

Case No. 2:15-cv-01045-RFB-(PAL)

C O N F I D E N T I A L

VIDEOTAPED DEPOSITION OF

MICHAEL P. MERSCH

AFTERNOON AND EVENING SESSIONS (PAGES 333 to 496)

LAS VEGAS, NEVADA

JULY 14, 2017

4:43 p.m.

Reported by:
Jualitta Stewart, CCR No. 807, RPR
Job No. 51253-B

474

476

475

**Q. And economic says that when you raise the price of something, people buy less of it, right?**

A. Well, I don't know, which economist is saying that? I suppose --

**Q. Every single one. Price -- it's supply and demand. Prices go up, demand goes down.**

477

478

[redacted]

**Q. Do you have any recollection at any time that Zuffa went to any fighter and said "as a result of you losing independent sponsorships because of our sponsorship policy, we're going to increase your bout compensation by 25 percent"?**

A. I have no knowledge whether that did or did not occur.

**Q. You think it might have occurred?**

A. I don't know. I have no independent recollection that it occurred, but I have no idea that it didn't occur.

**Q. So you think it was possible that Zuffa had a sponsorship offset policy where it went around modifying every fighters' contract to add additional revenues in order to make up for lost sponsorship monies and you just didn't know it happened?**

MR. WILLIAMS: Object to the form of the

479

question.

THE WITNESS: I think that the UFC created a multitude of different opportunities for fighters that allowed them to enhance their revenue streams in a multitude in different ways.

So it just depends on the -- you know, the nature. Again, it's a short-term analysis versus long-term analysis. Again, as to the business reasons or rationale for why those decisions were made, I would refer you to Mr. Fertitta and Mr. White.

BY MR. CRAMER:

**Q. You can put that document aside. I asked the court reporter to mark as the next document Mersch 44. I think it's in front of you.**

**Do you have it?**

A. Yes, sir.

**Q. It's a two-page series of e-mails bearing the Bates range ZFL-1009561.**

MR. WILLIAMS: Counsel, can we get a copy?

MR. CRAMER: Oh, yes. Sorry. Here you go.

MR. WILLIAMS: Thanks.

///

480

BY MR. CRAMER:

**Q. So it's a two-page series of e-mails. It bears the Bates range ZFL-1009561 through 9562.**

[redacted]

481

[redacted]

490

[redacted]

491

[redacted]

MR. CRAMER: All right. That's all the questions I have. Thank you.

THE VIDEOGRAPHER: Questions?

MR. CRAMER. No questions.

THE VIDEOGRAPHER: This concludes today's deposition of Michael Mersch. Total number of media used is seven.

We are off the record at 8:27 p m.

(Thereupon, the taking of the deposition concluded at 8:27 p m.)

492

STATE OF _____________ )
) :ss
COUNTY OF _____________)

I, MICHAEL P. MERSCH, the witness herein, having read the foregoing testimony of the pages of this deposition, do hereby certify it to be a true and correct transcript, subject to the corrections, if any, shown on the attached page.

_____________________
MICHAEL P. MERSCH

Sworn and subscribed to before me, this day of , 2017.

_____________________
Notary Public

493

REPORTER'S DECLARATION

STATE OF NEVADA )
) ss
COUNTY OF CLARK )

I, Jualitta Stewart, a duly commissioned Notary Public, Clark County, State of Nevada, do hereby certify:

That I reported the taking of the deposition of the witness, MICHAEL P. MERSCH, commencing on Friday, July 14, 2017, at the hour of 4:43 p.m.

That prior to being examined, the witness was by me duly sworn to testify to the truth, the whole truth, and nothing but the truth.

That I thereafter transcribed my said shorthand notes into typewriting and that the typewritten transcript of said deposition is a complete, true, and accurate transcription of said shorthand notes taken down at said time.

I further certify that I am not a relative or employee of any party involved in said action, nor a person financially interested in the action.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal in my office in

the County of Clark, State of Nevada, this 1st day of August, 2017.

JUALITTA STEWART, RPR, CCR No. 807

INSTRUCTIONS TO WITNESS

Please read your deposition over carefully and make any necessary corrections. You should state the reason in the appropriate space on the errata sheet for any corrections that are made.

After doing so, please sign the errata sheet and date it.

You are signing same subject to the changes you have noted on the errata sheet, which will be attached to your deposition.

It is imperative that you return the original errata sheet to the deposing attorney within thirty (30) days of receipt of the deposition transcript by you. If you fail to do so, the deposition transcript may be deemed to be accurate and may be used in court.

E R R A T A

I wish to make the following changes, for the following reasons:

PAGE LINE

___ ___ CHANGE:_________________________

REASON:_________________________________

___ ___ CHANGE:_________________________

REASON:_________________________________

___ ___ CHANGE:_________________________

REASON:_________________________________

___ ___ CHANGE: _________________________

REASON:_________________________________

___ ___ CHANGE: _________________________

REASON:_________________________________

___ ___ CHANGE: _________________________

REASON:_________________________________

________________________ ____________

WITNESS' SIGNATURE DATE