# EXHIBIT 105

**Redacted Excerpts of Plaintiffs' First Amended Answers to Defendant Zuffa, LLC's First Set of Interrogatories to Plaintiffs**

1  **BERGER & MONTAGUE, P.C.**
   Eric L. Cramer *(pro hac vice)*
2  Michael Dell'Angelo *(pro hac vice)*
   Patrick F. Madden *(pro hac vice)*
3  1622 Locust Street
   Philadelphia, PA 19103
4  Telephone: (215) 875-3000
   Fax: (215) 875-4604
5  ecramer@bm.net
   mdellangelo@bm.net
6  pmadden@bm.net

7  *(Additional counsel appear on signature page)*

8  *Attorneys for Individual and Representative Plaintiffs*
   *Cung Le, Nathan Quarry, Jon Fitch, Luis Javier Vazquez,*
9  *Brandon Vera and Kyle Kingsbury*

10                    UNITED STATES DISTRICT COURT

11                         DISTRICT OF NEVADA

12

13  Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera,    Case No. 2:15-cv-01045-RFB-(PAL)
    Luis Javier Vazquez, and Kyle Kingsbury, on
14  behalf of themselves and all others similarly       **FIRST AMENDED ANSWERS TO**
    situated,                                           **DEFENDANT ZUFFA, LLC'S FIRST**
15                                                      **SET OF INTERROGATORIES TO**
                         Plaintiffs,                    **PLAINTIFFS LE, QUARRY, FITCH,**
16                                                      **VERA, VAZQUEZ AND KINGSBURY**
          v.
17
    Zuffa, LLC, d/b/a Ultimate Fighting
18  Championship and UFC,

19                       Defendant.

20

21        Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and

22  Kyle Kingsbury, ("**Plaintiffs**"), through the undersigned counsel, hereby responds to Defendant

23  Zuffa, LLC's ("**Zuffa**" **or "UFC"**) First Set of Interrogatories, dated July 22, 2016, as follows:

24                               **PRELIMINARY STATEMENT**

25        The following responses are made solely for the purpose of and in relation to the

26  captioned lawsuit. These responses are given without prejudice to Plaintiffs' right to produce

27  evidence of any subsequently discovered or recalled facts, and Plaintiffs reserve the right to

28

**INTERROGATORY NO. 5 (Common and Individual Answers):**

**IDENTIFY** each instance where **ZUFFA** enforced or threatened to enforce the terms in any signed **AGREEMENT** between **YOU** and **ZUFFA**.

**ANSWER:**

In addition to the General Objections set forth above, Plaintiffs object to this Interrogatory on the grounds that this information is known to and equally available to Zuffa. Subject to those objections, Plaintiffs respond to Interrogatory No. 5 as follows:

**Plaintiffs' Common Response:**

As set out in the Consolidated Complaint, Zuffa's actual and threatened enforcement of certain provisions in the contracts that Zuffa had with UFC Fighters (including the Contracts), taken together, form a material part of the UFC's anticompetitive scheme to impair actual or potential rivals and thereby enhance the UFC's monopoly and monopsony power, which scheme has allowed Zuffa to artificially suppress compensation to its Fighters for bouts and identity rights.

Notwithstanding that Plaintiffs' claims are not solely based on any particular contract or provision of their contracts with the UFC, but are instead based (in part) on all of Zuffa's Fighter Contracts taken together, Zuffa enforced its contracts with UFC Fighters (including the Contracts) by, *inter alia*, (a) presenting them in more or less take it or leave it fashion and letting it be known that negotiations were futile and/or punishing to those who even sought to negotiate key terms, (b) using its anticompetitive scheme to systematically eliminate rival MMA promotions, thereby eliminating options for Fighters to work with viable or successful rival promotions, (c) providing various penalties for non-performance in its contracts, and (d) earning a reputation for vindictiveness against Fighters who sought to challenge Zuffa's business practices, negotiate for more favorable business terms, or who agreed to, or even suggested that they would, fight for a rival promotion. For example, Zuffa's Promotion and Ancillary Rights Agreement "mandates that a bout agreement be executed for every bout." The Bout Agreements granted to Zuffa ███████████████████████████████████████████████████████

1 ████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████████

5 ███████████████████████████████████████████ The Promotion and

6 Ancillary Rights Agreement stated, falsely, that ███████████████████████

7 ████████████████████████████████████████████████████████

8 ███████████████████████████████ But the Bout Agreements required exactly this grant

9 of rights before UFC Fighters could fight.

