# Exhibit 28

Deposition of Ike Lawrence Epstein (May 26, 2017) (excerpted)

PUBLIC COPY - REDACTED

```
                                                                    1
             UNITED STATES DISTRICT COURT

                 DISTRICT OF NEVADA



CUNG LE; NATHAN QUARRY, JON    )
FITCH, on behalf of            )
themselves and all others      )
similarly situated,            )
                               )
         Plaintiffs,           )
                               )
         vs.                   )  Case No.
                               )  2:15-cv-01045-RFB-(PAL)
                               )
ZUFFA, LLC, d/b/a Ultimate     )
Fighting Championship and      )
UFC,                           )
                               )
         Defendant.            )
_____)




          C O N F I D E N T I A L

         VIDEOTAPED DEPOSITION OF

           IKE LAWRENCE EPSTEIN

             LAS VEGAS, NEVADA

              MAY 26, 2017

                9:07 a.m.



REPORTED BY:
CYNTHIA K. DuRIVAGE, CSR #451
Job No. 50641
```

**PUBLIC COPY – REDACTED**

CONFIDENTIAL - IKE LAWRENCE EPSTEIN



Page 206

1  A. I do.
2  Q. And it's dated May 29th, 2014.
3     Do you see that?
4  A. I do.
5  Q. And did you receive this email from
6  Mr. Mersch on or about the time that's indicated
7  here?
8  A. Looks like I did.
9  Q. And it refers to Jon Jones. Do you see
10 that?
11 A. I do.
12 Q. And I showed you a contract earlier in the
13 day.
14    That's the same Jon Jones that's referred
15 to in that contract, correct?
16 A. I don't know if it's the same contract, but
17 it's definitely the same fighter.
18 Q. Same guy?
19 A. Same guy.
20 Q. And do you recall what weight he fought at?
21 A. He fought at light heavyweight. 205.
22 Q. And was he a champion?
23 A. He has been a champion, yes.
24 Q. Did he fight for other promoters?
25 A. He may have fought for other promoters

Page 207

1  before he came to the UFC, but he hasn't fought for
2  other promoters since he joined us.

DAVID FELDMAN WORLDWIDE, INC.
450 Seventh Avenue - Ste 500, New York, NY 10123  1.800.642.1099

**PUBLIC COPY – REDACTED**

CONFIDENTIAL - IKE LAWRENCE EPSTEIN



Page 210

[REDACTED]

Page 211

[REDACTED]

19  Q.  And at that point, if that provision had
20  been triggered, Zuffa would control or continue to
21  control who Jones fought?
22     MS. GRIGSBY:  Objection to form.
23  BY MR. SAVERI:
24  Q.  Right?
25  A.  One thing that we cannot do is force

Page 212

1  anybody to fight anybody.  So if you don't want to
2  fight somebody, you don't have to fight them.
3  There's nothing we can do to force a fighter to fight
4  somebody.
5     Q.  But you could under this provision prevent
6  him from fighting anybody else?
7     MS. GRIGSBY:  Objection to form.
8     THE WITNESS:  That's not correct.  We could
9  offer him another fighter, and you could fight, you
10 know, that other fighter.
11    We can't prevent him from never fighting
12 again.
13 BY MR. SAVERI:
14    Q.  Well, you could -- you could -- you had the
15 ability under the contract to make fights for Jones,
16 and by triggering this provision, he was not able to
17 arrange any other fights, he was limited to the ones
18 that Zuffa put in front of him, right?
19    A.  No.
20    MS. GRIGSBY:  Objection, form, foundation.
21    THE WITNESS:  That's false.  We offered him
22 a fight.  If he decided not to take it, we could
23 extend the agreement and offer him another fight.
24    We can't just, you know, prevent him from
25 fighting ever again.  If he turns down that fight, we

Page 213

1  give him an appropriate period of time to offer him
2  another fight.
3  BY MR. SAVERI:
4     Q.  And under the contract, if he didn't accept
5  that fight, what was the next step?
6     MS. GRIGSBY:  Objection, form.
7     THE WITNESS:  I mean, I guess
8  theoretically, if we continue to offer him, we just
9  went down the line and offer him every single fighter
10 on the roster and he just said no continually, I
11 mean, it's never happened before, but I guess at some
12 point, you say do you want to retire?  Do you want to
13 end this relationship?  Should we just release you
14 because obviously you don't want to fight.  I mean,
15 it's never happened before.
16    My point is we can't put him on the shelf.
17 If he doesn't want to fight, we have an appropriate
18 period of time to offer him another fight, and that's
19 what we've done time and time again.  Nobody can tell
20 a fighter they have to fight anybody.
21 BY MR. SAVERI:
22    Q.  So how frequently did you extend fighters
23 along the lines that you're suggesting here?
24    MS. GRIGSBY:  Objection, form.
25    THE WITNESS:  I didn't extend any fighters.

