# Exhibit C

Forbes Article titled "UFC Files For Summary Judgment In Class-Action Antitrust Lawsuit"

1,064 views | Jul 31, 2018, 05:36am

# UFC Files For Summary Judgment In Class-Action Antitrust Lawsuit



**Paul Gift** Contributor ⓘ

SportsMoney



The UFC filed a motion for summary judgment on Monday in a move that could keep its antitrust case from going to trial. (Photo by Jeff Bottari/Zuffa LLC/Zuffa LLC via Getty Images)

The ongoing antitrust lawsuit against the UFC moved into the summary judgment stage yesterday with the MMA promotion filing paperwork in Las Vegas federal court claiming no reasonable jury could return a verdict for the former fighters leading the class-action case.

Originally filed in December 2014, Plaintiffs claim the UFC used an anticompetitive scheme of long-term exclusive fighter contracts, coercion, and

acquisitions of rival MMA promoters to establish and maintain dominance in the MMA industry and suppress fighter compensation. After three-and-a-half years of pleadings, interrogatories, affidavits, over 50 depositions, 900 pages of expert reports, 3.2 million pages of UFC documents, and 64,000 pages of Plaintiff documents produced, the UFC believes "there is no genuine dispute as to any material fact" and it should be entitled to judgment as a matter of law.

The plaintiff fighters will surely have a different take on the matter and will express their opposing views in September. Yesterday was the UFC's turn to make its case that the lawsuit doesn't even merit a trial.

Early in the filing, the UFC noted that the Plaintiffs' initial theory of monopoly and monopsony power in MMA as "mutually reinforcing" appears to have changed, stating "After two years of discovery, in seeking class certification, Plaintiffs abandoned their monopolization theory, alleging a 'Scheme' that makes no mention of [UFC's] alleged monopolization of the market for promotion of live Elite Professional MMA Fighter bouts."

The idea that elite, professional MMA was a relevant output market to be monopolized when the UFC competes for consumers' entertainment dollars (usually) on a Saturday night was always the weakest part of the case, so while it wouldn't seem too surprising for Plaintiffs to abandon it, it could cause problems from a consumer welfare standard perspective. The UFC appeared to notice this as well by arguing that a monopsonization theory on its own "runs contrary to accepted antitrust principles." During class certification, Plaintiffs seemed to propose a new theory of consumer harm via reduced quality; i.e., that undercompensated fighters wouldn't be able to promote themselves as well or enhance their training.

**YOU MAY ALSO LIKE**

In addressing direct evidence of monopsony power, the UFC claimed it paid its fighters "progressively more" during the class period and Plaintiffs never

established that its fighters were underpaid. Previous filings have appeared to show no damages from the UFC's alleged conduct when fighter *wage levels* are examined. It's with *wage share* (the percent of event revenue paid as fighter compensation) that Plaintiffs argue the UFC suppressed fighter pay. The UFC claims "no case supports this view and the theory fails as a matter of law because it disregards the carefully crafted limits of antitrust law that do not allow courts to act as 'central planners.'"

Another part of Plaintiffs case is the allegation that the UFC foreclosed rival MMA promoters through the use of long-term, exclusive fighter contracts. In what could be a key piece of evidence, the UFC noted that "every MMA promoter who has testified" in the case said they had access to top fighters. "There is no testimony or document that shows that [UFC's] competitors have insufficient access to top athletes to compete."

I've previously noted that a similar lack of evidence appeared to be a key element last year when boxing manager Al Haymon was granted a summary judgment win against promoter Golden Boy Promotion's antitrust claims. In that case, the judge specifically mentioned that not one boxer testified to feeling coerced or prevented from selecting the promoter of his choice.

Regarding other MMA promoters, Bellator's recent nine-figure distribution deal with streaming service DAZN made it into the UFC's filing. In addition to mentioning how Bellator President Scott Coker said the promotion "has steadfastly grown its market," a $100+ million distribution deal may help paint a picture of rival promoters not exactly being foreclosed. And in terms of fighter mobility, the UFC cited 70 fighters from 2011-2016 competing for Bellator after being in the UFC while 72 fighters competed for the UFC after being in Bellator.

The UFC also pointed out that Singapore-based One Championship's valuation is "approaching $1 billion" and Golden Boy Promotions is set to enter the MMA market with its first event on pay-per-view later this year.

To complete its attack on Plaintiffs' monopsony theory, the UFC addressed output restriction. If a company obtains and exerts monopsony power in a

relevant market, economic theory suggests its output should decline.

You'd be hard pressed to find an MMA fan these days complaining of too few events. Oversaturation is instead a consistent theme among MMA pundits. The UFC seized on Plaintiffs' claim that it "maintains an excess supply of athletes" and argued they offered no evidence of reduced purchases of athlete services. Essentially, the UFC is citing a factual record that fighter pay and MMA output have increased over time while a truly monopsonized market should've seen both decline.

If the UFC doesn't win outright on summary judgment, three areas highly likely to be tossed are Plaintiffs foreclosure claims with regard to venues, sponsors, and television broadcasters. Originally included as part of Plaintiffs' "monopoly broth" theory of a cumulative foreclosure effect — when combined with long-term, exclusive fighter contracts — the UFC believes Plaintiffs expert witnesses didn't even analyze the availability of suitable venues, sponsors, and television broadcasters for rival MMA promoters. Myself and others such as former FTC commissioner Joshua Wright have been incredibly skeptical of these claims, and in yesterday's filing, the UFC cited numerous examples of other MMA promoters having access to these areas.

The UFC's motion contained 112 exhibits encompassing everything from expert reports to deposition transcripts to e-mails to presentations and charts. Check back in at Forbes later this week for a more in-depth review of any new information gleaned from these documents.

A request for comment to the UFC was not returned as of this writing, and UFC attorneys declined to provide a comment.

*I am an associate professor of economics at Pepperdine Graziadio Business School, an ABC-certified referee and judge for the California Amateur Mixed Martial Arts Organization (CAMO) and a former provider of expert witness support in antitrust litigation. I previously covere...* **MORE**

*Follow me on Twitter @MMAanalytics.*

53,008 views | Sep 18, 2018, 11:38am

# Untapped Opportunity In Closed-End Funds

**Insights Team** Insights Contributor
FORBES INSIGHTS With **Nuveen**

**Insights Team** Insights Contributor

Follow

Forbes Insights is the strategic research and thought leadership practice of Forbes Media. By leveraging proprietary databases of senior-level executives in the Forbes community, Forbes Insights conducts research on a wide range of topics to position brands as thought leader…
**Read More**

FORBES INSIGHTS With **Nuveen**

Follow

Nuveen, the investment manager of TIAA, offers a comprehensive range of outcome-focused investment solutions designed to secure the long-term financial goals of institutional and individual investors. Nuveen has $973 billion in assets under management as of 30 June 2018 and … **Read More**