# EXHIBIT 132

# Excerpts of Deposition of Lorenzo J. Fertitta

# (Redacted)

1

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

Cung Le, Nathan Quarry, Jon )
Fitch, on behalf of )
themselves and all others )
similarly situated, )
 )
              Plaintiffs,)
 )
   v. ) Lead Case No.
 ) 2:15-cv-01045-RFB-(PAL)
Zuffa, LLC, d/b/a Ultimate )
Fighting Championship and )
UFC, )
 )
              Defendant. )
_____)

C O N F I D E N T I A L

VIDEOTAPED DEPOSITION OF LORENZO J. FERTITTA

Las Vegas, Nevada

March 23, 2017

9:09 a.m.

REPORTED BY:
CYNTHIA K. DuRIVAGE, CSR #451
JOB NO. 49608

162

[text redacted]

Q. Okay. And then, does Zuffa, say, from 2009 to August of 2016, did it from time to time renew contracts with fighters?
A. Yes.
Q. And can you think of any instances where a fighter completed the term of his or her contract; that is, the time period or the number of fights were completed as specified in the contract?
A. Yes.
Q. And how many of those are there that you can think of?
A. There's quite a bit. I can specifically remember some examples for you.
  Alistar Overeem being one. I believe Gilbert Melendez was one. Benson Henderson is another.
Q. With respect to those fighters that did not complete the full term of their contract, like the three that you've identified thus far, would Zuffa generally seek to renew a contract before the term

163

expired?
  MR. ISAACSON: Objection. I thought he named people who did, that did complete the term.
  MR. DELL'ANGELO: He said with the exception of the three that he had --
  MR. ISAACSON: He said --
  MR. DELL'ANGELO: I'll withdraw the question.
  MR. ISAACSON: No, he said with respect --
  MR. DELL'ANGELO: I'll withdraw the question and restate it. Thank you.
BY MR. DELL'ANGELO:
Q. So with the exception of the three individuals whom you've identified, Mr. Melendez, Mr. Henderson, and Mr. Overeem, did Zuffa generally seek to renew fighters' contracts before the term was completed?
A. Yes.

[text redacted]

164

And, you know, certainly, if it was a fighter that we were interested in going forward and wanting to have them fight for us, we would be willing to sit down with them and offer a new set of terms for a new contract.
Q. With respect to the three fighters that you referred to, Overeem, Melendez, and Henderson, whom you believe completed their contracts, were the contracts that you were referring to with Zuffa or some other organization that Zuffa acquired?
A. So with Alistar Overeem, I believe it was a Zuffa contract. With Benson Henderson, it was a Zuffa contract.
  I can't remember if Gilbert Melendez was fighting under a Forza contract, a Zuffa contract, or a Strikeforce contract.
  You know, there's also others. You know, Phil Davis, I know, completed his -- fought out his UFC contract. So it happened. And that's obviously up to the fighter. I mean, it's their decision.
Q. I'm sorry. What's their decision?
A. Whether or not to finish out their contract.
Q. Well, it could -- that decision could depend on any number of factors, such as them getting

165

another bout, correct, meaning -- that is, meaning that the fighter may be asked to extend the contract before he or she is provided with a bout or a bout agreement under the existing contract, correct?
  MR. ISAACSON: Objection to form, vague.
  THE WITNESS: Well, no, that wouldn't be the case. Otherwise, Alistar, Gilbert, Phil Davis, Benson wouldn't have completed their contract.
BY MR. DELL'ANGELO:
Q. It wouldn't be the case with respect to them, but what about with others whom Zuffa had contracts with?
A. No, that was not our general practice.
Q. When you say, "general practice," what do you mean?
A. What I mean is that we were contracted for, as we mentioned, a number of fights that also included a number of fights over a term, over a time period.
  It was our practice to not breach contracts and live up to the contracts that we signed. That's what I mean by that.
Q. I see. I guess, though, with respect to renewals, aren't we really talking about a different thing; that is, the general practice that you've --

**166**

as you've used that term -- the general practice of re-signing a fighter to a new contract before it expires versus breaching a contract are really different things, aren't they?

   MR. ISAACSON: Objection, form, argumentative.

   THE WITNESS: Clearly, they are two different things, yes.

   So our intention was not to breach contracts, and yes, we did offer, many times, fighters who were not done with their contract new contracts. But also, many times, fighters approached us and said they wanted a new contract before their contract term was complete as well.

BY MR. DELL'ANGELO:

   Q. Mr. Fertitta, I'm handing to the reporter -- I'm going to cause to be handed to the reporter what will be marked as Exhibit 24.

   (Exhibit 24 was marked for identification by the reporter.)

