# EXHIBIT H

# Forbes Article titled "UFC: Plaintiffs Pivoted Due To A 'Lack of Evidence'"

409 views | Nov 7, 2018, 08:30am

# UFC: Plaintiffs Pivoted Due To A 'Lack Of Evidence'



**Paul Gift** Contributor ⓘ
SportsMoney

Last Friday, the UFC submitted final written arguments in an attempt to avoid going to trial in the class-action antitrust lawsuit filed by six former fighters for alleged monopolization and monopsonization in the mixed martial arts industry.



The UFC made its final written arguments that the antitrust case filed by former fighters does not deserve to go to trial. (AP Photo/Gregory Payan)

"Unable to dispute the market realities of expanding competitors, increasing output, and rising compensation," the UFC stated in its filing, "Plaintiffs pursue a new antitrust theory and support it with a narrative that does not address [UFC's] Statement of Undisputed Facts."

Throughout the filing, the UFC repeatedly pointed to claimed inconsistencies and changes in the plaintiffs' theory of alleged wrongdoing.

The case survived a motion to dismiss based on a combined monopsony and monopoly claim, the UFC noted, yet "Plaintiffs in opposing summary judgment can only pursue a monopsony claim that the Ninth Circuit has called 'counterintuitive' and has questioned whether such a theory can make economic sense."

The UFC was quick to point out that plaintiffs have "shifted" their theory to that of marquee fighters, "a group that is not defined, was not disclosed in discovery, and which is neither the basis of the markets that have been defined nor the class for which certification is sought." Marquee fighters were not mentioned in the amended complaint or plaintiffs' interrogatory responses, according to the UFC. This "pivot to a new term" is due to a lack of evidence on a defined group of elite fighters, the UFC argued.

**YOU MAY ALSO LIKE**

Since plaintiffs believe the UFC anticompetitively raised rivals' costs in order to maintain and enhance its monopoly/monopsony power, some of the worst publicly-available testimony for their position was from executives of those rival MMA promoters who did not seem to describe a lack of sufficient access to fighters. This might explain plaintiffs' apparent late pivot to a theory where rival promoters instead need a "critical mass" of marquee fighters.

In addressing the issue that some promoters apparently testified they compete with the UFC for fighters and have not had access blocked, the UFC noted that plaintiffs called such testimony "boasts," but did not submit evidence it was untrue. In what could end up a powerful sentence in the case, the UFC argued, "Plaintiffs cannot escape that [UFC's] competitors – the supposed targets of [UFC's] alleged conduct – state that Plaintiffs' theory is inconsistent with market facts. In these circumstances, summary judgment must be granted." The basic

idea being that if the group who should be most directly and negatively affected by the UFC's alleged conduct is saying nothing happened, then maybe something else is going on.

In excerpted and redacted deposition testimony, it appeared that the IFL's former co-founder Kurt Otto and Strikeforce's former CEO and current Bellator president Scott Coker had the most negative deposition statements, yet neither seemed to describe an effective raising rivals' costs scenario. In its filing, the UFC addressed the testimony of Otto and, instead of Coker, EliteXC's Jeremy Lappen, pointing out that Lappen testified he "signed many high-level fighters" and that Otto testified he would have to go "find a new gym rat that has talent and build them up."

To the UFC, the relevant legal question is whether competing promoters have access to MMA fighters, and "Plaintiffs do not and cannot rebut [UFC's] undisputed evidence that they do, both ranked and not."

In describing the competitive landscape, the UFC pointed to testimony that Bellator was a "dying brand" before Coker took over and that by 2018 it had a new television deal with DAZN for over a hundred million dollars. ONE Championship, who seemingly offered in 2011 to be a "feeder organization" to the UFC, is now "the self-proclaimed largest MMA organization in the world." Finally, World Series of Fighting, now the Professional Fighters' League, has "expanded its number of events, broadcast events on NBC Sports, and is currently promoting a multi-million dollar MMA tournament."

The monopsony element of the case deals with alleged wage suppression; i.e., that fighters compensation is lower than it otherwise would have been had the UFC not engaged in anticompetitive conduct. To analyze fighter compensation, UFC experts used actual compensation (wage levels) while plaintiffs' experts used compensation as a percentage of event revenues (wage share). Both sides have repeatedly gone back-and-forth on this issue and, in its final salvo to avoid a trial, the UFC noted that "no antitrust or other case has ever held, or permitted a verdict, that evidence of anticompeititive acts may be established by shares of revenues, whether tied to wages or prices."

In other areas, the UFC attacked plaintiffs on its proffered legitimate business justifications for the use of exclusive fighter contracts, argued that despite "sharp negotiating language" in internal documents, not a single example of coercive conduct was provided, and contested plaintiffs' use of PPV distributor split and PPV revenues to show "supracompetitive pricing" instead of looking at the price paid by actual consumers where there was "only one price increase after seven years of stagnant prices."

The filing appeared to be a strong final offering from the UFC before a hearing which we now know will take place on November 20 and encompass class certification and summary judgment, two critical hurdles for the plaintiffs to overcome. Should the class be certified and summary judgment denied, pressure will mount on the UFC to settle the case rather than take its chances at trial.

But if the UFC has its way, there would be no need for a trial since "[UFC's] competitors had and have access to talented MMA athletes, established venues, recognizable sponsors, and a wide variety of platforms and television stations to distribute their events. Established competitors have grown, and new competitors have entered the market and expanded. Nothing more is required in this Circuit to grant summary judgment."

*I am an associate professor of economics at Pepperdine Graziadio Business School, an ABC-certified referee and judge for the California Amateur Mixed Martial Arts Organization (CAMO) and a former provider of expert witness support in antitrust litigation. I previously covere...*
MORE

*Follow me on Twitter @MMAanalytics.*