WILLIAM A. ISAACSON (*Pro hac vice*)
(wisaacson@bsfllp.com)
STACEY K. GRIGSBY (*Pro hac vice*)
(sgrigsby@bsfllp.com)
NICHOLAS A. WIDNELL (*Pro hac vice*)
(nwidnell@bsfllp.com)
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W., Washington, DC 20005
Telephone: (202) 237-2727; Fax: (202) 237-6131

RICHARD J. POCKER #3568
(rpocker@bsfllp.com)
BOIES SCHILLER FLEXNER LLP
300 South Fourth Street, Suite 800, Las Vegas, NV 89101
Telephone: (702) 382-7300; Fax: (702) 382-2755

DONALD J. CAMPBELL #1216
(djc@campbellandwilliams.com)
J. COLBY WILLIAMS #5549
(jcw@campbellandwilliams.com)
CAMPBELL & WILLIAMS
700 South 7th Street, Las Vegas, NV 89101
Telephone: (702) 382-5222; Fax: (702) 382-0540

*Attorneys for Defendant Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>Defendant. | Case No.: 2:15-cv-01045-RFB-(PAL)<br><br>**ZUFFA, LLC'S OPENING BRIEF REGARDING THE STANDARDS TO BE APPLIED FOR THE EVIDENTIARY HEARING ON CLASS CERTIFICATION** |

**TABLE OF CONTENTS**

I. BACKGROUND LAW ............................................................................................... 1

II. CLEARING THE *DAUBERT* HURDLE IS NOT ENOUGH TO CARRY PLAINTIFFS' BURDEN OF PERSUASION ...................................................... 4

III. THE FINDINGS NECESSARY TO CERTIFY A CLASS BASED UPON PLAINTIFFS' MODELING ................................................................................... 9

# TABLE OF AUTHORITIES

## CASES

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*
  568 U.S. 455 (2013) .......................................................................................... 6, 7, 8

*Anderson v. Mt. Clemens Pottery Co.*
  328 U.S. 680 (1946) .................................................................................................. 8

*Basic Inc. v. Levinson*
  485 U.S. 224 (1988) .................................................................................................. 5

*Briseno v. ConAgra Foods, Inc.*
  844 F.3d 1121 (9th Cir. 2017) ................................................................................... 3

*Caridad v. Metro-N. Commuter R.R.*
  191 F.3d 283 (2d Cir. 1999) ...................................................................................... 5

*Comcast Corp. v. Behrend*
  569 U.S. 27 (2013) ........................................................................................... passim

*Eisen v. Carlisle & Jacquelin*
  417 U.S. 156 (1974) .................................................................................................. 4

*Ellis v. Costco Wholesale Corp.*
  657 F.3d 970 (9th Cir. 2011) ............................................................................. 2, 3, 7

*Halliburton Co. v. Erica P. John Fund, Inc.*
  573 U.S. 258 (2014) .................................................................................................. 6

*In re Blood Reagents Antitrust Litig.*
  783 F.3d 183 (3d Cir. 2015) ...................................................................................... 4

*In re ConAgra Foods, Inc.*
  90 F. Supp. 3d 919 (C.D. Cal. 2015) ......................................................................... 3

*In re High-Tech Employee Antitrust Litig.*
  985 F. Supp. 2d 1167 (N.D. Cal. 2013) ................................................................. 1, 3

*In re High-Tech Employee Antitrust Litig.*
  289 F.R.D. 555 (N.D. Cal. 2013) ............................................................................... 9

*In re Hydrogen Peroxide Antitrust Litig.*
  552 F.3d 305 (3d Cir. 2009) .............................................................................. 5, 6, 7

*In re Initial Pub. Offerings Sec. Litig.*
  471 F.3d 24 (2d Cir. 2006) .................................................................................... 5, 7

*In re Optical Disk Drive Antitrust Litig.*
   303 F.R.D. 311 (N.D. Cal. 2014) .................................................................................... 2, 10

*In re Rail Freight Fuel Surcharge Antitrust Litig.*
   2017 WL 5311533 (D.D.C. Nov. 13, 2017) ..................................................................... 2, 9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*
   No. 3:07-md-01827, ECF No. 8543 (N.D. Cal. Aug. 28, 2013) .......................................... 2

*In re Visa Check/MasterMoney Antitrust Litig.*
   280 F.3d 124 (2d Cir. 2001) ............................................................................................... 5

