# Exhibit A

Plaintiffs' Statement Regarding Rule 23 Standards with Fewer Redactions

Eric L. Cramer (*Pro Hac Vice*)
Michael Dell'Angelo (*Pro Hac Vice*)
Patrick F. Madden (*Pro Hac Vice*)
Mark R. Suter (*Pro Hac Vice*)
BERGER|MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone:   (215) 875-3000
Facsimile:    (215) 875-4604
ecramer@bm.net
mdellangelo@bm.net
pmadden@bm.net
msuter@bm.net

*Co-Lead Counsel for the Classes and*
*Attorneys for Individual and Representative Plaintiffs*
*Cung Le, Nathan Quarry, Jon Fitch, Luis Javier*
*Vazquez, Brandon Vera, and Kyle Kingsbury*

*(Additional counsel appear on signature page)*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>Defendant. | Case No.: 2:15-cv-01045-RFB-PAL<br><br>**PLAINTIFFS' STATEMENT REGARDING RULE 23 STANDARDS** |

## **TABLE OF CONTENTS**

I.      THE PREDOMINANCE STANDARD ...............................................................................1

II.     A PLAUSIBLE (OR ADMISSIBLE) METHODOLOGY .................................................2

III.    EVIDENCE THAT COMMON ISSUES WILL PREDOMINATE................................3

      A.      This Court Should Rely on Dr. Singer's Modeling, and Other Evidence,
           To Find that Whether Zuffa Violated Antitrust Law Is Common and Will
           Predominate ............................................................................................................3

      B.      This Court Should Rely on Dr. Singer's Economic Modeling, and Other
           Evidence, To Find that the Issue of Impact Is Common and Establishes
           Predominance...........................................................................................................4

IV.     THIS COURT SHOULD NOT MAKE FINDINGS NOW THAT HAVE A
       PRECLUSIVE EFFECT .................................................................................................9

V.      PROPOSED FINDINGS FOR THE COURT TO MAKE IN ASSESSING
       PREDOMINANCE.......................................................................................................10

PLAINTIFFS' STATEMENT REGARDING RULE 23 STANDARDS
**FILED UNDER SEAL**

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997)............................................................................................4, 5

*Amgen Inc. v. Conn. Retirement Plans & Trust Funds,*
568 U.S. 455 (2013)............................................................................... *passim*

*Bigelow v. RKO Radio Pictures,*
327 U.S. 251 (1946)............................................................................................1

*Blackie v. Barrack,*
524 F.2d 891 (9th Cir. 1975)............................................................................1, 3

*City of Anaheim v. S. California Edison Co.,*
955 F.2d 1373 (9th Cir. 1992)............................................................................4

*Comcast Corp. v. Behrend,*
569 U.S. 27 (2013)............................................................................................1, 2, 3

*Continental Ore Co. v. Union Carbide & Carbon Corp.,*
370 U.S. 690 (1962)............................................................................................4

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.,*
502 F. 3d 91 (2d Cir. 2007)............................................................................2, 4

*Costco Wholesale Corp. v. Maleng,*
522 F.3d 874 (9th Cir. 2008)............................................................................4

*Cummings v. Connell,*
316 F.3d 886 (9th Cir. 2003)............................................................................1

*Halliburton Co. v. Erica P. John Fund, Inc.,*
573 U.S. 258 (2014)............................................................................................1

*Haro v. Sebelius,*
747 F3d 1099 (9th Cir. 2014)............................................................................1

*In re Air Cargo Ship. Servs. Antitrust Litig.,*
No. 06–MD–1175 (JG) (VVP), 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014)....................5

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
308 F.R.D. 606 (N.D. Cal. 2015)............................................................................3, 5

ii

Case No.: 2:15-cv-01045-RFB-(PAL)

*In re Chocolate Confectionary Antitrust Litig.*,
    289 F.R.D. 200 (M.D. Pa. 2012)........................................................................................5

*In re Domestic Drywall Antitrust Litig.*,
    2017 WL 3623466 (E.D. Pa. Aug. 23, 2017).................................................................6

*In re High-Tech Emp. Antitrust Litig.*,
    289 F.R.D. 555 (N.D. Cal. 2013).....................................................................................3

*In re High-Tech Emp. Antitrust Litig.*,
    985 F. Supp. 2d 1167 (N.D. Cal. 2013) ................................................................2, 4, 5, 6

*In re Korean Ramen Antitrust Litig.*,
    2017 WL 235052 (N.D. Cal. Jan. 19, 2017) ...................................................................6

*In re Lidoderm Antitrust Litig.*,
    No. 14-md-02521-WHO, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017)....................1, 2, 4, 7

*In re Nexium Antitrust Litig.*,
    777 F.3d 9 (1st Cir. 2015) .............................................................................................1, 7

