Eric L. Cramer (*Pro Hac Vice*)
Michael Dell'Angelo (*Pro Hac Vice*)
Patrick F. Madden (*Pro Hac Vice*)
Mark R. Suter (*Pro Hac Vice*)
BERGER|MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
ecramer@bm.net
mdellangelo@bm.net
pmadden@bm.net
msuter@bm.net

*Co-Lead Counsel for the Classes and Attorneys for Individual and Representative Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Luis Javier Vazquez, Brandon Vera, and Kyle Kingsbury*

*(Additional counsel appear on signature page)*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,

Defendant.

Case No.: 2:15-cv-01045-RFB-PAL

**PLAINTIFFS' REPLY STATEMENT REGARDING RULE 23 STANDARDS**

**Table of Contents**


I. THE PREDOMINANCE STANDARD. ........ 1

II. NO ADMISSIBILITY REQUIREMENT IN THE NINTH CIRCUIT. ........ 2

III. ZUFFA'S INCONSISTENT AND AT TIMES INCORRECT COMMON IMPACT STANDARD. ........ 2

IV. ZUFFA CONFUSES THE COMMON AND ALLEGED INDIVIDUAL ISSUES IN THIS CASE. ........ 5

V. COMMON ISSUES PREDOMINATE IN THE CASE AS A WHOLE. ........ 8

VI. *COMCAST*. ........ 8

**TABLE OF AUTHORITIES**

**Cases**

*Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 568 U.S. 455 (2013) ........ passim

*Basic Inc. v. Levinson*, 485 U.S. 224 (1988) ........ 6

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) ........ 2

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ........ passim

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690 (1962) ........ 9

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91 (2d Cir. 2007) ........ 8

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ........ 4

*Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014) ........ 6

*In re Cathode Ray Tube Antitrust Litig.*, 308 F.R.D. 606 (N.D. Cal. 2015) ........ 2

*In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919 (C.D. Cal. 2015) ........ 4

*In re High-Tech Emp. Antitrust Litig.*, 289 F.R.D. 555 (N.D. Cal. 2013) ........ 2

*In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167 (N.D. Cal. 2013) ........ 4, 8

*In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3d Cir. 2009) ........ 3, 4

*In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017) ........ 8

*In re Optical Disk Drive Antitrust Litig.*, 303 F.R.D. 311 (N.D. Cal. 2014) ....... 7

*In re Rail Freight Fuel Surcharge Antitrust Litig.*, 292 F. Supp. 3d 14 (D.D.C. 2017) ....... 4, 9

*Le v. Zuffa, LLC*, 216 F. Supp. 3d 1154 (D. Nev. 2016) ....... 9

*Leyva v. Medline Indus., Inc.*, 716 F.3d 510 (9th Cir. 2013) ....... 10

*Reed v. Advocate Health Care*, 268 F.R.D. 573 (N.D. Ill. 2009) ....... 7

*Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996 (9th Cir. 2018) ....... 2, 4

*SourceOne Dental, Inc. v. Patterson Companies, Inc.*, No. 15-cv-5440 (BMC), 2018 WL 2172667 (E.D.N.Y. May 10, 2018) ....... 9

*Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555 (1931) ....... 9

*Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125 (9th Cir. 2016) ....... 1, 2, 8

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) ....... passim

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ....... 3, 5, 6

**<u>Other Authorities</u>**

Davis, J. & Cramer, E., *Antitrust, Class Certification, and the Politics of Procedure*, 17 GEO. MASON L. REV. 969 (2010) ....... 4

## I. The Predominance Standard.

To show predominance at class certification, plaintiffs' expert modeling (and other evidence) must be: (1) plausible (or, at most, admissible); and (2) common to the class. Plaintiffs' Rule 23 briefing sets forth this standard and its legal basis, and applies it to this case. ECF No. 518 ("Class Mot.") at 18-30; ECF No. 554 ("Class Reply") at 3-15; ECF No. 633 ("Pls.' Rule 23 Br.") at 1-9. Nonetheless, Zuffa claims, "Plaintiffs' position [is] that a finding that the expert evidence they have tendered is admissible under *Daubert* necessarily satisfies the Rule 23 standard." ECF No. 634 ("Zuffa's Rule 23 Br.," hereafter "Z") at 4. Untrue. Plaintiffs do not claim admissibility is enough. They agree that they must establish that they have common evidence *capable of* proving the predominant issues in this case.[1] Plaintiffs have done so by offering common evidence in support of the elements of their claims and classwide damages. That suffices for predominance. *Tyson Foods*, 136 S. Ct. at 1046-49; *Comcast Corp. v. Behrend*, 569 U.S. 27, 30 (2013); *Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1134-35 (9th Cir. 2016). As a result, much of Zuffa's recent brief on the Rule 23 standard attacks a strawman.[2]

