# EXHIBIT D

**Top Rank, Inc's Objections to Disclosure of Confidential Materials dated June 14, 2019**

DAVID MARROSO (Cal. S.B. #211655)
 dmarroso@omm.com
(admitted *pro hac vice*)
BROOKE D. JENKINS (Cal. S.B. #307514)
 brookejenkins@omm.com
(*pro hac vice forthcoming*)
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, California  90067-6035
Telephone:     (310) 553-6700
Facsimile:      (310) 246-6779

ERIC D. HONE (NV Bar No. 8499)
 eric@h1lawgroup.com
H1 Law Group
701 N Green Valley Parkway, Suite 200
Henderson, Nevada 89074
Telephone:     702-608-3747
Facsimile:      702-608-3759

Attorneys for Non-Party
Top Rank, Inc.

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In Re Subpoena Of<br><br>Top Rank, Inc.,<br>_____<br><br>Cung Le, Nathan Quarry, and Jon Fitch, on behalf of themselves and all others similarly situated,<br><br>             Plaintiffs,<br><br>    v.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>             Defendant. | Case No. 2:15-cv-01045-RFB-PAL<br><br>**TOP RANK, INC.'S OBJECTIONS TO DISCLOSURE OF CONFIDENTIAL MATERIALS** |

1    **I.      INTRODUCTION**

2           The underlying lawsuit is an antitrust case pitting a class of *mixed martial arts* fighters

3    against *mixed martial arts* promoter The Ultimate Fighting Championship.  Top Rank, Inc. is a

4    *boxing* promoter, does not promote mixed martial arts, and is a non-party to the lawsuit.

5           In 2017, Plaintiffs served two sweeping and intrusive subpoenas on Top Rank, seeking

6    broad swaths of confidential information—financial projections, economic performance, bout and

7    promotional agreements, among others—and the testimony of Top Rank's legendary founder, Mr.

8    Bob Arum.  *See* ECF Nos. 470-6 & 470-7.  Top Rank and Mr. Arum (collectively, "Top Rank")

9    objected to the subpoenas on multiple grounds, including that information about a boxing

10   promoter was not relevant to a mixed martial arts antitrust case and the financial information

11   sought was confidential, proprietary, and, if disclosed, could put Top Rank at a competitive

12   disadvantage vis-à-vis its boxing promoter competitors and in future negotiations with boxers.

13          Plaintiffs moved to compel arguing that Top Rank's financial information was pertinent to

14   the issues in this case (despite the different sports) and assuring the Court and Top Rank that the

15   boxing promoter's financial information could be designated Attorneys' Eyes Only (AEO), such

16   that Top Rank's information would not be disclosed publicly and Top Rank's concerns about

17   competitive harm would be respected and honored.  *See* ECF No. 470.  With those promises, Top

18   Rank produced highly sensitive economic information and Mr. Arum was examined for hours.

19   6/14/19 Declaration of David J. Marroso ¶5.  Top Rank designated certain information as AEO.

20   Plaintiffs did not claim, contend, or otherwise challenge the AEO designations in 2017 or 2018.

21   *Id*.

22          Two years after Top Rank's disclosure and AEO designation, Plaintiffs seek to ignore it

23   and disclose publicly an expert report that contains *eight excerpts* reporting information Top Rank

24   produced and designated as Attorney's Eyes Only.  *See id.* ¶¶ 5-10.  This about-face is improper

25   and unreasonable.

26          Top Rank conferred with Plaintiffs.  In an effort to avoid this very filing, Top Rank

27   offered to permit Plaintiffs to utilize seven of the eight excerpts in their entirety and objected only

28   to the disclosure of a single paragraph (¶ 85) in one excerpt that unquestionably contains highly-

1    private financial information that, if disclosed publicly, would cause Top Rank harm and place it

2    at a competitive disadvantage.  Paragraph 85 of Plaintiffs' expert report seeks to tell the world, on

3    an annual basis, exactly what percentage of Top Rank's revenue Top Rank remits to fighters.

