# EXHIBIT 1

**Expert Report of Gene Deetz
(September 6, 2016), Case No. 15-cv-3378,
Dkt. No. 237-1 (Nov. 9, 2016)**

# EXHIBIT 34

REDACTED Version of Document Filed Under Seal
Pursuant to Court Order Dated October 28, 2016 (Docket No. 141)
and Pending Court Order

Case 2:15-cv-01045-RFB-BNW  Document 664-5  Filed 06/15/19  Page 3 of 60
Case 2:15-cv-03378-JFW-MRW  Document 267-1  Filed 11/09/16  Page 2 of 59  Page ID
#:9086

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOLDEN BOY PROMOTIONS, LLC, GOLDEN BOY PROMOTIONS, INC. And BERNARD HOPKINS,<br><br>                  Plaintiffs,<br><br>   v.<br><br>ALAN HAYMON, ALAN HAYMON DEVELOPMENT, INC., HAYMON HOLDINGS, LLC, HAYMON SPORTS, LLC, HAYMON BOXING MANAGEMENT, HAYMON BOXING LLC, and RYAN CALDWELL,<br><br>                  Defendants. | Case 2:15-cv-03378 JFW (MRWx) |

**Expert Report of**
**Gene Deetz, CPA/ABV, ASA, CFF**
September 6, 2016

**TABLE OF CONTENTS**

I.      QUALIFICATIONS ................................................................................................ 2

II.     BACKGROUND ..................................................................................................... 3

III.    SCOPE OF ENGAGEMENT ................................................................................ 5

IV.     SUMMARY OF OPINIONS ................................................................................ 6

V.      DETAILED ANALYSIS ........................................................................................ 8

   A.   *Golden Boy's financial condition deteriorated from the end of 2014 through June 2016.* ................ 8

   B.   *In 2015 and 2016 Golden Boy experienced a decline in the number of Golden Boy promoted championship caliber broadcast television events and associated revenues, and a decline in the number of championship caliber boxers on televised events.* ................................................................................ 9

   C.   *From the end of 2014 through January 2016, Haymon spends a significant portion of the ▆▆▆▆ capital investment received from MGH on "Television Costs," "Fighter Costs," and "On-air Broadcast Fees."* ................................................................................................................................ 12

   D.   *Assuming Haymon continues to block access to television broadcasters and fighters, Golden Boy's lost profits attributable to Haymon's alleged anticompetitive practices, measured by the decline in Golden Boy's income from boxing operations, are estimated to be ▆▆▆▆▆▆.   In the event that Haymon is forced to, either by court order or by market forces, or otherwise voluntarily lifts restrictions on boxers and television networks, such that Golden Boy is able to begin recovering, Golden Boy's lost profits are estimated to be in a range of $▆▆▆▆▆▆▆▆.* ...................... 13

   E.   *I have considered and rejected as highly unlikely the hypothetical but-for analysis where Haymon acts only as a promoter.* ............................................................................................................... 15

VI.     CONCLUSION .................................................................................................. 16

**Appendices**

Appendix I: Deetz CV

Appendix II: Documents Considered

Appendix III: Description of Analysis and Data Underlying Deetz Damage Calculations

Appendix IV: Haymon Broadcast Media Contracts

Appendix V: Golden Boy Broadcast Media Contracts


**Exhibits**

Exhibit 1: Opportunity Metrics: TV Revenue, Number of Fights Included in TV Revenue, Number of Boxers on TV, Number of Golden Boy Boxers on TV, and Number of Golden Boy Championship Caliber Boxers on TV

Exhibit 2: Haymon Spends a Significant Portion of the $████ Million Received from MGH on "Television Costs," "Fighter Costs," and "On-air Broadcast Fees"

Exhibit 3: Analysis of Revenues and Expenses on an Event-by-Event, Boxer-by-Boxer Basis

Exhibit 4: Comparative Analysis of Golden Boy's Income from Boxing Operations Decline from 2014 through June 30, 2016

Exhibit 5: Calculation of Damages

Exhibit 6: List of Golden Boy's Championship Caliber and Other Boxers

**Golden Boy's Summary Judgment Exhibit No. 34**

## I. QUALIFICATIONS

1. I am a Certified Public Accountant since 1975, licensed in California, New York, and Pennsylvania and an Accredited Senior Appraiser. I also hold accreditations in Business Valuation and Certified Financial Forensics from the American Institute of Certified Public Accountants. I have more than forty years of experience in accounting, valuation, solvency analysis, and related financial issues.

2. I am a Managing Director in the Disputes and Investigations practice of Navigant Consulting, where I perform damage and accounting analyses, conduct solvency analyses, and perform valuations of business interests and intangible assets.

3. Before joining Navigant in May 2008, I was a Principal in Chicago Partners, LLC. Before that I held senior positions in other consulting companies including LECG, LLC, Arthur Andersen, LLP, Noell Deetz, Agnew, and Morse LLP, and Stoughton Davidson, starting in 1972.

4. In my forty-plus years of experience as an auditor, tax practitioner, financial and valuation consultant, and expert witness, I have developed extensive experience in the issues that are the subject of my opinions, including analysis of financial performance and valuation of companies and individuals in professional sports.

5. My qualifications are disclosed in more detail in my resume, which is attached as Appendix I.

## II.    BACKGROUND

6.   Plaintiff Golden Boy Promotions, LLC is a California limited liability company. Plaintiff Golden Boy

Promotions, Inc. is a California corporation. Together they are called "Golden Boy."[1]

7.   Defendant Alan Haymon owns Alan Haymon Development, Inc., Haymon Sports, LLC, Haymon

Holdings, LLC (f/k/a KO Holdings, LLC, f/k/a Haymon Sports, LLC), Haymon Boxing LLC and

Haymon Boxing Management LLC,[2] together referred to throughout this report as "Haymon".

8.   As disclosed in Golden Boy's audited financial statements for the year ended December 31, 2014, the

nature of Golden Boy's operations were described as follows:

> "The Company is primarily in the business of promoting professional boxers and arranging,
> staging, marketing, and otherwise exploiting boxing events and related activities."[3]

9.    The relationship between Golden Boy and the

broadcast media (HBO, Showtime, FOX, among others), and Golden Boy's ability to promote

successful events requires, among other things, championship caliber boxers[5] and network timeslot

availability.[6]  The requirement for these two fundamental inputs for success is described by Golden

Boy's Industry Expert, Gary Shaw ("Shaw"), as "product" and "platform."

10.   From December 2014 through January 2016, Haymon was using the ███████ received from Media

Group Holdings ("MGH") for "Television Costs", "Fighter Costs", and "On-air Broadcast Fees."[7]

11.   During 2015, certain of the network and cable broadcasters of the professional boxing matches entered

into exclusive contracts with Haymon.[8]

---

[1] Second Amended Complaint, filed May 5, 2015 at ¶5.
[2] Second Amended Complaint at ¶6.
[3] ███████████████████████████████████████
[4] *See* Exhibit 1.
[5] On September 6, 2016 Robert Kneuper, PhD issued his Expert Report in this matter ("Kneuper Report").  As defined in the Kneuper
Report, the base criteria for championship caliber boxers are those with a US based manager or promoter, as well as a television
appearance within the preceding eighteen months and a current period top ten ranking in any of the fourteen weight classes, additionally
including any former televised world champions within the last eighteen months.
[6] *See* the Expert Report of Gary Shaw ("Shaw Report") at pages 5 and 6.
[7] HAYMON_00002200 through HAYMON_00002335.
[8] *See* Appendix IV.

12. ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████.[9]

13. Issued on September 6, 2016, the Kneuper Report concludes that Haymon has reached a position of

market power through "tying" and other exclusionary practices.[10]

    a.   In summary, the Kneuper Report opines that[11]:

        i.   Haymon has market power in the US market for managing championship caliber boxers

and in the US market for promoting championship caliber boxers.

        ii.   Haymon's anticompetitive actions have allowed it to lock up key inputs essential to

effectively compete as a promoter, including championship caliber boxers and key

broadcasters.

        iii.   Haymon's anticompetitive actions have injured key competing boxing promoters,

including Golden Boy.

        iv.   Haymon's anticompetitive actions have also harmed, and are likely to harm, non-

Haymon championship caliber boxers.

---

9 ████████████████████████████████████████████████████████

[10] Second Amended Complaint at ¶15.  *See also,* 15 U.S.C. § 6308(b).

[11] Kneuper Report.

Case 2:15-cv-01045-RFB-BNW   Document 664-5   Filed 06/15/19   Page 9 of 60
Case 2:15-cv-09574-MRW   Document 267-1   Filed 11/09/15   Page 8 of 59   Page ID
#:9092

## III.    SCOPE OF ENGAGEMENT

14. I have been asked by counsel for the Plaintiff, Golden Boy, to review and analyze financial data and documents related to the above-referenced litigation and to provide my expert opinions regarding damages, if any, suffered by Golden Boy as a result of Haymon's alleged anticompetitive practices in the boxing industry.

15. In addition to the financial data and documents, I have also reviewed the various filings in this matter, including Plaintiffs' complaints, Defendants' answer, and interrogatories, as well as the Kneuper and Shaw Reports.  Appendix II contains a list of materials I considered.

16. My opinions are based on the facts of this case as I now understand them and the analyses described in this report.  My work on this case is continuing and I reserve the right to revise or augment the findings and opinions set forth here in the event that additional information relevant to the issues I examined becomes available, in response to questions raised in my deposition, to take into account or reply to analyses offered by experts retained by Defendants, or for other reasons.

17. Navigant is charging an hourly rate of $750 for my time.  Other Navigant personnel working under my direction assisted in my analyses.  Navigant personnel are being compensated for their work at customary rates.  This compensation is not contingent upon the substance of my testimony, my report, or the outcome of this matter.

Case 2:15-cv-01045-RFB-BNW   Document 664-5   Filed 06/15/19   Page 10 of 60
Case 2:15-cv-03794-JFW-MRW   Document 237-10   Filed 11/09/18   Page 406 of 59   Page ID
#:9093

## IV.    SUMMARY OF OPINIONS

18. I am relying on the opinions in the Kneuper Report and the Shaw Report, which conclude that Haymon is functioning as both a promoter of professional boxing matches and a manager of professional boxers.[12]  I am further relying on the Kneuper Report's conclusions regarding the nature of the anticompetitive harm from Haymon's actions.[13]  In performing my damages analyses, I assume antitrust liability.

19. Golden Boy's financial condition, measured by income from boxing operations, deteriorated from the end of 2014 through June 2016.

20. In 2015 and 2016, Golden Boy experienced a decline in the number of Golden Boy promoted championship caliber broadcast television events and associated revenues, and a decline in the number of championship caliber boxers on televised events.

21. From the end of 2014 through January 2016, Haymon spent a significant portion of the $▮▮▮▮ received from MGH on "Television Costs," "Fighter Costs," and "On-air Broadcast Fees."

22. I have evaluated Golden Boy's damages based on the hypothetical but-for analysis where Haymon only acts as a manager.  Comparing that hypothetical scenario to the opinions as presented to me by the Kneuper and Shaw Reports, and assuming Haymon continues to block access to television broadcasters and fighters, Golden Boy's lost profits attributable to Haymon's alleged anticompetitive practices, measured by the decline in Golden Boy's income from boxing operations, are estimated to be $▮▮▮▮ ▮▮▮▮.  In the event that Haymon is forced to, either by court order or by market forces, or otherwise voluntarily lifts restrictions on boxers and television networks, such that Golden Boy is able to begin recovering, Golden Boy's lost profits are estimated to be in a range of $▮▮▮▮▮▮▮▮.[14]

---

[12] Kneuper Report. *See also,* Shaw Report at page 12.
[13] *See* ¶13
[14] The above damaged calculations incorporate a general negative industry growth rate assumption, taken from Integra Industry Growth Outlook Report 197.3 7941 PROFESSIONAL SPORTS CLUBS AND PROMOTERS.  In Exhibit 5, in calculating the Net Damages, I have assumed the growth rates indicated from the Integra Industry Growth Outlook Report.  I have selected these growth rates because they are the closest reported to the boxing industry.  However, based on my work in this matter, I believe it is unlikely that the boxing industry will suffer these negative growth rates.  Estimating damages using a conservative 2% long-term growth rate would increase the Scenario 2 Net Damages to $▮▮▮▮, the Scenario 3 Net Damages to $▮▮▮▮ and the Scenario 4 Net Damages to $▮▮▮▮.

23. I have considered and rejected as highly unlikely the hypothetical but-for analysis where Haymon acts only as a promoter.

24. I have provided a detailed analysis and discussion of each of these summary opinions in the section below.

Case 2:15-cv-01045-RFB-BNW   Document 664-5   Filed 06/15/19   Page 12 of 60
Case 2:15-cv-03578-JFW-MRW   Document 237-1   Filed 11/09/16   Page 20 of 39   Page ID
#:9095

## V.    DETAILED ANALYSIS

A.  *Golden Boy's financial condition deteriorated from the end of 2014 through June 2016.*

25.  Golden Boy's financial condition, as evidenced by boxing revenues and boxing net income from operations, deteriorated from the end of 2014 through June 2016.

26.  From 2012 through 2014, Golden Boy's operations generated revenues and income from operations, as shown in the chart below.



27.  During the period 2012 through 2014, there was an offer for Golden Boy in the amount of ███ ██████ from MGH (or designee).  Although the transaction did not close, it is an indication of the significant value then attributed to Golden Boy.

28.  Also, during 2013 Golden Boy promoted a significant championship caliber boxing match between Canelo Alvarez and Floyd Mayweather.  This event, promoted by Golden Boy, resulted in $████ ██████ of revenue and ██████████ net income from operations, and demonstrates the financial power of the highest level of championship caliber professional boxing.[16]

29.  Considering 2013, even without the benefit of this significant boxing event, Golden Boy still generated significant revenues and net income from operations from its other promoted events.  Additionally, the

15 ████████████████.
16 ████████████

Case 2:15-cv-01045-RFB-BNW   Document 664-5   Filed 06/15/19   Page 13 of 60
Case 2:15-cv-09366-WJW-MRW   Document 297-1   Filed 12/09/16   Page 19 of 59   Page ID
#:9096

2014 total revenues of $▇▇▇▇▇ show overall improvement when compared to 2012 and adjusted 2013 total revenues.

30. In contrast, the chart below shows Golden Boy's declining boxing revenues and income from boxing operations for 2015, and through June 30, 2016.



31. The above depicted dramatic decline in the financial performance of Golden Boy goes way beyond any market or industrywide downturn.[17]  Golden Boy's decline in financial performance, which I analyze in further detail below, does correspond with the type and timing of alleged Haymon anticompetitive business practices, also analyzed further below.

B. *In 2015 and 2016 Golden Boy experienced a decline in the number of Golden Boy promoted championship caliber broadcast television events and associated revenues, and a decline in the number of championship caliber boxers on televised events.*

32. As described further below, beginning late in 2014 and continuing through January 2016, Haymon spent significant amounts on "Television Costs," "Fighter Costs," and "On-air Broadcast Fees." *See* Exhibit 2.

---

[17] Industry forecasted growth data is presented in a table at the bottom of Exhibit 5. I have considered this data in my damage calculations reflected in Exhibit 5.  *See also,* 197.3 7941 PROFESSIONAL, SPORTS CLUBS AND PROMOTERS - SIC Code Description: "Establishments primarily engaged in operating and promoting professional and semiprofessional athletic clubs; promoting athletic events, including amateur; and managing individual professional athletes. Stadiums and athletic fields are included only if the operator is actually engaged in the promotion of athletic events. Establishments primarily engaged in operating stadiums and athletic fields are classified in Real Estate, Industry Group 651. Amateur sports and athletic clubs are classified in Industry Group 799."

