# EXHIBIT 5

**Declaration of Gene Deetz (Nov. 8, 2016),
Case No. 15-cv-3378, Dkt. No. 237
(Nov. 9, 2016)**

BERTRAM FIELDS (SBN 024199)
BFields@ggfirm.com
RICARDO P. CESTERO (SBN 203230)
RCestero@GreenbergGlusker.com
JAMES R. MOLEN (SBN 260269)
JMolen@GreenbergGlusker.com
GREENBERG GLUSKER FIELDS
  CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590
Telephone: 310.553.3610
Fax: 310.553.0687

Attorneys for Plaintiffs
Golden Boy Promotions, LLC, Golden Boy
Promotions, Inc. and Bernard Hopkins

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOLDEN BOY PROMOTIONS, LLC, GOLDEN BOY PROMOTIONS, INC. and BERNARD HOPKINS,<br><br>Plaintiffs,<br><br>v.<br><br>ALAN HAYMON, ALAN HAYMON DEVELOPMENT, INC., HAYMON HOLDINGS, LLC, HAYMON SPORTS, LLC, HAYMON BOXING MANAGEMENT, HAYMON BOXING LLC, and RYAN CALDWELL,<br><br>Defendants. | Case No. 2:15-cv-03378 JFW (MRWx)<br><br>*Assigned to Hon. John F. Walter*<br><br>**[REDACTED PUBLIC VERSION PURSUANT TO OCTOBER 28, 2016 COURT ORDER (DOCKET NO. 141) AND PENDING COURT ORDER]**<br><br>**DECLARATION OF GENE DEETZ IN SUPPORT OF PLAINTIFFS' OPPOSITIONS TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**<br><br>Hearing Date: November 28, 2016<br>Time: 1:30 p.m.<br>Place: Courtroom No. 16<br><br>Action Filing Date: May 5, 2015<br>Trial Date: March 14, 2017 |

17896-00617/2709143.1

DECLARATION OF GENE DEETZ

# DECLARATION OF GENE DEETZ

I, Gene Deetz, declare as follows:

1. I have been retained by counsel for the plaintiffs in this matter to provide my expert opinions regarding damages, if any, suffered by plaintiffs Golden Boy Promotions, LLC and Golden Boy Promotions, Inc. ("Golden Boy") as a result of Haymon's alleged anticompetitive practices in the boxing industry. I previously submitted my expert report in this matter on September 6, 2016. The facts set forth herein are of my own personal knowledge and, if sworn, I could and would testify competently thereto.

2. I have been a Certified Public Accountant since 1975, licensed in California, New York, and Pennsylvania and an Accredited Senior Appraiser. I also hold accreditations in Business Valuation and Certified Financial Forensics from the American Institute of Certified Public Accountants. I have more than forty years of experience in accounting, valuation, solvency analysis, and related financial issues.

3. I am a Managing Director in the Disputes and Investigations practice of Navigant Consulting, where I perform damage and accounting analyses, conduct solvency analyses, and perform valuations of business interests and intangible assets. Before joining Navigant in May 2008, I was a Principal in Chicago Partners, LLC. Before that I held senior positions in other consulting companies including LECG, LLC, Arthur Andersen, LLP, Noell Deetz, Agnew, and Morse LLP, and Stoughton Davidson, starting in 1972. In my forty-plus years of experience as an auditor, tax practitioner, financial and valuation consultant, and expert witness, I have developed extensive experience in the issues that are the subject of my opinions, including analysis of financial performance and valuation of companies and individuals in professional sports. My qualifications and background are described more fully in the expert report I submitted in this matter on September 6, 2016.

4. Golden Boy is primarily in the business of promoting professional boxers and arranging, staging, marketing, and otherwise exploiting boxing events and related activities. Traditionally, its largest revenue source is from promoting events carried on broadcast media. The relationship between Golden Boy and the broadcast media, and Golden Boy's ability to promote successful events requires, among other things, championship caliber boxers and network timeslot availability.[1]

5. On September 6, 2016, Robert Kneuper, Ph.D. issued his expert report in this matter (the "Kneuper Report"), which concludes that Haymon[2] has reached a position of market power through "tying" and other exclusionary practices. In my expert report I summarize the Kneuper Report opinions that:

a. Haymon has market power in the US market for managing championship caliber boxers and in the US market for promoting championship caliber boxers.

b. Haymon's anticompetitive actions have allowed it to lock up key inputs essential to effectively compete as a promoter, including championship caliber boxers and key broadcasters.

c. Haymon's anticompetitive actions have injured key competing boxing promoters, including Golden Boy; and

d. Haymon's anticompetitive actions have also harmed, and are likely to harm, non-Haymon championship caliber boxers.

