# Exhibit F

Plaintiffs' Objections to Zuffa's Proposal to Introduce Certain Purported "Summary Exhibits" at the Hearing Concerning Plaintiffs' Motion for Class Certification

1  Eric L. Cramer (admitted *pro hac vice*)
   Michael Dell'Angelo (admitted *pro hac vice*)
2  Patrick F. Madden (admitted *pro hac vice*)
   Mark R. Suter (admitted *pro hac vice*)
3  BERGER MONTAGUE PC
   1818 Market St., Suite 3600
4  Philadelphia, PA 19103
   Phone: (215) 875-3000/Fax: (215) 875-4604
5  ecramer@bm.net
   mdellangelo@bm.net
6  pmadden@bm.net
   msuter@bm.net
7
8  *Co-Lead Counsel for the Classes and*
   *Attorneys for Individual and Representative Plaintiffs*
9  *Cung Le, Nathan Quarry, Jon Fitch, Luis Javier Vazquez,*
   *Brandon Vera, and Kyle Kingsbury*
10
   [Additional counsel listed on signature page]

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>Defendant. | Case No.: 2:15-cv-01045-RFB-(PAL)<br><br>**PLAINTIFFS' OBJECTIONS TO DEFENDANT ZUFFA, LLC'S PROPOSAL TO INTRODUCE CERTAIN PURPORTED "SUMMARY EXHIBITS" AT THE HEARING CONCERNING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>[FILED UNDER SEAL] |

## I.  INTRODUCTION

Plaintiffs and Defendant Zuffa, LLC exchanged exhibit lists for the Hearing on Plaintiffs' Motion for Class Certification ("Hearing") as ordered by the Court. ECF No. 649. Zuffa's list included 8 entirely new putative "summary exhibits," in addition to 14 putative summary exhibits Zuffa's lawyers (but not its experts) had previously submitted in connection with class certification and summary judgment (together, the "Disputed Exhibits").[1] Plaintiffs object to the 22 Disputed Exhibits because each (1) reflects the work of undisclosed consultants not previously disclosed as required by FRCP 26(a)(2), or (2) does not meet the standard for a summary exhibit under FRE 1006, or both. Zuffa should not be permitted to introduce through its economists or otherwise use the Disputed Exhibits at the Hearing.

Zuffa's attempt to make new arguments at the Hearing is part of a pattern in this case. For instance, Zuffa first staked out an extreme position through its economists, namely that wage share[2] was "not a measure of anything useful or informative," TR1 ¶127, principally citing Prof. Alan Manning as a "particularly authoritative" expert who, Zuffa's experts apparently believed, would condemn Plaintiffs' experts' approach. *E.g.*, OR1 ¶¶22-26. So Plaintiffs contacted Prof. Manning and asked him who was correct. He said Plaintiffs were, and agreed to submit a rebuttal report, opining that wage share was appropriate for use *in this case just as Plaintiffs' experts had used it*. Faced with this expert testimony from an economist both sides agree is authoritative, the myriad of academic publications using wage share, and its own internal use of wage share in the regular course of its business, Zuffa ultimately conceded that "wage share is often referenced, particularly in 'sports economics.'" ECF No. 524, at 2, 15. It then shifted to the claim that wage share is proper only when economists "attempt to analyze the impact of an observed change in monopsony power." *Id.* Plaintiffs' experts, including Prof. Manning, explained that is precisely how Plaintiffs' use wage share here (and that Zuffa is wrong about the alleged limitations on the proper use of wage share). Having featured this argument as its main attack on class certification and seen its foundations crumble, Zuffa now is trying to switch arguments

---

[1] Plaintiffs attach a summary chart of Plaintiffs' objections to the Disputed Exhibits as well as the Disputed Exhibits as Exhibits 6-28 of the Madden Declaration filed contemporaneously herewith.
[2] "Wage share," generally refers to the percentage of revenues paid to workers as compensation. In the context of this case, it refers to the share of event revenues paid to fighters. *E.g.*, SR2 ¶116.

