# EXHIBIT B

## Plaintiffs' Opposition to Defendant Zuffa, LLC's Motion to Seal Exhibits and Protected Materials at the Evidentiary Hearing on Class Certification, ECF No. 675, with Fewer Redactions

Eric L. Cramer (admitted *pro hac vice*)
Michael Dell'Angelo (admitted *pro hac vice*)
Patrick F. Madden (admitted *pro hac vice*)
Mark R. Suter (admitted *pro hac vice*)
BERGER MONTAGUE PC
1818 Market St., Suite 3600
Philadelphia, PA 19103
Phone: (215) 875-3000/Fax: (215) 875-4604
ecramer@bm.net
mdellangelo@bm.net
pmadden@bm.net
msuter@bm.net

*Co-Lead Counsel for the Classes and*
*Attorneys for Individual and Representative Plaintiffs*
*Cung Le, Nathan Quarry, Jon Fitch, Luis Javier Vazquez,*
*Brandon Vera, and Kyle Kingsbury*

[Additional counsel listed on signature page]

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,

Defendant.

Case No.: 2:15-cv-01045-RFB-(BNW)

**PLAINTIFFS' OPPOSITION TO DEFENDANT ZUFFA, LLC'S MOTION TO SEAL EXHIBITS AND PROTECTED MATERIALS AT THE EVIDENTIARY HEARING ON CLASS CERTIFICATION**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................ 1

II. LEGAL STANDARD ........................................................ 1

III. ZUFFA'S POSITION ........................................................ 3

IV. ARGUMENT ........................................................ 3

A. Zuffa's Sealing Proposal Violates the Court's Instructions ........................ 4

B. The Experts' Econometric Analyses and Modeling Are Not Appropriately Sealed ........................................................ 5

C. Zuffa Proposes to Seal Public Information ........................................ 6

D. Zuffa's Time Period Restriction Is Arbitrary and Ignores Commercial Reality .... 8

E. Zuffa Fails to Appropriately Apply Its "Trade Secret" Rule ........................ 9

F. Zuffa's Proposed Sealing Bases Are Incapable of Consistent Application .......... 10

i

Case No.: 2:15-cv-01045 RFB-BNW

PLAINTIFFS' OPPOSITION TO DEFENDANT ZUFFA, LLC'S MOTION TO SEAL EXHIBITS AND PROTECTED MATERIALS AT THE EVIDENTIARY HEARING ON CLASS CERTIFICATION

# TABLE OF AUTHORITIES

**Cases**

*Bartech Int'l, Inc. v. Mobile Simple Sols., Inc.*, 2016 WL 2593920 (D. Nev. May 5, 2016) ....4

*Ctr. For Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092 (9th Cir. 2016) ....2

*Collectors Coffee Inc. v. Blue Sunsets, LLC*, 2017 U.S. Dist. LEXIS 96273 (D. Nev. June 21, 2017) ....3

*Facebook, Inc. v. ConnectU, Inc.*, 2008 WL 11357787 (N.D. Cal. July 2, 2008) ....2

*Hodges v. Apple, Inc*, 2013 WL 6070408....7

*Hunt v. VEP Healthcare*, 2017 WL 3608297 (N.D. Cal. Aug. 22, 2017) ....3

*Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172 (9th Cir. 2006) ....2, 4

*Moussouris v. Microsoft Corp.*, 2018 WL 1159251 (W.D. Wash. Feb. 16, 2018) ....2

*Nixon v. Warner Commc'ns*, 435 U.S. 589 (1978)....2

*Phx. Newspapers v. U.S. Dist. Court*, 156 F.3d 940 (9th Cir. 1998) ....2

*Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d 299 (6th Cir. 2016) ....2, 3

ii

Case No.: 2:15-cv-01045 RFB-BNW

PLAINTIFFS' OPPOSITION TO DEFENDANT ZUFFA, LLC'S MOTION TO SEAL EXHIBITS AND PROTECTED MATERIALS AT THE EVIDENTIARY HEARING ON CLASS CERTIFICATION

