DAVID MARROSO (Cal. S.B. #211655)
 dmarroso@omm.com
(admitted *pro hac vice*)
BROOKE D. JENKINS (Cal. S.B. #307514)
 brookejenkins@omm.com
(admitted *pro hac vice*)
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
8th Floor
Los Angeles, California  90067-6035
Telephone:     +1 310 553 6700
Facsimile:      +1 310 246 6779

ERIC D. HONE (NV Bar No. 8499)
 eric@h1lawgroup.com
H1 Law Group
701 N Green Valley Parkway, Suite 200
Henderson, Nevada 89074
Telephone:     702-608-3747
Facsimile:      702-608-3759

Attorneys for Non-Party
Top Rank, Inc.

```
_____FILED          _____RECEIVED
_____ENTERED        _____SERVED ON
          COUNSEL/PARTIES OF RECORDS

          AUG 2, 2019

     CLERK US DISTRICT COURT
        DISTRICT OF NEVADA
BY:_____DEPUTY
```

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In Re Subpoena Of<br><br>Top Rank, Inc.,<br>---<br>Cung Le, Nathan Quarry, and Jon Fitch, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>       v.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>                    Defendant. | Case No. 2:15-cv-01045-RFB-BNW<br><br>**TOP RANK, INC.'S REPLY ISO OBJECTIONS TO DISCLOSURE OF CONFIDENTIAL MATERIALS** |

I. **<u>INTRODUCTION</u>**

Non-party Top Rank, Inc. produced highly sensitive economic information in the above captioned matter solely on the explicit condition that the information would be usable by the parties, shown to the Court, and otherwise kept confidential.  ECF No. 661-7, ¶ 5.

Nine weeks ago, Plaintiffs notified Top Rank that, despite this condition and in the face of Top Rank's designation of certain materials as Confidential-Attorneys' Eyes Only, Plaintiffs intended to freely disclose at an upcoming public hearing unidentified information that Top Rank had produced as a non-party.  Top Rank immediately objected, but told Plaintiffs that, if Plaintiffs would identify the specific materials at issue, Top Rank would review them and, in good faith, notify Plaintiffs of any materials to which Top Rank no longer objected.

Plaintiffs initially declined to identify the specific materials but subsequently provided Top Rank with a list of the subject materials.  Top Rank notified Plaintiffs that they could disclose publicly all of the designated information, save for one paragraph of Plaintiffs' expert report, in which the expert recounts on an annual basis the percentage of total revenue Top Rank pays to its fighters.  ECF Nos. 661-6 at 3-4; 661-7, ¶ 9.  Suffice it to say, that percentage—especially on a year-by-year basis—is proprietary, highly confidential, and should not be disclosed publicly in a lawsuit to which Top Rank is not a party and in which Top Rank has no interest.  Were Plaintiffs to disclose how much of Top Rank's revenues the promoter pays its fighters each year, other boxing promoters and Top Rank's competitors would have an unfair window into the chief bargaining issue between promoters and fighters.   With the benefit of that special sauce information, competitors could undercut Top Rank.  At the same time, Top Rank has no visibility into its competitors' financial information.  In other words, by complying with discovery in this case *as a non-party*, Top Rank's competitive standing in the boxing promotion business would be jeopardized.

Plaintiffs identify no law—and no logic—that compels such a perverse result.  No case says that percentage of revenue figures paid to fighters in the boxing promotion business is "generic" and not protectable.  No case says that, in all circumstances, data only a few years old is "too stale" to deserve protection.  And, of course, no authority says that courts are foreclosed

from taking reasonable steps to protect non-parties' privacy interests.  For these reasons, Top Rank deserves an order preventing Plaintiffs from disclosing publicly paragraph 85 of their expert report (or in any way disclosing publicly the financial data referenced in paragraph 85).

## II.   ARGUMENT

"Confidential business information has long been recognized as property and warranting protection from public consumption." *Cohan v. Provident Life & Accident Ins. Co.*, No. 213CV00975LDGCWH, 2014 WL 12596287, at *2 (D. Nev. Nov. 7, 2014) (internal quotations and citations omitted).  The one piece of information here—the percentage of revenues Top Rank paid its fighters in 2013, 2014, 2015, and 2016—is obviously confidential business information. Giving Top Rank's competitors that figure for four years, year-over-year, and its competitors being able to compare it to the types of events that occurred in those years (as well as the fighters who participated in those events), undoubtedly would cause harm to Top Rank's business.

Plaintiffs' cases are inapposite.  In *Sophia & Chloe, Inc.* and *Hodges*, the parties failed to explain how disclosure of the disputed information would put the parties seeking protection at a competitive advantage. *Sophia & Chloe, Inc. v. Brighton Collectibles, Ltd. Liab. Co.*, No. 12cv2472 AJB (KSC), 2014 U.S. Dist. LEXIS 48629, at *4 (S.D. Cal. Apr. 8, 2014); *Hodges v. Apple Inc.*, No. 13-cv-01128-WHO (WHO), 2013 U.S. Dist. LEXIS 164674, at *4 (N.D. Cal. Nov. 18, 2013).  In *Open Text S.A.*, the "aggregate financial data" at issue is not described sufficiently to allow a comparison between the data at issue there and the confidential information in dispute here.  *See Open Text S.A. v. Box, Inc.*, No. 13-cv-04910-JD, 2014 U.S. Dist. LEXIS 177484, at *28 (N.D. Cal. Dec. 26, 2014).  The remainder of the cases clearly do not involve the type of financial information at issue here; they involve either generic financial information, like revenues or sales, or, in one case, banking records and reports by banks to government authorities.  *See Strauss v. Credit Lyonnais, S.A.*, No. 06-CV-702 (DLI)(MDG), 2011 U.S. Dist. LEXIS 122694, at *19 (E.D.N.Y. Oct. 6, 2011) (involving banking records and reports by banks to government authorities); *Spam Arrest, LLC v. Replacements, Ltd.*, No. C12-481RAJ, 2013 U.S. Dist. LEXIS 118224, at *7 (W.D. Wash. Aug. 20, 2013) (involving revenue, customer information, expenditures, and profit and loss information).

