WILLIAM A. ISAACSON (*Pro hac vice*)
(wisaacson@bsfllp.com)
STACEY K. GRIGSBY (*Pro hac vice*)
(sgrigsby@bsfllp.com)
NICHOLAS A. WIDNELL (*Pro hac vice*)
(nwidnell@bsfllp.com)
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW, Washington, DC 20005
Telephone: (202) 237-2727; Fax: (202) 237-6131

RICHARD J. POCKER #3568
(rpocker@bsfllp.com)
BOIES SCHILLER FLEXNER LLP
300 South Fourth Street, Suite 800, Las Vegas, NV 89101
Telephone: (702) 382-7300; Fax: (702) 382-2755

DONALD J. CAMPBELL #1216
(djc@campbellandwilliams.com)
J. COLBY WILLIAMS #5549
(jcw@campbellandwilliams.com)
CAMPBELL & WILLIAMS
700 South 7th Street, Las Vegas, NV 89101
Telephone: (702) 382-5222; Fax: (702) 382-0540

*Attorneys for Defendant* Zuffa, LLC, d/b/a
Ultimate Fighting Championship and UFC

*Additional counsel on signature page*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>Defendant. | Case No.: 2:15-cv-01045-RFB-BNW<br><br>**PLAINTIFFS' AND ZUFFA'S STATEMENTS RE: ISSUES IN DISPUTE FOR EVIDENTIARY HEARING RE: CLASS CERTIFICATION** |

STATEMENT RE: ISSUES IN DISPUTE FOR EVIDENTIARY HEARING RE:
CLASS CERTIFICATION

Pursuant to the Court's request at the December 14, 2018 hearing[1], Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury ("Plaintiffs") and Defendant Zuffa, LLC ("Zuffa") submit this statement identifying the issues each party believes are in dispute for the evidentiary hearing.  The parties previously submitted separate briefs on the legal standard that applies to the hearing, including whether Plaintiffs' proposed plausibility or ultimate admissibility standard comports with Supreme Court and Ninth Circuit law.  *See* ECF Nos. 633, 634, 640, 644.

**PLAINTIFFS' STATEMENT OF DISPUTED ISSUES RELEVANT TO THE HEARING ON PLAINTIFFS' CLASS CERTIFICATION MOTION**

**BOUT CLASS**

1. **Predominance: Common Impact.** Whether Plaintiffs have presented a plausible, or in the alternative in a form capable of ultimately being admissible at trial, method for attempting to prove impact to the Bout Class with common evidence, including the following sub-issues:

   a. Whether "Wage Share"—*i.e.*, compensation paid to Fighters expressed as a percentage of event revenues (as opposed to wage level)—is a plausible or ultimately admissible metric for analyzing impact to Class members in this case. Plaintiffs' Motion for Class Certification ("Class Mot."), ECF. No. 518, at 30-33; Reply in Support of Plaintiffs' Motion for Class Certification ("Class Reply"), ECF No. 554, at 1-2, 7-9; Plaintiffs' Opposition to Singer and Zimbalist *Daubert* Motions ("Daubert Opp."), ECF No. 534, at 1-3, 10-25.

   b. Whether Dr. Singer's "Impact Regression" model constitutes a plausible (or ultimately admissible) method that uses common evidence in attempting to show that Class members were harmed by the conduct Plaintiffs are challenging as anticompetitive in this case (the

---

[1] "So it would be helpful for me for you all to come up with at that hearing an agreed-upon sort of stipulated set of facts as relates to the experts' opinion if you can, but also an agreed-upon set of disputed issues.  So not quite a joint pretrial order, but again I find in this circumstance it's more helpful for us all to understand what it is that's disputed specifically so that we don't have any concerns or issues about people having  been misled about what the other side was going to be asking about."  Dec. 15, 2018 Hr'g Tr. at 55:13-21, ECF No. 627.

"Challenged Conduct"). Class Mot. at 3, 14-15, 19, 23-26; Class Reply at 2, 6-12; Daubert Opp. at 1-2, 7-25, 29-31.

    c.   Whether Plaintiffs' common evidence provides a plausible (or ultimately admissible) basis for attempting to show common impact, including:

        i.   Whether Dr. Singer's Impact Regression model is a plausible (or ultimately admissible) method that uses common evidence in attempting to show that Zuffa's Challenged Conduct generally suppressed Fighter compensation. Class Mot. at 3, 14-15, 19, 23-26; Class Reply at 2, 6-12; Daubert Opp. at 1-2, 7-25; 29-31.

        ii.   Whether Dr. Singer's Impact Regression model is a plausible (or ultimately admissible) method that uses common evidence in attempting to show that the Challenged Conduct caused impact to nearly 99% of members of the Bout Class. Class Mot. at 3, 14-15, 19, 23-26; Class Reply at 2, 6-12; Daubert Opp. at 1-2, 7-25; 29-31.

        iii.   Whether common evidence in the record can plausibly show that Fighter pay at all ranking levels moved together over time, indicating that there was an implicit pay structure. Class Mot. at 3-5, 14-15, 19, 25-29; Class Reply at 2,6-7, 12-15; Daubert Opp. at 8-9.

        iv.   Whether common evidence in the record—including evidence that Zuffa allegedly sought to impose some measure of internal equity in compensating its Fighters—can plausibly show that there was an implicit pay structure causing the pay of Fighters at all ranking levels to move together over time, thereby implying that the Challenged Conduct would and did have a common effect across the Bout Class. Class Mot. at 3-5, 14-15, 19, 25-29; Class Reply at 2, 6-7, 12-15; Daubert Opp. at 8-9.

