# EXHIBIT A

# Excerpt of Evidentiary Hearing Day 7 Transcript

Page 1

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
-----------------------------------------------------------
Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury on behalf of themselves and all others similarly situated,

Case No.:

2:15-cv-01045-RFB-BNW

       Plaintiffs,

   v.

Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,

       Defendant.
-----------------------------------------------------------

TRANSCRIPT OF HEARING BEFORE
THE HONORABLE RICHARD FRANKLIN BOULWARE, II
September 23, 2019
9:33 a.m. - 12:13 p.m.
Richmond, Virginia



Page 103

1  Q      How often would they change?
2  A      They would change constantly.  Even the UFC
3  rankings changed depending on who in the pool was
4  voting.
5  Q      So the number of people who are ranked here,
6  would those necessarily have the same rankings in,
7  say, 6 or 12 months?
8  A      No.
9  Q      Just one other thing I wanted to point out.
10 So you were looking at the heavyweight rankings,
11 and it ranks them 1 through 23.  And you mentioned
12 a couple of times, but who was the top Strikeforce
13 heavyweight on this consensus ranking?
14 A      Fedor Emelianenko was in Strikeforce.
15 Q      And did Fedor Emelianenko ever sign with the
16 UFC?
17 A      He did not.
18 Q      Did you try to sign Fedor?
19 A      We did.
20 Q      And you were never successful -- how long
21 did you try to sign Fedor?
22 A      For quite a while.  He was considered by
23 many to be the top heavyweight for a long time, so
24 we definitely tried to get him.
25 Q      So I want to talk to you just a little bit



Page 104

1  about wage share.  Are you familiar with the
2  concept of paying athletes a percentage of a
3  company's revenue?
4             MR. CRAMER:  Your Honor, may I object?
5       There's -- first of all, Mr. Silva never put
6       in a declaration in this case.  So the only
7       thing we have in the record from Mr. Silva are
8       his documents and the deposition.  There are
9       no questions in the deposition about wage
10      share.  There's nothing in the documents about
11      wage share.  So now we're going to have this
12      lay witness testify apparently about an
13      economic concept that seems inappropriate and
14      brand new and --
15            THE COURT:  Okay.  Ms. Grigsby, did he
16      ever previously testify about wage share?
17            MS. GRIGSBY:  He did not, but that's
18      the point.  He is going to testify --
19            THE COURT:  So we're not going to allow
20      him to testify about it now.
21            MS. GRIGSBY:  So I just -- really, my
22      only question there is if he's even familiar
23      with it.
24            THE COURT:  Here's what I'm saying.  I
25      really don't think it's fair to go down this



Page 105

1  avenue if there hasn't been testimony.
2          MS. GRIGSBY:  Sure.
3          THE COURT:  Because what's going to
4  happen is we're going to end up -- there's
5  essentially a free-for-all for testimony as it
6  relates to things that he hasn't previously
7  testified about.
8          So I'm going to sustain the objection.
9  We'll move on.
10 BY MS. GRIGSBY:
11 Q    So when you were negotiating contracts with
12 athletes, did you know Zuffa's event revenues?
13 A    I did not.
14 Q    Were you ever told that you had a budget for
15 negotiating with fighters?
16 A    I was not.
17 Q    Were you ever told that you were spending
18 too much for compensation on fighters?
19 A    I was not.
20 Q    Now, plaintiffs have suggested that Zuffa
21 tried to maintain a certain set of its revenues as
22 compensation --
23         MR. CRAMER:  Your Honor --
24         THE COURT:  You're asking the question
25 in a different way, and so I just want to warn



```
                                                      Page 106
 1         you.  All right.  I gave you a little latitude
 2         on the first few questions.  Please, if I
 3         sustain an objection, don't try to ask the
 4         question in a different way, because that's
 5         exactly what we're doing.  So I sustained it.
 6         Move on from this area.
 7                MS. GRIGSBY:  Okay.  I'll move on.
 8                THE COURT:  And I'm going to strike
 9         from the record all of his answers as it
10         relates to revenues in this case that were
11         just asked and answered.  Go ahead.
12  BY MS. GRIGSBY:
13   Q     Well, just one question is:  Did any athlete
14  ever ask to be paid based on revenue from an event?
15                THE COURT:  Sustained.
16  BY MS. GRIGSBY:
17   Q     Now, plaintiffs have asked you a little bit
18  about the right to match, Zuffa's right to match
19  athletes who brought offers.  You recall that
20  testimony, correct?
21   A     Correct.
22   Q     And there you said that many of the
23  athletes, there was only a certain percent where
24  Zuffa chose not to match it; is that right?
25   A     Correct.
```



```
                                                           Page 141
 1                       CERTIFICATE OF REPORTER
 2
 3               I, KIMBERLY L. RIBARIC, do hereby
 4      certify that I reduced the notes of the foregoing
 5      proceedings to typewriting; that the foregoing is a
 6      true record of said proceedings to the best of my
 7      knowledge and ability; that I am neither counsel
 8      for, related to, nor employed by any of the parties
 9      to the action in which these proceedings were held;
10      and further, that I am not a relative or employee
11      of any attorney or counsel employed by the parties
12      hereto, nor financially or otherwise interested in
13      the outcome of the action.
14               IN WITNESS WHEREOF, I have hereunto set
15      my hand this 24th day of September, 2019.
16
17
18
19           Kimberly L. Ribaric, RPR, CCR
20           Notary Registration No. 348266
21           Commonwealth of Virginia at Large
22
23
24
25
```

