Case 2:15-cv-01045-RFB-BNW  Document 751-7  Filed 10/04/19  Page 1 of 5
Case 2:15-cv-01045-RFB-BNW  Document 743-7  Filed 09/13/19  Page 1 of 136

6-1

2:15-cv-01045-RFB-PAL

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

```
CUNG LE, et al.,                  )
                                  )
            Plaintiffs,           ) Case No. 2:15-cv-01045-RFB-PAL
                                  )
     vs.                          ) Las Vegas, Nevada
                                  ) Friday, September 13, 2019
ZUFFA, LLC, d/b/a Ultimate        ) 8:22 a.m.
Fighting Championship and         )
UFC,                              ) EVIDENTIARY HEARING, DAY SIX
                                  )
            Defendants.           )
_____
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

THE HONORABLE RICHARD F. BOULWARE, II,
UNITED STATES DISTRICT JUDGE

APPEARANCES:      See Pages 2 and 3

COURT REPORTER:   Patricia L. Ganci, RMR, CRR
                  United States District Court
                  333 Las Vegas Boulevard South, Room 1334
                  Las Vegas, Nevada  89101

Proceedings reported by machine shorthand, transcript produced by computer-aided transcription.

Case 2:15-cv-01045-RFB-BNW   Document 751-7   Filed 10/04/19   Page 2 of 5
Case 2:15-cv-01045-RFB-BNW   Document 745   Filed 09/13/19   Page 86 of 136

6-86

2:15-cv-01045-RFB-PAL

1            THE COURT:  So I'm going to ask you a question that I
2   asked Professor Oyer which he didn't really answer, which maybe
3   you can help me with, which is, if I were to find there's
4   sufficient or plausible evidence that, in fact, wage share was
5   used within the industry, why would I not then find it an
6   appropriate measure?
7            Because I asked him that, Mr. Isaacson, a couple times,
8   and he did not actually give me I think a full answer to that.
9   And so, perhaps, you can help me understand that.  Because the
10  fact that it hasn't been used doesn't necessarily mean that it
11  couldn't be used if in fact it's being used within the industry.
12  And he acknowledged that if something is used in the industry,
13  potentially that might be the case, but that was as close as he
14  got.  So maybe you can help me understand that.
15           And I'm not saying that they've established it.  What
16  I'm saying is that if they come forward and say you have enough
17  here to find that it was plausibly used, and they're going to
18  look at that chart and they're going to talk about what that
19  chart actually means as relates to the projections but -- and
20  other sort of record evidence.  But if I were to find that, in
21  fact, it was used, how does that impact my assessment of whether
22  or not wage share is an appropriate measure?
23           MR. ISAACSON:  Used -- you have to ask the question
24  used for what.  And --
25           THE COURT:  So let me specify what I mean by that.

Case 2:15-cv-01045-RFB-BNW   Document 751-7   Filed 10/04/19   Page 3 of 5
Case 2:15-cv-01045-RFB-BNW   Document 745   Filed 09/13/19   Page 87 of 136

6-87

2:15-cv-01045-RFB-PAL

1           MR. ISAACSON:  Oh.
2           THE COURT:  If I were to find that in the record Zuffa
3  itself looked at event revenues and used percentages --
4           MR. ISAACSON:  Right.
5           THE COURT:  -- to try to determine how much to pay or
6  not pay fighters, would that be enough from your perspective for
7  me to find that wage share is an appropriate measure in this
8  case?
9           MR. ISAACSON:  No, because you are -- and you are --
10 you are trying to decide whether it's an appropriate measure to
11 determine the effect of monopsony.  All right.  That is
12 completely different from assessing what -- a business saying
13 how much am I paying for my labor, how much am I paying for my
14 manufacturing costs.  And that's what Professor Oyer told you
15 and what Dr. Topel told you is that you have businesses, and
16 businesses break down, like, how much -- what percentage am I
17 paying to this, what percentage am I paying to that.  That is
18 not an evaluation of monopsony power.
19           And --
20           THE COURT:  You will have one more witness who is going
21 to talk a little bit more about this because I think that's one
22 reason why Mr. Silva I think is relevant as relates to pay
23 structure potentially, which is one of the questions I want to
24 ask him.
25           But they -- all of these witnesses at least acknowledge

Case 2:15-cv-01045-RFB-BNW   Document 751-7   Filed 10/04/19   Page 4 of 5
Case 2:15-cv-01045-RFB-BNW   Document 745   Filed 09/13/19   Page 123 of 136

6-123

2:15-cv-01045-RFB-PAL

1  you're below 90 percent.  It's the first time they've made any
2  argument along those lines.
3         We obviously haven't responded to it because it's brand
4  new.  The reason it's nonsense is I can cite you case after case
5  where, in fact, virtually every case the data is more
6  incomplete.  And of course you use the data you do have where
7  not all -- we didn't have data for all fighters, especially the
8  ones who are most briefly in the UFC.  And so you don't have
9  complete data.  You draw an inference.
10         Dr. Singer's impact regression shows impact to every
11  single fighter who was in the UFC relatively briefly and just is
12  unable to show impact for about a dozen of the longest-standing
13  fighters, which means that these fighters would be impacted at
14  least at 99 percent if you were to draw any sort of reasonable
15  inference.  But, again, it's a brand new argument in a brief
16  that we got this morning for the first time.
17         Zuffa --
18         THE COURT:  Do you want to address briefly the issue
19  about the article?
20         MR. DAVIS:  So the article -- first of all, nothing
21  that opposing counsel said said the article's unreliable.  It
22  said the journal in which it appeared was unreliable.  And
23  opposing counsel said it was a fraud and -- but the fraud is the
24  journal.  We don't know that the article -- authors of the
25  article were duped or the folks who evaluated it were duped.

Case 2:15-cv-01045-RFB-BNW Document 751-7 Filed 10/04/19 Page 5 of 15
Case 2:15-cv-01045-RFB-BNW Document 745 Filed 09/13/19 Page 124 of 136

6-124

2:15-cv-01045-RFB-PAL

```
 1          And, you know, I will say -- so Mr. Isaacson said, oh,
 2   it's a fraud.  We just found out.  We don't know when they found
 3   out about this.  I wish this weren't a pattern, but I do have to
 4   say, Your Honor, every time we make an argument, Zuffa feels as
 5   if it should be getting the last word.  They've done new
 6   regressions during this hearing.  They've presented new evidence
 7   and new arguments in the briefs they submitted this morning
 8   which we took to be only summaries of what had already been
 9   done.
10          This is not some anomaly.  This is a pattern and
11   practice where if things don't seem to be going well, let's come
12   up with yet a new argument at the last minute and hope that
13   suddenly changes everything.
14          And so I would say, Your Honor, it is way too late.
15   There is no basis, appropriate basis, for you to evaluate this
16   point.  We don't really need it anyway, but just on principle
17   that -- Your Honor should not be taking -- I respectfully submit
18   -- we respectfully submit, Your Honor should not be taking into
19   account this or the brief that we'll get on Monday on this
20   hearing or the one we'll get a week from Monday or the
21   regression that will come a week after that.
22          At some point when there's a clear order in place about
23   how these things should proceed, they should stop.  And this is
24   well past that time, and it's not the first time we've been well
25   past that time.
```