January 8, 2021

*Via Email Transmission*

Dear Judge Boulware,

We are emailing you to to voice support for your intent to make public all documents in the *Le et al v Zuffa, LLC* Case

This case centers on questions regarding the UFC's opaque business practices. Having access to comprehensive details about the fighters' wage share, the UFC's market share, contractual language, strategies, and spending choices -- all relevant to understanding the monopoly and monopsony charges in the case -- is necessary for us to fulfill our obligation as journalists to keep the public informed.  Sealing exhibits that report on such information, or even redacting excerpts, limit our ability to do so.

It should also be noted that UFC officials have publicly said that the media is either ignorant of the UFC's business and/or not accurate in their reporting.

Examples:

- "None of the media people know anything about this business," (https://www.mmaweekly.com/dana-white-rips-colin-cowherd-for-dirty-tactics-during-tv-deal-negotiations)
- "I bet you wouldn't say [fighters are underpaid] if you knew what he made." https://www.insider.com/dana-white-says-ufc-fighters-pay-shock-people-2020-5

Making all the relevant materials public can thus only help us in our efforts to fairly and accurately report on the case. We are therefore asking that you make public all the documents when you publish the Court's Certification of Class.

Sincerely,

**John S. Nash**
**VOX Media's Bloody Elbow Blog**

**Cardiff Garcia,**
**NPR Indicator podcast, cohost**

January 9, 2021

*Via Email Transmission*

Judge Boulware,

I am writing to you as an interested party in support of your announcement to unseal all documents in *Le et al vs. Zuffa, LLC*, case #2:15-cv-01045-RFB-(PAL). As a member of the media, I believe the disclosure of relevant material is critical to the public's understanding of the case. Many documents have been sealed in the course of litigation, which has prevented reporters from gaining a greater understanding of the allegations against Zuffa and its business practices. If those were unsealed, it would allow the media to better inform the public in one of the most important cases involving the mixed martial arts industry since the UFC became a multi-billion dollar company. Historically, courts have recognized a "general right to inspect and copy public records and documents, including judicial records and documents."

Up until this point, Zuffa has limited reporters' access to detailed information about its practices and has actively discouraged or even spread falsehoods about fighters' wage share and its market share. Recently, as the UFC returned to live event promotion during the COVID-19 pandemic, UFC President Dana White specifically said, "The less the media knows, the better," and he recently released (and later deleted) a video targeting specific members of the media for asking questions about the promotion's safety protocols. In that light, I ask that you consider the public's right to know this information and unseal all the case documents with the publication of the class certification.

Thank you for your time,

**Steven Marrocco • Deputy Editor, MMAFighting.com**

January 9, 2021

*Via Email Transmission*

Dear Judge Boulware,

I am writing to you as an interested party in support of your announcement to unseal all documents in *Le et al vs. Zuffa, LLC*, case #2:15-cv-01045-RFB-(PAL). For over 25 years, I've had a ringside seat as a journalist covering UFC in the context of both administrative law and anti-SLAPP civil procedure. I've watched UFC go from business pariah to a corporate behemoth pressuring state athletic commissions, like Nevada's, in granting fighters Use Exemptions for testosterone (steroids). It has been quite a journey.

The documents this Court possess under seal would greatly impact business, cultural, and legislative policy in the combat sports space. There are many compelling reasons for unsealing documents, so I will simply highlight two recent issues that may shine a light on the importance of document disclosure.

In the last year alone, UFC has flexed its business muscle in coordination with both Disney and political allies connected to President Trump to dramatically impact public policy. The organization gave fighters, media, and staff members a take-it-or-leave-it liability waiver that required individuals to forfeit Speech and Due Process rights that would normally be protected by anti-SLAPP civil procedure in both state and Federal court. The waiver required journalists to sign away all speech rights, to enter forced arbitration in Las Vegas, and to waive the right to talk to investigators if there was a concern about health and safety. This was all done in the name of American public policy and proudly declared as such in public by UFC officials. I spent over a month reviewing case law, treatises, and books specializing in arbitration and anti-SLAPP to try to interpret the scope of UFC's liability waiver. The waiver was unconscionable under any sort of legal review. (see article: https://www.bloodyelbow.com/2020/6/1/21270188/understanding-the-legal-ramifications-of-ufcs-covid-19-waiver-for-fighters)

UFC's business behavior has become even more aggressive since this Court was originally petitioned.

