January 8, 2021

*Via Email Transmission*

Dear Judge Boulware,

I would like to respond to the June 10, 2018 letter Ms. Grisby wrote on behalf of her clients, Zuffa, LLC contesting my request to "unseal the Motion for Class Certification and Related Exhibits."

I understand that not everything can be unsealed, that some material, such as trade secrets, will need to be protected. But it is my understanding that under the common law's standard, courts are to make sealing decisions by balancing the interests of the parties involved with those of the public and the press. In these cases, courts are to begin their analysis with a strong presumption in favor of access. If the Court has found there is a compelling interest to file under seal, then it needs to make sure it is tailored so that what is restricted from the public is as narrow as possible.

As Judge Vince Chhabria pointed out in his ORDER RE SANCTIONS for NEVRO CORP v BOSTON SCIENTIFIC CORPORATION, et al (Case No. 16-cv-06830-vc) there is a tendency for attorneys to go overboard in their sealing requests:

"At the hearing on the order to show cause, there was discussion of the fact that attorneys – particularly attorneys for corporate clients – are under great pressure to file motions to seal information that their clients would prefer to keep secret, even if there is no legitimate basis to keep the information secret. This is no doubt a significant issue for corporate lawyers, but the answer is not to file frivolous sealing requests. The answer is to firmly explain to their clients that litigation is a public process, and that the public has the right to know what the litigation is about, subject only to very limited exceptions. Mere embarrassment to a corporation is not one of those exceptions."

In the filings for Le et al v Zuffa, LLC, large portions have been filed under seal. This includes whole pages of Export Reports (see Exhibit 2 Redacted Expert Report of Professor Robert H. Topel (Oct 27, 2017), Exhibit 4 Redacted Expert Report of Paul Oyer (Oct 27 2017), Exhibit 5 Redacted Export Report of Dr. Hal Singer (Apr 6, 2018), Exhibit 6 Redacted Rebuttal Export Report of Dr. Hal Singer Apr 6, 2018), Exhibit 7 Redacted Expert Report of Dr. Andrew Zimbalist (Apr 6, 2018), deposition transcripts that are almost entirely black (see Exhibit 88 Deposition of Robert H. Topel (December, 2017, Exhibit 8 Redacted Excerpts from 30(b)(6) Deposition of

Kirk Hendrick on Fighter Contracts (Apr 6, 2018), Exhibit 10 Redacted Excerpts from Deposition of Denitza Batchvarova (Apr 6, 2018) Exhibit 11 Redacted Excerpts from 30(b)(6) Deposition of Lawrence Epstein on Acquisitions (Apr 6, 2018)), and many of the filings are completely sealed to the public (See Exhibit 86 , Second Supplemental Reply Report of Hal J. Singer, PHD (May 28, 2018), Exhibits 19-26, 29-33 (Apr 6, 2018). These are but a few examples. The sheer amount of filings that have been sealed or redacted leads me to ask if reasons to justify their sealing should be considered more narrowly.

According to Ms. Grisby the materials that have been made public have "provided Mr. Nash and other commenters with ample opportunity to follow and debate the merits and details of the class certification filings." In the letter, linked examples are provided. These include two articles -- one authored by me and one by Paul Gift -- a podcast hosted by the two of us with Jason Cruz, and my own Twitter feed. What is not noted in the letter is that in each of the examples cited and linked to, there are also comments referring specifically to just how much is being redacted.

1. Nash, John, *UFC Lawsuit: Expert for Plaintiff sets damages at up to $1.6 billion*, Bloody Elbow (Feb. 19, 2018), https://www.bloodyelbow.com/2018/2/19/17023756/expert-plaintiffs-sets-damages-ufc- class-action-suit-up-to-1-6-billion

In the article I write:
"So how did they came up with these estimates? It's hard to know exactly, since most of the reports look like this:" This is followed by an image of an almost completely redacted page.

2. Paul Gift, John S. Nash, et al., *Show Money 21: Takeaways from the UFC antitrust document dump and project Spearhead*, Bloody Elbow (Mar. 8, 2018), https://www.bloodyelbow.com/2018/3/8/17094806/show-money-21-ufc-antitrust-class- certification-daubert-project-spearhead-mma-editorial

On the Bloody Elbow page description of the video Paul Gift writes: "Getting a little nerdy on some of the expert witness analyses in the case, from what we could see since much is redacted."

In the video itself, the three of us repeatedly mention that our analysis is limited because so much has been redacted. Here are some examples:

Paul Gift at the one min 47 sec mark of the video:
"Jason's been trying to read through some of it. There's so much information, a lot of it is redacted so we don't have perfect information but we're gonna try to give you our thoughts on what we could see."

