# EXHIBIT 7

Joint Order Directing Attorney Loyst Fletcher to Submit a Proposed Corrective
Communication for Court Approval and Further Orders Filed on February 18,
2021 (ECF No. 1431)

APP000096

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

*In re* Flint Water Cases.

Judith E. Levy
United States District Judge

_____/

This Order Relates To:

ALL CASES

_____/

### STATE OF MICHIGAN

### IN THE CIRCUIT COURT FOR THE COUNTY OF GENESEE

**IN RE FLINT WATER LITIGATION**

**CASE NO. 17-108646-NO**
**JUDGE JOSEPH J. FARAH**

**JOINT ORDER RE**
**ATTORNEY**
**LOYST FLETCHER**

_____

At a session of said Court held in the City of
Flint, County of Genesee, State of Michigan
on the 18th day of February, 2021.

PRESENT:  HONORABLE JOSEPH J. FARAH, CIRCUIT JUDGE

## JOINT ORDER DIRECTING ATTORNEY LOYST FLETCHER TO SUBMIT A PROPOSED CORRECTIVE COMMUNICATION FOR COURT APPROVAL AND FURTHER ORDERS

APP000097

The subject of this Order is Loyst Fletcher, Jr. of the law firm Loyst Fletcher, Jr. & Associates located in Flint, Michigan. On approximately January 17, 2021, Mr. Fletcher mailed a packet related to the Flint Water Cases[1] and partial settlement to 298 individuals and/or entities in the Flint, Michigan area. This incident was first brought to both the Federal Court and the Genesee County Circuit Court in the State of Michigan's (the State Court) (the Federal and State Court are jointly referred to in this opinion as "the Court") attention after several Plaintiffs' attorneys in the Flint Water Cases case informed the Court that Mr. Fletcher had solicited their clients through this packet.

Upon careful review of the packet, the supplemental information that Mr. Fletcher provided to the Federal Court under seal (No. 16-10444; ECF No. 1420), and the Special Master's report and analysis of that information (No. 16-10444; ECF No. 1426), the Court finds that: (1) the packet contains incorrect and misleading information regarding the partial settlement, which is highly likely to have a detrimental effect on many individuals' decision regarding whether to join the settlement; (2)

---

[1] The Flint Water Cases include many separate lawsuits pending in the Genesee County Circuit Court, the Michigan Court of Claims, and the United States District Court for the Eastern District of Michigan.

2

APP000098

Mr. Fletcher likely violated the Michigan Rules of Professional Conduct by, for his own pecuniary gain, improperly soliciting various individuals who had already retained law firms other than Mr. Fletcher's; and (3) Mr. Fletcher's retainer agreement contains an illegally excessive contingency fee provision in likely violation of the Michigan Court Rules and the Michigan Rules of Professional Conduct.

Accordingly, Mr. Fletcher is ORDERED to mail a Federal and State Court-approved retraction and corrective communication to the 298 individuals and entities who received his initial letter. To effectuate this corrective communication, Mr. Fletcher is first ORDERED to file a draft communication with the Federal and State Courts for review and approval for the reasons and in the manner set forth below.[2] Finally, Mr. Fletcher is ORDERED to dissolve all attorney retainers that resulted from this improper communication.

---

[2] Mr. Fletcher is counsel to a group of Plaintiffs in the State Court Flint Water cases who are known as the *Collins* Plaintiffs. The *Collins* Plaintiffs allege unjust enrichment against the City of Flint based on their payment of water bills during the Flint Water Crisis. The *Collins* Plaintiffs filed a motion to intervene in the Federal Court cases (No. 16-10444; ECF No. 1355), which the Federal Court denied. (No. 16-10444; ECF No. 1400.) On February 9, 2021, the *Collins* Plaintiffs filed a Notice of Appeal of that Order, which is pending with the Sixth Circuit Court of Appeals. (No. 16-10444; ECF No. 1421.)

APP000099

## I. Background

Recently, the Court learned that Mr. Fletcher sent an unsolicited packet through U.S. Mail to at least one resident of Flint, Michigan concerning the Flint Water Crisis. (*See* No. 16-10444; ECF No. 1409.) The recipient, Mr. Mitchell Harris, had already retained counsel of his choosing (the law firm Napoli Shkolnik PLLC) to represent him in the Flint Water Cases. (*Id.* at PageID.54547.) The packet Mr. Harris received from Mr. Fletcher, which will be discussed in further detail below, contains several false, misleading, and improper statements related to the partial settlement in these cases. The packet also presented Mr. Harris with a retainer agreement that included a 40% contingent fee for representation in connection with the "Flint Water Crisis."

