1   Geoffrey M. Klineberg, Esq. (*Pro Hac Vice Motion Pending*)
    District of Columbia Bar No. 444503
2   Joshua D. Branson, Esq. (*Pro Hac Vice Motion Pending*)
    District of Columbia Bar No. 981623
3   KELLOGG HANSEN TODD FIGEL &
4       FREDERICK, P.L.L.C.
    Sumner Square
5   1615 M Street, N.W. Suite 400
    Washington, D.C. 20036
6   Tel: (202) 326-7900
7   jbranson@kellogghansen.com
    *Attorneys for Sparacino PLLC*

8

9   Brian D. Shapiro, Esq. (proposed local counsel)
    Nevada Bar No. 5772
10  LAW OFFICE OF BRIAN D. SHAPIRO, LLC
    510 S. 8th Street
11  Las Vegas, NV 89101
    Tel:  (702) 386-8600
12  brian@brianshapirolaw.com
13  *Attorney for Sparacino PLLC*

14

15                    **UNITED STATES DISTRICT COURT**

16                          **DISTRICT OF NEVADA**

17  Cung Le, Nathan Quarry, Jon Fitch, Brandon    **Case No. 2:15-cv-01045-RFB-BNW**
    Vera, Luis Javier Vazquez, and Kyle
18  Kingsbury, on behalf of themselves and all
    others similarly situated,

19                 Plaintiffs,                     **SPARACINO PLLC'S OPPOSITION TO**
                                                   **PLAINTIFFS' EMERGENCY MOTION TO**
20                                                 **COMPEL SPARACINO PLLC TO STOP**
    v.                                             **COMMUNICATING WITH ABSENT**
21                                                 **MEMBERS OF THE PROPOSED CLASS**
    Zuffa, LLC, d/b/a Ultimate Fighting            **AND FOR RELATED RELIEF**
22  Championship and UFC,

23                 Defendant.

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION AND SUMMARY ...................................................................................... 1

BACKGROUND ......................................................................................................................... 2

      A.    The First Mailer ................................................................................................ 2

      B.    The Second Mailer ........................................................................................... 4

      C.    Scott+Scott's Withdrawal And This Motion ............................................. 5

ARGUMENT ............................................................................................................................... 5

I.     SPARACINO'S MAILERS WERE NOT MISLEADING OR COERCIVE ...................... 5

      A.    Sparacino's Mailers Did None Of The Things Courts Have Found Improper .......... 6

      B.    Interim Class Counsel's Accusations About The Mailers Are Meritless .................. 9

II.    RULE 4.2 OF THE RULES OF PROFESSIONAL CONDUCT DOES NOT APPLY UNDER THESE CIRCUMSTANCES ................................................................... 12

III.   THE COURT SHOULD DENY INTERIM CLASS COUNSEL'S REQUESTED RELIEF ......................................................................................................................... 15

CONCLUSION ......................................................................................................................... 18

i

SPARACINO PLLC'S OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION TO COMPEL SPARACINO PLLC TO STOP COMMUNICATING WITH ABSENT MEMBERS OF THE PROPOSED CLASS AND FOR RELATED RELIEF
Case No. 2:15-cv-01045-RFB-BNW

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**CASES**

4

*Atari, Inc. v. Superior Court,*

5

    212 Cal. Rptr. 773 (Cal. Ct. App. 1985) ...................................................................................12

6

*Babbitt v. Albertson's, Inc.,*

7

    1993 WL 150300 (N.D. Cal. Mar. 31, 1993) ..........................................................................12

8

*Bobryk v. Durand Glass Mfg. Co.,*

9

    2013 WL 5574504 (D.N.J. Oct. 9, 2013) .................................................................................15

10

*Camp v. Alexander,*

11

    300 F.R.D. 617 (N.D. Cal. 2014) ....................................................................................16, 17

12

*Castaneda v. Burger King Corp.,*

13

    2009 WL 2382688 (N.D. Cal. July 31, 2009) .........................................................................14

14

*Chalian v. CVS Pharm., Inc.,*

15

    2020 WL 7347866 (C.D. Cal. Oct. 30, 2020) ...........................................................................7

16

*Chicago Flood Litig., In re,*

17

    682 N.E.2d 421 (Ill. App. Ct. 1997) ........................................................................................13

18

*Community Bank of N. Va., In re,*

19

    418 F.3d 277 (3d Cir. 2005) ...............................................................................................6, 16

20

*David v. Signal Int'l, L.L.C.,*

21

    735 F. Supp. 2d 440 (E.D. La. 2010) ......................................................................................13

22

*Domingo v. New England Fish Co.,*

23

    727 F.2d 1429 (9th Cir.), *modified,* 742 F.2d 520 (9th Cir. 1984) .............................................6

24

*Dondore v. NGK Metals Corp.,*

25

    152 F. Supp. 2d 662 (E.D. Pa. 2001) ......................................................................................14

26

*EEOC v. Albertson's Inc.,*

27

    2006 WL 8460350 (D. Colo. Oct. 4, 2006) ............................................................................15

28

ii

*Georgine v. Amchem Prods., Inc.*,

    160 F.R.D. 478 (E.D. Pa. 1995) ...................................................................................7

*Gibbons v. CIT Grp./Sales Fin., Inc.*,

    400 S.E.2d 104 (N.C. Ct. App. 1991) ........................................................................12

*Goin v. United States*,

    2015 WL 1577771 (S.D. Ill. Apr. 2, 2015) ...................................................................9

*Good v. West Va.-Am. Water Co.*,

    2016 WL 6404006 (S.D. W. Va. Oct. 26, 2016).................................................14, 15

*Greenfield MHP Assocs., L.P. v. Ametek, Inc.*,

    2018 WL 538961 (S.D. Cal. Jan. 24, 2018) ...............................................................13

*Gulf Oil Co. v. Bernard*,

    452 U.S. 89 (1981) ...................................................................................................6, 16

