Don Springmeyer (Nevada Bar No. 1021)
KEMP JONES, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
(702) 385-6000/Fax: (702) 385-6001
d.springmeyer@kempjones.com

*Liaison Counsel for the Proposed Class*

[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| **Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury, on behalf of themselves and all others similarly situated,**<br><br>　　　　　　　　**Plaintiffs,**<br><br>　v.<br><br>**Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,**<br><br>　　　　　　　　**Defendant.** | No.: 2:15-cv-01045-RFB-BNW<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF EMERGENCY MOTION TO COMPEL SPARACINO PLLC TO STOP COMMUNICATING WITH ABSENT MEMBERS OF THE PROPOSED CLASS AND FOR RELATED RELIEF** |

Case No.: 2:15-cv-01045-RFB-BNW

PLAINTIFFS' REPLY IN SUPPORT OF EMERGENCY MOTION TO COMPEL SPARACINO PLLC TO STOP COMMUNICATING WITH ABSENT MEMBERS OF THE PROPOSED CLASS AND FOR RELATED RELIEF

## I.    Introduction

Plaintiffs seek relief to protect absent class members from serious harms caused by ethical violations Sparacino LLC ("Sparacino") has committed.

<u>Ethical Violations</u>. Sparacino's first major ethical violation was sending a misleading solicitation letter to absent class members. Deficient in many ways, one of its primary flaws was to give fighters a false sense of urgency about the need to contact Sparacino to protect their legal rights. Mot. at 4, 10-11. Sparacino admits that solicitations are improper when they give the recipient a "false sense of urgency." Opp. at 8. Sparacino also admits that its initial solicitation letter did in fact "urge" the recipient "to reach out to Sparacino to discuss the potential client's legal options." Sp. Decl. at 5, ¶18. Yet there is no need for absent class members to take any action at this time. So Sparacino in effect concedes what Interim Class Counsel ("Class Counsel") allege: the first solicitation letter gave members of the proposed Bout Class a false sense of urgency about the need to contact Sparacino to protect their legal rights, just the kind of misleading impression that courts have found improper in soliciting clients.[1]

Sparacino committed another major ethical violation by soliciting as clients MMA fighters that Class Counsel represent. In particular, Sparacino admits for the first time in its opposition brief that it solicited *four* out of the eleven fighters that Class Counsel represent individually. Opp. at 14 n.9. That misconduct is all the more egregious because Sparacino boasts special competence in investigating cases. Indeed, that is one of only two relevant areas of competence that Sparacino claims. Sp. Decl. at 5-6. The other one is handling the "client-facing aspects of a matter." *Id*. at 6. In contrast, Sparacino acknowledges it lacks basic competence in litigating antitrust cases like this one on its own, retaining the right in its contracts with fighters

---

[1] *See e.g.*, *In re McKesson HBOC, Inc. Secs. Litig.*, 126 F. Supp. 2d 1239, 1243-46 (N.D. Cal. 2000) (attorney solicitations were misleading where they did not "identify the court-appointed lead plaintiff and counsel or the procedures safeguarding the appropriateness of class certification" and "communicate[d] a gratuitous air of urgency"); *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, No. 05-MD-1720 (JG), 2014 WL 4966072, at *25 (E.D.N.Y.) (solicitations misleading that created a false sense of urgency).

1

Case No.: 2:15-cv-01045-RFB-BNW

PLAINTIFFS' REPLY IN SUPPORT OF EMERGENCY MOTION TO COMPEL SPARACINO PLLC TO STOP COMMUNICATING WITH ABSENT MEMBERS OF THE PROPOSED CLASS AND FOR RELATED RELIEF

in this case to abandon them if it cannot find a partner firm capable of litigating antitrust claims on their behalf. Opp. at 11; Sp. Decl. ¶¶40, 43. It is all the more disturbing, then, that Sparacino failed to conduct an adequate investigation of the docket in this case to identify which fighters Class Counsel represent individually. Had Sparacino taken that obvious step, it would not have improperly solicited four of Class Counsel's individual clients.

