—2:15-cv-01045-RFB-PAL—

1                    UNITED STATES DISTRICT COURT

2                         DISTRICT OF NEVADA

3

4   CUNG LE, et al.,                )
                                     )
5                    Plaintiffs,     )  Case No. 2:15-cv-01045-RFB-PAL
                                     )
6         vs.                        )  Las Vegas, Nevada
                                     )  Friday, April 9, 2021
7   ZUFFA, LLC, d/b/a Ultimate       )  11:05 a.m.
    Fighting Championship and        )
8   UFC,                             )  STATUS CONFERENCE
                                     )
9                    Defendants.     )  *C E R T I F I E D   C O P Y*

10  _____

11

12

13      REPORTER'S TRANSCRIPT OF ZOOM VIDEOCONFERENCE PROCEEDINGS

14           THE HONORABLE RICHARD F. BOULWARE, II,
                   UNITED STATES DISTRICT JUDGE

15

16

17

18

19  APPEARANCES:        See Pages 2 and 3

20

21
    COURT REPORTER:     Patricia L. Ganci, RMR, CRR
22                      United States District Court
                        333 Las Vegas Boulevard South, Room 1334
23                      Las Vegas, Nevada  89101

24
    Proceedings reported by machine shorthand, transcript produced
25  by computer-aided transcription.

———2:15-cv-01045-RFB-PAL———

1  APPEARANCES:
   For the Plaintiffs:

2

3          **DON SPRINGMEYER, ESQ.**
           KEMP JONES, LLP
           3800 Howard Hughes Parkway, 17th Floor
4          Las Vegas, Nevada 89169
           (702)385-6000

5

6          **ERIC L. CRAMER, ESQ.**
           **PATRICK F. MADDEN, ESQ.**
           **MARK SUTER, ESQ.**
7          BERGER & MONTAGUE, P.C.
           1818 Market Street, Suite 3600
8          Philadelphia, Pennsylvania 19103
           (215)875-3000

9

10         **RICHARD A. KOFFMAN, ESQ.**
           **DANIEL H. SILVERMAN, ESQ.**
           COHEN, MILSTEIN, SELLERS & TOLL, PLLC
11         1100 New York Avenue, NW, Suite 500 West
           Washington, DC 20005
12         (202)408-4600

13         **JOSHUA P. DAVIS, ESQ.**
           THE JOSEPH SAVERI LAW FIRM, INC.
14         555 Montgomery Street, Suite 1210
           San Francisco, California 94111
15         (415)500-6800

16
   For Defendant Zuffa, LLC:
17

18         **SAMUEL MIRKOVICH, ESQ.**
           CAMPBELL & WILLIAMS
           700 South 7th Street
19         Las Vegas, Nevada 89101
           (702)382-5222

20

21         **WILLIAM A. ISAACSON, ESQ.**
           PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
           2001 K Street, NW
22         Washington, DC 20006
           (202)223-7300

23

24         **STACEY K. GRIGSBY, ESQ.**
           COVINGTON & BURLING, LLP
           One CityCenter, 850 Tenth Street, NW
25         Washington, D.C. 20001
            (202)662-5238

—2:15-cv-01045-RFB-PAL—

1  For Nonparty Top Rank:

2        **BROOKE DANIELLE JENKINS, ESQ.**
          O'MELVENY & MYERS, LLP
3        1999 Avenue of the Stars, 8th Floor
          Los Angeles, California 90067
4        (310)553-6700

5
   For Interested Party Bellator Sport Worldwide, LLC:
6
          **PHILIP M. KELLY, ESQ.**
7        KENDALL BRILL & KELLY, LLP
          10100 Santa Monica Boulevard, Suite 1725
8        Los Angeles, California 90067
          (310) 556-2700

