—2:15-cv-01045-RFB-PAL—

1                    UNITED STATES DISTRICT COURT

2                         DISTRICT OF NEVADA

3    CUNG LE, et al.,                )
                                      )
4              Plaintiffs,            )   Case No. 2:15-cv-01045-RFB-PAL
                                      )
5         vs.                         )
                                      )
6    ZUFFA, LLC, d/b/a Ultimate       )
     Fighting Championship and        )
7    UFC,                             )
                                      )
8              Defendants.

9
     KAJAN JOHNSON and CLARENCE       Case No. 2:21-cv-1189-RFB-BNW
10   DOLLAWAY, on behalf of
     themselves and all others        Las Vegas, Nevada
11   similarly situated,              Monday, August 21, 2023
                                      3:35 p.m.
12             Plaintiffs,
                                      STATUS CONFERENCE
13        vs.

14   ZUFFA, LLC, (d/b/a Ultimate
     Fighting Championship and
15   UFC) and ENDEAVOR GROUP
     HOLDINGS, INC.,
16
               Defendants.
17   _____

18
                    REPORTER'S TRANSCRIPT OF PROCEEDINGS
19
              THE HONORABLE RICHARD F. BOULWARE, II,
20                 UNITED STATES DISTRICT JUDGE

21   APPEARANCES:       See Pages 2 and 3

22   COURT REPORTER:    Patricia L. Ganci, RMR, CRR
                        United States District Court
23                      333 Las Vegas Boulevard South, Room 1334
                        Las Vegas, Nevada  89101

24

25   Proceedings reported by machine shorthand, transcript produced
     by computer-aided transcription.

—2:15-cv-01045-RFB-PAL—

```
 1  APPEARANCES:
    For the Plaintiffs:
 2
           DON SPRINGMEYER, ESQ.
 3         KEMP JONES, LLP
           3800 Howard Hughes Parkway, 17th Floor
 4         Las Vegas, Nevada 89169
           (702)385-6000
 5
           ERIC L. CRAMER, ESQ.
 6         PATRICK F. MADDEN, ESQ.
           BERGER & MONTAGUE, P.C.
 7         1818 Market Street, Suite 3600
           Philadelphia, Pennsylvania 19103
 8         (215)875-3000

 9         RICHARD A. KOFFMAN, ESQ.
           COHEN, MILSTEIN, SELLERS & TOLL, PLLC
10         1100 New York Avenue, NW, Suite 500 West
           Washington, DC 20005
11         (202)408-4600

12         JOSHUA P. DAVIS, ESQ.
           JOSEPH SAVERI, ESQ.
13         THE JOSEPH SAVERI LAW FIRM, INC.
           555 Montgomery Street, Suite 1210
14         San Francisco, California 94111
           (415)500-6800
15

16

17  /////

18

19

20

21

22

23

24

25
```

2:15-cv-01045-RFB-PAL

1  APPEARANCES CONTINUED:

2  For Defendant Zuffa, LLC:

3          **J. COLBY WILLIAMS, ESQ.**
           **ARIANA REED, ESQ.**
4          CAMPBELL & WILLIAMS
           700 South 7th Street
5          Las Vegas, Nevada 89101
           (702)382-5222
6
           **WILLIAM A. ISAACSON, ESQ.**
7          PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
           2001 K Street, NW
8          Washington, DC 20006
           (202)223-7300
9

