Eli J. Kay-Oliphant, Esq. (*Pro Hac Vice Motion Pending*)
New York Bar No. 4421541
District of Columbia Bar No. 503235
Illinois Bar No. 6326136
Ryan R. Sparacino, Esq. (*Pro Hac Vice Motion to be Filed*)
District of Columbia Bar No. 493700
SPARACINO PLLC
1920 L Street, NW
Suite 835
Washington, DC 20036
Telephone:  (202) 629-3530
eli.kay-olphant@sparacinopllc.com

Brian D. Shapiro, Esq.
Nevada Bar No. 5772
LAW OFFICE OF BRIAN D. SHAPIRO, LLC
510 S. 8th Street
Las Vegas, NV 89101
Telephone:  (702) 386-8600
brian@brianshapirolaw.com

*Attorneys for Sparacino PLLC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>Defendant. | **Case No. 2:15-cv-01045-RFB-BNW**<br><br><br>**SPARACINO PLLC'S MOTION FOR RELIEF PURSUANT TO THE COURT'S INHERENT AUTHORITY** |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..........................................................................................II

INTRODUCTION AND SUMMARY .........................................................................1

BACKGROUND...........................................................................................................2

      A.    The First Mailer........................................................................................2

      B.    Class Counsel's Concerns and Sparacino's Second Mailer .......................3

      C.    Class Counsel's Attempts, in Part Successful, to Coerce Counsel to Withdraw .......4

      D.    Class Counsel Seeks, and the Court Denies, Relief ....................................4

      E.    Class Counsel Attempts to Coerce Sparacino, Again .................................5

ARGUMENT .................................................................................................................5

I.      SPARACINO'S COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS WERE AND ARE PROPER. ...............................................................................................6

II.     THE COURT SHOULD EXERCISE ITS INHERENT POWER TO REMEDY AND ENJOIN CLASS COUNSEL'S IMPROPER AND RECKLESS ACTS, WHICH WERE DONE FOR IMPROPER PURPOSES AND WHICH HAVE DISRUPTED THIS LITIGATION. ...................................................................................................12

CONCLUSION ...........................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Affeldt v. Carr*,
   111 F.R.D. 337 (N.D. Ohio 1986), *aff'd*, 827 F.2d 769 (6th Cir. 1987) ..................................14

*Aiuto v. Publix Super Markets, Inc.*,
   2020 WL 10054684 (N.D. Ga. Aug. 28, 2020) ........................................................................13

*Atari, Inc. v. Superior Court*,
   212 Cal. Rptr. 773 (Cal. Ct. App. 1985) ...................................................................................10

*Babbitt v. Albertson's, Inc.*,
   1993 WL 150300 (N.D. Cal. Mar. 31, 1993) .............................................................................10

*Baker v. FirstCom Music*,
   2017 WL 9510144 (C.D. Cal. July 27, 2017) ............................................................................15

*Barnard v. Thorstenn*,
   489 U.S. 546 (1989) .....................................................................................................................6

*Chalian v. CVS Pharm., Inc.*,
   2020 WL 7347866 (C.D. Cal. Oct. 30, 2020) ........................................................................7, 8

*Chicago Flood Litig., In re*,
   682 N.E.2d 421 (Ill. App. Ct. 1997)..........................................................................................11

*Cohen v. Brown*,
   173 Cal. App. 4th 302, 93 Cal. Rptr. 3d 24 (Cal. Ct. App. 2009) .............................................14

*Community Bank of N. Va., In re*,
   418 F.3d 277 (3d Cir. 2005).........................................................................................................7

*David v. Signal Int'l, L.L.C.*,
   735 F. Supp. 2d 440 (E.D. La. 2010) ........................................................................................10

*Domingo v. New England Fish Co.*,
   727 F.2d 1429 (9th Cir.), *modified*, 742 F.2d 520 (9th Cir. 1984)...........................................7

ii

*Dondore v. NGK Metals Corp.*,

    152 F. Supp. 2d 662 (E.D. Pa. 2001) ...................................................................10

*Espinosa v. Stevens Tanker Div., LLC*,

    2017 WL 1718443 (W.D. Tex. Apr. 27, 2017) .......................................................13

*Flatley v. Mauro*,

    39 Cal. 4th 299, 139 P.3d 2 (Cal. 2006) ................................................................15

*Fink v. Gomez*,

    239 F.3d 989 (9th Cir. 2001) ...................................................................................6

*Georgine v. Amchem Prods., Inc.*,

    160 F.R.D. 478 (E.D. Pa. 1995) ...........................................................................7, 8

*Gibbons v. CIT Grp./Sales Fin., Inc.*,

    400 S.E.2d 104 (N.C. Ct. App. 1991) ....................................................................10

*Good v. West Va.-Am. Water Co.*,

    2016 WL 6404006 (S.D. W. Va. Oct. 26, 2016)......................................................9

*Greenfield MHP Assocs., L.P. v. Ametek, Inc.*,

    2018 WL 538961 (S.D. Cal. Jan. 24, 2018) ...........................................................10

*Gulf Oil Co. v. Bernard*,

    452 U.S. 89 (1981) ................................................................................................6, 9

*Hammond v. City of Junction City, Kan.*,

    2002 WL 169370 (D. Kan. Jan. 23, 2002) .............................................................11

*Jones v. Jeld-Wen, Inc.*,

    250 F.R.D. 554 (S.D. Fla. 2008) .............................................................................8

*Jubinville v. Hill's Pet Nutrition, Inc.*,

    2019 WL 1584679 (D.R.I. Apr. 12, 2019)............................................................7, 9

*Kleiner v. First Nat'l Bank of Atlanta*,

    751 F.2d 1193 (11th Cir. 1985)...............................................................................8

*Kleiner v. First Nat'l Bank of Atlanta*,

    102 F.R.D. 754 (N.D. Ga. 1983), *aff'd in part, vacated in part*,

    751 F.2d 1193 (11th Cir. 1985) ........................................................................11

*Lloyd v. Covanta Plymouth Renewable Energy, LLC*

    532 F. Supp. 3d 259 (E.D. Pa. 2021) ................................................................10

*Masonek v. Wells Fargo Bank*,

    2009 WL 10672345 (C.D. Cal. Dec. 21, 2009) ...............................................7, 8

*McKesson HBOC, Inc. Sec. Litig., In re*,

    126 F. Supp. 2d 1239 (N.D. Cal. 2000) .........................................7, 8, 9, 10, 12

*Mevorah v. Wells Fargo Home Mortg., Inc.*,

    2005 WL 4813532 (N.D. Cal. Nov. 17, 2005) ................................................6, 7

*O'Connor v. Uber Techs., Inc.*,

    2017 WL 3782101 (N.D. Cal. Aug. 31, 2017) ...............................................6, 14

*Orlowski v. Dominick's Finer Foods, Inc.*,

    937 F. Supp. 723 (N.D. Ill. 1996) .......................................................................9

*Perkins v. Benore Logistics Sys., Inc.*,

    2017 WL 445603 (E.D. Mich. Feb. 2, 2017) ......................................................6

*Potash Antitrust Litig., In re*,

    162 F.R.D. 559 (D. Minn. 1995) .......................................................................11

*Shapero v. Kentucky Bar Ass'n*,

    486 U.S. 466 (1988) ............................................................................................8

*Swamy v. Title Source, Inc.*,

    2017 WL 5196780 (N.D. Cal. 2017) .................................................................15

*United States v. Inclan*,

    2017 WL 3337263 (D. Nev. Aug. 4, 2017) .........................................................6

*Walney v. Swepi LP*,

    2017 WL 319801 (W.D. Pa. Jan. 23, 2017) ......................................................11

*Young v. United States ex rel. Vuitton et Fils S.A.*,

   481 U.S. 787 (1987) ..................................................................................................5


**RULES**

Fed. R. Civ. P. 23...........................................................................................................7, 15

Model Rule of Prof'l Conduct 4.2 (Am. Bar Ass'n 2020)..................................1, 9, 10, 11


**OTHER AUTHORITIES**

ABA Comm'n on Prof'l Ethics & Grievances, Formal Op. 07-445 (2007)...................10

D.C. Ethics Op. 215 (1990), https://tinyurl.com/2p98afz.............................................10

Vincent R. Johnson, *The Ethics of Communicating with Putative Class Members*,

   17 Rev. Litig. 497 (1998)..........................................................................................10

Restatement (Third) of the Law Governing Lawyers (Tentative Draft No. 8, 1997)....................10

**INTRODUCTION AND SUMMARY**

Sparacino PLLC ("Sparacino") represents fifteen former fighters who are putative class members.  Those fifteen fighters have engaged Sparacino for over two years to determine whether opting out of the class, if and when that time comes, would be in their best interests.  Sparacino's offer to assist its clients and others who may be interested in engaging Sparacino promotes a critical purpose of Federal Rule of Civil Procedure 23:  helping ensure that absent class members are not forced into a class against their will.

