Eric L. Cramer (admitted *pro hac vice*)
Michael Dell'Angelo (admitted *pro hac vice*)
Patrick F. Madden (admitted *pro hac vice*)
Mark R. Suter (admitted *pro hac vice*)
BERGER MONTAGUE PC
1818 Market St., Suite 3600
Philadelphia, PA 19103
Phone: (215) 875-3000/Fax: (215) 875-4604
ecramer@bm.net
mdellangelo@bm.net
pmadden@bm.net
msuter@bm.net

*Co-Lead Counsel for the Class and*
*Attorneys for Individual and Representative Plaintiffs*
*Cung Le, Nathan Quarry, Jon Fitch, Luis Javier Vazquez,*
*Brandon Vera, and Kyle Kingsbury*

[Additional counsel listed on signature page]

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>Defendant. | Case No.: 2:15-cv-01045-RFB-BNW<br><br>**PLAINTIFFS' OPPOSITION TO SPARACINO PLLC'S MOTION FOR RELIEF PURSUANT TO THE COURT'S INHERENT AUTHORITY** |

## TABLE OF CONTENTS

**Page(s)**

INTRODUCTION..................................................................................................1

PROCEDURAL BACKGROUND ........................................................................1

FALSE OR MISLEADING CLAIMS IN SPARACINO'S BRIEF............................4

I.      ARGUMENT ...........................................................................................6

    A.      Sparacino's Communications with Class Members Were and Are Improper.......6

        1.      Sparacino's first solicitation letter violated several ethical rules .............6

        2.      Sparacino's second solicitation letter did not cure its prior ethical violations...........................................................................................11

        3.      Future solicitations of members of the certified class would be unethical ....................................................................................................12

        4.      Professor Green's letter fails to justify Sparacino's conduct .................18

    B.      Sparacino's Allegations of Misconduct by Class Counsel Are Baseless............19

Case No.: 2:15-cv-01045 RFB-BNW

**PLAINTIFFS' OPPOSITION TO SPARACINO PLLC'S MOTION FOR RELIEF**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Baleja v. Northrop Grumman Space*,
   No. EDCV17235JGBSPX, 2020 WL 5078814 (C.D. Cal. July 30, 2020)..........................13

*Chalian v. CVS Pharmacy, Inc.*,
   No. 2:16-cv-8979, 2020 WL 7347866 (C.D. Cal. Oct. 30, 2020)..........................................8

*Corll v. Edward D. Jones & Co.*,
   646 N.E.2d 721 (Ind. Ct. App. 1995) ...................................................................................9

*Dondore v. NGK Metals Corp.*,
   152 F. Supp. 2d 662 (E.D. Pa. 2001) ....................................................................................9

*In re Chicago Flood Litig.*,
   682 N.E.2d 421 (Ill. App. Ct. 1997) ...................................................................................16

*In re McKesson HBOC, Inc. Sec. Litig.*,
   126 F. Supp. 2d 1239 (N.D. Cal. 2000) .........................................................................7, 16

*In re Potash Antitrust Litigation*,
   162 F.R.D. 559 (D. Minn. 1995)..........................................................................................16

*Jacobs v. CSAA Inter-Ins.*,
   No. C07-362MHP, 2009 WL 1201996 (N.D. Cal. May 1, 2009).......................................14

*Kirola v. City & Cnty. of San Francisco*,
   No. C 07-03685 ....................................................................................................................14

*Kleiner v. First Nat'l Bank of Atlanta*,
   102 F.R.D. 754 (N.D. Ga. 1983), *aff'd in part*, *vacated in part*, 751 F.2d 1193 (11th Cir.
   1985)......................................................................................................................................15

*Kleiner v. First National Bank of Atlanta*,
   751 F.2d 1193 (11th Cir.1985)........................................................................................14, 16

*Masonek v. Wells Fargo Bank*,
   No. SACV091048, 2009 WL 10672345 (C.D. Cal. Dec. 21, 2009) .....................................7

*McCurley v. Royal Seas Cruises, Inc.*,
   No. 17-986, 2020 WL 4436361 (S.D. Cal. July 31, 2020 ..................................................13

*McKenzie L. Firm, P.A. v. Ruby Receptionists, Inc.*,
   No. 3:18-CV-1921-SI, 2020 WL 2789873 (D. Or. May 29, 2020)....................................13

*McWilliams v. Advanced Recovery Sys., Inc.*,
    176 F. Supp. 3d 635 (S.D. Miss. 2016) ............................................................... 9

*Milo v. AC&R Advertising, Inc.*,
    148 F.R.D. 68 (S.D.N.Y.), *as amended* (Mar. 4, 1993) ......................................... 17

*O'Connor v. Uber Techs., Inc.*,
    No. 13-CV-03826-EMC(DMR), 2016 WL 107461 (N.D. Cal. Jan. 11, 2016) ................. 13

*Parks v. Eastwood Ins. Servs., Inc.*,
    235 F. Supp. 2d 1082 (C.D. Cal. 2002) ............................................................... 14

*Plummer v. McSweeney*,
    941 F.3d 341 (8th Cir. 2019)................................................................................ 17

*Pollar v. Judson Steel Corp.*,
    No. C 82-6833 MPH, 1984 WL 161273 (N.D. Cal. Feb. 3, 1984) ......................... 9

*Rankin v. Bd. of Educ. Wichita Pub. Sch.*,
    U.S.D. 259, 174 F.R.D. 695 (D. Kan. 1997)........................................................ 9

*Sullivan v. Saint-Gobain Performance Plastics Corp.*,
    No. 5:16-125, 2020 WL 9762421 (D. Vt. Nov. 4, 2020) ..................................... 17

*United States v. Rice*,
    No. 1:14-CR-119, 2020 WL 4015354 (M.D. Pa. July 16, 2020)........................... 17

*United States v. Straker*,
    258 F. Supp. 3d 151 (D.D.C. 2017)..................................................................... 17

*Walney v. Swepi*
    LP, No. CV 13-102, 2017 WL 319801 (W.D. Pa. Jan. 13, 2017)........................ 16

**Other Authorities**

D.C. Rule of Pro. Conduct 4.1 (2018)...........................................................................6

D.C. Rule of Pro. Conduct 4.2(a) (2018).......................................................................9

D.C. Rule of Pro. Conduct 7.1 (2018)...........................................................................8

Communications Among Parties, Counsel, and Class Members, MANUAL FOR COMPLEX
    LITIGATION § 21.33 (4th ed. 2004)..................................................................... 13

Local Rules of Practice, United States District Court, District of Nevada (Apr. 17, 2020), Rule
    7.4(a)........................................................................................................... 11, 20

Marc Raimondi, *Antitrust suit vs. UFC wins legal decision*, ESPN (Dec. 10, 2020, 5:52 PM)...2

**PLAINTIFFS' OPPOSITION TO SPARACINO PLLC'S MOTION FOR RELIEF**

Model Rules of Professional Conduct, American Bar Association ................................ 8, 10, 16

Nev. Rule of Pro. Conduct 1.0A (2006) ...................................................................... 8

