1  Eli J. Kay-Oliphant, Esq. (Admitted *Pro Hac Vice*)
   New York Bar No. 4421541
2  District of Columbia Bar No. 503235
   Illinois Bar No. 6326136
3  Ryan R. Sparacino, Esq. (*Pro Hac Vice Motion to be Filed*)
4  District of Columbia Bar No. 493700
   SPARACINO PLLC
5  1920 L Street, NW
   Suite 835
6  Washington, DC 20036
7  Telephone: (202) 629-3530
   eli.kay-oliphant@sparacinopllc.com
8
   Brian D. Shapiro, Esq.
9  Nevada Bar No. 5772
   LAW OFFICE OF BRIAN D. SHAPIRO, LLC
10 510 S. 8th Street
   Las Vegas, NV 89101
11 Telephone: (702) 386-8600
   brian@brianshapirolaw.com
12
13 *Attorneys for Sparacino PLLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>Defendant. | Case No. 2:15-cv-01045-RFB-BNW<br><br>**SPARACINO PLLC'S REPLY IN SUPPORT OF ITS MOTION FOR RELIEF PURSUANT TO THE COURT'S INHERENT AUTHORITY** |

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION .......................................................................................................................1

I.  CLASS COUNSEL'S BAD FAITH ACCUSATION THAT SPARACINO'S COMMUNICATIONS WERE UNETHICAL IS OUTRAGEOUS AND COERCIVE. ......1

II. CLASS COUNSEL IMPROPERLY INTIMIDATED A LAW FIRM AND THEREBY HARMED SPARACINO'S CLIENTS. ......................................................................................6

III. CLASS COUNSEL SUBMITTED A FALSE DECLARATION. ........................................7

IV. ABSENT CLASS MEMBERS MUST HAVE ACCESS TO UNCONFLICTED ADVICE REGARDING THEIR OPT-OUT RIGHTS, SO SPARACINO SHOULD BE AUTHORIZED TO COMMUNICATE WITH ABSENT CLASS MEMBERS UNTIL THE END OF THE OPT-OUT PERIOD. ...............................................................................9

V. THE COURT SHOULD INVESTIGATE AND REPORT TO THE ABSENT CLASS MEMBERS REGARDING CLASS COUNSEL'S IMPROPER CONDUCT. ...................11

CONCLUSION ..........................................................................................................................12

i

SPARACINO PLLC'S REPLY IN SUPPORT OF ITS MOTION FOR RELIEF PURSUANT TO
THE COURT'S INHERENT AUTHORITY
Case No. 2:15-cv-01045-RFB-BNW

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*A.R. ex rel. Root v. Dudek*,
  2013 WL 5278668 (S.D. Fla. Sept. 19, 2013) ............................................................................. 4

*Adell Plastics, Inc. v. Mt. Hawley Ins. Co.*,
  2019 WL 2524916 (D. Md. June 19, 2019) ............................................................................... 3

*Aiuto v. Publix Super Markets, Inc.*,
  2020 WL 10054684 (N.D. Ga. Aug. 28, 2020) .......................................................................... 6

*Baleja v. Northrop Grumman Space*,
  2020 WL 5078814 (C.D. Cal. July 30, 2020) .......................................................................... 10

*Chalian v. CVS Pharm., Inc.*,
  2020 WL 7347866 (C.D. Cal. Oct. 30, 2020) .......................................................................... 10

*Cohen v. Brown*,
  173 Cal. App. 4th 302 (Cal. Ct. App. 2009) .............................................................................. 5

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990) ................................................................................................................... 8

*Davine v. Golub Corp.*,
  2014 WL 5427006 (D. Mass. Oct. 24, 2014) ............................................................................. 4

*Domingo v. New England Fish Co.*,
  727 F.2d 1429 (9th Cir.), *modified*, 742 F.2d 520 (9th Cir. 1984) ............................................ 8

*Dondore v. NGK Metals Corp.*,
  152 F. Supp. 2d 662 (E.D. Pa. 2001) ......................................................................................... 5

*Espinosa v. Stevens Tanker Div., LLC*,
  2017 WL 1718443 (W.D. Tex. Apr. 27, 2017) .......................................................................... 6

*First Specialty Ins. Corp. v. Novapro Risk Sols.*, LP,
  468 F. Supp. 2d 1321 (D. Kan. 2007) ........................................................................................ 3

*Gulf Oil Co. v. Bernard*,
 452 U.S. 89 (1981) .................................................................................................2, 4

*In re Ferry*,
 2005 WL 6960191 (9th Cir. 2005) .................................................................................8

*In re McKesson HBOC, Inc. Sec. Litig.*,
 126 F. Supp. 2d 1239 (N.D. Cal. 2000) .............................................................1, 4, 5, 11

*In re Robinson*,
 36 F. App'x 329 (9th Cir. 2002) .....................................................................................8

*Jacobs v. CSAA Inter-Insurance*,
 2009 WL 1201996 (N.D. Cal. May 1, 2009) ................................................................11

*Jubinville v. Hill's Pet Nutrition, Inc.*,
 2019 WL 1584679 (D.R.I. Apr. 12, 2019) ..................................................................2, 4

*KB Home v. Ill. Union Ins. Co.*,
 2023 WL 3432139 (C.D. Cal. Mar. 28, 2023) ................................................................3

