# EXHIBIT 1

**Bruce A. Green**
**150 W. 62ⁿᵈ Street**
**New York, NY 10025**
**tel: 212-636-6851**
bgreen@law.fordham.edu

October 3, 2023

Eli Kay-Oliphant, Esq.
Sparacino PLLC
1920 L Street, NW
Suite 535
Washington, DC 20036

Re:   Cung Le et al. v. Zuffa, LLC, No.: 2:15-cv-01045-RFB-BNW (D. Nev.)

Dear Mr. Kay-Oliphant:

By letter dated September 8, 2023 ("Green letter"), I previously explained why, in my opinion, Rule 4.2 of both the Nevada Rules of Professional Conduct ("Nevada Rules") and the District of Columbia Rules of Professional Conduct ("D.C. Rules") permitted Sparacino PLLC ("Sparacino" or "the law firm") to offer to advise absent class whether to opt out of a class action. Thereafter, class counsel submitted the Declaration of Professor Jeffrey W. Stempel ("Stempel Decl."), dated September 26, 2023, asserting, among other things, that Sparacino's offer to assist absent class members violated Rule 4.2 of the Nevada Rules. *Id.* at 7-11, 15-16. You have asked me to address Professor Stempel's opinions relating to Rule 4.2. (You have not asked me to address Professor Stempel's opinions other than those discussed in this letter.) For the reasons discussed below, I believe that Professor Stempel's analysis is wrong in critical respects. My opinion remains that Sparacino's communications with absent class members were consistent with the letter and purpose of the professional conduct rules.

## **Relevant Facts**

In 2021, after plaintiffs' counsel filed a federal class action alleging antitrust violations by Zuffa, LLC, Sparacino wrote to more than 200 putative class members offering to assist them in deciding whether to opt out of the class action and to bring individual antitrust claims and possibly other claims. Fifteen former fighters who are unnamed class members retained Sparacino and have remained Sparacino's clients for the past two years.

## **Opinions**

Rule 4.2 of the Nevada Rules provides that: "*In representing a client*, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." (Emphasis added). Professor Stempel

erroneously attributes to me the view that "Rule 4.2 should not apply to class actions at all." Stempel Decl. at para. 54.  That is not my view.  Of course, Rule 4.2 applies to class actions.  For example, it forbids class counsel from discussing the case directly with the represented defendant without the consent of the defendant's counsel.  Likewise, the rule forbids the defendant's counsel from communicating about the matter with named class representatives without class counsel's consent.  The question here is whether the rule forbids lawyers who represent neither the defendant nor the class from offering or providing individual legal assistance to absent class members.

Professor Stempel focuses on whether absent class members are "represented" by class counsel for purposes of Rule 4.2 and urges the Court to reject the majority judicial view, which is that absent class members are *not* "represented" prior to class certification.  But leaving aside this question, Rule 4.2 allows Sparacino to engage in legitimate solicitation activity, both before and after class certification, for another, independent reason.  As I explained previously: "These rules do not, by their terms, forbid a lawyer who is not acting on behalf of a party in the matter from offering to provide advice, or a second opinion, to a person who *is* represented in the matter."  Green Letter at 4 (citing NY State Bar Ass'n Comm. on Prof'l Ethics, Formal Op. 1010 (2014)).  By its terms, the Nevada rule applies only "[i]n representing a client," and other states' versions of the rule have the same or similar limiting language.

Professor Stempel dismisses the idea that Rule 4.2 means what it says as "strained textual literalism."  Stempel Decl. at 15.  He disregards similar limitations on the reach of two other rules: Rule 1.4 governs communications with a "client", but Professor Stempel would extend it to solicitation letters to nonclients; Rule 4.3 applies to lawyers "[i]n dealing on behalf of a client," but Professor Stempel would apply it when lawyers act on their own behalf in soliciting nonclients.  See Stempel Decl. at para. 38 & 39.  All these phrases were included in the professional conduct rules to limit their reach.  In Rule 4.2, the rule applies only when the lawyer is acting on behalf of another current client – typically a party with adverse interests.

The limitation is consistent with the case law and the purpose of Rule 4.2.  The judicial decisions applying the rule to absent class members focus on whether the defendant's lawyer may communicate directly with class members.  The opinions do not forbid a lawyer who represents neither the defendant nor the class from establishing an individual lawyer-client relationship with an absent class member or from offering to do so.   Were it otherwise, a lawyer who was representing neither the class nor the defendant would have to turn away a class member who sought individual legal advice about whether to opt out of the class action and bring an individual action.  The result would be that individual class members would have no access to independent legal advice at all.  Prof. Stempel does not go quite this far but asserts that class members may "seek additional legal counsel" only through the "opportunity" afforded by "the Court-supervised class action and opt-out process."  Stempel Decl. at para. 30.  This is a novel and unjustified view.  Far from protecting unnamed class members by promoting their access to legal representation, this proposed expansion of Rule 4.2 would impede these individuals' ability to obtain legal assistance, thereby subordinating their interests to those of the class (or putative class) and class counsel.

