Eric L. Cramer (admitted *pro hac vice*)
Michael Dell'Angelo (admitted *pro hac vice*)
Patrick F. Madden (admitted *pro hac vice*)
Najah Jacobs (admitted *pro hac vice*)
BERGER MONTAGUE PC
1818 Market St., Suite 3600
Philadelphia, PA 19103
Phone: (215) 875-3000/Fax: (215) 875-4604
ecramer@bm.net
mdellangelo@bm.net
pmadden@bm.net

*Co-Lead Counsel for the Class and*
*Attorneys for Individual and Representative Plaintiffs*
*Cung Le, Nathan Quarry, Jon Fitch, Luis Javier Vazquez,*
*Brandon Vera, and Kyle Kingsbury*

[Additional counsel listed on signature page]

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    vs.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>        Defendant. | Case No.: 2:15-cv-01045-RFB-BNW<br><br>**PLAINTIFFS' MOTION TO PROHIBIT IMPROPER SOLICITATION OF CLASS MEMBERS AND TO REMEDY PAST IMPROPER SOLICITATIONS** |

## <u>TABLE OF CONTENTS</u>

**Page(s)**

INTRODUCTION ..................................................................................................... 1

PROCEDURAL BACKGROUND ........................................................................... 2

    I.      ARGUMENT ............................................................................................ 6

          A.    The Court Has Authority to Grant the Requested Relief ......................... 6

          B.    Sparacino's Communications with Class Members Were and Are Improper ................................................................................................ 7

          C.    Plaintiffs' Requested Remedies Are Appropriate ................................... 17

CONCLUSION ...................................................................................................... 18

**PLAINTIFFS' MOTION TO PROHIBIT IMPROPER SOLICITATION OF CLASS MEMBERS**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baleja v. Northrop Grumman Space*, No. EDCV17235JGB, 2020 WL 5078814 (C.D. Cal. July 30, 2020).......................................................................................... 13, 15

*Chalian v. CVS Pharmacy, Inc.*, No. 2:16-cv-8979, 2020 WL 7347866 (C.D. Cal. Oct. 30, 2020) ................................................................................................ 7, 10, 17

*Chambers v. NASCO, Inc.,* 501 U.S. 32 (1991) ........................................................6

*Corll v. Edward D. Jones & Co.*, 646 N.E.2d 721 (Ind. Ct. App. 1995)...................................13

*Dondore v. NGK Metals Corp.*, 152 F. Supp. 2d 662 (E.D. Pa. 2001)......................................13

*F.J. Hanshaw Enterps., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128 (9th Cir. 2001)............6

*Fox v. Saginaw Cnty., Michigan*, 35 F.4th 1042 (6th Cir. 2022)....................................7

*Greenfield MHP Assocs., L.P. v. Ametek, Inc.*, No. 315CV01525GPCAGS, 2018 WL 538961 (S.D. Cal. Jan. 24, 2018) ..................................................................13

*Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981) .............................................. 6, 7, 8, 17

*Jacobs v. CSAA Inter-Ins.*, No. C07-00362MHP, 2009 WL 1201996 (N.D. Cal. May 1, 2009)...........15

*Kirola v. City & Cnty. of San Francisco*, No. C 07-03685 SBA, 2010 WL 3505041 (N.D. Cal. Sept. 7, 2010)..........................................................................15

*Masonek v. Wells Fargo Bank*, No. SACV091048DOCRNBX, 2009 WL 10672345 (C.D. Cal. Dec. 21, 2009) ......................................................... 7, 10, 18

*McCurley v. Royal Seas Cruises, Inc.*, No. 17-986, 2020 WL 4436361 (S.D. Cal. July 31, 2020).........................................................................13, 15

*McKenzie L. Firm, P.A. v. Ruby Receptionists, Inc.*, No. 3:18-CV-1921-SI, 2020 WL 2789873 (D. Or. May 29, 2020).................................................................15

*McWilliams v. Advanced Recovery Sys., Inc.*, 176 F. Supp. 3d 635 (S.D. Miss. 2016)................. ......................................................................10, 12, 13, 15, 16

*O'Connor v. Uber Techs., Inc.*, No. C-13-3826 EMC, 2014 WL 1760314 (N.D. Cal. May 2, 2014).........8

*Pollar v. Judson Steel Corp.*, No. C 82-6833 MPH, 1984 WL 161273 (N.D. Cal. Feb. 3, 1984)..........12

**PLAINTIFFS' MOTION TO PROHIBIT IMPROPER SOLICITATION OF CLASS MEMBERS**

*Rankin v. Bd. of Educ. Wichita Pub. Sch.*, U.S.D. 259, 174 F.R.D. 695 (D. Kan. 1997) ...........13

*Walker v. Apple, Inc.*, 4 Cal. App. 5th 1098 (2016) ............................................................ 13, 15

*Wang v. Chinese Daily News, Inc.*, 623 F.3d 743 (9th Cir. 2010) ................................... 6, 12, 17

*Wayside Church v. Van Buren Cnty.*, No. 1:14-CV-1274, 2023 WL 3451008 (W.D. Mich. May 15, 2023) ................................................................................................................16

**Rules**

D.C. Rule of Pro. Conduct 4.1 (2018) .........................................................................................9

D.C. Rule of Pro. Conduct 4.2(a) (2018) ..................................................................................12

D.C. Rule of Pro. Conduct 7.1 (2018) .........................................................................................9

Nev. Rule of Pro. Conduct 1.0A (2021) ......................................................................................9

Nev. Rule of Pro. Conduct 4.1 (2006) .........................................................................................9

Nev. Rule of Pro. Conduct 4.2 (2006) .......................................................................................12

Nev. Rule of Pro. Conduct 7.1 (2006) .........................................................................................9

**Other Authorities**

Hollis Salzman, Meegan Hollywood, & Noelle Feigenbaum (Robins Kaplan LLP), *Between a Rock and a Hard Place: Communicating with Absent Class Members*, Antitrust Vol. 32 No. 1 (Fall 2017) ..................................................................................15

Manual for Complex Litigation, Fourth ....................................................................... 7, 15, 18

Newberg and Rubenstein on Class Actions § 9:10 (6th ed.) ........................................... 6, 7, 13

**PLAINTIFFS' MOTION TO PROHIBIT IMPROPER SOLICITATION OF CLASS MEMBERS**

1

## **INTRODUCTION**

2

In March 2021, after the Court announced it would certify the Bout Class, Sparacino PLLC

3 ("Sparacino") sent a misleading letter to members of the proposed Bout Class—including four named

4 plaintiffs represented by Class Counsel in cases that were consolidated with *Le v. Zuffa*—telling them

5 that developments in *Le v. Zuffa* suggested they may have viable claims against the UFC and urging

6 them to retain Sparacino to pursue those potential claims. The letter was misleading because, among

7 other things, it omitted the material facts that *Le v. Zuffa* was a class action, that the Court had

8 announced its intention to certify the Bout Class, that the solicited fighters were members of the

9 proposed Bout Class, that their interests were already being represented by the Class Representatives

10 and Class Counsel in *Le v. Zuffa*, and that they could participate in any eventual recovery in *Le v. Zuffa*

11 without retaining—and paying—Sparacino. In violation of several rules of professional conduct, the

12 letter created the false impression that the class members needed to retain Sparacino to pursue their

13 antitrust claims against the UFC.

