# Exhibit 4
## (Declaration of Professor Jeffrey W. Stempel)

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Cung Le, et . al,

      Plaintiffs

                     No.:2:15-cv-01045-RFB-BNW

v.

Zuffa, LLC,

                                    **Declaration of**
                                    **Jeffrey W. Stempel**

      Defendant.

_____

### Declaration of Professor Jeffrey W. Stempel

#### <u>Introduction</u>

        I have been retained by class counsel to address professional responsibility issues related to Sparacino PLLC's Motion for Relief Pursuant to the Court's Inherent Authority (filed September 13, 2023) ("Sparacino's Motion"). I reserve the right to reconsider, revise, and supplement my opinions in light of further developments or additional information that may develop.

#### <u>Background and Qualifications</u>

        1.      I am the Doris S. & Theodore B. Lee Professor of Law at the William S. Boyd School of Law, University of Nevada Las Vegas, where I have been a member of the faculty since 1999, and served as Associate Dean for Academic Affairs during Spring Semester 2000 and the 2000-2001 academic year. From 1995 to 1999, I was a Professor of Law at Florida State University College of Law and Associate Dean for Academic Affairs during the 1997-98 academic year. Prior to joining the Florida State faculty in 1995, I was Assistant Professor, Associate Professor, and Professor of Law at Brooklyn Law School in Brooklyn, New York, from 1986 to 1995. Prior to becoming a law professor, I was a civil litigation attorney and a law clerk to a United States District Judge. My current curriculum vitae is attached as Exhibit A to this Report.

        2.      I have studied and taught professional responsibility for more than 25 years at both Florida State and UNLV. As indicated on my resume, I am the author of articles regarding

1

lawyer professional responsibility that have been published in the *Brooklyn Law Review*, the *Florida State University Law Review*, the *Fordham Law Review*, the *Nevada Law Journal*, the *Review of Litigation*, and the *San Diego Law Review*. I served on the State Bar of Nevada's Standing Committee on Ethics and Professional Responsibility from 2000-2010 and was Chair from October 2008 to July 2010.[1] I am also the author or co-author of books and articles concerning civil litigation that necessarily address issues of legal ethics, including *Fundamentals of Litigation Practice* (2015); *Fundamentals of Pretrial Litigation* (11th ed. 2020), *Motion Practice* (7th ed. 2016), and *Learning Civil Procedure* (3d ed. 2018) (co-author). I have served

---

[1]  In 2006, the Nevada Rules of Professional Conduct were revised as part of the American Bar Association's "Ethics 2000" project which revised the Model Rules. First promulgated in 1983, the Model Rules replaced the 1970 ABA Model Code of Professional Responsibility, which, in turn, replaced the ABA's 1908 Canons of Legal Ethics.

    The format of the ABA Model Rules is one in which a particular "black letter" rule is set forth, followed by numbered comments. For example, ABA Model Rule 1.7 is followed by two numbered official Comments (each with multiple subparts). In addition, the Model Rules contain a Preamble concerning "A Lawyer's Responsibilities" consisting of numbered Comments and additional Comments regarding the "Scope" of the Model Rules.

    In 1986, the Nevada Supreme Court largely followed the 1983 ABA Model Rules in promulgating the Nevada Rules of Professional Conduct but did not adopt any of the preliminary Comments or any of the Comments following particular black letter Rules. In addition, the Nevada Rules used a different numbering system than the ABA Model Rules.

    In 2006, the Nevada Supreme Court largely adopted the ABA's proposed revisions to the ABA Model Rules that were part of the ABA's Ethics 2000 project reviewing and updating the Model Rules. While the Nevada Supreme Court adopted the numbering system of the Model Rules, it still declined to adopt the majority of the Comments to the Model Rules. However, the Court did adopt as Nevada Rule of Professional Conduct 1.0A "Guidelines for Interpreting the Nevada Rules of Professional Conduct" that were based, in significant part, on particular Comments to the Model Rules. In pertinent part, Rule 1.0A provides:

    The preamble and comments to the ABA Model Rules of Professional Conduct are not enacted by this Rule but may be consulted for guidance in interpreting and applying the Nevada Rules of Professional Conduct, unless there is a conflict between the Nevada Rules and the preamble or comments. The following guidelines for interpreting and applying the Nevada Rules of Professional Conduct are hereby adopted:

    (a) ***The Rules of Professional Conduct are rules of reason. They should be interpreted with reference to the purposes of legal representation and of the law itself.***

[emphasis added].

    I stress the "rule of reason" canon for construing Nevada's Rules of Professional Conduct because of the importance of the concept. Rules such as Nev. R. Prof. Conduct 4.2 (generally known as the anti-contact rule) and Rule 1.1 requiring that attorneys provide competent representation should be construed in light of the context at hand. As discussed in this Declaration, this in my view argues for applications of these rules in light of their purpose in light of the practical concerns of the case, which in this matter augers in favor of treating the now certified class as represented by class counsel for purposes of Rule 4.2 even before it was formally certified, and for requiring that counsel seeking to represent out-out plaintiffs be more than competent in the ordinary sense of the term but have sufficient competence to properly litigate a large, complex, antitrust class action.

as an editor of the *Nevada Civil Practice Manual* (5th ed. 2001 and annual supplements) and am an author of books and articles concerning insurance issues, which also often touch upon matters of lawyer professional responsibility, most prominently *Stempel and Knutsen on Insurance Coverage* (4th ed. 2016), previously published as *Law of Insurance Contract Disputes* (2d ed. 1999); *Interpretation of Insurance Contracts* (1994); and *Stempel on Insurance Contracts* (3d ed. 2006). In addition, I am the co-author of a casebook used in law school classes, *Principles of Insurance Law* (5th ed. 2020). I have also written scholarly articles concerning insurance, statutory interpretation, arbitration, dispute resolution, and professional responsibility. These books and articles are listed in Exhibit A.

3. I have been retained as an expert witness or consultant in disputes concerning lawyer professional responsibility and related matters such as malpractice and the misconduct of attorneys and their agents or affiliates. Exhibit B of this Report contains a listing of the matters in which I have testified by deposition or at trial and includes a listing of testimony in matters relating to insurance as well.

4. Since I became a full-time law professor in 1986, I have taught professional responsibility, civil procedure, contracts, insurance law, statutory interpretation, evidence, pretrial litigation, legislation and law reform, and law and social science. Through practice, study, teaching, and consulting, I am familiar with the history, structure, background and development of lawyer professional responsibility. Several courts have cited my publications as authoritative and my testimony has been admitted in state and federal court. *See, e.g., Black & Veatch Corp. v. Aspen Ins. (UK) Ltd.,* 882 F.3d 952, 960 (10th Cir. 2018); *Lupu v. Loan City, LLC,* 903 F.3d 382 (3d Cir. 2018*); Visteon Corp. v. Nat'l Union Fire Ins. Co.,* 777 F.3d 415 (7th Cir. 2015); *Crownover v. Mid-Continent Cas. Co.,* 772 F.3d 197 (5th Cir. 2014); *Higby Crane Serv., LLC v. Nat'l Interstate Ins. Co.,* 751 F.3d 1157 (10th Cir. 2014); *Amerinsure Mut. Ins. Co. v. Auchter Co.,* 673 F.3d 1294 (11th Cir. 2012); *Scottsdale Indem. Co. v. Vill. of Crestwood,* 2012 U.S. App. LEXIS 5069 (7th Cir. Mar. 12, 2012); *Lopez & Medina Corp. v. Marsh USA, Inc*., 667 F.3d 58 (1st Cir. 2012); *Greystone Constr., Inc. v. Nat'l Fire & Marine Ins. Co.,* 661 F.3d 1272, 1287 (10th Cir. 2011); *Thorogood v. Sears, Roebuck & Co.,* 547 F.3d 742, 745 (7th Cir. 2009); *Wausau Underwriters Ins. Co. v. United Plastics Grp.*, 512 F.3d 953, 956 (7th Cir. 2008); *Halliday v. Great Lakes Ins. SE*, 2019 U.S. Dist. LEXIS 123364 (Aug. 1, 2019); *Pineda Transp. LLC v. Fleetone Factoring, LLC,* 2019 U.S. Dist. LEXIS 106074 (M.D. Tenn. June 24, 2019); *Dominion Resource Services, v. Alstom Power, Inc.*, 2018 U.S. Dist. LEXIS 133751 (Aug. 8, 2018); *Owens v. Metropolitan Life Ins. Co.,* 210 F. Supp. 3d 1344 (N.D. Ga. 2016); *Auto-Owners Ins. Co. v. Southeastern Car Wash Systems*, 2016 U.S. Dis. LEXIS 68389 (E.D. Tenn. May 25, 2016); *Patrick v. Teays Valley Trustees*, LLC, 2012 U.S. Dist. LEXIS 170395 (Nov. 30, 2012); *Cont'l Cas. Co. v. Duckson,* 826 F. Supp. 2d 1086 (N.D. Ill. 2011); *Scottsdale Indem. Co. v. Vill. of Crestwood*, 784 F. Supp. 2d 988, 990 (N.D. Ill. 2011); *Park Electrochemical Corp. v. Cont'l Cas. Co.*, No. 04-CV-4916 ENV ARL, 2011 U.S. Dist. LEXIS 16344 at *15 (E.D.N.Y. Feb. 18, 2011); *Amherst Country Club, Inc. v. Harleysville Worcester Ins. Co.,* 561 F. Supp. 2d 138, 149-50 (D.N.H. 2008); *Robins v. Metro Life Ins. Co. of Conn*., 2008 U.S. Dist. LEXIS 104902 at *13 (E.D. Pa. Dec. 29, 2008); *Holber v. Jacobs*, 381 B.R. 147, 158 (E.D. Pa. 2008); *De Dios v. Indemnity Ins. Co. of North America*, 2019 Iowa Sup. LEXIS

(May 10, 2019); *State v. Johnson*, 399 P.3d 507 (Wash. 2017); *Ramsey v. City of North Las Vegas*, 392 P.3d 614 (Nev. 2017); *Fluor Corp. v. Superior Court*, 354 P.3d 302 (Cal. 2015); *McGinnes Indus. Maint. Corp. v. Phoenix Ins. Co.*, 477 S.W.3d 786 (Tex. 2015); *Maryland Cas. Co. v. Blackstone Int'l, Ltd*, 114 A.3d 676, 699 (Md. 2015); *Midwest Family Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628 (Minn. 2013); *Lancer Ins. Co. v. Garcia Holiday Tours*, 345 S.W.3d 50, 57 n. 6 (Tex. 2011); *Brown v. Genesis Healthcare Corp.*, 724 S.E.2d 250 (W. Va. 2011), *vacated by Marmet Health Care Center, Inc. v. Brown*, 565 U.S. 530 (2012); *Boston Gas Co v. Century Indem. Co.*, 910 N.E.2d 290, 342 (Mass. 2009); *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871 (Fla. 2007); *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 239 S.W.3d 236 (Tex. 2007); *Granger v. GEICO*, 140 P.3d 393 (Haw. 2006); *Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co.*, 876 A.2d 1139 (Conn. 2005); *Nav-Its, Inc. v. Selective Ins. Co. of Am.*, 869 A.2d 929 (N.J. 2005); *Am. Family Mut. Ins. Co. v. Am. Girl, Inc.*, 673 N.W.2d 65 (Wis. 2004); *Belt Painting Corp. v. TIG Ins. Co.*, 795 N.E.2d 15 (N.Y. 2003); *MacKinnon v. Truck Ins. Exch.*, 73 P.3d 1205 (Cal. 2003); *Richardson v. Nationwide Mut. Ins. Co.*, 826 A.2d 310 (D.C. Ct. App. 2003), *rehearing granted*, 832 A.2d 752 (2003), *vacated pursuant to settlement Richardson v. Nationwide Mut. Ins. Co.*, 826 A.2d 310 (D.C. 2004); *Weyerhaeuser Co. v. Commer'l Union Ins. Co.*, 15 P.3d 115 (Wash. 2000); *Kent Farms, Inc. v. Zurich Ins. Co.*, 998 P.2d 292 (Wash. 2000); *Am. States Ins. Co. v. Koloms*, 687 N.E.2d 72 (Ill. 1997); *Hobson v. Indian Harbor Ins. Co.*, 2015 Mich. App. LEXIS 486 (Mich. Ct. App. March 10, 2015); *S. Owners Ins. Co. v. Cooperativva De Seguroros Multiples*, 143 So.3d 439 (Fla. Dist. Ct. App. 2014); *Vills. of Crestwood v. Ironshore Specialty Ins. Co.*, 986 N.E.2d 678 (Ill. Ct. App. 2013); *Univ'l Underwriters Ins. Co., v. LKQ Smart Parts, Inc.*, 963 N.E.2d 930 (Ill. Ct. App. 2011); *Bosserman Aviation Equip., Inc. v. U.S. Liab. Ins. Co.*, 915 N.E.2d 687 (Ohio Ct. App. 2009); *Flowers v. USAA*, 188 P.3d 831 (Haw. Ct. App. 2008). Regarding lawyer professionalism and judicial ethics in particular, my work has been cited in *In re Krull*, 860 N.W.2d 38 (Iowa 2015); *State v. Allen*, 778 N.W.2d 863, 896 (Wis. 2010), *In re Amendment to the Florida Rules for Certified & Court-Appointed Mediators*, 762 So. 2d 441, 445, n.5 (Fla. 2000), *State v. Desmond*, 2011 Del. Super. LEXIS 6 at *24 (Del. Super. Jan. 5, 2011) and *Ivey v. District Court*, 299 P.3d 354 (Nev. 2013) (Saitta, J., concurring).

5.   In preparation for submitting this Declaration, I considered the materials cited in this Declaration, the parties' submissions of record regarding Sparacino's solicitation of Plaintiffs and absent class members in this matter, and my cumulative work in teaching and studying lawyer professional responsibility during the past three decades.   As part of my ongoing work in professional responsibility teaching and scholarship, I regularly review legal ethics treatises as well as textbooks, casebooks, court decisions, periodicals, and other writings pertaining to professional responsibility and incorporate this knowledge in my assessments.   I am also basing my analysis upon my experience in researching, writing about, and examining matters of lawyer professional responsibility and related questions.

## Factual Background

6.   This action began in December 2014 as a putative class action pursuant to 15 U.S.C.

§2, alleging that Defendant Zuffa, better known as the Ultimate Fighting Championships (UFC), possessed and abused monopoly and monopsony power that it gained through anti-competitive conduct to the detriment of MMA fighters.

7.   The case has been heavily litigated, consuming substantial efforts by counsel, including retention of expert witnesses performing extensive economic analysis of UFC operations and their impact on the fighters.  At a December 10, 2020 hearing, the Court indicated that it would grant class certification. On August 9, 2023, the Court entered an Order certifying the Bout Class.

8.   In the wake of the Court's December 10, 2020 announcement that it would certify a class, Sparacino, PLLC began contacting unnamed members of the class through a solicitation letter dated March 16, 2021, recommending that recipients opt out of the class and retain Sparacino as counsel for prosecuting individual antitrust claims against Zuffa.  Sparacino stated that it had associated with Scott+Scott, an antitrust litigation firm – an association that is no longer operative.  It appears that Sparacino has not associated with an antitrust specialist firm to replace Scott+Scott.

9.   The named Plaintiffs and class counsel regarded the March 16 letter as misleading in that, among other things, it suggested to recipients that they would need to retain counsel to seek compensation even though they were slated to be represented by class counsel through eventual entry of the planned class certification order.

10.   Class counsel contacted Sparacino and requested that the firm cease its solicitation efforts and informed Sparacino of intent to seek a court order limiting such solicitation. Sparacino responded by sending a second solicitation letter dated March 24, which class counsel regards as similarly misleading and a purported clarification/correction that is insufficient to remedy the damage done by the initial solicitation.

11.   On March 30, 2021, named Plaintiffs and class counsel filed an Emergency Motion seeking an order forbidding further solicitation by Sparacino until the Court has issued a formal certification order and provided for notice to the class.  Sparacino's solicitation efforts have had some success, with an estimated 15 of the class members retaining the law firm.

12.   In the Emergency Motion, Plaintiffs sought an order forbidding further solicitation by Sparacino and court authorization for class counsel to send a corrective letter to class members clarifying their legal rights and facilitating contact with class counsel to answer class member questions.  Sparacino opposed the motion, contending that its letters were not misleading and that Nevada R. Prof. Conduct 4.2 (generally known as the "anti-contact" rule) does not apply until the class has been formally certified and the opt-out period has expired. On September 30, 2022, the Court denied the Emergency Motion "as moot," because "It is the Court's understanding that Sparacino PLLC is no longer engaging in the alleged communications that formed the basis for this Emergency Motion." However, on August 23, 2023, the Court Ordered that Plaintiffs shall have until October 24, 2023 to file a motion regarding improper

Class contact." It is my understanding that Plaintiffs intend to file such a motion questioning once again the propriety of Sparacino's solicitation efforts, and maintaining that those efforts continued after Sparacino represented to the Court that they would cease.

