# Exhibit 5
# (Supplemental Declaration of Professor Jeffrey W. Stempel)

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

Cung Le, et . al,

    Plaintiffs

v.

Zuffa, LLC,

    Defendant.

No.:2:15-cv-01045-RFB-BNW

**Supplemental Declaration of Jeffrey W. Stempel**

**Supplemental Declaration of Professor Jeffrey W. Stempel**

**Introduction**

As noted in my initial declaration of September 26, 2023, I have been retained by class counsel to address professional responsibility issues related to the Motion of Sparacino, PLLC ("Sparacino") for Relief Pursuant to the Court's Inherent Authority (filed September 13, 2023) ("Sparacino's Motion"). I reserved the right to reconsider, revise, and supplement my opinions in light of further developments or additional information that may develop. On October 4, 2023, Sparacino filed a Reply In Support of Its Motion for Relief Pursuant to the Court's Inherent Authority ("Sparacino Reply" or "Reply"), which includes a supplemental opinion letter dated October 3, 2024 by Professor Bruce Green ("Second Green Letter"), who submitted an initial opinion letter dated September 8, 2023 in support of Sparacino's Motion. In this Supplemental Declaration, I respond to the Second Green Letter and the Sparacino Reply. My background and qualifications remain as set forth in my initial Declaration.

**Sparacino's Misleading Perspective on Expert Opinion Admissibility**

    1.    In its Reply, Sparacino asserts that I am "not qualified to opine on the issues before this Court" because my "expertise is in "***insurance-related issues*** [and] *not professional ethics*" (emphasis Sparacino's, citing *Adell Plastics, Inc. v. Mt. Hawley Ins. Co*., 2019 WL 2524916 at *3 (D. Md. June 19, 2019)).

    2.    That may be Sparacino's opinion, but as reflected in my list of prior testimony (appended to my initial Declaration as Exhibit B), I have testified in court or official hearings

1

regarding professional responsibility in the cases numbered as 16,[1] 17,[2] and 93[3] on Exhibit B), situations in which my analyses on professional responsibility were deemed admissible.

3.  I have also, as reflected on Exhibit B, provided deposition or fee arbitration testimony on professional responsibility in Cases Numbered as 14, 15, 16, 22, 28, 29, 34, 57, 69, 87, 93, 99, and 113 on Exhibit B. These cases typically settled without a final determination on evidence admissibility but to the best of my recollection there was no indication approaching trial that my testimony on lawyer professional responsibility would not have been admitted. In some cases, an exclusion motion had been denied. To the best of my knowledge, I have never been ruled unqualified to render an opinion on attorney professional responsibility nor has my testimony of this type been excluded.

4.  I have given testimony under oath in fourteen professional responsibility matters, four before judges who have expressly or implicitly rejected efforts to bar my testimony. Illustrative is *Sunridge v. Howard & Howard,* (Case No. 93 on Exhibit B) a legal malpractice case in which I testified during 2021. I am currently scheduled to testify during the week of October 16 in the *Vahey v. Black & LoBello* matter (Case No. 113 on Exhibit B) pending in the Eighth Judicial District before the Hon. Glorida Sturman.

5.  In view of this larger picture, it is puzzling to me – and in my view another indication of privileging aggression over analysis – that Sparacino cites *Kwon v. Benedetti*, 2011 Wl 4072085 (D. Nev. Sept. 12, 2011) as its basis for excluding my opinion regarding lawyer professional responsibility. As is reflected in the *Kwon* Court's opinion, the document defendants sought to utilize in defense of their extortion prosecution was a Report I prepared in 2003, some eight years before the *Kwon* decision, for submission to the District Attorney. I was never retained to provide testimony in the *Kwon v. Benedetti* litigation, something Sparacino could perhaps have appreciated as the case is not listed in Exhibit B to my initial Declaration.

