# Exhibit 7
(Declaration of Antonio McKee)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| **Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury, on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,**<br><br>**Defendant.** | Case No.: 2:15-cv-01045-RFB-PAL<br><br>**DECLARATION OF ANTONIO MCKEE** |

I, Antonio McKee, declare and state as follows:

1.      I am over 18 years of age and have personal knowledge of the facts stated in this Declaration.  If called as a witness, I could testify competently to them.

2.      I make this Declaration in support of Plaintiffs' Opposition to Sparcino PLLC's Motion for Relief Pursuant to the Court's Inherent Authority.

3.      On April 2, 2021, I received an email message from ufccase@sparcinopllc.com with the subject line "Voided: Privileged and Confidential-Potential Opt-Out Lawsuit Against UFC."  The body of the email stated the following: "Privileged & Confidential - Potential Opt-Out Lawsuit Against UFC has been voided for the following reason: Voided previous version of engagement letter, because new version of engagement letter replaces it." A copy of this email is attached hereto as **Exhibit A**.

1

4.　　　On April 2, 2021, I received an email message with the subject line "Privileged and Confidential-Replacement Engagement Letter for UFC Case" from Eli J. Kay-Oliphant of Sparacino. This email forwarded a revised engagement letter for my signature to hire Sparacino in connection with this case and stated the following: "To that end, we have prepared an updated engagement letter for your review.  If you decide you wish Sparacino PLLC to represent you, please execute the updated engagement letter at your convenience."  A copy of this email is attached hereto as **Exhibit B**, and a copy of the Replacement Engagement Letter is attached hereto as **Exhibit C**.

5.　　　On May 3, 2021, I received an email message with the subject line "Reminder: Privileged and Confidential-Replacement Engagement Letter for UFC Case" from Eli J. Kay-Oliphant of Sparacino. A copy of this email is attached hereto as **Exhibit D**.

6.　　　On May 8, 2021, I received an email message with the subject line "Reminder: Privileged and Confidential-Replacement Engagement Letter for UFC Case" from Eli J. Kay-Oliphant of Sparacino. This email forwarded a revised engagement letter for my signature to hire Sparacino in connection with this case and stated the following: "To that end, we have prepared an updated engagement letter for your review.  If you decide you wish Sparacino PLLC to represent you, please execute the updated engagement letter at your convenience." A copy of this email is attached hereto as **Exhibit E**.

7.　　　On June 12, 2021, an email message with the subject line "Reminder: Privileged and Confidential-Replacement Engagement Letter for UFC Case" from Eli J. Kay-Oliphant of Sparacino. This email forwarded a revised engagement letter for my signature to hire Sparacino in connection with this case and stated the following: "To that end, we have prepared an updated engagement letter for your review.  If you decide you wish Sparacino PLLC to represent you, please execute the updated engagement letter at your convenience." A copy of this email is attached hereto as **Exhibit F**.

8.　　　I did not invite nor did I respond to any of the solicitations described above and attached as Exhibits A-F.  None of these exhibits followed personal engagements or conversations with attorneys for Sparacino.

9.　　　I forwarded all the correspondence referenced above to my attorney, Rob Maysey, for review.

Case No.: 2:15-cv-01045-RFB-BNW

DECLARATION OF ANTONIO MCKEE

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on this 22nd day of September 2023, in Lakewood, California

*/s/ Antonio McKee*

3

EXHIBIT A

| | |
|---|---|
| **From:** | Antonio Mckee |
| **To:** | rmaysey@mmafa.tv |
| **Subject:** | Fwd: Voided: Privileged & Confidential - Potential Opt-Out Lawsuit Against UFC |
| **Date:** | Friday, April 2, 2021 4:10:05 PM |

Sent from my iPhone

Begin forwarded message:

> **From:** UFC Case via DocuSign <dse_NA3@docusign.net>
> **Date:** April 2, 2021 at 5:43:07 PM EDT
> **To:** Antonio Mckee <antoniomckee@yahoo.com>
> **Subject: Voided: Privileged & Confidential - Potential Opt-Out Lawsuit Against UFC**
> **Reply-To:** UFC Case <ufccase@sparacinopllc.com>



**UFC Case**
ufccase@sparacinopllc.com

Privileged & Confidential - Potential Opt-Out Lawsuit Against UFC has been voided for the following reason:
Voided previous version of engagement letter, because new version of engagement letter replaces it.

**Envelope ID**
b2ce1882-e5b2-4c0b-9535-1491c4f6662c

**Do Not Share This Email**
This email contains a secure link to DocuSign. Please do not share this email, link, or access code with others.

**About DocuSign**
Sign documents electronically in just minutes. It's safe, secure, and legally binding. Whether you're in an office, at home, on-the-go -- or even across the globe -- DocuSign provides a professional trusted solution for Digital Transaction Management™.

**Questions about the Document?**
If you need to modify the document or have questions about the details in the document, please reach out to the sender by emailing them directly.

**Stop receiving this email**
Report this email or read more about Declining to sign and Managing notifications.

If you are having trouble signing the document, please visit the Help with Signing page on our Support Center.

 Download the DocuSign App

This message was sent to you by UFC Case who is using the DocuSign Electronic Signature Service. If you would rather not receive email from this sender you may contact the sender with your request.

EXHIBIT B

| | |
|---|---|
| **From:** | Antonio Mckee |
| **To:** | rmaysey@mmafa.tv |
| **Subject:** | Fwd: Privileged & Confidential – Replacement Engagement Letter for UFC Case |
| **Date:** | Friday, April 2, 2021 5:23:24 PM |

Sent from my iPhone

Begin forwarded message:

> **From:** UFC Case via DocuSign <dse_NA3@docusign.net>
> **Date:** April 2, 2021 at 4:38:32 PM EDT
> **To:** Antonio McKee <antoniomckee@yahoo.com>
> **Subject: Privileged & Confidential – Replacement Engagement Letter for UFC Case**
> **Reply-To:** UFC Case <ufccase@sparacinopllc.com>



**UFC Case**
ufccase@sparacinopllc.com

PRIVILEGED & CONFIDENTIAL
ATTORNEY COMMUNICATION
WITH POTENTIAL CLIENT

Dear Mr. McKee,

Thank you for considering hiring Sparacino PLLC to represent you in connection with your decision whether to "opt out" of the class action in Le v. Zuffa.  Our partner firm, Scott+Scott, has withdrawn from the matter for business reasons specific to Scott+Scott that do not, we believe, have anything to do with the merits of your potential opt-out claim, or our ability, working with an elite antitrust litigation partner firm, to effectively represent you and give you counsel concerning the pros and cons of any decision to opt-out of the class in Le v. Zuffa.

To be clear: we still believe in this case, and we are currently in discussions with several prominent national antitrust litigation firms who are very interested in potentially working on the "opt-out" matter.

In Le v. Zuffa, the Court appointed the law firms Berger & Montague, P.C., Cohen Milstein Sellers & Toll PLLC, and Joseph Saveri Law Firm, Inc, as "Interim Co-Lead Class Counsel" and Wolf Rifkin, Shapiro, Schulman & Rabkin, LLP as "Liaison Counsel" to represent the interests of class.  These firms have been working on the Le v. Zuffa case since before it was filed in 2014.  To be clear, we are not class counsel nor have we appeared as counsel in Le v. Zuffa.

On or about December 10, 2020, the Court indicated its intention to certify a class defined as follows: all persons who competed in one or more live professional UFC-promoted MMA bouts taking place or broadcast in the United States from December 16, 2010 to June 30, 2017 (the "Bout Class").  If you are a member of the Bout Class, then your interests are currently represented by Interim Class Counsel and Liaison Counsel.   You do not need take any action as this time to benefit from any recovery in the Class Action.   In the future, you should receive a Court-approved notice that explains your rights as a member of the Bout Class, including the right to opt-out of the Class Action, which you should carefully review.

As we have previously discussed, we believe you should consider opting out of the Le v. Zuffa Class Action and would be happy to explain to you the benefits of pursuing your own litigation so you can decide which choice is best for you and your family. If you do decide to opt out, then you would not be eligible to participate in any potential recovery in the Class Action.  You would chart your own course.  If, however, you wish to remain part of the Bout Class, you need not do anything in response to this letter or our prior letter.

We are currently in discussions with several prominent national antitrust litigation firms, and we are confident that we will find a partner firm to replace Scott+Scott and provide the same high-quality legal services you would have received from Scott+Scott.  To that end, we have prepared an updated engagement letter for your review.  If you decide you wish for Sparacino PLLC to represent you, please execute the updated engagement letter at your convenience.

