# EXHIBIT 61

## Bellator Promotional Agreement

## PROMOTIONAL AGREEMENT

This Promotional Agreement ("Agreement") is made and entered into by and between **BELLATOR SPORT WORLDWIDE, LLC**, a Delaware Limited Liability Company with offices at 445 North Wells Street, Suite 401, Chicago, Illinois 60654 ("PROMOTER") and ███████ ("FIGHTER").

### RECITALS

**WHEREAS PROMOTER** is in the business, *inter alia*, of promoting Mixed Martial Arts ("MMA") events and desires to enter into an agreement with FIGHTER to be the exclusive Promoter of FIGHTER's future bouts on the terms set forth herein.

**WHEREAS FIGHTER** is a professional MMA fighter who desires to enter into this AGREEMENT with PROMOTER for PROMOTER to be FIGHTER's exclusive promoter and is willing to grant the ancillary rights herein.

**THEREFORE**, in consideration of the foregoing, the agreements and mutual promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. **INCORPORATION OF RECITALS**

The recitals set forth above are incorporated herein by this reference.

2. **GRANT OF PROMOTIONAL RIGHTS**

Subject to the terms and conditions set forth below, FIGHTER hereby grants to PROMOTER the exclusive unrestricted worldwide rights to secure, promote, arrange, present, coordinate, create and produce all MMA, martial arts, and unarmed combatant contests (individually, a "Bout" and collectively, the "Bouts") to be engaged in by FIGHTER during the term of this Agreement and any extensions thereof ("Promotional Rights").

1

███████
FIGHTER'S INITIALS

3.    **TOURNAMENT COMPENSATION**

A "Tournament" shall be defined as any MMA competition in which multiple fighters compete in a formal, structured series of bouts labeled by PROMOTER as a tournament, to determine a single champion, a top challenger and/or a top rated fighter. A Tournament may be structured as a round-robin, single-elimination, double-elimination or any other format chosen by PROMOTER, in PROMOTER's sole and absolute discretion, and may or may not include the seeding, placing or ranking of individual fighters. Promoter shall have the unilateral right to include or not include FIGHTER in a Tournament. At the signing of the Agreement, PROMOTER has not decided to include FIGHTER in a Tournament, but may do so based on FIGHTER's performance in Bouts provided to FIGHTER by PROMOTER and referenced in the Addendum to this Agreement. For Bouts taking place within a Tournament the following purse and bonus structures will be in effect:

A)    Opening Round of Tournament.

(i)    Base Purse:  Seven Thousand Dollars ($7,000) will be paid to FIGHTER, win or lose.

(ii)    Bonus payments:  An additional Seven Thousand Dollars ($7,000) shall be paid to FIGHTER if he is declared the winner of the Bout by the Commission governing his Bout. In such case FIGHTER will receive a total of Fourteen Thousand Dollars ($14,000) (Seven Thousand Dollars ($7,000) in base purse plus Seven Thousand Dollars ($7,000) in bonus).

(iii)    Advancing to next round:  FIGHTER shall advance to the semi final round of the Tournament if he is declared the winner of the Bout by the Commission governing his Bout, is uninjured, is permitted to do so by the Commission having jurisdiction of the semi final bouts of the Tournament, and is otherwise in compliance with the this contract.

2

FI████████LS

*B)*     Semi Final Round of Tournament.

(i)     Base Purse: Fifteen Thousand Dollars ($15,000) will be paid to the FIGHTER, win or lose.

(ii)     Bonus Payment: An additional Fifteen Thousand Dollars ($15,000) shall be paid to FIGHTER if he is declared the winner of the Bout by the Commission governing his Bout. In such a case FIGHTER will receive a total of Thirty Thousand Dollars ($30,000) (Fifteen Thousand Dollars ($15,000) in base purse and Fifteen Thousand Dollars ($15,000) in bonus).

(iii)     Advancing to the next round: FIGHTER shall advance to the final round of the Tournament if he is declared the winner of the Bout by the Commission governing his Bout, is uninjured, is permitted to do so by the Commission having jurisdiction of the final round of the Tournament, and is otherwise in compliance with this contract.

*C)*     Final Round of Tournament.

(i)     Base Purse: FIGHTER will be paid a base purse of Twenty Thousand Dollars ($20,000), win or lose.

(ii)     Bonus Payment: FIGHTER will be paid an additional Thirty Six Thousand Dollars ($36,000) if he is declared the winner of the Bout by the Commission governing his Bout. In such a case FIGHTER will receive a total of Fifty Six Thousand Dollars ($56,000) (Twenty Thousand Dollars ($20,000) in base purse and Thirty Six Thousand Dollars ($36,000) in bonus).

(iii)     Tournament Winner: FIGHTER will be declared the Tournament winner in his weight class if he is declared the winner of the Bout by the Commission governing his Bout.

*D)*     Substitutions.

It is anticipated, but not guaranteed, that when an applicable Tournament is being held Tournament bouts will be conducted at two (2), three (3), four (4), five (5), or six (6) week intervals or may extend over two (2) seasons (up to four (4) months). Fighters who are defeated in prior rounds may

3

be chosen as substitutes for subsequent rounds if a winning fighter cannot continue in the Tournament. Substitutes will be chosen at the sole discretion of PROMOTER and based on criteria which will be at PROMOTER's sole discretion. FIGHTER is to remain available and on weight so that he can be utilized as a substitute if necessary and if so chosen by PROMOTER. If FIGHTER is used as a Tournament substitute his base purse will remain at the base purse for the round in which he lost, but his bonus in the event he wins will be commensurate with that specified above for the round of the Tournament in which he is competing.

