WILLIAM A. ISAACSON (*Pro hac vice*)
wisaacson@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, D.C.  20006
Tel: (202) 223-7300
Fax: (202) 223-7420

DONALD J. CAMPBELL #1216
(djc@campbellandwilliams.com)
J. COLBY WILLIAMS #5549
(jcw@campbellandwilliams.com)
CAMPBELL & WILLIAMS
710 South 7th Street,
Las Vegas, NV  89101
Telephone: (702) 382-5222; Fax: (702) 382-0540

*Attorneys for Defendant Zuffa, LLC, d/b/a*
*Ultimate Fighting Championship and UFC*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>Defendant. | Case No.: 2:15-cv-01045-RFB-(BNW)<br><br>**DEFENDANT ZUFFA, LLC'S MOTION TO REOPEN DISCOVERY AND AMEND SCHEDULING ORDER**<br><br>**HEARING REQUESTED** |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................ 1

II.   BACKGROUND .......................................................................................... 3

    A.    Factual and Procedural History............................................................ 3

    B.    Developments in the Competitive Landscape...................................... 6

III.  ARGUMENT .............................................................................................. 8

    A.    Legal Standard .................................................................................... 8

    B.    The Relevant Factors Weigh Strongly in Favor of Reopening
    Discovery ........................................................................................... 8

        1.    Further Discovery Will Lead to Relevant Evidence .................................. 9

        2.    Zuffa Has Been Diligent in Obtaining Discovery and the
        Need for Additional Discovery Was Unforeseeable, So Any
        Potential Delay of Trial Does Not Reflect a Lack of
        Diligence ................................................................................... 14

        3.    Plaintiffs Will Experience No Prejudice From Reopening
        Discovery and Their Opposition to Zuffa's Motion Should
        Receive Minimal Weight ....................................................... 16

IV.   CONCLUSION........................................................................................... 18

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

## CASES

4

*Amgen Inc. v. Connecticut Ret. Plans &Tr. Funds*,
5      568 U.S. 455 (2013)...................................................................................................15

6 *Arizona State Carpenters Pension Tr. Fund v. Miller*,
     938 F.2d 1038 (9th Cir. 1991) ................................................................................17
7

8 *Bell v. PNC Bank, Nat'l Ass'n*,
     800 F.3d 360 (7th Cir. 2015) ..................................................................................15

9 *City of Pomona v. SQM N. Am. Corp.*,
10      866 F.3d 1060 (9th Cir. 2017) ...................................................................... *passim*

11 *Cornwell Quality Tools Co. v. C.T.S. Co.*,
     446 F.2d 825 (9th Cir. 1971) ......................................................................1, 10, 13
12

13 *Dreamstime.com, LLC v. Google LLC*,
     54 F.4th 1130 (9th Cir. 2022) ..................................................................................9

14 *F.T.C. v. Qualcomm Inc.*,
15      969 F.3d 974 (9th Cir. 2020) ...................................................................................9

16 *Geneva Pharms. Tech. Corp. v. Barr Laboratories, Inc.*,
     No. 98-cv-00861, 2005 WL 2132438 (S.D.N.Y. Sept. 6, 2005) ..............1, 10, 13, 14
17

18 *In re Independent Serv. Orgs. Antitrust Litig.*,
     No. MDL-1021, 1997 WL 161940 (D. Kan. Mar. 12, 1997) ................................17

19 *Lektro-Vend Corp. v. Vendo Co.*,
20      660 F.2d 255 (7th Cir. 1981) ................................................................................10

21 *Liberty Mut. Ins. Co. v. Wetzel*,
     424 U.S. 737 (1976)................................................................................................17
22

23 *Nealey v. Transportacion Maritima Mexicana, S.A.*,
     662 F.2d 1275 (9th Cir. 1980) ...............................................................................16

24 *New York v. Micron Tech., Inc.*,
25      No. C 06-64362009 WL 29883 (N.D. Cal. Jan. 5, 2009) ......................................13

26 *Nifty Foods Corp. v. Great Atl. & Pac. Tea Co.*,
     614 F.2d 832 (2d Cir. 1980)...................................................................................10
27

28 *Rebel Oil Co. v. Atlantic Richfield Co.*,
     51 F.3d 1421 (9th Cir. 1995) .......................................................................1, 9, 10, 11

*United States v. Grinnell Corp.*,
    384 U.S. 563 (1966)............................................................................................12

*United States v. Syufy Enters.*,
    903 F.2d 659 (9th Cir. 1990) ............................................................... *passim*

*Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*,
    549 U.S. 312 (2007)..............................................................................9

**STATUTES**

15 U.S.C. § 2...................................................................................................3

28 U.S.C. § 1291.............................................................................................17

**RULES**

Fed. R. Civ. P. 54(b) ......................................................................................17

## I.  INTRODUCTION

Defendant Zuffa, LLC ("Zuffa") (d/b/a/ Ultimate Fighting Championship ("UFC")) respectfully moves this Court to reopen fact discovery and allow the submission of targeted supplemental expert reports.  It has now been six years since the close of fact discovery in this case.  Unsurprisingly, those intervening years have given rise to substantial developments in the mixed martial arts ("MMA") industry that will impact a jury's evaluation of Plaintiffs' claims—including the continued growth of competing promoters that directly undercut Plaintiffs' theory of the case.  It is settled law that developments after the period of alleged misconduct can be considered—and are often highly relevant—in determining liability in Section 2 cases.  *See, e.g.*, *Cornwell Quality Tools Co. v. C.T.S. Co.*, 446 F.2d 825, 833 (9th Cir. 1971); *Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1439-41 (9th Cir. 1995).  Accordingly, in similar circumstances, courts reopen discovery to explore post-Class-Period evidence in order to ensure a defendant isn't deprived of evidence valuable to its defense.  *See Geneva Pharms. Tech. Corp. v. Barr Laboratories, Inc.*, No. 98-cv-00861, 2005 WL 2132438, at *6 (S.D.N.Y. Sept. 6, 2005). The Ninth Circuit has made clear that a district court acts "illogically" and commits reversible error where it does not allow a reopening of discovery to explore "material" developments that occurred after the close of discovery if the moving party has been diligent and delay in the trial date is "of the district court's own making."  *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017).[1]  Reopening discovery is warranted here.

