WILLIAM A. ISAACSON (*Pro hac vice*)
(wisaacson@paulweiss.com)
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, N.W.
Washington, DC 20006
Tel: (202) 223-7300; Fax: (202) 223-7420

DONALD J. CAMPBELL (State Bar No. 1216)
(djc@campbellandwilliams.com)
J. COLBY WILLIAMS (State Bar No. 5549)
(jcw@campbellandwilliams.com)
CAMPBELL & WILLIAMS
710 South 7th Street
Las Vegas, Nevada 89101
Tel: (702) 382-5222; Fax: (702) 382-0540

*Attorneys for Defendants Zuffa, LLC (d/b/a Ultimate Fighting Championship and UFC), and Endeavor Group Holdings, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Zuffa, LLC (d/b/a Ultimate Fighting Championship and UFC),<br><br>Defendant. | No.: 2:15-cv-01045-RFB-BNW<br><br>**DEFENDANTS' MOTION TO TREAT FACT EVIDENCE PRODUCED IN *JOHNSON* LITIGATION AS IF IT WAS ALSO PRODUCED IN *LE* LITIGATION (HEARING REQUESTED)** |
| Kajan Johnson and Clarence Dollaway, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Zuffa, LLC (d/b/a Ultimate Fighting Championship and UFC), and Endeavor Group Holdings, Inc.,<br><br>Defendants. | No.: 2:21-cv-01189-RFB-BNW |

**TABLE OF CONTENTS**

Page

Preliminary Statement ........................................................................................................... 1

Background ........................................................................................................................... 3

Argument ............................................................................................................................... 5

I.  Legal Standard ........................................................................................................... 5

II. Fact Discovery Produced In *Johnson* Should Be Treated As If It Was Also Produced In *Le*. ......................................................................................................... 6

III. Precluding The Potential Use Of *Johnson* Fact Discovery In The *Le* Case Will Prejudice Defendants. ................................................................................................ 9

IV. Expert Discovery From *Le* Should Not Be Treated As If Disclosed In The *Johnson* Litigation. .................................................................................................. 10

Conclusion .......................................................................................................................... 10

Defendants Zuffa, LLC (d/b/a/ Ultimate Fighting Championship ("UFC")) and Endeavor Group Holdings, Inc.[1] hereby move the Court to deem factual evidence produced in the *Johnson* case to be treated as though it were also produced in the *Le* litigation.[2]

## PRELIMINARY STATEMENT

The business of mixed martial arts ("MMA") has continued to evolve since July 2017, when discovery closed in the *Le* case. UFC's competitors have grown in size and number, winning investments, broadcasting and distribution contracts, and fighters.[3] UFC was a trailblazer for those competitors' growth. Its owners invested huge sums to legitimize the sport of MMA in the eyes of regulators, commercial partners, and, importantly, fans. As UFC has continued to provide proof-of-concept that MMA can be successfully promoted in the United States and abroad, others are following the path that UFC forged, and they are accelerating. Companies such as Bellator, Professional Fighters League ("PFL"), ONE Championship, and others have grown substantially since 2017, and seek to compete vigorously with UFC, including for MMA fighters. As PFL's founder recently stated, "PFL's mission is to become the global co-leader in MMA," and recent investments will "accelerate PFL's momentum in expanding globally, recruiting top fighters, and building its fanbase." PFL touts that it has "Francis Ngannou – the #1 pound-for-pound MMA fighter and former UFC heavyweight champion [] under **exclusive** MMA contract" and "Jake Paul – the most influential figure in combat sports . . . under **exclusive** MMA contract" as well.[4]

---

[1] Endeavor is a Defendant in the *Johnson* case, but not in the *Le* case.
[2] *Johnson, et al. v. Zuffa, LLC, et al.*, No. 2:21-cv-01189 (D. Nev.) ("*Johnson*"); *Le, et al. v. Zuffa LLC*, No 2:15-cv-01045 (D. Nev.) ("*Le*").
[3] *See generally* Zuffa's Renewed Mot. for Summ. J., Ex. 79 (Campbell Decl.), *Le*, ECF No. 879-79; Zuffa's Renewed Mot. for Summ. J., Ex. 113 (Epstein Decl.), *Le*, ECF No. 879-113.
[4] Professional Fighters League, Press Release, *Professional Fighters League and SRJ Sports Investments Sign Global MMA Investment Agreement* (Aug. 30, 2023),

