Eric L. Cramer (admitted *pro hac vice*)
Michael Dell'Angelo (admitted *pro hac vice*)
Patrick F. Madden (admitted *pro hac vice*)
Najah Jacobs (admitted *pro hac vice*)
BERGER MONTAGUE PC
1818 Market St., Suite 3600
Philadelphia, PA 19103
Telephone: +1 (215) 875-3000
Email: ecramer@bm.net
Email: mdellangelo@bm.net
Email: pmadden@bm.net
Email: njacobs@bm.net

*Co-Lead Counsel for the Le Class and Attorneys*
*for Individual and Representative Plaintiffs*

[Additional Counsel Listed on Signature Page]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>Defendants. | No.: 2:15-cv-01045-RFB-BNW<br><br>**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT ZUFFA'S MOTION TO REOPEN DISCOVERY (ECF NO. 884) AND MOTION TO TREAT FACT EVIDENCE PRODUCED IN *JOHNSON* LITIGATION AS IF IT WAS ALSO PRODUCED IN *LE* LITIGATION (ECF NO. 885)** |
| Kajan Johnson and Clarence Dollaway, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Zuffa, LLC (d/b/a Ultimate Fighting Championship and UFC) and Endeavor Group Holdings, Inc.,<br><br>Defendants | No.: 2:21-cv-1189-RFB BNW |

Case Nos.: 2:15-cv-1045; 2:21-cv-01189

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT ZUFFA'S MOTION TO REOPEN DISCOVERY (ECF NO. 884) AND MOTION TO TREAT FACT EVIDENCE PRODUCED IN *JOHNSON* LITIGATION AS IF IT WAS ALSO PRODUCED IN *LE* LITIGATION (ECF NO. 885)**

1

2

**TABLE OF CONTENTS**

3

**INTRODUCTION**................................................................................................1

4

**PROCEDURAL HISTORY** ...............................................................................6

5

**LEGAL STANDARD**.........................................................................................9

6

**ARGUMENT** ....................................................................................................10

7

     **A.**    **Zuffa's Reopen Motion Is a Threshold Issue**...............................**10**

8

     **B.**    **Zuffa's Request to Reopen Discovery in *Le* Effectively Seeks Reconsideration of the Court's Setting of the April 8, 2024 *Le* Trial**

9

          **Date**.......................................................................................................**10**

10

     **C.**    **The *Pomona* Factors Do Not Weigh in Zuffa's Favor** ...........................**12**

11

          **1.**    **Zuffa has not met its burden of demonstrating diligence**.........**12**

12

          **2.**    **The Post-2017 discovery Zuffa seeks will not uncover evidence**

13

               **relevant to the upcoming trial in *Le*.** ...........................................**15**

14

          **3.**    **Granting Zuffa's Motion Would Involve Substantial Delay and Thereby Prejudice Plaintiffs and the Class.** ...............................**25**

15

     **D.**    **Plaintiffs Will Seek to Treat Fact Discovery Taken in *Le* as if Taken in**

16

          ***Johnson*** .................................................................................................**29**

17

     **E.**    **Zuffa Failed to Comply with the Local Rules in Seeking to Reopen Discovery**..............................................................................................**30**

18

**CONCLUSION** ..................................................................................................**30**

19

20

21

22

23

24

25

26

27

28

i

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT ZUFFA'S MOTION TO REOPEN DISCOVERY (ECF NO. 884) AND MOTION TO TREAT FACT EVIDENCE PRODUCED IN *JOHNSON* LITIGATION AS IF IT WAS ALSO PRODUCED IN *LE* LITIGATION (ECF NO. 885)**

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*Ariz. State Carpenters Pension Tr. Fund v. Miller*,
   938 F.2d 1038 (9th Cir. 1991) ................................................................. 27

5

*Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr.*,
   490 F.3d 718 (9th Cir. 2007) ............................................................... 26-27

6

7

*Bridgestone Sports Co. Ltd. v. Acushnet Co.*,
   No. 05-cv-132, 2007 WL 625851 (D. Del. Feb. 26, 2007) ...................... 12

8

*City of Pomona v. SQM N. Am. Corp.*,
   866 F.3d 1060 (9th Cir. 2017) ......................................................... *passim*

9

*Clinton v. Jones*,
   520 U.S. 681 (1997) ................................................................................ 27

10

11

*Cornwell Quality Tools Co. v. CTS Co.*,
   446 F.2d 825 (9th Cir. 1971) .................................................................... 19

12

*Cornwell v. Electra Cent. Credit Union*,
   439 F.3d 1018 (9th Cir. 2006) .................................................................. 14

13

*Curtiss-Wright Corp. v. Gen. Elec. Co.*,
   446 U.S. 1 (1980) .................................................................................... 28

14

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ................................................................... 28

15

16

*ESG Capital Partners LP v. Stratos*,
   22 F. Supp. 3d 1042 (C.D. Cal. 2014) ...................................................... 27

17

*Fidelity Nat'l Fin. Inc v. Nat'l Union Fire Ins. Co.*,
   308 F.R.D. 649 (S.D. Cal. 2015) .............................................................. 15

18

19

*First Nat'l Bank of Ariz. v. Cities Serv. Co.*,
   391 U.S. 253 (1968) .................................................................................. 9

20

*Foltz v. State Farm Mutual Automobile Insurance Co.*,
   331 F.3d 1122 (9th Cir. 2003) .............................................................. 3, 10

21

*Fox v. Am. Airlines, Inc.*,
   389 F. 3d 1291 (D.C. Cir. 2004) .............................................................. 12

22

23

*FTC v. Qualcomm, Inc.*,
   969 F.3d 974 (9th Cir. 2020) ............................................................... 8, 28

24

*FTC v. Surescripts, LLC*,
   No. 19-cv-1080, 2023 WL 2707866 (D.D.C. Mar. 30, 2023) ............. 17, 18

25

26

*Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*,
   Nos. 98-cv-861, 99-cv-3687, 2005 WL 2132438 (S.D.N.Y. Sept. 6, 2005) ...................... 19, 20

27

ii

28

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT ZUFFA'S MOTION TO REOPEN DISCOVERY (ECF NO. 884) AND MOTION TO TREAT FACT EVIDENCE PRODUCED IN *JOHNSON* LITIGATION AS IF IT WAS ALSO PRODUCED IN *LE* LITIGATION (ECF NO. 885)**

*In re 3M Combat Arms Earplug Prods. Liab. Litig.*,
  No. 7:20-cv-122, 2021 WL 6327373 (N.D. Fla. Oct. 20, 2021) .............................................. 15

*In re Mid-Atl. Toyota Antitrust Litig.*,
  92 F.R.D. 358 (D. Md. 1981) ................................................................................................... 27

*Johnson v. Mammoth Recreations, Inc.*,
  975 F.2d 604 (9th Cir. 1992) .......................................................................................... 3, 9, 15

*Lektro-Vend Corp. v. Vendo Co.*,
  660 F.2d 255 (7th Cir. 1981) ................................................................................................... 20

*Liberty Mut. Ins. Co. v. Wetzel*,
  424 U.S. 737 (1976) ........................................................................................................... 27, 29

*Lucey v. SWN Production Co., LLC*,
  No. 5:17-cv-66, 2018 WL 10811476 (N.D.W. Va. Nov. 1, 2018) ............................................. 15

*Navajo Nation v. Confederated Tribes and Bands of the Yakama Indian Nation*,
  331 F.3d 1041 (9th Cir. 2003) ............................................................................................. 10-11

*Nifty Foods Corp. v. Great Atl. & Pac. Tea Co., Inc.*,
  614 F.2d 832 (1980) ................................................................................................................ 20

*Pac. Coast. Agric. Export Ass'n v. Sunkist Growers, Inc.*,
  526 F.2d 1196 (9th Cir. 1975) ....................................................................................... 4, 17, 18

*Pagtalunan v. Galaza*,
  291 F.3d 639 (9th Cir. 2002) ............................................................................................. 26-27

*Pakootas v. Teck Cominco Metals, Ltd.*,
  905 F.3d 565 (9th Cir. 2018) ............................................................................................. 28-29

*Purdy Mobile Homes, Inc. v. Champion Home Builders Co.*,
  594 F.2d 1313 (9th Cir. 1979) ................................................................................................. 29

*Raya v. Calbiotech*,
  No. 3:18-CV-2643-WQH-AHG, 2019 WL 11504688 (S.D. Cal. Nov. 26, 2019) .................... 12

*Rebel Oil Co. v. Atl. Richfield Co.*,
  51 F.3d 1421 (9th Cir. 1995) ................................................................................................... 18

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ................................................................................................................ 28

*Sw. Marine, Inc. v. Triple A Mach. Shop, Inc.*,
  720 F. Supp. 805 (N.D. Cal. 1989) .......................................................................................... 27

*Talkin v. Deluxe Corp.*,
  No. 05-cv-2305, 2006 WL 2588143 (D. Kan. Sept. 8, 2006) .................................................. 15

*Thorne v. Singer*,
  No. 2:06-cv-942, 2007 WL 9734135 (D. Nev. Oct. 3, 2007) ............................................ 10, 30

iii

Case Nos.: 2:15-cv-1045; 2:21-cv-01189

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT ZUFFA'S MOTION TO
REOPEN DISCOVERY (ECF NO. 884) AND MOTION TO TREAT FACT EVIDENCE
PRODUCED IN *JOHNSON* LITIGATION AS IF IT WAS ALSO PRODUCED IN *LE*
LITIGATION (ECF NO. 885)**

*Turner v. Apple, Inc.*,
   No. 5:20-cv-7495, 2022 WL 445755 (N.D. Cal. Feb. 14, 2022).................................... 28

*U.S. ex rel. Schumer v. Hughes Aircraft Co.*,
   63 F.3d 1512 (9th Cir. 1995)........................................................................ 3, 9, 12

*United States v. Syufy Enterprises*,
   903 F.2d 659 (9th Cir. 1990)............................................................................ 19

*Vargas v. Cty. Of Los Angeles*,
   No. 19-cv-6655269, 2019 WL 6655269 (C.D. Cal. July 10, 2019) ........................... 27

**Rules**

Fed. R. Civ. P. 16(b) .................................................................................... 9, 30

Fed. R. Civ. P. 54(b) ............................................................................. 25, 28, 29

iv

Case Nos.: 2:15-cv-1045; 2:21-cv-01189

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT ZUFFA'S MOTION TO REOPEN DISCOVERY (ECF NO. 884) AND MOTION TO TREAT FACT EVIDENCE PRODUCED IN *JOHNSON* LITIGATION AS IF IT WAS ALSO PRODUCED IN *LE* LITIGATION (ECF NO. 885)**

**INTRODUCTION**

Zuffa has spread its effort to reopen discovery in *Le v. Zuffa, LLC*, No. 15-cv-1045 (D. Nev.), across two motions: (1) a Motion to Reopen Discovery and Amend Scheduling Order (ECF No. 884) (the "Reopen Motion" or "R. Mot."), and (2) a Motion to Treat Fact Evidence Produced in *Johnson* (*Johnson v. Zuffa, LLC*, No. 21-cv-1189 (D. Nev.)) as if It Was Also Produced in *Le* (ECF No. 885) (the "*Johnson* Discovery Motion" or "J. Mot.") (together, Zuffa's "Motions").[1] Reopening fact *and* expert discovery in *Le* for what Zuffa unrealistically claims "can likely be completed in 4-6 months," R. Mot. at 3, effectively asks the Court to reconsider both its decision to try *Le* and *Johnson* separately, Hrg. Tr., ECF No. 846, at 8, and its setting of *Le* for trial on liability and damages to begin on April 8, 2024. Neither Motion has merit, and both should be denied.

