1   WILLIAM A. ISAACSON (*Pro hac vice*)       CHRISTOPHER S. YATES (*Pro hac vice*)
    wisaacson@paulweiss.com                     chris.yates@lw.com
2   JESSICA PHILLIPS (*Pro hac vice*)           LATHAM & WATKINS LLP
    jphillips@paulweiss.com                     505 Montgomery Street, Suite 2000
3   PAUL, WEISS, RIFKIND, WHARTON &             San Francisco, CA 94111
4   GARRISON LLP
    2001 K Street, NW                           SEAN M. BERKOWITZ (*Pro hac vice*)
5   Washington, DC 20006                        sean.berkowitz@lw.com
                                                LATHAM & WATKINS LLP
6   DONALD J. CAMPBELL (No. 1216)               330 North Wabash Ave, Suite 2800
7   djc@campbellandwilliams.com                 Chicago, IL 60611
    J. COLBY WILLIAMS (No. 5549)
8   jcw@campbellandwilliams.com                 LAURA R. WASHINGTON (*Pro hac vice*)
    CAMPBELL & WILLIAMS                         laura.washington@lw.com
9   700 South 7th Street                        LATHAM & WATKINS LLP
    Las Vegas, NV 89101                         10250 Constellation Blvd, Suite 1100
10                                              Los Angeles, CA 90067

11

12                                              *Attorneys for Defendants Zuffa, LLC and*
                                                *Endeavor Group Holdings, Inc.*

13                         UNITED STATES DISTRICT COURT

14                              DISTRICT OF NEVADA

15  Cung Le, Nathan Quarry, Jon Fitch, Brandon
    Vera, Luis Javier Vazquez, and Kyle
16  Kingsbury, on behalf of themselves and all
    others similarly situated,
17                                              No. 2:15-cv-01045-RFB-BNW
                    Plaintiffs,
18
                    v.                          **DEFENDANTS' CONSOLIDATED REPLY**
19                                              **IN SUPPORT OF MOTION TO REOPEN**
    Zuffa, LLC (d/b/a Ultimate Fighting         **DISCOVERY AND MOTION TO TREAT**
20  Championship and UFC),                      **FACT EVIDENCE PRODUCED IN**
                                                ***JOHNSON* LITIGATION AS IF IT WAS**
21                  Defendant.                  **ALSO PRODUCED IN *LE* LITIGATION**
22  Kajan Johnson and Clarence Dollaway, on
    behalf of themselves and all others similarly
23  situated,
                                                No. 2:21-cv-01189-RFB-BNW
24                  Plaintiffs,

25                  v.

26  Zuffa, LLC (d/b/a Ultimate Fighting
    Championship and UFC), and Endeavor
27  Group Holdings, Inc.,

28                  Defendants.

1

# CONTENTS

2

Page

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT .................................................................................................................... 3

I.   Zuffa Has Been Diligently Pursuing This Discovery For Years, While
     Plaintiffs Sought To Run Out The Clock............................................................... 3

II.  The Discovery Can Be Gathered Quickly, And Will Cause No Material
     Delay To Trial........................................................................................................ 6

III. Plaintiffs Cannot Show Any Legitimate Prejudice .............................................. 7

IV.  Excluding This Critical, Relevant Evidence Would Harm Zuffa ....................... 9

V.   Zuffa Easily Satisfies The Standard For This Temporary Discovery
     Reopening ........................................................................................................... 14

VI.  Treating Discovery In *Johnson* As Produced In *Le* Is A Bare Minimum
     Requirement ....................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re 3M Combat Arms Earplug Prod. Liab. Litigation*,
  2021 WL 6327373 (N.D. Fla. Oct. 20, 2021) ...................................................6

*Aerotec Int'l v. Honeywell Int'l*,
  836 F.3d 1171 (9th Cir. 2016) ...............................................................14

*Arizona State Carpenters Pension Trust Fund v. Miller*,
  938 F.2d 1038 (9th Cir. 1991) ...............................................................9

*BGC Partners, Inc. v. Avison Young (Canada) Inc.*,
  2017 WL 3468557 (D. Nev. Aug. 11, 2017) ..............................................15

*Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr.*,
  490 F.3d 718 (9th Cir. 2007) ...............................................................8

*Borough of Lansdale v. Philadelphia Electric Co.*,
  692 F.2d 307 (3d Cir. 1982).................................................................12

*City of Pomona v. SQM North America Corp.*,
  866 F.3d 1060 (9th Cir. 2017) ..........................................................6, 14

*Clinton v. Jones*,
  520 U.S. 681 (1997)...........................................................................8

*Conrad v. Jimmy John's Franchise*,
  2021 WL 718320 (S.D. Ill. Feb. 24, 2021) ...............................................12

*Cornwell Quality Tools Co. v. C.T.S. Co.*,
  446 F.2d 825 (9th Cir. 1971) ...............................................................10

*Cornwell v. Electra Cent. Credit Union*,
  439 F.3d 1018 (9th Cir. 2006) ..............................................................6

*Davis v. Nationstar Mortgage*,
  2016 WL 7178466 (E.D. Cal. Dec. 9, 2016) ..............................................9

*ESG Capital Partners LP v. Stratos*,
  22 F. Supp. 3d 1042 (C.D. Cal. 2014) .....................................................8

*Fidelity National Financial v. National Union Fire Ins. Co. of Pittsburgh*,
  308 F.R.D. 649 (S.D. Cal. 2015) ............................................................6

*Foltz v. State Farm Mut. Auto Ins. Co.*,
  331 F.3d 1122 (9th Cir. 2003) ..............................................................15

*FTC v. Surescripts, LLC*,
   2023 WL 2707866 (D.D.C. Mar. 30, 2023).................................................................12

*Geneva Pharms. Tech. Corp. v. Barr Labs.*,
   2005 WL 2132438 (S.D.N.Y. Sept. 6, 2005)...................................................1, 10, 12

*In re Google Play Store Antitrust Litigation*,
   2023 WL 5532128 (N.D. Cal. Aug. 28, 2023) ...........................................................12

*Largan Precision Co., Ltd. v. Genius Elec. Optical Co., Ltd.*,
   2015 WL 1940200 (N.D. Cal. Apr. 29, 2015) .............................................................9

*Liberty Mut. Ins. Co. v. Tetra Tech, Inc.*,
   2015 WL 13917662 (C.D. Cal. Sept. 8, 2015) .............................................................8

*Lucey v. SWN Prod. Co., LLC*,
   2018 WL 10811476 (N.D.W. Va. Nov. 1, 2018)..........................................................6

