# Exhibit 39

Deposition of Roger D. Blair
(December 9, 2017) (excerpted)

PUBLIC COPY

239

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

CUNG LE; NATHAN QUARRY, JON )
FITCH, on behalf of )
themselves and all others )
similarly situated, )
)
        Plaintiffs, )
)
        vs. ) Case No.
) 2:15-cv-01045-RFB-(PAL)
)
ZUFFA, LLC, d/b/a Ultimate )
Fighting Championship and )
UFC, )
)
        Defendant. )
_____)

HIGHLY CONFIDENTIAL

VIDEOTAPED DEPOSITION OF

ROGER D. BLAIR, Ph.D., VOL. II

Orlando, Florida

December 9, 2017

7:59 a.m.

Reported By:
Dawn A. Hillier, RMR, CRR, CLR
Job No. 52574

**PUBLIC COPY**

Page 240

APPEARANCES:

ATTORNEYS FOR PLAINTIFF:

    COHEN MILSTEIN SELLERS & TOLL, PLLC
    1100 New York Avenue, NW, Suite 500
    Washington, D.C. 20005
    BY: DANIEL H. SILVERMAN, ESQ.
       dsilverman@cohenmilstein.com

   - and -

    BERGER & MONTAGUE, P.C.
    1622 Locust Street
    Philadelphia, Pennsylvania 19103-6305
    BY: PATRICK F. MADDEN, ESQ.
       pmadden@bm.net

ATTORNEYS FOR DEFENDANT:

    BOIES SCHILLER FLEXNER, LLP
    1401 New York Avenue, NW
    Washington, D.C. 20005
    BY: NICHOLAS WIDNELL, ESQ.
       nwidnell@bsfllp.com
       RORY SKAGGS, ESQ.
       rskaggs@bsfllp.com

ALSO PRESENT:

    Isabelle Mercier, WME|IMG
    Dr. Christine Durrance
    Francois Mignon, Videographer

Page 241

INDEX

| | PAGE |
|---|---|
| WITNESS - ROGER D. BLAIR, Ph.D. (continued) | 242 |
| DIRECT EXAMINATION BY MR. SILVERMAN (continued) | 242 |
| CERTIFICATE OF OATH | 363 |
| REPORTER'S CERTIFICATE | 364 |

EXHIBITS

| | | |
|---|---|---|
| Exhibit 5 | Fourth Circuit Court of Appeals opinion, M&M Medical Supplies and Service, Inc. v. Pleasant Valley Hospital | 246 |
| Exhibit 6 | PowerPoint presentation entitled Presentation of Observations Based on MMA Data by Roger D. Blair, Ph.D. | 249 |
| Exhibit 7 | 2010 Horizontal Merger Guidelines | 272 |
| Exhibit 8 | GBP000001 | 320 |
| Exhibit 9 | GBP000002 | 320 |
| Exhibit 10 | Expert Report of Roger D. Blair, Errata Sheet, December 7th, 2017 | 325 |
| Exhibit 11 | Expert report of Robert H. Topel | 338 |

REPORTER'S KEY TO PUNCTUATION:
-- At end of question or answer references interruption
... References a trail-off by the speaker
/// No testimony omitted
"Uh-huh" "Um-hum" References affirmative sound
"Huh-uh" "Um-um" References negative sound

Page 242

THE VIDEOGRAPHER: Here begins media unit number five in day two of the continued deposition of Roger D. Blair being taken on December 9th, 2017 at approximately 7:59 a.m.

Will the court reporter please swear in the witness?

ROGER D. BLAIR, Ph.D.,
was called as a witness, and having first been duly sworn, was examined and testified as follows:

THE WITNESS: I do.

COURT REPORTER: Thank you.

DIRECT EXAMINATION (continued)
BY MR. SILVERMAN:

Q Welcome back. And good morning.

A Good morning.

Q I'd like to turn to paragraph 32 of your report where you write -- there, you're talking about the right of first refusal clause in Zuffa's contracts. And you say that [as read]: Seeing as a way of gathering market intelligence, the right of first refusal is pro competitive as it resolves uncertainty.

Can you tell me what analysis you've done to determine whether the right of first refusal is pro competitive?

A You meant empirical research?

Page 243

Q Or any analysis, yeah. Either empirical or otherwise.

A Well, what I -- well, I didn't do empirical research. But what I summarized in -- you know, in that statement, is that there are situations in which, you know, the parties that are negotiating may not know what the market alternatives are. They may not know what the -- you know, one side or the other may not know. And, you know, one way of finding this out would be through a right of refusal so that the -- you can allow the other party to essentially get offers which reflect -- ultimately will reflect market values or some approximation of market values.

And then when you bring that back, then the other party has some information that it wouldn't have otherwise. And, you know, and that perfection of the information available to the parties that are negotiating makes it -- you know, is basically beneficial in a social welfare sense because you're not sort of wandering around trying to discover what the right terms should be and, you know, and that's -- as I summarized, it's -- you know, this is a way of acquiring market intelligence that, you know, might be difficult to get otherwise.

