# Exhibit 52

ZFL-1472158 (excerpted)

UNITED STATES OF AMERICA
BEFORE THE FEDERAL TRADE COMMISSION

|  |  |  |
|---|---|---|
| Responses of Zuffa, LLC<br>To the Civil Investigative Demand issued<br>by the Federal TradeCommission<br>on June 30, 2011 | :<br>:<br>:<br>:<br>:<br>: | File No. 1110136 |

RESPONSES OF ZUFFA, LLC TO THE
CIVIL INVESTIGATIVE DEMAND ISSUED BY
THE FEDERAL TRADE COMMISSION ON JUNE 30, 2011

Zuffa, LLC ("Zuffa") hereby responds and objects to the Civil Investigative Demand ("CID") issued to Zuffa in connection with FTC File No. 1110136, as modified by discussions between Zuffa and the FTC and memorialized in Assistant Director Cathy Moscatelli's letters of July 28, August 4, October 7, and October 19, 2011.

## INTRODUCTORY RESPONSE

Zuffa responds to the CID on the basis of the best information available to it at this time as good faith efforts have allowed and subject to the objections described below. The fact that Zuffa is willing to respond to any particular request for information does not constitute an admission or acknowledgement that such request is proper or that demands for similar information will be treated in a similar fashion. Zuffa, moreover, reserves the right to amend, correct or supplement its responses and objections to the CID.

Where so indicated, the information being produced within – and the documents accompanying – this submission are hereby designated by Zuffa as: "CONFIDENTIAL SUBMISSION – CONTAINS HIGHLY CONFIDENTIAL BUSINESS INFORMATION." Accordingly, any and all documents and information so designated shall be kept confidential and

CONFIDENTIAL SUBMISSION
CONTAINS HIGHLY CONFIDENTIAL BUSINESS INFORMATION

CONFIDENTIAL                                                                                                                              ZFL-1472158

As a result, Zuffa does not maintain in the ordinary course, and in the vast majority of instances does not know, the specific companies against which it is "competing" for any given sponsor. Moreover, even where Zuffa knew the identity of a company that was seeking to secure a sponsor that Zuffa simultaneously sought to secure, the details of the "competition" may be unknown at present and no bidding likely occurred in any event. Zuffa has undertaken a good faith review of the relevant custodians' documents and knowledge, however, and has identified the following illustrations of potential "competition" for sponsors:

- In negotiations to secure Buffalo Wild Wings as a sponsor for UFC, Zuffa learned that it is competing with the NFL, and that the scorecard valuation of the NFL's competing asset is considerably higher than the UFC's. Zuffa has worked to demonstrate to Buffalo Wild Wings how its existing value equation is better than the deals offered by the NFL. Those negotiations are ongoing.

- Zuffa is currently exploring a partnership with MetroPCS. MetroPCS informed Zuffa that MetroPCS recently lost out on a partnership with the NBA to Sprint. MetroPCS now has monies available that were budgeted for the NBA, so they are considering the UFC as a potential replacement for its sports entertainment partnership.

With respect to UFC-branded apparel and equipment, Zuffa faces intense competition for retail shelf- and floor-space from MMA, sporting good, and lifestyle brands. This competition does not follow a bidding model in which Zuffa and its many competitors submit rival bids to retailers for product stocking and exposure. Rather, Zuffa and its agents interface with retailers to persuade them that devoting shelf- and floor-space to UFC-branded apparel and equipment represents a good value proposition. For example, in the sporting good segment of the market, Zuffa and its agents compete for retail space against firms such as Nike, Adidas, Reebok and Under Armour. While these companies all sell technical performance gear, Zuffa and its agents try to differentiate Zuffa products by selling the technical superiority of its own sporting goods products (which Zuffa believes are well-suited to handle the rigors of MMA training and performance), rather than bidding on price.

28

CONFIDENTIAL SUBMISSION
CONTAINS HIGHLY CONFIDENTIAL BUSINESS INFORMATION

CONFIDENTIAL                                                                                                      ZFL-1472185

==With respect to bidding for fighters, Zuffa rarely "bids" for fighters in the ordinary course. First, many contract negotiations occur while the fighters are under contract to Zuffa already, so there is no formal bidding process. Rather, a Zuffa fighter whose contract is going to be renewed will typically be offered renewal at a premium versus the prior contract.== Second, Zuffa's offers to fighters are generally informed by (1) Zuffa's existing fighter compensation budget, (2) Zuffa's sense of a fighter's worth based on prior experience, and (3) Zuffa's sense of fairness, which takes into account not only a fighter's abilities but also what comparable fighters on the roster are earning at Zuffa. For all but the top fighters, Joe Silva, head matchmaker, implements those three factors.

