WILLIAM A. ISAACSON (*Pro hac vice*)
wisaacson@paulweiss.com
JESSICA PHILLIPS (*Pro hac vice*)
jphillips@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006

DONALD J. CAMPBELL (No. 1216)
djc@campbellandwilliams.com
J. COLBY WILLIAMS (No. 5549)
jcw@campbellandwilliams.com
CAMPBELL & WILLIAMS
700 South 7th Street
Las Vegas, NV 89101

CHRISTOPHER S. YATES (*Pro hac vice*)
chris.yates@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111

SEAN M. BERKOWITZ (*Pro hac vice*)
sean.berkowitz@lw.com
LATHAM & WATKINS LLP
330 North Wabash Ave, Suite 2800
Chicago, IL 60611

LAURA WASHINGTON (*Pro hac vice*)
laura.washington@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd, Suite 1100
Los Angeles, CA 90067

*Attorneys for Defendant Zuffa, LLC, d/b/a
Ultimate Fighting Championship and UFC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury, on behalf of themselves and all others similarly situated, | No.: 2:15-cv-01045-RFB-BNW |
| Plaintiffs, | **ZUFFA, LLC'S RENEWED MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFFS' EXPERT GUY A. DAVIS** |
| *v.* | **HEARING REQUESTED** |
| Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC, | |
| Defendant. | |

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND...................................................................................................2

    I.     Mr. Davis's Originally Disclosed Opinions................................................2

    II.    Mr. Davis's Rebuttal Report .......................................................................4

LEGAL STANDARD...............................................................................................................6

ARGUMENT ...........................................................................................................................7

    I.     Mr. Davis's Testimony Must Be Excluded Because It Is Not
          Relevant And Is Unfairly Prejudicial........................................................7

    II.    The Testimony Is Within The Understanding Of The Average Lay
          Person......................................................................................................10

    III.   Mr. Davis's Methodology Is Unreliable. .................................................10

         A.     The Methodology Fails To Consider The But-For World. .........10

         B.     The Methodology Is Outcome-Oriented and Distorted By
              Hindsight Bias............................................................................12

    IV.   The Opinions In The Davis Rebuttal Report Are Not Proper
          Rebuttal Testimony And Were Not Timely Disclosed. ...........................14

CONCLUSION.......................................................................................................................15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4
*Amos v. Makita U.S.A., Inc.*,
  2011 WL 43092 (D. Nev. Jan. 6, 2011)...................................................................................15
5

6
*In re Apollo Grp. Inc. Sec. Litig.*,
  527 F. Supp. 2d 957 (D. Ariz. 2007) ........................................................................................7

7
*Barber v. United Airlines, Inc.*,
  17 F. App'x 433 (7th Cir. 2001) .............................................................................................13
8

9
*Bell v. Boeing Co.*,
  2022 WL 1206728 (W.D. Wash. Apr. 22, 2022)......................................................................6
10

11
*Benkirane v. Am. Fam. Connect Prop. & Cas. Ins. Co.*,
  2022 WL 225266 (D. Nev. Jan. 25, 2022)..............................................................................15

12
*Claar v. Burlington N R.R. Co.*,
  29 F.3d 499 (9th Cir. 1994) ....................................................................................................13
13

14
*Concord Boat Corp. v. Brunswick Corp.*,
  207 F.3d 1039 (8th Cir. 2000) ...........................................................................................8, 14
15

16
*Cooper v. Brown*,
  510 F.3d 870 (9th Cir. 2007) ....................................................................................................7

17
*Daubert v. Merrell Dow Pharm., Inc.*
  43 F.3d 1311 (9th Cir. 1995) ........................................................................................6, 7, 9, 10
18

19
*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993)...............................................................................................................6, 7
20

21
*United States v. Frazier*,
  387 F.3d 1244 (11th Cir. 2004) ..............................................................................................10

22
*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997)..................................................................................................................7
23

24
*InTouch Techs., Inc. v. VGO Commc'ns, Inc.*,
  751 F.3d 1327 (Fed. Cir. 2014)...........................................................................................9, 13
25

26
*KSR Int'l Co. v. Teleflex Inc.*,
  550 U.S. 398 (2007)................................................................................................................13

27
*Lucas v. MGM Resorts Int'l*,
  2023 WL 1785655 (D. Nev. Jan. 24, 2023)............................................................................14
28

ii

*In re Mirena Ius Levonorgestrel-Related Prod. Liab. Litig. (No. II)*,
  341 F. Supp. 3d 213 (S.D.N.Y. 2018), *aff'd*, 982 F.3d 113 (2d Cir. 2020) ............................13

*Morrison v. Quest Diagnostics Inc.*,
  2016 WL 3457725 (D. Nev. June 23, 2016) ...........................................................................14

*OPS 2, LLC v. Cnty. of Clark*,
  2012 WL 424856 (D. Nev. Feb. 9, 2012) ................................................................................10

*United States v. Pac. Gas & Elec. Co.*,
  178 F. Supp. 3d 927 (N.D. Cal. 2016) ......................................................................................9

*Prescott Grp. Small Cap, L.P. v. Coleman Co.*,
  2004 WL 2059515 (Del. Ch. Sept. 8, 2004) ...........................................................................13

