# EXHIBIT 6
# -
# REDACTED VERSION OF
# ECF NO. 294-4

# EXHIBIT A

## Bellator v. Alvarez Complaint

Patrick C. English, Esq. (PCE7898)
**DINES AND ENGLISH, L.L.C.**
685 Van Houten Avenue
Clifton, New Jersey 07013
(973) 778-7575
Attorney for Plaintiff, Bellator Sport Worldwide, LLC

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BELLATOR SPORT WORLDWIDE, LLC,** | Civil Action No.: |
| **Plaintiff,** | |
| **v.** | **COMPLAINT AND JURY DEMAND** |
| **EDDIE ALVAREZ AND JOHN DOES 1-5,** | |
| **Defendants.** | |

### Jurisdiction and Venue

1)    Plaintiff, Bellator Sport Worldwide, LLC (hereinafter "Bellator") is a promoter of Mixed Martial Arts ("MMA"), formed under the laws of the State of Delaware and having its headquarters in California. No member is a citizen of Pennsylvania.

2)    Defendant, Eddie Alvarez (hereinafter "Alvarez) is a Mixed Martial Artist who is a citizen of Pennsylvania.

3)    The amount in dispute related to this controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs, and counsel fees.

1

ZFL-0749055

4)    Defendants, John Does 1-5 are persons and entities whose identities are yet to be discovered.  None are citizens of either California or Delaware.

5)    This Court has jurisdiction pursuant to 28 U.S.C. 1332 in that there is full diversity between the parties and the amount in dispute exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

6)    Venue is proper in this district in that both parties regularly conduct business in New Jersey.  Alvarez has had at least nine (9) bouts in New Jersey and has had numerous meetings with Bellator's representatives in New Jersey.  Bellator regularly promotes bouts in New Jersey.  Further, the parties agreed to a contract clause reading as follows:

> **"The law of the State of New Jersey applicable to contracts executed and to be fully performed in the State of New Jersey shall govern this Agreement, and FIGHTER's execution of this Agreement shall constitute his consent to the exclusive jurisdiction of the Courts of the State of New Jersey and the United States Courts located in New Jersey and to serve all process pursuant to the applicable section of the New Jersey Court Rules and/or Statutes with respect to matters relating to this Agreement or any dispute between the parties; provided, however, that actual Bouts will be conducted under the rules of the Commission in whose jurisdiction the Bout is to take place."** See Exhibit "A" containing relevant excerpts of the original Bellator/Alvarez contract.

## SUMMARY OF CASE
## AND GENERAL ALLEGATIONS

7)    In the late winter/spring of 2009 Bellator and Alvarez entered into an exclusive promotional contract.  At that time, Alvarez was coming off a loss.

8)    Bellator and Alvarez entered into an exclusive promotional contract in 2009.  Mr. Alvarez, in addition to his substantial purse received a One Hundred Fifty Thousand Dollars ($150,000.00) signing bonus.  Since entering into that contract Alvarez has been successfully promoted by Bellator and has fought for Bellator nine (9) times, with one additional bout taken with a different promoter in Japan with Bellator's permission.  Highlights of Alvarez's career

2

with Bellator include winning a Bellator Lightweight Tournament and the Bellator Lightweight Championship and, under Bellator's promotion, avenging his loss against the fighter who had defeated him prior to his signing with Bellator.

9)      Though Alvarez lost the lightweight title to Michael Chandler, Bellator resurrected his career by promoting bouts against two high profile fighters which Alvarez won.

10)   By virtue of Bellator's promotion Alvarez has become a very popular fighter with followers of MMA.

11)   The number of fights for which Alvarez was obligated to Bellator was met upon Alvarez's last bout in October of 2012.

12)   The 2009 Bellator contract with Alvarez contains the following provisions:

**"18. <u>FIRST/LAST REFUSAL</u>**

*A)*   **Upon expiration of the Term, FIGHTER agrees to negotiate exclusively and in good faith with PROMOTER regarding the extension or renewal of the Term for a period of ninety (90) days following the expiration of the Term.**

*B)*   **In the event no such agreement is reached between FIGHTER and PROMOTER during the aforementioned ninety (90) day period, FIGHTER may negotiate with other promotional entities, subject to PROMOTER's right to match the terms of any agreement offered to FIGHTER by such other promotional entity.  PROMOTER's right to match shall begin at the end of the ninety (90) day period and last for one (1) year.**

*C)*   **FIGHTER shall provide PROMOTER with prompt written notice of any such offer, containing full details in regards thereof.  Such notice shall constitute an exclusive, irrevocable offer to contract with PROMOTER on the same terms and conditions.  PROMOTER shall have fourteen (14) business days after receipt of said notice to either accept or reject said offer. If PROMOTER rejects said offer, FIGHTER may accept said offer with the promotional entity on the same terms and conditions and without any modifications thereto.  If the offer is modified in any material way, such modification shall give rise to another option for PROMOTER to match the terms of the offer as modified."**  See Exhibit "A".

3

ZFL-0749057

13)   The right of Bellator to promote future bouts of Mr. Alvarez expired on or about October 12, 2012.  However, Mr. Alvarez was, pursuant to paragraph 18 of his promotional contract quoted above, required to negotiate for a new contract with Bellator for ninety (90) days.

14)   Mr. Alvarez requested the opportunity to engage in negotiations with a rival promoter prior to the expiration of the ninety (90) day period.  As an accommodation to Mr. Alvarez Bellator agreed to same, provided that it retain its right to match.  On November 2, 2012 Alvarez entered into a written agreement amending the basic promotional contract.  That written agreement stated in pertinent part, that Bellator agreed to waive its rights to the period of exclusive negotiations to allow Alvarez to negotiate with a company named Zuffa, LLC ("Zuffa"), which goes under the trade name of the Ultimate Fighting Championship or, simply, the UFC.  That amendment read:

> **"For the avoidance of doubt, upon your signature below, you are permitted to negotiate with and entertain offers from, and only from, Zuffa, LLC. Upon receipt of such an offer, you are thereafter obligated to produce to Bellator a true copy of the proposed agreement with Zuffa, LLC, at which time Bellator shall have fourteen (14) business days from receipt of the full agreement to consider whether it will match the terms of the offer.  Should Bellator elect to match the offer, no further offers may be entertained by you and you will be obligated to contract with Bellator on the terms that Bellator agreed to match."**

The full letter is incorporated herein and is annexed hereto as Exhibit "B."

15)   On November 28, 2012 counsel for Mr. Alvarez sent a contract to Bellator which had been proffered by Zuffa.  The letter acknowledged Bellator's matching rights, and that Bellator had fourteen (14) business days to match the proffered contract.  A copy of the cover letter is annexed as Exhibit "C" and the proffered contract (with bonus letter) is annexed as Exhibit "D."

4

ZFL-0749058

16)   On December 13, well within the time allowed Bellator for notification, Bellator notified Alvarez, through his counsel, that it was not only matching the contract proffered by Zuffa but would add three items making the Bellator offer better than that made by Zuffa.  A copy of the cover letter informing Alvarez, through his counsel, that Bellator had matched is incorporated hereto and annexed as Exhibit "E."  A copy of a contract executed on behalf of Bellator is annexed as Exhibit "F."  A copy of a "red-line" against the Zuffa contract showing that Bellator had matched the offer made by Zuffa is annexed as Exhibit "G."

17)   Every financial term in the Zuffa proposed contract was matched and, in fact, Bellator had simply taken the Zuffa contract and made the appropriate changes as to the name of promoter and the network (UFC has a deal with Fox while Bellator has a deal with and is partially owned by Viacom).

18)   On Friday, December 14 counsel for Mr. Alvarez called counsel for Bellator to seek assurance that Bellator intended to promote Mr. Alvarez's next bout as a pay-per-view bout. Bellator, through counsel, informed Alvarez's counsel that while it felt that Zuffa's contract made no such commitment on this point (see paragraph 6.2 of Exhibit "D" which makes no commitment that Alvarez's next bout will actually be on pay-per-view), Bellator did intend to do so.  Bellator offered to supply the specific date upon a suitable confidentiality agreement.

19)   On Sunday, December 16, 2012 counsel received a letter alleging that Bellator had failed to match.  That letter is annexed hereto as Exhibit "H."

20)   In fact, plaintiff had matched.  By letter of December 18, 2012 counsel for plaintiff explained in writing that the contentions that Bellator had not matched was untrue.  He also provided an addenda both memorializing the items promised in the December 13 cover letter and

5

clarifying that all of Mr. Alvarez's fights under the contract would be either on pay-per-view or Spike T.V., a considerable improvement over the Zuffa contract.  See Exhibits "I" and "J."

21)   Defendant Alvarez continues to refuse to execute the contract proffered despite his contractual obligation to do so.

## COUNT 1

## BREACH OF CONTRACT

22)   The allegations of paragraphs 1 through 22 are repeated as though set forth fully herein.

23)   Twice Eddie Alvarez entered into legally binding agreements, which gave plaintiff the right to match any offer proffered by a competing promoter.  In his most recent agreement, dated November 2, 2012, he agreed that "[s]hould Bellator elect to match the offer, no further offers may be entertained by you and you will be obligated to contract with Bellator on the terms that Bellator agreed to match."

24)   Plaintiff has matched the offer made by Zuffa.  A simple comparison of the contracts offered by Zuffa and by Bellator show this to be so.  See Exhibit "G" which is a comparison of the two documents.

25)   Defendant Alvarez has refused to acknowledge his contractual obligations to plaintiff despite repeated requests that he do so.

26)   Defendant Alvarez has breached his contractual obligations to plaintiff.

27)   The actions of Alvarez threaten immediate and irreparable injury to plaintiff as well as great monetary damage.

**WHEREFORE**, plaintiff requests that the Court enter an Order:

6

A)  Barring Eddie Alvarez, from engaging in any bouts for any promoter other than plaintiff or entering into any contract to do so.

B)  Granting declaratory relief that Eddie Alvarez is in a contract with Bellator by virtue of Bellator matching the offer made by Zuffa.

C)  To the extent Bellator suffers monetary damages as a result of Alvarez's actions, monetary damages to compensate Bellator for Alvarez's breach.

D)  Granting Bellator costs and counsel fees of this action.

E)  Such other relief, including such other injunctive relief, as the Court may deem just and proper.

## COUNT 2

## TORTIOUS INTERFERENCE

28)  The allegations of paragraphs 1 through 28 are repeated as though set forth fully herein.

29)  John Does 1-5, parties as yet unidentified are not parties to the contractual and business relationships between defendant Alvarez and plaintiff.

30)  John Does 1-5 have intentionally, without justification or excuse interfered with both the actual contract relationship between defendant Alvarez and plaintiff as well as prospective economic and contractual relationships.

31)  Plaintiff had a reasonable expectation of economic advantage and the interference has caused loss of prospective gain.

32)  The actions of defendants are in danger of causing immediate and irreparable injury to plaintiff.

CONFIDENTIAL

ZFL-0749061

**WHEREFORE**, plaintiff requests injunctive relief barring John Does 1-5 from interfering with the plaintiff's contractual and prospective contractual and business relations with Eddie Alvarez.

**WHEREFORE**, plaintiff requests judgment in the amount of its damages.

**WHEREFORE**, plaintiff requests punitive damages.

**WHEREFORE**, plaintiff requests costs and counsel fees.

**WHEREFORE**, plaintiff request such relief as the Court may deem just and proper.

BY:  _____
PATRICK C. ENGLISH (PCE7898)
**DINES AND ENGLISH, L.L.C.**
685 Van Houten Avenue
Clifton, New Jersey 07013

Attorney for Plaintiff,
Bellator Sport Worldwide, LLC

Date: December 21, 2012

## JURY DEMAND

Plaintiff demands trial by jury where permitted.

BY:  _____
PATRICK C. ENGLISH (PCE7898)
**DINES AND ENGLISH, L.L.C.**
685 Van Houten Avenue
Clifton, New Jersey 07013

Attorney for Plaintiff,
Bellator Sport Worldwide, LLC

Date: December 21, 2012

8

# **<u>EXHIBIT A</u>**

CONFIDENTIAL

ZFL-0749063

## 18.   FIRST/LAST REFUSAL

*A)*      Upon expiration of the Term, FIGHTER agrees to negotiate exclusively and in good faith with PROMOTER regarding the extension or renewal of the Term for a period of ninety (90) days following the expiration of the Term.

*B)*      In the event no such agreement is reached between FIGHTER and PROMOTER during the aforementioned ninety (90) day period, FIGHTER may negotiate with other promotional entities, subject to PROMOTER's right to match the terms of any agreement offered to FIGHTER by such other promotional entity.  PROMOTER's right to match shall begin at the end of the ninety (90) day period and last for one (1) year.

*C)*      FIGHTER shall provide PROMOTER with prompt written notice of any such offer, containing full details in regards thereof.   Such notice shall constitute an exclusive, irrevocable offer to contract with PROMOTER on the same terms and conditions.  PROMOTER shall have fourteen (14) business days after receipt of said notice to either accept or reject said offer.  If PROMOTER rejects said offer, FIGHTER may accept said offer with the promotional entity on the same terms and conditions and without any modifications thereto.  If the offer is modified in any material way, such modification shall give rise to another option for PROMOTER to match the terms of the offer as modified.

*D)*      PROMOTER's failure to accept any offer shall not constitute a waiver of last refusal with respect to subsequent offers.

ZFL-0749064

24. <u>**CHOICE OF LAW/VENUE**</u>

The law of the State of New Jersey applicable to contracts executed and to be fully performed in the State of New Jersey shall govern this Agreement, and FIGHTER's execution of this Agreement shall constitute his consent to the exclusive jurisdiction of the Courts of the State of New Jersey and the United States Courts located in New Jersey and to serve all process pursuant to the applicable section of the New Jersey Court Rules and/or Statutes with respect to matters relating to this Agreement or any dispute between the parties; <u>provided</u>, <u>however</u>, that actual Bouts will be conducted under the rules of the Commission in whose jurisdiction the Bout is to take place.

ZFL-0749065

# EXHIBIT B

CONFIDENTIAL

ZFL-0749066



November 1, 2012

**VIA EMAIL AND CERTIFIED MAIL**

Eddie Alvarez
3208 Saxon Place
Philadelphia, PA 19114

<u>**RE: Exclusive Negotiation Period**</u>

Dear Mr. Alvarez,

Reference is made to your long-term Promotional Agreement with Bellator Sport Worldwide, LLC ("Bellator"). As you know, pursuant to Paragraph 8 of your Promotional Agreement, the Extension Term of the Agreement concluded on October 12, 2012.

Bellator is hereby agreeing to conditionally waive its rights to the period of exclusive negotiation with you as set forth in Paragraph 18(A) of the Promotional Agreement, provided that this waiver is <u>only</u> with respect to negotiations you may engage in with Zuffa, LLC. Your exclusive negotiation period obligations and Bellator's rights with respect to any and all other third party combat sports promotions that may wish to engage in negotiations with you as set forth in Paragraphs 18(B)-(C) of the Promotional Agreement shall be stayed.

This waiver will only be effective and you may only begin negotiations with Zuffa, LLC (and only Zuffa, LLC) upon your signature below, which shall acknowledge the terms and conditions of this limited waiver.

For avoidance of doubt, upon your signature below, you are permitted to negotiate with and entertain offers from, and only from, Zuffa, LLC. Upon receipt of such an offer, you are thereafter obligated to produce to Bellator a true copy of the proposed agreement with Zuffa, LLC, at which time Bellator shall have fourteen (14) business days from receipt of the full agreement to consider whether it will match the terms of the offer. Should Bellator elect to match the offer, no further offers may be entertained by you and you will be obligated to contract with Bellator on the terms that Bellator agreed to match.

This letter is written with all rights reserved.

Sincerely,

Tracey S. Lesetar
*General Counsel*

*Agreed and Accepted:*

Date: 11-2-11
EDDIE ALVAREZ

5000 BIRCH STREET, SUITE 7100, NEWPORT BEACH, CA 92660

WWW.BELLATOR.COM

CONFIDENTIAL

# **EXHIBIT C**

CONFIDENTIAL

**From:** Neal Tabachnick <ntabachnick@wrslawyers.com>

**To:** bjorn <bjorn@bellatorfc.com>; bjorn <bjorn@bellator.com>; dinesandenglish <dinesandenglish@aol.com>; tracey <tracey@bellator.com>

**Cc:** Glenn H. Robinson <glenn@authenticsportsmgmt.com>

**Subject:** Eddie Alvarez

**Date:** Wed, Nov 28, 2012 6:02 pm

**Attachments:** Alvarez_Eddie_Promotional_Agreement_8_fights_11_28_12.PDF (194K), Alvarez_Eddie_Signing_Bonus_11-07-12.DOC (1415K)

TO:

Bellator Sport Worldwide, LLC

935 North Kenter Avenue

Suite 100

Los Angeles, California 90049

Email: bjorn@bellatorfc.com

and

Patrick C. English, Esq.

Dines and English, L.L.C.
685 Van Houten Avenue

Clifton, New Jersey 07013
Telecopier: (973) 778-7633

Email: dinesandenglish@aol.com

Dear Bjorn, Patrick and Tracey:

Attached please find the proposed Promotional and Ancillary Rights Agreement and Signing Bonus Letter of Agreement (the "Collective Proposed Agreement"), both between Zuffa, LLC and Eddie Alvarez, transmitted to you for the sole purpose of Bellator's matching rights pursuant to its Agreement with Eddie Alvarez (signed by Eddie Alvarez on October 28, 2008) and the terms of your Exclusive Negotiation Period letter of November 1, 2012.

These materials are transmitted to you in strictest confidence for the sole express purpose of Bellator considering its said matching right, and no other purpose. Bellator should destroy all these materials once that procedure has been completed.

CONFIDENTIAL                                                                                              ZFL-0749069

As you know, Bellator has 14 business days from today within which to assert in writing that it will match all terms of this submitted Collective Proposed Agreement with Zuffa, LLC; otherwise, Eddie Alvarez is free to enter into this Collective Proposed Agreement with Zuffa, LLC.

Please contact me if you have any questions or comments.

Reserving all client and client representative rights.

Best,

Neal

Neal Tabachnick, Esq.

Partner
Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP
11400 W. Olympic Blvd.
9th Floor
Los Angeles, California 90064

E-Mail: ntabachnick@wrslawyers.com

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive e-mails for the addressee), you may not use, copy or disclose to anyone this message or any information contained in this message. If you have received this message in error, please advise the sender by reply e-mail to ntabachnick@wrslawyers.com, and delete the message. Thank you.

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by U.S. Treasury Regulation Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

CONFIDENTIAL
ZFL-0749070

# **<u>EXHIBIT D</u>**

CONFIDENTIAL

ZFL-0749071

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

## PROMOTIONAL AND
## ANCILLARY RIGHTS AGREEMENT

**THIS PROMOTIONAL AND ANCILLARY RIGHTS AGREEMENT** (the "**Agreement**") is made as of the date set forth below (the "**Effective Date**") by and between **ZUFFA, LLC,** a Nevada limited liability company d/b/a Ultimate Fighting Championship® with offices at 2960 W. Sahara Avenue, Las Vegas, NV 89102 ("**ZUFFA**") and Eddie Alvarez ("**Fighter**").

### RECITALS

A.      ZUFFA is in the business of, among other things, promoting mixed martial arts fighting competitions throughout the world under the trade name of Ultimate Fighting Championship® ("**UFC**") and desires to serve as the promoter for Fighter's future bouts for a period of time, provided that Fighter grants to ZUFFA certain promotional rights and ancillary rights, with such ancillary rights being granted to ZUFFA in perpetuity, as set forth herein; and

B.      Fighter is a professional mixed martial arts fighter and desires to obtain the promotional services of ZUFFA for Fighter's future bouts for a period of time, and Fighter is willing to grant to ZUFFA certain promotional rights and ancillary rights, with such ancillary rights being granted to ZUFFA in perpetuity, as set forth herein.

**NOW, THEREFORE,** in consideration of the foregoing, the agreements and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, ZUFFA and Fighter agree as follows:

### ARTICLE I
### GRANT OF PROMOTIONAL RIGHTS

1.      The Fighter hereby grants to ZUFFA the exclusive unrestricted worldwide right to secure, promote, arrange and present any and all mixed martial arts contests (individually, a "**Bout**" and collectively, the "**Bouts**") to be engaged in by Fighter during the Term (as defined herein ) and any Extension Term (as defined herein), including all rights to stage each Bout and to sell tickets of admission thereto (the "**Promotional Rights**") and to exploit the Ancillary Rights (as defined herein) to each Bout in all media, now known or hereafter devised throughout the world in perpetuity.

### ARTICLE II
### GRANT OF ANCILLARY RIGHTS

2.1     Fighter hereby grants to ZUFFA the exclusive worldwide right to use, display, disseminate, edit, reproduce, print, publish and make any other use of the name, sobriquet, image, likeness, voice, persona, signature, and biographical material of Fighter and all persons associated with Fighter (collectively, the "**Identity**"), in any medium in connection with advertising, marketing, exploiting and promoting the UFC brand and each Bout and the exploitation of all rights pertaining thereto as provided herein and all rights to each Bout electronic and other (the "**Ancillary Rights**" and, collectively with the Promotional Rights, the "**Rights**").

2.2     The Promotional Rights and Ancillary Rights shall be the sole property of ZUFFA throughout the world, which property ZUFFA shall hold free and clear from any and all claims of Fighter

1

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

or anyone claiming through Fighter. For the avoidance of doubt, ZUFFA shall hold the Ancillary Rights described herein in perpetuity, which rights shall survive even the death of the Fighter.

2.3     The Rights include the following:

a.     The right to receive and retain all site fees, live-gate ticket and other revenues, subscription revenues, advertising fees, sponsorship fees, and the like.

b.     All media, including, but not limited to, motion picture, radio, television (which term whenever referred to herein shall include, without limitation, live or delayed, interactive, home or theater, over-the-air broadcast, pay, pay-per-view, satellite, closed circuit, cable, subscription, Video On Demand, Near Video On Demand, Subscription Video On Demand, multi-point, master antenna, or other), telephone, wireless, computer, CD-ROM, DVD, any and all Internet applications (including, without limitation, netcasting, podcasting, direct download, streamed webcasting, internet channels (*e.g.*, Youtube) or any other form of digital media download or web syndication), films and tapes for exhibition in any and all media and all gauges, including but not limited to video and audio cassettes and disks, home video and computer games, arcade video games, hand-held versions of video games, video slot machines, photographs (including raw footage, out-takes and negatives), merchandising and program rights, in connection with or based upon the UFC brand, the Bouts or activities pertaining to the Bouts, including but not limited to, training, interviews, press conferences, weigh-ins and behind-the-scenes footage for the Bouts (the "**Pre-Bout Events**"), post-fight interviews and press conferences (the "**Post-Bout Events**") and any parts thereof on a commercial, sustaining, theatrical or other basis, and by any and all means, methods and devices whatsoever, now existing or hereafter devised.

c.     The right to sell, assign, lease, license, sublease, use or otherwise dispose of any and all of the Rights and the results of the exercise thereof, and to authorize, license and grant the right to exercise any of the Rights and to retain the proceeds therefrom.

d.     The right to do all things necessary for the full and complete use, exploitation and exercise of the Rights, including the right to promote and exploit all rights granted hereunder and receive and retain the results of the exercise thereof, and the right to negotiate, enter into and perform any and all agreements relating to the Rights for the proper production and promotion of radio and television advertisements, publicity, and broadcasts relating to the UFC brand, the Bouts, the Pre-Bout Events and the Post-Bout Events.

e.     All right, title and interest in and to any and all recordings, including without limitation, television, radio, Internet, wireless and motion picture films, and the video and audio cassettes of, or based upon the UFC brand, the Bouts, the Pre-Bout Events and the Post-Bout Events, and the right to secure in the name of ZUFFA (or that of its nominee) copyright and other protection to the fullest extent available in the United States and all other countries of the world where such protection is available.

f.     The unrestricted right to use, edit, disseminate, display, reproduce, print or publish in any media the Identity of Fighter for the purpose of advertising, promotion, publicity, merchandising and exploitation of the UFC brand, the Bouts, the Pre-Bout Events and Post-Bout Events, including the use of the Identity of Fighter to advertise any commercial product or service of a ZUFFA sponsor or any network, station or other exhibitor, for which activities Fighter hereby waives his personal

2

ZFL-0749073

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

right of privacy; provided, that ZUFFA agrees that it shall not authorize or permit the Identity of Fighter to be used as a direct or implied endorsement of any product, service, sponsor or commodity.

g.    The unrestricted right to use, edit, disseminate, display, reproduce, print, publish and make any other uses of the Identity of Fighter in connection with the development, manufacturing, distribution, marketing or sale of any and all interactive devices, home video and computer games, arcade video games, hand held versions of video games, video slot machines, CD-ROMS, DVDs, Internet applications, wireless, video and audio cassettes and disks, apparel (such as t-shirts, hats and jackets), banners, buttons, posters, jewelry, photographs, souvenirs, programs, toys, merchandising tie-ups and advertisements, and any and all other similar type products, including the sleeves, jackets and packaging for such products, hereunder made by any method now known or hereafter devised.  Additionally, Fighter acknowledges the existence of UFC Video Games (as defined herein) developed, being developed or to be developed by various companies, including, but not limited to, Electronic Arts Inc.  Fighter further acknowledges that the Rights granted herein to ZUFFA shall be <u>exclusive</u> with respect to any UFC Video Game, and any derivatives of such video games created by ZUFFA or its licensees.  "**UFC Video Game**" shall mean any video game created by Zuffa or its licensees and branded with UFC, Pride, WEC, Strikeforce or any brand subsequently developed, owned or acquired by ZUFFA or any of its agents or subsidiaries.  ZUFFA acknowledges and agrees that Fighter shall be paid a bonus, as determined in the sole discretion of ZUFFA, for each console version of a UFC Video Game in which Fighter appears.  Notwithstanding the immediately preceding sentence, ZUFFA agrees that if it does not utilize the Identity of Fighter in a UFC Video Game within three (3) years of the Effective Date, that the Rights granted by Fighter to ZUFFA pursuant to this Section 2.3(g) shall become non-exclusive and Fighter shall have right to exploit his Identity in video games that are not UFC Video Games.

h.    The non-exclusive right to use a three minute excerpt clip of the recording of any bout, including any non-ZUFFA/UFC bout, in which Fighter was a participant (to the extent that Fighter possesses the rights thereto or can reasonably obtain such rights), for the purpose of publicizing a Bout, which clip shall be provided to ZUFFA upon request therefore.

i.    To the extent Fighter owns or controls, in whole or in part, the copyrights and other right, title and interest in and to any tattoos etched or otherwise displayed on the bodies of Fighter and any persons associated with Fighter, the irrevocable, perpetual non-exclusive, transferrable, assignable and sub-licensable right and license throughout the world, to use, publish, reproduce, distribute, display and exhibit such tattoos in any manner and on or through any media, in connection with ZUFFA's exercise of any of its other Rights hereunder.

2.4    To the extent that Fighter is deemed to have, retain or otherwise possess any right, title or interest in or to all or any portion of the UFC brand, any Bouts, any Pre-Bout Events or Post-Bout Events, or any works created or produced pursuant to or in connection with this Agreement (collectively, the "<u>**ZUFFA IP**</u>"), then for the consideration set forth herein, Fighter hereby transfers, conveys and assigns same to ZUFFA and shall execute all documents and undertake all actions necessary to effect the clarification of ownership of all right, title and interest in and to such ZUFFA IP to ZUFFA and to allow ZUFFA to apply for and maintain any copyright and trademark registrations and other intellectual property registrations or issuances with respect to the ZUFFA IP and any renewals or extensions thereof, Fighter hereby irrevocably designates and appoints ZUFFA and ZUFFA's employees, agents, representatives, affiliates, licensees, designees, successors and assigns ("<u>**ZUFFA's Representatives**</u>") as Fighter's agent and attorney-in-fact to act for and on Fighter's behalf and to execute and file all such documents consistent herewith (that ZUFFA is unable after reasonable efforts to obtain Fighter's

3

ZFL-0749074

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

signature on) and to do all other lawfully permitted acts necessary to carry out the provisions of this Agreement.

2.5     Fighter waives, discharges and releases ZUFFA and ZUFFA's Representatives from any and all claims; (i) of infringement of any right of Fighter in, to or respecting the ZUFFA IP and (ii) arising from ZUFFA or ZUFFA's Representatives' use of the Identity of Fighter or another exploitation of the Rights in any manner contemplated or set forth herein (including, without limitation, any claims based on Fighter's moral rights in the ZUFFA IP or for inspection, approval, damages for libel, intellectual property infringement or violation of Fighter's rights of privacy or publicity).

2.6     Fighter acknowledges and agrees that Fighter shall have no right of approval or consultation with respect ZUFFA's exercise of any Rights granted or assigned to it hereunder and nothing in this Agreement shall obligate ZUFFA to exercise any of its Ancillary Rights.

ARTICLE III
PROMOTION

3.1     Each Bout shall be a mixed martial arts contest, one-on-one fight between Fighter and an opponent designated by ZUFFA, subject to Fighter approval not to be unreasonably withheld, delayed or conditioned, conducted pursuant to the rules and regulations of the athletic commission, federation or official authority having jurisdiction over the Bout or ZUFFA pursuant to Section 3.7 (the "**Athletic Commission**"). Fighter and ZUFFA shall comply with and be bound by the rules and regulations of the Athletic Commission. For Bouts that occur in a jurisdiction or country without an Athletic Commission, the provisions of Section 3.7 shall control. In the event that Fighter does not approve of an opponent designated by ZUFFA, ZUFFA may, at its election and in accordance with the terms and conditions of Section 4.3 of this Agreement, extend the Term of this Agreement for the period required to designate another opponent for Fighter or six (6) months, whichever is longer.

3.2     ZUFFA shall promote and Fighter shall participate in the minimum number of Bouts set forth in Article IV below. For purposes hereof, ZUFFA shall be deemed to have complied with its obligations to promote any Bout if ZUFFA shall have made an offer to Fighter to promote a Bout in accordance with the provisions hereof and Fighter shall have refused to participate. If a Bout is the undercard to a main event and the main event is canceled or postponed for any reason, the failure of such Bout to take place shall not be deemed non-performance by ZUFFA and ZUFFA shall not be liable for Fighter's Purse associated therewith (as defined herein).

3.3     Fighter shall cooperate and assist in the advertising, publicity, and promotion of (i) the Bouts, (ii) any and all rebroadcast of the Bouts in any media whatsoever, (iii) other UFC bouts, (iv) other UFC events and broadcasts, and (v) the sale of UFC merchandise, including making appearances at a reasonable number of press conferences, interviews and other sponsorship and promotional activities (any of which may be telecast, broadcast, recorded or filmed) at times and places reasonably designated by ZUFFA, without additional compensation therefore. For such promotional activities, ZUFFA will arrange and pay for Fighter's reasonable travel, hotel and meal accommodations.

3.4     All Bouts shall be on dates and at sites to be designated by ZUFFA, in its sole and absolute discretion. If any Bout is postponed for any reason except ZUFFA's non-performance, the Bout Agreement applicable to such Bout shall determine the rights of the parties and in addition thereto, the

4

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

Term shall be extended, at ZUFFA's election, by a number of days equal to the number of days between the date originally scheduled for the Bout and the date on which the Bout occurs.

3.5     During the Term, ZUFFA shall have the exclusive right to promote all of Fighter's bouts and Fighter shall not participate in or render his services as a professional fighter or in any other capacity to any other mixed martial art, martial art, boxing, professional wrestling, or any other fighting competition or exhibition, except as otherwise expressly permitted by this Agreement.

