# EXHIBIT 29
## -
# REDACTED VERSION OF
# ECF NO. 347-4

# EXHIBIT B

## 2008 Merchandise Rights Agreement

## MERCHANDISE RIGHTS AGREEMENT

**THIS MERCHANDISE RIGHTS AGREEMENT** ("**Agreement**") is made as of the date set forth below ("**Effective Date**") by and between ZUFFA, LLC, a Nevada limited liability company d/b/a Ultimate Fighting Championship® ("**ZUFFA**") and Nathan Quarry ("**Fighter**").

### RECITALS

A.        ZUFFA is in the business of, among other things, promoting mixed martial arts fighting competitions throughout the world under various trade names including, without limitation, Ultimate Fighting Championship®, Pride Fighting Championships® and other intellectual property from time to time owned or licensed by ZUFFA (the "**Licensed Marks**");

B.        ZUFFA and Fighter have entered into an Exclusive Promotional and Ancillary Rights Agreement dated September 30, 2005, and one or more Bout Agreements and any subsequent Exclusive Promotional and Ancillary Rights Agreements and Bout Agreements (together, the "**Promotional Agreements**") under which ZUFFA is the exclusive promoter for Fighter's bouts for a period of time and Fighter grants certain other rights to ZUFFA in perpetuity, as set forth therein; and

C.        Fighter is a professional mixed martial arts fighter and desires to enter into an agreement with ZUFFA providing for it to be the non-exclusive licensor of Fighter's rights as set forth herein.

**NOW, THEREFORE,** in consideration of the foregoing, the agreements and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, ZUFFA and Fighter agree as follows:

### ARTICLE I
### GRANT OF MERCHANDISE RIGHTS / COLLECTIVE RIGHTS

1.1        Fighter hereby grants to ZUFFA during the Term (as defined below) the unrestricted worldwide right to use, edit, disseminate, display, reproduce, print, publish and make any other uses of the name, sobriquet, voice, persona, signature, likeness and/or biographical information (collectively, "**Identity**") of Fighter solely in connection with the development, manufacture, distribution, marketing and sale of Licensed Merchandise (as defined below) ("**Merchandise Rights**").

1.2        The Merchandise Rights shall be ZUFFA's sole property in perpetuity throughout the world, which ZUFFA shall hold free and clear from any and all claims of Fighter or anyone claiming through Fighter.

1.3        For purposes of this Agreement, "**Licensed Merchandise**" shall include, without limitation, all apparel, footwear, hats, photographs, souvenirs, toys, collectibles, trading cards, and any and all other similar type products, including the sleeves, jackets and packaging for such products, hereunder made by any method now known or hereafter to become known that is (a) approved by ZUFFA, (b) contains the trademarks, trade names, logos and other intellectual property owned or licensed by ZUFFA, including without limitation, the Licensed Marks and (c) not created, used or sold in connection with the promotion of any Bouts, Pre-Bout Events or Post-Bout Events (as such terms are defined and included within the Promotional Agreements).

1.4        Fighter shall cooperate and assist in the advertising, publicity, and promotion of the sale of Licensed Merchandise that includes Fighter's Identity, including, without limitation, making at least

1

v1020a

CONFIDENTIAL

LEPLAINTIFFS-0048947

six (6) personal appearances each year during the Term at press conferences, interviews, retail trade show appearances, autograph signing sessions and other sponsorship and promotional activities (any of which may be telecast, broadcast, recorded and/or filmed) as designated by ZUFFA (in its sole reasonable discretion), without additional compensation therefore. For such promotional activities, ZUFFA will arrange and pay for Fighter's reasonable travel and hotel accommodations.

1.5     It is hereby understood that any rights granted hereunder shall be in addition to the rights granted under the Promotional Agreements between Fighter and ZUFFA and that in no event shall this Agreement entitle Fighter to any payments for any merchandise or other products derived from, created, used or sold in connection with any Bouts, Pre-Bout Events or Post-Bout Events, including and not limited to audio/visual footage (as such terms are defined in the Promotional Agreements) and further that this Agreement shall not apply to any published works including, without limitation, books, magazines, and newspapers, whether in print or digital form, video games or other interactive devices, home video and computer games, arcade video games, hand held versions of video games, video slot machines, CD-ROMS, DVDs, Internet applications, wireless, video and audio cassettes and disks developed, being developed or to be developed by various companies, including, but not limited to, THQ, Inc., and any derivatives of such video games created by ZUFFA or its licensees or that uses the Licensed Marks all of which are covered in the Promotional Agreements to which Fighter is a party.

## ARTICLE II
### TERM

2.1     The term of this Agreement ("**Term**") shall commence on the Effective Date and end on the third anniversary of the Effective Date ("**Termination Date**"), unless terminated sooner or extended further pursuant to the provisions of this Agreement.

