# EXHIBIT 36
# -
# REDACTED VERSION OF
# ECF NO. 397

**BERGER & MONTAGUE, P.C.**
Eric L. Cramer (admitted *pro hac vice*)
Michael Dell'Angelo (admitted *pro hac vice*)
Patrick F. Madden (admitted *pro hac vice*)
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Fax: (215) 875-4604
ecramer@bm.net
mdellangelo@bm.net
pmadden@bm.net

*(Additional counsel appear on signature page)*

*Co-Lead Counsel for the Classes and*
*Attorneys for Individual and Representative Plaintiffs*
*Cung Le, Nathan Quarry, Jon Fitch, Luis Javier*
*Vazquez, Brandon Vera, and Kyle Kingsbury*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>Defendant. | Case No.: 2:15-cv-01045-RFB-(PAL)<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DEFENDANT TO PRODUCE A LOG OF COMMUNICATIONS FOR DANA WHITE'S DISCOVERABLE TELEPHONE NUMBERS AND ELECTRONIC COMMUNICATION DEVICES AND DIRECTING DEFENDANT TO SUBMIT AN INVENTORY OF ELECTRONIC COMMUNICATION DEVICES** |

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................ 1

II.    LEGAL STANDARD .......................................................................................... 2

III.   FACTUAL BACKGROUND ............................................................................... 4

       A.     White's Devices Containing Discoverable ESI Known To Plaintiffs.................... 5

       B.     Defendant's Text Message Productions and White's Pending Deposition ............ 6

       C.     Zuffa Has Failed to Make Its Custodian of Records Available For A
              Timely Deposition During The Discovery Period Further Obscuring The
              Destruction And Loss of White's ESI ................................................................ 10

IV.    ZUFFA VIOLATED THE COURT'S ESI ORDER BY CONCEALING ITS
       FAILURE TO PRODUCE ESI FROM WHITE'S NOKIA PHONE FOR 10
       MONTHS AND CONTINUED TO WITHOLD THE TRUTH FOR 26 DAYS
       AFTER PLAINTIFFS RAISED QUESTOINS ABOUT THE ESI ............................... 11

V.     WHITE'S "PERSONAL" PHONES ENDING IN -27 AND -75 CONTAIN
       HIGHLY RELEVANT "BUSINESS" COMMUNICATIONS THAT
       DEFENDANT DID NOT PRESERVE AND HAS NOT PRODUCED ......................... 15

       A.     White's -75 Device, Which Contained A Substantial Volume of Relevant
              Business Communications, Was Not Subject To A Litigation Hold and
              From Which ESI Was Not Collected, Remains Missing ...................................... 17

       B.     ESI From the Relevant Time Period Is Missing, Is No Longer Available
              From White's -27 Device And Was Not Subject To A Litigation Hold .............. 18

VI.    WHITE'S PHONE ENDING IN -92 FROM WHICH DEFENDANT FAILED
       TO PRODUCE ALL RELEVANT ESI ................................................................ 19

VII.   RELIEF REQUESTED ...................................................................................... 22

VIII.  CONCLUSION ................................................................................................ 23

Pursuant to Local Rule 26-7 and Fed. R. Civ. P. 37, Plaintiffs submit this Memorandum of Law in support of Plaintiffs' Motion to Compel Defendant to Produce a Log of Communications for Dana White's Discoverable Telephone Numbers and Electronic Communication Devices and Directing Defendant to Submit an Inventory of Electronic Communication Devices.

## I.     INTRODUCTION

Dana White, the President of Defendant Zuffa since 2001, is the public face of the Ultimate Fighting Championship ("UFC"). White is also one of the primary effectuators of the anticompetitive scheme alleged in Plaintiffs' Complaint and likely one of the most important fact witnesses in this case. Despite Plaintiffs' best efforts to schedule this apex deposition within the discovery period, Defendant failed to make White available for deposition until May 2, after the close of discovery, while vigorously opposing Plaintiffs' Motion For Extension of Discovery Deadline and Case Management Schedule (ECF No. 363), and repeatedly ignoring Plaintiffs' requests to schedule the deposition of Zuffa's custodian of records. By agreement, the May 2 deposition was adjourned indefinitely because Plaintiffs (for the second time in this litigation) uncovered serious problems with Zuffa's preservation, collection and production of ESI – this time with White's numerous electronic devices and text messages – his primary method of written communication. In violation of this Court's ESI Order (ECF No. 160), despite Defendant's representations to this Court, obligations under the Federal Rules and Plaintiffs' persistent requests, Zuffa failed to disclose until April 24 that it had never collected ESI from devices associated with three of the four mobile phone numbers White used to conduct Zuffa business during the Relevant Time Period.

Zuffa failed to secure White's devices containing highly relevant ESI and has yet to produce much of it. Worse yet, Defendant waited even longer to reveal that it could not – and still cannot – locate at least one device from which White and Lorenzo Fertitta (former Chairman and CEO of Zuffa), exchanged highly relevant and damning communications that strongly support Plaintiffs' claims. It is clear that relevant communications on White's devices were not produced from those devices and that considerable amounts of White's ESI have very likely been lost or destroyed. Zuffa's continuing "investigation" has turned up short.

The immediate issue confronting the Court and the parties is not whether there was a failure to properly identify, preserve, collect and produce ESI from Defendant's custodians, but the extent to which the ESI was destroyed, the prejudice Plaintiffs suffered and will continue to suffer as well as the implications for the White deposition and the discovery Plaintiffs have taken and have yet to take. Given the importance of White's communications to his deposition and the proof of Plaintiffs' claims, Plaintiffs must clearly understand the extent of the destruction of ESI. To begin to address these issues, Plaintiffs asked Zuffa to produce a record of the telephone numbers for each text message sent and received by White during the Relevant Time Period or consent to Plaintiffs' service of subpoenas on White's telephone carriers for that information. Zuffa refused, using the fact that Plaintiffs did not uncover Zuffa's cover-up until discovery was nearly closed as a cudgel to prevent Plaintiffs from issuing pen register subpoenas that they would have otherwise been free to issue during the discovery period which ended just over a week ago. It is therefore necessary that the Court order Defendant to produce such a log. In light of Defendants' failure to properly identify, preserve, collect and produce ESI, the Court should require Defendant to produce an inventory of its custodians' electronic communication devices so that the Court and the parties can resolve these issues more efficiently and promptly.

