# EXHIBIT 66
# -
# REDACTED VERSION OF
# ECF NO. 540-24

# EXHIBIT 20

**Exclusive Promotional and Ancillary Rights Agreement between Zuffa and TEI (Plaintiff Brandon Vera) (Dec. 7, 2009)**

## EXCLUSIVE PROMOTIONAL AND
## ANCILLARY RIGHTS AGREEMENT

**THIS EXCLUSIVE PROMOTIONAL AND ANCILLARY RIGHTS AGREEMENT** ("**Agreement**") is made as of the date set forth below ("**Effective Date**") by and between **ZUFFA, LLC**, a Nevada limited liability company d/b/a Ultimate Fighting Championship® ("**ZUFFA**") and **Truth Enterprises, Incorporated**, a **California** corporation ("**TEI**") who employs Brandon Vera ("**Fighter**").

RECITALS

A.      ZUFFA is in the business of, among other things, promoting mixed martial arts fighting competitions throughout the world under the trade name of Ultimate Fighting Championship® ("**UFC**"®) and desires to enter into an agreement with Fighter to be the exclusive promoter for Fighter's future bouts for a period of time, provided that **TEI** and Fighter grants certain ancillary rights to ZUFFA in perpetuity, as set forth herein; and

B.      Fighter is a professional mixed martial arts fighter and desires to enter into an agreement with ZUFFA providing for it to be the exclusive promoter for Fighter's future bouts for a period of time, and is willing to grant to ZUFFA certain ancillary rights in perpetuity, as set forth herein.

C.      ZUFFA and Fighter intend for this Agreement to specifically supersede Fighter's previous Exclusive Promotional and Ancillary Rights Agreement executed on or about January 7, 2009.  Additionally, ZUFFA and Fighter agree that upon execution of this Agreement, neither ZUFFA nor Fighter will have any rights or obligations under the previous agreement, except to the extent that the provisions therein specifically survive the term of that previous agreement, and to the extent that said terms do not conflict with the provisions and spirit and intent of this Agreement.

**NOW, THEREFORE,** in consideration of the foregoing, the agreements and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, ZUFFA and Fighter agree as follows:

ARTICLE I
INCORPORATION OF RECITALS

1.      The recitals set forth above are incorporated herein by this reference.

ARTICLE II
GRANT OF PROMOTIONAL RIGHTS

2.      **TEI** on behalf of Fighter hereby grants to ZUFFA the exclusive unrestricted worldwide right to secure, promote, arrange and present any and all mixed martial arts contests (individually, a "**Bout**" and collectively, "**Bouts**") to be engaged in by Fighter during the Term (defined below) and any Extension Term (defined below) ("**Promotional Rights**").

ARTICLE III
GRANT OF ANCILLARY RIGHTS / COLLECTIVE RIGHTS

3.1      **TEI** on behalf of Fighter hereby grants to ZUFFA the unrestricted worldwide right to use, edit, disseminate, display, reproduce, print, publish and make any other uses of the name, sobriquet, voice, persona, signature, likeness and/or biography (collectively, "**Identity**") of Fighter, and all persons associated with Fighter ("**Ancillary Rights**").

1

Fighter Corp_2009_v2

3.2     The Promotional Rights and Ancillary Rights shall be ZUFFA's sole property in perpetuity throughout the world, which ZUFFA shall hold free and clear from any and all claims of Fighter or anyone claiming through Fighter.  For the avoidance of doubt, the Ancillary Rights described herein shall survive even the death of the Fighter.

3.3     The Promotional Rights and Ancillary Rights are referred to collectively, where appropriate, as the "**Rights**."

3.4     The Rights include, but are not limited to, the following, which are all in perpetuity throughout the world:

      a.     The right to all site fees, live-gate receipts, advertising fees, sponsorship fees, and motion picture, all forms of radio, all forms of television (which whenever referred to herein shall include, without limitation, live or delayed, interactive, home or theater, pay, pay-per-view, satellite, closed circuit, cable, subscription, multi-point, master antenna, or other), telephone, wireless, computer, CD-ROM, DVD, any and all Internet applications, films and tapes for exhibition in any and all media and all gauges, including but not limited to video and audio cassettes and disks, home video and computer games, arcade video games, hand-held versions of video games, video slot machines, photographs (including raw footage, out-takes and negatives), merchandising and program rights, now or hereinafter invented, in connection with or based upon the UFC brand, the Bouts or activities pertaining to the Bouts, including but not limited to, training, interviews, press conferences, weigh-ins and behind-the-scenes footage for the Bouts (the "**Pre-Bout Events**"), post-fight interviews and press conferences (the "**Post-Bout Events**") and any parts thereof on a commercial, sustaining, theatrical or other basis, and by any and all means, methods and devices, whatsoever;

      b.     The right to sell, assign, lease, license, sublease, use or otherwise dispose of any and all of the Rights and the results of the exercise thereof, and to authorize, license and grant the right to exercise any of the Rights;

      c.     The right to do all things necessary for the full and complete use, exploitation and exercise of the Rights, including the right to promote and exploit all rights granted hereunder and the results of the exercise thereof, and the right to negotiate, enter into and perform any and all agreements relating to the Rights for the proper production and promotion of radio and television advertisements, publicity, and broadcasts relating to the UFC brand, the Bouts, the Pre-Bout Events and the Post-Bout Events;

      d.     All right, title and interest in and to any and all recordings, including without limitation, television, radio, Internet, wireless and motion picture films, and the video and audio cassettes of, or based upon the UFC brand, the Bouts, the Pre-Bout Events and the Post-Bout Events, and the right to secure in ZUFFA's name (or that of its nominee) copyright and other protection to the fullest extent available;

      e.     The unrestricted right to use, edit, disseminate, display, reproduce, print and/or publish in any media the Identity of Fighter for the purpose of advertising, promotion, publicity, merchandising and exploitation of the UFC brand, the Bouts, the Pre-Bout Events and Post-Bout Events, including the use of the Identity of Fighter in endorsements of any commercial product or service;

      f.     The unrestricted right to use, edit, disseminate, display, reproduce, print, publish and make any other uses of the Identity of Fighter in connection with the development, manufacturing, distribution, marketing and/or sale of any and all interactive devices, home video and computer games,

2

Fighter Corp_2009_v2

arcade video games, hand held versions of video games, video slot machines, CD-ROMS, DVDs, Internet applications, wireless, video and audio cassettes and disks, apparel, photographs, souvenirs, toys, merchandising tie-ups and advertisements, and any and all other similar type products, including the sleeves, jackets and packaging for such products, hereunder made by any method now known or hereafter to become known.  Additionally, Fighter and **TEI** acknowledge the existence of UFC-branded video games developed, being developed or to be developed by various companies, including, but not limited to, THQ, Inc., and the potential for a WEC-branded video game, and Fighter and **TEI** further acknowledge that the Rights granted herein to ZUFFA shall be <u>exclusive</u> with respect to any such video games, and any derivatives of such video games created by ZUFFA or its licensees and branded with UFC, Pride, WEC or any brand subsequently developed, owned or acquired by Zuffa or any of its agents or subsidiaries; and

g.     The non-exclusive right to use a three minute clip of the recording of any prior bout, including any non-ZUFFA/UFC bout, in which Fighter was a participant (to the extent that Fighter possesses the rights thereto or can reasonably obtain such rights), for the purpose of publicizing a Bout, which clip shall be provided to ZUFFA upon request therefore.

h.     The exclusive and unrestricted right to use the Identity of Fighter to exploit the UFC brand, its business activities, and the business activities of any networks, stations, sponsors and other users and exhibitors, for any purpose including, without limitation, any commercial purpose whatsoever including, but not limited to, product endorsement, whether related to the UFC, third-party sponsors or otherwise.

i.     The exclusive and unrestricted right to register Fighter (including any and all variants thereof) as one or more domain names for use on the World Wide Web (e.g., johnsmith.com, john_smith.org, j-smith.net, etc.) and the right to utilize and own such domain names in connection with the UFC brand, during the Term and without restriction, in whatever way ZUFFA selects. Notwithstanding the foregoing, ZUFFA is under no obligation to register Fighter or to in any way use such domain names.

