# EXHIBIT 68
# -
# REDACTED VERSION OF
# ECF NO. 540-49

# EXHIBIT 45

**Exclusive Commercial Rights Agreement between Plaintiff Vera and One Fighting Championship**

07/16/2014  13:34  6194217674            THEUPSSTORE                    PAGE  02/29

**PRIVATE & CONFIDENTIAL**


**BETWEEN**


**ONE FIGHTING CHAMPIONSHIP**
(the "Company")


**AND**


**Brandon Vera**
(the "Fighter")


# EXCLUSIVE COMMERCIAL RIGHTS AGREEMENT

CONFIDENTIAL                                                    LEPLAINTIFFS-0042863

07/16/2014  13:34   6194217674              THEUPSSTORE                    PAGE  05/29

## CONTENTS

| CLAUSE | | PAGE |
|---|---|---|
| 1. | DEFINITIONS & INTERPRETATION | 1 |
| 2. | PROMOTIONAL AND OTHER RIGHTS | 4 |
| 3. | PARTICIPATION IN MATCHES | 6 |
| 4. | TERM | 7 |
| 5. | FIGHTER'S COMPENSATION | 8 |
| 6. | GENERAL OBLIGATIONS OF THE FIGHTER | 8 |
| 7. | COMMERCIAL IDENTIFICATION PROHIBITION | 9 |
| 8. | ASSUMPTION OF RISK AND INDEMNITY | 10 |
| 9. | INSURANCE AND MEDICAL EXAMINATIONS | 10 |
| 10. | INJURY OR RETIREMENT | 11 |
| 11. | TERMINATION | 11 |
| 12. | RIGHT OF FIRST DEALING AND RIGHT TO MATCH | 13 |
| 13. | INTELLECTUAL PROPERTY | 13 |
| 14. | CONFIDENTIALITY | 14 |
| 15. | REPRESENTATIONS AND WARRANTIES | 15 |
| 16. | COMPANY'S RIGHT TO PROMOTE OTHER FIGHTERS | 16 |
| 17. | PREVALENCE OF AGREEMENT | 16 |
| 18. | FORCE MAJEURE | 16 |
| 19. | PARTNERSHIP | 16 |
| 20. | ENTIRE AGREEMENT | 16 |
| 21. | INDULGENCE, WAIVER ETC | 17 |
| 22. | CONTINUING EFFECT OF AGREEMENT | 17 |
| 23. | ASSIGNMENT | 17 |
| 24. | AGREEMENT TO BIND SUCCESSORS AND ASSIGNS | 17 |
| 25. | FURTHER ASSURANCE | 17 |
| 26. | REMEDIES | 17 |
| 27. | COSTS AND EXPENSES | 18 |
| 28. | SEVERABILITY OF PROVISIONS | 18 |
| 29. | NOTICES | 18 |
| 30. | COUNTERPARTS | 19 |
| 31. | CONTRACTS (RIGHTS OF THIRD PARTIES) ACT | 19 |
| 32. | GOVERNING LAW AND JURISDICTION | 19 |
| SCHEDULE 1 – | | |
| | SCHEDULE OF PARTICULARS | 20 |

CONFIDENTIAL

LEPLAINTIFFS-0042864

## EXCLUSIVE COMMERCIAL RIGHTS AGREEMENT

THIS AGREEMENT IS MADE ON _____ July 10, 2014 _____

**BETWEEN:**

1.    **ONE FIGHTING CHAMPIONSHIP** a company established in Singapore with its
      registered address at 1 Raffles Quay #25-00, Singapore 048583 (the "**Company**"); and

**AND**

2.

**NAME OF FIGHTER**           Brandon Vera ) president of Truth Enterprise

Passport/NRIC No.            **REDACTED**

**Address:**

**WHEREAS:**

(A)   The Company is in the business of, *inter alia*, organising and promoting mixed martial arts
      fighting competitions in various countries around the world under the trade name of "ONE
      Fighting Championship" ("**ONE FC**").

(B)   The Fighter is a professional mixed martial arts exponent and competes, and/or intends to
      compete, in various ONE FC competitions, matches, contests, bouts and tournaments to be
      promoted by the Company (collectively referred to herein as "**Matches**" and each a
      "**Match**").

(C)   The Fighter agrees to appoint the Company as the Fighter's sole and exclusive promoter for
      all of the Fighter's future Matches during the Term (as defined herein), and to grant the
      Commercial Rights (as defined herein) in favour of the Company, upon the terms and
      conditions of this Agreement.

**IT IS AGREED** as follows:

## 1.    DEFINITIONS & INTERPRETATION

1.1   In this Agreement, unless the subject or context otherwise requires the following words and
      expressions shall have the following meanings:

      "**Ancillary Rights**" has the meaning ascribed to it in Clause 2.1(b);

      "**Associated Events**" means all events associated with the Matches and other ONE FC events
      (whether organised solely or in conjunction with a third party or any of the Company's

1

*ONE FC – Fighter's Agreement*

CONFIDENTIAL                                                        LEPLAINTIFFS-0042865

Affiliates), including without limitation pre-Match or off-season training sessions, weigh-ins, interviews and press conferences;

"**Business Day**" means a day (other than a Saturday, Sunday or gazetted public holiday in Singapore) when banks are open for banking business in Singapore;

"**Commercial Rights**" has the meaning ascribed to it in Clause 2.2;

"**Company's Affiliates**" has the meaning ascribed to it in Clause 8.1;

"**Confidential Information**" has the meaning ascribed to it in Clause 14.1;

"**Controled Substances**" means any substances controlled or banned under applicable laws or designated as such by the Company from time to time, including without limitation unlawful performance-enhancement substances, narcotics, mind-altering substances, methamphetamines, steroids and other similar drugs;

"**Effective Date**" has the meaning ascribed to it in Clause 2;

"**Electronic Medium**" shall include without limitation digital, optical and magnetic information storage and retrieval platforms or systems (including without limitation videos, floppy disk-based software, CD-ROM, DVD-ROM, DVD-RAM, interactive software, compact discs, Blu-ray discs, silicon or memory chip and any other similar or dissimilar offline platforms or systems), online electronic or other transmission (including without limitation satellite or microwave transmission, video-on-demand, near-video-on-demand and the Internet), whether now known or subsequently developed;

"**Exclusivity Period**" has the meaning ascribed to it in Clause 12.2;

"**Fighter's Affiliates**" has the meaning ascribed to it in Clause 8.2;

"**Fighter's Offer**" has the meaning ascribed to it in Clause 12.3;

"**Match**" and "**Matches**" have the meanings ascribed to them in Recital (B);

"**Matching Period**" has the meaning ascribed to it in Clause 12.3;

