# EXHIBIT 70
# -
# REDACTED VERSION OF
# ECF NO. 540-51

# EXHIBIT 47

## Exclusive Promotional Fight Agreement between Plaintiff Fitch and MMAWC ("WSOF")

## EXCLUSIVE PROMOTIONAL FIGHT AGREEMENT

This **EXCLUSIVE PROMOTIONAL FIGHT AGREEMENT** (the "Agreement") is entered into as of _____ 9 - 13 - 2015 _____, 2015 (the "Effective Date"), by and between **MMAWC, LLC**, a Nevada limited liability company with its principal place of business at 3275 S. Jones, Ste. 104, Las Vegas, NV 89146 (hereinafter referred to as "MMAWC"), and **FIGHTER named on Exhibit "A"**, an individual (hereinafter referred to as "FIGHTER") (collectively, the "Parties").

### RECITALS

**WHEREAS**, MMAWC is engaged in the business of promoting, publicizing, arranging, staging, conducting, recording, and distributing professional mixed martial arts contests, bouts and competitions (the "Events") throughout the world; and

**WHEREAS**, FIGHTER is experienced, highly trained and licensed to engage in a regulated mixed martial arts contest for compensation as arranged by MMAWC for entertainment and competition purposes; and

**WHEREAS**, FIGHTER desires MMAWC to promote FIGHTER exclusively for the Events; and

**WHEREAS**, FIGHTER shall be compensated for the Events provided that FIGHTER grants worldwide exclusive ancillary rights in perpetuity to MMAWC;

**NOW THEREFORE**, in consideration of the mutual promises and agreements as set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties intending to be legally bound, do hereby agree as follows:

**CONDITION PRECEDENT:** All of MMAWC's obligations hereunder are conditioned upon and subject to MMAWC receiving a copy of this Agreement executed by FIGHTER.

### SECTION 1. PROMOTIONS.

1.1 The foregoing recitals are incorporated herein by this reference. FIGHTER hereby grants to MMAWC, and MMAWC hereby accepts from FIGHTER, the following exclusive promotional rights.

(a)  For the Events as conducted by MMAWC, FIGHTER hereby grants MMAWC the worldwide exclusive right to engage FIGHTER to perform in the minimum number of Events during the Term (as hereinafter defined) as determined by this Agreement, Addenda and Exhibits, all of which Addenda and Exhibits are incorporated herein;

02.05.2015

**Fighter Initials**      **MMAWC**

(b)     MMAWC shall organize and promote FIGHTER in a minimum number of one-on-one competitive mixed martial arts matches against an opponent of MMAWC's choice. Such matches shall be selected, promoted, conducted, and distributed by MMAWC (hereinafter "bout(s)") during the Term, as determined by this Agreement, Addenda and Exhibits;

(c)     The rules and regulations of the Events shall be governed by the applicable athletic commission having jurisdiction over the Events. In the event there is no regulating body in the applicable Event's jurisdiction, the parties agree that the rules and regulation of the Nevada State Athletic Commission shall apply and be in full force and effect;

(d)     All combative and non-combative rules of the Events shall be solely determined by MMAWC, so long as approved by the governing Athletic Commission, including but not limited to structure, opponents draw, site, time and days of the Events, order in which FIGHTER shall appear in the Events, whether or not FIGHTER's bouts will be televised or otherwise exhibited, and restricting FIGHTER's sponsors, banners, fight shorts and other materials;

(e)     FIGHTER agrees throughout the Term of this Agreement to assist MMAWC, in the manner requested by MMAWC, in the marketing and promotion of the Events, whether or not FIGHTER competes in such Events, for no additional compensation, including but not limited to FIGHTER participating in a reasonable number of joint and/or separate press conferences, interviews, and other publicity or appearances or activities (any or all of which may be filmed, taped, or otherwise recorded, telecast by any form of television or exhibition now known or hereafter devised, including without limitation free, cable, pay cable, subscription video on demand, video on demand and closed circuit and pay-per-view television, broadcast, exhibited, distributed, and used in any manner of media and by any art, method, or device now known or hereafter devised, including without limitation by means of videodisc, video cassette, theatrical motion picture and or non-theatrical motion picture and Internet), at times and places designated by MMAWC, in connection therewith. Subject to MMAWC's prior written approval, MMAWC agrees to cover the reasonable out of pocket costs associated with FIGHTER's assistance in marketing and promoting the Events.

### SECTION 2. EXCLUSIVITY.

2.1     During the Term, MMAWC shall have the exclusive worldwide right to promote all of FIGHTER's Events and FIGHTER shall not participate in or render his services as a professional fighter or unarmed combatant, including but not limited to mixed martial arts, boxing, kickboxing, professional wrestling, or any other fighting competition or exhibition. This provision shall not be deemed a prohibition on FIGHTER participating in Brazilian Jui Jitsu events and/or tournaments or collegiate and/or freestyle wrestling tournaments. The territory of this Agreement shall be the Universe ("Territory"). In the event that any court or government of any jurisdiction shall determine that the Territory shall be restricted or that this Agreement is unenforceable in that jurisdiction, the Territory shall be limited only to the extent necessary to conform to such determination and all other jurisdictions shall remain in the Territory. In the event FIGHTER fails to comply with this Section, MMAWC shall have the right to seek an

02-05-2015

Fighter Initials     MMAWC

Z.E._002595

immediate and permanent injunction without the requirement of posting any bond as may be required by a court of competent jurisdiction.

## SECTION 3. TERM AND COMPENSATION.

3.1    The entire duration of this Exclusive Promotional Fight Agreement (hereinafter "Term") shall commence on the Effective Date. The Term shall be described in more detail in Exhibit "A" attached hereto and incorporated herein.

3.2    In consideration of FIGHTER's participation in the Events in accordance with the provisions of this Agreement, and the ancillary rights granted to MMAWC in Section 7 hereunder, MMAWC shall compensate FIGHTER and grant FIGHTER incidentals as listed in Exhibit "A" of this Agreement. No other compensation whatsoever shall be payable to FIGHTER, for any of the grant of Rights from FIGHTER to MMAWC hereunder, or otherwise, except as set forth upon Exhibit "A".

## SECTION 4. FIRST NEGOTIATION AND FIRST REFUSAL RIGHTS.

4.1    At the expiration of the Term this Agreement shall be automatically renewed One Time for the extension of the Term for the earlier of an additional four (4) Bouts over a twelve (12) month period, unless MMAWC provides written notice to FIGHTER that it is not renewing this Agreement. Unless such written notice of non-renewal is provided by MMAWC to FIGHTER, the Term it shall be deemed that MMAWC has elected to exercise its option to extend this Agreement.

