# EXHIBIT 72
# -
# REDACTED VERSION OF
# ECF NO. 540-71

# EXHIBIT 67

**Exclusive Promotional and Ancillary Rights Agreement between Zuffa and Brock Lesnar**

## EXCLUSIVE PROMOTIONAL AND
## ANCILLARY RIGHTS AGREEMENT

**THIS EXCLUSIVE PROMOTIONAL AND ANCILLARY RIGHTS AGREEMENT** ("**Agreement**") is made as of the date set forth below ("**Effective Date**") by and between **ZUFFA, LLC,** a Nevada limited liability company d/b/a Ultimate Fighting Championship® ("**ZUFFA**") and DeathClutch, LLC, a Minnesota limited liability company ("**DEATHCLUTCH**") who employs Brock Lesnar ("**Fighter**").

### RECITALS

A.     ZUFFA is in the business of, among other things, promoting mixed martial arts fighting competitions throughout the world under the trade name of Ultimate Fighting Championship ("**UFC**"®) and desires to enter into an agreement with Fighter to be the exclusive promoter for Fighter's future bouts for a period of time, provided that DEATHCLUTCH and Fighter grants certain ancillary rights to ZUFFA in perpetuity, as set forth herein; and

B.     Fighter is a professional mixed martial arts fighter and, through DEATHCLUTCH, desires to enter into an agreement with ZUFFA providing for it to be the exclusive promoter for Fighter's future bouts for a period of time, and is willing to grant to ZUFFA certain ancillary rights in perpetuity, as set forth herein. DEATHCLUTCH is a Minnesota limited liability company through which Brock Lesnar ("FIGHTER") conducts business. All references to "Fighter" shall be deemed, to the extent necessary to carry out the intent of this Agreement, to include DEATHCLUTCH.

C.     ZUFFA and DEATHCLUTCH and Fighter intend for this Agreement to specifically supersede Fighter's previous Exclusive Promotional and Ancillary Rights Agreement dated on or about October 13, 2007. Additionally, ZUFFA, DEATHCLUTCH and Fighter agree that upon execution of this Agreement, neither ZUFFA, DEATHCLUTCH, nor Fighter will have any rights or obligations under the previous agreement, except to the extent that the provisions therein specifically survive the term of that previous agreement, and to the extent that said terms do not conflict with the provisions and spirit and intent of this Agreement.

**NOW, THEREFORE,** in consideration of the foregoing, the agreements and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, ZUFFA and Fighter agree as follows:

### ARTICLE I
### INCORPORATION OF RECITALS

1.     The recitals set forth above are incorporated herein by this reference.

### ARTICLE II
### GRANT OF PROMOTIONAL RIGHTS

2.     DEATHCLUTCH  on behalf of Fighter and Fighter hereby grant to ZUFFA the exclusive unrestricted worldwide right to secure, promote, arrange and present any and all mixed martial arts contests (individually, a "**Bout**" and collectively, "**Bouts**") to be engaged in by Fighter during the Term (defined below) and any Extension Term (defined below) ("**Promotional Rights**").

//

1

CONFIDENTIAL                                                                                              ZFL-0493435

## ARTICLE III
## GRANT OF ANCILLARY RIGHTS / COLLECTIVE RIGHTS

3.1     DEATHCLUTCH on behalf of Fighter and Fighter hereby grant to ZUFFA the unrestricted worldwide right to use, edit, disseminate, display, reproduce, print, publish and make any other uses of the name, sobriquet, voice, persona, signature, likeness and/or biography (collectively, "**Identity**") of Fighter, as it appears in the Bouts or in connection with advertising and promotion for the Bouts or in connection with advertising and promotion for the UFC and shall not include the right to use Fighter's Identity in any merchandising unless specifically stated below. Notwithstanding the aforementioned, Fighter exclusively grants to ZUFFA all rights necessary to exploit his Identity for use connection with the UFC® video games (the "Video Games") developed during the term, on all platforms, including, but not limited to, video game consoles, computer platforms and arcade style consoles. ("**Ancillary Rights**"). DEATHCLUTCH shall ensure, and Fighter agrees to make himself available, for a reasonable amount of time, as may be required during the development and production stages of the Video Game and any subsequent versions of the Video Game.

3.2     The Promotional Rights and Ancillary Rights shall be ZUFFA's sole property in perpetuity throughout the world, which ZUFFA shall hold free and clear from any and all claims of Fighter or anyone claiming through Fighter.  For the avoidance of doubt, the Ancillary Rights described herein shall survive even the death of the Fighter.

3.3     The Promotional Rights and Ancillary Rights are referred to collectively, where appropriate, as the "**Rights**."

3.4     The Rights include, but are not limited to, the following, which are all in perpetuity throughout the world:

a.     The right to all site fees, live-gate receipts, advertising fees, sponsorship fees, and motion picture, all forms of radio, all forms of television (which whenever referred to herein shall include, without limitation, live or delayed, interactive, home or theater, pay, pay-per-view, satellite, closed circuit, cable, subscription, multi-point, master antenna, or other), telephone, wireless, computer, CD-ROM, DVD, any and all Internet applications, films and tapes for exhibition in any and all media and all gauges, including but not limited to video and audio cassettes and disks, home video and computer games, arcade video games, hand-held versions of video games, video slot machines, photographs (including raw footage, out-takes and negatives), merchandising and program rights, now or hereinafter invented, in connection with or based upon the UFC brand, the Bouts or activities pertaining to the Bouts, including but not limited to, training, interviews, press conferences, weigh-ins and behind-the-scenes footage for the Bouts (the "**Pre-Bout Events**"), post-fight interviews and press conferences (the "**Post-Bout Events**") and any parts thereof on a commercial, sustaining, theatrical or other basis, and by any and all means, methods and devices, whatsoever;

b.     The right to sell, assign, lease, license, sublease, use or otherwise dispose of any and all of the Rights and the results of the exercise thereof, and to authorize, license and grant the right to exercise any of the Rights;

c.     The right to do all things necessary for the full and complete use, exploitation and exercise of the Rights, including the right to promote and exploit all rights granted hereunder and the results of the exercise thereof, and the right to negotiate, enter into and perform any and all agreements relating to the Rights for the proper production and promotion of radio and television advertisements, publicity, and broadcasts relating to the UFC brand, the Bouts, the Pre-Bout Events and the Post-Bout Events;

2

CONFIDENTIAL                                                                                          ZFL-0493436

d.      All right, title and interest in and to any and all recordings, including without limitation, television, radio, Internet, wireless and motion picture films, and the video and audio cassettes of, or based upon the UFC brand, the Bouts, the Pre-Bout Events and the Post-Bout Events, and the right to secure in ZUFFA's name (or that of its nominee) copyright and other protection to the fullest extent available;

e.      The unrestricted right to use, edit, disseminate, display, reproduce, print and/or publish in any media the Identity of Fighter for the purpose of advertising, promotion, publicity, merchandising and exploitation of the UFC brand, the Bouts, the Pre-Bout Events and Post-Bout Events, including the use of the Identity of Fighter in endorsements of any commercial product or service;

f.      The unrestricted right to use, edit, disseminate, display, reproduce, print, publish and make any other uses of the Identity of Fighter in connection with the development, manufacturing, distribution, marketing and/or sale of any and all interactive devices, home video and computer games, arcade video games, hand held versions of video games, video slot machines, CD-ROMS, DVDs, Internet applications, wireless, video and audio cassettes and disks, apparel, photographs, souvenirs, toys, merchandising tie-ups and advertisements, and any and all other similar type products, including the sleeves, jackets and packaging for such products, hereunder made by any method now known or hereafter to become known.  Additionally, Fighter acknowledges the existence of UFC-branded video games developed, being developed or to be developed by various companies, including, but not limited to, THQ, Inc., and the potential for a WEC-branded video game, and Fighter further acknowledges that the Rights granted herein to ZUFFA shall be <u>exclusive</u> with respect to any such video games, and any derivatives of such video games created by ZUFFA or its licensees and branded with UFC, Pride, WEC or any brand subsequently developed, owned or acquired by Zuffa or any of its agents or subsidiaries; and

g.      The non-exclusive right to use a three minute clip of the recording of any prior bout, including any non-ZUFFA/UFC bout, in which Fighter was a participant (to the extent that Fighter possesses the rights thereto or can reasonably obtain such rights), for the purpose of publicizing a Bout, which clip shall be provided to ZUFFA upon request therefore.

