# EXHIBIT 83
# -
# REDACTED VERSION OF
# ECF NO. 540-111

# EXHIBIT 107

**Promotional and Ancillary Rights Agreement between Zuffa, LLC and Urijah Faber**

## PROMOTIONAL AND
## ANCILLARY RIGHTS AGREEMENT

**THIS PROMOTIONAL AND ANCILLARY RIGHTS AGREEMENT** (the "**Agreement**") is made as of the date set forth below (   the "**Effective Date**") by and between   **ZUFFA, LLC,** a Nevada limited liability company d/b/a Ultimate Fighting Championship® with offices at 2960 W. Sahara Avenue, Las Vegas, NV 89102 (   "**ZUFFA**") and  Faber Ventures, Inc., a California corporation, who employs Urijah Faber (collectively "**Fighter**").

RECITALS

A.      ZUFFA is in the business of, among other things, promoting mixed martial arts fighting competitions throughout the world under the trade name of Ultimate Fighting Championship [®] ("**UFC**") and desires to serve as the promoter for Fighter's future bouts for a period of time, provided that Fighter grants to ZUFFA certain promotional rights and ancillary rights, with such ancillary rights being granted to ZUFFA in perpetuity, as set forth herein;

B.      Fighter is a professi onal mixed martial arts fighter and desires to  obtain the promotional services of ZUFFA for Fighter's future bouts for a period of time, and      Fighter is willing to grant to ZUFFA certain promotional rights and ancillary  rights, with such ancillary rights being granted to ZUFFA in perpetuity, as set forth herein; and

C.      ZUFFA and Fighter intend for this Agreement to specifically supersede Fighter's previous Promotional and Ancillary Rights Agreement fully executed on or about   September 24, 2013. Additionally, ZUFFA and Fighter agree that upon execution of this Agreement, neither ZUFFA nor Fighter will have any rights or obligations under the previous agreement, except to the extent that the provisions therein specifically survive the term of that previous ag   reement, and to the extent that said terms do not conflict with the provisions and spirit and intent of this Agreement.

**NOW, THEREFORE,** in consideration of the foregoing, the agreements and promises contained herein, and other good and valuable considerat   ion, the receipt and sufficiency of which are hereby acknowledged, ZUFFA and Fighter agree as follows:

## ARTICLE I
## GRANT OF PROMOTIONAL RIGHTS

1.      The Fighter hereby grants to ZUFFA the exclusive unrestricted worldwide right to secure, promote, arrange and present any and all mixed martial arts contests (individually, a   "**Bout**" and collectively, the "**Bouts**") to be engaged in by Fighter during the Term (      as  defined herein) and any Extension Term (as defined herein), including all rights to stage each Bout and to sell tickets of admission thereto (the "**Promotional Rights**") and to exploit the Ancillary Rights ( as defined herein) to each Bout in all media, now known or hereafter devised throughout the world in perpetuity.

## ARTICLE II
## GRANT OF ANCILLARY RIGHTS

2.1      Fighter hereby grants to ZUFFA the exclusive worldwide right to use, display, disseminate, edit, reproduce, print, publish and make any other use of the name, sobriquet, image, likeness, voice, persona, signature, and biographical material of Fighter and all persons associated with Fighter (collectively, the "**Identity**"), in any medium in connection with advertising, marketing,

1

                                                                                                          ZFL-0393668

exploiting and promoting the UFC brand and each Bout and the exploitation of all rights pertaining thereto as provided herein and all electronic and other rights to each Bout (the "**Ancillary Rights**" and, collectively with the Promotional Rights, the "**Rights**").

2.2     The Promotional Rights and Ancillary Rights shall be the sole property of ZUFFA throughout the world, which property ZUFFA shall hold free and clear from any and all claims of Fighter or anyone claiming through Fighter. For the avoidance of doubt, ZUFFA shall hold the Ancillary Rights described herein in perpetuity, which rights shall survive even the death of the Fighter.

2.3     The Rights include the following:

a.     The right to receive and retain all site fees, live-gate ticket and other revenues, subscription revenues, advertising fees, sponsorship fees, and the like.

b.     All media, including, but not limited to, motion picture, radio, television (which term whenever referred to herein shall include, without limitation, live or delayed, interactive, home or theater, over-the-air broadcast, pay, pay-per-view, satellite, closed circuit, cable, subscription, Video On Demand, Near Video On Demand, Subscription Video On Demand, multi-point, master antenna, or other), telephone, wireless**,** computer, CD-ROM, DVD, an y and all Internet applications (including, without limitation, netcasting, podcasting, direct download, streamed webcasting , internet channels (*e.g.*, Youtube) or any other form of digital media download or web syndication), films and tapes for exhibition in any and all media and all gauge s, including but not limited to video and audio cassettes and disks, home video and computer games, arcade video games, hand -held versions of video games, video slot machines, fantasy sports games and activities, photographs (including raw footage, out-takes and negatives), merchandising and program rights, in connection with or based upon the UFC brand, the Bouts or activities pertaining to the Bouts, including but not limited to, training, interviews, press conferences, weigh-ins and behind -the-scenes footage for the Bouts (the "**Pre-Bout Events**"), post-fight interviews and press conferences (the "**Post-Bout Events** ") and any parts thereof on a commercial, sustaining, theatrical or other basis, and by any and all means, methods and devices whatsoever, now existing or hereafter devised.

c.     The right to sell, assign, lease, license, sublease, use or otherwise dispose of any and all of the Rights and the results of the exercise thereof, and to authorize, license and grant the right to exercise any of the Rights and to retain the proceeds therefrom.

d.     The right to do all things necessary for the full and complete use, exploitation and exercise of the Rights, including the right to promote and exploit all rights granted hereunder and receive and retain the results of the exercise thereof, and the right to negotiate, enter into and perform any and all agreements relating to the Rights for the proper production and promotion of radio and television advertisements, publicity, and broadcasts relating to the UFC brand, the Bouts, the Pre -Bout Events and the Post-Bout Events.

e.     All right, title and interest in and to any and all recordings, including without limitation, television, radio, Internet, wireless and motion picture films, and the video and audio cassettes of, or based upon the UFC brand, the Bouts, the Pre-Bout Events and the Post-Bout Events, and the right to secure in the name of ZUFFA (or that of its nominee) copyright and other protection to the fullest extent available in the United States and all oth er countries of the world where such protection is available.

2

ZFL-0393669

f.      The unrestricted right to use, edit, disseminate, display, reproduce, print or publish in any media the Identity of Fighter for the purpose of advertising, promotion, publicity, merchandising and exploitation of the UFC brand, the Bouts, the Pre-Bout Events and Post-Bout Events, including the use of the Identity of Fighter to advertise any commercial product or service of a ZUFFA sponsor or any network, station or other exhibitor, for which activities Fighter hereby waives his personal right of privacy; provided, that ZUFFA agrees that it shall not authorize or permit the Identity of Fighter to be used as a direct or implied endorsement of any product, service, sponsor or commodity.

g.      The unrestricted right to use, edit, disseminate, display, reproduce, print, publish and make any other uses of the Identity of Fighter in connection with the development, manufacturing, distribution, marketing or sale of any and all interactive devices, home video and computer games, arcade video games, hand held versions of video games, video slot machines, CD-ROMS, DVDs, Internet applications, wireless, video and audio cassettes and disks, apparel (such as t-shirts, hats and jackets), banners, buttons, posters, jewelry, photographs, souvenirs, programs, toys, merchandising tie-ups and advertisements, and any and all other similar type products, including the sleeves, jackets and packaging for such products, hereunder made by any method now known or hereafter devised. Additionally, Fighter acknowledges the existence of UFC Video Games (as defined herein) developed, being developed or to be developed by various companies, including, but not limited to, Electronic Arts Inc. Fighter further acknowledges that the Rights granted herein to ZUFFA shall be <u>exclusive</u> with respect to any UFC Video Game, and any derivatives of such video games created by ZUFFA or its licensees. "**UFC Video Game**" shall mean any video game created by Zuffa or its licensees and branded with UFC, Pride, WEC, Strikeforce or any brand subsequently developed, owned or acquired by ZUFFA or any of its agents or subsidiaries. ZUFFA acknowledges and agrees that Fighter shall be paid a bonus, as determined in the sole discretion of ZUFFA, for each console version of a UFC Video Game in which Fighter appears. Notwithstanding the immediately preceding sentence, ZUFFA agrees that if it does not utilize the Identity of Fighter in a UFC Video Game within three (3) years of the Effective Date, that the Rights granted by Fighter to ZUFFA pursuant to this Section 2.3(g) shall become non-exclusive and Fighter shall have right to exploit his Identity in video games that are not UFC Video Games.

h.      The non-exclusive right to use a three minute excerpt clip of the recording of any bout, including any non-ZUFFA/UFC bout, in which Fighter was a participant (to the extent that Fighter possesses the rights thereto or can reasonably obtain such rights), for the purpose of publicizing a Bout, which clip shall be provided to ZUFFA upon request therefore.

i.      To the extent Fighter owns or controls, in whole or in part, the copyrights and other right, title and interest in and to any tattoos etched or otherwise displayed on the bodies of Fighter and any persons associated with Fighter, the irrevocable, perpetual non-exclusive, transferrable, assignable and sub-licensable right and license throughout the world, to use, publish, reproduce, distribute, display and exhibit such tattoos in any manner and on or through any media, in connection with ZUFFA's exercise of any of its other Rights hereunder.

2.4     To the extent that Fighter is deemed to have, retain or otherwise possess any right, title or interest in or to all or any portion of the UFC brand, any Bouts, any Pre-Bout Events or Post-Bout Events, or any works created or produced pursuant to or in connection with this Agreement (collectively, the "<u>**ZUFFA IP**</u>"), then for the consideration set forth herein, Fighter hereby transfers, conveys and assigns same to ZUFFA and shall execute all documents and undertake all actions necessary to effect the clarification of ownership of all right, title and interest in and to such ZUFFA IP to ZUFFA and to allow ZUFFA to apply for and maintain any copyright and trademark registrations and other intellectual property registrations or issuances with respect to the ZUFFA IP and any renewals or extensions thereof, Fighter hereby irrevocably designates and appoints ZUFFA and ZUFFA's employees, agents,

3

representatives, affiliates, licensees, designees, successors and assigns (" **ZUFFA's Representatives**") as Fighter's agent and attorney -in-fact to act for and on Fighter's behalf and to execute and file all such documents consistent herewith (that ZUFFA is unable after reasonable efforts to obtain Fighter's signature on) and to do all other lawfully permitted acts necessary to carry out the provisions of this Agreement.

