# EXHIBIT 84

## -

# REDACTED VERSION OF ECF NO. 540-112

# EXHIBIT 108

## Promotional and Ancillary Rights Agreement between Zuffa and Phillip Brooks

**PROMOTIONAL AND**
**ANCILLARY RIGHTS AGREEMENT**

**THIS PROMOTIONAL AND ANCILLARY RIGHTS AGREEMENT** (the "**Agreement**") is made as of the date of the last signature set forth below(the "**Effective Date**") by and between **ZUFFA, LLC,** a Nevada limited liability company d/b/a Ultimate Fighting Championship® with offices at 2960 W. Sahara Avenue, Las Vegas, NV 89102 ("**ZUFFA**") and Phillip Brooks ("**Fighter**").

RECITALS

A.      ZUFFA is in the business of, among other things, promoting mixed martial arts fighting competitions throughout the world under the trade name of Ultimate Fighting Championship® ("**UFC**") and desires to serve as the promoter for Fighter's future bouts for a period of time, provided that Fighter grants to ZUFFA certain promotional rights and ancillary rights, with such ancillary rights being granted to ZUFFA in perpetuity, as set forth herein; and

B.      Fighter is a professional mixed martial arts fighter and desires to obtain the promotional services of ZUFFA for Fighter's future bouts for a period of time, and Fighter is willing to grant to ZUFFA certain promotional rights and ancillary rights, with such ancillary rights being granted to ZUFFA in perpetuity, as set forth herein.

**NOW, THEREFORE,** in consideration of the foregoing, the agreements and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, ZUFFA and Fighter agree as follows:

ARTICLE I
GRANT OF PROMOTIONAL RIGHTS

1.      The Fighter hereby grants to ZUFFA the exclusive unrestricted worldwide right to secure, promote, arrange and present any and all mixed martial arts contests (individually, a "**Bout**" and collectively, the "**Bouts**") to be engaged in by Fighter during the Term (as defined herein) and any Extension Term (as defined herein), including all rights to stage each Bout and to sell tickets of admission thereto (the "**Promotional Rights**") and to exploit the Ancillary Rights (as defined herein) to each Bout in all media, now known or hereafter devised throughout the world in perpetuity.

ARTICLE II
GRANT OF ANCILLARY RIGHTS

2.1      Fighter hereby grants to ZUFFA the exclusive worldwide right to use, display, disseminate, edit, reproduce, print, publish and make any other use of the approved name and sobriquet ("CM Punk" pre-approved), image, likeness, voice, persona, signature, and approved biographical material of Fighter (collectively, the "**Identity**"), in any medium solely in connection with advertising, marketing, exploiting and promoting the UFC brand in connection with mixed martial arts bouts and each Bout and the exploitation of all rights pertaining thereto as provided herein and all rights to each Bout electronic and in any other format (the "**Ancillary Rights**" and, collectively with the Promotional Rights, the "**Rights**"). For clarity, all rights not specifically granted to ZUFFA hereunder are reserved to Fighter, and nothing herein shall restrict Fighter's use of his Identity other than in connection with the rights granted to ZUFFA herein. Additionally, Fighter will use his reasonable efforts to secure necessary releases from any of Fighter's Affiliates (as defined below). For avoidance of doubt, and notwithstanding the foregoing or anything else herein, the parties acknowledge that they are entering into a separate Merchandise Rights

Agreement which shall govern and control the grant and usage of all rights related to Fighter's Identity in conjunction with Licensed Merchandise as defined in the Merchandise Rights Agreement. Additionally, the Merchandise Rights Agreement shall apply to any event specific merchandise (e.g. UFC XXX t-shirts, posters, etc.) sold more than six (6) months following the applicable Bout.

2.2     The Promotional Rights and Ancillary Rights shall be the sole property of ZUFFA throughout the world, which property ZUFFA shall hold free and clear from any and all claims of Fighter or anyone claiming through Fighter. For the avoidance of doubt, ZUFFA shall hold the Ancillary Rights described herein in perpetuity, which rights shall survive even the death of the Fighter.

2.3     The Rights include the following:

        a.      The right to receive and retain all site fees, live-gate ticket and other revenues, subscription revenues, advertising fees, sponsorship fees, and the like in connection with the Bouts.

        b.      The right to exploit the Rights in all media, including, but not limited to, motion picture, radio, television (which term whenever referred to herein shall include, without limitation, live or delayed, interactive, home or theater, over-the-air broadcast, pay, pay-per-view, satellite, closed circuit, cable, subscription, Video On Demand, Near Video On Demand, Subscription Video On Demand, multi-point, master antenna, or other), telephone, wireless, computer, CD-ROM, DVD, any and all Internet applications (including, without limitation, netcasting, podcasting, direct download, streamed webcasting, internet channels (*e.g.*, Youtube) or any other form of digital media download or web syndication), films and tapes for exhibition in any and all media and all gauges, including but not limited to video and audio cassettes and disks, home video and computer games, arcade video games, hand-held versions of video games, video slot machines, fantasy sports games and activities, photographs (including raw footage, out-takes and negatives), merchandising and program rights, based upon the UFC brand in MMA, the Bouts or activities pertaining to the Bouts, including but not limited to, training, interviews, press conferences, weigh-ins and approved behind-the-scenes footage for the Bouts (the **"Pre-Bout Events"**), post-fight interviews and press conferences (the **"Post-Bout Events"**) and any parts thereof on a commercial, sustaining, theatrical or other basis, and by any and all means, methods and devices whatsoever, now existing or hereafter devised.

        c.      The right, subject to Fighter's rights hereunder, to sell, assign, lease, license, sublease, use or otherwise dispose of any and all of the Rights and the results of the exercise thereof, and to authorize, license and grant the right to exercise any of the Rights and to retain the proceeds therefrom; provided, however, that any such sale, assignment, lease, license, sublease, use or other disposal shall be subject to Fighter's rights hereunder and shall not relieve ZUFFA of its rights, duties and obligations hereunder, except in the event ZUFFA sells all or substantially all of its assets.

        d.      The right to take lawfully permitted acts reasonably necessary for the full and complete use, exploitation and exercise of the Rights, including the right to promote and exploit all rights granted hereunder and receive and retain the results of the exercise thereof, and the right to negotiate, enter into and perform any and all agreements relating to the Rights for the proper production and promotion of radio and television advertisements, publicity, and broadcasts relating to the UFC brand (as it related to MMA), the Bouts, the Pre-Bout Events and the Post-Bout Events.

        e.      All right, title and interest in and to any and all recordings, including without limitation, television, radio, Internet, wireless and motion picture films, and the video and audio cassettes of, or based upon the UFC brand (as it relates to MMA), the Bouts, the Pre-Bout Events and the Post-Bout Events, and the right to secure in the name of ZUFFA (or that of its nominee) copyright and other protection to the fullest extent available in the United States and all other countries of the world where such protection is available. The right to use, edit, disseminate, display, reproduce, print or publish in any

media the Identity of Fighter for the purpose of advertising, promotion, publicity, merchandising and exploitation of the UFC brand (as it related to MMA), the Bouts, the Pre-Bout Events and Post-Bout Events, including the use of the Identity of Fighter (as included in a video clip or an action still or promotional photo that was captured during the Term) to advertise any commercial product or service of a ZUFFA sponsor or any network, station or other exhibitor, for which activities Fighter hereby waives his personal right of privacy; provided, that notwithstanding anything herein, ZUFFA shall not authorize or permit the Identity of Fighter to be used as a direct or implied endorsement of any product, service, sponsor or commodity.

        f.      The non-exclusive right   to use, edit, disseminate, display, reproduce, print, publish and make any other approved uses of the Identity of Fighter (as included in a video clip or an action still or promotional photo that was captured during the Term) solely in connection with the development, manufacturing, distribution, marketing or sale of any and all interactive devices, home video and computer games, arcade video games, hand held versions of video games, video slot machines, CD-ROMS, DVDs, Internet applications, wireless, video and audio cassettes and disks, apparel (such as t-shirts, hats and jackets), banners, buttons, posters, jewelry, photographs, souvenirs, programs, toys, merchandising tie-ups and advertisements, and any and all other similar type products, including the sleeves, jackets and packaging for such products, hereunder made by any method now known or hereafter devised.

        g.      The non-exclusive right to use a three minute excerpt clip of the recording of any bout, including, if Fighter consents, any non-ZUFFA/UFC bout in which Fighter was a participant (to the extent that Fighter possesses the rights thereto or can reasonably obtain such rights and to the extent that Fighter reasonably can deliver a copy of such clip to ZUFFA), all of the foregoing solely for the purpose of publicizing a Bout. For clarity, ZUFFA shall be solely responsible for any clearance costs in connection with any such clip.

        h.      To the extent Fighter owns or controls, in whole or in part, the copyrights and other right, title and interest in and to any tattoos etched or otherwise displayed on the body of Fighter (the "Tattoo Rights"), the irrevocable, perpetual non-exclusive, assignable and sub-licensable right and license throughout the world, to use, publish, reproduce, distribute, display and exhibit such tattoos in any manner and on or through any media in those territories in which Fighter owns the Tattoo Rights, and solely in connection with ZUFFA's exercise of any of its other Rights hereunder. For the avoidance of doubt, Fighter does not make any representation or warranty as to the ownership of any of the Tattoo Rights; and as a result ZUFFA and/or its licensees may alter or delete any of Fighter's tattoos that cannot reasonably be cleared for use by ZUFFA hereunder.

