# EXHIBIT 100
# -
# REDACTED VERSION OF
# ECF NO. 575-2

# EXHIBIT 53

## Exclusive Promotional and Ancillary Rights Agreement between Zuffa and Matt Hughes

## (Filed Under Seal)

# EXCLUSIVE PROMOTIONAL AND
# ANCILLARY RIGHTS AGREEMENT

**THIS EXCLUSIVE PROMOTIONAL AND ANCILLARY RIGHTS AGREEMENT**
(the "Agreement") is made, entered into and shall become effective as of the date set forth below (the
"Effective Date") by and between **ZUFFA LLC,** a Nevada limited liability Company d/b/a Ultimate
Fighting Championship, with offices at Las Vegas, Nevada (hereinafter called "ZUFFA") and
**MATT HUGHES** (hereinafter "Fighter").

**WHEREAS**, ZUFFA is in the business of, among other things, promoting first class mixed
martial arts fighting competitions throughout the world under the trade name of Ultimate Fighting
Championship ("UFC") and desires to enter into an agreement with Fighter to be his exclusive
promoter for his future bouts and for the use of certain ancillary rights granted by Fighter to ZUFFA;
and

**WHEREAS**, Fighter is a professional mixed martial arts fighter and desires to enter into an
agreement with ZUFFA for it to be his exclusive promoter for his future bouts and for ZUFFA to
utilize certain ancillary rights granted by Fighter to ZUFFA.

**NOW, THEREFORE,** in consideration of the mutual promises and agreements hereinafter
set forth, and of other good and valuable consideration, the receipt and sufficiency of which are
hereby acknowledged, the parties hereto agree as follows:

1. **Term.**

    a.     The term of this Agreement ("Term") shall remain in full force and effect
either (i) for a period of one (1) year from the date of the first bout promoted by ZUFFA involving
Fighter under the terms of this Agreement or (ii) until Fighter has participated in at least three (3)
bouts promoted by ZUFFA under the terms of this Agreement, whichever is longer.   If at the

expiration of the Term Fighter is the champion, the Term shall be extended for a period of one (1) year or three (3) bouts, whichever is longer. To the extent applicable, this Agreement shall replace and supersede all prior promotional rights and exclusive participation agreements between the parties and shall terminate all existing obligations between the parties, if any.

b.      The Term as defined in Section 1.a. above applies only to the Bouts involving Fighter and promoted by ZUFFA under the terms of this Agreement, and does not apply to the grant by Fighter to ZUFFA of the exclusive unrestricted right, perpetually and throughout the world, to those certain "Ancillary Rights," as defined more fully in Section 6 herein below, which grant is perpetual and extends beyond the Term of this Agreement.

c.      In the event that at any time during the Term or any extension of the Term as provided herein, Fighter shall have been declared the loser of any mixed martial arts bout (whether promoted by ZUFFA or any other party) by the official authority or athletic commission with jurisdiction over such bout, then ZUFFA shall have the right, but not the obligation, to terminate this Agreement upon written notice to the Fighter as per notice provisions herein, effective as of the date of the notice, without any further obligation of ZUFFA to Fighter except for the payment to Fighter of any unpaid purses or other amounts due for Bouts which have been completed prior to the date of termination. The termination of this Agreement pursuant to this Section of the Agreement, or any other section or provision of this Agreement or any other agreement between Fighter and ZUFFA, shall not affect or terminate the grant of the Ancillary Rights to ZUFFA pursuant to Section 6 of this Agreement, which grant shall survive any said termination.

2.      **Bouts, Dates, Sites, and Opponents**.

a.      Fighter hereby grants ZUFFA the sole and exclusive right to secure and

2

arrange all mixed martial arts bouts (individually, a "Bout" and collectively, the "Bouts") in consultation with Fighter requiring Fighter's services as a professional fighter and to secure, arrange and promote all such Bouts, all upon and subject to the terms and conditions hereinafter set forth.

  b. ZUFFA shall promote and Fighter shall participate in not less than three (3) Bouts during the Term of this Agreement. For purposes of this Agreement, and in satisfaction of ZUFFA's obligation under this paragraph, ZUFFA shall be deemed to have complied with its obligations with respect to any Bout if it shall have made a bona fide offer to Fighter to promote a Bout in accordance with the provisions hereof. If such Bout is the undercard to a main event and that main event is canceled or postponed for any reason whatsoever, the failure of such Bout to take place shall not be deemed non-performance by ZUFFA and ZUFFA shall not be liable for any Fighter purses associated with the event. Said postponement or cancellation shall not effect ZUFFA's obligations set forth in Section 1 herein.

  c. Each Bout shall be a mixed martial arts contest, one-on-one fight pursuant to the rules and regulations of the Athletic Commission having jurisdiction over the Bout. Fighter shall comply with and abide, and be bound, by the rules and regulations of the Athletic Commission having jurisdiction over each Bout.

  d. All Bouts shall be on dates and at sites to be designated by ZUFFA, in its sole and absolute discretion.

  e. Opponents shall be selected by ZUFFA subject to the approval of the athletic commission having jurisdiction over the Bout.

