# EXHIBIT 116

# Excerpts of Deposition of Lorenzo J. Fertitta

1

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

Cung Le, Nathan Quarry, Jon )
Fitch, on behalf of          )
themselves and all others    )
similarly situated,          )
                             )
              Plaintiffs,    )
                             )
       v.                    ) Lead Case No.
                             ) 2:15-cv-01045-RFB-(PAL)
Zuffa, LLC, d/b/a Ultimate   )
Fighting Championship and    )
UFC,                         )
                             )
              Defendant.     )
_____)

C O N F I D E N T I A L

VIDEOTAPED DEPOSITION OF LORENZO J. FERTITTA

Las Vegas, Nevada

March 23, 2017

9:09 a.m.

REPORTED BY:
CYNTHIA K. DuRIVAGE, CSR #451
JOB NO. 49608

LORENZO J. FERTITTA - CONFIDENTIAL

**162**

1  contest, and they turn that down, then we would get
2  additional time to be able to perform on our end of
3  the contract.
4      Q.  So the contract is extended, effectively?
5      A.  It extends, correct.
6      Q.  Okay.  And then, does Zuffa, say, from 2009
7  to August of 2016, did it from time to time renew
8  contracts with fighters?
9      A.  Yes.
10     Q.  And can you think of any instances where a
11 fighter completed the term of his or her contract;
12 that is, the time period or the number of fights were
13 completed as specified in the contract?
14     A.  Yes.
15     Q.  And how many of those are there that you
16 can think of?
17     A.  There's quite a bit.  I can specifically
18 remember some examples for you.
19         Alistar Overeem being one.  I believe
20 Gilbert Melendez was one.  Benson Henderson is
21 another.
22     Q.  With respect to those fighters that did not
23 complete the full term of their contract, like the
24 three that you've identified thus far, would Zuffa
25 generally seek to renew a contract before the term

**163**

1  expired?
2      MR. ISAACSON:  Objection.  I thought he
3  named people who did, that did complete the term.
4      MR. DELL'ANGELO:  He said with the
5  exception of the three that he had --
6      MR. ISAACSON:  He said --
7      MR. DELL'ANGELO:  I'll withdraw the
8  question.
9      MR. ISAACSON:  No, he said with respect --
10     MR. DELL'ANGELO:  I'll withdraw the
11 question and restate it.  Thank you.
12 BY MR. DELL'ANGELO:
13     Q.  So with the exception of the three
14 individuals whom you've identified, Mr. Melendez,
15 Mr. Henderson, and Mr. Overeem, did Zuffa generally
16 seek to renew fighters' contracts before the term was
17 completed?
18     A.  Yes.
19     Q.  And why so?
20     A.  As a general business practice, one of the
21 things that we would do was, I think which any
22 business would do, you would look to see how many
23 fights are left on a fighter's contract, how much
24 time and what the term is left on the fighter's
25 contract.

**164**

1      And, you know, certainly, if it was a
2  fighter that we were interested in going forward and
3  wanting to have them fight for us, we would be
4  willing to sit down with them and offer a new set of
5  terms for a new contract.
6      Q.  With respect to the three fighters that you
7  referred to, Overeem, Melendez, and Henderson, whom
8  you believe completed their contracts, were the
9  contracts that you were referring to with Zuffa or
10 some other organization that Zuffa acquired?
11     A.  So with Alistar Overeem, I believe it was a
12 Zuffa contract.  With Benson Henderson, it was a
13 Zuffa contract.
14     I can't remember if Gilbert Melendez was
15 fighting under a Forza contract, a Zuffa contract, or
16 a Strikeforce contract.
17     You know, there's also others.  You know,
18 Phil Davis, I know, completed his -- fought out his
19 UFC contract.  So it happened.  And that's obviously
20 up to the fighter.  I mean, it's their decision.
21     Q.  I'm sorry.  What's their decision?
22     A.  Whether or not to finish out their
23 contract.
24     Q.  Well, it could -- that decision could
25 depend on any number of factors, such as them getting

**165**

1  another bout, correct, meaning -- that is, meaning
2  that the fighter may be asked to extend the contract
3  before he or she is provided with a bout or a bout
4  agreement under the existing contract, correct?
5      MR. ISAACSON:  Objection to form, vague.
6      THE WITNESS:  Well, no, that wouldn't be
7  the case.  Otherwise, Alistar, Gilbert, Phil Davis,
8  Benson wouldn't have completed their contract.
9  BY MR. DELL'ANGELO:
10     Q.  It wouldn't be the case with respect to
11 them, but what about with others whom Zuffa had
12 contracts with?
13     A.  No, that was not our general practice.
14     Q.  When you say, "general practice," what do
15 you mean?
16     A.  What I mean is that we were contracted for,
17 as we mentioned, a number of fights that also
18 included a number of fights over a term, over a time
19 period.
20     It was our practice to not breach contracts
21 and live up to the contracts that we signed.  That's
22 what I mean by that.
23     Q.  I see.  I guess, though, with respect to
24 renewals, aren't we really talking about a different
25 thing; that is, the general practice that you've --

42 (Pages 162 to 165)

166

1  as you've used that term -- the general practice of
2  re-signing a fighter to a new contract before it
3  expires versus breaching a contract are really
4  different things, aren't they?
5       MR. ISAACSON:  Objection, form,
6  argumentative.
7       THE WITNESS:  Clearly, they are two
8  different things, yes.
9       So our intention was not to breach
10 contracts, and yes, we did offer, many times,
11 fighters who were not done with their contract new
12 contracts.  But also, many times, fighters approached
13 us and said they wanted a new contract before their
14 contract term was complete as well.
15 BY MR. DELL'ANGELO:
16    Q.  Mr. Fertitta, I'm handing to the
17 reporter -- I'm going to cause to be handed to the
18 reporter what will be marked as Exhibit 24.
19       (Exhibit 24 was marked for
20       identification by the reporter.)
21 BY MR. DELL'ANGELO:
22    Q.  So I will represent to you, Mr. Fertitta,
23 that Exhibit 24 is a series of text messages that
24 were produced by Zuffa's counsel in the litigation,
25 and the exhibit begins at ZFL-1897652.

