1

2

3

4 **UNITED STATES DISTRICT COURT**

5 **DISTRICT OF NEVADA**

6 * * *

7 CHUNG LE, NATHAN QUARRY, JON
   FITCH, BRANDON VERRA, LUIS JAVIER       Case No. 2:15-cv-01045-RFB-BNW
8 VASQUEZ, and KYLE KINGSBURY, *on
   behalf of themselves and all others similarly*       **ORDER**
9 *situated,*

10                          Plaintiffs,

11             v.

12 ZUFFA, LLC D/B/A ULTIMATE
   FIGHTING CHAMPIONSHIP AND ZUFFA,
13
                           Defendant.
14

15

16         Before the Court are Defendant Zuffa, LLC's renewed Motion for Summary Judgment

17 (ECF No. 878), Defendant's Motions to Exclude regarding Dr. Singer (ECF No. 929), Guy Davis

18 (ECF No. 930), and Dr. Zimbalist (ECF No 931), Plaintiffs' Motion to Strike (ECF No. 933),

19 Plaintiffs' Motion to Shorten Time (ECF No. 934), and a Joint Stipulated Proposed Pre-Trial

20 Schedule (ECF No. 928). The Court provided a comprehensive summary of the factual and

21 procedural background of the case in its Order on Class Certification (ECF No. 839) and will not

22 provide a separate recitation of either here.

23         The Court's order follows.

24

25 **I.    THE MOTION TO STRIKE AND THE MOTIONS TO EXCLUDE**

26         First, the Court considers Plaintiffs' Motion to Strike Zuffa's three Motions to Exclude.

27 For the reasons below, the Court grants the Motion to Strike as it relates to Zuffa's Motions to

28 Exclude regarding Dr. Singer and Dr. Zimbalist and denies the Motion to Strike as to Guy Davis.

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Further, district courts have inherent power to control their own dockets, including the power "to determine what appears in the court's records" and to strike items from the docket to address conduct that is improper but does not warrant dismissal. Ready Transp., Inc. v. AAR Mfg., Inc., 627 F.3d 402, 404–05 (9th Cir. 2010).

Here, Plaintiffs argue that Zuffa's three Motions to Exclude were filed both untimely and violate the law of the case. Specifically, Plaintiffs argue the Court imposed a deadline for motions to exclude expert testimony for February 16, 2018, Zuffa complied with that deadline by filing three timely motions to exclude ("the Prior Motions to Exclude"), the Court addressed the Prior Motions to Exclude in the Court's Order on Class Certification, and that Zuffa has provided no justification nor excuse for the late filing of the motions or justification for reconsideration of the class certification order. Plaintiffs also aver that Zuffa has included an untimely and unauthorized new expert disclosure, in the form of the Declaration of Gregory K. Leonard. Defendant Zuffa counters that the Court did not decide Zuffa's Prior Motions to Exclude and, rather, the Court left the door open for renewed motions. Further, Zuffa argues that the renewed Motions to Exclude present an opportunity for the Court to consider the 2023 amendment to the Rule 702 Standard and other recent developments.

The Court agrees with the Plaintiffs' Motion as it relates to the expert opinions of Dr. Hal Singer and Dr. Andrew Zimbalist. In its August 9, 2023, Order on Class Certification, the Court evaluated the full, well-developed record and found the opinions of Dr. Singer and Dr. Zimbalist satisfied the Daubert and Federal Rule of Evidence 702 standards. Order, Cung Le v. Zuffa, LLC, No. 2:15-cv-01045-RFB-BNW, 2023 U.S. Dist. LEXIS 138702, at *21–24 (D. Nev. Aug. 9, 2023) (hereinafter "Class Certification Order"); see also Fed. R. Evid. 702; Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993) (establishing the standard codified in Rule 702). In the Class Certification Order, the Court made it clear that it was resolving the then-pending motions to exclude the testimony of Dr. Singer and Dr. Zimbalist and considered the testimony of all party experts as required at the certification stage. See also Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC, 31 F.4th 651, 665 (9th Cir. 2022) (holding challenges to expert evidence

may be brought and should be resolved at the class certification stage). The Court finds that its Certification Order was clear in its finding of the reliability and validity of two of the Plaintiffs' experts—Singer and Zimbalist. To the extent the Defendant was confused about this finding, the Court, which is in the best position to interpret its own orders, reiterates it here. The Court further finds that Zuffa has not provided a sufficient or adequate legal basis for the Court to reconsider its finding regarding these two experts in its Certification Order. Therefore, the Court finds the instant Motions to Exclude regarding Dr. Singer and Dr. Zimbalist are untimely and that, in any event, they are substantively insufficient.

