———2:15-cv-01045-RFB-BNW———

1          UNITED STATES DISTRICT COURT

2              DISTRICT OF NEVADA

3

4  CUNG LE, et al.,                )
                                   )
5              Plaintiffs,         )  Case No. 2:15-cv-01045-RFB-BNW
                                   )
6        vs.                       )  Las Vegas, Nevada
                                   )  Friday, January 19, 2024
7  ZUFFA, LLC, d/b/a Ultimate      )  8:21 a.m.
   Fighting Championship and       )
8  UFC,                            )  STATUS CONFERENCE
                                   )
9              Defendants.         )
   _____      *C E R T I F I E D   C O P Y*

10

11

12

13          REPORTER'S TRANSCRIPT OF PROCEEDINGS

14        THE HONORABLE RICHARD F. BOULWARE, II,
               UNITED STATES DISTRICT JUDGE

15

16

17

18

19  APPEARANCES:        See Pages 2 and 3

20

21

   COURT REPORTER:     Patricia L. Ganci, RMR, CRR
22                      United States District Court
                        333 Las Vegas Boulevard South, Room 1334
23                      Las Vegas, Nevada  89101

24

   Proceedings reported by machine shorthand, transcript produced
25  by computer-aided transcription.

```
                          2:15-cv-01045-RFB-BNW

 1   APPEARANCES:
     For the Plaintiffs:
 2
             DON SPRINGMEYER, ESQ.
 3           KEMP JONES, LLP
             3800 Howard Hughes Parkway, 17th Floor
 4           Las Vegas, Nevada 89169
             (702) 385-6000
 5
             CRANE M. POMERANTZ, ESQ.
 6           CLARK HILL, PLC
             3800 Howard Hughes Parkway, 17th Floor
 7           Las Vegas, Nevada 89169
             (702) 862-8300
 8
             ERIC L. CRAMER, ESQ.
 9           BERGER & MONTAGUE, P.C.
             1818 Market Street, Suite 3600
10           Philadelphia, Pennsylvania 19103
             (215) 875-3000
11
             BENJAMIN D. BROWN, ESQ.
12           COHEN MILSTEIN SELLERS & TOLL, PLLC
             1100 New York Avenue, N.W., Suite 500
13           Washington, D.C. 20005
             (202) 408-4600
14
             JOSEPH YOUNG, ESQ.
15           THE JOSEPH SAVERI LAW FIRM, INC.
             555 Montgomery Street, Suite 1210
16           San Francisco, California 94111
             (415) 500-6800
17
     For Defendant Zuffa, LLC:
18
             J. COLBY WILLIAMS, ESQ.
19           SAMUEL MIRKOVICH, ESQ.
             CAMPBELL & WILLIAMS
20           700 South 7th Street
             Las Vegas, Nevada 89101
21           (702) 382-5222
22           CHRISTOPHER S. YATES, ESQ.
             LATHAM & WATKINS, LLP
23           505 Montgomery Street, Suite 2000
             San Francisco, California 94111
24           (415) 395-8157

25
```

2:15-cv-01045-RFB-BNW

 1          LAS VEGAS, NEVADA; FRIDAY, JANUARY 19, 2024; 8:21 A.M.

 2                               --oOo--

 3                    P R O C E E D I N G S

 4          THE COURT:  Please be seated.

 5          COURTROOM ADMINISTRATOR:  Le versus Zuffa,

 6   15-cv-1045-RFB-BNW.  Counsel, please make your appearances.

 7          MR. CRAMER:  Good morning, Your Honor.  Eric Cramer for

 8   the plaintiffs.

 9          MR. BROWN:  Benjamin Brown for the plaintiffs.

10          MR. SPRINGMEYER:  Good morning, Your Honor.  Don

11   Springmeyer for the plaintiffs.

12          MR. YOUNG:  Good morning, Your Honor.  Christopher

13   Young for the plaintiffs.

14          MR. POMERANTZ:  Good morning, Your Honor.  Crane

15   Pomerantz for the plaintiffs.

16          THE COURT:  Good morning.

17          MR. WILLIAMS:  And good morning, Your Honor.  Colby

18   Williams of Campbell and Williams on behalf of Zuffa, LLC.

19          MR. YATES:  Chris Yates of Latham and Watkins for

20   Zuffa, LLC.

21          MR. MIRKOVICH:  Samuel Mirkovich on behalf of

22   defendants.

23          THE COURT:  Good morning.  So I assume you all have

24   seen my order.  And so I want to take care of a few things

25   today.  I first want to take care of the motions to seal.  There

—2:15-cv-01045-RFB-BNW—

1  is, I think, a few joint motions to unseal and a few motions to

2  seal here.  I'm inclined to go ahead and just approve those

3  motions.

4        Any reason why I can't go ahead and approve the joint

5  motions to seal and unseal?

6        MR. CRAMER:  We don't think so, Your Honor.

7        MR. WILLIAMS:  No, Your Honor.

8        THE COURT:  Okay.  All right.  Thank you, Mr. Williams.

9  So I'll go ahead and grant the motions to unseal and then grant

10  the joint motions to seal.

11        So, I want to turn to the issue that I have said in my

12  order related to Mr. Davis's expert report.  And I know,

13  Mr. Cramer, you all didn't even technically respond to the

14  substance of the report because you filed the motion to strike.

15  So I think the way to approach this would be to allow you to

16  respond, but I wanted to talk a little bit more about that in

17  the context of, also, the trial and the schedule that you all

18  had proposed.

19        So, Mr. Cramer, I'm going to start with you.  I assume

20  that you would want to have some opportunity to be able to

21  respond.  And then I would want to contemplate whether or not I

22  would set a hearing like I did with the other experts and then

23  have plaintiffs' expert come in and defense expert come in and

24  then make an evaluation, which I did previously as it relates to

25  experts.  And then we just would have to fold that into our

—2:15-cv-01045-RFB-BNW—

1    schedule.

