WILLIAM A. ISAACSON (*Pro hac vice*)
wisaacson@paulweiss.com
KAREN L. DUNN (*Pro hac vice*)
ldunn@paulweiss.com
JESSICA PHILLIPS (*Pro hac vice*)
jphillips@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006

DONALD J. CAMPBELL (No. 1216)
djc@campbellandwilliams.com
J. COLBY WILLIAMS (No. 5549)
jcw@campbellandwilliams.com
CAMPBELL & WILLIAMS
7100 South 7th Street
Las Vegas, NV 89101

CHRISTOPHER S. YATES (*Pro hac vice*)
chris.yates@lw.com
AARON T. CHIU (*Pro hac vice*)
aaron.chiu@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111

SEAN M. BERKOWITZ (*Pro hac vice*)
sean.berkowitz@lw.com
LATHAM & WATKINS LLP
330 North Wabash Ave, Suite 2800
Chicago, IL 60611

LAURA R. WASHINGTON (*Pro hac vice*)
laura.washington@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd, Suite 1100
Los Angeles, CA 90067

*Attorneys for Defendant Zuffa, LLC*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>Defendant. | Case No.: 2:15-cv-01045-RFB-BNW<br><br>**DEFENDANT ZUFFA, LLC'S MOTIONS IN LIMINE RELATING TO THE CLASS PERIOD IN THIS CASE** |

## I. MOTION *IN LIMINE* NO. 1: MOTION TO ADMIT EVIDENCE OF POST-CLASS PERIOD MARKET ENTRY & EXPANSION[1]

Given the number of years that have elapsed since the conclusion of the class period spanning December 2010 to June 2017 (the "Class Period"), Zuffa, LLC ("Zuffa") moved in October 2023 to reopen fact discovery and allow the submission of targeted supplemental expert reports because evidence of changing market conditions since the conclusion of the Class Period bears directly on whether, as Plaintiffs claim, Zuffa has monopsony power. Mot. to Reopen Disc., Dkt. 884. Whether a firm has monopoly or (as here) monopsony power turns on whether such power is *durable*, and evidence of changing market conditions is directly relevant to that inquiry. *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 998–99 (9th Cir. 2023) (affirming judgment on Section 2 monopolization claim where "the district court found that although Apple possesses 'considerable' market power in the market for mobile-game transactions, that power is not durable enough to constitute monopoly power given the influx nature of the market"); *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 613 F. Supp. 3d 1308, 1334 (S.D. Cal. 2020) ("[T]he Court will not infer the requisite *durable* monopoly power here where there are low barriers to entry and expansion, for '[a] mere showing of substantial or even dominant market share alone cannot establish market power sufficient to carry out a predatory scheme.'" (quoting *Rebel Oil Co., Inc. v. Atl. Richfield Co.*, 51 F.3d 1421, 1439 (9th Cir. 1995) (second alteration in original) (citation omitted)), *aff'd*, 9 F.4th 1102 (9th Cir. 2021); *United States v. Syufy Enters.*, 903 F.2d 659, 665–66 (9th Cir. 1990) ("In evaluating monopoly power, it is not market share that counts, but the ability to *maintain* market share").[2]

---

[1] Zuffa has organized its motions *in limine* by subject matter. The instant Motion relates to issues related to the Class Period. Zuffa and Plaintiffs have been in ongoing discussions about various other evidentiary issues and potential stipulations. To the extent the parties are unable to resolve these issues, Zuffa reserves the right to supplement its motions *in limine* and address additional issues with the Court.

[2] *See also Lektro-Vend Corp. v. Vendo Co.*, 660 F.2d 255, 270–71 (7th Cir. 1981) (considering market performance subsequent to alleged attempt to monopolize in evaluating Section 2 claim); *Nifty Foods Corp. v. Great Atl. & Pac. Tea Co.*, 614 F.2d 832, 841 (2d Cir. 1980) (affirming dismissal of Section 2 claim based on market share evidence subsequent to alleged conduct).

1    In the nearly seven years between the end of the Class Period and when trial will begin,

2    there have been a number of substantial developments in the MMA industry that bear critically on

3    the jury's evaluation of Plaintiffs' monopsony claim.   These developments include the entry,

4    growth, and success of competing promoters, and they all directly undermine Plaintiffs' theory of

5    the case.   Indeed, it is settled law that developments such as these, which follow the period of

6    alleged misconduct, can be considered—and are often highly relevant—in determining liability

7    under Section 2.  *See, e.g.*, *Cornwell Quality Tools Co. v. C.T.S. Co.*, 446 F.2d 825, 833 (9th Cir.

8    1971) ("evidence of any activity of [an alleged monopolist] that may reflect upon its market

9    position or the intentions of its management at the time of the alleged violations is admissible,

10   regardless of when it occurred"); *Rebel Oil*, 51 F.3d at 1439–41 (a showing "of substantial or even

11   dominant market share alone cannot establish market power sufficient to carry out [a] predatory

12   scheme.  [Plaintiffs] must show that new rivals are barred from entering the market and show that

13   existing competitors lack the capacity" to challenge the dominant firm); *Syufy*, 903 F.2d at 665–

14   66 (finding that firm lacked monopsony power where the "market was more competitive when this

15   case came to trial than before [the conduct at issue]."); *see also Geneva Pharms. Tech. Corp. v.*

16   *Barr Labs., Inc*., 2005 WL 2132438, at *6 (S.D.N.Y. Sept. 6, 2005) (post-class-period evidence is

17   relevant to evaluating earlier market conditions because "[t]he time period for analyzing the ability

18   of a competitor to enter the marketplace, however, is not tied to the date of a defendant's alleged

19   unlawful conduct").  This is because such developments bear on essential elements of a plaintiff's

20   claim, including:  (1) market definition; (2) durable monopsony power; and (3) anticompetitive

21   conduct.  *See, e.g.*, *Rebel Oil*, 51 F.3d at 1439–41; *Epic*, 67 F.4th at 998–99; *Aya Healthcare*, 613

22   F. Supp. 3d at 1334.  During a November 2023 hearing, the Court confirmed that a motion to admit

23   current market condition evidence would be considered before trial.  Hr'g Tr. 61:16-18, 61:24,

24   62:5, Nov. 21, 2023, Dkt. 923 ("Nov. 21 Hr'g Tr.").  Specifically, the Court stated:

25       I also wanted to be clear that my decision about these motions is not necessarily
         dispositive of evidence that can be presented. . . But I want to be clear, Mr. Cramer
26       and Mr. Yates and Mr. Isaacson, I'm not making a categorical decision about
         admissibility as it relates to trial at this time.  I find that those decisions have to be
27       made in the moment and potentially either side could open the door to information.
         And so I'm saying that to the plaintiffs so they can be particularly aware of that.
28

1    *Id.* at 61:16–62:5.

