WILLIAM A. ISAACSON (*Pro hac vice*)
wisaacson@paulweiss.com
KAREN L. DUNN (*Pro hac vice*)
kdunn@paulweiss.com
JESSICA PHILLIPS (*Pro hac vice*)
jphillips@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006

DONALD J. CAMPBELL (No. 1216)
djc@campbellandwilliams.com
J. COLBY WILLIAMS (No. 5549)
jcw@campbellandwilliams.com
CAMPBELL & WILLIAMS
700 South 7th Street
Las Vegas, NV 89101

CHRISTOPHER S. YATES (*Pro hac vice*)
chris.yates@lw.com
AARON T. CHIU (*Pro hac vice*)
aaron.chiu@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111

SEAN M. BERKOWITZ (*Pro hac vice*)
sean.berkowitz@lw.com
LATHAM & WATKINS LLP
330 North Wabash Ave, Suite 2800
Chicago, IL 60611

LAURA R. WASHINGTON (*Pro hac vice*)
laura.washington@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd, Suite 1100
Los Angeles, CA 90067

*Attorneys for Defendant Zuffa, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>Defendant. | Case No.: 2:15-cv-01045-RFB-BNW<br><br>**DEFENDANT ZUFFA, LLC'S MOTIONS IN LIMINE RELATING TO EXPERT TESTIMONY** |

I.     **MOTION *IN LIMINE* NO. 9: MOTION TO PRECLUDE DR. HAL SINGER FROM REFERRING TO ZUFFA'S USE OF EXCLUSIVE CONTRACTS AS "FORECLOSURE" SHARE[1]**

The central dispute in this case is whether Zuffa, LLC's ("Zuffa") use of industry-standard multi-bout contracts foreclosed rivals from access to enough MMA athletes to compete.  Plaintiffs intend to elicit testimony from Dr. Hal Singer that Zuffa's "foreclosure share" was over 90 percent of the alleged market in order to have a witness tell the jury, specifically, that he has conclusively proven the answer.  In reality, "foreclosure share" is just Dr. Singer's measure of the percentage of athletes under contracts with Zuffa that could theoretically last 30 months and multiplied by a measure of Zuffa's revenues to make the percentage seem far higher than it really is.  Setting aside the flaws in that measure, Dr. Singer's use of the label "foreclosure share" for the measure is strategically selected to confuse the jury, as it is a recitation of the legal standard and instruction the jury will receive from the Court before deliberating.  Moreover, if permitted to use that term, Dr. Singer would be providing "an opinion on an ultimate issue of law," which is impermissible. *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (citation omitted) (stating further that "instructing the jury as to the applicable law is the distinct and exclusive province of the court" (citation omitted)); *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) ("'[A]n expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law.'  Similarly, instructing the jury as to the applicable law 'is the distinct and exclusive province of the court.'" (citations omitted)); *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) ("Expert testimony is not proper for issues of law.  'Experts "interpret and analyze factual evidence.  They do not testify about the law[.]"'" (citation omitted)).  Dr. Singer should therefore be precluded from using the label "foreclosure share"—which would entail offering testimony on a legal conclusion—under Rule 403 of the Federal Rules of Evidence.

---

[1] Zuffa has organized its motions *in limine* by subject matter.  The instant Motion relates to issues related to expert testimony.  Zuffa and Plaintiffs have been in ongoing discussions about various other evidentiary issues and potential stipulations.  To the extent the parties are unable to resolve these issues, Zuffa reserves the right to supplement its motions *in limine* and address additional issues with the Court.

1    The term "foreclosure" is a term of art in antitrust law, and it is a critical component of the

2    instructions the jury should receive on how to assess Zuffa's alleged conduct.  Specifically, the

3    ABA Model Jury Instruction on exclusive dealing arrangements states:

4        To establish that an exclusive dealing [or partial exclusive dealing] arrangement
         violates the Sherman Act, plaintiff must establish each of the following elements
5        by a preponderance of the evidence:

6
             (1) an agreement between the buyer(s) and the supplier that totally [or in
7            substantial part] ***forecloses*** the buyer(s) from purchasing the product [or
             service] from competing suppliers;
8            (2) the agreement was an unreasonable restraint of trade that resulted in a
             substantial adverse effect on competition in a relevant market;
9            (3) defendant had substantial market power in the market for [describe
10           relevant product];
             (4) the agreement occurred in or affected interstate [or foreign] commerce;
11           and
             (5) plaintiff was injured in its business or property because of the agreement.
12

13   ABA Model Jury Instruction in Civil Antitrust Cases ch. 2(D)(5) (alterations in original) (emphasis

14   added).  Permitting Dr. Singer to use the reference "foreclosure share" would be extraordinarily

15   prejudicial, as it would create the impression amongst the jury that this legal element has been

16   definitively established and that they need not consider all the evidence in the case.  The use of

17   this loaded term by Dr. Singer represents an improper legal conclusion and should be precluded

18   from his testimony.

