# EXHIBIT E

**BOIES, SCHILLER & FLEXNER LLP**

1999 HARRISON STREET • SUITE 900 • OAKLAND, CA 94612 • PH. 510.874.1000 • FAX 510.874.1460

October 28, 2015

**Via Electronic Mail**

Michael Dell'Angelo
Berger & Montague
1622 Locust Street
Philadelphia, PA 19103
mdellangelo@bm.net

   Re: *Le, et al. v. Zuffa, LLC*; Case No. 2:15-cv-01045-RFB-(PAL),
     and consolidated cases

Dear Michael,

  I write to set out Zuffa's position on the issues discussed on our calls yesterday and today, including those related to your October 20 and October 22 letters. In order to move forward efficiently, this letter focuses on presenting a counterproposal to address the burden imposed by your overbroad RFPs and addressing why some aspects of your proposal do not work or are otherwise unacceptable. Responses to your statements about the alleged lack of transparency and so forth can be found at the end of the letter, although we do not address every statement in your correspondence with which we disagree.

**Confidential Personal Information**

  Yesterday, taking up Magistrate Judge Leen's suggestion, we offered to streamline the production process by not redacting Personally-Identifiable Information ("PII"), such as social security numbers and tax payer identification numbers, that is contained in documents we are about to produce, subject to the condition that such information will be redacted before filing any such document with the court or otherwise disclosing the document, by the party filing or making that disclosure. You stated that you would take that under advisement. Please let us know as soon as you can because, without an agreement, we will need to pull such documents from the upcoming production in order to review and redact them, which could cause a delay.

**Custodians**

  First, to address your allegation that we have not made progress identifying potential custodians, Zuffa has worked diligently to respond to Plaintiffs' requests for information, and has provided Plaintiffs with the information maintained in the normal course of Zuffa's business. Zuffa has provided Plaintiffs with organizational charts and document retention policies,

BOIES, SCHILLER & FLEXNER LLP

Michael Dell'Angelo
October 28, 2015
Page 2

proposed appropriate custodians, provided Plaintiffs with employment dates for the proposed custodians, and has created for informational purposes lists of predecessor custodians and applicable employment dates. Zuffa also formally responded to your interrogatories regarding individuals with relevant knowledge. As discussed more fully below, Zuffa made a straightforward proposal for 9 custodians on September 8. Plaintiffs, claiming that they could not negotiate without a full list of all Zuffa employees going back to 2005 – an unprecedented request in my experience – did not submit a counterproposal until October 20, two hours before our meet and confer was scheduled to start. Plaintiffs are certainly not "negotiating in a vacuum", having received substantial information to allow them to have meaningful discussions regarding custodians.

Second, it is important to remember that this is a monopolization case. As such, the evidence, if any, regarding your allegations would most likely be found in the materials of the top decision-makers of the defendant and the individuals responsible for the allegedly exclusionary contracts.[1] Our first proposal was consistent with this basic principle. On September 8, 2015, Zuffa proposed to Plaintiffs a list of nine custodians, broken down by topic, who Zuffa believes are most knowledgeable about the subject matter of Plaintiffs' Complaints. These custodians comprised the three primary decision-makers at the company, the three other individuals primarily responsible for fighter relations and negotiating the terms of fighter contracts, as well as the group leaders for agreements with sponsors, venues and merchandisers. Shortly thereafter, Zuffa also agreed that it will produce available documents for any predecessors to those custodians back to 2010.

On October 20, 2015, a couple of hours before our scheduled meet and confer, you made a counterproposal that called for 28 separate custodians. In addition, you made a proposal as to timing and scope of particular RFPs. As discussed more fully below, this proposal did not meaningfully narrow your requests 7, 17, 19, 21, 27, 29, 31, 33, 35, 37, 39, and 40, which essentially call for all documents related to all contracts with athletes, venues, sponsors, merchandisers and TV distribution outlets back to 2000, and was therefore largely illusory as a proposal to narrow the scope of collection, review, and production. In short, we believe that, especially in light of the over-breadth of your RFPs, this proposal is far too broad, but we are willing to compromise with the following proposal:

---

[1] As we have discussed, we have also agreed to provide you with a great deal of financial information relating to the business, the production of which will begin this month. At this point, I do not believe that we have any important disagreements on the scope of this production, although both parties reserve their rights.

BOIES, SCHILLER & FLEXNER LLP

Michael Dell'Angelo
October 28, 2015
Page 3

Subject to an agreement on search terms, Zuffa agrees to produce responsive documents for the ESI and hard copies of the following custodians back to January 1, 2009. The burden on Zuffa of collecting, reviewing, and producing documents, solely based on the custodians below, is already high. Just the e-mail boxes for the custodians we propose contain over one million items. This does not include the document counts for the non-email ESI that will need to be collected, processed, and reviewed for these custodians, including laptops, cell phones, and network-stored ESI, as well as any hard copy documents in those custodians' files. Our proposal is, therefore, already burdensome, time-consuming, and costly, and will require thousands of hours of attorney time to implement. As a result, it is imperative that we reach an overall agreement on custodians so that we can determine the cumulative burden on Zuffa.

