WILLIAM A. ISAACSON (*Pro hac vice*)
wisaacson@paulweiss.com
KAREN L. DUNN (*Pro hac vice*)
ldunn@paulweiss.com
JESSICA PHILLIPS (*Pro hac vice*)
jphillips@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006

DONALD J. CAMPBELL (No. 1216)
djc@campbellandwilliams.com
J. COLBY WILLIAMS (No. 5549)
jcw@campbellandwilliams.com
CAMPBELL & WILLIAMS
7100 South 7th Street
Las Vegas, NV 89101

CHRISTOPHER S. YATES (*Pro hac vice*)
chris.yates@lw.com
AARON T. CHIU (*Pro hac vice*)
aaron.chiu@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111

SEAN M. BERKOWITZ (*Pro hac vice*)
sean.berkowitz@lw.com
LATHAM & WATKINS LLP
330 North Wabash Ave, Suite 2800
Chicago, IL 60611

LAURA R. WASHINGTON (*Pro hac vice*)
laura.washington@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd, Suite 1100
Los Angeles, CA 90067

*Attorneys for Defendant Zuffa, LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,

Defendant.

Case No.: 2:15-cv-01045-RFB-BNW

**DEFENDANT ZUFFA, LLC'S MOTIONS IN LIMINE TO PRECLUDE OTHER INADMISSIBLE TESTIMONY**

## I. MOTION *IN LIMINE* NO. 12: MOTION TO PRECLUDE PLAINTIFFS' SPECULATIVE AND GENERAL TESTIMONY LACKING PERSONAL KNOWLEDGE AND BASED ON HEARSAY[1]

Throughout their depositions, Plaintiffs and Nathan Quarry[2] repeatedly speculated about what they contended other fighters thought or experienced and based that testimony on the supposed "common knowledge" of the experiences of other fighters. Zuffa anticipates that Plaintiffs will seek to introduce such testimony at trial. This testimony is inadmissible under Federal Rule of Evidence 602, because Plaintiffs and Mr. Quarry lack the requisite personal knowledge to offer such speculative statements. It is also inadmissible hearsay under Federal Rule of Evidence 802, because it is based on what Plaintiffs heard from or regarding other fighters. Such testimony—whether presented by deposition or live at trial—should be excluded. A ruling on this testimony will also guide the parties and their objections should similar testimony be considered at trial.

Plaintiffs and Mr. Quarry repeatedly gave speculative and generalized hearsay testimony not based on their personal knowledge in their depositions, and Plaintiffs will likely attempt to elicit similar testimony from them at trial. For example, at their depositions, Plaintiffs testified as follows:[3]

*Jon Fitch*:

- UFC "contracts were take it or leave it. So everybody knew that already." Def.'s Opp'n to Pls.' Mot. for Class Certification Ex. 9, Fitch Dep. 72:23–24, Dkt. 540-13. Mr. Fitch attributed this knowledge to his manager's experience, not his own personal knowledge. *Id.* at 72:25–73:5.

---

[1] Zuffa has organized its motions *in limine* by subject matter. The instant Motion relates to other inadmissible evidence. Zuffa and Plaintiffs have been in ongoing discussions about various other evidentiary issues and potential stipulations. To the extent the parties are unable to resolve these issues, Zuffa reserves the right to supplement its motions *in limine* and address additional issues with the Court.

[2] Mr. Quarry never fought for UFC during the alleged Class Period and is not a member of the Bout Class. As such, the parties have agreed that Mr. Quarry will not be referred to as a "plaintiff" at trial.

[3] The testimony identified here are examples and do not constitute an exhaustive list of Plaintiffs' testimony that is inadmissible under Rule 602, Rule 802, or both. Zuffa reserves the right to lodge objections on those grounds to other testimony and exhibits offered by Plaintiffs at trial.

- Regarding fighter pay, "[i]t's pretty standardized across the board for all the fighters to get the same basic pay," and "the language of the contracts is the same." *Id.* at 73:23–25, 74:18–19.

- Mr. Fitch testified that he showed an email from Joe Silva to various people, and "[e]veryone I showed it to took it as a threat." *Id.* at 80:18–24.

