ERIC L. CRAMER (*pro hac vice*)
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
ecramer@bm.net

JOSEPH R. SAVERI (*pro hac vice*)
JOSEPH SAVERI LAW FIRM, LLP
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
jsaveri@saverilawfirm.com

RICHARD A. KOFFMAN (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., N.W., Suite 500, East Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408 4699
rkoffman@cohenmilstein.com

*Counsel for the Class and Attorneys for All Individual and Representative Plaintiffs*

[Additional Counsel Listed on Signature Page]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>Defendant. | Case No. 2:15-cv-01045-RFB-BNW<br><br>**PLAINTIFFS' MOTION IN LIMINE NO. 3 TO EXCLUDE EVIDENCE OR REFERENCE RELATING TO FACTS, CIRCUMSTANCES, OR EVENTS OCCURRING AFTER JUNE 30, 2017** |

**TABLE OF CONTENTS**

Page(s)

I.   INTRODUCTION ...................................................................................................................1

II.  BACKGROUND .....................................................................................................................2

III. ARGUMENT ...........................................................................................................................4

    A.   Evidence Concerning Post-Class Period Facts, Circumstances, or Events Is Not Relevant to the Claims and Defenses Here ..................................................................4

    B.   Admitting Evidence Concerning Post-Class Period Facts, Circumstances, or Events Would Be Unduly Prejudicial ............................................................................6

        1.   Post-Class Period facts, circumstances, or events would confuse the jury. .....6

        2.   It would be unfair to Plaintiffs and misleading to jurors to allow Zuffa to cherry-pick the post-June 30, 2017 evidence. ...................................................8

IV.  CONCLUSION .......................................................................................................................9

## I. INTRODUCTION

Plaintiffs Cung Le, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury ("Plaintiffs") file this Motion in Limine to Exclude Evidence or Reference relating to facts, circumstances, or events occurring after June 30, 2017, to the extent such evidence is offered as probative of any element of Plaintiffs' cause of action or Defendant Zuffa, LLC's ("Zuffa" or "Defendant") defenses thereto. The Court has already ruled on the substance of this issue when it denied Zuffa's motion to reopen discovery in *Le*, ECF No. 922, and this Motion seeks to formalize that result for trial.[1] This Motion does not seek to exclude the use of post-2017 evidence for purposes unrelated to the elements of Plaintiffs' claim or Zuffa's defenses thereto, such as for general foundational purposes or to impeach a witness's credibility.

As the Court knows, the "Class Period" in *Le* runs from December 2010 through June 2017. ECF No. 839 at 27-30, 44-71. Fact discovery in *Le* has been closed since July 31, 2017, *i.e.*, for more than six years. ECF No. 432. The Court indicated it would certify the Bout Class in *Le* on December 10, 2020—nearly three years ago. *See* ECF No. 775. But, since August 2023, Zuffa has repeatedly tried to inject new facts into this trial, including, e.g., "six years of competitive developments" from mid-2017 to 2023. *See, e.g.*, Motion to Reopen Discovery and Amend Scheduling Order, ECF No. 884; Motion to Treat Fact Evidence Produced in *Johnson* (*Johnson v. Zuffa, LLC*, No. 21-cv-1189 (D. Nev.)) as if It Was Also Produced in *Le* (ECF No. 885); *see also* ECF 843 at 2-3; Hrg. Tr. ECF No. 846, at 7-8, 25. Zuffa has indicated it will continue to try to introduce new evidence concerning the post-Class Period at trial. *See*, *e.g.*, Zuffa's Trial Brief, ECF No. 979 at 49.

