ERIC L. CRAMER (*pro hac vice*)
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
ecramer@bm.net

JOSEPH R. SAVERI (*pro hac vice*)
JOSEPH SAVERI LAW FIRM, LLP
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
jsaveri@saverilawfirm.com

RICHARD A. KOFFMAN (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., N.W., Suite 500, East Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408 4699
rkoffman@cohenmilstein.com

*Counsel for the Class and Attorneys for All Individual and Representative Plaintiffs*

[Additional Counsel Listed on Signature Page]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>Defendant. | Case No. 2:15-cv-01045-RFB-BNW<br><br>**PLAINTIFFS' MOTIONS IN LIMINE NOS. 4 TO 7 TO EXCLUDE UNSUBSTANTIATED OR IRRELEVANT EXPERT TESTIMONY** |

**TABLE OF CONTENTS**

**Page(s)**

I. MOTION IN LIMINE NO. 4 TO EXCLUDE ZUFFA'S ECONOMISTS, INCLUDING ROBERT H. TOPEL, FROM OFFERING UNSUPPORTED OPINIONS THAT ZUFFA WOULD HAVE SPENT LESS MONEY ON PROMOTING FIGHTERS OR BOUTS ABSENT THE CHALLENGED CONDUCT UNDER FED. R. EVID. 702. ............................. 1

II. MOTION IN LIMINE NO. 5 TO EXCLUDE THE TESTIMONY OF RICHARD MARKS UNDER FED. R. EVID. 401 AND 403 ................................................................................. 6

III. MOTION IN LIMINE NO. 6 TO EXCLUDE TESTIMONY AND ARGUMENT THAT PLAINTIFFS' EXPERTS FAILED TO DISAGGREGATE DAMAGES ................................. 9

IV. MOTION IN LIMINE NO. 7 TO EXCLUDE TESTIMONY AND ARGUMENT THAT DR. HAL SINGER FAILED TO APPROPRIATELY AGGREGATE DAMAGES ................. 11

I. **MOTION IN LIMINE NO. 4 TO EXCLUDE ZUFFA'S ECONOMISTS, INCLUDING ROBERT H. TOPEL, FROM OFFERING UNSUPPORTED OPINIONS THAT ZUFFA WOULD HAVE SPENT LESS MONEY ON PROMOTING FIGHTERS OR BOUTS ABSENT THE CHALLENGED CONDUCT UNDER FED. R. EVID. 702.**

Plaintiffs Cung Le, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury ("Plaintiffs") file this Motion in Limine to exclude Defendant Zuffa, LLC's ("Defendant" or "Zuffa") economists, including Dr. Robert H. Topel, from offering unsupported opinions that Zuffa would have spent less money promoting fighters or bouts absent the Challenged Conduct.[1] Such opinions would be purely speculative and not based on any reliable methodology under Federal Rule of Evidence 702.

### BACKGROUND

Dr. Topel is an economist who claims a specialty in microeconomics. *See* **Exhibit F**, October 27, 2017 Expert Report of Robert H. Topel ¶ 2 ("Topel Report").[2] In October 2017, Zuffa submitted Dr. Topel's report to rebut the expert report of Dr. Hal Singer. Topel Report ¶ 6. Topel's report asserts without evidence that "all promotional investments for bouts are undertaken by Zuffa, which is the best party positioned to make such investments." *Id.* ¶ 88. He further opines that given "the potential for free riding on these investments by competing promoters, the contractual arrangements in PARs are designed to limit free riding and give Zuffa an incentive to promote upcoming bouts and up-and-coming athletes." *Id.* He subsequently speculates, "[w]ithout such contracts, Zuffa *might* have an incentive to disproportionately promote matches featuring established athletes." *Id.* (emphasis added); *see also* ¶ 113 ("if athletes can freely switch to competing promoters . . . then there is little incentive for the initial promoter to make the investments").

Zuffa intends the jury to infer from Dr. Topel's testimony that in the absence of the long-term contractual restrictions Plaintiffs are challenging, "promoters would not capture the full value of their

---

[1] Plaintiffs allege that Zuffa has: (1) eliminated potential rival MMA promoters through horizontal acquisitions; (2) deprived potential rivals of key inputs (the Fighters themselves) by entering into allegedly exclusionary contracts with the vast majority of top Fighters; and, (3) taken other steps to use its alleged dominance to impair potential rivals.3 Plaintiffs allege that these actions, taken together (the "Challenged Conduct" or the "Scheme").

