1   WILLIAM A. ISAACSON (*Pro hac vice*)
    wisaacson@paulweiss.com
2   KAREN L. DUNN (*Pro hac vice*)
    kdunn@paulweiss.com
3   JESSICA PHILLIPS (*Pro hac vice*)
    jphillips@paulweiss.com
4   PAUL, WEISS, RIFKIND, WHARTON &
    GARRISON LLP
5   2001 K Street, NW
    Washington, DC 20006
6
7   DONALD J. CAMPBELL (No. 1216)
    djc@campbellandwilliams.com
8   J. COLBY WILLIAMS (No. 5549)
    jcw@campbellandwilliams.com
9   CAMPBELL & WILLIAMS
    7100 South 7th Street
10  Las Vegas, NV 89101

CHRISTOPHER S. YATES (*Pro hac vice*)
chris.yates@lw.com
AARON T. CHIU (*Pro hac vice*)
aaron.chiu@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111

SEAN M. BERKOWITZ (*Pro hac vice*)
sean.berkowitz@lw.com
LATHAM & WATKINS LLP
330 North Wabash Ave, Suite 2800
Chicago, IL 60611

LAURA R. WASHINGTON (*Pro hac vice*)
laura.washington@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd, Suite 1100
Los Angeles, CA 90067

*Attorneys for Defendant Zuffa, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>Defendant. | Case No.: 2:15-cv-01045-RFB-BNW<br><br>**DEFENDANT ZUFFA, LLC'S MOTIONS IN LIMINE RELATING TO THE CLASS DEFINITION AND ANTITRUST LAW** |

1   **I.      MOTION *IN LIMINE* NO. 5: MOTION TO PRECLUDE EVIDENCE OR**
2   **TESTIMONY RELATED TO ANY DISPUTES REGARDING ATHLETE LIKENESS RIGHTS[1]**

3   Plaintiffs should be prohibited from introducing evidence or testimony seeking to support

4   the claims of Plaintiffs' uncertified Identity Class.  Specifically, Zuffa seeks to preclude Plaintiffs

5   from offering evidence and testimony related to the contractual and financial relationship between

6   UFC and Plaintiffs regarding licensed merchandise and promotional materials featuring Plaintiffs'

7   identity, including the manner in which UFC allegedly used Plaintiffs' identity.  This Court denied

8   certification of Plaintiffs' sought-after Identity Class, finding that "[t]he Court simply d[id] not

9   have enough evidence to understand the nature and degree of the putative class's injury."  Class

10  Certification Or. at 78, Dkt. 839; *see also id.* at 76 ("Plaintiffs' theory of liability as to this Class

11  relies on a few assumptions that the Court finds to be too speculative to serve as a basis for

12  certification at this point.").  The Court rejected each of Plaintiffs' arguments, stating:

13      In conclusion, because of the multiplicity of potential revenue streams
        encompassed in the Identity Class, the lack of evidence as to what funding streams
14      applied to which fighters, the lack of evidence creating a measurable connection
        between the alleged antitrust conduct of Zuffa and the suppressed identity
15      compensation, as well as the lack of evidence entitling fighters to any of these
        revenue streams, the Court finds that common questions of fact will not
16      predominate as to the Identity Class.  Plaintiffs have additionally failed to identify
        a convincing methodology for quantifying this class harm.
17

18  *Id.* at 78.  Introducing evidence and testimony related to the "Identity Class" would only cause

19  jury confusion and undue prejudice to Zuffa, as the jury may improperly view this evidence as

20  supporting Plaintiffs' other claims still at issue.  *See* Fed. R. Evid. 403.

21  Courts in this Circuit routinely exclude evidence supporting uncertified and decertified

22  classes.  *See, e.g.*, *Andrews v. Plains All Am. Pipeline, L.P.*, 2021 WL 5283945, at *3–4 (C.D. Cal.

23  Nov. 5, 2021) (granting motion *in limine* in part where defendants "ask[ed] the Court to entirely

24  preclude [p]laintiffs from arguing or submitting any evidence regarding the [uncertified class]

25

26  _____

    [1] Zuffa has organized its motions *in limine* by subject matter.  The instant Motion relates to issues
27  related to the class definition and antitrust law.  Zuffa and Plaintiffs have been in ongoing
    discussions about various other evidentiary issues and potential stipulations.  To the extent the
28  parties are unable to resolve these issues, Zuffa reserves the right to supplement its motions *in
    limine* and address additional issues with the Court.

1    because those now-defunct claims are irrelevant and unduly prejudicial to [d]efendants"); *Krehl v.*

2    *Baskin-Robbins Ice Cream Co.*, 1979 WL 1662, at *8 (C.D. Cal. Aug. 7, 1979) ("Plaintiffs should

3    not be allowed to proceed on a tie-in claim not certified for class treatment, particularly under the

4    scope of the certification order and with regard to the equities surrounding the defense

5    developed."), *aff'd*, 664 F.2d 1348 (9th Cir. 1982).  The Court should do so here to avoid prejudice

6    and jury confusion in an already complex antitrust monopsony case.

7           In support of Plaintiffs' unsuccessful motion to certify the Identity Class, Plaintiffs alluded

8    to certain evidence that purportedly shows that the UFC expropriated or exploited its fighters'

9    identity.[2]  *See* Pls.' Mot. for Class Certification, Dkt. 518.  This included, among other things,

10   evidence and testimony related to: (1) the contractual and financial relationship between UFC and

11   Plaintiffs regarding licensed merchandise and promotional materials featuring Plaintiffs' identity,

12   and (2) UFC's specific use of Plaintiffs' identity in various mediums pursuant to those contractual

13   and financial relationships, *e.g.*, UFC's online libraries, Topps trading cards, Getty images, Reebok

14   apparel, THQ, Inc. and *EA Sports* video games, UFC's "Fight Pass" streaming platform.

15   Specifically:

16   - Plaintiffs allege that they would have "received more compensation specifically related to
17     their identities," including through "sponsorship, video games, merchandise royalties, or
        pursuant to an athlete outfitting policy."  *See* Dkt. 518 at 29 (citing Expert Report of Dr.
18     H. Singer, Aug. 31, 2017; Rebuttal Expert Report of Dr. H. Singer, Jan. 12, 2018).

19   - Nathan Quarry alleges that "UFC provided [him] below-competitive compensation . . .
20     while using his name, image, or likeness in multiple UFC licensed products, services, and
       commercial promotions," including in UFC's "Fight Pass" and in UFC-licensed
21     merchandise such as Topps Trading Cards, Reebok apparel, Getty images, and video
       games.  Pls.' Opp'n to Def.'s Mot. for Partial Summ. J. at 6–9, 11, Dkt. 365 (citing
22     purported evidence of UFC's use); *see also* Dkt. 208 ¶ 34.

