ERIC L. CRAMER (*pro hac vice*)
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
ecramer@bm.net

JOSEPH R. SAVERI (*pro hac vice*)
JOSEPH SAVERI LAW FIRM, LLP
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
jsaveri@saverilawfirm.com

RICHARD A. KOFFMAN (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., N.W., Suite 500, East Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408 4699
rkoffman@cohenmilstein.com

*Counsel for the Class and Attorneys for All
Individual and Representative Plaintiffs*

[Additional Counsel Listed on Signature Page]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury, on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>v.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br>            Defendant. | Case No. 2:15-cv-01045-RFB-BNW<br><br>**PLAINTIFFS' MOTIONS IN LIMINE NOS. 8 TO 12 TO EXCLUDE UNFAIRLY PREJUDICIAL AND IRRELEVANT EVIDENCE OR TESTIMONY RELATING TO PLAINTIFFS** |

1
2

# TABLE OF CONTENTS

**Page(s)**

3       I.   MOTION IN LIMINE NO. 8 TO EXCLUDE EVIDENCE OR ARGUMENT THAT
4            THE CLASS OR ANY CLASS MEMBER FAILED TO MITIGATE DAMAGES ................ 1

5       II.  MOTION IN LIMINE NO. 9 TO EXCLUDE EVIDENCE OF OR REFERENCE TO
             PLAINTIFFS' ALLEGEDLY FAILED PED TESTS AT ANY TIMES THEY WERE NOT
6            UNDER CONTRACT WITH THE UFC.................................................................................. 4

7       III. MOTION IN LIMINE NO. 10 TO EXCLUDE EVIDENCE OF OR REFERENCE TO
             CONTRACTS BETWEEN UNIVERSAL STRENGTH HEADQUARTERS AND ITS
8            EMPLOYEES, OR BETWEEN PLAINTIFF CUNG LE AND UNIVERSAL STRENGTH
             HEADQUARTERS EMPLOYEES ........................................................................................ 6

9       IV.  MOTION IN LIMINE NO. 11 TO EXCLUDE EVIDENCE OF OR REFERENCE TO
             PLAINTIFFS' NON-UFC BUSINESSES ............................................................................ 9

10
11      V.   MOTION IN LIMINE NO. 12 TO EXCLUDE EVIDENCE OF OR REFERENCE TO
             THE PROPOSED IDENTITY CLASS ............................................................................. 12

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.    MOTION IN LIMINE NO. 8 TO EXCLUDE EVIDENCE OR ARGUMENT THAT THE CLASS OR ANY CLASS MEMBER FAILED TO MITIGATE DAMAGES

Plaintiffs Cung Le, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury ("Plaintiffs") submit this Motion in Limine to exclude evidence or argument that the Class, or any of its members, mitigated or failed to mitigate damages.

At trial, Plaintiffs intend to prove that Zuffa engaged in an unlawful Scheme to acquire and maintain monopsony power in the market for professional MMA fighter services. *See* Plts.' Trial Br. at 1, ECF No. 978. Plaintiffs will prove that Zuffa, due to its Scheme, was able to set prices for fighter services below competitive levels, and thereby substantially underpay its Class Member fighters. And Plaintiffs, through the expert testimony of Prof. Hal Singer and Prof. Andrew Zimbalist, will prove damages in the amount that Class Members were underpaid due to the Scheme while fighting for Zuffa during the Class Period.

Both Dr. Singer and Prof. Zimbalist compute damages, for Class Members who fought during the Class Period, as the amount each would have been paid for each bout in the absence of the Challenged Scheme less the amount the UFC actually paid them for that bout. *See* **Exh. L**, Expert Report of Hal J. Singer, Ph.D. ¶¶ 245-48 & Tbl. 10 (attached to Declaration in support of PMIL Nos. 4-7); **Exh. I**, Expert Report of Andrew Zimbalist ¶¶ 125-26 & Tbls. 4-5 (attached to Declaration in support of PMIL Nos. 4-7). And the Court has repeatedly affirmed this methodology as a valid and reliable measure of antitrust injury. *See Le v. Zuffa, LLC*, 2023 WL 5085064, at *32 (D. Nev. Aug. 9, 2023) ("Defendant's dominance in the input market for fighter services had the effect of reducing fighters' compensation below what would have been the competitive compensation for their services."); *Le v. Zuffa, LLC*, 2024 WL 195994, at *6 (D. Nev. Jan. 18, 2024); *Le v. Zuffa, LLC*, 216 F. Supp. 3d 1154, 1169 (D. Nev. 2016).

