ERIC L. CRAMER (*pro hac vice*)
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
ecramer@bm.net

JOSEPH R. SAVERI (*pro hac vice*)
JOSEPH SAVERI LAW FIRM, LLP
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
jsaveri@saverilawfirm.com

RICHARD A. KOFFMAN (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., N.W., Suite 500, East Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408 4699
rkoffman@cohenmilstein.com

*Counsel for the Class and Attorneys for All
Individual and Representative Plaintiffs*

[Additional Counsel Listed on Signature Page]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>Defendant. | Case No. 2:15-cv-01045-RFB-BNW<br><br>**PLAINTIFFS' MOTIONS IN LIMINE NOS. 13 TO 17 TO EXCLUDE UNFAIRLY PREJUDICIAL, IRRELEVANT, OR UNSUBSTANTIATED EVIDENCE OR TESTIMONY RELATING TO ZUFFA OR THE UFC** |

**TABLE OF CONTENTS**

Page(s)

I.  MOTION IN LIMINE NO. 13 TO EXCLUDE EVIDENCE OF ECONOMIC BENEFITS OR CHARITABLE CONTRIBUTIONS OF ZUFFA OR THE UFC TO THE LAS VEGAS COMMUNITY OR ANY OTHER GEOGRAPHIC REGION .................................................. 1

II. MOTION IN LIMINE NO. 14 TO EXCLUDE SPECULATION BY LAY WITNESSES OR UNSUBSTANTIATED OPINIONS OF ZUFFA'S PROPOSED EXPERTS REGARDING THE FINANCIAL CONDITION OF PROMOTERS THAT ZUFFA ACQUIRED BETWEEN 2006 AND 2011 ............................................................................... 4

III. MOTION IN LIMINE NO. 15 TO EXCLUDE EVIDENCE OF OR REFERENCE TO ZUFFA OR UFC SERVING AS A BUSINESS SCHOOL CASE STUDY, INCLUDING WITHOUT LIMITATION EVIDENCE RELATING TO PROPOSED DX-794 ...................... 7

IV. MOTION IN LIMINE NO. 16 TO EXCLUDE UFC VIDEO CLIPS THAT ARE (1) HEARSAY; (2) UNAUTHENTICATED; (3) LACK SPONSORING WITNESSES, (4) WERE NOT PRODUCED IN DISCOVERY, (5) ARE SUBJECT TO EXCLUSION BASED ON OTHER MOTIONS IN LIMINE; AND, (6) NOT RELEVANT TO ANY CLAIM OR DEFENSE IN THIS LITIGATION .................................................................. 10

V.  MOTION IN LIMINE NO. 17 TO EXCLUDE REFERENCE OR ARGUMENT ABOUT THE EFFECT OF A VERDICT IN THIS CASE ON THE LAS VEGAS COMMUNITY OR ANY OTHER GEOGRAPHIC REGION .......................................................................... 14

## I. MOTION IN LIMINE NO. 13 TO EXCLUDE EVIDENCE OF ECONOMIC BENEFITS OR CHARITABLE CONTRIBUTIONS OF ZUFFA OR THE UFC TO THE LAS VEGAS COMMUNITY OR ANY OTHER GEOGRAPHIC REGION

Plaintiffs Cung Le, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury ("Plaintiffs") submit this Motion in Limine to exclude evidence of economic benefits or charitable contributions made by Zuffa or the UFC. Zuffa has already agreed to exclude reference to charitable contributions made by current or former Zuffa executives and employees, and Plaintiffs have agreed to exclude the same for themselves and their witnesses. But Zuffa has represented that it intends to introduce evidence of its charitable efforts as a company. Such evidence should be excluded; it has no probative value in this case, has the potential to prejudice and/or confuse the jury, and is also improper propensity evidence.

Zuffa's charitable spending is not relevant to this case. At issue, instead, is whether Zuffa violated the antitrust laws by leveraging monopsony power to shut down competition and suppress fighter pay. To that end, Zuffa intends to exclude information relating to its executives' spending of profits, and Plaintiffs have agreed that such individual spending is irrelevant. Corporate non-business-related spending by Zuffa isn't relevant, either. Zuffa purportedly intends to present evidence of its charitable efforts to rebut Plaintiffs' evidence of corporate waste on private jets and the like. But Plaintiffs seek to present that evidence not to put Zuffa in a bad light, but to rebut Zuffa's intended argument that it did not have the funds to pay competitive wages to its fighters during the Class Period. Zuffa clearly did have such funds, as the evidence will show. Its corporate waste on private jets, as well as the extraordinary multi-hundred-million-dollar dividends to its three private shareholders are evidence of that. But Zuffa's spending on charity is irrelevant because it is not responsive to the point to which Plaintiffs are submitting evidence of corporate expenditures and is otherwise inadmissible as set forth below. Zuffa's charitable efforts have no probative value.

