# EXHIBIT Q

Case 2:15-cv-01045-RFB-BNW   Document 1000-5   Filed 02/29/24   Page 1 of 3

## John Mulkey

**From:** Paschall, C Thomas [TPaschall@milbank.com]
**Sent:** Wednesday, January 31, 2007 6:26 AM
**To:** Fertitta, Lorenzo; Frank.FertittaIII@StationCasinos.com
**Cc:** Kirk Hendrick; Dana White; Baronsky, Kenneth; Neufeld, Pamela; John Mulkey
**Subject:** Pride meeting results

I had a lengthy meeting tonight with Mr. Sakakibara, Mr. Matsui (the Nagashima attorney) and Mike Connette.

**Opportunity to Walk Away.** If you do not want to move forward with this deal based on the due diligence, Mr. Sakakibara, Mr. Matsui and the translator have given us their assurances (and will say so in writing) that we can walk our separate ways right now without any liability to them (i.e. no $2 million).

If you want to back out of the deal based on what you have seen, they say you now have a clean opportunity to do so.

If you want to move forward, as has been repeatedly articulated since the beginning, they only will do so if they have the comfort that you really will make the purchase and consummate the transaction. They do not trust you any more than you trust them and they do not want their business tied up any longer than it already has been. We would not be where we are today (having seen all their fighter contracts) but for having convinced them that we are serious buyers and not just snoops.

**Other Bidders:** Mr. Sakakibara and Mr. Matsui confirmed Pride is being approached by several unsolicited bidders for acquisitions and joint ventures. But their first choice is to sell to you because they believe you have what it takes to succeed in rebuilding Pride given your successful history of saving and growing the UFC.

Given the strategic/preemptive nature of this acquisition (ie to stop others from buying it) and your having seriously contemplated acquiring them only to shut their business down and utilize the fighters in the UFC, we set a low threshold of due diligence before the deal became binding on both sides. They would not agree to make the LOI binding otherwise [Redacted]

[Redacted]

**Specific results of the meeting are below:**

a) <u>Side Letter</u>: we presented a side letter requiring them to commit to specific promises regarding conduct of the business and approval rights regarding fighter contracts; the letter clarifies our due diligence rights. They were willing to sign but only if we release the $2 million. Given the mistrust between both sides, I have proposed that they sign this simultaneously with our release of the $2 million after a few more days of due diligence, giving each side the assurances it needs. This was acceptable to them.

b) <u>Fedor</u>: they are seeking our input on Fedor -- either doing the deal they described to us (re: Bodog and the contract extension with better terms) <u>or</u> they can pay Fedor $3 million per fight for 5 fights over 18 months and keep him away from Bodog so the contract is exclusive. They will try either way depending on what you want.

c) <u>Meeting in LV</u>: Mr. Sakakibara can meet on Saturday morning but he had in mind much longer meetings over a couple of days.

d) <u>Tax Structure</u>: [Redacted]

[Redacted]

[Redacted]

If you have any questions please call Ken at 212-892-4333 or me in Tokyo at +81 3-4333-1234 Room 1802 or my

1/31/2007

Contains Highly Confidential Business Information
Exempt from Disclosure Under U.S.C ☐57b-2 and 16 C.F.R. ☐☐4.10-10

ZUF-00031544



Wells Fargo Bank, National Association
Corporate Trust Services
707 Wilshire Blvd., 17th Floor
Los Angeles, CA 90017
Tel: 213/614-5854  Fax: 213/614-3355

**TO:**

**FROM:** Kyle Lim

**DATE:** January 22, 2007

**RE:** Wire Instructions

Domestic Wire:



International Wire:



Checks:



Contains Highly Confidential Business Information
Exempt from Disclosure Under U.S.C ☐57b-2 and 16 C.F.R. ☐☐4.10-10

ZUF-00031545