# EXHIBIT V

1622 Locust Street | Philadelphia, PA 19103-6305 | Phone: 215/875-3000 | Fax: 215/875-4604 | www.bergermontague.com



| | |
|---|---|
| **Michael Dell'Angelo** | ALSO ADMITTED IN NJ |
| **WRITER'S DIRECT DIAL** | 215/875-3080 |
| **WRITER'S DIRECT FAX** | 215/875-4604 |
| **WRITER'S DIRECT E-MAIL** | mdellangelo@bm.net |

September 7, 2015

<u>**Via E-Mail Only**</u>
John F. Cove, Jr.
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
jcove@bsfllp.com

      **Re:**   *Le v. Zuffa, LLC*, **2:15-cv-01045-RFB-(PAL) (D. NV.)**

Dear John:

      I am writing to summarize the parties' telephonic meet and confer on September 2, 2015 and in response to your August 26, 2015 letter.

      Regarding your letter of August 26, we disagree with many of your characterizations, purported factual assertions and arguments regarding the Protective Order and ESI Stipulation. Because the Protective Order is now at issue, we do not believe that a point by point response to your lengthy discussion is necessary or productive. Similarly, because the parties were able to reach a consensus on the ESI Stipulation, we do not believe that a detailed response is necessary. However, do not construe the absence of a more detailed response as our assent.

      We take particular exception to the statement in your August 26 letter regarding Plaintiffs' approach to discovery, as discussed during the telephonic meet and confer on August 20. First, your statement that "Plaintiffs had not investigated (and did not propose) non-traditional review methods" is disingenuous. Second, your statement that Zuffa "had investigated potential non-traditional review methods, and we presented our ideas to you for discussion and consideration" was rendered meaningless in view of Zuffa's lack of preparedness to discuss what ESI it actually possesses, the volume of its ESI, the identity and number of its custodians and its protocols for preserving and deleting ESI.

      As I explained to you at the conclusion of our meet and confer on September 2, Plaintiffs were very disappointed with Zuffa's proposed response to Plaintiffs' First Set of Document Requests and the lack of any meaningful progress by Zuffa to discuss the search for and production of its ESI. As we explained on both meet and confer calls, Plaintiffs strongly believe that Zuffa should have already begun to search ESI and that there is no reason for further delay as you propose.

      We were surprised by Zuffa's lack of readiness to meet and confer on September 2 regarding ESI. That is particularly so, as I stated, given that your letter of August 26 attempted to create the



impression that Zuffa was diligently attempting to move the process forward and that Plaintiffs did not have specific proposals at hand for non-traditional review methods.

For example on August 20 you offered that if the parties pursue one or more non-traditional methods of searching ESI, it would be necessary for Plaintiffs to analyze Zuffa's organizational charts. Accordingly, we expected that Zuffa would have already produced organizational charts to facilitate the parties' discussion. Indeed, in outright rejecting Plaintiffs' phasing proposal on the August 20 meet and confer you stated that you view Plaintiffs' phasing proposal as illusory because it put "easy" to locate documents, such as organizational charts, in Phase 2. However, during the September 2 meet and confer Plaintiffs asked how many custodians Zuffa had identified. You could not answer even that most fundamental question nor had Zuffa produced organizational charts.

As we stated, until Plaintiffs know the number of custodians at issue and which are likely to have relevant information, a discussion about whether to apply non-traditional review methods and how to do so is largely academic. Unfortunately, Zuffa first produced organizational charts on the evening of Friday, September 4. Based on our review, the two organizational charts produced cover only 2015. As you know, on September 4, we requested clarification, but have not yet received a response. Because the scope of the requests extend well beyond 2015, we require organizational charts that cover the entire relevant period, to the extent they are available. Please produce a complete set of organizational charts for the relevant period.

