# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT NEVADA

CUNG LE, NATHAN QUARRY, JON FITCH, BRANDON VERA, LUIS JAVIER VAZQUEZ, and KYLE KINGSBURY, On Behalf of Themselves and All Others Similarly Situated,

        Plaintiffs,

        v.

ZUFFA, LLC, D/B/A ULTIMATE FIGHTING CHAMPIONSHIP and UFC,

        Defendant.

Case No. 2:15-cv-01045-RFB-BNW

---

KAJAN JOHNSON and CLARENCE DOLLAWAY, On Behalf of Themselves and All Others Similarly Situated,

        Plaintiffs,

        vs.

ZUFFA, LLC, TKO OPERATING COMPANY, LLC F/K/A ZUFFA PARENT LLC (D/B/A ULTIMATE FIGHTING CHAMPIONSHIP and UFC), and ENDEAVOR GROUP HOLDINGS, INC.,

        Defendants.

Case No. 2:21-cv-01189-RFB-BNW

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF THE SETTLEMENT IN BOTH ABOVE-CAPTIONED MATTERS, PROVISIONAL CERTIFICATION OF THE PROPOSED *JOHNSON* SETTLEMENT CLASS, PRELIMINARY APPROVAL OF THE PLAN OF ALLOCATION, APPROVAL OF THE NOTICE PLAN, AND APPROVAL OF THE <u>PROPOSED SCHEDULE FOR COMPLETING THE SETTLEMENT PROCESS</u>**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................... iii

INTRODUCTION ....................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ........................................ 3

    A.    Investigation and Filing of the *Le* Action ..................................... 3

    B.    Motions to Transfer and Dismiss ................................................ 4

    C.    Fact Discovery in the *Le* Action ................................................ 4

    D.    Expert Discovery in the *Le* Action ............................................ 4

    E.    Class Certification and *Daubert* Proceedings in the *Le* Action ................... 5

        1.    Class Certification and *Daubert* Briefing. ......................... 5

        2.    The Evidentiary Hearing on Class Certification. ............ 5

        3.    Post-Hearing Proceedings on Class Certification. ........... 5

        4.    Notice of Class Certification to the *Le* Class. ................. 6

    F.    Zuffa's Motions for Summary Judgment in the *Le* Action ........................ 6

    G.    The Investigation and Filing of the *Johnson* Action, Litigating the Motion to Dismiss, and Preliminary Discovery ........................ 6

    H.    Pre-Trial Proceedings in the *Le* Action ........................................ 7

        1.    Scheduling Trial in the *Le* Action .................................. 7

        2.    Pretrial Tasks and Work in the *Le* Action ........................ 7

THE SETTLEMENT ................................................................................... 8

ARGUMENT ............................................................................................. 9

I.    Standards for Preliminary Approval of the Settlement ........................... 9

II.    The Settlement Satisfies the Elements for Preliminary Approval ........... 11

    A.    The Settlement Classes Have Been Adequately Represented ............... 11

    B.    The Settlement Was Reached Through Arm's-Length Negotiations ........ 12

i

C.   The Relief Provided by the Settlement Is More Than Adequate ...............12

1.   The Costs, Risks, and Delay of Trial and Appeal..........................13

2.   The Proposed Plan of Allocation Is Fair and Effective. ...............14

3.   Settlement Class Counsel's Request for Fees and Expenses, and Service Awards for the Class Representatives Is Reasonable. ......17

4.   The Settlement Provides Significant Monetary and Prospective Relief to the Settlement Class. ......................................................19

D.   The Settlement Treats Class Members Equitably .....................................21

E.   The Extent of Discovery Completed and the Stage of Proceedings ..........22

F.   Risk of Maintaining Class Action Status Through Trial ..........................22

G.   The Experience and Views of Counsel .....................................................22

III.   The Proposed *Johnson* Settlement Class Should Be Certified For Settlement Purposes .........................................................................................................23

A.   The *Johnson* Settlement Class Satisfies Numerosity.................................24

B.   Questions of Law or Fact Are Common to the *Johnson* Settlement Class Members .....................................................................................................24

C.   The *Johnson* Settlement Class Representatives' Claims Are Typical .......24

D.   The *Johnson* Settlement Class Is Adequately Represented ......................25

E.   The *Johnson* Settlement Class Satisfies the Predominance Requirement of Rule 23(b)(3)..............................................................................................26

F.   The *Johnson* Settlement Class Satisfies the Rule 23(b)(3) Superiority Requirement ...............................................................................................27

IV.   Notice of the Settlement Should be Approved .......................................................27

V.   The Court Should Appoint Angeion as Claims Administrator.............................29

VI.   The Court Should Appoint Huntington as Escrow Agent ....................................29

VII.   The Final Approval Hearing Should Be Scheduled...............................................30

CONCLUSION.......................................................................................................31

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abadilla v. Precigen, Inc.*,
   No. 20-cv-6936, 2023 WL 7305053 (N.D. Cal. Nov. 6, 2023) ................................. 12

*Aldapa v. Fowler Packing Co.*,
   No. 15-cv-0420, 2023 WL 169120 (E.D. Cal. Jan. 12, 2023) ................................. 21

*Allapattah Servs., Inc. v. Exxon Corp.*,
   454 F. Supp. 2d 1185 (S.D. Fla. 2006) ....................................................... 19

*Allen v. Bedolla*,
   787 F.3d 1218 (9th Cir. 2015) .................................................................. 9

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997) ............................................................................. 26

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013) ............................................................................. 26

*Andrews v. Plains All Am. Pipeline L.P.*,
   No. 15-cv-4113, 2022 WL 4453864 (C.D. Cal. Sept. 20, 2022) ........................... 19

*In re Auto. Refinishing Paint Antitrust Litig.*,
   MDL No. 1426, 2004 WL 1068807 (E.D. Pa. May 11, 2004) ............................... 21

*Barbosa v. Cargill Meat Sols. Corp.*,
   297 F.R.D. 431 (E.D. Cal. 2013) ............................................................... 19

*In re Broiler Chicken Antitrust Litig.*,
   No. 16-cv-8637, 2021 WL 5578878 (N.D. Ill. Nov. 30, 2021) ............................. 18

*Castillo v. ADT LLC*,
   No. 2:15-cv-383, 2016 WL 6441614 (E.D. Cal. Nov. 1, 2016) ............................. 17

*Chen-Oster v. Goldman Sachs & Co.*,
   No. 10-cv-6950, 2023 WL 7325264 (S.D.N.Y. Nov. 7, 2023) ............................... 19

*In re Citric Acid Antitrust Litig.*,
   Nos. 95-cv-1092, 95-cv-2963, 1996 WL 655791 (N.D. Cal. Oct. 2, 1996) .............. 25

iii

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF THE SETTLEMENT
IN BOTH ABOVE-CAPTIONED MATTERS, PROVISIONAL CERTIFICATION OF THE PROPOSED JOHNSON SETTLEMENT CLASS,
PRELIMINARY APPROVAL OF THE PLAN OF ALLOCATION, APPROVAL OF THE NOTICE PLAN, AND APPROVAL OF
THE PROPOSED SCHEDULE FOR COMPLETING THE SETTLEMENT PROCESS

*In re Citric Acid Antitrust Litig.*,
    145 F. Supp. 2d 1152 (N.D. Cal. 2001) ................................................................. 14

*Cottle v. Plaid Inc.*,
    340 F.R.D. 356 (N.D. Cal. 2021)............................................................................ 17

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ................................................................................. 25

*Garner v. State Farm Mut. Auto. Ins. Co.*,
    No. 08-cv-1365, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010)............................... 13

*Greene v. Jacob Transp. Servs., LLC*,
    No. 2:09-cv-466, 2017 WL 4158605 (D. Nev. Sept. 19, 2017)............................... 25

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................... 10, 11, 13, 27

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ..................................................................................... 18

*Hefler v. Pekoc*,
    802 F. App'x 285 (9th Cir. 2020) .......................................................................... 16

*Hefler v. Wells Fargo & Co.*,
    No. 16-cv-5479, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)......................... 16, 19

*In re Heritage Bond Litig.*,
    No. 02-ml-1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ............................. 18

*In re High-Tech Emp. Antitrust Litig.*,
    985 F. Supp. 2d 1167 (N.D. Cal. 2013) ........................................................... 25, 26

*In re High-Tech Emp. Antitrust Litig.*,
    No. 11-cv-2509, 2015 WL 12991307 (N.D. Cal. Mar. 3, 2015) ........................ 10, 12

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ................................................................................. 26

*Ingram v. Coca-Cola Co.*,
    200 F.R.D. 685 (N.D. Ga. 2001)............................................................................ 19

*Kristensen v. Credit Payment Servs.*,
    12 F. Supp. 3d 1292 (D. Nev. 2014) ...................................................................... 24

iv

*Lee v. Enterprise Leasing Co.-West, LLC*,
  300 F.R.D. 466 (D. Nev. 2014) ................................................................................ 24

*In re Lidoderm Antitrust Litig.*,
  No. 14-md-2521, 2018 WL 4620695 (N.D. Cal. Sep. 20, 2018) .............................. 18

*Loeza v. JPMorgan Chase Bank, NA*,
  No. 13-cv-95, 2015 WL 13357592 (S.D. Cal. Aug. 18, 2015) .................... 16, 19, 22

*Low v. Trump Univ., LLC*,
  881 F.3d 1111 (9th Cir. 2018) ................................................................................ 28

*Mandalevy v. BofI Holding, Inc.*,
  17-cv-667, 2022 WL 1556160 (S.D. Cal. May 17, 2022) ........................................ 17

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) .................................................................................. 22

*Meijer, Inc. v. 3M*,
  No. 04-cv-5871, 2006 WL 2382718 (E.D. Pa. Aug. 14, 2006) ............................... 21

*Meijer, Inc. v. Abbott Labs.*,
  No. 07-cv-5985, 2011 WL 13392313 (N.D. Cal. Aug. 11, 2011) ........................... 18

*Metrow v. Liberty Mut. Managed Care LLC*,
  No. 16-cv-1133, 2018 WL 6265085 (C.D. Cal. June 14, 2018) ............................. 11

*Moorer v. StemGenex Med. Grp., Inc.*,
  No. 16-cv-2816, 2021 WL 4993054 (S.D. Cal. Oct. 26, 2021) ...................... 9, 12, 23

*Musgrove v. Jackson Nurse Pros., LLC*,
  No. 17-cv-6565, 2022 WL 2092656 (C.D. Cal. Jan. 11, 2022) .............................. 28

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................*passim*

*Officers for Justice v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) ............................................................................ 20, 29

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  993 F.3d 774, 782 (9th Cir. 2021), *on reh'g en banc*, 31 F.4th 651 (9th Cir. 2022) .............. 5, 6

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................. 22

v

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ........................................................................... 28

*In re Packaged Ice Antitrust Litig.*,
  No. 08-md-1962, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) .......................................... 13

*Pecover v. Elec. Arts, Inc.*,
  No. 08-cv-2820, 2010 WL 8742757 (N.D. Cal. Dec. 21, 2010) ................................................ 25

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ......................................................................................... 28

*Ries v. Arizona Beverages USA LLC*,
  287 F.R.D. 523 (N.D. Cal. 2012) ............................................................................ 24

*Rodriguez v. Nike Retail Servs., Inc.*,
  No. 14-cv-1508, 2022 WL 254349 (N.D. Cal. Jan. 27, 2022) ................................................ 18

*Roes 1-2 v. SFBSC Mgmt., LLC*,
  944 F.3d 1035 (9th Cir. 2019) ............................................................................. 29

