# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>   v.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>          Defendant. | No.: 2:15-cv-01045-RFB-BNW |
| Kajan Johnson, Clarence Dollaway, and Tristan Connelly, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>   vs.<br><br>Zuffa, LLC, TKO Operating Company, LLC f/k/a Zuffa Parent LLC (d/b/a Ultimate Fighting Championship and UFC) and Endeavor Group Holdings, Inc.,<br><br>          Defendants | No.: 2:21-cv-1189-RFB BNW |

## <u>SETTLEMENT AGREEMENT</u>

This "Settlement" is made and entered into this 24th day of April, 2024 ("Execution Date") by and between Defendants Zuffa, LLC, TKO Operating Company, LLC, Endeavor Group Holdings, Inc. (collectively, "Defendants") and Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, Kyle Kingsbury, Kajan Johnson, Clarence Dollaway, and Tristan Connelly (collectively, "Plaintiffs"), both individually and on behalf of the respective "Settlement Classes" specified herein.

WHEREAS, plaintiffs Cung Le, Jon Fitch, Brandon Vera, Luis Javier Vazquez, Kyle Kingsbury ("*Le* Class Representatives") are prosecuting the *Le* Action on their own behalf and on behalf of the *Le* Class, and plaintiffs Kajan Johnson, Clarence Dollaway, and Tristan Connelly ("*Johnson* Settlement Class Representatives") are prosecuting the *Johnson* Action on their own behalf and on behalf of the *Johnson* Settlement Class;

WHEREAS, the *Le* Class Representatives allege that they and members of the *Le* Class were injured as a result of certain conduct of defendant Zuffa, LLC, and the *Johnson* Settlement Class Representatives allege that they and members of the *Johnson* Settlement Class were injured as a result of certain conduct of Defendants, as set out in the respective Complaints in the two above-captioned Actions;

WHEREAS, plaintiff Nathan Quarry is a named plaintiff in the *Le* Action, who was proposed to represent the proposed Identity Rights Class (which class the Court declined to certify), and who still has claims related to his identity rights that shall be settled and released as set forth herein;

WHEREAS, Defendants deny Plaintiffs' allegations and have asserted defenses to Plaintiffs' claims in both Actions;

WHEREAS, extensive arm's-length settlement negotiations have taken place between Settlement Class Counsel and counsel for Defendants, with the continuous assistance of an experienced mediator, Hon. Layn Phillips, and this Settlement has been reached as a result of those negotiations;

WHEREAS, Settlement Class Counsel have concluded, after (a) extensive and protracted fact and expert discovery in the *Le* Action, and in the midst of preparing the *Le* case for imminent trial, (b) an extensive investigation into the facts underlying the claims in the *Johnson*

Case Nos.: 2:15-cv-1045; 2:21-cv-01189

**SETTLEMENT AGREEMENT**

Action, (c) exhaustive review of the law regarding both Actions, and (d) carefully considering the circumstances of these Actions, that it would be in the best interests of both Settlement Classes to enter into this Settlement Agreement and assure a certain and significant benefit to the Settlement Classes, and further, that Settlement Class Counsel consider the Settlement to be fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23;

WHEREAS, this Settlement, if it receives Final Approval, will resolve the Actions in full;

WHEREAS, Defendants, despite their belief that they are not liable for the claims asserted in the Actions and their belief that they have good defenses thereto, have nevertheless agreed to enter into this Settlement to avoid further expense, inconvenience, and the distraction of protracted litigation in both Actions, and to obtain the releases, orders, and judgments contemplated by this Settlement;

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, and intending to be legally bound, it is agreed by and between Defendants and Plaintiffs, both individually and on behalf of the Settlement Classes, that the Actions be settled, compromised, and dismissed on the merits with prejudice as to the Releasees and, except as hereinafter provided, without costs as to Plaintiffs, the Settlement Classes, or Defendants, subject to the approval of the Court (the "Settlement"), on the following terms and conditions:

### 1.    Definitions

   a.   "Actions" means both *Le, et al. v. Zuffa, LLC*, No. 2:15-cv-1045 (D. Nev.) and *Johnson, et al. v. Zuffa, LLC, et al.*, No. 2:21-cv-1189 (D. Nev.).

   b.   "Claims Administrator" means the Angeion Group, which was previously approved by the Court to issue, and did issue, notice to the *Le* Class (No. 15-cv-1045, ECF No.

Case Nos.: 2:15-cv-1045; 2:21-cv-01189

**SETTLEMENT AGREEMENT**

921), and which would, on motion of Settlement Class Counsel and Order of this Court, provide notice to Settlement Class Members, and would process any opt outs received from any members of the *Johnson* Settlement Class, or members of the Settlement Classes should the Court require a second opt out period for certain or all members of the *Le* Class, as well as the claims submitted by both sets of Settlement Class Members pursuant to a Court-approved Plan of Allocation, and carry out any other duties or obligations provided for herein or as ordered by the Court.

  c. "Co-Lead Class Counsel" means Berger Montague PC, Cohen Milstein Sellers & Toll PLLC, and Joseph Saveri Law Firm, LLP, as appointed in the *Le* Action, No. 15-cv-1045, ECF Nos. 139 & 839.

  d. "Complaints" refers to the operative complaints in the Actions: *Le, et al. v. Zuffa, LLC*, No. 2:15-cv-1045, ECF No. 208 (D. Nev. Dec. 18, 2015) and *Johnson, et al. v. Zuffa, LLC, et al.*, No. 2:21-cv-1189, ECF No. 118 (D. Nev. Dec. 15, 2023).

  e. "Confidential Supplement" means the confidential agreement containing certain confidential terms providing for recission of the Settlement Agreement should certain contingencies occur.

  f. "Defendants' Payment" means three hundred thirty-five million dollars ($335,000,000.00) to be paid by Defendants pursuant to the terms set out below in Paragraph 5(a).

  g. "Effective Date" means the date on which all of the following have occurred: (i) the Settlement is approved by the Court as required by Fed. R. Civ. P. 23(e); (ii) the Court enters a final approval order; and (iii) the period to appeal the final approval order has expired and/or all appeals of the final approval order have been finally resolved.

  h. "Escrow Account" means the qualified settlement escrow account that holds the UFC Settlement Fund.

  i. "Escrow Agreement" means an agreement substantially in the form annexed hereto as Exhibit A.

4

SETTLEMENT AGREEMENT

j.   "Execution Date" means the date the Settling Parties sign this Settlement Agreement.

k.   "Fee and Expense Award" means any and all award(s) by the Court to Settlement Class Counsel for reasonable attorneys' fees and reimbursement of reasonable costs and expenses incurred in the prosecution of the Actions, including any interest accrued thereon.

l.   "Fighter" or "Fighters" means MMA fighters who enter or who have entered into a Promotional and Ancillary Rights Agreement (or similar agreement) with one or more Defendants to provide services as professional MMA fighters. The terms "Fighter" or "Fighters" include, but are not limited to, Settlement Class Members.

m.   The "*Johnson* Action" means *Johnson, et al. v. Zuffa, LLC, et al.*, No. 2:21-cv-1189 (D. Nev.), which was filed on June 23, 2021.

n.   "*Johnson* Settlement Class" means all persons who competed in one or more live professional UFC-promoted MMA bouts taking place or broadcast in the United States from July 1, 2017 to the date of preliminary approval of the Settlement. Excluded from the *Johnson* Settlement Class are all persons who are not residents or citizens of the United States unless the UFC paid such persons for competing in a bout fought or broadcast in the United States.

o.   The "*Le* Action" means *Le, et al. v. Zuffa, LLC*, No. 2:15-cv-1045 (D. Nev.), which was filed on December 16, 2014.

p.   "*Le* Class" is the Bout Class certified by the Court in the *Le* Action, ECF No. 839 (Aug. 9, 2023), and means all persons who competed in one or more live professional UFC-promoted MMA bouts taking place or broadcast in the United States from December 16, 2010 to June 30, 2017. Excluded from the *Le* Class are all persons who are not residents or citizens of the United States unless the UFC paid such persons for competing in a bout fought in the United States.

q.   "Notice Expenses" means all reasonable expenses relating to providing notice to the Settlement Classes, including, *inter alia*, the cost of (a) publications, (b) distributing the short and long-form notices to members of the Settlement Classes, (c) the Claims Administrator's

costs of maintaining and administering the notice website and toll-free phone number, and (d) the Claims Administrator's costs associated with designing and administering the Notice Plan.

r.   "Notice Plan" means the plan for providing notice pursuant to Fed. R. Civ. P. 23(e)(1) to the members of the Settlement Classes.

s.   "Plan of Allocation" means the plan proposed to the Court by Settlement Class Counsel for the allocation of the portion of the UFC Settlement Fund to be paid to members of the Settlement Classes.

