# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT NEVADA

| | |
|---|---|
| CUNG LE, NATHAN QUARRY, JON FITCH, BRANDON VERA, LUIS JAVIER VAZQUEZ, and KYLE KINGSBURY, On Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ZUFFA, LLC, D/B/A ULTIMATE FIGHTING CHAMPIONSHIP and UFC,<br><br>Defendant. | Case No. 2:15-cv-01045-RFB-BNW |
| KAJAN JOHNSON and CLARENCE DOLLAWAY, On Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ZUFFA, LLC, TKO OPERATING COMPANY, LLC F/K/A ZUFFA PARENT LLC (D/B/A ULTIMATE FIGHTING CHAMPIONSHIP and UFC), and ENDEAVOR GROUP HOLDINGS, INC.,<br><br>Defendants. | Case No. 2:21-cv-01189-RFB-BNW |

**REVISED PLAN OF ALLOCATION**

# INTRODUCTION

Plaintiffs submit this proposed Revised Plan of Allocation relating to the proceeds of settlements of the following two class action lawsuits: *Le, et al. v. Zuffa, LLC*, No. 2:15-cv-1045 (D. Nev.) (the "*Le* Action"), and *Johnson, et al. v. Zuffa, LLC, et al.*, No. 2:21-cv-1189 (D. Nev.) (the "*Johnson* Action") (collectively, the "Actions"). Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury brought the *Le* Action against one defendant, Zuffa, LLC. On August 9, 2023, the Court certified the "*Le* Class" (*see* definition below) and appointed Plaintiffs Cung Le, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury as the class representatives for the *Le* Class (the "*Le* Class Representatives"). *See* ECF No. 839, at 78-79.[1] The *Johnson* Action was brought by plaintiffs Kajan Johnson, Clarence Dollaway, and Tristan Connelly (the proposed "*Johnson* Settlement Class Representatives"), and named three defendants, Zuffa, LLC, TKO Operating Company, LLC, and Endeavor Group Holdings, Inc. The *Le* Class Representatives and the *Johnson* Settlement Class Representatives are collectively referred to as "Plaintiffs," and the defendants in both Actions are referred to collectively as "Defendants."

Plaintiffs, on behalf of themselves and the proposed Settlement Classes[2] (the *Le* Class and the *Johnson* Settlement Class, as discussed below), have agreed to settle their claims against Defendants for a cash payment of $335,000,000, and other important benefits, including prospective relief (hereinafter, the "Settlement"), as described in more detail in Plaintiffs' motion for preliminary approval of the Settlement. Plaintiffs submit this proposed Revised Plan of Allocation to allocate the $335,000,000 payment (*i.e.*, the "UFC Settlement Fund"), plus any interest earned on the UFC Settlement Fund, and net of Court-awarded attorneys' fees, expenses, service awards to the Class

---

[1] Plaintiff Nathan Quarry was proffered as a class representative for the "Identity Rights Class," which the Court did not certify. *See generally* ECF No. 839 at 75-78.

[2] Capitalized terms have the same meanings set forth in the April 24, 2024 Settlement Agreement, attached as Exhibit 1 to the Joint Declaration of Eric L. Cramer, Richard A. Koffman, and Joseph R. Saveri in Support of Plaintiffs' Motion for Preliminary Approval of the Settlement ("Joint Decl.").

Representatives, Settlement administration and notice costs, and the payment to Nathan Quarry[3] (the "Net UFC Settlement Fund").

The Settlement offers compensation from the Net UFC Settlement Fund to Settlement Class Members. Settlement Class Members may be members of one (or both) of the below defined classes:

- *Le* **Class:** All persons who competed in one or more live professional UFC-promoted MMA bouts taking place or broadcast in the United States from December 16, 2010 through June 30, 2017 (the "*Le* Class Period"). Excluded from the *Le* Class are all persons who are not residents or citizens of the United States unless the UFC paid such persons for competing in a bout fought in the United States.

