—2:15-cv-01045-RFB-BNW—

1                   UNITED STATES DISTRICT COURT

2                        DISTRICT OF NEVADA

3

4   CUNG LE, et al.,                    )
                                        )
5                   Plaintiffs,         )   Case No. 2:15-cv-01045-RFB-BNW
                                        )
6         vs.                           )   Las Vegas, Nevada
                                        )   Monday, August 19, 2024
7   ZUFFA, LLC, d/b/a Ultimate          )   10:38 a.m.
    Fighting Championship and           )
8   UFC,                                )   STATUS CONFERENCE
                                        )
9                   Defendants.         )
    _____        *C E R T I F I E D   C O P Y*
10

11

12

13            REPORTER'S TRANSCRIPT OF PROCEEDINGS

14          THE HONORABLE RICHARD F. BOULWARE, II,
                  UNITED STATES DISTRICT JUDGE

15

16

17

18

19   APPEARANCES:        See Pages 2 and 3

20

21

    COURT REPORTER:      Patricia L. Ganci, RMR, CRR
22                       United States District Court
                         333 Las Vegas Boulevard South, Room 1334
23                       Las Vegas, Nevada  89101

24

    Proceedings reported by machine shorthand, transcript produced
25   by computer-aided transcription.

```
                    ─2:15-cv-01045-RFB-BNW─
```

 1 APPEARANCES:
   For the Plaintiffs:

 2

 3          **DON SPRINGMEYER, ESQ.**
            **MICHAEL J. GAYAN, ESQ.**
            KEMP JONES, LLP
 4          3800 Howard Hughes Parkway, 17th Floor
            Las Vegas, Nevada 89169
 5          (702) 385-6000

 6          **CRANE M. POMERANTZ, ESQ.**
            CLARK HILL, PLC
 7          3800 Howard Hughes Parkway, 17th Floor
            Las Vegas, Nevada 89169
 8          (702) 862-8300

 9          **ERIC L. CRAMER, ESQ.**
            **MICHAEL C. DELL'ANGELO, ESQ.**
10          BERGER & MONTAGUE, P.C.
            1818 Market Street, Suite 3600
11          Philadelphia, Pennsylvania 19103
            (215) 875-3000

12
            **DANIEL H. SILVERMAN, ESQ.**
13          COHEN MILSTEIN SELLERS & TOLL, PLLC
            1100 New York Avenue, N.W., Suite 500
14          Washington, D.C. 20005
            (202) 408-4600

15
            **JOSEPH R. SAVERI, ESQ.**
16          THE JOSEPH SAVERI LAW FIRM, INC.
            555 Montgomery Street, Suite 1210
17          San Francisco, California 94111
            (415) 500-6800

18
            **ROBERT MAYSEY, ESQ.**
19          WARNER ANGLE HALLAM JACKSON FORMANEK, PLC
            2555 E. Camelback Road, Suite 800
20          Phoenix, Arizona 85016
            (602) 264-7101

21
   For Defendant Zuffa, LLC:
22
            **J. COLBY WILLIAMS, ESQ.**
23          CAMPBELL & WILLIAMS
            700 South 7th Street
24          Las Vegas, Nevada 89101
            (702) 382-5222

