# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>      v.<br><br>Zuffa, LLC, d/b/a Ultimate Fighting Championship and UFC,<br><br>                    Defendant. | No.: 2:15-cv-01045-RFB-BNW |

## <u>SETTLEMENT AGREEMENT</u>

This "Settlement" is made and entered into this 26th day of September, 2024 ("Execution Date") by and between Defendant Zuffa, LLC ("Defendant" or "Zuffa") and Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury (collectively, "Plaintiffs"), both individually and on behalf of the Class specified herein.

WHEREAS, Plaintiffs Cung Le, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury (the "Class Representatives") are prosecuting the Action on their own behalf and on behalf of the Class;

WHEREAS, the Class Representatives allege that they and members of the Class were injured as a result of certain conduct of Defendant Zuffa, LLC, as set out in the Complaint in the Action;

WHEREAS, plaintiff Nathan Quarry is a named plaintiff in the Action, who was proposed to represent the proposed Identity Rights Class (which class the Court declined to certify), and who still has claims related to his identity rights that shall be settled and released as set forth herein;

1

SETTLEMENT AGREEMENT

WHEREAS, Defendant denies Plaintiffs' allegations and has asserted defenses to Plaintiffs' claims in the Action;

WHEREAS, on December 22, 2023, Plaintiffs filed a notice stating that Plaintiffs are not seeking certification of a class for the purposes of seeking injunctive relief, ECF No. 947, and therefore prospective relief is being pursued by members of the Class in this Action ("Class Members") only to the extent that they are entitled to such relief by virtue of their membership in the proposed class in *Johnson*, *et al. v. Zuffa, LLC, et al.*, No. 2:21-cv-1189 (D. Nev.) (the "*Johnson* Action");

WHEREAS, on July 30, 2024, the Court denied preliminary approval of a prior proposed settlement (dated April 24, 2024) that sought to resolve this Action together with the *Johnson* Action for $335 million plus certain prospective relief (the "Denial");

WHEREAS, both before and after the Denial, extensive arm's-length settlement negotiations have taken place between Co-Lead Class Counsel and counsel for Defendant, with the continuous assistance of an experienced mediator, Hon. Layn Phillips;

WHEREAS, this Settlement has been reached as a result of extensive arm's-length negotiations between the Settling Parties, including negotiations that occurred after the Denial, taking into account the Court's stated reasons for the Denial;

WHEREAS, Co-Lead Class Counsel have concluded, after (a) extensive and protracted fact and expert discovery in the Action, and in the midst of preparing the Action for imminent trial, (b) exhaustive review of the law regarding the Action, (c) the Court's elaboration of its reasons for the Denial, and (d) carefully considering all of the circumstances of the Action, including an assessment of the costs, risks and delays of attempting to successfully prosecute the Action through trial and all subsequent appellate proceedings, including that appeals are highly

SETTLEMENT AGREEMENT

likely to delay ultimate resolution of the Action, that it would be in the best interests of the Class to enter into this Settlement Agreement and assure a certain and significant benefit to the Class, and further, that Co-Lead Class Counsel consider the Settlement to be fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23;

WHEREAS, this Settlement, if it receives Final Approval, will resolve the Action in full, but will have no effect on the *Johnson* Action, which will be separately litigated;

WHEREAS, Defendant, despite its belief that it is not liable for the claims asserted in the Action and its belief that it has good defenses thereto, has nevertheless agreed to enter into this Settlement to avoid further expense, inconvenience, and the distraction of protracted litigation in the Action, and to obtain the releases, orders, and judgments contemplated by this Settlement;

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, and intending to be legally bound, it is agreed by and between Defendant and Plaintiffs, both individually and on behalf of the Class, that the Action be settled, compromised, and dismissed on the merits with prejudice as to the Releasees and, except as hereinafter provided, without costs as to Plaintiffs, the Class, or Defendant, subject to the approval of the Court (the "Settlement"), on the following terms and conditions:

## 1.     Definitions

a.    "Action" means the matter *Le, et al. v. Zuffa, LLC*, No. 2:15-cv-1045 (D. Nev.).

b.    "Claims Administrator" means the Angeion Group, which was previously approved by the Court to issue, and did issue, notice to the Class (No. 15-cv-1045, ECF No. 921), and which would, on motion of Settlement Class Counsel and Order of this Court, provide notice to Class Members, and would process any opt outs received from any members of the Class should the Court require a second opt out period for certain or all members of the Class, as

well as the claims submitted by Class Members pursuant to a Court-approved Plan of Allocation, and carry out any other duties or obligations provided for herein or as ordered by the Court.

  c. "Co-Lead Class Counsel" means Berger Montague PC, Cohen Milstein Sellers & Toll PLLC, and Joseph Saveri Law Firm, LLP, as appointed in the Action, ECF Nos. 139 & 839.

  d. "Complaint" refers to the operative complaint in the Action (ECF No. 208).

  e. "Confidential Supplement" means the confidential agreement of the Settling Parties containing certain confidential terms providing for recission of the Settlement Agreement should certain contingencies occur.

  f. "Defendant's Payment" means three hundred seventy-five million dollars ($375,000,000.00) to be paid by Defendant pursuant to the terms set out below in Paragraph 5(a).

  g. "Effective Date" means the date on which all of the following have occurred: (i) the Settlement is approved by the Court as required by Fed. R. Civ. P. 23(e); (ii) the Court enters a final approval order; and (iii) the period to appeal the final approval order has expired and/or all appeals of the final approval order have been finally resolved.

  h. "Escrow Account" means the qualified interest-bearing settlement escrow account that holds the *Le v. Zuffa* Settlement Fund.

  i. "Escrow Agreement" means an agreement substantially in the form annexed hereto as Exhibit A.

  j. "Execution Date" means the date the Settling Parties sign this Settlement Agreement.

  k. "Fee and Expense Award" means any and all award(s) by the Court to Settlement Class Counsel for reasonable attorneys' fees and reimbursement of reasonable costs and expenses incurred in the prosecution of the Action, including any interest accrued thereon.

  l. "Fighter" or "Fighters" means MMA fighters who enter or who have entered into a Promotional and Ancillary Rights Agreement (or similar agreement) with Defendant or any of its corporate affiliates to provide services as professional MMA fighters. The terms "Fighter" or "Fighters" include, but are not limited to, Class Members.

m.  "Class" is the Bout Class certified by the Court in the Action on August 9, 2023 (ECF No. 839), and includes all persons who competed in one or more live professional UFC-promoted MMA bouts taking place or broadcast in the United States from December 16, 2010 to June 30, 2017. Excluded from the Class are all persons who are not residents or citizens of the United States unless the UFC paid such persons for competing in a bout fought in the United States.

n.  "Notice Expenses" means all reasonable expenses relating to providing notice to the Class, including, *inter alia*, the cost of (a) publications, (b) distributing the short and long-form notices to members of the Class, (c) the Claims Administrator's costs of maintaining and administering the notice website and toll-free phone number, and (d) the Claims Administrator's costs associated with designing and administering the Notice Plan.

o.  "Notice Plan" means the plan for providing notice pursuant to Fed. R. Civ. P. 23(e)(1) to the members of the Class.

p.  "Plan of Allocation" means the plan proposed to the Court by Settlement Class Counsel for the allocation of the portion of the *Le v. Zuffa* Settlement Fund to be paid to members of the Class.

q.  "Releasees" means Defendant Zuffa, LLC, and any and all of its past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including TKO Operating Company, LLC and Endeavor Group Holdings, Inc. and all of their respective predecessors, successors and assigns, and each and all of their present, former and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, beneficiaries, and representatives of any kind.

r.  "Releasors" means all Plaintiffs and all Class Members and all of their predecessors, successors, heirs, administrators, assigns, and any party claiming by, for, under, or through any Plaintiff or Class Member to have any Released Claim against the Releasees, including any and all of Plaintiffs' or Class Members' past, present, and future officers, directors,

