# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT NEVADA

CUNG LE, NATHAN QUARRY, JON FITCH, BRANDON VERA, LUIS JAVIER VAZQUEZ, and KYLE KINGSBURY, On Behalf of Themselves and All Others Similarly Situated,

Plaintiffs,

v.

ZUFFA, LLC, D/B/A ULTIMATE FIGHTING CHAMPIONSHIP and UFC,

Defendant.

Case No. 2:15-cv-01045-RFB-BNW

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, FOR REIMBURSEMENT OF EXPENSES, AND FOR SERVICE AWARDS FOR THE CLASS REPRESENTATIVES**

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................ 1

II.     SUMMARY OF CLASS COUNSEL'S LITIGATION EFFORTS ................................ 6

     A.    Investigation and Filing of the Action .................................................. 6

     B.    Motions to Transfer and Dismiss ........................................................ 6

     C.    Fact Discovery ..................................................................................... 7

     D.    Expert Discovery .................................................................................. 7

     E.    Class Certification and *Daubert* Proceedings .................................... 7

     F.    Zuffa's Motions for Summary Judgment .............................................. 8

     G.    Pre-Trial Proceedings .......................................................................... 9

     H.    Prior Settlement and Return to Trial Preparation ................................ 9

     I.     The Settlement ................................................................................... 10

III.    THE REQUESTED ATTORNEYS' FEES ARE APPROPRIATE AND
      REASONABLE ..................................................................................... 11

     A.    The Settlement Creates a Common Fund from Which Percentage-of-the-Fund
          Is the Appropriate Method for Awarding Attorneys' Fees ................................. 12

          1.    Counsel Obtained an Exceptional Result for the Class ............... 13

          2.    The Action Involved Significant Risks. ...................................... 14

          3.    Prosecuting the Contested Issues in This Action Required
               Experienced Counsel ................................................................. 15

          4.    Class Counsel Litigated This Complex Action on a
               Contingent Basis. ..................................................................... 16

          5.    Class Counsel Undertook Significant Financial and Resource
               Burdens in Prosecuting the Action ............................................ 16

          6.    Awards in Similar Complex Antitrust Cases Demonstrate That
               Class Counsel Seek a Reasonable Fee Award. ........................... 17

     B.    The Lodestar Cross-Check Confirms That Class Counsel's
          Request Is Reasonable ........................................................................ 19

IV.    CLASS COUNSEL'S REQUEST FOR REIMBURSEMENT OF LITIGATION
       EXPENSES IS REASONABLE ........................................................................................21

V.     THE COURT SHOULD GRANT SERVICE AWARDS TO THE FIVE CLASS
       REPRESENTATIVES FOR THEIR SUBSTANTIAL CONTRIBUTIONS.................22

VI.    CONCLUSION ............................................................................................................24

ii

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, FOR
REIMBURSEMENT OF EXPENSES, FOR AND SERVICE AWARDS FOR THE CLASS REPRESENTATIVES

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allapattah Servs., Inc. v. Exxon Corp.*,
  454 F. Supp. 2d 1185 (S.D. Fla. 2006) ................................................................. 24

*Andrews v. Plains All Am. Pipeline L.P.*,
  No. 15-cv-4113, 2022 WL 4453864 (C.D. Cal. Sept. 20, 2022) ....................... 22

*Baker v. SeaWorld Ent., Inc.*,
  No. 14-cv-2129, 2020 WL 4260712 (S.D. Cal. July 24, 2020) ......................... 22

*Barbosa v. Cargill Meat Sols. Corp.*,
  297 F.R.D. 431 (E.D. Cal. 2013) ............................................................... 13, 16

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ........................................................................................ 11

*Chen-Oster v. Goldman Sachs & Co.*,
  No. 10-cv-6950, 2023 WL 7325264 (S.D.N.Y. Nov. 7, 2023) ......................... 24

*Cimarron Pipeline Constr., Inc. v. Nat'l Council on Comp. Ins.*,
  No. 89-cv-1186, 1993 WL 355466 (W.D. Okla. June 8, 1993) ......................... 18

*Cook v. Niedert*,
  142 F.3d 1004 (7th Cir. 1998) ......................................................................... 23

*Corzo v. Brown Univ.*,
  No. 22-cv-0125, 2024 WL 3506498 (N.D. Ill. July 20, 2024) ......................... 17

*Covillo v. Specialtys Café*,
  No. 11-cv-0594, 2014 WL 954516 (N.D. Cal. Mar. 6, 2014) ......................... 19

*Craft v. Cnty. of San Bernardino*,
  624 F. Supp. 2d 1113 (C.D. Cal. 2008) ........................................................... 21

*Durant v. Traditional Invs., Ltd.*,
  No. 88-cv-9048, 1992 WL 203870 (S.D.N.Y. Aug.12, 1992) ......................... 18

*Fernandez v. Victoria Secret Stores, LLC*,
  No. 06-cv-4149, 2008 WL 8150856 (C.D. Cal. July 21, 2008) ......................... 19

*First Impressions Salon, et al. v. Nat'l Milk Prod., et al.*,
  No. 13-cv-0454, ECF No. 540 (S.D. Ill. Apr. 27, 2020) ................................. 17

*Fischel v. Equitable Life Assur. Soc'y of U.S.*,
  307 F.3d 997 (9th Cir. 2002) ........................................................................... 20

*Flournoy v. Honeywell Int'l, Inc.*,
  No. 05-cv-0184, 2007 WL 1087279 (S.D. Ga. Apr. 6, 2007) ......................... 18

*Fusion Elite All Stars v. Varsity Brands, LLC*,
  No. 20-cv-2600, 2023 WL 6466398 (W.D. Tenn. Oct. 4, 2023) ..................... 17

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) ............................................................................... 21

iii

*Hefler v. Pekoc,*
    802 F. App'x 285 (9th Cir. 2020) .................................................................................... 20

*Hefler v. Wells Fargo & Co.,*
    No. 16-cv-5479, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ....................................... 20

*In re Activision Securities Litig.,*
    723 F. Supp. 1373 (N.D. Cal. 1989) ................................................................................. 18

*In re Am. Apparel, Inc. S'holder Litig.,*
    No. 10-cv-6352, 2014 WL 10212865 (C.D. Cal. July 28, 2014) ...................................... 19

*In re Anthem, Inc. Data Breach Litig.,*
    No. 15-md-2617, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ...................................... 12

*In re Bluetooth Headset Prods. Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2011) ............................................................................... 12, 13, 19

*In re Broiler Chicken Antitrust Litig.,*
    No. 16-cv-8637, 2021 WL 5709250 (N.D. Ill. Dec. 1, 2021) .......................................... 18

*In re Capacitors Antitrust Litig.,*
    No. 14-cv-03264, 2023 WL 2396782 (N.D. Cal. Mar. 3, 2023) ............................ 17, 18, 20

*In re Celebrex (Celecoxib) Antitrust Litig.,*
    No. 14-cv-0361, 2018 WL 2382091 (E.D. Va. Apr. 18, 2018) ........................................ 17

*In re Credit Default Swaps Antitrust Litig.,*
    No. 13-md-2476, 2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016) ...................................... 16

*In re Dairy Farmers of Am., Inc.,*
    80 F. Supp. 3d 838 (N.D. Ill. 2015) ................................................................................. 18

*In re Facebook Biometric Info. Priv. Litig.,*
    522 F. Supp. 3d 617 (N.D. Cal. 2021) ............................................................................. 23

*In re Flonase Antitrust Litig.,*
    951 F. Supp. 2d 739 (E.D. Pa. 2013) .......................................................................... 18, 21

*In re High-Tech Emp. Antitrust Litig.,*
    No. 11-cv-2509, 2015 WL 5158730 (N.D. Cal. Sep. 2, 2015) ........................................ 24

*In re High-Tech Emp. Antitrust Litig.,*
    No. 11-cv-2509, 2015 WL 5159441 (N.D. Cal. Sept. 2, 2015) ....................................... 14

*In re Ikon Off. Sols., Inc. Sec. Litig.,*
    194 F.R.D. 166 (E.D. Pa. 2000) ....................................................................................... 18

*In re Korean Air Lines Co. Antitrust Litig.,*
    No. 07-cv-5107, 2013 WL 7985367 (C.D. Cal. Dec. 23, 2013) ...................................... 12

*In re Lidoderm Antitrust Litig.,*
    No. 14-md-2521, 2018 WL 4620695 (N.D. Cal. Sep. 20, 2018) ................................ 17, 21

*In re Linerboard Antitrust Litig.,*
    No. 98-cv-5055, 2004 WL 1221350 (E.D. Pa. June 2, 2004) .......................................... 23

*In re Lithium Ion Batteries Antitrust Litig.,*
    No. 13-md-2420, 2018 WL 3064391 (N.D. Cal. May 16, 2018) ..................................... 12

iv

*In re Lithium Ion Batteries Antitrust Litig.*,
No. 13-md-2420, 2020 WL 7264559 (N.D. Cal. Dec. 10, 2020) ............................ 14

*In re Lithium Ion Batteries Antitrust Litig.*,
No. 21-cv-15120, 2022 WL 16959377 (9th Cir. Nov. 16, 2022) ............................ 14

*In re Lithotripsy Antitrust Litig.*,
No. 98-cv-8394, 2000 WL 765086 (N.D. Ill. June 12, 2000) ............................ 18

*In re Loestrin 24 Fe Antitrust Litig.*,
No. 13-md-2472, 2020 WL 5203323 (D.R.I. Sept. 1, 2020)............................ 17

*In re Lorazepam & Clorazepate Antitrust Litig.*,
No. 99-mc-0276, 2003 WL 22037741 (D.D.C. June 16, 2003) ............................ 21

*In re Media Vision Tech. Secs. Litig.*,
913 F. Supp. 1362 (N.D. Cal. 1996)............................ 22

*In re Neurontin Antitrust Litig.*,
No. 02-cv-1830, 2014 WL 12962880 (D.N.J. Aug. 6, 2014) ............................ 18

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................ 13

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ............................ 13, 23, 24

*In re Opana ER Antitrust Litig.*,
No. 14-cv-10150, ECF No. 1085 (N.D. Ill. Nov. 3, 2022) ............................ 14, 17

*In re Orthopedic Bone Screw Products Liability Litigation*,
No. 10-md-1014, 2000 WL 1622741 (E.D. Pa. Oct. 23, 2000)............................ 18