10      Before UFC Fighters could engage in a bout, Zuffa required that each Fighter represent

11 that ████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████

14 ████████████████ The Terms of the Promotion and Ancillary Rights Agreement were denominated

15 in number of Bouts in addition to time, and Zuffa controlled the timing of Bouts. Similarly,

16 Zuffa forbade UFC Fighters from entering into an ██████████████████████████

17 ████████████████████████████████████████████████████████

18 which included the grant of certain of UFC Fighters' identity rights in perpetuity. Through these

19 provisions, Zuffa provided additional restrictions on UFC Fighters' ability to contract with

20 another promoter, and ensured that UFC Fighters would be less desirable as potential profit

21 centers to actual or potential rival promoters.

22      Zuffa made it clear to UFC Fighters that if they did not sign the Contracts essentially as

23 presented, they could not fight in the UFC. UFC Fighters understood further that, as a result of

24 the anticompetitive scheme alleged herein, if they could not fight in the UFC, they had few if any

25 other options to fight at the elite level of professional MMA. Moreover, UFC Fighters

26 understood that if they did not sign their Bout Agreements effectively as presented, Zuffa would

27 engage in tactics to punish the Fighter, including by unilaterally extending the term of the then-

28

effective Promotional and Ancillary Rights Agreement and precluding them from fighting for another MMA Promoter. Zuffa, thus, made it clear to UFC Fighters through its words and actions that they had little or no choice to but accept the onerous and one-sided terms offered by Zuffa. UFC Fighters understood further that the absence of viable alternatives to fighting in the UFC was the intended effect of Zuffa's anticompetitive scheme.

In addition to the above, when Fighters attempted to negotiate parts of their Contracts or seek relief from their onerous and anticompetitive provisions, Zuffa responded with threats and intimidation. Zuffa made it known to Fighters, for instance, that they had no choice but to accept the Bout matchups offered by Zuffa. Fighters understood that Zuffa had threatened Fighters with termination if they merely attempted to negotiate terms of their Contracts, and understood further that Zuffa responded to Fighters' seeking relief from onerous contractual terms or conditions with threats and intimidation, as part of its anticompetitive scheme to ensure that its exclusionary Contracts were enforced and that Zuffa's exclusivity over the vast majority of Elite MMA Fighters was preserved.

Zuffa used threats and intimidation in response to Fighters who complained about their contracts. This practice was well-known in the industry, and it prevented Fighters—including Plaintiffs—from attempting to negotiate the terms of their contracts.

Zuffa released Plaintiff Jon Fitch because he objected to the provision in its contracts that requires Fighters to assign likeness rights in perpetuity, with no residual rights accruing to family members in the event of death, for little to no compensation. Plaintiffs are also aware that Jon Fitch's entire team at the American Kickboxing Academy (AKA) was threatened with release if even one member of the team refused to sign the assignments. As Zuffa President, White proclaimed in an interview with Yahoo Sports:

"Affliction is still out there trying to build its company. Let [Fitch] go work with them. Let him see what he thinks of those [expletives]. [Expletive] him. These guys aren't partners with us. [Expletive] them. All of them, every last [expletive] one of them."

White continued by threatening other members of the AKA team:

"Chuck Liddell has that language in his contract. Randy Couture has it. Anderson Silva has it. And Cain [expletive] Velasquez, with two [expletive] fights, wants us to change it for him? That's [expletive] nuts. He can get the [expletive] out."

As alleged, Zuffa punished UFC legend Randy Couture when he "refused to assign his Ancillary Rights and, instead, attempted to negotiate control over his Identity" by airbrushing him out of UFC advertisements and refusing to promote his fights, even though he was under contract with the UFC. *See* CC ¶ 119. Additionally, Couture was unsuccessful in negotiating a higher pay for himself following a widely-viewed bout in August 2007. When Couture attempted to fight for HDNet, another promoter, Zuffa successfully sued to enforce its anticompetitive contracts and forced Couture to end the arrangement. By this action, Zuffa prevented an emerging competitor from obtaining the Elite MMA Fighters it needed, and put HDNet out of business. *See* CC ¶ 130(b).