DAVID FELDMAN WORLDWIDE, INC.
450 Seventh Avenue - Ste 500, New York, NY 10123  1.800.642.1099

**PUBLIC COPY – REDACTED**

214

```
 1  BY MR. SAVERI:
 2     Q.  Okay.  How many times did Zuffa extend
 3  fighters, as you describe here?
 4        MS. GRIGSBY:  Objection, foundation.
 5        THE WITNESS:  I don't know.  As I described
 6  where?  I mean, just -- we offered somebody a fight,
 7  they didn't accept it, we offered them another
 8  fighter and they accepted it?  Or are we talking
 9  about the hypothetical I gave you where they just
10  turn down every fight we ever offer them?  That's
11  never happened.
12  BY MR. SAVERI:
13     Q.  Do you recall whether at this time Jones
14  was a champion?
15     A.  I don't.
16     Q.  And so, do you know whether the champion's
17  clause applied to him at this time?
18        MS. GRIGSBY:  Objection, foundation.
19        THE WITNESS:  I don't know whether he was
20  champion or not.  If it was, it would have.  If he
21  wasn't, it wouldn't have.
22        (Exhibit 17 was marked for
23        identification by the reporter.)
24        THE WITNESS:  Thank you.
25  ///
```

215

```
 1  BY MR. SAVERI:
 2     Q.  I've handed you what has been marked as
 3  Exhibit 17, and it has the Bates Nos. ZUF-00474087
 4  through 4096.
 5     A.  Okay.
 6     Q.  Do you want to review that?
 7        (Pause in proceedings.)
 8        THE WITNESS:  Okay.
 9  BY MR. SAVERI:
10     Q.  If you look at the document, there's a
11  number of emails between you and Tracy Long and
12  Michael Mersch regarding Dan Henderson.
13        Do you see that?
14     A.  Yeah.
15     Q.  A lot of this has been redacted, but let me
16  ask you to look at the page that has the Bates number
17  ending 090.
18     A.  Okay.
19     Q.  And on that page, there's an email from
20  Jordan, is it Feagan?
21     A.  Feagan.
22     Q.  Feagan to yourself, dated September 11,
23  2011.
24        Do you see that?
25     A.  Yep.
```

216

```
 1     Q.  And did you receive that email from Jordan
 2  Feagan?
 3     A.  I assume I did.  I don't recall it.
 4     Q.  On or about that time?
 5     A.  I don't recall it.
 6     Q.  And at the time, was Mr. Feagan
 7  representing Dan Henderson?
 8     A.  I think he's always represented Dan
 9  Henderson, as far as I recall.
10     Q.  But you were communicating with Mr. Feagan
11  in the context of discussions regarding a fighter
12  contract with Dan Henderson, correct?
13     A.  Correct.
```

[lines 14-25 redacted]

217

[lines 1-2 redacted]

```
 3     Q.  Under the standard UFC contract at the
 4  time, what was the consequence of a fighter become
 5  injured?
 6     A.  A fighter becoming injured?
 7     Q.  Yeah.
 8     A.  And they couldn't fight?
 9     Q.  Yeah.
10     A.  Or just being injured?
11     Q.  I'm sorry.  What?
12     A.  I don't understand your question.  Just a
13  fighter being injured?  I mean, we have an accident
14  insurance policy that covers our athletes' medical
15  bills for injuries sustained in training or in a
16  fight.
17        Is that what you're talking about?
18     Q.  Well, under the UFC contract at the time,
19  if Henderson was injured, could Zuffa terminate his
20  contract?
21        MS. GRIGSBY:  Objection to form.
22        THE WITNESS:  If he was injured, no.  If he
23  was permanently disabled?
24  BY MR. SAVERI:
25     Q.  If he was injured and could not fight.
```

**PUBLIC COPY – REDACTED**