BY MR. DELL'ANGELO:

   Q. So I will represent to you, Mr. Fertitta, that Exhibit 24 is a series of text messages that were produced by Zuffa's counsel in the litigation, and the exhibit begins at ZFL-1897652.

**167**

   Would you just look at the second row of the first column of the document, you'll see the text in the box is plus ▓▓▓▓▓.

   Do you see that?

   A. Yes.

   Q. Is that your telephone number?

   A. Yes.

   Q. And is that telephone number associated with a device that you used to send and receive texts in your capacity as an owner or executive at Zuffa?

   A. Yes.

   Q. So would you turn to page what is numbered 174 of the document, the control number is ZFL-1897825.

   And can you tell me who Audie Attar is?

   A. I'm sorry, what was the page number?

   Q. It's page 174 of the document. The control number is ZFL-1897825.

   MR. ISAACSON: 174 of 178.

BY MR. DELL'ANGELO:

   Q. While you're doing that, that who is Audie Attar?

   A. Audie Attar is a manager of mixed martial arts fighters. And I think he manages some professional athletes in other sports, football.

**168**

   Q. And he is somebody that you dealt with in your capacity at Zuffa?

   A. Yes.

   Q. Do you recall that Mr. Attar represented a fighter Mike Bisping?

   A. Yes, he does.

   Q. Okay. Did you have communications with Mr. Attar regarding his representation of Mr. Bisping in your capacity at Zuffa?

   A. Bisping was not one of the fighters that I typically took the lead on. That was, for whatever reason, more Dana. I dealt with Audie primarily because he represented Conor McGregor. That was the fighter that I dealt with primarily with Audie.

   I mean, I may have had conversations, I probably did have some conversations with him at some point about Michael Bisping, but Michael was one of the fighters that had a better relationship with Dana White.

   Q. Okay. Returning to page 174 of 178 on Exhibit 24, would you turn your attention, please, to the fourth row from the bottom.

   And you'll see in the front column, it says, "Audie Attar," and then, the "To" reflects your phone number, the ▓▓▓▓▓?

**169**

   A. Yes.

   Q. Do you see that?

   A. Yes.

   Q. Okay. If you move over to the column marked "Text" --

   A. Yes.

   Q. -- in the far right end of the page.

   A. Yes.

   Q. It says:

      "Hi Lorenzo. Joe Silva told me to reach out to you and Dana regarding Mike Bisping. He said ▓▓▓▓▓

      ▓▓▓▓▓ Please let me know if you're available to meet in the coming weeks. I'd be happy to fly in for the day if need be. Hope you are well. Audie Attar."

      Do you see that?

   A. Yes.

   Q. Do you recall whether or not you met with Mr. Attar regarding ▓▓▓▓▓ ▓▓▓▓▓?

LORENZO J. FERTITTA - CONFIDENTIAL

## 302

STATE OF _____ )
                        ) :ss
COUNTY OF _____ )

I, LORENZO J. FERTITTA, the witness herein, having read the foregoing testimony of the pages of this deposition, do hereby certify it to be a true and correct transcript, subject to the corrections, if any, shown on the attached page.

_____
LORENZO J. FERTITTA

Sworn and subscribed to before me, this ____ day of _____, 2017.

_____
Notary Public

## 303

CERTIFICATE OF REPORTER

I, Cynthia K. DuRivage, a Certified Shorthand Reporter of the State of Nevada, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were duly sworn; that a record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction; that the foregoing transcript is a true record of the testimony given.

I further certify I am neither financially interested in the action nor a relative or employee of any attorney or party to this action.

Reading and signing by the witness was requested.

IN WITNESS WHEREOF, I have this date subscribed my name.

Dated: April 6th, 2017

_____
CYNTHIA K. DuRIVAGE
CCR No. 451

## 304

INSTRUCTIONS TO WITNESS

Please read your deposition over carefully and make any necessary corrections. You should state the reason in the appropriate space on the errata sheet for any corrections that are made.

After doing so, please sign the errata sheet and date it.

You are signing same subject to the changes you have noted on the errata sheet, which will be attached to your deposition.

It is imperative that you return the original errata sheet to the deposing attorney within thirty (30) days of receipt of the deposition transcript by you. If you fail to do so, the deposition transcript may be deemed to be accurate and may be used in court.

## 305

E R R A T A

I wish to make the following changes, for the following reasons:

PAGE LINE
___ ___ CHANGE:_____
REASON:_____
___ ___ CHANGE:_____
REASON:_____
___ ___ CHANGE:_____
REASON:_____
___ ___ CHANGE:_____
REASON:_____
___ ___ CHANGE:_____
REASON:_____
___ ___ CHANGE:_____
REASON:_____

_____    _____
WITNESS' SIGNATURE              DATE

77 (Pages 302 to 305)