*Kottaras v. Whole Foods Mkt., Inc.*
   281 F.R.D. 16 (D.D.C. 2012) ............................................................................................ 10

*Reed v. Advocate Health Care*
   268 F.R.D. 573 (N.D. Ill. 2009) ........................................................................................ 10

*Sali v. Corona Reg'l Med. Ctr.*
   909 F.3d 996 (9th Cir. 2018) ........................................................................................... 3, 7

*Tyson Foods, Inc. v. Bouaphakeo*
   136 S. Ct. 1036 (2016) ........................................................................................... 4, 7, 8, 9

*Unger v. Amedisys, Inc.*
   401 F.3d 316 (5th Cir. 2005) ............................................................................................... 7

*Wal–Mart Stores, Inc. v. Dukes*
   564 U.S. 338 (2011) .................................................................................................. passim

*West v. Prudential Sec., Inc.*
   282 F.3d 935 (7th Cir. 2002) ............................................................................................... 5

**RULES**

Fed. R. Civ. P. 23 ........................................................................................................... passim

**OTHER AUTHORITIES**

Ninth Circuit Jury Instructions Committee, *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit*
   (2017 Ed.) ............................................................................................................................ 2

Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*
   84 N.Y.U. L. Rev. 97 (2009) ................................................................................... 2, 5, 8, 9

This Court has asked the parties to provide their views regarding the appropriate standard for the Court to decide, in the context of the Motion for Class Certification, (a) whether Plaintiffs' experts' modeling can serve as a sufficient basis to certify the class and (b) what specific findings the Court must make for the class to be certified based upon this modeling. ECF No. 628.

## I. BACKGROUND LAW

Zuffa has already briefed the basic standard governing class certification, ECF No. 540 ("Class Cert. Opp.") at 11-14, and will not repeat it. Federal Rule of Civil Procedure 23 sometimes presents issues that may be solely for the Court to decide (such as the adequacy of the class representative) and that will not be submitted to the jury. There are other issues that may overlap with issues that are submitted to the jury (for example, whether the proof of liability is individualized). There are also other issues that a class may seek to prove that are common questions for all class members, based on which their claims may rise or fall, but do not bear on the issues under Rule 23. With this, we wish to underscore several points:

***First***, for issues left to the Court and for issues that overlap with the issues submitted to the jury, it is this Court—not the jury—that must perform a "rigorous analysis" required by Rule 23. *In re High-Tech Employee Antitrust Litig.*, 985 F. Supp. 2d 1167, 1187 (N.D. Cal. 2013) ("*High-Tech II*") ("In essence, *this Court* must determine whether common evidence and common methodology could be used to prove the elements of the underlying cause of action") (emphasis added)). The "rigorous analysis" required under Rule 23 obliges the court to evaluate carefully the substance of the plaintiffs' proffered expert evidence:

> Particularly in light of the "rigorous analysis" required under *Dukes* and *Comcast*, however, the caution offered in {*In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478 (N.D. Cal. 2008),} is apt. "[C]ertification [should not be] automatic every time counsel dazzle the courtroom with graphs and tables." 253 F.R.D. at 491. If the presumption were otherwise, "nearly all antitrust plaintiffs could survive certification without fully complying with Rule 23." *Id*. at 492; *see also, In re High–Tech Employee Antitrust Litig*., 289 F.R.D. 555, 567 (N.D. Cal. 2013) ("conducting a thorough review of Plaintiffs' theory and methodology is consistent with the requirement that the Court conduct a 'rigorous analysis'" to ensure that the predominance requirement is met"); *In re Rail Freight Fuel Surcharge Antitrust Litig*., 725 F.3d 244, 255 (D.C. Cir. 2013) ("It is now clear . . . that Rule 23 not only authorizes a hard look at the soundness of statistical models that purport to show predominance—the rule commands it."). Put another way, the inquiry must be to determine if the proffered expert testimony has the requisite integrity to demonstrate class-wide impact.

*In re Optical Disk Drive Antitrust Litig.*, 303 F.R.D. 311, 320 (N.D. Cal. 2014) (emendations in square brackets in original). Furthermore, a rigorous analysis may require a court's review to overlap with the merits of the plaintiff's underlying claims: "When considering class certification under Rule 23, district courts are not only at liberty to, but must perform 'a rigorous analysis [to ensure] that the prerequisites of Rule 23(a) have been satisfied.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011) (quoting *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)). "In many cases, that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Ellis*, 657 F.3d at 980 (quoting *Wal-Mart*, 564 U.S. at 351) (internal quotation marks omitted).