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
    292 F. Supp. 3d 14 (D.D.C. 2017) ...................................................................................7

*In re Syngenta AG MIR 162 Corn Litig.*,
    No. 14-md-2591-JWL, 2016 WL 5371856 (D. Kan. Sept. 26, 2016) ............................9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. M 07-1827, 2012 WL 273883 (N.D. Cal. Jan. 30, 2012) .........................................1

*In re Urethanes Antitrust Litig.*,
    768 F.3d 1245 (10th Cir. 2014)......................................................................................5

*Le v. Zuffa, LLC*,
    216 F. Supp. 3d 1154 (D. Nev. 2016) ............................................................................4

*Leyva v. Medline Indus., Inc.*,
    716 F.3d 510 (9th Cir. 2013)..........................................................................................2

*Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*,
    140 F.3d 1228 (9th Cir. 1998)........................................................................................1

*Meijer, Inc. v. Abbott Labs*,
    No. C 07-5985 CW, 2008 WL 4065839 (N.D. Cal. Aug. 27, 2008) ...............................1

*Nitsch v. Dreamworks Animation SKG Inc.*,
    315 F.R.D. 270 (N.D. Cal. 2016) ....................................................................................6

iii

*Pit River Home & Agric. Coop. Ass'n v. United States,*
  30 F.3d 1088 (9th Cir. 1994)................................................................................9

*Sali v. Corona Reg'l Med. Ctr.,*
  909 F.3d 996 (9th Cir. 2018)..............................................................................2, 3

*Seaman v. Duke Univ.,*
  No. 1:15–cv–00462, 2018 WL 671239 (M.D. N.C. Feb. 1, 2018) ......................6

*Story Parchment Co. v. Paterson Parchment Paper Co.,*
  282 U.S. 555 (1931)............................................................................................1

*Thomas v. Bible,*
  983 F.2d 152 (9th Cir. 1993)...............................................................................9

*Torres v. Mercer Canyons, Inc.,*
  835 F.3d 1125 (9th Cir. 2016).........................................................................2, 4, 7

*Tyson Foods, Inc. v. Bouaphakeo,*
  136 S. Ct. 1036 (2016) ............................................................................. *passim*

*United States v. Alexander,*
  106 F.3d 874 (9th Cir. 1997)...............................................................................9

**Rules**

Federal Rule of Civil Procedure 23..................................................... *passim*

**Statutes**

28 U.S.C. §2072(b) ............................................................................................8

**Other Authorities**

Nᴇᴡʙᴇʀɢ ᴏɴ Cʟᴀss Aᴄᴛɪᴏɴs (4th ed. 2002) .......................................................4

Case No.: 2:15-cv-01045-RFB-(PAL)

PLAINTIFFS' STATEMENT REGARDING RULE 23 STANDARDS
**FILED UNDER SEAL**

This Court asked the parties to address the appropriate standard for assessing Plaintiffs' economic modeling (and other evidence) in support of class certification and the findings regarding that modeling (and other evidence) that would support a ruling on class certification. Minute Order, 2:15-cv-01045-RFB-PAL (D. Nev. Dec. 14, 2018), ECF No. 628. The economic modeling is most relevant to the predominance requirement of Rule 23(b)(3)[1]—the issue on which the Dec. 14, 2018 hearing focused.[2]

## I.       The Predominance Standard

Rule 23 requires the Court to conduct a rigorous analysis. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). To satisfy Rule 23(b)(3), the Court must find predominance, that is, that plaintiffs have shown by a preponderance of the evidence that common issues will predominate over individual issues in the litigation. That assessment depends on the nature of plaintiffs' claim. Here, Plaintiffs must prove three aspects of their case to recover at trial: an antitrust violation, classwide impact, and aggregate class damages. As a result, in addition to proffering a common means of proving aggregate damages,[3]

---

[1] For class certification, Plaintiffs must satisfy the requirements of Rule 23(a)(1)-(4) (numerosity, commonality, typicality, and adequacy) and Rule 23(b)(3) (predominance and superiority).

[2] There are standards relevant to Rule 23's requirements other than predominance. One is that a defendant cannot defeat class certification by merely speculating about a conflict of interest, and thereby contesting adequacy or typicality, but rather must show that a conflict is "apparent, imminent, and on an issue at the very heart of the suit," *Blackie v. Barrack*, 524 F.2d 891, 909 (9th Cir. 1975), and must provide actual evidence of a conflict. *Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003). Another one is that identifying some individual defenses that might arise for some class members is insufficient to defeat predominance. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 276 (2014). Yet another is that plaintiffs who suffer an indirect threat from an antitrust violation—even if they cannot show they have suffered actual harm—have standing under federal antitrust law to seek injunctive relief. *Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1235 (9th Cir. 1998); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827, 2012 WL 273883, at *2 (N.D. Cal. Jan. 30, 2012); *see also Haro v. Sebelius*, 747 F.3d 1099, 1108 (9th Cir. 2014).