Beyond critiquing a standard that Plaintiffs do not propose, Zuffa's brief makes five critical errors. ***First***, Zuffa is wrong that the Ninth Circuit requires plaintiffs' evidence at class certification to be admissible, as opposed to plausible. ***Second***, Zuffa vacillates between two different standards for common impact: that Plaintiffs must offer common evidence *capable of* showing classwide harm[3]—which is correct—and that Plaintiffs must actually *prove* classwide harm at class certification[4]—which is incorrect. ***Third***, Zuffa is wrong about which of its critiques of Plaintiffs' evidence of common

[1] Zuffa implies that at the hearing on December 14, 2018, Plaintiffs argued that if evidence is admissible it necessarily satisfies predominance under *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016). Z at 4 (quoting ECF No. 627 ("Dec. 14 Hearing Tr.") at 29:13-15). Not so. What Plaintiffs in fact argued was that *if* the issue of impact is common to the class—if the effort to prove impact for all class members "rises and falls together," Dec. 14 Hearing Tr. at 29:7—then *Tyson Foods* holds admissibility suffices under Rule 23 and the common issue should be decided by the jury. As explained below, that is what *Tyson Foods* holds. *Tyson Foods*, 136 S. Ct. at 1046-49.

[2] *See* Z at 4-9 ("Clearing the *Daubert* Hurdle Is Not Enough to Carry Plaintiffs' Burden of Persuasion").

[3] *See, e.g.*, Z at 9:16-18 (arguing that to certify a class this Court would need to conclude "that it is persuaded that [Plaintiffs' experts'] models are *capable of*. . . showing reliably that all or virtually all members of the class suffered antitrust injury") (emphasis added).

[4] *See, e.g.*, Z at 2:15-16 ("to establish predominance under Rule 23(b)(3), plaintiffs must show that all or virtually all members of the class suffered antitrust injury, called common impact"); *id.* at 2:18-19 ("it is this Court that must determine whether Plaintiffs' experts have proven common impact").

impact raise potential individual issues (and wrong about the critiques themselves). ***Fourth***, Zuffa ignores Supreme Court and Ninth Circuit precedent holding that common issues must predominate in the case as a whole, not as to each element. ***Fifth***, Zuffa misinterprets *Comcast*.

## II. No Admissibility Requirement in the Ninth Circuit.

As this Court held, ECF No. 600 (Sept. 27, 2018 Minute Order), the Ninth Circuit has refused (post-*Comcast*) to restrict the class decision to admissible evidence. *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1004-06 (9th Cir. 2018). *Sali* held a trial court should consider, regardless of admissibility, any "material sufficient to form a reasonable judgment" about whether Rule 23 is satisfied. *Id.* at 1005 (quoting *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975)). That holding is consistent with trial courts in the Ninth Circuit adopting a plausibility standard. *See, e.g., In re High-Tech Emp. Antitrust Litig.*, 289 F.R.D. 555, 567 (N.D. Cal. 2013) (requiring only that expert uses "a plausible methodology"); *In re Cathode Ray Tube Antitrust Litig.*, 308 F.R.D. 606, 629 (N.D. Cal. 2015) ("plausible"). Zuffa's argument to the contrary is at odds with binding Ninth Circuit law.[5]

## III. Zuffa's Inconsistent and at Times Incorrect Common Impact Standard.

As Plaintiffs have explained, one way they can satisfy predominance is by showing common impact. Zuffa does not contest that courts routinely find predominance in antitrust cases if plaintiffs show common impact. It also concedes once again that impact to 95% of a class suffices for common impact. Z at 9, n.5. But Zuffa provides two inconsistent descriptions of the relevant showing Plaintiffs must make. First, for most of Zuffa's brief, it admits that Plaintiffs need only provide evidence "capable of"[6] showing classwide harm (or harm to "all or virtually all"[7] class members).[8] That

---

[5] Zuffa's position here also conflicts with its own counsel's successful argument in *Beltran, et al. v. Interexchange*, 1:14-cv-03074-CMA-KMT (D. Colo.), that the standard for assessing expert evidence at the class stage, given *Tyson Foods*, was a step below a full-blown *Daubert* analysis, and an expert report can be stricken at class only if the court "assure[s] itself that there could be 'no workable model' for trial, and that 'no reasonable juror' could believe such a model provides case-wide proof." Pls.' Opp. to Def.'s *Daubert* Mot. as to Class Cert. Opinions, at 16, 1:14-cv-03074-CMA-KMT (D. Colo. Aug. 8, 2017), ECF No. 650.