4          Requiring Plaintiffs to adhere to the Attorneys' Eyes Only designation of this *single*

5    paragraph would cause no prejudice to Plaintiffs.  Plaintiffs can seal that single paragraph and, of

6    course, the Court can and will see it in deciding whatever legal issues need to be decided.  In

7    contrast, public disclosure of this information would impose extreme and unnecessary prejudice

8    on a non-party to this action.  As Top Rank's General Counsel declared in 2017, disclosure of the

9    specific amount of revenue Top Rank remits to its fighters "would hurt Top Rank's ability to

10   compete in the marketplace" because competitors could "mimic Top Rank's business strategy or

11   design a strategy specifically tailored to interfere with and undermine Top Rank's strategy" and

12   because "Top Rank would be at an unfair disadvantage in negotiations with boxers for new

13   promotional contracts or extensions of existing promotional contracts because boxers would be

14   equipped with Top Rank's financial information . . . and could use this information to gain

15   leverage in their negotiations to Top Rank's disadvantage.  *See* ECF No. 481-2, ¶ 9.

16         For these reasons, non-party Top Rank respectfully requests that the Court order and

17   direct all parties to this action to maintain and respect the confidentiality of Top Rank's

18   confidential economic information.

19   **II.    RELEVANT FACTUAL BACKGROUND**

20         On January 23, 2017 and February 2, 2017, Plaintiffs served a deposition subpoena on

21   Top Rank's founder and Chief Executive Mr. Arum and a document subpoena on Top Rank,

22   seeking financial statements, payments made to individual boxers, and bout and promotional

23   agreements, among other sensitive and proprietary information.  *See* ECF Nos. 470-6 & 470-7.

24   On April 25, 2017, Top Rank and Mr. Arum (collectively, "Top Rank") objected to the subpoenas

25   on multiple grounds, including that Top Rank's confidential, proprietary, information was not

26   relevant to the dispute, and, disclosure of this information could impede Top Rank's ability to

27   compete in the marketplace and effectively negotiate its fighter contracts.  ECF No. 470-11.

28   Following service of those objections, Top Rank had several discussions with Plaintiffs regarding

the requested discovery and continued to attempt to compromise, without success.  ECF No. 481-1, ¶¶ 10-11.  On July 31, 2017, Plaintiffs filed a motion to compel, arguing Top Rank's financial information and agreements were relevant to the dispute, and that this information could be designated AEO to address Top Rank's concerns about the competitive harm that would result if this information was disclosed publicly.  *See* ECF No. 470.  Prior to the hearing on the motion to compel, Plaintiffs agreed to narrow the scope of their requests, and permitted Top Rank to produce the disputed information subject to the Protective Order and designated as AEO. Marroso 6/14/19 Decl. ¶ 4.   Because of Plaintiffs' assurance that Top Rank's sensitive financial information would be protected from the public, David Lopez, Top Rank's CFO, provided a declaration on October 12, 2017, including the information Top Rank seeks to protect here, Top Rank's fighter share in revenue for the years 2013 to 2016, and Mr. Arum appeared for deposition on October 17, 2017.  *Id.* ¶¶ 4-5.  The Lopez Declaration was marked as Confidential-AEO subject to the Protective Order, as were certain statements in Mr. Arum's deposition transcript. *Id.* ¶ 5.  The parties did not object to these confidentiality designations.  *Id.*

Now, two years later, Plaintiffs attempt to renege on its promise to Top Rank to preserve the confidentiality of the information designated as AEO.  On May 28, 2019, Top Rank received notice of that Plaintiffs intended to disclose publicly portions of Mr. Arum's deposition and the Lopez Declaration at a public evidentiary hearing.  *Id*. ¶ 6.  On May 31, 2019, Top Rank notified the parties that it objected to disclosure of materials designated as Confidential-AEO.  *Id.* ¶ 7. Counsel for Top Rank and the parties had a meet and confer on June 5, 2019, during Top Rank requested to see the specific information Plaintiffs intended to disclose.  *Id.* ¶ 8.  In response, Plaintiffs identified eight excerpts citing to information designated as Confidential-AEO by Top Rank.  *Id*.  Although all of the information referenced was properly designated as AEO, on June 6, 2019, Top Rank permitted disclosure of all but *one* paragraph in the eight excerpts provided by Plaintiffs.  *See id*. ¶ 9.  This one paragraph included the information below:

Table 1
Top Rank Fighter Share in Gross Revenue

| Year | Fighter Share |
|------|---------------|
| 2013 | X[1] |
| 2014 | X |
| 2015 | X |
| 2016 | X |

Plaintiffs notified Top Rank on June 13, 2019 that they do not agree to seal this one paragraph. *Id.* ¶ 10.