Case 2:15-cv-01045-RFB-BNW   Document 664-5   Filed 06/15/19   Page 14 of 60
Case 2:15-cv-09679-JFW-MRW   Document 287-1   Filed 11/09/15   Page 19 of 59   Page ID
#:9097

33. During this same time period, Haymon entered into exclusive media contracts with CBS, ESPN, FOX, and NBC, and entered into a high volume event agreement with Spike TV.

Case 2:15-cv-01045-RFB-BNW Document 664-5 Filed 06/15/19 Page 15 of 60
Case 2:15-cv-01045-RFB-BNW Document 287 Filed 11/09/18 Page 20 of 59 Page ID
#:9098

35. In Exhibits 1 and 3, I present my period-over-period analyses from 2014 through June 30, 2016, including the TV revenues and related events, as well as the boxers in these events, noting boxers of championship caliber. The analyses summarized in this exhibit show declines in Golden Boy's TV revenue, total revenue, and income from boxing operations, consistent with the anticompetitive impact of Haymon's business practices.[19]

36. In Appendix V, I have done a separate analysis of Golden Boy's contracts with broadcast networks. That analysis reveals that as Haymon began signing contracts with network broadcasters, Golden Boy's network contracts were not renewed on terms previously acceptable to the networks.[20]

37. The continuous and dramatic decline of Golden Boy's on-air events and revenues is occurring at the same time as Haymon enters into the aforementioned exclusivity clauses and makes the related cash payments to the various broadcast networks. *See* Exhibit 1 and Appendix IV.

38. The number of broadcast events and their associated revenues declined in 2015 and 2016, when compared to 2014, as presented in Exhibit 1. As I stated above, the relationship between Golden Boy and the broadcast media (HBO, Showtime, FOX, among others), and Golden Boy's ability to promote successful events requires, among other things, championship caliber boxers[21] and network timeslot availability.[22]

39. Appendices IV and V reflect both the Haymon and Golden Boy media contracts during 2014, 2015, and through June 30, 2016. These appendices demonstrate both the decrease in Golden Boy's access to broadcast media for potential promotion of championship caliber events and the results of Haymon's significant investment in network and cable broadcast timeslots.

40. Consistent with the decline in TV Revenue is a decline in both the number of championship caliber boxing events and the number of Golden Boy promoted championship caliber boxers. *See* Exhibit 1.

---

[19] *See* ¶13
[20] *See* Appendices IV and V.
[21] As defined in the Kneuper Report, the base criteria for championship caliber boxers are those with a US based manager or promoter, as well as a television appearance within the preceding eighteen months and a current period top ten ranking in any of the fourteen weight classes, additionally including any former televised world champions within the last eighteen months.
[22] The Shaw Report at pages 5 and 10 describes the promoters' requirement for both product and platform.

41. During this same time period Haymon entered into exclusive contracts with boxers, which included control over promotion activities, as well as the management of the boxers. I have reviewed all of the contracts made available to me in this matter, as summarized below.



42. Golden Boy's data regarding its boxers under promotional contracts indicate that there are no Haymon-managed or Haymon-advised boxers under contract with Golden Boy during 2015 and 2016.

43. Additionally, when considering Golden Boy's boxing operations from periods 2012 through 2014, the data supports Golden Boy's ability to perform successfully in the boxing promotions market.

C. *From the end of 2014 through January 2016, Haymon spends a significant portion of the $▮▮▮▮ capital investment received from MGH on "Television Costs," "Fighter Costs," and "On-air Broadcast Fees."*

44. Presented in the Haymon Holdings, Inc. financial statements as of December 31, 2014, the total cash ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as of January 31, 2016. *See* Exhibit 2.

45. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

46. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

47. As I discuss in Section B above, these Haymon activities ("Television Costs," "Fighter Costs," and "On-air Broadcast Fees") correspond to the decline in Golden Boy's operating performance.

Case 2:15-cv-01045-RFB-BNW   Document 664-5   Filed 06/15/19   Page 17 of 60
Case 2:15-cv-01045-RFB-MRW   Document 287   Filed 11/09/18   Page 20 of 39   Page ID
#:9100

D. *Assuming Haymon continues to block access to television broadcasters and fighters, Golden Boy's lost profits attributable to Haymon's alleged anticompetitive practices, measured by the decline in Golden Boy's income from boxing operations, are estimated to be $*▮▮▮▮▮. *In the event that Haymon is forced to, either by court order or by market forces, or otherwise voluntarily lifts restrictions on boxers and television networks, such that Golden Boy is able to begin recovering, Golden Boy's lost profits are estimated to be in a range of $*▮▮▮▮▮▮.

48. In considering damages in this matter, I have employed the following methodology:

    a. I have assumed in constructing a comparative but-for analysis that Haymon functions only as a manager during 2015 through June 30, 2016 (historical damage period). Additionally, I have incorporated this assumption into my analysis of damages subsequent to June 30, 2016.

    b. I obtained a list of all boxers under contract to Golden Boy during 2014, 2015, and through June 30, 2016.

        i. Based on the criteria as outlined in the Kneuper Report, I sort these lists into two categories, championship caliber boxer and all others.

    c. I analyzed all revenue and expenses associated with each event promoted by Golden Boy from January 1, 2014 through June 30, 2016. *See* Exhibit 3 and Appendix III.

        i. Each event contains a specific number of bouts. The total event revenues are listed by category, and those categories were allocated to specific boxers based on that individual boxers' TV appearance and each boxers' specific purse.

        ii. The expenses for each event were also allocated to individual boxers based on TV appearances and purse.

        iii. The resulting analysis computes a Golden Boy promoted income from boxing operations per event, also subdivided by championship caliber boxer.

d.  From the data analyzed in the preceding paragraph I present the year-over-year decline in the Golden Boy income from boxing operations (including Golden Boy promoted championship caliber broadcast television events and associated revenues). S*ee* Exhibit 3.

e.  I compare the 2014 income from boxing operations to the income from boxing operations from boxing from 2015 and June 30, 2016.  *See* Exhibit 4.

f.  The difference in income from boxing operations earned in 2014 and the income from boxing operations earned in 2015 through June 30, 2016, adjusted for industry growth, is historical damages as reflected in Exhibit 5.

g.  For purposes of future damages and the possibility of Golden Boy recovering during some time period subsequent to June 30, 2016, I have presented a range of recovery assumptions and therefore a range of future damages as well as total damages.  One recovery assumption is that Haymon continues his anticompetitive conduct and Golden Boy is unable to recover its lost profits.  In the event that Haymon ceases his anticompetitive conduct, either voluntarily or by virtue of market forces or court order, I assume recovery periods which are generally within the current and extension periods of the Haymon TV contracts.  *See* Exhibit 5 and Appendix IV.

49. 

---

[23] Settlement and Release Agreement, dated as of August 5, 2014 and executed December 19, 2014 by and among Golden Boy and Haymon (GBP016201).

**Golden Boy's Summary Judgment Exhibit No. 34**

50. In the but-for world, Haymon is operating only as a manager facing the entire market of boxing promoters.  That market for boxing promotions would continue to include Golden Boy, and as various boxers within the promotions market rise or change in the various rankings, or for other reasons, such as an increase in popularity, there would be interaction between Haymon as a manager and all members of the boxing promotions market, including Golden Boy.[24]

51. Also, in the but-for world, Golden Boy would not lack the availability of traditional broadcast networks that were actually subject to Haymon's exclusive contract relations.