6. The opinions set forth in my report, and summarized herein, rely on the Kneuper Report's conclusions regarding the nature of the anticompetitive harm from Haymon's actions and assume antitrust liability.

---

[1] See Expert Report of Dr. Kneuper, ¶53. See also Expert Report of Gary Shaw p. 5, specifically "Without the product and the platform, all you can ever be is a very small time promoter, doing very small local club shows."
[2] Defendants Alan Haymon, Alan Haymon Development, Inc., Haymon Sports, LLC, Haymon Holdings, LLC, Haymon Boxing LLC, and Haymon Boxing Management LLC are referred to collectively herein as "Haymon"

7. Golden Boy's financial condition, measured by income from boxing operations, deteriorated dramatically from the end of 2014 through June 2016. In 2015 and 2016, Golden Boy experienced a decline in the number of Golden Boy promoted championship caliber broadcast television events and associated revenues, and a decline in the number of championship caliber boxers on televised events.

8. The dramatic decline in the financial performance of Golden Boy goes way beyond any market or industrywide downturn. Golden Boy's decline in financial performance does correspond with the type and timing of alleged Haymon anticompetitive business practices.

9. Beginning late in 2014 and continuing through January 2016, Haymon entered into exclusive media contracts with CBS, ESPN, FOX, and NBC, and entered into a high volume event agreement with Spike TV. Tied to these contracts' exclusivity provisions, Haymon paid the networks substantial amounts of money. During this same time period Haymon also entered into exclusive contracts with boxers, which included control over promotion activities, as well as the management of the boxers.

10. The acquisition of exclusive broadcast network contracts (which include *the payment of fees to the networks*)[3] and executing management and advisory contracts, that give control over the selection of promoter to Haymon (and include *a guaranteed higher purse than previously paid*)[4] are considered in the Kneuper Report in reaching the opinion that Haymon was using anticompetitive business practices.

11. I have done a separate analysis of Golden Boy's contracts with broadcast networks. That analysis reveals that as Haymon began signing contracts with network broadcasters, Golden Boy's network contracts were not renewed on terms previously acceptable to the networks. The continuous and dramatic decline

---

[3] See Expert Report of Dr. Kneuper, ¶76
[4] *Id*, ¶79. *See also*, Expert Report of Gary Shaw, p. 3 and 10.

17896-00617/2707999.2  3  DECLARATION OF GENE DEETZ

of Golden Boy's on-air events and revenues is occurring at the same time as Haymon enters into the aforementioned exclusive broadcast network contracts and makes the related cash payments to the various broadcast networks.[5]

12. The number of Golden Boy broadcast events and their associated revenues declined in 2015 and 2016, when compared to 2014. As I stated above, the relationship between Golden Boy and the broadcast media, and Golden Boy's ability to promote successful events requires, among other things, championship caliber boxers and network timeslot availability. Consistent with the decline in TV revenue is a decline in both the number of championship caliber boxing events and the number of Golden Boy promoted championship caliber boxers.[6]

13. Based on all of the analysis and opinions set forth in my report, which include the above reasons (as described more fully in my report), I have concluded that Golden Boy has suffered significant damage as a result of Haymon's anticompetitive conduct. A true and correct copy of the report I issued in this matter, along with the updated Exhibit 3 I produced at deposition is attached hereto as **Exhibit 34**.

14. I understand that Haymon contends that the only evidence Golden Boy has offered regarding their alleged damages is my expert report. This is not true. In fact, the opinions set forth in my expert report rely on documentary evidence which as I understand was previously produced by Golden Boy in this action, including Golden Boy's financial statements. By way of example, I relied on the following bates-numbered Golden Boy financial statements in rendering the opinions set forth in my report: GBP008103, GBP008105, GBP008107. By further way of example, I relied on the following bates-numbered fight cards in rendering the opinions set forth in my report: GBP016225, GBP016257, GBP016300. True

---

[5] See Deetz Expert Report, Appendices IV and V, and updated Exhibit 1.
[6] See Deetz Expert Report, updated Exhibit 1.