*again*, appearing to accept wage share as the mode of analysis, but creating new wage share metrics in a desperate, 11th-hour attack.

Importantly at class certification, Plaintiffs' experts' opinion that they have appropriately employed wage share, and Zuffa's contrary view, raise a *common* question with a common answer. This is consistent with the vast bulk of Zuffa's challenges to Plaintiffs' experts' work, which focused mainly on common issues. Zuffa's economists made comparatively little effort to develop individualized issues. For example, in Dr. Topel's four reports (295 pages), most of his analysis presents arguments and analyses common to the Class as a whole: Zuffa's conduct is purportedly procompetitive for *all* fighters; it supposedly suppressed the pay of *no* fighters. He devotes only 12 pages to arguing that proof of impact might purportedly involve individualized evidence. *See* TR1 at 113-119; TR2 at 17-19; and TR3 at 8-9. Faced with a class hearing, Zuffa apparently has asked some unidentified consultant to develop new modes of analyses not disclosed in its expert reports, run new regression models, and now plans to introduce these new expert analyses at the hearing under the guise of "summary exhibits," either through its experts or on cross-examination. Plaintiffs object to Zuffa introducing these Disputed Exhibits at the Hearing, given the plain meaning of Rule 26(a), and the following acknowledgment of Zuffa's counsel: "I don't think the direct [examinations] can be a surprise since … *we've disclosed [expert] reports and everything has to come out of there*. So this is actually from my perspective a hearing about condensing those materials and letting the experts talk to [the Court] about *what's in those reports.*" *See* Isaacson, W., Hearing Tr. at 11:2-7, ECF No. 651 (Feb. 7, 2019)(emphasis added).

## II.     PROCEDURAL BACKGROUND

The Court directed the Parties to exchange exhibits on May 24, 2019 in preparation for the upcoming Hearing. ECF No. 649. Included among Zuffa's 551 exhibits were the 22 Disputed Exhibits, which were not part of Zuffa's economists' reports. Zuffa included copies of entirely new putative "Summary Exhibits" (a subset of 8 Disputed Exhibits). On May 29, Plaintiffs notified Zuffa that they had serious evidentiary concerns about these 8 new putative "Summary Exhibits." Plaintiffs requested further information, including, (1) when the exhibits were first created, (2) who created them and at whose direction, (3) the backup showing how the exhibits were created, (4) whether Zuffa intended to use the exhibits in its economists' direct examinations, and (5) if so, which parts of their economists'

reports contained opinions that these exhibits supposedly illustrated. *See* Madden Decl., Ex.1. On May 30, Zuffa provided Plaintiffs with backup materials Zuffa's undisclosed consultant (or its lawyers) used to generate the new putative Summary Exhibits, *id.* at Ex.2, but otherwise declined to respond to Plaintiffs' questions. On May 31, Plaintiffs provided Zuffa further specific objections to the 22 Disputed Exhibits,[3] and Plaintiffs reiterated their requests for further information. *See id.* at Ex.3. The Parties met and conferred on June 3, at which time Plaintiffs again asked Zuffa to provide the rest of the information Plaintiffs had requested. On June 4, Plaintiffs sent Zuffa an email providing further bases of Plaintiffs' objections to the Disputed Exhibits. *See* id. at Ex.4. The Parties are at an impasse.