# GLOSSARY OF ABBREVIATIONS

For the convenience of the Court and efficiency, Plaintiffs' Opposition uses the following abbreviations:

| **Exhibit Description** | **Abbreviation** | **Madden Decl. Exhibit** |
|---|---|---|
| Expert Report of Hal J. Singer, Ph.D. (August 31, 2017), with Zuffa's Proposed Redactions | SR1 | 2 |
| Rebuttal Expert Report of Hal J. Singer, Ph.D. (January 12, 2018), with Zuffa's Proposed Redactions | SR2 | 3 |
| Supplemental Expert Report of Hal J. Singer, Ph.D. (April 3, 2018), with Zuffa's Proposed Redactions | SR3 | 4 |
| Second Supplemental Reply Report of Hal J. Singer, Ph.D. (May 28, 2018), with Zuffa's Proposed Redactions | SR4 | 5 |
| Expert Report of Professor Robert H. Topel (October 27, 2017), with Zuffa's Proposed Redactions | TR1 | 6 |
| Professor Robert H. Topel's Reply to the Supplemental Expert Report of Hal J. Singer, Ph.D. (May 7, 2018), ECF No. 551-16 | TR4 | 10 |

iii

Case No.: 2:15-cv-01045 RFB-BNW

PLAINTIFFS' OPPOSITION TO DEFENDANT ZUFFA, LLC'S MOTION TO SEAL EXHIBITS AND PROTECTED MATERIALS AT THE EVIDENTIARY HEARING ON CLASS CERTIFICATION

## I. INTRODUCTION

Zuffa has moved to seal exhibits and information at the upcoming evidentiary hearing on class certification ("Hearing"), invoking broad, blanket restrictions over information that cannot properly be sealed. More specifically, Zuffa proposes to redact and restrict testimony concerning financial information and purported "trade secrets" reflecting post-January 1, 2014 information. Zuffa's proposed blanket redactions and confidentiality procedures, if granted, would block the Parties' experts from testifying in open court concerning their models and the bases for the experts' choices in designing them. Such testimony is the purpose of the upcoming Hearing. Zuffa's motion should be denied so that the Parties may present their experts' opinions to the Court unimpeded by Zuffa's efforts to obstruct such testimony through cumbersome, unnecessary, and improper confidentiality procedures. In addition to the general public interest in open access to the Courts, Plaintiffs, Class members, and the public—all of whom have to date been shielded from critical information about this case—have an abiding interest in accessing and evaluating fundamental aspects of a case that pertains to the conduct of the monopoly owners of a major professional sport in the United States. Throughout its briefing on sealing issues, Zuffa has failed to meet its burden on the required document-by-document basis. Zuffa's current motion commits those same failures. Zuffa again relies on vague assertions of potential harm relating to non-specific "trade secrets" and general financial information. Zuffa supports its position by arguing that the material in question has been kept confidential in the past (which is not, in fact, true for much of the supposedly protected material), and making speculative assertions that potential harm could follow disclosure. Such justification is insufficient to meet even the "good cause" standard, much less the applicable "compelling reasons" standard. In fact, Zuffa has failed to provide factual bases on which the Court could make the specific factual findings necessary to seal the materials and prevent witnesses from testifying to them in open court. Troublingly, the Court provided guidance on what material may properly be sealed upon a sufficient showing. But Zuffa ignored the Court's guidance and asserted broad, blanket confidentiality protections over materials that cannot be sealed.

## II. LEGAL STANDARD

Zuffa has not and cannot meet the high burden for sealing broad swathes of material relating to this case. Courts in the Ninth Circuit "[b]egin[] with the assumption that the press and public have a

presumed right of access to court proceedings and documents." *Phx. Newspapers v. U.S. Dist. Court*, 156 F.3d 940, 949 (9th Cir. 1998); *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (party seeking to seal a judicial record must overcome "a strong presumption in favor of access" by meeting the "compelling reasons" standard). A hearing may be closed to the public only when: "(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest." *Id.* Compelling reasons "exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* at 1179 (quoting *Nixon v. Warner Commc'ns*, 435 U.S. 589, 598 (1978)). "In other words, the public's right to access a hearing is overcome only by a finding that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Facebook, Inc. v. ConnectU, Inc.*, 2008 WL 11357787, at *4 (N.D. Cal. July 2, 2008).[1] "Furthermore, the court ordering closure must make specific factual findings, rather than basing its decision on conclusory assertions alone." *Phx*, 156 F.3d at 949.

Even concerning sealing written materials filed with the court, when such materials are submitted in connection with a motion that is "more than tangentially related to the merits of the underlying action," as motions for class certification are, courts apply the "compelling reasons" standard. *See Ctr. For Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1100-01 (9th Cir. 2016). Indeed, as argued in Plaintiffs' briefing on the applicable standard for sealing materials relating to the Hearing (ECF Nos. 631 & 639), which arguments are incorporated herein, district courts in the Ninth Circuit apply the compelling reasons standard to written materials filed in support of parties' positions on class certification. *See, e.g.*, *Moussouris v. Microsoft Corp.*, 2018 WL 1159251, at *4 (W.D. Wash. Feb. 16, 2018) (citing cases). The reasons are clear: "in class actions—where by definition some members of the public are also parties to the case—the standards for denying public access to the record should be applied with particular strictness." *Shane Grp., Inc. v. Blue Cross Blue Shield*, 825

[1] Zuffa previously argued that it would not seek to close the courtroom for the Hearing. *See, e.g.*, ECF No. 645 at 1. However, the material Zuffa proposes to seal would require the Court to close the courtroom to prevent its disclosure. As set forth herein, Zuffa's sealing proposal is so broad, for example, that Plaintiffs' experts could not fairly present their opinions and models to the Court and Plaintiffs could not fairly cross examine Zuffa's economists without disclosing these materials.