None of the cases cited by Plaintiffs thus supports the proposition that sealing is not warranted here, under these circumstances. Top Rank does not seek the sealing of generic financial information, like total revenues or sales from products. Rather, Top Rank seeks to protect the percentage of its revenue paid to its fighters. Top Rank explained why this particular information poses a competitive threat in its objections:

> Top Rank's General Counsel declared in 2017, disclosure of the specific amount of revenue Top Rank remits to its fighters "would hurt Top Rank's ability to compete in the marketplace" because competitors could "mimic Top Rank's business strategy or design a strategy specifically tailored to interfere with and undermine Top Rank's strategy" and because "Top Rank would be at an unfair disadvantage in negotiations with boxers for new promotional contracts or extensions of existing promotional contracts because boxers would be equipped with Top Rank's financial information . . . and could use this information to gain leverage in their negotiations to Top Rank's disadvantage.

See ECF Nos. 661-6 at 2; 481-2, ¶ 9.

Plaintiffs did not object to this information, claim it is inaccurate, or refute it in any way, except their self-serving conjecture that competitors and fighters could not use the information to their advantage. See ECF No. 677 at 7.

That aside, public disclosure of Top Rank's fighter's share for the years 2013 to 2016 could actually influence decisions in the market. Assuming that Boxer A is under contract to Top Rank and this information becomes public, a boxing promoter competitor could seek to poach the fighter—something that, unfortunately happens frequently in the boxing space—with phony promises to pay more than the percentage Top Rank paid its fighters between 2013-2016. To prevent this foreseeable harm, Top Rank's confidential information is deserving of protection from the public. See *J.M. Woodworth Risk Retention Grp., Inc. v. Uni-Ter Underwriting Mgmt. Corp.*, No. 213CV00911JADPAL, 2014 WL 12769806, at *1 (D. Nev. May 20, 2014) (finding plaintiff established compelling reasons to keep information under seal where "[a]llowing the[] documents in the public record would cause interfere with [p]laintiff's ability to negotiate future deals" and "place [p]laintiff in a position of strategic disadvantage if it were used by [p]laintiff's competitors.") (internal quotations omitted).

Mitigating this business harm to Top Rank outweighs public policies favoring disclosure

of court documents. *See* ECF No. 661-6 at 5; *Cohan*, No. 213CV00975LDGCWH, 2014 WL 12596287, at *3 (D. Nev. Nov. 7, 2014) ("[p]ublic disclosure, as important as it is, [] yields when there is a need to insure that a litigant's records are not used as sources of business information that might harm a litigant's competitive standing."). Plaintiffs do not cite any Ninth circuit cases to support their request that the Court apply a different standard here. *See* ECF No. 677 at 8.

Additionally, contrary to Plaintiffs' assertion otherwise, the information Top Rank seeks to protect is not "too old to contain any competitive value," *see id.* at 8-9. Whether information is "too old" to cause harm if disclosed publicly depends on the circumstances. In 2017, Top Rank's General Counsel explained that it maintains this information as confidential and that it can be used by competitors or boxers in future negotiations with boxers. *See* ECF No. 481-2, ¶¶ 5, 9. Information from 2013 to 2016 is not stale or so detached from the present day that otherwise plainly confidential information suddenly becomes public domain.

Lastly, Plaintiffs provide no justification as to why Top Rank's requested relief is not suitable for the circumstances—in the event the Court determines that the aforementioned information should be discussed at the upcoming evidentiary hearings: 1) close the Court to the public during the offering of this information; or 2) allow Plaintiffs' expert to testify only as to the fact of the expert having this information and provide this information to the Court as a sealed courtroom exhibit. Either alternative would cause no prejudice to Plaintiffs and would avoid causing harm to non-party Top Rank's business. [1]

**III.   CONCLUSION**

For all of the above reasons, Top Rank respectfully requests that, if the Court determines the aforementioned information needs to be discussed at the upcoming evidentiary hearing, it either: 1) close the Court to the public during the offering of this information; or 2) allow Plaintiffs' expert to testify only as to the fact of the expert having this information and provide this information to the Court as a sealed courtroom exhibit.

---

[1] Plaintiffs further state: "[p]laintiffs reserve their right to use any and all of the information contained in [TR-0001, David Lopez's Declaration] for impeachment or rebuttal purposes at the evidentiary hearing if necessary[.]" ECF No. 677 at 8, n. 5. This makes no sense since Mr. Lopez is not testifying during the upcoming evidentiary hearings.

- 6 -

Dated: August 2, 2019

O'MELVENY & MYERS LLP

By: /s/ David Marroso
David Marroso

Attorneys for Non-Party Top Rank, Inc.