2.  **Aggregate Damages:** Whether Plaintiffs' common evidence and expert modelling provide a plausible, or in the alternative ultimately admissible, method to attempt to prove aggregate damages to the Bout Class as a whole.

a.   Whether "Wage Share"—*i.e.*, compensation paid to Fighters expressed as a percentage of event revenues (as opposed to wage level)—is a plausible (or ultimately admissible) metric for analyzing damages to Class members in this case. Class Mot. at 15-16, 24-25, 29-33; Class Reply at 1-2, 7-9; Daubert Opp. at 1-3, 7-25.

b.   Whether Dr. Singer's Impact Regression model is a plausible (or ultimately admissible) method that uses common evidence in attempting to compute aggregate damages to the Bout Class. Class Mot. at 3, 14-16, 24-26, 29-30; Class Reply at 1-2; Daubert Opp. at 1-3, 7-25; 29-31.

c.   Whether Dr. Singer's yardstick models that use the shares of event revenues paid as compensation to Fighters at Bellator and Strikeforce are plausible (or ultimately admissible) methods for proving aggregate damages to the Bout Class. Class Mot. at 14-16, 25, 29-30; Class Reply at 21; Daubert Opp. at 34-35

d.   Whether Prof. Zimbalist's yardstick model that uses the shares of revenues paid to athletes in other major U.S. professional sports is also a plausible (or ultimately admissible) method for proving aggregate damages to the Bout Class. Class Mot. at 12-16, 25, 29-31; Class Reply at 21; Daubert Opp. at 50-63.

e.   Whether Plaintiffs' experts' aggregate damages models offer plausible (or ultimately admissible) methods for estimating damages from the Challenged Conduct and not from any alleged procompetitive conduct. Class Mot. at 13-14, 24, 29-30; Class Reply at 21-24; Daubert Opp. at 31-34, 59-61.

**IDENTITY CLASS**

1.   **Predominance: Common Impact.** Whether Plaintiffs have presented a plausible, or in the alternative in a form capable of being admissible at trial, method for attempting to prove impact to the Identity Class with common evidence, including the following sub-issues:

A.   Whether Dr. Singer's Impact Regression model constitutes a plausible (or ultimately admissible) method that uses common evidence in attempting to show that Class members

were harmed by the Challenged Conduct. Class Mot. at 3, 14-15, 19, 23-26, 29; Class Reply at 2, 6-12, 24-25; Daubert Opp. at 1-2, 7-25; 29-31.

**B.**   Whether Dr. Singer's methods and analyses constitute plausible, or in the alternative ultimately admissible, methods that use common evidence in attempting to show impact to Class members using common evidence:

i.   Whether Dr. Singer's Impact Regression model is a plausible (or ultimately admissible) method that uses common evidence in attempting to show Zuffa's Challenged Conduct generally suppressed Fighter compensation for identity rights. Class Mot. at 3, 14-15, 19, 23-26, 29; Class Reply at 2, 6-12, 24-25; Daubert Opp. at 1-2, 7-25; 29-31.

ii.   Whether Dr. Singer's Impact Regression model is a plausible (or ultimately admissible) method that uses common evidence in attempting to show that Zuffa's Challenged Conduct caused impact to over 99% of members of the Class. Class Mot. at 3, 14-15, 19, 23-26, 29; Class Reply at 2, 6-12, 24-25; Daubert Opp. at 1-2, 7-25; 29-31.

**2.**   **Aggregate Damages:** Whether Plaintiffs' common evidence and expert modelling provides a plausible, or in the alternative ultimately admissible, method to attempt to prove damages to the Identity Class as a whole.

**A.**   Whether Dr. Singer's Impact Regression model is a plausible (or ultimately admissible) method that uses common evidence in attempting to compute aggregate damages to the Identity Class. Class Mot. at 3, 14-16, 24-26, 29-30; Class Reply at 1-2, 24-25; Daubert Opp. at 1-2, 7-25; 29-31, 35.

**B.**   Whether Dr. Singer's calculation of a nominal payment to Fighters for their identity rights when signing a Fighter contract with Zuffa is a plausible (or ultimately admissible) method that uses common evidence in attempting to compute aggregate damages to the Identity Class. Class Mot. at 29-30; Class Reply at 24-25; Daubert Opp. at 35.

JOINT STATEMENT RE: ISSUES IN DISPUTE AT EVIDENTIARY HEARING

**C.** Whether Dr. Singer's aggregate damages models offer plausible (or ultimately admissible) methods for estimating damages from the Challenged Conduct and not from any alleged procompetitive conduct. Class Mot. at 13-14, 24, 29-30; Class Reply at 21-24; Daubert Opp. at 31-35.