As we speak, I am currently attempting to avoid litigation with the California State Athletic Commission over an unfulfilled records request for both the promoter and manager licensing applications of a top UFC fighter manager named Graham Boylan. Mr. Boylan was recently granted a California promoter's license and has made it clear that the fighters he promotes will eventually fight in the UFC. The potential conflict-of-interest issues raised here are exactly the kinds of conflict-of-issues that have been previously raised in front of this Court. Fortunately for the public, this Court has access to information that nobody has previously been able to obtain through various channels.

I humbly ask this Court to disclose all evidence to the public so that we can fully and accurately understand the past and present business practices of Zuffa, LLC in the name of advancing public policy.

Sincerely,

Zach Arnold

January 9, 2021

*Via Email Transmission*

Dear Judge Boulware,

We are writing to you in support of your decision to unseal and make public all documents in the *Cung Le, et al v. Zuffa, LLC* case. As journalists who cover the sport of mixed martial arts, we believe that information on the business practices of the largest promoter in the sport are vital to our duty to inform the public. These documents seem likely to shed light on important issues within the sport that have long remained hidden or misunderstood, and we believe that information is in the public interest.

On behalf of journalists who cover MMA for more than 30 news organizations, we ask that you unseal and make public all documents upon publication of the Court's Certification of Class.

Thank you,

Officers of the MMA Journalists Association:

Ben Fowlkes - President
Ariel Helwani - Vice President
Josh Gross - Secretary
Marc Raimondi - Treasurer
Dave Doyle - At Large
Jeff Wagenheim - At Large



**The New York Times Company**

David McCraw
Senior Vice President &
Deputy General Counsel

T 212 556 4031

mccraw@nytimes.com

620 8th Avenue
New York, NY 10018
nytimes.com

January 11, 2021

**VIA EMAIL (lv_public_docketing@nvd.uscourts.gov)**

The Honorable Richard F. Boulware, II
United States District Judge
Lloyd D. George Federal Courthouse
333 Las Vegas Blvd South
Las Vegas, NV 89101

Re:   *Le, et al. v. Zuffa, LLC*, 2:15-cv-1045-RFB-BNW – Unsealing of Records

Dear Judge Boulware:

The New York Times Company ("The Times") submits this letter pursuant to Your Honor's Order of January 6, 2021 (Dkt. 782), which invited interested third parties to be heard on the unsealing of judicial records in the above-referenced case. Under both federal common law and the First Amendment, judicial records are to be open unless the parties meet an exacting standard for keeping the records out of public view. That standard has not been met here, and The Times urges the Court to proceed with its plan to unseal all the documents in this case.

As Your Honor is aware, the sealing of judicial records in this long-running class action lawsuit against Defendant Zuffa, LLC ("UFC") has been extensive. More than 200 docket filings, nearly all exhibits to the motion for class certification and motions to exclude expert testimony, have been fully or partially sealed. *See* Dkt. 778-2. At times, the parties have sought to seal records simply because they were designated as "confidential" or "highly confidential" under the protective order. *See, e.g.*, Dkt. 519 (plaintiffs' motion for leave to file under seal). At other times they have predicated their sealing requests on the presence of

alleged "trade secrets" in their filings. *See, e.g.*, Dkt. 525 (defendant's motion to seal); Dkt. 541 (same).