Me at the 8 min 35 sec mark in the video:
"The biggest takeaway for me is that so much is redacted it's almost impossible for me to have judgments on stuff because some things have seemed like strong arguments followed by weak arguments followed by "at that moment Joe Silva said to the plaintiff and" then it's redacted you have no clue what's happening. It's a little frustrating in that sense because it's like you know what's being discussed but you can't see it so you can't make a judgment. You're like there's information just sitting under some black marker we can't look at that would really open,  would really make it easier, really inform us what's going on behind the scenes at MMA and we don't get access to that.

Jason Cruz at the 15 min 19 sec mark of the video:
"You know it was so hard to form -- with a lot of the redactions it's hard for me to formulate an opinion upon his damages report.

3. Gift, Paul, *Antitrust Suit: Fighters File For Class Certification, UFC Wants 'Junk Science' Excluded*, Forbes (Feb. 17, 2018), https://www.forbes.com/sites/paulgift/2018/02/17/ufc-antitrust-lawsuit-class-certification-junk-science-excluded-mma-news/#124995452c73

Several times in the article Gift mentions that large portions have been redacted:

"In a heavily redacted class certification filing."

"Quotes from former UFC matchmaker Joe Silva and current matchmaker Sean Shelby (likely from depositions) were cited in the same part of the document, but fully redacted."

"Zimbalist's final calculation of damages was redacted and is still unknown at this time."

4. I have engaged in discussions with the public about the case on Twitter but I have also Tweeted about how much was being sealed or redacted.  https://mobile.twitter.com/heynottheface/status/964717450783744000

Paul Gift too also commented about the redactions on Twitter, writing that "Mike Mersch depo excerpt is a real page-turner." with an image of a fully blacked out page from Mersch's deposition attached.  https://mobile.twitter.com/MMAanalytics/status/982669122558353408

The three of us (Paul Gift, Jason Cruz, and I) are not the only members of the media that have commented about what is being redacted. See Mullin. Liz, "Lawsuit: UFC fighters paid 'much lower' share than other sports." Sports Business Journal (Mar 22, 2018), https://www.bizjournals.com/losangeles/news/2018/03/22/lawsuit-ufc-fighters-paid-much-lower-share-than.html

In her article, Mullin notes:

"Much of the information in the case filings is redacted, as there are orders or agreements to keep certain information under seal."

Mullin also speculates based on what is not sealed, "that the percentage of UFC revenue the fighters receive is below 33 percent." I estimated in my Feb 19 Bloodyelbow.com article that the fighters' share of revenue was around 17 percent. This was also based on the available, unsealed, filings. In a case where much seems to center around wage shares and comparison to other sports leagues, the fact that our two percentages were so widely different suggests that the information left unsealed is perhaps not complete enough to make reliable estimates.

It is also my opinion that what has been redacted does not seem narrowly tailored to protect proprietary and commercially sensitive information. For example, a Moody's report that is available to the public on the internet (https://www.moodys.com/research/Moodys-Changed-Zuffa-LLCs-dba-Ultimate-Fighting-Championship-or-UFC--PR_210184), is cited in footnote

383 in Singer's August 31, 2017 Export Report, but the body of the page where that Moody's excerpt or quote that the footnote refers to has been completely redacted.

Another example: My own article "Why do boxers make more than MMA fighters?" appears twice in the footnotes (Footnote 91and footnote 405) of Singer's Report. But again, while the footnote shows the source, the actual text has been redacted.

What is being redacted in both these examples is not the content of the source material, since that is available to the public in the cited material, but the context of how it is being used by the defense or plaintiffs.

There are also several examples were the contents of a Deutsche Bank memorandum or report have been redacted. At least one Deutsche Bank document that is cited in Hal Singer's Expert Report has been seen and quoted by members of the media, including myself. (see Nash, John, *What do we know about the UFC's finances?* series on Bloody Elbow https://www.bloodyelbow.com/2015/10/26/9608154/what-do-we-know-about-the-ufcs-finances) Considering that these reports are not internal documents but instead were prepared to be seen by potential lenders (and have been acquired and seen by members of the media), it seems unlikely that they would include trade secrets or commercially and strategically sensitive information that needs to be sealed.