The Court then learned that approximately five other residents of Flint, Michigan, at least some of whom  had retained counsel of their choosing (other than Mr. Fletcher or his firm), also received nearly identical packets from Mr. Fletcher. These individuals also indicated through their counsel that the packets from Mr. Fletcher were unsolicited. (No. 16-10444; ECF No. 1409.) To date, the Federal Court has received at least six of these packets—which the individuals signed

4

and forwarded to the Federal Court's Ann Arbor address as directed by Mr. Fletcher—including signed retainer agreements for three people.

On February 5, 2021, the Court held a hearing on this matter, with both the Hon. Judith E. Levy and the Hon. Joseph J. Farah presiding, which Mr. Fletcher attended. At the hearing, Mr. Fletcher admitted that he had mailed the packets at issue. He also stated at the hearing that he had sent similar packets to approximately 200 other individuals and/or entities.[3]

On February 8, 2021, the Federal Court issued an Order requiring that Mr. Fletcher file under seal a list of all of the names and contact information for all of the individuals and/or entities included in Mr. Fletcher's mailing, as well as a list of those who signed his retainer agreement as a result of the mailing. (No. 16-10444; ECF No. 1418.) Mr. Fletcher submitted this information to the Federal Court on February 9, 2021. (No. 16-10444; ECF No. 1420.)

---

[3] At the time Mr. Fletcher made this statement at the hearing, the Court expressed concern that 200 was large number of individuals and/or entities to have received a packet with incorrect and misleading information regarding the partial settlement. Worse yet, however, 200 turned out to be a gross underestimate: Mr. Fletcher sent the packet to 298 individuals and/or entities.

5

Special Master Deborah Greenspan maintains census data in the Federal Flint Water Cases under the Amended Order Regarding Collection of Data. (No. 16-10444; ECF No. 673.) The census data includes lists of individuals who have retained lawyers in these cases. At the Federal Court's request, Special Master Greenspan compared Mr. Fletcher's list of 298 names, addresses, and other contact information against the information in census data. Special Master Greenspan issued a written report regarding her results on February 16, 2021. (No. 16-10444; ECF No. 1426.)

Of the 298 names on Mr. Fletcher's mailing list, 103 of them match names and addresses of persons listed as clients of firms other than Mr. Fletcher's. Thirty-four match by name only, or by similar names and addresses to persons listed as clients of various firms other than Mr. Fletcher's. (*Id.* at PageID.54976.)

Mr. Fletcher also submitted a list of "clients" who signed his retainer agreement contained in the packet. (No. 16-10444; ECF No. 1420.) There are 51 names on that list. In short, 104 of the mailed names—including 19 of Mr. Fletcher's "clients"—were already

6

represented by other firms at the time that Mr. Fletcher solicited and/or retained them. (*Id*.)

## II. Legal Standard

In cases such as this where there is a class component, the Court has a special duty to ensure that attorney communications are clear, accurate, free of misrepresentations, and made in the interest of providing proper legal representation. This is particularly true where, as here, a final ruling has not been made regarding class certification. "Misrepresentations or other misconduct in communicating with the class may impair the fairness and adequacy of representation under Rule 23(a)(4), may affect the decision to appoint counsel under proposed Rule 23(g), and may be prohibited and penalized under the court's Rule 23(d)(2) plenary protective authority." Manual for Complex Litigation, § 21.12 page 249. (4th Ed. 2004).

The Court has broad power under Rule 23 of the Federal Rules of Civil Procedure to manage pre-certification notice and communication. Rule 23(d)(1) provides that "in conducting an action under this rule, the court may issue orders that . . . (C) impose conditions on the representative parties or on intervenors; . . . or (E) deal with similar

7

procedural matters." Fed. R. Civ. P. 23(d)(1)(C), (E). Inherent in these powers is the ability to limit, modify, or otherwise manage notice to and communication with actual or putative class members.

"Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). Where the Court uses its discretion to limit communications, such an order should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* at 101. Proper analysis by the district court "should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." *Id.* at 102.

The Sixth Circuit has identified three categories of potential abuse associated with an attorney's communications to potential class members: "(1) the susceptibility of nonparty class members to solicitation amounting to barratry; (2) the increased opportunities of the parties or counsel to 'drum up' participation in the proceeding; and (3) unapproved communications to class members that misrepresent the status or effect

8

of the pending action." *Williams v. U.S. Dist. Court*, 658 F.2d 430, 436 (6th Cir. 1981) (citing *Gulf Oil Co.*, 452 U.S. at 100 n.12).