*Hammond v. City of Junction City, Kan.*,

    2002 WL 169370 (D. Kan. Jan. 23, 2002) ................................................................13

*Jones v. Jeld-Wen, Inc.*,

    250 F.R.D. 554 (S.D. Fla. 2008) .................................................................................7

*Jubinville v. Hill's Pet Nutrition, Inc.*,

    2019 WL 1584679 (D.R.I. Apr. 12, 2019).............................................................6, 10

*Kleiner v. First Nat'l Bank of Atlanta*,

    751 F.2d 1193 (11th Cir. 1985)..........................................................................7, 8, 13

*Kleiner v. First Nat'l Bank of Atlanta*,

    102 F.R.D. 754 (N.D. Ga. 1983) ...............................................................................13

*Koike v. Starbucks Corp.*,

    2007 WL 9710389 (N.D. Cal. May 10, 2007) ...........................................................16

*Masonek v. Wells Fargo Bank*,

    2009 WL 10672345 (C.D. Cal. Dec. 21, 2009) ..........................................................7

iii

*McKesson HBOC, Inc. Sec. Litig., In re*,

 126 F. Supp. 2d 1239 (N.D. Cal. 2000) ......................................................6, 7, 8, 10, 12, 16, 17

*Mevorah v. Wells Fargo Home Mortg., Inc.*,

 2005 WL 4813532 (N.D. Cal. Nov. 17, 2005)..................................................................5, 6, 7

*M.L. Stern Overtime Litig., In re*,

 250 F.R.D. 492 (S.D. Cal. 2008)..................................................................................15

*Orlowski v. Dominick's Finer Foods, Inc.*,

 937 F. Supp. 723 (N.D. Ill. 1996) ................................................................................14

*Perkins v. Benore Logistics Sys., Inc.*,

 2017 WL 445603 (E.D. Mich. Feb. 2, 2017) ..............................................................6, 15

*Pollar v. Judson Steel Corp.*,

 1984 WL 161273 (N.D. Cal. Feb. 3, 1984) ...................................................................14

*Potash Antitrust Litig., In re*,

 162 F.R.D. 559 (D. Minn. 1995) ...................................................................................13

*Shapero v. Kentucky Bar Ass'n*,

 486 U.S. 466 (1988) .........................................................................................................8

*Southeast Milk Antitrust Litig., In re*,

 2011 WL 13122671 (E.D. Tenn. July 29, 2011). ........................................................15

*Swamy v. Title Source, Inc.*,

 2017 WL 5196780 (N.D. Cal. 2017)............................................................................17

*Talamantes v. PPG Indus., Inc.*,

 2014 WL 4145405 (N.D. Cal. Aug. 21, 2014) .............................................................14

*Walney v. Swepi LP*,

 2017 WL 319801 (W.D. Pa. Jan. 23, 2017) .................................................................13

**RULES**

Fed. R. Civ. P.:

 Rule 23 ..................................................................................................................1, 2, 6, 14

Rule 23(c)(2)(B) ...........................................................................................17

Model Rules of Prof'l Conduct (Am. Bar Ass'n 2020):

r. 4.2 .........................................................................................1, 4, 12, 13, 14, 15

r. 7.1 ...........................................................................................................11

**OTHER AUTHORITIES**

ABA Standing Comm. on Ethics & Prof'l Resp., Formal Op. 07-445 (2007) ...............................12

D.C. Ethics Op. 215 (1990) ................................................................................14

Vincent R. Johnson, *The Ethics of Communicating with Putative Class Members*,

17 Rev. Litig. 497 (1998) ................................................................................12

Restatement (Third) of the Law Governing Lawyers (Tentative Draft No. 8, 1997) ....................13

**INTRODUCTION AND SUMMARY**

The Court should deny Interim Class Counsel's Emergency Motion [Doc. No. 796] (the "Motion").  This extraordinary Motion, alleging egregious misconduct and demanding extreme remedies, is without merit.  Among other things, Interim Class Counsel mischaracterize the communications at issue and misconstrue the applicable legal and ethical standards.  The Motion should be denied for the following reasons:

*First*, the mailings Sparacino PLLC ("Sparacino") sent to putative class members were neither misleading nor coercive.  On the contrary, Sparacino's offer to assist potential clients in determining whether to bring their own claims promotes a critical purpose of Rule 23:  helping ensure that absent class members are not forced into a class against their will.  Sparacino's offer did none of the things Interim Class Counsel claim.  In contrast to communications that have been criticized by other courts, Sparacino's mailers requested no opt-out commitment nor any other immediate action; they made no threats or warnings of dire consequences should they be ignored; and they were clearly marked lawyer-advertising material, rather than purporting to be official notices or other court-sponsored communications.  The two mailers, considered together, provided all of the information Interim Class Counsel say was required.

*Second*, any allegation that Sparacino violated Rule 4.2 of the Rules of Professional Conduct by communicating with putative class members is unfounded.  Both the ABA and the vast majority of courts to consider the issue have concluded that putative class members are not represented by class counsel, at least until the class is certified.  All lawyers, including defense counsel, are therefore free to communicate with putative class members without running afoul of the rules regarding contacting persons known to be represented by counsel.

*Third*, no remedial communication is warranted because there was nothing improper or misleading about Sparacino's mailers.  In any case, Interim Class Counsel's requested relief is unduly restrictive under the First Amendment, unfair to Sparacino, and otherwise unjustified.  But if the Court deems some kind of "corrective" notice necessary, Sparacino would have no objection to a notice from the Court (not from Interim Class Counsel) that refers to Sparacino's mailers in a neutral way without improperly labeling them as "unethical" or "misleading"; that even-handedly

describes absent class members' opt-out rights and discloses that there are potential benefits and drawbacks to class participation; and that makes clear absent class members are free to consult any counsel they choose.  Because these disclosures would best be made as part of the forthcoming Court-ordered class notice, there is no need for a separate notice at this time.

In the end, Interim Class Counsel's Motion—with its demand for court-ordered censorship and one-sided, inflammatory "corrections"—finds no support in the Rules of Professional Conduct or in Rule 23.  Instead, the Motion appears designed merely to tarnish Sparacino's reputation, interfere with Sparacino's attorney-client relationships, and dissuade absent class members from speaking with Sparacino about their opt-out rights.  Such a result may benefit Interim Class Counsel, but it disserves the putative class members they claim to represent.  The Motion should be denied in its entirety.

## BACKGROUND

Sparacino is a Washington, D.C.-based law firm that specializes in investigating and litigating mass-tort actions.  *See* Declaration of Ryan R. Sparacino ("R. Sparacino Decl.") ¶¶ 2-5. Sparacino typically partners with nationally prominent litigation firms, striking arrangements in which Sparacino performs investigative and client-facing tasks while its partner firm litigates in court.  *Id*. ¶ 5.  Sparacino believes this model is well-suited for the *Le v. Zuffa* action.  *Id*. ¶¶ 5-9. After investigation, Sparacino determined that putative class members could benefit from exploring whether to pursue their own individual claims against UFC and opt out of the class, should one be certified.  *Id*. ¶¶ 8-10.

### A.     The First Mailer

On March 16, 2021, Sparacino sent the "First Mailer" to 223 potential clients.  *Id*. ¶ 11; R. Sparacino Decl., Ex. A (cover letter), Ex. B (brochure).  Sparacino's Managing Partner personally reviewed the relevant states' Rules of Professional Conduct and performed a lengthy check to ensure that the statements were not misleading.  R. Sparacino Decl. ¶¶ 11-13.  Scott+Scott Attorneys at Law LLP ("Scott+Scott"), a national leader in antitrust litigation that had partnered with Sparacino for this matter, also reviewed and approved the mailers.  *Id*. ¶ 14.  Sparacino

further reviewed *Le v. Zuffa* docket documents in a good-faith attempt to exclude any individuals who were already represented individually by counsel.  *Id.* ¶ 15.