<u>Risks</u>. Nor are these and Sparacino's other ethical transgressions harmless. They create significant risks for prospective class members. Sparacino's communications encourage fighters to consider opting out of any class that this Court might certify *even though Sparacino concedes having no relevant expertise*. If class members follow Sparacino's uninformed advice and opt out, they will not be able to benefit from any class recovery. Sparacino says that it hopes to "finalize a co-counsel relationship" with experienced antitrust lawyers and retains the right to withdraw from representing absent class members if it fails to do so. Sp. Decl. at 9-10, ¶¶40, 43. But Sparacino may find only an inadequate partner—how would it know, given its admitted lack of expertise?—or it may lose yet another partner after its clients have already opted out. Similarly, Sparacino has indicated it may abandon its clients if it fails to solicit enough fighters to make the litigation economically attractive to it. *Id*. But Sparacino may err about the number of clients it needs to make a profit to its liking—again, how would it know, given its lack of expertise?—or it may lose clients after the opt-out deadline and find itself unable or unwilling to proceed. In either case, Sparacino may desert the clients it improperly solicited after they have lost the right to participate in a class recovery. That could easily cost individual fighters tens or even hundreds of thousands of dollars. That is real harm.

<u>Remedy</u>. To protect the absent class members, Plaintiffs respectfully ask the Court, among other things, to:

(1) find Sparacino's conduct was unethical;

(2) require Sparacino to honor its promises and the law on contacting class members;

(3) require Sparacino to honor its promise to allow fighters to rescind their retention of Sparacino up to 45 days after the opt out deadline the Court sets; and

2

(4) authorize Class Counsel to send letters to absent class members to clarify their rights.

Sparacino's arguments about the relief Class Counsel seek are upside down. It contends, for example, that court-approved Class Counsel—who have litigated for the fighters for over half a decade—should not be able to send a Court-approved letter to absent class members clarifying the fighters' legal rights and correcting the confusion caused by Sparacino's misleading solicitations. Sparacino argues that it would not be fair or balanced for a letter to come from Class Counsel and not also from Sparacino. That claim is mystifying. It cannot be the case that Sparacino—a firm that acknowledges it is not competent to litigate antitrust claims and knows little about the record in this case—may unilaterally send multiple, misleading solicitations to absent class members but Class Counsel—who have litigated this case for over six years—should not be allowed to send accurate, Court-approved communications. Sparacino's position has no merit.

## II.  Argument

### A.  The First Solicitation Letter Was Misleading and Unethical

Sparacino violated Rules 4.1 and 7.1 prohibiting, respectively, false and misleading statements in general and false and misleading statements in communications about an attorney's services. As noted above, the parties agree that a solicitation is misleading and improper if it is inaccurate and gives the recipient a misleading sense of urgency.

Sparacino's initial solicitation letter is rife with errors and creates a false sense of urgency. Sparacino's first solicitation letter speaks of "a recent court case called *Le v. Zuffa*." Cramer Decl. Ex. 2, at 1. This case is not recent—it is over six years old—and false talk of recency creates a misimpression of urgency. The letter also says that in *Le v. Zuffa* "a federal judge recently ruled that MMA athletes who competed in UFC events in the United States between 2010 and 2017 may have claims for compensation against the UFC under our Nation's [sic] antitrust law, the Sherman Act." *Id*. That statement too is inaccurate. As the Court well knows, it recently announced its intent to certify a class, but that ruling will not address whether MMA athletes have satisfied the elements of their claims, just what the right procedure is for

3

Case No.: 2:15-cv-01045-RFB-BNW

PLAINTIFFS' REPLY IN SUPPORT OF EMERGENCY MOTION TO COMPEL SPARACINO PLLC TO STOP COMMUNICATING WITH ABSENT MEMBERS OF THE PROPOSED CLASS AND FOR RELATED RELIEF

adjudicating them is. And, again, the letter's talk of a (mischaracterized) "recent" event creates a false sense of urgency. Sparacino's solicitation letter goes on to say, "We would be honored to represent you if your claim is viable and you choose to sue the UFC." *Id*. at 3. That statement too is misleading. It omits that the Court has announced its intent to certify a class action, that the recipient has *no need* to file a lawsuit to benefit from the class action, and that the recipient in fact need *not act at all right now* to preserve his or her legal rights.[2]

Mr. Sparacino's declaration contends that his "First Mailer" did not "urge any action *other than* to reach out to Sparacino to discuss the potential client's legal options." Sp. Decl. at 5, ¶18 (emphasis added). But a solicitation should not *urge* any action at all, particularly when there is no need for urgent action. Mr. Sparacino thus effectively concedes an ethical violation.