9

10  ALSO PRESENT:

11        Riche McKnight, Esq., Zuffa

12

13

14

15

16

17

18

19

20

21

22

23

24

25

─2:15-cv-01045-RFB-PAL─

1          LAS VEGAS, NEVADA; FRIDAY, APRIL 9, 2021; 11:05 A.M.

2                              --oOo--

3                    P R O C E E D I N G S

4          THE COURT:  All right, counsel.  See what we can do

5     here.  I'm going to call this case of Le, et al., versus Zuffa,

6     LLC, Case Number 2:15-cv-1045.

7          Let me say this for all of those who are watching or

8     listening, the Court does not authorize the recording by video

9     or by telephone or by other audio recording of these

10    proceedings.  You must seek explicit permission from the Court

11    to record these proceedings or reproduce recordings of these

12    proceedings.  Any party or entity or individual found to be

13    reproducing recordings, video or audio or otherwise, of these

14    proceedings can be held in criminal or civil contempt of this

15    Court.  I just want to make that very clear.

16          If you want to obtain a copy of the record, you can

17    seek to do that through the normal procedure in terms of

18    requesting a transcript of the proceedings.  So let me make that

19    clear.

20          Now, let me turn to counsel to announce their presence

21    starting with plaintiffs' counsel.

22          MR. SPRINGMEYER:  Good morning, Your Honor.  Don

23    Springmeyer, Kemp Jones, for the plaintiffs.

24          MR. CRAMER:  Good morning, Your Honor.  Eric Cramer,

25    Berger Montague, for the plaintiffs.

—2:15-cv-01045-RFB-PAL—

1          MR. DELL'ANGELO:  Good morning, Your Honor.  Michael

2  Dell'Angelo, Berger Montague, also for the plaintiffs.

3          MR. MADDEN:  Good morning, Your Honor.  Patrick Madden,

4  from Berger Montague, also for plaintiffs.

5          MR. SUTER:  Good morning, Your Honor.  Mark Suter, also

6  from Berger Montague, on behalf of plaintiffs.

7          MR. DAVIS:  Good morning, Your Honor.  Joshua Davis on

8  behalf of the Joseph Saveri Law Firm, also for plaintiffs.

9          MR. KOFFMAN:  Good morning, Your Honor.  Richard

10  Koffman, from Cohen Milstein Sellers & Toll, also for

11  plaintiffs.

12          MR. SILVERMAN:  Good morning, Your Honor.  Daniel

13  Silverman, Cohen Milstein Sellers & Toll, also on behalf of the

14  plaintiffs.

15          THE COURT:  All right.

16          For the defendants?  Mr. Isaacson?

17          MR. ISAACSON:  Good to see you, Your Honor.  It's Bill

18  Isaacson, from Paul Weiss, for the defendant.

19          MS. GRIGSBY:  Good morning, Your Honor.  Stacey

20  Grigsby, from Covington and Burling, for the defendant.

21          MR. MIRKOVICH:  Good morning, Your Honor.  Samuel

22  Mirkovich, Campbell and Williams, on behalf of the defendant.

23          THE COURT:  Are there any other attorneys for any

24  related parties?  I know we have nonparties who filed in

25  relation to the Court's order.  Anyone else?

—2:15-cv-01045-RFB-PAL—

1          MR. MCKNIGHT:  Hi, Judge.  Good morning.  You have

2    Riche McKnight.  I'm actually general counsel for Zuffa/UFC.

3          THE COURT:  Okay.

4          MS. JENKINS:  Good morning, Your Honor.  You have

5    Brooke Jenkins, from O'Melveny, for nonparty, Top Rank.

6          MR. KELLY:  And good morning, Your Honor.  This is

7    Philip Kelly on behalf of nonparty, Bellator.

8          THE COURT:  Okay.  Good morning.

9          Well, I will tell you that I'm going to change slightly

10   what we're doing today.  As with many things, the Ninth Circuit

11   seems to have slightly changed my plans as relates to the

12   release of the order.  As I was set to finalize it, the Ninth

13   Circuit issues its decision recently as relates to the -- a case

14   actually from this district, antitrust case.

15         I don't find necessarily that it's going to require

16   further briefing.  I think I just have to incorporate some of

17   the law and look at again my decision and its findings with

18   respect to this current decision.  I would still expect -- I'd

19   hoped to issue the decision before this hearing, but I expect I

20   will be able to issue it next week.  But I wanted to request --

21   or not request -- ask the parties if they think anything else

22   needs to be done.

23         I think you both have submitted your positions.  I

24   think you both have briefed this issue.  The issues that are

25   identified in the opinion are issues that were raised actually

——2:15-cv-01045-RFB-PAL——

1  by the parties in this litigation, I think.  The only thing that

2  the opinion seems to make explicit is about the Court needing to

3  be very clear about what its findings are, and I think that was

4  one of the main issues, obviously, in that decision that the

5  Court found that Judge Du had not been explicit about what her

6  findings were with respect to the experts.