10  ALSO PRESENT:
           Riche McKnight, Esq., Zuffa
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
                    ─2:15-cv-01045-RFB-PAL─
```

1          LAS VEGAS, NEVADA; MONDAY, AUGUST 21, 2023; 9:30 A.M.

2                              --oOo--

3                    P R O C E E D I N G S

4          THE COURT:  Please be seated.

5          COURTROOM ADMINISTRATOR:  The matter now before the

6    Court is Le versus Zuffa, Case Number 2:15-cv-1045-RFB, and

7    Johnson versus Zuffa, Case Number 2:21-cv-1189-RFB.  Counsel,

8    please make your appearances beginning with the plaintiff.

9          MR. CRAMER:  Good afternoon, Your Honor.  Eric Cramer

10   for the plaintiffs.

11         MR. DAVIS:  Good afternoon, Your Honor.  Josh Davis for

12   the plaintiffs.

13         MR. SAVERI:  Good afternoon, Your Honor.  Joseph Saveri

14   on behalf of the plaintiffs.

15         MR. MADDEN:  Good afternoon, Your Honor.  Patrick

16   Madden on behalf of the plaintiffs.

17         MR. KOFFMAN:  Good afternoon, Your Honor.  Richard

18   Koffman on behalf of the plaintiffs.

19         MR. SPRINGMEYER:  Good afternoon, Your Honor.  Don

20   Springmeyer on behalf of the plaintiffs.

21         THE COURT:  Good afternoon.

22         For the defendants?

23         MR. ISAACSON:  Bill Isaacson, Your Honor -- good

24   afternoon -- for the defendants.

25         THE COURT:  Okay.

─2:15-cv-01045-RFB-PAL─

1          MR. MCKNIGHT:  Good afternoon.  Riche McKnight for the

2   defendants.

3          MR. WILLIAMS:  Good afternoon, Your Honor.  Colby

4   Williams on behalf of the defendants.

5          MS. REED:  Good afternoon, Your Honor.  Ariana Reed on

6   behalf of the defendants.

7          THE COURT:  Good afternoon.

8          Now, I know that we also have some people who have

9   dialed in to listen to these proceedings.  One of the things I

10  want to make clear is that the only official recording of these

11  proceedings that can be made is that by the court reporter.  So

12  the Court does not give permission for any party or entity to

13  audio record these proceedings or to republish or publicize such

14  a recording.  I just want to be clear so that we don't have

15  audio recordings that are being disseminated because the Court

16  will find anyone in contempt who does that publicly who is on

17  the audio conference call.

18         With that, we have a couple of things that we need to

19  address today as it relates to scheduling.  So I've received the

20  different parties', sort of, status reports.  And obviously I

21  want to address the issue of the timing of the schedules in this

22  case.

23         So, as I understand it, one of the questions --

24  Mr. Isaacson, I assume that you're going to be speaking on

25  behalf of the defendants.  Is that correct?

—2:15-cv-01045-RFB-PAL—

1      MR. ISAACSON:  Yes, Your Honor.

2      THE COURT:  So one of the issues relates to what

3  appears to be a request for additional discovery in the Le case

4  where there's been class certification.  I'm not saying that I

5  would permit that, but I wanted to get an understanding as to

6  what you thought would be the additional discovery that you

7  would be requesting, what would be the nature of it.  I mean,

8  there's already been extensive discovery done in this case, but

9  I was curious when I saw that reference in your filing as to

10  what it is that you would be seeking before I would discuss the

11  scheduling.

12      MR. ISAACSON:  Yes, Your Honor.  We've -- we haven't

13  done a formal -- the parties haven't had motion practice on

14  this, but we detailed this in our -- in the joint filing at the

15  beginning of the year before the last status conference.  And

16  then in this -- in this filing we talked about there have been

17  changes in competition.  And that's what we would be focusing on

18  is the state of competition and the state of competitors that

19  they have shown -- that they bolster the fact that this is a

20  healthy, competitive environment and has been, as we have said

21  throughout the years, and that barriers to entry are low, and

22  that the so-called barriers to competition have not turned out

23  to be true.

24      So all --

25      THE COURT:  So what would that look like, Mr. Isaacson?

1   I know you -- I mean, you raise that actually in the class

2   certification motion.  So what I'm trying to figure out is what

3   else would you be actually identifying or presenting as it

4   relates to that in terms of discovery to get us into how long

5   you think that would take.  Because if the argument is that

6   there are competitors and we want to show market share as

7   relates to that and dominance in the market, I'm trying to

8   understand why that wouldn't have already been gathered at this

9   point in time.  And so what would be beyond what's been

10  presented to me in terms of the information and the expert

11  reports and related material for the class certification?

12          MR. ISAACSON:  Well, these are facts that have happened

13  after the discovery cut-off, which is why they've not been put

14  in front of you because there's been no opportunity to do that.

15          THE COURT:  Well, what would that be?  So, for example,

16  Mr. Isaacson, would that be more expert reports of, sort of,

17  market share or would it be -- I'm trying to get a sense of

18  exactly what that would look like.

19          MR. ISAACSON:  I would say three principal things.  One

20  would be updated third-party discovery of the competitors, and

21  that's what we talked about the last time we had a status

22  conference.  The second thing is that we intend to -- I mean,

23  some of this information is in our control.  We will present

24  testimony about this at the stage of summary judgment at any

25  trial.  And we don't want to have a claim of surprise by the

1  plaintiffs when we do this.  So we want to be able to have them

2  take whatever discovery they want of what we have to say on

3  these issues.

4        And then with respect to the expert report, yes,

5  updating the expert reports, and I think Your Honor is pointing

6  to one issue here.  It's not a complete redo of all of the

7  discovery, right.  So we are not talking about going through the

8  contracts that would have to be gone through, for example, for

9  the Johnson case.  We are talking about proving for the Le case

10  that the developments in competition have shown that what we

11  have said is true, that there's a healthy, competitive market,

12  low barriers to entry, and not actually barriers to competition

13  from the alleged anticompetitive acts.

14        THE COURT:  Okay.

15        MR. ISAACSON:  And so --

16        THE COURT:  And how long do you think that that would

17  take?

18        MR. ISAACSON:  So if you -- if you want to combine it

19  with Johnson, then the plaintiffs want to do their full

20  Johnson --

21        THE COURT:  So let me just be clear from the outset.

22  These cases will be tried separately.  So Le will be tried first

23  on damages and then Johnson will be tried later.  Based upon my

24  review of the records in these cases, I don't think that it

25  would be appropriate or efficient to do that, in part, because

1  I'm not -- it's not clear to me that there aren't some very

2  significant different legal issues in Johnson that wouldn't

3  warrant a different type of attention.

4         So I want to be clear, having looked at this, I have

5  already decided that pending the outcome of the class

6  certification appeal, which I know is forthcoming, and the