Class Counsel seeks to curtail Sparacino's correspondence with putative class members even though the Court has not yet set any opt-out deadline or explained the opt-out process to the putative class members.  Class Counsel's wish to be the sole counsel able to communicate with putative class members is remarkable, considering Class Counsel's purported goal (and obligation) to preserve the fighters' economic freedom to contract with whomever they wish.  Indeed, Class Counsel criticizes UFC for operating in a monopolistic manner, and then operates in a monopolistic manner to exclude others from providing conflict-free advice to the absent class members who have neither decided nor taken any steps to engage Class Counsel.  Even more troubling, Class Counsel has a conflict of interest because it cannot advise absent class members regarding whether they should pursue their own claims rather than staying in the class.  Class Counsel has thus engaged in an improper, litigation-disrupting strategy to intimidate and attempt to coerce Sparacino to not provide that important counsel, free from conflict.

Sparacino's communications with putative class members occurred before the class was certified by this Court, requested no opt-out commitment nor any other immediate action, did not threaten dire consequences, and were clearly marked as lawyer-advertising material pursuant to the applicable rules of professional conduct.  The overwhelming majority of courts to consider such communications with *putative* class members have found them to be proper and that such individuals are not represented by counsel pursuant to ABA Model Rule of Professional Conduct 4.2.

Class Counsel of course knows that.  So its conduct, inappropriately threatening Sparacino and Sparacino's former co-counsel Scott+Scott LLP, to coerce them to abandon their

1   representation of putative class members, were (and continue to be) reckless, improper,

2   unethical—indeed, arguably illegal—and disruptive to the litigation.  This is bad faith.  And Class

3   Counsel already achieved part of the intended effect:  Class Counsel's threats successfully coerced

4   Scott+Scott to withdraw.  Class Counsel now continues its improper, reckless, and disruptive

5   tactics to attempt to pressure Sparacino to abandon its own ethical obligations and do the same.

6          Sparacino requests that the Court exercise its inherent power to regulate the conduct of

7   attorneys before it.  To preserve the integrity of this proceeding, the Court should deem

8   Sparacino's communications proper, allow Sparacino to communicate with putative class

9   members about their opt-out rights, stop Class Counsel from interfering with those

10  communications, and inform the putative class in an evenhanded way about the opt-out procedures

11  and their right to speak with and engage the counsel of their choosing.  Sparacino also respectfully

12  requests that the Court investigate Class Counsel's conduct and inform the putative class regarding

13  the Court's conclusions regarding the same.  These narrow remedies are amply supported by the

14  facts and law and are necessary to ensure that the putative class members fully understand their

15  rights.

16

17                              **BACKGROUND**[1]

18      **A.      The First Mailer**

19         Sparacino is a Washington, D.C.-based law firm that specializes in investigating and

20  litigating mass-tort actions.  *See* Declaration of Ryan R. Sparacino ("R. Sparacino Decl."), ECF

21  No. 809, ¶¶ 2–5.  On March 16, 2021, Sparacino sent the "First Mailer" to 223 potential clients.

22  *Id.* ¶ 11;[2] R. Sparacino Decl., Ex. A, ECF No. 810-1 (cover letter), Ex. B, ECF No. 810-2

23

24         [1] These facts are laid out fully in Sparacino's response in opposition, ECF No. 808, to
25  Class Counsel's prior Emergency Motion, ECF No. 796, related to Sparacino's communications
    with putative class members.  The Court denied Class Counsel's prior motion.  ECF No. 831.  In
26  this pleading, "ECF No." refers to the docket entry in this case.  In accordance with Federal Rules
    of Evidence 201, Sparacino, PLLC requests this Court to take judicial notice of all pleadings filed
27  in this case.

28         [2] Before sending the First Mailer, Sparacino reviewed the docket documents in a good-
    faith attempt to exclude any individuals who were already represented individually by counsel.  R.

(brochure).  The First Mailer did not ask recipients to sign anything, nor did it ask for any

commitment of any kind.  Instead, the mailer provided in relevant part (emphases added):

- "If you have already retained a lawyer for this matter, please ***disregard*** this letter."
  R. Sparacino Decl., Ex. A at 1.  "If you already have legal counsel with respect to your
  potential antitrust claims, please ***ignore*** this letter."  *Id.* at 2.

- "Based on the developments in the federal case *Le v. Zuffa*, we anticipate filing an 'opt-
  out' antitrust case against UFC in 2021.  'Opt-out' means that the plaintiffs in our case
  ***would not participate in a class action lawsuit against the UFC (Le v. Zuffa) that is
  currently ongoing and would instead chart their own course*** with the intent to
  aggressively pursue their specific legal claims against UFC."  R. Sparacino Decl.,
  Ex. B at 5.

- "A federal judge recently ruled, in a case called *Le v. Zuffa*, that the Ultimate Fighting
  Championship (UFC) may have engaged in illegal practices since 2000, and that
  former Mixed Martial Arts (MMA) fighters who fought between 2010 and 2017 in
  UFC events ***may have*** a substantial claim for compensation based upon UFC's alleged
  violation of federal antitrust law."  *Id.* at 3.

- "We are currently reaching out to MMA fighters who competed in any UFC events
  during this seven-year window ***who may wish to learn more and potentially join this
  effort***."  *Id.*

- "[W]e seek to represent MMA fighters ***who wish to learn more about their legal
  options***."  *Id.*

Besides recommending that recipients contact Sparacino to discuss their legal options, the First

Mailer solicited no other action.  Nor did it assert any deadline or suggest that time was of the

essence.  R. Sparacino Decl. ¶ 18.  Recipients were free to respond at their own pace and on their

own terms, or not at all.

### B.     Class Counsel's Concerns and Sparacino's Second Mailer

On March 23, 2021, then-Interim Class Counsel and now Class Counsel asserted to

Sparacino and Scott+Scott, among other things, that putative class members were represented

individuals.  Class Counsel also complained that the First Mailer had not discussed their work on

the case and failed to state that no action was required for putative class members to benefit from

---

Sparacino Decl. ¶ 15.

any future class recovery.  *Id.* ¶¶ 21–23.  Although Sparacino disagreed with these objections,

Sparacino promptly sent a "Second Mailer" which addressed them.  *Id.* ¶ 28.  Specifically, the

Second Mailer:

- Cited *Le v. Zuffa* (as the First Mailer had done), called it a "Class Action," and noted the Court's stated intention to certify the Bout Class.  R. Sparacino Decl., Ex. D at 1.