Nev. Rule of Pro. Conduct 4.1 (2006) ........................................................................ 6

Nev. Rule of Pro. Conduct 4.2 (2006) ........................................................................ 9

Nev. Rule of Pro. Conduct 7.1 (2006) ........................................................................ 8

WILLIAM B. RUBENSTEIN, HERBERT NEWBERG & ALBA CONTE, NEWBERG ON
    CLASS ACTIONS §19.6 (5th ed. 2015) ............................................................... 13

1

## **INTRODUCTION**

2      In March 2021, after the Court announced it would certify the Bout class, Sparacino

3   PLLC ("Sparacino") sent a misleading letter to members of the proposed class – including four

4   named plaintiffs represented by Class Counsel in cases that were consolidated with *Le v. Zuffa*

5   – telling them that developments in *Le v. Zuffa* suggested they may have viable claims against

6   the UFC and urging them to retain Sparacino to pursue those potential claims. The letter was

7   misleading because, among other things, it omitted the material facts that *Le v. Zuffa* was a

8   class action, that the solicited fighters were members of the proposed class, that their interests

9   were already being represented by the Class Representatives and Class Counsel in *Le v. Zuffa*,

10  and that they could participate in any eventual recovery in *Le v. Zuffa* without retaining – and

11  paying – Sparacino. In violation of several ethical rules governing attorneys, the letter created

12  the false impression that the class members needed to retain Sparacino in order to pursue their

13  antitrust claims against the UFC.

14      Following Plaintiffs' objections to this conduct, Sparacino assured both Plaintiffs and

15  the Court that it would stop soliciting potential class members – but continued to do so. On

16  August 23, 2023, the Court agreed to consider a renewed motion to restrain Sparacino's

17  conduct, ordering that *Plaintiffs* "shall have until October 24, 2023, to file a motion regarding

18  improper Class contact." ECF No. 847. Rather than respond to that motion on the schedule

19  established by the Court, Sparacino pre-emptively filed its own motion, complaining about–

20  and mischaracterizing – Class Counsel's appropriate attempts to protect class members from

21  Sparacino's misleading solicitations. Sparacino's improper solicitations of class members –

22  and its false representations to this Court – should not be countenanced, and its motion should

23  be denied. Plaintiffs intend to file an affirmative motion regarding Sparacino's improper

24  solicitation of class members by October 24, 2023, as contemplated in this Court's August 23,

25  2023 Minute Order, ECF No. 847.

26

## **PROCEDURAL BACKGROUND**

27      At a December 10, 2020 status conference in this matter, the Court announced its

28

**PLAINTIFFS' OPPOSITION TO SPARACINO PLLC'S MOTION FOR RELIEF**

1  intention to certify the Bout Class. In a Minute Order issued the next day, the Court stated that

2  "the forthcoming written order of the Court certifying the class shall be the order certifying the

3  class for the purposes of Rule 23. . . ." ECF No. 775 (Dec. 11, 2020). Press outlets swiftly

4  publicized the Court's announcement of its intention to certify the Bout Class. *See*, *e.g.*, Marc

5  Raimondi, ESPN Staff Writer, "Antitrust Suit Wins Legal Decision," Marc Raimondi, *Antitrust*

6  *suit vs. UFC wins legal decision*, ESPN (Dec. 10, 2020, 5:52 PM),

7  https://www.espn.com/mma/story/_/id/30492170/antitrust-suit-vs-ufc-wins-legal-decision.

8        About three months later, on or about March 16, 2021, Sparacino sent a misleading

9  letter to members of the proposed class, soliciting them to retain Sparacino PLLC to represent

10  them in connection with "Potential Antitrust Claims Against UFC." *See* Exh. 1 to Decl. of

11  Richard A. Koffman in Support of Pls.' Opp'n to Sparacino PLLC's Mot. for Relief Pursuant

12  to the Court's Inherent Authority ("Koffman Decl."), filed herewith.[1] The letter stated that

13  "developments in a recent court case called *Le v. Zuffa* suggests [sic] you may have legal

14  claims relating to your time as an MMA competitor in the UFC." *Id*. *The letter made no*

15  *mention of the fact that Le v. Zuffa was a class action*; indeed, the word "class" does not appear

16  anywhere in the letter. *See id*. The letter likewise failed to mention that this Court had stated its

17  intention to certify the class, or that absent class members need not take any action in order to

18  participate in any eventual recovery in *Le v. Zuffa*. Instead, the letter created the false

19  impression that to pursue antitrust claims against the UFC, fighters would need to retain the

20  services of Sparacino or some other counsel, whereas in reality, absent class members could

21  rely on Class Counsel and the Representative Plaintiffs to represent their interests so long as

22  the class was indeed certified.

23        Sparacino's misleading letter violated at least three ethical rules governing attorneys

24  practicing in Nevada and Washington, D.C. (Sparacino is a Washington, D.C. law firm; *see*

25

26  [1] Sparacino's letter was accompanied by a brochure. *See* Exh. 2 to Koffman Decl. Sparacino's
    motion refers to the March 16, 2021 letter and brochure as "The First Mailer." Sparacino
27  PLLC's Mot. for Relief Pursuant to the Court's Inherent Authority, ECF No. 849 (Sparacino
    Mot.).

28

Exh. 1 to Koffman Decl.). First, it violated Rule 4.1 of the Nevada and Washington, D.C. Rules of Professional Conduct, which prohibits attorneys from making false statements of material fact or omitting material facts in communications with third parties. *See* section I.A.1, *infra*; *see also* ECF No. 796,[2] at 10-11; ECF No. 813,[3] at 3-4. Second, the letter violated Rule 7.1 of the Nevada and D.C. Rules of Professional Conduct, which prohibits attorneys from making false or misleading statements about the lawyer's services. *See* section I.A.1, *infra*; *see also* ECF No. 796, at 13-14; ECF No. 813, at 3-4.

Third, the letter violated Rule 4.2 of the Nevada and D.C. Rules of Professional Conduct, which prohibits attorneys from contacting persons known to be represented by counsel about the subject of the representation. *See* section I.A.1, *infra*; Declaration of Jeffrey W. Stempel ("Stempel Decl."), Exh. 3 to Koffman Decl., at ¶¶15, 22-34; *see also* ECF No. 796, at 14-16; ECF No. 813, at 6-8. Sparacino *admits* its March 16, 2021 letter was sent to four named plaintiffs represented individually by Class Counsel in cases that were consolidated with *Le v. Zuffa*. *See* ECF No. 849, at 9 n.7.[4] Moreover, because the Court had announced it would certify the Bout Class, the putative class members were analogous to members of a certified class and should be considered represented parties for purposes of Rule 4.2. *See infra* at 8-9; Stempel Decl., at ¶¶ 15, 25; *see also* ECF No. 796, at 13-14; ECF No. 813, at 7-8.

Class Counsel brought these ethical violations to Sparacino's attention. *See* ECF No. 797, at ¶¶ 13, 15, 16; ECF No. 813, at 8-9. Rather than cease its improper solicitations and allow Class Counsel to send a corrective letter, Sparacino sent a second misleading solicitation letter to class members. *See* ECF No. 797 at ¶ 17; ECF No. 796, at 5-6, 11-12, 16.[5] In

---

[2] Pls.' Emergency Mot. to Compel Sparacino PLLC to Stop Communicating with Absent Members of the Proposed Class and for Related Relief.