*Kirola v. City and County of San Francisco*,
 2010 WL 3505041 (N.D. Cal. Sept. 7, 2010) ................................................................10

*Kleiner v. First Nat'l Bank of Atlanta*,
 751 F.2d 1193 (11th Cir. 1985) ....................................................................................11

*Kwon v. Benedetti*,
 2011 WL 4072085 (D. Nev. Sept. 12, 2011) ..................................................................3

*Lloyd v. Covanta Plymouth Renewable Energy, LLC*
 532 F. Supp. 3d 259 (E.D. Pa. 2021) ..............................................................................5

*McCurley v. Royal Seas Cruises, Inc.*,
 2020 WL 4436361 (S.D. Cal. July 31, 2020) ................................................................10

*McKenzie Law Firm, P.A. v. Ruby Receptionists, Inc.*,
 2020 WL 2789873 (D. Or. May 29, 2020) ....................................................................10

iii
SPARACINO PLLC'S REPLY IN SUPPORT OF ITS MOTION FOR RELIEF PURSUANT TO
THE COURT'S INHERENT AUTHORITY
Case No. 2:15-cv-01045-RFB-BNW

*McWilliams v. Advanced Recovery Sys., Inc.*,
    176 F. Supp. 3d 635 (S.D. Miss. 2016) ............................................................................... 11

*Mevorah v. Wells Fargo Home Mortg., Inc.*,
    2005 WL 4813532 (N.D. Cal. Nov. 17, 2005) ....................................................................... 2

*Nat.-Immunogenics Corp. v. Newport Trial Grp.*,
    2016 WL 11520757 (C.D. Cal. June 16, 2016) ..................................................................... 8

*O'Connor v. Uber Techs., Inc.*,
    2017 WL 3782101 (N.D. Cal. Aug. 31, 2017) ....................................................................... 6

*O'Connor v. Uber Techs., Inc.*,
    2016 WL 107461 (N.D. Cal. Jan. 11, 2016) ........................................................................ 10

*Parks v. Eastwood Ins. Servs., Inc.*,
    235 F. Supp. 2d 1082 (C.D. Cal. 2002) ............................................................................... 10

*Pollar v. Judson Steel Corp.*,
    1984 WL 161273 (N.D. Cal. Feb. 3, 1984) ........................................................................... 5

*Rankin v. Bd. of Educ. Wichita Public Schools, U.S.D. 259*,
    174 F.R.D. 695 (D. Kan. 1997) ........................................................................................... 10

*Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers*,
    124 F.3d 999 (9th Cir. 1997) ................................................................................................. 8

*Talamantes v. PPG Indus., Inc.*,
    2014 WL 4145405 (N.D. Cal. Aug. 21, 2014) ....................................................................... 5

*Yagman v. Republic Ins.*,
    136 F.R.D. 652 (C.D. Cal. 1991) .......................................................................................... 8

**RULES**

Model Rule of Prof'l Conduct 1.3 (Am. Bar Ass'n 2020) ...............................................................4

Model Rule of Prof'l Conduct 4.1 (Am. Bar Ass'n 2020) ...............................................................2

Model Rule of Prof'l Conduct 4.2 (Am. Bar Ass'n 2020) .............................................4, 5, 10, 11

Model Rule of Prof'l Conduct 4.3 (Am. Bar Ass'n 2020) ...............................................................4

Model Rule of Prof'l Conduct 7.1 (Am. Bar Ass'n 2020) ...............................................................2

Federal Rule of Civil Procedure 23 ...............................................................................................11

**OTHER AUTHORITIES**

Communications Among Parties, Counsel, and Class Members, MANUAL FOR COMPLEX LITIGATION (4th ed. 2004).........................................................................................................9, 10

D.C. Ethics Op. 215 (1990), https://tinyurl.com/2p98afz...............................................................4

WILLIAM B. RUBENSTEIN, HERBERT NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS (5th ed. 2015) ...............................................................................................10

v

SPARACINO PLLC'S REPLY IN SUPPORT OF ITS MOTION FOR RELIEF PURSUANT TO
THE COURT'S INHERENT AUTHORITY
Case No. 2:15-cv-01045-RFB-BNW

# INTRODUCTION

Class Counsel stunningly ignores its own conflict of interest against advising absent class members about opting out. Sparacino's communications were factually objective and nowhere near unethical based on their plain reading and established precedent, so Class Counsel's bullying threat to tarnish Sparacino's acts, trying to intimidate them to *withdraw*, is improper and coercively disrupts the litigation (indeed, it worked on Scott+Scott). Realizing they lack any basis in fact or law to justify their coercive scheme to deprive Sparacino's fifteen clients (and others who may wish to join them) of this unconflicted advice, Class Counsel submitted a false sworn declaration that violated their duty of candor to this Court—and may constitute suborning perjury. Sparacino respectfully requests this Court to exercise its inherent power to stop Class Counsel from depriving absent class members of unconflicted advice about whether to opt out, and to protect absent class members from Class Counsel's abusive attempt to gag Sparacino's Constitutionally-protected offer to advise them to ensure they are not "forced into a class against their will." *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1239, 1243 (N.D. Cal. 2000).