Professor Stempel does not cite a single judicial decision or other writing supporting his premise that Rule 4.2 bars lawyers from offering or providing individual legal services to class members except subject to judicial supervision via the class action process and not until court-authorized notice is provided to class members. The absence of authority for this proposition is unsurprising. Besides being unsupported by the language of the rule and by the case law, this interpretation is inconsistent with the principles underlying Rule 4.2 and other professional conduct rules. Among the most basic and fundamental principles underlying the professional conduct rules and judicial decisions interpreting them is that people with legal needs should have access to lawyers and that their choice of counsel should be respected, not interfered with. Rule 4.2 is meant to protect the lawyer-client relationship, not to foreclose a person in need of legal services from establishing a lawyer-client relationship with their chosen counsel. No interest underlying Rule 4.2 would be served by restricting class members' access to counsel of choice or by restricting their access to information about the availability of individual legal services.

Broader legal principles reinforce this conclusion, including those identified in First Amendment decisions upholding lawyers' right to advertise their legal services. *See, e.g., Zauderer v. Office of Disciplinary Counsel of Supreme Court*, 471 U.S. 626, 636 (1985) ("That our citizens have access to their civil courts . . . is an attribute of our system of justice in which we ought to take pride. The State is not entitled to interfere with that access by denying its citizens accurate information about their legal rights."). Lawyers' right to advertise their availability, and would-be clients' interest in learning about lawyers' availability, weigh against applying Rule 4.2 to lawyers' solicitations of absent class members.

Courts have substantial leeway to interpret professional conduct rules such as Rule 4.2 to make sense of them in the unique context of class action litigation and to further the policies underlying Fed. R. Civ. P. Rule 23. If courts did not have substantial latitude to decide whether and how to apply professional conduct rules in the class action context, Rule 4.2 would have no application at all to absent class members. Absent class members have not entered into a lawyer-client relationship with class counsel by agreement, which is the ordinary way in which a lawyer-client relationship is established, and therefore they are not "represented" in any ordinary sense. Further, absent class members are not generally "represented" by class counsel for purposes of the professional conduct rules. For example, for conflict-of-interest purposes, "unnamed members of the class are ordinarily not considered to be clients of [class counsel]," ABA Model Rules of Professional Conduct, Rule 1.7, cmt. [25], and therefore, class counsel may concurrently represent another client who is directly adverse to an absent class member. Likewise, an absent class member is not class counsel's client for purposes of Rule 1.4, which establishes a duty to communicate regularly with a client: the duty to communicate with an absent class member is governed by Rule 23. An absent class member also is not a client for purposes of Rule 1.2(a), which requires a lawyer to take direction from the client regarding whether to settle a litigation.

Consequently, if Rule 4.2 were applied without regard to the interests underlying Rule 23, absent class members would not be protected against incursions by the defendant's lawyers. Courts have invoked Rule 4.2 to forbid defense counsel from communicating directly with class members (e.g., to extract information from them) once the class action is certified because this application of the rule protects class members from opposing counsel's overreaching, which is a

principal objective of Rule 4.2, and because this application is consistent with the purposes of Rule 23. The same cannot be said of an interpretation that would interfere with class members' ability to obtain individual legal advice from their own lawyers.

The idea that professional conduct rules do not apply the same way in class actions as in individual representations, and that Rule 23 is often paramount, is far from novel. Decades ago, courts in class actions declined to apply professional conduct rules that restricted lawyers from advancing legal fees and expenses in litigation. *See Suffolk of County v. Long Island Lighting Co.*, 710 F. Supp. 1407, 1414 (E.D.N.Y. 1989) ("Rule 23 requires, as a practical matter, that attorneys advance costs on a scale not reimbursable by any normal client. A federal court cannot allow outmoded and unrealistic concepts of ethics to inhibit it unduly in providing an effective forum to those persons of limited means who seek vindication of federal rights.") (citing multiple decisions and other authorities). Similarly, in class actions, courts have declined to apply conflict of interest rules that would otherwise require class counsel to withdraw when a class representative objects to a proposed settlement. As a court of appeals decision explained (with a citation to one of my articles):

> In many class actions, one or more class representatives will object to a settlement and become adverse parties to the remaining class representatives (and the rest of the class). If, by applying the usual rules on attorney-client relations, class counsel could easily be disqualified in these cases, not only would the objectors enjoy great "leverage," but many fair and reasonable settlements would be undermined by the need to find substitute counsel after months or even years of fruitful settlement negotiations. "Moreover, the conflict rules do not appear to be drafted with class action procedures in mind and may be at odds with the policies underlying the class action rules." Bruce A. Green, *Conflicts of Interest in Litigation: The Judicial Role*, 65 Fordham L. Rev. 71, 127 (1996).

*Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 589 (3d Cir. 1999). Likewise, the allocation of legal fees to class counsel is principally governed by case law developed under Rule 23, not by the reasonableness standard of Rule 1.5 of the professional conduct rules.