14

Plaintiffs voiced objections to this misleading solicitation to Sparacino directly in an attempt to

15 resolve the matter without Court intervention, *see* Cramer Decl., ECF No. 797, at ¶¶ 13, 15-16, and

16 when those efforts failed, filed a motion with the Court. *See* ECF No. 796 (Mar. 30, 2021). On April

17 13, 2021, Sparacino assured both Plaintiffs and the Court that it would stop soliciting class members.

18 *See* ECF No. 809, at ¶ 36; ECF No. 808, at 16. Despite such assurances, Sparacino continued to solicit

19 class members. *See* ECF No. 859, at 4, 6; ECF No. 868, at 3-5. The Court issued its Order certifying

20 the Bout Class on August 9, 2023, and subsequently held a status conference on August 21, 2023.

21 During that conference, the Court agreed to consider a renewed motion to restrain Sparacino's conduct,

22 ordering that *Plaintiffs* "shall have until October 24, 2023, to file a motion regarding improper Class

23 contact." ECF No. 847. Sparacino did not wait to respond to that motion on the schedule established by

24 the Court. Nor did it meet and confer with Class Counsel, even though Class Counsel had contacted

25 Sparacino asking to do just that.[1] Instead, on September 13, 2023, Sparacino pre-emptively filed its

26

27

28 [1] *See* e-mails dated Aug. 22, 2023 and Aug. 29, 2023, from Joshua P. Davis to Eli Kay-Oliphant, Exh. 1 to Decl. of Richard A. Koffman in Support of Pls.' Mot. to Prohibit Improper Solicitation of Class Members and to Remedy Past Improper Solicitations ("Koffman Decl."), filed herewith.

**PLAINTIFFS' MOTION TO PROHIBIT IMPROPER SOLICITATION OF CLASS MEMBERS**

own motion, complaining about—and mischaracterizing—Class Counsel's appropriate attempts to protect class members from Sparacino's misleading solicitations.[2] *See* ECF No. 849.

As contemplated by this Court's August 21, 2023 Minute Order, Plaintiffs hereby seek an Order: (1) prohibiting Sparacino from further soliciting members of the certified class; (2) authorizing Class Counsel to send a letter, the contents of which would be subject to Court approval, to the Class Members Sparacino has already solicited in an effort to alleviate any misunderstandings caused by Sparacino's misleading solicitations; and (3) allowing any Class Members who have retained Sparacino a 30-day window in which to rescind their retainer agreements without adverse consequences.

## PROCEDURAL BACKGROUND

In late 2014, several actions were filed in the Northern District of California on behalf of proposed classes of UFC fighters, alleging, among other things, that the UFC had unlawfully monopsonized the market for MMA fighter services and thereby unlawfully suppressed UFC fighter pay. Among the named Plaintiffs in those actions were Dennis Hallman, Darren Uyenoyama, Gabe Ruediger, and Mac Danzig. The cases were transferred to this Court on June 4, 2015. ECF No. 94. Dennis Hallman, Darren Uyenoyama, Gabe Ruediger, and Mac Danzig are listed among the Plaintiffs at the beginning of the docket sheet in this matter, and counsel representing these Plaintiffs—including Class Counsel—are identified on the docket. Although Messrs. Hallman, Uyenoyama, Ruediger, and Danzig were not listed as Plaintiffs in the Consolidated Amended Complaint, *see* ECF No. 208, one or more of their names appears in more than 70 docket entries in this matter.

At a December 10, 2020, status conference, the Court announced its intention to certify the Bout Class. In a Minute Order issued the next day, the Court stated that "the forthcoming written order of the Court certifying the class shall be the order certifying the class for the purposes of Rule 23." ECF No. 775 (Dec. 11, 2020). Press outlets swiftly publicized the Court's announcement of its intention to certify the Bout Class. *See, e.g.*, Marc Raimondi, *Antitrust suit vs. UFC wins legal decision*, ESPN (Dec. 10, 2020, 5:52 PM), https://www.espn.com/mma/story/_/id/30492170/antitrust-suit-vs-ufc-wins-

---

[2] Had Sparacino accepted Class Counsel's invitation to meet and confer about a briefing schedule, *see* Koffman Decl. Exh. 1 ("Please let us know if you would like to meet and confer about a briefing schedule"), rather than preemptively filing its own motion, the Court would not now be faced with overlapping sets of motions and responses addressing the same solicitation issues.

legal-decision.

About three months later, on or about March 16, 2021, Sparacino sent a misleading letter to members of the proposed class, soliciting them to retain Sparacino to represent them in connection with "Potential Antitrust Claims Against UFC." *See* Koffman Decl. Exh. 2. The letter stated that "developments in a recent court case called *Le v. Zuffa* suggests [sic.] you may have legal claims relating to your time as an MMA competitor in the UFC." *Id. The letter did not mention that Le v. Zuffa was a class action*; indeed, the word "class" does not appear anywhere in the letter. *See id*. The letter likewise failed to mention that this Court had stated its intention to certify the class, or that absent class members need not take any action to participate in any eventual recovery in *Le v. Zuffa*. Instead, the letter created the false impression that to pursue antitrust claims against the UFC, class member fighters would need to retain the services of Sparacino or some other counsel, whereas in reality, absent class members could rely on Class Counsel and the Representative Plaintiffs to represent their interests.[3]

Sparacino's misleading letter violated at least three ethical rules governing attorneys practicing in Nevada and Washington, D.C. (Sparacino is a Washington, D.C. law firm; *see* Koffman Decl. Exh. 2).

First, it violated Rule 4.1 of the Nevada and Washington, D.C. Rules of Professional Conduct prohibiting attorneys from making false statements of material fact or omitting material facts in communications with third parties. *See infra*, at 9; *see also* ECF No. 796,[4] at 10-11; ECF No. 813,[5] at 3-4; ECF No. 859,[6] at 6-8.

Second, the letter violated Rule 7.1 of the Nevada and D.C. Rules of Professional Conduct prohibiting attorneys from making false or misleading statements about the lawyer's services. *See infra*,

---

[3] Sparacino's letter was accompanied by a brochure. *See* Koffman Decl. Exh. 3. The brochure also misleadingly implied that MMA fighters must take some action to pursue their claims against the UFC, and failed to inform the solicited Class Members that the Court had announced its intention to certify the Bout Class, that Fighters did not need to take any action to benefit from any class-wide relief obtained in the case, and that opting out would deprive Fighters of the benefit of any class-wide recovery obtained in the case.

[4] Pls.' Emergency Mot. to Compel Sparacino PLLC to Stop Communicating with Absent Members of the Proposed Class and for Related Relief.