13.   Class counsel have been informed by class members that Sparacino lawyers continued to solicit class members after representing to the Court that they would no longer do so. Indeed, class members forwarded to class counsel such solicitations from Sparacino, and informed class counsel that they had in no way invited or welcomed those solicitations.

14.  On September 13, 2023, Sparacino filed Sparacino PLLC's Motion for Relief Pursuant to the Court's Inherent Authority. In that motion, Sparacino seeks a ruling from the Court that its prior solicitations of class members were appropriate and not misleading, that it may continue to solicit class members until the period for class members to opt out of the now-certified class has expired, and that class counsel acted inappropriately in seeking to prevent Sparacino from soliciting class members.

## **Summary of Opinion**

15.   Where a putative class action has been extensively litigated and prospective class counsel has invested substantial time and effort in the matter and where the Court has stated an intent to grant certification, the class should be treated as represented by class counsel for purposes of Rule 4.2.  The anti-contact rule should be viewed as applicable and forbidding the type of solicitation engaged in by Sparacino.

16.   Even if the class is not regarded as represented by class counsel until formal entry of a certification order, Sparacino's pre-certification conduct is subject to regulation by the Court pursuant to its broad discretion to manage class action litigation pursuant to Fed. R. Civ. P. 23, which clearly permits relief of the type Plaintiffs and class counsel requested in the Emergency Motion.  The March 16 and March 24 Sparacino solicitation letters are in my view misleading and in violation of Nev. R. Prof. Conduct 1.4 and 4.3.

17.   Now that the class has been formally certified, any further solicitation by Sparacino would violate Nev. R. Prof. Conduct 4.2.

18.   In addition, based on the information available, it appears that Sparacino lacks the resources and expertise necessary to prosecute the instant action's antitrust claims on behalf of individual plaintiffs and that it has not to date secured replacement counsel for Scott+Scott.  The Sparacino solicitation thus raises significant concerns regarding ability to properly represent class members and compliance with Nev. R. Civ. P. 1.1.

19.   In view of Sparacino's swooping in comparatively late in the proceedings in a manner that suggests tailgating class counsel's nine years of activity, the fees it seeks to charge are in my view excessive within the meaning of Nev. R. Prof. Conduct 1.5.

20.   By continuing to solicit class members after representing to the Court that it would no longer do so – and thereby inducing the Court to deny Plaintiffs' Emergency Motion as moot – Sparacino violated its duty of candor to the tribunal under Nev. R. Prof. Conduct 3.3.[2]

21.   In light of the misleading and improper nature of Sparacino's solicitation efforts, class counsel's efforts to prevent them, first by meeting and conferring with Sparacino and subsequently by filing an emergency motion with the Court, were entirely appropriate and reasonable.

## Analysis

### *Application of Rule 4.2 and the Anti-Contact Principle in the Context of Class Actions*

22.   Nevada Rule of Professional Conduct 4.2 provides that "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or court order."[3]

23.   Sparacino's Motion contends that Rule 4.2 does not apply until a class has been certified *and* the time for opting out has passed.  I disagree.  Although the general majority rule is that unnamed class members are not represented until certification (without any necessity for the expiration of the opt-out period),[4] universal embrace of the bright line rule sought by

---

[2] Rule 3.3(a)(1) provides:
Rule  3.3.    Candor Toward the Tribunal.
    (a)  A lawyer shall not knowingly:
        (1)  Make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer.

[3] While I was a member of the State Bar of Nevada Committee on Ethics and Professional Responsibility, it issued Opinion No. 27 (orig. issues Sept. 10, 2001; rev. May 25, 2005; updated Sept. 18, 2020) regarding Rule 4.2, assessing application of the Rule in light of the *Palmer v. Pioneer Inn Associates, Ltd.*, 59 P.3d  1237   (Nev. 2002), which dealt with application of the Rule to employees or agents of a represented entity and adopted the "managing/speaking agent" test for determining the identity of a "represented person" within the meaning of the Rule.  Subsequently, the Committee issued Opinion No. 54 (Jan. 1, 2018).  Neither of these opinions nor *Palmer* nor *Rebel Communications, LLC v. Virgin Valley Water District*, 2011 U.S. Dist. LEXIS 21489 (D. Nev. Feb. 15, 2011) (a case considered in the updating of both Opinions during 2020) dealt with the aspects of Rule 4.2 at issue in this matter. *See also Marina Dist. Dev. Co. v. Walk*, 2020 U.S. Dist. LEXIS 180459 (D. Nev. Sept. 30, 2020)(expressing concern about counsel's ex parte contact with executive of opposing party but finding insufficient proof that executive qualified as managing/speaking agent under *Palmer v. Pioneer Inn*).

[4] Most courts and commentators agree that once a class is certified, Rule 4.2 precludes non-class counsel from contacting class members about the subject matter of the litigation. *See* MANUAL FOR COMPLEX LITIGATION § 21.33 (4th ed. 2004) ("[O]nce a class has been certified, the rules governing communications apply as though each class member is a client of the class counsel."); WILLIAM B. RUBENSTEIN, HERBERT NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS §19.6 (5th ed. 2015) ("[F]ollowing certification, class counsel and absent class members have a formal, if unique attorney-client relationship. Absent class members are therefore "represented parties," and ethics rules prohibit opposing counsel from contacting them directly."); 2 McLaughlin on Class Actions § 11:1 (19th ed.)("With respect to post-certification communications, the great majority of decisions

7

Sparacino is neither analytically sound nor required by rule or precedent.  Class actions differ.  The stages and timing of class actions differ.  The efforts and investment of counsel differ and the nature of contact with class members differs.

24.  The rule sought by Sparacino, although in my view erroneous, would at least make sense during the early stages of a putative class action and would have been rationally applied in 2015 when the action consisted of only a complaint and initial pleadings.  But after more than eight years of substantial litigation involving thousands of hours of time, effort and out-of-pocket expenditure by class counsel, the case is sufficiently similar to non-class litigation that Rule 4.2 should be viewed as applicable.  Even prior to filing the complaint, class counsel undoubtedly engaged in substantial investigation and examination of UFC practices and the legal analysis required by Fed. R. Civ. P. 11.

25.  Furthermore, the class in this matter had *de facto* certification as of December 2020, in that the Court had expressed an intent to certify a class.  In fact, it was the Court's expression of this intent in December 2020 that appears to have triggered Sparacino's solicitation efforts.  Before this indication of certification success, neither Sparacino nor other firms had interest in attempting to assist MMA fighters victimized by UFC's alleged antitrust violations or they would have made contact in prior years.  It was only when the case began to look like one with significant settlement value that Sparacino was spurred to action.  Although market-based competition among vendors (including legal professionals) is generally a good thing, free-riding on the efforts of other vendors/professionals to the detriment of customers/clients is not.[5]

26.  Even if Sparacino were permitted to solicit class members between the Court's announcement of its intention to certify the class and issuance of the class certification order, Rule 4.2 prohibits Sparacino from further soliciting class members now that the Court has formally certified the class.

27.  There is substantial academic scholarship, both laudatory and critical, addressing class actions.  The primary advantage of class actions is that they provide victims with an economy of scale in pursuing relief that is too expensive to pursue on an individual basis either because of comparatively low per capita damages, the cost of pursuing the claim, or both.  A significant concern is that interests of counsel and the class may be misaligned, producing a situation in which class counsel can be induced to settle too readily due to the prospect of a fee award and not sufficiently litigate the matter to maximize recovery for the class.[6]

---

hold that absent class members are represented by class counsel[.] … Many courts have adopted the view that the attorney-client relationship between class counsel and class members attaches upon entry of an order certifying a class and does not await the expiration of any opt-out period.").

[5] The dangers for class members in opting out and signing on with Sparacino are discussed in ¶¶ 41-45, *infra*.

[6] Professor Coffee's well-known article (John C. Coffee, *The Unfaithful Champion: The Plaintiff As Monitor in Shareholder Litigation*, 48 LAW & CONTEMP. PROBS. 5 (1985) is a representative entry in this vein. Other critiques similar to the Coffee criticism include Susan P. Koniak, *Feasting While the Widow Weeps:* Georgine v. Amchem Products, Inc., 80 CORNELL L. REV. 1045 (1995).  Other scholars find this fear of "unfaithful champion" counsel

28.  Based on this concern, one can argue that permitting relatively free attorney solicitation of unnamed class members acts as a hedge against self-serving behavior by putative class counsel.  But even if this concern were valid in many or even most class actions during the early stages of the matter, the concern largely evaporates in cases where the litigation has proceeded for several years, involved substantial attorney effort, developed facts, and articulated supporting law.  At this point, class counsel has established itself as a faithful champion with a relationship to the entire class much like that of the traditional lawyer-client relationship in which Rule 4.2 constitutes a bright line rule and solid barrier against the type of solicitation pursued by Sparacino.

29.  Class counsel that has prosecuted a case sufficiently to the threshold for formal class certification has every incentive to continue to provide high quality legal services.  The interests of the class and counsel are closely, even congruently, aligned for trial.  If the matter should settle, the Court's supervision and approval of settlement acts as a powerful check on any self-dealing by counsel or under-representation of the class.  Permitting solicitation of opt-outs by interloping counsel such as Sparacino at this comparatively late juncture of the case serves no valid purpose and, as discussed below, presents unnamed class members with significant risk of harm.

30.  As also discussed below, the Court-supervised class notice and opt-out process (untainted by aggressive lawyer solicitation and marketing) provides opportunity for class members to seek additional legal counsel and decide if they are better served pursuing their claims individually or collectively.  Law firms lurking about the case hoping to obtain clients are not deprived of potential clients.  Class members opting out can contact them.  The *Le v. Zuffa* class members can easily locate Sparacino in light of that firm's prior solicitation.  Even if further solicitation is proscribed, Sparacino – despite its lack of relevant expertise, as discussed below – has already gained a marketing advantage over other firms hoping to be consulted by prospective opt-out plaintiffs.

31.  Until there are some signs that a class action is gaining momentum, law firms like Sparacino are not interested in the matter.  Their interest surfaces after another firm has done the work necessary to make the case look like one with a significant chance of success and settlement value.  As a result, there appear to be relatively few cases of solicitation of unnamed class member opt-outs at the outset of litigation except by firms with sufficient expertise, resources, and willingness to prosecute the matter successfully.  Allowing these types of firms to contact unnamed class members during the initial stage of putative class litigation is reasonable even if not optimal (as discussed below, my scholarly opinion is that Rule 4.2 should apply from the outset of a class claim).  But the rationale for making client status wait until certification is not applicable to late-inning solicitation such as Sparacino's actions in this matter.

---

overblown due to the mitigating effects of lawyer professionalism, market forces (a lawyer seen as selling out clients or settling cheap will not be part of future litigation steering committees or obtain future retentions) and – most important – judicial supervision of the class action and the need for court approval of any settlement.

32.  Even if *Le v. Zuffa* were in its early stages, there is substantial ground for questioning the general view that Rule 4.2 does not apply prior to certification (or in the instant case, expressed intent to certify).  To be sure, Sparacino has cited an ABA Standing Committee on Ethics and Professional Responsibility (Formal Op. 07-445) as well as scholarly writing (Vincent R. Johnson, *The Ethics of Communicating with Putative Class members*, 17 REV. LITIG. 497, 507-08 (1998) (noting split of authority and arguing for inapplicability of Rule 4.2 prior to certification) in support of its position.  But there is substantial scholarship to the contrary.  *See, e.g.*, Debra Lyn Bassett, *Pre-Certification Communication Ethics in Class Actions*, 36 GA. L. REV. 353 (2002) (noting split of authority and arguing for applicability of Rule 4.2 prior to certification).

33.  I find Professor Bassett's analysis more persuasive.  She argues for application of Rule 4.2 in putative class situations because of the extensive role played by class counsel prior to certification and the risks to class members from interference by other lawyers.  *See* Bassett, 36 GA. L. REV. at 383 ("primary purpose" of Rule 4.2 is to protect the layperson"), at 386 ("better reasoned" decisions deeming class represented from time of complaint "pay attention to, and include an analysis of, the purposes underlying the ethical rule and the rights and benefits afforded to unnamed class members by the filing of the action.") (footnotes omitted), at 393 ("class counsel clearly bears a fiduciary obligation toward unnamed class members" which is indicative of a lawyer-client relationship), at 394 (breach of fiduciary obligations would prevent class counsel from satisfying adequacy requirement of Fed. R. Civ. P. 23(a)), at 396 (fiduciary role and "expectations of potential class members" support applying Rule 4.2 prior to certification).  *See also id.* at 398: "primary beneficiary" of deferring recognition of attorney-client relationship until certification "is defense counsel;" argument that defense counsel need to seek information through direct informal contact with plaintiffs "without permission and without supervision" is "unpersuasive" and gives defense counsel advantages not enjoyed in non-class litigation.[7]  The same is true regarding contact from putative opt-out counsel such as Sparacino.

34.  Finally, Sparacino has conceded that it solicited four named plaintiffs who were represented by class counsel in cases that were consolidated with *Le v. Zuffa*, but who were not named as class representatives in *Le v. Zuffa*.  Those solicitations violated Rule 4.2. Although Sparacino claims its contact with these individually represented plaintiffs was "inadvertent," Sparacino knew or reasonably should have known that these plaintiffs were represented, as their names and consolidated cases appeared on the docket of *Le v. Zuffa*.

### *Management of Class Actions to Prevent Attorney Conduct Detrimental to Class Members*

---

[7]  *See also id*. at 403-04 ("case law is replete with horror stories of ex parte communication abuses by defense counsel in the class action context.  These abusive communications include misrepresentations concerning the class action's purpose, status, or effects, as well as threats or other forms of coercion" and "may undermine putative class members' ability to make informed decisions regarding their participation in class actions" and other harms.  I am not arguing that the Sparacino March 2021 letters have the magnitude of negative aspects implicated by the improper defense counsel communication cited by Professor Bassett.  But they raise enough of these concerns to argue in favor of application of Rule 4.2 to the Sparacino solicitations.

35.  Even if one accepts as a bright-line proposition that Rule 4.2 has no application until certification (or certification and expiration of any opt-out period), ample precedent establishes that federal courts have Fed. R. Civ. P. 23 authority (even obligation) to regulate or prohibit attorney conduct that is wrongful, misleading, or detrimental to the class members.  *See* MOORE'S FEDERAL PRACTICE – Civil §810.05 ("Courts have ample authority under Rule 23 [even if Rule 4.2 does not apply until certification] to prevent any pre-certification contact with prospective class members that is threatening, abusive, coercive or unethical in some other manner. [footnote omitted]."  A court thus has express authority to prohibit Sparacino's solicitation of class members even if it finds no Rule 4.2 violation by Sparacino.

36.  As detailed in the Emergency Motion, the March 16 Sparacino solicitation letter is misleading.  It strongly suggests to class members that they are at risk of losing valuable rights if they do not act swiftly to retain their own counsel.  Conveniently, of course, the Sparacino Firm that has created this anxiety and call for action makes itself readily available.  The March 16 letter does not provide adequate background, context, and information regarding current status of the case to enable the solicitation recipient to make an informed decision.  Like a traveling salesperson, Sparacino seeks to get a foot in the door ostensibly to provide only information while having readily at hand a product or service to sell.  Under these circumstances, limits on further contact and solicitation by Sparacino are justified by Rule 23.

37.  Sparacino's reaction to informal contact by class counsel further supports judicial control of Sparacino's solicitation.  Amid discussions with class counsel, during which class counsel requested that Sparacino cease and desist questionable contact, Sparacino quickly dispatched the Letter of March 24.  Although the March 24 letter makes some strides in clarifying matters, it does not identify itself as a correction to the March 16 letter.  The March 24 letter continues to operate as an advertisement for Sparacino and may not even be closely read and understood (if read at all) by class members who had previously read the March 16 letter.

### *The Attorney's Duty of Accurate Communication*

38.  As noted above, I agree that the Sparacino solicitation of absent class members has been misleading.  This comprises another instance in which Sparacino has violated the rules governing attorney conduct.  Nevada R. Prof. Conduct 1.4 states that a lawyer must communicate adequately with a client and "[k]eep the client reasonably informed about the status of the matter."  If the solicited absent class members are considered "clients" of Sparacino, Rule 1.4 appears violated because of the misleading nature of the Sparacino solicitations.