6.  In *Kwon*, the defendants improperly attempted to use work I had done *in another matter years earlier based on a different factual record* to attempt to justify their conduct in a different case – and falsely claimed that they would proffer me as a witness even though I have never met them or their counsel (and certainly had not agreed to being retained by them). I was not involved in the *Kwon* litigation nor represented by counsel nor provided with any opportunity to participate on any evidentiary questions in that dispute. In addition, new information that came to light after my 2003 report might well have affected my decision that an earlier Kwon lawyer had not violated criminal law. Consequently, it is misleading to cite this case as an example of a bar to my testimony that was never offered by retaining counsel or client. At a

---

[1] *Brenner v. LePome* (January 15, 2002 before the Hon. Mark Denton in the Eighth Judicial District Court in Las Vegas, Nevada).
[2] *Daley v. Hernandez* (December 2001 before the Hon. Lee Gates in the Eight Judicial District Court in Las Vegas, Nevada.
[3] *Sunridge Corp. v. Howard & Howard (*March 26, 2021 before the Hon. Elizabeth Gonzalez in the Eighth Judicial District in Las Vegas, Nevada.

minimum, citation of *Kwon* is simply irrelevant and misplaced, as is Sparacino's attempt at misdirection by arguing about my expert qualifications rather than Sparacino's misconduct.[4]

7. Both Professor Green and I are amply qualified to render opinions on matters of professional responsibility. Class counsel or I could point to cases where Professor Green's opinion has been excluded as unduly legal[5] or cases where the tribunal has rejected his assessment.[6] In the course of expert witness work, tribunals will have varying reactions to expert

---

[4] Similarly irrelevant and misleading is Sparacino's contention that "nearly all courts" viewing my analyses have barred them from consideration (citing two cases). This is simply incorrect.

As reflected in Exhibit B, I have been involved in many cases involving insurance claims handling, coverage, bad faith, and related issues. In nearly all cases, there has been a Daubert-based motion to exclude my testimony but, as reflected in Exhibit B, I have testified at hearing or trial in many of these cases as well as at deposition.

I recently testified in August 2023 at an arbitration hearing presided over by the Hon. Vaughn Walker, retired judge of the Northern District of California. He and the party-appointed arbitrators did not question the appropriateness of my testimony on insurance matters at issue. *See also First American Title Ins. Co. v. Ace American Ins. Co.*, 2023 U.S. Dist. LEXIS 175258 (D. Nev. Sept. 29, 2023) at *31-*32 (considering my opinions in making ruling). I also provided, in addition to numerous instances of deposition testimony, trial or arbitration testimony over opposing party objection in 15 insurance matters (listed as Case Nos. 3, 10, 12, 13, 26, 27, 31, 40, 41, 42, 44, 58, 76, 98, and 119 in Exhibit B to my initial declaration).

To be sure, there are some cases where my testimony has been excluded as excessively legal or encroaching on ultimate issues. But I believe there has never been a case in which the court has ruled that I was unqualified or "unexpert" in insurance matters. In *KB Home v. Illinois Union*, 2023 WL 3432139 (C.D. Cal. Mar. 28, 2023), I was expressly asked by retaining counsel to deal with certain aspects of California case law so the exclusion there on grounds my opinion was too "legal" was not entirely surprising. Regarding *First Specialty Ins. Corp. v. Novapro Risk Solutions*, 468 F. Supp. 2d 1321 (D. Kan. 2007), I continue be puzzled by the Magistrate Judge's hostility toward my testimony and that of the other expert witnesses (George Kenny, Esq., author of the leading treatise on New Jersey insurance law and the Hon. Curtis Meanor of the District of New Jersey). *See* 468 F.Supp. 2d at 1337 (characterizing Mr. Kenny as "giving "long-winded, non-responsive answers. . . that seriously hurt his credibility" with testimony that "seemed largely theoretical" and Judge Meanor as providing "some welcome comic relief in an otherwise dry case"). More reflective of evidentiary issues is the Court's opinion in the case in *First Specialty Ins. Corp. v. Ward North Am. Holding, Inc*., 2006 U.S. Dist. LEXIS 98273 (D. Kan. Nov. 1, 2006)(rejecting a motion to exclude my testimony). In addition, the *First Specialty* Court's ruling accorded with my assessment of the claims handling error at issue.