Please note that you will no longer have to prepare the intake questionnaire at this time.  If, as we expect, we are able to reach terms with an antitrust partner firm as co-counsel, we will present you with an updated engagement letter at that time.  Thereafter, we will ask you to complete the questionnaire, but since it is driven by antitrust litigation counsel's legal strategy, it will wait until after we have reached a new co-counsel deal with a firm to replace Scott+Scott.

And if you have any questions or concerns, please don't hesitate to contact me or my partner, Ryan Sparacino, at your convenience and we would be happy to brief you on these matters.

Best,

Eli

**Do Not Share This Email**
This email contains a secure link to DocuSign. Please do not share this email, link, or access code with others.

**Alternate Signing Method**
Visit DocuSign.com, click 'Access Documents', and enter the security code:
CE0E22CE60DD421884F139C7CCB170033

**About DocuSign**
Sign documents electronically in just minutes. It's safe, secure, and legally binding. Whether you're in an office, at home, on-the-go -- or even across the globe -- DocuSign provides a professional trusted solution for Digital Transaction Management™.

**Questions about the Document?**
If you need to modify the document or have questions about the details in the document, please reach out to the sender by emailing them directly.

**Stop receiving this email**
Report this email or read more about Declining to sign and Managing notifications.

If you are having trouble signing the document, please visit the Help with Signing page on our Support Center.

Download the DocuSign App

This message was sent to you by UFC Case who is using the DocuSign Electronic Signature Service. If you would rather not receive email from this sender you may contact the sender with your request.

EXHIBIT C

DocuSign Envelope ID: 75B159A3-A17E-4CB3-9859-8CF487B3EB40



**SPARACINO**
PLLC

1920 L Street, NW, Suite 535, Washington, DC 20036
**(202) 629-3530** | sparacinopllc.com

*Privileged & Confidential*
*Attorney-Client Communication*

April 2, 2021

*Via Electronic Delivery*

Antonio McKee
2939 Denmead St.
Lakewood, CA 90712

> **Re:** **Potential Opt Out Lawsuit Against Zuffa, LLC (d/b/a UFC) Under the Sherman Act**

Dear Mr. Antonio McKee:

We write to confirm that Sparacino PLLC ("Sparacino" or the "Firm") will represent you and potentially file a lawsuit against Ultimate Fighting Championship, opting out of the class in *Le et al. v. Zuffa, LLC*, case number 15-cv-1045 in the District of Nevada. We appreciate your confidence in us. This letter will set forth, as required by the District of Columbia Bar Rules of Professional Conduct for new clients, the manner in which our services will be rendered.

**Scope of Engagement.** We have agreed that our engagement is limited to performance of services in analyzing your potential ability to "opt-out" of the current class action against Zuffa, LLC, which does business as the Ultimate Fighting Championship or UFC ("UFC" or "Defendant"), relating to your ability to bring claims against UFC based upon UFC's alleged violations of the Sherman Act. You understand that our engagement is limited to counseling you regarding the suitability of bringing an "opt-out" claim. In the unlikely event that the Firm is unable to identify enough potential "opt-out" clients to make the approach viable in the Firm's discretion, the Firm may withdraw from the representation and/or recommend that you decline to "opt-out" of the current class action lawsuit against UFC, *Le v. Zuffa*. In this letter, we refer to our provision of legal services to you as described in this paragraph as the "UFC Case."

**45-Day Special Withdrawal Period After Class Certification Order.** We expect the Court in *Le v. Zuffa* to enter an order under Rule 23 of the Federal Rules of Civil Procedure that certifies the "Bout Class" in *Le v. Zuffa*, and that you will be eligible, as a member of the Bout Class. We want you to be confident in your choice of counsel and your decision to retain us to provide you counsel concerning potentially opting out in *Le v. Zuffa*. To that end, we have agreed that you may terminate our representation of you in the UFC Case for any reason, or no

1



Antonio McKee
April 2, 2021

reason at all, by notifying us within forty-five (45) days of the entry of any class certification order by the Court in *Le*, which we will promptly disclose to you.

Should you choose to terminate our services within this 45-day period, even if you do so to remain in the class action as a class member in *Le v. Zuffa* or hire other counsel to pursue your opt-out case, we agree that you will owe us nothing and that the Firm will fully release you from this Agreement, other than with respect to the provisions in this Agreement concerning "Confidentiality," "Non-Disclosure," and "Aggregate Representation and Conflicts," which we believe are necessary to protect the legal strategy of the remaining clients whom the Firm represents in the UFC Case.

For the avoidance of all doubt, you can also terminate us at any time, for any reason; if you do so within 45 days of the entry of the class certification order under Rule 23, we will forego any claim to any share of your recovery. If you terminate us after 45 days of the entry of the class certification order under Rule 23, we will follow the terms outlined below in "Termination of Representation."

**Staffing.** Ryan Sparacino and Eli Kay-Oliphant (of Sparacino) will have primary responsibility for your representation, and we will utilize other firm lawyers and legal assistants as we believe appropriate. We will provide legal counsel to you in accordance with this letter and in reliance upon information and guidance provided by you. We will keep you reasonably informed of progress and developments, and we will respond to your inquiries. Ultimately, we will be responsible for assuring the work performed on your behalf is performed to your satisfaction. We anticipate that we will engage a litigation partner to assist with litigating the "opt-out" cases, should you decide to "opt-out" of the *Le v. Zuffa* matter. We will ask that you sign a new engagement letter with both Sparacino and the litigation partner if we do so. If at any time you believe our representation is not satisfactory in any regard, we encourage you to discuss any problems with us directly.

**Cooperation.** To enable us to represent you effectively, you agree to cooperate fully with us in all matters relating to the UFC Case, and to fully and accurately disclose to us all facts and documents that may be relevant to the matter or that we may otherwise request. You also will make yourself reasonably available to attend meetings, discovery proceedings and conferences, hearings, and other proceedings.

**Advice About Possible Outcomes.** Either at the commencement or during the course of our representation, we may express opinions or beliefs concerning litigation or various courses of action and the results that might be anticipated. Any such statement made by any partner or employee of the Firm is intended to be an expression of opinion only, based on information available to us at the time, and should not be construed by you as a promise or guarantee.

**Fees.** The Firm has agreed to represent you on a contingency basis. Under this agreement, you shall not be required to pay the Firm's hourly fees, and you will not be required



Antonio McKee
April 2, 2021

to pay us any attorneys' fees unless and until you obtain a recovery.  The contingency fee will
work as follows:

- <u>UFC Case</u>:  The Firm will be entitled to forty percent (40%) of the net recovery you
  receive in whole or partial satisfaction of your claims in the UFC Case if the matter
  resolves prior to the empaneling of the jury.  The Firm will be entitled to forty-five
  percent (45%) of the net recovery you receive in whole or partial satisfaction of your
  claims in the UFC Case if the matter resolves after the empaneling of the jury.  The net
  recovery is the balance of the gross recovery (whether from a judgment or a settlement)
  after reimbursement of all costs and expenses advanced by the Firm as described in the
  "Costs and Expenses" paragraph below.  If the UFC Case resolves before the jury is
  empaneled, after repaying those costs and expenses, and after paying the Firm
  (collectively with any litigation partner we may engage) 40% of the net recovery, you
  will receive the remaining 60% of the net recovery.  If the UFC Case resolves after the
  jury is empaneled, after repaying those costs and expenses, and after paying the Firm
  (collectively with any litigation partner we may engage) 45% of the net recovery, you
  will receive the remaining 55% of the net recovery.

- <u>Court-Ordered Fee or Cost Awards</u>:  If the Firm obtains a final judgment in your favor
  (or prevails in sanctions or other discovery motions), the Firm may be entitled to court-
  awarded costs and attorneys' fees under 18 U.S.C. § 2333(a) or other applicable law.
  Any costs that the Firm collects in such a manner will offset the costs and expenses that
  you are required to reimburse under the next paragraph.  By contrast, the Firm will be
  entitled to keep any attorneys' fees collected pursuant to a court-ordered fee-shifting
  award, in addition to the contingency fee(s) referenced above.

**Costs and Expenses.**  The Firm will advance all reasonable and necessary costs and
expenses of this engagement, including travel costs, filing fees, discovery-related costs, and costs
and fees paid to experts and consultants assisting with this case.  If we obtain a gross recovery on
your behalf in the UFC Case, you agree to repay out of that recovery your Pro Rata Share of any
costs and expenses that the Firm has advanced under this paragraph.  We will calculate your "Pro
Rata Share" of costs and expenses by taking the total costs and expenses advanced by the Firm in
preparing for and litigating all the claims brought in the UFC Case, and then assigning to each
client the proportional amount based on the amount of their respective recovery.