4. **COMPENSATION FOR NON-TOURNAMENT BOUTS**

FIGHTER's compensation in all non-Tournament Bouts, will be determined as follows:

A) If FIGHTER has participated in a Tournament or has not participated in a Tournament, his compensation for all non-Tournament Bouts shall be determined as follows:

    a. If FIGHTER is the Tournament Winner (i.e., he is declared the winner of all Tournament Bouts by the Commission and is declared Tournament Winner by PROMOTER) FIGHTER shall be paid:

        i. A base purse of Ten Thousand Dollars ($10,000).

        ii. FIGHTER will be paid an additional Ten Thousand Dollars ($10,000) if he is declared the winner of the Bout by the Commission governing his Bout.

        iii. In such a case FIGHTER will receive a total of Twenty Thousand Dollars ($20,000). Ten Thousand Dollars ($10,000) in base purse and Ten Thousand Dollars ($10,000) in bonus).

        iv. For each non-Tournament Bout that FIGHTER is declared the winner of by the Commission governing such Bout, his compensation for non-Tournament bouts shall increase as follows: the base purse shall increase by One Thousand Dollars ($1,000) and the amount of his win bonus shall increase by

4

One Thousand Dollars ($1,000). Should FIGHTER lose a non-Tournament Bout, his compensation for the next non-Tournament Bout shall remain unchanged.

   b.  If FIGHTER losses in the final round of the Tournament (i.e., declared the loser of the Tournament final Bout by the Commission),

       i.  FIGHTER shall be paid a base purse of Six Thousand Dollars ($6,000).

       ii.  FIGHTER will be paid an additional Six Thousand Dollars ($6,000) if he is declared the winner of the Bout by the Commission governing his Bout.

       iii.  In such a case FIGHTER will receive a total of Twelve Thousand Dollars ($12,000) (Six Thousand Dollars ($6,000) in base purse and Six Thousand Dollars ($6,000) in bonus).

       iv.  For each non-Tournament Bout that FIGHTER is declared the winner of by the Commission governing such Bout, his compensation for non-Tournament bouts shall increase as follows:  the base purse shall increase by One Thousand Dollars ($1,000) and the amount of his win bonus shall increase by One Thousand Dollars ($1,000). Should FIGHTER lose a non-Tournament Bout, his compensation for the next non-Tournament Bout shall remain unchanged.

   c.  If FIGHTER losses in the semi-final (second) round of the Tournament (i.e., declared the loser of the Tournament semi-final Bout by the Commission) or cannot advance due to injury in that Tournament round,

       i.  FIGHTER shall be paid a base purse of Three Thousand Dollars ($3,000).

       ii.  FIGHTER will be paid an additional Three Thousand Dollars ($3,000) if he is declared the winner of the Bout by the Commission governing his Bout.

5



F‌ ‌ ‌ITIALS

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY    010    SBPCL00002315

iii. In such a case FIGHTER will receive a total of Six Thousand Dollars ($6,000) (Three Thousand Dollars ($3,000) in base purse and Three Thousand Dollars ($3,000) in bonus).

iv. For each non-Tournament Bout that FIGHTER is declared the winner of by the Commission governing such Bout, his compensation for non-Tournament bouts shall increase as follows:  the base purse shall increase by One Thousand Dollars ($1,000) and the amount of his win bonus shall increase by One Thousand Dollars ($1,000).  Should FIGHTER lose a non-Tournament Bout, his compensation for the next non-Tournament Bout shall remain unchanged.

d. If FIGHTER losses in the first round of the Tournament (i.e., declared the loser of the Tournament quarter-final Bout by the Commission) or cannot advance due to injury in that Tournament round or if FIGHTER does not participate in the Tournament,

i. FIGHTER shall be paid a base purse of Two Thousand Five Hundred Dollars ($2,500).

ii. FIGHTER will be paid an additional Two Thousand Five Hundred ($2,500) if he is declared the winner of the Bout by the Commission governing his Bout.

iii. In such a case FIGHTER will receive a total of Five Thousand Dollars ($5,000) (Two Thousand Five Hundred Dollars ($2,500) in base purse and Two Thousand Five Hundred Dollars ($2,500) in bonus).

iv. For each non-Tournament Bout that FIGHTER is declared the winner of by the Commission governing such Bout, his compensation for non-Tournament bouts shall increase as follows:  the base purse shall increase by One

6

Thousand Dollars ($1,000) and the amount of his win bonus shall increase by One Thousand Dollars ($1,000). Should FIGHTER lose a non-Tournament Bout, his compensation for the next non-Tournament Bout shall remain unchanged.

e. After completion of any Tournament FIGHTER may be offered the opportunity to engage in another Tournament ("Future Tournament"). Purses for any Future Tournament and subsequent non-Tournament bouts will be as offered for that Future Tournament and will not necessarily be the purses set forth herein.

## 5. GRANT OF ANCILLARY RIGHTS

Subject to the terms and conditions set forth below, FIGHTER hereby grants to PROMOTER the exclusive unrestricted worldwide rights to the following ancillary rights ("Ancillary Rights"):

A)    The right to stage all Bouts, sell tickets of admission to all Bouts, to broadcast, telecast, photograph, record or otherwise reproduce all Bouts, the events immediately before and after all Bouts and between the rounds and events attendant to Bouts and attendant to any Tournaments in any and all media now known or hereafter devised in or by any manner, method or device (now known or hereafter devised) including, but not limited to, the unlimited and unrestricted rights to telecast all bouts by means of live or closed circuit television, paid, cable, subscription or toll television, films and tapes for exhibition in any and all media and in all gauges, whether the theatrical exhibition or for sale, lease or license for home use, including audio and audiovisual cassettes and discs, and the unlimited right to deal with any or all of the foregoing, and to obtain copyright or similar protection where available in the name of the PROMOTER or PROMOTER's nominee, all in such manner as the PROMOTER in its sole discretion shall determine.

B)    The right to exploit and use to the fullest extent possible any and all content data, and information and any and all property rights and intellectual property rights prepared, conceived,

7

█████

IALS

developed, manifested in tangible or intangible form, or created by and through this Agreement with FIGHTER as well as any and all other property rights associated with PROMOTER, its events or affiliates, which shall include the unrestricted right to fully exploit, use, profit, disseminate, display, reproduce, print, publish, edit, and make any other uses of FIGHTER's names, images, likenesses, sobriquets, voices personas, signatures, biographical materials, photographs and/or any and all information relating thereto ("Identity"), and shall include all persons associated or affiliated with FIGHTER, including FIGHTER's trainers and seconds.