In order to establish their claims, Plaintiffs will have to show, among other things, that (1) Zuffa had durable monopsony power during the Class Period, and (2) the contracts it used were anticompetitive.  Events after the Class Period—which extends only to June 2017—will plainly yield relevant evidence as to both.  *First*, post-Class-Period evidence is relevant to showing whether Zuffa's alleged market power was durable.  *United States v. Syufy Enters.*, 903 F.2d 659, 665-66 (9th Cir. 1990) ("In evaluating monopoly power, it is not market share that

---

[1] With respect to quoted material, unless otherwise indicated, all brackets, ellipses, footnote call numbers, internal quotations, and citations have been omitted for readability.  All emphasis is added unless otherwise indicated.

ZUFFA'S MOTION TO REOPEN DISCOVERY          CASE NO.:  2:15-CV-01045-RFB-(BNW)

1   counts, but the ability to maintain market share.").  As Zuffa has argued and will argue, the low

2   barriers to entry in the MMA industry meant that any market power Zuffa enjoyed during the

3   Class Period was transient, and a function of Zuffa's pioneering investments in developing the

4   industry—decidedly procompetitive conduct.  Evaluation of that question will necessarily be

5   impacted by whether competitors that emerged *during* the Class Period succeeded or failed.  If

6   they failed, Plaintiffs would doubtless argue it helps show that Zuffa really did have durable

7   monopsony power.  But, by the same token, if those emerging competitors are successful or are

8   on the road to success, that is a compelling indication that Zuffa was not a durable monopsonist,

9   and is rather a first mover that developed the industry through its own substantial investments—

10  and thus *helped* competitors by building fan interest in the product, which those competitors

11  exploited during and after the Class Period.

12       *Second*, post-Class-Period evidence has the potential to undermine Plaintiffs' theory that

13  "30-month contracts" are exclusionary.  That is because Zuffa is alleged to have used *virtually*

14  *identical* contracts after the Class Period—and competitors continued to emerge and grow.  The

15  years after the Class Period thus act like a controlled experiment as to whether the challenged

16  contracts really did have an exclusionary effect.  If companies like Bellator and the Professional

17  Fighters League ("PFL") thrived after the Class Period under the *same* regime that Plaintiffs

18  claim was anticompetitive and exclusionary, that is powerful evidence that Plaintiffs' theory is

19  without merit.

20       Plaintiffs face a high bar in establishing that summary judgment motions and any trial

21  should go forward with six years of relevant evidence entirely excluded from consideration.

22  Such a remarkable step would potentially be warranted only if that evidence were categorically

23  irrelevant or inadmissible.  But Plaintiffs cannot make such a claim.  They acknowledge that

24  Zuffa would be entitled to raise all of these defenses—and rely on post-Class-Period evidence—

25  for purposes of determining the availability of injunctive relief.  That concession confirms that

26  post-Class-Period evidence *is relevant*—and should be available in a damages trial as well.  The

27  nature of relief sought does not change the scope of evidence needed to establish liability in the

28  first place.  And, here, there is no serious dispute that six years of competitive developments in

the marketplace is relevant evidence in determining whether Zuffa maintained a durable monopsony through anticompetitive means.

Other factors also counsel in favor of a limited and targeted reopening of discovery. Zuffa is not responsible for any delay stemming from reopening of discovery. Zuffa sought to reopen discovery at the earliest possible moment after Plaintiffs' motion for class certification was granted and this case moved back to the merits, and has now done so at the date set by the Court. Additional discovery can be conducted expeditiously—particularly given that third party discovery is underway in *Johnson v. Zuffa LLC*, No. 2:21-cv-01189 (D. Nev.) ("*Johnson*")—and can likely be completed in 4-6 months. And because Plaintiffs would be unable collect on an award of damages until after this Court addresses their request for injunctive relief—which both parties and the Court have agreed requires additional discovery—reopening discovery could not possibly prejudice Plaintiffs. The motion should be granted.

## II. BACKGROUND

### A. Factual and Procedural History

Plaintiffs filed their Complaint against Zuffa in the Northern District of California on December 16, 2014, ECF No. 1, and then filed the operative Amended Class Action Complaint on December 18, 2015, ECF No. 208. Plaintiffs allege that Zuffa violated Section 2 of the Sherman Act, 15 U.S.C. § 2, by abusing "monopoly and monopsony power," which it "gained, enhanced, and maintained through [an alleged] anticompetitive scheme." Am. Compl. ¶ 166.[2]

Plaintiffs' monopsony claim relies on the theory that Zuffa maintained monopsony power in a labor market for "Elite Professional MMA Fighter services," and used allegedly exclusionary contracts to perpetuate that power. Am. Compl. ¶ 166. Plaintiffs allege that these

---

[2] As part of their Section 2 monopsony claim, Plaintiffs allege two Relevant Markets: (1) the "Relevant Output Market" defined as the market for "promoting live Elite Professional MMA bouts in the United States," and (2) the "Relevant Input Market," defined as "the market for live Elite Professional MMA Fighter services." Am. Compl. ¶ 165. Plaintiffs alleged that "UFC possesses monopoly power in the Relevant Output Market and monopsony power in the Relevant Input Market." *Id.* ¶ 166. Because Plaintiffs have abandoned their monopolization theory, the Court observed that the output market is only relevant "insofar as it bolsters its exercise of monopsony power in the input market." Class Certification Order at 20 n.20 (Aug. 9, 2023), ECF No. 839.