Both parties have identified evidence about changes in market conditions after mid-2017, like the above, as relevant to the *Johnson* litigation, and are already pursuing that discovery. Plaintiffs have also repeatedly admitted and argued that the factual evidence about recent market conditions discovered in the *Johnson* litigation should be available for use in the *Le* litigation. Defendants agree this evidence should be available for use in *Le*. But Plaintiffs also demand an arbitrary limitation, proposing to allow evidence of current market conditions during one part of the *Le* litigation, but not another. Plaintiffs seek to have any evidence of changes in market conditions be usable *only* during a proceeding on injunctive relief, while hiding any facts of post-2017 conditions from jurors assessing liability and damages. That result would be highly prejudicial to Defendants, causing witnesses to pretend that clocks stopped moving years earlier in 2017. The Court should not permit such gamesmanship and potential infringement on Defendants' due process rights. *See* Mot. to Reopen Disc. at 11, *Le*, ECF No. 884.

The relief that Defendants request through this Motion is relatively limited. To grant this Motion, the Court need not make any determination about whether evidence discovered in *Johnson* will ultimately be admitted at trial in *Le*—those rulings can be made during the pre-trial exhibit-disclosure process, and would be premature before the evidence has been formally discovered. Granting this Motion also will not require the Court to delay any liability trial in *Le*.[5]

---

https://pflmma.com/news/professional-fighters-league-and-srj-sports-investments-sign-global-mma-investment-agreement#:~:text=%E2%80%9CPFL%27s%20mission%20is%20to%20become,Founder%20and%20Chairman%2C%20Donn%20Davis.  Unless otherwise indicated, all brackets, ellipses, footnote call numbers, internal quotations, and citations have been omitted from quoted material for readability. All emphasis is added unless otherwise indicated.

[5] Zuffa's Motion to Reopen Discovery in *Le* addresses its request to extend the schedule in *Le*, and other relief that would not be awarded through granting the present Motion, including targeted expert reports. Mot. to Reopen Disc. at 1, 16, *Le*, ECF No. 884.

## BACKGROUND

By Plaintiffs' admission, the *Le* case filed in 2014 and the *Johnson* case filed in 2021 involve "virtually identical factual allegations." Pls.' Notice of Related Action at 2, *Johnson*, ECF No. 9. They relate to the "same series of events, facts, and circumstances," *id.*, with Plaintiffs alleging "the conduct challenged in the *Le* Action has continued through the present"—well after discovery closed in the *Le* case in mid-2017, Pls.' Statement at 1-2, Stipulated Discovery Plan, *Johnson*, ECF No. 51. Plaintiffs admit that the "substantive claims and underlying facts in [*Johnson*] significantly overlap with those in *Le*," *id.* at 2, and "there is undoubtedly overlap between the two cases," Pls.' Pre-Conference Statement at 6, *Johnson*, ECF No. 71.

In light of this admitted overlap, Defendants previously requested to consolidate these two cases for the sake of efficiency. Defs.' Mot. to Dismiss at 16 n.12, *Johnson*, ECF No. 17; *see also* Defs.' Statement at 3, 8-11, Proposed Disc. Plan, *Johnson*, ECF No. 51. In response, Plaintiffs initially stated that they "do not oppose Defendants' request to consolidate *Le* and this action [*Johnson*], provided consolidation does not delay class certification, summary judgment, or a trial on liability and damages in *Le*." Pls.' Opp'n to Mot. to Dismiss at 23, *Johnson*, ECF No. 41. The Court ultimately denied Defendants' request to consolidate, and instead indicated its intention to bifurcate trials on the *Le* Plaintiffs' single monopsonization claim, and delay trial on injunctive relief until discovery has been completed in *Johnson*. Hrg. Tr. at 8-9, *Le*, ECF No. 846. The Court deferred ruling on Defendants' request to reopen discovery in *Le* prior to any trial on liability to permit the gathering of evidence about post-2017 market conditions, and set a schedule for briefing that motion. *Id.* at 29-31; *see also* Minute Order, *Le*, ECF No. 847. Defendants filed their Motion to Reopen Discovery in the *Le* action on October 24, 2023, pursuant to the Court-ordered schedule. *Le*, ECF No. 884.