As the Court knows, the Class Period in *Le* runs from December 2010 through June 2017. ECF No. 839 at 27-30, 44-71. Fact discovery in *Le* has been closed since July 31, 2017, *i.e.*, for more than six years. ECF No. 432. The Court indicated that it would certify the Bout Class in *Le* on December 10, 2020—nearly three years ago. *See* ECF No. 775. Yet Zuffa decided to wait *until August 2023* to indicate that it would seek more discovery in *Le*. ECF 843 at 2-3; Hrg. Tr. ECF No. 846, at 7-8, 25.

Worse, Zuffa now seeks to take and use in the imminently forthcoming trial a massive amount of new discovery regarding "six years of competitive developments," R. Mot. at 2, to try and demonstrate what it claims is the supposed growth of non-Zuffa MMA promoters *after* the Class Period, *i.e.*, post-June 2017. *See, e.g.*, *id.* at 2 (demanding discovery of "six years of relevant evidence"); *id.* at 6, 10-14 (describing enormous new discovery demands). Zuffa further seeks an additional round of expert reports, *id.* at 1 (demanding supposedly "targeted supplemental expert reports"), which (if history in this case is any guide),[2] would inevitably

---

[1] Unless otherwise stated, ECF references point to the docket in the *Le* Litigation.

[2] The Court may recall that Zuffa has served *five expert reports* by Dr. Topel in this case before

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT ZUFFA'S MOTION TO REOPEN DISCOVERY (ECF NO. 884) AND MOTION TO TREAT FACT EVIDENCE PRODUCED IN *JOHNSON* LITIGATION AS IF IT WAS ALSO PRODUCED IN *LE* LITIGATION (ECF NO. 885)**

spawn depositions, rebuttals, and sur-rebuttals. In the *Johnson* Discovery Motion, Zuffa effectively asks that discovery in *Le* be reopened for all purposes within the scope of the *Johnson* action. This would inevitably involve Zuffa's efforts to strategically advance aspects of discovery in *Johnson* so it can try to insert at the eleventh hour unvetted, out of context, and almost certainly irrelevant evidence at the trial in *Le*. Zuffa's motions go well beyond this Court's instructions at the August 21, 2023 Status Conference that the Court would consider only the possibility of limited, targeted additional discovery. *See* Hrg. Tr., ECF No. 846, at 10.

Zuffa's motives are obvious, and its desire for additional discovery pretextual. It cannot legitimately believe that additional evidence about the same beleaguered MMA promotions it has been pointing to for over a decade could possibly show that Zuffa finally lost its long-held dominance at some point after the *Le* Class Period. One way we know Zuffa's requests are pretextual is that Zuffa is not being straight with the Court. Zuffa says in its Motions (and in its recent summary judgment motion) that now, at long last, it faces competition. But the UFC is telling its investors a different story. For instance, the current CFO of TKO Group Holdings (which now controls the UFC), boasted just last week about the relationship between the UFC and its supposed competitors in the MMA business (including, in particular, Bellator and PFL):

> Not only do we [the UFC] have over 600 fighters, we have the premiere fighters and they ultimately are trying to get to the UFC, which is akin to the XFL trying to ultimately get their players into the NFL. That's what we are. ***Those are pipeline and feeder properties***, in fact, we're support[ive] of them being on ESPN….[3]

Zuffa is engaging in strategic behavior in search of delay, which is the opposite of diligence. Zuffa's Motions should be denied for multiple reasons.

First, a condition predicate for allowing discovery taken in *Johnson* to be treated as taken

---

2019, and just submitted a sixth in conjunction with the Reopen Motion. *See* Declaration of Hal J. Singer, Ph.D., dated November 13, 2023 ("Singer Decl."), ¶1 & nn.102.

[3] *See* Singer Decl. ¶27 (quoting *Q3 2023 TKO Earnings Call,* TKO (Nov. 7, 2023), https://investor.tkogrp.com/events-and-presentations/events/event-details/2023/TKO-to-Announce-Third-Quarter-2023-Results/default.aspx) (emphasis added).

2

Case Nos.: 2:15-cv-1045; 2:21-cv-01189

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT ZUFFA'S MOTION TO REOPEN DISCOVERY (ECF NO. 884) AND MOTION TO TREAT FACT EVIDENCE PRODUCED IN *JOHNSON* LITIGATION AS IF IT WAS ALSO PRODUCED IN *LE* LITIGATION (ECF NO. 885)**

in *Le* is for discovery in *Le* to be open. Sharing of discovery between even related cases cannot be used "merely to subvert limitations on discovery" in an action. *Foltz v. State Farm Mutual Automobile Insurance Co.*, 331 F.3d 1122, 1132 (9th Cir. 2003). Zuffa's *Johnson* Discovery Motion seeks to do just that: circumvent the long-past discovery deadline in *Le*. Zuffa's *Johnson* Discovery Motion focuses on inapposite cases concerning the appropriateness of amending protective orders in one action to facilitate discovery sharing in another. Here, however, there is no protective order yet in *Johnson*, no discovery produced in *Johnson*, and most critically, discovery in *Le* is closed and has been closed for more than six years.

Second, Zuffa does not meet the high burden of showing that it satisfies the standard to reopen discovery in *Le*, which is fatal to both Motions. To reopen discovery in *Le*, Zuffa would need to show, *inter alia*, that it was diligent in pursuing the discovery it now seeks. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992); *see also* Hrg. Tr., ECF No. 846, at 22-23. It has failed to do so. Zuffa claims that it has requested to take this new discovery "at the first possible time," R. Mot. at 14, but that is false. Zuffa has known since December 10, 2020, that this Court would certify the Bout Class. Yet Zuffa waited nearly three more years to request discovery. That is not diligence.

Third, to reopen discovery, Zuffa would have to satisfy its burden of demonstrating that the discovery it seeks to take in *Le* would be likely to yield relevant evidence. *See, e.g.*, *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017) (quoting *U.S. ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1526 (9th Cir. 1995)). But Zuffa fails to meet that burden too. As this Court found in its Class Order, Plaintiffs have amassed common evidence capable of establishing each element of Plaintiffs' Section 2 claim, including the existence and maintenance of durable monopsony power over at least the entire Class Period. *See* ECF No. 839 at 67-71 (finding reliable and persuasive Plaintiffs' experts' findings that Bout Class members suffered damages throughout the Class Period); *id.* at 43 (analyzing evidence of the "anticompetitive Scheme," involving over 2000 UFC fighter contracts entered into from May

3

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT ZUFFA'S MOTION TO REOPEN DISCOVERY (ECF NO. 884) AND MOTION TO TREAT FACT EVIDENCE PRODUCED IN *JOHNSON* LITIGATION AS IF IT WAS ALSO PRODUCED IN *LE* LITIGATION (ECF NO. 885)**

2001 through November 2015 (and extending through the end of the Class Period)). Zuffa cites no case that requires more to demonstrate durable monopsony power, nor does it cite a case holding that loss of monopsony power during some later period could negate, refute, or even mitigate the kind of maintenance of durable monopsony power Plaintiffs have shown here. To the contrary, courts uniformly reject arguments that market power was fleeting and not durable when shown to exist for at least four years. *See, e.g.*, *Pac. Coast. Agric. Export Ass'n v. Sunkist Growers, Inc.,* 526 F.2d 1196, 1204 (9th Cir. 1975) (45-70% share over 4-year period sufficient to show market power).

Moreover, even if what Zuffa implies about the supposed growth of rivals after June 2017 were true—and as we show below it is not—evidence of competition during the post-June 2017 period would not be material to whether Zuffa illicitly maintained monopsony power during the seven years of the Class Period in *Le* (2010-2017). While Zuffa surely has the data available to it, Zuffa studiously avoids even claiming that its market share has fallen after mid-2017. In fact, Zuffa does not even *propose* to introduce evidence that its market share or monopsony power has fallen post-2017. It says only that it wants to introduce potential evidence that a handful of the same MMA promoters existing during the Class Period have raised capital, or put on successful events, or signed some fighters. *See, e.g.*, R. Mot. at 10-14. This supposed evidence, even on its own terms, is redundant of the types of unpersuasive evidence Zuffa has already introduced in *Le*, including about some of the same minor or feeder league promoters that existed during the *Le* Class Period. *See* ECF No. 839 at 10 ("There are several additional promoters who act as so called 'minor leagues' to the UFC, which essentially develop fighters to eventually farm out to the UFC.").[4]

---

[4] *See also id.* at 25 n.24 ("While there are many non-Zuffa MMA promoters, these promoters, except for Bellator and Strikeforce, are small regional outfits that do not compete with the UFC for talent."); *id.* at 29 ("Since 2009, the combined revenue of [Strikeforce, Bellator, and World Series of Fighting (predecessor of Professional Fight League)] never represented more than 9% of the total revenues [in the market].."); *id.* at 26 (the market definition "excludes promoters such as ONE Championship").

Case Nos.: 2:15-cv-1045; 2:21-cv-01189

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT ZUFFA'S MOTION TO REOPEN DISCOVERY (ECF NO. 884) AND MOTION TO TREAT FACT EVIDENCE PRODUCED IN *JOHNSON* LITIGATION AS IF IT WAS ALSO PRODUCED IN *LE* LITIGATION (ECF NO. 885)**

And just last week, Zuffa's executives once again publicly contradicted the line that Zuffa's lawyers have been trying to sell to this Court. As discussed above, the CFO of TKO Group Holdings publicly refuted Zuffa's arguments to this Court, conceding that even the most prominent of non-UFC MMA promotions are mere "pipeline or feeder properties," no more significant than the XFL is to the NFL. Further, Zuffa—which surely has internal market share information—avoids mentioning its own tremendous growth post-2017, dwarfing the purported growth of the "pipeline" and "feeder" properties. Indeed, Dr. Singer was able use publicly available post-2017 data to analyze the trend in the Headliner Submarket post-2017. *See* Singer Decl. ¶¶13-15 & Fig. 1. Dr. Singer shows that Zuffa's share in the market for the top fighters in each weight class *grew between 2017 and the present*. *Id*.

Zuffa's *Johnson* Discovery Motion implicitly concedes that Zuffa has not made a showing of the relevance of the discovery it seeks. In that motion, Zuffa admits that information from the *Le* Class Period cannot simply be applied to the *Johnson* class period without demonstrating that the conduct and competitive conditions are materially similar across the two periods. *See* J. Mot. at 10 (conceding that "market conditions or the effect of the challenged conduct" during the *Le* Class Period cannot be relied upon for an economic analysis about market conditions or the effect of the challenged conduct during the *Johnson* Class Period). But Zuffa has not even *sought to meet* its own stated burden of showing that the discovery it purports to seek could possibly be relevant and material to the *Le* liability and damages trial set to begin on April 8, 2024. Nor would such a showing be possible merely with the discovery Zuffa has highlighted regarding the development of purported rivals post-2017.

Zuffa's Motions thus also fail because reopening discovery in *Le* could not possibly be "limited" or "targeted" in the way Zuffa imagines. Zuffa's Reopen Motion (at 12) says that the post-2017 period provides a "natural experiment as to . . . [Plaintiffs' point] that the challenged contracts unlawfully hindered fighter mobility." But for circumstances during the post-2017 period even to be a "natural experiment" of the effects of the contracts during the Class Period,

there would need to be a comprehensive showing that the contracts (and other aspects of the Scheme) were in material respects the same as between the two periods. As Dr. Singer explains, such an analysis would at minimum, require production and detailed evaluation of six-years of post-2017 fighter contracts, as well as analyses of Zuffa's other conduct during the *Johnson* class period. *See* Singer Decl. ¶¶19-23. That will be the focus on the *Johnson* discovery, which the parties agreed, and the Court accepted, would not end until February 24, 2025. *See* ECF 82.