*In re MacBook Keyboard Litigation*,
   2021 WL 1250378 (N.D. Cal. Apr. 5, 2021) ..............................................................12

*In re Mid-Atl. Toyota Antitrust Litigation*,
   92 F.R.D. 358 (D. Md. 1981)........................................................................................8

*Morrison-Knudsen Co., Inc. v. Archer*,
   655 F.2d 962 (9th Cir. 1981) ........................................................................................9

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir. 2022) ......................................................................................11

*Pac. Coast. Agric. Export Ass'n v. Sunkist Growers, Inc.*,
   526 F.2d 1196 (9th Cir. 1975) ...................................................................................12

*Rebel Oil Co. v. Atlantic Richfield Co.*,
   51 F.3d 1421 (9th Cir. 1995) .....................................................................................12

*Slagowski v. Cent. Washington Asphalt*,
   291 F.R.D. 563 (D. Nev. 2013)....................................................................................7

*Sw. Marine, Inc. v. Triple A Mach. Shop, Inc.*,
   720 F. Supp. 805 (N.D. Cal. 1989) ..............................................................................8

*Swearingen v. Amazon.com Servs.*,
   2021 WL 602711 (D. Or. Feb. 16, 2021).....................................................................8

*Talkin v. Deluxe Corp.*,
   2006 WL 2588143 (D. Kan. Sept. 8, 2006) ..................................................................6

*Transp. Techs., LLC v. L.A. Cnty. Metro. Transp. Auth.*,
   2016 WL 7444679 (C.D. Cal. July 22, 2016) ..............................................................7

iii

*United States v. Syufy Enters.*,
  903 F.2d 659 (9th Cir. 1990) ...................................................................................12

*Valencia Mgmt. LLC Series 4 v. NewRez LLC*,
  2022 WL 9398930 (D. Nev. Oct. 14, 2022) ...............................................................9

*Vargas v. Cty. of Los Angeles*,
  2019 WL 6655269 (C.D. Cal. July 10, 2019) .............................................................8

*Wood v. GCC Bend, LLC*,
  422 F.3d 873 (9th Cir. 2005) .....................................................................................9

**RULES**

Fed. R. Civ. P. 54(b) .....................................................................................................8, 9

Local Rule 26.3 ..............................................................................................................15

**PRELIMINARY STATEMENT**

Plaintiffs' Opposition is based on a false narrative: that Defendant Zuffa, LLC "sat on its hands" and "strategically" delayed seeking additional discovery in the *Le* case until August 2023. In reality, Zuffa has been moving for additional discovery about competitive developments *for years*. In 2021, 2022, and to the present, Zuffa has repeatedly alerted the Court to its need for this discovery and pushed to obtain it, including urging in January 2022 that the Court "set a discovery schedule to allow for discovery, applicable to both actions, to update the record for the events following mid-2017," and that this "discovery should proceed promptly." Johnson Dkt. 51 at 3, 9.[1]

Plaintiffs' Opposition confirms that "[h]ad Zuffa instead sought to take this discovery in early 2021, it would have imposed no delay or other prejudice on Plaintiffs." Dkt. 914 at 14 ("Opp'n"). **That is exactly what Zuffa did—**even though Plaintiffs now contend otherwise. In 2021, and every time Defendants have raised the issue since, **plaintiffs argued** that the *Le* case should proceed "**without additional discovery**." Johnson Dkt. 51 at 7. Plaintiffs even moved to *stay* the *Johnson* case soon after filing it when Zuffa sought to begin discovery that could have been used at a trial in *Le*. *Id.* at 6-7. Plaintiffs convinced the Court not to allow discovery in either *Johnson* or *Le*—and so no discovery has been taken since *Johnson* was filed. Plaintiffs are to blame for any delay, not Zuffa.

Zuffa's prolonged efforts to obtain this evidence (and plaintiffs' efforts to oppose it) reflect how critically relevant it is. Plaintiffs admit the evidence is relevant to injunctive relief and "supplemental discovery will be necessary for the *Le* Plaintiffs' injunctive relief," Opp'n at 8 n.7, but they try to evade the evidence in the liability trial. Plaintiffs have only one count of monopsonization that constitutes one claim for relief in *Le*. They cite to no case—not one—that says a court can exclude current market conditions in a monopsony (or monopoly) trial, and Zuffa has cited *many* showing the relevance of that evidence to liability, including monopoly power. *See, e.g.*, Def.'s Mot. to Reopen Disc. at 8-14, Dkt. 884 ("Mot. to Reopen"). If plaintiffs were correct, then the Court in

---

[1] Unless otherwise noted, citations to "Dkt." refer to the *Le* Action, Case No. 15-cv-1045, and citations to "Johnson Dkt." refer to the *Johnson* Action, Case No. 21-cv-01189. With respect to quoted material, unless otherwise indicated, all brackets, ellipses, footnote call numbers, internal quotations, and citations have been omitted for readability. All emphasis is added unless otherwise indicated.

1   *Geneva Pharmaceuticals* would not have allowed discovery into market conditions in 2005 as

2   relevant to conduct seven years earlier.  2005 WL 2132438 (S.D.N.Y. Sept. 6, 2005).

3          The evidence available on competitor entry and expansion is overwhelming—and confirms

4   that discovery should be reopened.  Plaintiffs' response is circular:  that Dr. Singer presented market-

5   share measures at class certification "capable" of showing power through "common evidence," the

6   jury will accept his testimony, and, thus, no other evidence of monopsony power is relevant.  Opp'n

7   at 16-19.  This argument has many flaws, not least of which is the assumption that a jury will accept

8   measures from Dr. Singer that bear no resemblance to actual market shares and are refuted by Zuffa's

9   expert economist.  Dr. Singer is chronically unreliable; three courts *just since the class certification*

10  *hearing* have excluded his analyses from reaching the jury because of their flaws.  *Infra* n.12.  The

11  jury is the factfinder—not plaintiffs' expert—and the jury should receive <u>current</u> facts on these issues.

12         Plaintiffs' attempts to discredit the evidence before proper discovery have nothing to do with

13  relevance, and are wrong in any event.  Plaintiffs claim there has been no entry since 2017.  Wrong.