Q So, is it fair to say that's an analysis based

DAVID FELDMAN WORLDWIDE, INC.
450 Seventh Avenue - Ste 502, New York, NY 10123  1.800.642.1099

**PUBLIC COPY**

244

1   on economic theory?
2   A   Yes.
3   Q   Other than that analysis based on economic
4   theory, have you -- have you done any investigation of
5   the record to determine whether that theory applies to
6   Zuffa's -- Zuffa's right-to-match clause?
7   A   Well, I mean, the theory applies in, you know,
8   in any situation where, you know, the, you know, market
9   values are -- you know, you can't observe the market
10  values in -- you know, in -- they're available in, you
11  know, simpler circumstances.  So, for example, you know,
12  I can find out what the market value is of a gallon of
13  gasoline pretty easily because there are posted prices
14  and, you know, you can find that out pretty readily.
15       But there are other values that are difficult
16  to discover.  And, you know, to the extent that you
17  don't know them, you know, this practice, if you will,
18  or is a way of gathering that information.  And, you
19  know, that's going to apply, you know, fairly generally.
20  So, I mean, I can't -- I mean, I guess that's basically
21  all I can say about that in response to your question.
22  Q   Is it your opinion that a right of first
23  refusal is always pro competitive in every situation?
24       MR. WIDNELL:  Objection, form.
25       THE WITNESS:  Well, you know, this is, like,

245

1   you know, when we had a question like this
2   yesterday.  You know, for me to agree to that or to
3   say that it's always, that means that there's no --
4   absolutely no exceptions to that.  And, you know,
5   and that would -- for me to answer that question,
6   you know, I'd have to sort of sort through every
7   conceivable circumstance.  I can't do that sitting
8   here.
9   BY MR. SILVERMAN:
10  Q   So you said that this theory is going to apply
11  fairly generally.  Can you give me any circumstance
12  where it wouldn't apply?
13  A   Not offhand, no.
14  Q   Have you quantified the pro competitive --
15  done any analysis to quantify the pro competitive effect
16  of the right of first refusal -- strike that.
17       Have you done any analysis to quantify the pro
18  competitive effect of Zuffa's right-to-match clause?
19  A   No, I have not.
20  Q   And is it your understanding that Zuffa's
21  right-to-match clause applies to all fighters under UFC
22  contracts, not just young and entry-level -- or
23  entry-level fighters?
24       MR. WIDNELL:  Objection, form.
25       THE WITNESS:  I think that's right.

246

1   (Exhibit 5 was marked.)
2   BY MR. SILVERMAN:
3   Q   I'm handing you what's been marked as Blair
4   Exhibit 5.  And it is a printout of a Fourth Circuit
5   Court of Appeals opinion, M&M Medical Supplies and
6   Service, Inc. v. Pleasant Valley Hospital.
7        Is this one of the cases we were talking about
8   yesterday in which you offered an opinion on behalf of
9   the plaintiffs?
10  A   Yes, I believe so.
11  Q   And if you turn to page five of the opinion,
12  the Court -- the Court -- this is the Fourth Circuit
13  writing, writes [as read]:  M&M has submitted the
14  affidavit of its expert economist Roger Blair of proof
15  of both the relevant market and the exercise of monopoly
16  power.
17       Is the -- is this opinion accurately stating
18  that you submitted an affidavit in that case for the
19  plaintiffs with an opinion on both the relevant market
20  and the exercise of monopoly power?
21  A   I assumed that this is-- and this is quite a
22  while ago.  Did you notice what the date was on this?
23  Q   I believe it was -- this is 1991, this
24  opinion.
25  A   Okay.  So, of course, you know, this is a

247

1   quarter of a century ago.  I mean, I know that --
2   "know," in quotes, that I was retained on behalf of the
3   plaintiff, and that, you know, whether I submitted a
4   report or an affidavit, you know, I wouldn't remember
5   this point.
6        I know that one of the issues in this -- in
7   this matter was the market definition.  And, I guess
8   this was, you know, monopolization by the hospital with
9   respect to some aspect of durable medical equipment.
10  But I don't really remember, you know, the specific
11  details of that.  Although I mean, I remember this
12  generally, but, you know, I'm not suggesting that I
13  don't remember that I participated in this case, but,
14  you know, the specifics are not as crystal clear as they
15  might have been 25 years ago.
16  Q   Have you opined on relevant market and
17  monopoly or market power in other cases?
18  A   You know, I'm sure I have.
19  Q   At page -- for the record, that other quote
20  was on page five of the printout.  But page -- star six
21  of the actual opinion.
22       And on star seven, page star seven of the
23  opinion, the court writes [as read]:  Dr. Blair also
24  states that the equipment company has exercised monopoly
25  power in the market.  He says, Pleasant Valley Home

**PUBLIC COPY**