Because Zuffa has engaged in literally thousands of contract negotiations, the vast majority of which are conducted orally, Zuffa does not maintain in the ordinary course files regarding what, if any, promotions may have bid on fighters that Zuffa contracted or attempted to contract. Moreover, for specific instances where the identity of other promotions that bid for a fighter was transparent and can be recalled, the details of the "competition" may be unknown at present or no bidding may have occurred. Zuffa has undertaken a good faith review of the relevant custodians' documents and knowledge, however, and has identified the following instances where: 1) the Company made an offer to a fighter, but the fighter left Zuffa for a competing promotion (in some of these instances, as identified, Zuffa believed that a competing promotion was also interested in the fighter's services); or 2) the Company made an offer to a fighter and was informed, either by the fighter's manager or a third party, that another promotion was interested in the fighter's services or had made a bid for the fighter's services (Zuffa was, at that time, unable to confirm the truth of any alleged "competing" bid):

- In early 2008, Zuffa offered approximately $200,000 per fight for Tim Sylvia. Zuffa did not raise its offer subsequently and Sylvia's last fight with the UFC was on February 2,

29
CONFIDENTIAL SUBMISSION
CONTAINS HIGHLY CONFIDENTIAL BUSINESS INFORMATION

CONFIDENTIAL                                                                                     ZFL-1472186

2008, when he failed to secure the Interim UFC Heavyweight Championship. He subsequently fought for Affliction on July 19, 2008.

- In mid-2008, Zuffa culminated a long-term negotiation with representation for Andrei Arlovski with an offer of approximately $200,000 per fight with $150,000 to win (200/150), plus opportunities for Arlovski to earn additional pay‑per‑view compensation under certain circumstances. Earlier offers (in 2007) may have started at approximately 110/70. Zuffa did not subsequently raise its offer. In or around May of 2008, Zuffa became aware of offers from Strikeforce and Affliction. Arlovski's last fight with the UFC was on March 1, 2008. Arlovski subsequently fought for Affliction on July 19, 2008.

- In mid-2008, Zuffa offered Cung Le, then-Middleweight Champion of Strikeforce, $550,000 to fight in a bout against Anderson Silva. Le rejected Zuffa's offer, and elected to continue his career with Strikeforce.

- In 2008 and 2009, Zuffa engaged in extensive, long-running negotiations with M-1 for the services of Fedor Emelianenko. These negotiations culminated in bid packages to M‑1 and Emelianenko initially worth approximately $10 million and ultimately worth approximately $25 million. M-1 and Emelianenko declined all of Zuffa's offers. Emelianenko fought for Affliction on January 24, 2009 and Showtime beginning on November 7, 2009.

- In early 2009, Zuffa (WEC) offered Raphael Assuncao a five fight deal as follows: $9,000 to show and $9,000 to win ("9/9"), 11/11, 13/13, 15/15, 17/17. Assuncao indicated that he was also seriously considering fighting for Bellator. Zuffa did not raise its offer, but Assuncao ultimately accepted.

- In mid-2009, after substantial negotiations, Zuffa offered Dan Henderson a five fight deal as follows: $300,000 to show and $200,000 to win ("300/200"), 350/225, 400/250, 450/275, 500/300. The deal also included opportunities for Henderson to earn additional pay‑per‑view compensation under certain circumstances. In late October, Zuffa became aware of an offer from Strikeforce. Henderson rejected Zuffa's offer and elected to sign an agreement with Strikeforce.

- In late 2009, Zuffa offered approximately $25,000 per fight for Roger Huerta. Zuffa did not raise its offer, and Huerta's last fight with the UFC was on September 16, 2009. On April 8, 2010, Huerta fought for Bellator.

CONFIDENTIAL SUBMISSION
CONTAINS HIGHLY CONFIDENTIAL BUSINESS INFORMATION

CONFIDENTIAL                                                                                          ZFL-1472187