*R & O Const. Co. v. Rox Pro Int'l Grp., Ltd.*,
  2011 WL 2923703 (D. Nev. July 18, 2011) ............................................................................14

*Rink v. Cheminova, Inc.*,
  400 F.3d 1286 (11th Cir. 2005) .................................................................................................7

*Soldo v. Sandoz Pharm. Corp.*,
  244 F. Supp. 2d 434 (W.D. Pa. 2003) ................................................................................11, 12

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
  259 F.3d 1101 (9th Cir. 2001) .................................................................................................14

*In re Zantac (Ranitidine) Prod. Liab. Litig.*,
  644 F. Supp. 3d 1075 (S.D. Fla. 2022) ...................................................................................13

**Other Authorities**

Fed. R. Civ. P. 26 ..............................................................................................................................14

Fed. R. Civ. P. 37 ..............................................................................................................................14

Fed. R. Evid. 403 ................................................................................................................................9

Fed. R. Evid. 702 .......................................................................................................................6, 7, 10

Pursuant to Federal Rules of Evidence 403, 702 and *Daubert*, Defendant Zuffa, LLC ("Zuffa" or "Defendant") respectfully moves to exclude the testimony of Plaintiffs' expert, Guy A. Davis.

### INTRODUCTION

Mr. Davis is an accountant Plaintiffs retained to opine on Zuffa's "financial capacity" to pay higher compensation to athletes by redistributing some of the money historically paid to Zuffa's owners. The crux of Mr. Davis's opinion is that Zuffa could have increased athlete compensation by as much as $706 million over the course of the Class Period[1] while remaining a "financially healthy" company. To support this opinion, Mr. Davis has created two financial models—which he describes as "alternative but feasible expense and capital structures"—to generate pro forma financial data for Zuffa based on several modifications to the company's historical expenses and capital structure. This Court should exclude Mr. Davis's opinions.

*First*, Mr. Davis's opinion on Zuffa's capacity to increase athlete compensation is not relevant to a disputed issue and would mislead a jury. His analysis is not relevant to determining whether Zuffa violated the antitrust laws or the appropriate damages, and no proper purpose would be served by allowing the testimony. It also does not require special competence to conclude that successful business owners could reallocate funds from one category of expenses to another. Even if Mr. Davis's opinions were somehow relevant, any probative value of those opinions is substantially outweighed by the danger of unfair prejudice because Mr. Davis's opinion is based entirely on hindsight bias—using UFC's later success to reimagine a hypothetical financial structure that would pay fighters more during the Class Period. Zuffa did not have the benefit of knowing its future financial condition with perfect hindsight during the Class Period, and it would be misleading and unfairly prejudicial for an expert to mislead the jury with an opinion that uses hindsight as its sole basis.

*Second*, the analysis underlying Mr. Davis's opinions is not grounded in sound methodology and is thus unreliable. Mr. Davis's analysis fails *his own test* for reliability. He

---

[1] Capitalized terms not defined herein have the same meaning as set forth in Mr. Davis's reports. With respect to quoted material, unless otherwise indicated, all brackets, ellipses, footnote call numbers, internal quotations, and citations have been omitted for readability. All emphasis is added unless otherwise indicated.

previously testified that to analyze Zuffa's ability to pay increased athlete compensation, he would need to account for the "but-for world" where many factors would be different that would affect his calculation, including Zuffa's size and the size of the market. His opening report failed to provide this analysis. Even Mr. Davis's new analysis in rebuttal does not consider any of the factors he said are necessary to determine athlete compensation in the but-for world. Separately, the opinions in his rebuttal report are unreliable because they are tainted by outcome-oriented assumptions and hindsight bias. Mr. Davis's two models make assumptions that fundamentally alter key management decisions, including before the Class Period.

*Third*, Mr. Davis's financial models were improperly and untimely disclosed as rebuttal testimony. Mr. Davis's initial expert report opined that Zuffa could have increased athlete compensation by some undetermined amount, which, when asked, Mr. Davis could not quantify. Yet Mr. Davis's rebuttal report discloses a detailed new methodology. The subsequently disclosed opinions and methodology are beyond the proper scope of a rebuttal report because they do not respond to or contradict expert testimony offered by Zuffa.

**FACTUAL BACKGROUND**

I.   Mr. Davis's Originally Disclosed Opinions

In August 2017, Plaintiffs served Mr. Davis's initial report, which, among other things, analyzes aspects of Zuffa's historical financial data to conclude Zuffa could have paid athletes "substantially more." (Decl. of William A. Isaacson ("Isaacson Decl."), Ex. 1, Expert Report of Guy A. Davis ("G. Davis Rep.") ¶ 22).[2] Mr. Davis states that Plaintiffs asked him to analyze:

i.   Zuffa's "aggregate sources of capital" during the Class Period, including proceeds received from operations, debt financing, the sale of equity, and Zuffa's investors;

ii.   Zuffa's "uses of capital" during the Class Period, including amounts used to fund distributions, debt repayments, capital expenditures, acquisitions, and working capital;

iii.   "value" received by Zuffa shareholders, such as dividends and other benefits; and

iv.   "value" received by members of the Bout Class and Identity Class.