3.6     Notwithstanding the foregoing, in the event Fighter is not then a UFC champion, Fighter is permitted, subject to the prior written consent of ZUFFA, which consent may be granted or withheld in ZUFFA's sole discretion, to contract with other promoters or to engage in any mixed martial arts bout or fighting competition or exhibition promoted by other promoters (an "**Other Bout**") during the Term provided (i) such Other Bout is not televised by any domestic or international television network, station, cable system, satellite or other provider or via Internet or wireless exhibition; (ii) such Other Bout is scheduled for and takes place on a date which is more than sixty (60) days before or more than thirty (30) days after any non-championship Bout and more than ninety (90) days before or more than thirty (30) days after any championship Bout; (iii) a copy of any agreement for any Other Bout shall have been furnished to ZUFFA at least one (1) week prior to its execution by Fighter; and (iv) a fully executed copy of any such agreement is provided to ZUFFA within five (5) days of execution by Fighter.  Except in compliance with the foregoing limited exception, Fighter shall not, during the Term, grant promotional or other rights which conflict with the Rights. Furthermore,  Fighter expressly agrees that this Agreement shall be automatically extended for an additional one hundred twenty (120) days for each non-UFC promoted mixed martial arts competition or exhibition that Fighter participates in, and any reference to the Term herein shall be deemed to include any such extension(s).

3.7     Any and all Bouts that occur in a jurisdiction without an Athletic Commission shall be conducted pursuant to the statutes, rules and regulations of the State of Nevada in effect at the time of the Bout, including, but not limited to, the Unified Rules of Mixed Martial Arts (the "**Nevada Rules**"); for the protection of the health and safety of the Fighter, to promote fairness in the administration of the Bout, and to preserve the integrity of the sport of mixed martial arts.  Fighter may appeal any advisory opinion by ZUFFA regarding any application of the Nevada Rules relating to Bouts that occur in a jurisdiction without an official government mandated Athletic Commission to an independent third-party arbitrator or arbitration panel selected pursuant to the guidelines developed by Judicial Arbitration and Mediation Services, Inc.  All costs and fees associated with an appeal taken pursuant to this Section shall be the exclusive responsibility of the Fighter.  Regardless of where a Bout occurs, in no event shall a Fighter have any right to appeal a decision by ZUFFA relating to the UFC Title or the UFC Championship belts.

3.8     Additionally, ZUFFA agrees to utilize Fighter in a Bout that broadcast on Fox Network Television during the Term.

3.9     ZUFFA also agrees to utilize Fighter on no less than three (3) occasions, during the Term, as "on-air" talent to provide commentating services for other UFC branded events in which Fighter is not then participating the date, timing and location of which shall be at ZUFFA's discretion.

//

//

5

                                                            ZFL-0749076

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

## ARTICLE IV
## TERM

4.1     The duration of the Promotional Rights provided herein (the "**Term**") shall commence on the Effective Date and end on the earlier of (i) forty (40) months after the first bout promoted by ZUFFA involving Fighter under this Agreement; or (ii) the date on which Fighter has participated in at least eight (8) Bouts promoted by ZUFFA pursuant to this Agreement (the "**Termination Date**"), unless terminated sooner or extended further pursuant to the provisions of this Agreement.

4.2     If, at the expiration of the Term, Fighter is then a UFC champion, the Term shall automatically be extended for the period commencing on the Termination Date and ending on the later of (i) one (1) year from the Termination Date; or (ii) the date on which Fighter has participated in three (3) bouts promoted by ZUFFA, regardless of weight class or title, following the Termination Date ("**Extension Term**").  Any reference to the Term herein shall be deemed to include a reference to the Extension Term, where applicable.

4.3     The length of time for ZUFFA to provide Fighter with the minimum number of Bouts enumerated in this Article IV shall be extended for six (6) months or any period of time that Fighter is unable or unwilling to compete, whichever is greater.  Such extension shall include, without limitation, any time periods when Fighter is disabled, sick or injured for any reason; incarcerated; suspended or revoked by an Athletic Commission; has his ability to travel restricted by a governmental agency or is otherwise unable, unwilling or refuses to compete or train for a Bout for any reason whatsoever, including, without limitation, not approving of an opponent designated by ZUFFA pursuant to Section 3.1 of this Agreement.  Additionally, the length of time for ZUFFA to provide Fighter with the minimum number of Bouts enumerated in this Article IV shall also be extended for any length of time that Fighter serves as a coach on the "*The Ultimate Fighter*"® reality television series or six (6) months whichever is longer.

4.4     The expiration or earlier termination of the Term, any Acceleration (as defined herein), or the death or incapacity of the Fighter, shall not affect or terminate the grant of the Ancillary Rights or any of the other general or specific provisions of this Agreement, all of which shall survive any such expiration, termination, Acceleration, death or incapacity.

4.5     ZUFFA shall not be deemed in default of this Agreement to the extent that performance of its obligations are delayed or prevented by reason of any act of God, fire, natural disaster, war, riots, civil unrest, strike or labor difficulties, terrorism, power failure, other calamity or acts constituting force majeure, or any governmental or Athletic Commission enactment, determination or action, regulation or order. If there is an occurrence of a force majeure event or other bona fide action, ZUFFA may elect to suspend this Agreement for a period equal to the duration of the occurrence, and no compensation shall be paid or become due to Fighter during such suspension period.

## ARTICLE V
## BOUT AGREEMENT AND STANDARD FIGHTER CONTRACT

5.     For each Bout, Fighter shall execute and comply with the terms of a Bout Agreement ("**Bout Agreement**"), which shall be either the standard fighter contract required by the applicable Athletic Commission or pursuant to the Nevada Rules, as applicable (the "**Standard Fighter Contract**"), and any other contract required to be executed by law, the terms of which shall be consistent with the

6

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

terms of this Agreement.  To the extent of any conflict between this Agreement and a Bout Agreement with respect to a Bout, the Bout Agreement shall control.

ARTICLE VI
COMPENSATION

6.1     Subject in all events to Section 10.1(d), the Compensation to Fighter shall take the form of a "**Fighter's Purse**" and, if and only if Fighter is declared the winner of a Bout by the Athletic Commission, a "**Win Bonus**," each in the amount as set forth below.

a.     Fighter's Purse for the first Bout shall be Seventy Thousand Dollars (US $70,000.00), less all permissible or required deductions.  If and only if Fighter is declared the winner of the first Bout by the Athletic Commission, the Win Bonus for the first Bout shall be Seventy Thousand Dollars (US $70,000.00), less all permissible or required deductions.

b.     If and only if Fighter is declared the winner of the first Bout by the applicable Athletic Commission, Fighter's Purse for the second Bout shall be Seventy-Five Thousand Dollars (US $75,000.00), less all permissible or required deductions.  If and only if Fighter is declared the winner of the first Bout and the second Bout by the Athletic Commission, the Win Bonus for the second Bout shall be Seventy-Five Thousand Dollars (US $75,000.00), less all permissible or required deductions.  If Fighter is not declared the winner of the first Bout (and there is no Acceleration), Fighter's Purse and Win Bonus for the second Bout shall be as set forth in subsection (a) above.

c.     If and only if Fighter is declared the winner of the first Bout and the second Bout by the applicable Athletic Commission, Fighter's Purse for the third Bout shall be Eighty Thousand Dollars (US $80,000.00), less all permissible or required deductions.  If and only if Fighter is declared the winner of the first Bout, the second Bout, and the third Bout by the applicable Athletic Commission, the Win Bonus for the third Bout shall be Eighty Thousand Dollars (US $80,000.00), less all permissible or required deductions.  If Fighter is not declared the winner of the first Bout and the second Bout by the applicable Athletic Commission (and if there is no Acceleration), Fighter's Purse and Win Bonus for the third Bout shall be the same as set forth in subsection (a) above.  If Fighter is declared the winner of either the first Bout or the second Bout by the applicable Athletic Commission, but not both (and if there is no Acceleration) Fighter's Purse and Win Bonus for the third Bout shall be as set forth in subsection (b) above.

d.     If and only if Fighter is declared the winner of the first Bout, second Bout and third Bout by the applicable Athletic Commission, Fighter's Purse for the fourth Bout shall be Eighty-Five Thousand Dollars (US $85,000.00), less all permissible or required deductions.  If and only if Fighter is declared the winner of the first Bout, the second Bout, the third Bout, and the fourth Bout by the applicable Athletic Commission, the Win Bonus for the fourth Bout shall be Eighty-Five Thousand Dollars (US $85,000.00), less all permissible or required deductions.  If Fighter is not declared the winner of the first Bout, second Bout and third Bout (and if there is no Acceleration), Fighter's Purse and Win Bonus for the fourth Bout shall be as set forth in subsection (a) above.  If Fighter is declared the winner of only one of the first three Bouts by the applicable Athletic Commission (and if there is no Acceleration) Fighter's Purse and Win Bonus for the fourth Bout shall be as set forth in subsection (b) above.  If Fighter is declared the winner of only two of the first three Bouts by the applicable Athletic Commission (and if there is no Acceleration) Fighter's Purse and Win Bonus for the fourth Bout shall be as set forth in subsection (c) above.

7

                                                                                                    ZFL-0749078

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

    e.  If and only if Fighter is declared the winner of the first Bout, second Bout, third Bout and the fourth Bout by the applicable Athletic Commission, Fighter's Purse for the fifth Bout shall be Ninety Thousand Dollars (US $90,000.00), less all permissible or required deductions.  If and only if Fighter is declared the winner of the first Bout, the second Bout, the third Bout and the fourth Bout by the applicable Athletic Commission, the Win Bonus for the fifth Bout shall be Ninety Thousand Dollars (US $90,000.00), less all permissible or required deductions.  If Fighter is not declared the winner of the first Bout, the second Bout, the third Bout and the fourth Bout by the applicable Athletic Commission (and if there is no Acceleration), Fighter's Purse and Win Bonus for the third Bout shall be the same as set forth in subsection (a) above.  If Fighter is declared the winner of one the first four Bouts by the applicable Athletic Commission (and if there is no Acceleration), Fighter's Purse and Win Bonus for the third Bout shall be the same as set forth in subsection (b) above.  If Fighter is declared the winner of two of the first four Bouts by the applicable Athletic Commission (and if there is no Acceleration), Fighters Purse and Win Bonus for the fifth Bout shall be the same as set forth in subsection (c) above.  If Fighter is declared the winner of three of the first of the first four Bouts by the applicable Athletic Commission (and if there is no Acceleration), Fighters Purse and Win Bonus for the fifth Bout shall be the same as set forth in subsection (d) above.

    f.  If and only if Fighter is declared the winner of the first Bout, second Bout, third Bout, the fourth Bout and the fifth Bout by the applicable Athletic Commission, Fighter's Purse for the sixth Bout shall be Ninety-Five Thousand Dollars (US $95,000.00), less all permissible or required deductions.  If and only if Fighter is declared the winner of the first Bout, the second Bout, the third Bout, the fourth Bout, the fifth Bout and the sixth Bout by the applicable Athletic Commission, the Win Bonus for the sixth Bout shall be Ninety-Five Thousand Dollars (US $95,000.00), less all permissible or required deductions.  If Fighter is not declared the winner of the first Bout, the second Bout, the third Bout, the fourth Bout, and the fifth Bout by the applicable Athletic Commission (and if there is no Acceleration), Fighter's Purse and Win Bonus for the sixth Bout shall be the same as set forth in subsection (a) above.  If Fighter is declared the winner of one of the first five Bouts by the applicable Athletic Commission (and if there is no Acceleration), Fighter's Purse and Win Bonus for the sixth Bout shall be the same as set forth in subsection (b) above.  If Fighter is declared the winner of two of the first five Bouts by the applicable Athletic Commission (and if there is no Acceleration), Fighter's Purse and Win Bonus for the sixth Bout shall be the same as set forth in subsection (c) above.  If Fighter is declared the winner of three of the first five Bouts by the applicable Athletic Commission (and if there is no Acceleration), Fighter's Purse and Win Bonus for the sixth Bout shall be the same as set forth in subsection (d) above.  If Fighter is declared the winner of four of the first five Bouts by the applicable Athletic Commission (and if there is no Acceleration), Fighter's Purse and Win Bonus for the sixth Bout shall be the same as set forth in subsection (e) above.

    g.  If and only if Fighter is declared the winner of the first Bout, second Bout, third Bout, the fourth Bout the fifth Bout, and the sixth Bout, Fighter's Purse for the seventh Bout shall be One Hundred Thousand Dollars (US $100,000.00), less all permissible or required deductions.  If and only if Fighter is declared the winner of the first Bout, the second Bout, the third Bout, the fourth Bout, the fifth Bout, the sixth Bout, and the seventh Bout by the Athletic Commission, the Win Bonus for the seventh Bout shall be One Hundred Thousand Dollars (US $100,000.00), less all permissible or required deductions.  If Fighter is declared the loser of the first Bout, the second Bout, the third Bout, the fourth Bout, the fifth Bout and the sixth Bout (and if there is no Acceleration) Fighter's Purse and Win Bonus for the seventh Bout shall be the same as set forth in subsection (a) above.  If Fighter is declared the winner of one of the first six Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the seventh Bout shall be the same as set forth in subsection (b) above.  If Fighter is declared the winner of

8

ZFL-0749079

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

two of the first six Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the seventh Bout shall be the same as set forth in subsection (c) above.  If Fighter is declared the winner of three of the first six Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the seventh Bout shall be the same as set forth in subsection (d) above.  If Fighter is declared the winner of four of the first six Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the seventh Bout shall be the same as set forth in subsection (e) above.  If Fighter is declared the winner of five of the first six Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the seventh Bout shall be the same as set forth in subsection (f) above.

      h.    If and only if Fighter is declared the winner of the first Bout, second Bout, third Bout, the fifth Bout the sixth Bout, and the seventh Bout, Fighter's Purse for the eighth Bout shall be One Hundred Five Thousand Dollars (US $105,000.00), less all permissible or required deductions.  If and only if Fighter is declared the winner of the first Bout, the second Bout, the third Bout, the fourth Bout, the fifth Bout, the sixth Bout, the seventh Bout, and the eighth Bout by the Athletic Commission, the Win Bonus for the eighth Bout shall be One Hundred Five Thousand Dollars (US $105,000.00), less all permissible or required deductions.  If Fighter is declared the loser of the first Bout, the second Bout, the third Bout, the fourth Bout, the fifth Bout, the sixth Bout, and the seventh Bout (and if there is no Acceleration) Fighter's Purse and Win Bonus for the eighth Bout shall be the same as set forth in subsection (a) above.  If Fighter is declared the winner of one of the first seven Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the eighth Bout shall be the same as set forth in subsection (b) above.  If Fighter is declared the winner of two of the first seven Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the eighth Bout shall be the same as set forth in subsection (c) above.  If Fighter is declared the winner of three of the first seven Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the eighth Bout shall be the same as set forth in subsection (d) above.  If Fighter is declared the winner of four of the first seven Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the eighth Bout shall be the same as set forth in subsection (e) above.  If Fighter is declared the winner of five of the first seven Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the eighth Bout shall be the same as set forth in subsection (f) above.  If Fighter is declared the winner of six of the first seven Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the eighth Bout shall be the same as set forth in subsection (g) above.

      6.2    ZUFFA and Fighter intend for Fighter's first Bout, under this Agreement, to be for the UFC lightweight title and for said lightweight title Bout to occur before the end of March of 2013 so long as Fighter and the then current UFC lightweight champion is medically and/or otherwise able to compete by such date.  For the avoidance of doubt, however, regardless of whether Fighter's first Bout is for the lightweight title Bout and occurs on or before the end of March of 2013, in addition to the Fighter's Purse, (i) for Fighter's first Bout under this Agreement; and (ii) for any subsequent Bout thereafter in which Fighter participates in a Bout and is defending a UFC Championship belt, so long as such applicable UFC event is broadly distributed in the United States and/or Canada, or any other territory, including via the internet, and so long as the rates charged in said territories, or on the internet, are comparable to those charged in the United States or Canada, on residential pay-per-view on iN DEMAND, DirecTV, Echostar, or similar pay-per-view provider as utilized by ZUFFA ("Pay-Per-View Providers"),  then Fighter has the potential to receive a pay-per-view bonus.  If such UFC event exceeds specified buy rates of combined sales through Pay-Per-View Providers, Fighter shall receive a Pay-Per-View Bonus as follows:

9

ZFL-0749080

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

For combined Pay-Per-View Provider buys purchased within thirty (30) days of the live event, Fighter shall receive One dollar ($1.00) for each pay-per-view buy between 200,000 buys and 400,000 buys; and Two dollars ($2.00) for each pay-per-view buy between 400,000 buys and 600,000 buys; and Two dollars and Fifty Cents ($2.50) for each pay-per-view buy over 600,000 buys.

\*By way of example only, if such an applicable event were to generate 900,000 combined iN DEMAND, DirecTV, and Echostar, pay-per-view buys, Fighter would receive a pay-per-view Bonus of $1,350,000, which would represent $200,000 for applicable buys between 200,000 and 400,000 ($1 x 200,000 buys), $400,000 for applicable buys between 400,000 and 600,000 ($2.00 x 200,000 buys) and $750,000 for applicable buys between 600,000 and 900,000 ($2.50 x 300,000).

6.3     In order to verify ZUFFA's compliance with the potential pay-per-view bonus, Fighter is entitled, upon written notice of at least thirty (30) business days, to review, at ZUFFA's offices, all applicable pay-per-view reports that ZUFFA has received from iN DEMAND, DirecTV, Echostar and Canadian pay-per-view providers. Fighter may exercise this right no more than once each calendar year, for each Bout in which he participates, for up to two (2) years after the date of the applicable Bout. Pay-per-view bonus to be paid on an ongoing monthly basis subsequent to ZUFFA's receipt of payment from the pay-per-view providers and only if the aggregate amount owed to Fighter is in excess of $500.00. Fighter agrees to treat any such of review under this section as confidential and agree not to disclose any information reviewed hereunder except as required by law or pursuant to a valid Court order. Additionally, Fighter agrees to refund and reimburse ZUFFA for any overpayments in the event and to the extent iN DEMAND, DirecTV, Echostar and/or Canadian providers adjust the pay-per-view buys for any of Fighter's bouts retroactively. ZUFFA shall have the right to deduct any overpayment adjustments from future payments to Fighter. ZUFFA reserves the right to reduce payments related to Canadian or other non-US pay-per-view buys in the event of an adverse currency exchange rate at the time of the payment to Fighter.

6.4     ZUFFA shall pay Fighter's Purse and the Win Bonus, if applicable, within twenty-four (24) hours of the completion of each Bout, except that if Fighter tests positive for any Controlled Substance (defined below) in a post-fight drug test, payment will be subject to the authority of and ZUFFA shall make payments only in accordance with the recommendations of the Athletic Commission. ZUFFA may deduct or withhold from compensation any applicable tax (whether domestic or foreign), fee, or sum required or permitted to be deducted or withheld by law, and may offset against any such compensation any sums advanced to Fighter by ZUFFA or otherwise due from Fighter to ZUFFA.

6.5     The Fighter's Purse and Win Bonus, and, if applicable pay-per-view bonus, together with the Incidentals (defined below) shall be the sole compensation due to or claimed by Fighter on account of this Agreement, the Rights, and Fighter's participation in any Bout or any activity related thereto.

6.6     Any and all potential Fighter's Purses and, if applicable, Win Bonuses and/or pay-per-view bonuses capable of being earned during the Extension Term shall be negotiated in good faith between the parties. However, the parties expressly agree that such potential amounts are quantifiable and definite terms to this Agreement because each such Fighter's Purse and, if applicable, Win Bonus shall, at a minimum, be no less than the last Fighter's Purse and, if applicable, Win Bonus received by Fighter during the standard Term of this Agreement.

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

6.7     Any advances shall be made in the sole discretion of ZUFFA, and may be subject to the prior approval of the Athletic Commission.

6.8     Fighter shall operate within the requirements of all tax laws and regulations, and interpretations thereof, and be solely responsible for reporting the entire compensation paid under this Agreement and any corresponding agreements and ensure timely settlement of all taxes and other similar deductions.  ZUFFA shall provide Fighter with a Form 1099 within ninety (90) days following the close of its fiscal year.

ARTICLE VII
INCIDENTALS

7.1     In addition to the Fighter's Purse and, if applicable, the Win Bonus, as provided for above, Fighter shall be entitled to the transportation, lodging, meals or meal allowances, and Bout tickets (collectively, the "**Incidentals**") identified in the Bout Agreement. Such Incidentals shall not be less than the Incidentals set forth herein.

a.     For each non-championship Bout hereunder which Fighter participates in, ZUFFA shall provide a total of one (1) hotel or motel room and two (2) round-trip economy class airline tickets from the airport servicing Fighter's hometown to the site of the Bout for use by and transportation of Fighter and one (1) of Fighter's Affiliates (the "**Fighter's Affiliates**").  Fighter's Affiliates shall include, but not be limited to, his manager, agent, trainer, seconds, sparring partners and other persons associated with Fighter who are connected with the Bouts.

b.     For each championship Bout hereunder which Fighter participates in as the champion or the challenger for the championship, ZUFFA shall provide a total of two (2) hotel or motel rooms and three (3) round-trip economy class airline tickets from the airport servicing Fighter's hometown to the site of the Bout for use by and transportation of Fighter and two (2) of Fighter's Affiliates.

c.     For all Bouts hereunder, Fighter shall arrive and check in to the lodging provided by ZUFFA on the date specified in the Bout Agreement, which shall be any time up to eight (8) days prior to the date of the Bout (the "**Training Commencement Date**"), and shall check-out and depart from the lodging provided prior to the designated check-out time on the day after the Bout (the "**Departure Date**").

d.     From the Training Commencement Date through the Departure Date, Fighter and one (1) of Fighter's Affiliates shall each be provided with either Fifty Dollars (US $50.00) cash *per diem* for meals, or at ZUFFA's discretion, meal vouchers for three (3) meals per day.  Food and beverage allowances shall be non-cumulative from day to day.

e.     Lodging shall be provided only from the Training Commencement Date through the Departure Date.  Fighter and Fighter's Affiliates shall be required to present a valid credit card upon registering at the hotel or motel, which card shall be charged for any and all expenses and damages beyond the cost of the room, and ZUFFA shall have no obligation for such additional expenses.

11

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

f.      Fighter shall also be provided with four (4) tickets to each Bout hereunder, the selection and location of which shall be determined by ZUFFA.  If Fighter's Bout is the main event, Fighter shall receive tickets for seats located within ten (10) rows of the Octagon.

7.2     No other benefits, charges, expenses, or other incidentals of any kind (*e.g.*, telephone charges, beverages, entertainment, gift shop items or other such benefits, charges and expenses) shall be provided by ZUFFA to Fighter or anyone associated with Fighter, and Fighter shall not be entitled to receive compensation in lieu of any unused or undesired Incidental.

## ARTICLE VIII
## FIGHTER'S CONDUCT

8.1     Fighter shall conduct himself in accordance with commonly accepted standards of decency, social conventions and morals, and Fighter will not commit any act or become involved in any situation or occurrence or make any statement which will reflect negatively upon or bring disrepute, contempt, scandal, ridicule, or disdain to Fighter, the Identity of Fighter or any of Fighter's Affiliates, ZUFFA or any of its officers, managers, members, employees, or agents.  Fighter's conduct shall not be such as to shock, insult or offend the public or any organized group therein, or reflect unfavorably upon any current or proposed arena, site hotel, sponsor or such sponsor's advertising agency, or any network or station over which a Bout is to be broadcast.  In addition, Fighter agrees that during a Bout, or while training for a Bout, as well as during any Pre-Bout Events or Post-Bout Events, neither Fighter nor any of his managers, trainers and assistants shall wear any clothing or ornamentation, including, but not limited to, permanent or temporary tattoos or body art, that is lewd, obscene, offensive, defamatory, discriminatory on the basis of age, sex, race, color, creed, national origin, political belief, religious belief or sexual orientation or otherwise inappropriate as determined by ZUFFA in its sole discretion or which conflicts with a ZUFFA sponsor, the arena or telecaster.

8.2     Fighter and Fighter's Affiliates shall maintain a high standard of sportsmanship and conduct themselves in a professional manner prior to, during, and following each Bout.

8.3     Fighter shall not authorize or be involved with any advertising material or publicity materials that contain language or material which is generally considered to be obscene, libelous, slanderous or defamatory and will not violate or infringe upon, or give rise to any adverse claim with respect to, any common-law or other right whatsoever (including, but not limited to, any copyright, trademark, service mark, literary, dramatic, music or motion picture right, right of privacy or publicity, contract or moral rights of authors) of any person or entity.

8.4     Fighter shall maintain his eligibility and keep in good standing any license required to participate in any Bout.

8.5     Fighter shall not use any controlled or banned substance, including but not limited to marijuana, cocaine, methamphetamine, steroids, human growth hormone or any similar drugs or blood doping techniques (each a "**Controlled Substance**").  Fighter agrees that an Athletic Commission may test Fighter for Controlled Substances, and Fighter agrees to submit to any pre-Bout or post-Bout drug test as requested by an Athletic Commission.  Fighter shall be deemed to be in breach of this Section if Fighter tests positive for any Controlled Substance in any pre-Bout or post-Bout drug test.

12

ZFL-0749083

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

8.6     Fighter acknowledges that an Athletic Commission may fine, suspend or impose other penalties, including but not limited to removing recognition from Fighter of any Championship title, status or belt if Fighter tests positive for a Controlled Substance.

ARTICLE IX
INJURY OR RETIREMENT

9.1     If at any time during the Term, ZUFFA offers to promote a Bout for Fighter and Fighter refuses to participate in or attempts to cancel or postpone such Bout for reason of a claimed injury or other medical disability, ZUFFA shall have the right, but not the obligation, to have Fighter examined by a medical doctor of its choice at ZUFFA's expense, and, if ZUFFA so elects, Fighter shall appear for such examination on one (1) day's notice.

9.2     If at any time during the Term, Fighter claims to be injured or temporarily disabled, ZUFFA may, at its election, for each such injury or disability claimed by Fighter, (i) extend the Term for the period of such injury or disability or for the period of six (6) months, whichever is longer; (ii) declare that ZUFFA has satisfied its obligation to promote one (1) of the Bouts to be promoted by ZUFFA hereunder, without any compensation due to Fighter for said Bout; or (iii) provide Fighter with notice of an Acceleration as defined herein.

9.3     If at any time during the Term, Fighter decides to retire from mixed martial arts or other professional fighting competition or is permanently disabled, then ZUFFA may, at its election, (i) suspend the Term for the period of such retirement or disability; (ii) declare that ZUFFA has satisfied its obligation to promote all future Bouts to be promoted by ZUFFA hereunder, without any compensation due to Fighter therefor; or (iii) elect to provide Fighter with notice of an Acceleration.

ARTICLE X
TERMINATION/REMEDIES

10.1    ZUFFA shall have the right, but not the obligation, upon notice to Fighter, to accelerate the Term and thereby terminate ZUFFA'S promotional and other obligations hereunder and under any Bout Agreement then in effect (an "**Acceleration**") and to terminate Fighter's participation in any Bout, with Acceleration effective as of the date of notice, and to withdraw recognition from Fighter of any Championship Title, Status and Belt, if:

a.      Fighter fails, for any reason whatsoever (other than the injury or physical disability of Fighter or any act of God as provided in Section 4.5) to engage in the minimum number of Bouts as offered by ZUFFA;

b.      Fighter or any of Fighter's Affiliates materially breach, violate or are in default of any provision of this Agreement or any other agreement hereafter entered into between Fighter and ZUFFA;

c.      any of the representations or warranties of Fighter contained herein were false when made or are no longer true and correct;

13

ZFL-0749084

CONFIDENTIAL
FOR INTERNAL DISCUSSION PURPOSES ONLY
NOT TO BE DISSEMINATED

   d. Fighter is not declared the winner of any mixed martial arts bout (whether promoted by ZUFFA or not) by the Athletic Commission or official authority having jurisdiction over the bout; or

   e. Fighter's license to participate in bouts is suspended or revoked by an Athletic Commission.

   f. Fighter is unable to obtain the necessary documentation, including any work visas, to lawfully permit Fighter or Fighter's Affiliates to participate in any Bout as provided for in Section 23.2 of this Agreement.

   g. Fighter is charged with a misdemeanor (other than a minor traffic offense) or a felony.

   h. Fighter should commit any act which would permit any arena, event site or television broadcaster, distributor or exhibitor to cancel its contract with ZUFFA for a particular Bout in which Fighter was to participate.

 10.2 Acceleration shall be without further liability or obligation from ZUFFA to Fighter, except for the payment of any Fighter's Purse or Win Bonus, if applicable, or other amounts due for Bouts that have been completed prior to Acceleration.

 10.3 Acceleration shall not serve to affect or terminate any of the Ancillary Rights, and this Agreement shall survive an Acceleration and remain in full force and effect with respect to the Ancillary Rights.  ZUFFA's failure to accelerate in any particular case shall not constitute a waiver for future such cases.

 10.4 Fighter acknowledges that his services as a professional fighter and the Ancillary Rights granted to ZUFFA herein are special, unique, extraordinary, irreplaceable and of peculiar value, and that in the event of Fighter's breach or threatened breach of this Agreement or any Bout Agreement, ZUFFA would suffer irreparable damage which could not be reasonably or adequately compensated by an award of damages.  In the event of such breach or threatened breach, ZUFFA shall be entitled, in addition to any other available remedy, to obtain equitable relief, including, but not limited to, an injunction against such breach and Fighter waives the right to assert as a defense in any such action that ZUFFA has an adequate remedy at law.  To the extent that a bond is necessary to obtain an injunction, Fighter agrees that the bond shall not exceed Five Hundred Dollars (US $500.00).

 10.5 If Fighter believes in good faith that ZUFFA has materially breached any material provision of this Agreement, or has unreasonably failed or refused to perform its obligations hereunder, Fighter shall provide ZUFFA with written notice of such alleged breach and shall provide ZUFFA with at least ten (10) business days to cure such alleged breach.  If ZUFFA fails to cure the alleged material breach within ten (10) business days of receipt of Fighter's written notice, then and only then may Fighter seek to terminate this Agreement and seek redress for any outstanding compensation owed to Fighter hereunder.  Fighter expressly understands and agrees that his sole remedy for any alleged breach by ZUFFA shall be to seek payment for any remaining compensation due to Fighter under Article VI, exclusive of any potentially applicable Win Bonuses, and in no event shall Fighter be entitled to any consequential, incidental, or punitive damages of any sort.

14

ZFL-0749085

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

## ARTICLE XI
## INSURANCE

11.1     ZUFFA will provide health and accidental death insurance as required by the applicable Athletic Commission. Fighter hereby acknowledges that professional unarmed combat has the significant potential for serious injuries, and Fighter is knowingly and voluntarily assuming all such risks. Accordingly, except for the insurance benefits being provided by ZUFFA as described in this Article 11, Fighter, for himself, his heirs, assigns, executors, and administrators agrees to be solely liable for and will bear the full and complete cost of any and all medical treatment or disability and all other costs associated with any injuries resulting from any and all Fighter's services under this agreement. Furthermore, Fighter assumes all risks of injuries sustained outside of a Bout.

11.2     ZUFFA shall have the right, at its election, to obtain, at ZUFFA's cost and expense, life or other insurance upon Fighter, including, but not limited to, insurance against the failure of Fighter to appear and to participate in any Bout and insurance to cover injuries sustained by Fighter in training and preparation for a Bout, in such amounts or type of coverage as ZUFFA may determine, and, if applicable, for the benefit of ZUFFA.  Except as expressly consented to in writing by ZUFFA, neither Fighter nor any of Fighter's Affiliates shall have any right, title or interest in such insurance.  Fighter and Fighter's Affiliates shall, at the request of ZUFFA, cooperate with and assist ZUFFA –or its agent (as directed by ZUFFA), –in obtaining and maintaining any such coverage, including submitting to physical or other examinations of Fighter and furnishing such information and medical records as may be required by any existing or proposed insurer and performing all further acts and things, and executing any and all additional documents or instruments necessary for ZUFFA to obtain any such insurance contemplated by this Section 11.2.

## ARTICLE XII
## RIGHT TO MATCH

12.1     During the one (1) year period after conclusion of the Term for any reason whatsoever (the "**Matching Period**"), ZUFFA shall have the option to match the financial terms and conditions of any offer made to Fighter for an Other Bout as defined in Section 3.6 of this Agreement.  Fighter shall not accept any offer or enter into a contract or agreement with any other promotional entity during the Matching Period without complying with this Section 12.1.  Prior to acceptance of any Offer made during the Matching Period, Fighter shall first deliver to ZUFFA a written notice of all material financial terms and conditions of the offer, including, but not limited to, the identity of the promotional entity making the offer.  Such notice shall constitute an exclusive, irrevocable offer (the "**Fighter Offer**") to contract with ZUFFA on the same financial terms and conditions.  ZUFFA shall have fifteen (15) business days following receipt of the Fighter Offer in which to accept the financial terms of the Fighter Offer.  If ZUFFA does not accept the Fighter Offer, Fighter may then accept the offer without modification during the ten (10) business day period following expiration of the Fighter Offer (the "**Contract Period**").  If the offer is modified in any material way, such modification shall give rise to another Fighter Offer on such modified terms and conditions and ZUFFA shall have the option to match the terms of the offer, as modified in accordance with the terms and conditions of this Section 12.1.  If Fighter has not contracted with a third party on or before the conclusion of the Contract Period, then all rights granted to ZUFFA pursuant to this Section 12.1 shall be automatically reinstated.