2.2     Unless prior to the end of the Term ZUFFA shall have notified Fighter in writing that it does not wish to extend the Term, the Term shall automatically be extended for an additional three years upon the terms and conditions set forth herein ("**Extension Term**"). Any Extension Term shall also be automatically extended unless Fighter is notified in writing by ZUFFA prior to the expiration of such Extension Term of ZUFFA's decision not to extend such Extension Term. Any reference to the Term herein shall be deemed to include a reference to the Extension Term(s), where applicable.

2.3     The termination or expiration of either or both of the Promotional Agreements shall not affect or terminate the grant of the Merchandise Rights or any of the general or specific provisions of this Agreement, which shall survive any such expiration or termination.

## ARTICLE III
### COMPENSATION

3.1     In consideration for the license to the Merchandise Rights granted by Fighter to ZUFFA hereunder, ZUFFA shall pay to Fighter a royalty for all Licensed Merchandise sold that contains the Fighter's Identity as follows:

a.     10% of the Gross Revenues (as defined below) and 20% of the Gross Royalty Revenues (as defined below), as the case may be, received by ZUFFA in connection with the Licensed Merchandise containing only Fighter's Identity in any calendar year during the Term;

b.     To the extent that Fighter's Identity is contained in any Licensed Merchandise with one or more other Fighters, Fighter shall receive an amount equal to 10% of the Gross Revenues (as defined below) and 20% of the Gross Royalty Revenues (as defined below), as the case may be, received

2

v1020a

CONFIDENTIAL

LEPLAINTIFFS-0048948

by ZUFFA in connection with the sale of such Licensed Merchandise in any calendar year during the Term divided by the number of such other Fighters featured in such Licensed Merchandise;

        c.     Gross Revenues shall mean all revenues (other than taxes and Gross Royalty Revenues) received by ZUFFA in connection with the sale of Licensed Merchandise directly or indirectly by ZUFFA.

        d.     Gross Royalty Revenues shall mean all royalty or other licensing payments received by ZUFFA from third parties in connection with the commercial exploitation of Licensed Merchandise by such third parties.

3.2     Except as specifically set forth in this Article III, Fighter shall not be eligible for any royalties with respect to any other goods, services or otherwise in connection with the exploitation of the Merchandise Rights as defined herein.

3.3     All royalty payments due and owing to Fighter hereunder shall be made for any calendar year once on or before March 1 of the following calendar year. Fighter shall be provided with a statement of royalties earned by Fighter hereunder during the previous calendar year which shall accompany such royalty payment.

3.4     In order to verify ZUFFA's compliance with the potential percentages of Gross Revenues or Gross Royalty Revenues, Fighter is entitled, upon at least five (5) business days written notice, to authorize a reputable certified public accounting firm to review, at ZUFFA's offices, all ZUFFA books and records pertaining to merchandise revenue specifically for Fighter. All books and records must remain in ZUFFA's offices and may not leave the premises in any format. Fighter may exercise this right no more than twice each calendar year and up until three (3) years after the date the payment was received. In the event that such inspection reveals a shortfall, ZUFFA shall promptly remit payment of such shortfall to Fighter . However, in the event such inspection reveals a shortfall to Fighter of $5,000 or 5% or more, then ZUFFA shall promptly remit payment of such shortfall to Fighter, together with reimbursement of Fighter's costs and expenses in connection with such inspection.

ARTICLE IV
TERMINATION/REMEDIES

4.1     ZUFFA shall have the right, upon written notice to Fighter, to immediately terminate this Agreement if:

        a.     Fighter or any of Fighter's Affiliates breach, violate or are in default of any provision of this Agreement or any other agreement hereafter entered into between Fighter and ZUFFA, including, without limitation, the Promotional Agreements; or

        b.     any of the representations or warranties of Fighter contained herein were false when made or are no longer true and correct.

4.2     Any such termination of this Agreement (a) shall be without further liability or obligation from ZUFFA to Fighter, except for the payment of any amounts due to Fighter hereunder that have been earned prior to the Termination Date and (b) shall not serve to affect or terminate the grant of any of the Merchandise Rights hereunder, and this Agreement shall survive a termination and remain in full force and effect with respect thereto.