## II.    LEGAL STANDARD

"Aside perhaps from perjury, no act serves to threaten the integrity of the judicial process more than the spoliation of evidence. Our adversarial process is designed to tolerate human failings-erring judges can be reversed, uncooperative counsel can be shepherded, and recalcitrant witnesses compelled to testify. But, when critical documents go missing, judges and litigants alike descend into a world of *ad hocery* and half measures-and our civil justice system suffers." *Keithley v. Home Store.com, Inc.*, 2008 WL 3833384, at *1 (N.D. Cal. Aug. 12, 2008) (quoting *United Med. Supply Co. v. U.S.,* 77 Fed. Cl. 257, 258–59 (Fed. Cl. 2007)). Therefore, pursuant to Fed. R. Civ. P. 37, a motion to compel discovery may be filed "when a timely discovery request has been served, the opposing party has not responded or has inadequately responded, and the moving party has attempted in good faith to resolve any dispute about the adequacy of the

2

discovery responses without the court's intervention." *See King v. Calderwood*, 2015 WL 7566679, at *2 (D. Nev. Nov. 24, 2015) (Leen, J.) (citing Fed. R. Civ. P. 37(a)).  Rule 37 provides for relief where "a party or a party's officer, director, or managing agent … fails to obey an order to provide or permit discovery, including an order under Rule 26(f)." Fed. R. Civ. P. 37(b)(2)(A). "If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it," the Court may order corrective measures "upon finding prejudice to another party from loss of the information." *Id.* at 37 (e)(1). Where a party fails to identify, preserve, collect, or search devices that may contain relevant and responsive ESI, the Court may order further discovery to be conducted regarding the loss or possible deletion of ESI.  *See, e.g.*, *Small v. Univ. Med. Ctr. of S. Nev.*, 2014 WL 4079507, at *28 (D. Nev. Aug. 18, 2014) (defendant failed to preserve text message data for custodians' mobile phones requiring special master to subpoena relevant carriers for custodian phone records). However, Plaintiffs do not move pursuant to Rule 37(e) at this time, and propose less draconian measures subject to a more complete understanding of the extent to which White's ESI has been lost or destroyed, but reserve all rights to so move.

The close of the discovery period will not bar relief if it is established that a non-moving party has failed to comply with its discovery obligations and that the parties engaged in adequate efforts to resolve the dispute without court intervention. *See Calderwood*, 2015 WL 7566679, at *4 (finding defendants did not comply with their discovery obligations and granting plaintiff's motion to compel after the close of discovery). Indeed, courts routinely allow for parties to seek discovery following the formal close of the discovery period where a party has been prejudiced by the inadequate or untimely production of documents. *See, e.g.*, *Vietnam Veterans of Am. V. CIA*, 2012 WL 1156398, at *3 (N.D. Cal. Apr. 6, 2012) (granting motion to re-open depositions where "Plaintiffs' ability to conduct discovery, especially to conduct depositions, has been

PLAINTIFFS' MOTION TO COMPEL

prejudiced by Defendants' belated production"); *Apple Inc. v. Samsung Elecs. Co.*, 2012 WL 762240, at *3 (N.D. Cal. Mar. 8, 2012) (ordering defendant to re-produce 10 witnesses for deposition "for whom a substantial portion of custodial documents were produced with insufficient time to process and translate in advance of deposition").

### III.   FACTUAL BACKGROUND

On September 1, 2015, the Court entered the Stipulated Order Re: Discovery of Electronically Stored Information ("ESI Order"). ECF No. 60. The ESI Order imposes an obligation to act "in good faith"; recognizes that "the duty to preserve is broader in scope than the duty to produce"; and reflects the parties' agreement that "[l]ogs of communications made from mobile devices that were created *after* August 28, 2015" may not be reasonably accessible and need not be preserved. ECF No. 160, ¶¶ 2, 4(a) and 4(f)(iv) (emphasis added). On December 21, 2015, Defendant identified three "Cell Phone(s), Smartphones, or Tablets used for business purposes" by Dana White: "one retired iPhone 4s; one retired Nokia 6101; one iPhone 6s." (Exhibit 1 at p. 2-3). "Zuffa ha[d] agreed to review linearly without the use of search terms: (6) text messages sent to or from employees' phones, (7) direct private messages sent through social media, ….." ECF No. 218, at p. 15. Zuffa certified that it substantially completed production of documents on September 1, 2016. ECF No. 297, at p. 3. At no time did Zuffa provide Plaintiffs with a notice pursuant to paragraph 4(f) of the ESI Order. On April 24, 2017, one week before White's deposition, following weeks of repeated questioning by Plaintiffs, Zuffa revealed that it believed the ESI on White's Nokia 6101 was not reasonably accessible and that White used at least two additional devices that contained discoverable communications from which ESI was never collected and produced. (Exhibit 2 at p. 2; Exhibit 3 at p. 6-7). One device remains missing and, according to Zuffa, "may have been discarded." (Exhibit 4 at p. 1).

**A.** **White's Devices Containing Discoverable ESI Known To Plaintiffs**

Zuffa has agreed to, but has not yet provided Plaintiffs with more detailed information regarding White's devices. To facilitate the resolution of these issues, the Court should order Defendant to produce an inventory of its custodians' electronic devices. Following is a summary of White's devices and telephone numbers identified by Plaintiffs through the meet and confer process and analysis of text messages produced by Zuffa's custodians that, at a minimum, contain discoverable ESI.

| Device Model | Device Telephone Number | Subject to Litigation Hold | Device Located | Physical Device Collected | ESI Produced |
|---|---|---|---|---|---|
| Nokia 6101 | -20 | Yes | Yes | Yes | No |
| iPhone 4s, iPhone 6 | -92 | Yes | Yes | Yes | Yes |
| ? | -27 | No | Yes | Yes | No |
| ? | -75 | No | No | No | No |

White has been widely reported to have used many different mobile devices. For example, an *Esquire* magazine article about White reported:

> There is a lull in the cabin while everyone checks their phones. White has three — an old flip phone, a BlackBerry, and a $10,000 TAG Heuer that he is ready to throw out the window for lack of reception; he only bought it because everyone was giving him sh*t for having such a cheap flip phone.

Mike Sager, *Meet Dana White, the King of Mixed Martial Arts*, Esquire (Jan. 7, 2010), http://www.esquire.com/news-politics/a6863/dana-white-ufc-0210/. White's heavy reliance on his Nokia 6101 "flip" phone is well known and publicly discussed by White himself and presented in numerous pictures.[1] A complete inventory of White's telephone numbers and

---

[1] *See*

Dana White, Twitter (May 15, 2014, 7:53 PM), https://twitter.com/danawhite/status/467180915093798913/photo/1?ref_src=twsrc%5Etfw&ref_url=http%3A%2F%2Fwww.bloodyelbow.com%2F2014%2F5%2F22%2F5740788%2Fhows-taste-my-tweet-tweet-youtube-cats-and-airport-mma-training (May 15, 2014 tweet by Dana White of his Nokia phone);

PLAINTIFFS' MOTION TO COMPEL

devices containing ESI during the relevant time period, especially mobile phones with text messages, is essential because texting appears to have been White's primary means of written communication. Defendant's production includes 6,808 text messages to/from White, but only a handful of emails written by him. Indeed, in January 2014, FoxSports, the UFC's broadcast partner, reported:

> White said Monday at a media luncheon in Los Angeles that he can't stand reading. \*\*\*\*
> "I literally don't read," White said. "If you send me an e-mail longer than two sentences, I won't read that either. People text me, you can't use too many letters, too many words. It's fast, it's easy, I get the point. I'll get back to you, let you know what's up."

*UFC prez Dana White hates to read, refuses to give up flip phone*, FOX SPORTS (Jan. 27, 2014, 8:52 PM), http://www.foxsports.com/ufc/haymaker/story/ufc-prez-dana-white-hates-to-read-refuses-to-give-up-flip-phone-012714.

## B. Defendant's Text Message Productions and White's Pending Deposition

Defendant has failed to identify, preserve, collect and produce highly relevant ESI (including thousands of text messages), from UFC President Dana White, one of the key fact witnesses in this case. Defendant's failures with respect to White's ESI are illustrative of and suggest broader pervasive issues of which Plaintiffs have only scratched the surface and warrant prompt resolution to minimize further prejudice to Plaintiffs.