## ARTICLE IV
## PROMOTION/EXCLUSIVITY

4.1     Each Bout shall be a mixed martial arts contest, one-on-one fight between Fighter and an opponent designated by ZUFFA, conducted pursuant to the rules and regulations of the athletic commission or official authority having jurisdiction over the Bout or ZUFFA pursuant to Section 4.7 ("**Athletic Commission**").  Fighter and ZUFFA shall comply with and be bound by the rules and regulations of the Athletic Commission.  For Bouts that occur in a jurisdiction or country without an Athletic Commission, the language contained in Section 4.7 shall control.

4.2     ZUFFA shall promote and Fighter shall participate in the minimum number of Bouts set forth in the Term section below.  For purposes hereof, ZUFFA shall be deemed to have complied with its obligations to promote any Bout if ZUFFA shall have made an offer to **TEI** and/or Fighter to promote a Bout in accordance with the provisions hereof and **TEI** and/or Fighter shall have refused to participate.  If a Bout is the undercard to a main event and the main event is canceled or postponed for any reason, the failure of such Bout to take place shall not be deemed non-performance by ZUFFA and ZUFFA shall not be liable for any Fighter's Purse associated therewith.

4.3     **TEI** shall ensure and Fighter shall cooperate and assist in the advertising, publicity, and promotion of (i) the Bouts, (ii) any and all rebroadcast of the Bouts in any media whatsoever, (iii) other UFC bouts, (iv) other UFC events and broadcasts, and (v) the sale of UFC merchandise, including making

3

Fighter Corp_2009_v2

appearances at such reasonable number of press conferences, interviews and other sponsorship and promotional activities (any of which may be telecast, broadcast, recorded and/or filmed) as ZUFFA may designate, without additional compensation therefore. For such promotional activities, ZUFFA will arrange and pay for Fighter's reasonable travel and hotel accommodations.

      4.4     All Bouts shall be on dates and at sites to be designated by ZUFFA, in its sole and absolute discretion.  If any Bout is postponed for any reason except ZUFFA's non-performance, the Bout Agreement applicable to such bout shall determine the rights of the parties and in addition thereto, the Term shall be extended, at ZUFFA's election, by a number of days equal to the number of days between the date originally scheduled for the Bout and the date on which the Bout occurs.

      4.5     During the Term, ZUFFA shall have the exclusive right to promote all of Fighter's bouts and Fighter shall not participate in or render his services as a professional fighter or in any other capacity to any other mixed martial art, martial art, boxing, professional wrestling, or any other fighting competition or exhibition, except as otherwise expressly permitted by this Agreement.

      4.6     Notwithstanding the foregoing, in the event Fighter is not then the UFC champion, Fighter is permitted, subject to the consent of ZUFFA, which may be granted or withheld in ZUFFA's sole discretion, to contract with other promoters or to engage in any mixed martial arts bout or fighting competition or exhibition promoted by other promoters ("**Other Bout**") during the Term provided (i) such Other Bout is not televised by any domestic or international television network, station, cable system, satellite or other provider; (ii) such Other Bout is scheduled for and takes place on a date which is more than sixty (60) days before or more than thirty (30) days after any non-championship Bout and more than ninety (90) days before or more than thirty (30) days after any championship Bout; (iii) a copy of any agreement for any Other Bout shall have been furnished to and approved by ZUFFA prior to its execution by **TEI** and/or Fighter; and (iv) a fully executed copy of any such agreement is provided to ZUFFA within five (5) days of execution by **TEI** and/or Fighter.  Except in compliance with the foregoing limited exception, **TEI** and/or Fighter shall not, during the Term, grant promotional or other rights which conflict with the Rights. Furthermore, **TEI** and/or Fighter expressly agrees that this Agreement shall be automatically extended for an additional one hundred twenty (120) days for each non-UFC promoted competition or exhibition that Fighter participates in, and any reference to the Term herein shall be deemed to include any such extension(s).

      4.7     Any and all Bouts that occur in a jurisdiction or country without an Athletic Commission shall be conducted pursuant to the statutes, rules and regulations of the State of Nevada in effect at the time of the Bout, including, but not limited to, the Unified Rules of Mixed Martial Arts (the "Nevada Rules"); for the protection of the health and safety of the Fighter, to promote fairness in the administration of the Bout, and to preserve the integrity of the sport of mixed martial arts.  In its sole discretion, ZUFFA may utilize the Nevada Rules in the oversight of any Bouts that occur under this Subsection 4.7.  Fighter may appeal any advisory opinion by ZUFFA regarding any violations of the Nevada Rules relating only to Bouts that occur in a jurisdiction or country without an official government mandated Athletic Commission to an independent third-party arbitrator or arbitration panel selected pursuant to the guidelines developed by the American Arbitration Association.  All costs and fees associated with an appeal taken pursuant to this Section shall be the exclusive responsibility of the Fighter.  Regardless of where a Bout occurs, in no event shall a Fighter have any right to appeal a decision by ZUFFA relating to the UFC Title or the UFC Championship belts.

/ / /

/ / /

4

Fighter Corp_2009_v2

ZFL-0003681

ARTICLE V
TERM

5.1     The duration of the Promotional Rights ("**Term**") shall commence on the Effective Date and end on the earlier of (i) Twenty-Six (26) months after the first bout promoted by Zuffa involving Fighter under this Agreement; or (ii) the date on which Fighter has participated in at least six (6) Bouts promoted by ZUFFA under this Agreement ("**Termination Date**"), unless terminated sooner or extended further pursuant to the provisions of this Agreement.

5.2     If, at the expiration of the Term, Fighter is then the UFC champion, the Term shall be automatically extended for a period commencing on the Termination Date and ending on the earlier of (i) one (1) year from the Termination Date; or (ii) the date on which Fighter has participated in three (3) bouts promoted by ZUFFA following the Termination Date ("**Extension Term**").  Any reference to the Term herein shall be deemed to include a reference to the Extension Term, where applicable.

5.3     The respective lengths of time to provide Fighter with the minimum number of Bouts enumerated in this Section 5 shall be extended for six (6) months or any period of time that Fighter is unable or unwilling to compete, whichever is greater.  Such extension shall include without limitation, any time periods when Fighter is disabled, sick or injured for any reason; incarcerated; suspended or revoked by an Athletic Commission, has his ability to travel restricted by a recognized governmental agency or is otherwise unable, unwilling or refuses to compete or train for a Bout for any reason whatsoever.