"**Merchandising Rights**" has the meaning ascribed to it in Clause 2.1(c);

"**ONE FC**" has the meaning ascribed to it in Recital (A);

"**Parties**" shall refer to the Company and the Fighter collectively and "**Party**" shall refer to either one of them, as the case may be;

"**Prize Money**" has the meaning ascribed to it in Clause 5.1;

"**Production Materials**" means all images, pictures, stills, photographs, portraits, caricatures, performances, audio and audio-visual recordings produced by the Company (whether solely or in conjunction with a third party or any of the Company's Affiliates) in connection with the use, exploitation and exercise of the Commercial Rights;

"**Profile**" has the meaning ascribed to it in Clause 2.1(b);

"**Promotional Rights**" has the meaning ascribed to it in Clause 2.1(a);

2

CONFIDENTIAL

LEPLAINTIFFS-0042866



"**Proprietary Information**" means (i) any information which is proprietary and confidential to a party; (ii) any of the trade secrets or confidential operations, processes or inventions carried on or used by a party; (iii) any information concerning or relating in any way whatsoever to the organisation, business, finances, transactions, dealings or affairs of a party (including without limitation its future plans and targets); (iv) secret or confidential information which relates to any party's clients' or customers' transactions or affairs; (v) any party's technology, designs, documentation, manuals, budgets, financial statements or information, accounts, customer lists, marketing studies, and any drawings, notes, memoranda and the information contained therein; and (vi) information and material which is disclosed in confidence, is marked "confidential", "proprietary" or the substantial equivalent thereof or is by its nature intended to be exclusively for the knowledge of its recipient alone;

"**Rules**" has the meaning ascribed to it in Clause 3.1;

"**Singapore Dollar(s)**" and the symbol "S$" mean the lawful currency of Singapore;

"**Taxes**" means all forms of taxation, including without limitation income tax, stamp duty, custom and other import or export duties, value-added tax (including goods and services tax), withholding tax, corporate tax and levies and all penalties, charges, costs and interest relating to any such taxation;

"**Term**" has the meaning ascribed to it in Clause 4.1; and

"**Third Party Offer**" has the meaning ascribed to it in Clause 12.2.

1.2    Any reference in this Agreement to a statutory provision shall include that provision and any regulations made in pursuance thereof as from time to time modified or re-enacted, whether before or after the date of this Agreement, so far as such modification or re-enactment applies or is capable of applying to any transactions entered into prior to completion and (so far as liability thereunder may exist or can arise) shall include also any past statutory provision or regulation (as from time to time modified or re-enacted) which such provision or regulation has directly or indirectly replaced.

1.3    In this Agreement, unless otherwise specified:

    (a)    the headings in this Agreement are inserted for convenience only and shall be ignored in construing this Agreement;

    (b)    expressions in the singular shall include the plural and *vice versa* and expressions in the masculine shall include, where applicable, the feminine and neuter genders and *vice versa*;

    (c)    the expression "**affiliate**" means with respect to any person, any other person directly or indirectly controlling, controlled by, or under common control with, such person. The expression "**control**" (including its correlative meanings, "controlled by", "controlling" and "under common control with") shall mean, with respect to a corporation, the right to exercise, directly or indirectly, more than 50 per cent. of the voting rights attributable to the shares of the controlled corporation or to control the composition of the board of directors or to direct the board or management or business activities of such corporation and, with respect to any person other than a corporation, the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of such person;

    (d)    the words "**written**" and "**in writing**" include any means of visible reproduction;



3

CONFIDENTIAL                                                                                    LEPLAINTIFFS-0042867

BM V

(e)    references to "**Clauses**", "**Recitals**" and "**Schedules**" are, respectively, to the clauses of, and the recitals and schedules to, this Agreement. The Recitals and the Schedules to this Agreement shall form an integral part of, and shall be deemed to be incorporated into, this Agreement;

(f)    any reference to "**day**" means a period of 24 hours ending at 12 midnight and any reference to "**person**" shall include any individual, partnership, joint venture, corporation, limited liability company, trust, association, government, governmental agency or department or any other entity;

(g)    all references to the Parties shall, unless contrary to the context and meaning thereof, be deemed to include their respective successors and permitted assigns;

(h)    references in this Agreement to anything which any Party is required to do or not to do shall include its acts, defaults and omissions, whether direct or indirect, on its own account, or for or through any other person, and those which it permits or suffers to be done or not done by any other person; and

(i)    references to any agreement or document including this Agreement shall include such agreement or document as amended, modified, varied or supplemented from time to time.

## 2.    PROMOTIONAL AND OTHER RIGHTS

2.1    In consideration of the mutual undertakings contained in this agreement, and with effect from the date specified in item 1 of Schedule 1 ("**Effective Date**"), the Fighter hereby grants to the Company and its affiliates the irrevocable, exclusive and worldwide right to:

(a)    arrange, manage or secure for and on behalf of the Fighter, and advertise, publicise or otherwise promote the Fighter in relation to or in connection with, any and all Matches and Associated Events in which he shall participate during the Term ("**Promotional Rights**");

(b)    use, publish, broadcast, disseminate, display, reproduce, edit and make any other uses of the name (including any sobriquets, stage names or professional names), silhouette, image, likeness, picture, still, photograph, portrait, caricature, performance, recording, audio and visual representations, voices (or facsimile thereof) autograph and/or biographical information (collectively referred to herein as the "**Profile**") of the Fighter (such rights being referred to herein as the "**Ancillary Rights**"); and

(c)    manufacture, distribute or sell goods and services depicting or decorated with the Fighter's Profile, including without limitation brochures, posters, toys, games, computer/video/electronic games or other interactive software, souvenirs, novelties, books, records, videos, fabrics, apparel, food, drinks and similar goods and through premiums and promotions containing or embodying or exploiting such Profile ("**Merchandising Rights**"). The Ancillary Rights and Merchandising Rights granted in favour of the Company shall, for the avoidance of doubt, survive the death of the Fighter and shall be binding upon his successors, heirs and personal representatives.

2.2    The Promotional Rights, Ancillary Rights and Merchandising Rights (collectively referred to herein as the "**Commercial Rights**") are granted in favour of the Company in perpetuity (as regards the Ancillary Rights and Merchandising Rights) and on a worldwide basis, free and

    LEPLAINTIFFS-0042868

clear of any claims of the Fighter or any person claiming or purporting to claim through the Fighter.