4.2    If MMAWC gives such written non-renewal notice to FIGHTER in accordance with section 4.1, MMAWC shall have the first and exclusive negotiation right to enter into a new Exclusive Promotional Fight Agreement with FIGHTER until sixty (60) days after the end of the then-current Term of this Agreement (the "Exclusive Negotiation Period"). In such event, the parties hereto shall promptly and exclusively enter into good faith negotiations with regard to such a new Exclusive Promotional Fight Agreement until the end of the Exclusive Negotiation Period. In the event that such a new Exclusive Promotional Fight Agreement is not reached between the parties until the end of the Exclusive Negotiation Period, FIGHTER may negotiate with third parties for a period of six (6) months from the end of the Exclusive Negotiation Period; but, prior to accepting any bona-fide offer from a third party during such six (6) month period (whether the contract term of such third party offer is within or beyond such six (6) month period), FIGHTER shall notify MMAWC in a detailed writing of all the terms and conditions of such offer so that MMAWC has the last refusal right and opportunity to match the financial terms (only; MMAWC not meet or match any other elements of such third party offer) of such offer by giving written notice thereof to FIGHTER within thirty (30) days of receiving the detailed writing of all the terms and conditions of such offer. If not exercised, MMAWC's last refusal right to match shall expire and FIGHTER may accept any third party offer.

02-05-2015

Fighter Initials          MMAWC

## SECTION 5. MMAWC'S OBLIGATIONS, PRIVILEGES, REPRESENTATIONS AND WARRANTIES.

5.1    MMAWC shall market, promote, exhibit and advertise the Events to whatever degree and at whatever costs it elects in its sole and absolute discretion and shall market and promote FIGHTER and FIGHTER'S reasonable participation in the Event to whatever degree it elects in its sole and absolute discretion. Such promotional efforts may include, at MMAWC'S sole discretion, appearances by FIGHTER in advance of the Events, weigh-ins, press conferences, photography sessions, videography sessions, or other events that require the live and in-person (or "remote") presence of FIGHTER at a designated location, which such appearances, as directed by MMAWC, FIGHTER expressly agrees to make without further compensation to FIGHTER. FIGHTER also agrees to cooperate and participate in all other promotional, marketing, publicity, photo-shoot and other media and related activities as MMAWC may request from time to time in connection with MMAWC's business and/or related to the Events, as determined by MMAWC in its sole discretion.

5.2    Notwithstanding the above, if FIGHTER shall be prevented from appearing at an Event or Promotion by reason of Force Majeure, his performance shall be excused. For purposes of this Agreement, "Force Majeure" shall mean any act of God, fire, flood, war or other calamity, strike or labor difficulties; any governmental action or any other serious emergency significantly affecting FIGHTER which occurrence is beyond FIGHTER's reasonable control, and which, despite FIGHTER's best efforts, prohibits FIGHTER's performance or appearance at such applicable bout or Event. In the event that FIGHTER is prevented from performing for reason of Force Majeure, FIGHTER shall forfeit and waive his rights in and claims to any fees or payment corresponding to the Event for which he invoked Force Majeure.

5.3    MMAWC shall procure a suitable forum to contain and stage the Event and shall provide all equipment other than FIGHTER's personal clothing (which shall be subject to MMAWC's approval) for use in conducting the Event and the contest in compliance with MMAWC rules and regulations, including without limitation combat gloves and body equipment that comply with and are required under the rules and regulations of the State of Nevada and/or other applicable authority.

5.4    In connection with FIGHTER's appearances and performance at Events, MMAWC shall bear the cost of, if applicable, location rental, MMAWC's third party comprehensive liability insurance for the benefit of the venues, if required, applicable state and local admission taxes, promotional assistance, sound and light equipment, contest cage or ring, officials, police and fire protection, and such additional security guards as MMAWC shall require in its sole discretion during the Events.

5.5    In connection with the production, distribution, and exploitation of the Events footage, MMAWC shall bear all costs incurred in connection with such production, distribution, broadcast, transmission or other forms of mass media communication.

02 of 2015

Fighter Initials          MMAWC

Z.E._002597

5.6    MMAWC agrees to pay FIGHTER in accordance with Exhibit "A" of this Agreement. In the event that MMAWC fails to make timely payment in accordance with this Section or any of the terms in Exhibit "A" of this Agreement, or otherwise allegedly defaults under any other of MMAWC's obligations hereunder, MMAWC shall have until fifteen (15) days of the receipt of detailed written notice of such alleged default delivered by FIGHTER to remedy the default. Until the receipt of such notice and the expiration of such time to cure (during which time MMAWC fails to reasonably cure such alleged breach), MMAWC shall not be considered in default under or in breach of any of the terms of this Agreement.

5.7    As to the Events selected, MMAWC shall indemnify and hold FIGHTER harmless against any claims, liabilities, actions and/or suits arising solely from the actions of the MMAWC with respect to this Agreement, its operations or business activities; provided, however, the provisions of this Section shall not apply with respect to any claims, liabilities, actions and/or suits arising from, related to or otherwise alleged to involve any actions or inactions taken by FIGHTER or any persons associated with FIGHTER. The parties acknowledge and agree that the provisions of this Section are meant solely to hold FIGHTER harmless for the limited potential instances in which FIGHTER may be made a party to an action in name only and not for any other instances.

5.8    MMAWC hereby represents and warrants to FIGHTER that: (i) MMAWC is a limited liability company duly organized, validly existing and in good standing under the laws of Nevada, (ii) the execution of this Agreement by MMAWC is within MMAWC's limited liability company powers, has been duly authorized by all necessary limited liability company action of MMAWC, has received or will receive all necessary governmental approval (if any shall be required), and does not and will not contravene or conflict with any provision of law or of the charter documents or bylaws of MMAWC, (iii) MMAWC has full right, power and authority to execute this Agreement, and (iv) this Agreement, when executed, shall be a valid and binding obligation of MMAWC and shall be enforceable against MMAWC in accordance with its terms. Neither the execution, delivery nor the performance of this Agreement by MMAWC will constitute a default under any covenant or agreement to which MMAWC is a party or by which MMAWC is bound.

## SECTION 6. FIGHTER'S OBLIGATIONS, REPRESENTATIONS AND WARRANTIES.

6.1    FIGHTER agrees to promote Events pursuant to section 1.1(c) of this Agreement without additional compensation.

6.2    FIGHTER shall bear responsibility and costs for obtaining all appropriate licenses to engage in, participate in, or otherwise appear in bouts and Events. FIGHTER shall be responsible for FIGHTER's own training, conditioning, health and maintenance of skills and abilities, as long as they do not interfere with FIGHTER'S appearance at scheduled Events, as follows:

6788-0469

Fighter Initials          MMAWC

Z.E._002598

(a) FIGHTER will use his best efforts to maintain physical condition including body weight and body fat percentage in order to make weight as required for each of the Events.

6.3     FIGHTER shall use best efforts in employing FIGHTER'S skills and abilities as a professional mixed martial artist to compete in bouts and Events and to use FIGHTER's best efforts to successfully defeat any opponent booked by MMAWC.