h.      The exclusive and unrestricted right to use the Identity of Fighter to exploit the UFC brand, its business activities, and the business activities of any networks, stations, sponsors and other users and exhibitors, for any purpose including, without limitation, any commercial purpose whatsoever including, but not limited to, product endorsement, whether related to the UFC, third-party sponsors or otherwise.

i.      The exclusive and unrestricted right to register Fighter (including any and all variants thereof) as one or more domain names for use on the World Wide Web (e.g., johnsmith.com, john_smith.org, j-smith.net, etc.) and the right to utilize and own such domain names in connection with the UFC brand, during the Term and without restriction, in whatever way ZUFFA selects. Notwithstanding the foregoing, ZUFFA is under no obligation to register Fighter or to in any way use such domain names.

j.      All other rights not granted herein are reserved to Fighter.

ARTICLE IV
PROMOTION/EXCLUSIVITY

4.1     Each Bout shall be a mixed martial arts contest, one-on-one fight between Fighter and an opponent designated by ZUFFA, conducted pursuant to the rules and regulations of the athletic

3

ZFL-0493437

commission or official authority having jurisdiction over the Bout ("**Athletic Commission**").  Fighter and ZUFFA shall comply with and be bound by the rules and regulations of the Athletic Commission.  For Bouts that occur in a jurisdiction or country without an Athletic Commission, the language contained in Section 4.7 shall control.

4.2     ZUFFA shall promote and Fighter shall participate in the minimum number of Bouts set forth in the Term section below.  For purposes hereof, ZUFFA shall be deemed to have complied with its obligations to promote any Bout if ZUFFA shall have made an offer to DEATHCLUTCH and/or Fighter to promote a Bout in accordance with the provisions hereof and DEATHCLUTCH and/or Fighter shall have refused to participate.  If a Bout is the undercard to a main event and the main event is canceled or postponed for any reason, the failure of such Bout to take place shall not be deemed non-performance by ZUFFA and ZUFFA shall not be liable for any Fighter's Purse associated therewith.

4.3     During the Term, DEATHCLUTCH  shall ensure and Fighter shall cooperate and assist in the advertising, publicity, and promotion of (i) the Bouts, (ii) any and all rebroadcast of the Bouts in any media whatsoever, (iii) other UFC bouts, (iv) other UFC events and broadcasts, and (v) the sale of UFC merchandise, including making appearances at such reasonable number of press conferences, interviews and other sponsorship and promotional activities (any of which may be telecast, broadcast, recorded and/or filmed) as ZUFFA may designate, without additional compensation therefore. For such promotional activities, ZUFFA will arrange and pay for Fighter's reasonable travel and hotel accommodations.

4.4     All Bouts shall be on dates and at sites to be designated by ZUFFA, in its sole and absolute discretion.  If any Bout is postponed for any reason except ZUFFA's non-performance, the Bout Agreement applicable to such bout shall determine the rights of the parties and in addition thereto, the Term shall be extended, at ZUFFA's election, by a number of days equal to the number of days between the date originally scheduled for the Bout and the date on which the Bout occurs, not to exceed one hundred twenty (120) days.

4.5     During the Term, ZUFFA shall have the exclusive right to promote all of Fighter's bouts and Fighter shall not participate in or render his services as a professional fighter or in any other capacity to any other mixed martial art, martial art, boxing, professional wrestling, or any other fighting competition or exhibition, except as otherwise expressly permitted by this Agreement.

4.6     Notwithstanding the foregoing, in the event Fighter is not then the UFC champion, Fighter is permitted, subject to the consent of ZUFFA, which may be granted or withheld in ZUFFA's sole discretion, to contract with other promoters or to engage in any mixed martial arts bout or fighting competition or exhibition promoted by other promoters ("**Other Bout**") during the Term provided (i) such Other Bout is not televised by any domestic or international television network, station, cable system, satellite or other provider; (ii) such Other Bout is scheduled for and takes place on a date which is more than sixty (60) days before or more than thirty (30) days after any non-championship Bout and more than ninety (90) days before or more than thirty (30) days after any championship Bout; (iii) a copy of any agreement for any Other Bout shall have been furnished to and approved by ZUFFA prior to its execution by DEATHCLUTCH and/or Fighter; and (iv) a fully executed copy of any such agreement is provided to ZUFFA within five (5) days of execution by DEATHCLUTCH and/or Fighter.  Except in compliance with the foregoing limited exception, DEATHCLUTCH and/or Fighter shall not, during the Term, grant promotional or other rights which conflict with the Rights. Furthermore, DEATHCLUTCH and/or Fighter expressly agrees that this Agreement shall be automatically extended for an additional one hundred twenty (120) days for each non-UFC promoted competition or exhibition that Fighter participates in, and any reference to the Term herein shall be deemed to include any such extension(s).

4

CONFIDENTIAL

4.7     Any and all Bouts that occur in a jurisdiction or country without an Athletic Commission shall be conducted pursuant to the statutes, rules and regulations of the State of Nevada in effect at the time of the Bout, including, but not limited to, the Unified Rules of Mixed Martial Arts (the "Nevada Rules"); for the protection of the health and safety of the Fighter, to promote fairness in the administration of the Bout, and to preserve the integrity of the sport of mixed martial arts.  In its sole discretion, ZUFFA may utilize the Nevada Rules in the oversight of any Bouts that occur under this Subsection 4.7.  Fighter may appeal any advisory opinion by ZUFFA regarding any violations of the Nevada Rules relating only to Bouts that occur in a jurisdiction or country without an official government mandated Athletic Commission to an independent third-party arbitrator or arbitration panel selected pursuant to the guidelines developed by the American Arbitration Association.  All costs and fees associated with an appeal taken pursuant to this Section shall be the exclusive responsibility of the Fighter.  Regardless of where a Bout occurs, in no event shall a Fighter have any right to appeal a decision by ZUFFA relating to the UFC Title or the UFC Championship belts.

## ARTICLE V
## TERM

5.1     The duration of the Promotional Rights ("**Term**") shall commence on the Effective Date and end on the earlier of (i) Thirty Five (35) months after the date of the first bout promoted by ZUFFA involving Fighter under this Agreement; or (ii) the date on which Fighter has participated in at least eight (8) Bouts promoted by ZUFFA under this Agreement ("**Termination Date**"), unless terminated sooner or extended further pursuant to the provisions of this Agreement.

5.2     If, at the expiration of the Term, Fighter is then the UFC champion, the Term shall be automatically extended for a period commencing on the Termination Date and ending on the earlier of (i) one (1) year from the Termination Date; or (ii) the date on which Fighter has participated in three (3) bouts promoted by ZUFFA following the Termination Date ("**Extension Term**").  Any reference to the Term herein shall be deemed to include a reference to the Extension Term, where applicable.