2.5     Fighter waives, discharges and releases ZUFFA and ZUFFA's  Representatives from any and all claims; ( i) of infringement of any right of Fighter in, to or respecting the ZUFFA IP and (       ii) arising from ZUFFA or ZUFFA's Representatives' use of the Identity of Fighter or another exploitation of the Rights in any manne r contemplated or set forth herein (including, without limitation, any claims based on Fighter's moral rights in the ZUFFA IP or for inspection, approval, damages for libel, intellectual property infringement or violation of Fighter's rights of privacy or publicity).

2.6     Fighter acknowledges and agrees that Fighter shall have no right of approval or consultation with respect ZUFFA's exercise of any Rights granted or assigned to it hereunder and nothing in this Agreement shall obligate ZUFFA to exercise any of its Ancillary Rights.

ARTICLE III
PROMOTION

3.1     Each Bout shall be a mixed martial arts contest, one -on-one fight between Fighter and an opponent designated by ZUFFA, subject to Fighter approval not to be unreasonably withheld, delayed or conditioned, conducted pursuant to the rules and regulations of the athletic commission    , federation or official authority having jurisdiction over the Bout   or ZUFFA pursuant to Section   3.7 (the " **Athletic Commission**").  Fighter and ZUFFA shall comply with and be bound by the rules and regulations of the Athletic Commission.  For Bouts that occur in a jurisdiction or country without an Athletic Commission, the provisions of  Section 3.7 shall control.  In the event that Figh ter does  not approve of an opponent designated by  ZUFFA, ZUFFA may, at its election  and in accordance with the terms and conditions of Section 4.3 of this Agreement,  extend the Term of this Agreement  for the period required to designate another opponent for Fighter or six (6) months, whichever is longer.

3.2     ZUFFA shall promote and Fighter shall participate in the minimum number of Bouts set forth in  Article IV  below.  For purposes hereof, ZUFFA shall be deemed to have complied with its obligations to pr omote any Bout if ZUFFA shall have made an offer to Fighter to promote a Bout in accordance with the provisions hereof and Fighter shall have refused to participate.  If a Bout is the undercard to a main event and the main event is canceled or postponed fo r any reason, the failure of such Bout to take place shall not be deemed non  -performance by ZUFFA and ZUFFA shall not be liable for Fighter's Purse associated therewith (as defined herein).

3.3     Fighter shall cooperate and assist in the advertising, public ity, and promotion of (i) the Bouts, (ii) any and all rebroadcast of the Bouts in any media whatsoever, (iii) other UFC bouts, (iv) other UFC events and broadcasts, and (v) the sale of UFC merchandise, including making appearances at      a reasonable number of press conferences, interviews and other sponsorship and promotional activities (any of which may be te lecast, broadcast, recorded  or filmed)  at times and places reasonably designated by ZUFFA, without additional compensation therefore. For such promotional activities, ZUFFA will arrange and pay for Fighter's reasonable travel, hotel and meal accommodations.

3.4     All Bouts shall be on dates and at sites to be designated by ZUFFA, in its s       ole and absolute discretion.  If any Bout is postponed for any reason except ZUFFA's non -performance, the Bout Agreement applicable to such B out shall determine the rights of the parties and in addition thereto, the

4

ZFL-0393671

Term shall be extended, at ZUFFA's elect ion, by a number of days equal to the number of days between the date originally scheduled for the Bout and the date on which the Bout occurs.

3.5     During the Term, ZUFFA shall have the exclusive right to promote all of Fighter's bouts and Fighter shall not participate in or render his services as a professional fighter or in any other capacity to any other mixed martial art, martial art, boxing, professional wrestling, or any other fighting competition or exhibition, except as otherwise expressly permitted by this Agreement.

3.6     Notwithstanding the foregoing, in the event Fighter is not then  a UFC champion, Fighter is permitted, subject to the prior written consent of ZUFFA, which consent may be granted or withheld in ZUFFA's sole discretion, to contract w ith other promoters or to engage in any mixed martial arts bout or fighting competition or exhibition promoted by   other promoters  (an "**Other Bout** ") during the Term provided (i) such Other Bout is not televised by any domestic or international television ne twork, station, cable system, satellite or other provider or via Internet or wireless exhibition; (ii) such Other Bout is scheduled for and takes place on a date which is more than sixty (60) days before or more than thirty (30) days after any non -championship Bout and more than ninety (90) days before or more than thirty (30) days after any championship Bout; (iii) a copy of any agreement for any Other Bout shall have been furnished to ZUFFA at least one (1) week prior to its execution by Fighter; and (iv)  a fully executed copy of any such agreement is provided to ZUFFA within five (5) days of execution by Fighter.  Except in compliance with the foregoing limited exception, Fighter shall not, during the Term, grant promotional or other rights which conflict  with the Rights.  Furthermore,  Fighter expressly agrees that this Agreement shall be automatically extended for an additional one hundred twenty (120) days for each non        -UFC promoted mixed martial arts  competition or exhibition that Fighter participates in , and any reference to the Term herein shall be deemed to include any such extension(s).

3.7     Any and a ll Bouts that occur in a jurisdiction   without an Athletic Commission shall be conducted pursuant to the statutes, rules and regulations of the State of Nevada in effect at the time of the Bout, including, but not limited to , the Unified Rules of Mixed Martial Arts (the   "**Nevada Rules**"); for the protection of the health and safety of the Fighter, to promote fairness in the administration of the Bout, and to preserve the integrity of the sport of mixed martial arts   .   To the extent that the Nevada Rules conflict with the UFC Anti -Doping Policy ( "**UFC ADP** "), the UFC ADP shall control.     Fighter may appeal any advisory opinion by ZUFFA regarding a ny application of the Nevada Rules relating to Bouts that occur in a jurisdiction without an official government mandated Athletic Commission to an independent third -party arbitrator or arbitration panel  selected pursuant to  the guidelines developed by JAMS.  All costs and fees associated with an a ppeal taken pursuant to this  Section shall be the exclusive responsibility of the Fighter.   Regardless of where a Bout occurs,  in no event  shall a Fighter have any right to appeal a decision by ZUFFA relating to the UFC title or the UFC championship belts.

ARTICLE IV
TERM

4.1     The duration of the Promotional Rights provided herein (the "**Term**") shall commence on the Effective Date and end on the earlier of (i)  forty (40) months after the first bout promoted by ZUFFA involving Fighter under this Agreement; or (ii) the date on which Fighter has participated in at least  eight (8) Bouts promoted by ZUFFA  pursuant to this Agreement (the "**Termination Date**"), unless terminated sooner or extended further pursuant to the provisions of this Agreement.

4.2     If, at the expiration of the Term, Fighter is then        a UFC champion, the Term shall automatically be extended for the period commencing on the Termination Date and ending on the  earlier of (i) one (1) year from the Termination Date; or (ii) the date on which Fighter has participated in three

5

ZFL-0393672

(3) bouts promoted by ZUFFA  , regardless of weight class or title,      following the Termination Date ("**Extension Term**").  Any reference to the Te  rm herein shall be deemed to include a reference to the Extension Term, where applicable.

4.3     The length of time for ZUFFA to provide Fighter with the minimum number of  Bouts enumerated in this  Article IV shall be extended for six (6) months or any period of time that Fighter is unable or unwilling to compete, whichever is greater.  Such extension shall include, without limitation, any time periods when Fighter is disabled, sick or injured for any reason;      incarcerated; suspended or revoked by an Athletic Commission ; has his ability to travel restricted by a governmental agency or is otherwise unable, unwilling or refuses to compete or train for a Bout for any reason whatsoever, including, without limitation, not approving of an opponent designated by ZUFFA pursuant to Section 3.1 of this Agreement .  Additionally, the length of time for ZUFFA to provide Fighter with the minimum number of Bout s enumerated in this Article IV shall also be extended for any lengt h of time that Fighter serves as a coach on the "*The Ultimate Fighter*"® reality television series or six (6) months whichever is longer.

4.4     The expiration or earlier termination of the Term, any Acceleration (as defined herein), or the death or incapacity of the Fighter, shall not affect or terminate the grant of the Ancillary Rights or any of the other general or specific provisions of this Agreement, all of which shall survive any such expiration, termination, Acceleration, death or incapacity.

4.5     ZUFFA shall not be deemed in default of this Agreement to the extent that performance of its obligations are delayed or prevented by reason of any act of God, fire, natural disaster, war, riots, civil unrest, strike or labor difficulties, terrorism, power fai lure, other calamity or acts constituting force majeure, or any governmental or Athletic Commission enactment, determination or action, regulation or order. If there is an occurrence of a force majeure event or other bona fide action, ZUFFA may elect to suspend this Agreement for a period equal to the duration of the occurrence, and no compensation shall be paid or become due to Fighter during such suspension period.

ARTICLE V
BOUT AGREEMENT AND STANDARD FIGHTER CONTRACT

5.     For each Bout,  Fighter shall ex ecute and comply with the terms of a Bout Agreement ("**Bout Agreement** "), which shall be either  the standard fighter contract required by the    applicable Athletic Commission or pursuant to the Nevada Rules, as applicable (the "**Standard Fighter Contract**"), and any other contract required to be executed by law, the terms of which shall be consistent with the terms of this Agreement.  To the extent of any conflict between this Agreement and a Bout Agreement with respect to a Bout, the Bout Agreement shall control.

/ / /

/ / /

/ / /

/ / /

/ / /

6

                                                                 ZFL-0393673

ARTICLE VI
COMPENSATION

6.1     Subject in all events to Section 1 0.1(d), the Compensation to Fighter shall take the form of a  "**Fighter's Purse** " and, if and only if Fighter is declared the winner of a Bout by the Athletic Commission, a "**Win Bonus**," each in the amount as set forth below.