        2.4.      To the extent that Fighter is deemed to have, retain or otherwise possess any right, title or interest in or to all or any portion of the UFC brand, any Bouts, any Pre-Bout Events or Post-Bout Events, or any works created or produced pursuant to or in connection with this Agreement (collectively, the **"ZUFFA IP"**), then for the consideration set forth herein, Fighter hereby transfers, conveys and assigns same to ZUFFA and shall execute all documents consistent herewith reasonably necessary to effect the clarification of ownership of all right, title and interest in and to such ZUFFA IP to ZUFFA and to allow ZUFFA to apply for and maintain any copyright and trademark registrations and other intellectual property registrations or issuances with respect to the ZUFFA IP and any renewals or extensions thereof, Fighter hereby irrevocably designates and appoints ZUFFA and ZUFFA's employees, agents, representatives, affiliates, licensees, designees, successors and assigns (**"ZUFFA's Representatives"**) as Fighter's limited attorney-in-fact to act for and on Fighter's behalf and to execute and file all such documents consistent herewith (that ZUFFA is unable after reasonable efforts to obtain Fighter's signature on). For purposes of clarity, it is understood that Fighter is licensing, rather than transferring, to ZUFFA, the use of Fighter's trademarked name, on the terms and conditions set forth elsewhere in this Agreement.

ZFL-0039045

2.5        Fighter waives, discharges and releases ZUFFA and ZUFFA's Representatives from any and all claims: (i) of infringement of any right of Fighter in, to or respecting the ZUFFA IP and (ii) provided that ZUFFA is not in breach hereunder, arising from ZUFFA or ZUFFA's Representatives' use of the Identity of Fighter or another exploitation of the Rights as permitted hereunder (including, without limitation, any claims based on Fighter's moral rights in the ZUFFA IP or for inspection, approval, damages for libel, intellectual property infringement or violation of Fighter's rights of privacy or publicity).

2.6        Except as provided herein, Fighter acknowledges and agrees that Fighter shall have no right of approval or consultation with respect ZUFFA's exercise of any Rights granted or assigned to it hereunder and nothing in this Agreement shall obligate ZUFFA to exercise any of its Ancillary Rights.

2.7.        There will be no unknown, hidden cameras in Pre-Bout or Post-Bout or behind the scenes footage – i.e., Fighter must be aware that the camera is rolling.

## ARTICLE III
## PROMOTION

3.1        Each Bout shall be a mixed martial arts contest, one-on-one fight between Fighter and an opponent reasonably designated by ZUFFA in consultation with Fighter and subject to Fighter approval not to be unreasonably withheld, delayed or conditioned, conducted pursuant to the rules and regulations of the athletic commission, federation or official authority having jurisdiction over the Bout or ZUFFA pursuant to Section 3.7 (the "**Athletic Commission**"). Fighter and ZUFFA shall comply with and be bound by the rules and regulations of the Athletic Commission. For Bouts that occur in a jurisdiction or country without an Athletic Commission, the provisions of Section 3.7 shall control. In the event that Fighter does not approve of an opponent reasonably designated by ZUFFA after three good faith attempts by ZUFFA to designate an opponent appropriate for Fighter, ZUFFA may, at its election and in accordance with the terms and conditions of Section 4.3 of this Agreement, extend the Term of this Agreement for a period of three (3) months for ZUFFA to designate and for Fighter to approve another opponent.

3.2        ZUFFA shall promote and Fighter shall participate in the minimum number of Bouts set forth in Article IV below. For purposes hereof, ZUFFA shall be deemed to have complied with its obligations to promote any Bout if ZUFFA shall have made a reasonable offer to Fighter to promote a Bout in accordance with the provisions hereof and Fighter shall have unreasonably refused to participate. If a Bout is the undercard to a main event and the main event is canceled or postponed for any reason, the failure of such Bout to take place shall not be deemed non-performance by either party and ZUFFA shall not be liable for Fighter's Purse associated therewith (as defined herein).

3.3        Fighter shall reasonably cooperate and assist in the advertising, publicity, and promotion of (i) the Bouts, (ii) any and all rebroadcast of the Bouts in any media whatsoever, (iii) other UFC bouts, (iv) other UFC events and broadcasts, and (v) the sale of UFC merchandise, including making appearances at a reasonable number of press conferences, interviews and other sponsorship and promotional activities (any of which may be telecast, broadcast, recorded or filmed) at times and places reasonably designated by ZUFFA, without additional compensation therefore, provided that promotional activities not in advance of scheduled Bouts shall be subject to Fighter's availability, appearances or promotion in connection with Bouts shall not unreasonably interfere with Fighter's training and preparation for the Bout and ZUFFA will arrange and pay for Fighter's reasonable travel, hotel and meal accommodations. ZUFFA shall provide Fighter with reasonable advance notice of all such promotional requirements, and the number of Fighter's appearances unrelated to the Bouts shall not exceed ten (10) in a calendar year without Fighter's approval, nor shall any appearances materially interfere with Fighter's fight preparation.

3.4     All Bouts shall be on mutually agreed dates and at sites to be designated by ZUFFA, in its sole and absolute discretion. If any Bout is postponed for any reason except ZUFFA's non-performance, the Bout Agreement applicable to such Bout shall determine the rights of the parties. Fighter's first bout under this Agreement will be at such time as the parties mutually agree that Fighter is ready. For subsequent Bouts, ZUFFA shall provide Fighter with not less than 75 days' notice of any potential Bout.

3.5     During the Term, ZUFFA shall have the exclusive right to promote all of Fighter's bouts and Fighter shall not render his services as a professional fighter or in any other capacity to any other mixed martial art, martial art, boxing, professional wrestling, or any other fighting competition or exhibition, except as otherwise expressly permitted by this Agreement. For purposes of clarity, ZUFFA acknowledges and agrees that Fighter was previously under contract as a professional wrestler with World Wrestling Entertainment, Inc., which contract has since been terminated.

3.6     Notwithstanding the foregoing, in the event Fighter is not then a UFC champion, Fighter is permitted, subject to the prior written consent of ZUFFA, which consent may be granted or withheld in ZUFFA's sole discretion, to contract with other promoters or to engage in any mixed martial arts bout or fighting competition or exhibition promoted by other promoters (an **"Other Bout"**) during the Term provided (i) such Other Bout is not televised by any domestic or international television network, station, cable system, satellite or other provider or via Internet or wireless exhibition; (ii) such Other Bout is scheduled for and takes place on a date which is more than sixty (60) days before or more than thirty (30) days after any non-championship Bout and more than ninety (90) days before or more than thirty (30) days after any championship Bout; (iii) a copy of any agreement for any Other Bout shall have been furnished to ZUFFA at least one (1) week prior to its execution by Fighter; and (iv) a fully executed copy of any such agreement is provided to ZUFFA within five (5) days of execution by Fighter. Except in compliance with the foregoing limited exception, Fighter shall not, during the Term, grant promotional or other rights which conflict with the Rights. Furthermore, Fighter expressly agrees that this Agreement shall be automatically extended for an additional one hundred twenty (120) days for each non-UFC promoted mixed martial arts competition or exhibition that Fighter participates in, and any reference to the Term herein shall be deemed to include any such extension(s).

3.7     Any and all Bouts that occur in a jurisdiction without an Athletic Commission shall be conducted pursuant to the statutes, rules and regulations of the State of Nevada in effect at the time of the Bout, including, but not limited to, the Unified Rules of Mixed Martial Arts (the **"Nevada Rules"**); for the protection of the health and safety of the Fighter, to promote fairness in the administration of the Bout, and to preserve the integrity of the sport of mixed martial arts. Fighter may appeal any advisory opinion by ZUFFA regarding any application of the Nevada Rules relating to Bouts that occur in a jurisdiction without an official government mandated Athletic Commission to an independent third-party arbitrator or arbitration panel selected pursuant to the guidelines developed by JAMS. Regardless of where a Bout occurs, in no event shall a Fighter have any right to appeal a decision by ZUFFA relating to the UFC Title or the UFC Championship belts.

## ARTICLE IV
## TERM

4.1     The duration of the Promotional Rights provided herein (the **"Term"**) shall commence on the Effective Date and end on the earlier of (i) forty (40) months after the first bout promoted by ZUFFA involving Fighter under this Agreement; or (ii) the date on which Fighter has participated in at least eight (8) Bouts promoted by ZUFFA pursuant to this Agreement (the **"Termination Date"**), unless terminated sooner or extended further pursuant to the provisions of this Agreement.

4.2     If, at the expiration of the Term, Fighter is then a UFC champion, the Term shall automatically be extended for the period commencing on the Termination Date and ending on the earlier of

(i) one (1) year from the Termination Date; or (ii) the date on which Fighter has participated in three (3) bouts promoted by ZUFFA, regardless of weight class or title, following the Termination Date ("**Extension Term**"). Any reference to the Term herein shall be deemed to include a reference to the Extension Term, where applicable. Any compensation to Fighter during the Extension Term shall be no less than 115% of Fighter's compensation for his last Bout prior to the Extension Term.