3. **Bout Agreement and Standard Fighter Contract.**

  For each and every Bout occurring hereunder, the parties shall execute and comply

3

CONFIDENTIAL

ZFL-0105055

with the terms of a Bout Agreement (herein referred to as the "Bout Agreement"), the standard

fighter contract required by the applicable athletic commission (herein referred to as the "Standard

Fighter Contract"), and any other contract required to be executed by law, the terms of which shall

be consistent with the terms of this Agreement. To the extent there is any conflict between this

Agreement and the Bout Agreement, the Bout Agreement shall control. But following completion

of the Bout, the terms of this Agreement shall survive and remain in force.

4.    **Compensation.**

During the term of the Agreement, Fighter's purse shall be negotiated and mutually

agreed upon between the parties in the Bout Agreement to be executed by ZUFFA and Fighter prior

to any bout, but it is agreed that

a.    First Event: the purse for the first event shall be Fifteen Thousand Dollars

(US$15,000.00) and an additional Fifteen Thousand Dollars (US$15,000.00) if Fighter is declared

the winner of the Bout by the Athletic commission having jurisdiction over the Bout;

b.    Second Event: if and only Fighter is declared the winner of the first event, the

purse for the second event shall be Twenty Thousand Dollars (US$20,000.00) and an additional

Twenty Thousand Dollars (US$20,000.00) if Fighter is declared the winner of the Bout by the

Athletic commission having jurisdiction over the Bout. If Fighter is declared the loser of the first

event and ZUFFA elects not to terminate this Agreement pursuant to Section 1.c. herein above,

Fighter's purse for the second event shall be the same as set forth in subsection (a) of this Section

of the Agreement; and

c.    Third Event: if and only if Fighter is declared the winner of the first event and

second event, the purse for the third event shall be Twenty-Five Thousand Dollars (US$25,000.00)

4

ZFL-0105056

and an additional Twenty-Five Thousand Dollars (US$25,000.00) if Fighter is declared the winner of the Bout by the Athletic commission having jurisdiction over the Bout. If Fighter is declared the loser of the second event and ZUFFA elects not to terminate this Agreement pursuant to Section 1.c. herein above, Fighter's purse for the third event shall be the same as set forth in subsection (a) of this Section of the Agreement. If Fighter is declared the loser of the first event but is declared the winner of the second event, Fighter's purse for the third event shall be the same as set forth in subsection (b) of this Section of the Agreement.

ZUFFA shall pay Fighter's purse to Fighter within twenty-four (24) hours of the completion of each Bout or in any manner proscribed by the athletic commission having jurisdiction over the Bout.. ZUFFA may deduct from Fighter compensation any applicable foreign tax withholding requirements and any other withholding requirements dictated by relevant regulatory authorities, including, but not limited to, taxes, license fees, medical, etc.

        d.     Fighter understands and agrees that the compensation paid to him pursuant to this Section 4 is also compensation and full consideration for the ancillary rights granted by Fighter to ZUFFA pursuant to Section 6 of this Agreement.

     5.    **Transportation, Lodging and Tickets.**

        a.     Non-Championship Bouts: For each non-championship Bout hereunder that Fighter participates in, ZUFFA shall provide one (1) hotel room and two (2) round trip economy class airline tickets for transportation of Fighter and one member of Fighter's team from Fighter's hometown to the site of the event.

        b.     Championship Bouts: For each championship Bout hereunder that Fighter participates in as the champion or the challenger for the championship, ZUFFA shall provide two

5

CONFIDENTIAL

ZFL-0105057

(2) hotel rooms and three (3) round trip economy class airline tickets for transportation of Fighter and two (2) members of Fighter's team from Fighter's hometown to the site of the event.

        c.     All Bouts: For all Bouts hereunder, Fighter shall be scheduled to arrive on the Tuesday prior to the Bout if the Bout is scheduled to occur on a Friday, or the Wednesday prior to the Bout if the Bout is scheduled to occur on a Saturday, and shall be scheduled to depart the day after the Bout. At ZUFFA's sole discretion, Fighter only shall be provided with either Fifty Dollars ($50.00) cash per diem for meals or meal vouchers for three (3) meals per day. ZUFFA shall also provide Fighter at no charge to Fighter two (2) tickets to each Bout hereunder, selection and location of which shall be in the sole discretion of ZUFFA. Other than as specifically set forth in this Section 5 of this Agreement, no other benefits, charges or expenses (i.e. telephone, beverages, entertainment, gift shop items or other such benefits, charges and expenses) shall be provided by ZUFFA to Fighter or anyone associated with Fighter.

      6.     **Worldwide Rights to Bouts, Ancillary Rights, etc.**

        As further consideration for the compensation payable to Fighter pursuant to Section 4 of this Agreement, Fighter hereby grants to ZUFFA the exclusive unrestricted right to promote any and all professional mixed martial art contests to be engaged in by Fighter during the Term of this Agreement and any extensions, and the exclusive unrestricted right, perpetually and throughout the world, to use, edit, disseminate, display, reproduce, print, publish and make any other uses of the name, sobriquet, voice, persona, signature, likeness and/or biography of Fighter, and all persons associated with Fighter (the "Ancillary Rights", as defined more fully herein below) . ZUFFA shall promote such bouts subject to the terms and conditions set forth herein, and the terms of this Agreement shall apply to championship title bouts as well as non-title bouts. The grant by Fighter