167

1       Would you just look at the second row of
2  the first column of the document, you'll see the text
3  in the box is plus
4       Do you see that?
5    A.  Yes.
6    Q.  Is that your telephone number?
7    A.  Yes.
8    Q.  And is that telephone number associated
9  with a device that you used to send and receive texts
10 in your capacity as an owner or executive at Zuffa?
11    A.  Yes.
12    Q.  So would you turn to page what is numbered
13 174 of the document, the control number is
14 ZFL-1897825.
15       And can you tell me who Audie Attar is?
16    A.  I'm sorry, what was the page number?
17    Q.  It's page 174 of the document.  The control
18 number is ZFL-1897825.
19       MR. ISAACSON:  174 of 178.
20 BY MR. DELL'ANGELO:
21    Q.  While you're doing that, that who is
22 Audie Attar?
23    A.  Audie Attar is a manager of mixed martial
24 arts fighters.  And I think he manages some
25 professional athletes in other sports, football.

168

1    Q.  And he is somebody that you dealt with in
2  your capacity at Zuffa?
3    A.  Yes.
4    Q.  Do you recall that Mr. Attar represented a
5  fighter Mike Bisping?
6    A.  Yes, he does.
7    Q.  Okay.  Did you have communications with
8  Mr. Attar regarding his representation of Mr. Bisping
9  in your capacity at Zuffa?
10   A.  Bisping was not one of the fighters that I
11 typically took the lead on.  That was, for whatever
12 reason, more Dana.  I dealt with Audie primarily
13 because he represented Conor McGregor.  That was the
14 fighter that I dealt with primarily with Audie.
15      I mean, I may have had conversations, I
16 probably did have some conversations with him at some
17 point about Michael Bisping, but Michael was one of
18 the fighters that had a better relationship with
19 Dana White.
20   Q.         Okay.  Returning to page
21 174 of 178 on Exhibit 24, would you turn your
22 attention, please, to the fourth row from the bottom.
23      And you'll see in the front column, it
24 says, "Audie Attar," and then, the "To" reflects your
25 phone number, the

169

1    A.  Yes.
2    Q.  Do you see that?
3    A.  Yes.
4    Q.  Okay.  If you move over to the column
5  marked "Text" --
6    A.  Yes.
7    Q.  -- in the far right end of the page.
8    A.  Yes.
9    Q.  It says:
10       "Hi Lorenzo.  Joe Silva told me to
11       reach out to you and Dana regarding
12       Mike Bisping.  He said Mike needs to
13       sign an extension before he books
14       his next fight because he has one
15       fight remaining on his current
16       contract.  Please let me know if
17       you're available to meet in the
18       coming weeks.  I'd be happy to fly
19       in for the day if need be.  Hope you
20       are well.  Audie Attar."
21       Do you see that?
22   A.  Yes.
23   Q.  Do you recall whether or not you met with
24 Mr. Attar regarding the extension of Mr. Bisping's
25 contract?

LORENZO J. FERTITTA - CONFIDENTIAL

## 302

```
STATE OF _____ )
                        ) :ss
COUNTY OF _____ )


    I, LORENZO J. FERTITTA, the
witness herein, having read the foregoing
testimony of the pages of this deposition,
do hereby certify it to be a true and
correct transcript, subject to the
corrections, if any, shown on the attached
page.


            _____
             LORENZO J. FERTITTA




Sworn and subscribed to before
me, this        day of
         , 2017.

 _____
         Notary Public
```

## 303

CERTIFICATE OF REPORTER

I, Cynthia K. DuRivage, a Certified Shorthand Reporter of the State of Nevada, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were duly sworn; that a record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction; that the foregoing transcript is a true record of the testimony given.

I further certify I am neither financially interested in the action nor a relative or employee of any attorney or party to this action.

Reading and signing by the witness was requested.

IN WITNESS WHEREOF, I have this date subscribed my name.

Dated: April 6th, 2017

            _____
              CYNTHIA K. DuRIVAGE
                 CCR No. 451

## 304

INSTRUCTIONS TO WITNESS

Please read your deposition over carefully and make any necessary corrections. You should state the reason in the appropriate space on the errata sheet for any corrections that are made.

After doing so, please sign the errata sheet and date it.

You are signing same subject to the changes you have noted on the errata sheet, which will be attached to your deposition.

It is imperative that you return the original errata sheet to the deposing attorney within thirty (30) days of receipt of the deposition transcript by you. If you fail to do so, the deposition transcript may be deemed to be accurate and may be used in court.

## 305

E R R A T A

I wish to make the following changes, for the following reasons:

PAGE LINE
___ ___ CHANGE:_____
REASON:_____
___ ___ CHANGE:_____
REASON:_____
___ ___ CHANGE:_____
REASON:_____
___ ___ CHANGE:_____
REASON:_____
___ ___ CHANGE:_____
REASON:_____
___ ___ CHANGE:_____
REASON:_____

_____     _____
 WITNESS' SIGNATURE            DATE

77 (Pages 302 to 305)