The Court will also address briefly the Declaration of Dr. Leonard. The agreed upon and ordered deadline for the disclosure of expert reports was October 27, 2017. Zuffa argues that "Dr. Leonard did not seek to re-do the work completed by Zuffa's other experts" and that Dr. Leonard's Declaration is justified by changes to Rule 702 and the exclusion of Dr. Singer's testimony in another case. Despite the chance to disclose and present similar testimony previously or seek the Court's permission to file such a declaration late or even seek a clarification regarding the limits of the Court's orders on discovery and ruling on the Prior Motions to Exclude, Zuffa filed a new expert declaration, without notice or leave, in the middle of final dispositive motions and preparations for trial. The Court finds that Zuffa's justifications for its late filing are inadequate to explain its delay and that its late filing is prejudicial to the Plaintiffs given the stage of the litigation.[1] Thus, the Court finds that Dr. Leonard's new Declaration is untimely and unjustified. Fed. R. Civ. P. 37(c)(1) (permitting the use of undisclosed information or witnesses where, in its discretion, the Court finds the failure was substantially justified or harmless); Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001) (explaining Rule 37(c)(1) was intended to give teeth to Rule 26 disclosures). This Declaration is therefore excluded from the record and consideration.

By contrast, the Court finds that Zuffa's remaining Motion to Exclude regarding Guy

---

[1] Zuffa bears the burden to prove the delay in its disclosure was justified or harmless. Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1107 (9th Cir. 2001). The Court finds that Zuffa's arguments regarding the Rule 702 Amendments and the exclusion or Dr. Singer's testimony do not establish either justification or a lack of harm to Plaintiffs from the untimely opinion. See note 4 infra.

Davis, CPA, is properly brought. While Zuffa previously raised a motion to exclude the expert testimony of Guy Davis, the Court did not unambiguously and fully resolve that motion regarding Davis. Therefore, the Court finds the Motion to Exclude the Testimony of Plaintiffs' Expert Guy A. Davis is properly before the Court and, as such, denies Plaintiffs Motion to Strike as it regards that motion. See Daubert, 509 U.S. at 589 ("[The] trial judge must ensure that any and all [expert] testimony or evidence admitted is not only relevant, but reliable.").

The Court will address the Motion to Exclude regarding Guy Davis at the forthcoming hearing set for January 19, 2024. Because Zuffa filed its response rapidly and the Court then resolved the Motion to Strike, which underpins the Motion to Shorten Time, the Court denies the Motion to Shorten Time as moot.

## II.   MOTION FOR SUMMARY JUDGMENT

The Court next considers Zuffa's renewed Motion for Summary Judgement. For the reasons below, the Motion is denied.

### A.  Legal Standard

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing a matter determines which facts are material to a case. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing the absence of material fact. Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to show specific facts demonstrating a genuine factual dispute for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014).

However, the nonmoving party may not merely rest on the allegations of their pleadings. They must produce specific facts by affidavit or other evidence showing a genuine issue of fact. Anderson, 477 U.S. at 256. In other words, the nonmoving party "must do more than simply show

1    that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a

2    whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine

3    issue for trial." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation

4    marks omitted). It is improper for the Court to resolve genuine factual disputes or make credibility

5    determinations at the summary judgment stage. <u>Zetwick v. Cty. of Yolo</u>, 850 F.3d 436, 441 (9th

6    Cir. 2017) (citations omitted).

7         **B.  Incorporation of Findings of the Class Certification Order**

8         The Court now turns to determining whether there is "no *genuine* issue of *material* fact."

9    <u>Anderson</u>, 477 U.S. at 247–48 (emphasis original). For the reasons below, the Court finds that

10   based upon the record and its prior findings there are genuine issues of disputed fact in the case

11   requiring a trial on the merits.

12        First, the Court finds that its Certification Order reviewed relevant admissible evidence and

13   considered the substantive issues in dispute in the Defendant's Motion for Summary Judgment.