2           But, Mr. Cramer, your thoughts about that approach.

3           MR. CRAMER:  Your Honor, to be clear, and I think there

4    was some confusion in this because Zuffa went ahead and filed

5    Daubert motions that they'd already filed, but they filed a

6    Daubert motion as to our expert, Mr. Guy Davis, in 2018.  We

7    responded and they replied.  So it's been fully briefed.

8           THE COURT:  It has been.  I just didn't know if you

9    wanted to respond again.  So that's --

10          MR. CRAMER:  Oh, I see.  Okay.  Appreciate it.

11          THE COURT:  There was a new motion that was filed.  It

12   was renewed.  And so then the question is, since it was renewed,

13   I didn't do a direct comparison of the old and the new motions.

14   I first looked at the motion to exclude and my prior order to

15   see whether or not it would cover this particular expert, which

16   I don't think that it does.  And so then I was going to give you

17   an opportunity to be able to respond.

18          If you think that the -- your prior response is

19   sufficient, then we can simply proceed to me considering that as

20   your response to the renewed motion and then potentially setting

21   a hearing as it relates to that in this case before any trial.

22          MR. CRAMER:  Let me say, Your Honor, if I could say one

23   thing about the Davises.  We have a Davis, Guy Davis.  They have

24   a Davis, Elizabeth Kroger Davis.

25          THE COURT:  Right.

1          MR. CRAMER:  Our view is our Davis opining upon whether

2     Zuffa could have paid the damages that our experts say they

3     would have paid or fighter compensation that our experts say

4     they would have paid in the but-for world, our view is that our

5     Davis is relevant only because Zuffa put it at issue.  Zuffa

6     argues through their Davis and in other ways -- they plead

7     poverty.  They say, "We could not have paid the extra several

8     hundred millions to the fighters during the class period.

9     Therefore, the damages are unreasonable."

10          Our view is we get to respond to that by way of an

11     expert who says, "Oh, yes they could have.  They just didn't

12     have to distribute $1.2 billion to their three owners and take

13     on additional debt and debt service.  They still would have been

14     a very profitable company."

15          But the deal we would be willing to make is if Zuffa

16     agrees not to plead poverty, not to make the --

17          THE COURT:  Mr. Cramer, I'm sorry.  I don't mean to

18     laugh.  I'm happy to ask Mr. Williams that or Mr. Yates that.  I

19     would be shocked if they were to go to a trial in this case and

20     say, "We could have paid all of this money and we just decided

21     not to," with all due respect.  So we can dispose of this fairly

22     quickly, at least that issue.

23          Mr. Williams, I would imagine in all seriousness that

24     one of the arguments that you and your team would make on behalf

25     of your client is that there were financial constraints on the

—2:15-cv-01045-RFB-BNW—

1   fighters' compensation, and this was -- notwithstanding

2   percentages and the share of the revenue that there may be in

3   other sports, this was basically the best that they could have

4   done given the financial constraints.

5          MR. WILLIAMS:  Correct, Your Honor.

6          THE COURT:  Okay.

7          So then it seems to me, Mr. Cramer, part of what I'm

8   inclined to do also I have to tell you is it seems like the

9   Davises, let's just refer to them that way, their expert

10  testimony really depends upon the nature of how the testimony

11  comes in, right.  So their testimony isn't the same as some of

12  the other experts who are relying upon particular modeling or

13  econometrics.  They're basically looking at different aspects of

14  the financials for the defendant and making some determinations

15  about what could or couldn't be paid.  And so I have to tell you

16  I'm inclined to wait to rule on the Davises until I see what the

17  trial briefs actually are.

18         So, Mr. Williams, again, I'm going to ask you this

19  question, which is it seems to me that there are different ways

20  to make the argument that I just asked you about.  And I would

21  imagine, though, one of the ways that the defendant would do

22  that would be to have an expert come on or CFO or whomever --

23         MR. WILLIAMS:  Right.

24         THE COURT:  -- testify about this is what were our

25  structural limits.  So I want you to respond to Mr. Cramer as it

─────────2:15-cv-01045-RFB-BNW─────────

1  relates to Mr. Guy Davis as a rebuttal expert, because part of,

2  I think, what you all are going -- is it going to be you,

3  Mr. Yates?  I don't care -- part of what I think you were

4  objecting to is a hypothetical, but potentially what happens

5  when you put on your case is you could open the door to some

6  discussion about, "Well, they could have done this had this

7  happened."

8       And so I agree with portions of your brief that say,

9  "Look, you know, there's a limit to how much you can speculate

10 about how much someone could pay particularly in a,

11 quote/unquote, but-for world."  But on the other hand, I'm not

12 sure how much your clients are going to plead poverty and how

13 they're going to do that in such a way that the plaintiffs'

14 expert would be able to come back and say, "Well, they've said

15 these five things.  I think these five things are not reasonable

16 and so here's why."

17      And so it makes sense to me for us to look at this

18 testimony after the trial briefs and even potentially the

19 exhibits because I'm willing to put some limits on the testimony

20 for both of the Davises, but I don't know exactly what the case

21 will look like come -- I mean, obviously I know the general

22 approaches you all will take.

23      But, Mr. Yates, your thoughts about that?

24      MR. YATES:  I would be fine waiting until after the

25 trial briefs, Your Honor.  I think that the key thing for us is

1    that Mr. Guy Davis is a rebuttal witness, if anything.  And so

2    if Your Honor wants to wait and see what our case looks like and

3    then decide if Mr. Guy Davis is a proper rebuttal witness, that

4    would be fine.

5         I do think there's some fundamental flaws in what he's

6    done.  I don't think an accounting expert gets to change the

7    real-world facts that happened before the class period, which is

8    what he does to try to say that Zuffa could have paid hundreds

9    of millions of dollars more.