2        **A.**     **Plaintiffs Intend To Raise Arguments To The Jury That Are Directly Refuted**

3             **By Post-Class Period Developments**

4       Plaintiffs' trial brief makes clear they intend to present a truncated version of the case that

5 omits evidence that bears directly on liability. *See* Pls.' Trial Br., Dkt. 978. For example, Plaintiffs

6 make sweeping claims that Zuffa's conduct "prevented other potential MMA promotions" from

7 entering and "attracting other elite MMA fighters," "deprived potential rivals of access to a critical

8 mass of top fighters," and "deprived potential competitors of the fighters needed to compete." *Id.*

9 at 2, 22–23. Plaintiffs will say that these sentences refer only to the Class Period ending in mid-

10 2017, but this only illustrates the fatal flaw in their position. If Zuffa's conduct did not prevent

11 entry on an enduring basis starting in mid-2017 and the ensuing years, then there were never

12 sufficient barriers to competition to demonstrate monopsony power. If Plaintiffs are allowed to

13 present their arguments and evidence on market entry in an attempt to prove Zuffa's monopsony

14 power, then Zuffa is equally entitled to present evidence that rival promoters not only entered and

15 grew during the Class Period, but continued to expand afterwards, demonstrating that Zuffa lacks

16 any sort of durable market power.

17       Similarly, Plaintiffs claim that "elite MMA fighters on average were locked up in contracts

18 that lasted longer than their careers in top level MMA." *Id.* at 15. But if Plaintiffs are permitted

19 to argue that Zuffa's contracts lasted longer than athletes' careers, Zuffa *must* be permitted to show

20 evidence of how long the athletes' careers *actually lasted*. Because MMA athletes' careers,

21 including those of the named Plaintiffs, lasted far longer than Plaintiffs falsely claim, evidence that

22 career length extended beyond the end of the Class Period is highly relevant to Zuffa's defense.

23       Plaintiffs also apparently intend to argue that a fighter's career is over if he or she is no

24 longer fighting for UFC. *Id.* at 14. This is nonsense. The experiences of two named plaintiffs—

25 Brandon Vera and Jonathan Fitch—show that their professional fighting careers continued for

26 years after they left UFC, as they went on to fight for UFC's rivals World Series of Fighting

27 ("WSOF"), Professional Fights League ("PFL"), ONE Championship, and Bellator MMA

28 ("Bellator"). It would be fundamentally unfair and prejudicial for Plaintiffs to argue they lack

1   options beyond UFC and their careers ended after UFC, when undisputed evidence immediately

2   following the Class Period confirms the opposite for Plaintiffs Vera and Fitch—who are

3   supposedly adequate representatives of a class of MMA fighters.  Permitting Plaintiffs to present

4   this incomplete picture, artificially limited to the Class Period, would not only be inequitable, but

5   confusing for the jurors, who will be left wondering what happened after 2017 to the careers of the

6   named Plaintiffs and what the marketplace currently reflects.  *See* Fed. R. Evid. 403.

7   The Court should not permit Plaintiffs to make sweeping claims that are specifically

8   contradicted and disproven by post-Class Period developments.

9   **B.    Plaintiffs Recognize The Relevance Of Post-Class Period Evidence**

10   Plaintiffs also have no credible basis to suggest that post-Class Period evidence is not

11   relevant.  *Plaintiffs themselves have included a variety of post-Class Period evidence on their own*

12   *exhibit list.*  For example, Plaintiffs intend to introduce a video of a post-Class Period MMA fight,

13   PTX-0135; a post-Class Period "*MMAJunkie*" article about a post-Class Period Floyd Mayweather

14   vs. Connor McGregor fight, PTX-0382; and a series of fight rankings from Fight Matrix that all

15   post-date the Class Period, PTX-0684-85, PTX-0687.

16   Apparently recognizing their contradictory position on post-Class Period evidence (that

17   Plaintiffs can present it while Zuffa cannot), Plaintiffs' trial brief includes a footnote of

18   inapplicable case law.  *See* Dkt. 978 at 6 n.4.  Not a single one of the out-of-circuit cases cited by

19   Plaintiffs to preclude the admission of evidence of current market conditions is an antitrust case,

20   let alone a Section 2 case, or a monopsony case.  Two are securities cases, one is a Fair Labor

21   Standards Act case, and one is a negligent hiring dispute.  The fact that some courts limited post-

22   class period evidence in such cases is unremarkable given the elements of those claims.  The

23   bottom line is that none are instructive or persuasive here.

24
25   **C.    Zuffa Seeks To Admit Limited And Specific Post-Class Period Evidence To Specifically Address Plaintiffs' Arguments**

26   To address these issues raised by Plaintiffs in their trial brief, Zuffa seeks an order

27   permitting the admission of certain specific and limited categories of testimony and evidence that

28   post-date the Class Period, including:

- Testimony from named Plaintiffs Vera and Fitch regarding their careers following the end of the Class Period, including their contracts with and time competing for UFC's rivals.

- Testimony from the athletes on Zuffa's witness list that competed after the close of the Class Period. For example, Michael Chandler fought for Bellator during and after the Class Period, before moving to UFC. And Chael Sonnen fought for UFC during the Class Period, as well as Bellator during and after the Class Period.

- Testimony from UFC executives, who have continued to compete with growing rival promoters after the Class Period.

- Testimony from managers and agents who have negotiated with MMA promoters during and after the Class Period, including UFC, Bellator, ONE FC, PFL, and many others.

- Evidence that Bellator, a significant competitor during the Class Period, has continued to grow since 2017. In 2018, Bellator began to host its Grand Prix tournament, and from 2014 to 2020, Bellator saw at least 20% growth in revenue every year. *See* Dkt. 926 at 15 n.44; Def.'s Mot. to Reopen Disc. Ex. 1, Topel Decl. ¶ 7, Dkt. 884-2. In June, 2018, Bellator announced a five-year, nine-figure streaming deal with DAZN, covering the U.S. and other markets. Def.'s Renewed Mot. for Summ. J. Ex. 113, Epstein Decl. ¶ 6, Dkt. 879-113. In September, 2020, it was announced that Bellator cards would move to CBS Sports Network starting October 1, with preliminary bouts to stream on YouTube and CBSSports.com. *Id.* In February 2021, it was announced that Bellator events would begin airing exclusively on Showtime in April 2021. *Id.*

- Evidence that PFL, founded in 2017 and launched in 2018, became the successor to MMA promoter WSOF. *Id.* ¶ 8. In January, 2018, PFL announced that it had reached a multi-platform distribution deal for the inaugural 2018 season with NBC Sports Group and Facebook. *Id.* ¶ 9. Within the United States, beginning in June 2017, NBC Sports Group established a live Thursday night PFL franchise, presenting seven regular-season live events in prime time. *Id.* Events televised by NBCSN also streamed on NBCSports.com and the NBC Sports app. All regular season events had encore telecasts on NBCSN later the same night. *Id.* Beginning in February 2019, the PFL's events began being broadcast by ESPN in the United States and TSN in Canada. *Id.* PFL events and playoff matches air on ESPN+ and ESPN2, with the Championship Event on New Year's Eve airing exclusively on ESPN2 and ESPN Deportes. *Id.* Since its founding, PFL has generated investment from the Public Investment Fund of the Kingdom of Saudi Arabia and various other private equity firms that have collectively invested hundreds of millions of dollars. *Id.* ¶ 8. PFL also has sponsorships from major brands like GEICO, Draft Kings, Bose, Bud Light, and Celsius, *id* ¶ 10, and distribution deals with NBC Sports Group and Facebook, and has had its events broadcast on ESPN. *Id.* ¶ 9. And, most notably, in 2023 PFL purchased competing MMA promoter Bellator. Press Release, Professional Fighters League, Professional Fighters League Acquires Bellator, Creating Global MMA Powerhouse (Nov. 20, 2023), https://pflmma.com/news/professional-fighters-league-acquires-bellator-in-industry-transformative-deal.