19       To be clear, Zuffa recognizes that the Court has already determined the methodological

20   adequacy of the analysis Dr. Singer performed to reach his so-called "foreclosure share."  *See*

21   Class Certification Or. at 58, Dkt 839 ("The Court finds, based on the full record before it, that

22   foreclosure share, as defined in Dr. Singer's model, is a reasonable metric."); Renewed Mot. for

23   Summ. J. Or. at 3, Dkt 959 ("The Court finds that its Certification Order was clear in its finding

24   of the reliability and validity of two of the Plaintiffs' experts—Singer and Zimbalist.  To the extent

25   the Defendant was confused about this finding, the Court, which is in the best position to interpret

26   its own orders, reiterates it here.  The Court further finds that Zuffa has not provided a sufficient

27   or adequate legal basis for the Court to reconsider its finding regarding these two experts in its

28   Certification Order.  Therefore, the Court finds the instant Motions to Exclude regarding Dr. Singer

and Dr. Zimbalist are untimely and that, in any event, they are substantively insufficient."). The instant motion does *not* seek to relitigate the sufficiency of Dr. Singer's analysis under Rule 702 of the Federal Rules of Evidence. Rather, Zuffa seeks only to preclude Dr. Singer from using the specific term "foreclosure share" during his testimony because it is an improper legal opinion; it will therefore lead to irreparable confusion and unfair prejudice. *See* Fed. R. Evid. 402, 403; *Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426, 1431 (9th Cir. 1991) ("It is particularly appropriate for the trial judge carefully to weigh the potential for confusion [or misleading the jury] . . . when expert testimony is proffered."); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993) (stating that a court "weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses" (citation omitted)); *Gordon v. New England Cent. R.R., Inc.*, 2019 WL 4068639, at *3 (D. Vt. Aug. 28, 2019) ("In determining whether expert testimony will be helpful to the factfinder, the court must also consider whether the testimony will 'usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it.'" (citation omitted)).

Experts in antitrust cases are not permitted to offer "the ultimate legal conclusion about whether a conspiracy existed or anticompetitive conduct occurred," as "[t]hose determinations are the province of the trier of fact." *U.S. Info Sys. v. Int'l Bhd. of Elec. Workers*, 313 F. Supp. 2d 213, 241 (S.D.N.Y. 2004); *see also Hynix Semiconductor Inc. v. Rambus Inc.*, 2008 WL 73689, at *13 (N.D. Cal. Jan. 5, 2008) (holding that an expert "may not testifying regarding whether [ ] conduct is 'anticompetitive'"); *Sumotext Corp. v. Zoove, Inc.*, 2020 WL 533006, at *12 (N.D. Cal. Feb. 3, 2020) (expert was precluded from testifying that "Defendants have possessed and exerted market power by way of the alleged anticompetitive conduct").[2] Given the explicit use of the term "foreclosure" in the jury instruction, allowing Dr. Singer to use this term throughout his testimony will almost certainly have the effect of confusing the jury into believing this element has been satisfied. His intended testimony directly tracks the jury instruction and seeks to resolve for the

---

[2] This is independent of the reliability of Dr. Singer's model, which Zuffa continues to dispute. Even if Dr. Singer's opinions and model satisfy Rule 702 and *Daubert*, 509 U.S. 579, he cannot present his opinions in a way that is fundamentally misleading, prejudicial, and invades the exclusive province of the jury.