<u>Bleczinski, Tracey</u> – Senior Vice President of Global Consumer Products.

<u>Dropick, Peter</u> – Senior Vice President of Event Development and Operations.

<u>Epstein, Lawrence</u> (*) – Senior Executive Vice President and Chief Operating Officer (2012 – present). This is limited to Mr. Epstein's time as Senior Executive Vice President and COO. For his time as General Counsel, see the discussion of Production from Legal Department personnel below.

<u>Fertitta, Lorenzo</u> – Chairman and Chief Executive Officer.

<u>Kirk Hendrick</u> – Chief Operating Officer (2003-2012); General Counsel (2003-07); Chief Legal Officer (2013-present). This offer is limited to Mr. Hendrick's time as COO. For his time as Chief Legal Officer (2013 to Present), see the discussion of Production from Legal Department personnel below.

<u>Harris, Reed</u> – Vice-President of Community Relations (formerly Vice President of Athlete Relations).

<u>Johnston, Bryan</u> – Former Chief Marketing Officer.

<u>Long, Tracy</u> – Director of Compliance, paralegal.

<u>McKinney, Sonja</u> – Former paralegal.

<u>Mersch, Michael</u> – Former Senior Vice President of Talent Relations and Assistant General Counsel. See discussion of Production from Legal Department Personnel below.

BOIES, SCHILLER & FLEXNER LLP

Michael Dell'Angelo
October 28, 2015
Page 4

> Mossholder, Michael – Executive Vice President of Global Marketing Partnerships
>
> Mulkey, John – Chief Financial Officer. We do not believe that a full custodial search of all Mr. Mulkey's email, text messages, and other ESI is warranted. We are producing detailed, comprehensive financial information and documents maintained in the finance department supervised by Mr. Mulkey. We suggest that after Plaintiffs have reviewed those financial documents, we meet and confer to discuss whether any further search of Mr. Mulkey's ESI and hard copy files is appropriate.
>
> Pine, Michael – Former Head of Global Sales and Vice President.
>
> Shelby, Sean – Director, Talent Relations.
>
> Silva, Joe – Senior Vice President, Talent Relations.
>
> White, Dana – President.

**Production from Legal Department Personnel**

Your letter requests full custodial production of three lawyers – Mr. Epstein, Mr. Hendrick and Mr. Mersch – and two paralegals – Ms. Long and Ms. McKinney – who work under the direction of one or more attorneys of these and other Zuffa attorneys. As you know, Mr. Hendrick and Mr. Epstein each served at different times as the Chief Legal Officer or General Counsel for the company, and at different times as Chief Operating Officer. Other than the January 1, 2009 general cut-off date for custodial searches, we do not propose any limits on the search and production of each of their custodial documents from their respective times as COO. However, as Chief Legal Officer or General Counsel of Zuffa, each was responsible, as part of his duties, for overseeing all litigation and potential litigation for the company, providing legal advice, supervising outside counsel, etc. As a result, each person's files and email contain substantial documents that are protected by the attorney-client privilege and/or work product doctrine and the burden of searching, collecting, and reviewing those files for privileged information outweighs the likelihood that they will contain non-privileged relevant information. Similarly, as Assistant General Counsel, Michael Mersch provided a variety of legal advice and services to the company. To reduce the burden of privilege review for these custodians, we propose to search and produce their ESI and documents for responsive communications with persons or entities outside Zuffa (not including outside counsel working for Zuffa). Purely internal communications would be excluded from the search. Under this proposal, responsive emails, texts and other communications between these individuals and fighters and their

BOIES, SCHILLER & FLEXNER LLP

Michael Dell'Angelo
October 28, 2015
Page 5

representatives, venues, sponsors, and other third parties in these custodians' files would be reviewed and produced but purely internal communications would not be. To be clear, this limitation would apply only to the custodial files of these custodians during their time in the legal department. Documents in the custodial files of these custodians from their tenure outside Zuffa's legal department or other custodians outside the legal department would still be searched and produced in a manner to be agreed upon by the parties. For example, an email sent by Mr. Epstein to Mr. Hendrick and found in Mr. Epstein's files from his time as COO, would still be reviewed and either produced or withheld and logged as privileged. This compromise would provide Plaintiffs with these custodians' responsive communications with all the third parties relevant to the allegations in the complaint, while reducing the immense burden of privilege review as to all the communications of custodians performing legal functions.

With regard to the remaining custodians you proposed, we disagree with their inclusion as follows:

Bidarian, Nakisa: Mr. Bidarian, as EVP of Strategy & Business Ventures, primarily oversees Zuffa's investments and identifies new opportunities for the business that are separate from the day-to-day operations of Zuffa relating to the UFC. To the extent Mr. Bidarian has been involved in discussions relating to the issues in this litigation, he reports to Mr. Epstein, who is included as a custodian and will likely have relevant documents in his files.

Borsari, Craig: Mr. Borsari, as EVP of Operations and Production, is not as closely engaged in negotiating the contractual terms alleged to be anticompetitive in the Complaint. The additional burden of searching Mr. Borsari's files is unnecessary in light of the roles of the individuals whose files are being searched.