- On being "cut" for not signing an agreement: "I had fighters come up to me and tell me that worried them, that they don't feel safe in their jobs and in their fight contracts anymore, because that happened." *Id.* at 161:22–25.

- On being forced to sign a video game agreement: "once I was forced to sign, that was like the flood gates, because then everybody else was so scared that they just started signing the video game agreement and they started signing the merchandising agreement. I mean, I haven't looked at it, but I'm guessing or I'm speculating that if you look at all those agreements signed, they probably came not too far after my agreement was signed." *Id.* at 168:3–14.

- Fighter Randy Couture was "airbrushed out of a lot of promotional stuff because he wouldn't sign something." Ex. 2,[4] J. Fitch Dep. 194:18–21, 195:12–20. Mr. Fitch admitted that he lacked personal knowledge of the Mr. Couture episode but stated that Mr. Couture had "explained it a few times." *Id.* at 195:15–18.

- Fighter Tito Ortiz "is another example where [the UFC] airbrushed him out, they removed him completely from the organization" because "they weren't happy with him." *Id.* 195:21-196:3. Mr. Fitch testified, as to Mr. Ortiz, "I do not have any personal knowledge about that. I have general knowledge from things I've read on the Internet or heard secondhand from people that know him." *Id.* at 196:8–11.

- Plaintiff Cung Le "faced some scrutiny because he was not willing to sign a re-up promotional agreement." *Id.* at 194:22–24. Mr. Fitch admitted that his knowledge of the dispute with Mr. Le was not based on personal knowledge but was based on having "heard a number of his stories" and because "there's some elements of his story covered by the media," though Mr. Fitch conceded he didn't know if the media had "all of the history or all of the details." *Id.* at 198:1–16.

*Kyle Kingsbury*:

- "Everyone knew they had to sign [the UFC's likeness agreement], or they could risk being fired on the spot." Ex. 3, K. Kingsbury Dep. 222:6–7. Mr. Kingsbury's testimony regarding this threat appeared to be based largely on his understanding that some fighters at the American Kickboxing Academy had been fired for not signing the likeness agreement; however, the only individual he was able to name to whom this happened was Jon Fitch. *Id.* at 16:18–17:4, 220:25–222:7.

---

[4] All exhibits cited herein are to the Declaration of David Johnson in Support of Zuffa's Motions *in Limine* unless otherwise stated.

- Because fighter Andrei Arlovsky "made it known that he wanted to not re-sign with a fight left on his contract, [the UFC] benched him for a year." *Id.* at 223:8–10. Mr. Kingsbury admitted he "was not directly involved with Andrei Arlovski" and only found out about the incident because "[i]t was pretty well known in the AMA community" and from "complaints online." *Id.* at 223:17–224:13.

- Fighter "Randy Couture want[ed] to fight Fedor Emelianenko" and "went to court" with the UFC over this issue. *Id.* at 224:15–225:3. Mr. Kingsbury admitted that his testimony was based not on personal knowledge of Mr. Couture but rather on "watching videos of Randy Couture himself talking about what was going on." *Id.* at 225:11–17.

*Cung Le*. Plaintiff Le testified, for example:

- Regarding Dana White, "It's where you can't really say no because every fighter knows that if you say no to the boss what happens. You get blacklisted, or you get sat down. You get no fights." Def.s' Opp'n to Pls.' Mot. for Class Certification Ex. 68, Le Dep. 55:12–15, Dkt. 540-72. Mr. Le admitted that this testimony was not based on personal knowledge: he conceded that he had never been blacklisted himself and that any knowledge he had of blacklisting was "based on things [he] heard from other fighters or that [he] read in the media." *Id*. at 67:18–68:11. Mr. Le also admitted that he could not think of "any threats by Joe Silva that [he had] personally heard or witnessed." *Id.* at 60:16–18.

- Joe Silva made a threat "at some banquet" where he stated "that if you don't take the first fight, the second fight's going to be -- I don't know the exact word, but you're basically fucked." *Id.*at 58:2-10. However, Mr. Le admitted that he was "not at the banquet," and that he merely "heard about it," though he did not recall from whom. *Id.* at 58:11–15.