The evidence Zuffa seeks to introduce concerning post-Class Period facts, circumstances and events should be excluded on three grounds. <u>First</u>, the evidence is irrelevant and thus inadmissible under Fed. R. Evid. 401. Evidence of competition during the post-Class Period would not be material to

---

[1] Plaintiffs recognize that the Court stated at the November 21, 2023 hearing that the Court had not decided this issue as it relates to a motion in limine. Hrg. Tr. at 31-32, ECF No. 923. The Court indicated at that hearing that it matters which evidence Zuffa seeks to bring in. *Id.* But Zuffa has produced nothing relevant to liability and damages in *Le* from the post-2017 period, and has never made a showing that anything it seeks to introduce is relevant. Nor can Zuffa make such a showing as set forth herein.

whether Zuffa illicitly maintained monopsony power during the seven years of the Class Period in *Le* (2010-2017). <u>Second</u>, even if such evidence had limited relevance, it would be unduly prejudicial and should be excluded pursuant to Fed. R. Evid. 403. As the evidence Zuffa seeks to introduce cannot negate the evidence establishing that Zuffa willfully maintained monopsony power during the Class Period, any evidence purporting to show a change in Zuffa's monopsony power post-Class Period could confuse the jury as to the material issue in this lawsuit, i.e., whether Zuffa willfully maintained monopsony power during the Class Period. <u>Third</u>, allowing Zuffa to cherry-pick evidence concerning post-Class Period facts, circumstances, and events would be both unfair to Plaintiffs—who have not had an adequate opportunity to develop the factual record for such period—and unfairly prejudicial in that the jury would be presented with an incomplete record concerning the post-Class Period.

The Court should exclude evidence concerning post-Class Period facts, circumstances, and events, to the extent such evidence is offered as probative of any element of any claim or defense.

**II.     BACKGROUND**

Zuffa has already moved the Court to allow it to reopen discovery in *Le* to develop evidence concerning post-Class Period facts, circumstances, and events. *See, e.g.*, ECF Nos. 884 & 885. The Court denied Zuffa's motions from the bench on November 21, 2023. *See* Hrg. Tr. at 60, ECF No. 923; *see also* ECF No. 922. The Court held that it did not find the discovery Zuffa sought to obtain for use at trial in *Le* to be "likely to lead to relevant information related to damages" "based on the record [in *Le*] that the class period itself is sufficient one way or another to establish whether or not monopsony power existed and without consideration for information" after the Class Period. Hrg. Tr. at 60, ECF No. 923. The Court left open the possibility that Zuffa could potentially introduce post-Class Period evidence at trial, but that the Court would first have to review Zuffa's trial brief.

Zuffa's trial brief provides little clarity on what specific post-Class Period evidence (or which facts, circumstances, or events after June 30, 2017) Zuffa intends to introduce. And the post-Class Period facts, circumstances, and events that Zuffa does cite in its trial brief are both unsupported by admissible evidence and contradicted by the record. For example, Zuffa asserts in its trial brief that the "trend" of other promotions increasing their output has continued after the Class Period, citing PFL's

promotional material (but no data) boasting that it is "growing." *See* Zuffa's Trial Brief, ECF No. 979 at 24. But PFL had more events in 2018 (11) than in any year from 2019 to 2023 (10 each year in 2019 and 2021-2023, with 0 events in 2020) [2]—this is not growth. Zuffa also points to Bellator as a promotion that has "continued to grow." *See* Zuffa's Trial Brief, ECF No. 979 at 24. But PFL bought Bellator in 2023 and plans to continue the brand only for select events. Bellator certainly isn't growing; it's dead.[3]

Zuffa further contends in its trial brief that evidence of current market conditions is "highly relevant to the disputed issues of monopsony power and anticompetitive effects." *See* ECF No. 979 at 49. But, while Zuffa states that it will "seek to admit at trial post-Class Period evidence regarding (1) entry and growth of competitors in the relevant market; and (2) competitors expansion of output in the relevant market", it does not identify the evidence that it will seek to introduce on these points.