[2] Exhibit citations are to the Declaration of Joseph Saveri attached hereto unless otherwise indicated.

promotional investments, and therefore would do less promotion." *Id.* ¶ 200; *see also* **Exhibit G**, Excerpts from December 6, 2017 Deposition of Robert H. Topel at 74-77 ("Topel Dep.").

The problem, however, is that Dr. Topel does not actually opine that without the long-term fighter contracts (which are part of the Challenged Conduct) Zuffa would have had an incentive to spend less on promoting certain fights—just a guess that they *might*. Further, Dr. Topel did *no* analysis attempting to quantify in any way the extent to which investment in fighters or MMA would be reduced in the absence of the Challenged Conduct. Finally, Dr. Topel does not respond to Plaintiffs' experts' point that if the fighters were paid more, they would have incentive to invest more in their own promotion and development absent the challenged conduct. *See* **Exh. F,** Part V.B of Dr. Topel's Report, titled "Exclusivity and Multi-Bout Contracts Assist in Protecting Promoters' Investments and Building a Business." As a result, Dr. Topel's opinion that Zuffa would have spent less money on promoting fighters or bouts absent the Challenged Conduct, or even that less money would be spent on fighter promotion absent long-term exclusive contracts, is pure speculation without any basis, and thus does not satisfy the requirements of Rule 702.

## ARGUMENT

Rule 702 provides that a witness "qualified as an expert by knowledge, skill experience, training, or education may testify in the form of an opinion" if:

    a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

    b) the testimony is based on sufficient facts or data;

    c) the testimony is the product of reliable principles and methods; and

    d) the expert has reliably applied the principles and methods to the facts of the case.

"It is well settled that bare qualifications alone cannot establish the admissibility of . . . expert testimony." *United States v. Hermanek*, 289 F.3d 1076, 1093 (9th Cir. 2002). Rather, we have interpreted Rule 702 to require that "[e]xpert testimony . . . be both relevant and reliable." *Est. of Barabin v .AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014). A proposed expert's testimony, then, must "have a reliable basis in the knowledge and experience of his discipline." *Kumho Tire Co. v.*

*Carmichael*, 526 U.S. 137 (1999) (internal quotation marks omitted). This requires district courts, acting in a "gatekeeping role," to assess "whether the reasoning or methodology underlying the testimony" is valid and "whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–93 (1993) ("*Daubert I*"). It is not "the correctness of the expert's conclusions" that matters, but "the soundness of his methodology." *Est. of Barabin*, 740 F.3d at 463; Fed. R. Evid. 702.

In the absence of any testing or verification, Dr. Topel's methodologies amount to mere speculation and guesswork, which cannot be admitted under Rule 702. *California ex rel. Brown v. Safeway, Inc.*, 615 F.3d 1171, 1181 (9th Cir. 2010) ("'[E]xpert's opinions that are without factual basis and are based on speculation or conjecture' are inadmissible at trial . . . ."). Guesswork and speculation even by otherwise qualified and experienced experts, is still inadmissible. *Bun v. City of Livermore*, No. 17-cv-06418-EMC, 2022 WL 2833971, at *19 (N.D. Cal. July 20, 2022) ("Even assuming [an expert] is qualified . . . on his experience and training, there is no basis to credit his specific assertion[s] . . . [where they] lack[] a factual basis . . . ."); *Cummins v. Lyle Indus.*, 93 F.3d 362, 368 (7th Cir. 1996) (guesswork, even educated hunches by qualified experts, is not enough; evidence must be "genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist").

Here, Dr. Topel provides no evidence whatsoever quantifying the purported procompetitive benefits of eliminating what he speculates is "free riding," nor does he even attempt to show that these speculative procompetitive benefits outweigh the harms of the Challenged Conduct. Further Dr. Topel's expert report contains no evidence or analysis demonstrating that investment in MMA generally or in fighters specifically would have been lower in a but-for world without the Challenged Conduct. *See* Part V.B of Dr. Topel's Report, titled "Exclusivity and Multi-Bout Contracts Assist in Protecting Promoters' Investments and Building a Business.