23   - Plaintiff Cung Le alleges that Zuffa suppressed his compensation for appearing in UFC-
24     video game *EA Sports UFC*, Round 5 action figure sets, Topps Trading Cards, and UFC
       posters.  Dkt. 208 ¶ 33.

25   - Plaintiff Jonathan Fitch alleges that Zuffa suppressed his compensation for appearing in
26     "the first three versions of the UFC video game franchise, including Undisputed 2009, UFC

27

28   ───────────────────
     [2]  Defined by Plaintiffs as "the name, sobriquet, voice, persona, signature, likeness and/or
     biographical information of a UFC Fighter."  Am. Compl. ¶ 27(f), Dkt. 208.

1
2
Undisputed 2010, and UFC Undisputed 3," "Round 5 action figure sets including limited edition sets, Topps Trading Card sets, and JAKKS Pacific action figure sets." *Id.* ¶ 35.

3
4
- Plaintiff Brandon Vera alleges that Zuffa suppressed his compensation for appearing in UFC Undisputed 2009, UFC Undisputed 2010, and UFC Undisputed 3, Topps Trading Card sets, and UFC Licensed Merchandise and UFC Promotional Materials. *Id.* ¶ 36.[3]

5
6
- Plaintiff Luis Javier Vazquez alleges that Zuffa suppressed his compensation for appearing in Topps Trading Card sets, UFC Undisputed by THQ, and UFC Licensed Merchandise and UFC Promotional Materials. Dkt. 208 ¶ 37.

7
8
9
- Plaintiff Kyle Kingsbury alleges that Zuffa suppressed his compensation for appearing in Topps Trading Card sets and UFC Licensed Merchandise and UFC Promotional Materials. *Id.* ¶ 38.

10
11
12
13
14
15
16
17
18
The only purpose for attempting to introduce this evidence is to mislead the jury into incorrectly believing that because Zuffa allegedly unfairly compensated the Identity Class, Zuffa also compensated Plaintiffs' remaining Bout Class unfairly. Because members of the Bout Class are also members of the now-defunct Identity Class, the jury will be unable to distinguish whether a Bout Class member was unfairly compensated for (i) the bouts they fought in or (ii) for UFC's use of their identity. Admission of this evidence will cause incurable juror confusion and severely prejudice Zuffa. *Andrews*, 2021 WL 5283945, at *3 ("[A]llowing argument and evidence concerning the decertified [ ] claims during the liability/ compensatory damages phase of trial will lead to jury confusion and wasted time.")

19
20
21
22
23
24
25
26
Moreover, evidence related to the uncertified Identity Class claims is not relevant to the remaining claim in this case. Fed. R. Evid. 401 (evidence is relevant only if it has a "tendency to make a fact more or less probable than it would be without the evidence"). Although Plaintiffs sought to certify both classes under a monopsony (and a now abandoned monopoly) theory, whether the Bout Class is entitled to relief largely depends on whether Zuffa's conduct unreasonably impeded Bout Members' ability to *compete* in non-UFC MMA bouts. As the Court recognized, Class Plaintiffs' former identity rights claims have nothing to do with Plaintiffs' remaining Bout claims; these two claims therefore may not be comingled. Dkt. 839 at 77 (writing

27
28
---
[3] Most of the claimed wrongful conduct with respect to Identity Class issues predates the statute of limitations—which provides another reason to exclude this evidence. *See* Def.'s Mot. *in Lim*. No. 3.

1    that Plaintiffs may not rely on the Bout Class "to establish predominance for the Identity Class").

2    Should Plaintiffs try to extrapolate any relevance from these distinct issues, any probative value

3    would nevertheless be substantially outweighed by a danger of unfair prejudice.  Fed. R. Evid.

4    403; *Andrews*, 2021 WL 5283945, at *3–4.

5    **II.     MOTION *IN LIMINE* NO. 6: MOTION TO EXCLUDE EVIDENCE OR
     TESTIMONY RELATED TO ZUFFA DECLINING TO SHARE UFC VIDEO
6           CONTENT WITH COMPETITORS**

7          For over one hundred years, Supreme Court precedent has made clear that "the Sherman

8    Act 'does not restrict the long recognized right of [a] trader or manufacturer engaged in an entirely

9    private business, freely to exercise his own independent discretion as to parties with whom he will

10   deal.'"  *Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004)

11   (alteration in original) (quoting *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919)).

12   Naturally, many businesses choose not to deal with their competitors in the marketplace, and courts

13   have again and again affirmed their right to do so under the antitrust laws.  *E.g.*, *id.* at 410; *New*

14   *York v. Meta Platforms, Inc.*, 66 F.4th 288, 305–06 (D.C. Cir. 2023); *Pac. Bell Tel. Co. v. linkLine*

15   *Commc'ns, Inc.*, 555 U.S. 438, 448 (2009).

16         Despite this unequivocal binding precedent, Plaintiffs appear to believe they are an

17   exception.  In opposing Zuffa's motion for summary judgment, Plaintiffs argued that "[t]he

18   evidence shows that Zuffa . . . den[ied] rivals access to promotion videoclips of fighters who left

19   Zuffa . . . as part of its Scheme.  It is up to the finder of fact to decide whether the conduct was

20   anticompetitive or procompetitive."  Pls.' Opp'n to Def.'s Mot. for Summ. J. at 37 n.91, Dkt. 926

21   (citing Expert Report of Dr. H. Singer ¶¶ 52–61, 74, Aug. 31, 2017).  In reality, however, this is

22   not a question for the jury, as the Supreme Court has already answered it:  the antitrust laws do not

23   impose a duty to aid competitors by sharing products and trademarks.  This Court should preclude

24   Plaintiffs from suggesting otherwise.

25         **A.     There Is No Duty Under The Antitrust Laws To Aid Competitors**

26         With few and narrow exceptions, the Supreme Court has consistently—and explicitly—

27   held that the antitrust laws do not impose a duty to cooperate with competitors.  *Trinko*, 540 U.S.