In briefing and argument on Plaintiffs' measure of damages, Zuffa has never alleged that Class Members could have somehow mitigated the anticompetitive pay suppression inflicted by Zuffa's

Scheme.[1] *Cf. JUUL Labs, Inc. v. Chou*, 2023 WL 3886046, at *14 (C.D. Cal. June 8, 2023) ("Defendants bear the burden of establishing that Plaintiffs failed to mitigate."). Nonetheless, Zuffa has now expressed its intent to argue an affirmative mitigation defense at trial. But Zuffa's theory of supposed mitigation—in addition to lacking evidentiary support in the record—is nonsense. In response to Plaintiffs' interrogatories, Zuffa indicated that the basis for its affirmative defense was that each Plaintiff (or Class Member) had either a) "mitigated any alleged damage . . . by contracting with a rival promotion . . . following the conclusion of his relationship with UFC," or b) *failed* to mitigate damages by "declining to seek any professional MMA opportunities following the conclusion of his relationship with UFC." **Exh. Y**, Def.'s Resp. to Plts.' Interrog. No. 15.

This strange theory of mitigation—that any Class Member was required to seek alternative employment "following the conclusion of his relationship with UFC"—fails on multiple levels. For one, as a matter of settled law, plaintiffs alleging an "overcharge" theory of injury under Section 2 of the Sherman Act have no duty to mitigate damages. *See Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 491 (1968) (rejecting a mitigation defense in such cases and declining to "limit the general principle that the victim of an overcharge is damaged . . . to the extent of that overcharge"); *Royal Printing Co. v. Kimberly Clark Corp.*, 621 F.2d 323, 327 (9th Cir. 1980) (applying *Hanover Shoe*); *In re Glumetza Antitrust Litig.*, 336 F.R.D. 468, 480–81 (N.D. Cal. 2020) (noting that, under *Hanover Shoe*, "antitrust injury occurs and is complete when the defendant sells at an illegally high price. . . . The jury need hear no more" (internal quotations omitted)).[2]

---

[1] Zuffa, through its economists, has claimed only that no antitrust injury or damages occurred. *See* Def.'s Trial Br. at 31-32, ECF No. 979.

[2] This holding applies with equal force here, where Plaintiffs allege that Zuffa, a monopsonistic buyer, categorically underpaid them for their services. *See Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*, 549 U.S. 312, 321 (2007) (describing monopsony as the "mirror image" of monopoly). In other words, just as with an illegal overcharge, when a price-fixing scheme or monopsony causes "sellers to receive less[] than the prices that would prevail in a market free of the unlawful trade restraint, antitrust injury occurs." *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 988 (9th Cir. 2000); *see id.* (emphasizing that its holding is "equally true" as to both "overcharged buyers" and "underpaid sellers"); *O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 802 F.3d 1049, 1071 (9th Cir. 2015) (holding that suppressed compensation to athletes constitutes antitrust injury); *In re High-Tech Emp. Antitrust Litig.*, 856 F. Supp. 2d 1103, 1123 (N.D. Cal. 2012); *Doe v. Ariz. Hosp. & Healthcare Ass'n*, 2009 WL 1423378, at *4 (D. Ariz. Mar. 19, 2009) ("Plaintiffs . . . were injured when Defendants fixed the price of their wages below a competitive rate.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

And second, Plaintiffs' damages model—which this Court has repeatedly approved as a valid measure of antitrust injury, *Le v. Zuffa, LLC*, 2023 WL 5085064, at *32 (D. Nev. Aug. 9, 2023); *Le v. Zuffa, LLC*, 2024 WL 195994, at *6 (D. Nev. Jan. 18, 2024)—measures the extent to which Class Members were injured by Zuffa's Scheme *while fighting for Zuffa.* Evidence that any Class Member did—or did not—seek any form of alternate employment "following the conclusion of his relationship with UFC" is wholly irrelevant to this analysis. Plaintiffs do not seek damages for the period after they left the UFC, so there is nothing to "mitigate."

In sum, at no point during this litigation has Zuffa presented any legal or factual predicate for a colorable mitigation defense, and the Court should reject its attempts to do so now. For these reasons, Plaintiffs request that the Court exclude evidence or argument that the Class, or any of its members, mitigated or failed to mitigate damages.