Courts routinely exclude this kind of evidence on relevance grounds. *E.g.*, *Shenwick v. Twitter, Inc.*, No. 16-cv-05314, 2021 WL 1232451, at *6 (N.D. Cal. Mar. 31, 2021) ("Plaintiffs seek to exclude evidence or argument at trial regarding charitable contributions, philanthropy, or non-profit work by or on behalf of Twitter, the Individual Defendants, or any witness. The motion is granted. Evidence of

good acts is irrelevant to the question of whether the Twitter Defendants violated the securities laws or to the credibility of any witness."); *United States ex rel. Kiro v. Jiaherb, Inc.*, No. CV 14-2484, 2019 WL 2869186, at *4 (C.D. Cal. July 3, 2019) ("Relator's MIL #7 requests that Defendant be precluded from introducing evidence regarding supposed 'good acts,' such as charitable contributions or community service performed by Defendant or its employees. The Court agrees and finds that any such evidence of 'good acts' is irrelevant to the alleged scheme of whether Defendant knowingly submitted false claims to CBP to receive lower duties."); *Fitzhenry-Russell v. Keurig Dr. Pepper Inc.*, No. 17-cv-564, 2018 WL 10476581, at *2 (N.D. Cal. Dec. 10, 2018) (granting plaintiffs' motion "to exclude evidence regarding Dr. Pepper's 'good corporate character'" because "Dr. Pepper's good corporate character is irrelevant to whether its advertisements were misleading or false"). This Court should do the same here.

Evidence or argument by Zuffa that it has contributed to charity or economically benefitted the Las Vegas (or any other) region also presents an unacceptably high risk of biasing or confusing the jury. Given the lack of probative value explained above, Rule 403 provides another ground to exclude the evidence. *See Universal Elecs., Inc. v. Universal Remote Control, Inc.*, No. SACV 12-329, 2014 WL 8096334, at *6 (C.D. Cal. Apr. 21, 2014) (granting Plaintiffs' Motion in Limine, which had argued that it would be "unfairly prejudicial under Rule 403" for Defendants to "elicit[ ] testimony about charitable donations by its CEO…or suggest[ ] that Plaintiff's claim for patent infringement…has taken or will take money and time away from his charities"); *Oil-Dri Corp. of Am. v. Nestle Purina PetCare Co.*, No. 15 C 1067, 2019 WL 1098925, at *5 (N.D. Ill. Mar. 8, 2019) (excluding "testimony, other evidence, or argument" that defendant "is a 'good company' [or] "good corporate citizen" because the "evidence is irrelevant…and even if arguably has some probative value, it is far outweighed by the likelihood of jury confusion and unfair prejudice to" the plaintiff). At bottom, the jury should decide this case based on application of antitrust law, not by "consider[ing] the impact their verdict might have on such" "charitable works," "viewing the trial as a referendum on those activities," or "on the basis of sympathy[.]" *In re 650 Fifth Ave. & Related Props.*, No. 08 CIV. 10934, 2017 WL 2214869, at *15–16 (S.D.N.Y. May 18, 2017) (*rev'd on other grounds*).

Finally, to the extent Zuffa seeks to offer evidence of its charitable activity or positive community impact as evidence that it is a "good corporate citizen," it should additionally be barred by prohibitions against character evidence. That is, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character trait." Fed. R. Evid. 404(a)(1). This prohibition applies not only regarding individuals, but also corporate entities. *E.g., In re Bard IVC Filters Prod. Liab. Litig.*, No. CV-16-00474, 2018 WL 934795, at *2 (D. Ariz. Feb. 15, 2018) ("Countering Plaintiffs' punitive damages arguments does not mean, however, that Defendants can present irrelevant evidence or try this case on the basis of corporate character. *See* Fed. R. Evid. 404(a)."); *In re Tesla, Inc. Sec. Litig.*, No. 18-CV-04865-EMC, 2022 WL 17582008, at *16 (N.D. Cal. Dec. 7, 2022) ("Defendants acknowledge that character evidence such as charitable acts is generally inadmissible."); *In re: Tylenol (Acetaminophen) Mktg.*, No. 2436, 2016 WL 3125428, at *11 (E.D. Pa. June 3, 2016) ("Evidence of the defendants' 'good corporate character' is not admissible in the defendants' case-in-chief under Rule 404(a). Evidence of the defendants' charitable work would have no probative value."). Zuffa should not be permitted to put on irrelevant and inadmissible evidence to place itself in a positive light.

For the foregoing reasons, the Court should exclude any evidence of charitable acts by Zuffa and community economic benefit therefrom.

1  II.  **MOTION IN LIMINE NO. 14 TO EXCLUDE SPECULATION BY LAY WITNESSES OR UNSUBSTANTIATED OPINIONS OF ZUFFA'S PROPOSED EXPERTS REGARDING THE FINANCIAL CONDITION OF PROMOTERS THAT ZUFFA ACQUIRED BETWEEN 2006 AND 2011**

Zuffa's lay witnesses should be precluded from offering either fact or opinion testimony not based on personal knowledge regarding the financial condition of MMA promoters Zuffa acquired between 2006 and 2011. Even if Zuffa witnesses have personal knowledge of the general financial condition of a promotion, they should be precluded from testifying about the source of any alleged financial difficulties on the basis of speculation or hearsay. Zuffa's expert witnesses should similarly be precluded from offering such testimony to the extent that it is based on inadmissible evidence and does not inform their expert analysis or opinions. Finally, to the extent that Zuffa is unable to produce admissible evidence for the supposedly poor financial condition of each of these acquired entities, Zuffa witnesses should be precluded from referring to the promotions as a group as "failing" or "going out of business."