Similarly, we inquired what volume of ESI Zuffa had identified that may contain responsive material. You responded that it was "hard to imagine that less than 10%" of Zuffa's documents will not contain responsive material. However, as the discussion continued, it was apparent that your estimate was not grounded in any concrete metrics or, if you knew, you were unwilling to share that information. You could not provide an estimate of the volume of Zuffa's ESI, refused to state what, if any, preservation protocol Zuffa used and when, or when Zuffa implemented a protocol to delete email and other ESI, if any, in the regular course of business. Notably the latter issue was one of much contention on the call. Despite repeated requests for information regarding Zuffa's ESI deletion and preservation protocol, you refused to answer, eventually claiming that you had already conveyed the information to Mr. Saveri who was not on the call. If you had the information, it would have been easier to simply repeat it in the interest of advancing the parties' ESI discussion, but you chose not to. That said, I understand that the information you provided to Mr. Saveri offered no meaningful details regarding when an ESI deletion and preservation protocol was implemented, to whom or what it specifically applied, how the backups, if any, are maintained, etc. In the interests of clarity and transparency we would like the following information:

1. During the relevant period, has Zuffa had a policy or procedure for deleting or preserving ESI?
2. If so, what were they?  How have they been modified? What ESI is subject to those policies?
3. Have those policies been suspended at any time?  If so, when?



4.  What relevant ESI has been destroyed as result of these policies?
5.  What ESI has been destroyed otherwise?
6.  Is there any relevant ESI that is not reasonably accessible because it has been destroyed or not maintained?
7.  Is any destroyed ESI located on backup tapes, cloud-based storage or other media? With ISPs or third party vendors or service providers?

Despite Zuffa's lack of readiness to discuss ESI, Plaintiffs attempted to advance the discussion to the extent possible. We stated that of the four non-traditional search methods that Zuffa identified, Plaintiffs are open to a continued discussion regarding the use of predictive coding once Zuffa provides adequate information necessary to make an meaningful evaluation. Plaintiffs' require a concrete proposal regarding linguistic review. Plaintiffs do not anticipate that near deduplication will be a useful tool, but do not foreclose the possibility of using it. However, Plaintiffs agree in principle that the parties should utilize email threading.

As we have consistently stated, Plaintiffs do not agree that electronic searching of Zuffa's documents and information should be deferred indefinitely or even until after Zuffa's motion to dismiss is decided. Magistrate Judge Leen rejected that approach. There is no good faith basis for revisiting it. Deferring any search for and production of ESI is tantamount to the very stay of discovery that the court already rejected. Zuffa's continued lack of preparedness to meaningfully discuss its ESI is, however, having the intended effect -- unnecessarily delaying discovery by fiat.

### Plaintiffs' Document Requests

During the parties' August 20 telephonic meet and confer, Plaintiffs proposed to divide their First Set of Requests for the Production of Documents into two phases. Phase 1 would consist of Requests 11-17, 19, 20-25, 27, 31, 33, 35, 37, 39, 40, 42, 43, 49-52, 54-57. Phase 2 would consist of Requests 1-10, 18, 26, 28-30, 32, 34, 36, 38, 41, 44-48, 53, 58. Plaintiffs proposed that Zuffa begin production of most Phase 1 documents immediately and reserve production of Phase 2 documents pending a decision on the motion to dismiss. Zuffa immediately rejected Plaintiffs' proposal.

At the outset of our September 2 telephonic meet and confer, you reiterated Zuffa's outright rejection of Plaintiffs' phasing proposal, describing it as "illusory." Zuffa then set forth its own proposal. Zuffa proposed a first phase in which it produces documents in response to Requests 7, 8, 12-15, 17, 27, 31, 35, 40 and 43, limited only to hard copy sources, lateral files, central files and a limited subset of electronic documents, as detailed below, that could be identified without an electronic search from a single source or custodian, such as spreadsheets containing certain financial or accounting related information. Zuffa also proposed that any other search of ESI, including the search of any custodial documents or ESI, be deferred indefinitely until a second phase.

We understand that Zuffa is unequivocally unwilling to conduct a search of any other ESI or any custodians' documents until after it completes its proposed initial production. You also stated that



even when Zuffa does conduct a search of its custodial files it "is not going to search for all fighters by name" despite the fact that this case is pled as a class action and necessarily includes fighters who are not named plaintiffs.