*Sobel v. Hertz Corp.*,
  291 F.R.D. 525 (D. Nev. 2013) ............................................................................. 25

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
  2024 WL 815503 (E.D. Pa. Feb. 27, 2024) ............................................................. 18, 21

*Szymborski v. Ormat Techs., Inc.*,
  No. 13-md-2445, 2012 WL 4960098 (D. Nev. Oct. 16, 2012) ................................................ 10

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...................................................................... 23

*Tawfilis v. Allergan, Inc.*,
  No. 15-cv-307, 2018 WL 4849716 (C.D. Cal. Aug. 27, 2018) ............................................ 18, 21

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  267 F.R.D. 583 (N.D. Cal. 2010) ............................................................................ 27

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*,
  209 F.R.D. 159 (C.D. Cal. 2002) ........................................................................... 24

*Torres v. Mercer Canyons Inc.*,
  835 F.3d 1125 (9th Cir. 2016) ............................................................................. 26

vi

*Trosper v. Stryker Corp.*,
No. 13-cv-607, 2015 WL 5915360 (N.D. Cal. Oct. 9, 2015) ................................................ 18

*In re Urethane Antitrust Litig.*,
No. 04-md-1616, 2016 WL 4060156 (D. Kan. July 29, 2016) .............................................. 18

*Vasquez v. Coast Valley Roofing, Inc.*,
266 F.R.D. 482 (E.D. Cal. 2010) ........................................................................................ 18

*Victorino v. FCA US LLC*,
No. 16-cv-1617, 2023 WL 3296155 (S.D. Cal. May 5, 2023) ............................................. 12

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
229 F. Supp. 3d 1052 (N.D. Cal. 2017) ................................................................................ 9

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .......................................................................................................... 10

*Wolin v. Jaguar Land Rover N. Am., LLC*,
617 F.3d 1168 (9th Cir. 2010) ..................................................................................... 24, 27

*In re Zillow Grp., Inc. Sec. Litig.*,
No. 17-cv-1387, 2023 WL 2766264 (W.D. Wash. Apr. 3, 2023) ........................................ 28

**Rules**

Fed. R. Civ. P. 23 ..................................................................................................... *passim*

**Other Authorities**

2 McLaughlin on Class Actions § 6:21 (20th ed. 2023) ....................................................... 29

Newberg on Class Actions, § 11:50 (4th ed. 2002) ............................................................. 13

vii

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF THE SETTLEMENT
IN BOTH ABOVE-CAPTIONED MATTERS, PROVISIONAL CERTIFICATION OF THE PROPOSED JOHNSON SETTLEMENT CLASS,
PRELIMINARY APPROVAL OF THE PLAN OF ALLOCATION, APPROVAL OF THE NOTICE PLAN, AND APPROVAL OF
THE PROPOSED SCHEDULE FOR COMPLETING THE SETTLEMENT PROCESS

**INTRODUCTION**

The parties in two class actions, *Le, et al. v. Zuffa, LLC d/b/a Ultimate Fighting Championship and UFC*, Case No. 2:15-cv-01045 (D. Nev.) (the "*Le* Action") and *Johnson, et al. v. Zuffa, LLC, et al.*, No. 2:21-cv-1189 (D. Nev.) (the "*Johnson* Action") (collectively, the "Actions"), seek preliminary approval of a hard-fought settlement that would resolve both matters (the "Settlement").[1] The terms of the Settlement are set forth in the Settlement Agreement, executed on April 24, 2024.[2] Defendants have agreed to make three cash payments totaling $335 million into the UFC Settlement Fund for the benefit of the Settlement Classes,[3] as well as to provide significant prospective relief that would preserve certain contracting changes that the UFC initiated after the *Le* Action was filed in 2015 and before the *Johnson* Action was filed in 2021. These changes ameliorate some of the conduct Plaintiffs had challenged as anticompetitive. SA ¶¶5, 6.

The Settlement followed nearly a decade of hard-fought litigation. The parties inked a deal, on the eve of trial in the *Le* Action, through extensive arm's-length negotiations between experienced and

---

[1] Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury brought the *Le* Action against one defendant, Zuffa, LLC. On August 9, 2023, the Court certified the "bout class" in the *Le* Action (the "*Le* Class") and appointed all the plaintiffs in the *Le* Action, other than Nathan Quarry, as the class representatives for the *Le* Class (the "*Le* Class Representatives"). *See* ECF No. 839, at 74-75, 78-79. Plaintiff Nathan Quarry was proffered as a class representative for the "Identity Rights Class," which the Court did not certify. *See* ECF No. 839, at 75-78. Plaintiffs Kajan Johnson, Clarence Dollaway, and Tristan Connelly (the proposed "*Johnson* Settlement Class Representatives") brought the *Johnson* Action, naming three defendants, Zuffa, LLC, TKO Operating Company, LLC, and Endeavor Group Holdings, Inc. The *Le* Class Representatives and the *Johnson* Settlement Class Representatives are collectively referred to as "Plaintiffs," and the defendants in both Actions will be referred to collectively as "Defendants" or "UFC."

[2] Citations to the Settlement Agreement will use the format "SA ¶ _." Unless otherwise defined herein, all capitalized terms have the same meanings set forth in Settlement Agreement, attached to the Joint Decl. as Exhibit 1.

[3] The Settlement Classes are: (i) the *Le* Class, and (ii) the proposed *Johnson* Settlement Class. The *Le* Class is defined to include all persons who competed in one or more live professional UFC-promoted MMA bouts taking place or broadcast in the U.S. from December 16, 2010 to June 30, 2017 (the "*Le* Class Period"), but excludes all persons who are not residents or citizens of the U.S. unless the UFC paid such persons for competing in a bout fought in the U.S. *See* ECF No. 839, at 79 (certifying the *Le* Class). The *Johnson* Settlement Class includes all persons who competed in one or more live professional UFC-promoted MMA bouts taking place or broadcast in the United States from July 1, 2017 to the date of preliminary approval of the Settlement. Excluded from the *Johnson* Settlement Class are all persons who are not residents or citizens of the United States unless the UFC paid such persons for competing in a bout fought or broadcast in the United States. SA ¶1.n.

informed counsel facilitated by the nationally renowned mediator, former U.S. District Judge Hon. Layn Phillips. *See* Joint Decl. ¶¶5, 231-32.[4] At the time of Settlement, the parties were fully informed about the strengths, weaknesses, and risks of the Actions given that Plaintiffs had: (a) completed a lengthy pre-filing investigation without the assistance of any governmental enforcement action (*see id.* ¶¶7-10); (b) engaged in many years of detailed fact and expert discovery, motion practice, and trial preparation (*see generally id.* ¶¶16-230); and (c) undertook multiple efforts to settle the matter, including three full-day mediation sessions spread over a series of years (in 2017, 2019, and 2023) (*see id.* ¶¶5, 231-32).

The Settlement is an excellent result for the Settlement Classes. It provides a substantial cash recovery and significant prospective relief notwithstanding the significant litigation risks Plaintiffs faced in both Actions, including those associated with delay. *Id.* ¶¶5, 233-56. According to the proposed Plan of Allocation detailed below and attached as Exhibit 3 to the Joint Decl., *Le* Class members would receive 25% (or more) of the total bout-related compensation each fighter received from the UFC during the *Le* Class Period. And those *Johnson* Settlement Class members not subject to arbitration clauses or class action waivers are likely to recoup as much as 10% of the total bout-related compensation each received from the UFC during the *Johnson* Class Period. *Id.* ¶¶5, 236.

The Settlement is a substantial achievement. Worker-side antitrust class actions like this one, brought under Section 2 of the Sherman Act, are both rare and important. For context on the significance of the Settlement, Plaintiffs solicited input from a highly regarded expert in the application of antitrust law to labor markets, Prof. Eric Posner of the University of Chicago Law School. Prof. Posner observed, based on his research, that the *Le* Action "is the first [labor-side claim under Section 2 of the Sherman Act] ever to survive summary judgment, reach class certification, or even survive a motion to dismiss." Declaration of Prof. Eric A. Posner in Support of Plaintiffs' Motion for Preliminary Approval of the Settlement ("Posner Decl.") ¶1; Joint Decl. ¶245.[5] He continued by stating that the

---

[4] The term "Joint Decl." refers to the accompanying Joint Declaration of Eric L. Cramer, Richard A. Koffman, and Joseph R. Saveri in Support of Plaintiffs' Motion for Preliminary Approval of the Settlement, dated May 21, 2024.

[5] The Posner Decl. is attached as Exhibit 2 to the Joint Decl.

Settlement is significant, in part, because it "will encourage more plaintiffs to bring cases to enforce an important but neglected policy embodied in the antitrust laws—that of ensuring that labor markets, and not just product markets, are competitive." *Id*. In short, the Settlement reflects an important resolution of a long-running, hard-fought, and complex case against a large and powerful company in one of the country's most popular sports. If approved, the Settlement would provide substantial immediate monetary and prospective relief to all members of the Settlement Classes.

As detailed below, the Settlement is fair, reasonable, and adequate. Accordingly, Plaintiffs request that the Court preliminarily approve the Settlement, provisionally certify the *Johnson* Settlement Class, direct that notice of the Settlement be provided to the Settlement Classes, and grant other relief essential to effectuating the Settlement, including setting a date for a Fairness Hearing. Counsel for Defendants have reviewed Plaintiffs' motion and proposed order and certain other related supporting papers and join in the relief requested.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Investigation and Filing of the *Le* Action

Co-Lead Class Counsel[6] and Supporting Counsel[7] opened investigations into potentially anticompetitive conduct in the Mixed Martial Arts ("MMA") industry well-before filing the *Le* Action and without the benefit of a governmental enforcement action. *See* Joint Decl. ¶¶7-8. Co-Lead Counsel and Supporting Counsel at Warner Angle, in conjunction with the *Le* Class Representatives and Nathan Quarry, devoted thousands of hours to the pre-complaint investigation of this matter. *Id*.

Plaintiffs Cung Le, Nathan Quarry ("Quarry"), and Jon Fitch filed the *Le* Complaint on December 16, 2014, in the United States District Court for the Northern District of California. *Id*. ¶9. In the ensuing weeks, other fighters filed similar proposed class actions. After the cases were transferred to this District, this Court granted consolidation of the various matters into the *Le* Action on June 11, 2015. *Id*.

---

[6] Co-Lead Class Counsel refers to Berger Montague PC, Cohen Milstein Sellers & Toll PLLC, and the Joseph Saveri Law Firm LLP.

[7] Supporting Counsel refers to all or some of the following firms: Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP, Kemp Jones, LLP, Warner Angle Hallam Jackson & Formanek PLC, Clark Hill PLC, The Radice Law Firm, and Spector Roseman Kodroff & Willis.