t.   "Releasees" means Defendants Zuffa, LLC, TKO Operating Company, LLC, Endeavor Group Holdings, Inc., and any and all of their past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, beneficiaries, and representatives of any kind.

u.   "Releasors" means all Plaintiffs and all Settlement Class Members and all of their predecessors, successors, heirs, administrators, assigns, and any party claiming by, for, under, or through any Plaintiff or Settlement Class Member to have any Released Claim against the Releasees, including any and all of Plaintiffs' or Settlement Class Members' past, present, and future officers, directors, supervisors, employees, agents, stockholders, members, attorneys, servants, representatives, accounts, plans, groups, parent companies, subsidiary companies, affiliated companies, divisions, affiliated partnerships, joint venturers, principals, partners, wards, heirs, assigns, beneficiaries, estates, next of kin, family members, relatives, personal representatives, administrators, agents, representatives of any kind, insurers, and all other persons, partnerships, or corporations with whom any of the foregoing have been, or are now or become, affiliated, and the predecessors, successors, heirs, executors, administrators, and assigns of any of the foregoing.

v.   "Released Claims" means the claims described in Paragraph 11 below. The

Settling Parties intend that such releases be interpreted and enforced broadly and to the fullest extent permitted by law.

w.   "Settlement Class Counsel" means Co-Lead Class Counsel as well as Kemp Jones, LLP (appointed by the Court as Liaison Counsel in the *Le* Action, ECF No. 839), Warner Angle Hallam Jackson & Formanek PLC, and Clark Hill PLC.

x.   "Settlement Classes" means both the *Le* Class and the *Johnson* Settlement Class.

y.   "Settlement Class Members" means the members of one or both Settlement Classes who do not or did not timely and validly opt out.

z.   "Settling Parties" means all Plaintiffs and all Defendants.

aa.  "UFC Settlement Fund" means Defendants' Payment, plus any and all accrued interest.

**2.      Reasonable Steps Necessary to Help Effectuate this Settlement.** The Settling Parties agree to undertake in good faith all reasonable steps necessary to help effectuate the Settlement, including undertaking all actions contemplated by, and steps necessary to, carry out the terms of this Settlement and to secure the prompt, complete, and final dismissal with prejudice of all claims in these Actions against Defendants. The Settling Parties also agree to the following:

a.   Defendants agree not to oppose a grant of the relief requested in the Plaintiffs' motions for preliminary or final approval of the Settlement, and also agree not to appeal any Court ruling granting in full or substantial part either of these motions.

b.   Defendants will serve notice of this Settlement on the appropriate federal and state officials under the Class Action Fairness Act, 28 U.S.C. § 1715.

c.   This Settlement is reached with Co-Lead Counsel, who have been appointed to represent the *Le* Class and will seek approval to represent the *Johnson* Settlement Class, and is intended to be binding on all persons who are within the definition of the Settlement Classes. Unless explicitly ordered to do so by the Court, Defendants agree not to directly or indirectly solicit, induce, compel, or encourage any person who would be a member of either of the

Settlement Classes (1) to opt out of one or both of the Settlement Classes, (2) to object to all or part of the Settlement Agreement, (3) to object to any request for service awards for the *Le* Class Representatives and *Johnson* Settlement Class Representatives, or (4) to object to Settlement Class Counsel's request for a Fee and Expense Award.

**3.     Approval**

a.   Except as otherwise provided herein, on the Execution Date, Plaintiffs, all members of the Settlement Classes, and Defendants shall be bound by this Settlement, and this Settlement shall not be rescinded except in accordance with Paragraph 10 of this Settlement Agreement.

b.   **Motion for Preliminary Approval of the Settlement.** Plaintiffs shall draft a motion for preliminary approval of the Settlement and all necessary supporting documents, which motion and documents shall be consistent with this Settlement Agreement. Defendants shall have a right to review before it is filed Plaintiffs' preliminary approval motion, memorandum of law in support, the proposed Plan of Allocation, the proposed short and long-form notices for the Settlement Classes, and the proposed preliminary approval order. Defendants may suggest revisions, which Plaintiffs agree to consider in good faith, as long as Defendants provide their suggested revisions or comments within five (5) business days of having received any such document or documents from Plaintiffs, or such other time as the Settling Parties may agree. Unless the Settling Parties agree otherwise, Plaintiffs will file the motion for preliminary approval with the Court no later than thirty (30) days after the execution of this Settlement Agreement. The motion for preliminary approval shall include a proposed form of order, including at least the following:

i.   finding preliminary approval of the Settlement to be appropriate as the Settlement is fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23, finding that dissemination of notice to the Settlement Classes is warranted, and finding that the opportunity to opt out already provided to members of the *Le* Class was sufficient and fully consistent with Fed. R. Civ. P.

23 and due process of law, or in the alternative that the opportunity to opt out already provided to members of the *Le* Class was sufficient and fully consistent with Fed. R. Civ. P. 23 and due process of law to persons who are (A) members of the *Le* Class and who (B) would not also be members of the *Johnson* Settlement Class if they did not timely and validly opt out of the *Johnson* Settlement Class;[1]

ii.   provisionally certifying the *Johnson* Settlement Class based on a finding that the *Johnson* Settlement Class likely meets the standards for certifying a settlement class under Fed. R. Civ. P. 23;

iii.   finding that the proposed Notice Plan of notice for the Settlement Classes complies with Rule 23 and due process, and approving proposed short- and long-form notices;

iv.   provisionally approving the proposed Plan of Allocation;

v.   providing that if final approval of the Settlement is not obtained, the Settlement shall be null and void, and the Settling Parties will revert to their positions *ex ante* without prejudice to their claims or defenses in the Actions; and

vi.   setting deadlines for: (a) the filing of a motion for final approval of the Settlement, (b) implementation of the Notice Plan, (c) the filing of the Plaintiffs' Fee and Expense Award application, (d) the filing of any objections from Settlement Class Members to the Settlement, (e) the provision of appropriate notice for opting out of one or both Settlement Classes to the extent the Court requires an additional opt out period for some or all members of the *Le* Class, and (f) a fairness hearing for the Settlement of both Actions.

---

[1] To the extent the Court requires an additional opt-out opportunity either for (a) members of the *Le* Class who also would be members of the *Johnson* Settlement Class if they did not timely and validly opt out of the *Johnson* Settlement Class (*i.e.*, only to persons who are members of both Settlement Classes), or (b) all members of the *Le* Class, the remaining provisions of the Settlement shall remain in full force and effect.

Case Nos.: 2:15-cv-1045; 2:21-cv-01189

**SETTLEMENT AGREEMENT**

c.   **Stay of Proceedings.** The motion for preliminary approval shall also provide for a stay of Plaintiffs' proceedings against Defendants in both Actions pending final approval or termination of the Settlement.

d.   **Motion for Fee and Expense Award and Class Representative Service Awards.** Separate and apart from—and in advance of—the motion for final approval, Plaintiffs shall file a motion for a Fee and Expense Award and for service awards for the *Le* Class Representatives and *Johnson* Settlement Class Representatives, seeking the entry of an order approving expressly the provisions in Paragraph 9 of this Settlement Agreement.

e.   **Motion for Final Approval and Entry of Final Judgment in Both Actions.** In the event the Court enters an order preliminarily approving the Settlement, Plaintiffs shall draft a motion for final approval of the Settlement and all necessary supporting documents. Defendants shall have a right to review Plaintiffs' motion for final approval, Plaintiffs' memorandum of law in support of final approval, and the proposed form of order. Defendants may suggest revisions, which Plaintiffs agree to consider in good faith, as long as Defendants provide their suggested revisions or comments within five (5) business days of having received any such document or documents from Plaintiffs, or other such time as the Settling Parties may agree. Plaintiffs will file the motion for final approval pursuant to the schedule ordered by the Court. The final approval motion shall seek entry of a final approval order, including:

i.   finding that the notice given to members of the Settlement Classes as part of the Notice Plan constitutes due, adequate, and sufficient notice and meets the requirements of due process and the Federal Rules of Civil Procedure;

ii.   certifying the *Johnson* Settlement Class based on a finding that the *Johnson* Settlement Class meets the requirements of Fed. R. Civ. P. 23 for settlement purposes;

iii.   finding the Settlement to be fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23, and directing consummation of the Settlement pursuant to its terms;

**SETTLEMENT AGREEMENT**

iv.  finding that all members of the *Le* Class and *Johnson* Settlement Class, who did not timely and validly opt out, and all Plaintiffs, shall be bound by the Settlement Agreement and all of its terms;

v.  finding that the Releasors shall be bound by the release set forth in Paragraph 11 of this Settlement Agreement, and shall be forever barred from asserting any of the Released Claims against any of the Releasees;

vi.  directing that the Actions be dismissed with prejudice as to Defendants and without costs as to any Settling Party;

vii.  retaining exclusive jurisdiction over the Settlement, including the administration, enforcement, and consummation of the Settlement in both Actions; and

viii.  determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal of both Actions as to Defendants shall be final.