- *Johnson* **Settlement Class:** All persons who competed in one or more live professional UFC-promoted MMA bouts taking place or broadcast in the United States from July 1, 2017 to the date of preliminary approval of the Settlement (the "*Johnson* Settlement Class Period"). Excluded from the *Johnson* Settlement Class are all persons who are not residents or citizens of the United States unless the UFC paid such persons for competing in a bout fought or broadcast in the United States.

As noted above, the Court certified the *Le* Class on August 9, 2023. ECF No. 839 at 79. Plaintiffs are moving for provisional certification of the *Johnson* Settlement Class concurrently with preliminary approval of the Settlement.

Like the original Plan of Allocation, the Revised Plan of Allocation begins by dividing the Net Settlement Fund into two tranches: one for the *Le* Class (the "*Le* Class Tranche") and one for the *Johnson* Settlement Class (the "*Johnson* Class Tranche"). It proposes to make this allocation based on certain differences between the two classes, which include the time periods covered by each class, the differing degrees of delay experienced by members of the two classes, changes UFC made to its contracts with fighters since the *Le* Action was first filed, and the fact that many of the *Johnson* Settlement Class members are subject to arbitration clauses and class action waivers. These issues are covered in more detail below and in the supporting declaration submitted by Plaintiffs' expert economist, Hal J. Singer, Ph.D. with the Plan of Allocation filed on May 21, 2024. *See* Part II.A *infra*;

---

[3] The Settlement includes a payment to Nathan Quarry to settle his individual "Identity Rights Claim." *See* Settlement Agreement ¶5.d.

Declaration of Hal J. Singer, Ph.D. In Support of Plan of Allocation ("Singer Declaration" or "Singer Decl.") ¶¶11-15, attached as Exhibit 4 to the Joint Decl. filed on May 21, 2024.

However, in response to concerns raised by the Court at the June 14, 2024 status conference, Plaintiffs are revising the Plan of Allocation in three material ways: (1) changing the allocation as between the *Le* Class Tranche and *Johnson* Class Tranche so that the split is more heavily weighted in favor of *Le* (instead of 75%/25% in *Le*/*Johnson*, the split will be 90%/10% *Le*/*Johnson*); (2) within each Tranche alter the allocation so that the number of bouts per claimant is weighted 30% (instead of 20%) and the total compensation per claimant is weighted 70% (instead of 80%); and (3) the minimum recovery for *Le* Claimants (defined below) will now be $10,000 (instead of $8,000),[4] the minimum recovery for *Johnson* Claimants (defined below) without arbitration clauses will be $6,000 (instead of $7,000), and the flat recovery for *Johnson* Claimants with arbitration clauses will be $3,000 (instead of $5,000).

In sum, the Revised Plan of Allocation will split the Net UFC Settlement Fund into two Tranches, as follows: 90 percent to the *Le* Class (the "*Le* Class Tranche") and 10 percent to the *Johnson* Settlement Class (the "*Johnson* Settlement Class Tranche"). In the event the total amount to be distributed to all valid claims submitted against the *Johnson* Settlement Class Tranche (using the method set forth at Part II.C *infra*) falls below 10 percent of the Net UFC Settlement Fund, then the remainder will be reallocated to the *Le* Class Tranche.

Once the funds are divided into the two Tranches, the Plan of Allocation proposes a method to allocate the funds within each Tranche. For the *Le* Class Tranche (*see* Part II.B *infra*), the shares of all *Le* Class members who submit valid claims (the "*Le* Claimants") will be allocated based upon two *pro rata* factors: (i) the total compensation each received from the UFC for participating in UFC bouts (referred to as "Event Compensation") during the *Le* Class Period; and (ii) the total number of bouts each fought during the *Le* Class Period. *Id.* ¶16. Under the Plan of Allocation, *Le* Claimants will have a minimum recovery amount set at $10,000. *Id.*

---

[4] The actual calculated minimum recovery for *Le* Claimants will likely be above $13,000.