25
```

—2:15-cv-01045-RFB-BNW—

1   APPEARANCES CONTINUED:

2   For the Defendant:

3           **WILLIAM A. ISAACSON, ESQ.**
            PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
4           2001 K Street, NW
            Washington, DC 20006
5           (202) 223-7300

6           **CHRISTOPHER S. YATES, ESQ.**
            LATHAM & WATKINS, LLP
7           505 Montgomery Street, Suite 2000
            San Francisco, California 94111
8           (415) 395-8157

9           **DAVID L. JOHNSON, ESQ.**
            LATHAM & WATKINS, LLP
10          555 Eleventh Street, Suite 1000
            Washington, D.C. 20004
11          (202) 637-2200

12  ALSO PRESENT:

13          Riche McKnight, Zuffa, LLC

14

15

16

17

18

19

20

21

22

23

24

25

2:15-cv-01045-RFB-BNW

 1          LAS VEGAS, NEVADA; MONDAY, AUGUST 19, 2024; 10:38 A.M.

 2                              --oOo--

 3                      P R O C E E D I N G S

 4          THE COURT:  Please be seated.

 5          COURTROOM ADMINISTRATOR:  The matter now before the

 6  Court is Le, et al., versus Zuffa, LLC and Johnson, et al.,

 7  versus Zuffa, LLC, Case Number 2:15-cv-1045-RFB and

 8  2:21-cv-1589-RFB-BNW.  Counsel, please make your appearances

 9  beginning with the plaintiffs.

10          MR. DELL'ANGELO:  Good morning, Your Honor.  Michael

11  Dell'Angelo on behalf of the plaintiffs.

12          THE COURT:  I'm sorry.  I cannot hear you, sir.  You're

13  going to have to pull that forward a little bit.

14          MR. DELL'ANGELO:  I apologize, Your Honor.

15          Good morning -- good afternoon, or good morning.

16  Sorry.  Michael Dell'Angelo on behalf of the plaintiffs.

17          THE COURT:  Okay.

18          MR. CRAMER:  Eric Cramer on behalf of the plaintiffs.

19          MR. SAVERI:  Good morning, Your Honor.  Joseph Saveri

20  on behalf of the plaintiffs.

21          MR. SILVERMAN:  Good morning, Your Honor.

22  Dan Silverman on behalf of the plaintiffs.

23          MR. POMERANTZ:  Good morning, Your Honor.  Crane

24  Pomerantz on behalf of the plaintiffs.

25          MR. SPRINGMEYER:  Good morning, Your Honor.  Don

—2:15-cv-01045-RFB-BNW—

1    Springmeyer on behalf of the plaintiffs.

2            MR. GAYAN:  Good morning, Your Honor.  Michael Gayan on

3    behalf of plaintiffs.

4            MR. MAYSEY:  Rob Maysey on behalf of plaintiffs.

5            THE COURT:  Good morning.

6            For the defendants?  Mr. Isaacson.

7            MR. ISAACSON:  It's Bill Isaacson, Your Honor -- good

8    morning -- for the defendants.

9            MR. WILLIAMS:  Good morning, Your Honor.  Colby

10   Williams on behalf of Zuffa.

11           MR. YATES:  Good morning, Your Honor.  Chris Yates from

12   Latham and Watkins on behalf of Zuffa.

13           MR. MCKNIGHT:  Good morning, Your Honor.  Riche

14   McKnight on behalf of Zuffa.

15           THE COURT:  Good morning.

16           So we are here because I set a status conference in

17   these cases to move forward.  I had anticipated that my decision

18   on the settlement would come out.  We had some technical issues,

19   but it should be coming out shortly.

20           Just to be clear, the reasons the settlement was

21   rejected are multiple and I want to go through them again.  The

22   decision will elaborate them more fully.  One is my finding that

23   the Le settlement is too low.  The single damages amount is

24   approximately 18 to 19 percent of the maximal award, and for the

25   treble damages for a strong case, which I think this one is,

———2:15-cv-01045-RFB-BNW———

1    it's 6 percent of the maximal award.  I think that simply is too

2    low in this case.  That, and combined with the other factors, is

3    a problem as it relates to approval of the settlement.

4         I also think, pursuant to the Ninth Circuit's decision

5    in *Kim*, there's a real conflict between the Le and Johnson

6    classes.  Le is ready for trial.  It's passed basically all of

7    the pretrial motions and litigation and appeals.  Johnson hasn't

8    even been certified.  There are issues that need to be

9    litigated.  There's discovery that needs to proceed.

10        The Le class, from my review of this record,

11   essentially is focussed on monetary awards.  The members of that

12   class are essentially all retired.  They're not looking for

13   contract changes.  They're looking to maximize the monetary

14   award.

15        The Johnson class, on the other hand, although it

16   hasn't been certified, those class members are more recent or

17   current fighters.  They are focussed on contract changes and

18   potential injunctive relief, and that class has not been

19   certified.  There has not been full litigation.

20        These two classes have conflicting interests and,

21   therefore, I think that conflict between the two classes renders

22   this settlement inappropriate.  I also think the Johnson

23   settlement is too low.  The absent class members, due to a very

24   broad release clause, are giving up essentially their right to

25   litigate issues that may be related to this class for generally

2:15-cv-01045-RFB-BNW

1  three to $6,000.  They're also receiving essentially minor

2  contractual changes that will expire in five years and is

3  subject to being held in abeyance if there's a threat to the

4  market share of Zuffa without defining what that market share

5  actually is.

6        Additionally, there is a conflict within the Johnson

7  class.  You have a split between those with arbitration clauses

8  and those without arbitration clauses.  And notwithstanding any

9  litigation over the validity of the arbitration clause and

10  assuming its validity, potential valuation of the claims for

11  these subclasses is not clear at this point given the limited

12  litigation and discovery in that case.  So this conflict also is

13  one that needs to be addressed as it relates to any potential

14  settlement.

15        All of these issues would need to be resolved from the

16  Court's perspective in order for there to be an appropriate

17  settlement in this case.  I mean, particularly for the Court

18  there's a concern about settling these cases together given how

19  different they are as it relates to where they are in terms of

20  the litigation, but also how different the interests are as it

21  relates to the respective class members.

22        So those are the reasons why I'm rejecting the

23  settlement.  As you all also know, the Court cannot modify the

24  settlement.  So that means that I can't say I'm accepting

25  certain portions of it and rejecting others.  The Court

—2:15-cv-01045-RFB-BNW—

1  essentially has to give its approval or denial as it relates to

2  the settlement.

3         So that's not to say that the Court doesn't believe

4  that there couldn't potentially be a settlement in this case.  I