5

supervisors, employees, agents, stockholders, members, attorneys, servants, representatives, accounts, plans, groups, parent companies, subsidiary companies, affiliated companies, divisions, affiliated partnerships, joint venturers, principals, partners, wards, heirs, assigns, beneficiaries, estates, next of kin, family members, relatives, personal representatives, administrators, agents, representatives of any kind, insurers, and all other persons, partnerships, or corporations with whom any of the foregoing have been, or are now or become, affiliated, and the predecessors, successors, heirs, executors, administrators, and assigns of any of the foregoing.

s.   "Released Claims" means the claims described in Paragraph 10 below. The Settling Parties intend that such releases be interpreted and enforced broadly and to the fullest extent permitted by law.

t.   "Settlement Class Counsel" means Co-Lead Class Counsel as well as Kemp Jones, LLP (appointed by the Court as Liaison Counsel in the Action, ECF No. 839),  Clark Hill PLC, and other firms that worked under the direction of Co-Lead Class Counsel on behalf of the Class in the Action.

u.   "Class Members" means the members of the Class who did not timely and validly opt out, or who do not timely and validly opt out should the Court require a second opt-out period.

v.   "Settling Parties" means all Plaintiffs and Defendant.

w.   "*Le v. Zuffa* Settlement Fund" means Defendant's Payment, plus any and all accrued interest.

**2.**   **Reasonable Steps Necessary to Help Effectuate this Settlement.** The Settling Parties agree to undertake in good faith all reasonable steps necessary to help effectuate the Settlement, including undertaking all actions contemplated by, and steps necessary to carry out, the terms of this Settlement, and to secure the prompt, complete, and final dismissal with prejudice of all claims in the Action against Defendant. The Settling Parties also agree to the following:

a.   Defendant agrees not to oppose a grant of the relief requested in the Plaintiffs' motions for preliminary or final approval of the Settlement, and also agrees not to appeal any Court ruling granting in full or substantial part either of these motions.

b.   Defendant will serve notice of this Settlement on the appropriate federal and state officials under the Class Action Fairness Act, 28 U.S.C. § 1715.

c.   This Settlement is reached with Co-Lead Counsel, who have been appointed to represent the Class, and is intended to be binding on all persons who are within the definition of the Class. Unless explicitly ordered to do so by the Court, Defendant agrees not to directly or indirectly solicit, induce, compel, or encourage any person who would be a member of the Class (1) to opt out of the Class (should the Court require a second opt out period), (2) to object to all or part of the Settlement Agreement, (3) to object to any request for service awards for the Class Representatives, or (4) to object to Settlement Class Counsel's request for a Fee and Expense Award.

**3.       Approval**

a.   Except as otherwise provided herein, on the Execution Date, Plaintiffs, all members of the Class, and Defendant shall be bound by this Settlement, and this Settlement shall not be rescinded except in accordance with Paragraph 9 of this Settlement Agreement.

b.   **Motion for Preliminary Approval of the Settlement.** Plaintiffs shall draft a motion for preliminary approval of the Settlement and all necessary supporting documents, which motion and documents shall be consistent with this Settlement Agreement. Defendant shall have a right to review Plaintiffs' preliminary approval motion, memorandum of law in support, the proposed Plan of Allocation, the proposed short and long-form notices for the Class, and the proposed preliminary approval order before they are filed. Defendant may suggest revisions, which Plaintiffs agree to consider in good faith, as long as Defendant provides its suggested revisions or comments within three (3) business days of having received any such document or documents from Plaintiffs, or such other time as the Settling Parties may agree. Unless the Settling Parties agree otherwise, Plaintiffs will file the motion for preliminary

Case No.: 2:15-cv-1045

**SETTLEMENT AGREEMENT**

approval with the Court no later than fourteen (14) days after the execution of this Settlement Agreement. The motion for preliminary approval shall include a proposed form of order, including at least the following:

    i.   finding preliminary approval of the Settlement to be appropriate as the Settlement is fair, reasonable, and adequate within the meaning of Federal Rule of Civil Procedure 23, finding that dissemination of notice to the Class is warranted, and finding that the opportunity to opt out already provided to members of the Class was sufficient and fully consistent with Federal Rule of Civil Procedure 23 and due process of law;[1]

    ii.   finding that the proposed Notice Plan for the Class complies with Federal Rule of Civil Procedure 23 and due process, and approving proposed short- and long-form notices;

    iii.   provisionally approving the proposed Plan of Allocation;

    iv.   providing that if final approval of the Settlement is not obtained, the Settlement shall be null and void, and the Settling Parties will revert to their positions *ex ante* without prejudice to their claims or defenses in the Action; and

    v.   setting deadlines for: (a) the filing of a motion for final approval of the Settlement, (b) implementation of the Notice Plan, (c) the filing of the Plaintiffs' Fee and Expense Award application, (d) the filing of any objections from Class Members to the Settlement, (e) the provision of appropriate notice for opting out of the Class to the extent the Court requires an additional opt out period for members of the Class, and (f) a fairness hearing for the Settlement of both Actions.

---

[1] To the extent the Court requires an additional opt out opportunity to members of the Class, the remaining provisions of the Settlement shall remain in full force and effect.

**SETTLEMENT AGREEMENT**

c.  **Stay of Proceedings.** The motion for preliminary approval shall also provide for a stay of Plaintiffs' proceedings against Defendant in the Action pending final approval or termination of the Settlement.

d.  **Motion for Fee and Expense Award and Class Representative Service Awards.** Separate and apart from—and in advance of—the motion for final approval, Plaintiffs shall file a motion for a Fee and Expense Award and for service awards for the Class Representatives, seeking the entry of an order approving expressly the provisions in Paragraph 8 of this Settlement Agreement.

e.  **Motion for Final Approval and Entry of Final Judgment in the Action.** In the event the Court enters an order preliminarily approving the Settlement, Plaintiffs shall draft a motion for final approval of the Settlement and all necessary supporting documents. Defendant shall have a right to review Plaintiffs' motion for final approval, Plaintiffs' memorandum of law in support of final approval, and the proposed form of order. Defendant may suggest revisions, which Plaintiffs agree to consider in good faith, as long as Defendant provides its suggested revisions or comments within five (5) business days of having received any such document or documents from Plaintiffs, or other such time as the Settling Parties may agree. Plaintiffs will file the motion for final approval pursuant to the schedule ordered by the Court. The final approval motion shall seek entry of a final approval order, including:

i.  finding that the notice given to members of the Class as part of the Notice Plan constitutes due, adequate, and sufficient notice and meets the requirements of due process and the Federal Rules of Civil Procedure;

ii.  finding the Settlement to be fair, reasonable, and adequate within the meaning of Federal Rule of Civil Procedure 23, and directing consummation of the Settlement pursuant to its terms;

iii.  finding that all members of the Class, who did not timely and validly opt out, and all Plaintiffs, shall be bound by the Settlement Agreement and all of its terms;

**SETTLEMENT AGREEMENT**

iv.  finding that the Releasors shall be bound by the release set forth in Paragraph 10 of this Settlement Agreement, and shall be forever barred from asserting any of the Released Claims against any of the Releasees;

v.  directing that the Action be dismissed with prejudice as to Defendant and without costs as to any Settling Party;

vi.  retaining exclusive jurisdiction over the Settlement, including the administration, enforcement, and consummation of the Settlement in the Action; and

vii.  determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal of the Action as to Defendant shall be final.

4.  **Finality of Settlement.** This Settlement Agreement shall become final upon the Effective Date.

5.  **Defendants' Payment;** *Le v. Zuffa* **Settlement Fund; Notice Expenses and Costs.**

a.  **Funding the** *Le v. Zuffa* **Settlement Fund.** Defendant shall make Defendant's Payment of three-hundred and seventy-five million dollars ($375 million) for the benefit of the Class pursuant to the following payment schedule:

i.  $125 million of Defendant's Payment will be paid into the Escrow Account for the benefit of the Class three (3) business days after entry of the Court's Order Preliminarily approving the Settlement;

ii.  $125 million of Defendant's Payment will be paid into the Escrow Account for the benefit of the Class three (3) business days after the Court's Order finally approving the Settlement;

iii.  $125 million of Defendant's Payment will be paid into the Escrow Account for the benefit of the Class no later than June 30, 2025.