*In re Packaged Ice Antitrust Litig.*,
No. 08-md-1952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ............................ 14

*In re Polyurethane Foam Antitrust Litig.*,
No. 10-md-2196, 2015 WL 1639269 (N.D. Ohio Feb. 26, 2015) ............................ 17

*In re Prograf Antitrust Litig.*,
No. 11-md-2242, 2015 WL 13908415 (D. Mass. May 20, 2015) ............................ 17

*In re Relafen Antitrust Litig.*,
No. 01-cv-12239, ECF No. 297 (D. Mass. Apr. 9, 2004)............................ 18

*In re Remeron Direct Purchaser Antitrust Litig.*,
No. 03-cv-0085, 2005 WL 3008808 (D.N.J. Nov. 9, 2005) ............................ 18

*In re Southeastern Milk Antitrust Litig.*,
No. 07-cv-0208, 2013 WL 2155387 (E.D. Tenn. May 17, 2013) ............................ 18

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
No. 13-md-2445, 2024 WL 815503 (E.D. Pa. Feb. 27, 2024) ............................ 14, 17

*In re Titanium Dioxide Antitrust Litig.*,
No. 10-cv-0318, 2013 WL 5182093 (D. Md. Sept. 12, 2013)............................ 14

*In re Titanium Dioxide Antitrust Litig.*,
No. 10-cv-0318, 2013 WL 6577029 (D. Md. Dec. 13, 2013) ............................ 18

*In re Tricor Direct Purchaser Antitrust Litig.*,
  No. 05-cv-0340, ECF No. 531 (D. Del. March 9, 2009) ............................................ 18, 21

*In re Tricor Direct Purchaser Antitrust Litig.*,
  No. 05-cv-0340, ECF No. 543 (D. Del. April 23, 2009) ............................................ 18, 21

*In re Urethane Antitrust Litig.*,
  No. 04-md-1616, 2016 WL 4060156 (D. Kan. July 29, 2016)........................................ 17

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  No. 15-md-2672, 2017 WL 1047834 (N.D. Cal. Mar. 17, 2017)..................................... 20

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ................................................................. 11, 16, 20

*Ingram v. Coca-Cola Co.*,
  200 F.R.D. 685 (N.D. Ga. 2001) ......................................................................... 24

*Jones, et al. v. Varsity Brands, LLC, et al.*,
  No. 20-cv-2892, 2024 WL 5010412 (W.D. Tenn. Dec. 6, 2024)...................................... 17

*Klein av. Bain Capital Partners, LLC*,
  No. 07-cv-12388, ECF No. 1095 (D. Mass. Feb. 2, 2015) ............................................ 18

*Lemus v. H & R Block Enters. LLC*,
  No. 09-cv-3179, 2012 WL 3638550 (N.D. Cal. Aug. 22, 2012)....................................... 24

*Lopez v. Mgmt. & Training Corp.*,
  No. 17-cv-1624, 2020 WL 1911571 (S.D. Cal. Apr. 20, 2020) ................................... 16, 19

*Mathein v. Pier 1 Imports (U.S.), Inc.*,
  No. 16-cv-0087, 2018 WL 1993727 (E.D. Cal. Apr. 27, 2018)....................................... 20

*Mauss v. NuVasive, Inc.*,
  No. 13-cv-2005, 2018 WL 6421623 (S.D. Cal. Dec. 6, 2018) ....................................... 22

*McReynolds v. Merrill Lynch*,
  No. 05-cv-6583, ECF No. 616 (N.D. Ill. Dec. 6, 2013) ............................................... 24

*Meijer, Inc. v. Abbott Labs.*,
  No. 07-cv-5985, 2011 WL 13392313 (N.D. Cal. Aug. 11, 2011)..................................... 17

*Montague v. Dixie Nat. Life Ins. Co.*,
  No. 09-cv-0687, 2011 WL 3626541 (D.S.C. Aug. 17, 2011) ......................................... 18

*Nitsch v. DreamWorks Animation SKG Inc.*,
  No. 14-cv-4062, 2017 WL 2423161 (N.D. Cal. June 5, 2017) ....................................... 21

*Parkinson v. Hyundai Motor Am.*,
  796 F. Supp. 2d 1160 (C.D. Cal. 2010) .................................................................. 20

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989) .............................................................................. 12

*Perez v. Rash Curtis & Assocs.*,
  No. 16-cv-3396, 2021 WL 4503314 (N.D. Cal. Oct. 1, 2021) ....................................... 20

*Pillsbury Co. v. Conboy*,
  459 U.S. 248 (1983)......................................................................................... 11

*Powers v. Eichen,*
  229 F.3d 1249 (9th Cir. 2000) ...................................................................................... 11

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP,*
  No. 97-cv-7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ................................... 18

*Rodriguez v. Nike Retail Servs., Inc.,*
  No. 14-cv-1508, 2022 WL 254349 (N.D. Cal. Jan. 27, 2022) ..................................... 12

*Rodriguez v. West Publishing Corp.,*
  563 F.3d 948 (9th Cir. 2009) ....................................................................................... 22

*Six (6) Mexican Workers v. Ariz. Citrus Growers,*
  904 F.2d 1301 (9th Cir. 1990) ..................................................................................... 12

*Staton v. Boeing Co.,*
  327 F.3d 938 (9th Cir. 2003) ....................................................................................... 23

*Stetson v. Grissom,*
  821 F.3d 1157 (9th Cir. 2016) ..................................................................................... 20

*Sullivan v. DB Invs., Inc.,*
  667 F.3d 273 (3d Cir. 2011) ......................................................................................... 14

*Szymborski v. Ormat Techs., Inc.,*
  No. 10-cv-0132, 2012 WL 4960098 (D. Nev. Oct. 16, 2012) .................................... 12

*Tawfilis v. Allergan, Inc.,*
  No. 15-cv-0307, 2018 WL 4849716 (C.D. Cal. Aug. 27, 2018) ................................. 17

*Taylor v. Shippers Transp. Express, Inc.,*
  No. 13-cv-0209, 2015 WL 12658458 (C.D. Cal. May 14, 2015) ................................ 17

*Temp. Servs., Inc. v. Am. Int'l Grp., Inc.,*
  No. 08-cv-0271, 2012 WL 4061537 (D.S.C. Sept. 14, 2012) ..................................... 18

*Thornberry v. Delta Air Lines, Inc.,*
  676 F.2d 1240 (9th Cir. 1982) ..................................................................................... 22

*Torczyner v. Staples, Inc.,*
  No. 16-cv-2965, 2017 WL 6549937 (S.D. Cal. Aug. 28, 2017) .................................. 16

*Trosper v. Stryker Corp.,*
  No. 13-cv-0607, 2015 WL 5915360 (N.D. Cal. Oct. 9, 2015) .................................... 21

*Van Vranken v. Atl. Richfield Co.,*
  901 F. Supp. 294 (N.D. Cal. 1995) ......................................................................... 12, 21

*Vincent v. Hughes Air W., Inc.,*
  557 F.2d 759 (9th Cir. 1977) ....................................................................................... 22

*Vizcaino v. Microsoft Corp.,*
  290 F.3d 1043 (9th Cir. 2002) ................................................................ 11, 12, 13, 19, 20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
  396 F.3d 96 (2d Cir. 2005) ........................................................................................... 14

*Williams v. Costco Wholesale Corp.,*
  No. 02-cv-2003, 2010 WL 2721452 (S.D. Cal. July 7, 2010) ..................................... 11

**Rules**

Fed. R. Civ. P. 23(f) ........................................................................................................... 8, 15

Fed. R. Civ. P. 23(h) ...................................................................................................... 6, 11, 21

viii

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, FOR
REIMBURSEMENT OF EXPENSES, FOR AND SERVICE AWARDS FOR THE CLASS REPRESENTATIVES

## I.    INTRODUCTION

Co-Lead Class Counsel,[1] together with the assistance of Supporting Counsel,[2] have prosecuted this antitrust class action for more than a decade on a fully contingent basis. Class Counsel have invested nearly 100,000 hours of professional time and over $9.5 million dollars in out-of-pocket costs to get to this point. At the time this case was filed in 2014, there had *never* been a successful antitrust class action brought for a class of workers under Section 2 of the Sherman Act. There was no governmental investigation of the precise antitrust scheme alleged in this case—and indeed the FTC's two investigations of some of key portions of the underlying conduct ended without any enforcement action. The defendant—Zuffa, LLC ("Zuffa" or "Defendant")—was and remains financially powerful and politically connected. Zuffa was, and is, feared both by would-be rivals and most MMA fighters.

But Class Counsel believed in their clients and the righteousness of their cause. Class Counsel were inspired by the fortitude of the named plaintiffs in this litigation: Cung Le, Nathan Quarry, Jon Fitch, Brandon Vera, Luis Javier Vazquez, and Kyle Kingsbury ("Plaintiffs;" Plaintiffs and Zuffa, together, the "Parties"). As discussed in detail in the accompanying joint declaration of Co-Lead Class Counsel, the litigation was hard fought from the filing of the initial complaint (on December 16, 2014), through motions to dismiss, discovery, class certification, *Daubert* briefing, summary judgment, and up to the eve of the first trial date when, in March 2024, the Parties reached an agreement in principle on a proposed class settlement with the assistance of renowned mediator Hon. Layn Phillips (ret.).[3] But, as

---

[1] On July 31, 2015, the Court appointed Berger Montague, Cohen Milstein, and JSLF as Interim Co-Lead Class Counsel, and Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP ("Wolf Rifkin") as Interim Liaison Counsel for the then-proposed class in the Action. *See* ECF No. 140. In the Order certifying the Class, the Court appointed Wolf Rifkin as one of the counsel for the Class. *See* ECF No. 839. The lead lawyer at Wolf Rifkin was Don Springmeyer. Mr. Springmeyer changed law firms as of January 1, 2021, and his new law firm, Kemp Jones, LLP ("Kemp Jones"), took over the role of representing Plaintiffs and the Class. *See* ECF No. 780.

[2] The term "Supporting Counsel" refers to all or some of the following firms: Wolf Rifkin, Kemp Jones, Warner Angle Hallam Jackson & Formanek PLC, Clark Hill PLC, The Radice Law Firm, Spector Roseman Kodroff & Willis, and the Law Office of Frederick S. Schwartz. Co-Lead Class Counsel and Supporting Counsel are collectively referred to as "Class Counsel."