Zuffa similarly attacked UFC Fighter, BJ Penn, when Penn indicated he would try to negotiate higher pay from another promotion, K-1, after a big victory in a UFC Bout. K-1 offered Penn five times what the UFC was paying him per fight. White told Penn that Penn was "f***ing done! You'll never fight in the UFC again! You're finished. You're scorched earth, motherf***er. Scorched earth. Don't call me crying saying you want to come back because your f***ing done." *Id.*, ¶ 118. Zuffa took the position that Penn's contract was automatically extended, and breached, and stripped him of his UFC title.

As part of its scheme involving Fighter intimidation, Zuffa also engaged in the practice of "benching" Fighters with as little as one fight left on their Promotion and Ancillary Rights contracts, and providing unfavorable matchups if the Fighter refused to sign a new Promotion and Ancillary Rights Agreement with Zuffa. Being "benched" essentially meant that a Fighter would be forced to sit out for a lengthy period of time prior to being given the last fight on his or her contract. Given that the Terms of the Bout Agreements were denominated in number of Bouts in addition to time, and given that Zuffa controlled the timing of the Bouts and the identity and quality of the opponents, Zuffa could essentially use "benching" as a means to punish

Fighters for disobeying, or for seeking to negotiate better terms, or simply to prevent Fighters from fighting for rival promoters or even from negotiating with rival promoters.

Moreover, as part of its scheme involving intimidation, Zuffa regularly attacked the character of UFC athletes, including Randy Couture, BJ Penn, Jon Jones, Jose Aldo, Quinton Jackson, and Tito Ortiz, all in order to obtain an advantage in contractual negotiations. Zuffa would attack the character of athletes attempting to leave the UFC, by having Dana White criticize the Fighter in the media. These threats served to block Fighters from attempting to negotiate with Zuffa for better terms, and impaired rival MMA promotions from engaging with or retaining UFC Fighters.

As a further effort to consolidate control over its Fighters, and prevent competitors from having access to the inputs they needed to successfully challenge Zuffa, Zuffa commonly made Fighters in the same training group fight one another. Elite MMA Fighters often train in teams at gyms. These arrangements allow Fighters to have training and sparring partners. A successful training team is a threat to Zuffa because Zuffa feared these teams could amass power and provide desirable inputs for rival promoters. If teams were smaller and less cohesive, they posed less of a threat to Zuffa, and thus Zuffa used these and other predatory tactics to undermine the cohesiveness of MMA training teams.

**Plaintiff Fitch:**

Zuffa released Plaintiff Fitch because he objected to the provision in its contracts that requires Fighters to assign likeness rights in perpetuity, with no residual rights accruing to family members in the event of death, for little to no compensation. Zuffa went on to threaten Plaintiff Fitch's entire team at the American Kickboxing Academy, a well-known training gym in San Jose, California, with release if even one member of the team refused to sign the assignments in Zuffa's Contracts. As Zuffa President White proclaimed in an interview with Yahoo Sports:

"Affliction is still out there trying to build its company. Let [Fitch] go work with them. Let him see what he thinks of those [expletives]. [Expletive] him. These guys aren't partners with us. [Expletive] them. All of them, every last [expletive] one of them."

White continued by threatening other members of the AKA team:

> "Chuck Liddell has that language in his contract. Randy Couture has it. Anderson Silva has it. And Cain [expletive] Velasquez, with two [expletive] fights, wants us to change it for him? That's [expletive] nuts. He can get the [expletive] out."

On November 19, 2008, following Plaintiff Fitch's attempt to negotiate these provisions, the UFC sent Fitch a letter notifying him of his release from the UFC. Zuffa also threatened Christian Wellisch, another member of the AKA team, and other members of the team with future release from the UFC as retaliation for trying to negotiate better terms.

In addition to the foregoing, Michael Mersch, the former Senior Vice President of Business, Legal and Government Affairs and Assistant General Counsel of Zuffa, demanded that Plaintiff Fitch "cease and desist" and not make an appearance at a local promotion in Texas advertising the appearances of "UFC Fighters" Jon Fitch and Mike Swick.

Plaintiff Fitch is also aware of other instances where Zuffa prevented UFC Fighters, including Mike Swick, from wearing their sponsor's clothing (including the DeThrone brand) while attending a sponsor event.

**Plaintiff Kingsbury:**

Plaintiff Kingsbury lost his best sponsor, a nutritional company called SNAC, because the UFC entered into their own exclusive deal with competitor BSN.