***Second***, for issues that do not overlap with the issues to be decided by the jury, only the court decides whether Rule 23's requirements are met including whether the class is sufficiently cohesive to justify classwide adjudication or whether, in contrast, it exhibits the "dissimilarities" that preclude class certification. *Wal-Mart*, 564 U.S. at 350 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 104 (2009) ("Nagareda")).

For example, to establish predominance under Rule 23(b)(3), plaintiffs must show that all or virtually all members of the class suffered antitrust injury, called common impact. *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 2017 WL 5311533, at *87–88 (D.D.C. Nov. 13, 2017) (collecting cases). Because this is an inquiry under Rule 23(b)(3), it is this Court that must determine whether Plaintiffs' experts have proven common impact. The standard jury verdict form and instructions[1] and known antitrust class action verdict forms and instructions[2] do not ask the jury to decide the issue of whether all or virtually all class members were injured because that is an issue for the Court to decide.

Likewise, to meet the standards of Rule 23, this Court will need to determine whether Plaintiffs' experts offer a valid method for distinguishing on a classwide basis alleged damages caused by the theory of harm as opposed to those attributable to other factors, such as legitimate

---

[1] Ninth Circuit Jury Instructions Committee, *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit* (2017 Ed.).
[2] *E.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827, ECF No. 8543 (N.D. Cal. Aug. 28, 2013).

and procompetitive business practices. *Comcast Corp. v. Behrend*, 569 U.S. 27, 38 (2013). No juror will be asked to make those findings.

***Third***, for issues reserved to the Court to decide or for a rigorous review, "this Court must determine not only the admissibility of expert evidence that demonstrates whether common questions predominate," but also "whether that expert evidence is persuasive." *High-Tech II*, 985 F. Supp. 2d at 1187 (citing *Ellis,* 657 F.3d at 982) ("However, the district court seems to have confused the *Daubert* standard it correctly applied to Costco's motions to strike with the 'rigorous analysis' standard" and "[i]nstead of judging the persuasiveness of the evidence presented, the district court seemed to end its analysis of the plaintiffs' evidence after determining such evidence was merely admissible"); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 946 (C.D. Cal. 2015) ("Admissibility [under *Daubert*] turns on whether [an expert's] methodology is sufficiently reliable; whether it satisfies *Comcast* and shows that a class should be certified is another question altogether"), *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017). Most recently, in *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996 (9th Cir. 2018), the Ninth Circuit reiterated its "prior guidance that a district court should analyze the 'persuasiveness of the evidence presented' at the Rule 23 stage," *id* (quoting *Ellis*, 657 F.3d at 982).

This inquiry into whether the expert evidence is persuasive may also require the Court to resolve methodological disputes. *High-Tech II*, 985 F. Supp. 2d at 1187. And in evaluating this requirement, the Court is required to "resolve any factual disputes necessary" to determine if Plaintiffs can put forward a methodology "that could affect the class *as a whole*." *Ellis*, 657 F.3d at 982; Class Cert. Opp. 12-13.

Finally, expert testimony must meet the standards of *Daubert*. *Daubert* objections of the type presented here go directly to the substance of the testimony and are not, at this late stage, correctable.[3] It is difficult to see any circumstance in which an expert opinion that cannot pass muster under *Daubert* could support class certification—not merely because it would be inadmissible, but because it would be inherently unpersuasive. *E.g.*, *In re Blood Reagents*

---

[3] Thus differing from the "formalistic evidentiary objections" barring consideration of "evidence that likely could have been presented in an admissible form at trial" in *Sali*. 909 F.3d at 1006.

*Antitrust Litig.*, 783 F.3d 183, 187 (3d Cir. 2015) ("Expert testimony that is insufficiently reliable to satisfy the *Daubert* standard cannot 'prove' that the Rule 23(a) prerequisites have been met 'in fact,' nor can it establish 'through evidentiary proof' that Rule 23(b) is satisfied.")