[3] The amount of damages is a common issue if plaintiffs can calculate classwide (aggregate) damages with common proof. *See In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2017 WL 679367, at *15 (N.D. Cal. Feb. 21, 2017) (approving common proof of aggregate damages in certifying class in antitrust case) (citing *Meijer, Inc. v. Abbott Labs*, No. C 07-5985 CW, 2008 WL 4065839, at *7 (N.D. Cal. Aug. 27, 2008)); *see also In re Nexium Antitrust Litig.*, 777 F.3d 9, 19 (1st Cir. 2015) (same). But Zuffa in opposing class certification did not contest that Plaintiffs can do so, other than by implication based on the challenges it raises to Plaintiffs' expert testimony, discussed below. Courts have imposed a lenient standard for proving damages in antitrust cases, *Comcast*, 569 U.S. at 35; *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 263-66 (1946); *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 562-66 (1931), and have held that individual issues with respect to damages do not

either of two findings suffices for predominance: (1) that proof of an antitrust *violation* is common to the class and will predominate, *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 568 U.S. 455, 459-60, 466-70 (2013); *Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1135 (9th Cir. 2016); *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F. 3d 91, 108 (2d Cir. 2007); *Lidoderm*, 2017 WL 679367, at *1, 10; or (2) that proof of the *harm* (or impact) from any antitrust violation is common to the class (sometimes called "common impact"). *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1046-49 (2016); *In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1192 (N.D. Cal. 2013); *Lidoderm*, 2017 WL 679367, at *10, 12-13. Antitrust violations are almost invariably susceptible to common proof and often have classwide effects, so courts routinely certify antitrust classes. *Infra* nn.7, 11-13. Further, proving damages with an aggregate model is common to the class as a whole. *See supra* n.3.

   In the Ninth Circuit, as explained below, plaintiffs can establish predominance through expert modeling by showing it (1) relies on a plausible methodology and (2) is capable of showing classwide harm using common evidence (common impact). Plaintiffs need not show that a defendant *in fact* violated antitrust law, nor that any violation *in fact* impacted class members. The predominance inquiry is about whether plaintiffs' means of proof is common to the class, *not* whether that proof should prevail at trial. *Tyson Foods*, 136 S. Ct. at 1047-49; *Amgen*, 568 U.S. at 459-60, 467-70; *In re Capacitors Antitrust Litig.*, 3:17-md-02801-JD, slip op. at 4-5 (N.D. Cal. Nov. 14, 2018) (applying *Comcast*, *Tyson Foods*, *Amgen*, and *Torres* at class certification in antitrust). Here, Plaintiffs' expert modeling (and other analyses) satisfy predominance by relying on plausible methodologies and providing entirely common evidence that Zuffa violated federal antitrust law and caused measurable classwide harm.

## II.   A Plausible (or Admissible) Methodology

   Courts, including after *Comcast*, have applied one of two standards for gauging whether expert modeling constitutes appropriate evidence in support of predominance: (1) a more lenient "plausibility" standard in the Ninth Circuit, *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1004-06 (9th Cir. 2018), or

---

defeat class certification, including after *Comcast*. *See Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 513-14 (9th Cir. 2013) (post-*Comcast* decision).

Case No.: 2:15-cv-01045-RFB-(PAL)

PLAINTIFFS' STATEMENT REGARDING RULE 23 STANDARDS
**FILED UNDER SEAL**

1   (2) a stricter "admissibility" standard in some other circuits. *Id*. at 1005. *Sali* (post-*Comcast*) rejected

2   the requirement that plaintiffs must provide admissible evidence in support of class certification,

3   including under *Daubert*. *Id*. at 1004-06. Echoing *Amgen*, 568 U.S. at 477, *Sali* cautioned against

4   conducting a "mini-trial" at class certification. *Sali*, 909 F.3d at 1004. Instead, it held a trial court

5   should determine whether plaintiffs' evidence constitutes "material sufficient to form a reasonable

6   judgment" about whether Rule 23 is satisfied. *Id*. at 1005 (quoting *Blackie*, 524 F.2d at 901). Consistent

7   with *Sali*, trial courts in the Ninth Circuit have assessed whether expert evidence relies on "a plausible

8   methodology." *In re High-Tech Emp. Antitrust Litig*., 289 F.R.D. 555, 567 (N.D. Cal. 2013) (post-

9   *Comcast* antitrust class decision); *In re Cathode Ray Tube (CRT) Antitrust Litig*., 308 F.R.D. 606, 629

10   (N.D. Cal. 2015) (post-*Comcast* antitrust class decision) ("plausible"). Some Circuits require

11   admissibility of expert evidence at certification. *Sali*, 909 F.3d at 1005 (Fifth Circuit requires

12   admissibility, and Third and Seventh Circuits apply *Daubert*, but Eighth Circuit does not require

13   admissibility).