[6] Z at 9:16.

[7] Z at 2:15-16, 2:21, 9:17, 9:20, 9:25. In the Ninth Circuit, a class should be certified unless it contains "a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct." *Torres*, 835 F.3d at 1138 (citation and quotation marks omitted).

[8] *See, e.g.*, Z at 6:26-28 (summarizing Zuffa's analysis of the case law as holding that a court "must deny certification when the judge is not persuaded that the proffered evidence *can resolve* issues of

concession is unsurprising. The Supreme Court has held time and again that plaintiffs need *not* show that they will win on the merits, but only that common issues will predominate as they *attempt* to do so. *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 568 U.S. 455, 459 (2013); *cf. Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (discussing commonality, not predominance, and noting trial court must find an issue that is "capable of classwide resolution," not that plaintiffs will win on the issue). In regard to common impact, plaintiffs need show only that they will use common evidence *capable of* establishing classwide harm. *Tyson Foods*, 136 S. Ct. at 1046-49 (holding if evidence of impact is admissible, and common to class, common issues predominate and the jury must decide if plaintiffs should prevail on the merits); *Comcast*, 569 U.S. at 30 (common impact involves showing that "antitrust impact" is "*capable of proof* at trial through evidence that [is] common to the class rather than individual to its members") (emphasis added). Zuffa implies repeatedly that Plaintiffs here seek to evade their burden of persuasion under Rule 23. Not so. Plaintiffs agree they must persuade the Court that common issues will predominate if the case is litigated on a class basis. But that is all they must show. Rule 23 is *procedural*. It determines how to litigate, not who should win. *Tyson Foods*, 1036 S. Ct. at 1047-49; *Amgen*, 568 U.S. at 459; *Comcast*, 569 U.S. at 34-35; *Wal-Mart*, 564 U.S. at 362.

The second, inconsistent standard Zuffa at times suggests misses this key distinction and conflicts with the precedents it cites. Zuffa asserts that Plaintiffs here cannot merely offer common evidence *capable of* proving classwide impact; Zuffa claims that "this Court. . . must determine whether Plaintiffs' experts have proven common impact." Z at 2:18-19. Zuffa says little in support of this position, other than that standard jury verdict forms and instructions do not ask the jury to decide whether conduct harmed all or virtually all class members. *Id.* at 2:19-21. So Zuffa proposes that this Court should resolve this merits issue in the jury's place.

---

injury or damages for all class members") (citing *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 323-24 (3d Cir. 2009); *Comcast*, 569 U.S. at 35) (emphasis added). Here, Zuffa rightly recognizes the issue is whether an issue *can be resolved* for the class in general, not whether plaintiffs should win. The cases Zuffa cites confirm this standard. *See, e.g., Hydrogen Peroxide*, 552 F.3d at 311-12 ("Plaintiffs' burden at the class certification stage is *not* to prove the element of antitrust impact, although in order to prevail on the merits each class member must do so. Instead, the task for plaintiffs at class certification is to demonstrate that the element of antitrust impact is *capable of proof* at trial through evidence that is common to the class rather than individual to its members.") (emphasis added); *Comcast*, 569 U.S. at 30 (same).

Zuffa cites no case law supporting this improper suggestion. The predominance requirement asks that a trial court anticipate how the trial will proceed—will it involve predominantly common issues? *Hydrogen Peroxide*, 552 F.3d at 325 ("the question at [the] class certification stage is whether, if such impact is plausible in theory, it is also susceptible to proof at trial through available evidence common to the class"); *In re High Tech Empl. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1226 (N.D. Cal. 2013) (predominance entails an "analysis into how this case, should it proceed to trial, would actually be litigated").[9] The predominance requirement does not add a new substantive element to plaintiffs' claims. So there are only two relevant possibilities. First, Plaintiffs may have to show classwide impact at trial and the jury in this case should be asked to determine whether Plaintiffs have done so.[10] If so, class plaintiffs need merely present common evidence *capable of* showing classwide impact. It will then be up to the jury to assess that common evidence. The second possibility is, as Zuffa suggests, that the jury need *not* find classwide harm at trial. If not, this Court should not assess whether common proof is capable of proving classwide harm because that issue will not arise. What cannot be correct is what Zuffa in effect argues: that this Court should err by asking the jury to make the wrong findings and the Court should then fix that anticipated problem by usurping the role of the jury and resolving the