## III.   <u>ARGUMENT</u>

Top Rank is a non party in the boxing industry, a separate and distinct industry from MMA.  Disclosure of Top Rank's fighter share in gross revenue for the years 2013-2016 is therefore not warranted, where it is of questionable relevance to the dispute and would subject non-party, Top Rank, to competitive harm.  The percentage of revenue paid to its fighters is a key component of Top Rank's business.  Public disclosure of this information would effectively tell the public, including its competitors, how Top Rank runs its business.  This information is deserving of protection.  *See Edwards v. California Dairies, Inc.*, No. 1:14-MC-00007-SAB, 2014 WL 2465934, at *4 (E.D. Cal. June 2, 2014) (finding that non-party's revenues and formula qualify as confidential commercial information under Rule 45); *Educ. Logistics, Inc. v. Laidlaw Transit, Inc.*, 2011 WL 1348401, at *2 (N.D. Tex. Apr. 8, 2011) (finding non-party's sales and revenue information constituted "confidential commercial information" where disclosure would "likely damage [non-party's] ability to compete in the marketplace").   For this reason, Top Rank initially objected to produce this information and only agreed to produce it after Plaintiffs assured Top Rank this information could be designated as AEO subject to the Protective Order and protected from the public.  6/14/19 Marroso Decl. ¶¶ 3-5.

Top Rank would be significantly and immediately harmed if its confidential commercial information were disclosed and became known to the public, and such disclosure would hurt Top Rank's ability to compete in the marketplace.  If Top Rank's competitors had access to this information, they could mimic Top Rank's business strategy or design a strategy specifically

---

[1] Actual percentages removed.

1    tailored to interfere with and undermine Top Rank's strategy.  Additionally, if this information

2    were disclosed to the public, Top Rank would be at an unfair disadvantage in negotiations with

3    boxers for new promotional contracts or extensions of existing promotional contracts because

4    boxers would be equipped with Top Rank's financial information and could use this information

5    to gain leverage in their negotiations to Top Rank's disadvantage.  *See* ECF No. 481-2, ¶ 9.

6         The avoidance of this business harm to Top Rank outweighs public policies favoring

7    disclosure of court documents.  *See Cohan v. Provident Life & Accident Ins. Co.*, No.

8    213CV00975LDGCWH, 2014 WL 12596287, at *2 (D. Nev. Nov. 7, 2014) (internal quotations

9    and citations omitted) ("Confidential business information has long been recognized as property

10   and warranting protection from public consumption.").   In *Cohan*, on motion to seal an exhibit,

11   defendants asked the Court to seal commercially sensitive information that defendant "diligently

12   endeavor[ed] to keep [] private from competitors[,] held proprietary[,]  [did] not disseminate[]

13   outside of the company[,]"  and had been successful in maintaining the confidentiality of in other

14   litigations.  *Id.* at 3.  When ruling there was a compelling interest in maintaining the secrecy of

15   the information, the Court stated, "[p]ublic disclosure, as important as it is, [] yields when there is

16   a need to insure that a litigant's records are not used as sources of business information that might

17   harm a litigant's competitive standing."  *Id.*

18        The need for confidentiality is more pronounced here, as Top Rank is a non-party (unlike

19   the defendant in Cohan) yet still made the same effort to maintain the confidentiality of the

20   disputed information and disclosure of said information would likewise result in a competitive

21   disadvantage to Top Rank.

22   **IV.    RELIEF REQUESTED**

23        In the event the Court determines that the aforementioned information should be

24   discussed at the upcoming evidentiary hearings, Top Rank respectfully requests that the Court

25   either: 1) close the court to the public during the offering of this information; or 2) allow

26   Plaintiffs' expert to testify only as to the fact of the expert having this information and provide

27   this information to the Court as a sealed courtroom exhibit.  Requiring Plaintiffs to maintain the

28   confidentiality of the aforementioned information—one paragraph in Plaintiffs' expert report—as

promised, would cause no prejudice to Plaintiffs.  Following either approach would allow the Court to review this information when deciding the legal issues.  Top Rank, however, would suffer extreme and unnecessary prejudice if this information was disclosed publicly.  Given the confidential nature of this information and Top Rank's status as a non-party, Top Rank respectfully requests that the Court maintain the confidentiality of the aforementioned information.

Dated:  June 14, 2019

DAVID J. MARROSO
O'MELVENY & MYERS LLP

By: _____
       David J. Marroso
Attorneys for Top Rank, Inc.

6