E.  *I have considered and rejected as highly unlikely the hypothetical but-for analysis where Haymon acts only as a promoter.*

52. Haymon as a promoter-only market participant has been considered as an unlikely possibility.  ███████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████

---

█ In conducting my damage analysis, I have reviewed the financial and other promotional details, including each individual fighter and their respective opponents, for every event promoted by Golden Boy from 2014 through June 30, 2016.  I have also reviewed a redacted version of the settlement between "Top Rank," who, according to http://www.toprank.com/about, bills themselves as the country's premiere boxing promotions company, and Haymon, which, among other things, required Haymon's best efforts in sending an irrevocable waiver of "all rights and benefits under each such Haymon Exclusivity Provision."   *See also,* Shaw Report e.g., at pages 7 – 8.

[25] ████████████████████████████████████████████████

## VI.  CONCLUSION

53. Based on my analysis, in the event that Haymon continues his anticompetitive conduct, including blocking Golden Boy and other promoters from television networks, I estimate Golden Boy's damages to be $███████ This conclusion assumes that Haymon's anticompetitive conduct has permanently affected Golden Boy's ability to generate profits from its boxing promotions operations.

54. In the event that Haymon ceases his anticompetitive conduct, either voluntarily or by court order or market forces, I estimate Golden Boy's damages to be in a range of $████████████. This conclusion assumes that Golden Boy will recover back to a state of normalcy sometime between the end of 2017 and the end of 2018. To the extent that recovery period takes longer, Golden Boy's damages would be greater.

By:

*[signature]*

Gene Deetz

Date: September 6, 2016

HIGHLY CONFIDENTIAL

16

# Gene L. Deetz
**Managing Director**

gene.deetz@navigant.com
New York, NY
Tel: 646.227.4235

## Professional Summary

Gene Deetz is a Managing Director in the Disputes and Investigations practice of Navigant Consulting.  Mr. Deetz conducts valuations of business interests, intangible assets, private equities and fixed income securities and related derivatives.  Mr. Deetz's recent valuation work includes engagements for large multinational banks regarding complex structured financial products, valuation work for multinational industrial companies, and solvency opinions in complex business combinations, bankruptcy and fraudulent conveyance matters.

Mr. Deetz specializes in cross-border tax reporting investigations, tax controversy, accounting standards, claims and dispute matters, and expert witness testimony related to commercial, regulatory and tax controversy matters.  Mr. Deetz's work also includes joint venture disputes, valuation and damages analysis related to construction and large infrastructure projects in energy development projects, which span globally throughout the United States and EMEA.

Mr. Deetz provides these services and analyses on behalf of clients involved in a variety of disputes.  Mr. Deetz regularly consults on cross-border tax reporting and tax controversy matters, including serving as an Independent Examiner under the Swiss / DOJ Program regarding cross-border tax matters.  Mr. Deetz also consults on U.S. and international accounting and auditing standards such as financial reporting, valuation, the application of auditing standards and due professional care.  He provides opinions and testimony on these matters to clients before the Securities and Exchange Commission, in civil and tax litigation, and in international arbitration.  His experience includes engagements related to securities litigation, solvency disputes, material adverse change litigation, contract claims, damages related to fraud and breach of fiduciary duty claims, minority shareholder actions and federal tax controversies.

Prior to joining Navigant, Mr. Deetz was a Director with LECG, LLC.  He has also held the position of Managing Director of Strategic Valuation Services with Arthur Andersen, and the Partner in Charge of Valuation and Litigation Support Services with Noell Deetz Agnew & Morse, and with Stoughton Davidson.

## Areas of Expertise

Mr. Deetz has provided consulting in diverse industries including:

- Agribusiness
- Automotive
- Branded Consumer Products
- Cable / Satellite Media
- Chemicals
- Construction
- Energy
- Fabricated Goods

- Financial Services
- Food
- Forestry
- Healthcare
- Hotel
- Insurance
- Pharmaceutical
- Printing & Publishing

- Professional Sports Franchises
- Real Estate
- Retail
- Service
- Technology
- Telecommunications
- Transportation
- Utilities

## Deposition and / or Trial Testimony (July 2012 – July 2016)

- *MBIA Insurance Corp. v. Countrywide Home Loans, Inc., et al.*, Supreme Court of the State of New York, County of New York.

- *Christopher Cohan, individually and as sole Trustee of the Christopher Cohan Separate Property Trust, and Angelina Cohan v. KPMG LLP*, State Court of Fulton County, State of Georgia.

- *The Patriot Group, LLC, v. Hilco Financial, LLC n/k/a 1310 Financial, LLC, et al.*, Circuit Court of Cook County, Illinois.

- *Ambac Assurance Corporation. v. Countrywide Home Loans, Inc., et al.*, Supreme Court of the State of New York, County of New York.

- *House of Europe Funding I, LTD., v. Wells Fargo Bank, N.A. and Collineo Asset Management GMBH.*, United States District Court, Southern District of New York.

- *LBBW Luxemburg, S.A. v. Wells Fargo Bank Securities LLC, f/k/a Wachovia Capital Markets LLC, and Fortis Securities LLC*, United States District Court, Southern District of New York.

- *The Western and Southern Life Insurance Company v. The Bank of New York Mellon,* Supreme Court of the State of New York, County of New York.

**Golden Boy's Summary Judgment Exhibit No. 34**

## Representative Consulting Experience

- Independent Examiner of Swiss private bank reporting to the DOJ regarding cross-border tax matters under the DOJ / Swiss "Program".

- Analysis of fair value accounting and related disclosure standards including compliance with U.S. GAAP and IFRS. Evaluation of techniques and assumptions used by market participants including model calibration and related inputs.

- Structuring and performance analysis of CDOs and underlying or referenced assets.

- Valuation and alleged damages of contribution of intellectual property to an acquired subsidiary.

- Complex securities valuation and derivative close out issues.

- Valuation and accounting for structured financial products with underlying residential real estate collateral, analysis of held for sale vs. held for investment considerations and analysis of amount and timing of allowance for loan loss reserves.

- Valuation regarding investments in CLNs and CDOs.

- Valuation of mortgage-related securities including CDOs and RMBS.

- Financial accounting and valuation of private equities and sovereign debt instruments.

- Analysis of ISDA swap valuation considering market disruption and exercise conditions.

- Analysis of asset-backed commercial paper conduit, including mortgage-backed securities and collateralized debt obligations with subprime assets. Analysis of structure, portfolio selection, and portfolio performance.

- Valuation and accounting for fixed income assets and liabilities, derivatives and mortgage-backed securities including advances, whole loans and subprime assets.

- Analysis of supply contract including its market, forward markets and derivatives.

- Brand value and purchase price allocation upon sale of brand.

- Analysis of damages regarding termination of supply contract.

- Valuations of business enterprise and underlying tangible and intangible assets.

## Representative Consulting Experience (continued)

- Damages relating to installation of accounting software.

- Analysis of valuation, accounting, and economics of lease-in, lease-out (LILO) transactions.

- Analysis of damage allegations concerning accounting fraud impact on business acquisition.

- Analysis and valuation of distressed sovereign debt.