1  and correct copies of all of these documents on which I relied are attached hereto as
2  **Exhibit 35.**
3     15.  In addition, I relied on Golden Boy's financial data, Haymon's
4  financial statements and data, Haymon's advisory agreements, Haymon's
5  management agreements, Golden Boy's promotional term sheets, Golden Boy's
6  fight contracts and related documents, Golden Boy's fight cards, Haymon's fight
7  contracts and related documents, Golden Boy's TV contracts, and Haymon's TV
8  contracts. These documents are specifically identified by bates number in
9  Appendix II of my expert report. All of the aforementioned documents I reviewed
10 bore the bates stamp of parties to this litigation; thus, I am informed and believe
11 that all of these documents were previously produced by the parties in this
12 litigation. All of these documents were relevant to informing my opinion that
13 Golden Boy has suffered significant damage as a result of Haymon's
14 anticompetitive conduct.
15    16.  I understand that Haymon also contends that my proffered damages
16 analysis assesses profits and losses from the promotion of championship caliber
17 Boxers and non-championship caliber Boxers. This is a mischaracterization of my
18 opinion. Rather, my conclusions are based on the damages suffered by Golden Boy
19 as a result of Haymon's anticompetitive conduct.[7] That is, I have assumed the
20 correctness of the Kneuper Report's conclusions regarding the nature of the
21 anticompetitive harm from Haymon's actions, and have adduced the damage to
22 Golden Boy as a result of those actions.[8]
23    17.  Among other things, the Kneuper Report opines that the impact of
24 Haymon's tying of the championship caliber boxer management and promotional
25 markets, and the lockup of the various television outlets has harmed Golden Boy
26 and its ability to attract, and develop both championship caliber and non-

---

[7] See Deetz Expert Report, ¶¶18.
[8] *Id*, ¶¶18-23.

17896-00617/2707999.2    5    DECLARATION OF GENE DEETZ

championship caliber boxers.[9] In other words, Golden Boy's ability to attract championship caliber boxers and develop non-championship caliber boxers into championship caliber boxers has been significantly harmed by Haymon's anticompetitive behavior.[10]

18. The damages suffered by Golden Boy as a result of Haymon's anticompetitive conduct is demonstrated by the dramatic decline in Golden Boy's televised events, TV revenue and the number of boxers, both championship caliber and non-championship caliber,[11] it promoted in the years in question. Thus, Haymon's anticompetitive conduct has impacted the entirety of Golden Boy's business, such that it is appropriate to consider Golden Boy's total financial performance in assessing the damages it has suffered as a result of Haymon's conduct.

19. In forming my opinion, I also conducted an analysis that considered the financial performance of Golden Boy's championship-caliber boxers (as defined in the Kneuper Report), separately from the financial performance of Golden Boy's non-championship-caliber boxers during the years in question. This analysis is reflected in updated Exhibit 3 to my report, a copy of which I understand is attached to Defendants' moving papers as Exhibit 18. The results of my analysis demonstrated that the net financial impact of the non-championship-caliber boxers under contract with Golden Boy was a loss to the company. Indeed, in each of the three years I analyzed, 2014, 2015 and 2016, Golden Boy lost money on the promotion of non-championship-caliber boxers.

20. This further demonstrates why the entirety of Golden Boy's revenues from boxing operations must be taken into account in order to properly assess its

---

[9] See Dr. Kneuper Expert Report, ¶¶12-17, 23 and 25.
[10] Id., ¶¶12-17, 23 and 25.
[11] The workbook I produced supporting updated Deetz Report Exhibit 3, shows that the number of championship caliber boxers promoted by Golden Boy declines from 73 boxers in 2014 to 32 boxers in 2015 to 27 boxers in 2016, and the number of non-championship caliber boxers promoted by Golden Boy declines from 327 to 211 to 128 during the same time period.

17896-00617/2707999.2        6        DECLARATION OF GENE DEETZ

damages. Namely, if one were to exclude the financial impact (losses) of Golden Boy's non-championship-caliber boxers, it would ignore the investment Golden Boy is making in developing non-champion caliber boxers into championship caliber boxers, and secondarily result in higher damages to Golden Boy. This analysis further supports the criteria set forth in the Kneuper Report for defining championship caliber boxers, because it demonstrates that the boxers falling within this definition are economically viable (i.e., profitable), whereas the boxers that fall outside this definition, as a general matter, require investment, and therefore are not economically viable (i.e., not profitable) until they reach championship-caliber boxer status.[12]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 8, 2016, at New York, New York.

_____
Gene Deetz

---

[12] See Dr. Kneuper Expert Report, ¶25.

17896-00617/2707999.2      7      DECLARATION OF GENE DEETZ