### III. LEGAL STANDARD

Zuffa cannot point to any rule that would allow its introduction of the Disputed Exhibits at the Hearing. The law is clear that parties seeking to introduce expert witness testimony ***must*** provide a written report containing, *inter alia*, "a complete statement of all opinions the witness will express" at the times and in the sequence that the Court orders. *See* FRCP 26(a)(2). A party that "fails to provide information … as required by the [R]ule … is not allowed to use that information … to supply evidence at trial unless the failure was substantially justified or harmless." *Hilborn v. Metro. Grp. Prop. And Cas. Ins. Co.*, 2014 WL 2506303, at *3 (D. Idaho 2014); FRCP 37(c)(1). FRCP 37(c)(1) "gives teeth to [the Rule 26(a) disclosure] requirements by forbidding the use at trial any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101 (9th Cir. 2001). Further, "a party can introduce the information in a summary exhibit under [FRE] 1006, in order to 'to prove the content of voluminous writings ... that cannot be conveniently examined in court.'" *U.S. v. White*, 737 F.3d 1121, 1135 (7th Cir. 2013). A summary exhibit admitted pursuant to Rule 1006 "is substantive evidence—in part because the party is not obligated to introduce the underlying documents themselves." *Id.* However, because summary exhibits "substitute for the voluminous documents themselves, . . . the exhibit[s] must accurately summarize those documents. It must not misrepresent their contents or make arguments about the inferences the

---

[3] Plaintiffs also objected to hundreds of social media posts, new news articles, etc., which were not listed in the materials relied upon by Zuffa's economists (or Plaintiffs' experts), as well as the untimely, unauthorized *fifth* report of Robert Topel (which does not rely on any of the Disputed Exhibits). Such objections can be addressed at the Hearing. Plaintiffs reserve all rights.

jury should draw from them." *Id.*; *In re Taco Bell Wage & Hour Actions*, 2016 WL 2755938, at *10 (E.D. Cal. Apr. 8, 2016). "To be admissible, summary evidence must be 'a neutral compilation of data without opinion.'" *Crawford v. Prof'l Transportation, Inc.*, 2017 WL 1077660, at *5 (S.D. Ind. Mar. 22, 2017). "[T]he information on the summary may not be embellished by or annotated with the conclusions or inferences drawn by the proponent, 'whether in the form of labels, captions, highlighting techniques, or otherwise.'" *U.S. v. Graham*, 2013 WL 6383169, at *2 (D. Mont. Dec. 5, 2013); *U.S. v. Yagi*, 2013 WL 10570994, at *21 (N.D. Cal. Oct. 17, 2013) (rejecting summary exhibit *inter alia* because a summary exhibit "must be free from annotations").

## IV. ARGUMENT

### A. The Disputed Exhibits

The Disputed Exhibits consist of 22 documents: (a) 8 entirely new putative "Summary Exhibits" Zuffa recently turned over; and (b) 14 exhibits Zuffa previously submitted in support of its briefs. Each of these Disputed Exhibits reflects analyses and opinions not offered by Zuffa's economists as part of their reports. Nearly all identify Dr. Singer's "backup materials" as their sole purported source. In other words, there is no question that the Disputed Exhibits are outside the scope of the record created by Zuffa's economists during expert discovery. They represent new analyses by undisclosed consultants (or lawyers), and thus cannot form the basis of Zuffa's expert presentation at the Hearing. Plaintiffs further object to several Disputed Exhibits (SE1, SE3, SE6, and SE7 (defined below)) because they are expert analyses—including a new regression model!—disguised as "data summaries," and thus do not qualify under FRE 1006. Among other concerns, Plaintiffs have not had the opportunity to cross-examine the undisclosed creator of each Disputed Exhibit, and thus have limited ability to test their reliability.

**Summary Exhibit No. 1 ("SE1")**: SE1 was not previously disclosed in an expert report, and does not qualify under FRE 1006. Despite Zuffa's previous (albeit incorrect) view that wage share "is not a measure of anything useful or informative," TR1 ¶127, Zuffa's unnamed consultant purports to chart individual athlete's wage shares on the vertical axis and "Ranked Market Foreclosure Share" on the horizontal axis for Strikeforce fighters before and after Zuffa acquired Strikeforce. Topel did not disclose any opinions concerning individual athlete wage shares *in any of his four reports* (nor did Zuffa's other economists). Thus, Plaintiffs object to Zuffa introducing this through its experts at the

Hearing.[4] In any event, if Plaintiffs are reading it correctly, SE1 supports Plaintiffs in that it shows MMA fighters were paid a lower wage share after Zuffa acquired Strikeforce than before it did so.