F.3d 299, 305 (6th Cir. 2016) (citation omitted). This reasoning applies especially to antitrust cases, where "the public's interest is focused not only on the result, but also on the conduct giving rise to the case. In those cases, secrecy insulates the participants, masking impropriety, obscuring incompetence, and concealing corruption." *Id.* (citation omitted). "[E]ven where a party can show a compelling reason why certain documents or portions thereof should be sealed, the seal itself must be narrowly tailored to serve that reason. The proponent of sealing therefore must analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations." *Id.* at 305-06 (citation omitted); *see also Collectors Coffee Inc. v. Blue Sunsets, LLC*, 2017 U.S. Dist. LEXIS 96273, at *6 n.1 (D. Nev. June 21, 2017) ("A litigant is required to make a particularized showing for each document it seeks to file under seal."). Sealing information in a class action is inappropriate when doing so would "interfere with the right of class members to make an informed decision about whether to object or opt out." *Hunt v. VEP Healthcare*, 2017 WL 3608297, at n.1 (N.D. Cal. Aug. 22, 2017).

## III. ZUFFA'S POSITION

Zuffa proposes to block testimony and seal or redact exhibits introduced at the upcoming Hearing that disclose information in either of two categories: (1) Post-2013 financial material; and (2) Post-2013 trade secret materials "e.g., internal valuations, analyses, projections and strategies."[2] *See* Madden Decl. Ex.1 (Letter from Jonathan M. Shaw to Eric L. Cramer dated May 24, 2019).

## IV. ARGUMENT

Zuffa does not meet its burden to seal. Zuffa's purported factual basis for sealing is sparse and roughly amounts to the mere fact that Zuffa has kept certain material confidential and seeks to continue to do so. That is insufficient. "The Ninth Circuit has rejected efforts to seal documents under the 'compelling reasons' standard based on 'conclusory statements [that] the contents of the documents . . .

[2] Plaintiffs have agreed to seal, redact, or otherwise not disclose in open court a third category: "[S]ensitive private third-party information" such as specific injury diagnoses or personal information including phone numbers and home addresses. Further, Zuffa initially proposed to seal a fourth category, Zuffa's contracts with Fighters and documents quoting such contract language, but after Bellator agreed not to seal its contracts, *see* ECF No. 661-15 (Bellator's June 14, 2019 Letter), Zuffa retracted its position. Nevertheless, Zuffa's position concerning Fighter contracts remains ambiguous: Despite explicitly stating in its May 24 letter that "Zuffa will not move to seal material referring to but not quoting from its contracts with its athletes," Zuffa proposed redactions that would seal such materials. If Zuffa continues to take that position, presumably asserting that these discussions are (somehow) trade secrets, Plaintiffs reserve their right to challenge that untenable position.

are confidential and that, in general,' their disclosure would be harmful to the movant." *Bartech Int'l, Inc. v. Mobile Simple Sols., Inc.*, 2016 WL 2593920, at *1 (D. Nev. May 5, 2016) (quoting *Kamakana*, 447 F.3d at 1182). Zuffa's request should be denied.

### A. Zuffa's Sealing Proposal Violates the Court's Instructions

Zuffa's sealing proposal is contrary to the guidance the Court has provided. First, Zuffa's blanket proposal to seal ***all*** of its financial information from 2014 forward ignores the instructions the Court gave in the December 14, 2018 hearing:

> So let me tell you what I think are appropriate parameters . . . Zuffa's financial information at this point doesn't seem to me warrants protection because at some point that's going to be a part of at least what I'd have to consider, not all of the financial information, but the discussions as it relates to event revenue, percentages of event revenue, comparisons between Zuffa and other promoters, the percentage of the revenues compared to other professional sports. I don't see why any of that information should be sealed.