JOINT STATEMENT RE: ISSUES IN DISPUTE AT EVIDENTIARY HEARING

**ISSUES PLAINTIFFS CLAIM ARE NOT PLAUSIBLY DISPUTED**

  Plaintiffs believe that there are a number of disputed issues common to the Class as a whole about which, while the parties may dispute them on the merits, there cannot be any plausible dispute that they are common issues.  Those issues are as follows:

1. **Predominance: Common Proof of Violation.**

  A. **The Existence of Market Power Is a Common Issue.**

   i. Plaintiffs believe that Zuffa cannot and does not plausibly dispute that whether Plaintiffs can attempt to prove Zuffa's market power with direct evidence—*e.g.,* Zuffa's ability to profitably suppress wages paid to Fighters or increase prices and reduce output—is an issue common to the classes as a whole, and neither its proof, relevance, nor disproof will give rise to individualized issues. Class Mot. at 2-3, 6-7, 16-21; Class Reply at 2, 4-5.

   ii. Plaintiffs believe that Zuffa cannot and does not plausibly dispute that whether Plaintiffs can attempt to prove Zuffa's market power with indirect evidence—*e.g.*, market definition, Zuffa's market share, and the existence of barriers to entry—is an issue common to the classes as a whole, and neither its proof, relevance, nor disproof will give rise to individualized issues. Class Mot. at 2-3, 6-7, 16-21; Class Reply at 2, 4-6, 10.

   iii. Plaintiffs believe that Zuffa cannot and does not plausibly dispute that whether Plaintiffs define appropriate Relevant Markets is an issue common to the classes as a whole, and neither its proof, relevance, nor disproof will give rise to individualized issues. Class Mot. at 2-3, 6-7, 16-21; Class Reply at 2, 4-6.

   iv. Plaintiffs believe that Zuffa cannot and does not plausibly dispute that how to calculate Zuffa's market share—*e.g.*, appropriate weighting mechanisms—is an issue common to the classes as a whole, and neither its proof, relevance, nor disproof will give rise to individualized issues. Class Mot. at 2-3, 6-7, 16-21; Class Reply at 2, 4-5.

v.   Plaintiffs believe that Zuffa cannot and does not plausibly dispute that whether barriers to entry in the Relevant Markets exist is an issue common to the classes as a whole, and neither their proof, relevance, nor disproof will give rise to individualized issues. Class Mot. at 2-3, 6-7, 16-21; Class Reply at 2, 4-5.

**B.   <u>Willful Acquisition/Maintenance of Market Power</u>:** Plaintiffs believe that Zuffa cannot and does not plausibly dispute that whether the Challenged Conduct is anticompetitive is a common issue. The parties do not dispute that whether Zuffa's use of its exclusive Fighter contracts is anticompetitive is an issue common to the classes as a whole and neither its proof, relevance, nor disproof will give rise to individualized issues. Class Mot. at 2-3, 8-11, 16-21; Class Reply at 2, 4-6.

**C.   <u>Substantial Foreclosure</u>.**

i.   **Existence of Foreclosure Is a Common Issue.** Plaintiffs believe that Zuffa cannot and does not plausibly dispute that whether Zuffa's exclusive promotional and ancillary rights agreements ("Fighter Contracts") are capable of foreclosing actual or potential rivals is an issue common to the classes as a whole, and neither its proof, relevance, nor disproof will give rise to individualized issues. Class Mot. at 2-3, 11, 16-21; Class Reply at 2, 4-6, 9-11.

ii.   **The Validity of Plaintiffs' Foreclosure Analyses Is a Common Issue**. Plaintiffs believe that Zuffa cannot and does not plausibly dispute that whether Plaintiffs can prove that Zuffa used its Fighter Contracts to foreclose the Relevant Markets is an issue common to the classes as a whole and neither its proof, relevance, nor disproof will give rise to individualized issues. Class Mot. at 2-3, 11, 16-21; Class Reply at 2, 4-6, 9-11.

iii.   **The Appropriateness of Dr. Singer's Foreclosure Share Metric Is a Common Issue**. Plaintiffs believe that Zuffa cannot and does not plausibly dispute that whether Dr. Singer's Foreclosure Share metric is appropriate is an issue common to the classes

7

as a whole, and neither its proof, relevance, nor disproof will give rise to individualized issues. Class Mot. at 2-3, 11, 16-21; Class Reply at 2, 4-6, 9-11.

iv. **How to Weight Zuffa's Foreclosure Share Is a Common Issue.** Plaintiffs believe that Zuffa cannot and does not plausibly dispute that how to weight Foreclosure Share or otherwise account for differences in the quality of Fighters at MMA promotions is an issue common to the classes as a whole, and neither its proof, relevance, nor disproof will give rise to individualized issues. Class Mot. at 2-3, 11, 16-21; Class Reply at 2, 4-6, 9-11.