The sealing of these records is contrary both to federal common law and to the First Amendment, each of which endows the public with a qualified right of access to judicial records in civil proceedings. *See, e.g., Courthouse News Serv. v. Planet*, 947 F.3d 581, 589 (9th Cir. 2020) (First Amendment right); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1134 (9th Cir. 2003) (common law right).[1]

The common law right applies broadly in civil cases. *See Ctr. for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016). In considering whether to seal records, courts "start with a strong presumption in favor of access to court records." *Foltz*, 331 F.3d at 1135. The presumption of access is "based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice." *Ctr. for Auto Safety*, 809 F.3d at 1096 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)). The common law access right attaches to any motion that is "more than tangentially related to the underlying cause of action." *Id.* at 1099.

The public's presumptive right of access can be set aside only if a court finds "compelling reasons" to do so. *Id.* at 1096. The test is demanding, as described in *Ctr. for Auto Safety*:

> Under this stringent standard, a court may seal records only when it finds "a compelling reason and articulate[s] the factual basis for its ruling, without relying on hypothesis or conjecture." *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). The court must then "conscientiously balance[] the

---

[1] "If the party seeking disclosure relies on both grounds [the common law and First Amendment rights of access], the withholding of information must survive both – in other words, a party that asserts both grounds for disclosure will prevail if it succeeds on either one." *United States v. Kaczynski*, 154 F.3d 930, 932 (9th Cir. 1998) (Reinhardt, J., concurring).

2

> competing interests of the public and the party who seeks to keep certain judicial records secret." *Id.* (quoting *Foltz*, 331 F.3d at 1135) (alteration in original) (internal quotation marks omitted).

*Ctr. for Auto Safety*, 809 F.3d at 1096-97.

There is no question that the kinds of motions at issue here—for class certification and the exclusion of expert testimony—are related to the merits of an action and therefore subject to the common law right. *See, e.g., Ctr. for Auto Safety*, 809 F.3d at 1099 ("[P]lenty of technically nondispositive motions—including routine motions in limine—are strongly correlative to the merits of a case."); *Thompson v. Polaris Indus.*, 2019 U.S. Dist. LEXIS 81103, at *5–6 (D. Ariz. May 14, 2019) (applying the "compelling reasons" standard to *Daubert* motions to exclude expert testimony); *Cohen v. Trump*, 2016 U.S. Dist. LEXIS 69985, at *11 (S.D. Cal. May 27, 2016) (applying "compelling reasons" standard to unseal exhibits to class certification motion).

From what we see in the record, the parties have failed to carry their burden of showing compelling reasons for secrecy. For one thing, many of the exhibits are not just partially redacted but sealed in their entirety. *See generally* Dkt. 778-2; *see, e.g., Corvello v. Wells Fargo Bank N.A.*, 2016 U.S. Dist. LEXIS 11647, at *4 (N.D. Cal. Jan. 29, 2016) (ordering targeted redactions for sensitive financial information). For another, the proffered rationales for sealing do not constitute "compelling reasons." For instance, the mere fact that the document has been marked as "highly confidential," *see* Dkt. 519, is not a basis for sealing it. *Foltz*, 331 F.3d at 1136 (noting that "the presumption of access is not rebutted where, as here, documents subject to a protective order are filed under seal as attachments to a dispositive motion").

In other places, the parties defend the sealing as necessary to protect "trade secrets." But their arguments seem to rest on an overly generous view of what constitutes such a secret. *See, e.g.*, Dkt. 541 (suggesting that "licensing policies" and "contracts" constitute trade secrets). And they often assert that disclosure would cause "competitive harm" without explaining *how* that would happen. *See, e.g.*, Dkt. 525 at 4 (asserting that information is "sensitive" and that disclosure would be a "significant concern" and harmful, but failing to explain how competitors would

3

actually benefit from it). That cannot be enough to overcome the public's right of access. *See, e.g., Corvello*, 2016 U.S. Dist. LEXIS 11647, at *3 (rejecting sealing because defendant "offer[ed] only generic descriptions of the material, and conclusory statements that publication of the information 'could pose significant commercial harm'").