Zuffa also seems to be asking for information to be sealed that in the past they have released on their own accord when it suits them. In a 2011 interview, Lorenzo Fertitta told ESPN that between 2005 and 2011 the company had paid "more than $250 million" to the fighters during that timeframe, a total that he claims would be "not far off what the other sports leagues pay as a percentage of revenue. The UFC even posted the full interview with the quote.
https://www.youtube.com/watch?v=ck0Lb8pDmVg

A source from the UFC apparently told a reporter for the Guardian that "In 2015, when its revenue was around $600m, Zuffa spent 'over $100m' on 'athlete costs including compensation, insurance, medical and travel'." (See Jenkins, Tom, *The fight game reloaded: how MMA and the UFC conquered the world*, The Guardian, Mar 4, 2016

https://www.theguardian.com/sport/2016/mar/04/the-fight-game-reloaded-how-mma-conquered-world-ufc)

Zuffa has also repeatedly reported on their own fighters' earnings when it suited them. Examples include Quinton "Rampage" Jackson (see Guillen, Adam, *Dana White" Rampage Jackson has made $15.2 million in the career earnings fighting for the UFC,* MMA Mania, Jan 24, 2013 https://www.mmamania.com/2013/1/24/3913294/dana-white-rampage-jackson-career-earnings-ufc-millions), Jon Fitch (see Morgan, John, *Dana White: 'Delusional' Jon Fitch made $302k in UFC discretionary bonus money,* MMA Junkie, Jun 7, 2013 https://mmajunkie.com/2013/06/dana-white-delusional-jon-fitch-made-302k-in-ufc-discretionary-bonus-money), Wanderlei Silva (See Wilcox, Nate, *Dana White:* 'Wanderlei Silva was paid $9.7 million' by the UFC, Blood Elbow, Sep 27, 2014 https://www.bloodyelbow.com/2014/9/27/6853837/dana-white-wanderlei-silva-was-paid-9-7-million-by-the-ufc) and Randy Couture (see Swift, Adam, *UFC Press Conference: Couture's Compensation Roughly $3.0 Million This Year,* MMA Payout, Oct 30, 2007 http://mmapayout.com/2007/10/ufc-press-conference-coutures-compensation-roughly-30-million-this-year/).

That Zuffa would request that information regarding fighter pay be sealed because it is commercially and strategically sensitive information is not supported by their past actions in which they freely shared the details of fighter pay.

In addition, it seems pointless at this point to protect what the wage share of the revenue is for UFC fighters. Over the years, enough information has been produced to make estimates that should be close to what Zuffa or the Plaintiffs calculate the percentage to be. Examples of these estimates include 13.6%-16.3% revenue for fighter compensation for the period 2005-2011 (see Nash, John, *What investors are being told about UFC revenues*, Bloody Elbow, Oct 20, 2015 https://www.bloodyelbow.com/2015/10/20/9547333/what-deutsche-bank-moodys-and-standard-poors-tell-us-about-the-ufc), at least 16% of revenues in compensation, insurance, medical and travel' for the year 2015 (See Jenkins, Tom, *The fight game reloaded: how MMA and the UFC conquered the world*, The Guardian, Mar 4, 2016 https://www.theguardian.com/sport/2016/mar/04/the-fight-game-reloaded-how-mma-conquered-world-ufc), approximately 15% for the year 2013-

2015 (see Nash, John *What do UFC fighters make?,* Bloody Elbow, Sep 29, 2016 https://www.bloodyelbow.com/2016/9/29/13040024/ufc-fighter-pay-union-association) and 17% of total revenue (see Nash, John, *UFC Lawsuit: Expert for Plaintiff sets damages at up to $1.6 billion*, Bloody Elbow (Feb. 19, 2018), https://www.bloodyelbow.com/2018/2/19/17023756/expert-plaintiffs-sets-damages-ufc- class-action-suit-up-to-1-6-billion)

In addition to these estimates, documents prepared by Zuffa have shown similar percentage. Dave Meltzer, using a document that Zuffa had prepared for their sale that year, reported in the July 18, 2016 Wrestling Observer that the UFC spent "in the range of $75 million to $85 million in pay for fighters" in 2015, a year the company grossed "$608,692,000". This corresponds to a 12% to 14% share for the fighters. Also, the UFC's Lender Presentation (July 22, 2016) left off $153 million in company expenses that would have included fighter compensation, travel, lodging, insurance, and USADA drug testing. All of these consistently show that the wage share for fighters has been below 25%, the degree to which dependent on what beyond purse payouts is classified as fighter compensation.

It is for all these reasons that I request that the Court unseal all but the most commercially and strategically sensitive information for the Motion for Class Certification and all related materials.

Finally, it is true that I did not notify third parties of my request. I am not an attorney, nor do I have any legal training, so I was ignorant to the fact that I would be expected to CC them. If the Court would be willing to share a list of the all the third parties' emails I will send them this letter.

Sincerely,
**John S. Nash**
**VOX Media's SB Nation**
*Combat Sports Blog*
**Bloodyelbow.com**