Additionally, lawyers are governed by rules of professional responsibility and ethics when communicating with individuals and entities who are not their clients. For example, under the Michigan Rules of Professional Conduct, "a lawyer shall not solicit professional employment from a prospective client with whom the lawyer has no family or prior professional relationship when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain." Mich. R. Prof. Cond. 7.3(a). Lawyers are also governed by the Michigan Court Rules related to contingency fees. Rule 8.121 states:

> (A) Allowable Contingent Fee Agreements. In any claim or action for personal injury or wrongful death based upon the alleged conduct of another . . . , in which an attorney enters into an agreement, expressed or implied, whereby the attorney's compensation is dependent or contingent in whole or in part upon successful prosecution or settlement or upon the amount of recovery, the receipt, retention, or sharing by such attorney, pursuant to agreement or otherwise, of compensation which is equal to or less than the fee stated in subrule (B) is deemed to be fair and reasonable. The receipt, retention, or sharing of compensation which is in excess of such a fee shall be deemed to be the charging of a "clearly excessive fee" in violation of MRPC 1.5(a), unless such fee is

9

APP000105

received as a result of an award of attorney fees payable pursuant to MCL 500.3148, or other award or sanction made pursuant to statute, court rule, or the common law.

(B) Maximum Fee. The maximum allowable fee for the claims and actions referred to in subrule (A) is one-third of the amount recovered.

## III. Analysis

Mr. Fletcher's communication to the 298 individuals and/or entities must be corrected for three reasons. First, Mr. Fletcher's letter contains patently incorrect and misleading statements related to the Master Settlement Agreement ("MSA"). This incorrect information is particularly damaging because it interferes with the recipients' ability to meaningfully engage in the time-limited, important decision-making process of whether to participate in the partial settlement. Second, based on the representations by Co-Lead Class Counsel and Co-Liaison Counsel for Individual Plaintiffs, at least some of their clients who received Mr. Fletcher's packets had never contacted Mr. Fletcher and did not have a familial or prior professional relationship with him before receiving the packet, which raises a serious potential breach of the Michigan Rules of Professional Conduct. Third, Mr. Fletcher's 40% contingency fee in his retainer agreement violates Michigan Court Rule 8.121(b), which caps

10

contingency fees in cases that involve personal injury and wrongful death —such as this one—to a maximum of one-third of the amount recovered.[4]

The Court will address each violation below.

## A. Incorrect, Misleading, and Improper Information Regarding the Proposed Settlement

Mr. Fletcher's packet contains a letter that Mr. Fletcher encourages its recipients to send to the Federal Court. That letter states, in relevant part:

Re:   Flint Water Crisis

Dear Judge Levy and all concerned,

I am a resident of the City of Flint. I paid water bills between January 1st, 2017 and June 2019. I acknowledge that I have no medical records, nor have I had a lead test or bone lead test between May 16, 2015 and August 2016. I have no proof of any damages to my residential property as is required in Section V., p. 38 and 39 entitled "Property Damages and Business Economic Loss Categories."

As such, given the $1,000.00 maximum limit, I intend to opt out of the Settlement Agreement and request of you the 2% relief as filed by my Attorney Loyst Fletcher, Jr.

---

[4] The "Flint Water Crisis" litigation before both the Federal and State Court seeks damages for personal injury, property damage, and commercial losses.

APP000107

Further, as a water paying adult resident of the City of Flint,
I object to the Amended Settlement Agreement as being
totally unfair to the adults that also suffered.

(ECF No. 1409-1, PageID.54567.)

This letter is rife with material misrepresentations. First is the
statement, "I have no proof of any damages to my residential property as
is required in Section V., p. 38 and 39 entitled 'Property Damages and
Business Economic Loss Categories.'" This statement incorrectly states
that a person or entity will be unable to recover under the partial
settlement if they do not have proof of "damages to [their] residential
property," The MSA speaks for itself, where it plainly states, *on the very
pages cited by Mr. Fletcher*, that recovery can be had based on "any
document showing proof of residential real property ownership or of
being a residential lessee in the City of Flint" during the relevant time
period. There is nothing whatsoever in the MSA that indicates
individuals or entities filing a claim under the property recovery category
must have proof of *damages* to their property in order to recover.[5]

---

[5] It is also possible that the statements in the letter could be detrimental to the
individual in a future proceeding.