The First Mailer included a cover letter, a 14-page brochure, and business cards for two Sparacino attorneys.  *Id.* ¶ 16.  The mailer did not ask recipients to sign anything, nor did it ask for any commitment of any kind.  Instead, the mailer provided in relevant part (emphases added):

- "If you have already retained a lawyer for this matter, please ***disregard*** this letter." R. Sparacino Decl., Ex. A at 1.

- "If you already have legal counsel with respect to your potential antitrust claims, please ***ignore*** this letter."  *Id.* at 2.

- "Based on the developments in the federal case *Le v. Zuffa*, we anticipate filing an 'opt-out' antitrust case against UFC in 2021.  'Opt-out' means that the plaintiffs in our case ***would not participate in a class action lawsuit against the UFC (Le v. Zuffa) that is currently ongoing and would instead chart their own course*** with the intent to aggressively pursue their specific legal claims against UFC."  R. Sparacino Decl., Ex. B at 5.

- "A federal judge recently ruled, in a case called *Le v. Zuffa*, that the Ultimate Fighting Championship (UFC) may have engaged in illegal practices since 2000, and that former Mixed Martial Arts (MMA) fighters who fought between 2010 and 2017 in UFC events ***may have*** a substantial claim for compensation based upon UFC's alleged violation of federal antitrust law."  *Id.* at 3.

- "We are currently reaching out to MMA fighters who competed in any UFC events during this seven-year window ***who may wish to learn more and potentially join this effort***."  *Id.*

- "[W]e seek to represent MMA fighters ***who wish to learn more about their legal options***."  *Id.*

The mailer also included a brief overview of the potential claims, biographies for the relevant lawyers and non-lawyer professionals from Sparacino and Scott+Scott, and a lengthy disclaimer incorporating language that Sparacino believed to be required by every state to which Sparacino sent the First Mailer.  *Id.* at 5-15.  Besides recommending that recipients contact Sparacino to discuss their legal options, the First Mailer solicited no other action.  Nor did it assert any deadline or suggest that time was of the essence.  R. Sparacino Decl. ¶ 18.  Recipients were free to respond at their own pace and on their own terms, or not at all.

On March 23, 2021, Interim Class Counsel (through Berger Montague) asserted to Sparacino and Scott+Scott that putative class members were represented individuals. *Id.* ¶¶ 21-23. They also argued that the First Mailer was misleading because it did not highlight the Court's stated intention to certify the Bout Class and failed to describe Interim Class Counsel's work on the case. *Id.* Interim Class Counsel also complained that the First Mailer had not informed recipients that their interests were already represented and that no action was required for them to benefit from any future class recovery. *Id.*[1]

**B.     The Second Mailer**

Although Sparacino disagreed with Interim Class Counsel's criticisms, Sparacino promptly sent a follow-up mailer to address every substantive concern they had raised. *Id.* ¶ 28. This Second Mailer was sent less than ten days after the First Mailer and did the following:

- Cited *Le v. Zuffa* and called it a "Class Action" (as the First Mailer had done), and noted the Court's stated intention to certify the Bout Class. R. Sparacino Decl., Ex. D at 1.

- Identified Interim Class Counsel, stated they had been "working on the *Le v. Zuffa* case since before it was filed in 2014," and clarified Sparacino was "not class counsel." *Id.*

- Stated that "your interests are currently represented by Interim Class Counsel" and that "[y]ou do not need [to] take any action a[t] this time to benefit from any recovery in the Class Action," and recommended that recipients "carefully review" any future Court-approved class notice. *Id.*

- Expressed that "[w]e believe you should consider opting out of the *Le v. Zuffa* class action," while offering to speak with potential clients about how to "decide which choice is best for you and your family." *Id.*

The Second Mailer also replicated prominent "Attorney Advertising" language similar to that included in the First Mailer. *See id.* at 2-3.

---

[1] Interim Class Counsel followed up with a March 24 email reiterating what they said during the call, including that the mailers were unethical because they communicated with represented persons under Rule of Professional Conduct 4.2 and also conveyed a gratuitous sense of urgency. *See* R. Sparacino Decl., Ex. C.

### C.     Scott+Scott's Withdrawal And This Motion

Two days later, Scott+Scott informed Sparacino that it intended to withdraw from this matter.  Scott+Scott made clear to Sparacino and to Interim Class Counsel that it disagreed with Interim Class Counsel's assertions and believed the First and Second Mailers were accurate and ethical.  R. Sparacino Decl. ¶¶ 32-34.  In conveying to Sparacino its decision to withdraw, Scott+Scott cited the reputational and business risk created by Interim Class Counsel's threats.  *Id.* Scott+Scott made clear that, although it considered those threats unfounded, it believed that Interim Counsel had made the reputational risks unbearable.  *Id.*

Sparacino is actively exploring options to replace Scott+Scott and is confident it will find a new partner firm with comparable antitrust experience.  *Id.* ¶ 43.  In the meantime, 11 clients have executed engagement letters with Sparacino.  *Id.* ¶ 37.  Sparacino has sent another 17 engagement letters to potential clients who requested them.  *Id.*  Those engagement letters require no up-front retainer and do *not* obligate clients to opt out of any class.  *Id.* ¶¶ 38-41.  On the contrary, they make clear that the engagements are "limited to counseling you regarding the suitability of bringing an 'opt-out' claim."  *Id.* ¶ 40.  They also provide clients the right to terminate Sparacino for any reason without cost "within forty-five (45) days of the entry of any class certification order by the Court."  *Id.*  Sparacino has since decided to extend that no-cost termination window to the end of any opt-out period set by the Court.  *Id.* ¶ 41.  Accordingly, when clients sign an engagement letter, they are retaining Sparacino—at no cost to them—to consult about the benefits and drawbacks of opting out.  The choice remains each client's alone.

After March 24, Sparacino did not hear from Interim Class Counsel again.  *Id.* ¶ 35.  Instead, on March 30, Interim Class Counsel filed this Motion.

## ARGUMENT

## I.     SPARACINO'S MAILERS WERE NOT MISLEADING OR COERCIVE

Courts "generally permit[ ]" "[p]re-certification communications to potential class members," which "constitute constitutionally protected speech."  *Mevorah v. Wells Fargo Home Mortg., Inc.*, 2005 WL 4813532, at *3 (N.D. Cal. Nov. 17, 2005).  Any order restricting communications with "potential class members" must reflect a "clear record and specific findings"

supporting the "need for a limitation" while also "limit[ing] speech as little as possible." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101-02 (1981).  Courts thus restrict such communications only when they are "misleading, coercive, or improper." *Mevorah*, 2005 WL 4813532, at *3; *see Perkins v. Benore Logistics Sys., Inc.*, 2017 WL 445603, at *4 (E.D. Mich. Feb. 2, 2017) (rejecting on "First Amendment" grounds an attempt to restrain absent-class-member communications that were "in no way suggestive or threatening").