**B.    The Attachment and Subsequent Mailing Did Not Cure the Ethical Violations**

Sparacino barely cites to its first solicitation letter in trying to justify its conduct. Instead, its defense is based almost entirely on language buried in the brochure attached to the first solicitation letter and in the second solicitation letter. First, Sparacino's subsequent solicitation never acknowledged in any way that its first letter may have been misleading or confusing. The second solicitation letter says that Sparacino is writing to "follow up" on the first solicitation letter and to "update you." Cramer Decl. Ex. 3, at 1. There is no hint that there were any flaws in the first letter. Fighters thus had no reason to look for information that might cause them to modify the false impressions created by Sparacino's first letter.

Second, Sparacino's argument is inappropriately technical. Fighters are not lawyers. They should not be expected to comb through multiple documents to search for discrepancies in technical language. If, for example, Sparacino wanted to correct the misimpression its first letter created that fighters need to file a lawsuit or talk to Sparacino to protect their legal rights, it should have acknowledged the risk of that misimpression right up front and said that fighters do

---

[2] Indeed, Sparacino's initial letter does not use the words "class action" at all, much less inform the solicited fighters that they are members of a proposed class that the Court has stated it intends to certify. Sparacino's brochure and second letter do identify this case as a class action, but as explained below, that does not cure the inaccuracy of Sparacino's initial letter.

4

Case No.: 2:15-cv-01045-RFB-BNW

PLAINTIFFS' REPLY IN SUPPORT OF EMERGENCY MOTION TO COMPEL SPARACINO PLLC TO STOP COMMUNICATING WITH ABSENT MEMBERS OF THE PROPOSED CLASS AND FOR RELATED RELIEF

not need to take any action to benefit from this class litigation. Instead, it sandwiched any clarifying language between a mischaracterization of the second solicitation letter as a mere update and a renewed effort to solicit the fighters.

Third, Sparacino exacerbated matters by unilaterally sending a second solicitation letter during the meet and confer process. Plaintiffs contended a corrective letter should come from Class Counsel. Sparacino preferred otherwise. Without warning, and after requesting that Class Counsel postpone a call to negotiate next steps, Sparacino sent its second solicitation letter. That increased the risk that absent class members would ignore any future efforts to clarify their rights, as the mailings accumulate.

Sparacino's actions find no support in the main case it cites for the proposition that it could compensate for a misleading solicitation letter by sending yet another unilateral solicitation. That case, *Jubinville v. Hill's Pet Nutrition, Inc.*, 2019 WL 1584679 (D.R.I. Apr. 12, 2019), involved a company that sold specialty dog food that allegedly contained excessive levels of vitamin D. The company recalled the product and offered reimbursement of the costs of the dog food and compensation for expenses incurred as a result of its purchase. The court found the company acted "diligently and with good faith in response to the recall and ensuing litigation." *Id*. at *8. Nonetheless, the court inquired whether any of the company's communications created a "risk that a consumer would be misled." *Id*. The court concluded that one communication did and ordered a corrective communication. *Id*. at *9. *Jubinville* did not find an ethical violation because the improper actions were not taken by a lawyer—legal ethics codes apply only to attorneys—and plaintiffs there did not offer any argument establishing an ethical violation. *Id*. at *10. Here, in contrast, the misleading solicitations were sent by lawyers and Plaintiffs have explained in detail why the Court should find Sparacino's actions unethical. Nor did Sparacino act diligently and in good faith. Its first solicitation letter was rife with errors, it was sent to fighters Sparacino should have known were individually represented, *see* II.C. below, and it never acknowledged that this Court had announced an intention to certify a class or that once a class is certified fighters can be represented by Class Counsel without taking any action.

5

Case No.: 2:15-cv-01045-RFB-BNW

PLAINTIFFS' REPLY IN SUPPORT OF EMERGENCY MOTION TO COMPEL SPARACINO PLLC TO STOP COMMUNICATING WITH ABSENT MEMBERS OF THE PROPOSED CLASS AND FOR RELATED RELIEF

*Jubinville* offers Sparacino no refuge.

C.     **Sparacino Violated the Ban on Contacting Represented Parties**

Sparacino also violated the prohibition in Rule 4.2 on contacting parties about a matter regarding which they have legal representation. As noted above, Sparacino mailed solicitations to *four* of the eleven fighters that Class Counsel represent individually. Multiple public filings in this case should have alerted Sparacino to those attorney-client relationships. In an apparent defense of its improper actions, Sparacino notes that its first misleading solicitation told recipients to "disregard the letter" if already represented by a lawyer in this matter. Opp. at 3. But the "no contact" rule does not have an exception based on such boilerplate warnings.