7      It was always my intention to make clear my findings

8  because I had had these hearings, and that's why.  And now I'm

9  very glad that I did, in part, because we might have had to do

10  this all over again, like Judge Du would, had I not actually had

11  those hearings.

12      But I don't think there's anything else that needs to

13  be done.  I'll start with you, Mr. Isaacson.  I think that the

14  issues have been briefed.  I have to look at the law and see how

15  it applies, if it's different than what I had anticipated or

16  expect -- expect, but I don't think we need further briefing.  I

17  think I can still go forward with, sort of, finalizing my order,

18  taking into consideration the arguments that have been raised

19  because I think you did in fact raise actually the arguments

20  that were raised in that case.

21      Mr. Isaacson, I'll start with you.

22      MR. ISAACSON:  Yes, Your Honor.  It's a -- it's a

23  matter of what you find useful for -- for what you're doing.  So

24  we are available for further briefing, but if you don't -- if

25  you don't think it's necessary, then that's fine.

1          THE COURT:  Well, and I don't -- but I guess my

2    question to you, Mr. Isaacson, is that it doesn't seem as if the

3    dispositive issues in that case are issues that were not raised,

4    in fact, in this case and briefed by the defendants.  Is there

5    any way in which you think that somehow you hadn't actually

6    asserted some of the arguments that were raised in that case

7    before me such that the record is unclear?

8          MR. ISAACSON:  (Pause.)  Given the -- no, it's not a

9    matter of the record being unclear, Your Honor.  So the -- you

10   know, we think that's an important case.  We think when that

11   case, as we've said in our -- in our pleading, if applied to --

12   to the record of this case, means that class certification

13   should be denied.  And -- but we have made the arguments as to

14   why class certification should be denied.  We don't have new

15   arguments to make.

16         But we do think that that decision supports many of the

17   arguments that we have made.

18         THE COURT:  I appreciate that.  Thank you,

19   Mr. Isaacson.

20         And I'm not sure who's going to argue this for the

21   plaintiffs.  Mr. Cramer?

22         MR. CRAMER:  Yes, Your Honor.  Thank you.

23         We agree that no further briefing is necessary, that

24   all of these issues have been raised, that Your Honor held a

25   seven-day seven-witness hearing sufficient to make all of the

—2:15-cv-01045-RFB-PAL—

1  rulings necessary for class certification.  I think Your Honor

2  identified the key issue.

3        The District Court Judge in the Seafood matter merely

4  found that the plaintiff's model was -- it was -- that the

5  plaintiff's model ...

6        THE COURT:  Could --

7        MR. CRAMER:  That it was not persuaded that the

8  plaintiff's model was unreliable --

9        THE COURT:  Right.

10        MR. CRAMER:  -- or incapable of proving impact.  It

11  sort of just said it's plausible that it might be able to prove

12  impact.

13        But -- but I think we've always argued to Your Honor

14  that Your Honor needs to find that the plaintiffs' model -- that

15  Your Honor is persuaded that the plaintiffs' model is capable of

16  proving impact on a class-wide basis and is reliably capable of

17  doing so.  And we --

18        THE COURT:  Well, I will say, Mr. Cramer, it does seem

19  that that -- that Ninth Circuit case does seem to resolve the

20  issue of about potentially what the standard should be.  It

21  doesn't seem to me in reading that case that the standard is

22  plausibility, because that's essentially what they reject.

23        Again, it does seem to me to be persuasiveness, which

24  is a part of the reason why, again, I had held the hearings

25  because I had anticipated that there might be an issue about

—2:15-cv-01045-RFB-PAL—

1  this, which is why in terms of the Court's finding I am going to

2  apply the persuasiveness standard and had applied it when I

3  indicated I had previously approved the class.

4          So, I do think it resolves the issue because I know

5  that you all had taken the position that the evidence satisfied

6  both standards, but the plausibility standard was the standard.

7  I don't think that that is an argument that can be made at this

8  point, Mr. Cramer.  Would you agree?