7  motions for summary judgment, if there is no resolution from the

8  standpoint of the class being decertified or that decision being

9  overturned or the Court grants summary judgment, this case in Le

10  will be tried next year, as soon as possible.  And looking at my

11  trial schedule that looks like most likely it would be March or

12  April.

13         So because of the age of this case, I have one other

14  case, but I'm going to put this case on a fast track for trial.

15  I say that, Mr. Isaacson, because I'm still willing to consider

16  working backwards as it relates to discovery.  It doesn't seem

17  to me, given the discovery that has occurred, that there would

18  need to be that much more.  And I wanted to sort of pin you down

19  a little bit on that because it seems to me that much of this

20  information, one, is in the control of the parties.

21         So if you're talking about experts updating the reports

22  as it relates to particularly the issue of market dominance

23  which I think is primarily what you're talking about, sort of,

24  evidence in fact of a well operating market, it would seem to me

25  that much of that would come in through two different types of

—2:15-cv-01045-RFB-PAL—

1   testimony, experts or you would have executives from Zuffa or

2   competing entities providing testimony or depositions, again, if

3   I allowed that.  I'm not saying that I would.

4          MR. ISAACSON:  Right.

5          THE COURT:  But that seems to me something that could

6   be done in a fairly short period of time.  I don't know that

7   there would be anything that would prevent that.

8          Now, again, this all depends upon what the status of

9   the appeal is as it relates to the Ninth Circuit and how they

10  address that and how long they may take as it relates to the

11  case.  But I'm just saying that so that you all understand it

12  would be the Court's intention to try the case as soon as

13  possible absent the case being overturned or reversed by the

14  Circuit or a higher court.  But I still would consider the issue

15  of discovery at this point in time.

16         MR. ISAACSON:  Because --

17         THE COURT:  And given what you're saying to me,

18  Mr. Isaacson, it seems to me potentially two to three months at

19  most would be appropriate, and I would work backwards from there

20  as relates to motion for summary judgment.  But I want to first

21  hear from Mr. Cramer, I assume, about the propriety of

22  discovery, and then I'll come back to you in just a moment,

23  Mr. Isaacson.

24         MR. ISAACSON:  Can I just say one thing, Your Honor?

25         Because of the need for third-party discovery here, I

—2:15-cv-01045-RFB-PAL—

1   would suggest that three to four months would be more

2   appropriate.

3          THE COURT:  Okay.  When you say "third-party

4   discovery," tell me what that means exactly.  Because it seems

5   to me that what it would really mean is just other competitors

6   saying we were able to get into the business or we weren't able

7   to get into the business.  What other types of third-party

8   discovery, Mr. Isaacson, would you would be thinking about

9   besides executives from competitors, quote/unquote?

10         MR. ISAACSON:  I think it's much stronger than that

11   from the competitors, but there is the need for deposition and

12   documents from third parties, the competitors, and that --

13   they're not parties before the Court, so that always takes a

14   little bit more negotiation and time.  And I'm just suggesting

15   one month more than the Court is suggesting because two to three

16   months is an unusual amount of time I think for when you're

17   talking about third-party discovery from what we consider, you

18   know, businesses and the media companies that they operate with

19   to show that they are able to compete effectively, their viewers

20   are able to compete effectively, and that they have athletes to

21   compete effectively.

22         THE COURT:  Okay.  Thank you, Mr. Isaacson.

23         Mr. Cramer.

24         MR. CRAMER:  Your Honor, thank you.

25         Our view is that no additional discovery in Le is

─2:15-cv-01045-RFB-PAL─

1  necessary.  The relevant period, as Your Honor knows, in Le goes

2  from 2005 to 2017.  And this Court found for purposes of class

3  certification that Zuffa had engaged in an exclusionary scheme

4  to suppress rivals, foreclose competition, cause anticompetitive

5  effects, and suppress the pay of the fighters during that

6  period.  Nothing that Mr. Isaacson can show happening in 2022 or

7  2023 could undo the wrongs committed in the past.

8          THE COURT:  So, Mr. Cramer, the only question then is,

9  there is some case law that says some consideration of

10 information after the class period may be relevant to consider

11 the operation of the market.

12          MR. CRAMER:  Your Honor, that -- that is true.

13          THE COURT:  Right.

14          MR. CRAMER:  It is sometimes relevant that after the

15 period of discovery there may be things that happen in the

16 marketplace that could bear upon the prior conduct and their

17 prior effects.  But in those circumstances those cases involve

18 very short amounts of time.

19          Here, Your Honor, we have studied a 12-year period.  We

20 have showed foreclosure of competition, anticompetitive effects,

21 and suppressed pay for the class period from 2010 to 2017.  That

22 is a very long and durable monopsony.  There is no law saying

23 that a monopsony has to last forever, for 10 years.

24          Zuffa is like a drunk driver being accused of getting

25 into an accident and saying, "I sobered up the next day so,

———2:15-cv-01045-RFB-PAL———

1    therefore, I should get off for the drunk driving accident."

2            Your Honor found that there was enough evidence in the

3    record that during this period, from 2005 to 2017, Zuffa

4    excluded competitors.  Zuffa coerced the fighters.  Zuffa

5    suppressed their pay.  So there's -- Zuffa had higher barriers

6    to entry, including the exclusionary contracts and all of the

7    provisions in those contracts.  Those existed.  Your Honor found

8    they existed.  There's nothing that could be shown in 2023 that

9    could make those not exist.

10           And, in fact, Mr. Isaacson has argued in his status

11   report that some of the contracts have changed between the end

12   of 2017 and 2023.  Well, if that's true, if there were some

13   changes in the contracts, then nothing that can happen in 2022

14   or 2023 can bear upon what the contracts -- the effects of the

15   contracts and the effects of the scheme in 2015 and '14 and '13.

16           Mr. Silva, who Your Honor cited multiple times in the

17   class certification order, retired in 2017.  The Fertittas are

18   no longer in charge.  All of those facts, all of those findings

19   are complete.  These parties engaged in three years of

20   discovery.  We have four Singer reports.  They have four Topel

21   reports.  There are multiple other experts.  This case has been

22   discovered.  We have shown monopsony power.  We have shown high

23   barriers to entry.  We have shown harm.  There is literally

24   nothing that they could show in 2023 that could be relevant to

25   the current case.

1          THE COURT:  Talk to me a little bit, Mr. Cramer, about

2    in the context of this case the appellate schedule.  I know we

3    don't know that for certain, but -- and how I should take that

4    into consideration.  As I've indicated, I mean, I don't know