- Identified Interim Class Counsel, stated they had been "working on the *Le v. Zuffa* case since before it was filed in 2014," and clarified Sparacino was "not class counsel."  *Id.*

- Stated that "your interests are currently represented by Interim Class Counsel" and that "[y]ou do not need [to] take any action a[t] this time to benefit from any recovery in the Class Action," and recommended that recipients "carefully review" any future Court-approved class notice.  *Id.*

- Expressed that "[w]e believe you should consider opting out of the *Le v. Zuffa* class action," while offering to speak with potential clients about how to "decide which choice is best for you and your family."  *Id.*

**C.     Class Counsel's Attempts, in Part Successful, to Coerce Counsel to Withdraw**

Scott+Scott told Sparacino and Class Counsel it disagreed with Class Counsel's assertions

and believed the First and Second Mailers were accurate and ethical.  R. Sparacino Decl. ¶¶ 32–

34.  But Scott+Scott told Sparacino that despite that, Scott+Scott could not bear the reputational

and business risk created by Class Counsel's threat to take action directly against Scott+Scott if

they did not withdraw from the matter.  *Id.*  Due to Class Counsel's threats, Scott+Scott withdrew.

*See* Declaration of Eli J. Kay-Oliphant (the "Kay-Oliphant Second Decl."), submitted herewith as

Exhibit 1, ¶¶ 2–3.

**D.     Class Counsel Seeks, and the Court Denies, Relief**

After Scott+Scott withdrew, Class Counsel filed an Emergency Motion seeking, in part,

that this Court label Sparacino's communications with putative class members as unethical.  *See*

ECF No. 796.  At that time, even though it was proper for Sparacino to communicate with putative

members of the class, *see generally* ECF No. 808 at 12–15, *see also generally infra* Section I,

Sparacino in April 2021 pledged to this Court:

> Unless affirmatively asked to do so by an MMA fighter, Sparacino will not send mailers to any additional putative members of a potential Bout Class (i.e., the approximately 1,000 professional MMA athletes whom Sparacino has not yet

1

2

3

> contacted) until the Court resolves Interim Class Counsel's Emergency Motion.
> While that Motion remains pending, Sparacino will not communicate with any
> such absent class members unless they reach out to Sparacino directly. Nor will
> Sparacino re-contact any of the individuals to whom we have already sent a
> mailer, unless they initiate contact with us directly.

4

5   *See* ECF No. 809 at 8; *see also* Declaration of Eli J. Kay-Oliphant (the "Kay-Oliphant First

6   Decl."), ECF No. 845, ¶ 2.  After full briefing, the Court denied Class Counsel's motion.  ECF No.

7   831.

8             **E.      Class Counsel Attempts to Coerce Sparacino, Again**

9             Despite moving the Court regarding its concerns about Sparacino's communications with

10  putative class members, and having that motion denied by the Court, Class Counsel once again

11  sought to tarnish Sparacino's reputation, coerce Sparacino to abandon its engagement with its

12  clients, and deter Sparacino from continuing to develop potential client relationships with putative

13  class members.  Specifically, Class Counsel again improperly, inaccurately, and incorrectly

14  characterized Sparacino's communications as misleading in its recent pre-conference statement to

15  the Court.  *See* ECF No. 842.

16            On August 23, 2023 , Sparacino asked Class Counsel to provide any Rule 11 basis, in fact

17  or in law, that supported Class Counsel's assertions against Sparacino.  Class Counsel declined.

18  Kay-Oliphant Second Decl. ¶¶ 4–5.  Class Counsel thus makes clear it intends to pursue its

19  disruptive and reckless bad faith strategy to push Sparacino out, yet again, despite knowing it has

20  no basis to do so.

21

22                                    **ARGUMENT**

23            The Cout has the inherent authority to regulate the conduct of this proceeding, generally,

24  and Class Counsel, specifically.  Federal courts "are universally acknowledged to be vested, by

25  their very creation, with power to impose silence, respect, decorum, in their presence, and

26  submission to their lawful mandates, and, as a corollary to this proposition, to preserve themselves

27  and their officers from the approach and insults of pollution."  *Young v. United States ex rel.*

28  *Vuitton et Fils S.A.*, 481 U.S. 787, 820–21 (1987) (Scalia, J., concurring) (quoting *Anderson v.*

*Dunn*, 6 Wheat. 204, 227 (1821)); *see also Barnard v. Thorstenn*, 489 U.S. 546 (1989) (noting that federal courts' inherent authority to regulate the conduct of counsel is derived from the lawyers' role as officers of the court and the court's duty to control the proceeding before it); *United States v. Inclan*, No. 2:15-CR-00057-RFB, 2017 WL 3337263, at *4 (D. Nev. Aug. 4, 2017) (Boulware, J.) (citations omitted).  The Court also has the "inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct."  *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001) (quotation and citation omitted).  "Bad faith can be inferred from a variety of circumstances," including acts that are reckless and knowing, reckless and undertaken with an improper purpose, and actions delaying or disrupting the litigation.  *O'Connor v. Uber Techs., Inc.*, No. 13-cv-03826-EMC, 2017 WL 3782101, at *4 (N.D. Cal. Aug. 31, 2017) (citations omitted).

Sparacino's communications with putative class members were not only proper, but they served (and will continue to serve) an important purpose in this case—providing absent class members with unconflicted advice regarding their opt-out rights.  Because those communications were and are proper, Class Counsel's attempts to stifle them are not proper, serve an illegitimate purpose, disrupt these proceedings, and must be stopped.

## I.     SPARACINO'S COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS WERE AND ARE PROPER.

### ***Sparacino's Communications Were Proper***

Courts "generally permit[ ]" "[p]re-certification communications to potential class members," which "constitute constitutionally protected speech."  *Mevorah v. Wells Fargo Home Mortg., Inc.*, No. C 05-1175 MHP, 2005 WL 4813532, at *3 (N.D. Cal. Nov. 17, 2005).  Any order restricting communications with "potential class members" must reflect a "clear record and specific findings" supporting the "need for a limitation" while also "limit[ing] speech as little as possible."  *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101–02 (1981).  Courts thus restrict such communications only when they are "misleading, coercive, or improper."  *Mevorah*, 2005 WL 4813532, at *3; *see also Perkins v. Benore Logistics Sys., Inc.*, No. 16013717, 2017 WL 445603,

at *4 (E.D. Mich. Feb. 2, 2017) (rejecting on "First Amendment" grounds an attempt to restrain absent-class-member communications that were "in no way suggestive or threatening").

Sparacino's mailers were not suggestive or threatening.  By offering to assist clients to determine whether to opt out and bring their own claims, Sparacino's mailers promoted a core Rule 23 interest: helping to ensure that "absent class members [are not] forced into a class against their will."  *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1239, 1243 (N.D. Cal. 2000).  The class-action mechanism depends on affording "class members the right to contact their own attorneys to determine whether joining a proposed class-wide [procedure] is in their best interests."  *In re Community Bank of N. Va.*, 418 F.3d 277, 312–13 (3d Cir. 2005).  Class Counsel's attempt to muzzle Sparacino flouts that principle.  Indeed, restraining Sparacino from speaking to absent class members risks depriving them of independent counsel about opt-out rights—an outcome Rule 23 is designed to avoid.  *See*, *e.g.*, *Domingo v. New England Fish Co.*, 727 F.2d 1429, 1441 (9th Cir. 1984) (noting a "class representative and his counsel may have interests that are in conflict with those of the class members"), *modified*, 742 F.2d 520 (9th Cir. 1984).

Sparacino's mailers were neither misleading nor coercive.  Three key features of the mailers, read together,[3] establish that they breached no ethical boundary.  *First*, the mailers demanded no opt-out commitment nor any other urgent action.[4]  Rather, Sparacino informed potential clients that they "may have" a claim and suggested they "may wish to learn more and

---

[3] *See Jubinville v. Hill's Pet Nutrition, Inc.*, C.A. No. 19-74WES, 2019 WL 1584679, at *9 (D.R.I. Apr. 12, 2019) (reading two class communications together in accord with the principle that the facts must "be examined in totality" to account for the "curative potential" of second disclosure).