[3] Pls.' Reply in Supp. of  Emergency Mot. to Compel Sparacino PLLC to Stop Communicating with Absent Members of the Proposed Class and for Related Relief.

[4] Sparacino claims that it made good-faith efforts not to contact fighters who were individually represented, but a reasonably diligent review of the docket in *Le v. Zuffa* would have revealed the names of the plaintiffs represented individually by Class Counsel in the consolidated cases.

[5] Sparacino's second solicitation letter is attached as Exhibit 4 to the Declaration of Richard A. Koffman.

response, Class Counsel filed Pls.' Emergency Mot. To Compel Sparacino PLLC to Stop Communicating with Absent Members of the Proposed Class and for Related Relief, ECF No. 796 (March 30, 2021). On September 30, 2022, this Court denied that motion "as moot," stating, "It is the Court's understanding that Sparacino PLLC is no longer engaging in the alleged communications that formed the basis for this Emergency Motion." ECF No. 831. Importantly, the Court *did not* deny the motion on the merits, but instead relied on representations by Sparacino that it was no longer contacting members of the proposed class to deny the motion *as moot*. *Id.*

Subsequently, Class Counsel learned that, contrary to its representations to the Court and to Class Counsel, Sparacino continued to solicit members of the proposed class. *See infra* at 5-6; Declaration of Antonio McKee, Exh. 5 to Koffman Decl. Class Counsel therefore requested that the Court address these communications anew. *See* Plaintiffs' Pre-Conference Statement, ECF No. 842 (Aug. 17, 2023). In its August 21, 2023 Minute Order following tthat day's Status Conference, the Court ordered "that Plaintiffs in Le et al v. Zuffa, LLC, 2:15-cv-01045-RFB-BNW, shall have until October 24, 2023, to file a motion regarding improper Class contact." ECF No. 847.

Rather than follow the schedule established by the Court, Sparacino pre-emptively filed, on September 13, 2023, the instant motion, ECF No. 849, (1) denying that its solicitations were misleading or otherwise improper, *id.* at 6-9; (2) seeking to continue to communicate with absent class members, notwithstanding the Court's Order certifying the class, until the end of the (yet-to-be-determined) opt-out period, *id.* at 9-12; and (3) seeking a wide array of sanctions against Class Counsel, *id.* at 12-17. For the reasons set forth below and in ECF No. 796 and ECF No. 813, Sparacino's motion should be denied in its entirety.

## FALSE OR MISLEADING CLAIMS IN SPARACINO'S BRIEF

Just as it did in its solicitations of class members, Sparacino makes several false and misleading statements in support of the instant motion (ECF No. 849). Some of those will be addressed in the Argument below, but others should be addressed at the outset.

First, Sparacino repeatedly – and baselessly – accuses Class Counsel of "threatening," "coercing," and even "extorting"[6] Sparacino and its former co-counsel, Scott + Scott, *see* ECF No. 849 at 1, 4-5, 12-15, contending that Class Counsel's conduct was "reckless, improper, unethical—indeed, arguably illegal—and disruptive to the litigation." *Id*. at 2. This is nonsense. The *only* steps Class Counsel took in response to Sparacino's improper solicitation of class members were to inform Sparacino of its ethical violations, to meet and confer with Sparacino regarding those violations and Class Counsel's intention to move the Court for appropriate relief, and to seek relief from the Court when Sparacino's violations continued. *See* Cramer Declaration, ECF No. 797, at ¶¶13, 15-16; *see also* ECF No. 813, at 8-9. Indeed, Sparacino implicitly concedes as much, claiming that Class Counsel "coerced" Sparacino by "improperly, inaccurately, and incorrectly characteriz[ing] Sparacino's communications as misleading in its recent pre-conference statement to the Court." ECF No. 849, at 5.

Similarly, Sparacino claims that Scott + Scott withdrew from its co-counsel arrangement with Sparacino because "Scott + Scott could not bear the reputational and business risk created by Class Counsel's threat to take action directly against Scott + Scott if they did not withdraw from the matter." *Id*. at 4. The only "threat" Class Counsel made to Scott + Scott was the same "threat" made to Sparacino: that if the improper solicitation of class members continued, Class Counsel would seek appropriate relief from the Court. *See* Cramer Decl., ECF No. 797 at ¶¶15-16; ECF No. 813, at 8-9. This is, of course, completely appropriate. *See* Stempel Decl., at ¶ 21.

Sparacino repeatedly refers to Plaintiffs' emergency motion as having been "denied" or "rejected" by the Court, *see* ECF No. 849, at 2 n.1, 3, 13, when in fact the Court denied the motion "as moot," stating, "It is the Court's understanding that Sparacino PLLC is no longer engaging in the alleged communications that formed the basis for this Emergency Motion."

---

[6] While one would expect attorneys, as officers of the Court, to refrain from casually accusing other attorneys of extortion, Ryan Sparacino, Sparacino's founder and Managing Partner (see ECF No. 809, at ¶1), has an apparent penchant for accusing other attorneys of extortion. *See* LinkedIn posts of Ryan Sparacino, Exh. 6 to Koffman Decl.

ECF No. 831. Sparacino's representation that "the Court rejected" Plaintiffs' allegations of

improper solicitation by Sparacino, ECF No. 849 at 13, is misleading, just as its letters to class

members were misleading.

Finally, Sparacino admits that in April 2021 it "pledged to this Court":

> . . . While that [Emergency] Motion remains pending, Sparacino will not
> communicate with any such absent class members unless they reach out to
> Sparacino directly.  Nor will Sparacino re-contact any of the individuals to
> whom we have already sent a mailer, unless they initiate contact with us
> directly.

ECF No. 849, at 5.[7] Sparacino's "pledge" to this Court was false. On May 3, 2021, again on

May 8, 2021, and yet again on June 12, 2021 – all while Plaintiffs' Emergency Motion was

pending – Sparacino solicited class member Antonio McKee by email, attaching a proposed

engagement letter and asking Mr. McKee to sign it electronically.[8] *See* Declaration of Antonio

McKee, Exh. 5 to Koffman Decl., at ¶¶ 5-7. Mr. McKee neither invited nor responded to any of

these repeated solicitations from Sparacino. *Id*. at ¶ 8.

## I.   ARGUMENT

### A.   Sparacino's Communications with Class Members Were and Are Improper

#### 1.   Sparacino's first solicitation letter violated several ethical rules

Sparacino's first solicitation letter (Exh. 1 to Koffman Decl.) violated at least three

ethical rules. First, the letter violated Nevada Rule of Professional Conduct 4.1 (and its

Washington, D.C. analogue),[9] prohibiting a lawyer from making false statements of material

---

[7] *See also* ECF No. 808, at 16 ("Sparacino has already pledged not to contact again the individuals it had already solicited unless such individuals initiate contact with Sparacino—a pledge by which Sparacino will abide and need not be ordered to keep.").