## I. CLASS COUNSEL'S BAD FAITH ACCUSATION THAT SPARACINO'S COMMUNICATIONS WERE UNETHICAL IS OUTRAGEOUS AND COERCIVE.

Sparacino's First Mailer provided useful, accurate information to potential clients, did not ask recipients to sign anything, did not ask for any commitment of any kind, told the recipients to disregard and ignore the letter if they have retained lawyers for this matter, described *Le v. Zuffa* as a class action lawsuit, explained what an opt-out case was (including that it meant claimants would "not participate" in the class action and instead "chart their own course"), imposed no deadline, and solicited no response other than for recipients to contact Sparacino if they wished to learn more. *See generally* ECF Nos. 810-1 (cover letter) & 810-2 (enclosed brochure). Sparacino's Second Mailer again referred to *Le v. Zuffa* as a class action, noted the Court's stated intention to certify the class, identified then-Interim Class Counsel and said they had been working on the case since before 2014, made clear that the fighters' interests "[were] currently represented by Interim Class Counsel" and stated "[y]ou do not need [to] take any action a[t] this time to benefit from any recovery in the Class Action." *See generally* ECF No. 810-4. Sparacino's pre-certification

communications are commercial speech protected by the First Amendment and were neither coercive nor misleading under controlling authority. *See Mevorah v. Wells Fargo Home Mortg., Inc.*, 2005 WL 4813532, at *3 (N.D. Cal. Nov. 17, 2005); *see also Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101–02 (1981).

Overwhelming—essentially unanimous—precedent rejects regulating (much less labeling as *unethical*) Sparacino's speech because it did not (a) demand any opt-out commitment or any other urgent action, (b) threaten or wield coercive power over the recipients, or (c) come in the form of purported official notices or other court-sponsored communications, *see generally* ECF No. 849 at 6–9 (and the authority cited therein). Class Counsel thus mischaracterizes and nitpicks information they claim was omitted. But those quibbles fall flat.

*First*, Class Counsel asserts Sparacino's First Mailer was misleading under Rules 4.1 and 7.1 because the First Mailer did not state that *Le v. Zuffa* was a class action, did not explain that the solicited individuals were putative class members, and did not state that if claimants opted out they would lose the benefit of any class recovery. That is so obviously wrong that one must infer Class Counsel's bad faith. Class Counsel's interpretation depends on pulling apart Sparacino's First Mailer, throwing out the enclosed brochure, and reading *only the cover letter*. That is not a reasonable way to interpret the First Mailer, and courts, unsurprisingly, do not do it that way. *See Jubinville v. Hill's Pet Nutrition, Inc.*, 2019 WL 1584679, at *9 (D.R.I. Apr. 12, 2019). There is no basis—and Class Counsel makes no effort to offer one—for the Court to look solely at the cover letter and ignore the brochure. To be crystal clear, Sparacino's First Mailer (when looking at its entirety) included much of the information Class Counsel claims was omitted.

*Second*, Class Counsel asserts Sparacino's First Mailer was misleading because it did not state that the fighters' interests were already represented by Class Counsel, that the Court had verbally indicated an intention to certify the class, and that the class members could participate in any class recovery without retaining Sparacino. But Class Counsel has not—and cannot—explain what was purportedly misleading about omitting this information. And in any event, even though Sparacino disagreed with these concerns, Sparacino sent a Second Mailer to promptly resolve them. It is telling that Class Counsel could not find an established ethics expert to support their

assertions, instead relying upon a professor who specializes in insurance law—whose testimony federal judges have rejected time and again.[1] But even Professor Stempel admits the Second Mailer *clarified* these purported omissions Class Counsel pointed to from the First Mailer. *See* ECF No. 860-3 ¶ 37 (Stempel pivoted to baldly speculating absent class members may not have read the Second Mailer).

*Third*, Class Counsel asserts Sparacino's mailers gave a false impression claimants needed to take further action or needed to retain Sparacino to pursue their antitrust claims. That is wrong. Class Counsel—even after being *challenged to do so*, *see* ECF No. 849 at 9—could not cite any language creating such an impression. Sparacino's First Mailer urged no action other than to contact Sparacino, its Second Mailer stated the fighters did not need to take any action to benefit from any class recovery, and both mailers were prominently labeled as "Attorney Advertising."

Class Counsel bickers the Second Mailer should not have referenced Scott+Scott as co-counsel, but the Second Mailer was sent *before* Scott+Scott withdrew. Class Counsel wrongly

---

[1] Stempel is not qualified to opine on the issues before this Court. His expertise is in "***insurance-related issues***," *see Adell Plastics, Inc. v. Mt. Hawley Ins. Co.*, 2019 WL 2524916, at *3 (D. Md. June 19, 2019) (citing Stempel's expert report) (emphasis added), *not professional ethics*. Sparacino is not aware (and Class Counsel offers no example) of any federal court either (a) recognizing Stempel as an expert on ethics or professional responsibility or (b) relying upon his testimony or opinions regarding the same. And when Stempel did seek to opine about Nevada's Rules of Professional Conduct, a court in this District *excluded* Stempel's opinion that certain attorneys' extortionate acts were not technically extortionate. *Kwon v. Benedetti*, 2011 WL 4072085, at *19–20 (D. Nev. Sept. 12, 2011).