Here, whether the focus is on the purposes served by Rule 4.2 or on the purposes served by Rule 23, there is no compelling reason to restrict lawyers from offering individual legal representation to absent class members or from communicating their availability to do so. It is a basic principle of legal ethics that clients "do not belong" to the lawyer and that their lawyer cannot forbid them from discharging the lawyer and selecting another one. *See, e.g., Diamond v. Hogans Lovell US LLP*, 224 A.3d 1007, 1015 (D.C. App. 2020). Even when the client has already entered into a lawyer-client relationship, the client is free to replace the lawyer with another. *See, e.g.*, Nevada Rules, Rule 1.16(a)(3). Professor Stempel makes much of class counsel's expenditure of "thousands of hours of time, effort and out-of-pocket expenditure," Semple Dec. at para. 24, but Rule 4.2 is not meant to protect lawyers and their investments. An absent class member has an interest in receiving legal advice from an unconflicted lawyer regarding whether to opt out of the class action, regardless of how much time, effort and money class counsel has invested.

For at least two reasons, absent class members have a particularly compelling interest in being free to engage a lawyer other than class counsel. First, absent class members have not

sought or agreed upon class counsel's representation explicitly or implicitly. Second, conflict-of-interest rules restrict class counsel from providing legal advice about whether absent class members should opt out of the class action. Prof. Stempel says it should suffice that "[a]fter certification, notice to class members advises them of both their opt-out rights and ability to seek legal counsel of their choice." Stempel Decl. at 16 n. 12. But this notice is not legal advice, it is just information. It cannot adequately substitute for legal advice, based on the facts of the individual fighter's own case, regarding what is in the fighter's best interest. Absent class members should be able, without restriction, to retain a competent lawyer who does not have a conflict of interest and who is willing to advise them.

Professor Stempel suggests in a footnote that any lawyers who communicate their availability to represent absent class members have an inherent (but unspecified) conflict of interest, and that, with respect to conflicts of interest, the distinction between these lawyers and class counsel is "overly formalistic." Stempel Dec. at 15-16 n.12. This is wrong. Class counsel cannot give disinterested advice to absent class members regarding whether to opt out of the class action because class counsel represents a different client – namely, the class – whose interests would be undermined by advising individual class members to opt out. Lawyers who represent class members individually, or who offer to do so, do not have this conflict of interest. Of course, all lawyers who practice law for a living – including class counsel – have a financial self-interest which, in theory, may influence how they interact with prospective clients and how they conduct a representation: lawyers who receive hourly fees may unnecessarily extend the representation; those who receive flat fees or who are salaried may limit their work; etc. In this case, assuming Sparacino is willing to represent its individual clients on a contingent-fee basis, the ordinary assumption would be that the firm's interests will largely be aligned with those of the clients. But even if not, the professional conduct rules assume that lawyers, as professionals, will put their clients' interests ahead of these sorts of inherent personal interests. Nothing about lawyers' decision to make their availability known to would-be clients changes that assumption. Professor Stempel's cynical conjecture that "Sparacino is not offering neutral and objective litigation counsel," Stempel Dec. at 16 n.12, would not justify interfering in Sparacino's establishment of lawyer-client relationships with absent class members.

Finally, Professor Stempel asserts that even if Rule 4.2 does not apply, the Court should restrict Sparacino from soliciting clients "pursuant to its broad discretion to manage class action litigation pursuant to Fed. R. Civ. P. 23." Stempel Decl. at para. 16. I agree that the Court has broad discretion under Rule 23. As I wrote in my earlier letter: "Ultimately, in my view, questions such as whether, when and how lawyers may communicate directly with absent class members should be resolved by courts through the exercise of discretion under Fed. R. Civ. P. 23." Green Letter at 4. That is because "Rule 4.2 and other professional conduct rules are based on the paradigm of an individual lawyer-client relationship. The rules were not drafted and adopted with the goals, policies, and procedures of class actions in mind. Moreover, courts exercising authority under Rule 23 are well positioned to oversee the lawyers' professional conduct in the context of the class action, including by developing and enforcing standards of conduct in common law fashion." *Id.*

That said, I do not agree that the court, exercising its authority under Rule 23, should impose a restriction that Rule 4.2 plainly does not impose – namely, a restriction on lawyers'

ability to offer their legal services in writing to absent members of a class or putative class. Targeted mailings are a constitutionally protected means of communicating with prospective clients. *See Shapiro v. Kentucky Bar Ass'n*, 486 U.S. 466 (1988). As I previously stated, "individual class members who might consider initiating individual actions would presumptively be better served by receiving advice on this subject from their lawyers who represent only absent class members individually, rather than by receiving the conflicted advice of class counsel or no advice at all. Therefore, it is in the absent class members' interest to be advised about this alternative and about the availability of law firms such as Sparacino to provide legal advice and assistance exclusively with their interests at heart." Green Letter at 4. The principles and policies underlying Rule 23 support this conclusion.

Very truly yours,

Bruce A. Green