[5] Pls.' Reply in Supp. of Emergency Mot. to Compel Sparacino PLLC to Stop Communicating with Absent Members of the Proposed Class and for Related Relief.

[6] Pls.' Opp'n to Sparacino PLLC's Mot. for Relief Pursuant to the Court's Inherent Authority.

Case No.: 2:15-cv-01045 RFB-BNW
**PLAINTIFFS' MOTION TO PROHIBIT IMPROPER SOLICITATION OF CLASS MEMBERS**

at 9; *see also* ECF No. 796, at 13-14; ECF No. 813, at 3-4; ECF No. 859, at 8.

Third, the letter violated Rule 4.2 of the Nevada and D.C. Rules of Professional Conduct prohibiting attorneys from contacting persons known to be represented by counsel about the subject of the representation. *See infra*, at 12; Declaration of Professor Jeffrey W. Stempel ("Stempel Decl."), Koffman Decl. Exh. 4, at ¶¶ 15, 22-34; Supplemental Declaration of Professor Jeffrey W. Stempel ("Supp. Stempel Decl."), Koffman Decl. Exh. 5, at ¶¶ 15-17, 19-29; *see also* ECF No. 796, at 14-16; ECF No. 813, at 6-8; ECF No. 859, at 9-10. Sparacino admits that its March 16, 2021, letter was sent to four named plaintiffs represented individually by Class Counsel in cases that were consolidated with *Le v. Zuffa*. *See* ECF No. 849, at 9 n.7.[7] Moreover, because the Court had announced it would certify the Bout Class, the putative class members were analogous to members of a certified class and should be considered represented parties for purposes of Rule 4.2. *See infra* at 12; Stempel Decl., at ¶¶ 15, 25; Stempel Supp. Decl., at ¶¶ 15-17, 25-26, 29; *see also* ECF No. 796, at 13-14; ECF No. 813, at 7-8; ECF No. 859, at 9-10.

As Professor Stempel notes, Sparacino's representation of absent class members also may violate Rule 1.1 of the Nevada Rules of Professional Conduct because Sparacino—a mass tort firm with no significant antitrust experience—"lacks the resources and expertise necessary to prosecute the instant action's antitrust claims on behalf of individual plaintiffs." Stempel Decl., at ¶¶ 18, 41-45. In addition, Sparacino's retainer agreements, which provide for a 40% contingent fee even where Sparacino may do little substantive work, appear to violate Rule 1.5 of the Nevada Rules of Professional Conduct prohibiting unreasonable fees. Stempel Decl., at ¶¶ 19, 46-52.

Class Counsel brought these ethical violations to Sparacino's attention. *See* ECF No. 797, at ¶¶ 13, 15, 16; ECF No. 813, at 8-9. Rather than cease its improper solicitations and allow Class Counsel to send a corrective letter, and without first notifying Class Counsel or the Court, Sparacino sent a second misleading solicitation letter to class members.[8] *See* ECF No. 796, at 5-6, 11-12, 16; ECF No. 797 at ¶

---

[7] Sparacino claims that it made good-faith efforts not to contact fighters who were individually represented, but any competent review of the docket in *Le v. Zuffa* would have revealed the names of the plaintiffs represented individually by Class Counsel in the consolidated cases.

[8] Sparacino's second solicitation letter is attached as Exhibit 6 to the Declaration of Richard A. Koffman, filed herewith.

17. In response, Class Counsel filed Plaintiffs' Emergency Motion to Compel Sparacino PLLC to Stop Communicating with Absent Members of the Proposed Class and for Related Relief, ECF No. 796 (March 30, 2021).

On April 13, 2021, Sparacino's Managing Partner pledged to this Court:

> While that [Emergency] Motion remains pending, Sparacino will not communicate with any such absent class members unless they reach out to Sparacino directly. Nor will Sparacino re-contact any of the individuals to whom we have already sent a mailer, unless they initiate contact with us directly.
> ECF No. 809, at ℙ 36.[9]

On September 30, 2022, this Court denied Plaintiffs' Emergency Motion "as moot," stating, "It is the Court's understanding that Sparacino PLLC is no longer engaging in the alleged communications that formed the basis for this Emergency Motion." ECF No. 831. The Court did not deny the motion on the merits, but instead relied on Sparacino's representations that it was no longer contacting members of the proposed class to deny the motion *as moot. Id*.[10]

Subsequently, Class Counsel learned that, contrary to Sparacino's representations to the Court and to Plaintiffs, Sparacino continued to solicit members of the proposed class. *See* ECF No. 859, at 4, 6; ECF No. 868,[11] at 3-5. Class Counsel therefore requested that the Court address these communications anew. *See* Plaintiffs' Pre-Conference Statement, ECF No. 842 (Aug. 17, 2023), at 7. In its August 21, 2023 Minute Order following that day's Status Conference, the Court ordered "that Plaintiffs in <u>Le et al v. Zuffa, LLC</u>, 2:15-cv-01045-RFB-BNW, shall have until October 24, 2023, to file a motion regarding improper Class contact." ECF No. 847.

Rather than follow the schedule established by the Court's Order, or meet and confer with Class Counsel (who had initiated contact for that purpose),[12] Sparacino pre-emptively filed, on September

---

[9] *See also* ECF No. 808, at 16 ("Sparacino has already pledged not to contact again the individuals it had already solicited unless such individuals initiate contact with Sparacino—a pledge by which Sparacino will abide and need not be ordered to keep.").

[10] Sparacino has repeatedly stated in its briefs that the Court "denied" or "rejected" Plaintiffs' Emergency Motion, while omitting the crucial fact that the motion was not denied on the merits, but only as "moot." *See, e.g.*, ECF No. 849, at 2 n.1, 3, 13; ECF No. 866, at 12 n.12. Like Sparacino's solicitations of class members, these representations to the Court were misleading.

[11] Plaintiffs' Surreply Br. in Opp'n to Sparacino PLLC's Mot. for Relief Pursuant to the Court's Inherent Authority.

[12] *See* Koffman Decl. Exh. 1.