39.  Perhaps more aptly (in that the class members being solicited are not Sparacino clients), Nevada R. Prof. Conduct 4.3 states

In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested.  When the lawyer knows or reasonably should know that the unrepresented person misunderstands

the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding.  The lawyer shall not give legal advice to an unrepresented person, other than the advice to secure counsel, if the lawyer knows or reasonably should know that the interest of such a person are or have a reasonable possibility of being in conflict with the interest of the client.

40.  Although it may be argued that in soliciting business, Sparacino is not "dealing on behalf of a client," the thrust of Rule 4.3 is clear:  lawyers should take care not to mislead not only their clients but others, including prospective clients.  The misleading nature of the Sparacino solicitations is at least a functional violation of this ethical rule.  In my view, as expressed above, class members should be considered represented by class counsel that has been prosecuting this action for several years.  But even if the class members are considered unrepresented, Rule 4.3 provides an additional basis for granting relief regarding Sparacino's solicitation efforts.

### The Attorney's Duty of Competence and Sparacino's Risk to Class Members

41.  Even if Rule 4.2 does not apply prior to formal class certification and expiration of the opt-out period – a dubious proposition at best for the reasons discussed above – and even if the March letters and other Sparacino communications were not misleading, there remains the question of whether permitting pre-certification solicitation of class members creates sufficient risk to the class members to support relief pursuant to Rule 23.  In my opinion, significant risk does exist that justifies management and mitigation pursuant to Rule 23.

42.  An attorney is required to provide competent representation to a client.  This requires that the lawyer have the "legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."  *See* Nev. R. Prof. Conduct 1.1.  *See also* AMERICAN LAW INSTITUTE, RESTATEMENT (THIRD) LAW GOVERNING LAWYERS §16 cmt. d[8] (providing that an attorney must have the knowledge, skill, time, and professional qualifications sufficient to properly discharge the representation).[9]

43.  Competent representation includes analyzing the factual and legal elements of a matter, as well as adequately preparing and devoting the necessary attention to the matter.  *See* American Bar Association, Model R. Prof. Conduct 1.1 cmt. [5].  The duty is one of reasonableness under the circumstances.  Restatement 52 cmt. b.  The primary inquiry is whether the attorney acted reasonably under the circumstances in accordance with the ordinary skill and diligence expected of lawyers under similar circumstances in the performance of the tasks which

---

[8]  Although the Comments to the ABA Model Rules were not adopted by the Nevada Supreme Court, they "may be consulted for guidance in interpreting and applying the Nevada Rules of Professional Conduct." Nev. R. Prof. Conduct 1.0A.  *See also* note 1, *supra*.  *See, e.g.*, *Merits Incentives, LLC v. Dist. Ct.*, 262 P.3d 720, 724 (Nev. 2011); *In re Discipline of Schaefer*, 25 P.3d 191, 199 (Nev. 2001)

[9]  The Nevada Supreme Court has relied upon the *Restatement* in addressing the professional responsibilities of counsel.  *See, e.g.*, *NC-DSH, Inc. v. Gardner*, 218 P.3d 853, 861 (Nev. 2009); *Leibowitz v. Dist. Ct.*, 78 P.3d 515, 520 n. 19, 532 n. 23 (Nev. 2003).

they undertake.  *Restatement* §52 cmt. b.

44.  Antitrust is considered more complicated than most areas of law.  Class action procedure is considered more complicated than most civil litigation.  Larger litigation matters tend to require more resources and logistical expertise than smaller matters.  The instant action combines all three complicating factors.  To perhaps trade on a stereotype, the archetypical sole practitioner operating out of shopping center storefront would not be competent to represent plaintiffs in the instant case, particularly in light of the top-flight defense counsel retained by Zuffa.  Sparacino has essentially conceded this by previously seeking to work with an experienced antitrust firm (Scott+Scott), an association that has ended, arguably making Sparacino incompetent to represent opt-out plaintiff class members in this action.

45.  Even if Sparacino finds another experienced antitrust firm with which to align, it is questionable whether it can economically provide adequate representation to a single claimant or small group of claimants.  The investment in pursuing the claim in terms of both attorney time and litigation expense, including expert witness fees, is simply too daunting.  This of course is why the instant action would function well as a class action in which the costs invested in prosecution have an economy of scale as they are spread throughout the class and the recoveries obtained by class members.  Opt-out plaintiffs can hope to obtain comparable representation only if they are commonly represented by any competent counsel other than class counsel.[10] Sparacino tacitly acknowledges this by providing in its retainer that it may settle the individual claims of its clients in a batch.  This protective gesture of the firm emphasizes the benefits of class aggregation and the risks to opt-out class members.

### *If Opt-Out Claims are merely settled in free-rider or tag-along fashion, the fees provided in the Sparacino Retainer are Excessive*

46.  As noted above, adequately prosecuting the instant matter to conclusion, including prosecution to seek settlement leverage, requires extensive expertise, experience, resources, and competence.  As of now, it appears Sparacino is unable to provide sufficiently competent prosecution of individual claims or even a critical-mass cluster of opt-out claims.  This raises the prospect that Sparacino's goal in representing opt-outs is to travel in the wake of class counsel's work seeking to reach individual settlements approximating those achieved by the class on a per capita basis.  In other words, the best-case scenario for the opt-out plaintiffs appears to be the settlement they would receive as class members who did not apt opt out.

---

[10]  Although I do not claim particular antitrust expertise and have not studied the merits of the instant litigation in detail, I note that class counsel are among the most prestigious and respected antitrust class action firms in the United States.  It is difficult to imagine higher quality representation for the plaintiff class.  Conversely, one can easily imagine opt-out plaintiffs receiving lower-quality representation depending on their selection of individual claim counsel.

13

47.  Even as it is encouraging disaggregation of the plaintiff class, Sparacino acknowledges the advantages of aggregation by providing in its retainer that it will withdraw if it is "unable to represent a sufficient number of 'opt out' plaintiffs to make the matter economically viable" (as well as if it is unable to affiliate with competent antitrust counsel). This provision of the retainer may not be consistent with Nev. R. Prof. Conduct 1.16 governing withdrawal from representation and would violate Rule 1.16 if this imposes any "material adverse effect on the interests" of the opt-out class member.

48.  If by free-riding in this fashion, Sparacino effectuates adequate settlements for each opt-out plaintiff, one might argue that the solicitation has not caused significant harm.  But whatever the merits of this argument (and I find it unpersuasive), it is incorrect if Sparacino is permitted to be compensated pursuant to the terms of what appears to be the standard Retainer Agreement provided to the solicited class members, in that the Sparacino Retainer provides for higher per capita counsel fees than are reasonably likely to be awarded to class counsel after trial or a classwide settlement.

49.  If Sparacino does not actually litigate an opt-out claim but merely settles it on a basis approximating any classwide per capita result, Sparacino will be excessively compensated within the meaning of Nevada R. Prof. Conduct 1.5.  Rule 1.5 provides that lawyers may not charge "an unreasonable fee" and provides a checklist of factors to consider in assessing reasonableness: time and labor involved; novelty of claim; difficulty of case; skill required; impact on other employment; customary fees in the locale for similar legal work; amount involved; results obtained; time pressures; nature and length of client relationship; experience, reputation, and ability of counsel; and whether the fee is fixed or contingent.

50.  The Sparacino retainer provides for a *40 percent* contingent fee if the case is resolved prior to submission to the jury, a common resolution where a class has been certified as well as in litigation generally.  Although arriving rather late in the litigation after considerable foundation for success has been laid by class counsel, Sparacino is seeking a contingency fee more in line with what one might expect for counsel that had identified, framed, and prosecuted a matter from the outset.

51.  The Sparacino fee is particularly exorbitant in that per its retainer, the firm is providing only limited service in the form of counseling and settlement activity but appears not to be committed to trying the case to verdict and judgment if necessary.  The retainer (page 6) contains a lengthy, disclaiming "Notice Regarding Limited Nature of Representation in UFC Case."  In effect, Sparacino wishes to work as a settlement broker based on past work of class counsel with no commitment to engage in sufficiently diligent and competent further prosecution of an opt-out plaintiff's claims.

52.  In the event an opt-out plaintiff decides to fire Sparacino, its retainer provides for a contingency fee of up to 40 percent of any settlement payment on a sliding scale depending on the stage of litigation and work done as well as providing for Sparacino's entitlement to any court-awarded fee-shifting.  This generous fee schedule applies even if Sparacino is discharged,

14

which at minimum is problematic and could easily result in a dramatically excessive fee if strictly enforced.[11]  If Sparacino obtains opt-out plaintiff clients and settles claims without significant further litigation, the retainer would permit Sparacino to potentially enjoy six-figure fees for comparatively few hours of work, a result inconsistent with Rule 1.5.

### *Sparacino's Opinion Letter from Professor Green Does Not Alter My Conclusions*

53.  Sparacino attached to its September 13, 2023 Motion a four-page letter from Professor Bruce A. Green, dated September 8, 2023 ("Green Letter"). Importantly, Professor Green acknowledges that he has "not been asked to address" whether "Sparacino's letters were misleading." Green Letter at 2. Thus, Professor Green does not contradict my opinion that the letters were misleading, rendering them violative of Rule 1.4 and/or Rule 4.3. He also does not address whether Sparacino is competent to represent plaintiffs in a complex antitrust matter, and thus does not contradict my opinion that Sparacino's lack of competence violates Rule 1.1. Nor does he address whether Sparacino's proposed fee structure is excessive under the circumstances, in violation of Rule 1.5, as I believe it is.

54.  Professor Green does opine that Rule 4.2 should not apply to class actions at all, and that "questions such as whether, when and how lawyers may communicate directly with absent class members should be resolved by courts through the exercise of discretion under Fed. R. Civ. P. 23." Green Letter at 4. This is a fairly radical view that, to my knowledge, has never been adopted by any federal court, in the Ninth Circuit or elsewhere. Moreover, as I explain above, the Court has ample authority to prohibit Sparacino's solicitation efforts under Rule 23, without regard to Rule 4.2, a point upon which Professor Green appears to agree.  In view of the extensive procedural history of this matter, which involved substantial class counsel effort prior to Sparacino's descending upon the scene in 2021, I believe a court's exercise of Rule 23 authority to bar the Sparacino solicitation would be considered a sound exercise of discretion by the academic civil procedure and professional responsibility communities as a whole.

55.  Because Professor Green's letter does not even attempt to address most of the ethical shortcomings of Sparacino's solicitation efforts, and because its analysis of Rule 4.2 is outside the mainstream of professional ethics law and scholarship,[12] it does not alter any of my

---

[11]  Literal enforcement of the fee schedule in the Sparacino retainer in the event of discharge is unlikely in that most courts require, as does Rule 1.5, that the total fee charged the client must be reasonable, which prevents multiple lawyers each taking a full contingent fee and exhausting the recovery of a client that has discharged initial or preceding counsel.  But the Sparacino fee and discharge provisions if generally enforced could easily lead to excessive compensation for counsel in the event of relatively rapid settlement or settlement after discharge.

[12]  Professor Green's extremely generous attitude toward stranger attorney solicitation of a represented client is based on his contention that even after certification, Rule 4.2 makes sense as applied to defense counsel but not as to class counsel because, in his view, class counsel is "conflicted" regarding ability to give advice while soliciting counsel is not representing a "client" and thus escapes Rule 4.2 (through what I regard as strained textual literalism in construing the Rule).

Professor Green's view is overly formalistic regarding the notion of "client" status and unrealistically minimizes the conflict of interest inherently infecting attorney solicitation, a process in which the soliciting

conclusions regarding the propriety of Sparacino's solicitation of class members.

## Conclusion

For the reasons set forth above, I find that class counsel's objections to Sparacino's conduct are justified and Sparacino's defenses unpersuasive. For the same reasons, I find that Sparacino's Motion lacks justification under the rules of professional conduct. Sparacino's solicitation of the class was misleading and is subject to Court control pursuant to Fed. R. Civ. P. 23. It is also in my view violative of Nev. R. Prof. Conduct 4.2 as well as Rules 1.3 and 4.3 in addition to seeking a compensation arrangement inconsistent with the reasonable fees requirement of Rule 1.5 (unless Sparacino has substantial expertise and invests substantial resources prosecuting the opt-out claims of any clients it gains through the solicitation). Sparacino currently lacks the experience, expertise, resources and commitment to adequately and competently prosecute the complex antitrust matters presented in this action in a manner consistent with Nev. R. Prof. Conduct 1.1.

Further, I find that class counsel's efforts to prohibit Sparacino from soliciting class members, first through efforts to meet and confer with Sparacino, and later through court filings, were entirely appropriate and necessary to protect class members from the potential adverse consequences of Sparacino's solicitation efforts.

Finally, if Sparacino in fact continued to solicit class members after representing to the Court that it would no longer do so, Sparacino violated its duty of candor to the tribunal under Nev. R. Prof. Conduct 3.3.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 26, 2023.

_____
Jeffrey W. Stempel

---

attorney's firm is effectively the client as the attorney attempts to persuade the targeted plaintiff to break up with class counsel that has invested years of effort in a matter and jump into the metaphorical arms of another law firm.

The soliciting attorney is incapable of giving truly disinterested advice and is at least as conflicted as class counsel wishing to keep plaintiffs within the class. Sparacino is not offering neutral and objective litigation counsel any more than financial firms plying seniors with the promise of a "free" steak dinner are offering neutral and detached investment advice.

After certification, notice to class members advises them of both their opt-out rights and ability to seek legal counsel of their choice. They need not be subjected to direct solicitation by self-interested law firms.

# Exhibit A
# (CV)

# JEFFREY W. STEMPEL

**HOME**                                                                                                        **WORK**

14 Canoa Hills Drive                                              William S. Boyd School of Law
Henderson, NV  89052                                       University of Nevada Las Vegas
(702) 501-5746                                                          4505 S. Maryland Parkway
                                                                                            Box 451003
                                                                       Las Vegas, NV  89154-1003
                                                                                        (702) 895-2361
                                                                                  (702) 895-2482 (fax)
                                                                              jeff.stempel@unlv.edu

**BAR:**  Admitted to the Bar:

        Minnesota (1981); Nevada (2001)
        U.S. District Court, District of Minnesota (1983)
        U.S. Court of Appeals, Eighth Circuit (1985)
        U.S. Court of Appeals, Eleventh Circuit (1991)
        U.S. Supreme Court (1992)

**EDUCATION:**  J.D., Yale Law School, 1981

        B.A., University of Minnesota, 1977
        (University of Iowa, 1972-74)
        Summa Cum Laude
        Phi Beta Kappa

**EMPLOYMENT:**

2005 –          **Doris S. and Theodore B. Lee Professor of Law**
                      William S. Boyd School of Law
                      University of Nevada Las Vegas
                      Las Vegas, NV

2003 – 2005   **William S. Boyd Professor of Law**
                      William S. Boyd School of Law
                      University of Nevada Las Vegas
                      Las Vegas, NV

1999 – 2003   **Professor of Law**
                      (Associate Dean for Academic Affairs 2000–2001)
                      William S. Boyd School of Law
                      University of Nevada Las Vegas
                      Las Vegas, NV

1995 – 1999   **Professor of Law**
(Fonvielle and Hinkle Professor of Litigation; 1997–99)
(Associate Dean for Academic Affairs; 1997–98)
Florida State University
College of Law
Tallahassee, FL

1991 – 1995   **Professor of Law**
Brooklyn Law School
Brooklyn, New York

1988 – 1991   **Associate Professor of Law**
Brooklyn Law School
Brooklyn, New York

1986 – 1988   **Assistant Professor of Law**
Brooklyn Law School
Brooklyn, New York

1983 – 1986   **Litigation Associate**
Maslon, Edelman, Borman & Brand
Minneapolis, Minnesota

1981 – 1983   **Law Clerk**
The Honorable Raymond J. Broderick, U.S.D.J.
Eastern District of Pennsylvania
Philadelphia, Pennsylvania

## PUBLICATIONS

**Books**

LEARNING CIVIL PROCEDURE (4th ed. 2022)(with Prof. Brooke D. Coleman, Prof. Steven Baicker-McKee, David F. Herr, Esq. & Dean Michael J. Kaufman)(1st ed. 2013)(2d ed. 2015)(3d ed. 2018) and TEACHER'S MANUAL FOR LEARNING CIVIL PROCEDURE (all editions).

GENERAL LIABILITY COVERAGE: KEY ISSUES IN EVERY STATE (5th ed. 2021)(with Randy J. Maniloff, Esq. and Margo Meta, Esq.)(1st ed. 2011)(2d. ed. 2012)(3d ed. 2015)(4th ed. 2018).

PRINCIPLES OF INSURANCE LAW (5th ed. 2020)(with Prof. Erik S. Knutsen and Prof. Peter N. Swisher) (4th ed. 2011; 3d ed. 2004); INSTRUCTOR'S MANUAL FOR PRINCIPLES OF INSURANCE LAW (5th ed. 2020).