[5] *See, e.g., Joffe v. King & Spaulding, LLP*, 2019 U.S. Dist. LEXIS 163671 (S.D.N.Y. Sept. 24, 2019)(barring proffered Green testimony) at *51 ("Here, because Green's opinion rests entirely on his interpretation of the text of the RPC, it is not admissible"), at *50 ("Green's interpretation of the RPC is not helpful to the jury because it is not based on his assessment of ordinary legal custom or practice. Instead, he seeks to testify as to the contents of the RPC, a topic on which the Court can capably instruct the jury."); at *52 ("Green's opinion is excluded as unhelpful to the jury because it invades the province of the Court to charge the jury on the scope of New York's Rules of Professional Conduct."); at *52 ("Green's opinion is also inadmissible under Rule 403 because 'its probative value is substantially outweighed' by the risk of 'confusing the issues, misleading the jury, [and causing[ undue delay."); *In re Intel Corporation Microprocessor Antitrust Litigation*, 525 F. Supp. 2d 461, 466 (D. Del. 2007) **24 (describing Green declaration as concerned "with issues that are ultimately legal questions, and therefore, the Court does not find the declarations to be particularly useful to the Court in adjudicating the questions [at issue. Consequently,] the Court will grant Intel's Motion and strike the declarations.").

[6] *See, e.g., Hinds v. City of Westchester*, 2020 U.S. Dist. LEXIS 224569 (S.D.N.Y. Dec. 1, 2020)(making ruling contrary to Green analysis in granting sanctions motion); Massachustetts Inst. of Tech. v. ImClone Sys., 490 F. Supp. 2d 119 (D. Mass. 2007)(same).

submissions and exercise their discretion in different ways regarding admissibility and weight accorded to clashing opinions.  Rather than descending to the level of attack mounted by Sparacino, I am happy to concede Professor Green's expertise.   But for the reasons set forth in my initial Declaration and below in reaction to the Second Green Letter, I simply think his analysis in this matter is unduly limited and incorrect.

**Professor Green Concedes Limited Knowledge of the Facts Leading Up to the Dispute Between Class Counsel and Sparacino and Does Not Take Issue With Much of My Analysis.  The Second Green Letter, Like the First, Does Not Contest the Bulk of My Opinions Regarding Professional Responsibility Violations by Sparacino**

8. Professor Green and I are primarily at loggerheads as to the applicability of Nev. R. Prof. Conduct 4.2.  Whatever "heat" is given off by our clashing opinions on that point should not obscure the "light" that reflects no response to my opinions concerning Sparacino's conduct that are not addressed in either Green Letter.  Professor Green does not challenge my analysis regarding those aspects of the instant dispute.[7]  Although Professor Green states that Sparacino's communications with absent class members were "consistent" with "professional conduct rules," the only Rule that his two opinion letters address in any detail is Rule 4.2.

9. The two Green Letters to not take issue with the opinions in my initial Declaration that found Sparacino in violation of Rule 1.1 (Competence)(based on concern that the Sparacino practice appears centered on mass torts rather than antitrust and lack of a track record regarding antitrust actions), Rule 1.4 (Communication, based on the misleading statements of Sparacino), Rule 1.5 (Fees, which I regard as potentially excessive if Sparacino seeks 40-45% compensation despite riding on the work of class counsel), Rule 3.3 (Candor Toward the Tribunal, based on Sparacino's misstatements to the Court), and Rule 4.3 (Dealing with Unrepresented Persons, where I regard Sparacino as exhibiting unfair conduct toward the class members it recruited).[8]  Although Sparacino may contest my analysis on these points, Professor Green has not, save for arguing that Rule 1.4 does not apply because the targets of the Sparacino solicitation were not (yet) "client[s] of the firm and that Rule 4.3 applies only when the lawyer is "dealing on behalf of a client."  *See* Second Green Letter at p. 3.  Like the Green analysis of Rule 4.2, these arguments about Rule 1.4 and Rule 4.3 are in my opinion unduly hyper-textual to the exclusion of consideration of the public policy underlying these rules.