**Aggregate Representation and Conflicts.**  We have disclosed to you that we represent
other MMA fighters who competed in UFC events in the United States from 2010 through 2017,
and you agree that, in addition to representing you in the UFC Case, we may also represent other
similarly situated victims of UFC's alleged violations of the Sherman Act.  Simply put, this
means you agree that the Firm can represent other MMA fighters who competed in UFC events
in the United States from 2010 through 2017 who may have also suffered harm as a result of
UFC's alleged conduct.  We intend to assert your claims in the same lawsuit as—or in parallel
lawsuits consolidated with—the claims asserted by those other similarly situated victims.  We
believe that bringing all of our clients' Sherman Act claims together, in a consolidated lawsuit,



Antonio McKee
April 2, 2021

will have considerable efficiencies that will work to your benefit as well as the benefit of our other clients.

That said, it is possible that in the course of litigating your claims, an unforeseen conflict will develop between our representation of you and our representation of other clients asserting similar claims. If such a conflict does develop, we will advise you promptly and take steps (which may potentially include withdrawal and identification of substitute counsel) to remedy the conflict, consistent with our obligations under the Rules of Professional Conduct.

More generally, we represent many other companies and individuals. It is possible that during the time we are representing you, some of our present or future clients will be engaged in transactions, or encounter disputes, with you. You agree that we may continue to represent, and may undertake in the future to represent, existing or new clients in any matter that is not substantially related to our work for you even if the interests of such clients in those matters are directly adverse to you, provided we reasonably believe that we will be able to provide competent and diligent representation to you and the other client.

**Confidentiality.** As discussed above, we intend to represent many similarly situated victims and families injured by reason of UFC's alleged violations of the Sherman Act. You agree that we may share, in our discretion and consistent with applicable ethical rules and professional obligations, any confidential information learned from you with any of our other clients, and we will obtain from them the same consent to share their confidential information with you. We will protect any confidences and secrets obtained during the course of our representation of all similarly situated clients from disclosure to any third parties, but we may find it necessary – particularly in order to effectuate an aggregate settlement – to share such information among all of our clients. Your agreement to allow us to share confidences and secrets among all jointly represented clients means that, if any dispute were to arise between any of you, the attorney-client privilege may not be available to protect the legal advice we provided to you with respect to any issue relating to the UFC Case.

**Aggregate Settlement.** It is possible that the defendants will offer to settle your claims collectively alongside the claims of our other clients who suffered similar injuries by reason of UFC's anticompetitive acts. In other words, the defendants might not make a specific offer to resolve your claims for $X, but might instead make a larger global offer of $Y on the condition that we agree to settle your claims alongside the claims brought by all of the Firm's clients in the UFC Case. If we are presented with such an offer, we will disclose the offer to you and describe the nature of all the claims covered by the proposed settlement, as well as how each client would participate in the proposed settlement. We will not agree to any aggregate settlement resolving your claims without your informed consent.

There is always a risk that if any aggregate settlement offer requires the consent of all commonly represented plaintiffs, the failure of one or a few members of the group to consent to the settlement may result in the withdrawal of the offer. In the event a settlement offer is

4



Antonio McKee
April 2, 2021

received, you agree to weigh fully and in good faith the opinions and recommendations of the Firm concerning any offers for settlement of your claims. Should the Firm conclude that you have unreasonably withheld consent to a settlement proposal which, in the judgment of the Firm, is a fair and reasonable basis to resolve the UFC Case, you or the Firm may terminate this engagement upon written notice. In the event of termination under this paragraph, the Firm shall be entitled to compensation consistent with the "Termination of Representation" paragraph below.

**Termination of Representation.** You may terminate our representation at any time by notifying us. To the extent you obtain a recovery in the UFC Case after terminating the Firm, and only to the extent that the recovery is sufficient to cover the amounts set forth in this Paragraph, the Firm shall be entitled to repayment as follows:

First, the Firm will be entitled to recover in full your Pro Rata Share of all costs and expenses they previously advanced under the "Costs and Expenses" paragraph of this letter.

Second, the Firm will be entitled to fees out of any ultimate recovery you obtain after its termination, depending on the stage of the case at the time of the Firm's termination. If the Firm is terminated prior to the filing of a Complaint on your behalf, the Firm will not be entitled to any such additional fees. After that, the Firm's fee will be calculated as follows:

- UFC Case (all amounts exclusive of costs and expenses):
  - Prior to the Court's decision on a motion to dismiss: **10%**
  - Prior to the Court's decision on a motion for summary judgment: **20%**
  - Prior to closing arguments at trial: **30%**
  - After closing arguments at trial: **40%**

You agree to pay the Firm's fees, and your Pro Rata Share of the Firm's costs and expenses, within thirty (30) days of receiving any recovery in the UFC Case. Payment of your share of the Firm's costs, expenses, and fees under this Paragraph shall have priority over the compensation owed to any subsequent counsel that you hire. Once thirty (30) days have elapsed after your receipt of moneys obtained under a recovery, any amounts owed to the Firm under this Paragraph will begin to accrue interest at six percent (6%) per annum, compounding monthly.

Your termination of our services will not affect your responsibility for payment of outstanding statements and accrued fees, costs, and expenses incurred before termination or incurred thereafter in connection with an orderly transition of the matter. If such termination occurs, your papers and property will be returned to you promptly. Our own files pertaining to the matter will be retained. These Firm files include, for example, Firm administrative records, time and expense reports, personnel and staffing materials, and credit and accounting records; and internal lawyers' work product such as drafts, notes, internal memoranda, and legal and factual research, including investigative reports, prepared by or for the internal use of lawyers.



Antonio McKee
April 2, 2021

For various reasons, including the minimization of unnecessary storage expenses, and consistent with applicable professional conduct rules, we reserve the right to destroy or otherwise dispose of any such documents or other materials retained by us at the end of the Firm's retention period, which is seven years, without further notice to you.

We may withdraw from representation if you fail to fulfill your obligations under this agreement, including your obligation to pay our fees, costs, and expenses, or as permitted or required under any applicable standards of professional conduct or rules of court.

**Non-Disclosure.**  As we have explained, premature public disclosure of this agreement—or public discussion of our legal theories that we intend to assert in the UFC Case—will materially disadvantage our efforts to litigate on behalf of you and other similarly situated victims.  Thus, you agree to refrain from discussing with anyone, and to refrain from otherwise making public statements about, this engagement or the UFC Case, unless you have obtained the Firm's prior written consent.  This prohibition specifically applies (but is not limited) to making posts on social media.  This prohibition will no longer apply once we have publicly filed a lawsuit on your behalf.

**Notice Regarding Limited Nature of Representation in UFC Case.**  As we have also explained in the Scope of Engagement section, you understand that we are representing you under this engagement letter for the narrow purpose of reviewing your potential claims under the Sherman Act, counseling you regarding whether to "opt out" of the current antitrust class action against UFC (*Le v. Zuffa*), and handling any of the immediate work thereafter (*e.g.*, receiving a settlement offers from UFC, if any).  We have disclosed to you that we are currently in discussions with several prominent national law firms that have expressed an interest in working on this matter and have relevant antitrust expertise, and we believe – but cannot promise – that we will partner with a law firm to handle this matter.  You further understand that, because the decision of whether to "opt out" depends on the joinder of enough "opt out" plaintiffs so that the economics are viable for all the "opt out" plaintiffs, and on our ability to finalize a co-counsel relationship with a new firm after Scott+Scott's withdrawal from your matter, in the unlikely event that the Firm is unable to represent a sufficient number of "opt out" plaintiffs to make the matter economically viable, or we are unable to find a partner firm to complement our work for you and provide antitrust expertise, the Firm may elect to withdraw as your counsel in the UFC Case.  In such circumstances, we will do so within a reasonable time prior to any opt-out deadline if such deadline is announced, and we will counsel you to remain in the class action (*Le v. Zuffa*) rather than opting out.  If we withdraw in such circumstances, you will owe us nothing and we will not have any claim to any recovery you receive as a class member in *Le v. Zuffa* or any fees owed to any class counsel in *Le v. Zuffa*.  While the Firm does not believe it is likely that we will have to withdraw like this, we cannot completely rule out the risk.

6



Antonio McKee
April 2, 2021


  We look forward to representing you on the basis set forth in this letter.  Please review this letter carefully and, if it meets with your approval, please sign the enclosed copy of this letter and return it to us so that we may begin work.  You should save a copy of this letter for your records.  Please call us if you have any questions.

Very truly yours,

SPARACINO P.L.L.C.