    C)    PROMOTER shall be entitled to develop, manufacture, distribute, market, and/or sell any and all interactive devices, electronic devices, home video and computer games, arcade video games, hand held versions of video games, video slot machines, CD-ROMS, DVD's, Internet applications, wireless, video and audio cassettes and disks, photographs, books, souvenirs, comics, games, and any and all other similar type products, now known or hereafter to become known, which contain FIGHTER's identity. Such use shall include the sleeves, jackets and packaging for such products.

    D)    As related to FIGHTER's purpose and relationship with PROMOTER including but not limited to the promotion of FIGHTER's fights under the Agreement, PROMOTER, PROMOTER's brand, Tournaments, bouts, events, pre-bout events, and/or post-bout events, in addition to the rights granted in Subsection C above, PROMOTER may manufacture, distribute or sell items or goods which contains FIGHTER's identity, including but not be limited to, souvenir programs, sponsorships, commercial and merchandising tie-ins, advertisements, banners, buttons, posters, clothing, apparel, photographs, and similar type items or goods.

    E)    The right to assign, lease, license, sublease, transfer, use or otherwise dispose of any and all of the rights granted herein and the results of the exercise thereof, and to authorize, license and grant the right to exercise any or all of the foregoing rights to any person, firm or corporation.

8

F)      The right to do all things necessary for the full and complete use, exploitation and exercise of the rights granted herein, including the right to promote and exploit all rights granted hereunder and the results of the exercise thereof, and the right to negotiate, enter into and perform any and all agreements relating to the rights granted herein for the proper production and promotion of radio and television advertisements, publicity, broadcasts relating to PROMOTER, the Bouts, the pre-Bout events, and/or the post-Bout events.

G)      The right to all rights, title and interest in and to any and all recordings, including but not limited to, television, radio, Internet, wireless and motion picture films, and the video and audio cassettes of, or based upon PROMOTER's brand, the Bouts, the pre-Bout events and post-Bout events, and the right secure in PROMOTER's name (or that of its nominee) copyright and other protection to the fullest extent available.

H)      The non-exclusive right, provided Fighter possesses such right or can reasonably obtain such right, to use the recording, video or audio clip of any prior bout content of FIGHTER, including a bout held by another promoter, for the purpose of publicizing a Bout, which clip shall be provided to PROMOTER upon request.

I)      The non-exclusive right to register FIGHTER as one or more domain names for use on the World Wide Web as related to PROMOTER's events and promotions and the right to utilize and own such domain names during the Term and without restriction, in whatever way PROMOTER selects. Notwithstanding the foregoing, PROMOTER is under no obligation to register FIGHTER or to in any way use such domain names.   For illustrative purposes only, this could include "FIGHTERvsFighter.com."

J)      For the purposes of (1) promoting fighting events and athletic competitions; (2) broadcasting sports and entertainment programs by means of television, radio, cable television, satellite and other wire and wireless forms of transmission; (3) producing and distributing sports and

9

SBPCL00002319

entertainment programs by means of television, cable television, satellite, via a global information network, pay-per-view exhibition, closed circuit exhibition, and in other live formats; and production of electronic reproductions featuring sports and entertainment programs; (4)   merchandise tie-ins and souvenir items; (5) exploitation of all other rights granted to PROMOTER herein, Promoter shall have the right, for these express purposes and no others to register as a trademark with the United States Patent and Trademark Office ("USPTO") FIGHTER's name, stage name, Identity, or any other feature of FIGHTER which may be trademarked.

    *K)*       The right to all event income, revenue or fees which shall include, but are not limited to, venue fees, live event gate receipts, event fees, event income, advertising fees, and sponsorship fees. The right to exploit all forms of radio, television, and electronic media, which may be live, in real time, or delayed transmission and shown displayed via interactive means, in home or theater, pay-per-view, satellite, closed circuit, cable, subscription, antenna, internet, or any other means of transferring such information or data, as well as via telephone, wireless means, cellular phones, computer, CDs, CDROM, DVD, any and all internet applications, film, and tape for exhibition in any and all media formats and the right to all income, fees or revenue generated therefrom.

### 6.    PROMOTION OF BOUTS

    *A)*      Each Bout shall be a MMA contest between FIGHTER and an opponent designated by PROMOTER.  FIGHTER shall abide by all rules set forth by PROMOTER with regards to any MMA Bout provided such rules are not inconsistent with the rules and regulations of the athletic commission or regulatory body having jurisdiction over the Bout ("Commission").  FIGHTER and PROMOTER shall comply with and be bound by the rules and regulations of the Commission.

    *B)*      PROMOTER shall promote and FIGHTER shall participate in the minimum number of Bouts set forth elsewhere in this Agreement.  PROMOTER may secure, promote, arrange, present,

10

coordinate, create and produce Bouts in any manner PROMOTER chooses, including the use of Tournament formats, individual bouts, or any other structure PROMOTER desires.

C) PROMOTER shall be deemed to have complied with its obligations to promote any Bout if PROMOTER shall have made an offer to FIGHTER to promote a Bout in accordance with the provisions hereof and FIGHTER shall have refused to participate. If a Bout is canceled or postponed for any reason beyond the reasonable control of PROMOTER, the failure of such Bout to take place shall not be deemed non-performance by PROMOTER and PROMOTER shall not be liable for any FIGHTER's purse associated therewith.

D) All Bouts shall be on dates and at sites to be designated by PROMOTER, in its sole and absolute discretion. If any Bout is postponed for any reason the Bout agreement applicable to such bout shall determine the rights of the parties and in addition thereto, the Term shall be extended, at PROMOTER's election, by a number of days equal to the number of days between the date originally scheduled for the Bout and the date on which the Bout occurs.

E) During the Term, PROMOTER shall have the exclusive right to promote all of FIGHTER's bouts and Fighter shall not participate in or render his services as a professional fighter or in any other capacity to any MMA, boxing, martial art, professional wrestling, or any other fighter competition or exhibition, except as otherwise expressly permitted by PROMOTER in writing.