3

1   contracts foreclosed competition for MMA athletes' services such that it was impossible for

2   other promoters to compete in the market, notwithstanding the entry and expansion of

3   competitors during and after the Class Period.  *Id*.  Zuffa maintains that it did not have durable

4   monopsony power during the Class Period, and that the claimed 30-month contracts did not have

5   any anticompetitive effect.  *See generally* Zuffa's Renewed Mot. for Summ. J., filed concurrently

6   herewith.  Specifically, Zuffa argues that its market share during the Class Period was a function

7   of it making substantial investments in growing and developing the MMA market from a fringe

8   sport—in which the sport was largely outlawed and MMA fighters had virtually no career

9   prospects—to a thriving industry with millions of fans and many successful athletes.  *Id.* at 16.

10   Put simply, Zuffa expanded output by developing a viable career path for MMA athletes.

11     In February 2017, Plaintiffs filed a Motion for Class Certification, seeking to certify a

12   "Bout Class," defined as:

> 13   All persons who competed in one or more live professional UFC-
> promoted MMA bouts taking place or broadcast in the United
> 14   States from **December 16, 2010 to June 30, 2017**. The Bout Class
> excludes all persons who are not residents or citizens of the United
> 15   States unless the UFC paid such persons for competing in a bout
> fought in the United States.
> 16

17   ECF No. 518 at i.  Fact discovery closed over six years ago, on July 31, 2017, while briefing on

18   Plaintiffs' Motion for Class Certification was underway.  Order Granting Proposed Disc. Plan at

19   2, ECF No. 432.

20     The Court held evidentiary hearings regarding the Motion for Class Certification from

21   August 26 through September 23, 2019.  *See* ECF Nos. 723, 725, 729, 735, 740, 746, 747.  These

22   evidentiary hearings, held over four years ago, are the last time the Court heard substantive

23   evidence in this case.

24     On June 23, 2021, another group of MMA athletes filed another class action lawsuit on

25   behalf of MMA fighters against Zuffa, asserting nearly identical claims as the fighters in this

26   case.  Compl., *Johnson* (June 23, 2021), ECF No. 1.  The only real difference between *Le* and

27   *Johnson* is the class period, which in the *Johnson* case runs from July 1, 2017, to the present.  *Id.*

28   ¶ 2.  The *Johnson* Plaintiffs allege the same Section 2 monopsonization claim (*id.* ¶¶ 142-150),

the same relevant markets (*id*. ¶ 144), and same allegedly anticompetitive behavior by Zuffa (*id*. ¶¶ 145-147) as in this case.  Zuffa explained as early as January 2022, that further discovery would be necessary in this case when it argued to this Court that the *Le* and *Johnson* cases should be consolidated "to allow for discovery, applicable in both actions, to update the record for the events following mid-2017 and to converge both cases onto the same track for summary judgment and trial."  Proposed Disc. Plan & Scheduling Order at 9, *Johnson*, ECF No. 51. Plaintiffs opposed Zuffa's proposed discovery plan and the Court ultimately decided to stay discovery in *Johnson* for over eighteen months.  Minute Order, *Johnson* (Sept. 30, 2022), ECF No. 68.  The Court recently lifted the stay of discovery in *Johnson* and third-party subpoenas have been served on Zuffa's many competitors.

On August 9, 2023, more than five years after the Motion for Class Certification was filed, and nearly four years after the conclusion of the evidentiary hearings, this Court granted class certification of the Bout Class in this case.  Class Certification Order, ECF No. 839.  In that decision, the Court declined to rule on various issues relating to Plaintiffs' request for injunctive relief and the named Plaintiffs' adequacy in representing the class of MMA athletes seeking such relief, because Plaintiffs did not seek to certify a Rule 23(b)(2) injunctive relief class, nor did they attempt to show that class-wide injunctive relief is proper in the context of the Rule 23(b)(3) class.  *Id*. at 74.  The Court explained that it would be "inappropriate to make a determination as to injunctive relief based solely on the earlier pleadings of the parties."  *Id*. at 18 n. 17.  Citing the Court's reasoning, Plaintiffs have acknowledged that the request for injunctive relief "require[s] some updated discovery" and proposed that this discovery in *Le* "should be pursued jointly with the litigation of the *Johnson* case."  Pls.' Pre-Conference Statement at 2, 5 (Aug. 17, 2023), ECF No. 842.  In its pre-conference filings, Zuffa explained that this updated discovery is required to establish liability, whether for damages or injunctive relief.  Zuffa's Pre-Conference Statement at 3 at 3 (Aug. 20, 2023), ECF No. 843.

During the August 21, 2023 status conference, the Court stated that this case would be "on a fast track for trial" due to its age and set a tentative trial date for April 2024.  ECF No. 846

at 9:13-14.[3]  Zuffa expressed its intent to move for the reopening of discovery and to seek additional discovery from third-parties that is necessary for its defense, *id.* at 11:10-21, and the Court set a deadline of October 24, 2023, for that motion, *id.* at 30:4-31:3.  At the same time, the Court lifted the stay in the related *Johnson* case, *id* at 31:7-9, and discovery has commenced.

## B. Developments in the Competitive Landscape

A great deal has changed in the six years since discovery closed.  The UFC has continued to grow in popularity and notwithstanding this continued growth, new competitors have emerged and competitors that existed in 2017 when discovery closed are thriving and expanding.  These competitors have obtained major new equity investments, new broadcasting deals, and new sponsors.  And, those competitors have more than enough fighters to put on successful bouts, including numerous MMA athletes previously under contract with Zuffa.  A few examples are discussed below, but Zuffa has served third-party discovery in *Johnson* on ten competitors.