DEFENDANTS' MOTION TO TREAT FACT EVIDENCE
PRODUCED IN JOHNSON AS ALSO PRODUCED IN LE                    CASE NOS.: 15-CV-01045-RFB; 21-CV-01189-RFB

The critical need to reopen discovery in *Le* arises from the nature of Plaintiffs' allegations and their burden of proof at any trial on liability. As set out in Defendants' Motion to Reopen Discovery, the *Le* Plaintiffs must prove at trial that UFC had *durable* monopsony power, as compared to a temporary advantage or first-mover status. Mot. to Reopen Disc. at 8-11, *Le*, ECF No. 884. Plaintiffs previously acknowledged this requirement when they summarized the law on monopoly power as requiring "the ability to decrease output below competitive levels profitably **on an ongoing basis**." Pls.' Opp'n to Mot. to Dismiss at 10, *Johnson*, ECF No. 41. Plaintiffs' allegations of a "continuing" use of the same challenged contractual terms from 2010 to 2017, and into the present, also makes directly relevant how those contracts could have caused any input foreclosure prior to 2018, when rivals have emerged and grown since then despite Zuffa's alleged continued use of those contracts. Mot. to Reopen Disc. at 11-14, *Le*, ECF No. 884; *see also* Compl. ¶ 101, *Johnson*, ECF No. 1.

The parties have not been sitting idly by while Defendants' request to reopen discovery in *Le* has been pending. Both sides have been pursuing discovery in the *Johnson* litigation. The parties have served initial disclosures, and requests for production of documents. And Defendants served subpoenas on UFC's competitors promptly after the Court permitted fact discovery to open in *Johnson*. Those discovery efforts will begin to bear fruit soon, as the parties are scheduled to begin initial document productions on November 1, 2023, and Defendants are in discussions with non-parties about their production of documents as well.[6] Thus, at the current pace, by the time of any trial in *Le*, new evidence about current market conditions will have been discovered.

---

[6]   Resolving this Motion by defining the permitted use of *Johnson* discovery, and memorializing that use in a protective order, will facilitate discussions with those non-parties.

DEFENDANTS' MOTION TO TREAT FACT EVIDENCE
PRODUCED IN JOHNSON AS ALSO PRODUCED IN LE          CASE NOS.:  15-CV-01045-RFB; 21-CV-01189-RFB

When negotiating a Joint Discovery Plan and Scheduling Order for the *Johnson* litigation, the parties discussed whether materials discovered in one case would be deemed available for use in the other case, including the use of *Johnson* factual evidence within the *Le* liability trial.  In a conference between attorneys, the parties discussed a potential process for identifying exhibits prior to trial, which Defendants were and remain willing to do.  The parties discussed ways to avoid prejudice to a trial in *Le* from ongoing discovery in *Johnson*, including a potential deadline for the completion of any such discovery in order to be considered at trial, such as 30 days before trial.  The parties also discussed topics for a potential protocol for the reciprocal cross-use of discovery in both cases.  Based on those discussions, the parties next included in their joint statement to the Court that they were "cognizant of the overlap between certain factual matters in the *Le* and *Johnson* cases," and "are meeting and conferring in an effort to come to agreement on whether discovery in each of these two actions should be treated as though taken in the other action, and if so, whether there should be any restrictions on such usage." Joint Discovery Plan at 9, *Johnson*, ECF No. 80.  After that submission, Plaintiffs' counsel disclosed that they were no longer willing to consider having any fact evidence discovered in *Johnson* be available for use in *Le* (at least not until injunction proceedings), resulting in this briefing.  Scheduling Stip. for Briefing on Disc. at 2, *Johnson*, ECF No. 88.