Granting either of Zuffa's Motions would thus either (a) significantly delay trial on liability and damages in *Le* potentially for years, or (b) result in manifest unfairness to Plaintiffs by allowing an incomplete record and irrelevant or misleading information to be imported from *Johnson* into *Le* at the last minute and out of context. As just noted, Zuffa concedes that facts and data reflecting "market conditions or the effect of the challenged conduct" during the *Le* time-period (2005-mid-2017) cannot be relied upon for an economic analysis about market conditions or the effect of the challenged conduct during the *Johnson* time-period (mid-2017 to the present). J. Mot. at 10. It logically follows that non-contextualized snippets of information from *Johnson* about the growth or failure of certain alleged competitors in the *Johnson* period cannot simply be imported into *Le* absent a full analysis of (a) the Challenged Conduct during the *Johnson* period, (b) a comparison of the Challenged Conduct during the *Johnson* period with the conduct during the *Le* period, and (c) an evaluation of the growth and downfall of certain alleged competitors in the context of the growth of Zuffa during the *Johnson* period. In short, Zuffa is effectively asking the Court to postpone the April trial, likely for several years. Zuffa's Motions should be denied.

**PROCEDURAL HISTORY**

At the outset of *Le*, the parties stipulated to (ECF No. 206 at 33), and the Court entered (ECF Nos. 207 & 311), a schedule that required the parties to take discovery on all issues—both class issues and merits issues—during a single fact discovery period. After a several extensions, fact discovery in *Le* closed on July 31, 2017. ECF No. 432. Following the fact discovery period, the parties stipulated to, and the Court entered, a schedule for expert discovery, again requiring

6

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT ZUFFA'S MOTION TO REOPEN DISCOVERY (ECF NO. 884) AND MOTION TO TREAT FACT EVIDENCE PRODUCED IN *JOHNSON* LITIGATION AS IF IT WAS ALSO PRODUCED IN *LE* LITIGATION (ECF NO. 885)**

the parties to take discovery on all issues—both class issues and merits issues—during a single expert discovery period, ultimately ending in January 2018. *See* ECF Nos. 206, 207, 311.[5] In total, Court authorized fact and expert discovery transpired over the period from April 26, 2015 until Plaintiffs' expert, Dr. Singer was deposed for the second time on January 23, 2018. Discovery in *Le* thus spanned nearly a three-year period.

But even then, Zuffa was not finished attempting to supplement the discovery record. After serving three more reports following the close of expert discovery,[6] with its 2018 Motion for Summary Judgment, Zuffa filed yet another report of Dr. Topel. *See* ECF No. 575-17 (Professor Robert H. Topel's 26(e) Supplemental Report, dated July 30, 2018). In fact, this "26(e) Supplemental Report" included in it several of the purported facts that Zuffa now claims to justify its supposed "need" to reopen discovery more than five years later. Then, in connection with the evidentiary hearing concerning class certification ("Evidentiary Hearing") in August & September 2019, Zuffa attempted to supplement the record multiple additional times, first submitting purported "Summary Exhibits" that constituted new expert opinions (albeit not created by any disclosed expert). *See* ECF No. 658 (objecting to these exhibits). Further, in the middle of the Evidentiary Hearing, Zuffa served Plaintiffs with the output of two brand new regressions (while also seeking leave to file even more new regressions). *See* Hrg. Tr., ECF No.

---

[5] These initial discovery deadlines agreed in ECF No. 206 were subsequently extended by 30 days, ECF Nos. 304 & 311, and then again by 60 days, ECF No. 408, and then one more time by an additional 30 days. ECF No. 432. Following fact discovery, there were also modifications to the expert discovery schedule. ECF No. 508.

[6] Zuffa served multiple supplemental expert reports, each requiring responses from Dr. Singer. First, Zuffa served a "Sur-Rebuttal Expert Report of Prof. Robert H. Topel," dated February 12, 2018 (filed at ECF No. 551-15) on Plaintiffs, necessitating a response from Dr. Singer in the form of his Supplemental Expert Report, dated April 3, 2018 (ECF No. 534-3). Zuffa then served the Declaration of Robert H. Topel, Ph.D. in Support of Zuffa, LLC's Opposition to Plaintiffs' Motion for Class Certification, dated April 6, 2018 (ECF No. 540-5). Following these exchanges, the parties stipulated to allow Zuffa to submit one further report of Dr. Topel, dated May 7, 2018 (which Zuffa filed at ECF No. 551-16) and for Plaintiffs to respond in one further report of Dr. Singer (which Plaintiffs filed at ECF No. 554-3). *See* ECF No. 545.

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT ZUFFA'S MOTION TO REOPEN DISCOVERY (ECF NO. 884) AND MOTION TO TREAT FACT EVIDENCE PRODUCED IN *JOHNSON* LITIGATION AS IF IT WAS ALSO PRODUCED IN *LE* LITIGATION (ECF NO. 885)**

730, at 3-4. Thus, Zuffa's Reopen Motion comes after nearly three years of authorized discovery, which was followed by more than 18 months of additional expert discovery efforts—ending in August 2019. At that point, Zuffa sat on its hands.

Following the Evidentiary Hearing, on December 10, 2020, the Court informed the parties that it would be granting Plaintiffs' motion to certify the "Bout Class" in *Le* with a written order forthcoming. *See* ECF No. 775. Zuffa did not then request to reopen discovery. In fact, at no point following the close of discovery (fact or expert) in *Le* did Zuffa request to reopen discovery to obtain additional facts relating to liability or damages until August 2023, when Zuffa announced its intent to do so in its pre-conference statement. *See* ECF No. 843.[7]

During the August 2023 status conference, Zuffa told the Court that it would seek to reopen discovery in *Le*. The Court suggested that it may be willing to consider reopening discovery for a limited purpose that would take no more than two or three months. Hrg. Tr., ECF No. 846, at 10. Zuffa responded that it was seeking three or four months of discovery because it would take that long to take third party discovery. *Id.* at 10-11. In its Reopen Motion, however, Zuffa now asserts that four-to-six months onto of discovery, including new expert reports, is necessary. R. Mot. at 1, 3, 9. Even on its face, Zuffa's request is incompatible with the April 8, 2024 trial date. But Zuffa's four-to-six month estimate is unrealistic given that (a) Zuffa seeks to take discovery concerning a period spanning six years (R. Mot. at 2, 6), (b) many third parties are involved, (c) the amount of discovery Zuffa seeks is massive, and (d) additional discovery

---

[7] Zuffa claims that in January 2022, Zuffa sought to have the *Le* and *Johnson* cases consolidated "to allow for discovery, applicable in both actions, to update the record for the events following mid-2017 and to converge both cases onto the same track for summary judgment and trial." Reopen Mot. at 15. But, at that time, discovery in *Johnson* and *Le* was closed, and Zuffa waited to move to reopen discovery in *Le* until August 2023. *See* Hrg. Tr., ECF No. 846 at 25. Plaintiffs do not dispute that some supplemental discovery will be necessary for the *Le* Plaintiffs' injunctive relief claim. *See, e.g., FTC v. Qualcomm, Inc.*, 969 F.3d 974, 1005 (9th Cir. 2020) ("as a general rule, [p]ast wrongs are not enough for the grant of an injunction; instead, injunction will only issue if the wrongs are ongoing or likely to recur." (cleaned up)) (internal quotes omitted). But the Court has ruled that the *Le* injunctive relief claim will be adjudicated at a later time than the April 2024 liability and damages trial. Hrg. Tr., ECF 846, at 8.

Case Nos.: 2:15-cv-1045; 2:21-cv-01189

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT ZUFFA'S MOTION TO REOPEN DISCOVERY (ECF NO. 884) AND MOTION TO TREAT FACT EVIDENCE PRODUCED IN *JOHNSON* LITIGATION AS IF IT WAS ALSO PRODUCED IN *LE* LITIGATION (ECF NO. 885)**

would be needed to contextualize whatever Zuffa seeks to introduce (*e.g.*, showing that (i) regardless of any purported rivals' growth, Zuffa's dominance persists, and (ii) Zuffa changed its contracts (as it admits it did, ECF 843 at 5) and the extent to which such changes may have led to any alleged increased fighter mobility).

**LEGAL STANDARD**

Zuffa has not and cannot satisfy its burden under either of its Motions. A scheduling order "may be modified only upon a showing of 'good cause.'" *Mammoth Recreations*, 975 F.2d at 608; *see also* Fed. R. Civ. P. 16(b)(4) (same). A scheduling order may be modified "if it cannot reasonably be met despite the diligence of the party seeking the extension." *Mammoth Recreations*, 975 F.2d at 609. If the party seeking the modification was not diligent, "the inquiry should end," and the motion should be denied. *Id.*

The Ninth Circuit has identified additional hurdles the movant must surmount assuming it demonstrates that it was diligent, including, *inter alia*, showing that: (1) the non-moving party would not be prejudiced; and (2) "the likelihood that the discovery will lead to relevant evidence." *See, e.g.*, *City of Pomona*, 866 F.3d at 1066 (quoting *Schumer*, 63 F.3d at 1526). In short, the burden is on Zuffa to establish with facts and evidence that it was diligent; that Plaintiffs would not be prejudiced; *and* that the discovery it wants will likely lead to relevant evidence. Mere speculation based on press reports (which is what Zuffa has put forward)— especially where, as here, it is in exclusive possession of much of the market share evidence and data that would be needed to meet its burden—is not sufficient. *See First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 294 (1968) (finding no error in denying further discovery when the "petitioner has [offered] only speculation as to what discovery * * * would reveal"); *Schumer*, 63 F.3d at 1526 (denying motion to re-open discovery where plaintiff could "only speculate[ ] as to what evidence, if any, further discovery would produce") (internal quotes omitted).

In addition to the above test, a request to reopen discovery must also comply with the

9

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT ZUFFA'S MOTION TO REOPEN DISCOVERY (ECF NO. 884) AND MOTION TO TREAT FACT EVIDENCE PRODUCED IN *JOHNSON* LITIGATION AS IF IT WAS ALSO PRODUCED IN *LE* LITIGATION (ECF NO. 885)**

Local Rules, including principally Local Rule 26-3, which requires that any motion to reopen discovery shall include: (a) a statement specifying the discovery completed; (b) a specific description of the discovery that remains to be completed; (c) the reasons why discovery remaining was not completed; and (d) a proposed schedule for completing the remaining discovery. *See, e.g., Thorne v. Singer*, 2007 WL 9734135 (D. Nev. Oct. 3, 2007). Zuffa has not complied with this rule either.

## ARGUMENT

### A.  Zuffa's Reopen Motion Is a Threshold Issue

To grant Zuffa's *Johnson* Discovery Motion, the Court must first accept Zuffa's Reopen Motion. The Ninth Circuit explicitly prohibits district courts from allowing a party to import discovery from one action to another "merely to subvert limitations on discovery." *Foltz*, 331 F.3d at 1132. Zuffa's *Johnson* Discovery Motion seeks to subvert the long-lapsed discovery deadline in *Le*, and thus cannot be granted without first reopening discovery in *Le*. Zuffa has not come close to satisfying its burden for reopening discovery in *Le*, and thus both Motions fail.

### B.  Zuffa's Request to Reopen Discovery in *Le* Effectively Seeks Reconsideration of the Court's Setting of the April 8, 2024 *Le* Trial Date

Zuffa's request for additional discovery in *Le* is a transparent and meritless effort to delay the April 2024 trial in *Le* on liability and damages. It effectively seeks reconsideration of the Court's decisions that both cases will be tried separately and that the liability and damages aspects of *Le* will be tried first. *See* Hrg. Tr., ECF No. 846, at 8 ("[L]et me just be clear from the outset. These cases will be tried separately. So *Le* will be tried first on damages and then *Johnson* will be tried later."). Zuffa also effectively seeks reconsideration of the Court's order that trial will begin on April 8, 2024 with no continuances. ECF No. 894 ("the Court will NOT grant a continuance"). Zuffa's Motions do not come close to meeting the applicable standard for reconsideration, which requires a showing of "manifest injustice." *See, e.g.*, *Navajo Nation v. Confederated Tribes and Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir.