14  They concede ONE Championship ("ONE") held its "first event in the United States" after that date,

15  Opp'n at 24, and ONE's founder said that "is just the very tip of the iceberg" and that ONE has "the

16  potential to dominate combat sports, not just in the U.S., but globally."  *See infra* n.13.  And plaintiffs

17  overlook that Professional Fighters League ("PFL") "[f]ive years ago [had] zero fighters, zero

18  employees and zero viewers," but "[i]n just five years, [PFL] gained this market position and this fan

19  following and have become the preferred destination for top fighters in the world," according to PFL's

20  founder.  *See infra* n.14.  Plaintiffs argue, citing an employee of Zuffa's parent company, that UFC

21  does not view these competitors as viable.  Wrong again.  In its SEC filings, Zuffa's parent describes

22  the market as "highly competitive, rapidly changing, and increasingly fragmented," and includes

23  "competition from alternative providers of content" including Bellator, PFL, ONE Championship,

24  and many others.  TKO, Form 10-Q at 49 (Nov. 7, 2023).  On the same investor call from which

25  plaintiffs cherry-pick, Opp'n at 2, the CEO of Zuffa's parent company's stated that "MMA is probably

26  the fastest growing sport and we're encouraged by the increased interest and rising tides lifts all boats

27  in my opinion.  So we don't see this as a zero-sum game."  The trial in this case cannot pretend the

28  growth, including the growth of competitors, has not happened.

1   Finally, there will be no prejudice to plaintiffs here.  The discovery can be completed in the

2   time requested.  Counsel in this case did it just last year in the lead-up to an antitrust merger trial in

3   Delaware federal court.  And, in any event, plaintiffs' core claim of prejudice from a potentially

4   delayed money recovery is wrong.  Plaintiffs have only one claim, which will not be fully judged

5   until all forms of requested relief are resolved—because of plaintiffs' insistence on spreading

6   resolution of that claim across two trials, judgment (if any) must await the later trial.  *See infra* § III.

7   As described further below, Zuffa again moves the Court to permit a four-to-six month

8   reopening of discovery into these critically relevant issues of post-2017 competitive developments.

9   <center>**ARGUMENT**</center>

10  **I.   ZUFFA HAS BEEN DILIGENTLY PURSUING THIS DISCOVERY FOR YEARS,**
11  **WHILE PLAINTIFFS SOUGHT TO RUN OUT THE CLOCK**

12  For years, Zuffa raised the need for this discovery and advocated for the Court to give Zuffa

13  an opportunity to collect it.  Plaintiffs, recognizing the damage this evidence would do to their claim,

14  have for *years* sought to delay and prevent access to it.  Plaintiffs' argument that Zuffa "sat on its

15  hands" and "wait[ed] until the last possible moment . . . so as to maximize the potential prejudice to

16  Plaintiffs," is false.  Opp'n at 1, 8, 14.  Those misrepresentations ignore that *plaintiffs* admitted in

17  January 2022 that Zuffa raised this very issue in 2021, and inexplicably omit that plaintiffs' counsel

18  has jousted with Zuffa, in writing and at oral argument, about seeking this discovery in 2021, 2022,

19  and 2023, with plaintiffs arguing not to let it happen.  Here is what plaintiffs' false timeline omits.

20  When the Court indicated in a December 10, 2020 docket entry that it would certify the Bout

21  Class, Dkt. 775, plaintiffs were still pursuing injunctive relief as a class and there had been no

22  separation of trials on damages and injunctive relief.  *See* Reply in Supp. of Pls.' Mot. for Class Cert.

23  at 25, Dkt. 554.  But any pursuit of injunctive relief then would have required updated discovery, just

24  as plaintiffs now do "not dispute that some supplemental discovery will be necessary for the *Le*

25  Plaintiffs' injunctive relief claim."  Opp'n at 8 n.7.  So with potential injunctive claims still alive, the

26  expectation was that discovery would reopen when the class certification ruling was issued (as

27  plaintiffs still argue is necessary for their injunctive claims).  But Zuffa did not wait around for that

28  decision to request additional discovery.

<center>3</center>

In June 2021, plaintiffs filed their complaint in *Johnson*, which set-off a flurry of briefing and oral argument by Zuffa requesting that the exact discovery it seeks now should "proceed promptly" and "on an expedited basis."  Disc. Plan at 3, 11, Johnson Dkt. 51.  First, in its September 10, 2021 motion to dismiss, Zuffa argued that "to avoid duplication of discovery efforts," the *Johnson* case (if not dismissed), should be consolidated with *Le*.  Johnson Dkt. 17 at 16 & n.12.  Reraising the argument in its reply brief, Zuffa again notified the Court that "complete resolution of *Le* will require this Court to consider additional evidence and testimony over the last four years," and Zuffa offered to "outline a proposed schedule in Defendants' forthcoming motion for consolidation, if necessary." Johnson Dkt. 48 at 12 n.9.  Zuffa did that at the next opportunity—in the parties' proposed discovery plan (Johnson Dkt. 51)—where Zuffa argued, repeatedly for this discovery, including:

- "The two actions should be consolidated and discovery should proceed promptly in this action, as well as to bring the discovery in *Le* current." *Id.* at 3.

- "[T]he Court should consolidate this action with *Le* under Rule 42(a) and set a discovery schedule to allow for discovery, applicable in both actions, to update the record for the events following mid-2017 . . . ." *Id.* at 9.

- "[U]pdated discovery is required in *Le* . . . ." *Id.*

Inexplicably, plaintiffs all but ignore those requests by burying them in a footnote and claiming (falsely) that Zuffa did not move to reopen discovery in *Le* at that time.  *See* Opp'n at 7 n.8. But plaintiffs' January 2022 response admitted that "Defendants claim that the competitive landscape has changed significantly" and "**not only have Defendants made such an argument** in their" 2021 motion to dismiss, "**they also have made clear** in meet and confers that they assert additional discovery is necessary before resolution of injunctive relief issues in the *Le* Action as well."  Disc. Plan at 7, Johnson Dkt. 51.

It was *plaintiffs* who delayed this discovery when they opposed Zuffa's requests by arguing that the *Le* case should proceed to trial "**without additional discovery**." *Id.*  To ensure the evidence was not discovered as part of the *Johnson* case—making it available for the *Le* trial—plaintiffs "propose[d] staying the proceedings in this *Johnson* Action." *Id.* at 6.  Ironically, plaintiffs *now* concede that "[h]ad Zuffa instead sought to take this discovery in early 2021, it would have imposed

no delay or other prejudice on Plaintiffs." Opp'n at 14. But when Zuffa did exactly that in 2021 and early 2022, plaintiffs vehemently sought to prevent it from happening.