---

[2] All exhibits referenced in this motion are exhibits to the accompanying Declaration of William A. Isaacson in Support of Zuffa's Renewed Motions to Exclude Plaintiffs' Experts.

(*Id.* ¶ 9). For each of these four assignments, Mr. Davis provided calculations based primarily on his analysis of information Zuffa produced in discovery. (*Id.* ¶ 23).

First, Mr. Davis concluded that Zuffa's three main sources of capital prior to the 2016 sale of Zuffa's stock to WME|IMG were (a) cash flow from operations earned each year ("EBITDA"), which he estimates generated aggregate EBITDA of $774 million during the Class Period, (b) debt proceeds from third-party lenders, which he states totaled $519 million net term debt proceeds after refinancing from 2005 to 2016, and (c) proceeds from a December 2009 transaction with January Capital, in which January Capital received a 10% equity interest in Zuffa in exchange for $175.7 million.  (*Id.* ¶ 25).  Mr. Davis's initial report also lists "other immaterial equity contributions during the relevant time period, which, when added to the aforementioned sources, results in $1.95 billion, of which $872 million was generated during the Class Period." (*Id.* ¶ 26).

Next, Mr. Davis determined that Zuffa used its capital "for a variety of purposes" between 2005 (five years before the Class Period) and 2016, including stockholder distributions, debt payments, and acquisitions. (*Id.* ¶ 27). He also concluded that a majority of Zuffa's capital was used to make shareholder distributions and to service debt. (*Id.* ¶ 28).

The Davis Report then analyzes the "value" conferred to Zuffa shareholders from 2005 to 2016. It accounts for cash dividends as well as "other conferred value" in the form of: (1) Zuffa's interest payments on the dividends, some of which were debt-financed; (2) allegedly "excessive" aviation expenses; and (3) management fees paid to original shareholders "or their related entities." (*Id.* ¶¶ 29-38). Finally, he includes proceeds from Zuffa's 2016 sale of the business to WME|IMG. (*Id.* ¶¶ 40-42). Mr. Davis estimates that the original equity holders and January Capital received $4.27 billion from 2005 to 2016. (*Id.* ¶ 42).

The final quantitative section of the report analyzes compensation and benefits paid to athletes. He estimates that, from 2005 to 2016, Zuffa paid its fighters primarily for participating in MMA bouts that UFC promoted, including bout compensation, royalties, identity use payments, and other benefits, such as medical expenses and insurance. (*Id.* ¶ 43).

ZUFFA'S REN. MOT. TO EXCL. PLS.' EXPERT GUY DAVIS   Case No.: 2:15-cv-01045-RFB-BNW

1    Based on his calculations of sources of capital and distributions to shareholders, Mr.

2    Davis concludes that Zuffa had the "financial capacity" during the Class Period "to pay more

3    compensation to fighters than the actual amounts paid." (*Id.* ¶ 9). He did not analyze how much

4    more Zuffa could have paid athletes, nor did he suggest a methodology for such an analysis.

5    In September 2017, Zuffa deposed Mr. Davis regarding his conclusion that "Zuffa had

6    the financial wherewithal to pay its fighters substantially more than the amounts actually paid."

7    (*Id.* ¶ 51). Consistent with his report, Mr. Davis testified that Zuffa could have reallocated funds

8    from shareholder distributions, "excessive" corporate aviation expenses, or management fees to

9    increase athlete compensation. (Ex. 2, Deposition of Guy Davis, 9/19/17 ("G. Davis Dep. I"),

10   129:8-130:6). He explained that he included this opinion "to rebut a possible argument on behalf

11   of Zuffa that they couldn't afford to pay any more." (*Id.* at 144:21-146:6).

12   During his deposition, Mr. Davis acknowledged that he had not attempted to determine

13   *how much more* Zuffa could have paid athletes. (*Id.* at 143:5-21 ("you've asked me how much

14   more they could pay, and I've said I haven't opined on how much more they could")). He stated

15   that undertaking this analysis would be possible, but it would require consideration of additional

16   aspects of the "but-for world." (*Id.* at 141:19-143:10 ("when you're evaluating a scenario where

17   the fighters are paid more money, you've introduced this but-for world")). He further explained

18   that "in any hypothetical" that involves "paying fighters more money," it is important to consider

19   "what the economists have said about the impact of paying fighters more." (*Id.* at 149:8-20

20   ("Well, again, when you deal with paying fighters more money, in any hypothetical, I'm only

21   cautious because of what the economists have said about the impact of paying fighters more.").

22   He clarified that, in the but-for world the economists posited, "the MMA industry is larger, it has

23   a higher output, and there are more competitors." (*Id.* at 141:19-142:8). In addition, he opined

24   that "Zuffa would be a different company" in the but-for world, but he had not determined

25   "whether it would be larger or smaller." (*Id.* at 137:15-138:6).