12.2     The provisions of Section 12.1 above shall survive termination or expiration of this Agreement.

15

                                                                                  ZFL-0749086

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

ARTICLE XIII
REPRESENTATIONS AND WARRANTIES

13.1.    Fighter represents and warrants to ZUFFA that:

a.    Fighter shall prepare and honestly compete to the best of Fighter's ability in the Bout and that there is no impairment to Fighter doing so;

b.    Fighter is free to enter into this Agreement and has not heretofore and will not hereafter enter into any contract, option, agreement or understanding, whether oral or written, which conflicts with the provisions hereof or the grant of Rights contained herein or which would or could interfere with Fighter's full and complete performance hereunder or the free and unimpaired exercise by ZUFFA of any of the Rights;

c.    There are no claims or arbitration, mediation, or litigation pending or threatened affecting Fighter that would or could interfere with Fighter's full and complete performance hereunder or the free and unimpaired exercise by ZUFFA of any of the Rights;

d.    Fighter is entering into this Agreement of his own free will, is not subject to duress of any kind, and is not under the influence of any Controlled Substance and Fighter knows of no disability, whether physical or mental, which would or could prevent Fighter from the full and complete performance of his obligations hereunder; and

e.    Fighter has had the opportunity to consult an attorney or other representative regarding this Agreement, and he appreciates the legal significance and consequences of signing this Agreement; and

f.    Fighter is either (i) a citizen of the United States and is not otherwise subject to any "backup" or other withholding of taxes or compensation specially applicable to those who are not citizens of the United States, or (ii) is not a citizen of the United States but has provided to ZUFFA in writing all information necessary to enable ZUFFA to comply with any such applicable withholding or other payment requirement.

g.    Fighter has obtained, and ZUFFA shall not be responsible to pay for in any way whatsoever, all clearances, licenses, uses, reuse fees, license fees, relating to the use and appearance of any creative expression, clothing apparel, sportswear and equipment, included but not limited to, trunks, robes, shoes, or any other part of the costume, electronic information, digital information, wording, phrases, symbols, pictures, designs, print materials or other materials or information (including, without limitation, the trademarks, copyrights, personal privacy, property rights, names, voices, and likenesses of all and any persons, properties and businesses appearing therein (if any), and all components and elements thereof) displayed and exhibited by Fighter or any of Fighter's Affiliates during or at any Bouts, Pre-Bout Events or Post-Bout Events.

h.    Fighter has the full power to expressly and irrevocably transfer said rights described in Paragraph 13.1(g) above to ZUFFA, or ZUFFA's respective sponsors, successors, assigns, agents, directors, members, managers, officers, employees, co-producers and licensees, and warrants that

16

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

the exercise of the rights granted herein will not infringe on any rights of any third party, including but not limited to copyright, trademark, unfair competition, contract, defamation, privacy or publicity rights.

13.2.    ZUFFA represents and warrants to Fighter that:

a.      ZUFFA is a limited liability company duly formed under the laws of the State of Nevada; and that the person executing this Agreement on behalf of ZUFFA is authorized to do so; and

b.      ZUFFA is able to perform its promotional and payment obligations arising hereunder, and there are no claims or arbitration, mediation, or litigation pending or threatened affecting ZUFFA that would prevent ZUFFA from performing hereunder.

ARTICLE XIV
ASSUMPTION OF THE RISK/WAIVER OF ALL CLAIMS

14.1    Fighter fully understands and agrees that the professional sport of mixed martial arts is an inherently and abnormally dangerous activity that can result in severe and permanent physical injury, including but not limited to irreversible neurological trauma, disability, or death.  Fighter represents that he is a seasoned professional in the sport of mixed martial arts, and Fighter has knowingly evaluated the inherent risks, foreseen and unforeseen**,** in this dangerous sport and represents and declares that he is physically, mentally, emotionally and intellectually willing and able to accept, and does hereby clearly, unambiguously and explicitly accept, all risks, foreseen and unforeseen**,** associated with participating in the sport and the Bouts.

14.2    In consideration for the opportunity to participate in the Bouts, and with full knowledge and complete assumption of all the risks, Fighter, for himself, his heirs, assigns, executors and administrators ("**Releasing Parties**") hereby irrevocably agrees that the Releasing Parties will not sue or claim against ZUFFA or any of its parents, subsidiary entities, affiliates, sponsors, successors and assigns, and the respective directors, officers, members, managers, employees, agents, contractors, partners, shareholders and representatives, in their individual, personal and representative capacities for each of the foregoing entities ("**Released Parties**") for any injury, illness, damage, loss or harm to Fighter or Fighter's property, or Fighter's death or disability, howsoever caused, resulting or arising out of or in connection with Fighter's preparation for, travel for, participation and appearance in, any UFC promotional events, the Bouts, the Pre-Bout Events and the Post-bout Events or any activities associated therewith.

14.3    In consideration for the opportunity to participate in the Bouts, and with full knowledge and complete assumption of all risks, the Releasing Parties hereby forever voluntarily release, discharge, waive and relinquish any and all, past, present and future, claims and causes of action, specifically including any claims based on negligence or gross negligence, that they may have against the Released Parties, as the result of any injury, illness, damage, loss or harm to Fighter or Fighter's property, or Fighter's death or disability, howsoever caused, resulting or arising out of or in connection with Fighter's preparation for, travel for, participation and appearance in any UFC promotional events, the Bouts, the Pre-Bout Events and the Post-Bout Events or any activities associated therewith. Furthermore, the Releasing Parties hereby irrevocably and unconditionally consent and agree that any insurance proceeds and benefits provided by ZUFFA hereunder shall be the only benefits the Releasing Parties may claim or

17

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

receive from Released Parties for any injury, including death, relating to any and all of Fighter's services under this Agreement.

## ARTICLE XV
## INDEMNIFICATION

15.    Fighter shall indemnify, defend and hold harmless ZUFFA, its subsidiaries, affiliates and sponsors, and each of their members, managers, directors, officers, employees, representatives, agents and contractors from and against any claims, actions, proceedings, expenses (including attorneys' fees of counsel of indemnified party's choice, as and when incurred) and damages arising from or relating to any negligent or intentional acts or omissions by Fighter or any of Fighter's Affiliates or the breach of any of Fighter's representations, warranties or covenants contained herein or within any Bout Agreement.

## ARTICLE XVI
## PROHIBITION ON USE OF
## INTELLECTUAL PROPERTY RIGHTS

16.1    Unless Fighter receives prior written approval from ZUFFA, Fighter shall not utilize any of ZUFFA's intellectual property rights, including, but not limited to, the names and marks "Ultimate Fighting Championship," "UFC," the "Octagon," "Ultimate Fighting," "Ultimate Fighter," and any logos, pictures or other representations of ZUFFA's intellectual property.  Without limiting the scope of this prohibition, Fighter expressly agrees that he may not refer to himself as a "UFC Champion"; "former UFC Champion"; "UFC Star"; "UFC Superstar"; "UFC Fighter" or utilize any of ZUFFA's intellectual property in describing or referring to himself without the express written consent of ZUFFA.  Further, Fighter expressly agrees not to use a UFC championship belt without the prior written approval of ZUFFA, and further agrees that any such belt he obtains is on loan and will at all times remain the property of ZUFFA. Upon ZUFFA's written request, the belt must be returned within forty-eight (48) hours to ZUFFA at Fighter's expense.  Additionally, Fighter expressly acknowledges and agrees that ZUFFA is not a sanctioning organization and Fighter does not possess and cannot assert any property right or similar legal interest in the UFC Title or in being a UFC Champion.

16.2    Fighter shall not utilize the intellectual property rights of any of ZUFFA's sponsors, including, without limitation, any logos, pictures or other representations of such intellectual property.

## ARTICLE XVII
## ASSIGNMENT

17.1    ZUFFA shall have the absolute right to assign, license, or transfer any or all of the rights granted to it hereunder, including, but not limited to, the right to co-promote any Bout in association with any one or more persons or entities of its choosing.  ZUFFA may assign any of its respective obligations hereunder without Fighter's consent.

17.2    The rights and obligations of Fighter arising from this Agreement and any Bout Agreement are personal to Fighter and the benefits and the duties of Fighter hereunder may not be assigned, pledged or transferred for any reason.

## ARTICLE XVIII
## OTHER ACTIVITIES OF ZUFFA

18

                                                                 ZFL-0749089

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

18.1    Nothing herein shall prevent ZUFFA from engaging in promotional activities for any other professional fighter, including others in the same weight class as Fighter, or any other activities, whether related or unrelated to the subject matter of this Agreement.

18.2    Nothing herein shall prevent Fighter from engaging in any other business, trade, profession or other activity; provided that such other business, trade, profession or other activity does not involve the Fighter engaging in mixed martial arts contests or any other activity prohibited under this Agreement, and does not interfere with the Fighter's training or performance.

## ARTICLE XIX
## INTENT IN SIGNING

19.     Fighter acknowledges that his execution of this Agreement is for the purpose of obtaining the promotional services of ZUFFA upon the terms and conditions of this Agreement and that Fighter has not been required to sign this Agreement or to grant any of the Rights as a condition precedent to Fighter's participation in any professional mixed martial arts contest against another fighter who has granted promotional or ancillary rights to ZUFFA.

## ARTICLE XX
## INDEPENDENT CONTRACTOR STATUS

20.1    Nothing contained in this Agreement shall be construed to make Fighter an employee of ZUFFA or to appoint ZUFFA as Fighter's agent, and ZUFFA shall have no financial interest (other than offset rights) in compensation payable to Fighter for engaging in any Bout hereunder.  It is intended that Fighter shall remain an independent contractor, responsible for his own actions, expenses and any local, state, federal or international taxes, including, but not limited to, the engagement, discharge, benefits and costs of all of Fighter's Affiliates, and training facilities, equipment, professional memberships, sanctioning fees, medical expenses, social security taxes, Federal Insurance Contributions Act (FICA) taxes, and Federal Unemployment Tax Act (FUTA) taxes.

20.2    Fighter shall not be eligible under this Agreement to participate in any vacation, group medical or life insurance, disability, profit sharing or retirement benefits or any other fringe benefits or benefit plans offered by ZUFFA to its employees and ZUFFA shall not be responsible for withholding or paying any income, payroll, Social Security or other federal, state or local taxes, making any insurance contributions (except as provided herein) including unemployment or disability, or obtaining workers' compensation insurance on Fighter's behalf.  Fighter shall be responsible for, and shall indemnify ZUFFA against, all such taxes or contributions, including penalties and interest.  Any persons employed by Fighter in connection with the performance of the services provided by Fighter hereunder shall be employees of Fighter and Fighter shall be fully responsible for such persons.

## ARTICLE XXI
## COMMERCIAL IDENTIFICATION

21.1    Fighter covenants and agrees that no wording, symbols, pictures, designs, names or other advertising or informational material (i) for any beer, alcohol, beverage company, tobacco, casino or gaming company, media company (including, but not limited to, HBO, ABC, SNI, ESPN, Spike, any Viacom owned network and any Internet related company); (ii) of any sponsor in conflict or competition

19

ZFL-0749090

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

with ZUFFA or any of ZUFFA's sponsors; (iii) of any sponsor causing injury to the reputation of ZUFFA or ZUFFA's sponsors or their respective officers and owners; or (iv) which has not been pre-approved in writing by ZUFFA shall appear on the trunks, gloves, robe, shoes or any other part of the costume or the body (including by use of temporary or henna tattoos) of Fighter or any of Fighter's Affiliates during or at any Bouts, Pre-Bout Events or Post-Bout Events.  For the avoidance of doubt, all sponsorship and endorsement approvals shall be at ZUFFA's sole discretion.  Fighter further covenants and agrees to only use the gloves approved and supplied by ZUFFA.

21.2     Notwithstanding the foregoing, ZUFFA shall have the right to include any advertising or other informational material of ZUFFA, ZUFFA's sponsors or other entities designated by ZUFFA on the trunks, gloves, robe, shoes, regalia or any other part of the costume of Fighter or any of Fighter's Affiliates during or at any Bouts, Pre-Bout Events or Post-Bout Events.

21.3     For television purposes, Fighter must be clearly distinguishable. Therefore, Fighter shall provide one (1) pair of dark-colored trunks and one (1) pair of light-colored trunks for each Bout. If it is necessary to distinguish Fighter from his opponent, ZUFFA shall have sole discretion to require Fighter to wear either the dark-colored or light-colored trunks.

## ARTICLE XXII
## CONFIDENTIALITY

22.1     Fighter shall not disclose to any third party (other than his agents and professional advisors, in their capacity as such, on a need-to-know basis), any information with respect to the terms and provisions of this Agreement or any Bout Agreement except: (i) to the extent necessary to comply with law or the valid order of a court of competent jurisdiction, in which event Fighter shall notify ZUFFA as promptly as practicable (if possible, prior to making such disclosure) and shall seek confidential treatment of such information, (ii) as part of normal reporting or review procedure to Fighter's lenders, auditors, attorneys and similar professionals, provided that such lenders, auditors and attorneys and similar professionals agree to be bound by the provisions of this section; and (iii) in order to enforce Fighter's rights pursuant to this Agreement or any Bout Agreement, in which case Fighter agrees to enter into a confidentiality agreement for all such proceedings.

22.2     ZUFFA shall have the sole right to determine the timing and content of and to make any press announcements and other public statements regarding this Agreement.

22.3     ZUFFA shall have the sole right to file this Agreement with any applicable athletic or fighting commission and world sanctioning bodies.

## ARTICLE XXIII
## FURTHER ASSURANCES

23.1     Fighter shall execute any and all additional documents or instruments necessary or desirable to effectuate the provisions of this Agreement, including, but not limited to, Bout Agreements and Standard Fighter Contracts or any other document required by ZUFFA, the Athletic Commission, any local governmental authority with jurisdiction over any Bout and the world organization(s) sanctioning any Bout, if applicable.  No party hereto shall take any action or fail to take any action which action or failure shall frustrate the purposes of this Agreement and the benefits contemplated hereby.

20

ZFL-0749091

23.2 Fighter shall be solely responsible for obtaining all necessary documentation, including any work visas, to lawfully permit Fighter and Fighter's Affiliates to participate in all Bouts. Fighter shall provide copies of all such documentation to ZUFFA no less than thirty (30) days prior to any Bout. Fighter's failure to obtain or provide such documentation shall constitute grounds for ZUFFA, at its election, to (i) obtain the required documentation and deduct the costs thereof from Fighter's Purse, (ii) cancel Fighter's participation in the Bout, without any compensation due to Fighter for said Bout, and extend the Term for a period four (4) months; (iii) declare that ZUFFA has satisfied its obligation to promote one (1) of the Bouts to be promoted by ZUFFA hereunder, without any compensation due to Fighter for said Bout; or (iv) provide Fighter with notice of an Acceleration.

## ARTICLE XXIV
### NOTICES

24.1 Any notice or other communications given or sent pursuant to this Agreement shall be in writing and shall be deemed given when (i) personally delivered; (ii) delivered by confirmed facsimile transmission; (iii) three (3) days following the date such notice is mailed postage paid by registered or certified mail, return receipt requested; or (iv) to Fighter, delivered by confirmed electronic means (electronic mail), to the respective addresses indicated below or any address subsequently provided to ZUFFA:

To ZUFFA:                                          To Fighter:
Dana White, President                              Eddie Alvarez
ZUFFA, LLC
2960 W. Sahara Ave.
Las Vegas, Nevada 89102                            Email:


With a copy to:                                    With a copy to:
Kirk D. Hendrick, Chief Legal Officer
ZUFFA, LLC
2960 W. Sahara Ave.
Las Vegas, Nevada 89102                            Email:


24.2 Any party may change its address for notice purposes by providing notice of such change of address in accordance with this section.

## ARTICLE XXV
### CHOICE OF LAW/EXCLUSIVE JURISDICTION AND VENUE

25.1 This Agreement has been delivered at and shall be deemed to have been made at Las Vegas, Nevada, and shall be interpreted, and the rights and liabilities of the parties hereto determined, in accordance with the laws of the State of Nevada.

25.2 ZUFFA and Fighter hereby (a) expressly consent to the exclusive personal jurisdiction and venue of the state and federal courts located in Clark County, Nevada for any action brought by either party to interpret or enforce any provision of this Agreement and (b) agree not to assert (by way of

21

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

motion, as a defense or otherwise) that such legal proceeding has been brought in an inconvenient forum. The undersigned, by execution and delivery of this Agreement, expressly and irrevocably consent to the service of any complaint, summons, notice or other process relating to any such action or proceeding by delivery thereof to such party by hand or by certified mail, delivered or addressed to the address set forth in this Agreement.

## ARTICLE XXVI
## MISCELLANEOUS PROVISIONS

26.1    If any provision of this Agreement is found to be illegal, invalid, or unenforceable as to any circumstance, such finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance.  Rather, the offending provision shall be considered modified so that it becomes legal, valid and enforceable, or, if not capable of such modification, shall be considered deleted. The illegality, invalidity, or unenforceability of any provision shall not affect the legality, validity, or enforceability of any other provision of this Agreement.

26.2    No waiver by any party of any breach or default hereunder shall be deemed to be a waiver of any preceding or subsequent breach or default.  All waivers must be in writing, specify the breach or default concerned and be signed by the party against whom the waiver is sought to be enforced.

26.3    In the event either party engages counsel in connection with the enforcement or interpretation of this Agreement or any provision hereof or the resolution of any dispute arising from or related to this Agreement, the prevailing party shall be entitled to recover from the other party its attorneys' fees and costs, regardless of whether or not an action is filed.

26.4    The provisions of this Agreement are for the exclusive benefit of the parties hereto and their permitted successors and assigns, and no third party shall be a beneficiary of or have any rights under this Agreement, regardless of whether or not such third party is referred to herein.

26.5    Other than any Bout Agreement or Standard Fighter Contract which may be entered into by the parties pursuant to the terms of this Agreement, this Agreement sets forth and integrates the entire understanding between Fighter and ZUFFA, and supersedes any and all prior or contemporaneous written or oral agreements or representations between the parties with respect to the subject matter hereof.

26.6    This Agreement may not be altered, amended or discharged, except by a subsequent writing signed by the parties hereto.

26.7    This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same instrument. Facsimile signatures shall be as effective as originals.

26.8    Descriptive headings of this Agreement are inserted for convenience only and do not constitute a part of this Agreement and shall not be considered for purposes of its interpretation.  The parties agree that they have equally participated in the negotiation of the terms and conditions in this Agreement, and therefore any ambiguities shall be resolved without reference to which party may have drafted all or any provision herein.

//

CONFIDENTIAL

ZFL-0749093

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

ARTICLE XXVII
MEDICAL TESTING

27.    FIGHTER SHALL COMPLETE A FULL PHYSICAL MEDICAL EXAMINATION AND UNDERGO TESTING AND RECEIVE AFFIRMATIVE CLEARANCE THEREFROM PRIOR TO EACH BOUT INCLUDING, BUT NOT LIMITED TO THE FOLLOWING: CBC, HEPATITIS B, HEPATITIS C, HIV, RH AND BLOOD TYPE, RPR, PT, PTT, URINALYSIS WITH DRUG SCREENING, EKG, CT SCAN, MRI, DIALATED OPHTHALMOLOGICAL EXAM, AND SUCH OTHER TESTING AS ZUFFA OR THE ATHLETIC COMMISSION MAY REQUIRE.   THE MEDICAL EXAMINATION SHALL BE PERFORMED BY A NEUTRAL MEDICAL SERVICE PROVIDER DURING THE THIRTY (30) DAY PERIOD IMMEDIATELY PRECEDING THE DATE OF EACH BOUT.  THE REPORT OF THE MEDICAL EXAMINATION OF FIGHTER CONTAINING THE RESULTS OF THE EXAMINATION AND TESTS SHALL BE DELIVERED TO ZUFFA NO LESS THAN TWENTY-ONE (21) DAYS PRIOR TO ANY BOUT AND MUST NOT CONTAIN ANY RESTRICTIONS ON FIGHTER'S ABILITY TO COMPETE.   ALL COSTS ASSOCIATED WITH THE MEDICAL EXAMINATION AND TESTS SHALL BE PAID BY FIGHTER.

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the dates set forth below, the later of which shall be the Effective Date of this Agreement.

**ZUFFA, LLC**                                    **FIGHTER**

Signature: _____          Signature: _____

Printed Name: Dana White_____          Printed Name:   Eddie Alvarez_____

Title: _____President_____          Social Security No.: _____

Date: _____          Date: _____

                                          Passport No.: _____

                                          Passport Expiration Date:_____

APPROVED BY:

Signature: _____
          Kirk D. Hendrick
          Chief Legal Officer

23



November 14, 2012

**<u>CONFIDENTIAL</u>**

Eddie Alvarez

    **RE:   SIGNING BONUS**

Dear Eddie:

    Upon execution of the Promotional and Ancillary Rights Agreement (the "Agreement") between Zuffa, LLC ("Zuffa) and yourself ("Fighter") and the promotional and sponsorship activities to be performed as well as the grant of ancillary rights identified in the Agreement, Zuffa shall pay to you Two Hundred Fifty Thousand Dollars (US $250,000.00), payable, via check, in the amount of Eighty-Five Thousand Dollars (US $85,000.00), less all permissible or required deductions, following the completion of each of the first two (2) Bouts and Eighty Thousand Dollars (US$80,000.00), less all permissible or required deductions, following the completion of the third Bout, during the term of the Agreement.

    It is agreed and understood that in the event of an Acceleration, as defined in the Agreement, prior to the completion of the fourth Bout, as contemplated by the Agreement, Zuffa shall pay Fighter the remainder of this signing bonus owed hereunder.

                Sincerely,

                Dana White
                President

ACKNOWLEDGED AND ACCEPTED BY:

_____

Eddie Alvarez

*UFC.COM*

CONFIDENTIAL                         ZFL-0749095

# **EXHIBIT E**

CONFIDENTIAL

ZFL-0749096

DINES AND ENGLISH, L.L.C.

ATTORNEYS AT LAW

685 VAN HOUTEN AVENUE

CLIFTON, NEW JERSEY 07013

PATRICK C. ENGLISH
Email: dinesandenglish@aol.com
ALSO ADMITTED IN
THE UNITED STATES
DISTRICT COURTS FOR THE
SOUTHERN DISTRICT OF
NEW YORK AND CONNECTICUT

AARON DINES
(1923-2002)

JASON M. SANTARCANGELO
Email: jsdinesandenglish@verizon.net
OF COUNSEL
ALSO ADMITTED IN NEW YORK

December 13, 2012

## VIA EMAIL/PDF AND FACSIMILE

Neal Tabachnick, Esq.
Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP
11400 West Olympic Blvd/9th Fl.
Los Angeles, CA 90064

Re: **Eddie Alvarez**

Dear Mr. Tabachnick:

Reference is made to a letter agreement dated November 1, 2012 between Bellator Sport Worldwide, LLC and Eddie Alvarez, the intent of which was to allow Mr. Alvarez an acceleration of the opportunity to negotiate with a specified third party and confirming Bellator's right to match.

On November 28, 2012 you sent to Bellator a proposed contract from Zuffa, LLC. My client had through December 18, 2012 to decide whether or not to match the offer.

After due consideration my client has decided to match the offer.

To that end, we enclose a contract. While we would have preferred to use our own version of contract, in order to avoid any ambiguities regarding the match we have simply taken the Zuffa contract and made appropriate changes. I am enclosing a redline version so that all changes are clear. None are material. I note that we use New Jersey choice of law (a non-material change) and cross reference to the WADA prohibited list (which is what Athletic Commissions are to use). If, for some reason, you believe that Nevada law is material – and we do not – we would agree to it.

We also are sending a clean contract executed on behalf of Bellator. We note the following line from the letter agreement dated November 1:

DINES AND ENGLISH, L.L.C.
ATTORNEYS AT LAW

Neal Tabachnick, Esq.
December 13, 2012
Page 2

"Should Bellator elect to match the offer, no further offers may be entertained by you and you will be obligated to contract with Bellator on the terms that Bellator agreed to match."

Therefore, kindly have Mr. Alvarez execute the contract I am sending with this letter and transmit back to me.

In addition to what is contained in the contract and accompanying bonus letter, and though there is no obligation to do so, Bjorn Rebney, on behalf of Bellator, is prepared to provide the following for Mr. Alvarez:

A)   A Spike behind the scenes show for which Mr. Alvarez would be paid Twenty-Five Thousand Dollars ($25,000.00).  This would be produced in the first quarter of 2013.

B)   If Mr. Alvarez wins the World Title bout, he will be offered the position as a coach for the second season of the Bellator Reality Show, and should he coach the second season Mr. Alvarez will receive One Hundred Thousand Dollars ($100,000.00).

C)   Mr. Alvarez will be a guest host of Spike's "Road to the Championship" show on week 9 of Bellator Season 8.

As noted, Mr. Rebney and Bellator are not required to offer the above three items in order to match, but are doing so voluntarily out of regard for Mr. Alvarez.

Bellator looks forward to promoting Mr. Alvarez to continued success in his career.

Very truly yours,

DINES AND ENGLISH, L.L.C.

BY:   _____
PATRICK C. ENGLISH

/mat
Encls.

CONFIDENTIAL

# **EXHIBIT F**

CONFIDENTIAL

## PROMOTIONAL AND ANCILLARY
## RIGHTS AGREEMENT

**THIS PROMOTIONAL AND ANCILLARY RIGHTS AGREEMENT** (the "**Agreement**") is made as of the date set forth below (the "**Effective Date**") by and between **BELLATOR SPORT WORLDWIDE, LLC,** a Delaware limited liability company with offices at 5000 Birch Street/Suite 7100, Newport Beach, CA 92660 ("**BELLATOR**") and Eddie Alvarez ("**Fighter**").

### RECITALS

A.      BELLATOR is in the business of, among other things, promoting mixed martial arts fighting competitions throughout the world under the trade name of Bellator Fighting Championship® ("**BELLATOR**") and desires to serve as the promoter for Fighter's future bouts for a period of time, provided that Fighter grants to BELLATOR certain promotional rights and ancillary rights, with such ancillary rights being granted to BELLATOR in perpetuity, as set forth herein; and

B.      Fighter is a professional mixed martial arts fighter and desires to obtain the promotional services of BELLATOR for Fighter's future bouts for a period of time, and Fighter is willing to grant to BELLATOR certain promotional rights and ancillary rights, with such ancillary rights being granted to BELLATOR in perpetuity, as set forth herein.

**NOW, THEREFORE,** in consideration of the foregoing, the agreements and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, BELLATOR and Fighter agree as follows:

### ARTICLE I
### GRANT OF PROMOTIONAL RIGHTS

1.      The Fighter hereby grants to BELLATOR the exclusive unrestricted worldwide right to secure, promote, arrange and present any and all mixed martial arts contests (individually, a "**Bout**" and collectively, the "**Bouts**") to be engaged in by Fighter during the Term (as defined herein) and any Extension Term (as defined herein), including all rights to stage each Bout and to sell tickets of admission thereto (the "**Promotional Rights**") and to exploit the Ancillary Rights (as defined herein) to each Bout in all media, now known or hereafter devised throughout the world in perpetuity.

### ARTICLE II
### GRANT OF ANCILLARY RIGHTS

2.1      Fighter hereby grants to BELLATOR the exclusive worldwide right to use, display, disseminate, edit, reproduce, print, publish and make any other use of the name, sobriquet, image, likeness, voice, persona, signature, and biographical material of Fighter and all persons associated with Fighter (collectively, the "**Identity**"), in any medium in connection with advertising, marketing, exploiting and promoting the BELLATOR brand and each Bout and the exploitation of all rights pertaining thereto as provided herein and all rights to each Bout electronic and other (the "**Ancillary Rights**" and, collectively with the Promotional Rights, the "**Rights**").

CONFIDENTIAL                                                                    ZFL-0749100

2.2     The Promotional Rights and Ancillary Rights shall be the sole property of BELLATOR throughout the world, which property BELLATOR shall hold free and clear from any and all claims of Fighter or anyone claiming through Fighter.  For the avoidance of doubt, BELLATOR shall hold the Ancillary Rights described herein in perpetuity, which rights shall survive even the death of the Fighter.

2.3     The Rights include the following:

a.     The right to receive and retain all site fees, live-gate ticket and other revenues, subscription revenues, advertising fees, sponsorship fees, and the like.

b.     All media, including, but not limited to, motion picture, radio, television (which term whenever referred to herein shall include, without limitation, live or delayed, interactive, home or theater, over-the-air broadcast, pay, pay-per-view, satellite, closed circuit, cable, subscription, Video On Demand, Near Video On Demand, Subscription Video On Demand, multi-point, master antenna, or other), telephone, wireless, computer, CD-ROM, DVD, any and all Internet applications (including, without limitation, netcasting, podcasting, direct download, streamed webcasting, internet channels (*e.g.*, Youtube) or any other form of digital media download or web syndication), films and tapes for exhibition in any and all media and all gauges, including but not limited to video and audio cassettes and disks, home video and computer games, arcade video games, hand-held versions of video games, video slot machines, photographs (including raw footage, out-takes and negatives), merchandising and program rights, in connection with or based upon the BELLATOR brand, the Bouts or activities pertaining to the Bouts, including but not limited to, training, interviews, press conferences, weigh-ins and behind-the-scenes footage for the Bouts (the "**Pre-Bout Events**"), post-fight interviews and press conferences (the "**Post- Bout Events**") and any parts thereof on a commercial, sustaining, theatrical or other basis, and by any and all means, methods and devices whatsoever, now existing or hereafter devised.

c.     The right to sell, assign, lease, license, sublease, use or otherwise dispose of any and all of the Rights and the results of the exercise thereof, and to authorize, license and grant the right to exercise any of the Rights and to retain the proceeds therefrom.

d.     The right to do all things necessary for the full and complete use, exploitation and exercise of the Rights, including the right to promote and exploit all rights granted hereunder and receive and retain the results of the exercise thereof, and the right to negotiate, enter into and perform any and all agreements relating to the Rights for the proper production and promotion of radio and television advertisements, publicity, and broadcasts relating to the BELLATOR brand, the Bouts, the Pre-Bout Events and the Post-Bout Events.

e.     All right, title and interest in and to any and all recordings, including without limitation, television, radio, Internet, wireless and motion picture films, and the video and audio cassettes of, or based upon the BELLATOR brand, the Bouts, the Pre-Bout Events and the Post-Bout Events, and the right to secure in the name of BELLATOR (or that of its nominee) copyright and other protection to the fullest extent available in the United States and all other countries of the world where such protection is available.

f.     The unrestricted right to use, edit, disseminate, display, reproduce, print or publish in any media the Identity of Fighter for the purpose of advertising, promotion, publicity, merchandising and exploitation of the BELLATOR brand, the Bouts, the Pre-Bout Events and Post-Bout

Promotional and Ancillary Rights Agreement
Between Bellator Sport Worldwide, LLC
And Eddie Alvarez
Dated:  December 6, 2012 – 4:15 p.m.