4.3     Fighter acknowledges that his services as a professional fighter and the Merchandise Rights granted to ZUFFA herein are special, unique, extraordinary, irreplaceable and of peculiar value, and that in the event of Fighter's breach or threatened breach of this Agreement or any other agreement to

3

v1020a

CONFIDENTIAL

LEPLAINTIFFS-0048949

which Fighter is a party with ZUFFA, ZUFFA would suffer irreparable damage which could not be reasonably or adequately compensated by an award of damages. In the event of such breach or threatened breach, ZUFFA shall be entitled, in addition to any other available remedy, to obtain equitable relief, including, but not limited to, an injunction against such breach and Fighter waives the right to assert as a defense in any such action that ZUFFA has an adequate remedy at law. To the extent that a bond is necessary to obtain an injunction, Fighter agrees that the bond shall not exceed Five Hundred Dollars (US $500.00).

ARTICLE V
REPRESENTATIONS AND WARRANTIES

5.1.    Fighter represents and warrants to ZUFFA that:

a.    Fighter is free to enter into this Agreement and has not heretofore and will not hereafter enter into any contract, option, agreement or understanding, whether oral or written, which conflicts with the provisions hereof or the grant of Merchandise Rights contained herein or which would or could interfere with Fighter's full and complete performance hereunder or the free and unimpaired exercise by ZUFFA of any of the Merchandise Rights;

b.    there are no claims or arbitration, mediation, or litigation pending or threatened affecting Fighter that would or could interfere with Fighter's full and complete performance hereunder or the free and unimpaired exercise by ZUFFA of any of the Merchandise Rights;

c.    Fighter is entering into this Agreement of his own free will, is not subject to duress of any kind, and is not under the influence of any controlled substance and that Fighter knows of no disability, whether physical or mental, which would or could prevent Fighter from the full and complete performance of his obligations hereunder; and

d.    Fighter has had the opportunity to consult an attorney or other representative regarding this Agreement, and he appreciates the legal significance and consequences of signing this Agreement;

e.    Fighter is either (i) a citizen of the United States and is not otherwise subject to any "backup" or other withholding of taxes or compensation specially applicable to those who are not citizens of the United States; or (ii) is not a citizen of the United States but has provided to ZUFFA in writing all information necessary to enable ZUFFA to comply with any such applicable withholding or other payment requirement; and

f.    Fighter has obtained, and ZUFFA shall not be responsible to pay for in any way whatsoever, all clearances, licenses, uses, reuse fees, license fees, relating to the use and appearance of any creative expression, clothing apparel, sportswear and equipment, included but not limited to, trunks, robes, shoes, regalia or any other part of the costume, electronic information, digital information, wording, phrases, symbols, pictures, designs, print materials or other materials or information (including, without limitation, the trademarks, copyrights, personal privacy, property rights, names, voices, and likenesses of all and any persons, properties and businesses appearing therein (if any), and all components and elements thereof) displayed and exhibited by Fighter or any person affiliated with Fighter in connection with any Licensed Merchandise.

g.    Unless Fighter receives prior written approval from ZUFFA, Fighter shall not utilize any of the Licensed Marks, including, but not limited to, the names and marks "Ultimate Fighting Championship®," "UFC®," the "Octagon™," "Ultimate Fighting®," "Ultimate Fighter®," "Pride

4

v1020a

CONFIDENTIAL

LEPLAINTIFFS-0048950

Fighting Championships®," "Pride®," and any logos, pictures or other representations of ZUFFA's intellectual property.

    5.2.    ZUFFA represents and warrants to Fighter that:

        a.    ZUFFA is a limited liability company duly formed under the laws of the State of Nevada; and that the person executing this Agreement on behalf of ZUFFA is authorized to do so; and

        b.    ZUFFA is able to perform its promotional and payment obligations arising hereunder, and there are no claims or arbitration, mediation, or litigation pending or threatened affecting ZUFFA that would prevent ZUFFA from performing hereunder.

## ARTICLE VI
## INDEMNIFICATION

    6.1    Fighter shall indemnify, defend and hold harmless ZUFFA, its subsidiaries and affiliates, and each of their members, managers, directors, officers, employees, representatives, agents and contractors from and against any claims, actions, proceedings, expenses (including attorneys' fees of counsel of indemnified party's choice, as and when incurred) and damages arising from or relating to any negligent or intentional acts or omissions by Fighter or anyone affiliated with Fighter or by the actual or claimed breach of this Agreement by Fighter or any of said affiliates or the inaccuracy of any of Fighter's representations, warranties or covenants contained herein.

    6.2    ZUFFA shall indemnify, defend and hold harmless Fighter, its subsidiaries and affiliates, and each of their members, managers, directors, officers, employees, representatives, agents and contractors from and against any claims, actions, proceedings, expenses (including attorneys' fees of counsel of indemnified party's choice, as and when incurred) and damages arising from or relating to any negligent or intentional acts or omissions by ZUFFA or anyone affiliated with ZUFFA or by the actual or claimed breach of this Agreement by ZUFFA or any of said affiliates or the inaccuracy of any of ZUFFA's representations, warranties or covenants contained herein.