Thus far, Plaintiffs have discovered that Defendant has made an incomplete production of White's -92 phone, failed to preserve the -75 and -27 phones, allowed responsive ESI on the -27 phone to be destroyed, lost the -75 phone altogether and failed to preserve ESI on the -20 phone while hiding the fact that it never produced ESI associated with three of White's four devices.

---

*UFC prez Dana White hates to read, refuses to give up flip phone*, FOX SPORTS (Jan. 27, 2014, 8:52 PM), http://www.foxsports.com/ufc/haymaker/story/ufc-prez-dana-white-hates-to-read-refuses-to-give-up-flip-phone-012714 (January 27, 2014, article quoting White "I love the flip phone. I baby this thing like it's a kid. If I drop it, I act like I just dropped my baby.");
Karim Zidan, *Rogan: Dana 'under investigation,' forced to upgrade to iPhone*, BLOODY ELBOW (Sep. 9, 2015, 11:30 AM), http://www.bloodyelbow.com/2015/9/9/9289197/ufc-joe-rogan-dana-under-investigation-forced-to-upgrade-to-iphone (September 9, 2015, article discussing White's transition from the Nokia to an iPhone).

PLAINTIFFS' MOTION TO COMPEL

On November 12, 2016, Plaintiffs served a Notice of Deposition of Dana White for April 14, 2017. (Exhibit 5). On December 19, 2016, Zuffa responded that they would "get back to [Plaintiffs] to confirm the availability of Dana White…." (Exhibit 6 at p. 1). The parties later agreed to schedule the White deposition for April 26. (Exhibit 7 at p. 1). On March 7, Defendant indicated that White was no longer available on April 26 and, on March 10, proposed May 2, after the close of discovery, to which Plaintiffs agreed. (Exhibit 8 at p. 4; *id.* at p. 2). White's deposition is now off calendar indefinitely.

On March 20, 2017, Plaintiffs notified Defendant of serious issues regarding the production of text messages from Zuffa's custodians, including White, that were hampering their ability to prepare for depositions and understand and utilize the text messages. (Exhibit 9 at p. 1). For example, Defendant produced compilations of nearly 45,000 text messages in TIFF format, rendering the documents unsearchable and unsortable and with the content of text messages cut off. The compilations were sorted alphanumerically, rather than by thread in date/time order (*i.e.*, a text message from January 1, 2014 would be followed by a text message from January 1, 2015 rather than January 2, 2014), making it difficult if not impossible to follow text conversations. (*See, e.g.*, Exhibit 10). On March 22, Defendant said it would investigate. (Exhibit 9 at p.1).

On March 29, Plaintiffs raised additional issues specific to the production of text messages from White and Fertitta. (Exhibit 3 at p. 19-23). Plaintiffs identified text messages in Zuffa's production associated with four separate phone numbers for White, ending in -92, -75, -27 and -20. A substantial number of texts to/from White corresponding to -20 were not produced by White, but were produced by other custodians suggesting those messages were not collected from White or that he had deleted them. With White's deposition approaching, Plaintiffs requested the immediate production of all responsive text messages from -20. *Id.*  Plaintiffs identified specific discrepancies between the texts of White and Fertitta and requested an explanation.[2] *Id.* In addition, significant portions of the text message productions omitted the

---

[2] For example, in an October 2014 text message in Fertitta's production that is missing from White's production, Fertitta writes to White's -75 number about plaintiff Cung Le, stating, "The Cung Le thing got fucked up." *See* Exhibit 24 at Row 367. In a March 2015 text exchange

content of the message, date, time, and custodian name or phone number.[3] Finally, text messages exchanged between custodians did not consistently appear in both custodians' productions (*i.e.*, a text message between Fertitta and White was produced from Fertitta's phone but not White's).

By April 4, Defendant had not responded substantively and Plaintiffs requested a prompt response. (Exhibit 3 at p. 16-18). Plaintiffs also stated that no texts appeared to have been produced from White's -27 number. *Id.* Zuffa responded that it was "investigating" and would produce the Excel compilations requested on March 29.[4] (*Id.* at p. 16).

On April 13, Plaintiffs informed Defendant that the myriad issues with Zuffa's production of text messages had not been resolved by the reproduction in Excel format. (*Id.* at p. 14-15).

On April 14, Plaintiffs communicated additional issues related to significant undated portions of White's and Fertitta's productions. (*Id.* at 11-14). Defendant again responded that it was "continuing to investigate." (*Id.* at 10-11).

On April 24, still without a substantive response, Plaintiffs requested a meet and confer and stated that they would be greatly prejudiced if the parties proceeded with White's deposition on May 2, as scheduled, proposing to take the deposition off calendar. (Exhibit 18 at p. 3). Less than 6 hours later (but 26 days after Plaintiffs first raised these issues), Defendant responded with a four-and-a-half page single spaced letter refusing to reschedule White's deposition, accusing

---

appearing only White's production but not Fertitta's, White writes, "Lets keep that Ronda thing quiet or Ariel will know in an hour." *See* Exhibit 11 at Row 12.

[3] *See*, *e.g.*, Exhibit 12 at p. 5 (January 13, 2014 text message from Cub Swanson to Sean Shelby lacking content in "Text" field); Exhibit 13 at p. 25-38 (nearly 13 pages of undated text messages to/from Dana White); Exhibit 14 at p. 1-6 (lacking information in the "To" and "From" fields indicating custodian name or phone number); Exhibit 12 at p. 29 (January 27, 2015 text message from Leslie Smith to Sean Shelby, January 28, 2014 text message from Josh Jones to Shelby, January 28, 2015 text message from Joe Benavidez to Shelby – all with message content cut-off); Exhibit 15 at p. 6 (February 11, 2015 text messages to/from Kirk Hendrick with phone number information cut-off). Many text messages contained unexplained errors in the "To" or "From" fields. *See*, *e.g.*, Exhibit 16 (listing multiple phone numbers in the "From" field; Exhibit 17 at p. 115 (series of May 20, 2015 text messages between Joe Silva and a phone number listed as "5.512E+12").

[4] On April 7, Defendant reproduced the TIFF compilations in 27 Excel files containing 44,928 text messages with metadata. The Excel files enabled Plaintiffs to view the previously hidden message content, conduct word searches and sort the text messages to approximate conversations. Because the previous versions were incomplete Plaintiffs re-reviewed all 44,928 text messages.

---

PLAINTIFFS' MOTION TO COMPEL

Plaintiffs of being "dilatory" in uncovering Zuffa's discovery misconduct and "attempt[ing] to effect a *de facto* unilateral extension of the fact discovery." (Exhibit 2 at p. 1).

Defendant's April 24 letter revealed for the first time that all of the text messages produced from White's custodial files corresponded to only *one of his four phone numbers*, the number ending in -92, and only two of the three phones identified in Defendant's December 21, 2015 letter purporting to identify White's "business" phones. (*Id.* at p. 2; *see also* Exhibit 1 at p. 2-3). Although Plaintiffs had inquired repeatedly about the production of ESI associated with all four of White's phone numbers, the only other phone number addressed by the April 24 letter was White's -20 number. (Exhibit 2 at p. 2). Defendant also revealed for the first time that while it had physically collected the Nokia device corresponding to the -20 number, it never collected and produced responsive ESI on the device. *Id.* Defendant represented that the ESI on the -20 Nokia was "not reasonably accessible." *Id.*

On April 25 the parties met and conferred and Zuffa disclosed that ESI had not been produced from the -20, -75 and -27 devices. (Exhibit 19 at p. 1; Exhibit 3 at p. 6-8). Defendant continued to refuse to reschedule White's deposition pending resolution of these issues. *Id.*

The parties met and conferred again on April 26. (Exhibit 3 at p. 1-4). Defendant represented that the devices associated with White's -75 and -27 numbers were never subject to a litigation hold and that the physical device associated with the -75 number had never been physically collected.  Defendant further represented that it had physical possession of White's -27 device, had sent it to an ESI vendor, and was targeting the production of ESI from the device by May 15. (*Id.* at p. 3). Defendant also represented that it was planning to send the -20 device to a new vendor to attempt a collection and was attempting to locate the -75 device, but refused to reschedule White's May 2 deposition. (*Id.*). On the evening of April 26, Defendant reversed course and consented to reschedule White's deposition. (*Id.* at p. 1).