5.4     The expiration or earlier termination of the Term,  any Acceleration (as defined below), or the death or incapacity of the Fighter, shall not affect or terminate the grant of the Ancillary Rights or any of the other general or specific provisions of this Agreement, all of which shall survive any such expiration, termination, Acceleration, death or incapacity.

5.5     ZUFFA shall not be deemed in default of this Agreement to the extent that performance of its obligations are delayed or prevented by reason of any act of God, fire, natural disaster, war, riots, strike or labor difficulties, terrorism, power failure, other calamity or acts constituting force majeure, or any governmental or Athletic Commission enactment, determination or action, regulation or order. If there is an occurrence of a force majeure event or other bona fide action, ZUFFA may elect to suspend this Agreement for a period equal to the duration of the occurrence, and no compensation shall be paid or become due to Fighter during such suspended period.

ARTICLE VI
BOUT AGREEMENT AND STANDARD FIGHTER CONTRACT

6.     For each Bout, the parties shall execute and comply with the terms of a Bout Agreement ("**Bout Agreement**"), the standard fighter contract required by the Athletic Commission ("**Standard Fighter Contract**"), and any other contract required to be executed by law, the terms of which shall be consistent with the terms of this Agreement.  To the extent of any conflict between this Agreement and a Bout Agreement with respect to a Bout, the Bout Agreement shall control.

ARTICLE VII
COMPENSATION

7.1     Compensation to Fighter shall take the form of a "**Fighter's Purse**" and, if and only if Fighter is declared the winner of a Bout by the Athletic Commission, a "**Win Bonus**," each in the amounts as set forth below.

5

Fighter Corp_2009_v2

    a.     Fighter's Purse for the first Bout shall be Sixty Thousand Dollars (US $60,000.00), less all permissible or required deductions and withholding.  If and only if Fighter is declared the winner of the first Bout by the Athletic Commission, the Win Bonus for the first Bout shall be Sixty Thousand Dollars (US $60,000.00), less all permissible or required deductions and withholding.

    b.     If and only if Fighter is declared the winner of the first Bout, Fighter's Purse for the second Bout shall be Seventy Thousand Dollars (US $70,000.00), less all permissible or required deductions and withholding.  If and only if Fighter is declared the winner of the first Bout and the second Bout by the Athletic Commission, the Win Bonus for the second Bout shall be Seventy Thousand Dollars (US $70,000.00), less all permissible or required deductions and withholding.  If Fighter is declared the loser of the first Bout (and there is no Acceleration), Fighter's Purse and Win Bonus for the second Bout shall be the same as set forth in subsection (a) above.

    c.     If and only if Fighter is declared the winner of the first Bout and the second Bout, Fighter's Purse for the third Bout shall be Eighty Thousand Dollars (US $80 ,000.00), less all permissible or required deductions and withholding.  If and only if Fighter is declared the winner of the first Bout, the second Bout, and the third Bout by the Athletic Commission, the Win Bonus for the third Bout shall be Eighty Thousand Dollars (US $80,000.00), less all permissible or required deductions and withholding. If Fighter is declared the loser of the first Bout and the second Bout (and if there is no Acceleration), Fighter's Purse and Win Bonus for the third Bout shall be the same as set forth in subsection (a) above.  If Fighter is declared the winner of either the first Bout or the second Bout, but not both (and if there is no Acceleration) Fighter's Purse and Win Bonus for the third Bout shall be the same as set forth in subsection (b) above.

    d.     If and only if Fighter is declared the winner of the first Bout, the second Bout and the third Bout, Fighter's Purse for the fourth Bout shall be Ninety Thousand Dollars (US $90,000.00), less all permissible or required deductions and withholding.  If and only if Fighter is declared the winner of the first Bout, the second Bout, the third Bout and the fourth Bout by the Athletic Commission, the Win Bonus for the fourth Bout shall be Ninety Thousand Dollars (US $90,000.00), less all permissible or required deductions and withholding.  If Fighter is declared the loser of the first Bout, the second Bout and the third Bout (and if there is no Acceleration), Fighter's Purse and Win Bonus for the fourth Bout shall be the same as set forth in subsection (a) above.  If Fighter is declared the winner of only one of the first three Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the fourth Bout shall be the same as set forth in subsection (b) above.  If Fighter is declared the winner of two of the first three Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the fourth Bout shall be the same as set forth in subsection (c) above.

    e.     If and only if Fighter is declared the winner of the first Bout, second Bout, third Bout and the fourth Bout, Fighter's Purse for the fifth Bout shall be One Hundred Thousand Dollars (US $100,000.00), less all permissible or required deductions and withholding.  If and only if Fighter is declared the winner of the first Bout, the second Bout, the third Bout and the fourth Bout by the Athletic Commission, the Win Bonus for the fifth Bout shall be One Hundred Thousand Dollars (US $100,000.00), less all permissible or required deductions and withholding.  If Fighter is declared the loser of the first Bout, the second Bout, the third Bout and the fourth Bout (and if there is no Acceleration), Fighter's Purse and Win Bonus for the third Bout shall be the same as set forth in subsection (a) above.  If Fighter is declared the winner of one the first four Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the third Bout shall be the same as set forth in subsection (b) above.  If Fighter is declared the winner of two of the first four Bouts (and if there is no Acceleration), Fighters Purse and Win Bonus for the fifth Bout shall be the same as set forth in subsection (c) above.  If Fighter is declared the

6

Fighter Corp_2009_v2

ZFL-0003683

winner of three of the first of the first four Bouts (and if there is no Acceleration), Fighters Purse and Win Bonus for the fifth Bout shall be the same as set forth in subsection (d) above.

        f.     If and only if Fighter is declared the winner of the first Bout, second Bout, third Bout, the fourth Bout and the fifth Bout, Fighter's Purse for the sixth Bout shall be One Hundred Ten Thousand Dollars (US $110,000.00), less all permissible or required deductions and withholding.  If and only if Fighter is declared the winner of the first Bout, the second Bout, the third Bout, the fourth Bout and the fifth Bout by the Athletic Commission, the Win Bonus for the sixth Bout shall be One Hundred Ten Thousand Dollars (US $110,000.00), less all permissible or required deductions and withholding.  If Fighter is declared the loser of the first Bout, the second Bout, the third Bout, the fourth Bout, and the fifth Bout (and if there is no Acceleration) Fighter's Purse and Win Bonus for the sixth Bout shall be the same as set forth in subsection (a) above.  If Fighter is declared the winner of one of the first five Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the sixth Bout shall be the same as set forth in subsection (b) above.  If Fighter is declared the winner of two of the first five Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the sixth Bout shall be the same as set forth in subsection (c) above.  If Fighter is declared the winner of three of the first five Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the sixth Bout shall be the same as set forth in subsection (d) above.  If Fighter is declared the winner of four of the first five Bouts (and if there is no Acceleration) Fighter's Purse and Win Bonus for the sixth Bout shall be the same as set forth in subsection (e) above.

        7.2     ZUFFA shall pay Fighter's Purse and the Win Bonus, if applicable, within twenty-four (24) hours of the completion of each Bout, except that if Fighter tests positive for any Controlled Substance (defined below) in a post-fight drug test, payment will be subject to the authority of and ZUFFA shall make payments only in accordance with the recommendations of the Athletic Commission. ZUFFA may deduct or withhold from compensation any applicable tax (whether domestic or foreign), fee, or sum required or permitted to be deducted by law, and may offset against any such compensation any sums advanced to Fighter by ZUFFA or otherwise due from Fighter to ZUFFA.