2.3    The Commercial Rights shall include without limitation the following rights and privileges granted in favour of the Company (exclusively, except where expressly stated otherwise) in perpetuity on a worldwide basis:

(a)    the right to all site fees, gate receipts, advertising fees and sponsorship fees in connection with the Matches, and all forms of broadcast, transmission or other dissemination of audio and/or audio-visual reproductions (including without limitation computer/video/electronic games or other interactive software, video slot machines, photographs and video recordings (including raw footage, negatives and out-takes)) by any means and in any media whatsoever whether now known or subsequently developed (including without limitation by means of any Electronic Medium, radio, television, motion picture films, cable, satellite, wireless technology or the Internet), of or relating to the Fighter, ONE FC, the Matches or any activities relating to the Matches, including without limitation the Associated Events, and any parts thereof on a commercial or sustaining basis;

(b)    the right to do all things necessary for the full and complete use, exploitation and exercise of the Commercial Rights, including the right to promote and exploit all rights granted hereunder and the results of the exercise thereof and the right to negotiate, enter into and perform any and all agreements relating to the Commercial Rights for the proper production and promotion of all forms of endorsements, advertisements, publicity and broadcasts in any media (including without limitation by means of any Electronic Medium, radio, television, motion picture films, cable, satellite, wireless technology or the Internet) relating to ONE FC, the Matches, the Associated Events and the Fighter;

(c)    all right, title and interest in and to any Production Materials made of the Fighter or made in connection with any activities relating to ONE FC, the Matches and the Associated Events and the right to register and/or secure in the Company's name (or that of its nominee) such copyright or other intellectual property rights to the fullest extent available. The Fighter irrevocably and unconditionally waives all rights relating to the Production Materials to which the Fighter is now or may in the future be entitled and any other moral rights to which the Fighter may be entitled under any legislation now existing or in future enacted in any part of the world. The Fighter acknowledges that the Company shall remain and be the exclusive owner of the Production Materials in connection with the Fighter, including all rights subsisting in the Production Materials and anything used or produced in connection with the Production Materials, including all works produced or performed by the Fighter in relation to the Production Materials. The Company shall have the right to exploit any and all of the Commercial Rights in any media by any all manner of means throughout the world for the full period of any rights together with the right to authorise others to do so;

(d)    the right to publish, distribute, circulate and advertise on, all official printed matter, including without limitation tickets, posters, guides, programmes, bulletins, calendars, books, booklets, or magazines, printed in connection with the Fighter and his involvement with ONE FC, the Matches and the Associated Events;

(e)    the non-exclusive right to use prior recordings of any previous competitions, matches, contests, bouts and tournaments featuring the Fighter, including those not organised or promoted by the Company, to the extent that the Fighter is able to grant such rights;

CONFIDENTIAL                                                                              LEPLAINTIFFS-0042869

(f)     the right to use the Fighter's Profile in connection with the exploitation of the ONE FC brand, its business activities and those of any broadcasters, networks, sponsors, licensees and exhibitors of the Company or ONE FC, for any purpose (commercial or otherwise), including without limitation product endorsements;

(g)     the right (but not the obligation) to use or register the Fighter's name (including any sobriquets, stage names or professional names), or any variations thereof, as one or more domain names on the World Wide Web and the right to operate and own such domain names in connection with the ONE FC brand throughout the Term at the Company's sole and absolute discretion; and

(h)     the right to sell, transfer, assign, lease out, lend, license, sub-license, use or otherwise dispose of any and all of the Commercial Rights and the results of the exercise thereof, and to authorise, license and grant the right to exercise any of the Commercial Rights.

2.4     The Fighter shall refer all enquiries relating to the Commercial Rights to the Company.  The Fighter shall not appoint any other person, firm or company as agent for the Fighter to use, exploit and exercise the Commercial Rights.

## 3.     PARTICIPATION IN MATCHES

3.1     Each Match shall be a one-on-one match between the Fighter and an opponent designated by the Company and shall be conducted in accordance with, and the Fighter hereby agrees to be bound by, the prevailing rules and regulations promulgated from time to time by the Company and/or any other relevant authority having jurisdiction over such Match ("**Rules**").

3.2     The Fighter shall participate in the minimum number of Matches specified in item 2 of Schedule 1, which the Company shall use its reasonable endeavours to promote.  For the purposes of this Clause, the Company shall be deemed to have discharged its obligation to promote a Match where it has made an offer to the Fighter to promote a Match and the Fighter has declined or failed to participate in the same.  If any Match is a preliminary match or undercard to a main or feature event and such main or feature event is cancelled, postponed or suspended for any reason whatsoever, the failure or inability to conduct the Match shall not be deemed as non-performance on the part of the Company and the Company shall not be liable to the Fighter for the Prize Money or any other compensation in relation thereto.

3.3     The Fighter may be required by the Company, from time to time, to execute and enter into a separate contract or agreement to govern certain Matches or events, and in the event of any conflict or inconsistency between the provisions of this Agreement and such other contract or agreement, the provisions of such other contract or agreement shall prevail.

3.4     The Company shall have the right to determine the dates and venues of all Matches in its sole and absolute discretion.  In the event that a Match is postponed for any reason whatsoever, the Company may, in its sole and absolute discretion, extend the Term by a period equal to the number of days elapsed between the original date scheduled for the Match and the date on which the Match actually occurs.

3.5     The Company shall have the exclusive right to promote all of the Fighter's competitions, matches, contests, bouts and tournaments during the Term and the Fighter shall not at any time during the Term carry on, or be engaged or concerned with, in any manner or capacity whatsoever, any other mixed martial arts, martial arts, boxing, wrestling or any other fighting competitions, matches, contests, bouts or tournaments.

                                                                      LEPLAINTIFFS-0042870

3.6     The Fighter shall, without any additional compensation, make himself available at all
        reasonable times and provide all reasonable assistance to the Company and its affiliates in
        advertising, publicising or otherwise promoting:

        (a)    the Matches;

        (b)    all broadcasts, transmissions or other dissemination of the Matches or any other
               competitions, matches, contests, bouts, tournaments or events organised or promoted
               by the Company or in connection with ONE FC (whether or not the same shall
               feature the Fighter) in any media whatsoever;

        (c)    other competitions, matches, contests, bouts, tournaments or events organised by or in
               connection with ONE FC, whether or not the same shall feature the Fighter;

        (d)    the sale of any ONE FC merchandise or other goods or services manufactured,
               distributed or sold by the Company or its affiliates in connection with the
               Merchandising Rights,

        including making appearances at press conferences, interviews and other sponsorship and
        promotional activities as the Company may reasonably determine. The Company shall bear
        the reasonable costs for the Fighter's travel and accommodations in relation to such activities.