6.4     FIGHTER agrees at all times, during the Term and otherwise, and whether or not before, during or after Events, to refrain from making any derogatory public statement or remark that damages or otherwise negatively affects the reputation of MMAWC, any employees of or other persons associated with MMAWC, FIGHTER, his opponent, the Events, Sponsors of the Events, site partner, any television partner or other exhibitor of any Event, in a material manner.

6.5     Further, FIGHTER agrees not to undertake in an activity which may degrade, defame or reflect unfavorably upon any of MMAWC, any employees of or other persons associated with MMAWC, FIGHTER, his opponent, the Events, Sponsors of the Events, site partner or any television partner or other exhibitor of any Event, that negatively affects the integrity of MMAWC, FIGHTER, his opponent, the Events, Sponsors of the Events, site partner or any television partner or other exhibitor of any Event, in any material manner.

6.6     FIGHTER agrees to engage in professional conduct of the highest, moral and ethical standards, and good sportsmanship and fair play and not engage in any conduct that causes substantial and/or material embarrassment to MMAWC, FIGHTER, his opponent, the Events, Sponsors of the Events, or any television partner or other exhibitor of any Event. FIGHTER shall not engage in criminal activities or in acts of moral turpitude, acts that shock or substantially offend moral decency, acts of public disrepute, contempt or scandal which negatively affect the reputation of MMAWC in a material manner.

6.7     FIGHTER shall not authorize or be involved with any advertising material or publicity or other materials that contain language or material which is generally considered to be obscene, libelous, slanderous or defamatory and FIGHTER will not violate or infringe upon, or give rise to any adverse claim with respect to any common-law or other right whatsoever (including, but not limited to, any copyright, trademark, service mark, literary, dramatic, music or motion picture right, right of privacy or publicity, contract or moral rights of authors) of any person or entity.

6.8     FIGHTER shall not use any controlled or banned substance, including but not limited to marijuana, cocaine, methamphetamine, steroids or any similar drugs ("Controlled Substances"). FIGHTER agrees and understands that an Athletic Commission and/or MMAWC may test FIGHTER for Controlled Substances and FIGHTER agrees to submit to any pre-Event or post-Event or other drug test as requested by an Athletic Commission and/or MMAWC.

6.9     FIGHTER shall be responsible for payment of all of FIGHTER's own Federal, state or local income taxes; all social security, FICA taxes, if any, as well as all contributions to

02/03/2016

**Fighter Initials**          **MMAWC**

Z.E._002599

retirement plans and programs, or other supplemental income plan or program that would provide FIGHTER with personal or monetary benefits upon retirement from his chosen career, and FIGHTER agrees to defend, indemnify and hold MMAWC harmless from any such claim.

6.10    FIGHTER shall not compete in any mixed martial arts bout or event of any kind whatsoever, as described in Section 2.1 hereof, which is staged, promoted, initiated or held by any person or entity other than MMAWC during the Term of this Agreement anywhere in the world. This provision shall not be deemed a prohibition on FIGHTER participating in Brazilian Jiu Jitsu events and/or tournaments or collegiate and/or freestyle wrestling tournaments.

6.11    FIGHTER represents and warrants that he is not subject to any contract that would limit or undermine in any respect his performance of the services, obligations, and representations contained herein.

6.12    FIGHTER represents and warrants that FIGHTER shall appear and fight at the respective Events and shall otherwise perform his obligations hereunder; provided, however, that FIGHTER shall not be held liable if (i) FIGHTER is deemed by a registered practicing medical practitioner (whose credentials are satisfactory to MMAWC) to have a serious medical condition that was unavoidable by FIGHTER and that renders FIGHTER absolutely unfit to fight, or (ii) FIGHTER is prevented by a Force Majeure event of nature from attending the Event. If FIGHTER fails to participate or perform at an Event where FIGHTER is scheduled to compete for any reason (including without limitation (i) or (ii) above), MMAWC in addition to any rights or remedies MMAWC has in this Agreement and at law and in equity, MMAWC may elect to (1) suspend the Term hereof until FIGHTER's next bout; and/or, as determined by MMAWC in its sole discretion, (2) to terminate this Agreement by providing FIGHTER with ten (10) days prior written notice thereof.

6.13    FIGHTER agrees to maintain an active social media marketing base (Facebook, Twitter, etc.). FIGHTER shall be responsible for promoting his upcoming bouts and Events on a weekly basis, on all active social media outlets. FIGHTER further represents and warrants that he will not use any of MMAWC's intellectual property rights, including but not limited to, the names, marks, logos, patents, designs and copyrights of MMAWC, its television partner or other exhibitors, and site partner, without MMAWC's prior written consent on a case by case basis.

6.14    In the event FIGHTER materially breaches any part of Section 6 of this Agreement, MMAWC in addition to any rights or remedies MMAWC has in this Agreement and at law and in equity, MMAWC may elect to terminate this Agreement by providing FIGHTER with ten (10) days prior written notice thereof.

6.15    All necessary visas shall be FIGHTER's sole responsibility, and FIGHTER shall pay all costs in connection therewith. Should MMAWC elect, in its sole discretion, to advance any costs on FIGHTER's behalf, in connection with visas or otherwise, then MMAWC shall have the right to withhold compensation from FIGHTER to repay such sums.

02-03-2015

J.F.

**Fighter Initials**          **MMAWC**

Z.E._002600

6.16    If the FIGHTER is granted the right to fight outside of North America, then the agreement for FIGHTER will be extended by one (1) fight.

## SECTION 7. ANCILLARY RIGHTS GRANTED TO MMAWC.

7.1    All Intellectual Property Rights (as defined below) relating to the Events shall belong exclusively to MMAWC free and clear of any and all claims by FIGHTER and FIGHTER acknowledges and agrees that the Rights (as hereinafter defined) shall not belong to FIGHTER. "Intellectual Property" means patents, trademarks, service marks, know-how, trade secrets, rights (whether registered or unregistered) in any designs, applications for any of the foregoing, trade or business names, trademarks, service marks and copyright (including without limitation all extensions and renewals thereof), and "Intellectual Property Rights" means rights related to all Intellectual Property now owned or used in relation to the Events in any part of the world.

7.2    FIGHTER acknowledges and agrees that MMAWC shall be the sole owner of all copyright and any other rights throughout the Universe in and to any programs or recordings of each and every Event, and shall have the exclusive right to exploit the Events in all media now known or hereafter devised, and by any means, including without limitation in video games that relate to the Events, for the full duration of all copyrights (including without limitation all extensions and renewals thereof) and any other rights. The Parties hereby acknowledge that FIGHTER previously granted certain rights to Zuffa relating to the use of FIGHTER's name, image, and likeness for the use in the marketing, development and sale of the video games produced by Zuffa and/or its partners and agents. MMAWC acknowledges this prior grant of rights and agrees FIGHTER shall not be deemed in breach of any provision of this Agreement based upon previously granted rights to Zuffa and/or its partners and agents.