5.3     The respective lengths of time to provide Fighter with the minimum number of Bouts enumerated in this Section 5 shall be extended for any period of time that Fighter is unable or unwilling to compete. Such extension shall include without limitation, any time periods when Fighter is disabled, sick or injured for any reason; incarcerated; suspended or revoked by an Athletic Commission, has his ability to travel restricted by a recognized governmental agency or is otherwise unable, unwilling or refuses to compete or train for a Bout for any reason whatsoever.

5.4     Neither the expiration, nor any Acceleration (as defined below), nor the death or incapacity of the Fighter, shall affect or terminate the grant of the Ancillary Rights or any of the other general or specific provisions of this Agreement, all of which shall survive any such expiration, Acceleration, death or incapacity.

5.5     ZUFFA shall not be deemed in default of this Agreement to the extent that performance of its obligations are delayed or prevented by reason of any act of God, fire, natural disaster, war, riots, strike or labor difficulties, terrorism, power failure, other calamity or acts constituting force majeure, or any governmental or Athletic Commission enactment, determination or action, regulation or order. If there is an occurrence of a force majeure event or other bona fide action, ZUFFA may elect to suspend this Agreement for a period equal to the duration of the occurrence, and no compensation shall be paid or become due to Fighter during such suspended period.

5

ZFL-0493439

ARTICLE VI
BOUT AGREEMENT AND STANDARD FIGHTER CONTRACT

6.      For each Bout, the parties shall execute and comply with the terms of a Bout Agreement ("**Bout Agreement**"), the standard fighter contract required by the Athletic Commission ("**Standard Fighter Contract**"), and any other contract required to be executed by law, the terms of which shall be consistent with the terms of this Agreement.  To the extent of any conflict between this Agreement and a Bout Agreement with respect to a Bout, the Bout Agreement shall control.

ARTICLE VII
COMPENSATION

7.1      Compensation to Fighter shall take the form of a "**Fighter's Purse**" and, if and only if Fighter is declared the winner of a Bout by the Athletic Commission, and if applicable, a "**Win Bonus**," each in the amounts as set forth below.  As it is used in this section, "permissible or required deductions or withholding" refers amounts withheld as required by law, valid Court order, or by an Athletic Commission.

a.      Fighter's Purse for the first Bout, which the parties agree will be UFC 100, on July 11, 2009, shall be One Million Five Hundred Thousand Dollars (US $1,500,000.00), less all permissible or required deductions and withholding.  For the avoidance of doubt, there shall be **no** Fighter's Win Bonus for the first Bout and Fighter shall not be eligible to receive any pay-per-view bonus for the first Bout as contemplated in Section 7.2 below.

b.      For each and every Bout, following the first Bout, in which Fighter participates where he is recognized as a UFC Champion, by ZUFFA, Fighter's compensation shall be as follows:

Fighter's Purse shall be One Million Three Hundred Seventy Five Thousand Dollars (US $1,375,000.00), less all permissible or required deductions and withholding.  Fighter shall also be eligible to receive a pay-per-view bonus as contemplated in Section 7.2 below.  However, for the avoidance of doubt, there shall be **no** Win Bonus for any Bout that occurs under this subsection.

c.      For each and every Bout, following the first Bout, in which Fighter participates where he is not recognized as a UFC Champion, by ZUFFA, Fighter's compensation shall be as follows:

Fighter's Purse shall be Seven Hundred Fifty Thousand Dollars (US $750,000.00), less all permissible or required deductions and withholding.  If, and only if, Fighter is declared the winner of any Bout under this subsection, Fighter's Win Bonus any Bout under this subsection shall be Two Hundred Fifty Thousand Dollars (US $250,000.00).  However, for the avoidance of doubt, Fighter shall **not** be eligible to receive a pay-per-view bonus as contemplated in Section 7.2 below.

7.2      During the Term, in addition to the Fighter's Purse, Fighter has the potential to receive a pay-per-view bonus for each UFC event in which the Fighter participates where he is recognized as a UFC Champion, by ZUFFA, and that is broadly distributed in the United States on iN DEMAND, DirecTV, and Echostar.  If such UFC event exceeds specified buy rates of combined sales through iN DEMAND, DirecTV, and Echostar, Fighter shall receive a pay-per-view bonus as follows:

//

6

CONFIDENTIAL

For all Bouts hereunder in which Fighter participates, where he is recognized as a UFC Champion, by ZUFFA, if combined iN DEMAND, DirecTV, and Echostar pay-per-view buys in the United States that occur on the original live premiere date or within thirty (30) days thereafter, Fighter shall receive:

> Two dollars ($2.00) for each pay-per-view buy over 700,000 buys.

>> *By way of example only, if such an applicable event were to generate 1,000,000 combined iN DEMAND, DirecTV, and Echostar pay-per-view buys in the United States, Fighter would receive a pay-per-view Bonus of **$600,000**, which would be for 300,000 applicable buys between 700,000 and 1,000,000 ($2.00 x 300,000 buys = $600,000).

For all Bouts hereunder in which Fighter participates that are not broadly distributed in the United States on iN DEMAND, DirectTV, and Echostar, Fighter and Zuffa shall negotiate compensation in good faith.

7.3.    In order to verify ZUFFA's compliance with the potential PPV Bonus, DEATHCLUTCH and/or Fighter shall be entitled, upon at least five (5) business days written notice, to review at ZUFFA's office all applicable pay-per-view reports that ZUFFA has received from iN DEMAND, DirecTV, and Echostar. DEATHCLUTCH and/or Fighter may exercise this right no more than once each calendar quarter for each Bout, up until two (2) years after the Date of the applicable Bout. PPV bonus to be paid on an ongoing basis within ten (10) business days of ZUFFA's receipt of payment from the PPV providers paying, in the aggregate, one hundred thousand (100,000) buys or greater. DEATHCLUTCH and/or Fighter agree to treat any such of review under this section as confidential and agree not to disclose any information reviewed hereunder except as required by law or pursuant to a valid Court order. Additionally, Fighter agrees to refund and reimburse ZUFFA for any overpayments in the event and to the extent iN DEMAND, DirecTV, and/or Echostar adjust the pay-per-view buys for any of Fighter's bouts retroactively. ZUFFA shall have the right to deduct any overpayment adjustments from future payments to Fighter.

7.4    Unless otherwise specified above, ZUFFA shall pay Fighter's Purse and Win Bonus, if applicable, within twenty-four (24) hours of the completion of each Bout, except that if Fighter tests positive for any Controlled Substance (defined below) in a post-fight drug test, payment will be subject to the authority of and ZUFFA shall make payments only in accordance with the recommendations of the Athletic Commission. ZUFFA may deduct or withhold from compensation any applicable tax (whether domestic or foreign), fee, or sum required or permitted to be deducted by law, and may offset against any such compensation any sums advanced to Fighter by ZUFFA or otherwise due from Fighter to ZUFFA.

7.5    The Fighter's Purse, Win Bonus and pay-per-view provisions, together with the Incidentals (defined below) shall be the sole compensation due to or claimed by DEATHCLUTCH and/or Fighter on account of this Agreement, the Rights, and Fighter's participation in any Bout or any activity related thereto. All amounts due to Fighter hereunder shall be made payable to DeachClutch, LLC and wire transferred to the following account:



7

7.6     Any and all potential Fighter's Purses and, if applicable, Win Bonuses capable of being earned during the Extension Term shall be negotiated in good faith between the parties. However, the parties expressly agree that such potential amounts are quantifiable and definite terms to this Agreement because each such Fighter's Purse and, if applicable, Win Bonus shall, at a minimum, be no less than the last Fighter's Purse and, if applicable, Win Bonus received by DEATHCLUTCH and/or Fighter during the standard Term of this Agreement. Any potential pay-per-view bonus, if applicable, shall be the same as set forth in Section 7.2.