A.     Fighter's Compensation for every Bout during the Term shall be at one of the below tiers:

i.      In the event that Fighter is not then -currently recognized as a UFC champion by ZUFFA (or participating in Bout as set forth in 6.1(A)(ii)), for any such Bouts in which Fighter participates, Fighter's compensation shall be as follows:

a.  Fighter's Purse for the first Bout in this subsection shall be One Hundred Fifty Thousand Dollars (US $150,000.00), less all permissible or required deductions.  If and only if Fighter is declared the winner of the first Bout by the applicable Athletic Commission, the Win Bonus for the first Bout in this subsection shall be One Hundred Fifty Thousand Dollars (US $150,000.00), less all permissible or required deductions.

b.  If and only if Fighter is declared the winner of the first Bout, Fighter's Purse for the second Bout in this subsection shall be One Hundred Sixty Thousand Dollars (US $160,000.00), less all  permissible or required deductions.  If and only if Fighter is declared the winner of the first Bout and the second Bout by the    applicable Athletic Comm ission, the Win Bonus for the second Bout in this subsection shall be One Hundred Sixty Thousand Dollars (US $160,000.00), less all  permissible or required deductions.  If Fighter is not declared the winner of the first Bout by the applicable Athletic Commission (and there is no Acceleration), Fighter's Purse and Win Bonus for the second Bout shall be the same as set forth in subsection (a) above.

c.  If and only if Fighter is declared the winner of the first Bout and the second Bout, Fighter's Purse for the third Bout  in this subsection shall be One Hundred Seventy Thousand Dollars (US $170,000.00), less all required or permissible deductions.  If and only if Fighter is declared the winner of the first Bout, the second Bout, and the third Bout by the applicable Athletic Commission, the Win Bonus for the third Bout in this subsection  shall be One Hundred Seventy Thousand Dollars (US $170,000.00), less al l permissible or required deductions.  If Fighter is not  declared the  winner of the first Bout and the second Bout     by the applicable  Athletic Commission (and if there is no Acceleration), Fighter's Purse and Win Bonus for the third Bout shall be the same a s set forth in subsection (a) above.  If Fighter is declared the winner of either the first Bout or the second Bout, but not both  by the applicable Athletic Commission (and if there is no Acceleration) Fighter's Purse and Win Bonus for the third Bout shall  be the same as set forth in subsection (b) above.

7

d.  If and only if Fighter is declared the winner of the first Bout    , second Bout and third bout by the applicable Athletic Commission,       Fighter's Purse for the fourth Bout in this subsection shall be One Hundred Eighty Thousand Dollars (US $180,000.00), less all  permissible or required deductions.  If and only if Fighter is declared the winner of the first Bout, the second Bout, and the third  Bout by the applicable Athletic Commission, the Win Bonus for the  fourth Bout in this subsection shall be  One Hundred Eighty   Thousand Dollars (US $  180,000.00), less all permissible or required deductions.  If Fighter is not declared the  winner of the first Bout , second Bout  and third Bout by the applicable Athletic Commission (and if there is no Acceleration), Fighter's Purse and Win Bonus for the fourth Bout shall be the same as set forth in subsection (a) above.  If Fighter is declared the winner of    only one of the first three Bouts  by the applicable Athletic Commission  (and if there is no Acceleration) Fighter's Purse and Win Bonus for the fourth Bout shall be the same as set forth in subsection (b) above.    If Fighter is declared the winner of only two of the first three Bouts by the applicable Athletic Commission by the a pplicable Athletic Commission (and if there is no Acceleration) Fighter's Purse and Win Bonus for the fourth Bout shall be the same as set forth in subsection (c) above.

e.  If and only if Fighter is declared the winner of the first Bout, second Bout, third Bout and the fourth Bout by the applicable Athletic Commission, Fighter's Purse for the fifth Bout  in this subsection shall be One Hundred Ninety Thousand Dollars (US $190,000.00), less all permissible or required deductions.  If and only if Fighter is de clared the winner of the first Bout, the second Bout, the third Bout and the fourth Bout by the applicable Athletic Commission, the Win Bonus for the fifth Bout in this subsection shall  be One Hundred  Ninety Thousand Dollars (US $190,000.00), less all permissible or required deductions.  If Fighter is not declared the winner of the first Bout, the second Bout, the third Bout and the fourth Bout by the applicable Athletic Commission (and if there is no Acceleration), Fighter's Purse and Win Bonus for the thi    rd Bout shall be the same as set forth in subsection (a) above.  If Fighter is declared the winner of one the first four Bouts by the applicable Athletic Commission (and if there is no Acceleration), Fighter's Purse and Win Bonus for the third Bout shall b e the same as set forth in subsection (b) above.  If Fighter is declared the winner of two of the first four Bouts by the applicable Athletic Commission (and if there is no Acceleration), Fighters Purse and Win Bonus for the fifth Bout shall be the same as  set forth in subsection (c) above.  If Fighter is declared the winner of three of the first of the first four Bouts by the applicable Athletic Commission (and if there is no Acceleration), Fighters Purse and Win Bonus for the fifth Bout shall be the same as set forth in subsection (d) above.

f.  If and only if Fighter is declared the winner of the first Bout, second Bout, third Bout, the fourth Bout and the fifth Bout by the applicable Athletic Commission, Fighter's Purse for the sixth Bout in this subsection shall  be  Two Hundred  Thousand Dollars (US $200,000.00),  less all

8

permissible or required deductions.  If and only if Fighter is declared the winner of the first Bout, the second Bout, the third Bout, the fourth Bout, the fifth Bout and the sixth Bout by the applicable Athletic Commission, the Win Bonus for the sixth Bout in this subsection shall be Two Hundred Thousand Dollars (US $  200,000.00), less all permissible or required deductions.  If Fighter is not declared the winner of the first Bout, the second Bout, the third Bout, the fourth Bout, and the fifth Bout by the applicable Athletic Commission (and if there is no Acceleration), Fighter's Purse and Win Bonus for the sixth Bout shall be the same as set forth in subsection (a) above.  If Fighter is declared the winner of one of the first five Bouts by the applicable Athletic Commission (and if there is no Acceleration), Fighter's Purse and Win Bonus for the sixth Bout shall be the same as set forth in subsection (b) above.  If Fighter is declared the winner of two of the first five Bouts by the applicable Athletic Commission (and if there is no Acceleration), Fighter's Purse and Win Bonus for the sixth Bout shall be the same as set forth in subsection (c) above.  If Fighter is declared the winner of three of the first five Bouts by the applicable Athletic Commission (an  d if there is no Acceleration), Fighter's Purse and Win Bonus for the sixth Bout shall be the same as set forth in subsection (d) above.  If Fighter is declared the winner of four of the first five Bouts by the applicable Athletic Commission (and if there is no Acceleration), Fighter's Purse and Win Bonus for the sixth Bout shall be the same as set forth in subsection (e) above.

g.   If and only if Fighter is declared the winner of the first Bout, second Bout, third Bout, the fourth Bout the fifth Bout, and the sixth Bout by the applicable Athletic Commission, Fighter's Purse for the seventh Bout  in this subsection shall be Two Hundred Ten Thousand Dollars (US $210,000.00), less all permissible or required deductions.  If and only if Fighter is declared the winner of the first Bout, the second Bout, the third Bout, the fourth Bout, the fifth Bout, the sixth Bout, and the seventh Bout by the applicable Athletic Commission, the Win Bonus for the seventh Bout  in this subsection shall   be Two Hundred Ten Thousand Dollars (US $210,000.00), less all permissible or required deductions.  If Fighter is not declared the winner of the first Bout, the second Bout, the third Bout, the fourth Bout, the fifth Bout and the sixth Bout by the applicable  Athletic  Commission  (and  if  there  is  no  Acceleration) Fighter's Purse and Win Bonus for the seventh Bout shall be the same as set forth in subsection (a) above.  If Fighter is declared the winner of one of the first six Bouts by the applicable Athletic Commission (and if there is no A cceleration) Fighter's Purse and Win Bonus for the seventh Bout shall be the same as set forth in subsection (b) above.  If Fighter is declared the winner of two of the first six Bouts by the applicable Athletic Commission (and if there is no Acceleration) Fighter's Purse and Win Bonus for the seventh Bout shall be the same as set forth in subsection (c) above.  If Fighter is declared the winner of three of the first six Bouts by the applicable Athletic Commission (and if there is no Acceleration) Fighter's Purse and Win Bonus for the seventh Bout shall be the same as set forth in subsection (d) above.  If Fighter is declared the winner of four of the first six Bouts by the applicable Athletic

9

ZFL-0393676

Commission (and if there is no Acceleration) Fighter's Purse and Win Bonus for the seventh Bout shall be the same as set forth in subsection (e) above.  If Fighter is declared the winner of five of the first six Bouts by the applicable Athletic Commission (and if there is no Acceleration) Fighter's Purse and Win Bonus for the seventh Bout shall be the same as set forth in subsection (f) above.

h.  If and only if Fighter is declared the winner of the first Bout, second Bout, third Bout, the fourth Bout the fifth Bout, the sixth Bout and the seventh Bout, by the applicable Athletic Commission, Fighter's Purse for the eighth Bout in this subsection shall be Two Hundred Twenty Thousand Dollars (US $220,000.00), less all permissible or required deductions.  If and only if Fighter is declared the winner of the first Bout, the second Bout, the third Bout, the fourth Bout, the fifth Bout, the sixth Bout, the seventh Bout, and the eighth Bout by the applicable Athletic Commission, the Win Bonus for the eighth Bout in this subsection shall be Two Hundred Twenty Thousand Dollars (US $ 220,000.00), less all permissible or required deductions.  If Fighter is not declared the winner of the first Bout, the second Bout, the third Bout, the fourth Bout, the fifth Bout, the sixth Bout, and the seventh Bout by the applicable Athletic Commission (and if there is no Acceleration) Fighter's Purse and Win Bonus for the eighth Bout shall be the same as set forth in subsection (a) above.  If Fighter is declared the winner of one of the first seven Bouts by the applicable Athletic Commission (and if there e is no Acceleration) Fighter's Purse and Win Bonus for the eighth Bout shall be the same as set forth in subsection (b) above.  If Fighter is declared the winner of two of the first seven Bouts by the applicable Athletic Commission (and if there is no Acc eleration) Fighter's Purse and Win Bonus for the eighth Bout shall be the same as set forth in subsection (c) above.  If Fighter is declared the winner of three of the first seven Bouts by the applicable Athletic Commission (and if there is no Acceleration ) Fighter's Purse and Win Bonus for the eighth Bout shall be the same as set forth in subsection (d) above.  If Fighter is declared the winner of four of the first seven Bouts by the applicable Athletic Commission (and if there is no Acceleration) Fighter's Purse and Win Bonus for the eighth Bout shall be the same as set forth in subsection (e) above.  If Fighter is declared the winner of five of the first seven Bouts by the applicable Athletic Commission (and if there is no Acceleration) Fighter's Purse and Win Bonus for the eighth Bout shall be the same as set forth in subsection (f) above.  If Fighter is declared the winner of six of the first seven Bouts by the applicable Athletic Commission (and if there is no Acceleration) Fighter's Purse and Win Bonus for the eighth Bout shall be the same as set forth in subsection (g) above.