    4.3    The length of time for ZUFFA to provide Fighter with the minimum number of Bouts enumerated in this Article IV shall be extended for any period of time that Fighter is unable or unwilling to compete (other than not approving an opponent which is addressed in Section 3.1 above and by reason of injury, which is addressed in Article IX below) and such inability or unwillingness to compete materially delays the designation of an opponent by ZUFFA or postpones a scheduled Bout. The extension shall be for the period of time it takes for ZUFFA, acting in good faith, to re-schedule the Bout or a new Bout. Such extension shall include, without limitation, any time periods when Fighter is incarcerated; suspended or revoked by an Athletic Commission; has his ability to travel restricted by a governmental agency or is otherwise unable, unwilling or refuses to compete or train for a Bout for any reason whatsoever (other than not approving of an opponent designated by ZUFFA which is addressed in Section 3.1 of this Agreement and injury or disability, which is addressed in Article IX below), and such restriction or inability delays the designation of an opponent by ZUFFA or re-scheduling of a Bout.

    4.4    The expiration or earlier termination of the Term for reasons other than a breach by ZUFFA hereunder, any Acceleration (as defined herein), or the death or incapacity of the Fighter, shall not affect or terminate the grant of the Ancillary Rights, payment obligations owing to Fighter, or any of the other general or specific provisions of this Agreement, all of which shall survive any such expiration, termination, Acceleration, death or incapacity.

    4.5    Neither party shall be deemed in default of this Agreement to the extent that performance of its obligations are delayed or prevented by reason of any act of God, fire, natural disaster, war, riots, civil unrest, strike or labor difficulties, terrorism, power failure, other calamity or acts constituting force majeure, or any governmental or Athletic Commission enactment, determination or action, regulation or order. If there is an occurrence of a force majeure event, ZUFFA may elect to suspend this Agreement for a period equal to the duration of the occurrence, and no compensation shall be paid or become due to Fighter during such suspension period. If any such force majeure event lasts for more than 4 months in the aggregate, Fighter shall have the right to terminate this Agreement. ZUFFA shall not suspend this Agreement for reasons of force majeure unless it has suspended all other similarly situated fighters for reasons of the same force majeure event.

ARTICLE V

BOUT AGREEMENT AND STANDARD FIGHTER CONTRACT

    5.    For each Bout, Fighter shall execute and comply with the terms of a Bout Agreement ("**Bout Agreement**"), which shall be either the standard fighter contract required by the applicable Athletic Commission or pursuant to the Nevada Rules, as applicable (the "**Standard Fighter Contract**"), and any other contract required to be executed by law, the terms of which shall be consistent with the terms of this Agreement. To the extent of any conflict between this Agreement and a Bout Agreement with respect to a Bout, the Bout Agreement shall control solely with respect to the terms and conditions of the Bout. For clarity, with respect to all Promotional Rights and Ancillary Rights, this agreement shall control.

ARTICLE VI

COMPENSATION

    6.1    Subject in all events to Section 10.1(d), the Compensation to Fighter shall take the form

ZFL-0039048

of a **"Fighter's Purse"** each in the amount as set forth below.

a.        Fighter's Purse for each and every Bout hereunder shall be Five Hundred Thousand (US $500,000.00), less all mutually approved or legally required deductions. For the avoidance of doubt, there shall be no win bonus.

6.2        In addition to the Fighter's Purse (and in addition to any Payments to be paid under any applicable corresponding Letter of Agreement between the Parties), for (i) Fighter's first Bout hereunder, and (ii) if and only if Fighter participates in a Bout thereafter in any instance where Fighter is defending a UFC Championship belt in a UFC event that is broadly distributed in the United States and/or Canada, or any other territory, including without limitation via the internet, so long as the rates charged in said territories, or on the internet, are comparable to those charged in the United States or Canada, on residential pay-per-view on iN DEMAND, DirecTV, Echostar, or similar pay-per-view provider as utilized by ZUFFA ("Pay-Per-View Providers"), then Fighter shall receive a pay-per-view bonus if the condition below is satisfied. If such event exceeds specified buy rates of combined sales through Pay-Per-View Providers, Fighter shall receive a Pay-Per-View Bonus as follows:

> For combined Pay-Per-View Provider buys purchased within thirty (30) days of the live event, Fighter shall receive One dollar ($1.00) for each pay-per-view buy between 200,000 buys and 400,000 buys; and Two dollars ($2.00) for each pay-per-view buy between 400,000 buys and 600,000 buys; and Two dollars and Fifty Cents ($2.50) for each pay-per-view buy over 600,000 buys.

*By way of example only, if such an applicable event were to generate 900,000 combined iN DEMAND, DirecTV, and Echostar, pay-per-view buys, Fighter would receive a pay-per-view Bonus of $1,350,000, which would represent $200,000 for applicable buys between 200,000 and 400,000 ($1.00 x 200,000 buys), $400,000 for applicable buys between 400,000 and 600,000 ($2.00 x 200,000 buys) and $750,000 for applicable buys between 600,000 and 900,000 ($2.50 x 300,000).

The above bonus shall be paid within forty-five (45) days following ZUFFA's receipt of payment from each of its Pay-Per-View Providers.

6.3        In order to verify ZUFFA's compliance with the potential pay-per-view bonus, Fighter is entitled, upon written notice of at least thirty (30) days, to review, at ZUFFA's offices, and make copies of all applicable pay-per-view reports that ZUFFA has received from all applicable sources, including without limitation, iN DEMAND, DirecTV, Echostar and Canadian pay-per-view providers. Fighter may exercise this right no more than once each calendar year, for each Bout in which he participates, for up to two (2) years after the date of the applicable Bout. Pay-per-view bonus to be paid on an ongoing monthly basis subsequent to ZUFFA's receipt of payment from the pay-per-view providers and only if the aggregate amount owed to Fighter is in excess of $500.00. Fighter agrees to treat any such review under this section as confidential and agree not to disclose any information reviewed hereunder except as required by law or pursuant to a valid Court order, to his attorneys, accountants or other representatives and/or to enforce the terms hereof, agrees to promptly return any and all copies provided hereunder. Additionally, Fighter agrees that in the event and to the extent iN DEMAND, DirecTV, Echostar and/or Canadian providers adjust the pay-per-view buys for any of Fighter's bouts retroactively which results in Fighter having been paid a higher bonus than he was due hereunder, ZUFFA shall have the right to deduct any overpayment adjustments from future payments to Fighter hereunder.

6.4        ZUFFA shall pay Fighter's Purse within twenty-four (24) hours of the completion of each Bout, except that if Fighter tests positive for any Controlled Substance (defined below) in a post-fight drug test, payment will be subject to the authority of and ZUFFA shall make payments only in accordance with the final determination of the applicable Athletic Commission, subject to Fighter's rights of appeal.

ZFL-0039049

ZUFFA may deduct or withhold from compensation any applicable tax (whether domestic or foreign), fee, or sum required or permitted to be deducted or withheld by law.

6.5     The Fighter's Purse and, if applicable, pay-per-view bonus, together with the Incidentals (defined below) and any video game bonus(es) shall be the sole compensation due to or claimed by Fighter on account of this Agreement, the Rights, and Fighter's participation in any Bout or any activity related thereto.   For the avoidance of doubt, the parties acknowledge that a separate Merchandise Rights Agreement is being entered into to address all compensation for merchandising and related rights.

6.6     Any and all potential Fighter's Purses and, if applicable, pay-per-view bonuses, capable of being earned during the Extension Term, if applicable, shall be negotiated in good faith between the parties. However, the parties expressly agree that such potential amounts are quantifiable and definite terms to this Agreement because each such Fighter's Purse shall, at a minimum, be no less than 115% of the last Fighter's Purse received by Fighter during the standard Term of this Agreement.

6.7     Any advances shall be made in the sole discretion of ZUFFA, and may be subject to the prior approval of the Athletic Commission.

6.8     Fighter shall operate within the requirements of all tax laws and regulations, and interpretations thereof, and be solely responsible for reporting the entire compensation paid under this Agreement and any corresponding agreements and ensure timely settlement of all taxes and other similar deductions. ZUFFA shall provide Fighter with a Form 1099 within ninety (90) days following the close of its fiscal year.