6

to ZUFFA of the exclusive worldwide rights, title and interest to the Bouts promoted by ZUFFA hereunder, and the exclusive unrestricted right, perpetually and throughout the world, to the Ancillary Rights, as detailed more fully below in this Section of the Agreement, includes, but is not limited to, the following:

a. The right to all site fees, live-gate receipts, sponsorship fees, and motion picture, radio, television (whether live or delayed, interactive, home or theater, pay, pay-per-view, satellite, closed circuit, cable or subscription both foreign and domestic), telephone, computer, CD-ROM, DVD, Internet applications, video and audio cassettes, home video and computer games, arcade video games, hand held versions of video games, video slot machines, photographs, including raw footage, out-takes and negatives, merchandising and program rights now or hereinafter invented in connection with or based upon the Bouts or the activities pertaining to the Bouts, including, but not limited to, training and press conferences for the Bouts (the "Pre-Bout Events"), post-fight press conferences (the "Post-Bout Events") and any parts thereof on a commercial, sustaining, theatrical or other basis, and by any and all means, methods and devices, whatsoever;

b. The right to sell, assign, lease, license, sublease, use or otherwise dispose of any and all of the rights granted hereunder and the results of the exercise thereof, and to authorize, license and grant the right to exercise any of the rights granted hereunder;

c. The right to do all things necessary for the full and complete use, exploitation and exercise of the rights granted ZUFFA hereunder, including the right to promote and exploit all rights granted hereunder and the results of the exercise thereof, and the right to negotiate, enter into and perform any and all agreements relating to said rights for the proper production and promotion of radio and television broadcasts of the Bouts, the Pre-Bout Events and the Post-Bout Events, such

7

as announcers, commercials, artwork and other elements;

    d.    All right, title and interest in and to any recordings of the television and radio broadcasts and motion picture films and video and audio cassettes of, or based upon the Bouts, the Pre-Bout Events and the Post-Bout Events, including, but not limited to, magnetic tapes, and the right to secure in its own name or that of its nominee copyright and other protection to the extent available throughout the world;

    e.    The unrestricted right, perpetually and throughout the world, to use, edit, disseminate, display, reproduce, print and/or publish in any media the name, sobriquet, voice, persona, signature, likeness and/or biography of Fighter, his manager, trainer and other persons associated with Fighter who are connected with the Bouts, for the purpose of advertising, promotion, publicity, merchandising and exploitation of the Bouts, the Pre-Bouts Events and Post-Bout Events, including the use of names, sobriquets, voices, personas, signatures, likenesses or biographies in endorsements of any commercial product or service, all without additional compensation or payment to any of the aforesaid parties other than the compensation delineated in Section 4 of this Agreement;

    f.    The unrestricted right, perpetually and throughout the world, to use, edit, disseminate, display, reproduce, print, publish and make any other uses of the name, sobriquet, voice, persona, signature, likeness and/or biography of Fighter, and all persons associated with Fighter, in connection with the development, manufacturing, distribution, marketing and/or sale of any interactive devices, home video and computer games, arcade video games, hand held versions of video games, video slot machines, CD-ROMS, DVD's, Internet applications, video and audio cassettes, photographs, toys, merchandise, and any other similar type products, including the sleeves, jackets and packaging for such products, hereunder made by any method now known or hereafter

8

CONFIDENTIAL

ZFL-0105060

to become known, all without additional compensation or payment to any of the aforesaid parties other than the compensation delineated in Section 4 of this Agreement;

g.      Fighter acknowledges the existence of UFC branded video games developed, being developed or to be developed by Crave Entertainment or other entities, and that the Ancillary Rights granted herein to ZUFFA specifically include and relate to such video games, and any derivative of such video games created by ZUFFA, Crave Entertainment and/or any other entity;

h.      The non-exclusive right to use a three minute clip of the recording of any prior bout, including any non-ZUFFA/UFC bout, in which Fighter was a participant to the extent that Fighter possesses the rights thereto or can reasonably obtain such rights solely for the purposes of publicizing the Bouts which shall be delivered to ZUFFA upon request therefor;

i.      Fighter understands and agrees that ZUFFA's unrestricted right, perpetually and throughout the world, to use, edit, disseminate, display, reproduce, print, publish and make any other uses of the name, sobriquet, voice, persona, signature, likeness and/or biography of Fighter, and all persons associated with Fighter, as granted to ZUFFA pursuant to this Section of the Agreement (i.e. the "Ancillary Rights"), shall be entirely ZUFFA's property, which ZUFFA shall own free and clear from any and all claims of Fighter or anyone claiming through Fighter; and

j.      The termination of this Agreement pursuant to Sections 1.c., 8, 15, or any other section or provision of this Agreement or any other agreement between Fighter and ZUFFA, shall not affect or terminate the grant of the Ancillary Rights to ZUFFA pursuant to this Section 6, which grant shall survive any said termination.

7.      **Promotion.**

Fighter agrees that without additional consideration or compensation except expenses

9

                                                                                          ZFL-0105061

for out-of-pocket expenses reasonably incurred, he will cooperate and assist in the advertising, publicity, and promotion of his Bouts and other bouts and events promoted by ZUFFA, including his appearance at such reasonable number of press conferences, interviews and other promotional activities as ZUFFA may designate.