14   Specifically, the remaining disputed class action claims are alleged violations of Section 2 of the

15   Sherman Antitrust Act. 15 U.S.C. § 2. The elements of a claim for such antitrust action are: (1) the

16   existence of an antitrust violation; (2) "antitrust injury" or "impact" flowing from that violation;

17   and (3) measurable damages. <u>See</u> <u>Big Bear Lodging Ass'n v. Snow Summit Inc.</u>, 182 F.3d 1096,

18   1101–02 (9th Cir. 1999); <u>In re Hydrogen Peroxide Antitrust Litig.</u>, 552 F.3d 305, 311 (3d Cir.

19   2008), <u>as amended</u> (Jan. 16, 2009). Plaintiffs' claim is that Zuffa violated Section 2 based on its

20   alleged monopsony power, that is, where a single buyer has concentrated power on the buyer side

21   of the market.[2] To show a violation of antitrust law here, Plaintiffs must show Zuffa (1) possessed

22   monopsony power in the relevant markets, (2) willfully acquired or maintained its monopsony

23   power through exclusionary conduct, and (3) caused antitrust injury through such conduct. <u>Am.</u>

24   <u>Pro. Testing Serv. Inc. v. Harcourt Brace Jovanovich Legal & Pro. Publ'ns, Inc.</u>, 108 F.3d 1147,

25

26        [2] "Monopsony is a market situation in which there is a single buyer . . . monopsony and monopsony power
     are the general equivalent on the buying side of monopoly and monopoly power on the selling side." <u>United States v.</u>
27   <u>Syufy Enters.</u>, 903 F.2d 659, 663 n.4 (9th Cir. 1990). Because of the symmetrical relationship between monopsony
     and monopoly power, they are subject to similar legal standards. <u>Weyerhaeuser Co. v. Ross-Simmons Hardwood</u>
28   <u>Lumber Co., Inc.</u>, 549 U.S. 312, 320 (2007).

1151 (9th Cir. 1997).  Market power is demonstrated through either direct evidence (e.g., in a monopsony, restricted purchases and subcompetitive prices) or indirect evidence (by defining the market, showing defendant owned a dominant share, and showing significant barriers to entry). Rebel Oil Co. v. Atl. Richfield Co., 51 F.3d 1421, 1434 (9th Cir. 1995).

In the earlier Order on Class Certification, the Court found that Plaintiffs had presented sufficient evidence to demonstrate by a preponderance of the evidence that Defendant had committed the alleged Sherman Act violation on a classwide basis. See Class Certification Order, at 21 (holding that Plaintiffs had established "(1) the existence of a scheme or conduct which violates antitrust law, (2) that the scheme was, or is, commonly applied to the class, (3) that the common application of that scheme led to common or similar injury among the class, and (4) that there are measurable monetary damages proven by common evidence which arise from the anticompetitive conduct and not procompetative conduct.").

Second, the Court finds that the relevant and admissible evidence it must now review and consider on summary judgement is duplicative of the evidence that it reviewed for its Certification Order, that the standard at certification was in fact higher than for summary judgement, and that, therefore, its reasoning and findings in its Certification Order would and do apply with equal force to Defendant's Motion for Summary Judgment.

A party seeking to certify a class under Federal Rule of Civil Procedure 23 bears the burden of showing that they have satisfied "[T]he burden of establishing that the prerequisites of Rule 23 [is] satisfied by a preponderance of the evidence." Olean, 31 F.4th at 665 (joining sister circuits in this conclusion). Where, as here, the class is based on proving a common question predominates, "[c]onsidering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action.'" Id. (quoting Erica P. John Fund, Inc. v. Halliburton Co., 563 U.S. 804, 809 (2011) (quoting Fed. R. Civ. P. 23(b)(3))). A district court must engage in a "rigorous analysis," often requiring some evaluation of the "merits of the plaintiff's underlying claim," before finding that the prerequisites for certification have been satisfied. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011); see also Comcast Corp. v. Behrend, 569 U.S. 27, 33-34 (2013). Moreover, and importantly, the standard at certification—

preponderance—is, in antitrust cases like this one, more exacting than the standard at summary judgment which requires only a genuine issue of disputed fact. This is especially the case here where a district court must (and did) weigh and resolve fundamental disputes between the parties' experts. Olean, 61 F.4th at 666 (holding that class certification includes "weighing conflicting expert testimony" and "resolving expert disputes") (internal citations omitted).