10        But, you know, I think that Your Honor could probably

11   better evaluate that in the context of, you know, what is

12   happening, what do the trial briefs look like, what do the

13   exhibits look, as Your Honor has suggested.

14        THE COURT:  Okay.  Mr. Cramer?

15        MR. CRAMER:  Your Honor, may I address that?

16        THE COURT:  Yes.

17        MR. CRAMER:  We do not view Mr. Guy Davis as solely a

18   rebuttal witness, and here's why.  Because Zuffa is going to

19   cross Dr. Singer and Dr. Zimbalist in our case and raise these

20   issues about ability to pay.  Dr. Singer has his own answer to

21   these questions.  Dr. Zimbalist has his own answer to these

22   questions.  But if Zuffa is going to put the capacity to pay at

23   issue in our case, we should be able, in our case, and not wait

24   until after Zuffa's case to address this issue.  If Zuffa's

25   going to argue --

————2:15-cv-01045-RFB-BNW————

1          THE COURT:  Well, I --

2          MR. CRAMER:  -- they just couldn't have paid the

3    fighters $900 million --

4          THE COURT:  Well, Mr. Cramer, I think part of the issue

5    is there's a difference between the capacity to pay and some of

6    the scenarios that Guy Davis lays out.  And so I think you could

7    talk about how much money was paid out in dividends, how much

8    money was borrowed, in your case that makes money potentially

9    available.  But then he has very specific -- and these models

10   essentially that are scenarios, which I think are -- from my

11   perspective the defendant's strenuous objection is not only to

12   those, but it is most strenuously to those, which I can

13   understand, because they require a lot of hypotheticals which

14   you're trying to anticipate as relates to what they're going to

15   say.

16         MR. CRAMER:  Well, the point of those, Your Honor, the

17   point of those hypotheticals is to just to have an accountant, a

18   forensic accountant, who studies the valuation of business be

19   able to respond to the argument that they could not have paid

20   the fighters what they -- our economists say they would have had

21   to pay to compete.  And in order to do that, you have to look at

22   what actually happened.

23         So what actually happened was they took out huge loans

24   with debt service.  They paid that to three people, $1.2

25   billion, paid it out to the three shareholders, the Fertittas

1   and Dana White.  And then they said, "We don't have it."  And
2   their argument is we don't have any money.

3          So an accountant, a forensic accountant, is going to
4   have to say, "Well, what" -- if they had to, as our economists
5   say, pay the fighters $900 million more, could they have?  Well,
6   sure, they could have.  And he goes through and shows that if
7   they did not take this big loan and they did not pay out their
8   dividends and they made other financial decisions, like not
9   spend hundreds of millions of dollars on excess aviation and
10  excess management fees, of course they could have.

11         And the point that Guy Davis is making is not that they
12  would have, not that they made bad decisions at the time; it's
13  just that they could have.  It's probative of what they would
14  have if our economists are right that the UFC would have had to
15  pay hundreds of millions of dollars more to their fighters in a
16  competitive environment.

17         So the -- an accountant is going to have to be able to
18  figure out looking at this company, "All right.  There's this
19  period of time UFC is saying there is no way we could have paid
20  the fighters" --

21         THE COURT:  So, Mr. Cramer, Mr. Cramer, Mr. Cramer, I
22  get that point.

23         MR. CRAMER:  Okay.

24         THE COURT:  And I understand that.  So here's what --
25  so we don't have to go back and forth right now.  Here's what I

—2:15-cv-01045-RFB-BNW—

1  think we should do.  I'm going to deny the motion to exclude

2  without prejudice.  Then the defendants can reraise it as a

3  motion in limine, Mr. Yates, because I need to see how your case

4  is going to come in and I need to see the exhibits and I need

5  you all to be able to reference them.  I'm going to set a day or

6  two where we're going to go through all of the motions in

7  limine, and that will be the time when I decide Mr. Davis -- the

8  Davises' testimony.

9       I certainly think portions of it I think are clearly

10  admissible and can come in, but I think as we start to get into

11  the speculative aspects of that testimony, Mr. Cramer, I'm going

12  to want to hear more from both you and the defendants about

13  that.  But I don't think we can figure that out now because I

14  haven't seen your case.  We are simply going to go back and

15  forth, and I don't think that will be particularly productive.

16       So for now what I'm going to do is I'm going to deny

17  the motion to exclude without prejudice to it being raised as a

18  motion in limine because I do find generally that the

19  methodology is reliable, but as it relates to the speculation as

20  to the modeling, I will allow you, Mr. Yates and Mr. Williams,

21  or whoever is going to be arguing that to raise that with me

22  when we get closer to the trial date.

23       MR. YATES:  Thank you, Your Honor.

24       THE COURT:  All right.

25       MR. CRAMER:  Thank you, Your Honor.

2:15-cv-01045-RFB-BNW

1          THE COURT:  Okay.  So, now, let's talk about the trial

2     date.

3          The trial will -- I'm going to ask you all your view

4     about a couple of things.  One is the start of the trial will

5     have to be moved back probably a week to the 15th, but we could

6     pick the jury on the Monday and Tuesday the prior week.  But

7     then I would be unavailable the Wednesday, Thursday, Friday.  Or

8     we could just start on the 15th, which may make more sense.  I

9     don't know if you all have a view about that one way or the

10    other.

11         But the other question I have is, what are we thinking

12    about the length of the trial?  Mr. Cramer?

13         MR. CRAMER:  We initially had said four to five weeks.

14    And while we don't know how long the defense case would be, we

15    think it could get done in four weeks.

16         THE COURT:  Okay.

17         MR. WILLIAMS:  Your Honor, there may be some rare

18    agreement here.  We think four weeks as well.  Three to four,

19    but let's just say four.