- Evidence that ONE Championship continues to expand its presence in the United States after a fundraising round led by Guggenheim Investments and the Qatar Investment Authority that valued the MMA promoter at $1.4 billion.  Epstein Decl. ¶ 12.  ONE Championship continues to have global success, drawing an average of 50 million viewers per event compared to around 40,000 viewers six years ago, and is streamed over Amazon Prime in the United States.  *Id.* ¶ 11.

- On April 15, 2021, it was announced that Anthem Sports & Entertainment had acquired Invicta Fight Championship ("Invicta").  *Id.* ¶ 13.  Starting with Invicta FC 44 on May 21, 2021, Invicta events are broadcast live on the Anthem-owned networks AXS TV and Fight Network in the United States and Canada, respectively, as well as on IFC's YouTube channel.  *Id.*

Permitting Zuffa to present this critical evidence in its defense does not prejudice Plaintiffs in any way.  In fact, Plaintiffs have an advantage over Zuffa with respect to the majority of this testimony, because much of this evidence will be presented through Bout Class members, whom Plaintiffs' counsel claims to represent and to whom they have unique access.  Plaintiffs' counsel has refused to allow counsel for Zuffa to contact these athletes, including specifically denying Zuffa's request in writing on February 21, 2024.  Plaintiffs' counsel can speak with these witnesses at any time and have long had their contact information, but Zuffa's counsel enjoys no such access.

This is precisely the type of case where evidence of current market conditions is relevant to evaluating earlier market conditions, and bears directly on the dispositive question of whether Zuffa has durable monopsony power—particularly because so much time will have elapsed since the end of the Class Period and the commencement of trial.  *See* Fed. R. Evid. 401, 402.  Evidence subsequent to the period of alleged misconduct—from 2017 to the present—is probative of Zuffa's alleged market power and to what degree it bears on the existence of barriers to entry or is otherwise instructive of market structure.  *See, e.g.*, *Rebel Oil*, 51 F.3d at 1439–41.  The entry of competitors, movement of fighters between promoters, growth and expansion of the industry domestically and internationally, influx of private equity investment, and the explosion in sponsorship and distribution deals *since* the Class Period are a direct result of the market conditions *during* the Class Period—and entirely undermine Plaintiffs' claim that Zuffa ever maintained durable monopsony power.  Zuffa's ability to present such evidence of current market conditions is highly relevant and probative of Plaintiffs' claim of durable monopsony power and essential to

1    Zuffa's defense at trial.  It would be error, under controlling Ninth Circuit precedent, to exclude

2    it.[3]  Accordingly, the Court should grant Zuffa's Motion to admit post-Class Period evidence.

3         If the Court determines that such evidence is inadmissible, Plaintiffs should similarly be

4    barred from raising arguments, presenting evidence, or eliciting testimony that in any way

5    implicate events after the Class Period or that are misleading without the context of post-Class

6    Period evidence.  This would include any suggestion that (1) Zuffa's competitors did not continue

7    to grow after the Class Period or that Zuffa's competitors are "minor league" given their

8    indisputable growth post-Class Period; (2) that fighters did not continue to move from Zuffa to

9    other promoters (and back) after the Class Period; (3) that there are durable barriers to entry given

10   the indisputable entry and growth of competitors after the Class Period.  Such a ruling would not

11   cure any prejudice to Zuffa from an exclusion of evidence about industry conditions since 2017

12   but, as the Court previously acknowledged, any limit on such testimony must at the very least be

13   reciprocal.  *See* Nov. 21 Hr'g Tr. 58:14–25, 59:1, Dkt. 923.

14   **II.    MOTION *IN LIMINE* NO. 2: MOTION TO PRECLUDE EVIDENCE AND**
15   **       TESTIMONY OF   ALLEGED THREATS OR COERCION OUTSIDE THE**
     **       LIMITATIONS PERIOD**
16

17        Plaintiffs have repeatedly made clear they intend to rely on evidence of allegedly

18   anticompetitive acts—specifically, supposed threats and coercive acts—by Zuffa that occurred

19

20

21

22   _____

     [3]  Evidence of current market conditions is also relevant to Zuffa's defense against Plaintiffs' claim
     that Zuffa's industry-standard multi-bout contracts are exclusionary.  Because Zuffa is alleged to
23   have used virtually identical contracts during and after the Class Period, and competitors have
     continued to emerge, grow, and succeed, this evidence is probative of Plaintiffs' claim that Zuffa's
24   contracts are anticompetitive.  For example, movement of athletes from Zuffa to other promoters
     has accelerated over the past six years—powerful evidence that the contracts at issue in this case
25   are not exclusionary.  And Plaintiffs have alleged in the *Johnson* case that the contracts Zuffa used
     after the Class Period are substantially similar to those it used during the Class Period.  *See* Compl.,
26   *Johnson v. Zuffa, LLC*, No. 2:21-cv-01189 (D. Nev.), Dkt. 1.  It follows that the mobility of fighters
     after the Class Period is relevant to the alleged effects of the similar contractual provisions during
27   the Class Period.  This evidence shows that the contracts could not have substantially hindered the
     movement of fighters during the Class Period, undercutting Plaintiffs' core claim that Zuffa's
28   contracts allowed it to maintain an unlawful monopoly.