jury whether Zuffa's contracts were anticompetitive. *Omega Env't, Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1162 (9th Cir. 1997) (plaintiffs must prove that exclusionary contracts "foreclose competition in a *substantial share* of the line of commerce effected" (emphasis added) (citation omitted)); *Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 45 (1984) (O'Connor, J., concurring) ("Exclusive dealing is an unreasonable restraint on trade only when a significant fraction of buyers or sellers are frozen out of a market by the exclusive deal."). Characterizing the length of Zuffa's contracts as a "foreclosure share" is equivalent to labeling the contracts an antitrust violation. This legal conclusion is plainly "outside [Dr. Singer's] expertise" and would "usurp the role of the jury." *In re Fresh Del Monte Pineapples Antitrust Litig.*, 2009 WL 3241401, at *17 (S.D.N.Y. Sept. 30, 2009), *aff'd sub nom. Am. Banana Co. v. J. Bonafede Co.*, 407 F. App'x 520 (2d Cir. 2010). Dr. Singer's "foreclosure share" label is an improper legal conclusion that should be excluded at trial.

The prejudice associated with permitting Dr. Singer to testify to "foreclosure share" is further compounded because the term itself does not actually measure foreclosure. *See* Def.'s Renewed Mot. for Summ. J. Ex. 16, Singer Dep. 39:1–4, Dkt. 879-16 ("Q. Foreclosure is an output of the regression? A. No, it's an input. It's an input."); *id.* 40:1–3 ("[T]he regression takes the foreclosure share as an input."); *id.* 40:22–41:14 ("[T]he regression [ ] doesn't get to pick the foreclosure share. . . . . The regression finds a relationship between that foreclosure share and the fighters' wage share controlling for all other things and then the regression is done."). Dr. Singer's "foreclosure share" is just a variable inputted into his regression analysis. Despite what the term suggests, it is not a result or conclusion. If Dr. Singer is permitted to testify that Zuffa's contracts create a "foreclosure share" in the market, the jury is likely to be confused into believing that the question of whether Zuffa's contracts are exclusionary has been resolved—and it will be impossible to un-ring this bell. *See* Fed. R. Evid. 403; *Daubert*, 509 U.S. at 595 ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." (citation omitted)); *see*

1  *Hynix*, 2008 WL 73689, at *13 (holding that testimony about anticompetitive conduct should be
2  excluded under Rule 403 even if it could be admitted under Rule 702).

3     As they have throughout this litigation, Plaintiffs intend to prove the majority of their case
4  through Dr. Singer's testimony.  Nevertheless, Plaintiffs should not be permitted to elicit an
5  otherwise inadmissible legal conclusion as part of Dr. Singer's analysis.  Should the Court grant
6  Zuffa's motion, Plaintiffs will be free to elicit testimony from Dr. Singer referring to the very same
7  variable as, for example, "contract share" or "contract coverage."

8
9  **II.     MOTION *IN LIMINE* NO. 10: MOTION TO PRECLUDE REFERENCE TO "HEADLINER" SUB-MARKET**

10    Plaintiffs' trial brief previews that they intend for Dr. Singer to testify at trial about a
11  "submarket" in which the vast majority of the certified Bout Class never belonged.  *See* Pls.' Trial
12  Br. at 8, Dkt. 978.  While Dr. Singer attempted in his reports to define a headliner submarket, that
13  evidence is now irrelevant and a distraction because Plaintiffs moved to certify a class under a far
14  broader market of "Elite Professional MMA fighters" and the Court certified a bout class based on
15  that far broader market.  As such, Plaintiffs should be precluded from introducing testimony and
16  evidence at trial concerning this so-called "headliner" submarket.  Such testimony or evidence has
17  no relevance to this case, would confuse the issues, and mislead the jury.  Fed. R. Evid. 402; 403.[3]

18    Plaintiffs bear the burden of establishing a relevant market, which refers to "the area of
19  effective competition."  *FTC v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020) (citation
20  omitted).  Since the start of this nine-year-long case, Plaintiffs have repeatedly alleged that the
21  UFC monopsonized an "[i]nput [m]arket" for "Elite Professional MMA Fighter services," which
22  contains "any Professional MMA Fighter who has demonstrated success through competition in
23  local and/or regional MMA promotions, or who has developed significant public notoriety
24  amongst MMA Industry media and the consuming audience through demonstrated success in

25

26  _____
    [3] Zuffa previously sought to exclude testimony or evidence about the "headliner" submarket on
27  the basis that Dr. Singer's methodology in defining that submarket was unreliable and flawed
    under Rule 702 and *Daubert*, 509 U.S. 579.  Zuffa's Mot. to Exclude the Test. of Dr. Hal Singer
28  under Fed. R. Evid. 702 and *Daubert* at 3–5, Dkt. 524.  In this Motion, Zuffa is not seeking to
    exclude testimony or evidence of the "headliner" submarket on those grounds.