Cook, Garry: Mr. Cook, as Chief Global Brand Officer, is not as closely engaged in negotiating the contractual terms alleged to be anticompetitive in the Complaint. The additional burden of searching Mr. Cook's files is unnecessary in light of the roles of the individuals whose files are being searched.

Grab, Ryan: Mr. Grab, Director of Athlete Strategy, has a dotted line reporting to Reed Harris, the VP of Community Relations (formerly VP of Athlete Relations), who is included as a custodian and will likely have relevant documents in his files. We believe the burden of collecting duplicative information from Mr. Grab, who is a lower level employee, outweighs the potential benefit of discovering non-duplicative relevant information.

BOIES, SCHILLER & FLEXNER LLP

Michael Dell'Angelo
October 28, 2015
Page 6

     Haddon, Jason: Mr. Haddon is a relatively new hire in Talent Relations and works under the direction of Mr. Shelby and Mr. Silva. Prior to this, he worked in the Production Department. We believe the burden of collecting duplicative information from Mr. Haddon, who is a lower level employee, outweighs the potential benefit of discovering non-duplicative relevant information.

     Henricks, Melissa: Ms. Henricks is a Senior Director of Event Operations, who reports to Donna Marcolini, the VP of Event Operations. Both employees report up to Peter Dropick, who is included as a custodian and will likely have responsive documents in his files. We believe the burden of collecting duplicative information from Ms. Henricks, who is a lower level employee, outweighs the potential benefit of discovering non-duplicative relevant information. This is especially true given that, as discussed more fully below, the allegations relating to venues are limited to the alleged contractual foreclosure of competitors, and do not relate to the day-to-day dealings with venues in planning and presenting events.

     Marcolini, Donna: Ms. Marcolini is the VP of Event Operations. She reports to Peter Dropick, who is included as a custodian and will likely have relevant documents in his files. Like Ms. Henricks, Ms. Marcolini's primary responsibilities are logistical in putting on the events; she does not negotiate agreements with venues. We believe the burden of collecting duplicative information from Ms. Marcolini outweighs the potential benefit of discovering non-duplicative relevant information. This is especially true given that, as discussed more fully below, the allegations relating to venues are limited to the alleged contractual foreclosure of competitors, and do not relate to the day-to-day dealings with venues in planning and presenting events.

     Poriadjian, Jackie: Ms. Poriadjian is the SVP of Global Brand Marketing. Ms. Poriadjian's duties are focused on the UFC's marketing and she is not closely engaged with negotiating or approving the agreements alleged to be anticompetitive. We believe the burden of collecting duplicative information from Ms. Poriadjian outweighs the potential benefit of discovering non-duplicative relevant information.

     Ratner, Marc: As we have discussed, Mr. Ratner's primary responsibility has been working to legalize Professional MMA and dealing with the state athletic commissions and other governmental bodies in connection with UFC activities. While the UFC's role in bringing the sport of professional MMA into the mainstream is certainly an important aspect of the history of the UFC, the details of all the day-to-day interactions with the commissions and regulators are not particularly relevant to the disputed issues in the litigation. Thus, the additional burden of

BOIES, SCHILLER & FLEXNER LLP

Michael Dell'Angelo
October 28, 2015
Page 7

searching Mr. Ratner's files is unnecessary in light of the roles of the individuals whose files are being searched.

Sholler, Dave: Mr. Sholler is the VP of Public Relations and Athlete Marketing. To the extent that Mr. Sholler supervises public statements on behalf of Zuffa, the public statements, which are available to the Plaintiffs, speak for themselves. Moreover, Reed Harris, who we already offered as a custodian, is the leader of the athlete development arm of Mr. Sholler's team and will likely have relevant documents in his files. We believe the burden of collecting duplicative information from Mr. Sholler outweighs the potential benefit of discovering non-duplicative relevant information.

Sorensen, William: Mr. Sorensen is the Director of Event Operations for Canada, Australia, and New Zealand. While contrary to the allegations in the complaint, the relevant geographic market for all the allegations in the complaint is international, not limited to the United States, both the high-level planning and the important fighter negotiations for events outside the United States are primarily the responsibility of the persons we have already proposed – Lorenzo Fertitta, Dana White and Lawrence Epstein for planning and some fighter negotiations, and Sean Shelby and Joe Silva for fighter negotiations. Mr. Sorenson's duties, therefore, are focused on the logistics of events, ensuring the athletes can get to the location and taking care of their needs when get there, etc. We believe the burden of collecting duplicative information from Mr. Sorenson outweighs the potential benefit of discovering non-duplicative relevant information.

Zelaznik, Marshall: As Chief Content Officer, Mr. Zelaznik is not as closely engaged in negotiating the contractual terms alleged to be anticompetitive in the Complaint. Further, Plaintiffs' allegation that Zuffa has acted anti-competitively by foreclosing television distributors can be evaluated by examining the contracts we have agreed to produce and by public information about alternative television distribution outlets. Indeed, in your briefing on the motion to stay, Plaintiffs did not even attempt to justify why discovery on television distribution issues was necessary. The additional burden of searching Mr. Zelaznik's files is unnecessary in light of the roles of the individuals whose files are being searched.