*Javier Vazquez*:

- During the UFC's matching period, "no one's going to touch you, no one is going to touch you. You can't be in a UFC contract or WEC contract and go negotiate with somebody else. Nobody will touch you." Ex. 4, J. Vazquez Dep. Tr. 146:3–7, Feb. 14, 2017. Yet Mr. Vazquez conceded that he himself "never went through a matching period." *Id.* at 144:7-10. He did not have "personal experience with other promotions declining to make an offer because of . . . Zuffa's ability to match an offer." *Id.* at 145:16–19. Mr. Vazquez also admitted that he could not personally identify examples of the UFC's matching period preventing other promoters from making offers to former UFC fighters. *Id.* at 149:4–14. All that Mr. Vazquez could say is that he had "heard stories" but did not "want to speculate on the names." *Id.* at 149:10–14.

- During the UFC's matching period, "[i]t is kind of an unwritten rule that you don't mess with the UFC fighters until they're under contract . . . because of the way the UFC can be intimidating force, that most promoters don't want to step on any

shoes." *Id.*at 152:11–24. Mr. Vazquez stated that the source of his understanding of this "unwritten rule" was "[g]eneral – common knowledge." *Id.* at 153:5–7.

*Brandon Vera*:

- "Every time a fighter has -- is coming up on his renegotiation period, it was common knowledge in our industry that if you didn't sign the new agreement, that you were going to get frozen out or put on a dark show so that nobody would ever see your last fight." Pls.' Opp'n to Def.'s Renewed Mot. for Summ. J. Ex. 19, Vera Dep. 118:1–6, Dkt. 926-21. Mr. Vera conceded that his testimony was based on "common knowledge" and "[s]tories of almost so many fighters, so many fighters," not on personal knowledge. *Id.* at 119:15–18. However, when asked for specific examples of fighters who had been "frozen out" in this manner, Mr. Vera could not name any, and responded only that "Phil Davis was talking about it" and that "Phil said that's the game." *Id.* at 119:19–121:6.

- Mr. Vera learned that "[t]hey were going to cut [Jon] Fitch and his whole entire team at" American Kickboxing Academy from "[t]he internet stories from all the coaches." *Id.* at 121:22–122:6.

- When asked if he "talked to Jon Fitch directly about" being cut from American Kickboxing Academy: "No, sir. I heard the stories from multiple fighters, as I'm traveling to the U.S. I don't know who their names were. And then finally when I did meet up with Fitch face-to-face, I asked him. And he said, that's how it's going down." *Id.* at 122:13–19.

*Nathan Quarry*:

- "It's generally common knowledge that fighters were unhappy with how they were being treated." Ex. 5, N. Quarry Dep. 16:7–9. Yet Mr. Quarry admitted that it "would be speculation" for him to say "what every fighter thought." *Id.* at 16:21–23.

- "No fighter is able to negotiate because they're all handed the same cookie cutter contract and forced to sign, and if you don't want to sign that, you have nowhere else to go since UFC has bought up all the competition." *Id.* at 48:24–49:3.

- Mr. Quarry's understanding of "other [fighters'] perceptions" was based on "the web," not personal knowledge: "So you talk to one or two fighters, they talk to one or two fighters, they talk to one or two fighters, it becomes kind of a consensus. Everyone feels the same way and knows how things are done." *Id.* at 93:14–23.

- "If you look at situations such as Cung Le, who decides he no longer wants to fight for the UFC due to the treatment, there is no clause where he can get out of his contract and say, 'I was treated poorly; I want to go fight somewhere else.' So his continuing never -- his contract never ends, no matter how much money he's offered or what; there is no clause. It's a very one-sided contract." *Id.* at 190:2–10.

> However, Mr. Quarry admitted he had never actually seen the provisions of Mr. Le's contract. *Id.* at 190:24–191:8.

This testimony, and any other testimony like it that Plaintiffs attempt to offer at trial should be excluded as is neither based on any personal knowledge of the witnesses and are otherwise inadmissible hearsay.