Since the Court denied Zuffa's motions to reopen discovery in *Le* and/or allow discovery in *Johnson* to be used in *Le*, ECF No. 922, Zuffa has produced documents in the *Johnson* matter then included those documents on its exhibit list in *Le*. But while some of these *Johnson* documents concern facts, circumstances, and events after June 30, 2017, the *Johnson* documents do not appear to pertain to current market conditions. Regardless, Plaintiffs have objected to the *Johnson* documents on Zuffa's exhibit list.

The parties have not engaged in significant discovery in *Johnson* and Zuffa has yet to make any significant productions in *Johnson* in response to Plaintiffs' requests for production of documents served in 2023. Moreover, none of the experts in *Le* addressed data, market share, competitive conditions, foreclosure, monopsony power or any key economic issues comprehensively. Accordingly, whatever evidence Zuffa submits post June-2017 would not only be irrelevant, but incomplete and out of context.

---

[2] *See* https://www.sherdog.com/organizations/Professional-Fighters-League-12241 (listing PFL events since June 30, 2017).
[3] *See, e.g., PFL officially announces Bellator acquisition, plans revealed for future*, MMAJunkie (Nov. 20, 2023), available at https://mmajunkie.usatoday.com/2023/11/pfl-bellator-acquistion-ufc-sale-promotions-merger-future-plans.

## III. ARGUMENT

### A. Evidence Concerning Post-Class Period Facts, Circumstances, or Events Is Not Relevant to the Claims and Defenses Here

The post-Class Period evidence Zuffa seeks to present at trial would be irrelevant. As a general matter, courts routinely exclude post-class period discovery as irrelevant. *See*, *e.g.*, *Lloyd v. CVB Fin. Corp.*, No. CV1006256MMMPJWX, 2013 WL 12120506, at *32 (C.D. Cal. May 9, 2013), *aff'd in part, rev'd in part and remanded*, 811 F.3d 1200 (9th Cir. 2016) (excluding post-class period disclosure as irrelevant); *In re Atlas Mining Co. Sec. Litig.*, No. CV 07-428-N-EJLMHW, 2008 WL 821756, at *7 (D. Idaho Mar. 25, 2008) (same); *Wade v. WellPoint, Inc.*, 892 F. Supp. 2d 1102, 1134 (S.D. Ind. 2012) (same); *Doe v. Stephen*, No. 320CV00005SHLHCA, 2022 WL 4182197, at *4 (S.D. Iowa July 27, 2022) (same); *Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 278-281 (S.D.N.Y. 2015) (same).

Such result is even more appropriate here, where Plaintiffs have adduced evidence of Zuffa's possession and maintenance of durable monopsony power and its use of that power to foreclose competition and suppress fighter pay over the entire seven-year *Le* Class Period (from December 2010 to June 30, 2017).[4] No one is stopping Zuffa from trying to challenge this evidence at trial with contemporaneous evidence produced during the lengthy discovery period in *Le*. But as a matter of economics, nothing that happens after June-2017 could possibly undo the evidence reflecting possession and maintenance of durable monopsony power and its harms during the Class Period. *See*

---

[4] As this Court found, Plaintiffs have amassed common evidence Plaintiffs intend to present at trial capable of establishing each element of Plaintiffs' Section 2 claim, including the existence of durable monopsony power over at least the entire Class Period. *See* ECF No. 839 at 67-71 (finding reliable and persuasive Plaintiffs' experts' findings that Bout Class members suffered damages throughout the Class Period); *id*. at 43 (analyzing evidence of the "anticompetitive Scheme," involving over 2000 UFC fighter contracts entered into from May 2001 through November 2015 (and thus extending through the end of the Class Period)); *id*. at 30 (after analyzing evidence from throughout the Class Period, stating "These findings, which the Court credits, demonstrate Defendant's dominance in the input (and output) market. It further establishes how Zuffa's dominance in the output market enhanced its ability to suppress compensation in the input market"); *id*. at 24 (Without restriction as to time period, "The Court finds that Plaintiffs have provided sufficient evidence that Defendant maintained market power in the relevant input market."); *id*. at 33 ("the Court finds that Plaintiffs have provided sufficient evidence that Defendant 'possessed monopsony power in the relevant [input] markets.'" (citation omitted)); *id*. at 33 ("the Court finds that Defendant maintained its dominant position in the fighter input market through anticompetitive conduct").