In fact, in his deposition, Dr. Topel admitted that he made no effort to calculate the extent to which "investment in athletes" would decline if the challenged contractual provisions were eliminated:

> Q. You don't in your report quantify the total amount of promotional investment in athletes that you believe would be lost if the challenged contractual provisions were eliminated, do you?
> A. You mean do I have a dollar amount on it?

> Q. Correct.
> A. We didn't put a dollar amount, no.

**Exh. G** at 150:1-7.

Similarly, Dr. Topel admitted that he made no calculations of the extent to which promotion of MMA generally or the fighters would decline in the absence of the Challenged Conduct:

> Q. Can you show me a table in your report where you quantify the amount of promotional dollars that – I'm sorry – the amount of promotional dollars that would be lost in either of those two but-for worlds? Is there a table in your report where I can find that?
> A. No. That's not part of my analysis or part of my opinions.

*Id*. at 153:18-25.

Dr. Topel further acknowledged in his deposition that he did not compute any purported amount of lost event revenue that would have resulted from the speculated reduced promotional expenditures, if any, absent the Challenged Conduct:

> Q. So it's fair to say that in your report you did not specify any particular but-for world, right?
> A. I couldn't. That's – that's not my job.

*Id.* at 163:12-16.

And he admitted that he did not: (a) specify any particular but-for world in his report, (b) compute either the claimed reduction in output, if any, that would be caused by any purported increase in the transactions cost in the but-for world, or (c) the claimed increase in output, if any, attributable to the purported reduction in transactions costs associated with the restrictive fighter contracts:

> Q. So it's fair to say that in your report you did not specify any particular but-for world, right?
> A. I couldn't. That's – that's not my job.
> […]
> Q. It's fair to say that you did not quantify the additional output that you believe is generated by the reduced transaction costs, correct?
> A. No.
> […]
> Q. Did you quantify the amount of expanded output that you referred to in the last sentence of paragraph 32? Yes or no. Did you quantify it? …
> A. … As to your specific question, since there's no benchmark offered I cannot have offered a number relevant to some benchmark that was never stated.

> Q. So you didn't, correct? You did not quantify it, correct? …
> A. That's what I just said.

*Id.* at 163:12-16; 165:23-166:2; 167:13-168:7.

In short, his entire opinion relating to the supposed benefit of the challenged contracts of purportedly increasing investments in promoting fighters is pure unadulterated speculation, with no analysis whatsoever. In the absence of any analysis, Dr. Topel's opinion on whether Zuffa spent less absent the Challenged Conduct is mere speculation and guesswork, which cannot be admitted under Rule 702.

## CONCLUSION

Dr. Topel's testimony regarding the amount of money Zuffa would have spent on promoting fighters or bouts absent the Challenged Conduct should be excluded because it cannot satisfy the rigorous reliability standards of Rule 702. This testimony is purely speculative—Topel gives *no* non-speculative opinion that the Challenged Conduct enhanced investment, nor any analysis quantifying the extent to which investment in fighters or MMA would be reduced in the absence of the Challenged Conduct.

## II. MOTION IN LIMINE NO. 5 TO EXCLUDE THE TESTIMONY OF RICHARD MARKS UNDER FED. R. EVID. 401 AND 403

Plaintiffs seek to exclude the testimony of Zuffa's proposed expert Richard Marks as irrelevant and unduly prejudicial under Federal Rules of Evidence 401 and 403.

Richard Marks is a transactional entertainment lawyer who claims expertise in the "entertainment industry." **Exhibit H**, Expert Report of Richard Marks, ¶ 6. In October 2017, Zuffa submitted Marks's report to rebut the expert report of Prof. Andrew Zimbalist. *See* **Exhibit I**, Expert Report of Andrew Zimbalist. Marks's report concludes that although the "market for actor services is highly competitive . . . actors do not receive anywhere close to 50% of a project's gross revenue." Exh. H, ¶¶ 28, 29. Instead, based on Marks's "experience," actors tend to receive "10-30% of the budget" for "various projects." *Id.* ¶ 18. The intended inference of Marks's testimony appears to be that, compared to actor compensation in the entertainment industry, Prof. Zimbalist's wage-share damages calculation overestimates what MMA fighter pay would have been in a competitive market. *See* Zuffa's Trial Br. at 44 (ECF No. 979).

The problem, however, is that *no* witness, and neither party, alleges that the "entertainment industry" is a relevant yardstick industry to which MMA should be compared to estimate damages. As a result, Marks's testimony should be excluded, as it has no "tendency to make a [material] fact more or less probable than it would be without the evidence." Fed. R. Evid. 401(a).