28   at 408–11 (citing *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 601 (1985));

1  *FTC v. Qualcomm Inc.*, 969 F.3d 974, 993–95 (9th Cir. 2020).  This is because "[c]ompelling such

2  firms to share the source of their advantage is in some tension with the underlying purpose of

3  antitrust [law]":  it disincentivizes rivals from competing fiercely against each other, forces courts

4  to act as central planners dictating the proper terms of dealing, and facilitates collusion—"the

5  supreme evil of antitrust law."  *Trinko*, 540 U.S. at 407–08; *Qualcomm*, 969 F.3d at 993 ("There

6  is 'no duty to deal under the terms and conditions preferred by [a competitor's] rivals' . . . because

7  the antitrust laws, including the Sherman Act, 'were enacted for the protection of *competition*, not

8  *competitors*.'" (first alteration in original) (citations omitted)).  Accordingly, even when it comes

9  to facilities essential for competition, antitrust law does not require competitors to help

10 competitors.  *Trinko*, 540 U.S. at 408–11; *see also Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836

11 F.3d 1171, 1184 (9th Cir. 2016) ("Competitors are not required to engage in a lovefest[.]").

12          Applying these principles in *Trinko*, the Supreme Court held that the antitrust laws did not

13 require Verizon Communications to provide other local exchange carriers access to its network (or

14 elements thereof) so that they could compete in the market for local telephone service.  *Trinko*,

15 540 U.S. at 408–11.  In *Qualcomm*, the Ninth Circuit held that Qualcomm had no duty under the

16 antitrust laws to license its standard essential patents—technology needed for cell phones to

17 operate compatibly with those made by other manufacturers—to its rivals in the market for cell

18 phone modem chips.  969 F.3d at 1005.  And most recently, in *New York v. Meta Platforms, Inc.*,

19 the D.C. Circuit held that Meta—the owner and operator of the social media network, Facebook—

20 could not be compelled under the antitrust laws to provide other developers access to its suite of

21 software tools (called its "platform") so that those developers could build and market competing

22 applications.  66 F.4th at 305–06.

23          This protection of competitors from compelled cooperation with rivals may be at its zenith

24 when it concerns licensing of intellectual property.  *CSU, L.L.C. v. Xerox Corp.*, 203 F.3d 1322,

25 1328-29 (Fed. Cir. 2000) (refusal to license a patent, without more, cannot trigger

26

27

28

1   antitrust liability); *In re Apple iPod iTunes Antitrust Litig.*, 796 F. Supp.2d 1137 (no duty to license

2   intellectual property, following *Trinko*).[4]

3           Against this backdrop, Plaintiffs suggest that the antitrust laws require Zuffa to provide its

4   competitors access not merely to a network, technology, or platform on which to compete, but to

5   its products and trademarks:  videos of UFC fights.  *See* Am. Compl. ¶ 75, Dkt. 208.  Reasoning

6   that UFC's rivals need these videos to promote events featuring former UFC fighters, Plaintiffs

7   claim that it was anticompetitive for Zuffa not to provide them, and therefore the jury could hold

8   Zuffa liable under the Sherman Act for as much.  Dkt. 926 at 37 n.91.  But "*Trinko* [and its

9   progeny] hold[] that such claims are not cognizable under the Sherman Act in the absence of an

10  antitrust duty to deal."  *Pac. Bell*, 555 U.S. at 450.  Plaintiffs have never offered a reason, much

11  less proven, why this case should be one of the "few existing exceptions from the proposition that

12  there is no duty to aid competitors."  *Trinko*, 540 U.S. at 409, 411.  There is no viable justification

13  here because Zuffa has never voluntarily made such videos available to competitors (and Plaintiffs

14  have never identified any other justification), which means Zuffa cannot be held liable under the

15  Sherman Act for choosing "the parties with whom they will deal, as well as the prices, terms, and

16  conditions of that dealing."  *Pac. Bell*, 555 U.S. at 448.  Zuffa's choice not to make videos of UFC

17  fights available to its competitors is not anticompetitive as a matter of law.

18
19          **B.      Because Zuffa Need Not Provide Aid To Its Competitors, Plaintiffs Should Be Precluded Under Rule 403 From Suggesting Otherwise**

20          Zuffa's  decision  not  to  aid  its  competitors  by  giving  them  its  video  content  is  not

21  anticompetitive and evidence or testimony regarding that decision should be precluded.  Federal

22  Rule of Evidence 403 empowers courts to exclude evidence "if its probative value is substantially

23
24

---

25  [4] Herbert J. Hovenkamp, et al., *Unilateral Refusals to License in the U.S. in* Antitrust, Patents and

26  Copyright: EU and US Perspectives 21, 24 (Francois Lévêque & Howard Shelanski ed., 2005)
    ("Generally speaking an intellectual property owner has the right unilaterally to decide not to use

27  or license its intellectual property.  Imposing a duty to deal in some cases threatens to undermine
    this basic principle.  As a result, we are aware of no case in which a U.S. court has held that an

28  intellectual property right was itself an essential facility that must be licensed on reasonable and
    nondiscriminatory terms.").

1  outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, [or]

2  wasting time." Fed. R. Evid. 403.  Each of these dangers is present here.

3      As the Ninth Circuit has explained, district courts rightly exclude evidence of "only

4  ambiguously anticompetitive" conduct under Rule 403 because it "threaten[s] to confuse the issues

5  or mislead the jury." *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1380 (9th

6  Cir. 1989).  Evidence of a larger corporation competing aggressively against a smaller rival might

7  be mistaken by a jury for evidence of harmful, anticompetitive conduct. *See id.*

8      Here, however, Zuffa's conduct isn't even "ambiguously anticompetitive"; it is legal

9  competition and *not* anticompetitive as a matter of law. *Supra* Section II(A).  As such, Zuffa's

10  decision not to provide rival promoters access to its video content cannot provide a basis for its

11  antitrust liability and is irrelevant.  Allowing Plaintiffs to present such evidence—including

12  through testimony by their expert economist, Dr. Hal Singer, Expert Report of Dr. Hal Singer

13  ¶¶ 52–61, 74, Aug. 31, 2017, Dkt. 879-70—is especially dangerous.  Beyond confusing the issues

14  and misleading the jury, it will waste time by diverting the jury's attention, and it will invite the

15  jury, prejudicially, to hold Zuffa liable for conduct that is not anticompetitive.  These dangers

16  substantially outweigh any of the evidence's probative value. *United States v. Espinoza-Baza*, 647

17  F.3d 1182, 1189 (9th Cir. 2011) ("Where the evidence is of very slight (if any) probative value, . .

18  . even a modest likelihood of unfair prejudice or a small risk of misleading the jury will justify

19  excluding that evidence" (citation omitted)).

20      Zuffa's decision not to share its own video content with rival promoters is not

21  anticompetitive as a matter of law.  The Court should preclude Plaintiffs from presenting evidence

22  or testimony suggesting otherwise under Rule 403.