PLAINTIFFS' MOTIONS IN LIMINE NOS. 8 TO 12 TO EXCLUDE UNFAIRLY PREJUDICIAL AND IRRELEVANT EVIDENCE OR TESTIMONY RELATING TO PLAINTIFFS

1

2

**II.     MOTION IN LIMINE NO. 9 TO EXCLUDE EVIDENCE OF OR REFERENCE TO PLAINTIFFS' ALLEGEDLY FAILED PED TESTS AT ANY TIMES THEY WERE NOT UNDER CONTRACT WITH THE UFC**

3

4

5

6

7

8

Several of the named Plaintiffs fought for non-UFC promotions both before and after their careers in the UFC. For example, Plaintiff Jon Fitch fought for WSOF (which later became PFL) after being cut from the UFC. Plaintiffs believe that Zuffa intends to introduce evidence of allegedly failed PED tests by one or more Plaintiffs during their time fighting for promotions outside of the UFC. *See*, *e.g.*, Declaration of Joseph Saveri filed herewith, ¶ 2. Such evidence has no bearing on any claim or defense in this case and is plainly aimed at inflaming the jury.

9

10

11

12

13

14

15

Evidence is only admissible if it is relevant. Fed. R. Evid. 402. "Courts in the Ninth Circuit routinely grant motions in limine seeking to exclude evidence that is irrelevant to the claims and defenses at issue." *Wells Fargo Bank, N.A. v. LaSalle Bank Nat'l Ass'n*, No. 08-cv-1448, 2011 WL 6300948, at *1 (D. Nev. Dec. 15, 2011) (citing *M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073, 1087-88 (9th Cir. 2005)). Even if evidence may be relevant, it may still be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needless presentation of cumulative evidence. Fed. R. Evid. 403.

16

17

18

19

20

21

22

23

This case is an antitrust lawsuit arising out of Zuffa's acquisition and maintenance of monopsony power over the market for the services of elite professional MMA fighters in violation of Section 2 of the Sherman Act. *See* Pls' Trial Br. (ECF No. 978) at 7-10. The fact that Plaintiff Fitch (or any other plaintiff for that matter) allegedly failed a drug test when outside of the employ of UFC does not go to any element of any claim or defense. The results of these test results are plainly irrelevant. *See Szabo v. Muncy Indus., LLC*, No. 21-cv-00468, 2024 WL 436354, at *5 (M.D. Pa. Feb. 5, 2024) (excluding evidence of drug tests in FLSA case because "It does not matter how good an employee Szabo was, or whether he had disciplinary issues, or why.").

24

25

26

27

*Miljas v. Greg Cohen Promotions, LLC*, No. 20-cv-00320, 2023 WL 2069012 (S.D. Iowa Jan. 23, 2023), is instructive. In *Miljas*, the plaintiff was a boxer who brought claims arising out of an exclusive boxing promotional agreement and sought to exclude evidence of a positive PED test at trial. *See id.* at *1. The court agreed, stating:

28

4

Case No.: 2:15-cv-01045-RFB-BNW

PLAINTIFFS' MOTIONS IN LIMINE NOS. 8 TO 12 TO EXCLUDE UNFAIRLY PREJUDICIAL AND IRRELEVANT EVIDENCE OR TESTIMONY RELATING TO PLAINTIFFS

> This case pertains to a contract dispute. Miljas asserts claims for breach of the Agreement and tort claims arising out of the formation and performance of the Agreement. Defendants' contention that the drug test result is relevant to the case because Cohen vouched for Miljas, allowing him to avoid suspension is a counterfactual not relevant to disprove a breach of contract claim or prove any affirmative defenses to one. Nor is it beneficial to proving or disproving other claims in this case.

*Id.*

Like the test in *Miljas*, Plaintiff Fitch's allegedly positive PED test does nothing to prove or disprove any claim or affirmative defense in this case. The fact that Plaintiff Fitch's allegedly positive test occurred when he was not under contract with the UFC, but with WSOF renders the relevance of the drug test even more attenuated than the excluded test in *Miljas*. The admission of Plaintiffs' non-UFC PED tests thus would only serve to bias, confuse, and inflame the jury.

To the extent Zuffa may seek to introduce Plaintiff Fitch's non-UFC test results under Federal Rule of Evidence 608 as evidence of Plaintiff Fitch's truthfulness, this argument too is misplaced. The fact of an alleged failed drug test has no bearing on Plaintiff Fitch's truthfulness. *See Szabo*, 2024 WL 436354, at *6 (explaining that a "positive drug test is not itself probative of his untruthfulness"). In any event, Rule 403 still dictates that the test be excluded because the danger of prejudice is severe. *See id.* (explaining that "Even if the drug test sheds a pinprick of light on Szabo's truthfulness, the obvious danger of unfair prejudice is that the jury may believe that a plaintiff who is using illicit drugs has not 'earned' the payment of overtime wages to which he is legally entitled and deny his claims on that basis.").