Rule 602 requires that witnesses have "knowledge produced by the direct involvement of the senses" in order to testify on a given matter. *United States v. Lopez*, 762 F.3d 852, 863-864 (9th Cir. 2014). Rule 701(a) similarly "contains a personal knowledge requirement" for lay opinion testimony. *See id.* at 864; *see also* Fed. R. Evid. 701 ("If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception . . . ."). However, Zuffa's witnesses have offered opinions about the financial condition of promotions Zuffa acquired without establishing sufficient basis for personal knowledge. *See, e.g.*, **Exh. N**, Aug. 9, 2017 Deposition of Dana White, at 128:11-15 ("Q: How do you decide when to acquire a competitor of the UFC? A: Well, most of them – most of them were for sale. They were going out of business and they were for sale.").[1] Indeed, they have sometimes admitted their opinions are pure speculation. *See, e.g.*,

---

[1] Exhibit citations are to the Declaration of Joseph Saveri attached hereto unless otherwise indicated.

4    Case No.: 2:15-cv-01045-RFB-BNW
PLAINTIFFS' MOTIONS IN LIMINE NOS. 13 TO 17 TO EXCLUDE UNFAIRLY PREJUDICIAL, IRRELEVANT, OR UNSUBSTANTIATED EVIDENCE OR TESTIMONY RELATING TO ZUFFA OR THE UFC

**Exh. O,** Dec. 2, 2016 30(b)(6) Deposition of Lawrence Epstein, at 87:10-11 ("The business was failing because they couldn't manage it properly, *I assume*") (emphasis added).[2]

Further, even where Zuffa witnesses have personal knowledge of the financial condition of a promotion Zuffa acquired, they should not be permitted to speculate or relay hearsay about the source of any alleged financial difficulties. The basis for specific evidence about certain promotions is hearsay. For example, evidence that one of the promotions Zuffa acquired lost a television deal because of reports that the promotion had ties to Japanese organized crime is based on media reports. *See,* **Exh. N** at 153:3-9 ("A: Pride was—was a money laundering deal for the Yakuza. Q: How did you learn that news? A: Because they got kicked off television in Japan because of it. Q: And that was reported in early 2006? A: In Japan, yeah."). Testimony by Zuffa witnesses about this alleged connection causing Pride to lose a television deal is therefore two levels of hearsay. *See Larez v. City of Los Angeles*, 946 F.2d 630, 642-44 (9th Cir. 1991) (finding newspaper article inadmissible hearsay). Testimony that the loss of this deal placed the promotion in dire financial straits is speculation.

Nor should Zuffa's experts be permitted to parrot insufficiently supported or hearsay testimony by Zuffa executives regarding these promoters' financial condition. "Rule 703 generally allows experts to rely on otherwise inadmissible evidence in formulating their opinions 'if experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject.'" *Jensen v. EXC, Inc.*, 82 F.4th 835, 847 (9th Cir. 2023) (quoting Fed. R. Evid. 703) (brackets omitted). However, an expert may not use inadmissible evidence "as general proof of the truth of the underlying matter." *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1262 (9th Cir. 1984) (quotations omitted). Here, Dr. Topel opined that Pride, Affliction, and Strikeforce were "failing competitors" of Zuffa's, citing, *inter alia*, the depositions of Zuffa executives. **Exh. F** at 33-34 (attached to the Declaration of Joseph Saveri in Support of Plaintiffs' Motions in Limine Nos. 4-7). Other than characterizing the promotions as failing, Dr. Topel did not offer any opinion or use his expertise in any way to perform

---

[2] As a witness testifying under Rule 30(b)(6), Mr. Epstein's testimony is not constrained by his personal knowledge, but by the information "reasonably known by the responding entity." *Great Am. Ins. Co. of N.Y. v. Cegas Const. Co., Inc.*, 251 F.R.D. 534, 539 (D. Nev. 2008) (quotations omitted). Nevertheless, he is not permitted to merely speculate about the promoters' financial conditions.

analysis on the basis of these statements. Accordingly, to the extent that the testimony underlying the opinion is inadmissible, Dr. Topel should not be permitted to repeat inadmissible statements solely because of his purported expert status. In any event, Dr. Topel is an economist, not a business valuation expert.