We also understand that Zuffa has objected to and maintains its objections to the time frame covered by certain of Plaintiffs' requests. You indicated that you do not believe that the parties need to address that issue at this stage. We disagree; it makes little sense for Zuffa to undertake a search and to being producing documents if the parties have not agreed on the relevant time period. You also indicated that you do not believe that the time frame issue needs to be dealt with uniformly because Zuffa's perspective on the time frame as it relates to any particular request will depend upon the burden of searching back to the requested period or the relevance of the time period. You also indicated that, regardless of what Plaintiffs requested, Zuffa does not intend to search email back to 2000. On August 20, Plaintiffs indicated that the time period should go back to at least January 1, 2005, because the *Le* complaint alleges that the anticompetitive scheme began in at least 2006. We await a concrete proposal in response.

You explained that Zuffa maintains an electronic central contract file that contains related documents. Such documents include, without limitation, extension letters, contract related communications, etc., but you noted that these files may not be "complete." You indicated that the "process" at Zuffa was to attempt to retain documents related to a fighter's contractual rights in a single file. You advised that the contract files may contain privileged materials and are "voluminous", but did not elaborate. Because Zuffa believes it would be too burdensome to search its contract files for all class members, it is only willing to provide the contract files of the named plaintiffs and a randomized sample of up to ten additional fighters whom Plaintiffs identify.

Zuffa's proposal makes no provision for many of Plaintiffs Phase 1 requests and few of Plaintiffs' Phase 2 requests. Plaintiffs' phasing proposal was based on the premise that Zuffa would undertake prompt and good faith efforts to produce both hard copy documents and ESI. Since Zuffa proposes to produce primarily the former and to exclude all custodians from its search until some undetermined time in the future, there is no reasonable justification for also deferring the production of any documents to nearly a third of Plaintiffs' requests. Although Plaintiffs are prepared to receive the documents that Zuffa is willing to produce now, Zuffa's proposal falls well short of what Plaintiffs' believe is appropriate phasing.

You explained that Zuffa's proposal "depends upon a total agreement right now" and that Zuffa is willing to being producing documents soon, but not without a "total agreement." On a request by request basis, you proposed the following.

**Requests Nos. 7 & 8**

Zuffa proposed to produce central file documents responsive to Requests 7 and 8.



### Request No. 11

Zuffa proposed to produce "almost all" documents requested in response to Request 11. However, you noted that some of the information requested is not kept in the form which Plaintiffs requested it. For example, you explained that with respect to subparts e, f and g, Zuffa may record revenue for broadcasters, but the information is not broken down by bout. Rather, you explained that Zuffa creates something akin to a "profit and loss" for each event and will provide a breakdown of revenue costs, etc., per event as it is kept in the normal course. You noted that this information is "relatively granular", but did not elaborate. We understood you to say that Zuffa proposed to produce other financial data that was "granular", but not available by event. That said, you represented Zuffa's production in response to Request 11 will provide a "full picture" of Zuffa's financials.

### Requests Nos. 12-14

With respect to documents and information responsive to Requests 12, 13 and 14, you stated that Zuffa will produce actual excel spreadsheets. We understood you to say that Zuffa will be willing to "go to the individual check level," which would cover "95%" of the information requested in response to these requests. However Zuffa is unwilling to produce actual checks. Rather, it proposes to produce documents "sufficient to show" the information sought. You represented that by producing the information as proposed, Plaintiffs would receive the documents and information "quickly" and that if Plaintiffs wanted additional information the parties could discuss it, but made no commitments. You also noted that Zuffa may be in possession of materials that analyze the requested information as requested and that you would undertake to determine whether or not such analyses exist.

### Request No. 12

Zuffa proposes to produce "data on what is paid to fighters." You specified that fighters may receive bout payments and other payments for other services or rights. However, you noted that the fighters are not paid a "salary" as that term is used in Request No. 12.

### Request No. 13

Same as 12. You also noted that the requested information is not broken down by event.

### Request No. 14

Same as 12. You stated that documents and information responsive to subdivision (b) are not broken down as requested, but Zuffa proposes to produce all of Zuffa's expenses.

You explained, for example, that with respect to Request 14(b), Zuffa will produce information regarding legal fees it has paid. However, you were "not sure" that Zuffa maintains responsive documents in the normal course segregated in an "economically rational way" that would be



specifically responsive to Request 14(b). You stated that Zuffa does not intend to review legal bills or checks in an attempt to make a more precise responsive production.