### B.     Motions to Transfer and Dismiss

On January 30, 2015, Zuffa moved to transfer the *Le* Action from the United States District Court for the Northern District of California to this District, and the California Court granted that motion on June 2, 2015. *Id.* ¶¶11, 13. While the motion to transfer was pending, Zuffa moved to dismiss the complaints. *Id.* ¶12. On September 25, 2015, after briefing and oral argument, the Court denied Zuffa's motion to dismiss from the bench, issuing a written Order on October 19, 2016. *Id.* ¶14. Plaintiffs filed their Consolidated Amended Complaint on December 18, 2015, which Zuffa answered on January 19, 2016. *Id.* ¶15

### C.     Fact Discovery in the *Le* Action

Co-Lead Class Counsel, along with Supporting Counsel, continued to litigate the case aggressively, proceeding with voluminous and complex fact discovery. *See id.* ¶¶16-76. Plaintiffs' fact discovery work included ensuring that the UFC and certain third parties preserved relevant electronically stored data and information ("ESI"), *id.* ¶¶20-23; pursuing focused written discovery from Zuffa and third parties (including by litigating the scope of productions and purported work product and privilege claims), *id.* ¶¶24-57; taking nearly 30 depositions of fact witnesses (in addition to seven days of testimony of Zuffa's Rule 30(b)(6) designees), *id.* ¶¶58-61; scouring publicly available sources of relevant information and evidence (including data and videotaped statements of key witnesses in the case), *id.* ¶¶62-66; collecting and reviewing document productions from the Class Representatives, *id.* ¶¶67-71; and preparing the Class Representatives for their depositions and defending those depositions. *Id.* ¶¶72-76.[8]

### D.     Expert Discovery in the *Le* Action

Given the importance of economic issues in this case, Co-Lead Class Counsel retained three economic experts: Hal J. Singer, Ph.D., Professor Andrew Zimbalist, and Professor Alan Manning, as

---

[8] In addition to the Class Representatives' participation in the collection of documents in their possession, custody, and control, as well as preparing and sitting for their depositions, they were actively involved in the case, attending: (1) regular teleconferences throughout the fact discovery period to stay current with case developments; (2) numerous court hearings, including for the motion to transfer, motion to dismiss, motion for summary judgment, motion for class certification, and several other hearings and status conferences; (3) three mediation sessions; and (4) preparation sessions for their trial testimony. *Id.* ¶¶77-81.

well as a forensic accounting expert, Guy Davis. *Id.* ¶¶82-84. Co-Lead Class Counsel collectively spent substantial time and effort working with these experts to facilitate their understanding of the case and the record; their preparation of their expert reports; and their preparation for testimony at their depositions, at the class certification hearing, and at the anticipated April 2024 trial. *Id.* ¶87; *see also id.* ¶¶82-125. In addition, Co-Lead Class Counsel also analyzed the reports produced by Zuffa's five experts, who collectively produced reports totaling 650 pages. Plaintiffs deposed each of Zuffa's experts in 2017. *See id.* ¶¶127-30.

### E.    Class Certification and *Daubert* Proceedings in the *Le* Action

#### 1.    Class Certification and *Daubert* Briefing.

Following the completion of fact and expert discovery in the *Le* Action, Co-Lead Class Counsel prepared a class certification motion and brief along with supporting materials, followed by a reply brief that responded to Zuffa's opposition brief arguments. *Id.* ¶¶131-32. On the same day that Plaintiffs filed their Motion for Class Certification (February 16, 2018), Zuffa moved to exclude all of Plaintiffs' experts. Co-Lead Class Counsel successfully opposed those motions, and Zuffa's subsequent renewal of those motions. *See id.* ¶¶133-35.

#### 2.    The Evidentiary Hearing on Class Certification.

The Court held a seven-day evidentiary hearing on Plaintiffs' Motion for Class Certification on August 26, August 27, August 28, August 30, September 12, September 13, and September 23, 2019. *See id.* ¶145, *see also id.* ¶¶136-47. On September 12, 2019, at the Court's request, the parties submitted supplemental briefs in support of and in opposition to class certification. *Id.* ¶147.

#### 3.    Post-Hearing Proceedings on Class Certification.

Over the next few years, Co-Lead Class Counsel attended multiple status conferences, some by videoconference due to the coronavirus pandemic. *Id.* ¶148. At the second of these status conferences, on December 10, 2020, the Court announced its intention to grant Plaintiffs' Motion for Class Certification as to the Bout Class.[9] *Id.* ¶149. On August 9, 2023, the Court granted in part Plaintiffs'

---

[9] Following that December 10, 2020 status conference, on April 6, 2021, a Ninth Circuit panel vacated a district court order certifying three classes in a price-fixing case. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 993 F.3d 774 (9th Cir. 2021), *on reh'g en banc*, 31 F.4th 651 (9th Cir.

Motion for Class Certification, certifying the proposed Bout Class (and denying certification of the proposed identity rights class).[10] *Id.* ¶152.

### 4.   Notice of Class Certification to the *Le* Class.

After the Ninth Circuit denied Zuffa's Rule 23(f) petition, Co-Lead Class Counsel solicited bids from claims administration vendors and selected Angeion Group to issue notice to the *Le* Class. *Id.* ¶153. Co-Lead Class Counsel worked with Angeion to develop a Notice Plan and effectuate notice to the *Le* Class. *Id.* Not a single member of the *Le* Class opted out. *Id.*

### F.   Zuffa's Motions for Summary Judgment in the *Le* Action

Zuffa filed three separate motions for summary judgment. *Id.* ¶159. First, during discovery, Zuffa filed a motion for partial summary judgment seeking to dismiss as untimely Quarry's claims relating to identity rights. *Id.* ¶160. Plaintiffs opposed the motion, and the Court ultimately denied it without prejudice. *Id.* Second, following briefing on Plaintiffs' Motion for Class Certification and Zuffa's motions to exclude Plaintiffs' experts, Zuffa filed another motion for summary judgment seeking summary dismissal of the entire case, which Plaintiffs opposed. *Id.* ¶161. The Court denied that motion without prejudice. *Id.* Third, following the Court's Class Certification Order, Zuffa renewed its motion for summary judgment. Plaintiffs opposed the motion, and the Court denied it on January 18, 2024. *Id.* ¶¶162-63.

### G.   The Investigation and Filing of the *Johnson* Action, Litigating the Motion to Dismiss, and Preliminary Discovery

While awaiting the Court's Order certifying the Bout Class in the *Le* Action, Plaintiffs Kajan Johnson and Clarence Dollaway retained Co-Lead Class Counsel, along with Supporting Counsel at

---

2022). Zuffa raised that decision to this Court on April 8, 2021. Joint Decl. ¶151. Co-Lead Class Counsel filed a response to contextualize *Olean*'s applicability to this litigation. *Id.* The Ninth Circuit subsequently vacated the panel order and took the matter up *en banc. Id.* Then on April 8, 2022, the Ninth Circuit filed its opinion in *Olean* reversing the panel decision and affirming the district court's certification of three classes. *Id.* The Supreme Court denied certiorari in *Olean* on November 14, 2022. *Id.*

[10] Zuffa filed a petition pursuant to Fed. R. Civ. P. 23(f), seeking to appeal the Court's Order certifying the Bout Class. Joint Decl. ¶¶154-156. Co-Lead Class Counsel opposed Zuffa's petition, filed a response opposing Zuffa's request for a reply brief, and filed a proposed sur-reply. *Id.* The Ninth Circuit denied Zuffa's 23(f) Petition on November 1, 2023. *Id.*

Warner Angle, to file a new action on behalf of UFC fighters who appeared in bouts for the UFC from July 1, 2017 to the present. *Id.* ¶164. This "*Johnson* Action" thus covered the period following the end of the *Le* Action's Class Period (which ran from December 16, 2010 through June 30, 2017). *Id.*

Co-Lead Class Counsel's investigation into the *Johnson* Action focused on (1) laying a sufficient basis for alleging that Zuffa's conduct alleged in the *Le* Action continued beyond June 30, 2017, and (2) analyzing how the alleged misconduct was affected by the sale of Zuffa in 2016 to WME-IMG Endeavor. *Id.* ¶165.

Zuffa and Endeavor Group Holdings, Inc. moved to dismiss the *Johnson* Action. *Id.* ¶167. Plaintiffs opposed the motion, and the Court denied the motion on September 30, 2022. *Id.*

Endeavor renewed its motion to dismiss on December 1, 2023. *Id.* ¶168. In response to Endeavor's renewed motion to dismiss, Co-Lead Class Counsel, with assistance from Warner Angle, further investigated the changes in the corporate structure around the UFC and filed an Amended Complaint in the *Johnson* Action adding TKO Group Holdings, Inc. as a defendant and adding a new plaintiff, Tristan Connelly. *Id.* ¶169.

Zuffa and TKO Group Holdings, Inc. filed an Answer on February 5, 2024. *Id.* ¶171. Endeavor filed a motion to dismiss. *Id.* The Settlement in the Actions was reached prior to Plaintiffs' briefing of Endeavor's third motion to dismiss. *Id.* ¶172. Discovery in the *Johnson* Action commenced prior to the Settlement. *Id.* ¶¶173, 186.

### H.   Pre-Trial Proceedings in the *Le* Action

#### 1.   Scheduling Trial in the *Le* Action

At a status conference on August 21, 2023, the Court announced that a trial on liability and damages in the *Le* Action would take place in March or April of 2024, later informing the parties that trial would commence on April 8, 2024. *Id.* ¶¶183-84. The Court later re-set the trial for April 15, 2024. *Id.*

#### 2.   Pretrial Tasks and Work in the *Le* Action

As the *Le* Action sped toward trial, Co-Lead Class Counsel, with assistance from Supporting

Counsel, engaged intensely in preparation. *Id.* ¶192.[11] On March 4, 2024, the Court heard argument on the motions *in limine*. *Id.* ¶214. Plaintiffs prevailed on certain important motions *in limine* at that hearing, including on a motion seeking to strike 13 allegedly late-disclosed witnesses from Zuffa's witness list and to strike evidence from after the June 30, 2017 close of the *Le* Class Period. *Id.* ¶215. The parties filed Trial Briefs on February 22, 2024. *Id.* ¶¶220-21.

### THE SETTLEMENT

Taken as a whole, the Settlement is an extraordinary result that brings immediate and prospective relief to the Settlement Classes. *See* Joint Decl. ¶¶5, 231-56. As referenced earlier, Prof. Posner observed that the *Le* Action may well be the first Section 2 antitrust case involving worker compensation to certify a class and survive summary judgment. Posner Decl. ¶1. He opined that one important result of the litigation of the *Le* Action will be the "judicial opinions [the *Le* Action] produced and [that] the settlement for the class members will spur other private plaintiffs to pursue meritorious claims in this important but neglected area of the law." *Id.* ¶24.

The Settlement Agreement provides two components of relief to the Settlement Classes: (i) $335 million in cash, and (ii) important prospective relief in the form of locking in certain contract and business practice changes that Zuffa initiated after the filing of the *Le* Action in 2015 and before the filing of the *Johnson* Action in 2021. *See* SA ¶¶3, 6; Joint Decl. ¶234. The cash portion comprises a significant percentage of damages sought by Plaintiffs and will provide compensation to the members

---

[11] Plaintiffs' counsel: (1) reviewed the deposition transcripts in the case to identify the witnesses most relevant to the potential trial presentation, and designated those witnesses' testimony; (2) updated Plaintiffs' Rule 26(a) disclosures; (3) compiled Plaintiffs' trial witness list; (4) served Plaintiffs' initial witness list and deposition designations; (5) reviewed Zuffa's deposition designations, and prepared responses, objections and counter-designations; (6) prepared Plaintiffs' trial exhibit list; (7) reviewed Zuffa's trial exhibit list, which contained more than 960 entries, and prepared objections, as appropriate, to those exhibits; (8) responded to Zuffa's objections to Plaintiffs' trial exhibits; (9) worked with Zuffa's counsel to identify any joint exhibits the parties agreed should be admitted; (10) researched and provided to Zuffa a list of potential motions *in limine*; (11) met and conferred regarding the parties' proposed motions *in limine*, reaching agreement on some of them; (12) drafted and filed twenty motions *in limine*; (13) reviewed and prepared to respond to Zuffa's eleven motions *in limine*; and (14) prepared direct and cross-examinations for live trial witnesses; (15) began preparing Plaintiffs' live witnesses to testify at trial; (16) prepared opening and closing statements; (17) prepared and issued trial subpoenas; and (18) prepared for and participated in two mock jury exercises that shed significant light on the strengths and weaknesses of the parties' cases for trial. *Id.* ¶¶196-218, 226-33.