4.  **Finality of Settlement.** This Settlement Agreement shall become final upon the Effective Date.

5.  **Defendants' Payment; UFC Settlement Fund; Notice Expenses and Costs.**

a.  **Funding the UFC Settlement Fund.** Defendants shall make Defendants' Payment of three-hundred and thirty-five million dollars ($335 million) for the benefit of the Settlement Classes pursuant to the following payment schedule:

i.  $100 million will be paid into an interest-bearing escrow account for the benefit of the Settlement Classes three (3) business days after entry of the Court's Order Preliminarily approving the Settlement;

ii.  $100 million will be paid into an interest-bearing escrow account for the benefit of the Settlement Classes three (3) business days after the Court's Order finally approving the Settlement, or November 1, 2024, whichever comes later;

      iii.  $135 million will be paid into an interest-bearing escrow account for the benefit of the Settlement Classes no later than April 1, 2025.

Settlement Class Counsel shall provide Defendants' counsel with written wiring instructions for the Escrow Account.

    b.  Any distributions to members of the Settlement Classes from the UFC Settlement Fund shall be performed in accordance with the Plan of Allocation approved by the Court.

    c.  The Defendants' Payment, and each portion thereof, provided for in subparagraph 5(a) above shall be held in the Escrow Account subject to the terms and conditions of the Escrow Agreement, and in accordance with the provisions of Paragraph 8 below.

    d.  In consideration for the release of his claims as set forth in Paragraph 11 below, individual Plaintiff Nathan Quarry shall receive a payment of $250,000 from the UFC Settlement Fund.

    e.  Before the granting of final approval, and upon the direction of Settlement Class Counsel, all reasonable Notice Expenses and any costs of administering the UFC Settlement Fund, including taxes, will be paid out of the Escrow Account on a non-recoupable basis other than as set forth below. Settlement Class Counsel agree to arrange for provision of class notice to the Settlement Classes in accordance with Fed. R. Civ. P. 23 and any orders of the Court.

    f.  Following the Effective Date, any Fee and Expense Award and service awards to the *Le* Class Representatives and *Johnson* Settlement Class Representatives awarded by the Court will be paid from the Escrow Account. Defendants will take no position on Settlement Class Counsel's application for a Fee and Expense Award or for class representative service awards, unless required to do so by the Court.

    g.  There shall be no reduction of Defendants' Payment or the UFC Settlement Fund by reason of any Settlement Class Member timely and validly opting out of the Settlement.

    **6.**    **Prospective Relief.** Defendants agree to maintain, for a period of five years from the Effective Date, the following changes to their Promotional and Ancillary Rights Agreements

Case Nos.: 2:15-cv-1045; 2:21-cv-01189

**SETTLEMENT AGREEMENT**

with their Fighters, effective both retroactively as to agreements currently in force and prospectively for all agreements signed for five years from the Effective Date:

a.    To the extent that Defendants' current contracts with their Fighters contain, or Defendants maintain, a provision pursuant to which a Fighter agrees to negotiate exclusively with Defendants regarding the extension or renewal of the Term of the Promotional and Ancillary Rights Agreements ("Exclusive Negotiation Period"), the Exclusive Negotiation Period may last no longer than thirty (30) days following the expiration of the Term. If Defendants and a Fighter fail to reach agreement upon the terms and conditions of an extension or renewal of the Term within the Exclusive Negotiation Period, the Fighter may negotiate with any other promotional entity, subject to Defendants' right to match the terms of any agreement offered to the Fighter by such promotional entity (each, an "Offer") prior to the acceptance of an Offer by the Fighter.

b.    To the extent that Defendants' current contracts with their Fighters contain, or Defendants maintain, a provision pursuant to which, following the expiration of the Term and Exclusive Negotiation Period, Defendants shall have the option to match the financial terms and conditions of an Offer (the "Matching Period"), the Matching Period may last no longer than four (4) months. Defendants shall have the option to match the material financial terms of any Offer made to a Fighter for any MMA bout or fighting competition or exhibition, or any series of MMA bouts or fighting competitions or exhibitions. Fighters shall not accept any Offer or enter into contracts or agreements with any other promotional entity during the Matching Period without complying with this provision.

c.    To the extent that Defendants' current contracts with their Fighters contain, or Defendants maintain, a provision pursuant to which a Defendant retains the ability to extend the Term of the Promotional and Ancillary Rights Agreement in the event that a Fighter is offered a Bout against an opponent designated by a Defendant but does not accept that Bout because the Fighter is unable or unreasonably refuses to compete for any reason whatsoever (a "Declination"), for each such Declination, Defendants may, at their election, extend the Term for

SETTLEMENT AGREEMENT

the length of time sufficient to find a new opponent to accept the Bout or for six (6) months, whichever is longer. A "new opponent" for purposes of this provision means an opponent different than the one previously offered and declined. Defendants may include language stating that such extension is necessary to provide the Fighter with a suitable replacement Bout, as Defendants and the Fighter recognize attendant difficulties including, but not limited to, that there is a limited pool of suitable opponents, suitable opponents may have pre-existing Bout obligations, and sufficient lead time must exist to adequately promote the replacement Bout.

      d.   To the extent that Defendants' current contracts with their Fighters contain, or Defendants maintain, a provision in their Promotional and Ancillary Rights Agreements providing that if any time during the Term of the Promotional and Ancillary Rights Agreement, the Fighter decides to retire from MMA or other professional fighting competition or is permanently disabled, then Defendants may, at their election, (i) suspend the Term for the period of such retirement or disability (such suspension not to exceed four (4) years, the "Maximum Suspension Period"), (ii) declare that Defendants have satisfied their obligations to promote all future Bouts to be promoted by Defendants under the Promotional and Ancillary Rights Agreement, without any compensation due to the Fighter therefor, and/or (iii) provide the Fighter with notice of termination in accordance with the Promotional and Ancillary Rights Agreement. At the expiration of the Maximum Suspension Period, if Fighter remains in retirement or such disability continues, the Promotional and Ancillary Rights Agreement shall automatically terminate.

      e.   To the extent that Defendants' current contracts with their Fighters require, or Defendants continue to require, Fighters to grant to a Defendant during the Term the nonexclusive worldwide right to Use Fighter's Identity, in any Defendant's sole discretion, in connection with the creation, development, manufacture, distribution, marketing and sale directly or by third parties of Event Merchandise and Merchandise (the "Merchandise Rights"), Fighters shall retain the right to use Fighter's Identity, including by way of illustration and not limitation, Fighters' names, images, voices and likenesses, in connection with the creation, development,

14

manufacture, distribution, marketing and sale directly or by third parties of Merchandise. Defendants agree to provide Fighters up to three (3) still images of the Fighter, the licensing of which shall be governed by a licensing application to and approval by Getty Images.

      f.   During this five-year period, if any of these provisions are materially impairing Defendants' ability to compete, Defendants may seek relief from these provisions from Plaintiffs and, in the event of a dispute, such dispute shall be subject to final and binding arbitration before the Hon. Layn Phillips. In order to invoke this provision, Defendants are required to notify Settlement Class Counsel in writing, setting forth the basis for any such claim for relief and the precise relief requested. The parties shall then engage in a good faith mediation before Hon. Layn Phillips in an attempt to resolve the matter before submitting the dispute to final binding arbitration.

      **7.**    **No Admission of Liability or Wrongdoing.** Neither this Settlement (whether or not it becomes final), the final judgment, nor any negotiations, documents, and discussions associated with them shall be deemed or construed as evidence of, or an admission or concession of liability or wrongdoing by any Defendant, or be used or offered in any proceeding for any purposes, except to enforce the terms of this Settlement. Nothing in this Settlement will constitute or be construed as evidence, or an admission or concession by Plaintiffs of the lack of merit of any of their claims or allegations against Defendants in these matters. Plaintiffs' agreement to the prospective relief provisions in Paragraph 6, above, shall not be deemed or considered a concession that Defendants' promotion or other agreements, or any parts thereof, are procompetitive or are not anticompetitive.