For the *Johnson* Settlement Class Tranche (*see* Part II.C *infra*), all *Johnson* Settlement Class members who submit valid claims (the "*Johnson* Claimants") will be sorted into two sub-groups based on whether the Claimant was subject to an arbitration clause or class action waiver during the *Johnson* Settlement Class Period. The two sub-groups will be divided as follows: (a) those *Johnson* Claimants who were ***not*** subject to an arbitration clause or a class action waiver will comprise the "*Johnson* Non-Arbitration Claimants;" and (b) those *Johnson* Claimants who were subject to an arbitration clause or a class action waiver will comprise the "*Johnson* Arbitration Claimants." *See generally* Singer Decl. ¶¶20-21. The *Johnson* Non-Arbitration Claimants will be allocated their shares based upon two *pro rata* factors: (i) Event Compensation paid to *Johnson* Non-Arbitration Claimants during the *Johnson* Settlement Class Period; and (ii) the total number of bouts fought by *Johnson* Non-Arbitration Claimants during the *Johnson* Settlement Class Period. This allocation process mirrors that used for the *Le* Claimants, described above. The Johnson Non-Arbitration Claimants will each receive a minimum recovery of $6,000, and the *Johnson* Arbitration Claimants will each receive a fixed recovery amount of $3,000, which reflects the low value of these claims (relative to the rest).

Finally, to ensure fairness between the *Le* Claimants and the *Johnson* Claimants, the individual distribution amounts provided to *Johnson* Non-Arbitration Claimants from the *Johnson* Settlement Class Tranche will be capped at the larger of (a) 10 percent of each *Johnson* Non-Arbitration Claimant's Event Compensation during the *Johnson* Settlement Class Period, and (b) $6,000. *Id.* ¶22; *see also* Part II.C.

Further, there are approximately 485 fighters who are in both classes. Any Settlement Class Member who is both a *Le* Claimant and a *Johnson* Claimant will receive the sum of the two allocation procedures used for the *Le* Class Tranche and the *Johnson* Settlement Class Tranche. *See* Singer Decl. ¶26; Part II.D. Notably, over 25% of the fighters without arbitration clauses in the two Settlement Classes (combined) will receive dual payments, and thus benefit from both Tranches. This fact is further proof of the alignment of the interests of the members of both Settlement Classes.

Additionally, the proposed Plan of Allocation describes: (i) the timing and manner by which the Claims Administrator[5] will issue Claim Forms to Settlement Class Members and the deadline for timely-filed Claim Forms (*see* Part I); (ii) the method by which the Claims Administrator will process Claim Forms (*see* Parts III & IV); (iii) the timing for the Claims Administrator's report to the Court on the proposed distribution of the Net UFC Settlement Fund (*see* Part V); (iv) the timeframe for the distribution to Claimants upon approval by the Court (*see* Part VI); and (v) the procedure Claimants may use to challenge determinations made by the Claims Administrator (*see* Part VII).

The proposed Revised Plan of Allocation is practical, equitable, and efficient. It relies upon structured compensation and other data and information that Zuffa produced in litigation and as part of the Settlement, along with minimum or fixed recovery amounts that promote efficiency and account fairly for important factors relevant to the value of certain claims. The proposed Revised Plan of Allocation is a reasonable way to allocate the Net UFC Settlement Fund and is fair to all members of the Settlement Classes.

## THE PLAN OF ALLOCATION

The proposed Plan of Allocation works as follows:

**I.    ISSUANCE OF CLAIM FORMS AND TIMELINESS OF COMPLETED CLAIM FORMS**

1. No later than 60 days after the Court issues an order finally approving the Settlement and Plan of Allocation ("Final Approval"), Angeion will mail (via email or mail) a separate, individualized claim form (the "Claim Form") to each Settlement Class Member for which Angeion has a valid and current address or email address. The Claim Form will be pre-populated with each Settlement Class Member's total compensation from the UFC for bouts (for the applicable class and class period), number of bouts fought (for the applicable class and class period), and whether or not the Settlement Class Member had an arbitration clause or class action waiver in their Promotional and Ancillary Rights Agreement with the UFC (for the *Johnson* Settlement Class), along with the full name

---

[5] Plaintiffs' motion for preliminary approval of the Settlement requests that Angeion Group LLC ("Angeion") be appointed the Claims Administrator.

and mailing address for correspondence regarding the distribution of the Net UFC Settlement Fund.[6] If a Settlement Class Member does not receive a Claim Form by mail or email, the Settlement Class Member may request a Claim Form from the Settlement Website (www.UFCFighterClassAction.com) or contact Angeion at 1-866-955-5564. **Each Settlement Class Member will be required to execute the Claim Form to receive any distribution from the Net UFC Settlement Fund**. The Claim Form will indicate that it can be submitted electronically via an online portal available on the Settlement Website or may be emailed or mailed via first class mail to Angeion.