5  leave that to the parties, but it is to say that with all of

6  these factors present the Court cannot approve and will not

7  approve the preliminary settlement in this case.

8         Again, I do expect the written order to come out once

9  we overcome some of these issues shortly, but I wanted to give

10  you the benefit of that.  We discussed that previously, but I

11  wanted to reiterate that as we proceeded today.

12         So, for today, I have a couple of issues.  One is we

13  need to set a trial date for Le.  I want to set a date, just so

14  you all are clear, that would be a firm date.  And what I mean

15  by that is we will set a date, that will be the trial date, and

16  if there are further negotiations, that's up to the parties.

17  But I'm not going to move that trial date until the Court

18  approves a settlement.

19         So in this case I moved the trial date based upon the

20  fact that there was preliminary approval.  I will not do that

21  again given the nature of this case and how much of the Court's

22  time and docket it takes to plan such a trial.  So the date we

23  set today will be the date until such time as the Court actually

24  approves any settlement.  I want to be perfectly clear about

25  that, and I want you to factor that in as you request potential

—2:15-cv-01045-RFB-BNW—

1  trial dates because that will be the final and last trial date

2  that will be set in this case, absent an emergency.

3          Secondly, I want to move the Johnson case forward in

4  terms of litigation at this point in time.  To that end, I want

5  to discuss with plaintiffs' counsel the issue of the potential

6  conflict here and how you all intend to address that.  And we

7  can talk more about that, but I wanted to let you all know what

8  I want to do today as it relates to this hearing.

9          So let's start, first, with the trial date.  Right now

10  I have a trial date set of October 28th.

11          Is that the date we have, Darci?

12          COURTROOM ADMINISTRATOR:  Yes, sir.

13          THE COURT:  I'll start with plaintiffs' counsel.

14          MR. DELL'ANGELO:  Michael Dell'Angelo, Your Honor.

15          So we've actually conferred in advance today with the

16  defendants, and both sides have some limitations.  I think the

17  defendant's limitations are more significant than those of the

18  plaintiffs.  We're certainly eager to get this case to a jury.

19          We can make October 28th work, but it presents some

20  significant challenges.  So subject to the Court's schedule, you

21  know, we do think it may make sense to at least explore dates

22  that work for all parties.

23          THE COURT:  What are the other possible dates that you

24  would consider?

25          MR. DELL'ANGELO:  Ideally, we thought given the

—2:15-cv-01045-RFB-BNW—

1   holidays, some of the events here, the time that we may need to

2   screen the jury, that really the beginning of 2025 would make

3   the most sense.  I understand that there may be some challenges

4   on the defense side with respect to those dates, but we think

5   that that probably makes the most sense in terms of aligning

6   schedules.  And there's a significant amount of work, as the

7   Court knows from the hearing in March, that still needs to be

8   done; we think would give time to get that work completed.

9           THE COURT:  Okay.  So you're looking at -- if I

10  understand you, you're saying you could make the October date

11  work, but you also believe that you can make a January --

12  somewhere-around-January date work.

13          MR. DELL'ANGELO:  Both of those things are correct with

14  the caveat that because of what needs to be done and some

15  limitations with respect to the key trial team on the

16  plaintiffs' side, October 28th would be a significant challenge;

17  not impossible.

18          THE COURT:  Okay.  Well, when you say "significant

19  challenge," I'm not sure what that means.  One of the things I

20  will tell the parties is I'm fine to adjust witness order or

21  other things that we need to address, and if particular counsel

22  can't be here on a particular date, that's fine if those are not

23  your witnesses.  I will even allow for counsel who may need to

24  be absent the ability to listen in potentially -- I have to

25  check that with my Court staff, but -- to make other

———2:15-cv-01045-RFB-BNW———

1  accommodations.  So if there's an issue about scheduling, that's

2  fine.

3           But with all of you here, there's no way you all are

4  going to agree upon a trial date.  I mean, you all are

5  experienced and in high demand.  So the idea that there's going

6  to be one trial date is not, I think, realistic.

7           That being said, I think we have to reach a trial date

8  and I'm willing to make accommodations as it relates to

9  counsel's schedules and witness schedules.  So we'll have to

10 work with that.

11          But if you could tell me about what the challenges are.

12 Is it other trials?  Is it, sort of, other trips?  Vacations?

13 Things like that?  I mean, it's helpful for me to know what they

14 are.

15          This is, I will say this, an older case.  Another trial

16 from my standpoint is really not a reason for me to move my

17 trial date.  I'm just going to tell you all that now, right.

18          And so that's something you should consider because it

19 is an older case.  It came out at the time and a date and then

20 we had the pandemic and all of that, but the case will most

21 likely either be set in -- I mean, it's either October or

22 January potentially, but I'm not moving it past that.  But I'm

23 not going to -- I'm not going to move a trial date simply

24 because there's a 2021 case or something like that that people

25 want to try.  That's just not something that I think is

─2:15-cv-01045-RFB-BNW─

1   appropriate.

2          If you all want me to reach out to whoever you have the

3   case in front of to let that judge know, I'm happy to do that.

4   I've had that done in my cases previously.  But a prior trial,

5   absent extraordinary circumstances, will not be a reason,

6   whether it's from plaintiffs' side or from defense side, for me

7   to move a trial date on this case.

8          MR. DELL'ANGELO:  Understood, Your Honor.

9          THE COURT:  Okay.  Anything else you wanted to add?

10         MR. DELL'ANGELO:  Not at this time.  Well, actually,

11  the one thing I would say, just with the new information that

12  Your Honor's provided which I think is helpful guidance, that no

13  settlement in Le would be approved or, I'm sorry, that the trial

14  would proceed unless a future settlement in Le was approved.

15  There is, sort of, a fair amount of timing that may be required

16  in the event that the settlement were reached in terms to get