Co-Lead Class Counsel shall provide Defendant's counsel with written wiring instructions for the Escrow Account.

b. Any distributions to members of the Class from the *Le v. Zuffa* Settlement Fund shall be performed in accordance with the Plan of Allocation approved by the Court.

c. The Defendant's Payment, and each portion thereof, provided for in subparagraph 5(a) above shall be held in the Escrow Account subject to the terms and conditions of the Escrow Agreement, and in accordance with the provisions of Paragraph 7 below.

d. In consideration for the release of his claims as set forth in Paragraph 10 below, individual Plaintiff Nathan Quarry shall receive a payment of $250,000 from the *Le v. Zuffa* Settlement Fund.

e. Before the granting of final approval, and upon the direction of Settlement Class Counsel, all reasonable Notice Expenses and any costs of administering the *Le v. Zuffa* Settlement Fund, including taxes, will be paid out of the Escrow Account on a non-recoupable basis other than as set forth below. Co-Lead Class Counsel agree to arrange for provision of class notice to the Class in accordance with Federal Rule of Civil Procedure 23 and any orders of the Court.

f. Following the Effective Date, any Fee and Expense Award and service awards to the Class Representatives awarded by the Court will be paid from the Escrow Account.

g. There shall be no reduction of Defendant's Payment or the *Le v. Zuffa* Settlement Fund by reason of any Class Member timely and validly opting out of the Settlement should the Court order a second opt out period.

**6.     No Admission of Liability or Wrongdoing.** Neither this Settlement (whether or not it becomes final), the final judgment, nor any negotiations, documents, and discussions associated with them shall be deemed or construed as evidence of, or an admission or concession of liability or wrongdoing by Defendant, or be used or offered in any proceeding for any purposes, except to enforce the terms of this Settlement. Nothing in this Settlement will

**SETTLEMENT AGREEMENT**

constitute or be construed as evidence, or an admission or concession by Plaintiffs of the lack of merit of any of their claims or allegations against Defendant in this matter.

**7.      Escrow Account; Taxes.**

a.    An Escrow Account shall be maintained at Huntington National Bank to hold the *Le v. Zuffa* Settlement Fund.

b.    The Escrow Account is intended by the parties hereto to be treated as a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1, and to that end the parties hereto shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. A "relation back election" as described in Treas. Reg. § 1.468B-1(j) shall be made so as to enable the Escrow Account to be treated as a qualified settlement fund from the earliest date possible, and the parties shall take all actions as may be necessary or appropriate to this end. At the direction of Settlement Class Counsel, taxes or estimated taxes shall be paid on any income earned on the funds in the Escrow Account, whether or not final approval has occurred, as provided in Paragraph 5**,** above. For purposes of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "Administrator" of the Escrow Account shall be the Claims Administrator, who shall timely and properly file or cause to be filed on a timely basis, all tax returns necessary or advisable with respect to the Escrow Account (including without limitation all income tax returns, all informational returns, and all returns described in Treas. Reg. § 1.468B-2(1)).

c.    All payments into the Escrow Account, including Defendant's Payment, and each portion thereof, and any income earned thereon, shall, at the direction of Settlement Class Counsel, be invested in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including U.S. Treasury Bills, U.S. Treasury Money Market Funds, or a bank account insured by the Federal Deposit Insurance Corporation ("FDIC") up to the guaranteed FDIC limit. Any interest earned on any of the foregoing shall become part of the *Le v. Zuffa* Settlement Fund. Defendant shall have no responsibility for, or liability in connection with, the *Le v. Zuffa*

**SETTLEMENT AGREEMENT**

Settlement Fund or the Escrow Account, including, without limitation, the investment, administration, maintenance, or distribution thereof.

d.   All funds held in the Escrow Account shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as the *Le v. Zuffa* Settlement Fund shall be distributed pursuant to this Settlement and/or order(s) of the Court.

e.   The Claims Administrator, as administrator of the *Le v. Zuffa* Settlement Fund, shall report to each Class Member and all applicable taxing authorities, to the extent required by law, under the Class Member's name and U.S. federal taxpayer identification number on IRS Forms 1099, 1042-S, or other applicable forms, and such payments shall be made without deduction for taxes and withholdings, except as required by law, as determined by the Claims Administrator.

f.   The Claims Administrator shall be responsible for procuring any required tax forms from Class Members before making any payments or distributions to such Class Members.

g.   For avoidance of doubt, Defendant, Defendant's Counsel, Plaintiffs, and Settlement Class Counsel shall have no liability, obligation, or responsibility whatsoever for tax obligations arising from payments to any Class Member or based on the activities and income of the *Le v. Zuffa* Settlement Fund. The *Le v. Zuffa* Settlement Fund shall be solely responsible for its tax obligations. Settlement Class Counsel shall be solely responsible for their own tax obligations.

h.   Plaintiffs, individually and on behalf of the Class, and Settlement Class Counsel represent and agree that Settlement Class Counsel have not provided any advice as to the taxability of payments received pursuant to this Settlement.

**8.   Settlement Class Counsel's Fee and Expense Award, and Service Awards for Class Representatives.**

a.   Reasonable disbursements for (a) Notice Expenses, (b) reasonable expenses for maintaining and administering the *Le v. Zuffa* Settlement Fund, (c) reasonable expenses

associated with developing, preparing, and implementing the Plan of Allocation, and (d) taxes and reasonable expenses incurred in connection with taxation matters may be paid out of the Escrow Account without approval from the Court and shall not be refundable to Defendant in the event the Settlement is disapproved, rescinded, or otherwise fails to become effective or final, to the extent such expenses have actually been expended or incurred. No other disbursement from or distribution of the *Le v. Zuffa* Settlement Fund shall be made without prior approval of the Court.

  b.   If this Settlement does not become final within the meaning of Paragraph 4, then all amounts paid by Defendant into the *Le v. Zuffa* Settlement Fund (other than costs expended or incurred in accordance with Paragraph 8(a)) shall be returned to Defendant from the Escrow Account, along with any interest accrued thereon, within thirty (30) calendar days of the Court's denial of final approval of the Settlement.

  c.   If this Settlement becomes final within the meaning of Paragraph 4: (1) the *Le v. Zuffa* Settlement Fund, net of any expenses incurred (as contemplated by this Settlement Agreement) and the Fee and Expense Award (the "Net *Le v. Zuffa* Settlement Fund"), shall be distributed in accordance with the Plan of Allocation, subject to approval by the Court; (2) no Releasee shall have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, or administration of the *Le v. Zuffa* Settlement Fund, including, but not limited to, the costs and expenses of such investment, distribution, or administration; and (3) Defendant shall have no reversionary interest in any of the *Le v. Zuffa* Settlement Fund or interest thereon, which interest shall be for the benefit of the Class and Settlement Class Counsel. Subject to Court approval, Settlement Class Counsel shall be reimbursed and paid solely out of the *Le v. Zuffa* Settlement Fund for all past, current, or future litigation costs and expenses and

14

any award of attorneys' fees, as part of any Fee and Expense Award. Service awards to the Plaintiffs, if approved by the Court, will be paid solely out of the *Le v. Zuffa* Settlement Fund.

 d. Subject to the posting of appropriate security for any funds paid under this paragraph and Court approval, the Fee and Expense Award shall be payable from the *Le v. Zuffa* Settlement Fund, notwithstanding the existence of any timely-filed objections thereto, or potential appeal therefrom, or collateral attack on the Settlement or any part thereof, including on the Fee and Expense Award, subject to Settlement Class Counsel's obligation to make appropriate refunds or repayments to the *Le v. Zuffa* Settlement Fund, if and when, as a result of any appeal or further proceedings on remand, or successful collateral attack, the Fee and Expense Award is reduced or reversed, or in the event the Settlement does not become final or is rescinded or otherwise fails to become effective. Settlement Class Counsel shall provide an assurance from a financial institution that such refunds to the Settlement Fund will be made in the event that Settlement Class Counsel defaults on any obligation under this paragraph. If the provisions of this paragraph are followed, Defendant shall not object to such disbursements to Settlement Class Counsel.

 e. The procedure for and the allowance or disallowance by the Court of the Fee and Expense Award, and service awards for class representatives to be paid out of the *Le v. Zuffa* Settlement Fund, are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement, and any order or proceeding relating to the Fee and Expense Award, or service awards, or any appeal from any such order shall not in itself operate to terminate or cancel this Settlement.