[3] *See generally* Joint Declaration of Eric L. Cramer, Richard A. Koffman, and Joseph R. Saveri in Support of Plaintiffs' Motion for an Award of Attorneys' Fees, for Reimbursement of Expenses, and for Service Awards for the Class Representatives (the "Joint Decl."), dated December 20, 2024, filed concurrently with this motion.

the Court knows, the case did not end there. The Court rejected the Parties' first attempt at resolving

this Action, together with *Johnson, et al. v. Zuffa, LLC, et al.*, No. 2:21-cv-1189 (D. Nev.) (the

"*Johnson* Action"), for $335 million for both cases combined. *See* ECF Nos. 1037, 1038, 1039. The

Parties thus went back to the drawing board, preparing for a newly set trial date (February 3, 2025),

while also continuing to attempt to resolve the case again. The second time proved a charm.

Under the terms of the September 26, 2024 Settlement Agreement,[4] Zuffa has agreed to make

cash payments totaling $375 million for the benefit of the *Le* Class *only*.[5] The Settlement is an

outstanding result that, if approved, would provide immediate and consequential cash relief to the more

than one-thousand members of the *Le* Class. Some key facts are as follows:

- The Settlement does not release any of the claims in the *Johnson* Action, thereby permitting hundreds of members of the *Le* Class, as well as the other members of the proposed *Johnson* class, to obtain more damages and injunctive relief in the ongoing *Johnson* Action.[6]

- The gross Settlement represents nearly 70% of the total compensation the UFC paid to its entire roster of Fighters during the whole *Le* Class Period.

- Under the proposed Plan of Allocation,[7] the anticipated average Class Member recovery is $250,000. Thirty-five Class Members would net over $1 million; nearly 100 Fighters would net over $500,000; more than 200 Fighters would recover over $250,000; over 500 Fighters would net in excess of $100,000.

*See* Joint Decl. ¶2.

There has been an outpouring of support from both Class Members and other members of the

MMA community endorsing the Settlement. *Id.* ¶3; *see also* ECF Nos. 1045, 1047, 1049 (attaching and

---

[4] Citations to the Settlement Agreement will use the format "SA ¶_." Unless otherwise defined herein, all capitalized terms have the same meanings set forth in the Settlement Agreement, attached as Exhibit 1 to the Joint Supplemental Declaration of Eric L. Cramer, Richard Koffman, and Joseph R. Saveri in Support of Plaintiffs' Motion for Preliminary Approval of the Settlement (filed on October 7, 2024). *See* ECF Nos. 1045-2 (the declaration), 1045-4 (the Settlement Agreement).

[5] The Class is defined to include all persons who competed in one or more live professional UFC-promoted MMA bouts taking place or broadcast in the U.S. from December 16, 2010 to June 30, 2017 (the "Class Period"), but excludes all persons who are not residents or citizens of the U.S. unless the UFC paid such persons for competing in a bout fought in the U.S. *See* ECF No. 839, at 79.

[6] The proposed class in the *Johnson* Action is defined as: "All persons who competed in one or more live professional UFC-promoted MMA bouts taking place or broadcast in the United States during the period July 1, 2017 to the present ("Class Period"). The Class excludes all persons who are not residents or citizens of the United States unless the UFC paid such persons for competing in a bout fought or broadcast in the United States." *See* Case No. 21-cv-1189, ECF No. 1, ¶34.

[7] Attached as Exhibit 2 to the Joint Suppl. Decl. (ECF No. 1045-5).

2

discussing the declarations). One-hundred and fifty-four ex-UFC Fighter Class Members, plus a non-Class Member named plaintiff (Quarry) and a non-Class Member Fighter manager, submitted declarations supporting the Settlement. *Id.* Additionally, two of the leading organizations advocating on behalf of MMA Fighters have submitted supporting declarations, stressing the importance of the monetary relief recovered by this Settlement for the Fighters. *Id.* As these declarations make clear, the Settlement, if approved, would have an immediate, substantial, and positive impact on hundreds upon hundreds of Class Members and their families. *Id.*

The Settlement also amounts to a significant share of the total damages computed by Plaintiffs' economists. One of Plaintiffs' economists, Dr. Hal Singer, computed damages to the Class ranging from $811 million to $1.6 billion.[8] The median estimate of Dr. Singer's economic models yielded damages of $894 million. *See* SR1 ¶250 & Table 10. Plaintiffs' other main economic expert, Prof. Andrew Zimbalist, calculated damages of $981.8 million.[9] Given that Prof. Zimbalist's sole estimate aligns with the middle of the range of Dr. Singer's estimates, a reasonable jury that sided with Plaintiffs on every other material issue could well conclude that the damages would be around $900 million. Thus, the $375 million Settlement amounts to more than 40% of the single damages. Joint Decl. ¶4.

The Settlement also represents a precedent-setting result both for the Class and for worker-side antitrust cases generally. Plaintiffs solicited input from a highly regarded expert in the application of antitrust law to labor markets, Prof. Eric Posner of the University of Chicago Law School. *Id.* ¶5. Prof. Posner explained that "antitrust claims against employers for anticompetitive behavior in labor markets are relatively rare and difficult in comparison to other types of antitrust claims, and that labor-side [S]ection 2 claims [of the Sherman Act] of this type have been vanishingly rare. As far as I have discovered in my research, [the *Le* Action] is the first such claim ever to survive summary judgment, reach class certification, or even survive a motion to dismiss."[10]

---

[8] *See* Expert Report of Hal J. Singer, Ph.D., August 31, 2017 ("SR1"), ECF No. 518-3, at ¶252 & Table 11; ¶250 & Table10; ¶248 & Table 9 (Bellator model with $811.2 million single damages).

[9] *See* Expert Report of Andrew Zimbalist in *Cung Le, et al. v. Zuffa, LLC*, August 30, 2017 ("ZR1"), ECF No. 518-5, ¶140(c).

[10] Declaration of Prof. Eric A. Posner in Support of Plaintiffs' Motion for Preliminary Approval of the Settlement ("Posner Decl.") ¶1. *See* ECF No. 1024-5 (filed in support of the Prior Settlement).

3

The result in this case was hard fought. Co-Lead Class Counsel's work on the Action began well in advance of the December 16, 2014 filing of the initial complaint, with an extensive pre-filing investigation without the benefit of government involvement or compulsory process. *Id.* ¶6. Throughout this litigation, Co-Lead Class Counsel have directed and overseen the work of their own attorneys and staff, as well as the attorneys and staff of the Supporting Counsel that assisted in this litigation. Co-Lead Class Counsel have been involved in every aspect of the Action, including investigating, developing, initiating, litigating, and resolving the Action. *Id.* ¶7. Co-Lead Counsel have overseen extensive fact and expert discovery (including both engaging in party negotiations and motion practice to obtain and review more than 750,000 documents comprising more than 3 million pages), and prepared motions and briefing on numerous motions. *See id.* ¶¶7, 31-42.

Co-Lead Class Counsel presided over all aspects of the Settlement negotiations, participated in drafting and editing the term sheet and long-form settlement agreement, developed the class notice and notice plan, developed the allocation plan (in conjunction with consultants and experts), and prepared all of the necessary papers for seeking preliminary approval of the Settlement. *Id.* ¶8. As noted above, the Parties retained renowned mediator, Hon. Layn Phillips, to assist in the resolution of the matter. *Id.* The Parties participated in three full day in-person mediation sessions spread over six years (in 2017, 2019, and 2023), and an all-day mediation session via video conference in August 2024 after the Court denied preliminary approval of the Prior Settlement, as well as numerous follow-up engagements via phone, video conference, and otherwise surrounding each mediation session. *Id.* The Settlement was ultimately reached while Class Counsel were engaged in active trial preparations. *Id.*

In sum, this Action involved substantial risk, including the prospect of a total or partial loss pre-trial, at trial, or on appeal, as well as the risks and significant costs associated with the passage of so much time. Class Counsel filed the Action on a contingency basis, knowing it could take years to prosecute; that it would require millions of dollars in costs, and demand thousands of attorney hours—all with the very real risk of no recovery at all. As shown by the accompanying declarations from each law firm involved, Co-Lead Class Counsel have dedicated substantial time and resources to the prosecution of the *Le* Action, collectively spending a total of 74,640.80 hours of professional time. *Id.* ¶9. Similarly, Supporting Counsel have also dedicated significant time and effort litigating the *Le*

4

Action, collectively spending 23,587.13 hours as well. *Id.* In total, Class Counsel have collectively expended 98,227.93 hours with a total lodestar at current rates of $72,106,244.55 on a fully contingent basis. *Id.* Class Counsel also incurred substantial out-of-pocket costs in the amount of $9,572,685.17. *Id.* ¶¶256-63. The vast majority of these expenses went to Plaintiffs' highly regarded experts and their teams—which included three economic experts and a forensic accounting expert—without whose work these results would not have been possible. *See id.* ¶¶86-129, 259-60. Other essential expenses for the prosecution of the Action included regular e-discovery and data hosting costs, computer research, court reporting and deposition transcripts, subpoena services, mediation costs, travel and accommodations, printing, filing fees, costs associate with trial preparation, and others.

For their work to achieve this remarkable Settlement, Co-Lead Class Counsel respectfully request an award of attorneys' fees and the reimbursement of their reasonable litigation expenses. Co-Lead Class Counsel seek a reasonable fee award of 30.72% of the gross Settlement amount plus interest, *i.e.*, $115.2 million plus accrued interest.[11] Co-Lead Class Counsel also request reimbursement of Class Counsel's litigation expenses in the amount of $9,572,685.17, which were reasonably necessary to advance the interests of the Class and to obtain the favorable result.

Additionally, Co-Lead Class Counsel respectfully request service awards in the amount of $250,000 for each of the five Class Representatives.[12] The Class Representatives (and Plaintiff Quarry) were instrumental to the success of this litigation. They each participated significantly in discovery, working with Class Counsel to produce more than 600,000 documents. *See id.* ¶¶71-74. They also

---

[11] The request for an award of attorneys' fees is based on two computations. The first component is a request of one-third of $301.5 million (or $100.5 million), where the $301.5 million amount corresponds to 90% of $335 million ($335 million x 0.9 = $301.5 million), which is the amount from the Prior Settlement that would have been allocated to the *Le* Class had that settlement been approved. The second component is one-fifth of $73.5 million, which is the amount remaining from the $375 million *Le v. Zuffa* Settlement Fund after subtracting the above $301.5 million. The two computations total $115.2 million: ($301.5 million / 3 = $100.5 million) + ($73.5 million / 5 = $14.7 million) = $115.2 million. As a percentage of the gross $375 million Settlement, the requested fee award represents 30.72% of Settlement amount ($115.2 million / $375 million = 0.3072), which is roughly $10 million less than a request for one-third of the entire settlement amount ($375 million / 3 = $125 million).