Zuffa offered Plaintiff Kingsbury a fight against Glover Teixeira. When Plaintiff Kingsbury declined, Zuffa told him that this "is the fight you have to take." Plaintiff Kingsbury accepted because he had no choice.

Plaintiff Kingsbury was advised by UFC Vice President for Talent Relations Joe Silva not to attempt to negotiate opponents by stating: "If you don't like the first opponent I offer you, you sure as hell will not like the second."

**Plaintiff Le:**

Zuffa used veiled threats to force Plaintiff Le to fight while Le was injured. After Plaintiff Le's bout against Patrick Cote on July 7, 2012, UFC President intervened during a post-

fight interview and said "Cung will go home, rest for a week and start training to fight Rich Franklin in Macao." Plaintiff Le was in San Jose at the UFC Fuel TV 4 fight in a walking boot on July 11, 2012 - four days after his fight with Patrick Cote. UFC President Dana White informed Plaintiff Le that "we need you to step up for the company." Plaintiff Le had a private meeting with UFC President Dana White and Chief Executive Officer Lorenzo Fertitta in Los Angeles, California on August 4, 2012 and President White again informed Plaintiff Le that "we need you to step up for the company." Plaintiff Le advised President Dana White that he was not medically cleared to fight yet and would check with is doctor. Despite Plaintiff Le stating that he was not medically cleared to fight, the UFC announced later that same evening of August 4, 2012 that Plaintiff Le was fighting Rich Franklin in Macao on November 10, 2012.

Plaintiff Le informed Zuffa that he could not report for duties on the "The Ultimate Fighter-China" because his spouse was in surgery in the United States and he needed to be with her and his family. Plaintiff Le called UFC President White to request an extension of time from Zuffa to care for his spouse and family, but his called went unreturned. Plaintiff Le and his spouse knew, from the contract they signed for "The Ultimate Fighter-China" production, that they faced substantial liability if Plaintiff Le did not board the flight for China. Plaintiff Le boarded his scheduled flight, and later learned his official filming duties did not start until more than a week after he arrived in China.

**Plaintiff Quarry:**

Plaintiff Quarry was advised by UFC Vice President for Talent Relations Joe Silva not to attempt to negotiate opponents by stating: "If you don't like the first opponent I offer you, you sure as hell will not like the second."

**Plaintiff Vazquez:**

In or about 2011, Plaintiff Vazquez was instructed that his attendance at a "fighter summit" instructional seminar was mandatory. Plaintiff Vazquez attempted to negotiate compensation for his appearance, or for his expenses in obtaining trainers to cover his gym classes while he was in attendance at the fighter summit. Zuffa refused his request. Plaintiff

1  Vazquez did not attend the summit, and has not accepted fights with Zuffa since this dispute. As

2  a result, Plaintiff Vazquez has not been able to fight at all.

3      **Plaintiff Vera:**

4      Zuffa President Dana White threatened to cut Plaintiff Vera, who had a long and

5  successful career at Zuffa, unless he agreed to fight his training partners at Alliance. White said

6  he had cut a UFC champion, and would not hesitate to cut Plaintiff Vera unless he agreed to fight

7  his training partners.

8      Plaintiff Vera was advised by UFC Vice President for Talent Relations Joe Silva not to

9  attempt to negotiate opponents by stating: "If you don't like the first opponent I offer you, you

10  sure as hell will not like the second."

11  **SUPPLEMENTAL RESPONSE**

12      Plaintiffs have nothing further to add at this time, but will supplement their answers as

13  necessary pursuant to the Federal Rules.

14  **INTERROGATORY NO. 6:**

15      **IDENTIFY** any action **ZUFFA** took with respect to **YOU** personally or any other

16  **ATHLETE**, unrelated to enforcing the terms of any signed **AGREEMENT**, that prevented or

17  discouraged **YOU** from signing with another **COMBAT SPORTS PROMOTER**. As part of

18  your response, please explain why that action prevented or discouraged **YOU** from signing with

19  another **COMBAT SPORTS PROMOTER**.