## II.  CLEARING THE *DAUBERT* HURDLE IS NOT ENOUGH TO CARRY PLAINTIFFS' BURDEN OF PERSUASION

The colloquy at the December 14, 2018 hearing suggests that the key dispute between the parties is with respect to Plaintiffs' position that a finding that the expert evidence they have tendered is admissible under *Daubert* necessarily satisfies the Rule 23 standard. ECF No. 627, Dec. 14, 2018 Hearing Tr. at 29:13-15 ("In our opinion *Tyson Foods* is quite clear that . . . there is no daylight between the *Daubert* standard and the Rule 23 standard.")

Not so. It is tautological to assume that admissible evidence is necessarily "persuasive" or that such evidence will survive rigorous scrutiny. Admissibility does not satisfy the requirements of Rule 23; whether or not the strictures of Rule 23 are satisfied is a distinct inquiry from admissibility. The Supreme Court did not hold in *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016), that admissible expert evidence automatically establishes predominance under Rule 23. To adopt Plaintiffs' position that admissible evidence is all that is required to meet the standards of Rule 23 would require overruling both *Comcast* and *Wal-Mart*, in which admissible statistical models were found insufficient. *Tyson* did not do that. Rather, it held only that if individual class members would use the same statistical evidence to prove their case *in individual or class trials* (there, a trial for unpaid overtime wages under the Fair Labor Standards Act), attacks on the sufficiency of that evidence for merits purposes cannot cause individual issues to predominate. *Tyson*, 136 S. Ct. at 1046-47. The Court explicitly distinguished cases where, as here, the experiences of class members are diverse and individualized evidence is available. *Id.* at 1048 (citing *Wal-Mart*, 564 U.S. at 355-56, 367).

A rule that class certification should be granted if a *Daubert* challenge fails would turn back the clock on class action law. For decades, many courts applied pleading, summary judgment, or *Daubert* standards at class certification because they believed that dicta in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974), barred any inquiry that overlapped with the merits.

1  Under these standards, district courts could consider only whether class allegations rested on
2  "some showing" of factual support, *Caridad v. Metro-N. Commuter R.R.*, 191 F.3d 283, 292 (2d
3  Cir. 1999), that was not "fatally flawed," *In re Visa Check/MasterMoney Antitrust Litig.*, 280
4  F.3d 124, 135 (2d Cir. 2001), and could not "weigh conflicting expert evidence," *id.*

5  Courts and legal scholars widely criticized this approach as an impermissible "delegation
6  of judicial power to the plaintiffs, who [could] obtain class certification just by hiring a competent
7  expert." *West v. Prudential Sec., Inc.*, 282 F.3d 935, 938 (7th Cir. 2002). Because a decision that
8  Rule 23 is satisfied is ultimately "a mixed question of law and fact," multiple circuit courts
9  recognized that, in making such determinations, "the judge often resolves underlying factual
10 disputes, and, as to these disputes, the judge must be persuaded that the fact at issue has been
11 established." *In re Initial Pub. Offerings Sec. Litig.,* 471 F.3d 24, 40 (2d Cir. 2006) ("*In re IPO*").
12 "[O]pinion testimony should not be uncritically accepted as establishing a Rule 23 requirement
13 merely because the court holds the testimony should not be excluded, under *Daubert* or for any
14 other reason." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 323 (3d Cir. 2009).
15 "Weighing conflicting expert testimony at the certification stage is not only permissible; it may
16 be integral to the rigorous analysis Rule 23 demands." *Id.; see generally* Nagareda at 111-14.

17 The Supreme Court ultimately agreed. Extensively citing Professor Nagareda's article,
18 *Wal-Mart* held that the "rigorous analysis" required under Rule 23 will often "entail some overlap
19 with the merits of the plaintiff's underlying claim." 564 U.S. at 351-52. To illustrate, the Court
20 pointed to securities-fraud class actions, where plaintiffs can avoid individualized showings of
21 reliance by proving that their shares traded in an efficient market, which raises a rebuttable
22 presumption of classwide reliance under *Basic Inc. v. Levinson*, 485 U.S. 224 (1988). The Court
23 explained that plaintiffs seeking certification based on such an aggregation-enabling presumption
24 "must *prove* that their shares were traded on an efficient market" at the Rule 23 stage, even
25 though they will have "to prove [that] *again* at trial in order to make out their case on the merits."
26 *Wal-Mart,* 564 U.S. at 351 n.6 (first emphasis added).