14        Plaintiffs rely here on Dr. Hal Singer's economic modeling, and other common evidence and

15   expert analyses, to show Zuffa violated federal antitrust law and classwide impact. The Court should

16   make a threshold determination of whether Plaintiffs' expert modeling relies on plausible—or at most

17   admissible—methodologies. If so, as explained in III *infra*, the remaining issue is whether that expert

18   modeling, and other common evidence, is *capable* of proving an antitrust violation, classwide impact,

19   and aggregate damages, *not* whether Plaintiffs should win on those issues at trial. *Tyson Foods*, 136 S.

20   Ct. at 1047-49; *Amgen*, 568 U.S. at 459-60, 467-70.

21  **III.**    **Evidence that Common Issues Will Predominate**

22       **A.**    **This Court Should Rely on Dr. Singer's Modeling, and Other Evidence, To Find**

23              **that Whether Zuffa Violated Antitrust Law Is Common and Will Predominate**

24        Plaintiffs presented classwide evidence capable of showing Zuffa violated federal antitrust law.

25   Specifically, Dr. Singer's economic modeling and other common evidence and expert analyses

26   (including by Prof. Andrew Zimbalist) show Zuffa engaged in a "Scheme" to acquire and maintain

27   monopsony and monopoly power. The Scheme involved Zuffa imposing long-term, exclusive contracts

28   on its fighters and using coercion and acquisitions to cause fighters to enter or remain in those

Case No.: 2:15-cv-01045-RFB-(PAL)

contracts, making them unavailable to potential rivals. Dr. Singer's economic modeling, and other common evidence, show the Scheme foreclosed other MMA promoters from challenging Zuffa's market dominance, enabling Zuffa to pay fighters less than half the amount they would have received in a more competitive market. Dr. Singer's economic modeling and other common evidence can show Zuffa violated federal antitrust law.

As this Court held in denying Zuffa's motion to dismiss, in assessing the legality of the Scheme, it should not be dismembered into separate parts; the Scheme's character and effects should be assessed as a whole.[4] As a result, whether Zuffa violated federal antitrust law is entirely common to the class. Because the Scheme should be evaluated as a whole, whether, for example, a particular individual was coerced is no more relevant to that individual's claim than to the claims of all other class members.[5] The Court should thus find, as many courts have in analogous circumstances, that the common issue of a violation will predominate over any individual issues, causing common issues to predominate in the case as a whole.[6]

### B.   This Court Should Rely on Dr. Singer's Economic Modeling, and Other Evidence, To Find that the Issue of Impact Is Common and Establishes Predominance

Proof of impact—here artificially decreased compensation—is also an element of Plaintiffs' claims. Courts in antitrust cases routinely find common issues predominate when plaintiffs show common impact, that is, common evidence can show classwide impact. *See Amchem Prods., Inc. v.*

---

[4] *Le v. Zuffa, LLC*, 216 F. Supp. 3d 1154, 1168-69 (D. Nev. 2016) (citing *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962); *Costco Wholesale Corp. v. Maleng*, 522 F.3d 874, 886 (9th Cir. 2008); *City of Anaheim v. S. California Edison Co.*, 955 F.2d 1373, 1376 (9th Cir. 1992)).
[5] Coercion is not an element of Plaintiffs' claims and Plaintiffs seek recovery only for decreased compensation, not the harm of coercion. So the only relevance of the coercion of any class member is insofar as it contributed incrementally to rendering Zuffa's Scheme as a whole illegal. For the same reason, Zuffa is incorrect that individual issues related to coercion or the like undermine typicality. What matters for all plaintiffs is whether the conduct as a whole violated antitrust law. That issue is by its nature common. Pls.' Mot. for Class Cert. at 16-18, 20-21, 2:15-cv-01045-RFB-PAL (D. Nev. Feb. 16, 2018), ECF No. 518 ("Class Mot."); Reply in Supp. of Pls.' Mot. for Class Cert. at 4-6, 16-19, 2:15-cv-01045-RFB-PAL (D. Nev. May 30, 2018), ECF No. 554 ("Class Reply").
[6] *High-Tech*, 985 F. Supp. 2d at 1227 (quoting 6 NEWBERG ON CLASS ACTIONS §18.25 (4th ed. 2002)) ("common liability issues such as conspiracy or *monopolization* have, almost invariably, been held to predominate over individual issues") (emphasis added); *Amgen*, 568 U.S. at 459-60, 467-70; *Torres*, 835 F.3d at 1135; *Cordes*, 502 F.3d at 108; *Lidoderm*, 2017 WL 679367, at *1, 10.