[9] Zuffa notes that *High-Tech* inquired into whether the expert opinion was "persuasive." Z at 3:5. But *High-Tech* held that plaintiffs must persuade the court only that plaintiffs have provided common evidence *capable of* proving common impact. *High-Tech*, 985 F.Supp.2d at 1192 ("Ultimately, the Court is not tasked at this phase with determining whether Plaintiffs will prevail on these theories. Rather, the question is narrower: whether Plaintiffs have presented a sufficiently reliable theory to demonstrate that common evidence *can be used* to demonstrate impact.") (emphasis added). Similarly, *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 983 (9th Cir. 2011), specifically rejected the argument that plaintiffs must prove discrimination to establish commonality in an employment discrimination case at class certification, holding they had to show only that there was sufficient proof of a common policy to raise a common issue. *See also In re Rail Freight Fuel Surcharge Antitrust Litig.*, 292 F. Supp. 3d 14, 96 (D.D.C. 2017) ("On remand, the central issue in this case again is whether the second element of plaintiffs' claim—individual impact resulting from the alleged conspiracy—is *capable of* common proof.") (emphasis added); *In re ConAgra Foods, Inc*., 90 F. Supp. 3d 919, 987 (C.D. Cal. 2015) (holding predominance requires only that claims "are susceptible of classwide proof"), *aff'd sub nom. Briseno v. ConAgra Foods, Inc*., 844 F.3d 1121 (9th Cir. 2017)). Zuffa even goes so far as to cite *Sali* for the argument that evidence must be persuasive, not just admissible, Z at 3:14-16, 7:4-11, when the Ninth Circuit's point was that courts should consider evidence if it is persuasive, even if it is *not* admissible. *Sali*, 909 F.3d at 1004-06.

[10] Along these lines, verdict forms typically require a finding that conduct harmed "the class" or "class members." *See* Davis, J. & Cramer, E., *Antitrust, Class Certification, and the Politics of Procedure*, 17 GEO. MASON L. REV. 969, 992, n.127 (2010) (citing several verdict forms in antitrust trials).

merits issue of impact at class certification. *Amgen* warned against just that sort of improper mini-trial. 568 U.S. at 477. As *Tyson Foods* held, merits issues are the "near-exclusive province of the jury," to be taken from it only if "no reasonable jury" could decide in plaintiffs' favor. 136 S. Ct. at 1049.

## IV. Zuffa Confuses the Common and Alleged Individual Issues in this Case.

The Supreme Court cases Zuffa cites recognize trial courts should *not* resolve issues common to the class. *Tyson Foods*, 136 S. Ct. at 1049; *Amgen*, 568 U.S. at 459, 468-70; *Wal-Mart*, 564 U.S. at 362; *Comcast*, 569 U.S. at 34-35. These cases treat as common those issues that depend on evidence common to the class as a whole, such that (a) the class members' claims will succeed or fail together, and (b) if plaintiffs' evidence fails, the litigation will simply end, and not be mired in predominantly individual issues. *Tyson Foods*, 136 S. Ct. at 1047; *Amgen*, 568 U.S. at 459-60, 468, 481. Based on that standard, Plaintiffs' expert modeling (and other evidence) in support of impact here is common to the class, as are Zuffa's key criticisms. Plaintiffs' expert modeling relies on common evidence; it will succeed or fail for the class in general; and if it fails, all class members will lose, and no individual issues will arise. Similarly, Zuffa's main criticisms—if the jury finds them persuasive—will have the same effect for the class in general as for each class member.

The expert modeling of impact takes two primary forms: Dr. Singer's impact regression and his pay structure analysis. The impact regression enables him to use a common model to assess impact on a fighter-by-fighter and bout-by-bout basis, establishing Zuffa's Scheme caused over 99% of the class to be undercompensated. Expert Report of Hal J. Singer, Ph.D. (Aug. 31, 2017) ("SR1") at ¶¶230-32 & Tbl. 8; Singer Dep. Ex. 3 ("Singer Errata II") at 4; Rebuttal Expert Report of Hal J. Singer, Ph.D. (Jan. 12, 2018) ("SR2") at ¶¶150-52 & Tbl. 2. His pay structure analysis shows the pay of each fighter varied consistently with the pay of other fighters and with fighter pay in general, and thus that a factor generally depressing fighter pay—such as the Scheme—would depress the pay of all or virtually all fighters. SR1 ¶¶227-29 & Tbl. 7; SR2 ¶¶158-64. Both models are common to all class members. If the jury rejects both the impact regression and the pay structure analysis, Plaintiffs will have no means left to prove impact at all—not to the class as a whole and not to any individual class members. No individual class members can know—without the kind of economic modeling Plaintiffs' experts do—what they would have been paid in a hypothetical world without Zuffa's Scheme. The failure of the