## Work History

| | |
|---|---|
| Managing Director, Navigant | 2008 – Present |
| Principal, Chicago Partners, LLC | 2006 – 2008 |
| Director, LECG, LLC | 2002 – 2006 |
| Managing Director, Arthur Andersen | 2001 – 2002 |
| Partner, Noell Deetz Agnew & Morse LLP | 1998 – 2001 |
| Partner, Stoughton Davidson | 1972 – 1998 |

## Certifications, Memberships and Awards

Certified Public Accountant (California, New York and Pennsylvania)

Accredited Senior Appraiser, American Society of Appraisers, Business Valuation

Accredited in Business Valuation (ABV), American Institute of Certified Public Accountants

Certified in Financial Forensics (CFF), American Institute of Certified Public Accountants

California Society of Certified Public Accountants

## Education

| | |
|---|---|
| Bachelor of Arts, Economics | California State University, Fresno California |

**Golden Boy's Summary Judgment Exhibit No. 34**

APPENDIX II – DOCUMENTS CONSIDERED AND RELIED UPON

**Golden Boy Financial Statements & Data**



**Haymon Financial Statements & Data**



**Agreements**



**Golden Boy's Summary Judgment Exhibit No. 34**

HAYMON_00002751.pdf
HAYMON_00002767.pdf
HAYMON_00002791.pdf
HAYMON_00002799.pdf
HAYMON_00002815.pdf
HAYMON_00002855.pdf
HAYMON_00002864.pdf
HAYMON_00002904.pdf
HAYMON_00002920.pdf
HAYMON_00002936.pdf
HAYMON_00002954.pdf
HAYMON_00002962.pdf
HAYMON_00002970.pdf
HAYMON_00003019.pdf
HAYMON_00003044.pdf
HAYMON_00003060.pdf
HAYMON_00003084.pdf
HAYMON_00003100.pdf
HAYMON_00003146.pdf
HAYMON_00003162.pdf
HAYMON_00003187.pdf
HAYMON_00003195.pdf
HAYMON_00003261.pdf
HAYMON_00003285.pdf
HAYMON_00003293.pdf
HAYMON_00003363.pdf
HAYMON_00003400.pdf
HAYMON_00003436.pdf
HAYMON_00003445.pdf
HAYMON_00003491.pdf
HAYMON_00003527.pdf
HAYMON_00003555.pdf
HAYMON_00003564.pdf
HAYMON_00003573.pdf
HAYMON_00003611.pdf
HAYMON_00003620.pdf
HAYMON_00003629.pdf
HAYMON_00003683.pdf
HAYMON_00003764.pdf
HAYMON_00003791.pdf
HAYMON_00003818.pdf
HAYMON_00003827.pdf
HAYMON_00003845.pdf
HAYMON_00003882.pdf
HAYMON_00003981.pdf
HAYMON_00003990.pdf
HAYMON_00004069.pdf
HAYMON_00004089.pdf
HAYMON_00004117.pdf
HAYMON_00004124.pdf
HAYMON_00004138.pdf

HAYMON_00004152.pdf
HAYMON_00004266.pdf
HAYMON_00004280.pdf
HAYMON_00004294.pdf
HAYMON_00004322.pdf
HAYMON_00004357.pdf
HAYMON_00004371.pdf
HAYMON_00004426.pdf
HAYMON_00004488.pdf
HAYMON_00004519.pdf
HAYMON_00004542.pdf
HAYMON_00004591.pdf
HAYMON_00004607.pdf
HAYMON_00004623.pdf
HAYMON_00004654.pdf
HAYMON_00004678.pdf
HAYMON_00004686.pdf
HAYMON_00004728.pdf

**Haymon Management Agreements**
HAYMON_00002336.pdf
HAYMON_00002351.pdf
HAYMON_00002359.pdf
HAYMON_00002393.pdf
HAYMON_00002402.pdf
HAYMON_00002411.pdf
HAYMON_00002429.pdf
HAYMON_00002438.pdf
HAYMON_00002456.pdf
HAYMON_00002468.pdf
HAYMON_00002477.pdf
HAYMON_00002486.pdf
HAYMON_00002510.pdf
HAYMON_00002518.pdf
HAYMON_00002542.pdf
HAYMON_00002550.pdf
HAYMON_00002574.pdf
HAYMON_00002582.pdf
HAYMON_00002590.pdf
HAYMON_00002606.pdf
HAYMON_00002630.pdf
HAYMON_00002638.pdf
HAYMON_00002646.pdf
HAYMON_00002655.pdf
HAYMON_00002663.pdf
HAYMON_00002679.pdf
HAYMON_00002687.pdf
HAYMON_00002759.pdf
HAYMON_00002775.pdf
HAYMON_00002783.pdf
HAYMON_00002831.pdf

Case 2:15-cv-01045-RFB-BNW Document 664-5 Filed 06/15/19 Page 28 of 60
Case 2:15-cv-01045-RFB-BNW Document 287 Filed 09/08/13 Page 29 of 59 Page ID
#:9111

HAYMON_00002839.pdf
HAYMON_00002847.pdf
HAYMON_00002872.pdf
HAYMON_00002888.pdf
HAYMON_00002896.pdf
HAYMON_00002912.pdf
HAYMON_00002986.pdf
HAYMON_00002995.pdf
HAYMON_00003011.pdf
HAYMON_00003027.pdf
HAYMON_00003036.pdf
HAYMON_00003076.pdf
HAYMON_00003108.pdf
HAYMON_00003138.pdf
HAYMON_00003154.pdf
HAYMON_00003171.pdf
HAYMON_00003179.pdf
HAYMON_00003203.pdf
HAYMON_00003219.pdf
HAYMON_00003237.pdf
HAYMON_00003245.pdf
HAYMON_00003277.pdf
HAYMON_00003311.pdf
HAYMON_00003327.pdf
HAYMON_00003335.pdf
HAYMON_00003344.pdf
HAYMON_00003353.pdf
HAYMON_00003372.pdf
HAYMON_00003381.pdf
HAYMON_00003390.pdf
HAYMON_00003409.pdf
HAYMON_00003418.pdf
HAYMON_00003455.pdf
HAYMON_00003473.pdf
HAYMON_00003500.pdf
HAYMON_00003509.pdf
HAYMON_00003536.pdf
HAYMON_00003545.pdf
HAYMON_00003582.pdf
HAYMON_00003591.pdf
HAYMON_00003602.pdf
HAYMON_00003638.pdf
HAYMON_00003647.pdf
HAYMON_00003665.pdf
HAYMON_00003701.pdf
HAYMON_00003719.pdf
HAYMON_00003728.pdf
HAYMON_00003746.pdf
HAYMON_00003782.pdf
HAYMON_00003800.pdf
HAYMON_00003809.pdf

HAYMON_00003836.pdf
HAYMON_00003863.pdf
HAYMON_00003873.pdf
HAYMON_00003891.pdf
HAYMON_00003909.pdf
HAYMON_00003927.pdf
HAYMON_00003945.pdf
HAYMON_00003963.pdf
HAYMON_00004014.pdf
HAYMON_00004024.pdf
HAYMON_00004031.pdf
HAYMON_00004037.pdf
HAYMON_00004053.pdf
HAYMON_00004062.pdf
HAYMON_00004075.pdf
HAYMON_00004082.pdf
HAYMON_00004103.pdf
HAYMON_00004110.pdf
HAYMON_00004131.pdf
HAYMON_00004145.pdf
HAYMON_00004159.pdf
HAYMON_00004175.pdf
HAYMON_00004189.pdf
HAYMON_00004196.pdf
HAYMON_00004203.pdf
HAYMON_00004210.pdf
HAYMON_00004217.pdf
HAYMON_00004224.pdf
HAYMON_00004231.pdf
HAYMON_00004238.pdf
HAYMON_00004245.pdf
HAYMON_00004252.pdf
HAYMON_00004259.pdf
HAYMON_00004273.pdf
HAYMON_00004301.pdf
HAYMON_00004315.pdf
HAYMON_00004336.pdf
HAYMON_00004350.pdf
HAYMON_00004378.pdf
HAYMON_00004385.pdf
HAYMON_00004391.pdf
HAYMON_00004405.pdf
HAYMON_00004412.pdf
HAYMON_00004434.pdf
HAYMON_00004452.pdf
HAYMON_00004470.pdf
HAYMON_00004501.pdf
HAYMON_00004510.pdf
HAYMON_00004530.pdf
HAYMON_00004550.pdf
HAYMON_00004582.pdf

Case 2:15-cv-01045-RFB-BNW   Document 664-5   Filed 06/15/19   Page 30 of 60
Case 2:15-cv-01045-RFB-BNW   Document 287   Filed 09/03/18   Page 29 of 35   Page ID
#:9113