**Summary Exhibit No. 2 ("SE2")**: SE2 is not a proper summary exhibit nor have Zuffa's economists previously disclosed such analyses. In SE2, Zuffa's unnamed consultant presents two charts purporting to show fighter compensation levels across different weight classes for different (albeit overlapping) time periods (2005-2016 and 2011-2016). This is not only entirely new—nothing like this appears in any of Zuffa's expert reports—but SE2 is also misleading because it manipulates the vertical axis (compensation level) to make it appear that fighter compensation was higher in 2011-2016 than in 2005-2016 for certain weight classes when in fact it was lower. The new analyses presented here are also irrelevant given that Dr. Singer controls for such differences in his regression analyses. *See, e.g.*, SR1 at Tbl.4 (control variables include weight class).

**Summary Exhibit No. 3 ("SE3")**: SE3 is not a proper summary exhibit nor have Zuffa's economists previously disclosed such analyses or opinions. In SE3, Zuffa's unnamed consultant (or lawyer) purports to present entirely new expert analyses (a table and three charts). First, the note at the bottom of the last chart in SE3 states, "The chart reports athletes' predicted fighter shares using Dr. Singer's foreclosure shares and estimates of the year fixed effects, time trend, and foreclosure share coefficient from Dr. Singer's impact regression models." Zuffa's unnamed consultant apparently specified a new regression (purportedly based in part on Dr. Singer's model), but omitted statistically significant variables, including, *inter alia*, variables accounting for certain differences among fighters that might affect pay. By omitting such variables, SE3 is inherently unreliable and misleading. Second, the table introduces new (and ambiguous) metrics: "Mean Athlete Deviations." Neither that term nor the underlying concept appears in any expert report in this case. Third, the charts on pages 2 and 3 of SE3 purport to graph "Fighter Share Deviations" and "Foreclosure Share Deviations" as (confusingly) dual-vertical axes. These charts and the metrics on which they are based are entirely new and not

---

[4] Dr. Topel did discuss the fact that Dr. Singer assigned a foreclosure share of zero to data reflecting pre-acquisition Strikeforce bouts that Dr. Singer used in one alternative version of his impact regression analysis, *see* TR2 ¶24, but Dr. Singer responded that such analysis is entirely appropriate because, *inter alia*, the pre-acquisition Strikeforce fighters were not bound by Zuffa's exclusionary contracts, *see* SR3 ¶39. Regardless, SE1 does not actually depict Dr. Topel's analyses, but rather adds new wrinkles such as a new "individual athlete share" variable.

discussed in any expert report. Fourth, the last chart in SE3 is titled "Dr. Singer's Predicted Fighter Shares Using Dr. Singer's Impact Regression." That title is misleading for numerous reasons, including that the chart does not actually reflect Dr. Singer's "Predicted Fighter Shares" because Dr. Singer appropriately uses weighted averages in his analyses and the chart improperly uses unweighted averages. *See, e.g.*, SR1 ¶128; SR2 ¶¶59, 128. Notably, the last chart in SE3 contradicts Dr. Topel's written reports. By improperly manipulating the data, the unnamed consultant (or lawyer) distorts the facts, and misleadingly shows what it purports to be "*predicted* athlete wage share" rising over the course of the relevant time period. To the extent that this purports to be how *actual* (as opposed to *predicted*) wage share trended over time, *that is false*. The record evidence shows that wage share trended down over time as Zuffa's dominance rose. Indeed, as Dr. Topel admitted: "[Zuffa's] share of MMA fighters under contract rose while compensation *as a share of event revenue declined.*" TR1 ¶27 (emphasis in original). Of course, that admission is damning and Zuffa understandably wants to walk it back. Its lawyers can try to do so (contrary to the evidence and their own expert's admission), but not through a back-door expert report disguised as a summary exhibit.