Tr. at 7:10-20. The Court stated further that "in the context of the discussion of the motions and the testimony of the experts . . . going forward, there would be no sealing of that information. Why would I seal any of that information?" *Id.* at 6:10-13. Rather than narrowly tailoring its sealing proposal per the Court's guidance, Zuffa has proposed the blanket sealing of entire documents and redactions of expert reports based on an arbitrary time period that will serve only to impede the Parties' ability to present their experts' modeling (and underlying bases) in a fair and orderly manner. Moreover, the Court instructed Zuffa to present exhibits purportedly requiring protection:

> [A]s it relates to the sealing, . . . it's hard for me to make determinations about particularly trade secrets and sensitive information without seeing what the exhibit is. So, for example, it seems to me a general category which I think I would probably seal would be anything related to financial projections or financial future strategies. So, you know, if there were anything in these exhibits that suggested expansion strategies for other areas or other countries, . . . or other markets, that to me might be potentially something that I would consider sort of sealing on a general basis.

Feb. 1, 2019 Hearing Tr. at 7:15-25. The Court made clear that it did not want to "go through general arguments without looking at the specific exhibits." *Id.* at 8:4-5.[3] Zuffa now asks the Court to do just what it said it did not want to do, by again making general arguments untethered to the overly broad

[3] *See also id.* at 15:13-19 ("I have to tell you I'm not quite clear about it now, what types of trade secrets or sensitive commercial information is being protected. It's difficult for me to do that given what's been submitted to me without seeing the exhibits, and we'll just go through it exhibit by exhibit. And that may take time, but that seems to me to be the only fair way to do it in this case.").

swathe of information Zuffa seeks to protect. Zuffa has repeatedly ignored its obligation to make a factual showing as to ***each*** document and narrowly tailor redactions.

Nevertheless, as set forth herein, looking at even a small sample of Zuffa's proposed redactions shows its flaws. In light of the page limits for this brief and the overbroad approach Zuffa has taken to sealing, Plaintiffs focus only on examples of the problems with Zuffa's proposal and are willing and ready to discuss the problems with the Court exhibit-by-exhibit. Notably, had Zuffa narrowly tailored its redactions to only the limited set of materials (if any) that arguably could meet the applicable sealing standard, then justifying its redactions in its briefing would have been administratively manageable. Because Zuffa has instead ignored the Court's instructions and the applicable legal standard, Zuffa failed to meet its burden as to ***any*** documents and thus ***all*** of the materials should not be subject to protection.[4]

**B. The Experts' Econometric Analyses and Modeling Are Not Appropriately Sealed**

Zuffa's most problematic proposal is its intention to redact substantial material in the Parties' expert reports. As the Court has recognized, "the testimony of the experts … going forward, there would be no sealing of that information" because such materials are what the Court must consider. Dec. 14, 2018 Hearing Tr. at 6-7. Nevertheless, Zuffa seeks to redact material concerning, *inter alia*:

- Dr. Singer's analyses of Zuffa's pay structure and the fact that Fighter compensation at all levels and ranks moved together. *E.g.*, SR1 ¶¶217-18, 220-25, 229 & Tbl.7.[5]
- Plaintiffs' calculations of aggregate class damages. *See, e.g.*, SR1 ¶¶5, 245, 247-48, 250, 252-56 & Tbls. 9-12; SR2 ¶171.
- Dr. Singer's Relevant Market definitions and discussion of market shares within the Relevant Markets. *See, e.g.*, SR1 ¶¶96, 129, 131, Fig. 1, Tbl.3 & n.351.
- Dr. Singer's Foreclosure Share methodology and analyses and responses to Dr. Topel's critiques of that methodology and analyses. *See, e.g.*, SR1 ¶¶170, 173 & Fig. 3; SR2 ¶¶58, 61-62, 65.
- Discussion of Dr. Singer's regression analyses and results, including discussion and charts concerning Dr. Singer's control variables, summary statistics, and regression output. *See, e.g.*, SR1 ¶¶ 147-48, 157-59, 165, 170-71, 185-87, Tbls.4-6, & n.454.
- Dr. Singer's analyses and charts relating to price increases and reduced output in the Relevant Output Market. *See, e.g.*, SR1 ¶¶147-48, 197, 201-203, 205-07 & Figs. 4A-4C; SR2 ¶¶48, 204-09, Fig.2 & nn.649, 651,656.

---

[4] Plaintiffs stand by their agreements to redact certain materials such as injury diagnoses.

[5] The Court has previously pointed out that Zuffa argues there is no "formula" to its Fighter compensation. Dec. 14, 2019 Hearing Tr. at 6:2-13. Plaintiffs note that what Dr. Singer has found is that fighter pay is based on objective factors, and thus that differences in pay between fighters is similarly based on those factors—implicitly creating a pay structure. That explains why Dr. Topel himself found that fighter pay at all levels and ranks moved together over time. In any event, Zuffa cannot publicly assert it has no such structure and seek to seal the evidence of its existence.