D. **Anticompetitive Effects.**

i. **Whether Dr. Singer's Impact Regression Proves Anticompetitive Effects Is a Common Issue.** Plaintiffs believe that Zuffa cannot and does not plausibly dispute that whether Dr. Singer's regression—which the parties' experts agree shows that as Zuffa's Foreclosure Share increased, Zuffa's Wage Share decreased—is capable of plausibly showing that Zuffa suppressed Fighter compensation is an issue common to the classes as a whole and neither its proof, relevance, nor disproof will give rise to individualized issues. Class Mot. at 2-3, 12-26, 28; Class Reply at 2, 4-7, 9-12.

ii. **Whether Zuffa's Challenged Conduct Reduced the Quality of MMA Events Is a Common Issue**. To the extent this issue is relevant at all in a monopsony case, Plaintiffs believe that Zuffa cannot and does not plausibly dispute that whether Plaintiffs can plausibly prove that Zuffa's Challenged Conduct reduced the quality of MMA events is an issue common to the classes as a whole, and neither its proof, relevance, nor disproof will give rise to individualized issues. Class Mot. at 2-3, 13-14, 16-21, 25; Class Reply at 2, 4-6.

iii. **Whether Zuffa's Challenged Conduct Reduced Marketwide Output of MMA Events Is a Common Issue.** To the extent this issue is relevant at all in a monopsony case, Plaintiffs believe that Zuffa cannot and does not plausibly dispute that whether Plaintiffs can plausibly prove that Zuffa's Challenged Conduct reduced marketwide

output of live MMA events is an issue common to the classes as a whole, and neither its proof, relevance, nor disproof will give rise to individualized issues. Class Mot. at 2-3, 13, 16-21; Class Reply at 2, 4-6.

iv. **Whether Zuffa's Market Power Enabled It to Raise the Price of Pay-Per-View Shows to Consumers Is a Common Issue.** To the extent this issue is relevant at all in a monopsony case, Plaintiffs believe that Zuffa cannot and does not plausibly dispute that whether Plaintiffs can plausibly prove that Zuffa's market power enabled it to raise the price of Pay-Per-View shows to consumers is an issue common to the classes as a whole, and neither its proof, relevance, nor disproof will give rise to individualized issues. Class Mot. at 2-3, 16-21; Class Reply at 2, 4-6.

v. **The Existence of Procompetitive Effects Is a Common Issue.** Plaintiffs believe that Zuffa cannot and does not plausibly dispute that whether Zuffa's Challenged Conduct had any procompetitive effects is an issue common to the classes as a whole, and neither its proof, relevance, nor disproof will give rise to individualized issues. Class Mot. at 2-3, 13-14, 16-21; Class Reply at 2-6.

1. Plaintiffs believe that Zuffa cannot and does not plausibly dispute that whether Zuffa's conduct had any procompetitive effects is an issue common to the classes as a whole, and neither its proof, relevance, nor disproof will give rise to individualized issues. Class Mot. at 2-3, 13-14, 16-21; Class Reply at 2-6.

2. Plaintiffs believe that Zuffa cannot and does not plausibly dispute that whether any of Zuffa's claimed procompetitive bases for its Challenged Conduct are pretextual or could be achieved by less restrictive alternatives are issues common to the classes as a whole, and neither their proof, relevance, nor disproof will give rise to individualized issues. Class Mot. at 2-3, 13-14, 16-21; Class Reply at 2-6.

2. <u>**Predominance: Common Proof of Impact**</u>: Whether "Wage Share" or "Wage Level" Is the Appropriate Metric Is a Common Issue. Plaintiffs believe that Zuffa cannot and does not plausibly dispute that whether the appropriate dependent variable in a regression assessing

9

the effects of Foreclosure Share on athlete compensation is best expressed in terms of Wage Share or Wage Level is an issue common to the classes as a whole, and neither its proof, relevance, nor disproof will give rise to individualized issues. Class Mot. at 3-5, 14-29; Class Reply at 1-2, 7-9.

JOINT STATEMENT RE: ISSUES IN DISPUTE AT EVIDENTIARY HEARING

**ZUFFA'S STATEMENT OF DISPUTED ISSUES RELEVANT TO THE HEARING ON PLAINTIFFS' CLASS CERTIFICATION MOTION**

**1. Foreclosure share**

a. Whether using Dr. Singer's foreclosure share in a regression is a rigorous and persuasive method of showing injury that affects the class as a whole and whether such a regression is a reliable and accepted basis to evaluate the existence of alleged anticompetitive activity and assess the degree of antitrust injury and damages. Singer *Daubert* Mot. (ECF No. 524) at 2; 20-22[2]; Zuffa's Opposition to Class Certification (ECF No. 540) ("Class Cert Opp.") at 26-28.

b. Whether Dr. Singer's "foreclosure" share is a tautology based on a count of contracts rather than measuring actual market foreclosure. Singer *Daubert* at 21; Class Cert Opp. at 26.

c. Whether competitors were actually foreclosed from MMA athletes. Class Cert Opp. at 26; Singer *Daubert* Mot. Reply (ECF No. 551) at 13-15.

d. Whether Dr. Singer's foreclosure share depends on his assumptions about applicable law. Singer *Daubert* at 21; Class Cert Opp. at 26-27, 35 & n.55.

e. Whether Dr. Singer appropriately defines athletes as "foreclosed" if their exclusive contracts could extend to 30 months. Singer *Daubert* at 20-22; Class Cert Opp. at 26-27.