Unsealing is justified under the First Amendment for the same reasons. The First Amendment right applies to any court records that meet the "experience and logic" test—*i.e.*, there has been a history of public access and such access would play a "significant positive role" in the functioning of the judicial process. *Press-Enterprise Co. v. Superior Court of California*, 478 U.S. 1, 8-9 (1986); *Courthouse News Serv.*, 947 F.3d at 590. Once the right of access attaches, it is overcome only by showing that sealing "is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise*, 478 U.S. at 8-9; *Courthouse News Serv.*, 947 F.3d at 595.

As the Ninth Circuit explained in *Ctr. for Auto Safety*, 809 F.3d at 1096, access plays a beneficial role in civil matters by helping to assure the accountability of the federal courts. And there is a history of openness, either at common law or under the Constitution, in civil proceedings generally, including for pre-trial motion practice. *See id.* at 1098 (identifying non-dispositive civil motions that are presumptively public). The Ninth Circuit has not squarely decided whether the First Amendment right attaches to class certification motions. *Bohannon v. Facebook, Inc.*, 2019 U.S. Dist. LEXIS 7302, at *7 (N.D. Cal. Jan. 14, 2019). But—in light of the history of openness for such motions, which affect the rights of large swaths of the public—courts elsewhere have concluded that the right attaches. *See Tropical Sails Corp. v. Yext*, Inc., 2016 U.S. Dist. LEXIS 49029, at *9 (S.D.N.Y. Apr. 12, 2016) ("there is a qualified First Amendment right of access to the exhibits filed in connection with [the] motion for class certification").

In short, as a matter of both experience and logic, these sorts of civil motions properly trigger the First Amendment right of access. It follows that the parties' failure to offer "compelling reasons" for sealing at common law necessarily means that they have fallen short of meeting the constitutional standard as well: that the sealing is "essential to preserve higher values." *Bohannon*, 2019 U.S. Dist. LEXIS 7302 at *9 (the First

4

Amendment is "generally understood to provide a stronger right of access than the common law" (citation omitted)).

Finally, the public interest in these proceedings bears emphasis. The plaintiffs in this case allege that UFC, a multi-billion-dollar mixed martial arts ("MMA") company, has unlawfully suppressed competition and exploited the talents of its fighters. *See* Dkt. 208, Consolidated Amended Antitrust Class Action Complaint ("Compl.") ¶¶ 5, 6. UFC is one of the world's largest sports organizations, attracting millions of viewers for matches involving well-known fighters. It has significant business dealings with major corporations like the Walt Disney Company, Electronic Arts Inc., and Harley-Davison, Inc., and is regulated by entities like the California State Athletic Commission and the United States Anti-Doping Agency. Its activities are of interest to corporations, government entities, and the public at-large. These proceedings are also consequential to the world of antitrust law, itself a major source of public interest. *See* Kevin Draper, *Fighters Win Key Ruling in Case That Could Upend U.F.C.'s Business*, N.Y. Times (Dec. 10, 2020), https://nyti.ms/2MIvFYN.

The outcome of this case has significant consequences not only for the large class of plaintiffs in this case, but also for the entire MMA industry and the $75-billion North American sports industry. In addition to damages, plaintiffs seek equitable relief to remedy the effects of UFC's purported anticompetitive behavior. Compl. ¶ 172. This Court could impose structural modifications to the MMA that would protect fighter welfare and ensure minimum standards of transparency. These changes could mirror the federal legislation applied to the sport of boxing, which is regulated by the Professional Boxing Safety Act of 1996 and the Muhammad Ali Boxing Reform Act.15 U.S.C. § 6301, *et seq.* To date, MMA or other combat sports are not similarly regulated by the federal government. However, Congress has previously considered whether to amend the Professional Boxing Safety Act to include MMA. *See* Muhammad Ali Expansion Act, H.R. 5365, 114th Cong. (2016). The documents at issue in this proceeding could inform any future efforts by Congress to regulate the MMA industry.

In short, the public has a compelling interest in fully understanding the claims at issue in this case and the Court's adjudication of them. Access to judicial documents would undoubtedly serve that interest.

The Times thanks the Court for its consideration of this matter.

Respectfully submitted,

David McCraw*


(*not admitted in the District of Nevada)

cc: All counsel of record (via email)