12

Second, the letter also contains the statement "I intend to opt-out of the settlement." The Federal Court's order granting preliminary approval of the partial settlement adopts the MSA's processes and procedures for opting out of the settlement and specifies the deadline for doing so; and this letter could not, in any way, be construed to satisfy those procedures. Individuals who sent the Federal Court this letter may falsely believe that they have submitted their official opt-out, when they have not in fact done so. This misrepresentation is particularly egregious because it could detrimentally impact some individuals' abilities to pursue significant legal claims in the future.

Third, the letter states: "[I] request of you the 2% relief as filed by my Attorney Loyst Fletcher, Jr." The Fletcher letter could therefore have misled some individuals into thinking that this "2% relief" was forthcoming. However, at the hearing, Mr. Fletcher acknowledged that he had filed no such request for relief. (ECF No. 1425.)

Fourth, the letter also states, "[A]s a water paying adult resident of the City of Flint, I object to the Amended Settlement Agreement as being totally unfair to the adults that also suffered." This statement is misleading because there is a clear process and procedure in the MSA for

objecting to the settlement – and this procedure has been embodied in the Federal Court's order of preliminary approval; the Fletcher-authored letter is not the proper form for an objection and it will not serve as an objection. People sending this letter to the Federal Court could very reasonably believe that it constitutes their objection when it does not. Further, as set forth above, the letter already contains a supposed opt-out provision. Under the MSA individuals who exercise an opt-out cannot also object to the settlement; Fletcher's letter incorrectly indicates that individuals can do both.

Fifth, Mr. Fletcher also admitted at the hearing that he did not know whether people who received his packet had medical records or not; yet his form letter would have individuals represent to the Federal Court that they "have no medical records." If a person indeed has medical records, and has made the representation to the Federal Court that Mr. Fletcher authored for them, those individuals could be deeply harmed if they would have otherwise qualified for settlement money or other recovery in litigation based on their medical history.

14

Sixth, Mr. Fletcher also acknowledged at the hearing that he did not know whether the individuals sending his letter had a bone-lead or blood lead-level test, which is problematic for the reason just described.

In other words, every sentence that Mr. Fletcher encouraged these individuals to state to the Federal Court are either unverified, incorrect, misleading, or improper.

## B. Potential Violations of the Michigan Rules of Professional Conduct

Michigan Rule of Professional Conduct 7.3 states:

7.3 Solicitation

(a) A lawyer shall not solicit professional employment from a person with whom the lawyer has no family or prior professional relationship when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain. The term "solicit" includes contact in person, by telephone or telegraph, by letter or other writing, or by other communication directed to a specific recipient, but does not include letters addressed or advertising circulars distributed generally to persons not known to need legal services of the kind provided by the lawyer in a particular matter, but who are so situated that they might in general find such services useful, nor does the term "solicit" include "sending truthful and nondeceptive letters to potential clients known to face particular legal problems" as elucidated in *Shapero v Kentucky Bar Ass'n*, 486 US 466, 468; 108 S Ct 1916; 100 L Ed 2d 475 (1988).

15

(b) A lawyer shall not solicit professional employment from a person by written or recorded communication or by in-person or telephone contact even when not otherwise prohibited by paragraph (a), if:

> (1) the person has made known to the lawyer a desire not to be solicited by the lawyer; or

> (2) the solicitation involves coercion, duress or harassment.

At the hearing, Mr. Fletcher indicated that he sent the packet only to individuals who are not his clients. He stated that he included the retainer with the packet so that individuals could become his clients.

Mr. Fletcher claimed that the individuals who received the letters all called him first before he sent out his letter. He admitted that he did not ask any of the individuals whether they already had a lawyer. He also disagreed with the Court that it was his duty to ascertain this information before talking with any potential clients. However, Michigan Rule of Professional Conduct 4.2 states:

4.2 Communication with a Person Represented by Counsel

(a) In representing a client, a lawyer shall not communicate about the subject of the representation with a person whom the lawyer knows to be represented in the matter by another lawyer, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

16

It is unclear how Mr. Fletcher could know whether he is in violation of Rule 4.2 if he disagrees that it imposes a duty to ask an individual whether they are already represented by other counsel.

Moreover, the fact remains that at least some individuals advised their lawyers that they did not contact Mr. Fletcher in any way before receiving the unsolicited packet. Mr. Fletcher's sealed submission to the Federal Court did not include any indications or annotations regarding when the individuals allegedly called him. If the remaining 292 individuals did in fact call Mr. Fletcher before he mailed them the packet, he has not provided a basis for that assertion.