Sparacino's mailers were none of those things.  By offering to assist clients in determining whether to bring their own claims, Sparacino's mailers promoted a core Rule 23 interest:  helping to ensure that "absent class members [are not] forced into a class against their will." *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1239, 1243 (N.D. Cal. 2000).  The class-action mechanism, after all, depends on affording "class members the right to contact their own attorneys to determine whether joining a proposed class-wide [procedure] is in their best interests." *In re Community Bank of N. Va.*, 418 F.3d 277, 312-13 (3d Cir. 2005).  Interim Class Counsel's attempt to muzzle Sparacino flouts that principle.  Indeed, restraining Sparacino from speaking to absent class members would risk depriving them of independent counsel about their opt-out rights—an outcome Rule 23 is designed to avoid.  *See, e.g., Domingo v. New England Fish Co.*, 727 F.2d 1429, 1441 (9th Cir.) (noting a "class representative and his counsel may have interests that are in conflict with those of the class members"), *modified*, 742 F.2d 520 (9th Cir. 1984).

Faced with this strong policy rationale permitting such communications with putative class members, Interim Class Counsel attempts (at 10-14) to manufacture reasons the mailers were false or misleading.  None is persuasive.

A.      **Sparacino's Mailers Did None Of The Things Courts Have Found Improper**

Sparacino's mailers were neither misleading nor coercive.  Three key features of the mailers, read together, establish that they breached no ethical boundary.[2]  *First*, the mailers

---

[2] *See Jubinville v. Hill's Pet Nutrition, Inc.*, 2019 WL 1584679, at *9 (D.R.I. Apr. 12, 2019) (reading two class communications together in accord with the principle that the facts must "be examined in totality" to account for the "curative potential" of second disclosure).

demanded no opt-out commitment nor any other urgent action.[3]  Rather, Sparacino informed

potential clients that they "may have" a claim and suggested they "may wish to learn more and

potentially join [Sparacino's] effort." R. Sparacino Decl., Ex. B at 3.  The First Mailer made plain

that Sparacino sought to represent those who might "*wish to learn more* about their legal options."

*Id*. (emphasis added).  Nothing about that conveyed a "gratuitous air of urgency" or requested

action by some "arbitrary deadline." *McKesson*, 126 F. Supp. 2d at 1245.  Quite the opposite:  the

Second Mailer confirmed that "[y]ou do not need [to] take any action a[t] this time to benefit from

any recovery in the Class Action." R. Sparacino Decl., Ex. D at 1.

     *Second*, the mailers made no threats and wielded no coercive power over the recipients.[4]

The First Mailer stated that Sparacino merely "fe[lt] that you deserve to know about your legal

options" and conveyed that "[w]e would be honored to represent you if your claim is viable and

you choose to sue UFC." *Id.*, Ex. A at 1-2.  It further urged recipients to "disregard" the letter if

they had already retained counsel. *Id*. at 1.  And the Second Mailer went even further by

confirming that recipients "need not do anything in response to this letter or our prior letter." *Id.*,

Ex. D at 1.  That is a very far cry from the solicitations that other courts have found improper for

threatening recipients that they would "LOSE VALUABLE RIGHTS" unless they immediately

signed an opt-out form. *E.g.*, *Georgine*, 160 F.R.D. at 491.

---

[3] *Cf. Chalian v. CVS Pharm., Inc.*, 2020 WL 7347866, at *3 (C.D. Cal. Oct. 30, 2020) (asking recipients to sign "prepopulated, opt-out forms"); *McKesson*, 126 F. Supp. 2d at 1241 (requesting reply by "an arbitrary deadline"); *Masonek v. Wells Fargo Bank*, 2009 WL 10672345, at *1, *3 (C.D. Cal. Dec. 21, 2009) (demanding up-front fee and advising recipients that "[i]f you do nothing, your recovery will be limited"); *Georgine v. Amchem Prods., Inc.*, 160 F.R.D. 478, 491 (E.D. Pa. 1995) (exhorting recipients to "sign the enclosed 'opt out' form immediately"); *Mevorah*, 2005 WL 4813532, at *1 (demanding to interview absent class members to force them into signing "declarations" that undermined their claims).

[4] *Cf. Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985) (addressing communications by an adverse party in a uniquely coercive position due to its ongoing business relationship with class members); *Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 554, 563 (S.D. Fla. 2008) (solicitor wielded "potentially coercive relationship" over absent class members); *Chalian*, 2020 WL 7347866, at *1-3 (warning of "'danger' of the settlement" and urging recipients "please do not delay"); *Masonek*, 2009 WL 10672345, at *3 (communications conveyed "impression that they must pay an upfront fee . . . to participate in *either* the mass action or class action").

1    *Third*, the mailers did not purport to be official notices or other court-sponsored

2    communications.[5]  They were instead "targeted, direct-mail solicitation[s]," which the Supreme

3    Court has held "pose[] much less risk of overreaching or undue influence than does in-person

4    solicitation."  *Shapero v. Kentucky Bar Ass'n*, 486 U.S. 466, 475 (1988) (citation omitted).  That is

5    especially true because Sparacino's solicitations were replete with prominent attorney-advertising

6    language.  Advertising disclaimers appeared on the envelopes, the brochure, and the caption of

7    both letters.  R. Sparacino Decl. ¶ 13.  The text of the Second Mailer also contained a lengthy,

8    nearly-two-page "Disclaimer" section.  *Id.*, Ex. D at 2-3.  That bears no resemblance to the type of

9    official-looking communications courts have found misleading for implying they "were somehow

10   required (or at least authorized) by the court."  *McKesson*, 126 F. Supp. 2d at 1243.

11   Those features together are decisive.  Interim Class Counsel cites no case (and Sparacino is

12   aware of none) ever holding improper a comparable communication to putative class members.

13   Indeed, every case Interim Class Counsel cite (at 8-13) involved one or more of (1) a false sense

14   of urgency; (2) threats or other exercise of undue influence; and (3) a lack of clear advertising

15   disclaimers.  *Supra* notes 3-5.  Many also involved a sender who had power over the recipients—

16   such as a bank communicating with its customers.  *Cf. Kleiner*, 751 F.2d at 1197-99.  Here,

17   Sparacino simply offered to speak with potential clients about their legal options.  Barring such

18   communications would be unprecedented.