Sparacino attempts to shrug off its resulting ethical violations in a single footnote, Opp. at 14, n. 9, claiming it was confused because not all of Class Counsel's individual clients were named as plaintiffs in the amended class action complaint. Sp. Decl. at 15. But a firm with any experience investigating class actions, which Sparacino says it has, would know that Class Counsel often represent clients individually that are not put forward as class representatives. Given that Sparacino claims expertise at investigating, and that Class Counsel's representation of these individual clients was apparent from the docket, it follows that Sparacino closed its eyes to the obvious. Thus, Sparacino's assertion that its improper conduct was "unintentional and inadvertent," Opp. at 14, n.9, does not provide an excuse or justification; it constitutes an admission of culpability. *See* Model Rule 4.2, comment 8 ("[A]ctual knowledge may be inferred from the circumstances. *See* Rule 1.0(f). Thus, the lawyer cannot evade the requirement of obtaining the consent of counsel by closing eyes to the obvious.").

Sparacino also relies on an ethics opinion from the D.C. Ethics Bar, which it claims permits a lawyer to communicate with "a person who may wish to retain the lawyer and discharge [its] current lawyer."[3] But Sparacino fails to disclose that the very same ethics opinion

---

[3] Opp. at 14, n.9 (quoting D.C. Ethics Op. 215 (1990), https://dcbar.org/getmedia/44d1c67d-166e-4698-b594-8bf4d0e48c15/DC_RPC_02_2021_Opinions_Only).

6

Case No.: 2:15-cv-01045-RFB-BNW

PLAINTIFFS' REPLY IN SUPPORT OF EMERGENCY MOTION TO COMPEL SPARACINO PLLC TO STOP COMMUNICATING WITH ABSENT MEMBERS OF THE PROPOSED CLASS AND FOR RELATED RELIEF

limits this statement to "when *the client* has sought the lawyer's advice."[4] The fighters here have not sought out Sparacino; Sparacino solicited the fighters. The D.C. ethics opinion specifically notes that the ethical rules prohibit "a lawyer who has given **unsolicited** advice to a layperson from accepting employment resulting from the advice" if it is misleading and involves overreaching, both of which are true of Sparacino's solicitations here.[5]

Sparacino may have also violated Rule 4.2 in regard to other absent members of the proposed class. Plaintiffs noted in their moving papers that some courts treat absent class members as represented parties before class certification[6] and others after class certification.[7] While most courts hold that the "no contact" rule applies once a class is certified,[8] Plaintiffs have

---

[4] D.C. Ethics Op. 215 (1990), https://dcbar.org/getmedia/44d1c67d-166e-4698-b594-8bf4d0e48c15/DC_RPC_02_2021_Opinions_Only (emphasis added).

[5] *Id*. (bold in original).

[6] *See* Motion at 14 (citing *Pollar v. Judson Steel Corp.*, No. C 82-6833 MPH, 1984 WL 161273 (N.D. Cal. Feb. 3, 1984); *Dondore v. NGK Metals Corp.*, 152 F. Supp. 2d 662, 666 (E.D. Pa. 2001).