9          MR. CRAMER:  I think you're -- you're right that it's

10  prudent to -- to -- to fall back to the standard that Your

11  Honor -- if Your Honor's capable of finding it, that plaintiffs

12  have put forward reliable -- that Your Honor is persuaded that

13  the plaintiffs have put forward reliable evidence capable of

14  proving class-wide impact.

15          I would say, Your Honor, just to point out the context,

16  in the Seafood matter, recall, the issue there was whether

17  plaintiff's model, according to the -- plaintiff's model was

18  capable of proving whether 95 percent was impacted, as the

19  plaintiffs said, or 72 percent impacted, as the defendant said.

20          That issue is not really what's going on here.  Zuffa's

21  arguments here are that plaintiffs' model is not capable of

22  proving impact or damages at all to any class member, right.

23  Your Honor will recall and knows very well that Zuffa argued

24  that wage share was an improper basis for a model.  Zuffa argued

25  that there are fundamental defects in plaintiffs' model.  Those

—2:15-cv-01045-RFB-PAL—

1   are all class-wide issues.  Under Amgen every class member rises

2   or falls together on those issues.  Zuffa's experts did not

3   raise this common impact question.

4        So I just think that's an important context.  But all

5   of that said, Your Honor, I do agree that it would be prudent,

6   if Your Honor can find it, to find that Your Honor is persuaded

7   that the plaintiffs have put forward reliable methods of proving

8   class-wide impact.

9        I'd also say that there are two other important things

10  about that opinion, just for some more context.  Number one, it

11  did make clear that plaintiffs' model does not need to show

12  impact for every class member; 95 percent is enough, according

13  to that opinion.  And then there's that whole first part of the

14  opinion that makes very clear that plaintiffs' models in these

15  cases can rely upon regression analysis and other kinds of

16  statistical evidence in proving class-wide impact.  So we think

17  that those two parts of that opinion are very important.

18       But to answer Your Honor's question specifically, we

19  agree that Your Honor should find, if Your Honor can find, that

20  plaintiffs' models are reliable and you're persuaded that

21  they're capable of proving impact on a class-wide basis.

22       THE COURT:  Okay.

23       MR. ISAACSON:  Your Honor, may I?

24       THE COURT:  I fully expected that you would,

25  Mr. Isaacson.  Please, go ahead.

─────2:15-cv-01045-RFB-PAL─────

1      MR. ISAACSON:  So, Mr. Cramer is misstating the

2  standard from the Ninth Circuit case when he says that the issue

3  is whether it's capable of proving.  Your Honor actually has to

4  make a determination about -- based on the preponderance of the

5  evidence of whether the plaintiff has actually established

6  predominance under (b)(3).  It's not a matter of capability.

7      The -- likewise, he is misstating the -- how you apply

8  that decision because in the facts of that case there was a

9  critique of the plaintiff's expert and opposing models that

10  showed that, I believe, the number was only 28 -- 28 percent

11  were uninjured.  The -- here, you have a critique of the model

12  and it's showing that no one was injured.  You have to weigh

13  that.  You don't -- just because we don't -- we find 0 percent

14  as opposed to 28 percent doesn't mean that there's any change in

15  how you apply the facts.

16      In addition, he's glossing over that the model that he

17  says meets 95 percent was only run -- was not run over -- was

18  not applied to 95 percent of the class or 99 percent of the

19  class.  The model was not even applied to 13 percent of the

20  class.  It was only -- it was -- it was the large majority of

21  the class, but it was not run over that.  So there was no --

22  Dr. Singer's table which showed as opposed to the -- for the

23  1,214 class members, he showed injury to around 1,050 and didn't

24  attempt to show injury for any of -- for any of the other ones.

25      So the -- the decision's discussion of injury is

—2:15-cv-01045-RFB-PAL—

1  relevant both for the fact that our experts say even under their

2  model no one was injured and the model was not run over the

3  complete class.  But --

4       MR. CRAMER:  Your Honor, may I respond briefly?

5       THE COURT:  Hold on a second.

6       MR. ISAACSON:  That is not a request for further

7  briefing.  We have made those -- we have presented those issues

8  in -- in our post-trial brief most recently --

9       THE COURT:  And I also think that the opinion's

10  slightly different because it deals with statistical sampling,

11  which is slightly different than what happened here in terms of

12  actually having class members as opposed to trying to get a

13  representative statistical sample.  That's a very different type

14  of statistical analysis that has to be done.  And its

15  application is significant in part because it's representative,

16  quote/unquote, and it's not a full sampling.