5    what the Ninth Circuit will do, but given the age of this case,

6    assuming for the moment in terms of planning purposes that the

7    appeal is not successful as relates to the order, would there be

8    any reason why we could not try this case in March or April of

9    next year?

10          MR. CRAMER:  I see no reason why this case cannot be

11   tried in March or April of next year.  Your Honor, we cited

12   statistics in the status report that the Ninth Circuit typically

13   resolves petitions for 23(f) appeals, which Zuffa says it's

14   going to take, within 90 days.  Their brief is due Wednesday.

15   We have 10 days to respond.  And then the Ninth Circuit

16   typically acts, either decides to accept the petition or not, in

17   90 days.  The Ninth Circuit rejects 80 percent of 23(f)

18   petitions.

19          So most likely this will be resolved three months from

20   today, well before March or April, with sufficient time to

21   prepare for trial, brief summary judgment, and proceed to trial

22   at that point.

23          THE COURT:  My other question then is you've asked for

24   a motion for summary judgment schedule that would be within 30

25   days.  Would it not make sense for at least for it to be 90 days

——2:15-cv-01045-RFB-PAL——

1  for the Court to know whether or not in that instance the Ninth

2  Circuit had decided to take the case up on appeal?

3          MR. CRAMER:  I think I would say that I don't -- Your

4  Honor will have -- the briefing will be done by the time the 90

5  days are up.  And I don't imagine that anything that happens in

6  the Ninth Circuit is going to bear upon summary judgment.  But

7  I --

8          THE COURT:  Well, the only thing is that if they were

9  to reverse my order as relates to class certification -- and I

10  don't know what that would mean in terms of how they did that.

11  I mean, they have different ways of doing that.  They could

12  potentially reverse it and say, you know, "This is it.  You're

13  done," or they could reverse it and say, "Well, you didn't make

14  a finding on this or that particular fact, and we are remanding

15  it for consideration of that particular fact."

16          And I say that because then what potentially could

17  happen would there would be a discussion about adding detailed

18  information to the record.  So, you know, again, thinking about

19  the appellate decision, I mean, there are two possibilities, or

20  three.  One is that they just affirm.  Two, they basically

21  vacate my order and essentially send it back without really the

22  possibility of there being certification.  Or, three, they send

23  it back with questions, and if that happened, then there would

24  most likely be in my experience some period where the discovery

25  might actually be reopened specifically to address what were the

—2:15-cv-01045-RFB-PAL—

1  questions.  And in that instance it seems it makes sense to wait

2  on summary judgment at least for the 90 days since that's how

3  long the Circuit will take potentially to decide to take it up,

4  you know, in terms of the motion -- excuse me -- the appeal.

5          MR. CRAMER:  Yeah, that makes -- that makes perfect

6  sense, Your Honor, to wait at least to see whether the Ninth

7  Circuit takes the petition given those statistics and given what

8  Your Honor --

9          THE COURT:  Well, also given the fact that we're not

10  going to try the case until March or April of next year.  I

11  mean, the parties can proceed with the preparation.  That's why

12  I wanted to give you all the potential trial date.  We have to

13  double-check that, but -- that date, but that's what it looks

14  like.

15          And then actually on that point also, Mr. Cramer, how

16  long do we think the trial in this case is going to take?

17          MR. CRAMER:  We think the trial would take four to five

18  weeks.  It could be shorter.  We will try to be efficient with

19  the trial, but something like four to five weeks.  Could be four

20  weeks, but we might want to reserve four to five weeks.  I

21  haven't conferred with Mr. Isaacson about how long their case

22  might be.

23          THE COURT:  Mr. Isaacson, would you agree just as to

24  the trial length?  You think four to five weeks is a fair

25  assessment?

—2:15-cv-01045-RFB-PAL—

1        MR. ISAACSON:  That's a reasonable estimate.

2        THE COURT:  Okay.  All right.

3        Let me see if I had -- oh, since you're up, Mr. Cramer,

4  the other question I had relates to -- and this is also

5  timing -- injunctive relief in Le.  So these are all important

6  considerations.

7        Is there going to be a request for injunctive relief as

8  it relates to the Le class any time in the near future or before

9  the trial would take place in this case?  Now, because it seems

10  to me most of the fighters in the class that I certified have

11  retired, but not all of them.  The other issue is is there going

12  to be a request -- even to the extent that these fighters have

13  retired, there are provisions in some of those contracts which

14  would prevent them from coming out of retirement and fighting

15  for someone else potentially.  Is there going to be any requests

16  from the plaintiffs in the Le class for injunctive relief as it

17  relates to the contracts that they were under or still under or

18  retired under?

19        MR. CRAMER:  Your Honor, yes, the lead plaintiffs

20  intend to seek injunctive relief.  We've pled that in the

21  complaint, and we intend to seek it under 23(b)(3) which the law

22  allows.  Your Honor found that at least three of the plaintiffs:

23  Fitch, Vera, and Mr. Le, all have standing because they were

24  subject to the challenged conduct when the complaint was filed.

25  And there are multiple cases that we cited to Your Honor in the

1  status report that allow injunctive relief claims to be brought

2  under (b)(3).  And so we intend to bring those claims.

3          The injunctive relief is going to be very

4  straightforward.  Your Honor found that the contracts that Zuffa

5  engaged in with the fighters have a number of provisions that

6  the evidence shows are exclusive or exclusionary:  the exclusion

7  clause, the right-to-match clause, the champions clause, the

8  exclusive negotiation clause.  What we would want to do is to

9  ask Your Honor, who would be in charge of injunctive relief, to

10  eliminate those clauses or to pare them back substantially so

11  that the fighters could become free agents within at least a

12  year.  And that would free up competition in the marketplace and

13  allow for competition, real competition to thrive.

14          So that's what we have asked for.  That's what we will

15  ask for.  Your Honor found that those provisions are in every

16  one of the fighters' contracts so they apply universally across

17  the class.  So Your Honor's order would apply to all of the

18  class members.

19          THE COURT:  Well, is there any requirement for any

20  additional discovery as it relates to injunctive relief?

21          MR. CRAMER:  Your Honor, that's -- we think that is

22  true, and that's why we would want to pair the injunctive relief

23  claims in Le with the trial or after the trial in Johnson.

24  Because Mr. Isaacson's correct that injunctive relief claims

25  relate to what's going on in the marketplace today, not in 2017.

2:15-cv-01045-RFB-PAL

1  So what we present to Your Honor is a liability and damages

2  trial in Le, taking us from 2010 to 2017, then discovery in

3  Johnson for what's going on over the last six years,