[4] *Cf. Chalian v. CVS Pharm., Inc.*, 2020 WL 7347866, at *3 (C.D. Cal. Oct. 30, 2020) (asking recipients to sign "prepopulated, opt-out forms"); *McKesson*, 126 F. Supp. 2d at 1241 (requesting reply by "an arbitrary deadline"); *Masonek v. Wells Fargo Bank*, SACV 09-1048 DOC, 2009 WL 10672345, at *1, *3 (C.D. Cal. Dec. 21, 2009) (demanding up-front fee and advising recipients that "[i]f you do nothing, your recovery will be limited"); *Georgine v. Amchem Prods., Inc.*, 160 F.R.D. 478, 491 (E.D. Pa. 1995) (exhorting recipients to "sign the enclosed 'opt out' form immediately"); *Mevorah*, 2005 WL 4813532, at *1 (demanding to interview absent class members to force them into signing "declarations" that undermined their claims).

1   potentially join [Sparacino's] effort."  R. Sparacino Decl., Ex. B at 3.  The First Mailer made plain

2   that Sparacino sought to represent those who might "wish to learn more about their legal options."

3   *Id*.  There was no "gratuitous air of urgency" or request for action by some "arbitrary deadline."

4   *See McKesson*, 126 F. Supp. 2d at 1245.  Quite the opposite.  And in any event the Second Mailer

5   confirmed that "[y]ou do not need [to] take any action a[t] this time to benefit from any recovery

6   in the Class Action."  R. Sparacino Decl., Ex. D at 1.

7           *Second*, the mailers made no threats and wielded no coercive power over the recipients.[5]

8   The First Mailer stated that Sparacino merely "fe[lt] that you deserve to know about your legal

9   options" and conveyed that "[w]e would be honored to represent you if your claim is viable and

10  you choose to sue UFC."  *Id.*, Ex. A at 1–2.  It urged recipients to "disregard" the letter if they had

11  already retained counsel.  *Id.* at 1.  And the Second Mailer went even further by confirming that

12  recipients "need not do anything in response to this letter or our prior letter."  *Id.*, Ex. D at 1.  That

13  is a very far cry from the solicitations that other courts have found improper for threatening

14  recipients that they would "LOSE VALUABLE RIGHTS" unless they immediately signed an opt-

15  out form.  *E.g.*, *Georgine*, 160 F.R.D. at 491.

16          *Third*, the mailers did not purport to be official notices or other court-sponsored

17  communications.[6]  They were instead "targeted, direct-mail solicitation[s]," which the Supreme

18  Court has held "pose[ ] much less risk of overreaching or undue influence than does in-person

19  solicitation."  *Shapero v. Kentucky Bar Ass'n*, 486 U.S. 466, 475 (1988) (citation omitted).  That is

20

21  —————————————

22          [5] *Cf. Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1201–03 (11th Cir. 1985)
    (addressing communications by an adverse party in a uniquely coercive position due to its ongoing

23  business relationship with class members); *Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 554, 563 (S.D. Fla.
    2008) (solicitor wielded "potentially coercive relationship" over absent class members); *Chalian*,

24  2020 WL 7347866, at *1–3 (warning of "'danger' of the settlement" and urging recipients "please
    do not delay"); *Masonek*, 2009 WL 10672345, at *3 (communications conveyed "impression that

25  they must pay an upfront fee . . . to participate in *either* the mass action or class action").

26          [6] *Cf. McKesson*, 126 F. Supp. 2d at 1244 (solicitation "distributed in the same manner as
    official court-ordered notices"); Order at 13, *In re Flint Water Cases*, No. 1610444-JEL-EAS

27  (E.D. Mich. Feb. 18, 2021) [Dkt. 797-1, Ex. 7] ("Individuals who sent the Federal Court this letter
    may falsely believe that they have submitted their official opt-out, when they have not in fact done

28  so.").

especially true because Sparacino's solicitations were replete with prominent attorney-advertising language.  Advertising disclaimers appeared on the envelopes, the brochure, and the caption of both letters.  R. Sparacino Decl. ¶ 13.  The text of the Second Mailer also contained a lengthy, nearly-two-page "Disclaimer" section.  *Id.*, Ex. D at 2–3.  That bears no resemblance to the type of official-looking communications courts have found misleading for implying they "were somehow required (or at least authorized) by the court."  *McKesson*, 126 F. Supp. 2d at 1243.  Sparacino simply offered to speak with potential clients about their legal options.  Restraining such communications would be unprecedented.

Class Counsel, even after filing multiple complaints about Sparacino with this Court, has never *cited actual language* from Sparacino's communications that misled anyone.  Further, any omitted information Class Counsel wishes were in the First Mailer was rectified by the Second Mailer; those additional disclosures were more than sufficient to "remedy [any] potential harm caused by the initial communication in failing to mention the pending class actions."  *Jubinville*, 2019 WL 1584679, at *9 (citation omitted).  Class Counsel therefore cannot present a "clear record" that any putative class member was misled, as *Gulf Oil* requires.

### *Sparacino's Future Communications Are Proper and Necessary*

For all these reasons, Sparacino should be allowed to communicate with putative class members[7] until the end of the opt-out period.  The ABA's Standing Committee on Ethics and Professional Responsibility states, in relevant part:

---

[7] Notwithstanding efforts to ensure that it would not send any communications to putative class members who were already individually represented, Sparacino inadvertently sent its mailers to four individuals who were named plaintiffs in prior cases that had not been listed as parties in *Le v. Zuffa* after the cases had been consolidated.  *See* R. Sparacino Decl. ¶¶ 14–15.  Because Sparacino did not know that these four individuals were represented, and intended not to contact represented parties, it did not violate Rule 4.2.  These contacts were unintentional and inadvertent.  *See Orlowski v. Dominick's Finer Foods, Inc.*, 937 F. Supp. 723, 731 (N.D. Ill. 1996) (counsel neither "breached their ethical obligations, nor violated Rule 4.2" because contact with represented parties "was inadvertent"); *see also Good v. West Va.-Am. Water Co.*, No. 2:14-01374, 2016 WL 6404006, at *2 (S.D. W. Va. Oct. 26, 2016) (finding that taking good-faith efforts to exclude recipients from a mailer, but inadvertently including a small number of recipients that should not have received it, was not indicative of an ethical violation).  In any case, even with respect to a person a lawyer knows is represented by counsel, the D.C. Bar's Legal Ethics Committee has concluded that Rule 4.2 does not prohibit a lawyer "from communicating with a person who is

> Before the class has been certified by a court, the lawyer for plaintiff will represent one or more persons with whom a client-lawyer relationship clearly has been established. As to persons who are potential members of a class if it is certified, however, no client-lawyer relationship has been established. A client-lawyer relationship with a potential member of the class does not begin until the class has been certified *and the time for opting out by a potential member of the class has expired.* If the client has neither a consensual relationship with the lawyer nor a legal substitute for consent, there is no representation. *Therefore, putative class members are not represented parties for purposes of the Model Rules prior to certification of the class and the expiration of the opt-out period.*

ABA Comm'n on Prof'l Ethics & Grievances, Formal Op. 07-445, at 3 (2007) (emphasis added).

Courts throughout the country have adopted the ABA's view that Model Rule 4.2 does not bar counsel from communicating with putative class members before a class is certified.[8]

---

currently represented by counsel for the purpose of determining whether such person may wish to retain the lawyer and discharge the current lawyer." *See* D.C. Ethics Op. 215 (1990), https://tinyurl.com/2p98afz.