[8] Mr. McKee forwarded Sparacino's emails to Rob Maysey, one of the attorneys for the Class in this matter, whom Mr. McKee had individually retained as his counsel several years earlier. Sparacino very likely solicited other class members during this time period without Class Counsel's knowledge.

[9] *See* Nev. Rule of Pro. Conduct 4.1 (2006); D.C. Rule of Pro. Conduct 4.1 (2018).

Case No.: 2:15-cv-01045 RFB-BNW

fact or omitting material facts in communications with third parties.[10] *See* ECF No. 796, at 10-11; ECF No. 813, at 3-4. As noted above, the letter is misleading because it implies that in order to pursue antitrust claims against the UFC, fighters would need to retain the services of Sparacino. At the very least, the letter is misleading because it omits the material facts that: (1) *Le v. Zuffa* is a class action; (2) the solicited fighters are members of the proposed class; (3) the Court had announced its intention to certify the class; (4) the fighters' interests are already being represented by the Class Representatives and Class Counsel; (5) the fighters could participate in any eventual recovery in *Le v. Zuffa* without retaining individual counsel or taking any other action; and  (6) if the fighters opted out they would lose the benefit of any class-wide recovery.

Indeed, Sparacino's first letter does not use the word "class" at all – an omission that could confuse even a lawyer, much less a layperson. *See In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1239, 1245 (N.D. Cal. 2000) (attorney solicitations were misleading where they did not "identify the court-appointed lead plaintiff and counsel or the procedures safeguarding the appropriateness of class certification" and "communicate[d] a gratuitous air of urgency"); *Masonek v. Wells Fargo Bank*, No. SACV091048, 2009 WL 10672345, at *3-4 (C.D. Cal. Dec. 21, 2009) (enjoining communications with absent class members and ordering curative notice where statements misled class members "by failing to explain the class action process and how a class action could potentially provide investors with a recovery without investors taking any current action"). One significant risk is that the letter's misleading statements could deceive class members into opting out of this action, foreclosing the possibility of their benefiting from any settlement or judgment. *See* Stempel Decl., at ¶¶ 41-52

---

[10] The Nevada Rules of Professional Conduct are modeled on the Model Rules of Professional Conduct, published by the American Bar Association, accessible at https://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct/model_rules_of_professional_conduct_table_of_contents/ (Hereinafter, "Model Rules"). Washington D.C. (where Sparacino is located) has also adopted the ABA Model Rules. *See* https://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct/alpha_list_state_adopting_model_rules/.

(discussing risks posed to class members by Sparacino's solicitations); *Chalian v. CVS Pharmacy, Inc.*, No. 2:16-cv-8979, 2020 WL 7347866, at *4-5 (C.D. Cal. Oct. 30, 2020) (ordering non-party counsel to cease communicating with absent class members and file a list of contacted individuals; noting that "soliciting opt-outs after presenting misleading, inaccurate, and disparaging information . . . presents a real risk that class members will opt-out and relinquish valuable settlement benefits based on such misleading information").

Sparacino's first solicitation letter also violates Nevada Rule of Professional Conduct 7.1 (and its Washington, D.C. equivalent),[11] which prohibits false or misleading communications about a lawyer's services. *See* ECF No. 796, at 13-14; ECF No. 813, at 3-4. According to Rule 7.1, a communication "is false or misleading if it contains a material misrepresentation of fact or law, or omits a fact necessary to make a statement considered as a whole not materially misleading." *Id*. The letter violates Rule 7.1 for the same reasons it violates Rule 4.1. Further, Rule 7.1 is particularly on point because the comment on Model Rule 7.1 specifies: "A truthful statement is also misleading if presented in a way that creates a substantial likelihood that a reasonable person would believe the lawyer's communication requires that person to take further action when, in fact, no action is required."[12] Sparacino's first letter indeed created a substantial likelihood that class members would reasonably believe that they need to take further action when no action was required. Absent class members can benefit from this litigation without taking any action at this time. Sparacino's letter falsely implies that fighters need to retain their own lawyers – and should retain Sparacino – to recover from Zuffa and fails to mention that Class Counsel are already pursuing the rights of absent class members against the UFC. The letter thus violates Rule 7.1.

[11] *See* Nev. Rule of Pro. Conduct 7.1 (2018); D.C. Rule of Pro. Conduct 7.1 (2018).

[12] *See* Nev. Rule of Pro. Conduct 1.0A (2021) ("The preamble and comments to the ABA Model Rules of Professional Conduct are not enacted by this Rule but may be consulted for guidance in interpreting and applying the Nevada Rules of Professional Conduct, unless there is a conflict between the Nevada Rules and the preamble or comments.").

Third, the first solicitation letter violated Nevada Rule of Professional Conduct 4.2 (and its Washington, D.C. equivalent),[13] which prohibits attorneys from contacting persons known to be represented by counsel about the subject of the representation without counsel's permission. *See* Stempel Decl., at ¶¶ 15, 25. Some courts hold that absent class members are represented by court-appointed plaintiffs' counsel prior to class certification. *Pollar v. Judson Steel Corp.*, No. C 82-6833 MPH, 1984 WL 161273 (N.D. Cal. Feb. 3, 1984); *see also Dondore v. NGK Metals Corp.*, 152 F. Supp. 2d 662, 666 (E.D. Pa. 2001) *on reconsideration*, No. 00-1966, 2001 WL 516635 (E.D. Pa. May 16, 2001) ("The truly representative nature of a class action suit affords its putative members certain rights and protections including, we believe, the protections contained in Rule 4.2 of the Rules of Professional Conduct." ((internal quotation marks omitted)).[14] Other courts hold that class counsel do not represent absent class members until after a class is certified.[15] Here, at the time of the first solicitation letter, the absent class members had an unusual status. The Court had stated its intention to certify the class, but it had not yet issued its order certifying a class. Plaintiffs respectfully submit – and Professor Stempel agrees – that absent class members should be treated as represented parties for purposes of Rule 4.2 under such circumstances. *See* Stempel Decl., at ¶¶ 15, 25.

Even absent the case law cited above treating absent class members as represented parties before class certification, Rule 4.2 should apply in this case. Not to apply Rule 4.2 here would reward Sparacino's apparent effort to game the system. Sparacino appears to have been well aware that this Court had announced its intention to certify a class. Otherwise, it would not have had reason to refer to a recent ruling in this litigation that pertained to MMA fighters

---

[13] *See* Nev. Rule of Pro. Conduct 4.2 (2006); D.C. Rule of Pro. Conduct 4.2(a) (2018).

[14] *See also, e.g., Corll v. Edward D. Jones & Co.*, 646 N.E.2d 721 (Ind. Ct. App. 1995); *Rankin v. Bd. of Educ. Wichita Pub. Sch.*, U.S.D. 259, 174 F.R.D. 695, 697–98 (D. Kan. 1997).

[15] *See, e.g.*, *McWilliams v. Advanced Recovery Sys., Inc.*, 176 F. Supp. 3d 635, 642 (S.D. Miss. 2016).