Moreover, *nearly all courts* to have considered Professor Stempel's "expert" testimony, even on insurance-related topics for which he may have expertise, rejected it. *See, e.g., KB Home v. Ill. Union Ins. Co.*, 2023 WL 3432139, at *4 (C.D. Cal. Mar. 28, 2023) (excluding testimony and noting "[o]ther district courts have prevented Stempel from testifying . . . on similar grounds, finding that Stempel's expositions . . . are improper . . . .") (gathering cases); *First Specialty Ins. Corp. v. Novapro Risk Sols.*, LP, 468 F. Supp. 2d 1321, 1336–37 (D. Kan. 2007) (rejecting Stempel's testimony because "[i]n addition to being cumulative and conclusory, the basic problem with Stempel's testimony is that it was based more on theory than anything even remotely approaching practical, hands-on experience").

Class Counsel hired Stempel to submit opinions outside his expertise, and he takes the extreme positions that soliciting absent class members should be foreclosed at the *initiation* of the class action and that permitting solicitation of opt-outs in this case at this time "serves no valid purpose." ECF No. 860-3 at ¶¶ 29–31. He also betrays his bias, denigrating attorneys seeking to give unconflicted opt-out advice as "lurking about the case." *Id.* ¶ 30.

asserts the Second Mailer could not possibly cure what was purportedly misleading about the First Mailer, but again is unable to cite any authority supporting that proposition. That is because courts have found follow-up communications, if needed, sufficiently curative of previously misleading or omitted information. *See Jubinville*, 2019 WL 1584679, at *9 (finding subsequent communications were sufficient to "remedy [any] potential harm caused by the initial communication in failing to mention the pending class actions").[2]

In sum, the attorney communications in the cases cited by Class Counsel bear no resemblance to Sparacino's pre-certification outreach to absent class members to advise them of their opt-out rights. For example, Class Counsel asserts without any explanation that *In re McKesson* supports Class Counsel's position. *See* ECF No. 859 at 16. But Sparacino's communications were nothing like the problematic ones from that case, because Sparacino conveyed no "gratuitous air of urgency," did not request action by some "arbitrary deadline," and did not send official-looking forms that carried the imprimatur of court authorization, 126 F. Supp. 2d at 1243, 1245. *In re McKesson* demonstrates the *reasons* Class Counsel's criticisms are a far stretch from presenting a "clear record" that the communications were misleading or coercive, much less that they were unethical, and why they are therefore protected speech under *Gulf Oil*.

Invoking Rule 4.2, Class Counsel claims it was unethical for Sparacino to contact putative class members[3] before certification. But Rule 4.2 applies only "during the course of [the lawyer's] representation of a client," *see, e.g.*, D.C. Ethics Op. 215 (1990), https://tinyurl.com/2p98afz, so it simply does not apply here, where Sparacino contacted *prospective* clients about *new* engagements. *See* Professor Green Second Opinion Letter ("Second Green Letter"), attached

---

[2] *See also Davine v. Golub Corp.*, 2014 WL 5427006, at *5 (D. Mass. Oct. 24, 2014) (finding in relevant part that "this second communication was sufficient . . . to remedy the potential harm caused by the initial communication"); *A.R. ex rel. Root v. Dudek*, 2013 WL 5278668, at *11 (S.D. Fla. Sept. 19, 2013) (examining multiple communications to determine if they were misleading, and examining all of them together "when taken as a whole and in context").

[3] Sparacino acknowledges that it inadvertently and regrettably reached out to four class members who were individually represented, but that is a far cry from knowingly engaging in unethical behavior and does not deserve to be branded as such.

4

SPARACINO PLLC'S REPLY IN SUPPORT OF ITS MOTION FOR RELIEF PURSUANT TO THE COURT'S INHERENT AUTHORITY
Case No. 2:15-cv-01045-RFB-BNW

hereto as Exhibit 1, at 1–2.[4] Even Class Counsel admits the majority rule, controlling in this Circuit,[5] is that when applicable, Rule 4.2 does not bar pre-certification communications from represented parties to absent class members. *See McKesson*, 126 F. Supp. 2d at 1245.

Professor Green concluded that "Sparacino's communications with absent class members were consistent with the letter and purpose of the professional conduct rules." ECF No. 849, Exh. 2, at 1; *see also* Second Green Letter, at 1 (confirming his opinions). Because Sparacino's pre-certification communications were not misleading, were nowhere near unethical, and were thus Constitutionally protected,[6] Class Counsel's baseless threats to pursue a finding by this Court or any administrative body that Sparacino acted unethically is coercive and must be rejected.[7] It was

---

[4] Professor Stempel also asserts in his letter that Sparacino's communications violated Rules 1.4 and 4.3. But those rules similarly govern communications made on behalf of a client or with an already-engaged client. They have no bearing where, as here, Sparacino was not reaching out on behalf of an existing client but instead offering to enter an engagement with absent class members. *See generally* Rule 1.4; Rule 4.3; *see also* Green Second Letter at 2. In any event, Class Counsel chose not to advance the theories, so they are waived.

[5] For the contrary view, Class Counsel cites *Dondore v. NGK Metals Corp.*, 152 F. Supp. 2d 662 (E.D. Pa. 2001). But *Dondore* is a resoundingly minority view and "[n]o case in the Ninth Circuit has adopted *Dondore*'s reasoning." *See Talamantes v. PPG Indus., Inc.*, 2014 WL 4145405, at *6 (N.D. Cal. Aug. 21, 2014); *see also Lloyd v. Covanta Plymouth Renewable Energy, LLC*, 532 F. Supp. 3d 259, 260–61 & n.1 (E.D. Pa. 2021) (explaining that *Dondore* does not apply in federal class actions, at all). Class Counsel also cites *Pollar v. Judson Steel Corp.*, 1984 WL 161273 (N.D. Cal. Feb. 3, 1984), but that case dealt with an extremely misleading notice published by *defendants*, did not discuss Rule 4.2, and had nothing to do with solicitations to potential opt outs.