13, 2023, a motion seeking an Order permitting it to continue to communicate with absent class members, notwithstanding the Court's Order certifying the class, until the end of the (yet-to-be-determined) opt-out period, *see* ECF No. 849, at 9-12; and seeking a wide array of sanctions against Class Counsel, *id.* at 12-17. That motion is fully briefed, including a proposed seven-page surreply brief filed by Plaintiffs to address new evidence and allegations submitted with Sparacino's Reply.[13]

## I.   **ARGUMENT**

### A.   **The Court Has Authority to Grant the Requested Relief**

This Court has the inherent authority to manage conduct in the cases before it. *See F.J. Hanshaw Enterps., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1136–37 (9th Cir. 2001) ("All federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively and to ensure obedience to their orders.") (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991)). This authority is heightened when the Court manages class actions, which "serve an important function in our system of civil justice" but present unique "opportunities for abuse as well as problems for courts and counsel in the management of cases." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). "Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Id.*

As the Supreme Court has recognized, courts must be particularly attuned to the "potential abuses associated with communications to class members." *Id.* at 101 n.12. Due to the "heightened susceptibilities of nonparty class members to solicitation amounting to barratry," the Supreme Court has observed, "unapproved communications to class members that misrepresent the status or effect of the pending action . . . have an obvious potential for confusion." *Id.* (internal quotations omitted). Accordingly, Rule 23(d) of the Federal Rules of Civil Procedure codifies courts' inherent authority and "gives district courts the power to regulate the notice and opt-out processes and to impose limitations when a party engages in behavior that threatens the fairness of the litigation." *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 756 (9th Cir. 2010), *vacated on other grounds*, 132 S. Ct. 74 (2011); *see* 6 Newberg and Rubenstein on Class Actions § 19:5 (6th ed.) (describing courts' "substantial residual

---

[13] *See* Plaintiffs' Mot. for Leave to File a Short Surreply Br. in Opp'n to Sparacino PLLC's Mot. for Relief Pursuant to the Court's Inherent Authority, ECF No. 868.

powers" under Rule 23(d) to "regulate . . . communications with absent class members").

The Court has authority to regulate improper communications both before and after it certifies a class. *See* Manual for Complex Litigation, Fourth § 21.33 ("If class members have received inaccurate precertification communications, the judge can take action to cure the miscommunication and to prevent similar problems in the future."). And the Court may exercise this authority to control inappropriate and misleading communications from both parties and nonparties alike. *See, e.g.*, *Fox v. Saginaw Cnty., Michigan*, 35 F.4th 1042, 1047 (6th Cir. 2022) ("A court can control abusive communications of those – parties and nonparties alike – who threaten or interfere with a class action."); Newberg and Rubenstein on Class Actions § 9:10 (6th ed.) ("Courts employ the same *Gulf Oil* regime used for analyzing party communications when analyzing nonparty communications.").

As directed by the Supreme Court and Rule 23(d), courts frequently wield their authority to prohibit misleading, unethical, and inappropriate communications; order curative notices; and enter other "appropriate orders governing the conduct of counsel and parties." *Gulf Oil*, 452 U.S. at 100; *see, e.g.*, *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1239, 1246 (N.D. Cal. 2000) (responding to "disruptive" and misleading opt-out solicitations by ordering curative notices and allowing recission of attorney-client agreements with non-party counsel).[14] The Court should take such actions here.

**B.   Sparacino's Communications with Class Members Were and Are Improper**

On March 16, 2021, several weeks after this Court announced its intention to certify the Bout Class, Sparacino sent a misleading letter to members of the class—including four named Plaintiffs in actions consolidated with this one—urging them to retain Sparacino to pursue their potential claims. On March 24, 2021, while Class Counsel was meeting and conferring with Sparacino in good faith to address these misleading communications—and before this Court could intervene to exercise its oversight authority—Sparacino sent a second misleading solicitation letter. And finally, despite promising class members and this Court to abstain from further unsolicited communications, Sparacino

---

[14] *See also, e.g.*, *Masonek v. Wells Fargo Bank*, No. SACV091048DOCRNBX, 2009 WL 10672345, at *4 (C.D. Cal. Dec. 21, 2009) (enjoining further misleading communications and ordering curative notices); *Chalian v. CVS Pharmacy, Inc.*, No. 2:16-cv-8979, 2020 WL 7347866, at *4-5 (C.D. Cal. Oct. 30, 2020) (ordering non-party counsel to cease communicating with absent class members and file a list of contacted individuals).

continued to solicit class members. These actions violated several ethical rules governing the practice of law in Nevada and Washington, D.C.,[15] and are precisely the types of "[u]napproved communications to class members that misrepresent the status or effect of the pending action" *Gulf Oil,* 452 U.S. at 101 n.12 (internal quotation marks omitted), for which Rule 23(d) prescribes "broad" remedial authority, *id.* at 100; *see O'Connor v. Uber Techs., Inc.*, No. C-13-3826 EMC, 2014 WL 1760314, at *3 (N.D. Cal. May 2, 2014) ("The prophylactic power accorded to the court . . . under Rule 23(d) is broad.").

### 1. Sparacino's first solicitation letter was misleading and violated multiple Rules of Professional Conduct.

As detailed above, Sparacino's first solicitation letter, sent on March 16, 2021, implied that in order to pursue antitrust claims against the UFC, fighters needed to promptly retain Sparacino's services. *See* Koffman Decl. Exh. 2. The letter created this perception through numerous selective omissions of material fact, declining to note, at a minimum: (1) that *Le v. Zuffa* was a proposed class action; (2) that the solicited fighters were members of the proposed class; (3) that the Court had announced its intention to certify the class; (4) that the fighters' interests were already being represented by the Class Representatives and Class Counsel; (5) that the fighters could participate in any eventual recovery in *Le v. Zuffa* without retaining individual counsel or taking any other action; and (6) that the fighters would lose the benefit of any class-wide recovery if they opted out. Moreover, the letter spoke of a "recent court case called *Le v. Zuffa*"—even though the case was then over six years old—and stated that Sparacino "would be honored to represent you if your claim is viable and you *choose to sue* UFC"—even though class members had no need to file a lawsuit to benefit from the class action. *See* Koffman Decl. Exh. 2 (emphasis added). Together, these communications created a false sense of urgency while misleading recipients about their status as members of the Bout Class the Court had announced its intention to certify.

In fact, Sparacino's first letter does not use the word "class" *at all*, rendering it hard to imagine how the letter could accurately explain the fighters' rights as members of the proposed class. Indeed, upon receiving this letter, multiple absent class members contacted Class Counsel to express confusion over the mailer and Sparacino's role in the litigation. *See* Maysey Decl., ECF No. 813-1. Several of

---

[15] Sparacino PLLC is located in Washington, D.C. *See* Koffman Decl. Exh. 2.

Case No.: 2:15-cv-01045 RFB-BNW

these individuals expressed a belief, based on the letter, that Sparacino was affiliated with Class

Counsel. *Id.* at ¶¶ 3-5. And one class member even signed an engagement letter with Sparacino *solely*

*because* he "didn't realize that it wasn't the original class action lawsuit law firm." *Id.* at ¶ 6.

Sparacino's contention that its mailer was not misleading is thus both implausible on its face and belied

by the record; at least several class members were in fact misled.