FUNDAMENTALS OF PRETRIAL LITIGATION (11th ed. 2020)(with Prof. Roger S. Haydock and David F. Herr, Esq.)(1st ed. 1985)(2d ed. 1992) (3d ed. 1994)(4th ed. 2000)(5th ed. 2001)(6th ed.

2

2007)(7th ed. 2008)(8th ed. 2011)(9th ed. 2013)(10th ed. 2016) and TEACHER'S MANUAL FOR FUNDAMENTALS OF PRETRIAL LITIGATION (all editions).

FUNDAMENTALS OF LITIGATION PRACTICE (Thomson West 2018)(with Prof. Roger S. Haydock and David F. Herr, Esq.)(also 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017 Editions).

STEMPEL AND KNUTSEN ON INSURANCE COVERAGE (4th ed. 2016)(with Prof. Erik S. Knutsen); *Stempel on Insurance Contracts* (Aspen/WoltersKluwer 2006)(successor edition to *Law of Insurance Contract Disputes* (Aspen 1999)(successor edition to *Interpretation of Insurance Contracts* (1994))(supplemented annually).

MOTION PRACTICE (7th ed. 2016)(with David F. Herr, Esq. and Prof. Roger S. Haydock)(1st ed. 1985)(2d ed. 1991)(3d ed 1998) (4th ed. 2001)(5th ed. 2009)(6th ed. 2012).

LITIGATION ROAD: THE STORY OF *Campbell v. State Farm Insurance* (Thomson West 2008).

LAWYERING:  PRACTICE AND PLANNING (West 1996) (with Profs. Roger S. Haydock, Peter B. Knapp, Ann Juergens & David F. Herr, Esq.).

FOUNDATIONS OF THE LAW (West 1994) (with Prof. Bailey Kuklin) and TEACHER'S MANUAL FOR FOUNDATIONS OF THE LAW (1994).

## Book Chapters

*Insuring Against "War-Lite:" The New Face of the War Exclusion in Insurance*, in PROCEEDINGS, IV CONGRESO INTERNATIONAL DE DERECHO DEL SEGUO (EL SEGURO DE PERSONAS Y LA INTELIGENCIA ARTIFICIAL (Thomson Reuters 2023)(forthcoming)(with Erik S. Knutsen).

*American Exceptionalism: The COVID-19 Insurance Experience*, in AIDA EUROPE RESEARCH SERIES: INSURANCE LAW AND REGULATION ON COVID-19 AND INSURANCE (Maria Luisa Munoz Paredes & Anna Tarasiuk, eds.)(2023)(with Erik S. Knutsen).

*Textual Literalism, Formalism, and Canon-Centric Construction as De Facto – and Defective – Artificial Intelligence* in Abel B. Veiga Copo & Miguel Martinez Munoz, (eds.). PROCEEDINGS, III CONGRESO INTERNATIONAL DE DERECHO DEL SEGUO (EL SEGURO DE PERSONAS Y LA INTELIGENCIA ARTIFICIAL (Thomson Reuters 2022)(with Erik S. Knutsen).

*Bringing Rigor to Textualism Through Artificial Intelligence* in Abel B. Veiga Copo & Miguel Martinez Munoz, eds., Proceedings, III Congreso International De Derecho Del Seguo (El Seguro De Personas Y La Inteligencia Artificial (Thomson Reuters 2022)(with Erik S. Knutsen).

*Hard Battles Over Soft Law: The American Experience with the ALI Liability Insurance Restatement*, in ABEL B. VEIGA COPO (ED.), DIMENSIONES Y DESAFIOS DEL SEGURO DE

3

Responsabilidad Civil (Thomson Reuters 2021).

*Pre-Contractual Utmost Good Faith of the Reinsured*, in Yong Qiang Han & Gregory Pynt (eds), Carter v. Boehm and Pre-Contractual Duties in Insurance Law: A Global Perspective After 250 Years (Hart Publishing 2018).

*Pre-contractual Duties under American Insurance Law* in Yong Qiang Han & Gregory Pynt (eds), Pre-Contractual Duties in Insurance Law: Carter v. Boehm 250 Years On (Hart Publishing 2018)(with Martin Davies)(Hart Publishing 2018).

*Insurance and Climate Change Litigation*, in William C.G. Burns & Hari M. Osofsky (eds.), Adjudicating Climate Change: Sub-national, national, and supra-national approaches (Cambridge 2009).

*Punitive Damages in Bad Faith Actions Against Insurers in the USA: The Impact of* Campbell v. State Farm, in Zeitschrift fur die Gesamte Versicherungswissenschaft, Supplement Jahestagung 2007, p. 250 (2007).

*From Johnstown to New Orleans: Insurance of Environmental Risks in the USA* in Alexander Bruns & Zdenko Grobenski (eds.) Die Versicherung von Umweltrisiken (Insurance of Environmental Risks) 21 (2007).

**Other**

*Note on The Principles of Reinsurance Contract Law (PRICL) and The COVID-19 Health Crisis* (with Kevin Bork, Helmut Heiss, Marta Ostrowska, Ignacio Tirado, Anna Veneziano, Manfred Wandt & Oliver D. William)(2021)(PRICL in cooperation with the International Institute for the Unification of Private Law (UNIDROIT)

Rapporteur, Chapter 4 (Articles 4.1 and 4.2), *Reinsurer Liabilities Excess of Policy Limits and for Extra-Contractual Obligations*, Principles of Reinsurance Contract Law (PRICL), PRICL Project Group in cooperation with the International Institute for the Unification of Private Law (UNIDROIT) (2022)(manuscript)

Rapporteur, Chapter 2 (Articles 2.1.1 through Article 2.4.5), *Duties of the Reinsurer and the Reinsured*, Principles of Reinsurance Contract Law (PRICL), PRICL Project Group in cooperation with the International Institute for the Unification of Private Law (UNIDROIT) (2019)

**Law Review Articles**

*The 2022 New Jersey Insurance Fair Conduct Act and the Incomplete Evolution of Policyholder Protection*, 75 Rutgers L. Rev. 185 (2022).

*Insuring Fortuity – and Intent: A Comment on Professor French's* Insuring Intentional Torts*, 83 Ohio St. L.J. Online (2022)(with Erik S. Knutsen).

4

*Technologically Improving Textualism*, 6 Nev. L.J. Forum, Article 2 (2022).

*A Deeper Dive Into* Nautilus: *Differentiating Insurer Efforts to Recover Defense Costs and Assessing Recoupment in the Wake of the ALI Restatement*, 56 Tort, Trial & Ins. Prac. L.J. 57 (2022).

*What is the Meaning of "Plain Meaning"?*, 56 Tort, Trial & Ins. Prac. L.J. 551 (2021).

*Rejecting Word Worship: An Integrative Approach to Judicial Construction of Insurance Policies*, 90 U. Cin. L. Rev. 259 (2021)(with Erik S. Knutsen).

*Adding Context and Constraint to Corpus Linguistics*, 86 Brook. L. Rev. 389 (2021).

*Hard Battles Over Soft Law: The Troubling Implications of Insurance Industry Attacks on the American Law Institute Restatement* of the Law of Liability Insurance, 69 Cleve. St. L. Rev. 606 (2021).

*The Elastics of Snap Removal: An Empirical Case Study of Textualism*, 69 Cleve. St. L. Rev. 289 (2021)(with Thomas O. Main and David McClure).

*Infected Judgment: Creating Conventional Wisdom and Insurance Coverage Denial in a Pandemic*, 27 Conn. Ins. L.J. 185 (2020)(with Erik S. Knutsen).

*Snap Removal: Concept; Cause; Cacophony; and Cure* 72 Baylor L. Rev. 423 (2020)(with Thomas O. Main and David McClure).

*How to Make a Dead Armadillo: The ALI Consumer Contracts Restatement and the Perils of Compromise*, 32 Loyola Consumer L. Rev. 605 (2020).

*Legal Ethics and Law Reform Advocacy*, 10 St. Mary's J. Leg. Malpractice & Ethics 102 (2020).

*Protecting Auto Accident Victims from the UM/UIM Insurer Identity Crisis*, 26 Conn. Ins. L.J. 1 (2019-2020)(with Erik S. Knutsen).

*Constructing More Reliable Law and Policy:  The Potential Benefits of the Underused Delphi Method*, 87 UMKC L. Rev. 919 (2019)(with Juan Bataller-Grau, Elia Segui-Mas & Javier Vercher-Moll).

*The Techno-Neutrality Solution to Navigating Insurance Coverage for Cyber-Losses*, 122 Penn. St. L. Rev. 645 (2018)(with Erik S. Knutsen).

*Asymmetry and Adequacy in Discovery Incentives: The Discouraging Implications of* Haeger v. Goodyear, 51 Akron L. Rev. 639 (2018).

*Judicial Peremptory Challenges as Access Enhancers*, 86 FORDHAM L. REV. 2263 (2018).

Hyatt v. Franchise Tax Board of California*:  Perils of Undue Disputing Zeal and Undue Immunity for Government Inflicted Injury*, 18 NEV. L.J. 61 (2017).

*An Analytic "Gap":  The Perils of Robotic Enforcement of Payment-by-Underlying-Insurer-Only Language in Excess Insurance Policies*, 52 TORT, TRIAL & INS. L.J. 807 (2017).

*Notes from a Quiet Corner:  User Concerns About Reinsurance Arbitration – and Attendant Lessons for Selection of Dispute Resolution Forums and Methods*, 9 ARB. L. REV. 93 (2017).

*The Irrepressible Myth of* Burnham *– and Its Increasing Indefensibility After* Goodyear *and* Daimler, 15 NEV. L.J. 1203 (2015).

*Enhancing the Socially Instrumental Role of Insurance:  The Emerging Opportunity Presented by Treatment of Breach of the Duty to Defend*, 5 UC-IRVINE L. REV. 587 (2015).

*Making Liquor Immunity Worse: Nevada's Undue Protection of Commercial Hosts Evicting Vulnerable and Dangerous Patrons*, 14 NEV. L.J. 866 (2014)

*Rediscovering the Sawyer Solution:  Bundling Risk for Protection and Profit*, 11 RUTGERS J. L. & PUB. POL'Y 170 (2013).

*Asymetric Dynamism and Acceptable Judicial Review of Arbitration Awards*, 5 PENN. ST. YEARBOOK ON ARB. & MED.  1 (2013).

*Stoney Road Out of Eden:  The Struggle to Recover Insurance for Armenian Genocide Deaths and Its Implications for the Future of State Authority, Contract Rights, and Human Rights*, 18 BUFF. HUM. RTS. L. REV. 1 (2012).

*Tainted Love:  Arbitral Infatuation in Derogation of Sound and Consistent Jurisprudence*, 60 KAN. L. REV. 795 (2012).

*Taking Cognitive Illiberalism Seriously:  Judicial Humility; Aggregate Efficiency; and Acceptable Justice*, 43 LOYOLA L.J. 627 (2012).

*Tending Potted Plants:  The Professional Identity Vacuum in* Garcetti v. Ceballos, 12 NEV. L.J. 703 (2012)(for *The Worst Supreme Court Case Ever?* Symposium).

*Paradox Lost:  The Potential of Restorative Attorney Discipline – with a Cautionary Call for Making Distinctions*, 12 NEV. L.J. 350 (2012).

*In Praise of Procedurally Centered Judicial Disqualification – and a Stronger Conception of the Appearance Standard:  Better Acknowledging and Adjusting to Cognitive Bias, Spoliation, and Perceptual Realities*, 30 REV. OF LITIG. 733 (2011).

Shady Grove *and the Potential Democracy-Enhancing Benefits of* Erie *Formalism*, 44 AKRON L. REV. 907 (2011).

*Misclassifying the Insurance Policy:  The Unforced Errors of Unilateral Contract Characterization*, 32 CARDOZO L. REV. 101 (2010)(with Prof. Hazel Beh).

*The Insurance Policy as Social Instrument and Social Institution*, 51 WM. & MARY L. REV. 1489 (2010)(Winner, 2009 Liberty Mutual Insurance Prize).

*Impeach Brent Benjamin Now!?  Giving Adequate Attention to Failings of Judicial Impartiality*, 47 SAN DIEGO L. REV. 1 (2010).

*Feeding the Right Wolf:  A Niebuhrian Perspective on the Opportunities and Limits of Mindful Core Concerns Dispute Resolution*, 10 NEV. L.J. 472 (2010).

*Refocusing Away From Rules Reform and Devoting More Attention to the Deciders*, 87 DENV. U. L. REV. 3335 (2010).

*The Insurance Policy as Statute*, 41 MCGEORGE L. REV. 203 (2010).

*Completing* Caperton *and Clarifying Common Sense Through Using the Right Standard for Constitutional Judicial Recusal*, 29 REV. LITIG. 249 (2010).

*Playing Forty Questions:  Responding to Justice Roberts' Concerns in* Caperton *and Some Tentative Answers About Operationalizing Judicial Recusal and Due Process*, 39 SOUTHWESTERN L. REV. 1 (2009).

*The Insurance Policy as Thing,* 44 TORT, TRIAL & INS. L.J. 813 (2009).

*Chief William's Ghost: The Problematic Persistence of the Duty to Sit Doctrine*, 57 BUFF. L. REV. 813 (2009).

*The "Other" Intermediaries:  The Increasingly Anachronistic Immunity of Managing General Agents and Independent Claims Adjusters*, 15 CONN. INS. L.J. 600 (2008-2009).

*Mandating Minimum Fairness in Mass Arbitration*, 76 U. CINN. L. REV. 383 (2008).

*Adam, Martin and John:  Iconography, Infrastructure, and America's Pathological Inconsistency About Medical Insurance*, 14 CONN. INS. L.J. 229 (2007–2008).

*Keeping Arbitrations from Becoming Kangaroo Courts*, 8 NEV. L.J. 251 (2007).

*Assessing the Coverage Carnage: Asbestos Liability and Insurance After Three Decades of Dispute,* 12 CONN. INS. L.J. 349 (2006).

*Class Actions and Limited Vision: Opportunities for Improvement Through a More Functional*

*Approach to Class Treatment of Disputes*, 83 WASH. U.L.Q. 1127 (2006).

*Lawyers, Democracy and Dispute Resolution: The Declining Influence of Lawyer-Statesmen Politicians and Lawyerly Values*, 5 NEV. L.J. 479 (2005).

*The Most Rational Branch:* Guinn v. Legislature *and the Judiciary's Role as Helpful Arbiter of Conflict*, 4 NEV. L.J. 518 (2004).

*Arbitration, Unconscionability, and Equilibrium: The Return of Unconscionability Analysis as a Counterweight to Arbitration Formalism,* 19 OHIO ST. J. ON DISP. RES. 757 (2004).

*Not So Peaceful Coexistence: Inherent Tensions in Addressing Tort Law Reform*, 4 NEV. L.J. 337 (2004).

*Malignant Democracy: Core Fallacies Underlying Election of the Judiciary*, 4 NEV. L.J. 35 (2003)

*Forgetfulness, Fuzziness, Functionality, Fairness and Freedom, in Dispute Resolution*, 3 NEV. L.J. 305 (2003).

*The Insurance Aftermath of September 11:  Myriad Claims, Multiple Lines, Arguments Over Occurrence Counting, War Risk Exclusions, the Future of Terrorism Coverage, and New Issues of Government Role*, 37 TORT & INS. L. J. 817 (2002).

*Timeless and Ahead of It's Time:*  Lachs v. Fidelity & Casualty of New York, 2 Nev. L.J. 319 (2002).

*An Inconsistently Sensitive Mind:  Richard Posner's Cerebration of Insurance Law and Continuing Blind Spots of Econominalism*, 7 CONN. INS. L.J. 7 (2000–2001).

*Applying Amended Rule 26(B)(1) in Litigation:  The New Scope of Discovery*, 199 F.R.D. 396 (2001)(with David F. Herr, Esq.).

*Ulysses Tied to the Generic Whipping Post:  The Continuing Odyssey of Discovery "Reform"*, 64 L. & CONTEMP. PROBS. 197 (2001).

*Politics and Sociology in Federal Civil Rulemaking:  Errors of Scope*, 52 ALA. L. REV. 529 (2001).

*Doctors, HMOs, ERISA, and the Public Interest After* Pegram v. Herdrich, 36 TORT & INS. L.J. 687 (2001)(with Nadia von Magdenko, Esq.).

*The Inevitability of the Eclectic:  Liberating ADR from Ideology*, 2000 J. DISP. RES. 247.

*Identifying Real Dichotomies Underlying the False Dichotomy:  Twenty-First Century Mediation in an Eclectic Regime*, 2000 J. DISP. RESOL. 371.