**The Second Green Letter is Based on an Insufficient Factual Appreciation of the Instant Dispute Regarding Solicitation of Class Members**

10. Professor Green concedes no first-hand knowledge of the facts of the dispute and

---

[7] *See* Second Green Letter at p. 1 (noting that he has been asked to address my "opinions relating to Rule 4.2" and has not been asked to address "opinions other than those discussed in [the Second Green Letter]").
[8] In my initial Declaration, I neglected to note that the facts also establish violation of Rule 7.1 (Communication Concerning a Lawyer's Services) by Sparacino.

relies on a limited number of documents. His description of the instant litigation reflects this and is concise to the point of being misleading. *See* Second Green Letter at p. 1, stating: "In 2021, after plaintiffs' counsel filed a federal class action alleging antitrust violations by Zuffa, LLC, Sparacino wrote to more than 200 putative class members." This is akin to describing the Thirty Years War by saying that "in 1618, German Protestants and Catholics had a disagreement."

11. The instant litigation began in 2014 and progressed for a half-dozen years before the Court expressed an intent to certify a class. It was only then, after years of work and substantial out-of-pocket expenditures by the attorneys who brought the action that Sparacino made its contact with the 200 unnamed class members. The summary description in the Second Green Letter gives the misleading impression that Sparacino's solicitation took place shortly after commencement of the lawsuit, a nonexistent situation that if in fact true might provide Sparacino with justification for its client-seeking overtures.

12. Similarly, the descriptions of the Second Green Letter, like those of the initial Letter, fail to mention the inaccuracies and deficiencies of the Sparacino solicitation: no mention that the that *Le v. Zuffa* was a class action; no mention that the fighters targeted by the solicitation were members of the class; no mention that named plaintiffs and class counsel were involved in the case and that class counsel had been working on behalf of the class for more than a half-dozen years; and no disclosure that the solicited fighters could recover as class members without retaining separate counsel.[9] There is also no mention in the Second Green Letter of Sparacino's apparent misrepresentation to the Court regarding its contacts with absent class members in derogation of its promises.

13. I note these aspects of the Second Green Letter and his analysis because they reflect undervalued context that is in my view important ot assessing the applicability of Rule 4.2 (along with the Court's inherent authority and Federal Civil Rule 23 authority) to the Sparacino soliciations.

14. If the facts were as suggested by Professor Green, his view that lawyer competition for clients is an unalloyed blessing would have considerably more force. But that analysis erodes in the face of the actual circumstances of this dispute. The Sparacino solicitations, in addition to being misleading and violative of other Rules of Professional Conduct, did not come at the outset of litigation but came so late in the process as to constitute improper contact with persons who were at least functionally represented by counsel even if formal written retainers had not been signed. Appreciating the longer timeline and broader context of the *Le v. Zuffa* litigation makes the Sparacino solicitation look more like tortious interference with an attorney-client relationship than free and open advertising for clients.

**The Applicability of the Rule 4.2 Anti-Contact Provision to the Sparacino Solicitations**

---

[9] Although some, but not all, of these facts were mentioned in the brochure accompanying Sparacino's solicitation letter, they were conspicuously absent from the letter itself.

15.     Under these circumstances, application of Rule 4.2 is apt even if, as Professor Green notes, Sparacino was not representing a "client" (other than itself and its economic interests) when it contacted class members of a functionally certified class on its way to being formally certified.

16.     A major goal of Rule 4.2 is to prevent a lawyer or law firm from seeking to interfere with attorney-client relations.  The Rule is based in large part on concerns that the intervening lawyer's contact will seek to "drive a wedge" between a lawyer-client relationship.  This of course was exactly what Sparacino was seeking and apparently obtained by signing 15 class members to retainer agreements.