By:

Ryan R. Sparacino
1920 L St. NW, Suite 535
Washington DC 20036
202-629-3530
ryan.sparacino@sparacinopllc.com




Agreed and accepted:



Antonio Mckee
Print Name


Date:


7



Antonio McKee
April 2, 2021

<u>**Re: Lawsuit Next Steps (Document Retention)**</u>

*PRIVILEGED & CONFIDENTIAL ATTORNEY CLIENT COMMUNICATION*
*ATTORNEY OPINION WORK PRODUCT*

Dear Mr. Antonio McKee:

You are receiving this document because you intend to sign our engagement letter and we are evaluating whether you have claims that may be filed in federal court. Below are three points about this process to make you aware of moving forward: First, it is critically important for the litigation that you save any documents in your possession that may relate to the case in any way. This includes any documents related to your participation in and/or payment for participation in Ultimate Fighting Championship ("UFC") events. You must save documents regardless of their source – this includes your email accounts, your household files, or anywhere else you may have information related to UFC events. You must save documents regardless of whether they were written by you or someone else. Do not destroy any relevant hard copy documents or delete any electronic documents related to these topics, including email, text messages, and social media posts. If you have any questions about any documents, please let us know. In the meantime, save the documents. Destroying a document related to the case could cause real damage to your claims.

Second, if you are on social media in a public way, you should consider changing your settings to private. Lawyers for the defendants, journalists, and others may try to look you up, use things that you have posted against you, or even contact you. We found this website that may be helpful in setting your accounts to private, though we cannot vouch for its accuracy: http://www.makeuseof.com/tag/make-social-media-accounts-private/ For the same reason, from now on, please do not talk about your possible claim against UFC or anything related to it on social media or in writing in any way, other than to us. If you email your friends about the case, for example, you are creating a non-privileged written record that will need to be preserved. Additionally, many clients have expressed an interest in sharing basic news about the case with people they believe should consider joining this case (friends or other families of attack victims). That is still okay, but if you choose to do so, please refrain from substantively commenting about the case beyond a simple statement encouraging folks to read an article, etc.

Third, lawyers or reporters may try to contact you. If that happens, we strongly urge you to refer these people to us. If one of them catches you on the phone, you can simply say, "You should talk to my lawyer. His name is Ryan Sparacino and his number is (202) 629-3530. Thank you for calling." Then you can hang up. I know I can speak for everyone from Sparacino PLLC when I say would be an honor to represent you. As always, please let us know if you have any questions.

Initialed:

DocuSign Envelope ID: 75B1B9A2-A17E-4CB3-B8E9-6CF487B3EB40



Antonio McKee
April 2, 2021

## **Firm Contact Information**

**Sparacino PLLC:**

Attorney: Ryan Sparacino, Managing Partner

Email: ryan.sparacino@sparacinopllc.com

Phone: 202-629-3530

Attorney: Eli J. Kay-Oliphant, Partner

Email: eli.kay-oliphant@sparacinopllc.com

Phone: 312-216-5111



Antonio McKee
April 2, 2021

## FREQUENTLY ASKED QUESTIONS FOR POTENTIAL PLAINTIFFS

### *PRIVILEGED & CONFIDENTIAL ATTORNEY WORK PRODUCT*

1.  **QUESTION:** *Who is the defendant?*

**ANSWER:** In the contemplated antitrust case, we expect the defendant will be **Zuffa, LLC**, which does business as the **Ultimate Fighting Championship** or **UFC**.

2.  **QUESTION:** *What do I have to do if I join the case?*

**ANSWER:** Because we have not yet heard from you regarding your experience, it is difficult to say with 100% certainty what you will have to do if you decide to opt-out from the class action in *Le v. Zuffa*. Based on prior cases, we expect your personal involvement to be fairly modest. Broadly speaking, you would first speak with us to tell us your story; later, you might have to provide some basic information and documents. Later, it is possible you may have to testify at a deposition or in court. If that happened, we would spend as much time as you like helping you to prepare, and we would attend with you.

3.  **QUESTION:** *What is the 45-Day Withdrawal Period after the class certification order?*

**ANSWER:** We expect the Court in *Le v. Zuffa* to enter an order under Rule 23 of the Federal Rules of Civil Procedure that certifies the "Bout Class" in *Le v. Zuffa*, and that you will be eligible, as a member of the Bout Class. We want you to be confident in your choice of counsel and your decision to retain us to provide you counsel concerning potentially opting out in *Le v. Zuffa*. To that end, we have agreed that you may terminate our representation of you in the UFC Case for any reason, or no reason at all, within forty-five (45) days of the entry of any class certification order by the Court in *Le*, which we will promptly disclose to you. Should you choose to terminate our services within this 45-day period, even if you do so to remain in the class action as a class member in *Le v. Zuffa* or hire other counsel to pursue your opt-out case, we agree that you will owe us nothing and that the Firm will fully release you from this Agreement, other than with respect to the provisions in this Agreement concerning "Confidentiality," "Non-Disclosure," and "Aggregate Representation and Conflicts," which we believe are necessary to protect the legal strategy of the remaining clients whom the Firm represents in the UFC Case. For the avoidance of all doubt, you can also terminate us at any time, for any reason; if you do so within 45 days of the entry of the class certification order under Rule 23, we will forego any claim to any share of your recovery. If you terminate us after 45 days of the entry of the class certification order under Rule 23, we will follow the terms outlined in the "Termination of Representation" of our engagement letter.



Antonio McKee
April 2, 2021

## FREQUENTLY ASKED QUESTIONS FOR POTENTIAL PLAINTIFFS

*PRIVILEGED & CONFIDENTIAL ATTORNEY WORK PRODUCT*

**4.  QUESTION:**  *Will my information be kept confidential?*

**ANSWER:**  Your name and the basic outline of the legal harm that you have suffered will be public.  Beyond that, your personal information will be confidential for at least the early stages of the litigation, and possibly for the entire case.  At the outset, the only people who will have access to your personal information are the lawyers from our firm, the court, and the defendants. We expect that anyone who has access to your personal information will be under a legal obligation not to publicly disclose your information to anyone without your consent.

**5.  QUESTION:**  *Will I have to pay any money?*

**ANSWER:**  Not during the course of the representation for the litigation itself.  We will advance all litigation costs, and we will not charge you an hourly fee.  Our compensation, including certain costs, will be taken out of any recovery, but only if there is a recovery.  Upon a recovery either through settlement or from a court, the Firm (collectively with a litigation partner we may engage) will receive 40% of any recovery remaining after all our costs and fees have been reimbursed if the matter resolves before the jury has been empaneled, and the Firm (collectively with a litigation partner we may engage) will receive 45% of any recovery remaining after all our costs and fees have been reimbursed if the matter resolves after the jury has been empaneled. You will **never owe us any money** unless you obtain a recovery from a defendant.

**6.  QUESTION:**  *How much money am I likely to receive if we win?*

**ANSWER:**  It is very hard to predict how much money you may recover.  In addition, a recovery in a settlement before trial would be substantially smaller than a recovery after trial. That is because pursuing a case all the way to trial runs a significant risk of losing and receiving nothing at all.

Each plaintiff's damages will depend upon, among other things, the number of UFC fights they fought in as well as several other factors.  Without making any guarantees, we believe that each fighter who joins this effort may have a "damages" case of at least several hundred thousand dollars, if not significantly more, and we therefore expect each client to recover a substantial sum if we are successful on their behalf.  We can talk about this in more detail after we have had a chance to analyze your UFC career in greater detail should you choose to join this effort.



Antonio McKee
April 2, 2021

## FREQUENTLY ASKED QUESTIONS FOR POTENTIAL PLAINTIFFS
### *PRIVILEGED & CONFIDENTIAL ATTORNEY WORK PRODUCT*

**7.  QUESTION:**  *How much money will you make?*

**ANSWER:**   If we are not successful the Firm will lose money because we are advancing the costs of bringing them.  Those costs include travel, legal and factual research, and hiring experts, as well as our lost time that could have been spent on other cases.  We expect those costs to run into the millions of dollars.  However, if we are successful and the defendants agree to compensate the plaintiffs or are required to do so by a jury, we will be re-paid for the expenses we have incurred, and the Firm will receive a percentage of the recovery.  Specifically, the Firm (collectively with any litigation partner we engage) will receive 40 percent of the remainder of what defendants pay after all costs are deducted from the recovery amount with respect to any recovery that we obtain prior to the jury being empaneled, or 45 percent of the remainder of what defendants pay after all costs are deducted from the recovery amount with respect to any recovery that we obtain prior to the jury being empaneled.