7. **FIGHTER'S COOPERATION**

FIGHTER shall cooperate and assist in the advertising, publicity, and promotion of (i) the Bouts and/or Tournaments, (ii) any and all rebroadcast of the Bouts and/or Tournaments in any media whatsoever, (iii) other bouts of PROMOTER, (iv) other events and broadcasts by PROMOTER, and (v) the sale of merchandise; and (vi) any other exploitation by PROMOTER resulting from the grant of Promotional Rights and Ancillary Rights. FIGHTER's cooperation and assistance shall include but not be limited to making appearances at such reasonable number of press conferences, interviews,

11

INITIALS

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY          010

SBPCL00002321

appearances, and other sponsorship and promotional activities (any of which may be telecast, broadcast, recorded and/or filmed) as PROMOTER may designate, without additional compensation therefore. In addition, FIGHTER shall fully cooperate with any and all requests made by any of PROMOTER's television and cable network partners with respect to any assistance, press conferences, interviews, appearances or other activities they may request in order to promote FIGHTER, a Bout, the Bout's, PROMOTER, PROMOTER's brand, or any other bout or series of bouts. For such promotional activities, PROMOTER will arrange and pay for FIGHTER's reasonable travel and hotel accommodations and reasonable per diem for FIGHTER for expenses.

8.    **TERM**

A)    The duration of the Promotional Rights ("Term") shall commence on the "Effective Date" defined as the date this contract is entered into and end on the later of (i) Twenty Four (24) months after the date of the first bout in which FIGHTER engages under this contract, or (ii) the date on which FIGHTER has participated in at least Six (6) Bouts promoted by PROMOTER under this Agreement ("Termination Date"), unless terminated sooner or extended further pursuant to the provisions of this Agreement.

B)    If, at any time during the Term, FIGHTER is declared by PROMOTER the Tournament winner, or a Tournament runner-up, the Term shall be automatically extended for a period commencing on the Termination Date and ending on the later of (i) Twelve (12) months from the Termination Date, or (ii) the date in which FIGHTER has participated in three (3) bouts promoted by PROMOTER following the Termination Date ("Extension Term"). Any reference to the Term herein shall be deemed to include a reference to the Extension Term, where applicable.

C)    Additionally, if at any time during the Term, FIGHTER is declared by PROMOTER the champion of his weight class, the Term shall be automatically extended for a period commencing on the Termination Date and ending on the later of (i) twelve (12) months from the Termination Date, or (ii) the

12

INITIALS

date in which FIGHTER has participated in three (3) bouts promoted by PROMOTER following the Termination Date ("Extension Term"). Any reference to the Term herein shall be deemed to include a reference to the Extension Term, where applicable.

D)   The expiration of the Term shall not affect or terminate the grant of Ancillary Rights or any of the general or specific provisions of this Agreement which shall survive by the terms any such expiration or termination.

E)   PROMOTER shall not be deemed in default of this Agreement to the extent that performance of its obligations are delayed or prevented by reason of any act of God, fire, natural disaster, war, riots, strike or labor difficulties, terrorism, power failure or other acts constituting force majeure or any governmental or Commission enactment, determination or action, regulation or order.

F)   The termination of this Agreement or the expiration of the Term shall not serve to affect or terminate the Ancillary Rights granted under this Agreement, as they shall survive any such termination, expiration or acceleration and this Agreement shall remain in full force and effect with respect thereto.

G)   Subject to all other Terms and Conditions of the Agreement and provided FIGHTER is ready and able to perform pursuant to the Agreement FIGHTER will be offered at least one (1) bout during every six (6) month period or he may terminate this Agreement

9.   **INJURY, DISABILITY, POSTPONEMENT OR RETIREMENT**

A)   Should any Bout be postponed due to injury, disability, illness, retirement, incarceration, loss of travel, suspension by a Commission, positive drug test, unwillingness to compete, or any other similar reason, of either FIGHTER or FIGHTER's opponent, the obligation of PROMOTER relating to the minimum bouts, timing of the bouts, and the Term of this Agreement shall automatically be extended by the period of time necessary to reschedule the postponed Bout.

13

TIALS

SBPCL00002323

B)       The respective lengths of time to provide FIGHTER with the minimum number of Bouts shall be extended, (i) that period of time that FIGHTER is unable or unwilling to compete, or (ii) for a period of six (6) months, whichever is longer. Such extension shall include without limitation, any time periods when FIGHTER is disabled, sick or injured for any reason, incarcerated, license suspended or revoked by a Commission, has his ability to travel restricted by a recognized governmental agency or is otherwise unable, unwilling or refuses to compete or train for a Bout for any reason whatsoever.

C)       If at any time during the Term, FIGHTER decides to retire, PROMOTER may, at its election, suspend the Term for the full and entire period of such retirement, regardless of its length.

D)       If any Bout cannot be held as scheduled or conducted in the manner intended for any reason whatsoever, including the withdrawal of an opponent, cancellation of the main event or cancellation of a telecast (but not including reasons relating to FIGHTER's inability or unwillingness to compete), PROMOTER may, in its sole discretion, (i) substitute another opponent, (ii) cancel the Bout or (iii) reschedule the Bout. In the event PROMOTER cancels or reschedules the Bout, PROMOTER shall have no obligation or liability to FIGHTER whatsoever in connection therewith, including any obligation to pay fight purses, and the respective lengths of time to provide FIGHTER with the minimum number of Bouts shall be extended by the period of time necessary to reschedule the Bout.

E)       In the event that any Bout is postponed or cannot be held due to the actions of FIGHTER, in addition to any other rights that PROMOTER may have, PROMOTER may extend the Term of this Agreement and any provision thereof by, (i) the period of any delay caused by FIGHTER or (ii) for a period of six (6) months, whichever is greater.

F)       In the event that FIGHTER breaches any term of this Agreement, or provides any false representation or warranty, PROMOTER may extend the Term of this Agreement and any provision thereof by, (i) the period of time necessary to correct or cure any breach or inaccuracy of any warranty or (ii) for a period of six (6) months, whichever is greater.