For example, Bellator MMA emerged as a significant competitor to UFC during the Class Period, and has continued to grow since 2017.  Bellator began to host its Grand Prix tournament series in 2018, its events are broadcast on Showtime and the BBC, with additional streaming on YouTube and CBSSports.com.  Zuffa's Renewed Mot. for Summ. J, Ex. 113 (Epstein Decl.) ¶ 6, filed concurrently herewith.  These media deals were expected to "double Bellator's revenue." *Id.*  From 2014 to 2020, Bellator saw 20% growth or more in revenue every year.  *Id.*  Bellator has also received widespread recognition for the quality of its fights.  *Id.*  Reflecting this success, Bellator is engaged in discussions regarding merging with another competitor, PFL.  *Id.* at 7.

PFL was founded in 2018 and is the successor to MMA promoter World Series of Fighting ("WSOF").  *Id.* ¶ 8.  PFL purchased WSOF's fighting operations and event infrastructure in early 2017 and advertises itself as "the #1 fastest growing sports league and the #2 MMA company worldwide."  *Id.*  PFL puts on an MMA tournament with six weight class champions, each earning a $1 million prize, with $10 million in total compensation.  *Id.* ¶ 9

---

[3] Zuffa has indicated that the Court's tentative April 2024 trial date will not work because of conflicts. ECF No. 861.

1    PFL has grown substantially since 2018.  It has attracted elite fighters, including  former

2   UFC Heavyweight Champion Francis Ngannou, who signed to fight with PFL in May of this

3   year.  Zuffa's Renewed Mot. for Summ. J, Ex. 79 (Campbell Decl.) ¶¶ 13-17, filed concurrently

4   herewith.  Major investors like the Public Investment Fund of the Kingdom of Saudi Arabia,

5   SRJ, Ares, Knighthead, Luxor Capital, Waverley Capital, Elysian Park Ventures, and numerous

6   NBA, MLB, NHL, and MLS team owners back PFL with recent investments totaling hundreds

7   of millions of dollars.  Epstein Decl. ¶ 8.  PFL also holds sponsorships from major brands like

8   GEICO, Draft Kings, Bose, Bud Light, Celsius, and more.  *Id.* ¶ 10.  Moreover, PFL has reached

9   distribution deals with NBC Sports and Facebook, and more recently has had its events broadcast

10   by ESPN.  *Id.* ¶ 9.   Viewership on ESPN and through streaming platforms has increased

11   substantially since its founding.  *Id.* ¶ 10.

12    Other MMA promoters are have also expanded their presence in the United States since

13   2018.  In April 2021, it was announced that Anthem Sports & Entertainment had acquired

14   combat sport promotion company Invicta, which now has its events broadcast live on Anthem-

15   owned networks and over IFC's YouTube channel.  *Id.* ¶ 13.  And ONE Championship, is

16   expanding its presence in the United States after a fundraising round let by Guggenheim

17   Investments and the Qatar Investment Authority that has it valued at $1.4 billion.  *Id.* ¶ 12.  It has

18   had global success, drawing an average of 50 million viewers per event compared to around

19   40,000 viewers six years ago and is streamed over Prime in the United States.  *Id.* ¶ 11.  ONE

20   has also been able to sign top MMA athletes, including former UFC Flyweight Champion

21   Demetrious Johnson, who it signed in in 2018.  Campbell Decl. ¶¶ 18-20.  ONE is now

22   leveraging its global popularity and access to capital to expand its presence in the United States.

23   Epstein Decl. ¶ 11; Ex. 1, Topel Decl. ¶ 11.

24    Critically in a case in which Plaintiffs' theory is that UFC is a monopsony buyer of

25   fighter services, Bellator, PFL, and other promoters have successfully put on frequent bouts—

26   confirming that there are numerous talented athletes available to competitors.  And movement of

27   athletes from UFC to other promoters has accelerated over the past six years.  Successful UFC

28   athletes have increasingly signed with other promoters—including Bellator, PFL, and other UFC

7

1   competitors.  Campbell Decl. ¶¶ 9-20.  Athletes such as Corey Anderson have moved to Bellator

2   and have had significant success since then.  *Id.* ¶¶ 3, 9-12.  And in moving from UFC to PFL,

3   former UFC Heavyweight Champion Francis Ngannou announced that PFL offered him greater

4   compensation than UFC.  *Id.* ¶ 14; *see also id.* ¶¶ 15-16.  If Plaintiffs' allegations in this case and

5   *Johnson* regarding allegedly exclusionary contracts were correct, UFC fighters would not be

6   signing contracts with competitors.

7   **III.   ARGUMENT**

8   **A.   Legal Standard**

9   When considering a motion to reopen discovery under Rule 16 of the Federal Rules of

10  Civil Procedure, courts balance the following six factors:

11  > 1) whether trial is imminent, 2) whether the request is opposed, 3)
    > whether the non-moving party would be prejudiced, 4) whether the
12  > moving party was diligent in obtaining discovery within the
    > guidelines established by the court, 5) the foreseeability of the
13  > need for additional discovery in light of the time allowed for
    > discovery by the district court, and 6) the likelihood that the
14  > discovery will lead to relevant evidence.

15  *City of Pomona*, 866 F.3d at 1066.

16  **B.   The Relevant Factors Weigh Strongly in Favor of Reopening Discovery**

17  Reopening discovery is appropriate as five of six factors (all but Plaintiffs opposition to

18  the request) weigh strongly in favor of reopening discovery.  *First*, it is very likely to lead to

19  evidence that will be relevant at trial, and Zuffa will be prejudiced, including being denied due

20  process, if it is unable to conduct discovery on critical developments in the industry.  *Second*,

21  Zuffa has been diligent in pursuing discovery, and the need to reopen discovery—based on the

22  pendency of the class certification motion before this Court—was outside of Zuffa's control.  In

23  a virtually identical situation, the Ninth Circuit found an abuse of discretion and reversible error

24  when the district court prevented discovery into new and relevant facts.  *Finally*, in the

25  circumstances here, Plaintiffs will suffer *no* prejudice from this brief reopening.  That is because

26  the delay will be short, and any damages award must await final judgment on both damages and

27  injunctive relief—and Plaintiffs acknowledge that more discovery is warranted for purposes of

28  the injunctive relief class.  There is no sensible reason to deny limited discovery, and thereby risk

8

1  depriving Zuffa of critical evidence for its defense, when there will be no prejudice to Plaintiffs.