## ARGUMENT

### I.     LEGAL STANDARD

The Ninth Circuit "strongly favors access to discovery materials to meet the needs of parties engaged in collateral litigation." *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003).  When cases are related or overlapping, "courts have frequently permitted the sharing of discovery" across those cases. *Charter Oak Fire Ins. v. Electrolux Home Prods.*,

5

287 F.R.D. 130, 134 (E.D.N.Y. 2012) (discussing example of product liability cases); *see also BGC Partners v. Avison Young Inc.*, No. 2:15-cv-00531-RFB-GWF, 2017 WL 3468557, at *4-5 (D. Nev. Aug. 11, 2017); *C.R. Bard, Inc. v. Med. Components, Inc.*, 2021 WL 2881320, at *4 (D. Utah June 2, 2021).

In the Ninth Circuit, the shared use of discovery in a related case is "strongly" favored when the movant demonstrates (1) "the relevance of the protected discovery to the collateral proceedings"; and (2) "its general discoverability therein." *Foltz*, 331 F.3d at 1131-32.[7]

## II. FACT DISCOVERY PRODUCED IN *JOHNSON* SHOULD BE TREATED AS IF IT WAS ALSO PRODUCED IN *LE*.

As set forth more fully in Defendants' Motion to Reopen Discovery, evidence regarding developments in the MMA industry since mid-2017 (which the parties are already pursuing) is directly relevant to essential elements in the *Le* Plaintiffs' case and would be discoverable in that litigation. In order to review *Johnson* discovery and present it to the Court as potential evidence at the *Le* trial, there should be no limitation on the use of factual discovery from *Johnson* in *Le*. The *Johnson* evidence should be treated as though it was also produced in the *Le* case and the Court may later determine what is appropriate evidence at the *Le* trial. Denying cross-use of the discovery would mean denying Zuffa its due process rights to submit potential evidence produced in *Johnson* for consideration by the factfinder in *Le*.

---

[7] The *Foltz* standard arose to address modifying an existing protective order to allow confidential materials to be used in a collateral proceeding. The standard for using discovery that is not yet subject to a protective order—the situation in *Johnson*—should be even more permissive of sharing evidence, as no one has relied on the existence of a prior protective order when producing documents in this scenario. *See BGC Partners*, 2017 WL 3468557, at *4-5 (distinguishing *Foltz* and refusing to "preclude the parties from using relevant confidential information" in "related cases pending" in other courts). Motions to consolidate, which can raise issues relating to the cross-use of discovery, are also different and "subject to different standards." *C.R. Bard*, 2021 WL 2881320, at *1 n.3.

Discovery into changes in market conditions—including the emergence and growth of competitors to UFC, and these rivals' vigorous competition with UFC for MMA fighters—are directly relevant to Plaintiffs' monopsony allegations in the *Le* action. Plaintiffs have admitted this relevance, stating that "discovery on both the *Johnson* claims and *Le* injunctive claims will necessarily extend to the present." Pls.' Pre-Conference Statement at 7, *Johnson*, ECF No. 71. Plaintiffs even "request[ed] that the Court . . . coordinate the fact discovery in *Johnson* with the discovery necessary for the injunctive relief claims in *Le*." *Id.* at 8. Plaintiffs' acknowledgement of the relevance of, and request to use, evidence discovered in *Johnson* in a trial on injunctive relief in *Le* forecloses any argument from Plaintiffs that this discovery cannot be relevant to issues in *Le*. That concession of relevance should resolve this motion in Defendants' favor.

Beyond just the relevance to injunctive relief, evidence regarding the proliferation and growth of UFC competitors after 2017 is also relevant (and critical) to Plaintiffs' liability claims in *Le* and Zuffa's defense of those claims. Relevance, for purposes of cross-use of discovery, turns on "the degree of overlap in facts, parties, and issues between" the case in which the discovery is produced, and "the collateral proceedings." *Foltz*, 331 F.3d at 1132. And the scope of "[r]elevance during discovery is broader than relevance at trial." *Morin v. Williamson*, No. 22-cv-0583-JAD-NJK, 2022 WL 17968686, at *1 (D. Nev. Dec. 27, 2022). Here, Plaintiffs' statements show that the relevance of the post-2017 evidence in *Le* is not limited only to the availability of injunctive relief. Plaintiffs admit the two cases have "virtually identical factual allegations related to the same series of events, facts, and circumstances," Pls.' Notice of Related Action at 2, *Johnson*, ECF No. 9, and that "there is undoubtedly overlap between the two cases," Pls.' Pre-Conference Statement at 6, *Johnson*, ECF No. 71.