2003).

Zuffa's Reopen Motion would doom the April trial date not only because the four-to-six months Zuffa says it needs would run past that date, but also because Zuffa's time estimate for the massive amount of discovery it seeks is not realistic. Even taking Zuffa's amorphous request on its own terms, it is seeking discovery from multiple third-parties—its purported MMA competitors—spanning a six-year relevant period, plus the exchange of supplemental expert reports (and presumably expert depositions). If history is any guide, negotiations with third parties will take months; many of these third parties will require motions to compel to extract responsive documents; and document productions spanning six-years will require lengthy privilege reviews. All of this takes time. But, as Plaintiffs noted above and below, none of this discovery could possibly be relevant. And even if Zuffa could surmount the relevance hurdle, post-2017 discovery could not be used absent additional discovery to put what Zuffa seeks in proper evidentiary context, including discovery from Zuffa about (a) its own market share and growth during the post-2017 period, and (b) material aspects of the Challenged Conduct. *See* Singer Decl. ¶¶19-23. That discovery would take far longer than six months.

Zuffa blames the Court for Zuffa's own alleged predicament. *See* R. Mot. at 16 (arguing that it is reversible error to deny a motion to reopen discovery where the delay is "of the district court's own making"). Zuffa's accusation is unwarranted. First, Zuffa's cited authority requires a showing of diligence by the party seeking to reopen discovery, *see Pomona*, 866 F.3d at 1066,[8]

---

[8] Zuffa cites *Pomona* for the proposition that the Court cannot deny a request to reopen discovery because of a problem of the "court's own making." R. Mot. at 15. But the "[problem] of the district court's own making" in *Pomona* was not setting a trial date following a stay, but rather the court sitting on the motion to reopen without ruling until the eve of trial and then denying on the grounds that there was insufficient time. Here, Zuffa seeks an essentially unlimited scope of (irrelevant) discovery that could not be accomplished irrespective of any reasonable trial date. Further, as discussed herein, *Pomona* involved a request to reopen discovery for the limited purpose of updating an expert report to allow a specifically identified development in expert methodology that was a core dispute in the case to be included in the record. 866 F.2d at 1071. Here, Zuffa seeks to engage in wide-ranging merits discovery without demonstrating its own diligence or that such discovery would be relevant or material in *Le*.

Case Nos.: 2:15-cv-1045; 2:21-cv-01189

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT ZUFFA'S MOTION TO REOPEN DISCOVERY (ECF NO. 884) AND MOTION TO TREAT FACT EVIDENCE PRODUCED IN *JOHNSON* LITIGATION AS IF IT WAS ALSO PRODUCED IN *LE* LITIGATION (ECF NO. 885)**

and as discussed below, Zuffa was not diligent. Not even close. Second, the Court's Order scheduling trial in a case that has been pending for nearly nine years, without reopening a discovery period that has been closed for nearly six years, does not create a manifest injustice for Zuffa. The discovery Zuffa seeks about events and circumstances many years after the Class Period in *Le* is not targeted, limited, appropriate, or relevant.

Further, to the extent Zuffa finds itself in a "predicament," it is one of Zuffa's own making. Zuffa sat on its hands *for several years* before it asked the Court for the discovery it now claims to need. Zuffa has not met its heavy burden for the Court to reconsider its prior decisions. *See, e.g., Raya v. Calbiotech*, 2019 WL 11504688, at *4 (S.D. Cal. Nov. 26, 2019) (denying reconsideration of defendant's denied access to requested discovery because defendant's strategic decisions are "partly to blame" for any prejudice suffered due to the court's order).[9]

### C. The *Pomona* Factors Do Not Weigh in Zuffa's Favor

Even if Zuffa had been diligent and had met the high burden for reconsideration, Zuffa would still not be entitled to the relief it now belatedly seeks. Zuffa claims that the factors laid out in *Pomona*, 866 F.3d at 1066, support reopening discovery. They do not. Zuffa has not met its burden of showing that (a) it was diligent, (b) the discovery it seeks is likely to be relevant to liability or damages in *Le*, and (c) Plaintiffs would not suffer prejudice from delay.[10]

### 1. Zuffa has not met its burden of demonstrating diligence.

Zuffa's decision to wait several *years* to request the discovery it now seeks dooms its

---

[9] *See also Fox v. Am. Airlines, Inc.*, 389 F. 3d 1291, 1296 (D.C. Cir. 2004) (no injustice when the harm from the Court's order could "have been avoided through the exercise of due diligence"); *Bridgestone Sports Co. Ltd. v. Acushnet Co.*, 2007 WL 625851, at *2 (D. Del. Feb. 26, 2007) (no manifest injustice even though the result prejudiced the movant by foreclosing a viable defense, because the movant's "inability to pursue this defense is the result of its own strategic litigation decisions, and the Court will not rescue [the movant] from its choices").

[10] The other *Pomona* factors are whether Plaintiffs oppose the motion (Plaintiffs do oppose Zuffa's Reopen Motion) and whether trial is imminent (and trial is sufficiently imminent that Zuffa cannot complete the discovery it seeks in advance of trial. *Pomona*, 866 F.3d at 1066 (quoting *Schumer*, 63 F.3d at 1526). These factors also weigh against Zuffa.

Case Nos.: 2:15-cv-1045; 2:21-cv-01189

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT ZUFFA'S MOTION TO REOPEN DISCOVERY (ECF NO. 884) AND MOTION TO TREAT FACT EVIDENCE PRODUCED IN *JOHNSON* LITIGATION AS IF IT WAS ALSO PRODUCED IN *LE* LITIGATION (ECF NO. 885)**

Motions. Zuffa had ample opportunity to obtain discovery in *Le*—with fact discovery opening in 2015 and not closing until late 2017, and expert discovery and submissions (many of which were unauthorized) running into 2019. The Court indicated it would certify the Bout Class in December 2020. Yet Zuffa waited until August 2023 to ask for the reopening of discovery. Zuffa defends this lack of diligence by arguing that (1) it had no duty to seek discovery earlier because it had no obligation to raise merits issues during class certification proceedings, R. Mot. at 15, Hrg. Tr., ECF No. 846, at 22-25, (2) it did not raise these issues as part of its opposition to class certification, Hrg. Tr., ECF No. 846, at 22-25, and (3) it was excused from seeking this discovery until after class certification was decided, R. Mot at 14-15. None of these arguments has merit.

First, the schedule in this case did not bifurcate class and merits discovery. *See* ECF Nos. 206, 304, 311, 408, 432. All fact discovery had to be completed for all purposes by the end of 2018. Regardless, Zuffa's obligation to pursue discovery in a timely manner is unaltered by the pendency of Plaintiffs' class motion. The discovery schedule in the case required all discovery to be completed at the same time, knowing that no party would get a second bite at the apple after class certification. Fact discovery closed for all purposes on July 31, 2017. There is no ambiguity.

Second, Zuffa was wrong when it represented to the Court that "the argument that Bellator was a vigorous competitor, that PFL was a vigorous competitor, that the others, were not issues at class certification. They were not advanced as reasons to deny class certification," Hrg. Tr., ECF No. 846, at 25. In fact, Zuffa argued in its Opposition to Plaintiffs' Motion to Certify Class, that "other established and well-funded MMA promoters competed to sign MMA athletes," including single-spaced paragraphs describing purported competition from Bellator, PFL, and One Championship (the three principal promoters discussed in Zuffa's Motions). ECF No. 540 at 7-8. Similarly, at the Evidentiary Hearing, Zuffa's counsel argued to the Court (counterfactually) that "every deposition of every current rival, including … Bellator, all of these–these companies getting these major deals have said we're getting the fighters, we need we're not impaired in our ability to compete…." Hrg. Tr. (Aug. 27, 2019) at 2-34; *see also id.* at

Case Nos.: 2:15-cv-1045; 2:21-cv-01189

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT ZUFFA'S MOTION TO REOPEN DISCOVERY (ECF NO. 884) AND MOTION TO TREAT FACT EVIDENCE PRODUCED IN *JOHNSON* LITIGATION AS IF IT WAS ALSO PRODUCED IN *LE* LITIGATION (ECF NO. 885)**

2-35 ("I'm talking about the current rivals during the class period…[,] who are doing just fine, entering, getting major deals, and being deposed about their ability to acquire the athletes they need.").[11] Zuffa made no effort to reopen discovery to obtain evidence concerning how these purported rivals were doing in 2018 and 2019, or even in 2020.[12]

Third, Zuffa's contention that it has sought this discovery at the "first possible time after a four-year delay in these proceedings between the hearing on class certification and the Court's decision," is both wrong and immaterial. The Court informed the parties of its decision on class certification at a status conference on December 10, 2020. *See* ECF No. 775. Yet Zuffa sat on its request for nearly three more years. Had Zuffa instead sought to take this discovery in early 2021, it would have imposed no delay or other prejudice on Plaintiffs. But Zuffa waited until the last possible moment, not the first possible time, so as to maximize the potential prejudice to Plaintiffs from a trial delay. Moreover, Zuffa's decision to await the decision on Plaintiffs' Motion for Class Certification was a strategic choice,[13] and the Ninth Circuit does not allow strategic decisions not to pursue discovery earlier to excuse the failure to exercise diligence. *See, e.g.*, *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1026-27 (9th Cir. 2006); *see also*

---

[11] In fact, Zuffa included exhibits on their list of exhibits for the Evidentiary Hearing concerning many of the same contentions regarding which they now seek discovery. *See* ECF 665-5 (listing Exhibits: ZCCX173, referring to ONE Championship's increased viewership as of September 2018; ZCCX180, referring to Bellator's purported "Nine-Figure, Multi-Year Distribution Deal;" ZCCX226, 237 & 248, referring to PFL's $1 million purses for fighters). And Zuffa also included many of these same facts in Professor Robert H. Topel's 26(e) Supplemental Report. *See, e.g.*, ECF 575-17 ¶2 (describing the purported "nine-figure" multi-year broadcast agreements with DAZN and Paramount Network); *id*. ¶8 (describing PFL's purse values and broadcast deals). Zuffa was demonstrably aware of the availability of this discovery and its claimed desire to take it in 2018 and 2019. Yet Zuffa took no action until August 2023. That is too late.

[12] Zuffa offers no explanation for why discovery concerning the period from 2020 to the present would warrant reopening discovery in *Le* but the discovery concerning the factual bases for its arguments in 2018 and 2019 was not sufficiently important to diligently pursue back then.

[13] Because class and merits discovery proceeded and ended simultaneously, there was no justification for Zuffa to await the Court's class certification order before seeking additional merits discovery.

14

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT ZUFFA'S MOTION TO REOPEN DISCOVERY (ECF NO. 884) AND MOTION TO TREAT FACT EVIDENCE PRODUCED IN *JOHNSON* LITIGATION AS IF IT WAS ALSO PRODUCED IN *LE* LITIGATION (ECF NO. 885)**

*Fidelity Nat'l Fin. Inc v. Nat'l Union Fire Ins. Co.*, 308 F.R.D. 649, 652-53 (S.D. Cal. 2015) (denying motion to reopen discovery where moving party decided to wait to see whether it prevailed on its motion for summary judgment before raising the need to reopen).[14]

In short, Zuffa's failure to exercise diligence is, by itself, sufficient reason to deny its Motions. *Mammoth Recreations*, 975 F.2d at 609.