Plaintiffs' refusal to acknowledge Zuffa's early efforts to obtain this discovery well before August 2023 is inexplicable, because the very same attorney that signed plaintiffs' brief argued the issue before the Court in 2022. Days after Zuffa requested new discovery in January 2022, the Court set the issue for a hearing along with Zuffa's motion to dismiss, but because of a "conflict with the Court's calendar," the hearing did not occur until September 2022. Johnson Dkt. 63. At that hearing, Zuffa's counsel argued at length that "competitors have continued to come into the market, continued to grow, continued to succeed," evidence of those events "is fundamental to our defense in the *Le* case," we cannot "pretend that there wasn't competition after the discovery cut-off in 2017," and that necessitated "that we run th[e] discovery together"—meaning open discovery in *Johnson* and *Le*, as Zuffa proposed in its January 2022 discovery plan. Hrg. Tr. at 9, 12-14, Johnson Dkt. 69. Plaintiffs' counsel then argued *against* allowing discovery into "current market dynamics in order to try *Le*," and to instead try the case with a "discovery cut-off in 2017." *Id.* at 18. Had the discovery been allowed to go forward as Zuffa requested in 2021 and January 2022, it would be complete by now.

At the argument, the Court decided to take no action on Zuffa's discovery request, explaining that "I think the Court's order on the class certification in *Le* will drive a lot of what would happen in *Johnson*," stayed the *Johnson* case, and instructed that "defendants of course are free to after the stay is lifted raise some of the same issues with the benefit of whatever may be the decision from the appellate courts with respect to the claims that may or may not remain." *Id.* at 29-31; *see also* Dkt. 68. When the class certification decision arrived, Zuffa followed the Court's instruction and immediately re-raised the need for discovery in *Le* (again), and has been advocating for that discovery consistently since August 2023—facing opposition from plaintiffs at every turn. *See, e.g.*, Dkts. 843, 846, 847, 884, 885. Plaintiffs accuse Zuffa of "strategic behavior" and delay for following the Court's September 2022 instruction to wait for the class certification opinion to reraise the issue, Opp'n at 2, 14-15, but it has been plaintiffs who have schemed for a tactical advantage by opposing this discovery in 2021, 2022, and since August 2023. Their argument that the clock has now run out—when they encouraged the Court to stay or deny this discovery for years—is disingenuous and should be rejected.

1   The cases that plaintiffs cite are an afterthought to their revisionist tale of events and have no

2   bearing on Zuffa's request.[2]  The appropriate thing for Zuffa to do was to "alert" the Court of the need

3   for further discovery after resolution of the pending motion so that the court could manage the case

4   accordingly, and Zuffa has gone above and beyond that requirement for years.  *Fidelity Nat'l Fin.,*

5   *Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 308 F.R.D. 649, 653 (S.D. Cal. 2015).  The setting of

6   a potential trial date cannot weigh against obtaining this discovery when any time-crunch is not of

7   Zuffa's making.  *See City of Pomona v. SQM N. Am.*, 866 F.3d 1060, 1066 (9th Cir. 2017) (abuse of

8   discretion to deny discovery due to potential "to delay trial [that] was of the district court's own

9   making").

10  ## II.   THE DISCOVERY CAN BE GATHERED QUICKLY, AND WILL CAUSE NO MATERIAL DELAY TO TRIAL

11

12         Zuffa has requested four to six months to complete the discovery necessary for the *Le* case to

13  proceed to a trial on damages and liability, and is committed to completing the discovery in that time.

14  The backbone of plaintiffs' argument—littered throughout their brief and the source of their only

15  claim of prejudice (addressed below)—is that this timeline "is not realistic" and the discovery "could

16  not possibly be 'limited' or 'targeted.'"  Opp'n at 1, 5, 11, 25.  They present a parade of possible

17  discovery burdens, citing only their own expert, including a need to, "at minimum, require production

18  and detailed evaluation" of every single fighter contract post-2017.  *Id.* at 26.  However, plaintiffs

19  themselves previously represented to the Court that the entire scope of discovery they needed to

20  litigate the whole *Johnson* case would amount to "some *limited* discovery," including "updated

21  structured data on fighter compensation;" documents from "a *limited* set of Defendants' custodians

22  and third parties;" "depositions of *certain* of Defendants' corporate representatives;" and "depositions

23  of a *limited* number of current third-party promoters."  Disc. Plan at 11, Johnson Dkt. 51.  Plaintiffs

24  
---

25  [2] The authority plaintiffs principally rely upon in accusing Zuffa of "strategic" choices involved a plaintiff who consciously declined to take relevant discovery *during* fact discovery.  Opp'n at 14

26  (citing *Cornwell v. Electra Cent. Credit Union,* 439 F.3d 1018, 1026 (9th Cir. 2006)).  Many of the other cases they rely upon similarly involve a conscious failure to obtain the relevant discovery *during*

27  the discovery period.  *Id.* at 15 n.14 (citing *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 2021 WL 6327373, at *1 (N.D. Fla. Oct. 20, 2021); *Lucey v. SWN Prod. Co., LLC*, 2018 WL 10811476, at *2 (N.D.W. Va. Nov. 1, 2018); *Talkin v. Deluxe Corp.*, 2006 WL 2588143 (D. Kan. Sept. 8, 2006)).

28  Nothing of the sort happened here.

1    said nothing about a detailed review of every contract.  Somehow, though, when Zuffa asks for even

2    less discovery, plaintiffs decry that "the amount of discovery Zuffa seeks is massive."  Opp'n at 8.

3    　　　Moreover, Zuffa did not arrive at its four-to-six month timeline unrealistically.  When parties

4    are sufficiently motivated, entire antitrust discovery can and has been completed that quickly.  Zuffa's

5    counsel at Latham & Watkins has done it recently.  In an antitrust trial last year over U.S. Sugar's

6    acquisition of Imperial Sugar, the entire fact and expert discovery process was completed in under

7    five months, including 21 non-party depositions, 14 party depositions, and dueling expert economist

8    reports and depositions.  *See* Scheduling Order, *United States v. U.S. Sugar Corp.*, No. 1:21-cv-01644

9    (D. Del. Jan. 7, 2022), Dkt. 70 (fact and expert discovery began on December 22, 2021, and was

10    complete for an April 18, 2022 trial).[3]  This can be done here too.

11    **III.    PLAINTIFFS CANNOT SHOW ANY LEGITIMATE PREJUDICE**

12    　　　Plaintiffs cannot credibly claim prejudice from a four-to-six month discovery period.  Their

13    entire prejudice argument hinges on the trial date moving, even though that date is contingent on the

14    outcome of this (and another) motion.  *See* Dkt. 894 (trial set "if the Court does not grant" pending

15    motions).  If plaintiffs' real concern was to avoid trial delay—rather than dodging evidence—they

16    would not have sought to stop or slow down this discovery when Zuffa requested it in 2021, 2022, or

17    even August 2023.  Any prejudice from a slightly later trial is of plaintiffs' own making.