26   II.    Mr. Davis's Rebuttal Report

27   In his "rebuttal" report, Mr. Davis—for the first time—attempts to estimate how much

28   more Zuffa could have paid athletes while remaining financially healthy. Outlining his new

assignment, he states that counsel for Plaintiffs asked him to calculate "(i) how much more Zuffa could have paid its fighters, assuming alternative but feasible expense and capital structures, and (ii) the effect that paying increased fighter compensation during the Class Period would have on Zuffa's financial condition and shareholder returns." (Ex. 3, Expert Rebuttal Rep. of Guy A. Davis ("G. Davis Rebuttal") ¶ 5). Plaintiffs' counsel also asked Mr. Davis to assume "(a) none of the MMA industry growth that would have occurred absent the conduct challenged in this case as contemplated by Dr. Singer would have occurred, and (b) none of the additional fighter compensation would have come from MMA promoters other than Zuffa (where some fighters might have been able to receive higher compensation in the but-for world)." (*Id.*) Mr. Davis concludes Zuffa could have paid athletes as much as $706 million more and "remained a financially healthy company offering substantial returns for its investors." (*Id.* ¶ 6).

Following his "rebuttal" report, Mr. Davis acknowledged at deposition that he had access to the majority of the information he needed for this analysis at the time of his original report. (Ex. 4, Deposition of Guy Davis, 1/30/18 ("Davis Dep. II") 182:2-15 ("a lot of the data that I had in connection with my original report was much of the same data that I used to prepare the second report"); *Id*. at 186:21-187:6 ("the only information that I had that was new was the 2016 data. All the other information from 2005 to 2015 I had" at the time of his original report)). Mr. Davis also acknowledged that Zuffa's expert accountant, Elizabeth Davis, analyzed Zuffa's ability to increase athlete compensation by the amount of Plaintiffs' economists' damages figures, and that he did not address the feasibility of Zuffa paying those amounts because he explained "that wasn't my instruction." (*Id.* at 197:19-198:19). Mr. Davis acknowledged that Zuffa's expert Ms. Davis did not opine on Zuffa's ability to pay "any amounts other than the damages estimates provided by Plaintiffs' experts" and that his "rebuttal" report did not purport to respond to any other opinions put forth by Ms. Davis. (*Id.* at 190:16-21).

Mr. Davis testified that the "whole premise" of the models in his "rebuttal" report was to redistribute as much money from the shareholders to the athletes as possible "without creating a financial issue for the company." (*Id.* at 208:3-16). He acknowledged that his models increase compensation by less than the amount of Plaintiffs' economists' damages estimates. (*Id.* at

193:10-194:5). He explained that he is not offering a damages estimate, but rather demonstrating the extent to which Zuffa could have increased athlete compensation. (*Id.* at 192:1-18). Mr. Davis also stated that he was not offering an opinion that Zuffa's actual capital structure was improper or indicative of anticompetitive conduct, agreeing that his models simply offer a different, allegedly more "conservative," approach to capitalizing the company. (*Id.* at 229:21-230:14).

## LEGAL STANDARD

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which permits testimony based on "scientific, technical, or other specialized knowledge" by a qualified expert if it will "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Recognizing the power expert testimony can have on a factfinder, the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), explained that Rule 702 requires district courts to undertake a gatekeeping function that requires a party proffering expert testimony to establish that an expert uses a reliable methodology that applies to the facts of a case in a manner that is relevant and helpful to the factfinder. Before allowing the jury to hear expert testimony, the district court must first determine that the testimony is relevant and reliable. *Bell v. Boeing Co.*, 2022 WL 1206728, at *7 (W.D. Wash. Apr. 22, 2022) (quoting *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 464 (9th Cir. 2014) ("Just as the district court cannot abdicate its role as gatekeeper, so too must it avoid delegating that role to the jury.")).

Under *Daubert*'s relevance standard, the court must exclude proffered expert testimony unless "it speaks clearly and directly to an issue in dispute in the case" and "will not mislead the jury." *Daubert v. Merrell Dow Pharm., Inc.* ("*Daubert II*"), 43 F.3d 1311, 1321 n.17 (9th Cir. 1995). That is, to be admissible, expert testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591 (quoting *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985)). The opinion must have a "valid scientific connection to the pertinent inquiry." (*Id.* at 592.) "Encompassed in the determination of whether expert testimony is relevant is whether it is helpful to the jury, which is the central

concern of Rule 702." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007); *In re Apollo Grp. Inc. Sec. Litig.*, 527 F. Supp. 2d 957, 962 (D. Ariz. 2007) ("In the Ninth Circuit, the general test regarding the admissibility of expert testimony is whether the jury can receive appreciable help from such testimony.").

*Daubert*'s reliability standard requires that the expert's "reasoning or methodology underlying the testimony is scientifically valid." *Daubert*, 509 U.S. at 592-93. A court need not admit an opinion that is inadequately linked to the facts and may exclude "opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Courts consider whether an expert developed methodology for purposes of litigation or previously articulated the methodology without any incentive to reach a particular outcome. *See Daubert II*, 43 F.3d at 1317 ("when an expert prepares reports and findings before being hired as a witness, that record will limit the degree to which he can tailor his testimony to serve a party's interests"). Methodology that "has been contrived to reach a particular result" is contrary to *Daubert*'s reliability requirement. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1293 n.7 (11th Cir. 2005).