2

CONFIDENTIAL

ZFL-0749101

Events, including the use of the Identity of Fighter to advertise any commercial product or service of a BELLATOR sponsor or any network, station or other exhibitor, for which activities Fighter hereby waives his personal right of privacy; provided, that BELLATOR agrees that it shall not authorize or permit the Identity of Fighter to be used as a direct or implied endorsement of any product, service, sponsor or commodity.

g.     The unrestricted right to use, edit, disseminate, display, reproduce, print, publish and make any other uses of the Identity of Fighter in connection with the development, manufacturing, distribution, marketing or sale of any and all interactive devices, home video and computer games, arcade video games, hand held versions of video games, video slot machines, CD-ROMS, DVDs, Internet applications, wireless, video and audio cassettes and disks, apparel (such as t-shirts, hats and jackets), banners, buttons, posters, jewelry, photographs, souvenirs, programs, toys, merchandising tie-ups and advertisements, and any and all other similar type products, including the sleeves, jackets and packaging for such products, hereunder made by any method now known or hereafter devised. Additionally, Fighter acknowledges the existence of BELLATOR Video Games (as defined herein) developed, being developed or to be developed by various companies, including, but not limited to, Electronic Arts Inc. Fighter further acknowledges that the Rights granted herein to BELLATOR shall be exclusive with respect to any BELLATOR Video Game, and any derivatives of such video games created by BELLATOR or its licensees. "BELLATOR **Video Game**" shall mean any video game created by BELLATOR or its licensees and branded with BELLATOR or any brand subsequently developed, owned or acquired by BELLATOR or any of its agents or subsidiaries. BELLATOR acknowledges and agrees that Fighter shall be paid a bonus, as determined in the sole discretion of BELLATOR, for each console version of a BELLATOR Video Game in which Fighter appears. Notwithstanding the immediately preceding sentence, BELLATOR agrees that if it does not utilize the Identity of Fighter in a BELLATOR Video Game within three (3) years of the Effective Date, that the Rights granted by Fighter to BELLATOR pursuant to this Section 2.3(g) shall become non-exclusive and Fighter shall have right to exploit his Identity in video games that are not BELLATOR Video Games.

h.     The non-exclusive right to use a three minute excerpt clip of the recording of any bout, including any non-BELLATOR/BELLATOR bout, in which Fighter was a participant (to the extent that Fighter possesses the rights thereto or can reasonably obtain such rights), for the purpose of publicizing a Bout, which clip shall be provided to BELLATOR upon request therefore.

i.     To the extent Fighter owns or controls, in whole or in part, the copyrights and other right, title and interest in and to any tattoos etched or otherwise displayed on the bodies of Fighter and any persons associated with Fighter, the irrevocable, perpetual non-exclusive, transferrable, assignable and sub-licensable right and license throughout the world, to use, publish, reproduce, distribute, display and exhibit such tattoos in any manner and on or through any media, in connection with BELLATOR's exercise of any of its other Rights hereunder.

2.4     To the extent that Fighter is deemed to have, retain or otherwise possess any right, title or interest in or to all or any portion of the BELLATOR brand, any Bouts, any Pre-Bout Events or Post-Bout Events, or any works created or produced pursuant to or in connection with this Agreement (collectively, the "**BELLATOR IP**"), then for the consideration set forth herein, Fighter hereby transfers, conveys and assigns same to BELLATOR and shall execute all documents and undertake all actions necessary to effect the clarification of ownership of all right, title and interest in and to such BELLATOR IP to BELLATOR and to allow BELLATOR to apply for and maintain any copyright and trademark registrations and

---

Promotional and Ancillary Rights Agreement
Between Bellator Sport Worldwide, LLC
And Eddie Alvarez
Dated:  December 6, 2012 – 4:15 p.m.

CONFIDENTIAL

ZFL-0749102

other intellectual property registrations or issuances with respect to the BELLATOR IP and any renewals or extensions thereof, Fighter hereby irrevocably designates and appoints BELLATOR and BELLATOR's employees, agents, representatives, affiliates, licensees, designees, successors and assigns (**"BELLATOR's Representatives"**) as Fighter's agent and attorney-in-fact to act for and on Fighter's behalf and to execute and file all such documents consistent herewith (that BELLATOR is unable after reasonable efforts to obtain Fighter's signature on) and to do all other lawfully permitted acts necessary to carry out the provisions of this Agreement.

2.5    Fighter waives, discharges and releases BELLATOR and BELLATOR's Representatives from any and all claims; (i) of infringement of any right of Fighter in, to or respecting the BELLATOR IP and (ii) arising from BELLATOR or BELLATOR's Representatives' use of the Identity of Fighter or another exploitation of the Rights in any manner contemplated or set forth herein (including, without limitation, any claims based on Fighter's moral rights in the BELLATOR IP or for inspection, approval, damages for libel, intellectual property infringement or violation of Fighter's rights of privacy or publicity).

2.6    Fighter acknowledges and agrees that Fighter shall have no right of approval or consultation with respect BELLATOR's exercise of any Rights granted or assigned to it hereunder and nothing in this Agreement shall obligate BELLATOR to exercise any of its Ancillary Rights.

ARTICLE III
PROMOTION

3.1    Each Bout shall be a mixed martial arts contest, one-on-one fight between Fighter and an opponent designated by BELLATOR, subject to Fighter approval not to be unreasonably withheld, delayed or conditioned, conducted pursuant to the rules and regulations of the athletic commission, federation or official authority having jurisdiction over the Bout or BELLATOR pursuant to Section 3.7 (the "**Athletic Commission**"). Fighter and BELLATOR shall comply with and be bound by the rules and regulations of the Athletic Commission. For Bouts that occur in a jurisdiction or country without an Athletic Commission, the provisions of Section 3.7 shall control. In the event that Fighter does not approve of an opponent designated by BELLATOR, BELLATOR may, at its election and in accordance with the terms and conditions of Section 4.3 of this Agreement, extend the Term of this Agreement for the period required to designate another opponent for Fighter or six (6) months, whichever is longer.

3.2    BELLATOR shall promote and Fighter shall participate in the minimum number of Bouts set forth in Article IV below. For purposes hereof, BELLATOR shall be deemed to have complied with its obligations to promote any Bout if BELLATOR shall have made an offer to Fighter to promote a Bout in accordance with the provisions hereof and Fighter shall have refused to participate. If a Bout is the undercard to a main event and the main event is canceled or postponed for any reason, the failure of such Bout to take place shall not be deemed non-performance by BELLATOR and BELLATOR shall not be liable for Fighter's Purse associated therewith (as defined herein).

3.3    Fighter shall cooperate and assist in the advertising, publicity, and promotion of (i) the Bouts, (ii) any and all rebroadcast of the Bouts in any media whatsoever, (iii) other BELLATOR bouts, (iv) other BELLATOR events and broadcasts, and (v) the sale of BELLATOR merchandise, including making appearances at a reasonable number of press conferences, interviews and other sponsorship and promotional activities (any of which may be telecast, broadcast, recorded or filmed) at times and places

CONFIDENTIAL                                                                 ZFL-0749103

reasonably designated by BELLATOR, without additional compensation therefore. For such promotional activities, BELLATOR will arrange and pay for Fighter's reasonable travel, hotel and meal accommodations.

3.4     All Bouts shall be on dates and at sites to be designated by BELLATOR, in its sole and absolute discretion.  If any Bout is postponed for any reason except BELLATOR's non-performance, the Bout Agreement applicable to such Bout shall determine the rights of the parties and in addition thereto, the Term shall be extended, at BELLATOR's election, by a number of days equal to the number of days between the date originally scheduled for the Bout and the date on which the Bout occurs.

3.5     During the Term, BELLATOR shall have the exclusive right to promote all of Fighter's bouts and Fighter shall not participate in or render his services as a professional fighter or in any other capacity to any other mixed martial art, martial art, boxing, professional wrestling, or any other fighting competition or exhibition, except as otherwise expressly permitted by this Agreement.

3.6     Notwithstanding the foregoing, in the event Fighter is not then a BELLATOR champion, Fighter is permitted, subject to the prior written consent of BELLATOR, which consent may be granted or withheld in BELLATOR's sole discretion, to contract with other promoters or to engage in any mixed martial arts bout or fighting competition or exhibition promoted by other promoters (an "**Other Bout**") during the Term provided (i) such Other Bout is not televised by any domestic or international television network, station, cable system, satellite or other provider or via Internet or wireless exhibition; (ii) such Other Bout is scheduled for and takes place on a date which is more than sixty (60) days before or more than thirty (30) days after any non-championship Bout and more than ninety (90) days before or more than thirty (30) days after any championship Bout; (iii) a copy of any agreement for any Other Bout shall have been furnished to BELLATOR at least one (1) week prior to its execution by Fighter; and (iv) a fully executed copy of any such agreement is provided to BELLATOR within five (5) days of execution by Fighter.  Except in compliance with the foregoing limited exception, Fighter shall not, during the Term, grant promotional or other rights which conflict with the Rights.  Furthermore,  Fighter expressly agrees that this Agreement shall be automatically extended for an additional one hundred twenty (120) days for each non-BELLATOR promoted mixed martial arts competition or exhibition that Fighter participates in, and any reference to the Term herein shall be deemed to include any such extension(s).

3.7     Any and all Bouts that occur in a jurisdiction without an Athletic Commission shall be conducted pursuant to the statutes, rules and regulations of the State of New Jersey in effect at the time of the Bout, including, but not limited to, the Unified Rules of Mixed Martial Arts (the "**New Jersey Rules**"); for the protection of the health and safety of the Fighter, to promote fairness in the administration of the Bout, and to preserve the integrity of the sport of mixed martial arts.  Fighter may appeal any advisory opinion by BELLATOR regarding any application of the New Jersey Rules relating to Bouts that occur in a jurisdiction without an official government mandated Athletic Commission to an independent third-party arbitrator or arbitration panel selected pursuant to the guidelines developed by Judicial Arbitration and Mediation Services, Inc.  All costs and fees associated with an appeal taken pursuant to this Section shall be the exclusive responsibility of the Fighter.  Regardless of where a Bout occurs, in no event shall a Fighter have any right to appeal a decision by BELLATOR relating to the BELLATOR Title or the BELLATOR Championship belts.

3.8     Additionally, BELLATOR agrees to utilize Fighter in a Bout that broadcast on Spike TV during the Term.

CONFIDENTIAL                                                                   ZFL-0749104

3.9     BELLATOR also agrees to utilize Fighter on no less than three (3) occasions, during the Term, as "on-air" talent to provide commentating services for other BELLATOR branded events in which Fighter is not then participating the date, timing and location of which shall be at BELLATOR's discretion.

## ARTICLE IV
## TERM

4.1     The duration of the Promotional Rights provided herein (the "**Term**") shall commence on the Effective Date and end on the earlier of (i) forty (40) months after the first bout promoted by BELLATOR involving Fighter under this Agreement; or (ii) the date on which Fighter has participated in at least eight (8) Bouts promoted by BELLATOR pursuant to this Agreement (the "**Termination Date**"), unless terminated sooner or extended further pursuant to the provisions of this Agreement.

4.2     If, at the expiration of the Term, Fighter is then a BELLATOR champion, the Term shall automatically be extended for the period commencing on the Termination Date and ending on the later of (i) one (1) year from the Termination Date; or (ii) the date on which Fighter has participated in three (3) bouts promoted by BELLATOR, regardless of weight class or title, following the Termination Date ("**Extension Term**").   Any reference to the Term herein shall be deemed to include a reference to the Extension Term, where applicable.

4.3     The length of time for BELLATOR to provide Fighter with the minimum number of Bouts enumerated in this Article IV shall be extended for six (6) months or any period of time that Fighter is unable or unwilling to compete, whichever is greater.   Such extension shall include, without limitation, any time periods when Fighter is disabled, sick or injured for any reason; incarcerated; suspended or revoked by an Athletic Commission; has his ability to travel restricted by a governmental agency or is otherwise unable, unwilling or refuses to compete or train for a Bout for any reason whatsoever, including, without limitation, not approving of an opponent designated by BELLATOR pursuant to Section 3.1 of this Agreement.   Additionally, the length of time for BELLATOR to provide Fighter with the minimum number of Bouts enumerated in this Article IV shall also be extended for any length of time that Fighter serves as a coach on a Bellator reality television series or six (6) months whichever is longer.

4.4     The expiration or earlier termination of the Term, any Acceleration (as defined herein), or the death or incapacity of the Fighter, shall not affect or terminate the grant of the Ancillary Rights or any of the other general or specific provisions of this Agreement, all of which shall survive any such expiration, termination, Acceleration, death or incapacity.

4.5     BELLATOR shall not be deemed in default of this Agreement to the extent that performance of its obligations are delayed or prevented by reason of any act of God, fire, natural disaster, war, riots, civil unrest, strike or labor difficulties, terrorism, power failure, other calamity or acts constituting force majeure, or any governmental or Athletic Commission enactment, determination or action, regulation or order. If there is an occurrence of a force majeure event or other bona fide action, BELLATOR may elect to suspend this Agreement for a period equal to the duration of the occurrence, and no compensation shall be paid or become due to Fighter during such suspension period.

CONFIDENTIAL                                                                                                              ZFL-0749105

# ARTICLE V
## BOUT AGREEMENT AND STANDARD FIGHTER CONTRACT

5.      For each Bout, Fighter shall execute and comply with the terms of a Bout Agreement ("**Bout Agreement**"), which shall be either the standard fighter contract required by the applicable Athletic Commission or the standard Bellator Bout Agreement (the "**Standard Fighter Contract**"), and any other contract required to be executed by law, the terms of which shall be consistent with the terms of this Agreement.  To the extent of any conflict between this Agreement and a Bout Agreement with respect to a Bout, the Bout Agreement shall control.

# ARTICLE VI
## COMPENSATION

6.1     Subject in all events to Section 10.1(d), the Compensation to Fighter shall take the form of a "**Fighter's Purse**" and, if and only if Fighter is declared the winner of a Bout by the Athletic Commission, a "**Win Bonus**," each in the amount as set forth below.

a.      Fighter's Purse for the first Bout shall be Seventy Thousand Dollars (US $70,000.00), less all permissible or required deductions.  If and only if Fighter is declared the winner of the first Bout by the Athletic Commission, the Win Bonus for the first Bout shall be Seventy Thousand Dollars (US $70,000.00), less all permissible or required deductions.

b.      If and only if Fighter is declared the winner of the first Bout by the applicable Athletic Commission, Fighter's Purse for the second Bout shall be Seventy-Five Thousand Dollars (US $75,000.00), less all permissible or required deductions.  If and only if Fighter is declared the winner of the first Bout and the second Bout by the Athletic Commission, the Win Bonus for the second Bout shall be Seventy-Five Thousand Dollars (US $75,000.00), less all permissible or required deductions.  If Fighter is not declared the winner of the first Bout (and there is no Acceleration), Fighter's Purse and Win Bonus for the second Bout shall be as set forth in subsection (a) above.

c.      If and only if Fighter is declared the winner of the first Bout and the second Bout by the applicable Athletic Commission, Fighter's Purse for the third Bout shall be Eighty Thousand Dollars (US $80,000.00), less all permissible or required deductions.  If and only if Fighter is declared the winner of the first Bout, the second Bout, and the third Bout by the applicable Athletic Commission, the Win Bonus for the third Bout shall be Eighty Thousand Dollars (US $80,000.00), less all permissible or required deductions.  If Fighter is not declared the winner of the first Bout and the second Bout by the applicable Athletic Commission (and if there is no Acceleration), Fighter's Purse and Win Bonus for the third Bout shall be the same as set forth in subsection (a) above.  If Fighter is declared the winner of either the first Bout or the second Bout by the applicable Athletic Commission, but not both (and if there is no Acceleration) Fighter's Purse and Win Bonus for the third Bout shall be as set forth in subsection (b) above.

d.      If and only if Fighter is declared the winner of the first Bout, second Bout and third Bout by the applicable Athletic Commission, Fighter's Purse for the fourth Bout shall be Eighty-Five Thousand Dollars (US $85,000.00), less all permissible or required deductions.  If and only if Fighter is declared the winner of the first Bout, the second Bout, the third Bout, and the fourth Bout by the applicable Athletic Commission, the Win Bonus for the fourth Bout shall be Eighty-Five Thousand

CONFIDENTIAL                                                                                        ZFL-0749106

Dollars (US $85,000.00), less all permissible or required deductions. If Fighter is not declared the winner of the first Bout, second Bout and third Bout (and if there is no Acceleration), Fighter's Purse and Win Bonus for the fourth Bout shall be as set forth in subsection (a) above. If Fighter is declared the winner of only one of the first three Bouts by the applicable Athletic Commission (and if there is no Acceleration) Fighter's Purse and Win Bonus for the fourth Bout shall be as set forth in subsection (b) above. If Fighter is declared the winner of only two of the first three Bouts by the applicable Athletic Commission (and if there is no Acceleration) Fighter's Purse and Win Bonus for the fourth Bout shall be as set forth in subsection (c) above.

        e.     If and only if Fighter is declared the winner of the first Bout, second Bout, third Bout and the fourth Bout by the applicable Athletic Commission, Fighter's Purse for the fifth Bout shall be Ninety Thousand Dollars (US $90,000.00), less all permissible or required deductions. If and only if Fighter is declared the winner of the first Bout, the second Bout, the third Bout and the fourth Bout by the applicable Athletic Commission, the Win Bonus for the fifth Bout shall be Ninety Thousand Dollars (US $90,000.00), less all permissible or required deductions. If Fighter is not declared the winner of the first Bout, the second Bout, the third Bout and the fourth Bout by the applicable Athletic Commission (and if there is no Acceleration), Fighter's Purse and Win Bonus for the third Bout shall be the same as set forth in subsection (a) above. If Fighter is declared the winner of one of the first four Bouts by the applicable Athletic Commission (and if there is no Acceleration), Fighter's Purse and Win Bonus for the third Bout shall be the same as set forth in subsection (b) above. If Fighter is declared the winner of two of the first four Bouts by the applicable Athletic Commission (and if there is no Acceleration), Fighters Purse and Win Bonus for the fifth Bout shall be the same as set forth in subsection (c) above. If Fighter is declared the winner of three of the first of the first four Bouts by the applicable Athletic Commission (and if there is no Acceleration), Fighters Purse and Win Bonus for the fifth Bout shall be the same as set forth in subsection (d) above.

        f.     If and only if Fighter is declared the winner of the first Bout, second Bout, third Bout, the fourth Bout and the fifth Bout by the applicable Athletic Commission, Fighter's Purse for the sixth Bout shall be Ninety-Five Thousand Dollars (US $95,000.00), less all permissible or required deductions. If and only if Fighter is declared the winner of the first Bout, the second Bout, the third Bout, the fourth Bout, the fifth Bout and the sixth Bout by the applicable Athletic Commission, the Win Bonus for the sixth Bout shall be Ninety-Five Thousand Dollars (US $95,000.00), less all permissible or required deductions. If Fighter is not declared the winner of the first Bout, the second Bout, the third Bout, the fourth Bout, and the fifth Bout by the applicable Athletic Commission (and if there is no Acceleration), Fighter's Purse and Win Bonus for the sixth Bout shall be the same as set forth in subsection (a) above. If Fighter is declared the winner of one of the first five Bouts by the applicable Athletic Commission (and if there is no Acceleration), Fighter's Purse and Win Bonus for the sixth Bout shall be the same as set forth in subsection (b) above. If Fighter is declared the winner of two of the first five Bouts by the applicable Athletic Commission (and if there is no Acceleration), Fighter's Purse and Win Bonus for the sixth Bout shall be the same as set forth in subsection (c) above. If Fighter is declared the winner of three of the first five Bouts by the applicable Athletic Commission (and if there is no Acceleration), Fighter's Purse and Win Bonus for the sixth Bout shall be the same as set forth in subsection (d) above. If Fighter is declared the winner of four of the first five Bouts by the applicable Athletic Commission (and if there is no Acceleration), Fighter's Purse and Win Bonus for the sixth Bout shall be the same as set forth in subsection (e) above.

Promotional and Ancillary Rights Agreement
Between Bellator Sport Worldwide, LLC
And Eddie Alvarez
Dated:  December 6, 2012 – 4:15 p.m.

8

CONFIDENTIAL

ZFL-0749107

g.      If and only if Fighter is declared the winner of the first Bout, second Bout, third Bout, the fourth Bout the fifth Bout, and the sixth Bout, Fighter's Purse for the seventh Bout shall be One Hundred Thousand Dollars (US $100,000.00), less all permissible or required deductions.  If and only if Fighter is declared the winner of the first Bout, the second Bout, the third Bout, the fourth Bout, the fifth Bout, the sixth Bout, and the seventh Bout by the Athletic Commission, the Win Bonus for the seventh Bout shall be One Hundred Thousand Dollars (US $100,000.00), less all permissible or required deductions.  If Fighter is declared the loser of the first Bout, the second Bout, the third Bout, the fourth Bout, the fifth Bout and the sixth Bout (and if there is no Acceleration) Fighter's Purse and Win Bonus for the seventh Bout shall be the same as set forth in subsection (a) above.  If Fighter is declared the winner of one of the first six Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the seventh Bout shall be the same as set forth in subsection (b) above.  If Fighter is declared the winner of two of the first six Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the seventh Bout shall be the same as set forth in subsection (c) above.  If Fighter is declared the winner of three of the first six Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the seventh Bout shall be the same as set forth in subsection (d) above.  If Fighter is declared the winner of four of the first six Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the seventh Bout shall be the same as set forth in subsection (e) above.  If Fighter is declared the winner of five of the first six Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the seventh Bout shall be the same as set forth in subsection (f) above.

h.      If and only if Fighter is declared the winner of the first Bout, second Bout, third Bout, the fourth Bout the fifth Bout, the sixth Bout, and the seventh Bout, Fighter's Purse for the eighth Bout shall be One Hundred Five Thousand Dollars (US $105,000.00), less all permissible or required deductions.  If and only if Fighter is declared the winner of the first Bout, the second Bout, the third Bout, the fourth Bout, the fifth Bout, the sixth Bout, the seventh Bout, and the eighth Bout by the Athletic Commission, the Win Bonus for the eighth Bout shall be One Hundred Five Thousand Dollars (US $105,000.00), less all permissible or required deductions.  If Fighter is declared the loser of the first Bout, the second Bout, the third Bout, the fourth Bout, the fifth Bout, the sixth Bout, and the seventh Bout (and if there is no Acceleration) Fighter's Purse and Win Bonus for the eighth Bout shall be the same as set forth in subsection (a) above.  If Fighter is declared the winner of one of the first seven Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the eighth Bout shall be the same as set forth in subsection (b) above.  If Fighter is declared the winner of two of the first seven Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the eighth Bout shall be the same as set forth in subsection (c) above.  If Fighter is declared the winner of three of the first seven Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the eighth Bout shall be the same as set forth in subsection (d) above.  If Fighter is declared the winner of four of the first seven Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the eighth Bout shall be the same as set forth in subsection (e) above.  If Fighter is declared the winner of five of the first seven Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the eighth Bout shall be the same as set forth in subsection (f) above.  If Fighter is declared the winner of six of the first seven Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the eighth Bout shall be the same as set forth in subsection (g) above.

6.2     BELLATOR and Fighter intend for Fighter's first Bout, under this Agreement, to be for the BELLATOR lightweight title and for said lightweight title Bout to occur before the end of March of 2013 so long as Fighter and the then current BELLATOR lightweight champion is medically and/or

CONFIDENTIAL

ZFL-0749108

otherwise able to compete by such date. For the avoidance of doubt, however, regardless of whether Fighter's first Bout is for the lightweight title Bout and occurs on or before the end of March of 2013, in addition to the Fighter's Purse, (i) for Fighter's first Bout under this Agreement; and (ii) for any subsequent Bout thereafter in which Fighter participates in a Bout and is defending a BELLATOR Championship belt, so long as such applicable BELLATOR event is broadly distributed in the United States and/or Canada, or any other territory, including via the internet, and so long as the rates charged in said territories, or on the internet, are comparable to those charged in the United States or Canada, on residential pay-per-view on iN DEMAND, DirecTV, Echostar, or similar pay-per-view provider as utilized by BELLATOR ("Pay-Per-View Providers"), then Fighter has the potential to receive a pay-per-view bonus. If such BELLATOR event exceeds specified buy rates of combined sales through Pay-Per-View Providers, Fighter shall receive a Pay-Per- View Bonus as follows:

> For combined Pay-Per-View Provider buys purchased within thirty (30) days of the live event, Fighter shall receive One dollar ($1.00) for each pay-per-view buy between 200,000 buys and 400,000 buys; and Two dollars ($2.00) for each pay-per-view buy between 400,000 buys and 600,000 buys; and Two dollars and Fifty Cents ($2.50) for each pay-per-view buy over 600,000 buys.

*By way of example only, if such an applicable event were to generate 900,000 combined iN DEMAND, DirecTV, and Echostar, pay-per-view buys, Fighter would receive a pay-per-view Bonus of $1,350,000, which would represent $200,000 for applicable buys between 200,000 and 400,000 ($1 x 200,000 buys), $400,000 for applicable buys between 400,000 and 600,000 ($2.00 x 200,000 buys) and $750,000 for applicable buys between 600,000 and 900,000 ($2.50 x 300,000).

6.3     In order to verify BELLATOR's compliance with the potential pay-per-view bonus, Fighter is entitled, upon written notice of at least thirty (30) business days, to review, at BELLATOR's offices, all applicable pay-per-view reports that BELLATOR has received from iN DEMAND, DirecTV, Echostar and Canadian pay-per-view providers. Fighter may exercise this right no more than once each calendar year, for each Bout in which he participates, for up to two (2) years after the date of the applicable Bout.   Pay- per-view bonus to be paid on an ongoing monthly basis subsequent to BELLATOR's receipt of payment from the pay-per-view providers and only if the aggregate amount owed to Fighter is in excess of $500.00. Fighter agrees to treat any such of review under this section as confidential and agree not to disclose any information reviewed hereunder except as required by law or pursuant to a valid Court order. Additionally, Fighter agrees to refund and reimburse BELLATOR for any overpayments in the event and to the extent iN DEMAND, DirecTV, Echostar and/or Canadian providers adjust the pay-per-view buys for any of Fighter's bouts retroactively.   BELLATOR shall have the right to deduct any overpayment adjustments from future payments to Fighter.   BELLATOR reserves the right to reduce payments related to Canadian or other non-US pay-per-view buys in the event of an adverse currency exchange rate at the time of the payment to Fighter.

6.4     BELLATOR shall pay Fighter's Purse and the Win Bonus, if applicable, within twenty-four (24) hours of the completion of each Bout, except that if Fighter tests positive for any Controlled Substance (defined below) in a post-fight drug test, payment will be subject to the authority of and BELLATOR shall make payments only in accordance with the recommendations of the Athletic Commission. BELLATOR may deduct or withhold from compensation any applicable tax (whether domestic or foreign), fee, or sum required or permitted to be deducted or withheld by law, and may offset against any such compensation any sums advanced to Fighter by BELLATOR or

---

Promotional and Ancillary Rights Agreement
Between Bellator Sport Worldwide, LLC
And Eddie Alvarez
Dated:  December 6, 2012 – 4:15 p.m.

10

ZFL-0749109

otherwise due from Fighter to BELLATOR.

6.5    The Fighter's Purse and Win Bonus, and, if applicable pay-per-view bonus, together with the Incidentals (defined below) shall be the sole compensation due to or claimed by Fighter on account of this Agreement, the Rights, and Fighter's participation in any Bout or any activity related thereto.

6.6    Any and all potential Fighter's Purses and, if applicable, Win Bonuses and/or pay-per-view bonuses capable of being earned during the Extension Term shall be negotiated in good faith between the parties. However, the parties expressly agree that such potential amounts are quantifiable and definite terms to this Agreement because each such Fighter's Purse and, if applicable, Win Bonus shall, at a minimum, be no less than the last Fighter's Purse and, if applicable, Win Bonus received by Fighter during the standard Term of this Agreement.

6.7    Any advances shall be made in the sole discretion of BELLATOR, and may be subject to the prior approval of the Athletic Commission.

6.8    Fighter shall operate within the requirements of all tax laws and regulations, and interpretations thereof, and be solely responsible for reporting the entire compensation paid under this Agreement and any corresponding agreements and ensure timely settlement of all taxes and other similar deductions. BELLATOR shall provide Fighter with a Form 1099 within ninety (90) days following the close of its fiscal year.

## ARTICLE VII
## INCIDENTALS

7.1    In addition to the Fighter's Purse and, if applicable, the Win Bonus, as provided for above, Fighter shall be entitled to the transportation, lodging, meals or meal allowances, and Bout tickets (collectively, the "**Incidentals**") identified in the Bout Agreement. Such Incidentals shall not be less than the Incidentals set forth herein.

a.    For each non-championship Bout hereunder which Fighter participates in, BELLATOR shall provide a total of one (1) hotel or motel room and two (2) round-trip economy class airline tickets from the airport servicing Fighter's hometown to the site of the Bout for use by and transportation of Fighter and one (1) of Fighter's Affiliates (the "**Fighter's Affiliates**"). Fighter's Affiliates shall include, but not be limited to, his manager, agent, trainer, seconds, sparring partners and other persons associated with Fighter who are connected with the Bouts.

b.    For each championship Bout hereunder which Fighter participates in as the champion or the challenger for the championship, BELLATOR shall provide a total of two (2) hotel or motel rooms and three (3) round-trip economy class airline tickets from the airport servicing Fighter's hometown to the site of the Bout for use by and transportation of Fighter and two (2) of Fighter's Affiliates.

c.    For all Bouts hereunder, Fighter shall arrive and check in to the lodging provided by BELLATOR on the date specified in the Bout Agreement, which shall be any time up to eight (8) days prior to the date of the Bout (the "**Training Commencement Date**"), and shall check-out and depart from the lodging provided prior to the designated check-out time on the day after the Bout (the

CONFIDENTIAL                                                                        ZFL-0749110

"**Departure Date**").

d.      From the Training Commencement Date through the Departure Date, Fighter and one (1) of Fighter's Affiliates shall each be provided with either Fifty Dollars (US $50.00) cash *per diem* for meals, or at BELLATOR's discretion, meal vouchers for three (3) meals per day.   Food and beverage allowances shall be non-cumulative from day to day.

e.      Lodging shall be provided only from the Training Commencement Date through the Departure Date.  Fighter and Fighter's Affiliates shall be required to present a valid credit card upon registering at the hotel or motel, which card shall be charged for any and all expenses and damages beyond the cost of the room, and BELLATOR shall have no obligation for such additional expenses.

f.      Fighter shall also be provided with four (4) tickets to each Bout hereunder, the selection and location of which shall be determined by BELLATOR.  If Fighter's Bout is the main event, Fighter shall receive tickets for seats located within ten (10) rows of the Cage.

7.2      No other benefits, charges, expenses, or other incidentals of any kind (*e.g.*, telephone charges, beverages, entertainment, gift shop items or other such benefits, charges and expenses) shall be provided by BELLATOR to Fighter or anyone associated with Fighter, and Fighter shall not be entitled to receive compensation in lieu of any unused or undesired Incidental.

## ARTICLE VIII
## FIGHTER'S CONDUCT

8.1      Fighter shall conduct himself in accordance with commonly accepted standards of decency, social conventions and morals, and Fighter will not commit any act or become involved in any situation or occurrence or make any statement which will reflect negatively upon or bring disrepute, contempt, scandal, ridicule, or disdain to Fighter, the Identity of Fighter or any of Fighter's Affiliates, BELLATOR or any of its officers, managers, members, employees, or agents.  Fighter's conduct shall not be such as to shock, insult or offend the public or any organized group therein, or reflect unfavorably upon any current or proposed, arena, site hotel, sponsor or such sponsor's advertising agency, or any network or station over which a Bout is to be broadcast. In addition, Fighter agrees that during a Bout, or while training for a Bout, as well as during any Pre-Bout Events or Post-Bout Events, neither Fighter nor any of his managers, trainers and assistants shall wear any clothing or ornamentation, including, but not limited to, permanent or temporary tattoos or body art, that is lewd, obscene, offensive, defamatory, discriminatory on the basis of age, sex, race, color, creed, national origin, political belief, religious belief or sexual orientation or otherwise inappropriate as determined by BELLATOR in its sole discretion or which conflicts with a BELLATOR sponsor, the arena or telecaster.

8.2      Fighter and Fighter's Affiliates shall maintain a high standard of sportsmanship and conduct themselves in a professional manner prior to, during, and following each Bout.

8.3      Fighter shall not authorize or be involved with any advertising material or publicity materials that contain language or material which is generally considered to be obscene, libelous, slanderous or defamatory and will not violate or infringe upon, or give rise to any adverse claim with respect to, any common-law or other right whatsoever (including, but not limited to, any copyright, trademark, service mark, literary, dramatic, music or motion picture right, right of privacy or publicity,

CONFIDENTIAL                                                                                                                ZFL-0749111

contract or moral rights of authors) of any person or entity.