## ARTICLE VII
## MISCELLANEOUS PROVISIONS

    7.1    ZUFFA shall have the absolute right to assign, license, or transfer any or all of the rights granted to it hereunder. ZUFFA may assign any of its respective obligations hereunder without Fighter's consent. The rights and obligations of Fighter arising from this Agreement are personal to Fighter and neither the benefits nor the duties of Fighter hereunder may be assigned, pledged or transferred for any reason.

    7.2.    Nothing herein shall prevent ZUFFA from engaging in promotional activities for any other professional fighter, including others in the same weight class as Fighter, or any other activities, whether related or unrelated to the subject matter of this Agreement.

    7.3    Any notice or other communications given or sent pursuant to this Agreement shall be in writing and shall be deemed given when (a) personally delivered; (b) delivered by confirmed facsimile transmission; (c) three (3) days following the date such notice is mailed postage paid by registered or certified mail, return receipt requested; or (d) to Fighter, delivered by confirmed electronic means

//

5

v1020a

CONFIDENTIAL

LEPLAINTIFFS-0048951

(electronic mail), to the respective addresses indicated below:

To ZUFFA:
Kirk Hendrick, Chief Operating Officer
ZUFFA, LLC
2960 W. Sahara Ave., Suite 100
Las Vegas, Nevada 89102

To Fighter:
Nathan Quarry

Email: nate@nathanquarry.net

With a copy to:
Ike Lawrence Epstein
Executive Vice President & General Counsel
ZUFFA, LLC
2960 W. Sahara Ave., Suite 100
Las Vegas, Nevada 89102

With a copy to:
Brandon C. Bittner
Attorney at Law
Bittner & Hahs, P.C.
4949 S.W. Meadows Road, Suite 260
Lake Oswego, OR 97035

Any party may change its address for notice purposes by providing notice of such change of address in accordance with this section.

7.4     This Agreement has been delivered at and shall be deemed to have been made at Las Vegas, Nevada, and shall be interpreted, and the rights and liabilities of the parties hereto determined, in accordance with the laws of the State of Nevada. ZUFFA and Fighter agree that the exclusive jurisdiction and venue for the resolution of any dispute arising from or relating to this Agreement shall lie in the Eighth Judicial District Court for the State of Nevada, sitting in Las Vegas, Nevada. Each of the parties hereto irrevocably consents to the service of process in any such proceeding by the mailing of a copy of the summons and complaint by first-class mail to such party in accordance with the notice provisions of this Agreement.

7.5     If any provision of this Agreement is found to be illegal, invalid, or unenforceable as to any circumstance, such finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. Rather, the offending provision shall be considered modified so that it becomes legal, valid and enforceable, or, if not capable of such modification, shall be considered deleted. The illegality, invalidity, or unenforceability of any provision shall not affect the legality, validity, or enforceability of any other provision of this Agreement.

7.6     No waiver by any party of any breach or default hereunder shall be deemed to be a waiver of any preceding or subsequent breach or default. All waivers must be in writing, specify the breach or default concerned and be signed by the party against whom the waiver is sought to be enforced.

7.7     In the event either party engages counsel in connection with the enforcement or interpretation of this Agreement or any provision hereof or the resolution of any dispute arising from or related to this Agreement, the prevailing party shall be entitled to recover from the other party its attorneys' fees and costs, regardless of whether or not an action is filed.

7.8     The provisions of this Agreement are for the exclusive benefit of the parties hereto and their permitted successors and assigns, and no third party shall be a beneficiary of or have any rights under this Agreement, regardless of whether or not such third party is referred to herein.

6

v1020a

CONFIDENTIAL                                                                                          LEPLAINTIFFS-0048952

7.9     Fighter shall execute any and all additional documents or instruments necessary or desirable to effectuate the provisions of this Agreement. No party hereto shall take any action or fail to take any action which action or failure shall frustrate the purposes of this Agreement and the benefits contemplated hereby.

7.10    This Agreement may not be altered, amended or discharged, except by a subsequent writing signed by the parties hereto.

7.11    This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same instrument. Facsimile signatures shall be as effective as originals.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the dates set forth below, the later of which shall be the Effective Date of this Agreement.

ZUFFA, LLC

Signature: _____
                LLC Manager

Printed Name: ___KIRK D. HENDRICK___
                     CHIEF OPERATING OFFICER
Title: _____

Date: _____

FIGHTER

Signature: _____

Printed Name: Nathan Quarry

Social Security No.: _____

Date: ___9-30-8___

Passport No.: _____

Passport Expiration Date: _____

APPROVED BY:

Signature: _____
                Ike Lawrence Epstein
                Executive Vice President & General Counsel

7

v1020a