On May 5 the parties met and conferred and Defendant represented that its ESI vendor determined that the -27 device did not contain ESI predating November 2015. (Exhibit 4 at p. 1). However, Defendant had produced texts from other custodians to/from -27 that postdate the filing

PLAINTIFFS' MOTION TO COMPEL

1   of the litigation and predate November 2015. Defendant also informed Plaintiffs that it was still

2   attempting to locate the -75 device and stated that "it may have been discarded." *Id.*

3       Because Plaintiffs identified a significant number of responsive texts exchanged with each

4   of White's four phone numbers that were not produced by White and issues regarding the

5   preservation of ESI on his various devices, on May 2, Plaintiffs requested that Defendant produce

6   or consent to the service of subpoenas to obtain log data associated with White's devices. (*Id.* at

7   p. 4-5). Defendant refused. (*Id.* at p. 2).

8       **C.**    **Zuffa Has Failed to Make Its Custodian of Records Available For A Timely Deposition During The Discovery Period, Further Obscuring The Destruction And Loss of White's ESI**

9

10      Defendant consistently rebuffed or simply ignored Plaintiffs' efforts to conduct a

11  deposition of its custodian of records to get to the bottom of its failure to locate and preserve

12  relevant ESI. Despite Plaintiffs' persistent requests, Defendant failed to make its custodian of

13  records available for deposition before the week of May 22, weeks after the close of discovery.

14      As early as the parties' Rule 16 conference and continuing throughout the meet and confer

15  process in 2015, Plaintiffs posed a simple series of questions to Defendant regarding, *inter alia*,

16  the identities of Zuffa's custodians; the volume of documents, devices, and ESI for each

17  custodian; and the relevant time periods of ESI storage. Defendant refused to provide answers to

18  these questions and instead offered blanket unsupported objections. In the parties' November

19  2015 Joint Status Report, Plaintiffs proposed to address these issues with a Rule 30(b)(6)

20  deposition limited to custodial and discovery topics. ECF No. 199, at 14-15. At the Joint Status

21  Hearing on November 17, 2015, the Court recommended that Plaintiffs wait until later in the

22  discovery period, after depositions had begun, to conduct a Rule 30(b)(6) deposition about

23  discovery. (Exhibit 20 at 27:3-13, 32:5-9).

24      Following the Court's recommendation, Plaintiffs proceeded with depositions and, in so

25  doing, gained more understanding of the outstanding discovery issues. On April 6, 2017,

26  Plaintiffs informed Defendant of their intention to schedule a deposition of Zuffa's custodian of

27  records before the current close of discovery (and, therefore, the White deposition then scheduled

28  for May 2) and requested proposed dates. (Exhibit 21 at p. 3). On April 7, Defendant stated that it

would follow up "on Monday [April 10] on potential dates" and requested that the deposition take place in Boies Schiller's Las Vegas office. (*Id.* at p. 2-3). Plaintiffs immediately agreed to the requested location, but Defendant did not respond as promised. (*Id.* at 1-2). On April 20, Plaintiffs inquired when they could expect proposed dates from Defendant, but again did not receive a response. (*Id.*). In Plaintiffs' April 24 letter regarding the text message production issues, Plaintiffs stressed that had Defendant agreed to schedule a custodian of records deposition before the scheduled White deposition, Plaintiffs may have been able to address the numerous significant issues regarding Defendant's production of text messages. (Exhibit 18 at p. 3-4).

During the parties' April 25 meet and confer, Plaintiff again requested deposition dates and Defendant represented that it would provide proposed dates for the custodian of records deposition either that day or the next in order for the deposition to be held the following week, after the scheduled close of discovery. (Exhibit 3 at p. 6). During the parties' April 26 meet and confer, Plaintiffs again inquired as to Defendant's proposed dates for the deposition. (*Id.* at p. 2). Defendant did not have proposed dates and asked Plaintiffs to provide their availability. *Id.* Shortly following the meet and confer, Plaintiffs provided Defendant with a number of available dates for the custodian of records deposition. *See id.* In a letter dated April 29, 2017, Defendant notified Plaintiffs that it had designated an individual who will serve as the custodian of records designee. *See* (Exhibit 22 at p. 1). The deposition is tentatively scheduled for May 26 in Las Vegas.

**IV.  ZUFFA VIOLATED THE COURT'S ESI ORDER BY CONCEALING ITS FAILURE TO PRODUCE ESI FROM WHITE'S NOKIA PHONE FOR 10 MONTHS AND CONTINUED TO WITHOLD THE TRUTH FOR 26 DAYS AFTER PLAINTIFFS RAISED QUESTOINS ABOUT THE ESI**

On September 1, 2015, the Court entered the Stipulated Order Re: Discovery of Electronically Stored Information ("ESI Order"). ECF No. 60. The ESI Order requires:

> To the extent … Defendant identifies potentially relevant ESI that is not reasonably accessible, the parties agree that they are not required to preserve, search, review or produce such ESI, *provided that the party that has identified what it reasonably believes to constitute such ESI provides reasonable notice to the opposing party*. The parties shall meet and confer following such notice.

ECF No. 160 at paragraph 4(f).

On December 21, 2015, Defendant identified three "Cell Phone(s), Smartphones, or Tablets used for business purposes" by Dana White: "one retired iPhone 4s; one retired Nokia 6101; one iPhone 6s." (Exhibit 1 at p. 2-3).

On April 29, 2016, Zuffa represented to the Court that "Zuffa is also reviewing hundreds of thousands of pages of hard copy documents, text messages…that Zuffa has agreed to review without the use of search terms." ECF No. 244, at p. 40.

Zuffa produced text messages to Plaintiffs in July 2016. (Exhibit 2 at p. 1). Defendant certified that it had substantially completed it production of documents on September 1, 2016. ECF No. 297, at p. 3.

In preparation for White's May 2 deposition, Plaintiffs identified a substantial number of text messages to/from White that corresponded to his -20 phone number (connected to his Nokia "flip" phone), that were not produced on behalf of White as a custodian which suggests White deleted the texts that Zuffa produced from other custodians or that the texts were not collected from White's device. With White's deposition fast approaching, on March 29, 2017, Plaintiffs requested that Zuffa immediately produce any responsive texts from White's -20 phone number. (Exhibit 3 at p. 22).

*For the next 26 days* Zuffa failed to respond, claiming that it was "investigating" the production of White's -20 text messages.[5] Yet, Zuffa knew all along, as it revealed on April 24, in the wake of Plaintiffs' repeated inquiries, that "[a]lthough the forensic consultants made several attempts to retrieve data from [White's] Nokia [-20 device], they concluded that the data was *not reasonably accessible* and could not be retrieved." (Exhibit 2 at p. 2). Zuffa's claim that

---

[5] It took Zuffa 6 days just to represent that it was "currently investigating the issues you raise below and will respond to you as soon as we have completed our investigation." (Exhibit 3 at p. 16).