        7.3     The Fighter's Purse and Win Bonus, together with the Incidentals (defined below) shall be the sole compensation due to or claimed by **TEI** and/or Fighter on account of this Agreement, the Rights, and Fighter's participation in any Bout or any activity related thereto.

        7.4     Any and all potential Fighter's Purses and, if applicable, Win Bonuses capable of being earned during the Extension Term shall be negotiated in good faith between the parties.  However, the parties expressly agree that such potential amounts are quantifiable and definite terms to this Agreement because each such Fighter's Purse and, if applicable, Win Bonus shall, at a minimum, be no less than the last Fighter's Purse and, if applicable, Win Bonus received by **TEI** and/or Fighter during the standard Term of this Agreement.

        7.5     Any advances shall be made in the sole discretion of ZUFFA, and may be subject to the prior approval of the Athletic Commission.

ARTICLE VIII
INCIDENTALS

        8.1     In addition to the Fighter's Purse and, if applicable, the Win Bonus, as provided for above, **TEI** on behalf of Fighter or Fighter shall be entitled to only the transportation, lodging, meals or meal allowances, and Bout tickets (collectively, "**Incidentals**") identified in the Bout Agreement. Such Incidentals shall not be less than, but shall be in lieu of, the Incidentals set forth herein.

7

Fighter Corp_2009_v2

a. For each non-championship Bout hereunder which Fighter participates in, ZUFFA shall provide a total of one (1) hotel or motel room and two (2) round-trip economy class airline tickets from Fighter's hometown to the site of the Bout for use by and transportation of Fighter and one (1) of Fighter's Affiliates ("**Fighter's Affiliates**"). Fighter's Affiliates shall include, but not be limited to, his managers, agents, trainers, seconds, sparring partners and other persons associated with Fighter who are connected with the Bouts.

b. For each championship Bout hereunder which Fighter participates in as the champion or the challenger for the championship, ZUFFA shall provide a total of two (2) hotel or motel rooms and three (3) round-trip economy class airline tickets from Fighter's hometown to the site of the Bout for use by and transportation of Fighter and two (2) of Fighter's Affiliates.

c. For all Bouts hereunder, Fighter shall arrive and check in to the lodging provided on the Training Commencement Date specified in the Bout Agreement, which may be up to eight (8) days prior to the date of the Bout ("**Training Commencement Date**"), and shall depart from and check-out of the lodging provided prior to the check-out time designated therefor on the day after the Bout ("**Departure Date**").

d. From the Training Commencement Date through the Departure Date, Fighter and one (1) of Fighter's Affiliates shall each be provided with either Fifty Dollars (US $50.00) cash per diem for meals, or at ZUFFA's discretion, meal vouchers for three (3) meals per day.

e. Lodging shall be provided only from the Training Commencement Date through the Departure Date. Fighter and Fighter's Affiliates shall be required to present valid credit cards upon registering at the hotel or motel, which shall be charged for any and all expenses beyond the cost of the room, and ZUFFA shall have no obligation for such additional expenses.

f. Fighter shall also be provided with four (4) tickets to each Bout hereunder, selection and location of which shall be determined by ZUFFA. If Fighter's Bout is the main event, Fighter shall receive tickets for seats located within ten (10) rows of the Octagon.

8.2 No other benefits, charges, expenses, or other incidentals of any kind (e.g., telephone charges, beverages, entertainment, gift shop items or other such benefits, charges and expenses) shall be provided by ZUFFA to **TEI**, Fighter or anyone associated with **TEI** and/or Fighter, and **TEI** and/or Fighter shall not be entitled to receive compensation in lieu of any unused or undesired Incidental.

ARTICLE IX
FIGHTER'S CONDUCT

9.1 **TEI** shall ensure Fighter shall conduct himself in accordance with commonly accepted standards of decency, social conventions and morals, and Fighter will not commit any act or become involved in any situation or occurrence or make any statement which will reflect negatively upon or bring disrepute, contempt, scandal, ridicule, or disdain to **TEI**, Fighter, the identity of **TEI**, the Identity of Fighter or any of Fighter's Affiliates, ZUFFA or any of its officers, managers, members, employees, or agents. Fighter's conduct shall not be such as to shock, insult or offend the public or any organized group therein, or reflect unfavorably upon any current or proposed sponsor or such sponsor's advertising agency, or any network or station over which a Bout is to be broadcast.

9.2 **TEI** shall ensure and Fighter and Fighter's Affiliates shall maintain a high standard of sportsmanship and conduct themselves in a professional manner prior to, during, and following each Bout.

8

Fighter Corp_2009_v2

9.3    **TEI** and/or Fighter shall not authorize or be involved with any advertising material or publicity materials that contain language or material which is generally considered to be obscene, libelous, slanderous or defamatory and will not violate or infringe upon, or give rise to any adverse claim with respect to, any common-law or other right whatsoever (including, but not limited to, any copyright, trademark, service mark, literary, dramatic, music or motion picture right, right of privacy or publicity, contract or moral rights of authors) of any person or entity.

9.4    **TEI** shall ensure and Fighter shall maintain his eligibility and keep in good standing any license required to participate in any Bout.

9.5    Fighter shall not use any controlled or banned substance, including but not limited to marijuana, cocaine, methamphetamine, steroids or any similar drugs ("**Controlled Substance**").  Fighter agrees that an Athletic Commission and/or ZUFFA may test Fighter for Controlled Substances and Fighter agrees to submit to any pre-Bout or post-Bout drug test as requested by an Athletic Commission and/or ZUFFA.

9.6    Fighter acknowledges that an Athletic Commission and/or ZUFFA may fine, suspend and/or impose other penalties, including but not limited to removing recognition from Fighter of any Championship Title, Status or Belt if Fighter tests positive for a Controlled Substance. Fighter shall be deemed to be in breach of this Section if Fighter tests positive for any Controlled Substance in any pre-Bout or post-Bout drug test.

ARTICLE X
INJURY OR RETIREMENT

10.1    If at any time during the Term, ZUFFA offers to promote a Bout for Fighter and **TEI**, and/or Fighter refuses to participate in or attempt to cancel or postpone such Bout for reason of a claimed injury or other medical disability, ZUFFA shall have the right, but not the obligation, to have Fighter examined by a medical doctor of its choice at ZUFFA's expense, and if ZUFFA so elects, Fighter shall appear for such examination on one (1) day's notice.

10.2    If at any time during the Term, Fighter claims to be injured or permanently or partially disabled, ZUFFA may, at its election, for each such injury or disability claimed by Fighter, (i) extend the Term for the period of such injury or disability or for a period of six (6) months, whichever is longer; (ii) declare that ZUFFA has satisfied its obligation to promote one (1) of the Bouts to be promoted by ZUFFA hereunder, without any compensation due to Fighter for said Bout; or (iii) provide **TEI** with notice of an Acceleration.