3.7     Notwithstanding Clause 3.5, if the Fighter is not the prevailing ONE FC champion, he may,
        subject to the Company's prior written approval (which may be given or withheld at the
        Company's sole and absolute discretion and if given may be subject to such conditions as the
        Company may specify), engage in any other competitions, matches, contests, bouts and
        tournaments promoted by third parties during the Term, provided always that such Other
        Matches are not broadcast, transmitted or otherwise disseminated in any media (including
        without limitation by means of any Electronic Medium, radio, television, motion picture
        films, cable, satellite, wireless technology or the Internet).

## 4.     TERM

4.1     The duration of the Promotional Rights conferred on the Company shall commence on the
        Effective Date specified in item 1 of Schedule 1 and conclude once the Fighter has completed
        the number of contracted fights as specified in item 2 of Schedule 1 or after thirty-six (36)
        months, whichever comes first ("**Term**"), unless earlier terminated or extended pursuant to
        the terms of this Agreement.

4.2     If the Fighter becomes the prevailing ONE FC Champion, this agreement shall be
        automatically extended for a further period of six fights and thirty-six months and any
        reference to "the Term" herein shall be deemed to include a reference to such extended
        period.

4.3     Neither the expiration or earlier determination of the Term nor the death or incapacity of the
        Fighter shall affect the grant of the Ancillary Rights and Merchandising Rights pursuant to
        the terms of this Agreement, nor shall any such event affect the coming into force or the
        continuance in force of any provision of this Agreement which is expressly or by implication
        intended to come into or continue in force on or after the expiry or termination thereof.

4.4     The Company may elect to extend the Term in the case of:

        (a)    Fighter's refusal to participate in any offered Match

                                            7

(b)  Fighter's participation in any non ONE FC Match within the contracted term

(c)  Injury

(d)  Any other delay, avoidance or refusal of any offered Match by ONE FC or assigned by ONE FC.

## 5.  FIGHTER'S COMPENSATION

5.1  The Company agrees to award the Fighter the compensation set out in item 3 of Schedule 1 ("**Prize Money**"), subject to the satisfaction of the conditions set out in Schedule 1 and this Clause 5. The Prize Money shall be payable only if the Fighter that is officially declared the winner of the relevant Match does not test positive for any Controlled Substances.

5.2  In addition to the Prize Money, the Fighter shall be entitled to reasonable transportation, accommodation and meal allowances and other benefits in connection with each Match, as set out in item 4 of Schedule 1.

5.3  All payments by the Company to the Fighter hereunder shall be made subject to and after deduction of any and all applicable deductions or withholdings for and on account of any Taxes or deduction of whatsoever nature, now or hereafter imposed by law on such payments to, or for the benefit of, the Fighter.

5.4  The Prize Money, allowances and benefits set out in this Clause 5 shall be the sole compensation due to the Fighter in consideration of the Fighter's grants, covenants and undertakings under the terms of this Agreement, including without limitation the Commercial Rights, the Fighter's participation in any Matches and/or any of the Associated Events. No other benefits, charges, expenses or other incidentals of any nature (including without limitation telephone or fax charges, food and beverage charges, entertainment or any other benefits or expenses) shall be provided by the Company.

## 6.  GENERAL OBLIGATIONS OF THE FIGHTER

6.1  The Fighter shall:

(a)  use his reasonable endeavours to keep himself in the best possible condition, take all practical steps to preserve and maintain his health at all times and comply with the requirements of the insurers of the Company in order to enable the Company to effect and maintain the insurance specified in Clause 9;

(b)  maintain a high degree of sportsmanship and professionalism before, during and after each Match and comply with the Rules at all times;

(c)  not use any Controlled Substances and shall promptly submit to any drug tests imposed from time to time by the Company and/or the relevant authorities. In relation thereto, the Fighter acknowledges and agrees that the Company may fine, suspend and impose other penalties on the Fighter in the event that the Fighter tests positive for any Controlled Substance, including without limitation withdrawing the recognition of any ONE FC championship status or title in relation to the Fighter and demanding from, denying or retrieving from the possession of the Fighter any belt, trophy, ring, insignia or other paraphernalia indicating such status or title;

LEPLAINTIFFS-0042872

(d)     obtain and maintain in good standing at his own cost and expense any and all licences, authorisations and work visas required for him to participate in any of the Matches or the Associated Events, and to furnish copies of the same to the Company from time to time upon request;

(e)     promptly and punctually arrive and check-in at, and depart and check-out from, the Company-designated accommodation on the dates specified by the Company;

(f)     accept and fulfil to the best of his ability all Matches and other engagements which are arranged for him by the Company in accordance with this Agreement;

(g)     not issue any publicity relating to the services or Commercial Rights to be provided by him hereunder or participate in any interview or other publicity without the prior written consent of the Company;

(h)     not, without the consent of the Company, change his name (including any sobriquets, stage names or professional names) in whole or part or to perform under any other name;

(i)     only use gloves which have been approved and supplied by the Company and wear trunks which are distinguishable from the Fighter's opponent at all Matches;

(j)     promptly pay to the Company any money which the Fighter receives and to which the Company is entitled;

(k)     at all times respect public conventions and morals and shall not commit any act, take any action or make any comments which might:

        (i)      reflect negatively upon or bring disrepute, ridicule or contempt to the Fighter, the Company or any of its shareholders, officers, directors, employees or agents;

        (ii)     offend the community or public morals; or

        (iii)    disparage, disrupt, damage, impair, or otherwise interfere with the business interests or reputation of the Company or its affiliates, the ONE FC brand or any current or proposed sponsor, advertising agency, network or broadcaster of the Company or ONE FC; and

(l)     not commission, publish, disseminate or be otherwise involved with any advertising or publicity materials which contain inaccurate, obscene, indecent, threatening, offensive, defamatory, tortious, or illegal language or material or which will infringe any intellectual property of any third party.

## 7.     COMMERCIAL IDENTIFICATION PROHIBITION

7.1     At all times during or at any Matches or Associated Events, the Fighter shall not, without the prior written consent of the Company, print, place or allow to appear on the trunks, robe, shoes, gloves and any other part of the attire or the body of the Fighter or any of the Fighter's Affiliates any wording, logos, symbols, trade names, trade marks, pictures, designs or other advertising, fighter banner or publicity materials for any entity (commercial or otherwise) or sponsor other than the Company or its sponsors.

LEPLAINTIFFS-0042873



7.2    The Company shall have the right to include any wording, logos, symbols, trade names, trade marks, pictures, designs or other advertising or publicity materials of the Company, its sponsors and other entities (commercial or otherwise) designated by the Company on the trunks, robe, shoes, gloves, fighter banner and any other part of the attire or the body of the Fighter or any of the Fighter's Affiliates during or at any Matches or Associated Events.