7.3    FIGHTER hereby irrevocably grants to MMAWC the exclusive unrestricted worldwide right to use, edit, disseminate, display, reproduce, print, publish and make any other uses in relation to the Event of the identifying features of FIGHTER's name, nickname, catchphrases, signature, autographs, photograph, likeness, image, special skills and tricks, voice, trademarks, service marks and/or all other personal indicia and biographical material (collectively, "Identity") of FIGHTER and all persons associated with FIGHTER (hereinafter collectively the "Ancillary Rights"). The Intellectual Property Rights and the Ancillary Rights are referred to collectively, where appropriate, as the "Rights." The Rights shall be owned by MMAWC in perpetuity throughout the world, and shall survive this Agreement and the death of FIGHTER.

7.4    The Rights include, but are not limited to, the following rights of MMAWC, all of which are granted by FIGHTER exclusively and in perpetuity, throughout the Universe, to MMAWC:

(a)    The right to all site fees, live-gate receipts, Events sponsorship fees, and motion picture, radio, television (whether live or delayed, interactive, home or theater, pay, pay-per-view, satellite, closed circuit, cable, subscription, multi-point, master antenna, or other),

02-05-2013

**Fighter Initials**    **MMAWC**

Z.E._002601



telephone, computer, CD-ROMs, DVDs, Internet applications, films and tapes for exhibition in all media and all gauges, including but not limited to video and audio cassettes, home video and computer games, ~~arcade video games, hand-held versions of video games~~, video slot machines, photographs (including raw footage, out-takes and negatives), merchandising and program rights now or hereinafter devised, in connection with or based upon the Events or activities pertaining to the Events, including, but not limited to, training, interviews, and press conferences for the Events (hereinafter the "Pre-bout Events"), post-fight interviews and press conferences (hereinafter the "Post-bout Events") and any parts thereof on a commercial, sustaining, theatrical or other basis, and by any and all means, methods and devices, whatsoever;

(b)     The sole and full right to sell, assign, lease, license, sublease, use in any manner or otherwise dispose of any and all of the Rights and the results of the exercise thereof, and to authorize, license and grant the right to exercise any of the Rights;

(c)     The right to all things necessary for the full and complete use, exploitation and exercise of the Rights, including the right to promote and exploit all rights granted hereunder and the results of the exercise thereof, and the right to negotiate, enter into and perform any and all agreements relating to the Rights for the proper production and promotion of radio and television advertisements, publicity, and broadcasts of the Events, the Pre-bout Events and the Post-bout Events;

(d)     All right, title and interest in and to any recordings of the television and radio broadcasts and motion picture films and video and audio cassettes and Internet exhibition of, or based upon the Events, the Pre-bout Events and the Post-bout Events, including, but not limited to, magnetic tapes, and the right to secure in MMAWC's name (or that of its nominee, television partner, or site partner) copyright and other protection to the extent available;

(e)     The unrestricted right, perpetually and throughout the world, to use, edit, disseminate, display, reproduce, print and/or publish in any media the Identity of FIGHTER for the purpose of advertising, promotion, publicity, merchandising and exploitation of the Events, the Pre-Bouts Events and Post-Bout Events. If FIGHTER has an existing endorsement of any commercial product or service in place, at the signing date of this contract, this will be stricken. If FIGHTER does not have an endorsement of any commercial product or service, MMAWC will have the exclusive right to exhibit FIGHTER'S Identity in and upon video games and all packaging, marketing and other materials in connection therewith for a period of twelve (12) months.

Notwithstanding the foregoing provisions, following the expiration of the Term or any Extensions of this agreement, MMAWC will no longer hold any exclusive rights to use FIGHTER's identity and will have twelve (12) months to produce or come to market with any products which were created or in production during the term. After the expiration of the twelve (12) months, MMAWC shall not use, edit, disseminate, reproduce, print and/or publish in any media or create or merchandise any product (excluding any video compilation produced for

02-05-2015

Fighter Initials _____     MMAWC _____

historical purposes or relating to any Bout or Event) any copyrighted material of FIGHTER or FIGHTER's Identity

## SECTION 8. BANNED SUBSTANCES, DOPING.

8.1     FIGHTER agrees and acknowledges to be tested for Controlled Substances at any time in any reasonable manner as administered by the governing Athletic Commission. In addition, FIGHTER acknowledges that within three (3) days before and after each of FIGHTER's bouts in the respective Events, FIGHTER must comply with the mandatory Controlled Substances test, and further acknowledges that MMAWC shall be provided with the results of such test immediately upon such results being made available to FIGHTER.

8.2     If FIGHTER tests positive for Controlled Substances before any of FIGHTER's bouts in the respective Events, FIGHTER shall be automatically disqualified from fighting in that Event, without pay and MMAWC may choose in its sole discretion to terminate this Agreement without any further obligation to FIGHTER

8.3     If FIGHTER tests positive for Controlled Substances after FIGHTER's bouts in the respective Events, MMAWC may terminate this Agreement without any further obligation to FIGHTER

8.4     FIGHTER further acknowledges that an Athletic Commission and/or MMAWC may fine, suspend and/or impose other severe penalties, including but not limited to removing a win from FIGHTER, revoking Championship status, and publicly disclosing such test results and penalties.

8.5     FIGHTER shall be deemed to be in material breach of this Agreement if FIGHTER tests positive for any Controlled Substance in any pre-bout or post-bout Controlled Substances or other test.

## SECTION 9. MEDICAL TESTS

9.1     Prior to participation in each bout, FIGHTER agrees, at his own expense, to provide MMAWC with the results of FIGHTER's medical testing, which shall include testing for harmful and contagious diseases, ailments or conditions that may affect FIGHTER's physical or mental abilities including, but not limited to, the following tests or types of testing: hepatitis A, B and C, HIV, blood type, urinalysis with drug screening, EKG, CT SCAN, MRI, ophthalmologic exam, and such other testing that are requested or required by MMAWC and the State Athletic Commission or the relevant governmental authority or governing body who has jurisdiction over the applicable Event. Such tests shall be performed by a registered practicing medical practitioner (whose credentials are satisfactory to MMAWC or the State Athletic Commission).

9.2     FIGHTER acknowledges and agrees that FIGHTER may not be authorized to compete in an Event by the State Athletic Commission or relevant government authority or

02-05-2015

Fighter Initials          MMAWC

Z.E._002603

governing body if the results of such testing are not free and clear of restrictions on FIGHTER's physical or mental condition. Intentional falsification or fraudulent alteration by FIGHTER or FIGHTER's representatives of such tests, tests results, and clearances will be considered and construed as a material breach of this Agreement. In addition to the foregoing, in the event that FIGHTER has been knocked down, knocked out, or submitted during FIGHTER's bout, FIGHTER shall comply with any post-bout requirements, tests and examinations required by the State Athletic Commission or other ruling body regulating the Event.