7.7     Any advances shall be made in the sole discretion of ZUFFA, and may be subject to the prior approval of the Athletic Commission.

ARTICLE VIII
INCIDENTALS

8.1     In addition to the Fighter's Purse as provided for above, DEATHCLUTCH on behalf of Fighter or Fighter shall be entitled to only the transportation, lodging, meals or meal allowances, and Bout tickets (collectively, "**Incidentals**") identified in the Bout Agreement. Such Incidentals shall not be less than, but shall be in lieu of, the Incidentals set forth herein.

a.      For each Bout hereunder which Fighter participates in, ZUFFA shall provide a total of two (2) hotel or motel rooms (with Fighter's hotel room being a suite if he is champion) and one (1) round-trip first class and two (2) economy class airline tickets from Fighter's hometown to the site of the Bout for use by and transportation of Fighter and two (2) of Fighter's Affiliates ("**Fighter's Affiliates**"). Fighter's Affiliates shall include, but not be limited to, his managers, agents, trainers, seconds, sparring partners and other persons associated with Fighter who are connected with the Bouts.

b.      For all Bouts hereunder, Fighter shall arrive and check in to the lodging provided on the Training Commencement Date specified in the Bout Agreement, which may be up to eight (8) days prior to the date of the Bout ("**Training Commencement Date**"), and shall depart from and check-out of the lodging provided prior to the check-out time designated therefor on the day after the Bout ("**Departure Date**").

c.      From the Training Commencement Date through the Departure Date, Fighter and two (2) of Fighter's Affiliates shall each be provided with either Fifty Dollars (US $50.00) cash per diem for meals, or at ZUFFA's discretion, meal vouchers for three (3) meals per day.

d.      Lodging shall be provided only from the Training Commencement Date through the Departure Date. Fighter and Fighter's Affiliates shall be required to present valid credit cards upon registering at the hotel or motel, which shall be charged for any and all expenses beyond the cost of the room, and ZUFFA shall have no obligation for such additional expenses.

e.      Fighter shall also be provided with ten (10) tickets to each Bout hereunder, selection and location of which shall be determined by ZUFFA. If Fighter's Bout is the main event, Fighter shall receive said ten (10) tickets for seats located within ten (10) rows of the Octagon.

f.      Fighter and two (2) members of Fighter's team shall receive customary credentials for access to the event designated by ZUFFA at its sole discretion.

8.2     No other benefits, charges, expenses, or other incidentals of any kind (e.g., telephone charges, beverages, entertainment, gift shop items or other such benefits, charges and expenses) shall be provided by ZUFFA to DEATHCLUTCH, Fighter or anyone associated with DEATHCLUTCH and/or

8

CONFIDENTIAL

ZFL-0493442

Fighter, and DEATHCLUTCH and/or Fighter shall not be entitled to receive compensation in lieu of any unused or undesired Incidental.

## ARTICLE IX
## FIGHTER'S CONDUCT

9.1    DEATHCLUTCH shall ensure Fighter shall conduct himself in accordance with commonly accepted standards of decency, social conventions and morals, and Fighter will not commit any act or become involved in any situation or occurrence or make any statement which will reflect negatively upon or bring disrepute, contempt, scandal, ridicule, or disdain to DEATHCLUTCH, Fighter, the identity of DEATHCLUTCH, the Identity of Fighter or any of Fighter's Affiliates, ZUFFA or any of its officers, managers, members, employees, or agents.  Fighter's conduct shall not be such as to shock, insult or offend the public or any organized group therein, or reflect unfavorably upon any current or proposed sponsor or such sponsor's advertising agency, or any network or station over which a Bout is to be broadcast.

9.2    DEATHCLUTCH shall ensure and Fighter and Fighter's Affiliates shall maintain a high standard of sportsmanship and conduct themselves in a professional manner prior to, during, and following each Bout.

9.3    DEATHCLUTCH and/or Fighter shall not authorize or be involved with any advertising material or publicity materials that contain language or material which is generally considered to be obscene, libelous, slanderous or defamatory and will not violate or infringe upon, or give rise to any adverse claim with respect to, any common-law or other right whatsoever (including, but not limited to, any copyright, trademark, service mark, literary, dramatic, music or motion picture right, right of privacy or publicity, contract or moral rights of authors) of any person or entity.

9.4    DEATHCLUTCH shall ensure and Fighter shall maintain his eligibility and keep in good standing any license required to participate in any Bout.

9.5    DEATHCLUTCH shall ensure and Fighter shall not use any controlled or banned substance, including but not limited to marijuana, cocaine, methamphetamine, steroids or any similar drugs ("**Controlled Substance**").  DEATHCLUTCH and Fighter agree that an Athletic Commission and/or ZUFFA may test Fighter for Controlled Substances and DEATHCLUTCH and Fighter agree to submit to any pre-Bout or post-Bout drug test as requested by an Athletic Commission and/or ZUFFA.

9.6    DEATHCLUTCH and Fighter acknowledge that an Athletic Commission and/or ZUFFA may fine, suspend and/or impose other penalties, including but not limited to removing recognition from Fighter of any Championship Title, Status or Belt if Fighter tests positive for a Controlled Substance. Fighter shall be deemed to be in breach of this Section if Fighter tests positive for any Controlled Substance in any pre-Bout or post-Bout drug test.

## ARTICLE X
## INJURY OR RETIREMENT

10.1    If at any time during the Term, ZUFFA offers to promote a Bout for Fighter and DEATHCLUTCH, and/or Fighter refuses to participate in or attempt to cancel or postpone such Bout for reason of a claimed injury or other medical disability, ZUFFA shall have the right, but not the obligation, to have Fighter examined by a medical doctor of its choice at ZUFFA's expense, and if ZUFFA so elects, Fighter shall appear for such examination on one (1) day's notice.

9

10.2    If at any time during the Term, Fighter claims to be injured or permanently or partially disabled, ZUFFA may, at its election, for each such injury or disability claimed by Fighter, (i) extend the Term for the period of such injury or disability or for a period of six (6) months, whichever is longer; (ii) declare that ZUFFA has satisfied its obligation to promote one (1) of the Bouts to be promoted by ZUFFA hereunder, without any compensation due to Fighter for said Bout; or (iii) provide DEATHCLUTCH with notice of an Acceleration.

10.3    If at any time during the Term, Fighter decides to retire from mixed martial arts or other professional fighting competition, then ZUFFA may, at its election, (i) suspend the Term for the period of such retirement; (ii) declare that ZUFFA has satisfied its obligation to promote all future Bouts to be promoted by ZUFFA hereunder, without any compensation due to DEATHCLUTCH and/or Fighter therefor; or (iii) elect to provide DEATHCLUTCH with notice of an Acceleration.  For the avoidance of doubt, Fighter's participation in a "professional wrestling" event, the content of which is exclusively "professional wrestling" matches, subsequent to Fighter's retirement, shall not be deemed to violate the terms of this agreement.  For the purposes of this section, "professional wrestling" means the performance of choreographed wrestling matches with predetermined outcomes.