ii.    CONOR MCGREGOR BOUT(S):

a.  If Fighter participates in a   non-championship Bout wherein Fighter's opponent is Conor McGregor (and not a Bout as set forth in 6.1(A)(ii)(b), Fighter's Purse for said Conor McGregor Bout shall be Two Hundred Fifty Thousand Dollars (US $250,000.00),  less all permissible or

10

required deductions.  If Fighter i s declared the winner by the applicable Athletic Commission of said Conor McGregor non-championship Bout, the Win Bonus for the Bout shall be One Hundred Fifty Thousand Dollars (US $150,000.00), less all permissible or required deductions.

b.   If Fighter participates in a  non-championship Bout wherein Fighter's opponent is Conor McGregor, and Fighter's Bout is the main  event or co-main event (which for the purposes of this section shall mean the last or second-to-last Bout occurring on the card), and if the non-championship Bout is a UF C event that is broadly distributed in the United States  via residential Pay -Per-View Providers (defined below), Fighter's Purse for  said Conor McGregor  non-championship Pay-Per-View main event or co-main event Bout shall be Four Hundred Thousand Dollars (US $400,000.00), less all  permissible or  required deductions.  If Fighter is declared the winner by the applicable Athletic Commission of said Conor McGregor  non-championship Pay-Per-View main event or co-main event Bout, the Win Bonus for the Bout shall  be One Hundred Thousand Dollars (US $100,000.00), less all permissible or required deductions.

c.   If Fighter participates in a championship Bout wherein Fighter's opponent is Conor McGregor, and Fighter is challenging for the Featherweight or Lightweight UFC title and championship belt, Fighter's Purse for said Conor McGregor Featherweight or Lightweight championship Bout shall be Seven Hundred Fifty Thousand Dollars (US $750,000.00).  For the avoidance of doubt, there shall be no Win Bonus if Fighter is declared winner of the Bout.   Furthermore, for the sake of clarity, the potential Conor McGregor Bouts i n this subsection and in subsections (ii)(a) and ii(b) above are mutually exclusive and not cumulative (i.e., only one Purse will apply, not all.)

6.2   In addition to the Fighter's Purse, if and only if Fighter participates in a Bout in any instance:  (i) where Fighter is a UFC champion, as recognized by ZUFFA, and is defending a UFC   title and championship belt; or (ii) Fighter participates in a Bout where Fighter is challenging TJ Dillashaw or Dominick Cruz for the Bantamweight UFC title and championship belt; and if the Bout is in a UFC event that is broadly distributed in the United States and/or Canada, or any other territory, including via the internet, so long as the rates charged in said territories, or on the internet, are comparable to those charged in the United States or Canada, on residential pay  -per-view on iN DEMAND, DirecTV, Echostar, or similar pay-per-view provider as utilized by ZUFFA ("Pay  -Per-View Providers"),  then Fighter has the potential to receive a  Pay-Per-View Bonus.  If such eve nt exceeds specified buy rates of combined sales through Pay-Per-View Providers, Fighter shall receive a Pay-Per-View Bonus as follows:

For combined Pay -Per-View Provider buys purchased within thirty (30) days of the live event, Fighter shall receive One dollar ($1.00) for each pay-per-view buy between 200,000 buys and 400,000 buys; and Two dollars ($2.00) for each pay     -per-view buy between 400,000 buys and 600,000 buys; and Two dollars and Fifty Cents ($2.50) for each pay-per-view buy over 600,000 buys.

*By way of example only, if such an applicable event were to generate 600,000 combined iN DEMAND, DirecTV, and Echostar, pay -per-view buys, Fighter would receive a  Pay-Per-View Bonus of

11

ZFL-0393678

$600,000, which would represent $200,000 for applicable buys betwee    n 200,000 and 400,000 ($1 x 200,000 buys) and $400,000 for applicable buys between 400,000 and 600,000 ($2.00 x 200,000 buys).

6.3     In order to verify ZUFFA's compliance with the potential Pay-Per-View Bonus, Fighter is entitled, upon written  notice of at least thirty (30) business days, to review, at ZUFFA's offices, all applicable pay-per-view reports that ZUFFA has received from iN DEMAND, DirecTV, Echostar and Canadian pay-per-view providers.  Fighter may exercise this right no more than on  ce each calendar year, for each Bout in which he participates, for up to two (2) years after the date of the applicable Bout.  Pay-Per-View Bonus to be paid on an ongoing monthly basis subsequent to ZUFFA's receipt of payment from the Pay-Per-View Providers and only if the aggregate amount owed to Fighter is in excess of $500.00.  Fighter agrees to treat any such of review under this section as confidential and agree not to disclose any information reviewed hereunder except as required by law or pursuant to        a valid Court order.  Additionally, Fighter agrees to refund and reimburse ZUFFA for any overpayments in the event and to the extent iN DEMAND, DirecTV, Echostar and/or Canadian providers adjust the pay    -per-view buys for any of Fighter's bouts retroactive  ly.  ZUFFA shall have the right to deduct any overpayment adjustments from future payments to Fighter. ZUFFA reserves the right to reduce payments related to Canadian or other non -US pay-per-view buys in the event of an adverse currency exchange rate at th    e time of the payment to Fighter.

6.4     ZUFFA shall pay Fighter's Purse and the Win Bonus, if applicable, within twenty    -four (24) hours of the completion of each Bout, except that payment will be subject to the authority of and ZUFFA shall make payments onl y in accordance with the recommendations of the Athletic Commission (including without limitation, any Athletic Commission order for an anti-doping violation).  ZUFFA may deduct or withhold from compensation any applicable tax (whether domestic or foreign)    , fee, or sum required or permitted to be deducted or withheld by law, and may offset against any such compensation any sums advanced to Fighter by ZUFFA or otherwise due from Fighter to ZUFFA.

6.5     The Fighter's Purse and Win Bonus, and, if applicable      Pay-Per-View Bonus, together with the Incidentals (defined below) shall be the sole compensation due to or claimed by Fighter on account of this Agreement, the Rights, and Fighter's participation in any Bout or any activity related thereto.

6.6     Any and all  potential Fighter's Purses and, if applicable, Win Bonuses and/or  Pay-Per-View  Bonuses capable of being earned during the Extension Term shall be negotiated in good faith between the parties.  However, the parties expressly agree that such potential amoun   ts are quantifiable and definite terms to this Agreement because each such Fighter's Purse and, if applicable, Win Bonus shall, at a minimum, be no less than the last Fighter's Purse and, if applicable, Win Bonus received by Fighter during the standard Term of this Agreement.

6.7     Any advances shall be made in the sole discretion of ZUFFA, and may be subject to the prior approval of the Athletic Commission.

6.8     Fighter shall operate within the requirements of all tax laws and regulations, and interpretations thereof, and be solely responsible for reporting the entire compensation paid under this Agreement and any corresponding agreements and ensure timely settlement of all taxes and other similar deductions.  ZUFFA shall provide Fighter with a Form 1099 wit hin ninety (90) days following the close of its fiscal year.

/ / /

12

ZFL-0393679

ARTICLE VII
INCIDENTALS

7.1     In addition to the Fighter's Purse and, if applicable, the Win Bonus, as provided for above, Fighter shall be entitled to the transportation, lodging, meals or meal allowances, and Bout tickets (collectively, the "**Incidentals**") identified in the Bout Agreement. Such Incidentals shall not be less than the Incidentals set forth herein.

a.      For each non-championship Bout hereunder which Fighter participates in, ZUFFA shall provide a total of one (1) hotel or motel room and two (2) round -trip economy class airline tickets from the airport servicing Fighter's hometown to the site of the Bout for use by and transportation of Fighter and one (1) of Fighter's Affiliates (      the "**Fighter's Affiliates** "). Fighter's Affiliates shall include, but not be limited to, his man ager, agent, trainer, seconds, sparring partners and other persons associated with Fighter who are connected with the Bouts.

b.      For each championship Bout hereunder which Fighter participates in as the champion or the challenger for the championship, ZUFF A shall provide a total of two (2) hotel or motel rooms and three (3) round-trip economy class airline tickets from the airport servicing Fighter's hometown  to the site of the Bout for use by and transportation of Fighter and two (2) of Fighter's Affiliates.

c.      For all Bouts hereunder, Fighter shall arrive and check in to the lodging provided by ZUFFA on the date specified in the Bout Agreement, which shall be any time up to eight (8) days prior to the date of the Bout ( the "**Training Commencement Date**"), and shall check-out and depart from the lodging provided prior to the    designated  check-out t ime on the day after the Bout (    the "**Departure Date**").

d.      From the Training Commencement Date through the Departure Date, Fighter and one (1) of Fighter's Affiliates shall each be provided with either Fifty Dollars (US $50.00) cash *per diem* for meals, or at ZUFFA's discretion, meal vouchers for three (3) meals per day.       Food and beverage allowances shall be non-cumulative from day to day.

e.      Lodging shall be provided only from the Training Commencement Date through the Departure Date. Fi ghter and Fighter's Affiliates shall be required to present  a valid credit card upon registering at the hotel or motel, which    card shall be charged for any and all expenses    and damages beyond the cost of the room, and ZUFFA shall have no obligation for such additional expenses.

f.      Fighter shall also be provided with four (4) tickets to each Bout hereunder,    the selection and location of which shall be determined by ZUFFA.  If Fighter's Bout is the main event, Fighter shall receive tickets for seats located within ten (10) rows of the Octagon.