## ARTICLE VII
### INCIDENTALS

7.1     In addition to the Fighter's Purse, as provided for above, Fighter shall be entitled to the transportation, lodging, meals or meal allowances, and Bout tickets (collectively, the **"Incidentals"**) identified in the Bout Agreement. Such Incidentals shall not be less than ZUFFA's standard highest level of incidentals (currently identified as "championship incidentals"), and such Incidentals are more fully set forth below.

a.     For each Bout hereunder which Fighter participates in, ZUFFA shall provide a total of two (2) hotel or motel rooms and three (3) round-trip economy class airline tickets from the airport servicing Fighter's hometown to the site of the Bout for use by and transportation of Fighter and two (2) of Fighter's Affiliates (the **"Fighter's Affiliates"**). Fighter's Affiliates shall include, but not be limited to, his manager, agent, trainer, seconds, sparring partners and other persons that Fighter personally brings to the Bouts as part of his official entourage or crew (i.e., such persons accompany the Fighter).

b.     For all Bouts hereunder, Fighter shall arrive and check in to the lodging provided by ZUFFA on the date specified in the Bout Agreement, which shall be any time up to eight (8) days prior to the date of the Bout (the **"Training Commencement Date"**), and shall check-out and depart from the lodging provided prior to the designated check-out time on the day after the Bout (the **"Departure Date"**).

c.     From the Training Commencement Date through the Departure Date, Fighter shall be provided with One Hundred Dollars (US $100.00) cash *per diem* and two (2) of Fighter's Affiliates shall each be provided with Fifty Dollars (US $50.00) cash *per diem* for meals

d.     Lodging shall be provided only from the Training Commencement Date through the Departure Date. Fighter and Fighter's Affiliates shall be required to present a valid credit card upon

CONFIDENTIAL

registering at the hotel or motel, which card shall be charged for any and all expenses and damages beyond the cost of the room, and ZUFFA shall have no obligation for such additional expenses.  Fighter shall also be provided with four (4) tickets to each Bout hereunder, the selection and location of which shall be determined by ZUFFA. If Fighter's Bout is the main event, Fighter shall receive tickets for seats located within ten (10) rows of the Octagon.

7.2      No other benefits, charges, expenses, or other incidentals of any kind (*e.g.*, telephone charges, beverages, entertainment, gift shop items or other such benefits, charges and expenses) shall be provided by ZUFFA to Fighter or anyone associated with Fighter, and Fighter shall not be entitled to receive compensation in lieu of any unused or undesired Incidental.

## ARTICLE VIII
## FIGHTER'S CONDUCT

8.1      As set forth in more detail in the UFC Fighter Conduct Policy, which is attached to this Agreement as Exhibit A, Fighter shall conduct himself in accordance with commonly accepted standards of decency, social conventions and morals, and Fighter will not commit any act or become involved in any situation or occurrence or make any statement which will reflect negatively upon or bring disrepute, contempt, scandal, ridicule, or disdain to Fighter, the Identity of Fighter, ZUFFA or any of its officers, managers, members, employees, or agents. Fighter's conduct shall not be such as to shock, insult or offend the public or any organized group therein, or reflect unfavorably upon any current or proposed arena, site hotel, sponsor or such sponsor's advertising agency, or any network or station over which a Bout is to be broadcast. In addition, Fighter agrees that during a Bout, or while training for a Bout, as well as during any Pre-Bout Events or Post-Bout Events, neither Fighter nor any of his managers, trainers and assistants shall wear any clothing or ornamentation, including, but not limited to, permanent or temporary tattoos or body art, that is lewd, obscene, offensive, defamatory, discriminatory on the basis of age, sex, race, color, creed, national origin, political belief, religious belief or sexual orientation or otherwise inappropriate as determined by ZUFFA in its reasonable discretion or which conflicts with a ZUFFA sponsor, the arena or telecaster as notified by ZUFFA to Fighter sufficiently in advance.  ZUFFA acknowledges that to its knowledge, none of Fighter's current permanent tattoos are in breach of any provision hereof and if at any time ZUFFA objects to any tattoos, clothing or ornamentation worn by or appearing on Fighter or any of Fighter's Affiliates in potential breach of this provision (or elsewhere in this Agreement), ZUFFA shall request that such clothing be replaced or the offensive portion of such clothing or tattoo be covered so as not to be visible to the viewing public, and Fighter or any of Fighter's Affiliates, shall promptly comply with ZUFFA's request.  The UFC Fighter Conduct Policy and this Article VIII shall be consistently applied to all fighters.

8.2      Fighter shall maintain a high standard of sportsmanship and conduct himself in a professional manner prior to, during, and following each Bout.  Additionally, for any Fighter's Affiliates that Fighter chooses to bring to a UFC event, Fighter shall take reasonable measures to ensure that such Affiliates likewise maintain a high standard of sportsmanship and conduct.

8.3  Fighter shall not authorize or knowingly be involved with any advertising material or publicity materials that contain language or material which to Fighter's knowledge is generally considered to be obscene, libelous, slanderous or defamatory and to Fighter's knowledge violates or infringes upon, or give rise to any adverse claims with respect to, any common-law or other right whatsoever (including, but not limited to, any copyright, trademark, service mark, literary, dramatic, music or motion picture right, right of privacy or publicity, contract or moral rights of authors) of any person or entity.

8.4      Fighter shall maintain his eligibility and keep in good standing any license required to participate in any Bout to Fighter's knowledge.

8.5      Fighter shall not use any controlled or banned substance (as such substances are defined in

the WADA Code) (each a "**Controlled Substance**"). Fighter agrees that an Athletic Commission may test Fighter for Controlled Substances, and Fighter agrees to submit to any random, pre-Bout or post-Bout drug test as requested by an Athletic Commission. Fighter shall be deemed to be in breach of this Section if Fighter (i) refuses to take any random, pre-Bout or post-Bout drug test or (ii) tests positive for any Controlled Substance in any random, pre-Bout or post-Bout drug test.

8.6    Fighter acknowledges that an Athletic Commission may fine, suspend or impose other penalties, including but not limited to removing recognition from Fighter of any Championship title, status or belt if Fighter tests positive for a Controlled Substance.

## ARTICLE IX
## INJURY OR RETIREMENT

9.1    Notwithstanding anything herein, Fighter shall not be required to perform in a Bout and shall not be in breach hereunder if he has an injury or other medical disability. If at any time during the Term, ZUFFA offers to promote a Bout for Fighter and Fighter refuses to participate in or attempts to cancel or postpone such Bout for reason of a claimed injury or other medical disability, ZUFFA shall have the right, but not the obligation, to have Fighter examined by a medical doctor of its choice at ZUFFA's expense and with Fighter's own doctor present, and, if ZUFFA so elects, Fighter shall appear for such examination on one (1) day's reasonable notice (at Fighter's location).

9.2    If at any time during the Term, Fighter claims to be injured or temporarily disabled for a period in excess of three (3) months, and/or that interferes with ZUFFA's ability to schedule a Bout with Fighter, ZUFFA may, at its election, for each such injury or disability claimed by Fighter, (i) extend the Term for the period of such injury or disability or for the period of four (4) months, whichever is longer; or (ii) provide Fighter with notice of an Acceleration as defined herein if Fighter does not agree to schedule a Bout.

9.3    If at any time during the Term, Fighter decides to retire from mixed martial arts or other professional fighting competition or in the reasonable judgment of a medical professional is permanently disabled, then ZUFFA may, at its election, (i) suspend the Term for the period of such retirement or disability; (ii) declare that ZUFFA has satisfied its obligation to promote all future Bouts to be promoted by ZUFFA hereunder, without any compensation due to Fighter therefor and Fighter has fulfilled all of his obligations hereunder; or (iii) elect to provide Fighter with notice of an Acceleration.

## ARTICLE X
## TERMINATION/REMEDIES

10.1    ZUFFA shall have the right, but not the obligation, upon notice to Fighter, to accelerate the Term and thereby terminate ZUFFA'S promotional and both parties' future obligations hereunder and under any Bout Agreement then in effect (an "**Acceleration**") and to terminate Fighter's participation in any Bout, with Acceleration effective as of the date of notice, and to withdraw recognition from Fighter of any Championship Title, Status and Belt, if:

a.    Fighter fails, for any reason whatsoever (other than the injury or physical disability of Fighter or any act of God as provided in Section 4.5 or by reason of ZUFFA not offering a sufficient number of reasonable Bouts) to engage in the minimum number of Bouts as offered by ZUFFA;

b.    Fighter materially breaches (subject to the cure right set forth below) or is in material uncured default of any provision of this Agreement;

c.    any of the representations or warranties of Fighter contained herein were false

when made;  Fighter is not declared the winner of any mixed martial arts bout (whether promoted by ZUFFA or not) by the Athletic Commission or official authority having jurisdiction over the bout; or

        d.       Fighter's license to participate in bouts is suspended or revoked by an Athletic Commission.

        e.       Fighter is unable to obtain the necessary documentation, including any work visas, to lawfully permit Fighter or Fighter's Affiliates to participate in any Bout as provided for in Section 23.2 of this Agreement.

        f.       Fighter pleads guilty, or nolo contendere, or is convicted of any violent crime, or any crime of moral turpitude, or any felony, or fighter is charged with any violent crime, or crime of moral turpitude, or felony,  and an independent third-party investigation has substantiated the charging allegations.

        h.       Fighter should commit any wrongful act which would permit any arena, event site or television broadcaster, distributor or exhibitor to cancel its contract with ZUFFA for a particular Bout in which Fighter was to participate.

    10.2     Acceleration shall be without further liability or obligation from ZUFFA to Fighter, except for the payment of any Fighter's Purse and all other amounts due for Bouts that have been completed prior to Acceleration or otherwise due hereunder.

    10.3     Acceleration shall not serve to affect or terminate any of the Ancillary Rights, and this Agreement shall remain in full force and effect with respect to the Ancillary Rights provided that ZUFFA is not in breach hereunder. ZUFFA's failure to accelerate in any particular case shall not constitute a waiver for future such cases.