8.    **Termination**.

a.    ZUFFA shall have the right, upon notice to Fighter, to terminate this Agreement, and any and all other agreements between Fighter and ZUFFA, if: (i) Fighter shall fail, for any reason whatsoever (other than the injury or physical disability of Fighter or a bout opponent as provided for in this Agreement or the Bout Agreement) to engage in the minimum number of Bouts as offered by ZUFFA during the Term of this Agreement; (ii) Fighter breaches, violates or is in any way in default of any section or provision of this Agreement or any other agreement between Fighter and ZUFFA; or (iii) in compliance with another section or provision of this Agreement, including Section 1.c. herein above and Section 15 herein below, or any other agreement between Fighter and ZUFFA, ZUFFA is entitled to the terminate this Agreement, and/or any other agreement between Fighter and ZUFFA. If ZUFFA shall elect to terminate this Agreement and/or any other agreement between ZUFFA and Fighter, said termination shall be without further liability or obligation to Fighter, except for the payment to Fighter of purses for bouts which have been completed pursuant to this Agreement during the period prior to such termination.

b.    The termination of this Agreement by ZUFFA pursuant to the terms of this Agreement, or any other agreement between Fighter and ZUFFA, shall not affect nor terminate the grant of the Ancillary Rights by Fighter to ZUFFA pursuant to Section 6 herein above, which grant shall survive any said termination.

10

ZFL-0105062

9.    **Other Bouts.**

a.    During the Term of this Agreement and any extensions, ZUFFA shall have the exclusive right to promote all of Fighter's bouts and Fighter shall not participate in any other mixed martial art, martial art, boxing, professional wrestling, or any other fighting competition or exhibition unless promoted, co-promoted or otherwise arranged by ZUFFA. Provided, however, that if Fighter is not the champion, Fighter is permitted, subject to the approval of ZUFFA, to contract with other promoters or to engage in any mixed martial arts bout or fighting competition/exhibition promoted by other promoters (hereinafter referred to as "Other Bout") during the Term of this Agreement, or any extensions, so long as such "Other Bout" is not televised by any domestic or international television network, station, cable system or satellite provider.

b.    Notwithstanding the foregoing, Fighter shall not contract to engage in any "Other Bout" unless such "Other Bout" is scheduled for and takes place on a date which is more than sixty (60) days before or more than sixty (60) days after any non-championship bout scheduled by ZUFFA for Fighter and more than ninety (90) days before or more than ninety (90) days after any championship bout scheduled by ZUFFA for Fighter.

c.    Notwithstanding the provisions of this Section 9, Fighter shall not, during the Term of this Agreement and any extension, grant exclusive promotional rights, to substantially the same extent granted to ZUFFA with respect to each bout herein, to any person or entity other than ZUFFA for more than one (1) bout at a time without ZUFFA's express written consent; and Fighter shall not enter into any agreement which would conflict in any material way with the ability of ZUFFA to promote the Bouts provided for in this Agreement. Copies of any agreements for any "Other Bout" shall be furnished to ZUFFA prior to the execution by Fighter and shall be subject to

11

CONFIDENTIAL

ZFL-0105063

ZUFFA's approval. In the event ZUFFA approves the agreement for such "Other Bout," Fighter shall provide a fully executed copy of same to ZUFFA within ten (10) days of ZUFFA's approval.

10.    **Postponement.**

If any Bout scheduled to be promoted hereunder is postponed for any reason except ZUFFA's non-performance, the Bout Agreement applicable to such bout shall determine the rights of the parties and in addition thereto, the Term of this Agreement shall automatically be extended by the period of the postponement.

11.    **Injury/Retirement.**

a.    If at any time during the Term hereof, or any extensions thereof, ZUFFA shall offer to promote a Bout for Fighter and Fighter shall refuse such Bout, or attempt to cancel or postpone such Bout, for reason of a claimed injury or other medical disability, ZUFFA shall have the right, but not the obligation, to have Fighter examined by a medical doctor of its choice at ZUFFA's expense, and if ZUFFA so elects, Fighter shall appear for such examination on one (1) day's notice.

b.    If at any time during the Term hereof, or any extensions thereof, Fighter becomes injured or permanently or partially disabled, ZUFFA, at its sole discretion, shall have the right, for each said injury/disability declared by Fighter, either to (i) extend the Term of this Agreement for the period of such injury/disability or for a period of six (6) months, whichever is longer; (ii) declare that ZUFFA has satisfied one (1) of the Bouts to be promoted by ZUFFA pursuant to the terms of this Agreement, without any compensation due to Fighter for said Bout; or (iii) terminate this Agreement upon notice to Fighter without any further liability or obligation to Fighter; provided, however, that if ZUFFA elects to terminate this Agreement, said termination shall

12

not affect nor terminate the grant of the Ancillary Rights by Fighter to ZUFFA pursuant to Section 6 herein above, which grant shall survive any said termination.

   c.  If at any time during the Term of this Agreement, or any extensions thereof, Fighter shall decide to retire from mixed martial arts or other professional fighting competition, then this Agreement shall be suspended during the period of Fighter's retirement and the Term hereof shall be extended by the length of time of such suspension.  If and when Fighter resumes his mixed martial arts or other professional fighting career, ZUFFA may, at its sole discretion, either continue to operate under terms of this Agreement or terminate this Agreement pursuant to Section 8 herein above.  The Ancillary Rights granted to ZUFFA by Fighter pursuant to Section 6 herein above shall not be affected by this suspension, and shall remain in full force and effect during the suspension, and thereafter.