The Court finds that the evidence submitted for both class certification and summary judgement is overlapping and admissible. Only admissible evidence can be considered in a ruling on summary judgment. Fed. R. Civ. P. 56(e); Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir. 2002). Evidence must be authenticated or presented in a form that would be otherwise admissible at trial. See Fed. R. Civ. P. 56(c)(2); id., advisory comm. note to 2010 amendments ("The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."); Fed. R. Evid. 901(a); see also Fraser v. Goodale, 342 F.3d 1032, 1037 (9th Cir. 2003) ("Because the diary's contents could be presented in an admissible form at trial, we may consider the diary's contents in the Bank's summary judgment motion."). To be considered, expert declarations must be properly disclosed or the proponent of the evidence must show the failure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1); Fed. R. Civ. P. 26(a) (outlining disclosure requirements). "Expert opinion is admissible and may defeat summary judgment if it appears the affiant is competent to give an expert opinion and the factual basis for the opinion is stated in the affidavit, even though the underlying factual details and reasoning upon which the opinion is based are not." Walton v. U.S. Marshals Serv., 492 F.3d 998, 1008 (9th Cir. 2007) (quoting Bulthuis v. Rexal Corp., 789 F.2d 1315, 1318 (9th Cir. 1985) (per curiam)); Rebel Oil, 51 F.3d at 1435. In the context of class certification, evidence must also be admissible. Olean, 31 F.4th at 665 (citing Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 454–55 (9th Cir. 2016). The Court finds that the evidence it considered at class certification, including the written expert reports, sworn expert/witness testimony during certification and other documentary evidence, is both admissible and relevant for the purposes of summary judgment.[3] Significantly, the Order on Class Certification considered and found admissible the opinions of Dr. Singer and Dr. Zimbalist

---

[3] The Court also finds that Defendant has not raised any substantive or meritorious objections to the admissibility of such evidence. Indeed, the Defendant relies upon such evidence equally.

1   under the standard of <u>Daubert</u>, 590 U.S. 579 and Rule 702 of the Federal Rules of Evidence.

2   Therefore, the Court finds that the evidence considered at Class Certification is admissible for the

3   purpose of establishing disputes of material fact at summary judgment.[4]

4        Taken together, the Court's prior Class Certification Order found that admissible evidence

5   satisfied each part of the substantive law to a preponderance. Here, the Parties have submitted

6   substantially the same evidence that the Court considered at the class certification stage. As review

7   of a near carbon copy record leads to a finding of genuine factual issues by the summary judgment

8   standard, the Court incorporates its reasoning and findings from the Class Certification Order here

9   by reference and finds that that, for the reasons outlined in that Certification Order and viewing

10  the evidence in the light most favorable to the Plaintiffs, Plaintiffs have established genuine

11  disputes for each material fact. <u>See</u> Class Certification Order; <u>see also</u> <u>Anderson</u>, 477 U.S. at 248

12  ("[T]he evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

13       Having carefully considered the parties arguments here, intervening developments,[5] and

14  carefully considered the record and law previously relied upon in the Class Certification Order,

15  the Court finds no reason to deviate from its prior reasoning and findings. That is, the Court now

16          ———————————————

17     [4] The Court does find that while it may weigh and resolve disputes as to expert opinions at the class
18  certification stage pursuant to Olean, it does not find that such weighing and resolution is appropriate or authorized at
   the summary judgment stage of this litigation. The Court therefore considers this expert testimony simply in the
19  context of establishing genuine issues of disputed fact. The Court finds that, as the Plaintiffs' experts established by a
   preponderance their opinions, this same admissible evidence is sufficient to establish genuine issues of disputed fact
20  for the instant motion for summary judgment.