20         THE COURT:  Okay.  Okay.  That's helpful.

21         So I think it may make sense just to start on the 15th,

22    and then we don't have to break it up and have the jurors have

23    three days off.  So I'm looking at a start date for April 15th

24    for four weeks.  And I didn't approve the stipulated schedule

25    only because I wanted to check with you all to see if there's

—2:15-cv-01045-RFB-BNW—

1  anything else we needed to do, but I think that what I want you

2  all to do would be to get-together and submit a proposed

3  schedule, consistent with what you've done previously.  But now

4  that you've seen my rulings on the MSJ and how I want to

5  approach the Davis testimony, we may need to fold in a date for

6  a hearing, but we can figure that out.

7         But I don't find the proposed schedule that you all

8  presented to be unreasonable, but I wanted to wait to approve

9  anything until we had our discussion here today.

10        Mr. Cramer, anything thoughts about that?

11        MR. CRAMER:  Thank you, Your Honor.  Mr. Springmeyer

12  was going to address some of those issues.

13        THE COURT:  Okay.

14        MR. SPRINGMEYER:  Your Honor, if you have the time and

15  interest, we had some thoughts to discuss with you about the

16  jurors and how that's going to work.

17        THE COURT:  Sure.

18        MR. SPRINGMEYER:  If I might start with our request

19  that the Court exercise its discretion to use a juror

20  questionnaire in this case.  And a couple of the reasons, one I

21  discussed briefly with Mr. Williams, you know, if it turns out

22  when we all show up here that half of the venire worked for

23  Zuffa, that would not be a good thing to find out the day we're

24  all starting, or worked for Station Casinos, which might be even

25  more likely.  That could cut both ways.

———2:15-cv-01045-RFB-BNW———

1          So we ask for a juror questionnaire.  We'd be, of

2    course, expecting to work with the defense in a meet-and-confer

3    style to design one unless --

4          THE COURT:  That seems fine, I mean, unless there's an

5    objection.  I think juror questionnaires work well for both

6    sides and can streamline voir dire.  So I'm fine if the parties

7    agree.

8          Mr. Williams, Mr. Yates, any objection to that?

9          MR. WILLIAMS:  Your Honor, Mr. Springmeyer brought it

10    up this morning before court for the first time.  We have been

11    thinking about it on our side, but I don't think had committed

12    to it.  But I hear what the Court is saying, and obviously we

13    can work with opposing counsel on the issue.

14          THE COURT:  I mean, my experience is if you all work

15    well together, then it can in fact streamline the jurors that we

16    call in, right.

17          MR. WILLIAMS:  Right.

18          THE COURT:  I mean, if we have someone who's an avid,

19    whatever, UFC fan or someone, you know, who's the opposite of

20    that, right, getting some information about views or getting

21    some information about someone who might have actually,

22    whatever, buys tickets every year, whatever you all want to ask.

23    I could see there would be ways where we might find some people

24    to be potentially excludable or at least you all would want

25    information about them that would allow for the voir dire to be

—2:15-cv-01045-RFB-BNW—

1   less extensive in person.

2          MR. WILLIAMS:  Your Honor, do you have a sense on

3   timing of when that would need to be done for the Court's staff

4   in order to get that out in sufficient time --

5          THE COURT:  I will check now that you're saying that to

6   me, but I would imagine typically we would need at least seven

7   weeks because we would send it out -- the way we would do it we

8   probably would send it out with the pool when it's selected

9   because we have to send out for a special pool for this length

10  of a jury.  So I would say six weeks.  So around the end of

11  February we'd have to have the questions.

12         MR. SPRINGMEYER:  Okay.  And, Your Honor, do we

13  implement that by filing a proposed questionnaire with the

14  Court?

15         THE COURT:  So you all should meet and confer.  If

16  there are issues, then we will discuss them.  What I would

17  anticipate in this case is we'll probably have various status

18  checks over the course of the next few weeks before the trial to

19  address issues so that we don't have them all stacked up at the

20  end.  And so we can have a, sort of, status check as it relates

21  to, sort of, jury selection and that sort of thing.

22         MR. SPRINGMEYER:  Okay.

23         THE COURT:  I mean, there are going to be other issues

24  which I want you all to address as relates to, for example,

25  depositions, and there's going to be issues about coverage and

—2:15-cv-01045-RFB-BNW—

1   media and other things that we're going to need to, sort of,

2   work out ahead of time just to -- so everyone's on the same page

3   and so we can coordinate with court staff here, so ...

4            MR. SPRINGMEYER:  Understood.  And what is -- what size

5   venire is the Court contemplating for this case?

6            THE COURT:  Well, I would say for this length of a

7   trial, I would most likely pick eight jurors and four alternates

8   who would all sit because I just don't want to -- one, we don't

9   want to be retrying it.  I don't want to lose people, but that's

10  about what I'm thinking about.  I'll speak with our jury

11  administrator.  But that's 12 total, but eight actual jurors and

12  four alternates.

13           MR. SPRINGMEYER:  And how would the Court use the

14  alternates if one -- if one is necessary, for example?

15           THE COURT:  Well, if something happens to one of the

16  jurors, the alternate just --

17           MR. SPRINGMEYER:  Will they sit through the whole trial

18  and --

19           THE COURT:  Yes.

20           MR. SPRINGMEYER:  -- if no one gets sick, you just

21  dismiss them?

22           THE COURT:  No, they're not dismissed because if

23  something happens during the deliberation, right, alternate

24  needs to be brought in.  So they're not dismissed, right.

25  They're told to go home, not discuss the case, and be prepared

—2:15-cv-01045-RFB-BNW—

1   to come in and deliberate if something happens during the

2   deliberation.

3         MR. SPRINGMEYER:  Understand.

4         And for the voir dire process, we've looked at how Your

5   Honor has conducted that in a couple of prior civil jury trials.

6   Is that the way you always do it:  You ask some?  You let the

7   lawyers ask some?  You ask some more?