1  prior to December 2010, outside the Clayton Act's four-year statute of limitations.[4]  Dkt. 978 at

2  4–5, 10–13.  Though Plaintiffs contend such evidence is admissible under the "continuing

3  violation" doctrine, these alleged acts cannot support antitrust liability or damages.  *Id.* at 4–5;

4  Pls.' Opp'n. to Def.'s Renewed Mot. for Summ. J. at 36 n.90, Dkt. 926.  That is because Plaintiffs'

5  sole remaining monopsonization claim for damages rests upon UFC's multi-bout contracts.  They

6  do not seek damages or any injunctive or structural relief flowing from any pre-limitations period

7  conduct.  And in any event, the continuing violation exception to the antitrust statute of limitations

8  does not apply to acts that by their nature cannot be continuing.  *See Samsung Elecs. Co., Ltd. v.*

9  *Panasonic Corp.*, 747 F.3d 1199, 1202 (9th Cir. 2014); *Midwestern Mach. Co. v. Nw. Airlines,*

10  *Inc.*, 392 F.3d 265, 271 (8th Cir. 2004); *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039,

11  1052 (8th Cir. 2000).  Plaintiffs' attempt to invoke the continuing violation doctrine is nothing

12  more than a wrongful and prejudicial attempt to introduce pre-limitations period evidence, when

13  their remaining antitrust damages claim seeks to recover for limitations-period conduct in the form

14  of Zuffa's multi-bout contracts.  To avoid juror confusion, waste of time, and unfair prejudice, the

15  Court should preclude presentation of evidence of allegedly anticompetitive acts by Zuffa prior to

16  December 2010.  *See* Fed. R. Evid. 403.

17      Throughout this litigation, Plaintiffs have pointed to various acts allegedly committed by

18  Zuffa before December 2010 that they claim to be anticompetitive.  For example:

19  - Plaintiffs allege Zuffa threatened to retaliate against fighter B.J. Penn for defecting to
20    another promoter by banning him from the UFC and removing videos of his fights from
      UFC's DVD library in 2004.  Am. Compl. ¶ 118, Dkt. 208.

21
22  - Plaintiffs allege that Zuffa retaliated against former UFC fighter Randy Couture for a
      contract dispute related to his likeness rights by airbrushing him out of an advertisement in
23    2001.  *Id.* ¶ 119.

24

25  _____

26  [4] Because Plaintiffs have abandoned their claim for injunctive relief and proceed to trial on a single
    claim of monopsonization under Section 2 for damages, the Clayton Act's four-year statute of
27  limitations, 15 U.S.C. § 15b applies to their sole remaining claim.  *Cf. Oliver v. SD-3C LLC*, 751
    F.3d 1081, 1084 (9th Cir. 2014) (where "Plaintiffs seek only injunctive relief under federal law,
28  their federal antitrust claim is subject to the equitable doctrine of laches and not the four-year
    statute of limitations in section 4B of the Clayton Act, 15 U.S.C. § 15b").

1
2

- Plaintiffs allege that Zuffa retaliated against named Plaintiff Fitch for refusing to assign UFC his likeness rights by releasing him from the UFC in 2008.  Pls.' 1st Am. Resp. to Zuffa's Interrog. No. 5, DX-864 at DX-864.34–35.[5]

3
4
5

- Plaintiffs allege Zuffa threatened Nathan Quarry by stating, "If you don't like the first opponent [matchmaker Joe Silva] offer[s] you, you sure as hell will not like the second," *id.* at DX-864.36, even though Mr. Quarry is not a member of the Bout Class, having fought his last bout in March 2010—nine months before the beginning of the Class Period.

6
7
8

- Plaintiffs allege that Zuffa attempted to "counterprogram" unspecified fights promoted by another nascent competitor, ProElite XC, which was purchased by Strikeforce in 2009.[6] Ex. 7, Lappen Dep. 43:12–44:13.

9          Each of these examples allegedly occurred several years—and, in some cases, more than a

10   decade—before the beginning of the Class Period in December 2010.  The applicable statute of

11   limitations for Plaintiffs' sole remaining federal antitrust claim for damages is four years.  *See* 15

12   U.S.C. § 15b; *Samsung Elecs.*, 747 F.3d at 1202; *V5 Techs., LLC v. Switch, Ltd.*, 2021 WL

13   5310582, at *1 (D. Nev. Nov. 12, 2021) ("Therefore, [Plaintiffs'] antitrust claims must have been

14   filed four years after they accrued.").  Any acts alleged prior to December 2010 therefore falls

15   *outside* the statute of limitations and cannot support their theory of liability or damages.  *Samsung*

16   *Elecs.*, 747 F.3d at 1202; *see also CSX Transp., Inc. v. Norfolk S. Ry. Co.*, 648 F. Supp. 3d 679,

17   695–98 (E.D. Va. 2023) (tracing doctrinal development and collecting cases across Circuits); *In*

18   *re Animation Workers Antitrust Litig.*, 87 F. Supp. 3d 1195, 1211–14 (N.D. Cal. 2015).  Courts in

19   this Circuit routinely exclude such evidence of untimely claims.  *See e.g.*, *Tennison*, 244 F.3d at

20   689–90; *V5 Techs.*, 2021 WL 5310582, at *1–2; *Nolan v. City of Los Angeles*, 2011 WL 13127159,

21   at *3 (C.D. Cal. Apr. 6, 2011).

22         Plaintiffs are wrong that the jury may consider this stale, remote evidence under the

23   continuing violation doctrine.  Dkt. 978 at 4–5, 10–13; Dkt. 926 at 36 n.90.  A continuing violation

24

---

25   [5] Examples like this one and the preceding, which concern Randy Couture's and Plaintiff Fitch's
26   likeness rights, are particularly problematic because the Court has not certified a Likeness Class.
     Class Certification Or., Dkt. 839 at 1, 77–78.  This evidence is therefore not only barred by the
27   statute of limitations, but entirely irrelevant as well, because it has no bearing on Plaintiffs'
     allegations of monopsony power in the Relevant Market.

28   [6] All exhibits cited herein are to the David Johnson Declaration in Support of Zuffa's Motions *in*
     *Limine* unless otherwise stated.

1   of the antitrust laws requires that a defendant complete an overt act during the limitations period

2   that is (1) a new and independent act that is "not merely a reaffirmation of a previous act" and (2)

3   one that "must inflict new and accumulating injury on the plaintiff." *Samsung Elecs.*, 747 F.3d at

4   1202 (citation omitted). "[E]ach overt act that is part of the antitrust violation and that injures the

5   plaintiff . . . starts the statutory period running again, regardless of the plaintiff's knowledge of the

6   alleged illegality at much earlier times." *Klehr  v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997)

7   (citation omitted). The standard underlying this doctrine is "meant to differentiate those cases

8   where a continuing violation is ongoing—and an antitrust suit can therefore be maintained—from

9   those where all of the harm occurred at the time of the initial violation." *Samsung Elecs.*, 747 F.3d

10   at 1202.

11         The doctrine includes a critical caveat: although a continuing violation might allow a claim

12   to survive that would otherwise be time-barred, it cannot resurrect a plaintiff's ability to recover

13   damages for those earlier acts outside the limitations period. *E.g.*, *CSX Transp.*, 648 F. Supp. 3d

14   at 698 ("[A] competitor that is excluded from a market and sleeps on its rights loses its ability to

15   recover monetary damages stemming from conduct occurring before the limitations period."). In

16   "antitrust cases, the plaintiff cannot use an independent, new predicate act as a bootstrap to recover

17   for injuries caused by other earlier predicate acts that took place outside the limitations period."