athletic competition." *See* Compl. ¶¶ 30(d), 76–77, Dkt. 1.  That is what Plaintiffs averred in their

original and amended complaints.  *See id.*; Am. Compl. ¶¶ 27(d), 76–77, Dkt. 208.  This is also

the position Plaintiffs have consistently articulated throughout their case.  For example:

- Plaintiffs' Opposition to Zuffa's Motion to Dismiss:  Plaintiffs argued the input market "includes *all* fighters who succeed in local or regional MMA promotions or who gain public notoriety through other athletic competitions." *See* Pls.' Opp'n to the UFC's Mot. to Dismiss at 7, Dkt. 71 (citation omitted);

- Plaintiffs' Oppositions to Zuffa's Motion for Partial Summary Judgment and Initial Motion for Summary Judgment:  Plaintiffs stated that the input market consists of all "Elite MMA Fighters," including fighters who are "ranked" or "tracked" by industry databases, which captures fighters who have fought with at least nine MMA promoters.  *See* Pls.' Opp'n to Def.'s Mot. for Partial Summ. J. at 4, Dkt. 365; Pls.' Opp'n to Zuffa's Mot. for Summ. J. at 21 & n.59, Dkt. 596; and

- Plaintiffs' Motion for Class Certification and Plaintiffs' Trial Brief:  Plaintiffs stated that the input market is "defined . . . very broadly" as consisting of either "the top 650 Fighters in every weight class" or "all MMA Fighters who were tracked by [a database]." *See* Pls.' Mot. for Class Certification at 6 & n.14, Dkt. 518; Dkt. 978 at 1.

This is also what the Court deemed to be the relevant market when ruling on Plaintiffs' class

certification motion.  Or. at 25–26, Dkt. 839.  Consistent with that broad relevant market, the Court

certified a Bout Class of over 1,200 individuals who "competed in one or more live professional

UFC-promoted MMA bouts taking place or broadcast in the United States from December 16,

2010 to June 30, 2017." *Id.* at 14, 79.

Despite the broad relevant market that Plaintiffs have pursued throughout this case, and

despite the Court's reliance on that market in certifying a broad Bout Class, Plaintiffs' trial brief

previews that they intend for Dr. Singer to testify about a "submarket" in which the vast majority

of the certified Bout Class never belonged.  *See* Dkt. 978 at 8.  Plaintiffs and Dr. Singer refer to

this as a "submarket"—not a relevant market—consisting of "fighters ranked 1-15 in different

weight classes." *Id.*  Plaintiffs have never premised their claim on a "headliner" submarket, nor

have they established that such a submarket is "economically distinct from the general [input]

market," *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1121 (9th Cir. 2018) (citation omitted), by

invoking the factors enumerated in *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962), as

would be required to plead an antitrust claim based on a submarket. *See Dowell v. Griffin*, 509 F.

App'x 603, 604 (9th Cir. 2013) ("A district court may properly exclude evidence that is not relevant to proving that party's claims."); *Allen v. Dairy Farmers of Am., Inc.*, 2013 WL 6909953, at *4 (D. Vt. Dec. 31, 2013) (stating that "[a]n expert opinion that differs from Plaintiffs' proposed [ ] market inexorably has less relevance than one that fully supports it"); *J.H. Westerbeke Corp. v. Onan Corp.*, 580 F. Supp. 1173, 1188 (D. Mass. 1984) (rejecting the plaintiff's attempt to "carve[ ] out" a "narrow proposed submarket," and noting that the submarket was irrelevant "for the purpose of antitrust analysis").

Furthermore, the class that Plaintiffs sought to certify—and which the Court certified—consists of over 1,200 fighters, most of whom were never headliners and thus could not have been injured by any purported monopsonization of a "headliner" submarket.[4]  Dr. Singer admits that, between January 2001 and June 2017, only 380 headliners fought for Zuffa.  Rebuttal Expert Report of H. Singer ¶ 231, Jan. 12, 2018, Dkt. 879-49 ("SR2"at.  Zuffa's expert, Dr. Robert Topel, demonstrated that four of the six named Plaintiffs (*i.e.*, Brandon Vera, Javier Vazquez, Kyle Kingsbury, and Nate Quarry) were never headliners, and no named plaintiff was a headliner in 2013, 2014, 2015, 2016, or 2017.  *See* TR1 at Ex. 26.  Dr. Topel further showed that the "headliner" submarket excludes 78 percent of Zuffa athletes:

Exhibit 27 - Number of Zuffa Athletes that were Headliners (Top 15) by Year and in Entire Class Period

| Year | All Zuffa Athletes | Zuffa Athletes that were Headliners | % Zuffa Athletes that were Headliners |
|---|---|---|---|
| Entire Class Period | 1,214 | 269 | 22% |
| 1993 | 10 | 3 | 30% |
| 1994 | 37 | 5 | 14% |
| 1995 | 38 | 5 | 13% |
| 1996 | 40 | 5 | 13% |
| 1997 | 52 | 11 | 21% |
| 1998 | 38 | 10 | 26% |
| 1999 | 58 | 24 | 41% |
| 2000 | 65 | 25 | 38% |
| 2001 | 48 | 30 | 63% |
| 2002 | 66 | 34 | 52% |
| 2003 | 57 | 30 | 53% |
| 2004 | 54 | 26 | 48% |
| 2005 | 102 | 32 | 31% |
| 2006 | 174 | 44 | 25% |
| 2007 | 285 | 70 | 25% |
| 2008 | 301 | 75 | 25% |
| 2009 | 333 | 83 | 25% |
| 2010 | 343 | 81 | 24% |
| 2011 | 485 | 117 | 24% |
| 2012 | 449 | 111 | 25% |
| 2013 | 452 | 125 | 28% |
| 2014 | 565 | 131 | 23% |
| 2015 | 576 | 138 | 24% |
| 2016 | 554 | 136 | 25% |
| 2017 | 331 | 62 | 19% |

---

[4] Notably, Dr. Singer's regression model shows that many headliners were *overpaid*.  *See* Expert Report of R. Topel at Ex. 34, Oct. 27, 2017, Dkt. 879-4 ("TR1").

1    *Id.* at Ex. 27.  The glaring omission of most Plaintiffs from the "headliner" submarket renders that

2    submarket irrelevant to their claim.  *See Vinci v. Waste Mgmt., Inc.*, 80 F.3d 1372, 1376 (9th Cir.

3    1996) ("[A] plaintiff who is 'neither a competitor nor a consumer' in the relevant market does not

4    suffer 'antitrust injury.'" (alteration in original) (citation omitted)).  And in any event, "an antitrust

5    plaintiff cannot prevail by simply alleging a lessening of competition within a limited subset" of

6    the relevant market.  *Moore Corp. v. Wallace Comput. Servs., Inc.*, 907 F. Supp. 1545, 1581 (D.

7    Del. 1995).  The Court should exclude any testimony or evidence regarding the "headliner"

8    submarket under Rule 402.

9           Any reference at trial to the "headliner" submarket would further confuse the issues and

10    mislead the jury.  The jury will be tasked with determining whether the UFC monopsonized "the

11    market for Elite Professional MMA Fighter services," not whether the UFC monopsonized the

12    "headliner" submarket.  Accordingly, if Dr. Singer is permitted to testify regarding the "headliner"

13    submarket, the jury could return a verdict based on evidence about a submarket that is not the

14    allegedly monopsonized relevant market, that is not the basis for the certified class definition, and

15    to which the vast majority of the class members never belonged.  *See Rogers v. Raymark Indus.,*

16    *Inc.*, 922 F.2d 1426, 1431 (9th Cir. 1991) ("It is particularly appropriate for the trial judge carefully

17    to weigh the potential for confusion [or misleading the jury] . . . when expert testimony is

18    proffered."); *City of New York v. Grp. Health Inc.*, 2010 WL 2132246, at *5 (S.D.N.Y. May 11,

19    2010) (refusing to consider the plaintiff's expert's report because the expert analyzed

20    anticompetitive effects within a different relevant market than the one that the plaintiff defined in

21    its complaint), *aff'd*, 649 F.3d 151 (2d Cir. 2011); *Sterling Merch., Inc. v. Nestle, S.A.*, 724 F.