Notwithstanding the above, in order to reach an accommodation on custodians, if Plaintiffs believe an additional custodian is necessary, Zuffa is willing to allow Plaintiffs to select an additional two of the above custodians for Zuffa to search. This offer is dependent on reaching an overall agreement on custodians.

Michael Dell'Angelo
October 28, 2015
Page 8

**Relevant Time Period & RFPs**

The following addresses your proposals with regard to the time period of the RFPs.[2] As discussed on the call, we are in alignment on some of the requests and are continuing to make progress on reviewing and preparing these documents for production. Other aspects of your proposal, however, Zuffa cannot agree to. We've addressed the issues raised in your proposal below.

General corporate documents (Requests 1-6, 8, 18, 46)

You have requested relevant documents responsive to these requests beginning in December of 2010. Zuffa agrees to provide relevant documents responsive to these requests for that time period.

Organizational charts (Request 7)

As explained on the call and in other relevant communications, Zuffa has already provided Plaintiffs with the organizational charts in its possession in response to this request.

Financial information, fighter compensation, and third party analyses (Requests 9-14, 15, 16)

Plaintiffs' proposal requests information relevant to these requests back to 2005. Zuffa had previously agreed to produce financial information back to this time period and will provide other relevant information responsive to these requests back to Plaintiffs' requested time period, to the extent that it exists and is reasonably accessible. Some of the material that we have already collected and are preparing to produce goes back farther than 2005, and we will produce this as well.

---

[2] While you have not taken a position on the issue in our conferences, you are apparently considering taking the position that athletes who signed contracts outside the statute of limitations period, in which they agreed to grant "identity rights," may contend that they can avoid operation of the statute if Zuffa used those rights within the limitations period by, for example, playing a clip of an earlier bout in which the athlete participated. This is an untenable position under well-established precedent, which holds that the injury occurred at the time the contract was signed and the alleged underpayment caused by the alleged monopsonization occurred. *Aurora Enters., Inc. v. Nat'l Broad. Co.*, 688 F.2d 689, 694 (9th Cir. 1982) ("that defendants receive a benefit today as a result of a contract executed" before the limitations period "is not enough to restart the statute of limitations"). We understand that Mr. Quarry's claim is barred for that reason, and suggest that, if this is an issue in the scope of discovery, we could present a limited motion for summary judgment on this basis to the court for early resolution.

BOIES, SCHILLER & FLEXNER LLP

Michael Dell'Angelo
October 28, 2015
Page 9


Time limitation on ESI searching.

Your letter proposes a number of different time frames for different RFPs. This is unworkable and inefficient method of searching ESI and hard copy documents. If some requests go back to 2010, some go back to 2005, some go back to 2000, and some that have an indefinite date, such as you proposed for RFPs 20, 22, 23, 24, 25, 30, 55, the practical effect is that all documents need to be reviewed, regardless of when they were created. Thus, we propose a compromise date of January 1, 2008 for all documents (almost 8 years' worth of materials) except as specifically noted.

Negotiations and agreements with other promoters (Request 17)

Plaintiffs have not narrowed in timeframe or scope request 17 and seek information from this request back to 2000. Zuffa believes it is overly broad and unduly burdensome to respond to this "all documents" request over a 15 year period. Zuffa proposes that the relevant time period for this request be limited to 2008. To the extent that additional documents exist in centralized files responsive to this request and from a time period before 2008, Zuffa will discuss with Plaintiffs the feasibility of providing this information as well. As we have explained, documents related to the acquisition of assets from certain promoters are included in the production made to the FTC related to the Strikeforce acquisition, which you will receive shortly.

Identification of Competitors (Request 19)

Plaintiffs' proposal requests documents sufficient to show every person or entity Zuffa considers to have been an actual or potential competitor since 2000 and a number of other "all documents" requests relating to these actual or potential competitors, including but not limited to all documents relating to Zuffa's assessment of the competitors' strengths or weaknesses, and all documents discussing competitors' compensation, marketing strategies, sponsorship, and broadcast capabilities. Zuffa believes that going back to 2000 is too long but agrees to search for responsive information in the named custodians' ESI and hard copy documents based on search terms, and in central files, if any, likely to contain responsive documents back to January 1, 2008.

Fighters (Requests 20, 21, 22, 23, 24, 25, 30, 55)

Plaintiffs' proposal is three-fold. First, Plaintiffs propose Zuffa produce all contracts for all fighters going back to 2000. Second, Plaintiffs propose that Zuffa produce all documents referencing or relating to such agreements back to January of 2009. Third, in response to the

BOIES, SCHILLER & FLEXNER LLP

Michael Dell'Angelo
October 28, 2015
Page 10

many agreements, terms and provisions that Plaintiffs challenge as anticompetitive in the complaints, Plaintiffs propose that Zuffa provide all documents referencing or relating to that term, clause, or agreement beginning three years prior to that term, clause or agreement's implementation.