### A. Plaintiffs' Speculative Testimony Regarding Other Fighters' Thoughts And Experiences Violates Rule 602

"A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. "Personal knowledge means knowledge produced by the direct involvement of the senses." *United States* v. *Lopez*, 762 F.3d 852, 863 (9th Cir. 2014). "It is axiomatic that a witness will not be permitted to speculate, guess, or voice suspicions." 27 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure, Federal Rules of Evidence ch. 7 § 6026 (2d ed. 2007).

All of the testimony above is inadmissible because it is speculative and generalized testimony regarding other fighters' supposed experiences, treatment by UFC, and fighter contracts that each witness conceded was not based on his personal knowledge. Mr. Fitch admitted that he did not have "personal knowledge" but only "general knowledge" about certain fighters, *e.g.*, Exhibit 2, Fitch Deposition 196:8–11; Mr. Kingsbury cited "complaints online," Ex. 3, Kingsbury Deposition 223:17–224:13; Mr. Le relied on information he had "heard from other fighters" or "read in the media," Le Deposition 67:18–68:11, Dkt. 540-72; Mr. Vazquez stated that he had "heard stories," Exhibit. 4, Vazquez Deposition 149:10–14; Mr. Vera conceded his testimony was based on "stories of almost so many fighters," Vera Deposition 119:15–18, Dkt. 926-21; and Mr. Quarry testified about a "consensus" of other fighters' perceptions, Ex. 5, Quarry Deposition.. 93:14–23.

Courts routinely reject similar speculative testimony under Rule 602 not based on personal knowledge. For example, in *In re Worlds of Wonder Securities Litigation*, the Ninth Circuit upheld the district court's exclusion of a declaration that attributed testimony to "common knowledge" and conversations with others as lacking personal knowledge under Rule 602 (as well as for

constituting inadmissible hearsay under Federal Rule of Evidence 802). 35 F.3d 1407, 1420 n.4 (9th Cir. 1994). The court in *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Products Liability Litigation* similarly held that the defendants in that case could "not present testimony or argument purporting to speak on behalf of all doctors or the entire medical community," because "[p]ursuant to Rule 602, Defendants' witnesses may only speak to matters of which they have personal knowledge." 2021 WL 5816302, at *2 (S.D. Ohio Dec. 7, 2021). In *Fitzpatrick v. National Mobile Television*, the court rejected a witness's affidavit that another driver had been involved in several accidents based on "common knowledge within the company" because it lacked "personal knowledge" under Rule 602 and could have been based on "hearsay, or mere rumor or innuendo." 364 F. Supp. 2d 483, 495 (M.D. Pa. 2005). And in *Zokari v. Gates*, the Tenth Circuit affirmed the district court's exclusion under Rule 602 of testimony of an individual who had reviewed certain employee evaluations but had no personal knowledge of those employees' work performance. 561 F.3d 1076, 1089 (10th Cir. 2009). The specific fighter testimony identified above is no different. The Court should exclude it and any similar testimony by the named Plaintiffs and Mr. Quarry for which personal knowledge is lacking.

### B. Plaintiffs' Hearsay Testimony Regarding Other Fighters' Thoughts And Experiences Violates Rule 802

Plaintiffs' testimony identified above is also inadmissible hearsay. Hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801. Individuals' testimony purporting to know or share what other individuals experienced, including framing such experience as "common knowledge," is hearsay. "[A] witness cannot be said to have knowledge of history or historical events that the witness was not present to perceive. Such a witness learns of historical events only by reading or hearing about them and, thus, is reliant on hearsay." Charles Alan Wright, ch. 7§ 6023. "Testimony that a fact is common knowledge is hearsay because such testimony summarizes the knowledge of persons other than the declarant." *Daly v. Far E. Shipping Co. PLC*, 238 F. Supp. 2d 1231, 1234 (W.D. Wash. 2003).

Numerous courts have excluded testimony repeating out-of-court statements, similar to the testimony at issue here, as inadmissible hearsay. For example, in *Mims v. Federal Express Corp.*, the court precluded a witness's testimony recounting statements that others had made to the witness because "such evidence is prototypical hearsay" and the witness lacked "personal knowledge to offer the challenged testimony." 2015 WL 12711651, at *13 (C.D. Cal. Jan. 15, 2015).