1  Singer Decl. ¶¶4-9, ECF No. 914-2. Under Zuffa's own cases, ECF No. 884 at 10, a showing of durable monopsony power cannot be undone by a later demonstration that that monopsony power had ultimately dissipated. No case requires Plaintiffs to show that market power lasts forever.

Neither Zuffa nor Dr. Topel *has even claimed* that Zuffa's market power or share has declined post-Class Period. Zuffa has pointed merely to the alleged growth of a handful of minor MMA players (Bellator and PFL), ECF No. 979 at 49, studiously avoiding mention of its own stupendous growth and never once even claiming that its dominance is at long last under threat. Indeed, all available public evidence indicates that Zuffa's prodigious market power—and the adverse effects of that power on fighter mobility, competition, pay, output, and prices—not only persists through the present, but has grown since 2017. *See* Singer Decl. ¶¶10-28  ECF No. 914-2. Zuffa does not even come close to meeting its burden for demonstrating likely relevance of what it seeks to introduce at trial.

Plaintiffs further intend to introduce through Dr. Singer substantial evidence showing that Zuffa possessed and maintained more than a 71% share of the relevant input and output markets for more than seven years. *See* Singer Decl. ¶13, ECF No. 914-2 (citing market share evidence from prior reports). Plaintiffs thus have evidence to introduce at trial that is capable of showing that Zuffa used an anticompetitive Scheme to maintain durable monopsony power and suppress fighter pay. *Id*. ¶¶4, 13-15. No case requires more. *See*, *e.g.*, *Pac. Coast. Agric. Export Ass'n v. Sunkist Growers, Inc.,* 526 F.2d 1196, 1204 (9th Cir. 1975) (45-70% share over 4-year period sufficient to show market power); *Fed. Trade Comm'n v. Surescripts, LLC*, 665 F. Supp. 3d 14 (D.D.C. 2023) (a decade of market shares between 60% and 95% (depending on measurement) was sufficient, and holding "the entry of a competitor does not mean the dominant firm did not have a monopoly" nor does it "undermine" the defendant's "durable monopoly"); Areeda & Hovenkamp, Antitrust Law ¶801a, at 319 ("it is generally reasonable to presume that a firm has monopoly power when the firm's dominant market share has lasted, or will last, for at least five years").[5]

---

[5] In prior briefing (ECF No. 884), Zuffa relied on cases that are off point. *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421 (9th Cir. 1995), for example, is inapposite for several reasons. First, the *Rebel Oil* defendant sought to introduce evidence of entry of competitors after 1988, which unlike here was during the alleged period of predation in the case (1985-1989). *Id*. at 1429, 1439-40. Second, the *Rebel Oil* plaintiff alleged attempted monopolization, and the court was considering whether to impose an

Because the evidence concerning post-Class Period facts, circumstances, and events cannot rebut a showing of durable monopsony power during the Class Period, such evidence is not relevant and should not be admitted pursuant to Fed. R. Evid. 401.[6]

**B. Admitting Evidence Concerning Post-Class Period Facts, Circumstances, or Events Would Be Unduly Prejudicial**

**1. Post-Class Period facts, circumstances, or events would confuse the jury.**

Evidence concerning post-Class Period facts, circumstances, or events should be excluded as unduly prejudicial even if such evidence has some limited probative value.