In order to calculate damages to the Bout Class, Prof. Zimbalist uses five yardstick industries—MLB, NFL, NBA, NHL, and boxing—as competitive benchmarks. *See* Exh. I, ¶ 109. Zuffa contests the propriety of these benchmarks through the expert report of Roger D. Blair. **Exhibit J,** Expert Report of Roger D. Blair, ¶ 55. But neither Prof. Zimbalist nor Dr. Blair, nor any other witness, alleges that the entertainment industry is a relevant yardstick to assess competitive compensation levels in MMA.

Marks's report does not purport to fill this gap. Marks offers no analysis of the comparative structures of MMA and the entertainment industry, and he opines neither that professional acting is an appropriate yardstick industry nor that it rebuts Prof. Zimbalist's proposed yardstick industries. Indeed,

Marks offers no explanation whatsoever for the relevance of his testimony to any disputed issue in this case.

Instead, Marks's entire report appears to respond to a misunderstanding of one footnote within Prof. Zimbalist's 90-page expert report. In that footnote, Prof. Zimbalist observes that Hollywood's historic "studio system," like the UFC, once used long-term exclusive contracts to lock down actor services. Exh I, ¶ 25 n.54. But Prof. Zimbalist does not posit that professional acting today should be used as a yardstick, nor does the footnote (or any other part of Prof. Zimbalist's opinion) discuss the comparative wage shares of MMA fighters and professional actors. As Prof. Zimbalist's rebuttal report clarifies, Marks's entire report responds "to a misinterpretation of [a] single sentence in one footnote," as Prof. Zimbalist "never suggested that talent revenue shares in movies should be a relevant yardstick to assess Zuffa's fighter compensation share in the but-for world, and Mr. Marks offers no reason to believe it should be." Exh. H, Expert Rebuttal Report of Andrew Zimbalist, ¶ 81.[3]

In lieu of any testimony—from any witness—suggesting that professional acting is an appropriate yardstick industry, Marks's testimony bears no relevance to this case and should be excluded. *See*, *e.g.*, *Teledyne Risi, Inc. v. Martin-Baker Aircraft Co.*, No. CV1507936SJOGJSX, 2018 WL 11352632, at *4 (C.D. Cal. Apr. 24, 2018) (excluding rebuttal expert testimony that "does not bear on [any] argument" presented by plaintiff); *Hambrook v. Smith*, No. 14-00132 ACK-KJM, 2016 WL 4084110, at *4 (D. Haw. Aug. 1, 2016) (same); *Downs v. River City Grp., LLC*, No. 3:11-CV-00885-LRH, 2014 WL 814303, at *3 (D. Nev. Feb. 28, 2014) (same).

Moreover, to the extent Marks's testimony retains any probative value, its value is "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [and] misleading the jury." Fed. R. Evid. 403. Again, no party argues that "revenue shares in movies should be a relevant yardstick to assess Zuffa's fighter compensation share." Exh. H, ¶ 81. Accordingly, allowing Marks to testify to his "experience" that actors tend to receive "10-30% of the budget" for "various projects" is highly likely to prejudice, confuse, and mislead the jury. *Id.* ¶ 18.

---

[3] In addition, Plaintiffs have represented to defense counsel that Prof. Zimbalist will not testify on this footnote nor offer any opinions on the structure of the entertainment industry, rendering Marks's testimony even more irrelevant.

1  For these reasons, Plaintiffs request that the Court exclude the testimony of Richard Marks
2  under Federal Rules of Evidence 401 and 403.

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III. MOTION IN LIMINE NO. 6 TO EXCLUDE TESTIMONY AND ARGUMENT THAT PLAINTIFFS' EXPERTS FAILED TO DISAGGREGATE DAMAGES

Plaintiffs seek to exclude testimony and argument that Plaintiffs' experts should have calculated disaggregated damages for each piece of Zuffa's Scheme separately. At trial, Plaintiffs intend to prove that Zuffa engaged in an unlawful Scheme to acquire and maintain monopsony power in the market for professional MMA fighter services. *See* Plts.' Trial Br. at 1 (ECF No. 978). Plaintiffs will demonstrate that "the three components of Zuffa's Scheme—acquisitions, exclusive contracts, and coercion—operated in concert to lessen competition and injure Class Members." *Id.* at 5. And Plaintiffs plan to prove the damages to Class Members resulting from this three-part, interlocking Scheme through the expert testimony of Dr. Hal Singer and Prof. Andrew Zimbalist. *Id.* at 29-30. Each expert conducts a comprehensive analysis of the wage-suppressing effects of Zuffa's three-part Scheme and uses this analysis to compute estimated classwide damages resulting from Zuffa's illegal conduct.