23
   **III.   MOTION *IN LIMINE* NO. 7: MOTION TO PRECLUDE EVIDENCE OR
24         ARGUMENT ABOUT MONOPOLY POWER**

25      Zuffa seeks to preclude Plaintiffs from arguing and eliciting testimony from lay and expert

26  witnesses about Zuffa's supposed "monopoly power in the Relevant Output Market"—"Elite

27  Professional MMA bouts in the United States."  Dkt. 208 ¶ 166; Dkt. 978 at 7.

28

1    In their Amended Complaint, Plaintiffs originally alleged that Zuffa monopolized the
2  market for the promotion of "Elite Professional MMA bouts" and monopsonized the market for
3  "Elite Professional MMA Fighter services" during the Class Period.  Dkt. 208 ¶ 1.  Plaintiffs
4  alleged that Zuffa used its purported monopoly power in the "output market" to restrict its rivals'
5  access to "top quality venues, endorsements, PPV [pay-per-view] and television broadcast
6  outlets."  *Id.* ¶ 73.  But after years of discovery, the undisputed record shows that Zuffa's
7  competitors had access to a robustly competitive marketplace for sponsors, venues, and
8  broadcasters.  Def.'s Renewed Mot. for Summ. J. ¶¶ 28–30, Dkt. 878.  Plaintiffs uncovered no
9  evidence tying Zuffa's alleged monopoly power (or its alleged conduct regarding competitors'
10  access to "top quality" venues, sponsorships, and media outlets) to their claimed injuries and have
11  conceded that "monopoly power is not relevant to Plaintiffs' theory of injury."  Pls.' Opp. to Mot.
12  to Exclude Test. of H. Singer and A. Zimbalist at 37, Dkt. 534.  The Court has also recognized that
13  Plaintiffs "abandoned their theory . . . that liability flows from Defendant's monopoly power in
14  the output market" and are now solely advancing claims related to Zuffa's alleged "monopsony
15  power in the input market."  Dkt. 839 at 20 n.20; Or. at 11, Jan. 18, 2024, Dkt. 959 (holding that
16  Plaintiffs have "no separate monopolization claim").

17    Nonetheless, Plaintiffs have made clear in their trial brief that they intend to argue and
18  elicit testimony about Zuffa's supposed "monopoly power in the Relevant Output Market"—"Elite
19  Professional MMA bouts in the United States."  Dkt. 978 at 7.  Because Plaintiffs are not asserting
20  a monopoly claim, and—by their own admission—lack monopolization evidence to prove liability
21  or damages on their monopsonization theory, Zuffa respectfully moves under Federal Rules of
22  Evidence 402, 403, and 701 to exclude any argument or testimony about Zuffa's alleged monopoly
23  power.  Such testimony is irrelevant as a matter of law to Plaintiffs' monopsonization claim and
24  would prejudice Zuffa by inviting the jury to find liability or damages based on claims of a
25  monopoly when there is no basis for a legal claim of monopolization not asserted in this case.

26    Evidence and testimony relating to Zuffa's supposed monopoly power should be excluded
27  because it is irrelevant to the elements of Plaintiffs' monopsony claim and has no causal connection
28  to Plaintiffs' alleged injuries.  Evidence is relevant only if it has "any tendency to make the

existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. To successfully demonstrate a violation of Section 2 of the Sherman Act, Plaintiffs must marshal evidence showing a "direct causal connection between the alleged violation and the alleged injury." *Magnetar Techs. Corp. v. Intamin, Ltd.*, 801 F.3d 1150, 1160 (9th Cir. 2015) (citation omitted). Here, the "facts of consequence" the jury must determine are the existence of Zuffa's alleged ***monopsony*** power, its use of that alleged power, and whether the use of monopsony power caused Plaintiffs monopsony injury. Any evidence about Zuffa's market power is only relevant insofar as it "shows an injury to Plaintiffs resulting from the illegal conduct" ***as a monopsonist***. *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

As reflected by their decision not to seek relief based on monopoly power, Plaintiffs have no evidence that Zuffa had or used monopoly power to restrict competitor's access to venues, media outlets, or sponsorships. Thus, any evidence or testimony referring to baseless assertions of monopoly power—or Zuffa's conduct relating to venues, sponsors, and media outlets—would offer no probative value to a jury's liability or damages determinations because Plaintiffs "do not seek damages based on monopolization" and have not presented evidence to support such a claim if they did. Dkt. 534 at 7.

Zuffa is unaware of, and Plaintiffs have not cited, any case in which—despite conceding that "monopoly power is not relevant to the theory of injury"—a plaintiff was nonetheless permitted to put forth evidence of a defendant's supposed monopoly power in an output market for the sole purpose of proving that the defendant also possessed monopsony power in an input market. Plaintiffs nonetheless still claim that evidence about competitors' access to "top quality" venues, media outlets, and sponsorships is "relevant to the efficacy of Zuffa's Scheme and its anticompetitive effects" and that "Zuffa's monopoly power confirms its monopsony power." Dkt. 978 at 7. Plaintiffs rely on the inapposite cases of *O'Bannon v. National Collegiate Athletic Ass'n*, 802 F.3d 1049, 1070–71 (9th Cir. 2015) and *McNeil* v. *National Football League*, 790 F. Supp. 871, 895-96 (D. Minn. 1992) to argue that "Zuffa's monopoly power is relevant—but not necessary—to prove Plaintiffs' antitrust claims based on Zuffa's monopsony power." Dkt 978

1    at 7.  *O'Bannon* addressed the standard for determining the existence of anticompetitive effects in

2    the Section 1 price-fixing context where procompetitive justifications are irrelevant (*per se* case)

3    or subject to a balancing test (rule of reason case)—not a Section 2 monopoly power case.  And

4    *McNeil* is an out-of-Circuit district court opinion discussing issues relating to collateral estoppel

5    and affirmative defenses of a defendant whose monopoly power had already been proven in a prior

6    case in which the existence of monopoly power was the central issue.  That scenario is unlike here,

7    where the existence of Zuffa's monopoly has never been proven, and is neither necessary nor

8    sufficient to vindicate Plaintiffs' claims at trial.

9         Plaintiffs assert that they "anticipate that Professor Singer will testify that Zuffa's

10   monopoly power is evidence of its monopsony power."  Dkt. 978 at 7 n.7. But Dr. Singer admitted

11   that he had *no expert opinions* as to whether any of the alleged monopolization conduct was

12   anticompetitive or reflected Zuffa's monopoly power.[5]  Singer Dep. at 259:4–261:11, Dkt. 879-16

13   ("I can imagine how" monopolistic conduct "could trigger the mechanism that's causing the rate

14   suppression in my models, but ***I don't really have an opinion beyond that***." (emphasis added)).