For the foregoing reasons, Plaintiffs request the Court exclude evidence of, or reference to, Plaintiffs' allegedly failed PED tests at any times they were not under contract with Zuffa.

1

2

### III.   MOTION IN LIMINE NO. 10 TO EXCLUDE EVIDENCE OF OR REFERENCE TO CONTRACTS BETWEEN UNIVERSAL STRENGTH HEADQUARTERS AND ITS EMPLOYEES, OR BETWEEN PLAINTIFF CUNG LE AND UNIVERSAL STRENGTH HEADQUARTERS EMPLOYEES

3

4          Plaintiffs seek to exclude evidence of or reference to contracts, agreements, and negotiations

5   between Universal Strength Headquarters ("USH") and its employees, or between Cung Le and USH

6   employees, as irrelevant and unduly prejudicial under Federal Rules of Evidence 401 and 403.

7          Cung Le is a Representative Plaintiff and a member of the Bout Class in this action. *See* Plts.'

8   Trial Br. at 1, ECF No. 978. Le fought for the UFC between 2011 and 2015, and he will testify at trial

9   to his firsthand experience with each element of Zuffa's Scheme and the effects of that Scheme. His

10  testimony will demonstrate how the Scheme operated as a cohesive, interlocking whole to control elite

11  MMA fighters and deprive them of the opportunity to offer their services to multiple reasonably

12  equivalent bidders. *See id.* at 5 (describing how "the three components of Zuffa's Scheme—

13  acquisitions, exclusive contracts, and coercion—operated in concert to lessen competition and injure

14  Class Members").

15         In addition to his work as an MMA fighter, Le owned and operated Universal Strength

16  Headquarters, a private training facility through which Le trained and managed MMA fighters. As

17  addressed in Plaintiffs' Motion in Limine 11 to Exclude Evidence of or Reference to Plaintiffs'

18  Irrelevant Non-UFC Businesses below, Le's ownership of a private gym is irrelevant, as it is not

19  probative of any element of Plaintiffs' claim or Zuffa's defenses, and unduly prejudicial. *See* Fed. R.

20  Evid. 401, 403. However, even if the fact of Le's ownership of USH were relevant, evidence of Le's

21  and USH's contracts, agreements, and negotiations with fighters is independently irrelevant and unduly

22  prejudicial, and such evidence should be excluded under Rules 401 and 403.

23         At his deposition, Le was questioned at length about USH's alleged "exclusive contracts" and

24  sponsorship agreements with its fighters, as well as about a USH fighter whose contract was allegedly

25  terminated for noncompliance with its terms. And, Zuffa has represented its intent to question Le on

26  this subject matter at trial. But whether USH used some form of "exclusive contracts" or entered into

27  certain sponsorship agreements with fighters has no relevance to any disputed issue in this case and

28

should be excluded under Rule 401. Zuffa's apparent belief to the contrary suffers from multiple logical and legal failings.

First, Zuffa does not contend—nor is there any evidence to support—that Le's small, regional gym is in any manner a relevant yardstick to which the UFC should be compared. Nor does Zuffa present any evidence that USH possessed market power or engaged in anticompetitive monopsonistic conduct. The law is clear that contracts that are lawful and benign when used by a firm without market power can be anticompetitive and violate the antitrust laws when used by a monopolist or monopsonist. *See, e.g.*, *Cal. Comput. Prod., Inc. v. Int'l Bus. Machines Corp.*, 613 F.2d 727, 735 (9th Cir. 1979) ("The plaintiff need not show that the . . . monopolist's acts were of a kind that would be unlawful for an ordinary enterprise."); *In re Air Passenger Comput. Rsrvs. Sys. Antitrust Litig.*, 694 F. Supp. 1443, 1463 (C.D. Cal. 1988), *aff'd sub nom. Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536 (9th Cir. 1991). As a result, any evidence that USH used a particular contract provision bears no relevance to the question presented in this case: whether the UFC's Scheme, *in the context of the relevant market*, operated to help Zuffa obtain or maintain monopsony power.