As Zuffa has not set forth admissible evidence that each of these promotions was in poor financial condition, its witnesses should be precluded from referring to the promotions as a group as "failing" or "going out of business." Zuffa plans to suggest that these promotions were on the verge of leaving the marketplace in order to counter Plaintiffs' properly admissible evidence—including from Zuffa's own files and witnesses—demonstrating that Zuffa acquired these promotions to eliminate its competition. For instance, an internal Zuffa memo shows that Zuffa acquired World Fighting Alliance as "a defensive strategy to eliminate a second tier competitive brand operating in the Las Vegas market." **Exh. P,** Zuffa, LLC Intangible Asset Treatment Discussion Memo, at 7. Regarding Zuffa's acquisition of Pride, Zuffa's outside counsel Thomas Paschall noted "[g]iven the strategic/preemptive nature of this acquisition (ie to stop others from buying it) and your having seriously contemplated acquiring them only to shut down their business and utilize their fighters in the UFC, we set a low threshold of due diligence before the deal became binding on both sides." **Exh. Q,** Jan. 31, 2007 Paschall Email, at 1. After Zuffa acquired Affliction, UFC's Assistant General Counsel Michael Mersch wrote in an email that "[o]ur main rival is done." **Exh. R**, July 24, 2009 Mersch Email. If Zuffa is permitted to elide its lack of proof as to individual promoters by making general statements that all of the promotions it acquired were failing, Plaintiffs will be unfairly prejudiced.

### III. MOTION IN LIMINE NO. 15 TO EXCLUDE EVIDENCE OF OR REFERENCE TO ZUFFA OR UFC SERVING AS A BUSINESS SCHOOL CASE STUDY, INCLUDING WITHOUT LIMITATION EVIDENCE RELATING TO PROPOSED DX-794

Defendant Zuffa's proposed trial exhibit DX-0794 (**Exh. S**) is an email to Zuffa CEO, Lorenzo Fertitta, forwarding a draft mock-up of a proposed curriculum to teach a Harvard Business School (HBS) case study on UFC about UFC's history, regulatory challenges, and revenue and attendance data on MMA events from the 1990s and 2000s. The document is dated July 9, 2011 and does not appear to have ever been published.

The bases on which Plaintiffs seek to exclude evidence of or any reference relating to this document include that it (1) is irrelevant to any issue the jury will decide, (2) constitutes impermissible expert material, (3) will unduly prejudice Plaintiffs by misleading the jury if permitted, and (4) is inherently unreliable given numerous other insurmountable evidentiary issues, including multiple levels of hearsay, incompleteness, and authentication problems.

The touchstone of admissibility is relevance, and evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401 & 402. Even if evidence could qualify as relevant under Federal Rule of Evidence 401, it will be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Evidence is unfairly prejudicial if it has an undue tendency to suggest a decision by the jury on an improper basis. *Tennison v. Circus Circus Enters., Inc.*, 244 F.3d 684, 690 (9th Cir. 2001).

HBS's opinions or analyses on UFC's business model are not germane to the case. This exhibit—which is in draft form, with comment bubbles, and a unilaterally withheld page labeled as "non-responsive"—has no tendency to make any fact in dispute more or less probable. Fed. R. Evid. 401. What a professor at Harvard appears to think or believe, based on an unknown and untested level of knowledge or study, about the UFC is wholly irrelevant to the claims or defenses at issue for trial.

Indeed, such evidence should be excluded as an attempt to present the jury with expert material under the guise of lay witness evidence. Federal Rule of Evidence 701 bars fact witnesses from offering

opinion testimony unless it is "(a) rationally based on the witness's perception, (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Rule 701 safeguards against improper introduction of expert testimony and material. *See* Fed. R. Evid. 701 advisory committee notes to 2000 amendment. ("[T]he distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field.") (quotation marks and citations omitted). The advanced process of reasoning required to be qualified as an expert carries with it an indicium of reliability. Indeed, for this reason expert witnesses enjoy "testimonial latitude unavailable to other witnesses on the assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 138 (1999).

The evidence at issue qualifies as technical or other specialized knowledge within the scope of Rule 702 because it sets forth data and tables purportedly created by unidentified "casewriters." But these anonymous authors are not experts in this case, have not had access to the record in this case, and Plaintiffs have had no opportunity to vet the data proffered or investigate the sources thereof, let alone test any of the methodologies employed through cross-examination or pose any necessary rebuttals. Indeed, because much of the record of the UFC's alleged misconduct in this case was under seal for most of the length of this case, the authors of the HBS document would not have had access to the full range of materials to provide a balanced analysis of the UFC's growth and development. Zuffa is attempting to circumvent the Federal Rules of Evidence to impermissibly include expert material without going through the necessary safeguards designed to shield the jury from precisely such unexamined material. *See Olinger v. U.S. Golf Ass'n*, 52 F. Supp. 2d 947, 950 (N.D. Ind. 1999) (granting motion in limine to exclude proposed expert testimony where expert "employ[ed] an undisclosed methodology to arrive at undisclosed opinions").

Zuffa has not identified a witness on its witness list that could try to lay a foundation for any substantive aspect of this document, expert or otherwise. Presumably, the only foundational testimony

Zuffa could offer would be from Mr. Fertitta testifying to the fact of receipt of this authorization—testimony which has zero probative value. And Mr. Fertitta is certainly not qualified as an expert to testify as to the methodologies and conclusions contained in the document. *See Ely v. Cnty. of Santa Barbara*, No- CV 20-6549, 2022 WL 18356630, at *7 (C.D. Cal. July 25, 2022) ("[a lay witness] cannot assume the role of the expert herself or speculate as to what an expert might conclude"). On the other hand, such testimony could pose a risk that jurors, based on Harvard's sheer name recognition, would draw improper inferences that Zuffa's conduct was above-board or positive. Allowing such evidence would cause the jury to draw "perfectly logical—though mistaken—inferences." *United States v. Lawrence*, 189 F.3d 838, 843 (9th Cir. 1999).