**Request No. 15**

Zuffa proposes to produce responsive analyst reports. Zuffa will also search for one-time reports for financing, potential sales, etc., and produce those that may exist.

**Request No. 16**

You stated that you were not aware of any centrally located documents responsive to Request 16. You also stated that "[t]here is certainly nobody whose job it is to analyze fighter compensation" that would be responsive to subparts (a) and (b). As such, analyzing such trends was "more of an art than a science." You also stated that there is no central file of material "looking at competitors' compensation." To the extent any responsive documents exist, you stated that they would come within a custodial file search which Zuffa is unwilling to conduct at this time. Therefore, Zuffa proposed to defer any response to Request 16.

**Request No. 17**

You addressed documents relating to the FTC's investigation of Zuffa in connection with its investigation of Zuffa's acquisition of Stikeforce. You stated that Zuffa is willing to talk about producing the documents that it produced to the FTC, but will not produce the FTC's requests. However, you asked whether Plaintiffs will forego the production of any additional Strikeforce documents if Zuffa restores and produces its production to the FTC. In response, Plaintiffs explained that it is impossible to agree that the FTC production is, itself, sufficient without knowing what Zuffa agreed to produce to the FTC. You explained that the FTC routinely propounds broad request and, therefore, the requests would not be useful. In response, we noted that the scope of such a production is typically negotiated and memorialized. In order to evaluate Zuffa's proposal, Plaintiffs must first examine contemporaneous documents which define the scope of Zuffa's production to the FTC. Please produce any such documents promptly. That said, the Strikeforce acquisition is a key allegation in Plaintiffs' complaints and central to the alleged anticompetitive conduct.

**Request No. 19**

Zuffa proposed to defer its response to Request 19 until Phase 2. You stated that Zuffa does not employ "junior MBAs" who analyze its competitors, if any. You stated that documents responsive to Request 19 are better located in the custodian searches which Zuffa proposes to defer to Phase 2.



John F. Cove, Jr.
September 7, 2015
Page 7

**Request Nos. 20-25, 39**

Zuffa proposed to defer its Response to Requests 20-25 and 39 until Phase 2 because it believes responsive documents may reside in the custodian's files. However, you noted that Zuffa's response to Requests 11-14 may contain some of information responsive to Request 20.

**Request Nos. 26, 28, 36, 49**

Rather than produce documents or information responsive to Requests 26, 28, 36 and 49, you proposed that Zuffa will provide responsive information in its forthcoming answers to Plaintiffs' Interrogatories.

**Request No. 27**

Zuffa declined to produce all documents responsive to Request 27 or even documents relating to each venue encompassed by the Request. Rather, Zuffa proposed that Plaintiffs select 5 sample venues and Zuffa will produce its contracts and additional related documents (i.e., extensions, amendments, etc.) with those venues. You explained the Zuffa is willing to produce the proposed responsive documents because it believes the Plaintiffs' allegations regarding venues are "wrong". Despite that, Zuffa is unwilling to provide copies of all responsive venue contracts. However, you stated that Zuffa will confirm whether there are other hard copy documents related to the venues encompassed by Request 27.

**Request No. 31**

Zuffa proposed to defer a response to Request 31 to Phase 2 because responsive documents would likely be found in its custodial files.

**Request No. 33**

Zuffa is unwilling to produce any documents responsive to Request 33. You asked why documents responsive to Request 33 are relevant, stating that there are over 300 broadcasters so it would be impossible for Zuffa's contracts with Fox to demonstrate foreclosure. We disagree and explained, for example, that most of the 300 broadcasters would not likely broadcast MMA. Regardless, if for example, Zuffa's contracts with Fox contain restrictive clauses such as prohibitions against the broadcast of other non-UFC MMA events, such contracts are directly relevant and would support Plaintiffs' allegations. Finally, we noted that Zuffa's refusal to produce documents responsive to Request 33 was inconsistent with other aspects of its proposal. For example, Zuffa proposed to produce contracts with venues in response to Request 27, precisely because it believes Plaintiffs' venue allegations are "wrong." Yet, Zuffa also believes Plaintiffs' allegations regarding Zuffa's relationship with broadcasters is equally wrong, but Zuffa is unwilling to substantiate its belief by producing copies of any responsive broadcaster contracts. Regardless of what evidentiary value Zuffa believes its



contracts with broadcasters may or may not have, they plainly relate to the well pleaded allegations, are relevant and should be produced.