8

of the Settlement Classes in the form of a substantial percentage of the amount of money these fighters earned during their UFC fighting careers. *Id*. ¶236.

Moreover, the prospective relief provided by the Settlement preserves, for a period of five years after final approval, six important business practice changes that Zuffa made after the filing of the *Le* case in 2015 and before filing of the *Johnson* Action in 2021. These include:

1. Any Exclusive Negotiating Period contained in Zuffa's Promotional and Ancillary Rights Agreements will not exceed 30 days;

2. Any Right to Match Period following the expiration of an Exclusive Negotiating Period contained in Zuffa's Promotional and Ancillary Rights Agreements will not exceed four months;

3. Zuffa will limit any extension of the Term of its Promotional and Ancillary Rights Agreements in the event a fighter turns down a bout with an opponent Zuffa designates to the longer of the length of time sufficient to find a new opponent or for six months;

4. Zuffa will change its practice on how the "Retirement Clause" operates to place a maximum of four years to the suspension of the Term of the Promotional and Ancillary Rights Agreement while a fighter is retired or disabled, or otherwise allow for earlier termination of the Promotional and Ancillary Rights Agreement;

5. Zuffa agrees that UFC fighters retain the right to use their own identities, including, for example, the sale of the fighters' names, images, voices and likenesses by third parties of Merchandise; and

6. Zuffa agrees to provide fighters up to three still images of the fighter, the licensing of which will be governed by a license application to and approval by Getty Images.

SA ¶6; Joint Decl. ¶237.

## ARGUMENT

### I.     Standards for Preliminary Approval of the Settlement

Governing law supports preliminary approval. There is "'a strong judicial policy' that favors class action settlements." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 229 F. Supp. 3d 1052, 1061 (N.D. Cal. 2017) (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)); *Moorer v. StemGenex Med. Grp., Inc.*, 2021 WL 4993054, at *2 (S.D. Cal. Oct. 26, 2021) ("Voluntary conciliation and settlement are the preferred means of dispute resolution in complex class action litigation."); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("Unless the settlement is clearly inadequate, its acceptance and approval are preferable to

9

lengthy and expensive litigation with uncertain results.").[12]

A class action settlement requires Court approval pursuant to Fed. R. Civ. P. 23(e). This Rule requires the Court to consider whether: (a) the class was adequately represented; (b) the settlement was negotiated at arm's-length; (c) the relief provided to the class is adequate; and (d) the proposal treats class members equitably. *See* Fed. R. Civ. P. 23(e)(2). Later in the process, at the final approval stage, the Ninth Circuit has traditionally identified the following factors for a court's analysis, which overlap with the Rule 23(e)(2) requirements: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining a class action status throughout the trial; the amount offered in the settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Szymborski v. Ormat Techs., Inc.*, 2012 WL 4960098, at *2 (D. Nev. Oct. 16, 2012) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)[13]).

To grant *preliminary* approval, the Court does not have to undertake an in-depth consideration of all the relevant factors necessary for final approval. The issue to be resolved now is only whether "the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1). The "[c]ourt need only find [the settlement] falls within 'the range of reasonableness.'" *In re High-Tech Emp. Antitrust Litig.*, 2015 WL 12991307, at *1 (N.D. Cal. Mar. 3, 2015). Preliminary approval is viewed as an "'initial evaluation' of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties." *Id.* (citing Manual § 21.632).

Plaintiffs demonstrate below that the Settlement satisfies the elements of Rule 23(e)(2), as well as those additional factors identified in *Hanlon* that do not overlap with the Rule 23(e)(2) elements (extent of discovery completed and stage of proceedings, risk of maintaining class actions status, and

---

[12] All references to internal quotations or cases cited are omitted from the citations in this memorandum except where expressly provided.

[13] Overruled on other grounds by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

experience and views of Settlement Class Counsel).[14] Plaintiffs also demonstrate that certification of the proposed *Johnson* Settlement Class under Fed. R. Civ. P. 23(b)(3) for settlement and judgment is warranted. Accordingly, notice should be issued to the Settlement Classes pursuant to the plan of notice (the "Notice Plan"), as discussed in more detail at Part IV *infra*.

## II.     The Settlement Satisfies the Elements for Preliminary Approval

### A.  The Settlement Classes Have Been Adequately Represented

Plaintiffs satisfy the first requirement of Rule 23(e)(2), which asks whether "the class representatives and class counsel have adequately represented the class[.]" Fed R. Civ. P. 23(e)(2)(A). Determining adequacy requires "[r]esolution of two questions . . . : (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Both favor preliminary approval here.

There are no conflicts of interest among the Class Representatives and Settlement Class Counsel with the members of the Settlement Classes. The Court already found Settlement Class Counsel and the *Le* Class Representatives adequate when it certified the *Le* Class. *See* ECF No 839, at 17-18, 78-79. Settlement Class Counsel and the *Johnson* Settlement Class Representatives also have no conflicts of interest with members of the *Johnson* Settlement Class. For both Actions, the Class Representatives' interests have been aligned with members of the respective Class, and Settlement Class Counsel have vigorously litigated on behalf of the Settlement Classes. The extent and breadth of Settlement Class Counsel's efforts in litigating the Actions is described in in the Joint Declaration (¶¶7-230), which demonstrates that counsel has capably and zealously pursued the interests of the Settlement Classes.

---

[14] The *Hanlon* factors addressing the strength of plaintiffs' case, the risks and costs of further litigation, and the amount of settlement generally overlap with Rule 23(e)(2)(C) addressing the adequacy of the relief obtained via settlement. Two of the factors the Ninth Circuit lists in *Hanlon* are not pertinent to preliminary approval here: (i) there was no involvement of a government participant in the litigation to examine (although that the Settlement was obtained without any benefit of government assistance weighs in favor of preliminary approval (*see, e.g., Metrow v. Liberty Mut. Managed Care LLC*, 2018 WL 6265085, at *9 (C.D. Cal. June 14, 2018) (absence of government participant in the action favors approval)); and (ii) evaluating the reaction of the class is conducted at the final approval stage following notice. *See Hanlon*, 150 F.3d at 1026.

**B.  The Settlement Was Reached Through Arm's-Length Negotiations**

The Settlement further satisfies the second element of Rule 23(e)(2), which requires that the Settlement result from arm's-length negotiations. Fed R. Civ. P. Rule 23(e)(2)(B). Class settlements are presumed fair when they are reached "following sufficient discovery and genuine arm's-length negotiation." *DIRECTV*, 221 F.R.D. at 528. "That the settlement was reached with the assistance of an experienced mediator further suggests that the settlement is fair and reasonable." *Moorer*, 2021 WL 4993054, at *5. Each of these elements is present here.

*First*, the parties in the *Le* Action engaged in significant discovery, both fact and expert, and analysis of that discovery through to the eve of trial. *See* Joint Decl. ¶¶16-130. That familiarity with the record enabled Settlement Class Counsel to develop a comprehensive understanding of the claims, the litigation risks, and the value of the claims prior to settling the Actions. *See DIRECTV*, 221 F.R.D. at 527 (settlement after discovery approved "because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case"); *Victorino v. FCA US LLC*, 2023 WL 3296155, at *5 (S.D. Cal. May 5, 2023) (preliminary approval where "Plaintiff thoroughly investigated and researched the claims in litigating this action and preparing [for] trial").

*Second*, the parties reached the Settlement through arm's-length negotiations undertaken in good faith by highly experienced counsel, including full day mediations held years apart (in 2017, 2019, and 2023). *See* Joint Decl. ¶¶231-34. After each mediation session, the parties continued discussions through the mediator, the Hon. Layn Phillips. *Id*; *see Abadilla v. Precigen, Inc.*, 2023 WL 7305053, at *3 (N.D. Cal. Nov. 6, 2023) (settlement mediated before J. Phillips (ret.) preliminary approved); *High-Tech Emp.*, 2015 WL 12991307, at *1 (same); *Fusion Elite All Stars, et al. v. Varsity Brands, LLC, et al.*, No. 20-cv-2600, ECF No. 336 (W.D. Tenn. Apr. 25, 2023) (same (citing preliminary approval brief identifying J. Phillips as mediator)).

**C.  The Relief Provided by the Settlement Is More Than Adequate**

The Settlement satisfies the third requirement of Rule 23(e), namely that the relief provided by the Settlement is adequate. Fed. R. Civ. P. 23(e)(2)(C). The rule directs the Court to consider four factors as part of this analysis: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of distributing relief to the class; (iii) the terms and timing of attorneys' fees; and (iv) any related

agreements. *Id.* at Rule 23(e)(2)(C)(i)-(iv). A related factor the Ninth Circuit is the amount offered in the settlement. *See Hanlon*, 150 F.3d at 1026. Each of these factors supports preliminary approval.

### 1.  The Costs, Risks, and Delay of Trial and Appeal.

"[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *DIRECTV*, 221 F.R.D. at 526 (quoting *Newberg on Class Actions*, § 11:50, at 155 (4th ed. 2002)). The Court "may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010).

While Settlement Class Counsel believe that the claims asserted in the Actions are meritorious and that the evidence supports those claims, the continued prosecution of the Actions would have posed significant risks and additional costs. *See generally* Joint Decl. ¶¶246-56. Defendants have vigorously asserted multiple challenges to the merits of Plaintiffs' claims, and defended by arguing, among many other things, that fighters and the sport more generally benefited from the challenged conduct, that UFC fighter pay rose significantly over time, that the UFC's acquisitions saved failing promotions, and that the UFC's success was due to procompetitive and not anticompetitive conduct. *See* Joint. Decl. ¶¶248-49. While the *Le* Class was certified and its petition for interim appellate review denied, Zuffa would still have had the ability to challenge certification on appeal after trial. *Id.* ¶250. Trial in the *Le* Action also presented real risks. Antitrust trials are "arguably the most complex action[] to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome." *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011). While an adverse outcome in the *Le* Action would not have been binding on the *Johnson* Action, a loss would nonetheless have devalued the *Johnson* Action as a practical matter. *Id.* ¶255.

Further, in order to preserve the trial date and avoid the complications and delays of additional discovery, Plaintiffs in the *Le* Action gave up the ability to pursue injunctive relief. Thus, all of the Settlement Class Members would have had to wait for the *Johnson* Action to conclude in order to obtain any possible prospective relief. *Id.* ¶253. Moreover, the *Johnson* Settlement Class members would have had to wait a substantial amount of time for any semblance of potential relief given that

13

fact discovery in the *Johnson* Action had only just begun. Moreover, the *Johnson* Action would have faced certain potential headwinds, including contending with the contractual changes that Zuffa had implemented after the *Le* Action commenced, and the fact that more than half of the Johnson Settlement Class was subject to arbitration clauses and class action waivers (which devalued the overall case). *See* Singer Decl. ¶12 & Table 1; *see also* Joint Decl. ¶¶256.