      **8.**    **Escrow Account; Taxes.**

      a.   An Escrow Account shall be maintained at Huntington National Bank to hold the Settlement Fund.

      b.   The Escrow Account is intended by the parties hereto to be treated as a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1, and to that end the parties hereto shall cooperate with each other and shall not take a position in any filing or before any tax

authority that is inconsistent with such treatment. A "relation back election" as described in Treas. Reg. § 1.468B-1(j) shall be made so as to enable the Escrow Account to be treated as a qualified settlement fund from the earliest date possible, and the parties shall take all actions as may be necessary or appropriate to this end. At the direction of Settlement Class Counsel, taxes or estimated taxes shall be paid on any income earned on the funds in the Escrow Account, whether or not final approval has occurred, as provided in Paragraph 5, above. For purposes of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "Administrator" of the Escrow Account shall be the Claims Administrator, who shall timely and properly file or cause to be filed on a timely basis, all tax returns necessary or advisable with respect to the Escrow Account (including without limitation all income tax returns, all informational returns, and all returns described in Treas. Reg. § 1.468B-2(1)).

c.   All payments into the Escrow Account, including Defendants' Payment, and each portion thereof, and any income earned thereon, shall, at the direction of Settlement Class Counsel, be invested in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including U.S. Treasury Bills, U.S. Treasury Money Market Funds, or a bank account insured by the Federal Deposit Insurance Corporation ("FDIC") up to the guaranteed FDIC limit. Any interest earned on any of the foregoing shall become part of the UFC Settlement Fund. Defendants shall have no responsibility for, or liability in connection with, the UFC Settlement Fund or the Escrow Account, including, without limitation, the investment, administration, maintenance, or distribution thereof.

d.   All funds held in the Escrow Account shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as the UFC Settlement Fund shall be distributed pursuant to this Settlement and/or order(s) of the Court.

e.   The Claims Administrator, as administrator of the UFC Settlement Fund, shall report to each Settlement Class Member and all applicable taxing authorities, to the extent

required by law, under the Settlement Class Member's name and U.S. federal taxpayer identification number on IRS Forms 1099, 1042-S, or other applicable forms, and such payments shall be made without deduction for taxes and withholdings, except as required by law, as determined by the Claims Administrator.

f.   The Claims Administrator shall be responsible for procuring any required tax forms from Settlement Class Members before making any payments or distributions to such Settlement Class Members.

g.   For avoidance of doubt, Defendants, Defendants' Counsel, Plaintiffs, and Settlement Class Counsel shall have no liability, obligation, or responsibility whatsoever for tax obligations arising from payments to any Settlement Class Member or based on the activities and income of the UFC Settlement Fund. The UFC Settlement Fund shall be solely responsible for its tax obligations. Settlement Class Counsel shall be solely responsible for their own tax obligations.

h.   Plaintiffs, individually and on behalf of the Settlement Classes, and Settlement Class Counsel represent and agree that Settlement Class Counsel have not provided any advice as to the taxability of payments received pursuant to this Settlement.

9.   **Settlement Class Counsel's Fee and Expense Award, and Service Awards for Class Representatives.**

a.   Reasonable disbursements for (a) Notice Expenses, (b) reasonable expenses for maintaining and administering the UFC Settlement Fund, (c) reasonable expenses associated with developing, preparing, and implementing the Plan of Allocation, and (d) taxes and reasonable expenses incurred in connection with taxation matters may be paid out of the Escrow Account without approval from the Court and shall not be refundable to Defendants in the event the Settlement is disapproved, rescinded, or otherwise fails to become effective or final, to the extent such expenses have actually been expended or incurred. No other disbursement from or distribution of the UFC Settlement Fund shall be made without prior approval of the Court.

b.  If this Settlement does not become final within the meaning of Paragraph 4, then all amounts paid by Defendants into the UFC Settlement Fund (other than costs expended or incurred in accordance with Paragraph 9(a)) shall be returned to Defendants from the Escrow Account, along with any interest accrued thereon, within thirty (30) calendar days of the Court's denial of final approval of the Settlement.

c.  If this Settlement becomes final within the meaning of Paragraph 4: (1) the UFC Settlement Fund, net of any expenses incurred (as contemplated by this Settlement Agreement) and the Fee and Expense Award (the "Net UFC Settlement Fund"), shall be distributed in accordance with the Plan of Allocation, subject to approval by the Court; (2) no Releasee shall have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, or administration of the UFC Settlement Fund, including, but not limited to, the costs and expenses of such investment, distribution, or administration; and (3) Defendants shall have no reversionary interest in any of the UFC Settlement Fund or interest thereon, which interest shall be for the benefit of the Settlement Classes and Settlement Class Counsel. Subject to Court approval, Settlement Class Counsel shall be reimbursed and paid solely out of the UFC Settlement Fund for all past, current, or future litigation costs and expenses and any award of attorneys' fees, as part of any Fee and Expense Award. Service awards to the Plaintiffs, if approved by the Court, will be paid solely out of the UFC Settlement Fund.

d.  Subject to the posting of appropriate security for any funds paid under this paragraph and Court approval, the Fee and Expense Award shall be payable from the UFC Settlement Fund, notwithstanding the existence of any timely-filed objections thereto, or potential appeal therefrom, or collateral attack on the Settlement or any part thereof, including on the Fee and Expense Award, subject to Settlement Class Counsel's obligation to make

appropriate refunds or repayments to the UFC Settlement Fund, if and when, as a result of any appeal or further proceedings on remand, or successful collateral attack, the Fee and Expense Award is reduced or reversed, or in the event the Settlement does not become final or is rescinded or otherwise fails to become effective. Settlement Class Counsel shall provide an assurance from a financial institution that such refunds to the Settlement Fund will be made in the event that Settlement Class Counsel defaults on any obligation under this paragraph. If the provisions of this paragraph are followed, Defendants shall not object to such disbursements to Settlement Class Counsel.

e.   The procedure for and the allowance or disallowance by the Court of the Fee and Expense Award, and service awards for class representatives to be paid out of the UFC Settlement Fund, are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement, and any order or proceeding relating to the Fee and Expense Award, or service awards, or any appeal from any such order shall not in itself operate to terminate or cancel this Settlement.

**10.   Recission**

a.   If the Court refuses to approve this Settlement or any part hereof, including if the Court does not certify the Settlement Classes in accordance with the Settlement Class definitions set forth in this Settlement, or if such approval is modified or set aside on appeal, or if the Court does not enter the final judgment provided for in Paragraph 4 of this Settlement, or if the Court enters the final judgment and appellate review is sought, and on such review, such final judgment is not affirmed in its entirety, then Defendants and Plaintiffs shall each, in their/his sole discretion, have the option to rescind this Settlement in its entirety within thirty (30) calendar days of the entry into the docket of the Court of the relevant court decision. Written notice of the

exercise of any such right to rescind shall be made according to the terms of Paragraph 12(g).

b.   In the event that this Settlement does not become final as set forth in Paragraph 4, or this Settlement otherwise is terminated, then this Settlement shall be of no force or effect and any and all parts of the UFC Settlement Fund remaining in the Escrow Account (including interest earned thereon), shall be returned to Defendants within thirty (30) calendar days. For the avoidance of doubt, the full portion of the UFC Settlement Fund that Defendants have funded, less only disbursements made in accordance with Paragraph 9(a), plus any accrued interest, shall be so returnable. Defendants and Plaintiffs expressly reserve all their respective claims, rights, and defenses in both Actions if this Settlement does not become final.

c.   Defendants shall also have the option to rescind the Settlement should the requirements of the Confidential Supplement, which are expressly incorporated as if set forth herein, be satisfied.

**11.   Released Claims and Covenant Not to Sue**.

a.   "Released Claims" means any and all known and unknown claims, causes of action, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations, debts, setoffs, rights or recovery, or liabilities for any obligations of any kind whatsoever (however denominated), whether class or individual, in law or equity or arising under constitution, statute, regulation, ordinance, contract, or otherwise in nature—including without limitation any and all actual or potential actions, losses, judgments, fines, debts, liabilities (including joint and several), liens, causes of action, demands, rights, damages, penalties, punitive damages, costs, expenses (including attorneys' fees and legal expenses), indemnification claims, contribution claims, obligations, compensation, and claims for damages or for equitable or injunctive relief of any nature (including but not limited to antitrust, RICO, contract, tort, conspiracy, unfair competition, or unfair trade practice claims)—known or unknown, suspected or unsuspected, asserted or unasserted, direct or derivative, based upon, arising from, or relating

**SETTLEMENT AGREEMENT**

to: (i) the factual predicates of the *Le* Action or the *Johnson* Action, or any complaint or pleading therein from the beginning of time until final approval of this Settlement Agreement, including any contracts, mergers, acquisitions, transactions, or any business practices of any kind employed or executed by Defendants or their affiliates or assigns; or (ii) any issue raised in the *Le* Action or *Johnson* Action by pleading or motion. For clarity, Released Claims include, but are not limited to, claims that arise after the Execution Date to the extent they involve a continuation of some or all of the conduct or issues set forth in 11(a)(i) and (ii) herein. Released Claims shall not include: (a) claims arising in the ordinary course of business, such as, and without limitation, contract disputes or negligence claims, or (b) claims to enforce this Settlement Agreement.