2. Angeion, working with Dr. Singer's firm, Econ One Research, Inc. ("Econ One"), will prepare the pre-populated Claim Forms provided to Settlement Class Members. *See* Singer Decl. ¶¶9, 19, 25. The Claim Forms will ask Settlement Class Members to verify the accuracy of the information contained in the Claim Forms and will provide instructions for challenging the information set forth in the Claim Forms regarding Event Compensation, number of bouts, and whether the Settlement Class Member was subject to an arbitration clause or class action waiver. If a Settlement Class Member agrees that the information in the pre-populated Claim Form is accurate, the Settlement Class Member will be asked to sign and return the Claim Form to Angeion. If a Settlement Class Member believes that the information contained in the pre-populated Claim Form is not accurate, that Settlement Class Member may submit his or her own information (*e.g.*, demonstrating a different figure for Event Compensation and/or participation in a different number of bouts during the relevant class period, and/or information showing the *Johnson* Settlement Class Member was not subject to an arbitration clause or a class action waiver) pursuant to the procedures described below.

3. The submission of the Claim Forms to Angeion (with any necessary supporting documentation if the Settlement Class Member disagrees with any information contained in their Claim Form) will be deemed timely if they are received within 105 days of Final Approval.

---

[6] For those 485 Settlement Class Members who are members of the *Le* Class *and* the *Johnson* Settlement Class, the Claim Forms will include Claimant information necessary for computing the appropriate allocation from both the *Le* Class Tranche and the *Johnson* Settlement Class Tranche.

II. **ALLOCATION OF THE NET UFC SETTLEMENT FUND BETWEEN THE *LE* CLASS AND THE *JOHNSON* SETTLEMENT CLASS AND ALLOCATION AMONG MEMBERS OF EACH SETTLEMENT CLASS**

A. **Net UFC Settlement Fund Allocation Between the *Le* Class and the *Johnson* Settlement Class**

4. The Net Settlement Fund will be divided into two Tranches as follows: 90 percent to the *Le* Class (the "*Le* Class Tranche") and 10 percent to the *Johnson* Settlement Class (the "*Johnson* Settlement Class Tranche"). The proposed allocation between the *Le* Class and the *Johnson* Settlement Class is justified on, at least, four grounds. First, the *Le* Action is much older and covers an earlier class period. Accordingly, on a "time value of money basis," the *Le* Class members who have been subject to more delay in compensation for the alleged misconduct are entitled to a higher recovery, all things equal, relative to members of the *Johnson* Settlement Class. Second, the *Le* Action was certified pursuant to Fed. R. Civ. P. 23 and was fully litigated up to the eve of trial, while the *Johnson* Action was in the early stage of discovery (a motion to dismiss the operative Amended Complaint had not yet been filed) at the time of Settlement. Thus, plaintiffs and the certified Class in the *Le* Action had more leverage in settlement negotiations than the plaintiffs in the *Johnson* Action, and indeed, the *Johnson* Settlement Class members benefitted from the leverage afforded by their case being litigated alongside the *Le* Action. Third, the UFC appears to have made certain potentially helpful changes to its fighter contracts after the *Le* Action, which benefitted the *Johnson* Settlement Class members. Fourth, more than half of the *Johnson* Settlement Class members are subject to arbitration clauses and provisions waiving participation in class actions, which (if upheld) would impact the overall value of the claims brought by the *Johnson* Settlement Class.