17  that settlement finalized, briefed, whatever.  So we would end

18  up, in theory, with some overlapping trial and consideration of

19  preliminary approval, if we got there, if we were in October.

20  But...

21         THE COURT:  So, Mr. Dell'Angelo, you seem to be

22  suggesting without me -- without saying that that potentially

23  January might be a better date as it relates to both

24  negotiations and trial preparation.

25         MR. DELL'ANGELO:  I would say this, Your Honor.  We're

—2:15-cv-01045-RFB-BNW—

1  eager to get our case to a jury.  I'm mindful of the

2  considerations that the Court has articulated with respect to

3  what an approval process and fully understand why the Court has

4  that view, and I think it's a sensible one.  It's just the

5  question of whether or not we end up -- assuming we even reach a

6  settlement because we're not there, right.  Otherwise, you would

7  have heard that from us.

8          But I do foresee the possibility if we're proceeding in

9  October with -- if we were to reach a settlement in advance of

10  trial of kind of running a trial and a preliminary approval

11  process simultaneously.  I think that's, perhaps, more of a

12  consideration for the Court, but I did want to flag the, kind

13  of, time that that may take to run -- if it's running

14  concurrently.

15          THE COURT:  All right.  Thank you.

16          MR. DELL'ANGELO:  Thank you, Your Honor.

17          THE COURT:  Mr. Isaacson.

18          MR. ISAACSON:  Yes, Your Honor.  I guess you were

19  asking for details.  I have a trial starting September 9th

20  that's going to run four to six weeks.  That's the United States

21  against Google, the next antitrust case against Google, in the

22  Eastern District of Virginia.

23          It's not a matter of whether I cannot do that trial.

24  I'm doing that trial.  And the judge has said maybe four weeks,

25  maybe six weeks.  I don't have a firm end date.

————2:15-cv-01045-RFB-BNW————

1        It will be -- because it is a bench trial, there will

2   be several hundred pages of post-trial findings of fact and

3   conclusions of law.  And so my concern with October 28th is not

4   my ability to be sitting in a chair here, but is to actually be

5   prepared in a reasonable manner for what, as you've said, is a

6   substantial case.

7        THE COURT:  Okay.

8        MR. ISAACSON:  I do have a five-day trial December

9   13th, but at that point in December we have mutual concerns

10  about a jury --

11       THE COURT:  I won't set a trial in December, right.  So

12  from my standpoint you all have two choices.  It's October or

13  January.

14       MR. ISAACSON:  Right.  And --

15       THE COURT:  And I say that because my schedule won't

16  let me set it -- I have to check my schedule -- later than that.

17  And so what happens with a trial of this size, we have to fit it

18  in and we have criminal cases.  We'll look again, but those are

19  the dates that we're looking at because, after that, then we

20  just get into much later in the year because of other issues

21  that I have.

22       So --

23       MR. ISAACSON:  Right.

24       THE COURT:  -- to me, Mr. Isaacson, that makes perfect

25  sense.  A case like this I would not set in December.  That's

———2:15-cv-01045-RFB-BNW———

1  just a recipe for disaster as it relates to losing jurors and

2  people's vacations and whatnot.  So I'm looking either at

3  October or January as the dates.

4        MR. ISAACSON:  All right.  So I would -- and then at

5  that point I would just point out that, given the substantial

6  nature of this trial and the holidays, later in January gives us

7  a chance to not interfere with everybody's holidays.  That

8  includes witnesses, lawyers, et cetera.

9        THE COURT:  That's fair.  Thank you, Mr. Isaacson.

10       Was there something else you wanted to add?

11       MR. ISAACSON:  No, not at this time.  I -- to be

12  honest, my cocounsel -- my cocounsel at this time, Mr. Yates,

13  has a trial for January 6th running through January.  And so I'm

14  doing him in by this -- by this Hobson's choice of October

15  versus January.  And so, you know, for the record, we would --

16  I'd like to push it out a little bit further into the year so

17  that I could have his presence, and it's not a matter of

18  listening in or -- it's a two-places-at-once issue.

19       THE COURT:  I appreciate that.

20       Mr. Yates, how long is your trial supposed to be in

21  January?

22       MR. YATES:  Three weeks.  We start on January 6th in

23  Brooklyn, New York, in the Eastern District of New York in front

24  of Judge Gonzalez, and we're done on the 27th.

25       THE COURT:  How old is that case, Mr. Yates?

2:15-cv-01045-RFB-BNW

1          MR. YATES:  2017 case where Judge Gonzalez accommodated

2     a trial conflict.  It was reset to January and Judge Gonzalez

3     says it's firm.  It doesn't just impact me.  It impacts a couple

4     other members of our trial team.  So it's -- it's -- the case is

5     entitled, North American Soccer League versus United States

6     Soccer Federation, who I am lead counsel for, and Major League

7     Soccer.

8          So 2017 case, older case as well.  Recognize it's not

9     as old as the Le case, but it's been pending for a long time,

10    has a firm trial date.  Obviously, I would hope to be here at

11    this trial, and hopefully Your Honor can accommodate that and

12    push it back by -- push back into February or March, but I also

13    heard Your Honor's comments.

14         THE COURT:  Okay.  Well, and let me ask you again.  Is

15    this trial a four-week trial?  Is that how long we think it's

16    going to take?

17         MR. DELL'ANGELO:  Your Honor, Michael Dell'Angelo.

18         Yes, from plaintiffs' perspective we anticipate that it

19    is likely to run approximately four weeks.  And we're also

20    mindful of the comments Your Honor made at the March hearing

21    about the process of having -- potentially having jurors ask

22    their own questions to the experts and the witnesses, which we

23    hadn't really accounted for in our original four- to five-week

24    estimate.  Notwithstanding that, as we've been working on the

25    trial, we've kind of been mindful of that and think that we can

─────────2:15-cv-01045-RFB-BNW─────────

1  make all of that work in four weeks.

2          THE COURT:  Okay.  Thank you.

3          Does counsel agree with that?  Mr. Isaacson, do you

4  agree with that estimate?

5          MR. ISAACSON:  I think it can be done shorter than

6  that, but the plaintiffs will have much control about how far --

7  how long we go.  So it will be at least -- so it may end up

8  being that, and we should plan on that in terms of scheduling.

9          THE COURT:  Well, I've never had a trial go the length