Case No.: 2:15-cv-1045

**SETTLEMENT AGREEMENT**

9.      **Recission**

a.    If the Court refuses to approve this Settlement or any part hereof, or if the Court does not enter the final judgment provided for in Paragraph 4 of this Settlement, or if the Court enters the final judgment and appellate review is sought, and on such review, such final judgment is not affirmed in its entirety, then Defendant and Plaintiffs shall each, in their/his sole discretion, have the option to rescind this Settlement in its entirety within thirty (30) calendar days of the entry into the docket of the Court of the relevant court decision. Written notice of the exercise of any such right to rescind shall be made according to the terms of Paragraph 11(g).

b.    In the event that this Settlement does not become final as set forth in Paragraph 4, or this Settlement otherwise is terminated, then this Settlement shall be of no force or effect and any and all parts of the *Le v. Zuffa* Settlement Fund remaining in the Escrow Account (including interest earned thereon), shall be returned to Defendant within thirty (30) calendar days. For the avoidance of doubt, the full portion of the *Le v. Zuffa* Settlement Fund that Defendant has funded, less only disbursements made in accordance with Paragraph 8(a), plus any accrued interest, shall be so returnable. Defendant and Plaintiffs expressly reserve all their respective claims, rights, and defenses in both Actions if this Settlement does not become final.

c.    Defendant shall also have the option to rescind the Settlement should the requirements of the Confidential Supplement, which are expressly incorporated as if set forth herein, be satisfied.

10.     **Released Claims and Covenant Not to Sue**.

a.    "Released Claims" means any and all known and unknown claims, causes of action, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations, debts, setoffs, rights or recovery, or liabilities for any obligations of any kind whatsoever (however denominated), whether class or individual, in law or equity or arising under

**SETTLEMENT AGREEMENT**

constitution, statute, regulation, ordinance, contract, or otherwise in nature—including without limitation any and all actual or potential actions, losses, judgments, fines, debts, liabilities (including joint and several), liens, causes of action, demands, rights, damages, penalties, punitive damages, costs, expenses (including attorneys' fees and legal expenses), indemnification claims, contribution claims, obligations, compensation, and claims for damages or for equitable or injunctive relief of any nature (including but not limited to antitrust, RICO, contract, tort, conspiracy, unfair competition, or unfair trade practice claims)—known or unknown, suspected or unsuspected, asserted or unasserted, direct or derivative, based upon, arising from, or relating to: (i) the factual predicates of the Action, or any complaint or pleading therein, from the beginning of time until final approval of this Settlement Agreement, including any contracts, mergers, acquisitions, transactions, or any business practices of any kind employed or executed by Defendant or its affiliates or assigns; or (ii) any issue raised in the Action by pleading or motion. For clarity, Released Claims include, but are not limited to, claims that arise after the Execution Date to the extent they involve a continuation of some or all of the conduct or issues set forth in 10(a)(i) and (ii) herein. Notwithstanding the above, Released Claims shall not include: (a) claims arising in the ordinary course of business, such as, and without limitation, contract disputes or negligence claims, (b) claims that any Class Member or Releasor has or may have that are being pursued by virtue of any Class Member or Releasor's inclusion as part of the *Johnson* Action, separate and apart from any extinguished claims for prospective relief that are no longer being pursued and cannot be achieved in this Action, *see* ECF No. 947, or (c) claims to enforce this Settlement Agreement.

   b.   In addition to the effect of any final judgment entered in accordance with this Settlement Agreement, upon the Effective Date, and in consideration of Defendant's Payment into the *Le v. Zuffa* Settlement Fund, and for other valuable consideration, the Releasors shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal shall have fully, finally, and forever released, relinquished, and discharged all Released Claims against any and all of the Releasees. The Settling Parties intend that the releases in this Settlement Agreement shall

17

be interpreted and enforced broadly and to the fullest extent permitted by law. Each Releasor shall be deemed to have released all Released Claims against the Releasees regardless of whether any such Releasor ever seeks or obtains by any means, including without limitation through the claim process, any distribution from the *Le v. Zuffa* Settlement Fund, unless such Releasor opts out in writing pursuant to the Notice Plan approved by the Court. Class Representatives, Nathan Quarry, and Defendant acknowledge, and Class Members shall be deemed by operation of any Final Judgment and Order of Dismissal to have acknowledged, that the foregoing waivers and releases were separately bargained for and a key element of this Settlement Agreement, of which these releases are part.

      c.  All Releasors also covenant not to sue any Releasee with respect to any Released Claim, and agree that all Releasors shall be permanently barred and enjoined from commencing, maintaining, or prosecuting, any action, suit, proceeding, or claim in any court, tribunal, administrative agency, regulatory body, arbitrator, or other body in any jurisdiction against any Releasee based in whole or in part upon, arising out of, or in any way connected or related to any Released Claim.

      d.  Each Releasor may hereafter discover facts other than or different from those in which he, she, or it believes to be true with respect to the claims that are the subject matter of the provisions of this Paragraph 10. Nevertheless, each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon final approval of this Settlement Agreement, any known or unknown, suspected or unsuspected, contingent or non-contingent claim with respect to the subject matter of the provisions of this Paragraph 10, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts, except that this paragraph does not apply to any claims any Class Member or Releasor has or may have that is being pursued as part of the *Johnson* Action.

      e.  In addition to the provisions of this Paragraph 10, Releasors expressly waive and release, upon final approval of this Settlement Agreement, any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code, which states:

**SETTLEMENT AGREEMENT**

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY;

or by any law of any state or territory of the U.S., or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code.

     f.   Each Releasor shall look solely to the Plan of Allocation and *Le v. Zuffa* Settlement Fund as deposited in the Escrow Account for settlement and satisfaction, as provided here, of all Released Claims for any form of monetary compensation or relief (including attorneys' fees and costs). Except as provided by order of the Court pursuant to this Settlement Agreement, neither Nathan Quarry nor any Class Member shall have any interest in the Escrow Account or the *Le v. Zuffa* Settlement Fund deposited therein, or any portion thereof.

     g.   Notwithstanding any other provision of this Settlement Agreement, nothing in this Settlement Agreement will prevent Releasees from pleading this Settlement Agreement as a full and complete defense to any action, suit, or other proceeding that has been or may be instituted, prosecuted, or attempted with respect to any of the Released Claims and may be filed, offered, and received into evidence, and otherwise used for such defense.