[12] For clarity, the *Le* Class Representatives are Cung Le, Jon Fitch, Kyle Kingsbury, Brandon Vera, and Javier Vazquez. Plaintiff Nathan Quarry was proffered as a class representative for the "Identity Rights Class," which the Court did not certify. *See generally* ECF No. 839 at 75-78.

5

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, FOR REIMBURSEMENT OF EXPENSES, FOR AND SERVICE AWARDS FOR THE CLASS REPRESENTATIVES

worked with Class Counsel to develop, write, and review for accuracy their responses to Zuffa's interrogatories. *Id.* ¶75. Each Class Representative worked hard to prepare for and sit for a full-day deposition, which also involved significant travel for some of the Class Representatives (*e.g.*, one resides in Guam). *Id.* ¶¶76-80. The Class Representatives also provided invaluable insights into the workings of the Defendant, participated in monthly conferences with Class Counsel, attended dozens of court hearings, participated in multiple in-person mediation sessions, and worked with Class Counsel to prepare for trial. *See id.* ¶¶81-85.

In short, Co-Lead Class Counsel respectfully submit that the requested attorneys' fees, reimbursement of litigation expenses, and the service awards for the Class Representatives are reasonable and appropriate under Fed. R. Civ. P. 23(h) and applicable law.

## II. SUMMARY OF CLASS COUNSEL'S LITIGATION EFFORTS

### A. Investigation and Filing of the Action

Class Counsel opened investigations into potentially anticompetitive conduct in the Mixed Martial Arts ("MMA") industry well before the December 16, 2014 filing of the first complaint in the Action and without the benefit of a governmental enforcement action. *See* Joint Decl. ¶¶11-12. The pre-complaint investigations undertaken by Class Counsel were extensive, with counsel devoting thousands of hours to developing the case. *Id.* ¶12.

### B. Motions to Transfer and Dismiss

On January 30, 2015, Zuffa moved to transfer the Action from the United States District Court for the Northern District of California (where Plaintiffs had filed and where several resided) to this District, which motion was granted by the transferor court on June 2, 2015. *Id.* ¶16. While that motion was pending, Zuffa moved to dismiss. Class Counsel filed a single consolidated opposition brief to Zuffa's motions, while also negotiating a stipulation to stay discovery pending the resolution of the motions to dismiss and transfer. *Id.* ¶¶16-17. Following transfer, on September 25, 2015, this Court denied Zuffa's motions to dismiss from the bench (ECF No. 186), issuing a written Order on October 19, 2016 (ECF No. 314). *Id.* ¶18. Class Counsel subsequently filed their Consolidated Amended Complaint on December 18, 2015. *Id.* ¶19.

6

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, FOR REIMBURSEMENT OF EXPENSES, FOR AND SERVICE AWARDS FOR THE CLASS REPRESENTATIVES

## C.    Fact Discovery

Fact discovery in the Action was extensive, complex, voluminous, and hotly contested. *See generally id.* ¶¶20-80. Class Counsel worked aggressively to develop the factual record. These discovery efforts included: working to ensure that the UFC and certain third parties preserved relevant electronically stored data and information, *id.* ¶¶24-27; pursuing focused written discovery from Zuffa and third parties (including by litigating the scope of productions and purported work product and privilege claims), *id.* ¶¶28-61; taking nearly 30 depositions of fact witnesses (in addition to seven days of testimony of Zuffa's Rule 30(b)(6) designees), *id.* ¶¶62-65; scouring publicly available sources of relevant information and evidence (including data and videotaped statements of key witnesses in the case), *id.* ¶¶66-70; collecting and reviewing document productions from the Class Representatives and working with them to prepare responses to interrogatories, *id.* ¶¶71-75; and preparing the Class Representatives for their depositions and defending those depositions, *id.* ¶¶76-80.

## D.    Expert Discovery

Class Counsel oversaw an extensive and protracted expert discovery effort. Because Plaintiffs' claims presented important and complex issues involving antitrust law—including substantial foreclosure, common impact, anticompetitive effects, alleged procompetitive justifications, and aggregate damages suffered by the Class—Co-Lead Class Counsel retained three economic experts: Hal J. Singer, Ph.D., Prof. Andrew Zimbalist, and Prof. Alan Manning. *Id.* ¶87. They also retained a forensic accounting expert: Guy Davis. *Id.* ¶88. Class Counsel collectively spent substantial time and effort working with these experts to facilitate their understanding of the case and the record; their preparation of the expert reports (opening reports, rebuttals, and sur-rebuttals); and preparation for their testimony at depositions, at the class certification hearing, and at the anticipated February 2025 trial. *Id.* ¶92; *see also id.* ¶¶86-129 (detailing Class Counsel's work with each expert). In addition, Class Counsel also analyzed the extensive reports produced by Zuffa's five experts, who collectively produced reports totaling 650 pages, and deposed each of Zuffa's experts in 2017. *See id.* ¶¶131-34.

## E.    Class Certification and *Daubert* Proceedings

With the end of fact and expert discovery, on February 16, 2018, Class Counsel prepared a class certification motion, followed by a reply brief that responded to Zuffa's opposition brief arguments on

May 30, 2018. *Id.* ¶¶135-36. On the same day that Plaintiffs filed for class certification, Zuffa filed motions to exclude all of Plaintiffs' experts. Class Counsel successfully opposed those motions, as well as Zuffa's subsequent renewal of those motions in 2023. *See id.* ¶¶137-39.

Class Counsel then prepared for and participated in a seven-day evidentiary hearing on Plaintiffs' Motion for Class Certification that was held in three stages in two courthouses (from August 26- 28, 2019, from September 12-13, 2019, and on September 23, 2019). *See id.* ¶¶140-50. Also, on September 12, 2019, at the Court's request, the Parties submitted supplemental briefs relating to class certification. *Id.* ¶151.

Over the next few years, Class Counsel attended multiple status conferences, some by videoconference due to the coronavirus pandemic. *Id.* ¶153. At the second of these status conferences, on December 10, 2020, the Court announced its intention to certify the Bout Class. *Id.* After this conference, Class Counsel also prepared a response to supplemental authority of a then-recent decision by the Ninth Circuit that Zuffa submitted in opposition to class certification, as well as providing the Court with additional developments relating to that decision. *Id.* ¶155. The Court issued its order certifying the Bout Class (and denying certification of the proposed identity rights class) on August 9, 2023. *Id.* ¶156. Zuffa filed an appeal petition pursuant to Fed. R. Civ. P. 23(f), which Class Counsel successfully opposed before the Ninth Circuit. *Id.* ¶¶158-60.

After the Ninth Circuit denied Zuffa's Rule 23(f) petition, Class Counsel solicited bids from claims administration vendors and selected Angeion Group, LLC ("Angeion") to issue notice to the Class. *Id.* ¶157. Class Counsel worked with Angeion to develop a Notice Plan and effectuate notice to the Class, which included an emergency motion addressing improper Class Member solicitations by a third party. *Id.* ¶¶157, 161-62. No Fighters opted out of the Class. *Id.* ¶157.

### F.    Zuffa's Motions for Summary Judgment

Class Counsel also worked to oppose Zuffa's three separate motions for summary judgment. *See id.* ¶163. Zuffa first's motion for partial summary judgment was filed during discovery and sought dismissal of Quarry's identity rights claims as untimely. *Id.* ¶164. Class Counsel opposed the motion, which the Court ultimately denied without prejudice. *Id.* Zuffa's second motion for summary judgment, filed after class certification and *Daubert* briefing, sought dismissal of the entire case. *Id.* ¶165. Class

8

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, FOR REIMBURSEMENT OF EXPENSES, FOR AND SERVICE AWARDS FOR THE CLASS REPRESENTATIVES

Counsel opposed the motion, which the Court also denied without prejudice. *Id.* Zuffa renewed that latter motion for summary judgment after the Court's order certifying the Bout Class. Class Counsel opposed the motion, which the Court denied on January 18, 2024. *Id.* ¶¶166-67.

### G.    Pre-Trial Proceedings

With respect to trial preparation, the Court set a status conference for August 21, 2023, less than two weeks after certifying the Bout Class. *Id.* ¶178. Class Counsel prepared a pre-conference statement that included a proposal for proceeding to a trial on liability and damages while deferring consideration of injunctive relief until a trial was held in the related *Johnson* Action. *Id.* ¶¶178-79. The Court subsequently set the trial to begin on April 15, 2024. *Id.* ¶¶180-81.

As the Action sped toward the then-April 2024 trial, Class Counsel engaged intensely in preparation. *Id.* ¶¶188-202, 212-26. Class Counsel's work encompassed, *inter alia*, reviewing and designating deposition testimony, preparing a witness list, winnowing down an extensive library of videos involving pre- and post-fight press conferences for key evidence, generating an exhibit list and engaging with Zuffa's exhibit list, preparing a jury questionnaire, filing trial briefs (on February 22, 2024), preparing proposed stipulations of fact, preparing trial presentations, and working with the Class Representatives to prepare for trial. *See id.* Class Counsel also researched and filed motions *in limine*, while also opposing Zuffa's motions *in limine*. *Id.* ¶¶203-09. Class Counsel argued the motions *in limine* at a March 4, 2024 status conference where Plaintiffs prevailed on certain important motions, including on a motion seeking to strike 13 late-disclosed witnesses from Zuffa's witness list and to strike evidence from after the June 30, 2017 close of the *Le* Class Period. *Id.* ¶¶210-11.

### H.    Prior Settlement and Return to Trial Preparation

After nine years of hard-fought litigation, with extensive fact and expert discovery completed, and when the Parties were on the eve of trial in the *Le* Action, Class Counsel, in March 2024, reached an agreement-in-principle with the *Le* and *Johnson* defendants to settle the two Actions for $335 million plus prospective relief (the "Prior Settlement"). *Id.* ¶227. The Prior Settlement followed a lengthy process where Class Counsel participated in significant settlement negotiations, including full-day mediations several years apart (in 2017, 2019, and 2023) with the mediator, the Hon. Layn Phillips, which also involved numerous follow-up discussions. *Id.* ¶¶228-29.