20  **ANSWER FOR ALL PLAINTIFFS:**

21      In addition to the General Objections set forth above, Plaintiffs respond to Interrogatory

22  No. 6 as follows. Plaintiffs were prevented and/or discouraged from signing with Combat Sports

23  Promoters other than Zuffa for the following reasons, among others: (1) as set out in their

24  Answer to Interrogatory 3 above (and incorporated herein by reference), the provisions in their

25  Contracts with the UFC effectively blocked and/or substantially impaired their ability to fight for

26  actual or potential rival promotions; (2) as set out in their Answer to Interrogatory 5 above (and

27  incorporated herein by reference), Zuffa used threats and intimidation against Fighters who left

28

the UFC or sought relief from one or more of the onerous terms of its Contracts; and (3) Zuffa's anticompetitive scheme, especially post-Strikeforce acquisition, relegated rival MMA promotions to "minor league" status, reducing actual and potential rivals' prestige, fight quality, potential for exposure, ability to attract key sponsors, and ability to offer large purses.

**SUPPLEMENTAL RESPONSE FOR ALL PLAINTIFFS**

Plaintiffs' original answer to Interrogatory 6 is a complete and adequate response that conveys the limitations imposed by Zuffa's contractual terms, the impact of Zuffa's threats, intimidation and making examples of fighters such as Plaintiff Fitch to discourage fighters from signing with other promoters, and the lack of viable alternatives to the UFC. Plaintiffs will supplement their answers as necessary pursuant to the Federal Rules.

DATED: _November 14, 2016

/s/ Eric L. Cramer
Eric L. Cramer
Michael Dell'Angelo
Patrick F. Madden
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000/Fax: (215) 875-4604
ecramer@bm.net
mdellangelo@bm.net
pmadden@bm.net

WOLF RIFKIN SHAPIRO SCHULMAN &
RABKIN, LLP
Don Springmeyer
Nevada State Bar No. 1021
Bradley Schrager
Nevada State Bar No. 10217
Daniel Bravo
Nevada State Bar No. 13078
3556 East Russell Road, Second Floor
Las Vegas, NV 89120
Telephone: (702) 341-5200
Fax: (702) 341-5300

COHEN MILSTEIN SELLERS & TOLL, PLLC
Benjamin D. Brown
Richard A. Koffman
Daniel Silverman
1100 New York Ave., N.W., Ste. 500, East Tower
Washington, DC 20005
Telephone: (202) 408-4600/Fax: (202) 408 4699
bbrown@cohenmilstein.com
rkoffman@cohenmilstein.com
dsilverman@cohenmilstein.com

JOSEPH SAVERI LAW FIRM, INC.
Joseph R. Saveri
Joshua P. Davis
Matthew Weiler
Andrew M. Purdy
Kevin E. Rayhill
555 Montgomery Street, Suite 1210
San Francisco, California 94111
Telephone: (415) 500-6800/Fax: (415) 395-9940
jsaveri@saverilawfirm.com
jdavis@saverilawfirm.com
mweiler@saverilawfirm.com
apurdy@saverilawfirm.com
krayhill@saverilawfirm.com


WARNER ANGLE HALLAM JACKSON &
FORMANEK PLC
Robert C. Maysey
Jerome K. Elwell
2555 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Telephone: (602) 264-7101/Fax: (602) 234-0419
rmaysey@warnerangle.com
jelwell@warnerangle.com


LAW OFFICE OF FREDERICK S. SCHWARTZ
Frederick S. Schwartz
15303 Ventura Boulevard, #1040
Sherman Oaks, CA 91403
Telephone: (818) 986-2407/Fax: (818) 995-4124
fred@fredschwartzlaw.com


SPECTOR ROSEMAN KODROFF &
WILLIS, P.C.
Eugene A. Spector
Jeffrey J. Corrigan
Jay S. Cohen
William G. Caldes
1818 Market Street – Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300/Fax: (215) 496-6611
espector@srkw-law.com
jcorrigan@srkw-law.com
jcohen@srkw-law.com
wcaldes@srkw-law.com


*Attorneys for Individual and Representative*
*Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Luis*
*Javier Vazauez. Brandon Vera and Kyle Kingsbury*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of November, 2016 a true and correct copy of **FIRST AMENDED ANSWERS TO DEFENDANT ZUFFA, LLC'S FIRST SET OF INTERROGATORIES TO PLAINTIFFS LE, QUARRY, FITCH, VERA, VAZQUEZ AND KINGSBURY** was served via electronic mail on all parties or persons requiring notice.

By:                                            */s/ Kevin E. Rayhill*