27 Applying this standard, the *Wal-Mart* Court held that class certification was improper
28 because plaintiffs' expert evidence of a discriminatory "corporate culture," "even if properly

considered," had not adequately *proved* a common reason for the "millions of employment decisions" being challenged. *Id.* at 352, 354-55. And the plaintiffs' "statistical and anecdotal evidence" that women were discriminated against fell "well short" of establishing a practice of discrimination that would affect all women in "a common way." *Id.* at 356.

The Supreme Court has repeatedly reaffirmed this principle. In a series of securities cases, the Court has held that plaintiffs must *prove* the prerequisites for invoking the "fraud on the market" presumption of classwide reliance necessary to establish predominance. *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 473 (2013) ("market efficiency and the public nature of the alleged misrepresentations must be *proved before* a securities-fraud class action can be certified" (emphasis added)); *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 276, 278-79, 283 (2014) (plaintiffs must "*prov[e]* the prerequisites for invoking the [*Basic*] presumption," and must do so "*before* class certification," but defendants can defeat the presumption through evidence that the alleged misrepresentation did not affect the price of the stock "even though such proof is also highly relevant at the merits stage" (emphases added)).

Similarly, in *Comcast*, the Court reversed class certification in an *antitrust* case where lower courts had refused to consider whether the damages calculations in plaintiffs' model were "a just and reasonable inference or speculative" because, the lower courts had reasoned, that was a "merits" question with "no place in the class certification inquiry." 569 U.S. at 32, 35. The Court cited *Wal-Mart* in explaining that the failure to consider the model's flaws "flatly contradicts our cases requiring a determination that Rule 23 is satisfied, even when that requires inquiry into the merits of the claim." *Id.* at 35. And the Court did so even though the defendant did not challenge the admissibility of the plaintiffs' model. *Id.* at 32 n.4. That conclusion alone repudiates the proposition that *admissibility* of the damages model is all that is needed "to show that the case is susceptible to awarding damages on a class-wide basis." *Id*.

The circuit courts and the Supreme Court have held that district courts must rigorously analyze the evidence presented to justify aggregation in antitrust cases and must deny certification when the judge is not persuaded that the proffered evidence can resolve issues of injury or damages for all class members. *E.g.*, *Hydrogen Peroxide*, 552 F.3d at 323-24; *Comcast*, 569 U.S.

at 35. The Ninth Circuit has fully adopted this approach, holding in *Ellis* that the district court erred in failing to "examin[e] the merits" and "resolve the critical factual disputes" necessary to determine commonality on the basis that, because it had found the expert evidence offered by the plaintiffs admissible under *Daubert,* no further analysis was required. 657 F.3d at 984. More recently, in *Sali*, the Ninth Circuit reiterated that admissibility *qua* admissibility is not determinative of the Rule 23 questions that the court must decide:

> Indeed, in evaluating challenged expert testimony in support of class certification, a district court should evaluate admissibility under the standard set forth in *Daubert*. *Ellis*, 657 F.3d at 982. *But admissibility must not be dispositive.* Instead, an inquiry into the evidence's ultimate admissibility should go to the weight that evidence is given at the class certification stage. This approach accords with our prior guidance that a district court should analyze the "persuasiveness of the evidence presented" at the Rule 23 stage. *Id.*

909 F.3d at 1006 (emphasis added).

This approach does not impinge upon the jury's province. A finding that an expert's opinion is persuasive on a Rule 23 requirement is one a district court must make to administer a rule of *procedure*. The jury has no role in deciding whether a class should be certified. If the same evidence is relevant to an issue properly before the jury, the judge's view at certification "does not preclude a different view at the merits stage." *Hydrogen Peroxide*, 552 F.3d at 324; *see also In re IPO*, 471 F.3d at 41; *Unger v. Amedisys, Inc.*, 401 F.3d 316, 323 (5th Cir. 2005).

Plaintiffs' apparent contention that *Tyson* marked a *sub silentio* about-face and return to the discredited approach to class certification premised on avoiding consideration of the merits at all costs is baseless. *Tyson* rested on a straightforward application of a principle derived from *Amgen*—that when an issue is *inherently common* because it would necessarily stand or fall on the basis of the same common evidence, whether tried individually or in a class action, weaknesses in that evidence are not a reason to deny certification.[4]

---

[4] In *Amgen*, the Court held that plaintiffs need not prove materiality before a district court could certify a securities-fraud class action. The Court reasoned that materiality is an objective issue, not one that turns on the particular plaintiff, and therefore the relevant evidence is *necessarily the same for all class members*. 568 U.S. at 467. For that reason, "there is no risk whatever that a failure of proof on the common question of materiality will result in individual questions predominating"; the claims of all class members would simply fail, together. *Id.* at 467-68. Consequently, the persuasiveness of the plaintiffs' case on materiality has no bearing on class certification, and can be left entirely to the jury.