Case No.: 2:15-cv-01045-RFB-(PAL)

*Windsor*, 521 U.S. 591, 625 (1997) ("Predominance is a test readily met in certain cases alleging. . . violations of the antitrust laws.").[7] Dr. Singer uses two forms of modeling, each of which has been held to suffice by itself to show common impact: (1) an impact regression and (2) a pay structure analysis.[8] If the Court finds these methodologies plausible, it should then determine whether the evidence of impact is common to the class, *not* whether Plaintiffs have in fact shown common impact. *Tyson Foods*, 136 S. Ct. at 1047-49; *Amgen*, 568 U.S. at 459-60, 467-70; *High-Tech*, 985 F. Supp. 2d at 1192.

**Impact Regression**. Dr. Singer undertakes an impact regression showing the effect of Zuffa's "Foreclosure Share" on its "Wage Share." Foreclosure Share is the proportion of MMA fighters at promoters in the relevant market subject to Zuffa's long-term, exclusive contracts. Wage Share is the percentage of Zuffa's event revenues that it pays its fighters.[9] The impact regression shows that Zuffa's increasing Foreclosure Share caused a decline in its Wage Share, enabling it to pay its fighters ▆▆ or less of its event revenues, whereas without the Scheme it would have paid them about ▆▆ or more. It also shows that Zuffa's Scheme suppressed the compensation of more than 99% of its fighters.[10] Numerous courts (post-*Comcast*) have found predominance where experts used the same regression methodology used here to show impact to more than 95% of the class.[11] Neither Zuffa nor any of its

---

[7] *See also In re Urethanes Antitrust Litig.*, 768 F.3d 1245, 1254-56 (10th Cir. 2014); *CRT*, 308 F.R.D. at 625-28; cases cited *infra* at nn.11-13.

[8] Dr. Singer also uses a common methodology to calculate the aggregate class damages. Expert Report of Hal J. Singer, Ph.D. (Aug. 31, 2017) ("SR1"), at ¶¶245-256 & Tables 9-12; Rebuttal Expert Report of Hal J. Singer, Ph.D. (Jan. 12, 2018) ("SR2"), at ¶¶171-86. So did Prof. Zimbalist, comparing Zuffa's suppressed Wage Share of ▆▆ or less to the more competitive wage shares in boxing, MLB, the NBA, the NFL, and the NHL, all of which pay athletes Wage Shares of about 50% or higher. Expert Report of Andrew Zimbalist in Cung Le, et al. v. Zuffa, LLC (Aug. 31, 2017), at ¶¶123-26 & Tables 4-6.

[9] In addition to Dr. Singer's expert opinion, and an extensive economics literature, Dr. Alan Manning—whom Zuffa's own expert characterized as "particularly authoritative," Deposition of Paul Oyer (Nov. 29, 2017), at 122:6-123:6—confirms that use of Wage Share is appropriate in this case. Expert Rebuttal Report of Prof. Alan Manning (Jan. 12, 2018), at ¶¶5-6, 24-31.

[10] Technically, this analysis involves two steps: (1) Dr. Singer's regression analyses and other evidence showing Zuffa's Scheme artificially decreased fighter compensation in general; and (2) a regression calculating the impact of the Scheme on each class member, showing harm to over 99% of the class. Class Mot. at 3, 14-15, 23-26; Class Reply at 2, 6-7, 10-11.

[11] *See In re Air Cargo Ship. Servs. Antitrust Litig.*, No. 06–MD–1175 (JG) (VVP), 2014 WL 7882100, at *55 (E.D.N.Y. Oct. 15, 2014) (holding same methodology Dr. Singer uses to show impact to 96% of class sufficed for common impact, predominance, and class certification); *Capacitors*, 3:17-md-02801-JD, slip op. at 9-14, 18 (same for impact to over 99% of class); *In re Chocolate Confectionary Antitrust Litig.*, 289 F.R.D. 200, 221 (M.D. Pa. 2012) (same for impact to 98% of class); *In re Disposable*

---

Case No.: 2:15-cv-01045-RFB-(PAL)

experts has contested that Dr. Singer's impact regression, if correctly specified, is capable of showing impact to virtually all class members.