modeling would defeat the claims of each class member—a fatal similarity, not a fatal dissimilarity. *Tyson Foods*, 136 S. Ct. at 1047; *Amgen*, 568 U.S. at 459-60, 468-70.

This litigation is thus unlike the cases on which Zuffa relies, such as *Basic Inc. v. Levinson*, 485 U.S. 224 (1988) (discussed in *Wal-Mart*, 564 U.S. at 351-52) (cited in Z at 5:22). *Basic* involved securities fraud. The trial court had to determine whether the market at issue was efficient. That finding was necessary to resolve whether plaintiffs there had common proof of reliance. 485 U.S. at 242. The existence of an efficient market would give rise to a rebuttable presumption of classwide reliance. *Id.* at 242, 245. In its absence, individual class members could have presented individual evidence of reliance, *id.* at 242, testifying about what information they had learned, how they had learned it, and whether it affected their decision to buy a security.[11] Plaintiffs have no such individual evidence here.

In that crucial respect, this litigation is like *Tyson Foods*. In that wage and hour case, the plaintiffs relied on common expert evidence to show that they were harmed by the defendant's failure to compensate them. 1036 S. Ct. at 1046. The defendant had failed to maintain individual records of the workers' time putting on and taking off protective gear, so the class claims and any individual claims relied on common expert testimony based on a representative sample. *Id.* at 1047. The failure of that evidence would have led to all class members losing their claims—not to individual class members relying on individual evidence. *Id.* The Supreme Court held it would have been improper for the trial court to decide the persuasiveness of the evidence. *Id.* at 1049. All that was before the trial court at class certification was whether the evidence was admissible and whether it was common to the class. *Id*. The same is true here. As in *Tyson Foods*, Plaintiffs have not presented any individual evidence that could replace their proposed common evidence. *See id.* at 1047.[12]

---

[11] Even in securities class actions, the Supreme Court has held that the possibility that a presumption of classwide reliance can be rebutted for individual class members does not cause individual issues to predominate. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 276 (2014).

This case is also unlike *Wal-Mart*. There, the Court found there was no common issue that bound together the employment discrimination claims of class members because they worked in different facilities and there was no company-wide policy that was potentially discriminatory. 564 U.S. at 359-60. The Court thus found that common evidence was not *capable of* proving the claims of different class members, not that plaintiffs should lose on any element of their claims. *Id.*

[12] Notably, individual issues are even less likely to arise here than they were in *Tyson Foods*. There, it was at least possible that individual plaintiffs could try to prove through individual evidence how long it took them to "don and doff" protective gear. Yet the Supreme Court either found that possibility too remote or deferred to the plaintiffs' choice not to pursue it. *Id*. at 1046-47.

Zuffa's two main criticisms of Dr. Singer's impact regression—of his use of Wage Share and Foreclosure Share—are also common to the class. To be sure, both critiques are wrong.[13] But this Court need not and should not decide now whether Dr. Singer's approach is persuasive. It is a common merits issue, so the jury should resolve it. If Zuffa is right—if Dr. Singer's use of Wage Share or Foreclosure Share is improper—then his impact regression cannot show impact for the class as a whole or *for any class member*. His method would "prevail or fail" for the class *in unison*. *Amgen*, 568 U.S. at 460. Just like the issues of materiality in *Amgen* and impact in *Tyson Foods*, the jury should decide whether, for example, Dr. Singer's use of Wage Share is more persuasive than Dr. Topel's use of Wage Level.[14] All this Court needs to determine now is that Dr. Singer's use of Wage Share is plausible (or admissible), it raises a common issue, and if Plaintiffs lose on it, individual issues will not predominate in the case.