HAYMON_00004704.pdf
HAYMON_00004720.pdf

**Golden Boy Promotion Term Sheets**
GBP000001.pdf
GBP000014.pdf
GBP000026.pdf
GBP000039.pdf
GBP000051.pdf
GBP000063.pdf
GBP000075.pdf
GBP000087.pdf
GBP000100.pdf
GBP000113.pdf
GBP000125.pdf
GBP000137.pdf
GBP000143.pdf
GBP000155.pdf
GBP000167.pdf
GBP000179.pdf
GBP000191.pdf
GBP000202.pdf
GBP000214.pdf
GBP000215.pdf
GBP000227.pdf
GBP000239.pdf
GBP000251.pdf
GBP000262.pdf
GBP000274.pdf
GBP000286.pdf
GBP000298.pdf
GBP000310.pdf
GBP000322.pdf
GBP000334.pdf
GBP000347.pdf
GBP000359.pdf
GBP000372.pdf
GBP000386.pdf
GBP016315.pdf
GBP016324.pdf
GBP016334.pdf
GBP016343.pdf
GBP016352.pdf
GBP016361.pdf
GBP016371.pdf
GBP016381.pdf
GBP016391.pdf
GBP016400.pdf
GBP016410.pdf
GBP016417.pdf
GBP016426.pdf

Case 2:15-cv-01045-RFB-BNW Document 664-5 Filed 06/15/19 Page 31 of 60
Case 2:15-cv-01045-RFB-BNW Document 287 Filed 09/03/18 Page 30 of 39 Page ID
#:9114

GBP016441.pdf
GBP016450.pdf
GBP016460.pdf
GBP016470.pdf
GBP016480.pdf
GBP016489.pdf
GBP016500.pdf
GBP016511.pdf
GBP016524.pdf
GBP016536.pdf
GBP016547.pdf
GBP016559.pdf
GBP016570.pdf
GBP016583.pdf
GBP016595.pdf
GBP016607.pdf
GBP016619.pdf
GBP016631.pdf
GBP016643.pdf
GBP016655.pdf
GBP016666.pdf
GBP016678.pdf
GBP016690.pdf
GBP016702.pdf
GBP016715.pdf
GBP016727.pdf
GBP016739.pdf
GBP016752.pdf
GBP016764.pdf
GBP016777.pdf
GBP016791.pdf
GBP016792.pdf
GBP016803.pdf
GBP016804.pdf
GBP016807.pdf
GBP016810.pdf
GBP016821.pdf
GBP016830.pdf
GBP016842.pdf

**Golden Boy Fight Contracts and Related Documents**
GBP000398.pdf
GBP000406.pdf
GBP000420.pdf
GBP000433.pdf
GBP000443.pdf
GBP000459.pdf
GBP000472.pdf
GBP000505.pdf
GBP000517.pdf
GBP000527.pdf

Case 2:15-cv-01045-RFB-BNW Document 664-5 Filed 06/15/19 Page 32 of 60
Case 2:15-cv-01045-RFB-NW Document 287 Filed 09/03/18 Page 30 of 39 Page ID
#:9115

GBP000537.pdf
GBP000547.pdf
GBP000561.pdf
GBP000578.pdf
GBP000589.pdf
GBP000600.pdf
GBP000643.pdf
GBP000657.pdf
GBP000669.pdf
GBP000682.pdf
GBP000694.pdf
GBP000709.pdf
GBP000718.pdf
GBP000730.pdf
GBP000787.pdf
GBP000799.pdf
GBP000801.pdf
GBP000815.pdf
GBP000825.pdf
GBP000834.pdf
GBP000852.pdf
GBP000862.pdf
GBP000869.pdf
GBP000879.pdf
GBP000899.pdf
GBP000905.pdf

**Golden Boy Fight Cards**
GBP016225.pdf
GBP016257.pdf
GBP016300.pdf

**Haymon Fight Contracts and Related Documents**
HAYMON_00000764.pdf
HAYMON_00000785.pdf
HAYMON_00000793.pdf
HAYMON_00000794.pdf
HAYMON_00000796.pdf
HAYMON_00000797.pdf
HAYMON_00000799.pdf
HAYMON_00000800.pdf
HAYMON_00000801.pdf
HAYMON_00000802.pdf
HAYMON_00000803.pdf
HAYMON_00000804.pdf
HAYMON_00000805.pdf
HAYMON_00000806.pdf
HAYMON_00000809.pdf
HAYMON_00000810.pdf
HAYMON_00000813.pdf
HAYMON_00000814.pdf

HAYMON_00000815.pdf
HAYMON_00000817.pdf
HAYMON_00000820.pdf
HAYMON_00000822.pdf
HAYMON_00000823.pdf
HAYMON_00000824.pdf
HAYMON_00000825.pdf
HAYMON_00000829.pdf
HAYMON_00000834.pdf
HAYMON_00000835.pdf
HAYMON_00000836.pdf
HAYMON_00000837.pdf
HAYMON_00000841.pdf
HAYMON_00000842.pdf
HAYMON_00000844.pdf
HAYMON_00000845.pdf
HAYMON_00000847.pdf
HAYMON_00000848.pdf
HAYMON_00000850.pdf
HAYMON_00000852.pdf
HAYMON_00000853.pdf
HAYMON_00000854.pdf
HAYMON_00000855.pdf
HAYMON_00000856.pdf
HAYMON_00000860.pdf
HAYMON_00000861.pdf
HAYMON_00000862.pdf
HAYMON_00000866.pdf
HAYMON_00000868.pdf
HAYMON_00000869.pdf
HAYMON_00000872.pdf
HAYMON_00000873.pdf
HAYMON_00000876.pdf
HAYMON_00000880.pdf
HAYMON_00000881.pdf
HAYMON_00000883.pdf
HAYMON_00000886.pdf
HAYMON_00000890.pdf
HAYMON_00000891.pdf
HAYMON_00000893.pdf
HAYMON_00000896.pdf
HAYMON_00000898.pdf
HAYMON_00000899.pdf
HAYMON_00000901.pdf
HAYMON_00000902.pdf
HAYMON_00000904.pdf
HAYMON_00000905.pdf
HAYMON_00000906.pdf
HAYMON_00000910.pdf
HAYMON_00000911.pdf
HAYMON_00000912.pdf

HAYMON_00000913.pdf
HAYMON_00000914.pdf
HAYMON_00000915.pdf
HAYMON_00000916.pdf
HAYMON_00000917.pdf
HAYMON_00000918.pdf
HAYMON_00000920.pdf
HAYMON_00000921.pdf
HAYMON_00000922.pdf
HAYMON_00000923.pdf
HAYMON_00000924.pdf
HAYMON_00000925.pdf
HAYMON_00000926.pdf
HAYMON_00000927.pdf
HAYMON_00000930.pdf
HAYMON_00000931.pdf
HAYMON_00000932.pdf
HAYMON_00000951.pdf
HAYMON_00000989.pdf
HAYMON_00001044.pdf
HAYMON_00001069.pdf
HAYMON_00001105.pdf
HAYMON_00001147.pdf
HAYMON_00001230.pdf
HAYMON_00001275.pdf
HAYMON_00001296.pdf
HAYMON_00001311.pdf
HAYMON_00001329.pdf
HAYMON_00001350.pdf
HAYMON_00001355.pdf
HAYMON_00001440.pdf
HAYMON_00001464.pdf
HAYMON_00001481.pdf
HAYMON_00001517.pdf
HAYMON_00001554.pdf
HAYMON_00001573.pdf
HAYMON_00001585.pdf
HAYMON_00001658.pdf
HAYMON_00001664.pdf
HAYMON_00001687.pdf
HAYMON_00001702.pdf
HAYMON_00001710.pdf
HAYMON_00001782.pdf
HAYMON_00001797.pdf
HAYMON_00001808.pdf
HAYMON_00001827.pdf
HAYMON_00001837.pdf
HAYMON_00001852.pdf
HAYMON_00001866.pdf
HAYMON_00001879.pdf
HAYMON_00001913.pdf