**Summary Exhibit Nos. 6 & 7 ("SE6" and "SE7" respectively)**: SE6 and SE7 are not proper summary exhibits nor have Zuffa's economists previously disclosed such analyses or opinions. The unnamed consultants behind SE6 and SE7 purport to set forth a new analysis of Strikeforce's event revenues and wage shares. Further, SE6 is misleading because it fails to weight the Strikeforce and Zuffa data, treating all events equally (even though the events vary in, *e.g.*, revenues per event). In SE7, Zuffa's unnamed consultant essentially acknowledges the need for such weighting by showing that certain Strikeforce events are outliers (*e.g.*, having extremely high or relatively low wage shares). Zuffa apparently proposes to discard these outlier observations in the second chart in SE7 without supporting bases in its economists' reports. Regardless, Dr. Singer accounts for these differences between events through weighting methods. SE6 and SE7, without weighting, are inherently unreliable and misleading.

**Summary Exhibit Nos. 10 & 12 ("SE10" and "SE12" respectively)**: SE10 and SE12 are not proper summary exhibits, nor have Zuffa's economists previously disclosed such analyses or opinions. In SE10 and SE12, Zuffa's unnamed consultant (or lawyer) creates bar graphs purporting to show average event costs, compensation levels, and wage shares for the 2005-2016 and 2011-2016 time

periods across broadcast types. Zuffa's economists have not previously offered opinions breaking out these attributes across broadcast types. Plaintiffs are perplexed as to the relevance of this new attack, given that, for instance, Dr. Singer controls for various broadcast types in his regression model. The charts are also misleading. First, the unnamed consultant apparently sought to obscure that various broadcast types were used only in the 2011-2016 time period. For example, FightPass and Fox events occurred only during the 2011-2016 period, but unless the Charts are carefully compared, the reader may not notice that there is no change in those bars between the 2005-2016 and 2011-2016 charts. Second, the charts refer to "FS1" (a Fox cable channel) to include broadcasts on non-Fox cable channels (*e.g.*, Versus and Spike). As a result, the charts appear to show FS1 discrepancies for different time periods that are actually due to different contracts with different networks. Finally, the charts claim to rely on backup materials for Dr. Singer's fourth report (SR4)—the last authorized expert report in the case. That Zuffa responded to that last authorized report is *prima facie* evidence that it is unauthorized.

**Summary Exhibit No. 11 ("SE11")**: In SE11, Zuffa's unnamed consultant presents a table purporting to show Zuffa's "Annual TUF Production Costs."[5] Zuffa's economists did not analyze this table in the multiple rounds of expert submissions. Further, SE11 is misleading because it is incomplete: SE11 does not include TUF data for the 2010 and 2012 seasons.

**Class Opp. Exs. 87-89, & 92 ("COE87," "COE88," "COE89," & "COE92," respectively)**: Zuffa submitted COE87, COE88, COE89, and COE92 with its brief in opposition to Plaintiffs' Class Motion. Zuffa never provided the back-up material for COE87, COE88, or COE89, and none of these summary exhibits refers to Zuffa's expert work.

**Summary Judgment Exs. 87, 96-99, 114, 124, 126, 128, 131 ("SJEs")**: The SJEs present charts and data that Zuffa submitted in connection with its Motion for Summary Judgment. Plaintiffs are unsure of how Zuffa intends to use them at the Hearing, but Zuffa's economists cannot testify to them because they were not created by Zuffa's economists, nor were they based on their economists' analyses. Further, Zuffa did not submit these exhibits with its opposition to Plaintiffs' Class Motion. As Mr. Isaacson recognized, Zuffa is not permitted to make new arguments at this hearing.

---

[5] "TUF" refers to Zuffa's "The Ultimate Fighter" reality television series, not Live MMA Events.

### B. The Disputed Exhibits Are Untimely Expert Testimony

At the February 2019 hearing, the Parties agreed that the testimony at this Hearing must come from the testifying economists' reports and analyses in this case. As Zuffa's Counsel explained to the Court, "I don't think the direct [examinations] can be a surprise since … we've disclosed [expert] reports and *everything has to come out of there*." Hearing Tr. at 11:2-4, ECF No. 651 (Feb. 7, 2019) (emphasis added). Since that time, Zuffa has apparently (again) realized that its economists' reports were insufficient, and attempted to improperly supplement the expert discovery record.