- Dr. Singer's findings that 98.8% of the Class was injured. *See, e.g.*, SR1 ¶231 & Table 8.[6]
- Dr. Singer's analyses concerning the duration of Zuffa's exclusivity rights over Fighters. *See, e.g.*, SR1 ¶¶89-91 & Tbl.1; SR2 ¶¶191-92
- Dr. Topel's analyses that showed Zuffa's Foreclosure Share increased over the relevant time period for Fighters in all ranking tiers. *See, e.g.*, TR1 at Exs. 28-29.
- Dr. Singer's critique of Dr. Topel's compensation levels analysis. *E.g.*, SR3 ¶35; SR4 ¶¶9, 45.
- Discussion of Dr. Topel's analyses concerning the relationship between Fighter compensation and Foreclosure Share and between event revenue and athlete pay. *See, e.g.*, TR1 ¶¶147-48.

In short, Zuffa proposes to seal (1) the bases for Dr. Singer's analyses and choices in how to design his models, (2) the models themselves and how they work, (3) Dr. Singer's findings and results, (4) Zuffa's experts' critiques of Dr. Singer's models, (5) Zuffa's experts' damaging admissions, and (6) Dr. Singer's response to Zuffa's experts' critiques. This Hearing is expected to cover each of these categories of material and, without sealing the courtroom—which Zuffa does not propose to do—it would be practically impossible to cover these matters without disclosure.

Zuffa provides no proper basis for sealing these materials. During the meet and confer, Zuffa offered a speculative and unsupported assertion[7] that revealing the information could allow some undefined person to reverse engineer Dr. Singer's work and derive information that Zuffa purports to be a trade secret—***without access to Dr. Singer's backup material***.[8] Zuffa has made no showing that this is possible, much less a sufficient showing of what specifically could be ascertained that would cause competitive harm. Such sealing would merely impede Plaintiffs' ability to present testimony in a manner conducive to assisting the Court in understanding the Parties' experts' positions.

**C. Zuffa Proposes to Seal Public Information**

Zuffa proposes to redact and/or seal financial information that is already in the public realm. That proposal violates established law and serves only to impair Plaintiffs' ability to present their case. For example, Zuffa proposes to seal financial materials from 2014 forward, irrespective of granularity

[6] Inexplicably, Zuffa does not propose to redact Dr. Singer's further analyses on this topic in his Rebuttal Report. *See, e.g.*, SR2 ¶¶150-52 & Tbls.2-3. As discussed *infra*, Zuffa's failure to articulate bases for redactions that can be consistently applied is another reason to deny Zuffa's motion.

[7] "An unsupported assertion of unfair advantage to competitors without explaining *how* a competitor would use the information to obtain an unfair advantage is insufficient." *Hodges v. Apple, Inc*, 2013 WL 6070408, at *2 (italics added).

[8] Further, Zuffa inexplicably seeks to redact even descriptive information about Dr. Singer's backup. For example, Zuffa proposes to redact Dr. Topel's notation that Dr. Singer's regression data includes 7,154 bouts occurring before Zuffa acquired Strikeforce. TR1 at n.218.

or type of financial material. But broad and substantial financial information concerning Zuffa's operations have been in the public realm for some time. For example, Moody's has issued annual, publicly available reports providing specific information about Zuffa's EBITDA, growth in pay-per-view ("PPV") revenue, and debt. *See, e.g.*, Madden Decl. Ex. 7 (MDYS ZFF 000082, Feb. 9, 2016 Credit Opinion). The press has used these Credit Opinions and previously publicized Deutsche Bank "Confidential Information Memoranda" to estimate Zuffa's finances. *See, e.g.*, John S. Nash, *What investors are being told about UFC revenues*, BloodyElbow.com (Oct. 20, 2015), *available at* https://www.bloodyelbow.com/2015/10/20/9547333/what-deutsche-bank-moodys-and-standard-poors-tell-us-about-the-ufc.[9] Furthermore, in October 2016, MMAJunkie.com reported on a "58-page document" created by WME-IMG and Zuffa for potential investors which contained much of the types of information Zuffa suggests would be harmful if disclosed, including, without limitation: (1) 2015 revenue information; (2) a breakdown of sources of revenue; (3) discussion of the reasons for changes to headliners; (4) PPV sales-including specific sales for specific events featuring specific fighters; (5) discussion of future layoffs and other strategies geared toward "more rigorous corporate discipline" in areas such as "compensation practices;" and (6) expected increases in revenues from Zuffa's UFC video game through EA Sports. *See* Ben Fowlkes & Steven Marrocco, *What investor documents tell us about the UFC's past – and its future*, MMAJunkie.com (Oct. 31, 2016), *available at* https://mmajunkie.com/2016/10/what-investor-documents-tell-us-about-the-ufcs-past-and-its-future. Moreover, Zuffa's parent, Endeavor, recently filed its Form S-1 in connection with its impending Initial Public Offering ("IPO"). In that filing, Endeavor discussed specifics as to Zuffa's debt, value of Zuffa's equity, the purchase price (and allocations of that price) of Zuffa, the value of "Net assets acquired" in connection with the Zuffa purchase, and Zuffa's "consolidated revenue and net loss" for the year ended December 31, 2016. *See* Madden Decl. Ex. 8 (excerpts of Endeavor Form S-1 dated May 23, 2019).[10]