---

[2] The parties previously agreed "that the Court may consider the class certification briefing and exhibits thereto as part of the record for purposes of the *Daubert* motions, and that the *Daubert* briefing and exhibits thereto may be considered as part of the record for purposes of the Motion for Class Certification." ECF No. 545, Jt. Mot. to Supplement Expert Reports. The Court granted the parties Joint Motion during the December 2018 hearing. ECF No. 628 ("It is further ordered that [545] Joint Motion to Supplement Expert Reports Is GRANTED"). Zuffa's position is that the parties have incorporated the *Daubert* briefings as part of the record for the purposes of the Motion for Class Certification. ECF No. 545, ECF No. 628. Plaintiffs' view is that because the Court has denied the *Daubert* motions without prejudice, ECF No. 600, it is up to the Court regarding whether to consider the *Daubert* briefing as part of the class certification record.

f.  Whether it is proper to weight the foreclosure share variable by downstream event revenues of different MMA promoters.  Singer *Daubert* at 33-35; Singer *Daubert* Reply at 15; Class Cert Opp. at 11.

g.  Whether Dr. Singer's decision to only include live gate revenues and PPV revenues and exclude other sources of revenue such as broadcast fees in calculating event revenue for his weighting is proper.  Singer *Daubert* at 35; Class Cert Opp. at 11.

h.  Whether Dr. Singer's foreclosure share accurately measures the Challenged Conduct or is impacted by procompetitive actions like Zuffa increasing output and athlete pay.  Singer *Daubert* at 15; Class Cert Opp. at 35-36.

i.  Whether it is proper to weight the foreclosure share by the inverse of an athlete's rank.  Singer *Daubert* at 10, 28; Class Cert Opp. at 11.

j.  Whether it is appropriate to assign a foreclosure share of zero to Strikeforce athletes who participated in events before Zuffa acquired Strikeforce.  Singer *Daubert* at 23; Class Cert Opp. at 11.

2.  **Fighter share.**  Fighter share is the share of event revenue attributed to individual fighters.

a.  Whether using fighter share as the dependent variable in a regression or in a yardstick comparison is a reliable and accepted basis to evaluate the existence of alleged anticompetitive activity and assess the degree of antitrust injury and damages where actual compensation has been rising and a regression using actual compensation as the dependent variable shows no anticompetitive effect, injury or damages.  Singer *Daubert* at 12-14; Class Cert Opp. at 24-26; Singer *Daubert* Reply at 4-8.

b.  Whether using fighter share of revenue as the basis for showing antitrust injury or damages means that the courts and expert witnesses will be deciding how companies should allocate their revenues to wages, compensation, and other costs. Singer *Daubert* Reply at 6-7; Class Cert Opp. at 24-25.

c. Whether using fighter share as the dependent variable in a regression or in a yardstick comparison is a rigorous and persuasive method of showing injury that affects the class as a whole when fighter compensation has been rising and when there is no injury, damages or anticompetitive effect if the dependent variable is actual compensation. Singer *Daubert* at 6-7; Class Cert Opp. at 24-26; Singer *Daubert* Reply at 6-7.

d. Whether Dr. Singer's fighter share results are attributable to the regression formula, which uses event revenue on both the right and left-hand side of the regression. Singer *Daubert* at 10 & n.3; Class Cert Opp. at 35-37.

e. Whether Dr. Singer's regression adequately controls for Zuffa's procompetitive conduct that increase event revenues. Singer *Daubert* at 19-20; Class Cert Opp. at 35-37; Singer *Daubert* Reply at 8-13.

f. Whether Dr. Singer's regression adequately controls for third party conduct that increase event revenues. Singer *Daubert* at 19-20; Class Cert Opp. at 35-37; Singer *Daubert* Reply at 8-13.

g. Whether fighter share has declined as a result of Zuffa's procompetitive conduct. Singer *Daubert* at 17-20; Class Cert Opp. at 35-37 Singer *Daubert* Reply at 8-13.

h. Whether the difference between event revenue and compensation provides a reliable measurement of monopsony power. Singer *Daubert* at 17-20; Class Cert Opp. at 35-37.

i. Whether event revenue is a reasonable proxy to the Marginal Revenue Product of the athletes at an event. Singer *Daubert* at 17-20; Class Cert Opp. at 35-37; Singer *Daubert* Reply at 8-10.

j. Whether Zuffa athlete's fighter share went up or down over the class period. Class Cert Opp. at 30.

k. Whether Dr. Singer's fighter share regression or the use of fighter share as a yardstick by Dr. Singer and Dr. Zimbalist satisfies *Comcast*'s requirement to only

JOINT STATEMENT RE: ISSUES IN DISPUTE AT EVIDENTIARY HEARING

assess injury and damages from the alleged challenged conduct.  Singer *Daubert* at 17-20; Class Cert Opp. at 35-37; Singer *Daubert* Reply at 4-7, 10-13; Zimbalist *Daubert* Mot. (ECF No. 522) at 4-9.

l.  Whether Dr. Zimbalist showed that demand for labor in MMA is equivalent to the demand in other sports.  Zimbalist *Daubert* at 10-15; Class Cert Opp. at 11.

3.  Whether Dr. Singer employs an average regression co-efficient across class members to demonstrate injury, rather than a formula to calculate widespread individual injury of class members.   Class Cert Opp. at 27-28.