The Michigan Attorney Grievance Commission ("AGC") is the investigative and prosecutorial arm for allegations of attorney misconduct; not the Court. The AGC has jurisdiction over all Michigan-licensed attorneys. Whether Mr. Fletcher violated the Michigan Rules of Professional Conduct or any other ethical rules is up to that entity to decide. But at the very least, Mr. Fletcher does not appear to the Federal and State Court to have practiced the highest standards of professionalism and integrity, as is required for all licensed attorneys in Michigan.

APP000113

## C. Illegal Contingency Fee

Mr. Fletcher's retainer agreement contains a 40% contingency fee. Taken as a whole, Mr. Fletcher seeks 2% of the $641,500,000 proposed settlement, which comes to $12,830,000. A 40% contingency fee on $12,830,000 would result in $5,132,000 for Mr. Fletcher. Particularly when Mr. Fletcher would stand to gain potentially over $5 million in attorney fees, it is quite likely that a significant purpose of the mailing is his own pecuniary gain.

As set forth above, Michigan Court Rule 8.121 prohibits contingency fees that are greater than one-third of the amount recovered for personal injury and wrongful death cases. Such fees are "clearly excessive fees" in violation of Michigan Rule of Professional Conduct 1.5(a), which states, in relevant part, "A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee."

At the hearing, Mr. Fletcher indicated that 40% is his standard contingency fee for non-personal injury cases. But the facts here do not indicate that Mr. Fletcher views these potential Flint Water clients as purely non-personal injury clients. First, his retainer agreement states that the representation would be for the "Flint Water Crisis, and

18

empowers [Mr. Fletcher's] action as may be advisable in his judgment."
(ECF No. 14-1, PageID.54568.) The "Flint Water Crisis" cases include
personal injury and wrongful death cases, and Mr. Fletcher's description
does not limit his representation to non-personal injury or non-wrongful
death cases in any way.

At the hearing, Mr. Fletcher indicated that he represents other
individuals in the Flint Water Cases beyond the *Collins* Plaintiffs—such
as children. He made clear that these clients are "separate and apart"
from his water bill-related clients. He also stated that he has clients
"under the class action" that have retained him. (No. 16-10444; ECF No.
1425.) Accordingly, by his own admission, Mr. Fletcher's role as an
attorney as it relates to these individuals is not limited to non-personal
injury or wrongful death cases. Accordingly, Mr. Fletcher's 40%
contingency fee, if used in those cases, is inappropriate and clearly
excessive even by his own standard.

For the many foregoing reasons, Mr. Fletcher's retainer agreement
must be dissolved. If those individuals still wish to retain Mr. Fletcher
given these facts, any such retainer agreement must be rewritten to

APP000115

either limit the representation to non-personal injury and wrongful death, or to limit Mr. Fletcher's fee to one that is not excessive.

## IV. Conclusion

For the reasons set forth above, Mr. Fletcher is ORDERED to submit to the Federal and State Court a draft corrective response to the 298 individuals and/or entities for both Courts' approval **no later than Monday February 22, 2021 at noon**. The letter should explain and retract all misstatements as set forth above. Mr. Fletcher must also submit a separate draft addressing the individuals who signed his illegal retainer agreement indicating that the retainer is dissolved.

Another Order will follow with further direction once the Courts have reviewed and approved the corrective communication.

All other provisions in the Federal Court's February 8, 2021 Order remain in full force and effect, including the provisions that enjoin Mr. Fletcher from making, providing, or disseminating any future communications with or to any and all putative class members, including members of the proposed settlement class or any individuals currently represented by other lawyers in the proposed partial settlement, where such contact or communication contains information that is incorrect,

20

misleading, or improper related to the Flint Water litigation or partial settlement.

The Special Master is authorized to post in a secure electronic site the list of individuals on Mr. Fletcher's list who are represented by counsel other than Mr. Fletcher according to the census data collected by the Special Master. The relevant law firms shall be given access to the site so that they may identify the clients who received the letter. Mr. Fletcher shall also be given access to the site so that he is informed of the individuals who are represented by other counsel.

IT IS SO ORDERED.

Dated: February 18, 2021      s/Judith E. Levy
Ann Arbor, Michigan      JUDITH E. LEVY
                         United States District Judge

                         /s Joseph J. Farah
                         JOSEPH J. FARAH
                         Circuit Judge
                         Genesee County Circuit Court

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 18, 2021.

APP000117

s/William Barkholz
WILLIAM BARKHOLZ
Case Manager

22

APP000118