19   *McKesson*, on which Interim Class Counsel relies heavily (at 9, 11-13), illustrates the

20   distinction.  There, the soliciting firm styled its communication as an official "Notice," buried the

21   "Advertising" disclaimer until the final page, urgently demanded a reply by a date certain, and

22   enclosed an opt-out authorization form it urged recipients to sign immediately.  126 F. Supp. 2d at

23   1241-42.  The solicitation was thus "disguise[d]" as an "official-sounding notice[]" and

24

25   _____

26   [5] *Cf. McKesson*, 126 F. Supp. 2d at 1244 (solicitation "distributed in the same manner as
     official court-ordered notices"); Order at 13, *In re Flint Water Cases*, No. 17-108646-NO (E.D.

27   Mich. Feb. 18, 2021) ("*Flint Order*") [Dkt. 797-1, Ex. 7] ("Individuals who sent the Federal Court
     this letter may falsely believe that they have submitted their official opt-out, when they have not in

28   fact done so.").

1    improperly "induce[d] class members to provide authorizations to opt out of the class." *Id*. at

2    1244.  Sparacino's careful solicitations here were not comparable.

3           **B.      Interim Class Counsel's Accusations About The Mailers Are Meritless**

4           Interim Class Counsel's Motion asserts (at 10) the First Mailer "implies that Absent Class

5    Members must take action to recover."  The First Mailer, however, conveyed no such implication.

6    It suggested fighters "may have claims relating to their time in UFC" and offered to speak with

7    absent class members about their "legal options."  R. Sparacino Decl., Ex. A at 1.  The mailer

8    contained no must-take-action language and never suggested an affirmative response was

9    necessary.  Indeed, Interim Class Counsel *cite no actual language* from the First Mailer to support

10   the urgency-inspiring implication they try to conjure.  Nor does their Motion adduce a "clear

11   record" that any putative class member was actually misled in such a manner, as *Gulf Oil* requires.

12          Interim Class Counsel's omission theory fares no better.  They accuse Sparacino (at 4, 10-

13   11) of failing to disclose the class action and of omitting that "opting out of the class action in fact

14   would deprive Absent Class Members of the right to participate in any class-wide recovery."  That

15   is inaccurate.  The First Mailer cited *Le v. Zuffa*, called it a "class action lawsuit," stated it was

16   "currently ongoing," and explained Sparacino's intent to file an "'opt-out' antitrust case" whose

17   plaintiffs "*would not participate* in [the] class action lawsuit" and "would instead chart their own

18   course."  R. Sparacino Decl., Ex. B at 3, 5 (emphasis added).  No reasonable reader would read the

19   First Mailer as concealing the existence of the class action the materials expressly referenced.

20          True, the First Mailer did not identify Interim Class Counsel by name or advertise the

21   "eight years" they spent "developing and prosecuting this action."  Mot. at 4.  But Interim Class

22   Counsel cites no authority suggesting that Sparacino had some duty to include such detail in its

23   mailers—particularly when a simple Google search of "*Le v. Zuffa*" would have revealed that

24   information.[6]  Instead, they cite cases (at 11-13) involving the type of egregious, urgency-inducing

25

26   _____

27          [6] *See* https://www.google.com/search?q=le+v.+zuffa&oq=le+v.+zuffa&aqs (four of the
     first six Google results leading to Interim Class Counsel's solicitation webpages); *Goin v. United

28   States*, 2015 WL 1577771, at *3 (S.D. Ill. Apr. 2, 2015) ("a simple Google search . . . may have
     obviated the necessity of a motion and response").

misconduct discussed above. *Supra* pp. 7-8; *cf.*, *e.g.*, *Flint Order* at 12 ("This letter is rife with material misrepresentations.").  In the absence of such misconduct, there is simply no basis to conclude that Sparacino did anything wrong, much less committed the kind of egregious transgression that would justify the relief that Interim Class Counsel seeks.  Sparacino is aware of no court ever to have held that a mere failure to call out class counsel by name renders a solicitation unethical or misleading. *Cf. McKesson*, 126 F. Supp. 2d at 1246 (rejecting relief that would require lawyer to "advertise the services of lead counsel" in corrective disclosure).

But if there were any omission, Sparacino promptly cured it by sending the Second Mailer. *Supra* p. 4.  That mailer provided every substantive piece of information that Interim Class Counsel demanded:  it cited Interim Class Counsel by name; credited them for "working on the *Le v. Zuffa* case since before it was filed in 2014"; made clear that Sparacino was "not class counsel"; highlighted the Court's stated intention to certify the Bout Class; informed recipients that their "interests are currently represented by Interim Class Counsel"; and assured them that they did "not need [to] take any action a[t] this time to benefit from any recovery in the Class Action." R. Sparacino Decl., Ex. D at 1.  Those additional disclosures were more than sufficient to "remedy [any] potential harm caused by the initial communication in failing to mention the pending class actions." *Jubinville*, 2019 WL 1584679, at *9 (citation omitted).

Interim Class Counsel's critique of the Second Mailer is unpersuasive.  They complain (at 11) that the Second Mailer did not "acknowledge" that the First Mailer was "misleading," but no such acknowledgment was necessary because the First Mailer was *not* in fact misleading. Regardless, Interim Class Counsel cite no authority suggesting that attorneys may cure an alleged omission only by accusing themselves of wrongdoing.  In *Jubinville*, the first solicitation (sent in that case by the defendant) omitted any "mention of the existence of the pending class lawsuits," and the court held that a neutral follow-up notice was sufficient to cure any harm.  *Id.*  The curative disclosure did not call the prior solicitation misleading, nor did it acknowledge any

1  wrongdoing.  *Id*.  Yet that follow-up disclosure remained "more than adequate to meet the

2  concerns" raised by the plaintiffs.  *Id*.  The same conclusion is warranted here.[7]

3       Finally, Interim Class Counsel emphasize that Sparacino's original partner law firm, the

4  antitrust specialist Scott+Scott, has now withdrawn.  Their Motion attacks (at 12) the Second

5  Mailer's reference to Scott+Scott as "no longer true," but concedes it was true when the Second

6  Mailer was sent.  Any putative class member who since has reached out to Sparacino has been

7  told, in no uncertain terms, that Scott+Scott is no longer involved.  *See* R. Sparacino Decl. ¶ 40.