[7] *See, e.g.*, *McKenzie L. Firm, P.A. v. Ruby Receptionists, Inc.*, No. 3:18-CV-1921-SI, 2020 WL 2789873, at *2–3 (D. Or. May 29, 2020) ("As a result of class certification and appointment of class counsel, an attorney-client relationship is formed between class counsel and all absent class members on all matters regarding the litigation."); *Baleja v. Northrop Grumman Space*, No. EDCV17235JGBSPX, 2020 WL 5078814, at *2 (C.D. Cal. July 30, 2020) (quoting *Walker v. Apple, Inc.*, 4 Cal. App. 5th 1098, 1107 (2016)) ("[O]nce a class is certified, class counsel represent absent class members for purposes of the ethical rule that prohibits communication with represented parties."); *O'Connor v. Uber Techs., Inc.*, No. 13-CV-03826-EMC(DMR), 2016 WL 107461, at *4 (N.D. Cal. Jan. 11, 2016) ("[The utility of the information sought by Uber is questionable because the case has been certified for class treatment, and the 'putative class members' for whom Uber sought information are now class members. Uber's lawyers may not communicate with them absent class counsel's permission."); *Kirola v. City & Cty. of San Francisco*, No. C 07-03685 SBA, 2010 WL 3505041, at *1 (N.D. Cal. Sept. 7, 2010) (noting "the applicable rules of Professional Conduct prohibit communications by an attorney with a represented client without express consent of the attorney, including communications with individual class members once a class action has been certified."); *see also Parks v. Eastwood Ins. Servs., Inc.*, 235 F. Supp. 2d 1082, 1083 (C.D. Cal. 2002) (quoting *Kleiner v. First National Bank of Atlanta,* 751 F.2d 1193, 1207 n. 28 (11th Cir.1985)) ("In a class action certified under Rule 23, Federal Rules of Civil Procedure, absent class members are considered represented by class counsel unless they choose to 'opt out.' Defendants' attorneys are subject to the 'anti-contact' rule, and must 'refrain from discussing the litigation with members of the class as of the date of class certification.'").

[8] *See* MANUAL FOR COMPLEX LITIGATION § 21.33 (4th ed. 2004) ("[O]nce a class has been certified, the rules governing communications apply as though each class member is a client of

---

7

Case No.: 2:15-cv-01045-RFB-BNW

PLAINTIFFS' REPLY IN SUPPORT OF EMERGENCY MOTION TO COMPEL SPARACINO PLLC TO STOP COMMUNICATING WITH ABSENT MEMBERS OF THE PROPOSED CLASS AND FOR RELATED RELIEF

not found any precedent addressing the solicitation of absent class members after a court *announces* it will certify a class and before it *issues an order* doing so. Nor has Sparacino.

Here, Sparacino's actions were at best opportunistic and ethically questionable. It waited to solicit the fighters until the Court's announcement that it would certify a class—allowing Sparacino to avoid the risks and costs of the last six years of litigation and to benefit from Class Counsel's and the representative Plaintiffs' hard work and the imminent enhancement in their collective strategic position. At the same time, Sparacino sent its letter before issuance of the imminent class certification order, which would have made its solicitations even clearer violations of Rule 4.2. Given Sparacino's gamesmanship, Plaintiffs submit that this Court should apply *Dondore* and *Pollar* and find that Sparacino acted unethically in soliciting absent class members *after* the Court had announced it would certify the Bout class. That ethical violation would compound Sparacino's culpability from violating the ethical rules through misleading solicitation letters and contacting the four fighters Class Counsel represent individually.

### D. Sparacino Abused the Meet and Confer Process

Sparacino implies—but does not argue—that Plaintiffs did not properly meet and confer before filing this motion. Opp. at 5. That is ironic. While the lawyers were conferring about a potential corrective communication, Sparacino undermined those discussions, requesting to defer a session and without warning sending out its second solicitation letter. Efforts to meet and confer should not involve such deceptive behavior.

Sparacino also suggests that Class Counsel improperly engaged in undefined "threats" and "bullying" that caused Scott + Scott to withdraw from its involvement in this matter. Opp. at 11. In the least vague sentence of Sparacino's brief on this point, it asserts that "Interim Class

---

the class counsel."); WILLIAM B. RUBENSTEIN, HERBERT NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS §19.6 (5th ed. 2015) [hereinafter NEWBERG ON CLASS ACTIONS] ("[F]ollowing certification, class counsel and absent class members have a formal, if unique attorney-client relationship. Absent class members are therefore "represented parties," and ethics rules prohibit opposing counsel from contacting them directly."). A minority of courts hold that the "no contact" rules does not apply until after the opt out period, but none of those courts appear to be in the Ninth Circuit. *See* Opp. at 13 (citing only out-of-Circuit cases on this point).

8

Case No.: 2:15-cv-01045-RFB-BNW

PLAINTIFFS' REPLY IN SUPPORT OF EMERGENCY MOTION TO COMPEL SPARACINO PLLC TO STOP COMMUNICATING WITH ABSENT MEMBERS OF THE PROPOSED CLASS AND FOR RELATED RELIEF

Counsel's threats—leveling accusations similar to those here—forced Scott+Scott into withdrawing from the matter." Opp. at 11. But Class Counsel have not threatened or bullied Sparacino. They have notified Sparacino of the ethical violations it has committed and indicated their plans to bring the matter to the Court. In other words, Sparacino is effectively accusing Class Counsel of nothing other than meeting and conferring. That said, Class Counsel were and are open to a negotiated resolution, as proved possible with Scott+Scott. That is perfectly appropriate. That is the purpose of meeting and conferring.