17       But I take your point, Mr. Isaacson, that the Court

18  certainly has to weigh in on, based upon its opinion, and make

19  an explicit finding one way or another about whether or not the

20  plaintiffs' modelling sufficiently addresses sort of non --

21  quote/unquote, non-injured or uninjured class members or people

22  who may not be subject to any injury at all based upon the

23  plaintiffs' theory.

24       So I take that point.  And that's part of the reason

25  why, again, I'm going to have to go back now and modify and edit

1   my draft and take a look at to the extent to which it applies to

2   some of the arguments that are made here just to make sure that

3   to the extent I'm making findings they explicitly address the

4   issue.  Because I do think one of the issues that's raised in

5   this Ninth Circuit case is the need for the Court to make very

6   clear its findings.  I think that they -- the Ninth Circuit

7   essentially unequivocally said that if there are disputes

8   regarding predominance between the parties, the Court must make

9   a factual determination and not leave that to the jury regarding

10  disputes, particularly for modelling and the threshold

11  determination about predominance.

12        And so that's one of the issues that I'm going to go

13  back also and look at is what explicit findings would need to be

14  made because I think from a methodological and inquiry

15  standpoint that's something that I need to make sure that I have

16  done and if my analysis includes those particular findings and

17  discusses them.  So I will look at that as it applies.

18        But I take your point, Mr. Isaacson.  I do think that

19  that issue was briefed and it was a part of the testimony here

20  as well.  You all questioned Dr. Singer quite extensively about

21  what his model you believe did not cover and what it didn't

22  show.  So I think that the Court has the testimony which is why,

23  again, I don't think that I need further briefing in part

24  because we have the submissions, but we also have the testimony

25  on these issues.

 1          So I'm not sure if I cut you off, Mr. Isaacson.   I

 2    think that you had finished your point, but I did want to -- to

 3    indicate that I -- that I agree that the Court does have to look

 4    at the actual numbers as it relates to, sort of, antitrust, sort

 5    of, injury and with respect to the proposed class members.   And

 6    I think that -- that's a direct mandate from the Ninth Circuit

 7    after this -- after this decision.

 8          Mr. Cramer, did you -- did you want to say something

 9    else?

10          MR. CRAMER:   Yeah, just briefly.

11          First, Your Honor, I agree that the issue regarding

12    representative sampling in Seafood is different than the issue

13    here.   You'll recall here, Dr. Singer applied his model based on

14    individual characteristics on each and every class member and

15    found that over 99 percent were injured based on his analysis.

16          Number two, Mr. Isaacson's argument that the -- that

17    the model doesn't show injury to more than 98 percent is just

18    wrong and lawyer argument.   You'll not find that argument in any

19    of their economic reports or any of their economic testimony.

20          Mr. Isaacson's right.   They did argue the model shows

21    injury to zero, no one.   But, again, that's a common question.

22    Whether the model works or doesn't work is a common question.

23    Whether the model applies to 72 percent or 95 percent, thus

24    leaving many, many uninjured, that might inspire individual

25    issues, but that is not the issue that Zuffa's experts raised

—2:15-cv-01045-RFB-PAL—

1   and it did not come up at all at the hearing, Your Honor.

2          Dr. Singer found that over 99 percent of the class was

3   injured based on very extensive regression analysis that Your

4   Honor heard about and -- and other evidence of impact to each

5   and every class member except potentially a very few which were

6   identified and could be removed, if necessary.

7          And, finally, Dr. Singer testified that even if the

8   handful of class members that his model did not show were

9   impacted were removed, and we knew who they are, it does not

10  affect the damages because they weren't impacted.  They had zero

11  damages.  So they don't add to the damages.

12         But the ultimate conclusion, I think Your Honor is

13  exactly right, Your Honor needs to make a finding regarding

14  common impact, and that plaintiffs' model can show that more

15  than 95 percent of the class is injured which Dr. Singer

16  testified.