4  competitive -- the contracts and what they look like, the

5  competitive effects, try the Johnson case, and then ask for

6  injunctive relief in Le and Johnson.

7         Your Honor, we submit if Your Honor sets this case for

8  trial, the Le case for trial, for the damages and liability next

9  year, we'll focus the minds of all of the parties.  It might

10 lead to resolution of everything or it might streamline things

11 going forward.  People will learn a lot as we learned during

12 trial.  It could resolve -- if we try the Le case for liability

13 and damages, that might lead to a resolution of Johnson, right.

14        So we think that that is the appropriate way to proceed

15 to move forward as Your Honor suggested with the liability and

16 damages trial in Le next year, early next year, to pair the

17 injunctive relief claims of Mr. Fitch, Vera, and Le on behalf of

18 the certified class in Le with the Johnson case and Johnson

19 discovery, and move forward in that fashion.

20        THE COURT:  Okay.  So, we would be lifting the stay in

21 the Johnson case as relates to discovery and moving forward?

22        MR. CRAMER:  Yes.

23        THE COURT:  This is your proposal.

24        MR. CRAMER:  That is our proposal.  We will start

25 discovery in Johnson and move that case forward.

─2:15-cv-01045-RFB-PAL─

1        Now, Your Honor, as we pointed out in the status

2   report, one glaring or big issue in Johnson is going to be that

3   Zuffa imposed arbitration clauses and class action bans in or

4   about 2019 in their contracts with the fighters.  So that's

5   going to be a large issue in the Johnson case that does not

6   exist in the Le case.  And presumably Mr. Isaacson and Zuffa and

7   Endeavor will try to enforce those clauses and shrink the

8   Johnson case down to a small size.

9        We're going to seek to vacate those clauses.  We think

10   that they were imposed improperly, but that's going to be a big

11   issue in Johnson.  And as the Supreme Court has said, decisions

12   on motions to compel arbitration are immediately appealable.

13        So the Johnson case is going to take a while, which is

14   why we think Your Honor is absolutely correct to set the Le case

15   for trial for damages and liability early next year.  And then

16   let's get going with Johnson, and we'll see what happens with

17   arbitration and class action bans.  And then we can do the

18   injunctive relief claims after that.

19        But, Your Honor, we think that will be efficient

20   because, again, trial focuses the mind.  It may cause the whole

21   thing to resolve or it may cause a streamlined case going

22   forward in Johnson.

23        THE COURT:  Okay.  Thank you, Mr. Cramer.

24        I want to ask Mr. -- Mr. Isaacson, I guess my one

25   question is, why would I reopen discovery at this point?  I

————2:15-cv-01045-RFB-PAL————

1   mean, some of the issues you raised, first of all, would have

2   been relevant to class certification as well and there is some

3   discussion of them.  But why would I at this point reopen

4   discovery as it relates to -- again, I'm focussed on the motion

5   for summary judgment and the schedule for that.

6          MR. ISAACSON:  So keep -- we filed the class

7   certification motions and had the hearing back in 2019, but even

8   if they were relevant to that, the fact that they'd be relevant

9   at trial or at summary judgment is the issue.

10         Mr. Cramer is saying remarkable things, Your Honor.  He

11  is saying that it has been decided by this Court that there's a

12  durable monopsony power, that these issues as a matter of fact

13  that they existed have been decided by this Court.  This Court

14  was quite clear it granted class certification, but said the

15  Court, in Footnote 21, reiterates that its findings in this

16  order are not meant to be dispositive as to any factual dispute

17  beyond class certification.

18         We have a full range of factual disputes that they want

19  to go to trial with.  We are entitled under these circumstances

20  to present some updated evidence, and it's not just about 2023

21  as Mr. Cramer suggests.  I mean, for example, Bellator in June

22  of 2018 announced a five-year streaming deal with DAZN and

23  reported that they would be doubling -- it was reported that

24  they would be doubling the revenue and be profitable.

25         In the year -- in 2020 they did a deal with CBS Sports

1  Network and the next year with Showtime.  The PFL debuted in

2  2018.  All right.  And it did an annual distribution deal with

3  NBC Sports Group and Facebook that year.  All of those are

4  relevant to the heart of their case for the years that they are

5  talking about.

6          THE COURT:  Well, which case?  Because --

7          MR. ISAACSON:  The Le case.

8          THE COURT:  Well, let me ask you this question,

9  Mr. Isaacson.  If something happened in 2007 -- let's say '18,

10  which is after the class period, right, I'm sure they're first

11  going to argue to me that it's not relevant.  Things can change

12  in the market.  It doesn't mean that during the relevant time

13  period there couldn't have been a monopsony.

14          And I guess my question to you is, I'll go back and

15  look at the record because certainly this is also information

16  that would have been relevant for class certification.  I don't

17  know if there was ever a request to me to even provide this

18  updated information even in the class certification context.

19          MR. ISAACSON:  We had no obligation to do so --

20          THE COURT:  I'm not saying you did, but if you're

21  asking me to open up discovery, right, the Court has to consider

22  the extent to which there was diligence in pursuing the

23  discovery previously.  And so I'm asking you that question,

24  Mr. Isaacson, because I do think it's appropriate for me to at

25  least consider at this point whether or not the defendants were

—2:15-cv-01045-RFB-PAL—

1   diligent in pursuing and presenting this information.  If it

2   would have been relevant for class certification, which it seems

3   like it probably was, why it wasn't pursued then.

4           MR. ISAACSON:  I -- Your Honor, there is just no

5   obligation on our part back in 2017 to 2019 to say that for

6   class certification we need to reopen discovery for a -- for a

7   trial on the merits --

8           THE COURT:  I'm not talking about for trial.  I'm

9   talking about even for class certification.  What I'm saying,

10  Mr. Isaacson --

11          MR. ISAACSON:  It doesn't show a lack of diligence,

12  Your Honor.

13          THE COURT:  But what I'm saying to you is, the

14  arguments that you raise could in fact have been part of the

15  Court's consideration had they presented information to me as

16  relates to class certification.  I don't think you're denying

17  that.

18          MR. ISAACSON:  Oh, I am denying it.  I am denying it,

19  Your Honor.  They would have fully said that it was on the

20  merits.  And we did not make part of our class certification

21  motion that --

22          THE COURT:  Okay.  So let's be clear.

23          MR. ISAACSON:  -- there was competition.

24          THE COURT:  This case -- I mean, even though we had

25  this discussion, I think class certification is about merits.

—2:15-cv-01045-RFB-PAL—

1  This rigorous analysis in a case like this involves a great deal

2  of discussion of merits.  Mr. Isaacson, the arguments of the

3  plaintiffs and the defendants in this case are merits based in