[8] *See, e.g.*, *McKesson*, 126 F. Supp. 2d at 1245 ("The leading California case makes clear that putative class members are not 'represented' and that attorneys may contact them.") (citing *Atari, Inc. v. Superior Court*, 212 Cal. Rptr. 773 (Cal. Ct. App. 1985)); *Babbitt v. Albertson's, Inc.*, No. C-92-1883-SBA (PJH), 1993 WL 150300, at *1 (N.D. Cal. Mar. 31, 1993) (finding that defense attorney's pre-certification communication with putative class members did not violate anti-contact rule because "defendant had an equal right to access to its employees"); *Gibbons v. CIT Grp./Sales Fin., Inc.*, 400 S.E.2d 104, 106 (N.C. Ct. App. 1991) (affirming the trial court's decision to allow attorneys on both sides to engage in "precertification communication with potential class members," albeit with some notice requirements); *Lloyd v. Covanta Plymouth Renewable Energy, LLC*, 532 F. Supp. 3d 259, 260–61 (E.D. Pa. 2021) (internal quotations and citations omitted) (discussing that in the context of a class action in federal court, and in contrast to Pennsylvania state law, "a nonnamed class member is not a party to the class action *before the class is certified*" and "while counsel for the named representative plaintiff owes some generalized fiduciary duty to putative class members, counsel does not possess a traditional attorney-client relationship with them" so "the blanket prohibition under Pennsylvania law on contacts with represented parties has no bearing on federal putative class members") (emphasis in original); *see also id.* n.1 (explaining that *Dondore v. NGK Metals Corp.*, 152 F. Supp. 2d 662 (E.D. Pa. 2001), does not support the argument that Rule 4.2 prohibits contact with putative class members in a *federal court* class action because *Dondore* was in the context of a class action brought in state court); *see also* Vincent R. Johnson, *The Ethics of Communicating with Putative Class Members*, 17 Rev. Litig. 497, 507-08, 524 (1998) ("before certification, unnamed putative class members should not be treated as 'represented persons' for purposes of [Rule 4.2]"); Restatement (Third) of the Law Governing Lawyers § 158 cmt. *l* (Tentative Draft No. 8, 1997) ("[p]rior to certification and unless the court orders otherwise, in the case of competing putative class actions a lawyer for one set of representatives may contact class members who are only putatively represented by a competing lawyer"). *See also David v. Signal Int'l, L.L.C.*, 735 F. Supp. 2d 440, 448 n.3 (E.D. La. 2010) ("In similar circumstances that relate to conflicts of interest and the existence of an attorney-client relationship, courts have *unanimously held* that pre-certification, absent class

---

10

Consistent with the ABA and majority approach, many courts hold that putative class members are not represented until the end of the opt-out period.  *See Walney v. Swepi LP*, No. 12-102, 2017 WL 319801, at *13 (W.D. Pa. Jan. 23, 2017) (collecting cases recognizing "that the attorney-client relationship is not formed until expiration of the opt-out period"); *In re Chicago Flood Litig.*, 682 N.E.2d 421, 425–26 (Ill. App. Ct. 1997) (recognizing that "the relationship between absent class members and class counsel is one of court creation" such that "class counsel will be deemed to fully represent all class members only after a court has certified the class and the opt-out time period has expired, giving putative class members time to decide whether to participate in the class"); *Kleiner v. First Nat'l Bank of Atlanta*, 102 F.R.D. 754, 769 (N.D. Ga. 1983) ("it cannot truly be said that [counsel for the class] fully 'represents' prospective class members until it is determined that they are going to participate in the class action"), *aff'd in part, vacated in part*, 751 F.2d 1193 (11th Cir. 1985); *In re Potash Antitrust Litig.*, 162 F.R.D. 559, 561 n.3 (D. Minn. 1995) ("whether a full attorney-client relationship shall materialize will depend upon the putative class member's decision to accept or reject class standing").

Sparacino reached out to an expert in legal ethics and received a letter which states in relevant part:

> [Class Counsel's] position is not justified by Rule 4.2, by the policies underlying that rule, or by the policies underlying the professional conduct rules in general. The rules assume that individuals and entities with legal problems are best served by receiving the advice and assistance of competent, disinterested lawyers – not by being unrepresented, on one hand, or by receiving advice from lawyers representing other parties with conflicting interests, on the other.  Here, individual class members who might consider initiating individual actions would presumptively be better served by receiving advice on this subject from their lawyers who represent only absent class members individually, rather than by receiving the conflicted advice of class counsel or no advice at all.  Therefore, it is in the absent class members' interest to be advised about this alternative and about the availability of law firms such as Sparacino to provide legal advice and

---

members do not even possess the traditional attorney-client relationship with putative class counsel.") (emphasis added); *Greenfield MHP Assocs., L.P. v. Ametek, Inc.*, 2018 WL 538961, at *6 (S.D. Cal. Jan. 24, 2018) ("Until the class is certified, the unnamed putative class members are not clients of Plaintiffs' Counsel."); *Hammond v. City of Junction City, Kan.*, 2002 WL 169370, at *4 (D. Kan. Jan. 23, 2002) ("It is fairly well settled that prior to class certification, no attorney-client relationship exists between class counsel and the putative class members.") (collecting cases).

assistance exclusively with their interests at heart.

Opinion Letter of Professor Bruce A. Green, attached as Exhibit 2 hereto, at 4.  Professor Green opined that there is nothing improper about approaching and communicating with absent class members—who actually need independent, unconflicted advice.  Further, Professor Green opined that it is Class Counsel that has a conflict of interest regarding advice to absent class members regarding their opt-out rights.  Class counsel's conduct, which seeks to deprive putative class members—*i.e.*, Class Counsel's so-called "clients"—of that advice from independent counsel, including Sparacino, is evidence of that very conflict.

In sum, Sparacino's communications with potential class members were in no way improper and did not violate any rule about contacting represented parties.  Class Counsel actually has a conflict when it comes to the advice to absent class members Sparacino is prepared to provide.  Sparacino should thus be allowed to resume communications with putative class members until the to-be-Court-determined opt-out deadline.  Enjoining those communications would impede Sparacino from "trying to assist class members with the prosecution of their individual claims." *McKesson*, 126 F. Supp. 2d at 1245.  Ultimately, Class Counsel's "logic suggests that putative class members are forever walled off from any effort at solicitation, a proposition that seems unsupportable." *Id.*

## II. THE COURT SHOULD EXERCISE ITS INHERENT POWER TO REMEDY AND ENJOIN CLASS COUNSEL'S IMPROPER AND RECKLESS ACTS, WHICH WERE DONE FOR IMPROPER PURPOSES AND WHICH HAVE DISRUPTED THIS LITIGATION.

Class Counsel's baseless threats, and the business risk associated with them, coerced Scott+Scott to withdraw from this case.  R. Sparacino Decl. ¶¶ 32–34; Kay-Oliphant Second Decl. ¶¶ 2–3.  Class Counsel acknowledged (ECF No. 796 at 5 n.2) that Scott+Scott "does not believe there was any unethical or inappropriate conduct."  But although Scott+Scott agreed that Sparacino acted properly, Class Counsel's threats—leveling accusations similar to those Class Counsel plans to level again against Sparacino, now—forced Scott+Scott to withdraw from the matter.  R. Sparacino Decl. ¶ 34.  Now, Class Counsel continues its improper tactics as against Sparacino, but the Court should reject and enjoin these improper attempts to coerce counsel and

1   deter Sparacino's representation of putative class members.

2       Class Counsel had no factual basis to baldly assert Sparacino's communications with

3   putative class members were improper, and no legal basis to assert that communication with

4   putative non-named class members was improper.  They made those assertions, nonetheless, and

5   successfully forced Scott+Scott out of this matter.  Afterwards, they filed their claims before this

6   Court, and the Court rejected them.  Class Counsel then, after having the benefit of that process,

7   including full briefing and explanation of the facts and the applicable law related to their original

8   motion, has made clear its intent to attempt, once again, to coerce Sparacino.  It was bad faith to

9   pursue the strategy before, and it is even more so, now.