Case No.: 2:15-cv-01045 RFB-BNW
**PLAINTIFFS' OPPOSITION TO SPARACINO PLLC'S MOTION FOR RELIEF**

who competed in UFC events between 2010 and 2017.[16] Sparacino's timing is suspicious, to say the least. Sparacino waited to send its misleading solicitations until over six years after this action began and Plaintiffs' counsel had gained a significant benefit for the class members from the Court's decision to certify a class. But Sparacino acted before the Court formally issued its class certification order, in an apparent attempt to evade Rule 4.2's prohibition against contacting a represented party. Such gaming of the system should not be rewarded or encouraged. This Court should thus rule that absent class members are represented parties for purposes of Rule 4.2 once a Court announces it will certify a class. That approach would deter other lawyers from engaging in similar sharp practices in the future. *See* Stempel Decl., at ¶ 25.

Further, Sparacino admits that it "inadvertently" sent its solicitation letters to at least four individuals represented by Class Counsel as named plaintiffs in cases that were consolidated with *Le v. Zuffa*: Dennis Hallman, Darren Uyenoyama, Gabe Ruediger, and Mac Danzig. *See* ECF No. 849, at 9 n.7. One of those named plaintiffs, Dennis Hallman, brought Sparacino's solicitation to the attention of Class Counsel. *See* ECF No. 797 (Cramer Decl.), Exh. 4 (Hallman e-mail dated March 23, 2021). Mr. Hallman's name shows up repeatedly on even a cursory review of the docket, so minimal diligence by Sparacino would have revealed that Class Counsel represent Mr. Hallman (and the other three named plaintiffs) individually. Under these circumstances, it was unethical for Sparacino to contact Messrs. Hallman, Uyenoyama, Ruediger, and Danzig without first seeking the permission of Class Counsel. *See* Stempel Decl., at ¶ 34; *see also* Model Rule 4.2, comment 8 ("[A]ctual knowledge may be inferred from the circumstances. *See* Rule 1.0(f). Thus, the lawyer cannot evade the requirement of obtaining the consent of counsel by closing eyes to the obvious.").[17]

---

[16] Sparacino's March 16, 2021 letter reads in relevant part, "In a case called *Le v. Zuffa*, a federal judge recently ruled that MMA athletes who competed in UFC events in the United States between 2010 and 2017 may have claims for compensation against the UFC under our Nation's antitrust law, the Sherman Act." *See* Ex. 1 to Koffman Decl.

[17] Indeed, whatever Sparacino did *post-solicitation* to identify the individually represented fighters it improperly contacted could presumably have been done *pre-solicitation*.

**PLAINTIFFS' OPPOSITION TO SPARACINO PLLC'S MOTION FOR RELIEF**

## 2.     Sparacino's second solicitation letter did not cure its prior ethical violations

As explained above, Sparacino's first solicitation letter was unethical. Pursuant to Local Rule 7.4(a), on or about March 22, 2021, Class Counsel initiated contact with Sparacino and Scott + Scott to meet and confer about the letter. *See* Cramer Decl., ECF No. 797, at ⅌13. Scott + Scott subsequently decided to withdraw from involvement in the litigation. *Id.* at ⅌18.[18] In the first meet and confer telephone call, Class Counsel explained why the first solicitation letter was misleading and unethical, that a new communication should be sent to its recipients clarifying their legal rights, and that the corrective letter should come from Class Counsel. *Id.* at ¶15. While Class Counsel were meeting and conferring in good faith, on or about March 24, 2021, Sparacino sent out a second solicitation letter. *Id.* at ¶17 & Cramer Decl., Exh. 3. Sparacino did not inform Class Counsel it was going to take this action – one that Class Counsel had expressly opposed during the meet and confer. Sparacino's second solicitation letter fails to correct its ethical violations in various ways and, indeed, arguably makes matters worse. *See* Stempel Decl., at ⅌ 37 (Sparacino's second solicitation letter "further supports judicial control of Sparacino's solicitation"). First, it reasserts a claim also made in the first solicitation letter: that Sparacino – a law firm without any apparent antitrust experience – is teaming with Scott + Scott – a law firm with significant antitrust experience. That is no longer true. Had Sparacino completed the meet and confer process before acting, the second solicitation letter would not have been inaccurate in this way.

Second, the letter states, "Unless you reach out to us, this will be the last time my firm ever contacts you." Exh. 4 to Koffman Decl. That means Sparacino cannot send yet another letter to – or otherwise contact – class members who have not reached out to Sparacino without breaking a promise the firm made in its second solicitation letter. But as seen in the case of Antonio McKee, Sparacino in fact breached that promise – and its representations to the Court

---

[18] The fact that Scott + Scott chose to withdraw rather than litigate the propriety of the solicitation letters does not render the meet and confer process "coercive," as Sparacino baselessly claims.

1    – and continued to solicit class members who had not reached out to Sparacino. *See*

2    Declaration of Antonio McKee, Exh. 5 to Koffman Decl., at ¶¶ 5-8.

3         Third, the second solicitation letter undoes neither the ethical violations Sparacino

4    committed in the first solicitation letter nor the resulting harms. The ethical rules bar lawyers

5    from making false and misleading statements, regardless of whether those lawyers make some

6    effort to fix those statements when they get caught. An ethical violation remains an ethical

7    violation. The second letter is far from a perfect cure for the first letter. Class members may

8    have read the first letter but they may not read the second letter. Others may have heard

9    second-hand about the first letter but not the second letter.[19]

10        Fourth, the second letter styles itself as a "follow up" and an "update," not as a

11   correction. *See* Exh. 4 to Koffman Decl. The second letter never explicitly acknowledges that

12   the first letter was misleading. *See id*. That minimizes the chances that class members will look

13   to the second letter to correct any misimpressions caused by the first letter.

14        Fifth, the second letter provides contact information only for Sparacino, a firm that has

15   proven itself untrustworthy. *Id*. It does not provide contact information for Class Counsel, who

16   should be the ones to communicate with interested absent class members about the class

17   litigation process. See Stempel Decl., at ¶ 29.

                    **3.     Future solicitations of members of the certified class would be
                             unethical**

18
19        Now that the Court has certified the class, any additional solicitation of class members

20   would violate Rule 4.2 of the Nevada Rules of Professional Conduct and its Washington, D.C.

21   analogue. Stempel Decl., at ¶¶ 17, 26. Most courts and commentators agree that once a class is

22   certified, Rule 4.2 precludes non-class counsel from contacting class members about the

23

24

25   [19] As Class Counsel explained in the meet and confer process, correcting the
     misunderstandings caused by the first letter will best be achieved by Class Counsel sending
26   their own corrective letter to the class members to whom Sparacino sent its misleading
     solicitations. *See* Cramer Decl., ECF No. 797, at ¶ 15. That sort of targeted communication can
27   play an essential role in Class Counsel's overall efforts to ensure that absent class members
     know about this class action litigation and understand their procedural rights.
28

subject matter of the litigation without permission from class counsel. *See* Communications

Among Parties, Counsel, and Class Members, MANUAL FOR COMPLEX LITIGATION §

21.33 (4th ed. 2004) ("Once a class has been certified, the rules governing communications

apply as though each class member is a client of the class counsel."); WILLIAM B.