[6] It is true, as Class Counsel points out, that Sparacino Managing Partner Ryan R. Sparacino has repeatedly and clearly stated on LinkedIn via protected First Amendment speech that Sparacino will stand up to, fight, refute, and will never give in to coercion or extortion of Sparacino or its clients, *see* ECF No. 859 at 5 n.6 (referencing LinkedIn posts); *see also*, *generally* https://tinyurl.com/mjcz2rr3 (Mr. Sparacino's LinkedIn profile, in its entirety). That is what Sparacino is doing here, with the instant motion. Sparacino and its lawyers stand behind those publicly-stated words and respectfully submit that the Court should not countenance Class Counsel's attempt to muzzle its Constitutionally-protected speech.

[7] Although Class Counsel's threats to seek relief from this Court or to pursue ethics complaints against Scott+Scott and Sparacino, which were made to achieve an outcome in civil litigation, could in fact be deemed extortionate, *see, e.g., Cohen v. Brown*, 173 Cal. App. 4th 302, 317–18, 93 Cal. Rptr. 3d 24, 36–37 (Cal. Ct. App. 2009), Sparacino does not seek that the Court so hold—instead, Sparacino respectfully requests merely that the Court stop Class Counsel from pursuing any more bad-faith behavior.

bad faith to pursue the strategy before, and that such bullying successfully coerced Scott+Scott to withdraw does not justify it. Class Counsel's bullying was knowing, was undertaken with the improper purpose of denying absent class members unconflicted advice by threatening their counsel, and disrupted the litigation. This Court should put a stop to Class Counsel's scheme. *See, e.g.*, *O'Connor v. Uber Techs., Inc.*, 2017 WL 3782101, at *9 (N.D. Cal. Aug. 31, 2017); *Aiuto v. Publix Super Markets, Inc.*, 2020 WL 10054684, at *2–3 (N.D. Ga. Aug. 28, 2020); *Espinosa v. Stevens Tanker Div., LLC*, 2017 WL 1718443, at *10 (W.D. Tex. Apr. 27, 2017).

## II. CLASS COUNSEL IMPROPERLY INTIMIDATED A LAW FIRM AND THEREBY HARMED SPARACINO'S CLIENTS.

Class Counsel's brazen—and likely extortionate—conduct already intimidated Scott+Scott from representing Sparacino's clients. Attempting to capitalize on its coercion, Class Counsel now has the temerity to suggest that Sparacino may now be unable to adequately represent its clients.[8] Class Counsel also now questions the success fee that Sparacino may charge. Those issues are for Sparacino, its future co-counsel, and its clients to resolve, and are irrelevant to the remedy Sparacino seeks. And Class Counsel's effort to reap additional ill-gotten gains from its bullying only confirms the basis for sanctions against Class Counsel.

Indeed, the need for the Court to address Class Counsel's behavior exists *even if* the Court were to conclude—even though it should not—that Class Counsel's claims were correct. As the cases cited in Sparacino's opening brief (at 14–15) make plain, it is axiomatic that Class Counsel's unethical, and likely extortionate, threats gravely harmed this proceeding, and likely constituted

---

[8] Sparacino lawyers are highly skilled and qualified. Every partner at Sparacino graduated from a top tier law school—and many have practiced at some of the most decorated and respected law firms in the country, including Winston & Strawn, Kirkland & Ellis, O'Melveny & Myers, Sullivan & Cromwell, and Latham & Watkins. Sparacino routinely partners with some of the most feared litigation boutiques, as well as full-service law firms, including Kellogg Hansen, Susman Godfrey, and Willkie Farr & Gallagher, and faces some of the most formidable opposing counsels in extremely complex cases. Sparacino attorneys have litigated in federal and state courts all over the country, have first-chaired trials, have successfully briefed and argued appeals in nearly every Federal Court of Appeals and in the United States Supreme Court (including one just this last term), and have received professional accolades. Professor Stempel's unsubstantiated assertion that "Sparacino lacks the resources and expertise necessary" should be recognized for what it is: a baseless smear.

prosecutable crimes under federal and state law, regardless of whether Class Counsel was correct in the underlying issue. Simply put, regardless of how the Court resolves Class Counsel's allegations, the Court must sanction Class Counsel's destructive and improper tactics.

### III.  CLASS COUNSEL SUBMITTED A FALSE DECLARATION.

In its efforts to smear Sparacino, Class Counsel wrongly asserts Sparacino broke its pledge to the Court regarding ceasing its communications with absent putative class members who had not initiated contact with Sparacino. Class Counsel's basis for this claim is in a declaration made by former fighter Antonio McKee—that declaration contains critical falsehoods.

By way of background, on August 23, 2023, Sparacino asked Class Counsel to provide *any* basis for their assertions in their recent pre-conference statement. Rather than respond and explain their allegations (*see* ECF No. 842) were based on Mr. McKee telling them Sparacino had sent him unsolicited communications, Class Counsel declined to do so. *See* ECF No. 849, Exh. 1 ¶¶ 4–5. Had Class Counsel appropriately responded to Sparacino's request to explain any basis in fact for what they wrote, or done *any investigation whatsoever*, Class Counsel would have swiftly learned that Mr. McKee was not telling the truth.