By sending this misleading letter, Sparacino violated Rules 4.1 and 7.1 of the Nevada Rules of

Professional Conduct (and their Washington, D.C., analogues).[16] Rule 4.1 prohibits a lawyer from

making false statements of material fact or omitting material facts in communications with third

parties; Rule 7.1 prohibits attorneys from making a false or misleading communication about the

lawyer's services. As Rule 7.1 notes, a communication "is false or misleading if it contains a material

misrepresentation of fact or law, or omits a fact necessary to make a statement considered as a whole

not materially misleading." Nev. Rule of Pro. Conduct 7.1. The comment to Model Rule 7.1 specifies:

"A truthful statement is also misleading if presented in a way that creates a substantial likelihood that a

reasonable person would believe the lawyer's communication requires that person to take further action

when, in fact, no action is required."[17]

Sparacino's first letter, dated March 16, 2021, indeed created a "substantial likelihood" that

class members would reasonably believe they needed to take further action when, in fact, no action was

required. *See* Stempel Decl., at ¶¶ 35-37. As Professor Stempel concluded, the first solicitation letter

was unethical in part because it "strongly suggests to class members that they are at risk of losing

valuable rights if they do not act swiftly to retain their own counsel." *Id.* ¶ 36. And this

misrepresentation gave rise to a significant risk that class members would be deceived into opting out

of this action, foreclosing their chance to benefit from any settlement or judgment. Professor Stempel's

conclusion is bolstered by the fact that several class members who received the mailer contacted Class

Counsel because they believed that they did *in fact* need to take further action. By falsely implying that

---

[16] *See* Nev. Rule of Pro. Conduct 4.1 (2006), 7.1 (2006); D.C. Rule of Pro. Conduct 4.1 (2018), 7.1 (2018).

[17] *See* Nev. Rule of Pro. Conduct 1.0A (2021) ("The preamble and comments to the ABA Model Rules of Professional Conduct are not enacted by this Rule but may be consulted for guidance in interpreting and applying the Nevada Rules of Professional Conduct, unless there is a conflict between the Nevada Rules and the preamble or comments.").

absent class members needed to retain lawyers—and should retain Sparacino—to recover from Zuffa, and by failing to mention that Class Counsel were already pursuing class members' rights, the first solicitation letter violated Rules 4.1 and 7.1.

Courts frequently exercise their authority to prevent solicitations that "induce class members to provide authorizations to opt out of the class without a clear understanding of the costs and benefits of class membership." *McKesson*, 126 F. Supp. 2d at 1244; *see, e.g.*, *id.* (deeming solicitations misleading where they did not "identify the court-appointed lead plaintiff and counsel or the procedures safeguarding the appropriateness of class certification" and "communicate[d] a gratuitous air of urgency"); *Masonek*, 2009 WL 10672345, at *3-4 (same, where solicitation failed "to explain the class action process and how a class action could potentially provide investors with a recovery without investors taking any current action"); *Chalian*, 2020 WL 7347866, at *4-5; *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2014 WL 4966072, at *25 (E.D.N.Y. Oct. 3, 2014). And courts remedy such misleading solicitations by granting precisely the relief Plaintiffs request here: ordering non-party counsel to cease further communication with absent class members, *see, e.g.*, *Chalian*, 2020 WL 7347866, at *4-5; requiring a curative notice, *see, e.g.*, *Masonek*, 2009 WL 10672345, at *4; and allowing recission of class members' attorney-client agreements with non-party counsel, *see*, *e.g.*, *McKesson*, 126 F. Supp. 2d at 1246. This Court should do the same.

### 2. Sparacino's continued solicitations since the first letter further support the requested relief.

Sparacino's first solicitation letter, by misleading absent class members and interfering with the Court's administration of this action, suffices to warrant Plaintiffs' requested relief. But Sparacino's actions since that letter have made this Court's oversight and intervention only more necessary. As described above, after learning of Sparacino's misleading letter, on or about March 18, 2021, Class Counsel initiated a good-faith meet-and-confer process under Local Rule 7.4(a). *See* Cramer Decl., ECF No. 797, at ¶¶ 12-16. But during that process—and without Class Counsel's knowledge—Sparacino sent a second solicitation letter on March 24, 2021. *Id.* ¶ 17; *cf. McWilliams v. Advanced Recovery Sys., Inc.*, 176 F. Supp. 3d 635, 641 (S.D. Miss. 2016) (noting that it was "particularly

egregious" for third-party counsel "to send class members another letter while a motion for protective order concerning this very issue was pending"). This second letter failed to correct Sparacino's ethical violations and, indeed, made matters worse. *See* Stempel Decl., at ₱ 37 (concluding that Sparacino's second solicitation letter "further supports judicial control of Sparacino's solicitation"). For one, the second letter reasserted a claim also made in the first solicitation letter: that Sparacino—a law firm without any apparent antitrust experience—was partnering with Scott + Scott—a law firm with significant antitrust experience. *See* Koffman Decl. Exh. 6. That is no longer true. Scott + Scott withdrew on or about March 26, 2021. *See* Cramer Decl., ECF No. 797, at ₱ 18. Had Sparacino completed the meet and confer process before acting, the second solicitation letter would not have contained this inaccuracy.

Additionally, the second letter styles itself as a "follow up" and an "update," not as a correction. *See* Koffman Decl. Exh. 6. A proper corrective letter would have informed class members that the first solicitation letter was misleading, clarified the material facts, and informed absent class members of their rights. The second letter failed to do so, and its language minimized the chances that class members would look to the second letter to correct any misimpressions caused by the first. *Id.*; see Stempel Decl., at ₱ 37. Moreover, the second letter provided contact information for Sparacino but not for Class Counsel, who should be the ones to communicate with interested absent class members about the class litigation process. *See* Supp. Stempel Decl., at ₱ 25.

Perhaps most importantly, the letter stated: "Unless you reach out to us, this will be the last time my firm ever contacts you." Koffman Decl. Ex. 6. Based on Sparacino's guarantee that Sparacino would never re-initiate contact with another class member, this Court denied Plaintiffs' emergency motion as moot. *See* Order, ECF No. 831. But as seen in the case of class member Antonio McKee, Sparacino has breached its promise to the class members—and its representations to the Court—by continuing to solicit class members. *See* ECF No. 859, at 4, 6; ECF No. 868, at 3-5; Decl. of Antonio

McKee (Koffman Decl. Exh. 7).[18] In the process, Sparacino has rendered its second mailer materially false and an independent violation of Rules 4.1 and 7.1.

Even if Sparacino's second letter had fairly and accurately addressed the firm's prior misrepresentations, it would not have undone those ethical breaches nor the resulting harms. Some class members may have read the first letter but not the second letter; others may have heard from others about the first letter, but not the second letter. The Rules of Professional Conduct bar lawyers from making false and misleading statements, regardless whether the lawyers make some effort to fix those statements when they get caught; an ethical violation remains an ethical violation. In any event, Sparacino's response to its first letter was *not* to accurately address its prior mistakes but instead to sow more confusion. The Court should exercise its authority to prevent further "behavior that threatens the fairness of the litigation." *Wang*, 623 F.3d at 756; *see McWilliams*, 176 F. Supp. 3d at 641 (finding that third-party attorney "erred again when she sent a second, so-called 'curative' letter to class members. This letter also did not comply with Rule 23. It was not approved by the Court, did not contain the information required by the rule, and contained extra information the Court would not have approved").