*Theralaw and the Law-Business Paradigm Debate*, 15 J. PSYCH. L. & PUB. POL. 344 (1999).

*Embracing Descent:  The Bankruptcy of a Business Paradigm for Conceptualizing and Regulating the Legal Profession*, 27 FLA. ST. L. REV. 25 (1999).

*Judge-Made Insurance That Was Not on the Menu:*  Schmidt v. Smith *and the Confluence of Text, Expectation, and Public Policy in the Realm of Employment Practices Liability*, 21 W. NEW ENG. L. REV. 283 (1999).

*Domtar Baby:  Misplaced Notions of Equitable Apportionment Create a Thicket of Potential Unfairness for Insurance Policyholders*, 25 WM. MITCHELL L. REV. 769 (1999).

*A Mixed Bag for Chicken Little:  Analyzing Year 2000 Claims and Insurance Coverage*, 48 EMORY L.J. 169 (1999).

*Reason and Pollution:  Construing the "Absolute" Pollution Exclusion in Context and in Light of its Purpose and Party Expectations*, 34 TORT & INS. L.J. 1 (1998).

*A More Complete Look at Complexity*, 40 ARIZ. L. REV. 781 (1998).

*Unmet Expectations:  Undue Restriction of the Reasonable Expectations Approach and the Misleading Mythology of Judicial Role*, 5 CONN. INS. L.J. 181 (1998).

*Contracting Access to the Courts:  Myth or Reality? Bane or Boon?* 40 ARIZ. L. REV. 965 (1998).

*Unreason in Action:  A Case Study in the Wrong Approach to Construing the Liability Insurance Pollution Exclusion*, 50  FLA. L. REV. 463 (1998).

*Continuing Classroom Conversation Beyond the Four Whys*, 29 TOLEDO L. REV. 59 (1998)(with Prof. Bailey Kuklin).

*Beyond Formalism and False Dichotomies:  The Need for Institutionalizing a Flexible Concept of the Mediator's Role*, 24 FLA. ST. L. REV. 949 (1997).

*Bootstrapping and Slouching Toward Gomorrah:  Arbitral Infatuation and the Decline of Consent*, 62 BROOK. L. REV. 1380 (1996).

*Reflections of Judicial ADR and the Multi-door Courthouse at Twenty: Fait Accompli, Failed Overture, or Fledgling Adulthood?*  11 OHIO ST. J. DIS. RES. 297 (1996).

*Two Cheers for Specialized Courts*, 61 BROOK. L. REV. 67 (1995).

*Condescending Contradictions:  Richard Posner and Pregnancy Discrimination*, 46 FLA. L. REV. 193 (1994)(with Prof. Ann C. McGinley).

*Halting Devolution or Bleak to the Future?  Subrin's New-Old Procedure as a Possible Antidote to Drefuss's "Tolstoy Problem"* 46 Fla. L. Rev. 57 (1994).

*Reassessing The Sophisticated Policyholder Defense in Insurance Coverage Litigation* 42 Drake L. Rev. 807 (1993), *reprinted in* 44 Defense Law Journal 189 (1995).

*New Paradigm, Normal Science, or Crumbling Construct?  Trends in Adjudicatory Procedure And Litigation Reform*, 59 Brooklyn L. Rev. 659 (1993).

*Cultural Literacy and the Adversary System: The Enduring Problems of Distrust, Misunderstanding and Narrow Perspective*, 27 Val. U. L. Rev. 313 (1993).

*Sanctions, Symmetry, and Safe Harbors: Limiting Misapplication of Rule 11 by Harmonizing It with Pre-Verdict Dismissal Devices*, 60 Fordham L. Rev. 257 (1991), *reprinted in* 41 Defense Law Journal 239 (1992).

*Reconsidering the Employment Contract Exclusion in Section 1 of the Federal Arbitration Act: Correcting the Judiciary's Failure of Statutory Vision*, 1991 J. Disp. Res. 259.

*The Rehnquist Court, Statutory Interpretation, Inertial Burdens, and a Misleading Version of Democracy*, 22 U. Toledo L. Rev. 583 (1991).

*A Better Approach to Arbitrability*, 65 Tulane L. Rev. 1377 (1991).

*Pitfalls of Public Policy:  The Case of Arbitration Agreements*, 22 St. Mary's L.J. 259 (1990).

*All Stressed Up But Not Sure Where To Go: Pondering the Teaching of Adversarialism in Law School* (Book Review Essay), 55 Brooklyn L. Rev. 165 (1989).

*A Distorted Mirror:  The Supreme Court's Shimmering View of Summary Judgment, Directed Verdict, and the Value of Adjudication*, 49 Ohio St. L.J. 95 (1988).

*Rehnquist, Recusal, and Reform*, 53 Brook. L. Rev. 589 (1987)(winner, 1990 Sanford Levy Award).

*Why Lawyers Should Be Allowed to Advertise:  A Market Analysis of Legal Services*, 58 N.Y.U. L. Rev. 945 (1983)(with Prof. Geoffrey C. Hazard, Jr. and Prof. Russell G. Pearce).

*Electoral Folklore:  An Empirical Examination of the Abortion Issue*, 1 Yale L. and Pol. Rev. 1 (1982) (with William D. Morris, Ph.D.).

*An Assessment of Alternative Strategies for Increasing Access to Legal Services*, 90 Yale L.J. 122 (1980) (with Russell G. Pearce and Patrick W. Shea)(student empirical project).

**Shorter Articles, Commentary, Book Reviews, Bar Publications, Features**

*COVID Coverage Cases Conflict With Insurer Documentation*, Law360 (May 24, 2022)(with Peter Kochenburger and Erik Knutsen).

*How Sonic Boom Risk Informs 'Physical Loss' For COVID Era*, Law360 (April 5, 2022)(with Peter Kochenburger).

*From Quiet to Confrontational to (Potentially) Quiescent: The Path of the ALI Liability Insurance Restatement*, The Brief (Fall 2020) p. 10.

*Judicial Disqualification: Federal-State Differences*, Nevada Lawyer (March 2019), pp. 18-21.

*Professional Responsibility Pitfalls: Often But Not Always Apparent*, Nevada Lawyer (May 2018), pp.8-12.

Comment to the Advisory Committee on the Federal Rules of Evidence (Feb. 16, 2016)(concerning proposed abolition of Rule 803(16)).

Comment to the Reporters of the ALI Restatement on the Law of Liability Insurance (submitted January 20, 2016)(Regarding Council Draft §44)

Franchise Tax Board of California v. Hyatt:  *Questions of Reciprocal Sovereign Immunity – and the Continued Force of* Nevada v. Hall (Hamilton-Griffin on Rights Blog, Dec. 28 & 29, 2015; reprinted on SCOTUSblog)(two-part commentary).

*Policyholder Rights to Independent Counsel,* Nev. Lawyer (Dec. 2015), p. 12.

*Rodney Dangerfield No More:  The American Law Institutes' Coming Restatement of the Law of Liability Insurance*, Nev. Lawyer (Dec. 2015) p. 24.

Comment to the Reporters of the ALI Restatement on the Law of Liability Insurance (submitted November 18, 2015)(Regarding Preliminary Draft No. 1 §19)

Comment to the Reporters of the ALI Restatement on the Law of Liability Insurance (submitted November 18, 2015)(Regarding Preliminary Draft No. 2 §44)

*The Worst Supreme Court Case Ever?  Identifying, Assessing, and Exploring Low Moments of the High Court*, 12 Nev. L.J. 516 (2012)(Introduction to Symposium).

*Insurance in the Courts* (with Randy Maniloff, Esq. & Marc Mayerson, Esq.), Risk Management & Insurance Review (Spring 2006-2010)(semi-annual feature articles summarizing recent insurance litigation and case outcomes).

*Lawyer Professional Responsibility in Litigation*, Nev. Lawyer (Aug. 2007), p. 12.

*The Relationship Between Defense Counsel, Policyholders, and Insurers:  Nevada Rides* Yellow

Cab *Toward "Two-Client" Model of Tripartite Relationship. Are* Cumis *Counsel and Malpractice Claims by Insurers Next?*, NEV. LAWYER (June 2007), p. 20.

*The Status of the Notice/Prejudice Rule for Liability Insurance Claims in Nevada*, NEV. LAWYER (June 2007), p. 10 (with Timothy S. Menter, Esq.).

*Introduction to Symposium: Perspectives on Dispute Resolution in the Twenty-First Century*, 3 NEV. L.J. 191 (2003).

*An Overview of the Sarbanes-Oxley Act and Its Implications for Attorneys*, NEVADA LAWYER (April 2003).

*The Case for an Elected Judiciary in Nevada*, COMMUNIQUE (April 2003).

*Introduction: Favorite Insurance Cases Symposium*, 2 NEV. L.J. 287 (2002).

*Symposium: The Florida Tobacco Litigation -- Fact, Law, Policy, and Significance*, 25 FLA. ST. U. L. REV. 737 (1998)(served as co-chair of Symposium on Florida Tobacco Litigation and Moderator of Panel).

*Recent Case Developments* (Regular Feature, CONNECTICUT INSURANCE LAW JOURNAL 1997–2001).

*Recent Court Decisions*, (Quarterly Feature, JOURNAL OF RISK AND INSURANCE 1997 – 2005).

*Insurance in the Courts* (Regular Feature, Risk Management & Insurance Review (2005-2009).

*Down and Dirty in the Global Village: Jack Webb's Guide To International Commercial Litigation*, 6 J. TRANS. L. 367 (1997)(book review).

*Insurance Coverage and Employment Claims*, TRIAL (Nov. 1996) p. 82.

*Reading Between the Lines: Insurance Contract Interpretation* TRIAL (September 1995) p. 74.

*Interpreting Insurance Policies*, THE COMPLEAT LAWYER (Summer 1995) *Law Notes*, p. 1.

**Treatise Chapters and Supplements**

Lead Editor, NEVADA CIVIL PRACTICE MANUAL (5th ed. 2001)(Supplements 2002, 2003, 2004. 2005, 2006, 2007, 2008, 2009).

Author, Chapter 56 (*Summary Judgment*) and Chapter 30 (*Oral Depositions*) in MOORE'S FEDERAL PRACTICE (3d ed. 1997)(quarterly supplementation Chapter 56, 1998-2012; Chapter 30, 1997-present).

Co-Author (with David F. Herr, Esq.) Chapter 6 (*Documentary Evidence*) and Chapter 10

(*Witnesses in General*) in Hon. Joseph M. McLaughlin, FEDERAL EVIDENCE PRACTICE GUIDE (Matthew Bender 1989).

Author, 1993 Supplements to Wolcott B. Dunham (ed.), NEW YORK INSURANCE LAW (1990)(Chapter 11 (*Regulation of Life Insurance Companies*); Chapter 21 (*Non-Profit Health Care Plans*); Chapter 22 (*Other Life, Annuity, Retirement and Health Entities*; Chapter 26 (*Basic Concepts of Insurance Law*); Chapter 29 (*Representations and Warranties*); Chapter 32 (*Life Insurance Policies*); Chapter 33 (*Life Insurance Claims*); Chapter 34 (*Annuities and Variable Contracts*); Chapter 35 (*Accident and Health Insurance*); Chapter 40 (*Professional Liability Insurance*); Chapter 46 (*Aviation Insurance*); Chapter 48 (*Workers' Compensation Insurance*); Chapter 52 (*Fidelity and Surety Insurance*).

## Additional Teaching

*Comparative Civil Procedure and Dispute Resolution* (Insubria University, Como, Italy): July 2010, July 2011, July 2012, July 2013.

*Comparative Liability Insurance: Chile and the United States* (Adolfo Ibanez University, Santiago, Chile): December 2022.

## Professional Presentations

An Overview of Insurance Regulation and How The Federal Government and the States Regulate Insurance -- A Practical Walk-Through of the System (as part of insurance regulation conferences sponsored by Executive Enterprises, Inc.):  October 1989 (New York); March 1990 (New York); September 25-26, 1990 (New York); March 1991 (New York); September 26-27, 1991 (New York); October 1991 (Chicago); April 1992 (New York); July 13-14, 1992 (New York); July 12-13 1993 (New York).

The Legacy of *Goldberg v. Kelly* (panel moderator at Brooklyn Law School Symposium)(May 1990)(Brooklyn, NY).

Principles of Insurance Contract Interpretation, presented at Insurance Contract and Coverage program sponsored by Executive Enterprises, Inc. (October 1990)(New York)(also served as program co-chair).

How The Sophistication of the Policyholder Can Have an Impact On Coverage, presented at Insurance Contract and Coverage Briefing sponsored by Executive Enterprises, Inc.:  October 1990 (New York); April 15-16, 1991 (New York)(also served as program co-chair).

Workshop on Drafting Effective Policy Language, presented at Insurance Contract and Coverage Briefing sponsored by Executive Enterprises, Inc.:  April 15-16, 1991 (New York)(with David F. Herr, Esq.)(also served as program co-chair).

The Impact of New Amendments to the Federal Rules of Civil Procedure Regarding Discovery and Disclosure; National Association of Securities & Commercial Attorneys (January, 1994); (Captiva, Florida).

The Value and Drawbacks of Specialized Courts, presented at Brooklyn Law School Pomerantz Lecture forum (October 1994)(Brooklyn, New York)(commenting on Pomerantz Lecture by Prof. Rochelle Dreyfuss).

More on Coverage Defenses, presented at Denying Coverage and Related Issues conference sponsored by American Conference Institute:  October 31-Nov. 1, 1994 (New York) and March 8-9, 1995 (New York).

Walking the Tightrope Between Acting in Bad Faith and Vigorously Defending, presented at Bad Faith and Punitive Damages in Insurance Claims conference sponsored by American Conference Institute:  April 6-7 1995 (New York).

Interpretation of Insurance Contracts:  Bad Faith, Duty to Defend, Duty to Settle, Related Issues, presented at Minnesota Insurance Law 1995 (conference sponsored by Minnesota Institute of Legal Education):  April 5, 1995 (Bloomington, Minnesota).

What ADR Can Learn from Litigation, presented at Ohio State University Symposium and Schwartz Lecture (April 7, 1995)(Columbus, Ohio).

How Judges Read Reinsurance Contracts presented at Mealey's Reinsurance in the Real World Conference (June 12-13, 1996)(Palm Beach, Florida).

Arbitrator Training and Panel Discussion at Mediation of 10th Annual Conference for Arbitrators and Mediators sponsored by Florida Dispute Resolution Center, August 24-25, 1996 (Orlando, Florida).

Pleading in Securities Litigation After the Securities Law Reform Act of 1995; National Association of Securities & Commercial Attorneys (Jan. 28, 1997)(Key Largo, Florida).

Insurance Coverage for Employment and Environmental Claims; Minneapolis Club Corporate Counsel (March 5, 1997)(Minneapolis, Minnesota).

How Does General Liability Coverage Manage the Fear of Liability in Today's Litigious Workplace?; Minnesota Institute of Legal Education (March 6, 1997)(Bloomington, Minnesota).

The Reasonable Expectations Doctrine in Florida, 1997 Annual Meeting of the Florida Association of Defense Counsel (Sept. 1997)(St. Petersburg, Florida).

Current Developments in American Insurance Coverage Law (Presented to Lloyd's Nonmarine Underwriters)(November 1997)(London, England).

The Florida Tobacco Litigation (Symposium Organizer and Panel Moderator)(November

14

1997)(Tallahassee, Florida).

The Reasonable Expectations Doctrine in the Third Decade, 1998 Association of American Law Schools Annual Meeting of the Insurance Law Section (January 6, 1998)(San Francisco, CA).

Are Courts and Juries Competent for Addressing Complex Cases?, University of Arizona/Institute for Law and Economics Symposium, Courts on Trial (April 20, 1998)(Tucson, Arizona).

Are Recent Restrictions on Jurisdiction Wise?, University of Arizona/Institute for Law and Economics Symposium, Courts on Trial (April 20, 1998)(Tucson, Arizona).

Insurance Coverage for Year 2000 Liability: An Overview, Presentation for Insurers and Counsel sponsored by Wilson, Elser, Moskowitz, Edelman & Dicker (May 4, 1998)(New York, New York).

Insurance Coverage and Employment Claims, Professional Underwriters Liability Society Symposium (March 5, 1999)(New York, New York).

Current Developments in Legal Ethics: The ABA Ethics 2000 Project, Florida Bar CLE (June 23, 1999)(Boca Raton, Florida).

Professional Responsibility Issues in Gaming Law, International Association of Gaming Attorneys (September 27, 1999)(Nassau, Bahamas).

The Current Status of Multidisciplinary Practice, Continuing Legal Education Program, Southern Nevada Women Attorneys Association (Las Vegas, Nevada, Jan. 2000).

Specialized Business Courts, Testimony before Nevada House-Senate Subcommittee on Improving Nevada Business Climate (Las Vegas, Nevada, Jan. 2000).