17.     It remains my opinion that where a putative class action has been extensively litigated and prospective class counsel has invested substantial time and effort in the matter and where the Court has stated an intent to grant certification, the class should be treated as represented by class counsel for purposes of Rule 4.2.  The anti-contact rule should be viewed as applicable and forbidding the type of solicitation engaged in by Sparacino.

18.     It also remains my opoinion that even if the class is not regarded as represented by class counsel until formal entry of a certification order, Sparacino's pre-certification conduct is subject to regulation by the Court pursuant to its broad discretion to manage class action litigation pursuant to Fed. R. Civ. P. 23, another point that I do not believe is contested by Professor Green.  While he opposes application of Rule 4.2 to the instant situation, I do not read his Second Opinion Letter (or his initial Letter) as arguing that the Court could not grant the relief requested by class counsel pursuant to Rule 23 and inherent judicial power.

19.     To that extent, our disagreement about Rule 4.2 is not decisive.  The Court may grant the requested relief against Sparacino even if it finds the Green analysis of Rule 4.2 more persuasive.   I continue to hold the opinion, however, that Professor Green's constricted view of Rule 4.2 places textual literalism and formality ahead of the functional operation of Rule 4.2 and appreciation of the policies it is designed to promote.  *See* initial Stempel Declaration at ¶¶ 22-34.

20.     Appreciation of the timeline and context of this litigation reflects the degree to which the Sparacino solicitations smack of "free riding" by Sparacino on the extensive, multi-year efforts of class counsel.  Viewing a similar situation, the Court in *McWilliams v. Advanced Recovery Systems*, 176 F. Supp. 3d 635 (S.D. Miss. 2016) found enforcement of an anti-contact provision apt.

21.     In that case, the named plaintiff brought a class action alleging violations of the Fair Debt Collection Practices Act (15 U.S.C. §§1692, et seq.).  Cross-motions for summary judgment were denied and a class was certified, after which an attorney sent a solicitation letter to the named plaintiff and class representative – and more than 200 unnamed class members, seeking to represent them on a contingent fee basis.

22. The Court granted the requested protective order prohibiting further solicitation because it found that the solicitation letters clearly violated Miss. R. Prof. Conduct 4.2 (which has the same language as Nev. R. Prof. Conduct 4.2) in that the the soliciting attorney knew that a class had been certified in a pending class action. In contrast to Professor Green, Judge Reeves in *McWilliams* interpreted Rule 4.2 to prohibit a lawyer from "communicating with a represented party about the subject of the representation" even though the lawyer was doing so on her own behalf rather than as the agent of a client. *See* 176 F. Supp.3d at 640.

23. In further contrast to Professor Green's sanguine theoretical view of the wonders of attorney competition, the *McWilliams* Court displayed a sound sense of the practical realities of attorney competition for clients.

> The [United States] Supreme Court has noted the potential for "heightened susceptibilities of nonparty class members to solicitation amounting to barratry." [quoting *Gulf Oil Co. v. Bernard*, 452 U.S. at 100, n. 12 (1980)] That is a politie way of waying that attorneys who want to cut into the class action may try to steal away class members and then bring separate, wasteful lawsuits. Another potential problem the Supreme Court flagged is how "unapproved communications to class members that misrepresent the status or effect of the pending action also have an obvious potential for confusion and/or adversely affecting the administration of justice." [again quoting *Gulf Oil v. Bernard*]

176 F.Supp.3d at 639-40 (footnote omitted).[10]

24. The Second Green Letter stresses the perceived danger that conflicted class counsel will not give class members sound advice but minimizes the danger of unsound advice from soliciting lawyers eager for business wherein they can benefit from what economists would term "free riding" on the efforts of predecessor counsel. The Letter inconsistently takes a dim view of class counsel and a Pollyanna-ish view of soliciting counsel.