**8.  QUESTION:**  *What sorts of litigation costs will come out of my recovery?*

**ANSWER:**   The Firm (and or any litigation partner we may engage) will advance a variety of expenses over the course of the litigation.  This includes travel costs to meet with plaintiffs and witnesses.  We will also advance your costs if you need to travel for the case for depositions or something similar.  We will also advance the cost to hire experts to consult with us and to testify in court.  If we go to trial and win a jury verdict, the defendants may have to pay our litigation costs.  But if defendants end up settling the case, each side will likely pay its own litigation costs, and those costs will be repaid by the proceeds of the settlement.  Our 40 percent contingency fee (45 percent if the matter continues after the jury has been empaneled) is applied to the amount of recovery left after all costs are deducted.

**9.  QUESTION:**  *What happens if I no longer want you to represent me?*

**ANSWER:**  You may terminate us at any time.  If you fire us before the end of the lawsuits, hire another lawyer, and recover from the defendant, then you will be required to compensate us for our costs and certain fees.  Generally, this would consist of (1) our actual out-of-pocket costs spent on your case, and (2) an equitable share of the recovery you obtain while represented by another lawyer, depending on how much work we had done for you.  Our engagement letter spells out these fees in more detail.  That said, unless and until you go on to recover money from the defendant using a different lawyer, you will not owe us any money.



Antonio McKee
April 2, 2021

## FREQUENTLY ASKED QUESTIONS FOR POTENTIAL PLAINTIFFS
### *PRIVILEGED & CONFIDENTIAL ATTORNEY WORK PRODUCT*

**10. QUESTION:** *How long will the case take?*

**ANSWER:** That is very hard to predict. A very rough estimate is anywhere from two years to seven years. However, it could take even longer.

**11. QUESTION:** *How will I know what is happening in the case?*

**ANSWER:** We will keep you updated every step of the way, primarily via email. There will be various stages of the case, likely over several years, but we do not anticipate that your personal involvement will be extensive. If you join the case, you should be prepared for long periods of time – potentially several months or even longer – where we may not have very much new information to share with you. We will not settle or dismiss your case without your express approval.

**12. QUESTION:** *Can you give me an overview of the various stages of the case?*

**ANSWER:** Here is a brief overview of the stages of the case.

First, we will evaluate your claim and determine whether you have an "opt out" claim. If you do, we would file a document with a court in which our clients "opt out" of the existing class action lawsuit against UFC (*Le v. Zuffa*). By "opting out," our clients would be electing to pursue their own antitrust case against UFC, independent of the class action lawsuit (*Le v. Zuffa*). In this "opt-out case," former UFC fighters would band together in one lawsuit in order to pursue a more aggressive legal strategy against UFC than the approach followed by "class counsel." Simply put, UFC fighters who "opt out" will seek substantially greater compensation from UFC than the fighters who remain part of the class action suit.

On behalf of our "opt-out" clients, we would file a new antitrust lawsuit against UFC.

At some point after we file our antitrust lawsuit, UFC will likely file a motion to dismiss the case. In this motion, UFC will likely argue that what we allege in the complaint is inadequate under the law. We will then reply with our own legal briefs, and then the judge will issue a ruling. If the judge agrees with UFC, the case would be dismissed, but we would get a chance to appeal to a higher court. That would involve more legal arguments, both on paper and in person.

DocuSign Envelope ID: 75B159A3-A17F-4CB3-B8E9-2CF487B3EB40



Antonio McKee
April 2, 2021

## FREQUENTLY ASKED QUESTIONS FOR POTENTIAL PLAINTIFFS
### *PRIVILEGED & CONFIDENTIAL ATTORNEY WORK PRODUCT*

If the judge agrees with us, however, the next step in the case is what is called "discovery." That is when we get to see UFC's files relevant to our claims. These would include Dana White's communications, as well as those of the Fertitta brothers. UFC will also get limited access to some documents about you. After we exchange documents, we will get to take depositions, which are formal interviews of UFC's employees and other people who have relevant information. At some point UFC will probably have a chance to depose the plaintiffs.

After discovery is complete, UFC will likely file another round of written arguments to try to convince the judge to throw the case out. This time they may argue that, based on the documents and deposition testimony, we don't have enough evidence to convince a jury that we should win. Once again, if the court agrees with UFC, we would have a chance to appeal.

If the court agrees with us, the next step would be a trial.

If we win at trial, UFC would have an opportunity to appeal to a higher court. It is possible that the higher court could order us to do the trial again. If we lose at trial, we may also be able to appeal.

Any or all the above could happen, but antitrust – when they settle – more often than not settle before trial. Oftentimes the defendants decide they would rather pay to end the case through a settlement to avoid the risk of a jury ordering them to pay even more, and the plaintiffs decide that they would rather accept a smaller amount through a settlement than risk the jury deciding they should get less or nothing.

**13. QUESTION:** *Do I have to go to court?*

**ANSWER:** Probably not. If a case goes all the way to trial, you may have to go to trial and testify. But you are not likely to be required to attend any other proceedings in court.



Antonio McKee
April 2, 2021

## FREQUENTLY ASKED QUESTIONS FOR POTENTIAL PLAINTIFFS

### *PRIVILEGED & CONFIDENTIAL ATTORNEY WORK PRODUCT*

**14. QUESTION:**  *Can I go to court?*

**ANSWER:**  Yes.  It is unusual for a plaintiff in cases like these to go to the court, other than during a trial.  Court appearances generally only involve the lawyers arguing about the law, but you are free to attend if you like.

**15. QUESTION:**  *What if I want to quit the cases?*

**ANSWER:**  You can drop your claim any time you want.  You will never owe us any money unless you receive compensation from a defendant.

**16. QUESTION:**  *How would a settlement work?*

**ANSWER:**  UFC might offer to settle with specific plaintiffs, or certain groups of plaintiffs, or all plaintiffs.  We would share any offer with the relevant plaintiffs, along with a recommendation about whether to accept.  One thing that is important to understand is that UFC may make an offer to settle with all the plaintiffs and refuse to settle unless all the plaintiffs agree.  If that happens, every plaintiff will have the right to make his or her own decision.  Know that if you want to settle but other plaintiffs do not, UFC may withdraw the offer.

**17. QUESTION:**  *Who are you?*

**ANSWER:**  Sparacino PLLC is a law firm that focuses on white-collar investigations and complex litigation. Our lawyers have experience conducting sensitive investigations for companies and individuals, defending clients in criminal and civil enforcement proceedings, litigating through trial, and counseling companies and individuals on international business operations in high-risk regions. Our in-house team, working under the supervision of attorneys licensed to practice in D.C., also includes investigative, research, and former U.S. government intelligence professionals.

We anticipate engaging a litigation partner who will assist us with litigating against UFC.  When we do so, we will ask that you review and sign a new engagement letter, detailing the terms on which they will represent you, alongside Sparacino.



Antonio McKee
April 2, 2021

## FREQUENTLY ASKED QUESTIONS FOR POTENTIAL PLAINTIFFS
### *PRIVILEGED & CONFIDENTIAL ATTORNEY WORK PRODUCT*

**18. QUESTION:** *Who represents the Plaintiffs in Le v. Zuffa?*

**ANSWER:** Interim Class Counsel in *Le v. Zuffa* comprises:

(1) Liaison Counsel for the Proposed Class: Dan Springmeyer of Kemp Jones, LLP, 3800 Howard Hughes Parkway, 17th Floor, Las Vegas, NV 89169, (702) 385-6000, d.springmeyer@kempjones.com.

(2) Co-Lead Counsel for the Proposed Class:

    a. Joseph R. Saveri, Joshua P. Davis, and Kevin E. Rayhill of the Joseph Saveri Law Firm, Inc., 601 California Street, Suite 1000, San Francisco, CA 94108, (415) 500-6800, jsaveri@saverilawfirm.com, jdavis@saverilawfirm.com, krayhill@saverilawfirm.com.

    b. Benjamin D. Brown, Richard A. Koffman, and Daniel Silverman of Cohen Milstein Sellers & Toll, PLLC, 1100 New York Ave., N.W., Suite 500, East Tower, Washington, D.C. 20005, (202) 408-4600, bbrown@cohenmilstein.com, rkoffman@cohenmilstein.com, dsilverman@cohenmilstein.com.

    c. Eric L. Cramer, Michael Dell'Angelo, Patrick Madden, and Mark R. Suter of Berger Montague PC, 1818 Market Street, Suite 3600, Philadelphia, PA 19103, (215) 875-3000, ecramer@bm.net, mdellangelo@bm.net, pmadden@bm.net, msuter@bm.net.