14

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY          010                                    SBPCL00002324

10.   **NOTIFICATION OF IMPAIRMENT/INJURY**

In the event that FIGHTER suffers any injury or impairment of any nature which could prevent him from engaging in a bout or which could impact negatively on his ability to be licensed he will notify PROMOTER immediately in writing.  FIGHTER agrees to remain in competitive condition during the Term of this Agreement.

11.   **FORM BOUT CONTRACT**

For each Bout hereunder FIGHTER shall execute and comply with a standard form of Commission bout agreement whenever and wherever required where no Commission form agreement exists, FIGHTER will execute a standard form Bellator bout contract.  In the event there is any inconsistency between the terms and conditions contained herein and such bout agreement, the provisions contained herein shall supersede and prevail to the extent permitted by law unless the parties so indicate in writing.

12.   **TRANSPORTATION, ROOM, BOARD**

For each bout hereunder, PROMOTER shall provide, at PROMOTER's cost, Two (2) round trip coach class air transportation tickets from FIGHTER'S home to the city in the U.S. where the fight will occur, as well as One (1) hotel room and meals for up to Two (2) persons and training facilities at such sites for up to three (3) days prior to each bout.  If FIGHTER is declared the World Champion, then for each bout hereunder, PROMOTER shall provide, at PROMOTER's cost; Three (3) round trip coach air transportation tickets from FIGHTER'S home to the site of the bout as well as Two (2) hotel rooms and meals for up to Three (3) persons.  If at any time during the Term of the Agreement FIGHTER is declared the World Champion and then subsequently is declared the loser of a World Championship bout, then for each subsequent bout hereunder, FIGHTER will again be provided with Two (2) round trip coach class air transportation tickets and well as one (1) hotel room.  Once departure dates, times and locations are set with reasonable consultation with FIGHTER, any deviation by FIGHTER will be at his expense.

15

████ ████ TIALS

13.   **MERCHANDISING RIGHTS**

FIGHTER agrees that he will negotiate with PROMOTER in a good faith, if and when PROMOTER creates a licensed merchandise program ("Merchandise Program"). Such a program will be separate from, and in addition to, any of the merchandise rights already granted to PROMOTER herein, and will not include (without limitation) any products created, used or sold, (i) in connection with the promotion of FIGHTER, PROMOTER, PROMOTER's brand, any Tournaments, any Bouts, pre-Bout events, or post-Bout events, or (ii) under the Promotional Rights and/or Ancillary Rights, including but not limited to items such as interactive devices, electronic devices, home video and computer games, arcade video games, hand held versions of video games, video slot machines, CD-ROMS, DVD's, Internet applications, wireless, video and audio cassettes and disks, photographs, books, comics, games, and any and all other similar type products.

14.   **FIGHTER'S REPRESENTATIONS AND WARRANTIES**

FIGHTER represents, warrants and agrees that:

*A)*      FIGHTER shall conduct himself in accordance with commonly accepted standards of decency, social conventions and morals, and FIGHTER will not commit any act or become involved in any situation or occurrence or make any statement which will reflect negatively upon or bring disrepute, contempt, scandal, ridicule, or disdain to FIGHTER, PROMOTER, or any of PROMOTER's officers, managers, members, employees, or agents.

*B)*      FIGHTER's conduct shall not be such a shock, insult or offend the public or any organized group therein, or reflect unfavorably upon any current or proposed sponsor or such sponsor's advertising agency, or any network or station over which a Bout is to be broadcast.

*C)*      FIGHTER shall not authorize or be involved with any advertising material or publicity materials that contain language or material which is generally considered to be obscene, libelous, slanderous or defamatory.

16

█████████ ITIALS

D)    FIGHTER shall compete in each Bout to the best of FIGHTER's ability.

E)    FIGHTER is free to enter into this Agreement and has not heretofore entered into and will not during the term hereof enter into any contract, option, agreement or understanding, whether oral or written, which might interfere with the provisions hereof or the grant of rights contained herein or which would or could interfere with the full and complete performance by FIGHTER of obligations hereunder or the free and unimpaired exercise by PROMOTER of the rights herein granted to it.

F)    FIGHTER has no outstanding promotional contracts or claims of promotional obligations.

G)    There are no claims, arbitrations, mediations or litigations pending or threatened affecting FIGHTER which or might interfere with the full and complete exercise or enjoyment by PROMOTER of any rights granted hereunder;

H)    FIGHTER is in good physical and mental health and will do nothing to potentially impair his health including the use of any illegal, prohibited, controlled or banned substances.  FIGHTER shall be deemed in violation of this Agreement if FIGHTER tests positive, as defined by the Commission regulating any Bout, for any illegal, prohibited, controlled or banned substance as part of a pre-Bout or post-Bout test.  For assistance regarding prohibited substances FIGHTER should feel free to consult the WADA banned listed at:

http://www.wada-ama.org/Documents/World_Anti-Doping_Program/WADP-Prohibited-list/WADA_Prohibited_List_2010_EN.pdf

I)    FIGHTER will not engage in any abnormally dangerous activity and will not engage in any illegal activity or activity which would reasonably be anticipated to bring either FIGHTER or PROMOTER into disrepute.

J)    FIGHTER will not engage in any combat sports without the express written approval of PROMOTER, including any and all martial arts, boxing, kickboxing, wrestling, or MMA (except as necessary for training activities).

17

K)     FIGHTER shall be solely responsible for obtaining all necessary documentation, including any work visas. FIGHTER shall also comply with any applicable Commission rule, regulation or enactment and shall maintain, at his sole expense, any licenses required to participate in any Bout.

L)     FIGHTER is entering into this Agreement of his own free will and is not subject to duress of any kind, and is not under the influence of any substance of any kind.

M)     FIGHTER has had the opportunity to consult with an attorney and FIGHTER appreciates the legal significance and consequences of signing this Agreement.

N)     FIGHTER is a citizen of the United States and is not otherwise subject to any backup or withholding taxes or in those instances where FIGHTER is not a citizen of the United States, FIGHTER shall provide PROMOTER with all necessary information to enable PROMOTER to comply with any applicable withholding or tax payment.