2  That result would only invite appellate reversal, and further risk prolonging proceedings.   The

3  motion should be granted.

### 1.        Further Discovery Will Lead to Relevant Evidence

5  The Ninth Circuit in *City of Pomona* reversed the denial of a motion to reopen discovery

6  and file supplemental expert reports to reflect new evidence; here, updated discovery and expert

7  reports will similarly "lead to relevant evidence" as to multiple elements of Plaintiffs'

8  monopsonization claim.  *City of Pomona*, 866 F.3d at 1066.  With a stream of major investments,

9  sponsorships, and acquisitions of non-UFC leagues, promoters such as Bellator and PFL have

10  erupted in popularity and expanded their positions in the industry.   This evidence is highly

11  relevant to whether Zuffa had monopsony power during the Class Period and whether the

12  challenged conduct was anticompetitive.   This factor weighs decisively in favor of reopening

13  discovery.

14  To successfully prove their Section 2 claim, Plaintiffs must show (1) the possession of

15  monopsony power in the relevant market; (2) the willful acquisition of that power; and (3) causal

16  antitrust injury.  *See F.T.C. v. Qualcomm Inc.*, 969 F.3d 974, 990 (9th Cir. 2020); *Weyerhaeuser*

17  *Co. v. Ross-Simmons Hardwood Lumber Co.*, 549 U.S. 312, 320 (2007).  "To meet the first

18  element of a Section 2 claim, a plaintiff generally must (1) define the relevant market, (2)

19  establish that the defendant possesses market share in that market sufficient to constitute

20  [monopsony] power, and (3) show that there are significant barriers to entering that market."

21  *Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1137 (9th Cir. 2022).  A showing "of

22  substantial or even dominant market share alone cannot establish market power sufficient to

23  carry out a predatory scheme.  [Plaintiffs] must show that new rivals are barred from entering the

24  market and show that existing competitors lack the capacity" to challenge the dominant firm.

25  *Rebel Oil*, 51 F.3d at 1439; *see also Syufy*, 903 F.2d at 665 (holding that firm lacked monopsony

26  power where the "market was more competitive when this case came to trial than before [the

27  conduct at issue]").

28

ZUFFA'S MOTION TO REOPEN DISCOVERY          CASE NO.:  2:15-CV-01045-RFB-(BNW)

1    The Ninth Circuit has made clear that evidence subsequent to the period of alleged

2 misconduct is relevant to evaluating market power, where it bears on the existence of barriers to

3 entry or is otherwise instructive of market structure.  *See, e.g.*, *Rebel Oil*, 51 F.3d at 1439-41

4 ("We must consider [events occurring after] when the alleged barriers were in place" because

5 "plaintiff must show that new rivals are barred from entering the market" and liability for

6 monopolization may not exist "if there is undisputed evidence indicating that competitors have

7 expanded output in the recent past, or have the ability to expand output in the future."); *Cornwell*

8 *Quality Tools*, 446 F.2d at 833 ("evidence of any activity of [an alleged monopolist] that may

9 reflect upon its market position or the intentions of its management at the time of the alleged

10 violations  is admissible, regardless of when it occurred").

11    It is for that reason that courts routinely look to changes in market share and structure

12 *years* subsequent to the period of alleged misconduct, in order to evaluate what was really

13 happening during that earlier period.  *See Syufy*, 903 F.2d at 665 (affirming dismissal of

14 Section 2 claim, determining from market conditions in the years following alleged conduct that

15 defendant lacked the power to exclude competition); *Lektro-Vend Corp. v. Vendo Co.*, 660 F.2d

16 255, 270-71 (7th Cir. 1981) (considering market performance subsequent to alleged attempt to

17 monopolize in evaluating Section 2 claim); *Nifty Foods Corp. v. Great Atl. & Pac. Tea Co.*,

18 614 F.2d 832, 841 (2d Cir. 1980) (affirming dismissal of Section 2 claim based on market share

19 evidence subsequent to alleged conduct).

20    That approach is sensible.  After all, the "time period for analyzing the ability of a

21 competitor to enter the marketplace . . . is not tied to the date of a defendant's alleged unlawful

22 conduct." *Geneva Pharms.*, 2005 WL 2132438, at *6.  And a plaintiff cannot control the scope

23 of evidence a jury sees by arbitrarily cutting off an alleged damages period at a particular date.

24 Rather, the key question is whether the events post-dating the Class Period are relevant to

25 evaluating the claims at issue.  Here, they are for at least two reasons.

26    *First*, post-Class-Period evidence is relevant to determining whether Zuffa had durable

27 monopsony power during the Class Period.  *See* Ex. 1, Topel Decl. ¶ 12.  As noted, to establish

28 durable monopsony power, Plaintiffs will have to show that during the Class Period competitors

10

1  were "barred from entering the market" or "lack[ed] the capacity" to expand.  *Rebel Oil*, 51 F.3d

2  at 1439-41.  But it is undisputed that competitors *did* enter the market during the Class Period.

3  *See, e.g.*, Am. Compl. ¶¶ 130, 143, 144.  Whether these new entrants were successful clearly

4  bears on whether competitors were "barred" from entering the market.  If these new entrants had

5  rapidly failed because they could not compete with Zuffa's alleged entrenched market power,

6  Plaintiffs would surely argue that was significant evidence of durable monopsony power.  *See,*

7  *e.g.*, Pls.' Opp'n to Zuffa's Mot. for Summ. J. at 14-15, ECF No. 596 (arguing that competitors

8  like Bellator did not have "sufficient clout to check its dominance.").  But if competitors

9  emerged during the Class Period and subsequently thrived, that is obviously relevant to

10  determining whether new entry was "barred" or competitors "lacked capacity" to expand.  *See*

11  *Syufy*, 903 F.2d at 669 (affirming judgment in favor of defendant where entry of competitors

12  after alleged conduct showed low barriers to entry).