7

DEFENDANTS' MOTION TO TREAT FACT EVIDENCE
PRODUCED IN JOHNSON AS ALSO PRODUCED IN LE          CASE NOS.: 15-CV-01045-RFB; 21-CV-01189-RFB

The fact that the *Johnson* allegations extend the length of the *Le* class period does not defeat the overlap and relationship between these cases. Plaintiffs allege an undisrupted "continuing" course of conduct before and after June 2017. Compl. ¶ 101, *Johnson*, ECF No. 1. According to Plaintiffs, the close of one case on June 30, 2017, and the beginning of the other on July 1, 2017, has no significance to the challenged conduct; the date's only significance is the timing of Plaintiffs' legal filings. But discovery in *Johnson* showing that rivals to UFC and options to professional fighters continued to emerge and grow after June 30, 2017, shows a high "degree of overlap in facts, parties, and issues" between *Le* and *Johnson* because those issues are directly relevant to (1) whether UFC possessed any durable monopsony power prior to July 2017; and (2) whether UFC's challenged contractual clauses had any anticompetitive impact. *See* Mot. to Reopen Disc. at 8-14, *Le*, ECF No. 884; *see e.g.*, *Cornwell Quality Tools v. C. T. S. Co.*, 446 F.2d 825, 833 (9th Cir. 1971); *Rebel Oil Co., Inc. v. Atl. Richfield Co.*, 51 F.3d 1421, 1439-41 (9th Cir. 1995) ("We must consider [events occurring after] when the alleged barriers were in place" because "plaintiff must show that new rivals are barred from entering the market" and liability for monopolization may not exist "[i]f there is undisputed evidence indicating that competitors have expanded output in the recent past, or have the ability to expand output in the future"). Facts already available about the post-June 2017 market conditions undermine both of those essential elements of Plaintiffs' case. *See* Mot. to Reopen Disc. at 6-8, *Le*, ECF No. 884; *see also supra* n.3 (citing sources). These issues, and Plaintiffs' characterization of the overlap between the cases, are not limited to the question of injunctive relief—they go to the merits, and show that Plaintiffs' proposed limitation on the use of the *Johnson* evidence is wrong.

There is also no reason the evidence the parties have already identified as relevant to the *Johnson* litigation, and are already actively developing, would not be discoverable in *Le*. Parties

8

"may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *Morin*, 2022 WL 17968686, at *1 (quoting Fed. R. Civ. P. 26(b)(1)). As the court observed in *Royal Park Investment v. Deutsche Bank National Trust Co.*, "where, as here, two lawsuits have been filed by the same plaintiff, in the same court, on the same legal theories, against two defendants who already share the same counsel, it is difficult to imagine what non-tactical objection [Plaintiffs] could have to the prospect of those defendants sharing discovery." 192 F. Supp. 3d 400, 406 (S.D.N.Y. 2016).

### III.  PRECLUDING THE POTENTIAL USE OF *JOHNSON* FACT DISCOVERY IN THE *LE* CASE WILL PREJUDICE DEFENDANTS.

If information about current market conditions discovered in *Johnson* is not treated as if also produced in *Le*, it will create intractable complications with witness and evidence presentation in *Le*. Discovery has already begun in *Johnson*, and both parties have stated their intention to seek (and are already seeking) evidence into market conditions and the status of UFC competitors after 2017. This discovery will necessarily involve depositions of both party and non-party witnesses, including individuals that will also be witnesses at the *Le* liability trial about events that occurred prior to July 2017. After having been asked to recall and recount events that occurred after that date as part of discovery in *Johnson*, it is untenable to assume those witnesses could then close their minds to those recent events when called to provide testimony at trial in *Le*. The court in *C.R. Bard v. Medical Components* cited that same complication, and permitted the cross-use of discovery between a case filed in 2017 and a significantly "similar" case filed earlier in 2012 that had been "stayed for approximately seven years" because of patent proceedings. 2021 WL 2881320, at *1, 3 (D. Utah June 2, 2021). The court noted that "discovery in one case can impact the other" and "permitting cross use of discovery" would "prevent witnesses and experts who