### 2. The Post-2017 discovery Zuffa seeks will not uncover evidence relevant to the upcoming trial in *Le.*

Zuffa has not met its burden of showing that discovery from the six-year period after 2017 would likely lead to evidence that could be relevant to the upcoming April 2024 trial in *Le*, or that Zuffa would be prejudiced without such evidence. *City of Pomona*, 866 F.3d at 1066 (requiring showing of "prejudice" suffered absent the discovery and that the sought discovery would likely "lead to relevant evidence"); *Mammoth Recreations*, 975 F.2d at 608-09 (requiring a showing of "good cause" and "diligence"). The only prejudice of granting Zuffa's Motions would be to Plaintiffs, who would endure substantial delay in a nine-year old case.

Indeed, the discovery Zuffa belatedly claims to want would be irrelevant for two primary reasons. First, Plaintiffs have adduced evidence of Zuffa's possession and maintenance of durable monopsony power, and its use of that power to foreclose competition and suppress fighter pay over the entire seven-year *Le* Class Period. No one is stopping Zuffa from attempting to challenge this evidence at trial with contemporaneous evidence produced during the lengthy

---

[14] *See also In re 3M Combat Arms Earplug Prods. Liab. Litig.,* 2021 WL 6327373, at *2 (N.D. Fla. Oct. 20, 2021) (denying request for discovery because "[t]he fact that Defendants strategically opted not to take [specific discovery] until now does not change the fact that [the discovery has] been known to them, and … available to them on the exercise of due diligence since February 2020"); *Lucey v. SWN Production Co., LLC*, 2018 WL 10811476, at *2 (N.D.W. Va. Nov. 1, 2018) ("Even if [defendant] did not foresee the Fourth Circuit ruling in [another case] or this Court's denial of summary judgment …, [defendant's] decision not to address [the issue] through discovery was a strategic one, not a diligent one."); *Talkin v. Deluxe Corp.*, 2006 WL 2588143 (D. Kan. Sept. 8, 2006) (applying *Pomona* factors and concluding "plaintiff was not diligent enough with his discovery to warrant an extension, did not correctly foresee the consequences of his strategic and tactical decisions concerning the timing of discovery, and had not shown that the requested discovery was likely to lead to relevant evidence").

Case Nos.: 2:15-cv-1045; 2:21-cv-01189

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT ZUFFA'S MOTION TO REOPEN DISCOVERY (ECF NO. 884) AND MOTION TO TREAT FACT EVIDENCE PRODUCED IN *JOHNSON* LITIGATION AS IF IT WAS ALSO PRODUCED IN *LE* LITIGATION (ECF NO. 885)**

discovery period in *Le*. But, as a matter of economics, assuming Zuffa fails to rebut Plaintiffs'
showing with evidence reflecting conditions during the Class Period, nothing that happens after
June-2017 could possibly undo the evidence reflecting possession and maintenance of durable
monopsony power and its harms during the Class Period. *See* Singer Decl. ¶¶4-9. Under Zuffa's
own cases, R. Mot. at 10, a showing of durable monopsony power cannot be undone by a later
demonstration that that monopsony power had ultimately dissipated. No case requires Plaintiffs
to show that market power lasts forever.

But even if Plaintiffs did not have evidence of durable monopsony power, Zuffa would
still have the burden of showing that the discovery it seeks could, even in theory, undermine
Plaintiffs' proof. But Zuffa has failed at that showing too. Neither Zuffa, nor Dr. Topel, *has even
claimed* that Zuffa's market power or share has declined post-2017. Zuffa merely points to the
alleged growth of a handful of minor MMA players, studiously avoiding mentioning its own
stupendous growth and never once even claiming that its dominance is at long last under threat.
Indeed, all available public evidence indicates that Zuffa's prodigious market power—and the
adverse effects of that power on fighter mobility, competition, pay, output, and prices—not only
persists through the present, but has grown since 2017. *See* Singer Decl. ¶¶10-28. So Zuffa does
not even come close to meeting its burden for demonstrating likely relevance of what it seeks.

### a. Nothing occurring after mid-2017 could nullify Plaintiffs' demonstration of Zuffa's durable monopsony power for over a decade.

Zuffa seeks discovery of six years of post-June 2017 evidence (R. Mot. at 2, 6),
concerning how Zuffa's purported competitors have supposedly "grown in size and number,
winning investments, broadcasting and distribution contracts, and fighters." *Id.* at 1. None of this
evidence could—even in theory and even if it were accurate—undermine Plaintiffs' showing of
Zuffa's maintenance of durable monopsony power during the Class Period. Singer Decl. ¶¶4-28.

As this Court found, Plaintiffs have amassed common evidence capable of establishing
each element of Plaintiffs' Section 2 claim, including the existence of durable monopsony power

16

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT ZUFFA'S MOTION TO
REOPEN DISCOVERY (ECF NO. 884) AND MOTION TO TREAT FACT EVIDENCE
PRODUCED IN *JOHNSON* LITIGATION AS IF IT WAS ALSO PRODUCED IN *LE*
LITIGATION (ECF NO. 885)**

over at least the entire Class Period, from December 2010 to June 2017. *See* ECF No. 839 at 67-71 (finding reliable and persuasive Plaintiffs' experts' findings that Bout Class members suffered damages throughout the Class Period); *id*. at 43 (analyzing evidence of the "anticompetitive Scheme," involving over 2000 UFC fighter contracts entered into from May 2001 through November 2015 (and thus extending through the end of the Class Period)); *id*. at 30 (after analyzing evidence from throughout the Class Period, stating "These findings, which the Court credits, demonstrate Defendant's dominance in the input (and output) market. It further establishes how Zuffa's dominance in the output market enhanced its ability to suppress compensation in the input market").[15]

      Dr. Singer introduced substantial evidence showing that Zuffa possessed and maintained more than an 71% share of the relevant input and output markets for more than seven years. *See* Singer Decl. ¶13 (citing market share evidence from prior reports). Plaintiffs thus have evidence capable of showing that Zuffa used an anticompetitive Scheme to maintain durable monopsony power and suppress fighter pay. *Id*. ¶¶4, 13-15. No case requires more. *See, e.g.*, *Sunkist Growers,* 526 F.2d at 1204; *FTC v. Surescripts, LLC*, 2023 WL 2707866, at *20-21 (D.D.C. Mar. 30, 2023) (a decade of market shares between 60% and 95% (depending on measurement) was sufficient, and holding "the entry of a competitor does not mean the dominant firm did not have a monopoly" nor does it "undermine" the defendant's "durable monopoly"); Areeda & Hovenkamp, Antitrust Law ¶801a, at 319 ("it is generally reasonable to presume that a firm has monopoly power when the firm's dominant market share has lasted, or will last, for at least five years").

      Plaintiffs are not saying, of course, that Zuffa could not attempt rebut Plaintiffs' evidence

---

[15] *See also id*. at 24 (Without restriction as to time period, "The Court finds that Plaintiffs have provided sufficient evidence that Defendant maintained market power in the relevant input market."); *id*. at 33 ("the Court finds that Plaintiffs have provided sufficient evidence that Defendant 'possessed monopsony power in the relevant [input] markets.'" (citation omitted)); *id*. at 33 ("the Court finds that Defendant maintained its dominant position in the fighter input market through anticompetitive conduct").

Case Nos.: 2:15-cv-1045; 2:21-cv-01189

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT ZUFFA'S MOTION TO REOPEN DISCOVERY (ECF NO. 884) AND MOTION TO TREAT FACT EVIDENCE PRODUCED IN *JOHNSON* LITIGATION AS IF IT WAS ALSO PRODUCED IN *LE* LITIGATION (ECF NO. 885)**

on any of the elements of their claim at trial. Zuffa can try. What Plaintiffs are saying is that if Plaintiffs succeed in demonstrating to the jury what the Court has already found their evidence shows (for class certification purposes) *then* no evidence from the post-Class Period could possibly undermine that showing. Antitrust analysis does not involve time travel.[16]

Moreover, as just noted, courts have found the presence of durable market power based on evidence reflecting substantially lower market shares than Zuffa possessed for shorter time periods than Zuffa had it here. *See, e.g.*, *supra* at 17, citing *Sunkist Growers,* 526 F.2d at 1204; *FTC v. Surescripts, LLC*, 2023 WL 2707866, at *20-21 (D.D.C. Mar. 30, 2023); Areeda & Hovenkamp, *Antitrust Law* ¶801a, at 319.

Zuffa's cases, R. Mot. at 1, are off point. *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421 (9th Cir. 1995), is inapposite for several reasons. First, in *Rebel Oil*, the defendant sought to introduce evidence of entry of competitors after 1988, which unlike here was during the alleged period of predation in the case (1985-1989). *Id.* at 1429, 1439-40. Second, plaintiff in *Rebel Oil* alleged attempted monopolization, and the court was considering whether to impose an injunction (not damages), which (unlike for the damages claim here) necessarily involves knowledge of present market conditions. *Id.* at 1439; *see also* discussion *infra* (re timing of facts relating injunctive relief claims). Third, and relatedly, unlike here, the *Rebel Oil* plaintiff did not have direct evidence of the injurious exercise of market power—which the Ninth Circuit held was sufficient standing alone. *See Rebel Oil*, 51 F.3d at 1433. In short, *Rebel Oil* provides no cover for a defendant monopsonist (or monopolist) to use later entry into the market to offset its liability for damages when the Plaintiffs have evidence of the direct exercise of monopsony

---

[16] Zuffa suggests in its Reopen Motion that the Post-Class Period can serve as a "natural experiment," R. Mot. at 12, for how the challenged conduct would affect competition during the Class Period. As shown below, that argument fails without also showing that the challenged conduct remained materially similar over the two periods. *See* Singer Decl. ¶¶19-23. More importantly, as Dr. Singer observes, "the best 'natural experiment' of the effects of the Challenged Conduct during the Class Period is to study the effects of the Challenged Conduct *during the Class Period*. That is what I and Dr. Topel have already done." *Id.* ¶8.

Case Nos.: 2:15-cv-1045; 2:21-cv-01189

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT ZUFFA'S MOTION TO REOPEN DISCOVERY (ECF NO. 884) AND MOTION TO TREAT FACT EVIDENCE PRODUCED IN *JOHNSON* LITIGATION AS IF IT WAS ALSO PRODUCED IN *LE* LITIGATION (ECF NO. 885)**

power during the relevant period.[17] Zuffa's reliance on *Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 2005 WL 2132438 (S.D.N.Y. Sept. 6, 2005), R. Mot. at 1, 10, 13, 14, fails for two reasons: (1) because the plaintiffs there sought discovery of evidence reflecting a time period for which they sought to recover damages (*id.* at *6); and (2) because the defendant presented evidence of a drastic reduction in market share. *Id.* at *5. Here, Plaintiffs seek damages only for bouts taking place during the Class Period, and as discussed below, Zuffa *does not even claim* that its market share eroded after 2017 (and it did not).[18]

> **b.  Zuffa's speculation and anecdotes about alleged increased competition after the Class Period are both refuted by the facts and do not satisfy Zuffa's burden of showing that the discovery is likely to be relevant.**

Plaintiffs' evidence of durable monopsony power during the Class Period, therefore, could only be refuted by evidence from the Class Period. Accordingly, there is literally nothing Zuffa could import from the six-year period post-June 2017 that could undermine what the evidence shows during the Class Period. But that is not Zuffa's only hurdle. According to the cases Zuffa itself cites, R. Mot. at 10, even if Plaintiffs did not have evidence of durable monopsony power during the Class Period, for post-Class Period evidence to be relevant, Zuffa would need to demonstrate that there is a likelihood that such evidence would demonstrate a significant decline in market share or material diminishment of monopsony power.[19]

---

[17] *Cornwell Quality Tools Co. v. CTS Co., Inc.*, 446 F.2d 825 (9th Cir. 1971), R. Mot. at 1, does not help Zuffa either, because there the Ninth Circuit only considered whether conduct after the complaint filing was relevant, concluding that it was not. *Id.* at 832.