18    　　　But there is no prejudice.  "Delay alone is not sufficient to establish prejudice."  *Transport*

19    *Techs., LLC v. Los Angeles Cnty. Metro. Transp. Auth.*, 2016 WL 7444679, at *8 (C.D. Cal. July 22,

20    2016).  And plaintiffs' concern about fading memories or disappearing witnesses is unsupported and

21    baseless: "memories will not fade in the next couple months."  *Slagowski v. Central Wash. Asphalt*,

22    291 F.R.D. 563, 573 (D. Nev. 2013).  They have not, and cannot, identify any likelihood of memory-

23    or witness-loss during the requested discovery period, especially since plaintiffs have captured

24

_____

25    [3] *See also* Scheduling Order, *United States v. UnitedHealth Grp. Inc.*, No. 1:22-cv-00481 (D.D.C.
      Mar. 28, 2022), Dkt. 42 (beginning discovery on March 22, 2022, and concluding less than five
26    months later before August 1, 2022 trial start date); Scheduling Orders, *United States v. Bertlesmann*,
      No. 1:21-cv-02886 (D.D.C.), Dkts. 53, 69 (fact and expert discovery in antitrust merger trial
27    completed in under seven months).  The cases *United Health*, *U.S. Sugar*, and *Bertlesmann* were
      antitrust merger trials, where the parties have an incentive to pursue discovery quickly because their
28    merger agreements typically contain outside dates for completion.

DEFS.' REPLY RE REOPENING DISC. AND USE OF DISC.          NOS. 15-CV-01045-RFB; 21-CV-01189-RFB

witnesses' memories through depositions and could issue trial subpoenas to secure any witness at risk of moving (they have identified no such witness).[4]  That distinguishes this request from cases plaintiffs cite, which involved staying a case before discovery began,[5] and requests for "indefinite"[6] stays with "unclear"[7] timelines, often contingent on the indeterminable or "unspecified"[8] termination of other lawsuits.  The cases plaintiffs cite instead resemble the prejudice plaintiffs *advocated for* when they "propose[d] staying the proceedings in th[e] *Johnson* Action . . . until after the *Le* jury trial."  Disc. Plan at 6, Johnson Dkt. 51.

Other than hoping to avoid the evidence of thriving competition, plaintiffs' actual motivation to rush to trial is based on a misbelief that they might recover a money judgment sooner.  Opp'n at 27-28.  First, "[a] delay in recovering monetary damages is not sufficient harm to warrant denying a stay."  *Swearingen v. Amazon.com Servs.*, 2021 WL 602711, at *2 (D. Or. Feb. 16, 2021); *see also Liberty Mut. Ins. Co. v. Tetra Tech, Inc.*, 2015 WL 13917662, at *8 (C.D. Cal. Sept. 8, 2015).  Second, because plaintiffs have spread their one count and one claim for relief across two trials, any money judgment could not be awarded until after the later trial concludes.  *See* Mot. to Reopen at 16-17.  Plaintiffs argue that the two *forms* of relief they seek could be separate "claims" by arguing that liability and damages might "turn, *in part*, on different evidence" or rely on "*some* different forms of proof."  Opp'n at 28.  Plaintiffs are wrong on the law, and fail to support their own vague description of factual differences.

Plaintiffs do not cite any case holding that a single count for damages and injunctive relief constitutes two *claims* for purposes of obtaining a partial final judgment under Federal Rule of Civil

---

[4] The one witness that plaintiffs claim has "moved out of the District," Joe Silva, ceased working for Zuffa in 2016, prior to the close of fact discovery.  *See* Opp'n at 27.  He was deposed in June 2017.

[5] *See, e.g.*, *Clinton v. Jones*, 520 U.S. 681, 707-708 (1997); *ESG Capital Partners LP v. Stratos*, 22 F. Supp. 3d 1042, 1046 (C.D. Cal. 2014); *Southwest Marine, Inc. v. Triple A Mach. Shop, Inc.*, 720 F. Supp. 805, 809 (N.D. Cal. 1989); *Vargas v. Cty. of Los Angeles*, 2019 WL 6655269, at *3 (C.D. Cal. July 10, 2019); *Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr.*, 490 F.3d 718, 724 (9th Cir. 2007) .

[6] *Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr.*, 490 F.3d 718, 723-25 (9th Cir. 2007); *Sw. Marine, Inc. v. Triple A Mach. Shop, Inc.*, 720 F. Supp. 805, 809 (N.D. Cal. 1989).

[7] *Vargas v. Cty. of Los Angeles*, 2019 WL 6655269, at *3 (C.D. Cal. July 10, 2019).

[8] *In re Mid-Atlantic Toyota Antitrust Litig.*, 92 F.R.D. 358, 359 (D. Md. 1981).

Procedure 54(b). And the caselaw is squarely against them, as courts in the Ninth Circuit have continually held that "injunctive relief is a remedy that derives from the underlying claims, not an independent claim." *Davis v. Nationstar Mortg.*, 2016 WL 7178466, at *9 (E.D. Cal. Dec. 9, 2016) (collecting cases); *Valencia Mgmt. LLC Series 4 v. NewRez LLC*, 2022 WL 9398930, at *3 (D. Nev. Oct. 14, 2022) ("Injunctive relief is a remedy, not a separate claim."). This principle applies equally under Rule 54(b). *See Largan Precision Co., Ltd. v. Genius Elec. Optical Co., Ltd.*, 2015 WL 1940200, at *2 (N.D. Cal. Apr. 29, 2015). When a plaintiff asserts "only one legal right, even if seeking multiple remedies for the alleged violation of that right, [that] states a single claim for relief." *Arizona State Carpenters Pension Tr. Fund v. Miller*, 938 F.2d 1038, 1040 (9th Cir. 1991).

Likewise, plaintiffs' assertion that the requests for relief are based on sufficiently different facts to constitute two claims under Rule 54(b) is unbelievable. It requires only a "similarity of legal or factual issues" to "weigh heavily against entry of judgment" under Rule 54(b). *Morrison-Knudsen Co., Inc. v. Archer*, 655 F.2d 962, 965 (9th Cir. 1981); *see also Wood v. GCC Bend, LLC*, 422 F.3d 873, 882 (9th Cir. 2005) (reversing district court's Rule 54(b) certification and cautioning that "[w]e cannot afford the luxury of reviewing the same set of facts in a routing case more than once without a seriously important reason"). Plaintiffs' jawing about "some different forms of proof" or differences "in part" does not even attempt to argue that there is no "similarity" of legal or factual issues supporting the damages and injunctive relief. Opp'n at 28.[9] Plaintiffs have neither law nor facts to support any argument for obtaining a partial Rule 54(b) judgment when they voluntarily advocated to spread their single claim across two trials (over Defendants' continuing objection). Neither that argument, nor their self-inflicted claim of delay is cause to refuse to open discovery as requested.