## ARGUMENT

I.    <u>Mr. Davis's Testimony Must Be Excluded Because It Is Not Relevant And Is Unfairly Prejudicial.</u>

The Court should exclude Mr. Davis's opinion—that with the benefit of perfect hindsight knowledge of its financial success during the Class Period, Zuffa was financially capable of increasing athlete compensation by as much as $706 million, Ex. 3 ¶ 6—because there is no connection between his analysis and this case. Mr. Davis constructs a hypothetical alternative—not only divorced from *both* Zuffa's actual financial structure *and* Dr. Singer's but-for world but also going backwards in time armed with perfect hindsight into Zuffa's future financial circumstances—to free up more cash for athlete compensation, and then he uses that hindsight bias to opine that Zuffa had the theoretical capacity to pay athletes more during the Class Period. That analysis will not assist the trier of fact because Mr. Davis's hypothetical "capacity-to-pay" scenario has no relevance to market power, anticompetitive effects, damages, or any other

7

1   disputed issue the jury may have to decide. Mr. Davis's opinion is offered only for its prejudicial

2   effect of showing Zuffa's finances and second-guessing Zuffa's historical capital and expense

3   structure based on subsequent information that was not actually available to Zuffa, or anyone

4   else.

5        The relevant legal inquiries here are: (1) whether Mr. Davis's opinions regarding Zuffa's

6   financial capacity to increase athlete compensation by some arbitrary amount is relevant to the

7   issues the jury will have to decide and (2) if relevant, whether this analysis is likely to confuse or

8   prejudice the jury.  The essence of Mr. Davis's opinion is that Zuffa could have increased athlete

9   compensation if it had managed its business differently. By hypothesizing that Zuffa *could have*

10  restructured its finances starting in 2007, Mr. Davis assumes Zuffa *should have* done so—

11  without a legal basis for such a conclusion. The question is not whether Zuffa should have

12  conducted its business differently or whether it was improper for Zuffa's original owners to take

13  distributions prior to the Class Period. The question is whether Plaintiffs can show that Zuffa

14  violated antitrust laws and, if they do, what damages Plaintiffs should receive. But Mr. Davis's

15  analysis ignores these questions: it fails to address market power, anticompetitive effects, or

16  damages. Instead, his analysis focuses on Zuffa's capacity to increase athlete compensation,

17  which has no relevance to any of these issues.

18       Moreover, Mr. Davis's conclusions are contingent on a series of unrealistic *ex ante*

19  assumptions about Zuffa's business environment. Because his analysis fails to "incorporate all

20  aspects of the economic reality" of the market, it "contributes nothing to a legally sufficient

21  evidentiary basis." *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1057 (8th Cir.

22  2000). These assumptions begin in 2007—three years before the Class Period—even though

23  (1) Plaintiffs have not sought to establish that Zuffa's conduct violated antitrust laws in 2007,

24  and (2) Mr. Davis does not contend that Zuffa's actual capital structure was improper or

25  indicative of anticompetitive conduct. (Ex. 4, Davis Dep. II 229:21-230:9). Because Plaintiffs

26  have not introduced testimony showing that Zuffa's capital structure (or its pre-Class Period

27  business practices) violated antitrust law, changes in pre-Class Period conduct clearly would not

28  assist the trier of fact.

1    Mr. Davis's opinions also are irrelevant because they do not address Zuffa's ability to

2    increase athlete compensation by the actual amount of the damages estimates offered by

3    Plaintiffs' economists. Mr. Davis's most aggressive hypothetical scenario concludes that Zuffa

4    could have paid athletes an additional $706 million. This falls far short of Dr. Singer's damages

5    estimates of $811 million (low) and $1.6 billion (high) or Prof. Zimbalist's damages estimate of

6    $981 million. The significant gap between Plaintiffs' estimates of damages and Zuffa's

7    purported ability to pay athletes is further evidence of how irrelevant Mr. Davis's opinions are.

8    In sum, Mr. Davis's opinions should be excluded because they do not "logically advance a

9    material aspect" of Plaintiffs' case—they advance *no* aspect of Plaintiffs' case. *Daubert II*, 43

10   F.3d at 1315.[3]

11   Mr. Davis's analysis regarding Zuffa's theoretical capacity to pay is not only irrelevant

12   but is also unfairly prejudicial. Mr. Davis's opinion that Zuffa's later success proves that it could

13   have paid more to athletes in prior years is exactly the sort of evidence that has "an undue

14   tendency to suggest decision on an improper basis." *United States v. Pac. Gas & Elec. Co.*, 178

15   F. Supp. 3d 927, 941 (N.D. Cal. 2016) (citing *Old Chief v. United States*, 519 U.S. 172, 180

16   (1997)). Plaintiffs have acknowledged that the relevant question is "what the industry-wide

17   revenues would have been in the but-for world." ECF No. 535 at 3.  Mr. Davis's opinion that

18   Zuffa could have reallocated funds to increase athlete compensation—which he claims is

19   relevant "to rebut a possible argument on behalf of Zuffa that they couldn't afford to pay any

20   more" (Ex. 2, 129:7-130:6; 145:7-23)—will not assist the trier of fact in determining what

21   damages, if any, Plaintiffs should receive. The only reason for the Plaintiffs to put forth Mr.