8.4     Fighter shall maintain his eligibility and keep in good standing any license required to participate in any Bout.

8.5     Fighter shall not use any controlled or banned substance, including but not limited to marijuana, cocaine, methamphetamine, steroids, human growth hormone or any similar drugs or blood doping techniques (each a "**Controlled Substance**"). Fighter agrees that an Athletic Commission may test Fighter for Controlled Substances, and Fighter agrees to submit to any pre-Bout or post-Bout drug test as requested by an Athletic Commission. Fighter shall be deemed to be in breach of this Section if Fighter tests positive for any Controlled Substance in any pre-Bout or post-Bout drug test. Fighter is urged to consult the World Anti Doping (WADA) prohibited list for a list of banned substances.

8.6     Fighter acknowledges that an Athletic Commission may fine, suspend or impose other penalties, including but not limited to removing recognition from Fighter of any Championship title, status or belt if Fighter tests positive for a Controlled Substance or for other improper conduct.

## ARTICLE IX INJURY OR RETIREMENT

9.1     If at any time during the Term, BELLATOR offers to promote a Bout for Fighter and Fighter refuses to participate in or attempts to cancel or postpone such Bout for reason of a claimed injury or other medical disability, BELLATOR shall have the right, but not the obligation, to have Fighter examined by a medical doctor of its choice at BELLATOR's expense, and, if BELLATOR so elects, Fighter shall appear for such examination on one (1) day's notice.

9.2     If at any time during the Term, Fighter claims to be injured or temporarily disabled, BELLATOR may, at its election, for each such injury or disability claimed by Fighter, (i) extend the Term for the period of such injury or disability or for the period of six (6) months, whichever is longer; (ii) declare that BELLATOR has satisfied its obligation to promote one (1) of the Bouts to be promoted by BELLATOR hereunder, without any compensation due to Fighter for said Bout; or (iii) provide Fighter with notice of an Acceleration as defined herein.

9.3     If at any time during the Term, Fighter decides to retire from mixed martial arts or other professional fighting competition or is permanently disabled, then BELLATOR may, at its election, (i) suspend the Term for the period of such retirement or disability; (ii) declare that BELLATOR has satisfied its obligation to promote all future Bouts to be promoted by BELLATOR hereunder, without any compensation due to Fighter therefor; or (iii) elect to provide Fighter with notice of an Acceleration.

## ARTICLE X TERMINATION/REMEDIES

10.1     BELLATOR shall have the right, but not the obligation, upon notice to Fighter, to accelerate the Term and thereby terminate BELLATOR'S promotional and other obligations hereunder and under any Bout Agreement then in effect (an "**Acceleration**") and to terminate Fighter's participation in any Bout, with Acceleration effective as of the date of notice, and to withdraw recognition from Fighter of any Championship Title, Status and Belt, if:

CONFIDENTIAL                                                        ZFL-0749112

        a.      Fighter fails, for any reason whatsoever (other than the injury or physical disability of Fighter or any act of God as provided in Section 4.5) to engage in the minimum number of Bouts as offered by BELLATOR;

        b.      Fighter or any of Fighter's Affiliates materially breach, violate or are in default of any provision of this Agreement or any other agreement hereafter entered into between Fighter and BELLATOR;

        c.      any of the representations or warranties of Fighter contained herein were false when made or are no longer true and correct;

        d.      Fighter is not declared the winner of any mixed martial arts bout (whether promoted by BELLATOR or not) by the Athletic Commission or official authority having jurisdiction over the bout; or

        e.      Fighter's license to participate in bouts is suspended or revoked by an Athletic Commission.

        f.      Fighter is unable to obtain the necessary documentation, including any work visas, to lawfully permit Fighter or Fighter's Affiliates to participate in any Bout as provided for in Section 23.2 of this Agreement.

        g.      Fighter is charged with a misdemeanor (other than a minor traffic offense) or a felony.

Promotional and Ancillary Rights Agreement
Between Bellator Sport Worldwide, LLC
And Eddie Alvarez
Dated:  December 6, 2012 – 4:15 p.m.

14

CONFIDENTIAL

ZFL-0749113

h.      Fighter should commit any act which would permit any arena, event site or television broadcaster, distributor or exhibitor to cancel its contract with BELLATOR for a particular Bout in which Fighter was to participate.

10.2     Acceleration shall be without further liability or obligation from BELLATOR to Fighter, except for the payment of any Fighter's Purse or Win Bonus, if applicable, or other amounts due for Bouts that have been completed prior to Acceleration.

10.3     Acceleration shall not serve to affect or terminate any of the Ancillary Rights, and this Agreement shall survive an Acceleration and remain in full force and effect with respect to the Ancillary Rights.  BELLATOR's failure to accelerate in any particular case shall not constitute a waiver for future such cases.

10.4     Fighter acknowledges that his services as a professional fighter and the Ancillary Rights granted to BELLATOR herein are special, unique, extraordinary, irreplaceable and of peculiar value, and that in the event of Fighter's breach or threatened breach of this Agreement or any Bout Agreement, BELLATOR would suffer irreparable damage which could not be reasonably or adequately compensated by an award of damages.  In the event of such breach or threatened breach, BELLATOR shall be entitled, in addition to any other available remedy, to obtain equitable relief, including, but not limited to, an injunction against such breach and Fighter waives the right to assert as a defense in any such action that BELLATOR has an adequate remedy at law.  To the extent that a bond is necessary to obtain an injunction, Fighter agrees that the bond shall not exceed Five Hundred Dollars (US $500.00).

10.5     If Fighter believes in good faith that BELLATOR has materially breached any material provision of this Agreement, or has unreasonably failed or refused to perform its obligations hereunder, Fighter shall provide BELLATOR with written notice of such alleged breach and shall provide BELLATOR with at least ten (10) business days to cure such alleged breach.  If BELLATOR fails to cure the alleged material breach within ten (10) business days of receipt of Fighter's written notice, then and only then may Fighter seek to terminate this Agreement and seek redress for any outstanding compensation owed to Fighter hereunder.   Fighter expressly understands and agrees that his sole remedy for any alleged breach by BELLATOR shall be to seek payment for any remaining compensation due to Fighter under Article VI, exclusive of any potentially applicable Win Bonuses, and in no event shall Fighter be entitled to any consequential, incidental, or punitive damages of any sort.

## ARTICLE XI
## INSURANCE

11.1     BELLATOR will provide health and accidental death insurance as required by the applicable Athletic Commission. Fighter hereby acknowledges that professional unarmed combat has the significant potential for serious injuries, and Fighter is knowingly and voluntarily assuming all such risks. Accordingly, except for the insurance benefits being provided by BELLATOR as described in this Article 11, Fighter, for himself, his heirs, assigns, executors, and administrators agrees to be solely liable for and will bear the full and complete cost of any and all medical treatment or disability and all other costs associated with any injuries resulting from any and all Fighter's services under this agreement. Furthermore, Fighter assumes all risks of injuries sustained outside of a Bout.

11.2     BELLATOR shall have the right, at its election, to obtain, at BELLATOR's cost and

CONFIDENTIAL                                                   ZFL-0749114

expense, life or other insurance upon Fighter, including, but not limited to, insurance against the failure of Fighter to appear and to participate in any Bout and insurance to cover injuries sustained by Fighter in training and preparation for a Bout, in such amounts or type of coverage as BELLATOR may determine, and, if applicable, for the benefit of BELLATOR. Except as expressly consented to in writing by BELLATOR, neither Fighter nor any of Fighter's Affiliates shall have any right, title or interest in such insurance. Fighter and Fighter's Affiliates shall, at the request of BELLATOR, cooperate with and assist BELLATOR or its agent (as directed by BELLATOR), in obtaining and maintaining any such coverage, including submitting to physical or other examinations of Fighter and furnishing such information and medical records as may be required by any existing or proposed insurer and performing all further acts and things, and executing any and all additional documents or instruments necessary for BELLATOR to obtain any such insurance contemplated by this Section 11.2.

## ARTICLE XII
## RIGHT TO MATCH

12.1     During the one (1) year period after conclusion of the Term for any reason whatsoever (the "**Matching Period**"), BELLATOR shall have the option to match the financial terms and conditions of any offer made to Fighter for an Other Bout as defined in Section 3.6 of this Agreement. Fighter shall not accept any offer or enter into a contract or agreement with any other promotional entity during the Matching Period without complying with this Section 12.1. Prior to acceptance of any Offer made during the Matching Period, Fighter shall first deliver to BELLATOR a written notice of all material financial terms and conditions of the offer, including, but not limited to, the identity of the promotional entity making the offer. Such notice shall constitute an exclusive, irrevocable offer (the "**Fighter Offer**") to contract with BELLATOR on the same financial terms and conditions. BELLATOR shall have fifteen (15) business days following receipt of the Fighter Offer in which to accept the financial terms of the Fighter Offer. If BELLATOR does not accept the Fighter Offer, Fighter may then accept the offer without modification during the ten (10) business day period following expiration of the Fighter Offer (the "**Contract Period**"). If the offer is modified in any material way, such modification shall give rise to another Fighter Offer on such modified terms and conditions and BELLATOR shall have the option to match the terms of the offer, as modified in accordance with the terms and conditions of this Section 12.1. If Fighter has not contracted with a third party on or before the conclusion of the Contract Period, then all rights granted to BELLATOR pursuant to this Section 12.1 shall be automatically reinstated.

12.2     The provisions of Section 12.1 above shall survive termination or expiration of this Agreement.

## ARTICLE XIII
## REPRESENTATIONS AND WARRANTIES

13.1.    Fighter represents and warrants to BELLATOR that:

a.     Fighter shall prepare and honestly compete to the best of Fighter's ability in the Bout and that there is no impairment to Fighter doing so;

b.     Fighter is free to enter into this Agreement and has not heretofore and will not hereafter enter into any contract, option, agreement or understanding, whether oral or written, which conflicts with the provisions hereof or the grant of Rights contained herein or which would or could

Promotional and Ancillary Rights Agreement
Between Bellator Sport Worldwide, LLC
And Eddie Alvarez
Dated:  December 6, 2012 – 4:15 p.m.

16

CONFIDENTIAL                                                                              ZFL-0749115

interfere with Fighter's full and complete performance hereunder or the free and unimpaired exercise by BELLATOR of any of the Rights;

      c.     There are no claims or arbitration, mediation, or litigation pending or threatened affecting Fighter that would or could interfere with Fighter's full and complete performance hereunder or the free and unimpaired exercise by BELLATOR of any of the Rights;

      d.     Fighter is entering into this Agreement of his own free will, is not subject to duress of any kind, and is not under the influence of any Controlled Substance and Fighter knows of no disability, whether physical or mental, which would or could prevent Fighter from the full and complete performance of his obligations hereunder; and

      e.     Fighter has had the opportunity to consult an attorney or other representative regarding this Agreement, and he appreciates the legal significance and consequences of signing this Agreement; and

      f.     Fighter is either (i) a citizen of the United States and is not otherwise subject to any "backup" or other withholding of taxes or compensation specially applicable to those who are not citizens of the United States, or (ii) is not a citizen of the United States but has provided to BELLATOR in writing all information necessary to enable BELLATOR to comply with any such applicable withholding or other payment requirement.

      g.     Fighter has obtained, and BELLATOR shall not be responsible to pay for in any way whatsoever, all clearances, licenses, uses, reuse fees, license fees, relating to the use and appearance of any creative expression, clothing apparel, sportswear and equipment, included but not limited to, trunks, robes, shoes, or any other part of the costume, electronic information, digital information, wording, phrases, symbols, pictures, designs, print materials or other materials or information (including, without limitation, the trademarks, copyrights, personal privacy, property rights, names, voices, and likenesses of all and any persons, properties and businesses appearing therein (if any), and all components and elements thereof) displayed and exhibited by Fighter or any of Fighter's Affiliates during or at any Bouts, Pre-Bout Events or Post-Bout Events.

      h.     Fighter has the full power to expressly and irrevocably transfer said rights described in Paragraph 13.1(g) above to BELLATOR, or BELLATOR's respective sponsors, successors, assigns, agents, directors, members, managers, officers, employees, co-producers and licensees, and warrants that the exercise of the rights granted herein will not infringe on any rights of any third party, including but not limited to copyright, trademark, unfair competition, contract, defamation, privacy or publicity rights.

    13.2.   BELLATOR represents and warrants to Fighter that:

      a.     BELLATOR is a limited liability company duly formed under the laws of the State of New Jersey; and that the person executing this Agreement on behalf of BELLATOR is authorized to do so; and

      b.     BELLATOR is able to perform its promotional and payment obligations arising hereunder, and there are no claims or arbitration, mediation, or litigation pending or threatened

CONFIDENTIAL          ZFL-0749116

affecting BELLATOR that would prevent BELLATOR from performing hereunder.

## ARTICLE XIV
## ASSUMPTION OF THE RISK/WAIVER OF ALL CLAIMS

14.1     Fighter fully understands and agrees that the professional sport of mixed martial arts is an inherently and abnormally dangerous activity that can result in severe and permanent physical injury, including but not limited to irreversible neurological trauma, disability, or death. Fighter represents that he is a seasoned professional in the sport of mixed martial arts, and Fighter has knowingly evaluated the inherent risks, foreseen and unforeseen, in this dangerous sport and represents and declares that he is physically, mentally, emotionally and intellectually willing and able to accept, and does hereby clearly, unambiguously and explicitly accept, all risks, foreseen and unforeseen, associated with participating in the sport and the Bouts.

14.2     In consideration for the opportunity to participate in the Bouts, and with full knowledge and complete assumption of all the risks, Fighter, for himself, his heirs, assigns, executors and administrators ("**Releasing Parties**") hereby irrevocably agrees that the Releasing Parties will not sue or claim against BELLATOR or any of its parents, subsidiary entities, affiliates, sponsors, successors and assigns, and the respective directors, officers, members, managers, employees, agents, contractors, partners, shareholders and representatives, in their individual, personal and representative capacities for each of the foregoing entities ("**Released Parties**") for any injury, illness, damage, loss or harm to Fighter or Fighter's property, or Fighter's death or disability, howsoever caused, resulting or arising out of or in connection with Fighter's preparation for, travel for, participation and- appearance in, any BELLATOR promotional events, the Bouts, the Pre-Bout Events and the Post-bout Events or any activities associated therewith.

14.3     In consideration for the opportunity to participate in the Bouts, and with full knowledge and complete assumption of all risks, the Releasing Parties hereby forever voluntarily release, discharge, waive and relinquish any and all, past, present and future, claims and causes of action, specifically including any claims based on negligence or gross negligence, that they may have against the Released Parties, as the result of any injury, illness, damage, loss or harm to Fighter or Fighter's property, or Fighter's death or disability, howsoever caused, resulting or arising out of or in connection with Fighter's preparation for, travel for, participation and appearance in any BELLATOR promotional events, the Bouts, the Pre-Bout Events and the Post-Bout Events or any activities associated therewith. Furthermore, the Releasing Parties hereby irrevocably and unconditionally consent and agree that any insurance proceeds and benefits provided by BELLATOR hereunder shall be the only benefits the Releasing Parties may claim or receive from Released Parties for any injury, including death, relating to any and all of Fighter's services under this Agreement.

## ARTICLE XV
## INDEMNIFICATION

15.     Fighter shall indemnify, defend and hold harmless BELLATOR, its subsidiaries, affiliates and sponsors, and each of their members, managers, directors, officers, employees, representatives, agents and contractors from and against any claims, actions, proceedings, expenses (including attorneys' fees of counsel of indemnified party's choice, as and when incurred) and damages arising from or relating to any negligent or intentional acts or omissions by Fighter or any of Fighter's Affiliates or the breach of any of

CONFIDENTIAL                                                    ZFL-0749117

Fighter's representations, warranties or covenants contained herein or within any Bout Agreement.

ARTICLE XVI PROHIBITION ON USE
OF INTELLECTUAL PROPERTY
RIGHTS

16.1     Unless Fighter receives prior written approval from BELLATOR, Fighter shall not utilize any of BELLATOR's intellectual property rights, including, but not limited to, any logos, pictures or other representations of BELLATOR's intellectual property.   Without limiting the scope of this prohibition, Fighter expressly agrees that he may not refer to himself as a "BELLATOR Champion"; "former BELLATOR Champion"; "BELLATOR Star"; "BELLATOR Superstar"; "BELLATOR Fighter" or utilize any of BELLATOR's intellectual property in describing or referring to himself without the express written consent of BELLATOR.   Further, Fighter expressly agrees not to use a BELLATOR championship belt without the prior written approval of BELLATOR, and further agrees that any such belt he obtains is on loan and will at all times remain the property of BELLATOR. Upon BELLATOR's written request, the belt must be returned within forty-eight (48) hours to BELLATOR at Fighter's expense.   Additionally, Fighter expressly acknowledges and agrees that BELLATOR is not a sanctioning organization and Fighter does not possess and cannot assert any property right or similar legal interest in the BELLATOR Title or in being a BELLATOR Champion.

16.2     Fighter shall not utilize the intellectual property rights of any of BELLATOR's sponsors, including, without limitation, any logos, pictures or other representations of such intellectual property.

ARTICLE XVII
ASSIGNMENT

17.1     BELLATOR shall have the absolute right to assign, license, or transfer any or all of the rights granted to it hereunder, including, but not limited to, the right to co-promote any Bout in association with any one or more persons or entities of its choosing.   BELLATOR may assign any of its respective obligations hereunder without Fighter's consent.

17.2     The rights and obligations of Fighter arising from this Agreement and any Bout Agreement are personal to Fighter and the benefits and the duties of Fighter hereunder may not be assigned, pledged or transferred for any reason.

ARTICLE XVIII
OTHER ACTIVITIES OF
BELLATOR

18.1     Nothing herein shall prevent BELLATOR from engaging in promotional activities for any other professional fighter, including others in the same weight class as Fighter, or any other activities, whether related or unrelated to the subject matter of this Agreement.

18.2     Nothing herein shall prevent Fighter from engaging in any other business, trade, profession or other activity; provided that such other business, trade, profession or other activity does not involve the Fighter engaging in mixed martial arts contests or any other activity prohibited under this Agreement, and does not interfere with the Fighter's training or performance.

CONFIDENTIAL                                                                                                ZFL-0749118

## ARTICLE XIX
## INTENT IN SIGNING

19.     Fighter acknowledges that his execution of this Agreement is for the purpose of obtaining the promotional services of BELLATOR upon the terms and conditions of this Agreement and that Fighter has not been required to sign this Agreement or to grant any of the Rights as a condition precedent to Fighter's participation in any professional mixed martial arts contest against another fighter who has granted promotional or ancillary rights to BELLATOR.

## ARTICLE XX INDEPENDENT
## CONTRACTOR STATUS

20.1     Nothing contained in this Agreement shall be construed to make Fighter an employee of BELLATOR or to appoint BELLATOR as Fighter's agent, and BELLATOR shall have no financial interest (other than offset rights) in compensation payable to Fighter for engaging in any Bout hereunder. It is intended that Fighter shall remain an independent contractor, responsible for his own actions, expenses and any local, state, federal or international taxes, including, but not limited to, the engagement, discharge, benefits and costs of all of Fighter's Affiliates, and training facilities, equipment, professional memberships, sanctioning fees, medical expenses, social security taxes, Federal Insurance Contributions Act (FICA) taxes, and Federal Unemployment Tax Act (FUTA) taxes.

20.2     Fighter shall not be eligible under this Agreement to participate in any vacation, group medical or life insurance, disability, profit sharing or retirement benefits or any other fringe benefits or benefit plans offered by BELLATOR to its employees and BELLATOR shall not be responsible for withholding or paying any income, payroll, Social Security or other federal, state or local taxes, making any insurance contributions (except as provided herein) including unemployment or disability, or obtaining workers' compensation insurance on Fighter's behalf.  Fighter shall be responsible for, and shall indemnify BELLATOR against, all such taxes or contributions, including penalties and interest.  Any persons employed by Fighter in connection with the performance of the services provided by Fighter hereunder shall be employees of Fighter and Fighter shall be fully responsible for such persons.

## ARTICLE XXI COMMERCIAL
## IDENTIFICATION

21.1     Fighter covenants and agrees that no wording, symbols, pictures, designs, names or other advertising or informational material (i) for any beer, alcohol, beverage company, tobacco, casino or gaming company, media company (including, but not limited to, HBO, ABC, SNI, ESPN, Fox or any news corporation owned network and any Internet related company); (ii) of any sponsor in conflict or competition with BELLATOR or any of BELLATOR's sponsors; (iii) of any sponsor causing injury to the reputation of BELLATOR or BELLATOR's sponsors or their respective officers and owners; or (iv) which has not been pre-approved in writing by BELLATOR shall appear on the trunks, gloves, robe, shoes or any other part of the costume or the body (including by use of temporary or henna tattoos) of Fighter or any of Fighter's Affiliates during or at any Bouts, Pre-Bout Events or Post-Bout Events.  For the avoidance of doubt, all sponsorship and endorsement approvals shall be at BELLATOR's sole discretion.  Fighter further covenants and agrees to only use the gloves approved and supplied by BELLATOR.

21.2     Notwithstanding the foregoing, BELLATOR shall have the right to include any

CONFIDENTIAL                                                                                    ZFL-0749119

advertising or other informational material of BELLATOR, BELLATOR's sponsors or other entities designated by BELLATOR on the trunks, gloves, robe, shoes, regalia or any other part of the costume of Fighter or any of Fighter's Affiliates during or at any Bouts, Pre-Bout Events or Post-Bout Events.

21.3    For television purposes, Fighter must be clearly distinguishable. Therefore, Fighter shall provide one (1) pair of dark-colored trunks and one (1) pair of light-colored trunks for each Bout. If it is necessary to distinguish Fighter from his opponent, BELLATOR shall have sole discretion to require Fighter to wear either the dark-colored or light-colored trunks.

## ARTICLE XXII
## CONFIDENTIALITY

22.1    Fighter shall not disclose to any third party (other than his agents and professional advisors, in their capacity as such, on a need-to-know basis), any information with respect to the terms and provisions of this Agreement or any Bout Agreement except: (i) to the extent necessary to comply with law or the valid order of a court of competent jurisdiction, in which event Fighter shall notify BELLATOR as promptly as practicable (if possible, prior to making such disclosure) and shall seek confidential treatment of such information, (ii) as part of normal reporting or review procedure to Fighter's lenders, auditors, attorneys and similar professionals, provided that such lenders, auditors and attorneys and similar professionals agree to be bound by the provisions of this section; and (iii) in order to enforce Fighter's rights pursuant to this Agreement or any Bout Agreement, in which case Fighter agrees to enter into a confidentiality agreement for all such proceedings.

22.2    BELLATOR shall have the sole right to determine the timing and content of and to make any press announcements and other public statements regarding this Agreement.

22.3    BELLATOR shall have the sole right to file this Agreement with any applicable athletic or fighting commission and world sanctioning bodies.

## ARTICLE XXIII
## FURTHER ASSURANCES

23.1    Fighter shall execute any and all additional documents or instruments necessary or desirable to effectuate the provisions of this Agreement, including, but not limited to, Bout Agreements and Standard Fighter Contracts or any other document required by BELLATOR, the Athletic Commission, any local governmental authority with jurisdiction over any Bout and the world organization(s) sanctioning any Bout, if applicable.  No party hereto shall take any action or fail to take any action which action or failure shall frustrate the purposes of this Agreement and the benefits contemplated hereby.

23.2    Fighter shall be solely responsible for obtaining all necessary documentation, including any work visas, to lawfully permit Fighter and Fighter's Affiliates to participate in all Bouts.  Fighter shall provide copies of all such documentation to BELLATOR no less than thirty (30) days prior to any Bout. Fighter's failure to obtain or provide such documentation shall constitute grounds for BELLATOR, at its election, to (i) obtain the required documentation and deduct the costs thereof from Fighter's Purse, (ii) cancel Fighter's participation in the Bout, without any compensation due to Fighter for said Bout,

CONFIDENTIAL                                                                 ZFL-0749120

and extend the Term for a period four (4) months; (iii) declare that BELLATOR has satisfied its obligation to promote one (1) of the Bouts to be promoted by BELLATOR hereunder, without any compensation due to Fighter for said Bout; or (iv) provide Fighter with notice of an Acceleration.

## ARTICLE
## XXIV
## NOTICES

24.1     Any notice or other communications given or sent pursuant to this Agreement shall be in writing and shall be deemed given when (i) personally delivered; (ii) delivered by confirmed facsimile transmission; (iii) three (3) days following the date such notice is mailed postage paid by registered or certified mail, return receipt requested; or (iv) to Fighter, delivered by confirmed electronic means (electronic mail), to the respective addresses indicated below or any address subsequently provided to BELLATOR:

To BELLATOR:                                          To Fighter:
Bjorn Rebney, CEO & Chairman                         Eddie Alvarez
BELLATOR SPORT WORLDWIDE, LLC
5000 Birch Street/Ste. 7100
Newport Beach, CA 92660                              Email:
Email: bjorn@bellator.com


With a copy to:                                      With a copy to:
Patrick C. English, Esq.
DINES AND ENGLISH, L.L.C.
685 Van Houten Avenue
Clifton, New Jersey 07013                            Email:
Email: Dinesandenglish@aol.com


24.2     Any party may change its address for notice purposes by providing notice of such change of address in accordance with this section.

## ARTICLE
## XXV
## CHOICE OF LAW/EXCLUSIVE JURISDICTION AND
## VENUE

25.1     This Agreement has been delivered at and shall be deemed to have been made in New Jersey, and shall be interpreted, and the rights and liabilities of the parties hereto determined, in accordance with the laws of the State of New Jersey.

25.2     BELLATOR and Fighter hereby (a) expressly consent to the exclusive personal jurisdiction and venue of the state and federal courts located in New Jersey for any action brought by either party to interpret or enforce any provision of this Agreement and (b) agree not to assert (by way of motion, as a defense or otherwise) that such legal proceeding has been brought in an

CONFIDENTIAL                                                              ZFL-0749121

inconvenient forum. The undersigned, by execution and delivery of this Agreement, expressly and irrevocably consent to the service of any complaint, summons, notice or other process relating to any such action or proceeding by delivery thereof to such party by hand or by certified mail, delivered or addressed to the address set forth in this Agreement.

## ARTICLE XXVI
## MISCELLANEOUS PROVISIONS

26.1    If any provision of this Agreement is found to be illegal, invalid, or unenforceable as to any circumstance, such finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. Rather, the offending provision shall be considered modified so that it becomes legal, valid and enforceable, or, if not capable of such modification, shall be considered deleted. The illegality, invalidity, or unenforceability of any provision shall not affect the legality, validity, or enforceability of any other provision of this Agreement.

26.2    No waiver by any party of any breach or default hereunder shall be deemed to be a waiver of any preceding or subsequent breach or default. All waivers must be in writing, specify the breach or default concerned and be signed by the party against whom the waiver is sought to be enforced.

26.3    In the event either party engages counsel in connection with the enforcement or interpretation of this Agreement or any provision hereof or the resolution of any dispute arising from or related to this Agreement, the prevailing party shall be entitled to recover from the other party its attorneys' fees and costs, regardless of whether or not an action is filed.

26.4    The provisions of this Agreement are for the exclusive benefit of the parties hereto and their permitted successors and assigns, and no third party shall be a beneficiary of or have any rights under this Agreement, regardless of whether or not such third party is referred to herein.

26.5    Other than any Bout Agreement or Standard Fighter Contract which may be entered into by the parties pursuant to the terms of this Agreement, this Agreement sets forth and integrates the entire understanding between Fighter and BELLATOR, and supersedes any and all prior or contemporaneous written or oral agreements or representations between the parties with respect to the subject matter hereof.

26.6    This Agreement may not be altered, amended or discharged, except by a subsequent writing signed by the parties hereto.

26.7    This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same instrument. Facsimile signatures shall be as effective as originals.

26.8    Descriptive headings of this Agreement are inserted for convenience only and do not constitute a part of this Agreement and shall not be considered for purposes of its interpretation. The parties agree that they have equally participated in the negotiation of the terms and conditions in this Agreement, and therefore any ambiguities shall be resolved without reference to which party may have drafted all or any provision herein.

Promotional and Ancillary Rights Agreement
Between Bellator Sport Worldwide, LLC
And Eddie Alvarez
Dated: December 6, 2012 – 4:15 p.m.

23

CONFIDENTIAL

ZFL-0749122

## ARTICLE XXVII
## MEDICAL TESTING

27.    FIGHTER SHALL COMPLETE A FULL PHYSICAL MEDICAL EXAMINATION AND UNDERGO TESTING AND RECEIVE AFFIRMATIVE CLEARANCE THEREFROM PRIOR TO EACH BOUT INCLUDING, BUT NOT LIMITED TO THE FOLLOWING: CBC, HEPATITIS B, HEPATITIS C, HIV, RH AND BLOOD TYPE, RPR, PT, PTT, URINALYSIS WITH DRUG SCREENING, EKG, CT SCAN, MRI, DIALATED OPHTHALMOLOGICAL EXAM, AND SUCH OTHER TESTING AS BELLATOR OR THE ATHLETIC COMMISSION MAY REQUIRE. THE MEDICAL EXAMINATION SHALL BE PERFORMED BY A NEUTRAL MEDICAL SERVICE PROVIDER DURING THE THIRTY (30) DAY PERIOD IMMEDIATELY PRECEDING THE DATE OF EACH BOUT. THE REPORT OF THE MEDICAL EXAMINATION OF FIGHTER CONTAINING THE RESULTS OF THE EXAMINATION AND TESTS SHALL BE DELIVERED TO BELLATOR NO LESS THAN TWENTY-ONE (21) DAYS PRIOR TO ANY BOUT AND MUST NOT CONTAIN ANY RESTRICTIONS ON FIGHTER'S ABILITY TO COMPETE.   ALL COSTS ASSOCIATED WITH THE MEDICAL EXAMINATION AND TESTS SHALL BE PAID BY FIGHTER.

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the dates set forth below, the later of which shall be the Effective Date of this Agreement.

**BELLATOR, LLC**                                  **FIGHTER**

Signature: _____   Signature: _____

Printed Name: Bjorn Rebney _____   Printed Name: ___Eddie Alvarez_____

Title: _____CEO & Chairman_____   Social Security No.: _____

Date: ___12-10-12_____   Date: _____

                                                     Passport No.: _____

                                                     Passport Expiration Date:_____

CONFIDENTIAL                                                        ZFL-0749123



December 6, 2012

**CONFIDENTIAL**

Eddie Alvarez

RE:   **SIGNING BONUS**

Dear Eddie:

Upon execution of the Promotional and Ancillary Rights Agreement (the "Agreement") between Bellator Sport Worldwide, LLC ("Bellator) and yourself ("Fighter") and the promotional and sponsorship activities to be performed as well as the grant of ancillary rights identified in the Agreement, Bellator shall pay to you Two Hundred Fifty Thousand Dollars (US $250,000.00), payable, via check, in the amount of Eighty-Five Thousand Dollars (US $85,000.00), less all permissible or required deductions, following the completion of each of the first two (2) Bouts and Eighty Thousand Dollars (US$80,000.00), less all permissible or required deductions, following the completion of the third Bout, during the term of the Agreement.

It is agreed and understood that in the event of an Acceleration, as defined in the Agreement, prior to the completion of the fourth Bout, as contemplated by the Agreement, Bellator shall pay Fighter the remainder of this signing bonus owed hereunder.

Sincerely,

Bjorn Rebney,
CEO & Chairman

ACKNOWLEDGED AND ACCEPTED BY:

_____

Eddie Alvarez

CONFIDENTIAL

# **EXHIBIT G**

CONFIDENTIAL

ZFL-0749125

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

PROMOTIONAL AND ANCILLARY
RIGHTS AGREEMENT

**THIS PROMOTIONAL AND ANCILLARY RIGHTS AGREEMENT** (the "**Agreement**") is made as of the date set forth below (the "**Effective Date**") by and between **BELLATOR SPORT WORLDWIDEZUFFA, LLC,** a DelawareNevada limited liability company d/b/a Ultimate Fighting Championship® with offices at 5000 Birch Street/Suite 7100, Newport Beach, CA 92660 ("**BELLATOR**2960 W. Sahara Avenue, Las Vegas, NV 89102 ("**ZUFFA**") and Eddie Alvarez ("**Fighter**").