PLAINTIFFS' MOTION TO COMPEL

1  it had produced text messages in July 2016 and substantially completed its production of

2  documents in September 2016 was misleading because it left the impression that Defendant

3  produced texts from all three of White's phones identified in its December 21, 2015 letter. Zuffa's

4  failure to tell Plaintiffs that it had not collected ESI from White's -20 phone, because it believed

5  the ESI was "not reasonably accessible," violates paragraph 4(f) of this Court's ESI Order. (ECF

6  160). Zuffa compounded its continuing violation of the ESI Order by waiting 26 days to finally

7  tell Plaintiffs' the truth, while claiming that it was "investigating" what it knew all along – it had

8  

9  never collected ESI from the -20 Nokia phone.

10          Defendant's violation of the ESI Order is inexcusable because numerous alternatives

11  existed and likely explains why Defendant repeatedly failed to provide Plaintiffs with a date for a

12  custodian of records deposition and has designated as its witness an employee of WME/IMG, the

13  entity that purchased the UFC in July 2016. (Exhibit 22 at p. 1). Paragraph 4(f) of the ESI Order

14  contemplates such a situation and requires notification and a meet and confer. Alternatively,

15  Defendant could have offered Plaintiff the opportunity to conduct a physical inspection of the

16  Nokia and to read the texts in person with counsel for Defendant present. Or, since Defendant

17  insisted upon conducting a linear review of all text messages, it could have transcribed any

18  responsive texts on the Nokia and produced them. Finally, Defendant could have allowed

19  Plaintiffs to hire their own vendor to attempt a collection. Regardless, pursuant to the ESI Order,

20  Zuffa was supposed to notify Plaintiffs so that the parties could meet and confer in the Summer of

21  2016, not days before the deposition after a prolonged game of cat and mouse.

22          Defendant's eventual explanations strongly suggest discoverable ESI was deleted from

23  

24  White's Nokia -20 phone which Zuffa identified as a device White used for "business" and

25  explains its decision to violate the ESI Order, inexcusable delay in coming clean and foot

26  

27  

28

1   dragging on the custodian of records deposition. (Exhibit 1 at p. 2-3). On April 24, 2017,

2   Defendant explained:

3       The Nokia flip phone had very limited internal memory, which memory was shared
        between text messages, contacts, and other functions. As a result, the phone retained a
4       very limited number of messages at any given time, and automatically deleted prior
        messages to free up space for new incoming messages and information. Due to the
5       memory and technological limitations of the phone, such automatic deletion could not be
        overridden or disabled.
6

7   (Exhibit 2 at p. 2). Despite knowing that White's Nokia had "limited internal memory" and

8   "automatically deleted prior messages" (*id.*), "Zuffa issued a litigation hold in December 2014 and

9   collected this phone on January 8, 2015," that is -- 23 days *after* this lawsuit was filed on December

10  16, 2014. (Exhibit 22 at p. 2). Therefore, each time a text was sent or received on the Nokia after this

11  lawsuit was filed, potentially relevant ESI was deleted. Importantly, even if White did not send text

12  messages on the Nokia after this lawsuit was filed, he very likely received texts which resulted in a

13  continuing deletion of relevant ESI until the -20 number was transitioned from the Nokia to a new

14  phone.[6] It is thus highly likely that some or all of the relevant ESI on White's Nokia business phone

15  (-20) was deleted *after* this litigation was filed.

16
17          On April 29, Zuffa ultimately agreed to Plaintiffs' request to allow Plaintiffs' ESI vendor to

18  attempt to extract ESI from the Nokia provided Plaintiffs agree to a protocol to govern the data. (*Id.*).

19  By Tuesday, May 2, Plaintiff had identified a vendor with the forensic tools capable of collecting ESI

20  from the Nokia and requested that Zuffa propose dates and a location for doing so. (Exhibit 4 at p. 4).

21  Zuffa has proposed a form of protocol but not a date or location for the collection. (*Id.* at p. 1). Even if

22  Plaintiffs' ESI vendor can collect ESI from the device, only the requested log data will begin to

23
24  _____

25  [6] Zuffa makes the rather astonishing claim that "Although he had no obligation to do so, Mr.
    White stopped using the [Nokia] flip phone and switched to a modern-era smartphone in order to
26  preserve his messages." (Exhibit 2 at p. 2-3). First, that does not resolve the continuing deletion
    of texts. Second, Zuffa knew that the Nokia had limited memory and was used for "business";
27  therefore, White was absolutely obligated to stop using the phone to prevent the destruction of
    ESI once this litigation was imminent. If Zuffa was counseled otherwise, there is no telling how
28  much relevant ESI has been destroyed.

PLAINTIFFS' MOTION TO COMPEL

provide a complete picture of the text message history associated with this device. Given the likelihood that ESI was deleted from the Nokia, access to log data for the device is essential to allow Plaintiffs to understand the universe of potentially responsive communications that were on the device and to facilitate a meaningful review of White's communications on this device during the period of the litigation hold.

**V.     WHITE'S "PERSONAL" PHONES ENDING IN -27 AND -75 CONTAIN HIGHLY RELEVANT "BUSINESS" COMMUNICATIONS THAT DEFENDANT DID NOT PRESERVE AND HAS NOT PRODUCED**

On April 25, for the first time, Defendant also revealed that it had not produced ESI from White's -27 and -75 devices.  (Exhibit 3 at p. 6-8).  On April 26, Defendant further revealed that those devices were not subject to a litigation hold and that the -75 device could not be located. (*Id.* at p. 2). Defendant's month long silence is inexcusable because it no doubt knew that it had not produced ESI from the -27 and -75 devices when Plaintiffs asked. Defendant claimed that it failed to produce any texts from -27 and -75 because they were identified as White's "personal" numbers. (*Id.* at p. 7-8). Yet, Defendant "committed to reviewing, without the aid of search terms, … all text messages collected from the current list of custodians." (Exhibit 23 at p. 2). Therefore, Defendant's counsel read every one of the 1,392 text messages produced by its other custodians that were sent to/from Whites' -27 and -75 devices and produced them as responsive. Yet, Defendants would have Plaintiffs and this Court believe that it did not know that White's -27 and -75 devices were not strictly "personal."

Even a cursory review of the limited text messages that Defendant produced from the -27 and -75 devices makes clear that White used both devices for business purposes – the -75 device heavily so. White exchanged numerous text messages with other Zuffa custodians pertaining to

matters of UFC matchmaking, production, and television ratings.[7] Many of the text messages exchanged with these numbers deal with issues more pertinent to this lawsuit. These include text messages regarding fighter compensation, contract negotiations, as well as countless texts discussing would-be competitor MMA promotions such as Bellator MMA, World Series of Fighting, Invicta FC, Legacy FC, and Titan FC among others.[8] Several text messages refer directly to this lawsuit, and no less than 26 text messages refer directly to named plaintiffs in this case, including Cung Le, Jon Fitch, and Brandon Vera.[9] The vast majority of these text messages display White's name along with his phone number.[10] Plaintiff independently determined that Defendant's custodians (excluding White) produced approximately 1,392 texts[11] sent to or from White's -27 and -75 devices which accounts for approximately 16% of all of the texts sent to or from White as produced across all custodians. Thus, *Plaintiffs determined from the texts alone that -27 and -75 were not "personal" devices.* There is no excuse for Defendant's failure to make the same determination and failure to preserve this highly relevant ESI, particularly in light of its representation to this Court that it was conducting a linear review of every text message (of which it produced 44,928 texts).