10.3    If at any time during the Term, Fighter decides to retire from mixed martial arts or other professional fighting competition, then ZUFFA may, at its election, (i) suspend the Term for the period of such retirement; (ii) declare that ZUFFA has satisfied its obligation to promote all future Bouts to be promoted by ZUFFA hereunder, without any compensation due to **TEI** and/or Fighter therefor; and/or (iii) elect to provide **TEI** with notice of an Acceleration.

ARTICLE XI
TERMINATION/REMEDIES

11.1    ZUFFA shall have the right, upon notice to **TEI**, to accelerate the Term and thereby terminate ZUFFA'S promotional and other obligations hereunder and under any Bout Agreement then in effect ("**Acceleration**") and to terminate Fighter's participation in any Bout, with Acceleration effective as

9

Fighter Corp_2009_v2

of the date of notice, and to withdraw recognition from Fighter of any Championship Title, Status and Belt, if:

        a.      Fighter fails, for any reason whatsoever (other than the injury or physical disability of Fighter) to engage in the minimum number of Bouts as offered by ZUFFA;

        b.      **TEI**, Fighter or any of Fighter's Affiliates breach, violate or are in default of any provision of this Agreement or any other agreement hereafter entered into between **TEI**, Fighter and ZUFFA;

        c.      Any of the representations or warranties of **TEI** and/or Fighter contained herein were false when made or are no longer true and correct;

        d.      Fighter is declared the loser of any mixed martial arts bout (whether promoted by ZUFFA or not) by the Athletic Commission or official authority having jurisdiction over the bout; or

        e.      Fighter's license to participate in bouts is suspended or revoked by an Athletic Commission.

    11.2    Acceleration shall be without further liability or obligation from ZUFFA to **TEI** and/or Fighter, except for the payment of any Fighter's Purse or Win Bonus, if applicable, or other amounts due for Bouts that have been completed prior to Acceleration.

    11.3    Acceleration shall not serve to affect or terminate any of the Ancillary Rights, and this Agreement shall survive an Acceleration and remain in full force and effect with respect thereto.

    11.4    **TEI** and Fighter acknowledge that his services as a professional fighter and the Ancillary Rights granted to ZUFFA herein are special, unique, extraordinary, irreplaceable and of peculiar value, and that in the event of **TEI** and/or Fighter's breach or threatened breach of this Agreement or any Bout Agreement, ZUFFA would suffer irreparable damage which could not be reasonably or adequately compensated by an award of damages.  In the event of such breach or threatened breach, ZUFFA shall be entitled, in addition to any other available remedy, to obtain equitable relief, including, but not limited to, an injunction against such breach and **TEI** Fighter waive the right to assert as a defense in any such action that ZUFFA has an adequate remedy at law.  To the extent that a bond is necessary to obtain an injunction, **TEI** and Fighter agree that the bond shall not exceed Five Hundred Dollars (US $500.00).

    11.5    If **TEI** believes in good faith that ZUFFA has materially breached any material provision of this Agreement, or has unreasonably failed or refused to perform its obligations hereunder, Fighter shall provide ZUFFA with written notice of such alleged breach and shall provide ZUFFA with at least ten (10) business days to cure such alleged breach.  If ZUFFA fails to cure the alleged material breach within ten (10) business days of receipt of **TEI**'s written notice, then and only then may **TEI** seek to terminate this Agreement and seek redress for any outstanding compensation owed to **TEI** and/or Fighter hereunder.  **TEI** expressly understands and agrees that his sole remedy for any alleged breach by ZUFFA shall be to seek payment for any remaining compensation due to **TEI** under Article VII, exclusive of any potentially applicable Win Bonuses, and in no event shall **TEI** and/or Fighter be entitled to any consequential, incidental, or punitive damages of any sort.

/ / /

/ / /

10

Fighter Corp_2009_v2

ARTICLE XII
INSURANCE

12.1 ZUFFA will provide health and accidental death insurance as required by the applicable Athletic Commission. **TEI** and Fighter hereby acknowledge that professional unarmed combat has the significant potential for serious injuries, and **TEI** and Fighter are knowingly and voluntarily assuming all such risks. Accordingly, except for the insurance benefits being provided by ZUFFA as described in the section, **TEI**, its officers, directors, shareholders, members, subsidiaries, affiliates, agents and assigns, Fighter, for himself, his heirs, assigns, executors, and administrators agree to be solely liable for and will bear the full and complete cost of any and all medical treatment and all other costs associated with any injuries resulting from any and all Fighter's services under this agreement. Furthermore, **TEI** and Fighter assume all risk of injuries sustained outside of a Bout and expressly understand and agree that any insurance policies as described in this section shall only provide coverage during the actual Bout(s) participated in by Fighter.

12.2    ZUFFA shall have the right, at its election, to obtain, at ZUFFA's cost and expense, life or other insurance upon Fighter, including, but not limited to, insurance against the failure of Fighter to appear and to participate in any Bout, for the benefit of ZUFFA, and in such amounts as ZUFFA may desire.  Neither **TEI**, Fighter, or any of Fighter's Affiliates shall have any right, title or interest in such insurance.  **TEI**, Fighter and Fighter's Affiliates shall cooperate with and assist ZUFFA in obtaining and maintaining such coverage, including submitting to physical or other examinations of Fighter and furnishing such information and medical records as may be required by any existing or proposed carrier.

ARTICLE XIII
RIGHT OF FIRST NEGOTIATION AND RIGHT TO MATCH

13.1    **TEI** and Fighter agree to negotiate exclusively with ZUFFA regarding the extension or renewal of the Term for a period of sixty (60) days following the expiration of the Term ("**Exclusive Negotiation Period**").  If ZUFFA and **TEI** and/or Fighter fail to reach agreement upon the terms and conditions of an extension of the Term, within the Exclusive Negotiation Period, **TEI** and/or Fighter may negotiate with any other promotional entity, subject to ZUFFA's right to match the terms of any agreement offered to **TEI** and/or Fighter by such other promotional entity (each, an "**Offer**") prior to the acceptance of the Offer by **TEI** and/or Fighter, as set forth below.

13.2    ZUFFA shall have the option to match the terms of any Offer for one (1) year following the expiration of the Exclusive Negotiation Period (the "**Matching Period**").  **TEI** and/or Fighter shall not accept any Offer or enter into a contract or agreement with any other promotional entity during the Matching Period without complying with this section.  Prior to acceptance of any Offer made during the Matching Period, **TEI** and/or Fighter shall first deliver to ZUFFA a written notice of all material terms and conditions of the Offer, including but not limited to the identity of the promotional entity.  Such notice shall constitute an exclusive, irrevocable offer (the "**ZUFFA Offer**") to contract with ZUFFA on the same terms and conditions. ZUFFA shall have fifteen (15) business days following receipt of the ZUFFA Offer in which to accept the ZUFFA Offer.  If ZUFFA does not accept the ZUFFA Offer, Fighter may then accept the Offer without modification during the ten (10) business day period following expiration of the ZUFFA Offer (the "**Contract Period**").  If the Offer is modified in any material way, such modification shall give rise to another option for ZUFFA to match the terms of the Offer, as modified.  If at any time during the Matching Period or the Contract Period, **TEI** and/or Fighter proposes to enter into a contract with a third party upon terms and conditions that are less favorable to **TEI** and/or Fighter than those contained in the ZUFFA Offer, then ZUFFA shall have the right to match such less favorable terms and conditions and enter into a contract with **TEI** and/or Fighter consistent therewith.