## 8.    ASSUMPTION OF RISK AND INDEMNITY

8.1    The Fighter understands that by participating in the Matches, the Fighter is engaging in an inherently and abnormally dangerous activity which subjects the Fighter to a risk of severe and permanent injury or death. The Fighter, in full knowledge of the risks, nonetheless, agrees to enter into this Agreement and hereby waives any claim that the Fighter or the Fighter's successors, heirs and personal representatives may have against the Company, its affiliates or their respective shareholders, officers, directors, employees, agents, sponsors and contractors (collectively the "Company's Affiliates") as the result of any injury the Fighter may suffer as a result of the Fighter's participation in the Matches.

I have read and understand the above.    Fighter's initials: ╎ $\mathcal{BMV}$ ╎

8.2    The Fighter shall fully indemnify and keep indemnified the Company's Affiliates from and against any losses, damages, liabilities, claims, charges, costs, expenses (including legal fees on a full indemnity basis and expenses), penalties, proceedings, demands or suits of whatsoever nature incurred by or awarded against the Company's Affiliates as a result of or in relation to any breach of the Fighter's warranties or obligations hereunder or any act, omission, default or negligence of the Fighter and/or his managers, trainers, agents, sparring partners and other persons engaged in a professional capacity by the Fighter ("Fighter's Affiliates").

## 9.    INSURANCE AND MEDICAL EXAMINATIONS

9.1    The Company will provide health and accidental death insurance coverage in connection with the Matches in such amount(s) as it may deem fit in its sole and absolute discretion or as may be required under applicable law. The Fighter acknowledges that participation in the Matches subjects the Fighter to a risk of severe and permanent injury or death and is knowingly and voluntarily assuming all such risks. The Fighter accordingly agrees (for himself and on behalf of his successors, heirs and personal representatives) that, other than the insurance benefits provided hereunder, the Fighter shall be solely responsible for all costs and expenses for any medical treatment in relation to all injuries sustained in connection with his services under the terms of this Agreement.

9.2    The Company may also elect, at its own cost and expense, to obtain life and other insurance upon the Fighter, which shall be for the benefit of the Company solely. Neither the Fighter, his successors, heirs and personal representatives nor the Fighter's Affiliates shall have any right, title or interest in such insurance.

9.3    The Fighter undertakes to submit in a timely manner to all usual and customary medical or other examinations, and provide such information and medical records, as may be required by the Company or required by any insurers in respect of the policies mentioned in Clauses 9.1 and 9.2.

10

*ONE FC – Fighter's Agreement*



CONFIDENTIAL                                                    LEPLAINTIFFS-0042874

## 10.   INJURY OR RETIREMENT

10.1   If, at any time during the Term, the Fighter declines to participate in or attempts to cancel or postpone any Match promoted, or offered to be promoted, by the Company by reason of an alleged claim of illness, disability or injury, the Company shall have the right (but not the obligation) to have the Fighter examined by a medical practitioner of the Company's choosing and at the Company's own expense, and the Fighter shall submit to and make himself available for such examination upon notice from the Company.

10.2   If, at any time during the Term, the Fighter is injured or permanently or partially incapacitated to the extent that he is unable to participate in any Match promoted by the Company, the Company shall have the right (but not the obligation) to:

   (a)   extend the Term for a period commensurate with the time required for the Fighter to recover or for a period of six (6) months, whichever is longer;

   (b)   declare that the Company shall be deemed to have been satisfied its obligation to promote all future Matches required to be promoted in accordance with the terms of this Agreement; and/or

   (c)   pre-terminate the Term by serving notice of the same on the Fighter.

10.3   If, at any time during the Term, the Fighter intends to retire from the professional fighting circuit whether temporarily or permanently, the Fighter shall give the Company not less than six (6) months' prior written notice, whereupon the Company shall have the right (but not the obligation) to:

   (a)   suspend the Term for the duration of the Fighter's retirement;

   (b)   declare that the Company shall be deemed to have been satisfied its obligation to promote all future Matches required to be promoted in accordance with the terms of this Agreement; and/or

   (c)   pre-terminate the Term by serving notice of the same on the Fighter.

## 11.   TERMINATION

11.1   Notwithstanding Clause 4 above, the Term (including any extensions or suspensions thereof) may be pre-terminated forthwith by notice from the Company to the Fighter upon the occurrence of any of the following events:

   (a)   if the Fighter persistently fails to participate in the minimum number of Matches (other than for reason of illness, disability, injury or suspension) promoted or offered to be promoted by the Company;

   (b)   if the Fighter commits a breach of any one or more of his obligations or undertakings under this Agreement;

   (c)   if the Fighter becomes voluntarily or involuntarily the subject of proceedings under any bankruptcy or insolvency law, or other law or procedure of any jurisdiction for the relief of financially distressed debtors;

11

   LEPLAINTIFFS-0042875

(d)     if the Fighter makes any voluntary arrangement with his creditors or becomes subject to an administration order;

(e)     if the Fighter is declared the loser of any mixed martial arts competition, match, contest, bout or tournament (whether or not organised or promoted by the Company);

(f)     if any licence, authorisation or work visa required for the Fighter to participate in any of the Matches is revoked or suspended for any reason whatsoever;

(g)     if the Fighter is found to have used Controlled Substances at any time during the Term or circumvents, or attempts to circumvent, any tests for detecting the use of Controlled Substances by the Fighter; or

(h)     if the Company determines that the Fighter has failed to meet the contracted weight class for one or more Matches.

11.2    Upon pre-termination of the Term in accordance with Clause 11.1 above, the Company's promotional and other obligations hereunder and under the terms of any related agreements entered into between the Company and the Fighter shall cease and the Company shall have the right to terminate the Fighter's participation in any Match, to withdraw the recognition of any ONE FC championship status or title in relation to the Fighter and/or to demand from, deny or retrieve from the possession of the Fighter any belt, trophy, ring, insignia or other paraphernalia indicating such status or title.

11.3    Pre-termination of the Term shall be without further liability from the Company to the Fighter, but shall be without prejudice to the rights and liabilities of the Parties which have accrued prior to such pre-termination.

11.4    Pre-termination of the Term shall not affect or terminate any of the Ancillary Rights or Merchandising Rights nor shall it affect the coming into force or the continuance in force of any provision of this Agreement which is expressly or by implication intended to come into or continue in force on or after such pre-termination.