## SECTION 10. TERMINATION FOR CAUSE; REMEDIES

10.1    MMAWC shall have the right, upon notice to FIGHTER, to suspend the Term for a reasonable period until the applicable issue is resolved, to withhold compensation otherwise payable to FIGHTER, and/or (in MMAWC's sole discretion) to fully terminate this Agreement for cause, and terminate all of MMAWC's promotional obligations and other obligations hereunder and to terminate FIGHTER's participation in further bouts and Events regardless of FIGHTER's status if:

(a) FIGHTER tests positive for Controlled Substances or any banned substance as administered or regulated by MMAWC or by any Athletic Commission;

(b) FIGHTER fails to make weight for Events in which FIGHTER is to compete on more than one (1) occasion;

(c) FIGHTER or any of FIGHTER's trainers, corner men, managers/agents, breach, violate or are in default of any provision of this agreement or any other agreement hereafter entered into between FIGHTER and MMAWC;

(d) FIGHTER's license as a mixed martial artist is suspended or revoked by an Athletic Commission (not including medical suspensions issued in the normal course of competition);

(e) FIGHTER is declared the loser of a fight by an Athletic Commission. (It is understood that MMAWC may not withhold compensation otherwise payable to FIGHTER for being declared the loser of a fight by an Athletic Commission);

(f) FIGHTER is in breach of FIGHTER's Representations and Warranties in section 6 of this Agreement, including without limitation any claim being made by a third party contrary to FIGHTER's warranties and representations hereunder; or

(g) FIGHTER refuses to appear at a scheduled bout in which FIGHTER is to compete that is not a result of an injury.

10.2    Termination for cause under this Section 7 shall be without further liability or obligation from MMAWC to FIGHTER.

10.3    Termination for cause shall not serve to affect or terminate any of the Ancillary Rights listed in Section 7 of this Agreement, and this Agreement and all Rights granted to MMAWC shall survive Termination for cause and remain in full force and effect with respect thereto.

02-05-2013

**Fighter Initials**          **MMAWC**

Z.E._002604

10.4   At any point if FIGHTER believes in good faith that MMAWC has materially breached any material provision of this Agreement, or has unreasonably failed or refused to perform its obligations hereunder, FIGHTER shall provide MMAWC with written notice of such alleged breach and shall provide MMAWC with at least fifteen (15) business days to cure such alleged breach. If MMAWC fails to cure the alleged material breach within fifteen (15) business days of receipt of FIGHTER's written notice, then and only then may FIGHTER seek to terminate this Agreement and seek redress for any outstanding compensation owed to FIGHTER hereunder. FIGHTER expressly understands and agrees that his sole remedy for any alleged breach by MMAWC shall be to seek payment for any remaining compensation due to FIGHTER under this Agreement, and in no event shall FIGHTER be entitled to (i) any consequential, incidental, or punitive damages of any sort; or (ii) seek or obtain any injunctive or other equitable relief, FIGHTER's sole remedy for MMAWC's breach hereof being an action at law for damages, with such damages limited as hereinabove, and under no circumstances may FIGHTER interfere in any manner with any Event or bout or related event or matter (including without limitation any advertising or promotion of same), MMAWC's exercise of the Rights or any other matter contemplated by this Agreement.   TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, AND EXCEPT FOR AMOUNTS PAYABLE PURSUANT TO THE PARTIES' RESPECTIVE INDEMNIFICATION OBLIGATIONS HEREUNDER, MMAWC WILL NOT BE LIABLE FOR ANY INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL, PUNITIVE OR EXEMPLARY DAMAGES (INCLUDING DAMAGES FOR LOSS OF BUSINESS, LOSS OF PROFITS, OR THE LIKE), WHETHER BASED ON BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE), PRODUCT LIABILITY OR OTHERWISE, EVEN IF SUCH PARTY OR ITS REPRESENTATIVES HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES AND EVEN IF A REMEDY SET FORTH HEREIN IS FOUND TO HAVE FAILED OF ITS ESSENTIAL PURPOSE. MOREOVER, DAMAGES AGAINST MMAWC SHALL NOT EXCEED THE AMOUNT RECEIVED BY FIGHTER AS COMPENSATION HEREUNDER.

Conversely, to the maximum extent permitted by applicable law, and except for amounts payable pursuant to the parties' respective indemnification obligations hereunder, FIGHTER shall not be liable for any indirect, special, incidental, consequential, punitive or exemplary damages (including damages for loss of business, loss of profits, or the like) whether based on breach of contract, tort (including negligence), product liability or otherwise, even if such party or its representatives have been advised of the possibility of such damages and even if a remedy set forth herein is found to have failed of its essential purpose. Moreover, damages against FIGHTER shall not exceed the amount received by FIGHTER as compensation hereunder.

02.06.2015

Fighter Initials          MMAWC

Z.E._002605

## SECTION 11. ASSUMPTION OF THE RISK

11.1    FIGHTER understands and agrees that there are inherent risks and dangers associated with participation in professional mixed martial arts, including but not limited to permanent injury and disability, concussions, broken bones, brain damage, severe cuts, bruises, broken bones, death, and/or paralysis. FIGHTER hereby affirms that he knows and has evaluated prior to entering into this Agreement the inherent risks foreseen or unforeseen of competing in professional mixed martial arts bouts and Events, understands those risks, appreciates those risks, and agrees to fully assume responsibility for those risks.

11.2    FIGHTER, in consideration for the opportunity to enter into this Agreement and to participate in mixed martial arts bouts and Events as promoted by MMAWC, with full knowledge and complete assumption of all risks, FIGHTER, for himself, his heirs, assigns, executors and administrators (the "Releasing Parties") agree to fully and unconditionally release, indemnify, reimburse, defend, and hold harmless MMAWC, its successors, licensees and assigns, and all of the foregoing's officers, directors, managers, members, fighters, sponsors, television partners, employees, agents and other representatives, contractors and volunteers (the "Released Parties"), from any and all claims arising from the participation in the Events, before or after the Events, preparation or training for the Events, travel to the Events or travel for promotional duties under this Agreement due to injury, illness, damage, loss or harm to FIGHTER, FIGHTER's property or FIGHTER's death. This release and indemnification includes, but is not limited to: releasing the Released Parties voluntarily forever, discharging, waiving and relinquishing any and all, past, present, and future claims and causes of actions, whether based on negligence or gross negligence that they may have against the Released Parties.