ARTICLE XI
TERMINATION/REMEDIES

11.1    ZUFFA shall have the right, upon notice to DEATHCLUTCH, to accelerate the Term and thereby terminate ZUFFA'S promotional and other obligations hereunder and under any Bout Agreement then in effect ("**Acceleration**") and to terminate Fighter's participation in any Bout, with Acceleration effective as of the date of notice, and to withdraw recognition from Fighter of any Championship Title, Status and Belt, if:

        a.    Fighter fails, for any reason whatsoever (other than the injury or physical disability of Fighter) to engage in the minimum number of Bouts as offered by ZUFFA;

        b.    DEATHCLUTCH, Fighter or any of Fighter's Affiliates breach, violate or are in default of any provision of this Agreement or any other agreement hereafter entered into between DEATHCLUTCH, Fighter and ZUFFA;

        c.    Any of the representations or warranties of DEATHCLUTCH and/or Fighter contained herein were false when made or are no longer true and correct; or

        d.    Fighter is declared the loser of any two (2) mixed martial arts bouts (whether promoted by ZUFFA or not) by the athletic commission or official authority having jurisdiction over the bouts during the Term; or

        e.    Fighter's license to participate in bouts is suspended or revoked by an Athletic Commission.

11.2    Acceleration shall be without further liability or obligation from ZUFFA to DEATHCLUTCH and/or Fighter, except for the payment of any Fighter's Purse or Win Bonus, if applicable, or other amounts due for Bouts that have been completed prior to Acceleration.

11.3    Acceleration shall not serve to affect or terminate any of the Ancillary Rights, and this Agreement shall survive any Acceleration and remain in full force and effect with respect thereto.

10

11.4    DEATHCLUTCH and Fighter acknowledge that his services as a professional fighter and the Ancillary Rights granted to ZUFFA herein are special, unique, extraordinary, irreplaceable and of peculiar value, and that in the event of DEATHCLUTCH and/or Fighter's breach or threatened breach of this Agreement or any Bout Agreement, ZUFFA would suffer irreparable damage which could not be reasonably or adequately compensated by an award of damages.  In the event of such breach or threatened breach, ZUFFA shall be entitled, in addition to any other available remedy, to obtain equitable relief, including, but not limited to, an injunction against such breach and DEATHCLUTCH Fighter waive the right to assert as a defense in any such action that ZUFFA has an adequate remedy at law.  To the extent that a bond is necessary to obtain an injunction, DEATHCLUTCH and Fighter agree that the bond shall not exceed Five Hundred Dollars (US $500.00).

11.5    If DEATHCLUTCH believes in good faith that ZUFFA has materially breached any material provision of this Agreement, or has unreasonably failed or refused to perform its obligations hereunder, Fighter shall provide ZUFFA with written notice of such alleged breach and shall provide ZUFFA with at least ten (10) business days to cure such alleged breach.  If ZUFFA fails to cure the alleged material breach within ten (10) business days of receipt of DEATHCLUTCH's written notice, then and only then may DEATHCLUTCH seek to terminate this Agreement and seek redress for any outstanding compensation owed to DEATHCLUTCH and/or Fighter hereunder.   DEATHCLUTCH expressly understands and agrees that his sole remedy for any alleged breach by ZUFFA shall be to seek payment for any remaining compensation due to DEATHCLUTCH under Article VII, exclusive of any potentially applicable Win Bonuses, and in no event shall DEATHCLUTCH and/or Fighter be entitled to any consequential, incidental, or punitive damages of any sort.

ARTICLE XII
INSURANCE

12.1    ZUFFA shall provide health and accidental death insurance as required by the applicable Athletic Commission. DEATHCLUTCH and Fighter hereby acknowledge that professional unarmed combat has the significant potential for serious injuries, and DEATHCLUTCH and Fighter are knowingly and voluntarily assuming all such risks. Accordingly, except for the insurance benefits being provided by ZUFFA as described in the section, DEATHCLUTCH, its officers, directors, shareholders, members, subsidiaries, affiliates, agents and assigns, Fighter, for himself, his heirs, assigns, executors, and administrators agree to be solely liable for and will bear the full and complete cost of any and all medical treatment and all other costs associated with any injuries resulting from any and all Fighter's services under this agreement. Furthermore, DEATHCLUTCH and Fighter assume all risk of injuries sustained outside of a Bout and expressly understand and agree that any insurance policies as described in this section shall only provide coverage during the actual Bout(s) participated in by Fighter.

12.2    ZUFFA shall have the right, at its election, to obtain, at ZUFFA's cost and expense, life or other insurance upon Fighter, including, but not limited to, insurance against the failure of Fighter to appear and to participate in any Bout, for the benefit of ZUFFA, and in such amounts as ZUFFA may desire. Neither DEATHCLUTCH, Fighter, nor any of Fighter's Affiliates shall have any right, title or interest in such insurance.  DEATHCLUTCH, Fighter and Fighter's Affiliates shall cooperate with and assist ZUFFA in obtaining and maintaining such coverage, including submitting to physical or other examinations of Fighter and furnishing such information and medical records as may be required by any existing or proposed carrier.

//

//

11

ZFL-0493445

ARTICLE XIII
RIGHT OF FIRST NEGOTIATION AND RIGHT TO MATCH

13.1    DEATHCLUTCH and Fighter agree to negotiate exclusively with ZUFFA regarding the extension or renewal of the Term for a period of sixty (60) days following the expiration of the Term ("**Exclusive Negotiation Period**").   If ZUFFA and DEATHCLUTCH and/or Fighter fail to reach agreement upon the terms and conditions of an extension of the Term, within the Exclusive Negotiation Period, DEATHCLUTCH and/or Fighter may negotiate with any other promotional entity, subject to ZUFFA's right to match the terms of any agreement offered to DEATHCLUTCH and/or Fighter by such other promotional entity (each, an "**Offer**") prior to the acceptance of the Offer by DEATHCLUTCH and/or Fighter, as set forth below.

13.2    ZUFFA shall have the option to match the terms of any Offer for one (1) year following the expiration of the Exclusive Negotiation Period (the "**Matching Period**").   DEATHCLUTCH and/or Fighter shall not accept any Offer or enter into a contract or agreement with any other promotional entity during the Matching Period without complying with this section.   Prior to acceptance of any Offer made during the Matching Period, DEATHCLUTCH and/or Fighter shall first deliver to ZUFFA a written notice of all material terms and conditions of the Offer, including but not limited to the identity of the promotional entity.   Such notice shall constitute an exclusive, irrevocable offer (the "**ZUFFA Offer**") to contract with ZUFFA on the same terms and conditions. ZUFFA shall have fifteen (15) business days following receipt of the ZUFFA Offer in which to accept the ZUFFA Offer.   If ZUFFA does not accept the ZUFFA Offer, Fighter may then accept the Offer without modification during the ten (10) business day period following expiration of the ZUFFA Offer (the "**Contract Period**").   If the Offer is modified in any material way, such modification shall give rise to another option for ZUFFA to match the terms of the Offer, as modified.   If at any time during the Matching Period or the Contract Period, DEATHCLUTCH and/or Fighter proposes to enter into a contract with a third party upon terms and conditions that are less favorable to DEATHCLUTCH and/or Fighter than those contained in the ZUFFA Offer, then ZUFFA shall have the right to match such less favorable terms and conditions and enter into a contract with DEATHCLUTCH and/or Fighter consistent therewith.