7.2     No other benefits, charges, expenses, or other incidentals of any kind (   *e.g.*, telephone charges, beverages, entertainment, gift shop items or other such benefits, charges and expenses) shall be provided by ZUFFA to  Fighter or anyone associated with Fighter, and Fighter shall not be entitled to receive compensation in lieu of any unused or undesired Incidental.

/ / /

/ / /

13

ARTICLE VIII
FIGHTER'S CONDUCT

8.1     As set forth in more detail in the UFC Fighter Conduct P olicy, which is attached to this Agreement as Exhibit A, Fighter shall conduct himself in accordance with commonly accepted standards of decency, social conventions and morals, and Fighter will not commit any act or become involved in any situation or occu rrence or make any statement which will reflect negatively upon or bring disrepute, contempt, scandal, ridicule, or disdain to Fighter, the Identity of Fighter or any of Fighter's Affiliates, ZUFFA or any of its officers, managers, members, employees, or a gents.  Fighter's conduct shall not be such as to shock, insult or offend the public or any organized group therein, or reflect unfavorably upon any current or proposed arena, site hotel, sponsor or such sponsor's advertising agency, or any network or station over which a Bout is to be broadcast.    In addition, Fighter agrees  that during  a Bout, or while training for a Bout, as well as during any Pre-Bout Events or Post-Bout Events, neither Fighter nor any of his managers, trainers and assistants shall wear a ny clothing or ornamentation, including, but not limited to, permanent or temporary tattoos or body art, that is lewd, obscene, offensive, defamatory, discriminatory on the basis of age, sex, race, color, creed, national origin, political belief , religious belief or sexual orientation or otherwise inappropriate as determined by  ZUFFA in its sole discretion  or which conflicts with a ZUFFA sponsor, the arena or telecaster.

8.2     Fighter and Fighter's Affiliates shall maintain a high standard of sportsmanship       and conduct themselves in a professional manner prior to, during, and following each Bout.

8.3     Fighter shall not authorize or be involved with any advertising material or publicity materials that contain language or material which is generally considered to be obscene, libelous, slanderous or defamatory and will not violate or infringe upon, or give rise to any adverse claim with respect to, any common  -law or other right whatsoever (including, but not limited to, any copyright, trademark, service mark, li terary, dramatic, music or motion picture right, right of privacy or publicity, contract or moral rights of authors) of any person or entity.

8.4     Fighter shall maintain his eligibility and keep in good standing any license required to participate in any Bout.

8.5     Fighter agrees to comply with and be bound by all aspects of the UFC ADP, including but not limited to, ZUFFA or its designee's authority to: collect samples from the Fighter in-competition and out-of-competition, to have those samples analyzed at World Anti-Doping Agency accredited or approved laboratories, and to conduct results management and impose sanctions under the UFC ADP.  In the event of an anti-doping policy violation, Fighter further agrees to the authority and jurisdiction of the arbitration process set forth in the UFC ADP.  Fighter also agrees not to use those Prohibited Substances and Prohibited Methods identified in the UFC ADP and acknowledges Fighter's acceptance of the roles and responsibilities of Athletes set forth in Article 21 of the UFC ADP.

8.6     In addition to being subject to the UFC ADP, Fighter also remains subject to the anti-doping rules of any applicable Athletic Commission.  Fighter also agrees to comply with all Athletic Commission sample collection requests and other regulations.  ZUFFA will endeavor to coordinate sample collection and necessary therapeutic use exemptions with applicable Athletic Commissions. However, Fighter remains subject to both the UFC ADP and all applicable Athletic Commission rules and regulations.

/ / /

14

ZFL-0393681

ARTICLE IX
INJURY OR RETIREMENT

9.1     If at any time during the Term, ZUFFA offers to promote a Bout for Fighter and Fighter refuses to participate in or attempt s to cancel or postpone such Bout for reason of a claimed injury or other medical disability, ZUFFA shall have the right, but not the obligation, to have Fighter examined by a medical doctor of its choice at ZUFFA's expense, and, if ZUFFA so elects, Fighter shall appear for such examination on one (1) day's notice.

9.2     If at any time  during the Term, Fighter claims to be injured or    temporarily disabled, ZUFFA may, at its election, for each such injury or disability claimed by Fighter, (i) extend the Term for the period of such injury or disability or for the period of six (6) months, whichever is longer; (ii) declare that ZUFFA has satisfied its obligation to promote one (1) of the Bouts to be promoted by ZUFFA hereunder, without any compensation due to Fighter for said Bout; or (iii) provide Fighter  with notice of an Acceleration as defined herein.

9.3     If at any time during the Term, Fighter decides to retire from mixed martial arts or other professional fighting competition or is permanently disabled, then ZUFFA may, at its election, (i) suspend the Term  for the period of  such retire ment  or  disability; (ii) declare that  ZUFFA has  satisfied its obligation to promote all future Bouts to be promoted by ZUFFA hereunder, without any compensation due to Fighter therefor; or (iii) elect to provide Fighter with notice of an Acceleration.

ARTICLE X
TERMINATION/REMEDIES

10.1     ZUFFA shall have the right,  but not the obligation,  upon notice to Fighter,  to accelerate the Term and thereby terminate ZUFFA'S promotional and other obligations hereunder and under any Bout Agreement then in effect ( an "**Acceleration**") and to terminate Fighter's participation in any Bout, with Acceleration effective as of the date of notice, and to withdraw recognition from Fighter of any championship title, status and belt, if:

a.     Fighter fails, for any reason whatsoever (other than the injury or physical disability of Fighter or any act of God as provided in Section  4.5) to engage in the minimum number of Bouts as offered by ZUFFA;

b.     Fighter or any of Fighter's Affiliates materially breach, violate or are in default of any provision of this Agreement or any other agreement hereafter entered into between Fighter and ZUFFA;

c.     any of the representations or warranties of Fighter contained herein were false when made or are no longer true and correct;

d.     Fighter is not declared the  winner of any  mixed martial arts bout  (whether promoted by ZUFFA or not) by the Athletic Commission or official authority having jurisdiction over the bout; or

e.     Fighter's license to participate in bouts is suspended or revoked by an    Athletic Commission.

15

ZFL-0393682

      f.     Fighter is unable to obtain the necessary documentation, including any work visas, to lawfully permit Fighter or Fighter's Affiliates to participate in any Bout as provided for in Section 23.2 of this Agreement.

      g.     Fighter is charged with a misdemeanor (other than a minor traffic offense) or a felony.

      h.     Fighter should  commit any act which would permit any arena, event site or television broadcaster, distributor or exhibitor to cancel its contract with ZUFFA for a particular Bout  in which Fighter was to participate.

10.2    Acceleration shall be without further liability or obligation from ZUFFA to Fighter, except for the payment of any Fighter's Purse or Win Bonus, if applicable, or other amounts due for Bouts that have been completed prior to Acceleration.

10.3    Acceleration shall not serve to affect or terminate any of the Ancillary Rights, and this Agreement shall survive an Acceleration and remain in full force and effect with respect  to the Ancillary Rights.  ZUFFA's failure to accelerate in any particular case shall not constitut e a waiver for future such cases.

10.4    Fighter acknowledges that his services as a professional fighter and the Ancillary Rights granted to ZUFFA herein are special, unique, extraordinary, irreplaceabl e and of peculiar value, and that in the event of Fighter's breach or threatened breach of this Agreement or any Bout Agreement, ZUFFA would suffer irreparable damage which could not be reasonably or adequately compensated by an award of damages.  In the event of such breach or threatened breach, ZUFFA shall be entitled, in addition to any other available remedy, to obtain equitable relief, including, but not limited to, an injunction against such breach and Fighter waives the right to assert as a defense i n any such action that ZUFFA has an adequate remedy at law.  To the extent that a bond is necessary to obtain an injunction, Fighter agrees that the bond shall not exceed Five Hundred Dollars (US $500.00).

10.5    If Fighter believes in good faith that ZUFFA has materially breached any material provision of this Agreement, or has unreasonably failed or refused to perform its obligations hereunder, Fighter shall provide ZUFFA with written notice of such alleged breach and shall provide ZUFFA with at least ten  (10) business days to cure such alleged breach.  If ZUFFA fails to cure the alleged material breach within ten (10) business days of receipt of Fighter's written notice, then and only then may Fighter seek to terminate this Agreement and seek redress for a  ny outstanding compensation owed to Fighter hereunder.  Fighter expressly understands and agrees that his sole remedy for any alleged breach by ZUFFA shall be to seek payment for any remaining compensation due to Fighter under Article VI, exclusive of any  potentially applicable Win Bonuses, and in no event shall Fighter be entitled to any consequential, incidental, or punitive damages of any sort.

ARTICLE XI<br>INSURANCE

11.1    ZUFFA will provide health and accidental death insurance as required by the   applicable Athletic Commission. Fighter hereby acknowledges that professional unarmed combat has the significant potential for serious injuries, and Fighter is knowingly and voluntarily assuming all such risks. Accordingly, except for the insurance benefi ts being provided by ZUFFA as described in  this Article 11, Fighter, for himself, his heirs, assigns, executors, and administrators agrees to be solely liable for and will bear the full and complete cost of any and all medical treatment or disability and all other costs associated

16

ZFL-0393683

with any injuries resulting from any and all Fighter's services under this agreement. Furthermore, Fighter assumes all risks of injuries sustained outside of a Bout.

11.2    ZUFFA shall have the right, at its election, to obtain, a t ZUFFA's cost and expense, life or other insurance upon Fighter, including, but not limited to, insurance against the failure of Fighter to appear and to participate in any Bout and insurance to cover injuries sustained by Fighter in training and preparation for a Bout, in such amounts or type of coverage as ZUFFA may determine, and, if applicable, for the benefit of ZUFFA.   Except as expressly consented to in writing by ZUFFA, n either Fighter nor any of Fighter's Affiliates shall have any right, title or   interest in such insurance. Fighter  and Fighter's Affiliates shall, at the request of ZUFFA , cooperate with and assist ZUFFA  or its agent (as directed by ZUFFA), in obtaining and maintaining   any such coverage, including submitting to physical or other examinations of Fighter and furnishing such information and medical records as may be required by any existing or proposed   insurer and performing all further acts and things, and executing any and all additional documents or instruments necessary for ZUFFA to  obtain any such insurance contemplated by this Section 11.2.