    10.4     Fighter acknowledges that his services as a professional fighter and the Ancillary Rights granted to ZUFFA herein are special, unique, extraordinary, irreplaceable and of peculiar value, and that in the event of Fighter's material breach or threatened material breach of this Agreement or any Bout Agreement, ZUFFA might suffer irreparable damage which may not be reasonably or adequately compensated by an award of damages. In the event of such material breach or threatened material breach, ZUFFA shall be entitled, in addition to any other available remedy, to seek equitable relief, including, but not limited to, an injunction against such breach and Fighter waives the right to assert as a defense in any such action that ZUFFA has an adequate remedy at law.

    10.5     If Fighter believes in good faith that ZUFFA has materially breached any provision of this Agreement, or any corresponding Letter of Agreement between the Parties, or has unreasonably failed or refused to perform its obligations hereunder, Fighter shall provide ZUFFA with detailed written notice of such alleged breach and to the extent such alleged breach is curable and sufficient time exists, Fighter shall provide ZUFFA with at least five (5) business days to cure such alleged breach(reducible to a reasonably immediate amount of time to cure if 5 business days are not available; by way of example, if an event is 24 hours away, ZUFFA must cure the alleged breach in an immediate manner).. If ZUFFA fails to cure the alleged material breach within five (5) business days (or other reduced time as described above) of receipt of Fighter's written notice, then and only then may Fighter seek to terminate this Agreement and seek redress for any outstanding compensation and any other amounts owed to Fighter hereunder or in connection herewith. In no event shall Fighter be entitled to punitive damages or be entitled to any injunctive relief.

    10.6     If ZUFFA believes in good faith that Fighter has materially breached any provision of this Agreement, or has unreasonably failed or refused to perform its obligations hereunder or that any event set

CONFIDENTIAL

forth in Section 10.1 has occurred, ZUFFA shall provide Fighter with detailed written notice of such alleged breach and to the extent such alleged breach is curable , ZUFFA shall provide Fighter with at least five (5) business days to cure such alleged breach (reducible to a reasonably immediate amount of time to cure if 5 business days are not available; by way of example, if an event is 24 hours away, ZUFFA must cure the alleged breach in an immediate manner). If Fighter fails to cure the alleged material breach within five (5) business days (or other reduced time as described above) of receipt of ZUFFA's written notice, then and only then may ZUFFA seek to terminate this Agreement.    In no event shall ZUFFA be entitled to any punitive damages.

ARTICLE XI
INSURANCE

11.1    ZUFFA will provide health and accidental death insurance as required by the applicable Athletic Commission, and if greater on a "most favored nations" basis with any coverage provided to any other fighter. Fighter hereby acknowledges that professional unarmed combat has the significant potential for serious injuries, and Fighter is knowingly and voluntarily assuming all such risks. Accordingly, except for the insurance benefits being provided by ZUFFA as described in this Article 11, Fighter, for himself, his heirs, assigns, executors, and administrators agrees to be solely liable for and will bear the full and complete cost of any and all medical treatment or disability and all other costs associated with any injuries resulting from any and all Fighter's services under this agreement other than injuries resulting from the willful acts, recklessness or gross negligence of ZUFFA, any of its employees, agents, contractors (excluding any independent contractor athletes) or representatives or any persons or entities controlling or operating the venue at which any Bout, Pre-Bout Events or Post-Bout Events take place.  Furthermore, Fighter assumes all risks of injuries sustained outside of a Bout, except in connection with events mandated, authorized or supervised by ZUFFA hereunder, which shall not be construed to include any of Fighter's preparation or training for any Bouts.

11.2    ZUFFA shall have the right, at its election, to obtain, at ZUFFA's cost and expense, life or other insurance upon Fighter, including, but not limited to, insurance against the failure of Fighter to appear and to participate in any Bout and insurance to cover injuries sustained by Fighter in training and preparation for a Bout, in such amounts or type of coverage as ZUFFA may determine, and, if applicable, for the benefit of ZUFFA. Except as expressly consented to in writing by ZUFFA, neither Fighter nor any of Fighter's Affiliates shall have any right, title or interest in such insurance. Fighter shall, at the request of ZUFFA, cooperate with and assist ZUFFA or its agent (as reasonably directed by ZUFFA), in obtaining and maintaining any such coverage, including submitting to customary physical or other examinations of Fighter (with Fighter's own doctor present) and subject to all applicable privacy laws or regulations, furnishing such information and medical records as may be reasonably required by any existing or proposed insurer and executing any and all additional customary and reasonable documents or instruments consistent herewith necessary for ZUFFA to obtain any such insurance contemplated by this Section 11.2.

ARTICLE XII
RIGHT OF FIRST NEGOTIATION AND RIGHT TO MATCH

12.1    Fighter agrees to negotiate exclusively with ZUFFA regarding the extension or renewal of the Term for a period of sixty (60) days following the expiration of the Term ("**Exclusive Negotiation Period**"). If ZUFFA and Fighter fail to reach agreement upon the terms and conditions of an extension of the Term, within the Exclusive Negotiation Period, Fighter may negotiate with any other promotional entity, subject to ZUFFA's right to match the terms of any agreement offered to Fighter by such other promotional entity (each, an "**Offer**") prior to the acceptance of the Offer by Fighter, as set forth below.

CONFIDENTIAL

12.2 ZUFFA shall have the option to match the financial terms and conditions for one (1) year following the expiration of the Exclusive Negotiation Period (the **"Matching Period"**). ZUFFA shall have the option to match the financial terms and conditions of any offer made to Fighter for any mixed martial arts bout or fighting competition or exhibition, or any series of mixed martial arts bouts or fighting competitions or exhibitions. Fighter shall not accept any offer or enter into a contract or agreement with any other promotional entity during the Matching Period without complying with this Section 12.2. Prior to acceptance of any Offer made during the Matching Period, Fighter shall first deliver to ZUFFA a written notice of all material financial terms and conditions of the offer, including, but not limited to, the identity of the promotional entity making the offer. Such notice shall constitute an exclusive, irrevocable offer (the **"Fighter Offer"**) to contract with ZUFFA on the same financial terms and conditions. ZUFFA shall have ten (10) business days following receipt of the Fighter Offer in which to accept the financial terms of the Fighter Offer. If ZUFFA does not accept the Fighter Offer, Fighter may then accept the offer without modification during the three (3) month period following expiration of the Fighter Offer (the **"Contract Period"**). If any of the financial terms of the offer are decreased, such modification shall give rise to another Fighter Offer on such modified terms and conditions and ZUFFA shall have the option to match the terms of the offer, as modified in accordance with the terms and conditions of this Section 12.2. If Fighter has not contracted with a third party on or before the conclusion of the Contract Period, then all rights granted to ZUFFA pursuant to this Section 12.2 shall be automatically reinstated.

ARTICLE XIII

REPRESENTATIONS AND WARRANTIES

13.1. Fighter represents and warrants to ZUFFA that:

    a.    Fighter shall compete to the best of Fighter's ability in the Bout;

    b.    Fighter is free to enter into this Agreement and has not heretofore and will not hereafter enter into any contract, option, agreement or understanding, whether oral or written, which conflicts with the provisions hereof or the grant of Rights contained herein or which will interfere with Fighter's full and complete performance hereunder or the free and unimpaired exercise by ZUFFA of any of the Rights;

    c.    There are no claims or arbitration, mediation, or litigation pending or to Fighter's knowledge, threatened affecting Fighter that will interfere with Fighter's full and complete performance hereunder or the free and unimpaired exercise by ZUFFA of any of the Rights;

    d.    Fighter is entering into this Agreement of his own free will, is not subject to duress of any kind, and is not under the influence of any Controlled Substance and Fighter knows of no disability, whether physical or mental, which would or could prevent Fighter from the full and complete performance of his obligations hereunder; and

    e.    Fighter has had the opportunity to consult an attorney or other representative regarding this Agreement, and he appreciates the legal significance and consequences of signing this Agreement; and

    f.    Fighter is either (i) a citizen of the United States and is not otherwise subject to any "backup" or other withholding of taxes or compensation specially applicable to those who are not citizens of the United States, or (ii) is not a citizen of the United States but has provided to ZUFFA in writing all information necessary to enable ZUFFA to comply with any such applicable withholding or other payment requirement.

CONFIDENTIAL

g.    To the extent Fighter is permitted to select and wear approved clothing apparel, sportswear and/or equipment during any Bout, Pre-Bout Event or Post-Bout Event, included but not limited to, trunks, robes, shoes, or any other part of the costume, ZUFFA shall not be responsible to pay for in any way whatsoever, all clearances, licenses, uses, reuse fees, license fees, relating to the use and appearance of any creative expression, clothing apparel, sportswear and equipment, included but not limited to, trunks, robes, shoes, or any other part of the costume, electronic information, digital information, wording, phrases, symbols, pictures, designs, print materials or other materials or information (including, without limitation, the trademarks, copyrights, personal privacy, property rights, names, voices, and likenesses of all and any persons, properties and businesses appearing therein (if any), and all components and elements thereof) displayed and exhibited by Fighter during or at any Bouts, Pre-Bout Events or Post-Bout Events.

h.    To the extent Fighter is permitted, by ZUFFA, to have visible sponsors during Bouts, Pre-Bout Events or Post-Bout Events, Fighter covenants that for each visible sponsor, he will obtain for each applicable Bout, the full power to expressly and irrevocably convey to ZUFFA, and its successors and assigns, or secure authorization for ZUFFA, and its successors and assigns, to use and exploit the images of Fighter's visible sponsors, and covenants that, to the best of Fighter's actual knowledge, the exercise of the rights granted herein will not infringe on any rights of any third party, including but not limited to copyright, trademark, unfair competition, contract, defamation, privacy or publicity rights.

i.    Fighter has been provided a copy of and has read the UFC Fighter Conduct Policy which is incorporated by reference into this Agreement.