  12.  **Right of First Negotiation and Right to Match.**

   a.  Right of First Negotiation: Fighter agrees to negotiate exclusively with ZUFFA regarding the extension or renewal of this Agreement for a period of sixty (60) days following the expiration of the Term of this Agreement and any extensions thereto. In the event that ZUFFA and Fighter fail to agree to the terms and conditions of an extension or renewal of this Agreement within sixty (60) days, Fighter will have the opportunity to negotiate with any other promotional entity; however, ZUFFA will have the option to match any offer or agreement between Fighter and another promotional entity pursuant to subsection (b).

   b.  Right to Match: For one (1) year following the expiration of the Term of this Agreement and any extensions, Fighter shall not contract with another promoter unless Fighter shall first deliver to ZUFFA a written notice of all material terms and conditions of the offer to Fighter

13

(including the name of the prospective promoter). Such notice shall constitute an exclusive, irrevocable offer (the "Offer") to contract with ZUFFA on such terms and conditions; and ZUFFA shall have a period of fifteen (15) business days in which to accept the Offer. If ZUFFA does not accept the Offer, Fighter may then enter into an agreement with the previously named other promoter during the ten (10) business day period (the "Contract Period") following expiration of such fifteen (15) business days, upon the same terms and conditions as included in the Offer. If Fighter proposes to enter into a contract with a third party upon terms and conditions that are less favorable to Fighter than the terms and conditions included in the Offer during the Contract Period, then ZUFFA shall have the right to match such terms and enter into a contract with Fighter for such other Bout.

13.     **Representations, Warranties, Covenants and Indemnification.**

a.      Fighter represents, warrants and covenants to ZUFFA that he is free to enter into this Agreement and has not heretofore and will not hereafter enter into any contract, option, agreement or understanding, whether oral or written, which conflicts in any material respect with the provisions hereof or which purports to grant similar or conflicting rights to any person, firm, or entity other than ZUFFA, or which would or might interfere with Fighter's full and complete performance hereunder or the free and unimpaired exercise by ZUFFA of any of the rights granted to ZUFFA under this Agreement. Fighter further represents and warrants to ZUFFA that there are no claims pending or threatened or any litigations affecting Fighter which would or might interfere with the full and complete exercise or enjoyment by ZUFFA of any rights granted hereunder.

b.      Fighter further acknowledges that ZUFFA is entering into this Agreement in reliance upon the foregoing warranties, representations and covenants, and Fighter agrees to indemnify, defend and hold ZUFFA and its affiliates harmless from and against any and all liability,

14

cost, or expense, including reasonable attorney's fees, ZUFFA or its affiliates may sustain or incur as a result of the breach of inaccuracy of any said warranties, representations and covenants.

      c.      Fighter shall indemnify, defend and hold harmless ZUFFA and its officers, employees, representatives and agents from and against any suits, claims, actions, proceedings, expenses (including reasonable attorneys' fees and ZUFFA shall have the right at its discretion to hire its own attorney) and damages arising from any actual or claimed breach of any of Fighter's representations, warranties and covenants herein.

      14.     **Equitable Relief.**

      Fighter acknowledges that his services as a professional fighter and the Ancillary Rights granted to ZUFFA herein are special, unique, extraordinary, irreplaceable and of peculiar value, and that in the event of Fighter's breach or threatened breach of this Agreement, ZUFFA would suffer irreparable damage which could not be reasonably or adequately compensated by an action of law. Accordingly, Fighter expressly agrees that in the event of such breach or threatened breach, ZUFFA shall be entitled, in addition to all other rights and remedies available to it, to obtain equitable relief, including, but not limited to, an injunction against such breach in any court of competent jurisdiction, and that Fighter will not assert as a defense in any such action that ZUFFA has an adequate remedy at law.

      15.     **Fighter's Conduct.**

      a.     During the Term of this Agreement and any extensions, Fighter agrees to conduct himself with due respect to the social conventions and public morals and decency, and Fighter will not commit any act or become involved in any situation or occurrence or make any statement which will degrade Fighter, ZUFFA or its officers, managers or owners, in society or bring

15

ZFL-0105067

Fighter, ZUFFA, or its owners or officers, into public disrepute, contempt, scandal or ridicule or will shock, insult or offend the community or any organized group therein, or reflect unfavorably upon ZUFFA or its officers or owners, any current or proposed sponsor of the Event, or such sponsor's advertising agency, or any network or station over which the Event is to be broadcast. In the event that Fighter fails to comply with the provisions of this Section, or in the event that any of the foregoing has happened in the past, ZUFFA may terminate Fighter's participation in the Event in which case ZUFFA shall not be obligated to make any payment to Fighter or provide any other benefit to Fighter set forth herein.

        b.    Fighter, as well as all persons traveling with Fighter, shall maintain a high standard of sportsmanship and conduct themselves in a professional manner prior to, during, and following the Event. ZUFFA is authorized, in addition to any other remedies available to it hereunder, to suspend Fighter for any breach by Fighter (or any person traveling with Fighter) of this Section. In the event of a breach by Fighter of this Section, ZUFFA may terminate Fighter's participation in the Event and this Agreement in which case ZUFFA shall not be obligated to make any payment to Fighter or provide any other benefit to Fighter set forth herein.