21     [5] For example, the Court has carefully considered the recent amendment to Federal Rule of Evidence 702,
   which clarified (1) that a court may not admit expert testimony unless the proponent establishes it is "more likely than
22  not" admissible and (2) that the expert's opinion must reflect "a reliable application of the principles and methods to
   the facts of the case." Fed. R. Evid. 702 (as amended December 1, 2023). This amendment codified what was already
23  the prevailing understanding of Rule 702's requirements. <u>See, e.g.</u>, Fed. R. Evid. 702 advisory committee's note to
   2023 amendments ("Nothing in the amendment imposes any new, specific procedures. Rather, the amendment is
24  simply intended to clarify that Rule 1004(a)'s requirement applies to expert opinions under Rule 702. Similarly,
   nothing in the amendment requires the court to nitpick an expert's opinion in order to reach a perfect expression of
25  what the basis and methodology can support.") For purposes of this Order, the Court confirms that its prior Order on
   Class Certification found that both Dr. Singer's and Dr. Zimbalist's testimony was admissible to a preponderance and
26  that they reflect a reliable application of the principles and methods to the facts of the case. On a careful
   reconsideration, the Court agrees this finding stands today. <u>See</u> <u>Daubert v. Merrell Dow Pharmaceuticals</u>, 509 U.S.
27  579 (1993) (setting forth the standard codified in Rule 702); <u>Elosu v. Middlefork Ranch Inc.</u>, 26 F.4th 1017 (9th Cir.
   2021) (elaborating at length the gatekeeping role of the district court in screening expert testimony without modifying
   the standard for procedural posture); <u>In re Capacitors Antitrust Litig.</u>, 17-md-02801-jd, 2020 U.S. Dist. LEXIS 32282,
28  at *5 (N.D. Cal. Feb. 21, 2020) ("There is no <u>Daubert</u> 'lite' served in the afternoon of litigation, to be followed by
   full-proof <u>Daubert</u> at the main course of trial.").

1   finds that Plaintiff has furnished sufficient evidence to sustain a reasonable jury finding that Zuffa

2   violated 15 U.S.C. § 2. See Olean, 31 F.4th at 667–68.

3       **C.  Discussion[6]**

4       The Court next reviews Zuffa's arguments for summary judgment and finds that, based

5   upon its prior findings and the record, each is repetitive and unavailing to change this result. Zuffa

6   presents several theories for summary judgment in its favor. First, Zuffa argues it is undisputed

7   that it increased the raw numbers for bouts, hiring, promotions, and compensation during the class

8   period and *ipso facto* Plaintiffs cannot establish direct evidence.[7] Plaintiffs argue they have

9   presented sufficient evidence to create a dispute as to wage suppression (i.e., subcompetitive

10  prices) and depressed output. The Court finds again that Plaintiffs had provided sufficient evidence

11  to establish direct evidence of market power by showing Defendant exercised sufficient market

12  power to suppress wages. This is sufficient to establish a dispute of material fact. See Epic Games,

13  Inc. v. Apple, Inc., 67 F.4th 946, 983 (9th Cir. 2023). That prices and outputs steadily increased is

14  not dispositive. See Rebel Oil, 51 F.3d at 1434 (holding a supracompetative price is one "above

15  competitive levels). Therefore, the Court finds that Plaintiffs have provided competent evidence

16  to establish a genuine issue of material fact regarding the direct evidence of monopsony power in

17  the relevant markets.

18      Second, Zuffa argues that undisputed evidence demonstrates a lack of barriers to entry,

19  which prevents establishing monopsony power through circumstantial evidence. Zuffa argues

20  competitors, like Bellator, routinely entered the market and expanded output during the class

21  period. In the Class Certification Order, the Court expressly rejected this argument. The Court

22  adopts that reasoning in full here and finds a genuine issue of material fact regarding the

---

23

24      [6] The Court's findings here incorporate, reiterate and supplement its prior findings.

25      [7] In support of this, Zuffa cites to an out of circuit case, In re Beef Indus. Litig., 907 F.2d 510, 516 (5th Cir.
    1990) (explaining that if the defendant had monopsony power, "it would take illegal advantage of that situation by
26  reducing its purchases . . . in order to reduce its costs and make a higher profit . . . ."), for the proposition that direct
    evidence of monopsony power requires showing *both* reduced purchases and, thus, reduced prices. While both reduced
27  prices and reduced purchases are strong evidence, controlling in-circuit precent establishes that *either* reduced
    purchases or reduced prices may be relied upon as direct evidence. Epic Games, Inc. v. Apple, Inc., 67 F.4th 946, 983
    (9th Cir. 2023) ("Importantly, showing a reduction in output is on form of direct evidence, but it 'is not the only
28  measure.'") (quoting O'Bannon v. NCAA, 802 F.3d 1049, 1070 (9th Cir. 2015) (rejecting the argument that showing
    an "anticompetitive effect" required showing "a reduction in output" by the plaintiffs)).

circumstantial evidence of monopsony power in the relevant markets.