8         THE COURT:  Well, I'll think about it for this case,

9   but typically I let the lawyers ask questions at sidebar of

10  individual jurors, prospective jurors.

11        MR. SPRINGMEYER:  But not general questions to the

12  whole --

13        THE COURT:  No, that's -- no.  So, in other words, if

14  you have general questions you want to be asked, then I'll ask

15  them.

16        MR. SPRINGMEYER:  Okay.

17        THE COURT:  But then what will happen is we'd bring the

18  jurors over one at a time to the sidebar, and each side gets

19  about four, five minutes to ask that particular juror whatever

20  questions, within the law of course, that they want to ask.

21        MR. SPRINGMEYER:  Understand.

22        And three challenges per side?

23        THE COURT:  Are you asking for more?

24        MR. SPRINGMEYER:  Well, sure.

25        THE COURT:  At this point I'm inclined to only give

—2:15-cv-01045-RFB-BNW—

1  three.  I mean, I think the advantage of the questionnaire is

2  that it, I think, eliminates some of the consternation, I hope,

3  as relates to the challenges because you have so much

4  information.

5          Other questions?

6          MR. SPRINGMEYER:  And back and forth on the challenges

7  and if you skip one, you lose it?

8          THE COURT:  Yes.

9          MR. SPRINGMEYER:  Okay.

10          Brief discussion about motions in limine, not the

11  specific ones, but would Your Honor prefer that they be filed

12  individually or in an omnibus collection by each side?

13          THE COURT:  In a case like this, they should be filed

14  categorically, and what I mean by that is this.  If there are

15  objections to exhibits, there should be a motion in limine

16  regarding exhibits.  If there's objections to, for example,

17  particular, sort of, arguments that are going to be made, that

18  should be filed separately.  If there are going to be objections

19  to testimony or form of certain testimony, that should be filed

20  separately.  So it should be done categorically.

21          So if you have, for example, you're objecting to expert

22  testimony, then that should be its own motion, right.  And if

23  you're objecting to other types of live testimony, that should

24  be its own motion.  If you're objecting to exhibits, that should

25  be its own motion.  If you have some other legal objection, then

—2:15-cv-01045-RFB-BNW—

1    that should be its own motion.  So those would be the categories

2    that I would envision, right.  And then within there -- within

3    those categories you would address the various issues that you

4    want to have me look at.

5             MR. SPRINGMEYER:  That would imply that some of them

6    might be quite a bit longer than some others if it's a --

7             THE COURT:  Yes.

8             MR. SPRINGMEYER:  -- category that covers multiple

9    things.

10            Any upper page limit for such a collection, other than

11   the normal motion?

12            THE COURT:  No, I'm not going to set a page limit only

13   because we're going to have so many exhibits in this case it

14   really doesn't make sense and I couldn't fathom that.  I mean,

15   in my experience it actually helps for you all to say more in a

16   motion in limine so that I can make a better decision about it.

17            I will say the one thing that I think that you all

18   should do, which I would encourage you to do, is to file your

19   trial briefs earlier than you've set because the trial briefs

20   help me decide the motions in limine.  So they need to be filed

21   in enough time that I can look at the trial briefs, right, ahead

22   of time.

23            So what I want you to do when you meet and confer is to

24   make sure that the trial briefs and the exhibit lists and the

25   witness list and the witness order is filed before the motions

—2:15-cv-01045-RFB-BNW—

1    in limine.

2              MR. SPRINGMEYER:  Okay.

3              THE COURT:  Because, otherwise, I won't really be able

4    to effectively consider them until I see that.

5              MR. SPRINGMEYER:  And with regard to the trial briefs,

6    can Your Honor give us a little more idea of what you want in

7    them?  For example, an overview of how the parties intend to

8    prove the case or teeing up legal arguments or --

9              THE COURT:  So what I would expect is for you to give

10   me a roadmap for how the case will come in.

11             MR. SPRINGMEYER:  Okay.

12             THE COURT:  Your particular case.

13             MR. SPRINGMEYER:  Okay.

14             THE COURT:  Right?

15             MR. SPRINGMEYER:  Right.

16             THE COURT:  And that includes -- again, the trial brief

17   doesn't necessarily have to include the witness order.  It's

18   helpful if it does.  And you can -- you don't have to summarize

19   every witness's testimony, but you can say, "This is how we

20   expect the testimony to come in.  We would start here."

21             Because the other thing is it allows me to be able to

22   decide whether there are some issues that we will decide, which

23   there will be, mid trial or which issues have to be decided

24   ahead of time because that person is going to be testifying at

25   the beginning.

—2:15-cv-01045-RFB-BNW—

1      MR. SPRINGMEYER:  Yes.

2      THE COURT:  So this is a situation where, again, I'm

3 not going to set a page limit.  More is better for you, because

4 if I think that you haven't told me enough in your trial briefs,

5 it will be harder for me to understand your perspective.  So I

6 don't mind the trial briefs being long, you know, 40 pages, for

7 example, or something like that.  I don't mind them being that

8 long because it will help me as I go through the trial and as I

9 decide these issues.

10      And I know judges do things differently, but the trial

11 briefs will be filed publicly.  They're not sealed, right.

12 There's not a period where I'm just looking at it and no one

13 else is looking at.  So when you file the trial brief, both

14 sides will get them.  They'll be filed on the same day, right.

15      MR. SPRINGMEYER:  Yes.

16      THE COURT:  Same time.  And so they'll lay out your

17 respective cases.

18      MR. SPRINGMEYER:  Understood.

19      THE COURT:  Now, I will say this for the defendant.  I

20 would not expect you to always -- well, I shouldn't say

21 "always."

22      I know that there may be things that come in in

23 rebuttal that are not necessarily in the trial brief.  So I

24 understand that.  But in a case like this one I will say,

25 Mr. Williams, that it doesn't seem like it's much of a secret

—2:15-cv-01045-RFB-BNW—

1  how this case is going to come in.  So I'm saying that to you

2  because if there's something significant that's going to raise

3  an issue or dispute and I think that it's something you could

4  have reasonably let me know about it, that's going to be an

5  issue.