18   *Klehr*, 521 U.S. at 190.

19         The problem here for Plaintiffs is that their antitrust damages theory is not linked to any of

20   the pre-limitations period conduct that they seek to introduce at trial. There is no evidence that

21   any of the instances of the alleged threats, coercion or other conduct before the Class Period, were

22   part of some broader, scheme by Zuffa to monopsonize any alleged market. Their entire damages

23   theory and model is based on Zuffa's alleged exclusionary multi-bout contracts. In this regard,

24   their attempt to invoke the continuing violations doctrine is a red herring; because they do not seek

25   antitrust damages stemming from any pre-limitations or pre-Class Period conduct, but rather

26   damages from Zuffa's multi-bout contracts, any evidence of pre-limitations period conduct is

27   neither relevant nor probative as to whether Zuffa's contracts are exclusionary or anticompetitive.

28

1   Allowing such evidence to be presented would create a very real risk that the jury improperly relies

2   on it when assessing liability and damages.

3         Admission of this evidence is also certain to lead to a series of mini-trials as the parties

4   litigate what evidence may come in and what is too remote. *See, e.g.*, *Tennison v. Circus Circus*

5   *Enters., Inc.*, 244 F.3d 684, 690 (9th Cir. 2001). Presenting jurors additional evidence on which

6   they cannot rely in considering liability and damages in an already weekslong proceeding will be

7   exceedingly confusing and waste time. *Id.* More importantly, excluding this evidence would

8   prevent the likelihood that the jury relies on it erroneously in assessing liability and damages. *Id.*

9   In short, the risk of unfair prejudice to Zuffa if this evidence is admitted is significant and the

10  probative value of the evidence is minimal. It should be excluded. *See* Fed. R. Evid. 403; *United*

11  *States v. Espinoza-Baza*, 647 F.3d 1182, 1189 (9th Cir. 2011) ("'Where the evidence is of very

12  slight (if any) probative value, . . . even a modest likelihood of unfair prejudice or a small risk of

13  misleading the jury' will justify excluding that evidence." (citation omitted)).

14
15  **III.   MOTION *IN LIMINE* NO. 3:  MOTION TO PRECLUDE EVIDENCE OF ZUFFA'S PRE-CLASS PERIOD ACQUISITIONS**

16        Plaintiffs should not be permitted to introduce evidence of Zuffa's acquisitions of and

17  disputes with other MMA promoters nearly two decades ago, before the December 2010 start of

18  the class period. Specifically, Plaintiffs may seek to introduce evidence of Zuffa's acquisitions of:

19        (1) World Extreme Cagefighting ("WEC") in December 2006;

20        (2) World Fighting Alliance ("WFA") in December 2006;

21        (3) Pride Fighting Championships ("Pride") in May 2007; and

22        (4) International Fight League ("IFL") in July 2008, as well as Zuffa's disputes with MMA

23  promoters Affliction Entertainment ("Affliction"), which ceased operations in July 2009, and

24  HDNet Fights ("HDNet"), which agreed not to promote live MMA bouts pursuant to a November

25  2010 settlement agreement.[7]

26        Evidence of these acquisitions must be excluded. First, none is actionable because each

27  falls outside the four-year statute of limitations imposed by the antitrust laws. While Plaintiffs

28

---

[7] Plaintiffs' trial brief only refers to WFA, WEC, and Pride. Dkt. 978 at 10–11.

1  invoke the "continuing violation" doctrine, that doctrine does not apply to the acquisitions context

2  here.  Second, evidence of these acquisitions is irrelevant because Plaintiffs have presented no

3  evidence that the acquisitions were anticompetitive and claim no damages based on those

4  acquisitions.  Third, evidence of the acquisitions is misleading and prejudicial under Federal Rule

5  of Civil Procedure 403.

6  **A.    Evidence Related To Pre-Class Period Acquisitions Are Time-Barred And Not Subject To The Continuing Violations Exception**

7

8  Any claims related to Zuffa's pre-Class-Period acquisitions accrued when those

9  transactions closed—all before December 2010—and are therefore time-barred.  *See Airweld, Inc.*

10  *v. Airco, Inc.*, 742 F.2d 1184, 1189–90 (9th Cir. 1984).  Plaintiffs should be precluded from

11  bringing any claims relating to Zuffa's acquisitions of WEC, WFA, and IFL, as well as Zuffa's

12  disputes with Affliction and HDNet, all of which occurred no later than November 2010.  Courts

13  regularly exclude similar evidence of untimely claims on motions *in limine*.  *See, e.g.*, *Tennison*,

14  244 F.3d at 688–89; *Nolan*, 2011 WL 13127159, at *3.

15  While Plaintiffs rely heavily on the "continuing violation doctrine" as a basis for admitting

16  evidence of these pre-limitations period acquisitions, Dkt. 978 at 4, the doctrine has no application

17  here.  Plaintiffs' principal authority for applying the doctrine involved a price-fixing conspiracy

18  (not acquisitions); it held that "each time a defendant sells its price-fixed product, the sale

19  constitutes a new overt act causing injury to the purchaser and the statute of limitations runs from

20  the date of the act."  *Oliver v*, 751 F.3d at 1086.  This case, of course, does not involve a price-

21  fixing conspiracy, but rather a single claim of monopsonization.  And while Plaintiffs try to suggest

22  that these pre-limitations-period acquisitions have something to do with their antitrust claim for

23  damages, their damages theory and model stem solely from Zuffa's alleged exclusionary multi-

24  bout contracts.  In any event, the law is clear that "[a]pplying [the] rationale" of the continuing

25  violation doctrine "to mergers makes no sense."  *Midwestern Mach.*, 392 F.3d at 271.  "Once the

26  merger is completed, the plan to merge is completed, and no overt acts can be undertaken to further

27  that plan.  Unlike a conspiracy or the maintaining of a monopoly, a merger is a discrete act, not an

28  ongoing scheme."  *Id.*  For that reason, "[c]ontinuing violations typically arise in the context of

Sherman Act or RICO claims where multiple defendants are alleged to be part of an ongoing conspiracy," and "[c]ontinuing violations have not been found outside the RICO or Sherman Act conspiracy context." *Concord Boat*, 207 F.3d at 1052.

Plaintiffs cite an out-of-circuit decision stating that the "application of a continuing violation" to a "monopolization claim" is "much narrower, but still permissible," at least where such claims are "based not only on acquisitions, but also on various forms of anticompetitive conduct." *Jones v. Varsity Brands, LLC*, 618 F. Supp. 3d 713, 721 (W.D. Tenn. 2022). That case is inapposite because the determination there was only that the plaintiffs had adequately pleaded the continuing violation exception. Here, however, Plaintiffs simply have no evidence that any of the pre-limitations-period acquisitions by Zuffa were in fact part of a broader, monopsonization scheme by Zuffa.