22    Supp. 2d 245, 252 n.3 (D.P.R. 2010) (striking portions of the plaintiff's expert's report that

23    analyzed "sub-segments" of the relevant market, characterizing it as "an improper attempt to

24    reformulate arguments regarding the relevant market," and noting that "the new theories regarding

25    sub-[markets] would require new market definitions and expert work for both parties"), *aff'd*, 656

26    F.3d 112 (1st Cir. 2011); *see also Allen*, 2013 WL 6909953, at *3 ("[A] plaintiff cannot eschew

27    its obligation to prove a relevant [ ] market by offering a fluid market definition which changes in

28    response to a defendant's challenges."); *Minn. Mining & Mfg. Co. v. Appleton Papers, Inc.*, 35

1    F. Supp. 2d 1138, 1142 (D. Minn. 1999) (cautioning that a plaintiff cannot "waffle on market

2    definition at trial").[5]  Lastly, testimony or evidence of a "headliner" submarket could cause the

3    jury incorrectly to infer or assume monopsonization of a market other than the relevant market

4    central to their monopsony claim, thereby prejudicing Zuffa.  The Court should exclude any

5    testimony or evidence regarding the "headliner" submarket under Rule 403.

6    **III.    MOTION *IN LIMINE* NO. 11: MOTION TO PRECLUDE DR. HAL SINGER'S**

7    **UNDISCLOSED AND UNQUALIFIED TESTIMONY REGARDING ZUFFA'S PROMOTION CAPABILITIES**

8              Plaintiffs previewed in their trial brief that they intend for Dr. Singer to testify at trial that

9    "Zuffa has provided no evidence that [Zuffa] had some special ability to promote events that

10   explains its dominance."  Dkt. 978 at 28.  However, until they filed their trial brief, Plaintiffs never

11   informed Zuffa—through Dr. Singer's expert reports—that they intended for Dr. Singer to give

12   this opinion at trial.  And rightly so, as it is not a topic on which an economist who is completely

13   unexperienced in event promotion or the MMA industry has any qualification to testify.  Not only

14   is such testimony from an uninformed and unqualified economist irrelevant, it is also unfairly

15   prejudicial because Dr. Singer's lack of qualifications would not permit him to recognize the

16   evidence of "special" promotional abilities that does exist.  Zuffa therefore requests that the Court

17   exclude this testimony from Dr. Singer and evidence under Rule 37 of the Federal Rules of Civil

18   Procedure and Rules 402 and 403 of the Federal Rules of Evidence.[6]

19             Federal Rule of Civil Procedure 26 requires that an expert's written reports contain "a

20   complete statement of all opinions the witness will express and the basis and reasons for them."

21   Fed. R. Civ. P. 26(a)(2)(B)(i).  "Rule 37(c)(1) gives teeth to these requirements by forbidding the

22   use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed."

23

24   [5] Moreover, permitting testimony or evidence of a "headliner" submarket would "effectively require a mini-trial within a trial" on a moot point, *Bhatti v. Ulahannan*, 414 F. App'x 988, 989

25   (9th Cir. 2011), which "would confuse the jury and result in a waste of time," *Cross v. Jaeger*, 2017 WL 5633280, at *2 (D. Nev. Nov. 22, 2017).

26   [6] This Motion does not seek to exclude this testimony on the basis that Dr. Singer's methodology in testifying about Zuffa's event promotion capabilities is unreliable or otherwise flawed under

27   Rule 702 or the standard articulated in *Daubert*, 509 U.S. 579, but rather that he did not disclose such an opinion and that he lacks the qualifications to issue any opinion at all on Zuffa's

28   promotional capabilities.

1   *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (citing Fed. R.

2   Civ. P. 37(c)(1)).  Here, none of Dr. Singer's reports contain any criticism of Zuffa's ability to

3   promote MMA events, much less an opinion that Zuffa failed to present evidence (before there has

4   even been a trial) of its "special ability to promote events."  Dkt. 978 at 28; *see generally* Expert

5   Report of H. Singer, Aug. 31, 2017, Dkt. 879-70 ("SR1"); SR2, Dkt. 879-50; Suppl. Expert Report

6   of H. Singer, Apr. 3, 2018, Dkt. 596-5; Second Suppl. Reply Report of H. Singer, May 28, 2018,

7   Dkt. 596-6.  Instead, Dr. Singer's reports are confined to "determin[ing] whether Zuffa possessed

8   monopoly or monopsony power (or both)," "defin[ing] one or more relevant antitrust markets,"

9   "assess[ing] whether [Zuffa's conduct] foreclosed competition and generated anticompetitive

10   effects," and analyzing whether and to what extent members of the Bout Class have been injured