Plaintiffs' 3-years-prior proposal is inefficient and unworkable for the reasons discussed above. Zuffa first notes that many of provisions of its agreements with athletes have been in existence, in some form, since before Zuffa purchased the UFC. To the extent that Plaintiffs' intention was to narrow these requests through the use of a contingent date rather than a date certain, this proposal fails to achieve that aim.

Second, it is unworkable to have different relevant time periods for the different agreements or provisions that Plaintiffs challenge. Once Zuffa is required to go back to search for "all documents" relating to a certain provision, Zuffa is necessarily viewing all other documents unrelated to that provision to determine which documents are responsive and which are not. In reality, Plaintiffs' proposal will require Zuffa to search all documents for a 15-year period.

Such a request is unduly burdensome. As you know, Plaintiffs' requests on these topics are extraordinarily broad. For example, Request 20 alone calls for all documents "discussing, evaluating, or analyzing actual or proposed contractual terms or provisions" and Request 25 asks for "All documents reflecting or relating to the administration, monitoring, auditing or enforcement" of Zuffa's contracts. Zuffa's business is the promotion of MMA bouts and the related activities that go with it. Nearly every part of Zuffa's business that relates to fighters is governed by some contractual agreement – whether it be a promotional agreement, a bout agreement, a merchandise rights agreement or some other agreement. Plaintiffs' proposal would require Zuffa to produce all documents relating in any way to any part of its business related to fighters since the inception of Zuffa's ownership of the UFC.

Given the extraordinarily broad nature of Plaintiffs' requests on this topic, Zuffa believes that Plaintiffs' requests must be narrowed to include a relevant time period with a fixed cut-off date. We have previously committed to provide fighter contracts, regardless of the date of the contracts, and other relevant documents in the files for all athletes who fought for the UFC since December 16, 2010 (i.e., which encompasses the entire putative Bout Class, plus the foreign fighters not included in the putative class).[3] For some fighters, this would go back to Zuffa's

---

[3] For purposes of relevance and the protection of athlete's personal information, we do not plan to produce: (a) athlete medical records; and (b) athlete background checks.

BOIES, SCHILLER & FLEXNER LLP

Michael Dell'Angelo
October 28, 2015
Page 11

purchase of the UFC in 2001, if not before. We will do the same with regard to all the Plaintiffs regardless of whether they fought after December 16, 2010. Zuffa's initial assessment is that its proposal would provide Plaintiffs all available contracts for approximately 950 fighters regardless of the date. These files will contain a broad cross-section of contracts over time, and every contract with every putative class member with an alleged claim within the statute of limitations and within the subject matter jurisdiction of this court, as well as with many athletes who do not have such a claim.

To be clear, Zuffa agrees to produce all available contracts for these fighters, which will include documents going back long before 2010. The provision of this material already confers a substantial burden and expense on Zuffa to identify, locate and copy the voluminous hard copy and electronic files for this substantial number of individuals. Zuffa believes there is no principled reason to provide documents for athletes who did not fight or sign a contract after the statute of limitations period when Plaintiffs will have documents relating to the entirety of their putative class which contains information sometimes going back as far as 2001. Zuffa believes that providing the agreements for all fighters for a decade is more than sufficient to provide Plaintiffs with relevant information given the time, burden and expense.

Venues (Request 27, 29)

Plaintiffs' proposal regarding venues requires Zuffa to respond to requests 27 and 29 back to January of 2000. First, Zuffa notes that this is the same relevant time period called for by the requests themselves, and thus Plaintiffs have made no effort to narrow either the substance or the time period of this request.

Second, Plaintiffs' requests themselves are extraordinarily broad. Request 27, for example, calls for "All documents referencing or relating to agreements (and any amendments thereto) regarding venues for professional MMA bouts . . . ." Plaintiffs' proposal thus calls for all documents that in any way relate to its venue partners for the past 15 years. As you can imagine, this is a tremendous amount of information. Since 2000, Zuffa has put on 307 events at venues throughout the world. Many of the documents involving venues relate to the logistics of the event itself (*e.g.*, hiring concession workers, coordinating film crews, agreeing upon set-up and tear-down times) and have nothing to do with the terms of Zuffa's agreement relevant to Plaintiffs' complaints. While some of Plaintiffs' requests are, as Plaintiffs' described, "self-limiting," others such as request 27 are not.

Plaintiffs' complaints allege that Zuffa foreclosed competition by locking competitors out of "key" venues through "black out" provisions in its venue contracts. (Compl. ¶ 122). To

BOIES, SCHILLER & FLEXNER LLP

Michael Dell'Angelo
October 28, 2015
Page 12

enable Plaintiffs to evaluate this allegation, Zuffa will provide for Plaintiffs the contracts with the venues going back to 2008, which will allow Plaintiffs to see the precise forms of exclusivity, if any, and the length of such terms. Zuffa believes that this will provide Plaintiffs with all relevant documents regarding the allegations in their complaints. The burden of collecting, reviewing, and producing all other documents relating in any way to a venue agreement for the past 15 years is unduly burdensome given the small likelihood that such efforts would lead to the discovery of relevant evidence.