On many occasions, Plaintiffs and Mr. Quarry relied on so-called "general knowledge" or "common knowledge" regarding the UFC's conduct and fighters' experiences. *See, e.g.*, Ex. 2, Fitch Dep. 196:8–11; Ex. 4, Vazquez Dep. 153:5–7; Vera Dep. 118:1–6, 119:15—18, Dkt. 926-21; Ex. 5, Quarry Dep. 16:7–9. Courts routinely reject such testimony based on "common knowledge" as hearsay. For example, in *Williams v. Calderon*, the Ninth Circuit concluded that a statement only based on "common knowledge" amounted to hearsay. 83 F.3d 281, 288 n.5 (9th Cir. 1996). The court in *Daly* excluded hearsay testimony "that a longshoreman told plaintiff about a laser and that the presence of the laser was common knowledge," including because "[t]estimony that a fact is common knowledge is hearsay because such testimony summarizes the knowledge of persons other than the declarant." 238 F. Supp. 2d at 1234. The court in *Aldridge v. Yamhill County* likewise struck testimony based on "common knowledge" where witness was unable to attribute "statements to any particular person." 2006 WL 1788178, at *12 (D. Or. June 23, 2006). Simply put, "'common knowledge' is not 'personal knowledge'" and thus does not satisfy Rule 802. *Barton v. Warren Cnty.*, 2023 WL 3981414, at *11 (N.D.N.Y. June 13, 2023) (citation omitted). "Nor may hearsay become personal knowledge merely because a witness has internalized statements made by others and decided they must be true." *Scott v. City of New York*, 591 F. Supp. 2d 554, 566 (S.D.N.Y. 2008). Plaintiffs' should be precluded from introducing speculative deposition testimony from Plaintiffs and Mr. Quarry relying on "common knowledge," including the testimony identified above, and any comparable live testimony considered at trial should be similarly precluded.

## II. MOTION *IN LIMINE* NO. 13: MOTION TO EXCLUDE PLAINTIFFS' INCOMPLETE VIDEO CLIPS

Plaintiffs' exhibit list is full of video "clips" that are incomplete and selectively cut. There are seventy-seven partial video recordings, including ten recordings[5] that are shorter than fifteen seconds long and fifty-three recordings[6] that are less than one minute in length, many of which were not produced in discovery.[7] Zuffa brings this motion to exclude four specific proposed video clip exhibits—PTX-22, 1414, 1424, and 1656—that violate the rule of completeness, are unfairly prejudicial, have not been authenticated, and violate the best evidence rule. *See* Fed. R. Evid. 106, 403, 901, 1002.[8]

Federal Rule of Evidence 106 requires that, when a party introduces a recorded statement, "an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Fed. R. Evid. 106.[9] The rule of completeness guards against the risk that the jury will be misled by a statement taken out of context. Applying that principle, the Ninth Circuit requires that "a full document or set of documents be introduced: 'when one party has made use of a portion of a document.'" *United States v. Collicott*, 92 F.3d 973, 983 (9th Cir. 1996), *as amended* (Oct. 21, 1996) (citation omitted); *see also United States v. Mendoza*, 2022 WL 958381, at *7 (N.D. Cal. Mar. 30, 2022)

---

[5] Plaintiffs' Trial Exhibits ("PTX") 41, 972, 1357, 140, 1408, 1410, 1411, 1412, 1424, 1425.

[6] PTX-10, 22, 23, 24, 41, 43, 55, 134, 935, 072, 1357, 1361, 1364, 1385, 1386, 1390, 1392, 1395, 1399, 1400, 1401, 1402, 1403, 1404, 1405, 1406, 1408, 1409, 1410, 1411, 1412, 1414, 1417, 1421, 1422, 1423, 1424, 1425, 1426, 1430, 1431, 1441, 1442, 1450, 1645, 1647, 1648, 1649, 1650, 1651.

[7] Plaintiffs have conceded that at over forty videos included on their exhibit list are not recordings in their entirety, thereby violating the rule of completeness, by identifying these videos as "clips" or "excerpts" on their exhibit list. PTX-41, 43, 971, 972, 1057, 1353, 1357, 1361, 1364, 1380, 1385, 1386, 1388, 1390, 1392, 1395, 1399, 1400, 1401, 1402, 1403, 1404, 1405, 1406, 1407, 1408, 1409, 1410, 1411, 1412, 1414, 1417, 1421, 1422, 1423, 1424, 1425, 1426, 1430, 1431, 1441, 1442, 1450.