In its trial brief, Zuffa states that it will seek to introduce evidence of current market conditions. ECF No. 979 at 49. But as discussed above and endorsed by the Court's decision on Zuffa's motion to reopen discovery, ECF No. 922, post-Class Period facts, circumstances, and events (including evidence

---

injunction (not damages), which (unlike for the damages claim here) necessarily involves knowledge of present market conditions. *Id.* at 1439. Third, unlike here, the *Rebel Oil* plaintiff did not have direct evidence of the injurious exercise of market power—which the Ninth Circuit held was sufficient standing alone. *See Rebel Oil*, 51 F.3d at 1433. In short, *Rebel Oil* provides no cover for a defendant monopsonist (or monopolist) to use later entry into the market to offset its liability for damages when the Plaintiffs have evidence of the direct exercise of monopsony power during the relevant period. *Cornwell Quality Tools Co. v. C.T.S. Co., Inc.*, 446 F.2d 825 (9th Cir. 1971), does not help Zuffa either, because there the Ninth Circuit only considered whether conduct after the complaint filing was relevant, concluding that it was not. *Id.* at 832. Zuffa's reliance on *Geneva Pharms. Tech. Corp. v. Barr Lab'ys. Inc.*, No. 98 CIV.861(DLC), 2005 WL 2132438 (S.D.N.Y. Sept. 6, 2005), fails for two reasons: (1) because the plaintiffs there sought discovery of evidence reflecting a time period for which they sought to recover damages (*id.* at *6); and (2) because the defendant presented evidence of a drastic reduction in market share. *Id.* at *5. Here, Zuffa has not even claimed that its market share eroded after 2017.

[6] To the extent any court deemed market events a few years after the conduct began potentially relevant to whether defendant had the capacity to commit the violation during the time of the alleged misconduct, it was because—*unlike here*—the party seeking to introduce such evidence showed a trend of rapidly declining market share. *See* ECF No. 884 at 10, citing the following cases: *Geneva*, 2005 WL 2132438, at *5 (because court of appeals had determined that unwillingness to substituted from generic to brand drug was a "trend" that it assumed would continue, evidence that that trend "was virtually the opposite" after the appeal was deemed potentially relevant); *Lektro-Vend Corp. v. Vendo Co.*, 660 F.2d 255, 271 (7th Cir. 1981) (regarding attempt to monopolize claim where alleged misconduct occurred from 1960 to 1965, evidence that market share dropped "from 33% in 1966 to 24% in 1973" was relevant to whether defendant's "capacity to monopolize at the time of the supposed attempts"); *Nifty Foods Corp. v. Great Atl. & Pac. Tea Co., Inc.*, 614 F.2d 832, 841 (2d Cir. 1980) (rapid decline in market share four years after alleged misconduct began from 54.5% to 33% deemed not sufficient to establish monopolization or attempted monopolization claim).

concerning "current market conditions") cannot rebut a showing of durable monopsony power for the seven-year duration of the Class Period. Thus, at best, such evidence could provide some limited probative value concerning some other point (that Zuffa has yet to identify), but such limited probative value would be outweighed by the prejudice such evidence would cause on the more critical issue in the case: Zuffa's maintenance of monopsony power during the Class Period.

Zuffa itself admits that it wants to introduce this post-Class Period evidence in an attempt to try to show jurors that Zuffa never had monopsony power during the Class Period. *See*, *e.g.*, ECF No. 979 at 49. Allowing the introduction of evidence that as a matter of law and economics cannot be probative of Zuffa's lack of monopsony power should not be admitted, particularly when Zuffa even acknowledges wanting jurors to draw such improper conclusions.

Moreover, here, Zuffa does not even claim—let alone provide reason to believe—that its market share has fallen since June 2017. And for good reason. As Zuffa surely understands from its own internal data that it has strategically hidden from the Court, the UFC's market power and share has only grown since 2017. As this Court observed at the August 23, 2023 status conference, Zuffa would need to argue that there are competitors whose growth cuts into Zuffa's market share or market dominance. *See* Hrg. Tr. at 7, ECF No. 846. But, again, Zuffa does not propose to introduce evidence that its market share or monopsony power has diminished post-2017. Instead, it says only that it seeks to introduce evidence concerning other promoters' supposed growth in a vacuum.