Throughout this litigation, Zuffa has argued that each piece of its Scheme should be disaggregated and evaluated in isolation. And throughout this litigation, the Court has rejected this argument. *See, e.g.*, *Le v. Zuffa, LLC*, No. 2:15-cv-01045-RFB-BNW 2023 WL 5085064, at *26 (D. Nev. Aug. 9, 2023) ("To be sure, the central inquiry for the Court is the overall effect of the various contract provisions and Defendant's concomitant coercive conduct, rather than the consideration of these different factors in isolation. Indeed, this is the approach the Ninth Circuit requires of courts in this circuit." (citing *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1152-53 (9th Cir. 2019)); *Le v. Zuffa, LLC*, 216 F. Supp. 3d 1154, 1168 (D. Nev. 2016) (quoting *Costco Wholesale Corp. v. Maleng*, 522 F.3d 874, 886 (9th Cir. 2008)). In other words, Zuffa's Scheme—and the damages it caused—must be evaluated as a whole, rather than piece-by-piece.

Nonetheless, in his expert report, Dr. Roger Blair attacks Prof. Zimbalist's methodology based on his alleged "failure to disaggregate damages." Exh. J**,** ¶ 75. According to Dr. Blair, Prof. Zimbalist fails "to attribute specific damage amounts to the various practices that are alleged to be anticompetitive," and thus leaves "the court or the jury with no evidentiary foundation for making the appropriate adjustment" if any one piece of the Scheme is found lawful. *Id.* ¶¶ 75, 77. But as noted

above, Ninth Circuit law—and the law of the case—*requires* that the Scheme, and any resulting damages, be evaluated as a whole. *See In re Nat'l Football League's Sunday Ticket*, 933 F.3d at 1152-53; *Le v. Zuffa, LLC*, No. 2:15-cv-01045, 2023 WL 5085064, at *26. Accordingly, Dr. Blair's disaggregation argument contends that Prof. Zimbalist's methodology is flawed for doing precisely what the law mandates.

Because any testimony or argument that Prof. Zimbalist—or any other witness—should have apportioned damages between each element of the Scheme is contrary to law, it poses a significant "danger of . . . confusing the issues" and "misleading the jury." Fed. R. Evid. 403; *see, e.g.*, *Escobar v. Nev. Helicopter Leasing LLC*, No. CV 13-00598 HG-WRP, 2020 WL 1076107, at *1 (D. Haw. Mar. 6, 2020) ("Neither Party may argue a legal theory to the jury that would usurp the Court's exclusive role of instructing the jury on the law."). Plaintiffs therefore request that the Court exclude any testimony or argument that Plaintiffs' experts failed to appropriately disaggregate damages.

## IV. MOTION IN LIMINE NO. 7 TO EXCLUDE TESTIMONY AND ARGUMENT THAT DR. HAL SINGER FAILED TO APPROPRIATELY AGGREGATE DAMAGES

Plaintiffs seeek to exclude testimony and argument that Dr. Hal Singer failed to appropriately aggregate the damages inflicted by Zuffa's Scheme as a whole.

As discussed in Plaintiffs' Motion to Exclude Testimony and Argument that Plaintiffs' Experts Failed to Disaggregate Damages, Plaintiffs intend to prove at trial that "the three components of Zuffa's Scheme—acquisitions, exclusive contracts, and coercion—operated in concert to lessen competition and injure Class Members." Plts.' Trial Br. at 5, ECF No. 978. To calculate classwide damages resulting from this Scheme, Dr. Singer measures the impact of Zuffa's increasing foreclosure share—the proportion of professional MMA fighters subject to its exclusive contracts—on fighters' wage share. *See* Exh. L, Expert Report of Hal J. Singer, Ph.D., ¶¶ 180-87 & Tbl.6; *cf. In re High-Tech Emp. Antitrust Litig.*, 289 F.R.D. 555, 582 (N.D. Cal. 2013) (approving damages model that measured "the estimated cost to Class members of Defendants' challenged conduct in terms of a percentage of wage suppression").