15   The same is true of Dr. Zimbalist: Zimbalist Dep. at 43:13–45:21, Dkt. 932-8 (Dr. Zimbalist

16   acknowledging he "was not doing a liability report here. I was not asked to define 'market.' I've

17   done no formal analysis of market power here."); *id*. at 52:8–12 (Dr. Zimbalist conceding that he

18   "does not reach any opinions on the issue of whether Zuffa had market power."); *id*. at 134:22–

19

20

---

21   [5] In their trial brief, Plaintiffs misrepresent Dr. Robert Topel's deposition testimony regarding the
     relationship between monopoly and monopsony power. ECF No. 978 at 7 n.5 (incorrectly asserting
22   that Dr. Topel "conceded that a monopolist in the sport of elite professional MMA would also be
     a monopsonist") (citing Topel Dep. at 464:2–14).  Read in-full, Dr. Topel's testimony clearly
23   stated the exact opposite: "monopoly power in the output market ***doesn't necessarily imply***
     ***monopsony power in the input market***."  Topel Dep. at 463:22-464:1, Dkt. 926-39.
24

25   Indeed, Plaintiffs' counsel specifically asked "if you control the output market in a professional
     sport, you control the input market for the athletes, correct?"—to which Dr. Topel unequivocally
26   answered "No" because Plaintiffs were assuming "that there are no good substitutes for the athletes
     themselves."  *Id*. at 464:2–21.  Using Major League Soccer as an example, Dr. Topel then
27   explained how an entity "might be a monopolist" in the United States output market for
     professional soccer events but would "still be hiring soccer players from everywhere and not have
28   much market power over the price" paid to soccer players.  *Id*. at 464:22–465:1.

1  135:14 ("I am not making an expert opinion" on whether Zuffa's challenged monopoly conduct

2  caused it to possess monopoly power or cause anticompetitive effects).

3    Even if evidence or argument about Zuffa's alleged monopoly power were somehow

4  relevant (and it is not), allowing such testimony or argument would unfairly prejudice Zuffa and

5  mislead and confuse the jury.  Under Rule 403, even relevant evidence "may be excluded when

6  there is a significant danger" that evidence would be "substantially outweighed by the danger of

7  unfair prejudice" or "distract reasonable jurors from the real issues in a case." *Campbell* v. *Garcia*,

8  2016 WL 4769728, at *2 (D. Nev. Sept. 13, 2016) (citation omitted).  The "real issues" in this case

9  are whether Zuffa possessed monopsony power in the input market for MMA fighters' services,

10  the competitive nature of Zuffa's conduct in furtherance of any such power, and whether Plaintiffs

11  have demonstrated any alleged injuries flowing from any alleged monopsonization.  Dkt. No. 839

12  at 20. Allowing irrelevant, side-show testimony regarding Zuffa competitors' access to venues,

13  sponsorships, and media outlets that do not state a legal claim would only distract the jury from

14  the monopsony issues they will have to decide.

15    Courts routinely exclude evidence and argument relevant only to legal theories that have

16  been abandoned or dismissed.  For example, in *Leegin Creative Leather Products, Inc.* v. *Ayama*

17  *Industrial Co., Ltd.*, the district court granted a motion *in limine* to prevent a defendant from

18  "introducing evidence or making any argument that Plaintiff has, or seeks to obtain, a purported

19  monopoly over certain products" because the existence of the plaintiff's supposed monopoly

20  power was not necessary for the disposition of the Lanham Act claims to be tried.  2008 WL

21  11339978, at *2 (C.D. Cal. Jan. 11, 2008); *see also DeBose v. Univ. of S. Fla. Bd. of Trs.*, 2018

22  WL 8919981, at *2 (M.D. Fla. Sept. 9, 2018) (collecting cases) ("District courts routinely exclude

23  evidence and argument related to previously dismissed claims as irrelevant and prejudicial.");

24  *Rodriguez* v. *Wash. Metro. Area Transit Auth.*, 2021 WL 7286936, at *1 (D.D.C. Dec. 7, 2021)

25  (collecting cases) ("As to the rejected counts, many courts have agreed that plaintiffs are barred

26  from raising rejected counts at trial.").

27    In addition to the clear prejudice of allowing evidence or argument regarding Zuffa's

28  purported monopoly power, any references by Plaintiffs to Zuffa's possession or use of monopoly

1    power are also inadmissible because such testimony constitutes improper lay witness opinion.

2    Under Rule 701, "testimony cannot be received as lay opinion if it is based on scientific, technical,

3    or other specialized knowledge within the scope of Rule 702." *United States* v. *Garcia*, 413 F.3d

4    201, 215 (2d Cir. 2005) (citing Fed. R. Evid. 701). "Rather, a lay opinion must be the product of

5    reasoning processes familiar to the average person in everyday life." *Id.* Antitrust concepts are

6    "beyond the ken of the average layperson." *In re Titanium Dioxide Antitrust Litig.*, 2013 WL

7    1855980, at *6 (D. Md. May 1, 2013). The term "monopoly," in particular, is a both a "technical

8    term" and one "which has a clear . . . legal" meaning. *United States* v. *E. I. du Pont de Nemours*

9    *& Co.*, 351 U.S. 377, 390 n.15 (1956).

10    Plaintiffs, who concede that evidence relating to Zuffa's supposed monopolistic conduct

11    did not cause them injury and they do not have a monopolization claim to pursue, nonetheless

12    claim that such evidence should be admissible because that conduct "caused reduced output,

13    degraded quality, and inflated prices to fans." Pls.' Opp'n to Def.'s Mot. for Summ. J.at 21 n.21,

14    Dkt. 926 . Whatever are the theoretical effects from an actual claim of monopolization, Plaintiffs

15    do not have such a claim or evidence to support such a claim. Plaintiffs have no expert or lay

16    witness who is capable of tying any of the supposed monopolistic evidence to Plaintiffs' legal

17    theory of liability or damages. Allowing Plaintiffs to raise inflammatory and baseless

18    monopolistic arguments would be legal error and would only serve to confuse and mislead the

19    jury.

20    To prevent improper testimony and argument from misleading the jury and causing

21    unnecessary confusion and prejudice, Zuffa respectfully requests that witnesses—including Dr.

22    Singer—be precluded from discussing Zuffa's alleged "monopoly" power in the output market or

23    putting forth record evidence probative only to a legal theory that Plaintiffs have abandoned.