Second, a scheme involving exclusive contracts can only harm competition when the contracts, collectively, foreclose a substantial amount of competition in a relevant market. *See, e.g.*, *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 996 (9th Cir. 2010) (quoting *Omega Envt'l, Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1162 (9th Cir. 1997)). Here, for instance, Dr. Singer shows that Zuffa's contracts foreclose upwards of 90% of the relevant market during the Class Period. *See* **Exh. L,** Expert Report of Dr. Hal J. Singer, Ph.D. ¶¶ 128-29, 167-73 & Fig. 3 (attached to the Declaration of Joseph Saveri in Support of Plaintiffs' Motions in Limine Nos. 4-7). This is well above the 30% threshold deemed sufficient to cause anticompetitive effects. *See, e.g.*, *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 676 F.2d 1291, 1298 (9th Cir. 1982); *Cornwell Quality Tools Co. v. CTS Co., Inc.*, 446 F.2d 825, 831 (9th Cir. 1971). Zuffa nowhere argues, nor could it, that Le's small gym's handful of contracts approached a level of foreclosure more than miniscule. Accordingly, there is no way that Le's contracts with his fighters are in any way similar to Zuffa's Scheme here.

7

Case No.: 2:15-cv-01045-RFB-BNW

PLAINTIFFS' MOTIONS IN LIMINE NOS. 8 TO 12 TO EXCLUDE UNFAIRLY PREJUDICIAL AND IRRELEVANT EVIDENCE OR TESTIMONY RELATING TO PLAINTIFFS

Third, and relatedly, the supposed relevance of this evidence hinges on the same error of law repeated throughout Zuffa's briefing: that each piece of Zuffa's Scheme can and should be disaggregated and evaluated in isolation. Zuffa appears to believe that USH's alleged use of certain exclusive contract provisions or sponsorship agreements is somehow relevant to the legality of its own challenged conduct or the credibility of Le's testimony about that conduct. But Plaintiffs do not, of course, allege that "exclusive contracts" are inherently anticompetitive across every industry and factual context. Instead, as this Court has repeatedly made clear, "the central inquiry . . . is the *overall effect* of the various contract provisions and Defendant's concomitant coercive conduct, rather than the consideration of these different factors in isolation." *Le v. Zuffa, LLC*, 2023 WL 5085064, at *26 (D. Nev. Aug. 9, 2023); *see Le v. Zuffa, LLC*, 216 F. Supp. 3d 1154, 1168 (D. Nev. 2016). In other words, Zuffa's Scheme must be evaluated as a whole, rather than piece-by-piece; evidence that a firm in a different market and without market power employed any particular business practice is not relevant to that central inquiry.

Instead, the clear purpose of this evidence is not to disprove any element of Plaintiffs' claims but rather to bias, confuse, and mislead the jury. Accordingly, even if evidence of USH's contracts and negotiations had any probative value, this evidence should be excluded as unduly prejudicial under Rule 403. Again, no party argues that USH is an appropriate yardstick for the UFC, that USH had market power, or that exclusive contracts are inherently anticompetitive in every factual scenario. Allowing Zuffa to insinuate that USH engaged in the same, or similar, conduct to the UFC—despite lacking any evidence of a legally significant comparison between the two—would serve only to muddle these distinctions, confuse the relevant issues, and prejudice the jury against Le.

For these reasons, Plaintiffs request that the Court evidence of contracts, agreements, and negotiations between Cung Le or USH and USH's fighters, as irrelevant and unduly prejudicial under Federal Rules of Evidence 401 and 403.

IV.    **MOTION IN LIMINE NO. 11 TO EXCLUDE EVIDENCE OF OR REFERENCE TO PLAINTIFFS' NON-UFC BUSINESSES**

This case is about how Zuffa acquired, maintained, and then exercised monopsony power to suppress its fighters' pay and cause other anticompetitive effects. In order to do so, Zuffa excluded and shut down its competitors and locked up its fighters to long-term exclusive contracts that lasted, in effect, in perpetuity or as long as Zuffa wanted them to. Pls. Tr. Brief at 2-3, ECF No 978. What Plaintiffs (or other Class members) decided to do after they left the UFC is plainly irrelevant to any claim or defense in this case. Nonetheless, Plaintiffs believe that Zuffa intends to introduce evidence of Plaintiffs' business ventures after their careers in professional MMA fighting ended, evidence which has no probative value to any claim or defense in this case. Worse still, Zuffa apparently intends to introduce evidence of failed businesses which never got off the ground—such evidence is plainly calculated to do nothing more than to bias and inflame the jury.