Moreover, this evidence includes information dating back to 1993 that falls well within the ambit of Plaintiffs' Motion in Limine No. 18. MIL 18 seeks to exclude the introduction of any material at trial that is dated before 2005 and that Zuffa refused to produce in discovery—*including a "smorgasbord" of hardcopy materials Zuffa represented to the Court were identified but that it would not review in detail*—after taking the position that such material was irrelevant and not probative. *See* Tr. of Nov. 17, 2015 Hearing at 11:2-12:10. As set forth in that MIL, Zuffa ultimately agreed only to produce fighter contracts, correspondence files for fighters in the Class, and some sponsorship and venue material, while denying Plaintiffs material that likely falls squarely on the topics actually addressed in the case study draft—including regulatory history of UFC, the purchase of UFC, and revenue in the early 2000s. It would be highly prejudicial to allow Defendant to have its witnesses testify to in relation to events, conduct and facts relying on such data and information. The disputed exhibit thus circumvents the issues in PMIL No. 18 as well.

The risk of prejudice and jury confusion is so high, with the probative value so low, that both DX-794 and any other irrelevant evidence, argument, or testimony about UFC being a case study for business schools should be excluded under Rules 401, 403, and 701.

**IV.    MOTION IN LIMINE NO. 16 TO EXCLUDE UFC VIDEO CLIPS THAT ARE (1) HEARSAY; (2) UNAUTHENTICATED; (3) LACK SPONSORING WITNESSES, (4) WERE NOT PRODUCED IN DISCOVERY, (5) ARE SUBJECT TO EXCLUSION BASED ON OTHER MOTIONS IN LIMINE; AND, (6) NOT RELEVANT TO ANY CLAIM OR DEFENSE IN THIS LITIGATION**

Plaintiffs seek to exclude eighty-five (85) video and audio files (the "Clips") that Zuffa has included on its exhibit list, totaling over *nine hours* of runtime. Specifically, Zuffa's trial exhibit list, exchanged with Plaintiffs on February 8, 2024, contains 84 video clips and 1 audio clip that are all inadmissible under the Federal Rules of Evidence for the reasons set forth below. A chart containing all 85 of the video and audio exhibits is attached hereto as **Exhibit Z-1**.

First, all eighty-five of the Clips are hearsay and should be excluded under Fed. R. Evid. 802. None of these Clips meet the standard for an exception to the hearsay bar under the Federal Rules of Evidence. Many of these Clips are mere puff pieces that Zuffa put together that meet no exception to the Federal Rules' bar of hearsay. *See id., e.g.*, DX-0111 (a 45-minute puff piece Zuffa produced on Zuffa's origin and expansion to United Arab Emirates featuring out-of-court statements by numerous non-witnesses and Zuffa's executives); DX-0112 (similar 15-minute puff piece on UFC's expansion to United Arab Emirates); DX-0113 (similar 27-minute puff piece on the UFC's business and history, featuring the owners of Zuffa); DX-0565 (1.5 minute advertisement for UFC as a company). Other Clips contain graphics and written statements of purported facts and vague assertions, often without any citation or basis. *E.g.*, DX-0564 (including statements like "THE **FASTEST GROWING SPORTS** ORGANIZATION IN **HISTORY,**" "**MMA** IS SECOND ONLY TO **SOCCER** IN W**ORLD APPEAL**," and "UFC IS THE **LARGEST** PAY PER VIEW EVENT PROVIDER **IN THE WORLD**" (emphasis in original)); DX-0735 ("OVER 260,000,000 FANS GLOBALLY," "YOUNGEST FAN BASE AMONG MAJOR SPORTS," and "ONE OF THE LONGEST RUNNING REALITY TV PROGRAMS"). On the whole, all of these Clips are hearsay and none meet an exception to the hearsay bar under Fed. R. Evid. 802 and thus all should be excluded.

Second, none of the Clips were authenticated and no foundation has been laid. The identity of who created the Clips, when, for what purpose, etc. has not been provided in the record for nearly all of

the Clips.[3] Indeed, some of these Clips have narrators who are not identified in the Clip making objectionable commentary without any foundation whatsoever. Zuffa has not disclosed who created the Clips, who the narrators are, and other key information for authentication purposes. Additional Clips do not appear to have been created by Zuffa at all. **Exhibit Z-2** lists fifteen (15) Clips that do not appear to have been created by Zuffa.[4] All of these Clips, including but not limited to the fifteen Zuffa did not create, should thus also be excluded pursuant to Fed. R. Evid. 901.