### Request No. 35

Zuffa proposed to allow Plaintiffs to select a small number of merchants for whom it will produce central file documents in Phase 1.

### Request No. 37

Zuffa proposed to allow Plaintiffs to select a small number of sponsors for whom it will produce central file documents in Phase 1.

### Request No. 39

Zuffa proposed to respond to Request 39, consistent with its response to Request 20. Plaintiffs inquired whether the UFC has a league discipline office or other centralized files regarding discipline. In response to our ensuing discussion, Zuffa also proposed to produce central file only documents regarding fighter discipline.

### Request No. 40

Zuffa proposed to produce responsive documents only to the extent that they reside in the company's contract files. Otherwise, it proposed to defer the search for and production of responsive documents to Phase 2 when it proposes to search custodial documents.

### Request No. 42

Zuffa proposed to defer the search for and production of responsive documents to Phase 2 when it proposes to search custodial documents.

### Request No. 43

Zuffa proposed to produce the contract files of the named Plaintiffs only.

### Request No. 50

Zuffa claims that it cannot discern the relevance of its contracts and agreements with social media organizations and proposed to defer any response to this Request until after it responds to Plaintiffs' interrogatories. Plaintiffs explained that such contract often differ from those with general public users and may define obligations regarding storage, archiving and deletion as well as services



John F. Cove, Jr.
September 7, 2015
Page 9

such as searching for selected keywords, etc., all of which may be relevant to the litigation as well as the sources of relevant documents and information.

### Request No. 51

Zuffa proposed to defer the search for and production of responsive documents to Phase 2 when it proposes to search custodial documents. However, you stated that Zuffa's forthcoming interrogatory responses will also address the information sought in Request 51.

### Request No. 52

Zuffa proposed to defer any response to Request 52 until after it responds to Plaintiffs' interrogatories. You stated that Zuffa's website changes daily and the changes depend upon when a bout is held. Thus, Zuffa believes that producing deleted information for all relevant bouts, over a period of time, is unduly burdensome. Plaintiffs explained that Zuffa's use of social media is an important aspect of discovery and substantial questions remain about the potential deletion of certain social medial posts by Zuffa personnel after the filing of the *Le* complaint. Moreover, to the extent that Zuffa's website and social media postings are archived, they should be searched and produced. Despite repeated requests, you refused to address whether the websites and social media accounts of Zuffa and its personnel are archived or backed up in any way. Please provide the requested information. Notably, however, you stated that you believe Plaintiffs' counsel have been following Zuffa's on-line presence closely and should have all that they require. We noted that the independent investigation of counsel is not a proxy for Zuffa's obligation to produce responsive documents in its possession, custody or control.

### Request No. 54

Plaintiffs inquired whether there had been any investigations of Zuffa other than by the FTC. You agreed to investigate.

### Request Nos. 55, 56

You stated that responsive documents may be located in the contract files that Zuffa proposed to search. However, based on our discussion, we believe that a search of contract files alone falls well short of compliance.

Zuffa also proposed to provide Plaintiffs with a list of lawsuits and arbitrations in which the company has been involved. Based on that list, Plaintiffs will identify the matters for which they may want documents. We noted that the requests call for more than just documents relating to lawsuits and arbitrations. However, you stated that "disputes" as used in Request 56 was too vague and asked if it included investigations by commissions. It does. We also noted that Request 56 provides examples and



John F. Cove, Jr.
September 7, 2015
Page 10

that disputes plainly encompass other official or unofficial dispute resolution process, pre-suit demands, matters involving disagreements in which one side or the other has utilized counsel.

**Request No. 57**

Zuffa's proposal regarding Request 57, will depend upon how the parties resolve Zuffa's obligation to respond to Requests 54-56.

We look forward to continuing the parties' meet and confer on your next available time and date, September 8, 2015 at 3:00 p.m. Pacific.

Very truly yours,

Michael C. Dell'Angelo

cc:    Joseph Saveri
       Matthew S. Weiler
       Marcy Norwood Lynch
       Suzanne E. Jaffe
       Perry Grossman