### 2. The Proposed Plan of Allocation Is Fair and Effective.

Preliminary approval is further justified because the proposed method of distributing relief to the Settlement Classes is equitable, efficient, and effective. *See*, *e.g.*, Fed. R. Civ. P. 23(e)(2)(C)(ii); *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001) (a plan of allocation must be "fair, reasonable, and adequate"). The proposed Plan of Allocation (the "Plan"), which was developed with input from Plaintiffs' economic expert, Dr. Hal Singer, treats each of the Settlement Class Members fairly while also reasonably accounting for differences among and within the Settlement Classes. *See generally* Declaration of Hal J. Singer, Ph.D. In Support of Plan of Allocation ("Singer Decl."), attached as Exhibit 4 to the Joint Decl. Dr. Singer explains that he developed the Plan "[b]ased on my prior impact and damages analyses from my reports in the *Le* Case, and my knowledge of the similar allegations in the *Johnson* Case," Singer Decl. ¶9, and from his analysis of Zuffa's bout pay data provided by Zuffa. *See id.* ¶¶12, 17, 19, 25. The data Defendants provided in the *Le* Action and in conjunction with the Settlement will be used to determine the *pro rata* distributions described below, as well as to permit the Claims Administrator to pre-populate claim forms with information needed to complete the form (and thus make the claims process streamlined and efficient for the Settlement Class members). *See id.* ¶¶19, 25.

The first step of the Plan allocates the Net UFC Settlement Fund with 75% to the *Le* Class (the "*Le* Class Tranche") and 25% to the *Johnson* Settlement Class (the "*Johnson* Settlement Class Tranche"). Plan ¶4; Singer Decl. ¶¶10-15.[15]

Dr. Singer explains that this allocation as between *Le* and *Johnson* is justified on, at least, four

---

[15] In the event the calculated total amount allocated for all valid claims submitted against the *Johnson* Settlement Class Tranche (using the method described below) falls below 25% of the Net UFC Settlement Fund, then the remainder would be reallocated to the *Le* Class Tranche. Plan ¶5; Singer Decl. ¶¶10, 24.

grounds. Singer Decl. ¶¶11-15. First, the *Le* Action is much older and covers an earlier class period. *Id.* ¶11. Assessed on a "time value of money basis," the *Le* Class Members have been subject to more delay in compensation and would be entitled to a higher recovery relative to the *Johnson* Settlement Class Members on that basis alone. *Id.* ¶¶11, 13. Second, the *Le* Action was fully litigated up to the eve of trial, while the *Johnson* Action was in the early stage of discovery. *Id.* ¶¶11, 14. This fact gave the *Le* Action more leverage in settlement than the *Johnson* Action, while the latter also benefitted from that leverage. *Id.* Third, the UFC made changes to its fighter contracts seemingly in response to the *Le* Action, which benefitted the *Johnson* Settlement Class Members. *Id.* ¶11. Fourth, more than half of the *Johnson* Settlement Class Members are subject to arbitration clauses and class action waivers— meaning that most *Johnson* Settlement Class Members could have no realistic means of relief if forced to litigate to conclusion—reducing the overall value of the *Johnson* Action. *Id.* ¶¶11, 14.

For funds allocated to the *Le* Class Tranche, the Plan allocates money to *Le* Class Members who submit timely, valid claims ("Claimants") based on two *pro rata* factors: (i) 80% of the *Le* Class Tranche is to be distributed on the basis of each *Le* Claimant's *pro rata* share of all Event Compensation[16] earned by *Le* Claimants during the *Le* Class Period; and (ii) 20% of the *Le* Class Tranche is to be distributed on the basis of each *Le* Claimant's *pro rata* share of all *Le* Claimants' bouts fought during the *Le* Class Period. Plan ¶6; Singer Decl. ¶16. Under the Plan, each *Le* Claimant will receive at least a minimum distribution amount of $8,000 (though most will receive many multiples of that amount). *Id.*

The 80/20 weighting between total Event Compensation and number of bouts fought provides an important means of ensuring that the distributions reasonably reflect the extent of each Claimant's injures. Dr. Singer explains that the mid-level journeymen fighters may have had their compensation squeezed to a greater degree than top or bottom-level fighters. *Id.* ¶18. It is possible that, while Zuffa's alleged misconduct harmed all fighters, the top fighters may have enjoyed some countervailing bargaining power that the mid-level fighters did not have. *Id.* Allocating 20% of Settlement funds to

---

[16] The term "Event Compensation" refers to a fighter's total event-level compensation that is the sum of (1) show and win purses, (2) discretionary/performance pay, (3) PPV royalties, and (4) letters of agreement. *See* Singer Decl. p. 8 n.20.

distribute *pro rata* based on the number of bouts fought, as opposed to relying solely on Event Compensation, recognizes that the mid-level fighters without as much name recognition may have been relatively better off in the but-for world as compared to the more popular fighters. *Id.* In short, allocating most of the funds in proportion to compensation amounts, but also allocating at least some portion of the funds based on number of bouts fought, strikes a fair balance. This balance will help ensure that the distributions from the Net Settlement Fund will correlate with the degree of harm each Claimant suffered. This type of distribution on a *pro rata* basis, with distributions correlating with harm, is deemed fair, adequate, and reasonable. *See Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *12 (N.D. Cal. Dec. 18, 2018); *Loeza v. JPMorgan Chase Bank, NA*, 2015 WL 13357592, at *8 (S.D. Cal. Aug. 18, 2015) ("the funds will be distributed on a weighted *pro rata* basis, which guarantees equal treatment of class members").[17]

For the *Johnson* Settlement Class Tranche, the plan separates *Johnson* Claimants into two groups: (i) fighters *without* arbitration clauses or class action waivers in their fighter contracts; and (ii) fighters *with* arbitration clauses or class action waivers in their fighter contracts. Plan ¶8; Singer Decl. ¶20. For the first group, the Plan allocates the funds in the *Johnson* Settlement Class Tranche to *Johnson* Claimants based on two *pro rata* factors: (i) 80% of the *Johnson* Settlement Tranche to be distributed on the basis of each *Johnson* Claimant's *pro rata* share of all Event Compensation earned by *Johnson* Claimants during the *Johnson* Settlement Class Period; and (ii) 20% of the *Johnson* Settlement Class Tranche to be distributed on the basis of each *Johnson* Claimant's *pro rata* share of all *Johnson* Claimants' bouts fought during the *Johnson* Settlement Class Period. Plan ¶9; Singer Decl. ¶21. This procedure mirrors that used for the *Le* Class Tranche.

To ensure fairness between the *Le* Class and the *Johnson* Settlement Class, based on the factors discussed above regarding the bases for the 75/25 allocation between the two Settlement Classes, the Plan provides that the distribution from the *Johnson* Settlement Class Tranche to those *Johnson* Claimants *without* an arbitration clause or class action waiver will be capped at 10 percent of each *Johnson* Claimant's Event Compensation during the *Johnson* Settlement Class Period, or $7,000,

---

[17] *Affirmed sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020).

whichever is higher. Plan ¶11; Singer Decl. ¶22. The Plan also provides a $7,000 minimum distribution amount to these *Johnson* Claimants (*i.e.*, those without class action waivers or arbitration clauses).

For the second group of *Johnson* Claimants, who have arbitration clauses or class action waivers in their fighter contracts, these Claimants will receive a flat distribution amount of $5,000. Plan ¶10; Singer Decl. ¶23. Additionally, any fighter who is a member of both Settlement Classes will receive a distribution amount that is the sum of the two allocation procedures used for the *Le* Class Tranche and the *Johnson* Settlement Class Tranche for that individual. Plan ¶10; Singer Decl. ¶26.

Finally, the Plan includes procedures to encourage and facilitate Settlement Class Member participation, including mailing pre-populated claim forms setting out critical information necessary for computation of the claim (where the information is available) (Plan ¶¶1-2), communication and resolution procedures for any deficient or late claims (Plan ¶¶14-15), a procedure for managing challenged claims (Plan ¶¶18-20), and a fair dispute resolution process (Plan ¶¶25-26). The Plan will be managed by an experienced claims administrator (Plaintiffs propose Angeion, *see* Part V *infra*) with assistance from Dr. Singer's consulting firm, Econ One, and Co-Lead Class Counsel. For all these reasons, the Court should preliminarily approve the Plan.

### 3. Settlement Class Counsel's Request for Fees and Expenses, and Service Awards for the Class Representatives Is Reasonable.

Settlement Class Counsel intend to ask the Court for an award of attorneys' fees of no more than one-third of the UFC Settlement Fund (plus interest), and reimbursement of litigation expenses of no more than $11 million (to be documented and supported in Plaintiffs' fee petition filed later in the process). For current purposes, the Court need to evaluate the merits of Plaintiffs' intended fee and expense requests, but merely approve the notices that will identify these requests so that class members may evaluate them. *See, e.g.*, *Mandalevy v. BofI Holding, Inc.*, 2022 WL 1556160, at *10 (S.D. Cal. May 17, 2022) ("Court need not determine at the preliminary approval stage whether it will ultimately approve an award"); *Cottle v. Plaid Inc.*, 340 F.R.D. 356, 378 (N.D. Cal. 2021) ("court does not award fees at the preliminary approval stage"); *Castillo v. ADT LLC*, 2016 WL 6441614, at *9 (E.D. Cal. Nov. 1, 2016) ("court will therefore not evaluate the fee award at length here in considering whether the settlement is adequate").

17

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF THE SETTLEMENT
IN BOTH ABOVE-CAPTIONED MATTERS, PROVISIONAL CERTIFICATION OF THE PROPOSED JOHNSON SETTLEMENT CLASS,
PRELIMINARY APPROVAL OF THE PLAN OF ALLOCATION, APPROVAL OF THE NOTICE PLAN, AND APPROVAL OF
THE PROPOSED SCHEDULE FOR COMPLETING THE SETTLEMENT PROCESS

A fee award of one-third is reasonable considering the significant amount of work Settlement Class Counsel performed in developing and litigating the Actions, the length of time these cases were pending, the fact that counsel prosecuted and funded these cases on a complete contingency basis, and in light of the significant results achieved in the Settlement. *See Rodriguez v. Nike Retail Servs., Inc.*, 2022 WL 254349, at *6 (N.D. Cal. Jan. 27, 2022) (approving one-third fee award "especially in light of the significant amount of work Class Counsel performed in this case, … and the excellent results achieved"); *see also* Joint Decl. ¶¶7-230 (describing Settlement Class Counsel's work); *id*. ¶¶ 231-45 (discussing the Settlement benefits). The typical range for attorneys' fees is generally considered to be 20% to 33 1/3%, and the percentage award "varies depending on the facts of the case, and in 'most common fund cases, the award exceeds [25%].'" *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010). Many courts have approved a fee award of one-third in common fund cases where the results are significant for class members. *See*, *e.g.*, *In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *1-*2 (N.D. Cal. Sep. 20, 2018) (antitrust class action approving 33% fee award); *Meijer, Inc. v. Abbott Labs.*, 2011 WL 13392313, at *2 (N.D. Cal. Aug. 11, 2011) (same); *Tawfilis v. Allergan, Inc.*, 2018 WL 4849716, at *7 (C.D. Cal. Aug. 27, 2018) (same); *see also In re Heritage Bond Litig.*, 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005) (class action approving 33% fee award); *Vasquez*, 266 F.R.D. at 492 (same); *Rodriguez*, 2022 WL 254349, at *6 (same).[18]

Similarly, courts will review and approve a request for reasonable expenses as part of the final approval process. Courts recognize that Settlement Class Counsel are permitted to recoup "reasonable expenses that would typically be billed to paying clients in non-contingency matters," such as those costs "incidental and necessary to the effective representation of the Class." *Trosper v. Stryker Corp.*, 2015 WL 5915360, at *1 (N.D. Cal. Oct. 9, 2015) (citing *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)).