b.   In addition to the effect of any final judgment entered in accordance with this Settlement Agreement, upon the Effective Date, and in consideration of Defendants' Payment into the UFC Settlement Fund, and for other valuable consideration, the Releasors shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal shall have fully, finally, and forever released, relinquished, and discharged all Released Claims against any and all of the Releasees. The Settling Parties intend that the releases in this Settlement Agreement shall be interpreted and enforced broadly and to the fullest extent permitted by law. Each Releasor shall be deemed to have released all Released Claims against the Releasees regardless of whether any such Releasor ever seeks or obtains by any means, including without limitation through the claim process, any distribution from the UFC Settlement Fund, unless such Releasor opts out in writing pursuant to the Notice Plan approved by the Court. Plaintiffs, Nathan Quarry, and Defendants acknowledge, and Settlement Class Members shall be deemed by operation of any Final Judgment and Order of Dismissal to have acknowledged, that the foregoing waivers and releases were separately bargained for and a key element of this Settlement Agreement, of which these releases are part.

c.   All Releasors also covenant not to sue any Releasee with respect to any Released Claim, and agree that all Releasors shall be permanently barred and enjoined from commencing, maintaining, or prosecuting, any action, suit, proceeding, or claim in any court, tribunal,

**SETTLEMENT AGREEMENT**

administrative agency, regulatory body, arbitrator, or other body in any jurisdiction against any Releasee based in whole or in part upon, arising out of, or in any way connected or related to any Released Claim.

d.   Each Releasor may hereafter discover facts other than or different from those in which he, she, or it believes to be true with respect to the claims which are the subject matter of the provisions of this Paragraph 11. Nevertheless, each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon final approval of this Settlement Agreement, any known or unknown, suspected or unsuspected, contingent or non-contingent claim with respect to the subject matter of the provisions of this Paragraph 11, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

e.   In addition to the provisions of this Paragraph 11, Releasors expressly waive and release, upon final approval of this Settlement Agreement, any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY;

or by any law of any state or territory of the U.S., or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code.

f.   Each Releasor shall look solely to the Plan of Allocation and UFC Settlement Fund as deposited in the Escrow Account for settlement and satisfaction, as provided here, of all Released Claims for any form of monetary compensation or relief (including attorneys' fees and costs). Except as provided by order of the Court pursuant to this Settlement Agreement, no Settlement Class Member or Nathan Quarry shall have any interest in the Escrow Account or the UFC Settlement Fund deposited therein, or any portion thereof.

g.  Notwithstanding any other provision of this Settlement Agreement, nothing in this Settlement Agreement will prevent Releasees from pleading this Settlement Agreement as a full and complete defense to any action, suit, or other proceeding that has been or may be instituted, prosecuted, or attempted with respect to any of the Released Claims and may be filed, offered, and received into evidence, and otherwise used for such defense.

**12.    Miscellaneous.**

a.  This Settlement shall be governed by and interpreted according to the substantive laws of the state of Nevada without regard to its choice of law or conflict of laws principles. Defendants will not object to complying with any of the provisions outlined in this Settlement on the basis of jurisdiction.

b.  The United States District Court for the District of Nevada shall retain jurisdiction over the implementation, interpretation, enforcement, and performance of this Settlement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to the Settlement or the applicability of the Settlement that cannot be resolved by negotiation and agreement by Plaintiffs and the Settlement Classes and Defendants, including challenges to the reasonableness of any of the Settling Parties' actions.

c.  This Settlement constitutes the entire, complete, and integrated agreement among Plaintiffs and the Settlement Classes and Defendants pertaining to the Settlement, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between Plaintiffs and Defendants in connection herewith. This Settlement may not be modified or amended except in writing executed by Plaintiffs and Defendants, by their respective counsel, and approved by the Court.

d.  This Settlement shall be binding upon, and inure to the benefit of, the successors and assigns of Plaintiffs, Settlement Class Members who do not timely and validly opt out, and Defendants. Without limiting the generality of the foregoing, upon final approval of this Settlement, each and every covenant and agreement made herein by Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members who do not timely and

**SETTLEMENT AGREEMENT**

validly opt out and all Releasors. To the extent not parties to this Settlement, the Releasees are intended by the Settling Parties to be third-party beneficiaries of this Settlement and are authorized to enforce its terms as applicable to them.

e.    This Settlement may be executed in counterparts, and a facsimile or other electronic signature shall be deemed an original signature for purposes of executing this Settlement.

f.    No Settling Party shall be considered to be the drafter of the Settlement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of the Settlement.

g.    All notices or communications by any Settling Party intended for any other Settling Party related to this Settlement shall be in writing. Each such notice or communication shall be given either by: (a) hand delivery; (b) registered or certified mail, return receipt requested, postage pre-paid; (c) Federal Express or similar overnight courier; or (d) electronic mail, and, in the case of either (a), (b), (c), or (d) shall be addressed as follows:

If directed to Plaintiffs, the Settlement Classes, or any member of the Settlement Classes, to:

| | |
|---|---|
| Eric L. Cramer<br>BERGER MONTAGUE PC<br>1818 Market St., Suite 3600<br>Philadelphia, PA 19103<br>ecramer@bm.net | Benjamin Brown<br>COHEN MILSTEIN SELLERS<br>  & TOLL PLLC<br>1100 New York Ave., N.W., Suite 500<br>East Tower<br>Washington, DC 20005<br>bbrown@cohenmilstein.com |
| Joseph R. Saveri<br>JOSEPH SAVERI LAW FIRM, LLP<br>601 California St., Suite 1000<br>San Francisco, CA 94108<br>jsaveri@saverilawfirm.com | Robert C. Maysey<br>Jerome K. Elwell<br>WARNER ANGLE HALLAM JACKSON<br>  & FORMANEK PLC<br>2555 E. Camelback Road, Suite 800<br>Phoenix, AZ 85016<br>rmaysey@warnerangle.com<br>jelwell@warnerangle.com |

Case Nos.: 2:15-cv-1045; 2:21-cv-01189

**SETTLEMENT AGREEMENT**

If directed to Defendants, to:

William A. Isaacson
Jessica Phillips
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
2001 K Street, NW
Washington, DC 20006
wisaacson@paulweiss.com
jphillips@paulweiss.com

Brette Tannenbaum
Yotam Barkai
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
btannenbaum@paulweiss.com
ybarkai@paulweiss.com

Donald J. Campbell
J. Colby Williams
CAMPBELL & WILLIAMS
700 South 7th Street
Las Vegas, NV 89101
djc@campbellandwilliams.com
jcw@campbellandwilliams.com

Christopher S. Yates
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
chris.yates@lw.com

Sean M. Berkowitz
LATHAM & WATKINS LLP 330
North Wabash Ave, Suite 2800
Chicago, IL 60611
sean.berkowitz@lw.com

Laura R. Washington
LATHAM & WATKINS LLP
10250 Constellation Blvd, Suite 1100
Los Angeles, CA 90067
laura.washington@lw.com

David L. Johnson
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
david.johnson@lw.com

   h.   The Settling Parties agree that any formal written public statement by Representative Plaintiffs or Defendants (or their respective counsel, representatives, or agents) concerning this Settlement, including the content of all website postings and formal written communications to public-facing third parties, must be mutually agreed upon in advance. The Settling Parties shall use best efforts to give each other at least two (2) business days' notice of any such draft formal written public statement, and work in good faith to incorporate any comments from the other before publishing it. In the event such prior notice is not practicable, the Settling Party shall contact the other Settling Party's designee as early as possible regarding the formal written public statement and shall rely upon previously agreed-upon materials to the extent practicable. This provision (1) shall not prevent Representative Plaintiffs or Defendants

25

from answering questions from the press or Settlement Class Members truthfully about the Settlement; and (2) shall expire two months after the Court's order finally approving the Settlement or if the Settlement is terminated by its terms. Defendants shall be entitled to make such disclosures to their investors, employees, auditors, and regulatory bodies of this Agreement as they, in their sole discretion, determine are appropriate. Nothing in this paragraph shall limit the communications Defendants may have with third parties regarding the operations of their businesses under the terms of this Settlement Agreement. This provision does not apply to statements made in judicial filings necessary to obtain preliminary Court approval of the Settlement or effectuate the Notice Plan approved by the Court.

i.  Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, the Settlement subject to Court approval, on behalf of the indicated parties.