5. Dr. Singer also analyzed the available data and information produced by Zuffa, which includes the total amount of the Event Compensation paid to, and bouts fought by, Settlement Class Members during the class periods and information on the number of *Johnson* Settlement Class members subject to arbitration clauses or class action waivers. *See* Singer Decl. ¶12 & nn.10-11; *id.* ¶10. In the event the calculated total amount allocated for all valid claims submitted against the *Johnson* Settlement Class Tranche (using the method set forth in Part II.C below) falls below 10

7

percent of the Net UFC Settlement Fund, then the remainder will be reallocated to the *Le* Class Tranche. *Id.* ¶¶10, 24.

### B.   Allocation of the *Le* Class Tranche Amongst *Le* Claimants

6.   The 90 percent of the Net UFC Settlement Fund allocated to the *Le* Class Tranche will be allocated to *Le* Class members who submit valid claims (the "*Le* Claimants") on a *pro rata* basis.[7] *Id.* ¶16. Each *Le* Claimant will be allocated his or her share based upon two *pro rata* factors: (i) the total compensation each received from the UFC for participating in UFC bouts (*i.e.*, the fighter's Event Compensation) during the *Le* Class Period; and (ii) the total number of bouts each fought during the *Le* Class Period. *Id.* The *Le* Class Tranche allocation will be divided into two sub-tranches, reflecting the above two factors, with 70 percent of the *Le* Class Tranche allocation to comprise the "*Le* Event Compensation sub-tranche," and 30 percent of the *Le* Class Tranche allocation to comprise the "*Le* Number of Bouts sub-tranche." *Id. Le* Claimants will receive a minimum recovery amount of $10,000. *Id.*

7.   The 70/30 split between Event Compensation and number of bouts fought is justified because in a more competitive but-for world, Zuffa may have increased its payments to lower-paid fighters proportionally more than it would have increased its payments to top fighters, because all else equal, even if top fighters could not leave Zuffa, they may have agitated for themselves more aggressively, and with more leverage, given their popularity. As a result, allocating 30 percent of the compensation based on number of bouts fought (as opposed to basing allocation simply on total compensation earned) recognizes that certain journeymen fighters with less name recognition may have been harmed more than the more popular fighters.

---

[7] As noted *supra*, the allocation of the Net UFC Settlement Fund to the *Le* Class Tranche may exceed 90 percent depending upon whether the total amount allocated for all valid claims submitted by *Johnson* Settlement Class members is less than 10 percent of the Net UFC Settlement Fund.

C. **Allocation of the *Johnson* Settlement Class Tranche Amongst *Johnson* Claimants**

8. The total funds in the *Johnson* Settlement Class Tranche will be allocated to each *Johnson* Settlement Class member who submits a valid claim (the "*Johnson* Claimants") based on whether the Claimant was subject to an arbitration clause or a class action waiver during the *Johnson* Settlement Class Period. *See* Singer Decl. ¶¶20-21. Accordingly, the *Johnson* Settlement Class Tranche will be divided into two groups of Claimants: (a) those *Johnson* Claimants who were ***not*** subject to an arbitration clause or a class action waiver during the *Johnson* Settlement Class Period; and (b) those *Johnson* Claimants who were subject to an arbitration clause or a class action waiver during the *Johnson* Settlement Class Period.

9. The portion of the *Johnson* Settlement Class Tranche allocated to the *Johnson* Non-Arbitration Claimants shall be allocated based upon two *pro rata* factors: (i) the total compensation each received from the UFC for participating in UFC bouts (*i.e.*, the fighter's Event Compensation) during the *Johnson* Settlement Class Period; and (ii) the total number of bouts each fought during the *Johnson* Settlement Class Period. *Id.* ¶21. These two *pro rata* factors will be weighted with 70 percent of the distribution amount based on the Event Compensation factor and 30 percent of the distribution amount based on the number of bouts factor. This allocation process mirrors that used for the *Le* Claimants, described above.

10. The *Johnson* Arbitration Claimants will receive a fixed recovery amount of $3,000 each. Should a court enforce the arbitration clauses and/or class action waivers in the Johnson Arbitration Claimants' contracts with the UFC, these claims would have little practical value.