10 that it's been estimated, Mr. Isaacson, I will just tell you all

11 that.  And if we end up going to trial, you'll understand why

12 that happens, but that's just because I'll move things along in

13 the trial.  Mr. Pomerantz is probably the most familiar with

14 that.  But I doubt that we'll go more than four weeks.

15         Okay.  Is there anything else that I should consider as

16 I'm looking at dates?  Because I'm going to try to give you

17 dates today as best I can so we can start planning accordingly.

18 Anything else I should consider in the context of that?

19         MR. DELL'ANGELO:  Not from plaintiffs, Your Honor.

20         THE COURT:  Okay.

21         MR. ISAACSON:  I guess I should say, if October is

22 still on the table, our -- Dr. Topel, as you will remember, our

23 expert economist, he and his wife's family in February -- and

24 this is his extended wife's family -- booked a trip to Japan

25 from November 1st to 12th.  And so he is beside himself at the

—2:15-cv-01045-RFB-BNW—

1  idea of -- of a conflict if we go forward October 28th.

2          THE COURT:  I appreciate that.  I'm going to try,

3  Mr. Isaacson.  Again, unfortunately in cases of this size, we

4  almost always have some conflicts we have to accommodate.  But

5  I'm mindful of that.  I'm also mindful of the trial that

6  Mr. Yates has that's not as old as this case, but that's a

7  fairly old case where he's lead counsel.  And so, as I said at

8  the beginning, it's going to be almost impossible for me to

9  select a date where there's not going to be some conflict given

10  all of your schedules and your experts' schedules.  And I'll try

11  to address that accordingly given the time frame that we have.

12          (Court conferring with staff.)

13          THE COURT:  Mr. Isaacson, how long did you say your

14  trial was in front of Judge Mehta?

15          MR. ISAACSON:  It's Judge Brinkema.  Judge --

16          THE COURT:  Oh, Judge Brinkema.  I thought it was Judge

17  Mehta.  I had both --

18          MR. ISAACSON:  Yeah, Judge Brinkema in the Eastern

19  District of Virginia.  Four to six weeks.

20          THE COURT:  Four to six weeks.  And it starts September

21  9th?

22          MR. ISAACSON:  Yes.

23          And just to illustrate, today proposed findings of fact

24  and conclusions of law are being submitted, which at last gander

25  were 300 pages, so...

—2:15-cv-01045-RFB-BNW—

1      THE COURT:  Okay.

2      Let's see.  As much as I hate to run the case through a

3  holiday, as we look at the calendar, a November date may be what

4  I can give you without moving much later into 2025.  So if we

5  started on that following -- a week from the 28th, November 4th,

6  why don't you all get your calendars out and take a look at

7  them.

8      I mean, I know that still may not give you as much time

9  as you want, Mr. Isaacson, but I'm running out of space here.

10      MR. ISAACSON:  Yeah.  Is there really nothing at the

11  beginning of next year, Your Honor, I mean?

12      THE COURT:  It's not that there's nothing.  This is a

13  four- to five-week jury trial.

14      MR. ISAACSON:  Right.

15      THE COURT:  So when you say "nothing" --

16      MR. ISAACSON:  No, I mean nothing that could

17  accommodate this, right.

18      THE COURT:  Right.  So it's not that.  And we schedule

19  these trials, you know, a year out.  And some of them are older

20  and they take priority, criminal trials, and things like that.

21  I want to give you a date that I know that I can actually give

22  you.  So in all of these situations I have criminal trials that

23  will potentially go or other cases that are set to go that take

24  precedence.  I want to pick a date, like I did this time, where

25  I know that if you get the date, that's actually going to be the

—2:15-cv-01045-RFB-BNW—

 1  date.  That's the issue.

 2          The issue isn't just here or there.  The issue is

 3  picking that.  I know you know that.  I'm just letting you know

 4  that.  I'm looking at this.  I'm trying to work with that.  I

 5  just don't know.

 6          MR. ISAACSON:  I am concerned also along with

 7  plaintiffs about this issue of the timing of preliminary

 8  approval of a Le settlement during this time because we went

 9  through -- you know, it took a while for this.  And this is a

10  short -- this trial date is a shorter period than what we've

11  been go -- than what we went through, you know, appropriately.

12          And the -- I mean, if this is a matter of your

13  calendar -- I think discipline will be imposed upon these

14  parties if you give us a ready-for-trial date next year base --

15  with the notion that you may end up having to move it

16  unilaterally because of a criminal trial, you know, coming and

17  going, but --

18          THE COURT:  See, Mr. Isaacson, I don't normally

19  schedule trials like this that way.

20          MR. ISAACSON:  Right.

21          THE COURT:  Because we have a very busy trial schedule.

22  In between the past few weeks I've tried a few cases already.

23  And so it's -- I appreciate that.  So I'm going to -- again, I'm

24  looking at this calendar right now.  I was -- I thought that we

25  might have some time in January.  We still may be able to look

—2:15-cv-01045-RFB-BNW—

 1  at that.

 2          MR. ISAACSON:  I would appreciate it.

 3          THE COURT:  But I wanted to ask you about the November

 4  date because that date is actually -- because I had already

 5  cleared part of my calendar, I could clear the rest of it and

 6  get that four-week window for you.  January looks a little more

 7  difficult, but then we're looking until April or May for the

 8  case and I don't want to push it out that far.  And so let me do

 9  this.  Let me look at the calendar.  We may need to go back in

10  chambers and do a little bit more work.

11          While we're all out here, is there anything else that

12  we need to address?

13          MR. ISAACSON:  No.

14          THE COURT:  Actually, why don't we do this.  Why don't

15  we turn to the issue of Johnson and the conflict there, and we

16  can talk about that.

17          I'm sorry, Mr. Isaacson.  Was there something else?

18          MR. ISAACSON:  I will say one thing, we also proposed,

19  amongst ourselves without consulting you, is if you were to give

20  us available dates, we could meet and confer.

21          THE COURT:  Well, we may end up having to do that,

22  Mr. Isaacson, but, again, a case of, sort of, this size given my

23  calendar is going to have limited slots where I can place it

24  where I can tell you if I give you this date you will definitely

25  go.  That's the challenge here.

—2:15-cv-01045-RFB-BNW—

1          So let me turn to the issue of Johnson.  And who's

2     going to be addressing that for the plaintiffs' counsel?