    **11.**   **Miscellaneous.**

     a.   This Settlement shall be governed by and interpreted according to the substantive laws of the state of Nevada without regard to its choice of law or conflict of laws principles. Defendant will not object to complying with any of the provisions outlined in this Settlement on the basis of jurisdiction.

     b.   The United States District Court for the District of Nevada shall retain jurisdiction over the implementation, interpretation, enforcement, and performance of this Settlement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to the Settlement or the applicability of the Settlement that cannot be resolved by

**SETTLEMENT AGREEMENT**

negotiation and agreement by Plaintiffs and the Class and Defendant, including challenges to the reasonableness of any of the Settling Parties' actions.

      c.   This Settlement constitutes the entire, complete, and integrated agreement among Plaintiffs and the Class and Defendant pertaining to the Settlement, and supersedes all prior and contemporaneous agreements, undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between Plaintiffs and Defendant in connection herewith. This Settlement may not be modified or amended except in writing executed by Plaintiffs and Defendant, by their respective counsel, and approved by the Court.

      d.   This Settlement shall be binding upon, and inure to the benefit of, the successors and assigns of Plaintiffs, Class Members who have not or do not timely and validly opt out, and Defendant. Without limiting the generality of the foregoing, upon final approval of this Settlement, each and every covenant and agreement made herein by Plaintiffs or Settlement Class Counsel shall be binding upon all Class Members who have not or do not timely and validly opt out and all Releasors. To the extent not parties to this Settlement, the Releasees are intended by the Settling Parties to be third-party beneficiaries of this Settlement and are authorized to enforce its terms as applicable to them.

      e.   This Settlement may be executed in counterparts, and a facsimile or other electronic signature shall be deemed an original signature for purposes of executing this Settlement.

      f.   No Settling Party shall be considered to be the drafter of the Settlement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of the Settlement.

      g.   All notices or communications by any Settling Party intended for any other Settling Party related to this Settlement shall be in writing. Each such notice or communication shall be given either by: (a) hand delivery; (b) registered or certified mail, return receipt requested, postage pre-paid; (c) Federal Express or similar overnight courier; or (d) electronic mail, and, in the case of either (a), (b), (c), or (d) shall be addressed as follows:

Case No.: 2:15-cv-1045

**SETTLEMENT AGREEMENT**

If directed to Plaintiffs, the Class, or any member of the Class, to:

Eric L. Cramer
BERGER MONTAGUE PC
1818 Market St., Suite 3600
Philadelphia, PA 19103
ecramer@bm.net

Benjamin Brown
COHEN MILSTEIN SELLERS
 & TOLL PLLC
1100 New York Ave., N.W., Suite 500
East Tower
Washington, DC 20005
bbrown@cohenmilstein.com

Joseph R. Saveri
JOSEPH SAVERI LAW FIRM, LLP
601 California St., Suite 1505
San Francisco, CA 94108
jsaveri@saverilawfirm.com

Robert C. Maysey

WARNER ANGLE HALLAM JACKSON
 & FORMANEK PLC
2555 E. Camelback Road, Suite 800
Phoenix, AZ 85016
rmaysey@warnerangle.com

If directed to Defendant, to:

William A. Isaacson
Jessica Phillips
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
2001 K Street, NW
Washington, DC 20006
wisaacson@paulweiss.com
jphillips@paulweiss.com

Christopher S. Yates
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
chris.yates@lw.com

Brette Tannenbaum
Yotam Barkai
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
btannenbaum@paulweiss.com
ybarkai@paulweiss.com

Sean M. Berkowitz
LATHAM & WATKINS LLP 330
North Wabash Ave, Suite 2800
Chicago, IL 60611
sean.berkowitz@lw.com

Laura R. Washington
LATHAM & WATKINS LLP
10250 Constellation Blvd, Suite 1100
Los Angeles, CA 90067
laura.washington@lw.com

Donald J. Campbell
J. Colby Williams
CAMPBELL & WILLIAMS
700 South 7th Street
Las Vegas, NV 89101
djc@campbellandwilliams.com
jcw@campbellandwilliams.com

David L. Johnson
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
david.johnson@lw.com

21

h.   The Settling Parties agree that any formal written public statement by Representative Plaintiffs or Defendant (or their respective counsel, representatives, agents, or corporate affiliates or parents) concerning this Settlement, including the content of all website postings and formal written communications to public-facing third parties, must be mutually agreed upon in advance. The Settling Parties shall use best efforts to give each other at least two (2) business days' notice of any such draft formal written public statement, and work in good faith to incorporate any comments from the other before publishing it. In the event such prior notice is not practicable, the Settling Party shall contact the other Settling Party's designee as early as possible regarding the formal written public statement and shall rely upon previously agreed-upon materials to the extent practicable. This provision (1) shall not prevent Plaintiffs or Defendant (and/or its corporate affiliates or parents) from answering questions from the press or Class Members truthfully about the Settlement; and (2) shall expire two months after the Court's order finally approving the Settlement or if the Settlement is terminated by its terms. Defendant (and/or its corporate affiliates or parents) shall be entitled to make such disclosures to its/their investors, employees, auditors, and regulatory bodies of this Agreement as it/they, in its/their sole discretion, determines are appropriate, including related press releases that may be issued in conjunction with any such disclosures. Nothing in this paragraph shall limit the communications Defendant (and/or its corporate affiliates or parents) may have with third parties regarding the operations of its/their businesses under the terms of this Settlement Agreement. This provision does not apply to statements made in judicial filings necessary to obtain preliminary Court approval of the Settlement or effectuate the Notice Plan approved by the Court.

i.   Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, the Settlement subject to Court approval, on behalf of the indicated parties.

DATED: September 26, 2024

SETTLEMENT AGREEMENT

By: _____
William A. Isaacson

By: _____
Eric L. Cramer

William A. Isaacson (Pro hac vice)
Jessica Phillips (Pro hac vice)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006
Telephone: +1 (202) 223-7300
Email: wisaacson@paulweiss.com
Email: jphillips@paulweiss.com

Brette M. Tannenbaum (Pro hac vice)
Yotam Barkai (Pro hac vice)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
Telephone: +1 (212) 373-3000
Email: btannenbaum@paulweiss.com
Email: ybarkai@paulweiss.com

Donald J. Campbell (No. 1216)
J. Colby Williams (No. 5549)
CAMPBELL & WILLIAMS
700 South 7th Street
Las Vegas, Nevada 89101
Telephone: +1 (702) 382-5222
Email: djc@campbellandwilliams.com
Email: jcw@campbellandwilliams.com

Christopher S. Yates (Pro hac vice)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: +1 (415) 395-8095
Email: chris.yates@lw.com

Sean M. Berkowitz (Pro hac vice)
LATHAM & WATKINS LLP
330 North Wabash Ave, Suite 2800
Chicago, IL 60611
Telephone: +1 (312) 876-7700
Email: sean.berkowitz@lw.com

Eric L. Cramer (pro hac vice)
Michael Dell'Angelo (pro hac vice)
Ellen T. Noteware (pro hac vice)
Patrick F. Madden (pro hac vice)
Najah Jacobs (pro hac vice)
BERGER MONTAGUE PC
1818 Market St., Suite 3600
Philadelphia, PA 19103
Telephone: +1 (215) 875-3000
Email: ecramer@bm.net
Email: mdellangelo@bm.net
Email: enoteware@bm.net
Email: pmadden@bm.net
Email: njacobs@bm.net

Joshua P. Davis (pro hac vice)
BERGER MONTAGUE PC
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Telephone: +1 (415) 906-0684
Email: jdavis@bm.net

Richard A. Koffman (pro hac vice)
Benjamin Brown (pro hac vice)
Daniel Silverman (pro hac vice)
Daniel L. Gifford (pro hac vice)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave., N.W., Suite 500 East, Tower
Washington, DC 20005
Telephone: +1 (202) 408-4600
Facsimile: +1 (202) 408-4699
Email: rkoffman@cohenmilstein.com
Email: bbrown@cohenmilstein.com
Email: dsilverman@cohenmilstein.com
Email: dgifford@cohenmilstein.com

Joseph R. Saveri (pro hac vice)
Kevin E. Rayhill (pro hac vice)
Christopher Young (pro hac vice)

23

Laura Washington (Pro hac vice)
LATHAM & WATKINS LLP
10250 Constellation Blvd, Suite 1100
Los Angeles, CA 90067
Telephone: +1 (424) 653-5500
Email: laura.washington@lw.com

David L. Johnson (Pro hac vice)
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone: +1 (202) 637-2200
Email: david.johnson@lw.com