9

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, FOR REIMBURSEMENT OF EXPENSES, FOR AND SERVICE AWARDS FOR THE CLASS REPRESENTATIVES

Class Counsel moved for preliminary approval of the Prior Settlement on May 21, 2024 (ECF No. 1024), at which point trial preparation in the Action ceased. *Id.* ¶230. Class Counsel prepared for a June 14, 2024 status conference with the Court. *Id.* At that conference, the Court directed Plaintiffs to submit a supplemental brief addressing certain concerns the Court raised about the Prior Settlement. *Id.* Co-Lead Class Counsel filed their supplemental brief on June 24, 2024 (ECF No. 1029), responding to the Court's concerns and providing a revised plan of allocation. *Id.* Class Counsel also supplied additional detailed information about the proposed distribution of the net settlement funds for *in camera* review on June 24, 2024 and on July 8, 2024 (ECF Nos. 1030, 1035). *Id.* The Court held a second status conference on July 12, 2024 to address the issues covered by Class Counsel's supplemental submissions. On July 30, 2024, the Court denied preliminary approval of the Prior Settlement and gave its reasons for the denial on the record (referred to herein as the "Denial"). *Id.* (citing ECF Nos. 1037, 1038, 1039).

On August 19, 2024, the Court held another conference where it reset the trial date to February 3, 2025 (ECF No. 1040). *Id.* ¶231. Class Counsel had already renewed the process of preparing for trial following the Denial. *Id.* Trial preparations included revisiting work on preparing exhibits, reaching out to the Class Representatives and other witnesses to secure availability for trial, initiating meet and confer discussions with Zuffa on various subjects, and returning to other projects necessary for trial that were in process at the time the Prior Settlement was reached. *Id.* Because the Court made clear that it would not stay the case or move the trial date unless and until it granted preliminary approval, Class Counsel continued their trial preparation work through the Court's grant of preliminary approval of the current Settlement on October 23, 2024. *Id.* (*see also* ECF Nos. 1042, 1053).

## I.      The Settlement

Concurrently with the trial preparation activities described above, the Parties in this Action renewed settlement discussions for the *Le* case only. *Id.* ¶232. As with the Prior Settlement, Class Counsel led these discussions, which also involved the mediator (Hon. Layn Phillips). *Id.* As part of the negotiations, Class Counsel and counsel for Zuffa revisited the strengths and weaknesses of their respective claims and defenses, the risks of trial and appeals, *and* gave careful consideration to the Court's stated reasons for the Denial. *Id.* Through these arms'-length negotiations, the Parties reached

the Settlement. *Id.* The Settlement provides valuable economic relief to the Class in the amount of $375 million in cash. *See* SA ¶5; Joint Decl. ¶232. The cash payment comprises a significant percentage of damages sought by Plaintiffs and will provide compensation to Class Members in the form of a large percentage of the amount of money these Fighters earned during their UFC fighting careers. *See* Joint Decl. ¶4. The Settlement also leaves the *Johnson* Action unaffected. *Id.*

As discussed at Part I *supra*, there has been a groundswell of support from Plaintiffs, Class Members, and groups that advocate for the interests of Fighters. Joint Decl. ¶¶2-3, 233-34. These statements make clear that the Settlement would bring real, material, and tangible monetary benefits to Class members—many of whom need immediate relief.

## III.    THE REQUESTED ATTORNEYS' FEES ARE APPROPRIATE AND REASONABLE

Plaintiffs' requested fee of 30.72% of the gross Settlement amount, plus interest, is reasonable and should be approved. "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Supreme Court has explained that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Attorneys' fees are awarded as a means of ensuring that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994). This principle is particularly important in complex antitrust litigation. *See*, *e.g.*, *Pillsbury Co. v. Conboy*, 459 U.S. 248, 262-63 (1983), where fee awards in successful cases encourage private enforcement of federal antitrust laws.

The Ninth Circuit has approved two methods of awarding attorneys' fees in common fund cases: (1) the "percentage of the fund" method, and (2) the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citing *Wash. Pub. Power Supply*, 19 F.3d at 1295-96). "Regardless of whether the court uses the percentage approach or the lodestar method, the main inquiry is whether the end result is reasonable." *Williams v. Costco Wholesale Corp.*, 2010 WL 2721452, at *6 (S.D. Cal. July 7, 2010) (citing *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000)). As explained in greater detail below, the percentage of the fund approach is the appropriate method for determining

11

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, FOR REIMBURSEMENT OF EXPENSES, FOR AND SERVICE AWARDS FOR THE CLASS REPRESENTATIVES

an award of attorneys' fees here.

### A. The Settlement Creates a Common Fund from Which Percentage-of-the-Fund Is the Appropriate Method for Awarding Attorneys' Fees

Where, as here, there is an easily quantifiable benefit to the Class—namely, the $375 million cash recovery—the percentage of the fund approach is appropriate. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). "The use of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus on a showing that a fund conferring benefits on a class was created through the efforts of plaintiffs' counsel." *In re Korean Air Lines Co. Antitrust Litig.*, 2013 WL 7985367, at *1 (C.D. Cal. Dec. 23, 2013); *see also Rodriguez v. Nike Retail Servs., Inc.*, 2022 WL 254349, at *6 (N.D. Cal. Jan. 27, 2022) (approving a percentage award (namely, one-third of the gross settlement) "especially in light of the significant amount of work Class Counsel performed in this case, … and the excellent results achieved"). Courts supervising antitrust cases in this Circuit regularly apply the percentage of the fund approach.[13] This Court should do so here.

When determining a reasonable fee award, the "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case," *Vizcaino*, 290 F.3d at 1048, and, ultimately, the benchmark should be adjusted "when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *see also Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) (the "percentage amount can then be adjusted upward or downward to account for any unusual circumstances involved in this case"); *Szymborski v. Ormat Techs., Inc.*, 2012 WL 4960098, at *3 (D. Nev. Oct. 16, 2012) (observing "nearly all common fund awards range around 30%" and that "the district court may adjust upward or downward to account for the circumstances in each case").

In assessing whether a percentage is fair and reasonable, the Ninth Circuit has identified a number of factors that may be relevant to the Court's analysis: "(1) the results achieved; (2) the risks of

---

[13] *See, e.g., In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *5 (N.D. Cal. Aug. 17, 2018); *In re Lithium Ion Batteries Antitrust Litig.*, 2018 WL 3064391, at *1 (N.D. Cal. May 16, 2018); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995).

12

litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases." *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013) (citing *Vizcaino*, 290 F.3d at 1048-50); *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015). No matter which method is selected, the second method can be employed as a "cross-check." *See In re Bluetooth*, 654 F.3d at 944-45. Each of these factors supports the requested fee of 30.72% here.

### 1.    Counsel Obtained an Exceptional Result for the Class.

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008). The Settlement represents an outstanding recovery from any angle.

The $375 million Settlement amounts to a significant share of the total damages computed by Plaintiffs' economists, representing more than 40% of the estimated single damages under the reasonable assumption that a jury would find the total damages suffered at the level where the damages models proffered by both of Plaintiffs' expert economists converged, *i.e.*, around $900 million. *See* Joint Decl. ¶4; Part I *supra*. This result is better than any other worker-side alleged monopsony case in the history of class action jurisprudence in this country. In their supplemental brief filed in support of the Prior Settlement (*see* ECF No. 1029 at 9-13), Plaintiffs analyzed a long list of antitrust settlements as a measure of the estimated single damages in each case. This analysis shows these cases settled for a much lower percentage than the Settlement here, with dozens of antitrust class actions settling for 25% or less of estimated single damages; three-quarters settling for 15% or less of damages; and a quarter for 2% or less of damages. *See id.* Moreover, the recovery here is a much higher percentage of damages than other antitrust settlements reached at or on the eve of trial. *See id.* at 7-9 (discussing cases). As one example, the plaintiffs in five separate cases alleging antitrust claims relating to realtor commissions settled for $972.5 million *after* having won a $1.8 billion jury verdict in one case and where the alleged damages were in the tens of billions. *See id.* at 7-8. Even with the incredibly valuable jury verdict in hand, the plaintiffs there assessed the very real risks of trial and appeal—and settled for below 5% of

13

single damages. The Settlement here far surpasses these cases.[14]

Importantly, the Settlement, if approved, would provide immediate and consequential cash relief to the more than one thousand members of the *Le* Class while preserving the ability of those *Le* Class Members who are also members of the proposed class in *Johnson* to pursue additional damages *and* significant injunctive relief. *See* Joint Decl. ¶¶2, 232. As discussed above, the anticipated average amount a Class Member would recover (after all fees and costs are deducted) is $250,000. *See id.* ¶2. Thirty-five Class Members would net over $1 million; nearly 100 Fighters would net over $500,000; more than 200 Fighters would recover over $250,000; over 500 Fighters would net in excess of $100,000. *Id.* Finally, there has been an outpouring of support for the Settlement from both Fighters and groups that advocate for the benefit of Fighters. *Id.* ¶¶3, 234. To date, 154 ex-UFC Fighters have submitted declarations supporting the Settlement. *See id.* These declarations reference that many Fighters are in financially precarious situations such that the Settlement would materially improve their lives. *Id.*; *see also* ECF No. 1045-1 at 27-30 (preliminary approval brief highlighting Fighter statements about the importance of the Settlement).

## 2. The Action Involved Significant Risks.

"Antitrust cases are particularly risky, challenging, and widely acknowledge[d] to be among the most complex actions to prosecute." *In re Lithium Ion Batteries Antitrust Litig.*, 2020 WL 7264559, at *15 (N.D. Cal. Dec. 10, 2020);[15] *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) ("Federal antitrust cases are complicated, lengthy, and bitterly fought."); *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011) (Antitrust cases are "arguably the most complex action[] to prosecute. The legal and factual issues involved are always

---

[14] *See, e.g., In re High-Tech Emp. Antitrust Litig.*, 2015 WL 5159441, at *2-*4 (N.D. Cal. Sept. 2, 2015) ($435 million settlement representing 14% of single damages of $3.1 billion); *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 2024 WL 815503, at *2, *9 (E.D. Pa. Feb. 27, 2024) ($385 million settlement representing 12% to 14% of estimated single damages of $2.6 billion and $3.2 billion); *In re Opana ER Antitrust Litig.*, No. 14-cv-10150, ECF No. 1085 (N.D. Ill. Nov. 3, 2022) ($145 million settlement representing 25% to 28% of estimated damages of between $514-$590 million); *In re Titanium Dioxide Antitrust Litig.*, 2013 WL 5182093, at *2 (D. Md. Sept. 12, 2013) ($163.5 million settlement representing 6-8% of estimated single damages ranging from $2.1-2.7 billion); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 285, 287-88, 324-25 (3d Cir. 2011) ($272.5 million settlement representing estimated 10.9% of estimated $2.5 billion single damages).