A similar issue was presented in *Tyson*, which involved an FLSA class action for unpaid overtime. Individual injury depended on the time plaintiffs spent "donning and doffing" protective clothing. Because Tyson had not kept time records, plaintiffs relied on a study that determined the average time a representative sample of employees spent on these activities. The Court concluded that this was allowed in FLSA cases under *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946). *Tyson*, 136 S. Ct. at 1047-48. The Court then concluded that, under *Amgen*, Tyson's criticisms of the quality of plaintiffs' representative sample were irrelevant to the class certification inquiry. *Id.*

The critical point, which the Court emphasized repeatedly, was that because Tyson did not keep time records, "[i]f the employees had proceeded with 3,344 individual lawsuits, each employee likely would have had to introduce [plaintiffs'] study to prove the hours he or she worked." *Id.* at 1047. And lacking any individual records, Tyson's defense was similarly confined to "show[ing] that [plaintiffs'] study was unrepresentative or inaccurate." *Id.* The study was therefore not supplanting relevant individualized evidence. If Tyson had discredited plaintiffs' study, "'failure of proof on th[is] common question' likely would have ended 'the litigation'" in Tyson's favor, but it would not have "cause[d] individual questions . . . to overwhelm questions common to the class.'" *Id.* (alterations and omission in original) (quoting *Amgen*, 568 U.S. at 468). The reliability of the study simply did not matter to class certification.

The *Tyson* court's statement that "[o]nce a district court finds evidence to be admissible, its persuasiveness is, in general, a matter for the jury," *id.* at 1049, did not, as Plaintiffs appear to argue, change the Rule 23 analysis to be undertaken by district courts. That argument ignores that the issue in *Tyson* was whether evidence common to the class was deficient, and not whether there were individualized issues. Citing *Amgen* and Nagareda, the *Tyson* court explained that when "the concern about the proposed class is not that it exhibits some fatal dissimilarity but, rather, a fatal similarity—[an alleged] failure of proof as to an element of the plaintiffs' cause of action—courts should engage that question as a matter of summary judgment, not class certification." 136 S. Ct. at 1047. Any suggestion that the Supreme Court meant to overrule *Wal-Mart*, *Amgen*, and *Comcast* along with the rest of its modern class certification jurisprudence, and

to reimpose an intellectual construct rejected many years ago, is absurd.  The *Tyson* Court cited its modern case law (and Nagareda's article) extensively, making clear that its holding was grounded in the factual and legal posture of the case, and in *Amgen*'s narrow exception.  The Supreme Court stressed that *Tyson* "provides no occasion" to adopt "broad and categorical rules governing the use of representative or statistical evidence in class actions." *Id.* at 1049.

Accordingly, this Court must rigorously evaluate the evidence Plaintiffs have offered to determine whether it finds the evidence sufficiently persuasive to convince it that Plaintiffs have met their burden of persuasion as to each element of Rule 23.  Determining whether that evidence is admissible—under *Daubert* or otherwise—is a subsidiary step that does not, under binding Ninth Circuit and Supreme Court case law, substitute for that persuasiveness inquiry.

### III. THE FINDINGS NECESSARY TO CERTIFY A CLASS BASED UPON PLAINTIFFS' MODELING

Consistent with the requirement that Plaintiffs must bear their burden of proving by a preponderance of the evidence that all requirements of Rule 23 have "in fact" been met, Class Cert. Opp. 11-12, the Court would need, in evaluating the predominance issues that rest on Plaintiffs' experts' models, to conclude that it is persuaded that their models are capable of:

(a) showing reliably that all or virtually all members of the class suffered antitrust injury;

(b) separating lawful from unlawful conduct; and

(c) translating the alleged "Scheme" into their theory of damages.

The first requirement to reliably show that "all or virtually all" members of the putative class were injured is a high bar to certification.[5]  Class Cert. Opp. 24.  In particular, the Court must consider whether Dr. Singer's regressions models using "foreclosure share" and "wage share" rather than actual compensation—which, unlike Dr. Singer's novel theories, is well-accepted by economists as a dependent variable and routinely used in antitrust impact regressions in litigation—persuasively demonstrate antitrust injury for all or virtually all class members.