**Pay Structure**. Dr. Singer offers a second standard proof of common impact: a pay structure analysis, showing the compensation of each fighter varied consistently with the compensation of other fighters and fighter pay in general. Evidence of Zuffa's pay structure includes: admissions from former and current Zuffa employees and managers that Zuffa maintained "internal pay equity" and from Zuffa's expert, Dr. Topel, that compensation to fighters "at all levels" moved together; and two statistical analyses—a common factors regression and a sharing analysis. That evidence confirms the impact regression and independently suffices for common impact, *i.e.*, common evidence of classwide impact.[12]

A court should find an element is common—and supports predominance—when plaintiffs, in attempting to prove the element, will rely on the same evidence for the class in general as they would for individual class members, as in *Amgen*. In that securities action, whether the alleged misrepresentations were "material" would be decided using the same evidence for the class as a whole as for each class member. As a result, the Supreme Court held plaintiffs need not establish materiality for predominance, but only that materiality would be proven—or disproven—with classwide evidence. *Amgen*, 568 U.S. at 469-70. The claims of the class members would "prevail or fail in unison," rendering the issue common. *Id.* at 460.

The same was true in *Tyson Foods*. In that wage and hour case, all plaintiffs relied on the same evidence at trial to show that they were harmed (impacted) by the defendant's failure to compensate or keep track of time class members spent putting on and taking off protective gear. The plaintiffs' proof of impact depended on an expert analysis of a representative sample of workers. The Court noted the defendant was free to challenge the expert's approach—by arguing, for example, that it was

*Contact Lens Antitrust Litig.*, No. 3:15-md-2626-J-20JRK, slip op. at 95-96 (M.D. Fl. Dec. 4, 2018) (same for impact to at least 96% of class); *In re Domestic Drywall Antitrust Litig.*, 2017 WL 3623466, at *27 (E.D. Pa. Aug. 23, 2017) (same for impact to over 98% of class); *In re Korean Ramen Antitrust Litig.*, 2017 WL 235052, at *6 (N.D. Cal. Jan. 19, 2017) (same for impact to 98% of class).

[12] *See, e.g.*, *High-Tech*, 985 F. Supp. 2d at 1213-15, 1221 (finding evidence of pay structure sufficient to establish classwide impact); *Seaman v. Duke Univ.*, No. 1:15–cv–00462, 2018 WL 671239, at *4-6 (M.D. N.C. Feb. 1, 2018) (same); *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 299-300, 303-04 (N.D. Cal. 2016) (same).

"unrepresentative or inaccurate." *Tyson Foods*, 136 S. Ct. at 1047. But the trial court should *not* decide at certification whether class members had in fact been undercompensated. *Id*. The Court explained that plaintiffs'

> failure of proof on this common question likely would have ended the litigation and thus would not have caused individual questions to overwhelm questions common to the class. When, as here, the concern about the proposed class is not that it exhibits some fatal dissimilarity but, rather, a fatal similarity—an alleged failure of proof as to an element of the plaintiffs' cause of action—courts should engage that question as a matter of summary judgment, not class certification.

*Id*. (internal citation, quotation marks and alterations omitted). The plaintiffs would "prevail or fail" together on the element of impact (uncompensated work) based on the expert testimony, so the trial court should not resolve it on the merits in ruling on predominance.

The same is true for Dr. Singer's economic modeling (and other common evidence) of impact here. As noted above, he relies on: (1) an impact regression and (2) a pay structure analysis. Zuffa does not deny injury to 95% of a class suffices for common impact.[13] Zuffa's expert, Dr. Topel (while contesting use of Wage Share), confirmed Dr. Singer's regression showing impact to about 99% of class members.[14] Further, Dr. Singer can identify the fighters the model does not show were harmed (who can be excluded from the class or be allocated no recovery) and excluding them from the class would have little effect on aggregate damages.[15]

Zuffa's criticisms of Dr. Singer's impact regression are also common to the class, either causing the regression to fail entirely—for the whole class and each class member—or not at all. Zuffa primarily challenges Dr. Singer's use of Wage Share and his definition of Foreclosure Share. Both

---

[13] Zuffa, LLC's Opp'n to Pls.' Mot. for Class Cert. at 24, 2:15-cv-01045 (D. Nev. Apr. 6, 2018), ECF No. 540 (evidence of 5% to 6% uninjured class members does not defeat predominance) (quoting *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 292 F. Supp. 3d 14, 137-38 (D.D.C. 2017); *see* cases cited *supra* n.11; *Torres*, 835 F.3d at 1136 (uninjured class members permissible); *Nexium*, 777 F.3d at 30-31 (same); *Lidoderm*, 2017 WL 679367 at *11 (same).

[14] Dr. Topel made a calculation error in finding Dr. Singer's regression did not show impact to 14 of the 1,200 or so fighters; the right number even using Dr. Topel's conservative approach is 10. SR2 ¶¶150-52 & Tables 2-3. That discrepancy does not matter for present purposes.