Zuffa does identify one point that would potentially raise individual issues, if it were not incorrect and did not lack any evidentiary support. Zuffa asserts inaccurately that Dr. Singer's modeling relies on averages rather than shows classwide harm. Z at 10:4-5. In the cases Zuffa cites, the plaintiffs at class certification had in fact simply relied on an overall effect on price to show predominance rather than offered proof of widespread impact. *See In re Optical Disk Drive Antitrust Litig.*, 303 F.R.D. 311, 321 (N.D. Cal. 2014) ("the alleged conspiratorial overcharge is assumed to be the same for all class members"); *Reed v. Advocate Health Care*, 268 F.R.D. 573, 591 (N.D. Ill. 2009) (criticizing "econometric analyses that rely on averages"). The problem for Zuffa is that Dr. Singer's modeling does just what *ODD* and *Reed* say the plaintiffs in those cases *failed to do but should have done*: analyze the dispersion of impact across the class. SR1 ¶¶209-40; SR2 ¶150-66. Dr. Singer's

---

[13] Zuffa's criticism of Wage Share, for example, ignores that it is standard in the sports economics literature—a fact of which Zuffa's expert, Dr. Oyer, was unaware—and that Zuffa's other experts, Zuffa itself, and other industry participants have all used Wage Share outside of this litigation. SR2 ¶¶88-108; Supplemental Expert Report of Hal J. Singer (Apr. 3, 2018) ("SR3") at ¶¶13-16, 20; Expert Rebuttal Report of Andrew Zimbalist (Dec. 26, 2017) ("ZR2") at ¶¶39-48; Class Mot. 31-32; Class Reply 7-9; ECF No. 534 ("Singer-Zimbalist Daubert Opp.") at 11-16.

[14] Zuffa keeps repeating the incorrect claim that its expert, Dr. Topel, reaches a different result when he uses Wage Level (that is, compensation measured in dollars). In fact, unlike Dr. Singer's successful regression that produces statistically significant results, Dr. Topel's unsuccessful regression using Wage Level *did not produce statistically significant results*, assumes (incorrectly) that Foreclosure Share does not affect Wage Share, and suffers from a crucial technical flaw known as endogeneity. Class Reply at 8, n.14; SR2 ¶¶116, 118-19; Expert Rebuttal Report of Professor Alan Manning (Jan. 12, 2018) at ¶30.

impact regression calculates not only the general effect of the Scheme on fighter compensation but also assesses how widespread the effects were, showing harm to over 99% of the class. SR1 ¶¶230-32 & Tbl. 8; Singer Errata II at 4; SR2 ¶¶150-52 & Tbl. 2. His pay structure analysis shows fighter pay moved together so that a general artificial suppression of pay would affect all or virtually all class members. SR1 ¶¶227-29 & Tbl. 7; SR2 ¶¶158-64. Unlike *ODD* and *Reed*, Dr. Singer does not present a mere average; his modeling shows *classwide* impact. SR1 ¶¶209-40; SR2 ¶150-66; Second Supplemental Reply Report of Hal J. Singer, Ph.D. (May 18, 2018) ("SR4") at ¶6 & n.18.

**V. <u>Common Issues Predominate in the Case as a Whole</u>.**

Zuffa has ignored case law holding that common issues must predominate in the case as a whole, not in regard to each element.[15] The Ninth Circuit recently held that a trial court need not find that the issue of impact is common if proof of a legal violation is common and predominates in the case as a whole. *Torres*, 835 F.3d at 1135. Only two major stages will remain in this litigation after the class decision: summary judgment and trial. The issues Zuffa has raised at summary judgment are all common to the class (*e.g.*, market definition, market power, violation). Further, Zuffa has now suggested that at trial the jury should not be asked to find common impact.[16] So common issues would predominate here in the case as a whole, even if impact were not common.

**VI. *<u>Comcast</u>*.**

Zuffa misinterprets *Comcast*. Zuffa makes the same error for classwide damages as it makes for impact—asking this Court to decide whether Plaintiffs should prevail on the issue rather than whether

[15] *See, e.g., Tyson Foods*, 136 S. Ct. at 1045 ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.") (quotation omitted); *Amgen*, 568 U.S. at 459-60, 467-70; *Comcast*, 569 U.S. at 34-35; *Torres*, 835 F.3d at 1134 ("Predominance is not, however, a matter of nose-counting. . . . Rather, more important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class."); *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107-08 (2d Cir. 2007) ("The predominance requirement is met if the plaintiff can establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof.") (quotation omitted); *id.* at 108 ("Even if the district court concludes that the issue of injury-in-fact presents individual questions, however, it does not necessarily follow that they predominate over common ones and that class action treatment is therefore unwarranted."); *In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2017 WL 679367, at *10-13 (N.D. Cal. Feb. 21, 2017); *High Tech*, 985 F. Supp. 2d at 1187.