**Golden Boy's Summary Judgment Exhibit No. 34**

Case 2:15-cv-01045-RFB-BNW   Document 664-5   Filed 06/15/19   Page 35 of 60
Case 2:15-cv-01045-RFB-MRW   Document 287   Filed 09/03/18   Page 34 of 59 Page ID
#:9118

HAYMON_00001934.pdf
HAYMON_00001942.pdf
HAYMON_00001967.pdf
HAYMON_00001985.pdf
HAYMON_00002003.pdf
HAYMON_00002017.pdf
HAYMON_00002020.pdf
HAYMON_00002023.pdf
HAYMON_00002026.pdf
HAYMON_00002029.pdf
HAYMON_00002032.pdf
HAYMON_00002035.pdf
HAYMON_00002038.pdf
HAYMON_00002041.pdf
HAYMON_00002044.pdf
HAYMON_00002070.pdf
HAYMON_00002073.pdf
HAYMON_00002076.pdf
HAYMON_00002079.pdf
HAYMON_00002082.pdf
HAYMON_00002085.pdf
HAYMON_00002089.pdf
HAYMON_00002092.pdf
HAYMON_00002096.pdf
HAYMON_00002099.pdf
HAYMON_00002103.pdf
HAYMON_00002107.pdf
HAYMON_00002111.pdf
HAYMON_00002115.pdf
HAYMON_00002119.pdf
HAYMON_00002123.pdf
HAYMON_00002127.pdf
HAYMON_00002135.pdf
HAYMON_00002137.pdf
HAYMON_00002139.pdf
HAYMON_00002141.pdf
HAYMON_00002143.pdf
HAYMON_00002145.pdf
HAYMON_00002147.pdf
HAYMON_00002149.pdf
HAYMON_00002151.pdf
HAYMON_00002153.pdf
HAYMON_00002166.pdf

**Fighter Rankings Data**
Rankings from http://www.ibfusbaregistration.com/
Rankings from http://www.wbaboxing.com/
Rankings from http://wbcboxing.com/
Rankings from http://www.wboboxing.com/
Rankings from http://www.fightnews.com/

**Golden Boy TV Contracts**



**Haymon TV Contracts**

**Expert Reports, Including Footnote References and Supporting Exhibits**
Expert Report of Robert Kneuper, PhD, dated September 6, 2016 [No Bates Number]
Expert Report of Gary Shaw, dated September 6, 2016 [No Bates Number]

**Litigation**
Complaint for Sherman Act Violations, Unfair Practices Act Violations and Unfair Competition, Golden Boy Promotions, LLC, and Bernard Hopkins, Plaintiffs, against Alan Haymon, Alan Haymon Development, Inc., Haymon Sports, LLC, Haymon Boxing Management, Haymon Boxing LLC, Haymon Boxing: Media Group Holdings LLC, Waddell & Reed Financial, Inc., Waddell & Reed, Inc., Ivy Asset Strategy Fund, WRA Asset Strategy, Ivy Funds VIP Asset Strategy, Ryan Caldwell, And Does 1 Through 20, Defendants, Case 2:15-cv-03378-JFW-MRW, (United States District Court Central District of California, May 5, 2015). [No Bates Number]

First Amended Complaint for Sherman Act Violations, Unfair Practices Act Violations and Unfair Competition, Golden Boy Promotions, LLC, Golden Boy Promotions, Inc, and Bernard Hopkins, Plaintiffs, against Alan Haymon, Alan Haymon Development, Inc., Haymon Holdings, LLC, Haymon Sports, Llc, Haymon Boxing Management, Haymon Boxing LLC, And Ryan Caldwell, Defendants, Case 2:15-cv-03378-JFW-MRW, (United States District Court Central District of California, August 10, 2015). [No Bates Number]

Plaintiffs' Initial Disclosures Pursuant To FRCP 26(A), Golden Boy Promotions, LLC, et al., Plaintiffs, against Al Haymon, et al., Defendants, Case 2:15-cv-03378-JFW-MRW, (United States District Court Central District of California, August 10, 2015). [No Bates Number]

Second Amended Complaint For Sherman Act Violations, Unfair Practices Act Violations And Unfair Competition, *Golden Boy Promotions, LLC, Golden Boy Promotions, Inc. and Bernard Hopkins, Plaintiffs, against Alan Haymon, Alan Haymon Development, Inc., Haymon Holdings, LLC, Haymon Sports, LLC, Haymon Boxing Management, Haymon Boxing LLC, And Ryan Caldwell, Defendants,* Case 2:15-cv-03378-JFW-MRW, (United States District Court Central District of California, January 20, 2016). [No Bates Number]

The Haymon Defendants' Answer to The Second Amended Complaint, Golden Boy Promotions, LLC, et al., Plaintiffs, against Al Haymon, et al., Defendants, Case 2:15-cv-03378-JFW-MRW, (United States District Court Central District of California, Western Division, February 3, 2016). [No Bates Number]

**Golden Boy's Summary Judgment Exhibit No. 34**

Defendants' Initial Disclosures Pursuant To Federal Rule of Civil Procedure 26(A)(L), Golden Boy Promotions, LLC, et al., Plaintiffs, against Al Haymon, et al., Defendants, Case 2:15-cv-03378-JFW-MRW, (United States District Court Central District of California, Western Division, June 27, 2016). [No Bates Number]

Plaintiffs' Supplemental Responses to Defendant Haymon Sports, LLC's First Set of Interrogatories, Golden Boy Promotions, LLC, et al., Plaintiffs, against Al Haymon, et al., Defendants, Case 2:15-cv-03378-JFW-MRW, (United States District Court Central District of California, July 22, 2016). [No Bates Number]

Defendants' First Amended Initial Disclosures Pursuant to Federal Rule of Civil Procedure 26(A)(1), Golden Boy Promotions, LLC, et al., Plaintiffs, against Al Haymon, et al., Defendants, Case 2:15-cv-03378-JFW-MRW, (United States District Court Central District of California, August 16, 2016). [No Bates Number]

Plaintiffs' Supplemental Responses to Defendant Haymon Sports, LLC's First Set of Interrogatories, Golden Boy Promotions, LLC, et al., Plaintiffs, against Al Haymon, et al., Defendants, Case 2:15-cv-03378-JFW-MRW, (United States District Court Central District of California, August 25, 2016). [No Bates Number]

██████████████████████████████████████

████████████

**Miscellaneous**
15 U.S.C. § 6308(b)(1)(B)

Roger J. Grabowski, James P. Harrington, Carla Nunes, *2015 Valuation Handbook: Industry Cost of Capital*

https://quickbooks.intuit.com/online/

https://www.techopedia.com/definition/13905/quickbooks

http://boxrec.com/

Integra Industry Growth Outlook Report 197.3 7941 PROFESSIONAL SPORTS CLUBS AND PROMOTERS.pdf

███████████████████████████

GG000146.msg

GG000320.msg

Economic Outlook_Q1 2016.pdf

Case 2:15-cv-01045-RFB-BNW   Document 664-5   Filed 06/15/19   Page 38 of 60
Case 2:15-cv-03979-JFW-MRW   Document 237-1   Filed 11/09/16   Page 39 of 39   Page ID
#:9121

APPENDIX III – DESCRIPTION OF ANALYSIS AND DATA UNDERLYING DEETZ DAMAGE
CALUCLATION

1. Golden Boy Boxing, LLC and its subsidiaries ("Golden Boy") use QuickBooks to perform core
   accounting and reporting of its financial performance.  QuickBooks is an accounting software
   package developed and marketed by Intuit for small and medium sized businesses offering
   various on-premise accounting applications.[1]  Golden Boy uses QuickBooks to develop its
   quarterly interim and annual audited financial statements.