#### 1. Zuffa Improperly Proposes to Use the Disputed Exhibits with Their Experts.

The Disputed Exhibits are not "summary exhibits" but rather (1) are expert testimony by unnamed persons, or (2) would become expert testimony to the extent Zuffa uses them in connection with their economists' examinations. Exhibits that "purport merely to summarize evidence that is otherwise admissible" but actually "apply analysis and calculations to that evidence" are not summary exhibits: "[t]hey are expert reports." *Lemon v. Harlem Globetrotters Int'l, Inc.*, 2006 WL 3499969, at *4 (D. Ariz. Dec. 5, 2006) ("*Lemon*"). Here, the Disputed Exhibits[6] apply specialized technical knowledge to Dr. Singer's underlying data. For example, SE3 purports to present the results of an unnamed consultant's regression modelling omitting key statistically significant variables from Dr. Singer's own model. *Compare*, *e.g.*, SR1 at Tbl.4 ("Regressions include fixed effects by Fighter, win method, gender, weight class, card placement, bout number, promoter, year, country, venue, and a time trend"), *with* SE3 at 4 ("Notes: The chart reports athletes' predicted fighter shares using Dr. Singer's foreclosure shares and estimates of the year fixed effects, time trend, and foreclosure share coefficient…."). Removing such key variables or weighting requires expert analyses under FRE 702. Because Zuffa did not disclose these opinions per FRCP 26(a)(2), the exhibits cannot be considered.

Even where the Disputed Exhibits do not apply specialized technical knowledge, Zuffa apparently intends to have its economists—who neither created them nor opined about the underlying

---

[6] In particular, SE1, SE3, SE6, and SE7 each involves new variables/metrics not previously set forth in Zuffa's economists' reports. Specifically: SE1 analyzes individual athlete wage shares, which Zuffa's economists did not analyze in their written reports. SE3 invents new metrics concerning "Mean Athlete Deviations" and removes statistically significant variables from Dr. Singer's analyses without any bases in Zuffa's economists' reports, and SE6 and SE7 remove Dr. Singer's weighting mechanisms without any of Zuffa's economists supplying an econometric basis for doing so.

subject matter in their reports—offer testimony about them. Such testimony is governed by FRE 702 and must be disclosed in a timely written report pursuant to FRCP 26(a)(2). Zuffa did not timely disclose such testimony, Plaintiffs have not had the ability to test the analyses presented in the Disputed Exhibits through discovery, and thus Zuffa cannot introduce them.[7]

    **2.    Expert Testimony Concerning the Disputed Exhibits Is Untimely.**

Permitting Zuffa to use the Disputed Exhibits in direct examination of their economists would constitute untimely expert testimony. Expert discovery closed on January 24, 2018. *See* ECF No. 513. Apparently dissatisfied with the analyses of its economists, Zuffa submitted additional reports of its economist Dr. Topel. To ensure a complete record, Plaintiffs submitted responsive reports by Dr. Singer. The Parties ultimately stipulated to Dr. Topel submitting a total of *four* reports and Dr. Singer submitting four reports. Plaintiffs filed the last of these supplemental reports on May 30, 2018. The Court entered the Parties' stipulation. ECF 628. Despite having *four* chances to set forth Dr. Topel's opinions, Zuffa improperly submits additional expert analysis in the Disputed Exhibits.

    **3.    Excluding the Disputed Exhibits Is the Proper Remedy.**

Pursuant to FRCP 37(c)(1), failing to timely disclose material required by FRCP 26(a) requires exclusion unless the failure was substantially justified or harmless. Zuffa has not attempted to show its failure is substantially justified. Nor is Zuffa's untimely expert testimony harmless. Plaintiffs are substantially prejudiced.[8] Plaintiffs have been deprived of the opportunity to cross-examine the author of each Disputed Exhibit and to depose Zuffa's economists concerning their intended testimony about them, and have and will continue to incur substantial expense in reviewing and attempting to respond to what Plaintiffs believe Zuffa is trying to argue, belatedly, based on the new Disputed Exhibits.