---

[9] *See also* John S. Nash, *What investors are being told about UFC debt*, BloodyElbow.com (Nov. 5, 2015), *available at* https://www.bloodyelbow.com/2015/11/3/9561981/ufc-finances-zuffa-debt-deutsche-bank-moodys-standard-and-poor-investors-bonds; John S. Nash, *What investors are being told about UFC earnings*, BloodyElbow.com (Nov. 19, 2015), *available at* https://www.bloodyelbow.com/2015/11/19/9648588/what-investors-are-being-told-about-ufc-earnings; John S. Nash, *UFC Finances: Moody's reports a big 2015 for Zuffa*, BloodyElbow.com (Feb. 15, 2016), *available at* https://www.bloodyelbow.com/2016/2/15/10985436/moodys-reports-a-big-2015-for-the-ufc.

[10] Additionally, Zuffa proposes myriad redactions of discussions of other public material. *See, e.g.*, SR1

Beyond these entity-wide financials, Zuffa also seeks to redact UFC Fighter compensation information that has long been in the public realm. For example, Zuffa seeks to redact various materials concerning its 2015 decision to [REDACTED] *See, e.g.*, SR1 ¶¶220-22; *see also* Madden Decl. Ex. 9 (ZFL-0895314). But that compensation decision entered the public realm in 2015 and has been discussed since; *i.e.*, it has not been "confidential" since the decision was made.[11] Because these matters are already in the public realm, Zuffa's proposal to seal these materials serve no purpose and merely would impede the Parties' ability to present the experts' opinions to the Court.

**D. Zuffa's Time Period Restriction Is Arbitrary and Ignores Commercial Reality**

Zuffa's proposed time period restriction concerning financial materials and purported "trade secrets" (sealing materials from 2014 forward) is arbitrary and ignores recent significant changes to Zuffa's business. The discovery period in this case ended June 30, 2017. Thus, Zuffa's proposed restriction effectively seeks to seal materials from January 1, 2014 to June 30, 2017 (*i.e.*, Zuffa seeks to seal materials that is at least two years old). Zuffa has made significant changes to its business in recent years. In particular, Zuffa has new deals for its televised content that post-date the discovery period. Specifically, Zuffa executed new deals with ESPN+ concerning PPV and non-PPV televised content in or around March 2019 and May 2018, respectively.[12] Due to these new deals, information concerning Zuffa's prior deals are outdated from a competitive intelligence perspective. Moreover, WME-IMG purchased Zuffa in late 2016 and made changes to the business in the ensuing years that render pre-purchase financial information and "trade secrets" materially less sensitive and less likely (if possible)

---

¶¶54, 87 (redacting references to Scott Coker's public declaration); *id.* at n.351 (redacting information derived from public academic article); *id.* ¶131 (redacting quote of publicly available blog post on BloodyElbow.com); SR2 ¶208 & n.660 (redacting information derived from Forbes.com).

[11] *See, e.g.*, Adam Martin, May 28, 2015 Tweet, 5:45PM, *available at* https://twitter.com/MMAdamMartin/status/604040804806578176 ("I just got confirmation from a manager that the UFC has indeed bumped up the minimum pay for entry fighters to $10,000/$10,000."); Trent Reinsmith, *With Dana White's Claim that the UFC Is Worth $7 Billion, It's Time to Revisit Fighter Pay*, Forbes.com (Aug. 21, 2018), *available at* https://www.forbes.com/sites/trentreinsmith/2018/08/21/with-dana-whites-claim-that-the-ufc-is-worth-7-billion-its-time-to-revisit-fighter-pay/#2239120d44c0.