4.  Whether the Singer regression demonstrates widespread impact based on UFC rather than Strikeforce data.  Singer *Daubert* at 23; Class Cert Opp. at 10.

5.  Whether an alleged "Scheme" that requires proof of multiple different acts that occurred throughout the Class Period can be proven with common classwide evidence.  Class Cert Opp. at 13-14, 20-21.

6.  Whether an alleged "Scheme" of "coercion" can be proven with common classwide evidence.  Class Cert Opp. at 19-21.

7.  Whether Plaintiffs' experts have assumed evidence of coercion that requires individualized proof.  Class Cert Opp. at 21.

8.  Whether Plaintiffs' offered proof of widespread injury or damages depends on assumptions about a but-for world that are not tied to the Challenged Conduct in this case.

a.  Whether Dr. Singer has adequately defined a but-for world that removes the Challenged Conduct.  Singer *Daubert* at 24-26; Class Cert Opp. at 27.

b.  Whether Dr. Singer's but-for world is economically rational.  Singer *Daubert* at 26; Class Cert Opp. at 27.

c.  Whether Dr. Singer's but-for world shows that many class members would no longer have received contracts from Zuffa.  Class Cert Opp. at 22.

d.  Whether Dr. Singer's definition of a but-for world with 30%, 20% or 0% foreclosure share, based on his assumptions about what a court might deem

anticompetitive is a valid methodological approach.  Singer *Daubert* at 24-25; Class Cert Opp. at 27.

9.  Whether the so-called sponsorship "tax" is evidence of common classwide impact.  Singer *Daubert* at 38; Class Cert Opp. at 29-30; Singer *Daubert* Reply at 17.

10. Whether Dr. Singer's regression which shows negative damages for 14 athletes accounting for 27% of his total damages supports a finding of common impact.  Class Cert Opp. at 15-16.

11. Whether the market definition in Dr. Singer's foreclosure share is accepted and reliable or persuasive and rigorous.  Class Cert Opp. at 22-24; 26-28; Singer *Daubert* at 28-35.

   a.  Whether Dr. Singer applied the Horizontal Merger Guidelines when he defined markets around fighters (seller of services) rather than the promoters (buyers of services).  Singer *Daubert* at 28-29; Singer *Daubert* Reply at 15-16; Class Cert Opp. at 22.

   b.  Whether FightMatrix and FightMetric are reliable sources from which to define a market. Singer *Daubert* at 29-32, Class Cert Opp. at 22.

   c.  Whether Dr. Singer's exclusion of all international promoters from the market, except for One Championship is proper.  Singer *Daubert* Reply at 16; Class Cert Opp. at 22-23.

   d.  Whether it is proper to weight Zuffa's market share with downstream event revenues.  Singer *Daubert* at 33-35; Singer *Daubert* Reply at 15-16; Class Cert Opp. at 11, 22.

12. Whether Dr. Singer's geographic market which includes purchasers of tickets to live MMA events is properly defined as a national, as opposed to a regional, market.  Class Cert Opp. at 22-24.

   a.  Whether a regional geographic market raises individualized issues that predominate over common questions.  Class Cert Opp. at 22-24.

13. Whether UFC athletes, together with lawyers and managers negotiate their contracts and compensation. Class Cert Opp. at 30-34.

14. Whether Plaintiffs' asserted evidence of a compensation structure supports a finding of common impact to the class.

    a. Whether Dr. Singer has controlled for necessary individual factors that affect athlete compensation. Class Cert Opp. at 34-35.

    b. Whether Zuffa pays athletes according to internal "equity." Class Cert Opp. at 33-34.

    c. Whether Dr. Singer's common factors regression is capable of identifying whether common or individual factors drive athlete compensation. Class Cert Opp. at 34-35.

    d. Whether Dr. Singer's sharing analysis is capable of identifying whether common or individual factors drive athlete compensation. Class Cert Opp. at 34-35.

    e. Whether there is a common pay scheme for UFC athletes. Class Cert at 30-34.

15. Whether benchmarks Plaintiffs' experts use to estimate damages translate "the legal theory of the harmful event" Plaintiffs allege "into an analysis of the economic impact of that event." *Comcast Corp. v. Behrend*, 569 U.S. 27, 38 (2013). Class Cert Opp. at 35-37.

    a. Whether Plaintiffs' benchmarks meet the established standards for applying a benchmark analysis. Class Cert Opp. at 35-36; Singer *Daubert* at 27.

    b. Whether comparing fighter share (not actual compensation) in a benchmark analysis is a proper way to assess anticompetitive impact and damages. Class Cert Opp. at 10.

    c. Whether Plaintiffs have put forward an accepted and reliable method capable of proving damages to the class from the Challenged Conduct. Class Cert Opp. at 35-37; Singer *Daubert* Reply at 10-13.

d. Whether Plaintiffs' experts have isolated damages from the conduct they
challenged from legal conduct.  Singer *Daubert* at 17-20; Class Cert Opp. at 35-
37; Singer *Daubert* Reply at 4-7, 10-13.

e. Whether Plaintiffs' experts have disaggregated damages so that a jury could
account for potential procompetitive or neutral effects of the challenged conduct.
Class Cert Opp. at 35-37; Singer *Daubert* at 17-20.