8  That unforeseen change in circumstances does not render the Second Mailer misleading.

9       Further, Scott+Scott's withdrawal is a problem of Interim Class Counsel's own making.

10  Scott+Scott withdrew not because of any ethical concerns, but because it feared the reputational

11  risk posed by Interim Class Counsel's baseless threats.  *Id*. ¶¶ 32-34.  Even Interim Class Counsel

12  now acknowledge (at 5 n.2) that Scott+Scott "does not believe there was any unethical or

13  inappropriate conduct."  But although Scott+Scott agreed that Sparacino acted properly, Interim

14  Class Counsel's threats—leveling accusations similar to those here—forced Scott+Scott into

15  withdrawing from the matter.  R. Sparacino Decl. ¶ 34.  Sparacino is actively working to find a

16  new litigation firm to take Scott+Scott's place, and it will not pursue any opt-out representations

17  (or seek any fees or costs) if it fails to reach a new partnership with such a firm.  *Id*. ¶ 43.  In the

18  meantime, Sparacino's communications have not become misleading just because Interim Class

19  Counsel succeeded in bullying Sparacino's first litigation partner off the case.

20

21

22

23

24       [7] A lawyer's obligation to avoid misleading or coercive communications is also reflected in
   Rule 7.1 of the Rules of Professional Conduct, which generally prohibits a lawyer from making
25  "false or misleading communication about the lawyer or the lawyer's services" by making "a
   material misrepresentation of fact or law, or omit[ing] a fact necessary to make the statement
26  considered as a whole not materially misleading."  Model Rules of Prof'l Conduct r. 7.1 (Am. Bar
   Ass'n 2020).  For the same reasons that Sparacino's mailers did not violate any of the judicial
27  proscriptions on false or misleading communications in communicating with potential class
   members, it also did not breach any ethical duty under Rule 7.1.
28

## II.     RULE 4.2 OF THE RULES OF PROFESSIONAL CONDUCT DOES NOT APPLY UNDER THESE CIRCUMSTANCES

Interim Class Counsel suggest half-heartedly (at 14-16) that Sparacino should also be sanctioned for violating Rule 4.2 of the Rules of Professional Conduct, which generally prohibits lawyers from communicating with persons whom they know are represented by counsel about the subject of the representation.  But this rule has only limited relevance in the context of class action proceedings prior to the certification of a class.  As the ABA's Standing Committee on Ethics and Professional Responsibility has described it:

> Before the class has been certified by a court, the lawyer for plaintiff will represent one or more persons with whom a client-lawyer relationship clearly has been established. As to persons who are potential members of a class if it is certified, however, no client-lawyer relationship has been established. A client-lawyer relationship with a potential member of the class does not begin until the class has been certified and the time for opting out by a potential member of the class has expired. If the client has neither a consensual relationship with the lawyer nor a legal substitute for consent, there is no representation. *Therefore, putative class members are not represented parties for purposes of the Model Rules prior to certification of the class and the expiration of the opt-out period.*

Formal Op. 07-445, at 3 (2007) (emphasis added).

Courts throughout the country have adopted the ABA's view that Rule 4.2 does not bar counsel from communicating with putative class members before a class is certified.  *See, e.g.*, *McKesson*, 126 F. Supp. 2d at 1245 ("The leading California case makes clear that putative class members are not 'represented' and that attorneys may contact them.") (citing *Atari, Inc. v. Superior Court*, 212 Cal. Rptr. 773 (Cal. Ct. App. 1985)); *Babbitt v. Albertson's, Inc.*, 1993 WL 150300, at *1 (N.D. Cal. Mar. 31, 1993) (finding that defense attorney's pre-certification communication with putative class members did not violate anti-contact rule because "defendant had an equal right to access to its employees"); *Gibbons v. CIT Grp./Sales Fin., Inc.*, 400 S.E.2d 104, 106 (N.C. Ct. App. 1991) (affirming the trial court's decision to allow attorneys on both sides to engage in "precertification communication with potential class members," albeit with some notice requirements); *see also* Vincent R. Johnson, *The Ethics of Communicating with Putative Class Members*, 17 Rev. Litig. 497, 507-08, 524 (1998) ("before certification, unnamed putative class members should not be treated as 'represented persons' for purposes of [Rule 4.2]");

1  Restatement (Third) of the Law Governing Lawyers § 158 cmt. *l* (Tentative Draft No. 8, 1997)

2  ("[p]rior to certification and unless the court orders otherwise, in the case of competing putative

3  class actions a lawyer for one set of representatives may contact class members who are only

4  putatively represented by a competing lawyer").[8]

5       Consistent with the ABA and majority approach, many courts also hold that putative class

6  members are not represented until the end of the opt-out period.  *See Walney v. Swepi LP*, 2017

7  WL 319801, at *13 (W.D. Pa. Jan. 23, 2017) (collecting cases recognizing "that the attorney-client

8  relationship is not formed until expiration of the opt-out period"); *In re Chicago Flood Litig.*, 682

9  N.E.2d 421, 425-26 (Ill. App. Ct. 1997) (recognizing that "the relationship between absent class

10  members and class counsel is one of court creation" such that "class counsel will be deemed to

11  fully represent all class members only after a court has certified the class and the opt-out time

12  period has expired, giving putative class members time to decide whether to participate in the

13  class"); *Kleiner v. First Nat'l Bank of Atlanta*, 102 F.R.D. 754, 769 (N.D. Ga. 1983) ("it cannot

14  truly be said that [counsel for the class] fully 'represents' prospective class members until it is

15  determined that they are going to participate in the class action"), *aff'd in part, vacated in part*,

16  751 F.2d 1193 (11th Cir. 1985); *In re Potash Antitrust Litig.*, 162 F.R.D. 559, 561 n.3 (D. Minn.

17  1995) ("whether a full attorney-client relationship shall materialize will depend upon the putative

18  class member's decision to accept or reject class standing").

19       So Sparacino's communications with putative class members, all of which occurred prior

20  to the certification of the class and the expiration of the opt-out period, did not trigger the

21  prohibition in Rule 4.2 for the simple reason that none of the putative class members was known

22

23  _____

24       [8] *See also David v. Signal Int'l, L.L.C.*, 735 F. Supp. 2d 440, 448 n.3 (E.D. La. 2010) ("In
    similar circumstances that relate to conflicts of interest and the existence of an attorney-client

25  relationship, courts have *unanimously held* that pre-certification, absent class members do not
    even possess the traditional attorney-client relationship with putative class counsel.") (emphasis

26  added); *Greenfield MHP Assocs., L.P. v. Ametek, Inc.*, 2018 WL 538961, at *6 (S.D. Cal. Jan. 24,
    2018) ("Until the class is certified, the unnamed putative class members are not clients of

27  Plaintiffs' Counsel."); *Hammond v. City of Junction City, Kan.*, 2002 WL 169370, at *4 (D. Kan.
    Jan. 23, 2002) ("It is fairly well settled that prior to class certification, no attorney-client

28  relationship exists between class counsel and the putative class members.") (collecting cases).

1    to be represented by counsel at the time.[9]  Interim Class Counsel rely (at 14) on two cases

2    purporting to support the minority view that Rule 4.2 can prohibit communications with putative

3    class members prior to certification.  But *Pollar v. Judson Steel Corp.*, 1984 WL 161273 (N.D.