E.  **The First Amendment Supports Class Counsel, Not Sparacino**

Sparacino invokes the First Amendment, claiming that Class Counsel are improperly attempting to abridge its communications with absent class members. Here, too, Sparacino's reasoning is backwards. The First Amendment does not invalidate ethical rules against lawyers making misleading statements, creating a false sense of urgency when soliciting clients, or contacting represented parties. The Constitution does not prevent Sparacino from being held accountable for its ethical violations.

On the other hand, the Supreme Court has specifically held that even before class certification, plaintiffs' counsel litigating on behalf of a proposed class have a right to send accurate communications to absent class members, particularly in response to communications from other lawyers. *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981). That is what Class Counsel have, out of an abundance of caution, asked permission from the Court to do here. It is Sparacino that seeks to silence Class Counsel—unilaterally mailing misleading solicitations to absent class members with whom it has no relationship and protesting now that Class Counsel request leave of the Court to send accurate communications in response.

F.  **Plaintiffs Have Evidence of Fighter Confusion**

Sparacino argues Plaintiffs' motion should fail for lack of evidence of fighter confusion. Opp. at 16. This argument fails for two reasons. First, courts recognize it is sufficient to show a communication is *apt* to mislead the recipients. *See, e.g.*, *Jubinville,* 2019 WL 1584679 at *8 (requiring corrective communication based on "the risk" a recipient of a communication "would

9

Case No.: 2:15-cv-01045-RFB-BNW

PLAINTIFFS' REPLY IN SUPPORT OF EMERGENCY MOTION TO COMPEL SPARACINO PLLC TO STOP COMMUNICATING WITH ABSENT MEMBERS OF THE PROPOSED CLASS AND FOR RELATED RELIEF

be misled"); *McKesson*, 126 F. Supp. 2d at 1244-45.[9] Second, Plaintiffs *do* have evidence that Sparacino's solicitation letters were misleading. Several absent class members contacted Representative Plaintiffs and Class Counsel, confused about who the lawyers were that sent the solicitations and wondering whether Sparacino was part of Class Counsel's team or associated with Class Counsel. *See* Maysey Decl. at ¶¶3-5. Referring to the solicitation letter, for example, a former UFC fighter texted one of Class Counsel, "Is this you guys?" *Id*. at ¶5. In addition, one of the fighters that Sparacino successfully solicited has now contacted Representative Plaintiffs and Class Counsel, explaining that he was confused and signed with Sparacino because he thought that law firm is part of the team already litigating the class action. *Id*. at ¶6. Sparacino's solicitation letter was misleading, and in fact misled absent class members.[10]

**G.   Sparacino Inappropriately Impugns Class Counsel's Integrity**

Sparacino impugns Class Counsel's motivations, claiming the corrective letter Class Counsel wish to send to absent class members "may benefit Interim Class Counsel, but it disserves the putative class members they claim to represent." Opp. at 2.

---

[9] *See also Kater v. Churchill Downs Inc.*, 423 F. Supp. 3d 1055, 1064 (W.D. Wash. 2019) (citations omitted) ("Defendants' communications with putative class members are coercive and misleading. And once misinformation has been communicated to putative class members, that bell cannot be unrung. Because no official class notice has been sent, [defendant]'s coercive pop-up will be the first that many putative class members hear about these lawsuits. There is a serious risk that putative class members, having been pressured to click away their right to participate in these cases, will be inclined to disregard further communications about them. Convincing class members to take the steps necessary to secure recovery in a class action settlement or judgment is often difficult.").

[10] *See Chalian v. CVS Pharmacy, Inc.*, No. 2:16-cv-8979-AB-AGR, 2020 WL 7347866, at *4 (C.D. Cal. Oct. 30, 2020) ("[A]t least two named Plaintiffs who are represented by counsel received the text message, and they submitted declarations explaining the alarm and confusion the message caused."); *Retiree Support Grp. of Contra Costa Cty. v. Contra Costa Cty.*, No. 12-CV-00944-JST, 2016 WL 4080294, at *8 (N.D. Cal. July 29, 2016) ("Given the Court's finding that the letter is misleading, and that [plaintiff] has been able to obtain evidence of harm to particular class members so quickly, it is reasonable to assume that other members of the class have also been affected."); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720 JG, 2014 WL 4966072, at *9 (E.D.N.Y. Oct. 3, 2014) (noting class counsel, class administrator, and entities such as attorney general's office "received numerous inquiries and complaints from class members that received communications as part of [third party's] opt-out campaign" and that "[c]lass members' concerns and frustrations were many").