17         Thank you.

18         THE COURT:  Okay.  All right.  I think that will

19  suffice for any particular post-case briefing that I would need.

20  Again, I think you have all briefed this sufficiently, but I

21  appreciate your comments.

22         And, Mr. Cramer, I also wanted just to address your

23  emergency motion and figure out where we stand with that.  Does

24  the Court need to -- to weigh in?  It sounds as if there have

25  been some conversations and discussions.  So let me know about

—2:15-cv-01045-RFB-PAL—

1    where we stand and what may need to be done or not.

2           MR. CRAMER:  Yes.  So this is -- Your Honor, thank you

3    for raising it.  It's a real issue.

4           The Sparacino firm -- which has sent we believe at

5    least two misleading communications to multiple class members.

6    We don't know how many.  They will not tell us -- has a response

7    date on our emergency motion of April 13th.  So we're waiting

8    for their response.  We know that they now have local counsel

9    and counsel to represent them.  Zuffa has responded and made

10   some points.  But we believe that this is a serious issue that

11   the Sparacino firm has sent two misleading letters to an unknown

12   number of class members --

13          THE COURT:  Well, Mr. Cramer, I don't want to get into

14   the merits of being here.

15          MR. CRAMER:  Okay.  Fair enough.

16          THE COURT:  I really just needed to check to see if it

17   was still a live dispute for which we would have to set a

18   hearing.

19          MR. CRAMER:  It is a live dispute.  The response date

20   is April 13 for the Sparacino firm to respond.  We can respond

21   to whatever they file in a short amount of time.  If they file

22   on April 13th, we could respond by April 20th, and would --

23   would appreciate it if Your Honor would address it by hearing

24   shortly thereafter.

25          THE COURT:  Okay.  No, I just wasn't -- I wasn't sure

—2:15-cv-01045-RFB-PAL—

1  whether or not -- sometimes these things resolve themselves

2  before things are filed.  And of course the Court has a fairly

3  busy docket so I need to just make sure of what things I need to

4  set for the docket.

5         What I am going to do is I know that we -- we were

6  initially going to be here for the issue of disclosure.

7  However, because of the filing or the issuance of the Ninth

8  Circuit's decision that prevented me from being able to finalize

9  my decision.  So I'm -- what I am going to do is reset the --

10  reset the hearing.  We'll look at our calendar because we have a

11  trial coming up, reset the hearing for the issue of disclosure

12  in a few weeks, and we'll look at the calendar and let you all

13  know that after the decision comes down.

14         But I don't think that it would be appropriate for me

15  to resolve it today until I issue my decision and that decision

16  incorporates the most recent decision made by the Ninth Circuit

17  earlier this week on these very issues.

18         So, we will hold off on that -- that conversation for

19  now.  Is there anything else then we need to do -- so,

20  Ms. Grigsby, I appreciate you being here, but you probably were

21  here for all of the disclosure conversations.  But we'll have to

22  hold off for now, but we will come back to finalize that -- that

23  conversation and disclosure after the issuance of the order in

24  this case.

25         MS. GRIGSBY:  Yes, Your Honor.

─2:15-cv-01045-RFB-PAL─

1          THE COURT:  Okay.  Anything else, then, we need to do

2   today?  Mr. Isaacson?

3          MR. ISAACSON:  Nothing else, Your Honor.

4          THE COURT:  Mr. Cramer?

5          MR. CRAMER:  Nothing else.  Thank you, Your Honor.

6          THE COURT:  From any other party representative?

7          No?  All right, then.  If there's nothing else,

8   everyone, please be well and be safe.  We will be adjourned.

9   Thank you.

10          MR. CRAMER:  Thank you, Your Honor.

11          MR. ISAACSON:  Thank you, Your Honor.

12          (Whereupon the proceedings concluded at 11:25 a.m.)

13                            --oOo--

14               COURT REPORTER'S CERTIFICATE

15

16       I, PATRICIA L. GANCI, Official Court Reporter, United

17   States District Court, District of Nevada, Las Vegas, Nevada,

18   certify that the foregoing is a correct transcript from the

19   record of proceedings in the above-entitled matter.

20

21   Date:  May 12, 2021.

22                          /s/ **Patricia L. Ganci**

23                          Patricia L. Ganci, RMR, CRR

24                          CCR #937

25