4  certain respects, right, in this case.

5        And so to say that the Court didn't have to weigh the

6  merits at least as it relates to some of the arguments I think

7  is not accurate.  There was detailed information that was

8  provided to the Court about the case.

9        Now, the merits-based analysis is not the standard.

10 The Court is not the fact finder as relates to ultimate

11 liability, but there were extensive reports and there was

12 extensive information provided to the Court.

13       MR. ISAACSON:  Your Honor, we are --

14       THE COURT:  And --

15       MR. ISAACSON:  I'm sorry.  I didn't mean to interrupt.

16       THE COURT:  And so I think there's a real issue for me

17 to consider as it relates to whether or not it would be

18 appropriate at this point to reopen discovery as it relates to

19 information in this case.

20       MR. ISAACSON:  Your Honor --

21       THE COURT:  I put --

22       MR. ISAACSON:  I'm sorry.  You paused and I interrupted

23 again.

24       THE COURT:  That might have been provided earlier.  And

25 so, Mr. Isaacson, I'm saying that to you.  I'm not saying I

—2:15-cv-01045-RFB-PAL—

1  wouldn't award it, but I think it is a question that I have as

2  it relates to what's transpired in this case.  And if you're

3  saying to me that because there's a separate stage, there's

4  class certification and then there -- right, if the class is

5  certified, there's still the opportunity to make merits-based

6  arguments, at least somewhat, on a motion for summary judgment,

7  and so there's a distinction there and, therefore, you didn't

8  have an obligation at the class certification stage to obtain

9  all of the information that you might otherwise want to present,

10  then I guess that would be your, sort of, best version of the

11  argument that you're raising with me right now.  Because I think

12  that's what you're saying to me, right?

13       MR. ISAACSON:  I do not -- yeah, in addition I would be

14  saying, if you want the best version of our argument, Your

15  Honor, we should make a motion and lay it out for you.  But the

16  argument that Bellator was a vigorous competitor, that PFL was a

17  vigorous competitor, that the others, were not issues at class

18  certification.  They were not advanced as reasons to deny class

19  certification.  They were accepted as merits-based arguments

20  that were common to the class.

21       We were not presenting evidence about that in the

22  hearing.  We weren't talking about Bellator.  We weren't talking

23  about Bellator as a reason to deny class certification and, you

24  know, as far back as 2019.  Those were reserved for the merits

25  stage.

2:15-cv-01045-RFB-PAL

1              And as a practical matter what has happened is that due

2    to the -- all the events that have led to where we are today,

3    there have been significant developments that can be developed

4    within several months to show that the state of competition up

5    through 2014 was extraordinarily healthy because anybody could

6    enter, anybody could compete, and those -- and some of those

7    companies were around and we knew they were going to be big.

8    And all of that is relevant at trial.

9              And right now what the plaintiffs want is for you to

10   exclude evidence at trial without the factual record being

11   developed, right.  And that just denies us the ability to put on

12   our defense.

13             THE COURT:  Mr. Cramer.

14             MR. CRAMER:  Yeah.  There's no limiting principle to

15   Mr. Isaacson's point.  Under the Isaacson test, a case never

16   gets to trial because they can always argue that, "Okay.  There

17   hasn't been competition since 2005 to 2017.  But what happened

18   finally in 2018, it just happens to be after the discovery

19   period, there was competition.  And that shows that -- that, oh,

20   everything was really healthy from 2005 to 2017."  That does not

21   make sense.

22             MR. ISAACSON:  With respect, that's not my argument.

23             THE COURT:  Well, hold on, Mr. Isaacson.  Let him --

24             MR. CRAMER:  The second point is if in fact what

25   Mr. Isaacson is really arguing is, and I think he also said

———2:15-cv-01045-RFB-PAL———

1   this, that the market was healthy from 2005 to 2017 because

2   there was Bellator and there was PFL and there was what were

3   these other competitors, well, then they've already made this

4   argument.  Your Honor considered this argument for class

5   certification purposes.  Granted, Your Honor --

6           THE COURT:  The issue that I'm concerned with as it

7   relates to what Mr. Isaacson said, Mr. Cramer, is that there are

8   different stages of a litigation in this type of a case.  And

9   there is the possibility of merits-based arguments that may not

10  be appropriate in the context of class certification.  And the

11  question is, for me, whether or not in the context of the case

12  and how this case has proceeded whether it would be appropriate

13  to allow for some of that discovery as it relates to some of

14  these merit-based arguments that the defendants intend to raise.

15          And what I would want to hear from you as it relates to

16  that is any argument about why procedurally it would not be

17  appropriate or in terms of, sort of, equity why it would not be

18  appropriate.

19          MR. CRAMER:  Yeah.  So procedurally, Your Honor, Your

20  Honor allowed -- we had an extensive factual discovery period

21  that went on for I think about three years.  There were multiple

22  expert reports.  I mean, at some point discovery needs to end

23  and cases need to go to trial.  Again, there's no limiting

24  principle to Mr. Isaacson's argument.  There always could be

25  competition in the future.

1        And then the second point is, Mr. Isaacson argues that

2   the contracts have changed materially or potentially after 2017.

3   Well, if that's true, if for example they made them less

4   restrictive, presumably that's what he's arguing, then

5   competition after 2017 helps us.  It shows, hey, if you make

6   the -- the contracts less restrictive, then you can have

7   competition.  So if that's what he's trying to show, it refutes

8   his case.

9        And then, finally, there really is no credible argument

10  that the UFC has more competition now than it did during the

11  class period.  The UFC has only grown in stature and power.

12  They have enough power to impose on every single fighter from

13  top to bottom a clause in that contract in addition to all of

14  the other clauses that says you can no longer sue Zuffa in

15  court.  You can no longer pursue a class action either as a

16  class member or as a class plaintiff.

17       That is a lot of power to be able to impose on what we

18  think are significant professional athletes, and they imposed

19  that in 2019.  So there really is no credible argument that

20  somehow there are competitors now that are -- that are able to

21  compete really with Zuffa for the UFC?  It's not true.

22       But in any event, the point is that there's no limiting

23  principle.  We are done with discovery.  It's over.  The case

24  went through June 2017, and Bill wants -- Mr. Isaacson wants to

25  talk about things that happened in 2018 and 2019 and 2020, and

———2:15-cv-01045-RFB-PAL———

1   we just don't think that that's relevant.

2            Your Honor, as the judge, has control over the docket.

3   Your Honor allowed the parties extensive discovery.  Your Honor

4   allowed the parties a seven-day seven-witness hearing on class