10      Class Counsel's position is not justified by the law or by any rule of professional ethics.

11  Exhibit 2 at 4.  "Sparacino's communications with absent class members were consistent with the

12  letter and purpose of the professional conduct rules."  *Id.* at 1.  To decide whether to opt out of the

13  class, absent class members need disinterested advice.  *Id.* at 3.  But "individual class members

14  cannot expect to receive disinterested advice on questions such as this one from class counsel,

15  which has a duty of loyalty to the class."  *Id.*  Indeed, absent class members "cannot expect to

16  receive disinterested legal advice from that class counsel with respect to questions affecting their

17  individual interests such as whether to object to a proposed settlement or whether to settle

18  individually with the defendant."  *Id.* (citation omitted).  Since "[i]t would be contrary to the

19  interests of the class to encourage individual class members to opt out to pursue individual claims"

20  Class Counsel is conflicted.  *Id.*

21      This Court should find that Class Counsel's labeling of Sparacino's communications as

22  misleading and Class Counsel's (partly successful) attempts to force counsel for absent class

23  members to withdraw, were reckless and knowing, reckless and undertaken with an improper

24  purpose, and/or taken to disrupt the litigation.  *See, e.g., Aiuto v. Publix Super Markets, Inc.*, No.

25  1:19-CV-04803-LMM, 2020 WL 10054684, at *2–3 (N.D. Ga. Aug. 28, 2020) (exercising the

26  Court's inherent power and ordering "Plaintiffs to remove [class counsel's misleading] website as

27  "a suitable remedy" to preserve the integrity of the proceedings); *see also Espinosa v. Stevens*

28  *Tanker Div., LLC*, No. SA-15-CV-879-XR, 2017 WL 1718443, at *10 (W.D. Tex. Apr. 27, 2017)

1   (sanctioning class counsel "under the Court's inherent authority" where "Class Counsel's

2   assertion" was "demonstrably false" and class counsel "acted with bad faith"); *Affeldt v. Carr*, 111

3   F.R.D. 337, 338 (N.D. Ohio 1986), *aff'd*, 827 F.2d 769 (6th Cir. 1987) (sanctioning class counsel

4   under court's inherent power "to curb serious abuses of the judicial process by plaintiff" where

5   class counsel mistreated "certain class members"); *O'Connor*, 2017 WL 3782101, at *9.

6        In *O'Connor*, the Court was concerned class counsel had misled the class members "into

7   believing they were required to retain Class Counsel—and Class Counsel only—to preserve their

8   rights." 2017 WL 3782101, at *9.  In part due to its "inherent duty and responsibility to supervise

9   the professional conduct of attorneys practicing before it" the Court there Ordered that a corrective

10   notice go to the class members, which was "necessary to protect Class Members' rights." *Id.*

11        Here, Class Counsel has incorrectly asserted that Sparacino's communications are

12   misleading.  They were not.  Class Counsel knows they are not, as Class Counsel cannot point to

13   any specific statement Sparacino made that was misleading.  Their attempt to brand such

14   communications as misleading are thus reckless and knowing.  Class Counsel also is well aware of

15   the majority rule that such communications with absent class members do not violate rules

16   regarding contact with represented parties.  Class Counsel has thus improperly, and in a way that

17   has disrupted the absent class members' ability to engage freely with the counsel of their

18   choosing, intimidated and coerced Sparacino to stop such rightful communications, so Class

19   Counsel acted recklessly and with an improper purpose.  And because Class Counsel sought to

20   deny (and continues to seek to deny) absent class members of disinterested, non-conflicted advice

21   regarding their opt out rights, Class Counsel has acted with an improper purpose meant to disrupt

22   this litigation.  For these reasons, there is sufficient evidence of bad faith to warrant correction by

23   this Court via its inherent powers.

24        Some courts have deemed attorney communications threatening criminal or administrative

25   prosecution meant to achieve outcomes in civil litigation to be extortionate.  *See*, *e.g.*, *Cohen v.*

26   *Brown*, 173 Cal. App. 4th 302, 317–18, 93 Cal. Rptr. 3d 24, 36–37 (Cal. Ct. App. 2009)

27   (commenting that "attorneys are not exempt" from the crime of extortion, discussing a scheme

28   whereby an attorney threatened to "present criminal, administrative, or disciplinary charges to

1  obtain an advantage in a civil dispute" and affirming "the trial court's conclusion that [such]

2  actions with respect to the filing of the State Bar complaint constitute extortion"); *Flatley v.*

3  *Mauro*, 39 Cal. 4th 299, 330, 139 P.3d 2, 22 (Cal. 2006) (characterizing attorney "communications

4  threaten[ing] to 'accuse' [another] of, or 'impute to him,' 'crime[s]' and 'disgrace'" as criminal

5  extortion as a matter of law); *cf. Baker v. FirstCom Music*, LACV 16-8931-VAP, 2017 WL

6  9510144, at *7 (C.D. Cal. July 27, 2017) (finding extortion where demand was made to negotiate

7  settlement or else plaintiff would "(1) file a criminal complaint with the FBI, (2) seek 'whatever

8  criminal punishment the justice department might see fit,' (3) notify 'all end-user client infringers'

9  of his allegations, and (4) 'use [his] best efforts to publicize the matter in the public interest.'")

10  (citations omitted).

11     Sparacino does not request that this Court label Class Counsel's acts as extortion—rather,

12  Sparacino respectfully requests only that the Court resolve the dispute as between Sparacino and

13  Class Counsel regarding whether Sparacino's communications were proper or not, and whether it

14  was proper for Class Counsel to threaten Scott+Scott unless they withdrew from the case.

15  Sparacino also wishes to be allowed to pursue its proper, lawful strategy of discussing opt-out

16  rights with putative class members.

17     To that end, Sparacino seeks that this Court provide a neutral, even-handed disclosure to

18  the putative class members, perhaps as part of the class notice process explaining opt-out

19  procedures, which provides a full, balanced, and easy-to-understand description of the class

20  mechanism and absent class members' rights thereunder.  *See* Rule 23(c)(2)(B).  Sparacino has

21  already agreed that its engaged clients may terminate Sparacino at no cost through the expiration

22  of whatever opt-out deadline the Court ultimately sets.  R. Sparacino Decl. ¶ 41.  Accordingly, the

23  Court could use the class-notice process to make any additional disclosures it deems necessary.

24  *See*, *e.g.*, *Swamy v. Title Source, Inc.*, No .C 17-01175 WHA, 2017 WL 5196780, at *5 (N.D. Cal.

25  Nov. 10, 2017) (finding a "corrective notice is unnecessary" given the opportunity to make

26  additional disclosures through the class notice).

27

28

SPARACINO PLLC'S MOTION FOR RELIEF PURSUANT TO THE COURT'S INHERENT AUTHORITY
Case No. 2:15-cv-01045-RFB-BNW

The notice, which Sparacino respectfully requests come from the Court rather than Class Counsel:

- Should the notice refer to Sparacino's mailers, it should do so in a neutral way and should not call them "unethical," "misleading," or anything similar.

- Should the notice be separate from and prior to the forthcoming class notice, the disclosure should describe the forthcoming class notice, note both that there are potential benefits and drawbacks to remaining an absent class member, and describe absent class members' opt-out rights in even-handed terms.

- Should make clear that absent class members may consult any counsel of their choosing about remaining in the class—including Class Counsel, Sparacino, or any other attorney to whom an absent class member wishes to speak.

- Should be in a form and content mutually agreed by Class Counsel and Sparacino, should the Court determine that the notice should come from Class Counsel.

And Should the Court wish to engage in any judicial inquiry regarding Class Counsel's acts, movant respectfully submits the Court should: (1) conduct any such review through a narrow, targeted *ex parte*, *in camera* review focused exclusively on protecting the interests of putative class members represented by Class Counsel and the fifteen fighters represented by Sparacino, to ensure the integrity of these proceedings; and (2) publicize the Court's findings relating to any such review by causing the Court's opinion to be mailed to the putative class members and Sparacino's clients.