RUBENSTEIN, HERBERT NEWBERG & ALBA CONTE, NEWBERG ON CLASS

ACTIONS §19.6 (5th ed. 2015) ("[F]ollowing certification, class counsel and absent class

members have a formal, if unique attorney-client relationship. Absent class members are

therefore "represented parties," and ethics rules prohibit opposing counsel from contacting

them directly.").

Courts in the Ninth Circuit follow this rule. *See*, *e.g.*, *McCurley v. Royal Seas Cruises,*

*Inc.*, No. 17-986, 2020 WL 4436361, at *5 (S.D. Cal. July 31, 2020) ("The Court finds that the

attorney-client relationship attached when the Court ordered the class certified in this case.")[20];

*Baleja v. Northrop Grumman Space*, No. EDCV17235JGBSPX, 2020 WL 5078814, at *2

(C.D. Cal. July 30, 2020) (quoting *Walker v. Apple, Inc.*, 4 Cal. App. 5th 1098, 1107 (2016))

("[O]nce a class is certified, class counsel represent absent class members for purposes of the

ethical rule that prohibits communication with represented parties."); *McKenzie L. Firm, P.A.*

*v. Ruby Receptionists, Inc.*, No. 3:18-CV-1921-SI, 2020 WL 2789873, at *2–3 (D. Or. May 29,

2020) ("As a result of class certification and appointment of class counsel, an attorney-client

relationship is formed between class counsel and all absent class members on all matters

regarding the litigation."); *O'Connor v. Uber Techs., Inc.*, No. 13-CV-03826-EMC(DMR),

2016 WL 107461, at *4 (N.D. Cal. Jan. 11, 2016) (defense counsel precluded from

---

[20] *See also id.* at *3 ("Even pre-certification, '[t]he Supreme Court has held that Rule 23 allows
a court, in appropriate circumstances to restrict communications between a party and members
of a … putative class.").

**PLAINTIFFS' OPPOSITION TO SPARACINO PLLC'S MOTION FOR RELIEF**

communicating with class members absent class counsel's permission); *Kirola v. City & Cnty.*
*of San Francisco*, No. C 07-03685 SBA, 2010 WL 3505041, at *1 (N.D. Cal. Sept. 7, 2010)
("[T]he applicable rules of Professional Conduct prohibit communications by an attorney with
a represented client without express consent of the attorney, including communications with
individual class members once a class action has been certified."); *Jacobs v. CSAA Inter-Ins.*,
No. C07-362MHP, 2009 WL 1201996, at *2 (N.D. Cal. May 1, 2009) ("After a court has
certified a class, communication with class members regarding the subject of representation
must be through counsel for the class."); *see also Parks v. Eastwood Ins. Servs., Inc.*, 235 F.
Supp. 2d 1082, 1083 (C.D. Cal. 2002) (quoting *Kleiner v. First National Bank of Atlanta,* 751
F.2d 1193, 1207 n. 28 (11th Cir.1985)) ("In a class action certified under Rule 23, Federal
Rules of Civil Procedure, absent class members are considered represented by class counsel
unless they choose to 'opt out.' Defendants' attorneys are subject to the 'anti-contact' rule, and
must 'refrain from discussing the litigation with members of the class as of the date of class
certification.'").

A recent article in the journal *Antitrust* aptly explains the reasoning behind the majority
rule:

> Where courts dispense with the majority rule that putative class members
> become clients of class counsel once the class is certified and withhold that
> status until after the conclusion of the opt-out period, class members may be left
> vulnerable to improper influence. … If the attorney-client relationship has not
> been established at that point, class counsel will find their hands tied in trying to
> protect the interests of the class and, after investing significant time and money
> in the case, risk losing putative class members to optout suits or separate
> settlements with defendants. … Given these pressures, class members are still, if
> not even more, vulnerable to coercion and abusive, misleading communications
> between class certification and the expiration of the opt-out period. It is at this
> point that courts should consider whether and how the rights of class members
> may be protected, rather than attempting to squeeze class action relationships
> into the traditional attorney-client mold. To continue to do so is to try to fit a
> round peg in a square hole.

1
2
Hollis Salzman, Meegan Hollywood, & Noelle Feigenbaum (Robins Kaplan LLP), *Between a*
3
*Rock and a Hard Place: Communicating with Absent Class Members*, *Antitrust* Vol. 32 No. 1,
4
p. 4 (Fall 2017).

5        Sparacino cites a few cases for the proposition that class members do not become
6
clients of class counsel until after the opt-out period, *see* ECF No. 849 at 11, but none of those
7
cases were decided by courts in the Ninth Circuit. Moreover, most of the cases Sparacino cites
8
are either distinguishable or not actually supportive of Sparacino's position. For example,
9
Sparacino cites *Kleiner v. First Nat'l Bank of Atlanta*, 102 F.R.D. 754, 769 (N.D. Ga. 1983),
10
*aff'd in part*, *vacated in part*, 751 F.2d 1193 (11th Cir. 1985), for the proposition that "it cannot
11
truly be said that [counsel for the class] fully 'represents' prospective class members until it is
12
determined that they are going to participate in the class action." ECF No. 849, at 11. This
13
citation is misleading at best. On appeal from the district court decision quoted by Sparacino,
14
the U.S. Court of Appeals for the Eleventh Circuit unequivocally held that post-certification
15
solicitation of class members violates Rule 4.2:
16

17
> At a minimum, *class counsel represents all class members as soon as a class is*
18
> *certified*, *Van Gemert v. Boeing Co*., 590 F.2d 433, 440 n. 15 (2d Cir.1978),
> aff'd, 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980); if not sooner, *see*
19
> *Roper v. Consurve*, *Inc*., 578 F.2d 1106, 1110 (5th Cir.1978), *aff'd sub nom.*
> *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 100 S.Ct. 1166, 63
20
> L.Ed.2d 427 (1980).
21
> The court below correctly concluded that *the solicitation of exclusions*
22
> *constitutes a "per se" abuse*. Under such circumstances, the court was justified
23
> in denying the Bank discovery of class members for purposes of rebutting the
> charges of coercion.
24
25
26
27
28

*Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1207 n.28 (11th Cir. 1985) (emphases added).[21]

*In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1239 (N.D. Cal. 2000), also supports Plaintiffs' position. In that case, the court found the solicitations to be misleading, ordered curative notice, and prohibited "repetition of such conduct." Id. at 1246.

*In re Chicago Flood Litig.*, 682 N.E.2d 421 (Ill. App. Ct. 1997), had nothing to do with the propriety of contacting absent class members, but instead addressed whether class counsel was entitled to legal fees from opt-out plaintiffs. Moreover, even in that non-analogous context, the court noted, "During the opt-out period, the status of class members is amorphous." *Id.* at 426. This is far from an unequivocal holding that class members are not represented by class counsel until the opt-out period has run.[22]

The vast majority of the cases Sparacino cites hold that class members are represented by class counsel for purposes of Rule 4.2 once a class is certified. *See* ECF No. 849 at 10 & n.8 (citing cases for the proposition that "Model Rule 4.2 does not bar counsel from

---

[21] Even the partially vacated district court decision misleadingly cited by Sparacino held that class members were indeed represented parties for purposes of solicitation of opt-outs:

> Once a class has been certified, some but not all aspects of the relationship are present. … At the time the class notices were sent out in the instant case, *the attorney-client relationship existed for the purpose of aiding prospective class members in deciding whether or not to join in the class action.* Absent class members were "parties represented by a lawyer," at least for the limited purpose described.