Mr. McKee initiated contact; he called Sparacino on March 18, 2021, and requested that a lawyer call him back. *See* Kay-Oliphant Third Declaration ("Kay-Oliphant Third Decl."), submitted herewith as Exhibit 2, ¶ 2. Later that day, Mr. Kay-Oliphant called Mr. McKee to discuss the potential engagement, and Mr. McKee requested an engagement letter be prepared and sent to the email address he provided. *Id.* ¶ 3. Sparacino sent Mr. McKee a follow-up email and then the engagement letter per his request. *Id.* ¶ 4.

Thereafter, on April 2, 2021, when Scott+Scott withdrew, Sparacino sent modified engagement letters to all the fighters who had requested engagement letters but had not yet signed them, including Mr. McKee. *Id.* ¶ 5; *see also*, *e.g.*, ECF No. 860-5, Exh. A (April 2, 2021 email voiding originally-sent engagement letter); *id.* Exhs. B–C (April 2, 2021 email sending replacement engagement letter). Sparacino's pledge not to contact those it had sent mailers to, unless they initiated contact with Sparacino, was filed with the Court on April 13, 2021. *See* ECF No. 809 at 8; *see also* ECF No. 845, ¶ 2. The follow-up emails that Mr. McKee received on May

7

SPARACINO PLLC'S REPLY IN SUPPORT OF ITS MOTION FOR RELIEF PURSUANT TO
THE COURT'S INHERENT AUTHORITY
Case No. 2:15-cv-01045-RFB-BNW

6, May 10, and June 13, 2021, ECF No. 860-5, Exhs. D–F, were reminder emails automatically generated and transmitted by DocuSign regarding the unsigned modified engagement letter.

      Mr. McKee's statements in his declaration that he "did not invite" any of Sparacino's solicitations and that they were not sent "follow[ing] personal engagements or conversations with attorneys for Sparacino" are false. Class Counsel's representations related to those statements, *see* ECF No. 859 at 6, 11–12, are false. Class Counsel was wrong to tell the Court Mr. McKee "had not reached out to Sparacino," *id.* at 12.

      At bottom, Sparacino kept its promise not to communicate with former fighters unless they "initiate contact." Mr. McKee initiated contact and requested an engagement letter. Class Counsel knew this, or at least was willfully blind to the truth. Indeed, had Class Counsel simply responded to Sparacino's challenge that they had no good-faith basis for their pre-conference statement, Class Counsel would have easily learned Mr. McKee's declaration was false. When Class Counsel failed to ensure the declaration they submitted was true, and made their accusations of Sparacino, they disregarded their duty of candor to this Court. This further justifies[9] Sparacino's instant request that the Court impose sanctions.[10]

---

[9] *See, e.g.*, *Yagman v. Republic Ins.*, 136 F.R.D. 652, 655–56 (C.D. Cal. 1991) (sanctions under inherent power proper where party engaged in "abusive litigation practices" that included false factual representations to court), *aff'd*, 987 F.2d 622 (9th Cir. 1993); *cf. Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (filing attorney has a duty to conduct a reasonable inquiry to ensure any papers filed with the court are well grounded in fact); *Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1017 n.24 (9th Cir. 1997) ("counsel was duty bound under Rule 11 to make further inquiries to determine whether the . . . declarations were 'well grounded in fact'") (quoting and citing *Cooter & Gell*, 496 U.S. at 393).

[10] *See, e.g.*, *In re Ferry*, 2005 WL 6960191, at *7 (9th Cir. 2005) (sanctioning under inherent power where counsel "engaged in bad faith conduct by filing misleading and false declarations"); *In re Robinson*, 36 F. App'x 329, 330 (9th Cir. 2002) ("sanctioning [parties] for their conduct under the court's inherent powers" was proper where parties, *inter alia*, "knowingly submitted perjured declarations," engaged in "frivolous pleadings in their attempts to convince the [] court to" rule in that party's favor, and showed a "pattern of bad faith"); *Nat.-Immunogenics Corp. v. Newport Trial Grp.*, 2016 WL 11520757, at *2 (C.D. Cal. June 16, 2016) (sanctioning under inherent power where party "engaged in . . . misconduct by recklessly filing a false affidavit in connection with … [a] motion").

IV. **ABSENT CLASS MEMBERS MUST HAVE ACCESS TO UNCONFLICTED ADVICE REGARDING THEIR OPT-OUT RIGHTS, SO SPARACINO SHOULD BE AUTHORIZED TO COMMUNICATE WITH ABSENT CLASS MEMBERS UNTIL THE END OF THE OPT-OUT PERIOD.**

It is ineluctable that Class Counsel "may have interests that are in conflict with those of the class members," *see Domingo v. New England Fish Co.*, 727 F.2d 1429, 1441 (9th Cir. 1984), *modified*, 742 F.2d 520 (9th Cir. 1984), so Class Counsel cannot provide unconflicted advice to absent class members regarding whether they should opt out. That alone is reason enough to decline to establish (out of whole cloth) a novel pre-certification "no-solicitation rule." For the same reason, it would be improper to gag Sparacino's communication with absent class members before the end of the opt-out period.