### 3. Sparacino's solicitations constituted unauthorized contacts with counseled parties in violation of Rule 4.2.

Sparacino's solicitations were not only misleading but also violated Nevada Rule of Professional Conduct 4.2 (and its Washington, D.C., equivalent)[19] prohibiting attorneys from contacting persons known to be represented by counsel about the subject of the representation without counsel's consent. Some courts hold that court-appointed counsel represent absent class members for purposes of Rule 4.2 prior to class certification. *Pollar v. Judson Steel Corp.*, No. C 82-6833 MPH,

---

[18] After initiating contact with Mr. McKee—who has been personally represented by Class Counsel Robert Maysey since 2014—by FedEx dated March 16, 2021, Sparacino received a voicemail from Mr. McKee on March 18, 2021, had a discussion by phone with Mr. McKee later on March 18, 2021, and followed up with an email to Mr. McKee still later on March 18, 2021. Sparacino sent another solicitation letter and a modified engagement letter to Mr. McKee on April 2, 2021. ECF 866-2 (Kay-Oliphant Decl.), at ¶¶ 2-5. Mr. McKee was confused by Sparacino's solicitations, and texted Class Counsel Robert Maysey on April 2, 2021, "Is this you guys?," attaching a picture of Sparacino's solicitation letter. Maysey Decl., ECF No. 813-1, at ¶ 5. Hearing nothing further from Mr. McKee, Sparacino sent additional solicitation emails and proposed engagement letters on May 3, May 8, and June 12, 2021—*see* McKee Decl. at ¶¶ 5-7; Kay-Oliphant Decl. at ¶ 6—*after* assuring the Court on April 13, 2021 that it would not "re-contact any of the individuals to whom we have already sent a mailer, unless they initiate contact with us directly." ECF No. 809, at ¶ 36.

[19] *See* Nev. Rule of Pro. Conduct 4.2 (2006); D.C. Rule of Pro. Conduct 4.2(a) (2018).

1984 WL 161273 (N.D. Cal. Feb. 3, 1984); *see also Dondore v. NGK Metals Corp.*, 152 F. Supp. 2d 662, 666 (E.D. Pa. 2001) *on reconsideration*, No. CIV. A. 00-1966, 2001 WL 516635 (E.D. Pa. May 16, 2001) ("The truly representative nature of a class action suit affords its putative members certain rights and protections including, we believe, the protections contained in Rule 4.2 of the Rules of Professional Conduct." (internal quotation marks omitted)).[20] Other courts hold that class counsel do not represent absent class members until a class is certified.[21] But the "great majority" of courts and commentators agree that once a class is certified, class counsel represent all absent class members for purposes of Rule 4.2, and class members cannot be contacted about the subject of the representation without class counsel's consent.[22]

Here, at the time of Sparacino's solicitations, the absent class members had an unusual status. The Court had stated its intention to certify the class, but had not yet issued its order certifying a class. Plaintiffs respectfully submit—and Professor Stempel agrees—that absent class members should be treated as represented parties for purposes of Rule 4.2 under such circumstances. *See* Stempel Decl., at ¶¶ 15, 25. Even absent the case law cited above treating absent class members as represented parties *before* class certification, Rule 4.2 should apply in this case. Not to apply Rule 4.2 here would reward Sparacino's efforts to game the system. Sparacino appears to have been well aware that this Court had announced its intention to certify a class. Otherwise, it would not have had reason to refer to a "recent" ruling in this litigation that pertained to MMA fighters who competed in UFC events between 2010 and

---

[20] 4 *See also*, *e.g.*, *Corll v. Edward D. Jones & Co.*, 646 N.E.2d 721 (Ind. Ct. App. 1995); *Rankin v. Bd. of Educ. Wichita Pub. Sch.*, U.S.D. 259, 174 F.R.D. 695, 697–98 (D. Kan. 1997).

[21] *See*, *e.g.*, *Greenfield MHP Assocs., L.P. v. Ametek, Inc.*, No. 315CV01525GPCAGS, 2018 WL 538961, at *6 (S.D. Cal. Jan. 24, 2018).

[22] *McWilliams*, 176 F. Supp. 3d at 643; *see*, *e.g.*, 6 Newberg on Class Actions § 19.6 (6th ed.) ("[F]ollowing certification, class counsel and absent class members have a formal, if unique, attorney-client relationship. … Absent class members are therefore 'represented parties,' and ethics rules prohibit opposing counsel from contacting them directly."); *McCurley v. Royal Seas Cruises, Inc.*, No. 17-00986-BAS-AGS, 2020 WL 4436361, at *5 (S.D. Cal. July 31, 2020) ("The Court finds that the attorney-client relationship attached when the Court ordered the class certified in this case."); *Baleja v. Northrop Grumman Space*, No. EDCV17235JGBSPX, 2020 WL 5078814, at *2 (C.D. Cal. July 30, 2020) (quoting *Walker v. Apple, Inc.*, 4 Cal. App. 5th 1098, 1107 (2016)).

2017.[23]  And Sparacino's timing is suspicious, to say the least: Despite taking no action for the first six years of this litigation, Sparacino began soliciting members of the proposed Bout Class soon after it became clear a class would be certified. But Sparacino acted before the Court formally issued its class certification order, an apparent attempt to evade Rule 4.2's prohibition against contacting a represented party. Such gamesmanship contravenes the purposes of Rule 4.2, and it should not be rewarded or encouraged.[24]

Moreover, Sparacino violated Rule 4.2 by sending its solicitation letters to multiple class members whom Class Counsel represent individually—including at least four named Plaintiffs in cases that were consolidated with *Le v. Zuffa*. One of those named plaintiffs, Dennis Hallman, brought Sparacino's solicitation to the attention of Class Counsel. *See* Cramer Decl., ECF No. 797 Ex. 4. Mr. Hallman's name—and those of Messrs. Uyenoyama, Ruediger, and Danzig—shows up dozens of times on the docket in this matter; even minimal diligence by Sparacino would have revealed that class counsel represent Mr. Hallman (and the three other named Plaintiffs) individually. Under these circumstances, Sparacino—a firm that claims experience investigating class actions—cannot plead ignorance as to its interference in the attorney-client relationship. *See* Model Rules of Pro. Conduct r. 4.2, cmt. 8 ("[A]ctual knowledge may be inferred from the circumstances. … Thus, the lawyer cannot evade the requirement of obtaining the consent of counsel by closing eyes to the obvious.").[25]

### 4.   Future solicitations of members of the certified class would be unethical.

Now that the Court has certified the Bout Class, Rule 4.2 prohibits any further solicitation of class members. *See* Stempel Decl. at ¶ 17. As noted above, most courts and commentators agree that once a class is certified, Rule 4.2 applies "as though each class member is a client of the class counsel."

---

[23]  The letter reads, in relevant part: "In a case called *Le v. Zuffa*, a federal judge recently ruled that MMA athletes who competed in UFC events in the United States between 2010 and 2017 may have claims for compensation against the UFC under our Nation's antitrust law, the Sherman Act." Koffman Decl. Exh. 2.