Current Issues in Civil Litigation, Conference of Nevada Justices, Judges & Legislators (Las Vegas, Nevada, June 2000).

Current Issues in Cyberlaw, Continuing Legal Education, State Bar of Nevada Annual Meeting (June 2000).

Liability and Insurance Issues Arising for Mold Claims, University of Nevada Las Vegas, Harry Reid Center for Environmental Studies (Las Vegas, Nevada, Oct. 18, 2001).

Professional Responsibility Issues Regarding Attorney's Fees and Liens, Clark County Continuing Legal Education (Las Vegas, Nevada, December 18, 2001).

When Insurance Plays a Role in Your Dispute, State Bar of Nevada Continuing Legal Education, Jan. 24 (Reno, NV) & Jan. 25 (Las Vegas, NV).

15

Perspectives on Dispute Resolution in the 21st Century, William S. Boyd School of Law and Nevada Law Journal Symposium, Jan. 25, 2002 (Las Vegas, NV).

Recent Cases Raising Questions of Professionalism, State Bar of Nevada Leadership Conference (Las Vegas, Nevada, Feb. 22, 2002).

Professional Responsibility and Celluloid Lawyers, (Nevada Inn of Court)(Las Vegas, Nevada, Feb. 25, 2002).

Negotiation Principles and Techniques, Nevada Inns of Court (Reno, Nevada)(March 13, 2002).

The Attorney-Client Privilege and Current Issues in Legal Ethics (Las Vegas, Nevada, July 26, 2002)(Clark County Bar Association CLE).

Legal Ethics for the Gaming Attorney (San Diego, California, September 13, 2002)(Annual Meeting of the International Association of Gaming Attorneys).

An Overview of the Sarbanes-Oxley Act and its Implications for Lawyers (Las Vegas, Nevada, October 29, 2002)(Lionel, Sawyer & Collins Legal Workshop).

Ethical Issues in Gaming Law (Las Vegas, Nevada, November 8, 2002)(State Bar of Nevada CLE).

Legal Ethics: The Year in Review (Las Vegas, Nevada, November 12, 2002 and Reno, Nevada, November 22, 2002)(State Bar of Nevada CLE; Standing Committee on Ethics and Professional Responsibility).

An Overview of the Sarbanes-Oxley Act and its Implications for Corporate Behavior (Las Vegas, Nevada, December 10, 2002)(Northern Trust Workshop).

Judicial Selection: The Case for Appointment over Election (Las Vegas, Nevada, December 10, 2002)((UNLV Center for Democratic Culture Symposium on Judging Judges)(also moderated morning panel).

Legal Ethics and the Gaming Lawyer: The Impact of Sarbanes-Oxley (Las Vegas, Nevada, January 9, 2003)(2003 American Gaming Summit).

The Press and the Courts: Friend or Foe? (Las Vegas, Nevada, February 11, 2003)(Clark County CLE and Boyd School of Law)(moderator).

Diminished Value Claims and Auto Insurance: *Siegle v. Progressive* in Context (Miami Beach, Florida, February 21, 2003)(ABA Trial Tort & Insurance Law Section Committee on Insurance Coverage).

Remedies in Dispute Resolution (Las Vegas, Nevada, March 25, 2003)(Nevada Inn of Court and State Bar of Nevada CLE).

The Emerging Common Law of Arbitration Unconscionability (Hamden, Connecticut, April 15, 2003)(Yale-Quinnipiac Center on Dispute Resolution).

Tort Reform: Issues of Law and Policy (Las Vegas, Nevada, April 25, 2003)(Center for Democratic Culture and Boyd School of Law)(moderator).

An Update on Lawyer Regulation Under the Sarbanes-Oxley Act (Las Vegas, Nevada, May 9, 2003)(National Association of Former United States Attorneys)

Recent Lawyer and Business Regulation Affecting the Gaming Industry (Las Vegas, Nevada, May 23, 2003)(Nevada Association of Certified Public Accountants)(panel discussion).

Professional Responsibility Pitfalls for Young Lawyers (Las Vegas, Nevada, August 7, 2003)(Clark County Bar Association).

The Sarbanes-Oxley Act After One Year: Implications for Attorneys (Las Vegas, Nevada, August 21, 2003)(Clark County Bar Association).

Issues Facing Lawyers Under Sarbanes-Oxley (Las Vegas, Nevada, Sept. 23, 2003)(Association of Gaming Attorneys)

Principles of Principled Negotiation (Las Vegas, Nevada, November 3, 2003)(Western Interstate Child Support Enforcement Council; 20th Annual Training Conference).

Negotiation Workshop (Las Vegas, Nevada, November 3, 2003) (Western Interstate Child Support Enforcement Council; 20th Annual Training Conference).

Ethical Dilemmas:  What=s an Insurer to Do? (New York, New York, December 5, 2003)(Defense Research Institute).

Ethics and Civility: Nevada Ethics 2000 Committee Recommendations Concerning Professional Conduct (Las Vegas, Nevada, December 10, 2003)(Nevada Inn of Court).

Recoupment of Defense Costs (Santa Monica, California, Feb. 20, 2004)(ABA Tort Trial and Insurance Section).

An Insurer's Contractual "Right to Defend": The Tripartite Relationship and "Independent Counsel" (Tucson, Arizona, March 5, 2004)(ABA Litigation Section Insurance Coverage Committee).

The Legacy of *Brown v. Board* (Las Vegas, Nevada, March 10, 2004)(Nevada Inn of Court)

Corporate Ethics: How to "Travel Straight" and "In a Good Direction" and Still Survive and Thrive in the Corporate World (Panel Discussion)(Reno, Nevada, April 29, 2004)(District of Nevada Judicial Conference).

17

Legal Ethics: The Year in Review (Reno, Nevada, Nov. 5, 2004)

Legal Ethics: The Year in Review (Las Vegas, Nevada, Nov. 19, 2004).

The Statute of Liberty -- or Not?  Independent Counsel and the Tripartite Relationship (New York, Dec. 3, 2004)(DRI Insurance Coverage Symposium).

A Problem from Hell: Asbestos Liability and Insurance Coverage (Association of American Laws Schools Annual Meeting, Section on Insurance Law, San Francisco, California, January 7, 2005).

Is Successor Liability Insured? (ABA Tort, Trial & Insurance Section, Mid-Year Meeting, Phoenix, Arizona, Feb. 18, 2005).

Civility: An Overview (State of Nevada Board of Regents Meeting, March 11, 2005, Las Vegas, Nevada).

Class Actions and Limited Vision: Opportunities for Expanding Class Treatment Through a More Functional Approach to Class Actions (Institute for Law and Economic Policy, Symposium, Lake Las Vegas, Nevada, April 8, 2005).

Coverage for Asbestos-Related Liability: Was the Insurance Industry Unfairly Surprised? (Symposium, AAsbestos: Anatomy of a Mass Tort@; University of Connecticut School of Law, Hartford, Connecticut, Nov. 2, 2005).

Nevada Legal Ethics: The Year in Review (State Bar of Nevada Continuing Legal Education, Las Vegas, Nevada, Nov. 18, 2005).

*Campbell v. State Farm Insurance*: How a Roadside Collision Spurred 25 Years of Litigation and Changed American Law of Evidence, Legal Ethics, Punitive Damages, and Constitutional Law (Georgia-Augusta University, Goettingen, Germany, Nov. 22, 2005).

From Johnstown to New Orleans: Insurance of Environmental Risks in the USA (Symposium, Insurance of Environmental Risks, Competence Center on Insurance Science, Goettingen, Germany, Nov. 23, 2005)

The American Insurance System: An Agenda for Research and Reform (Dickinson School of Law, Pennsylvania State University, Carlisle, Pennsylvania, Dec. 5, 2005).

Insurance Coverage Coverage Issues in Nevada (National Business Institute, Las Vegas, Nevada, Oct. 12, 2006).

Nevada Legal Ethics:  The Year in Review (State Bar of Nevada, Reno, Nevada, Nov. 17, 2006 & Las Vegas, Nevada, Dec. 1, 2006).

18

Legal Ethics and Ex Parte Contacts (Southern Nevada Inn of Court, Las Vegas, Nevada, Jan. 9, 2007).

Keeping Arbitrations from Becoming Kangaroo Courts (Boyd School of Law-UNLV Symposium, *The 75th Anniversary of the Federal Arbitration Act*, Las Vegas, Nevada, Jan. 26, 2007).

Punitive Damages in the United States:  History, Controversy and Recent Developments (Universita Commerciale Luigi Bocconi, Milan, Italy March 5, 2007).

Insurance Punitive Damages After *Campbell v. State Farm Insurance* (German Insurance Science Association Annual Meeting, Stuttgart, Germany, March 8, 2007).

Mandating Minimal Fairness in Mass Arbitration (University of Cincinnati Corporate Law Center Symposium, *Twenty Years aft*er McMahon, Cincinnati, Ohio, March 30, 2007).

Litigation and Its Unanticipated Consequences: *Campbell v. State Farm* and the Evolving American Law of Punitive Damages (Litigation and Its Discontents Panel of the Annual Meeting of the Law and Society Association, Humboldt University, Berlin, Germany, July 26, 2007).

Ghost-Lawyering (Nevada Legal Services 25th Anniversary Symposium, October 17, 2007, Las Vegas).

Ethical Challenges for New Practitioners (Boyd School of Law Alumni CLE Symposium, November 2, 2007, Las Vegas).

Legal Ethics in Nevada:  The Year in Review (State Bar of Nevada, Nov. 16, 2007, Las Vegas and Nov. 30, 2007, Reno).

Insurance Bad Faith and Public Policy:  *Campbell v. State Farm* and the Evolving American Law of Punitive Damages (Nov. 19, 2007)(Osher Lifelong Learning Institute, Las Vegas).

Recent Developments in Nevada Legal Ethics (Lionel Sawyer & Collins Continuing Legal Education, Nov. 28, 2007, Las Vegas).

The "Other" Intermediaries:  The Increasingly Anachronistic Immunity of Managing General Agents and Independent Claims Adjusters (Association of American Law Schools Section on Insurance Law, New York, Jan. 5, 2008).

The Liability Regime of "Downstream" Insurance Intermediaries and Sureties (March 31, 2008)(Osher Lifelong Learning Institute, Las Vegas).

*Exxon*:  Supreme Court Rules on Preemption and Punitive Damages (July 17, 2008)(ALI-ABA Audio Webcast panel discussion).

*Campbell v. State Farm*:  Lessons for Lawyers (Kentucky Justice Association Annual Meeting,

September 5, 2008).

Current Issues in Professional Responsibility (Lionel, Sawyer & Collins Continuing Legal Education program, Tahoe City, California, October 4, 2008).

Ethical Issues for Lawyers in Construction Defect Litigation (BVR Comprehensive Construction Defect Claims & Coverage SuperConference (Las Vegas, NV, Nov. 6, 2008).

Nevada Legal Ethics:  The Year in Review (State Bar of Nevada, Las Vegas, NV, Nov. 19, 2008 and Reno, NV, Dec. 5, 2008).

Construing Insurance Policies:  Four Views of the Cathedral (Insurance Law Section program, AALS Annual Meeting, Jan. 9, 2009, San Diego, CA).

Diversity in the Legal Profession (Moderator/Panelist)(Boyd School of Law, Las Vegas, NV, Feb. 5, 2009).

Motion Mania:  What Do Judges (and Lawyers) Really Want in Motion Practice? (Las Vegas, NV, McKibben Inn of Court, Feb. 10, 2009).

How the Bar and Law School Can Work Together to Prepare New Lawyers for Practice in Nevada (Panelist)(Boyd School of Law, Las Vegas, NV, March 27, 2009).

Quadrangulating Insurance Policy Meaning (McGeorge School of Law, Sacramento, CA, April 10, 2009).

Recent Developments in Judicial Disqualification and Judicial Conduct (Boyd School of Law Alumni CLE, Las Vegas, NV, Oct. 16, 2009).

Preserving Points for Appeal in Opening Statements and Closing Arguments:  Objections and Plain Error (Howard McKibben Inn of Court, Las Vegas, NV, Nov. 10, 2009).

Legal Ethics:  The Year in Review (State Bar of Nevada CLE, Las Vegas, NV, Nov. 12, 2009)(simulcast to Reno, NV).

Professional Responsibility Issues for Board Counsel (Federation of State Medical Board Counsel, Las Vegas, NV, Nov. 13, 2009).

An Update on Legal Ethics (Lionel, Sawyer & Collins, Las Vegas, NV, Nov. 19, 2009).

Legal Ethics – 2009:  Highlights and Emerging Issues (State Bar of Nevada CLE, Las Vegas, NV, Dec. 21, 2009)(simulcast to additional locations).

The New Nevada Code of Judicial Conduct (Washoe County Bar Assn., Reno, NV, Feb. 10, 2010).

Bankruptcy and Dispute Resolution (Saltman Center Conference on Conflict Resolution and the Economic Crisis, Las Vegas, NV, Feb. 13, 2010).

Quadrangulating Insurance Coverage:  Four Views of the Cathedral (AALS Contracts Section Conference, Las Vegas, NV, Feb. 27, 2010).

Class Actions and Punitive Damages In the United States (Insubria University, Como, Italy, July 18, 2010).

Merit Selection of Judges (UNLV, September 15, 2010)(moderator).

Avoiding Ethical Pitfalls:  Examples from Across the Nation (Boyd School of Law, October 4, 2010).

The Insurance Policy as Social Instrument and Social Institution (Liberty Mutual Prize Lecture, Boston College, Newton, MA, Oct. 6, 2010).

Electing or Appointing Judges (Boyd School of Law, October 22, 2010)(moderator),

Avoiding Ethical Pitfalls:  Examples from Across the Nation (Lionel Sawyer & Collins CLE Program, Las Vegas, November 4, 2010)

Legal Ethics:  The Year in Review (Las Vegas, Dec. 3, 2010).

Current Issues in Judicial Disqualification:  Assessing the Landscape Post-*Caperton*, *Citizens United* and the 2007 ABA Model Code of Judicial Conduct, AALS Section on Litigation (co-sponsored by Sections on Civil Procedure and Professional Responsibility) (San Francisco, Jan. 7, 2011).

Current Issues in Legal Ethics (State Bar of Nevada/Boyd School of Law CLE)(Las Vegas, Nev., Feb. 4, 2011).

Fundamentals of Litigation Practice:  Drafting Effective Pleadings (ThomsonReuters (West) National Webinar, May 19, 2011).

Fundamentals of Litigation Practice:  Scope of Discovery (ThomsonReuters (West) National Webinar, June 16, 2011).

*Carrigan v. Ethics Commission*:  The U.S. Supreme Court Rescues Nevada from Temporary Insanity (Southern Nevada Association of Women Attorneys, Las Vegas, Nevada, July 7, 2011).

Fundamentals of Litigation Practice:  Sanctions:  Bringing and Avoiding Sanctions Motions (ThomsonReuters (West)( National Webinar, Nov. 17, 2011).

Recent Developments in Legal Ethics (Lionel, Sawyer & Collins CLE Program, Las Vegas, Nov. 17, 2011).

Fundamentals of Litigation Practice:   Post-Trial Motions (ThomsonReuters(West)(National Webinar, Dec. 15, 2011).

Legal Ethics:  The Year in Review (State Bar of Nevada CLE Program, Las Vegas, Dec. 15, 2011).

Politics, Ethics, and the Supreme Court:  The Present and Future of Supreme Court Recusal (Presenter and Panelist)(Association of American Law Schools Annual Meeting, Washington, DC, Jan. 6, 2012).

Fundamentals of Litigation Practice:  Use and Discovery of Experts (ThomsonReuters(West) (Feb. 16, 2012).

Fundamentals of Litigation Practice:  Effective Use of Interrogatories and Document Requests (ThomsonReuters(West)(March 15, 2012).

Saints & Sinners:  Ethical Issues in Marketing Legal Services (ABA Business Law Section Annual Meeting)(Las Vegas, NV, March 22, 2012).

Power Grab:  The Supreme Court's Inconsistent and Result-Oriented Arbitration Jurisprudence (Law & Society Annual Meeting, Honolulu, Hawaii, June 5, 2012).

Guido Calabresi:  The Establishment Iconoclast (Adolfo Ibanez University, Santiago, Chile August 10, 2012).

Managing the Arbitration Process for Efficiency & Economy Following the Preliminary Hearing (Training Program conducted for the American Arbitration Association, Las Vegas, Nevada, November 7, 2012)

Unfinished Business:  When Lateral Hires Become Toxic (Lionel Sawyer & Collins CLE, Las Vegas, Nevada, December 6, 2012)(with Paul Hejmanowski, Esq. and A. William Maupin, Esq.).