25. In my view, this is backwards. Having surveyed the litigation landscape for more than 40 years a law clerk, lawyer, teacher, and researcher I have considerably more confidence in and respect for class counsel that engages in substantial time, effort and expense in prosecuting a class action case than I do the soliciting lawyers who sweep in to stand on a platform created by

---

[10] *See also Wayside Church v. Van Buren County*, 2023 U.S. Dist. LEXIS 84150 (W.D. Mich. May 15, 2023)(reprimanding attorneys that solicited unnamed class members for violation of Rule 4.2, implicitly rejecting Green argument that Rule 4.2 is inapplicable where soliciting attorney is seeking business rather than representing a client), *modified on review*, *Church v. Van Buren Country*, 2023 U.S. App. LEXIS 16968 *11 (6th Cir. July 4, 2023)(affirming substantial portion of trial court order that anti-contact principle applies to soliciting lawyers, as well as lawyers representing clients although on the basis of Rule 23 rather than Rule 4.2, finding part of trial court order overbroad as to unnamed class members contacted prior to certification)("Rule 23 preserves class members' rights to opt-out or raise objections to the proposed settlement, but it does not guarantee outside counsel an opportunity to lobby for those actions. Thus, the district court had a legal and factual basis to conclude that this communication threatened the administration of the class action.").

the prior work of others. At the very least, there is no basis for assuming, as does Professor Green, that class counsel that have brought the action to the place of certification are more of a danger to unnamed class members than late-arriving soliciting counsel.

26. As noted above, if this were 2014 or 2015 and the instant action in its infancy, Professor Green's analysis based on the purported benefits of competition and unrestricted contact would merit serious consideration. But a near a decade of litigation and the context it provides refutes his view and militates in favor of applying Rule 4.2 and curbing the post-certification solicitation by Sparacino.

27. The Second Green Letter is correct in noting that as a general rule "[t]argeted mailings are a constitutionally protected means of communicating with prospective clients" (at p. 7), a proposition for which he cites *Shapero v. Kentucky Bar Ass'n*, 486 U.S. 466 (1988), a case in which an article I co-authored was cited by the Court. *See* 486 U.S. at 488 (citing Geoffrey C. Hazard, Jr., Russell G. Pearce, and Jeffrey W. Stempel, *Why Lawyers Should be Allowed to Advertise: A Market Analysis of Legal Services*, 58 N.Y.U. L. REV. 1084 (1983)).

28. I continue to support on both constitutional and consumer rights grounds the freedom of attorneys to advertise and even to solicit, provided that these marketing efforts do not conflict with other rules, policies, norms, and values of the legal profession. But as always, the context of the case, largely overlooked or underappreciated by Professor Green in this matter, is important.

29. In view of the extensive work over several years by class counsel, the late-inning solicitation by Sparacino is a far cry from the generic direct mailings of *Shapero* or the advertisements in other prominent Supreme Court cases such as *Zauderer v. Office of Disciplinary Counsel of Supreme Court*, 471 U.S. 626 (1985)(restricting bar regulation of truthful print advertisements but upholding regulation of misleading description of contingent fee) or *Bates v. State Bar of Arizona* 433 U.S. 350 (1977)(striking down ban on attorney advertising that involved a rather plain newspaper advertisement). Rather, Sparacino's conduct is closer to that rebuked by the Court in *Ohralik v. State Bar of Ohio*, 436 U.S. 447 (1978), which involved overly aggressive solicitation of a vulnerable prospective client. Sparacino's misstatements and misconduct in the course of its soliciations take this matter further outside the protective shield of *Shapero* and similar precedents.

## Conclusion

For the reasons set forth above, I continue to find that class counsel's objections and responses to Sparacino's conduct are justified and Sparacino's defenses unpersuasive. For the same reasons, I find that Sparacino's Motion lacks justification under the rules of professional conduct. Sparacino's solicitation of the class was misleading and is subject to Court control pursuant to Fed. R. Civ. P. 23. It is also in my view violative of Nev. R. Prof. Conduct 4.2 as well as Rules 1.1, 1.3, 1.4, 1.5, 3.3, and 4.3.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 9, 2023.

_____
Jeffrey W. Stempel