(3) Additional Counsel for the Proposed Class:

    a. Robert C. Maysey & Jerome K. Elwell of Warner Angle Hallam Jackson & Formanek PLC, 2555 E. Camelback Road, Suite 800, Phoenix, AZ 85016, (602) 264-7101, rmaysey@warnerangle.com, jelwell@warnerangle.com.

    b. Frederick S. Schwartz of the Law Office of Frederick S. Schwartz, 15303 Ventura Boulevard, #1040, Sherman Oaks, CA 91403, (818) 986-2407, fred@fredschwartzlaw.com.

    c. William G. Caldes of Spector Roseman & Kodroff, P.C., 2001 Market Street, Suite 3420, Philadelphia, PA 19103, (215) 496-0300, wcaldes@srkw-law.com.



Antonio McKee
April 2, 2021

## FREQUENTLY ASKED QUESTIONS FOR POTENTIAL PLAINTIFFS
### *PRIVILEGED & CONFIDENTIAL ATTORNEY WORK PRODUCT*

**19. QUESTION:** *How do you know who may have a claim against UFC?*

**ANSWER:** We have reviewed a substantial number of legal filings, media accounts, and UFC-related data online have concluded from our efforts that it is more likely than not that each MMA fighter who competed in a UFC event inside the United States from 2010 through 2017 may have viable antitrust claims against UFC. Unfortunately, that conclusion is not iron-clad, and it is possible that we could learn from future evidence that you do not have a viable claim. For example, if we misunderstood your career in the UFC, and it turns out that you never competed in a UFC event in the U.S. from 2010 through 2017, then you would not have a claim and you would not be eligible to participate in the case.

**20. QUESTION:** *What is a class action lawsuit?*

**ANSWER:** *Le v. Zuffa* is a class action lawsuit. A class action lawsuit is a lawsuit in which a group of people with the same or similar injuries caused by the same product or action file suit against the defendant as a group. At first, the group is represented by specific individuals (or representatives), and those representatives seek an opinion from the court that they may be able to represent all the other, absent, class members. If the court in *Le v. Zuffa* decides that a class is certifiable, and that the individuals who seek to represent the class may do so, and you are a member of that class based on how it is defined, then you can participate in the case without doing anything. You need not act, in that situation. The court, if it certifies a class, will also provide an "opt out date" by which people who are members of the class may decide not to participate in the class action lawsuit. An opt-out lawsuit is a lawsuit in which an individual plaintiff "opts out" of the class action lawsuit, and brings its own claim, separate and apart from the class action. To be clear, when you opt out, you no longer participate in the class action. By making a claim that is separate from the larger class action, an individual plaintiff can sometimes negotiate both a larger and more rapid settlement recovery than if the plaintiff was a more passive beneficiary of the class action lawsuit. But as discussed with regard to the next question, that is not always the case.

17



Antonio McKee
April 2, 2021

### FREQUENTLY ASKED QUESTIONS FOR POTENTIAL PLAINTIFFS

*PRIVILEGED & CONFIDENTIAL ATTORNEY WORK PRODUCT*

**21. QUESTION:** *What are the risks of "opting out" of the class action lawsuit?*

**ANSWER:**   In *Le v. Zuffa*, the Court appointed the law firms Berger & Montague, P.C., Cohen Milstein Sellers & Toll PLLC, and Joseph Saveri Law Firm, Inc, as "Interim Co-Lead Class Counsel" and Wolf Rifkin, Shapiro, Schulman & Rabkin, LLP as "Liaison Counsel" to represent the interests of class.  These firms have been working on the *Le v. Zuffa* case since before it was filed in 2014.  To be clear, we are not class counsel.

On or about December 10, 2020, the Court indicated its intention to certify a class defined as follows: all persons who competed in one or more live professional UFC-promoted MMA bouts taking place or broadcast in the United States from December 16, 2010 to June 30, 2017 (the "Bout Class").  If you are a member of the Bout Class, then your interests are currently represented by Interim Class Counsel and Liaison Counsel.  You do not need take any action as this time to benefit from any recovery in the Class Action.  In the future, you should receive a Court-approved notice that explains your rights as a member of the Bout Class, including the right to opt-out of the Class Action, which you should carefully review.

We believe you should consider opting out of the *Le v. Zuffa* class action and would be happy to explain to you the benefits of pursuing your own litigation so you can decide which choice is best for you and your family. If you do decide to opt out, then you would not be eligible to participate in any potential recovery in the Class Action.  You would chart your own course.  If, however, you wish to remain part of the Bout Class, you need not do anything.

Any decision to opt-out of the current class action lawsuit against UFC (*Le v. Zuffa*) to pursue a more aggressive legal strategy than that sought by class counsel carries some risk.  It is possible that UFC could settle with the class, and then prevail at trial against those who opt-out.  We believe, however, that the potential upside for any plaintiffs who opt-out may outweigh this risk.  While we cannot make any promises or guarantees, we believe, in general, that parties who opt-out of class actions often make substantially more than those who choose to remain in the class.  On balance, we believe that this risk is substantially outweighed by the potential upside of aggressively pursuing claims as an opt-out plaintiff.

DocuSign Envelope ID: 75B159A3-A17F-4CB3-B859-9CF487B3EB40



Antonio McKee
April 2, 2021

## FREQUENTLY ASKED QUESTIONS FOR POTENTIAL PLAINTIFFS
### *PRIVILEGED & CONFIDENTIAL ATTORNEY WORK PRODUCT*

**22.  QUESTION:**  *Is there any chance that Sparacino PLLC would not represent me if I choose to join this effort?*

**ANSWER:**  Yes, but we believe the odds are very low.  As outlined in our engagement letter, we will only encourage you to opt-out if we have (a) finalized a joint representation agreement with a law firm partner who will assist us in court; and (b) reached a critical mass in terms of the number of clients who have joined this effort.

With respect to a critical mass of clients, we believe that the potential opt-out antitrust case against UFC is all about strength in numbers:  the more clients who sign up, the greater our clients' collective power is to legally fight UFC.  On the flip side, if we are unable to sign up a significant number of clients, we do not believe it would make sense for our clients to opt-out as they would potentially not have the leverage necessary to make the exercise worth it.  To be clear:  we are confident in our ability to represent a large enough number of clients for the "opt-out" strategy to be viable.  But, if we are wrong, you will be able to remain in the class action, you will not owe us any money, and we will simply withdraw from representing you.

**23.  QUESTION:**  *Who are Scott+Scott Attorneys at Law LLP?*

**ANSWER:**  Scott+Scott Attorneys at Law LLP ("Scott+Scott") were our previous litigation partner in this case.  Scott+Scott has decided to withdraw from participating in this case.  We anticipate that we will engage a different litigation partner to assist with litigating the "opt-out" cases, should you decide to "opt-out" of the *Le v. Zuffa* matter.  We will ask that you sign a new engagement letter with both Sparacino and the litigation partner if we do so.

DocuSign Envelope ID: 75B1B9A3-A17F-4CB3-B859-2CE487B3EB40



Antonio McKee
April 2, 2021

## **DISCLAIMER**

### *PRIVILEGED & CONFIDENTIAL ATTORNEY WORK PRODUCT*

Thank you for reviewing the *Frequently Asked Questions for Potential Plaintiffs* addendum ("FAQ") to the brochure prepared by Sparacino PLLC (the "Firm"). We would be glad to provide you with further information or answer any questions you may have about our Firm. The information and material in this FAQ are not intended to provide and should not be relied upon as a source of, legal advice on any matter.

The Firm is not responsible for any action or failure to act in reliance upon information in this FAQ. The Firm's giving of this FAQ to you is not intended to create, and will not create, an attorney-client relationship with any person or entity. In addition, although we welcome your inquiries into our Firm, and encourage you to contact us or use the website identified in the brochure, simply contacting our Firm will not create an attorney-client relationship. Before we can undertake a representation, we must, among other things, determine that doing so will not involve a conflict of interest. Therefore, you should not send us any confidential information or information about any legal matter until we have agreed to represent or advise you. Please note that any information you convey to our Firm before an attorney-client relationship has been established may not be privileged or confidential.

Every case is different. You are advised that not all client results are included and prior client results do not guarantee a similar outcome. The Firm employs non-attorneys who may work on this matter under the supervision of lawyers but cannot themselves provide you legal advice.

All material in this FAQ, unless otherwise marked, is copyrighted by the Firm. The inclusion of any part of this FAQ in another work (printed, electronic, or other form) is prohibited.