O)     Prior to participating in any Bout under this Agreement, FIGHTER will be responsible for obtaining and will obtain all rights, approvals and clearances necessary to use and/or display the apparel, sportswear, equipment and/or produce/service  displayed by FIGHTER or any of FIGHTER's trainers or seconds during such Bout, pre-Bout events, or post-Bout events. FIGHTER's obtaining said rights, approvals and/or clearances shall be in writing and provided to PROMOTER, upon PROMOTER's request prior to any bouts under this Agreement.

P)     FIGHTER will not utilize any of PROMOTER's intellectual property rights, including, but not limited to, the names and marks of PROMOTER, and any logos, pictures or other representations of PROMOTER's intellectual property.  Without limiting the scope of this prohibition, FIGHTER expressly agrees to not use any championship belt of PROMOTER without the prior written consent of PROMOTER.  FIGHTER further agrees that any belt he obtains from Bellator is on loan and will at all times remain the property of PROMOTER.  Upon request, the belt must be returned to PROMOTER within three (3) days.

18

ALS

*Q)* FIGHTER will remain in good physical shape and within the designated weight class FIGHTER competed in when FIGHTER first entered into this Agreement, unless otherwise agreed to in writing by PROMOTER. FIGHTER currently fights as a Heavyweight with a maximum weight of Two Hundred Sixty Five pounds (265) and as a material term of this Agreement, FIGHTER shall be expected to participate as a Heavyweight if invited by Promoter to participate in a Tournament.

## 15.   INDEMNIFICATION

FIGHTER hereby agrees to indemnify and hold harmless PROMOTER, any site where a bout is held, any television or cable network, each station broadcasting the Bouts, each sponsor and its advertising agency, and the subsidiaries, affiliates, members, managers, shareholders, directors, officers, employees, representatives, agents, contractors and assigns of each of the foregoing, from and against any and all liability, loss, claims, suits, charges, actions, proceedings, damages and expenses (including reasonable attorneys' fees) arising from: (i) use of any materials, information or services furnished by FIGHTER, (ii) any acts or words spoken by FIGHTER in connection with the production, rehearsal, exhibition, broadcast or other use of the Bouts and the rights granted to PROMOTER hereunder, (iii) any breach or alleged breach of any promise, representation, warranty or agreement made by FIGHTER in this Agreement, (iv) any tort committed by the FIGHTER.

## 16.   ADVERTISING/SPONSORSHIPS

*A)* FIGHTER agrees that no wording, symbol, picture, design, name or other advertising or informational material shall appear on his person, or upon trunks, robe, shoes, or other clothing worn by FIGHTER, his trainers, seconds or assistants during any Bout hereunder, without prior written approval of PROMOTER.

*B)* Without limitation of the above, FIGHTER shall not display any wording, symbol, picture, design, name or other advertising or informational material on FIGHTER's person, trunks, robe, shoes, or other clothing worn by FIGHTER, his trainers, seconds or assistants during any Bout hereunder

19

TIALS

or at any activity sponsored by PROMOTER which; (i) is in conflict or competition with PROMOTER or any of PROMOTER's sponsors, (ii) is in conflict or competition with the requirements of any telecaster, (iii) represents any beer, alcohol, beverage, tobacco, casino, gaming or media company, (iv) may cause injury to the reputation of PROMOTER or its sponsors,  or (v) is considered by PROMOTER, in its sole discretion, to be in bad taste.

     *C)*     FIGHTER shall provide one (1) pair of dark colored trunks and one (1) pair of light colored trunks for each Bout so that fighters may be clearly distinguishable from one another during bouts.

     **17.**     **BREACH, TERMINATION AND OTHER REMEDIES**

     *A)*     PROMOTER shall have the right, upon notice to FIGHTER, to accelerate the Term and thereby terminate this Agreement, if:

     (i)     FIGHTER fails or refuses, for any reason other than injury or physical disability, to engage in a Bout offered by PROMOTER.

     (ii)     FIGHTER breaches, violates or is in default of any provision in this Agreement or any other agreement entered hereafter between FIGHTER and PROMOTER.

     (iii)     FIGHTER's representations and/or warranties contained herein are false.

     (iv)     FIGHTER is declared the loser of any Bout (whether promoted by PROMOTER or not) by the Commission having official jurisdiction over the Bout.

     (v)     FIGHTER's license to participate in the Bouts is suspended or revoked by any Commission.

     *B)*     The effective date of termination shall be the day such notice is sent to FIGHTER.

     *C)*     Upon termination, all of PROMOTER's obligations to FIGHTER shall immediately cease, except that PROMOTER shall owe amounts due for Bouts that have been completed prior to

20

IALS

termination.  PROMOTER shall be allowed to terminate FIGHTER's participation in any scheduled Bout and PROMOTER may withdraw recognition from FIGHTER of any championship status.

D)      Acceleration and termination of this Agreement shall not serve to affect or terminate any of the Ancillary Rights granted herein or rights granted in paragraph 18, and this Agreement shall survive any termination and remain in full force and effect with respect thereto.

E)      In the event PROMOTER fails to make to FIGHTER any payment required under this Agreement, FIGHTER shall serve written notice upon PROMOTER and PROMOTER shall have a period of fourteen (14) business days after its receipt of such written notice to cure.  In the event that PROMOTER cures within fourteen (14) business days, this Agreement shall remain in full force and effect.  If PROMOTER fails to cure within fourteen (14) business days, FIGHTER shall have the option to terminate this Agreement by so notifying PROMOTER in writing at the conclusion of the fourteen (14) business day cure period.

F)      In the event that FIGHTER believes in good faith that PROMOTER has breached this Agreement other than as set forth above, PROMOTER shall have a period of forty-five (45) days after receipt of written notice of such breach from FIGHTER in which to cure such breach.  In the event that PROMOTER cures its breach within the forty-five (45) day period, this Agreement shall remain in full force and effect.  If PROMOTER fails to cure such breach within the forty-five (45) day period, then FIGHTER shall have the option to terminate this Agreement, by so notifying in writing PROMOTER, at the conclusion of the forty-five (45) day cure period.