13  Similarly, the entry and expansion of a significant competitor like PFL immediately after

14  the Class Period ends must be considered in evaluating whether there were barriers to entry.

15  There is no reason to think that barriers to entry were unassailable during the Class Period, but

16  then suddenly (and coincidentally) diminished a few months after the Class Period ended.  And,

17  even if there were, that is an argument that Plaintiffs could make to the Court or a jury—not a

18  reason to bar the Court or a jury from even learning about PFL and its success.  There is no basis

19  to arbitrarily ignore evidence of entry simply because it falls outside a date set by Plaintiffs.

20  *Second*, post-Class-Period evidence is highly relevant to understanding whether the

21  contracts that Plaintiffs challenge are exclusionary.  Plaintiffs' case ultimately comes down to

22  causally attributing the alleged lack of competition during the Class Period to the supposed

23  exclusionary effect of the fighter contracts.  But, as Zuffa has explained, Zuffa created the

24  industry through substantial investments—quintessentially procompetitive conduct.  It is not

25  surprising that the first-mover (and innovator) in an industry will be the most successful

26  company for a period of time.  *See Syufy*, 903 F.2d at 668-69 (when a vigorous competitor

27  "deters competitors by supplying a better product at a lower price . . . the goals of competition

28  are served even if no actual competitors see fit to enter the market at a particular time"); *Rebel*

11

1    *Oil*, 51 F.3d at 1441 (looking to whether competitors have the capacity to expand output in the

2    future).  It is only when a claimed monopolist or monopsonist uses anticompetitive means to

3    achieve or sustain its position that Section 2 is implicated.  *See United States v. Grinnell Corp.*,

4    384 U.S. 563, 570-71 (1966) (there is nothing problematic about possession of monopoly power

5    arising from "growth or development as a consequence of a superior product, business acumen,

6    or historic accident").  This means that any trial of this case will necessarily involve questions

7    about Zuffa's investments to create the industry, barriers to entry, success of competitors, and the

8    ability of competitors to contract with sufficient fighters (whether previously at Zuffa or

9    elsewhere) to put on bouts.

10         These issues will be critical questions for the jury.  And the period after 2017 provides a

11    natural experiment to test Plaintiffs' claims.  Plaintiffs do not dispute that the use of *virtually*

12    *identical* contracts continued in the post-Class-Period; indeed, that is precisely the claim made in

13    *Johnson*.  The entry and success of new competitors during that post Class-Period is thus strong

14    evidence that those contracts did not have the capability of excluding competition.  After all,

15    there is no reason to think that contracts that did not prevent PFL, Bellator, and others from

16    entering the market—and thriving—after 2017 were somehow the basis for excluding

17    competition before 2017.  This would also serve as a natural experiment as to the other key pillar

18    of Plaintiffs' case—that the challenged contracts unlawfully hindered fighter mobility.  Fighters

19    may have moved less during the earlier period because UFC was so much more appealing than

20    the competition, *not* because their contracts prevented movement to competitors. And as

21    competitors subsequently grew and became more attractive, fighters *did* move—notwithstanding

22    the contracts that were allegedly preventing them from doing so.  At a minimum, Zuffa is

23    entitled to *present* such an argument to the Court and a jury if the Court decides that there are

24    triable issues.  Yet, Plaintiffs' approach would effectively prohibit either the Court or a jury from

25    considering the results of that natural experiment.

26         Moreover, declining to reopen discovery would not only arbitrarily exclude from the case

27    years of relevant information relevant to key issues, it may also confuse a jury—and result in

28    further prejudice to Zuffa.  After hearing testimony about the entry and expansion of various

12

other MMA promoters through 2017, jurors would naturally wonder what happened to them in the subsequent seven years.  The answer is that those promoters have continued to expand and compete with Zuffa.  But if Zuffa is forbidden from building that factual record through reopened discovery, those jurors could make a negative (and incorrect) inference that those other promoters have *not* been successful.  *See New York v. Micron Tech., Inc.*, No. C 06-6436, 2009 WL 29883, at *6 (N.D. Cal. Jan. 5, 2009) (holding that a party would experience "unfair disadvantage" if it were prohibited from conducting certain discovery relevant to its defenses).[4] The only way to remedy that problem would be to suggest to the jury that evidence after the Class Period is not relevant to Plaintiffs' claims.  But that instruction would be incorrect, and contrary to law.  *See Cornwell Quality Tools*, 446 F.2d at 833; *Geneva Pharms.*, 2005 WL 2132438, at *6.  There is no way to sensibly manage this trial while cabining evidence to a time period over half a decade ago.  The reality is that jurors will *expect* this evidence one way or the other, and any verdict based on inferences from an incomplete record will be unreliable.

*Geneva Pharmaceuticals Technology Corp. v. Barr Laboratories, Inc.*, No. 98-cv-00861, 2005 WL 2132438 (S.D.N.Y. Sept. 6, 2005), is instructive.  In that monopolization case, the court granted a motion "to reopen discovery to explore marketplace conditions and other relevant events from the intervening months since discovery was closed."  *Id.* at *5.  Following a remand from the court of appeals, the court was presented with new evidence of entry and shifting market shares.  *Id.* at *5-6.  The court concluded that this new entry was relevant to evaluating key antitrust issues, including market power ("barriers to entry") and causation.  *Id.*  Importantly, the court expressly *rejected* the argument that evidence of subsequent entry was irrelevant to a monopolization claim predicated on earlier conduct.  "The time period for analyzing the ability of a competitor to enter the marketplace," the court reasoned, "is not tied to the date of a defendant's alleged unlawful conduct."  *Id.* at *6.  Accordingly, firms that entered the market

---

[4] Plaintiffs may argue that this evidence has little relevance to monopsony power because of the length of time for which Zuffa allegedly held a high market share in Plaintiffs' gerrymandered market.  Setting aside the defects with Plaintiffs' market, this ignores that even a relatively lengthy period of a high market share is insufficient to establish monopsony power in the absence of high barriers to entry.  *See Syufy*, 903 F.2d at 668-69.