9

DEFENDANTS' MOTION TO TREAT FACT EVIDENCE
PRODUCED IN JOHNSON AS ALSO PRODUCED IN LE                    CASE NOS.: 15-CV-01045-RFB; 21-CV-01189-RFB

appear in both cases from needing to pretend they are unaware" of materials discovered in the related case. *Id.* at *3. The same rationale applies here, as requiring witnesses to pretend they are unaware of recent events, which they will have been made to recount in *Johnson* discovery, will make trial unmanageable and potentially raise additional due process concerns.

### IV. EXPERT DISCOVERY FROM *LE* SHOULD NOT BE TREATED AS IF DISCLOSED IN THE *JOHNSON* LITIGATION.

Although the relief Defendants seek relates to the use of fact discovery from *Johnson* in the *Le* proceeding, Defendants are aware that Plaintiffs may also seek to permit the use of evidence previously discovered in the *Le* proceeding to be useable in the *Johnson* proceeding. To the extent Plaintiffs seek to shoehorn expert opinions based on reports disclosed in the *Le* proceeding directly into the *Johnson* proceeding, the Court should not allow it. Expert testimony must be "based on sufficient facts or data," Fed. R. Evid. 702(b), but the initial expert reports in *Le* were constrained by the timing of the factual record in that case. For example, the data that experts relied upon for economic analysis is no more recent than mid-2017. Relying only on that stale data could not support an expert opinion about current market conditions or the effect of challenged conduct years later. *See, e.g.*, *EEOC v. Freeman*, 961 F. Supp. 2d 783, 793-96 (D. Md. 2013) (excluding expert report, in part, because it "does not cover the time period identified in the [plaintiff's] claims"). Thus, if Plaintiffs seek to have the same experts they relied upon in *Le* offer opinions about the *Johnson* time period, those experts must submit new reports that reconcile the continued evolution of the industry (including growth of competitors) after mid-2017.

### CONCLUSION

For the forgoing reasons, the Court should permit fact evidence produced in *Johnson* to be treated as if it was also produced in the *Le* action.

10

DEFENDANTS' MOTION TO TREAT FACT EVIDENCE
PRODUCED IN JOHNSON AS ALSO PRODUCED IN LE    CASE NOS.: 15-CV-01045-RFB; 21-CV-01189-RFB

| | | |
|---|---|---|
| 1 | Dated: October 26, 2023 | Respectfully Submitted, |
| 2 | | PAUL, WEISS, RIFKIND, |
| 3 | | WHARTON & GARRISON LLP |
| 4 | | |
| 5 | | By  /s/  William A. Isaacson |
| | | WILLIAM A. ISAACSON (*Pro hac vice*) |
| 6 | | (wisaacson@paulweiss.com) |
| | | 2001 K Street, N.W. |
| 7 | | Washington, DC 20006 |
| | | Tel: (202) 223-7300; Fax: (202) 223-7420 |

DONALD J. CAMPBELL (State Bar No. 1216)
(djc@campbellandwilliams.com)
J. COLBY WILLIAMS (State Bar No. 5549)
(jcw@campbellandwilliams.com)
CAMPBELL & WILLIAMS
710 South 7th Street
Las Vegas, NV 89101
Tel: (702) 382-5222; Fax: (702) 382-0540

*Attorneys for Defendants Zuffa, LLC (d/b/a Ultimate Fighting Championship and UFC), and Endeavor Group Holdings, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing motion was served on October 26, 2023 via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

/s/ *William A. Isaacson*
William A. Isaacson

DEFENDANTS' MOTION TO TREAT FACT EVIDENCE
PRODUCED IN JOHNSON AS ALSO PRODUCED IN LE                    CASE NOS.: 15-CV-01045-RFB; 21-CV-01189-RFB