[18] Zuffa's Reopen Motion relies on additional cases, R. Mot. at 1, 9-11, that are likewise inapposite. For example, *United States v. Syufy Enterprises*, 903 F.2d 659 (9th Cir. 1990), does not help Zuffa because the government there conceded that there were no structural barriers to entry in the case, "[n]or [was] there a network of exclusive contracts or distribution arrangements designed to lock out potential competitors." *Id.* at 666-67. And the market power identified was not durable because it eroded the ***same month*** that the defendant allegedly obtained such power through acquisitions. *Id.*

[19] To the extent any court deemed market events a few years after the conduct began potentially relevant to whether defendant had the capacity to commit the violation during the time of the alleged misconduct, it was because—*unlike here*—the party seeking to introduce such evidence showed a trend of rapidly declining market share. *See* R. Mot. at 10, citing the following cases:

19

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT ZUFFA'S MOTION TO REOPEN DISCOVERY (ECF NO. 884) AND MOTION TO TREAT FACT EVIDENCE PRODUCED IN *JOHNSON* LITIGATION AS IF IT WAS ALSO PRODUCED IN *LE* LITIGATION (ECF NO. 885)**

Zuffa does not even claim, let alone provide reason to believe, that its market share has fallen since June 2017. And for good reason. As Zuffa surely understands from its own internal data that it has strategically hidden from the Court, the UFC's market power and share has only grown since 2017. Plaintiffs' expert Dr. Hal Singer extended his market share analysis (to the extent possible using public data)[20] from the end of the Class Period to the present. *See* Singer Decl. ¶¶14-15 & Fig. 1. Zuffa's rank-weighted share of the Headliner Submarket has only *increased* since June 2017. *Id.* As Dr. Singer observes: "This analysis reveals that Zuffa's market share in the Headliner Market has *grown from 90 percent in June 2017 to 93 percent in October 2023*."[21] *See id.* ¶14 & Fig. 1. This updated analysis shows that there have been even fewer highly-ranked MMA fighters competing at non-UFC promoters since June 2017, leaving no basis for Zuffa's speculation that rivals were able to infringe on Zuffa's market dominance in the post-Class Period. Thus, not only does Zuffa fail to meet its burden of showing that the discovery it seeks is likely to demonstrate a trend in falling market share, publicly available evidence shows *the opposite*.

So what is to be made of the supposed anecdotes from press clippings Zuffa highlights in its Motions, *see*, *e.g.*, Declaration of Robert Topel ("TD"), ¶¶6-11, regarding the alleged growth

---

*Geneva*, 2005 WL 2132438, at *5 (because court of appeals had determined that unwillingness to substituted from generic to brand drug was a "trend" that it assumed would continue, evidence that trend "was virtually the opposite" after the appeal was deemed potentially relevant); *Lektro-Vend Corp. v. Vendo Co.*, 660 F.2d 255, 271 (7th Cir. 1981) (regarding attempt to monopolize claim where alleged misconduct occurred from 1960 to 1965, evidence that market share dropped "from 33% in 1966 to 24% in 1973" was relevant to whether defendant's "capacity to monopolize at the time of the supposed attempts"); *Nifty Foods Corp. v. Great Atl. & Pac. Tea Co., Inc.*, 614 F.2d 832, 841 (1980) (rapid decline in market share four years after alleged misconduct began from 54.5% to 33% deemed not sufficient to establish monopolization or attempted monopolization claim).

[20] Dr. Singer was able to collect data on MMA fighter ranks for purposes of evaluating Zuffa's dominance in the relevant markets based on the Ranked and Tracked market definitions, as well as the Headliner Submarket. However, the revenue data required for weighting as part of an updated analysis of Zuffa's market share of these same markets was not publicly available.

[21] Per the Expert Report of Hal J. Singer, Ph.D. ("SR1"), ECF No. 518-3, SR1 ¶¶1, 95, 99, the "Headliner" submarket consists of all fighters ranked 1 to 15 in any major MMA weight class. *Id.*

20

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT ZUFFA'S MOTION TO REOPEN DISCOVERY (ECF NO. 884) AND MOTION TO TREAT FACT EVIDENCE PRODUCED IN *JOHNSON* LITIGATION AS IF IT WAS ALSO PRODUCED IN *LE* LITIGATION (ECF NO. 885)**

or expansion of certain MMA promoters after June 2017? Zuffa's meager showing fails to satisfy Zuffa's burden for at least three reasons.

First, the evidence of Zuffa's market share growth in the Post-Class Period necessarily means that any supposed expansion of other MMA promoters was outpaced by Zuffa's own. As this Court observed at the August 23, 2023 status conference, Zuffa would need to argue that there are competitors whose growth cuts into Zuffa's market share or market dominance. *See* Hrg. Tr. at 7. But, again, Zuffa does not even propose to introduce evidence that its market share or monopsony power has diminished post-2017. Instead, it says only that it seeks to introduce evidence concerning other promoters' supposed growth in a vacuum. In fact, in its new Motion for Summary Judgment (ECF No. 878), Zuffa makes no claims and introduces no facts concerning its own growth (or lack thereof) since June 2017. Yet Zuffa told the Court that it would introduce evidence within its control concerning market dominance at summary judgment. Hrg. Tr., ECF No. 846, at 7.[22] It did not do so. That failure is telling.[23]

Without information on Zuffa's own performance to contextualize the rivals' purported growth, the information Zuffa seeks to collect and introduce in *Le* is merely redundant of the unpersuasive evidence already in the record that demonstrates that these purported rivals are merely the "minor leagues."[24]

Second, Zuffa's desired new discovery is, at best, redundant of its prior unpersuasive efforts at showing competition is finally here. It is another step in Zuffa's failed strategy of

---

[22] The Court concurred, noting that "much of this information … is in the control of the parties." Hrg. Tr., ECF No. 846, at 9, and understood that, "as it relates to particularly the issue of market dominance …, much of that [evidence] would come in through two different types of testimony, experts or you would have executives from Zuffa…." *Id.* at 9-10.

[23] This evidence concerning rivals' performance that Zuffa proposes to collect now, and introduce in *Le*, is not relevant or material. *See* R. Mot. at 1 (noting the Ninth Circuit only condones reopening discovery "to explore 'material' developments that occurred after the close of discovery" (quoting *City of Pomona*, 866 F.3d at 1066).

[24] *See* ECF No. 839 at 10 ("There are several additional promoters who act as so called 'minor leagues' to the UFC, which essentially develop fighters to eventually farm out to the UFC.").

21

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT ZUFFA'S MOTION TO REOPEN DISCOVERY (ECF NO. 884) AND MOTION TO TREAT FACT EVIDENCE PRODUCED IN *JOHNSON* LITIGATION AS IF IT WAS ALSO PRODUCED IN *LE* LITIGATION (ECF NO. 885)**

pointing to hypothetical competition that is, as Dr. Singer puts it, "just around the corner." Singer Decl. ¶¶24-28. Indeed, Zuffa has been making the same failed arguments to this Court about the advent of supposedly vigorous potential competition—while elsewhere acknowledging the exact opposite, *e.g.*, ECF No. 839 at 32 (discussing internal email with subject "We Own MMA")—for a very long time. Indeed, in 2011, Zuffa cited to the FTC the same minor league MMA promoters it even today touts as potential competitive threats in its efforts to justify its takeover of Strikeforce more than a decade ago. *See* Singer Decl. ¶27 (discussing contents of Zuffa's June 2011 submission to the FTC).[25] It repeated these unpersuasive arguments in its Class Opposition, ECF No. 540 at 7-8, at the Evidentiary Hearing, Hrg. Tr. (Aug. 27, 2019) at 2-34-35, and in its previous summary judgment motion. *See, e.g.*, ECF No. 573 at 7-10. None of these supposed competitors has ever threatened to cut into Zuffa's dominant market power. In fact, the UFC's dominance has only grown during the Class Period *and* after.

Third, a review of the press clippings Zuffa cites regarding the supposed growth or expansion of rivals after 2017 demonstrates that they do not come close to satisfying Zuffa's burden. As an initial matter, neither Zuffa nor Dr. Topel identifies a single new entrant into the market in the six years since the Class Period closed. *See* Singer Decl. ¶¶11, 24-28. A lot can be said about a market with no new entrants for over a decade, but ease of entry is not one of them. Moreover, Zuffa's anecdotes of supposed rival expansion are exaggerated to the point of being misleading. For instance, Zuffa points to Bellator's purported success, including an up to nine-figure broadcast deal. TD ¶¶6-7. But that contract was *cancelled* within two years, and as of this month, Bellator has no network on which to broadcast. Singer Decl. ¶27. Zuffa notes Bellator's purported revenue increases from $18 million in 2016 to $35 million in 2018. *See* TD ¶6. But Bellator has never been profitable, losing millions every year. Singer Decl. ¶27. Further, Dana

---

[25] *See also* Rebuttal Expert Report of Dr. Hal J. Singer ("SR2") (filed at ECF No. 518-4) at n.89 (recounting Dr. Topel's testimony that Zuffa's attorneys represented to the FTC in or about early 2012 that the WWE and various boxing promoters were set to enter the market—but never did).

Case Nos.: 2:15-cv-1045; 2:21-cv-01189

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT ZUFFA'S MOTION TO REOPEN DISCOVERY (ECF NO. 884) AND MOTION TO TREAT FACT EVIDENCE PRODUCED IN *JOHNSON* LITIGATION AS IF IT WAS ALSO PRODUCED IN *LE* LITIGATION (ECF NO. 885)**

White acknowledged just this month (as he has multiple times in the past) that Bellator is not a competitor to the UFC, calling Scott Coker's claim that Bellator has similar quality fighters "the fucking dumbest thing I've ever heard," stating that "if somebody's . . . good who's in one of these other organizations, they're gonna end up [in UFC]" and asking: "Why, on God's green [expletive] earth, would anybody buy Bellator?" *Id.* (quoting Dana White Talks UFC 293, Sean Strickland Antics, Goes Scorched Earth On Bellator, MMAF, https://www.youtube.com/watch?v=d6MuqXQDV5w (last visited Nov. 2023), at 18:25).

Moreover, even if Zuffa could prove Bellator's growth it would pale in comparison to Zuffa's own prodigious revenue growth after 2017. Zuffa signed a $1.5 billion broadcast deal the same year Bellator executed its far smaller deal. Singer Decl. ¶16. Zuffa's annual revenues exceeded $600 million annually from 2016 to 2018 (and now exceed $1 billion per year). *Id.*

Zuffa's focus on purported competition from PFL, R. Mot. at 2, 6-7, is equally pathetic. When informed that PFL may purchase Bellator, White said:

> What they're [PFL] doing makes no sense to me, their business strategy . . . . I'm hearing they're buying Bellator, right? So you're an organization that's burning cash, have no ratings and selling no tickets, and you're going to raise $280 million to buy a company that's burning cash, sells no tickets, and does no ratings? It sounds absolutely f***ing genius to me.[26]

Zuffa also points to reports that PFL has signed UFC heavyweight champion Francis Ngannou. R. Mot. at 7. But that signing was made possible by a specific change to Zuffa's fighter contracts after the Class Period that allowed fighters to terminate their UFC contracts five years after signing, notwithstanding any restrictive extension provisions. *See* Singer Decl. ¶21. Press reports indicate that this change may have been prompted by this very lawsuit. *Id*. Because that clause was not part of UFC contracts during the *Le* Class Period, Ngannou's departure is not evidence that that the UFC contracts during the Class Period allowed for fighter mobility. *Id.* In any event,

---

[26] *Dana White rips Francis Ngannou, PFL over historic deal*, MMAFighting.com (May 21, 2023), available at https://www.mmafighting.com/2023/5/21/23731580/dana-white-rips-into-francis-ngannou-pfl-over-historic-deal-it-makes-no-sense-to-me (expletive redacted).