## IV.    EXCLUDING THIS CRITICAL, RELEVANT EVIDENCE WOULD HARM ZUFFA

The evidence Zuffa is seeking to discover is of competitors entering, growing, and competing vigorously with Zuffa in the six years after fact discovery closed in July 2017. As the motion

---

[9] All of the concrete examples of factual differences between the *Le* and post-*Le* class periods they cite will be at issue in the *Le* damages trial, including: "Joe Silva has retired" (happened in 2016); "UFC is under new ownership" (again, 2016); and "Zuffa's acquisitions will be different" (last challenged acquisition was in 2011). And the proliferation of competitors post-*Le* should be at issue in the *Le* trial as well. *See infra* § IV.

9

1   established, evidence of this kind is important proof of (1) whether Zuffa's market position during

2   the class period was "durable," meaning competitors were barred from entering the market or lacked

3   the capacity to expand because of barriers to entry; and (2) whether Zuffa's claimed market position

4   during the class period is attributable to Zuffa's contracts, or some first-mover status or innocuous

5   cause.  Zuffa presented numerous cases showing that exact type of evidence is relevant to the essential

6   elements of monopsony power and anticompetitive conduct, even when the evidence post-dates the

7   class period or alleged conduct period, because "the time period for analyzing the ability of a

8   competitor to enter the marketplace . . . is not tied to the date of defendant's alleged wrongful

9   conduct."  *Geneva Pharms. Tech. v. Barr Labs.*, 2005 WL 2132438, at *6 (S.D.N.Y. Sept. 6, 2005)

10  (considering entry five to seven years after alleged conduct); *Cornwell Quality Tools Co. v. C.T.S.*

11  *Co.*, 446 F.2d 825, 833 (9th Cir. 1971) ("evidence of any activity of [an alleged monopolist] that may

12  reflect upon its market position . . . is admissible, regardless of when it occurred"); Mot. to Reopen

13  at 9-14 (citing cases).

14          Plaintiffs do nothing to refute the relevance of this evidence.  Instead, plaintiffs present flawed

15  arguments that (1) mischaracterize the class certification standard; (2) attempt to prejudge the weight

16  of the evidence (in their favor, naturally); (3) misstate the law on monopsony power; (4) fight Zuffa

17  on the substance of the discovery that has not yet occurred; and (5) misquote Zuffa's position.  Before

18  getting to the arguments plaintiffs make, it is important to acknowledge one they omit, which is

19  dispositive of the relevance inquiry.  Plaintiffs do not dispute that, if material parts of Zuffa's contract

20  practices continued beyond the class period, then more recent evidence of rival promoters obtaining

21  fighters is relevant to the contracts' competitive effect during the class period.  *See* Mot. to Reopen

22  at 11-14.  Instead of disputing that relevance, plaintiffs just argue that this "natural experiment"

23  requires showing that the contracts "were similar in material respects as between the two periods,"

24  Opp'n at 5-6, 18 n.16, 26, which is what plaintiffs have alleged occurred.[10]  This concession, backed

25

26

---

27  [10] Compl. ¶ 101, Johnson Dkt. 1 ("The UFC's standard agreements with Fighters have contained, during the 2000s and continuing into the Class Period . . . .");  Opp'n to Mot. to Dismiss at 3, Johnson

28  Dkt. 41 ("Plaintiffs allege that all three strands continue to the present—the Contracts; the Acquisitions; and the Coercion . . . .").

1   with plaintiffs' insistences (when it suits them) that the contracts have continued, is dispositive of

2   relevance, regardless of their other arguments.[11]  But those arguments fail too.

3           Plaintiffs first argue the Court "found" at class certification that "Plaintiffs have amassed

4   common evidence capable of establishing each element of Plaintiffs' Section 2 claim," and thus "no

5   evidence from the post-Class Period could possibly undermine that showing."  Opp'n at 16-19.  That

6   is wrong, and an improper invitation to *weigh* the evidence rather than determine its relevance.  The

7   Court's class certification decision could not, and did not, establish any fact for purposes of trial, let

8   alone some irrebuttable one, because the question for the Court was whether plaintiffs' model was

9   *capable* of proving a claim on a class-wide basis—*i.e.* whether use of the methodology would give

10  rise to individualized issues that would overwhelm common ones.  *See Olean Wholesale Grocery*

11  *Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 667 (9th Cir. 2022).  The Court's order granting

12  class certification made this clear, explaining that "its findings in this order are not meant to be

13  dispositive as to any factual dispute beyond class certification."  Dkt. 839 at 21 n.21.

14          Indeed, plaintiffs elsewhere concede that their entire argument is circular, reasoning that "*if*

15  *Plaintiffs succeed* in demonstrating to the jury what the Court has already found their evidence shows

16  (for class certification purposes), then no evidence from the post-Class Period could possibly

17  undermine that showing."  Opp'n at 18; *see also id.* at 16.  This is nonsensical.  The jury is entitled

18  to consider the full range of relevant evidence in determining what testimony to credit and which facts

19  to find.  Plaintiffs cannot simply assume that the jury will find in their favor to brush away competing

20  evidence, especially when the evidence of monopsony power plaintiffs contend is compelling comes

21  from an expert (Dr. Singer) whose market share measurements have been shown to be inflated and

22  unsupportable—and Dr. Singer has been precluded from testifying due to similarly flawed analyses

23  at least three times since he testified at the class certification hearing.[12]

24

25

---

26  [11] Plaintiffs argue in a footnote that the "best natural experiment" is Dr. Singer's regression.  Opp'n at 18 n.16.  But that presupposes that Dr. Singer is correct—and in any event goes only to weight.

27  [12] *See Conrad v. Jimmy John's Franchise*, 2021 WL 718320, at *16–19 (S.D. Ill. Feb. 24, 2021); *In re MacBook Keyboard Lit.*, 2021 WL 1250378, at *5 (N.D. Cal. Apr. 5, 2021); *In re Google Play*

28  *Store Antitrust Litigation*, 2023 WL 5532128 (N.D. Cal. Aug. 28, 2023).