22   Davis's "capacity-to-pay" opinion—including his opinion that athlete compensation could have

23   been increased if Zuffa had reduced its supposedly "excessive" corporate aviation expenses—is

24   to prejudice a jury.  This is exactly the sort of evidence that "suggests decision on an improper

25   basis," such as "an emotional one" and should be excluded on the basis of that prejudice. *Pac.*

26   *Gas & Elec. Co.*, 178 F. Supp 3d at 941, 969 (citing *Old Chief*, 519 U.S. at 180); *InTouch Techs.*,

27

28   [3] Even if the testimony had some probative value (it does not), it is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury. *See* Fed. Rul. Evid. 403.

1   *Inc. v. VGO Commc'ns, Inc.*, 751 F.3d 1327, 1348, 1352 (Fed. Cir. 2014) (expert testimony

2   prejudiced party because it "was nothing more than impermissible hindsight" and failed "to

3   guard against hindsight bias by appropriately considering all objective evidence" to reach the

4   expert opinion).

5   II.     The Testimony Is Within The Understanding Of The Average Lay Person.

6           Mr. Davis's testimony also should be excluded because it requires no special competence

7   to opine that Zuffa could have paid athletes more. Any lay person could reach the same

8   conclusion based on uncontroverted evidence that Zuffa was profitable during the Class Period.

9           Mr. Davis's opinion that Zuffa could have increased athlete compensation by certain

10  hypothetical amounts (which bear no relation to Plaintiffs' damages estimates) does not require

11  specialized knowledge. The fact that a profitable company has financial resources to increase

12  labor costs by some arbitrary amount is a concept jurors can understand without the assistance of

13  an expert. Put differently, Mr. Davis's opinion "offers nothing more than what [Plaintiffs']

14  counsel could argue during closing arguments." *OPS 2, LLC v. Cnty. of Clark*, 2012 WL 424856,

15  at *5 (D. Nev. Feb. 9, 2012); *see also United States v. Frazier*, 387 F.3d 1244, 1262-63 (11th

16  Cir. 2004) (same). This is outside the scope of permissible expert testimony under *Daubert* and

17  does not assist the trier of fact. *Daubert II*, 43 F.3d at 1315, 1320.

18  III.    Mr. Davis's Methodology Is Unreliable.

19          Mr. Davis's testimony also should be excluded under Rule 702 because his opinions are

20  not grounded in sound methodology and are thus unreliable. *First*, in his opening and rebuttal

21  reports, Mr. Davis fails to account for certain factors that he previously said he needed to

22  consider as part of any analysis involving increased athlete compensation. *Second*, his models

23  are unreliable because he cherry-picks assumptions that are results-oriented and distorted by

24  hindsight bias. These flaws render Mr. Davis's analysis unreliable.

25          A.      The Methodology Fails To Consider The But-For World.

26          Mr. Davis has acknowledged that "any hypothetical" involving increased athlete

27  compensation must account for the conditions of the but-for world theorized by Plaintiffs' other

28  experts. Ex. 2, G. Davis Dep. I, 141:19-143:10; 149:8-20. But in his rebuttal report, Mr. Davis

presented just such a hypothetical while explicitly ignoring the but-for world. Ex. 4, 244:23-245:16 (Mr. Davis confirming he did not "consider how characteristics of the but-for world as constructed by plaintiffs' economists might affect the analysis" in his rebuttal report). Thus, the "reliability of [Mr. Davis's] opinions is significantly undermined by the fact that [he] abandon[s] the method that [he himself has] defined." *Soldo v. Sandoz Pharm. Corp.*, 244 F. Supp. 2d 434, 560 (W.D. Pa. 2003).

In his initial report, Mr. Davis opined that Zuffa could have increased athlete compensation "substantially." (Ex. 1, ¶ 51). But he did not perform any work at that time to quantify this opinion. At his first deposition, Mr. Davis repeatedly stated that, while he had not attempted to determine how much more Zuffa could have paid athletes, if he were to do so, he would have to account for several other changed conditions in the but-for world. According to Mr. Davis, "in any hypothetical" that involves "paying fighters more money," it is important to consider "what the economists have said about the impact of paying fighters more." (Ex. 2, G. Davis Dep. I, 149:8-150:18). Mr. Davis articulated these considerations, including the effect on:

- Zuffa's size and the size of the MMA industry;
- the amount of output in the form of live MMA events; and
- the number of competitors in the market for MMA events.

(*Id.* at 137:15-138:6; 141:19-143:10; 149:8-150:18).

Mr. Davis's first report was devoid of analysis of these factors. For his rebuttal, Mr. Davis designed financial models to support his initial conclusion. He explains that the "whole premise of the analysis" is to redistribute as much money from the shareholders to the athletes as possible "without creating a financial issue for the company." (Ex. 4, G. Davis Dep. II 208:3-16). In taking up this work, he intentionally ignores the conditions of the but-for world. He admits he did not consider *any* of these factors in modeling hypothetical scenarios that involve paying Zuffa athletes more money. (*Id.* at 199:6-10 ("Q. Are you offering an opinion on the size of the output market that plaintiffs' economists contend would have existed absent the alleged anticompetitive behavior? A. No."); 246:6-24 ("The analysis that I've done here, as I testified before, assumes that there is no change in the market output and there is no change in Zuffa's

revenues."); 249:1-5 ("Q. In testing the effect of Zuffa paying higher fighter compensation, did you consider how Zuffa paying higher fighter compensation would affect the size of the MMA market? A. No."); 249:16-19 ("Q. Did you consider how Zuffa paying higher fighter compensation would affect the number of competitors in the market? A. No")).