RECITALS

A.  BELLATOR  ZUFFA is in the business of, among other things, promoting mixed martial arts fighting competitions throughout the world under the trade name of BellatorUltimate Fighting Championship® ("**BELLATOR**("UFC") and desires to serve as the promoter for Fighter's future bouts for a period of time, provided that Fighter grants to BELLATORZUFFA certain promotional rights and ancillary rights, with such ancillary rights being granted to BELLATORZUFFA in perpetuity, as set forth herein; and

B.  Fighter is a professional mixed martial arts fighter and desires to obtain the promotional services of BELLATORZUFFA for Fighter's future bouts for a period of time, and Fighter is willing to grant to BELLATORZUFFA certain promotional rights and ancillary rights, with such ancillary rights being granted to BELLATORZUFFA in perpetuity, as set forth herein.

**NOW, THEREFORE,** in consideration of the foregoing, the agreements and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, BELLATORZUFFA and Fighter agree as follows:

ARTICLE I
GRANT OF PROMOTIONAL RIGHTS

1.  The Fighter hereby grants to BELLATORZUFFA the exclusive unrestricted worldwide right to secure, promote, arrange and present any and all mixed martial arts contests (individually, a "**Bout**" and collectively, the "**Bouts**") to be engaged in by Fighter during the Term (as defined herein) and any Extension Term (as defined herein), including all rights to stage each Bout and to sell tickets of admission thereto (the "**Promotional Rights**") and to exploit the Ancillary Rights (as defined herein) to each Bout in all media, now known or hereafter devised throughout the world in perpetuity.

ARTICLE II
GRANT OF ANCILLARY RIGHTS

2.1  Fighter hereby grants to BELLATORZUFFA the exclusive worldwide right to use, display, disseminate, edit, reproduce, print, publish and make any other use of the name, sobriquet, image, likeness, voice, persona, signature, and biographical material of Fighter and all persons

Promotional and Ancillary Rights Agreement
Between Bellator Sport Worldwide, LLC
And Eddie Alvarez
Dated: December 6, 2012 – 4:15 p.m.

22
1

**Formatted:** Font: Times New Roman, 8 pt

                                                                  ZFL-0749126

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

associated with Fighter (collectively, the "**Identity**"), in any medium in connection with advertising, marketing, exploiting and promo ting t he BELLATOR~~UFC~~ brand and e ach B out and the exploitation of all rights pertaini ng thereto as provided herein and all rights to each Bout electronic and other (the "**Ancillary Rights**" and, collectively with the Promotional Rights, the "**Rights**").

2.2   The Promotional ~~Rights~~ and Ancillary Rights shall be ~~the~~ the sole property of BELLATOR ~~ZUFFA~~ throughout the wo rld, which property BELLATOR~~ZUFFA~~ shall hold free and clear from any and all claims of Fighter or anyone claiming thr ough Fighter. For the avoidan ce of doubt, BELLATOR~~ZUFFA~~ shall hold the Ancillary Rights described herein i n perpetuity, which rights shall survive even the death of the Fighter.

2.3   The Rights include the following:

a.     The right to r eceive and retain all site fe es, li ve-gate ticket and ot her revenues, subscription revenues, advertising fees, sponsorship fees, and the like.

b.     All media, including, but not limited to, motion picture, radio, television (which term whenever referred to herein shall inclu de, without limitation, live or delay ed, interactive, home or theater, over-the-air broadcast, pay, pay-per-view, satellite, cl osed circuit, cable, subscription, Video On Demand, N ear Video On Demand, Subsc ription Vid eo On Demand, multi-point, m aster antenna, o r other), telephone, wireless**,** computer, CD-ROM, DVD, any and all Internet applications (including, without limitation, netcasting, podcasting, direct download, streamed webcasting, internet channels (*e.g.*, Youtube) or any other form of digital media download or web syndication), films and tapes for exhibition in any and all m edia and all g auges, including but n ot lim ited to vi deo and audio ca ssettes and disk s, home video and computer games, ar cade vi deo games, h and-held versions of video gam es, video slo t machines, photographs (including r aw footage, out-tak es and negativ es), merchandising and progr am rights, in connection with or based upon the BELLATOR~~UFC~~ brand, the Bouts or activities pertaining to the Bouts, including but not limited to, training, interviews, press conferences, weigh-ins and behind-the-scenes footage for the Bouts (the "**Pre-Bout Events**"), post-fight interviews and pr ess conferences (the "**Post- Bout Events**") and any parts thereof on a commercial, sustaining, theatrical or other basis, and by any and all means, methods and devices whatsoever, now existing or hereafter devised.

c.     The right to sell, assign, lease, license, sublease, use or otherwise dispose of any and all of the Rights and the results of the exercise thereof, and to authorize, license and grant the right to exercise any of the Rights and to retain the proceeds therefrom.

d.     The right to do all things necessary for the full and complete use, exploitation and exercise of t he Right s, including the right to promote and exploit all rights granted her eunder an d receive and retain the results of the exercise thereof, and the right to negotiate, enter into and perform any and all agreements relating to the Rights f or the pr oper production and promotion of radio and television advertisements, publicity, and broadcasts relating to the BELLATOR~~UFC~~ brand, the B outs, the Pre-B out Events and the Post-Bout Events.

e.     All right, title and interest in and to any and all recordings, including without limitation, television, radio, Internet, wireless and motion picture films, and the video and audio cassettes of, or based upon the BELLATOR~~UFC~~ brand, the Bouts, the Pre-Bout Events and the Post-Bout Events,

Promotional and Ancillary Rights Agreement
Between Bellator Sport Worldwide, LLC
And Eddie Alvarez
Dated: December 6, 2012 – 4:15 p.m.

~~22~~
2

**Formatted:** Font: Times New Roman, 8 pt

CONFIDENTIAL                                                                                   ZFL-0749127

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

and the right to secure in the name of BELLATOR~~ZUFFA~~ (or that of its nomi nee) copyright and other protection to the fulle st extent available in the United States and all other countries of the world where such protec tion i s available.

f.    T he unrestricted right to use, ed it, disseminate, display, r eproduce, print or publish in any media the Identity of Fighter for the purpose of advertising, promotion, publicity, merchandising and exploitation of the BELLATOR~~UFC~~ brand, the B outs, the Pre-Bout Events and Post-Bout Events, including the use of the Identity of Fighter to advertise any commercial product or service of a BELLATOR~~ZUFFA~~ sponsor or any network, sta tion or other exhibitor, for which activities Fighter hereby waives his personal right of privacy; provided, that BELLATOR~~ZUFFA~~ agrees that it shall not authorize or permit the Identity of Fighter to be used as a direct or implied endorsement of any product, service, sponsor or commodity.

g.    The unrestricted right to use, edit, disseminate, display, reproduce, print, publish and make any other uses of the I dentity of Fighter i n connection with the develop ment, manufacturing, distribution, marketing or sale of any and all interactive devices, home video and computer games, arcade video games, hand held versi ons of video games, video slot machines, CD-ROMS, DVDs, Internet applications, wirel ess**,** video and audio ca ssettes and disk s, apparel ( such as t-shirts, hats and jackets), banners, bu ttons, posters, jewelry, photogr aphs, souvenirs, progra ms, toy s, mercha ndising tie-ups and advertisements, and any and all ot her similar type products, including the sleeves, jackets and packaging for such products, hereunder made by any method now known or hereafter devised. Additionally, Fighter acknowledges the existence of BELLATOR~~UFC~~ Video Games (as defined herein) developed, being developed or to be developed by va rious companies, including, but n ot limited t o, Elec tronic A rts Inc. Fighter further acknowledges that the Rights grant ed herein to BELLATOR~~ZUFFA~~ shall be <u>exclusive</u> with respect to any BELLATOR~~UFC~~ Video Game, and any derivatives of such vi deo games created by BELLATOR~~ZUFFA~~ or its licens ees. " BELLATOR~~UFC~~ **Video Game**" shall m ean any video game created by BELLATOR~~Zuffa~~ or its licensees and branded with BELLATOR~~UFC, Pride, WEC, Strikeforce~~ or any brand subsequently developed, owned or acquired by BELLATOR~~ZUFFA~~ or any of its agents or subsidiaries. BELLATOR~~ZUFFA~~ acknowledges and agrees th at Fighter shall be paid a bonus, as determined in the sole discretion of BELLATOR~~ZUFFA~~, for each console version of a BELLATOR~~UFC~~ Video Game in whi ch Fight er appears. Notwithstanding the imm ediately preceding sentence, BELLATOR~~ZUFFA~~ agrees that if it does not utilize the Identity of Fighter in a BELLATOR~~UFC~~ Vi deo Game within three (3) y ears of the Eff ective Dat e, that the Rights grant ed by Fighter to BELLATOR~~ZUFFA~~ pursuant to this Sec tion 2.3(g) shall become non-exclusive and Fighter shall have right to exploit his Identity in video games that are not BELLATOR~~UFC~~ Video Games.

h.    The non-exclusive right to use a three minute excerpt clip of the recording of any bout, including any non-BELLATOR/BELLATOR~~ZUFFA/UFC~~ bout, in whi ch Fighter was a participant (to the extent that Fighter possesses the rights thereto or can reasonably obtain such rights), for the purpose of publicizing a Bout, which clip shall be provided to BELLATOR~~ZUFFA~~ upon request therefore.

i.    To the extent Fighter owns or controls, in whole or in part, the copyrights and other right, title and inter est in and to any tattoos etched or otherwise displayed on the bodies of Fighter and any persons associated with Fighter, th e irr evocable, perpetual non- exclusive, transferr able, assignable and sub- licensable right and lic ense throughout the world, to use, publish, reproduce, distribute, display and exhibit such tattoos in any manner and on or thr ough any media, in connec tion with BELLATOR'S~~ZUFFA's~~ exercise of any of its other Rights hereunder.

CONFIDENTIAL                                                                                    ZFL-0749128

**Formatted:** Font: Times New Roman, 8 pt

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

2.4     To the extent that Fighter is deemed to have, retain or otherwise possess any right, title or interest in or to all or any portion of the BELLATOR~~UFC~~ brand, any Bouts, any Pre-Bout Events or Post-Bout Events, or any works created or produced pursuant to or in connection with this Agreement (collectively, the "**BELLATOR**~~ZUFFA~~ **IP**"), then for the consideration set forth herein, Fighter hereby transfers, conveys and assigns same to BELLATOR~~ZUFFA~~ and shall execute all documents and undertake all actions necessary to effect the clarification of ownership of all right, title and interest in and to such BELLATOR~~ZUFFA~~ IP to BELLATOR~~ZUFFA~~ and to allow BELLATOR~~ZUFFA~~ to apply for and maintain any copyright and trademark registrations and other intellectual property registrations or issuances with respect to the BELLATOR~~ZUFFA~~ IP and any renewals or extensions thereof, Fighter hereby irrevocably designates and appoints BELLATOR~~ZUFFA~~ and BELLATOR's~~ZUFFA's~~ employees, agents, representatives, affiliates, licensees, designees, successors and assigns ("**BELLATOR's**~~**ZUFFA's**~~ **Representatives**") as Fighter's agent and attorney-in-fact to act for and on Fighter's behalf and to execute and file all such documents consistent herewith (that BELLATOR~~ZUFFA~~ is unable after reasonable efforts to obtain Fighter's _signature on) and to do all other lawfully permitted acts necessary to carry out the provisions of this ~~Agreement.~~ Agreement.

2.5     Fighter waives, discharges and releases BELLATOR~~ZUFFA~~ and BELLATOR's~~ZUFFA's~~ Representatives from any and all claims; (i) of infringement of any right of Fighter in, to or respecting the BELLATOR~~ZUFFA~~ IP and (ii) arising from BELLATOR~~ZUFFA~~ or BELLATOR's~~ZUFFA's~~ Representatives' use of the Identity of Fighter or another exploitation of the Rights in any manner contemplated or set forth herein (including, without limitation, any claims based on Fighter's moral rights in the BELLATOR~~ZUFFA~~ IP or for inspection, approval, damages for libel, intellectual property infringement or violation of Fighter's rights of privacy or publicity).

2.6     Fighter acknowledges and agrees that Fighter shall have no right of approval or consultation with respect BELLATOR's~~ZUFFA's~~ exercise of any Rights granted or assigned to it hereunder and nothing in this Agreement shall obligate BELLATOR~~ZUFFA~~ to exercise any of its Ancillary Rights.

ARTICLE III
PROMOTION

3.1     Each Bout shall be a mixed martial arts contest, one-on-one fight between Fighter and an opponent designated by BELLATOR~~ZUFFA~~, subject to Fighter approval not to be unreasonably withheld, delayed or conditioned, conducted pursuant to the rules and regulations of the athletic commission, federation or official authority having jurisdiction over the Bout or BELLATOR~~ZUFFA~~ pursuant to Section 3.7 (the "**Athletic Commission**"). Fighter and BELLATOR~~ZUFFA~~ shall comply with and be bound by the rules and regulations of the Athletic Commission.  For Bouts that occur in a jurisdiction or country without an Athletic Commission, the provisions of Section 3.7 shall control. In the event that Fighter does not approve of an opponent designated by BELLATOR, BELLATOR, ~~ZUFFA~~ may, at its election and in accordance with the terms and conditions of Section 4.3 of this Agreement, extend the Term of this Agreement for the period required to designate another opponent for Fighter or six (6) months, whichever is longer.

3.2     BELLATOR~~ZUFFA~~ shall promote and Fighter shall participate in the minimum number

**Formatted:** Font: Times New Roman, 8 pt

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

of Bouts set forth in Article IV below. For purpos es hereof, BELLATOR~~ZUFFA~~ shall be deemed to have complied with its obligations to promote any Bout if BELLATOR~~ZUFFA~~ shall hav e made an offer to Fighter to promot e a B out i n accordance with the provisions her eof and Fighter shall have refu sed to participate. If a B out is the undercard to a main ev ent and the main ev ent is cancel ed or postponed for any reason, the failure of such Bout to take place shall not be deemed non-performance by BELLATOR~~ZUFFA~~ and BELLATOR~~ZUFFA~~ shall not be liable for Fighter's Purse associated therewith (as defined herein).

3.3      Fighter shall cooperate and assist in the advertising, publicity, and promotion of (i) t he Bouts, (ii) any and all re broadcast of the B outs in any media whatsoever, (iii) oth er BELLATOR~~UFC~~ bouts, (iv) other BELLATOR~~UFC~~ events and broadcasts, and (v) the sale of BELLATOR~~UFC~~ merchandise, including making appearances at a reasonable number of pr ess conferences, interviews and other sponsorship and promotional activiti es ( any of which may be telecast, broadcast, recorded or filmed) at times and places reasonably designated by BELLATOR~~ZUFFA~~, without additional compensation therefore. F or su ch promotional activities, BELLATOR~~ZUFFA~~ w ill arr ange and pay for Fighter's reasonable travel, hotel and meal accommodations.

3.4      All Bouts shall be on dat es and at sit es to be designat ed by BELLATOR~~ZUFFA~~, in its sole and absolute discretion. If any B out is postpon ed for any reason except BELLATOR's~~ZUFFA's~~ non-performance, the B out Agreement appli cable to such B out shall determine the rights of the parti es and in addition thereto, t he Term shall be ext ended, at BELLATOR's~~ZUFFA's~~ elec tion, by a number of days equal to the num ber of days between the date originally scheduled for the Bout and the date on which the Bout occurs.

3.5      During the Term, BELLATOR~~ZUFFA~~ shall have the exclusive right to promote all of Fighter's bouts and Fighter shall not participate in or render his services as a professional fighter or in any other capacity to any other mixed martial art, martial art, boxing, professional wrestling, or any other fighting competition or exhibition, except as otherwise expressly permitted by this Agreement.

3.6      Notwithstanding the foregoing, in the event Fighter is not t hen a BELLATOR~~UFC~~ champion, Fighter is permitted, subject to the prior written consent of BELLATOR~~ZUFFA~~, which consent may be granted or withheld in BELLATOR's~~ZUFFA's~~ sole discretion, to contract with other promoters or to engage in any mixed martial arts bout or fighting competition or exhibition promoted by other promoters (an "**Other B out**") during the Term provided (i) su ch Other Bout is not televi sed by any domestic or international television network, station, cable system, satellite or other provider or via Internet or wirele ss exhibition; (ii) such Oth er Bout i s scheduled f or and tak es pla ce on a date whi ch is more than sixty (60) days before or more than thi rty (30) days a fter any non-champi onship B out and more than ninety (90) days before or more than thi rty (30) days after any championship Bout; (iii) a copy of any agreement for any Other Bout shall have been furnished to BELLATOR~~ZUFFA~~ at least one (1) we ek prior t o its e xecution by Fighter; and (iv) a fu lly executed copy of any such agreement is provided to BELLATOR~~ZUFFA~~ w ithin five (5) days of execution by Fighter . Except i n compliance with the foregoing limited exception, Fighter shall not, during the Term, grant promotional or other rights which conflict w ith the Rights. Furthermore, Fighter expressly agr ees that this Agreement shall be automatically extended for an additional one hundred tw enty (120) days for each non-BELLATOR~~UFC~~ promoted mixed ma rtial arts competition or exhibition that Fight er participates i n, and any referen ce t o the Term herein shall be deemed to include any such extension(s).

Promotional and Ancillary Rights Agreement
Between Bellator Sport Worldwide, LLC
And Eddie Alvarez
Dated: December 6, 2012 – 4:15 p.m.

23
5

Formatted: Font: Times New Roman, 8 pt

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

3.7      Any and all Bouts that occur in a juri sdiction without an Athletic Commission shall be conducted pursuant to the statutes, rules and regulations of the State of New Jersey~~Nevada~~ in effect at the time of th e Bout, including, but not lim ited to, the Unifi ed Rules of Mixed Martial Arts (the " **New Jersey**~~Nevada~~ **Rules**"); for the protection of the health and safety of the Fighter, to promote fairness in the administration of the Bout, and to pr eserve the inte grity of the sport of mi xed martial arts. Fight er may appeal any advisory opinion by BELLATOR~~ZUFFA~~ regarding any application of the New Jersey~~Nevada~~ Rules relati ng to B outs that occur i n a ju risdiction without an official governm ent mandat ed Athletic Commission to an independent third-party arbitrator or arbitration panel selected pursuant to the guidelines developed by Judicial Arbitration and Mediation Services, Inc. All costs and fees associated with an appeal taken pursuant to this Section shall be the exclusive responsibility of the Fighter. Regardless of where a Bout occurs, in no ev ent shall a Fighte r have any right to appeal a decision by BELLATOR~~ZUFFA~~ relating to the BELLATOR~~UFC~~ Title or the BELLATOR~~UFC~~ Championship belts.

3.8      Additionally, BELLATOR~~ZUFFA~~ agrees to utilize Fighter in a B out that broadcast on Spike TV~~Fox Network Television~~ during the Term.

3.9      BELLATOR~~ZUFFA~~ al so agr ees to utili ze Fighter on no le ss th an thr ee (3) occasions, during the Term, as "on-air" tal ent to provide commentating services f or other BELLATOR~~UFC~~ branded events in which Fighter is not then participating the date, timing and location of which shall be at BELLATOR's~~ZUFFA's~~ discretion.

ARTICLE IV
TERM

4.1      The duration of the Promotional Rights provided herein (the "**Term**") shall commence on the Eff ective Date and end on the earlier of (i) fo rty (40) m onths aft er the first bout promot ed by BELLATOR~~ZUFFA~~ involving Fighter under this Agreement; or (ii) the date on which Fighter has participated in at least eight (8) B outs promoted by BELLATOR~~ZUFFA~~ pursuant to this Agreement (the "**Termination Date**"), unl ess terminat ed sooner or extended further pursu ant to t he provisi ons of this Agreement.

4.2      If, at the expiration of the Term, Fighter is t hen a BELLATOR~~UFC~~ champion, the Term shall automatically be extended for the peri od commencing on the Termination Date and ending on the later of (i) one (1) year fr om the Termination Date; or (ii) the date on which Fighter has participated in three (3) bouts promoted by BELLATOR~~ZUFFA~~, regardless of weight class or title, following the Termination Date ("**Extension Term**"). Any referen ce to the Term herein shall be deemed to include a reference to t he Extension Term, where applicable.

4.3      The length of time for BELLATOR~~ZUFFA~~ to provide Fighter with the minimum number of B outs enumerated in this Article IV shall be extended for six (6) months or any period of time that Fight er i s unable or unwilling to compete, whichever is greater. Such extension shall include, without limitation, any time periods when Fighter is disabled, sick or injured for any reason; incarcerated; suspended or revoked by an Athletic Commission; has his ability to travel restricted by a governmental agency or is otherwise unable, unwilling or refuses to compete or train for a Bout for any reason whatsoever, including, without limitation, not approving of an opponent designated by BELLATOR~~ZUFFA~~ pursuant to Section 3.1 of this Agr eement. Additionally, the l ength of time for BELLATOR~~ZUFFA~~ to provide Fight er with the minimu m number of Bouts enumerated in thi s Article

Promotional and Ancillary Rights Agreement
Between Bellator Sport Worldwide, LLC
And Eddie Alvarez
Dated: December 6, 2012 – 4:15 p.m.

~~23~~
6

> **Formatted:** Font: Times New Roman, 8 pt

CONFIDENTIAL
FOR INTERNAL DISCUSSION PURPOSES ONLY
NOT TO BE DISSEMINATED

IV shall al so be extended for any length of time that Fighter serves as a co ach on a Bellatorthe "The Ultimate Fighter" reality television series or six (6) months whichever is longer.

4.4     The expiration or earlier termination of the Term, any Acceleration (as defined herein), or the death or incapacity of the Fighter, shall not affect or terminate the grant of the Ancillary Rights or any of the other general or specific provisions of this Agr eement, all of which shal l survive any such expiration, termination, Acceleration, death or incapacity.

4.5     BELLATORZUFFA shall not be d eemed in default of this Agr eement to the extent that performance of its obligations are delayed or prevented by reason of any act of God, fire, natural disaster, war, riots, civil unrest, strike or labor difficulties, terrorism, power failure, other calamity or acts constituting force majeure, or any governmental or Athletic Co mmission enactment, determination or action, regulation or order. If there is an oc currence of a force majeure event or other bona fide action, BELLATORZUFFA may elect to suspend this Agr eement f or a peri od equal t o the dura tion of t he occurrence, and no compensation shall be paid or become due to Fighter during such suspension period.

ARTICLE V
BOUT AGREEMENT AND STANDARD FIGHTER CONTRACT

5.     For each Bout, Fighter shall ex ecute and comply with the terms of a Bout Agr eement ("**Bout Agreement**"), which shall be either the standard fighter contract requir ed by the applicable Athletic Commission or the standard Bellator Bout Agreementpursuant to the Nevada Rules, as applicable (the "**Standard Fighter Contract**"), and any ot her c ontract r equired to be ex ecuted by law, the terms of whi ch shall be consistent with the terms of this Agr eement. To t he extent of any conflict between this Agreement and a Bout Agr eement with respect to a Bout, the Bout Agreement shall control.

ARTICLE VI
COMPENSATION

6.1     Subject in all events to Section 10.1(d), the Compensation to Fighter shall take the for m of a " **Fighter's Purse**" and, if and onl y if Fighter is declared the win ner of a B out by the Athleti c Commission, a "**Win Bonus**," each in the amount as set forth below.

a.     Fighter's Purse for the first B out shall be Seventy Thousand Dollars (US $70,000.00), less all permissible or required deductions. If and only if Fighter is declar ed the winner of the first Bout by the Athletic Commi ssion, the Win Bonus for the first Bout shall be Seventy Thousand Dollars (US $70,000.00), less all permissible or required deductions.

b.     If and only if Fighter is declared the winn er of the fir st Bout by the applicable Athletic Commission, Fighter's Purse for the se cond Bout shall be Seventy-Five Thousand Dollars (US $75,000.00), less all p ermissible or required deductions. If and only if Fighter is declar ed the winner of the first Bout and the second Bout by the Athletic Commission, the Win Bonus for the second Bout shall be Seventy-Five T housand Do llars (US $75,000.00), less all permi ssible or required deduc tions. If Fighter is not declared the winner of the first Bout (and there is no Acceleration), Fighter's Purse and Win Bonus for the second Bout shall be as set forth in subsection (a) above.

c.     If and only if Fighter is declared the winner of the first Bout and the second Bout

Promotionaland AncillaryRights Agreement
Between Bellator Sport Worldwide, LLC
And Eddie Alvarez
Dated:  December 6, 2012 – 4:15 p.m.

22
7

CONFIDENTIAL

~~CONFIDENTIAL~~
~~FOR INTERNAL DISCUSSION PURPOSES ONLY~~
~~NOT TO BE DISSEMINATED~~

by the applicable Athletic Commission, Fighter's Purse for the third Bout shall be Eighty T housand Dollars (US $80,000.00), less all permissible or required deductions. If and only if Fighter is declared the winner of the first Bout, the second Bout, and the third Bout by the applicable Athletic Commission, the Win Bonus for the third B out shall be Eigh ty Thousand Dollars (US $80,000.00), less all permissible or required deductions. If Fight er is not declared the winner of the fir st B out and the second Bout by t he applicable Athletic Commission (and if there is no Ac celeration), Fighter's Purse and Win Bonus for th e third Bout shall be the same as set forth in subsection (a) above. If Fighter is declared the winner of either the first Bout or the second Bout by the applicable Athletic Commission, but not both (and if ther e is no Acceleration) Fighter's Purse and Win Bonus for the th ird B out shall be as s et forth in subsection (b ) above.

       d.     If and only if Fight er is declar ed the winn er of the fir st Bout, second Bout and third Bout by the applicable Athletic Commission, Fighter's Purse for the fourth Bout shall be Eighty-Five Thousand Dollars (US $85,000.00), less all permissible or required deductions. If and only if Fighter is declared the winn er of the first Bout, the se cond B out, the third B out, and the f ourth B out by t he applicable Athletic Commissi on, the Win Bonus for the fou rth Bout shall be Eighty-Five Thousand Dollars (US $85,000.00), less all permissible or required deductions. If Fighter is not declared the winner of the first Bout, se cond Bout and th ird Bout (and if there is no Accelera tion), Fighter's Purse and Win Bonus for the fourth Bout shall be as set forth in subsection (a) above. If Fighter is declared the winner of only one of the first three Bouts by the applicable Athletic Commission (and if there is no A cceleration) Fighter's Purse and Win Bonus for the fourth Bout shall be as set forth in subsection (c) above. If Fighter is declared the winner of only two of the first thr ee Bouts by the applicable Athletic Commission (and if there is no Acceleration) Fighter's Purse and Win Bonus f or the fou rth B out shall be as s et forth in subsection (c) above.

       e.     If and only if Fighter is declared the winner of the first Bout, second Bout, third Bout and the fou rth Bout by the applicable Athletic Commi ssion, Fighter's Purse for the fi fth Bout shall be Ninety Thousand Dollars (US $90,000.00), less all permissible or required deductions. If and only if Fighter is declared the winner of the first Bout, the second Bout, the third Bout and the fourth Bout by the applicable Athletic Commission, the Win Bonus for the fifth Bout shall be Ninety Thousand Dollars (US $90,000.00), less all permissible or required deductions. If Fighter is not declared the winner of the first Bout, the second Bout, the third Bout and the fourth Bout by the applicable Athletic Commission (and if there is no Acceleration), Fighter's Purse and Win Bonus for the third Bout shall be the same as set forth in subsection (a) abov e. If Fight er is declar ed the winner of one the f irst four B outs by the applicable Athletic Commission (and if there i s no A cceleration), Fighter's Purse and Win Bonus for the th ird Bout shall be the same as set forth in subsection (b) above. If Fighter is declared the winner of two of the first four Bouts by the applicable Athle tic Commission (and if there is no Accelerati on), Fighters Purse and Win Bonus for the fifth Bout shall be the same as set forth in subsection (c) above. If Fighter is declared the winner of three of the first of the first four Bouts by the applicable Athletic Commission (and if there is no A cceleration), Fighters Purse and Win Bonus f or the fifth B out shall be the same as set forth i n subsection (d) above.

       f.     If and only if Fighter is declared the winner of the first Bout, second Bout, third Bout, the f ourth Bout and the fifth B out by the applicable Athletic Commi ssion, Fighter's Purse for t he sixth B out shall be Ninety-Five T housand Dollars (US $95,000.00), l ess al l permissible or require d deductions. If and only if Fighter is declared the winner of the first Bout, the second Bout, the third Bout, the fourth Bout, the fifth Bout and the sixth Bout by the applicable Athletic Commission, the Win Bonus

Promotional and Ancillary Rights Agreement
Between Bellator Sport Worldwide, LLC
And Eddie Alvarez
Dated: December 6, 2012 – 4:15 p.m.

~~22~~
8

Formatted: Font: Times New Roman, 8 pt

CONFIDENTIAL

CONFIDENTIAL
FOR INTERNAL DISCUSSION PURPOSES ONLY
NOT TO BE DISSEMINATED

for the sixth Bout shall be Ninety-Five Thousand Dollars (US $95,000.00), less all permissible or required deductions. If Fighter is not declared the winner of the first Bout, the second Bout, the third Bout, the fourth Bout, and the fifth Bout by the applicable Athletic Commission (and if there is no Acceleration), Fighter's Purse and Win Bonus for the sixth Bout shall be the same as set forth in subsection (a) above. If Fighter is declared the winner of one of the first five Bouts by the applicable Athletic Commission (and if there is no Acceleration), Fighter's Purse and Win Bonus for the sixth Bout shall be the same as set forth in subsection (b) above. If Fighter is declared the winner of two of the first five Bouts by the applicable Athletic Commission (and if there is no Acceleration), Fighter's Purse and Win Bonus for the sixth Bout shall be the same as set forth in subsection (c) above. If Fighter is declared the winner of three of the first five Bouts by the applicable Athletic Commission (and if there is no Acceleration), Fighter's Purse and Win Bonus for the sixth Bout shall be the same as set forth in subsection (d) above. If Fighter is declared the winner of four of the first five Bouts by the applicable Athletic Commission (and if there is no Acceleration), Fighter's Purse and Win Bonus for the sixth Bout shall be the same as set forth in subsection (e) above.

g.      If and only if Fighter is declared the winner of the first Bout, second Bout, third Bout, the fourth Bout the fifth Bout, and the sixth Bout, Fighter's Purse for the seventh Bout shall be One Hundred Thousand Dollars (US $100,000.00), less all permissible or required deductions. If and only if Fighter is declared the winner of the first Bout, the second Bout, the third Bout, the fourth Bout, the fifth Bout, the sixth Bout, and the seventh Bout by the Athletic Commission, the Win Bonus for the seventh Bout shall be One Hundred Thousand Dollars (US $100,000.00), less all permissible or required deductions. If Fighter is declared the loser of the first Bout, the second Bout, the third Bout, the fourth Bout, the fifth Bout and the sixth Bout (and if there is no Acceleration) Fighter's Purse and Win Bonus for the seventh Bout shall be the same as set forth in subsection (a) above. If Fighter is declared the winner of one of the first six Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the seventh Bout shall be the same as set forth in subsection (b) above. If Fighter is declared the winner of two of the first six Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the seventh Bout shall be the same as set forth in subsection (c) above. If Fighter is declared the winner of three of the first six Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the seventh Bout shall be the same as set forth in subsection (d) above. If Fighter is declared the winner of four of the first six Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the seventh Bout shall be the same as set forth in subsection (e) above. If Fighter is declared the winner of five of the first six Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the seventh Bout shall be the same as set forth in subsection (f) above.

h.      If and only if Fighter is declared the winner of the first Bout, second Bout, third Bout, the fourth Bout the fifth Bout, the sixth Bout, and the seventh Bout, Fighter's Purse for the eighth Bout shall be One Hundred Five Thousand Dollars (US $105,000.00), less all permissible or required deductions. If and only if Fighter is declared the winner of the first Bout, the second Bout, the third Bout, the fourth Bout, the fifth Bout, the sixth Bout, the seventh Bout, and the eighth Bout by the Athletic Commission, the Win Bonus for the eighth Bout shall be One Hundred Five Thousand Dollars (US -$105,000.00), less all permissible or required deductions. If Fighter is declared the loser of the first Bout, the second Bout, the third Bout, the fourth Bout, the fifth Bout, the sixth Bout, and the seventh Bout (and -if there is no Acceleration) Fighter's Purse and Win Bonus for the eighth Bout shall be the same as set forth in subsection (a) above. If Fighter is declared the winner of one of the first seven Bouts (and if there -is no Acceleration) Fighter's Purse and Win Bonus for the eighth Bout shall be the same as set forth in

Promotional and Ancillary Rights Agreement
Between Bellator Sport Worldwide, LLC
And Eddie Alvarez
Dated:  December 6, 2012 – 4:15 p.m.