---

[7] *See, e.g.*, Exhibit 24 at Rows 2263-70, 2325-26, 2337-44, 2633, 2649-56, 3627-34 (matchmaking); Exhibit 25 at Rows 7819, 8889-92, 9036 (same); Exhibit 24 at Rows 166-67, 1225-27, 2160-61 (production); Exhibit 26 at Rows 736-41 (ratings); Exhibit 24 at Rows 1136-1138, 2745-48 (same).

[8] *See, e.g.*, Exhibit 24 at Rows 1179-86, 1585-86, 1830, 1960-67, 1974, 2021-25, 2162-90, 2657-58 (fighter compensation); Exhibit 25 at Row 6983 (same); Exhibit 27 at Rows 75, 95, 741 (same); Exhibit 24 at Rows 614-18, 2054, 3668-76 (contract negotiations); Exhibit 25 at Rows 6911-15 (same); Exhibit 27 at Rows 76-81 (same); Exhibit 28 at Row 1810 (would-be competitors); Exhibit 24 at Rows 221, 753-65, 1571-75, 1605, 1607-08, 1701, 1745, 1827, 2112-23, 2373-74, 2460, 2513, 2974-80, 2991-98, 3572-74 (same); Exhibit 29 at Rows 730-33, 1088 (same).

[9] *See, e.g.*, Exhibit 28 at Rows 225-28; Exhibit 24 at Rows 959-60, 1813-15, 1817, 2534, 2598-99, 2649-50, 3166-72; Exhibit 25 at Row 7554.

[10] *See*, *e.g.*, Exhibit 25 at Row 8401.

[11] The 1,392 texts produced by Defendant on behalf of custodians other than White consist of 51 texts from the -27 number and 1,341 from the -75 number.

**A.    White's -75 Device, Which Contained A Substantial Volume of Relevant Business Communications, Was Not Subject To A Litigation Hold and From Which ESI Was Not Collected, Remains Missing**

As of the parties' May 5 meet and confer, Defendant has been unable to locate the -75 device and acknowledged that "it may have been discarded." (Exhibit 4 at p. 1). That is particularly egregious because some of the most compelling text message evidence in this case was exchanged by White from his "personal" -75 device. For example, in a February 2014 text message exchange produced from the files of Lorenzo Fertitta, White and Fertitta discuss UFC fighter Gilbert Melendez, who had just recently fought the last bout on his contract and was therefore subject to the "Right to Match" clause outlined in Plaintiffs' Complaint.  ECF No. 208, at ¶113(c). White and Fertitta discuss that Melendez received an offer from would-be competitor promotion Bellator. (Exhibit 24 at Rows 1410-1413). Less than two weeks later, after Zuffa used its matching rights to prevent Melendez from signing with Bellator, White and Fertitta exchange the following text messages:

| Dana White <+████9875> | +████6097 [Lorenzo Fertita] | 2/25/2014 7:00:04 PM | Bro, u know i love u to fukn death as it is but what u pulled off this week with Melendez and "other dude" is fukn BAD ASS! Fukn cut throat nasty business |
|---|---|---|---|
| Dana White <+████9875> | +████6097 [Lorenzo Fertita] | 2/25/2014 7:00:06 PM | s like u see in movies!! Good shit homie, CONGRATS |
| +████6097 [Lorenzo Fertita] | Dana White <+████9875> | 2/25/2014 7:06:43 PM | We gotta keep taking these fuckers oxygen till they tap out.  We have sacrificed too much to let anyone get traction now |
| Dana White <+████9875> | +████6097 [Lorenzo Fertita] | 2/25/2014 7:20:19 PM | I agree! U r 100% correct and i LOVE IT |

*Id.* at Rows 1552-55. At his deposition on March 23, 2017, Fertitta was asked about this text message exchange and testified as follows:

> 11          Q. And who are the fuckers' oxygen that you
> 12    needed to keep taking, as you're referring to in that
> 13    text?
> 14          A. I believe it was referring to Bellator.[12]

---

[12] Plaintiffs allege: "Even though the UFC has publicly stated that it views Bellator as a "minor league" that does not present a competitive threat to the UFC, as part of the exclusionary scheme alleged herein, the UFC has nevertheless engaged in aggressive conduct to inhibit Bellator's development into a viable rival promotion." ECF No. 208 at ¶ 149.

PLAINTIFFS' MOTION TO COMPEL

(Exhibit 30 at 290:11-290:14). Five attorneys for Fertitta were present for his dramatic testimony (including Zuffa's General Counsel), regarding the damning exchange that White initiated from his -75 number.[13] These texts are among 1,341 that were sent to or from -75 and produced by custodians other than White. To date, White has not produced a single text from his -75 device(s) *which Defendant cannot locate*. Defendant produced 6,808 texts from White's -92 device; all other custodians produced 1,341 texts to/from White's -75 phone. Thus, texts produced to/from White's -75 phone by custodians other than White represent 19.7% of the total number of texts produced by White as custodian. The text counts alone clearly demonstrate that White's -75 device was not "personal", should have been preserved and the ESI on it collected and produced.

**B.    ESI From the Relevant Time Period Is Missing, Is No Longer Available From White's -27 Device And Was Not Subject To A Litigation Hold**

On April 4, Plaintiffs notified Defendant that it had produced a very small number of texts associated White's -27 number; two White sent to himself and a few produced by other custodians. (Exhibit 3 at p. 17) (*citing* ZFL-1858878, ZFL-1857784; attached as Exhibit 31 at Row 902; Exhibit 32 at Row 1159)). As with the -20 number, Zuffa did not produce texts from White as custodian, indicating that ESI had not been collected from the device and may not have

---

[13] Several other texts to and from White's -75 number produced by custodians other than White suggest that Zuffa did not view promotions such as Bellator as viable competitors for top MMA talent. In a December 2014 exchange between White and Fertitta, White describes how someone at Bellator told him "about how their big 2015 strategy is to cut back a good amt on number of events to try and stack their cards." He remarks, "Good luck with that. What the hell do they have to stack them with?" Exhibit 24 at Row 1313. A July 2013 text produced from the files of Zuffa matchmaker Sean Shelby that was sent to White reads, "In Bellator there is no matchmaking, except in their 'was relevant 5 yrs ago' division." Exhibit 25 at Row 12551. A May 2013 text from Fertitta to White, Zuffa's Chief Operating Officer Lawrence Epstein, and others reflects Fertitta's unwillingness to accept a counteroffer from a fighter's manager because it would "screw up the pay scale for contenders." Exhibit 24 at Row 2054. A December 2014 text from Shelby to White stating Zuffa has more fighters under contract than it does availability to slot fighters into bouts. Shelby writes, "FYI Angela hill wants a fight immediately. I told her she has to wait like everyone else because I've got over 100 fighters waiting a lot longer than her for a fight. . . . I really don't have space to fight her until about April." Exhibit 25 at Row 6508.

been preserved. Although Plaintiffs requested confirmation that texts were collected and produced from -27, Zuffa did not respond until April 25. (Exhibit 3 at p. 6-8).