11

Fighter Corp_2009_v2

ARTICLE XIV
REPRESENTATIONS AND WARRANTIES

14.1.    **TEI** and Fighter represent and warrant to ZUFFA that:

a.    Fighter shall prepare and honestly compete to the best of Fighter's ability in the Bout and that there is no impairment to Fighter doing so;

b.    **TEI** and Fighter is free to enter into this Agreement and has not heretofore and will not hereafter enter into any contract, option, agreement or understanding, whether oral or written, which conflicts with the provisions hereof or the grant of Rights contained herein or which would or could interfere with **TEI** and/or Fighter's full and complete performance hereunder or the free and unimpaired exercise by ZUFFA of any of the Rights;

c.    there are no claims or arbitration, mediation, or litigation pending or threatened affecting **TEI** and/or Fighter that would or could interfere with **TEI** and/or Fighter's full and complete performance hereunder or the free and unimpaired exercise by ZUFFA of any of the Rights;

d.    The person executing this Agreement on behalf of **TEI** and Fighter are entering into this Agreement of their own free will, they are not subject to duress of any kind, and is not under the influence of any Controlled Substance and that **TEI** and/or Fighter knows of no disability, whether physical or mental, which would or could prevent Fighter from the full and complete performance of his obligations hereunder; and

e.    **TEI** and Fighter have had the opportunity to consult an attorney or other representative regarding this Agreement, and they appreciate the legal significance and consequences of signing this Agreement; and

f.    **TEI** is a corporation duly formed under the laws of the State of California, is in good standing, and that the person executing this Agreement on behalf of **TEI** is authorized to do so; and

g.    Fighter is either (i) a citizen of the United States and is not otherwise subject to any "backup" or other withholding of taxes or compensation specially applicable to those who are not citizens of the United States: or (ii) is not a citizen of the United States but has provided to ZUFFA in writing all information necessary to enable ZUFFA to comply with any such applicable withholding or other payment requirement.

h.    **TEI** and/or Fighter has obtained, and ZUFFA shall not be responsible to pay for in any way whatsoever, all clearances, licenses, uses, reuse fees, license fees, relating to the use and appearance of any creative expression, clothing apparel, sportswear and equipment, included but not limited to, trunks, robes, shoes, regalia or any other part of the costume, electronic information, digital information, wording, phrases, symbols, pictures, designs, print materials or other materials or information (including, without limitation, the trademarks, copyrights, personal privacy, property rights, names, voices, and likenesses of all and any persons, properties and businesses appearing therein (if any), and all components and elements thereof) displayed and exhibited by Fighter or any of Fighter's Affiliates during or at any Bouts, Pre-Bout Events or Post-Bout Events.

i.    **TEI** and/or Fighter has the full power to expressly and irrevocably transfer said rights described in Paragraph 14.1(h) above to ZUFFA, or ZUFFA's respective sponsors, successors, assigns, agents, directors, members, managers, officers, employees, co-producers and licensees, and warrants that the exercise of the rights granted herein will not infringe on any rights of any third party,

12

Fighter Corp_2009_v2

including but not limited to copyright, trademark, unfair competition, contract, defamation, privacy or publicity rights.

14.2.    ZUFFA represents and warrants to **TEI** and/or Fighter that:

a.    ZUFFA is a limited liability company duly formed under the laws of the State of Nevada; and that the person executing this Agreement on behalf of ZUFFA is authorized to do so; and

b.    ZUFFA is able to perform its promotional and payment obligations arising hereunder, and there are no claims or arbitration, mediation, or litigation pending or threatened affecting ZUFFA that would prevent ZUFFA from performing hereunder.

ARTICLE XV
ASSUMPTION OF THE RISK/WAIVER OF ALL CLAIMS

15.1    **TEI** and Fighter fully understand and agree that the professional sport of mixed martial arts is an inherently and abnormally dangerous activity that can result in severe and permanent physical injury, including but not limited to irreversible neurological trauma, disability, and/or death.  **TEI** and Fighter represent that Fighter is a seasoned professional in the sport of mixed martial arts, and Fighter has knowingly evaluated the inherent risks, foreseen and unforeseen**,** in this dangerous sport and represents and declares that he is physically, mentally, emotionally and intellectually willing and able to accept, and does hereby clearly, unambiguously and explicitly accept, all risks, foreseen and unforeseen**,** associated with participating in the sport and the Bouts.

15.2    In consideration for the opportunity to participate in the Bouts, and with full knowledge and complete assumption of all the risks, **TEI**, its officers, directors, shareholders, members, subsidiaries, affiliates, agents and assigns, Fighter, for himself, his heirs, assigns, executors and administrators ("**Releasing Parties**") hereby irrevocably agrees that the Releasing Parties will not sue or claim against ZUFFA and each of its respective parents, subsidiary entities, affiliates, sponsors, successors and assigns, and the respective directors, officers, members, managers, employees, agents, contractors, partners, shareholders and representatives, in their individual, personal and representative capacities for each of the foregoing entities ("**Released Parties**") for any injury, illness, damage, loss or harm to Fighter or Fighter's property, or Fighter's death, howsoever caused, resulting or arising out of or in connection with Fighter's preparation for, travel for, participation and appearance in any UFC promotional events, the Bouts, the Pre-Bout Events and the Post-bout Events or any activities associated therewith.

15.3    In consideration for the opportunity to participate in the Bouts, and with full knowledge and complete assumption of all risks, the Releasing Parties hereby forever voluntarily release, discharge, waive and relinquish any and all, past, present and future, claims and causes of action, specifically including any claims based on negligence or gross negligence, that they may have against the Released Parties, as the result of any injury, illness, damage, loss or harm to Fighter or Fighter's property, or Fighter's death, howsoever caused, resulting or arising out of or in connection with Fighter's preparation for, travel for, participation and appearance in any UFC promotional events, the Bouts, the Pre-Bout Events and the Post-bout Events or any activities associated therewith. Furthermore, the Releasing Parties hereby irrevocably and unconditionally consent and agree that the health insurance and accidental death proceeds and benefits provided by ZUFFA hereunder shall be the only benefits the Releasing Parties may claim or receive for any injury, including death, relating to any and all of Fighter's services under this Agreement.

/ / /

13

Fighter Corp_2009_v2

CONFIDENTIAL                                                                                          ZFL-0003690

ARTICLE XVI
INDEMNIFICATION

16.    **TEI**  and Fighter shall indemnify, defend and hold harmless ZUFFA, its subsidiaries, affiliates and sponsors, and each of their members, managers, directors, officers, employees, representatives, agents and contractors from and against any claims, actions, proceedings, expenses (including attorneys' fees of counsel of indemnified party's choice, as and when incurred) and damages arising from or relating to any negligent or intentional acts or omissions by **TEI**, Fighter or any of Fighter's Affiliates or by the actual or claimed breach of this Agreement or any Bout Agreement by **TEI**, Fighter or any of Fighter's Affiliates or the inaccuracy of any of **TEI** and/or Fighter's representations, warranties or covenants contained herein or within any Bout Agreement.