11.5    The Fighter acknowledges that his services hereunder and each of the Commercial Rights granted to the Company hereunder are of a unique, unusual and extraordinary character, the loss of which cannot be reasonably or adequately compensated in damages in an action at law and the Fighter accordingly agrees that, without in any way compromising the Company's right to seek damages or any other form of relief in the event of a breach of this Agreement, the Company shall be entitled to seek and obtain an *ex parte* interlocutory or final injunction or other equitable relief, without posting a bond or other security, to prohibit or restrain the Fighter and/or any person from any actual or threatened breach of this Agreement. The Fighter shall be directly liable for any and all reasonable legal fees and disbursements incurred by the Company to enforce this Agreement against the Fighter in courts of competent jurisdiction.

11.6    In the event that the Fighter has a good faith belief that the Company has committed a material breach of any one or more of its material obligations under this Agreement, the Fighter shall give the Company written notice specifying the breach and requiring it to be remedied within thirty (30) days of receipt of notice by the Company. If the Company fails to remedy such breach within the said period of thirty (30) days, the Fighter may then pre-terminate the Term or seek redress for any outstanding compensation owed to the Fighter. The sole remedy of the Fighter for any breach by the Company shall be an action for compensation under Clause 5 of this Agreement.

17

BN



## 12.   RIGHT OF FIRST DEALING AND RIGHT TO MATCH

12.1   The Fighter agrees that prior to the expiry or sooner determination of the Term, he will not accept any offer from a third party or do any other act or thing which would or may, with the passing of time or the occurrence of any other event, prevent him or restrict him from complying with Clauses 12.2 and 12.3.

12.2   The Fighter agrees that at least six (6) months prior to the expiry of the Term, he will meet with the Company exclusively to discuss and agree in good faith the renewal of this Agreement, such discussions to continue for up to sixty (60) days commencing from the first

LEPLAINTIFFS-0042877

meeting (**"Exclusivity Period"**). If the Parties fail to agree the terms of such renewal during the Exclusivity Period, they shall not be obliged to continue with the Promotional Rights beyond expiry of the Term and the Fighter may, following expiry of the Exclusivity Period, negotiate with a third party, provided that the Company shall have a right to match the terms of any bona fide offer from a third party (**"Third Party Offer"**) in accordance with Clause 12.3 below.

12.3    The Company shall have right to match any Third Party Offer received by the Fighter for a period of six (6) months after the expiry of the Exclusivity Offer or the Term, whichever is later (**"Matching Period"**). If the Fighter receives a Third Party Offer (whether or not in writing) during the Matching Period, he shall promptly give written notice to the Company stating all material terms of such offer, including the identity of the third party. Such notice from the Fighter shall be irrevocable and shall constitute an offer for the Fighter to contract with the Company on the same terms (**"Fighter's Offer"**). The Company shall have fourteen (14) days upon receipt of the Fighter's notice to accept the Fighter's Offer, failing which the Fighter may accept the Third Party Offer without modification within seven (7) days after the expiry of the said fourteen-day period. Any material modification to the terms of the original Third Party Offer shall constitute a new Third Party Offer, to which the matching process set out herein shall apply.

12.4    Notwithstanding the Fighter's acceptance of a Third Party Offer after due observance of the processes set out in this Clause 12 and the conclusion of a definitive agreement with such third party, the Fighter shall not, and shall procure that the third party does not, announce such agreement prior to expiry of the Term.

## 13.    INTELLECTUAL PROPERTY

13.1    Each of the Company and the Company's Affiliates reserves all rights in its intellectual property (including without limitation the names and marks "ONE Fighting Championship" and "ONE FC") and Confidential Information, and no rights, title or interest therein are granted by or under, or to be implied from, this Agreement. In particular, but without limitation to the generality of the foregoing, no licence is granted directly or indirectly under any trade name, trade mark, logo, patent, invention, discovery, copyright or other intellectual property right now or in the future held, made, obtained or licensable by the Company or any of the Company's Affiliates. The Fighter further agrees that he shall not, without the prior written consent of the Company, refer to himself as a "ONE FC Champion", "former ONE FC Champion", "ONE FC Fighter" or any other status or titles used by the Company in connection with ONE FC. All belts, trophies, rings, insignia or other paraphernalia indicating such status or title remain at all times the property of the Company and the Fighter shall return the same to the Company on demand and shall not use any of the same for any public appearance without the prior written consent of the Company.

13

CONFIDENTIAL

LEPLAINTIFFS-0042878

and shall, in addition erase and remove any of the same stored within any computer or other electronic system whether or not in machine-readable form.

14.5    The obligations contained in this Clause shall inure, even after the termination of this Agreement, without limit in point of time except and until any Confidential Information falls within the provisions of Clauses 14.2(d).

14.6    The Company shall have the sole right to determine the timing and content of any announcement or other public statements in connection with the existence or the subject matter of this Agreement.

## 15.    REPRESENTATIONS AND WARRANTIES

15.1    The Fighter hereby represents, warrants and undertakes to and for the benefit of the Company that:

(a)    he has full capacity to enter into this Agreement, that he is not under the influence of any Controlled Substances and that he is not aware of any physical, legal, medical or mental impediment which might prevent the Fighter from performing or observing any of the Fighter's obligations under this Agreement;

(b)    he shall compete and otherwise render all obligations under this Agreement to the best of the Fighter's skill and ability in a professional punctual and workmanlike manner;

(c)    the execution, delivery and performance of this Agreement will not conflict with, violate or breach any law to which he is subject, or relationship or business, contractual or otherwise, to which he is a party and that he will not hereafter enter into any such relationship or business, contractual or otherwise, which would conflict with, violate or breach the terms of this Agreement or the grant of the Commercial Rights;

(d)    he has disclosed to the Company all prior agreements and arrangements relating to the Fighter's services as a professional mixed martial arts exponent and the prior grant of any rights identical or similar to the Commercial Rights granted hereunder;

(e)    this Agreement will be duly and validly executed and delivered by him and when so executed, constitutes binding and enforceable obligations on him in accordance with its terms;

(f)    he has had the opportunity to consult with an attorney prior to executing this Agreement and that he has read this Agreement, that he fully knows, understands, and appreciates its contents, and that he executes the same and enters into this Agreement of his own free will and is not subject to duress of any kind;

(g)    he shall, at his own cost and expense, have and maintain in effect at all times during the Term of this Agreement, all licences, authorisations, permits, consents and approvals from the relevant governmental, regulatory or other competent authorities to perform his obligations under this Agreement; and

(h)    each of the above warranties will be correct and complied with in all respects during the Term of this Agreement as if repeated then by reference to the then existing circumstances.

15

CONFIDENTIAL

LEPLAINTIFFS-0042879

13.2    The Fighter acknowledges that the Company's and the Company's Affiliates' intellectual property and Confidential Information and all related copyrights and other intellectual property rights pertaining thereto received in connection with this Agreement are (and at all times shall be) the property of the relevant entity, even if suggestions, comments and/or ideas made by the Fighter are incorporated into such intellectual property, Confidential Information or related materials. The ownership of any and all intellectual property which exists in any changes, modifications, adaptations or improvements made to the intellectual property shall remain with the Company and/or the respective Company's Affiliates.