## SECTION 12. CONFIDENTIALITY.

12.1    Other than as may be required by applicable law, government order or Regulations, or by order or decree of the Court, FIGHTER hereby acknowledges and agrees that in further consideration of MMAWC entering into this Agreement, and/or continued Agreement, FIGHTER shall not, at any time during this Agreement, or after the termination of this Agreement for any reason whatsoever, disclose to any person, organization, or publication, or utilize for the benefit or profit of FIGHTER or any other person or organization, any sensitive or otherwise confidential business information, idea, proposal, secret, or any proprietary information obtained while with MMAWC and/or regarding MMAWC, its employees, independent contractors, agents, officers, directors, subsidiaries, affiliates, divisions, agents, representatives, successors, licensees or assigns. Included in the foregoing, by way of illustration only and not limitation, are such items as reports, business plans, sales information, cost or pricing information, lists of suppliers or customers, talent lists, and any other tangible or intangible materials created by, for or in connection with FIGHTER in connection with appearances in the Events, information about any Event or bout, information regarding any contractual relationships maintained by MMAWC and/or the terms thereof (including without limitation the terms of this Agreement, which FIGHTER shall keep confidential), and/or any and all information regarding other competitors or personnel engaged by or associated with MMAWC.

02-05-2015

**Fighter Initials**          **MMAWC**

Z.E._002606

12.2     FIGHTER acknowledges and agrees that his agreement to be bound by the terms hereof is a material condition of MMAWC's willingness to use and continue to use FIGHTER'S services. Other than as may be required by applicable law, government order or regulation; or by order or decree of the court, the parties agree that FIGHTER shall not publicly divulge or announce, or in any manner disclose, to any third party, any of the specific terms and conditions of this Agreement, and FIGHTER warrants and covenants to MMAWC that no person or entity associated with FIGHTER, including without limitation the officers, directors, employees or agents or representatives of any of the foregoing will do so either.

12.3     MMAWC shall have the sole right to determine the content, and day and time of any press announcement or press release relating to the execution of this Agreement or the subject matter of this Agreement. FIGHTER further acknowledges that MMAWC has the sole right to publicly divulge or announce, or in any manner disclose any of the specific terms and conditions of this Agreement to any other third party at MMAWC's sole discretion.

## SECTION 13. SPONSORSHIP AND COMMERCIAL IDENTIFICATION.

13.1     FIGHTER shall submit to MMAWC for its approval, the name, identity, logo or other identifying element of a sponsor of FIGHTER (including, without limitation, body art (including without limitation any henna or other temporary tattoos), walkout clothes, apparel and gear, t-shirts, hats, beanies, fight shorts, gloves, robes, shoes, and banners) for receipt by MMAWC by no later than (7) seven days before the Events. MMAWC reserves the right to preclude any of FIGHTER's sponsors for cause, such as, the sponsor conflicts with or is in competition with MMAWC or any of MMAWC's sponsors or the sponsorship will cause injury to the reputation of MMAWC or MMAWC's sponsors and/or their respective officers and owners or will impugn the identity of MMAWC or any of MMAWC's sponsors. Should FIGHTER attempt to display any name, identity, logo or other identifying element of a sponsor that has not been pre-approved in writing by MMAWC or its affiliates, MMAWC may deem such an act a material breach of this Agreement. If possible, MMAWC in its sole and absolute discretion, shall cause FIGHTER to immediately remove such unauthorized element, have FIGHTER seek immediate approval and release of the right to display and use such element, or remove FIGHTER from participating in the bout or Event without compensation to FIGHTER. MMAWC reserves the right, in its sole discretion, to alter any of its policies, including without limitation the right to alter its policies concerning FIGHTER's sponsors, at any time(s).

13.2     FIGHTER covenants and agrees to accept MMAWC or its television or site partners' or other exhibitor's sponsor restrictions relating to wording, symbols, pictures, designs, names or other advertising or informational material which may be edited, canceled, blurred or omitted on television or in person after an official approval by MMAWC, any monies or other form of compensation lost by FIGHTER will not be collectible or due from MMAWC or any of its affiliates.

02 05 2013

**Fighter Initials**          **MMAWC**

Z.E._002607

## SECTION 14. BOUT AGREEMENT, STANDARD FIGHT CONTRACT.

14.1 For each Event that FIGHTER is required to participate in pursuant to this Agreement, FIGHTER shall execute in good faith and comply with the terms of a Bout Agreement ("Bout Agreement"), the standard fighter contract required by any Athletic Commission ("Standard FIGHTER Contract"), and any other contract required to be executed by law, the terms of which shall be consistent with the terms of this Agreement and acceptable to both MMAWC and FIGHTER. To the extent of any conflict between the terms of this Agreement and the Bout Agreement with respect to a specific Event in which FIGHTER is scheduled to compete, to the extent required by law of the applicable jurisdiction, the Bout Agreement shall control. Bout Agreements for the purpose of this Agreement shall be in the form of Addenda and incorporated herein into this Agreement by reference once executed by both parties.

## SECTION 15. INDEMNIFICATION.

15.1 FIGHTER shall indemnify, defend and hold harmless MMAWC, its subsidiaries, affiliates, sponsors, successors, licensees and assigns, and each of their members, managers, directors, officers, employees, representatives, agents, representatives and contractors from and against any claims, actions, proceedings, expenses (including attorneys' fees of counsel of indemnified party's choice, as and when incurred) and damages arising from or relating to any negligent or intentional acts or omissions by FIGHTER or any of FIGHTER's affiliates or by the actual or claimed breach of this Agreement or any Bout Agreement by FIGHTER or any of FIGHTER's affiliates or the inaccuracy of any of FIGHTER's representations, warranties or covenants contained herein or within any Bout Agreement.

15.2 MMAWC shall indemnify and hold harmless FIGHTER from and against any claims, actions, proceedings, expenses (including attorneys' fees of counsel of indemnified party's choice, as and when incurred) and damages arising from or relating to any actual breach of this Agreement or any other Agreements by MMAWC or any of MMAWC's affiliates or the inaccuracy of any of MMAWC's representations, warranties or covenants contained herein or within any Agreements.

## SECTION 16. MISCELLANEOUS.

16.1 Nothing contained in this Agreement shall be construed to constitute an Employment, partnership, or joint venture relationship between FIGHTER and MMAWC or to create any fiduciary duties of any kind, whether by operation of law, equity, or contract, nor shall FIGHTER have any authority to bind MMAWC in any respect, nor MMAWC any authority to bind FIGHTER. FIGHTER is an independent contractor and FIGHTER shall execute and hereby irrevocably appoints MMAWC as his limited attorney-in-fact, solely for purposes of executing, if FIGHTER refuses to do so, any instruments necessary to accomplish or confirm the foregoing, any purpose contemplated by this Agreement and any and all of the rights granted to MMAWC herein, provided, however, that MMAWC's rights, duties and obligations as attorney-in-fact as provided in this Section, if any, shall immediately terminate upon the termination of

02.05.2013

**Fighter Initials**        **MMAWC**

Z.E._002608

this Agreement (provided that all acts of MMAWC under the power of attorney provided by FIGHTER hereunder shall survive the termination or expiration of this Agreement). The foregoing power of attorney in MMAWC is coupled with an interest and is therefore irrevocable.