ARTICLE XIV
REPRESENTATIONS AND WARRANTIES

14.1.    DEATHCLUTCH and Fighter represent and warrant to ZUFFA that:

a.    Fighter shall prepare and honestly compete to the best of Fighter's ability in the Bout and that there is no impairment to Fighter doing so;

b.    DEATHCLUTCH and Fighter is free to enter into this Agreement and has not heretofore and will not hereafter enter into any contract, option, agreement or understanding, whether oral or written, which conflicts with the provisions hereof or the grant of Rights contained herein or which would or could interfere with DEATHCLUTCH and/or Fighter's full and complete performance hereunder or the free and unimpaired exercise by ZUFFA of any of the Rights;

c.    there are no claims or arbitration, mediation, or litigation pending or threatened affecting DEATHCLUTCH and/or Fighter that would or could interfere with DEATHCLUTCH and/or Fighter's full and complete performance hereunder or the free and unimpaired exercise by ZUFFA of any of the Rights;

d.    The person executing this Agreement on behalf of DEATHCLUTCH and Fighter are entering into this Agreement of their own free will, they are not subject to duress of any kind, and is

12

CONFIDENTIAL

ZFL-0493446

not under the influence of any Controlled Substance and that DEATHCLUTCH and/or Fighter knows of no disability, whether physical or mental, which would or could prevent Fighter from the full and complete performance of his obligations hereunder; and

        e.     DEATHCLUTCH and Fighter have had the opportunity to consult an attorney or other representative regarding this Agreement, and they appreciate the legal significance and consequences of signing this Agreement; and

        f.     DEATHCLUTCH is a limited liability company duly formed under the laws of the State of Minnesota, is in good standing, and that the person executing this Agreement on behalf of DEATHCLUTCH is authorized to do so; and

        g.     Fighter is either (i) a citizen of the United States and is not otherwise subject to any "backup" or other withholding of taxes or compensation specially applicable to those who are not citizens of the United States: or (ii) is not a citizen of the United States but has provided to ZUFFA in writing all information necessary to enable ZUFFA to comply with any such applicable withholding or other payment requirement.

        h.     DEATHCLUTCH and/or Fighter has obtained, and ZUFFA shall not be responsible to pay for in any way whatsoever, all clearances, licenses, uses, reuse fees, license fees, relating to the use and appearance of any creative expression, clothing apparel, sportswear and equipment, included but not limited to, trunks, robes, shoes, regalia or any other part of the costume, electronic information, digital information, wording, phrases, symbols, pictures, designs, print materials or other materials or information (including, without limitation, the trademarks, copyrights, personal privacy, property rights, names, voices, and likenesses of all and any persons, properties and businesses appearing therein (if any), and all components and elements thereof) displayed and exhibited by Fighter or any of Fighter's Affiliates during or at any Bouts, Pre-Bout Events or Post-Bout Events.

        i.     DEATHCLUTCH and/or Fighter has the full power to expressly and irrevocably transfer said rights described in Paragraph 14.1(h) above to ZUFFA, or ZUFFA's respective sponsors, successors, assigns, agents, directors, members, managers, officers, employees, co-producers and licensees, and warrants that the exercise of the rights granted herein will not infringe on any rights of any third party, including but not limited to copyright, trademark, unfair competition, contract, defamation, privacy or publicity rights.

    14.2.    ZUFFA represents and warrants to DEATHCLUTCH and/or Fighter that:

        a.     ZUFFA is a limited liability company duly formed under the laws of the State of Nevada; and that the person executing this Agreement on behalf of ZUFFA is authorized to do so; and

        b.     ZUFFA is able to perform its promotional and payment obligations arising hereunder and there are no claims or arbitration, mediation, or litigation pending or threatened affecting ZUFFA that would prevent ZUFFA from performing hereunder.

ARTICLE XV
ASSUMPTION OF THE RISK/WAIVER OF ALL CLAIMS

    15.1    DEATHCLUTCH and Fighter fully understand and agree that the professional sport of mixed martial arts is an inherently and abnormally dangerous activity that can result in severe and permanent physical injury, including but not limited to irreversible neurological trauma, disability, and/or death.  DEATHCLUTCH and Fighter represent that Fighter is a seasoned professional in the sport of

13

mixed martial arts, and Fighter has knowingly evaluated the inherent risks, foreseen and unforeseen, in this dangerous sport and represents and declares that he is physically, mentally, emotionally and intellectually willing and able to accept, and does hereby clearly, unambiguously and explicitly accept, all risks, foreseen and unforeseen, associated with participating in the sport and the Bouts.

15.2    In consideration for the opportunity to participate in the Bouts, and with full knowledge and complete assumption of all the risks, DEATHCLUTCH, its officers, directors, shareholders, members, subsidiaries, affiliates, agents and assigns, Fighter, for himself, his heirs, assigns, executors and administrators ("**Releasing Parties**") hereby irrevocably agrees that the Releasing Parties will not sue or claim against ZUFFA and each of its respective parents, subsidiary entities, affiliates, successors and assigns, and the respective directors, officers, members, managers, employees, agents, contractors, partners, shareholders and representatives, in their individual, personal and representative capacities for each of the foregoing entities ("**Released Parties**") for any injury, illness, damage, loss or harm to Fighter or Fighter's property, or Fighter's death, howsoever caused, resulting or arising out of or in connection with Fighter's preparation for, travel for, participation and appearance in any UFC promotional events, the Bouts, the Pre-Bout Events and the Post-bout Events or any activities associated therewith.

15.3    In consideration for the opportunity to participate in the Bouts, and with full knowledge and complete assumption of all risks, the Releasing Parties hereby forever voluntarily release, discharge, waive and relinquish any and all, past, present and future, claims and causes of action, specifically including any claims based on negligence or gross negligence, that they may have against the Released Parties, as the result of any injury, illness, damage, loss or harm to Fighter or Fighter's property, or Fighter's death, howsoever caused, resulting or arising out of or in connection with Fighter's preparation for, travel for, participation and appearance in any UFC promotional events, the Bouts, the Pre-Bout Events and the Post-bout Events or any activities associated therewith. Furthermore, the Releasing Parties hereby irrevocably and unconditionally consent and agree that the health insurance and accidental death proceeds and benefits provided by ZUFFA hereunder and as referenced in Article XII, shall be the only benefits the Releasing Parties may claim or receive for any injury, including death, relating to any and all of Fighter's services under this Agreement.

ARTICLE XVI
INDEMNIFICATION

16.    DEATHCLUTCH  and Fighter shall indemnify, defend and hold harmless ZUFFA, its subsidiaries and affiliates, and each of their members, managers, directors, officers, employees, representatives, agents and contractors from and against any claims, actions, proceedings, expenses (including attorneys' fees of counsel of indemnified party's choice, as and when incurred) and damages arising from or relating to any negligent or intentional acts or omissions by DEATHCLUTCH, Fighter or any of Fighter's Affiliates or by the actual or claimed breach of this Agreement or any Bout Agreement by DEATHCLUTCH, Fighter or any of Fighter's Affiliates or the inaccuracy of any of DEATHCLUTCH and/or Fighter's representations, warranties or covenants contained herein or within any Bout Agreement.

ARTICLE XVII
PROHIBITION ON USE OF
INTELLECTUAL PROPERTY RIGHTS

17.1    Unless DEATHCLUTCH receives prior written approval from ZUFFA, DEATHCLUTCH and/or Fighter shall not utilize any of ZUFFA's intellectual property rights, including, but not limited to, the names and marks "Ultimate Fighting Championship," "UFC," the "Octagon," "Ultimate Fighting," "Ultimate Fighter," and any logos, pictures or other representations of ZUFFA's intellectual property.  Without limiting the scope of this prohibition, DEATHCLUTCH and/or Fighter

14

ZFL-0493448

expressly agree to not use an UFC championship belt without the prior written approval of ZUFFA, and further agree that any such belt he obtains is on loan and will at all times remain the property of ZUFFA. Upon ZUFFA's written request, the belt must be returned within forty-eight (48) hours to ZUFFA.