ARTICLE XII
RIGHT OF FIRST NEGOTIATION AND RIGHT TO MATCH

12.1    Fighter agrees to negotiate exclusively with ZUFFA regarding the extension or renewal of the Term for a period of ninety (90) days following the expiration of the Term ("**Exclusive Negotiation Period**"). If ZUFFA and Fighter fail to reach agreement upon the terms and conditions of an extension of the Term, within the Exclusive Negotiation Period, Fighter may negotiate with an  y other promotional entity, subject to ZUFFA's right to match the terms of any agreement offered to Fighter by such other promotional entity (each, an " **Offer**") prior to the acceptance of the Offer by Fighter, as set forth below.

12.2    ZUFFA shall h ave the option to match the financial terms and conditions for one (1) year following the expiration of the Exclusive Negotiation Period (the "   **Matching Period** "). ZUFFA shall have the option to match the financial terms and conditions of any offer made to   Fighter for any mixed martial arts bout or fighting competition or exhibition, or any series of mixed martial arts bouts or fighting competitions or exhibitions.   Fighter shall not accept any offer or enter into a contract or agreement with any other promo tional entity during the Matching Period without complying with this Section 12.2.  Prior to acceptance of any Offer made during the Matching Period, Fighter shall first deliver to ZUFFA a written notice of all material financial terms and conditions of th  e offer, including, but not limited to, the identity of the promotional entity making the offer.  Such notice shall constitute an exclusive, irrevocable offer (the " **Fighter Offer**") to contract with ZUFFA on the same financial terms and conditions.  ZUFFA s hall have fifteen (15) business days following receipt of the Fighter Offer in which to accept the financial terms of the Fighter Offer.    If ZUFFA does not accept the Fighter Offer, Fighter may then accept the offer without modification during the ten (10) business day period following expiration of the Fighter Offer (the "  **Contract Period**").  If the offer is modified in any material way, such modification shall give rise to another Fighter Offer on such modified terms and conditions and ZUFFA shall have the  option to match the terms of the offer, as modified in accordance with the terms and conditions of this Section 12.2.    If Fighter has not contracted with a third party on or before the conclusion of the Contract Period, then all rights granted to ZUFFA pu rsuant to this Section 12.2 shall be automatically reinstated.

12.3    The provisions of Section 12.2 above shall    survive termination or expiration of this Agreement.

17

ZFL-0393684

ARTICLE XIII
REPRESENTATIONS AND WARRANTIES

13.1.    Fighter represents and warrants to ZUFFA that:

a.    Fighter shall prepare and honestly compete to the best of Fighter's ability in the Bout and that there is no impairment to Fighter doing so;

b.    Fighter is free to enter into this Agreement and has not   heretofore and will not hereafter enter into any contract, option, agreement or understanding, whether oral or written, which conflicts with the provisions hereof or the grant of Rights contained herein or which would or could interfere with Fighter's full  and complete performance hereunder or the free and unimpaired exercise by ZUFFA of any of the Rights;

c.    There are no claims or arbitration, mediation, or litigation pending or threatened affecting Fighter that would or could interfere with Fighter's full and complete performance hereunder or the free and unimpaired exercise by ZUFFA of any of the Rights;

d.    Fighter is entering into this Agreement of  Fighter's own free will, is not subject to duress of any kind, and is not under the influence of any     substance or medication that would affect Fighter's ability to execute this Agreement     and Fighter knows of no disability, whether physical or mental, which would or could prevent Fighter from the full and complete performance of his obligations hereunder; and

e.    Fighter has had the opportunity to consult an attorney or other representative regarding this Agreement, and he appreciates the legal significance and consequences of signing this Agreement; and

f.    Fighter is either (i) a citizen of the United States   and is not otherwise subject to any "backup" or other withholding of taxes or compensation specially applicable to those who are not citizens of the United States , or (ii) is not a citizen of the United States but has provided to ZUFFA in writing all infor mation necessary to enable ZUFFA to comply with any such applicable withholding or other payment requirement.

g.    Fighter has obtained, and ZUFFA shall not be responsible to pay for in any way whatsoever, all clearances, licenses, uses, reuse fees, license   fees, relating to the use and appearance of any creative expression, clothing apparel, sportswear and equipment, included but not limited to, trunks, robes, shoes, or any other part of the costume, electronic information, digital information, wording, phrases, symbols, pictures, designs, print materials or other materials or information (including, without limitation, the trademarks, copyrights, personal privacy, property rights, names, voices, and likenesses of all and any persons, properties and businesses appearing therein (if any), and all components and elements thereof) displayed and exhibited by Fighter or any of Fighter's Affiliates during or at any Bouts, Pre-Bout Events or Post-Bout Events.

h.     Fighter has  the full power  to expressly  and irrevocably transfer said rights described in Paragraph 1 3.1(g) above to ZUFFA **,** or ZUFFA's respective sponsors, successors, assigns, agents, directors, members, managers, officers, employees, co-producers and licensees, and warrants that the exercise of the  rights granted herein will not infringe on any rights of any third party, including but not limited to copyright, trademark, unfair competition, contract, defamation, privacy or publicity rights.

18

i.      Fighter has been provided a copy of and has read the UFC Fighter Conduct Policy which is incorporated by reference into this Agreement.

13.2.   ZUFFA represents and warrants to Fighter that:

a.      ZUFFA is a limited liability company duly formed under the laws of the State of Nevada; and that the person executing this Agreement on behalf of ZUFFA is authorized to do so; and

b.      ZUFFA is able to perform its promotional and payment obligations arising hereunder, and there are no claims or arbitration, mediation, or litigation pending or threatened affecting ZUFFA that would prevent ZUFFA from performing hereunder.

ARTICLE XIV
ASSUMPTION OF THE RISK/WAIVER OF ALL CLAIMS

14.1    Fighter fully understands and agrees that the professional sport of mixed martial arts is an inherently and abnormally dangerous activ ity that can result in severe and permanent physical injury, including but not limited to irreversible neurological trauma, disab ility, or death.  Fighter represents that he is a seasoned professional in the sport of mixed martial arts, and Fighter has kno wingly evaluated the inherent risks,  foreseen and unforeseen , in this dangerous sport and represents and declares that he is physically, mentally, emotionally and intellectually willing and able to accept, and does hereby clearly, unambiguously and explicitly accept, all risks, foreseen and unforeseen, associated with preparing for and participating in the sport and the Bouts.

14.2    In consideration for the opportunity to participate in the Bouts, and with full knowledge and complete assumption of all the risks, Fighter, for himself, his heirs, assigns, executors and administrators ("**Releasing Parties**") hereby irrevocably agrees that the Releasing Parties will  not sue or claim against ZUFFA or any of its parents, subsidiary entities, affiliates, sponsors, successors and assigns, and the respective directors, officers, members, managers, employees, agents, contractors, partners, shareholders and representatives, in their individual, personal and representative capacities for each of the foregoing entities (  "**Released  Parties**") for any injury, illness, damage, loss or harm to Fighter or Fighter's property, or Fighter's death  or disability, howsoever caused, resulting or arising out of or in connection with Fighter's preparation for, travel for, participation and appearance in any UFC promotional events, the Bouts, the Pre -Bout Events and the Post -bout Events or any activities associated therewith.

14.3    In consideration for the opportunity to participate in the Bouts, and with full knowledge and complete assumption of all risks, the Releasing Parties hereby forever voluntarily release, discharge, waive and relinquish any and all, past, present and future, claims and causes of action, specifically including any claims based on negligence or gross negligence, that   they may have against the Released Parties, as the result of any injury, illness, damage, loss or harm to Fighter or Fighter's property, or Fighter's death or disability, howsoever caused, resulting or arising out of or in connection with Fighter's preparation for, travel for, participation and appearance in any UFC promotional events, the Bouts, the Pre-Bout Events and the Post-Bout Events or any activities associated therewith.  Furthermore, the Releasing Parties hereby irrevocably and unconditionally cons ent and agree that  any insurance proceeds and benefits provided by ZUFFA hereunder shall be the only benefits the Releasing Parties may claim or receive from Released Parties for any injury, including death, relating to any and all of Fighter's services under this Agreement.

/ / /

19

## ARTICLE XV
## INDEMNIFICATION

15.     Fighter shall indemnify, defend and hold harmless ZUFFA, its subsidiaries, affiliates and sponsors, and each of their members, managers, directors, officers, employees, representatives, agents and contractors from and against any claims, actions, proceedings, expenses (including attorneys' fees of counsel of indemnified party's choice, as and when incurred) and damages arising from or relating to any negligent or intentional acts or omissions by Fighter or any of Fighter's Affiliates or the breach of any of Fighter's representations, warranties or covenants contained herein or within any Bout Agreement.

## ARTICLE XVI
## PROHIBITION ON USE OF
## INTELLECTUAL PROPERTY RIGHTS

16.1    Unless Fighter receives prior written approval from ZUFFA, Fighter shall not utilize any of ZUFFA's intellectual property rights, including, but not limited to, the names and marks    "Ultimate Fighting Championship," "UFC," the "Octagon," "Ultimate Fighting," "Ultimate Fighter," and any logos, pictures or other representations of ZUFFA's intellectual property. Without limiting the scope of this prohibition, Fighter expressly agrees that he may not refer to himself as a     "UFC Champion"; "former UFC Champion"; "UFC Star"; "UFC Superstar"; "UFC Fighter" or utilize any of ZUFFA's intellectual property in describing or referring to himself without the express written consent of ZUFFA.  Further, Fighter expressly agrees not   to use a UFC championship belt without the     prior written approval of ZUFFA, and further agrees that any such belt he obtains is on loan and will at all times remain the property of ZUFFA. Upon ZUFFA's written request, the belt must be returned within forty    -eight (48) hours to ZUFFA   at Fighter's ex pense. Additionally, Fighter expressly   acknowledges and  agrees that ZUFFA is not a sanctioning organization and Fighter does not possess and cannot assert any property right or similar legal interest in the UFC title or in being a UFC champion.