13.2. ZUFFA represents and warrants to Fighter that:

a.    ZUFFA is a limited liability company duly formed under the laws of the State of Nevada; and that the person executing this Agreement on behalf of ZUFFA is authorized to do so; and

b.    ZUFFA is able to perform its promotional and payment obligations arising hereunder, and there are no claims or arbitration, mediation, or litigation pending or threatened affecting ZUFFA that would prevent ZUFFA from performing hereunder.

ARTICLE XIV
ASSUMPTION OF THE RISK/WAIVER OF ALL CLAIMS

14.1    Fighter fully understands and agrees that the professional sport of mixed martial arts is an inherently and abnormally dangerous activity that can result in severe and permanent physical injury, including but not limited to irreversible neurological trauma, disability, or death. Fighter represents that he is a professional in the sport of mixed martial arts, and Fighter has knowingly evaluated the inherent risks, foreseen and unforeseen, in this dangerous sport and represents and declares that he is physically, mentally, emotionally and intellectually willing and able to accept, and does hereby clearly, unambiguously and explicitly accept, all risks, foreseen and unforeseen, associated with preparing for and participating in the sport and the Bouts.

14.2    In consideration for the opportunity to participate in the Bouts, and with full knowledge and complete assumption of all the risks (except as set forth below), Fighter, for himself, his heirs, assigns, executors and administrators (**"Releasing Parties"**) hereby irrevocably agrees that the Releasing Parties will not sue or claim against ZUFFA or any of its parents, subsidiary entities, affiliates, sponsors, successors and assigns, and the respective directors, officers, members, managers, employees, agents, contractors, partners, shareholders and representatives, in their individual, personal and representative capacities for each of the foregoing entities (**"Released Parties"**) for any injury, illness, damage, loss or harm to Fighter or Fighter's property, or Fighter's death or disability, resulting

CONFIDENTIAL

or arising out of or in connection with Fighter's preparation for, travel for, participation and appearance in any UFC promotional events, the Bouts, the Pre-Bout Events and the Post-bout Events or any activities associated therewith, other than injuries, illness, damage, loss or harm to Fighter or Fighter's property, or Fighter's death or disability resulting from the willful acts, recklessness or gross negligence of ZUFFA, any of its employees, agents, contractors (excluding any independent contractor athletes) or representatives or any persons or entities controlling or operating the venue at which any Bout, Pre-Bout Events or Post-Bout Events take place.

14.3   In consideration for the opportunity to participate in the Bouts, and with full knowledge and complete assumption of all risks (except as set forth below), the Releasing Parties hereby forever voluntarily release, discharge, waive and relinquish any and all, past, present, and future claims and causes of action, that they may have against the Released Parties, as the result of any injury, illness, damage, loss or harm to Fighter or Fighter's property, or Fighter's death or disability, resulting or arising out of or in connection with Fighter's preparation for, travel for, participation and appearance in any UFC promotional events, the Bouts, the Pre-Bout Events and the Post-Bout Events or any activities associated therewith, other than injuries, illness, damage, loss or harm to Fighter or Fighter's property, or Fighter's death or disability resulting from the willful acts, recklessness or gross negligence of ZUFFA, any of its employees, agents, contractors (excluding any independent contractor athletes) or representatives or any persons or entities controlling or operating the venue at which any Bout, Pre-Bout Events or Post-Bout Events take place. Furthermore, the Releasing Parties hereby irrevocably and unconditionally consent and agree that any insurance proceeds and benefits provided by ZUFFA hereunder shall be the only benefits the Releasing Parties may claim or receive from Released Parties for any injury, including death, relating to any and all of Fighter's services under this Agreement, other than injuries or death resulting from the willful acts, recklessness or gross negligence of ZUFFA, any of its employees, agents, contractors (excluding any independent contractor athletes) or representatives or any persons or entities controlling or operating the venue at which any Bout, Pre-Bout Events or Post-Bout Events take place.

## ARTICLE XV
## INDEMNIFICATION

15.1   Fighter shall indemnify and hold harmless ZUFFA, its subsidiaries, affiliates and sponsors, and each of their members, managers, directors, officers, employees, representatives, agents and contractors from and against any third party claims, actions, proceedings, expenses (including reasonable outside attorneys' fees) and damages arising from any grossly negligent or intentional acts or omissions by Fighter or the material uncured breach of any of Fighter's representations, warranties or covenants contained herein or within any Bout Agreement.

15.2   ZUFFA shall indemnify and hold harmless Fighter  and  his heirs, members, managers, directors, officers, employees, representatives, agents and contractors from and against any third party claims, actions, proceedings, expenses (including reasonable outside attorneys' fees) and damages arising from any grossly negligent or intentional acts or omissions by ZUFFA or the material uncured breach of any of ZUFFA's representations, warranties or covenants contained herein or within any Bout Agreement.

## ARTICLE XVI
## PROHIBITION ON USE OF
## INTELLECTUAL PROPERTY RIGHTS

16.1   Unless Fighter receives prior written approval from ZUFFA, Fighter shall not utilize any of ZUFFA's intellectual property rights, including, but not limited to, the names and

ZFL-0039057

marks "Ultimate Fighting Championship," "UFC," the "Octagon," "Ultimate Fighting," "Ultimate Fighter," and any logos, pictures or other representations of ZUFFA's intellectual property. Without limiting the scope of this prohibition, Fighter expressly agrees that he may not refer to himself as a "UFC Champion"; "former UFC Champion"; "UFC Star"; "UFC Superstar"; "UFC Fighter" or utilize any of ZUFFA's intellectual property in describing or referring to himself without the express written consent of ZUFFA. Further, Fighter expressly agrees not to use a UFC championship belt without the prior written approval of ZUFFA, and further agrees that any such belt he obtains is on loan and will at all times remain the property of ZUFFA. Upon ZUFFA's written request, the belt must be returned within forty-eight (48) hours to ZUFFA at ZUFFA's expense. Additionally, Fighter expressly acknowledges and agrees that ZUFFA is not a sanctioning organization and Fighter does not possess and cannot assert any property right or similar legal interest in the UFC Title or in being a UFC Champion. Notwithstanding the above, ZUFFA grants Fighter the revocable right, during the Term, for Fighter to refer to himself as being a "UFC Fighter" and/or being "in the UFC", or similar type wording conveying that Fighter is under contract to ZUFFA, on Fighter's personal website, on Fighter's social media accounts and in interviews that Fighter does with media outlets. After the Term, ZUFFA will consider in good faith all requests by Fighter for biographical, non-commercial purposes to state that Fighter was a "UFC Fighter" and/or was "in the UFC".

16.2    Fighter shall not utilize the intellectual property rights of any of ZUFFA's sponsors, including, without limitation, any logos, pictures or other representations of such intellectual property without a separate agreement with such party (e.g., if Fighter is endorsed by such sponsor).

ARTICLE XVII
ASSIGNMENT

17.1    ZUFFA shall have the absolute right to assign, license, or transfer any or all of the rights granted to it hereunder, including, but not limited to, the right to co-promote any Bout in association with any one or more persons or entities of its choosing. Furthermore, other than to World Wrestling Entertainment, Inc., ZUFFA may assign any of its respective obligations hereunder without Fighter's consent; however, any such assignment shall not relieve ZUFFA of its duties and obligations hereunder except in the event that ZUFFA sells all or substantially all of its assets .

17.2    The rights and obligations of Fighter arising from this Agreement and any Bout Agreement are personal to Fighter and the benefits and the duties of Fighter hereunder may not be assigned, pledged or transferred for any reason. However, Fighter can freely assign his right to receive compensation under this Agreement, and may assign this Agreement to a loanout company upon reasonable notice to ZUFFA.

ARTICLE XVIII
OTHER ACTIVITIES OF ZUFFA

18.1    Nothing herein shall prevent ZUFFA from engaging in promotional activities for any other professional fighter, including others in the same weight class as Fighter, or any other activities, whether related or unrelated to the subject matter of this Agreement.

18.2    Nothing herein shall prevent Fighter from engaging in any other business, trade, profession or other activity; provided that such other business, trade, profession or other activity does not involve the Fighter engaging in mixed martial arts contests or any other activity prohibited under this

CONFIDENTIAL

ZFL-0039058

Agreement, and does not interfere with the Fighter's training or performance.

ARTICLE XIX
INTENT IN SIGNING

19.     Fighter acknowledges that his execution of this Agreement is for the purpose of obtaining the promotional services of ZUFFA upon the terms and conditions of this Agreement and that Fighter has not been required to sign this Agreement or to grant any of the Rights as a condition precedent to Fighter's participation in any professional mixed martial arts contest against another fighter who has granted promotional or ancillary rights to ZUFFA.