        c.    Fighter shall not utilize or be involved in any manner whatsoever in any advertising material or publicity materials that contains any language or material which is obscene, libelous, slanderous or defamatory and will not violate or infringe upon, or give rise to any adverse claim with respect to, any common-law or other right whatsoever (including, without limitation, any copyright, trademark, service mark, literary, dramatic, music or motion picture right, right of privacy or publicity, contract right or moral rights of authors) of any person, or violate any other law whatsoever. In the event of a breach by Fighter of this Section, ZUFFA may terminate Fighter's

16

CONFIDENTIAL

ZFL-0105068

participation in the Event and this Agreement in which case ZUFFA shall not be obligated to make any payment to Fighter or provide any other benefit to Fighter set forth herein.

        d.      Fighter shall maintain eligibility to fight with the Athletic Commission having jurisdiction over the event. In the event that Fighter's license to participate in events is suspended or revoked by the Athletic Commission having jurisdiction over an event, ZUFFA may terminate this Agreement in addition to terminating Fighter's participation in any event, in which case ZUFFA shall not be obligated to make any payment to Fighter or provide any benefit to Fighter set forth herein except for purses already earned.

        e.      In the event that Fighter tests positive for any controlled substance, including but not limited to, marijuana, cocaine, methamphetamine, in any pre-event or post-event drug tests, ZUFFA shall have the right to terminate this Agreement, in which case ZUFFA shall not be obligated to make any payment to Fighter or provide any other benefit to Fighter set forth in this Agreement; provided, however, that if Fighter tests positive for any controlled substance in any pre-event or post-event drug test, Fighter shall have the right to be re-tested once within five (5) days after testing positive in any said drug test. The results of the re-test shall determine ZUFFA's right to terminate this Agreement pursuant to the terms of this Agreement. In the event that Fighter tests positive for any controlled substance in a post-fight drug test, payment of Fighter's purse will be subject to the authority of the Athletic Commission having jurisdiction over the event, and ZUFFA shall make payments only in accordance with the recommendations of said Athletic Commission.

        f.      The termination of this Agreement by ZUFFA pursuant to the terms of this Section of this Agreement, or any other provision of this Agreement or any other agreement between Fighter and ZUFFA, shall not affect nor terminate the grant of the Ancillary Rights by Fighter to

17

ZFL-0105069

ZUFFA pursuant to Section 6 herein above, which grant shall survive any said termination.

16.     **Insurance.**

ZUFFA shall have the right, at its election, to obtain, at ZUFFA's cost and expense, life insurance or other insurance upon Fighter, including but not limited to insurance against the failure of Fighter to appear and to participate in any Bout, for the benefit of ZUFFA, and in such amounts as ZUFFA may determine to be necessary; and neither Fighter nor the managers shall have any right, title or interest in such insurance. Fighter and the managers agree to cooperate and assist in ZUFFA's obtaining such insurance, including submitting to such physical or other examinations of Fighter and furnishing such information and medical records as may be required to obtain such insurance.

17.     **Prohibition against use of ZUFFA'S and Sponsors' Intellectual Property Rights.**

a.      Fighter shall not be permitted to utilize in any manner whatsoever any of ZUFFA's intellectual property rights relating to the events which are the subject of this Agreement, including, but not limited to, the names and marks "Ultimate Fighting Championship", "UFC", the "Octagon," "Ultimate Fighting," and any logos, pictures or other representations of ZUFFA's intellectual property.

b.      Fighter shall not be permitted to utilize in any manner whatsoever the intellectual property rights of any of ZUFFA's sponsors including, but not limited to, the intellectual property rights of iN DEMAND, L.L.C. and its names and marks "iND" and "iN DEMAND", and any logos, pictures or other representations of such intellectual property.

18.     **Assignment.**

ZUFFA shall have the absolute right to assign, license, or transfer any or all of the

18

rights granted to it hereunder, including, without limitation, the right to co-promote the Bouts in association with any one or more persons or entities of its choosing. ZUFFA may assign any of its respective obligations hereunder without the other's consent. The obligations of Fighter hereunder, however, are personal to him, and neither the benefits nor the duties of Fighter hereunder shall be assigned, pledged or transferred for any reason.

19.     **Other Activities of ZUFFA.**

Nothing herein shall prevent ZUFFA from engaging in promotion activities for any other professional fighter, including others in the same weight class as Fighter, or any other activities.

20.     **Intent in Signing**.

Fighter acknowledges and agrees that his signing of this Promotional Rights Agreement is solely for the purpose of obtaining certain promotional services and commitments of ZUFFA upon the terms and conditions of this Agreement and that Fighter has not been required to sign this Agreement or to grant any of the rights herein granted to ZUFFA as a condition precedent to Fighter's participation in any professional mixed martial arts match against another fighter who is under contract to ZUFFA.

21.     **Independent Contractor.**

Nothing herein contained shall be construed to constitute Fighter as an employee of ZUFFA or to appoint ZUFFA as the Fighter's agent, and ZUFFA shall have no financial interest in the compensation payable to the Fighter for engaging in any bout hereunder. It is intended that Fighter shall remain an independent contractor, responsible for his own actions and expenses including trainers, managers, sparring partners, training facilities, equipment, professional

19

                                                                                    ZFL-0105071

membership, sanctioning fees, and medical expenses. Fighter shall select and compensate his own manager and trainers.