Third, Zuffa argues that undisputed evidence demonstrates it did not prevent other competitors from signing fighters. The Court finds that Plaintiffs have presented evidence that Zuffa 'foreclosed' a large share of fighters (greater than 90 percent), especially top-ranked fighters (91–99 percent), from the market.

Zuffa also argues that Dr. Singer's foreclosure level analysis is flawed, and that Plaintiffs have failed the requisite showing of substantial foreclosure. Zuffa's primary argument is that Dr. Singer's methodology for 'weighing' is inaccurate.[8] This Court addressed this argument during class certification and now finds the same: fighters are not homogenous and Dr. Singer's method of accounting here is reasonable. Zuffa also argues that the staggered nature of its contract expiration and evidence that fighters do move promotors mean that Plaintiff cannot plausibly claim Zuffa foreclosed fighters from signing with competitors. This ultimately goes to the weight the jury should give Plaintiffs' expert rather than invalidating Plaintiffs' contentions as a matter of law. Therefore, the Court finds that the nature and extent of Zuffa's alleged foreclosure of the relevant market for athletic talent is a material fact in dispute.

Fourth and relatedly, Zuffa argues that it is undisputed that it did not engage in anticompetitive practices and, further, that its practices where procompetative and justified by legitimate business concerns. Zuffa supports its contracts by arguing the terms are procompetative because multi-bout contracts are necessary to allow promotors to invest in fighters and such contracts provide the necessary roster of fighters to produce more, higher-quality events. Plaintiffs argue the contracts necessarily narrowed fighter mobility and pay. Zuffa also defends its alleged conduct by providing alternative readings of Plaintiffs' evidence of anticompetitive practices: (1) that hiring the best fighters is pro-competitive; (2) that right-to-match clauses facilitate higher pay; (3) that its mergers were lawful and did not drive competitors out of the market; and (4) that

---

[8] Zuffa also argues that Dr. Singer's use of 30-month contracts is a legal conclusion and that using that contract length and a median career length of 0.82 years produces problematic results. The Court finds, for the purposes of this Order, from its review of the evidence that the 30-month and 0.82 figures are appropriate empirical findings. To the extent that Zuffa argues that these figures show careers are either long enough contracts do not tie athletes up or that careers are so short the length of the contract is unimportant, that goes to the weight of the findings rather than invalidating Plaintiffs' evidence as a matter of law.

"aggressive competition" is lawful. Plaintiffs argue that Zuffa: (1) hired more fighters than it needed and did not provide them enough bouts; (2) coerced and locked fighters into long-term contracts; (3) the mergers are relevant and demonstrate and attempt to occupy the field; and (4) that these actions go beyond "aggressive" competition. Both Parties have offered substantial evidence, including expert opinions, on this point. In the Class Certification Order, the Court reviewed substantially the same arguments and found that Plaintiffs had established Zuffa willingly engaged in anticompetitive conduct to maintain or increase its market power. See Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP, 540 U.S. 398, 414 (2004) ("Under the best of circumstances, applying the requirements of [15 U.S.C.] § 2 can be difficult because the means of illicit exclusion, like the means of legitimate competition, are myriad."). Based upon the record, the Court finds the presence of anti-competitive practice and their potential justification material facts clearly in dispute, which should be reserved for the eventual finder-of-fact to weigh.[9]

Fifth, Zuffa argues that it should be granted summary judgement on Plaintiff's abandoned monopoly claim and that, without a monopoly claim, the monopsony claim must fall. A plaintiff abandons claims by not raising them in opposition to a motion for summary judgement. Shakur v. Schriro, 514 F.3d 878, 893 (9th Cir. 2008). Here, Plaintiff explains that they are not asserting a separate claim for "monopolization" under 15 U.S.C. § 2 but, rather, they are using evidence of monopoly power as evidence of monopsony power and anticompetitive effects.[10] This accords with a plain reading of the Amended Complaint. As such, the Court finds that there is no separate

---

[9] Zuffa rightly points out that "an antitrust defendant's conduct is redeemed by a legitimate business purpose." Universal Analytics, Inc. v. MacNeal-Schwendler Corp., 914 F.2d 1256 (9th Cir. 1990). Under 15 U.S.C. § 2, a plaintiff must first establish a *prima facie* case. FTC v. Qualcomm Inc., 969 F.3d 974, 991 (9th Cir. 2020). "[T]hen the monopolist may proffer a procompetitive justification for its conduct." Id. (quoting United States v. Microsoft Corp., 253 F.3d 34, 59 (D.C. Cir. 2001)). The burden then shifts back to the Plaintiff to rebut that claim or demonstrate the anticompetitive harm of the conduct outweighs the procompetative benefits. Id. As explained above, the Court finds that Plaintiffs have established a *prima facie* case and that Zuffa has not provided plausible legitimate business justifications as a matter of law. Finally, the Court finds that there is a dispute of material fact regarding whether Zuffa's justifications are pretextual or whether any alleged procompetative effects are outweighed by their anticompetitive effects.