6        Now, if there's something that you want to share with

7  me that you think is significant impeachment material that you

8  don't feel obligated to share, you can file that under seal and

9  let me know.  But the important thing is to let me know before

10  it happens.  And you, again, may want to file that under seal on

11  an ex parte basis.  I allow the defense to do that with the

12  understanding that I may determine that it should be unsealed.

13        MR. WILLIAMS:  Right.

14        THE COURT:  But I can understand as a former trial

15  lawyer that there may be times when you want to highlight

16  something for me that you don't want to necessarily share with

17  the other side, and that's fine.  I just don't want it to pop up

18  in the midst of my trial when it's something that I think

19  reasonably could have been brought to my attention ahead of

20  time.

21        MR. WILLIAMS:  That's helpful, Your Honor.

22        THE COURT:  Okay.

23        MR. WILLIAMS:  Thank you.

24        THE COURT:  Uh-hmm.

25        MR. SPRINGMEYER:  Your Honor, with respect to both the

———2:15-cv-01045-RFB-BNW———

1  exhibit list and the exhibits themselves, there's going to be

2  hundreds from both sides.  So what is the preferred format for

3  us to deliver them to the Court?

4          THE COURT:  So, first, let me be clear about this.

5  Joint exhibits -- we should have joint exhibits.  I don't want

6  there to be a situation where we've got a defense exhibit that's

7  identical to a plaintiffs' exhibit or vice versa and they have

8  different numbers.  That is completely unwieldy.  So

9  get-together -- when it comes to exhibits, get-together and

10 figure it out.

11         Now, there may be exhibits where you all have disputes

12 where you say, "We don't think this should be included in the

13 exhibit, this particular attachment."  That's fine.  But you

14 should also raise that with me at the hearings ahead of time

15 because I may say, "No, that should be included.  That will be a

16 joint exhibit, and it's coming in."  That way we don't have

17 piece of exhibits.

18         In a case like this, I would imagine that that are a

19 fair number of joint exhibits that will come in, depending upon

20 my rulings, right.  There may be some disagreements about

21 deposition excerpts, and we should talk about that.  Excuse me.

22         But I would expect there to be joint exhibits, and the

23 plaintiffs' and defendant's exhibits to be only those exhibits

24 where there's no agreement that it will necessarily be used.

25 And we're going to have a whole discussion about, sort of, what

2:15-cv-01045-RFB-BNW

1   objections are to exhibits.  And that way, once I rule on it, it

2   can move from the defense exhibit or the plaintiffs' exhibit

3   category to the joint exhibit category.

4        But the individual exhibits, in terms of it being a

5   plaintiffs' exhibit or defendant's exhibit, should be the

6   exception.  That should not be the majority.  I would expect you

7   all to work that out ahead of time.

8        MR. SPRINGMEYER:  And the delivery to the Court?

9        THE COURT:  That should be delivered on a flash drive.

10       MR. SPRINGMEYER:  Flash drive.  Okay.

11       THE COURT:  And one thing I will tell you that happens

12  and I know you all won't do this, but do not send us a PDF that

13  has all of the exhibits in one PDF, right.

14       MR. SPRINGMEYER:  Understood.

15       THE COURT:  You laugh, but I can tell you that happens.

16  But we're not going -- we're going to send it back to you and

17  say, "Do this again."

18       MR. SPRINGMEYER:  Okay.

19       THE COURT:  Right.  So scan the documents that way.

20       The other thing, I'm sure you've seen the technology.

21  Well, I know you've added Mr. Pomerantz, who's actually local

22  here and tried many cases in this courtroom, as well

23  Mr. Springmeyer, you can come in and test all of the technology.

24  So for those of you who are on the defense side from out of town

25  and from the plaintiffs' side from out of town, I would strongly

———2:15-cv-01045-RFB-BNW———

1   encourage you to make an appointment on one of the times that we

2   come back for the hearings, and don't wait until two weeks

3   before trial, to see how your system works.  This is going to be

4   a long, involved trial, and it's going to be a lot of exhibits.

5   Then we should figure that out ahead of time.

6        MR. WILLIAMS:  Your Honor, who should we -- oh, I'm

7   sorry.

8        (Court conferring with courtroom administrator.)

9        THE COURT:  Yes, Mr. Williams.

10        MR. WILLIAMS:  I was just going to ask the best way to

11   facilitate that with your staff.  Who should we contact and --

12        THE COURT:  You should be contacting Ms. Smith, and she

13   will set up a time.  I mean, again, ideally it would be for you

14   all to bring some support staff on one of the days we have a

15   hearing ahead of time so they can plug into the system and see,

16   so you all can see, and you can have some idea.  But, again,

17   there are monitors there.  The exhibits appear there.  The

18   exhibits get loaded into the JERS system in the back.  So the

19   jurors know how to manage that.

20        If you want to add something to that, then you have to

21   let us know.  So, for example, if you want to have an easel or a

22   TV or something where you want it to be closer, right, you want

23   the jurors to see it and not look at their screens, you have to

24   let us know about that ahead of time because I may or may not

25   approve it.  In my experience using the monitors and even the

2:15-cv-01045-RFB-BNW

1  big monitor is sufficient, but if you have a particular or

2  special request, let us know.

3         And I don't know if you have any audio, but the audio

4  should also be tested because of the different levels.

5         MR. SPRINGMEYER:  Well, there will be video clips,

6  which will include audio, so yes.

7         THE COURT:  So you should test it because what we've

8  had happen is sometimes the internal audio on the clip doesn't

9  play well, and then we're stuck in a situation.

10        MR. SPRINGMEYER:  Okay.

11        How does the -- the admitted exhibits go into the jury

12 room at the end?