The *Varsity Brands* decision is also an outlier. The weight of authority, including cases in this Circuit, have not recognized the application of the continuing violation doctrine to Section 2 claims. Even where an acquisition "was just one part of an ongoing monopolization scheme," the continuing violation doctrine does not apply. *Complete Ent. Res. LLC v. Live Nation Ent., Inc.*, 2016 WL 3457177, at *1 (C.D. Cal. May 11, 2016) (citing *Midwestern Mach.*, 392 F.3d 265; *Z Techs. Corp. v. Lubrizol Corp.*, 753 F.3d 594 (6th Cir. 2014)). "It cannot be the case that if a merger leads to monopoly power then anything anticompetitive that the newfound monopolist does is a 'continuing violation' that began with the merger, allowing the merger to be challenged indefinitely under section 2 of the Sherman Act." *Id.* The "continuing violation doctrine does not make sense in the context of anticompetitive mergers." *Reveal Chat Holdco, LLC v. Facebook, Inc.*, 471 F. Supp. 3d 981, 994 (N.D. Cal. 2020) (citing *Midwestern Mach.*, 392 F.3d at 271; *Complete Ent. Res.*, 2016 WL 3457177, at *1); *accord Lloyd's Material Supply Co., Inc. v. Regal Beloit Corp.*, 2017 WL5172206, at *5 (C.D. Cal. June 26, 2017).[8]

---

[8] Plaintiffs' trial brief also cites two previous decisions of this Court, Dkt. 978 at 5, but neither of these decisions supported the application of the continuing violation doctrine. One was the Court's class certification decision, where the merits were not at issue. *See Le v. Zuffa, LLC*, 2023 WL 5085064, at *7 (D. Nev. Aug. 9, 2023). The other was the Court's decision on Zuffa's motion to dismiss, which held that, viewing Plaintiffs' allegations as a whole, they were sufficiently specific

1  Plaintiffs' reliance on *In re Google Digital Advertising Antitrust Litigation*, 2021 WL

2  2021990 (N.D. Cal. 2021), Dkt. 978 at 5, is also misplaced.  That case supports Zuffa, not

3  Plaintiffs.  The court there did not apply the continuing violation doctrine.  The Plaintiffs alleged

4  that through "a series of acquisitions," Google became "a major player at every level of the display

5  advertising service industry" and "exclude[d] competition through a variety of anticompetitive

6  policies and activities." 2021 WL 2021990, at *2.  These anticompetitive activities included "tying

7  its display advertising services to its search advertising services," "exploit[ing] user data," and

8  "foreclos[ing] technological compatibility."  *Id.*  However, the court found that the plaintiffs'

9  "acquisition-based allegations" were time-barred because "Google's acquisitions were [not] made

10  in concert" with that "other anticompetitive conduct." *Id.* at *4.  *Google* is on point here.  Plaintiffs

11  allege that Zuffa acquired monopsony power through pre-Class-Period acquisitions, and later

12  engaged in other anticompetitive conduct in the form of exclusive contracts and coercion.  Dkt.

13  987 at 10-20.  As in *Google*, Plaintiffs have no evidence that Zuffa's prior acquisitions were "in

14  concert" with some strategic plan by Zuffa to later implement and enforce its exclusive bout

15  contracts to depress fighter compensation.  Zuffa was already using its exclusive fighter contracts

16  well *before* the acquisitions at issue.

17  While Zuffa acquired Strikeforce in 2011, during the class period, that acquisition does not

18  give rise to the continuing violation exception.  Each "merger is a discrete act, not an ongoing

19  scheme."  *Midwestern Mach.*, 392 F.3d at 271; *see also Reveal Chat Holdco*, 471 F. Supp. at

20  995.  Accordingly, the acquisition of Strikeforce within the Class Period does not make earlier,

21  pre-limitations-period  acquisitions  timely.    Plaintiffs  cannot  revive  stale  claims  by

22  "bootstrap[ping]" them to an act within the limitations period.  *See Klehr*, 521 U.S. at 190.

23  Zuffa's acquisitions and disputes with other promoters prior to December 2010—WEC,

24  WFA, Pride, IFL, Affliction, and HDNet—are time-barred, and evidence of them should be

25  excluded.

---

28  to support its claims regarding Zuffa's exclusive contracts.  *Le v. Zuffa, LLC*, 216 F. Supp. 3d
1154, 1168 (D. Nev. 2016).

**B.      Evidence Of Pre-Class-Period Acquisitions Is Irrelevant And Inadmissible**

Zuffa's pre-Class-Period acquisitions are also irrelevant.  Plaintiffs have done nothing to establish that Zuffa's pre-Class-Period acquisitions violated the antitrust laws.  They have not attempted to define a relevant antitrust market prior to the class period, and have not alleged that Zuffa's pre-Class-Period acquisitions increased Zuffa's market power.  Moreover, Plaintiffs' expert Dr. Singer rendered no opinion on whether Zuffa's acquisitions (either before or within the class period) were independently anticompetitive.  Ex. 1, Singer Dep. 253:22–254:9.  Instead, Dr. Singer's damages model measured the effects of Zuffa's supposed foreclosure of the market using only "one necessary element" of Plaintiffs' alleged scheme: Zuffa's exclusive contracts.  *Id*. at 268:4–15.  Accordingly, Dr. Singer's damages model depends entirely on Zuffa's exclusive contracts: "if the long-term exclusive contracts were to go away, if the judge were to rule that those were procompetitive, right, then there would be no damages."  Class Cert. Hr'g Tr. 239:4–17, Aug. 26, 2019, Dkt. 724.  As Dr. Singer explained, "what goes on elsewhere"—including relating to Zuffa's acquisitions—"is not that important."  *Id.*

Because Plaintiffs have not even attempted to establish that Zuffa's pre-Class Period acquisitions violated the antitrust laws—and have claimed no injury or damages resulting from those acquisitions or disputes—evidence of them is irrelevant and should be excluded.

**C.      Evidence Of Pre-Class-Period Acquisitions Or Disputes Should Also Be Excluded Under Rule 403 Because They Are Confusing And Prejudicial And Would Result In Undue Delay**

Evidence of Zuffa's pre-Class-Period acquisitions and disputes should also be excluded for the independent reason that any probative value would be "substantially outweighed" by the risk of "confusing the issues," "misleading the jury," "unfair prejudice," "undue delay," and "wasting time" under Federal Rule of Evidence 403.

*First*, introducing evidence of these acquisitions risks confusing the jury and misleading jurors into the false impression that Zuffa can be held liable for numerous pre-Class-Period acquisitions when Zuffa made only one such acquisition during the Class Period (Strikeforce in March 2011).  Similarly, the Ninth Circuit has affirmed the exclusion of evidence of certain "fly-drive" agreements predating the fly-drive agreements actually at issue in the case because "[i]ts

1  relevance was slight and its potential for confusion and prejudice was substantial." *Robert's*

2  *Waikiki U-Drive, Inc. v. Budget Rent-a-Car Sys., Inc.*, 732 F.2d 1403, 1411 (9th Cir. 1984).