11   by Zuffa's alleged conduct.  SR1 ¶ 4, Dkt. 879-70.  Accordingly, Dr. Singer should be precluded

12   from testifying about Zuffa's event promotion capabilities.  *See Est. of Bojcic v. City of San Jose*,

13   358 F. App'x 906, 907 (9th Cir. 2009) (affirming the district court's decision to preclude an expert

14   from testifying at trial about an opinion that was not provided in the expert's report); *Hambrook*

15   *v. Smith*, 2016 WL 4084110, at *3 (D. Haw. Aug. 1, 2016) (granting a motion *in limine* to exclude

16   expert trial testimony on an opinion that was not disclosed in the expert's report, and noting that

17   an expert "cannot testify as to new opinions not contained in the expert report, even if such

18   opinions were expressed in deposition testimony"); *see also Wilson v. Biomat USA, Inc.*, 2011 WL

19   4916550, at *1 (D. Nev. Oct. 17, 2011) (stating that "any [expert] opinion that has not been

20   disclosed" or that concerns "an area outside his expertise will not be allowed").

21        Moreover, because Dr. Singer is not qualified to testify about Zuffa's ability to promote

22   MMA events, even a timely disclosure of that opinion would have been insufficient to permit him

23   to provide it at trial.  Dr. Singer is not an industry expert.  He lacks any expertise in MMA or event

24   promotion, and he has not disclosed any experience, education, or qualifications in those fields

25   that would enable him to assess the quality of MMA events or their promotion.  Instead, Plaintiffs

26   proffer him as an "expert economist," noting that he is "an economics professor at the University

27   of Utah," Dkt. 978 at 20–21, and that he has "degrees in economics," Plaintiffs' Consolidated Brief

28   in Opposition to Zuffa, LLC's Motion to Exclude the Testimony of Drs. Hal Singer and Andrew

1    Zimbalist at 3, Dkt. 534.  Hence, any opinions he offers in this case must "have a reliable basis in

2    the knowledge and experience of his discipline"—*i.e.*, economics.  *Kumho Tire Co. v. Carmichael*,

3    526 U.S. 137, 148 (1999) (citation omitted); *see* Fed. R. Evid. 702 (requiring that an expert's

4    testimony be based on "knowledge, skill, experience, training, or education"); Fed. R. Evid. 702

5    advisory committee's note to the 2000 amendment ("The expert's testimony must be grounded in

6    an accepted body of learning or experience in the expert's field, and the expert must explain how

7    the conclusion is so grounded.").  Dr. Singer's opinions concerning Zuffa's ability to promote

8    MMA events should therefore be excluded as irrelevant and inadmissible—just as an expert

9    accountant's views on an athlete's technical fighting abilities would be irrelevant.  *See LuMetta v.*

10   *U.S. Robotics, Inc.*, 824 F.2d 768, 771 (9th Cir. 1987) ("[W]here foundational facts demonstrating

11   relevancy or qualification are not sufficiently established, exclusion of proffered expert testimony

12   is justified."); *Kirsch v. United States*, 2023 WL 7160120, at *2 (D. Haw. Oct. 31, 2023) ("Trial

13   courts must exclude proposed expert testimony if the expert's qualifications are lacking in the area

14   in which the expert seeks to provide an opinion."); *In re Live Concert Antitrust Litig.*, 863 F. Supp.

15   2d 966, 994 (C.D. Cal. 2012) (excluding economist's opinion regarding whether a musician was a

16   "rock" artist because the economist had "no expertise in this area").

17          In addition to being irrelevant, Dr. Singer's anticipated testimony would be prejudicial.  As

18   Plaintiffs stated in their trial brief, Dr. Singer's opinion regarding Zuffa's ability to promote MMA

19   events is based on his view that "Zuffa has provided no evidence that it had some special ability

20   to promote events that explains its dominance."  *See* Dkt. 978 at 28.  Dr. Singer is applying no

21   economic expertise whatsoever in support of this opinion.  Instead, he has formed his own slanted

22   view of what the facts and testimony in this case will show.  Setting aside the obvious defect in

23   Dr. Singer attempting to weigh the evidence before it has been presented at trial, as another court

24   in this Circuit assessing Dr. Singer's testimony recently concluded, "[a]s a trained economist,

25   Singer does not have 'scientific, technical, or other specialized knowledge'" on this issue, and thus

26   applying his unqualified views "to the documentary evidence in this case" will not "help the trier