Broadcasters (Request 33)

Plaintiffs' proposal regarding broadcasters has similar problems. Plaintiffs propose Zuffa produce all documents that reference or relate in any way to its agreements with broadcasters since the year 2000. This too is vastly overbroad. Plaintiffs' complaints allege that Zuffa has locked up television distribution outlets (Compl ¶ 10), although it fails to explain how Zuffa purportedly does so. As Zuffa has explained, it has an agreement with Fox that contains certain exclusivity provisions, but that does not explain how Zuffa purportedly excludes competitors from all of the hundreds of other television stations and other distribution outlets available. It also has agreements with PPV providers, which are not exclusive. Zuffa agrees that it will provide its contracts with these television distribution outlets and with any others that it has had since 2008. In addition, Zuffa will provide financial information relating to the revenues it received from various TV sources. However, it is overbroad and unduly burdensome and not calculated to lead to the discovery of relevant information, to collect, review and produce all other documents relating in any way to any agreements with any broadcaster for the past 15 years as called for by Plaintiffs' request 33.

Merchandisers (Request 35)

Plaintiffs' proposal further calls for Zuffa to produce all documents referencing or relating to agreements with any third party merchandiser or retailer selling MMA related merchandise (request 35) since the year 2000. Once again, such a request is vastly overbroad in comparison to the allegations in Plaintiffs' complaints. Plaintiffs' allegations relate to the ways in which Zuffa has contracted for and used Plaintiffs' identity rights in merchandise and the compensation Plaintiffs received for that use. Given Plaintiffs' allegations, there is no reasonable basis to require Zuffa to produce all documents relating in any way to an agreement with a merchandiser or retailer for the past 15 years. In this regard, it is useful to provide more background on Zuffa's merchandising activities. Unlike some major sports organizations, Zuffa not only licensed merchandisers to use its IP on their products, but also manufactured and sold such products in its own right. This means that over the years Zuffa dealt with a large number of

BOIES, SCHILLER & FLEXNER LLP

Michael Dell'Angelo
October 28, 2015
Page 13

retailers, jobbers, and wholesalers, some only making one-time purchases, in addition to a large number of manufacturers and licensees. The only evidence of many of these agreements are invoices to the extent that they still exist.

Thus, we suggest the following: First, as we have already agreed, we will provide financial information showing revenues, costs, licensing fees, fighter compensation, etc. relating to UFC's merchandising activities (including sales to retailers, wholesalers, etc.). Second, we propose to agree on a set of major merchandisers that you believe are relevant to your claims, (e.g., the video game vendors and Reebok) and search for documents related to those deals back to 2008. In addition, Zuffa will search for relevant information in the agreed-upon custodians' ESI and hard copy documents based on search terms tailored to address information potentially relevant to the allegations with regard to merchandisers.

Sponsors (Requests 37, 39)

Like the proposal for venues, broadcasters, merchandisers, Plaintiffs' proposal for sponsors is unchanged from its initial requests. Plaintiffs' proposal requires Zuffa to produce all documents since January of 2000 "referencing or relating to agreements (and any amendments thereto) executed between You and any sponsors of the UFC or of the MMA Fighters . . ." (request 37). Plaintiffs' complaints allege that Zuffa has locked up key sponsors. (Compl. ¶ 10). "Any sponsors" broadly defined presents similar problems to merchandisers in that, in addition to the "key" sponsors, such as Bud Light or Reebok, there are many businesses that may have "sponsored" one or two local events (e.g., bought ad space) over the years and tracking down and ensuring complete production of all such agreements would be unduly burdensome. To enable Plaintiffs to assess the validity of their claim (again without explaining how Zuffa's agreements with its sponsors foreclose competitors from all the other actual and potential sponsors of sporting events), Zuffa will provide Plaintiffs with its agreements with "key sponsors" as that term is used in the Complaint back to 2008. In response to other requests, Zuffa will also provide financial information regarding Zuffa's relationship with sponsors. In addition, Zuffa will search for relevant information in the agreed-upon custodians' ESI and hard copy documents based on search terms tailored to address information potentially relevant to its allegations with regard to sponsors, including Plaintiffs' allegations regarding the approval of athlete sponsors at UFC events and the so-called "exposure" fee. .

Much of the remaining documents related to sponsors called for by Plaintiffs' requests, however, will have nothing to do with the allegations in Plaintiffs' complaints but instead deal with the ordinary administration of the contracts. It is unduly burdensome to require Zuffa to perform an "all documents" request of every document related to sponsors for 15 years.

BOIES, SCHILLER & FLEXNER LLP

Michael Dell'Angelo
October 28, 2015
Page 14


UFC fighters competing for rivals (Request 40)

Zuffa believes Plaintiffs' request to provide "All documents referencing, discussing, or relating to any MMA fighter under contract with the UFC competing in a bout for an actual or potential rival MMA promotion" back to 2000 goes back too far. Zuffa will search for relevant information in the agreed-upon custodians' ESI and hard copy documents based on search terms back to 2008.