[8] While this Motion seeks to exclude these four specific exhibits, Zuffa anticipates that a ruling on these exhibits will guide the parties and their objections should similar testimony be used at trial. In fact, Plaintiffs have listed nearly eighty video recordings on their exhibit list. It is not clear what portions of these recordings Plaintiffs will offer at trial. Defendants therefore reserve the right to raise further objections to these video excerpts after Plaintiffs' intended use of these exhibits becomes clear.

[9] Recently, Rule 106 was amended to "cover all statements, including oral statements," even those that "have not been recorded." Fed. R. Evid. 106.

("The rule of completeness requires that a full recorded statement be introduced when one party's use of a portion of the recorded statement would cause a misunderstanding or distortion . . . ."). It is worth noting, however, that "[i]n some cases, the court may find that the difficulty in proving the completing statement substantially outweighs its probative value—in which case exclusion is possible under Rule 403." Fed. R. Evid. 106 advisory committee's note to 2023 amendments. This concern is particularly relevant in this case, where clips on Plaintiffs' exhibit list are incomplete and come from unknown sources, and is heightened by the fact that these clips were not produced by Plaintiffs in discovery and, as such, Plaintiffs have yet to demonstrate that complete versions of the exhibit list clips even exist.

Each of the four video exhibit clips cited above that Zuffa seeks to exclude are incomplete, cherry-picked, and misleading portions of public appearances, media interviews, and statements made by Zuffa executives Lorenzo Fertitta and Dana White. PTX-22, 1414, 1424, 1656. Specifically:

- PTX-22 is a twenty-seven-second clip of Zuffa Chairman and Chief Executive Officer Lorenzo Fertitta conducting a media interview, in which Mr. Fertitta's answer to a question regarding fighter negotiations is abruptly cut off: "We've dominated this sport. We've dominated this space . . . .";

- PTX-1414 is a twenty-six-second clip of Zuffa President Dana White that does not show the question posed to elicit Mr. White's documented response—or provide any other context;

- PTX-1424 is a nine-second clip of Mr. White, which again does not show the full contents of Mr. White's answer discussing the length of fighters' careers and cuts off mid-sentence: "People always ask me questions like 'Well, what happens when they retire?' Well, what happens when they retire is a lot of these guys are going broke . . . ."; and

- PTX-1656 is an unidentified twenty-six second clip of Mr. White, where Mr. White responds to an unidentified speaker whose statement cannot be heard clearly on the video, and where Mr. White is cut off in the middle of his sentence.

Although the full videos from which these clips were excerpted are not available to Zuffa, it is clear from viewing them that crucial context and information are missing. Without complete recordings, jurors will be left to rely on mistaken impressions of these key witnesses and inaccurate information regarding important details, when deliberating on significant questions of law in this

case. These partial video exhibits on Plaintiffs' exhibit list should be deemed inadmissible on this basis alone.

The partial video exhibits should also be excluded because their probative value—which is limited without the full context of the excerpted statements—is substantially outweighed by the risk of unfair prejudice to Zuffa. Under Federal Rule of Evidence 403, evidence "may be excluded when there is a significant danger" that evidence would be "substantially outweighed by the danger of unfair prejudice" or "distract reasonable jurors from the real issues in a case." *Campbell v. Garcia*, 2016 WL 4769728, at *2 (D. Nev. Sept. 13, 2016) (citation omitted); *United States v. Benavidez-Benavidez*, 217 F.3d 720, 725 (9th Cir. 2000) ("[E]xclusion under Rule 403 is absolute. Once the probative value of a piece of evidence is found to be substantially outweighed by the danger of unfair prejudice, there is no other evidentiary rule that can operate to make that same evidence admissible."). The risk of juror confusion is particularly acute where out of context recorded evidence will "divert the jury's attention from the issues in [a] case to a significant amount of extraneous matter . . . result[ing in] a considerable potential for unfair prejudice and confusion of the issues." *United States v. Layton*, 767 F.2d 549, 556 (9th Cir. 1985).