By contrast, Plaintiffs' expert Dr. Hal Singer extended his market share analysis (to the extent possible using public data)[7] from the end of the Class Period to the present. *See* Singer Decl. ¶¶14-15 & Fig. 1, ECF No. 914-2. Zuffa's rank-weighted share of the Headliner Submarket has only *increased* since June 2017. *Id*. As Dr. Singer observes: "This analysis reveals that Zuffa's market share in the Headliner Market has *grown from 90 percent in June 2017 to 93 percent in October 2023*."[8] *See id*. ¶14

---

[7] Dr. Singer was able to collect data on MMA fighter ranks for purposes of evaluating Zuffa's dominance in the relevant markets based on the Ranked and Tracked market definitions, as well as the Headliner Submarket. However, the revenue data required for weighting as part of an updated analysis of Zuffa's market share of these same markets was not publicly available.

[8] Per the Expert Report of Hal J. Singer, Ph.D. ("SR1"), ECF No. 518-3, SR1 ¶¶1, 95, 99, the "Headliner" submarket consists of all fighters ranked 1 to 15 in any major MMA weight class. *Id*.

& Fig. 1. This updated analysis shows that there have been even fewer highly-ranked MMA fighters competing at non-UFC promoters since June 2017, leaving no basis for Zuffa's speculation that rivals were able to infringe on Zuffa's market dominance in the post-Class Period. Thus, the purported evidence Zuffa proposes to introduce cannot show that Zuffa no longer had monopsony power after the Class Period. Allowing Zuffa to introduce such evidence is even more prejudicial and has even less probative value.

At bottom, there is no evidence in the *Le* record (expert or otherwise) showing that Zuffa's monopsony power changed after June 30, 2017—nor has Zuffa identified any such material. Instead, Zuffa offers to introduce speculation and anecdotes about alleged increased competition after the Class Period; such evidence would be refuted by the facts and could not rebut the durable monopsony power that Plaintiffs' evidence reflects.

  **2. It would be unfair to Plaintiffs and misleading to jurors to allow Zuffa to cherry-pick the post-June 30, 2017 evidence.**

Because discovery was never permitted into the post-Class Period in *Le*, Zuffa should not be permitted to cherry-pick the evidence that can be submitted at trial from this post-June 30, 2017 period. Allowing Zuffa to pick and choose which information it will disclose to Plaintiffs, while not allowing Plaintiffs the opportunity to fully explore via depositions and review of documents and data the probity (and potential impeachment value) of such evidence, would be unfair to Plaintiffs and would mislead the jury into believing that a biased presentation of evidence is the full picture.

The prejudice attendant to the lack of full discovery is all the more evident because of what Zuffa has not produced here. As noted above, Zuffa wants to inject post-Class Period facts, circumstances, and events into the trial to make a showing to jurors of "current market conditions," but Zuffa has withheld the most critical information to analyze "current market conditions": Zuffa's own financials. Zuffa told the Court that it would introduce evidence within its control concerning market dominance at summary judgment. Hrg. Tr., ECF No. 846, at 7. Zuffa did not. Nor has Zuffa produced such discovery in *Johnson*, or added exhibits to its exhibit list on the topic. The Court noted that "much of this information … is in the control of the parties." Hrg. Tr., ECF No. 846, at 9, and understood that,

"as it relates to particularly the issue of market dominance …, much of that [evidence] would come in through two different types of testimony, experts or you would have executives from Zuffa…." *Id.* at 9-10. Despite Zuffa's control over this information that it promised to present to the Court, and that Plaintiffs requested in *Johnson*, Zuffa has yet to produce it. Moreover, there is no discovery or evidence in the record reflecting multiple other factors that would be relevant to putting post-June 2017 evidence of market conditions in appropriate context, including, *inter alia*, any changes to Zuffa's contracts or other of the challenged conduct; data reflecting growth or decline of third-party MMA promoters; analysis of Zuffa's continued foreclosure of the market post-June 2017, etc. Zuffa thus seeks to present an incomplete, misleading, and unduly prejudicial picture of the "current market conditions" to the jury.