Nonetheless, Zuffa again uses its misapprehension of governing law to argue that Dr. Singer fails to appropriately aggregate damages. In his expert rebuttal report, Dr. Robert Topel contends that Dr. Singer's analysis "only considers the impact of the [challenged] contractual restrictions" on fighter pay, while excluding the separate "anticompetitive harm from other elements of Plaintiffs' Challenged Conduct," including acquisitions and coercive tactics. Exh F, Topel Report, ¶ 201.

Though this contention is in some sense the inverse of Zuffa's argument regarding Prof. Zimbalist's methodology—here, an alleged failure to aggregate damages, rather than to disaggregate damages—it rests on the same logical fallacy: In both instances, Zuffa assumes that the damages resulting from each part of the Scheme *can* and *should* be evaluated in isolation. *Id.* (arguing that Dr. Singer must "establish that there was anticompetitive harm" from each element of the Scheme independently).

But as this Court is aware, the opposite is true: "[T]he central inquiry for the Court is the *overall effect* of the various contract provisions and Defendant's concomitant coercive conduct, rather than the

1  consideration of these different factors in isolation." *Le*, 2023 WL 5085064, at *26 (emphasis added).
2  And this is precisely what Dr. Singer's model does: It uses Zuffa's increasing foreclosure share over
3  time as the acquisitions, contracts, and coercion function to move more fighters into Zuffa's exclusive
4  contracts to measure the proportion of fighters who have been locked up by Zuffa's Scheme *as a whole*,
5  and then measures the impact of that foreclosure on fighter pay.

6    Zuffa's counterargument comes from a fundamental misunderstanding of both this governing
7  standard and Dr. Singer's damages model. Dr. Topel alleges that, by using foreclosure share to calculate
8  damages, Dr. Singer "only estimates the harm due to the alleged foreclosure provisions"—that is, due
9  to the exclusive contracts. Exh. F, Topel Report, ¶ 201. Not so. Dr. Singer's analysis shows that Zuffa's
10 exclusive contracts were *necessary* components of the Scheme—in other words, that without these
11 contracts, Zuffa's would not foreclose the market, and fighter wages would rise to competitive levels,
12 *see* Exh. L, Tbls. 9-11.

13   Dr. Singer has also made clear that the remaining components of Zuffa's Scheme—its
14 acquisitions and its coercive tactics—served to ensnare fighters, increasing the number subject to
15 Zuffa's exclusive contracts, maximizing foreclosure share, and ensuring the success of the Scheme *as a*
16 *whole*. *See*, *e.g.*, Class Cert. Hrg. Tr. 63:22-64:4 ("As Zuffa is removing outside employment
17 opportunities for its fighters, either by taking away these rival promotions via acquisition or via locking
18 up the fighters to long-term exclusive contracts, it is increasing their ability to exploit the workers . . . .
19 That's the anticompetitive story."). Only by again assuming that these components can and should be
20 disaggregated—and damages somehow computed for each component in isolation—does Zuffa fail to
21 see this interplay.

22   But the components of Zuffa's Scheme, of course, *cannot* be disaggregated and viewed in
23 isolation—as a matter of either basic economic logic or binding law. *Le v. Zuffa, LLC*, 2023 WL
24 5085064, at *26. And Dr. Singer's expert reports and testimony do not support an inference to the
25 contrary. Allowing Zuffa to introduce testimony and argument that these components could and should
26 have been evaluated independently—and that Dr. Singer's model failed to do so—would thus be
27
28

contrary to law and would risk "confusing the issues" and "misleading the jury." Fed. R. Evid. 403.[4] Plaintiffs therefore request that the Court exclude any testimony or argument that Dr. Singer failed to appropriately aggregate damages.