24    **IV.    MOTION *IN LIMINE* NO. 8: MOTION TO PRECLUDE EVIDENCE
      REGARDING ZUFFA'S PRIOR LITIGATION AND RELATED**
25    **CONSTITUTIONALLY PROTECTED JUDICIAL PETITIONING**

26    Plaintiffs intend to present at trial exhibits and lengthy testimony to show Zuffa's pre-Class

27    Period history of litigation to enforce its contractual and other rights. Plaintiffs' goal is to use

28    these petitions to courts of justice, and documents related to those petitions, to support their tale

1    of anticompetitive "coercion," or at least to leave the jury with that impression.  But this litigation-

2    related evidence is irrelevant and inadmissible to prove any alleged anticompetitive act,

3    anticompetitive scheme, or antitrust violation as a matter of law under the *Noerr-Pennington*

4    doctrine.  Any admission of evidence of Zuffa's petitions to the judicial branch or related conduct

5    for some other purpose would create a substantial risk of unfair prejudice and confusion by inviting

6    the jury to consider Zuffa's litigation history for a constitutionally forbidden purpose.  It would

7    also be a waste of trial time to relitigate lawsuits that were filed and resolved long before the Class

8    Period in this case.  Thus, the Court should preclude evidence or argument related to Zuffa's prior

9    litigation under Federal Rules of Evidence 402, 403, and the *Noerr-Pennington* doctrine.

10        Plaintiffs' trial brief failed to discuss Zuffa's prior litigation history, because it is irrelevant

11   to their claims.  But Plaintiffs' trial exhibit list, trial deposition designations, and trial witnesses

12   show that they nevertheless intend to make this a focus of their case at trial.  The bulk of this

13   evidence appears to be about a tangle of litigation from 2006 through 2008 that began when Zuffa

14   filed a lawsuit in February 2006 against MMA promoter International Fight League ("IFL") and

15   two former Zuffa employees to protect Zuffa's trade secrets and confidential information.  *See*

16   *Zuffa, LLC v. Int'l Fight League, Inc.*, No. 06-A-516841 (Nev. Dist. Ct. Feb. 2, 2006).  In response,

17   IFL filed a complaint against Zuffa the next day.  *See Int'l Fight League, Inc. v. Zuffa, LLC*, No.

18   06-cv-0880 (S.D.N.Y. Feb. 3, 2006).  When IFL again infringed Zuffa's contractual rights

19   regarding then-UFC athlete Randy Couture, Zuffa filed another lawsuit in Nevada in January 2008,

20   and obtained a preliminary injunction.  *See* Ex. 8, Order, *Zuffa, LLC v. Couture*, No. 08-A-555208

21   (Nev. Dist. Ct., Feb. 29, 2008).[6]  As a result of that Zuffa lawsuit, company HD Net sued Zuffa

22   and Mr. Couture as an interested party seeking a declaration regarding Zuffa's contractual rights

23   with respect to Mr. Couture.  *See Zuffa, LLC v. HDNet MMA 2008 LLC*, 262 S.W.3d 446 (Tex.

24   Ct. App. 2008).  But that case was stayed by order of the Texas Court of Appeals when Zuffa filed

25   an arbitration in Nevada relating to the same subject matter.  *Id.* at 451.  There is no legitimate

26   basis to unearth this long-settled litigation history at trial, but Plaintiffs invite a re-litigation of

27

28   _____
     [6] All exhibits cited herein are to the David Johnson Declaration in Support of Zuffa's Motions *in Limine* unless otherwise stated.

1   those cases and allegations by designating over 70 pages of deposition testimony on this topic from

2   executives at IFL and HD Net to play at trial,[7] bringing Mr. Couture as a live witness, and including

3   on their exhibit list copies of a complaint, declarations, cease and desist letters, a settlement

4   agreement, and numerous other litigation-related exhibits—none of which should be permitted.[8]

5        Plaintiffs' clear intent is for this evidence to leave the jury with the impression that Zuffa

6   resorted to litigation, including to protect and enforce its contracts with athletes, as part of some

7   anticompetitive "scheme" or "coercion."  The *Noerr-Pennington* doctrine precludes the use of

8   evidence for that purpose.  This doctrine, initially set out in two Supreme Court opinions, made

9   clear that "[t]hose who petition government for redress are generally immune from antitrust

10  liability."  *Prof. Real Est. Invrs. v. Columbia Pictures, Indus.*, 508 U.S. 49, 56 (1993).[9]  The

11  doctrine is based on the "First Amendment's guarantee of 'the right of the people . . . to petition

12  the Government for a redress of grievances,'" and is intended to "preserve the breathing space

13  required for the effective exercise of the rights it protects."  *Sosa v. DIRECTV, Inc.*, 437 F.3d 923,

14  929, 939 (9th Cir. 2006) (alteration in original) (citation omitted).  This immunity applies to

15  "actions petitioning each of the three branches of the government."  *Theme Promotions, Inc. v.*

16  *News Am. Mktg. ESI*, 546 F.3d 991, 1006-07 (9th Cir. 2008).  And with respect to the judicial

17  branch, under this doctrine, "the filing of a lawsuit is immune from the antitrust laws unless the

18  suit is a 'sham.'"  *Columbia Pictures Indus. v. Prof. Real Est. Invrs.*, 944 F.2d 1525, 1529 (9th Cir.

19  1991).[10]

<hr>

[7] *See* Otto Dep. 156-179, 197-224; Simon Dep. 76-86, 140, 160-62, 182-83, 197-98, 324-25. Additionally, Plaintiffs designated pages from Dana White's testimony on these issues. *See* White Dep. 85-86, 140, 160-62, 182-83, 197-98, 324-25.

[8] *See infra* n.11.  In addition to the grounds stated in this motion, Zuffa has objected to these exhibits and deposition testimony through the process set in the pre-trial schedule.  Should the Court not exclude this evidence on the bases stated in this motion, objections about individual pieces of evidence and deposition testimony would need to be resolved as part of the larger objection-resolution process yet to be determined by the Court.

[9] *See also E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657 (1965).

[10] Plaintiffs could not invoke the high-bar set by the "sham" exception to *Noerr-Pennington*. Proving that exception would require Plaintiffs to show first that Zuffa's petitioning activity was "objectively baseless," such that "no reasonable litigant could reasonably expect success on the merits."  *Theme Promotions*, 546 F.3d at 1007; *see also Evanger's Dog & Cat Food Co. v. Env't*

1          Plaintiffs have not and cannot articulate a theory of relevance for evidence of Zuffa's

2 litigation history without infringing Zuffa's constitutional rights, as set out in the *Noerr-*

3 *Pennington* doctrine. In response to Zuffa's objections to exhibits violating *Noerr-Pennington* on

4 Plaintiffs' exhibit list, Plaintiffs asserted vaguely and sporadically that a litigation-related

5 document was relevant as "a basis" for expert testimony, or was offered "to establish the fact that

6 the lawsuit was filed."[11] Plaintiffs' longest proffer was that "Plaintiffs are not challenging lawsuit

7 itself as part of the scheme, but rather as evidence showing the fact of filed lawsuits or statements

8 made in the course of said lawsuits as probative to understanding the scope, impact, and effect of