The touchstone of admissibility is relevance. Fed. R. Evid. 402. "Courts in the Ninth Circuit routinely grant motions in limine seeking to exclude evidence that is irrelevant to the claims and defenses at issue." *Wells Fargo Bank, N.A. v. LaSalle Bank Nat'l Ass'n*, No. 08-cv-1448, 2011 WL 6300948, at *1 (D. Nev. Dec. 15, 2011) (citing *M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073, 1087-88 (9th Cir. 2005)). Even relevant evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusing or misleading the jury, or the risk of undue delay, wasting time, or the needless presentation of cumulative evidence. Fed. R. Evid. 403.

Plaintiffs anticipate that Zuffa will offer evidence of Plaintiff Nate Quarry's involvement in an upstart Argentinean MMA promotion called Kizuna in 2012, long after Plaintiff Quarry had stopped fighting in the UFC. *See* Declaration of Joseph Saveri filed herewith, ¶¶ 3-4, **Exh. M**, Deposition of Nathan Quarry, at 270:22-271:4. From what Plaintiffs can tell, Zuffa intends to offer evidence that Plaintiff Quarry attempted to promote a professional MMA event in South America, for which Plaintiff Quarry intended to recruit professional MMA fighters. *See id.*

Evidence regarding this business venture is plainly irrelevant. Critically, Kizuna *never* happened. **Exh. M** at 271:5-7 ("Q. Did the event in Argentina happen? A. I don't know. It didn't

happen with me if it did. I don't really have any knowledge of it."). Not one bout was fought, nor one fighter successfully recruited while Plaintiff Quarry was involved with Kizuna. Plaintiff Quarry's South American venture is merely an attempt by Zuffa to create a straw man of competition where there was none. Further, as Plaintiff Quarry explained at his deposition, Kizuna was a "low-level" show, not something on the par with the UFC. **Exh. M** at 272:1-9. Kizuna was never intended to be a spectacle like a UFC event. An upstart South American MMA promotion is simply not comparable to the UFC— not in terms of resources, reach, or market power. It is also outside the relevant geographic market for the case. *See Le v. Zuffa, LLC*, No. 15-cv-01045, 2023 WL 5085064, at *18 (D. Nev. Aug. 9, 2023) ("Finally, the relevant geographic markets for both the input and output markets are 'the United States, and in the alternative, North America.'"); *see also* Topel Dep., at 491:9-16; 493:18-494:3 (Defendant's economist recognizing that MMA markets are regional) (available at ECF No. 596-39).

To the extent Plaintiff Quarry suggested recruiting professional MMA fighters for Kizuna, Plaintiff Quarry readily admitted to his compatriots that this was "all speculation for the upcoming show." DX-0013. Indeed, the fact that Kizuna never happened shows Plaintiff Quarry's statements about recruiting fighters for Kizuna amounted to nothing but idle musings. Evidence of Plaintiff Quarry's involvement in a one-off South American venture therefore has little explanatory value as to any issue set for trial in this case, except perhaps to show the difficulty in competing with the UFC. *See Surface Joint Venture v. E.I. DuPont de Nemours & Co., Inc.*, No. A-02-CA-043, 2003 WL 26101190, at *1 (W.D. Tex. Feb. 3, 2003) (granting motion in limine to exclude irrelevant evidence of "DuPont's carpeting business, and DuPont's Corian business strategies not involving the four companies with which interference is alleged in this lawsuit"). Given that Plaintiff Quarry failed to recruit a single professional fighter for a Kizuna event that never occurred, this evidence should also be excluded because any marginal relevance of this evidence is severely outweighed by the danger of unfair prejudice and confusion of the jury. Fed. R. Evid. 403; *Stone Brewing Co., LLC v. Millercoors LLC*, No. 18-cv-00331, 2021 WL 63139, at *8 (S.D. Cal. Jan. 7, 2021) (excluding evidence and argument regarding other business activities as unduly prejudicial).

For the foregoing reasons, Plaintiffs respectfully request the Court exclude evidence of or reference to Plaintiffs' non-UFC businesses.