Third, relatedly, there is no sponsoring witness for these Clips, making exclusion proper under Fed. R. Evid. 602. Similarly, many of these videos feature individuals who are not on the parties' witness lists. **Exhibit Z-3** lists fifty-six (56) Clips that feature individuals who are not on the parties' witness lists. Absent the proper witnesses to sponsor the portions of the Clips featuring the witnesses, the Clips cannot be properly introduced and should be excluded. Other Clips feature individuals who are subject to another of Plaintiffs' MILs because Zuffa did not timely disclose the witnesses. *See* **Exh. Z-4** (listing twenty-five (25) Clips featuring fighters subject to Plaintiffs' Motion in Limine No. 1).[5] To the extent the Court grants all or part of the motion in limine concerning those late-disclosed witnesses, the Clips featuring those excluded witnesses would also lack a sponsoring witness, and the Court should exclude those Clips as well. On the whole, all fifty-six exhibits featuring individuals not listed on the exhibit list and the twenty-five Clips featuring individuals that should be stricken from Zuffa's witness list should be excluded for lack of a sponsoring witness.

---

[3] In limited circumstances, some of that information has been provided. For example, DX-0111 contains credits at the end of the puff piece which provides some information about who may have been involved in creating that Clip, but none of those involved is on Zuffa's witness list, nor do the credits meet appropriate standards to ensure accuracy or trustworthiness.

[4] Because Zuffa has not supplied information sufficient to determine who created the Clips, it is not clear whether other of the Clips not listed in Exhibit B also suffer this defect.

[5] A limited number of Clips feature some combination of individuals not on a witness list, a late-disclosed witness subject to Plaintiffs' Motion in Limine No. 1, and/or a witness on a party's witness list. All of such Clips are hearsay and lack authentication and should be excluded on those grounds (and others in this Motion to the extent such other grounds apply). The portions of such Clips that lack a proper sponsoring witness, *i.e.*, because they do not include an individual properly on a party's witness list should also be excluded for lack of a proper sponsoring witness even where other portions of the Clips could have a sponsoring witness.

1          Fourth, thirty-seven (37) of the Clips were not produced in discovery in this case. Specifically,
2  eighteen (18) of the Clips were only produced in discovery in *Johnson v. Zuffa, LLC*, No. 21-cv-1189
3  (D. Nev.). *See* **Exh. Z-5** (listing the Clips produced only in *Johnson*). The Court explicitly rejected
4  Zuffa's effort to smuggle discovery from *Johnson* into the *Le* trial. *See* ECF No. 922. Another nineteen
5  (19) of the Clips were not produced in discovery at all. *See* **Exh. Z-6** (listing the Clips not produced in
6  discovery in either *Johnson* or *Le*). Of course, by not producing them at all, Zuffa cannot circumvent
7  the Court's denial of Zuffa's effort to import *Johnson* discovery into this *Le* trial. None of these thirty-
8  seven late Clips was provided to Plaintiffs prior to 2024, and the nineteen most recently produced Clips
9  were not provided until mid-February 2024, just two months before trial. Zuffa has offered no excuse
10 for not having produced these Clips. Indeed, one of the UFC-created Clips feature a named Plaintiff
11 (DX-0810), and thus should have been produced in response to Plaintiffs' Request for Production of
12 Documents No. 43, which sought "All Documents discussing or relating to Plaintiffs…" *See* **Exh. A** to
13 Plaintiffs' MIL No. 1, at 30.  Defendant cannot withhold Clips featuring Plaintiffs from discovery in *Le*
14 and then use those Clips at trial. In any event, Courts in the Ninth Circuit routinely grant motions in
15 limine to exclude witnesses or evidence that was not disclosed or produced during discovery. *See, e.g.*,
16 *Cornell v. Wal-Mart Stores, Inc.*, 2010 WL 11591395, at *7 (D. Nev. Jan. 26, 2010) (quoting Fed. R.
17 Civ. P. 37(c)(1)) (granting MIL to exclude evidence and witnesses not disclosed during discovery); *Bob*
18 *Barker Co. v. Ferguson Safety Prod., Inc.*, 2007 WL 4554012, at *1 (N.D. Cal. Dec. 4, 2007) (same);
19 *Viasphere Int'l, Inc. v. Vardanyan*, 2014 WL 12709000, at *1 (N.D. Cal. Feb. 24, 2014) (same); *Zeen*
20 *v. Cnty. of Sonoma*, 2018 WL 3769867, at *3 (N.D. Cal. Aug. 9, 2018) (same). The Court should
21 exclude these thirty-seven Clips as untimely produced and identified.
22         Fifth, certain of the Clips concern matters that are objectionable due to other of Plaintiffs'
23 motions in limine. For example, **Exh. Z-7** lists three puff pieces describing matters taking place prior to
24 2005 on which Zuffa did not participate in discovery. These Clips are thus excludable under the
25 reasoning described in Plaintiffs' MIL No. 18. As noted above, twenty-five Clips feature individuals
26 that Zuffa did not timely disclose and are therefore subject to Plaintiffs' MIL No. 1. *See* **Exh. Z-4**;
27 PMIL No. 1. Still other Clips feature events and circumstances occurring after June 30, 2017, making
28

such Clips excludable pursuant to Plaintiffs' Motion in Limine No. 3. *See* **Exh. Z-8**. DX-0550 appears to reflect charitable contributions that Plaintiffs' Motion in Limine No. 13 seeks to exclude. The Court should exclude these Clips for the reasons stated in those motions in limine in addition to the bases described here.