Settlement Class Counsel will also seek service awards of $250,000 each for the *Le* Class

---

[18] *See also In re Urethane Antitrust Litig.*, 2016 WL 4060156, at *4 (D. Kan. July 29, 2016) (antitrust class action approving 33% fee award); *In re Broiler Chicken Antitrust Litig.*, 2021 WL 5578878, at *4 (N.D. Ill. Nov. 30, 2021) (same); *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 2024 WL 815503, at *16 (E.D. Pa. Feb. 27, 2024) (same); *In re Opana ER Antitrust Litigation*, No. 14-cv-010150, ECF No. 1085, ¶15 (N.D. Ill. Nov. 03, 2022) (approving 36% fee award).

Representatives and $60,000 for each of the *Johnson* Settlement Class Representatives. *See Andrews v. Plains All Am. Pipeline L.P.*, 2022 WL 4453864, at *4 (C.D. Cal. Sept. 20, 2022) ("Incentive awards are fairly typical in class action cases."). These requests are on the high end for such awards but is in line with other cases with significant results where courts have granted high service awards.[19] The Class Representatives collectively have devoted thousands of hours assisting in the Actions, Joint Decl. ¶¶2, 72-81, and as will be explained in more detail at final approval, these requested service awards are appropriate here given the extraordinary services of the Class Representatives in these Actions.[20]

### 4. The Settlement Provides Significant Monetary and Prospective Relief to the Settlement Class.

To determine "whether a settlement agreement is substantively fair to the class, [a] court must balance the value of plaintiffs' expected recovery against the value of the settlement offer." *Loeza*, 2015 WL 13357592, at *8. The Court is guided by the general principle that "[a]lthough a larger award was theoretically possible, 'the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.'" *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013). It is "well-settled law that a proposed settlement may be acceptable even though it amounts to

---

[19] *See, e.g.*, *Chen-Oster v. Goldman Sachs & Co.*, 2023 WL 7325264, at *6 (S.D.N.Y. Nov. 7, 2023) (awarding $250,000 service award "to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a named plaintiff, and any other burdens sustained by the plaintiffs"); *McReynolds v. Merrill Lynch*, No. 05-cv-6583, ECF No. 616 at 5 (N.D. Ill. Dec. 6, 2013) (awarding $250,000 to each class representatives); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1242 (S.D. Fla. 2006) (awarding $1.767 million to each class representatives); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding $300,000 to each class representatives).

[20] The fourth factor of Rule 23(e)(C)(2) requires the Court to examine any other agreements that are related to the proposed settlement. Fed. R. Civ. P. 23(e)(C)(2)(iv). This provision is aimed at "related undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others." Fed. R. Civ. P. 23(e), advisory committee notes 2003 amendments. Here, the parties entered into a Confidential Supplement to Settlement Agreement, which sets forth certain conditions under which Defendants have the option to terminate the Settlement. The parties agreed to maintain the confidentiality of this agreement because publicizing it could give leverage to actors seeking to blow up the Settlement for personal gain. Therefore, the parties agreed that this separate agreement would not be provided to the Court unless it so requests, and if so, it would be provided only *in camera*. This type of agreement is common in class actions, did not involve any tradeoffs that would render the Settlement improper, and does not render a settlement unfair. *See Hefler*, 2018 WL 6619983, at *7.

19

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF THE SETTLEMENT
IN BOTH ABOVE-CAPTIONED MATTERS, PROVISIONAL CERTIFICATION OF THE PROPOSED JOHNSON SETTLEMENT CLASS,
PRELIMINARY APPROVAL OF THE PLAN OF ALLOCATION, APPROVAL OF THE NOTICE PLAN, AND APPROVAL OF
THE PROPOSED SCHEDULE FOR COMPLETING THE SETTLEMENT PROCESS

only a fraction of the potential recovery that might be available to the class members at trial." *DIRECTV*, 221 F.R.D. at 527. "It is the complete package [of the settlement] taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Id.* (quoting *Officers for Justice v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982)).

The Settlement here is an excellent result for the Settlement Classes. The $335 million monetary recovery provides a swift and significant payment to the Settlement Classes against the delay, costs, and risks of a trial (and post-trial litigation) in the *Le* Action and the lengthy litigation for the *Johnson* Action, which was in the early discovery stage.

Based on Dr. Singer's evaluation of Defendants' data, there are approximately 2,145 fighters who are members of the Settlement Classes. *See* Singer Decl. Table 1. There are 1,118 fighters in the *Le* Class and 1,297 fighters in the *Johnson* Settlement Class, with several in both classes. *See id.* ¶8. There are 716 fighters (just over 55%) in the *Johnson* Settlement Class who are subject to arbitration clauses or class action waivers in their contracts. *Id.* The UFC paid a total of approximately $996 million in Event Compensation to those members of the Settlement Classes who did not execute arbitration and/or class waiver provisions in their UFC contracts (spanning the class periods of both Actions): $538.2 million to the *Le* Class and $457.9 million to the *Johnson* Settlement Class. *See* Singer Decl. Table1. As noted previously, Prof. Posner has opined that the *Le* Action "is the first such claim ever to survive summary judgment, reach class certification, or even survive a motion to dismiss," and that these opinions and the Settlement opinions that will provide valuable guidance to future courts and litigants addressing Section 2 antitrust claims in labor markets. *See* Posner Decl. ¶¶1, 22-24.

Viewed solely on the cash component, without considering the substantial prospective relief (discussed below), the Settlement is a significant percentage (33%) of the Event Compensation paid to UFC fighters, as well as a large share of the damages computed by Dr. Singer in the *Le* Action. *Id.*; *see also* Expert Report of Hal J. Singer, Ph.D., August 31, 2017 ("SR1"), ECF No. 518-3, at Table10 (showing $894.3M in class damages using one of the scenarios); Expert Report of Andrew Zimbalist in *Cung Le, et al. v. Zuffa, LLC*, August 30, 2017 ("ZR1"), ECF No. 518-5, ¶140(c) ($981.8M in class damages). The cash settlement is outstanding whether viewed as a percentage of wages (here 33%),

*see, e.g., Aldapa v. Fowler Packing Co.*, 2023 WL 169120, at *4 (E.D. Cal. Jan. 12, 2023) (preliminarily approving settlement where anticipated recovery between 20% and 28% of estimated wages), or as a percentage of single damages, *see, e.g.*, *Tawfilis*, 2018 WL 4849716, at *4 (approving antitrust settlement representing approximately 8.36% of overcharge damages); *Meijer, Inc. v. 3M*, 2006 WL 2382718, at *16 (E.D. Pa. Aug. 14, 2006) (approving settlement representing approximately two percent of single damages); *In re Auto. Refinishing Paint Antitrust Litig.*, 2004 WL 1068807, at *2 (E.D. Pa. May 11, 2004) (same); *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 2024 WL 815503, at *9 (E.D. Pa. Feb. 27, 2024)  (approving antitrust settlement of 12% to 14% estimated damages).[21]

Further, under the proposed Plan of Allocation, an initial estimate of the likely distribution of the Net UFC Settlement Fund indicates that *Le* Class Claimants will likely receive as much as 25% (or more) of their Event Compensation from UFC bouts during the *Le* Class Period, and *Johnson* Settlement Class Claimants may receive as much as 10% of their Event Compensation from UFC bouts during the *Johnson* Class Period.

The Settlement also provides important prospective relief requiring Zuffa to maintain changes to its contracts and business practices in ways that give fighters more freedom, flexibility, and opportunities to earn money from competing in bouts and marketing their likeness. *See* pp. 9-10 *supra* (describing the six key features of the prospective relief). The Joint Declaration, ¶¶237-43, describes in detail how each of these changes benefits fighters with the main feature being limitations on Zuffa's ability to retain fighters under contract or exclusive negotiating rights. Absent the Settlement, these are changes that Zuffa may well have reversed or cut back. *See* Joint Decl. ¶¶238-39.

### D.    The Settlement Treats Class Members Equitably

The Settlement treats Settlement Class Members equitably for the same reasons supporting why the Plan of Allocation is fair, reasonable, and adequate, as discussed in Part II.C.2 *supra*. All Claimants

---

[21] As a comparison, plaintiffs in a case alleging Section 1 antitrust claims against real estate brokerage firms recently reached a class settlement for $418 million, which came *after* obtaining a jury verdict for $1.785 billion (before trebling), and which included as part of the settlement claims from other cases that had not been tried to the jury. *See Burnett, et al. v. National Realtors Assoc., et al.*, No. 19-cv-332, ECF Nos. 1458 at 1 (Apr. 19, 2024) & 1294 at 2 (Oct. 31, 2023) (W.D. Mo.).

receiving a *pro rata* distribution will have their claims calculated using the same methodology, and only those *Johnson* Settlement Class Members subject to arbitration clauses or class action waivers receive a flat distribution amount due to the lower value of their claims. *See id.*; *see also Loeza*, 2015 WL 13357592, at *8 (finding substantively fair settlement providing different distributions based on presence or lack of an arbitration clause).

### E. The Extent of Discovery Completed and the Stage of Proceedings

The extent of the discovery completed in the Actions weighs in favor of preliminary approval. The *Le* Action completed all fact and expert discovery and was on the eve of trial when an agreement to settle was reached. And while discovery in the *Johnson* Action had just begun, there were substantial facts and issues in common between the two matters such that Plaintiffs' knowledge of *Le* gave them significant insight into *Johnson*. Where, as here, a case has completed discovery and reached an advance stage of litigation, courts have found preliminary approval warranted because these are "indicators of Lead Counsel's familiarity with the case and of Plaintiffs having enough information to make informed decisions." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008). Indeed, the Ninth Circuit has explained that "[i]n the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).

### F. Risk of Maintaining Class Action Status Through Trial

While the Court had certified the *Le* Class (ECF No. 839), there remained a risk that Zuffa could renew its challenge to class certification post-trial. *See* Joint Decl. ¶250. Whether the *Johnson* Settlement Class could be certified for litigation purposes was by no means guaranteed, in part due to changes Zuffa made to its contracts after the close of the *Le* Class Period. *See id.* These changes would have potentially required Plaintiffs in *Johnson* to use a model for showing classwide damages and impact that was different than the one developed for the *Le* Action. *See* Singer Decl. ¶14. Taken together, this factor supports preliminary approval of the Settlement.

### G. The Experience and Views of Counsel

Plaintiffs' counsel believe the Settlement is an excellent result for the Settlement Classes. Joint

22

Decl. ¶¶244-45. "'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *DIRECTV*, 221 F.R.D. at 528. "This is because '[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.'" *Id.* When the Court appointed class counsel for the *Le* Class, it noted that "through the course of this litigation, [counsel] have demonstrated that they have extensive experience and knowledge with antitrust, class action litigation." *Id.* at 79.

Where, as here, counsel are experienced litigators who understand the claims and defenses and class action issues of the litigation, the Court can rely on that experience as a factor favoring preliminary approval. *See Moorer*, 2021 WL 4993054, at *5 ("Given Plaintiffs' counsels' experience with similar class action litigation, the Court finds that affording deference to their decision to settle the case, as well as the terms of that settlement, is appropriate."); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (preliminarily approving settlement where "experienced counsel on both sides, each with a comprehensive understanding of the strengths and weaknesses of each party's respective claims and defenses, negotiated this settlement"). Supplementing Co-Lead Class Counsel's own views, Plaintiffs elicited a declaration from a leading antitrust professor, Prof. Posner, who observed that "plaintiffs' challenge to the defendant's labor monopsony in an important sports and entertainment market has played a pioneering role in this effort, particularly in showing how an employer with power in a labor market can be challenged under section 2 of the Sherman Act." Posner Decl. ¶24. This further bolsters the case for preliminary and ultimately final approval.