DATED:  April 24, 2024

By: _____
William A. Isaacson

William A. Isaacson (Pro hac vice)
Jessica Phillips (Pro hac vice)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006
Telephone: +1 (202) 223-7300
Email: wisaacson@paulweiss.com
Email: jphillips@paulweiss.com

Brette M. Tannenbaum (Pro hac vice)
Yotam Barkai (Pro hac vice)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
Telephone: +1 (212) 373-3000
Email: btannenbaum@paulweiss.com
Email: ybarkai@paulweiss.com

By: _____
Eric L. Cramer

Eric L. Cramer (pro hac vice)
Michael Dell'Angelo (pro hac vice)
Ellen T. Noteware (pro hac vice)
Patrick F. Madden (pro hac vice)
Najah Jacobs (pro hac vice)
BERGER MONTAGUE PC
1818 Market St., Suite 3600
Philadelphia, PA 19103
Telephone: +1 (215) 875-3000
Email: ecramer@bm.net
Email: mdellangelo@bm.net
Email: enoteware@bm.net
Email: pmadden@bm.net
Email: njacobs@bm.net

26

SETTLEMENT AGREEMENT

Donald J. Campbell (No. 1216)
J. Colby Williams (No. 5549)
CAMPBELL & WILLIAMS
700 South 7th Street
Las Vegas, Nevada 89101
Telephone: +1 (702) 382-5222
Email: djc@campbellandwilliams.com
Email: jcw@campbellandwilliams.com

Christopher S. Yates (Pro hac vice)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: +1 (415) 395-8095
Email: chris.yates@lw.com

Sean M. Berkowitz (Pro hac vice)
LATHAM & WATKINS LLP
330 North Wabash Ave, Suite 2800
Chicago, IL 60611
Telephone: +1 (312) 876-7700
Email: sean.berkowitz@lw.com

Laura Washington (Pro hac vice)
LATHAM & WATKINS LLP
10250 Constellation Blvd, Suite 1100
Los Angeles, CA 90067
Telephone: +1 (424) 653-5500
Email: laura.washington@lw.com

David L. Johnson (Pro hac vice)
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone: +1 (202) 637-2200
Email: david.johnson@lw.com

*Attorneys for Defendants Zuffa, LLC, TKO
Operating Company, LLC, and Endeavor
Group Holdings, Inc.*

Joshua P. Davis (pro hac vice)
BERGER MONTAGUE PC
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Telephone: +1 (415) 906-0684
Email: jdavis@bm.net

Richard A. Koffman (pro hac vice)
Benjamin Brown (pro hac vice)
Daniel Silverman (pro hac vice)
Daniel L. Gifford (pro hac vice)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave., N.W., Suite 500 East, Tower
Washington, DC 20005
Telephone: +1 (202) 408-4600
Facsimile: +1 (202) 408-4699
Email: rkoffman@cohenmilstein.com
Email: bbrown@cohenmilstein.com
Email: dsilverman@cohenmilstein.com
Email: dgifford@cohenmilstein.com

Joseph R. Saveri (pro hac vice)
Kevin E. Rayhill (pro hac vice)
Christopher Young (pro hac vice)
Itak Moradi (pro hac vice)
JOSEPH SAVERI LAW FIRM, LLP
601 California St., Suite 1000
San Francisco, CA 94108
Telephone: +1 (415) 500-6800
Facsimile: +1 (415) 395-9940
Email: jsaveri@saverilawfirm.com
Email: krayhill@saverilawfirm.com
Email: cyoung@saverilawfirm.com
Email: imoradi@saverilawfirm.com

*Co-Lead Counsel for the Le Class, Settlement Class
Counsel for the Le Class and the Johnson Settlement
Class and Attorneys for Individual and Representative
Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Brandon
Vera, Luis Javier Vazquez, Kyle Kingsbury, Kajan
Johnson, Clarence Dollaway, and Tristan Connelly*

Case Nos.: 2:15-cv-1045; 2:21-cv-01189

**SETTLEMENT AGREEMENT**

Don Springmeyer (Bar No. 1021)
KEMP JONES, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
Telephone: + 1 (702) 385-6000
Facsimile: + 1 (702) 385-6001
Email: dspringmeyer@kempjones.com

*Liaison Counsel for the Le Class, Settlement Class
Counsel for the Le Class and the Johnson
Settlement Class and Attorneys for Individual and
Representative Plaintiffs Cung Le, Nathan Quarry,
Jon Fitch, Brandon Vera, Luis Javier Vazquez, Kyle
Kingsbury, Kajan Johnson, Clarence Dollaway,
and Tristan Connelly*

Robert C. Maysey (pro hac vice)
Jerome K. Elwell (pro hac vice)
WARNER ANGLE HALLAM JACKSON
& FORMANEK PLC
2555 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Telephone: +1 (602) 264-7101
Facsimile: +1 (602) 234-0419
Email: rmaysey@warnerangle.com
Email: jelwell@warnerangle.com

Crane M. Pomerantz
CLARK HILL PLC
1700 Pavilion Center Dr.
Suite 500
Las Vegas, NV 89135
Telephone: +1 (702) 697-7545
Email: cpomerantz@clarkhill.com

*Settlement Class Counsel for the Le Class and the
Johnson Settlement Class and Attorneys for
Individual and Representative Plaintiffs Cung Le,
Nathan Quarry, Jon Fitch, Brandon Vera, Luis
Javier Vazquez, Kyle Kingsbury, Kajan Johnson,
Clarence Dollaway, and Tristan Connelly*

**SETTLEMENT AGREEMENT**

# Exhibit A

# CUSTODIAN/ESCROW AGREEMENT

This Custodian/Escrow Agreement dated April 23, 2024, is made among Berger Montague PC, Cohen Milstein Sellers & Toll PLLC, and Joseph Saveri Law Firm, LLP ("Co-Lead Class Counsel"), and **THE HUNTINGTON NATIONAL BANK**, as Custodian/Escrow agent ("Custodian/Escrow Agent").

<u>Recitals</u>

A.     This Custodian/Escrow Agreement governs the deposit, investment and disbursement of the settlement funds that, pursuant to the Settlement (the "Settlement Agreement"), dated April 23, 2024, attached hereto as Exhibit A, entered into by, among others, Co-Lead Class Counsel, on behalf of the Plaintiffs, the *Le* Class, and the *Johnson* Settlement Class, will be paid to settle the class action captioned *Le, et al. v. Zuffa, LLC*, No. 2:15-cv-1045 (D. Nev.) and *Johnson, et al. v. Zuffa, LLC, et al.*, No. 2:21-cv-1189 (D. Nev.) (together, the "Actions"), pending in the United States District Court for the District of Nevada (the "Court").

B.     Pursuant to the terms of the Settlement Agreement, the Defendants have agreed to pay or cause to be paid the total amount of $335 million in cash ("Defendants' Payment") in settlement of the claims Plaintiffs brought against the Defendants in the Actions.

C.     Defendants' Payment and any interest accrued thereon (the "UFC Settlement Fund"), is to be deposited into the "Custodian/Escrow Account" and used to satisfy payments to authorized claimants to the UFC Settlement Fund, payments for any Fee and Expense Award, payments for tax liabilities, and other costs pursuant to the terms of the Settlement Agreement or as ordered by the Court.

D.     Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Settlement Agreement.

## **Agreement**

1.     <u>Appointment of Custodian/Escrow Agent</u>. The Custodian/Escrow Agent is hereby appointed to receive and deposit the Defendants' Payment and disburse the UFC Settlement Fund upon the terms and conditions provided in this Custodian/Escrow Agreement, the Settlement Agreement and any other exhibits or schedules later annexed hereto and made a part hereof.

2.     <u>The Custodian/Escrow Account</u>. The Custodian/Escrow Agent shall establish and maintain one or more Custodian/Escrow accounts titled as UFC Antitrust Settlement Fund (the "Custodian/Escrow Account"). Pursuant to the Settlement Agreement, the Defendants shall cause the Defendants' Payment to be deposited into the Custodian/Escrow Account pursuant to the following payment schedule:

    i.   $100 million will be paid into an interest-bearing escrow account for the benefit of the Settlement Classes three (3) business days after entry of the Court's Order Preliminarily approving the Settlement;

    ii.   $100 million will be paid into an interest-bearing escrow account for the benefit of the Settlement Classes three (3) first business days after the Court's Order finally approving the Settlement, or November 1, 2024, whichever comes later;

    iii.   $135 million will be paid into an interest-bearing escrow account for the benefit of the Settlement Classes no later than April 1, 2025.

Custodian/Escrow Agent shall receive Defendants' Payment into the Custodian/Escrow Account; the Defendants' Payment and all interest accrued thereon shall be referred to herein as the "UFC Settlement Fund." The UFC Settlement Fund shall be held and invested on the terms and subject to the limitations set forth herein and shall be released by Custodian/Escrow Agent in accordance with the terms and conditions hereinafter set forth and set forth in the Settlement Agreement and in orders of the Court approving the disbursement of the UFC Settlement Fund.

3.    <u>Investment of Settlement Fund</u>. At the written direction of Co-Lead Class Counsel, Custodian/Escrow Agent shall invest the Settlement Fund exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC") or (b) secured by instruments backed by the full faith and credit of the United States Government. Defendants shall not bear any responsibility for or liability related to the investment of the Settlement Fund by the Custodian/Escrow Agent.