11. To ensure fairness between the *Le* Claimants and the *Johnson* Claimants, individual distribution amounts provided to the *Johnson* Non-Arbitration Claimants will be capped at the larger of (a) 10 percent of each *Johnson* Non-Arbitration Claimant's total compensation for bouts during the *Johnson* Settlement Class Period, and (b) $6,000. *Id.* ¶22. As noted above, should any funds remain in the *Johnson* Settlement Class Tranche after these calculations, then the remainder will be reallocated to the *Le* Class Tranche. *Id.* ¶ 24.

        **D.**       **Allocation of the Net UFC Settlement Fund to Settlement Class Members who are both *Le* Claimants and *Johnson* Claimants**

12. Any Settlement Class Member who is both a *Le* Claimant and a *Johnson* Claimant will receive a distribution amount that is the sum of the two allocation procedures used for the *Le* Class Tranche and the *Johnson* Settlement Class Tranche for that individual. *Id.* ¶26.

**III.**    **PROCESSING CLAIMS**

13. All Claim Forms submitted by Settlement Classes Members will be reviewed and processed by Angeion, with assistance from Dr. Singer and his staff at Econ One and Co-Lead Class Counsel,[8] as required and appropriate.

        **A.**       **Acceptance and Rejection of Claim Forms**

14. Angeion shall first determine whether a submitted Claim Form is timely, properly completed, and signed. If a Claim Form is incomplete, Angeion shall communicate with the Claimant via mail, email, or telephone regarding the deficiency. Angeion may also contact Claimants requesting additional documentation or other materials. Claimants will have 28 days from the date they are contacted by Angeion to cure any identified deficiency. If a Claimant fails to respond adequately and/or correct any deficiency within 28 days, his or her claim may be rejected, and the Claimant shall be notified in writing the reason for rejection. Angeion will then review all completed, non-deficient Claim Forms to determine whether each will be accepted or rejected. Upon completing that process, if a claim is rejected, Angeion shall notify any such Claimants in writing the reason for rejection. Any Claimant whose Claim Form is rejected may seek review by the Court via the appeals process described in Part VII below.

15. All correctly completed late Claims Forms will be processed by Angeion but marked as "Late Approved Claims." If Co-Lead Class Counsel conclude that, in their judgment, any such Late Approved Claims should ultimately not be accepted, the Claimant will be so notified, and then may seek review by the Court via the appeals process described in Part VII below.

---

[8] "Co-Lead Class Counsel" means Berger Montague PC, Cohen Milstein Sellers & Toll PLLC, and Joseph Saveri Law Firm, LLP, as appointed in the *Le* Action. *See* ECF Nos. 139 & 839.

### B. The *Pro Rata* Distribution Calculation for *Le* Claimants

16. Econ One, in consultation with Angeion and Co-Lead Class Counsel, will determine, pursuant to the methodology described in Parts II.A & B above, each *Le* Claimant's proportionate share of the *Le* Class Tranche using the Event Compensation and bout data produced by Zuffa. *Le* Claimants will have the option of accepting the amounts on a pre-populated Claim Form sent to each member of the *Le* Class by Angeion or submitting their own data and information to Angeion. Econ One will review any such submissions and confer with Angeion and Co-Lead Class Counsel regarding the final calculations, which may include making any necessary and appropriate adjustments to ensure accuracy and fairness across *Le* Claimants.

### C. The *Pro Rata* Distribution Calculation for *Johnson* Claimants

17. Econ One, in consultation with Angeion and Co-Lead Class Counsel, will determine, pursuant to the methodology described in Part II.A & C above, each *Johnson* Claimant's proportionate share of the *Johnson* Settlement Class Tranche using the following information produced by Zuffa: (i) Event Compensation data for *Johnson* Claimants; (ii) number of bouts fought by *Johnson* Claimants; and (iii) contract information identifying *Johnson* Claimants subject to arbitration clauses or class action waivers. *Johnson* Claimants will have the option of accepting the amounts on a pre-populated claim form sent to each member of the *Johnson* Settlement Class by Angeion or submitting their own data and information to Angeion. Econ One will review any such submissions and confer with Angeion and Co-Lead Class Counsel regarding the final calculations, which may include making any necessary and appropriate adjustments to ensure accuracy and fairness across *Johnsons* Claimants.