3          MR. CRAMER:  Eric Cramer, Your Honor.

4          THE COURT:  So, Mr. Cramer, my concern is fairly

5     straightforward which I have voiced previously, which is there

6     is an understandable potential conflict you all have as it

7     relates to settling these claims and representing these clients.

8     And I will say this again.  It's not in any way to suggest, sort

9     of, bad faith or lack of diligence.  And, in fact, it's due to

10    your diligence that you're in this situation.  However, you're

11    in a situation now from my standpoint where there are potential

12    clear conflicts that you would have that would be very difficult

13    for me to see how you would resolve them.  And let me give you

14    an example of what I mean by that.

15         There are discovery and other issues in the Johnson

16    class that I think are significant in the context of valuing

17    that class and claim even between the subclasses and other

18    classes.  You raised issues previously with me regarding the

19    settlement, but you were in the awkward position of arguing

20    against yourself which is always challenging for plaintiffs'

21    counsel in these situations.

22         If you were not arguing against -- arguing for this

23    settlement, I would imagine you would be taking a different

24    tact.  You didn't bring that claim obviously because you thought

25    it didn't have any value.  Otherwise, you wouldn't have brought

—2:15-cv-01045-RFB-BNW—

1    it.  But there are issues within that claim:  one, you have, as

2    I said, potential subclasses that have conflicts; you have an

3    arbitration clause that needs to be litigated; and you have

4    valuation.  I don't know, for example, discovery as it relates

5    to the current market conditions for the Johnson class.  I don't

6    know whether or not it would be appropriate for them to even be

7    certified as a class or subclasses.

8         Those are significant issues to me that would make it

9    very difficult for me to see how these classes could be settled

10   together, even though there would be a strong desire for that to

11   happen.  I can understand perfectly why Zuffa would want to do

12   that.  It makes reasonable sense to me.  They want finality, but

13   that's not my role as it relates to approving these classes.

14        So I come back to, why would I not appoint new counsel

15   or at least give new counsel an opportunity to come in in this

16   case?  I mean, my goal is not necessarily to displace the good

17   work and your firm, but it's hard for me to see how there

18   wouldn't be a real conflict here.

19        MR. CRAMER:  So, Your Honor, we heard you loud and

20   clear on the idea that there might be a conflict settling the

21   two cases together and even proceeding potentially together, but

22   we heard it in the context mainly of settlement.  And so we're

23   going to do -- we're going to do two things, and we'll ask Your

24   Honor if that is sufficient.

25        First thing is we are going to proceed to try to settle

─────────2:15-cv-01045-RFB-BNW─────────

1  the Le case separately, if that's possible, without settling

2  Johnson at all.  So we're going to try to do that with the

3  defendant.  So that's the first thing.

4       Because I think both sides heard you this morning

5  again, but, previously, that there were issues in attempting to

6  settle those two together.  So that's the first thing.  The

7  second thing we've done is we've already had conversations with

8  other counsel, experienced antitrust counsel in the field, who

9  are considering coming in to join us either as settlement

10  counsel in Johnson or in some other significant role in Johnson

11  so that you will -- Your Honor will have an independent voice to

12  be objective who's not involved in Le at all and who can come in

13  and can present matters to you from an objective standpoint.

14       And we've -- we've been in discussions with this person

15  and law firm.  They are considering the issue right now.  And we

16  will hopefully be able to have them enter their appearance in

17  Johnson in a role where they can -- they can be in charge of

18  settlement.  And our plan would be to be involved just because

19  we're so -- we have so much knowledge of 10 years of this --

20       THE COURT:  Right.

21       MR. CRAMER:  -- case, but the idea would be to bring

22  this person in and have them be an independent voice.

23       THE COURT:  Okay.  Well, that -- I mean, that seems to

24  be to me a reasonable approach both settling the cases

25  potentially separately given the Court's concerns, but also

—2:15-cv-01045-RFB-BNW—

1  bringing in settlement counsel because I do think that there are

2  simply issues with Johnson that are very difficult for you all,

3  but also for the Court as relates to settlement because of where

4  it is procedurally and because of issues of valuation of the

5  claims and issues with the subclasses at this point in time.

6         So what would be your thought, Mr. Cramer, about the

7  case moving forward?  Because from my standpoint, the case needs

8  to move forward at this point in time.  And I'm not saying there

9  shouldn't be settlement negotiations.  There can always be

10  settlement negotiations ongoing, but I wouldn't want to hold

11  that case up anymore.  I would want to move that case forward.

12         I don't think it would take as long as the Le case, in

13  part, because of the issues that came up in that case.  You all

14  have been through that and, sort of, we won't -- knock on

15  wood -- have any pandemic issues or things related to that.  So

16  I think the discovery could proceed in an expeditious fashion in

17  that case.

18         Do you disagree with that?

19         MR. CRAMER:  We do not, and in fact the parties

20  anticipated this.  We've already been negotiating a schedule for

21  litigation in the case, post pleadings.  Discovery requests were

22  already served, but they could be revised.  And so we're

23  negotiating a schedule right now.  And we have yet to meet and

24  confer.  We've exchanged schedules.  We're going to meet and

25  confer and then present to Your Honor either an agreed

———2:15-cv-01045-RFB-BNW———

1  schedule -- proposed agreed schedule or dueling schedules with a

2  short briefing for the different proposed schedules.

3          So we are -- we are mindful of the need to move the

4  Johnson case forward.  And I would add that one thing that was

5  holding at least us up with regard to Johnson is that some of

6  the dates started to fall in November during the potential trial

7  in Le, and that would cause double duty.  And so if the Le case

8  was moved into January, that would give us a chance to kind of

9  get Johnson up and running.