*Attorneys for Defendant Zuffa, LLC*

Itak Moradi (pro hac vice)
JOSEPH SAVERI LAW FIRM, LLP
601 California St., Suite 1505
San Francisco, CA 94108
Telephone: +1 (415) 500-6800
Facsimile: +1 (415) 395-9940
Email: jsaveri@saverilawfirm.com
Email: krayhill@saverilawfirm.com
Email: cyoung@saverilawfirm.com
Email: imoradi@saverilawfirm.com

*Co-Lead Counsel for the Class and Attorneys for Individual and Representative Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and  Kyle Kingsbury*

Don Springmeyer (Bar No. 1021)
KEMP JONES, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
Telephone: + 1 (702) 385-6000
Facsimile: + 1 (702) 385-6001
Email: dspringmeyer@kempjones.com

*Liaison Counsel for the Class and Attorneys for Individual and Representative Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury*

Robert C. Maysey (pro hac vice)
WARNER ANGLE HALLAM JACKSON
& FORMANEK PLC
2555 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Telephone: +1 (602) 264-7101
Facsimile: +1 (602) 234-0419
Email: rmaysey@warnerangle.com
Email: jelwell@warnerangle.com

Crane M. Pomerantz
CLARK HILL PLC
1700 Pavilion Center Dr.
Suite 500
Las Vegas, NV 89135
Telephone: +1 (702) 697-7545
Email: cpomerantz@clarkhill.com

**SETTLEMENT AGREEMENT**

*Settlement Class Counsel for the Class and Attorneys for Individual and Representative Plaintiffs Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury*

**SETTLEMENT AGREEMENT**

# EXHIBIT A

## CUSTODIAN/ESCROW AGREEMENT

This Custodian/Escrow Agreement dated September 26, 2024, is made among Berger Montague PC, Cohen Milstein Sellers & Toll PLLC, and Joseph Saveri Law Firm, LLP ("Co-Lead Class Counsel"), and **THE HUNTINGTON NATIONAL BANK**, as Custodian/Escrow agent ("Custodian/Escrow Agent").

<u>Recitals</u>

A.      This Custodian/Escrow Agreement governs the deposit, investment and disbursement of the settlement funds that, pursuant to the Settlement (the "Settlement Agreement"), dated September 26, 2024, attached hereto as Exhibit A, entered into by, among others, Co-Lead Class Counsel, on behalf of the Plaintiffs and the Class, will be paid to settle the class action captioned *Le, et al. v. Zuffa, LLC*, No. 2:15-cv-1045 (D. Nev.) (the "Action"), pending in the United States District Court for the District of Nevada (the "Court").

B.      Pursuant to the terms of the Settlement Agreement, Defendant has agreed to pay or cause to be paid the total amount of $375 million in cash ("Defendant's Payment") in settlement of the claims Plaintiffs brought against Defendant in the Action.

C.      Defendant's Payment and any interest accrued thereon (the "*Le v. Zuffa* Settlement Fund"), is to be deposited into the "Custodian/Escrow Account" and used to satisfy payments to authorized claimants to the *Le v. Zuffa* Settlement Fund, payments for any Fee and Expense Award, payments for tax liabilities, and other costs or awards pursuant to the terms of the Settlement Agreement or as ordered by the Court.

D.      Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Settlement Agreement.

**<u>Agreement</u>**

1.      <u>Appointment of Custodian/Escrow Agent</u>. The Custodian/Escrow Agent is hereby appointed to receive and deposit the Defendant's Payment and disburse the *Le v. Zuffa* Settlement Fund upon the terms and conditions provided in this Custodian/Escrow Agreement, the Settlement Agreement and any other exhibits or schedules later annexed hereto and made a part hereof.

2.      <u>The Custodian/Escrow Account</u>. The Custodian/Escrow Agent shall establish and maintain one or more Custodian/Escrow accounts titled as "UFC Antitrust Settlement Escrow Account – *Le v. Zuffa* Settlement Fund" (the "Custodian/Escrow Account"). Pursuant to the Settlement Agreement, Defendant shall cause the Defendant's Payment to be deposited into the Custodian/Escrow Account pursuant to the following payment schedule:

     i.   $125 million of Defendant's Payment will be paid into an interest-bearing escrow account for the benefit of the Class three (3) business days after entry of the Court's Order Preliminarily approving the Settlement;

    ii.   $125 million of Defendant's Payment will be paid into an interest-bearing escrow account for the benefit of the Class three (3) business days after the Court's Order finally approving the Settlement

   iii.   $125 million of Defendant's Payment will be paid into an interest-bearing escrow account for the benefit of the Class no later than June 30, 2025.

Custodian/Escrow Agent shall receive Defendant's Payment into the Custodian/Escrow Account. The *Le v. Zuffa* Settlement Fund shall be held and invested on the terms and subject to the limitations set forth herein and shall be released by Custodian/Escrow Agent in accordance with the terms and conditions hereinafter set forth and set forth in the Settlement Agreement and in orders of the Court approving the disbursement of the *Le v. Zuffa* Settlement Fund.

3.    <u>Investment of the *Le v. Zuffa* Settlement Fund</u>. At the written direction of Co-Lead Class Counsel, Custodian/Escrow Agent shall invest the *Le v. Zuffa* Settlement Fund exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC") or (b) secured by instruments backed by the full faith and credit of the United States Government. Defendant shall not bear any responsibility for or liability related to the investment of the *Le v. Zuffa* Settlement Fund by the Custodian/Escrow Agent.

4.    <u>Custodian/Escrow Funds Subject to Jurisdiction of the Court</u>. The *Le v. Zuffa* Settlement Fund shall remain subject to the jurisdiction of the Court until such time as the *Le v. Zuffa* Settlement Fund shall be distributed, pursuant to the Settlement Agreement and on further order(s) of the Court.

5.    <u>Tax Treatment & Report</u>. The *Le v. Zuffa* Settlement Fund shall be treated at all times as a "Qualified Settlement Fund" within the meaning of Treasury Regulation §1.468B-1. Co-Lead Class Counsel and, as required by law, Defendant, shall jointly and timely make such elections as necessary or advisable to fulfill the requirements of such Treasury Regulation, including the "relation-back election" under Treas. Reg. § 1.468B-1(j)(2) if necessary to the earliest permitted date. For purposes of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" of the *Le v. Zuffa* Settlement Fund shall be Co-Lead Class Counsel. Co-Lead Class Counsel shall timely and properly prepare, deliver to all necessary parties for signature, and file all necessary documentation for any elections required under Treas. Reg. §1.468B-1. Co-Lead Class Counsel shall timely and properly prepare and file any informational and other tax returns necessary or advisable with respect to the *Le v. Zuffa* Settlement Fund and the distributions and payments therefrom including without limitation the returns described in Treas. Reg. §1.468B-2(k), and to the extent applicable Treas. Reg. §1.468B-2(1).

6.      Tax Payments of the *Le v. Zuffa* Settlement Fund. All Taxes with respect to the *Le v. Zuffa* Settlement Fund, as more fully described in the Settlement Agreement, shall be treated as and considered to be a cost of administration of the *Le v. Zuffa* Settlement Fund and the Custodian/Escrow Agent shall timely pay such Taxes out of the *Le v. Zuffa* Settlement Fund without prior order of the Court, as directed by Co-Lead Class Counsel. Co-Lead Class Counsel shall be responsible for the timely and proper preparation and delivery of any necessary documentation for signature by all necessary parties, and the timely filing of all tax returns and other tax reports required by law. Co-Lead Class Counsel may engage an accounting firm or tax preparer to assist in the preparation of any tax reports or the calculation of any tax payments due as set forth in Sections 5 and 6, and the expense of such assistance shall be paid from the *Le v. Zuffa* Settlement Fund by the Custodian/Escrow Agent at Co-Lead Class Counsel's direction. The *Le v. Zuffa* Settlement Fund shall indemnify and hold Defendant harmless for any taxes that may be deemed to be payable by Defendant by reason of the income earned on the *Le v. Zuffa* Settlement Fund, and Custodian/Escrow Agent, as directed by Co-Lead Class Counsel, shall establish such reserves as are necessary to cover the tax liabilities of the *Le v. Zuffa* Settlement Fund and the indemnification obligations imposed by this paragraph. If the *Le v. Zuffa* Settlement Fund is returned to Defendant pursuant to the terms of the Settlement Agreement, Defendant shall provide Custodian/Escrow Agent with a properly completed Form W-9.