[15] *Affirmed*, 2022 WL 16959377 (9th Cir. Nov. 16, 2022).

numerous and uncertain in outcome.").

Class Counsel assumed a significant risk in undertaking this litigation. They committed their time, money, and energy to investigating and litigating the Action for more than ten years on a fully contingent basis. *See* Joint Decl. ¶¶6-9, 247-63. They devoted millions of dollars and tens of thousands of hours to a risky project that, at the outset, had no guarantee of success. No worker-side monopsony class action like this one had ever gotten past a motion to dismiss, let alone succeeded in getting a class certified and achieving a monumental settlement. The Action presented numerous complex issues that were hotly contested each step of the way by highly capable defense counsel. For example, Zuffa asserted multiple challenges to the merits of Plaintiffs' claims, including that the UFC was purportedly responsible for creating the MMA sports industry; that Zuffa pays more than other MMA promoters; and that Zuffa consistently increased Fighter pay over the Class Period. *Id.* ¶240. Zuffa retained expert economists who opined that the alleged conduct was procompetitive, and that Plaintiffs' proposed method of proving damages was unreliable or could not show that Plaintiffs were harmed. *Id.* ¶241. Zuffa vigorously contested class certification, including via a Fed. R. Civ. P. 23(f) appeal, and would likely have done so after any trial. *Id.* ¶242. While Class Counsel aggressively disputed Zuffa's arguments throughout the Action, as with all complex antitrust litigation, there was a substantial risk of adverse outcomes on these and other issues, in addition to the possibility of lengthy delays (including from appeals after trial). *Id.* ¶243. Indeed, the FTC twice investigated certain aspects of the UFC's conduct challenged here, and twice declined to pursue it. *Id.* ¶239.

Class Counsel consulted with Prof. Eric Posner to review the quality of results achieved with a settlement of Plaintiffs' claims. *Id.* ¶237. Prof. Posner provided context on the risks Plaintiffs faced in pursuing their claims, observing that "claims against employers for anticompetitive behavior in labor markets are relatively rare and difficult in comparison to other types of antitrust claims" and that this Action "is the first such claim ever to survive summary judgment, reach class certification, or even survive a motion to dismiss." *Id.* A case that is the first ever of its kind to survive a motion to dismiss and summary judgment epitomizes high risk.

### 3.  Prosecuting the Contested Issues in This Action Required Experienced Counsel.

Class Counsel are experienced litigators who understand the claims and defenses and class

15

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, FOR REIMBURSEMENT OF EXPENSES, FOR AND SERVICE AWARDS FOR THE CLASS REPRESENTATIVES

action issues of the Action. *See also Torczyner v. Staples, Inc.*, 2017 WL 6549937, at *8 (S.D. Cal. Aug. 28, 2017) ("Counsel, which specializes in these types of cases, undoubtedly brought skill and experience to this pursuit, and was up against quality defense counsel."); *In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *18 (S.D.N.Y. Apr. 26, 2016) ("It is important to encourage top-tier litigators to pursue challenging antitrust cases … [because] [o]ur antitrust laws address issues that go to the heart of our economy."). The Joint Declaration details the skill and commitment Class Counsel brought over more than a decade of case investigation and litigation to obtain the Settlement. *See generally* Joint Decl. ¶¶11-246.[16]

### 4. Class Counsel Litigated This Complex Action on a Contingent Basis.

Class Counsel invested substantial time and resources in this case on contingency. The Ninth Circuit has recognized the importance of rewarding attorneys who take cases on contingency. *In re Wash. Pub. Power Supply*, 19 F.3d at 1299 ("Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose."); *Lopez v. Mgmt. & Training Corp.*, 2020 WL 1911571, at *8 (S.D. Cal. Apr. 20, 2020) ("Class Counsel took this case on a contingent fee basis and assumed the contingent risk of non-payment which weighs in favor of the award.").

### 5. Class Counsel Undertook Significant Financial and Resource Burdens in Prosecuting the Action.

Class Counsel vigorously investigated and litigated this case, ultimately enabling them to negotiate the important relief provided by the Settlement for the benefit of the Class. In doing so, Class Counsel collectively expended or incurred $9,572,685.17 in out-of-pocket costs, notwithstanding the serious possibility that they would receive no reimbursement whatsoever. And to litigate this case to a successful resolution, Class Counsel have collectively expended 98,227.93 professional hours with a lodestar exceeding $72,106,244.55 over the course of a decade. Due to the significant investment in time and funds that litigating this case required, Class Counsel had to forgo other representations. This

---

[16] And, as mentioned, Zuffa also hired excellent antitrust defense counsel to defend against the Class's antitrust claims. *See Barbosa*, 297 F.R.D. at 449 ("The quality of opposing counsel is important in evaluating the quality of Class Counsel's work.").

16

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, FOR REIMBURSEMENT OF EXPENSES, FOR AND SERVICE AWARDS FOR THE CLASS REPRESENTATIVES

factor also weighs in favor of Class Counsel's request. *See*, *e.g.*, *Taylor v. Shippers Transp. Express, Inc.*, 2015 WL 12658458, at *16 (C.D. Cal. May 14, 2015) (approving attorneys' fee request of one-third of common fund where class counsel "took on the burden and expense of advancing all litigation costs" and "aver[red] that to effectively manage and litigate this case, they had to forgo other representations").

### 6. Awards in Similar Complex Antitrust Cases Demonstrate That Class Counsel Seek a Reasonable Fee Award.

Class Counsel's request for a fee award of approximately 30.72% of the gross Settlement fund (*see* Part I *infra*) is reasonable. In antitrust class actions, many courts in this Circuit have approved fee awards in excess of thirty percent in common fund cases where the results are significant for class members. *See*, *e.g.*, *In re Capacitors Antitrust Litig.*, 2023 WL 2396782, at *2 (N.D. Cal. Mar. 3, 2023) (following serial settlements and fee petitions, awarding 40% of final settlement, which brought cumulative fee award to 31% of all settlements totaling $604.55 million, and collecting cases awarding 30% or more); *In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *1-*2 (N.D. Cal. Sep. 20, 2018) (awarding 33% of $104.75 million antitrust settlement); *Tawfilis v. Allergan, Inc.*, 2018 WL 4849716, at *7 (C.D. Cal. Aug. 27, 2018) (awarding 33⅓% of $13.45 million antitrust settlement); *Meijer, Inc. v. Abbott Labs.*, 2011 WL 13392313, at *2 (N.D. Cal. Aug. 11, 2011) (awarding 33⅓% of $52 million antitrust settlement).[17]

---

[17] *See also Corzo v. Brown Univ.*, No. 22-cv-00125, 2024 WL 3506498, at *6 (N.D. Ill. July 20, 2024) (awarding 33.33% of $284 million settlement); *Suboxone*, 2024 WL 815503, at *16 (awarding 32% of $385 million settlement); *Jones, et al. v. Varsity Brands, LLC, et al.*, 2024 WL 5010412, at *8, *10 (W.D. Tenn. Dec. 6, 2024) (indirect purchaser Section 2 antitrust case awarding 33⅓% of $82.5 million); *Fusion Elite All Stars v. Varsity Brands, LLC*, 2023 WL 6466398, at *6, *8 (W.D. Tenn. Oct. 4, 2023) (direct purchaser Section 2 antitrust case awarding 33⅓% of $43.5 million); *In re Opana ER Antitrust Litig.*, No. 14-cv-10150, ECF No. 1085, at ¶ 15 (N.D. Illinois Nov. 3, 2022) (awarding 36% of $145 million settlement); *In re Loestrin 24 Fe Antitrust Litig.*, 2020 WL 5203323, *6 (D.R.I. Sept. 1, 2020) (awarding 33⅓% of $220 million settlement); *First Impressions Salon, et al. v. Nat'l Milk Prod., et al.*, No. 13-cv-0454, ECF No. 540, at 4-5 (S.D. Ill. Apr. 27, 2020) (awarding 33⅓% of $94 million settlement); *In re Celebrex (Celecoxib) Antitrust Litig.*, 2018 WL 2382091, at *5 (E.D. Va. Apr. 18, 2018) (awarding 33⅓% of $94 million settlement); *In re Urethane Antitrust Litig.*, 2016 WL 4060156, at *8 (D. Kan. July 29, 2016) (awarding 33⅓% of $835 million settlement); *In re Prograf Antitrust Litig.*, 2015 WL 13908415, at *4 (D. Mass. May 20, 2015) (awarding 33⅓% of $98 million settlement); *In re Polyurethane Foam Antitrust Litig.*, 2015 WL 1639269, at *7 (N.D. Ohio Feb. 26, 2015) (awarding 30% of $147.8 million settlement); *Klein av. Bain Capital Partners, LLC*, No. 07-cv-12388,

17

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, FOR REIMBURSEMENT OF EXPENSES, FOR AND SERVICE AWARDS FOR THE CLASS REPRESENTATIVES

Courts in this Circuit recognize that a fee award of 30% or more is "well within the range of reasonable fees awards, especially in light of the complexity of these antitrust cases, and the degree of work and skill required to obtain highly beneficial results for the class." *Capacitors*, 2023 WL 2396782, at *1 (N.D. Cal. Mar. 6, 2023) (citing cases awarding 30% or more); *see also In re Activision Securities Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) ("this court's own analysis of other recent cases shows that the benchmark is at approximately 30% of the fund" and citing cases).[18]

---

ECF No. 1095 (D. Mass. Feb. 2, 2015) (awarding 33% of $590.5 million antitrust settlement); *In re Neurontin Antitrust Litig.*, 2014 WL 12962880, at *3 (D.N.J. Aug. 6, 2014) (awarding 33⅓% of $190 million settlement); *In re Titanium Dioxide Antitrust Litig.*, 2013 WL 6577029, at *1 (D. Md. Dec. 13, 2013) (awarding 33⅓% of $163.5 million settlement); *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 746, 756 (E.D. Pa. 2013) (E.D. Pa. 2013) (awarding 33⅓% of $150 million settlement); *In re Southeastern Milk Antitrust Litig.*, 2013 WL 2155387, at *6 (E.D. Tenn. May 17, 2013) (awarding 33⅓% of $158 million settlement); *In re Tricor Direct Purchaser Antitrust Litig.*, No. 05-cv-0340, ECF Nos. 543, at ¶ 11 (D. Del. April 23, 2009) and 531, at 1 (D. Del. March 9, 2009) (awarding 33% of $250 million settlement); *In re Relafen Antitrust Litig.*, No. 01-12239, ECF No. 297, at ¶ 12 (D. Mass. Apr. 9, 2004) (awarding 33⅓% of $175 million settlement).