---

[5] *E.g.*, *Rail Freight*, 2017 WL 5311533, at *87–88 (collecting cases and concluding that under 23(b)(3), "5% to 6% constitutes the outer limits of a *de minimis* number of uninjured class members" above which certification is not appropriate); *see also In re High-Tech Employee Antitrust Litig.*, 289 F.R.D. 555, 567 (N.D. Cal. 2013).

Class Cert. Opp. 10-11. The wage share regressions, for example, must be more persuasive than Dr. Singer's regressions when actual compensation is used, because those regressions show no widespread impact.

The Court must also consider whether averaging assumptions like those of Dr. Singer and Prof. Zimbalist are persuasive to show individual impact. *Id.* at 24 n.40 & 28 (citing *In re Optical Disk Drive*, 303 F.R.D. at 321) (regression in an antitrust case did not support class certification where the regression provided an aggregate overcharge percentage but did not "show that all or nearly all purchasers were overcharged in that amount, or in any amount at all"); *Reed v. Advocate Health Care*, 268 F.R.D. 573, 591 (N.D. Ill. 2009) (rejecting "average base wage" as insufficient to show harm to class members). The Court must further inquire into whether to credit Prof. Zimbalist's choice to use certain—but not all—major league sports as benchmarks and his assumption that any differences between Zuffa's wage share and those of his chosen benchmarks are due to anticompetitive conduct. Class Cert. Opp. 10-11.

The second and third requirements that Plaintiffs separate lawful from unlawful conduct must typically be based on a damages analysis isolating the effect of the allegedly anticompetitive scheme from lawful and procompetitive conduct. *Id.* at 35-37. The "first step in a damages study is the translation of the *legal theory of the harmful event* into an analysis of the economic impact *of that event*." *Comcast*, 569 U.S. at 38. The Court should inquire as to whether Dr. Singer and Prof. Zimbalist conducted any such analysis. In addition, the Court must inquire into whether and how Dr. Singer and Prof. Zimbalist conducted such an analysis and whether they included, as required, an analysis of any procompetitive aspects of the alleged "scheme" and, for example, whether they have attempted to disaggregate the value added by athletes from that added by Zuffa in modeling revenue and wage share. Class Cert. Opp. 36-37 (citing *Kottaras v. Whole Foods Mkt., Inc.*, 281 F.R.D. 16, 25 (D.D.C. 2012)).

| | | |
|---|---|---|
| 1 | Dated:  January 9, 2019 | Respectfully Submitted, |
| 2 | | BOIES SCHILLER FLEXNER LLP |
| 3 | | By: */s/ William A. Isaacson* |
| 4 | |         William A. Isaacson |

WILLIAM A. ISAACSON (*Pro hac vice*)
(wisaacson@bsfllp.com)
STACEY K. GRIGSBY (*Pro hac vice*)
(sgrigsby@bsfllp.com)
NICHOLAS A. WIDNELL (*Pro hac vice*)
(nwidnell@bsfllp.com)
BOIES SCHILLER FLEXNER LLP
1401 New York Ave., NW, Washington, DC 20005
Telephone: (202) 237-2727; Fax: (202) 237-6131

RICHARD J. POCKER #3568
(rpocker@bsfllp.com)
BOIES SCHILLER FLEXNER LLP
300 South Fourth St., Ste. 800, Las Vegas, NV 89101
Telephone: (702) 382 7300; Fax: (702) 382 2755

DONALD J. CAMPBELL #1216
(djc@campbellandwilliams.com)
J. COLBY WILLIAMS #5549
(jcw@campbellandwilliams.com)
CAMPBELL & WILLIAMS
700 South 7th Street, Las Vegas, NV 89101
Telephone: (702) 382-5222; Fax: (702) 382-0540

*Attorneys for Defendant Zuffa, LLC, d/b/a*
*Ultimate Fighting Championship and UFC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing Zuffa, LLC's Opening Brief Regarding the Standards to be Applied for the Evidentiary Hearing on Class Certification was served on January 9, 2019 via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

*/s/ Brent K. Nakamura*

Brent K. Nakamura, an Employee of
Boies Schiller Flexner LLP