[15] Second Supplemental Reply Report of Hal J. Singer, Ph.D. (May 28, 2018) ("SR4"), at ¶43; *Torres*, 835 F.3d at 1136-38, 1140-41 (allowing class with uninjured members). *Tyson Foods* approved certification of classes that may contain uninjured class members, as was possible in that case. 136 S. Ct. at 1050.

Case No.: 2:15-cv-01045-RFB-(PAL)

arguments are wrong. But if Zuffa prevails on either at trial, that would eliminate the impact regression as evidence of impact for *any* class member—giving rise not to a potential "fatal dissimilarity but, rather, a fatal similarity." *Tyson Foods*, 136 S. Ct. at 1047. Zuffa has *not* argued—as defendants typically do where the evidence allows—that the impact regression was run improperly and, if fixed, shows harm to only a modest percentage of the class. As a result, this Court should find in this case, as in *Tyson Foods*, the evidence of impact to the class in general is the same as for individual class members. This Court should not decide on the merits whether Plaintiffs have in fact shown common impact, but only that proof of impact is plausible (or admissible) and is common to the class. *Id.* at 1047-49.

The same is true for the evidence of a pay structure, showing that if Zuffa suppressed fighter compensation generally, it suppressed compensation to virtually all class members. Zuffa denies that it maintains internal pay equity—mistakenly assuming it requires a lock-step pay scale[16]—and contests Dr. Singer's statistical analyses. Again, Zuffa's criticisms are wrong. But if they prevail, Zuffa will have eliminated Plaintiffs' ability to rely on the pay structure to show impact to *anyone.* And if Zuffa prevails on both the impact regression and pay structure, Plaintiffs will be unable to prove impact to the class or *any class member*, creating no individual questions—a fatal similarity, not a fatal dissimilarity. *Tyson Foods*, 136 S. Ct. at 1047 ("failure of proof on this common question likely would have ended the litigation and thus would not have caused individual questions to overwhelm questions common to the class").

*Tyson Foods* held that if expert evidence is admissible—and capable of proving impact for individual plaintiffs and the class as a whole—requiring any additional showing in the class setting would violate the Rules Enabling Act. As the Supreme Court explained, "In a case where. . . evidence is relevant in proving a plaintiff's individual claim, that evidence cannot be deemed improper merely because the claim is brought on behalf of a class. To so hold would ignore the Rules Enabling Act's pellucid instruction that use of the class cannot 'abridge. . . any substantive right.'" 136 S. Ct. at 1046 (quoting 28 U.S.C. §2072(b)). The Court further explained, "Once a district court finds evidence to be admissible, its persuasiveness is, in general, a matter for the jury. Reasonable minds may differ as to

---

[16] *See* SR2 ¶154 & n.530 (quoting Topel Dep. at 176:23-177:6).

whether" expert testimony is probative of the element at issue. *Id.* at 1049. "Resolving that question, however, is the near-exclusive province of the jury. The District Court could have denied class certification on this ground only if it concluded that no reasonable juror could have" decided the issue for plaintiffs. *Id.*; *see In re Syngenta AG MIR 162 Corn Litig.*, No. 14-md-2591-JWL, 2016 WL 5371856, at \*7 (D. Kan. Sept. 26, 2016) (applying *Tyson Foods* in certifying class and holding the jury, not the judge, should evaluate the persuasiveness of admissible evidence).

## IV.    This Court Should Not Make Findings Now that Have a Preclusive Effect

Consistent with the above, this Court should assess only whether plaintiffs' expert modeling relies on plausible (or, at most, admissible) methodologies and whether, if the *jury* finds the modeling persuasive, it provides common evidence of a violation and classwide impact. On the other hand, if, on Zuffa's request and over Plaintiffs' objections, this Court resolves the issue of common impact on the merits, under Ninth Circuit precedent, its finding should be law of the case, unless a standard exception to that doctrine applies. *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997); *Pit River Home & Agric. Coop. Ass'n v. United States*, 30 F.3d 1088, 1096-97 (9th Cir. 1994); *Thomas v. Bible*, 983 F.2d 152, 155 (9th Cir. 1993).

PLAINTIFFS' STATEMENT REGARDING RULE 23 STANDARDS
**FILED UNDER SEAL**

**V.      Proposed Findings for the Court to Make in Assessing Predominance**

With respect to predominance, the Court should find:

1. Common issues predominate over any individual issues in this case.

2. Plaintiffs have offered plausible [or admissible] common methodologies and evidence capable of establishing Zuffa violated federal antitrust law.

3. Determining whether Zuffa's Scheme violated federal antitrust law is an issue common to the class and predominates over any individual issues that may exist.

4. The evidence Plaintiffs have presented of antitrust impact, including expert testimony, is the same for the class as a whole as for individual class members, such that the class members will prevail or fail in unison on impact.