[16] Z at 2:19-22 & nn.1-2.

Plaintiffs have offered plausible (or admissible) evidence *capable of* prevailing. *Comcast* confirmed plaintiffs need merely show "damages are *capable of* measurement on a classwide basis;" they need not prove classwide damages. *Comcast,* 569 U.S. at 34 (emphasis added). It also reinforced nearly a century of precedent holding that, in antirust cases, damages "[c]alculations need not be exact." *Id*. at 35 (citing *Story Parchment Co. v. Paterson Parchment Paper Co*., 282 U.S. 555, 563 (1931)).

The plaintiffs in *Comcast* failed to meet that modest requirement. The only damages calculation they showed they were capable of performing combined the effects of four separate kinds of conduct, but only one of them was certified for class treatment. *Id*. at 36-37. So the Supreme Court held plaintiffs' liability theory did not match their theory of damages—the kind of fundamental flaw in a proposed proof of damages that can defeat class certification. *Id*. at 37-38. But even then *Comcast* cautioned that plaintiffs' proposed "methodology might have been sound, and might have produced commonality of damages, if all four of those alleged distortions remained in the case." *Id*. at 37.

Here, each aspect of Zuffa's Scheme is appropriate for class treatment. *Comcast* presents no obstacle to certification. And Zuffa is wrong to invite this Court to decide whether Plaintiffs' classwide damages analyses are correct. As with the issues of violation and impact, all that is properly before this Court is whether Plaintiffs' damages models are plausible (or admissible) and whether, *if found persuasive*, they would provide a reasonable—but not necessarily exact—estimate of classwide damages. *Id*. at 35. For this reason, precedent Zuffa itself cites held plaintiffs need not disaggregate damages attributable to different parts of an overall anticompetitive scheme at class certification. *Rail Freight*, 292 F. Supp. 3d at 98-99 ("The Supreme Court's decision in *Comcast* does not require separating the elements of plaintiffs' theory of liability as defendants implicitly do on remand. '[T]he character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole.'") (quoting *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962)); *see also SourceOne Dental, Inc. v. Patterson Companies, Inc*., No. 15-cv-5440 (BMC), 2018 WL 2172667, at *6 (E.D.N.Y. May 10, 2018) (plaintiff's damages model deemed reliable although it "does not attempt to disaggregate damages for each of th[e] three types of [alleged] conduct[,]" where plaintiff was represented by Zuffa's counsel here). The same rule applies here. *Le v. Zuffa, LLC*, 216 F. Supp. 3d 1154, 1168-69 (D. Nev. 2016) (citing *Cont'l Ore*, 370 U. S. at

699); *see also Leyva v. Medline Indus., Inc*. 716 F.3d 510, 514 (9th Cir. 2013) (post-*Comcast*) (holding individual damages issues do not defeat class certification).

Zuffa is thus wrong to ask this Court to determine at certification whether Dr. Singer and Prof. Zimbalist *in fact* isolated the effects of Zuffa's Scheme from conduct it claims was lawful. Z at 10:14-19. To be sure, they did. Dr. Singer's damages calculation is based on a regression that measures the harm specifically caused by Zuffa's anticompetitive exclusive contracts. Indeed, Dr. Topel *conceded* that Dr. Singer's regression "only considers the impact from the challenged contractual restrictions in the [fighter] contracts." Topel Dep. 495:10-496:11. Prof. Zimbalist confirms Dr. Singer's approach, determining classwide damages by comparing Zuffa's Wage Share—[redacted] or less—with the Wage Share in other sports—about 50% or more—where management has less (but still some) monopsony power. Expert Report of Andrew Zimbalist in *Cung Le, et al. v. Zuffa* (Aug. 31, 2017) ("ZR1") at ¶¶123-26 & Tbls. 4-6.[17] Zuffa is similarly wrong to ask this Court to determine at certification whether Dr. Singer and Prof. Zimbalist disaggregated the value added by athletes from the value added by Zuffa in calculating revenue and Wage Share. Z at 10:22-23. Again, they did. Dr. Singer's regression analysis specifically controlled for ways in which Zuffa might have contributed to event revenues separate and apart from the fighters,[18] showing that the athletes contributed 50% or more of the value and so, in a competitive market, would have received that amount in Wage Share. And, again, Prof. Zimbalist's analysis confirms this result. ZR1 ¶¶123-26 & Tbls. 4-6. But at class certification, this Court should not decide whether Plaintiffs' calculation of damages is accurate. All that is before this Court is whether Plaintiffs have proposed a model that, if found persuasive, is "capable of" calculating classwide damages, *Comcast*, 569 U.S. at 34, a model that "need not be exact." *Id*. at 35.