2. For the calendar years ending 2014 and 2015 and the interim period ending June 30, 2016, the
   consolidated financial statements include Golden Boy subsidiaries Golden Boy Promotions, Inc.
   ("GBP Inc."), Golden Boy Promotions, LLC ("GBP LLC") and Sports and Entertainment
   Publications, LLC ("SEP").  GBP Inc. and GPB LLC are in the business of promoting
   professional boxers and arranging, staging, marketing and otherwise exploiting boxing events and
   related activities.  SEP publishes "The Ring" magazine and manages the related websites and
   intellectual properties.[2]

3. 

4. I received detailed QuickBooks spreadsheets representing all income and expenses recorded in
   QuickBooks for the twelve month periods ending December 31, 2014 and December 31, 2015
   and for the six month period ending June 30, 2016.  I received the audited consolidated financial

---

[1] https://quickbooks.intuit.com/online/.  *See also https://www.techopedia.com/definition/13905/quickbooks.*
[2] Golden Boy Consolidated Financial Statements for the Year Ended December 31, 2014 at page 7.



**Golden Boy's Summary Judgment Exhibit No. 34**

Case 2:15-cv-01045-RFB-BNW Document 664-5 Filed 06/15/19 Page 39 of 60
Case 2:15-cv-03578-JFW-MRW Document 287-1 Filed 11/09/16 Page 39 of 55 Page ID
#:9122

statements for the twelve month periods ending December 31, 2012, 2013, and 2014, and the un-
audited consolidated financial statements for the twelve month period ending December 31, 2015
and the interim six month period ending June 30, 2016 to ensure the QuickBooks spreadsheets I
obtained include the boxing related income and expenses for the periods ended December 31,
2014, December 31, 2015 and the six months ended June 30, 2016.

5.  I requested and received additional detail on boxing show income to
quantify and understand the different types of revenue Golden Boy receives for promoting each
of its fights.

6. I requested and received additional detail on fighter costs to quantify and understand the
fighters that Golden Boy paid for participating in each of its fights.

7. Based on discussions with Golden Boy personnel, I understand that not all fights Golden Boy
promotes are televised. Further, I understand that in many cases only certain fights for each event
are televised. I requested and received additional detail on which fights within each event were
televised for the periods ending December 31, 2014 and December 31, 2015 and for the six
month period ending June 30, 2016.

8. Using the data provided by Golden Boy in paragraphs 4,5, 6 and 7 above, I analyzed each event
during 2014, 2015 and the first six months of 2016. For each event, I allocated income and

Case 2:15-cv-01045-RFB-BNW   Document 664-5   Filed 06/15/19   Page 40 of 60
Case 2:15-cv-01045-RFB-BNW   Document 287-1   Filed 12/09/16   Page 39 of 59   Page ID
#:9123

expenses to each fighter that participated in each event.  For each event, I allocated total TV related income and expenses to each fighter that participated in a televised fight ("TV fighter") based on the amount each TV fighter was paid.[7]  I allocated all other income and expenses to each fighter based on the amounts each fighter was paid.

9.  After performing the analysis detailed in paragraph 8 above, I compiled a fighter-by-fighter, event-by-event income and expense analysis for the periods ending December 31, 2014 and December 31, 2015 and for the six months ending June 30, 2016.  The results of this analysis are used in quantifying my opinions on damages.

---

[7] Said differently, fighters that participated in fights that were not televised were not allocated TV income or expenses.

**Golden Boy's Summary Judgment Exhibit No. 34**

**APPENDIX IV**
**Haymon Broadcast Media Contracts**

| Bates Range | |
|---|---|
| DEF000610 - DEF000634 | |
| DEF000635 - DEF000665 | |
| DEF000666 - DEF000674 | |
| DEF000741 - DEF000757 | |
| DEF000758 - DEF000763 | |

**Golden Boy's Summary Judgment Exhibit No. 34**
**-46-**

**APPENDIX V**
**Golden Boy Broadcast Media Contracts**



| Bates Range |
|---|
| GBP016064 - GBP016072 |
| GBP016058 - GBP016061 |
| GBP016063 |
| GBP016062 |
| GBP016084 - GBP0160088 |

**EXHIBIT 1**

Opportunity Metrics: TV Revenue, Number of Fights Included in TV Revenue, Number of Boxers on TV, Number of Golden Boy Boxers on TV, and Number of Golden Boy Championship Caliber Boxers on TV



**EXHIBIT 2**



**EXHIBIT 3**
**Analysis of Revenues and Expenses on an Event-by-Event, Boxer-by-Boxer Basis**



Sources:
GBP008103
GBP008105
GBP008107
GBP016225
GBP016257
GBP016300
Rankings from http://www.ibfusbaregistration.com/
Rankings from http://www.wbaboxing.com/
Rankings from http://wbcboxing.com/
Rankings from http://www.wboboxing.com/
Rankings from http://www.fightnews.com/

**EXHIBIT 4**
**Comparative Analysis of Golden Boy's Net Operating Income Decline from 2014 through June 30, 2016**



**Golden Boy's Summary Judgment Exhibit No. 34**
**-51-**

Case 2:15-cv-03378-JFW-MRW   Document 237-1   Filed 11/09/16   Page 46 of 59   Page ID #:9130

**EXHIBIT 5**
Calculation of Damages



Golden Boy's Summary Judgment Exhibit No. 34
-52-

**EXHIBIT 6**



Sources:
GBP008103
GBP008105
GBP008107
GBP016225
GBP016257
GBP016300
Rankings from http://www.ibfusbaregistration.com/
Rankings from http://www.wbaboxing.com/
Rankings from http://wbcboxing.com/
Rankings from http://www.wboboxing.com/
Rankings from http://www.fightnews.com/

**EXHIBIT 1**

Opportunity Metrics: TV Revenue, Number of Fights Included in TV Revenue, Number of Boxers on TV, Number of Golden Boy Boxers on TV, and Number of Golden Boy Championship Caliber Boxers on TV



HIGHLY CONFIDENTIAL **Golden Boy's Summary Judgment Exhibit No. 34** Page 1 of 1

## EXHIBIT 3



Sources:
GBP008103
GBP008105
GBP008107
GBP016225
GBP016257
GBP016300
Rankings from http://www.ibfusbaregistration.com/
Rankings from http://www.wbaboxing.com/
Rankings from http://wbcboxing.com/
Rankings from http://www.wboboxing.com/
Rankings from http://www.fightnews.com/
http://boxrec.com

HIGHLY CONFIDENTIAL**Golden Boy's Summary Judgment Exhibit No. 34**

-55-

**2014 Detail**
Support to Exhibit 3



HIGHLY CONFIDENTIAL

**2014 Detail**



HIGHLY CONFIDENTIAL

**Golden Boy's Summary Judgment Exhibit No. 34**
**-57-**

**2014 Detail**
Support to Exhibit 3



HIGHLY CONFIDENTIAL

**Golden Boy's Summary Judgment Exhibit No. 34**



2014 Detail
Support to Exhibit 3



HIGHLY CONFIDENTIAL

**2014 Detail**
Support to Exhibit 3



HIGHLY CONFIDENTIAL

2015 Detail
Support to Exhibit 3



HIGHLY CONFIDENTIAL

**Golden Boy's Summary Judgment Exhibit No. 34**
-61-

1 of 12





HIGHLY CONFIDENTIAL

2013 Detail

Support to Exhibit 3

HIGHLY CONFIDENTIAL

Golden Boy's Summary Judgment Exhibit No. 34
-63-

**2016 Detail**

Support to Exhibit 3



HIGHLY CONFIDENTIAL

**Golden Boy's Summary Judgment Exhibit No. 34**
**-64-**

2016 Detail



HIGHLY CONFIDENTIAL