**C.    The Disputed Exhibits Violate FRE 1006**

None of the Disputed Exhibits satisfies FRE 1006. First, Zuffa refuses to identify the author(s).

---

[7] Zuffa has represented to Plaintiffs that Zuffa intends to have their economists explain the analyses depicted in the Disputed Exhibits to the Court but suggests that these explanations do not count as "expert opinions." Madden Decl. ¶8. That is pure sophistry. If they are not matters of expert opinion, their experts cannot properly testify about them.

[8] Notwithstanding the prejudice of having to respond to untimely expert analyses without the benefit of deposition, Plaintiffs reserve the right to have their experts present responsive exhibits at the hearing should the Court allow Zuffa to present any of the Disputed Exhibits at the Hearing.

Summary exhibits must be "prepared by a witness available for cross-examination, not by the lawyers trying the case. . . . Fed. R. Evid. 1006 does not allow for the admission of a summary . . . that was prepared by a lawyer trying the case and that restates and distills other properly admitted exhibits. In fact, . . . such a summary is a written argument." *U.S. v. Grajales-Montoya*, 117 F.3d 356, 361 (8th Cir. 1997). Even if not prepared by Zuffa's counsel, "[t]estimony from the preparer of the summary usually is required to establish the foundational facts necessary to establish relevance and authentication." *Montana Land & Mineral Owners Ass'n, Inc. v. Devon Energy Corp.*, 2006 WL 1876859, at *3 (D. Mont. June 2, 2006). "[C]ross-examination gives the opponent an opportunity to reveal any inaccuracies or omissions in the summary." *Id.* (citing *Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.*, 772 F.2d 505, 515 n.9 (9th Cir.1985)). Plaintiffs have not had the opportunity for such cross examination, and should not be required to respond to these new opinions and analyze them on the fly at a Hearing that Zuffa concedes is supposed to be about *condensing what is in the existing reports*.

Second, the Disputed Exhibits contain improper analyses. "A summary under Rule 1006 must not make arguments about the inferences the jury should draw from the documents." *In re Taco Bell*, 2016 WL 2755938, at *10. Here, the Disputed Exhibits apply previously undisclosed analytical formulations that lead to results designed to influence the Court's interpretation of the data. Compounding that problem, Zuffa apparently intends to have its economists testify about these previously undisclosed analyses. Zuffa's proposed procedure contravenes the purpose of summary exhibits, which is to provide "a neutral compilation of data without opinion." *Crawford*, 2017 WL 1077660, at *5 (citation omitted). For example, SE3 provides new metrics for analyzing compensation and foreclosure never before used in an expert report in this case. SE1 implements a new variable not before discussed in Zuffa's economists' reports. By way of further example, certain Disputed Exhibits also contain improper advocacy. SE1 and SE7 include improper text boxes. This sort of annotation is improper argument and not a neutral presentation of the underlying material. Furthermore, the Disputed Exhibits are frequently misleading. For example, SE2 manipulates the vertical axes of the charts, and SE3, SE6 and SE7 use unweighted calculations and misleadingly present them as Dr. Singer's calculations even though Dr. Singer did not use unweighted calculations because, as he has stated, that would have been improper and misleading. *See, e.g.*, SR1 ¶128; SR2 ¶¶59, 128.

PLAINTIFFS' OBJECTIONS TO DEFENDANT ZUFFA, LLC'S PROPOSAL TO INTRODUCE CERTAIN PURPORTED "SUMMARY EXHIBITS" THROUGH ITS ECONOMISTS AT THE HEARING CONCERNING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION - [FILED UNDER SEAL]

Dated: June 14, 2019

Respectfully Submitted,

By: /s/ Eric L. Cramer
     Eric L. Cramer

Eric L. Cramer (*Pro Hac Vice*)
Michael Dell'Angelo (*Pro Hac Vice*)
Patrick F. Madden (*Pro Hac Vice*)
Mark R. Suter (*Pro Hac Vice*)
BERGER MONTAGUE PC
1818 Market St., Suite 3600
Philadelphia, PA 19103
Telephone:   (215) 875-3000
Facsimile:    (215) 875-4604
ecramer@bm.net
mdellangelo@bm.net
pmadden@bm.net
msuter@bm.net