[12] *See, e.g.*, Marc Raimondi, *UFC's new exclusive pay-per-view deal with ESPN+, explained*, MMAFighting.com (Mar. 19, 2019), *available at* https://www.mmafighting.com/2019/3/19/18272292/ufcs-new-exclusive-pay-per-view-deal-with-espn-explained; A.J. Perez, *ESPN wrestles UFC television-rights deal from Fox Sports*, USA Today Sports (May 23, 2018), *available at* https://www.usatoday.com/story/sports/ufc/2018/05/23/espn-ufc-television-rights-deal/635801002/.

to cause any competitive harm if disclosed. Zuffa's motion ignores these changes. Collectively, these changes make Zuffa's proposed time period restriction inappropriate. Zuffa's discovery materials in this case are not sufficiently current to warrant protection, particularly when weighed against the public's (and Class's) strong presumption of access and the need to effectively present arguments to the Court free of restrictions and impediments created by confidentiality procedures.

**E. Zuffa Fails to Appropriately Apply Its "Trade Secret" Rule**

Zuffa proposes to seal "trade secret" material from 2014 forward, but Zuffa applies this rule too broadly without an acceptable definition of "trade secret."[13] For example, Zuffa redacts references to a number of Zuffa-produced documents describing practices of other Promoters; these ***other Promoters'*** practices cannot be ***Zuffa's*** trade secrets. *See, e.g.*, SR1 at nn.289-90 (discussing (1) Titan FC's and Cage Fury FC's contract clauses that permit Fighters to leave Titan for UFC, (2) Jungle Fight permitted Fighters to leave for UFC, and (3) Legacy FC loses Fighters to the UFC). Zuffa further proposes to redact myriad generalized statements concerning business practices that do not constitute trade secrets (and indeed many are obvious to outside observers). For example, Zuffa proposes to redact text messages from former UFC-matchmaker Joe Silva stating that he has more Fighters needing fights than he has event slots in which to place them in 2015. *See* SR1 n.479. In yet another example of non-trade secret designations, Zuffa proposes to redact its ***arguments*** concerning purported procompetitive justifications and assertions of "competing on the merits." For example, Zuffa proposes to redact material in Dr. Topel's first report, in which he asserts (incorrectly) that: (1) Zuffa argues its success is the result of producing a superior product and attracting the best talent; (2) Zuffa became progressively better than other promoters at promoting fights and developing athletes' skills;[14] and (3) economic theory would predict that in a perfectly competitive market, Fighter compensation would remain constant, Zuffa's share of MMA athletes would rise, and Zuffa's revenue per event would increase. TR1

[13] Although Zuffa did not specify for every document which redactions are based on a purported "trade secret," the other bases for Zuffa's redactions are sufficiently clear to infer that any redactions not covered by Zuffa's other bases must be redacted as a purported "trade secret." Applying Zuffa's trade secret restriction in this way demonstrates that Zuffa is: (1) redacting material that does not qualify as a trade secret; and/or (2) applying an undisclosed (and therefore improper) redaction basis.

[14] Dr. Topel cites no ***evidence*** nor performs any analysis of particular facts that could constitute "trade secrets" when he makes this bald, conclusory assertion. Thus, there can be no reasonable basis for asserting that this paragraph contains trade secrets and should be redacted.

9

Case No.: 2:15-cv-01045 RFB-BNW

PLAINTIFFS' OPPOSITION TO DEFENDANT ZUFFA, LLC'S MOTION TO SEAL EXHIBITS AND PROTECTED MATERIALS AT THE EVIDENTIARY HEARING ON CLASS CERTIFICATION

¶138. None of this material is a "trade secret" that can be protected under Ninth Circuit law, nor has Zuffa even attempted to meet its burden of showing how each of these materials (or the myriad of other purported "trade secrets" Zuffa seeks to redact) could cause competitive harm if disclosed.

**F. Zuffa's Proposed Sealing Bases Are Incapable of Consistent Application**

Zuffa fails to consistently apply its proposed bases for sealing, revealing that they are impracticable and should be rejected. For Zuffa's requested confidentiality proposal to be granted—which it should not be—at a minimum, Zuffa would need to articulate a workable definition of what should be sealed so that Plaintiffs and their experts are aware of what can and cannot be said or otherwise presented in open court. Most concerning is Zuffa's failure to define "trade secret" in a workable manner. In its May 24, 2019 letter, Zuffa purports to comply with the Court's statements of what might generally be sealed as a trade secret, using examples "internal valuations, analyses, projections and strategies." Madden Decl. Ex.1. But Zuffa, in fact, redacts far more such that "trade secret" seems to simply mean anything Zuffa purports has not been publicly revealed in the last five years and which Zuffa does not want the public to see (without regard to whether the information has future strategic implications). As a result, Zuffa's redaction proposals lack consistency. For example, in Dr. Topel's last authorized report, he asserts that Dr. Singer's database was "missing data" which caused Dr. Singer's analyses to produce unreliable results. *E.g.*, TR4 ¶¶22-23. Zuffa redacts Dr. Topel's discussion of his own analysis. Dr. Singer then responds, showing that Dr. Topel's analysis was driven by an elementary data error, which if corrected, restores Dr. Singer's results. *E.g.*, SR4 ¶¶27-28. Zuffa does not redact Dr. Singer's discussion. Zuffa provides no justification for why Dr. Topel's reports' mistakes are subject to redaction but Dr. Singer's correcting those mistakes are not, nor how Zuffa's confidentiality proposal can be consistently interpreted to apply in this way.