16. Whether the evidence offered for the Identity class is accepted and reliable or persuasive
and rigorous.  Singer *Daubert* at 27-28; Class Cert Opp. at 38-40.

a. Whether class members grant Zuffa different identity rights and are compensated
differently for those rights.  Class Cert Opp. at 38-39.

b. Whether it is a proper method of proving impact to apply the results of the Bout
Class impact regression to the Identity Class.  Class Cert Opp. at 39.

c. Whether Dr. Singer's methodology of assuming all athletes in Identity Subgroup 2
would have been paid at least $2,500 is a proper methodology for proving impact.
Singer *Daubert* at 27-28.  Class Cert Opp. at 40.

17. Whether the damages models of Plaintiffs are based on a yardstick that has been created in
a manner that meets accepted standards among economists.

a. Whether Plaintiffs' experts have done the necessary analysis to determine that his is
an appropriate yardstick.  Singer *Daubert* at 27; Class Cert Opp. at 11; *id.* at 24
n.40; Zimbalist *Daubert* at 4-9.

b. Whether a properly constructed yardstick model can be created using an average or
composite of multiple comparators.  Class Cert Opp. at 24 n.40; Zimbalist *Daubert*
at 15-16.

c. Whether the four major league sports are appropriate comparators for Zuffa.
Zimbalist *Daubert* at 10-15; Class Cert Opp. at 11.

d. Whether the Golden Boy data is reliable and provides an appropriate comparator
for Zuffa.  Zimbalist *Daubert* at 20-22; Class Cert Opp. at 11.

JOINT STATEMENT RE: ISSUES IN DISPUTE AT EVIDENTIARY HEARING

e.  Whether an appropriate comparator can be in the same geographic and product market as the defendant.  Zimbalist *Daubert* at 5-8; Class Cert Opp. at 11.

f.  Whether the comparators of other sports exemplify a but-for world in which the challenged conduct is absent.  Zimbalist *Daubert* at 8-9; Class Cert Opp. at 11, 35-36.

18. Whether a conclusion that a firm has exercised monopsony power without proof that the firm also exercised monopoly power makes economic sense.  Class Cert Opp. at 9-10.

JOINT STATEMENT RE: ISSUES IN DISPUTE AT EVIDENTIARY HEARING

1

Dated:  August 20, 2019

2

**BERGER MONTAGUE PC**

3

By: */s/ Eric L. Cramer*

4

Eric L. Cramer (admitted *pro hac vice*)
Michael Dell'Angelo (admitted *pro hac vice*)

5

Patrick F. Madden (admitted *pro hac vice*)
Mark R. Suter (admitted *pro hac vice*)

6

1818 Market Street
Philadelphia, Pennsylvania 19103

7

Phone: (215) 875-3000/Fax: (215) 875-4604
ecramer@bm.net

8

mdellangelo@bm.net
pmadden@bm.net

9

msuter@bm.net

10

*Co-Lead Counsel for the Classes and*

11

*Attorneys for Individual and Representative*
*Plaintiffs Cung Le, Nathan Quarry, Jon*

12

*Fitch, Luis Javier Vazquez, Brandon Vera,*
*and Kyle Kingsbury*

13

**COHEN MILSTEIN SELLERS**

14

    **& TOLL, PLLC**
Benjamin D. Brown (admitted *pro hac vice*)

15

Richard A. Koffman (admitted *pro hac vice*)
Daniel Silverman (admitted *pro hac vice*)

16

1100 New York Ave., N.W.

17

Suite 500, East Tower
Washington, D.C. 20005

18

Phone: (202) 408-4600/Fax: (202) 408 4699
bbrown@cohenmilstein.com

19

rkoffman@cohenmilstein.com
dsilverman@cohenmilstein.com

20

*Co-Lead Counsel for the Classes and*

21

*Attorneys for Individual and Representative*
*Plaintiffs Cung Le, Nathan Quarry, Jon*

22

*Fitch, Luis Javier Vazquez, Brandon Vera,*
*and Kyle Kingsbury*

23

24

25

26

27

28

Dated:  August 20, 2019

**BOIES SCHILLER FLEXNER LLP**

By: */s/ William A. Isaacson*

William A. Isaacson (admitted *pro hac vice*)
Stacey K. Grigsby (admitted *pro hac vice*)
Nicholas A. Widnell (admitted *pro hac vice*)
1401 New York Ave, NW
Washington, D.C. 20005
Phone: (202) 237-2727/Fax: (202) 237-6131
wisaacson@bsfllp.com
sgrigsby@bsfllp.com
nwidnell@bsfllp.com

*Attorneys for Defendant* Zuffa, LLC, d/b/a
Ultimate Fighting Championship and UFC

**CAMPBELL & WILLIAMS**
Donald J. Campbell (State Bar No. 1216)
J. Colby Williams (State Bar No. 5549)
700 South 7th Street
Las Vegas, Nevada 89101
Phone: (702) 382-5222/Fax: (702) 382-0540
djc@campbellandwilliams.com
jcw@campbellandwilliams.com

*Attorneys for Defendant* Zuffa, LLC, d/b/a
Ultimate Fighting Championship and UFC