4    Cal. Feb. 3, 1984), had nothing to do with Rule 4.2 and simply concluded that the defendants'

5    unauthorized publication of a notice to potential class members in the local newspaper violated

6    both Rule 23 and a local court rule.  And *Dondore v. NGK Metals Corp.*, 152 F. Supp. 2d 662

7    (E.D. Pa. 2001), expressing the minority view that putative class members should be considered

8    represented by class counsel for purposes of Rule 4.2, conflicts with the weight of authority and

9    has never been accepted by courts in the Ninth Circuit.  *See Talamantes v. PPG Indus., Inc.*, 2014

10   WL 4145405, at *6 (N.D. Cal. Aug. 21, 2014) ("[n]o case in the Ninth Circuit has adopted

11   *Dondore*'s reasoning, and one expressly noted that *Dondore*'s reasoning is 'contrary to California

12   law' and that *Dondore* has not been generally accepted—'the weight of authority seems unwilling

13   to adopt the *Dondore* view'") (quoting *Castaneda v. Burger King Corp.*, 2009 WL 2382688, at *7

14   (N.D. Cal. July 31, 2009)) (brackets and some internal quotations omitted).

15

16

17

18   _____

     [9] Notwithstanding its efforts to ensure that it would not send any communications to
19   putative class members who were already individually represented, Sparacino did inadvertently
     send its mailers to four individuals who were named plaintiffs in prior cases that had not been
20   listed as parties in *Le v. Zuffa* after the cases had been consolidated.  *See* R. Sparacino Decl. ¶¶ 14-
     15.  Because Sparacino did not know that these four individuals were represented, and intended
21   not to contact represented parties, it did not violate Rule 4.2.  These contacts were unintentional
     and inadvertent.  *See Orlowski v. Dominick's Finer Foods, Inc.*, 937 F. Supp. 723, 731 (N.D. Ill.
22   1996) (counsel neither "breached their ethical obligations, nor violated Rule 4.2" because contact
     with represented parties "was inadvertent"); *see also Good v. West Va.-Am. Water Co.*, 2016 WL
23   6404006, at *2 (S.D. W. Va. Oct. 26, 2016) (finding that taking good-faith efforts to exclude
     recipients from a mailer, but inadvertently including a small number of recipients that should not
24   have received it, was not indicative of an ethical violation).  In any case, even with respect to a
     person a lawyer knows is represented by counsel, the D.C. Bar's Legal Ethics Committee has
25   concluded that Rule 4.2 does not prohibit a lawyer "from communicating with a person who is
     currently represented by counsel for the purpose of determining whether such person may wish to
26   retain the lawyer and discharge the current lawyer."  *See* D.C. Ethics Op. 215 (1990),
27   https://dcbar.org/getmedia/44d1c67d-166e-4698-b594-8bf4d0e48c15/DC_RPC_02_2021_
     Opinions_Only.
28

1    In sum, Sparacino's communications with potential class members by way of the two

2  mailers did not violate Rule 4.2.  Interim Class Counsel's arguments to the contrary are

3  unpersuasive and should be rejected.[10]

4  ## III.    THE COURT SHOULD DENY INTERIM CLASS COUNSEL'S REQUESTED
   ##         RELIEF
5

6    Because there was nothing misleading or otherwise improper about Sparacino's

7  solicitations, no remedial action is warranted.[11]  But even if the Court were inclined to take some

8  action, Interim Class Counsel has substantially overreached in the relief it seeks.

9    *First*, the Court should refuse Interim Class Counsel's request to find that Sparacino

10  breached any ethics rule.  Accusing another lawyer of violating the Rules of Professional Conduct

11  is "a very serious accusation" that should not be lightly made.  *In re Southeast Milk Antitrust*

12  *Litig.*, 2011 WL 13122671, at *2-3 (E.D. Tenn. July 29, 2011).  That is particularly true here,

13  where there is no "bright-line rule controlling pre-certification communications."  *Bobryk v.*

14  *Durand Glass Mfg. Co.*, 2013 WL 5574504, at *6 (D.N.J. Oct. 9, 2013).  The absence of clear

15  rules in this area counsels restraint.  Thus, even when courts determine that a pre-certification

16  communication should be corrected, they are loathe to brand lawyers' solicitations as "ethically

17  improper."  *See In re M.L. Stern Overtime Litig.*, 250 F.R.D. 492, 500 (S.D. Cal. 2008).  This

18  Court should follow suit.  Any remaining issues with Sparacino's materials can and should be

19

20

---

21    [10] Interim Class Counsel suggest in a single sentence (at 16) that "the First and Second
22  Solicitation Letters may violate Nevada Rule of Professional Conduct 7.2A, which requires
    registration of a copy of a lawyer advertisement with the Nevada State Bar."  But Sparacino has
23  not sent any mailers to residents of Nevada and has committed not to do so until permitted by this
    Court.  *See* R. Sparacino Decl. ¶ 19.  In any event, Sparacino did provide its template solicitation
24  to the State Bar of Nevada within 15 days of the First Mailer.  *Id.* ¶ 20.

25    [11] *See*, *e.g.*, *Good*, 2016 WL 6404006, at *2-3 (rejecting similar relief where contact with
    represented parties was inadvertent, and a "corrective notice . . . would accomplish little"); 
26  *Perkins*, 2017 WL 445603, at *3-5 (rejecting relief because "[i]t would be improper . . . for the
    Court to exercise its authority under Rule 23(d), as the emails were neither coercive nor
27  misleading"); *EEOC v. Albertson's Inc.*, 2006 WL 8460350, at *8 (D. Colo. Oct. 4, 2006) (noting
    that the requesting party "presented no authority" and the court was "not aware of any" that
28  supported a similar request for relief).

cured with additional disclosure, not ethical sanction. *See, e.g., id.*; *McKesson*, 126 F. Supp. 2d at 1246.

*Second*, the Court should refuse Interim Class Counsel's request to restrain Sparacino from speaking with absent class members. Pre-certification speech restrictions "presumptively violate the First Amendment and are permissible only on a finding of a 'likelihood of serious abuse.' " *Koike v. Starbucks Corp.*, 2007 WL 9710389, at *4 (N.D. Cal. May 10, 2007) (quoting *Gulf Oil*, 452 U.S. at 104). No such likelihood is present here. In fact, courts confronted with even egregious misconduct (a far cry from what occurred here) have declined to issue the type of gag order Interim Class Counsel seek. *See Community Bank*, 418 F.3d at 312 (noting that "[n]o communication restrictions were imposed" even in cases involving "misleading statements and particularly disruptive behavior"); *Camp v. Alexander*, 300 F.R.D. 617, 626 (N.D. Cal. 2014) (rejecting similar gag-order request because "the standard for an order limiting communications" is "quite high").