10

Case No.: 2:15-cv-01045-RFB-BNW
PLAINTIFFS' REPLY IN SUPPORT OF EMERGENCY MOTION TO COMPEL SPARACINO PLLC TO STOP COMMUNICATING WITH ABSENT MEMBERS OF THE PROPOSED CLASS AND FOR RELATED RELIEF

Sparacino's insinuation is false and inappropriate. Class Counsel have litigated this case on a contingent basis against a formidable Defendant and opposing counsel for more than six years. They have spent millions of dollars of their own money and tens of millions of dollars' worth of their time, risking the loss of all of it. They have, at significant cost, retained some of the top experts in the world in their respective fields to testify in this matter. Plaintiffs trust this Court is familiar with the dedication Class Counsel have demonstrated to the fighters.

Sparacino, in contrast, is in no position to cast ethical aspersions. It waited until the announcement of a class certification decision to get involved in this litigation, avoiding years of hard work and risk. Even now, it retains the right to abandon its clients if it cannot solicit enough of them to ensure itself a sufficient profit, or if it cannot retain a partner capable of actually litigating on behalf of the fighters it successfully solicits. Sparacino admits it has no expertise or capacity in antitrust litigation, it is not privy to sealed portions of the record, and it refuses to disclose whether it has even retained an economist. And yet Sparacino apparently is comfortable advising potential class members about their "legal options" in this long-running antitrust class action case, presumably suggesting to some that their "best" option is to opt out and be represented by Sparacino and another, as yet unidentified, law firm. A good argument can be made that Sparacino is not even competent to advise the fighters. *See* D.C. Ethics Rule 1.1.[11]

Sparacino also resists disclosure of its communications with the absent class members and disclosure of the terms of its retention. It does not even want to reveal the names and addresses of the fighters to whom it sent its misleading solicitation letters. And its agreements with the absent class members apparently contain "Confidentiality" and "Non-Disclosure" clauses. Sp. Decl. at 9, ¶40. These are troubling. Why does Sparacino require its fighters to maintain confidentiality and not to disclose information? Sparacino cites to the attorney-client

---

[11] Class Counsel are also informed and believe that Sparacino may require fighters to pay the law firm 40% of their recoveries as a contingent fee, and that amount is increased to 45% if the case resolves after a jury is empaneled. If true, that is higher than any fee Class Counsel would request of this Court (and of course Sparacino's fee would not be subject to Court approval).

11

Case No.: 2:15-cv-01045-RFB-BNW

PLAINTIFFS' REPLY IN SUPPORT OF EMERGENCY MOTION TO COMPEL SPARACINO PLLC TO STOP COMMUNICATING WITH ABSENT MEMBERS OF THE PROPOSED CLASS AND FOR RELATED RELIEF

privilege, Opp. at 17, but clients are free to waive that. Why would Sparacino muzzle them?

**H.     Class Counsel Seek Appropriate Relief**

The relief Class Counsel seek is appropriate, including:

<u>Finding of Unethical Conduct</u>. The Court should find that Sparacino acted unethically.

<u>Requirement that Sparacino Abide by Its Promises and the Law About Contacting Absent Class Members</u>. Sparacino promised the recipients of its second solicitation that it would not contact them again unless they take the initiative to contact Sparacino. Cramer Decl. Ex. 3, at 2; Sp. Decl., ¶36. Sparacino has now made the same promise regarding *other* absent class members until this emergency motion is resolved. Sp. Decl., ¶36. Sparacino should be held to those commitments. Moreover, once the Court issues its class certification order, the "no contact" rule will apply to absent class members. Sparacino should then be barred from soliciting or otherwise contacting absent class members about this matter.