5   certification.  Mr. Isaacson made a number of merits arguments.

6   Their experts made merits arguments.  Your Honor considered

7   merits arguments as part of the class certification analysis.

8   And in our view the case is ready for trial.

9            THE COURT:  Okay.

10            MR. ISAACSON:  Your Honor, when counsel argues, we --

11   he wants you to find that we have no credible evidence at this

12   point.  Now we're -- again, we're talking about denying us due

13   process.

14            THE COURT:  No, so let me be clear, Mr. Isaacson --

15            MR. ISAACSON:  I'm talking about his argument.

16            THE COURT:  I know, but here's what I'm focussed on.

17   Did you have a fair and equal opportunity to be able to pursue

18   this information in the three-year discovery period?  That's a

19   relevant consideration for me.  And so what I'm going to do,

20   because I don't want to go back and forth here, is I'll just --

21   at this point I'm not going to order it be reopened.  I'll let

22   you file a motion.  That way you can lay out some of the

23   arguments that you've made as it relates to the reopening of

24   discovery, and they can respond, and then we can go forward.

25            But what I am going to do is I'm going to work

—2:15-cv-01045-RFB-PAL—

1   backwards from the approximate trial date of March or April of

2   next year with respect to the motions because I'm going to do

3   the same thing as it relates to motion for summary judgment.

4           So what we're going to do is this.  I'm going to order

5   that ... hold on.  Give me a moment here.

6           By October 23rd defendants will file their motion to

7   reopen discovery and any dispositive motions for summary

8   judgment.

9           MR. SAVERI:  I'm sorry, Your Honor.  October 23, is

10  that what you said?

11          THE COURT:  October 23.

12          MR. SAVERI:  Thank you.

13          THE COURT:  I would expect there to be at least two

14  different types of motions.  One would be a motion for summary

15  judgment.  The other would be a motion to reopen discovery

16  because I want to consider them together.  And then I will give

17  the plaintiffs three weeks to respond, which would be --

18          MR. CRAMER:  Your Honor, may I ask for four weeks?

19          THE COURT:  Sure.

20          MR. CRAMER:  Okay.

21          THE COURT:  One, two ...

22          MR. ISAACSON:  And would Tuesday, the 24th, be okay,

23  Your Honor, one more day?

24          THE COURT:  I'm sorry.  Is that a Monday or -- did I

25  look at the ...

———2:15-cv-01045-RFB-PAL———

1          MR. ISAACSON:  Yeah, I have it as Monday, the 23rd, you

2   have it, and if we could do it on the 24th.

3          THE COURT:  Okay.

4          So 10/24 and then we'll ... then 11/21 for the

5   response.  And then since there's a holiday, I'll give you four

6   weeks, too, Mr. Isaacson.  December 19th for reply.

7          So what I'm also going to do is order that the stay in

8   Johnson be lifted, and the parties should present a discovery

9   plan/schedule to the Court within 30 days from today.

10          MR. ISAACSON:  I'm sorry.  I couldn't hear that, Your

11   Honor.

12          THE COURT:  30 days from today.  So that would be --

13   let's just say we'll go with the same -- oh, no, that's two

14   months.  I'm sorry.

15          Let's say by September 19th joint discovery plan to the

16   Court for Johnson.  I do think it would be appropriate in that

17   case to have a separate briefing schedule for motions to compel

18   arbitration because I think that the -- I would want to decide

19   that as soon as possible.  I don't know how much discovery would

20   be needed by the parties as it relates to that.  But it does

21   seem to me that there's a straightforward issue there, but,

22   again, I'll let the parties work that out.

23          MR. ISAACSON:  Will -- we will meet and confer about

24   this issue.  I do not know that the plaintiff has an arbitration

25   clause.

—2:15-cv-01045-RFB-PAL—

1          MR. CRAMER:  That's correct.  The named plaintiffs do

2    not, but the class members do.

3          THE COURT:  So my goal would be that's something I want

4    to try to decide earlier obviously than class certification.

5    Whenever you think would be appropriate for -- I would assume,

6    Mr. Isaacson, there's going to be some argument about class

7    certification related to the predominance or commonality because

8    of that.

9          MR. ISAACSON:  I just wanted to say, it fits more into

10   the lane you're describing.  And we will meet and confer with

11   them about that.

12         MR. CRAMER:  Fair enough.

13         THE COURT:  Okay.

14         And the only part of that discovery order, Mr. Cramer,

15   that I want to hear from you and Mr. Isaacson on is as it

16   relates to potential injunctive relief for the Le class, I'm not

17   sure what discovery would be necessary, but you should certainly

18   fold that into this particular discovery plan.  So you all can

19   work that out without, Mr. Isaacson, you all conceding that in

20   fact that is something that -- well, it hasn't been certified by

21   the Court.  The Court only found standing at this point in time.

22   I do think that there's going to need to be separate briefing to

23   establish that in fact a class can be certified on that basis

24   since me finding standing is not the same thing as awarding

25   class-wide injunctive relief.

————2:15-cv-01045-RFB-PAL————

1      So you all can discuss when that filing would occur,

2  but it seems to me that that probably should occur some time

3  after the determination of the appeal in this case.  But I leave

4  that to you all to work that out.

5      Any questions about this schedule so far?

6  Mr. Isaacson?

7      MR. ISAACSON:  No, Your Honor.  At some point -- you're

8  the second judge to say there's a major trial coming up in those

9  months, but neither one has been ordered yet.  So I may have to

10  have that discussion at some point, but ...

11      THE COURT:  I appreciate that.  I mean, there are a lot

12  of -- there are a lot of moving parts here.  I mean, I will say

13  this.  We can work with the scheduling.  Because of this case

14  and it being an older case that I have, I will give it priority

15  and I will move around other cases to accommodate the parties.

16  I think obviously the major issue here is what happens on the

17  appeal.

18      MR. ISAACSON:  Yes.

19      THE COURT:  Once that's decided one way or another,

20  that will dictate I think the scheduling for this case because

21  it could very well be that, you know, they take the case up on

22  appeal.  The appeal takes -- I mean, if they did and they went

23  through obviously this record and heard the parties' arguments,

24  that could be a substantial period of time where they would take

25  to handle the appeal.  And then if -- you know, if it happens

2:15-cv-01045-RFB-PAL

1   what happened with Olean where they have a panel and then they

2   go back en banc, we don't know.  But I have to proceed with the

3   assumption that that's not going to happen just so we have a

4   schedule, and then obviously that would change.

5           So I am sensitive to the fact, Mr. Isaacson, that you

6   may have to make a request as it relates to the trial date.  I

7   only set that so you all would have some sense of when the Court

8   would want, sort of, aspirationally to set this.  But there may

9   be things that intervene and I appreciate that.