## CONCLUSION

For the foregoing reasons, Sparacino respectfully requests that this Court exercise its inherent authority to regulate the docket and the matters before it by issuing an Opinion:

a. Finding that Sparacino's communications with the putative class members were not improper;

b. Authorizing Sparacino's communications with putative class members through and until the Court-Ordered opt-out deadline, which deadline should be set in a manner that would allow Sparacino (and other lawyers that may have been improperly pressured by Class Counsel) sufficient time to restart their outreach efforts to putative class

1    members;

2    c.   Finding that Class Counsel's attempts to force Scott+Scott to withdraw and to interfere

3        with Sparacino's communications with putative class members were and are improper;

4    d.   Ordering a neutral, even-handed, and reasonable process by which the absent class

5        members may be informed (i) how the opt-out process and procedures will proceed, as

6        well as putative class members' rights thereunder thereunder, (ii) that Sparacino was

7        baselessly and improperly accused of improper conduct by Class Counsel in an effort

8        to deprive absent class members of the right to receive independent legal advice, and

9        (iii) that putative class members may discuss their opt-out rights with the counsel of

10       their choosing, including Sparacino;

11   e.   Ordering a process by which the Court may conduct a judicial inquiry regarding Class

12       Counsel's acts, and publishing the results of such inquiry to the putative class; and

13   f.   Establishing a process whereby the Court may determine whether and to what extent

14       further sanctions against Class Counsel are appropriate.

SPARACINO PLLC'S MOTION FOR RELIEF PURSUANT TO THE COURT'S INHERENT AUTHORITY
Case No. 2:15-cv-01045-RFB-BNW

1    DATED:  September 13, 2023                    Respectfully Submitted,

2

3                                                 By:  /s/ Eli J. Kay-Oliphant

4                                                 Eli J. Kay-Oliphant, Esq.
                                                    (*Pro Hac Vice Motion Pending*)
5                                                 New York Bar No. 4421541
                                                  District of Columbia Bar No. 503235
6                                                 Illinois Bar No. 6326136
                                                  Ryan R. Sparacino, Esq.
7                                                   (*Pro Hac Vice Motion to be Filed*)
                                                  District of Columbia Bar No. 493700
8                                                 SPARACINO PLLC
                                                  1920 L Street, NW
9                                                 Suite 835
                                                  Washington, DC 20036
10                                                Telephone:  (202) 629-3530
                                                  eli.kay-olphant@sparacinopllc.com
11

12                                                Brian D. Shapiro, Esq.
                                                  Nevada Bar No. 5772
13                                                LAW OFFICE OF BRIAN D. SHAPIRO, LLC
                                                  510 S. 8th Street
14                                                Las Vegas, NV 89101
                                                  Telephone:  (702) 386-8600
15                                                brian@brianshapirolaw.com

16                                                *Attorneys for Sparacino PLLC*

17

18

19

20

21

22

23

24

25

26

27

28

SPARACINO PLLC'S MOTION FOR RELIEF PURSUANT TO THE COURT'S INHERENT AUTHORITY
Case No. 2:15-cv-01045-RFB-BNW

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of September 2023 a true and correct copy of **SPARACINO PLLC'S MOTION FOR RELIEF PURSUANT TO THE COURT'S INHERENT AUTHORITY** was served via the District Court of Nevada's ECF system to all counsel of record who have enrolled in this ECF system.

/s/ Brian D. Shapiro, Esq.

Brian D. Shapiro, Esq.

EXHIBIT 1

Eli J. Kay-Oliphant, Esq. (*Pro Hac Vice Motion Pending*)
New York Bar No. 4421541
District of Columbia Bar No. 503235
Illinois Bar No. 6326136
Ryan R. Sparacino, Esq. (*Pro Hac Vice Motion to be Filed*)
District of Columbia Bar No. 493700
SPARACINO PLLC
1920 L Street, NW
Suite 835
Washington, DC 20036
Telephone:  (202) 629-3530
eli.kay-oliphant@sparacinopllc.com

Brian D. Shapiro, Esq.
Nevada Bar No. 5772
LAW OFFICE OF BRIAN D. SHAPIRO, LLC
510 S. 8th Street
Las Vegas, NV 89101
Telephone:  (702) 386-8600
brian@brianshapirolaw.com
*Attorneys for Putative Class Members*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>Defendant. | **Case No. 2:15-cv-01045-RFB-BNW**<br><br><br>**DECLARATION OF ELI J. KAY-OLIPHANT** |

# DECLARATION OF ELI J. KAY-OLIPHANT

I, ELI J. KAY-OLIPHANT, declare as follows:

1.     I am a Partner of the law firm of Sparacino PLLC ("Sparacino" or "Firm"), and my Firm is counsel for certain former professional mixed martial arts ("MMA") fighters who may have claims as members of the "Bout Class" in *Le v. Zuffa*. I am the lead Sparacino attorney on this matter and have day-to-day responsibility for it. I have personal knowledge of the facts set forth in this declaration and if necessary, could testify competently thereto. I make this declaration in support of Sparacino's Motion for Relief Pursuant to the Court's Inherent Authority.

2.     On March 26, 2021, I and my partner Ryan R. Sparacino attended a Zoom videoconference with members Scott+Scott, during which Scott+Scott informed us that Scott+Scott would withdraw from representing our mutual clients in this matter because Scott+Scott could not tolerate the business risk presented by the baseless threats made by then-Interim Co-Lead Class Counsel, even though those threats against both Scott+Scott and Sparacino were false and frivolous.

3.     After the Zoom videoconference just referenced, Mr. Sparacino and I jointly developed a contemporaneous memorandum regarding the substance of that conference, confirming the facts related to what was said and what had occurred.

4.     After Class Counsel filed further allegations about Sparacino's communications with putative class members in its pre-conference statement, ECF No. 842, I asked Class Counsel via email to provide any Rule 11 basis Class Counsel had to do so.

5.     Class Counsel via email declined my request to provide or explain any Rule 11 bases for their allegations.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  September 12, 2023

Eli J. Kay-Oliphant

EXHIBIT 2

**Bruce A. Green**
**150 W. 62nd Street**
**New York, NY 10025**
**tel: 212-636-6851**
bgreen@law.fordham.edu

September 8, 2023

Eli Kay-Oliphant, Esq.
Sparacino PLLC
1920 L Street, NW
Suite 535
Washington, DC 20036

Re:   <u>Cung Le et al. v. Zuffa, LLC, No.: 2:15-cv-01045-RFB-BNW (D. Nev.)</u>

Dear Mr. Kay-Oliphant:

You have asked for my objective expert opinion on whether Rule 4.2 of the Nevada Rules of Professional Conduct ("Nevada Rules") and/or the District of Columbia Rules of Professional Conduct ("D.C. Rules") barred Sparacino PLLC ("Sparacino" or "the law firm") from communicating with absent class members to solicit their interest in advice regarding whether to opt out of a class action. For the reasons discussed below, my opinion is that Sparacino's communications with absent class members were consistent with the letter and purpose of the professional conduct rules.

### <u>Qualifications</u>

My qualifications to provide this opinion are, in brief, as follows. I have taught legal ethics, and written extensively on this subject, for 36 years as a professor at Fordham Law School, where I now hold the Stein Chair and direct the Stein Center for Law and Ethics. Among the subjects on which I have written are the application of professional conduct rules in class actions and the meaning and scope of Rule 4.2 of the ABA Model Rules of Professional Conduct and of state rules corresponding to it.

I have also engaged in a wide variety of other professional work relating to legal ethics. I currently chair both the American Bar Association ("ABA") Standing Committee on Ethics and Professional Responsibility and the Multistate Professional Responsibility Examination drafting committee. I previously chaired the ethics committees of the ABA Litigation Section, the ABA Criminal Justice Section, the New York State Bar Association, and the New York City Bar Association. I have also provided advice to lawyers and served as an expert witness on questions of lawyers' professional conduct. In these and other capacities, I have been involved in the processes by which the professional conduct rules are drafted, interpreted, and enforced in New York and nationally. In recognition of my professional work in the field of legal ethics, I was the 2018 recipient of the ABA's Michael Franck Award.

A relatively recent CV, which more fully reflects my background and experience, is available at: https://www.fordham.edu/downloads/file/1503/bruce_green.