*Kleiner*, 102 F.R.D. at 769 (emphasis added; footnote omitted).

[22] Similarly, *In re Potash Antitrust Litigation*, 162 F.R.D. 559 (D. Minn. 1995), is distinguishable because it addressed a class member's request to examine class counsel's work product documents, rather than the propriety of non-class attorneys' contacts with class members. *Walney v. Swepi* LP, No. CV 13-102, 2017 WL 319801 (W.D. Pa. Jan. 13, 2017), is distinguishable both because it concerns *class counsel's* ability to communicate with absent class members, and because there were no concerns that class members had been misled. *Id.* at *11-12. Moreover, the court in *Walney* acknowledged that "Some courts in Pennsylvania and elsewhere have suggested that an attorney-client relationship forms upon certification of the class, or even prior thereto." *Id.*, at *12.

communicating with putative class members *before a class is certified*"(emphasis added)).[23]
This is unsurprising, of course, given that the vast majority of courts so hold. *See supra*, at 11-13; Stempel Decl., at ¶ 23 & fn.4; *see also Sullivan v. Saint-Gobain Performance Plastics Corp.*, No. 5:16-125, 2020 WL 9762421, at *6 (D. Vt. Nov. 4, 2020) ("The court rejects the argument that no attorney-client relationship exists until expiration of the opt-out period. The court appointed class counsel to represent the class members. The order was effective when it issued. It was not conditioned on the expiration of the opt-out period.").

The *Sullivan* court expressly rejects the ABA ethics opinion on which Sparacino heavily relies. *Sullivan*, 2020 WL 9762421, at *6, n.2. ABA ethics opinions are, of course, not binding on courts. *See*, *e.g.*, *Plummer v. McSweeney*, 941 F.3d 341, 350 (8th Cir. 2019); *United States v. Rice*, No. 1:14-CR-119, 2020 WL 4015354, at *3 (M.D. Pa. July 16, 2020); *United States v. Straker*, 258 F. Supp. 3d 151, 156 (D.D.C. 2017); *Milo v. AC&R Advertising, Inc.*, 148 F.R.D. 68, 83 (S.D.N.Y.), *as amended* (Mar. 4, 1993), *adopted*, 834 F. Supp. 632 (S.D.N.Y. 1993) "Instead, on-point cases from the jurisdiction in which the ethics rule applies, along with the rule itself, are the relevant authority." *Buergofol GMBH v. Omega Liner Co.*, Inc., No. 4:22-CV-04112-KES, 2023 WL 1068519, at *3 (D.S.D. Jan. 27, 2023) (citing *Plummer*, 941 F.3d at 350). The on-point cases from within the Ninth Circuit hold that Rule 4.2 prohibits outside lawyers from communicating with class members once a class has been certified. *See supra*, at 11-12. Because courts in the Ninth Circuit apply the majority rule that

---

[23] As explained above and in Professor Stempel's Declaration, in this case, where the litigation had been ongoing for years and the Court had announced its intention to certify the class, Sparacino's solicitations of class members violated Rule 4.2 even before the issuance of a formal class certification order. *See* Stempel Decl., at ¶¶ 15, 25.

class members are represented parties for purposes of Rule 4.2 once a class has been certified, Sparacino should not be permitted to contact class members from this point forward.

### 4.    Professor Green's letter fails to justify Sparacino's conduct

In defense of its improper solicitation of class members, Sparacino submits a four-page letter from Bruce A. Green, a professor at Fordham Law School ("Green Letter").[24] In contrast to the careful and exhaustive analysis of the relevant facts and ethical rules in the Declaration of Jeffrey W. Stempel,[25] the cursory review presented by Professor Green fails to address several key issues, rendering it of little use in deciding the matters at hand.

First, Professor Green concedes that he has "not been asked to address" whether "Sparacino's letters were misleading." Green Letter at 2. Sparacino concedes, as it must, that courts have the authority to restrict misleading communications with absent class members. *See* ECF No. 849 (quoting *Mevorah v. Wells Fargo Home Mortg., Inc.*, 2005 WL 4813532, at *3 (N.D. Cal. Nov. 17, 2005). Professor Green thus fails to address a question that may well be dispositive of Sparacino's motion. *See* Stempel Decl., at ¶ 53 ("Professor Green does not contradict my opinion that the letters were misleading, rendering them violative of Rule 1.4 and/or Rule 4.3.")

Professor Green also fails to address whether Sparacino, "a Washington, D.C.-based law firm that specializes in investigating and litigating mass-tort actions," ECF No. 849 at 2, is competent to represent plaintiffs in a complex antitrust matter. Because Sparacino appears to have no significant antitrust experience and is no longer partnering with a firm that possesses such experience, Professor Stempel opines that Sparacino's lack of competence "raises

---

[24] See Exh. 2 to ECF No. 849.
[25] Exh. 3 to Koffman Decl.

significant concerns" regarding Sparacino's compliance with Rule 1.1 of the Nevada Rules of Professional Conduct. Stempel Decl., at ¶¶ 18, 42-45. Professor Green does not contradict Professor Stempel's opinion on that issue, either. Stempel Decl., at ¶ 53 (Professor Green "does not contradict my opinion that Sparacino's lack of competence violates Rule 1.1").

Nor does Professor Green address whether Sparacino's fees are excessive, in violation of Nevada Rule of Professional Conduct 1.5. Stempel Decl., at ¶ 53. Professor Stempel finds that they are. Stempel Decl., at ¶¶ 46-52.

> Professor Green does opine that "questions such as whether, when and how lawyers may communicate directly with absent class members should be resolved by courts through the exercise of discretion under Fed. R. Civ. P. 23," and that Rule 4.2 should not apply at all in the class action context. Green Letter at 4. As Professor Stempel notes, "This is a fairly radical view that, to my knowledge, has never been adopted by any federal court, in the Ninth Circuit or elsewhere. Moreover, as I explain above, the Court has ample authority to prohibit Sparacino's solicitation efforts under Rule 23, without regard to Rule 4.2, a point upon which Professor Green appears to agree."

Stempel Decl., at ¶ 54. Professor Green's letter does not reasonably call into question any of Professor Stempel's analysis or conclusions: "Because Professor Green's letter does not even attempt to address most of the ethical shortcomings of Sparacino's solicitation efforts, and because its analysis of Rule 4.2 is outside the mainstream of professional ethics law and scholarship, it does not alter any of my conclusions regarding the propriety of Sparacino's solicitation of class members." Stempel Decl., at ¶ 55 (footnote omitted).