Class Counsel ignores their conflict (and hopes the Court will do the same), but they cannot escape that they have a duty of loyalty to the class *as a whole*. Absent individual class members "cannot expect to receive disinterested legal advice from that class counsel with respect to questions affecting their individual interests such as whether to object to a proposed settlement or whether to settle individually with the defendant." *See generally* ECF No. 849, Exh. 2, at 3.

Perhaps individual fighters have a unique claim, have claims not being pursued as part of the class, or have specific damage-calculation considerations. Perhaps they disagree with Class Counsel's legal strategy, or believe that Class Counsel is unqualified, ineffective, or pursuing an insufficient settlement. Or perhaps they just think they will fare better, receive compensation faster, receive more individualized attention and advice, and be better informed of the process if they proceed individually as opposed to as part of the class. There are many reasons an absent class member may opt out, or at least consider doing so.

Meanwhile, Class Counsel wishes to maximize the outcome for the class as a whole, which could be undermined by opt-outs. For example, some class action settlements by their terms become voidable in the event of significant opt-outs. That is why "[i]t would be contrary to the interests of the class to encourage individual class members to opt out to pursue individual claims." *Id.* For this reason, "individual class members who might consider initiating individual actions would presumptively be better served by receiving advice on this subject from their

9
SPARACINO PLLC'S REPLY IN SUPPORT OF ITS MOTION FOR RELIEF PURSUANT TO
THE COURT'S INHERENT AUTHORITY
Case No. 2:15-cv-01045-RFB-BNW

lawyers who represent only absent class members individually, rather than by receiving the conflicted advice of class counsel or no advice at all." *Id.* at 4. "Class counsel cannot give disinterested advice" on these issues "because class counsel represents a different client – namely, the class – whose interests would be undermined by advising individual class members to opt out." Second Green Letter at 5.

Class Counsel's focus on *when* in a class action case absent class members should be treated as "represented" by Class Counsel elides the dispositive issue: *whether* absent class members should have access to non-conflicted advice about their opt-out rights. Most of the cases about restricting communication with absent class members are focused—like the actual text of Rule 4.2—on contact made by *represented* parties and their lawyers.[11] They simply do not apply

---

[11] Most of the authority Class Counsel cites does not justify restricting communications by an attorney soliciting clients—rather than by an attorney who *represents a party in the class action*. For example, Class Counsel cites Communications Among Parties, Counsel, and Class Members, MANUAL FOR COMPLEX LITIGATION § 21.33 (4th ed. 2004), regarding the "no-contact" rule after certification, but omits *the next line* clarifying the rule applies regarding "*[d]efendants' attorneys, and defendants acting in collaboration with their attorneys* . . . ." The same treatise acknowledges at § 21.321 that "[i]f the case involves a complex settlement or significant individual claims, a class member might need more time to consult with attorneys or financial advisors before making an informed opt-out decision." Similarly, Class Counsel cites WILLIAM B. RUBENSTEIN, HERBERT NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS §19.6 (5th ed. 2015), but that section is related to "ethics rules prohibit[ing] *opposing counsel*" from contacting absent class members, not counsel soliciting not on behalf of any client but instead seeking engagement.

Likewise, cases Class Counsel cites are distinguishable because they involve lawyers for *represented parties*. See *McCurley v. Royal Seas Cruises, Inc.*, 2020 WL 4436361, at *3 (S.D. Cal. July 31, 2020) (contact between defense counsel and unnamed class members); *Baleja v. Northrop Grumman Space*, 2020 WL 5078814, at *1 (C.D. Cal. July 30, 2020) (defendants contacting class members); *McKenzie Law Firm, P.A. v. Ruby Receptionists, Inc.*, 2020 WL 2789873, at *4 (D. Or. May 29, 2020) (addressing threats by defendant and defense counsel to unilaterally contact putative class members); *Kirola v. City and County of San Francisco*, 2010 WL 3505041, at *1 (N.D. Cal. Sept. 7, 2010) (denying defendant's motion to communicate with class members); *Parks v. Eastwood Ins. Servs., Inc.*, 235 F. Supp. 2d 1082, 1083 (C.D. Cal. 2002) (communications from defense counsel with putative class members); *O'Connor v. Uber Techs., Inc.*, 2016 WL 107461, at *4 (N.D. Cal. Jan. 11, 2016) (discussing Rule 4.2 in the context of *defense counsel* communicating with absent class members); *Rankin v. Bd. of Educ. Wichita Public Schools, U.S.D. 259*, 174 F.R.D. 695, 697 (D. Kan. 1997) (defendants seeking to "directly lobby the prospective members of the class"). *See also generally* Green Second Letter at 2.

Other cases Class Counsel cite are similarly inapt. *Chalian v. CVS Pharmacy, Inc.*, 2020 WL 7347866, at *4–5 (C.D. Cal. Oct. 30, 2020), involved a joint motion for a temporary

in the context of solicitation for new engagements to advise about opt-out rights. *See* Second Green Letter at 1–2. Class Counsel makes much of *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985), but that case, like most of the others that have considered Rule 4.2, pertained to solicitations for opt-outs *by the defendant*. That case, like all the others, does not justify regulating Sparacino's communications with absent class members.

Class Counsel's novel view is that due to some indistinct passage of time, and when their efforts have been substantial, they should have control over whom the absent class members may communicate with. But that would leave absent class members with "no access to independent legal advice at all," other than the notice provided by the Court. Second Green Letter at 2–3, 4. That cannot be. The purposes of Rule 23, and the First Amendment, militate against the new position Class Counsel wishes the Court would establish. *Id.* at 3–4, 6. At end,

> there is no compelling reason to restrict lawyers from offering individual legal representation to absent class members or from communicating their availability to do so. It is a basic principle of legal ethics that clients "do not belong" to the lawyer and that their lawyer cannot forbid them from discharging the lawyer and selecting another one.