[24]  *See* American Bar Association, Model Rules of Pro. Conduct r. 4.2 cmt. 1 (describing Rule 4.2's purpose as protecting those "represented by a lawyer in a matter against possible overreaching by other lawyers who are participating in the matter, interference by those lawyers with the client-lawyer relationship and the uncounselled disclosure of information relating to the representation").

[25]  Indeed, whatever Sparacino did *post-solicitation* to identify the individually represented fighters it improperly contacted could presumably have been done *pre-solicitation*.

**PLAINTIFFS' MOTION TO PROHIBIT IMPROPER SOLICITATION OF CLASS MEMBERS**

Manual for Complex Litigation, Fourth § 21.33 ; *see* Stempel Decl. at ¶ 23 n.4 (describing the weight

of authority).[26] As Professor Stempel observes, the majority rule makes sense: After certification, class

counsel not only has a formal duty to represent the interests of class members but has also "established

itself as a faithful champion with a relationship to the entire class much like that of the traditional

lawyer-client relationship." *Id.* ¶ 28. And as commentators have observed, "If the attorney-client

relationship has not been established at that point, class counsel will find their hands tied in trying to

protect the interests of the class," thus leaving class members "vulnerable to improper influence" from

outside attorneys. Salzman et al. at 4; *see also McWilliams*, 176 F. Supp. 3d at 641 (noting that a

contrary conclusion would "risk defeating the efficiency inherent in the class action form").

For these reasons, courts in the Ninth Circuit follow the majority approach. *See, e.g.*, *McCurley*,

2020 WL 4436361, at *5 ("The Court finds that the attorney-client relationship attached when the Court

ordered the class certified in this case."); *Baleja v. Northrop Grumman Space*, No. EDCV17235JGB,

2020 WL 5078814, at *2 (C.D. Cal. July 30, 2020) (quoting *Walker v. Apple, Inc.*, 4 Cal. App. 5th 1098,

1107 (2016)) ("[O]nce a class is certified, class counsel represent absent class members for purposes of

the ethical rule that prohibits communication with represented parties."); *McKenzie L. Firm, P.A. v.

Ruby Receptionists, Inc.*, No. 3:18-CV-1921-SI, 2020 WL 2789873, at *2–3 (D. Or. May 29, 2020)

("As a result of class certification and appointment of class counsel, an attorney-client relationship is

formed between class counsel and all absent class members on all matters regarding the litigation.");

*Kirola v. City & Cnty. Of San Francisco*, No. C 07-03685 SBA, 2010 WL 3505041, at *1 (N.D. Cal.

Sept. 7, 2010) ("[T]he applicable rules of Professional Conduct prohibit communications by an attorney

with a represented client without express consent of the attorney, including communications with

individual class members once a class action has been certified."); *Jacobs v. CSAA Inter-Ins.*, No. C07-

00362MHP, 2009 WL 1201996, at *2 (N.D. Cal. May 1, 2009) ("After a court has certified a class,

communication with class members regarding the subject of representation must be through counsel for

the class.").

---

[26] *See also* Hollis Salzman, Meegan Hollywood, & Noelle Feigenbaum (Robins Kaplan LLP), *Between a Rock and a Hard Place: Communicating with Absent Class Members*, Antitrust Vol. 32 No. 1, p. 4 (Fall 2017) (outlining and endorsing this "majority rule").

**PLAINTIFFS' MOTION TO PROHIBIT IMPROPER SOLICITATION OF CLASS MEMBERS**

Sparacino may posit a distinction, under Rule 4.2, between its unauthorized communications with represented parties and those initiated by defense counsel. But this is a distinction without a difference. Nothing in the language or logic of Rule 4.2—or in the relevant case law—suggests that it applies only to defense counsel, nor that the Court is powerless to prevent opt-out attorneys from interfering with Class Counsel's duty to adequately represent the class. The purpose of Rule 4.2 is to prevent "overreaching by other lawyers who are participating in the matter, interference by those lawyers with the client-lawyer relationship and the uncounselled disclosure of information relating to the representation." Model Rules of Pro. Conduct r. 4.2 cmt. 1. And as courts have concluded, this purpose may be undermined by both defense counsel and opt-out counsel alike.

To take a recent example, in *Wayside Church v. Van Buren County*, the district court rejected opt-out counsel's identical argument that Rule 4.2 is "geared towards communication with an adverse party, as opposed to solicitation of a represented party." *Wayside Church v. Van Buren Cnty.*, No. 1:14-CV-1274, 2023 WL 3451008, at *6 (W.D. Mich. May 15, 2023). As the court observed:

> Although preventing communication between a lawyer and an adverse party is one objective of [Michigan's analogous] Rule 4.2(a), it is not the only one. Rule 4.2(a) also seeks to prevent distorting a represented party's thinking about the case and undermining confidence in that party's litigation position. … [The] solicitation letters could certainly undermine the solicited individual's confidence in class counsel and the settlement agreement. After[]all, the solicitation letters are presumably intended to encourage class members to opt out of the class.

*Id.* (internal quotations omitted); *see also Wayside Church v. Van Buren Cnty.*, 2023 U.S. App. LEXIS 16968, at *11 (6th Cir. July 4, 2023) (declining to stay the district court's order in relevant part) ("Rule 23 preserves class members' rights to opt-out or raise objections . . . but it does not guarantee outside counsel an opportunity to lobby for those actions."). Similarly, in *McWilliams v. Advanced Recovery Systems, Inc.*, Judge Reeves held that by soliciting class members to opt out after a class has been certified, outside counsel "plainly violated" both Rule 4.2 and Rule 23. *McWilliams*, 176 F. Supp. 3d at 640 (S.D. Miss. 2016); *id.* at 642 ("Upon certification, class counsel *does* represent absent class members. That is the point of being 'class counsel.' It follows that it is unethical for other attorneys to communicate with class members about the representation after the class has been certified." (emphasis in original)). This Court, too, should exercise its authority to prevent further impermissible outside

communications with represented parties.[27]

### C.      Plaintiffs' Requested Remedies Are Appropriate

As described above, courts have the inherent authority, as enumerated in Rule 23(d), to "enjoin communications with class members to protect them from undue interference." *In re McKesson*, 126 F. Supp. 2d at 1242. Such an order should be based on "specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil*, 452 U.S. at 101. Plaintiffs submit that the following remedies are sufficient and no broader than necessary to address the harms of Sparacino's misleading and improper communications.

First, the Court should prohibit Sparacino from contacting class members going forward unless those members expressly ask to be contacted by Sparacino. This relief is warranted on multiple grounds. For one, Sparacino directly promised the recipients of its second solicitation letter: "Unless you reach out to us, this will be the last time my firm ever contacts you." Koffman Decl. Exh. 6. Plaintiffs' proposed order would do no more than hold Sparacino to its word. Moreover, now that the Bout Class has been certified, Rule 4.2 independently bars any further class contacts even absent Sparacino's guarantee. And finally, Sparacino's repeated misleading communications with both absent class members and this Court suggest that an injunction on future communications is necessary to prevent confusion and preserve the integrity of these proceedings. *See Wang*, 623 F.3d at 756; *Chalian*, 2020 WL 7347866, at *4-5 (responding to misleading communications by ordering outside counsel to cease further contact with class members).