Notice and Insurance:  Reconsidering Distinctions Between Occurrence and Claims-Made Policies (Lionel Sawyer & Collins CLE Presentation, Las Vegas, Nevada, December 6, 2012).

Unfinished Business:  When Lateral Hires Become Toxic (State Bar of Nevada Ethics Year in Review 2012, Las Vegas, Nevada, December 10, 2012)(with Paul Hejmanowski, Esq. and A. William Maupin, Esq.) .

Ameliorating Exceptionalism (Association of American Law Schools Annual Meeting – Health Law Section Meeting, New Orleans, Louisiana, January 5, 2013).

The Duties and Liabilities of the Insurance Broker (ABA Tort Trial & Insurance Practice Section Insurance Coverage Litigation Committee Midyear Program, Phoenix, Arizona, Feb. 15, 2013).

Aysmetric Dynamism and Acceptable Judicial Review of Arbitration Awards (Penn State Yearbook on Arbitration and Mediation Symposium on The Role of the Courts:  Judicial Review of Arbitral Awards and Mediated Settlement Agreements, Carlisle, Pennsylvania, Feb. 22, 2013).

Rediscovering the Sawyer Solution:  Bundling Risk for Protection and Profit (Rutgers School of Law-Camden Conference on Fragmented Risk, Camden, New Jersey, March 1, 2013).

Popular Culture and Professionalism (State Bar of Nevada CLE, Las Vegas, Nevada, March 8, 2013).

Extraordinary Pretrial Remedies (State Bar of Nevada CLE, Las Vegas, Nevada, April 18, 2013).

The Insurance Policy as Social Instrument (Aldolpho Ibanez University, Santiago, Chile, June 20, 2013).

Popular Culture and Professionalism (State Bar of Nevada/UNLV CLE, Las Vegas, Nevada, October 5, 2013).

Professional Responsibility:  Cautionary Trails From Across the Country (Lionel, Sawyer & Collins CLE, Las Vegas, Nevada, Nov. 21, 2013).

Conflicts of Interest:  Identifying the Client and the Duties (Panel Discussion at Lionel, Sawyer & Collins CLE, Las Vegas, Nevada, Nov. 21, 2013).

Basics of Insurance Coverage (CLE, State Bar of Nevada, Las Vegas, Nevada, Jan. 15, 2014).

Hot Topics in Insurance (CLE, State Bar of Nevada Annual Meeting, Newport Beach, California, July 11, 2014).

Insurer Breach of the Duty to Defend:  What Consequences in the USA?  (Jornadas de Reccho Comercial (Chilean Commercial Law Congress), Adopho Ibanez University, Santiago, Chile, August 28, 2014).

Enhancing the Socially Instrumental Role of Insurance:  Too Often Missing the Opportunity Presented by Breach of the Duty to Defend (University of California-Irvine Symposium on The Relationship between Insurance and Legal Regulation:  Normative, Theoretical and Empirical Perspectives), Irvine, California, September 19, 2014).

Insurer Breach of the Duty to Defend:  What Consequences?  What Direction? (CLE, Lionel, Sawyer & Collins, Las Vegas, Nevada, Dec. 4, 2014).

Super-Failure of Mandated Disclosure:  The Case of Insurance (Tenth International Conference on Contracts, Contracts Section of the Association of American Law Schools, Las Vegas, Nevada, Feb. 28, 2015)

Aiding and Abetting:  The Supreme Court's Unfortunate Encouragement of Police Misconduct (Joint Program of the Federalist Society and the Black Law Students Association on Police Misconduct, Las Vegas, Nevada, April 10, 2015)

Things You Don't Know Can Hurt You.  Here Are Twelve of Them (Clark County Bar Association CLE Program in Lawyer Professional Responsibility, Las Vegas, Nevada, June 25, 2015).

Police Misconduct Litigation in the USA (Adolpho Ibanez University, Santiago, Chile, Aug. 6, 2015).

Insurance Intermediaries in the United States (University of Connecticut/Renmin Law School Conference *The U.S. & China: New Insurance Products, New Regulatory Challenges*, Oct. 9, 2015, Hartford, Connecticut).

Ethical Challenges in ADR (State Bar of Nevada Section on Alternative Dispute Resolution CLE, Psychology of Negotiation, Mediation Ethics and Appellate Court Practice Tips, Nov. 6, 2015, Las Vegas, Nevada).

Hearsay and Its Discontents: The Ancient Documents Exception as a Window (Boyd Law Alumni State Bar of Nevada CLE, Reno, Nevada, January 14, 2016).

The Ethics of Claims Handling (Defense Research Institute, Insurance Coverage and Claims Institute, Chicago, Illinois, April 7, 2016)

Excess Insurance, Attachment of Liability, and Current Controversy in the USA Surrounding Exhaustion of Underlying Limits:  The Clash between Purpose, Policy Text and Public Policy (Seminar on International Development of Insurance Law in China, Dalian, China, June 3, 2016)

Excess Insurance, Attachment of Liability, and Current Controversy in the USA Surrounding Exhaustion of Underlying Limits:  The Clash between Purpose, Policy Text and Public Policy (Beihang University, Beijing, China, June 6, 2016)

Implicit Bias, Cognitive Error & Judicial Recusal (Institute for the Advancement of the American Legal System Symposium on Best Practices for Ensuring Fairness, Transparency, and Timeliness in Recusal Practices for State Court Judges, Colorado Springs, Colorado, November 4, 2016)

Comments From a Quiet Corner:  Current Concerns Regarding Reinsurance Arbitration (Penn State Symposium, The Issues in Arbitration, State College, Pennsylvania, Feb. 3, 2017)(by electronic connection)

Legal Ethics and Law Reform Advocacy (Rutgers Workshop on Insurance, Camden, New Jersey, Oct. 20, 2017)

Judicial Peremptory Challenges and Increasing Access to Justice (Fordham Stein Center Civil

Procedure Colloquium, New York, N.Y., Oct. 27, 2017)

What Went Wrong?  A Look At Professional Responsibility Pitfalls From Across the Nation (Nevada State Bar CLE:  Ethics:  The Year in Review, Las Vegas, Nevada, Nov. 7, 2017)

The American Law Institute Restatement (of the Law of Liability Insurance) and Its Discontents (Central University of Finance and Economics, Beijing, China, Dec. 11, 2017)

The Duty to Defend in USA Insurance Law (Central University of Finance and Economics, Beijing, China, Dec. 11, 2017)

The Restatement of the Law of Liability Insurance:  Is The Sky Falling? (ABA Litigation Section Insurance Coverage Litigation Committee CLE Seminar, Tucson Arizona, March 1, 2018)(Plenary Session Panel Discussion)

Rejecting Word Worship: An Integrative Approach to Construction (ALI Early Career Scholars Medal Conference, Washington, D.C., April 6, 2018)(with Erik S. Knutsen)

The Techno-Neutrality Solution to Navigating Insurance Coverage for Cyber-Losses (Penn State Law Review Symposium/CLE: *Insuring Against Cyber Risk: The Evolution of an Industry*, Pittsburgh, PA and State College, PA, April 13, 2018)(with Erik S. Knutsen)

Hard Battles Over Soft Law:  The Substantive and Political Implications of Controversy Surrounding the American Law Institutes *Restatement of the Law of Liability Insurance* (Joint Conference of the Asia-Pacific Risk and Insurance Association and the Insurance Risk and Finance Research Centre-Nanyang Technological University, Singapore, July 31, 2018)

The RLLI and Insurer Settlement Obligations (University of Connecticut Insurance Law Center Symposium: The Restatement of the Law of Liability Insurance: The World Turned Upside Down?, Hartford, Connecticut, April 5, 2019)

The RLLI and Contract Interpretation:  Too Much Fuss About Too Little (Rutgers Center for Risk and Responsibility Symposium: Was the World Turned Upside-Down?  The ALI Restatement of the Law, Liability Insurance, Camden, New Jersey, April 12, 2019)

What Do We Meaning by "Plain Meaning"?  (American College of Coverage Counsel Annual Meeting and Symposium, Chicago, Illinois, May 9, 2019)

The Elastics of Snap Removal: Judicial Traits and Jurisprudential Divide (Fifth Annual Civil Procedure Workshop, Austin, Texas, October 25, 2019).

The Elastics of Snap Removal: Judicial Traits and Jurisprudential Divide (Bay Area Civil Procedure Forum, San Francisco, CA, November 19, 2019).

Legal Ethics and Law Reform Advocacy (19th Annual Symposium on Legal Malpractice & Ethics, St. Mary's University School of Law, San Antonio, TX, January 24, 2020).

Testing the Troublesome Surplusage Canon (6th Annual Symposium on Law & Corpus Linguistics, BYU School of Law, Provo, Utah, February 6, 2020)(with Lawrence Solan)

Alternatives to Corpus Linguistics (Symposium on Data-Driven Interpretation)(Brooklyn Law School, March 6, 2020)(Moderator/Discussant)

Venue Issues in Covid-19 Coverage Litigation (American College of Coverage Counsel virtual symposium, May 14, 2020)(Panelist)

Mock Reinsurance Arbitration (*Commercial Lines Insurance v. NatCatGmbH*)(demonstrating application of Principles of Reinsurance Law ("PRICL"), AIDA Europe Annual Meeting, Zurich, Switzerland, September 17, 2020)(via Zoom)(Presenter/Counsel)

Hard Battles Over Soft Law: The Politics of Law Reform in the USA and the ALI Restatement of Liability Insurance, Il Congreso International de Derecho de Seguros "Dimensiones y desaflos del Seguro de responsibildad civil" XL Aniversario de la Ley del Contrato del Seguro (October 7, 2020, Madrid, Spain)(via remote connection).

Avoiding Ethical Trapdoors in Gaming Law or Finding Your Way Out of Tunnels: Exploring Real World Scenarios, 2020 Gaming Law Conference (Las Vegas, Nevada, Nov. 5, 2020)(with Anthony Cabot, Esq.)(via remote connection)

COVID-19: Challenges for (Re-)Insurance Law – A Transnational Perspective (Zurich, March 25, 2021)(conducted via Zoom)(Inaugural ATILA Transatlantic Lecture on Insurance Law, European Law Institute Insurance SIG series Transatlantic Lectures on Insurance Law)(Panelist/Organizer)

A U.S. Perspective on COVID-19 Claims Following Fortunes and Settlements (AIDA International Reinsurance Working Party, Buenos Aires, May 11, 2021)(conducted via Zoom)

Liability & Insurance concerning Artificial Intelligence: Recent trends in US and EU Law (Zurich, September 23, 2021)(conducted via Zoom)(Panelist/Organizer)(European Law Institute Insurance SIG series Transatlantic Lectures on Insurance Law)

Reinfection: Examining Judicial Traits and Estimating Outcomes as Covid-19 Cases Gain Appellate Review (Chicago, Illinois; September 23, 2021)(American College of Coverage Counsel Annual Meeting)

Dictionary Use and Textual Literalism as De Facto – and Defective – Artificial Intelligence (III Congreso International de Derecho del Seguro, Madrid, Oct. 6, 2021)(via Blackboard)(with Erik S. Knutsen)

Bringing Rigor to Textualism Through Artificial Intelligence (III Congreso International de Derecho del Seguro, Madrid, Oct. 6, 2021)(via Blackboard)(with Erik S. Knutsen)

Professional Responsibility Aspects of Mentoring (Howard McKibben Inn of Court, Las Vegas, NV  February 8, 2022)(via Zoom).

(North) American Exceptionalism: The Auto Liability Version (Presentation with Erik S. Knutsen)(European Law Institute Insurance SIG series Transatlantic Lectures on Insurance Law, March 10, 2022).

Will It Be That New a Day in New Jersey?  Assessing the IFCA (Rutgers Law School Center for Risk and Responsibility, April 13, 2022)(via Zoom).

The Combative War Exclusion: Past, Present, Future; Theory and Practice (Presentation with Erik S. Knutsen)(European Law Institute Insurance SIG series Transatlantic Lectures on Insurance Law, September 29, 2022).

The New Face(s) and Future(s) of War and Related Exclusions (Presentation with Erik S. Knutsen)(IV Congreso Internacional De Derecho Del Seguro)(Universidad Pontificia Comillas, Madrid, October 14, 2022).

U.S. Insurance Law: Structural Features and Current Controversies (Universidad Pontificia Comillas, Escuela de Derecho, Madrid, Oct. 17, 2022).

U.S. Insurance Law and Politics: The Influence of Structural Factors on COVID-19 Coverage Claims (Law & Society Association Annual Meeting, San Juan, June 1, 2023).

Fissures and Fault Lines in U.S. Insurance Law: The Impact of Dual Symptoms and Multiple Forums Creating Divergent Outcomes (European Law Institute Annual Meeting - Insurance SIG Program, Vienna, Austria, September 8, 2023)


**MEMBERSHIPS:**

>Academy of Insurance (2015 – present)
>American Law Institute (1991 - present)
>>Adviser, *Principles of the Law of Liability Insurance* (2011-2018)
>American Bar Association (1982 -present).
>>(Winner, 2017 Robert B. McKay Law Professor Award of the Tort Trial and Insurance Practice Section)
>>Section on Business Law
>>Section on Legal Education and Admission to the Bar
>>Section on Litigation
>>Tort Trial & Insurance Practice Section;
>American Bar Foundation (2015 – present)
>American College of Coverage Counsel (2015 – present)
>American Judicature Society (1984 - present)
>American Association for Justice (2002 – present)
>Association of the Bar of the City of New York (1988 - present);

27

Clark County Bar Association (2001– present)
Defense Research Institute (2003 – present)
European Law Institute (2018 – present)
     Insurance SIG (2019 – present)
Project Group, Principles of Reinsurance Contract Law (2015 – present)
Risk Insurance Management Society (2002 – present)
State Bar of Nevada
     Nevada Judicial Code Commission (2008 – 2010)
     Standing Committee on Ethics and Professionalism (2000 – 2010)(Chair, 2008 – 2010)
     Nevada Ethics 2000 Commission (2003 - 2006)

## LAW SCHOOL ACTIVITIES:

Editor, YALE LAW JOURNAL, Volume 90 (Member, Volume 89).
Director, Thomas Swan Barristers' Union, 1980–81.
     Recipient, John Fletcher Caskey Prize, Spring, 1980.
Co-founder, YALE LAW AND POLICY REVIEW.

# **Exhibit B**
# (List of Cases)

**Jeffrey W. Stempel**
**Prior Expert Testimony**

In chronological order, the following are cases in which I have testified as an expert at trial, hearing, or by deposition.

1. *Anand Diamonds v. Underwriters at Lloyd's*, Civ. No. ___ (Los Angeles County trial court)(Deposition in Los Angeles, CA, Nov. 1995).

2. *Hedback v. American Family Ins. Co.*, Bky No. 3-94-3419, Adv. No. 3-95-049 (U.S. Bankruptcy Court, D. Minn. 1997)(Deposition in Tallahassee, FL, March 1996).

3. *Village Homes at Country Walk v. American Reliance Insurance Co.*, Civ. No. 93-08494 CA 21 (11th Judicial Circuit, Dade Co., Fla.)(Deposition in Miami, FL, Jan. 1996)(Trial Testimony in Miami, October 1996).

4. *In re Consolidated "Nonfiling" Insurance Fee Litigation a/k/a Elaine M. Jordan v. Avco Financial Services of Ga.*, Civil No. 96-GL-1557-N (Northern Dist. of Ala.)(Deposition in Birmingham, Ala., January 1998).

5. *Charleston v. Floridan Company, Inc. and DuPont Trucking, Inc. v. Continental Casualty Company*, Case No. 94-1153-CAB (Circuit Court, Gadsden Co., FL)(Deposition in Tallahassee, FL, April 1998).

6. *Mahone v. Alabama Power Co.*, Case No. CV 95-2683 (Circuit Court of Jefferson County, Ala.)(Deposition in Birmingham, AL, Jan. 1999).

7. *Paratransit Ins. Co. v. Travelers Ins. Co.*, Civ. No. ____ (Orange County Dist. Court, Orlando, FL)(Deposition in Tallahassee, FL, Feb. 1999).

8. *Hillery v. Connecticut Indemnity Co.*, Civil No. ____ (Hillsborough County Dist. Ct., Tampa, Fla.)(Deposition in Tampa, Fla., March 1999).

9. *Travelers Ins. Co. v. C.M. Whalen, et al.*, Civil No. 98-4121, District of Maryland, Baltimore, Maryland)(Deposition in Baltimore, MD Sept. 1999).

10. *Woods v. Doctors Co.*, Civ. No. _____ (Second Judicial District, Washoe County, Reno, Nev.)(Deposition in Las Vegas, Nev., June 2000)(Trial testimony recorded on videotape in Reno, Nev., July 2000).