The Firm anticipates filing the antitrust case against UFC in federal court in Washington, D.C., where every lawyer identified in this brochure is licensed to practice or practicing under the supervision of a member of the D.C. Bar. The lawyers in this brochure are not licensed to practice (or an active member of the bar) in one or more of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin and Wyoming. Only one lawyer in the Firm – Eli Kay-Oliphant – is actively licensed to practice law outside of Washington, D.C. (Mr. Kay-Oliphant is licensed in D.C., New York, and Illinois.) If one or both cases are for some reason transferred to a court outside of Washington, D.C., the Firm may have to engage the services of local counsel.



Antonio McKee
April 2, 2021

## **DISCLAIMER**

### *PRIVILEGED & CONFIDENTIAL ATTORNEY WORK PRODUCT*

IOWA DISCLOSURE:  The determination of the need for legal services and the choice of a lawyer are extremely important decisions and should not be based solely upon advertisements or self-proclaimed expertise. This disclosure is required by rule of the Supreme Court of Iowa.  Memberships and offices in legal fraternities and legal societies, technical and professional licenses, and memberships in scientific, technical and professional associations and societies of law or field of practice do not mean that a lawyer is a specialist or expert in a field of law, nor do they mean that such a lawyer is necessarily any more expert or competent than any other lawyer. All potential clients are urged to make their own independent investigation and evaluation of any lawyer being considered. This notice is required by rule of the Supreme Court of Iowa.

Stacy J. Taylor is licensed in Washington, D.C. and is the lawyer who is responsible for this advertisement.

**THIS IS AN ATTORNEY ADVERTISEMENT AND CONTAINS ATTORNEY ADVERTISING MATERIALS.**



Antonio McKee
April 2, 2021

<u>**Re:      Understanding of Participation in a Potential Antitrust Opt-Out Complaint Against Ultimate Fighting Championship**</u>

***PRIVILEGED & CONFIDENTIAL ATTORNEY WORK PRODUCT***

I, Antonio McKee, have reviewed to my satisfaction the enclosed engagement letter and related materials.  I understand and agree that by signing the engagement letter in this packet, Sparacino PLLC will evaluate my claims and may file a complaint naming me as a plaintiff in a complaint against Zuffa, LLC d/b/a Ultimate Fighting Championship, opting out of the class action *Le et al. v. Zuffa, LLC*, case number 15-cv-1045, in the Federal District Court for the District of Nevada.

Signature

Date:

EXHIBIT D

| | |
|---|---|
| **From:** | Antonio Mckee |
| **To:** | rmaysey@mmafa.tv |
| **Subject:** | Fwd: Reminder: Privileged & Confidential – Replacement Engagement Letter for UFC Case |
| **Date:** | Thursday, May 6, 2021 12:56:37 PM |

Sent from my iPhone

Begin forwarded message:

> **From:** UFC Case via DocuSign <dse_NA3@docusign.net>
> **Date:** May 3, 2021 at 9:09:38 PM PDT
> **To:** Antonio Mckee <antoniomckee@yahoo.com>
> **Subject: Reminder: Privileged & Confidential – Replacement Engagement Letter for UFC Case**
> **Reply-To:** UFC Case <ufccase@sparacinopllc.com>



DocuSign

UFC Case sent you a document to review and sign.

**REVIEW DOCUMENT**

**UFC Case**
ufccase@sparacinopllc.com

PRIVILEGED & CONFIDENTIAL
ATTORNEY COMMUNICATION
WITH POTENTIAL CLIENT

Dear Mr. McKee,

Thank you for considering hiring Sparacino PLLC to represent you in connection with your decision whether to "opt out" of the class action in Le v. Zuffa.  Our partner firm, Scott+Scott, has withdrawn from the matter for business reasons specific to Scott+Scott that do not, we believe, have anything to do with the merits of your potential opt-out claim, or our ability, working with an elite antitrust litigation partner firm, to effectively represent you and give you counsel concerning the pros and cons of any decision to opt-out of the class in Le v. Zuffa.

To be clear: we still believe in this case, and we are currently in discussions with several prominent national antitrust litigation firms who are very interested in potentially working on the "opt-out" matter.

In Le v. Zuffa, the Court appointed the law firms Berger & Montague, P.C., Cohen Milstein Sellers & Toll PLLC, and Joseph Saveri Law Firm, Inc, as "Interim Co-Lead Class Counsel" and Wolf Rifkin, Shapiro, Schulman & Rabkin, LLP as "Liaison Counsel" to represent the interests of class.  These firms have been working on the Le v. Zuffa case since before it was filed in 2014.  To be clear, we are not class counsel nor have we appeared as counsel in Le v. Zuffa.

On or about December 10, 2020, the Court indicated its intention to certify a class defined as follows: all persons who competed in one or more live professional UFC-promoted MMA bouts taking place or broadcast in the United States from December 16, 2010 to June 30, 2017 (the "Bout Class").  If you are a member of the Bout Class, then your interests are currently represented by Interim Class Counsel and Liaison Counsel.   You do not need take any action as this time to benefit from any recovery in the Class Action.   In the future, you should receive a Court-approved notice that explains your rights as a member of the Bout Class, including the right to opt-out of the Class Action, which you should carefully review.

As we have previously discussed, we believe you should consider opting out of the Le v. Zuffa Class Action and would be happy to explain to you the benefits of pursuing your own litigation so you can decide which choice is best for you and your family. If you do decide to opt out, then you would not be eligible to participate in any potential recovery in the Class Action.  You would chart your own course.  If, however, you wish to remain part of the Bout Class, you need not do anything in response to this letter or our prior letter.

We are currently in discussions with several prominent national antitrust litigation firms, and we are confident that we will find a partner firm to replace Scott+Scott and provide the same high-quality legal services you would have received from Scott+Scott.  To that end, we have prepared an updated engagement letter for your review.  If you decide you wish for Sparacino PLLC to represent you, please execute the updated engagement letter at your convenience.

Please note that you will no longer have to prepare the intake questionnaire at this time.  If, as we expect, we are able to reach terms with an antitrust partner firm as co-counsel, we will present you with an updated engagement letter at that time.  Thereafter, we will ask you to complete the questionnaire, but since it is driven by antitrust litigation counsel's legal strategy, it will wait until after we have reached a new co-counsel deal with a firm to replace Scott+Scott.

And if you have any questions or concerns, please don't hesitate to contact me or my partner, Ryan Sparacino, at your convenience and we would be happy to brief you on these matters.

Best,

Eli

**Do Not Share This Email**
This email contains a secure link to DocuSign. Please do not share this email, link, or access code with others.

**Alternate Signing Method**
Visit DocuSign.com, click 'Access Documents', and enter the security code:
C33E929AA6BC44BFBC065DD2D69E80833

**About DocuSign**
Sign documents electronically in just minutes. It's safe, secure, and legally binding. Whether you're in an office, at home, on-the-go -- or even across the globe -- DocuSign provides a professional trusted solution for Digital Transaction Management™.

**Questions about the Document?**
If you need to modify the document or have questions about the details in the document, please reach out to the sender by emailing them directly.

**Stop receiving this email**
Report this email or read more about Declining to sign and Managing notifications.

If you are having trouble signing the document, please visit the Help with Signing page on our Support Center.

Download the DocuSign App

This message was sent to you by UFC Case who is using the DocuSign Electronic Signature Service. If you would rather not receive email from this sender you may contact the sender with your request.

EXHIBIT E

| | |
|---|---|
| **From:** | Antonio Mckee |
| **To:** | rmaysey@mmafa.tv |
| **Subject:** | Fwd: Reminder: Privileged & Confidential – Replacement Engagement Letter for UFC Case |
| **Date:** | Monday, May 10, 2021 2:49:17 PM |

Sent from my iPhone

Begin forwarded message:

> **From:** UFC Case via DocuSign <dse_NA3@docusign.net>
> **Date:** May 8, 2021 at 9:12:47 PM PDT
> **To:** Antonio Mckee <antoniomckee@yahoo.com>
> **Subject: Reminder: Privileged & Confidential – Replacement Engagement Letter for UFC Case**
> **Reply-To:** UFC Case <ufccase@sparacinopllc.com>



DocuSign

UFC Case sent you a document to review and sign.

**REVIEW DOCUMENT**

**UFC Case**
ufccase@sparacinopllc.com

PRIVILEGED & CONFIDENTIAL
ATTORNEY COMMUNICATION
WITH POTENTIAL CLIENT

Dear Mr. McKee,

Thank you for considering hiring Sparacino PLLC to represent you in connection with your decision whether to "opt out" of the class action in Le v. Zuffa.  Our partner firm, Scott+Scott, has withdrawn from the matter for business reasons specific to Scott+Scott that do not, we believe, have anything to do with the merits of your potential opt-out claim, or our ability, working with an elite antitrust litigation partner firm, to effectively represent you and give you counsel concerning the pros and cons of any decision to opt-out of the class in Le v. Zuffa.