H)      In the Event that FIGHTER breaches this agreement, PROMOTER reserves all rights and all remedies.

21

TIALS

18.   **FIRST/LAST REFUSAL**

*A)*   Upon expiration of the Term, FIGHTER agrees to negotiate exclusively and in good faith with PROMOTER regarding the extension or renewal of the Term for a period of ninety (90) days following the expiration of the Term.

*B)*   In the event no such agreement is reached between FIGHTER and PROMOTER during the aforementioned ninety (90) day period or if the contract has been terminated, FIGHTER may negotiate with other promotional entities, subject to PROMOTER's right to match the terms of any agreement offered to FIGHTER by such other promotional entity.

*C)*   FIGHTER shall provide PROMOTER with prompt written notice of any such offer, containing full details in regards thereof, including FIGHTER and/or FIGTHER's representative providing PROMOTER with a copy of the exact offer provided to FIGTHER.  Such notice shall constitute an exclusive, irrevocable offer to contract with PROMOTER on the same terms and conditions. PROMOTER shall have fourteen (14) business days after receipt of said notice to either accept or reject said offer.  If PROMOTER rejects said offer, FIGHTER may accept said offer with the promotional entity on the same terms and conditions and without any modifications thereto.  If the offer is modified in any material way, such modification shall give rise to another option for PROMOTER to match the terms of the offer as modified.

*D)*   PROMOTER's failure to accept any offer shall not constitute a waiver of last refusal with respect to subsequent offers.

19.   **MEDICAL TESTING**

Upon signing this contract and as required before any bout FIGHTER shall complete a full physical medical examination and undergo testing and receive affirmative clearance there from upon execution of this contract and prior to each bout including, but not limited to the following:  CBC, Hepatitis B, Hepatitis C, HIV, RH and Blood Type, RPR, PT, PTT, Urinalysis with drug screening, EKG,

22

TIALS

CT Scan, MRI, Dialated Ophthalmological exam, and such other testing as PROMOTER or the applicable Commission may require. The medical examination shall be performed by a neutral medical service provider during the thirty (30) day period immediately preceding the date of each bout. The report of the medical examination of FIGHTER containing the results of the examination and tests shall be delivered to PROMOTER no less than Fourteen (14) day prior to any bout and must not contain any restrictions on FIGHTER's ability to compete. All costs associated with the medical examination and tests shall be paid by FIGHTER. PROMOTER is hereby authorized to obtain medical documentation from and to give medical documentation to relevant Athletic Commissions.

### 20.   UNIQUE SERVICES

FIGHTER acknowledges and agrees that the services to be rendered or furnished by FIGHTER are of special, unique, unusual and extraordinary in character, giving them peculiar value which cannot be reasonably or adequately compensated by damages in action at law and could cause PROMOTER irreparable damage and injury and agrees that injunctive relief is appropriate in the event of a breach, and further, agrees that he will not raise a claim that money damages would suffice as a defense to injunctive relief. To the extent that a bond is necessary to obtain an injunction, FIGHTER agrees that the bond shall not exceed Five Hundred Dollars ($500).

### 21.   ASSIGNMENT

PROMOTER may assign, license, or transfer any rights or all of the rights and/or obligations contained in the Agreement, including but not limited to the right to allow other persons or entities to promote the Bouts; provided, however, that any such assignment will not relieve PROMOTER from the responsibility assumed by it under this Agreement. The rights and obligations of FIGHTER arising from this Agreement are personal to FIGHTER and may not be assigned, licensed, pledged or transferred for any reason.

23

█████████ IALS

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY          010

22. **NON-EXCLUSIVITY**

Nothing herein shall prevent PROMOTER from engaging in promotion activities for any other FIGHTER, including those fighters in the same weight class.

23. **RELATIONSHIP OF PARTIES**

Nothing in this Agreement shall be construed to constitute FIGHTER as an employee of PROMOTER or to appoint PROMOTER as FIGHTER's agent, and PROMOTER shall have no financial interest in the compensation payable to the FIGHTER for engaging in any bout hereunder. It is intended that FIGHTER shall remain an independent contractor, responsible for his own actions and expenses, including trainers, managers, attorneys and professional membership, and sanctioning fees, if any.

24. **CHOICE OF LAW/VENUE**

The law of the State of New Jersey applicable to contracts executed and to be fully performed in the State of New Jersey shall govern this Agreement, and FIGHTER's execution of this Agreement shall constitute his consent to the exclusive jurisdiction of the Courts of the State of New Jersey and the United States Courts located in New Jersey and to serve all process pursuant to the applicable section of the New Jersey Court Rules and/or Statutes with respect to matters relating to this Agreement or any dispute between the parties; provided, however, that actual Bouts will be conducted under the rules of the Commission in whose jurisdiction the Bouts are to take place.

25. **NOTICE**

A) All written notices permitted or required under this Agreement, elections, payments or other communications to be sent to the parties hereto shall be addressed and sent by certified or registered mail return receipt requested, postage prepaid, or by confirmed facsimile or by email as follows:

TO: **PROMOTER:**
Bellator Sport Worldwide, LLC
372 West Ontario St.
Suite 302
Chicago, IL 60654
**Telecopier:** (312) 329-0104

**With a Copy to:**
Patrick C. English, Esq.
Dines and English, L.L.C.
685 Van Houten Avenue
Clifton, New Jersey 07013
**Telecopier:** (973) 778-7633

24

SBPCL00002334

Email: bjorn@bellator.com          Email: dinesandenglish@aol.com

TO:     FIGHTER:



B)      Notice will be deemed given as of the successful sending of the confirmed facsimile or email, or upon receipt by the receiving party of the mailing.  It is the duty and responsibility of each party to notify the other parties to this Agreement of any address changes for purposes of notice and service.

**26.    FURTHER ASSURANCES**

A)      FIGHTER shall execute any and all additional documents or instruments necessary or desirable to effectuate the provisions of this Agreement.  FIGHTER shall not take any action or fail to take any action which action or failure shall frustrate the purposes of this Agreement and the benefits contemplated hereby.