1  *after* the conduct at issue were appropriately considered "potential entrants prior to their actual

2  entry date." *Id*. Reopening discovery to explore subsequent changes in the market was therefore

3  appropriate.

4  This reasoning applies here. PFL's entry and expansion after purchasing WSOF's

5  fighting operations and event infrastructure in early 2017 shows that barriers to entry were low

6  during the Class Period and that Zuffa's contracts with MMA athletes have not impaired either

7  their ability to move between promoters or the ability of promoters to obtain fighters (whether

8  from Zuffa or elsewhere) to compete with Zuffa. Bellator's expansion reflects the same. As in

9  *Geneva Pharmaceuticals*, the market data shows that competitors to UFC are able to compete

10  successfully in the alleged market for MMA athletes' labor services. *See supra* Section II.B.

11  And, as discussed above, consideration of evidence from a broader timeframe is even more

12  critical here because the MMA industry was relatively undeveloped early in the Class Period.

13  More recent evidence thus presents a *clearer* picture of the effects of Zuffa's alleged conduct

14  than evidence from a period where the MMA product was still in its developmental stage. *See*

15  *Syufy*, 903 F.2d at 663 (courts should proceed "with extreme caution" in applying

16  monopolization law "where market forces are likely to cure the perceived problem within a

17  reasonable period").

18  **2.  Zuffa Has Been Diligent in Obtaining Discovery and the Need for Additional
     Discovery Was Unforeseeable, So Any Potential Delay of Trial Does Not**

19  **Reflect a Lack of Diligence**

20  Zuffa's diligence and timeliness in seeking to reopen discovery also weigh in its favor.

21  Zuffa sought to reopen discovery at the first possible time after a four-year delay in these

22  proceedings between the hearing on class certification and the Court's decision.

23  Any delay in this case is thus not attributable to a lack of diligence by Zuffa. The

24  evidence has been continuously accumulating since fact discovery closed in 2017 and even since

25  Plaintiffs' motion for class certification was briefed in 2018, and there was no opportunity to

26

27

28

14

raise that new evidence on the merits since Plaintiffs' motion was pending the entire time.[5]
Moreover, because this new evidence is relevant to the merits, there was no reason for Zuffa to
disrupt this Court's consideration of class certification with a request to conduct further
discovery before the resolution of that motion.  Zuffa was under no obligation to present the
merits of its case during the class certification stage because "Rule 23 grants courts no license to
engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Connecticut Ret.
Plans & Tr. Funds*, 568 U.S. 455, 466 (2013); *see also Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d
360, 376 (7th Cir. 2015).  And it was entirely reasonable for Zuffa to wait to reopen discovery
until that motion was decided since the case likely would not have proceeded as an individual
action if class certification were denied.

Moreover, Zuffa explained as early as January 2022 that further discovery would be
necessary in this case when it represented to this Court that the *Le* and *Johnson* cases should be
consolidated "to allow for discovery, applicable in both actions, to update the record for the
events following mid-2017 and to converge both cases onto the same track for summary
judgment and trial."  Proposed Disc. Plan & Scheduling Order at 9, *Johnson* (Jan. 14, 2022),
ECF No. 51.  Plaintiffs opposed Zuffa's proposed discovery plan and the Court ultimately
decided to stay discovery in *Johnson* for over eighteen months.  Minute Order, *Johnson* (Sept.
30, 2022), ECF No. 68.

Under such circumstances, the Ninth Circuit has made clear that reopening discovery is
warranted.  In *City of Pomona v. SQM North America Corp.*, 866 F.3d 1060 (9th Cir. 2017), the
Ninth Circuit reversed the district court's refusal to reopen discovery, holding that the district
court abused its discretion in doing so.  After the case had been on appeal for three years, the
case was remanded to the district court.  Upon remand, the district judge set a trial date for less
than five months from the post-remand status conference.  After that status conference, the City
of Pomona moved to reopen discovery so that the record would "reflect scientific developments

---

[5] The Court denied Zuffa's first motion for summary judgment without prejudice in light of the
ongoing expert discovery and evidentiary hearings related to the parties' *Daubert* motions.  *See*
ECF No. 627 at 58:12-19.

that had been advanced during the three years in which the case was on appeal." 866 F.3d at 1064. The trial judge denied the motion, citing concerns about delaying the trial further.

The Ninth Circuit reversed, noting that any delay caused by reopening discovery "was not the result of a lack of diligence by Pomona" but rather "was brought about by the combination of an expeditious trial date and the amount of time Pomona's motion sat undecided." *Id.* at 1066. It is "illogical" and reversible error to deny a motion to reopen discovery into "material" new developments, where the moving party has been diligent and any delay in the trial date is "of the district court's own making." *Id.*

Here, this Court set the motion for reopening discovery based on the tentative trial date. *See* Aug. 21, 2023 Status Conf. Tr. at 29:16-30:8. Moreover, the tentative trial date reflects this Court's decision to "put this case on a fast track for trial" due to its age, after waiting nearly four years to rule on Plaintiffs' threshold motion for class certification. *Id.* at 9:13-14. Trial was not "imminent" when Zuffa made its request to reopen discovery—it had not even been set. It would be an abuse of this Court's discretion to deny Zuffa evidence necessary for its defense due to "the combination of an expeditious trial date and the amount of time [Plaintiffs' motion for class certification] sat undecided." *City of Pomona*, 866 F.3d at 1066.