Case Nos.: 2:15-cv-1045; 2:21-cv-01189

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT ZUFFA'S MOTION TO REOPEN DISCOVERY (ECF NO. 884) AND MOTION TO TREAT FACT EVIDENCE PRODUCED IN *JOHNSON* LITIGATION AS IF IT WAS ALSO PRODUCED IN *LE* LITIGATION (ECF NO. 885)**

Ngannou has yet to appear in a PFL bout despite reportedly signing approximately six months ago. Press reports indicate the reason: PFL has no one for Ngannou to fight, and the UFC refuses to co or cross-promote. *Id.* ¶21 & n.51. As PFL founder Donn Davis put it:

> I think the opponents [for Ngannou] in pure MMA are not that interesting right now … There's only one guy in MMA right now who's interesting for Francis Ngannou: [UFC-contracted fighter] Jon Jones. One guy. Everybody says, 'Well what about Stipe [Miocic] [also under UFC contract]?' Maybe. Give him half a point. 1.5 guys who are compelling.[27]

*Id.* Thus, Ngannou is a fighter who escaped the UFC's long term exclusive contracts through a now-closed loophole created after the Class Period. *Id.* And because PFL does not have a critical mass of fighters in Ngannou's weight class, and due to the UFC's refusal to co-promote, PFL cannot even put Ngannou in a productive bout. *Id.* Thus, Ngannou's departure says nothing about the anticompetitive effects of Zuffa's conduct during the Class Period. To the extent it says anything at all, it is that Zuffa's dominance, and the competitive problems that flow from that dominance—including the UFC's suppression of output—persist to this day.

Further, Zuffa offers nothing new concerning One Championship ("ONE"). Since 2017, the public facts make clear that ONE has had no relevance to *Le*. ONE did not hold its first event in the United States (or North America more broadly) until May 5, 2023. *See* Singer Decl. ¶¶25, 27. Thus, ONE was not even in the relevant geographic market until mid-2023, nearly six years after the last of the bouts of the *Le* Class. *See* ECF No. 839 at 26 ("Logically, this definition [of the relevant geographic markets] excludes promoters such as ONE…."). Moreover, ONE's parent company reports a questionable financial condition to its Singaporean regulator, showing only $30 million to $48.2 million in revenue from 2017 to 2019, and substantial operating losses each year.[28] And because ONE operated outside the relevant geographic market, its revenues are irrelevant anyway. In short, none of the handful of anecdotes regarding developments of the

---

[27] *Francis Ngannou only has one 'compelling' opponent in MMA, PFL surprisingly says*, BloodyElbow.com (Nov. 1, 2023), available at https://bloodyelbow.com/2023/11/01/francis-ngannou-jon-jones-pfl-mma/.

[28] *See* Singer Decl. ¶16 (discussing financial reporting); *see also id.* ¶27.

Case Nos.: 2:15-cv-1045; 2:21-cv-01189

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT ZUFFA'S MOTION TO REOPEN DISCOVERY (ECF NO. 884) AND MOTION TO TREAT FACT EVIDENCE PRODUCED IN *JOHNSON* LITIGATION AS IF IT WAS ALSO PRODUCED IN *LE* LITIGATION (ECF NO. 885)**

UFC's supposed MMA rivals that Zuffa highlights comes close to satisfying Zuffa's burden of demonstrating that the sought post-Class Period discovery would be relevant to *Le*.

### 3. Granting Zuffa's Motion Would Involve Substantial Delay and Thereby Prejudice Plaintiffs and the Class.

Granting Zuffa's Motions would entail many months, if not years, of delay, make the April 2024 trial date impossible, and result in substantial prejudice to Plaintiffs. This case has been pending since December 2014. It concerns harm to many hundreds of fighters incurred from December 2010 to June 2017. Each additional day of delay allows witnesses' memories to fade, and Zuffa to keep its $1.6 billion in ill-gotten gains (before trebling), interest free. It's time for a trial.

Zuffa's argument that Plaintiffs would not be prejudiced by reopening discovery in *Le*, R. Mot. at 16-18, fails for at least three reasons: (1) the delay caused by reopening discovery as Zuffa requests will be lengthy, and require moving the April 8, 2024 trial, (2) Zuffa's Motions ignore significant prejudice to Plaintiffs, and in any event, (3) Zuffa is wrong that the *Le* Class's claim for injunctive relief and claim for damages are based on the same set of facts, and thus partial judgment under Fed. R. Civ. P. 54(b) could be granted as to liability and damages in *Le*.

Zuffa claims that reopening discovery would result in only a "short" delay of four-to-six months. R. Mot. at 8, 16-18. That is neither short nor a realistic assessment of the delay that would be entailed by granting Zuffa the relief it seeks. First, allowing four-to-six months of discovery, including expert reports (and presumably expert depositions), means *at least* six months. That would, at minimum, require moving the April 8, 2024 trial. Second, Zuffa disregarded the Court's statement that it would only even consider only two to three months of "targeted" discovery, and Zuffa's request, even on its face, exceeds the three-to-four months Zuffa told the Court it would seek. *See* Hrg. Tr., ECF No. 846, at 10-11. Third, Zuffa's time estimate underestimates the time required both for Zuffa to take the discovery it seeks, and for Plaintiffs to have a fair opportunity to take the discovery needed to rebut and contextualize it.

Case Nos.: 2:15-cv-1045; 2:21-cv-01189

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT ZUFFA'S MOTION TO REOPEN DISCOVERY (ECF NO. 884) AND MOTION TO TREAT FACT EVIDENCE PRODUCED IN *JOHNSON* LITIGATION AS IF IT WAS ALSO PRODUCED IN *LE* LITIGATION (ECF NO. 885)**

1    Indeed, Zuffa admits that information relating to competitive developments from the class

2    period in one case cannot simply be used in the other without a massive amount of additional

3    discovery. *See* J. Mot. at 10 (conceding that "market conditions or the effect of the challenged

4    conduct" during the *Le* Class Period cannot be relied upon for an economic analysis about

5    market conditions or the effect of the challenged conduct during the *Johnson* Class Period). But

6    Zuffa has not even *sought to meet* its own stated burden of showing that the discovery it purports

7    to seek regarding the supposed growth of certain feeder MMA promotions post-2017 could

8    possibly be relevant and material to liability and damages in *Le*. Nor would such a showing be

9    possible merely with the discovery Zuffa seeks regarding the development of purported rivals

10   post-2017.

11   Zuffa's Motions thus also fail because reopening discovery in *Le* could not possibly be

12   "limited" or "targeted" in the way Zuffa imagines. Zuffa's Reopen Motion (at 12) says that the

13   post-2017 period provides a "natural experiment as to . . . [Plaintiffs' point] that the challenged

14   contracts unlawfully hindered fighter mobility." But for circumstances during the post-2017

15   period even to be a "natural experiment" of the effects of the contracts during the Class Period,

16   there would need to be a comprehensive showing that the contracts (and other aspects of the

17   Scheme) were similar in material respects as between the two periods. As Dr. Singer explains,

18   such an analysis would, at minimum, require production and detailed evaluation of six-years of

19   post-2017 fighter contracts, as well as analyses of all of Zuffa's other conduct during the *Johnson*

20   class period. Singer Decl. ¶¶19-23. That could not be accomplished in one year, let alone six

21   months.

22   Zuffa's Motions also ignore the prejudice that delay attendant to reopening discovery

23   would inflict on Plaintiffs. Plaintiffs have an interest in proceeding expeditiously with their

24   actions because delay "inherently increases the risk that witnesses' memories will fade and

25   evidence will become stale." *Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr.*,

26   490 F.3d 718, 724 (9th Cir. 2007) (quoting *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir.

27                                          26

28   **PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT ZUFFA'S MOTION TO
     REOPEN DISCOVERY (ECF NO. 884) AND MOTION TO TREAT FACT EVIDENCE
     PRODUCED IN *JOHNSON* LITIGATION AS IF IT WAS ALSO PRODUCED IN *LE*
     LITIGATION (ECF NO. 885)**

2002)).[29] It is already the case that one witness on whom Plaintiffs have relied for significant points in this case, former UFC matchmaker Joe Silva, has moved out of the District. Indeed, since ownership of the UFC changed in late 2016, the possibility of additional witnesses relocating as time goes on only grows since many of the witnesses are no longer with the UFC. This unrebutted prejudice alone demonstrates that the *Pomona* factor concerning prejudice to Plaintiffs weighs against Zuffa.

Further, Plaintiffs would be prejudiced by delay because they—and the other members of the Class—would be required to wait even longer for a recovery relating to events and circumstances taking place from December 2010 to June 2017. Zuffa has been allowed to hold onto, interest-free, up to $1.6 billion in ill-gotten gains before statutory trebling (if Plaintiffs prove their case)—money taken directly from the pockets hundreds of UFC fighters. That, too, is prejudice from granting Zuffa the relief it seeks. Zuffa further claims that "Plaintiffs will have no judgment to collect upon until their request for injunctive relief is resolved" because Plaintiffs have a "single claim under Section 2 of the Sherman Act." R. Mot. at 16-17. Zuffa asserts that "[b]ecause Plaintiffs 'advanced a single legal theory which was applied to only one set of facts …, their request for 'several different remedies' constitutes a single claim.'" *Id.* at 17 (quoting *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737 (1976); *Ariz. State Carpenters Pension Tr. Fund v. Miller*, 938 F.2d 1038, 1040 (9th Cir. 1991)). Zuffa misstates the circumstances and facts underlying Plaintiffs' claims for damages and injunctive relief. In fact, Plaintiffs can indeed

---

[29] *See also Clinton v. Jones*, 520 U.S. 681, 707-08 (1997) ("delaying trial would increase the danger of prejudice resulting from the loss of evidence, including the inability of witnesses to recall specific facts…."); *ESG Capital Partners LP v. Stratos*, 22 F. Supp. 3d 1042, 1046 (C.D. Cal. 2014) (plaintiffs have an "interest in having [their] case resolved quickly"); *Vargas v. Cty. of Los Angeles*, 2019 WL 6655269, at *3 (C.D. Cal. July 10, 2019) (delay "inherently increase[s] the risk that witnesses' memories will fade and evidence will become stale"); *Sw. Marine, Inc. v. Triple A Mach. Shop, Inc.*, 720 F. Supp. 805, 809 (N.D. Cal. 1989) ("Witnesses relocate, memories fade, and persons allegedly aggrieved are unable to seek vindication or redress for indefinite periods of time on end" (quoting *In re Mid-Atl. Toyota Antitrust Litig.*, 92 F.R.D. 358, 359 (D. Md. 1981)) (internal quotes omitted).

Case Nos.: 2:15-cv-1045; 2:21-cv-01189

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT ZUFFA'S MOTION TO REOPEN DISCOVERY (ECF NO. 884) AND MOTION TO TREAT FACT EVIDENCE PRODUCED IN *JOHNSON* LITIGATION AS IF IT WAS ALSO PRODUCED IN *LE* LITIGATION (ECF NO. 885)**

1   obtain a partial judgment under Fed. R. Civ. P. 54(b) for their damages claim, without first

2   resolving injunctive relief.