1    Next, plaintiffs misstate the law on monopsony power by arguing that their expert's opinion

2    on market share during the class period cannot be overcome with post-class-period evidence of

3    competitor entry or success.  Opp'n at 16-18.  But as a matter of law, a showing of "dominant market

4    share" cannot on its own "establish market power," because plaintiffs must also "show that new rivals

5    are barred from entering the market and show that existing competitors lack the capacity to expand"

6    to challenge the dominant firm.  *Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1439 (9th Cir.

7    1995); *United States v. Syufy Enters.*, 903 F.2d 659, 665-66 (9th Cir. 1990).  That is exactly what this

8    new discovery is about, and Zuffa has cited numerous cases showing that discovery is relevant even

9    from after the period of relevant conduct.  In *Geneva Pharmaceuticals*, for example, the court looked

10   at entry *five to seven years* after the alleged conduct in evaluating market power.  2005 WL 2132438,

11   at *6.  And in *Borough of Lansdale v. Philadelphia Electric Co.*, 692 F.2d 307 (3d Cir. 1982), the

12   court found that, despite plaintiff's trial evidence that the defendant had "near-total control" of

13   transmission lines, the jury's finding of no monopoly power was supported by proof that a competing

14   transmission line "could have been constructed in as little as 14 to 16 months."  *Id.* at 313.

15   Plaintiffs nitpick at a fact or two in each case to try to distinguish it, Opp'n at 19 & n.19, but

16   this only confirms that plaintiffs' argument that this evidence is categorically irrelevant is wrong.

17   And the cases they rely upon regarding the market share *capable* of establishing monopoly power do

18   not suggest that a particular market share is *dispositive* of monopsony power and irrebuttable at trial.

19   Opp'n at 17 (citing *Pac. Coast. Agric. Export Ass'n v. Sunkist Growers, Inc.*, 526 F.2d 1196, 1204

20   (9th Cir. 1975); *FTC v. Surescripts, LLC*, 2023 WL 2707866, at *20-21 (D.D.C. Mar. 30, 2023)).

21   Plaintiffs continue their mischaracterization of the role of market shares by arguing that new

22   entry and expansion has been *disproven* by plaintiffs' expert performing a new calculation of his

23   "Headliner" sub-market post-2017 in connection with this motion.  Opp'n at 20 & n.20 (citing Singer

24   Decl. ¶ 14 & Fig. 1).  But this sub-market calculation is nonsense.  It only counts "fighters ranked 1

25   to 15" in a weight class, a tiny fraction of all fighters.  And it then assigns them market shares based

26   on their rank, with the top fighter receiving 30% of a weight class, the number 3 fighter receiving

27   10%, and so on.  This measure is not reflective of any legitimate methodology or the market for

28   fighters needed to sustain an MMA event.  At UFC's two most recent U.S. MMA events, for example,

only 11 of the 48 UFC fighters (or 23%) were ranked in the top 15 of their weight classes by the source that Dr. Singer relies on. So Dr. Singer's purported conclusion that "Zuffa's ranked-weighted share of the Headliner Submarket" has increased says nothing of actual market share. Opp'n at 20. Zuffa is eager for discovery to be reopened so that actual and reliable market share calculations can be performed, alongside the required evidence of competitor expansion and entry.

Fourth, in another argument that has nothing to do with *relevance*, plaintiffs clip from a number of websites, blog posts, and the like to point to the unremarkable fact that UFC employees publicly hype UFC as being better than Bellator, PFL, ONE, and others. Opp'n at 22-25. Of course UFC promotes its own fighters and events as better than others, *that is what fight promoters do*. It is not something unique to UFC, it's how all MMA promoters (and frankly most competitors) speak:

- Chatri Sityodtong, CEO, ONE Championship: "This is just the very tip of the iceberg. I believe that Amazon and ONE, together, have the potential to dominate combat sports, not just in the U.S., but globally."[13]

- Donn Davis, Founder, Chairman, PFL: "[W]e are able to recruit the best fighters . . . . They know that if they win, there's a real path. They're going to be global."[14]

- Scott Coker, CEO, Bellator: "[I]f you go all the way up and down our weight classes, not only do we have fighters that can beat the UFC (fighters), we have fighters that can compete, three or four fighters at each weight class that can compete against any company on the planet."[15]

"Competitors are not required to engage in a lovefest," *Aerotec Int'l v. Honeywell Int'l*, 836 F.3d 1171, 1184 (9th Cir. 2016), and, if anything, the public rivalry between these companies supports the *need* for this discovery, not the opposite.

Lastly, lacking any cases to support an argument that post-class-period evidence is irrelevant, and unable to distinguish the cases Zuffa presented, plaintiffs misrepresent Zuffa's brief in an attempt to score a concession of irrelevance. Citing the *Johnson* Evidence Motion, Dkt. 885, plaintiffs

---

[13] *ONE Championship's Quest to Challenge Rival UFC Through U.S. Expansion*, Front Office Sports (Sept. 25, 2023), www.frontofficesports.com/one-championships-quest-to-challenge-rival-ufc-through-u-s-expansion/.

[14] *Q&A: PFL Boss on Ngannou, Expansion And Taking On UFC*, Al Jazeera (May 25, 2023), www.aljazeera.com/sports/2023/5/25/qa-pfl-boss-on-ngannou-expansion-and-taking-on-the-ufc.

[15] *Bellator Can Beat UFC Champions: CEO Makes Bold Claim After Dominating Rizin*, SportsSkeeda (Jan. 3, 2023), www.sportsskeeda.com/mma/news-bellator-can-beat-ufc-champions-ceo-makes-bold-claim-dominating-rizin.

contend that "Zuffa concedes" that evidence about one class period "cannot be relied upon for an economic analysis about market conditions or the effect of the challenged conduct" during another class period. Opp'n at 5, 6, 26, 29. Plaintiffs reuse this argument *four times*, but it is a non-starter. The defense argument they misquote was that "[r]elying ***only*** on that stale data" alone from *Le* "could not support" an expert opinion about the *Johnson* period, and thus the experts in *Johnson* will need to update their earlier economic analysis. Defs.' Mot. to Treat Fact Evidence Produced in *Johnson* as Produced in *Le* at 10, Dkt. 885. Zuffa never argued that evidence from *Le* is *irrelevant* to the *Johnson* period, as plaintiffs repeatedly misrepresent, but instead that evidence from one period should be viewed along with evidence from the other—exactly consistent with the relief Zuffa seeks.