Thus, Mr. Davis's opinions do not satisfy "[his] own standards of reliability." *Soldo*, 244 F. Supp. 2d at 561 ("Because consistency is a hallmark of the scientific method, plaintiff's experts must be required to satisfy their own standards of reliability") (citing *Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996) ("the district court should be wary that the expert's method has not been faithfully applied")). His opinions should be excluded on this basis alone.

    B.    <u>The Methodology Is Outcome-Oriented and Distorted By Hindsight Bias.</u>

In addition, Mr. Davis's hypothetical financial scenarios are unreliable because they are predicated on contrived methodology designed from the ground up to produce results that would help Plaintiffs. Mr. Davis selects which features of Zuffa's historical expense and capital structure to modify with the benefit of perfect hindsight. It is easy to say that money could have been reallocated in earlier years once you know you will succeed in later years. But Zuffa, like any other business, has not always known the extent to which it would succeed. Mr. Davis does, and that inherent bias renders his analysis unreliable.

In his "rebuttal," Mr. Davis reverse-engineers Zuffa's finances in an attempt to show that some of the value Zuffa's owners received over a 12-year period could have been paid to athletes. He has the luxury of knowing Zuffa's revenues, earnings, expenses, and transactional history from 2005 through 2016. Each of the assumptions Mr. Davis builds into his models results in lower expenses for the company, creating excess cash that Mr. Davis can reallocate to the athletes. For example, in each of his six hypothetical scenarios, he assumes Zuffa would not have borrowed $320 million in 2007 and 2009 and that shareholders receive minimum distributions equal to 40% of pro forma net income for tax purposes. (Ex. 3, G. Davis Rebuttal ¶ 6). In Scenarios 1-3, he assumes the proceeds from the sale of a 10% stake in the company to January Capital remain on the balance sheet instead of being distributed to the original equity

holders, who saw the value of their collective stake in the company diminished by the same percentage. (*Id.* at ¶ 18 n.10). He further selects December 31, 2009, as an arbitrary date by which Zuffa pays off all debt, thus eliminating its debt burden during the Class Period. (*Id*. ¶ 12). In Scenarios 4-6, he assumes the company does not take on *any* debt from 2007 to 2014 and further assumes that the sale to January Capital does not happen because the "proceeds are not needed to support the pro forma financial health of the company." (*Id*. ¶¶ 12-17, 18 n.10). These and other modifications generate cash that Mr. Davis uses to increase athlete compensation by as much as $706 million. (*Id*. ¶ 23).

This methodology was tailor-made to substantiate Mr. Davis's initial conclusion that Zuffa could have paid athletes more. This is the definition of hindsight bias; Mr. Davis embraces a conclusion before designing a model to support it. "Coming to a firm conclusion first and then doing research to support it is the antithesis of [the scientific] method." *Claar v. Burlington N R.R. Co.*, 29 F.3d 499, 502-03 (9th Cir. 1994); *Barber v. United Airlines, Inc.*, 17 F. App'x 433, 437 (7th Cir. 2001) ("Because in formulating his opinion Dr. Hynes cherry-picked the facts he considered to render an expert opinion, the district court correctly barred his testimony because such a selective use of facts fails to satisfy the scientific method and *Daubert*"). Such litigation-driven methodology has "an untenably high probability of containing hindsight bias and other cognitive distortions." *Prescott Grp. Small Cap, L.P. v. Coleman Co.*, 2004 WL 2059515, at *21 (Del. Ch. Sept. 8, 2004); *cf. KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007) ("A factfinder should be aware, of course, of the distortion caused by hindsight bias and must be cautious of arguments reliant upon *ex post* reasoning."); *InTouch Techs., Inc. v. VGO Commc'ns, Inc.*, 751 F.3d 1327, 1352 (Fed. Cir. 2014) (finding testimony was insufficient where expert "succumbed to hindsight bias in her obviousness analysis"); *In re Mirena Ius Levonorgestrel-Related Prod. Liab. Litig.* (*No. II*), 341 F. Supp. 3d 213, 261 (S.D.N.Y. 2018), *aff'd*, 982 F.3d 113 (2d Cir. 2020) (excluding expert because she exhibited "an outcome-driven approach, not a search for truth").

Hindsight bias undermines Mr. Davis's entire report, as each hypothetical scenario is premised on assumptions he selects with the knowledge of exactly how they will affect the

company's finances. These methodological issues render Mr. Davis's opinions unreliable. *See In re Zantac (Ranitidine) Prod. Liab. Litig.*, 644 F. Supp. 3d 1075, 1204 (S.D. Fla. 2022), *appeal dismissed*, 2023 WL 2849068 (11th Cir. Mar. 22, 2023), and *appeal dismissed*, 2023 WL 7426136 (11th Cir. Nov. 9, 2023) (striking expert where proffered opinion's foundation was "indicative of outcome-driven reasoning" which "therefore was indicative of an unreliable methodology"); *Concord Boat Corp.*, 207 F.3d at 1057 ("Because of the deficiencies in the foundation of the opinion, the expert's resulting conclusions were 'mere speculation'").