23
9

Formatted: Font: Times New Roman, 8 pt

ZFL-0749134

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

subsection (b) above. If Fighter is declared the winner of two of the first seven Bouts (and if there is no -Acceleration) Fighter's Purse and Win Bonus f or the eighth Bout shall be the    same as set forth in subsection (c) above. If Fighter is declared the winner of three of the first seven Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus f or the eighth Bout shall be the    same as set forth in -subsection (d) above. If Fighter is declared the winner of four of the first seven Bouts (and if there is no -Acceleration) Fighter's Purse and Win Bonus for the eighth Bout shall be the    same as set forth in subsection (e) above. If Fighter is declared the winner of five of the first seven Bouts (and if there is no -Acceleration) Fighter's Pur se and Win Bonus f or the eighth B out shall be the   same as set fo rth in -subsection (f) above. If Fight er is declared the winner of six of the first seven Bouts (and if there is no -Acceleration) Fighter's Purse and Win Bonus f or the eighth B out shall be the same as set fo rth in subsection (g) above.

6.2     ~~BELLATOR~~ZUFFA and Fighter intend for Fighter's first B out, under this Agreement, to be for the ~~BELLATOR~~UFC lightweight title and for said lightweight title Bout to occur before the end of March of 2013 so long as Fighter and the then current ~~BELLATOR~~UFC lightweight champion is medically and/or otherwise able to compete by such date. For the avoidance of doubt, however, regardless of whether Fighter's first Bout is for th e lightweight title Bout and o ccurs on or before the end of Mar ch of 2013, i n addition to the Fighter's Purse, (i) for Fighter's first Bout under this Agreement; and (ii) for any subsequent Bout thereafter in which Fighter participates in a Bout and is defending a ~~BELLATOR~~UFC Championship belt, so long as such applicable ~~BELLATOR~~UFC event is br oadly distributed in the Unit ed States and/or Canada, or any other territory, including via the internet, and so long as the rates charged in said territories, or on the internet, ar e comparable to those charged in the United States or Canada, on residential pay-per-view on iN DEMAND, DirecTV, Echostar, or similar pay-per-view provider as utilized by ~~BELLATOR~~ZUFFA ("Pay-Per-View Providers"), then Fighter has the potential to receive a pay-per-view bonus. If such ~~BELLATOR~~UFC event exceeds specified buy rates of combined sales through Pay-Per-View Providers, Fighter shall receive a Pay-Per- View Bonus as follows:

For combined Pay-Per-View Provider buys purchased within thirty (30) days of the live event, Fighter shall receive One dollar ($1.00) for each pay-per-view buy between -200,000 buys and 400,000 buys; and Two dollars ($2.00) for each pay-per-view buy between 400,000 buys and 600,000 buys; and Two dollars and Fifty Cents ($2.50) for -each pay-per-view buy over 600,000 buys.

*By way of  example only, if su ch an applicable event were to generate 900,000   combined i N DEMAND, DirecTV, and Echostar, pay-per-view buys, Fighter would receive a pay-per-view Bonus of $1,350,000, which w ould r epresent $200,000 for appli cable buys betw een 200,000 and 400,000 ($1 x 200,000 buys), $400,000 for applicable buys between 400,000 and 600,000 ($2.00 x 200,000 buys) and $750,000 for applicable buys between 600,000 and 900,000 ($2.50 x 300,000).

6.3     In or der to verify ~~BELLATOR's~~ZUFFA's compliance with the potential pay-per-view bonus, Fighter is entitled, upon written notice of at least thirty (30) business days, to review, at ~~BELLATOR's~~ZUFFA's offices, all applicable pay-per-view reports that ~~BELLATOR~~ZUFFA has received from iN D EMAND, D irecTV, Echostar and C anadian pay-per-vi ew provider s. Fighter m ay exercise this right no more than once each calendar year, for each Bout in which he participates, for up to two (2) years after the date of the applicable Bout. Pay- per-view bonus to be paid on an ongoing monthly basis subsequent to ~~BELLATOR's~~ZUFFA's receipt of payment from the pay-per-view providers and only if the aggregate amount owed to Fighter is in excess of $500.00. Fighter agrees to treat any such of review

Promotional and Ancillary Rights Agreement
Between Bellator Sport Worldwide, LLC
And Eddie Alvarez
Dated: December 6, 2012 – 4:15 p.m.

~~22~~
10

Formatted: Font: Times New Roman, 8 pt

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

under this section as confidential and agree not to disclose any information reviewed hereunder except as required by law or pursuant to a valid Court order. Additionally, Fighter agrees to refund and reimburse BELLATORZUFFA for any overpayments in the event and to the extent iN D EMAND, DirecTV, Echostar and/or C anadian providers adjust the pay-per-vi ew buys f or any of Fighter's bouts retroactively. BELLATORZUFFA shall have the right to dedu ct any overpayment adjustm ents from future payments to Fighter. BELLATORZUFFA reserves the right to reduce payments related to Canadian or other non-US pay-per-view buys in the event of an adverse currency exchange rate at the time of the payment to Fighter.

6.4     BELLATORZUFFA shall pay Fighter's Purse and the Win B onus, if applicable, w ithin twenty-four (24) hours of the completion of each Bout, except that if Fighter tests pos itive for any Controlled Substance (defined below) in a post-fight drug test, payment will be subject to the authority of and BELLATORZUFFA shall make payments only in accordance with the recommendations of the Athletic Commission. BELLATORZUFFA may deduct or withhold from compensation any applicable tax (whether domestic or foreign), fee, or sum required or permitted to be deducted or withheld by law, and may offset against any such compensation any sums a dvanced to Fight er by BELLATORZUFFA or otherwise due from Fighter to BELLATORZUFFA.

6.5     The Fighter's Purse and Win Bonus, and, if applicable pay-per-view bonus, together with the Incidentals (defined below) shall be the sole compensation due to or claimed by Fighter on account of this Agreement, the Rights, and Fighter's participation in any Bout or any activity related thereto.

6.6     Any and all pot ential Fighter's Purses and, if applicabl e, Win B onuses and/or pay-per-view bonuses capable of being ear ned during the Extension Term shall be nego tiated in g ood fai th between the parti es. However, the parti es expressly agree that such pot ential amounts are qu antifiable and de finite terms to this Agr eement because each such Fighter' s Purse an d, if applicabl e, Win B onus shall, at a minimum, be no l ess than the last Fighter's Purse and, if applicable, Win Bonus r eceived by Fighter during the standard Term of this Agreement.

6.7     Any advances shall be made in t he sole discretion of BELLATORZUFFA, and may be subject to the prior approval of the Athletic Commission.

6.8     Fighter shall operate within the r equirements of all tax laws a nd regula tions, and interpretations thereof, and be solely r esponsible f or r eporting the entire compensation paid under thi s Agreement and any corresponding agreements and ensure timely settlement of all tax es and other similar deductions. BELLATORZUFFA shall provide Fighter with a Form 1099 within ninety (90) days following the close of its fiscal year.

## ARTICLE VII
## INCIDENTALS

7.1     In add ition to the Fighter's Purse and, if applicable, the Win Bonus, as provi ded fo r above, Fighter shall be entitled to the transportation, lodging, meals or meal allowances, and B out tickets (collectively, the "**Incidentals**") identified in the Bout Agreement. Such Incidentals shall not be l ess than the Incidentals set forth herein.

a.     For each non-championship Bout her eunder which Fight er participates in,

CONFIDENTIAL                                                                    ZFL-0749136

**Formatted:** Font: Times New Roman, 8 pt

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

BELLATOR~~ZUFFA~~ shall provide a total of one (1) hotel or motel room and two (2) round-trip economy class airline tickets from the airport servicing Fighter's hometown to the site of the B out for use by and transportation of Fighter and one (1) of Fighter's Affiliates (the "**Fighter's Affiliates**"). Fighter's Affiliates shall include, but not be limited to, his manager, agent, trainer, seconds, sparring partners and other persons associated with Fighter who are connected with the Bouts.

b.      For each championship Bout hereunder which Fighter participates in as the champion or the challenger for the championship, BELLATOR~~ZUFFA~~ shall provide a total of two (2) hotel or motel rooms and three (3) round-trip economy class airline tickets from the airport servicing Fighter's hometown to the site of the Bout for use by and transportation of Fighter and two (2) of Fighter's Affiliates.

c.      For all Bouts hereunder, Fighter shall arrive and check in to the lodging provided by BELLATOR~~ZUFFA~~ on the date specified in the Bout Agreement, which shall be any time up to eight (8) days prior to the date of the B out (the "**Training Commencement Date**"), and shall check-out and depart from the lodging provided prior to the designated check-out time on the day after the Bout (the "**Departure Date**").

d.      From the Training Commencement Date through the Departure Date, Fighter and one (1) of Fighter's Affiliates shall each be provided with either Fifty Dollars (US $50.00) cash *per diem* for meals, or at BELLATOR's~~ZUFFA's~~ discretion, meal vouchers for three (3) meals per day. Food and beverage allowances shall be non-cumulative from day to day.

e.      Lodging shall be provided only from the Training Commencement Date through the Departure Dat e. Fighter and Fighter's A ffiliates shall be r equired to pr esent a va lid credit card up on registering at the hot el or motel, which card shall be charged for any and all expenses and damag es beyond the cost of the room, and BELLATOR~~ZUFFA~~ shall have no obligation for such additional expenses.

f.      Fighter shall also be provi ded with four (4) tickets to each B out hereunder, the selection and l ocation of whi ch shall be determi ned by BELLATOR~~ZUFFA~~. If Fighter's B out is the main event, Fighter shall receive tickets for seats located within ten (10) rows of the Cage~~Octagon~~.

7.2      No other be nefits, charges, expenses, or other incidentals of any kind (*e.g.*, telephone charges, beverages, entertainment, gift shop items or other such benefits, charges and expenses) shall be provided by BELLATOR~~ZUFFA~~ to Fight er or anyone associated with Fighter, and Fight er shall not be entitled to receive compensation in lieu of any unused or undesired Incidental.

ARTICLE VIII
FIGHTER'S CONDUCT

8.1      Fighter shall conduct himself in a ccordance with commonly accepted standards of decency, social conventions and morals, and Fighter will not commit any act or become involved in any situation or oc currence or make any statement which w ill reflect nega tively upon or bri ng disrepute, contempt, s candal, ridicule, or di sdain to Fighter, the I dentity of Fighter or any of Fighter's A ffiliates, BELLATOR~~ZUFFA~~ or any of its officers, managers, members, employees, or agents. Fighter's conduct shall not be such as to sh ock, insult or offend the public or a ny organized gr oup therein, or refl ect unfavorably upon any current or proposed, arena, site hotel, sponsor or such sponsor's advertising agency,

Promotional and Ancillary Rights Agreement
Between Bellator Sport Worldwide, LLC
And Eddie Alvarez
Dated: December 6, 2012 – 4:15 p.m.

~~23~~
12

Formatted: Font: Times New Roman, 8 pt

CONFIDENTIAL
FOR INTERNAL DISCUSSION PURPOSES ONLY
NOT TO BE DISSEMINATED

or any network or station over which a Bout is t o be broadcast. In addition, Fighter agrees that duri ng a Bout, or while training for a B out, as well as during any Pre-Bout Events or Post-Bout Ev ents, nei ther Fighter nor any of his managers, trainers and assistants shall wear any clothing or ornamentation, including, but not limited to, permanent or tem porary tatt oos o r body art, that i s lew d, ob scene, offensive,  defamatory, discriminatory on the basis of age, sex, race, color, creed, national origin, political belief, religious belief or sexual orientation or otherwise inappropriate as determined by BELLATOR~~ZUFFA~~ in its sole discretion or which conflicts with a BELLATOR~~ZUFFA~~ sponsor, the arena or telecaster.

8.2      Fighter and  Fighter's Affiliates shall maintain a high  standard of sportsmanship and conduct themselves in a professional manner prior to, during, and following each Bout.

8.3      Fighter shall n ot autho rize or be invol v ed with any  advertising mate rial  or publici ty materials that contain language or material which is generally considered to be obscene, libelous, slanderous or defamatory and will  not violate or infringe upon,  or give rise to any  adverse claim w ith respect t o, any  common-law or ot her right whatso ever (including,  but  not lim ited t o, any  copyright, trademark, service mark, liter ary, dramatic, music  or motion picture right, right  of privacy or publici ty, contract or moral rights of authors) of any person or entity.

8.4      Fighter shall maintain his e ligibility and k eep in good standing any  license required to participate in any Bout.

8.5      Fight er shall  not use  any controlled or banned  substance, including but not limited t o marijuana, cocaine, methamphetamine, steroids,  human growth horm one or any sim ilar drugs  or bl ood doping t echniques (e ach a " **Controlled Substance**").  Fight er agr ees that  an Athletic Commi ssion may test Fight er for C ontrolled Subst ances, and Fight er agrees to submit to any pre-B out or post-B out drug test as requested by an Athletic Commission.  Fight er shall be  deemed to  be in breach of this Secti on if Fighter tests positive for any Controlled Substance in any pre-Bout or post-Bout drug test.  Fighter is urged to consult the World Anti Doping (WADA) prohibited list for a list of banned substances.

8.6      Fighter acknowl edges t hat an Athletic Co mmission may  fine, suspend or im pose other penalties, including but n ot lim ited to removi ng re cognition from Fight er of any Champi onship ti tle, status or belt if Fighter tests positive for a Controlled Substance or for other improper conduct.

ARTICLE IX INJURY OR
RETIREMENT

9.1      If at any time during the Term, BELLATOR~~ZUFFA~~ offers to promote a Bout for Fighter and Fight er refuses to participate in or attempts to cancel or postpone such Bout for reason of a claimed injury or other medical disability, BELLATOR~~ZUFFA~~ shall have the right, but not the obligation, to have Fighter examined by a medical doctor of its choice at BELLATOR's~~ZUFFA's~~ expense, and, if BELLATOR~~ZUFFA~~ so elects, Fighter shall appear for such examination on one (1) day's notice.

9.2      If at any  time duri ng the Term, Fight er claims to be injur ed or tem porarily di sabled, BELLATOR~~ZUFFA~~ may,  at its election, for each such injury or disability claimed by Fighter, (i) extend the Term for the period of such injur y or di sability or for the pe riod of six (6) m onths, whichev er is longer; (ii) declare that BELLATOR~~ZUFFA~~ has satisfied its obligation to promote one (1) of the Bouts to

Promotional and Ancillary Rights Agreement
Between Bellator Sport Worldwide, LLC
And Eddie Alvarez
Dated:  December 6, 2012 – 4:15 p.m.

~~22~~
13

Formatted: Font: Times New Roman, 8 pt

~~*CONFIDENTIAL*~~
~~*FOR INTERNAL DISCUSSION PURPOSES ONLY*~~
~~*NOT TO BE DISSEMINATED*~~

be promoted by <u>BELLATOR</u>~~ZUFFA~~ hereunder, without any compensation due to Fight er for said Bout; or (iii) provide Fighter with notice of an Acceleration as defined herein.

9.3     If at any time during the Term, Fighter decides to retire from mixed martial arts or other professional fighting competition or is permanently disabled, then <u>BELLATOR</u>~~ZUFFA~~ may, at its election, (i) suspend t he Term for the peri od of such retirement or di sability; (ii) d eclare that <u>BELLATOR</u>~~ZUFFA~~ has satisfied its obligation to promote all future Bouts to be promoted by <u>BELLATOR</u>~~ZUFFA~~ hereunder, without any compensation due to Fighter therefor; or (iii) elect to provide Fighter with notice of an Acceleration.

ARTICLE X
TERMINATION/REMEDIES

10.1     <u>BELLATOR</u>~~ZUFFA~~ shall have t he right, but not the ob ligation, upon notice to Fighter, to accelerate the Term and thereby terminate <u>BELLATOR'S</u>~~ZUFFA'S~~ promotional and other obligations hereunder and un der any Bout Agreement then in effect (an "**Acceleration**") and to terminate Fighter's participation in any Bout, with Acceleration effective as of the date of no tice, and to withdraw recognition from Fighter of any Championship Title, Status and Belt, if:

a.     Fighter fails, for any reason whatsoever (other than the injury or physical disability of Fighter or any act of God as provided in Section 4.5) to engage in the minimum num ber of Bouts as offered by <u>BELLATOR</u>~~ZUFFA~~;

b.     Fighter or any of Fighter's Affiliates materially breach, violate or are in default of any provision of this Agr eement or any other agreem ent hereaft er enter ed into betw een Fighter and <u>BELLATOR</u>~~ZUFFA~~;

c.     any of t he repres entations or warr anties of Fighter c ontained herein were fal se when made or are no longer true and correct;

d.     Fighter is not declared the winner of any mixed martial arts bout (whether promoted by <u>BELLATOR</u>~~ZUFFA~~ or not) by the Athletic Commission or official authority having jurisdiction over the bout; or

e.     Fighter's license to par ticipate in bouts is su spended or revoked by an Athletic Commission.

f.     Fight er is unable to obtain the ne cessary do cumentation, including any work visas, to lawfully permit Fight er or Fighter's Affiliat es to participate in any B out as provided for i n Section 23.2 of this Agreement.

g.  Fighter is charg ed with a misdem eanor (other than a mi nor traffic offense) or a felony.

h.     Fighter should commit any act whi ch would permit any ar ena, ev ent site o r television broadcaster, distributor or exhibitor to cancel its contract with <u>BELLATOR</u>~~ZUFFA~~ for a particular Bout in which Fighter was to participate.

<u>Promotionaland AncillaryRights Agreement</u>
<u>Between Bellator Sport Worldwide, LLC</u>
<u>And Eddie Alvarez</u>
<u>Dated: December 6, 2012 – 4:15 p.m.</u>

~~22~~
14

| Formatted: Font: Times New Roman, 8 pt |

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

10.2    Acceleration shall be  without further liabil ity or obliga tion from BELLATOR~~ZUFFA~~ to  Fighter, except for the payment of any Fighter's Purse or Win Bonus, if appli cable, or other amounts due for Bouts that have been comple ted prior to Acceleration.

10.3    Acceleration shall not serve to affect  or terminate any of the Ancillary Rights, and thi s Agreement shall survive an A cceleration and remain in full for ce and effect with respect to the Ancillary Rights.  BELLATOR's~~ZUFFA's~~ failure to  accelerate in any particular case shall  not  constitute a waiver for future such cases.

10.4    Fighter acknowledges that his services as a professional fighter and the Ancillary Rights granted to  BELLATOR~~ZUFFA~~ herein are s pecial, unique, extr aordinary, irreplaceable and of  peculiar value, and tha t in the event of Fighter's br each or threat ened br each of this Agr eement or any B out Agreement, BELLATOR~~ZUFFA~~ w ould  suffer irreparable damage which could  not  be  reasonably or adequately compensated by  an aw ard of damag es.  In the ev ent of  such breach or threa ned breach, BELLATOR~~ZUFFA~~ shall be entitled, in addition to any other available remedy, to obtain equitable relief, including, but not limited to, an injunction against such breach and Fighter waives the right to assert as a defense in any such action that BELLATOR~~ZUFFA~~ has an adequate remedy at law.  To the extent that a bond is nec essary to  obtain  an  injunction, Fight er agrees that the bon d shall not ex ceed Five Hundr ed Dollars (US $500.00).

10.5    If Fighter believes in g ood faith that BELLATOR~~ZUFFA~~ has  materially breached any  material provision of this Agreement, or has unreasonably failed or refused to perform its obligations hereunder, Fighter shall provide BELLATOR~~ZUFFA~~ with written notice of such alleged breach and shall provide BELLATOR~~ZUFFA~~ w ith a t least ten (10) business days to cure such alleged breach.  If BELLATOR~~ZUFFA~~ fa ils to cure the alleg ed materia l breach within ten (10) business days of receipt of Fighter's written notice, then and only then may Fighter seek to terminate this Agreement and seek redress for any outstanding compensation owed to Fighter hereunder.   Fighter expr essly understands and agr ees that  his sole rem edy f or  any a lleged brea ch by  BELLATOR~~ZUFFA~~ shall be to s eek payment for any remaining  compensation due to Fight er und er Article VI , exclusive of  any potentially  applicable Win Bonuses, and in no event shall Fighter be entitled to any consequential, incidental, or punitive damages of any sort.

Promotional and Ancillary Rights Agreement
Between Bellator Sport Worldwide, LLC
And Eddie Alvarez
Dated:  December 6, 2012 – 4:15 p.m.

~~23~~
15

Formatted: Font: Times New Roman, 8 pt

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

ARTICLE XI
INSURANCE

11.1     BELLATOR~~ZUFFA~~ will provide hea lth and a ccidental death i nsurance as r equired by the applicable Athletic Commission. Fighter hereby acknowledges that professional unarmed combat has the significant potential for serious injuries, and Fighter is knowingl y and voluntarily assuming all su ch risks. Accordingly, except for the insurance benefits being provided by BELLATOR~~ZUFFA~~ as de scribed in this Article 11, Fighter, for himself, his heirs, assigns, executors, and administrators agr ees to be solely liable for and  will bear the full and complete c ost of a ny and all m edical treatment or di sability and all other costs associated with any injuries resulting from any and all Fighter's services under this agreement. Furthermore, Fighter assumes all risks of injuries sustained outside of a Bout.

11.2     BELLATOR~~ZUFFA~~ shall have the right, at its election, to obtain, at BELLATOR's~~ZUFFA's~~ cost and  expense, life or other insurance upon Fighter, including, but not limited to, insurance against the failure of Fighter to appear and to participate in any Bout and insurance to cover injuries sustained by Fighter in training and preparation for a Bout, in such amounts or type of coverage as BELLATOR~~ZUFFA~~ may determine, and, if  applicable, for the benefit  of BELLATOR~~ZUFFA~~.  Except as expressly consented to in writing by BELLATOR~~ZUFFA~~, neither Fighter nor any  of Fighter's Affiliates shall have any right,  title or intere st in  such i nsurance.  Fight er and Fighter's Affiliates shall, at the r equest of BELLATOR~~ZUFFA~~, cooperate w ith and assi st BELLATOR~~ZUFFA~~  or its ag ent (as directed by BELLATOR~~ZUFFA~~), in  obtaining and maintaining any such coverage, including submitting to physical or other examinations of Fighter and furnishing such information and medical records as may be r equired by any existing  or pr oposed insurer and  performing all further acts and things, and executing any  and  all additional documents or instruments necessary for BELLATOR~~ZUFFA~~ to obtain any such insurance contemplated by this Section 11.2.

ARTICLE XII
RIGHT TO MATCH

12.1     During the one (1) y ear period after conclusion of the  Term for any rea son whatsoever (the "**Matching Period**"), BELLATOR~~ZUFFA~~ shall have the opti on to mat ch the financial terms and conditions o f any offer made to Fighter for an Other B out as defined in Section 3.6 of this Agr eement. Fighter shall not accept any offer or enter into a contract or agreement with any other promotional entity during the Matching Period without complying with this Sec tion 12.1. Prior t o acceptance of any Offer made during the Matching Period, Fighter shall first deliver to BELLATOR~~ZUFFA~~ a written notice of all material financial term s and conditions of the offer , including, but not lim ited t o, the ident ity of the promotional entity making t he offer.   Such notice shall consti tute an exclusive, irrev ocable off er (t he "**Fighter Offer**") to contract with BELLATOR~~ZUFFA~~ on the same financial terms and conditions. BELLATOR~~ZUFFA~~ shall have fift een (15) busin ess day s following receipt of the Fighter Offer in which to ac cept the fina ncial terms  of t he Fighter Offer .  If BELLATOR~~ZUFFA~~ does not accept the Fighter Offer, Fight er may t hen a ccept the offer  without m odification duri ng the t en (10) busine ss day period following expiration of the Fighter Offer (the "**Contract Period**").  If the offer is modified in any material way,  such modification shall give  rise t o another Fighte r Offer on such m odified terms and conditions and BELLATOR~~ZUFFA~~ shall have the option to mat ch the terms of the offer, as modified in accordance with the terms and conditions of this Section 12.1. If Fight er has not contracted with a third

Promotional and Ancillary Rights Agreement
Between Bellator Sport Worldwide, LLC
And Eddie Alvarez
Dated:  December 6, 2012 – 4:15 p.m.

~~23~~
16

Formatted: Font: Times New Roman, 8 pt

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

party on or before the conclusion of the Contract Peri od, then all rights gr anted to BELLATOR~~ZUFFA~~ pursuant to this Section 12.1 shall be automatically reinstated.

12.2    The provisions  of Sec tion 12.1 above shall   survive terminati on or   expiration of this Agreement.

ARTICLE XIII
REPRESENTATIONS AND WARRANTIES

13.1.    Fighter represents and warrants to BELLATOR~~ZUFFA~~ that:

a.    Fighter shall prepare and honestly compete to the bes t of Fighter's ability in the Bout and that there is no impairment to Fighter doing so;

b.    Fighter is  free to  enter into this Agr eement and has  not heretofore and will  not hereafter enter into  any contract, option,  agreement  or underst anding, whet her oral or writt en, whi ch conflicts w ith the provisions hereof  or t he  grant of Rights   contained herein  or whi ch would or coul d interfere with Fighter's full and  complete performance hereunder or the fr ee and unimpaired exercise by BELLATOR~~ZUFFA~~ of any of the Rights;

c.    There are no claims or arbitration, mediation, or litigation pending or threatened affecting Fighter that would or could interfere with Fighter's full and complete performance hereunder or the free and unimpaired exercise by BELLATOR~~ZUFFA~~ of any of the Rights;

d.    Fighter is ente ring into this Agr eement of his own fr ee will, is not s ubject to duress of any kind, and is not under the influence of  any Controlled Substance and Fighter knows  of no disability, whether physical or mental, which would  or could prevent Fighter from the full and  complete performance of his obligations hereunder; and

e.    Fighter h as had the  opportunity to consult an a ttorney or other r epresentative regarding  this Agr eement,  and he appr eciates the l egal signifi cance and   consequences of signi ng  this Agreement; and

f.    Fight er is either (i) a citiz en of the Unit ed States and is  not otherwise subject to any "backup" or other  withholding of t axes or compensation specially applicable to tho se who are no t citizens  of the United States, or  (ii) is  not a citizen  of the United  States but has  provided to BELLATOR~~ZUFFA~~ in w riting all information necessary to enable BELLATOR~~ZUFFA~~ to  comply with any such applicable withholding or other payment requirement.

g.    Fighter has obtained, and BELLATOR~~ZUFFA~~ shall not be responsible to pay for in any w ay whatsoever, all clear ances, li censes, use s, r euse fee s,  license f ees, relating to the use and appearance  of any crea tive expressi on, clothing  apparel, sportswear  and equipment, included b ut not limited to,  trunks, robes,  shoes,  or any other part  of the costume,  electronic  information,  digital information, wording, phrases, symbols, pictures, designs, print materials or other materials or information (including, without limitation, the trademarks, copyrights, personal privacy, property rights, names, voices, and likenesses of all  and any persons,  properties  and businesses  appearing  therein (if  any), and  all components  and elements thereof) displayed and exhibited by Fighter or any of Fighter's Affiliates during

Promotional and Ancillary Rights Agreement
Between Bellator Sport Worldwide, LLC
And Eddie Alvarez
Dated:  December 6, 2012 – 4:15 p.m.

~~22~~
17

[Formatted: Font: Times New Roman, 8 pt]

~~CONFIDENTIAL~~
~~FOR INTERNAL DISCUSSION PURPOSES ONLY~~
~~NOT TO BE DISSEMINATED~~

or at any Bouts, Pre-Bout Events or Post-Bout Events.

h.      Fighter has the full power to expressly and irrevocably transfer said rights described in Paragraph 13.1(g) above to BELLATOR~~ZUFFA~~, or BELLATOR's~~ZUFFA's~~ respective sponsors, successors, assigns, agents, directors, members, managers, officers, employees, co-producers and licensees, and warrants that the exercise of the rights gr anted herein will not infringe on any rights of any third party, including but not lim ited t o copyright, trademark, unfair competition, contract, defamation, privacy or publicity rights.

13.2.   BELLATOR~~ZUFFA~~ represents and warrants to Fighter that:

a.      BELLATOR~~ZUFFA~~ is a  limited liability company duly form ed under the laws of the State of  New Jersey~~Nevada~~; and that the pers on executing this Agr eement on behalf of BELLATOR ~~ZUFFA~~ is authorized to do so; and

b.      BELLATOR~~ZUFFA~~ i s  able t o pe rform  its  promo tional and paym ent obligations  arising hereunder, and there are n o claims or arbitration, mediation, or litigation pending or threatened affecting BELLATOR~~ZUFFA~~ that would prevent BELLATOR~~ZUFFA~~ from performing hereunder.

ARTICLE XIV<br>ASSUMPTION OF THE RISK/WAIVER OF ALL CLAIMS

14.1    Fighter fully understands and agrees that the professional sport of mixed martial arts is an inherently and abnorma lly dangerous ac tivity that can r esult in severe and  permanent physical injury, including but not limited to i rreversible neurological trauma, disability, or death. Fight er represents that he is a seasoned professional in the sport of mixed martial arts, and Fighter has knowingly evaluated the inherent risks, for eseen and unfore seen, in this  dangerous sport and repre sents and declar es that he i s physically, mentally, emotionally and intellectually willing and able to a ccept, and does her eby clearly, unambiguously and explicitly accept, all risk s, foreseen and unforeseen, associated with participating i n the sport and the Bouts.

14.2    In consideration for the opportunity to participate in the B outs, and with full knowl edge and  complete assumption of all the risks, Fighter, for himself, his heirs, assigns, executors and administrators ("**Releasing Parties**") hereby irrevocably agrees that the Releasing Parties will not sue or claim against BELLATOR~~ZUFFA~~ or any of its parents, subsidiary entities, affiliates, sponsors, successors and assigns, and the r espective dir ectors, officers, members, manager s, employees, agents, contractors, partners, shareholders and representatives, in their individual , personal and r epresentative capacities for each of the foregoing entities ("**Released Parties**") for any injury, illness, damage, loss or harm to Fighter  or Fighter's property,  or Fighter's death  or di sability, how soever caused, re sulting or a rising out of  or i n connection  with  Fighter's  preparation for , trav el for,  participa tion and- appearance in,  any  BELLATOR~~UFC~~ promotional events, the Bouts, the Pre-Bout Events and the Post-bout Ev ents or any activities associated therewith.

14.3    In consideration f or the oppo rtunity to par ticipate in the B outs, and with full knowl edge and complete assumption of all risk s, the Releasing Parties her eby forever voluntarily relea se, discharge, waive and relinquish any and all, past, present and future, claims and causes of action, specifically including

Promotional and Ancillary Rights Agreement<br>Between Bellator Sport Worldwide, LLC<br>And Eddie Alvarez<br>Dated:  December 6, 2012 – 4:15 p.m.

~~23~~
18

Formatted: Font: Times New Roman, 8 pt

CONFIDENTIAL
FOR INTERNAL DISCUSSION PURPOSES ONLY
NOT TO BE DISSEMINATED

any claims based on negligence or gross negligence, that they may have against the Released Parties, as the result of any injury, illn ess, damage, l oss or har m to Fighter or Fighter's property, or Fighter's death or disability, how soever caused, resulti ng or a rising out of or in connecti on with Fighter's preparation for, travel for, participati on and appearance in any BELLATOR~~UFC~~ promo tional ev ents, the Bout s, th e Pre-Bout Ev ents and t he Post-Bout Ev ents or any activities as sociated therewith. Furthermore, th e Releasing Parties hereby irrevocably and unc onditionally waive and agr ee that any insurance proceeds and benefits provided by BELLATOR~~ZUFFA~~ hereunder shall be the only benefits the Rele asing Parties m ay claim or receive from Released Parties for any injury, including death, relating to any and all of Fighter's service s under this Agreement.