During the April 26 meet and confer, Defendant confirmed that it had physically collected the -27 device, sent it to a vendor, and was targeting the production of data from the device by May 15. (*Id.* at p. 2). However, on May 5, Defendant explained that after sending the -27 device to an ESI vendor it determined that the earliest available texts dated from November 2015, after the parties' agreed upon June 30, 2015 discovery cut-off, and thus would not be produced. (Exhibit 4 at p. 1). If that is so, White likely destroyed relevant ESI subject to the litigation hold. Defendant's custodians (other than White) produced 51 texts sent to or from the -27 number between October 13, 2012 and May 19, 2015. *See, e.g.,* Ex. 24 at Row 395; Exhibit 33 at Row 182. Of those, 16 texts *post-date* the filing of this litigation after which Defendant represented that a litigation hold was issued "immediately when the action was filed." (Exhibit 11 at p. 7). That number may appear small, but without log data, Plaintiffs have no way of knowing how many texts were deleted by: (a) both White and the custodians for whom Defendant produced texts sent to/from -27; and (b) White that were exchanged with non-custodians.

Despite Plaintiffs' repeated requests, Defendant still has not identified which or how many of White's identified devices are associated with these numbers. In light of Defendant's failure to produce data for the -27 and -75 devices, the fact that data is missing from the -27 device and that the -75 device itself "may have been discarded," access to the logs for these devices is critical. The logs will allow Plaintiffs to effectively review the nature of White's communications on these devices and to understand the universe of potentially responsive communications between White and others that have thus far not been collected or produced.

## VI.   WHITE'S PHONE ENDING IN -92 FROM WHICH DEFENDANT FAILED TO PRODUCE ALL RELEVANT ESI

On April 24, for the first time, Defendant revealed that White's texts were only collected and produced from his -92 phone number. (Exhibit 2 at p. 2). Defendant produced 6,808 texts from White as custodian. Many more appear to remain unproduced from the -92 device(s).

On March 29, Plaintiffs notified Defendant that they had identified numerous examples of text conversations between White and Fertitta "that appear in the compilation text message spreadsheets from Fertitta's custodial files, but do not appear in the White custodial files, and vice-versa." (Exhibit 3 at p. 22). Plaintiffs provided a list of examples and noted that "[m]any of these text messages were exchanged well after this litigation commenced, during which time both parties were subject to a litigation hold." *Id.* Plaintiffs requested that Defendant provide an explanation for these discrepancies, but received no answer.

At that time, Plaintiffs were unaware that the production of White's texts only represented the -92 number. Because Defendant identified the -20 number in December 2015 and never provided Plaintiff with notice pursuant to paragraph 4(f) of the ESI Order, Plaintiff believed the production included -20 texts as well. Nevertheless, Plaintiffs have since identified 335 text messages sent to or from White's -92 number that were preserved in the files of other Zuffa custodians, but that were not produced from White's device(s). These texts are relevant and responsive because they were produced on behalf of other Zuffa custodians after Defendant's linear review. Lest doubt remain, an examination of the substance confirms the importance of these texts. For example, three of the texts refer directly to plaintiff Cung Le. (Exhibit 24 at Rows 126-27, 845). A July 2013, text from White to Fertitta boasts about "smashing Bellator" on a radio show; "so that was fun" he says. (*Id.* at Row 2851). In a January 2014 text White tells Fertitta that international promotions are not in competition with the UFC, writing, "I think those goofs in Asia really try to 'compete' with us." (*Id.* at Row 276). In an October 2014 text, Joe Silva disparages Bellator to White saying "Bellator headlined tonight with 2 UFC washouts who were never in title contention and it was amazingly boring. Scott Coker is amazing." (*Id.* at Row 440). In an undated text message from Fertitta to White, Epstein and Zuffa's Chief Legal Officer Kirk Hendrick, Fertitta forwards a text message from fighter Quinton "Rampage" Jackson describing the settlement result of litigation between him and Bellator pertaining to the legality of his contract with Zuffa. (Exhibit 34 at Row 889).

At least 186 of these text messages definitively post-date the filing of this litigation. These include a January 2015 exchange between Joe Silva and White in which the two executives mock

PLAINTIFFS' MOTION TO COMPEL

a regional promotion's headlining bout that features a former UFC fighter. Silva writes, "Shane Mosley show has Joe Stevenson fighting for a title? He has lost his last five fights and hasn't fought in two and a half years." White responds, "Sounds like a championship fighter to me." (Exhibit 35 at 443, 445). Also missing from White's productions is a March 2015 exchange between White, Zuffa Executive Vice President of Operations & Productions Craig Borsari and others regarding the need to edit a promotional clip featuring UFC fighter Jose Aldo to remove "the part about money." (Exhibit 36 at Rows 437-39). In another conversation between White and Borsari from June 2015, Borsari writes to White, "Bellator did 764K viewers." White responds, "they can't break that hump," to which Borsari replies, "Nope. Not unless they put on the freak show fights." (*Id.* at Rows 1008-10).

In addition to missing texts from -92, Plaintiffs have notified Defendant of other issues with the production. On March 29, April 13 and April 14, Plaintiffs informed Defendant that the productions for White contained approximately 525 undated texts. (Exhibit 32 at Rows 840-1364; *see also* Exhibit 3 at p. 11-14, 20). The undated text messages are all messages that were sent by White, yet their content makes clear that most, if not all, are incomplete portions of larger conversations. In response to these concerns, Defendant stated only that the parties agreed to a June 30, 2015 cut-off date for the collection of documents and that "[c]ertain undated text messages that were sent or received after June 30, 2015 may have been produced out of an abundance of caution." (*Id.* at 11). However, many of the undated text messages reference events that pre-date June 30, 2015. For example, a text message sent to 12532190361 references "Henderson vs Thatch from last night." (Exhibit 32 at Row 961). The bout between Benson Henderson and Brandon Thatch took place at UFC Fight Night 60 on February 14, 2015. *See* Andrew Richardson, *UFC Fight Night 60 results recap: Ben Henderson vs Brandon Thatch fight review and analysis*, MMA Mania (Feb. 15, 2015, 8:00 AM), http://www.mmamania.com/2015/2/15/8039869/ufc-fight-night-60-results-recap-benson-henderson-vs-brandon-thatch-broomfield-mma. Likewise, a series of text messages sent to 13109510825 states "I will be on the world tour with Aldo and Connor." (*Id.* at Row 1057). This tour took place between March 20 and 31, 2015. *See UFC announces eight-city media tour for*

*Jose Aldo vs. Conor McGregor*, MMA FIGHTING (Mar. 15, 2015, 12:00 PM),

http://www.mmafighting.com/2015/3/15/8217887/ufc-announces-eight-city-media-tour-for-jose-

aldo-vs-conor-mcgregor. In addition, a text message sent to 14085150146 states "It was a great

HW fight. First 2 rounds were insane. I was surprised Werdum took Cains punches." (*Id.* at Row

1238). This bout between Fabricio Werdum and Cain Velazquez took place at UFC 188 on June

13, 2015. *See* Thomas Myers, *UFC 188 results: Fabricio Werdum smashes, then submits, Cain*

*Velasquez to become undisputed Heavyweight champion*, MMA MANIA (Jun. 14, 2015, 12:48

AM), http://www.mmamania.com/2015/6/14/8777391/ufc-188-results-fabricio-werdum-batters-

submits-cain-velasquez-undisputed-heavyweight-champion.