ARTICLE XVII
PROHIBITION ON USE OF
INTELLECTUAL PROPERTY RIGHTS

17.1    Unless Fighter receives prior written approval from ZUFFA, Fighter shall not utilize any of ZUFFA's intellectual property rights, including, but not limited to, the names and marks "Ultimate Fighting Championship," "UFC," the "Octagon," "Ultimate Fighting," "Ultimate Fighter," and any logos, pictures or other representations of ZUFFA's intellectual property.  Without limiting the scope of this prohibition, Fighter expressly agrees that he may not refer to himself as a "UFC Champion"; "former UFC Champion"; "UFC Star"; "UFC Superstar"; "UFC Fighter" or utilize any of ZUFFA's intellectual property in describing or referring to himself without the express written consent of ZUFFA.  Further, Fighter expressly agrees to not use a UFC championship belt without the prior written approval of ZUFFA, and further agrees that any such belt he obtains is on loan and will at all times remain the property of ZUFFA. Upon ZUFFA's written request, the belt must be returned within forty-eight (48) hours to ZUFFA.  Additionally, Fighter expressly agrees that ZUFFA is not a sanctioning organization and Fighter does not possess and cannot assert any property right or similar legal interest in the UFC Title or in being the UFC Champion.

17.2    Fighter shall not utilize the intellectual property rights of any of ZUFFA's sponsors including, but not limited to, the intellectual property rights of iN DEMAND, L.L.C. and its names and marks "iND" and "iN DEMAND", and any logos, pictures or other representations of such intellectual property.

ARTICLE XVIII
ASSIGNMENT

18.1    ZUFFA shall have the absolute right to assign, license, or transfer any or all of the rights granted to it hereunder, including, but not limited to, the right to co-promote any Bout in association with any one or more persons or entities of its choosing.  ZUFFA may assign any of its respective obligations hereunder without **TEI**'s consent.

18.2    The rights and obligations of Fighter arising from this Agreement and any Bout Agreement are personal to Fighter and neither the benefits nor the duties of Fighter hereunder may be assigned, pledged or transferred for any reason.

/ / /

/ / /

14

Fighter Corp_2009_v2

CONFIDENTIAL

ZFL-0003691

ARTICLE XIX
OTHER ACTIVITIES OF ZUFFA

19.     Nothing herein shall prevent ZUFFA from engaging in promotional activities for any other professional fighter, including others in the same weight class as Fighter, or any other activities, whether related or unrelated to the subject matter of this Agreement.

ARTICLE XX
INTENT IN SIGNING

20.     **TEI** and Fighter acknowledge that their execution of this Agreement is for the purpose of obtaining the promotional services of ZUFFA upon the terms and conditions of this Agreement and that **TEI** and/or Fighter have not been required to sign this Agreement or to grant any of the Rights as a condition precedent to Fighter's participation in any professional mixed martial arts contest against another fighter who has granted promotional or ancillary rights to ZUFFA.

ARTICLE XXI
INDEPENDENT CONTRACTOR STATUS

21.     Nothing contained in this Agreement shall be construed to make **TEI** an affiliate, subsidiary or partner with ZUFFA, or that Fighter is an employee of ZUFFA or to appoint ZUFFA as Fighter's agent, and ZUFFA shall have no financial interest (other than rights or obligations to withhold or offset) in compensation payable to **TEI** in exchange for Fighter engaging in any Bout hereunder.  It is intended that **TEI** and Fighter shall remain an independent contractor, responsible for his own actions expenses and any local, state, federal or international taxes, including, but not limited to, the engagement, discharge, benefits and costs of all of Fighter's Affiliates, and training facilities, equipment, professional memberships, sanctioning fees, medical expenses, social security taxes, Federal Insurance Contributions Act (FICA) taxes, and Federal Unemployment Tax Act (FUTA) taxes.

ARTICLE XXII
COMMERCIAL IDENTIFICATION

22.1    **TEI** and Fighter covenant and agree that no wording, symbols, pictures, designs, names or other advertising or informational material (i) for any beer, alcohol, beverage company, tobacco, casino or gaming company, media company (including, but not limited to, HBO, ABC, SET, FOX, ESPN and any Internet related company); (ii) of any sponsor in conflict or competition with ZUFFA or any of ZUFFA's sponsors; (iii) of any sponsor causing injury to the reputation of ZUFFA or ZUFFA's sponsors and/or their respective officers and owners; or (iv) which has not been pre-approved in writing by ZUFFA and iN DEMAND, L.L.C. shall appear on the trunks, gloves, robe, shoes, regalia or any other part of the costume or the body (including by use of temporary or henna tattoos) of Fighter or any of Fighter's Affiliates during or at any Bouts, Pre-Bout Events or Post-Bout Events.  Fighter further covenants and agrees to only use the gloves approved and supplied by ZUFFA.

22.2    Notwithstanding the foregoing, ZUFFA shall have the right to include any advertising or other informational material of ZUFFA, ZUFFA's sponsors or other entities designated by ZUFFA on the trunks, gloves, robe, shoes, regalia or any other part of the costume of Fighter or any of Fighter's Affiliates during or at any Bouts, Pre-Bout Events or Post-Bout Events.

22.3    For television purposes, Fighter must be clearly distinguishable. Therefore, Fighter shall provide one (1) pair of dark-colored trunks and one (1) pair of light-colored trunks for each Bout. If it is

15

Fighter Corp_2009_v2

ZFL-0003692

necessary to distinguish Fighter from his opponent, ZUFFA shall have sole discretion to require Fighter to wear either the dark-colored or light-colored trunks.

ARTICLE XXIII
CONFIDENTIALITY

23.1   **TEI** and/or Fighter shall not disclose to any third party (other than his employees, agents, and professional consultants, in their capacity as such, on a need-to-know basis), any information with respect to the terms and provisions of this Agreement or any Bout Agreement except: (i) to the extent necessary to comply with law or the valid order of a court of competent jurisdiction, in which event **TEI** and/or Fighter shall notify ZUFFA as promptly as practicable (if possible, prior to making such disclosure) and shall seek confidential treatment of such information, (ii) as part of normal reporting or review procedure to **TEI** and/or Fighter's lenders, auditors, attorneys and similar professionals, provided that such lenders, auditors and attorneys and similar professionals agree to be bound by the provisions of this section; and (iii) in order to enforce **TEI** and/or Fighter's rights pursuant to this Agreement or any Bout Agreement, in which case **TEI** and Fighter agree to enter into a confidentiality agreement for all such proceedings.

23.2   ZUFFA shall have the sole right to determine the timing and content of and to make any press announcements and other public statements regarding this Agreement.

23.3   ZUFFA shall have the sole right to file this Agreement with any applicable athletic or fighting commission and world sanctioning bodies.

ARTICLE XXIV
FURTHER ASSURANCES

24.1   **TEI** and/or Fighter shall execute any and all additional documents or instruments necessary or desirable to effectuate the provisions of this Agreement, including, but not limited to, Bout Agreements and Standard Fighter Contracts or any other document required by ZUFFA, the Athletic Commission, any local governmental authority with jurisdiction over any Bout and the world organization(s) sanctioning any Bout, if applicable.  No party hereto shall take any action or fail to take any action which action or failure shall frustrate the purposes of this Agreement and the benefits contemplated hereby.