## 14.    CONFIDENTIALITY

14.1    Subject to Clause 14.2, the Fighter shall treat as confidential and not disclose or use any information which relates to:

(a)    the existence and provisions of this Agreement and any agreement entered into pursuant to this Agreement;

(b)    the negotiations relating to this Agreement (and such other agreements); and

(c)    each of the Company's and the Company's Affiliates' Proprietary Information,

collectively, the **"Confidential Information"**.

14.2    Clause 14.1 shall not prohibit disclosure or use of any information if and to the extent:

(a)    the disclosure or use is required by law, any regulatory or governmental body or the rules and regulations of any recognised stock exchange;

(b)    the disclosure or use is required for the purpose of any judicial proceedings, court order or arbitration proceedings;

(c)    the disclosure is made to any professional adviser of the Fighter on terms that such persons undertake to comply with the provisions of Clause 14.1 in respect of such information as if they were a party to this Agreement; or

(d)    the information is at the time of supply already in the public domain or becomes publicly available (other than by a breach of this Agreement),

provided that prior to disclosure or use of any information pursuant to Clause 14.2 (a) or (b), the Party concerned shall use reasonable efforts to promptly notify the relevant Party or Parties of such requirement with a view to providing it/them with the opportunity to contest such disclosure or use.

14.3    The Fighter shall take all reasonable steps to minimise the risk of disclosure of Confidential Information, by ensuring that only those of the Fighter's Affiliates whose duties will require them to possess any of such information shall have access thereto, and that they shall be instructed to treat the same as confidential.

14.4    On the conclusion of its authorised use or upon the termination of this Agreement for any reason whatsoever (whichever is earlier), the Fighter shall promptly return all documents and materials containing the Company's or the Company's Affiliates' Proprietary Information or, if so required at the request of the Company, erase and destroy any and all material in any media containing the same (including any copies, analysis, memoranda or other notes made by the Fighter or the Fighter's Affiliates) in its possession or under its care, custody or control

14

LEPLAINTIFFS-0042880

15.2    The Company hereby represents and warrants to and for the benefit of the Fighter that:

(a)    it is a company duly organised, validly existing and in good standing under the laws of Singapore with full power and authority to carry on its business as now being conducted and to enter into and perform its obligations under this Agreement; and

(b)    all necessary action has been taken to authorise the Company's execution, delivery and performance of this Agreement.

## 16.    COMPANY'S RIGHT TO PROMOTE OTHER FIGHTERS

Nothing in this Agreement shall prevent or restrict the Company from promoting any other fighter or mixed martial arts exponent, including those in the Fighter's weight class, whether or not in connection with ONE FC and/or the Matches.

## 17.    PREVALENCE OF AGREEMENT

In the event of any inconsistency between the provisions of this Agreement and the Schedules, the provisions of this Agreement shall as between the Parties prevail and the Parties shall forthwith cause such necessary alterations to be made as are required so as to remove any conflict or inconsistency.

## 18.    FORCE MAJEURE

In the event that any Party shall be rendered unable to carry out the whole or any part of its obligations under this Agreement for any reason beyond the control of that Party, including but not limited to decrees or restraints by governmental authorities, acts of God, force majeure, strikes, war, riot and any other causes of such nature, then the performance of the obligations hereunder of that Party or all the Parties as the case may be and as they are affected by such cause shall be excused during the continuance of any inability so caused, but such inability shall as far as possible be remedied with all reasonable despatch.

## 19.    PARTNERSHIP

This Agreement shall not constitute or imply any partnership, joint venture, fiduciary relationship, employment, agency or other relationship between the Parties other than the contractual relationship expressly provided for in this Agreement.

## 20.    ENTIRE AGREEMENT

This Agreement embodies all the terms and conditions agreed upon between the Parties as to the subject matter of this Agreement and supersedes and cancels in all respects all previous agreements and undertakings, representations, warranties, assurances, and arrangements of any nature, if any, between the Parties with respect to the subject matter hereof, whether such be written or oral.

16

CONFIDENTIAL



## 21.    INDULGENCE, WAIVER ETC

No failure on the part of either Party to exercise and no delay on the part of either Party in exercising any right hereunder will operate as a release or waiver thereof, nor will any single or partial exercise of any right under this Agreement preclude any other or further exercise of it or any other right or remedy.

## 22.    CONTINUING EFFECT OF AGREEMENT

The provisions of Clauses 2 (Promotional and Other Rights) (with the exception of Clause 2.1(a)), 8 (Assumption of Risk and Indemnity), 11 (Termination), 12 (Right of First Dealing and Right to Match), 13 (Intellectual Property), 14 (Confidentiality), 22 (Continuing Effect of Agreement), 31 (Contracts (Rights of Third Parties) Act) and 32 (Governing Law and Jurisdiction), and such other Clauses which of their nature are intended to continue past the expiry or termination of the Term as regards either Party, shall survive the expiry or termination of the Term.

## 23.    ASSIGNMENT

The Fighter shall not (nor shall it purport to) assign, transfer, charge or otherwise deal with all or any of his rights under this Agreement nor grant, declare, create or dispose of any right or interest in it without the prior written consent of the Company. The Company shall be entitled to freely assign, license and/or transfer, in part or in full, its rights or obligations under this Agreement to any person(s) or company of its choosing, including without limitation the right to co-promote or assign any Match with one or more third parties.

## 24.    AGREEMENT TO BIND SUCCESSORS AND ASSIGNS

This Agreement shall be binding on and shall inure to the benefit of each of the Parties' successors and permitted assigns. Any reference in this Agreement to either of the Parties shall be construed accordingly.

## 25.    FURTHER ASSURANCE

At any time after the date of this Agreement, each Party shall, and shall use its best endeavours to procure that any necessary third party shall, execute such documents and do such acts and things as the other Party may reasonably require for the purpose of giving to such other Party the full benefit of all the provisions of this Agreement.

## 26.    REMEDIES

No remedy conferred by any of the provisions of this Agreement is intended to be exclusive of any other remedy which is otherwise available at law, in equity, by statute or otherwise, and each and every other remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law, in equity, by statute or otherwise.

17

LEPLAINTIFFS-0042882

The election of any one or more of such remedies by either Party shall not constitute a waiver by such Party of the right to pursue any other available remedies.

## 27.    COSTS AND EXPENSES

Each Party shall bear its own legal, professional and other costs and expenses incurred by it in connection with the negotiation, preparation or completion of this Agreement.