16.2    This Agreement contains the entire understanding of the parties with respect to the subject matter hereof and all prior agreements entered into between MMAWC and FIGHTER, whether written or oral, are merged into this Agreement. Each party warrants and represents to the other than they have the authority to enter into this Agreement, the execution hereof does not constitute a breach of any other agreements to which the party may be bound and each party hereto is willing, able and capable of performing all obligations contained herein. There are no other agreements, representations, or warranties not set forth herein with respect to the subject matter hereof; and the parties expressly acknowledge that any representation, promise or inducement by any party to any other party that is not embodied in this Agreement is not part of this Agreement, and they agree that no party shall be bound by or liable for any such alleged representation, promise or inducement not set forth herein.

16.3    Failure by either party to enforce any rights hereunder shall not be deemed to be a waiver of any such rights, nor operate as a bar to the enforcement thereof at any time or times thereafter. This Agreement may not be changed or altered except in writing signed by MMAWC and FIGHTER.

16.4    If any provision of this Agreement is found to be illegal, invalid, or unenforceable as to any circumstance, such finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. Rather, the offending provision shall be considered modified so that it becomes legal, valid and enforceable, or, if not capable of such modification, shall be considered deleted. The illegality, invalidity, or unenforceability of any provision shall not affect the legality, validity, or enforceability of any other provision of this Agreement in any other jurisdiction.

16.5    MMAWC shall have the right to assign, license, or transfer any or all of the Rights granted to and hereunder to any person, firm or corporation without consent of FIGHTER. FIGHTER may not assign, transfer or delegate his obligations hereunder and any attempt to do so shall be void.

16.6    All notices under this Agreement ("Notices") shall be by first class and registered or certified mail, postage prepaid, return receipt requested; or first class by a nationally recognized overnight or other express courier services with tracking numbers. All Notices shall be effective and shall be deemed delivered, on the date of delivery if delivered during normal business hours of the recipient, and if not delivered during such normal business hours, on the next Business Day following delivery; Either FIGHTER or MMAWC may change its address by Notice to the other party.

02-06-2015

**Fighter Initials**          **MMAWC**

Z.E._002609



(a) If to FIGHTER: Fitch Fighter@gmail.Com  Crazy Bob Cook @ Hotmail.Com
5 River park Place West # 20 J Fresno CA 93720

(b) If to MMAWC:
MMAWC L.L.C.
Attention: Legal Department
3275 S. Jones, Ste. 104
Las Vegas, NV 89146

16.7    In the event there is any claim, dispute, or other matter in question arising out of or relating to this Agreement, the enforcement of any provisions therein, or breach of any provision thereof, MMAWC and FIGHTER agree that the exclusive jurisdiction and venue for the resolution of any dispute arising from or relating to this Agreement shall lie in the Eighth Judicial District Court for the State of Nevada, sitting in Las Vegas, Nevada. Each of the parties hereto irrevocably consents to the service of process in any such proceeding by the mailing of a copy of the summons and complaint by first-class mail to such party in accordance with the notice provisions of this Agreement.

16.8    In the event that MMAWC or FIGHTER retains counsel to enforce or interpret this Agreement or any other writing or agreement entered into by and between MMAWC and FIGHTER through legal proceedings, mediation, or arbitration, or for the resolution of any conflict or dispute arising from or pertaining to this Agreement or any other writing or agreement entered into by and between MMAWC and FIGHTER, the prevailing party shall be entitled to recover from the other party all attorney's fees and costs related to such proceedings.

16.9    The Parties agree that the Rights granted to MMAWC and the representations, warranties, covenants, licenses, agreements and indemnities of MMAWC and FIGHTER contained in this Agreement will survive the termination of this Agreement.

16.10    FIGHTER acknowledges that his services as a professional mixed martial artist and the Ancillary Rights granted to MMAWC herein are special, unique, extraordinary, irreplaceable and of peculiar value, and that in the event of FIGHTER's breach or threatened breach of this Agreement or any Bout Agreement, MMAWC would suffer irreparable damage which could not be reasonably or adequately compensated by an award of damages. In the event of such breach or threatened breach, MMAWC shall be entitled, in addition to any other available remedy, to obtain equitable relief, including, but not limited to, an injunction against such breach and FIGHTER waives the right to assert as a defense in any such action that MMAWC has an adequate remedy at law. To the extent that a bond is necessary to obtain an injunction, FIGHTER agrees that the bond shall not exceed Five Hundred Dollars (US $500.00).

02-05-2015

J. F.
**Fighter Initials**

**MMAWC**

Z.E._002610

16.11   This Agreement shall be binding upon, and shall inure to the benefit of, the Parties hereto and their respective executors, administrators, heirs, successors, and assigns.

16.12   The parties hereto explicitly represent and warrant that they have read and understand this Agreement in its entirety, that they have had the opportunity to consult with counsel of their choosing; that they are authorized and empowered to contractually bind themselves by agreeing to and entering into this Agreement; and that this contract is the product of negotiations between the parties.

16.13   The term "Agreement" shall mean this **EXCLUSIVE PROMOTIONAL FIGHT AGREEMENT** and any bout agreement, rider, exhibits, addenda, or supplement hereto that is in writing and signed by FIGHTER and MMAWC.

16.14   Time is of the essence with regard to each of the provisions set forth in this Agreement

16.15   Nothing herein shall prevent MMAWC from engaging in promotion activities for any other FIGHTER, including those fighters in the same weight class.

16.16   This Agreement may be executed in counterparts, which, when taken together, form a single binding agreement. A facsimile or pdf/email signature of this Agreement shall be as fully binding as an original signature

*[signatures on following page]*

02-07-2015

**Fighter Initials**          **MMAWC**

Z.E._002611

**IN WITNESS WHEREOF,** the parties have executed this Agreement on the day and year written above.

**FIGHTER**

Signature: _____

FIGHTER

Printed Name: Jonath. P. Fitch

Social Security No.: ▮▮▮▮▮▮

Date: 9 / 13 / 15

Fighter Address

_____

_____

_____

Passport No. _____

Passport Expiration Date _____

**Fighter Phone Number** _____

**MMAWC, LLC**

Signature: _____

MMAWC

Printed Name: RAM SECO

Title: PRES & Dect

Date: 02 / 04 / 2016

1   Fighter was born on  2 / 24 / 78 in  Ft W. ne IN , and

☑ Fighter is a citizen of the United States
[or]
☐ Fighter has a work visa allowing Fighter to earn money in the United
    States through mixed martial arts competitions and
☐ A true copy of Fighter's UNITED STATES WORK VISA is attached.

2   Fighter has a valid DRIVER'S LICENSE numbered _____ expiring

on _____ / _____ issued by _____, and

☐ A true copy of Fighter's current DRIVER'S LICENSE is attached.