Unless DEATHCLUTH receives prior written approval from ZUFFA, DEATHCLUTCH and/or Fighter shall not utilize any of ZUFFA's intellectual property rights, including, but not limited to, the names and marks "Ultimate Fighting Championship," "UFC," the "Octagon," "Ultimate Fighting," "Ultimate Fighter," and any logos, pictures or other representations of ZUFFA's intellectual property. Without limiting the scope of this prohibition, DEATHCLUTCH and/or Fighter expressly agrees that he may not refer to himself as a "UFC Champion"; "former UFC Champion"; "UFC Star"; "UFC Superstar"; "UFC Fighter" or utilize any of ZUFFA's intellectual property in describing or referring to himself without the express written consent of ZUFFA.  Further, DEATHCLUTCH and/or Fighter expressly agrees to not use a UFC championship belt without the prior written approval of ZUFFA, and further agrees that any such belt he obtains is on loan and will at all times remain the property of ZUFFA. Upon ZUFFA's written request, the belt must be returned within forty-eight (48) hours to ZUFFA. Additionally, DEATHCLUTCH and/or Fighter expressly agrees that ZUFFA is not a sanctioning organization and DEATHCLUTCH and/or Fighter do not possess and cannot assert any property right or similar legal interest in the UFC Title or in being the UFC Champion.

17.2     DEATHCLUTCH and/or Fighter shall not utilize the intellectual property rights of any of ZUFFA's sponsors including, but not limited to, the intellectual property rights of iN DEMAND, L.L.C. and its names and marks "iND" and "iN DEMAND", and any logos, pictures or other representations of such intellectual property.

ARTICLE XVIII
ASSIGNMENT

18.1     ZUFFA shall have the absolute right to assign, license, or transfer any or all of the rights granted to it hereunder, including, but not limited to, the right to co-promote any Bout in association with any one or more persons or entities of its choosing.  ZUFFA may assign any of its respective obligations hereunder without DEATHCLUTCH's consent.

18.2     The rights and obligations of Fighter arising from this Agreement and any Bout Agreement are personal to Fighter and neither the benefits nor the duties of Fighter hereunder may be assigned, pledged or transferred for any reason.

ARTICLE XIX
OTHER ACTIVITIES OF ZUFFA

19.     Nothing herein shall prevent ZUFFA from engaging in promotional activities for any other professional fighter, including others in the same weight class as Fighter, or any other activities, whether related or unrelated to the subject matter of this Agreement.

ARTICLE XX
INTENT IN SIGNING

20.     DEATHCLUTCH and Fighter acknowledge that their execution of this Agreement is for the purpose of obtaining the promotional services of ZUFFA upon the terms and conditions of this Agreement and that DEATHCLUTCH and/or Fighter have not been required to sign this Agreement or to grant any of the Rights as a condition precedent to Fighter's participation in any professional mixed martial arts contest against another fighter who has granted promotional or ancillary rights to ZUFFA.

15

## ARTICLE XXI
## INDEPENDENT CONTRACTOR STATUS

21.     Nothing contained in this Agreement shall be construed to make DEATHCLUTCH an affiliate, subsidiary or partner with ZUFFA, or that Fighter is an employee of ZUFFA or to appoint ZUFFA as Fighter's agent, and ZUFFA shall have no financial interest (other than rights or obligations to withhold or offset) in compensation payable to DEATHCLUTCH in exchange for Fighter engaging in any Bout hereunder.   It is intended that DEATHCLUTCH and Fighter shall remain an independent contractor, responsible for his own actions and expenses including the engagement, discharge, benefits and costs of all of Fighter's Affiliates, and training facilities, equipment, professional memberships, sanctioning fees, and medical expenses.

## ARTICLE XXII
## COMMERCIAL IDENTIFICATION

22.1     DEATHCLUTCH and Fighter covenant and agree that no wording, symbols, pictures, designs, names or other advertising or informational material (i) for any beer, alcohol, beverage company, tobacco, casino or gaming company, media company (including, but not limited to, HBO, ABC, SET, FOX, ESPN and any Internet related company); (ii) of any sponsor in conflict or competition with ZUFFA or any of ZUFFA's sponsors; (iii) of any sponsor causing injury to the reputation of ZUFFA or ZUFFA's sponsors and/or their respective officers and owners; or (iv) which has not been pre-approved in writing by ZUFFA and iN DEMAND, L.L.C. shall appear on the trunks, robe, shoes, regalia or any other part of the costume or the body (including by use of temporary or henna tattoos) of Fighter or any of Fighter's Affiliates during or at any Bouts, Pre-Bout Events or Post-Bout Events.  For the purposes of this section, Fighter's Affiliates shall include, but not be limited to, his managers, agents, trainers, seconds, sparring partners and other persons associated with Fighter who are connected with the Bouts. Notwithstanding the above, Zuffa hereby consents to permit Fighter and/or Fighter's affiliates, including those sponsored by DEATHCLUTCH, to wear and to display the "DeathClutch" logo and marks at any Bouts, Pre-Bout Events, Post-Bout Events and/or any other Zuffa, UFC and/or WEC sponsored events.

22.2     Notwithstanding the foregoing, ZUFFA shall have the right to include any advertising or other informational material of ZUFFA, ZUFFA's sponsors or other entities designated by ZUFFA on the trunks, robe, shoes, regalia or any other part of the costume of Fighter or any of Fighter's Affiliates during or at any Bouts, Pre-Bout Events or Post-Bout Events.

22.3     For television purposes, Fighter must be clearly distinguishable. Therefore, Fighter shall provide one (1) pair of dark-colored trunks and one (1) pair of light-colored trunks for each Bout. If it is necessary to distinguish Fighter from his opponent, ZUFFA shall have sole discretion to require Fighter to wear either the dark-colored or light-colored trunks.

## ARTICLE XXIII
## CONFIDENTIALITY

23.1     DEATHCLUTCH and/or Fighter shall not disclose to any third party (other than his employees, agents, and professional consultants, in their capacity as such, on a need-to-know basis), any information with respect to the terms and provisions of this Agreement or any Bout Agreement except: (i) to the extent necessary to comply with law or the valid order of a court of competent jurisdiction, in which event DEATHCLUTCH and/or Fighter shall notify ZUFFA as promptly as practicable (if possible, prior to making such disclosure) and shall seek confidential treatment of such information, (ii) as part of

16

CONFIDENTIAL

ZFL-0493450

normal reporting or review procedure to DEATHCLUTCH and/or Fighter's lenders, auditors, attorneys and similar professionals, provided that such lenders, auditors and attorneys and similar professionals agree to be bound by the provisions of this section; and (iii) in order to enforce DEATHCLUTCH and/or Fighter's rights pursuant to this Agreement or any Bout Agreement, in which case DEATHCLUTCH and Fighter agree to enter into a confidentiality agreement for all such proceedings.

23.2     ZUFFA shall have the sole right to determine the timing and content of and to make any press announcements and other public statements regarding this Agreement.

23.3     ZUFFA shall have the sole right to file this Agreement with any applicable athletic or fighting commission and world sanctioning bodies.

ARTICLE XXIV
FURTHER ASSURANCES

24.1     DEATHCLUTCH and/or Fighter shall execute any and all additional documents or instruments necessary or desirable to effectuate the provisions of this Agreement, including, but not limited to, Bout Agreements and Standard Fighter Contracts or any other document required by ZUFFA, the Athletic Commission, any local governmental authority with jurisdiction over any Bout and the world organization(s) sanctioning any Bout, if applicable.  No party hereto shall take any action or fail to take any action which action or failure shall frustrate the purposes of this Agreement and the benefits contemplated hereby.