16.2    Fighter shall not utilize the intellectual property ri   ghts of any of ZUFFA's sponsors, including, without limitation, any logos, pictures or other representations of such intellectual property.

## ARTICLE XVII
## ASSIGNMENT

17.1    ZUFFA shall have the absolute right to assign, license, or transfer any or all of the rights granted to it hereunder, including, but not limited to, the right to co -promote any Bout in association with any one or more persons or entities of its choosing.  ZUFFA may assign any of its resp ective obligations hereunder without Fighter's consent.

17.2    The rights and obligations of Fighter arising from this Agreement and any Bout Agreement are personal to Fighter and the benefits     and the duties of Fighter hereunder may    not be assigned, pledged or transferred for any reason.

## ARTICLE XVIII
## OTHER ACTIVITIES OF ZUFFA

18.1    Nothing herein shall prevent ZUFFA from engaging in promotional activities for any other professional fighter, including others in the same weight class as Fighter, or any other     activities, whether related or unrelated to the subject matter of this Agreement.

20

CONFIDENTIAL                                                                     ZFL-0393687

18.2    Nothing herein shall prevent Fighter from engaging in any other business, trade, profession or other activity; provided that such other business, trade, profession or other activity does not involve the Fighter engaging in mixed martial arts contests or any other activity prohibited under this Agreement, and does not interfere with the Fighter's training or performance.

ARTICLE XIX
INTENT IN SIGNING

19.    Fighter acknowledges that his execution of this Agreement is for the purpose of obtaining the promotional services of ZUFFA upon the terms and conditions of this Agreement and that Fighter has not been required to sign this Agreement or to grant any of the Rights as a condition precedent to Fighter's participation in any professional mixed martial arts contest against another fighter who has granted promotional or ancillary rights to ZUFFA.

ARTICLE XX
INDEPENDENT CONTRACTOR STATUS

20.1    Nothing contained in this Agreement shall be construed to make Fighter an employee of ZUFFA or to appoint ZUFFA as Fighter's agent, and ZUFFA shall have no financial interest (other than offset rights) in compensation payable to Fighter for engaging in any Bout hereunder.   It is intended that Fighter shall remain an independent contractor, responsible for his own actions, expenses and any local, state, federal or international taxes, including, but not limited to, the engagement, discharge, benefits and costs of all of Fighter's Affiliates, and training facilities, equipment, professional memberships, sanctioning fees, medical expenses, social security taxes, Federal Insurance Contributions Act (FICA) taxes, and Federal Unemployment Tax Act (FUTA) taxes.

20.2    Fighter shall not be eligible  under this Agreement to participate in any vacation, group medical or life insurance, disability, profit sharing or retirement benefits or any other fringe benefits or benefit plans offered by ZUFFA to its employees and ZUFFA shall not be responsible for withholding or paying any income, payroll, Social Security or other federal, state or local taxes, making any insurance contributions (except as provided herein) including unemployment or disability, or obtaining workers' compensation insurance on Fighter's behalf.   Fighter shall be responsible  for, and shall indemnify ZUFFA against, all such taxes or contributions, including penalties and interest.   Any persons employed by Fighter in connection with the performance of the services povided by Fighter hereun   der shall be employees of Fighter and Fighter shall be fully responsible for such persons.

ARTICLE XXI
COMMERCIAL IDENTIFICATION

21.1    Fighter covenants and agrees that no wording, symbols, pictures, designs, names or other advertising or informational material (i) for any beer, alcohol, beverage company, tobacco, casino or gaming company, media company (including, but not limited to, HBO    , ABC,  SNI, ESPN, Spike, any Viacom owned network and any Internet related company); (ii) of any sponsor in conflict or competition with ZUFFA or any of ZUFFA's sponsors; (iii) of any sponsor causing injury to the reputation o f ZUFFA or ZUFFA's sponsors or their respective officers and owners; or (iv) which has not been pre -approved in writing by ZUFFA shall appear on the trunks,  gloves, robe, shoes or any other part of the costume or the body (including by use of temporary or henna tattoos) of Fighter or any of Fighter's Affiliates during or at any Bouts, Pre -Bout Events or Post -Bout Events.    For the avoidance of doubt, all sponsorship and endorsement approvals shall be at ZUFFA's sole discretion.  Fighter further covenants and agrees to only use the gloves approved and supplied by ZUFFA.

21

ZFL-0393688

21.2    Notwithstanding the foregoing, ZUFFA shall have the right to include any advertising or other informational material of ZUFFA, ZUFFA's sponsors or other entities designated by ZUFFA on the trunks, gloves, robe, shoes, regalia or any other part of the costume of Fighter or any of Fighter's Affiliates during or at any Bouts, Pre-Bout Events or Post-Bout Events.  Fighter covenants and agrees to be bound by and adhere to the UFC Outfitting Policy.

21.3    For television purposes, Fighter must be clearly distinguishable. Therefore, Fighter shall provide one (1) pair of dark-colored trunks and one (1) pair of light-colored trunks for each Bout. If it is necessary to distinguish Fighter from his opponent, ZUFFA shall have sole discretion to require Fighter to wear either the dark-colored or light-colored trunks.

ARTICLE XXII
CONFIDENTIALITY

22.1    Fighter shall not disclose to any third party (other than his agents and professional advisors, in their capacity as such, on a need-to-know basis), any information with respect to the terms and provisions of this Agreement or any Bout Agreement except: (i) to the extent necessary to comply with law or the valid order of a court of competent jurisdiction, in which event Fighter shall notify ZUFFA as promptly as practicable (if possible, prior to making such disclosure) and shall seek confidential treatment of such information, (ii) as part of normal reporting or review procedure to Fighter's lenders, auditors, attorneys and similar professionals, provided that such lenders, auditors and attorneys and similar professionals agree to be bound by the provisions of this section; and (iii) in order to enforce Fighter's rights pursuant to this Agreement or any Bout Agreement, in which case Fighter agrees to enter into a confidentiality agreement for all such proceedings.

22.2    ZUFFA shall have the sole right to determine the timing and content of and to make any press announcements and other public statements regarding this Agreement.

22.3    ZUFFA shall have the sole right to file this Agreement with any applicable athletic or fighting commission and world sanctioning bodies.

ARTICLE XXIII
FURTHER ASSURANCES

23.1    Fighter shall execute any and all additional documents or instruments necessary or desirable to effectuate the provisions of this Agreement, including, but not limited to, Bout Agreements and Standard Fighter Contracts or any other document required by ZUFFA, the Athletic Commission, any local governmental authority with jurisdiction over any Bout and the world organization(s) sanctioning any Bout, if applicable.  No party hereto shall take any action or fail to take any action which action or failure shall frustrate the purposes of this Agreement and the benefits contemplated hereby.

23.2    Fighter shall be solely responsible for obtaining all necessary documentation, including any work visas, to lawfully permit Fighter and Fighter's Affiliates to participate in all Bouts.  Fighter shall provide copies of all such documentation to ZUFFA no less than thirty (30) days prior to any Bout. Fighter's failure to obtain or provide such documentation shall constitute grounds for ZUFFA, at its election, to (i) obtain the required documentation and deduct the costs thereof from Fighter's Purse, (ii) cancel Fighter's participation in the Bout, without any compensation due to Fighter for said Bout, and extend the Term for a period four (4) months; (iii) declare that ZUFFA has satisfied its obligation to

22

promote one (1) of the Bouts to   be promoted by ZUFFA hereunder, without any compensation due to Fighter for said Bout; or (iv) provide Fighter with notice of an Acceleration.

## ARTICLE XXIV
### NOTICES

24.1     Any notice or other communications given or sent pursuant to this Agreement shall be in writing and shall be deemed given when (i) personally delivered; (ii) delivered by confirmed facsimile transmission; (iii) three (3) days following the date such notice   is mailed postage paid by registered or certified mail, return receipt requested; or (iv) to Fighter, delivered by confirmed electronic means (electronic mail), to the respective addresses indicated below   or any address subsequently provided to ZUFFA:

To ZUFFA:                                          To Fighter:
Dana White, President                         Urijah Faber
ZUFFA, LLC
2960 W. Sahara Ave.
Las Vegas, Nevada 89102                  Email:  urijahfaber@sbcglobal.net

With a copy to:                                   With a copy to:
Kirk D. Hendrick
Chief Legal Officer
ZUFFA, LLC
2960 W. Sahara Ave.                          Email:  jeff@mmaincorporated.com
Las Vegas, Nevada 89102

24.2     Any party may change its address for notice purposes by providing notice of such change of address in accordance with this section.

## ARTICLE XXV
### CHOICE OF LAW/EXCLUSIVE JURISDICTION AND VENUE

25.1     This Agreement has been delivered at and shall   be deemed to have been made at Las Vegas, Nevada, and shall be interpreted, and the rights and liabilities of the parties hereto determined, in accordance with the laws of the State of Nevada.

25.2     ZUFFA and Fighter  hereby (a) expressly consent to the   exclusive personal jurisdiction and venue of the state and federal courts located in Clark County, Nevada for any action brought by either party to interpret or enforce any provision of this Agreement and (b) agree not to assert (by way of motion, as a defense or otherwise) that such legal proceeding has been brought in an inconvenient forum. The undersigned, by execution and delivery of this Agreement, expressly and irrevocably consent to the service of any complaint, summons, notice or other process r elating to any such action or proceeding by delivery thereof to such party by hand or by certified mail, delivered or addressed to the address set forth in this Agreement.

23

CONFIDENTIAL                                                                  ZFL-0393690

## ARTICLE XXVI
## MISCELLANEOUS PROVISIONS

26.1     If any provision of this Agreement is  found to be illegal, invalid, or unenforceable as to any circumstance, such finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance.  Rather, the offending provision shall be considered modified so tha     t it becomes legal, valid and enforceable, or, if not capable of such modification, shall be considered deleted. The illegality, invalidity, or unenforceability of any provision shall not affect the legality, validity, or enforceability of any other provision of this Agreement.