ARTICLE XX
INDEPENDENT CONTRACTOR STATUS

20.1     Nothing contained in this Agreement shall be construed to make Fighter an employee of ZUFFA or to appoint ZUFFA as Fighter's agent, and ZUFFA shall have no financial interest (other than offset rights) in compensation payable to Fighter for engaging in any Bout hereunder. It is intended that Fighter shall remain an independent contractor, responsible for his own actions, expenses and any local, state, federal or international taxes, including, but not limited to, the engagement, discharge, benefits and costs of all of Fighter's Affiliates, and training facilities, equipment, professional memberships, sanctioning fees, medical expenses, social security taxes, Federal Insurance Contributions Act (FICA) taxes, and Federal Unemployment Tax Act (FUTA) taxes.

20.2     Subject to Section 11.1 above, Fighter shall not be eligible under this Agreement to participate in any vacation, group medical or life insurance, disability, profit sharing or retirement benefits or any other fringe benefits or benefit plans offered by ZUFFA to its employees and ZUFFA shall not be responsible for withholding or paying any income, payroll, Social Security or other federal, state or local taxes, making any insurance contributions (except as provided herein) including unemployment or disability, or obtaining workers' compensation insurance on Fighter's behalf. Fighter shall be responsible for, and shall indemnify ZUFFA against, all such taxes or contributions, including penalties and interest. Any persons employed by Fighter in connection with the performance of the services provided by Fighter hereunder shall be employees of Fighter and Fighter shall be fully responsible for such persons in the performance of Fighter's services hereunder.

ARTICLE XXI
COMMERCIAL IDENTIFICATION

21.1     Fighter covenants and agrees that no wording, symbols, pictures, designs, names or other advertising or informational material (i) for any beer, alcohol, beverage company, tobacco, casino or gaming company, media company (including, but not limited to, HBO, ABC, SNI, ESPN, Spike, any Viacom owned network and any Internet related company); (ii) of any sponsor identified by ZUFFA as in conflict or competition with ZUFFA or any of ZUFFA's sponsors; (iii) of any sponsor causing injury to the reputation of ZUFFA or ZUFFA's sponsors or their respective officers and owners; or (iv) which has not been pre-approved in writing by ZUFFA shall appear on the trunks, gloves, robe, shoes or any other part of the costume or the body (including by use of temporary or henna tattoos) of Fighter or any of Fighter's Affiliates during or at any Bouts, Pre-Bout Events or Post-Bout Events. For the avoidance of doubt, all sponsorship and endorsement approvals worn or appearing during the Bouts, Pre-Bout Events, Post-Bout Events or during any UFC videotaping or promotional activities, shall be at ZUFFA's sole discretion, and all other sponsorship and endorsement approvals in connection with Fighter's professional MMA career shall not be unreasonably withheld. Fighter further covenants and agrees to only use the gloves approved and supplied by ZUFFA.

CONFIDENTIAL

21.2    Notwithstanding the foregoing, ZUFFA shall have the right to include any advertising or other informational material of ZUFFA, ZUFFA's sponsors or other entities designated by ZUFFA on the trunks, gloves, robe, shoes, regalia or any other part of the costume of Fighter or any of Fighter's Affiliates during or at any Bouts, Pre-Bout Events or Post-Bout Events.

21.3    For television purposes, Fighter must be clearly distinguishable. Therefore, Fighter shall provide one (1) pair of dark-colored trunks and one (1) pair of light-colored trunks for each Bout. If it is necessary to distinguish Fighter from his opponent, ZUFFA shall have sole discretion to require Fighter to wear either the dark-colored or light-colored trunks.

## ARTICLE XXII
## CONFIDENTIALITY

22.1    Neither party shall disclose to any third party (other than its respective agents and professional advisors, in their capacity as such), any information with respect to the terms and provisions of this Agreement or any Bout Agreement except: (i) to the extent necessary to comply with law or the valid order of a court or administrative agency of competent jurisdiction, in which event the disclosing party shall notify the other party (if possible, prior to making such disclosure) and shall seek confidential treatment of such information, (ii) as part of normal reporting or review procedure to such party's lenders, auditors, attorneys and similar professionals, provided that such lenders, auditors and attorneys and similar professionals are bound by a duty of confidentiality or agree to be bound by the provisions of this section; and (iii) in order to enforce such party's rights pursuant to this Agreement or any Bout Agreement or to comply with the terms of this Agreement or any Bout Agreement.

22.2    Upon execution hereof, the parties will mutually agree to a press release announcing Fighter's affiliation with the UFC hereunder.

22.3 ZUFFA shall have the sole right to file this Agreement with any applicable athletic or fighting commission and world sanctioning bodies.

## ARTICLE XXIII
## FURTHER ASSURANCES

23.1    Fighter shall execute any and all additional customary documents or instruments consistent herewith necessary to effectuate the provisions of this Agreement, including, but not limited to, Bout Agreements and Standard Fighter Contracts or any other document required by ZUFFA, the Athletic Commission, any local governmental authority with jurisdiction over any Bout and the world organization(s) sanctioning any Bout, if applicable. No party hereto shall intentionally take any action or intentionally fail to take any action which action or failure shall frustrate the purposes of this Agreement and the benefits set forth herein.

23.2    Fighter shall take all steps reasonably requested to obtain all necessary documentation, including any work visas, to lawfully permit Fighter and Fighter's Affiliates to participate in all Bouts, as notified by ZUFFA sufficiently in advance. Fighter shall provide copies of all such requested documentation to ZUFFA no less than thirty (30) days prior to any Bout (or within five (5) business days after ZUFFA's request therefor if within such 30-day period). Provided that Fighter has been given sufficient advance notice, Fighter's failure to obtain or provide cooperation in obtaining such documentation shall constitute grounds for ZUFFA, at

CONFIDENTIAL

its election (after notice to Fighter and opportunity to cure), to (i) obtain the required documentation and deduct the actual out-of-pocket costs thereof from Fighter's Purse, (ii) cancel Fighter's participation in the Bout, without any compensation due to Fighter for said Bout, and extend the Term for a period four (4) months; (iii) declare that ZUFFA has satisfied its obligation to promote one (1) of the Bouts to be promoted by ZUFFA hereunder, without any compensation due to Fighter for said Bout; or (iv) provide Fighter with notice of an Acceleration.

## ARTICLE XXIV
## NOTICES

24.1    Any notice or other communications given or sent pursuant to this Agreement shall be in writing and shall be deemed given when (i) personally delivered; (ii) delivered by confirmed facsimile transmission; (iii) three (3) days following the date such notice is mailed postage paid by registered or certified mail, return receipt requested; or (iv) to Fighter, delivered by confirmed electronic means (electronic mail), to the respective addresses indicated below or any address subsequently provided to ZUFFA:

To ZUFFA:
Dana White, President
ZUFFA, LLC
2960 W. Sahara Ave.
Las Vegas, Nevada 89102

To Fighter:
Phillip Brooks
1456 Milwaukee Avenue
Chicago, IL  60672
Email:  xpunkx@me.com

With a copy to:
Kirk D. Hendrick
Chief Legal Officer
ZUFFA, LLC
2960 W. Sahara Ave.
Las Vegas, Nevada 89102

With a copy to:
Sunny Brenner
Loeb & Loeb LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA  90067

Email:  sbrenner@loeb.com

24.2    Any party may change its address for notice purposes by providing notice of such change of address in accordance with this section.

## ARTICLE XXV
## CHOICE OF LAW/EXCLUSIVE JURISDICTION AND VENUE

25.1    This Agreement has been delivered at and shall be deemed to have been made at Las Vegas, Nevada, and shall be interpreted, and the rights and liabilities of the parties hereto determined, in accordance with the laws of the State of Nevada.

25.2    ZUFFA and Fighter hereby (a) expressly consent to the exclusive personal jurisdiction and venue of the state and federal courts located in Clark County, Nevada for any action brought by either party to interpret or enforce any provision of this Agreement and (b) agree not to assert (by way of motion, as a defense or otherwise) that such legal proceeding has been brought in an inconvenient forum. The undersigned, by execution and delivery of this Agreement, expressly and irrevocably consent to the service of any complaint, summons, notice or other process relating to any such action or proceeding by delivery thereof to such party by hand or by certified mail, delivered or addressed to the address set forth in this Agreement.

                                                                ZFL-0039061

ARTICLE XXVI
MISCELLANEOUS PROVISIONS

26.1     If any provision of this Agreement is found to be illegal, invalid, or unenforceable as to any circumstance, such finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. Rather, the offending provision shall be considered modified so that it becomes legal, valid and enforceable, or, if not capable of such modification, shall be considered deleted. The illegality, invalidity, or unenforceability of any provision shall not affect the legality, validity, or enforceability of any other provision of this Agreement.

26.2     No waiver by any party of any breach or default hereunder shall be deemed to be a waiver of any preceding or subsequent breach or default. All waivers must be in writing, specify the breach or default concerned and be signed by the party against whom the waiver is sought to be enforced.