22.    **Commercial Identifications.**

Fighter agrees that no wording, symbols, pictures, designs, names or other advertising or informational material for any beer, alcohol, beverage company, tobacco, casino and gaming companies, media companies including, but not limited to, HBO, ABC, SET, FOX, ESPN and any internet related company, any sponsor in conflict with ZUFFA's sponsors, or any sponsor causing injury to the reputation of ZUFFA, ZUFFA's sponsors, and/or their respective officers and owners, shall appear on the trunks, robe, shoes or other clothing worn by Fighter, his trainers, seconds or assistants during and/or at the Bout without the prior approval of ZUFFA and iN DEMAND, L.L.C.

23.    **Exclusivity.**

In consideration of the obligations of ZUFFA to secure, arrange for, and promote Bouts requiring Fighter's services, and to pay Fighter's purses, as provided herein, Fighter agrees that during the term hereof, Fighter shall not participate in any bouts other than Bouts promoted or co-promoted by ZUFFA and shall not render his services as a professional fighter to any person, firm or entity other than ZUFFA subject to Section 9 herein above.

24.    **Confidentiality.**

Fighter shall not disclose to any third party (other than his employees and agents (including consultants), in their capacity as such, on a need-to-know basis), any information with respect to the terms and provisions of this Agreement except: (i) to the extent necessary to comply with law or the valid order of a court of competent jurisdiction, in which event(s) Fighter shall so notify ZUFFA as promptly as practicable (if possible, prior to making such disclosure) and shall seek

20

confidential treatment of such information, (ii) as part of normal reporting or review procedure to his banks, auditors and attorneys and similar professionals, provided that such banks, auditors and attorneys and similar professionals agree to be bound by the provisions of this paragraph, and (iii) in order to enforce his rights pursuant to this Agreement. ZUFFA shall have the sole right to determine the timing and content of and to make any press announcements and other public statements regarding this Agreement. ZUFFA shall have the sole right to file this Agreement with any applicable athletic or fighting commissions and world sanctioning bodies.

25.    **Further Assurances.**

Fighter shall execute any and all additional documents or instruments necessary or desirable to effectuate the provisions of this Agreement, including, without limitation, the Bout Agreement and Standard Fighter Contract referenced in Section 3 above, or any other document required by ZUFFA, the local governmental authority with jurisdiction over the bout and/or the world organization(s) sanctioning the bout if applicable. No party hereto shall take any action or fail to take any action which action or failure shall frustrate the purposes of this Agreement and the benefits contemplated hereby.

26.    **Severability.**

Nothing contained in this Agreement shall require or be construed as to require the commission of any act contrary to any law, rule or regulation of any governmental authority, and if there shall exist any conflict between any provision of this Agreement and such law, rule or regulation, the latter shall prevail and the pertinent provision or provisions of this Agreement shall be curtailed, limited or eliminated to the extent necessary to remove such conflict, and as so modified, this Agreement shall continue in full force and effect.

21

27.   **Waiver.**

No waiver by any party of any breach or default hereunder shall be deemed to be a waiver of any preceding or subsequent breach or default. All waivers must be in writing, specify the breach or default concerned and be signed by the party against whom the waiver is sought to be enforced. The payment of any monies by any party shall not be deemed a waiver. This Agreement and the rights and obligations of the parties hereunder shall inure to the benefit of and be binding upon the permitted assigns, successors and affiliated entities of the parties hereto.

28.   **Benefit.**

The provisions of this Agreement are for the exclusive benefit of the parties who are signatories hereto and their permitted successors and assigns, and no third party shall be a beneficiary of, or have any rights by virtue of, this Agreement whether or not such third party is referred to herein.

29.   **Entire Agreement.**

Other than the agreements referred to in Section 3 above, this Agreement sets forth and integrates the entire understanding between Fighter and ZUFFA, and supersedes any and all prior or contemporaneous written or oral agreements or representations between the parties with respect to the subject matter hereof. It may not be altered, amended or discharged, except by a subsequent writing signed by the parties hereto. Descriptive headings of this Agreement are inserted for convenience only and do not constitute a part of this Agreement and shall not be considered for purposes of its interpretation. Any ambiguities shall be resolved without reference to which party may have drafted this Agreement.

22

CONFIDENTIAL

ZFL-0105074

30. **Counterparts/Facsimile.**

This Agreement may be executed in counterparts, each of which shall be deemed an

original and all of which shall together constitute one and the same instrument. Facsimile signatures

shall be as effective as originals.

31. **Notices.**

Any notice or other communications given or sent pursuant to this Agreement shall

be in writing and shall be deemed given when personally delivered, mailed by registered or certified

mail, return receipt requested, or delivered by facsimile transmission, to the respective parties at their

addresses indicated below, with copies to their respective attorneys as follows:

For ZUFFA:                     Dana White, President
                               ZUFFA, LLC
                               2960 West Sahara Ave., Ste. 100
                               Las Vegas, NV 89102
                               Fax:

                                   with a copy to:

                               Ike Lawrence Epstein, Esquire
                               Beckley Singleton Law Firm
                               530 Las Vegas Blvd. South
                               Las Vegas, NV 89101
                               Fax:
                                       and
                               Milton Chwasky, Esquire
                               250 West 57th Street, Suite 1023
                               New York, N.Y. 10019
                               Fax:

For Fighter                    Matt Hughes
                               c/o Monte Cox, Manager


                               Fax:
                               email: fiteiowa@aol.com

23

CONFIDENTIAL

ZFL-0105075

32.    **Applicable Law.**

This Agreement has been delivered at and shall be deemed to have been made at Las Vegas, Nevada, and shall be interpreted, and the rights and liabilities of the parties hereto determined, in accordance with the laws of the State of Nevada.