[10] Zuffa's argument that without a separate monopoly claim, Plaintiffs' monopsony claim must fail as a matter of law is without merit. See United States v. Syufy Enterprises, 903 F.2d 659, 663 (9th Cir. 1990) ("[I]t is theoretically possible to have a middleman who is a monopolist upstream but not downstream, this is a somewhat counterintuitive scenario."). While "all antitrust cases . . . must make economic sense," id., Plaintiffs have not abandoned the argument that monopoly power plays an explanatory or evidentiary role. Rather, as explained above, monopoly power is simply not being asserted as an alternative basis of relief.

"monopolization" claim for which it can grant summary judgement.

Finally, Zuffa argues it is undisputed that Plaintiffs have failed to demonstrate Article III standing for each class member and that is an independent basis for summary judgment. Among other requirements, Article III requires plaintiffs to show a concrete injury. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992). In Olean, the Ninth Circuit explained that plaintiffs are "required to establish the elements necessary to prove standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" 31 F.4th at 681 (quoting Lujan, 504 U.S. at 561). Olean found standing where plaintiffs used a regression model that established 94.5 percent of class members had been affected by the alleged pricing scheme. Id. at 672, 677. Here, Plaintiffs have presented cognizable evidence in a similar regression that approximately 99 percent of fighters were affected by the alleged scheme. At this stage, the Court finds that this suffices to establish for Article III purposes an impact on a class wide basis.

In conclusion, the Court finds that even on a fresh review of the record and informed by the Parties' arguments and exhibits that Plaintiffs have raised genuine factual disputes as to each element of Section 2. Tolan v. Cottan, 572 U.S. 650, 656 (2014) ("[C]ourts may not resolve genuine disputes of fact in favor of the party seeking summary judgment.") (per curiam); Anderson, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . . ."). Therefore, the Court must deny the Motion for Summary Judgment.

### III.    PROPOSED PRE-TRIAL SCHEDULE

Before the Court is the Parties' Joint Stipulated Proposed Pre-Trial Schedule. The Court will address the proposed deadlines at its forthcoming status hearing on January 19, 2024.

### IV.    CONCLUSION

For the foregoing reasons, **IT IS THEREFORE ORDERED** that Defendant Zuffa, LLC's Motion for Summary Judgement (ECF No. 878) is **DENIED** with prejudice.

1   **IT IS FURTHER ORDERED** that Plaintiffs' Motion to Strike (ECF No. 933) is
2   **GRANTED** in part as regards Defendant's Motion to Exclude Certain Opinions of Dr. Hal J.
3   Singer (ECF No. 929), Motion to Exclude the Testimony of Dr. Andrew Zimbalist (ECF No. 931),
4   and the December 1, 2023, Declaration of Dr. Gregory K. Leonard (ECF Nos. 932-28), which the
5   Clerk of Court is instructed to strike from the docket. The motion is **DENIED** as regards the
6   remaining Motion to Exclude (ECF No. 930).

7   **IT IS FURTHER ORDERED** that a ruling on Defendant's Motion to Exclude the
8   Testimony of Plaintiffs' Expert Guy A. Davis (ECF No. 930) is **DEFERED**.

9   **IT IS FURTHER ORDERED** that a hearing regarding Defendant's Motion to Exclude
10  the Testimony of Plaintiffs' Expert Guy A. Davis (ECF No. 930) is set for **January 19, 2024 at
11  8:15 a.m.** in LV Courtroom 7C before Judge Richard F. Boulware, II.

12  **IT IS FURTHER ORDERED** that the Joint Stipulated Proposed Pre-Trial Schedule (ECF
13  No. 928) is **DENIED** without prejudice to the final dates being set at the forthcoming hearing on
14  January 19, 2024.

16  **DATED:** January 18, 2024

19  **RICHARD F. BOULWARE, II**
    **UNITED STATES DISTRICT JUDGE**