13        THE COURT:  There's a JERS system.  There's actually

14 basically a big -- again, we can give you a tour of what it

15 looks like, but there's a system where they get loaded.  It

16 takes time for them to get loaded.  So what we'll do is we will

17 load them -- well, we can't load them as we go, but we'll have

18 to figure a way to load them so it doesn't take up too much

19 space.

20        But what you should do is, again, on one of the times

21 that you all come back when you do the technology, you can also

22 ask for us to give you a little demonstration in the back of the

23 JERS system.

24        MR. SPRINGMEYER:  Very good.

25        Will Your Honor allow witness binders?

1          THE COURT:  I really prefer not to have paper,

2    particularly in a case this size.  Now, you should have binders

3    as a backup.  So that being said, there may be reasons why.  But

4    that's why I want you to come in, Mr. Springmeyer, and test the

5    equipment.  Because if we have binders, then, you know, it's

6    very unwieldy.  So you can have them as a backup, but the

7    preferred method for showing the exhibits to the witness will be

8    through the screens.

9          MR. SPRINGMEYER:  I was thinking more, Your Honor, in

10   some cases we've provided the jurors with a binder that has a

11   slip sheet with a head shot of the witness, and they can take

12   notes on the page.  And then -- then the next page has the other

13   witness, and that way it helps them keep track of who's who.

14         THE COURT:  I have to think about that.  I'm not sure

15   about that.  I mean, they'll have notebooks and we can talk

16   about whether or not if you all want to have, you know, a face

17   book with different -- I'm just saying if you want to have as an

18   exhibit like a picture of faces, it may make sense to do that

19   with names.  We can talk about that as an exhibit potentially.

20   I'll consider that.  But they will -- they can take notes.

21         MR. SPRINGMEYER:  Okay.

22         THE COURT:  And I'm not going to do it in this case,

23   but in some cases I've actually allowed the jurors to ask

24   questions of witnesses.  I am going to think about that for this

25   particular case.  I haven't decided about that yet, but that's

—2:15-cv-01045-RFB-BNW—

1    something I've done before which I'm contemplating here.

2         So the way that works is -- so if I decide to do it,

3    what will happen is after the end of each witness's testimony,

4    the jurors can write down questions and they hand it up to me.

5    And then I decide if the question's appropriate or not, and then

6    I'd read it.  And then the witness can answer, and then each

7    side gets to follow-up based upon the answers to the questions.

8         MR. SPRINGMEYER:  Understood.

9         THE COURT:  I have not decided yet whether or not to do

10   that in this case, but that is something that I'm thinking about

11   doing as well.

12        MR. SPRINGMEYER:  Regarding witnesses who -- for

13   example, if the plaintiffs call a witness as an adverse witness,

14   does all of the testimony of that witness have to come in in

15   that session or is it the plaintiffs' session and then the

16   defense can call them again in their case?  One up, one down, or

17   all at once, like?

18        THE COURT:  I typically prefer for it all to happen at

19   once.  However, again, if the defense has reasons for not doing

20   that, Mr. Williams and Mr. Yates, you should let me know.  But,

21   generally speaking, I would expect that the defense would also

22   use that witness's time at the same time.  So if they're -- for

23   example, if they're an adverse witness called by the plaintiffs

24   and there's an area of the cross-examination of that witness

25   that's not covered, if the witness was going to be then

2:15-cv-01045-RFB-BNW

1   identified as a defense witness, the defense can then move into

2   other areas that were not the subject of cross-examination.

3          MR. SPRINGMEYER:  And relating to that would be

4   witnesses who are essentially testifying by a video clip.

5   Should both sides' video clips be played the first time the

6   witness is called?

7          THE COURT:  Video clips, deposition designations, at

8   one time, right.  We don't do it back and forth in the cases.

9   So the testimony comes in at one time.

10         Do we expect a fair amount of deposition designation

11  testimony?

12         MR. SPRINGMEYER:  Yes.

13         THE COURT:  Okay.  Well, we'll have to --

14         MR. SPRINGMEYER:  Both deposition testimony and video

15  clips of depositions and other video clips.

16         THE COURT:  Okay.  All right.

17         MR. SPRINGMEYER:  Does the Court want --

18         MR. CRAMER:  Can I just ask a clarifying questioning

19  about the deposition, the witness by deposition?

20         So is Your Honor saying that when a deposition is shown

21  to the jury, the way Your Honor prefers it is that it's

22  chronological throughout the deposition so the jury does not

23  know whether this is a plaintiff designation or a defendant

24  designation?

25         THE COURT:  The testimony would come in in the order in

—2:15-cv-01045-RFB-BNW—

1  which it appears in the deposition transcript.

2          MR. CRAMER:  Thank you.

3          THE COURT:  Right.  And, again, you all know the rules

4  as relates to deposition excerpts coming in, but if they are

5  witnesses who are available, then we're going to have a

6  discussion about that as well depending upon what the agreement

7  is as relates to the witness.  But we'll get to that, too.

8          Go ahead, Mr. Springmeyer.

9          MR. SPRINGMEYER:  Regarding things such as business

10 records and hearsay objections, I take it Your Honor wants to

11 resolve all of that as possible ahead of time through motions in

12 limine or otherwise.

13         THE COURT:  Are we really going to have objections to

14 business records in this case?  Because, that, I would find to

15 be, sort of, shocking if there were such objections depending

16 upon -- I mean, maybe there might be a few, but maybe there's

17 some hearsay in the business records, which is different.

18         But do we anticipate there being objections to

19 authenticity as relates to business records in this case?

20         MR. SPRINGMEYER:  I hope not, Your Honor, but we

21 haven't exchanged exhibit lists yet and we haven't argued about

22 them between us so --

23         THE COURT:  Okay.  So when that comes up, we'll deal

24 with that.  I really don't want to have, and we have enough

25 time, custodians coming in here to testify about exhibits that

———2:15-cv-01045-RFB-BNW———

1   we all understand are actually business records and are

2   authenticated.