3      *Second*, allowing evidence of Zuffa's pre-Class-Period acquisitions would introduce a

4  serious countervailing risk of unfair prejudice to Zuffa, far outweighing its limited probative value.

5  *See* Fed. R. Evid. 403.  Based on their exhibit list, Plaintiffs will likely attempt to introduce highly

6  provocative and prejudicial evidence, such as (1) a complaint from a 2006 lawsuit that alleged Mr.

7  White and Zuffa "intend[ed] to 'crush the IFL' and drive IFL out of business" (PTX-1375); (2) an

8  October 2012 tweet from Mr. White that Pride was "dead" because he "killed em" (PTX-44, PTX-

9  1374); and (3) a 2007 Intangible Assets Memo for Ernst & Young stating that the purpose of the

10  WEC acquisition was to serve as "a second tier or 'minor league' feeder platform" for the UFC

11  and that the purpose of the WFA acquisition was "defensive to eliminate a second tier competitive

12  brand" (PTX-1, 110, 1028, 1124).  Such irrelevant but inflammatory evidence may mislead the

13  jury to erroneously condemn Zuffa's legitimate competitive behavior.  Even lawfully competitive

14  firms "'intend' to do all the business they can, to crush their rivals if they can." *A.A. Poultry*

15  *Farms, Inc. v. Rose Acre Farms, Inc.*, 881 F.2d 1396, 1402 (7th Cir. 1989) (concluding that the

16  statement "'[w]e are going to run you out of the egg business.  Your days are numbered' . . . readily

17  may be misunderstood by . . . jurors, whose expertise lies in fields other than economics").

18      *Third*, allowing Plaintiffs to introduce evidence or raise arguments about Zuffa's pre-Class-

19  Period acquisitions would significantly and unnecessarily delay the trial and waste time.  *See* Fed.

20  R. Evid. 403.  To the extent that Plaintiffs allege anticompetitive conduct regarding pre-Class

21  Period acquisitions or business conduct, Zuffa would rebut those allegations, leading to irrelevant,

22  time-consuming mini-trials within the time allocated to this trial.  "The probative value of [such

23  evidence] is vastly outweighed by the confusion and delay that would inevitably result from

24  conducting a trial within a trial." *ESPN, Inc. v. Off. of Comm'r of Baseball*, 76 F. Supp. 2d 383,

25  407 (S.D.N.Y. 1999).

26

27

28

1
2
### IV. MOTION *IN LIMINE* NO. 4: MOTION TO PRECLUDE EVIDENCE OR TESTMONY RELATED TO DIVIDENDS PAID BY ZUFFA PRIOR TO THE CLASS PERIOD

3   Plaintiffs should be precluded from introducing evidence and testimony related to

4   dividends paid by Zuffa to various UFC executives prior to the Class Period.  Any reference to

5   such evidence is a transparent attempt to appeal to the jurors' emotions and seek nullification rather

6   than a verdict on the merits.  *See Friedman v. Medjet Assistance, LLC*, 2010 WL 9081271, at *11

7   (C.D. Cal. Nov. 8, 2010) ("[A]ppeals to class prejudice are highly improper and cannot be

8   condoned and trial courts should ever be alert to prevent them." (quoting *United States v. Socony-*

9   *Vacuum Oil Co.*, 310 U.S. 150, 239 (1940)); *see also Kolay Flooring Int'l, LLC v. Fuente*, 2021

10  WL 4702429, at *3 (C.D. Cal. Sept. 10, 2021) (finding that "[defendant's] wealth ha[d] little to no

11  relevance to the issues in this action, which concern[ed], among other things, whether certain

12  agreements were formed between the parties" and that any probative value was "substantially

13  outweighed by the danger of unfair prejudice that may result from the jury basing their decision

14  on his wealth").

15  Since this case was filed, Plaintiffs have relentlessly pursued the issue of dividends paid

16  by Zuffa prior to the Class Period.  During depositions, expert discovery, and their briefing to the

17  Court, Plaintiffs have repeatedly leaned on payments made to Zuffa's founders and employees

18  before the Class Period.  For example, Plaintiffs' expert witness Guy Davis relied on evidence of

19  pre-Class Period dividends to find that "[f]rom *2005* to 2016, Zuffa distributed more than $1.45

20  billion in dividends and other value to the Original Equity Holders and January Capital," although

21  only "$499 million was paid during the Class Period."  Pls.' Opp'n to Def.'s Renewed Mot. for

22  Summ. J. Ex. 8, Expert Report of G. Davis at 17, Aug. 31, 2017,  Dkt. 926-10 (emphasis added).

23  Most recently, Plaintiffs described in their trial brief their intent to use this evidence at trial.  *See*

24  Dkt. 978 at 29 ("Plaintiffs anticipate introducing evidence both through Mr. Guy Davis . . . and

25  through other witnesses and documents, showing that Zuffa *extracted* billions of dollars from the

26  company, primarily to benefit three of its owners and executives—the Fertitta brothers and Dana

27  White." (emphasis added)).  But Plaintiffs have yet to articulate how this evidence is actually

28  relevant to their claims.  Nor can they.

1   The Court should not entertain Plaintiffs' efforts to use such evidence to create,
2   prejudicially, a class dynamic and generate animosity towards Zuffa's founders, including Lorenzo
3   Fertitta and Dana White, both of whom are on the Plaintiffs' and Zuffa's witness lists and will
4   testify at trial. This evidence is intended purely to inflame the jury. But it also falls outside the
5   Sherman Act's statute of limitations and is irrelevant to the issues in the case. The Court should
6   accordingly grant Zuffa's Motion and exclude this evidence for the following reasons.

7       *First*, evidence of pre-existing wealth is highly prejudicial, *see United States v. Hatfield*,
8   685 F. Supp. 2d 320, 326 (E.D.N.Y. 2010), and because it is irrelevant, this evidence would only
9   appeal to class prejudice. *See Friedman*, 2010 WL 9081271, at *11; *Kolay Flooring Int'l, LLC*,
10  2021 WL 4702429, at *3; *see also United States v. Holmes*, 2021 WL 2044470, at *4 (N.D. Cal.
11  May 22, 2021) ("evidence of [witness's] wealth . . . 'may so poison the minds of jurors even in a
12  strong case that an accused may be deprived of a fair trial'" (citation omitted)). Any pre-Class
13  Period dividend payments are beyond the statute of limitations, and therefore irrelevant. The only
14  conceivable purpose of such evidence would be casting Lorenzo Fertitta and Dana White in such
15  an unfair light as to garner an 'us vs. them' dynamic. This would only distract the jury from the
16  merits of Plaintiffs' case. The jury will be tasked with resolving whether the UFC monopsonized
17  a market for "Elite Professional MMA Fighter services" *during* the Class Period. Dividend
18  payments to Zuffa's founders before the Class Period are irrelevant to this question and would
19  only inflame the jury in an effort to secure a verdict based on emotion and not admissible evidence.