27   of fact to understand the evidence or to determine a fact in issue."  *In re Capacitors Antitrust Litig.*,

28   2020 WL 870927, at *2 (N.D. Cal. Feb. 21, 2020) (citation omitted) (excluding Dr. Singer's

1    opinion of whether the challenged conduct was anticompetitive because his reliance on two

2    sources from antitrust agencies to assess competitive impact meant that he was not employing his

3    expertise as an economist to form that opinion); *see also Siqueiros v. Gen. Motors LLC*, 2022 WL

4    74182, at \*9 (N.D. Cal. Jan. 7, 2022) (excluding expert opinion that merely cited deposition

5    testimony without providing any "analysis or reliable methodology interpreting the testimony

6    which employ[ed] his expertise," and noting that "expert testimony should be excluded where the

7    jury is in as good a position as the expert to draw conclusions from the evidence, and is capable of

8    drawing its own inferences" (cleaned up)); *Live Concert*, 863 F. Supp. 2d at 995 (excluding expert

9    economist's opinion because, "in determining whether each performer qualified as a 'rock' artist,"

10   the expert was "doing the work of a 'music analyst' (or perhaps a lay juror)," and was not "relying

11   on his experience and expertise as an economist").

12           The potential prejudice of improper and undisclosed expert opinions cannot be overstated.

13   It is the very reason the Court must act as a gatekeeper of expert testimony.  *See Kumho*, 526 U.S.

14   at 137 (trial courts have a "special obligation" to act as a "gatekeeper" of expert testimony);

15   *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993) ("Expert evidence can be both

16   powerful and quite misleading because of the difficulty in evaluating it." (citation omitted)); *Sardis

17   v. Overhead Door Corp.*, 10 F.4th 268, 283–84 (4th Cir. 2021) (stating that the recent amendment

18   to Federal Rule of Evidence 702 arose because the Advisory Committee on Evidence Rules

19   detected a "pervasive problem" of courts delegating to the jury the judicial responsibility of

20   critically screening expert testimony (quoting Advisory Comm. on Evidence Rules, *Agenda for

21   Committee Meeting* 17 (Apr. 30, 2021)).  Dr. Singer's unqualified and undisclosed opinions about

22   Zuffa's promotional capabilities illustrate the potential of those prejudices, and should thus be

23   excluded.

24

25

26

27

28

Dated: February 29, 2024

WILLIAM A. ISAACSON (*Pro hac vice*)
wisaacson@paulweiss.com
KAREN L. DUNN (*Pro hac vice*)
kdunn@paulweiss.com
JESSICA PHILLIPS (*Pro hac vice*)
jphillips@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006

BRETTE M. TANNENBAUM (*Pro hac vice*)
btannenbaum@paulweiss.com
YOTAM BARKAI (*Pro hac vice*)
ybarkai@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019

DONALD J. CAMPBELL (No. 1216)
djc@campbellandwilliams.com
J. COLBY WILLIAMS (No. 5549)
jcw@campbellandwilliams.com
CAMPBELL & WILLIAMS
700 South 7th Street
Las Vegas, Nevada 89101
Tel: (702) 382-5222

Respectfully Submitted,

/s/ Christopher S. Yates
CHRISTOPHER S. YATES (*Pro hac vice*)
chris.yates@lw.com
AARON T. CHIU (*Pro hac vice*)
aaron.chiu@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 395-8095

SEAN M. BERKOWITZ (*Pro hac vice*)
sean.berkowitz@lw.com
LATHAM & WATKINS LLP
330 North Wabash Ave, Suite 2800
Chicago, IL 60611

LAURA WASHINGTON (*Pro hac vice*)
laura.washington@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd, Suite 1100
Los Angeles, CA 90067

DAVID L. JOHNSON (*Pro hac vice*)
david.johnson@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004

*Attorneys for Defendant Zuffa, LLC*

1

## **CERTIFICATE OF SERVICE**

2          The undersigned hereby certifies that the foregoing Defendant's Omnibus *Motion in*

3    *Limine* Nos. 9-11 was served on February 29, 2024 via the Court's CM/ECF electronic filing

4    system addressed to all parties on the e-service list.

5

6
                                                   */s/ Christopher S. Yates*
7                                                   Christopher S. Yates of
                                                   LATHAM & WATKINS LLP
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28