Role of managers, compensation of managers, agents (Request 41)

Plaintiffs' proposal requires Zuffa to produce "All Documents discussing or referencing [Zuffa's] analysis or interpretation of the role of mangers, agents or other representatives of MMA Fighters" back to 2005. Zuffa does not see the relevance of such information as it relates to Plaintiffs' allegations. None of Plaintiffs' allegations relate to the suppression in competition for managers and agents and, to Zuffa's knowledge, Plaintiffs have not included a manager or agent among the Plaintiffs seeking a redress of grievances. Therefore, Zuffa believes this request seeking all documents is overly broad and not reasonably calculated to lead to the discovery of relevant evidence. As discussed below in response to request 43, Zuffa will provide information that it has relating to the managers and agents of the named Plaintiffs. Additionally, there will likely be substantial information regarding managers and agents in the fighter files that Zuffa has agreed to produce for the members of the putative class.

Documents relating to Plaintiffs and their managers, agents, and representatives (Request 43)

Plaintiffs propose Zuffa produce all documents relating to the Plaintiffs and their representatives regardless of date. Plaintiffs' clarified on the October 20th meet and confer that the information regarding Plaintiffs' managers, agents, and representatives under this request relates only to their representation of the Plaintiffs and does not encompass the other fighters they may represent. Zuffa agrees to run search terms, to be agreed upon by the parties, that will produce information relevant to this request.

Unionization (Request 44)

Zuffa believes that Plaintiffs' request for "All documents concerning any actual or potential attempt by MMA Fighters to unionize or organize into another form of collective or collective bargaining unit" back to 2000 is overbroad and irrelevant to Plaintiffs' antitrust claim. Of course, it would be improper to use a federal antitrust lawsuit to seek discovery regarding a separate unionization effort or to obtain information that Plaintiffs think will be useful in their

BOIES, SCHILLER & FLEXNER LLP

Michael Dell'Angelo
October 28, 2015
Page 15

union advocacy efforts. Further, we are not aware of any authority suggesting that a firm's efforts or position with regard to a union or other attempts to form a collective bargaining organization can be evidence of any antitrust violation, much less the basis for imposing antitrust liability. If you have some authority in this regard, please let us know. In the absence of such authority, Zuffa stands by its objections to this request. To the extent that documents responsive to this request are also responsive to another, valid request, they will be produced.

Communication with members of the proposed class regarding allegations in the Complaints (Request 45)

Plaintiffs' proposal seeks all communications with any proposed class member (all athletes who competed with Zuffa or whose identity rights were used) relating to the broad allegations in Plaintiffs' complaints since 2005. As Plaintiffs are aware, the allegations in the complaints challenge nearly every aspect of Zuffa's business as it relates to fighters – from the terms of its contracts, the compensation paid thereunder and the use of the identity rights which have been granted to Zuffa. In sum and substance then, Plaintiffs' request calls for production of every communication that Zuffa has had with any of the hundreds of proposed class members for the past 10 years. This is vastly overbroad and burdensome. Zuffa has already agreed to produce all documents relating to the 11 named Plaintiffs and their managers, which will include such conversations. Zuffa has also agreed to produce the fighter files for all proposed class members, which will include communications responsive to this request. In addition to those documents, Zuffa agrees to produce documents relating to the Complaints beginning in the month the first complaint was filed, December of 2014.

*O'Bannon* case (Request 47)

Plaintiffs request all documents relating to the *O'Bannon* case from the Northern District of California since April of 2009. Zuffa agrees to provide documents, if any, responsive to this request.

Website documents, social media contracts (48-52)

Plaintiffs' requests regarding Zuffa's websites and social media are still vastly overbroad and burdensome. While Plaintiffs have narrowed their request from the hundreds of websites and social media accounts Zuffa runs to information from 15 websites and accounts, and have narrowed the relevant time frame to 2005, Plaintiffs' requests still call for "All documents referencing or relating to the creation and updating" and "All content posted to or deleted from" those 15 websites for the past decade. As Zuffa explained in its interrogatory response, Zuffa's

BOIES, SCHILLER & FLEXNER LLP

Michael Dell'Angelo
October 28, 2015
Page 16

websites are massive and constantly changing and contain very large image and video files. Your offer to exclude the actual bouts from the production does not meaningfully reduce the burden because the bouts are invariably interspersed with commentary and other promotional material. Zuffa is willing to discuss with Plaintiffs the provision of some sampling of the content of the websites or some other limitation, but believes it is unduly burdensome and will be extraordinarily costly to provide all information on the designated websites, which changed daily, for the past roughly 4000 days let alone all of the documents referencing the updating of those websites during that time period. This is particularly burdensome in that the information uploaded to the website was and is publicly available, and Plaintiffs and their representatives have been monitoring it for years.

Zuffa agrees to provide the contracts and agreements it has with social media organizations back to 2008 as per Plaintiffs' request and will provide documents relating to the communication of Zuffa employees with Twitter from the agreed upon custodians or will agree with Plaintiffs on relevant search terms to identify documents responsive to this request.