Here, Plaintiffs' proposed video exhibit clips present a serious risk of confusing the jury. In each of the clips, Plaintiffs have misleadingly shortened or extracted statements made by Zuffa executives, in the course of lengthy interviews and appearances, to snippets lasting less than thirty seconds in length, and in one case a clip that lasts only nine seconds. *See* PTX-22, 1414, 1424, 1656. The out-of-context nature of these clips ensures that jurors will be confused and prejudiced against Zuffa, purely on the basis of misleading fragments of information being speciously fed to them by Plaintiffs.

Plaintiffs' four video clip exhibits also have not been authenticated. With regard to evidence, "[a]uthentication is a 'condition precedent to admissibility.'" *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (citation omitted). A "party offering . . . evidence must make a prima facie showing of authenticity 'so that a reasonable juror could find in favor of authenticity or identification.'" *United States v. Gadson*, 763 F.3d 1189, 1203 (9th Cir. 2014) (citation omitted). None of the four challenged excerpts on Plaintiffs' exhibit list have any

discernable source, raising serious questions about their authenticity. *See* PTX-22, 1414, 1424, 1656. Without the necessary authentication, it is impossible to determine whether Plaintiffs' proposed video evidence is valid and identifiable. The difficulty of authenticating these videos is heightened by the fact that Plaintiffs did not produce the complete versions of these videos in discovery and have never offered any proof that complete versions of the exhibit list clips exist. Plaintiffs have not met their burden to "produce evidence sufficient to support a finding that the item[s are] what the proponent claims [they are]." Fed. R. Evid. 901.

Given that the excerpted clips on Plaintiffs' exhibit list lack an identifiable source (and were not produced in discovery), the video exhibits also fail to meet the requirements of the best evidence rule. "An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002. Without a verifiable source for the proposed video exhibit clips listed by Plaintiffs, the Court cannot ensure that the clips in question are, in fact, "original . . . recording[s]." *Id.* Here, the Court cannot be sure that the words of the video excerpts produced by Plaintiffs are the "exact words" of the original, complete video recordings because the excerpts have been manipulated and separated from their source material.

For the foregoing reasons, and to prevent improper video testimony from misleading the jury and causing unnecessary confusion and prejudice, Zuffa respectfully requests that the partial video recordings of PTX-22, PTX-1414, PTX-1424, and PTX-1656 be excluded.

Dated: February 29, 2024

Respectfully Submitted,

WILLIAM A. ISAACSON (*Pro hac vice*)
wisaacson@paulweiss.com
KAREN L. DUNN (*Pro hac vice*)
ldunn@paulweiss.com
JESSICA PHILLIPS (*Pro hac vice*)
jphillips@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006

BRETTE M. TANNENBAUM (*Pro hac vice*)
btannenbaum@paulweiss.com
YOTAM BARKAI (*Pro hac vice*)
ybarkai@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019

DONALD J. CAMPBELL (No. 1216)
djc@campbellandwilliams.com
J. COLBY WILLIAMS (No. 5549)
jcw@campbellandwilliams.com
CAMPBELL & WILLIAMS
700 South 7th Street
Las Vegas, Nevada 89101
Tel: (702) 382-5222

*/s/ Christopher S. Yates*
CHRISTOPHER S. YATES (*Pro hac vice*)
chris.yates@lw.com
AARON T. CHIU (*Pro hac vice*)
aaron.chiu@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 395-8095

SEAN M. BERKOWITZ (*Pro hac vice*)
sean.berkowitz@lw.com
LATHAM & WATKINS LLP
330 North Wabash Ave, Suite 2800
Chicago, IL 60611

LAURA WASHINGTON (*Pro hac vice*)
laura.washington@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd, Suite 1100
Los Angeles, CA 90067

DAVID L. JOHNSON (*Pro hac vice*)
david.johnson@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004

*Attorneys for Defendant Zuffa, LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing Defendant's Omnibus Motions *in Limine* Nos. 12-13 was served on February 29, 2024 via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

/s/ *Christopher S. Yates*
Christopher S. Yates of
LATHAM & WATKINS LLP