### IV.   CONCLUSION

Zuffa seeks to introduce an incomplete picture of the irrelevant "current market conditions," thus heightening such evidence's propensity to mislead jurors and cause undue prejudice. The Court should exclude the above-described evidence concerning post-Class Period facts, circumstances, and events because such material is irrelevant to the merits of Plaintiffs' claims and because any potentially probative value is far outweighed by the prejudice of such evidence.

Dated:  February 29, 2024                    Respectfully submitted,

*/s/ Joseph R. Saveri*
Joseph R. Saveri (*pro hac vice*)
Kevin E. Rayhill (*pro hac vice*)
Christopher K.L. Young (*pro hac vice*)
Itak Moradi (*pro hac vice*)
JOSEPH SAVERI LAW FIRM, LLP
601 California St., Suite 1000
San Francisco, CA 94108
Telephone: +1 (415) 500-6800
Facsimile: +1 (415) 395-9940
Email: jsaveri@saverilawfirm.com
Email: krayhill@saverilawfirm.com
Email: cyoung@saverilawfirm.com
Email: imoradi@saverilawfirm.com

*/s/ Eric L. Cramer*
Eric L. Cramer (admitted *pro hac vice*)
Michael Dell'Angelo (admitted *pro hac vice*)
Patrick F. Madden (admitted *pro hac vice*)
Najah Jacobs (admitted *pro hac vice*)
BERGER MONTAGUE PC
1818 Market St., Suite 3600
Philadelphia, PA 19103
Telephone: +1 (215) 875-3000
Email: ecramer@bm.net
Email: mdellangelo@bm.net
Email: pmadden@bm.net
Email: njacobs@bm.net

Joshua P. Davis (admitted *pro hac vice*)
BERGER MONTAGUE PC
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Telephone: +1 (415) 906-0684
Email: jdavis@bm.net

Richard A. Koffman (*pro hac vice*)
Benjamin Brown (*pro hac vice*)
Daniel H. Silverman (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., N.W., Suite 500 East, Tower
Washington, DC 20005
Telephone: +1 (202) 408-4600
Facsimile: +1 (202) 408-4699
Email: rkoffman@cohenmilstein.com

Email: bbrown@cohenmilstein.com
Email: dsilverman@cohenmilstein.com

*Co-Lead Counsel for the Class and Attorneys for Individual and Representative Plaintiffs*

Don Springmeyer (Bar No. 1021)
KEMP JONES, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
Telephone: + 1 (702) 385-6000
Facsimile: + 1 (702) 385-6001
Email: dspringmeyer@kempjones.com

*Liaison Counsel for the Class and Attorneys for Individual and Representative Plaintiffs*

Robert C. Maysey (*pro hac vice*)
Jerome K. Elwell (*pro hac vice*)
WARNER ANGLE HALLAM JACKSON
& FORMANEK PLC
2555 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Telephone: +1 (602) 264-7101
Facsimile: +1 (602) 234-0419
Email: rmaysey@warnerangle.com
Email: jelwell@warnerangle.com

Crane M. Pomerantz (Bar No. 14103)
CLARK HILL PLLC
3800 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169
Telephone: (702) 862-8300
Email: cpomerantz@clarkhill.com

*Counsel for the Class and Attorneys for Individual and Representative Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of February, 2024 a true and correct copy of PLAINTIFFS' MOTION IN LIMINE NO. 3 TO EXCLUDE EVIDENCE OR REFERENCE RELATING TO FACTS, CIRCUMSTANCES, OR EVENTS OCCURRING AFTER JUNE 30, 2017 was served via the District Court of Nevada's ECF system to all counsel of record who have enrolled in this ECF system.

*/s/ Joseph R. Saveri*
Joseph R. Saveri