---

[4] Moreover, even if Dr. Singer's model *did* fail to account for isolated anticompetitive harms inflicted by Zuffa's acquisitions and coercion, this omission would make his damages estimates lower, and thus conservative. Exh. L, ¶ 188. Accordingly, any testimony or argument from Zuffa on this point would be irrelevant, as it would not assist any element of Zuffa's case, *see* Fed. R. Evid. 401, and would serve only to "confuse the issues," Fed. R. Evid. 403.

| | | |
|---|---|---|
| 1 | Dated: February 29, 2024 | Respectfully submitted, |
| 2 | | */s/ Joseph R. Saveri* |
| 3 | | Joseph R. Saveri (*pro hac vice*) |
| | | Kevin E. Rayhill (*pro hac vice*) |
| 4 | | Christopher K.L. Young (*pro hac vice*) |
| 5 | | Itak Moradi (*pro hac vice*) |
| | | JOSEPH SAVERI LAW FIRM, LLP |
| 6 | | 601 California St., Suite 1000 |
| | | San Francisco, CA 94108 |
| 7 | | Telephone: +1 (415) 500-6800 |
| | | Facsimile: +1 (415) 395-9940 |
| 8 | | Email: jsaveri@saverilawfirm.com |
| | | Email: krayhill@saverilawfirm.com |
| 9 | | Email: cyoung@saverilawfirm.com |
| | | Email: imoradi@saverilawfirm.com |
| 10 | | |
| 11 | | */s/ Eric L. Cramer* |
| | | Eric L. Cramer (admitted *pro hac vice*) |
| 12 | | Michael Dell'Angelo (admitted *pro hac vice*) |
| | | Ellen Noteware (admitted *pro hac vice*) |
| 13 | | Patrick F. Madden (admitted *pro hac vice*) |
| 14 | | Najah Jacobs (admitted *pro hac vice*) |
| | | BERGER MONTAGUE PC |
| 15 | | 1818 Market St., Suite 3600 |
| | | Philadelphia, PA 19103 |
| 16 | | Telephone: +1 (215) 875-3000 |
| | | Email: ecramer@bm.net |
| 17 | | Email: mdellangelo@bm.net |
| | | Email: enoteware@bm.net |
| 18 | | Email: pmadden@bm.net |
| 19 | | Email: njacobs@bm.net |
| 20 | | Joshua P. Davis (admitted *pro hac vice*) |
| | | BERGER MONTAGUE PC |
| 21 | | 505 Montgomery Street, Suite 625 |
| 22 | | San Francisco, CA 94111 |
| | | Telephone: +1 (415) 906-0684 |
| 23 | | Email: jdavis@bm.net |
| 24 | | Richard A. Koffman (*pro hac vice*) |
| | | Benjamin Brown (*pro hac vice*) |
| 25 | | Daniel H. Silverman (*pro hac vice*) |
| | | Daniel L. Gifford (*pro hac vice*) |
| 26 | | COHEN MILSTEIN SELLERS & TOLL, PLLC |
| 27 | | 1100 New York Ave., N.W., Suite 500 East, Tower |
| | | Washington, DC 20005 |
| 28 | | Telephone: +1 (202) 408-4600 |

Facsimile: +1 (202) 408-4699
Email: rkoffman@cohenmilstein.com
Email: bbrown@cohenmilstein.com
Email: dsilverman@cohenmilstein.com

*Co-Lead Counsel for the Class and Attorneys for Individual and Representative Plaintiffs*

Don Springmeyer (Bar No. 1021)
KEMP JONES, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
Telephone: + 1 (702) 385-6000
Facsimile: + 1 (702) 385-6001
Email: dspringmeyer@kempjones.com

*Liaison Counsel for the Class and Attorneys for Individual and Representative Plaintiffs*

Robert C. Maysey (*pro hac vice*)
Jerome K. Elwell (*pro hac vice*)
WARNER ANGLE HALLAM JACKSON
& FORMANEK PLC
2555 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Telephone: +1 (602) 264-7101
Facsimile: +1 (602) 234-0419
Email: rmaysey@warnerangle.com
Email: jelwell@warnerangle.com

Crane M. Pomerantz (Bar No. 14103)
CLARK HILL PLLC
3800 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169
Telephone: (702) 862-8300
Email: cpomerantz@clarkhill.com

*Counsel for the Class and Attorneys for Individual and Representative Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of February, 2024 a true and correct copy of PLAINTIFFS' MOTIONS IN LIMINE NOS. 4 TO 7 TO EXCLUDE UNSUBSTANTIATED OR IRRELEVANT EXPERT TESTIMONY was served via the District Court of Nevada's ECF system to all counsel of record who have enrolled in this ECF system.

                                                  */s/ Joseph R. Saveri*
                                                    Joseph R. Saveri