9 Zuffa's anticompetitive scheme." Pls.' Resp. to Def.'s Obj. to Pls.' Trial Ex. No. PTX-1379 (Feb.

10 27, 2024). But this circular theory of relevance is nonsensical, and still violates *Noerr-Pennington*

11 immunity. *See EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074,

12 1082 (C.D. Cal. 2010) ("[A]ll communications between private parties related to litigation" are

13 insulated under *Noerr-Pennington*.); *Enttech Media  Grp. v. Okularity, Inc.*, 2020 WL 6888722,

14 at *3 (C.D. Cal. Oct. 2, 2020) ("[T]he *Noerr-Pennington* protections apply to petitions to

15 courts . . . ."). The doctrine stretches to insulate from antitrust liability "not only petitions sent

16 directly to the court in the course of litigation, but also 'conduct incidental to the prosecution of

17

---

18 *Democracy Project*, 2022 WL 180205, at *4-5 (C.D. Cal. Jan. 20, 2022). This would require proof

19 that a petition was "an abuse of the judicial process," *Columbia Pictures*, 944 F.2d at 1529, which is plainly lacking as Zuffa won a preliminary injunction in one of the Nevada suits at issue and

20 successfully obtained a stay of the Texas litigation from the Texas Court of Appeals, which recognized the action would wrongly interfere with Zuffa's right to pursue arbitration in Nevada.

21 *See, e.g.*, Ex. 8, Order, *Zuffa, LLC v. Couture*, No. 08A555208 (Nev. Dist. Ct., Clark Cty., Feb. 29, 2008); *Zuffa*, 262 S.W.3d at 448. Indeed, Zuffa did not lose any of these cases about which

22 Plaintiffs complain. Moreover, Plaintiffs would *also* be required to prove that the lawsuits concealed "an attempt to interfere directly with the business relationship of a competitor, through

23 the use of the governmental *process*—as opposed to the *outcome* of that process—as an

24 anticompetitive weapon." *Theme Promotions*, 546 F.3d at 1007. Plaintiffs could prove neither the objective nor the subjective prong of the sham exception.

25 [11]  *See, e.g.*, Pls.' Feb. 27, 2024 Resps. to Def.'s Objs. to Pls.' Trial Ex. Nos. PTX-0598, PTX-

26 0664, PTX-1342. *See also id.* at PTX-0528 (Plaintiffs providing no relevance of UFC cease and desist letter); PTX-0575 (Plaintiffs providing no relevance of UFC cease and desist letter); PTX-

27 0644 (Plaintiffs providing no relevance of litigation declaration rife with hearsay); PTX-1375 (Plaintiffs providing no relevance of litigation complaint); PTX-1376 (Plaintiffs providing no

28 relevance of litigation declaration); PTX-1377 (Plaintiffs providing no relevance of litigation declaration).

---

the suit.'" *Sosa*, 437 F.3d at 934; *Theme Promotions*, 546 F.3d at 1007-09 (applying *Noerr-Pennington* to litigation letters).[12]

Plaintiffs' ineffective relevance theory is a ruse in any event.  The actual deposition testimony they seek to play at trial reveals their true intention.  Below is a segment of plaintiffs' counsel questioning International Fight League executive Kurt Otto about a declaration he submitted in defense of Zuffa's pursuit of a preliminary injunction, which provides a preview of the type of testimony Plaintiffs seek to play at trial.

| Kurt Otto Deposition Testimony | Plaintiffs' Position |
|---|---|
| Dep. 159:20-160:9 [questioning by Plaintiffs' attorney] | |
| Q.  You say at the top:  Rather than having to do with, quote, confidential, closed quote, information or purported trade secrets, I believe that, to the contrary, as described below this lawsuit has everything to do with Zuffa's effort to stifle and stamp out perceived competition in the mixed martial arts, MMA marketplace in a transparent attempt to put the IFL out of business before it ever gets off the ground.  Do you see that?<br><br>A.  Yes | Plaintiffs' trial designation |
| Dep. 164:10-16 [questioning by Plaintiffs' attorney] (objection omitted) | |
| Q.  And this lawsuit was part of their strategy to put you out of business?<br><br>Q.  Yes?<br><br>A.  Yes.  I believe that. | Plaintiffs' trial designation |

Plaintiffs cannot credibly contend that this type of testimony is intended to prove anything other than the exact inference that *Noerr-Pennington* forbids, and it is prolific throughout the testimony

---

[12] The fact that Zuffa was nominally a defendant in some of these actions does not change the analysis. *See  Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005) ("*Noerr–Pennington* immunity . . . also appl[ies] to defensive pleadings because asking a court to deny one's opponent's petition is also a form of petition." (citation omitted)).

of IFL executive Mr. Otto.  Plaintiffs' trial designations of Andrew Simon about the 2008 HD Net

litigation are just as transparent and improper, as the sample below of Plaintiffs' counsel reading

into the record an allegation in HD Net's 2008 complaint shows.

| Andrew Simon Deposition Testimony | Plaintiffs' Position |
|---|---|
| Dep. 80:23-81:9 (objection omitted) [questioning by Plaintiffs' attorney] | |
| Q.  Okay.  Paragraph 10, first sentence reads, "A key technique utilized by Zuffa to maintain their iron grip on the MMA industry is litigation and intimidation."  Do you agree with that statement?<br><br>A.  I'm not a lawyer.  I don't know all the litigation cases. | Plaintiffs' trial designation |

Shockingly, after asking this witness without personal knowledge about this litigation complaint, Plaintiffs then neglected to designate for trial, and have vigorously objected to, testimony that came immediately next when Mr. Simon rejected the suggestion that Zuffa used litigation to intimidate him.  That testimony, along with Plaintiffs' stated objections, are shown below.

| Andrew Simon Deposition Testimony | Plaintiffs' Position |
|---|---|
| Dep. 81:18-7 [questioning by Plaintiffs' attorney] (objection omitted) | |
| Q.  Do you have any experience as part of your job responsibilities at ASX TV, of Zuffa using intimidation – with – directed specifically at AXS TV – you or AXS TV?<br><br>A.  I never felt intimidated. | Objection:  FRE 403; FRE 602; FRE 701; Foundation |
| Dep. 81:9-13 [questioning by Plaintiffs' attorney] (objection omitted) | |
| Q.  Did you ever feel they were trying to intimidate you?<br><br>A.  No. | Objection:  FRE 403; FRE 602; FRE 701; FRE 901; Foundation; Hearsay; Calls for Legal Conclusion |

Plaintiffs designated their own attorney reading this litigation-complaint hearsay statement that

"[a] key technique utilized by Zuffa to maintain their iron grip on the MMA industry is litigation

1    and intimidation" because that is what they hope the jury will take away from both this testimony

2    and the larger history of Zuffa enforcing its petitioning rights.   Because *Noerr-Pennington*

3    prohibits this use of evidence, the prior litigation and related conduct should be excluded as

4    irrelevant under Federal Rule of Evidence 402.