PLAINTIFFS' MOTIONS IN LIMINE NOS. 8 TO 12 TO EXCLUDE UNFAIRLY PREJUDICIAL AND IRRELEVANT EVIDENCE OR TESTIMONY RELATING TO PLAINTIFFS

1

2

### V.     MOTION IN LIMINE NO. 12 TO EXCLUDE EVIDENCE OF OR REFERENCE TO THE PROPOSED IDENTITY CLASS

3

4

5

6

7

8

9

10

On August 9, 2023, this Court certified a single "Bout Class" that consisted of "[a]ll persons who competed in one or more live professional UFC-promoted MMA bouts taking place or broadcast in the United States from December 16, 2010 to June 30, 2017," and excluding "all persons who are not residents or citizens of the United States unless UFC paid such persons for competing in a bout fought in the United States." Class Certification Order, ECF 839 at 79. The Court specifically declined to certify a proposed "Identity Class" consisting of fighters "whose Identity was expropriated or exploited by UFC, including in UFC Licensed Merchandise and/or UFC Promotional Materials in the United States from December 16, 2010 to June 30, 2017." *Id.* at 1-2, 75-78.

11

12

13

Given the Court's denial of the proposed Identity Class, references to and evidence regarding the uncertified "Identity Class" is irrelevant, unduly prejudicial, and creates a serious risk of jury confusion pursuant to Federal Rules of Evidence 401, 402, and 403.

14

15

16

17

18

19

20

21

22

23

24

25

26

There appeared to be no dispute about the irrelevance of the Identity Class a few days ago. *See* Defendant Zuffa LLC's Amended Trial Brief, ECF 983 at 48-49 (agreeing that references to the uncertified Identity Class are irrelevant, unduly prejudicial and potentially confusing to the jury). Nor should there be any dispute about the irrelevance of the Identity Class to this case. Discussion of an uncertified class has no arguable relevance to the Bout Class's antitrust claims. As only relevant evidence is admissible, evidence (such as references to an uncertified subclass) that cannot meet this standard is inadmissible. *See* Fed. R. Evid. 402 & 402. Even if references to another uncertified class of fighters were relevant, which it is not, any probative value of such references would be substantially outweighed by a danger of needlessly confusing or misleading the jury in this already complicated antitrust class action and should be barred by Fed. R. Evid. 403. "Courts in the Ninth Circuit routinely grant motions *in limine* seeking to exclude evidence that is irrelevant to the claims and defenses at issue." *Wells Fargo Bank, N.A. v. LaSalle Bank Nat'l Ass'n*, No. 08-cv-1448, 2011 WL 6300948, at *1 (D. Nev. Dec. 15, 2011) (citing *M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073, 1087-88 (9th Cir.

27

28

2005)); *see, e.g., Andrews v. Plains All American Pipeline, LP,* 2021WL 5283945 at *3 (C.D. Cal. Nov. 5, 2021) (granting motion in limine barring references to decertified class).

Plaintiffs informed Zuffa that (i) Plaintiffs have no intention of referencing the proposed but uncertified "Identity Class;" and (2) Plaintiffs are not seeking damages based on a theory relating to disputes over athlete likeness rights. Despite agreeing that the "Identity Class" has no relevance to this case, Zuffa refused to agree to mutual straight-forward stipulation barring Identity Class references and evidence from both parties at trial. Zuffa refused to mutually stipulate to exclude Identity Class unless Plaintiffs also agreed to refrain from not only from referencing the Identity Class but also from introducing evidence that is relevant to the claims at issue in this case, namely evidence concerning the negotiations and disputes between the class of fighters in the Bout Class and Zuffa concerning Bout Class members' likeness rights. Unlike references to the uncertified Identity Class, evidence that shows that Zuffa used disputes relating to fighter likeness rights to assert leverage over Fighters in the Bout Class as part of Zuffa's anticompetitive scheme against the Bout Class.

Evidence of the negotiation of and disputes relating to UFC fighter likeness rights, and the UFC's use of leverage as part of its efforts to coerce the fighters into renewing their promotional and ancillary rights agreements, and other long-term commitments to Zuffa is highly relevant to Plaintiffs' proof of the challenged Scheme in this case, which includes acquisitions, exclusive contracts, and coercion. While evidence about the identity class has no relevance and is likely to confuse a jury, evidence concerning Zuffa's leveraging fighters using likeness rights is probative of the fact that UFC exerted tremendous leverage and control over the Bout Class fighters, which in turn demonstrates the anticompetitive scheme Plaintiffs allege.

The Court should not require Plaintiffs to enter a quid pro quo with Zuffa which would require them to trade an agreement to refrain from introducing irrelevant Identity Class evidence (which both sides admit is irrelevant) in exchange for a bar to relevant, probative, non-prejudicial evidence concerning one of the many ways Zuffa coerced Bout Class fighters.