Sixth, none of the videos are relevant to any claim or defense in this litigation. For example, the Clips include promotional videos (advertisements) for UFC events, (e.g., DX-0495, DX-0507), fighter feature pieces (e.g., DX-0523, DX-0524), promotional advertisements for the UFC as a company (e.g., DX-0565 and DX-0566), an apparent advertisement for the UFC GYM and UFC FIT program (e.g., DX-0564), and a promotional video for a 5K run the UFC organized (DX-0569). *See* **Exh.Z-1.** These Clips are not relevant to any claim or defense in this matter and should thus be excluded pursuant to Fed. R. Evid. 401 and 402. Even to the extent these Clips have any probative value for Defendant's defenses, the prejudice from these Clips outweighs whatever marginal relevance the Clips could have, making such Clips excludable under Fed. R. Evid. 403.

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion in limine to exclude these Clips.

### V. MOTION IN LIMINE NO. 17 TO EXCLUDE REFERENCE OR ARGUMENT ABOUT THE EFFECT OF A VERDICT IN THIS CASE ON THE LAS VEGAS COMMUNITY OR ANY OTHER GEOGRAPHIC REGION

Plaintiffs seek to exclude any evidence, reference to, or argument about any negative effects that a verdict for Plaintiffs would have on the Las Vegas community (or any other geographic region) by virtue of Zuffa's economic impact because the effect of a verdict is not at issue—either for liability or for damages—and therefore is not properly before the jury in this case. Moreover, arguments as to verdict effects would be unduly speculative, and the potential for unfair prejudice substantially outweighs any (nonexistent) probative value.

The issue the jury will have to decide is whether Zuffa acted unlawfully and injured the class of fighters during the Class Period, which ended in June 2017. Any economic or social ramifications for a post-verdict future are speculative, years removed from the Class Period, and therefore irrelevant to this case. This is especially true because Plaintiffs are not seeking injunctive relief on behalf of this class.

Accordingly, evidence or argument regarding potential future effects has the potential to confuse the jury regarding the claims and time period at issue, as well as the relief requested. Further, speculative evidence of verdict effects has no probative value, and the risk of prejudice to Plaintiffs is substantial. That's because "having the jury consider the impact their verdict might have on [community] activities…is not the proper basis for a verdict in this case." *In re 650 Fifth Ave. & Related Properties*, No. 08 CIV. 10934, 2017 WL 2214869, at *15–16 (S.D.N.Y. May 18, 2017) (*rev'd on other grounds*).

Courts have widely acknowledged the inappropriateness of introducing information about verdict effects, including on the community at large. *E.g.*, *In re Bard IVC Filters Prod. Liab. Litig.*, No. CV-16-00474, 2018 WL 934795, at *2 (D. Ariz. Feb. 15, 2018) (precluding defendants from "arguing at trial that a verdict against them will have an adverse impact on the medical community, future medical device research or costs, and the availability of medical care" in a products liability lawsuit); *Oyarzo v. Tuolumne Fire Dist.*, No. 1:11-CV-01271, 2013 WL 5718882, at *9 (E.D. Cal. Oct. 18, 2013) (granting a motion in limine "to preclude Defendants from any reference or mention of the effect that a verdict in favor of either Plaintiff could have on [a] public agency"); *Gonzalez v. Shahin*, No.

1:17-CV-157, 2021 WL 6693827, at *3 (D.N.D. Oct. 26, 2021) ("The Parties may not argue the effect of the verdict on either the quality of medical care in the community or healthcare costs."); *Upky v. Lindsey*, No. CIV 13-0553, 2015 WL 3862944, at *22 (D.N.M. June 3, 2015) (granting a motion in limine in a medical negligence case where "each side agreed that neither side should discuss insurance or the effect that litigation has on healthcare availability"). Such arguments threaten to distract the jury from its proper role: serving as factfinder and applying antitrust law to those facts.

This concern is especially salient here because the jurors in this case will be selected from a pool of people who live and work in the Las Vegas region and may therefore feel personally invested in the area. *See Datatreasury Corp. v. Wells Fargo & Co.*, No. 2:06-CV-72 DF, 2010 WL 11468934, at *15 (E.D. Tex. Oct. 5, 2010) ("Defendants shall not argue that a verdict for Plaintiff might have a negative impact on the nation's payment systems or the jurors' personal finances."). If jurors are led to believe that a verdict against Zuffa will damage the Las Vegas economy or labor market, they may fear that they or their loved ones may experience negative fallout. Such improperly engendered reluctance would substantially prejudice Plaintiffs. *See Lacy v. McArdle*, No. 20-cv-1014, 2023 WL 4581759, at *6 (W.D. Wis. July 18, 2023) ("[T]here is no scenario in which it would be appropriate for either side to make an argument based on the effect that a verdict would have on the jurors or any nonparty.").

Moreover, such testimony would be further misleading given that Zuffa is currently owned by TKO and ultimately, Endeavor. These companies are not located in Las Vegas, and likely would ultimately be responsible for paying all of part of any judgment in this matter.