## III. The Proposed *Johnson* Settlement Class Should Be Certified For Settlement Purposes

The Court should certify the *Johnson* Settlement Class for purposes of settlement. Rule 23(e)(1) requires the Court to consider whether it "will likely be able to certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii). The *Johnson* Settlement Class is defined as follows:

> All persons who competed in one or more live professional UFC-promoted MMA bouts taking place or broadcast in the United States from July 1, 2017 to the date of preliminary approval of the Settlement.

23

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF THE SETTLEMENT
IN BOTH ABOVE-CAPTIONED MATTERS, PROVISIONAL CERTIFICATION OF THE PROPOSED JOHNSON SETTLEMENT CLASS,
PRELIMINARY APPROVAL OF THE PLAN OF ALLOCATION, APPROVAL OF THE NOTICE PLAN, AND APPROVAL OF
THE PROPOSED SCHEDULE FOR COMPLETING THE SETTLEMENT PROCESS

Excluded from the *Johnson* Settlement Class are all persons who are not residents or citizens of the United States unless the UFC paid such persons for competing in a bout fought or broadcast in the United States.

The *Johnson* Settlement Class is substantively the same as the *Le* Class that the Court previously certified for litigation purposes (*see* ECF No. 839, at 79). Given that Plaintiffs are seeking certification for settlement purposes, which has a lower burden, it is reasonable that the Court will likely find the *Johnson* Settlement Class also meets the requirements of Rule 23(a) and (b), and thus should provisionally certify it now.

### A.    The *Johnson* Settlement Class Satisfies Numerosity

Rule 23(a), which "requires that a class be so numerous that joinder of all members is impracticable," *Lee v. Enterprise Leasing Co.-West, LLC*, 300 F.R.D. 466, 469 (D. Nev. 2014), is satisfied when a proposed class includes more than forty members. *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 536 (N.D. Cal. 2012). Here, the *Johnson* Settlement Class contains approximately 1,297 members. Joint Decl. ¶235; Singer Decl. Table 1. Numerosity is satisfied.

### B.    Questions of Law or Fact Are Common to the *Johnson* Settlement Class Members

Commonality requires only a single significant issue of law or fact common to a class. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010). Common issues here include: (1) whether Zuffa violated the antitrust laws; (2) whether Zuffa possessed market power; (3) whether Zuffa's Scheme had anti-competitive effects; (4) what injunctive relief, if any, is appropriate; (5) the aggregate amount of damages caused by Zuffa's unlawful. Given that this case will not be litigated if the Settlement is approved, the key commonalities are also: assessing whether the Settlement provides satisfactory monetary and/or prospective relief in view of the strengths and weaknesses of the claims; whether the Plan of Allocation is fair, reasonable, and adequate; and whether the Notice program comports with Rule 23 and due process of law. Commonality is satisfied.

### C.    The *Johnson* Settlement Class Representatives' Claims Are Typical

Like the *Le* Class Representatives, the claims of the *Johnson* Settlement Class Representatives are typical of the claims of the *Johnson* Settlement Class members because the claims generally arise from the same events and the same legal arguments. *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 164 (C.D. Cal. 2002); *Kristensen v. Credit Payment*

24

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF THE SETTLEMENT
IN BOTH ABOVE-CAPTIONED MATTERS, PROVISIONAL CERTIFICATION OF THE PROPOSED JOHNSON SETTLEMENT CLASS,
PRELIMINARY APPROVAL OF THE PLAN OF ALLOCATION, APPROVAL OF THE NOTICE PLAN, AND APPROVAL OF
THE PROPOSED SCHEDULE FOR COMPLETING THE SETTLEMENT PROCESS

*Servs.*, 12 F. Supp. 3d 1292, 1304-05 (D. Nev. 2014). The nature of the claims must be the same, but the specific facts giving rise to the claims need not be. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011). Typicality is generally satisfied in cases involving antitrust violations. *Pecover v. Elec. Arts, Inc.*, 2010 WL 8742757, at *11 (N.D. Cal. Dec. 21, 2010). Here, Plaintiffs' claims are typical because "they stem from the same event, practice, or course of conduct that forms the basis of the claims of the class and are based on the same legal or remedial theory." *In re Citric Acid Antitrust Litig.*, 1996 WL 655791, at *3 (N.D. Cal. Oct. 2, 1996); *Sobel v. Hertz Corp.*, 291 F.R.D. 525, 541 (D. Nev. 2013) (typicality satisfied where "the class members' claims arise from a standard practice and implicate common legal questions"), *affirmed in part*, 674 F. App'x 663, 666 (9th Cir. 2017) (affirming class certification); *see also Greene v. Jacob Transp. Servs., LLC*, 2017 WL 4158605, at *4 (D. Nev. Sept. 19, 2017).

The claims of the *Johnson* Settlement Class Representatives and Class members, like the claims for the certified *Le* Class, stem from a single course of challenged conduct in the alleged market for Elite Professional MMA Fighter Services. Like all *Johnson* Settlement Class members, the proposed representatives allege that due to Defendants' conduct, Zuffa undercompensated its fighters for bouts fought during the *Johnson* Settlement Class Period. The proposed *Johnson* Settlement Class Representatives' claims are typical of the *Johnson* Settlement Class they seek to represent.

###    D.    The *Johnson* Settlement Class Is Adequately Represented

Under Rule 23(a)(4), the plaintiff must establish that "the representative parties will fairly and adequately protect the interests of the class." Plaintiffs have established adequacy for the same reasons explained in Part II.A *supra*. The interests of the named *Johnson* Settlement Class Representatives are fully aligned with those of absent class members in proving that Defendants violated the antitrust laws, artificially undercompensated fighters, and in seeking to maximize recoveries in settlement or judgement on behalf of the class. *See In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1181 (N.D. Cal. 2013) (finding adequacy where "named Plaintiffs and [absent] Class members share an interest in proving that Defendants' conduct violated the antitrust laws and suppressed their compensation"). And the Court has previously found Settlement Class Counsel satisfy the Rule 23 adequacy requirement. ECF No. 839, at 78-79; *see also* Part II.G *supra*.

25

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF THE SETTLEMENT
IN BOTH ABOVE-CAPTIONED MATTERS, PROVISIONAL CERTIFICATION OF THE PROPOSED JOHNSON SETTLEMENT CLASS,
PRELIMINARY APPROVAL OF THE PLAN OF ALLOCATION, APPROVAL OF THE NOTICE PLAN, AND APPROVAL OF
THE PROPOSED SCHEDULE FOR COMPLETING THE SETTLEMENT PROCESS

The Court should appoint the proposed *Johnson* Settlement Class Representatives as the class representatives for the *Johnson* Settlement Class and appoint Settlement Class Counsel as counsel for the Settlement Classes.

### E.   The *Johnson* Settlement Class Satisfies the Predominance Requirement of Rule 23(b)(3)

The Rule 23(b)(3) predominance requirement is satisfied here. The Supreme Court has explained that "[s]ettlement is relevant to class certification" because when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, … for the proposal is that there be no trial." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 619, 620 (1997); *see also In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556–57 (9th Cir. 2019) ("The criteria for class certification are applied differently in litigation classes and settlement classes. In deciding whether to certify a litigation class, a district court must be concerned with manageability at trial. However, such manageability is not a concern in certifying a settlement class where, by definition, there will be no trial.").

The Supreme Court also observed that "[p]redominance is a test readily met in certain cases alleging … violations of the antitrust laws." *Amchem*, 521 U.S. at 625. Both the Supreme Court and the Ninth Circuit have held that Rule 23(b)(3) is satisfied if common issues predominate in the case *as a whole*; each element of Plaintiffs' claims need not be predominantly common. *See Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013); *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016); *High-Tech*, 985 F. Supp. 2d at 1186-87 (citing *Amgen*, 568 U.S. at 469).

The Rule 23(b)(3) predominance requirement is met for the *Johnson* Settlement Class. The claims of the *Johnson* Settlement Class Members all focus on the same operative set of facts and legal theories. All *Johnson* Settlement Class Members allege that they were harmed by Defendants' same conduct, and they would use entirely common evidence to establish that they were harmed if the *Johnson* Action proceeded to trial.

However, as noted above, the Settlement means there would be no trial, and in turn, no evidence. Instead, what matters here is whether the class can be certified for purposes of settlement and

26

judgment. Accordingly, the predominance requirement is met here because a "common nucleus of facts and potential legal remedies dominates" the claims of the *Johnson* Settlement Class. *Hanlon*, 150 F.3d at 1022. But even if the Court considered the predominance element as it would for a litigation class, which it need not do here, the *Johnson* Settlement Class would satisfy this prong of Rule 23(b)(3) for the same general reasons (albeit with a different impact and damages methodology) the requirement was found met for the *Le* Class. *See generally* ECF No. 839, at 19-71. In sum, the Court will likely find that common issues predominate for the *Johnson* Settlement Class members (as it did with the *Le* Class).

### F.   The *Johnson* Settlement Class Satisfies the Rule 23(b)(3) Superiority Requirement

The *Johnson* Settlement Class as meets the Rule 23(b)(3) superiority requirement. Certification of the *Johnson* Settlement Class for settlement will provide a substantial distribution to *Johnson* Settlement Class members now. The Settlement offers a far more certain recovery than continuing the litigation through (and past) trial. Even absent the Settlement, class treatment would have been the "most efficient and effective means of resolving the controversy," *Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010), for the same reasons that supported certification of the *Le* Class. *See* ECF No. 839, at 71-72. The *Johnson* Settlement Class members' individual damages would have been insufficiently large to warrant individual cases. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 608 (N.D. Cal. 2010); *see also Wolin*, 617 F.3d at 1175-76. The superiority requirement of Rule 23(b)(3) is met.

### IV.   Notice of the Settlement Should be Approved

The plan for notice to the Settlement Classes (the "Notice Plan") is described in the accompanying Declaration of Steven Weisbrot, Esq. of Angeion Group LLC re the Settlement Notice Plan ("Weisbrot Decl."), dated May 20, 2024, attached as Exhibit 5 to the Joint Decl.which attaches three proposed forms of notice. *See* Weisbrot Decl. & Exs. A (Long Form Notice), B (Short Form Notice), C (Poster Notice). It is the same plan the Court approved for the *Le* Class, *see* ECF No. 921, but the notices have been amended to include information about the Settlement and *Johnson* Settlement Class.

An adequate notice should describe "the terms of the settlement in sufficient detail to alert those

27

with adverse viewpoints to investigate and to come forward and be heard." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). The Notice Plan achieves this objective with notice documents that use plain, easy to understand language about the Actions, the Settlement, and Settlement Class Members' rights. The Long Form Notice provides information about: the nature and status of the Actions; the amount of the Settlement; the amount Settlement Class Counsel will request in fees, litigation expenses, and service awards for the Class Representatives to be paid from the Settlement; how Settlement Class Members can submit claims later in the process; Settlement Class Members' rights to object, attend the Fairness Hearing, or opt out (for the *Johnson* Settlement Class only (*see* below discussion)); the important deadlines; and how to obtain additional information, including using a website dedicated to the Settlement or to contact the Claims Administrator. Notice containing the above information satisfies Fed. R. Civ. P. 23(c) and due process of law. *See Online DVD-Rental*, 779 F.3d at 946.