4.    <u>Custodian/Escrow Funds Subject to Jurisdiction of the Court</u>. The UFC Settlement Fund shall remain subject to the jurisdiction of the Court until such time as the UFC Settlement Fund shall be distributed, pursuant to the Settlement Agreement and on further order(s) of the Court.

5.    <u>Tax Treatment & Report</u>. The UFC Settlement Fund shall be treated at all times as a "Qualified Settlement Fund" within the meaning of Treasury Regulation §1.468B-1. Co-Lead Class Counsel and, as required by law, the Defendants, shall jointly and timely make such elections as necessary or advisable to fulfill the requirements of such Treasury Regulation, including the "relation-back election" under Treas. Reg. § 1.468B-1(j)(2) if necessary to the earliest permitted date. For purposes of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" of the UFC Settlement Fund shall be Co-Lead Class Counsel. Co-Lead Class Counsel shall timely and properly prepare, deliver to all necessary parties for signature, and file all necessary documentation for any elections required under Treas. Reg. §1.468B-1. Co-Lead Class Counsel shall timely and properly prepare and file any informational and other tax returns necessary or advisable with respect to the UFC Settlement Fund and the distributions and payments therefrom

2

including without limitation the returns described in Treas. Reg. §1.468B-2(k), and to the extent applicable Treas. Reg. §1.468B-2(1).

6.   <u>Tax Payments of UFC Settlement Fund</u>. All Taxes with respect to the UFC Settlement Fund, as more fully described in the Settlement Agreement, shall be treated as and considered to be a cost of administration of the UFC Settlement Fund and the Custodian/Escrow Agent shall timely pay such Taxes out of the UFC Settlement Fund without prior order of the Court, as directed by Co-Lead Class Counsel. Co-Lead Class Counsel shall be responsible for the timely and proper preparation and delivery of any necessary documentation for signature by all necessary parties, and the timely filing of all tax returns and other tax reports required by law. Co-Lead Class Counsel may engage an accounting firm or tax preparer to assist in the preparation of any tax reports or the calculation of any tax payments due as set forth in Sections 5 and 6, and the expense of such assistance shall be paid from the UFC Settlement Fund by the Custodian/Escrow Agent at Co-Lead Class Counsel's direction. The UFC Settlement Fund shall indemnify and hold the Defendants harmless for any taxes that may be deemed to be payable by the Defendants by reason of the income earned on the UFC Settlement Fund, and Custodian/Escrow Agent, as directed by Co-Lead Class Counsel, shall establish such reserves as are necessary to cover the tax liabilities of the UFC Settlement Fund and the indemnification obligations imposed by this paragraph. If the UFC Settlement Fund is returned to the Defendants pursuant to the terms of the Settlement Agreement, the Defendants shall provide Custodian/Escrow Agent with a properly completed Form W-9.

7.   <u>Disbursement Instructions</u>

(a)   Co-Lead Class Counsel may, without further order of the Court or authorization by the Defendants' Counsel, instruct Custodian/Escrow Agent to disburse the funds necessary to pay Notice Expenses.

(b)   Disbursements other than those described in paragraph 7(a), including disbursements for distribution of UFC Settlement Fund, must be authorized by either (i) an order of the Court, or (ii) the written direction of Co-Lead Class Counsel Eric L. Cramer or Michael Dell'Angelo of Berger Montague PC, Benjamin Brown of Cohen Milstein Sellers & Toll PLLC, or Joseph Saveri of Joseph Saveri Law Firm, LLP.

(c)   In the event funds transfer instructions are given (other than in writing at the time of execution of this Agreement), whether in writing, by facsimile, e-mail, telecopier or otherwise, Custodian/Escrow Agent will seek confirmation of such instructions by telephone call back when new wire instructions are established to the person or persons designated in subparagraphs (a) and (b) above only if it is reasonably necessary, and Custodian/Escrow Agent may rely upon the confirmations of anyone purporting to be the person or persons so designated. It will not be reasonably necessary to seek confirmation if Custodian/Escrow Agent receives written letters authorizing a disbursement from each of the law firms required in subparagraphs (a) and (b), as applicable, on their letterhead and signed by one of the persons designated in subparagraphs (a) and (b). To assure accuracy of the instructions it receives, Custodian/Escrow Agent may record such call backs. If Custodian/Escrow Agent is unable to verify the instructions, or is not satisfied with the verification it receives, it shall not execute the

3

instruction until all issues have been resolved. The persons and telephone numbers for call backs may be validly changed only in a writing that (i) is signed by the party changing its notice designations, and (ii) is received and acknowledged by Custodian/Escrow Agent. Co-Lead Class Counsel will notify Custodian/Escrow Agent of any errors, delays, or other problems within 30 days after receiving notification that a transaction has been executed. If it is determined that the transaction was delayed or erroneously executed as a result of Custodian/Escrow Agent's error, Custodian/Escrow Agent's sole obligation is to pay or refund the amount of such error and any amounts as may be required by applicable law. Any claim for interest payable will be at the then-published rate for United States Treasury Bills having a maturity of 91 days.

(d)     The Custodian/Escrow Agent shall not be liable for any losses, costs or expenses arising directly or indirectly from the Custodian/Escrow Agent's reliance upon and compliance with such instructions notwithstanding such instructions conflict or are inconsistent with a subsequent written instruction. The party providing electronic instructions agrees; (i) to assume all risks arising out of the use of such electronic methods to submit instructions and directions to the Custodian/Escrow Agent, including, without limitation, the risk of the Custodian/Escrow Agent acting on unauthorized instructions, and the risk or interception and misuse by third parties; (ii) that it is fully informed of the protections and risks associated with the various methods of transmitting instructions to the Custodian/Escrow Agent and that there may be more secure methods of transmitting instructions than the method(s) selected by the Custodian/Escrow Agent; and (iii) that the security procedures (if any) to be followed in connection with its transmission of instructions provide to it a commercially reasonable degree of protection in light of its particular needs and circumstances.

8.     <u>Termination of Settlement</u>. If the Settlement Agreement terminates in accordance with its terms, Co-Lead Class Counsel shall notify Custodian/Escrow Agent of the termination of the Settlement Agreement. Upon such notification, the balance of the UFC Settlement Fund, together with any interest earned thereon, less any Notice Expenses paid and actually incurred in accordance with the terms of the Settlement Agreement but not yet paid, and any unpaid Taxes due, as determined by Co-Lead Class Counsel and the Defendants, shall be returned to the Defendants in accordance with instruction from the Co-Lead Class Counsel.

9.     <u>Fees</u>. The Custodian/Escrow Agent shall be entitled to compensation for its services as stated in the fee schedule attached as Exhibit B. All fees and expenses of Custodian/Escrow Agent shall be paid solely from the Settlement Fund. The Custodian/Escrow Agent may pay itself such fees from the Settlement Fund only after such fees have been approved for payment by Co-Lead Class Counsel. If Custodian/Escrow Agent is asked to provide additional services, such as the preparation and administration of payments to claimants authorized by the Court approved Allocation Plan, a separate agreement and fee schedule will be entered into.

10.     <u>Duties, Liabilities and Rights of Custodian/Escrow Agent</u>. This Custodian/Escrow Agreement sets forth all of the obligations of Custodian/Escrow Agent, and no additional obligations shall be implied from the terms of this Custodian/Escrow Agreement or any other agreement, instrument or document.

4

(a)     Custodian/Escrow Agent may act in reliance upon any instructions, notice, certification, demand, consent, authorization, receipt, power of attorney or other writing delivered to it by Co-Lead Class Counsel, as provided herein, without being required to determine the authenticity or validity thereof or the correctness of any fact stated therein, the propriety or validity of the service thereof, or the jurisdiction of the court issuing any judgment or order. Custodian/Escrow Agent may act in reliance upon any signature which is reasonably believed by it to be genuine and may assume that such person has been properly authorized to do so.

(b)     Custodian/Escrow Agent may consult with legal counsel of its selection in the event of any dispute or question as to the meaning or construction of any of the provisions hereof or its duties hereunder, and it shall incur no liability and shall be fully protected to the extent Custodian/Escrow Agent acts in accordance with the reasonable opinion and instructions of counsel. Custodian/Escrow Agent shall have the right to reimburse itself for reasonable legal fees and reasonable and necessary disbursements and expenses actually incurred from the Custodian/Escrow Account only (i) upon approval by Co-Lead Class Counsel or (ii) pursuant to an order of the Court.

(c)     The Custodian/Escrow Agent, or any of its affiliates, is authorized to manage, advise, or service any money market mutual funds in which any portion of the UFC Settlement Fund may be invested.

(d)     Custodian/Escrow Agent is authorized to hold any treasuries held hereunder in its federal reserve account.