### IV. PROCESSING CHALLENGED CLAIMS

18. Angeion, in consultation with Econ One and Co-Lead Class Counsel, shall review all written challenges by Claimants to Angeion's determinations. If upon review of a challenge and any supporting documentation submitted by the Claimant, Angeion and Econ One, or Co-Lead Class Counsel, decide to amend or modify their determination, Angeion shall advise the Claimant who made the challenge. Any such determinations shall be final, subject to the appeals process described in Part VII below.

19. Where Angeion, in consultation with Econ One or Co-Lead Class Counsel, determines that a challenge requires additional information or documentation, Angeion shall so advise the Claimant and provide that Claimant an opportunity to cure the deficiency within 28 days, as set forth in Part III.A above. If that Claimant fails to cure the deficiency within that time, the challenge will be rejected and the Claimant will be notified of the rejection of their challenge in writing, which notification shall be deemed final subject to the appeals process described below in Part VII below.

20. If Angeion, in consultation with Econ One or Co-Lead Class Counsel, concludes that it has enough information to properly evaluate a challenge and maintains that its initial determinations were correct, it will so inform the Claimant in writing. Such notification shall be deemed final subject to any appeal and decision by the Court.

## V.  REPORT TO THE COURT REGARDING DISTRIBUTION OF THE NET UFC SETTLEMENT FUND

21. Angeion will work with Econ One to determine the amount that: (a) each *Le* Claimant is entitled to receive from the *Le* Class Tranche; and (b) the amount each *Johnson* Claimant is entitled to receive from the *Johnson* Settlement Class Tranche. After this process is completed, Angeion will prepare a final report for the Court's review and approval ("Final Report"). The Final Report will explain the tasks and methodologies employed by Angeion in processing the claims and administering the Plan of Allocation. It will also contain (i) a list of purported Settlement Class Members who filed Claim Forms that were rejected and the reasons for the rejections, (ii) a list of challenges (if any) to the estimated distribution amounts that were rejected and the reasons for rejecting the challenges, and (iii) the date any such Claimant whose challenge was rejected was informed by Angeion of that rejection for purposes of calculating the timeliness of any appeal using the procedures set forth below. Finally, the Final Report shall contain an accounting of the expenses associated with the Plan of Allocation, including bills from Econ One and Angeion, any taxes that are due and owing, and any other fees or expenses associated with the settlement administration and allocation process. Those costs are to be paid by out of the UFC Settlement Fund upon Court approval.

## VI.     PAYMENT TO *LE* AND *JOHNSON* CLAIMANTS

22.     Upon Court approval of the Final Report, Angeion shall issue, with Court approval, a check or wire payable to each *Le* Claimant and *Johnson* Claimant who has submitted a complete, timely, and valid Claim Form and who is entitled to a recovery under this Plan of Allocation, including to each *Le* Claimant and *Johnson* Claimant that filed a Late Approved Claim (as approved by the Court).

23.     Subject to further Order of the Court, any monies from the Net UFC Settlement Fund that remain unclaimed after any initial distribution shall, if economically feasible, be distributed to Claimants in an additional *pro rata* distribution or distributions as proposed by Co-Lead Class Counsel and approved by the Court.

24.     Insofar as the Net UFC Settlement Fund includes residual funds after distribution or distributions as set forth in the preceding sections that cannot be economically or efficiently distributed to the Claimants (because of the costs of distribution as compared to the amount remaining), Co-Lead Class Counsel shall make an application to the Court for such sums to be used to make *cy pres* payments to an appropriate charitable organization.