10          THE COURT:  Okay.  What would you anticipate would be

11  the range of the discovery period for Johnson?  I'll ask both

12  counsel this question.

13          MR. CRAMER:  We think fact discovery should last 10 to

14  12 months, maybe 10 months.

15          THE COURT:  Okay.  And at that point in time, to the

16  extent -- to the extent the case wasn't settled, there would be

17  I assume a motion for certification of the class --

18          MR. CRAMER:  Well, then there would be fact discovery

19  then expert -- in our view expert discovery after fact discovery

20  and then the motion to certify.

21          THE COURT:  So I wasn't sure if you were including the

22  expert discovery.

23          MR. CRAMER:  No, fact and then expert back and forth

24  and then a motion to certify the class.  That would be how we

25  would propose to proceed.

2:15-cv-01045-RFB-BNW

1          THE COURT:  Okay.  All right.  Okay.  Thank you,

2    Mr. Cramer.

3          Any further comment on that schedule from Defense

4    counsel?

5          MR. YATES:  No, we -- Your Honor, we have been meeting

6    and conferring.  We continue to meet and confer.  We've

7    exchanged proposed schedules.  I think a year of fact discovery

8    is likely needed because there's going to be -- the third-party

9    discovery of the current market conditions is going to be pretty

10   important in that -- in the Johnson case.  And so third parties

11   don't like to turn over documents.  It takes a while.  There may

12   be some motion practice and the like.

13         THE COURT:  Yes, I recall that in this case, actually.

14   So I can appreciate that.  All right.

15         So what I'm going to ask you all to do since you've

16   come far and wide, I'm going to go back to my chambers with my

17   staff and we'll try to work out a schedule.

18         Mr. Yates, you said you had a trial starting in

19   January, right, in Brooklyn that was going to go about three

20   weeks.  Is that right?

21         MR. YATES:  That's correct, Your Honor.  Three weeks

22   until the 27th of January.

23         THE COURT:  To the 27th?

24         MR. YATES:  January 6th to January 27th.

25         THE COURT:  That's what I thought.

2:15-cv-01045-RFB-BNW

1          MR. YATES:  Three weeks.  My apologies.

2          THE COURT:  Okay.  Why don't you give us about 15

3    minutes or so.  Please stay near, at least have someone in the

4    courtroom, so we can try to figure out when we're going to

5    schedule this.

6          We will be adjourned.  Thank you.

7          (Recess taken at 11:16 a.m.)

8          (Resumed at 11:30 a.m.)

9          THE COURT:  Please be seated.

10          Okay.  We're back on the record here.  So I think what

11    we're looking at is February 3rd as our date.  I have to confirm

12    a few other conflicts, but that will be the final trial date for

13    Le.

14          So I think that should give you sufficient time to be

15    able to address a settlement in that particular case, if one is

16    to be reached and, if not, prepare for trial.  And then Johnson

17    can proceed on a separate track.

18          So, and I think -- Mr. Cramer, to go back to your

19    suggestion, I think that those points you raised are reasonable

20    at this point in time.  I don't know that I see a need to

21    appoint counsel if, indeed, in fact the cases will potentially

22    be settled separately and to the extent there's a settlement

23    which raises an issue.  I mentioned all the other factors that I

24    had as relates to the settlement that of course you all will

25    consider, but that was certainly one of the biggest issues for

—2:15-cv-01045-RFB-BNW—

1  the settlement was just the conflict between the classes on

2  multiple levels that created a real issue for me based upon the

3  case law.  And given the fact that you are bringing in

4  potentially settlement counsel, we can address that as it comes

5  up in the case.  But for now I don't see a need for us or for me

6  to take any particular action.  I just want to see what happens

7  as relates to that.  I am going --

8          MR. CRAMER:  Your Honor, if I could --

9          THE COURT:  -- to set it -- go ahead, Mr. Cramer.

10          MR. CRAMER:  I was just going to add that the counsel

11  that we're bringing in would not only be settlement counsel,

12  would be -- would be involved in litigating the case with us

13  along the way so that if and when there's time to settle it,

14  that counsel would be informed about the nature of the case, et

15  cetera.

16          THE COURT:  Well, that's what I also understood.  When

17  I said "settlement counsel," I meant the fact that that person

18  would be brought in for any immediate or current settlement

19  discussions to address potential conflict, but also the

20  possibility of or the likelihood of the case proceeding, if it

21  does, that being -- that firm being cocounsel with you.

22          MR. CRAMER:  Thank you.

23          THE COURT:  I do think it would be important for me to

24  set a separate status conference in that case.  We will get a

25  date for you all to come back.  I'm not sure how much time you

1  need for the meet and confer regarding scheduling, but I do want

2  to get that case moving.  So I'm looking at maybe setting

3  another status conference on Johnson by itself in about two

4  weeks.  We'll have to look at a date.

5          But any reason why we can't do that, Mr. Cramer?

6          MR. CRAMER:  No, I think that would be enough --

7  depending on the exact date, I think that would be enough time.

8  We've already exchanged schedules.  We -- but maybe Mr. Yates --

9  I don't know.  I haven't talked to Mr. Yates about the exact

10 date.

11         THE COURT:  There's also a pending motion to dismiss I

12 think in that case which the Court -- we can set that also for a

13 hearing on that particular motion to dismiss as well.

14         MR. YATES:  My apologies, Your Honor.  I don't believe

15 the motion to dismiss has been fully briefed.  I think we filed

16 our motion.  I don't think -- I don't think the plaintiffs have

17 opposed or we haven't replied.  So one of the things we need to

18 do is to set that schedule as well.

19         But what I would suggest, Your Honor, I actually

20 have -- like Mr. Isaacson, I have a trial on September 9th.  I'm

21 supposed to be in New York starting the day after Labor Day.  So

22 I don't know if there's any flexibility in terms of the status

23 for Johnson, but both Mr. -- you know, Mr. Isaacson and I are

24 pretty well occupied starting in early September.

25         THE COURT:  I mean, we can set it out a little bit more

─────────2:15-cv-01045-RFB-BNW─────────

1  time than that.  The main thing I want to be able to do is

2  address both the schedule and the motion to dismiss.  So we can