7.      Disbursement Instructions

(a)      Co-Lead Class Counsel may, without further order of the Court or authorization by the Defendant's Counsel, instruct Custodian/Escrow Agent to disburse the funds necessary to pay Notice Expenses.

(b)      Disbursements other than those described in paragraph 7(a), including disbursements for distribution of *Le v. Zuffa* Settlement Fund, must be authorized by either (i) an order of the Court, or (ii) the written direction of Co-Lead Class Counsel Eric L. Cramer or Michael Dell'Angelo of Berger Montague PC, Benjamin Brown of Cohen Milstein Sellers & Toll PLLC, or Joseph Saveri of Joseph Saveri Law Firm, LLP.

(c)      In the event funds transfer instructions are given (other than in writing at the time of execution of this Agreement), whether in writing, by facsimile, e-mail, telecopier or otherwise, Custodian/Escrow Agent will seek confirmation of such instructions by telephone call back when new wire instructions are established to the person or persons designated in subparagraphs (a) and (b) above only if it is reasonably necessary, and Custodian/Escrow Agent may rely upon the confirmations of anyone purporting to be the person or persons so designated. It will not be reasonably necessary to seek confirmation if Custodian/Escrow Agent receives written letters authorizing a disbursement from each of the law firms required in subparagraphs (a) and (b), as applicable, on their letterhead and signed by one of the persons designated in subparagraphs (a) and (b). To assure accuracy of the instructions it receives, Custodian/Escrow Agent may record such call backs. If Custodian/Escrow Agent is unable to verify the instructions, or is not satisfied with the verification it receives, it shall not execute the instruction until all issues have been resolved. The persons and telephone numbers for call

backs may be validly changed only in a writing that (i) is signed by the party changing its notice designations, and (ii) is received and acknowledged by Custodian/Escrow Agent. Co-Lead Class Counsel will notify Custodian/Escrow Agent of any errors, delays, or other problems within 30 days after receiving notification that a transaction has been executed. If it is determined that the transaction was delayed or erroneously executed as a result of Custodian/Escrow Agent's error, Custodian/Escrow Agent's sole obligation is to pay or refund the amount of such error and any amounts as may be required by applicable law. Any claim for interest payable will be at the then-published rate for United States Treasury Bills having a maturity of 91 days.

(d)     The Custodian/Escrow Agent shall not be liable for any losses, costs or expenses arising directly or indirectly from the Custodian/Escrow Agent's reliance upon and compliance with such instructions notwithstanding such instructions conflict or are inconsistent with a subsequent written instruction. The party providing electronic instructions agrees; (i) to assume all risks arising out of the use of such electronic methods to submit instructions and directions to the Custodian/Escrow Agent, including, without limitation, the risk of the Custodian/Escrow Agent acting on unauthorized instructions, and the risk or interception and misuse by third parties; (ii) that it is fully informed of the protections and risks associated with the various methods of transmitting instructions to the Custodian/Escrow Agent and that there may be more secure methods of transmitting instructions than the method(s) selected by the Custodian/Escrow Agent; and (iii) that the security procedures (if any) to be followed in connection with its transmission of instructions provide to it a commercially reasonable degree of protection in light of its particular needs and circumstances.

8.     <u>Termination of Settlement</u>. If the Settlement Agreement terminates in accordance with its terms, Co-Lead Class Counsel shall notify Custodian/Escrow Agent of the termination of the Settlement Agreement. Upon such notification, the balance of the *Le v. Zuffa* Settlement Fund, together with any interest earned thereon, less any Notice Expenses paid and actually incurred in accordance with the terms of the Settlement Agreement but not yet paid, and any unpaid Taxes due, as determined by Co-Lead Class Counsel and Defendant, shall be returned to Defendant in accordance with instruction from the Co-Lead Class Counsel.

9.     <u>Fees</u>. The Custodian/Escrow Agent shall be entitled to compensation for its services as stated in the fee schedule attached as Exhibit B. All fees and expenses of Custodian/Escrow Agent shall be paid solely from the *Le v. Zuffa* Settlement Fund. The Custodian/Escrow Agent may pay itself such fees from the *Le v. Zuffa* Settlement Fund only after such fees have been approved for payment by Co-Lead Class Counsel. If Custodian/Escrow Agent is asked to provide additional services, such as the preparation and administration of payments to claimants authorized by the Court approved Plan of Allocation, a separate agreement and fee schedule will be entered into.

10.     <u>Duties, Liabilities and Rights of Custodian/Escrow Agent</u>. This Custodian/Escrow Agreement sets forth all of the obligations of Custodian/Escrow Agent, and no additional obligations shall be implied from the terms of this Custodian/Escrow Agreement or any other agreement, instrument or document.

4

(a)     Custodian/Escrow Agent may act in reliance upon any instructions, notice, certification, demand, consent, authorization, receipt, power of attorney or other writing delivered to it by Co-Lead Class Counsel, as provided herein, without being required to determine the authenticity or validity thereof or the correctness of any fact stated therein, the propriety or validity of the service thereof, or the jurisdiction of the court issuing any judgment or order. Custodian/Escrow Agent may act in reliance upon any signature which is reasonably believed by it to be genuine and may assume that such person has been properly authorized to do so.

(b)     Custodian/Escrow Agent may consult with legal counsel of its selection in the event of any dispute or question as to the meaning or construction of any of the provisions hereof or its duties hereunder, and it shall incur no liability and shall be fully protected to the extent Custodian/Escrow Agent acts in accordance with the reasonable opinion and instructions of counsel. Custodian/Escrow Agent shall have the right to reimburse itself for reasonable legal fees and reasonable and necessary disbursements and expenses actually incurred from the Custodian/Escrow Account only (i) upon approval by Co-Lead Class Counsel or (ii) pursuant to an order of the Court.

(c)     The Custodian/Escrow Agent, or any of its affiliates, is authorized to manage, advise, or service any money market mutual funds in which any portion of the *Le v. Zuffa* Settlement Fund may be invested.

(d)     Custodian/Escrow Agent is authorized to hold any treasuries held hereunder in its federal reserve account.

(e)     Custodian/Escrow Agent shall not bear any risks related to the investment of the *Le v. Zuffa* Settlement Fund in accordance with the provisions of paragraph 3 of this Custodian/Escrow Agreement. The Custodian/Escrow Agent will be indemnified by the *Le v. Zuffa* Settlement Fund, and held harmless against, any an all claims, suits, actions, proceedings, investigations, judgments, deficiencies, damages, settlements, liabilities and expenses (including reasonable legal fees and expenses of attorneys chosen by the Custodian/Escrow Agent) as and when incurred, arising out of or based upon any act, omission, alleged act or alleged omission by the Custodian/Escrow Agent or any other cause, in any case in connection with the acceptance of, or performance or non-performance by the Custodian/Escrow Agent of, any of the Custodian/Escrow Agent's duties under this Custodian/Escrow Agreement, except as a result of the Custodian/Escrow Agent's bad faith, willful misconduct or gross negligence.

(f)     Upon distribution of all of the funds in the Custodian/Escrow Account pursuant to the terms of this Custodian/Escrow Agreement and any orders of the Court, Custodian/Escrow Agent shall be relieved of any and all further obligations and released from any and all liability under this Custodian/Escrow Agreement, except as otherwise specifically set forth herein.

(g)     In the event any dispute shall arise between the parties with respect to the disposition or disbursement of any of the assets held hereunder, the Custodian/Escrow Agent shall be permitted to interplead all of the assets held hereunder into a court of competent

5

jurisdiction, and thereafter be fully relieved from any and all liability or obligation with respect to such interpleaded assets. The parties further agree to pursue any redress or recourse in connection with such a dispute, without making the Custodian/Escrow Agent a party to same.