[18] *See also In re Broiler Chicken Antitrust Litig.*, 2021 WL 5709250, at *4 (N.D. Ill. Dec. 1, 2021) ("The fact that fee awards in antitrust cases in this circuit are almost always one-third is a strong indication that this should be considered the 'market rate.'"); *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 845 (N.D. Ill. 2015) (in class actions, the "usual range for contingent fees is between 33 and 50 percent"); *Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*, 2012 WL 4061537, at *9 (D.S.C. Sept. 14, 2012) ("[T]he market rate for private contingency fees is in the range of 33⅓ percent to 40 percent."); *Montague v. Dixie Nat. Life Ins. Co.*, 2011 WL 3626541, at *2-*3 (D.S.C. Aug. 17, 2011) ("Very few class actions are ever litigated to judgment as in this case [and] [i]n non-class contingency fee litigation, a 30% to 40% contingency fee is typical."); *Flournoy v. Honeywell Int'l, Inc.*, 2007 WL 1087279, at *2 (S.D. Ga. Apr. 6, 2007) ("Forty percent fee contracts are common for complex and difficult litigation such as this."); *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 3008808, at *16 (D.N.J. Nov. 9, 2005) ("Attorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation."); *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) ("A customary contingency fee would range from 33⅓% to 40% of the amount recovered."); *In re Ikon Off. Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("[I]n private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery."); *In re Orthopedic Bone Screws Prods. Liab. Litig.*, 2000 WL 1622741, at *7 (E.D. Pa. Oct. 23, 2000) ("[T]he court notes that plaintiffs' counsel in private contingency fee cases regularly negotiate agreements providing for thirty to forty percent of any recovery."); *In re Lithotripsy Antitrust Litig.*, 2000 WL 765086, at *2 (N.D. Ill. June 12, 2000) ("33.3% of the fund plus expenses is well within the generally accepted range of attorneys['] fees in class-action antitrust lawsuits."); *Cimarron Pipeline Constr., Inc. v. Nat'l Council on Comp. Ins.*, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) ("Fees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingent fee basis."); *Durant v. Traditional Invs., Ltd.*, 1992 WL 203870, at *4 n.7 (S.D.N.Y. Aug.12, 1992) ("[C]ontingent fee agreements up to 40 percent have been held reasonable.").

18

**B.    The Lodestar Cross-Check Confirms That Class Counsel's Request Is Reasonable**

Class Counsel's sought multiplier in this case is 1.6, which confirms the reasonableness of the fee request. A lodestar cross-check may be used to ensure that class counsel has done the work necessary to justify the fee sought. *Vizcaino*, 290 F.3d at 1050. "[T]he lodestar calculation serves as a point of comparison by which to assess the reasonableness of a percentage award." *Fernandez v. Victoria Secret Stores, LLC*, 2008 WL 8150856, at *14 (C.D. Cal. July 21, 2008). "As a result, the lodestar can be approximate and still serve its purpose." *Id.* The "cross-check calculation need entail neither mathematical precision nor bean counting . . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records." *Covillo v. Specialtys Café*, 2014 WL 954516, at *6 (N.D. Cal. Mar. 6, 2014) (citation omitted).[19]

Applying the lodestar crosscheck here shows that Class Counsel's request is reasonable. *See* Part I *supra*. "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941. To ensure a complete and accurate assessment of the lodestar here, Co-Lead Class Counsel audited Class Counsel's time records. Co-Lead Counsel analyzed time detail entries to identify any that needed to be reduced or removed because they, *inter alia*, (1) were duplicative, (2) were incorrectly billed to the *Le* case (*e.g.*, because the time actually related to the *Johnson* Action), (3) constituted first level document review time was not billed at the rate cap instituted by Co-Lead Counsel for such work (*i.e.*, a rate no higher than the $325/hour cap imposed by Co-Lead Class Counsel for first level document review), and/or (4) was excessive in light of the tasks performed. In total, these auditing efforts resulted in removal of approximately 1,500 hours from the lodestar submission to the Court.

The number of hours Class Counsel worked on this case was reasonable as shown by the detailed presentation in the Joint Declaration (at ¶¶11-246) describing Class Counsel's efforts to bring

---

[19] *See also Lopez*, 2020 WL 1911571, at *9 (explaining that "the court need not engage in a full-blown lodestar analysis when the primary basis remains the percentage method," but "some review is required [] even though the court need not closely scrutinize each claimed attorney-hour"); *In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, *27 (C.D. Cal. July 28, 2014) ("[T]he lodestar calculation need not be precise when it is being used as a cross-check.").

the Action to a resolution over a decade-plus of case investigation and litigation. *See Mathein v. Pier 1 Imports (U.S.), Inc.*, 2018 WL 1993727, at *11 (E.D. Cal. Apr. 27, 2018) ("counsels' declarations are sufficient to establish the number of attorney hours worked on this matter"). And Class Counsel's current rates[20] are well within the range that have been approved as reasonable by courts in the Ninth Circuit. *See, e.g., In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving seven years ago rates of $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (approving six years ago partner rates up to $1,250, $650 for associates, and $350 for paralegals).[21] Moreover, Class Counsel have decades of experience litigating complex antitrust class actions brought to bear here.

When compared to the requested fee award of 30.72 percent of $375 million, Class Counsel's total lodestar of $72,106,244.55 (Joint Decl. ¶251) equates to a multiplier of 1.6. This lodestar multiplier is well within the range of—and significantly lower than—lodestar multipliers frequently awarded in the Ninth Circuit. *See Vizcaino*, 290 F.3d at 1051 (multiplier of 3.65 held "within the range of multipliers applied in common fund cases"); *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1170 (C.D. Cal. 2010) ("Where appropriate, multipliers may range from 1.2 to 4 or even higher."); *Perez v. Rash Curtis & Assocs.*, 2021 WL 4503314, at *5 (N.D. Cal. Oct. 1, 2021) (approving fees of 37% of the settlement fund, a lodestar multiplier of 4.8); *Van Vranken*, 901 F. Supp. at 298 ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation."); *Capacitors*, 2023 WL 2396782, at *2 (finding lodestar multiplier of 1.81 "amply

---

[20] The Ninth Circuit instructs that counsel's lodestar should be determined using current rates to account for the delay in compensation. *See Washington Pub. Power Supply*, 19 F.3d at 1305 ("Full compensation requires charging current rates for all work done during the litigation, or by using historical rates enhanced by an interest factor."); *Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016) ("The lodestar should be computed either using an hourly rate that reflects the prevailing rate as of the date of the fee request, to compensate class counsel for delays in payment inherent in contingency-fee cases, or using historical rates and compensating for delays with a prime-rate enhancement."); *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1010 (9th Cir. 2002) ("the district court had discretion to compensate them either '(1) by applying the attorneys' current rates to all hours billed during the course of the litigation; or (2) by using the attorneys' historical rates and adding a prime rate enhancement'").

[21] *Affirmed sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020).

20

justified by the demands and duration of the litigation, and is well within acceptable parameters");
*Lidoderm*, 2018 WL 4620695, at *3 (finding 1.37 multiplier "well within the range of multipliers
awarded in the Ninth Circuit" and noting "[c]ourts in this district have recently awarded significantly
larger multipliers in antitrust cases than the multiplier requested by class counsel"); *Nitsch v.
DreamWorks Animation SKG Inc.*, 2017 WL 2423161, at *10 (N.D. Cal. June 5, 2017) (awarding
multiplier of 2 and discussing survey of cases showing multipliers ranging from 1-4 are in line with
vast majority of cases); *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008)
(awarding 5.2 multiplier and finding "ample authority for such awards resulting in multipliers in this
range or higher").[22] Further, the lodestar only represents work through October 31, 2024, whereas Co-
Lead Class Counsel have been working the past 6 weeks, and will continue to work, to oversee the
notice process, secure final approval of the Settlement, and then oversee the allocation of the Net *Le v.
Zuffa* Settlement Fund to the Class. At the end of the day, therefore, the sought for multiplier will be
significantly below where it stands now.

The lodestar cross-check thus confirms that Class Counsel's fee request is reasonable.

## IV.    CLASS COUNSEL'S REQUEST FOR REIMBURSEMENT OF LITIGATION EXPENSES IS REASONABLE

Class Counsel's request for reimbursement of their expenses is reasonable. Under the common
fund doctrine, class counsel are customarily entitled to reimbursement of reasonable expenses incurred
in the litigation. Fed. R. Civ. P. 23(h). It is appropriate to reimburse attorneys prosecuting class claims
on a contingent basis for "reasonable expenses that would typically be billed to paying clients in non-
contingency matters," *i.e.*, costs "incidental and necessary to the effective representation of the Class."
*Trosper v. Stryker Corp.*, 2015 WL 5915360, at *1 (N.D. Cal. Oct. 9, 2015) (citing *Harris v.
Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)). Reasonable reimbursable litigation expenses include those
for document production, experts and consultants, depositions, translation services, travel, mail, and

---

[22] *See also Flonase*, 951 F. Supp. 2d at 751 ("a multiple of 2.99 is within the generally acceptable
range and provides additional support for approving the attorneys' fees request"); *In re Lorazepam &
Clorazepate Antitrust Litig.*, 2003 WL 22037741, at *9 (D.D.C. June 16, 2003) (finding multiplier of
1.15 or 1.36 "falls near the low end of normal multipliers"); *In re Tricor Direct Purchaser Antitrust
Litig.*, No. 05-cv-0340, ECF Nos. 543, at ¶ 11 (D. Del. April 23, 2009) and 531, at 1 (D. Del. March 9,
2009) (finding multiplier of 3.93 reasonable for a 33% fee award of a $250 million settlement).

postage costs.[23] Under the common fund doctrine, plaintiffs' counsel should receive reimbursement of all reasonable out-of-pocket expenses and costs incurred in prosecution of the claims and in obtaining a settlement. *See generally Vincent v. Hughes Air W., Inc.*, 557 F.2d 759 (9th Cir. 1977); *see also Baker v. SeaWorld Ent., Inc.*, 2020 WL 4260712, *11 (S.D. Cal. July 24, 2020) (in case involving $65 million settlement fund, awarding over $2 million in litigation expenses, primarily for experts, consultants, and travel-related costs).