5. Dr. Singer's impact regression and other common evidence, including Prof. Zimbalist's modeling, provide a plausible [or admissible] common methodology capable of proving the Scheme artificially decreased UFC fighter compensation generally.

6. Plaintiffs have offered plausible [or admissible] common methodologies and evidence that, if found persuasive, would prove the Scheme caused classwide impact.

7. Dr. Singer's impact regression relies on plausible [or admissible] common methodologies capable of showing classwide harm, *i.e.*, harm to over 99% of class members.

8. Dr. Singer's evidence of a pay structure also relies on plausible [or admissible] common methodologies capable of showing classwide harm using common evidence.

9. The Court can identify any members of the class for which the impact regression does not prove injury and later eliminate them from the class or ensure they are not allocated any funds from any recovery, if the Court deems doing so to be appropriate.

10. Dr. Singer and Prof. Zimbalist present plausible [or admissible] common means of calculating aggregate damages susceptible to proof common to the class.

Dated: January 9, 2019

Respectfully Submitted,

By: /s/ Eric L. Cramer
    Eric L. Cramer

Eric L. Cramer (*Pro Hac Vice*)
Michael Dell'Angelo (*Pro Hac Vice*)
Patrick F. Madden (*Pro Hac Vice*)
Mark R. Suter (*Pro Hac Vice*)
BERGER|MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Phone: (215) 875-3000/Fax: (215) 875-4604
ecramer@bm.net
mdellangelo@bm.net
pmadden@bm.net
msuter@bm.net

Joseph R. Saveri (*Pro Hac Vice*)
Joshua P. Davis (*Pro Hac Vice*)
Jiamin Chen (*Pro Hac Vice*)
Kevin E. Rayhill (*Pro Hac Vice*)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Phone: (415) 500-6800/Fax: (415) 395-9940
jsaveri@saverilawfirm.com
jdavis@saverilawfirm.com
jchen@saverilawfirm.com
krayhill@saverilawfirm.com

Benjamin D. Brown (*Pro Hac Vice*)
Richard A. Koffman (*Pro Hac Vice*)
Daniel H. Silverman (*Pro Hac Vice*)
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., N.W., Suite 500
Washington, DC 20005
Phone: (202) 408-4600/Fax: (202) 408 4699
bbrown@cohenmilstein.com
rkoffman@cohenmilstein.com
dsilverman@cohenmilstein.com

**Co-Lead Class Counsel**

**Liaison Counsel for the Class**

Don Springmeyer (Nevada Bar No. 1021)
Bradley S. Schrager (Nevada Bar No. 10217)
WOLF, RIFKIN, SHAPIRO, SCHULMAN &
RABKIN, LLP
3556 E. Russell Road, Second Floor
Las Vegas, Nevada 89120
Phone: (702) 341-5200/Fax (702) 341-5300
dspringmeyer@wrslawyers.com
bschrager@wrslawyers.com

**Additional Counsel for the Classes**:

Robert C. Maysey (*Pro Hac Vice*)
Jerome K. Elwell (*Pro Hac Vice*)
WARNER ANGLE HALLAM JACKSON &
FORMANEK PLC
2555 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Phone: (602) 264-7101/Fax: (602) 234-0419
rmaysey@warnerangle.com
jelwell@warnerangle.com

Frederick S. Schwartz (*pro hac vice*)
LAW OFFICE OF FREDERICK S. SCHWARTZ
15303 Ventura Boulevard, #1040
Sherman Oaks, CA 91403
Phone: (818) 986-2407/Fax: (818) 995-4124
fred@fredschwartzlaw.com

William G. Caldes (admitted *pro hac vice*)
SPECTOR ROSEMAN KODROFF & WILLIS, P.C.
1818 Market Street – Suite 2500
Philadelphia, PA 19103
Phone: (215) 496-0300/Fax: (215) 496-6611
wcaldes@srkw-law.com

John D. Radice (admitted *pro hac vice*)
RADICE LAW FIRM, P.C.
34 Sunset Blvd.
Long Beach, NJ 08008
Phone: (646) 245-8502
jradice@radicelawfirm.com

PLAINTIFFS' STATEMENT REGARDING RULE 23 STANDARDS
**FILED UNDER SEAL**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of January, 2019 a true and correct copy of **PLAINTIFFS' STATEMENT REGARDING RULE 23 STANDARDS** and supporting papers was served via email and the Court's CM/ECF system on all parties or persons requiring notice.

<u>      /s/ *Eric L. Cramer*          </u>
Eric L. Cramer

Case No.: 2:15-cv-01045-RFB-(PAL)

PLAINTIFFS' STATEMENT REGARDING RULE 23 STANDARDS
<u>FILED UNDER SEAL</u>