---

[17] Zuffa notes Prof. Zimbalist does not compare the UFC with all major sports. Z at 10:11. Zuffa prefers comparisons with sports where the owners have substantial monopsony power—rendering them unable to show what Wage Share would be in a market without Zuffa's Scheme.

[18] Dr. Singer included several variables in his regression to test Zuffa's assertion that Zuffa's promotional or marketing expenditures (non-Fighter inputs) explain some or all of the observed decline in Wage Share. SR3 ¶¶29-32; SR4 ¶18. Dr. Singer shows that Zuffa's non-Fighter spending has, if anything, become *less* productive relative to contributions of fighters over time. SR3 ¶29; SR4 ¶14 & n.47. Indeed, Dr. Singer shows that Zuffa's promotional spending has had no effect on Wage Share *at all*, and thus cannot explain why Zuffa's fighters received a lower proportion of event revenues over time (as Foreclosure Share rose). SR4 ¶26.

Dated: January 23, 2019

Respectfully Submitted,

By: /s/ Eric L. Cramer
Eric L. Cramer

Eric L. Cramer (*Pro Hac Vice*)
Michael Dell'Angelo (*Pro Hac Vice*)
Patrick F. Madden (*Pro Hac Vice*)
Mark R. Suter (*Pro Hac Vice*)
BERGER|MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Phone: (215) 875-3000/Fax: (215) 875-4604
ecramer@bm.net
mdellangelo@bm.net
pmadden@bm.net
msuter@bm.net

Joseph R. Saveri (*Pro Hac Vice*)
Joshua P. Davis (*Pro Hac Vice*)
Jiamin Chen (*Pro Hac Vice*)
Kevin E. Rayhill (*Pro Hac Vice*)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Phone: (415) 500-6800/Fax: (415) 395-9940
jsaveri@saverilawfirm.com
jdavis@saverilawfirm.com
jchen@saverilawfirm.com
krayhill@saverilawfirm.com

Benjamin D. Brown (*Pro Hac Vice*)
Richard A. Koffman (*Pro Hac Vice*)
Daniel H. Silverman (*Pro Hac Vice*)
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., N.W., Suite 500
Washington, DC 20005
Phone: (202) 408-4600/Fax: (202) 408 4699
bbrown@cohenmilstein.com
rkoffman@cohenmilstein.com
dsilverman@cohenmilstein.com

**Co-Lead Class Counsel**

**Liaison Counsel for the Class**

Don Springmeyer (Nevada Bar No. 1021)
Bradley S. Schrager (Nevada Bar No. 10217)
WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP
3556 E. Russell Road, Second Floor
Las Vegas, Nevada 89120
Phone: (702) 341-5200/Fax (702) 341-5300
dspringmeyer@wrslawyers.com
bschrager@wrslawyers.com

**Additional Counsel for the Classes**:

Robert C. Maysey (*Pro Hac Vice*)
Jerome K. Elwell (*Pro Hac Vice*)
WARNER ANGLE HALLAM JACKSON & FORMANEK PLC
2555 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Phone: (602) 264-7101/Fax: (602) 234-0419
rmaysey@warnerangle.com
jelwell@warnerangle.com

Frederick S. Schwartz (*pro hac vice*)
LAW OFFICE OF FREDERICK S. SCHWARTZ
15303 Ventura Boulevard, #1040
Sherman Oaks, CA 91403
Phone: (818) 986-2407/Fax: (818) 995-4124
fred@fredschwartzlaw.com

William G. Caldes (admitted *pro hac vice*)
SPECTOR ROSEMAN KODROFF & WILLIS, P.C.
1818 Market Street – Suite 2500
Philadelphia, PA 19103
Phone: (215) 496-0300/Fax: (215) 496-6611
wcaldes@srkw-law.com

John D. Radice (admitted *pro hac vice*)
RADICE LAW FIRM, P.C.
34 Sunset Blvd.
Long Beach, NJ 08008
Phone: (646) 245-8502
jradice@radicelawfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of January, 2019 a true and correct copy of **PLAINTIFFS' REPLY STATEMENT REGARDING RULE 23 STANDARDS** and supporting papers was served via email and the Court's CM/ECF system on all parties or persons requiring notice.

/s/ *Eric L. Cramer*
Eric L. Cramer