Joseph R. Saveri (*Pro Hac Vice*)
Joshua P. Davis (*Pro Hac Vice*)
Jiamin Chen (*Pro Hac Vice*)
Kevin E. Rayhill (*Pro Hac Vice*)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:   (415) 500-6800
Facsimile:    (415) 395-9940
jsaveri@saverilawfirm.com
jdavis@saverilawfirm.com
jchen@saverilawfirm.com
krayhill@saverilawfirm.com

Benjamin D. Brown (*Pro Hac Vice*)
Richard A. Koffman (*Pro Hac Vice*)
Daniel H. Silverman (*Pro Hac Vice*)
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., N.W., Suite 500
Washington, DC 20005
Telephone:   (202) 408-4600
Facsimile:    (202) 408 4699
bbrown@cohenmilstein.com
rkoffman@cohenmilstein.com
dsilverman@cohenmilstein.com

**Co-Lead Class Counsel**

PLAINTIFFS' OBJECTIONS TO DEFENDANT ZUFFA, LLC'S PROPOSAL TO INTRODUCE CERTAIN PURPORTED "SUMMARY EXHIBITS" THROUGH ITS ECONOMISTS AT THE HEARING CONCERNING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION - [FILED UNDER SEAL]

**Liaison Counsel for the Class**

Don Springmeyer (Nevada Bar No. 1021)
Bradley S. Schrager (Nevada Bar No. 10217)
WOLF, RIFKIN, SHAPIRO, SCHULMAN &
RABKIN, LLP
3556 E. Russell Road, Second Floor
Las Vegas, Nevada 89120
Telephone:   (702) 341-5200
Facsimile:    (702) 341-5300
dspringmeyer@wrslawyers.com
bschrager@wrslawyers.com

**Additional Counsel for the Classes**:

Robert C. Maysey (*Pro Hac Vice*)
Jerome K. Elwell (*Pro Hac Vice*)
WARNER ANGLE HALLAM JACKSON &
FORMANEK PLC
2555 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Telephone:   (602) 264-7101
Facsimile:    (602) 234-0419
rmaysey@warnerangle.com
jelwell@warnerangle.com

William G. Caldes (*Pro Hac Vice*)
SPECTOR ROSEMAN & KODROFF, P.C.
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Phone: (215) 496-0300/Fax: (215) 496-6611
bcaldes@srkattorneys.com

John D. Radice (*Pro Hac Vice*)
RADICE LAW FIRM, P.C.
34 Sunset Blvd.
Long Beach, NJ 08008
Phone: (646) 245-8502
jradice@radicelawfirm.com

Frederick S. Schwartz (*Pro Hac Vice*)
LAW OFFICE OF FREDERICK S. SCHWARTZ
15303 Ventura Boulevard, #1040
Sherman Oaks, CA 91403
Telephone:   (818) 986-2407
Facsimile:    (818) 995-4124
fred@fredschwartzlaw.com

PLAINTIFFS' OBJECTIONS TO DEFENDANT ZUFFA, LLC'S PROPOSAL TO INTRODUCE CERTAIN
PURPORTED "SUMMARY EXHIBITS" THROUGH ITS ECONOMISTS AT THE HEARING
CONCERNING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION - [FILED UNDER SEAL]

# CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of June 2019 a true and correct copy of PLAINTIFFS' OBJECTIONS TO DEFENDANT ZUFFA, LLC'S PROPOSAL TO INTRODUCE CERTAIN PURPORTED "SUMMARY EXHIBITS" THROUGH ITS ECONOMISTS AT THE HEARING CONCERNING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION was served via the District of Nevada's ECF system to all counsel of record who have enrolled in the ECF system.

By:
                /s/ Eric L. Cramer