Without a coherent rule that can be applied to determine which material should be sealed and which should not, the Parties cannot adequately prepare to present testimony, much less censor testimony based on redactions on the fly. Because Zuffa has not provided a clear and usable definition of "trade secret," their sealing proposal should be denied. Moreover, as set forth throughout this brief, none of this information is appropriately sealed in any event because all of it is part of what the Court must consider in deciding Plaintiffs' Motion for Class Certification.

Dated: June 28, 2019

Respectfully Submitted,

By: /s/ Eric L. Cramer
Eric L. Cramer

Eric L. Cramer (*Pro Hac Vice*)
Michael Dell'Angelo (*Pro Hac Vice*)
Patrick F. Madden (*Pro Hac Vice*)
Mark R. Suter (*Pro Hac Vice*)
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Phone: (215) 875-3000/Fax: (215) 875-4604
ecramer@bm.net
mdellangelo@bm.net
pmadden@bm.net
msuter@bm.net

Joseph R. Saveri (*Pro Hac Vice*)
Joshua P. Davis (*Pro Hac Vice*)
Jiamin Chen (*Pro Hac Vice*)
Kevin E. Rayhill (*Pro Hac Vice*)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Phone: (415) 500-6800/Fax: (415) 395-9940
jsaveri@saverilawfirm.com
jdavis@saverilawfirm.com
jchen@saverilawfirm.com
krayhill@saverilawfirm.com

Benjamin D. Brown (*Pro Hac Vice*)
Richard A. Koffman (*Pro Hac Vice*)
Daniel H. Silverman (*Pro Hac Vice*)
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., N.W., Suite 500
Washington, DC 20005
Phone: (202) 408-4600/Fax: (202) 408 4699
bbrown@cohenmilstein.com
rkoffman@cohenmilstein.com
dsilverman@cohenmilstein.com

**Co-Lead Counsel for the Classes**

11

Case No.: 2:15-cv-01045 RFB-BNW

PLAINTIFFS' OPPOSITION TO DEFENDANT ZUFFA, LLC'S MOTION TO SEAL EXHIBITS AND PROTECTED MATERIALS AT THE EVIDENTIARY HEARING ON CLASS CERTIFICATION

**Liaison Counsel for the Classes**

Don Springmeyer (Nevada Bar No. 1021)
Bradley S. Schrager (Nevada Bar No. 10217)
WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP
3556 E. Russell Road, Second Floor
Las Vegas, Nevada 89120
Phone: (702) 341-5200/Fax (702) 341-5300
dspringmeyer@wrslawyers.com
bschrager@wrslawyers.com

**Additional Counsel for the Classes**:

Robert C. Maysey (*Pro Hac Vice*)
Jerome K. Elwell (*Pro Hac Vice*)
WARNER ANGLE HALLAM JACKSON & FORMANEK PLC
2555 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Phone: (602) 264-7101/Fax: (602) 234-0419
rmaysey@warnerangle.com
jelwell@warnerangle.com

William G. Caldes (*Pro Hac Vice*)
SPECTOR ROSEMAN & KODROFF, P.C.
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Phone: (215) 496-0300/Fax: (215) 496-6611
bcaldes@srkattorneys.com

John D. Radice (*Pro Hac Vice*)
RADICE LAW FIRM, P.C.
34 Sunset Blvd.
Long Beach, NJ 08008
Phone: (646) 245-8502/Fax: (609) 358-0745
jradice@radicelawfirm.com

Frederick S. Schwartz (*Pro Hac Vice*)
LAW OFFICE OF FREDERICK S. SCHWARTZ
15303 Ventura Boulevard, #1040
Sherman Oaks, CA 91403
Phone: (818) 986-2407/Fax: (818) 995-4124
fred@fredschwartzlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of June 2019 a true and correct copy of PLAINTIFFS' OPPOSITION TO DEFENDANT ZUFFA, LLC'S MOTION TO SEAL EXHIBITS AND PROTECTED MATERIALS AT THE EVIDENTIARY HEARING ON CLASS CERTIFICATION was served via the District of Nevada's ECF system to all counsel of record who have enrolled in the ECF system.

By:

*/s/ Eric L. Cramer*