**BOIES SCHILLER FLEXNER LLP**
Richard J. Pocker (State Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, Nevada 89101
Phone: (702) 382-7300/Fax: (702) 382-2755
rpocker@bsfllp.com

*Attorneys for Defendant* Zuffa, LLC, d/b/a
Ultimate Fighting Championship and UFC

JOINT STATEMENT RE: ISSUES IN DISPUTE AT EVIDENTIARY HEARING

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JOSEPH SAVERI LAW FIRM, INC.**
Joseph R. Saveri (admitted *pro hac vice*)
Joshua P. Davis (admitted *pro hac vice*)
Kevin E. Rayhill (admitted *pro hac vice*)
Jiamin Chen (admitted *pro hac vice*)
601 California Street, Suite 1000
San Francisco, California 94108
Phone: (415) 500-6800/Fax: (415) 395-9940
jsaveri@saverilawfirm.com
jdavis@saverilawfirm.com
krayhill@saverilawfirm.com
jchen@saverilawfirm.com

*Co-Lead Counsel for the Classes and
Attorneys for Individual and Representative
Plaintiffs Cung Le, Nathan Quarry, Jon Fitch,
Luis Javier Vazquez, Brandon Vera, and Kyle
Kingsbury*


**WOLF, RIFKIN, SHAPIRO,
    SCHULMAN & RABKIN, LLP**
Don Springmeyer
Nevada Bar No. 1021
Bradley S. Schrager
Nevada Bar No. 10217
3556 E. Russell Road, Second Floor
Las Vegas, Nevada 89120
(702) 341-5200/Fax: (702) 341-5300
dspringmeyer@wrslawyers.com
bschrager@wrslawyers.com

*Liaison Counsel for the Classes and Attorneys
for Individual and Representative Plaintiffs
Cung Le, Nathan Quarry, Jon Fitch, Luis
Javier Vazquez, Brandon Vera, and Kyle
Kingsbury*

20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**WARNER ANGLE HALLAM JACKSON**
   **& FORMANEK PLC**
Robert C. Maysey (admitted *pro hac vice*)
Jerome K. Elwell (admitted *pro hac vice*)
2555 E. Camelback Road, Suite 800
Phoenix, Arizona 85016
Phone: (602) 264-7101/Fax: (602) 234-0419
rmaysey@warnerangle.com
jelwell@warnerangle.com

*Counsel for the Classes and Attorneys for*
*Individual and Representative Plaintiffs Cung*
*Le, Nathan Quarry, Jon Fitch, Luis Javier*
*Vazquez, Brandon Vera, and Kyle Kingsbury*

**LAW OFFICE OF FREDERICK S.**
   **SCHWARTZ**
Frederick S. Schwartz (admitted *pro hac vice*)
15303 Ventura Boulevard, #1040
Sherman Oaks, California 91403
Phone: (818) 986-2407/Fax: (818) 995-4124
fred@fredschwartzlaw.com

*Counsel for the Classes and Attorneys for*
*Individual and Representative Plaintiffs Cung*
*Le, Nathan Quarry, Jon Fitch, Luis Javier*
*Vazquez, Brandon Vera, and Kyle Kingsbury*

JOINT STATEMENT RE: ISSUES IN DISPUTE AT EVIDENTIARY HEARING

1

**SPECTOR ROSEMAN KODROFF &
     WILLIS, P.C.**
2
Jeffrey J. Corrigan (admitted *pro hac vice*)
William G. Caldes (admitted *pro hac vice*)
3
1818 Market Street, Suite 2500
Philadelphia, Pennsylvania 19103
4
Phone: (215) 496-0300/Fax: (215) 496-6611
jcorrigan@srkw-law.com
5
wcaldes@srkw-law.com

6
*Counsel for the Classes and Attorneys for*
*Individual and Representative Plaintiffs Cung*
7
*Le, Nathan Quarry, Jon Fitch, Luis Javier*
*Vazquez, Brandon Vera, and Kyle Kingsbury*
8

9
**RADICE LAW FIRM, P.C.**
John D. Radice (admitted *pro hac vice*)
10
34 Sunset Blvd
Long Beach, NJ 08008
11
jradice@radicelawfirm.com

12
*Counsel for the Classes and Attorneys for*
*Individual and Representative Plaintiffs Cung*
13
*Le, Nathan Quarry, Jon Fitch, Luis Javier*
*Vazquez, Brandon Vera, and Kyle Kingsbury*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STATEMENT RE: ISSUES IN DISPUTE AT EVIDENTIARY HEARING

**ATTESTATION OF FILER**

The signatories to this document are myself and Eric Cramer, and I have obtained Mr.

Cramer's concurrence to file this document on his behalf.

Dated: August 20, 2019                    By: /s/ William A. Isaacson

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that service of the foregoing Plaintiffs' and Zuffa's

Statements re: Issues in Dispute for Evidentiary Hearing re: Class Certification was served to

opposing counsel on August 20, 2019 via the Court's CM/ECF electronic filing system addressed

to all parties on the e-service list.

Dated: August 20, 2019                    By: /s/ Roderick Crawford

                                          Roderick Crawford

                                          An employee of Boies Schiller Flexner LLP