Sparacino has already pledged not to contact again the individuals it had already solicited unless such individuals initiate contact with Sparacino—a pledge by which Sparacino will abide and need not be ordered to keep. R. Sparacino Decl. ¶ 36. Otherwise, Interim Class Counsel has not demonstrated the "likelihood of serious abuse," *Koike*, 2007 WL 9710389, at *4, necessary to censor constitutionally protected speech. There is no "specific record" of abuses or any evidence whatsoever that the mailers actually misled or confused any potential class member. *Gulf Oil*, 452 U.S. at 102. It would be an abuse of discretion to grant Interim Class Counsel's Motion in the absence of any such concrete record. *See id.* at 102-03. Nor is the relief requested "carefully drawn" to impinge on "speech as little as possible." *Id.* Quite the opposite: the requested gag order would impede Sparacino from "trying to assist class members with the prosecution of their individual claims." *McKesson*, 126 F. Supp. 2d at 1245-46. As in *McKesson*, Interim Class Counsel's "logic suggests that putative class members are forever walled off from any effort at solicitation, a proposition that seems unsupportable." *Id.*

*Third*, Interim Class Counsel have no basis for seeking (at 1, 17) production of all communications between Sparacino and putative class members, as well as a list of all individuals

16

1   (and their addresses) with whom Sparacino has communicated.  Interim Class Counsel are not

2   entitled to such materials, most of which reflect attorney work product and implicate the attorney-

3   client privilege.  Interim Class Counsel already have copies of the mailers themselves, and this

4   Court should not order Sparacino to produce anything more.  *See Camp*, 300 F.R.D. at 626

5   (rejecting plaintiffs' request to order the production of "all information and documents relating to

6   the putative class members").

7        *Fourth*, Interim Class Counsel overreach in their request for a one-sided corrective

8   disclosure.  Any remedial disclosure "should be particularly careful to describe the process for

9   certification of a class and the right to opt out."  *McKesson*, 126 F. Supp. 2d at 1246.  Interim

10  Class Counsel's proposed notice does not even try to strike that balance.  By branding Sparacino's

11  prior letters as "misleading" and "unethical," they instead would tarnish Sparacino's reputation

12  and poison Sparacino's relationship with actual and potential opt-out clients.  Such an outcome,

13  though perhaps in Interim Class Counsel's economic interests, would disserve the putative class.

14       That said, if the Court concludes that some further disclosure would be useful, Sparacino

15  would not oppose one that is neutral and fair.  The forthcoming class notice will already

16  accomplish what Interim Class Counsel claim to want—a full, balanced, and easy-to-understand

17  description of the class mechanism and absent class members' rights thereunder.  *See* Fed. R. Civ.

18  P. 23(c)(2)(B).[12]  Sparacino has already agreed that all absent class members—including

19  Sparacino's current clients—retain the right to terminate Sparacino at no cost through the

20  expiration of whatever opt-out deadline the Court ultimately sets.  R. Sparacino Decl. ¶ 41.

21  Accordingly, the Court could use the class-notice process to make any additional disclosures it

22  deems necessary.  *See*, *e.g.*, *Swamy v. Title Source, Inc.*, 2017 WL 5196780, at *5 (N.D. Cal.

23  2017) (finding a "corrective notice is unnecessary" given plaintiff's "opportunity" to make

24  additional disclosures through the class notice).

25

26

---

27       [12] Sparacino agrees with Zuffa's response to the Motion that any "corrective" notice
    "should simply wait until there is a formal, Court-approved classwide notice following a potential
28  order certifying the class."  Zuffa's Response at 3 [Doc. No. 802].

1        If the Court believes that some other disclosure would be useful before any forthcoming

2  class notice, Sparacino would have no objection to proceeding along the following lines:

3       • The disclosure should refer to Sparacino's mailers in a neutral way and should not call

4          them "unethical," "misleading," or anything similar.

5       • The disclosure should come from the Court, or should be signed jointly by Interim
           Class Counsel and Sparacino—it should not come unilaterally from Interim Class

6          Counsel.

7       • The disclosure should describe the forthcoming class notice, note both that there are
           potential benefits and drawbacks to remaining an absent class member, and describe

8          absent class members' opt-out rights in even-handed terms.

9       • The disclosure should make clear that absent class members may consult any counsel

10         of their choosing about remaining in the class—including Interim Class Counsel,
           Sparacino, or any other attorney to whom an absent class member wishes to speak.

11

12        All this information could be included in the class notice, should the class be certified.  But

13  should the Court wish to proceed along these lines, Sparacino is willing to meet-and-confer with

14  Interim Class Counsel over the terms of such a pre-notice disclosure.  The parties could then

15  submit a joint proposal or, failing that, competing proposals for the Court's consideration.  This

16  sort of disclosure (though unnecessary) should be enough to protect Interim Class Counsel's

17  interests while avoiding the overbroad, speech-chilling restrictions their Motion currently seeks.

18                        **CONCLUSION**

19        Interim Class Counsel's Motion should be denied.

20

21

22

23

24

25

26

27

28

1   DATED:  April 13, 2021                    Respectfully Submitted,

2

3                                             By:  /s/ *Brian D. Shapiro, Esq.*
                                              _____

4                                             Brian D. Shapiro, Esq.
                                              Nevada Bar No. 5772
5                                             LAW OFFICE OF BRIAN D. SHAPIRO, LLC
                                              510 S. 8th Street
6                                             Las Vegas, NV 89101
                                              Tel:  (702) 386-8600
7                                             brian@brianshapirolaw.com
                                              *Attorney for Sparacino PLLC*
8

9                                             Geoffrey M. Klineberg, Esq.
                                              (*Pro Hac Vice Motion Pending*)
10                                            District of Columbia Bar No. 444503
                                              Joshua D. Branson, Esq.
11                                            (*Pro Hac Vice Motion Pending*)
                                              District of Columbia Bar No. 981623
12                                            KELLOGG HANSEN TODD FIGEL &
                                                   FREDERICK, P.L.L.C.
13                                            Sumner Square
                                              1615 M Street, N.W. Suite 400
14                                            Washington, D.C. 20036
                                              Tel: (202) 326-7900
15                                            jbranson@kellogghansen.com
                                              *Attorneys for Sparacino PLLC*
16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of April 2021 a true and correct copy of

**SPARACINO PLLC'S OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION TO COMPEL SPARACINO PLLC TO STOP COMMUNICATING WITH ABSENT MEMBERS OF THE PROPOSED CLASS AND FOR RELATED RELIEF** was served via the District Court of Nevada's ECF system to all counsel of record who have enrolled in this ECF system.

/s/ *Brian D. Shapiro, Esq.*

Brian D. Shapiro, Esq.