<u>Right to Rescind Retention of Sparacino</u>. Sparacino has promised to allow fighters to rescind their retention of Sparacino without any financial penalty until 45 days after the opt-out deadline. Sp. Decl. at 9, ¶40. It should be required to honor that promise too. Sparacino attempts, however, to continue to bind fighters in perpetuity to provisions it put in its retention agreement that address "Confidentiality" and "Non-Disclosure." Fighters should not be bound by them.

<u>Communication from Class Counsel to Absent Class Members</u>. Sparacino has sent at least two communications to absent class members, an initial misleading solicitation and then a second solicitation that preempted the meet and confer process. Class Counsel should be permitted to send their own accurate communication informing absent class members that Sparacino acted unethically and that the absent class members have the right to rescind any representation agreements with Sparacino, providing additional clarifying information, and instructing absent class members how they can contact Class Counsel for advice based on extensive knowledge about antitrust litigation and the record in this case.

12

Case No.: 2:15-cv-01045-RFB-BNW
PLAINTIFFS' REPLY IN SUPPORT OF EMERGENCY MOTION TO COMPEL SPARACINO PLLC TO STOP COMMUNICATING WITH ABSENT MEMBERS OF THE PROPOSED CLASS AND FOR RELATED RELIEF

DATED: April 20, 2021.                    Respectfully Submitted,


By:     /s/ Don Springmeyer
Don Springmeyer (Nevada Bar No. 1021)
KEMP JONES, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, NV 89169
(702) 385-6000/Fax: (702) 385-6001
d.springmeyer@kempjones.com

*Liaison Counsel for the Class*


Eric L. Cramer (admitted *pro hac vice*)
Michael Dell'Angelo (admitted *pro hac vice*)
Patrick Madden (admitted *pro hac vice*)
Mark R. Suter (admitted *pro hac vice*)
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Phone: (215) 875-3000/Fax: (215) 875-4604
ecramer@bm.net
mdellangelo@bm.net
pmadden@bm.net
msuter@bm.net

Joseph R. Saveri (admitted *pro hac vice*)
Joshua P. Davis (admitted *pro hac vice*)
Kevin E. Rayhill (admitted *pro hac vice*)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, CA 94108
Phone: (415) 500-6800/Fax: (415) 395-9940
jsaveri@saverilawfirm.com
jdavis@saverilawfirm.com
krayhill@saverilawfirm.com

Benjamin D. Brown (admitted *pro hac vice*)
Richard A. Koffman (admitted *pro hac vice*)
Daniel Silverman (admitted *pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., N.W., Suite 500, East Tower
Washington, D.C. 20005
Phone: (202) 408-4600/Fax: (202) 408 4699
bbrown@cohenmilstein.com
rkoffman@cohenmilstein.com
dsilverman@cohenmilstein.com

*Co-Lead Counsel for the Class*

Robert C. Maysey (admitted *pro hac vice*)
Jerome K. Elwell (admitted *pro hac vice*)
WARNER ANGLE HALLAM JACKSON &
FORMANEK PLC
2555 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Phone: (602) 264-7101/Fax: (602) 234-0419
rmaysey@warnerangle.com
jelwell@warnerangle.com

Frederick S. Schwartz (admitted *pro hac vice*)
LAW OFFICE OF FREDERICK S. SCHWARTZ
15303 Ventura Boulevard, #1040
Sherman Oaks, CA 91403
Phone: (818) 986-2407/Fax: (818) 995-4124
fred@fredschwartzlaw.com

SPECTOR ROSEMAN & KODROFF, P.C.
William G. Caldes (admitted *pro hac vice*)
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Phone: (215) 496-0300/Fax: (215) 496-6611
wcaldes@srkw-law.com

*Additional Counsel for the Class*

# CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of April 2021 a true and correct copy of **PLAINTIFFS' REPLY IN SUPPORT OF EMERGENCY MOTION TO COMPEL SPARACINO PLLC TO STOP COMMUNICATING WITH ABSENT MEMBERS OF THE PROPOSED CLASS AND FOR RELATED RELIEF** was served via the District Court of Nevada's ECF system to all counsel of record who have enrolled in this ECF system.

By: */s/ Pamela Montgomery*
      Don Springmeyer

15

Case No.: 2:15-cv-01045-RFB-BNW

PLAINTIFFS' REPLY IN SUPPORT OF EMERGENCY MOTION TO COMPEL SPARACINO PLLC TO STOP COMMUNICATING WITH ABSENT MEMBERS OF THE PROPOSED CLASS AND FOR RELATED RELIEF