10          MR. ISAACSON:  And I appreciate that, Your Honor.

11          THE COURT:  So the last thing I want to address is

12  sealed documents.  It would be my intention to unseal all of the

13  records in this case with the exception of records that contain

14  personal-identifying information.  If I recall there -- and that

15  falls into a couple of categories.  One is I think there's some

16  medical information as it relates to some individuals.  I also

17  believe in some of the text messages and e-mails, Mr. Isaacson

18  and Mr. Cramer, there are phone numbers and other identifying

19  information.

20          And I know that last time we had some requests from I

21  believe a third-party entity to redact some of the records.  I

22  will say based upon the Court's certification order and the

23  public interest as it relates to these records and their age the

24  Court doesn't find a basis to seal any information except for

25  the information that I have identified.

——2:15-cv-01045-RFB-PAL——

1              Now, that could still be a somewhat difficult process

2    because of the amount of discovery that's here.  So I'm going to

3    need to rely upon the parties to be able to present me with

4    records that are redacted.  My goal would be to essentially have

5    the parties present to me proposed continued redactions which

6    the Court would file.  So I wouldn't unseal all of the records.

7    What we would do is essentially provide a supplemental version

8    of these records that would have some redactions for the

9    identifying information that I have discussed.

10             MR. ISAACSON:  And when you say all records in the

11   case, are you ...

12             THE COURT:  Anything that was filed that was subject to

13   a protective order, because there was one protective order, but

14   I think there were multiple motions to seal as we went back

15   through the record.  And so it would be all of those records

16   that were sealed pursuant to a motion to seal which I think

17   was -- which were filed pursuant to, sort of, the master

18   protective order.

19             MR. ISAACSON:  Right.  Are you referring, though, to --

20   relating to the class certification proceedings or are we

21   supposed to go back earlier than that?

22             THE COURT:  All of the records.  So it would be the

23   entire case.

24             So what I'm going to -- and this is going to be -- I

25   know it may take a little bit of time so I'm going to give you

—2:15-cv-01045-RFB-PAL—

1   two months to do that.  I'm going to have you all work this out

2   together and again -- and provide this hopefully jointly.  If

3   you have some exceptions that you want to seek, you can file a

4   motion.  But for now the only records that I will allow to

5   continue to be sealed are personal-identifying information,

6   phone numbers, other e-mail addresses, medical information.

7   Everything else will be unsealed.

8           And so the parties will have -- and we'll use that same

9   date -- until October 24th to present to me their joint

10   presentation of the record with redactions.  I will give you

11  each an opportunity to separately file a further request or any

12  interested party a further request on that same date for

13  additional redactions, but for now, I want to be clear, the

14  joint filing should only cover the areas that I have discussed.

15  And it doesn't mean that I will automatically release the

16  records then.  I will consider what is filed in conjunction with

17  that as it relates to a further request to seal, but I will tell

18  you that I'm unlikely to grant such a request absent unusual

19  circumstances and I do intend to unseal almost the entire record

20  in this case except for the information I have described.

21          MR. ISAACSON:  So, Your Honor, because that's the same

22  day as summary judgment and reopening discovery motions, I'm

23  sure there are people that I am working with that would

24  appreciate if we weren't doing all of those -- if we have to

25  have all of these documents with the phone numbers --

─────2:15-cv-01045-RFB-PAL─────

1          THE COURT:  Okay.

2          MR. ISAACSON:  -- refiled, it would --

3          THE COURT:  That makes sense.  I was trying -- I assume

4   you all would be -- I mean, at these firms you all would be

5   working on these things at the same time, but that makes sense.

6   I'm --

7          MR. ISAACSON:  At least an extra week would be --

8          THE COURT:  Yes, that's fine.  I don't have an issue

9   with that because I know you all will be working on this and

10  other things.  So we can set it for October 31st.

11          (Pause.)

12          THE COURT:  So, Mr. Isaacson, is there anything else

13  that we need to address today as it relates to these two cases?

14          MR. ISAACSON:  Not that I'm aware of, Your Honor.

15          THE COURT:  Mr. Cramer, anything else?

16          MR. CRAMER:  Not today, Your Honor.  There's another

17  issue, but we'll present that in a filing.

18          THE COURT:  I think -- well, if you're going to be

19  talking in that filing about this other issue about I guess

20  what's this alleged, sort of, improper contact and you want a

21  hearing with respect to that, you can file a hearing with

22  respect to that.  I don't know what your timing is for that,

23  Mr. Cramer, because that's a separate issue, and I don't know

24  how invested the defendants are in that one way or the other.

25          Mr. Isaacson, I'm not sure how little or how

—2:15-cv-01045-RFB-PAL—

1  substantially you want to be involved with that.  It doesn't

2  seem that involves you all directly at all.  So I don't know

3  that the scheduling matters to you one way or the other, does

4  it?

5          MR. ISAACSON:  It does not.

6          THE COURT:  Okay.  So what I would think would be

7  appropriate, Mr. Cramer, is within that two-month time period

8  for you all to file something --

9          MR. CRAMER:  Okay.

10          THE COURT:  -- to seek a hearing so that we can get

11  this resolved.  Again, my goal would be that if the case -- the

12  certification order is affirmed by the Circuit and any higher

13  Court, that then the case would be ready to go to trial some

14  time early next year.  And then what I would anticipate is

15  obviously we would meet after whatever the appellate decision is

16  and talk about what the next steps would be in any event.

17          MR. CRAMER:  Thank you, Your Honor.

18          THE COURT:  Okay?  So anything else then?

19          MR. CRAMER:  No, Your Honor.

20          THE COURT:  Mr. Isaacson?

21          MR. ISAACSON:  Nothing else, Your Honor.

22          (Court conferring with law clerk.)

23          THE COURT:  All right.  Thank you, everyone.  Be well

24  and be safe.  We'll be adjourned.  I'm going to stay on the

25  bench for a few moments.  Thank you.

2:15-cv-01045-RFB-PAL

1      MR. CRAMER:  Thank you, Your Honor.

2      MR. ISAACSON:  Thank you, Your Honor.

3      (Whereupon the proceedings concluded at 4:26 p.m.)

4                           --oOo--

5                 COURT REPORTER'S CERTIFICATE

6

7      I, PATRICIA L. GANCI, Official Court Reporter, United

8  States District Court, District of Nevada, Las Vegas, Nevada,

9  certify that the foregoing is a correct transcript from the

10  record of proceedings in the above-entitled matter.

11

12  Date:  August 22, 2023.

13                           /s/ **Patricia L. Ganci**

14                           Patricia L. Ganci, RMR, CRR

15

16

17

18

19

20

21

22

23

24

25