**<u>Relevant Facts</u>**

I have no first-hand knowledge of relevant facts.  I rely on the facts set forth in Plaintiffs' Emergency Motion to Compel Sparacino PLLC to Stop Communicating with Absent Members of the Proposed Class and for Related Relief ("Plaintiffs' Emergency Motion"), and the various subsequent submissions relating to that motion, and in Plaintiffs' Pre-Conference Statement.

The relevant facts are, in summary, as follows.  The plaintiffs' counsel filed a federal class action in the District of Nevada alleging antitrust violations by Zuffa, LLC, which does business as Ultimate Fighting Championship and UFC.  In March 2021, before the Court certified the class, Sparacino wrote to more than 200 putative class members offering to assist them in deciding whether to opt out of the class action and to bring individual antitrust claims.  Sparacino's letter advised recipients to ignore the letter if they already had legal counsel.  In response to criticisms by Interim Class Counsel, Sparacino followed up with a second letter intended to address the criticisms.  Nonetheless, soon after, the plaintiffs filed Plaintiffs' Emergency Motion to Compel Sparacino PLLC to Stop Communicating with Absent Members of the Proposed Class and for Related Relief ("Plaintiffs' Emergency Motion").

In addition to alleging that Sparacino's letters were misleading – an issue that I have not been asked to address – the plaintiffs' motion alleged that Sparacino's first letter "may . . . violate Nevada Rule of Professional Conduct 4.2 (and its Washington, D.C. equivalent)."  *Id.* at 14.  Rule 4.2 of the Nevada Rules provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

Rule 4.2(a) of the D.C. Rules is the equivalent.  It provides:

> During the course of representing a client, a lawyer shall not communicate or cause another to communicate about the subject of the representation with a person known to be represented by another lawyer in the matter, unless the lawyer has the prior consent of the lawyer representing such other person or is authorized by law or a court order to do so.

The plaintiffs' motion acknowledged that many courts have held that, prior to class certification, absent class members are not "represented" by counsel for the proposed class for purposes of Rule 4.2.  Plaintiffs' Emergency Motion at 14.  However, the motion asserted that the rule should apply in any event, given the Court's announced intention to certify a class.  *Id.* at 15.  Additionally, the motion asserted that "even a cursory review of the docket" would have revealed that "Class Counsel represent[ed] individually at least one recipient" of the first letter.  *Id.* at 15-16.

More recently, after the Court certified the class, the plaintiffs renewed their earlier objection to Sparacino's communications with absent class members, asking the Court to

"schedule a hearing to discuss Plaintiffs' request for an order requiring the Sparacino firm to cease and desist communicating with class members . . .."  Plaintiffs' Pre-Conference Statement at 8.

## Opinions

The individual class members have an opportunity to opt out of the class action and to file individual antitrust claims against UFC.  They have an interest in receiving competent legal advice regarding whether to do so.  However, individual class members cannot expect to receive disinterested advice on questions such as this one from class counsel, which has a duty of loyalty to the class.  For reasons that I recently discussed in a co-authored article, even if named class representatives or lead plaintiffs have an individual lawyer-client relationship with class counsel predating the filing of the class action, they cannot expect to receive disinterested legal advice from that class counsel with respect to questions affecting their individual interests such as whether to object to a proposed settlement or whether to settle individually with the defendant. Bruce A. Green & Andrew Kent, *May Class Counsel Also Represent Lead Plaintiffs?*, 72 Fla. L. Rev. 1083 (2020).  Class counsel owes loyalty to the class and therefore cannot give disinterested advice on how class representatives or lead plaintiffs should best pursue their individual interests.  This is even more obviously true with respect to advising absent class members with whom class counsel has never established an individual lawyer-client relationship. It would be contrary to the interests of the class to encourage individual class members to opt out to pursue individual claims.  To receive competent and disinterested advice, class members must turn to counsel who has no duty of loyalty to the class.

It is consistent with the letter and purpose of Rule 4.2 for a law firm such as Sparacino to offer to establish a lawyer-client relationship with absent class members (or, as previously, with putative class members) for the purpose of providing advice regarding whether to opt out to pursue individual antitrust actions and, if so, for the law firm to represent individual class members in pursuing such individual actions.   The filing or certification of a class action does not bar absent class members from seeking or obtaining legal advice from a disinterested lawyer regarding these decisions.  Nor does the class action preclude unconflicted lawyers from providing, or offering to provide, legal advice to absent class members on this subject or from filing, or offering to file, individual actions on their behalf.

Rule 4.2 is not to the contrary.  Prior to the certification of a class, the majority view is that absent class members are not "represented" by putative or interim class counsel by operation of law; therefore, unless they have an individual lawyer-client relationship (as in the case of named class representatives), class members may be contacted directly even by the defendant's counsel.  *See, e.g.*, ABA Standing Comm. on Ethics and Prof'l Responsibility, Formal Op. 07-445 (2007) at n. 14 ("The majority rule is that there is no client-lawyer relationship between putative class members and lawyers seeking class certification until the class has been certified."); *Parks v. Eastwood Ins. Servs., Inc.*, 235 F. Supp.2d 1082, 1084 (C.D. Cal. 2002) ("the majority view seems to be against a ban on pre-certification communication between Defendant and potential class members") (citing authority).  But even after the class is certified, at which point the *defendant's* counsel is forbidden from communicating directly with absent class members, it does not follow that other lawyers are forbidden from representing absent class

3

members, or seeking to represent them, in individual actions as "opt-outs". Nevada Rule 4.2 applies only to lawyers "[i]n representing a client," and similarly, D.C. Rule 4.2(a) applies only "[d]uring the course of representing a client." These rules do not, by their terms, forbid a lawyer who is not acting on behalf of a party in the matter from offering to provide advice, or a second opinion, to a person who *is* represented in the matter. *See, e.g.*, NY State Bar Ass'n Comm. on Prof'l Ethics, Formal Op. 1010 (2014). Even if there is a need to protect absent class members from direct communications by opposing counsel, there is not the same need to bar direct communications by lawyers who are interested in serving on absent class members' individual behalf.

When parties have retained lawyers to represent them individually, there may be persuasive policy reasons to nevertheless forbid lawyers from soliciting them. Some authorities take the view that, while a lawyer may respond when the represented party takes the initiative to seek advice, the lawyer may not solicit the represented party. That is presumably because the solicitation may undermine the party's trust in the lawyer with whom the party already has a lawyer-client relationship. But this rationale has no relevance to an absent class member, who has not sought class counsel's legal assistance, who has no individual lawyer-client with class counsel, and who cannot obtain disinterested legal advice from class counsel regarding whether to opt out.

Ultimately, in my view, questions such as whether, when and how lawyers may communicate directly with absent class members should be resolved by courts through the exercise of discretion under Fed. R. Civ. P. 23. Rule 4.2 and other professional conduct rules are based on the paradigm of an individual lawyer-client relationship. The rules were not drafted and adopted with the goals, policies, and procedures of class actions in mind. Moreover, courts exercising authority under Rule 23 are well positioned to oversee the lawyers' professional conduct in the context of the class action, including by developing and enforcing standards of conduct in common law fashion. That said, the plaintiffs' position is not justified by Rule 4.2, by the policies underlying that rule, or by the policies underlying the professional conduct rules in general. The rules assume that individuals and entities with legal problems are best served by receiving the advice and assistance of competent, disinterested lawyers – not by being unrepresented, on one hand, or by receiving advice from lawyers representing other parties with conflicting interests, on the other. Here, individual class members who might consider initiating individual actions would presumptively be better served by receiving advice on this subject from their lawyers who represent only absent class members individually, rather than by receiving the conflicted advice of class counsel or no advice at all. Therefore, it is in the absent class members' interest to be advised about this alternative and about the availability of law firms such as Sparacino to provide legal advice and assistance exclusively with their interests at heart.

Very truly yours,

Bruce A. Green

4