### B.   Sparacino's Allegations of Misconduct by Class Counsel Are Baseless

In an apparent effort to distract the Court from its own ethical violations and portray itself as a victim rather than a wrongdoer, Sparacino accuses Class Counsel of "threatening," "coercing," and even "extorting" Sparacino and its former co-counsel, Scott + Scott, *see* ECF No. 849 at 1, 4-5, 12-15, contending that Class Counsel's conduct was "reckless, improper, unethical—indeed, arguably illegal—and disruptive to the litigation." *Id*. at 2. But the only

"conduct" Sparacino can point to is Class Counsel's calling Sparacino's attention to its

violation of the rules of professional conduct in its solicitations of class members; Class

Counsel's efforts – both appropriate and required by Local Rule 7-4(a) – to meet and confer

regarding Sparacino's improper solicitations; and Class Counsel's bringing Sparacino's ethical

violations to the attention of the Court. None of these actions were in any way improper,

unethical, reckless, or disruptive to the litigation. *See* Stempel Decl., at ¶21 (Class Counsel's

efforts to prevent Sparacino's improper solicitation of class members "were entirely

appropriate and reasonable"); *see also* ECF No. 797 (Cramer Decl.) at ¶¶ 13, 15 (describing

meet and confer process); ECF No. 813, at 8-9 (same).

Sparacino apparently believes that if it simply uses the words "threats" and "coercion"

often enough – with an "extortion" or two sprinkled in for good measure – the Court will find

that Class Counsel acted inappropriately and sanction Class Counsel pursuant to its inherent

authority to manage litigation before it. But Sparacino fails to identify any threats, coercion, or

extortion. The closest it comes to trying is on page 5 of its brief, where Sparacino states:

> Class Counsel once again sought to tarnish Sparacino's reputation, coerce
> Sparacino to abandon its engagement with its clients, and deter Sparacino from
> continuing to develop potential client relationships with putative class members.
> *Specifically, Class Counsel again improperly, inaccurately, and incorrectly
> characterized Sparacino's communications as misleading in its recent pre-
> conference statement to the Court.*

ECF No. 849, at 5. Class Counsel did in fact characterize Sparacino's communications with

class members as misleading, because they *were* misleading, for the reasons identified above,

in ECF Nos. 796 and 813 (Plaintiffs' Emergency Motion and Reply), and in Professor

Stempel's Declaration, at ¶¶ 35-36, 38. These were not threats, coercion, or extortion, but

entirely proper efforts to protect absent class members – and four named plaintiffs who are

individually represented by Class Counsel – from Sparacino's improper and misleading solicitations.

Because Sparacino's solicitations were in fact misleading, and because Class Counsel's efforts to protect class members from those solicitations were entirely proper, *see* Stempel Decl., at ¶ 21, Sparacino's motion should be denied in its entirety.[26]

As authorized by the Court's August 23, 2023 Minute Order, Plaintiffs anticipate filing, no later than October 24, 2023, an affirmative motion regarding Sparacino's improper contacts with class members.

---

[26] One aspect of the relief sought by Sparacino – "a neutral, even-handed, and reasonable process by which the absent class members may be informed (i) how the opt-out process and procedures will proceed, as well as putative class members' rights thereunder," *see* ECF No. 849 at 17 – will already be provided as a matter of course as part of the class notice required under Rule 23(c)(2)(B).

**PLAINTIFFS' OPPOSITION TO SPARACINO PLLC'S MOTION FOR RELIEF**

1

Respectfully Submitted,

2

By:    */s/ Richard A. Koffman*

3

4

COHEN MILSTEIN SELLERS & TOLL, PLLC
Benjamin D. Brown (admitted *pro hac vice*)

5

Richard A. Koffman (admitted *pro hac vice*)
Daniel H. Silverman (admitted *pro hac vice*)

6

1100 New York Ave., N.W., Suite 500, East
Tower Washington, DC 20005

7

Phone: (202) 408-4600/Fax: (202) 408 4699
bbrown@cohenmilstein.com

8

rkoffman@cohenmilstein.com
dsilverman@cohenmilstein.com

9

10

JOSEPH SAVERI LAW FIRM, LLP
Joseph R. Saveri (admitted *pro hac vice*)

11

Kevin E. Rayhill (admitted *pro hac vice*)
601 California Street, Suite 1000

12

San Francisco, California 94108
Phone: (415) 500-6800/Fax: (415) 395-9940

13

jsaveri@saverilawfirm.com
krayhill@saverilawfirm.com

14

BERGER MONTAGUE PC

15

Eric L. Cramer (admitted *pro hac vice*)
Michael C. Dell'Angelo (admitted *pro hac vice*)

16

Patrick F. Madden (admitted *pro hac vice*)
Najah Jacobs (admitted *pro hac vice*)

17

1818 Market Street, Suite 3600
Philadelphia, PA 19103

18

Phone: (215) 875-3000/Fax: (215) 875-4604
ecramer@bm.net

19

mdellangelo@bm.net
pmadden@bm.net

20

njacobs@bm.net

21

BERGER MONTAGUE PC
Joshua P. Davis (admitted *pro hac vice*)

22

505 Montgomery Street, Suite 625
San Francisco, CA 94111

23

jdavis@bm.net

24

*Co-Lead Counsel for the Class and Attorneys for
Individual and Representative Plaintiffs Cung Le,*

25

*Nathan Quarry, Jon Fitch, Luis Javier Vazquez,
Brandon Vera, and Kyle Kingsbury*

26

27

28

Case No.: 2:15-cv-01045 RFB-BNW
**PLAINTIFFS' OPPOSITION TO SPARACINO PLLC'S MOTION FOR RELIEF**

KEMP JONES, LLP
Don Springmeyer (Nevada Bar No. 1021)
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
(702) 385-6000/Fax: (702) 385-6001
d.springmeyer@kempjones.com

*Liaison Counsel for the Class and Attorneys for
Individual and Representative Plaintiffs Cung Le,
Nathan Quarry, Jon Fitch, Luis Javier Vazquez,
Brandon Vera, and Kyle Kingsbury*

WARNER ANGLE HALLAM JACKSON &
FORMANEK PLC
Robert C. Maysey (admitted *pro hac vice*)
Jerome K. Elwell (admitted *pro hac vice*)
2555 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Phone: (602) 264-7101/Fax: (602) 234-0419
rmaysey@warnerangle.com
jelwell@warnerangle.com

*Counsel for the Class and Attorneys for
Individual and Representative Plaintiffs Cung Le,
Nathan Quarry, Jon Fitch, Luis Javier Vazquez,
Brandon Vera, and Kyle Kingsbury*

Case No.: 2:15-cv-01045 RFB-BNW
**PLAINTIFFS' OPPOSITION TO SPARACINO PLLC'S MOTION FOR RELIEF**

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on this 27th day of September 2023 a true and correct copy of

3

PLAINTIFFS' OPPOSITION TO SPARACINO PLLC'S MOTION FOR RELIEF

4

PURSUANT TO THE COURT'S INHERENT AUTHORITY was served via the District of

5

Nevada's ECF system to all counsel of record who have enrolled in the ECF system.

6

7

By:

8

_/s/ Richard A. Koffman_

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28