*Id.* at 4 (citation omitted). That is why even if Class Counsel is right that for many purposes the absent class members are considered represented parties after certification, that would not justify gagging solicitation by lawyers for neither the class nor the defendant seeking to provide advice regarding opt-out rights. Class Counsel's position, "that putative class members are forever walled off from any effort at solicitation," is "unsupportable." *McKesson*, 126 F. Supp. 2d at 1245.

V. **THE COURT SHOULD INVESTIGATE AND REPORT TO THE ABSENT CLASS MEMBERS REGARDING CLASS COUNSEL'S IMPROPER CONDUCT.**

Class Counsel embarked upon a coercive scheme to deny absent class members the advice they need to decide whether to participate in the class, or not. Class Counsel already bullied

---

restraining order to restrict urgent text messages sent with misleading, inaccurate, and disparaging information. *Jacobs v. CSAA Inter-Insurance*, 2009 WL 1201996 (N.D. Cal. May 1, 2009), related to an injunction against lawyers representing class members *in another action* from communicating with the class during final settlement approval. *McWilliams v. Advanced Recovery Sys., Inc.*, 176 F. Supp. 3d 635 (S.D. Miss. 2016), involved an injunction sought by plaintiffs and the defendant against misleading post-certification outreach, including directly to the named class representative, that conveyed the only way to recover damages was to retain the soliciting lawyer.

Scott+Scott out and wishes the same for Sparacino. Class Counsel indicated they intend to file yet another motion, to do so.[12] Class Counsel's improper, reckless, and disruptive tactics—seeking to pressure Sparacino to abandon its own ethical obligations and withdraw from representing its clients—must not be countenanced. Sparacino seeks to provide its clients (and other absent class members who may wish to engage Sparacino) unconflicted advice about their opt-out rights. Class Counsel, on the other hand, seeks to prevent absent class members and Sparacino's engaged clients from this unconflicted advice about their opt-out rights. As part of their scheme, Class Counsel submitted a false declaration to this Court, and perhaps suborned perjury.

The Court should investigate the full extent of Class Counsel's bad acts and report to the absent class members, so they may understand the unconflicted advice they are entitled to and which Class Counsel sought to deprive them of. Such a proceeding would ensure absent class members understand their opt-out rights and ability to engage the counsel of their choosing.

## CONCLUSION

For the foregoing reasons, Sparacino respectfully requests that this Court grant Sparacino's motion, exercise its inherent power to regulate the conduct of attorneys before it, and preserve the integrity of this proceeding. The Court should: (1) stop Class Counsel's attempts to improperly—and, probably, extortionately—deter Sparacino from satisfying its own ethical obligations to its clients and to unjustifiably tarnish Sparacino's name; (2) find Sparacino's communications were not unethical; (3) find that Class Counsel's attempts to chill Sparacino's (and their successful effort to destroy Scott+Scott's) client engagements were improper and unethical; (4) authorize Sparacino (and any other non-conflicted counsel) to communicate with absent class members about their opt-out rights until the end of the opt-out period; and (5) establish an *in camera* and *ex parte* process for the Court to investigate Class Counsel's coercive acts and publish to the class the results of that inquiry.[13]

---

[12] These issues were previously fully briefed in relation to Class Counsel's prior Emergency Motion, ECF Nos. 796, 808, 813, which the Court denied, ECF No. 831. Additional briefing would be duplicative and waste judicial resources.

[13] Class Counsel does not dispute that the class would benefit from learning about this episode, and such explanation would best come from the Court.

DATED: October 4, 2023  Respectfully Submitted,

By: /s/ Eli J. Kay-Oliphant

Eli J. Kay-Oliphant, Esq.
 (Admitted *Pro Hac Vice Motion*)
New York Bar No. 4421541
District of Columbia Bar No. 503235
Illinois Bar No. 6326136
Ryan R. Sparacino, Esq.
 (*Pro Hac Vice Motion to be Filed*)
District of Columbia Bar No. 493700
SPARACINO PLLC
1920 L Street, NW
Suite 835
Washington, DC 20036
Telephone: (202) 629-3530
eli.kay-oliphant@sparacinopllc.com

Brian D. Shapiro, Esq.
Nevada Bar No. 5772
LAW OFFICE OF BRIAN D. SHAPIRO, LLC
510 S. 8th Street
Las Vegas, NV 89101
Telephone: (702) 386-8600
brian@brianshapirolaw.com

*Attorneys for Sparacino PLLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of October 2023 a true and correct copy of **SPARACINO PLLC'S REPLY IN SUPPORT OF ITS MOTION FOR RELIEF PURSUANT TO THE COURT'S INHERENT AUTHORITY** was served via the District Court of Nevada's ECF system to all counsel of record who have enrolled in this ECF system.

/s/ Brian D. Shapiro
_____
Brian D. Shapiro, Esq.

14

SPARACINO PLLC'S REPLY IN SUPPORT OF ITS MOTION FOR RELIEF PURSUANT TO
THE COURT'S INHERENT AUTHORITY
Case No. 2:15-cv-01045-RFB-BNW