Second, the Court should permit Class Counsel to send a curative letter, the contents of which would be subject to Court approval, to class members Sparacino has already solicited correcting the

---

[27] Even aside from the impropriety under Rules 4.1, 4.2, and 4.7 of Sparacino's continued solicitations, Professor Stempel's careful review of the relevant facts and Rules of Professional Conduct revealed an additional ethical concern: By representing absent class members, Sparacino may violate Rule 1.1 of the Nevada Rules of Professional Conduct requiring that attorneys provide competent representation. As Professor Stempel notes, it appears that Sparacino—which has no significant antitrust experience— likely "lacks the resources and expertise necessary to prosecute the instant action's antitrust claims on behalf of individual plaintiffs." Stempel Decl., at ¶¶ 18, 41-45. Additionally, Professor Stempel notes, Sparacino's retainer provides for a "particularly exorbitant" 40 percent contingency fee even when Sparacino may do little work, which appears to violate Rule 1.5's prohibition on unreasonable fees. *Id.* ¶ 51.

misleading communications they have received.[28] This letter would alleviate any confusion caused by Sparacino's misleading communications, inform absent class members of their rights to rescind any representation agreements with Sparacino, provide contact information for Class Counsel, and otherwise clarify the class members' legal rights. Courts frequently order such curative notices, which are narrowly tailored to remedying the harms of the initial misleading communications. *See, e.g.*, *McKesson*, 126 F. Supp. 2d at 1246; *Masonek*, 2009 WL 10672345, at *4; Manual for Complex Litigation, Fourth § 21.313.

Third, the Court should allow any class members who have retained Sparacino[29] 30 days from the date on which they receive Class Counsel's corrective letter in which to rescind their agreement to retain Sparacino without any adverse consequences, such as owing Sparacino costs or fees.[30] This remedy, too, is narrowly tailored to remedying the effects of Sparacino's misleading communications. *See McKesson*, 126 F. Supp. 2d at 1246; Manual for Complex Litigation, Fourth § 21.313. Permitting rescission is particularly appropriate here, moreover, in light of Professor Stempel's conclusion that Sparacino lacks the requisite expertise to prosecute this action, Stempel Decl. at ¶¶ 18, 41-45, and likely charges an unreasonable fee for its services, *Id.* at ¶¶ 19, 46-52, in violation of Rules 1.1 and 1.5.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order:

1) prohibiting Sparacino from further soliciting members of the certified class;

2) authorizing Class Counsel to send a corrective letter, the contents of which would be subject to Court approval, to class members Sparacino has already solicited; and

3) allowing any Class Members who have retained Sparacino a 30-day window in which to rescind their retainer agreements without adverse consequences.

---

[28] Because its misleading solicitations have necessitated a curative letter, Sparacino should bear the costs of sending this letter to class members. *See* Manual for Complex Litigation, Fourth § 21.313 ("Those who made the misstatements should bear the cost of a notice to correct misstatements.").

[29] Sparacino purports to represent fifteen members of the Bout Class. *See* ECF No. 866, at 1.

[30] As Professor Stempel notes, "In the event an opt-out plaintiff decides to fire Sparacino, its retainer provides for a contingency fee of up to 40 percent of any settlement payment." *See* Koffman Decl. Exh. 4, at ¶ 52.

Respectfully Submitted,


By:     */s/ Richard A. Koffman*


COHEN MILSTEIN SELLERS & TOLL, PLLC
Benjamin D. Brown (admitted *pro hac vice*)
Richard A. Koffman (admitted *pro hac vice*)
Daniel H. Silverman (admitted *pro hac vice*)
1100 New York Ave., N.W., Suite 500, East
Tower Washington, DC 20005
Phone: (202) 408-4600/Fax: (202) 408 4699
bbrown@cohenmilstein.com
rkoffman@cohenmilstein.com
dsilverman@cohenmilstein.com


JOSEPH SAVERI LAW FIRM, LLP
Joseph R. Saveri (admitted *pro hac vice*)
Kevin E. Rayhill (admitted *pro hac vice*)
601 California Street, Suite 1000
San Francisco, California 94108
Phone: (415) 500-6800/Fax: (415) 395-9940
jsaveri@saverilawfirm.com
krayhill@saverilawfirm.com


BERGER MONTAGUE PC
Eric L. Cramer (admitted *pro hac vice*)
Michael C. Dell'Angelo (admitted *pro hac vice*)
Patrick F. Madden (admitted *pro hac vice*)
Najah Jacobs (admitted *pro hac vice*)
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Phone: (215) 875-3000/Fax: (215) 875-4604
ecramer@bm.net
mdellangelo@bm.net
pmadden@bm.net
njacobs@bm.net


BERGER MONTAGUE PC
Joshua P. Davis (admitted *pro hac vice*)
505 Montgomery Street, Suite 625
San Francisco, CA 94111
jdavis@bm.net

*Co-Lead Counsel for the Class and Attorneys for*
*Individual and Representative Plaintiffs Cung Le,*
*Nathan Quarry, Jon Fitch, Luis Javier Vazquez,*
*Brandon Vera, and Kyle Kingsbury*

KEMP JONES, LLP
Don Springmeyer (Nevada Bar No. 1021)
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
(702) 385-6000/Fax: (702) 385-6001
d.springmeyer@kempjones.com

*Liaison Counsel for the Class and Attorneys for
Individual and Representative Plaintiffs Cung Le,
Nathan Quarry, Jon Fitch, Luis Javier Vazquez,
Brandon Vera, and Kyle Kingsbury*

WARNER ANGLE HALLAM JACKSON &
FORMANEK PLC
Robert C. Maysey (admitted *pro hac vice*)
Jerome K. Elwell (admitted *pro hac vice*)
2555 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Phone: (602) 264-7101/Fax: (602) 234-0419
rmaysey@warnerangle.com
jelwell@warnerangle.com

*Counsel for the Class and Attorneys for
Individual and Representative Plaintiffs Cung Le,
Nathan Quarry, Jon Fitch, Luis Javier Vazquez,
Brandon Vera, and Kyle Kingsbury*

**PLAINTIFFS' MOTION TO PROHIBIT IMPROPER SOLICITATION OF CLASS MEMBERS**

### **CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of October 2023 a true and correct copy of PLAINTIFFS'
MOTION TO PROHIBIT IMPROPER SOLICITATION OF CLASS MEMBERS AND TO REMEDY
PAST IMPROPER SOLICITATIONS was served via the District of Nevada's ECF system to all
counsel of record who have enrolled in the ECF system.


By:

*/s/ Richard A. Koffman*