11. *Dorries v. State Farm Ins. Co.*, Civil No. ___ (Circuit Court, St. Clair County, Illinois)(Deposition in Edwardsville, Ill., June 2000).

1

12. *Ernest Grace, et al. v. Atlantic Insurance Co.*, Case No. 99-11-CIV-J-20A (Middle District of Florida, Jacksonville, Fla.)(Deposition in Jacksonville, Fla. July 2000)(Trial Testimony in Jacksonville, Florida, January 2001).

13. *Anheuser-Busch v. Sphere Drake*, State of Florida, County of Orange (Trial testimony in Orlando, Florida, November, 2000).

14. *Black v. Pinsoneault*, State of Nevada, Eight Judicial District (Deposition in Las Vegas, Nevada, September 2000).

15. *Seyfart v. Magliarditi, et al.*, State of Nevada, Eight Judicial District (Deposition in Las Vegas, Nevada, July 2001).

16. *Brenner v. LePome*, State of Nevada, Eight Judicial District (Deposition in Las Vegas, Nevada, September 2001)(Trial testimony in Las Vegas, Jan. 15, 2002).

17. *Daley v. Hernandez, et al.*, Attorney Lien of Noel Gage, Esq., State of Nevada, Eight Judicial District (Hearing Testimony in Las Vegas, Nevada, December 2001).

18. *Resort at Summerlin v. Steadfast Insurance Co.*, No. CV-S-01-1342, District of Nevada (Deposition in Las Vegas, Nevada, February 2002).

19. *Great American Insurance Co. v. Florida Rock Co.*, State of Florida, Duval County (Deposition in Las Vegas, NV, May 2002).

20. *Kraft Foods v. American Employers Insurance Co.*, State of Texas, Civil No. __ (Deposition in Overland Park, Kansas, June 2002).

21. *Squires v. UNUMProvident Ins. Co.*, District of Nevada (Deposition in Las Vegas, Nevada, June 2002).

22. *Issurdutt v. Hymanson*, State of Nevada, Eighth Judicial District (Deposition in Las Vegas, Nevada, July 2002).

23. *State of Minnesota v. Travelers Ins. Co.*, State of Minnesota, Ramsey County (Deposition in Minneapolis, Minnesota, December 2002).

24. *Coisman v. Florida Sheriff=s Self-Insurance Fund*, State of Florida, Brevard County (Deposition in Miami, Florida, February 21, 2003).

25. *Raytheon v. Continental Insurance Co.*, District of Massachusetts, Boston, Massachusetts (Deposition in Boston, March 12, 2003).

26. *SMI-Owen Steel Co. v. St. Paul Fire & Marine Ins. Co.*, No. G-00149 (Deposition in Houston, Texas, June 24, 2003)(Trial testimony in Galveston, Texas, June 14, 2006).

27.  *Dairy Farmers of America v. Travelers Ins. Companies* (Trial testimony in Kansas City, Missouri, July 9, 2003).

28.  *Tompkins v. Marquis & Aurbach* (Testimony in State Bar of Nevada Attorney Fee Arbitration, Las Vegas, Nevada, November 25, 2003).

29.  *American Medical Clinics, Inc. v. Meadows Medical Group* (Nevada State Court Case No. A397482; Dept. 4, Clark County)(Deposition in Las Vegas, Nevada, December 16, 2003).

30.  *State of Minnesota v. American Hardware Mutual, et al.* (Deposition in Minneapolis, Minnesota, March 2, 2004).

31.  *Pet Pantry v. Clarendon Insurance* (Deposition in Reno, Nevada, March 18, 2004)(Trial Testimony in Minden, Nevada, April 13-14, 2004).

32.  *Celotex Asbestos Settlement Trust v. Travelers Casualty & Surety*, CPR File No. W-01-18 (Deposition in Las Vegas, Nevada, April 28, 2004) .

33.  *Vestin Mortgage v. Commonwealth Insurance* (Deposition in Las Vegas, Nevada, April 30, 2004).

34.  *Shinehouse v. Duesing*, (Deposition in Henderson, Nevada, May 7, 2004).

35.  *Joseph v. Zurich Life Insurance* (Deposition in Jacksonville, Florida, July 10, 2004).

36.  *DuPre/Human Dynamics Corporation v. Seibels-Bruce Group* (Deposition in Phoenix, Arizona, August 10, 2004).

37.  *National Casualty Co. v. Assurance Co. of America* (Deposition in Las Vegas, Nevada, December 13, 2004).

38.  *Century Indemnity Co., v. Congoleum Corp.* (Deposition in Washington, DC, January 14, 2005 and via video in Las Vegas, Nevada, January 19, 2005).

39.  *Continental Casualty Co. v. Robert A. Keasbey Co.*, (Deposition in Las Vegas, Nevada, February 9 and February 11, 2005 and in Chicago, Illinois May 10, 2005).

40.  *XM Satellite Radio Inc. v. Great Lakes Reinsurance (UK) PLC, etc.*, AAA Case No. 50 T 195 00410 04 (Deposition in Los Angeles, California, August 30, 2005)(arbitration matter subject to confidentiality order)(Arbitration hearing testimony in Washington, DC, Nov. 30, 2005).

41.  *Ascentra Insurance Agency, Inc., et al. v. Westport Insurance Corp.*, No. 76 Y 195 (Deposition in Las Vegas, Nevada, September 21, 2005)(arbitration matter subject to

3

confidentiality order)(Arbitration hearing testimony in Kansas City, Mo., Oct. 13, 2005).

42. *Vig v. Pacific Indemnity* (Deposition in Las Vegas, Nevada, Oct. 28, 2005)(trial testimony in Las Vegas, Nevada, March 21, 2006).

43. *First Specialty Insurance Corp. v. Ward North American, et al.* (Deposition in Las Vegas, Nevada, Dec. 8, 2005)(Trial Testimony in Kansas City, Kansas, Nov. 15, 2006).

44. *Winn-Dixie Stores, Inc. v. XL Insurance America, Inc.* (Deposition in Las Vegas, Nevada, July 6 & July 13, 2006)(Arbitration testimony in Washington, DC, Feb. 13, 2007).

45. *Rhodes v. RLI Insurance Co., et al.*, (Deposition in Las Vegas, Nevada, Oct. 6, 2006).

46. *Thompson v. Columbus Life Ins. Co, et al.,* (Deposition in Las Vegas, Nevada, Nov. 1, 2006).

47. *Olen Development Corp. v. TIG Ins. Co*. (Deposition in Las Vegas, Nevada, Nov. 29, 2006).

48. *Jones v. Mt. Hawley Ins. Co. and RLI Ins. Co*., (Deposition in Las Vegas, Nevada, Dec. 12, 2006).

49. *Bank of Waukegan v. RLI Insurance Co*., (Deposition in Las Vegas, Nevada, June 5-6, 2007).

50. *D&J Properties, LLC v. Siena Office Park 2, LLC, et al*. (Hearing testimony in Las Vegas, Nevada, Dec. 19, 2007).

51. *MacLean Townhomes v. Charter Oak Insurance* (Deposition testimony in Las Vegas, Nevada, July 18, 2008).

52. *In Re: Receivership of Southwest Exchange, Inc. and Consolidated Litigation* (Deposition testimony in Las Vegas, Nevada, September 15, 2008).

53. *Tiara Condominium Assoc. v. Marsh USA* (Deposition testimony in New York, NY, Oct. 13, 2008).

54. *Keith v. CUNA Mutual Ins. Co*. (Deposition testimony in Takoma, Washington, Aug. 4, 2009).

55. *Clean Harbors v. Pacific Employers Insurance & National Union Insurance* (Deposition in Chicago, Illinois, January 13, 2010).

56. *Paul Steelman, Ltd. v. Westchester Insurance Co*., (Deposition in Las Vegas, Nevada, Sept. 20, 2010).

57.   *Quam v. Flangas McMillen* (Deposition in Las Vegas, Nevada, Dec. 13, 2010).

58.   *Torres v. Nevada Direct Insurance* (Deposition in Las Vegas, Nevada, Nov. 22, 2011)(trial testimony in Las Vegas, Nevada, April 5, 2012).

59.   *Rau-Retke v. Metropolitan Property & Casualty Insurance Co.* (Deposition in Las Vegas, Nevada, Dec. 21, 2011).

60.   *Gehlert v. Everest Insurance Co*. (Deposition in Las Vegas, Nevada, Feb. 7, 2012).

61.   *Sherwin v. Infinity Insurance* (Deposition in Las Vegas, Nevada, Feb. 21, 2012).

62.   *Kiefe v. Metropolitan Life Ins. Co.* (Deposition in Las Vegas, Nevada, March 27, 2012).

63.   *Plant Insulation Co. v. Fireman's Fund Ins. Co*.  (Deposition in San Francisco, California, April 3, 2012).

64.   *Mountain Air v. Travelers Ins. Co*. (Deposition in Reno, Nevada, May 31, 2012).

65.   *Phillips v. National Union Ins. Co*., (Deposition in Las Vegas, Nevada, July 30, 2012).

66.   *Republic Plastics Corp. v. Willis of Texas* (Deposition in Las Vegas, Nevada, September 14, 2012).

67.   *Sharp Plumbing v. National Fire & Marine Ins. Co.* (Deposition in Los Angeles, California, November 27, 2012).

68.   *Thorpe Insulation Coverage Cases* (Deposition in Los Angeles, California, November 28, 2012).

69.   *U-Haul, Inc. v. Kamer* (Deposition in Las Vegas, Nevada, December 3, 2012).

70.   *Scottsdale Ins. Co. v. Liberty Mutual Ins. Co*. (Deposition in Henderson, NV, September 9, 2013).

71.   *Association of California Water Agencies Joint Powers Insurance Authority v. Insurance Company of the State of Pennsylvania.* (Deposition in Las Vegas, NV, September 23, 2013).

72.   *Farring v. Hartford Insurance Co*. (Deposition in Las Vegas, NV, October 11, 2013).

73.   *Home Insurance Co. v. Cornell-Dubilier Electronics, Inc.* (Deposition in Boston, MA, Feb. 28, 2013).

74.   *In re CityCenter Construction Litigation* (Deposition in Las Vegas, NV July 16 & 17, 2014).

75. *Carefirst, Inc. v. BCS Insurance Co*. (Deposition in Chicago, Illinois August 18, 2014).

76. *Reimers v. Everest Indemnity Insurance Co.* (Deposition in Las Vegas, NV October 1, 2014)(Trial testimony in Reno, Nevada, February 6, 2015).

77. *Dignity Health v. Platte River Insurance Company* (Deposition in Los Angeles, CA, December 23, 2014)(Arbitration Hearing testimony, January 23, 2015)(via telephone to arbitration in San Francisco, CA).

78. *Owens v. Metropolitan Life Insurance Co.* (Deposition in Las Vegas, NV, September 16, 2015).

79. *Schwartzer v. American Family Insurance Co*. (Deposition in Las Vegas, NV, December 23, 2015).

80. *City of Phoenix v. First State Ins. Co., et al*. (Deposition in Las Vegas, NV, January 15, 2016).

81. *RA Southeast Land Co. v. First American Title Insurance Co.* (Deposition in Henderson, NV, January 20, 2016).

82. *Chicago Bridge & Iron Co. v. Certain Underwriters and Lloyd's, London and Certain London Market Insurance Cos.* (Deposition in Las Vegas, NV, December 1, 2016).

83. *Walker v. State Farm Ins. Co.* (Deposition in Las Vegas, NV, December 29, 2016).

84. *Bacon v. AMCO Insurance Co.* (Deposition in Las Vegas, NV, December 20, 2017).

85. *Toll Brothers v. Liberty Mutual Ins. Co*. (Deposition in Las Vegas, NV, March 6, 2018).

86. *Masciotra v. American Family Insurance Co.* (Deposition in Las Vegas, NV, March 21, 2018).

87. *McKenna v. Chesnoff, et al*. (Deposition in Las Vegas, NV, April 27, 2018).

88. *International Game Technology v. Illinois National Ins. Co*. (Deposition in Henderson, NV, May 31, 2018).

89. *Dominion Resources v. Alstom, Inc.* (Deposition in Boston, MA, August 2018).

90. *Adair v. State Farm Mut. Auto. Ins. Co*. (Deposition in Las Vegas, NV, Oct. 12, 2018).

91. *Mt. Hawley Insurance Co. v. Adell Plastics Co.* (Deposition in Las Vegas, NV, March 12, 2019).

92.  *Rockhill Insurance Co. v. CSAA Insurance Exchange* (Deposition in Las Vegas, NV, May 3, 2019).

93.  *Sunridge Corp. v. Howard & Howard* (Deposition in Las Vegas, NV, Jan. 14, 2020)(Trial testimony in Las Vegas, NV, March 26, 2021).

94.  *Zurich Ins. Co. et al. v. Covil Corp*. (Deposition in San Francisco, CA, Feb. 28, 2020).

95.  *Duke Energy Carolinas v. AG Insurance SA/NV et al.* (Deposition via Zoom in Las Vegas, NV, July 27, 2020 with remote questioning and participation).

96.  *Sipan v. State Farm Mutual Auto. Ins. Co.* (Deposition via Zoom in Las Vegas, NV, March 18, 2021 with remote questioning and participation).

97.  *American Home Assurance Co. v. Superior Well Services, Inc.* (Deposition via Zoom in Las Vegas, NV, March 24, 2021 with remote questioning and participation).

98.  *Swanson v. Acuity Insurance Co.* (Deposition in Reno, NV July 15, 2021)(Trial testimony in Las Vegas, NV December 15, 2021).

99.  *Richardson v. Breeden* (Deposition via Zoom in Las Vegas, NV September 8, 2021 with remote questioning and participation).

100.  *Morency v. LM Insurance Corp., et al.* (Deposition via Zoom in Las Vegas, NV November 22, 2021 with remote questioning and participation).

101.  *Goldman v. Vigilant Insurance* (Deposition via Zoom in Las Vegas, NV, November 24, 2021 with remote questioning and participation).

102.  *Jaime-Olaya v. State Farm Mutual Auto. Insurance Co*. (Deposition via Zoom in Las Vegas, NV, February 11, 2022).

103.  *Thor Equities, LLC  v. Factory Mutual Insurance Co.* (Deposition via Zoom in Henderson, NV, March 14, 2022).

104.  *KB Home v. Illinois Union Ins. Co.* (Deposition via Zoom in Henderson, NV, March 16, 2022).

105.  *Feyznia v. Safeco Ins. Co. of Illinois* (Deposition via Zoom in Las Vegas, NV, April 20, 2022).

106.  *Hendrix v. Progressive Direct Insurance Co.* (Deposition via Zoom in Las Vegas, NV, May 9, 2022).

107.  *Hakkasan USA, Inc. v. Endurance American Specialty Ins. Co.* (Deposition in Las Vegas,

NV, June 24, 2022).

108.    *Spencer v. LM General Insurance* (Deposition via Zoom in Henderson, NV, July 20, 2022 & September 2, 2022).

109.    *Varni v. Elliott* (Deposition via Zoom in Henderson, NV, July 21, 2022 and via Zoom in Charleston, SC December 15, 2022).

110.    *Torgerson v. State Farm Mut. Auto. Ins.* (Deposition via Zoom in Eden Prairie, MN, August 25, 2022).

111.    *Kuhlman Electric Corp., et al. v. The Travelers Indemnity Co., et al.* (Deposition Part I in Las Vegas, NV October 11, 2022; Part II via Zoom in Henderson, NV, October 27, 2022).

112.    *AEP Generation Resources, Inc., et al., v. AG Insurance SA/NV, et al*. (Deposition via Zoom in Henderson, NV, October 26, 2022).

113.    *Vahey v. Black & Lobello* (Deposition in Las Vegas, NV, Feb. 1, 2023).

114.    *Reed v. Owners Ins. Co.* (Deposition in Las Vegas, NV, March 3, 2023).

115.    *Pittillo v. Metropolitan Life Ins. Co.* (Deposition via Zoom in Henderson, NV, April 4, 2023).

116.    *Allianz Global Risks US Ins. Co. v. Travelers Property & Cas. Co. of America* (Deposition via Zoom in San Francisco, CA, May 8, 2023).

117.    *Houston Livestock Show and Rodeo v. Hallmark Financial Services, et al*. (Deposition via Zoom in Henderson, NV, July 25, 2023).

118.    *Evans v. State Farm Mutual Auto. Ins. Co*. (Deposition via Zoom in Henderson, NV, August 16, 2023).

119.    *CoBank, ACB v. Certain Underwriters* (Arbitration Hearing in Denver, Colorado, August 22, 2023).

120.    *National Surety Corp. v. Indian Harbor Ins. Co*. (Deposition via Zoom in Henderson, NV, August 30, 2023).