To be clear: we still believe in this case, and we are currently in discussions with several prominent national antitrust litigation firms who are very interested in potentially working on the "opt-out" matter.

In Le v. Zuffa, the Court appointed the law firms Berger & Montague, P.C., Cohen Milstein Sellers & Toll PLLC, and Joseph Saveri Law Firm, Inc, as "Interim Co-Lead Class Counsel" and Wolf Rifkin, Shapiro, Schulman & Rabkin, LLP as "Liaison Counsel" to represent the interests of class.  These firms have been working on the Le v. Zuffa case since before it was filed in 2014.  To be clear, we are not class counsel nor have we appeared as counsel in Le v. Zuffa.

On or about December 10, 2020, the Court indicated its intention to certify a class defined as follows: all persons who competed in one or more live professional UFC-promoted MMA bouts taking place or broadcast in the United States from December 16, 2010 to June 30, 2017 (the "Bout Class").  If you are a member of the Bout Class, then your interests are currently represented by Interim Class Counsel and Liaison Counsel.   You do not need take any action as this time to benefit from any recovery in the Class Action.   In the future, you should receive a Court-approved notice that explains your rights as a member of the Bout Class, including the right to opt-out of the Class Action, which you should carefully review.

As we have previously discussed, we believe you should consider opting out of the Le v. Zuffa Class Action and would be happy to explain to you the benefits of pursuing your own litigation so you can decide which choice is best for you and your family. If you do decide to opt out, then you would not be eligible to participate in any potential recovery in the Class Action.  You would chart your own course.  If, however, you wish to remain part of the Bout Class, you need not do anything in response to this letter or our prior letter.

We are currently in discussions with several prominent national antitrust litigation firms, and we are confident that we will find a partner firm to replace Scott+Scott and provide the same high-quality legal services you would have received from Scott+Scott.  To that end, we have prepared an updated engagement letter for your review.  If you decide you wish for Sparacino PLLC to represent you, please execute the updated engagement letter at your convenience.

Please note that you will no longer have to prepare the intake questionnaire at this time.  If, as we expect, we are able to reach terms with an antitrust partner firm as co-counsel, we will present you with an updated engagement letter at that time.  Thereafter, we will ask you to complete the questionnaire, but since it is driven by antitrust litigation counsel's legal strategy, it will wait until after we have reached a new co-counsel deal with a firm to replace Scott+Scott.

And if you have any questions or concerns, please don't hesitate to contact me or my partner, Ryan Sparacino, at your convenience and we would be happy to brief you on these matters.

Best,

Eli

**Do Not Share This Email**
This email contains a secure link to DocuSign. Please do not share this email, link, or access code with others.

**Alternate Signing Method**
Visit DocuSign.com, click 'Access Documents', and enter the security code:
5022836CB2694975AB28B4026A869E3C3

**About DocuSign**
Sign documents electronically in just minutes. It's safe, secure, and legally binding. Whether you're in an office, at home, on-the-go -- or even across the globe -- DocuSign provides a professional trusted solution for Digital Transaction Management™.

**Questions about the Document?**
If you need to modify the document or have questions about the details in the document, please reach out to the sender by emailing them directly.

**Stop receiving this email**
Report this email or read more about Declining to sign and Managing notifications.

If you are having trouble signing the document, please visit the [Help with Signing](#)
page on our [Support Center](#).

[Download the DocuSign App](#)

This message was sent to you by UFC Case who is using the DocuSign Electronic Signature Service. If you
would rather not receive email from this sender you may contact the sender with your request.

EXHIBIT F

| | |
|---|---|
| **From:** | Antonio Mckee |
| **To:** | Rob Maysey |
| **Subject:** | Fw: Reminder: Privileged & Confidential – Replacement Engagement Letter for UFC Case |
| **Date:** | Sunday, June 13, 2021 9:14:36 AM |

----- Forwarded message -----
**From:** UFC Case via DocuSign <dse_na3@docusign.net>
**To:** Antonio Mckee <antoniomckee@yahoo.com>
**Sent:** Saturday, 12 June 2021, 09:10:47 pm GMT-7
**Subject:** Reminder: Privileged & Confidential – Replacement Engagement Letter for UFC Case



DocuSign

UFC Case sent you a document to review and sign.

**REVIEW DOCUMENT**

**UFC Case**
ufccase@sparacinopllc.com

PRIVILEGED & CONFIDENTIAL
ATTORNEY COMMUNICATION
WITH POTENTIAL CLIENT

Dear Mr. McKee,

Thank you for considering hiring Sparacino PLLC to represent you in connection with your decision whether to "opt out" of the class action in Le v. Zuffa.  Our partner firm, Scott+Scott, has withdrawn from the matter for business reasons specific to Scott+Scott that do not, we believe, have anything to do with the merits of your potential opt-out claim, or our ability, working with an elite antitrust litigation partner

firm, to effectively represent you and give you counsel concerning the pros and cons of any decision to opt-out of the class in Le v. Zuffa.

To be clear: we still believe in this case, and we are currently in discussions with several prominent national antitrust litigation firms who are very interested in potentially working on the "opt-out" matter.

In Le v. Zuffa, the Court appointed the law firms Berger & Montague, P.C., Cohen Milstein Sellers & Toll PLLC, and Joseph Saveri Law Firm, Inc, as "Interim Co-Lead Class Counsel" and Wolf Rifkin, Shapiro, Schulman & Rabkin, LLP as "Liaison Counsel" to represent the interests of class.  These firms have been working on the Le v. Zuffa case since before it was filed in 2014.  To be clear, we are not class counsel nor have we appeared as counsel in Le v. Zuffa.

On or about December 10, 2020, the Court indicated its intention to certify a class defined as follows: all persons who competed in one or more live professional UFC-promoted MMA bouts taking place or broadcast in the United States from December 16, 2010 to June 30, 2017 (the "Bout Class").  If you are a member of the Bout Class, then your interests are currently represented by Interim Class Counsel and Liaison Counsel.   You do not need take any action as this time to benefit from any recovery in the Class Action.   In the future, you should receive a Court-approved notice that explains your rights as a member of the Bout Class, including the right to opt-out of the Class Action, which you should carefully review.

As we have previously discussed, we believe you should consider opting out of the Le v. Zuffa Class Action and would be happy to explain to you the benefits of pursuing your own litigation so you can decide which choice is best for you and your family. If you do decide to opt out, then you would not be eligible to participate in any potential recovery in the Class Action.  You would chart your own course.  If, however, you wish to remain part of the Bout Class, you need not do anything in response to this letter or our prior letter.

We are currently in discussions with several prominent national antitrust litigation firms, and we are confident that we will find a partner firm to replace Scott+Scott and provide the same high-quality legal services you would have received from Scott+Scott.  To that end, we have prepared an updated engagement letter for your review.  If you decide you wish for Sparacino PLLC to represent you, please execute the updated engagement letter at your convenience.

Please note that you will no longer have to prepare the intake questionnaire at this time.  If, as we expect, we are able to reach terms with an antitrust partner firm as co-counsel, we will present you with an updated engagement letter at that time. Thereafter, we will ask you to complete the questionnaire, but since it is driven by antitrust litigation counsel's legal strategy, it will wait until after we have reached a new co-counsel deal with a firm to replace Scott+Scott.

And if you have any questions or concerns, please don't hesitate to contact me or my partner, Ryan Sparacino, at your convenience and we would be happy to brief you on these matters.

Best,

Eli

**Do Not Share This Email**
This email contains a secure link to DocuSign. Please do not share this email, link, or access code with others.

**Alternate Signing Method**
Visit DocuSign.com, click 'Access Documents', and enter the security code:
A40364357C284FD7A04060B5E5BF86893

**About DocuSign**
Sign documents electronically in just minutes. It's safe, secure, and legally binding. Whether you're in an office, at home, on-the-go -- or even across the globe -- DocuSign provides a professional trusted solution for Digital Transaction Management™.

**Questions about the Document?**
If you need to modify the document or have questions about the details in the document, please reach out to the sender by emailing them directly.

**Stop receiving this email**
Report this email or read more about Declining to sign and Managing notifications.

If you are having trouble signing the document, please visit the Help with Signing page on our Support Center.

Download the DocuSign App

This message was sent to you by UFC Case who is using the DocuSign Electronic Signature Service. If you would rather not receive email from this sender you may contact the sender with your request.