B)      FIGHTER hereby acknowledges that PROMOTER may enter into a single bout, multi-bout, and/or multi-year contracts with a Telecaster or Telecasters in reliance on this contract, agrees to same, and agrees to execute any necessary contracts or ratifications to facilitate same so long as those contracts or ratifications are not inconsistent with his Agreement.

C)      FIGHTER agrees to cooperate in any reasonable manner to allow PROMOTER to acquire, for its own account, non-appearance or other insurance, in the sole discretion of PROMOTER. This includes, but is not limited to, submitting to a medical examination at PROMOTER's cost.

**27.    PUBLIC OFFERINGS/BUSINESS ARRANGEMENTS**

It is expressly understood that nothing in this contract shall prohibit any public or private offering by PROMOTER, any joint venture entered into by PROMOTER, or any syndication sponsored by PROMOTER, any change of ownership or control of PROMOTER, or any other business arrangement entered into by PROMOTER unless expressly prohibited herein.

25

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY          010                    SBPCL00002335

28.    **DESCRIPTIVE HEADINGS**

Descriptive headings of several of the sections and paragraphs of this Agreement are inserted for convenience only and do not constitute a part of this Agreement.

29.    **ENTIRE AGREEMENT**

This Agreement contains the full and complete understanding among the parties hereto and shall supersede all prior representations, agreements and understandings whether written or oral, pertaining hereto. In entering into this Agreement, FIGHTER relied upon no oral or written representations or understanding of any nature except as set forth in writing herein. This agreement may be modified only by a writing signed by both parties.

30.    **COUNTERPARTS**

This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same instrument. Facsimile signatures shall be as effective as originals.

31.    **CONFIDENTIALITY**

FIGHTER shall not disclose any information with respect to the terms of this Agreement or any Bout agreement and they shall remain confidential except, (i) to the extent necessary to comply with law, (ii) to obtain professional advice from his agents (i.e., managers, attorneys, accountants), or (iii) to enforce FIGHTER's rights under this Agreement. If disclosure must be made to conform with any valid governmental requirement, or any subpoena, FIGHTER shall notify the other party at least seven (7) working days before disclosure is to be made and make good faith efforts to cause the party to whom the information is disclosed to keep the information confidential; provided, however, that disclosures necessary to comply with any Commission requirements are pre-approved. FIGHTER acknowledges that disclosure could place PROMOTER at a competitive disadvantage and further acknowledges that disclosure will subject him to causes of action for injunctive relief and/or for damages.

26



32.    **ACKNOWLEDGMENT OF RISK**

FIGHTER voluntarily and knowingly agrees to participate in the events governed by this Agreement. MMA is a dangerous activity. FIGHTER hereby acknowledges that he may suffer transitory or permanent physical injuries from MMA, either in a single event or from participating in multiple events. FIGHTER, on behalf of himself, his heirs, and any who succeeds to his interests, hereby as a condition of participation releases PROMOTER, sponsors, Commissions, and venues or any agents, representatives or employees thereof, from any and all claims arising from injuries, mental and physical, which may be sustained by FIGHTER during participation in any of the events governed by this Agreement. PROMOTER will acquire such medical insurance for Bouts as is required by the Commissions having jurisdiction over the Bouts, if any is required, and FIGHTER's sole recourse in the event of injury sustained in the course of a bout will be through such insurance.

33.    **VOLUNTARINESS OF CONTRACT**

FIGHTER acknowledges that he has been given the opportunity to obtain independent legal advice, by counsel of his choosing, prior to the executing this Agreement, and that his entry into this contract is entirely voluntary.

34.    **SAVINGS CLAUSE**

If any provision of this contract is found to be illegal or void, then the offending contract provision shall be deemed stricken and the remainder of this Agreement will remain in effect.

35.    **RIGHTS RETAINED**

Any rights not expressly granted to FIGHTER herein are retained by PROMOTER.

27

TIALS

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY          010                                        SBPCL00002337

IN WITNESS WHEREOF, the parties have executed this Agreement as of the dates set forth below, the later of which shall be the Effective Date of this Agreement.

**BELLATOR SPORT WORLDWIDE, LLC**                    **FIGHTER**

Signature: _____                    Signa

Print: BJORN REBNEY                                Print:

Title: CEO                                         Socia

Date: ████████                                     Date:

28                                                                   ████ NITIALS

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY        010                                    SBPCL00002338

## ADDENDUM A – ADDITIONAL BOUT(S) & PURSES

This Addendum A to the Promotional Agreement ("Addendum A") is made and entered into by and between PROMOTER and FIGHTER and shall be incorporated into the Promotional Agreement on all of the terms and conditions set forth herein. All terms and definitions used in the Promotional Agreement shall be incorporated herein.

PROMOTER may provide FIGHTER the opportunity to participate in additional bouts ("the Additional Bouts") prior to FIGHTER's potential inclusion in a Heavyweight Tournament. While the Promotional Agreement shall be in full force and effect during the period of the Additional Bouts, the Additional Bouts shall not count against the number of Bouts PROMOTER is entitled to during the Term of the Agreement with FIGHTER. FIGHTER'S compensation for the Additional Bouts under the Agreement shall differ from the non-tournament purse structure found elsewhere in the Agreement. FIGHTER'S Additional Bout purses shall be:

- FIGHTER shall be paid a base purse of Two Thousand Dollars ($2,000) for his First Additional Bout,

- FIGHTER will be paid an additional Two Thousand Dollars ($2,000) if he is declared the winner of the First Additional Bout by the Commission governing his Bout.

If FIGHTER is declared the winner of his first Additional Bout and another Additional Bout is offered to FIGHTER, FIGHTER's base purse shall increase One Thousand Dollars ($1,000) and FIGHTER's win bonus shall increase One Thousand Dollars ($1,000).

IN WITNESS WHEREOF, the parties have executed this Addendum A as of the date set forth below.

BELLATOR SPORT WORLDWIDE, LLC          FIGHTER

Signature: _____          Sign_____

Print: BJORN REBNEY                     Print_____

Title: CEO                              Soci_____

Date: ███████████                       Date_____

29

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY          010
SBPCL00002339