### 3. Plaintiffs Will Experience No Prejudice From Reopening Discovery and Their Opposition to Zuffa's Motion Should Receive Minimal Weight

Plaintiffs will not be prejudiced by a potential 4-6 month delay resulting from the reopening of discovery. It is well-established that delay does not in and of itself constitute prejudice, absent some subsequent harm resulting from the delay. *See, e.g.*, *Nealey v. Transportacion Maritima Mexicana, S.A.*, 662 F.2d 1275, 1281 (9th Cir. 1980). Plaintiffs previously argued for bifurcated proceedings and a trial date set "as soon as practicable" because quickly obtaining monetary damages would allegedly have an "important impact" on their lives. Pls.' Pre-Conference Statement at 2, *Johnson* (Aug. 17, 2023), ECF No. 71. But any delay in the trial date will have no effect on the timeline for Plaintiffs' potential recovery because, even if they prevail in a trial on damages and liability, Plaintiffs will have no judgment to collect upon until their request for injunctive relief is resolved. Plaintiffs brought a single claim under Section

16

2 of the Sherman Act.  Am. Compl. ¶¶ 163-171.  They are pursuing damages and injunctive relief under that single claim.  *Id.* ¶ 172(c), (d).  However, Plaintiffs continue to seek injunctive relief on a delayed schedule and "in conjunction with the trial in *Johnson*."  Proposed Joint Disc. Plan & Scheduling Order at 11, *Johnson* (Aug. 17, 2023), ECF No. 82; *see also* Aug. 21, 2023 Status Conf. Tr. at 17:19-18:13.

Because the availability of injunctive relief in the *Le* case will be decided "in conjunction with the trial in *Johnson*," any verdict on damages in the *Le* trial will not be a final, appealable judgment.  There will not be an appealable final judgment until all of the parties' rights and liabilities are adjudicated.  *See* 28 U.S.C. § 1291; Fed. R. Civ. P. 54(b).  And Plaintiffs will be unable to obtain a partial entry of judgment under Rule 54(b) because they are only bringing a single claim for relief.  *See* Fed. R. Civ. P. 54(b).

Because Plaintiffs "advanced a single legal theory which was applied to only one set of facts," *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 743 (1976), their request for "several different remedies" constitutes a single "claim," *Arizona State Carpenters Pension Tr. Fund v. Miller*, 938 F.2d 1038, 1040 (9th Cir. 1991); *see also id.* (because "Both the basic theories of recovery and the core set of operative facts comprising the primary proof on the compensatory and punitive damage counts would be the same," multiple counts constituted a single claim); *In re Independent Serv. Orgs. Antitrust Litig.*, No. MDL-1021, 1997 WL 161940, at *6 (D. Kan. Mar. 12, 1997) (collecting cases for the proposition that courts "traditionally have found that multiple remedies based on the same set of facts comprise a single cause of action or claim").  Accordingly, certification under Rule 54(b) is unavailable, and there is no possibility of an entry of partial judgment.  *See Liberty Mut. Ins*, 424 U.S. at 742 ("Rule 54(b) . . . does not apply to a single claim action.").

Thus, any additional discovery will not determine when this case ends in this Court and the timeline for any potential recovery; that point will come after a final judgment and appeal as to both the forms of relief.  Plaintiffs and Zuffa agree that additional discovery is necessary for Plaintiffs to pursue their claim for injunctive relief in this case.  Certification Order at 18 n.17, ECF No. 839; Pls.' Pre-Conference Statement at 2:6-7, 5:12-14, ECF No. 842; Zuffa's Pre-

17

1  Conference Statement at 3, ECF No. 843.  But if more discovery is needed for that claim, it

2  makes no difference to also have such discovery for liability and money damages.  The prejudice

3  factor thus strongly weighs in favor of reopening discovery.

4  **IV.     CONCLUSION**

5       Material developments in the competitive landscape since the close of discovery are

6  highly relevant and necessary for Zuffa's defense against Plaintiffs' Section 2 claim, including

7  with regard to liability and damages.  For the foregoing reasons, Zuffa respectfully requests that

8  the Court grant its motion to reopen discovery to obtain evidence on relevant market conditions

9  since the close of discovery and amend the scheduling order accordingly.

10

11  Dated: October 24, 2023                              Respectfully Submitted,

12                                                          PAUL, WEISS, RIFKIND, WHARTON &
                                                             GARRISON LLP
13
                                                             By: *William A. Isaacson*
14                                                          WILLIAM A. ISAACSON (*Pro hac vice*)
                                                             (wisaacson@paulweiss.com)
15                                                          2001 K Street, NW
                                                             Washington, D.C.  20006
16                                                          Tel: (202) 223-7300; Fax: (202) 223-7420

17                                                          DONALD J. CAMPBELL (State Bar No. 1216)
                                                             (djc@campbellandwilliams.com)
18                                                          J. COLBY WILLIAMS (State Bar No. 5549)
                                                             (jcw@campbellandwilliams.com)
19                                                          CAMPBELL & WILLIAMS
                                                             710 South 7th Street
20                                                          Las Vegas, Nevada 89101
                                                             Tel: (702) 382-5222; Fax: (702) 382-0540
21
                                                             *Attorneys for Defendant Zuffa, LLC, d/b/a*
22                                                          *Ultimate Fighting Championship and UFC*

23

24

25

26

27

28

1

2

## <u>CERTIFICATE OF SERVICE</u>

3

       The undersigned hereby certifies that the foregoing Zuffa's Motion to Reopen Discovery

4

and Amend Scheduling Order was served on October 24, 2023 via the Court's CM/ECF

5

electronic filing system addressed to all parties on the e-service list.

6

7

                                         */s/ William A. Isaacson*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28