3         Liability and damages will be based on facts concerning Zuffa's conduct and the market

4   conditions during the Class Period. Whether injunctive relief is appropriate depends, in some

5   material respects, on Zuffa's conduct and market conditions at the time of the injunctive relief

6   proceedings.[30] Accordingly, claims for damages and injunctive relief turn, in part, on different

7   evidence. Whereas, damages claims require proof of only a past wrong that could be remedied by

8   a favorable judgment, "[f]or injunctive relief, which is a prospective remedy, the threat of injury

9   must be 'actual and imminent, not conjectural or hypothetical.'" *Davidson v. Kimberly-Clark*

10   *Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488,

11   493 (2009)).[31]

12         Because Plaintiffs' liability and damages claim is based on Zuffa's conduct and

13   anticompetitive effects before and during the Class Period, but Plaintiffs' injunctive relief claim

14   will turn in some material respects on the market conditions at the time of the injunctive relief

15   trial (likely 2025 at the earliest), there are multiple claims in this lawsuit. Because Plaintiffs'

16   claims for damages, on the one hand, and injunctive relief, on the other, arise from different facts

17   during different time periods (separated by more than 7 years), require some different forms of

18   proof, and would not result in piecemeal appeals if resolved separately, the Court may certify

19   any monetary damages awarded as a final judgment. Fed. R. Civ. P. 54(b); *see Curtiss-Wright*

20   *Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 2 (1980).[32]

21

22   [30] "Plaintiff's remedy at law, damages, is retrospective and can only remedy Plaintiff for the harm
23   already incurred. An injunction, on the other hand, is prospective and would remedy any threat of
      future harm." *Turner v. Apple, Inc.*, 2022 WL 445755, at *3 (N.D. Cal. Feb. 14, 2022).

24   [31] *See also Qualcomm*, 969 F.3d at 1005 ("as a general rule, past wrongs are not enough for the
25   grant of an injunction; instead, injunction will only issue if the wrongs are ongoing or likely to
      recur." (cleaned up)).

26   [32] Although the Supreme Court has declined to rule on what constitutes a "claim" for purposes of
      partial judgments under Fed. R. Civ. P. 54(b), at minimum, an individual claim refers to a
27   discrete "set of facts giving rise to legal rights in the claimant." *Pakootas v. Teck Cominco*

28

28

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT ZUFFA'S MOTION TO
REOPEN DISCOVERY (ECF NO. 884) AND MOTION TO TREAT FACT EVIDENCE
PRODUCED IN *JOHNSON* LITIGATION AS IF IT WAS ALSO PRODUCED IN *LE*
LITIGATION (ECF NO. 885)**

Zuffa admits in the *Johnson* Discovery Motion that the facts are not exactly the same across the two distinct time periods. *See* J. Mot. at 10. And Zuffa is correct that the facts are at least somewhat different: Zuffa's head matchmaker from the *Le* time period, Joe Silva, has retired; the UFC is under new ownership since the end of 2016; Zuffa admits that its contracts have changed over time (ECF No. 843 at 5); Zuffa's acquisitions will be different; and its coercion will likely take different forms. All of these points reflect a different set of facts that must be evaluated in the injunctive relief phase (and in discovery in the *Johnson* case), but are not at issue in the liability and damages trial. That is sufficient to create multiple claims under Fed. R. Civ. P. 54(b). The cases Zuffa cites, *Wetzel* and *Miller*, are not contrary as they do not apply to multi-claim actions like this one where the legal theory is, in fact, applied to two different sets of facts.[33] Granting Zuffa's Motions would prejudice Plaintiffs, and therefore this *Pomona* factor weighs against Zuffa.

### D.  Plaintiffs Will Seek to Treat Fact Discovery Taken in *Le* as if Taken in *Johnson*

Zuffa is correct that Plaintiffs will seek to treat fact discovery taken in *Le* as if it were also taken in *Johnson*, and Zuffa does not contest that such fact discovery in *Le* should be treated as taken in *Johnson*.[34] Zuffa is incorrect, however, that the *Johnson* Plaintiffs will seek to have expert discovery in *Le* apply without additional analyses specific to *Johnson*.

---

*Metals, Ltd.*, 905 F.3d 565, 574–75 (9th Cir. 2018). Thus, multiple claims can exist where one action joins multiple sets of facts. *See, e.g., Purdy Mobile Homes, Inc. v. Champion Home Builders Co.*, 594 F.2d 1313, 1316 (9th Cir. 1979).

[33] Further, *Wetzel* did not turn on one form of relief being decided but further proceedings needed for other forms of relief on the same claim. 424 U.S. at 742. Rather, the district court resolved liability but "finally disposed of none of respondents' prayers for relief." *Id.* Here, by contrast, if Plaintiffs prevail on liability and damages in *Le*, the Court will need to conduct additional proceedings concerning a new set of facts—*i.e.*, whether the conduct and effects persisted to the present. Partial judgment pursuant to Fed. R. Civ. P. 54(b) would be appropriate.

[34] Doing so accords with the Zuffa's cited authority: discovery is open in *Johnson* (unlike *Le*); allowing *Le* discovery to be treated as taken in *Johnson* avoids duplicative discovery (such as forcing plaintiffs to re-take every deposition and ask the same questions of each witness), and is relevant to establishing how Zuffa's Scheme developed over time and flowed into the *Johnson* class period. The *Johnson* plaintiffs will file a motion to this effect at an appropriate time.

Case Nos.: 2:15-cv-1045; 2:21-cv-01189

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT ZUFFA'S MOTION TO REOPEN DISCOVERY (ECF NO. 884) AND MOTION TO TREAT FACT EVIDENCE PRODUCED IN *JOHNSON* LITIGATION AS IF IT WAS ALSO PRODUCED IN *LE* LITIGATION (ECF NO. 885)**

### E. Zuffa Failed to Comply with the Local Rules in Seeking to Reopen Discovery

In addition to the requirements of Fed. R. Civ. P. 16(b) and the case law discussed herein, a request for reopening discovery in this District must also comply with Local Rule 26-3. *See Thorne v. Singer*, 2007 WL 9734135 (D. Nev. Oct. 3, 2007). Local Rule 26-3 requires movants seeking to reopen discovery to include: (a) a statement specifying the discovery completed; (b) a specific description of the discovery that remains to be completed; (c) the reasons why discovery remaining was not completed; and (d) a proposed schedule for completing the remaining discovery. As set forth above, Zuffa's Reopen Motion fails to provide a sufficiently specific description of the discovery it seeks to complete, does not provide any reason that it waited for nearly three years after learning of the Court's decision on class certification before moving to reopen, and provides only a vague and unrealistic four-to-six month timeline for additional discovery without proposing a specific schedule—let alone one consistent with the April 2024 trial date. Zuffa did not comply with Local Rule 26-3.

### CONCLUSION

For the foregoing reasons, Zuffa's Motions should be denied.

Case Nos.: 2:15-cv-1045; 2:21-cv-01189

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT ZUFFA'S MOTION TO REOPEN DISCOVERY (ECF NO. 884) AND MOTION TO TREAT FACT EVIDENCE PRODUCED IN *JOHNSON* LITIGATION AS IF IT WAS ALSO PRODUCED IN *LE* LITIGATION (ECF NO. 885)**

DATED: November 13, 2023                       Respectfully submitted,

                                               By:     /s/ Eric L. Cramer
                                                       Eric L. Cramer

                                               Eric L. Cramer (admitted pro hac vice)
                                               Michael Dell'Angelo (admitted pro hac vice)
                                               Patrick F. Madden (admitted pro hac vice)
                                               Najah Jacobs (admitted pro hac vice)
                                               BERGER MONTAGUE PC
                                               1818 Market St., Suite 3600
                                               Philadelphia, PA 19103
                                               Telephone: +1 (215) 875-3000
                                               Email: ecramer@bm.net
                                               Email: mdellangelo@bm.net
                                               Email: pmadden@bm.net
                                               Email: njacobs@bm.net

                                               Joshua P. Davis (admitted pro hac vice)
                                               BERGER MONTAGUE PC
                                               505 Montgomery Street, Suite 625
                                               San Francisco, CA 94111
                                               Telephone: +1 (415) 906-0684
                                               Email: jdavis@bm.net

                                               Richard A. Koffman (pro hac vice)
                                               Benjamin Brown (pro hac vice)
                                               Daniel Silverman (pro hac vice forthcoming)
                                               COHEN MILSTEIN SELLERS & TOLL PLLC
                                               1100 New York Ave., N.W., Suite 500 East, Tower
                                               Washington, DC 20005
                                               Telephone: +1 (202) 408-4600
                                               Facsimile: +1 (202) 408-4699
                                               Email: rkoffman@cohenmilstein.com
                                               Email: bbrown@cohenmilstein.com
                                               Email: dsilverman@cohenmilstein.com

                                               Joseph R. Saveri (pro hac vice)
                                               Kevin E. Rayhill (pro hac vice)
                                               JOSEPH SAVERI LAW FIRM, INC.
                                               601 California St., Suite 1000
                                               San Francisco, CA 94108
                                               Telephone: +1 (415) 500-6800
                                               Facsimile: +1 (415) 395-9940
                                               Email: jsaveri@saverilawfirm.com
                                               Email: krayhill@saverilawfirm.com

                                               *Co-Lead Counsel for the Le Class and Attorneys
                                               for Individual and Representative Plaintiffs*

Case Nos.: 2:15-cv-1045; 2:21-cv-01189

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT ZUFFA'S MOTION TO
REOPEN DISCOVERY (ECF NO. 884) AND MOTION TO TREAT FACT EVIDENCE
PRODUCED IN *JOHNSON* LITIGATION AS IF IT WAS ALSO PRODUCED IN *LE*
LITIGATION (ECF NO. 885)**

Don Springmeyer (Bar No. 1021)
KEMP JONES, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
Telephone: + 1 (702) 385-6000
Facsimile: + 1 (702) 385-6001
Email: dspringmeyer@kempjones.com

*Liaison Counsel for the Le Class and Attorneys
for Individual and Representative Plaintiffs*

Robert C. Maysey (pro hac vice)
Jerome K. Elwell (pro hac vice)
WARNER ANGLE HALLAM JACKSON
& FORMANEK PLC
2555 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Telephone: +1 (602) 264-7101
Facsimile: +1 (602) 234-0419
Email: rmaysey@warnerangle.com
Email: jelwell@warnerangle.com

*Counsel for the Le Class and Attorneys
for Individual and Representative Plaintiffs.*

Case Nos.: 2:15-cv-1045; 2:21-cv-01189

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT ZUFFA'S MOTION TO
REOPEN DISCOVERY (ECF NO. 884) AND MOTION TO TREAT FACT EVIDENCE
PRODUCED IN *JOHNSON* LITIGATION AS IF IT WAS ALSO PRODUCED IN *LE*
LITIGATION (ECF NO. 885)**

1

**CERTIFICATE OF SERVICE**

2    I hereby certify that on this 13th day of November, 2023 a true and correct copy of

3    **PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT ZUFFA'S MOTION TO**

4    **REOPEN DISCOVERY (ECF No. 884) AND MOTION TO TREAT FACT EVIDENCE**

5    **PRODUCED IN *JOHNSON* LITIGATION AS IF IT WAS ALSO PRODUCED IN *LE***

6    **LITIGATION (ECF No. 885)** and supporting papers was served via the District Court of

7    Nevada's ECF system to all counsel of record who have enrolled in this ECF system.

8

9                    By:___*/s/ Eric L. Cramer*_____
10                         Eric L. Cramer

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                    33

28

Case Nos.: 2:15-cv-1045; 2:21-cv-01189

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANT ZUFFA'S MOTION TO REOPEN DISCOVERY (ECF NO. 884) AND MOTION TO TREAT FACT EVIDENCE PRODUCED IN *JOHNSON* LITIGATION AS IF IT WAS ALSO PRODUCED IN *LE* LITIGATION (ECF NO. 885)**