## V.   ZUFFA EASILY SATISFIES THE STANDARD FOR THIS TEMPORARY DISCOVERY REOPENING

Zuffa easily satisfies the Ninth Circuit's standard for reopening discovery. *See City of Pomona v. SQM N. Am.*, 866 F.3d 1060 (9th Cir. 2017). As described in detail above, the discovery Zuffa seeks is relevant, Zuffa has been diligent, and plaintiffs will not be prejudiced. And to the extent trial is "imminent," that is because of the Court's previous decision to *delay* additional discovery in *Le* and *Johnson*, and to set a very quick trial date after granting class certification. *Supra* § I. This is not a valid reason to deny Zuffa's motion. *See City of Pomona*, 866 F.3d at 1067.

Faced with Zuffa's overwhelming showing under the appropriate standard, plaintiffs seek to invoke a more stringent "manifest injustice" standard that does not plausibly apply here. Opp'n at 10. This is not a motion for "reconsideration" of the trial date, as plaintiffs claim, because the Court expressly stated that the trial date applies only "if the court does not grant" this motion, Dkt. 894, and *invited* Zuffa's motion to reopen discovery to aid its consideration of the issue. *See* Hrg. Tr. at 24, Dkt. 846 ("I think there's a real issue for me to consider as it relates to whether or not it would be appropriate at this point to reopen discovery as it relates to information in this case."). Plaintiffs' insistence that the Court implicitly decided the motion to reopen discovery in the middle of briefing, and before the scheduled hearing, is without basis.[16]

---

[16] Plaintiffs are similarly wrong that reopening discovery requires reconsideration of the Court's decision to spread plaintiffs' single claim across two trials. Opp'n at 10 (citing Dkt. 846 at 8).

1    Finally, plaintiffs are wrong that Zuffa has not complied with Local Rule 26.3.  *See* Opp'n at

2    30.  In its motion, Zuffa provided a description of the discovery it seeks to complete, an explanation

3    of the timing of its motion to reopen, and a description of a timeline for additional discovery.  Mot.

4    to Reopen at 1, 3.  It is similar to, but less than, the discovery that plaintiffs have acknowledged will

5    be required for determining injunctive relieve and that they have proposed "should be pursued jointly

6    with the litigation of the *Johnson* case."  Pls.' Pre-Conference Statement at 2, 5, Dkt. 842.  The reasons

7    for the timing of Defendants' motion were explained in depth.  Mot. to Reopen at 14-16.  And

8    Defendants identified a "4-6 month" timeline, *id.* at 3, 16, because until the Court grants a protective

9    order covering ongoing discovery in *Johnson* (which plaintiffs dragged their feet on for weeks after

10    Defendants sent a proposed protective order), the start-date for discovery in this case is contingent on

11    the Court permitting it to proceed.

## VI.    TREATING DISCOVERY IN *JOHNSON* AS PRODUCED IN *LE* IS A BARE MINIMUM REQUIREMENT

Merely permitting discovery from *Johnson* to be treated as produced in *Le* does not solve all

of the prejudice to Zuffa that would arise from denying reopened discovery, but it is better than no

discovery at all.  The Ninth Circuit "strongly favors" this cross use of discovery.  *Foltz v. State Farm

Mut. Auto Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003).  Plaintiffs' only response is a circular one

that discovery is not open in *Le*.  Opp'n at 3, 10.  But that is not a requirement to cross-use under

*Foltz.  See, e.g.*, *BGC Partners, Inc. v. Avison Young (Canada) Inc.*, 2017 WL 3468557, at *5 (D.

Nev. Aug. 11, 2017) (*Foltz* standard satisfied despite discovery being closed in related case).

For the reasons described above, discovery in *Le* should be reopened.  But if the Court

concludes otherwise, it should still grant Defendants' motion regarding the use of *Johnson* evidence

in *Le*.  That cross-use is appropriate so long as the discovery is relevant, which it plainly is.  *See supra*

§ IV.  It would be error to deprive Defendants of this critical evidence in the upcoming *Le* trial.

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Zuffa's Motion

to Reopen Discovery or, if it denies that motion, grant Defendants' Motion to Treat Fact Evidence

Produced in *Johnson* Litigation As If it Was Also Produced in *Le* Litigation.

1    Dated: November 16, 2023                Respectfully Submitted,

2                                            */s/ Christopher S. Yates*

3    WILLIAM A. ISAACSON (*Pro hac vice*)    CHRISTOPHER S. YATES (*Pro hac vice*)
     wisaacson@paulweiss.com                 chris.yates@lw.com
4    JESSICA PHILLIPS (*Pro hac vice*)       LATHAM & WATKINS LLP
     jphillips@paulweiss.com                 505 Montgomery Street, Suite 2000
5    PAUL, WEISS, RIFKIND, WHARTON &         San Francisco, CA 94111
     GARRISON LLP                            Tel: (415) 395-8095
6    2001 K Street, NW
7    Washington, DC 20006                    SEAN M. BERKOWITZ (*Pro hac vice*)
                                             sean.berkowitz@lw.com
8    YOTAM BARKAI (*Pro hac vice*)           LATHAM & WATKINS LLP
     ybarkai@paulweiss.com                   330 North Wabash Ave, Suite 2800
9    PAUL, WEISS, RIFKIND, WHARTON &         Chicago, IL 60611
     GARRISON LLP
10   1285 Avenue of the Americas            LAURA R. WASHINGTON (*Pro hac vice*)
11   New York, NY 10019                      laura.washington@lw.com
                                             LATHAM & WATKINS LLP
12   DONALD J. CAMPBELL (No. 1216)           10250 Constellation Blvd, Suite 1100
     djc@campbellandwilliams.com             Los Angeles, CA 90067
13   J. COLBY WILLIAMS (No. 5549)
     jcw@campbellandwilliams.com             DAVID L. JOHNSON (*Pro hac vice*)
14   CAMPBELL & WILLIAMS                      david.johnson@lw.com
15   700 South 7th Street                    LATHAM & WATKINS LLP
     Las Vegas, Nevada 89101                 555 Eleventh Street NW, Suite 1000
16   Tel: (702) 382-5222                     Washington, D.C. 20004

17

18           *Attorneys for Defendants Zuffa, LLC and Endeavor Group Holdings, Inc.*

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Consolidated Reply In Support Of Defendants' Motion To Reopen Discovery And Motion To Treat Evidence Produced In *Johnson* Litigation As If It Was Also Produced In *Le* Litigation was served on November 16, 2023 via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.


/s/ Christopher S. Yates
Christopher S. Yates of
LATHAM & WATKINS LLP

DEFS.' REPLY RE REOPENING DISC. AND USE OF DISC.                    NOS. 15-CV-01045-RFB; 21-CV-01189-RFB