IV.   **The Opinions In The Davis Rebuttal Report Are Not Proper Rebuttal Testimony And Were Not Timely Disclosed.**

Mr. Davis's opinion regarding the amounts Zuffa hypothetically could have paid athletes while remaining financially healthy should be excluded because it was improperly and untimely disclosed as rebuttal testimony. The rebuttal report quantifies and clarifies the core opinion expressed in his initial report, but not in response to Zuffa's theory or evidence.

Rebuttal expert testimony is appropriate "solely to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii). That is, it must include "a showing of facts supporting the opposite conclusion" from the opposing party's expert. *R & O Const. Co. v. Rox Pro Int'l Grp., Ltd.*, 2011 WL 2923703, at *2 (D. Nev. July 18, 2011). Rebuttal testimony may not simply present new information or build upon prior testimony; rather, it must be limited to addressing "new unforeseen facts brought out in the other side's case." *Id.* Where a party "fails to provide information" that is "required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial." Fed. R. Civ. P. 37(c)(1);[4] *Lucas v. MGM Resorts Int'l*, 2023 WL 1785655, at *2 (D. Nev. Jan. 24, 2023) ("a rebuttal report is not a proper vehicle for a 'do over' at an initial expert opinion"). Rebuttal evidence "may be introduced to challenge the evidence or theory of an opponent, but may not be used to establish a case-in-chief." *Morrison v. Quest Diagnostics Inc.*, 2016 WL 3457725, at *2 (D. Nev. June 23, 2016).

---

[4] Rule 37(c)(1) "gives teeth" to the requirements of Rule 26 and affords the district court "particularly wide latitude" to sanction a party's failure to meet those requirements. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

1    Mr. Davis previously opined that Zuffa could have increased athlete compensation, but

2  he did not quantify the amount. In response, Zuffa did not argue that Zuffa had an *inability* to

3  pay athletes differently. (Ex. 5, Expert Rep. of Elizabeth Davis ¶ 15). Nevertheless, Mr. Davis's

4  rebuttal report discloses a detailed new methodology for determining "how much more Zuffa

5  could have paid its fighters." (Ex. 3, G. Davis Rebuttal ¶ 5). This "rebuttal" opinion is both

6  untimely and irrelevant to both Zuffa and Plaintiffs' theory of damages in this case. Moreover, a

7  rebuttal report is not a second bite at the apple, and the deadline for serving rebuttal testimony "is

8  not intended to provide an extension of the deadline by which a party must deliver the lion's

9  share of its expert information." *Amos v. Makita U.S.A., Inc.*, 2011 WL 43092, at *2 (D. Nev.

10  Jan. 6, 2011). The purpose of Mr. Davis's rebuttal opinion is "to contradict an expected and

11  anticipated portion of [Zuffa's] case-in-chief," and the law is clear that "rebuttal experts cannot

12  testify in their parties' case-in-chief." *Benkirane v. Am. Fam. Connect Prop. & Cas. Ins. Co.*,

13  2022 WL 225266, at *3 (D. Nev. Jan. 25, 2022) (striking portions of expert report that "fail to

14  rebut any opinion offered by the opposing expert").

15                                **CONCLUSION**

16    Zuffa's renewed motion to exclude the testimony of Guy Davis should be granted.

17

18

19

20

21

22

23

24

25

26

27

28

ZUFFA'S REN. MOT. TO EXCL. PLS.' EXPERT GUY DAVIS   Case No.: 2:15-cv-01045-RFB-BNW

Dated: December 8, 2023

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By:     */s/ William A. Isaacson*

CHRISTOPHER S. YATES (*Pro hac vice*)
chris.yates@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 395-8095

SEAN M. BERKOWITZ (*Pro hac vice*)
sean.berkowitz@lw.com
LATHAM & WATKINS LLP
330 North Wabash Ave, Suite 2800
Chicago, IL 60611

LAURA WASHINGTON (*Pro hac vice*)
laura.washington@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd, Suite 1100
Los Angeles, CA 90067

DAVID L. JOHNSON (*Pro hac vice*)
david.johnson@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004

WILLIAM A. ISAACSON (*Pro hac vice*)
wisaacson@paulweiss.com
JESSICA PHILLIPS (*Pro hac vice*)
jphillips@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006

BRETTE M. TANNENBAUM (*Pro hac vice*)
btannenbaum@paulweiss.com
YOTAM BARKAI (*Pro hac vice*)
ybarkai@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019

DONALD J. CAMPBELL (No. 1216)
djc@campbellandwilliams.com
J. COLBY WILLIAMS (No. 5549
jcw@campbellandwilliams.com
CAMPBELL & WILLIAMS
700 South 7th Street
Las Vegas, Nevada 89101
Tel: (702) 382-5222

*Attorneys for Defendant Zuffa, LLC, d/b/a
Ultimate Fighting Championship and UFC*

1

## **CERTIFICATE OF SERVICE**

2        The undersigned hereby certifies that the foregoing Renewed Motion to Exclude the

3   Testimony of Plaintiffs' Expert Guy A. Davis was served on December 8, 2023, via the Court's

4   CM/ECF electronic filing system addressed to all parties on the e-service list.

5

6        */s/ William A. Isaacson*
         William A. Isaacson

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28