## ARTICLE XV
## INDEMNIFICATION

15. Fighter shall indemnify, defend and hold harmless BELLATOR~~ZUFFA~~, its subsidiaries, affiliates and sponsors, and each of their members, managers, directors, officers, employees, representatives, agents and contractors from and against any claims, actions, proceedings, expenses (including attorneys' f ees of counsel of indemnified party's choi ce, as and w hen incurred) and damag es arising from or relating to any negligent or intentional acts or om issions by Fighter or an y of Fighter's Affiliates or the bre ach of any of Fighter's representations, warranties or covenants contained herein or within any Bout Agreement.

## ARTICLE XVI
## PROHIBITION ON USE OF
## INTELLECTUAL PROPERTY RIGHTS

16.1 Unless Fight er re ceives pri or writt en approval from BELLATOR~~ZUFFA~~, Fight er shall not ut ilize a ny of BELLATOR's~~ZUFFA's~~ intellectual pr operty rights, including, but not lim ited t o, ~~the names and marks "Ultimate Fighting Championship," "UFC," the "Octagon," "Ultimate Fighting," "Ultimate Fighter," and~~ any logos, pictures or other representations of BELLATOR's~~ZUFFA's~~ intellectual property. W ithout limiting the scope of this prohibition, Fight er expr essly agr ees that h e m ay not refer to himself as a "BELLATOR~~UFC~~ Champion"; "former BELLATOR~~UFC~~ Champion"; "BELLATOR~~UFC~~ Star"; " BELLATOR~~UFC~~ Superstar"; " BELLATOR~~UFC~~ Fighter" or uti lize any of BELLATOR's~~ZUFFA's~~ intellectual property in de scribing or referring to him self without the express written consent of BELLATOR~~ZUFFA~~. Further, Fighter expressly agrees not to use a BELLATOR~~UFC~~ championship belt without the prior written approval of BELLATOR~~ZUFFA~~, and further agrees th at any such belt he obtains is on l oan and will at all tim es remain th e property of BELLATOR~~ZUFFA~~. U pon BELLATOR's~~ZUFFA's~~ w ritten r equest, the belt must be returned w ithin forty-eight (48) hou rs to BELLATOR~~ZUFFA~~ at Fighter's expense. Additionally, Fighter expressly acknowledges and agrees tha t BELLATOR~~ZUFFA~~ is not a sanctioning org anization and Fighter does not possess and cannot a ssert any pr operty right or similar legal interest in the BELLATOR~~UFC~~ Title or in being a BELLATOR~~UFC~~ Champion.

16.2 Fighter shall not utilize the intellectu al property rights of any of BELLATOR's~~ZUFFA's~~ sponsors, including, without limitation, any log os, pictures or oth er r epresentations of such inte llectual property.

## ARTICLE XVII

Promotional and Ancillary Rights Agreement
Between Bellator Sport Worldwide, LLC
And Eddie Alvarez
Dated: December 6, 2012 – 4:15 p.m.

23
~~19~~

**Formatted:** Font: Times New Roman, 8 pt

ZFL-0749144

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

ASSIGNMENT

17.1     BELLATOR~~ZUFFA~~ shall have the absolute right to assign, license, or transfer any or all of the rights granted to her eunder, including, but not limited to, the right to co-promote any Bout in association with any one or more persons or entities of its choosing. BELLATOR~~ZUFFA~~ may assign any of its respective obligations hereunder without Fighter's consent.

17.2     The rights and obligations of Fighter arising from this Agreement and a ny Bout Agreement are per sonal to Fighter and the b enefits and the duties of Fighter hereunder m ay not be assigned, pledged or transferred for any reason.

ARTICLE XVIII
OTHER ACTIVITIES OF
BELLATOR~~ZUFFA~~

18.1     Nothing herein shall prevent BELLATOR~~ZUFFA~~ from engaging in promotional activities for any other professional fighter, including others in the same weight cl ass as Fight er, or any other ac tivities, whether related or unrelated to the subject matter of this Agreement.

18.2     Nothing herein shall pr event Fighter from engaging in any other business, trade, profession or other activity; provided that such other business, trade, profession or other activity does not involve the Fighter engaging in mixed martial arts contests or any other ac tivity prohibited un der thi s Agreement, and does not interfere with the Fighter's training or performance.

ARTICLE XIX
INTENT IN SIGNING

19.     Fighter acknowledges that his execution of this Agreement is for the purpose of obtaining the promotional services of BELLATOR~~ZUFFA~~ upon the terms and conditions of this Agr eement and that Fighter has not be en required t o sign this Agr eement or to grant any of the Rights as a condition precedent to Fighter's participation in any professional mixed martial arts contest against another fighter who has granted promotional or ancillary rights to BELLATOR~~ZUFFA~~.

ARTICLE XX
INDEPENDENT CONTRACTOR STATUS

20.1     Nothing contained in this Agr eement shall be construed to make Fight er an employee of BELLATOR~~ZUFFA~~ or to appoint BELLATOR~~ZUFFA~~ as Fighter's agent, and BELLATOR~~ZUFFA~~ shall have no financial interest (other than offset rights) in compensation payable to Fighter for engaging in any Bout hereunder. It is intended that Fighter shall remain an independent contractor, responsible for his own actions, expenses and a ny local, state, federal or international tax es, including, but not limited to, the engagement, dis charge, benefits and costs of all of Fighter's Affiliates, and training facilities, equipment, professional member ships, sanctioning fees, medical expenses, social security taxes, F ederal Insurance Contributions Act (FICA) taxes, and Federal Unemployment Tax Act (FUTA) taxes.

20.2     Fighter shall not be eligible under this Agr eement to participate in any v acation, group medical or life in surance, disability, profit sharing or retirement benefits or any oth er fringe benefits or

Promotional and Ancillary Rights Agreement
Between Bellator Sport Worldwide, LLC
And Eddie Alvarez
Dated:  December 6, 2012 – 4:15 p.m.

~~22~~
20

CONFIDENTIAL                                                                                                                    ZFL-0749145

Formatted: Font: Times New Roman, 8 pt

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

benefit plans offered by BELLATOR~~ZUFFA~~ to its employees and BELLATOR~~ZUFFA~~ shall not be responsible for withholding or paying any income, payroll, Social Security or other federal, state or local taxes, making any insurance contributions (except as provided herein) including unemployment or disability, or obtaining workers' compensation insurance on Fighter's behalf. Fighter shall be responsible for, and shall indemnify BELLATOR~~ZUFFA~~ against, all such taxes or contributions, including penalties and interest. Any persons employed by Fighter in connection with the performance of the services provided by Fighter hereunder shall be employees of Fighter and Fighter shall be fully responsible for such persons.

## ARTICLE XXI
## COMMERCIAL IDENTIFICATION

21.1    Fighter covenants and agrees that no wording, symbols, pictures, designs, names or other advertising or informational material (i) for any beer, alcohol, beverage company, tobacco, casino or gaming company, media company (including, but not limited to, HBO, ABC, SNI, ESPN, Fox or~~Spike~~, any news corporation~~Viacom~~ owned network and any Internet related company); (ii) of any sponsor in conflict or competition with BELLATOR~~ZUFFA~~ or any of BELLATOR's~~ZUFFA's~~ sponsors; (iii) of any sponsor causing injury to the reputation of BELLATOR~~ZUFFA~~ or BELLATOR's~~ZUFFA's~~ sponsors or their respective officers and owners; or (iv) which has not been pre-approved in writing by BELLATOR~~ZUFFA~~ shall appear on the trunks, gloves, robe, shoes or any other part of the costume or the body (including by use of temporary or henna tattoos) of Fighter or any of Fighter's Affiliates during or at any Bouts, Pre-Bout Events or Post-Bout Events.   For the avoidance of doubt, all sponsorship and endorsement approvals shall be at BELLATOR's~~ZUFFA's~~ sole discretion.  Fighter further covenants and agrees to only use the gloves approved and supplied by BELLATOR~~ZUFFA~~.

21.2    Notwithstanding the foregoing, BELLATOR~~ZUFFA~~ shall have the right to include any advertising or other informational material of BELLATOR, BELLATOR's~~ZUFFA~~, ~~ZUFFA's~~ sponsors or other entities designated by BELLATOR~~ZUFFA~~ on the trunks, gloves, robe, shoes, regalia or any other part of the costume of Fighter or any of Fighter's Affiliates during or at any Bouts, Pre-Bout Events or Post-Bout Events.

21.3    For television purposes, Fighter must be clearly distinguishable. Therefore, Fighter shall provide one (1) pair of dark-colored trunks and one (1) pair of light-colored trunks for each Bout. If it is necessary to distinguish Fighter from his opponent, BELLATOR~~ZUFFA~~ shall have sole discretion to require Fighter to wear either the dark-colored or light-colored trunks.

## ARTICLE XXII
## CONFIDENTIALITY

22.1    Fighter shall not disclose to any third party (other than his agents and professional advisors, in their capacity as such, on a need-to-know basis), any information with respect to the terms and provisions of this Agreement or any Bout Agreement except: (i) to the extent necessary to comply with law or the valid order of a court of competent jurisdiction, in which event Fighter shall notify BELLATOR~~ZUFFA~~ as promptly as practicable (if possible, prior to making such disclosure) and shall seek confidential treatment of such information, (ii) as part of normal reporting or review procedure to Fighter's lenders, auditors, attorneys and similar professionals, provided that such lenders, auditors and attorneys and similar professionals agree to be bound by the provisions of this section; and

Promotional and Ancillary Rights Agreement
Between Bellator Sport Worldwide, LLC
And Eddie Alvarez
Dated:  December 6, 2012 – 4:15 p.m.

~~22~~
21

Formatted: Font: Times New Roman, 8 pt

ZFL-0749146

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

(iii) in order to enforce Fighter's rights pursuant to this Agreement or any Bout Agreement, in which case Fighter agrees to enter into a confidentiality agreement for all such proceedings.

22.2    BELLATOR~~ZUFFA~~ shall have the sole right to determine the timing and content of and to make any press announcements and other public statements regarding this Agreement.

22.3    BELLATOR~~ZUFFA~~ shall have the sole right to file this Agreement with any applicable athletic or fighting commission and world sanctioning bodies.

ARTICLE XXIII
FURTHER ASSURANCES

23.1    Fighter shall execute any and all additional documents or instruments necessary or desirable to effectuate the provisions of this Agreement, including, but not limited to, Bout Agreements and Standard Fighter Contracts or any other document required by BELLATOR~~ZUFFA~~, the Athletic Commission, any local governmental authority with jurisdiction over any Bout and the world organization(s) sanctioning any Bout, if applicable. No party hereto shall take any action or fail to take any action which action or failure shall frustrate the purposes of this Agreement and the benefits contemplated hereby.

23.2–   Fighter shall be solely responsible for obtaining all necessary documentation, including any work visas, to lawfully permit Fighter and Fighter's Affiliates to participate in all Bouts. Fighter shall provide copies of all such documentation to BELLATOR~~ZUFFA~~ no less than thirty (30) days prior to any Bout. Fighter's failure to obtain or provide such documentation shall constitute grounds for BELLATOR~~ZUFFA~~, at its election, to (i) obtain the required documentation and deduct the costs thereof from Fighter's Purse, (ii) cancel Fighter's participation in the Bout, without any compensation due to Fighter for said Bout, and extend the Term for a period four (4) months; (iii) declare that BELLATOR~~ZUFFA~~ has satisfied its obligation to promote one (1) of the Bouts to be promoted by BELLATOR~~ZUFFA~~ hereunder, without any compensation due to Fighter for said Bout; or (iv) provide Fighter with notice of an Acceleration.

ARTICLE XXIV
NOTICES

24.1    Any notice or other communications given or sent pursuant to this Agreement shall be in writing and shall be deemed given when (i) personally delivered; (ii) delivered by confirmed facsimile transmission; (iii) three (3) days following the date such notice is mailed postage paid by registered or certified mail, return receipt requested; or (iv) to Fighter, delivered by confirmed electronic means (electronic mail), to the respective addresses indicated below or any address subsequently provided to BELLATOR~~ZUFFA~~:

Promotional and Ancillary Rights Agreement
Between Bellator Sport Worldwide, LLC
And Eddie Alvarez
Dated: December 6, 2012 – 4:15 p.m.

~~23~~
22

> **Formatted:** Font: Times New Roman, 8 pt

CONFIDENTIAL

~~CONFIDENTIAL~~
~~FOR INTERNAL DISCUSSION PURPOSES ONLY~~
~~NOT TO BE DISSEMINATED~~

| | |
|---|---|
| To BELLATOR~~ZUFFA~~: | To Fighter: |
| Bjorn Rebney, CEO & Chairman | Eddie Alvarez |
| BELLATOR SPORT WORLDWIDE~~Dana~~ | |
| ~~White, President~~ | |
| ~~ZUFFA,~~ LLC | Email: |
| 5000 Birch Street/Ste. 7100 | |
| Newport Beach, CA 92660 | |
| Email: bjorn@bellator.com | |
| ~~2960 W. Sahara Ave.~~ | |
| ~~Las Vegas, Nevada 89102~~ | |

| | |
|---|---|
| With a copy to: | With a copy to: |
| Patrick C. English, Esq. | |
| DINES AND ENGLISH, L.L.C. | |
| 685 Van Houten Avenue | |
| Clifton, New Jersey 07013 | Email: |
| Email: Dinesandenglish@aol.com | |

~~Kirk D. Hendrick, Chief Legal Officer~~
~~ZUFFA, LLC~~
~~2960 W. Sahara Ave.~~
~~Las Vegas, Nevada 89102~~

24.2     Any pa rty may change its address for noti ce purpo ses by providing noti ce of su ch change of address in accordance with this section.

ARTICLE XXV
CHOICE OF LAW/EXCLUSIVE JURISDICTION AND VENUE

25.1     This Agr eement h as been deliver ed at and shall be deemed to have been m ade in New Jersey~~at Las Vegas, Nevada~~, and shall be interpreted, and the rights and liabilities of the par ties hereto determined, in accordance with the laws of the State of New Jersey~~Nevada~~.

25.2     BELLATOR~~ZUFFA~~ and Fight er hereby ( a) expressly consent to the exclusive personal jurisdiction and venue of the state and f ederal courts located in New Jersey~~Clark County, Nevada~~ for any action brought by either party to interpr et or enforce any provisi on of this Agr eement and (b) agree not to a ssert (by w ay of mo tion, as a defense or otherwise) that such legal proceeding has been brought in an inconvenient forum. The undersigned, by execution and delivery of this Agreement, expressly and irrevocably consent to the service of any complaint, summons, notice or other pr ocess relating to any such action or proceeding by delivery thereof to such party by hand or by certified mail, delivered or addressed to the address set forth in this Agreement.

Promotionaland AncillaryRights Agreement
Between Bellator Sport Worldwide, LLC
And Eddie Alvarez
Dated: December 6, 2012 – 4:15 p.m.                    ~~22~~
                                                       23

Formatted: Font: Times New Roman, 8 pt

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

ARTICLE XXVI
MISCELLANEOUS PROVISIONS

26.1    If any provision of this Agr eement is found to be ill egal, invalid, or unenforceable as to any circumstance, such finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. Rather, the offending provisi on shall be considered modified so that it becomes legal, valid and enforceable, or, if not capable of such modification, shall be considered deleted. The illegality, invalidity, or unenforceability of a ny provision shall not affect the legality, va lidity, or enforceability of any other provision of this Agreement.

26.2    No waiv er by any party of any brea ch or def ault hereunder shall be deem ed to be a waiver of a ny preceding or subsequent breach or def ault. All waivers must be in writing, specify the breach or default concerned and be signed by the party against whom the waiver is sought to be enforced.

26.3    In the event either party engages counsel in connection with the enforcement or interpretation of this Agreem ent or any provision hereof or the re solution of any di spute arising from or related to this Agreement, the prevailing party shall be entitled to recover from the other party its attorneys' fees and costs, regardless of whether or not an action is filed.

26.4    The provisions of this Agr eement are for the exclusive benefit of the parti es hereto and their permitted succ essors and assig ns, and no th ird pa rty shall be a b eneficiary of or have any rights under this Agreement, regardless of whether or not such third party is referred to herein.

26.5    Other than any Bout Agr eement or Standard Fighter Contract which may be entered into by the parties pursuant to the terms of this Agr eement, this Agreement sets forth and integrates the entire understanding between Fighter and BELLATORZUFFA, and supersedes any and all prior or contemporaneous writt en or or al agr eements or repre sentations betw een the parti es with r espect to the subject matter hereof.

26.6    This Agr eement m ay not be alter ed, am ended or di scharged, except by a subsequent writing signed by the parties hereto.

26.7    This Agr eement may be e xecuted in counterparts, e ach of whi ch shall be deem ed an original and all of which shall together constitute one and the same instrument. Facsimile signatures shall be as effective as originals.

26.8    D escriptive headings of this Agr eement are in serted for convenience onl y and do no t constitute a part of this Agr eement and shall not be considered for purp oses of its interpretation. The parties agr ee th at t hey have equall y participated in the nego tiation of the terms and conditions in thi s Agreement, and therefore any ambiguities shall be re solved without reference to which part y may have drafted all or any provision herein.

Promotion and Ancillary Rights Agreement
Between Bellator Sport Worldwide, LLC
And Eddie Alvarez
Dated: December 6, 2012 – 4:15 p.m.

23
24

Formatted: Font: Times New Roman, 8 pt

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*

ARTICLE XXVII
MEDICAL TESTING

27.    FIGHTER SHALL COMPLETE A FULL PHYSICAL MEDICAL EXAMINATION AND UNDERGO TESTING  AND RECEIVE AFFIRMATIVE C LEARANCE THER EFROM PRI OR TO EACH BOUT INCLUDING, BUT  NOT LIMITED TO THE FOLLOWING: CBC, HEPATITIS B, HEPATITIS C, HIV, RH AND BLOOD TYPE, RPR, PT, PTT, URINALYSIS WITH DRUG SCREENING, EKG, CT SCAN, MRI, DIALATED OPHTHALMOLOGICAL EXAM, AND SUCH OTHER TESTING AS BELLATORZUFFA OR THE ATHLETIC COMMISSION MAY REQUIRE.    THE MEDICAL EXAMINATION SHALL BE PERFORMED BY A NEUTRAL MEDICAL SERVICE PROVIDER DURING THE THIRTY (30) DAY PERIOD IMMEDIATELY PRECEDING THE DATE OF EACH BOUT. THE REPORT OF THE MEDICAL EXAMINATION OF FIGHTER CONTAINING THE RESULTS OF THE EXAMINATION AND TESTS SHALL BE DELIVERED TO BELLATORZUFFA NO LESS THAN TWENTY-ONE (21) DAYS PRIOR TO ANY BOUT AND MUST NOT CONTAIN ANY RESTRICTIONS ON FIGHTER'S ABILITY TO COMPETE. ALL COSTS ASSOCIATED WITH THE MEDICAL EXAMINATION AND TESTS SHALL BE PAID BY FIGHTER.

**IN WITNESS WHEREOF**, the parti es have executed this Agr eement as of the dates set forth below, the later of which shall be the Effective Date of this Agreement.

BELLATORZUFFA, LLC                           **FIGHTER**

Signature: _____          Signature: _____

Printed Name: Bjorn RebneyDana White        Printed Name:    Eddie Alvarez

Title: _____CEO & ChairmanPresident_____     Social Security No.: _____

Date: _____           Date: _____

                                            Passport No.: _____

                                            Passport Expiration Date:_____

APPROVED BY:

Signature: _____

Kirk D. Hendrick
Chief Legal Officer

**Formatted:** Font: Times New Roman, 8 pt

*CONFIDENTIAL*
*FOR INTERNAL DISCUSSION PURPOSES ONLY*
*NOT TO BE DISSEMINATED*



~~November 14~~

<u>December 6</u>, 2012

<u>**CONFIDENTIAL**</u>

> **Formatted:** Centered

Eddie Alvarez

RE:     **SIGNING BONUS**

Dear Eddie:

Upon execution of the Promotional and Ancillary Rights Agreement (the "Agreement") between ~~Zuffa~~<u>Bellator Sport Worldwide</u>, LLC ("~~Zuffa~~<u>Bellator</u>) and yourself ("Fighter") and the promotional and sponsorship activities to be performed as well as the grant of ancillary rights identified in the Agreement, ~~Zuffa~~<u>Bellator</u> shall pay to you Two Hundred Fifty Thousand Dollars (US $250,000.00), payable, via check, in the amount of Eighty-Five Thousand Dollars (US $85,000.00), less all permissible or required deductions, following the completion of each of the first two (2) Bouts and Eighty Thousand Dollars (US$80,000.00), less all permissible or required deductions, following the completion of the third Bout, during the term of the Agreement.

It is agreed and understood that in the event of an Acceleration, as defined in the Agreement, prior to the completion of the fourth Bout, as contemplated by the Agreement, ~~Zuffa~~<u>Bellator</u> shall pay Fighter the remainder of this signing bonus owed hereunder.

Sincerely,

~~Dana White~~
~~President~~

<u>Bjorn Rebney</u>,
<u>CEO & President</u>

> **Formatted:** Font: Times New Roman, 8 pt
>
> **Formatted:** Normal, Line spacing: Exactly 9.95 pt, Tab stops: Not at 3" + 6"

1157644.1      ZUFFA, LLC | P.O. BOX 26959 | LAS VEGAS, NV 89126-0959
5000 BIRCH STREET, SUITE 7100 ,  NEWPORT BEACH, CA 92660
PHONE: (949) 222-3400•  FAX: (949) 222-3401 • WWW.BELLATOR.COM



ACKNOWLEDGED AND ACCEPTED BY:

_____

Eddie Alvarez

*UFC.COM*

1157644.1   ZUFFA, LLC | P.O. BOX 26959 | LAS VEGAS, NV 89126-6959

5000 BIRCH STREET, SUITE 7100 , NEWPORT BEACH, CA 92660

PHONE: (949) 222-3400• FAX:(949) 222-3401 • WWW.BELLATOR.COM

**Formatted:** Font: Times New Roman, 8 pt

**Formatted:** Normal, Line spacing:  Exactly 9.95 pt, Tab stops: Not at  3" + 6"

ZFL-0749152

# **EXHIBIT H**

CONFIDENTIAL

**From:** Neal Tabachnick <ntabachnick@wrslawyers.com>
**To:** dinesandenglish <dinesandenglish@aol.com>
**Cc:** bjorn <bjorn@bellator.com>; tracey <tracey@bellator.com>
**Subject:** Eddie Alvarez
**Date:** Sun, Dec 16, 2012 8:34 pm

Patrick,

After careful consideration of the proposed contract between Bellator and Eddie Alvarez which you presented to me on Bellator's behalf yesterday, December 13, 2012 (the "Bellator Proposed Agreement"), which purported to match the terms of the contract proposal made recently to Eddie by Zuffa, LLC (the "Zuffa Proposed Agreement"), we have concluded that Bellator has failed to match the terms of the Zuffa Proposed Agreement in several material and meaningful respects, including without limitation (a) at Section 6.2 of the Bellator Proposed Agreement, Bellator purports to match a Fox TV event with a Spike TV event (which is not a match because Fox TV is a free major national broadcast network, while Spike TV is a for-charge basic cable network with a fraction the viewership, exposure, ratings and share of Fox TV), and (b) while you have advised me that Bellator intends to have a PPV Championship Bout for Eddie by end of March, 2013, (i) your statement is contradicted by media announcements quoting Bjorn at a joint Bellator/Spike media conference on December 11, 2012 (the day after Bjorn signed the Bellator Proposed Agreement) as saying: "At this point we don't have definitive plans to do a pay-per-view" and (ii) Bjorn as recently as Thursday, December 13, 2012 told Eddie that having his Championship Bout be a PPV event was merely "possible," and, even if Bellator were to manage to conduct such a PPV event by end of March, it very likely would not even reach the minimum threshold number of buys required for Eddie to receive any revenue from same, making any assurance of a Bellator PPV event illusory as a match for the Zuffa, LLC meaningful offer for same; with the result being that Eddie is free to enter into the Zuffa Proposed Agreement at 12:01 am on December 19, 2012.

Please ensure that there are no announcements made by Bellator to the contrary.

Ill send you all a certified copy of this email letter tomorrow.

This email letter is not a complete statement of my client's rights in connection with this matter.  Nothing contained herein nor omitted herefrom is intended or should be construed as an admission of any fact or waiver of any right, remedy or defense of my client, all of which are hereby expressly reserved.

Very truly yours,

Neal

Neal Tabachnick, Esq.
Partner
Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP
11400 W. Olympic Blvd.
9th Floor

CONFIDENTIAL

ZFL-0749154

Los Angeles, California 90064

E-Mail:  ntabachnick@wrslawyers.com

This message contains information which may be confidential and privileged.
Unless you are the addressee (or authorized to receive e-mails for the
addressee), you may not use, copy or disclose to anyone this message or any
information contained in this message.  If you have received this message in
error, please advise the sender by reply e-mail to
ntabachnick@wrslawyers.com, and delete the message.  Thank you.

CONFIDENTIAL

ZFL-0749155

# **EXHIBIT I**

CONFIDENTIAL

# DINES AND ENGLISH, L.L.C.

ATTORNEYS AT LAW

685 VAN HOUTEN AVENUE

CLIFTON, NEW JERSEY 07013

PATRICK C. ENGLISH
Email: dinesandenglish@aol.com
ALSO ADMITTED IN
THE UNITED STATES
DISTRICT COURTS FOR THE
SOUTHERN DISTRICT OF
NEW YORK AND CONNECTICUT

FACSIMILE
(973) 778-7633

December 18, 2012

AARON DINES
(1923-2002)

JASON M. SANTARCANGELO
Email: jsdinesandenglish@verizon.net
OF COUNSEL
ALSO ADMITTED IN NEW YORK

## VIA EMAIL/PDF AND FACSIMILE

Neal Tabachnick, Esq.
Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP
11400 West Olympic Blvd/9th Fl.
Los Angeles, CA 90064

Re: **Eddie Alvarez**

Dear Mr. Tabachnick:

Reference is made to your email of December 16.

We disagree with your contention that Bellator has not matched here.

First, we have done a word search here. We find that the sole reference to Fox Network is in paragraph 3.8, in which Zuffa magnanimously states in the contract it proffered it will place one (1) Alvarez bout on the Fox Network during the entire contract. Other bouts can be on any platform of its choosing. This is, in our view, not much of a commitment, and allows Zuffa to put Alvarez bouts on FX, Fuel T.V., Versus, or any other platform it chooses. I note that since we copied the Zuffa contract, the contract we proffered has a similar infirmity which I will address and remedy later in this letter.

I note further that according to the latest figure I have available, Spike reaches approximately 99,800,000 homes with Fox Network reaching approximately 110,000,000 homes. This, to us, does not appear to be a meaningful difference, particularly given the more male oriented, younger demographic of Spike (the logical viewers of MMA).* However, that being said, Bellator is willing to commit that all of Mr. Alvarez's fights under this contract will be telecast on either Spike or on pay-per-view, a far better guarantee than is given by Zuffa. Further, Fox has not historically done replays of events on the Fox Network. Spike will do at least two (2) additional replays on Alvarez events.

_____

* The skew of male viewers is 10% in favor of Spike. The median age of Spike viewers is 7 years younger than the median age of Fox viewers. The household income is, I believe, significantly higher for viewers of Spike but to be candid, I do not presently have complete figures on that.

DINES AND ENGLISH, L.L.C.

ATTORNEYS AT LAW

Neal Tabachnick, Esq.
December 18, 2012
Page 2

With respect to the pay-per-view aspect of your letter, Mr. Rebney is not required to share Bellator's plans with the press. In fact, they are strictly confidential, as I have told you, and Bellator does not want its plans disclosed to competitors.

Most respectfully, Viacom in general and Spike in particular have excellent track records with respect to pay-per-view. The numbers of buyers for UFC pay-per-view have decreased by virtue of the UFC going to Fox, from the time it was with Spike, a statistic that is available to all. Bellator's advisors are not neophytes in the pay-per-view field and, in fact, have managed some of the largest pay-per-view events of all time for promoters. Meaning no disrespect, your entire analysis of the pay-per-view situation is simply incorrect.

In short, Bellator does in fact plan to have a pay-per-view event by the end of March featuring Mr. Alvarez as well as other prominent fighters. Indeed, Mr. Alvarez is integral to that plan.

You also cannot ignore that Bellator has offered three "sweetners" to the deal which not only gives Mr. Alvarez $125,000.00 in addition to that which is specified in the Zuffa proposal, but which also garners him additional exposure, which assists in him obtaining personal sponsorships.

In short, Bellator is quite comfortable that it has matched the Zuffa offer.

So that there is a clear commitment on the points raised in this letter, I have included an addenda incorporating those points. The points contained therein are in addition to that which is given in the Promotional and Ancillary Rights Agreement. They exceed that which was offered by Zuffa.[†]

Bellator has, we submit, been quite generous and fair. It not only matched the Zuffa offer, it has gone beyond it. Bellator is quite confident of its legal position, and as much as it wants a fully amicable relationship it can be pushed no farther and will defend its rights and will,

---

[†] For the avoidance of doubt, should Mr. Alvarez not wish the points in the addenda (though we cannot imagine why this would be so) he can simply cross out any points he does not wish. We think it unlikely he would wish to do so. If the contract and addenda is not timely accepted than Bellator reserves the right to withdraw the additional points in the addenda not necessary for a match.

CONFIDENTIAL

ZFL-0749158

**DINES AND ENGLISH, L.L.C.**
ATTORNEYS AT LAW

**Neal Tabachnick, Esq.**
**December 18, 2012**
**Page 3**

if necessary, seek to enforce its rights.   We certainly hope that will not be necessary and therefore request an immediate confirmation that Mr. Alvarez will execute a contract with Bellator on the terms contained in the draft contract we submitted with the addition of the addenda.

Very truly yours,

DINES AND ENGLISH, L.L.C.

BY: _____
PATRICK C. ENGLISH

/mat
Encls.

CONFIDENTIAL                                                                                      ZFL-0749159

# **<u>EXHIBIT J</u>**

CONFIDENTIAL

ZFL-0749160

## ADDENDUM A TO
## PROMOTIONAL AND ANCILLARY RIGHTS AGREEMENT
## BETWEEN EDDIE ALVAREZ AND BELLATOR SPORT WORLDWIDE, LLC

In additional to the rights granted to and the obligations imposed on the respective parties in the Promotional and Ancillary Rights Agreement between Eddie Alvarez and Bellator Sport Worldwide, LLC to which this is an addenda, the parties hereby agree as follows:

A)  Promoter will cause Spike to create a "Behind the Scenes" show featuring Mr. Alvarez.  This show would be created in the first quarter of 2013 and Mr. Alvarez will be paid Twenty-Five Thousand Dollars ($25,000.00) for appearing in that show.

B)  If Mr. Alvarez wins the World Title bout referenced in paragraph 6.2 of the Promotional and Ancillary Rights Agreement, he will be offered the position as a coach for the Second Season of the Bellator Reality Show.  Should he coach in the Second Season Reality Show Mr. Alvarez will receive One Hundred Thousand Dollars ($100,000.00) for his services.

C)  Mr. Alvarez will be a guest host on Spike's "Road to the Championship" for the week 9 show of Bellator Season 8.

D)  Paragraph 3.8 of the Promotional and Ancillary Rights Agreement is hereby amended to read:

> **"Additionally, all bouts promoted by Bellator during the Term will appear either on Spike T.V. or on Pay-Per-View unless otherwise agreed in writing.  Nothing herein shall prohibit replays on additional platforms but Bellator will ensure that Spike does at least two (2) additional replays on the Spike Network for Alvarez bouts which Spike originally telecasts."**

Agreed and Accepted:                          BELLATOR SPORT WORLDWIDE, LLC


_____         _____

EDDIE ALVAREZ

*Addendum A to Promotional and Ancillary*
*Rights Agreement Between Eddie Alvarez*
*And Bellator Sport Worldwide, LLC*
*Date:  December 18, 2012 – 4:10 p.m.*

CONFIDENTIAL                                                      ZFL-0749161