**VII.   RELIEF REQUESTED**

With discovery closed and Defendant opposing Plaintiffs' request for even a modest

extension of the case deadlines, Defendant has not even completed the production of White's

texts. Plaintiffs have been and will continue to be severely prejudiced by the loss of White's ESI.

Plaintiffs have taken depositions of many custodians without the benefit of all of White's texts

with those custodians. Plaintiffs do not yet know what third parties may be referenced, what

issues or lines of questioning were missed and what third party discovery that remains. By

Defendant's own admission, White's Nokia "flip" phone likely contains only a fraction of the

communications for which it was used. Texts to/from -27 are missing as is the entire -75 device –

neither of which were subject to a litigation hold. The sole device for which Defendant produced

White's texts, the -92 device, is evidently incomplete, missing hundreds of relevant and

responsive texts preserved in the productions from Zuffa's other custodians. Likewise, Plaintiffs

have only just begun to assess the extent to which Defendant failed to properly identify, preserve,

collect and produce ESI from its other custodians. A log of communications for White's

electronic communication devices and an inventory of Defendant's custodians' electronic

communication devices will substantially aid the Court and the parties' efforts to understand,

identify and address the issues implicated by Defendant's failure to properly identify, preserve,

collect and produce ESI.

PLAINTIFFS' MOTION TO COMPEL

**VIII.   CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order compelling Defendant, within five (5) days, to produce a log, for each mobile telephone and electronic device utilized by Zuffa President Dana White during the Relevant Time Period that may contain relevant ESI, that identifies the time, date and, if applicable, duration, of each communication made on each such device, including the telephone number, email address, social media handle or similar identifying information and, if applicable, communications carrier, that each such communication was sent to and from. Plaintiffs also request that the Court order Defendant to submit to the Court and Plaintiffs a written report regarding Defendant's identification, collection, preservation and production of ESI from the electronic communication devices of Defendant's Ordered and Agreed Custodians.

DATED: May 9, 2017                               /s/ *Michael Dell'Angelo*

BERGER & MONTAGUE, P.C.
Eric L. Cramer (admitted *pro hac vice*)
Michael Dell'Angelo (admitted *pro hac vice*)
Patrick Madden (admitted *pro hac vice*)
1622 Locust Street
Philadelphia, PA 19103
Phone: (215) 875-3000/Fax: (215) 875-4604
ecramer@bm.net
mdellangelo@bm.net
pmadden@bm.net

*Co-Lead Counsel for the Classes and Attorneys*
*for Individual and Representative Plaintiffs Cung*
*Le, Nathan Quarry, Jon Fitch, Luis Javier*
*Vazquez, Brandon Vera, and Kyle Kingsbury*

COHEN MILSTEIN SELLERS & TOLL, PLLC
Benjamin D. Brown (admitted *pro hac vice*)
Richard A. Koffman (admitted *pro hac vice*)
Dan Silverman (admitted *pro hac vice*)
1100 New York Ave., N.W., Suite 500, East Tower
Washington, DC 20005
Phone: (202) 408-4600/Fax: (202) 408 4699
bbrown@cohenmilstein.com
rkoffman@cohenmilstein.com
dsilverman@cohenmilstein.com

*Co-Lead Counsel for the Classes and Attorneys*

PLAINTIFFS' MOTION TO COMPEL

1                 *for Individual and Representative Plaintiffs Cung*
                *Le, Nathan Quarry, Jon Fitch, Luis Javier*

2                 *Vazquez, Brandon Vera, and Kyle Kingsbury*

3                 Joseph R. Saveri (admitted *pro hac vice*)
                Joshua P. Davis (admitted *pro hac vice*)

4                 Matthew S. Weiler (admitted *pro hac vice*)
                Kevin E. Rayhill (admitted *pro hac vice*)

5                 555 Montgomery Street, Suite 1210
                San Francisco, California 94111

6                 Phone: (415) 500-6800/Fax: (415) 395-9940
                jsaveri@saverilawfirm.com

7                 jdavis@saverilawfirm.com
                mweiler@saverilawfirm.com

8                 krayhill@saverilawfirm.com

9                 *Co-Lead Counsel for the Classes and Attorneys*

10                *for Individual and Representative Plaintiffs Cung*
               *Le, Nathan Quarry, Jon Fitch, Luis Javier*

11                *Vazquez, Brandon Vera, and Kyle Kingsbury*

12                WARNER ANGLE HALLAM JACKSON &
               FORMANEK PLC

13                Robert C. Maysey (admitted *pro hac vice*)
               Jerome K. Elwell (admitted *pro hac vice*)

14                2555 E. Camelback Road, Suite 800
               Phoenix, AZ 85016

15                Phone: (602) 264-7101/Fax: (602) 234-0419
               rmaysey@warnerangle.com

16                jelwell@warnerangle.com

17                *Counsel for the Classes and Attorneys for*

18                *Individual and Representative Plaintiffs Cung Le,*
               *Nathan Quarry, Jon Fitch, Luis Javier Vazquez,*

19                *Brandon Vera, and Kyle Kingsbury*

20                WOLF, RIFKIN, SHAPIRO,
               SCHULMAN & RABKIN, LLP

21                Don Springmeyer
               Nevada Bar No. 1021

22                Bradley S. Schrager
               Nevada Bar No. 10217

23                Justin C. Jones
               Nevada Bar No. 8519

24                3556 E. Russell Road, Second Floor
               Las Vegas, Nevada 89120

25                (702) 341-5200/Fax: (702) 341-5300
               dspringmeyer@wrslawyers.com

26                bschrager@wrslawyers.com
               jjones@wrslawyers.com

27                *Liaison Counsel for the Classes and Attorneys for*

28                *Individual and Representative Plaintiffs Cung Le,*

PLAINTIFFS' MOTION TO COMPEL

1    *Nathan Quarry, Jon Fitch, Luis Javier Vazquez,*
     *Brandon Vera, and Kyle Kingsbury*

2
     LAW OFFICE OF FREDERICK S. SCHWARTZ
3    Frederick S. Schwartz (admitted *pro hac vice*)
     15303 Ventura Boulevard, #1040
4    Sherman Oaks, CA 91403
     Phone: (818) 986-2407/Fax: (818) 995-4124
5    fred@fredschwartzlaw.com

6    *Attorney for Plaintiffs*

7    SPECTOR ROSEMAN KODROFF & WILLIS,
     P.C.
8    Jeffrey J. Corrigan (admitted *pro hac vice*)
     William G. Caldes (admitted *pro hac vice*)
9    1818 Market Street – Suite 2500
     Philadelphia, PA 19103
10   Phone: (215) 496-0300/Fax: (215) 496-6611
     jcorrigan@srkw-law.com
11   wcaldes@srkw-law.com

12   *Attorneys for Plaintiffs*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION TO COMPEL

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of May, 2017 a true and correct copy of **PLAINTIFFS' MOTION TO COMPEL DEFENDANT TO PRODUCE A LOG OF COMMUNICATIONS FOR DANA WHITE'S DISCOVERABLE TELEPHONE NUMBERS AND ELECTRONIC COMMUNICATION DEVICES AND DIRECTING DEFENDANT TO SUBMIT AN INVENTORY OF ELECTRONIC COMMUNICATION DEVICES** was served via email on all parties or persons requiring notice.

*/s/ Michael Dell'Angelo*
Michael Dell'Angelo

**PLAINTIFFS' MOTION TO COMPEL**