24.2   **TEI** and/or Fighter shall be solely responsible for obtaining all necessary documentation, including any work visas, to lawfully permit Fighter and Fighter's Affiliates to participate in all Bouts. **TEI** shall provide copies of all such documentation to ZUFFA no less than thirty (30) days prior to any Bout.  **TEI**  and/or Fighter's failure to obtain and/or provide such documentation shall constitute grounds for ZUFFA, at its election, to (i) obtain the required documentation and deduct the costs thereof from Fighter's Purse, (ii) cancel Fighter's participation in the Bout, without any compensation due to **TEI** and/or Fighter for said Bout, and extend the Term for a period four (4) months; (iii) declare that ZUFFA has satisfied its obligation to promote one (1) of the Bouts to be promoted by ZUFFA hereunder, without any compensation due to **TEI** and/or Fighter for said Bout; or (iv) provide **TEI** with notice of an Acceleration.

ARTICLE XXV
NOTICES

25.1   Any notice or other communications given or sent pursuant to this Agreement shall be in writing and shall be deemed given when (i) personally delivered; (ii) delivered by confirmed facsimile

16

Fighter Corp_2009_v2

ZFL-0003693

transmission; (iii) three (3) days following the date such notice is mailed postage paid by registered or certified mail, return receipt requested; or (iv) to Fighter, delivered by confirmed electronic means (electronic mail), to the respective addresses indicated below or any address subsequently provided to Zuffa:

To ZUFFA:
Dana White, President
ZUFFA, LLC
2960 W. Sahara Ave.
Las Vegas, Nevada 89102

To Truth Enterprises, Incorporated:
Brandon Vera

E-mail: bvera8@gmail.com

With a copy to:
Ike Lawrence Epstein
Executive Vice President & General Counsel
ZUFFA, LLC
2960 W. Sahara Ave.
Las Vegas, Nevada 89102

With a copy to:
Matt Stansell

E-mail: matt@blacklinefightgroup.com

25.2    Any party may change its address for notice purposes by providing notice of such change of address in accordance with this section.

## ARTICLE XXVI
## CHOICE OF LAW/EXCLUSIVE JURISDICTION AND VENUE

26.1    This Agreement has been delivered at and shall be deemed to have been made at Las Vegas, Nevada, and shall be interpreted, and the rights and liabilities of the parties hereto determined, in accordance with the laws of the State of Nevada.

26.2    ZUFFA and **TEI** and Fighter agree that the exclusive jurisdiction and venue for the resolution of any dispute arising from or relating to this Agreement shall lie in the Eighth Judicial District Court for the State of Nevada, sitting in Las Vegas, Nevada. Each of the parties hereto irrevocably consents to the service of process in any such proceeding by the mailing of a copy of the summons and complaint by first-class mail to such party in accordance with the notice provisions of this Agreement.

## ARTICLE XXVII
## MISCELLANEOUS PROVISIONS

27.1    If any provision of this Agreement is found to be illegal, invalid, or unenforceable as to any circumstance, such finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. Rather, the offending provision shall be considered modified so that it becomes legal, valid and enforceable, or, if not capable of such modification, shall be considered deleted. The illegality, invalidity, or unenforceability of any provision shall not affect the legality, validity, or enforceability of any other provision of this Agreement.

27.2    No waiver by any party of any breach or default hereunder shall be deemed to be a waiver of any preceding or subsequent breach or default. All waivers must be in writing, specify the breach or default concerned and be signed by the party against whom the waiver is sought to be enforced.

27.3    In the event either party engages counsel in connection with the enforcement or interpretation of this Agreement or any provision hereof or the resolution of any dispute arising from or

17

Fighter Corp_2009_v2

CONFIDENTIAL                                                                                                          ZFL-0003694

related to this Agreement, the prevailing party shall be entitled to recover from the other party its attorneys' fees and costs, regardless of whether or not an action is filed.

27.4    The provisions of this Agreement are for the exclusive benefit of the parties hereto and their permitted successors and assigns, and no third party shall be a beneficiary of or have any rights under this Agreement, regardless of whether or not such third party is referred to herein.

27.5    Other than any Bout Agreement or Standard Fighter Contract which may be entered into by the parties pursuant to the terms of this Agreement, this Agreement sets forth and integrates the entire understanding between **TEI**, Fighter and ZUFFA, and supersedes any and all prior or contemporaneous written or oral agreements or representations between the parties with respect to the subject matter hereof.

27.6    This Agreement may not be altered, amended or discharged, except by a subsequent writing signed by the parties hereto.

27.7    This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same instrument. Facsimile signatures shall be as effective as originals.

27.8    Descriptive headings of this Agreement are inserted for convenience only and do not constitute a part of this Agreement and shall not be considered for purposes of its interpretation.  The parties agree that they have equally participated in the negotiation of the terms and conditions in this Agreement, and therefore any ambiguities shall be resolved without reference to which party may have drafted all or any provision herein.

ARTICLE XXVIII
MEDICAL TESTING

28.    FIGHTER SHALL COMPLETE A FULL PHYSICAL MEDICAL EXAMINATION AND UNDERGO TESTING AND RECEIVE AFFIRMATIVE CLEARANCE THEREFROM PRIOR TO EACH BOUT INCLUDING, BUT NOT LIMITED TO THE FOLLOWING: CBC, HEPATITIS B, HEPATITIS C, HIV, RH AND BLOOD TYPE, RPR, PT, PTT, URINALYSIS WITH DRUG SCREENING, EKG, CT SCAN, MRI, DIALATED OPHTHALMOLOGICAL EXAM, AND SUCH OTHER TESTING AS ZUFFA OR THE ATHLETIC COMMISSION MAY REQUIRE.   THE MEDICAL EXAMINATION SHALL BE PERFORMED BY A NEUTRAL MEDICAL SERVICE PROVIDER DURING THE THIRTY (30) DAY PERIOD IMMEDIATELY PRECEDING THE DATE OF EACH BOUT.  THE REPORT OF THE MEDICAL EXAMINATION OF FIGHTER CONTAINING THE RESULTS OF THE EXAMINATION AND TESTS SHALL BE DELIVERED TO ZUFFA NO LESS THAN FOURTEEN (14) DAYS PRIOR TO ANY BOUT AND MUST NOT CONTAIN ANY

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

18

Fighter Corp_2009_v2

ZFL-0003695

RESTRICTIONS ON FIGHTER'S ABILITY TO COMPETE. ALL COSTS ASSOCIATED WITH THE
MEDICAL EXAMINATION AND TESTS SHALL BE PAID BY FIGHTER.

      **IN WITNESS WHEREOF**, the parties have executed this Agreement as of the dates set forth
below, the later of which shall be the Effective Date of this Agreement.

**ZUFFA, LLC**

Signature: _____
    President

Printed Name: _Dana White_

Title: _____President_____

Date: DEC 0 7 2009

Truth Enterprises, Incorporated:

Signature: _____

    _Brandon Vera_
    Print Name

    _____
    Title

Tax ID No. _____

Date: _____

**APPROVED BY:**

Signature: _____
    Ike Lawrence Epstein
    Executive Vice President and General Counsel

**FIGHTER**

Signature: _Brandon Vera_

Printed Name: _Brandon Vera_

Social Security No.: ███████

Passport No.: _N/A_

Passport Expiration Date: _N/A._

Date: _12-3-09_

19

Fighter Corp 2009 v2

CONFIDENTIAL

ZFL-0003696