## 28.    SEVERABILITY OF PROVISIONS

If any provision of this Agreement is held to be illegal, invalid or unenforceable in whole or in part in any jurisdiction, this Agreement shall, as to such jurisdiction, continue to be valid as to its other provisions and the remainder of the affected provision, and the legality, validity and enforceability of such provision in any other jurisdiction shall be unaffected.

## 29.    NOTICES

29.1    All notices, demands or other communications required or permitted to be given or made hereunder shall be in writing and delivered by hand, by courier or prepaid registered post with recorded delivery, or by facsimile transmission addressed to the intended recipient thereof at its address or at its facsimile number, and marked for the attention of such person (if any), designated by it to the other Party for the purposes of this Agreement or to such other address or facsimile number, and marked for the attention of such person, as a Party may from time to time duly notify the other in writing.

29.2    The addresses and facsimile numbers of the Parties for the purpose of this Agreement are specified below:

(operating as)

**COMPANY**         ONE FIGHTING CHAMPIONSHIP

Address     :     Level 25, One Raffles Quay, North Tower, Singapore

Fax         :

Attention   :     Victor Cui

**FIGHTER**       (Truth Enterprise) Brandon Vera

Address     :     565 Reisling Terrace   Chula Vista, CA 91913

Fax         :

Attention   :

18

*ONE FC – Fighter's Agreement*

CONFIDENTIAL        LEPLAINTIFFS-0042883

BMV

29.3    Any notice, demand or communication so served by hand, courier with recorded delivery, fax or post shall be deemed to have been duly given:

    (a)    in the case of delivery by hand or by courier, when delivered;

    (b)    in the case of fax, at the time of transmission; and

    (c)    in the case of post, on the second Business Day after the date of posting (if sent by local mail) and on the seventh Business Day after the date of posting (if sent by air mail),

provided that in each case where delivery by hand, by courier or by fax occurs on a day which is not a Business Day or after 6pm on a Business Day, service shall be deemed to occur at 9am on the next following Business Day.

References to time in this Clause are to local time in the country of the addressee.

## 30.    COUNTERPARTS

This Agreement may be signed in any number of counterparts, all of which taken together shall constitute one and the same instrument. Either Party may enter into this Agreement by signing any such counterpart. Each counterpart may be executed by the Parties and transmitted by facsimile transmission, and shall be valid and effectual as if executed as an original.

## 31.    CONTRACTS (RIGHTS OF THIRD PARTIES) ACT

31.1    Other than the Company's Affiliates, a person who is not a party to this Agreement shall have no rights under the Contracts (Rights of Third Parties) Act (Cap. 53B) to enforce any of its terms.

31.2    Notwithstanding Clause 31.1, the Parties may by agreement in writing supplement, vary (including any release or compromise of liability), rescind or terminate this Agreement in any manner without the consent of any third party referred to in Clause 31.1, and Section 3(1) of the Contracts (Rights of Third Parties) Act (Cap. 53B) shall not apply.

## 32.    GOVERNING LAW AND JURISDICTION

This Agreement shall be governed by, and construed in accordance with, the laws of Singapore. Any dispute, whether contractual or not, arising out of or in connection with this Agreement (including any question regarding its existence, validity or termination) shall be referred to and finally resolved by arbitration in Singapore in accordance with the Arbitration Rules of the Singapore International Arbitration Centre ("SIAC") for the time being in force, which rules are deemed to be incorporated by reference in this clause. The arbitration tribunal shall consist of one arbitrator to be appointed by the Chairman of the SIAC. The language of the arbitration shall be English and the arbitration shall be governed by the International Arbitration Act (Cap. 10).

*[Remainder of page intentionally left blank]*

BMV

19

LEPLAINTIFFS-0042884



**SCHEDULE 1**

**SCHEDULE OF PARTICULARS**

| S/No. | Item | Particulars |
|---|---|---|
| 1. | Effective Date | 28 June 2014 |
| 2. | Minimum number of Matches | The Fighter shall participate in a minimum of SIX (6) Matches |
| 3. | Prize Money | (a) To show (guaranteed fee): $70,000 usd |
| | | (b) Win bonus: $70,000 usd |

The Prize Money for the subsequent Matches is subject to performance. The "To show (guaranteed fee)" will increase by $2,500 usd and the "Win bonus" will increase by $2,500 usd every 2 wins the Fighter achieves. A loss will result in no change to the Prize Money.

*econ plus??*

| 4. | Allowances and other benefits (for events outside the Fighter's home base city of record) | (a) Fighter will receive one roundtrip economy class flight and cornerman will receive one roundtrip economy class flight from their home base city of record to the event city. |
| | | (b) One twin sharing room. |
| | | (c) $40 sgd per diem for meals (per day per person) OR three daily meals provided by the organizer. Whether the fighter receives the per diem or three daily meals is at the discretion of the organizer. |
| 5. | Contracted Weight Class | Weight class to be determined on a per Match basis. |
| 6. | Territory | The provision of exclusive services to Company by You as a professional mixed martial arts athlete and all other services related thereto in all territories worldwide. |
| 7. | Entrance Song | Company retains the right to make the final decision on what will be permitted as the fighter's entrance song. |

20

LEPLAINTIFFS-0042885



**Weight Classes**

|  | Upper Limit | |
|---|---|---|
| **Weight Class** | **lb** | **kg** |
| Flyweight | 125 | 56.7 |
| Bantamweight | 135 | 61.2 |
| Featherweight | 145 | 65.8 |
| Lightweight | 155 | 70.3 |
| Welterweight | 170 | 77.1 |
| Middleweight | 185 | 83.9 |
| Light Heavyweight | 205 | 93 |
| Heavyweight | 265 | 120.2 |



LEPLAINTIFFS-0042886

IN **WITNESS WHEREOF** the Parties have caused this Agreement to be executed the date and year first above written.

**THE COMPANY**

SIGNED by )

VICTOR CUI )

*Name* )       *Signature*

CEO_____ )

*Designation* )

for and on behalf of )

**GROUP ONE HOLDINGS PTE. LTD.** )

in the presence of: )

*Signature*

Name of Witness: REYNALD AUTY

Address: 54 BLACKHOLE DRIVE
         SINGAPORE 559749

**THE FIGHTER** Truth Enterprise    Em #**REDACTED**

SIGNED by                              )

Brandon Vera                          )

*Fighter's Name*                      )       *Signature*

in the presence of:                   )

*Signature*

Name of Witness: KC. Eusebio

Address: 2815 Evan Manor Lane
         Cumming, GA 30041

22

*Execution page to Exclusive Commercial Rights Agreement*

                                                    LEPLAINTIFFS-0042887