Fighter Initials          MMAWC

Z.E._002612

# EXCLUSIVE PROMOTIONAL FIGHT AGREEMENT

## EXHIBIT "A"

## FIGHTER'S NAME, TERM, COMPENSATION, AND INCIDENTALS

**FIGHTER'S NAME:**
For the purposes of this Agreement, its Exhibits, and Addenda; "FIGHTER" shall be:
**JON FITCH**

**TERM:** For the purposes of this Agreement, Addenda, and Exhibits, the "Term" shall be defined as commencing upon the Effective Date and terminating on the later of Eighteen (18) Months after the first bout in which FIGHTER competes in an Event promoted by MMAWC or at midnight (12:00AM) the day FIGHTER competes in and completes his fourth (4th) bout, whichever occurs earlier (the "Term Expiration").

The Term Expiration shall be the final termination date, unless this Agreement is formally terminated earlier than the Term Expiration by MMAWC due to Termination for Cause or MMAWC's option to terminate due to a material breach of this Agreement. Furthermore, the Term Expiration shall be the final termination date, unless this Agreement is automatically renewed pursuant to this Agreement, Addenda and Exhibits.

MMAWC agrees that if no actual fight is held by MMAWC or formally offered to FIGHTER within any Six (6) month period including the period from the initial Effective Date till the first fight, provided the FIGHTER is ready, willing and able to fight during the total Six (6) month period, the FIGHTER has the right to terminate this agreement by written notice to MMAWC. If FIGHTER terminates this agreement for non-promotion in a Six (6) month period, the FIGHTER agrees to forfeit and waive his right in and all claims to any fees or payment corresponding to the Event

Both parties further agree that in the event the FIGHTER is MMAWC Champion at the expiration of the Term shall be automatically extended for a period commencing on the day the Termination Date and ending One (1) year from the Termination date. (the "Championship Clause"). MMAWC agrees that in the event this Championship Clause is implemented, MMAWC shall provide FIGHTER with a minimum of three (3) bouts during the one (1) year Championship Clause extension

MMAWC reserves the right to suspend and extend the Term in the event FIGHTER is disabled, sick or injured for any reason; incarcerated, has his license suspended or revoked by an Athletic Commission (not including medical suspensions issued in the normal course of competition), has his ability to travel restricted by a recognized governmental agency or is otherwise unable, unwilling or refuses to compete or train for a bout for any reason whatsoever (the "Inactive Period"). Such extension shall include without limitation, the length of the Inactive Period.

02-05-2015

Fighter Initials _____        MMAWC _____

Z.E._002613

The Term Expiration, Termination for Cause, automatic renewals or extensions of the Term, (as defined in this Agreement, Addenda Exhibits), or the death or incapacity of the FIGHTER, shall not affect or terminate the grant of the Ancillary Rights or any of the other general or specific provisions of this Agreement, all of which shall survive any such Term Expiration, Termination for Cause, death or incapacity or any other circumstance whatsoever.

## COMPENSATION:

Compensation to FIGHTER is as follows:

First Bout under this Agreement  The Fighter shall be paid Thirty Thousand United States Dollars ($30,000 US) to show/fight plus an additional Thirty Thousand United States Dollars ($30,000 US) as a win bonus in the event FIGHTER is declared the winner of the First Bout by the governing State Athletic Commission

The First Bout Won under this Agreement the Fighters pay will increase for the next bout to Thirty-Five Thousand United States Dollars ($35,000 US) to show/fight plus an additional Thirty-Five Thousand United States Dollars ($35,000 US) as a win bonus in the event FIGHTER is declared the winner of the bout

The Second Bout Won under this Agreement the Fighters pay will increase for the next bout to Forty Thousand United States Dollars ($40,000 US) to show/fight plus an additional Forty Thousand United States Dollars ($40,000 US) as a win bonus in the event FIGHTER is declared the winner of the bout

The Third Bout Won under this Agreement the Fighters pay will increase for the next bout to Forty-Five Thousand United States Dollars ($45,000 US) to show/fight plus an additional Forty-Five Thousand United States Dollars ($45,000 US) as a win bonus in the event FIGHTER is declared the winner of the bout

While Champion, FIGHTER shall receive a onetime incremental increase added to the FIGHTER's last Show / Win compensation, in the amount of Fifteen Thousand United States Dollars ($15,000 US) to show/fight plus an additional Fifteen Thousand United States Dollars ($15,000 US) as a win bonus.  Thereafter for each subsequent win after the onetime incremental increase, FIGHTER shall receive incremental increases in the amount of Five Thousand United States Dollars ($5,000 US) to show/fight plus an additional Five Thousand United States Dollars ($5,000 US) as a win bonus

While Non Champion, FIGHTER shall receive incremental increases in the amount of Five Thousand United States Dollars ($5,000 US) to show/fight plus an additional Five Thousand United States Dollars ($5,000 US) as a win bonus.

92-05-2015

**Fighter Initials**    **MMAWC**

Z.E._002614

If at the end of Championship Clause FIGHTER is still Champion, FIGHTER's agreement will be extended by One (1) bout with an incremental increase in the amount of show/fight of Fifteen Thousand ($15,000 US)/Fifteen Thousand ($15,000 US) for each subsequent win and continue for a maximum period of three (3) additional fights or one (1) year. At such time that FIGHTER is no longer recognized as champion, the terms of Section 4.2 regarding exclusive negotiation period and last right of refusal and opportunity to match shall be in effect.

Any loss by FIGHTER results in FIGHTERS show/fight and win bonus pays to remain the same as the Last Bout compensation of the prior fight.

## INCIDENTALS:

MMAWC shall bear the cost for (a) one (1) economy class round trip airplane ticket-for FIGHTER, and (b) one (1) economy class round trip airplane ticket for a designated person, to the destination designated by MMAWC for each Event. MMAWC may designate at its sole discretion the aircraft carrier and the routes from which the airline tickets will be purchased. In the event FIGHTER is competing in a championship bout, FIGHTER shall receive an additional economy round trip airplane ticket for a designated person.

MMAWC shall bear the reasonable cost of hotel accommodations for up to two (2) persons (for FIGHTER, and his designee) for a maximum of five (5) nights per Event, such nights to be indicated by MMAWC for each respective Event. MMAWC may designate at its sole discretion the accommodations to be provided. In the event FIGHTER is competing in a championship bout, FIGHTER shall receive an additional hotel room under the same guidelines mentioned above.

MMAWC shall pay as a meal allowance One Hundred Dollars ($100.00) per day for FIGHTER for a maximum of five (5) days, such days to be indicated by MMAWC for each respective Event.

Any other cost or expense that is not expressly set forth herein shall be borne by FIGHTER, including but not limited to license fees or any additional incidentals requested by FIGHTER.

02-05-2015

Fighter Initials    MMAWC

Z.E._002615