24.2     DEATHCLUTCH and/or Fighter shall be solely responsible for obtaining all necessary documentation, including any work visas, to lawfully permit Fighter and Fighter's Affiliates to participate in all Bouts.  DEATHCLUTCH shall provide copies of all such documentation to ZUFFA no less than thirty (30) days prior to any Bout.  DEATHCLUTCH and/or Fighter's failure to obtain and/or provide such documentation shall constitute grounds for ZUFFA, at its election, to (i) obtain the required documentation and deduct the costs thereof from Fighter's Purse, (ii) cancel Fighter's participation in the Bout, without any compensation due to DEATHCLUTCH and/or Fighter for said Bout, and extend the Term for a period four (4) months; (iii) declare that ZUFFA has satisfied its obligation to promote one (1) of the Bouts to be promoted by ZUFFA hereunder, without any compensation due to DEATHCLUTCH and/or Fighter for said Bout; or (iv) provide DEATHCLUTCH with notice of an Acceleration.

ARTICLE XXV
NOTICES

25.1     Any notice or other communications given or sent pursuant to this Agreement shall be in writing and shall be deemed given when (i) personally delivered; (ii) delivered by confirmed facsimile transmission; (iii) three (3) days following the date such notice is mailed postage paid by registered or

//

//

//

//

//

17

CONFIDENTIAL                                                                                                          ZFL-0493451

certified mail, return receipt requested; or (iv) to Fighter, delivered by confirmed electronic means (electronic mail), to the respective addresses indicated below:

To ZUFFA:
Kirk D. Hendrick, COO
ZUFFA, LLC
2960 W. Sahara Ave., Suite 100
Las Vegas, Nevada 89102

To DEATHCLUTCH:
Brock Lesnar, President
DeathClutch, LLC.
C/O Henson & Efron, P.A.
220 South Sixth Street, Suite 1800
Minneapolis, MN 55402-4503

With a copy to:
Ike Lawrence Esptein, Esq.
ZUFFA, LLC
2960 W. Sahara Ave., Suite 100
Las Vegas, Nevada 89102

With a copy to:
David Bradley Olsen, Esq.
Brian C. Stegeman, Esq.
Henson & Efron, P.A.
220 South Sixth Street, Suite 1800
Minneapolis, MN 55402-4503
Email: dolsen@hensonefron.com

25.2    Any party may change its address for notice purposes by providing notice of such change of address in accordance with this section.

ARTICLE XXVI
CHOICE OF LAW/EXCLUSIVE JURISDICTION AND VENUE

26.1    This Agreement has been delivered at and shall be deemed to have been made at Las Vegas, Nevada, and shall be interpreted, and the rights and liabilities of the parties hereto determined, in accordance with the laws of the State of Nevada.

26.2    ZUFFA and DEATHCLUTCH and Fighter agree that the exclusive jurisdiction and venue for the resolution of any dispute arising from or relating to this Agreement shall lie in the Eighth Judicial District Court for the State of Nevada, sitting in Las Vegas, Nevada. Each of the parties hereto irrevocably consents to the service of process in any such proceeding by the mailing of a copy of the summons and complaint by first-class mail to such party in accordance with the notice provisions of this Agreement.

ARTICLE XXVII
MISCELLANEOUS PROVISIONS

27.1    If any provision of this Agreement is found to be illegal, invalid, or unenforceable as to any circumstance, such finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. Rather, the offending provision shall be considered modified so that it becomes legal, valid and enforceable, or, if not capable of such modification, shall be considered deleted. The illegality, invalidity, or unenforceability of any provision shall not affect the legality, validity, or enforceability of any other provision of this Agreement.

27.2    No waiver by any party of any breach or default hereunder shall be deemed to be a waiver of any preceding or subsequent breach or default. All waivers must be in writing, specify the breach or default concerned and be signed by the party against whom the waiver is sought to be enforced.

18

CONFIDENTIAL                                                                                                    ZFL-0493452

27.3    In the event either party engages counsel in connection with the enforcement or interpretation of this Agreement or any provision hereof or the resolution of any dispute arising from or related to this Agreement, the prevailing party shall be entitled to recover from the other party its attorneys' fees and costs, regardless of whether or not an action is filed.

27.4    The provisions of this Agreement are for the exclusive benefit of the parties hereto and their permitted successors and assigns, and no third party shall be a beneficiary of or have any rights under this Agreement, regardless of whether or not such third party is referred to herein.

27.5    Other than any Bout Agreement or Standard Fighter Contract which may be entered into by the parties pursuant to the terms of this Agreement, this Agreement sets forth and integrates the entire understanding between DEATHCLUTCH, Fighter and ZUFFA, and supersedes any and all prior or contemporaneous written or oral agreements or representations between the parties with respect to the subject matter hereof.

27.6    This Agreement may not be altered, amended or discharged, except by a subsequent writing signed by the parties hereto.

27.7    This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same instrument. Facsimile signatures shall be as effective as originals.

27.8    Descriptive headings of this Agreement are inserted for convenience only and do not constitute a part of this Agreement and shall not be considered for purposes of its interpretation. The parties agree that they have equally participated in the negotiation of the terms and conditions in this Agreement, and therefore any ambiguities shall be resolved without reference to which party may have drafted all or any provision herein.

ARTICLE XXVIII
MEDICAL TESTING

28.    FIGHTER SHALL COMPLETE A FULL PHYSICAL MEDICAL EXAMINATION AND UNDERGO TESTING AND RECEIVE AFFIRMATIVE CLEARANCE THEREFROM PRIOR TO EACH BOUT INCLUDING, BUT NOT LIMITED TO THE FOLLOWING: CBC, HEPATITIS B, HEPATITIS C, HIV, RH AND BLOOD TYPE, RPR, PT, PTT, URINALYSIS WITH DRUG SCREENING, EKG, CT SCAN, MRI, DIALATED OPHTHALMOLOGICAL EXAM, AND SUCH OTHER TESTING AS ZUFFA OR THE ATHLETIC COMMISSION MAY REQUIRE.   THE MEDICAL EXAMINATION SHALL BE PERFORMED BY A NEUTRAL MEDICAL SERVICE PROVIDER DURING THE THIRTY (30) DAY PERIOD IMMEDIATELY PRECEDING THE DATE OF EACH BOUT. THE REPORT OF THE MEDICAL EXAMINATION OF FIGHTER CONTAINING THE RESULTS OF THE EXAMINATION AND TESTS SHALL BE DELIVERED TO ZUFFA NO LESS THAN FOURTEEN (14) DAYS PRIOR TO ANY BOUT AND MUST NOT CONTAIN ANY RESTRICTIONS ON FIGHTER'S ABILITY TO COMPETE.   ALL COSTS ASSOCIATED WITH THE

//

//

//

//

19

ZFL-0493453

MEDICAL EXAMINATION AND TESTS SHALL BE PAID BY FIGHTER.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the dates set forth below, the later of which shall be the Effective Date of this Agreement.

**ZUFFA, LLC**

Signature: _____
Mr. Dana White
President

Date: _____7/6/09_____

**FIGHTER**

Signature: _____

Printed Name: Brock Lesnar

Social Security No.: _____

Passport No.: _____

Passport Expiration Date: _____

Date: _____7-3-09_____

**DEATHCLUTCH, LLC**

Signature: _____

Brock Lesnar
Print Name

President
Title

Tax ID No. _____

Date: _____

20

CONFIDENTIAL    ZFL-0493454