26.2     No waiver by any party of any breach or default hereunder shall be deemed to be a waiver of any preceding or subsequent breach or default.  All waivers must be in writing, specify the breach or default concerned and be signed by the party against whom the waiver is sought to be enforced.

26.3     In the event either party engages counsel in connection with the enforcement or interpretation of this Agreement or any provision hereof or the resolution of any dispute arising from or related to this Agreement, the prevailing party shall be entitled to recover from the other party its attorneys' fees and costs, regardless of whether or not an action is filed.

26.4     The provisions of this Agreement are for the exclusive benefit of the par   ties hereto and their permitted successors and assigns, and no third party shall be a beneficiary of or have any rights under this Agreement, regardless of whether or not such third party is referred to herein.

26.5     Other than any Bout Agreement or Standa rd Fighter Contract which may be entered into by the parties pursuant to the terms of this Agreement, this Agreement sets forth and integrates the entire understanding between Fighter and ZUFFA, and supersedes any and all prior or contemporaneous written or oral agreements or representations between the parties with respect to the subject matter hereof.

26.6     This Agreement may not be altered, amended or discharged, except by a subsequent writing signed by the parties hereto.

26.7     This Agreement may be exe  cuted in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same instrument. Facsimile signatures shall be as effective as originals.

26.8     Descriptive headings of this Agreement are inserted for convenience only and do not constitute a part of this Agreement and shall not be considered for purposes of its interpretation.       The parties agree that they have equally participated in the negotiatio   n of the terms and conditions in this Agreement, and therefore  any ambiguities shall be resolved without reference to which party may have drafted all or any provision herein.

## ARTICLE XXVII
## MEDICAL TESTING

27.     FIGHTER SHALL COMPLETE A FULL PHYSICAL MEDIC   AL EXAMINATION AND UNDERGO TESTING AND RECEIVE AFFIRMATIVE CLEARANCE THEREFROM PRIOR TO EACH BOUT INCLUDING, BUT NOT LIMITED TO THE FOLLOWING: CBC, HEPATITIS B, HEPATITIS C, HIV, RH AND BLOOD TYPE, RPR, PT, PTT, URINALYSIS WITH DRUG SCREENING, EKG, CT SCAN  , MRI, DIALATED OPHTHALMOLOGICAL EXAM, AND SUCH OTHER TESTING AS ZUFFA OR THE ATHLETIC COMMISSION MAY REQUIRE.   THE

24

MEDICAL EXAMINATION SHALL BE PERFORMED BY A NEUTRAL MEDICAL SERVICE PROVIDER DURING THE THIRTY (30) DAY PERIOD IMMEDIATELY PRECEDING THE DAT E OF EACH BOUT.  THE REPORT OF THE MEDICAL EXAMINATION OF FIGHTER CONTAINING THE RESULTS OF THE EXAMINATION AND TESTS SHALL BE DELIVE  RED TO ZUFFA NO LESS THAN TWENTY-ONE (21) DAYS PRIOR TO ANY BOUT AND MUST NOT CONTAIN ANY RESTRICTIONS ON FIGHTER'S ABILITY TO COMPETE.   ALL COSTS ASSOCIATED WITH THE MEDICAL EXAMINATION AND TESTS SHALL BE PAID BY FIGHTER.

**IN WITNESS WHEREOF** , the parties have executed this Agreement as of the dates set forth below, the later of which shall be the Effective Date of this Agreement.

**ZUFFA, LLC**

Signature: _____

**FIGHTER**

Signature: _____

Printed Name: Dana White _____

Title: _____President_____

Date: _____

Printed Name:  Urijah Faber _____

Date: _____08/26/15_____

Faber Ventures, Inc.;

Signature: _____

_____Urijah Faber_____
Print Name

_____President_____
Title

Tax ID No. _____

Date: _____08/26/15_____

APPROVED BY:

Signature: _____
Kirk D. Hendrick
Chief Legal Officer

25

ZFL-0393692

**EXHIBIT A**

**UFC Fighter Conduct Policy**

As provided in the Promotional and Ancillary Rights Agreement entered into between each UFC fighter and Zuffa, LLC ("Zuffa" or "UFC"),

> fighters shall conduct themselves in accordance with commonly accepted standards of decency, social conventions and morals, and fighters will not commit any act or become involved in any situation or occurrence or make any statement which will reflect negatively upon or bring disrepute, contempt, scandal, ridicule, or disdain to the fighter or the UFC.

This contractual provision reflects the UFC's broad requirement that its contracted fighters act in a legal, ethical, and responsible manner and avoid conduct detrimental to the integrity of the UFC organization.

The following Conduct Policy ("Policy") details the standards of conduct each fighter is required to meet and the process by which misconduct may result in disciplinary measures.

**Standards of Conduct:**

This Policy applies to all fighters under contract with UFC or its affiliate organizations.

As the UFC's highest profile independent contractors and as ambassadors of the sport of mixed martial arts, UFC fighters are held to a high standard by the UFC, the media and the public. Responsible conduct advances the interests of the sport and the fighters. Conversely, irresponsible conduct by a fighter tarnishes the reputation of both the affected fighter and the UFC and undermines the positive image set by other fighters.

While criminal activity by a UFC fighter is clearly detrimental to the reputation of the UFC and therefore subjects the fighter to discipline, other conduct can also result in disciplinary action.

Discipline may be imposed for misconduct, which includes without limitation, the following examples:

- Criminal offenses including, but not limited to, those involving: the use or threat of violence; domestic violence and other forms of partner abuse; theft and other property crimes; sex offenses; obstruction or resisting arrest; disorderly conduct; fraud; racketeering; and money laundering;

- Criminal offenses relating to performance-enhancing and prohibited substances, or substance abuse;

- Unlawful possession of a gun or other weapon;

- Conduct, including but not limited to assault, stalking, bullying or domestic violence, that imposes inherent danger to the safety or wellbeing of another person;

- Violent, threatening or harassing behavior;

- Derogatory or offensive conduct, including without limitation insulting language, symbols, or actions about a person's ethnic background, heritage, color, race, national origin, age, religion, disability, gender or sexual orientation;

26

ZFL-0393693

- Inappropriate physical, verbal, and online behavior (such as inappropriate statements made via e-mail, text messaging or social networks);

- Conduct that undermines or puts at risk the organization or promotion of a UFC event,  including without limitation, failure to deliver, engage in or otherwise execute any and all promotional responsibilities, or failure to return in a timely manner the accurate and complete documents or information for immigration, licensing, medical, tax or athletic commission purposes;

- Failure to adhere to the UFC Athlete Outfitting Policy; and

- Conduct that undermines or puts at risk the integrity and reputation of the UFC and its partners.

**Disciplinary Process:**

Upon discovery of potential fighter misconduct, which may include allegations, arrest, or other formal or informal charges of misconduct, UFC will direct an investigation, which may include interviews and information-gathering from medical experts, law enforcement officers and other relevant professionals. In the case of potential fighter misconduct relating to violent conduct or domestic violence, the fighter may be referred to a third party for a required evaluation.  As appropriate, the affected fighter and/or his/her designee will also have the opportunity to provide information on the conduct at issue. Upon conclusion of the investigation, UFC will have full authority to impose disciplinary measures on the fighter as warranted in its sole discretion.

Discipline may take the form of fines, suspension, and cessation of service and may include conditions to be satisfied prior to the resolution of the incident. Such discipline may also include suspension for a short period, suspension until resolution of legal charges, or termination of contract.

Determination of the appropriate discipline for an incident will be based on the nature of the misconduct and other relevant factors.

Immediate disciplinary measures may be imposed, provided that following a full investigation of the incident, UFC may review the measures and make appropriate adjustments. Unless the incident involves significant harm, a first offense will generally not result in immediate disciplinary measure until an investigation has been completed.

Previous violations of this Policy may be taken into consideration in making disciplinary determinations and may result in immediate disciplinary action. Misconduct occurring prior to a fighter's provision of service to UFC may also be considered.

**Appeal Process:**

**Notice**: Following the imposition of disciplinary measures by UFC, the affected fighter shall have the option to appeal the determination solely through binding arbitration ("Arbitration") administered by JAMS.

In order to file an appeal, a fighter must complete both of the following two steps **within thirty (30) calendar days following the disciplinary determination**:

(i) notify the UFC Legal Department (via the contact information in the Contact Information section below); and

(ii) file a Demand for Arbitration with JAMS.

**Appeal**: The Arbitration will be conducted in accordance with the JAMS Comprehensive Arbitration Rules & Procedures effective as of the commencement of the Arbitration ("Rules"). The language of the

27

CONFIDENTIAL

ZFL-0393694

Arbitration will be English. The Arbitration will be governed and determined by the laws of the State of Nevada without regard to conflict of laws principles. The Arbitration will be resolved by a single arbitrator appointed in accordance with the Rules ("Arbitrator"). The Arbitration will be held in Las Vegas, Nevada at a location selected by the Arbitrator. The Arbitration proceedings and the resolution thereof will be completely confidential, subject only to such disclosures as required by law. The Arbitration will be the sole and exclusive venue of appeal with respect to the subject matter of the arbitrated dispute.

**Evaluation, Counseling and Treatment:**

Fighters who engage in misconduct, including domestic violence, may be required to undergo clinical evaluation. Based on the results of such evaluation, participation in an education program, counseling or other treatment as recommended by a health professional may be required. While evaluation and treatment are not considered disciplinary measures, failure to comply with an evaluation and treatment process may constitute a separate basis for discipline.

**Voluntary Evaluation, Counseling and Treatment Assistance:**

Fighters are encouraged to consult with the UFC Legal Department via the contact information (in the Contact Information section) below to obtain access to education, counseling, treatment, programs and resources that may assist in preventing misconduct.

**Reporting of Incidents:**

UFC must be notified immediately of any incident that constitutes fighter misconduct by contacting the UFC Legal Department (via the contact information in the Contact Information below). Failure to report an incident will constitute conduct detrimental to the integrity of the UFC and will be taken into consideration in making disciplinary determination under this Policy.

**Contact Information:**

Please contact Tracy Long of the UFC Legal Department **via email at tlong@ufc.com or telephone at (702) 588-5509** regarding this Policy, including without limitation, to report an incident, seek voluntary treatment or appeal a disciplinary determination.

28

ZFL-0393695