26.3     In the event either party institutes an action regarding any dispute arising from or related to this Agreement, the prevailing party shall be entitled to recover from the other party its reasonable outside attorneys' fees and costs.

26.4     The provisions of this Agreement are for the exclusive benefit of the parties hereto and their permitted successors and assigns, and no third party shall be a beneficiary of or have any rights under this Agreement, regardless of whether or not such third party is referred to herein.

26.5     Other than any Bout Agreement or Standard Fighter Contract which may be entered into by the parties pursuant to the terms of this Agreement, this Agreement sets forth and integrates the entire understanding between Fighter and ZUFFA, and supersedes any and all prior or contemporaneous written or oral agreements or representations between the parties with respect to the subject matter hereof.

26.6     This Agreement may not be altered, amended or discharged, except by a subsequent writing signed by the parties hereto.

26.7     This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same instrument. Facsimile signatures shall be as effective as originals.

26.8     Descriptive headings of this Agreement are inserted for convenience only and do not constitute a part of this Agreement and shall not be considered for purposes of its interpretation. The parties agree that they have equally participated in the negotiation of the terms and conditions in this Agreement, and therefore any ambiguities shall be resolved without reference to which party may have drafted all or any provision herein.

ARTICLE XXVII
MEDICAL TESTING

27. FIGHTER SHALL COMPLETE A FULL PHYSICAL MEDICAL EXAMINATION AND UNDERGO TESTING AND RECEIVE AFFIRMATIVE CLEARANCE THEREFROM PRIOR TO EACH BOUT INCLUDING, BUT NOT LIMITED TO THE FOLLOWING: CBC, HEPATITIS B, HEPATITIS C, HIV, RH AND BLOOD TYPE, RPR, PT, PTT, URINALYSIS WITH DRUG SCREENING, EKG, CT SCAN, MRI, DIALATED OPHTHALMOLOGICAL EXAM, AND SUCH OTHER TESTING AS ZUFFA OR THE ATHLETIC COMMISSION MAY REASONABLY REQUIRE. THE MEDICAL EXAMINATION SHALL BE PERFORMED BY FIGHTER'S MEDICAL SERVICE

PROVIDER DURING THE THIRTY (30) DAY PERIOD IMMEDIATELY PRECEDING THE DATE OF EACH BOUT. THE REPORT OF THE MEDICAL EXAMINATION OF FIGHTER CONTAINING THE RESULTS OF THE EXAMINATION AND TESTS SHALL BE DELIVERED TO ZUFFA AND FIGHTER CONCURRENTLY NO LESS THAN TWENTY-ONE (21) DAYS PRIOR TO ANY BOUT AND MUST NOT CONTAIN ANY RESTRICTIONS ON FIGHTER'S ABILITY TO COMPETE. ALL COSTS ASSOCIATED WITH THE MEDICAL EXAMINATION AND TESTS SHALL BE PAID BY FIGHTER.

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the dates set forth below, the later of which shall be the Effective Date of this Agreement.

**ZUFFA, LLC**

Signature: _____

Printed Name: Dana White

Title: _____ President

Date: 12-3-14

**FIGHTER**

Signature: _____

Printed Name: PHIL BROOKS

Social Security No.: ▮▮▮▮▮▮

Date: 11.30.14

APPROVED BY:

Signature: _____
    Kirk D. Hendrick
    Chief Legal Officer

CONFIDENTIAL

## EXHIBIT A

### UFC Fighter Conduct Policy

As provided in the Promotional and Ancillary Rights Agreement entered into between each UFC fighter and Zuffa, LLC ("Zuffa" or "UFC"),

> *fighters shall conduct themselves in accordance with commonly accepted standards of decency, social conventions and morals, and fighters will not commit any act or become involved in any situation or occurrence or make any statement which will reflect negatively upon or bring disrepute, contempt, scandal, ridicule, or disdain to the fighter or the UFC.*

This contractual provision reflects the UFC's broad requirement that its contracted fighters act in a legal,

ethical, and responsible manner and avoid conduct detrimental to the integrity of the UFC organization.

The following Conduct Policy ("Policy") details the standards of conduct each fighter is required to meet and the process by which misconduct may result in disciplinary measures.

### Standards of Conduct:

This Policy applies to all fighters under contract with UFC or its affiliate organizations.

As the UFC's highest profile independent contractors and as ambassadors of the sport of mixed martial arts, UFC fighters are held to a high standard by the UFC, the media and the public. Responsible conduct advances the interests of the sport and the fighters. Conversely, irresponsible conduct by a fighter tarnishes the reputation of both the affected fighter and the UFC and undermines the positive image set by other fighters.

While criminal activity by a UFC fighter is clearly detrimental to the reputation of the UFC and therefore subjects the fighter to discipline, other conduct can also result in disciplinary action.

Discipline may be imposed for misconduct, which includes without limitation, the following examples:

Criminal offenses including, but not limited to, those involving: the use or threat of violence; domestic violence and other forms of partner abuse; theft and other property crimes; sex offenses;

obstruction or resisting arrest; disorderly conduct; fraud; racketeering; and money laundering;

Criminal offenses relating to performance-enhancing and prohibited substances, or substance abuse;

Unlawful possession of a gun or other weapon;

Conduct that imposes inherent danger to the safety or well being of another person;

Violent, threatening or harassing behavior;

Derogatory or offensive conduct, including without limitation insulting language, symbols, or actions about a person's ethnic background, heritage, color, race, national origin, age, religion, disability, gender or sexual orientation;

Inappropriate physical, verbal, and online behavior (such as inappropriate statements made via e-mail, text messaging or social networks);

Conduct that undermines or puts at risk the organization or promotion of a UFC event, including without limitation, failure to deliver, engage in or otherwise execute any and all promotional responsibilities, or failure to return in a timely manner the accurate and complete documents or information for immigration, licensing, medical, tax or athletic commission purposes; and

Conduct that undermines or puts at risk the integrity and reputation of the UFC.

### Disciplinary Process:

Upon discovery of potential fighter misconduct, UFC will direct an investigation, which may include interviews and information-gathering from medical experts, law enforcement officers and other relevant professionals. As appropriate, the affected fighter and/or his/her designee will also have the opportunity to provide information on the conduct at issue. Upon conclusion of the investigation, UFC will have full authority to impose disciplinary measures on the fighter as warranted in its sole discretion.

Discipline may take the form of fines, suspension, and cessation of service and may include conditions to be satisfied prior to the resolution of the incident.

Determination of the appropriate discipline for an incident will be based on the nature of the misconduct and other relevant factors.

Immediate disciplinary measures may be imposed, provided that following a full investigation of the incident, UFC may review the measures and make appropriate adjustments. Unless the incident involves significant harm, a first offense will generally not result in immediate disciplinary measure until an investigation has been completed.

Previous violations of this Policy may be taken into consideration in making disciplinary determinations and may result in immediate disciplinary action. Misconduct occurring prior to a fighter's provision of service to UFC may also be considered.

### Appeal Process:

**Notice:** Following the imposition of disciplinary measures by UFC, the affected fighter shall have the option to appeal the determination solely through binding arbitration ("Arbitration") administered by JAMS.

In order to file an appeal, a fighter must complete both of the following two steps **within thirty (30) calendar days following the disciplinary determination:**

(i) notify the UFC Legal Department (via the contact information in the Contact Information section below); and

(ii)     file a Demand for Arbitration with JAMS.

**Appeal:** The Arbitration will be conducted in accordance with the JAMS Comprehensive Arbitration Rules & Procedures effective as of the commencement of the Arbitration ("Rules"). The language of the Arbitration will be English. The Arbitration will be governed and determined by the laws of the State of Nevada without regard to conflict of laws principles. The Arbitration will be resolved by a single arbitrator appointed in accordance with the Rules ("Arbitrator"). The Arbitration will be held in Las Vegas, Nevada at a location selected by the Arbitrator. The Arbitration proceedings and the resolution thereof will be completely confidential, subject only to such disclosures as required by law. The Arbitration will be the sole and exclusive venue of appeal with respect to the subject matter of the arbitrated dispute.

### Evaluation, Counseling and Treatment:

Fighters who engage in misconduct may be required to undergo clinical evaluation. Based on the results of such evaluation, participation in an education program, counseling or other treatment as recommended by a health professional may be required. While evaluation and treatment are not considered disciplinary measures, failure to comply with an evaluation and treatment process will constitute a separate basis for discipline.

### Voluntary Evaluation, Counseling and Treatment Assistance:

Fighters are encouraged to consult with the UFC Legal Department via the contact information (in the Contact Information section) below to obtain access to education, counseling, treatment, programs and resources that may assist in preventing misconduct.

### Reporting of Incidents:

UFC must be notified immediately of any incident that constitutes fighter misconduct by contacting the UFC Legal Department (via the contact information in the Contact Information below). Failure to report an incident will constitute conduct detrimental to the integrity of the UFC and will be taken into consideration in making disciplinary determination under this Policy.

### Contact Information:

Please contact Assistant General Counsel Michael Mersch of the UFC Legal Department **via email at mmersch@ufc.com or telephone at (702) 588-5532** regarding this Policy, including without limitation, to report an incident, seek voluntary treatment or appeal a disciplinary determination.

24

CONFIDENTIAL                                                                                  ZFL-0039066