33.    **Consent to Jurisdiction; Venue and Arbitration.**

Any controversy between the parties involving and/or arising out of this Agreement shall be submitted to binding arbitration and shall be determined and settled by binding arbitration before a single arbitrator in the County of Clark, State of Nevada, in accordance with the rules of the American Arbitration Association, and that said arbitration shall be binding, with no right of appeal or rehearing unless either party violates an order precluding admitting certain evidence. The cost of Arbitration shall be borne by the losing party in such proportions as the Arbitrators decide. Each of the parties hereto irrevocably consents to the service of any process in any such action or proceeding by the mailing by first-class mail of a copy of the summons to such party at the respective address of such party as herein provided.

34.    **Legal Representation**

ZUFFA and Fighter were each represented by independent counsel or representative in preparing this Agreement and certify that each has had the opportunity to consult an attorney or other representative, appreciates the legal significance and consequences of signing this Agreement. Further, Fighter represents that Fighter is not relying upon any legal advice, including any tax advice, from ZUFFA or any representative or agent of ZUFFA.

24

CONFIDENTIAL                                                                                  ZFL-0105076

35. **Fighter's Sole Responsibility To Obtain Necessary Documentation Lawfully Permitting Fighter To Participate In The Bouts**

If Fighter is not a citizen of the country in which a Bout is to take place (i.e. not a citizen of the United States of America), Fighter shall solely be responsible for obtaining the necessary documentation, including any necessary work visas, lawfully permitting Fighter to participate in said Bout in the country where the event shall occur. Fighter shall forward copies of the necessary documentation evidencing Fighter's right to lawfully participate in the Bout to ZUFFA within thirty (30) days of the date of such Bout. If Fighter fails to provide the necessary documentation to ZUFFA within thirty (30) days of the date of said Bout, ZUFFA, in its sole discretion, shall have the right, but not the obligation, to (i) contract with another fighter to participate in the Bout in place of Fighter; (ii) cancel said Bout; or (iii) obtain the necessary documentation for Fighter and deduct the cost of such from the purse due to Fighter for said Bout. If ZUFFA elects to contract with another fighter or to cancel the Bout due to Fighter's failure to provide the necessary documentation to ZUFFA as provided for herein, ZUFFA shall be deemed to have satisfied one (1) of the Bouts to be promoted by ZUFFA pursuant to the terms of this Agreement, without any compensation due to Fighter for said Bout, and, further, ZUFFA shall be permitted to terminate this Agreement pursuant to Section 8 herein above..

36. **Careful Review**.

By signing this Agreement, Fighter acknowledges and warrants that this Agreement was carefully reviewed in its entirety by or to the Fighter and that this Agreement was signed and executed voluntarily and without reliance upon any statement or representation of or by ZUFFA, or any representative or agent of ZUFFA.

25

CONFIDENTIAL

ZFL-0105077

37. **Medical Testing.**

THIS AGREEMENT IS CONTINGENT UPON FIGHTER'S COMPLETION OF A FULL PHYSICAL MEDICAL EXAMINATION AND TESTING PRIOR TO EACH BOUT INCLUDING, BUT NOT LIMITED TO, AN EKG, CT SCAN AND MRI, AND TESTING FOR HIV, HEPATITIS B&C, AND DRUGS, AND SUCH OTHER TESTS AS ZUFFA MAY REQUIRE. THE MEDICAL EXAMINATION SHALL BE PERFORMED BY A NEUTRAL MEDICAL SERVICE PROVIDER DURING THE 30-DAY PERIOD IMMEDIATELY PRECEDING THE DATE OF EACH BOUT.   THE REPORT OF THE MEDICAL EXAMINATION OF FIGHTER CONTAINING THE RESULTS OF THE EXAMINATION AND TESTS SHALL BE DELIVERED TO ZUFFA NO LESS THAN ONE (1) DAY PRIOR TO ANY BOUT SCHEDULED PURSUANT TO THIS AGREEMENT. ALL COSTS ASSOCIATED WITH THE MEDICAL EXAMINATION AND TESTS ARE TO BE PAID BY FIGHTER. FIGHTER'S FAILURE TO PROVIDE THE MEDICAL EXAMINATION REPORT OR REFUSAL TO SUBMIT TO SUCH MEDICAL TESTING SHALL BE DEEMED A BREACH OF THIS AGREEMENT WARRANTING TERMINATION OF THIS AGREEMENT PURSUANT TO SECTION 8 HEREIN ABOVE.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the dates set

forth below, the later of which shall be the Effective Date of this Agreement.

ZUFFA, LLC                                   FIGHTER

By: _____                  By: _____
Dana White, President                            Matt Hughes

                                             Social Security No: ███████████

                                             Passport No.: ███████████

                                             Work Visa No.: _____

Dated: 10 - 8 - 01                           Dated: 10-8-01

G:\MN\FZUFFA\MTKM\TX\RCH\TEB\hughesf.wpd

26

CONFIDENTIAL

ZFL-0105078