3              MR. SPRINGMEYER:  Sure, produced by a party and Bates

4   stamped and all of --

5              THE COURT:  Well, just because it's produced by a party

6   doesn't necessarily mean that it's necessarily accurate.  So I

7   appreciate that.

8              MR. SPRINGMEYER:  No.

9              THE COURT:  There can be objections.  I'm not saying a

10  party shouldn't object, but what I'm saying is that,

11  particularly when it comes to business records, you all are very

12  seasoned lawyers.  I would be shocked if we were having

13  objections to those types of records rather than relevance or

14  other types of objections like hearsay.

15             Is that your list?  Are you done?

16             Well, no, that's helpful because, again, we get these

17  things out of the way ahead of time.

18             MR. SPRINGMEYER:  The more we know the better we can

19  make it go smoothly for Your Honor, too, so ...

20             THE COURT:  Okay.  All right.

21             Mr. Williams, I saw you stand up a few times.  So I

22  want to give you an opportunity to be able -- I don't know if

23  you have a list of your own.

24             MR. WILLIAMS:  Your Honor, I stood up and then was able

25  to sit down because you answered the question and so that was

————2:15-cv-01045-RFB-BNW————

1  helpful.  The only thing I had is, and I appreciate

2  Mr. Springmeyer going through his questions, I anticipate the

3  parties will have other ones that they think of, you know, at a

4  point in time that's before our next status check is scheduled

5  or something like that.  Is the best way to get answers to those

6  questions to submit them through Ms. Smith?  I'm not looking to

7  bother the Court or its staff, but to the extent that these

8  things come up, is there a way you prefer we handle those?

9         THE COURT:  Can you give me an example of what you

10  mean?  And then I can give you a more direct answer.  Because if

11  it requires back and forth in terms of argument, then that

12  should wait.

13         MR. WILLIAMS:  No, no, no.

14         THE COURT:  If it's about procedures and practices, for

15  example, then you can simply e-mail -- as long as you're copying

16  opposing counsel, you can simply e-mail my chambers, e-mail

17  Ms. Smith, and we will respond to that.

18         MR. WILLIAMS:  That's fine.  I was talking about the

19  latter, so that's helpful.  Thank you.

20         THE COURT:  Okay.  Is there anything else that we need

21  to address today?

22         MR. CRAMER:  I don't think so, Your Honor.  Thank you.

23         MR. WILLIAMS:  I think we're good, Judge.  Thanks.

24         THE COURT:  Well, hold on.  Let me look at my list.

25         (Court conferring with law clerk.)

2:15-cv-01045-RFB-BNW

1      THE COURT:  Are there any other outstanding motions?  I
2  think we have one motion to withdraw that I haven't ruled on and
3  the unrelated matter regarding representation of class members.
4  Is there anything else?  Any other outstanding motion?  I'm
5  trying to go through my list.  I don't think there is anything
6  else that I see.

7      MR. YATES:  Your Honor, just on the class notice, I
8  think our -- we need -- we're going to be responding I think on
9  Monday.  We're meeting and conferring with plaintiffs' counsel
10  about whether or not the class notice needs to be amended in
11  light of the fact that the notice says the plaintiffs were
12  seeking injunctive relief, and they on December 22nd decided not
13  to pursue injunctive relief in this case.

14      THE COURT:  Okay.  And that's a good question.

15      Mr. Cramer?

16      MR. CRAMER:  Our view is that the law does not require
17  to amend the notice every time something changes in a case like
18  that.  Secondly, most of the members of the Le class are retired
19  so it's not necessarily a salient issue for them.  Thirdly,
20  we're seeking injunctive relief as -- we're part of a related
21  case, the Johnson case, and that injunctive relief would be on
22  behalf of -- you know, we would try to reform the contracts and
23  provisions in general and, thus, would help the Le fighters.

24      We do not think it's necessary or advisable to send out
25  an amended notice.  It would cause confusion among class

—2:15-cv-01045-RFB-BNW—

1   members.  So far I think -- I think the opt-out deadline is

2   Monday.  We've received very little reaction to the notice.

3           So our view is that that is not required, not

4   advisable, or not appropriate.

5           THE COURT:  I would tend to agree with that, Mr. Yates.

6   Unless there's something more substantive than just the change

7   of relief, I think filing an amended notice at this time would

8   be confusing and unnecessary, but if there are other objections

9   you had, you can let me know.

10          MR. YATES:  We will do so, Your Honor.  I don't agree

11  obviously with Mr. Cramer's take on the law.  I respect Your

12  Honor's comments and will take them into account, but we'd be --

13  we'll probably file something --

14          THE COURT:  That's fine.  You're free to file

15  something.  I can take a look at it in more depth when that

16  happens.

17          MR. YATES:  I appreciate that.  Thank you.

18          MR. CRAMER:  Thank you, Your Honor.

19          THE COURT:  Okay.  I think that we are done, if there's

20  nothing else.  So we'll be adjourned on this case.  Thank you

21  all.  Have a good weekend.  Safe travels.

22          (Whereupon the proceeding concluded at 9:06 a.m.)

23

24

25

```
                        2:15-cv-01045-RFB-BNW
```

1                           --oOo--

2              COURT REPORTER'S CERTIFICATE

3

4       I, PATRICIA L. GANCI, Official Court Reporter, United

5  States District Court, District of Nevada, Las Vegas, Nevada,

6  certify that the foregoing is a correct transcript from the

7  record of proceedings in the above-entitled matter.

8

9  Date:  January 19, 2024.

10                              /s/ **Patricia L. Ganci**

11                              Patricia L. Ganci, RMR, CRR

12

13

14

15

16

17

18

19

20

21

22

23

24

25