20      *Second*, evidence of any dividends paid by Zuffa before December 2010 falls outside the
21  Sherman Act's four-year statute of limitations. 15 U.S.C. § 15b; *V5 Techs., LLC v. Switch, Ltd.*,
22  2021 WL 5310582, at *1 (D. Nev. Nov. 12, 2021). As such, it is inadmissible to support Plaintiffs'
23  claims that Zuffa engaged in anticompetitive conduct *during* the Class Period. *See, e.g.*, *V5 Techs.,*
24  *LLC v. Switch, Ltd.*, 2021 WL 149837, at *11 (D. Nev. Jan 15, 2021) (antitrust and tortious
25  interference case, finding that "evidence of events that took place earlier than three years prior to
26  the filing of the suit" was "inadmissible because they fall outside the statute of limitations");
27  *Zucchella v. Olympusat, Inc.*, 2023 WL 2633947, at *7 (C.D. Cal. Jan. 10, 2023) (finding that
28  "Defendants may not present evidence that [plaintiff] received kickbacks [outside the statute of

1   limitation] to prove their [counter]claims"); *see also Shimozono v. May Dep't Stores Co.*, 2002

2   WL 34373490, at *13 (C.D. Cal. Nov. 20, 2002) ("The court will not consider evidence outside

3   the statute of limitations in determining if Plaintiffs are entitled to damages.")

4         *Third*, payments made by Zuffa to employees outside the statute of limitations are not

5   relevant to Plaintiffs' claims of alleged anticompetitive conduct *within* the Class Period.  Evidence

6   is relevant only if it has a "tendency to make a fact more or less probable without the evidence"

7   and be "of consequence in determining the action."  Fed. R. Evid. 401.  Because these dividends

8   were paid outside the Class Period and the statute of limitations, Plaintiffs cannot reasonably

9   "connect[] [them] to [Zuffa's alleged] participation in [unlawful] activity."  *Holmes*, 2021 WL

10  2044470, at *4, 6 (granting motion *in limine* to exclude evidence of Chief Executive Officer's

11  ("CEO") "wealth, spending, and lifestyle that is outside of her position as [] CEO" because this

12  evidence had no connection to scheme to defraud); *cf. SEC v. Frost*, 2022 WL 17327322, at *6

13  (C.D. Cal. Feb. 23, 2022) (evidence of wealth must be "closely tied" to liability).  Absent this

14  connection, this is just evidence of a return on what was an indisputably risky investment by

15  Zuffa's founders.  These payments are not "of consequence" to any of the issues in this case.  *See*

16  *Holmes*, 2021 WL 2044470, at *4–5 (finding that "references to [CEO's] specific purchases or

17  details reflecting branding of clothing, hotels, or other personal items is not relevant, and the

18  prejudicial effect of that evidence outweighs any probative value").  And, as discussed *supra*

19  Section II, because Plaintiffs do not seek antitrust damages stemming from any pre-limitations or

20  pre-Class Period conduct, any prior evidence is neither relevant nor probative as to whether Zuffa's

21  contracts are exclusionary or anticompetitive.

22        These payments are also not evidence of what Zuffa *could* have compensated fighters

23  during the Class Period because Zuffa's executives' financial condition prior to the Class Period

24  is irrelevant to that calculation.  *See, e.g.*, *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir.

25  1977) (per curiam) ("agree[ing] with the overwhelming majority of courts . . . which have

26  disapproved of the use of a defendant's financial condition in determining compensatory damages"

27  because "the ability of a defendant to pay the necessary damages injects into the damage

28  determination a foreign, diverting, and distracting issue which may effectuate a prejudicial

result"); *999 v. C.I.T. Corp.*, 776 F.2d 866, 872 (9th Cir. 1985) (compensatory damages must be "untainted by the net worth evidence" of defendant); *Zucchella*, 2023 WL 2628107, at *10 ("exclud[ing] [expert witness's] testimony and report to the extent it addresses damages incurred outside the statute of limitations for [plaintiff's] claims"); *Hatfield*, 685 F. Supp. 2d at 326 (evidence of "pre-existing fortune," being a "wealthy man," and "lavish spending" is not relevant (citation omitted)).  This evidence is not relevant or probative of the only claim to be considered by the jury.  The introduction of this evidence would be for an entirely improper purpose.

1  Dated: February 29, 2024                    Respectfully Submitted,

2                                              /s/ Christopher S. Yates

3  WILLIAM A. ISAACSON (*Pro hac vice*)        CHRISTOPHER S. YATES (*Pro hac vice*)
   wisaacson@paulweiss.com                     chris.yates@lw.com
4  KAREN L. DUNN (*Pro hac vice*)              AARON T. CHIU (*Pro hac vice*)
   ldunn@paulweiss.com                         aaron.chiu@lw.com
5  JESSICA PHILLIPS (*Pro hac vice*)           LATHAM & WATKINS LLP
   jphillips@paulweiss.com                     505 Montgomery Street, Suite 2000
6  PAUL, WEISS, RIFKIND, WHARTON &             San Francisco, CA 94111
   GARRISON LLP                                Tel: (415) 395-8095
7  2001 K Street, NW
8  Washington, DC 20006                        SEAN M. BERKOWITZ (*Pro hac vice*)
                                               sean.berkowitz@lw.com
9  BRETTE M. TANNENBAUM (*Pro hac vice*)       LATHAM & WATKINS LLP
   btannenbaum@paulweiss.com                   330 North Wabash Ave, Suite 2800
10 YOTAM BARKAI (*Pro hac vice*)               Chicago, IL 60611
   ybarkai@paulweiss.com
11 PAUL, WEISS, RIFKIND, WHARTON &             LAURA WASHINGTON (*Pro hac vice*)
   GARRISON LLP                                laura.washington@lw.com
12 1285 Avenue of the Americas                 LATHAM & WATKINS LLP
13 New York, NY 10019                          10250 Constellation Blvd, Suite 1100
                                               Los Angeles, CA 90067
14 DONALD J. CAMPBELL (No. 1216)
15 djc@campbellandwilliams.com                 DAVID L. JOHNSON (*Pro hac vice*)
   J. COLBY WILLIAMS (No. 5549)                david.johnson@lw.com
16 jcw@campbellandwilliams.com                 LATHAM & WATKINS LLP
   CAMPBELL & WILLIAMS                         555 Eleventh Street NW, Suite 1000
17 700 South 7th Street                        Washington, D.C. 20004
18 Las Vegas, Nevada 89101
   Tel: (702) 382-5222                         *Attorneys for Defendant Zuffa, LLC*

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that the foregoing Defendant's Omnibus Motion *in Limine* Nos. 1-4 was served on February 29, 2024 via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

/s/ *Christopher S. Yates*
Christopher S. Yates of
LATHAM & WATKINS LLP