Registration with regulatory bodies (Request 53)

Zuffa agrees to provide Plaintiffs documents responsive to this request from December 2010, as per Plaintiffs' proposal.

Documents produced in response to other litigations (Requests 54, 56, 57, 59)

As I confirmed during our most recent conference, we are on track to produce approximately 100,000 documents responsive to requests 54 and 11-14, among other requests, within the next week. As discussed in prior conferences, Zuffa is in the process of compiling a list of litigations and arbitrations that will form the basis for further conferences to determine the set of documents to be produced in response to these requests.

**Case Schedule**

We look forward to your comments on Zuffa's counterproposal on the case management schedule.

**Additional Case Management Issues**

During the October 8th meet and confer call, we proposed some additional case management terms to govern discovery. You took our proposals under advisement and we still await your response.

BOIES, SCHILLER & FLEXNER LLP

Michael Dell'Angelo
October 28, 2015
Page 17

Interrogatories: Zuffa proposed limiting the number of party interrogatories in this case to 40 per side. To be clear, Zuffa would ask 40 questions, some of which may require individualized responses by different plaintiffs and some of which would not. We agreed to count Plaintiffs' first set of interrogatories as 6 out of the allowed 40, despite the numerous and distinct subparts of those interrogatories.

Deposition Hours: We proposed a limit on the number of hours for fact depositions to 150 hours per side. We confirmed that the hour limitation would allow a party to take a greater number of depositions for shorter periods of time (e.g., Plaintiffs could take 50 three-hour depositions), and that depositions that took fewer than seven hours would not be counted as a full seven-hour deposition.

Plaintiffs' allegations regarding transparency

Plaintiffs' allegations regarding Zuffa's alleged lack of transparency are not well taken.[4] As you know, and as you can see from the eight years' of organizational charts we provided to you, Zuffa has evolved and expanded over the time period for which you seek organizational information. Zuffa only came into existence in 2000 and, as we explained, did not have a human resources department until 2009. While there may be tax records reflecting payments to employees, these records are not associated with particular employee functions or titles for periods earlier than the period for which we have already provided information. While you may be frustrated that organizational charts do not exist dating back to the company's inception, the lack of available information is in no way related to transparency. To the contrary, we have provided you with the organizational information that is available, short of producing "a complete list of Zuffa's employees (including independent contractors other than fighters) during the proposed relevant time period." October 20, 2015 Dell'Angelo Letter at p. 3. As you must know, the latter request, to create a list for you of everyone who has ever worked for Zuffa and their titles, regardless of their role or employment status, for the past 15 years, is overbroad and we are unable to do so based on the time-limited electronic data available regarding Zuffa

---

[4] The case cited in your October 20 letter regarding transparency is inapposite and has no bearing on these circumstances. *See* Oct. 20, 2015 Ltr. from M. Dell'Angelo to J. Cove at 2-3 (citing *In re Porsche Cars North Am, Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, MDL No. 2233, 2012 U.S. Dist. LEXIS 132695, at *22 (S.D. Ohio Sept. 25, 2012)). As you know, *Porsche* discussed transparency with regard to search terms and other search protocol. Here, Plaintiffs have disputed whether search terms should even be used during the discovery process. Nonetheless, as previously discussed during several conferences on this issue, Zuffa has already committed to transparency regarding search terms and other culling methods, if the parties agree to use them. The *Porsche* case, and other cases discussing transparency, certainly do not require parties to disclose every person who has ever provided services to a company as part of the discovery process.

Case 2:15-cv-01045-RFB-BNW   Document 993-6   Filed 02/29/24   Page 19 of 19

BOIES, SCHILLER & FLEXNER LLP

Michael Dell'Angelo
October 28, 2015
Page 18

employees. Moreover, it is unclear why you need this overbroad information regarding, for example, every secretary, cameraman, accountant, IT support person, data entry clerk, runner, receptionist, and security guard who has provided services to Zuffa since 2000.

You have lists and charts for all of the core employees and executives of Zuffa, as well as voluminous lists of the individuals who reported to those core employees. You have information identifying the roles all the individuals in a position to be meaningful witnesses in a monopolization case held in the company over an eight-year period. We have offered to research information regarding employees and/or positions on those lists and charts, to the extent you have further questions about them. However, we maintain that you have the information you need to have informed discussions and make informed decisions regarding potential custodians in this case, and compiling lists of thousands of individuals who received compensation from Zuffa since 2000 will neither further inform that process nor move the process forward in an expedient and cost effective manner.

Questions on ESI

We are studying the list of questions you posed in your letters of October 20 and 22, which to answer completely would require a major expenditure of attorney and client time, and to which we will respond separately.

Zuffa's RFPs to Plaintiffs

As we discussed today, we are prepared to discuss any burden or other issues you may have with our requests to the Plaintiffs at your convenience.

Sincerely,

John F. Cove, Jr.

cc (via e-mail only):
    Joseph Saveri (jsaveri@saverilawfirm.com)
    Matthew Weiler (mweiler@saverilawfirm.com)