5         The case *City of Cleveland v. Cleveland Electric Illuminating Co.*, 734 F.2d 1157 (6th Cir.

6    1984) is instructive of how the Court should address Plaintiffs' attempted use of prior litigation

7    conduct and communications.   In *City of Cleveland*, the City sued rival electricity producer

8    Cleveland Electric under Section 2 of the Sherman Act for allegedly engaging in illegal

9    monopolization that ruined the City's own utility business.  *Id.* at 1160-61.  As part of its proof,

10   the City sought to show Cleveland Electric sponsored a lawsuit that interfered with the City's

11   receipt of electricity for resale.  *Id.* at 1163.   The City hoped this evidence would "show the

12   anticompetitive character and nature of Cleveland Electric's conduct in this episode as a part of

13   the alleged broader pattern of conduct condemned by the Sherman Act."  *Id.*   But after the district

14   court excluded the evidence, the Sixth Circuit agreed that this was "not an admissible basis for its

15   introduction" at trial because "even if the purpose were anti-competitive, and the suit were

16   designed to eliminate City as a competitor, '[s]uch conduct is not illegal, either standing alone *or*

17   *as part of a broader scheme*.'"  *Id.* (emphasis added).  Moreover, the evidence presented a "danger

18   of unfair prejudice" or of "confusing or misleading the jury."  *Id.*  The same outcome is required

19   here.  The purpose for which Plaintiffs seek to admit this evidence—to show a "broader pattern of

20   conduct condemned by the Sherman Act"—is "not an admissible basis for its introduction" at trial.

21   *Id.*[13]

22

23   _____

     [13] Numerous other courts faced with the same misuse of *Noerr-Pennington* protected petitioning

24   activity have reached the same result.  *See, e.g.*,  *DataTreasury Corp. v. Wells Fargo & Co.*, 2010
     WL 11538713, at *15 (E.D. Tex. Feb. 26, 2010) (granting motion in *limine* to exclude evidence

25   of *Noerr-Pennington* petitioning activity because such evidence "would risk substantial prejudice
     to Defendants and would risk substantial chilling of the First Amendment activities of Defendants

26   and of others"); *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.*, 2005 WL 8162569, at *6-7
     (E.D. Tenn Feb. 23, 2005) ("[I]t is abundantly clear that the plaintiff may not make any mention

27   of the efforts of the defendant to procure adoption of the MSA, or to encourage state legislatures
     to enact the subsequent legislation."); *Applera Corp. v. MJ Rsch., Inc.*, 303 F. Supp. 2d 130, 132-

28

1    Even if Plaintiffs could concoct a new theory of relevance in defense of this motion to

2    avoid a direct confrontation with *Noerr-Pennington* (which they cannot do), evidence of Zuffa's

3    prior litigation and constitutionally protected petitioning activity still must be excluded because it

4    would create a substantial risk that the jury would consider the evidence for that impermissible

5    purpose, which would confuse the jury, "would risk substantial prejudice to [Zuffa] and would risk

6    substantial chilling of the First Amendment activities" of Zuffa.  *DataTreasury*, 2010 WL

7    11538713, at *15.  As the court found in *City of Cleveland*, admitting evidence of litigation for

8    some other purpose would directly "expose the jury to the danger of considering that proof for

9    improper purposes—that of an anti-competitive act when it was not admissible for that purpose."

10   *City of Cleveland*, 734 F.2d at 1164.  Plaintiffs expressly invite this unfairly prejudicial purpose,

11   as the above deposition designations from Messrs. Otto and Simon show.  Furthermore, the

12   evidence would invite a trial-within-the trial about long-ago settled or dismissed disputes—mainly

13   from 2006 through 2008—as Zuffa could not leave unrebutted Mr. Otto's testimony disparaging

14   Zuffa's lawsuit allegations, or the foundationless accusations in litigation complaints and

15   declarations that Plaintiffs seek to present as credible evidence at trial.  All of this, of course, would

16   be a waste of time and ultimately is not relevant to the question of whether Zuffa's use of exclusive

17   contracts between December 2010 and June 2017 caused UFC athletes to make less than they

18   would have otherwise.  Thus, regardless of Plaintiffs' theory of relevance, this evidence of Zuffa's

19   prior litigation and related constitutionally protected petitioning activity should be precluded under

20   Federal Rule of Civil Procedure 403.

21

22

23

24

25

26

27

28

---

33 (D. Conn. 2004) (granting motion to exclude evidence of litigation history as "not relevant as support for MJ's antitrust claims" under *Noerr-Pennington*).

Dated: February 29, 2024

Respectfully Submitted,

*/s/ Christopher S. Yates*

WILLIAM A. ISAACSON (*Pro hac vice*)
wisaacson@paulweiss.com
KAREN L. DUNN (*Pro hac vice*)
kdunn@paulweiss.com
JESSICA PHILLIPS (*Pro hac vice*)
jphillips@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006

BRETTE M. TANNENBAUM (*Pro hac vice*)
btannenbaum@paulweiss.com
YOTAM BARKAI (*Pro hac vice*)
ybarkai@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019

DONALD J. CAMPBELL (No. 1216)
djc@campbellandwilliams.com
J. COLBY WILLIAMS (No. 5549)
jcw@campbellandwilliams.com
CAMPBELL & WILLIAMS
700 South 7th Street
Las Vegas, Nevada 89101
Tel: (702) 382-5222

CHRISTOPHER S. YATES (*Pro hac vice*)
chris.yates@lw.com
AARON T. CHIU (*Pro hac vice*)
aaron.chiu@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 395-8095

SEAN M. BERKOWITZ (*Pro hac vice*)
sean.berkowitz@lw.com
LATHAM & WATKINS LLP
330 North Wabash Ave, Suite 2800
Chicago, IL 60611

LAURA WASHINGTON (*Pro hac vice*)
laura.washington@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd, Suite 1100
Los Angeles, CA 90067

DAVID L. JOHNSON (*Pro hac vice*)
david.johnson@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004

*Attorneys for Defendant Zuffa, LLC*

1

## <u>CERTIFICATE OF SERVICE</u>

2

3
       The undersigned hereby certifies that the foregoing Defendant's Omnibus Motions *in*

4
*Limine* Nos. 5-8 was served on February 29, 2024 via the Court's CM/ECF electronic filing system

5
addressed to all parties on the e-service list.

6

7
                               */s/ Christopher S. Yates*

8
                               Christopher S. Yates of
                               LATHAM & WATKINS LLP

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28