For the foregoing reasons, Plaintiffs request the Court exclude evidence of, or reference to, identity class.

1    Dated: February 29, 2024                    Respectfully submitted,

2                                                */s/ Joseph R. Saveri*

3                                                Joseph R. Saveri (*pro hac vice*)
     Kevin E. Rayhill (*pro hac vice*)

4                                                Christopher Young (*pro hac vice*)
     Itak Moradi (*pro hac vice*)

5                                                JOSEPH SAVERI LAW FIRM, LLP
     601 California St., Suite 1000

6                                                San Francisco, CA 94108
     Telephone: +1 (415) 500-6800

7                                                Facsimile: +1 (415) 395-9940

8                                                Email: jsaveri@saverilawfirm.com
     Email: krayhill@saverilawfirm.com

9                                                Email: cyoung@saverilawfirm.com
     Email: imoradi@saverilawfirm.com

10

11                                               */s/ Eric L. Cramer*
     Eric L. Cramer (*pro hac vice*)

12                                               Michael C. Dell'Angelo (*pro hac vice*)
     Patrick F. Madden (*pro hac vice*)

13                                               Ellen T. Noteware (*pro hac vice*)
     Najah Jacobs (*pro hac vice*)

14                                               BERGER MONTAGUE PC

15                                               1818 Market St., Suite 3600
     Philadelphia, PA 19103

16                                               Telephone: +1 (215) 875-3000
     Email: ecramer@bm.net

17                                               Email: mdellangelo@bm.net
     Email: pmadden@bm.net

18                                               Email: enoteware@bm.net
     Email: njacobs@bm.net

19

20                                               Joshua P. Davis (*pro hac vice*)
     BERGER MONTAGUE PC

21                                               505 Montgomery Street, Suite 625
     San Francisco, CA 94111

22                                               Telephone: +1 (415) 906-0684
     Email: jdavis@bm.net

23

24                                               Richard A. Koffman (*pro hac vice*)
     Benjamin Brown (*pro hac vice*)

25                                               Daniel Silverman (*pro hac vice*)
     Daniel L. Gifford (*pro hac vice*)

26                                               COHEN MILSTEIN SELLERS & TOLL, PLLC
     1100 New York Ave., N.W., Suite 500 East, Tower

27                                               Washington, DC 20005
     Telephone: +1 (202) 408-4600

28

---

                                    14                     Case No.: 2:15-cv-01045-RFB-BNW
     PLAINTIFFS' MOTIONS IN LIMINE NOS. 8 TO 12 TO EXCLUDE UNFAIRLY PREJUDICIAL AND IRRELEVANT EVIDENCE
                          OR TESTIMONY RELATING TO PLAINTIFFS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Facsimile: +1 (202) 408-4699
Email: rkoffman@cohenmilstein.com
Email: bbrown@cohenmilstein.com
Email: dsilverman@cohenmilstein.com
Email: dgifford@cohenmilstein.com

*Co-Lead Counsel for the Class and Attorneys for
Individual and Representative Plaintiffs*

Don Springmeyer (Bar No. 1021)
KEMP JONES, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
Telephone: + 1 (702) 385-6000
Facsimile: + 1 (702) 385-6001
Email: dspringmeyer@kempjones.com

*Liaison Counsel for the Class and Attorneys for
Individual and Representative Plaintiffs*

Robert C. Maysey (pro hac vice)
Jerome K. Elwell (pro hac vice)
WARNER ANGLE HALLAM JACKSON &
FORMANEK PLC
2555 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Telephone: +1 (602) 264-7101
Facsimile: +1 (602) 234-0419
Email: rmaysey@warnerangle.com
Email: jelwell@warnerangle.com

Crane M. Pomerantz
CLARK HILL PLC
1700 Pavilion Center Dr.
Suite 500
Las Vegas, NV 89135
Telephone: +1 (702) 697-7545
Email: cpomerantz@clarkhill.com

*Additional Counsel for the Class and Attorneys for
Individual and Representative Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 29th day of February, 2024 a true and correct copy of

PLAINTIFFS' MOTIONS IN LIMINE NOS. 8 TO 12 TO EXCLUDE UNFAIRLY PREJUDICIAL

AND IRRELEVANT EVIDENCE OR TESTIMONY RELATING TO PLAINTIFFS was served via

the District Court of Nevada's ECF system to all counsel of record who have enrolled in this ECF

system.

*/s/ Joseph R. Saveri*
Joseph R. Saveri