For the foregoing reasons, this Court should exclude this argument and/or evidence from Zuffa, alongside the great number of courts that have held that "argument or evidence concerning the effect of the verdict are improper." *Bunch v. Pac. Cycle, Inc.*, No. 4:13-CV-0036, 2015 WL 11622954, at *6 (N.D. Ga. Apr. 27, 2015).

15
Case No.: 2:15-cv-01045-RFB-BNW
PLAINTIFFS' MOTIONS IN LIMINE NOS. 13 TO 17 TO EXCLUDE UNFAIRLY PREJUDICIAL, IRRELEVANT, OR UNSUBSTANTIATED EVIDENCE OR TESTIMONY RELATING TO ZUFFA OR THE UFC

| | | |
|---|---|---|
| 1 | Dated: February 29, 2024 | Respectfully submitted, |
| 2 | | */s/ Joseph R. Saveri* |
| 3 | | Joseph R. Saveri (*pro hac vice*) |
| | | Kevin E. Rayhill (*pro hac vice*) |
| 4 | | Christopher Young (*pro hac vice*) |
| 5 | | Itak Moradi (*pro hac vice*) |
| | | JOSEPH SAVERI LAW FIRM, LLP |
| 6 | | 601 California St., Suite 1000 |
| | | San Francisco, CA 94108 |
| 7 | | Telephone: +1 (415) 500-6800 |
| | | Facsimile: +1 (415) 395-9940 |
| 8 | | Email: jsaveri@saverilawfirm.com |
| | | Email: krayhill@saverilawfirm.com |
| 9 | | Email: cyoung@saverilawfirm.com |
| | | Email: imoradi@saverilawfirm.com |
| 10 | | |
| 11 | | */s/ Eric L. Cramer* |
| | | Eric L. Cramer (*pro hac vice*) |
| 12 | | Michael C. Dell'Angelo (*pro hac vice*) |
| | | Patrick F. Madden (*pro hac vice*) |
| 13 | | Ellen T. Noteware (*pro hac vice*) |
| 14 | | Najah Jacobs (*pro hac vice*) |
| | | BERGER MONTAGUE PC |
| 15 | | 1818 Market St., Suite 3600 |
| | | Philadelphia, PA 19103 |
| 16 | | Telephone: +1 (215) 875-3000 |
| | | Email: ecramer@bm.net |
| 17 | | Email: mdellangelo@bm.net |
| | | Email: pmadden@bm.net |
| 18 | | Email: enoteware@bm.net |
| 19 | | Email: njacobs@bm.net |
| 20 | | Joshua P. Davis (*pro hac vice*) |
| | | BERGER MONTAGUE PC |
| 21 | | 505 Montgomery Street, Suite 625 |
| | | San Francisco, CA 94111 |
| 22 | | Telephone: +1 (415) 906-0684 |
| | | Email: jdavis@bm.net |
| 23 | | |
| 24 | | Richard A. Koffman (*pro hac vice*) |
| | | Benjamin Brown (*pro hac vice*) |
| 25 | | Daniel Silverman (*pro hac vice*) |
| | | Daniel L. Gifford (*pro hac vice*) |
| 26 | | COHEN MILSTEIN SELLERS & TOLL, PLLC |
| | | 1100 New York Ave., N.W., Suite 500 East, Tower |
| 27 | | Washington, DC 20005 |
| 28 | | Telephone: +1 (202) 408-4600 |

Facsimile: +1 (202) 408-4699
Email: rkoffman@cohenmilstein.com
Email: bbrown@cohenmilstein.com
Email: dsilverman@cohenmilstein.com

*Co-Lead Counsel for the Class and Attorneys for Individual and Representative Plaintiffs*

Don Springmeyer (Bar No. 1021)
KEMP JONES, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
Telephone: + 1 (702) 385-6000
Facsimile: + 1 (702) 385-6001
Email: dspringmeyer@kempjones.com

*Liaison Counsel for the Class and Attorneys for Individual and Representative Plaintiffs*

Robert C. Maysey (pro hac vice)
Jerome K. Elwell (pro hac vice)
WARNER ANGLE HALLAM JACKSON & FORMANEK PLC
2555 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Telephone: +1 (602) 264-7101
Facsimile: +1 (602) 234-0419
Email: rmaysey@warnerangle.com
Email: jelwell@warnerangle.com

Crane M. Pomerantz
CLARK HILL PLC
1700 Pavilion Center Dr.
Suite 500
Las Vegas, NV 89135
Telephone: +1 (702) 697-7545
Email: cpomerantz@clarkhill.com

*Additional Counsel for the Class and Attorneys for Individual and Representative Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of February, 2024 a true and correct copy of PLAINTIFFS' MOTIONS IN LIMINE NOS. 13 TO 17 TO EXCLUDE UNFAIRLY PREJUDICIAL, IRRELEVANT, OR UNSUBSTANTIATED EVIDENCE OR TESTIMONY RELATING TO ZUFFA OR THE UFC was served via the District Court of Nevada's ECF system to all counsel of record who have enrolled in this ECF system.

                                                              */s/ Joseph R. Saveri*
                                                                Joseph R. Saveri