Plaintiffs propose that the opt out right be limited to members of the *Johnson* Settlement Class because *Le* Class members were previously provided an opportunity to exclude themselves and the deadline to do so has passed. *See* Joint Decl. ¶153; Declaration of Steven Weisbrot, Esq. of Angeion Group, LLC re Implementation of Notice Plan and Report on Exclusions Received, ECF No. 966-1 (Feb. 5, 2024). The proposed notices to the *Le* Class members informed them that they would not have another opportunity to opt out. *See* Short Form Notice at 2-3, ECF No. 916-1 ("If you do not exclude yourself from the Bout Class, you will not be able to sue on your own, or continue to sue on your own, the Defendant with respect to any of the claims asserted or issues decided in this Action."); Long Form Notice at 4 ("However, if you stay in the Bout Class at this time, you may not have another opportunity to request exclusion (or opt-out) of the Action, and you will be unable to pursue claims against the Defendant that are being litigated in this Action separate from the Bout Class."). In these circumstances, the law provides that a second opportunity to request exclusion is not warranted in connection with notice of the Settlement. *See Low v. Trump Univ., LLC*, 881 F.3d 1111, 1121-22 (9th Cir. 2018) (holding no second opportunity to opt-out at settlement stage); *Musgrove v. Jackson Nurse Pros., LLC*, 2022 WL 2092656, at *7 (C.D. Cal. Jan. 11, 2022) (no second opportunity to opt-out); *In re Zillow Grp., Inc. Sec. Litig.*, 2023 WL 2766264, at *4 (W.D. Wash. Apr. 3, 2023) (same); 2

28

McLaughlin on Class Actions § 6:21 (20th ed. 2023) (collecting cases rejecting second opt-out).[22]

Plaintiffs' proposed Notice Plan satisfies the fairness standards set forth in Fed. R. Civ. P. 23. Each form of notice clearly presents all required categories of information in plain English. *See Officers for Justice*, 688 F.2d at 624; Fed. R. Civ. P. 23(c)(2)(B). The Notice Plan employs numerous means and media to provide the best notice practicable. *See Roes 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1947 (9th Cir. 2019) (recognizing value of publication notice and use of other media as supplement to direct notice). The proposed Notice Plan is the best notice that is practicable under the circumstances. It fully comports with due process and is compliant with Fed. R. Civ. P. 23. Plaintiffs respectfully request the Court approve the Notice Plan.

## V.      The Court Should Appoint Angeion as Claims Administrator

The Court should appoint Angeion Group LLC ("Angeion") as the claims administrator. Angeion was previously appointed by the Court as the notice administrator for the *Le* Class. ECF No 921, ¶1. It is knowledgeable about the Actions, the Settlement Classes, and the information relating to noticing the Settlement Class Members, including having obtained and/or researched current address information for *Le* Class Members. Angeion is an experienced settlement and claims administration firm with sophisticated technological capabilities and is staffed by personnel well-versed in antitrust issues and class action litigation. *See* Declaration of Steven Weisbrot of Angeion Group, LLC re Angeion Qualifications and the Proposed Notice Plan, ¶¶ 3-16 & Exhibit D, ECF No. 916-1 (November 15, 2023). Additionally, Plaintiffs' economic expert, Dr. Singer, and his firm, Econ One, will assist Angeion with calculating the *pro rata* distributions to Claimants. *See* Singer Decl. ¶9.

## VI.     The Court Should Appoint Huntington as Escrow Agent

Plaintiffs request that The Huntington National Bank ("Huntington") be appointed as the Escrow Agent. Huntington is a highly respected bank providing consumers, corporations, and others

---

[22] Some fighters are members of both Settlement Classes. Since the release in the Settlement Agreement is the same for all Settlement Class Members, *i.e.*, the release for *Le* Class Members is the same as the release for *Johnson* Settlement Class Members, a fighter who is a member of both Settlement Classes would not benefit from excluding themselves from the *Johnson* Settlement Class because he or she would also be a member of the *Le* Class and would remain subject to the full release of claims set forth for both Settlement Classes in the Settlement Agreement. *See* SA ¶11.

29

with a broad range of financial services. Huntington has served as escrow agent in many other antitrust class actions and should also be appointed as Escrow Agent here. *See, e.g.*, *In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practice and Antitrust Litig.*, No. 17-md-2785, ECF No. 2594 (D. Kan. Mar. 11, 2022); (order granting preliminary approval motion and appointing Huntington Bank as an escrow agent); *In re Opana ER Antitrust Litig.*, No. 14-cv-10150, ECF No. 1069 (N.D. Ill. Aug. 24, 2022) (same).

## VII.    The Final Approval Hearing Should Be Scheduled

To ensure efficient management of the Settlement among the Settlement Class, Plaintiffs' respectfully request that the Court coordinate the *Le* Action and the *Johnson* Action for settlement purposes only and direct that the below settlement schedule be implemented:

| DATE | EVENT |
|------|-------|
| Within 30 days after preliminary approval | Settlement Administrator to (i) provide direct mail notice to the Settlement Class and (ii) commence the multi-tiered, robust media campaign publication notice plan. |
| Within 60 days after preliminary approval | Settlement Class Counsel shall file a motion for attorneys' fees, unreimbursed litigation costs and expenses, and service awards for the Settlement Class Representatives, pursuant to the terms of the Settlement Agreement. |
| Within 75 days after preliminary approval | Settlement Class Members may submit any objection to the proposed Settlement or to Settlement Class Counsel's request for attorneys' fees, unreimbursed litigation costs and expenses, and service awards to the Class Representatives, and *Johnson* Settlement Class members may request exclusion from the *Johnson* Settlement Class. |
| Within 21 days after the exclusion / objection deadline | No later than 21 days after the expiration of the deadline for members of the *Johnson* Settlement Class to request exclusion from the *Johnson* Settlement Class or for members of both Settlement Classes to object to the proposed Settlement and/or attorneys' fees, expenses and service awards, or Plan of Allocation, Settlement Class Counsel shall file all briefs and materials in support of final approval of the Settlement. |

| DATE | EVENT |
|------|-------|
| At least 30 days after the exclusion / objection deadline[23] | Final Settlement Fairness Hearing |

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue an order substantially in the form of the proposed Order: (i) granting preliminary approval of the Settlement Agreement; (ii) granting Plaintiffs' request to coordinate the *Le* Action and the *Johnson* Action for settlement purposes only; (iii) finding that the standards for certifying the proposed *Johnson* Settlement Class (defined below) under Fed. R. Civ. P. 23 for purposes of settlement and judgment are likely satisfied; (iv) appointing Plaintiffs Kajan Johnson, Clarence Dollaway, and Tristan Connelly as the class representatives Plaintiffs for the *Johnson* Settlement Class; (v) appointing Berger Montague PC, Cohen Milstein Sellers & Toll PLLC, and Joseph Saveri Law Firm, LLP as Co-Lead Class Counsel for the Settlement Classes and Kemp Jones, LLP, Warner Angle Hallam Jackson & Formanek PLC, and Clark Hill PLC as additional Settlement Class Counsel for the *Johnson* Settlement Class under Fed. R. Civ. P. 23(g); (vi) authorizing dissemination of notice to the Settlement Classes; (vii) appointing Angeion Group LLC as Settlement Claims Administrator; (viii) appointing The Huntington National Bank as Escrow Agent; and (ix) approving the proposed Settlement schedule, including setting a date for a final Fairness Hearing.

---

[23] Under the proposed schedule, the earliest date a Fairness Hearing could likely take place is 105 days from preliminary approval.

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF THE SETTLEMENT IN BOTH ABOVE-CAPTIONED MATTERS, PROVISIONAL CERTIFICATION OF THE PROPOSED JOHNSON SETTLEMENT CLASS, PRELIMINARY APPROVAL OF THE PLAN OF ALLOCATION, APPROVAL OF THE NOTICE PLAN, AND APPROVAL OF THE PROPOSED SCHEDULE FOR COMPLETING THE SETTLEMENT PROCESS

Dated: May 21, 2024

Respectfully submitted,

/s/ *Eric L. Cramer*
Eric L. Cramer (pro hac vice)
Michael Dell'Angelo (pro hac vice)
Ellen T. Noteware (pro hac vice)
Patrick F. Madden (pro hac vice)
Najah Jacobs (pro hac vice)
BERGER MONTAGUE PC
1818 Market St., Suite 3600
Philadelphia, PA 19103
Telephone: +1 (215) 875-3000
Email: ecramer@bm.net
Email: mdellangelo@bm.net
Email: enoteware@bm.net
Email: pmadden@bm.net
Email: njacobs@bm.net

Joshua P. Davis (pro hac vice)
BERGER MONTAGUE PC
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Telephone: +1 (415) 906-0684
Email: jdavis@bm.net

Richard A. Koffman (pro hac vice)
Benjamin Brown (pro hac vice)
Daniel Silverman (pro hac vice)
Daniel L. Gifford (pro hac vice)
COHEN MILSTEIN SELLERS & TOLL
  PLLC
1100 New York Ave., N.W.
Suite 500 East, Tower
Washington, DC 20005
Telephone: +1 (202) 408-4600
Facsimile: +1 (202) 408-4699
Email: rkoffman@cohenmilstein.com
Email: bbrown@cohenmilstein.com
Email: dsilverman@cohenmilstein.com
Email: dgifford@cohenmilstein.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Joseph R. Saveri (pro hac vice)
Kevin E. Rayhill (pro hac vice)
Christopher Young (pro hac vice)
Itak Moradi (pro hac vice)
JOSEPH SAVERI LAW FIRM, LLP
601 California St., Suite 1505
San Francisco, CA 94108
Telephone: +1 (415) 500-6800
Facsimile: +1 (415) 395-9940
Email: jsaveri@saverilawfirm.com
Email: krayhill@saverilawfirm.com
Email: cyoung@saverilawfirm.com
Email: imoradi@saverilawfirm.com

*Co-Lead Counsel for the Le Class, Settlement
Class Counsel for the Le Settlement Class and
the Johnson Settlement Class and Attorneys
for Individual and Representative Plaintiffs
Cung Le, Nathan Quarry, Jon Fitch, Brandon
Vera, Luis Javier Vazquez, Kyle Kingsbury,
Kajan Johnson, Clarence Dollaway, and
Tristan Connelly*

Don Springmeyer (Bar No. 1021)
KEMP JONES, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
Telephone: + 1 (702) 385-6000
Facsimile: + 1 (702) 385-6001
Email: dspringmeyer@kempjones.com

*Liaison Counsel for the Le Class, Settlement
Class Counsel for the Le Settlement Class and
the Johnson Settlement Class and Attorneys
for Individual and Representative Plaintiffs
Cung Le, Nathan Quarry, Jon Fitch, Brandon
Vera, Luis Javier Vazquez, Kyle Kingsbury,
Kajan Johnson, Clarence Dollaway, and
Tristan Connelly*

Robert C. Maysey (pro hac vice)
Jerome K. Elwell (pro hac vice)
WARNER ANGLE HALLAM JACKSON
      & FORMANEK PLC
2555 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Telephone: +1 (602) 264-7101
Facsimile: +1 (602) 234-0419
Email: rmaysey@warnerangle.com
Email: jelwell@warnerangle.com

Crane M. Pomerantz
CLARK HILL PLC
1700 Pavilion Center Dr., Suite 500
Las Vegas, NV 89135
Telephone: +1 (702) 697-7545
Email: cpomerantz@clarkhill.com

*Additional Counsel for the Le Settlement
Class and the Johnson Settlement Class and
Attorneys for Individual and Representative
Plaintiffs Cung Le, Nathan Quarry, Jon Fitch,
Brandon Vera, Luis Javier Vazquez, Kyle
Kingsbury, Kajan Johnson, Clarence
Dollaway, and Tristan Connelly*