(e)     Custodian/Escrow Agent shall not bear any risks related to the investment of the Settlement Fund in accordance with the provisions of paragraph 3 of this Custodian/Escrow Agreement. The Custodian/Escrow Agent will be indemnified by the UFC Settlement Fund, and held harmless against, any an all claims, suits, actions, proceedings, investigations, judgments, deficiencies, damages, settlements, liabilities and expenses (including reasonable legal fees and expenses of attorneys chosen by the Custodian/Escrow Agent) as and when incurred, arising out of or based upon any act, omission, alleged act or alleged omission by the Custodian/Escrow Agent or any other cause, in any case in connection with the acceptance of, or performance or non-performance by the Custodian/Escrow Agent of, any of the Custodian/Escrow Agent's duties under this Custodian/Escrow Agreement, except as a result of the Custodian/Escrow Agent's bad faith, willful misconduct or gross negligence.

(f)     Upon distribution of all of the funds in the Custodian/Escrow Account pursuant to the terms of this Custodian/Escrow Agreement and any orders of the Court, Custodian/Escrow Agent shall be relieved of any and all further obligations and released from any and all liability under this Custodian/Escrow Agreement, except as otherwise specifically set forth herein.

(g)     In the event any dispute shall arise between the parties with respect to the disposition or disbursement of any of the assets held hereunder, the Custodian/Escrow Agent shall be permitted to interplead all of the assets held hereunder into a court of competent jurisdiction, and thereafter be fully relieved from any and all liability or obligation with respect

to such interpleaded assets. The parties further agree to pursue any redress or recourse in connection with such a dispute, without making the Custodian/Escrow Agent a party to same.

11.      Non-Assignability by Custodian/Escrow Agent. Custodian/Escrow Agent's rights, duties and obligations hereunder may not be assigned or assumed without the written consent of Co-Lead Class Counsel.

12.      Resignation of Custodian/Escrow Agent. Custodian/Escrow Agent may, in its sole discretion, resign and terminate its position hereunder at any time following 120 days prior written notice to the parties to the Custodian/Escrow Agreement herein. On the effective date of such resignation, Custodian/Escrow Agent shall deliver this Custodian/Escrow Agreement together with any and all related instruments or documents and all funds in the Custodian/Escrow Account to the successor Custodian/Escrow Agent, subject to this Custodian/Escrow Agreement. If a successor Custodian/Escrow Agent has not been appointed prior to the expiration of 120 days following the date of the notice of such resignation, then Custodian/Escrow Agent may petition the Court for the appointment of a successor Custodian/Escrow Agent, or other appropriate relief. Any such resulting appointment shall be binding upon all of the parties to this Custodian/Escrow Agreement.

13.      Notices. Notice to the parties hereto shall be in writing and delivered by hand-delivery, facsimile, electronic mail or overnight courier service, addressed as follows:

If to Co-Lead Class
Counsel:                    Eric L. Cramer
                            BERGER MONTAGUE PC
                            1818 Market St., Suite 3600
                            Philadelphia, PA 19103
                            Telephone: (215) 875-3009
                            ecramer@bm.net

                            Benjamin Brown
                            COHEN MILSTEIN SELLERS & TOLL PLLC
                            1100 New York Ave., N.W., Suite 500 East, Tower
                            Washington, DC 20005
                            Telephone: (202) 408-4600
                            bbrown@cohenmilstein.com

                            Joseph R. Saveri
                            JOSEPH SAVERI LAW FIRM, LLP
                            601 California St., Suite 1000
                            San Francisco, CA 94108
                            Telephone: (415) 500-6800
                            jsaveri@saverilawfirm.com

| If to Custodian/Escrow Agent: | THE HUNTINGTON NATIONAL BANK<br>Liz Lambert, Senior Managing Director<br>2 Great Valley Parkway, Suite 300<br>Malvern, PA 19355<br>Telephone: (215) 756-1962<br>E-mail: liz.lambert@huntington.com |
| --- | --- |
| | Susan Brizendine, Trust Officer<br>Huntington National Bank<br>7 Easton Oval – EA5W63<br>Columbus, Ohio 43219<br>Telephone: (614) 331-9804<br>E-mail: susan.brizendine@huntington.com |

14. <u>Patriot Act Warranties</u>. Section 326 of the USA Patriot Act (Title III of Pub. L. 107-56), as amended, modified or supplemented from time to time (the "Patriot Act"), requires financial institutions to obtain, verify and record information that identifies each person or legal entity that opens an account (the "Identification Information"). The parties to this Custodian/Escrow Agreement agree that they will provide the Custodian/Escrow Agent with such Identification Information as the Custodian/Escrow Agent may request in order for the Custodian/Escrow Agent to satisfy the requirements of the Patriot Act.

15. <u>Entire Agreement</u>. This Custodian/Escrow Agreement, including all Schedules and Exhibits hereto, constitutes the entire agreement and understanding of the parties hereto. Any modification of this Custodian/Escrow Agreement or any additional obligations assumed by any party hereto shall be binding only if evidenced by a writing signed by each of the parties hereto. To the extent this Custodian/Escrow Agreement conflicts in any way with the Settlement Agreement, the provisions of the Settlement Agreement shall govern.

16. <u>Governing Law</u>. This Custodian/Escrow Agreement shall be governed by the law of the State of Ohio in all respects. The parties hereto submit to the jurisdiction of the Court, in connection with any proceedings commenced regarding this Custodian/Escrow Agreement, including, but not limited to, any interpleader proceeding or proceeding Custodian/Escrow Agent may commence pursuant to this Custodian/Escrow Agreement for the appointment of a successor Custodian/Escrow agent, and all parties hereto submit to the jurisdiction of such Court for the determination of all issues in such proceedings, without regard to any principles of conflicts of laws, and irrevocably waive any objection to venue or inconvenient forum.

17. <u>Termination of Custodian/Escrow Account</u>. The Custodian/Escrow Account will terminate after all funds deposited in it, together with all interest earned thereon, are disbursed in accordance with the provisions of the Settlement Agreement and this Custodian/Escrow Agreement.

18.   <u>Miscellaneous Provisions</u>.

(a)   <u>Counterparts</u>. This Custodian/Escrow Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Custodian/Escrow Agreement.

(b)   <u>Further Cooperation</u>. The parties hereto agree to do such further acts and things and to execute and deliver such other documents as Custodian/Escrow Agent may request from time to time in connection with the administration, maintenance, enforcement or adjudication of this Custodian/Escrow Agreement in order (a) to give Custodian/Escrow Agent confirmation and assurance of Custodian/Escrow Agent's rights, powers, privileges, remedies and interests under this Agreement and applicable law, (b) to better enable Custodian/Escrow Agent to exercise any such right, power, privilege or remedy, or (c) to otherwise effectuate the purpose and the terms and provisions of this Custodian/Escrow Agreement, each in such form and substance as may be acceptable to Custodian/Escrow Agent.

(c)   <u>Electronic Signatures</u>. The parties agree that the electronic signature (provided by the electronic signing service DocuSign initiated by the Custodian/Escrow Agent) of a party to this Custodian/Escrow Agreement shall be as valid as an original signature of such party and shall be effective to bind such party to this Custodian/Escrow Agreement. The parties agree that any electronically signed document shall be deemed (i) to be "written" or "in writing," (ii) to have been signed, and (iii) to constitute a record established and maintained in the ordinary course of business and an original written record when printed from electronic files.

(d)   <u>Non-Waiver</u>. The failure of any of the parties hereto to enforce any provision hereof on any occasion shall not be deemed to be a waiver of any preceding or succeeding breach of such provision or any other provision.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first above written.

THE HUNTINGTON NATIONAL BANK, as Custodian/Escrow Agent

By: _____
       Liz Lambert, Senior Managing Director

Co-Lead Class Counsel

8

By: _____
      Eric L. Cramer, Chairman
      Berger Montague PC


By: _____
      Benjamin Brown, Managing Partner
      Cohen Milstein Sellers & Toll PLLC

By: _____
      Joseph R. Saveri, Managing Partner
      Joseph Saveri Law Firm, LLP

9

**Exhibit A**

**Settlement Agreement**

**Exhibit B**

**Fees of Custodian/Escrow Agent**

**Acceptance Fee:**                                                              **Waived**

The Acceptance Fee includes the review of the Custodian/Escrow
Agreement, acceptance of the role as Custodian/Escrow Agent,
establishment of Custodian/Escrow Account(s), and receipt of funds.

**Annual Administration Fee:**                                          **Waived**

The Annual Administration Fee includes the performance of
administrative duties associated with the Custodian/Escrow
Account including daily account management, generation of
account statements to appropriate parties, and disbursement of
funds in accordance with the Custodian/Escrow Agreement.
Administration Fees are payable annually in advance without
proration for partial years.

**Out of Pocket Expenses:**                                                **Waived**

Out of pocket expenses include postage, courier, overnight mail,
wire transfer, and travel fees.