## VII.     RESOLUTION OF DISPUTES

25.     In the event of any disputes between Claimants and Angeion on any subject (*e.g.*, timeliness, required completeness or documentation of a claim, the calculation of a Claimant's *pro rata* share of either the *Le* Class Tranche and/or the *Johnson* Settlement Class Tranche), the decision of Angeion shall be final, subject to the Claimant's right to seek review by the Court. In notifying a Claimant of the final rejection of a Claim or a challenge thereto, Angeion shall notify the Claimant of his or her right to seek such review.

26.     Any such appeal by a Claimant must be submitted in writing to the Court, with copies to Angeion and Co-Lead Class Counsel, within 21 days of Angeion's sending a final rejection notification to the Claimant.

Dated: June 24, 2024

Respectfully submitted,

/s/ *Eric L. Cramer*
Eric L. Cramer (pro hac vice)
Michael Dell'Angelo (pro hac vice)
Ellen T. Noteware (pro hac vice)
Patrick F. Madden (pro hac vice)
Najah Jacobs (pro hac vice)
BERGER MONTAGUE PC
1818 Market St., Suite 3600
Philadelphia, PA 19103
Telephone: +1 (215) 875-3000
Email: ecramer@bm.net
Email: mdellangelo@bm.net
Email: enoteware@bm.net
Email: pmadden@bm.net
Email: njacobs@bm.net

Joshua P. Davis (pro hac vice)
BERGER MONTAGUE PC
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Telephone: +1 (415) 906-0684
Email: jdavis@bm.net

Richard A. Koffman (pro hac vice)
Benjamin Brown (pro hac vice)
Daniel Silverman (pro hac vice)
Daniel L. Gifford (pro hac vice)
COHEN MILSTEIN SELLERS & TOLL
 PLLC
1100 New York Ave., N.W.
Suite 500 East, Tower
Washington, DC 20005
Telephone: +1 (202) 408-4600
Facsimile: +1 (202) 408-4699
Email: rkoffman@cohenmilstein.com
Email: bbrown@cohenmilstein.com
Email: dsilverman@cohenmilstein.com
Email: dgifford@cohenmilstein.com

Joseph R. Saveri (pro hac vice)
Kevin E. Rayhill (pro hac vice)
Christopher Young (pro hac vice)
Itak Moradi (pro hac vice)
JOSEPH SAVERI LAW FIRM, LLP
601 California St., Suite 1505
San Francisco, CA 94108
Telephone: +1 (415) 500-6800
Facsimile: +1 (415) 395-9940
Email: jsaveri@saverilawfirm.com
Email: krayhill@saverilawfirm.com
Email: cyoung@saverilawfirm.com
Email: imoradi@saverilawfirm.com

*Co-Lead Counsel for the Le Class, Settlement Class Counsel for the Le Settlement Class and the Johnson Settlement Class and Attorneys for Individual and Representative Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, Kyle Kingsbury, Kajan Johnson, Clarence Dollaway, and Tristan Connelly*

Don Springmeyer (Bar No. 1021)
KEMP JONES, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
Telephone: + 1 (702) 385-6000
Facsimile: + 1 (702) 385-6001
Email: dspringmeyer@kempjones.com

*Liaison Counsel for the Le Class, Settlement Class Counsel for the Le Settlement Class and the Johnson Settlement Class and Attorneys for Individual and Representative Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, Kyle Kingsbury, Kajan Johnson, Clarence Dollaway, and Tristan Connelly*

Robert C. Maysey (pro hac vice)
Jerome K. Elwell (pro hac vice)
WARNER ANGLE HALLAM JACKSON
  & FORMANEK PLC
2555 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Telephone: +1 (602) 264-7101
Facsimile: +1 (602) 234-0419
Email: rmaysey@warnerangle.com
Email: jelwell@warnerangle.com

Crane M. Pomerantz
CLARK HILL PLC
1700 Pavilion Center Dr., Suite 500
Las Vegas, NV 89135
Telephone: +1 (702) 697-7545
Email: cpomerantz@clarkhill.com

*Additional Counsel for the Le Settlement Class and the Johnson Settlement Class and Attorneys for Individual and Representative Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, Kyle Kingsbury, Kajan Johnson, Clarence Dollaway, and Tristan Connelly*