3  set a schedule within the Court's minute order for this hearing.

4          How much time, Mr. Cramer, do you think you need to

5  respond to the motion to dismiss?

6          MR. CRAMER:  I would say, since we're also preparing

7  for trial, but given that trial's been pushed off, four weeks

8  from today.

9          THE COURT:  Okay.  All right.  We'll set that schedule

10 as well.

11         MR. CRAMER:  Your Honor, also, I think there's

12 contemplation of a potential amended complaint.  And so we would

13 ask that whatever that date for our opposition brief is would

14 also in the alternative be for an amended complaint.

15         THE COURT:  Well, why don't we do this.  Because there

16 may be these other moving parts, let's do this.  Why don't I

17 give you all two weeks to submit a proposed schedule that

18 includes dates regarding the motions and amendments?  And then

19 I'll set a status conference after I see that particular

20 schedule or competing schedules.  I can resolve that, and we'll

21 set a status conference then.

22         MR. CRAMER:  That makes sense.  Thank you, Your Honor.

23         MR. YATES:  Thank you, Your Honor.

24         THE COURT:  All right.

25         All right then.  I think that's everything on my list.

—2:15-cv-01045-RFB-BNW—

1          (Court conferring with law clerk.)

2          THE COURT:  Anything else we need to address from the

3   plaintiffs' perspective?

4          MR. CRAMER:  No, Your Honor.

5          THE COURT:  From the defense --

6          MR. CRAMER:  Oh, my colleague.

7          MR. DELL'ANGELO:  If -- if I may.  I apologize, Your

8   Honor.

9          Since we're all here and we now have a firm date for

10  the Le trial of February 3, I think as we left things on March

11  4th when we were last here shortly before the April 15th trial

12  date, there were a number of open issues.  There was some

13  hearings that you wanted to have in advance.  And I just wanted

14  to socialize with the Court some process, perhaps, for kind of

15  setting out some deadlines or the next status for those as well

16  so that the parties -- particularly understanding the defendants

17  have a very full slate, that we have kind of an orderly process

18  at least between the parties for getting before the Court

19  everything the Court had in mind.

20         THE COURT:  I believe I was going to set one date for a

21  hearing as it related to expert testimony.  Now, I think that

22  there might have been one other date.  So what I would ask you

23  all to do is meet and confer and try and come up with -- give me

24  three possible hearing dates.  And I thought, if I recall, that

25  this involved the plaintiffs' expert -- I don't know if it's

—2:15-cv-01045-RFB-BNW—

1   Davis --

2          MR. DELL'ANGELO:  Davis, yes, Your Honor.

3          THE COURT:  -- I can't remember --

4          MR. DELL'ANGELO:  Yes, Your Honor.

5          THE COURT:  -- regarding his methodology and what he

6   was going to be using in the trial.  And I'll have to go back

7   and look and see if there were other issues.

8          MR. DELL'ANGELO:  Yes.

9          THE COURT:  But why don't you all meet and confer and

10  give me some dates for the hearing.

11         MR. DELL'ANGELO:  Right.

12         THE COURT:  Preferably, again, this fall.  I don't

13  really want to do evidentiary hearing dates in January given the

14  respective schedule of counsel, but it does seem like you all

15  have some dates for a day or two at least to be able to come

16  back out here for a hearing.  So if you all meet and confer and

17  give us some possible dates for those hearings, I believe that

18  would be appropriate.

19         Thank you for that reminder.

20         MR. DELL'ANGELO:  You're welcome, Your Honor.  Thank

21  you.

22         And just to kind of fill that out, having reviewed the

23  transcript, there were a number of things.  You know, there was

24  plaintiffs' expert, Davis.  There was defendant's expert, Marks,

25  that I think you had indicated you wanted to have an evidentiary

—2:15-cv-01045-RFB-BNW—

1    hearing about.  So we can cover that.  There was also going over

2    the exhibits and the designations.  So there are the responses

3    and objections to those, and a number of MILs that had been

4    deferred to the next hearing that the parties need to cover as

5    well.

6            THE COURT:  Well, I addressed some of them.  So here's

7    what I will say with respect to that.  The experts I'd like to

8    be able to resolve sooner rather than later.  The issue with

9    respect to exhibits and things like that, that can happen

10   sooner, but it may make sense to do that in December because

11   Mr. Yates will be occupied in January.  So let's look at trying

12   to resolve all of these issues in this fall so that we can try

13   at least to accommodate Mr. Yates's schedule as relates to

14   January.  So if you want to look at dates for the respective

15   hearings this fall, that's fine with me.

16           MR. DELL'ANGELO:  Of course, Your Honor.  Thank you.

17   We'll meet --

18           THE COURT:  Mr. Isaacson?

19           MR. ISAACSON:  Yes.  We'll meet and confer about that.

20   There were at least one or two things in there that I didn't

21   think were quite correct, but we'll sort that out in the

22   meet-and-confer process.

23           THE COURT:  Okay.  Well, I'm sure you all will discuss

24   that and work it out.  So what I will expect from you all then

25   in the next two weeks is a proposed schedule in Johnson.  We'll

—2:15-cv-01045-RFB-BNW—

 1  also expect from you all proposed hearing dates in Le.  And then

 2  we will let you all know about what the dates will be for the

 3  hearings after we receive that information from you.  Okay?

 4          MR. DELL'ANGELO:  Thank you, Your Honor.

 5          THE COURT:  All right.  Anything else then?

 6          MR. DELL'ANGELO:  No, Your Honor.

 7          THE COURT:  Anything else from the defendants?

 8          MR. ISAACSON:  Nothing else, Your Honor.

 9          THE COURT:  All right.  Thank you all for your time.

10  We will be adjourned.  I'm going to stay on bench for a few

11  moments.  Thank you.

12          MR. DELL'ANGELO:  Thank you, Your Honor.

13          MR. ISAACSON:  Thank you, Your Honor.

14          (Whereupon the proceedings concluded at 11:39 a.m.)

15                          --oOo--

16              COURT REPORTER'S CERTIFICATE

17

18      I, PATRICIA L. GANCI, Official Court Reporter, United

19  States District Court, District of Nevada, Las Vegas, Nevada,

20  certify that the foregoing is a correct transcript from the

21  record of proceedings in the above-entitled matter.

22

23  Date:  August 19, 2024.

24                              /s/ **Patricia L. Ganci**

25                              Patricia L. Ganci, RMR, CRR