11.     <u>Non-Assignability by Custodian/Escrow Agent</u>. Custodian/Escrow Agent's rights, duties and obligations hereunder may not be assigned or assumed without the written consent of Co-Lead Class Counsel.

12.     <u>Resignation of Custodian/Escrow Agent</u>. Custodian/Escrow Agent may, in its sole discretion, resign and terminate its position hereunder at any time following 120 days prior written notice to the parties to the Custodian/Escrow Agreement herein. On the effective date of such resignation, Custodian/Escrow Agent shall deliver this Custodian/Escrow Agreement together with any and all related instruments or documents and all funds in the Custodian/Escrow Account to the successor Custodian/Escrow Agent, subject to this Custodian/Escrow Agreement. If a successor Custodian/Escrow Agent has not been appointed prior to the expiration of 120 days following the date of the notice of such resignation, then Custodian/Escrow Agent may petition the Court for the appointment of a successor Custodian/Escrow Agent, or other appropriate relief. Any such resulting appointment shall be binding upon all of the parties to this Custodian/Escrow Agreement.

13.     <u>Notices</u>. Notice to the parties hereto shall be in writing and delivered by hand-delivery, facsimile, electronic mail or overnight courier service, addressed as follows:

| | |
|---|---|
| If to Co-Lead Class Counsel: | Eric L. Cramer<br>BERGER MONTAGUE PC<br>1818 Market St., Suite 3600<br>Philadelphia, PA 19103<br>Telephone: (215) 875-3009<br>ecramer@bm.net |
| | Benjamin Brown<br>COHEN MILSTEIN SELLERS & TOLL PLLC<br>1100 New York Ave., N.W., Suite 500 East, Tower<br>Washington, DC 20005<br>Telephone: (202) 408-4600<br>bbrown@cohenmilstein.com |
| | Joseph R. Saveri<br>JOSEPH SAVERI LAW FIRM, LLP<br>601 California St., Suite 1505<br>San Francisco, CA 94108<br>Telephone: (415) 500-6800<br>jsaveri@saverilawfirm.com |

If to Custodian/Escrow
Agent:

THE HUNTINGTON NATIONAL BANK
Liz Lambert, Senior Managing Director
National Settlement Team
650 E. Swedesford Road, Suite 310
Wayne, PA 19087-1610
Telephone: (215) 756-1962
E-mail: liz.lambert@huntington.com


Susan Brizendine, Trust Officer
Huntington National Bank
7 Easton Oval – EA5W63
Columbus, Ohio 43219
Telephone: (614) 331-9804
E-mail: susan.brizendine@huntington.com


14.     Patriot Act Warranties. Section 326 of the USA Patriot Act (Title III of Pub. L. 107-56), as amended, modified or supplemented from time to time (the "Patriot Act"), requires financial institutions to obtain, verify and record information that identifies each person or legal entity that opens an account (the "Identification Information"). The parties to this Custodian/Escrow Agreement agree that they will provide the Custodian/Escrow Agent with such Identification Information as the Custodian/Escrow Agent may request in order for the Custodian/Escrow Agent to satisfy the requirements of the Patriot Act.

15.     Entire Agreement. This Custodian/Escrow Agreement, including all Schedules and Exhibits hereto, constitutes the entire agreement and understanding of the parties hereto. Any modification of this Custodian/Escrow Agreement or any additional obligations assumed by any party hereto shall be binding only if evidenced by a writing signed by each of the parties hereto. To the extent this Custodian/Escrow Agreement conflicts in any way with the Settlement Agreement, the provisions of the Settlement Agreement shall govern.

16.     Governing Law. This Custodian/Escrow Agreement shall be governed by the law of the State of Ohio in all respects. The parties hereto submit to the jurisdiction of the Court, in connection with any proceedings commenced regarding this Custodian/Escrow Agreement, including, but not limited to, any interpleader proceeding or proceeding Custodian/Escrow Agent may commence pursuant to this Custodian/Escrow Agreement for the appointment of a successor Custodian/Escrow agent, and all parties hereto submit to the jurisdiction of such Court for the determination of all issues in such proceedings, without regard to any principles of conflicts of laws, and irrevocably waive any objection to venue or inconvenient forum.

17.     Termination of Custodian/Escrow Account. The Custodian/Escrow Account will terminate after all funds deposited in it, together with all interest earned thereon, are disbursed in

accordance with the provisions of the Settlement Agreement and this Custodian/Escrow Agreement.

18.     <u>Miscellaneous Provisions</u>.

(a)     <u>Counterparts</u>. This Custodian/Escrow Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Custodian/Escrow Agreement.

(b)     <u>Further Cooperation</u>. The parties hereto agree to do such further acts and things and to execute and deliver such other documents as Custodian/Escrow Agent may request from time to time in connection with the administration, maintenance, enforcement or adjudication of this Custodian/Escrow Agreement in order (a) to give Custodian/Escrow Agent confirmation and assurance of Custodian/Escrow Agent's rights, powers, privileges, remedies and interests under this Agreement and applicable law, (b) to better enable Custodian/Escrow Agent to exercise any such right, power, privilege or remedy, or (c) to otherwise effectuate the purpose and the terms and provisions of this Custodian/Escrow Agreement, each in such form and substance as may be acceptable to Custodian/Escrow Agent.

(c)     <u>Electronic Signatures</u>. The parties agree that the electronic signature (provided by the electronic signing service DocuSign initiated by the Custodian/Escrow Agent) of a party to this Custodian/Escrow Agreement shall be as valid as an original signature of such party and shall be effective to bind such party to this Custodian/Escrow Agreement. The parties agree that any electronically signed document shall be deemed (i) to be "written" or "in writing," (ii) to have been signed, and (iii) to constitute a record established and maintained in the ordinary course of business and an original written record when printed from electronic files.

(d)     <u>Non-Waiver</u>. The failure of any of the parties hereto to enforce any provision hereof on any occasion shall not be deemed to be a waiver of any preceding or succeeding breach of such provision or any other provision.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first above written.

THE HUNTINGTON NATIONAL BANK, as Custodian/Escrow Agent

By: _____
        Liz Lambert, Senior Managing Director

Co-Lead Class Counsel

By: _____
      Eric L. Cramer, Chairman
      Berger Montague PC

By: _____
      Benjamin Brown, Managing Partner
      Cohen Milstein Sellers & Toll PLLC

By: _____
      Joseph R. Saveri, Managing Partner
      Joseph Saveri Law Firm, LLP

Co-Lead Class Counsel

By: _____

       Eric L. Cramer, Chairman
       Berger Montague PC


By: _____

       Benjamin Brown, Managing Partner
       Cohen Milstein Sellers & Toll PLLC


By: _____

       Joseph R. Saveri, Managing Partner
       Joseph Saveri Law Firm, LLP

9

Co-Lead Class Counsel

By: _____
       Eric L. Cramer, Chairman
       Berger Montague PC


By: _____
       Benjamin Brown, Managing Partner
       Cohen Milstein Sellers & Toll PLLC


By: _____
       Joseph R. Saveri, Managing Partner
       Joseph Saveri Law Firm, LLP

**Exhibit A**

**Settlement Agreement**

**Exhibit B**

**Fees of Custodian/Escrow Agent**

**Acceptance Fee:**                                                    **Waived**

The Acceptance Fee includes the review of the Custodian/Escrow
Agreement, acceptance of the role as Custodian/Escrow Agent,
establishment of Custodian/Escrow Account(s), and receipt of funds.

**Annual Administration Fee:**                                        **Waived**

The Annual Administration Fee includes the performance of
administrative duties associated with the Custodian/Escrow
Account including daily account management, generation of
account statements to appropriate parties, and disbursement of
funds in accordance with the Custodian/Escrow Agreement.
Administration Fees are payable annually in advance without
proration for partial years.

**Out of Pocket Expenses:**                                           **Waived**

Out of pocket expenses include postage, courier, overnight mail,
wire transfer, and travel fees.