Class Counsel's unreimbursed expenses were reasonably incurred and necessary for the litigation of the case. Joint Decl. ¶¶256-63. Class Counsel advanced these expenses with no assurance that they would ever be reimbursed. As shown in the Joint Declaration, while expert witnesses constitute the largest expenditures, other essential expenses for the prosecution of the Action included regular e-discovery and data hosting costs, computer research, court reporting and deposition transcripts, subpoena services, mediation costs, travel and accommodations, printing, filing fees, costs associated with trial preparation, and others. *See id.* Further, Class Counsel retained a forensic accountant (Monica Ip, CPA, CFF, CVA, CMA) to review and audit each firm's expenses and the expenditures paid (or currently pending) from Co-Lead Counsel's litigation fund to assist Class Counsel's review and to ensure the reasonableness of all expenses for which Class Counsel seek reimbursement. *Id.* ¶257.

Accordingly, Class Counsel respectfully request that the Court authorize the reimbursement of Class Counsel's reasonable litigation expenses in the amount of $9,572,685.17.

## V.    THE COURT SHOULD GRANT SERVICE AWARDS TO THE FIVE CLASS REPRESENTATIVES FOR THEIR SUBSTANTIAL CONTRIBUTIONS

Class Counsel also seek service awards of $250,000 each for the five Class Representatives. Service awards are "fairly typical in class action cases." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009); *Andrews v. Plains All Am. Pipeline L.P.*, 2022 WL 4453864, at *4 (C.D. Cal.

---

[23] *See, e.g., In re Media Vision Tech. Secs. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (court fees, experts/consultants, service of process, court reporters, transcripts, deposition costs, computer research, photocopies, postage, telephone/fax); *Thornberry v. Delta Air Lines, Inc.*, 676 F.2d 1240, 1244 (9th Cir. 1982) (travel, meals and lodging), *remanded on other grounds*, 461 U.S. 952 (1983); *Mauss v. NuVasive, Inc.*, 2018 WL 6421623, at *8-*9 (S.D. Cal. Dec. 6, 2018) (online research, press release and newswires).

22

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, FOR REIMBURSEMENT OF EXPENSES, FOR AND SERVICE AWARDS FOR THE CLASS REPRESENTATIVES

Sept. 20, 2022). Service awards are particularly appropriate where, as here, the litigation is "complicated" and "took up quite a bit of the class representatives' time." *Online DVD-Rental*, 779 F.3d at 947-48; *accord In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 633-34 (N.D. Cal. 2021). In deciding whether such an award is warranted, "relevant factors include[e] the actions the plaintiff has taken to protect the interest of the class, the degree to which the class has benefited from those actions, [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

The Class Representatives undertook significant work to protect the interests of the Class. They collectively have devoted thousands of hours assisting in the Action. *See* Joint Decl. ¶¶6, 71-85. The Class Representatives worked with Class Counsel to initiate the case. Subsequently, they identified documents responsive to Zuffa's requests and ultimately (along with Plaintiff Quarry) produced more than 600,000 documents amounting to more than 800,000 pages. *Id.* ¶¶71-74. They also worked with Class Counsel to develop, write, and review their responses to Zuffa's interrogatories to ensure their accuracy. *Id.* ¶75. Each Class Representative spent time with Class Counsel to prepare for their depositions, which included study of Plaintiffs' theories of liability, class certification issues, and preparation for questions (including review of their document productions plus an extensive collection of publicly available materials such as videos and social media postings). *Id.* ¶¶76-78. Each Class Representative sat for a full-day deposition, and some were obliged to engage in significant travel (*e.g.*, Class Representative Brandon Vera resides in Guam). *Id.* ¶¶79-80. Additionally, the Class Representatives participated in monthly teleconferences for updates on the litigation, they attended court hearings (including the motion to transfer, summary judgment hearings, the class certification hearing, and other hearings and status conferences), participated in three in-person mediation sessions, and attended multiple trial preparation sessions. *Id.* ¶¶81-85. Moreover, all of this work was undertaken without the benefit of any government enforcement action to aid or encourage their efforts. *See, e.g., In re Linerboard Antitrust Litig.*, 2004 WL 1221350, at *18 (E.D. Pa. June 2, 2004) (noting service awards were "particularly appropriate in this case because there was no preceding governmental action").

The Class Representatives' commitment to and participation in all facets of the litigation is exemplary and warrants the requested service awards. While these requests are on the high end for such awards, they are in line with other cases with significant results where courts have granted high service awards in recognition of the class representatives' contributions to the success of the litigation. *See*, *e.g.*, *Chen-Oster v. Goldman Sachs & Co.*, 2023 WL 7325264, at *6 (S.D.N.Y. Nov. 7, 2023) (awarding $250,000 service award "to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a named plaintiff, and any other burdens sustained by the plaintiffs"); *McReynolds v. Merrill Lynch*, No. 05-cv-6583, ECF No. 616, at 5 (N.D. Ill. Dec. 6, 2013) (awarding $250,000 to each class representative); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1242 (S.D. Fla. 2006) (awarding $1.767 million to each class representative); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding $300,000 to each class representative).[24]

## VI.    CONCLUSION

For all of the reasons discussed above, Class Counsel respectfully request that the Court: (1) award Class Counsel attorneys' fees in the amount of 30.72% of the gross Settlement fund (plus interest), or $115.2 million from the gross Settlement Fund plus interest; (2) order reimbursement of litigation expenses incurred by Class Counsel in the amount of $9,572,685.17; and (3) award service awards in the amount of $250,000 to each of the five Class Representatives.

---

[24] The requested service awards are also in line with the average recovery of the Class Members. The amount of the award to each Class Representative matches the average recovery for Class Members under the proposed Plan of Allocation: both are $250,000. *See* Joint Decl. ¶2. Indeed, courts have approved service awards which are many times greater than the average class member recovery, whereas the proposed award here equals the average recovery amount. *See*, *e.g.*, *In re High-Tech Emp. Antitrust Litig.*, 2015 WL 5158730, at *18 (N.D. Cal. Sep. 2, 2015) (approving service awards of about 14 to 21 times average class member recovery); *Lemus v. H & R Block Enters. LLC*, 2012 WL 3638550, at *5-6 (N.D. Cal. Aug. 22, 2012) (approving $15,000 service awards greater than ten times the average class recovery of about $1,200). When viewed in the aggregate, the total service awards to the five Class Representatives equals $1.25 million, which makes up a mere 0.3% of the $375 million settlement fund—eminently fair and reasonable given the significant benefit to the Class resulting from Plaintiffs' efforts. *See*, *e.g.*, *Online DVD-Rental*, 779 F.3d at 948 (approving service awards of $45,000 totaling 0.17% of the total settlement fund).

Dated: December 20, 2024

Respectfully submitted,

/s/ *Eric L. Cramer*
Eric L. Cramer (pro hac vice)
Michael Dell'Angelo (pro hac vice)
Patrick F. Madden (pro hac vice)
BERGER MONTAGUE PC
1818 Market St., Suite 3600
Philadelphia, PA 19103
Telephone: +1 (215) 875-3000
Email: ecramer@bm.net
Email: mdellangelo@bm.net
Email: pmadden@bm.net

Joshua P. Davis (pro hac vice)
Robert C. Maysey (pro hac vice)
BERGER MONTAGUE PC
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Telephone: +1 (415) 906-0684
Email: jdavis@bm.net
Email: rmaysey@bm.net

Richard A. Koffman (pro hac vice)
Benjamin Brown (pro hac vice)
Daniel Silverman (pro hac vice)
Daniel L. Gifford (pro hac vice)
COHEN MILSTEIN SELLERS & TOLL
    PLLC
1100 New York Ave., N.W.
Suite 500 East, Tower
Washington, DC 20005
Telephone: +1 (202) 408-4600
Facsimile: +1 (202) 408-4699
Email: rkoffman@cohenmilstein.com
Email: bbrown@cohenmilstein.com
Email: dsilverman@cohenmilstein.com
Email: dgifford@cohenmilstein.com

Joseph R. Saveri (pro hac vice)
Kevin E. Rayhill (pro hac vice)
Christopher Young (pro hac vice)
Itak Moradi (pro hac vice)
JOSEPH SAVERI LAW FIRM, LLP
601 California St., Suite 1505
San Francisco, CA 94108
Telephone: +1 (415) 500-6800
Facsimile: +1 (415) 395-9940
Email: jsaveri@saverilawfirm.com
Email: krayhill@saverilawfirm.com
Email: cyoung@saverilawfirm.com
Email: imoradi@saverilawfirm.com

*Co-Lead Counsel for the Class and Plaintiffs
Cung Le, Nathan Quarry, Jon Fitch, Brandon
Vera, Luis Javier Vazquez, and Kyle
Kingsbury*

Don Springmeyer (Bar No. 1021)
Michael Gayan (Bar No. 11135)
KEMP JONES, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
Telephone: + 1 (702) 385-6000
Facsimile: + 1 (702) 385-6001
Email: dspringmeyer@kempjones.com
Email: m.gayan@kempjones.com

*Liaison Counsel for the Class and Plaintiffs
Cung Le, Nathan Quarry, Jon Fitch, Brandon
Vera, Luis Javier Vazquez, and Kyle
Kingsbury*

Crane M. Pomerantz
CLARK HILL PLC
1700 Pavilion Center Dr., Suite 500
Las Vegas, NV 89135
Telephone: +1 (702) 697-7545
Email: cpomerantz@clarkhill.com

*Additional Counsel for the Class and
Plaintiffs Cung Le, Nathan Quarry, Jon Fitch,
Brandon Vera, Luis Javier Vazquez, and Kyle
Kingsbury*

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, FOR REIMBURSEMENT OF EXPENSES, FOR AND SERVICE AWARDS FOR THE CLASS REPRESENTATIVES